# APPRAISAL

**Of**

**Vacant Tract of Land**

**North of West 96th Avenue**

**East of Indiana Street**

**Unincorporated Jefferson County, Colorado**

**For**

**Proposed Acquisition**

**For**

**Standley Lake Protection Project**

**Of**

**Jefferson County Open Space**

**Effective on August 13, 1993**



SUITE 118 · HIGHLAND OFFICE PLAZA
2525 SIXTEENTH STREET
DENVER, COLORADO 80211



SUITE 118 · HIGHLAND OFFICE PLAZA
2525 SIXTEENTH STREET
DENVER. COLORADO 80211

TELEPHONE (303) 455-1680

David J. Kaunisto, P.E.
Senior Water Resources Engineer
City of Westminster
4800 West 92nd Avenue
Westminster, Colorado  80030

Dear Mr. Kaunisto:

We have completed our market value appraisal of the vacant tract of land located north of West 96th Avenue and east of Indiana Street in unincorporated Jefferson County, Colorado. The appraisal was completed for the City of Westminster for a proposed acquisition of the property in conjunction with the **Standley Lake Protection Project**. The appraised property is owned by **Jefferson County Open Space**.

Based on our inspection, investigation, and analysis; we have estimated a market value for the subject property, as of August 13, 1993, at:

ONE MILLION ONE HUNDRED EIGHTY-SEVEN THOUSAND FIVE HUNDRED
DOLLARS ($1,187,500)

Value assigned the property is subject to the Assumptions and/or Conditions and the Certification set forth in this report. This appraisal is intended for the previously stated use, and may be insufficient if utilized for other purposes. Assumption and/or Condition No. 3 and No. 6 assume a conditional fee title and some level of contamination from radioactive materials on the property. The attached report of 41 pages contains a description of the property together with the basis for our value conclusion.

Respectfully submitted this 25th day of August, 1993.

JUSTIN H. HAYNES & CO.

Dennis Ingwersen, ASA
President
Colorado Certified General Appraiser
Certificate No. CG01313163

Kim M. Dillinger
Vice President
Colorado Certified General Appraiser
Certificate No. CG01313165

OVER SIXTY-FIVE YEARS OF SERVICE

JUSTIN H. HAYNES & CO.                                    APPRAISERS

## TABLE OF CONTENTS

ITEM                                                                                      PAGE

Assumptions and/or Conditions ........................................................................................ 1
Introduction
    Purpose of the Appraisal ........................................................................................ 2
    Definition of Value ................................................................................................. 2
    Property Rights Appraised ..................................................................................... 3
    Date of Appraisal .................................................................................................... 3
    Owner Contact ......................................................................................................... 3
Summary .... ..................................................................................................................... 4
Property Description
    Legal Description .................................................................................................... 5
    Restrictive Covenants ............................................................................................. 6
    Location ................................................................................................................... 6
    Area Development ................................................................................................... 6
    Accessibility ............................................................................................................ 9
    Utilities ................................................................................................................... 9
    Terrain ...................................................................................................................... 9
    Floodplain ...............................................................................................................10
    Zoning .....................................................................................................................10
    Site Configuration .................................................................................................11
    Improvements..........................................................................................................11
    Property History .....................................................................................................11
    Assessment Data ....................................................................................................12
Property Valuation
    Highest and Best Use .............................................................................................13
    Property Valuation
        Procedure ....................................................................................................15
        Scope of the Appraisal ...............................................................................15
        Sales Comparison Approach.......................................................................16
        Market Data ................................................................................................17
        Market Data Analysis.................................................................................20
        Value of Subject Parcel .............................................................................21
        Market Data Tabulation.............................................................................23
        Sales Map ....................................................................................................25
    Certification of Appraisers.....................................................................................25
    Qualifications of Appraisers ..................................................................................26
    Company History.....................................................................................................28
Addenda
    Metropolitan Location Map ....................................................................................29
    Location Map...........................................................................................................30
    Flood Plain Maps....................................................................................................31
    Zoning Regulations ................................................................................................33
    Aerial Photograph...................................................................................................41

1

JUSTIN H. HAYNES & CO.                                                                    APPRAISERS

## ASSUMPTIONS AND/OR CONDITIONS

1. Legal description of the subject property was obtained from the public records of Jefferson County, a source believed to be reliable, and is presumed correct.

2. We have not examined into, and do not pass upon title to or liabilities against the property valued.

3. Value assigned the property assumes a conditional fee title with restrictions subject to those matters set forth in the legal description or identified in the section of the report defining the property rights appraised.

4. Information obtained from public sources concerning zoning, services, and assessments, as well as information from other sources believed to be reliable, is presumed correct.

5. We have not been furnished a survey of the subject property. We have been furnished preliminary plans showing the proposed improvements on the subject parcel in conjunction with the Standley Lake Protection Project. Property sketches included in this report are intended as visual aids only.

6. The subject property is reportedly contaminated with radioactive material. This condition is the result of the property's proximity to the Rocky Flats nuclear weapons plant. We, however, have not been provided with any specific information regarding this contamination nor have we received an environmental assessment regarding this problem. We also do not know what action will be required to remediate any known or unknown contamination. Our value estimate of the subject property is based on the assumption that the subject site is no more contaminated than any other parcel located within the delineated area identified by the State and/or Jefferson County Health Department or has a similar proximity to Rocky Flats as that of the subject property.

7. Except as noted in No. 6, the appraisers have no knowledge of the existence of hazardous materials on or in the property. The presence of substances such as asbestos, urea-formaldehyde foam insulation, or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required to discover them. The client is urged to retain an expert in this field, if desired.

8. The data and results of the appraisal assignment, including this appraisal report, are confidential, and are the property of the client. No disclosure may be made to anyone other than (1) the client, (2) such third parties as may be authorized by the client or by due process of law, and (3) a duly authorized peer review committee representing a professional organization with which the appraiser is affiliated.

9. Value assigned the property is for the purpose and in accordance with, the property rights and value definition set forth in the report, and is subject to the Certification of the appraiser.

. JUSTIN H. HAYNES & CO.                                    APPRAISERS

## INTRODUCTION

Purpose of the Appraisal

The appraisal is provided in accordance with contract to the City of Westminster. The contract commenced on May 29, 1992.

The purpose of the appraisal is to provide a market value estimate of a vacant tract of land containing 475 acres, more or less. This property is located north of West 96th Avenue and east of Indiana Street and is owned by Jefferson County Open Space. The City of Westminster wishes to acquire the property to facilitate construction of improvements in connection with the Standley Lake Protection Project. The Standley Lake Protection Project is a joint effort between the U.S. Department of Energy (DOE) and the Cities of Westminster, Thornton, and Northglenn.

Although the appraised property is owned by Jefferson County Open Space, it is currently closed to public use due to radioactive contamination. The estimated market value of the subject property is based on the assumption that the property is no more affected than any other property in proximity to the Rocky Flats nuclear weapons plant.

The proposed acquisition is to facilitate the construction of a water detention pond along Woman Creek and a pipeline between this facility and Great Western Reservoir.

Definition of Value

CRS 38-1-101 of Colorado law states **Private property shall not be taken or damaged for public or private use without just compensation.**

The just compensation to be estimated in the appraisal is the **true and actual value** of all property actually taken. Any damages or special benefits to the remainder property must also be determined in the case of a partial taking according to the requirements of CRS 38-1-114. Except for highway acquisition, no deduction from the value of the part taken shall be allowed for any benefit accruing to the remainder due to the part taken and/or the project. In estimating damages, the value of the benefits, if any, may be deducted therefrom.

The **true and actual value** is generally held to be a fair market value concept and has been defined in Colorado judicial proceedings as follows:

Market value means the price property would bring if sold in the open market under ordinary and usual circumstances for cash, assuming the owner is willing to sell and the purchaser willing to buy, but neither under any obligation to do so. Epstein vs. City and County of Denver, 133 Colorado 104, 293 P.2d 308, 55 A.L.R.2d 783 (1956).

Market Value to be determined. The issue to be determined is the fair, actual cash market value of the land taken at the time of the award and the direct, fair and actual damages to the remainder of the tract, not taken, caused by the improvement, equal to the diminution in the market value of the residue at the time of the trial, for any use to which it may be put, reasonably. Wassenich vs. City and County of Denver, 67 Colorado 456, 186 P.533 (1919).

Property Rights Appraised

The property ownership is assumed to be a 100% interest in a conditional or restricted fee simple title to the real estate. Fee simple title (estate) is defined in *The Dictionary of Real Estate Appraisal - AIREA 1984; 2nd printing, 1986, Page 123,* as:

*Absolute ownership unencumbered by any other interest or estate; subject only to the limitation of eminent domain, escheat, police power, and taxation.*

Use of the property is restricted to open space.

Date of Appraisal

The subject property was inspected by Dennis Ingwersen and Kim Dillinger on August 13, 1993, the effective date of the appraisal. The appraisal report is dated for delivery on August 25, 1993.

Owner Contact

Lynn Johnson Wodell and Statton Le Breche, both of whom are with Jefferson County Open Space, were contacted by telephone on August 12, 1993. Both individuals gave us permission to enter the subject property, but were not present at the time of our inspection.

JUSTIN H. HAYNES & CO.                                                                    APPRAISERS

## SUMMARY

| | |
|---|---|
| Project Reference: | Standley Lake Protection Project |
| Location: | East of Indiana Street and north of West 96th Avenue. |
| Owners: | Jefferson County Open Space |
| Owner's Address: | 700 Jefferson County Parkway<br>Golden, Colorado 80401<br>(303) 271-5925 |
| Property Type: | Open range land |
| Site: | Irregular parcel containing 475 acres, more or less.  Ownership does not include Mowrer Reservoir |
| Improvements: | Perimeter fencing consisting of wood and metal posts with multiple strands of barbed wire. |
| Zoning: | A-2, Agricultural-Two District - Jefferson County |
| Highest and Best Use: | Open space, highway or street right-of-way, agricultural uses, and/or public utilities as restricted by deed. |
| Valuation Date: | August 13, 1993 |
| Market Value: | $1,187,500 |

JUSTIN H. HAYNES & CO.

APPRAISERS

PROPERTY DESCRIPTION

. JUSTIN H. HAYNES & CO.                                        APPRAISERS

## PROPERTY DESCRIPTION

Legal Description

ALL OF THE SOUTH 1/2 OF SECTION 7, TOWNSHIP 2 SOUTH, RANGE 69 WEST OF THE 6TH P.M., JEFFERSON COUNTY, COLORADO, EXCEPT THAT PORTION DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT WHICH IS THE EAST QUARTER CORNER OF SAID SECTION 7; THENCE SOUTH ALONG THE EAST LINE OF THE SE 1/4 OF SAID SECTION 7 A DISTANCE OF 1,273.88 FEET, MORE OR LESS; THENCE ALONG A LINE BEARING N 81 DEGREES 23 MINUTES 04 SECONDS W TO THE WEST LINE OF THE SW 1/4 OF SAID SECTION 7; THENCE NORTH ALONG THE WEST LINE OF THE SW 1/4 OF SAID SECTION 7 TO THE WEST QUARTER CORNER OF SAID SECTION 7; THENCE EAST ALONG THE NORTH LINE OF THE S 1/2 OF SAID SECTION 7, WHICH LINE IS THE BOUNDARY COMMON TO A PARCEL DESCRIBED IN BOOK 1749, PAGE 469, AND THAT PARCEL DESCRIBED IN BOOK 3036, PAGE 244, JEFFERSON COUNTY RECORDS, TO THE POINT OF BEGINNING.  AND ALSO EXCEPT THAT PORTION AS DESCRIBED IN BOOK 2484 AT PAGE 657.

TOGETHER WITH THE WEST 1/2 OF SECTION 18, TOWNSHIP 2 SOUTH, RANGE 69 WEST OF THE 6TH P.M., EXCEPT THE WEST 37.5 FEET THEREOF, AND ALSO EXCEPT THE MOWRER RESERVOIR DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEAST CORNER OF THE WEST 1/2 OF SAID SECTION 18; THENCE S 00 DEGREES 15 MINUTES 10 SECONDS W ALONG THE EAST LINE OF THE WEST 1/2 OF SAID SECTION, 2362.22 FEET; THENCE ON AN ANGLE TO THE RIGHT OF 90 DEGREES A DISTANCE OF 64.3 FEET, MORE OR LESS, TO THE MOST EASTERLY END OF THE MOWRER RESERVOIR, THE TRUE POINT OF BEGINNING; THENCE AROUND SAID RESERVOIR THE FOLLOWING DIMENSIONS AS MEASURED AT THE HIGH WATER LINE OF SAID RESERVOIR: N 26 DEGREES 41 MINUTES 12 SECONDS W, 419.18 FEET; THENCE N 44 DEGREES 42 MINUTES 19 SECONDS W, 378.07 FEET; THENCE S 53 DEGREES 11 MINUTES 48 SECONDS W, 482.75 FEET; THENCE S 11 DEGREES 04 MINUTES 47 SECONDS E, 319.80 FEET; THENCE S 67 DEGREES 33 MINUTES 07 SECONDS E, 261.14 FEET; THENCE S 26 DEGREES 14 MINUTES 18 SECONDS W, 157.07 FEET; THENCE S 12 DEGREES 28 MINUTES 31 SECONDS E, 93.49 FEET; THENCE S 45 DEGREES 17 MINUTES 28 SECONDS E, 244.19 FEET; THENCE N 89 DEGREES 55 MINUTES 39 SECONDS E, 66.54 FEET; THENCE N 36 DEGREES 50 MINUTES 11 SECONDS E, 578.98 FEET TO THE TRUE POINT OF BEGINNING, AND

ALSO EXCEPT THAT PARCEL OF LAND SITUATED IN THE SOUTHWEST ONE-QUARTER OF SECTION 18, TOWNSHIP 2 SOUTH, RANGE 69 WEST OF THE 6TH P.M., COUNTY OF JEFFERSON, STATE OF COLORADO, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTHWEST CORNER OF SAID SECTION 18 AND CONSIDERING THE SOUTH LINE OF THE SAID SW 1/4 TO BEAR N 87 DEGREES 44 MINUTES 03 SECONDS E WITH ALL BEARINGS CONTAINED HEREIN RELATIVE THERETO, THENCE N 57 DEGREES 22 MINUTES 45 SECONDS E, 59.36 FEET TO THE POINT OF BEGINNING; THENCE 00 DEGREES 00 MINUTES 00 SECONDS E, PARALLEL TO AND A PERPENDICULAR DISTANCE OF 50.00 FEET FROM THE WEST LINE OF SAID SW 1/4, 791.00 FEET; THENCE N 87 DEGREES 44 MINUTES 03 SECONDS E, PARALLEL TO THE SOUTH LINE OF SAID SW 1/4, 330.68 FEET; THENCE 00 DEGREES 00 MINUTES 00 SECONDS W, PARALLEL TO THE WEST LINE OF SAID SW 1/4, 791.00 FEET; THENCE S 87 DEGREES 44 MINUTES 03 SECONDS W, PARALLEL TO AND A PERPENDICULAR DISTANCE OF 30.00 FEET FROM THE SOUTH LINE OF SAID SOUTH LINE OF SAID SW 1/4, 330.68 FEET TO THE POINT OF BEGINNING.

JUSTIN H. HAYNES & CO.                                    APPRAISERS

## Restrictive Covenants

When the subject property was conveyed to Jefferson County Open Space in 1985, the following restrictions were included as part of the deeds:

> "...the property described herein shall only be used for open space which is intended to provide areas for the conservation of open space and the development of parks and recreational needs of (Jefferson County), highway or street or road rights-of-way and construction and maintenance, agricultural uses, public utilities, and buildings and structures customarily accessory to such uses, and this restriction shall be perpetual and shall run with the land."

The deeds state that (Jefferson County) "...is aware that certain radioactive materials from the Rocky Flats Plant, a nuclear weapons production facility owned by the United States of America and operated by Rockwell International Corporation (now operated by E G & G), are present on the (subject) property. By acceptance of this deed, (Jefferson County) acknowledges and agrees that the parties (conveying the property) shall have no liability or obligation to (Jefferson County) arising out of or in connection with the presence of such materials or any remedial actions to be taken by the United States or Rockwell International Corporation on the subject property.

## Location

The subject property is situated along the east side of Indiana Street north of West 96th Avenue. The area surrounding Standley Lake is one half mile east. The eastern boundary of Rocky Flats nuclear weapons facility is adjacent to the west across Indiana Street.

The subject's location is within the northwestern quadrant of the Denver metropolitan area in unincorporated Jefferson County. The city limits of Westminster are east of the subject across Alkire Street. The city limits of Arvada are generally south of West 86th Avenue about two miles from the subject. Most of the area surrounding Standley Lake is part of unincorporated Jefferson County. The subject is located thirteen miles northwest of Denver's central business district, considered the geographic center of the metro area.

Maps showing the location of the subject property are included with the Addenda of the report.

## Area Development

The subject property is located in an area which consists mostly of open range land. The oldest improved properties in the area were once used as ranches. Smaller more recently developed properties

JUSTIN H. HAYNES & CO.                                                    APPRAISERS

are either improved with a single-family residence and used as "country estate" properties or are improved as horse properties. These latter properties generally consist of parcels ranging in size from two to ten acres.

Presently, there are only a few of these properties in the immediate vicinity of the subject. There are clusters near Alkire Street and West 96th Avenue; however, other similar type properties are scattered throughout a wider area.

Along the north side of West 96th Avenue, a short distance west of Alkire Street, is a property currently used as a golf driving range. The parcel (containing about 40 acres) was purchased in 1991 with the intention of eventual golf course development. The actual development of this course is not anticipated to occur anytime in the foreseeable future. It appears the driving range is successful given the number of people who frequent the facility. The presence of this operation, however, appears to have a neutral effect on the surrounding properties in the area.

The most significant development west of the subject is Rocky Flats. This United States facility is operated for the Department of Energy (DOE) by E G & G. E G & G recently took over the facility from Rockwell International who took over for Dow Chemical in the late 1970s. Until recently, the Rocky Flats facility manufactured nuclear weapon components. The plant is centrally located on a property covering about nine square miles. Access is provided from Indiana Street on the east and Foothills Highway (Colorado Highway 93) on the west. In relationship to the subject property, the actual plant facility is about one mile northwest. The eastern perimeter of the property is directly west of the subject property across Indiana Street. Although the plant is not expected to resume production, its presence impacts the area because of known and unknown radioactive contamination. Studies are currently being made to determine the magnitude and extent of any possible contamination. Estimates indicate that it will take more than 20 years to completely clean-up the property. During that time, it is unknown if the facility will serve some other purpose. Because of actual and perceived problems surrounding Rocky Flats, concentrated urban development is not expected to occur in the area any time in the foreseeable future. In general, the marketplace has a negative perception of the immediate area surrounding this facility. This perception lessens as the distance from the plant increases. This is especially true in those areas where the plant facilities cannot be visually seen.

JUSTIN H. HAYNES & CO.                                                              APPRAISERS

Currently, it is unknown if urbanization will ever be allowed in the immediate area surrounding the plant.

One-half mile east of the subject is Standley Lake. Standley Lake includes that area bounded by Alkire Street on the west, West 100th Avenue on the north, the Kipling Street alignment on the east, and West 86th Parkway on the south. The property surrounding the lake is principally undeveloped and is being used as open space and park recreational facilities. Water from Standley Lake is used by the Cities of Westminster, Thornton, Northglenn, and Federal Heights. In addition, water also serves agricultural purposes. Eventual plans are to create a state park out of the area surrounding the lake. In 1988, the City of Westminster augmented this facility by acquiring a 400+ acre parcel on the northwest side of West 100th Avenue and Simms Street.

Urbanization has reached the eastern side of Simms Street, one and one-half mile east of the subject and the southern side of West 86th Parkway, about two miles south of the subject. This development consists mostly of suburban single-family neighborhoods in the Cities of Westminster and Arvada. Commercial development is generally located along Wadsworth Parkway/Boulevard and along major intersections in those areas already developed.

Suburban development originally started to occur in the area during the 1970s. As Denver's housing market boomed, the area quickly grew. By the mid-1980s, however, Denver's real estate market had become overbuilt. New development came to a standstill until the early 1990s. Recently, the residential market has improved. New home construction has once again started in areas east and south of the Standley Lake area. New homes in these areas generally sell in the moderate price range. If this trend continues, it is likely that the commercial market will also improve. The first segment of this market to improve will be retail and service.

Overall, the area surrounding and including the subject is open range land. Existing development consists of a few country estate residences, horse stables, former ranches, and a golf driving range. Although urbanization is approaching the area, the Rocky Flats facility is a major deterrent to future development. It will apparently be an extended time period before it is known what actual radioactive contamination exists and what remedial action may be needed. Because of this situation, urbanization may never occur in a particular area surrounding Rocky Flats.

JUSTIN H. HAYNES & CO.                                                                APPRAISERS

Accessibility

Vehicle access to and from the subject property is restricted to a few gates along Indiana Street and West 96th Avenue. These access points are available only to private use.

Indiana Street is asphalt surfaced and is aligned to carry two lanes of reciprocal traffic in a north/south direction. In the vicinity of the subject, Indiana Street extends between West 64th Avenue to West 120 Avenue (Colorado Highway 128).

West 96th Avenue is asphalt surfaced and aligned in an east/west direction. This street provides access between Indiana Street and Alkire Street.

Alkire Street is one mile west of Indiana Street and is aligned in a north/south direction. This street provides access to West 100th Avenue which provides access to Wadsworth Parkway and the more urbanized areas east of the subject.

Wadsworth Parkway (Colorado Highway 121), is about three miles east of the subject. This street is aligned generally in a north/south direction and provides access between Broomfield and the Denver metro area. South of West 88th Avenue, Wadsworth Parkway becomes Wadsworth Boulevard. One and one-half miles west of the intersection of Wadsworth Parkway and West 92nd Avenue is U.S. Highway 36. U.S. Highway 36 provides access between Boulder and the central portions of the metro area.

Access to and from the subject area and other parts of the Denver metropolitan area is considered good.

Utilities

Domestic water and sanitary sewer services have not been extended into the subject area. Improved properties in the immediate area of the subject are serviced by private wells and septic systems. Presently, neither the City of Westminster nor the City of Arvada are planning to extend services into this area anytime in the foreseeable future.

Electricity is provided in the area by the Public Service Company of Colorado. Improved properties in the area typically use propane for a heating fuel.

Terrain

The subject is in an area where the foothills and high plains meet. The terrain is a combination of bench, rolling, and valley lands through which there are number of creeks, tributaries, and irrigation

canals. The subject's terrain is consistent with that of the surrounding area. In general, its terrain slopes upwards in a northerly direction. Near the south eastern side of the property is Mowrer Reservoir which is held by the owner of the adjacent property to the east. This reservoir is used to store water for irrigation and stock purposes. Water to the reservoir is provided from a lateral extending west to Woman Creek and flows through the middle of the subject property. Woman Creek flows in a southeasterly direction through the southwestern part of the subject parcel.

The soil of the subject property is rocky. At one time, certain parts of the property were used to grow crops, but this use has been discontinued. The subject's soil is marginal for any agricultural use including grazing. Presently, plant growth on the parcel consists of native, planted, and volunteer grasses. Overall, because of the area's poor soil condition and general lack of water, plant growth is limited.

Floodplain

We have reviewed the Flood Insurance Rate Map (FIRM) Community Panel Numbers 080087 0075 B effective August 5, 1988, and 080087 0160 B effective August 5, 1986. These maps show that most of the subject parcel as being in mapped Zone C. Zone C is described as areas of minimal flooding. The area of the subject where Woman Creek is located is shown as being in Zone A. Zone A is described as areas of 100-year flood; base flood elevations and flood hazard factors not determined.

Zoning

The subject property is zoned A-2 Agricultural-Two District by Jefferson County. This zone district is "intended to provide for general farming, ranching, intensive agricultural uses and agriculturally related uses while protecting the surrounding land from any harmful effects." Permitted uses are typical for those under an agricultural zoning classification. A copy of the information detailing this zoning classification is included with the Addenda.

The property is also subject to Section 12 of Jefferson County Land Use Plan. Section 12 was developed in response to Colorado Senate Bill 35. Senate Bill 35 was adopted in May 1972 and required boards of county commissioners to identify areas of potential radiation hazard and evaluate these potential hazards in regards to future land use. Section 12 includes a map, created by the State and/or County Health Department. This map identifies an area of potential radiation hazard. The mapped

JUSTIN H. HAYNES & CO.                                                                    APPRAISERS

area is bounded by Simms Street on the east, Foothill Highway (Colorado Highway 93) on the west, West 88th Avenue and Colorado Highway 72 on the south, and West 120th Avenue (Colorado Highway 128) on the north. Subdividers wishing to develop in this area must follow and meet certain standards before a subdivision plat will be approved by the county. Essentially, Section 12 requires the subdivider to obtain certification from the Colorado Department of Health that the property is free from radioactive contamination and is suitable for public use.

Site Configuration

The subject parcel consists of almost the entire western half of one section and the southern half of an adjacent section to the north. As configured, the parcel has almost one and one-half miles of frontage along Indiana Street and almost one-half mile of frontage along West 96th Avenue. The parcel contains 475 acres, more or less.

Improvements

The subject is improved with perimeter fencing consisting of wood and metal posts and multiple strands of barbed wire.

Property History

The subject property was acquired by Jefferson County Open Space as a result of a judgment against the county in 1985. The property originally consisted of two ownerships. Part of the property was conveyed to the county from Butler Investment, Ltd., and William C. Ackard. A deed was recorded in the county at Reception No. 85063459 on July 9, 1985 and rerecorded at Reception No. 85068678 on July 23, 1985. The balance of the property was conveyed from Perry S. McKay, Charles C. McKay, and First Interstate Bank of Denver, N.A. A deed was recorded in the county at Reception No. 85063464 on July 9, 1985. According to Lynn Wodell, the price paid by the county for the two parcels was $1,150,060 (equal to $2,421 per acre). This price was reportedly based on the judgment and settlement agreement from District Court proceedings Civil Action No. 75-M-1162.

Each of the deeds, used to convey the property, specifically restrict the future use of the land to open space for conservation, parks, and recreational purposes; highway, street, or road right-of-way; agricultural; public utilities; and buildings and structures customarily accessory to such uses.

In addition, the deeds state that (Jefferson County) "...is aware that certain radioactive materials

.12

JUSTIN H. HAYNES & CO.                                                                    APPRAISERS

from the Rocky Flats Plant, a nuclear weapons production facility owned by the United States of America and operated by Rockwell International Corporation (now operated by E G & G), are present on the (subject) property.  By acceptance of this deed, (Jefferson County) acknowledges and agrees that the parties (conveying the property) shall have no liability or obligation to (Jefferson County) arising out of or in connection with the presence of such materials or any remedial actions to be taken by the United States or Rockwell International Corporation on the subject property.

Assessment Data

The subject is a publicly held property and is not assessed for ad valorem tax purposes.

JUSTIN H. HAYNES & CO.                                                   APPRAISERS

PROPERTY VALUATION

## HIGHEST AND BEST USE

Our market value conclusion requires the determination of the highest and best use for the subject property.  The term is defined in Harrisons' Dictionary of Real Estate Appraisal as:

> **The utilization of a property to its best and most profitable use.  It is that use, chosen from among reasonably probable and legal alternative uses, which is found to be physically possible, appropriately supported, and financially feasible to result in highest land value.**

This concept of optimum use gives consideration to all reasonable and probable uses available on the effective date of the appraisal.

The physical characteristics of the land determine what type of improvements may be constructed on the site.  The highest and best use is limited to those uses which are physically possible.  Physical characteristics which influence highest and best use include: location, access, size, shape, area, topography, subsoil conditions, and availability of utilities.  The physical condition of an improved property must also be considered in order to determine its ability to continue with its present use.

The highest and best use of the property must be one which is legally permissible.  Zoning regulations provide the primary use restriction in determining the highest and best use of a property.  Additional use restrictions include deed restrictions, easements, protective covenants, building codes, historic district controls, and environmental regulations.

Alternative uses determined under the previous two criteria must produce an income return which is greater than combined operating expenses, debt service, and capital amortization.  A use which provides a positive income return or profit incentive is considered financially feasible.  The most profitable financially feasible use is considered the property's highest and best use.

Subject Property

### Physically Possible

The subject parcel's terrain, size, and configuration makes it ideal for future urban development.  The property is located on the northwestern fringe of the Denver metropolitan area and includes a number of amenities including views and nearby recreational facilities.  Concentrated urbanization is less than two miles away to the east and south.  Although the area is currently not serviced with water, sanitary sewer, and natural gas, these services could be extended into the area as demand warranted.  It is reasonable to believe that given the growth patterns of the metro area, the subject

JUSTIN H. HAYNES & CO.                                            APPRAISERS

property could be developed in the future.

The foregoing is based on a scenario that the Rocky Flats Plant does not exist. The plant, however, does exist and has affected a large surrounding area with actual and perceived radioactive contamination. Although the plant recently stopped making nuclear weapon components, it will be years before the plant will be free of radioactive contamination, if ever. Additionally, data is now just beginning to be collected regarding contamination to surrounding lands and what potential contamination may result from the cleanup of Rocky Flats. Actual costs of remediation is now only speculation. Therefore, given the current situation in the vicinity of the subject property, it is unlikely that urbanization will occur anytime in the foreseeable future, if ever. Even if the entire area is certified by the Colorado Department of Health, the negative perception of the marketplace would make marketing difficult.

### Legally Possible

When the subject property was conveyed to Jefferson County, its future use was legally restricted to open space, road right-of-way, agricultural use, public utilities, and improvements customarily accessory to such uses. This restriction runs with the land into perpetuity. On this basis, residential, commercial, and/or industrial development is strictly prohibited. Thus, given the foregoing the subject property could only be used for one or more of the specific uses set out by the deed restriction.

### Financially Feasible

The subject's soil is rocky and is not conducive to growing crops. The parcel's soil and general lack of water limits its ability to be used as a pasture. Thus, agricultural use of the property is only marginal. The other permitted uses are usually limited to municipal or governmental use.

### Maximally Productive

Future use of the subject property has been legally restricted to only a few uses. Of these, most are limited to those associated with governmental use such as open space and public utilities. One private use, agricultural, probably is not a viable alternative. Thus, the highest and best use of the subject property is for one or more uses which is legally permitted.

JUSTIN H. HAYNES & CO.                                                     APPRAISERS

## PROPERTY VALUATION

Procedure

Common appraisal procedure is to execute three approaches - cost, income capitalization, and sales comparison - to value and correlate the results to a single conclusion or to select one approach as producing the most reliable indication of value.

The cost or summation approach to value considers the value of the land as if vacant together with a current replacement cost, new, less depreciation for the improvements as an indication of value.

The income capitalization approach to value considers a value indication from capitalization of the net income from the property.

The sales comparison approach is an analysis of market data from which an indication of value is obtained.

The appraisal assignment in this instance is to estimate the value of the subject property for acquisition for the construction of public improvements. Because the subject property is unimproved vacant land, we have limited our appraisal and the analysis to an estimate of the value for the land, as available to its highest and best use, by use sales comparison approach. We have not used the cost or income capitalization approach because their use would not provide additional evidence for the subject's value.

Scope of the Appraisal

The scope of the appraisal requires compliance with the Uniform Standards of Professional Appraisal Practice (USPAP) as promulgated by the Appraisal Standards Board of the Appraisal Foundation and the Uniform Appraisal Standards for Federal Land Acquisitions Interagency Land Acquisition Conference 1992. The appraisal is additionally prepared to be in compliance with Colorado Statute and case law as they relate to eminent domain proceedings.

The procedures followed in this appraisal include those recognized methods and techniques that are necessary to produce a credible appraisal. The procedures used for this assignment are identified in the following summary.

1. A personal inspection of the subject property and neighborhood was completed.

2. An analysis of the characteristics and development trends for the competing markets and the neighborhood was conducted.

JUSTIN H. HAYNES & CO.                                                                                           APPRAISERS

3. An analysis of the highest and best use was made giving consideration to existing zoning, as well as present and prospective uses for the property.

4. Research and analysis were conducted to collect and verify market data related to comparable sales. The sales were verified with either the buyer, seller, or both.

5. The applicability and suitability of the cost, income, capitalization, and sales comparison approaches to value were judged giving consideration to the quantity and quality of data available for each.

6. The appraisal was completed by developing a value indication from the sales comparison approach.

7. A narrative report was prepared to provide an identification and description of the property; to summarize the market data considered; and to outline the analysis and conclusions leading to the estimate of market value.

Sales Comparison Approach

This approach is sometimes called the market data approach, and is based on the principle of substitution. The well informed purchaser will generally pay no more than the cost of acquiring another property that is a satisfactory substitute. The sales comparison approach is a process that analyzes recent sales and compares them to the property being appraised.

The process involves four basic steps to arrive at an estimate of value. The first step is to conduct a research program to seek out sales of properties that are comparable to the subject property. A comparable sale is a competitive property that has sold recently in the open market. The sales are confirmed with either the buyer or the seller to ascertain the circumstances surrounding the sale. The second step is to analyze the sales to identify which characteristics are important in establishing prices. Differences between the sales and the subject may cause sale prices to vary. Identical properties should have sale prices within a narrow range while dissimilar properties may produce a wide range of prices. The third step is to adjust the price of each comparable sale to reflect what the price might have been if that sale were more nearly identical to the subject property. The adjustments are typically made for terms of sale such as financing, for time or date of sale, and for locational and physical differences between the comparables and the subject property. The fourth and final step in the approach is to arrive at a value estimate as indicated by the adjusted sales. The value conclusion is principally a review of the comparables and their adjustments to select a value for the subject.

Market Data

A market data tabular summary and sales map are included at the end of this section of the report.

No. 1 is a 344.76 acre parcel located on the east side of Foothills Highway (Colorado Highway 93) about one mile south of Colorado Highway 72. The southern boundary line of Rocky Flats is one mile north. No. 1 was purchased on December 30, 1986, for $1,375,000 or $3,988 per acre. The property is in a hilly area and is limited to future development primarily because of terrain. Urbanization is also about five miles in an easterly direction and not expected to move into the area anytime in the foreseeable future. The property is currently being used as a sanitary landfill.

No. 2 is a 51.64 acre parcel located adjacent to the east side of the subject property. The west boundary line of Rocky Flats is one-half mile west across Indiana Street. This parcel was originally purchased on December 31, 1986, for $225,000 or $4,357 per acre. The buyer purchased the parcel to hold speculatively for future suburban development. The buyer was also trying to assemble a number of other parcels. Access to No. 2 is limited with no publicly improved streets extended into the area. On February 27, 1988, the property was conveyed back to the seller in lieu of foreclosure. The stated consideration on the Special Warranty Deed was $220,000, the amount owed to the original seller.

No. 3 is a 420.7 acre parcel on the northwest side of West 100th Avenue and Simms Street. Standley Lake is a short distance to the south. The west boundary line of Rocky Flats is one mile west. The terrain of this parcel and the surrounding area is rolling. To the east, across from Simms Street, is a residential subdivision built in the early 1980s and known as Countryside. To the west, north, and south are generally open undeveloped tracts of land. According to the seller, the property was originally going to be subdivided and developed with single-family residences. With the downturn in the market and the market's negative perception towards Rocky Flats, development never occurred. Subsequently, the City of Westminster purchased the property for open space purposes. The purchase price was negotiated between the buyer and seller. Although both parties confirmed the price as being reflective of the market, the seller believed market conditions forced a lower than expected price especially because of Rocky Flats. The conveyance includes all easements, rights-of-ways, and ditch and water rights. The conveyance did exclude 20 inches of water rights from the Church Ditch. The buyer

JUSTIN H. HAYNES & CO.                                                    APPRAISERS

indicated that this had no effect on the property's purchase price because the rights were not appurtenant to this particular parcel.

No. 4 consists of two parcels on the north side of Colorado Highway 128 (West 120th Avenue), a short distance east of Foothills Highway (Colorado Highway 93). The northern boundary line of Rocky Flats is adjacent to the south across from Colorado Highway 128. The two parcels are in an undeveloped area along the boundary between Jefferson and Boulder Counties. Combined the two parcels contain 256.3 acres and are zoned A, Agriculture by Boulder County. The City of Boulder purchased the property for open space purposes. According to the buyer, $574,494 of the purchase price was given to the seller using special tax exempt bonds. These bonds exempt the seller from any state and federal taxes on the earned interest. This method of payment has advantages for both the buyer and seller. The seller receives tax free income over the next several years and also does not have to pay capital gains taxes until the time the bonds mature. The buyer only has to pay the interest on the bonds and does not have to actually pay the consideration until the bonds mature. The purchase included all water rights. Subsequent to purchase the property was conveyed to Boulder County Open Space.

No. 5 is a 984.07 acre parcel on the north side of Colorado Highway 128 a short distance west of McCaslin Boulevard. The northern boundary line to Rocky Flats is adjacent to the south across Colorado Highway 128. The parcel is in a hilly undeveloped area of southeastern Boulder County. Purchased by the City of Boulder for open space purposes, this property was conveyed using a Personal Representative's Deed. According to the buyer, the seller accepted $2,221,626 worth of special tax exempt bonds like those described in No. 4. Like No. 4, this parcel was subsequently conveyed to Boulder County Open Space.

No. 6 is a 46.94 acre parcel located on the north side of West 96th Avenue, this rectangular parcel is in an undeveloped area west of Standley Lake. The subject parcel is adjacent to the west and the east boundary line of Rocky Flats is one-half mile west. The topography slopes slightly upwards to the north away from West 96th Avenue. Woman Creek flows through the northern part of this property in a southeasterly direction. According to the buyer, the property was purchased for the eventual development of a golf course. Subsequent to purchase, the parcel was improved the with a golf driving

range and pitch and putt. These uses appear successful judging from the number of people who frequent the property.

No. 7 is a 40.72 acre parcel located one-half mile east of Indiana Street and one-half mile north of West 96th Avenue. Access to the site is provided by an ingress/egress easement extending east from West 100th Avenue. The parcel is in an undeveloped area of northeastern Jefferson County and has a rolling terrain. Originally, the parcel was conveyed from Karl and Pearl Brauch to Donna Frazer. This conveyance occurred in the late 1970s or early 1980s. In 1986, the parcel was conveyed from Donna Frazer to Jeffco Land Partnership I for a consideration of $200,000 or about $4,912 per acre. This buyer was the same original buyer as No. 2. A Warranty Deed was recorded in Jefferson County at reception No. 86063152. In June 1990, the property was foreclosed upon. According the bank (Affiliated National Bank-University Hills), they had appraised values on the parcel ranging from $196,000 to $69,000 or $4,813 to $1,694 per acre. After aggressively marketing the property for almost two years, they had received no serious offers. They believed that the future use of the property was limited because of its lack of public access and location near Rocky Flats. The property was purchased by the owner of the adjacent property. According to Karl and Pearl Brauch, the buyers, they had originally planned to repurchase the parcel and reassemble it with their existing ownership. At the time, they owned the parcels adjacent to the north and south. Subsequently, one of their sons decided to move back to Colorado and build a single-family residence on the parcel. Currently, this residence is being built. Originally when purchased from the bank, a 50% interest was conveyed to Karl and Pearl Brauch and the other 50% interest was conveyed to Dennis and Shirley Brauch. In September 1992, a quitclaim deed conveyed Karl and Pearl Brauch's interest in the parcel to Dennis and Shirley Brauch. The stated consideration was $27,250.

No. 8 is a 72.74 acre parcel on the east side of Colorado Highway 93. Colorado Highway 72 is one-half mile to the north as is the southern boundary line of Rocky Flats. This parcel was originally used to mine clay. Once the clay deposits were extracted the site was filled and platted to be used for industrial use. According to the seller, after holding the property for a number of years, they were unable to attract a buyer. The seller believed the property had limited potential for use because of its distance from the metro area and because of its location near Rocky Flats. Subsequently, the property

JUSTIN H. HAYNES & CO.                                                                                    APPRAISERS

was leased to the owner of the adjacent property to the south (No. 1) who is currently using the property as a sanitary landfill.

No. 9 is a 366 acre parcel located northwest of Colorado Highway 128 and McCaslin Boulevard. The north boundary line of Rocky Flats is adjacent to the south across Colorado Highway 128. This parcel is located in a hilly undeveloped area of Boulder County, and has a similar location and terrain as No.s 4 and 5. This parcel was purchased by Boulder County Open Space on April 12, 1993. According to the Nancy Dayton, the negotiated price for the property was $1,000,000 or $2,732 per acre. For budgetary reasons, the property will be acquired over the next three years. The first conveyance was for an 85 acre parcel at $350,000, the second will be for a 105 acre parcel at $350,000, and the final conveyance will be for a 176 acre parcel at $300,000. The buyer believed this method of conveyance had no effect on the property's purchase price.

Market Data Analysis

The foregoing sales all occurred in the vicinity of the subject and are either located in Jefferson County, Boulder County, or both. All of the sales were conveyed in fee simple title.

No.s 1, 3, 7, 8, and 9 were purchased for cash. No. 2 was sold with seller financing, but was subsequently conveyed back to the seller in lieu of foreclosure. No.s 4 and 5 were purchased with special bond financing available to the City of Boulder. This financing has advantages for both the buyer and seller. The seller receives special treatment for income tax purposes and the buyer has the ability to defer payment over a period of time. According to the buyer, they believed the purchase price would have been the same had the transaction been for cash. After considering No. s 4 and 5, we have concluded that the financing was equivalent to cash. No. 6 was purchased with 15% cash down and the balance carried by the seller at 10% interest for ten years. Our investigation did not produce any evidence which may have indicated that this was not a cash equivalent transaction. Thus, no adjustment has been made to this sale for this element of comparison.

Seller motivation may have influenced the price for No. 7. No. 7 was sold for a unit price of $1,338 per acre which, compared to the other sales, is the lowest unit price. No. 7 was acquired by the seller through foreclosure and wanted to dispose of the property. After marketing the parcel for over two years, they sold the property to the owner of the adjacent property. Because of this, we have

excluded this sale from further consideration in our analysis.

The remaining sales were all purchased between December 1986 and April 1993. After analyzing the sales and investigating the marketplace, we have concluded that unit sale prices have remained relatively static in the vicinity of the subject. Sale No.s 4, 5, and 9 are all in a similar area. No.s 4 and 5 were purchased in 1990 for unit prices of $2,666 and $2,676 per acre. No. 9 was purchased in 1993 for $2,732 per acre. The difference between these unit prices is minimal. Similarly, No. 1 was purchased in December 1986 for a unit price of $3,988 per acre. No. 8 was purchased in September 1992 for a unit price of $3,932 per acre. Both of these parcels are in the same area, have similar features, and were purchased for about the same unit price. Thus, given the foregoing, we have not adjusted any of the sales for time.

The primary difference between the unit prices is potential use. No.s 1 and 8 are in a relatively remote location, but were suitable for landfill use. Similarly, No.s 2, 3, and 6 have a greater potential of use, than No.s 4, 5, and 9.

Value of Subject

All of the foregoing sales are in the same vicinity as the subject. All of the parcels are either in an area delineated by the Colorado Department of Health as having potential radioactive contamination and/or are in close proximity to Rocky Flats. Thus, we believe all the properties receive a similar negative perception by the market. The unit prices for the sales range between $2,666 and $6,817 per acre, excluding No. 7. No. 6 has a good location, is the smallest parcel, and was purchased by a buyer who had a specific use in mind when the parcel was purchased. No. 2 is also a relatively small parcel which was purchased for speculative holding for future suburban development. As more information is obtained regarding Rocky Flats, the likelihood of suburban development in the area decreases. No. 2 was deeded back to the original seller in lieu of foreclosure. Excluding No.s 2, 6, and 7, the unit price range narrows to $2,666 to $3,988 per acre. Those parcels with the higher unit prices either had a higher potential use or were purchased by specific users. The parcels with the lowest unit price have the lowest potential for use. The subject parcel is in a area where future development has a greater potential than that of No.s 4, 5, and 9. The subject, however, is legally restricted to fewer potential uses than these sales. Thus, it is reasonable to believe that the unit value of the subject property is

JUSTIN H. HAYNES & CO.                                                    APPRAISERS

something less than that of No.s 4, 5, and 9.  As a result, using our appraisal judgment, we have estimated a unit value for the subject property at $2,500 per acre.  On this basis, the indicated market value of the subject property is calculated as follows:

475 acres @ $2,500 per acre = $1,187,500

MARKET DATA
Justin H. Haynes & Co.
August 1993

| No. | Location | Grantor/Grantee | Date Recorded | Site Size (Acres) | Sale Price ($) | Price Per Acre ($) | Comments |
|---|---|---|---|---|---|---|---|
| 1 | E side of Colorado Hwy 93 1 mile S of Colorado Hwy 72 | Seccombe/ Spano | 12/30/86 87000470 Jefferson | 344.76 | 1,375,000 | 3,988 | Subsequently used as a sanitary landfill. Cash to seller. |
| 2 | 1/2 mile E of Indiana St 3/4 mile N of W 96th Ave | Brauch/ Jeffco Land Partnership I | 12/31/86 87019385 Jefferson | 51.64 | 225,000 | 4,357 | Subsequently conveyed back to seller in lieu of foreclosure. |
| 3 | NW side of Simms St & W 100th Ave | Carlson/ City of Westminster | 04/15/88 88037344 Jefferson | 420.70 | 1,442,042 | 3,428 | Purchased for open space. Cash to seller. |
| 4 | N side of Colorado Hwy 128 3/4 mile east of Colorado Hwy 93 | K-Investments/ Boulder Municipal Property Authority | 04/10/90 1036937 Boulder | 256.30 | 683,235 | 2,666 | Purchased for open space. Special bonds used to finance sale. |
| 5 | N side of Colorado Hwy 128 1 1/2 mile east of Colorado Hwy 93 | Lindsay Estate/ Boulder Municipal Property Authority | 10/31/90 1071887 Boulder | 984.07 | 2,632,924 | 2,676 | Purchased for open space. Special bonds used to finance sale. |
| 6 | N side of W 96th Ave 1/4 mile W of Alkire St | Zehnder/ Applewood Enterprises, Inc. | 01/11/91 91004591 Jefferson | 46.94 | 320,000 | 6,817 | Subsequently improved as a golf driving range. $272,000 financed by seller at 10% interest for 10 years. |
| 7 | 1/2 mile E of Indiana St 1/2 mile N of W 96th Ave | Affiliated Natl Bank University Hills/ Brauch | 07/30/92 92095230 Jefferson | 40.72 | 54,500 | 1,338 | Subsequently improved with a single family residence. Cash to seller. |
| 8 | E side of Colorado Hwy 93 1/2 mile S of Colorado Hwy 72 | Lakewood Brick & Tile Co./ Landfill, Inc. | 09/01/92 9211125 Jefferson | 72.74 | 286,000 | 3,932 | Subsequently used as part of a sanitary landfill. Cash to seller. |
| 9 | NWC Colorado Hwy 128 & Mc Caslin Blvd | Zaharias/ County of Boulder | 04/12/93 1282777 Boulder | 366.00 | 1,000,000 | 2,732 | Purchased for open space. Cash to seller. |



JUSTIN H. HAYNES & CO.                                                  APPRAISERS

## CERTIFICATION

We hereby certify that to the best of our knowledge and belief the following statements are true and correct with respect to this appraisal report.

We personally inspected the subject property on August 13, 1993.

We have no interest, either present or contemplated, in the subject property; no important factors have been knowingly withheld or overlooked; and the fee for this appraisal is in no manner contingent upon the value reported.

The appraisal assignment is not based on a request to find a minimum, maximum, or specific valuation.

The appraisal report sets forth all the assumptions and/or conditions affecting the value analysis and conclusions set forth in the appraisal.

The appraisal report is made in conformity with the *Uniform Standards of Professional Appraisal Practice* of The Appraisal Foundation; and is subject to the requirements of *The Principles of Appraisal Practice and Code of Ethics* of the American Society of Appraisers and the *Code of Professional Ethics* and the *Standards of Professional Appraisal Practice* of the Appraisal Institute.

The appraisal report is subject to review by duly authorized representatives of the professional organization with which the appraiser is associated.

Dennis Ingwersen has successfully participated and complied with continuing education requirements for recertification by the American Society of Appraisers. Dennis Ingwersen is recertified until September 14, 1994.

No one other than the persons signing this report provided significant professional appraisal assistance in the preparation of the report.

It is our opinion, after careful consideration of all conditions as ascertained by inspection and analysis of the subject property known as:

475 Acre Vacant Tract of Land
Northeast of Indiana Street & West 96th Avenue
Jefferson County, Colorado
for the
Standley Lake Protection Project

That the market value for the subject property in fee simple title, as of August 13, 1993, is:

ONE MILLION ONE HUNDRED EIGHTY-SEVEN THOUSAND FIVE HUNDRED DOLLARS
($1,187,500)

Date:  August 25, 1993

Dennis Ingwersen, ASA
Colorado Certified Appraiser
Certificate No. CG01313165

Kim M. Dillinger
Colorado Certified Appraiser
Certificate No. CG01313165