IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

No. 90–K-181

_____

**MERILYN COOK, et al.,**

    Plaintiffs,

        v.

**ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,**

    Defendants.

_____

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION
TO EXCLUDE TESTIMONY OF CERTAIN DEFENSE EXPERT WITNESSES**

_____

Dated:  July 22, 2005

## I.  INTRODUCTION

Plaintiffs hereby offer a targeted reply in support of their Motion to Exclude the Testimony of Certain Defense Expert Witnesses.  For the most part, plaintiffs believe their initial briefs and the materials cited therein adequately set forth the facts and legal rules necessary to decide this Motion. Accordingly, plaintiffs decline to respond point-by-point to defendants' arguments.  Several of the arguments by both sides are nearly identical to those involved in plaintiffs' Motion in Limine. Specifically, plaintiffs incorporate sections A (subsequent appreciation of property values), B (coming to the nuisance evidence), D (regulatory standards), and E (Cold War history) of their Reply in Support of Their Motion in Limine.  Some additional clarification on certain issues is set forth below.

## II.  ARGUMENT

**A.     Defendants Have Not Met Their Burden of Showing That the Testimony of Mr. Conway, Mr. Dorchester, Ms. Van Court, or Ms. Smart Is Reliable and Admissible.**

Defendants have the ultimate burden of proof that their expert witnesses' methods are reliable and their testimony is admissible.  *See Mitchell v. Gencorp*, 165 F.3d 778, 781-82 (10th Cir. 1999); *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.4 (10th Cir. 2001).  Instead of taking this last opportunity to come forward with such proof, defendants have used their brief to reiterate lengthy summaries of their experts' reports and to argue how their expert evidence could be relevant. Defendants declined to address the fatal flaw in all four experts' work:  simply amassing data and then declaring a conclusion does not amount to a methodology.

One additional point defendants raise needs to be addressed only briefly.  Though defendants argue Mr. Dorchester's testimony is relevant to their claim that any depression of property values

was due to other factors, Mr. Dorchester does not draw that conclusion. He maintains that all of his data sources show positive results for the class area. *See generally* Dorchester 11/22/96 Rep. at 7-3 to 7-6 (summarizing the results of his data sources) (Ex. 6).[1] In fact, his methodology is incapable of detecting any impact from Rocky Flats or any other factor unless it appears as a drastic "shock" to the market; and even if such a result occurred, it would be impossible to pinpoint which factor among the hundreds of possible market-affecting variables was the cause by simply looking at a time-series graph of property values. Mr. Dorchester's opinion is not reliable to show any "other factors" that led to the decrease in property values near Rocky Flats, or for any other purpose.

**B.      Dr. Ward Whicker's Supplemental Reports Exceed the Scope of His Earlier Work.**

Dr. Whicker's initial report was limited to a discussion of ongoing studies intended to measure plutonium in the soil. Dr. Whicker's supplemental reports diverge into new subjects: the difficulty of measuring plutonium in soil, regulatory standards for plutonium in soil and Rocky Flats' alleged compliance, ways plutonium in soil can be disturbed, and the abatability of plutonium from the class members' land. While Defendants comb through Dr. Whicker's earlier reports and deposition testimony for even the briefest hints of these new subjects, mentioning a fact in passing does not give an expert license to expound at length on that fact in a later report, especially when he could just as easily have included his thoughts in his original report. Dr. Whicker's discussion of these new subjects does not respond to any "incomplete or correct" information in Dr. Whicker's initial report, Fed. R. Civ. P. 26(e)(1), and should therefore be excluded.

---

[1] All exhibit numbers refer to the exhibits to Plaintiffs' Memorandum of Law in Support of Their Motion to Exclude Testimony of Certain Defense Expert Witnesses.

While simultaneously arguing that Dr. Whicker's supplements contain no new information, defendants also paradoxically claim that the new information was necessary to adapt to the Court's recent rulings. None of the Court's rulings issued after Dr. Whicker's initial report created a "new" need for the information in his supplemental report. The only example defendants can point to is *Cook IX*, 273 F. Supp. 2d 1175, 1210 (D. Colo. 2003), which dealt with the Restatement (Second) of Torts section 930's damages measure for a continuing trespass. *See* Def. Daubert Resp. at 87. However, that ruling does not mention abatability, except where it discusses the defendants' arguments. *See id.* at 1210-11. In fact, it is defendants, not the Court, who first introduced the issue of abatability in this case. *See* Defendants' Report Concerning Opinion Testimony Pertinent to Trial Issues at 24 (July 30, 1999, docket no. 1137); Defendants' Proposed Trespass Jury Instruction No. 2 (July 13, 2004, docket no. 1245). The Court's rulings since *Cook IX* have held that abatability is not relevant. *See* Order of December 17, 2004 at 9-20 (abatability not relevant to determining whether a trespass is continuing); Order Regarding Proposed Trespass Instructions, Dec. 17, 2004, at 1 (rejecting defendants' proposed trespass jury instruction no. 2).

In *McEachron v. Glans*, No. 98-CV-17 & 97-CV-885, 1999 WL 33597331 (N.D.N.Y. Feb. 24, 1999), the court excluded a portion of an expert's supplemental report even though it explicitly found that the supplement was timely. *Id*. at *2. The policy behind Rule 26 seeks to prevent expert discovery from becoming a moving target. *See Burton v. R.J. Reynolds Tobacco Co.*, 203 F.R.D. 636, 639-40 (D. Kan. 2001); *Congressional Air, Ltd. v. Beech Aircraft Corp.*, 176 F.R.D. 513, 516 (D. Md. 1997); *see also Hauck v. Michelin North America, Inc.*, 343 F. Supp. 2d 976, 980 n.1 (D. Colo. 2004) (dicta). Defendants may not needlessly stretch out their expert disclosures ad infinitum,

3

forcing plaintiffs to repeatedly re-depose defendants' experts, when the new information in Mr. Whicker's supplemental report could just as easily have been included in one of his initial reports. It is inherently prejudicial to plaintiffs' efficient preparation of their case that Dr. Whicker's initial expert reports did not provide a complete picture of his testimony. *See Jacobsen v. Desert Book Co.*, 287 F.3d 936, 953-54 (10th Cir. 2002).

Defendant's emphasis on "bad faith" is misplaced. Courts deciding whether to exclude expert testimony can consider several factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Jacobsen*, 287 F.3d at 953 (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)). Here, defendants have prejudiced plaintiffs by expanding their expert's testimony nearly nine years after his original report was filed, unnecessarily drawing out expert discovery. The supplemental opinions should be excluded.

**C.    The Court May Exclude Defendants' Duplicative Experts Offered to Testify about RAC and ChemRisk Studies.**

Defendants have apparently misread the purpose of plaintiffs' motion. Where defendants' experts relied on the RAC and ChemRisk reports in reaching their conclusions, they are not barred from discussing their *conclusions* simply because they all relied on the same data. Plaintiffs seek merely to place a common-sense limit on repetitive discussions of *the reports themselves*, which would waste trial time and give the reports an unwarranted sense of importance in the jury's eyes.

Defendants cite no authority for their claim that the Court cannot limit duplicative testimony

until the trial has already begun. Such a policy would contradict the purpose of motions in limine, which is to resolve as many objections as possible before trial, in order to prevent unnecessary disruption of the trial.

Drs. Auxier, Frazier, Whipple, and Till's discussions of the RAC and ChemRisk studies are all basically summaries of the studies' methods and findings regarding historical releases from the plant and the estimated risk to the public. The stated purpose of Dr. Whipple's supplemental report is simply to discuss the RAC report. *See* Whipple 8/8/04 Rep. at 1 (Ex. 20).[2] Dr. Whipple does exactly that, summarizing the RAC study's discussions on releases and public risks. Whipple 8/8/04 Rep. at 6-11 (Ex. 20). Similarly, the entirety of Dr. Till's report summarizes the ChemRisk and RAC methodologies and findings regarding releases and risk to the public. *See* Till Rep., *passim* (Ex. 14). Both of these experts appear to adopt the RAC and ChemRisk studies as their opinions.

Dr. Auxier's report is the only one that "uses" the RAC and ChemRisk studies to form an opinion: namely, that there is no risk to the public due to releases of contaminants from Rocky Flats. *See* Auxier 11/25/96 Rep. at i-ii (Executive Summary) (Ex. 1). Nonetheless, like Drs. Till and Whipple's reports, the bulk of Dr. Auxier's report consists of lengthy summaries of RAC,

---

[2]

> This update addresses two important developments that have occurred since 1996.
> [. . .]
> The second development is the completion of many studies relating to past operations and with the site following closure. A series of studies were performed for the Colorado Department of Public Health and Environment (CDPHE) under a program named Historic Public Exposures, Phase II.

Whipple 8/8/04 Rep. at 1 (Ex. 20).

5

ChemRisk, and other studies, with Dr. Auxier simply adopting those and other studies' findings and using that data to form his opinion. *See id.*, Ch. IX (Ex. 1) (summarizing methods and findings of the ChemRisk study);[3] Ch. X (summarizing parts of the RAC study, specifically the results of Tasks 2, 3, and 4 of that study, dealing with release estimates and risk assessment); Ch. XIII (Dr. Auxier's risk calculations for off-site population, including class representatives).[4]  Dr. Frazier's report is framed as an update to Dr. Auxier's report.  *See* Frazier 8/6/04 Rep. at 1 (Ex. 9).

The lengthy discussions of the RAC and ChemRisk studies in all of these reports indicates that defendants' experts are likely to reiterate these discussions in their trial testimony.  Plaintiffs

---

[3] The ChemRisk study tasks are as follows:

1. Identify Chemicals and Radionuclides Used
2. Select Materials of Concern
3. Reconstruct History of Operation
4. Identify Release Points
5. Estimate Releases
6. Select and Model Exposure Pathways
7. Characterize Land Use and Demographics
8. Perform Dose Assessment

Auxier Rep. at IX-1 (Ex. 1).

[4] The relevant RAC study tasks are as follows:

   Task 2:  Verification of the radionuclide and chemical release estimates and associated uncertainties that were developed during Phase I of the Project.
   Task 3:  An independent assessment of the risk from Rocky Flats operations using state-of-the art methods to ensure that risks to the public are carefully identified.
   Task 4:  Evaluation of historic environmental data, which can provide a basis for risk assessment and reconstruction of releases.

Auxier Rep. at X-1 (Ex. 1).

believe the jury would not benefit from hearing three or four different summaries of these studies. Accordingly, plaintiffs respectfully request the Court set an appropriate limit on this evidence.

### III.   CONCLUSION

For all of the foregoing reasons, plaintiffs respectfully request the Court exclude or limit certain evidence by defendants' expert witnesses, as outlined in plaintiffs' Motion and Proposed Order.

Respectfully submitted,

Dated: July 22, 2005

/s   Jennifer MacNaughton
Merrill G. Davidoff
Peter Nordberg
Jennifer MacNaughton
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

Gary B. Blum
Steven W. Kelly
Silver & DeBoskey, P.C.
1801 York Street
Denver, CO 80206
(303) 399-3000

*Attorneys for Plaintiffs*
*And the Class*

7

**CERTIFICATE OF SERVICE**

I certify that today, July 22, 2005, I electronically filed the foregoing, Plaintiffs' Reply in Support of their Motion to Exclude the Testimony of Certain Defense Expert Witnesses, with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address:

> Joseph J. Bronesky, Esq.
> **SHERMAN & HOWARD**
> 633 17th Street, Suite 3000
> Denver, CO  80202
> (303) 297-2900
> (303) 298-0940 (Fax)
> jbronesk@sah.com

I also hereby certify that I have mailed the document to the following non CM/ECF participants via e-mail and Federal Express:

> Douglas J. Kurtenbach, Esq.
> **KIRKLAND & ELLIS**
> 200 East Randolph Drive
> Chicago, IL  60601
> (312) 861-2000
> (312) 861-2200 (Fax)

>  /s  Jennifer MacNaughton
> Jennifer MacNaughton
> Attorney for Plaintiffs and the Class
> Berger & Montague, PC
> 1622 Locust St.
> Philadelphia, PA  19103
> tel  (215) 875-3000
> fax (215) 875-4604
> jmacnaughton@bm.net