IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

No. 90–K-181

_____

**MERILYN COOK, et al.,**

    Plaintiffs,

        v.

**ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,**

    Defendants.

_____

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR
OMNIBUS MOTION IN LIMINE**

_____

Dated: July 22, 2005

## I. INTRODUCTION

Plaintiffs believe that, for the most part, their initial briefing on their Motion in Limine adequately sets forth the facts and legal rules necessary to decide this Motion. Accordingly, plaintiffs decline to respond point-by-point to defendants' arguments. Some additional clarification on certain issues is set forth below.

## II. ARGUMENT

**A. Evidence of Subsequent Appreciation in Property Values Should Be Excluded.**

Defendants' response to plaintiffs' motion concerning recent property values focuses largely on *relative* values – i.e., on evidence comparing property values under a but-for measure, with and without the injurious situation. Defendants largely ignore the issue of *absolute* value and offer no sound reason why they should be permitted to present evidence on *that* subject. To allow evidence that the absolute value of class properties has appreciated in nominal terms, a decade or more after the fundamental events in controversy, would not only fail to address the correct damage measure in this litigation, but would also invite the jury to apply an incorrect "before and after" measure.

As for relative values, plaintiffs agree that measures of *relative* value, even for periods other than the time-frame during which the injurious situation became comparatively complete and enduring ("CCE"), can also be relevant to show whether and when defendants' invasions were substantial (and therefore to show whether and when the injurious situation became comparatively enduring). This does not imply, however, that relative values from any and all time periods are relevant per se, or that they are automatically relevant on the issue of *damages*.

Defendants advert to the possibility, for example, at page 6 of their motion in limine response brief (*see also* Def. Daubert Response at 6), that the jury may find the CCE-reference point to be

1998. Hypothetical lawsuits can be imagined in which the plaintiffs might advance such a contention. This, however, is not one of them. In this litigation, it is not plaintiffs who have failed to take some position on when the CCE reference point falls (1989-92). It is defendants who refuse to define any position on the reference point, except that it would fall somewhere in the half-century between the opening of the plant and the present. Defendants are obviously free to rebut plaintiffs' evidence under the damage theories that plaintiffs and the class do indeed advance. They are not free, however, to offer evidence merely to rebut hypothetical theories that plaintiffs do not.

Defendants also suggest that post-CCE appreciation would be relevant to establish some right to a set-off, on the theory that it would show plaintiffs to have recovered some of their lost value. Section 930, however, fixes damages not by the date of judgment, but by reference to the time at which the harm became comparatively complete and enduring, and under a relative but-for measure, not a before-and-after one.

As for use of recent relative values to prove issues other than damages (e.g., an alleged diminution over time in the seriousness of defendants' actual or threatened invasions) defendants' argument on this point might have greater force, if defendants' evidence showed some temporal variation in relative values. However, it does not. Defendants' experts have analyzed data for every year from the 1970's through the new millennium and beyond, and have concluded that there was no difference in relative values at any time. It follows that their evidence does not tend to establish any temporal variation in relative values, or any variation in the magnitude or severity of past or threatened future invasions.

**B.      What Plaintiffs Knew or Should Have Known about Rocky Flats Before They Purchased Their Property is Irrelevant and Inadmissible.**

Defendants argue that evidence of what plaintiffs or class members "knew or should have known" is probative on issues other than the statute of limitations or "coming to the nuisance." Defendants say it is relevant, in particular, on the issue of market perceptions, and also on the issue of whether an interference with use and enjoyment was substantial.

Defendants' arguments apply more to evidence concerning what the plaintiffs (or the market) "knew" (or "believed") than to any separate evidence or arguments about what plaintiffs "should have known." Constructive knowledge might be relevant to a statute of limitations defense, but it is *actual* knowledge and perceptions that primarily fuel market responses. Plaintiffs do agree, however, that evidence of Rocky Flats publicity from prior time periods may be relevant to various issues in the litigation, and plaintiffs' motion in limine was not intended to bar such evidence. Plaintiffs' motion is directed primarily at any evidence offered in support of any argument that plaintiffs or class members assumed the risk, or should have sued earlier.

This is not to say that plaintiffs concur in defendants' entire inventory of points that evidence of plaintiffs' knowledge might supposedly be offered to show. The Court's rulings on what can constitute an actionable interference do apply to *defendants'* evidence, just as much as they apply to plaintiffs'. For example, one class representative's personal beliefs or concerns about Rocky Flats in 1978 (*see* Def. in Limine Response at 30) may be of some relevance to market stigma as of that time (if the record otherwise places that question in issue), but would be of dubious admissibility, e.g., to show that health risks, then or later, were objectively insubstantial. Likewise, such evidence

3

might be admissible on individual issues of actual emotional distress, but has little evident bearing on the generic, class-wide question of whether a reasonable member of the community *could* experience such distress.

These are not all points, however, on which the Court need rule in advance. By their motion, plaintiffs primarily seek confirmation that evidence will not be offered *to show or argue* that plaintiffs came to the nuisance, or assumed the risk, or that plaintiffs' claims are barred by the statute of limitations. Evidence concerning plaintiffs' or class members' knowledge should be permitted only if independently relevant and admissible for some other purpose.

**C.     Defendants' Real Estate Agent Witnesses' Opinion Testimony is Inadmissible.**

At this time, plaintiffs seek to exclude only these experts' opinion testimony, not their factual testimony based first-hand knowledge. If defendants' realtor witnesses are simply asked to testify to facts based on their personal knowledge, such as the reactions (or lack thereof) to Rocky Flats of potential buyers with whom these agents worked, *see* Def. Br. at 12-13, then there is no need for them to offer opinions to explain their first-hand observations.

Plaintiffs seek to prevent these witnesses from opining on the market as a whole, *i.e.* to giving their opinions about transactions in which they did *not* participate. Any such broad opinion would not be "rationally based on the perception of the witness." Fed. R. Evid. 701. Rather, it would draw on the witnesses' specialized experience and training as real estate agents, and as such would fall within the amended Rule 701's prohibition. *See* Fed. R. Evid. 701 (lay opinion admissible if "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."). Such testimony would require the witnesses to generalize from their experiences to

4

form broader conclusions. Their generalizations must be based on their specialized knowledge as real estate agents, otherwise those opinions would be inadmissible as pure speculation. *See* Fed. R. Evid. 602, 701 (lay witness testimony must be based on personal knowledge).

A real estate agent's opinions about the market as a whole (if they are reliable) are based on his specialized training, not personal knowledge. In *Estate of Dunia v. Commissioner of Internal Revenue*, No. 6115-00, 2004 WL 1119603 (U.S. Tax Ct. May 20, 2004), the court barred the opinion testimony of a general partner in a venture that purchased the land at issue, because the partnership did not own the land on the valuation date. The court held that, because this witness' testimony would have been "based upon the specialized knowledge derived from his experience as a real estate developer," his testimony was not admissible as lay opinion. Similarly, although defendants' realtors may have participated in some transactions in the class area, they are not qualified to give broad opinions about other transactions in which they did not participate, or on the market as a whole, because that testimony would rely on extrinsic knowledge they gained by virtue of their specialized training. *Cf. United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002).

All of the cases cited by defendants involve a witness, such as a treating physician, who gives opinion testimony about events in which the witness actually participated, that is, the physician testified about that patient's particular malady which he treated. *See, e.g. Davoll v. Webb*, 194 F.3d 1116, 1138 (10th Cir. 1999) (physician who treated plaintiff); *Weese v. Schukman*, 98 F.3d 542, 550 (10th Cir. 1996) (defendant physician who treated plaintiff).[1] By contrast, courts interpreting the

---

[1] Other cases cited by defendants, while all describing lay opinion based on the witness' participation in specific events (*i.e.* not extending to broader conclusions outside the scope of

5

amended Rule 701 have held that opinion testimony crosses the line into expert testimony where the witness ventures outside of the particular facts of the case. *See Lifewise Master Funding v. Telebank*, 374 F.3d 917, 930 (10th Cir. 2004) (distinguishing between testimony about damages model developed for trial, an expert opinion, and testimony by company president about lost profits based on normal methods and actual observations from running the business, a lay opinion); *Bank of China, New York Branch v. NBM L.L.C.*, 359 F.3d 171, 180-82 (2d Cir. 2004) (distinguishing

---

those events), are inapposite for additional reasons. Some do not even involve a witness who has expert knowledge; rather, although the witnesses based their opinions on prior knowledge, it was the type of ordinary knowledge that could just as easily have been acquired by any lay person. *E.g. Gossett v. Oklahoma ex rel. Board of Regents for Langston Univ.*, 245 F.3d 1172, 1178-79 & 1179 n.2 (10th Cir. 2001) (affidavit of former faculty member opining that plaintiff was victim of discrimination was based on personal knowledge of school's culture and of other faculty's treatment of plaintiff in particular); *United States v. Jackson*, 161 F.3d 18, 1998 WL 642410, at *7 (10th Cir. 1998) (table) (witnesses testified that the substance at issue was crack cocaine, based on their past experiences with crack); *United States v. Stanley*, 896 F.2d 450, 451-52 (10th Cir. 1990) (postal inspector testified that individuals in photographs that he seized were under the age of 18). *Cf. United States v. Denny*, No. 02-3016, 2002 WL 31323395, at *5 (10th Cir. Oct. 16, 2002) (police officer's opinion that defendant appeared intoxicated "was based not on any specialized training but rather on observations that could have been made by a lay witness . . .."); Fed. R. Evid. 701, advisory cmte. note ("lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'") (quoting *State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992)).

In two of defendants' cases, the court used both Rule 701 and 702 to uphold the admissibility of the testimony. *Malloy v. Monihan*, 73 F.3d 1012, 1015-17 (10th Cir. 1996) (witness testified about value of his own properties; opinion admitted under "Fed. R. Evid. 701 *or* 702," *id.* at 1017 (emphasis added)); *State Office Systems, Inc. v. Olivetti Corp. of America*, 762 F.2d 843, 845-46 (10th Cir. 1985) (company president may testify about projected lost profits for his business; citing Fed. R. Evid. 701 and 702). Both of these cases were decided before the 2000 amendment to Rule 701 that added the restriction against lay opinion based on specialized knowledge, so such testimony could not be admitted today without drawing a cleaner line between lay and expert opinion.

between lay testimony involving facts and conclusions of bank employee's investigation of allegedly fraud, versus employee's expert testimony about typical international banking transactions and conclusions that were not the result of the investigation). Any testimony by defendants' realtor witnesses that goes beyond their personal observations of transactions in which they participated would not be admissible as lay opinion testimony.

### D. Defendants' Regulatory Standards Evidence Carries a High Risk of Unfair Prejudice and Misleading the Jury.

Plaintiffs have moved to exclude or limit the use of regulatory standard evidence because the risk of prejudice far outweighs the probative value of this evidence. First, Defendants' regulatory standards evidence is not relevant, and therefore not admissible, in defense of plaintiffs' trespass claims. Trespass liability is based on the physical intrusion of plutonium, not on defendants' breach of any regulation or common law standard of care.

Second, regulatory standards do not set defendants' standard of care for nuisance liability.[2] Those standards would be, at most, only minimally informative to the jury on the issue of the proper duty of care. Similarly, because defendants' duty of care is set by Colorado common law, defendants' alleged compliance with regulatory standards could be only minimally relevant to their "good faith" for punitive damages purposes.

---

[2] Even if Colorado nuisance law did look to federal regulatory standards in assessing defendants' duty of care, the ALARA concept – a reasonableness standard – is enshrined in regulations that govern defendants' operations. *See* 10 C.F.R. § 20.1101(b) ("The licensee shall use, to the extent practical, procedures and engineering controls based upon sound radiation protection principles to achieve occupational doses and doses to members of the public that are as low as is reasonably achievable (ALARA).")

7

On the other side of the scale, the prejudicial value of regulatory standards evidence is high. Because the regulations carry an aura of official government pronouncements, the jury would be likely to give those standards more weight than they deserve. Defendants' argument that the standards are relevant to whether the contamination from Rocky Flats poses a health risk plainly illustrates the danger of giving too much attention to regulatory standards. Defendants' use of those standards appears to rely more on their nature as official government pronouncements, than on any actual link between the standards and real health risk to the plaintiffs. The exposure limits in place during Rocky Flats' operations were set many years ago, and do not account for modern advances in scientific knowledge regarding the health risks of low-level radiation. Moreover, at least one of the standards Defendants cite, the CDH plutonium-in-soil limit, was set arbitrarily. *See* Pltf. In Limine Br. at 10, and materials cited therein. If the regulatory standards have any impact on the jury on the issue of health risk, it will be because the jury makes the unwarranted assumption that, "if the government let this happen, it must be okay." This assumption would be the essence of unfair prejudice.[3]

---

[3] Defendants raise an argument in a footnote (Def. Daubert Resp. at 24-25 n.8) that, although not relevant to the instant Motion, must be addressed for the sake of clarity. Under the Price-Anderson Act, punitive damages are available for prospective damages due to nuclear incidents that occurred before August 20, 1988. Several pre-1988 incidents, notably the 903 pad and the 1957 fire, contributed most of the plutonium contamination in the class area. The presence of contamination in the class area constitutes an ongoing trespass that is compensible under the Court's damages plan. Also, the contamination contributed to an ongoing class-wide nuisance due to the health risk, the risk of future injuries from windblown plutonium, and the anxiety of the class members. *See* Order of May 17, 2005, at 5-7.

E.  **Defendants' Arguments About the Relevance of Their Cold War History Evidence Rely on a Misinterpretation of Nuisance Law.**

Plaintiffs once again urge this Court not to allow defendants to use national security concerns during the Cold War as an excuse for shirking their duty of care to their neighbors. The legal validity of defendants' argument that this evidence is relevant to the harm-utility balance under nuisance law has been briefed at length elsewhere, *see* Plaintiffs' Objections to Defendants' Proposed Nuisance Instructions, Objection to Defendants' Proposed Instruction No. 6. Their argument misses the point of plaintiffs' motions in two respects. First, as discussed in the briefing cited above, the risk-utility balancing test does not allow a socially useful enterprise to pollute neighboring land with impunity.[4]

Second, the key issue here is the grossly prejudicial nature of defendants' Cold War evidence. Plaintiffs essentially seek to preclude defendants from presenting a patriotic public relations speech in order to distract the jury from defendants' breach of their legal obligations. Plaintiffs' Motions do not seek to prevent defendants from testifying about any and all events that happened during the Cold War; plaintiffs simply wish to prevent defendants from framing defendants' environmental neglect as necessary to win the Cold War.

A common-sense limitation on the use of Cold War history evidence will not impede defendants' ability to present their defense. For example, defendants refer to an experimental form of plutonium that might have contributed to the 1957 fire, *see* Def. Limine Br. at 44-45. There is no

---

[4] "When a person knows that his conduct will interfere with another's use or enjoyment of land and it would be practicable for him to prevent or avoid part or all of the interference and still achieve his purpose, his conduct lacks utility if he fails to take the necessary measures to avoid it." Rest.2d Torts § 808, comment h; *see also* Plaintiffs' Objections re Nuisance Instruction No. 6.

9

reason why defendants cannot simply state the fact that the plutonium was experimental, without expounding on Rocky Flats' role in the Cold War. Similarly, in response to plaintiffs' evidence about the culture of secrecy and DOE and defendants' abuse of their classification power, *see* Def. Limine Br. at 46-48, defendants can cite the fact that Rocky Flats was a government facility without mentioning the Soviet threat. Defendants have failed to show that their Cold War history evidence is relevant, or that its necessity outweighs the prejudice to plaintiffs.

### III.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request the Court exclude certain evidence, as outlined in Plaintiffs' Omnibus Motion in Limine and Proposed Order.

Respectfully submitted,

Dated: July 22, 2005

 /s  Jennifer MacNaughton
Merrill G. Davidoff
Peter Nordberg
Jennifer MacNaughton
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

Gary B. Blum
Steven W. Kelly
Silver & DeBoskey, P.C.
1801 York Street
Denver, CO 80206
(303) 399-3000

*Attorneys for Plaintiffs
And the Class*

## CERTIFICATE OF SERVICE

I certify that today, July 22, 2005, I electronically filed the foregoing, Plaintiffs' Reply in Support of their Omnibus Motion in Limine, with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address:

>Joseph J. Bronesky, Esq.
>**SHERMAN & HOWARD**
>633 17th Street, Suite 3000
>Denver, CO  80202
>(303) 297-2900
>(303) 298-0940 (Fax)
>jbronesk@sah.com

I also hereby certify that I have mailed the document to the following non CM/ECF participants via e-mail and Federal Express:

>Douglas J. Kurtenbach, Esq.
>**KIRKLAND & ELLIS**
>200 East Randolph Drive
>Chicago, IL  60601
>(312) 861-2000
>(312) 861-2200 (Fax)

>/s  Jennifer MacNaughton
>Jennifer MacNaughton
>Attorney for Plaintiffs and the Class
>Berger & Montague, PC
>1622 Locust St.
>Philadelphia, PA  19103
>tel  (215) 875-3000
>fax (215) 875-4604
>jmacnaughton@bm.net