# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-181-JLK

MERILYN COOK, *et al.*,

        Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

        Defendants.

---

## DEFENDANTS' COMBINED REPLY IN SUPPORT OF THEIR MOTIONS IN LIMINE

## TABLE OF CONTENTS

I.      INTRODUCTION AND OVERVIEW ....................................................1

II.     REPLY BRIEFS IN SUPPORT OF INDIVIDUAL MOTIONS................21

III.    THE FBI RAID  (Defendants' MIL No. 1).............................................Tab 1

IV.     THE GRAND JURY INVESTIGATION (Defendants MIL No. 2)...........Tab 2

V.      ROCKWELL'S 1992 GUILTY PLEA (Defendants' MIL No. 3)...........Tab 3

VI.     INDEMNIFICATION BY DOE (Defendants' MIL No. 4)...................Tab 4

VII.    DOCUMENT CLASSIFICATION ISSUES AND DOE
        DISCOVERY CONDUCT (Defendants' MIL No. 5)..........................Tab 5

VIII.   SUBSTANCES OTHER THAN PLUTONIUM
        (Defendants' MIL No. 6)..............................................................Tab 6

IX.     WORKER SAFETY AND HEALTH (Defendants' MIL No. 7)............Tab 7

X.      RELEASES AND EVENTS OCCURRING WHOLLY
        WITHIN BUILDINGS (Defendants' MIL No. 8)............................Tab 8

XI.     INVENTORY DIFFERENCE OR MUF (Defendants' MIL No. 9)..........Tab 9

XII.    PAST "RISKS" THAT NEVER OCCURRED AND
        NOW CANNOT HAPPEN (Defendants' MIL No. 10)..................Tab 10

XIII.   PLUTONIUM-RELATED INCIDENTS AND PRACTICES THAT
        PLAINTIFFS CANNOT PROVE IMPACTED (OR COULD SOMEDAY
        IMPACT) THE CLASS AREA (Defendants' MIL NO. 11)..............Tab 11

XIV.    NON-CLASS-WIDE EVIDENCE (Defendants' MIL No. 12)............Tab 12

XV.     LAY WITNESS OPINION TESTIMONY BY ACKLAND,
        BIGGS AND POET (Defendants' MIL No. 13)..............................Tab 13

XVI.    OTHER LAWSUITS  (Defendants' MIL No. 14)...........................Tab 14

XVII.   ROCKWELL'S SANTA SUSANA PLEA (Defendants' MIL No. 15).....Tab 15

XVIII.  COSTS OF REMEDIATION (Defendants' MIL No. 16)................Tab 16

## I.   INTRODUCTION AND OVERVIEW

Plaintiffs do not take the Court's recent rulings into account in responding to Defendants' motions in *limine* or evaluating the relevance and admissibility of evidence for trial. Plaintiffs' failure is puzzling given this Court's instructions. (*See* 5/17/05 Order at 20 ("the parties **shall conform** their upcoming *Daubert* motions and motions in limine to reflect the rulings set forth in this order") (emphasis added).)[1] Plaintiffs repeatedly attempt to re-define the relevance of evidence **in relation to "their case"** (as they wish to present it) rather than consider the relevance of their evidence **to the claims that this Court has ruled will be tried** in the class-wide trial.

Plaintiffs have only two claims in this case that will be tried starting in October – a trespass claim and a nuisance claim. **None** of the evidence at issue in defendants' motions supports plaintiffs' trespass claim, and plaintiffs do not dispute this. Plaintiffs make a few fleeting attempts to assert that the evidence at issue is somehow relevant to their nuisance claim (without specifying any specific nuisance to which they are referring), but those attempts fall short because plaintiffs do not link the evidence to any element of a recoverable, class-wide nuisance to be tried as defined by this Court. What is more, plaintiffs frequently assert the relevance of evidence at issue without even attempting to identify any specific element of either class-wide claim to be tried that the evidence would support. At bottom, plaintiffs seek to introduce evidence of various things that happened at Rocky Flats that they simply cannot link to any element

---

[1] Plaintiffs' failure to consider the Court's May 17, 2005 Order stands in stark contrast to defendants' efforts to apply the exact language of that Order for purposes of motions in *limine*. In fact, plaintiffs have referred to a flow chart diagram of the actual language of the Court's May 17 Order (Ex. A hereto) as "a rat in a maze." (6/30/05 Hr'g Tr. at 68.)

of the class-wide nuisance and trespass claims to be tried.  They also fail to refute the substantial and unfair prejudice to defendants that flows from this evidence.

**A.      Defendants' Motions Are Ripe for a Ruling, and Ruling on Defendants' Motions Now Is the Most Efficient Way to Proceed.**

As an initial matter, plaintiffs' contention that there is something improper about resolving these issues through the motion in *limine* process (*see* Pls.' Consol. Mem. in Opp. to Defs.' Mots. in *Limine* ("Pls.' Resp.") at 1–2) is wholly without merit.  There is nothing improper about attacking specific categories of evidence as defendants have done.  That is typically how motions in *limine* are handled, and plaintiffs' own motions are no exception.  *See, e.g.,* 63 A.L.R.3d 311, Modern Status of Rules as to Motion in Limine, § 2(b) Background, summary, and comment (2005) (stating that, in drafting a motion in limine, "the terminology of the order must be general enough to prohibit the opposing party from injecting the same prejudice in a roundabout manner . . .") (emphasis added); 2 Law and Prac. of Ins. Coverage Litig. § 20:8(a) Evidentiary issues: Potential subjects for motions in limine (2005) ("In considering potential in limine motions, the parties ***should evaluate general categories*** as well as individual pieces of evidence") (emphasis added); *see also Shoppin' Bag of Pueblo, In*c. *v. Dillon Cos.*, 783 F.2d 159, 161 (10th Cir. 1986) (affirming exclusion through motion in *limine* of all evidence relating to FTC investigation); *F.D.I.C. v. Refco Group, Ltd.*, 184 F.R.D. 623, 631 (D. Colo. 1999) (granting motions in *limine* to exclude evidence of settlement agreements involving a securities broker and evidence of criminal proceedings brought against representative of securities broker).  Indeed, plaintiffs

recognize that "certain evidentiary issues . . . may lend themselves to such categorical treatment." (Pls.' Resp. at 2.)[2]

This is especially true where, as here, defendants are dealing with plaintiffs' eighty-eight page preliminary exhibit list (which included more than 1900 exhibits), plaintiffs' preliminary witness list of more than 80 witnesses, and little if any effort on plaintiffs' part to focus those materials based on what this Court has ruled will be tried.

Here, defendants moved on discrete and clear categories of evidence and argument (e.g., all mention of the FBI raid) that plaintiffs concede they intend to use at trial. Moreover, for each motion, defendants set forth, in painstaking detail, illustrative examples of plaintiffs' exhibits, deposition testimony, and expert opinions that fall within the scope of the motion.[3] Therefore, defendants' motions are not, as plaintiffs claim, "sweeping and abstract" (Pls.' Resp. at 3), and this Court can make determinations from the motions about both the lack of relevance and undue

---

[2] The cases cited by plaintiffs are inapposite and do not support the position that evidentiary ruling should be deferred until trial where the Court can determine in advance of trial that evidence is inadmissible. In fact, in *Hawthorne Partners v. AT & T Tech.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993), the court recognized that courts can make in *limine* rulings prior to trial to exclude evidence that is inadmissible on all potential grounds. It simply declined to grant motions in *limine* with respect to evidence that it determined was either admissible or potentially admissible. Similarly, in *Nat'l Union Fire Ins. Co. v. L.E. Meyers Co. Group*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996), the court granted several motions in *limine*, including one to exclude all evidence on a notice issue, and deferred two rulings—one on a motion that was inadequately briefed and one that lacked specificity on certain particulars such as which parties were intending to offer the evidence.

[3] By contrast, plaintiffs, who have the burden of proof to show that their evidence is relevant, do not cite a single specific piece of evidence that would be implicated by one of defendants' motions but should be admissible. Nor do plaintiffs define with any specificity what "nuisance" or "nuisances" to which any of the evidence allegedly relates.

prejudice of the evidence at issue.[4]  Under these circumstances, a ruling on these issues need not

and should not be delayed.

In addition, a ruling on defendants' motions now would be far more expedient and effi-

cient than resolving defendants' objections in response to each of plaintiffs' more than 1900

exhibits[5] during the objections-to-exhibits phase in less than one month, at which point these

issues must be resolved.  If an exhibit falls under an excluded category but has another permissi-

ble purpose, redaction may be a solution the parties can agree upon in some cases.[6]  If rulings on

---

[4]  Plaintiffs' assertion that Rule 403 balancing cannot be done prior to trial is baseless.  ***First***, courts routinely exclude evidence prior to trial on Rule 403 grounds.  *See, e.g., Stump v. Gates*, 211 F.3d 527, 538 (10th Cir. 2000); *United States v. Wilson*, 107 F.3d 774, 783 (10th Cir. 1997); *Shoppin' Bag of Pueblo, Inc.*, 783 F.2d at 161; *United States v. Biswell*, 700 F.2d 1310, 1319 (10th Cir. 1983).  ***Second***, preventing prejudicial evidence and references from coming in before the Court has a chance to rule is a primary purpose behind the motion in *limine* procedure.  *See* 75 Am. Jur. 2d Trial, Motion in Limine Practice, § 94 Definition, nature, and purpose of motion in limine (2005) ("A motion in limine . . . shortens trial, simplifies issues, and reduces the possibility of mistrial.") (citing *Good v. A.B. Chance Co.*, 565 P.2d 217, 221 (Colo. App. 1977)); 20 Am. Jur. Trials 441, Motion in Limine Practice, § 8 Advantages of the Motion (2005) ("The pretrial consideration of prejudicial evidence problems . . . purifies the process of obtaining just verdicts."); *see also Luce v. United States*, 469 U.S. 38, 40, n.2 (1984) (a motion in *limine* is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered.").

[5]  Defendants are unaware of any communication by their counsel to plaintiffs' counsel that "defendants had resolved any ambiguities about the identities of plaintiffs' [trial] exhibits to defendants' satisfaction and that further assistance from plaintiffs' counsel . . . was unnecessary," and plaintiffs cite none.  (Pls.' Resp. at 2.)  Indeed, there are exhibits on plaintiffs' list that are not currently identifiable, such as exhibits that plaintiffs identify only by date without a Bates number.

[6]  By contrast, limiting instructions at trial (*see, e.g.*, Pls.' Resp. at 13, 38) are not adequate and defeat the prejudice-avoiding purposes of motion in *limine*.  *See* 75 Am. Jur. 2d Trial, Motion in *Limine* Practice, § 94 Definition, nature, and purpose of motion in *limine* (2005) ("[The motion in *limine*] recognizes that the mere asking of an improper question in the hearing of the jury may prove so prejudicial that, notwithstanding an instruction by the court to disregard the offensive matter, the moving party will be denied his right to a fair trial."); 20 Am. Jur. Trials 441, Motion

the motions are made, the parties can seek Court guidance with respect to specific exhibits *only*

*as necessary.* This is much more efficient – for the parties and the Court – than waiting to rule

on each exhibit and testimony designation. It would streamline the trial (and consequently the

parties' trial preparations) substantially to clarify admissibility issues for these categories at the

motion in *limine* stage, especially where, as here, if motions are granted, numerous exhibits and

substantial testimony can simply be cut from the trial. As a leading treatise has explained:

> The advantages of motion in limine practice are significant and persuasive. The
> pretrial consideration of prejudicial evidence problems speeds, simplifies, and pu-
> rifies the process of obtaining just verdicts . . . . Because it refines the actual trial
> issues and prevents the parading of prejudice before the jury, the motion in limine
> also reduces overall judicial involvement by decreasing the opportunities for
> committing reversible error, which might compel the trial court to declare a mis-
> trial or the appellate court to order a new trial. Any increase in the time initially
> spent on an individual case is well invested as it generally results in a more care-
> ful consideration of complex issues and minimizes the chances of error.
>
> Perhaps more importantly, the pretrial ruling replaces the ineffective, unrealistic,
> and psychologically invalid admonitions to the jury. It offers a simple and com-
> pletely efficacious method of preserving fair trials by isolating the jury from
> prejudicial inferences. The motion in limine takes account of human nature and
> basic psychology.

20 Am. Jur. Trials 441, Motion in Limine Practice, § 8 Advantages of the motion (2005). In

short, the effect of granting some or all of defendants' motions would be to focus, streamline,

and potentially shorten the trial.

---

in Limine Practice, § 8 Advantages of the Motion (2005) ("[The pretrial motion in limine ruling]
replaces the ineffective, unrealistic, and psychologically invalid admonition to the jury.").

**B.      If Plaintiffs Fail to Link Their Evidence to the Elements of The Class-Wide Claims That Will Be Tried in October, the Evidence is not Relevant and Should be Excluded.**

Plaintiffs frequently refer to the general relevance of evidence to "plaintiffs' case-in-chief" (*see* Pls.' Resp. at 19) or "plaintiffs' claims" (*see id.* at 5, 10, 33). That is not the standard. It is axiomatic that plaintiffs have the burden of proving that their evidence is relevant to an element of one of their claims *that will be tried* as defined by this Court. *See, e.g.*, *United States v. Samaniego*, 187 F.3d 1222, 1224 (10th Cir. 1999) (burden of proving admissibility is on proponent of evidence); *Curtis v. Oklahoma City Pub. Sch. Bd. of Educ.*, 147 F.3d 1200, 1218 n.21 (10th Cir. 1998) (citing *Boren v. Sable*, 887 F.2d 1032, 1037-38 (10th Cir. 1989)) (same). To meet that burden, they have to be able to link their evidence to an element of a trespass or nuisance claim that will be part of this class-wide trial. Where they cannot do that, their evidence should be excluded. *See* Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible.").

Plaintiffs' response concedes this point, as it must. (Pls.' Resp. at 2 (citing advisory committee notes for the proposition that "[r]elevancy is not an inherent characteristic to any item of evidence but exists only as a relation between an item of evidence *and a matter properly provable in the case*."). (emphasis added)) Rule 401 makes clear that relevant evidence is evidence that tends "to make the existence of *any fact that is of consequence to the determination of the action* more probable or less probable . . . ." Fed. R. Evid. 401 (emphasis added). Thus, linking evidence to the general subject matter of the lawsuit or to plaintiffs' self-serving characterizations of "their case" (rather than a fact of consequence to the determination in the upcoming class-wide trial) is not sufficient to meet plaintiffs' burden on relevance.

At various points in their response, plaintiffs are forced to concede that their evidence is not directly probative. (Pls.' Resp. at 2)  They then claim instead that their evidence is relevant as "circumstantial" evidence. (*See, e.g.*, Pls.' Resp. at 9 ("Some of this evidence may tend to show human exposures [or risks] only circumstantially.  But significant reliance on circumstantial evidence is probably inevitable in a trial involving misconduct at a nuclear weapons facility where much information remains classified."); *id.* at 23.)  But plaintiffs fundamentally misunderstand the meaning both of relevance and of circumstantial evidence.  To be relevant even circumstantially, evidence must at a minimum bear some similarity to the direct evidence that is wanting. *See* 3 Fed. Jury Prac. & Instr. § 101.42 (5th ed.) ("'Circumstantial evidence' is proof of one or more facts *from which you could find another fact*.") (emphasis added).  Plaintiffs' proffered evidence does not meet this standard.

1.     **The Class-Wide Elements of Plaintiffs' Claims, As Set Forth by This Court.**

Only the class-wide elements of plaintiffs' nuisance and trespass claims will be tried beginning in October, and this Court has specified what those elements are.  Plaintiffs' trespass claim requires a physical intrusion upon the property of another. (*See* 12/17/04 Order re Instructions); *Hoery v. United States*, 64 P.3d 214, 217 (Colo. 2003).  In the Court's December 17, 2004 Order, the Court held that, in order to prove a trespass, plaintiffs must establish  that "Dow or Rockwell or both of them intentionally undertook an activity or activities that in the usual course of events caused plutonium to be deposited on the Class Properties." (12/17/04 Order, Instruction No. 3.11, at 2.)

Under Colorado law, a nuisance requires an intentional, negligent, or unreasonably dangerous activity resulting in the unreasonable and substantial interference with plaintiffs' use and

enjoyment of their properties.  *Hoery,* 64 P.3d at 218.  As defendants understand the Court's May 17, 2005 Order, the Court held that plaintiffs can prove the "interference" element of their nuisance claims in the following ways.  First, to make out a prima facie case of nuisance, plaintiffs can prove an interference by establishing "class-wide exposure to plutonium and resulting class-wide increase in human health risk"; provided that, in making this determination, the jury may only consider the magnitude of the "common, class-wide health risk." (5/17/05 Order at 5.)[7] Second, plaintiffs can prove an interference by establishing "that there is an objectively demonstrable risk of future harm" that is "based on objective conditions, such as existing contamination on-site and off-site that may be released or remobilized in some fashion that would result in human exposure and increased health risk, that have the potential to affect all of the Class Area." (*Id.* at 6.)  These paths to nuisance liability require a demonstration of increased health risk to all class members, arising from the past or future release of plutonium from Rocky Flats.  (*Id.*)  In addition, the Court held that, in order to recover damages in the class trial under Restatement Section 930, "Plaintiffs must further demonstrate that it appears any nuisance they prove will continue indefinitely."  (*Id.* at 3; *see also* 12/17/04 Mem. Op. and Order at 19-20.)

---

[7] Plaintiffs concede that evidence of substances other than plutonium will not be part of the class-wide trial.  (*See* Pls.' Resp. at 21;  Pls.' *Daubert* Resp. at 54.)  More specifically, plaintiffs have stated that evidence of exposures to substances other than plutonium prior to the clear and comparatively enduring date are irrelevant and "will not be addressed in the class trial as a form of interference." (Pls.' Resp. at 21.)  Plaintiffs also state that "[s]pecific evidence of interference with use and enjoyment in the form of health risks associated with future exposures to substances already released from the site . . . will not be presented *for any substances other than plutonium.*" (*Id.* (emphasis added).)  And plaintiffs no longer plan to use Dr. Goble to testify about the few non-plutonium substances he addressed in his report.  In response to defendants' *Daubert* challenges to that testimony, plaintiffs state that they have elected to have Dr. Goble confine his testimony to plutonium. (Pls.' *Daubert* Resp. at 54.)

Any other aspects of plaintiffs' trespass and nuisance claims will not be litigated as a part of that class-wide trial.

### 2.  The Substantive Elements of Plaintiffs' Claims.

#### a.  Plaintiffs Have Not Attempted to Link Any Evidence at Issue to Their Trespass Claim.

Plaintiffs make no argument in their response that *any* of the categories of evidence defendants seek to exclude is relevant to prove their trespass claims.  (They are not.)

#### b.  Plaintiffs Have Not Attempted to Link Any Evidence at Issue to a Release-Based Nuisance Claim, Which Must Be Based on Actual Exposure.

Plaintiffs also do not claim that *any* of those categories are relevant to prove a nuisance based on "past or ongoing exposure."  (They also are not.)  Thus, defendants focus on the other potential class-wide nuisance claim—"demonstrable threat of future injury"—in discussing relevance.

#### c.  Plaintiffs Have Not Linked Any Evidence at Issue to a Threat-Based Nuisance Claim Either.

At various points in their response, plaintiffs refer generally to future threat when discussing the relevance of evidence at issue.  (Pls.' Resp. at 22, 26, 27.)  However, they fail to link any of the evidence to a threat-based nuisance as it has been defined by this Court.

*First*, a threat-based nuisance must be "*real*," "*verifiable*" and an "*objectively demonstrable risk* of future harm" that is "based on *objective conditions* such as existing contamination on-site and off-site that may be released or remobilized" resulting in "a *common, class-wide health risk*." (*See* 5/17/05 Order at 2, 5-6.)  Plaintiffs cannot ignore these requirements.  For example, plaintiffs seek to introduce evidence that they suggest relates to topics such as general

risk mismanagement, public perceptions and market reaction and uncertainty as an overall "pattern" of conduct. (Pls.' Resp. at 21-22, 28.) The evidence plaintiffs seek to admit has nothing to do with any "real and verifiable" threat to the plaintiff class. (Nor does it fit into any other category of a cognizable nuisance set forth by this Court.) To establish a threat-based nuisance, plaintiffs must show "that injury is *imminent* and *certain*." *Tennessee ex rel. Cunningham v. Feezell*, 400 S.W.2d 716, 717 (Tenn. 1966) (emphasis added); *see also Falkner v. Broomfield*, 117 N.W.2d 125, 128 (Mich. 1962) ("A bare possibility of nuisance or a mere fear or apprehension that injury will result is not enough. On the other hand, an injunction may issue to prevent a threatened or anticipated nuisance which *will necessarily result* from the contemplated act, where the nuisance is a *practically certain or strongly probable* result or a *natural or inevitable* consequence.") (emphasis added). Plaintiffs' "pattern" evidence does not come close to establishing a reasonably certain and imminent threat of future harm.

*Second*, the nuisance must *exist* and be *continuing indefinitely*. (5/17/05 Order at 6 (citing *Cook IX*, 273 F. Supp. 2d at 1202–03) (nuisance be "a present menace and interference"); *id.* at 3 (nuisance must be one that "will continue indefinitely") Plaintiffs cannot eliminate these requirements either. But plaintiffs make no attempt to link any evidence of general conduct that occurred in the past and is at issue in these motions to any class-wide threat that is present now and will continue into the future.

Defendants do not claim that plaintiffs must show that *every* piece of evidence meets *each* of the above requirements as plaintiffs suggest. (Pls.' Resp. at 9 n.5 & 27.) But, as discussed above, plaintiffs have the burden of demonstrating that the evidence is relevant to an issue

that will be tried.  Thus, they must link it to an element of their class-wide trespass or nuisance claims as defined in the Court's May 17, 2005 Order.

### 3. Plaintiffs' Response Makes No Attempt to Demonstrate Relevance of Any Disputed Evidence to the Elements of Plaintiffs' Claims That Will Be Tried in the Class-Wide Trial.

In their response to defendants' motions in *limine*, plaintiffs fail to take into account the Orders of this Court that have set forth what will be tried as part of this class-wide trial as well as those elements that plaintiffs must prove in the trial to establish a prima facie case of trespass or nuisance.  Plaintiffs also have made no attempt to narrow their nearly two-year-old exhibit list in light of the several intervening key rulings by the Court, such as by removing *even one exhibit* that is no longer relevant in the class-wide trial as a result of those rulings.  Thus, it is inaccurate to say (as plaintiffs do) that the parties disagree about the interpretation of the Court's May 17, 2005 Order (Pls.' Resp. at 9 n.5), because the plaintiffs' have not offered *any* interpretation of that Order.  Indeed, plaintiffs virtually ignore the Order, citing it only twice for support in their 41-page motion in *limine* response (and only twice in their 128-page response to defendants' motions to exclude expert evidence).

Unlike defendants, who approached all of their motions in limine through the lens of the Court's May 17, 2005 Order and other recent rulings, plaintiffs completely fail to take the Court's rulings into account in responding to defendants' motions in *limine*.   Instead, plaintiffs attempt to re-define the relevance of evidence *in relation to "their case"* (as they wish to present it) rather than consider the relevance of their evidence *to the claims that this Court has ruled will be tried* in the class-wide trial.

Plaintiffs suggest that evidence is relevant to "their case" so long as it relates to the following concepts, whether or not it is linked to any element of a class-wide claim that will be tried. Thus, plaintiffs argue that evidence is relevant if it is related to:

- **Rocky Flats Generally**: "events at the plant" (Pls.' Resp. at 10), "larger picture" and "overall picture" (*id.* at 14), "the operation of the plant" (*id.* at 19), "major events in Rocky Flats' history" (*id.* at 31), "historical events" (*id.* at 32), "major historical events in the history of Rocky Flats" (*id.* at 33), "the story of Rocky Flats" (*id.* at 34).

- **So-Called Misconduct**: "misconduct at a nuclear weapons facility" (*id.* at 9), "misconduct at the plant" (*id.* at 13), "pattern of misconduct throughout the history of Rocky Flats" (*id.* at 28), "overall pattern of their ongoing recklessness in the face of very serious dangers" (*id.* at 26), "bad conduct" (*id.* at 34 n.8).

- **Risk Management Generally**: "inadequate risk management practices" (*id.* at 26), "lack of adequate precautions" (*id.* at 26), "safety precautions" (*id.* at 26-27).

- **Waste Handling and Storage**: "handling of hazardous materials" (*id.* at 9), "waste storage and disposal practices" (*id.* at 22), "pattern or practice of negligent waste handling" (*id.* at 23), "overall pattern of negligent waste handling" (*id.* at 27), "overall pattern of reckless and negligent mishandling of dangerous materials" (*id.* at 33).

- **Uncertainty**: "dangers both known or unknown to area residents" (*id.* at 9), "general risks of residence near a nuclear weapons facility whose operators demonstrably engaged for many years in reckless practices involving the storage and disposal of a wide variety of hazardous wastes both known and unknown, radioactive and non-radioactive" (*id.* at 21), "uncertainty over existing and potential future releases and contamination" (*id.* at 21), "classwide uncertainties" (*id.* at 22).

- **Public Perceptions and Market Reaction**: "public perceptions," "the property market's reaction," "market perception" (*id.* at 10), "influencing perceptions of the site in the real estate market" (*id.* at 13), "property market reactions" (*id.* at 21), "market discount" (*id.* at 25), "well-founded market perceptions and fears" (*id.* at 27), "the rationality of the public's perception [and] risk" (*id.* at 27-28), whether "the Class perceived Rocky Flats as a nuisance" (*id.* at 39).

Plaintiffs cannot, however, substitute these subjects for the elements of their claims that will be tried in the class-wide trial consistent with Colorado nuisance law and this Court's rulings.

For example, uncertainty alone is insufficient to be the basis for plaintiffs' nuisance claim. It may be possible for plaintiffs to argue that uncertainty about the nature or amount of some risk has some relevance to their claim. For example, if it is unclear whether (or what amount of) actual existing contamination and related exposure will cause a specific health risk to class-members, then it may be possible that such uncertainty has some bearing on this trial under this Court's Orders. But that is not what plaintiffs argue. Plaintiffs instead assert that the fact that some aspect of plant operations may be unknown or uncertain – such as the purported lack of "any complete and reliable inventory" of substances or materials used at the plant (*see* Pls.' Resp. at 21) – itself gives rise to the nuisance. The mere existence of any such supposed uncertainty, however, is exactly the opposite of a "real and verifiable" threat or an "objectively demonstrable condition" and cannot itself be a nuisance or a basis for plaintiffs' class-wide claims.

Similarly, market reaction cannot replace the interference element of a nuisance claim. This Court has already ruled that a nuisance requires (i) conduct that (ii) proximately causes (iii) a substantial and unreasonable interference with use and enjoyment (iv) that causes (v) damages. (*See* 7/24/03 Order at 52); *Hoery*, 64 P.2d at 218. The Court has specified what may constitute an interference, as discussed above. (*See* 5/17/05 Order at 5–6.) In their response, plaintiffs frequently seek to substitute "market reaction" for the interference element of the claim:



But (i) conduct (ii) to which the market reacts (iii) with resulting damages is *not* a nuisance under this Court's rulings or Colorado law. Market reaction is only relevant if it involves reaction to a recoverable trespass or nuisance. The interference element is central to any nuisance claim and cannot be eliminated. (*See, e.g.,* 5/17/05 Order at 4 (in a class action, class-wide interference element cannot be ignored and must be specified so the Court can determine whether it is class-wide).)

Furthermore, this Court has ruled that neither market stigma nor mere proximity to a nuclear weapons facility is sufficient to meet the elements of a nuisance claim. (5/17/05 Order at 9 ("a decrease in the market value of property simply is not an actionable interference with the right to use and enjoy property"); *Cook IX,* 273 F. Supp. 2d at 1208 ("Colorado law does not permit a finding of substantial interference based solely on the existence of a neighboring facility that causes property values to diminish.").) Simply put, market reaction has to result from a nuisance or trespass that is recoverable to factor into damages.[8]

---

[8] Of course, even where market reaction is relevant, acts of conduct are not relevant to a damages claim where the market was not aware of them. Plaintiffs concede this where it suits them. (Pls.' Resp. at 9 ("a market cannot readily discount property values by virtue of problems of which the market has no inkling").) Thus, "dangers . . . *unknown*" cannot be relevant as plaintiffs claim. (Pls.' Resp. at 9 (emphasis added); *see also id.* at 26.) For example, plaintiffs have not identified evidence that the market was aware of anything related to ethylene oxide or

In sum, this trial is about the elements of plaintiffs' trespass and nuisance claims that will be tried, as defined by the Court, not plaintiffs. It is ***not*** about anything and everything related in any way to defendants' combined fifty-year history operating the Rocky Flats facility.

### 4.  Examples of Plaintiffs' Failure to Demonstrate Relevance.

Plaintiffs' failure to demonstrate the relevance of their evidence to their class-wide continuing trespass and nuisance claims shows most clearly itself in the below two examples.

***Non-plutonium contamination.***  As discussed at greater length below (*see* Section VIII *supra*), plaintiffs have not given an account of how any substance other than plutonium either poses or will pose a class-wide impact (*i.e.*, contamination, exposure, health risk, etc.). Perhaps in recognition of this fact, plaintiffs now announce their intention that evidence of substances other than plutonium will not be part of the class-wide trial. (*See* Pls.' Resp. at 21; Pls.' *Daubert* Resp. at 54.) Plaintiffs have stated that evidence of past exposures to substances other than plutonium prior to the clear and comparatively enduring date are irrelevant and "will not be addressed in the class trial as a form of interference." (Pls.' Resp. at 21.) Plaintiffs also state that "[s]pecific evidence of interference with use and enjoyment in the form of health risks associated with future exposures to substances already released from the site . . . will not be presented ***for any substances [other than] plutonium***." (*Id.* (emphasis added).) Consistent with this, plaintiffs have also announced that they no longer plan to use Dr. Goble to testify about the few non-plutonium substances he addressed in his report. Per plaintiffs, Dr. Goble will confine

---

that it was even aware that it was used at Rocky Flats. Evidence of conduct related to ethylene oxide is therefore irrelevant and should be excluded (on that ground, and others).

his testimony to plutonium. (Pls.' *Daubert* Resp. at 54.) Hence, substances other than plutonium are not probative of any class-wide nuisance claim to be tried.

  ***Water-based releases.*** In the fifteen-year history of this litigation, plaintiffs have yet to come forth with any evidence of class-wide, continuing water-based release or threat from Rocky Flats, though it is their burden to do so. Though plaintiffs' exhibit list is rife with evidence of conduct that can impact only water-based exposure pathways, none of their experts, lay witnesses, or documentary evidence lays any foundation to demonstrate that such conduct had or could have a class-wide effect. What is more, plaintiffs fail to challenge defendants' arguments that such evidence is not and could not be class-wide, because there are large portions of the class area that do not receive any water from sources from Rocky Flats. (*See* Def.'s MIL No. 3 at 4-6; Defs.' MIL No. 6 at 7 n.5; Defs.' MIL No. 12 at 9.) Thus, it is not possible for all class members to be impacted. *Cf. Cook IX*, 273 F. Supp. 2d at 1205 & n.30 (determining that case law stands for the proposition that there can be no recovery for third party fears that depress property values in the absence of actual contamination, such as when polluted groundwater did not reach plaintiffs' property).

  **C. The Whole of Plaintiffs' Case Cannot be Greater than the Sum of its Parts.**

  In attempting to switch the relevance inquiry to a "pattern or practice" and relate everything to that, plaintiffs ignore the fact that they must have individual evidence sufficient to meet the elements of their claims. It is simply not an answer to an attack on specific evidence that it is part of the overall whole of plaintiffs' case. Plaintiffs' theory that the whole of their evidence is greater than the sum of its parts does not square with the requirements of the Federal Rules of Evidence. Under the Rules, each item of plaintiffs' proffered evidence must satisfy the require-

ments for admissibility on its own. *See, e.g., Frey v. Chi. Conservation Ctr.*, 119 F. Supp. 2d 794, 796–797 (N.D. Ill. 2000) ("When resolving a motion to exclude, federal courts must evaluate each proffered opinion individually against the standards of the federal rules of evidence, rather than evaluate a witness's testimony in aggregate.").

### D.     Plaintiffs' Evidence Is Impermissible Propensity Evidence.

In response to many of defendants' motions in *limine*, plaintiffs flatly concede that they will not be able to link the conduct evidence defendants have asked to exclude to *any* nuisance or trespass.  But they nevertheless ask the Court to give them *carte blanche* to introduce evidence covering defendants' entire history of operations at Rocky Flats – even if unrelated to any actual release of contaminants or demonstrable threat of future harm – on the ground that this evidence is probative of defendants' purported "overall pattern" of negligent waste handling and poor environmental practices.  For example:

- Plaintiffs concede that worker exposure evidence has no place in the case (*id.* at 22) but seek to leave the door open to "[e]vidence that defendants were tolerant of onsite exposures" because this evidence purportedly "permits an inference that they were similarly incautious as to offsite exposures." (*Id.* at 23.)

- Plaintiffs contend that incidents that occurred wholly within buildings are relevant because "[e]vidence of chronic disregard for containment of plutonium and other hazardous waste" "can show a pattern or practice of negligent waste handling." (*Id.* at 23.)

- Plaintiffs seek to introduce evidence of "past risks that never materialized" on the ground that "defendants' inadequate risk management practices fit with the overall pattern of their ongoing recklessness in the face of very serious dangers." (*Id.* at 26.)

- As with incidents wholly within buildings, plaintiffs seek license to present evidence of incidents that did not cause class-wide releases or threaten contamination because these purportedly show "defendants' overall pattern of negligent waste handling." (*Id.* at 27.)

- Despite the Court's Order limiting the trial to *class-wide* trespass and nuisance proof, plaintiffs contend that they should be permitted to put on evidence of conduct that does not apply class-wide, because it purportedly supports their theory "that defendants engaged in a pattern of misconduct throughout the history of Rocky Flats." (*Id.* at 28.)

- Plaintiffs argue that evidence of the conduct at issue in the criminal investigation – although not linked with any past exposure or demonstrable future risk – is admissible to support their theme "that the entire history of Rocky Flats was pervaded by haphazard environmental practices . . . ." (*Id.* at 35.)

In short, plaintiffs seek to introduce evidence of purportedly bad conduct and incidents without limitation – no matter how remote such evidence may be from their class-wide nuisance or trespass claims to be tried – on the ground that evidence of other incidents and supposed bad conduct demonstrates an "overall pattern" of negligent behavior. This position is not consistent with the law.

Federal Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts, is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Yet plaintiffs' justification for presenting a substantial amount of conduct evidence that they concede cannot be linked to any trespass or nuisance is exactly that.

Plaintiffs attempt to characterize their evidence as "pattern" evidence – presumably to suggest that this evidence falls within Federal Rule of Evidence 406, which provides that "[e]vidence of habit of a person or the routine practice of an organization ... is relevant to prove that the conduct of the ... organization on a particular occasion was in conformity with the ... routine practice." Fed. R. Evid. 406. But "habit" or "routine practice" evidence is evidence of "a regular practice of meeting a *particular situation* with a *specific type of conduct*, 'such as the habit of going down a particular stairway two stairs at a time, or of giving a hand-signal for a left

turn, or of alighting from railway cars while they are moving.'" *Camfield v. City of Oklahoma City*, 248 F.3d 1214, 1232-2233 (10th Cir. 2001) (emphasis added); *see also Rivera v. Union Pacific R.R. Co.*, 868 F. Supp. 294, 299 (D. Colo. 1994) ("habit" or "custom" may be used to establish a regular response to a repeated situation); *Meyer v. United States*, 464 F. Supp. 317, 321 (D. Colo. 1979) (habit is person's or organization's practice of handling a particular kind of situation with a specific type of conduct, "one's regular response to a repeated specific situation").

Here, plaintiffs are not trying to show that defendants engaged in a specific type of conduct in response to a repeated situation.  To the contrary, as defendants' individual motions in *limine* demonstrate, plaintiffs seek to introduce evidence of four decades of widely varying chemical and substance use, handling and disposal practices for the purpose of demonstrating ***in general*** that defendants engaged in "negligent waste handling," "recklessness," or a "pattern of misconduct."  (*See, e.g.*, Pls.' Resp. at 23, 26, 28.)  This is character evidence, not evidence of habit or routine practice.  *See Rivera*, 868 F. Supp. at 299 (Federal Rule of Evidence 406 cannot be used to show "character"; thus defendant could not seek to prove it was his "habit" to be non-negligent); *see also Brokopp v. Ford Motor Co.*, 71 Cal. App. 3d 841, 850, 139 Cal. Rptr. 888, 894 (4 Dist. 1997) (error to permit plaintiffs to attempt to prove Ford's negligence in failing to discover defect in power steering pump bracket by introducing evidence of negligence in failing to discover defect in other part that was unrelated to accident).

Citing *Elliot v. Turner Constr. Co.*, 381 F.3d 995 (10th Cir. 2004), plaintiffs urge the Court to permit them to introduce purported evidence that "the entire history of Rocky Flats was pervaded by haphazard environmental practices ..." (Pls.' Resp. at 35.)  But *Elliot* in no way

endorsed the nearly unlimited proof that plaintiffs are proposing. In fact, the Tenth Circuit in *Elliot* specifically declined to hold that the purported "other acts" in question were admissible to establish "a pattern of negligence." *Id.* at 1004. Instead, the Court held that the evidence was admissible because it was not "other acts" evidence at all: the defendant's earlier errors during the bridge assembly process in which the accident took place were actually "part of the same tortious event" and therefore were not subject to Rule 404(b). *Id.* At the same time, the Tenth Circuit expressly recognized that where other acts are "wholly apart from and not ***intricately related to the asserted claim***," Rule 404(b) applies. *Id.* (emphasis added).

Plaintiffs also cite *United States v. Masters*, 622 F.2d 83 (4th Cir. 1980), suggesting that this case authorizes their "other acts" evidence to provide the "setting" or "*res gestae*" for the case. (Pls.' Resp. at 34.) *Masters*, however, provides no support for notion that conduct unrelated to the alleged trespasses and nuisances in question is admissible. In *Masters*, the evidence admitted to show "setting" was several tape-recorded conversations leading up to an illegal weapons sale. The Court of Appeals held that the lead-up conversations were properly admitted because they served to "complete the story of the crime on trial by proving its ***immediate context*** of happenings ***near in time and place***." *Id.* at 87 (emphasis added). The evidence could not be "fragmentized" without impairing the government's proof of the crime. *Id.*

In sum, the case law – including *Elliot* and *Masters* – consistently holds that "other acts" evidence admissible only in limited circumstances. It *is **not*** admissible where the other acts in question are dissimilar, distant in time, and not intricately related to the acts that are at issue in the trial. Here – as demonstrated in detail in each of defendants' individual motions in *limine* – the conduct evidence defendants seek to exclude is unrelated to the alleged nuisances and

trespasses at issue in this trial.  Plaintiffs' contention that this evidence nonetheless proves an "overall pattern" of negligence and environmental misconduct is not a legitimate ground for allowing this evidence into the trial.

## II.      REPLY BRIEFS IN SUPPORT OF INDIVIDUAL MOTIONS

The above introduction and overview applies to all of defendants' motions in *limine*.  In addition, defendants respectfully submit short individual replies that specifically address the particular issues raised by plaintiffs' response to each of defendants' sixteen individual motions in *limine*.  (*See* Sections III- XVI *infra*.)  Those individual replies are organized in the same order as defendants' opening motions.  Thus, the numbered tabs herein correspond to the motion numbers in the captions of defendants' original motions in *limine*.



III.     **THE FBI RAID  (DEFENDANTS' MIL NO. 1)**

    A.     **Overview of Issues Related to The FBI Raid, The Grand Jury Investigation and Rockwell's Plea.**

Defendants' motions related to the FBI raid of Rockwell in 1989, the grand jury investigation in 1989 and the early 1990s and Rockwell's 1992 plea agreement cannot simply be blurred together as plaintiffs attempt to do.  The FBI raid, the grand jury investigation and Rockwell's 1992 guilty plea do not represent a seamless continuum – let alone one ending in plaintiffs' trespass and nuisance claims in this case.  Rockwell was not ultimately charged with any of the crimes alleged in the search warrant underlying the 1989 FBI raid.  In fact, the government admitted that those allegations were false.  (*See* Defs.' MIL No. 1 at 3-5.)  The Rockwell plea is not related to any of the original allegations underlying the raid.  (*See* Defs.' MIL No. 3 at 2-3.)  The grand jury investigation raises issues that are different and unrelated to the raid or the plea, including the role of prosecutors such as the Department of Justice.  (*See* Defs.' MIL No. 2 at 2-4.)  In their response brief, plaintiffs ignore that there is a fundamental disconnect between these events.  Indeed, there are numerous separate and independent reasons for the exclusion of evidence (and the related underlying conduct) specific to each of defendants' individual motions on the FBI raid, the grand jury investigation and Rockwell's 1992 guilty plea as well as the motion involving other lawsuits against defendants.  Plaintiffs do not distinguish between, or even respond to, most of these arguments.

Nevertheless, there are some issues involved in these three motions that defendants can respond to in a consolidated form.

## 1.    Defendants' Motions are Neither Vague Nor Overbroad.

Plaintiffs say defendants' motions in *limine* related to the FBI raid, the grand jury investigation and Rockwell's 1992 guilty plea suffer from being vague and overbroad. Not so. First, defendants' motions are not vague. Each motion includes a detailed description of the evidence that is the subject of the motion, including specific identification of the related conduct at issue underlying the raid and the plea. (*See* Defs.' MIL No. 1 at 3-5; Defs.' MIL No. 2 at 5-6; Defs.' MIL No 3. at 1-5, 11-12.) The motions are concrete and seek to exclude focused and narrowly identified subject matters. Second, while defendants' motions do seek relief in terms of exclusion of specific documents such as the FBI search warrant and Rockwell's plea agreement, as well as categories of evidence and testimony referencing or related to the subject matter of each motion, they are not "overbroad." The motions each discuss specific evidence and make out a detailed case of the reasons for exclusion of the various evidence. All of the categories of evidence included in defendants' proposed order are addressed in detail in the motions, identifying the specific bases or grounds for the exclusion of each topic or category. In the context of each individual motion, the relief defendants ask for is tightly crafted, not unduly broad and would serve to narrow appropriately the material to be presented at trial to that relevant to the class-wide claims that the Court has identified to be tried.

## 2.    Evidence of Rockwell's Plea, the FBI Raid and the Grand Jury Investigation Are Inadmissible Under Rule 404(b).

Plaintiffs fail to effectively rebut relevant authorities excluding evidence of other bad acts. Plaintiffs claim that the cases cited by defendants are not controlling or persuasive, and attempt to distinguish a handful of them on their facts. (*See* Pls.' Resp. at 7-8.) But plaintiffs simply ignore defendants' most probative cases relating to the admissibility of prior bad acts.

For example, plaintiffs do not address, in any way, *Brandeis-Bardin Institute v. Rocketdyne, Inc.*, No. CV 95-8316 ABC (C.D. Cal. May 27, 1997) (attached as Ex. 15 to Defs.' MIL No. 3). In that case, the court considered whether a plea agreement resulting from environmental violations was relevant in a case alleging radionuclide and chemical releases from the Santa Susana facility and the resulting contamination of properties near that facility. The court found the plea agreement to be irrelevant, because the plea agreement did not involve any of the radionuclides or chemicals alleged to have contaminated the properties, and plaintiffs did not show the necessary linkage between triaminoguanide nitrate ("TAGN") storage and disposal and the migration of any substances onto their properties. *Id.* at 29. Likewise here, the plea agreement is not relevant, because it does not involve plutonium or other substances alleged to have been released offsite, and plaintiffs have not shown a connection between the plea conduct and class member exposure or the migration of any materials onto their properties.

Plaintiffs similarly ignore, and make no attempt to distinguish or respond to the Tenth Circuit's ruling in *Tuttle v. ANR Freight Systems*, No. 84-K-1586, 1992 WL 95412, *3 (10th Cir. April 29, 1992) (affirming exclusion of evidence that the plaintiff had successfully maintained a breach of contract claim against her defendant employer in her discrimination case against the employer). In that case, evidence of a prior disposition involving a litigant that does not bear on the issues to be decided in the case at hand is properly excluded under Rule 402.[1]

---

[1] Plaintiffs also fail to respond to or address *Atkins v. GE Capital Mortg. Servs.*, 993 F. Supp. 1406, 1414 n.5 (M.D. Ala. 1998) (granting the defendant's motion to exclude evidence of its prior settlement of a separate action brought against it based upon similar – but not identical – allegations).

Even with regard to the cases plaintiffs do discuss (*see* Pls.' Resp. at 7-8), plaintiffs' inaccurate and incomplete recital of the factual context of these cases does not diminish their persuasiveness nor effectively rebut the premise that Rockwell's guilty plea (let alone the FBI raid or the grand jury investigation) is inadmissible to show that Rockwell had a propensity to commit bad acts while it was operating the Rocky Flats plant.  (*See, e.g.* Defs.' MIL No. 1 at 10; Defs.' MIL No. 2 at 11; Defs.' MIL No. 3 at 17-19.)  Not surprisingly, such evidence is routinely excluded where the only purpose served by its introduction is to show that defendant is a bad actor – an inference Rule 404(b) forbids.[2]  (*See further* Section I.D. *supra*.).

> **3.    Admission of Evidence Related to the FBI Raid, the Grand Jury Investigation and/or Rockwell's Guilty Plea Would Unfair Prejudice Dow.**

Plaintiffs completely discount the prejudice that would inevitably flow to Dow from introduction of evidence of the FBI raid, the grand jury investigation of Rockwell and/or Rockwell's 1992 guilty plea.  Plaintiffs are dismissive of this issue asserting that any unfair prejudice to Dow is "minimal or nonexistent" (Pls.' Resp. at 36) despite the fact that:  (1) Dow was no longer the Rocky Flats contractor and had ceased operating the plant for more than a decade at

---

[2]  Plaintiffs make no effort to distinguish a number of the cases defendants cite in this regard either.  For example, plaintiffs do not address *In re Catanella & E.F. Hutton Co., Inc. Sec. Litig.*, 1988 WL 33440, *3 (E.D. Pa. April 8, 1988) (excluding under Rule 404(b) from action under federal securities laws evidence of defendant's prior guilty plea to overdrawing its bank accounts), nor do they attempt to distinguish *In re Air Crash Disaster at Sioux City, Iowa*, 1991 WL 279284 (N.D. Ill. Dec. 26, 1991) (granting aircraft manufacturer's motion to exclude evidence of prior guilty plea to illegally influencing foreign governments to purchase defendant's aircraft where "the nature of the acts giving rise to the 1981 guilty plea appear to be of a profoundly different character than the nature of the acts that are presently at issue" and "[t]he evidence. . . appears solely to serve the impermissible purpose of proving character as a basis for suggesting the inference that McDonnell Douglas' alleged activities in the present case were in conformity with the bad character evidenced by its 1981 guilty plea.") (citations omitted).  (*See further* Defs.' MIL No. 3 at 18 n.9.)

the time when 1989 FBI raid occurred; (2) Dow's conduct was not the subject of any of the search warrant's allegations; (3) the special grand jury's criminal investigation did not involve Dow in any way; (4) Rockwell's 1992 plea has nothing to do with Dow who did not plead guilty to anything with respect to its operation of the Rocky Flats facility; and (5) none of Dow's conduct is at issue in Rockwell's 1992 guilty plea.  Plaintiffs assert that "the jury must be trusted to tell Rockwell from Dow" and that it is up to defense counsel to draw distinctions between the two defendants. (Pls.' Resp. at 10.)  Plaintiffs also assert that any spillover prejudice to Dow can be prevented simply by "clarifying for the jury that the criminal proceeding involved only Rockwell, not Dow." (*Id.* at 35.)

These glib assertions ignore that fact that the named plaintiffs themselves could not even distinguish between the two defendants in matters related to the raid, the grand jury criminal investigation and the plea. (*See* Cook Dep. at 62 (attributing her beliefs about Rocky Flats to "information about the grand jury and how *Dow Chemical* and Rockwell International pled guilty to doing bad things that they shouldn't have done.") (emphasis added).)[3]  Plaintiffs property experts do not distinguish between the defendants in this regard either. (*See* Defs' MIL No. 3 at 12-13.)  No matter how careful defendants are to underscore the distinctions between the parties, the risk is high that jurors will confuse the two defendants – just as plaintiffs and their experts do – and unfairly attribute to Dow evidence that relates solely to Rockwell.  Such potential prejudice to Dow supports exclusion of the evidence under Rule 403.  *See* 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 410.07[2] (1999) (emphasis

---

[3] In fact, in their response brief, plaintiffs suggest the criminal investigation against Rockwell supports their "central theme" of liability for both "contractors" - plural. (*See* Pls.' Resp. at 35.)

added) ("If the person who pleaded guilty is only one of a number of parties to the civil action, the trial court ... must decide whether the probative value of the evidence outweighs the possible prejudice *to the other parties involved*"); *see also United States v. Figueroa*, 618 F.2d 934, 944 (2d Cir. 1980) ("[t]here are few areas in which it is as important for this court to keep a watchful eye as on the admissibility of similar offenses in a case involving more than a single defendant"). (*See* Defs.' MIL No. 14 at 8.)

### 4.    Market Reaction is Insufficient to Establish Relevancy.

Plaintiffs claim that the FBI raid search warrant and related publicity are relevant to damages by "establishing the sources of market awareness" about (1) "events at the site" and (2) "risks posed by residence in its vicinity." (Pls.' Resp. at 5.)  Likewise they say that Rockwell's guilty plea and the underlying conduct that formed the basis for the plea are relevant "to show that market valuations were rationally tied to objective events involving the plant." (*Id.* at 16.) But these subjects are not at issue regarding the class-wide nuisance and trespass claims and cannot be the basis for liability against defendants: "[A] decrease in the value of Class properties as a result of Defendants' activities, in and of itself, is not an interference with Class members' use and enjoyment of properties." (5/17/05 Order at 8); *see also Cook IX*, 273 F. Supp. 2d at 1209.   Moreover, the Court has already found that diminished property value based on plant proximity is insufficient for liability here:

> [P]laintiffs in this case impermissibly seek recovery in nuisance based on the mere proximity of their properties to Rocky Flats.  I concur that Colorado law does not permit a finding of substantial interference with the use and enjoyment of property based solely on the existence of a neighboring facility that causes property values to diminish.  *See, e.g., Staley v. Sagel*, 841 P.2d 379, 382 (Colo.Ct.App.1992) (diminution in value attributable to proximity

to neighboring hog facility insufficient to establish nuisance liabil-
ity).

*Cook IX*, 273 F. Supp. 2d at 1208.  Thus plaintiffs' response that evidence of the FBI raid shows

market awareness or reaction to "events at the site," "Rockwell's tenure at the plant" or "risks

posed by residence in [the plant's] vicinity" (Pls.' Resp. at 5) does not establish any relevancy of

the raid or any other aspect of the criminal investigation.  It is only evidence that would be

probative of "allegations that Defendants' actions at the Plant resulted in actual contamination of

[class] properties and a risk of future contamination that substantially interfere with their use and

enjoyment of property" that meet this test.  *Cook IX*, 273 F. Supp. 2d at 1208.  Hence, evidence

of the raid, the grand jury investigation and the plea should be excluded.

So too with regard to plaintiffs' argument that purported "environmental misconduct

disclosed through the raid" are at the core of plaintiffs' case against Rockwell (Pls.' Resp. at 5)

and plaintiffs' attempt to establish the relevancy of evidence related to the grand jury investiga-

tion by claiming publicity and news reports related to the grand jury investigation caused the

public to learn of "substantial environmental malfeasance at the plant" and affected real estate

market perceptions.  (Pls.' Resp. at 13.)  That the accusations of purported environmental mis-

conduct alleged and publicized through the FBI raid or the grand jury investigation are central to

what plaintiffs say their case is about, that the raid purportedly triggered this lawsuit (Pls.' Resp.

at 33), or even that the "criminal investigation is central to [plaintiffs'] theme of this case" (Pls.'

Resp. at 35; *see also id.* at 9-10), does not automatically make these evidentiary topics probative

of any fact of consequence to the actual class-wide claims that the Court has ruled will be

involved in the class-wide trial.  Rather the relevancy determination must be made under Rule

401 together with the Court's Orders defining the claims to be tried.  Accordingly, publicity is

only relevant if it related specifically to the class-wide claims of trespass or nuisance. Publicity about, or market reaction to Rocky Flats-related events that do not pertain to these claims is not pertinent.

Plaintiffs do not identify the "substantial environmental malfeasance" that they say was revealed through grand jury publicity (*see id.* at 13) nor do they point to any specific "environmental malfeasance at the plant" that the public learned of through the raid. (*Id.* at 5.) Nor could they. The FBI raid and the underlying search warrant are not actual proof of any conduct by Rockwell. They represent mere unproven allegations. That Rockwell was investigated (and raided) by the FBI and the EPA is not proof of wrongdoing. (*See* Defs.' MIL No. 2 at 7 & n.8.) Likewise, the fact of a grand jury investigation is not proof of wrongdoing. An investigation is designed to determine whether accusations have any merit. (*See* Defs.' MIL No. 2 at 7.)[4] The named plaintiffs themselves confuse the fact of the investigation with actual proof of wrongdoing. (*See, e.g.,* G. Babb Dep. at 172 (". . . The FBI made a raid out there, and why would they do that if there wasn't something wrong? Q. Do you know whether they found something wrong? A. No. I don't know what they found."); *see also* S. Bartlett Dep. at 233.) Thus the risk that the jurors too would be confused is substantial.

In fact, the alleged conduct contained in the search warrant proved to be false. (*See* Defs.' MIL No. 1 at 3-5.) Unfounded or unsubstantiated allegations by their very nature cannot make any issue of consequence to plaintiffs' nuisance and trespass claims more or less probable. (*Id.* at 12-16.) Unsubstantiated accusations and mere investigation into possible wrongdoing are

---

[4] Plaintiffs do not distinguish or even address the cases defendants cite holding that courts routinely exclude evidence of grand jury investigation on this basis. (*See id.* at n.8.)

not "real and verifiable" or "objective demonstrable" conditions that could give rise to a common, class-wide health risk.   Publicity related to the mere existence of an investigation or unproven allegation is even less probative.

     **5.**     **Evidence That is Not Probative of Defendants' Conduct is Not Relevant; Defendants Are Not Liable for the Actions of the FBI, EPA, Prosecutors or News Media.**

Only defendants' conduct can give rise to liability here.   If the basis for plaintiffs' nuisance claim rests on FBI or EPA actions in conducting the raid, the actions of the U.S. Attorney or the Department of Justice in the grand jury investigation, the grand jury investigation or even the grand jurors themselves, judgment for defendants would be appropriate.   (*See* Defs.' MIL No. 1 at 11; Defs.' MIL No. 2 at 10 n.9.)   Evidence that is not probative of *defendants'* conduct is not relevant.   Plaintiffs do not address any of the law that defendants cite in support of this argument (*see id.*) and do not cite any authority whatsoever to the contrary on this issue.   Plaintiffs' shallow retort that the media and the FBI merely informed the public about Rockwell's allegedly bad conduct (Pls.' Resp. at 34 n.8) is specious.   Plaintiffs ignore that the FBI raid involved unproven allegations (that were later admitted to be false) and the grand jury investigation was just that – an investigation.   Unproven allegations and the mere existence of an investigation are not probative of Rockwell's conduct or liability.[5]   Publicity about such allegations and accusations – or the actions of non-defendants such as the FBI, EPA or DOJ – provides even less grounds for holding the defendants liable.

---

[5]  Plaintiffs say, without any citation to the record, that the criminal investigation was a source of anxiety for the class and therefore part of the nuisance. (Pls.' Resp. at 33-34.)  However, even as to the generic causation of fear and anxiety, plaintiffs must still link the evidence of purported interference to defendants' conduct to be actionable and relevant.

6.     **Evidence of the Grand Jury Investigation And/or Rockwell's Plea Would Not Apply Class-wide.**

Defendants argue that, even if evidence of the grand jury investigation and/or Rockwell's 1992 plea were somehow relevant to plaintiffs' claims, it could not be relevant class-wide based on the timing of the grand jury investigation and the plea compared to the dates when certain class member sold their properties. More specifically, defendants' argument is that by the time the grand jury investigation began in August of 1989, more than 300 class members had already sold their class-area properties. (Paul Liu Decl. at 2, Ex. B hereto.) Because they had sold their class properties before the grand jury had even been empanelled, the grand jury investigation could not have possibly had any impact on these class members. The grand jury investigation cannot constitute any portion of the alleged nuisance, trespass or damage to these class members and would not be appropriate class-wide evidence. To allow evidence of the grand jury to be admitted at the class-wide trial may improperly expand the substantive rights of these class-members. (*See* 5/17/05 Order at 4-5.) Other class members sold their properties at various points throughout the investigation. In fact, by the time the grand jury was dissolved and Rock-well entered its plea in 1992, over 4000 class members had already sold their class-area proper-ties. (Paul Liu Decl. at 2-3, Ex. B hereto.) The impact the grand jury or the plea had (if any) on such class members would vary depending on when they sold their properties. (*See* 5/17/05 Order at 4 ("[T]o allow the jury to consider forms of interference that do not apply to the class as a whole would impermissibly invite it to determine nuisance liability based on a non-existent composite class member who had suffered all of the interferences claimed by different class members.")); *see also Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 344-45 (4th Cir. 1998).

Plaintiffs dispute this argument, claiming that conduct underlying the investigation would have occurred earlier -- prior to 1990. (*See* Pls.' Resp. at 16.)  Yet, even if such conduct were relevant, the fact that the conduct occurred earlier is immaterial if class members did not learn of it until the investigation itself or through the plea.  As plaintiffs concede, "[a] market cannot readily discount property values by virtue of problems of which the market had no inkling." (Pls.' Resp. at 9.)

Defendants' argument, based on concerns related to the impermissible expansion of class members' substantive rights, does not stand in conflict with the relevance of evidence of the Rocky Flats plant site's ultimate remediation, as plaintiffs suggest.  (Pls.' Resp. at 15.)  Evidence of the plant cleanup goes to the issue of the enduring quality of any alleged nuisance and whether underlying conditions will continue indefinitely.  Plainly the onsite cleanup is relevant to the issues to be tried.

### 7.    Judge Matsch's Observations Are Compelling.

Plaintiffs attempt to discount the impact and influence of Judge Matsch's observations about the relevance of the FBI Raid, the grand jury investigation and Rockwell's guilty plea by calling them "preliminary" and "extemporaneous[ ]" remarks, and implying that Judge Matsch made them at a time when he was not particularly familiar with this case.  (*See* Pls.' Resp. at 7.)  Thus, plaintiffs urge this Court to disregard Judge Matsch's June 25, 1999 observations where he stated:

> [W]hat's clear is that *the FBI raid was a lot about nothing* and that the end result of the FBI raid was this settlement of criminal charges that are not particularly significant.

(6/25/99 Hr'g Tr. at 11 (emphasis added), attached as Ex. 10 to Defs.' MIL No. 1.)   Judge

Matsch went on to observe:

> [T]he FBI Raid . . . [and] the allegations that were made that re-
> sulted in the FBI raid including the things that were in the affida-
> vits for the search warrants, midnight burning, and all this stuff,
> none of it happened.  And, you know, those allegations were never
> proved.  This was not an event that causes great credit to the FBI
> or the Department of Justice . . . it wasn't the event that it was pa-
> raded to be in the press . . . .

(*Id.*)  In addition, Judge Matsch also commented that, "[If] you look at the end result of it all, and

the plea agreement and what does it come down to?  Not much."  (*Id.* at 56.)

At the time of the June 25, 1999 hearing, however, Judge Matsch did have a significant

basis to be conversant with issues related to the FBI raid, the grand jury investigation and

Rockwell's guilty plea:  He had been the presiding judge in the on-going special grand jury

investigation litigation and in the *Stone* case.  It was on that basis that, Judge Matsch agreed to

take on the assignment of assignment of this case in 1999 (*see id.* at 4-6) and with that same

foundation, background and experience that he offered his comments about the relevancy of the

FBI raid, grand jury investigation and Rockwell's plea.  The perspective of this respected jurist

remains persuasive and instructive.

Moreover, it is ironic, or perhaps disingenuous, that plaintiffs take issue with Judge

Matsch's comments in this context given that plaintiffs themselves have placed great weight in

Judge Matsch's opinions from the June 25, 1999 hearing when it suits their purpose. (*See*

7/22/04 Hr'g Tr. at 51-52 (plaintiffs citing to comments of Judge Matsch at 6/25/99 hearing in

support of the application of Restatement 930); *see also* Pls.' 2/26/01 Proposed Pretrial Plan at

4.)

8.    **Admitting Evidence of The FBI Raid Allegations, the Grand Jury Investigation and Rockwell's Guilty Plea Will Unduly Consume Enormous Amounts of Trial Time.**

If evidence of the raid, the grand jury investigation and/or Rockwell's guilty plea were admitted, defendants would be forced to defend against each and every one of these allegations – accusations that have nothing to do with plaintiffs' trespass and nuisance claims. It is not merely that such an effort would be "burdensome" as plaintiffs characterize defendants' argument under Rule 403 (Pls.' Resp. at 10), the point is that it would require an extremely time-consuming detour from the class-wide issues to be tried. Plaintiffs do not deny that a trial of the allegations of the FBI raid, the grand jury investigation and the issues related to Rockwell's plea would waste enormous amounts of trial time. (*See id.*) And while plaintiffs take issue with Judge Matsch's comments on the relevancy of the FBI raid and the criminal proceedings they do not contest Judge Matsch's observations that, if such evidence were allowed, the defendants would be entitled to mitigate the resulting unfairness by explaining to the jury the surrounding circumstances and events leading up to and surrounding the raid, the grand jury investigation and the plea:

> I just don't think that much can be made of the FBI raid as being the significant event here. If you did, all this stuff about what happened subsequently would, I think, have to come in to show that it wasn't the event that it was paraded to be in the press . . . .

(6/25/99 Hr'g Tr. at 56, attached to Defs.' MIL No. 1 as Ex. 10.) Plaintiffs make no attempt to distinguish the cases defendants cite establishing that evidence leading to such as sideshow is properly excluded under Rule 403. (*See* Defs.' MIL No. 1 at 17-18.) Accordingly, this Court should exclude raid-related evidence under Rule 403.

**B.      Issues Specific to The FBI Raid**

**1.      The FBI Raid and Its Underlying Allegations are Irrelevant to The Claims to be Tried.**

This Court should bar evidence of the search warrant that gave rise to the FBI raid as well as all evidence related to the topics covered in the warrant and evidence of the occurrence of the 1989 FBI raid at Rocky Flats, including all references to the raid.  These subjects are entirely unrelated to the class-wide claims to be tried.  Plaintiffs point to nothing establishing the relevance of such issues to the claims that this Court has identified to be tried in the class-wide trial. (*See* 5/17/05 Order.)

Federal Rule of Evidence Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The pertinent relevancy determination of what "fact[s] that [are] of consequence to the determination of the action" turns on the scope of plaintiffs' class-wide claims as defined by the Court. (*See, e.g.,* 5/17/05 Order; 12/17/04 Order.)  This must be the very focus of the Court's motion in *limine* determination and would appropriately focus and narrow the evidence to be presented at trial.

Plaintiffs fail to adequately respond to defendants' argument that the warrant itself and the subjects raised by the warrant are irrelevant the class-wide trespass and nuisance claims to be tried.  The search warrant did not allege the contamination of class properties with plutonium from Rocky Flats, nor would any of the conduct alleged by the search warrant (even if it were true) be probative of the class-wide trespass claim. (*See* Defs.' MIL No. 1 at 3-4; *see also* Ex. 4 to Def.'s MIL No. 1, App. For Search Warrant.)  Nor did any of the specific accusations of

conduct underlying the search warrant issues (even if they had been true) have anything to do with alleged substantial and unreasonable interference with use and enjoyment of class properties relevant to plaintiffs' class-wide nuisance claims. (*See id.*) Neither the FBI raid itself, nor any of the underlying false allegations on which the raid was based caused any actual exposure to all class members of plutonium (or any contaminant) let alone exposure resulting in increased health to all class members. (*See* 5/17/05 Order at 6.) And, plaintiffs fail demonstrate that that the FBI raid itself, or any of the alleged conduct on which the raid was based, is probative of the existence of any "objectively demonstrable risk of future harm" that is "based on objective conditions, such as existing contamination on-site and off-site that may be released or remobilized in some fashion that would result in human exposure and increased health risk, that have the potential to affect all of the Class Area." (*Id.* at 5-6.) Allegations such as those underlying the FBI raid that are unsubstantiated or that prove to be false are, in fact, the opposite of any "real and verifiable" or "objectively demonstrable" condition. (*See id.*)

More specifically, despite the fact that it is plaintiffs' burden to establish relevance, plaintiffs fail to link any of the individual topics of the FBI raid or search warrant to their class-wide claims.[6] And plaintiffs fail to make any attempt to distinguish any of the numerous cases defendants cite in support of the proposition that, in order for evidence of the FBI raid to have any

---

[6] Plaintiffs do acknowledge that the search warrant is hearsay. Anticipated testimony from Jon Lipsky and Bill Smith does not change that (even if these potential witnesses did participate in the investigation leading to the raid and contribute to creation of the warrant) nor does the prospect of their testimony make the subjects covered by allegations of the warrant or the fact of the raid relevant to any claims to be tried. The potential testimony of other witnesses who may discuss the raid itself or any of the subjects raised in the search warrant do not make those subjects (or the anticipated testimony) relevant to any issue to be tried either. The personal knowledge of potential witnesses to the events surrounding the raid or even to the subjects of the raid's allegations does not render those subjects relevant or admissible.

possible relevance, plaintiffs would first need to substantiate the raid's allegations. (Defs.' MIL

No. 1 at 13.)

Plaintiffs briefly mention Building 771 incinerator issues (Pls.' Resp. at 6), but there is no

evidence that the alleged Buildings 771 or 776 incinerator use caused any contamination of class

property or class member exposure, let alone any class-wide interference.  (*See* Defs.' MIL No. 1

at 3-4.)  In their response brief, plaintiffs describe – without any record citation or proffer of

evidence – anticipated testimony from Ron Avery (and perhaps other unspecified witnesses) that

the Building 771 incinerator was supposedly operated in contravention of a 1988 shut down

agreement.  (Pls.' Resp. at 6.)  This is the only example of purported evidence bearing on alleged

conduct specific to the raid that plaintiffs discuss, and even then plaintiffs fail to identify a single

specific citation to the record in support of their argument.  But more importantly, plaintiffs fail

to explain how Avery's testimony has any bearing on the class-wide claims to be tried.[7]  Even if

it did happen, the purported operation of the incinerator on one occasion in December 1988 has

not been linked to any actual release of plutonium or any objectively demonstrable risk of future

harm based on objective conditions that could cause release or remobilization resulting in human

exposure and increased health risk with the potential to affect all of the Class Area.[8]  (*See*

5/17/05 Order at 5-6.)  Thus, Mr. Avery's testimony would not have "any tendency to make the

---

[7] It is not defendants obligation in a motion in *limine* to rebut the credibility or substance of purported evidence plaintiffs may proffer, such as Mr. Avery's testimony.  While Mr. Avery's testimony is seriously lacking in foundation and credibility and is not substantiated by competent evidence, even if his testimony were true, it would be irrelevant to the claims to be tried.

[8] Other than the accusations of incinerator use, the other allegations in the search warrant have little or nothing to do with plutonium.  Accordingly, they are irrelevant and should be excluded on this ground alone.  Plaintiffs concede that evidence of substances other than plutonium will not be part of the class-wide trial. (*See* Pls.' Resp. at 21; Pls.' *Daubert* Resp. at 54.)

existence of any fact that is of consequence to the determination of th[is] action more probable or less probable than it would be without the evidence" and should be excluded. *See* Fed. R. Evid. 401.

Plaintiffs do not even discuss, let alone attempt to establish the relevancy of, any of the other underlying raid allegations. This conduct alleged in the search warrant, other than perhaps incinerator use, does not involve plutonium in any way. (*See* Defs.' MIL No. 1 at 3-4.) And, as discussed in defendants' motion, the other conduct allegations from the search warrant, even if they were true, come down to alleged water-borne releases or water-based exposure pathways. (*See* Defs.' MIL No 1 at 8-9.) Plaintiffs have no evidence that links water-based contamination with exposure to class members or impact on class property. Nor do plaintiffs make any attempt to rebut defendants' relevancy arguments related to such water-based contamination issues.

### 2. The FBI Raid is Not Appropriate Class-wide Evidence.

Plaintiffs protest defendants' argument that evidence related to the FBI raid would not be relevant class-wide by claiming "Class membership is [] defined by reference to the date of the raid." (Pls.' Resp. at 5.) But, as defendants have explained (*see* Defs.' MIL No. 1 at 12), the FBI raid has absolutely nothing to do with the plaintiffs' class-wide claims here. This class is based on a geographic contour corresponding to alleged plutonium contamination. (*See* 10/8/93 Class Certification Order.) The fact that membership in the class turns on owning class property on the day of the raid does not make the raid inherently relevant to the upcoming class trial and plaintiffs have not explained how it could. Plaintiffs' random selection of June 6, 1989 as the trigger date for class membership in their class certification motion does not magically transform plaintiffs' class-wide claims to be tried in October into class-wide claims involving the FBI raid.

The FBI raid (including the allegations that gave rise to the raid) did not involve any actual releases of any substance, let alone releases causing common class-wide exposure or impact on class property.  The raid did not involve or result in any exposure of any contaminant or health risk to class members.  Nothing about the raid, or the underlying allegations on which it was based, resulted in a common, class-wide exposure or increased health risk.  Nor did the FBI raid involve any real verifiable threat of harm to the entire class.  There is no link between the claims of a class defined by the alleged extent of plutonium contamination from Rocky Flats and an event such as the raid that did not have anything to do with class property contamination or class member exposure to plutonium.

# TAB 2

IV.     **THE GRAND JURY INVESTIGATION (DEFENDANTS' MIL NO. 2)**

The Overview of Issues Related to The FBI Raid, The Grand Jury Investigation and Rockwell's Plea (*see* Section III.A. *supra*, under Tab 1) is hereby incorporated into this section by reference.  That overview, in its entirety, applies to this reply in support of the Defendants' Motion in Limine No. 2 to Exclude Evidence Related to the Grand Jury Investigation.

A.      **Evidence of the Grand Jury Investigation is Irrelevant to The Class-wide Trespass and Nuisance Claims.**

The grand jury investigation into the Rocky Flats plant, like the FBI raid, is utterly irrelevant to the class-wide nuisance and trespass claims to be tried.  It is not enough that a topic or issue was the subject of the grand jury investigation in order to be admissible here.  Indeed, in the discovery context, this Court has already rejected that premise.  *See Cook III*, 147 F.R.D. at 245-46.  In 1993, the Court upheld the magistrate's denial of motion to compel discovery of grand jury materials on the grounds that plaintiffs must establish that materials related to the grand jury investigation are relevant to their claims.  The Court found that it was not enough simply that they were the subject of the grand jury's investigation of Rockwell.  *Id.* at 246.  Likewise, here in order to be admissible, plaintiffs must establish that materials related to the grand jury investigation are relevant to their claims to be tried on a class-wide basis.  As with evidence of the FBI raid, plaintiffs point to nothing establishing the relevance of the grand jury investigation or its underlying issues to the claims that this Court has identified to be tried in the class-wide trial. (*See* 5/17/05 Order.)

**B.**     **Controlling Case Authority Compels That Grand Jury Investigation Evidence Be Barred.**

Defendants cite *Stump v. Gates*, 211 F.3d 527, 536-37 (10th Cir. 2000), a Tenth Circuit case holding that the district court committed reversible error in allowing grand jury investigation evidence to be admitted in a subsequent civil case.  Plaintiffs lamely attempt to distinguish *Stump* by characterizing it as merely a reversal of a district court ruling related to a possible hearsay exception regarding a grand jury report.  (Pls.' Resp. at 12-13.)  Plaintiffs say they do not intend to seek to introduce the grand jury report here and so *Stump* is not controlling.  (*Id.*)

Contrary to plaintiffs' suggestion, the Tenth Circuit's ruling in *Stump* is squarely on point.  In *Stump*, like here, a grand jury was convened and an investigation ensued, but no indictment resulted.  *Stump*, 211 F.3d at 531.  Also, as in this case, the *Stump* grand jury prepared a report that was subsequently sealed.  *Id.*  The *Stump* plaintiffs sought to admit references to this grand jury investigation, including but not limited to the grand jury report itself and testimony reflecting various issues and aspects related to the grand jury investigation, in a later civil lawsuit.  Defendants sought to exclude this grand-jury related evidence on the ground that it had no tendency to make the existence of any fact in dispute more probable.  *Id.* at 533.  The trial court in *Stump* denied defendants' motion in *limine* and allowed admission of not only the grand jury report but also testimony related to grand jury investigation and proceedings, including allowing witnesses to comment on influences that hampered the grand jury's ability to return an indictment.  *See id.* at 537-38.  The Tenth Circuit reversed the district court's admission of this evidence, finding that it was not probative of issues in the civil case and that it was unduly prejudicial to defendants.  *Id.* at 536-37.  The Tenth Circuit further held that admission of grand jury-related evidence presented the risk that the trial jury had been unduly influenced by the prior

grand jury proceedings and therefore based their verdict on improper grounds. *Id.* The Tenth Circuit also noted the grand jury investigation related evidence also posed other risks of misleading and confusing the trial jury. *Id.* Consequently, the Tenth Circuit specifically held that the probative value of testimony referencing the grand jury's investigation "was outweighed by its highly prejudicial effect" and concluded that the trial court's admission of the grand-jury related evidence was reversible error. *Id.* at 537 ("In defining the term 'unfair prejudice,' the Advisory Committee's notes to Rule 403 explain that it refers to relevant evidence that has 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily an emotional one.'") (citing Fed. R. Evid. 403 advisory committee's note at 538).

While plaintiffs may not seek to introduce the grand jury report itself here, they do seek to present testimony and evidence referencing the grand jury investigation, characterizing the grand jurors' intentions and speculating about influences that hampered the grand jury's ability to reach an indictment. (*See, e.g.,* Pls.' Resp. at 34 (arguing that plaintiffs should be permitted to present facts "tell[ing] the jury" that "the grand jury intended to indict [Rockwell] and several of its managers but was silenced by the DOJ . . ."); *see also id.* at 10-11.) Plaintiffs' attempts to sidestep the controlling authority of *Stump* by belatedly agreeing not to reference the grand jury report is not enough.[1] As in *Stump*, these facts are not relevant to plaintiffs' claims, would be unduly prejudicial and suggest that the jury decide the case on an improper basis. These problems could not be easily solved by cautionary instructions and need not be deferred to a Rule 403 analysis at trial. That the Rule 403 balance clearly favors exclusion is readily apparent now.

---

[1] It is also disingenuous in light of plaintiffs' stated desire to tell the jury what the grand jury purportedly intended (*see* Pls.' Resp. at 34), which can only be innuendo and speculation about the contents of that report.

Plaintiffs' argument that the grand jury investigation is supposedly relevant to witness credibility (Pls.' Resp. at 13) is a red herring.  Plaintiffs fail to identify a single potential trial witness who testified that fear of prosecution (or the wrath of their employer) in the wake of the grand jury investigation impacted their testimony about relevant plant activities or whose credibility would be impacted by the grand jury investigation.  (*Id.*)  Nor do plaintiffs identify any witness whose credibility would be impacted by the grand jury investigation now.  (*Id.*)  Even if there were such witnesses, the risk of prejudice and confusion inherent in allowing grand jury related evidence would greatly outweigh any probative value it might have to issues of credibility.

### C.     Grand Jury Secrecy Issues Support Exclusion of This Evidence.

The focus of plaintiffs' discussion of the issue of grand jury secrecy is misplaced.  The fact that the details of the investigation are not publicly available strongly supports the exclusion of grand jury investigation evidence.  The nonpublic nature of such proceedings renders their introduction unfair, as a full and accurate rendition of the proceedings cannot be offered.  In fact, many of the deponents in this lawsuit declined to answer questions about the investigation.  (*See, e.g.,* Setlock Dep. at 297-98; Tallman Dep. at 48-49.)  Thus, defendants' would face a substantial, if not insurmountable, challenge in effectively responding to scattered rumors, innuendo and accusations such as plaintiffs' reckless and unsubstantiated claim that "the grand jury intended to indict the company [Rockwell] and several of its managers but was silenced by the DOJ . . ." (Pls.' Resp. at 34.)[2]  Allowing evidence of or reference to the grand jury investigation and related

---

[2] As in so many instances in their brief, plaintiffs offer absolutely no record citations to support their sordid and scandalous assertion.  (*See id.*)

proceedings here would open the door to attempts to make public what actually happened in the proceedings.   The virtually non-existent probative value of evidence of the grand jury proceedings is outweighed by public policy consideration supporting their secrecy (*see* Defs.' MIL No. 2 at 16-17) and by the prejudice to defendants that would flow from their admission.   (*See* Defs.' MIL No. 2 at 13-16.)

# TAB 3

## V.    ROCKWELL'S 1992 GUILTY PLEA (DEFENDANTS' MIL NO. 3)

The Overview of Issues Related to The FBI Raid, The Grand Jury Investigation and Rockwell's Plea (*see* Section III.A. *supra*, under Tab 1) is hereby incorporated into this section by reference.  That overview, in its entirety, applies to this reply in support of the Defendants' Motion in *Limine* No. 3 to Exclude Evidence Related to Rockwell's 1992 Guilty Plea.

### A.    Rockwell's Guilty Plea and the Related Plea-Conduct are Irrelevant to The Claims to be Tried.

Despite the rhetoric in plaintiffs' response brief, plaintiffs point to nothing that changes the fact that Rockwell's March 1992 guilty plea, and all of the underlying plea conduct, are irrelevant to plaintiffs' class-wide claims.   Whether prosecutors allegedly gave Rockwell an "easy deal" (Pls.' Resp. at 33) or the magnitude of Rockwell's fine (*see id.* at 5-6) simply are not probative of the class-wide trespass or nuisance claims to be tried.   In their motion in *limine*, defendants painstakingly demonstrate why each individual count of the plea and the related conduct have no bearing on past, present or future offsite exposure or releases, as per this Court's May 17 Order.   (*See* Defs.' MIL No. 3 at 3-5, 11-12.)   Plaintiffs make no effort to establish that any specific plea-conduct – such as pondcrete or saltcrete storage or spray irrigation practices – are relevant to the claims to be tried.[1]   Tellingly, while plaintiffs comment on Frank Blaha's affidavit (Pls.' Resp. at 13-14), plaintiffs acknowledge that the specific conduct to which Rock-well pled guilty has not been linked to "demonstrable and measurable offsite contamination."

---

[1] In a tacit admission that the plea did not involve any charge of consequence and instead related to technical or permitting violations, plaintiffs elect in their response brief merely to speculate on why prosecutors did not "press[] for conviction on more serious charges" (Pls.' Resp. at 6; *see also id.* at 3) or engage in conjecture about motives for Rockwell's "environmental documenta-tion" violations.  (*Id.* at 14.)

(*See* Pls.' Resp. at 14.) Plaintiffs do not dispute that, at bottom, all plea conduct relates to water-based exposure routes that are entirely unrelated to any class-wide exposure. Nor do plaintiffs contest that the conduct underlying Rockwell's plea does not relate to plutonium release or exposure. (*Id.*) Plaintiffs also admit that evidence of the conduct at issue in Rockwell's plea "may tend to show human exposures -- or risks of exposure or negligence -- only circumstantially." (*Id.* at 9.) But plaintiffs do not claim that there is even a "circumstantial" link to ***class-wide*** exposure or risk of ***class*** exposure. (*See id.*)

Plaintiffs nonetheless assert that they should be allowed to show that Rockwell engaged in the acts at issue in the plea. (*Id.*) Plaintiffs first assert that Rockwell's plea agreement and the related conduct are relevant to show purportedly "objective manifestations" of "Rockwell's casual disregard for the safe and lawful storage and disposal of radioactive waste at the site" or that Rockwell "systematically skirt[ed] and fudg[ed] . . . environmental documentation." (Pls.' Resp. at 14.) This is not a basis for a nuisance claim under the Court's May 17 Order, which instead specified that plaintiffs can prove the "interference" element of their class-wide nuisance claims – other than through common, class-wide exposure and increased health risk to plutonium[2]– only by establishing "that there is an objectively demonstrable risk of future harm" that is "based on objective conditions, such as existing contamination on-site and off-site that may be

---

[2]  Plaintiffs have dropped any basis for their claims other than that which relates to plutonium release, exposure and health risk. Plaintiffs acknowledge that evidence of substances other than plutonium will not be part of the class-wide trial. (*See* Pls.' Resp. at 21)  And plaintiffs no longer plan to use Dr. Goble to testify about any dose or risk related to the few non-plutonium substances he addressed in his report. Plaintiffs state that they have elected to have Dr. Goble confine his testimony to plutonium. (Pls.' *Daubert* Resp. at 54.) Accordingly, all non-plutonium based conduct (which would include all plea conduct) is irrelevant to the claims to be tried and should be barred.

released or remobilized in some fashion that would result in human exposure and increased health risk, that have the potential to affect all of the Class Area." (5/17/05 Order at 6.) Plaintiffs' proposed basis for using plea-related evidence does not meet this standard.

Plaintiffs also claim that the plea and underlying plea conduct can be used to show that Rockwell released the specific non-plutonium substances narrowly at issue in Rockwell's plea as well as other wastes managed by Rockwell at the site. Leaving aside that (1) the plea conduct cannot be used to show that character or propensity with regard to treatment of other waste not at issue in the plea under Federal Rule of Evidence 404(b) and (2) this use of plea-related evidence poses significant tension with plaintiffs comments regarding their intended use of evidence of substances other than plutonium (*see* Pls.' Resp. at 21), this proposed use of plea-related evidence is not linked in any way to plaintiffs' class-wide trespass or nuisance claims. (*See* 5/17/05 Order at 5-6.) Accordingly, it is not relevant under Rule 401 because it is not probative of an issue of consequence to the determination of this action.

**B.     Rockwell's Plea and the Underlying Plea Conduct is Not Probative of Any Enduring Condition.**

Defendants demonstrate that the Rocky Flats plant has been closed and is in the process of being fully remediated, and that both the conduct that the plea was based on and the conditions giving rise to Rockwell's plea no longer exist. (*See further* Defs.' MIL No. 3 at 9.) Plaintiffs fail, both on the facts and on the law, to adequately respond to defendants' relevancy arguments regarding the enduring nature of any condition related to Rockwell's guilty plea. *First*, plaintiffs urge the Court to ignore, for the purposes of this motion, defendants' record evidence showing cessation the underlying conduct and remediation of the conditions that gave rise to the plea as if the nearly complete onsite plant clean up were some kind of urban

3

myth. (*See* Pls.' Resp. at 14.)  This argument is unsupported by any citation to the record, and is contrary to this Court's earlier holding that "Defendants may defeat [plaintiffs'] showing [of a continuing invasion], and thus preclude Plaintiffs from recovering prospective damages, by demonstrating that they or others have abated or remedied the trespass or nuisance or are about to do so."  *Cook X,* 358 F. Supp. 2d at 1013.

      **Second**, plaintiffs claim that under Restatement Section 930, they need merely to show that the "maintenance and operation" of the site established an injurious situation that was not expected to terminate at any definite time in the future.  (Pls.' Resp. at 15.)  In support, plaintiffs quote comment b to Restatement § 930, which states:

> When the private structure or enterprise that is producing the invasions is substantial and relatively enduring in character and not readily alterable so as to avoid future injury, its maintenance or operation ordinarily indicates that the owner intends to continue indefinitely to cause invasions upon the neighboring land.

This language from the Restatement comment undermines plaintiffs' position.  Defendants cannot imagine a scenario that is less applicable to this comment than the current one, in which Rocky Flats has not been maintained or operated for over a decade.  If anything, the end of the maintenance and operation of the plant suggests the opposite:  that the DOE *does not intend* to cause invasions indefinitely through reactivation of the plant.

      **C.**    **Plaintiffs' Damages Experts Do Not Take the Plea or Plea-Related Conduct Into Account.**

      Plaintiffs admit that any recoverable damages must be attributable to their trespass and nuisance claims.  (Pls.' Resp. at 15-16.)  In their response brief, plaintiffs baldly say – without citation or explanation – that "[t]he conduct to which Rockwell pleaded guilty, and that guilty plea itself, contributed to those damages."  (*Id.* at 16)  Plaintiffs never bother to say how these

issues contribute to their damages or who took them into account.  (*Id.*)  Even if plaintiffs'

property experts had taken the plea into account in determining damages, that would not make it

relevant to the claims to be tried.  Liability and damages can only be based on relevant, action-

able conduct.  But plaintiffs' experts did not take the plea into account in determining damages.

Certainly, plaintiffs' property experts did not do so in their reports.  As defendants demonstrate

in their motion (*see* Defs.' MIL No. 3 at 12-14), not a single one of plaintiffs' experts takes

Rockwell's guilty plea into account with respect to diminution in property values.   Wayne

Hunsperger does not tie any of his opinions to Rockwell's plea or associated conduct, John

Radke denies that his work has anything to do with Rockwell's plea or related conduct and there

is no specific mention of the plea itself or the specific conduct underlying Rockwell's plea

anywhere in Drs. Flynn and Slovic's work.   This underscores that Rockwell's plea and the

related plea conduct are unrelated and irrelevant to any damage flowing from plaintiffs' claims.

# TAB 4

## VI.    INDEMNIFICATION BY DOE (DEFENDANTS' MIL NO. 4)

It is clear from plaintiffs' response that they *do* intend to introduce evidence of DOE's

indemnification of defendants in this case. (Pls.' Resp. at 16-19.) Thus, this Court should follow

the *Hanford* court's lead in excluding such evidence in *limine*. Plaintiffs' concede that indemni-

fication evidence is ripe for an in *limine* ruling. (Pls.' Resp. at 2 ("Certain evidentiary issues,

such as DOE's indemnification of defendants, may lend themselves to . . . categorical treat-

ment.")  Indemnification evidence is improper insurance evidence that suggests "deep pockets"

and culpable conduct, is irrelevant to the class-wide nuisance and trespass claims to be tried in

this case, and is unfairly prejudicial because it encourages the jury to punish defendants for the

conduct of an absent party and award damages because of indemnification.

### A.    The *Hanford* Ruling Is Precisely On Point.

The *Hanford* ruling is instructive here, despite plaintiffs' claims to the contrary. ***First,***

the *Hanford* court also dealt with the DOE and grappled with the same document classification

policies.  *In re Hanford Nuclear Reservation Litig.*, 894 F. Supp. 1436, 1453 n.19 (E.D. Wash.

1995) ("Plaintiffs explained that their efforts to examine this documentary record have been

impeded due to the classified nature of many documents").  But even if it were true as plaintiffs

claim that the DOE is a "contemnor" in this case and not in *Hanford*, that sheds no light on the

relevance or admissibility of the indemnification relationship.  (Pls.' Resp. at 16.)  The ***only***

effect of the DOE being a "contemnor,"[1] is to make the unfair prejudice from evidence of

indemnification ***even more substantial***, because the jury may be confused into believing that

---

[1]  The DOE purged the contempt holding against them, and this Court denied plaintiffs' later motion to hold the DOE in contempt. (*See Cook VII*, 935 F. Supp. at 1363; 1/7/97 Order; 1/7/97 Tr. at 18.)

they can punish the DOE or DOE behavior through their verdict against the defendants.  That is both fundamentally unfair and legally impermissible.  *See United States v. New Mexico*, 455 U.S. 720, 721, 734-36 (1982) (DOE contractors are separate and distinct from the DOE for legal purposes).

**Second,** Plaintiffs' disingenuous argument that DOE credibility was not at stake in *Hanford*, at least for liability issues because they were found strictly liable, gets them nowhere.  In fact, DOE credibility was at least as much of an issue in *Hanford* as it is here.  That is why plaintiffs claimed in *Hanford* (as they do here), that evidence of indemnification was relevant to show DOE bias.  (*See* Ex. 2 to Defs.' MIL No. 4 (Mot. In Limine Resp. in *Hanford*, at 5) (arguing that "[i]t would prejudice plaintiffs severely, were plaintiffs unable to challenge the credibility of information generated under DOE auspices, by pointing to the agency's financial stake and arguing that an inference of bias may be warranted").)  The *Hanford* court flatly rejected plaintiffs' argument.

In sum, *Hanford* was a toxic tort litigation in which plaintiffs – represented by many of the same lawyers representing plaintiffs here – sued the private contractors who operated a nuclear weapons plant in Washington State.  As here, the nuclear weapons plant was owned by the United States government, and the DOE had a duty to indemnify the contractors.  Both cases also involve the testimony of Dr. John Till as a defense witness.  Dr. Till had conducted seminal studies regarding historical exposure from the Hanford plant, and the *Hanford* plaintiffs sought to use the fact of government funding of the studies together with DOE indemnification to show Dr. Till's bias – just as they do here.  There is no principled basis on which to distinguish the two cases for purposes of evaluating the admissibility of indemnification evidence.  Here, as well as

in *Hanford*, indemnification evidence is irrelevant and unduly prejudicial and should be excluded.

**B.     The *Hanford* Court Properly Applied the Federal Rules of Evidence and Correctly Determined That Indemnification Evidence Should Be Excluded in *Limine*.**

Citing no contrary authority, plaintiffs claim that the *Hanford* court erred in excluding all evidence of indemnification by DOE.  (Pls.' Resp. at 16.)  But the *Hanford* court correctly determined that evidence of DOE indemnification was inadmissible.

*First*, such evidence falls within Rule 411's bar against evidence of liability insurance used to show culpable conduct, as the *Hanford* court determined.  *See* Fed. R. Evid. 411; Ex. 1 to Defs.' MIL No. 4 (4/18/05 Order in *Hanford*, at 8).  Plaintiffs argue that this case involves "statutory indemnity" rather than a "contract of insurance."  (Pls.' Resp. at 17.)  But they do not dispute that the government effectively serves as a liability insurer for defendants through contractual as well as statutory indemnity arrangements.  (*See* Defs.' MIL No. 4 at 2; Pls.' Resp. at 17.)  Nor do they take issue with the other authorities cited by defendants that have excluded indemnification evidence, such as by providing even a single contrary authority.  (*See* Defs.' MIL No. 4 at 3 (citing, *e.g., Griffin v. Hike*, 804 F.2d 1052, 1057 (8th Cir. 1986)); *Larez v. Holcomb*, 16 F.3d 1513, 1519-21 (9th Cir. 1994).)[2]  In any event, plaintiffs cannot deny that the rationale of Rule 411 – preventing the jury from deciding cases on improper grounds (such as the belief that the defendants acted wrongfully because they knew they would not pay any judgment

---

[2] *See also Halladay v. Verschoor*, 381 F.2d 100, 112 (8th Cir. 1967);  *Indamer Corp. v. Crandon*, 217 F.2d 391, 394 (5th Cir. 1954).

or the belief that defendants have "deep pockets") – squarely applies to indemnification evidence.

      *Second*, such evidence is irrelevant. In their response, plaintiffs ***do not dispute*** that indemnification-relationship evidence fails to support their claims of trespass and nuisance in any way. (*See* Defs.' MIL No. 4 at 5-7; Pls.' Resp. at 16-19.) They ***do not dispute*** that indemnification evidence sheds no light on whether defendants' actions resulted in a diminution of their property values. (*See* Defs.' MIL No. 4 at 7; Pls.' Resp. at 16-19.) Importantly, they ***do not dispute*** that the indemnification agreements do not entitle the jury to impute the acts of the government to defendants. (*See* Defs.' MIL No. 4 at 7-8; Pls.' Resp. at 16-19.) As defendants explain in detail in their motion (and plaintiffs do not deny), plaintiffs made a conscious choice not to sue the U.S. government (to avoid its sovereign immunity, and so forth); thus, the DOE is ***not*** a party and a verdict cannot be based on DOE conduct. (*See* Defs.' MIL No. 4 at 8; Pls.' Resp. at 16-19.)

      Plaintiffs make only one argument for the relevance of the evidence: they claim that it goes to DOE bias. (Pls.' Resp. at 18-19.) But the *Hanford* court squarely rejected that argument, and for good reason. (Ex. 1 to Defs.' MIL No. 4 (4/18/05 Order in *Hanford*, at 8); *see also* Ex. 2 to Defs.' MIL No. 4 (Ex. 2 to Defs.' MIL No. 4 (Mot. In Limine Resp. in *Hanford*, at 4-5).) As an initial matter, plaintiffs cite a number of "bias" cases, none of which is from this circuit and none of which is on point. Two of the cases involved insurance claims adjustors who had interviewed the plaintiff and were attempting to discredit the plaintiff's trial testimony based on

the interviews; in these cases, the credibility of the insurance adjustor was critical to the verdict.[3]

Others likewise concerned situations whether the credibility of the insurance company witness was the key issue for a determination of liability.[4]  Still others involved various unique circumstances and do not support plaintiffs' position here.[5]

---

[3]  In *Conde v. Starlight I*, 103 F.3d 210, 213-14 (1st Cir. 1997), the defense relied heavily upon apparent discrepancies in the plaintiff's testimony about an accident and the written statement he gave to the insurer's adjustor who allegedly translated the statement inaccurately in a manner favorable to the insured such that the "entire defense centered on [the adjustor's] credibility"; under those circumstances, the court held that unobjected-to references to the translator as the "adjustor" did not require reversal, because it was questionable whether the jury even understood that he was an *insurance* adjustor and his credibility was the key issue in the case.  Similarly, in *Moy Quon v. M. Furuya Co.*, 143 P.99, 102 (1914), the court allowed questioning of the claims agent about his employment where he had interviewed the plaintiff with directed questions while he was in the hospital and was used by the defendant to discredit the plaintiff's trial testimony.

[4]  In *Corbett v. Borandi*, 375 F.2d 265, 268 (3d Cir. 1967), the court held that plaintiffs could raise an insurance claims adjuster's employment on cross-examination where the adjuster had personally inspected the vehicle involved in an accident and his "credibility was a paramount issue in the case since if he was believed, there would be no liability on the part of [the defendant]."  Similarly, in *Charter v. Chleborad*, 551 F.2d 246, 249 (8th Cir. 1977), the court held that plaintiff could ask an expert witness who was employed by the defendant's liability insurer about his employment where he opined that the plaintiff's expert witness had a poor reputation for veracity and the plaintiff's claim "rested for the most part on the credibility of his expert witness."

[5]  *Cook-O'Brien Const. Co. v. Crawford*, 26 F.2d 574, 575 (D. Ariz. 1928), involved reports to the insurance company that were admitted after the insurance company's name *was redacted* because they were material on the subject of whether the plaintiff was an employee rather than an independent contractor (not any issue of bias).  In *Eppinger & Russell Co. v. Sheely*, 24 F.2d 153, 155 (5th Cir. 1928), the court allowed defendant's causation expert witness to be questioned about whether he was retained by the insurance company to offer an opinion in the case.  (By contrast here, no expert witnesses have been retained by the DOE to render an opinion.)  In *Ede v. Atrium S. OB-GYN*, 642 N.E.2d 365, 368 (Ohio 1994), the court held that the defendant's expert witness physician could be asked about his insurance relationship with the defendant's insurance company where the expert was a "fractional part-owner" of the insurance company whose own personal premiums could change depending on the result of the case; it also determined that any prejudice would be low, because the jury would assume that a defendant doctor has malpractice insurance.

By contrast, in this case, plaintiffs' claim of "bias" is too vague to be taken seriously. Plaintiffs name only one witness who they allege is somehow biased because of DOE indemnification, defendants' expert Dr. Till, who has been an expert witness for other DOE contractors (**not** the DOE) in one other case – *Hanford*.  Plaintiffs fail to mention that the other case in which Till served as a testifying expert witness was *Hanford,* the very case in which  this exact same argument by the same plaintiffs' counsel was rejected.  Indeed, the *Hanford* court specifically rejected plaintiffs' claims that evidence of indemnification was relevant to show Dr. Till's bias. (*See* Ex. 2 to Defs.' MIL No. 4 (Mot. In Limine Resp. in *Hanford*, at 5-6); Ex. 1 to Defs.' MIL No. 4 (4/18/05 Order in *Hanford*, at 8).)  In any event, there is no reason to believe that either Dr. Till or any other individual witnesses are biased because the government is indemnifying the defendants.  Nor have plaintiffs come forward with any showing that there is any reason to believe that documents created by the DOE throughout the plant's history, such as those created "in connection with the ordinary course of the plant's business," had anything to do with the **indemnification** relationship.  Plaintiffs also suggest that indemnification evidence relates to "studies, reports, and investigations conducted under [DOE] 'auspices'" and DOE attacks on other investigators.  (Pls.' Resp. at 19.)  They do not, however, list a single study, report, or investigation – or an attack thereupon – on which the fact of indemnification could shed any light.  Tellingly, plaintiffs have listed five DOE witnesses on their own witness list while defendants have listed none, rendering suspect plaintiffs' claim that evidence of indemnification is necessary to show DOE bias.[6]

---

[6]  As discussed below, plaintiffs' claim that indemnification evidence is admissible to show plausible motivations in declining to declassify documents is without merit, because the classification issue should be excluded entirely.  (*See* Defs.' MIL No. 5; *see also* Section VI *supra*.)

**Third**, such evidence is extremely, unfairly prejudicial to defendants.  It encourages the jury to award excessive damages on improper grounds (*e.g.,* deep pockets, anti-government sentiment, etc.).  That is why the Tenth Circuit has consistently held that it is prejudicial error to inject into the trial the idea that a defendant will not pay any damages awarded.  *E.g., Palmer v. Krueger* 897 F.2d 1529, 1537-38 (10th Cir. 1990); *Black v. Heib's Enterprise, Inc.*, 805 F.2d 360, 365-66 (10th Cir. 1986); *see also Griffin*, 804 F.2d at 1057 (evidence of "indemnity protection" excluded because it "will result in an unduly generous award of damages by the jury").  In this case, such evidence also would serve to confuse the jury and invite jurors to blur responsibility between defendants and the DOE.  Plaintiffs do not deny that it is their intent to do so.  (*See* Pls.' Resp. at 24 (arguing that defendants "and their indemnitor . . . ran the plant, documented the events, maintained the monitoring equipment, funded the studies, and controlled the classification regime . . .").)  In short, it is difficult to see how a jury can evaluate the evidence in this case in a fair and comprehensive fashion *if* plaintiffs are permitted to introduce evidence of DOE indemnification.

# TAB 5

# VII.   DOCUMENT CLASSIFICATION ISSUES AND DOE DISCOVERY CONDUCT (DEFENDANTS' MIL NO. 5)

### A.   Document Classification Issues and DOE Discovery Conduct is Not Relevant to Any Issue to Be Tried.

Defendants move in *limine* to preclude all evidence of Department of Energy discovery conduct in this litigation, including document classification issues, the declassification review process undertaken by the DOE and any suggestion that DOE somehow spoliated documents or wrongfully withheld materials in this case. This evidence is irrelevant to plaintiffs' claims and would be unduly prejudicial to the defendants. Evidence of discovery matters – including allegations of non-party discovery disputes – simply do not make anything with respect to plaintiffs' trespass and nuisances claims more or less probable.

Plaintiffs' comment in their response brief that they do not intend to "detail[] at length the tortured history of third-party document discovery" is unavailing. (Pls.' Resp. at 19-20.) Such matters should not be referenced before the jury at all. Moreover, this purported intention not to belabor this issue is belied by plaintiffs' own brief: Plaintiffs' response to defendants' motions in *limine* is rife with improper and irrelevant comments and references to DOE discovery conduct, including document classification issues.

### B.   Plaintiffs Fail To Rebut Defendants' Arguments To Bar This Evidence.

In their response brief, plaintiffs fail to explain what relevance DOE's discovery conduct would have on any issue identified by the Court to be tried in the class-wide trial. (*See* Pls.' Resp. at 19-21; *see also* 5/17/05 Order.) Plaintiffs also fail to respond to defendants' arguments under Rule 403 that such evidence and references would be unduly prejudicial to defendants who had no control over DOE discovery actions or decisions, which as the DOE has represented to

this Court, have been made based in part on national security considerations. (*See* Def.'s MIL No. 5 at 5, 10-13.) Nor do plaintiffs provide any response to defendants' argument that such evidence would risk substantial confusion in a case that does not involve the liability of the DOE and could cause the jury to improperly conflate DOE's actions with that of defendants and to blur the identities of defendants with that of the DOE. (*See id.* at 10-13.) Nor do plaintiffs dispute that if evidence of DOE discovery actions and document classification were allowed at trial, substantial amounts of trial time would be wasted explaining the rules of discovery, past discovery decisions and the complicated legal doctrines related to government classification of documents. (*See id.* at 13.) The non-existent probative value of such evidence does not warrant the unfair prejudice, risk of confusion and undue consumption of trial time that would also be related to admission of this evidence.

### C.   Evidence of Document Classification Issues is Inadmissible and Plaintiffs' Suggested Use of Such Evidence is Improper.

In response to defendants' motion, plaintiffs offer (in total) a three-paragraph attack, the bulk of which is spent arguing that the DOE did not adequately establish a basis for withholding classified documents. Toward that end, plaintiffs cite *United States v. Reynolds,* 345 U.S. 1, 7 (1953) identifying the procedural steps necessary to invoke the state secrets privilege. (*See* Pls.' Resp. at 20.) But to defendants' knowledge, DOE has not invoked that common law privilege here. As defendants explained in their opening brief, the Atomic Energy Act, 42. U.S.C. §§ 2011, et seq. ("AEA") prevents the disclosure of classified materials. The unspecified materials that apparently form the basis for plaintiffs' complaints about DOE document production (and plaintiffs' proposed spoliation jury instruction) are classified primarily pursuant to the AEA and Executive Order 12958. *See Cook VII*, 935 F. Supp. at 1458-59, 1462. While the

effect of classification pursuant to the states secrets privilege and the AEA may be the same, the procedures for invoking these privilege are not necessarily identical. *See* 42 U.S.C. § 2277. In any event, *Reynolds* affirms the government's withholding of documents, finding in part that respondents had been afforded ample opportunity to establish their claims without resort to material touching on military secrets. 245 U.S. 11.

Plaintiffs then provide a lengthy block quote from *Gilbert v. Costco, Inc.*, 989 F.2d 399, 406 (10th Cir. 1993), regarding the legal standards related to the permissibility of jury instructions on adverse inferences for unexplained failure or refusal of *a party* to produce evidence. (Pls.' Resp. at 20.) *Gilbert* deals with conduct *of a party* to the litigation – Costco. The *Gilbert* standard is applicable to conduct *of a party* to the lawsuit, and discusses possible sanctions when *a party* suppresses or withholds evidence. In that case, the Tenth Circuit affirms the trial judge's decision not to accept plaintiffs' proposed adverse inference instruction against Costco.[1]

---

[1] The standards delineated by *Gilbert* confirm that an adverse instruction against defendants for spoliation would be inappropriate here. One of the factors that the Tenth Circuit looks to in *Gilbert* is whether the documents at issue were in the possession or control of the suppressing party. Here that is not true. Defendants do not have possession or control over the classified documents at issue; indeed, it is not even the defendants who are accused of doing the suppressing. The *Gilbert* standard also discusses access or availability of the documents – whether the evidence is available to the suppressing party but not the party seeking its possession. Here the evidence at issue is equally accessible and/or unavailable to both plaintiffs and defendants alike. *Gilbert* also deals with the "***unexplained*** failure or refusal of a party . . . to produce evidence." Even if DOE were a party, which it is not – the absence of production here is not "unexplained." The unspecified materials at issue were withheld under a statutory right for the government to withhold classified materials. What is more, in *Gilbert,* the Tenth Circuit, requires a factual evidentiary showing as a predicate to any adverse inference instruction, and holds that such evidence necessary to support an adverse inference instruction needs to be more that conjecture and speculation. Plaintiffs should not be entitled to seek a verdict against defendants based on conjecture and innuendo about documents that are not available to either party. *See also Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997) (noting that an "adverse inference must be predicated on the bad faith of the party destroying the records. Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of

Here, however, it is the DOE (and not defendants) that plaintiffs allege has somehow failed to produce documents. Plaintiffs' request for an adverse instruction seeks to penalize defendants for DOE's classification decisions. Dow and Rockwell are not responsible for those decisions having played no role in DOE's discovery actions and there is nothing in the record to the contrary, nor could there be. Thus, a punitive sanction against Dow and Rockwell is inappropriate. Leaving aside the fact that the federal government's classification decisions are based on a statutorily mandated privilege under the AEA, the actions of the DOE (as a non-party) cannot form the basis for imposing evidentiary sanctions that would prejudice the defendants' rights. (*See* Defs.' 8/18/04 Resp. Br. at 31-44; Dow 3/4/96 Mem. in Opp. To Pls.' Mot. for Sanctions at 27-40; *see also* generally Rockwell 3/4/96 Mem. in Opp. To Pls.' Mot. for Sanctions.)

Plaintiffs also cite to *Moore v. United States*, 864 F. Supp. 163 (D. Colo. 1994) which does not involve motions in *limine*, jury instructions or adverse inference related to spoliation, but merely notes in a footnote that Colorado has not recognized an independent *tort claim* for spoliation of evidence.

The fact that, through the operation of contractual provisions and the Price Anderson Act, DOE indemnifies defendants for this litigation does not change its non-party status or make DOE's conduct that of the defendants. In addressing the relationship between DOE and its contractors, the Supreme Court indicated that the DOE remains a separate and distinct entity

---

a weak case.") (citations omitted); *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90, 102 (D. Colo. 1996) (finding that the degree of actual prejudice to the party and the litigant's culpability are relevant in determining the appropriateness of any adverse inference). (*See* Defs.' 8/18/04 Resp. Br. at 32.)

which should not, for legal purposes, be placed "in the shoes" of its contractors.[2]  This is consis-

tent with case law regarding federal government contractors in general.  (*See further* DOE 3/4/96

Mem. in Opp. To Pls.' Mot. for Suppl. Sanctions at 8-13.)

,

---

[2] *See, e.g., United States v. New Mexico*, 455 U.S. 720, 721, 734-36 (1982) (despite DOE's funding of all the contractors' costs plus a fixed fee, the DOE contractors were not federal instrumentalities and did not "stand in the Government's shoes" under state tax laws); *see also United States v. Boyd*, 378 U.S. 39, 48 (1964);  *United States v. Cal. Bd. Of Equalization*, 507 U.S. 746 (1993).

# TAB 6

## VIII.   SUBSTANCES OTHER THAN PLUTONIUM (DEFENDANTS' MIL NO. 6)

Defendants move in *limine* to exclude all evidence of substances other than plutonium on the ground that plaintiffs have failed to demonstrate, as is their burden at this juncture, that any of these other substances ever impacted the class as a whole.  In their motion, defendants described, in specific detail, the type of evidence plaintiffs may seek to introduce for each of more than ten other substances on plaintiffs' laundry list of substances (including a staggering number of trial exhibits and voluminous fact witness and expert witness testimony), and why such evidence does not link to any class-wide nuisance claim as set forth by this Court.  (Defs.' MIL No. 6 at 2-21.)  In response, plaintiffs make no effort to explain (or even assert) the relevance of *even one* specific piece of evidence or portion of testimony.  Nor do they discuss the potential relevance of *even one* of the other substances.  Instead, they concede the material is irrelevant.

### A.      Plaintiffs Do Not Dispute That Other Substance Evidence is Entirely Irrelevant to Any Class-Wide Release or Exposure.

As defendants explained in their motion, there are only two potential paths to nuisance liability based on substances other than plutonium.  The first path requires plaintiffs to prove an interference by demonstrating "that *all* Class members were exposed to [an alleged contaminant other than plutonium] and all suffered some increase[d] health risk as a result" – an increased health risk that must be both common and class-wide.  (5/17/05 Order at 5 (emphasis added).)  Plaintiffs concede that evidence of actual exposures to substances other than plutonium are irrelevant in the class-wide trial[1] and that "[s]pecific evidence of interference with use and

---

[1]  Specifically, plaintiffs say that evidence of exposures to substances other than plutonium prior to the clear and comparatively enduring date are irrelevant.  (Pls.' Resp. at 21.)  Plaintiffs make no attempt to explain why the clear and comparatively enduring date matters in this context

enjoyment in the form of health risks associated with future exposures to substances already released from the site . . . will not be presented *for any substances other than plutonium*." (Pls.' Resp. at 21.) Thus, plaintiffs do not dispute that other substance evidence is irrelevant to a class-wide nuisance based on releases and/or exposures, and the first path is not at issue.

**B.     Plaintiffs Have Not Linked Other Substances Evidence to any Objectively Demonstrable, Class-Wide Future Risk.**

The other path to nuisance liability requires plaintiffs to prove an interference by establishing "that there is an objectively demonstrable risk of future harm" that is "based on objective conditions, such as existing contamination on-site and off-site that may be released or remobilized in some fashion that would result in human exposure and increased health risk, that have the potential to affect all of the Class Area." (5/17/05 Order at 6.) This path to nuisance liability requires a demonstration of a common, class-wide exposure and increased health risk to all class members, arising from the past or future release of plutonium or some contaminant from Rocky Flats. (*Id.*) It also requires a threat that is "real" and "verifiable." (*Id.* at 5.) In addition, consistent with the Court's Orders, for plaintiffs to recover damages under Section 930, plaintiffs must show that the nuisance at issue exists today and will continue indefinitely. (*Id.* at 2-3; *see also* 12/17/04 Order at 19-20.)

Other substances evidence does not support this type of *interference*, and plaintiffs concede as much. Oddly, they discuss two so-called "caveats" that attempt to suggest some potential relevance for other substances evidence (or at least, avoid its exclusion). (Pls.' Resp. at 21-22.) Plaintiffs' argument should be rejected.

---

(other than a claim, without citation, that the Court's rulings have so specified). Nor have they explained what specific injurious situation would be relevant to other substances evidence.

1.     **Uncertainty Does Not Form the Basis for an "Objectively Demonstrable Risk of Future Harm" that is "Based on Objective Conditions."**

Plaintiffs claim that they should be allowed to discuss other substances in the context of describing the "considerable uncertainty over existing and potential future releases and contamination."[2] But uncertainty about what may potentially happen in the future is the antithesis of an "***objectively demonstrable*** risk of future harm" that is "based on ***objective*** conditions" that constitute a "***real***" and "***verifiable***" threat. *See* The Oxford English Dictionary (unabridged) (2d ed. 1989) ("objective" means "that is, or has the character of being a 'thing' external to the mind; real"; "demonstrable" means "capable of being shown or made evident"; "real" means "actually existing as a thing"; and "verify" means "to assure the certainty of").

Plaintiffs' claim that evidence of "classwide uncertainties forms a legitimate part of the basis for plaintiffs' damage[s]" is nothing but an improper attempt to get this evidence in through the back door. (Pls.' Resp. at 22.) *Jaasma v. Shell Oil Co.*, No. 04-2095, 2005 WL 1514226 (3d Cir. June 28, 2005), does not support plaintiffs' position. *Jaasma* did not involve either a nuisance claim or a class action. *Jaasma* held that a property owner could recover damages for breach of a lease, where the defendants contaminated property, during a period when that property could not be sold, including during an environmental investigation at which time the existence of contamination was uncertain. *Jaasma* does not support the position that vague uncer-

---

[2] Without citing any evidence, plaintiffs also refer to "[p]ublic concern over the site . . . as manifested in the property market and well-grounded fears over risks from ***past*** . . . releases." (Pls.' Resp. at 21 (emphasis added).) They then argue that it is "particularly true" that evidence cannot be parsed on a substance-by-substance basis when discussing "uncertainty . . . about the identity of ***substances released in the past***, the scope of such releases, and, indeed, the very occurrence of past . . . releases." (*Id.* at 22 (emphasis added).) But in light of their concession that there will be ***no evidence presented of past releases of other substances*** at trial, purported fears relating to past releases cannot provide any basis to bring in evidence of other substances.

3

tainties about other substances are a recoverable basis for a nuisance claim.  Such uncertainties are not probative of recoverable damages.  Obviously, for any damages to be awarded in this trial, those damages must result from a recoverable trespass or nuisance.

Plaintiffs do not deny that they have no evidence related to any other substance that would form the basis for any "*objectively demonstrable* risk of future harm" that is "based on *objective conditions*" that exist and are continuing indefinitely and pose a "real" and "verifiable" threat of future harm.  Plaintiffs concede that they cannot make such a showing, arguing that there "is not, and has never been, any complete and reliable inventory of all [materials known and unknown], or of locations where they *may remain* buried at the site . . . ." (Pls.' Resp. at 21 (emphasis added).)  They further indicate they have no precise measurements of any remaining onsite concentration for any particular substances, much less any evidence of any offsite risk to all class members.  (*See id.* at 22) (arguing that evidence of other substances should come in whether or not plaintiffs have "precise onsite or offsite measurements or estimates of concentrations . . . .").)  These arguments undercut, rather than support, any possible admission of other substance evidence.  Simply put, plaintiffs fail to point to even one substance for which they have *any* evidence that the substance currently remains onsite in any quantifiable amount and poses any risk of future harm to the whole class.  After 15 years of discovery, if plaintiffs cannot link any specific other substance to their class-wide nuisance or trespass claims, evidence of other substances should be barred.

Plaintiffs ignore entirely the requirements that they show increased common, class-wide health risk and class-wide impact.  (*See, e.g.,* 5/17/05 Order at 5-6.)  They have no expert or fact testimony on these issues related to other substances.  In fact, they have dropped what little

expert testimony they had on exposures to other substances.  Plaintiffs originally proffered two exposure experts, Drs. Teitelbaum and Goble.  Plaintiffs dropped Dr. Teitelbaum several years ago.  (*See* 2/8/99 Hr'g. Tr. at 141.)  And plaintiffs no longer plan to use Dr. Goble to testify about the few other substances he addressed in his report (beryllium, ethylene oxide, and VOCs).  In response to defendants' *Daubert* challenges to that testimony, plaintiffs state that they have elected to have Dr. Goble confine his testimony to plutonium.  (Pls.' *Daubert* Resp. at 54.)

While it is plaintiffs' burden to prove that their evidence relates to a triable nuisance claim, defendants have gone even further and shown that there is no objectively demonstrable condition related to those substances that creates any future risk:

| Substance | Unrebutted Points Concerning Plaintiffs' Failure to Link Evidence to Future Risk | Other Unrebutted Points Concerning No Future Risk |
|---|---|---|
| Tritium | • No evidence that there could be a future release of tritium. (Defs.' MIL No. 6 at 9-10) | • Non-class-wide release occurred over thirty years ago (Defs.' MIL No. 6 at 10)<br>• Tritium was detected and corrected and is gone  (*Id.*) |
| Chromium | • No evidence that chromium from Rocky Flats presents a demonstrable risk of class-wide future harm  (*Id.* at 11-12) | • Chromic acid spill presented no offsite threat, and chromium levels were resolved by 1989 (*Id.* at 11-12) |
| Nitrates | • No evidence of any future harm to the class from nitrates (*Id.* at 12-13) | • All sludge and water has been removed from the solar evaporation ponds and pondcrete has been shipped offsite  (*Id.* at 13) |
| Ethylene Oxide | • No evidence that there could be ethylene oxide releases from Rocky Flats in the future (*Id.* at 14) | • Ethylene oxide was used only until the early 1980s, and there is no possibility of any further release  (*Id.* at 14) |
| Spray Irrigation Runoff | • No evidence that spray irrigation runoff constitutes a remaining objective condition that could have future, continuing impact (*Id.* at 14-15) | • Spray irrigation practices ceased in 1990 (*Id.* at 15) |
| Uranium | • No evidence that uranium poses a future risk (*Id.* at 15-16) | • The last of the enriched uranium was removed from the site in 2003 (*Id.* at 16) |

| Beryllium | • No evidence that there is still any beryllium onsite, much less any potential for an offsite beryllium release (*Id.* at 18) | |
|---|---|---|
| VOCs (including carbon tetrachloride) | • No evidence that there could be future harm from Rocky Flats VOCs (*Id.* at 18-19) | • VOCs are no longer being used at the plant, and there is no evidence that any VOC contamination exists that could impact the class (*Id.* at 19) |
| Americium | • No evidence of remaining objective condition related to americium (*Id.* at 19) | |
| Other Substances | • No evidence of future threat from acetone, asbestos, benzene, cadmium, cyanide, PCBs, thorium, and so forth (*Id.* at 20) | |

### 2. Past Handling of Other Substances Does Not Form the Basis for an "Objectively Demonstrable Risk of Future Harm" that is "Based on Objective Conditions" and that Poses a "Real" and "Verifiable" Threat of Future Harm.

Plaintiffs half-heartedly assert that they should be allowed to bring in evidence of defendants' "mishandling of hazardous substances other than plutonium" for matters such as "waste storage and disposal practices." (Pls.' Resp. at 21-22.) But plaintiffs again cannot link this evidence to a recoverable class-wide nuisance. Obviously, defendants' storage and handling of substances other than plutonium was in the past. Plaintiffs have no evidence that those practices led to any objective conditions pose a real and verifiable threat of future harm and that remain and will continue indefinitely. Here as well, they also lack evidence of any increased health risk related to those substances. The evidence thus is not relevant to plaintiffs' nuisance claim.

This proposed use of other substance evidence also is squarely prohibited by Rule 404(b), as discussed above. *See* Fed. R. Evid. 404(b) (character evidence to show propensity to commit bad acts should be excluded). In general, plaintiffs demonstrate that this is the very purpose for which they seek to introduce the evidence by claiming that they intend to use the evidence to

rebut any inference "that defendants' operation of the facility was without risk or environmental blemish except for plutonium." (Pls.' Resp. at 22.)  But that desire does not render such evidence relevant to a common, class-wide issue to be tried.  In addition, plaintiffs should not be permitted to use purported "mishandling" of other substances to show propensity to mishandle substances.

### C.   Evidence of Other Substances is Confusing and Unfairly Prejudicial and Would Waste Trial Time.

In their motion, defendants explained that any probative value of this evidence is substantially outweighed by the potential for confusion, unfair prejudice, and delay.  Each of these provides an independent basis for exclusion of the evidence.  Plaintiffs fail to respond to defendants' assertion that the jury could confuse handling of other substances with handling of plutonium. (Defs.' MIL No. 6 at 21-22; Pls.' Resp. at 21-22.)  They did not respond to defendants' assertion that the jury might decide the case on an improper basis (such as bad character) if alleged bad acts involving other substances not at issue here are introduced. (Defs.' MIL No. 6 at 22; Pls.' Resp. at 21-22.)  Nor did plaintiffs respond to defendants' assertion that holding a "mini-trial" on each other substance would waste trial time. (Defs.' MIL No. 6 at 22; Pls.' Resp. at 21-22.)  The sheer volume of material (hundreds of exhibits and voluminous testimony) that would be cut from the trial if other substances are excluded is staggering.  Under these circumstances, there is no possibility that the frivolous varieties of "probative value" proffered by plaintiffs in the form of so-called "caveats" can overcome the substantial prejudice or waste of time that would result from all of this evidence.