**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-181-JLK

MERILYN COOK, *et al.*,

        Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

        Defendants.

_____

**DEFENDANTS' THEORIES OF THE CASE**
_____

Defendants file this submission pursuant to this Court's August 2, 2005 Order, requiring that "by Monday, August 8, 2005, the parties shall submit their theories of the case." (8/2/2005 Minute Order, at 1). The following statement is divided into four sections: (1) Introduction; (2) Trespass; (3) Nuisance; and (4) Damages.[1]

## *Introduction*

The mission of Rocky Flats was to manufacture parts for nuclear weapons for the defense of the United States during the Cold War. The manufacture of nuclear weapons required the use

---

[1] Plaintiffs bear the burden of proving their claims; however, as of the time of filing of this submission, defendants have not seen plaintiffs' Theories of the Case. Defendants reserve the right to revise this submission to respond to plaintiffs' filing. Based on the discussion of this submission during the August 2, 2005 hearing, defendants understand that it will not be read to the jury.

of plutonium and other potentially hazardous substances.  Defendants contend that the precautions taken during their operation of the Rocky Flats plant worked and that the class members were not placed at any actionable risk as a result of either defendant's conduct.

### *Trespass*

In the Court's December 17, 2004 Order, the Court stated that, "in order for the Plaintiffs and the other class members to recover from either Dow or Rockwell or both of them on their claim of trespass, [the jury] must find Plaintiffs have proved the following by a preponderance of the evidence:  Dow or Rockwell or both of them intentionally undertook an activity or activities that in the usual course of events caused plutonium to be deposited on the Class Properties." (12/17/04 Order re Proposed Trespass Instructions, Instruction No. 3.11, at 2).  The class members' trespass claims have nothing to do with invasions by any substance other than plutonium.  (*See* 12/17/04 Order at 7–8 (holding that "plutonium [is] the only substance at issue for trespass claims" and relying on "statements of Plaintiffs' counsel at hearing on September 8, 2004").)  Neither do the class members' trespass claims have anything to do with any activity or event that did not "cause[] plutonium to be deposited" on each of "the Class Properties." (12/17/04 Order, Instruction No. 3.11, at 2).

The precautionary procedures that Dow and Rockwell followed prevented any actionable releases of plutonium and, as has been confirmed by numerous independent experts including Colorado's health department, no historical releases of plutonium from Rocky Flats have posed any significant health risk to any class member.

Any invasions resulting from releases of plutonium from Rocky Flats are not actionable for various reasons, including that any plutonium deposited onto class members' properties was

2

not tangible (*i.e.*, palpable) and did not cause significant and substantial physical damage to class members' properties.[2] Any releases of plutonium onto class members' properties also are not actionable because they were attributable to intervening causes, such as the 1969 windstorms that caused the 903 pad release. (12/17/04 Order, Tentative Instruction No. 3.14, at 6) ("A defendant's conduct is not the cause of the claimed effect if, in order to bring about such an effect, it was necessary that the defendant's conduct combine or join with an intervening cause that also contributed to cause the claimed effect."). In addition, the releases from the 903 pad did not result from conduct in which the defendants "intentionally undertook an activity or activities that in the usual course of events caused plutonium to be deposited on the Class Properties." (12/17/04 Order, Instruction No. 3.11, at 2).

In order to establish trespass liability and damages, the class members must prove "that the tortious invasion 'will probably continue indefinitely' because 'there is no reason to expect its termination at any definite time in the future.'" (12/17/04 Mem. Op. and Order at 20, *citing* Restatement (Second) of Torts § 930 cmt. b; *see also* 5/17/05 Order at 16 (class members must prove date when "injurious situation caused by Defendants became complete and comparatively enduring")). "Defendants may defeat this showing . . . by demonstrating that they or others have abated or remedied the trespass . . . " (12/17/04 Mem. Op. and Order at 20). As a result of

---

[2]  Defendants do not wish to reargue any issues that have been decided by the Court, but do wish to preserve their position on this and any other issues on which the Court has ruled. Moreover, as counsel for the defendants discussed at the July 28, 2005 hearing, the jury should be provided with guidance as to what magnitude of an invasion is required in order for a trespass to be actionable. (*See, e.g.*, 7/28/05 H'rg Tr. (Rough Transcript) at 37 ("Is the jury going to say you can find for the class if there's even one particle that came from Rocky Flats? Or is the jury going to be — is the jury going to be told that there has to be some magnitude to the invasion before it becomes actionable?")).

3

development and other factors, all plutonium has been removed from the properties of certain class members, and, as a result, there is no continuing, class-wide trespass.[3]

Defendants' position with respect to alleged damages resulting from trespass is set forth in the Compensatory Damages section below, following the discussion of the class members' nuisance claims.

## *Nuisance*

Under Colorado law, "the elements of a claim of nuisance are [1] an intentional, negligent, or unreasonably dangerous activity [2] resulting in [3] the unreasonable and substantial interference [4] with a plaintiff's use and enjoyment of her property." *See Pub. Serv. Co. of Colo. v. Van Wyk*, 27 P.3d 377, 391 (Colo. 2001).

### *Nuisance - Evidence Regarding Continuing or Recurring Invasions*

Under the Court's May 17, 2005 Order, the class members may only recover for "the prospect of the alleged . . . nuisance (if proved by the plaintiffs) ***continuing into the future***." (5/17/05 Order at 15-16) (emphasis added). There is no evidence of any "nuisance" that "continu[es] into the future." (*Id.*) There is no ongoing health risk, fear, or threat of releases from the Rocky Flats plant. The plant has not been in operation for well over a decade, and all fissile materials have been removed.

---

[3] If the class members cannot prove that their claims are "continuing," then they cannot establish damages or liability, because the class members' non-continuing trespass claims are then barred by the statute of limitations. The Court has ruled that the statute of limitations does not apply to the extent the trespass is continuing. (12/17/04 Mem. Op. and Order at 2).

4

*Nuisance - Negligence*

The only type of activity upon which the class members may predicate their nuisance claims is an allegedly negligent activity — not an "intentional" or "abnormally dangerous" activity. (*See id.* ("[T]he elements of a claim of nuisance are [1] an intentional, negligent, or unreasonably dangerous activity . . . .")). The class members have waived any nuisance claim based upon intentional activity. (*See* Plaintiffs' 12/10/03 Status Rep. at 2). Moreover, the Court has ruled that defendants may not be held strictly liable for engaging in an "abnormally dangerous" activity. (5/17/05 Order at 14).

With respect to plaintiffs' negligent-nuisance claims, there is no evidence that defendants' operation of Rocky Flats did not comply with applicable standards of care; although defendants do not bear the burden or proof, defendants' evidence will demonstrate that defendants did comply with applicable standards of care.

*Nuisance - Types of Interference With Use and Enjoyment*

The Court has ruled that the class members may recover for the following two types of alleged class-wide interferences with the use and enjoyment of their properties: (1) "[c]urrent human health risk arising from past or on-going exposure to plutonium [or 'Rocky Flats contaminants other than plutonium'] released from Rocky Flats as a result of one or both of the Defendants' activities there," provided that the jury "must find all Class members were exposed . . . and incurred some increased health risk from this exposure," and provided that the jury "may only consider the magnitude of the common, class-wide health risk in determining whether this and any interference(s) they find are substantial and unreasonable" (5/17/05 Order at 5); and (2) "an objectively demonstrable risk of future harm . . . such as existing contamination on-site and

off-site that may be released or remobilized in some fashion that would result in human exposure and increased health risk, that ha[s] the potential to affect all of the Class Area," provided that the threat of future harm is "real" and "verifiable" (*id.* at 6). The Court has also ruled that "[t]he generic causation question of whether Defendants' activities and the conditions resulting from them were capable of causing Class members to suffer fear, anxiety or other mental or emotional discomfort is . . . common to the Class and may be decided by the jury in the class trial." (*Id.* at 7). However, the Court also ruled that whether "Class members' enjoyment of their properties is impaired because of an emotional reaction to the real or perceived risk of future harm, cannot be *fully* resolved on a class-wide basis," because "whether Defendants' activities caused Class members to suffer fear or other emotional disturbance raises individual causation questions and thus is not capable of class-wide determination." (*Id.* at 6-7) (emphasis added). These categories of "interference" are addressed in turn below.

### *Nuisance - Health Risk*

As has been confirmed by numerous independent experts including Colorado's health department, there is no "common, class-wide health risk" resulting from "exposure" to releases of plutonium from the Rocky Flats plant. Nor is there any "prospect" of any alleged common, class-wide health risk "continuing into the future," as plaintiffs must demonstrate in order to recover for a nuisance under this Court's May 17, 2005 Order. (5/17/05 Order at 16). Furthermore, the class members have abandoned their intention to present evidence of any health risk from exposure to substances other than plutonium. (Pls.' Response to Defs.' *Daubert* Motion at 54).

*Nuisance - Objectively Demonstrable Risk of Future Harm*

There is no "objectively demonstrable risk of future harm" that would "result in human exposure and increased health risk," and that "ha[s] the potential to affect all of the Class Area." (5/17/05 Order at 6).  There is no evidence of any future health risk resulting from any substance used at Rocky Flats, including plutonium.  Moreover, the plant has not been in operation for well over a decade, and all fissile material has been removed.

*Nuisance - Generic Fear, Anxiety, or Other Mental or Emotional Discomfort*

The Court has ruled that the "generic causation question of whether Defendants' activities and the conditions resulting from them were capable of causing Class members to suffer fear, anxiety or other mental or emotional discomfort" presents a class-wide issue. (5/17/05 Order at 7).  However, the Court has also ruled that whether "Class members' enjoyment of their properties is impaired because of an emotional reaction to the real or perceived risk of future harm, cannot be fully resolved on a class-wide basis," because "whether Defendants' activities caused Class members to suffer fear or other emotional disturbance raises individual causation questions and thus is not capable of class-wide determination."  (*Id.* at 6-7). Accordingly, under the Court's May 17, 2005 Order, the jury may not consider generic fear, anxiety, or other mental or emotional discomfort either in determining nuisance liability or in determining damages.[4]  (*Id.* at 7)

---

[4] It follows that the issue of "generic fear" cannot be part of a class-wide trial.  As a practical matter, it would be impossible for the jury to identify what evidence relates to the issue of "generic fear," much less to disregard those items of evidence when determining nuisance liability and nuisance damages.

7

In any event, if the issue of "generic fear" is included in the class trial, there is no evidence that "defendants activities and the conditions resulting from them" were capable of causing all class members to suffer fear, because there is no past, ongoing, or future health risk from defendants' operation of Rocky Flats.

### *Nuisance - Substantial and Unreasonable*

In addition to establishing the existence of such an interference on a class-wide basis, the class members must also prove that such interference was "substantial" and "unreasonable." (5/17/05 Order at 2).

To prove that a nuisance is "unreasonable," the class members must demonstrate that the gravity of any injury that they have experienced outweighed the general public good from the operation of the Rocky Flats plant. *See* Restatement (Second) of Torts §§ 826, 828; *Cook v. Rockwell Int'l Corp.*, 273 F. Supp. 2d 1175, 1201 (D. Colo. 2003). The public good from the operation of the Rocky Flats plant — including both the economic benefits generated by the plant and the plant's contribution to national security — has far outweighed any harm to class members from the plant's operation, in part there is no evidence of any past, ongoing, or future health risk to class members from the operation of Rocky Flats.

In order to prove that a nuisance is substantial, the class members must demonstrate that the nuisance caused a class-wide diminution in value experienced by class members. *See Van Wyk*, 27 P.3d at 392 ("[T]he interference complained of by the Van Wyks must be a substantial invasion interfering with the use and enjoyment of the land, and reducing the value of the land."); Prosser & Keeton on Torts § 87, at 623 ("The substantial interference requirement is to satisfy the need for a showing that the land is reduced in value because of the defendant's

8

conduct."). As discussed in the Compensatory Damages section below, there is no evidence of a diminution in value experienced by class members. This absence of any diminution in value independently prevents the class members not only from recovering damages, but also from establishing nuisance liability. *See Van Wyk*, 27 P.3d at 392; Prosser & Keeton on Torts § 87, at 623.

### *Compensatory Damages*

The Court stated in its May 17, 2005 Order that the class members will be required to prove damages "according to Restatement § 930(3)(b)." (5/17/05 Order at 14-20). The Court stated that "the current Class will be divided into two sub-classes for determination of compensatory damages." (*Id.* at 15). The first sub-class "shall consist of all Class members who owned property within the Class Area on the later of: (i) January 30, 1990, the date this action was filed; or (ii) the date on which the jury, per Restatement § 930(1), finds it appeared the trespass and/or nuisance asserted by Plaintiffs would continue indefinitely." (*Id.*). The second sub-class will consist of everyone in the Property Class who is not in the first sub-class.[5] (*Id.* at 16).

With respect to the first sub-class, in order to prove Section 930 damages, the class members must establish: "(1) the date on which injurious situation caused by Defendants became complete and comparatively enduring ('CCE date'); (2) the average percentage diminution in property value that was caused by any trespass or nuisance found by the jury, as of

---

[5] With respect to the second sub-class, the Court stated that "the availability and means of determining any compensatory damages due this sub-class if Defendants are found liable in trespass will be decided after the class trial." (*Id.* at 16).

9

the CCE date, for each property category [residential, commercial, vacant land]; (3) the value of the properties in the Damages sub-class, by property category, as of the CCE date; and (4) by multiplying the total value of each property category in the sub-class by the average percentage diminution in value for each property category as of the CCE date, and summing these amounts, the aggregate damages for the Damages sub-class." (5/17/05 Order at 16-17). The class members may only recover "damages for the decrease in the value of class properties caused by the *prospect* of the alleged trespass and/or nuisance *continuing into the future*." (5/17/05 Order at 15-16) (emphasis added).

The class members have suffered no property damage as a result of any alleged trespass or nuisance. The class members have not even attempted to provide evidence of any change in market value attributable to the alleged trespass or nuisance, as opposed to a diminution allegedly attributable to non-actionable "proximity" to Rocky Flats. Nor have the class members provided evidence of a diminution in value caused by "the prospect of the alleged trespass and/or nuisance continuing into the future." (5/17/05 Order at 15-16)

Even the class members' proof with respect to diminution in value allegedly caused by "proximity" to Rocky Flats is deficient in several respects. For example, the class members have provided no evidence that any alleged diminution in value of class properties attributable to "proximity" was experienced by class members. Rather, the class members' evidence relates to diminution in value allegedly experienced by class properties prior to when those class properties were owned by class members. The plutonium contour that is the basis of the class members' trespass claim was drawn in 1970, long before the vast majority of the class members purchased their properties. Moreover, looking as far back as the available data permits (*i.e.*, the early

10

1970s), the rate of appreciation of class members' properties has been at least as great as the rate of appreciation for non-class properties.

Dated:  August 8, 2005  Respectfully submitted,


s/Joseph J. Bronesky
Joseph J. Bronesky
SHERMAN & HOWARD LLC
633 Seventeenth Street, Suite 3000
Denver, CO  80202
(303) 297-2900

David M. Bernick, P.C.
Douglas J. Kurtenbach
KIRKLAND & ELLIS LLP
200 E. Randolph Drive
Chicago, IL 60601
(312) 861-2000

Attorneys for Defendants ROCKWELL INTERNATIONAL CORPORATION and THE DOW CHEMICAL COMPANY

## **CERTIFICATE OF SERVICE**

  I hereby certify that on August 8, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses for the following:

  Merrill Davidoff, Esq.
  Peter Nordberg, Esq.
  Berger & Montague, P.C.
  1622 Locust Street
  Philadelphia PA 19103-6365

  Gary B. Blum, Esq.
  Silver & DeBoskey
  The Smith Mansion
  1801 York Street
  Denver, Colorado  80206

          s/Patricia Eckman