IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

No. 90-K-181

MERILYN COOK, et al.,

    Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,

    Defendants.

## PLAINTIFFS' RESPONSE TO "DEFENDANTS' STATEMENT IDENTIFYING A MATTER FOR DISCUSSION AT THE AUGUST 22 CONFERENCE"

Plaintiffs respectfully submit this response to "Defendants' Statement Identifying a Matter for Discussion at the August 22 Conference" (filed Aug. 19, 2005) (the "Statement").

Defendants say they learned "for the first time" that plaintiffs intend to call Dr. Wing at trial from a draft pretrial order that plaintiffs sent for discussion purposes last Monday. *See* Statement at 1. In fact, however, defendants have been on notice that plaintiffs intend to call Dr. Wing for over a decade. Dr. Wing was among the experts originally listed when the parties exchanged initial designations in 1995. His report was served in 1996, and defendants deposed him at length before moving to exclude his testimony under *Daubert* in 1997.

Defendants have also been on notice, for over a year, that the inadvertent omission of Dr. Wing's name from the witness list attached to the Joint Status Report of December 2003 did not

signal an intention by plaintiffs to withdraw him. Attached to this filing as Exhibit A is a copy of an email dated July 29, 2004, from Peter Nordberg, one of plaintiffs' counsel, to multiple defense counsel. In that communication, defendants were expressly advised as follows (emphases added):

> We had mentioned to defendants that in light of Dr. Radford's death, plaintiffs might seek a new expert to comment generally on the health effects of plutonium. Our current thought, however, is to rely, if possible, on some expert from the ranks of those having already filed reports covering this subject in 1996. We have been attempting to contact **Drs. Clapp, Gochfeld, and Wing** to confirm whether they are currently available for this purpose, but that process is not yet complete, owing partly to the dispersal of academics during the summer months. It is likely that we would not have to rely on testimony from all three, but we would like to hear from all three ***before eliminating any from our designation.***

Defendants' submission makes no mention of this July 2004 communication and attempts no direct explanation of why defendants felt at liberty to hide their heads in the sand upon receiving it. Defendants' newfound claim to have relied religiously on the witness list attached to the parties' Joint Status Report is not sufficient explanation. At the time of the Joint Status Report, defendants expressly *disavowed* any belief that plaintiffs' witness list (or their own, for that matter) would be free from adjustment. Here is what defendants said then:

> At Appendix B, defendants submit the list of witnesses that they presently anticipate they may call at trial. The list of witnesses at Appendix B is not intended to be a final list of witnesses whom defendants intend to call at trial, given that discovery and investigation continues, additional rulings are expected from the Court, ***plaintiffs have not identified a final list of witnesses whom they will call*** or the exhibits on which they will rely at trial, and the parties seek to engage in ***additional fact and expert discovery***... Defendants reserve the right to add as witnesses any state and local government employees with responsibility for zoning, economic development, and planning at the time of trial. Defendants also reserve the right to add the names of other additional witnesses.

*See* Status Report Responding to the Court's September 11, 2003 Order, at 46-47 (emphasis added) (Exhibit B hereto). Defendants' disclaimer may have been prompted in part by plaintiffs' own caveat, immediately preceding defendants' remarks in the very same document:

*Plaintiffs' Response to Defendants' "Statement" Filed August 19, 2005 – Page 2*

>A list of witnesses to be called by plaintiffs is attached as Appendix A. A list of plaintiffs' planned exhibits is attached as Appendix C. [¶] Both lists represent plaintiffs' best efforts to provide complete and accurate information. However, both lists are tentative and ***will require some adjustment*** before trial. First, investigation and discovery are continuing. Second, plaintiffs are still in the process of locating and contacting certain of the witnesses listed and confirming that they remain available to testify. Third, plaintiffs will need to review defendants' disclosures further to determine the need for rebuttal evidence, particularly as regards defendants' affirmative defenses. ***Fourth, one of plaintiffs' experts, Dr. Edward Radford, has died, and plaintiffs are currently seeking a replacement.***

*See id.* at 46 (emphases added) (Exhibit B hereto).

In sum, plaintiffs designated Dr. Wing in 1995 and supplied a report from him in 1996. Plaintiffs have never stated an intention to withdraw him. Defendants apparently seek to argue that the inadvertent omission of his name from the witness list in the Joint Status Report warranted an assumption that plaintiffs no longer intended to call him. But any belief on defendants' part that plaintiffs intended to withdraw Dr. Wing should have been dispelled by plaintiffs' explicit notice to the contrary in July 2004. Indeed, the very purpose of Dr. Wing's continued designation, as recited in that communication, was precisely what the Joint Status Report had already announced: the need to provide testimony on health risks of plutonium from one or more alternative experts in view of Dr. Radford's death.[1] If defendants remained uncertain despite this abundant notice, they could have resolved any confusion, prior to the deadline for *Daubert* motions, by means of a simple telephone call that counsel chose not to make.

Defendants' Statement leaves it unclear what relief defendants seek. From the parties' meet-and-confer, it was plaintiffs' impression that defendants might seek to bar Dr. Wing from testifying.

---

[1]  Plaintiffs' counsel also believe that the need to call new or already-retained experts in light of Dr. Radford's death was mentioned at a status hearing before the Court a year or more ago, but have been unable to locate the reference in light of defendants' only raising this issue late Friday.

*Plaintiffs' Response to Defendants' "Statement" Filed August 19, 2005 – Page 3*

From defendants' actual submission, however, it appears possible that defendants seek only leave to file a late *Daubert* motion on Dr. Wing. Either form of relief would be prejudicial to plaintiffs, and neither is justified on this record. Over a year ago, plaintiffs expressly advised defendants of Dr. Wing's continued designation. In response, defendants did nothing. To now burden plaintiffs and Dr. Wing with the task of meeting an expedited *Daubert* motion, just over a month before trial, and just as the academic year is set to begin, is not a reasonable remedy for defendants' unexplained omission.

Plaintiffs respectfully request an opportunity to be heard further on this issue at such time as defendants identify the relief they seek and as circumstances may otherwise warrant.

Respectfully submitted,

Dated: August 22, 2005

s/ Peter Nordberg
Merrill G. Davidoff
Peter Nordberg
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

Gary B. Blum
Steven W. Kelly
Silver & DeBoskey, P.C.
1801 York Street
Denver, CO 80206
(303) 399-3000

Attorneys for Plaintiffs
And the Class

## CERTIFICATE OF SERVICE

I certify that today, August 22, 2005, I caused a true and correct copy of the foregoing to be served on counsel for defendants, as listed below, by fax and also by overnight delivery:

>Douglas J. Kurtenbach, Esq.
>**KIRKLAND & ELLIS**
>200 East Randolph Drive
>Chicago, IL  60601
>(312) 861-2000
>(312) 861-2200 (Fax)
>
>Joseph J. Bronesky, Esq.
>**SHERMAN & HOWARD**
>633 17th Street, Suite 3000
>Denver, CO  80202
>(303) 297-2900
>(303) 298-0940 (Fax)

>                              s/ Peter Nordberg
>                              Peter Nordberg