Tab 6B

variables in the regression. The sounder method, and the simplest in terms of statistical properties and interpretation, is to use ordinary regression rather than stepwise regression, and exclude no variables.

At my request and under my supervision, Dr. Paul Liu of the Brattle Group has repeated Dr. Radke's hedonic regressions for multi-residential, commercial, and vacant properties, using the data and statistical procedures that Dr. Radke has provided and the correct decoding of the transaction date. This fails to replicate Dr. Radke's results. I conclude that Dr. Radke has either failed to decode transactions dates correctly or has failed to produce the database actually used in his regressions. Also at my request, Dr. Liu has reestimated Dr. Radke's equations with the following corrections: (a) ordinary regression is used and no variables are excluded, (b) the redundant factor analysis step is dropped, and all location variables are used in their original form, (c) persistent and "post-FBI" effects of proximity to Rocky Flats are estimated, and (d) the cutoff for the Rocky Flats proximity variable is estimated iteratively using minimum sum of squared residuals as the criterion. An auxiliary regression with the added variable $(\hat{\alpha}_0 + \hat{\alpha}_1 \cdot F) \cdot r$, where r is a dummy variable that is one for properties inside the cutoff, and $\hat{\alpha}_0$ and $\hat{\alpha}_1$ are estimates from the optimal grid point regression, provides consistent estimates of the standard errors.

The regression results for the critical parameters are given in Table 1. The critical variables are $q = \text{Max}(0, \delta - D)$, the persistent component of proximity, and $q \cdot F$, where F is a dummy variable that is one in the years following the FBI raid, with D the straight line distance from the plant and $\delta$ the cutoff parameter. A negative coefficient indicates that prices are *lower* for properties near the plant; a positive coefficient indicates that they are *higher*. The cutoff $\delta$ is estimated by minimizing the sum of squared residuals criterion for the nonlinear model, using Gauss-Newton iteration. Standard errors for the coefficients, including $\delta$, are estimated using the auxiliary regression method presented in paragraph (d).

49

| Table 1. Radke Hedonic Regression with Specified Corrections ||||||| 
|---|---|---|---|---|---|---|
| Variable | Multifamily Residential || Commercial || Vacant Land ||
|  | Coeff | SE | Coeff | SE | Coeff | SE |
| Baseline Component of Proximity | 0.0505 | 0.0458 | -0.9698 | 4.9476 | 0.0514 | 0.0278 |
| Offset Component of Proximity following FBI Raid | 0.1304 | 0.0491 | -0.6006 | 0.4816 | 0.0424 | 0.0255 |
| Cutoff distance | 9.7 | 0.6015 | 5.4 | 2.1003 | 11.1 | 1.2565 |
| R-Squared | 0.8765 || 0.7433 || 0.5393 ||
| Offset Component Confidence Bound |||||||
| Upper | 0.211 || 10.062 || 0.084 ||
| Lower | 0.050 || -11.263 || 0.000 ||
| Source Program | rres4bd2.tsp || rcom4bd2.tsp || rvac4bd2.tsp ||

The table also gives the 90 percent confidence bounds for the offset proximity effect. These bounds will be close together when the effect is reliably determined, and far apart when it is not. In classical statistics, it is conventional to *accept* a one-sided null hypothesis of *no* negative effect when the upper confidence bound is positive. In this case, the statistical study has failed to establish a "preponderance of evidence" for the positive damages. This outcome indicates that either the offset effect is in truth not negative, or that the statistical study fails to meet a conventional statistical standard for reliability, or both. The upper confidence bounds in Table 1 for the three property types are all positive, indicating that the statistical analysis fails to provide a preponderance of evidence for the existence of damages to these properties arising from the 1989 FBI raid. There is considerable variation between the cutoff distances for proximity effects estimated by the correct statistical criterion of minimizing the sum of squared residuals, and the incorrect criterion used by Dr. Radke: 9.70 versus 6.5 for multi-family residential, 5.40 versus 5.75 for commercial property, and 11.10 versus 4.25 for vacant land. We also

estimated models in which the persistent and offset proximity effects were allowed to have different cutoffs. We find that there is no significant difference in the cutoffs for the two effects in the multi-family residential and commercial types. In the vacant land type, the cutoff for the persistent effect is 4.90 and for the offset effect is 5.44; this difference is statistically significant. These results indicate that there is some systematic variation in vacant land prices with distance from the Rocky Flats plant, but that this variation does not correspond to reduced prices near the plant.

The coefficients of the proximity effects in the regressions should be negative if prices of properties near Rocky Flats are depressed. For multifamily residential properties and vacant land, Dr. Radke's regressions with the specified corrections show an *increase* in prices of properties near Rocky Flats following the FBI raid. For multi-family residences, this offset effect is statistically significant and larger in magnitude than the estimated persistent effect. For vacant land and commercial property, there is no statistically significant relationship of prices to proximity to Rocky Flats. The numbers of multi-family residential and commercial transactions near Rocky Flats in the DRESCO database used by Dr. Radke are too small to obtain a reliable statistical analysis of the relationship between distance from Rocky Flats and prices for these property types.

9.5. In Phase II of his analysis, Dr. Radke studies single-family residential properties. The data for this analysis comes from MLS listings, and was collected for the years 1988-1995. Dr. Radke states that this data set contains virtually all transactions within the MPC during these years, and in addition a random sample of about three percent of the transactions in the Denver metropolitan area outside the MPC. The sample used for the analysis contained 6392 transactions. The MLS provides variables describing physical attributes of the properties. Using GIS software, Dr. Radke associates a list of location variables with each observation.

Many of the data issues surrounding the Phase I analysis recur here. The documentation of the steps used in constructing the location variables is insufficient to determine if they are valid. The method used to sample MLS listings outside the MPC is insufficiently documented. The Report states that "the stratification was accomplished by digitizing the MLS reporting districts (spatial polygons), producing a random sample within each district, and address matching the samples until a more than adequate control sample was generated." If this sample is representative of Denver metropolitan area sales, then it should have transactions that are distributed over space and over the year in the same way as the MLS population. The description suggests that address matching was done serially, at least within MLS districts, so that sampled transactions may be biased sample of sales over the year. The description also suggests that areas where address matching was more difficult may have been under sampled. *Any* systematic differences between properties in the MPC and control areas that are *not* captured by variables in the hedonic price model may lead to systematic price differences that hedonic price analysis will attribute, incorrectly, to location within the MPC. For example, if control sample sales are concentrated early in the calendar year, then there may be an apparent price difference between MPC and control properties due to seasonal variation in prices, and this will be attributed incorrectly to proximity to Rocky Flats.

An additional issue with the MLS sample outside the MPC is that it is spread over the Denver metropolitan area, with relatively thin coverage in the areas to the northwest of downtown Denver that share many locational characteristics and development patterns with properties inside the MPC. This makes it difficult to estimate accurately cutoff points for proximity measures to Rocky Flats. It also increases the probability that there are broad regional variations in the Denver housing market, not completely captured in the location variables included in the model, that introduce variations from the MPC area for reasons other than proximity to Rocky Flats.

52

Dr. Radke estimates a hedonic price model for single-family residences of the form

$$y = x_1\beta_1 + \ldots x_K\beta_K + z_1\gamma_1 + \ldots + z_J\gamma_J + q_{88}\alpha_{88} + \ldots + q_{95}\alpha_{95},$$

where the dependent variable y is log selling price in 1993 dollars; the x's are physical attributes of the property such as square feet, number of bedrooms, and age; z's are constructed composite location variables obtained by factor analysis of a longer list of original location variables, and q's are measures of proximity to Rocky Flats for the years 1988 through 1995. Comments on this regression follow:

(a) The physical characteristics are entered as log transformations. This is plausible for variables such as square feet. For other variables, such as garage parking spaces which may be zero, the log transformation requires that the variable first be translated so that it is never zero. The Report does not describe or justify this complicated procedure.

(b) The Rocky Flats proximity variables are constructed by two alternative methods. For the first method, $q_{88}$ is a dummy variable that is one for transactions in 1988 within the MPC, and zero otherwise. For the second method, $q_{88} = F_{88} \cdot \text{Max}(0, \delta_{88} - D)$, where $F_{88}$ is a dummy variable that is one for 1988 transactions, D is straight line distance from the Rocky Flats plant, and $\delta_{88}$ is a cutoff parameter. Analogous definitions apply for the remaining q's. Radke's Method 2 for defining proximity to Rocky Flats in this analysis is the same as the definition of proximity for the analysis of multi-family residential, commercial, and vacant properties.

(c) As in my comments on Dr. Radke's Phase I analysis, the factor analysis is a completely unnecessary step that cannot improve, and may worsen, estimates of the $\alpha$ parameters that determine the effects of proximity to Rocky Flats. A simpler and statistically sounder procedure is simply to include all of the original location variables in the hedonic regression, without forming composite variables.

(d) Dr. Radke uses a non-standard statistical procedure to choose cutoff values in his Method 2 for defining proximity variables $q_t = \text{Max}(0, \delta_t - D)$, picking the value of $\delta_t$ to maximize the T-statistic

53

on the associated coefficient $\alpha_t$. As in Dr. Radke's Phase I analysis, his procedure fails to attain statistically consistent estimates of the proximity effects $\alpha_t$, and overstates their significance levels. A correct statistical procedure is to estimate the model using nonlinear least squares.

(e) Dr. Radke gives each observation inside the MPC a weight of 0.03 in his factor analysis and a weight of 0.15 in his regression, where observations outside the MPC get a weight of one. Dr. Radke states that "Weighted least squares estimation was used to balance the influence of samples inside and outside the MPC on the regression results, since different percentage samples were taken from the two areas (100% and 4% respectively)." This is a blatant and obvious statistical error that contradicts the Gauss-Markov theorem, the most fundamental result in regression theory. Weighting of observations in least squares is appropriate for data that is randomly sampled (including stratified sampling based on an explanatory variable such as location inside or outside the class) *only* to correct for heteroscedasticity, a non-constant variance of the regression disturbances across observations. All major econometrics testbooks, such as William Greene *Econometric Analysis*, give these results. An explicit citation for the proposition that weighting is incorrect in the case of stratified random sampling with stratification on an explanatory variable is given by William DuMounchel and Greg Duncan (1983) "Using Sample Survey Weights in Multiple Regression Analysis of Stratified Samples," *Journal of the American Statistical Association*. The consequences of inappropriate weighting are a loss in statistical efficiency in the estimation of regression coefficients, and statistically inconsistent estimates of standard errors of the weighted least squares estimates. Dr. Radke's reasoning that the weighted regression will be more representative of the metropolitan area places him in a logical dilemma. If his model is incorrectly specified, there may well be substantial changes in coefficient estimates between weighted and ordinary regressions. However, in this case, the model cannot be used to estimate damages reliably, since it is then using controls that are different than the properties in the class, and the model fails to account for

54

these differences through location or physical attribute variables. On the other hand, if the model is correctly specified, then weighted and ordinary regressions are both statistically consistent for the regression coefficients, and ordinary regression is simpler and more accurate.

(f) Dr. Radke uses a stepwise regression procedure, which is statistically inferior to ordinary regression using all the variables, as discussed earlier.

At my request and under my supervision, Dr. Paul Liu has replicated, successfully, Dr. Radke's hedonic regressions for single-residence properties. Also at my request, Dr. Liu has reestimated Dr. Radke's equations with the following corrections: (a) Ordinary regression is used and no variables are excluded. (b) The redundant factor analysis step is dropped. (c) Unweighted regression is used. (d) To obtain direct estimates of the impact of the FBI raid and publicity, the proximity variables are entered as follows: Let q be either a dummy variable for MPC properties (Method 1) or $q = \text{Max}(0, \delta - D)$, with $\delta$ a cutoff parameter to be estimated (Method 2). Let q enter the regression without interaction with year dummies. The coefficient of this variable, $\alpha_o$, has the interpretation of a baseline or persistent proximity effect. Then, enter proximity variables $q \cdot F_t$ that are interactions of q with dummy variables for each of the years $t = 1989,...,1995$. The coefficients $\alpha_t$ associated with these "offset" variables have the interpretation of additional increments to prices of properties near Rocky Flats following the FBI raid and publicity. Table 2 gives Dr. Radke's Method 1 hedonic regression with the corrections specified above. A negative coefficient corresponds to lower property prices within the MPC, relative to baseline and relative to areas outside the MPC.

| Table 2. Radke Hedonic Regression with Specified Corrections (Single-Family Residences, Method 1) | | | | |
|---|---|---|---|---|
| | COEFF | SE | 90% Confidence Bound | |
| Variable | | | Lower | Upper |
| Baseline Component of Proximity | -0.0107 | 0.0203 | -0.044 | 0.023 |
| Offset Component of Proximity, 1989 | -0.0141 | 0.0202 | -0.047 | 0.019 |
| Offset Component of Proximity, 1990 | -0.0275 | 0.0198 | -0.060 | 0.005 |
| Offset Component of Proximity, 1991 | -0.0108 | 0.0198 | -0.043 | 0.022 |
| Offset Component of Proximity, 1992 | -0.0225 | 0.0198 | -0.055 | 0.010 |
| Offset Component of Proximity, 1993 | -0.0188 | 0.0192 | -0.050 | 0.013 |
| Offset Component of Proximity, 1994 | -0.0070 | 0.0291 | -0.040 | 0.026 |
| Offset Component of Proximity, 1995 | 0.0147 | 0.0205 | -0.019 | 0.049 |
| R-Squared | 0.7076 | | | |
| Source Program | mis1bdq.tsp | | | |

The Table 2 regression shows a statistically *insignificant* decrease in property values following the FBI raid, largest in 1990 and gone by 1995. I also tested and found that all of the offset proximity effects taken together are statistically insignificant. The statistically insignificant point estimate of the average offset price depression effect is -0.013, with a standard error of 0.016. The last two columns in the table give the 90 percent confidence bounds on the effect in each year following the raid. In each case, the upper bound is positive, so that the hypothesis of no negative offset effect is accepted at the conventional five percent standard for statistical significance. For Method 2, Dr. Liu estimates the cutoffs for the Rocky Flats proximity variables by nonlinear least squares, using gauss-Newton iteration. An auxiliary regression with added variables $F \cdot r \cdot \hat{\alpha}$ for each proximity effect cutoff that is estimated,

where $\hat{\alpha}$ is the estimate obtained from the nonlinear least squares regression, r is a dummy variable that is one for transactions inside the cutoff, and F is a dummy variable for the years over which the effect operates, gives consistent estimates of all the standard errors.

| Table 3. Radke Hedonic Regression with Specified Corrections (Single-Family Residences, Method 2) | | | | |
|---|---|---|---|---|
| Variable | COEFF | SE | 90% Confidence Bound | |
| | | | Lower | Upper |
| Baseline Component of Proximity | -0.0956 | 0.0238 | -0.135 | -0.057 |
| Offset Component of Proximity, 1989 | 0.0129 | 0.0255 | -0.029 | 0.055 |
| Offset Component of Proximity, 1990 | -0.0063 | 0.0259 | -0.049 | 0.036 |
| Offset Component of Proximity, 1991 | -0.0035 | 0.0240 | -0.043 | 0.036 |
| Offset Component of Proximity, 1992 | -0.0232 | 0.0237 | -0.062 | 0.016 |
| Offset Component of Proximity, 1993 | -0.0027 | 0.0237 | -0.042 | 0.036 |
| Offset Component of Proximity, 1994 | -0.0034 | 0.0238 | -0.043 | 0.036 |
| Offset Component of Proximity, 1995 | 0.0127 | 0.0258 | -0.030 | 0.055 |
| Cutoff, common to all components | 4.0822 | 0.1370 | 3.863 | 4.314 |
| R-Squared | 0.7076 | | | |
| Source Program | rmla4bd2.tsp | | | |

Table 3 gives Dr. Radke's hedonic regression for Method 2, with the corrections specified above and a common cutoff for all the proximity effects. I tested and found that this regression shows *no statistically significant* offset proximity effects. The statistically insignificant point estimates indicate small price depression effects near Rocky Flats in the years 1990-94, and a price increasing effect in 1995. The statistically insignificant point estimate of the average offset price depression effect is -0.00678, with

a standard error of 0.0216. The significance level of the average offset price depression effect is 37.7 percent.

Dr. Radke reports substantial variation from year to year in the cutoffs he estimates using his incorrect statistical procedure. Table 4 compares the cutoffs he obtains with cutoffs for the yearly proximity offset effects estimates in his model, with specified corrections, using the statistically correct procedure of minimizing the sum of squared residuals.

| Table 4. Estimated Cutoffs (Single-Family Residences, Method 2) |||| 
|---|---|---|---|
| Year | Radke Procedure | Least Squares Procedure ||
|  | Distance | Distance | SE |
| 1988 | 7.00 | 4.05 | 0.12 |
| 1989 | 6.50 | 3.08 | 0.26 |
| 1990 | 9.00 | 3.03 | 0.56 |
| 1991 | 7.50 | 2.99 | 0.25 |
| 1992 | 9.00 | 2.82 | 0.12 |
| 1993 | 8.50 | 2.48 | 0.14 |
| 1994 | 9.50 | 2.89 | 0.15 |
| 1995 | 6.50 | 10.53 | 5.73 |
| Source Program | mnla4bq4.tsp |||

The results indicate that Dr. Radke's method is substantially biased, estimating considerably larger cutoffs than the statistically correct procedure. I have tested and accept the hypothesis of a common cutoff.

Dr. Liu has conducted at my request a Hausman test that compares coefficient estimates from weighted and ordinary least squares applied to Dr. Radke's model. For this test, we do not eliminate any factors, and dispense with the redundant factor analysis. The Hausman test can be interpreted as a test

58

of the model specification. If there are no systematic differences between properties within the MPC and outside the MPC that are not captured by the model, then the weighted and ordinary least squares procedures should give similar estimates. We find that the Hausman test convincingly rejects the hypothesis that the weighted and unweighted regressions estimate the same coefficients, for either Method 1 or Method 2 measures of proximity to Rocky Flats. This rejection implies that there are systematic differences between the MPC and non-MPC properties not captured by the model. I have confirmed this result using a F-test on differences between MPC and non-MPC models. These results imply that the non-MPC properties fail to act as controls to eliminate market-wide price effects, and confound the measurement of proximity effects so that the model *cannot* be reliably used to estimate damages associated with proximity.

9.6. The final step in damage estimation based on hedonic regressions is to translate the price effects of the 1989 FBI raid, as estimated in the regression formula, into an estimate of the economic outcomes for each class property in the absence of the event. Property owners in the class may be affected differently, depending on the year in which they sell their property, or were as of the cutoff data for analysis still the owners of the property.

Estimation of aggregate damages would ordinarily proceed by using the hedonic regression to estimate at the time of the first sale of each class property after 1989, or at the end of 1995 if not sold, the percentage increment in price attributed to the FBI raid and publicity. These percentages would be multiplied by the actual sale prices (or estimated sale prices if not sold), and these lost values would be summed over the class properties. This method does *not* provide reliable estimates of damages actually incurred by individual property owners, because hedonic analysis by its statistical nature gives a picture of the *distribution* of prices in a population, not prices and price offsets for individual properties, which

may vary significantly from population averages. The formula for the estimation of the percentage lost value that enters the aggregate damage estimate is

$$\text{Lost Sales Value} = [\exp(-\alpha q) - 1] \cdot [\text{Sales Price}],$$

where $\alpha q$ is the term in the hedonic price model that estimates the *incremental* or *offset* impact of the FBI raid and publicity. The most critical component in determining the magnitude of Lost Sales Value is the term $[\exp(-\alpha q) - 1]$, which I shall refer to as the Lost Sales Value Ratio. For properties that are sold, the observed sales price can be used in the lost sales value calculation; for unsold properties, it must be estimated from the hedonic regression. The sum of Lost Sales Values over all properties in the class is then the estimate of damages. When the proximity effect $\alpha q$ varies with distance, as it does for Dr. Radke's multi-family residential, commercial, and vacant land models, and his Method 2 single-family residential model, it is necessary to obtain the distance of each property from Rocky Flats, and to apply $\alpha q$ effect appropriate to each distance. An analogous construction is required when $\alpha q$ varies by year.

9.7. Dr. Radke utilizes a simpler, and substantially biased, method for estimating damages. The major bias results from his failure to distinguish between effects of proximity to Rocky Flats resulting from the FBI raid, and pre-existing persistent effects. Thus, he improperly claims damages for proximity effects that may have prevailed from the time the class area was initially developed, and that have not been demonstrated to be caused by release of hazardous materials at Rocky Flats. Further, any class member who purchased his property *after* the onset of a persistent proximity effect on prices has suffered no economic loss from this source, *even if* Rocky Flats were the cause of a price effect, because he has "bought low" and "sold low". Dr. Radke has not attempted to determine a date of onset of persistent proximity effects, or the fraction of the class members who might be entitled to damages because they purchased their properties before the onset date.

9.8. Dr. Radke calculates losses for properties within the MPC in two steps. First, he applies the Lost Sales Value formula above to each observed sale within the MPC. These lost sales values are summed across observations and divided by the sum of observed sales prices to obtain a mean Lost Sales Value Ratio. In forming this sum, $\alpha q$ varies by year in Phase II, Method 1, and by distance in Phase I and in Phase II, Method 2. Second, Dr. Radke multiplies the mean Lost Sales Ratio by the number of properties in the MPC and by the average sales price to obtain his damage estimate.

There are several potential biases in this estimation. Properties *sold* in the MPC may not be representative of properties *held* in the MPC. In particular, their distributions may differ by *location* or by *average value*. If so, the Radke procedure will give a biased estimate of the lost value to all properties within the MPC.

There is a more basic error in Dr. Radke's damage estimation, arising from an accounting inconsistency. For Phase I properties, Dr. Radke states that he calculates his mean percentage undervaluations only for properties within the cutoffs where he estimates that there is an impact from proximity to Rocky Flats. Then, in Table 2 of his Report, he applies these percentages to the value of all properties of each type in the class, including those that are beyond his cutoffs and by his own logic are not impacted. This inflates his damage estimates for these property types. In addition, I have been unable to replicate Dr. Radke's percentages in his Table 1, and his documentation is inadequate to verify that his calculations were in fact performed as stated and free of mechanical errors.

*If* the hedonic price model indicates that in 1995 the offset attributed to Rocky Flats has disappeared, then there are *no* remaining potential losses to properties that have not sold since 1989. Then, they must be excluded from the damage estimation, and the estimated mean lost value should be multiplied by the number of properties *sold* between 1989 and 1995, *not* the total number of properties.

In Dr. Radke's damage estimation for Phase I property types, Dr. Radke's Report indicates that a pooled 1983-93 calculation was done. Mean observed sales prices in this pooled period will be a biased estimate of sales prices during the 1989-1993 period when losses in value attributable to the FBI raid and subsequent publicity may have occurred.

9.9. Dr. Radke obtains an enumeration of single-family residential properties in the class from tax assessor's records. His Report states that the address matching process was imperfect, and therefore the matched records were overlaid on the TSR map to estimate the frequency with which addresses occurred in the MPC area, and the matching rate. The Report then states that the number of properties in the MPC were estimated. Documentation for this estimation has not been provided.

Dr. Radke used Metrolist data to obtain estimates of the number of commercial properties in the class area; he does not document this data source or indicate how he determined whether properties in Metrolist were in the MPC. He does all damage calculation on a price per square foot basis. However, the commercial price model is not linear in square feet in the hedonic price model, so the distribution of sizes of commercial properties matters.

Dr. Radke also used Metrolist to obtain a count of vacant parcels; documentation is not provided. Because land area was often missing from the Metrolist records, he used 1989 aerial photographs to estimate the area of vacant land in the MPC, and deducted the land area for Rocky Flats, government, parks, and so forth. He then added the area of vacant lots recorded in the tax assessor's records. The details of these calculations are not reported, and one cannot determine whether or not some areas are counted twice because they are in large vacant areas and also on the individual tax rolls. Dr. Radke does not describe how acreage of vacant parcels, an explanatory variable in the hedonic price equation, is calculated for the MPC. Because price is nonlinear in acreage, the distribution of parcel sizes matters

for the damage estimation. Dr. Radke has not estimated the number of multiple-family properties in the class area, or provided a damage estimate for this type.

## 10. Conclusions

It is my opinion, based on a review of Dr. Radke's hedonic price analysis of stigma damages associated with Rocky Flats, that Dr. Radke's study fails to provide an experiment that can hope to reliably estimate stigma effects, and that his work is deeply flawed by errors and documentation lapses that make it non-replicable, inaccurate, and unreliable.

*Daniel L McFadden*

**Daniel L. McFadden**

**February 1, 1999**

# Appendix A. Resume