Tab 35

**5/1/1997 Teitlelbaum, Daniel T.**

1    UNITED STATES DISTRICT COURTFOR THE DISTRICT OF COLORADO

2    Case No. 90-K-181

3    _____

4    MERILYN COOK, et al.,

5    Plaintiff,

6    vs.

7    ROCKWELL INTERNATIONAL CORPORATION, a Delaware

8    Corporation, and

9    THE DOW CHEMICAL COMPANY, a Delaware Corporation,

10   Defendants._____

11

12

13            DEPOSITION OF DANIEL T. TEITELBAUM, M.D.

14                     May 1, 1997

15

16   Pursuant to Agreement taken on behalf of the Defendantsat 1801 York Street, Denver,

17   9:12 a.m., before Joanne Blair, Registered ProfessionalReporter and Notary Public w

18

19

20

21

22

23

24

25

TEITELBAUM DEP.

1    any way in connection with your opinions here?

2         A.    There are no other measurements that I

3    would rely upon.   There are measurements of radiation

4    which were utilized to construct the radionuclide

5    models, but we have not dealt with that information

6    directly.

7         Q.    We can take a break.

8              (A break was taken.)

9         Q.    Now, how is it, Doctor, that you go about

10    making a decision as to whose estimates of air

11    concentrations particular material you -- of any

12    particular material you are willing to rely upon?

13         A.    That's not a question that I'm prepared to

14    answer in connection with this case because we did not

15    make an attempt to go back and validate the air

16    emissions assumptions that either ChemRisk or anybody

17    else made.   If we were asked to do that, we would have

18    gone back to the original source of the information.

19    We would have looked at engineering estimates of

20    materials consumed and released.

21              We would have looked at measurements.   We

22    would have looked at the quality of the laboratory work

23    that was done to evaluate the source, and any remote

24    monitoring which was done would have been taken into

25    consideration.   We would have evaluated the quality of

63

1    that.

2              None of that was within the task that we

3    were asked to do in connection with this case.  What we

4    were asked to do is to take the conclusions which

5    Dr. Goble reached and then develop a dose estimate

6    based on those numbers.  So we have not gone back in

7    this case and attempted to do any of what you are

8    asking about, and I don't think you would be able to do

9    that at this point.

10         Q.   When you refer repeatedly to what you were

11   asked to do, are you referring to what the lawyers for

12   the plaintiffs asked you to do?

13         A.   Yes.  They hired us and they -- we and

14   they discussed the scope of our activity.  And within

15   the scope of that activity we defined what we felt we

16   could do, and from that they decided what they wished

17   us to do, and we and they reached a conclusion as to

18   what we would do and did do.

19         Q.   At the time you prepared Exhibit 1, you

20   were aware that ChemRisk also had estimated beryllium

21   in air concentrations, correct?

22         A.   I was aware that there were several sets

23   of estimates.  We were not asked to work with their

24   estimates.  We were asked to work with Dr. Goble's

25   estimates.