**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-181-JLK

MERILYN COOK, *et al.*,

       Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

       Defendants.

_____

**DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF DR. STEVEN WING**
_____

Defendants request that this Court exclude the testimony of Dr. Steven Wing on the ground that it is inadmissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).  This Motion incorporates by reference herein Defendants' Introduction and Overview to Their Motion to Exclude Expert Witness Testimony ("Introduction Brief"), which was filed on June 16, 2005.

**INTRODUCTION**

As defendants have previously explained, plaintiffs did not announce their intention to call Dr. Wing as a witness until August 15, 2005, when plaintiffs submitted the latest version of plaintiffs' expert witness list to defendants.  (*See* Defs.' Statement Identifying a Matter for Discussion at the August 22 Conf., filed 8/19/05.)  Plaintiffs did not list Dr. Wing as a potential witness on the witness list submitted in connection with the parties' December 10, 2003 Joint Status Report.  (Ex. 1, Pls.' Dec. 10, 2003 Witness List)  The December 10, 2003 witness list is what defendants relied upon in determining which experts each side may call at trial; between

December 10, 2003 and August 15, 2005, no updated witness list was exchanged.  Dr. Wing is

not the only expert witness that plaintiffs had apparently abandoned; there were a number of

experts for whom plaintiff had filed expert reports in 1996, who were deposed, and against

whom defendants had brought *Daubert* motions earlier in the case, but who were not listed on

plaintiffs' December 2003 witness list.  Because plaintiffs had given no indication that they

would seek to call Dr. Wing, defendants did not have an opportunity to file a *Daubert* motion or

a motion in *limine* with respect to his testimony prior to the June 16, 2005 deadline for these

motions.  Accordingly, following plaintiffs' untimely announcement that Dr. Wing will testify as

an expert witness, defendants now file this *Daubert* motion to bar the proposed expert testimony

of Dr. Wing.

Dr. Wing's proposed expert testimony should be excluded for three reasons:  (1) Dr.

Wing's testimony fails to satisfy *Daubert's* "fit" requirement; (2) Dr. Wing's testimony is based

on insufficient facts and data; and (3) plaintiffs failed to disclose Dr. Wing as a witness in

plaintiffs' December 10, 2003 witness list.

## ARGUMENT

### I.     Dr. Wing's Opinions Will Not Assist the Trier of Fact.

Dr. Wing's proposed testimony consists solely of a selective review of the Department of

Energy's epidemiological studies of radiation and its effects.  (Ex. 2, Wing Dep. at 51–52.)  Dr.

Wing concludes that "it is impossible to accept assurances that the radiation health community,

which has been largely funded by DOE or its predecessor organizations, has adequately

investigated the human health effects of exposure to plutonium."  (Ex. 3, Wing Report at 3.)  Dr.

Wing also states that "DOE has been more interested in producing nuclear weapons, promoting

nuclear energy, protecting its public image, and guarding against litigation than in vigorously

pursuing research into radiation health effects in general and plutonium health effects in particular." (*Id.* at 33.)

Though Dr. Wing's area of specialty is epidemiology, he did not conduct any epidemiological study in arriving at his conclusions for this case. He did not conduct his own analysis of the data underlying any of the DOE-funded studies that he criticizes to determine whether a different conclusion was warranted. Rather, an examination of page 5 of his report, in which Dr. Wing explains his "methods," does not reveal that Dr. Wing did anything more to prepare his testimony than read epidemiological studies performed by others and other historical documents. Based on his passive review of the documents, Dr. Wing casts general aspersions on the DOE's motives, even though he does not identify any specific methodological flaws in the studies he reviewed.

Dr. Wing's attempt to gauge the credibility of the DOE is no help to the jury, but invades their task to weigh the evidence. *See United States v. Samara*, 643 F.2d 701, 705 (10th Cir. 1981) (affirming exclusion of expert testimony because "[a]n expert may not go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility"); *Gust v. Jones*, 162 F.3d 587, 594–95 (10th Cir. 1998) (affirming exclusion of accident reconstruction expert because there was sufficient evidence from which the jury could draw its own conclusions regarding vehicle speed and driver negligence, including the eyewitness testimony); *N.M. Sav. & Loan Ass'n v. U.S. Fid. and Guar. Co.*, 454 F.2d 328, 335 (10th Cir. 1972) (exclusion of expert testimony affirmed where the jury "did not need expert help" in reaching its decision). Dr. Wing provides no epidemiological expertise that would advance the jury's ability to weigh the DOE's credibility. Dr. Wing's four final conclusions, that:

> 1. Health effects of plutonium have been insufficiently investigated despite the evidence that is a serious health threat

2. DOE has removed funding from investigators who have found evidence of radiation health effects

3. A climate of research has been created that makes it difficult for critical research to be conducted

4. DOE has been more interested in producing nuclear weapons, promoting nuclear energy, protecting its public image, and guarding against litigation than in vigorously pursuing research into radiation health effects in general and plutonium health effects in particular

are conclusions that the jury can reach for itself, based on its own review of the documents.

Plaintiffs' counsel are free to argue that DOE-funded studies cannot be trusted, but they should

not be permitted to voice that argument through an expert whose expertise does not contribute to

that determination. (*See also* Defs.' Mot. to Exclude Expert Witness Testimony Relating to

Defs.' Conduct, filed 6/16/05, at 18–20, 23–24.)

## II.      Dr. Wing's Testimony Is Irrelevant.

As defendants explained in their Introduction Brief, Dr. Wing's testimony must be

relevant to the issues of this case to be admissible. (*See* Introduction Brief at 3–4.)  Dr. Wing's

conclusions have nothing to do with the conduct of Dow or Rockwell, the only defendants in this

case.  Dr. Wing admits that he has done nothing to investigate Dow's and Rockwell's conduct.

Dr. Wing testified that "I'm not referring to specific activities that I'm aware of that Rockwell

and Dow were involved in."  (Ex. 2, Wing Dep. at 98.)  Wing's report does not even once refer

to Dow or to Rockwell.  In short, Dr. Wing would proffer no testimony that Dow or Rockwell

contributed in any way to the supposed insufficient investigation of the health effects of

plutonium exposure.

Neither does Dr. Wing's testimony relate in any way to any health risks experienced by

class members  (*Id.* at 181.)  Dr. Wing does not attempt to apply his criticisms of plutonium

health studies to determining the actual health risk to class members from Rocky Flats; Dr. Wing

4

testified that he did not even know where the class countour for this case is or what it is based

on.  (*Id.* at 35–36.)  None of plaintiffs' other experts relate Dr.Wing's criticisms to actual health

risk to class members, nor do plaintiffs' other experts (or fact witnesses) utilize Dr. Wing's

opinions in any other way.  For example, none cite to Dr. Wing's report.  Nor do plaintiffs' other

experts cite any DOE studies or refer to them in any other way.  To the extent that any defense

witness relies on any such study (and presently they do not intend to), Dr. Wing's testimony

would only be potentially relevant on rebuttal.  Dr. Wing's conclusion is that those exposed to

plutonium should receive medical monitoring.  (*See* Ex. 3, Wing Report at 33–34 ("This

situation could be partially redressed by carefully planned monitoring and medical surveillance

of exposed populations by clinicians and researchers who are committed to serving public health

needs.").)  Medical monitoring is not being tried.

### III.     Dr. Wing's "Method" Is Untested and Unverifiable.

Dr. Wing's review of DOE-funded studies does not lend itself to any means of testing or

verification.  Thus, it should be excluded for this reason as well.  (*See* Introduction Brief at 8.)

The fact that Dr. Wing's work cannot be verified by another expert is especially

troubling, given that Dr. Wing has demonstrated a pre-inclination towards finding undue

influence by political interests.  *See* Ex. 4, Steve Wing, Basics of Radiation Epidemiology, at 27

("Political and economic interests in nuclear industries, including military, energy and medical

uses, have created especially obvious social influences on studies of radiation health effects.").

One illustration of this bias comes from Dr. Wing's involvement in the Three Mile Island

litigation, in which he had been retained as an expert for the plaintiffs.  Dr. Wing conducted a

study that reanalyzed the data from an earlier Columbia University study that had been

commissioned by the Court.  *See* Ex. 5, Steve Wing et al., *A Reevaluation of Cancer Incidence*

*Near the Three Mile Island Nuclear Plant:  The Collision of Evidence and Assumptions*,

5

Environmental Health Perspectives, Jan. 1997, at 52.  Dr. Wing's study criticized the Columbia's

study assumption "that doses were too low to produce observable effects" and also blamed the

court's order establishing the study, stating that "[s]uch legal restrictions suggest that

investigators were not in a position to make an unencumbered critical evaluation of radioactive

releases."  *Id.*

Wing's cancer study was rejected by three peer-reviewed journals—the New England

Journal of Medicine, the Journal of the American Medical Association, and the American

Journal of Epidemiology.  (Ex. 2, Wing Dep. at 27–28.)  It was finally accepted by

Environmental Health Perspectives, which published it in conjunction with a response piece

authored by the original Columbia investigators, one of whom is plaintiffs' expert Jan Beyea.  In

this response piece, Dr. Beyea and his colleagues blasted Dr. Wing's study as "tendentious and

unbalanced."  Ex. 6, *Comments on "A Reevaluation of Cancer Incidence near the Three Mile*

*Island Nuclear Plant,"* Environmental Health Perspectives, Jan. 1997, at 12.  In response to Dr.

Wing's attack on the assumed level of doses, the Columbia investigators noted that "we did think

it was possible that unmonitored releases might have been greater than those estimated," but

further analysis of the data "led us to rule this out."  *Id.*  The Columbia team also rejected Dr.

Wing's assertion that the court had unduly restricted their work, stating:  "The only limitation

involved our agreement to use an exposure model rather than upper limit dose calculations,

which are not suitable for an epidemiological study in the first place."  *Id.*

IV.     **Dr. Wing's Testimony Should Be Excluded Because It Is Based upon Insufficient Facts or Data**

Dr. Wing's testimony is based upon insufficient materials selected by plaintiffs' counsel

solely for use in this litigation, and is therefore unreliable.  Dr. Wing's review was based on (1) a

set of epidemiological studies and (2) a set of historical documents.  The way in which the

second set was assembled reveals Wing's report to be an effort by the plaintiffs' counsel to pass

off their own work as that of an expert.  Wing testified:

- that plaintiffs' counsel Dan Berger sent him the documents that he reviewed (Ex. 2, Wing Dep. at 73)

- that he is "quite sure" that the LANL documents he reviewed are not all of the documents in that collection but that he does not know who selected the portion of the documents for him to review (*id.* at 69–70)

- that he did nothing to ensure that he had copies of minutes of ACBM meetings other than those given to him by Mr. Berger (*id.* at 73–75)

- that he did not know about or review any documents produced by Dow or Rockwell (*id.* at 79–80), and

- that he did not review documents at any United States document repository except for materials available at his local library (*id.* at 80).

Wing formulated his opinions based on a few historical documents selected by plaintiffs'

counsel.  His opinions are thus the product of a selective document review.  Irrelevant as Wing's

opinions are to this case, they also are the product of an improperly conducted historical inquiry.

This is not surprising, given that Wing is not a trained and experienced historian.  (*Id.* at 10–11,

14–15, 19.)  Dr. Wing's research was based upon both incomplete and biased data.  It is thus

based upon insufficient facts or data and is inadmissible.  (*See* Introduction Brief at 5–6.)

### CONCLUSION

Dr Wing's testimony would not assist the jury, has nothing to do with any disputed issues

in this case, is unreliable, and is based upon insufficient facts or data.  It is nothing more than

attempt to prejudice the fact-finder against defendants by associating them with alleged

misconduct by a non-party, the Department of Energy.  Because his testimony is irrelevant and

prejudicial, it is inadmissible under Rule 702 and *Daubert*.

Dated:  September 16, 2005                    Respectfully submitted,


/s/Joseph J. Bronesky
Joseph J. Bronesky
SHERMAN & HOWARD LLC
633 Seventeenth Street, Suite 3000
Denver, CO  80202
(303) 297-2900

David M. Bernick
Douglas J. Kurtenbach
KIRKLAND & ELLIS LLP
200 E. Randolph Drive
Chicago, IL 60601
(312) 861-2000

Attorneys for Defendants ROCKWELL
INTERNATIONAL CORPORATION and THE
DOW CHEMICAL COMPANY

8

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses for the following:

Peter B. Nordberg, Esq.
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103-6365


Gary B. Blum, Esq.
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206


/s/Patricia Eckman