## <u>INDEX OF DEFENDANTS' OBJECTIONS TO PLAINTIFFS' SUPPLEMENTAL JURY INSTRUCTIONS AND JURY VERDICT FORM</u>

Instruction No. 1       Fear, Anxiety, and Mental Discomfort
Instruction No. 2       Damages Setoff
Instruction No. 3       Spoliation

**Proposed Supplemental Instruction on "generic emotional distress"**

## FEAR, ANXIETY, AND MENTAL DISCOMFORT

Among the forms of interference with use and enjoyment asserted by plaintiffs and the class in their nuisance claim are fear, anxiety, and mental discomfort allegedly suffered as a result of defendants' activities.  Because this is a trial of claims by the whole class, you will not be asked to decide whether specific individual plaintiffs or class members actually did or did not suffer from fear, anxiety, or mental discomfort.  However, you will be asked to decide whether defendants' conduct at Rocky Flats, or the actual or threatened harms caused by that conduct, have created a situation that is capable of causing fear, anxiety, or mental discomfort in a normal member of the community.

To prove that fear, anxiety, or mental discomfort would be experienced by a normal member of the community, plaintiffs do not need to show that actual or threatened future contamination from Rocky Flats poses an actual or verifiable health risk.  In determining whether defendants' activities are capable of causing fear, anxiety, or mental discomfort, you should take fears and other mental reactions common to the community into account, even though they may be without demonstrable scientific foundation or other support in fact.

Contamination may represent an interference with use and enjoyment, even if it does not pose a currently measurable or verifiable risk to the property or its occupants, if the contamination, alone or in combination with other alleged factors of interference, would

cause a normal member of the community in the same or similar circumstances to experience sufficient fear, anxiety, or other discomfort that the community member would find the contamination (and/or other factors of interference) seriously offensive, annoying, or inconvenient.

Your determination regarding fear, anxiety, and mental discomfort is relevant only to issues of liability. In this trial, there are no claims for separate damages for fear, anxiety, or mental discomfort. Later in these instructions, I will instruct you on the appropriate measure of damages.

**Authority:** *Cook v. Rockwell Int'l Corp.*, 273 F. Supp. 2d 1175, 1201-08 (D. Colo. 2003) (citing additional authorities); *Pub. Serv. Co. of Colo. v. Van Wyk*, 27 P.2d 377, 391 (Colo. 2001); *Restatement (Second) of Torts* § 821F.

**Defendants' Objections:**  Defendants' Supplemental Instruction No. 1 ("Generic Causation of Emotional Distress") should be given instead of this instruction.  Defendants object to this instruction on several grounds, each of which is explained below.

Defendants' Objection No. 1 to Plaintiffs' Proposed Instruction

Defendants object to the first sentence of plaintiffs' proposed instruction.  It is not true that "[a]mong the forms of interference with use and enjoyment asserted by plaintiffs and the class <u>in their nuisance claim</u> are fear, anxiety, and mental discomfort allegedly suffered  as a result of defendants' activities."  This Court has already repeatedly held that fear, anxiety, and mental discomfort cannot flow all the way through to a finding of nuisance liability in the upcoming class trial because the question "whether Defendants' activities caused Class members to suffer fear or other emotional disturbance raises individual causation questions and thus is not capable of class-wide determination."  (5/17/05 Order at 7.)  Therefore, the jury may not take into account fear, anxiety, and mental discomfort as a basis for <u>holding Defendants liable for nuisance</u>. Instead, the jury is being asked to decide "the generic causation question" of whether any of defendants' activities were <u>capable of causing</u> Class members to suffer fear, anxiety, or mental discomfort — which is <u>necessary but not sufficient for a finding of nuisance</u>. (*Id.*)  Plaintiffs' proposed instruction is flawed because it suggests the jury may find defendants liable to each class member for nuisance solely due to alleged "generic" fear, anxiety, and mental discomfort (without a finding that each class member

actually suffered such fear, anxiety, and mental discomfort), in contravention of this Court's May 17, 2005 Order.

Defendants' Objection No. 2 to Plaintiffs' Proposed Instruction

Defendants object to the second sentence of plaintiffs' proposed instruction on the ground that it is unnecessary. The second sentence is directed solely toward telling the jury what it does not need to decide: "you will not be asked to decide whether specific individual plaintiffs or class members actually did or did not suffer from fear, anxiety, or mental discomfort." However, there is no reason to tell the jury what it does not have to decide. The instructions should be limited to informing the jury what it actually does need to decide.

Defendants' Objection No. 3 to Plaintiffs' Proposed Instruction

Defendants object to the third sentence of plaintiffs' proposed instruction on the ground that it mischaracterizes this Court's May 17, 2005 Order. ***First***, this Court held that the jury will have to decide whether Defendants' ***"Activities"*** were capable of causing fear, anxiety, or mental discomfort, not whether Defendants' actual or threatened ***"Harms"*** caused emotional distress. Use of the term "harm" is impermissible because it presupposes that the defendants' activities did or may have caused harm. However, it is the jury's function to determine whether or not any of defendants' activities were "harms."

***Second***, plaintiffs would instruct the jury that they need to determine whether defendants' activities were capable of causing fear, anxiety, or mental discomfort in a

"normal member of the community."  However, this Court held that plaintiffs also need to prove whether Defendants activities were capable of causing ***"Class Members"*** emotional distress.  (5/17/05 Order at 7.)  Under Restatement (Second) of Torts § 821F, to show that class members were capable of experiencing emotional distress, plaintiffs must show both: (1) a nuisance that causes harm "that would be suffered by a normal person in the community," and (2) a nuisance that causes harm that would be suffered by the class members.  For example, in the illustration provided in the commentary to that Restatement section, a deaf plaintiff must show both that noise of a boiler factory "is of a kind that the normal individual in the community would find definitely annoying or offensive" ***and*** that the noise constitutes "a genuine interference with the use and enjoyment of his land as, for example, for the purpose of entertaining guests."  Restatement § 821F cmt. d.  Plaintiffs' proposed instruction impermissibly narrows the focus of the fact-finder to a "normal member of the community," to the exclusion of the class members.

### Defendants' Objection No. 4 to Plaintiffs' Proposed Instruction

As an initial matter, the second paragraph of plaintiffs' proposed instruction is irrelevant.  This Court did not hold that plaintiffs need prove emotional distress in a ***"normal member of the community,"*** but rather whether Defendants activities were capable of causing ***"Class Members"*** emotional distress.  (5/17/05 Order at 7.)  Plaintiffs' proposed instruction impermissibly shifts the focus of the fact-finder away from the class plaintiffs to an average member of the community.

Defendants object to the first sentence of the second paragraph on the grounds that it is unnecessary and misstates the law.  It is unnecessary because it tells the jury what it does not have to decide to find Defendants liable.  It misstates the law because it refers to a "normal member of the community" rather than all class members.

Defendants' Objection No. 5 to Plaintiffs' Proposed Instruction

Defendants object to the second sentence of the second paragraph on the ground that it misstates the law.  Plaintiffs improperly instruct they jury that they ***"should*** take fear and mental reactions common to the community into account, even though they may be without demonstrable scientific foundation or other support in fact."  Putting aside that the relevant inquiry is whether "class members" would suffer fear and not a "normal member of the community," this Court's rulings relate to whether the jury ***may*** take alleged fear and mental reactions into account, not whether the jury is ***required*** to take into account fears and mental reactions even if they do not have scientific foundation.  *See Cook v. Rockwell Int'l Corp.*, 273 F.Supp.2d 1175, 1207 (D. Colo. 2003) ("a rule requiring Plaintiffs to prove an actual or verifiable health risk on order to prove contamination substantially interferes with the use and enjoyment of property would also be inconsistent with Colorado law assigning the jury the task of making this determination based on the reaction of a normal community member to the contamination.")  Plaintiffs' proposed instruction impermissibly tells the jury what they should take into account when determining whether defendants' activities were capable of causing emotional distress.

Furthermore, plaintiffs' instruction incorrectly refers to "fears and other mental reactions *common* to the community." The correct standard is not what fears are common to the community, but rather what a *normal*, hypothetical, community member would take into account. *See* Restatement § 821F ("There is liability for a nuisance only to those to whom it causes significant harm, of a kind that would be suffered by a *normal person in the community* or by property in *normal* condition and used for a *normal* purpose") (emphasis added). "Common" is an improper term because some fears and anxieties might be common to a community, in the sense that more than one community member suffers from them, even if a normal member in the same community would not suffer emotional distress.

Finally, defendants object to this proposed instruction on the ground that is contrary to Colorado law. In order for plaintiffs to recover damages for emotional distress, plaintiffs must prove that any fears of disease or contamination they may have "are reasonable and have a sound foundation in medical, scientific, and statistical evidence." *Boughton v. Cotter Corp.*, 65 F.3d 823, 834 (10th Cir. 1995).[1]

In any event, this entire portion of the instruction is irrelevant, because the Court did not hold that plaintiffs need prove emotional distress in a "normal member of the community," but rather whether Defendants activities were capable of causing "Class Members" emotional distress. (5/17/05 Order at 7.)

---

[1]Defendants recognize that this may be inconsistent with this Court's *Cook IX* decision, but include this objection to preserve this argument.

<u>Defendants' Objection No. 6 to Plaintiffs' Proposed Instruction</u>

Defendants object to the first sentence of the last paragraph of plaintiffs' proposed instruction because the jury's determination regarding fear, anxiety, and mental discomfort is not relevant to issues of liability.  As indicated in defendants' first objection, *supra*, this Court has held that whether "Defendants activities caused Class members to suffer fear or other emotional disturbance raises individual causation questions and thus is not capable of class-wide determination." (5/17/05 Order at 7.)  Therefore, the jury may not find defendants liable **to the class** for emotional distress; rather the jury is only to address the "generic causation question of whether Defendants activities and the conditions resulting from them were capable" of causing Class members emotional distress.  (*Id.*)

<u>Defendants' Objection No. 7 to Plaintiffs' Proposed Instruction</u>

Defendants object to plaintiffs' proposed instruction on the ground that it fails to inform the jury that it may not take into account generic emotional distress, or any evidence relating to generic emotional distress, in determining nuisance liability, trespass liability, or damages.  *See* Defendants' Proposed Instruction.

<u>Defendants' Objection No. 8 to Plaintiffs' Proposed Instruction</u>

Plaintiffs' proposed instruction—and any trial on the issue of generic emotional distress—violates the Seventh Amendment to the U.S. Constitution.   The Seventh Amendment provides: "In Suits at common law, where the value in controversy shall exceed

twenty dollars, the right of trial by jury shall be preserved, and no fact tried by jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. Const. Amend. VII (emphasis added).   The Seventh Amendment "entitles parties to have fact issues decided by one jury, and prohibits a second jury from reexamining those facts and issues." *Castano v American Tobacco Co.*, 84 F.3d 734, 750 (5th Cir. 1996).  This rule is in part based on the rationale that "if two juries were allowed to pass on an issue involving the same factual and legal elements, the verdicts rendered by those juries could be inconsistent, producing intolerably anomalous results." *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 305 (5th Cir. 1993).

In the class action context, courts have permitted bifurcation only where "the judge [does] not divide issues between separate trials in such a way that the same issue is reexamined by different juries." *In re Rhone-Poulenc-Rorer Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995).   However, "such division must 'carve at the joint' between liability and damages." *Rhone-Poulenc*, 51 F.3d at 1302.

Plaintiffs' proposed jury instruction would violate the Seventh Amendment in two ways.  First, one jury would determine "[t]he generic causation question of whether Defendants' activities and the conditions resulting from them were capable of causing Class members to suffer fear, anxiety or other mental or emotional discomfort."  (5/17/05 Order at 7)  Subsequent juries would then determine the question of whether defendants' activities did in fact cause class members fear, anxiety, or other mental or emotional discomfort. Having two or more juries reexamine the issue of proximate causation violates the Seventh

Amendment.  As the Court held in *In re Methyl Tertiary Butyl Ether (""MTBE"") Products Liability Litigation*, 209 F.R.D. 323 (S.D.N.Y. 2002):

> [P]laintiffs propose that litigation be divided between generic and specific liability in a way that violates the Seventh Amendment's prohibition on reexamination of a jury verdict.  See U.S. Const. amend. VII.  While a court may instruct a jury to try only certain issues, *see Simon*, 200 F.R.D. at 32-35 (defending liberal use of Rule 23(c)(4) to aid judicial efficiency), it is constitutionally limited by concerns over juror confusion and uncertainty, *see id.* at 36-39 (discussing *Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 75 L.Ed. 1188 (1931)).  Here, juries in follow-on suits would be charged with the impermissible task of sorting out the following issues:  (1) whether defendants were liable to a particular individual given the first jury's finding of general liability; (2) whether a particular release of gasoline was foreseeable in light of the first jury's determination of general foreseeability; and (3) whether a particular UST owner received a warning in light of a jury finding that no warnings were given in general.  *See Rhone-Poulenc*, 51 F.3d at 1303-04 (explaining juror confusion that would result from attempting to decide comparative negligence and proximate causation in follow-on trials where "negligence" had already been determined); *accord In re Fibreboard Corp.*, 893 F.2d 706, 712 (5th Cir.1990) (rejecting proposal that "general causation" issue be tried because "[c]ommonality among class members on issues of causation and damages can be achieved only by lifting the description of the claims to a level of generality that tears them from their substantively required moorings to actual causation and discrete injury."); *In re Agent Orange*, 818 F.2d at 164-65 (stating that "generic causation" is not a proper issue that may be tried in a class action).

*Id.* at 352; *see also Neely v. Ethicon, Inc.*, Nos. 00-569, 01-37, 01-38, 2001 WL 1090204, at *14 (E.D. Tex. 2001) (finding that plaintiffs' proposed liability issue classes "come too close to the edge of a Seventh Amendment violation") .  As the Court further recognized in *MTBE*, "[i]t is well-settled that bifurcation of trial is authorized in federal court, but such division must 'carve at the joint' between liability and damages."  *Id.* at 352 (*citing Rhone-Poulenc*, 51 F.3d at 1302).

In the case of plaintiffs' proposed instruction with respect to the issue of "generic causation" of emotional distress, there is no "carving at the joint" between "liability" and "damages." Rather, "liability" itself is "carved" in two, because one jury determine generic causation of emotional distress, and a second jury determines individual causation of emotional distress.

<u>Defendants' Objection No. 9 to Plaintiffs' Proposed Instruction</u>

Defendants have been unable to locate any precedent from any Colorado court (or any other court) regarding an instruction and trial on "general causation of emotional distress." Even apart from the fact that an instruction trial on "general causation of emotional distress" would violate the Seventh Amendment, generic causation of emotional distress should not be tried for the very first time in Colorado (to the best of defendants' knowledge) as part of a case that is already filled with complex issues.

## PROPOSED INSTRUCTION ON "SETOFF"

**DAMAGES SETOFF [contingent on evidentiary support]**

If you find that class members have suffered damages, you must also determine whether Dow and/or Rockwell are entitled to a setoff to be applied against those damages. A defendant is entitled to such a setoff, reducing class members' damages, if the defendant conferred a benefit on the class, in the form of reduced purchase prices for class properties. Defendants have the burden of proving the existence, amount, and timing of any setoff by a preponderance of the evidence.

To find that a defendant is entitled to a damage setoff for reduced purchase prices paid by plaintiffs and class members, you must find all of the following: (a) that the defendant committed a trespass and/or nuisance; (b) that the injurious situation from that defendant's trespass and/or nuisance became complete and comparatively enduring at some time prior to June 7, 1989; (c) that the injurious situation from that defendant's trespass and/or nuisance caused a reduction in the value of class properties, compared to what their value would have been without the injurious situation; (d) the percentage amount of any such reduction in value, measured as of the time the injurious situation became complete and comparatively enduring; (e) the time at which any such reduction in value began; and (f) the time, if any, at which any such reduction in value ended.

**Authority:** Plaintiffs object to any setoff instruction, believing any setoff to be contrary to *Restatement (Second) of Torts* § 930 and other relevant authorities.  However, plaintiffs recognize that the Court has already ruled on the subject and do not seek to re-argue that issue here.  If defendants offer evidence sufficient to support a setoff instruction, the principles governing its content, as embodied in this proposed instruction, derive from the Court's Order on Scheduling and Jury Instruction Issues, at 17-19 (May 17, 2005).

**Defendants' Objections:**  Defendants' Supplemental Instructions No. 2 & 3 ("Prior Market Discount Defense - Trespass" and "Prior Market Discount Defense - Nuisance") should be given instead of this instruction.  Defendants object to this instruction on several grounds, each of which is explained below.

Defendants' Objection No. 1 to Plaintiffs' Proposed Instruction

Defendants object to plaintiffs' attempt to condition this instruction on "evidentiary support."  In any event, although not required to do so, defendants have come forward with evidence to support a "prior market discount" defense.  As defendants have previously explained, plaintiffs' own experts have concluded that Rocky Flats depressed class-area property values before 1989.  (See 7/29/05 Hr'g Tr. 48-50; *see also* Radke Report at 7 (finding diminution of value of 7.68% as of 1988, at a time prior to when over 2,800 properties on the class notice list were purchased); Wayne Hunsperger et al., Community & Economic Impacts of the Rocky Mountain Arsenal on Commerce City, Colorado, Sept. 16, 1994, at 15 ("In the 1970's, the neighborhoods near Rocky Flats suffered a marketability problem."); *see also* Wise Supplemental Report, Exhibit 1 (showing that 2,816 of the properties listed in the class notice database were purchased in 1988 and the first half of 1989.)

Plaintiffs' expert, Dr. Radke, undertook a multiple-regression analysis in this case.  Mr. Hunsperger incorporates wholesale Dr. Radke's 59-page multiple-regression report by summarizing it in a little over three pages of the Hunsperger report and providing no other discussion.  (*Id*. at 221-24.)  Dr. Radke's multiple-regression analysis, if believed,

actually demonstrates that at least some—and perhaps most—class members bought at discounts.

For each year from 1988 through 1995, Dr. Radke compared the prices at which class-area residential properties sold to the prices at which other homes in suburban Denver sold. Dr. Radke then opined that, in 1988, class properties sold for approximately 8% less than comparable properties in suburban Denver. (Radke Report at p. 6, Table 1.) Dr. Radke further concluded that similar "discounts" were found by his analysis for every other year from 1988 through 1995. Dr. Radke presented these discounts in a table on page 7 of his report, reproduced here:

| Property category | Mean undervaluation (within MPC) | $r^2$ | Confidence level |
|---|---|---|---|
| **Phase II** | | | |
| 1988 | *single-residential* | -7.68% | .72 | 99.88% |
| 1989 | | -7.29% | | 99.88% |
| 1990 | | -9.33% | | 100% |
| 1991 | | -7.69% | | 99.99% |
| 1992 | | -9.18% | | 100% |
| 1993 | | -8.56% | | 100% |
| 1994 | | -7.50% | | 99.99% |
| 1995 | | -5.45% | | 99.24% |

Approximately 2,800 class members bought their class properties in 1988 or in the first half of 1989 (*i.e.*, before June 7). These 2,800 class members bought their properties at an 8% discount, according to Dr. Radke's analysis.

This analysis applies, of course, not only to all class members who purchased in 1988—the first year of Dr. Radke's analysis—but also to all class members who bought

earlier.  There is no reason to believe that, had Dr. Radke simply analyzed data for years 1987, 1986, and earlier, he would have found anything other than the same 8% discount that he contends he found in 1988.  Certainly the jury would be free to conclude that, if the discount existed at all, it first appeared at any of a number of plausible times, from when the plant first opened in 1953, the 1970s, or other plausible dates.

In sum, Dr. Radke's analysis purports to find an approximately 8% discount for class properties in 1988, the year predating the class-membership date.  He did not look before then, so he does not know when that alleged discount first came into place, or how it changed over time.  Thus, Dr. Radke's own analysis (if believed) suggests that any discount pre-dated the purchase dates of many class members.

Also, numerous class members have testified that their properties were discounted when they bought them and that this discount was figured into the price that they paid for their properties.  For example, Mr. Bartlett, a named plaintiff and real estate broker, testified that Rocky Flats has negatively affected property values in the area since the 1969 fire, and in particular that there was a slow-down in Arvada property sales following 1984 that he attributes to Rocky Flats.  (R. Bartlett Dep. at 129, 133.)  Likewise, Mr. Tomlinson, another class-member realtor, testified that Rocky Flats has "always" had an impact on prices in the area, since at least the mid-1960s.  (Tomlinson Dep. at 28-29, 39.) Other class members agree.  Mr. Lund testified that Rocky Flats had a "large" or "significant" impact on property values in the area since at least 1973.  (Lund Dep. at 95-96, 98, 179, 187.)  Mr. Park similarly testified that area property values were harmed

in the early 1980s when news of water contamination became known.  (Park Dep. at 64-66.)  Mr. Ozaki, a class member who is also the city/county manager for Broomfield, testified that he believes Rocky Flats has impacted properties since at least the 1970s. (Ozaki Dep. at  45-48, 82.)  And Mr. Ladwig, who sold Ms. Cook her property and has owned other property in the class over time, testified that properties in the area had a discount since at least 1979.  (Ladwig Dep. 118-19) (Q: "*[I]n 1979 was it your understanding at the time that properties in the area were selling at a discount because of Rocky Flats?  [Objection.]  A:  Well, it certainly was*.") (emphasis added).

Defendants' Objection No. 2 to Plaintiffs' Proposed Instruction

Defendants object to the first paragraph of plaintiffs' proposed instruction on the ground that it mischaracterizes the "prior market discount" as a "setoff" on which the plaintiffs bear the burden of proof.[1]  As defendants have explained, the necessity of accounting for prior market discount is not because defendants are due a "setoff," but because plaintiffs' damages are reduced if they bought their properties at a time when diminution had already occurred.   *See*, *e.g.*, *Westric Battery Co. v. Standard Elec. Co.*, 482 F.2d 1307, 1318 (10th Cir. 1973) (it is "only the damage flowing legally from the defendant's misdeeds which counts"); *Runiks v. Peterson*, 155 Colo. 44, 45, 392 P.2d 590, 591 (1964) ("a claimant must establish that the damages he seeks are traceable to

---

[1]Defendants acknowledge that this Court has stated that "this is an affirmative defense on which the defendant bears the burden of proof," but, to the extent this argument is inconsistent with that statement, include this argument for the purpose of preserving it.

and are the direct result of the wrong sought to be redressed"); *Hyman & Co. v. Velsicol Corp.*, 233 P.2d 977, 1008 (Colo. 1951) ("The rule is that damages based upon mere speculation and conjecture are not allowable; however where it has been definitely established that damages are traceable to and the direct result of a wrong, the uncertainty as to the amount thereof is a question for determination by the trier of the facts.").  (*See also generally* Defs.' Mem. re Class-Wide Damages Proof and "Set-Off" filed 10/20/04; *see also Ario v. Metro. Airports Comm'n*, 367 N.W.2d 509, 515 (Minn. 1985) ("If, for example, plaintiff buys a Zone 1 house in 1980, he presumably buys at a market price already discounted for aircraft noise existing at that time.  Plaintiff has no diminution in market value of his property unless he shows that the noise level has increased since 1980 and such increase has measurably depressed the value of his property.").

Defendants' Objection No. 3 to Plaintiffs' Proposed Instruction

Defendants object to elements (b) and (c) of plaintiffs' proposed instruction on the ground that it is contrary to this Court's May 17, 2005 Order.  That Order did not require defendants to show that an injurious situation became complete and comparatively enduring prior to June 7, 1989 in order to show a prior market discount.  Based on plaintiffs' own evidence, a plaintiff might still have purchased a property whose value had been diminished by a nuisance or trespass from Rocky Flats, even if the injurious situation has not yet become complete and comparatively enduring.  Indeed, in the illustration provided by Restatement Section 930, the "operations of the gas plant began

in 1931 and fumes and spoke invaded the greenhouse and damaged the flowers," whereas the complete and comparatively enduring point was "June 1932."  Restatement Section 930, Illustration 1.  Restatement Section 930 does **not** say: "This section does not apply if some diminution in value occurs prior to the complete and comparatively enduring point."

Plaintiffs also misstate the Restatement § 930 test: it is not whether the "injurious situation" has affected property values, but the "prospect of the continuance of the invasion."  Restatement (Second) of Torts § 930.

Defendants' Objection No. 4 to Plaintiffs' Proposed Instruction

Defendants object to elements (e) and (f) of plaintiffs' proposed instruction on the ground that it is contrary to this Court's May 17, 2005 Order.  That Order did not require defendants to show that an injurious situation became complete and comparatively enduring prior to June 7, 1989 in order to show a prior market discount.  A plaintiff might still purchase a property whose value is diminished by a nuisance or trespass from Rocky Flats, even if the injurious situation has not yet become complete and comparatively enduring.

Defendants' Objection No. 5 to Plaintiffs' Proposed Instruction

Contrary to elements (e) and (f) of plaintiffs' proposed instruction, the Court's May 17, 2005 order did not require defendants to show the point in time at which the alleged injurious situation began.  Indeed, any such suggestion defies logic.  According to

plaintiffs own proofs, the jury could find that the injurious situation began at some point in time before 1988, but (according to plaintiffs' own proofs) be unable to determine when, because plaintiffs furnished no evidence.  This is illustrated, in part by the following table from Dr. Radke's report:

| Property category | Mean undervaluation (within MPC) |
|---|---|
| | |
| ------------------------------------------------------------------------- | |
| 1988        *single-residential* | -7.68% |
| 1989 | -7.29% |
| 1990 | -9.33% |
| 1991 | -7.69% |
| 1992 | -9.18% |
| 1993 | -8.56% |
| 1994 | -7.50% |
| 1995 | -5.45% |

(Radke Report at 7.)

<u>Defendants' Objection No. 6 to Plaintiffs' Proposed Instruction</u>

Contrary to elements (e) and (f) of plaintiffs' proposed instruction, the Court's May 17, 2005 order did not require defendants to show the point in time at which the alleged injurious situation ended.  Plaintiffs' instruction assumes that it is impossible for

there to be a pre-1989 market discount if the injurious situation ended.  But, according to plaintiffs' own proofs, it is entirely possible for (a) the prior market discount to have existed prior to 1989; and (b) plaintiffs to argue that the injurious situation continues to the present time.

**PROPOSED INSTRUCTION ON SPOLIATION**

**SPOLIATION**

As you have already been informed, the United States Department of Energy indemnifies Dow and Rockwell for any damages that you may award in this case.  In other words, DOE is ultimately responsible for payment of any judgment.  You have also heard that DOE has refused to declassify certain documents in its possession – including documents relating to "material unaccounted for," or "MUF" – that plaintiffs sought to use in evidence to prove their case.  You have heard, in addition, that DOE's decision to withhold the information in these documents was not based on actual consideration by DOE of whether the specific information in the documents needed to remain classified.  This raises a presumption that the evidence, if produced, would have been unfavorable to DOE and/or its contractors, Dow and Rockwell.  Defendants are entitled to contest that presumption.  It is up to you to determine what inferences or conclusions, if any, to draw from DOE's refusal to produce this evidence.

**Authority:** *Gilbert v. Cosco, Inc.*, 989 F.2d 399, 406 (10th Cir. 1993); *Moore v. United States*, 864 F. Supp. 163, 165 n.2 (D. Colo. 1994); *Richardson v. Richardson*, 236 P.2d 121, 127 (Colo. 1951); *Workman v. AB Electrolux Corp.*, 2005 U.S. Dist. LEXIS 16306, at *14-21 (D. Kan. Aug. 8, 2005) (spoliation by insurer); *Northern Assurance Co. v. Ware*, 145 F.R.D. 281, 283-84 (D. Me. 1993) (same).

**Defendants' Objections:**  Defendants object to Plaintiffs' proposed spoliation instruction because no spoliation instruction is warranted in this case.  Defendants object on three grounds, each of which is explained below.

Defendants' Objection No. 1 to Plaintiffs' Proposed Instruction

As the Court stated at the August 22, 2005 Conference:  "I don't think that spoliation is the issue and that's why I said I am not inclined to give it because what I want to do very much so is to place both parties on an even basis in front of the jury." (8/22/05 H'rg Tr. at 23-24.)

Defendants' Objection No. 2 to Plaintiffs' Proposed Instruction

Defendants object to plaintiffs' proposed spoliation instruction in its entirety because no spoliation instruction is warranted in this case.  The general spoliation rule is that "bad faith destruction of a document relevant to proof of an issue at trial gives rise to an inference that production of the document would have been unfavorable to the party responsible for the destruction."  *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997).  Similarly, adverse-inference jury instructions are permissible for a party's unexplained failure or refusal to produce materials in its control that would tend to throw light on an issue.  *See Gilbert v. Cosco, Inc.*, 989 F.2d 399, 406 (10th Cir. 1993)(affirming judge's decision not to accept plaintiffs' proposed adverse inference jury instructions).  Any adverse inference must be predicated on the bad faith of the party destroying the documents and must support an inference of consciousness of a weak case. *Id.*  In addition to the culpability of the party offender, courts must take into account the

degree of prejudice or harm that resulted from the loss of information.  *Gates Rubber Co.*

*v. Bando Chemical Indus., Ltd.*, 167 F.R.D. 990, 101-02 (D. Colo. 1996).

Here, plaintiffs have failed to mete their burden to show that a spoliation

instruction is warranted for several reasons.  ***First***, a spoliation instruction is not

warranted because adverse-inference instructions are permissible only for a ***party's***

unexplained failure or refusal to produce evidence ***in its control*** that would tend to throw

light on an issue.  *Gilbert*, 989 F.2d. at 406 (emphasis added).  Plaintiffs' request for an

adverse instruction seeks to penalize defendants for DOE's classification decisions.  But

Dow and Rockwell are not responsible for those decisions.  Thus, a punitive sanction

against Dow and Rockwell is inappropriate.  As this Court has indicated, "I don't think

that spoliation is the issue and . . . I am not inclined to give [a spoliation instruction]

because what I want to do very much is to place both parties on an even basis in front of

the jury."  (8/22/05 Hr'g Tr. at 23-24.)  A spoliation instruction in this case would

prejudice the jury against Dow and Rockwell, parties who had no control over the

discovery materials at issue.  Federal courts have refused to impose preclusive sanctions

(such as adverse evidentiary inferences) for non-party conduct, including cases where the

party and the non-party's interests were aligned and the party was unable to provide the

requested discovery because the material sought was in the sole possession of the non-

party.  *See*, *e.g.*, *Read v. Ulmer*, 308 F.2d. 915, 918 (5th Cir. 1962) (preclusive sanctions

operate against parties; as a result, the Rules do not permit sanctions where parties lacked

ability to make the discovery); *B.F. Goodrich Tire Co. v. Lyster*, 328 F.2d. 411 (5th Cir.

1964) (reversing imposition of evidentiary sanctions on defendant-employer where nonparty employee failed to provide discovery).

Moreover, the plaintiffs elected not to sue the DOE.  Plaintiffs, through their request that the Court allow an adverse instruction based on the government's continued classification of documents, seek improperly to treat the government as a party to this litigation.  Specifically, plaintiffs assert that because the DOE continues to treat certain unspecified documents as classified (and thus privileged from disclosure), the DOE is somehow akin to an actual party who has spoliated discovery sufficient to warrant the substantive evidentiary sanction of an instruction against that party's interests.  But plaintiffs made a conscious choice not to sue the United States or to have it joined as a defendant to this action, thereby avoiding the DOE's sovereign immunity and the jurisdictional and statutory limitations of the Federal Tort Claims Act among other things. Plaintiffs should not be allowed, through this jury-instruction process, to achieve what they could not have achieved pursuant to applicable law–*i.e.*, to treat the federal government as a party but without the jurisdictional and statutory impediments plaintiffs would have had to face had they so structured their lawsuit.

*Second*, there is no evidence of spoliation and it is inappropriate to draw an adverse inference from the unavailability of government-classified documents.  The Atomic Energy Act, 42 U.S.C. §§ 2001, *et. seq.*, ("AEA") prevents the disclosure of classified materials.  Since its passage in 1954, the AEA has sought to protect national security by, in part, preventing disclosure of material related to nuclear weapons

production and testing.  The unspecified materials that apparently form the basis for plaintiffs' proposed instruction are classified primarily pursuant to the AEA and Executive Order 12958.  *See Cook v. Rockwell Int'l Corp.*, 935 F.Supp. 1452, 1458-59, 1462 (D. Colo. 1996).  Unless that material is properly declassified, the statutory presumption and privilege protecting the information must be maintained.  The net effect of the AEA in this regard is that plaintiffs cannot rely on protected data in a public proceeding if there is a reasonable threat that disclosure of such information would pose danger to the national security.  *See* 42 U.S.C. § 2277.  It is not proper to draw an adverse inference from the unavailability under the AEA of government-classified materials.

*Third*, plaintiffs have failed to show *any* culpability on behalf of the DOE, much less either defendant, regarding the discovery of classified materials.  This Court ruled in 1996 that plaintiffs have failed to show any evidence of bad faith on the part of the DOE. *Cook v. Rockwell Int'l Corp.*, 935 F.Supp. 1452, 1470 (D. Colo. 1996) ("[plaintiffs] have not produced any evidence of bad faith concerning the manner in which DOE has conducted the declassification process to warrant an investigation into that process at this time.").  At no time since this ruling has the DOE denied plaintiffs reasonable access to classified materials or engaged in any other conduct that would warrant a finding of bad faith.  DOE has exhibited a willingness to identify responsive material for plaintiffs, and provide documents for their review, whether the responsible materials were classified or not.  Nor have plaintiffs made any showing of intentional behavior or bad faith on the part of defendants regarding classification decisions.

***Finally***, plaintiffs have failed to make a showing of prejudice.  Plaintiffs have not identified the documents that they believe should form the underlying basis for their proposed adverse inference.  They have not made any document-specific showing of the materiality or relevance of such materials as envisioned by the spoliation standards for establishing prejudice.  As discussed more extensively in past briefing, the vast majority of documents that could possibly be at issue are immaterial.  (*See* Dow 3/4/96 Mem. in Opp. To Pl. Mot. for Sanctions at 15-19, 47-48).  Plaintiffs have failed to demonstrate the required "nexus" between the proposed inference and the information contained in the unavailable materials, and they have not come forward with "substantial evidence which supports the facts to be inferred." *See Gates*, 167 F.R.D. at 105.  The most that plaintiffs say is that "certain documents" -- which remain unspecified -- that relate to MUF remain classified.  This falls far short of "extrinsic evidence of the content of the [unavailable material]" sufficient to "determine in what respect and to what extent it would have been detrimental" to defendants' case. *Id.* at 105.

Defendants' Objection No. 3 to Plaintiffs' Proposed Instruction

Defendants object to the first two sentences of plaintiffs' proposed spoliation instruction because it requires the jury to interpret the indemnification agreement. Whether, by the operation of contractual provisions and the Price-Anderson Act, DOE indemnifies defendants for this litigation does not change its non-party status or make DOE's conduct that of the defendants.  In addressing the relationship between DOE and

its contractors, the Supreme Court has indicated that the DOE remains a separate and distinct entity which should not, for legal purposes, be placed "in the shoes" of its contractors.  *See*, *e.g.*, *United States v. New Mexico*, 455 U.S. 720, 721, 734-36 (1982)(despite DOE's funding of all the contractors' costs plus a fixed fee, the DOE contracts were not federal instrumentalities and did not "stand in the Government's shoes" under state tax laws);  *See also United States v. Boyd*, 378 U.S. 39, 48 (1964); *United States v. California*, 507 U.S. 746 (1993).

Defendants' Objection No. 4 to Plaintiffs' Proposed Instruction

Defendants object to the remainder of plaintiffs' proposed spoliation instruction because it states disputed facts.  It is inappropriate to state disputed facts in jury instructions.  Defendants dispute the fact that "DOE has refused to declassify certain documents in its possession . . ."; that "DOE's decision to withhold that the information in these documents was not based on actual consideration by the DOE of whether the specified information in the documents needed to remain classified"; and that it is up to the jury "what inferences or conclusions, if any, to draw from DOE's refusal to produce this evidence."  This Court held in 1996 that there is no evidence of bad faith on the part of the DOE.  Since 1996, the DOE has consistently informed plaintiffs that it believed it had produced all MUF documents and that it was "prepared to conduct additional searches, and to work in good faith with the plaintiffs to identify any additional responsive documents."  (*See*, *e.g.*, 3/10/97 Status Report ¶ 2; 5/9/97 Status Report ¶ 4;

6/23/99 Status Report at 3).  Defendants have vigorously contested, and continue to contest, plaintiffs' unfounded assertions.  Consequently, they cannot be stated in a proposed jury instruction.

<u>Defendants' Objection No. 5 to Plaintiffs' Proposed Instruction</u>

Among other independently fatal flaws, plaintiffs proposed instruction does not inform the jury that, in determining trespass and nuisance liability and damages, it is only to consider the conduct of Dow and Rockwell–not the conduct of the DOE.