**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

No. 90–K-181

**MERILYN COOK, et al.,**

    Plaintiffs,

        v.

**ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,**

    Defendants.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO THE TESTIMONY
OF DR. STEVEN WING**

**I.    INTRODUCTION**

Dr. Steven Wing is a professor of epidemiology who specializes in studying the health effects of radiation. From 1987 through 1991 he worked under a sub-contract from Oak Ridge Associated Universities to the University of North Carolina School of Public Health. This work was part of DOE's Health and Mortality Study, which was, until 1991, the major national effort to study long-term health effects of occupational exposures among workers employed at DOE nuclear facilities. Dr. Wing has worked on several other research projects involving DOE facilities. In the 1990's he received three competitive awards, after submitting applications that were subject to peer review, from the National Institute for Occupational Safety and Health. These projects entail evaluation of radiation health effects among DOE workers at Oak Ridge, Hanford, Los Alamos, and Savannah

River. *See* Wing Report at 2 (attached as Ex. 1).[1]

Dr. Wing will inform the jury about two relevant and related subject areas: first, he will discuss the state of medical knowledge about the biological effects of plutonium, *see* Wing Rep. at 6-12 (Ex. 1), and second, he will show how DOE's control of research into radiation health effects has led to gaps in the current knowledge about the health effects of plutonium and has tainted the body of scientific knowledge by understating the risks, *see id.*, passim.[2] The first part of his report discusses what is generally known about health effects of plutonium, from several different types of medical research; namely, pharmacokinetics, toxicology, somatic and genetic effects, medical follow-up studies, occupational epidemiology, and environmental epidemiology. *Id*. at 6-21. This discussion also points out the limitations of those types of studies. While epidemiological research is a preferred method for assessing the health effects of plutonium, *see* Wing Rep. at 4 ("Epidemiological studies are most directly relevant to human health effects[.]") (Ex. 1), epidemiological research of plutonium-exposed populations has been limited, *see id.* at 12-21. In the second part of his report, Dr. Wing discusses specific examples how the DOE has actively promoted flawed, biased research and has blocked or punished researchers who produce results unfavorable to DOE. *Id.* at 21-32. The climate of research on the health effects of radiation was so

---

[1] As with their earlier motions, Defendants have asked the Court to decide the admissibility of Dr. Wing's report based on sound bites. Plaintiffs have attached the entire report as Exhibit 1.

[2] Dr. Wing will also trace this baneful influence back to the DOE's predecessor, the Atomic Energy Commission ("AEC"), as set forth in documents discussing the AEC's misuse of its classification powers to withhold and control information relating to, inter alia, the health effects of radiation." *See, e.g.* Wing Report at 28-30 (Ex. 1).

tainted by political interests that research that received DOE funding or support must be treated with suspicion. His testimony shows that the danger of allowing the DOE to police itself is not merely hypothetical, but real: DOE has exercised actual control over the research that formed the basis for standards for radiation exposure, despite warnings and protests from many members of the scientific community.

As with their challenges to plaintiffs' other experts, defendants appear to confuse the concepts of admissibility and sufficiency. *See Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995); *see also* Plaintiffs' Consolidated Opposition to Defendants' Motions to Exclude Expert Testimony at 6-9 ("Pl. Consol. Opp."), which plaintiffs incorporate herein by reference. Defendants do not, and cannot, argue that Dr. Wing's testimony has no factual or logical basis. None of defendants' challenges merit striking Dr. Wing's testimony.[3]

## II.   DR. WING'S TESTIMONY IS RELEVANT AND HELPFUL TO THE JURY.

The health effects of plutonium are a central issue in this case. Health risk is relevant to plaintiffs' nuisance claims because it is one aspect of interference with use and enjoyment. Health risks (or rather, the alleged lack therof) are also a major theme of Dow and Rockwell's defenses, both directly and indirectly because defendants cite to regulatory standards as a proxy for risk. Defendants' relevance objections to Dr. Wing's testimony, *see* Def. Br. at 4-5, are groundless because Dr. Wing's research challenges the very foundation of their and their experts' arguments

---

[3] Defendants' claim that they were not on notice of Dr. Wing's testimony is false. Defendants have been on notice of Dr. Wing's designation and testimony for almost a decade. *See* Plaintiffs' Response to 'Defendants' Statement Identifying a Matter for Discussion at the August 22 Conference," filed August 22, 2005.

regarding health risks. By offering Dr. Wing's testimony, plaintiffs will illustrate for the jury that for a significant period of time the DOE exclusively researched the harmful effects of radiation, and that DOE was biased against critical research and the accurate reporting of the damaging effects of radiation. As a result, early estimates of the harmful effects of radiation relied upon by defendants are understated and unreliable.

Moreover, Dr. Wing's testimony breaks apart the foundations of the radiation exposure standards upon which defendants rely so heavily. *E.g.* Auxier 3/19/1997 Rep. at IV-1 to IV-7 (discussing origins of DOE exposure ) & Ch. VII (entitled, "Compliance with Standards) (attached as Ex. 2); Frazier 8/6/04 Rep. at 1 (attached as Ex. 3); Whicker 8/6/04 Rep. at 9-10 (attached as Ex. 4). Defendants seek to use numerical regulatory standards as a way to lull the jury into believing that, as long as releases or exposures were below some "magic number," Rocky Flats did not create a health risk. Dr. Wing will explain why this argument rests on an illusion, because the underlying science has been so distorted by DOE.

The admissibility of Dr. Wing's study must be judged whether his testimony will assist the jury. *See Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 648 (10th Cir. 1991); *see also* Pl. Consol. Opp. at 2-4 ("Helpfulness to the trier of fact is the 'touchstone' of admissibility.") There is no requirement, either in the law or in the facts of this case, that Dr. Wing actually quantify any health effects on the class, or implicate Dow or Rockwell in DOE's control of radiation health research. *Cf.* Def. Br. at 4-5. Dr. Wing's testimony will assist the jury in deciding what weight to give defendants' experts' health effects testimony and their incessant citation of regulatory standards.

While defendants claim that none of their experts relies on any of the specific studies Dr.

4

Wing criticizes, this argument misses the two main points of Dr. Wing's testimony: first, to show the jury that there are gaps in the current understanding of the health effects of plutonium, and second, to explain that those gaps have not been filled – and in fact the issue has been muddled further – by DOE-controlled research. There is no requirement that Dr. Wing discuss every single individual study in addition to his global survey of the state of scientific knowledge. The fact that much is still unknown about the health effects of plutonium exposure is relevant in response to any defense expert who claims to have found the answer. For example, Dr. Till's report, in its discussion of the health effects of plutonium, relies on Grogan's 2001 study of plutonium risk and dose relationships, which in turn relies on three of the data sources that Dr. Wing discusses criticizes, namely, studies of Japanese atomic bomb survivors, studies of populations exposed to other radionuclides besides plutonium, and animal studies. *See* Till Rep. at 20-21 (attached as Ex. 5); *cf.* Wing Rep. at 2 (discussing weaknesses in studies of A-bomb survivors); *id*. at 7-9 (animal studies); *id.* at 13-14 (studies of other radionuclides) (Ex. 1). Dr. Wing, from his special vantage point as an epidemiologist and after conducting an exhaustive survey of the scientific literature, is qualified to discuss the overall state of knowledge on the health effects of plutonium.

### III.     DR. WING'S METHODOLOGY IS SOUND.

In order to detect whether and how DOE has influenced research on the health effects of radiation, Dr. Wing conducted an exhaustive review of the medical literature on radiation epidemiology. Despite this global research effort, defendants attack Dr. Wing for alleged "data selectivity," alternately claiming that Dr. Wing's testimony consists of a "selective review of the Department of Energy's epidemiological studies of radiation and its effects," Def. Br. at 2, and that

5

he "formulated his opinions based on a few historical documents selected by plaintiffs' counsel," Def. Br. at 7. The facts belie this contention. Dr. Wing (and others working under his supervision), surveyed more than 3600 sources on the MEDLINE bibliographic system[4] for biomedical literature on plutonium. He distilled that list down to the 295 most relevant articles, which were thoroughly analyzed. Bibliographic sources cited in those articles were then surveyed. Dr. Wing and his research assistants supplemented this exhaustive review of published reports with a survey of: (1) a 1992 report of the Physicians for Social Responsibility; *see* Wing Dep. at 77:3-77:6 (attached as Ex. 6); (2) a computerized database at the Health Division of Los Alamos National Laboratory; (3) minutes from the AEC's Advisory Committee for Biology and Medicine (ACBM); (4) transcripts of hearings from the Secretarial Panel for the Evaluation of Epidemiologic Research Activities (SPEERA); and (5) the work of the Advisory Committee on Human Radiation Experimentation (ACHRE). *See* Wing Report at 5 (Ex. 1).

Defendants fail to show that the fact that some of these supplemental materials were provided by plaintiffs' counsel (*see* Def. Br. at 7) has affected the reliability of Dr. Wing's work. As discussed above, Dr. Wing performed a global survey of the scientific literature; he did not rely solely on the few documents provided by plaintiffs counsel. There is nothing improper about attorneys providing documents to an expert that were produced in the course of litigation but may not be readily available through public sources. Dr. Wing is not to blame for defendants' discomfort with what some of

---

[4] "An international database of biomedical literature containing listings from approximately 3,600 journals, as well as monographs of congresses and symposia from 1966 to 1996." *See* Wing Report at 5 (Ex. 1).

DOE's own documents reveal about the agency's policy toward critical radiation health research.

Defendants also raise the same unsuccessful argument that they tried against Drs. Budnitz and Cochran,[5] claiming that Dr. Wing has merely reiterated the content of other documents. *See* Def. Br. at 3-4. As an initial matter, is it unlikely that a lay jury could conduct a literature review of over 3600 epidemiological studies and interpret their significance without expert help. There is no reason why an expert may not interpret for the jury documents that contain information relating to his field of expertise. *See Ellsworth v. Tuttle*, No. 03-4253, 2005 WL 1427638 (10th Cir. Jun. 20, 2005) (slip op.) (expert testimony needed to summarize and interpret water rights certificates); *Wiley v. Ohio/ Oklahoma Hearst Argyle Telev., Inc.*, No. 01-6062, 2002 WL 511746, at *2 (10th Cir. Apr. 5, 2002) (affirming summary judgment for defendant because plaintiff could not prove media negligence without expert testimony); *Phillips v. Calhoun*, 956 F.2d 949, 952 (10th Cir. 1992) (expert needed to interpret city charter) (all cited in Pl. Consol. Opp. at 107-08). Like Drs. Cochran & Budnitz, Dr. Wing applies his knowledge to interpret complex technical information for the jury. He points out weaknesses in several DOE-funded studies and describes global problems (due to DOE's influence) with the state of scientific knowledge about the health effects of radiation.

Defendants never define what they think an "appropriate historical inquiry" (*cf.* Def. Br. at 7) would be. Furthermore, defendants do not suggest to this Court how or why Dr. Wing's research or methods were insufficient, nor do they point to any important literature or studies omitted form

---

[5] This Court rejected a similar argument by defendants attempting to exclude the testimony of Drs. Budnitz and Cochran. *See* Minute Order of August 22, 2005 (denying Defendants' Motion to Exclude Plaintiffs' Expert Witness Testimony Relating to Defendants' Conduct).

Dr. Wing's bibliography.[6]

## IV.   CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court deny defendants' motion to exclude Dr. Wing's testimony.

Respectfully submitted,

Dated: September 29, 2005     /s Jennifer MacNaughton
Merrill G. Davidoff
Peter Nordberg
Jennifer MacNaughton
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

Gary B. Blum
Steven W. Kelly
Silver & DeBoskey, P.C.
1801 York Street
Denver, CO 80206
(303) 399-3000

*Attorneys for Plaintiffs
And the Class*

---

[6] Defendants spend a considerable portion of their brief touting the fact that a study conducted by Dr. Wing was not accepted in the TMI litigation. *See* Def. Br. at 5-6. Defendants do not explain why the TMI study is legally significant to their motion or to the Court's assessment of Dr. Wing's expertise.

8