## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**No. 90–K-181**

---

**MERILYN COOK, et al.,**

      **Plaintiffs,**

        **v.**

**ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,**

      **Defendants.**

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
EMERGENCY MOTION TO HALT DEFENDANTS' TELEPHONE SURVEY
CONTACTING REPRESENTATIVE PLAINTIFFS AND CLASS MEMBERS,
AND FOR RELATED DISCOVERY AND FURTHER RELIEF**

---

### I.  INTRODUCTION

Defendants appear to be conducting a telephone "survey," ostensibly in furtherance of jury research, in which defense counsel's agents are contacting plaintiffs and class members, in violation of Colorado Disciplinary Rule of Professional Conduct 4.2, and to the potential prejudice of the just and orderly conduct of these proceedings.  Plaintiffs bring this motion to request the Court's assistance, pursuant to Fed. R. Civ. P. 23(d) and the Court's inherent authority, in bringing an immediate halt to these improper contacts, and to seek full disclosure and discovery of information relating to defendants' survey, so that the Court and the parties may assess what damage may have been done already, and to help in framing appropriate curative measures.

## II.  FACTUAL BACKGROUND

At the pretrial conference on September 22, 2005, defendants informed the Court and plaintiffs' counsel that defendants intended to undertake a telephone survey for purposes of jury research.  In discussing these plans, defense counsel volunteered that defendants would be "agreeable" to the disqualification of any members of the venire who were contacted in defendants' survey.  The Court advised counsel that any venire member contacted would indeed be disqualified.  *See* Tr. at 64-66 (Sept. 22, 2005) (Ex. A).

Last week, on or about September 28, 2005, two of the representative plaintiffs' households were contacted by an organization performing a telephone survey on what interviewers described as a big court case involving contamination.  Both Merilyn Cook and Delores Schierkolk were offered five dollars to answer ten or fifteen minutes' worth of questions about the big case.  Both asked whether the survey involved this litigation.  When informed that it did, both declined to participate.  *See* Ex. B (signed statements of Merilyn Cook and Delores Schierkolk).

Neither plaintiff recollects the name of the polling organization.  The number of the caller appears to have been memorialized, however, on the Schierkolks' telephone caller i.d..  The number belongs to Nolan Research, LLC.  According to its web site, Nolan Research is an enterprise located in Montgomery, Alabama:

> In 1980, a stay-at-home mother decided she wanted a part time job where she could work flexible hours and take her children along and work the necessary hours around their schedules. She also became a foster parent, making her home and business a place for all the children to grow and learn the values needed for the world they faced. In 1989 she expanded her business to a strip mall, employing her first focus group facility. In 2000, she expanded again, into the free-standing facility on Bell Rd.

> Deidra K. Nolan, founder, after over 20 years still provides a training ground for young people. She and her two life long friends, Rebecca McDonald and Isabel Barnes, became partners in 1996. They employ high school and college students to learn communication skills, self esteem, and the work ethic necessary to enter today's business world.

*See* Ex. C (printout of pages from www.nolanresearch.com).  Among the services offered by Nolan Research are "Telephone Interviewing w/Database & RDD Dialing" from a thirty-station phone room, and "Jury/Legal Research." *Id.*

After learning that contact had been made with both of the representative plaintiffs still residing within the class area, plaintiffs' counsel wrote to defendants on Friday, September 30, 2005, seeking confirmation that this was indeed defendants' survey, and, if so, asking that it be halted. *See* Ex. D.  Defendants acknowledged receipt of the letter but made no response to its substance.

On Monday morning, October 3, 2005, plaintiffs' counsel again contacted defense counsel by phone message and e-mail, advising defendants that plaintiffs did not want to burden the Court unnecessarily, if defendants contended that the contacts with the class representatives did not result from any survey initiated by defendants.  As these papers were finalized for filing, plaintiffs had received no response.

### III.  ARGUMENT

### A.  Defendants' Contacts with Class Members Are Improper.

### 1.  The Ethical Rules Forbid Attorney Communication with a Represented Party.

Both the Colorado Rules of Professional Responsibility and the Model Code forbid an attorney from communicating with a party represented by another attorney. Rule 4.2 of the Colorado Rules of Professional Responsibility states:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

"Rule 4.2 places the burden of obtaining consent on the attorney who wishes to speak with the adverse party."  *Blanchard v. EdgeMark Financial Corp.***,** 175 F.R.D. 293, 302 (N.D. Ill. 1997); *see also In re Complaint of PMD Enterprises Inc.*, 215 F. Supp. 2d 519, 527 (D.N.J. 2002).

The Model Code's disciplinary rule, DR 7-104(A)(1), includes a similar provision:

Communicating With One of Adverse Interest

(A) During the course of his representation of a client a lawyer shall not:

(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

A lawyer may not circumvent the rule by directing another person to communicate with a represented party.  *See, e.g.*, *Williams v. Burns*, 463 F. Supp. 1278, 1285 (D. Colo. 1979) (citing Disciplinary Rule 1-102, proscribing attempts to circumvent disciplinary rules through actions of another); *In re Complaint of PMD Enters., Inc.*, 215 F. Supp. 2d 519, 529 (D.N.J. 2002) (revoking pro hac vice admission of lawyer who attempted to circumvent Rule 4.2 through investigator); *Holdren v. Gen. Motors Corp.*, 13 F. Supp. 2d 1192, 1193 (D. Kan. 1998) (granting defendant's motion for protective order where plaintiff's lawyer instructed client to obtain affidavits from co-workers).  A commentator has likewise noted that "because a lawyer may not 'violate ... the rules of professional conduct, through the acts of another,' a lawyer may not induce or assist a client or others to engage in types of communication with putative class members that the lawyer may not

undertake directly." Vincent R. Johnson, *The Ethics of Communicating with Putative Class Members*, 17 Rev. of Litig. 497, 506-07 (1998).  Thus it is no defense that the contact was made through non-attorney members of the defense team.

### 2.   Unsupervised Defense Communications with Absent Class Members Are Improper.

Plaintiffs currently lack the ability to identify absent class members who have been asked to participate in defendants' survey. It appears very likely, however, that numerous class members have been contacted.  There are four remaining property class representative households.  The two households of named plaintiffs still residing in the class area were both contacted.  This suggests that the survey may be targeting a substantial proportion of households in the class area.

Class certification carries special meaning in the professional responsibility context. As this very Court has previously advised these very defendants, the Court's certification of a class creates an attorney-client relationship between class counsel and all class members.  *See* Order dated June 16, 1995, at 3 ("In general, communication by opposing counsel with members of the class after certification is improper, unless the counsel for the class consents.") (Magistrate Judge Borchers) (Ex. E); *see also Manual for Complex Litigation* § 30.2, at 234 (3d ed.1995) (once class is certified, the ethical rules governing communications apply because each class member is deemed a client of class counsel).  The two leading treatises on class action litigation warn against permitting defendants to communicate directly with class members.  *See Newberg on Class Actions* § 15.19, at 15-59 (3d ed. 1992) ("Unsupervised contacts between defendants and class members ... may result in sanctions for both the offending defendant and, when appropriate, the defendant's counsel."); *Annotated Manual for Complex Litigation* § 30.24, at 276 (3d ed. 2002) ("Under accepted ethical

principles, defendants and their attorneys may communicate on matters regarding the litigation with

class members who have not opted out, but only through class counsel.").

Courts have also been wary that a defendant's communications with class members may

present a biased picture of the action. "Unsupervised, unilateral communications [by a defendant]

with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a

one-sided presentation of the facts, without opportunity for rebuttal." *Kleiner v. First Nat'l Bank*

*of Atlanta,* 751 F.2d 1193, 1203 (11th Cir. 1985); *see also In re School Asbestos Litig.,* 842 F.2d

671, 682-83 (3d Cir. 1988) (fact that otherwise non-misleading communications are not "litigation-

neutral" affects propriety of those communications); *In re Currency Conversion Fee Antitrust Litig.*,

361 F. Supp. 2d 237, 252-54 (S.D.N.Y. 2005) (collecting authorities).

## B.  Plaintiffs' Requested Relief Is Appropriate.

Although disqualification of counsel may be an appropriate remedy in a suitable case, *see*

*Weeks v. Independent School Dist. No. I-89,* 230 F.3d 1201, 1211 (10th Cir. 2000) ("Disqualification

may be ordered as a remedy for a violation of Rule 4.2."), plaintiffs do not seek that remedy at this

time.   For one thing, such relief would implicate not only defendants' strong interest in

representation by counsel of their choice, but also plaintiffs' strong interest in proceeding to trial as

scheduled.  For another, the record is not yet sufficiently developed to fashion appropriate curative

measures.

An order directing the immediate cessation of defendants' survey is, however, a suitable first

remedial step.  Disclosure of the details surrounding the survey is likewise appropriate, to help in

determining the survey's actual objectives, and the shape and scope of its deleterious effects. *See,*

*e.g., PATCO v. FLRA I*, 672 F.2d 109, 112-13 (D.D.C. 1992) (record must be supplemented with undisclosed ex parte communications); *Bethlehem Steel Corp. v. Environmental Protection Agency*, 638 F.2d 994, 999-1000 (7th Cir.1980) (supplementation should be allowed where documents related to improper ex parte communications); *see also Grolier, Inc. v. Federal Trade Comm'n*, 615 F.2d 1215 (9th Cir.1980) (where ALJ had worked as staff attorney for FTC Commissioner during relevant time period, discovery regarding alleged improper contacts allowed); *Coastal States Gas Corp. v. Department of Energy*, 84 F.R.D. 278, 283 (D. Del. 1979) (allowing company to conduct expedited discovery to uncover any evidence of illegal ex parte communications).

### III.  CONCLUSION

Although survey research may have legitimate uses, it is also has illegitimate ones.  *See* Ex. F ("push polling").  One thing is certain.  The rule against contacting adverse parties and class members represented by counsel has no "jury research" exception.  If defendants' survey remains ongoing, defendants should be ordered to cease and desist forthwith.  Disclosure of survey protocols, interview scripts, sample populations, and similar information will enable the Court and the parties to address the purposes for which this survey was conceived, the scope of any harm, and the proper shape of remedial measures.  Plaintiffs respectfully request such relief, as itemized more fully in plaintiffs' accompanying proposed form of order.

Dated: October 3, 2005

s/ Jennifer MacNaughton
Merrill G. Davidoff
Peter Nordberg
Jennifer MacNaughton
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

Fax (215) 875-4604
E-mail:  jmacnaughton@bm.net

*Attorneys for Plaintiffs*
*And the Class*