**Exhibit A**

**INDEX OF DEFENDANTS' RESPONSES TO PLAINTIFFS' OBJECTIONS TO DEFENDANTS' PROPOSED SUPPLEMENTAL JURY INSTRUCTIONS**

Instruction No. 2    Prior Market Discount Defense - Trespass
Instruction No. 3    Prior Market Discount Defense - Nuisance

**TENDERED BY DEFENDANTS**
**PROPOSED SUPPLEMENTAL INSTRUCTION NO. 2**

**PRIOR MARKET DISCOUNT[1] DEFENSE - TRESPASS**

If you find, in accordance with the instructions above, that a trespass will continue indefinitely and that there is a diminution in the value of all class members' properties attributable to the prospect of the continuance of that invasion, you must also determine whether a class member purchased his or her property at a time when the value of the property already had been diminished as a result of the trespass. To do so, you must find the average percentage of diminution of property value attributable to the trespass for each year prior to the time such trespass became complete and comparatively enduring.

---

[1] The Court used the phrase "Prior Market Discount Defense" in its May 17, 2005 Order. (5/17/05 Order at 18.) As previously briefed, defendants' position is that whether a class member purchased their class property at a discount is not an issue relating to mitigation of damages. Rather, plaintiffs bear the burden of proving, among other things, that the alleged diminution in value experienced by a class member occurred during the time that the class member owned his or her property. *See, e.g., Westric Battery Co. v. Standard Elec. Co.*, 482 F.2d 1307, 1318 (10th Cir. 1973) (it is "only the damage flowing legally from the defendant's misdeeds which counts"); *Runiks v. Peterson*, 155 Colo. 44, 45, 392 P.2d 590, 591 (1964) ("a claimant must establish that the damages he seeks are traceable to and are the direct result of the wrong sought to be redressed"); *Hyman & Co. v. Velsicol Corp.*, 233 P.2d 977, 1008 (Colo. 1951) ("The rule is that damages based upon mere speculation and conjecture are not allowable; however where it has been definitely established that damages are traceable to and the direct result of a wrong, the uncertainty as to the amount thereof is a question for determination by the trier of the facts."). (*See also generally* Defs.' Mem. re Class-Wide Damages Proof and "Set-Off" filed 10/20/04.)

You must do so for each property category: residential property, commercial property, and vacant land.[2]

**Authority:** 5/17/05 Order at 17-18.

---

[2] In proposing this instruction, Defendants seek to adhere to the terms of the Court's May 17 Order. Defendants do not intend to waive their objections to the method for determining damages set forth in the Court's May 17 Order, including as set forth in the damages instructions previously submitted by defendants and in defendants' other submissions on the subject of damages.

**Plaintiffs' Objections:** First, as framed, defendants' instruction calls for jury determinations on "prior market discount" regardless of whether defendants have offered evidence sufficient to support this affirmative defense for any given time period, or at all.

Second, as framed, defendants' instruction would permit one defendant to enjoy a windfall based on a "benefit" allegedly conferred by the other. For example, it would permit an offset for Rockwell's damages based on alleged diminutions in value caused by Dow. Moreover, it would permit such an offset even if Rockwell's conduct would have sufficed, without Dow's contribution, to cause the entire diminution.

Third, as framed, it would permit defendants to claim an offset even for injurious situations that did not otherwise satisfy the conditions of Restatement (Second) of Torts § 930. The standards governing defendants' affirmative defense of "prior market discount" should not be less stringent than the standards applicable to plaintiffs's damage claims.

Fourth, any instruction on "prior market discount" should explicitly call for the jury to determine whether and when the discount ended. This will permit the trier of fact in subsequent individual proceedings to determine whether any "discount" applies to particular purchases at particular times.

Fifth, plaintiffs believe it is unnecessary to instruct the jury twice on this issue, as defendants propose to do (once for trespass and once for nuisance). The damage standards for trespass and nuisance are the same under section 930.

Sixth, defendants' proposed instruction is needlessly confusing and complex.

Seventh, plaintiffs object to any "prior market discount" instruction, believing any setoff to be contrary to section 930 and other relevant authorities. However, plaintiffs recognize that the Court has already ruled on the subject and do not seek to re-argue that issue here.

**Defendants' Response to Plaintiffs' First Objection:** There is more than sufficient evidence in this case to warrant a jury determination of prior market discount. Plaintiffs' witness Charles McKay, whose family has held extensive land holdings in the Rocky Flats area, most recently testified during his deposition on September 28, 2005 that Rocky Flats had impacted the value of his family's holdings well before 1989:

Q. So the value of the Mountain Plains Industrial Center was first affected by Rocky Flats in the late 1960s?
A. I would say that's correct.

Q. So beginning in the early '80s, the value of Church Ranch Corporate Center was impacted by Rocky Flats?
A. Yes . . . .

Q. And when did the value of the Cimarron Park area first start becoming impacted by Rocky Flats?
A. Well, before it was named Cimarron Park – and we just owned the 160 here – it's been ongoing since the '60s.

(Ex. B, McKay Dep. at 31, 58, 66.)

In addition to McKay's testimony, the record is replete with evidence that any impact on property values from Rocky Flats occurred prior to 1989. (*See* Defs.' Resp. to Pls.' Proposed Plan for Determination of Compensatory Damages (filed 7/21/04); 7/29/05 Hr'g Tr. at 260-62; Defs.' Objections to Pls.' Supplemental Jury Instructions (filed 9/16/05).) For example:

- Plaintiffs' expert Dr. John Radke's analysis purports to find an approximately 8% discount for class properties in 1988, the year predating the class-membership date. (Ex. C, Radke Report at 6-7 (finding diminution of value of 7.68% as of 1988, at a time prior to when over 2,800 properties on the class notice list were purchased); *see also* Ex. D, Wise Suppl. Report, Exhibit 1 (showing that 2,816 of the properties listed in the class notice database were purchased in 1988 and the first half of 1989).) Thus, plaintiffs' own analysis would suggest a prior market discount of 8% extending back at least to 1988, with no reason to believe that, had Dr. Radke simply analyzed data for years 1987, 1986, and earlier, he would have found anything other than the same 8% discount.

- Plaintiffs' expert Wayne Hunsperger has opined that, "[i]n the 1970's, the neighborhoods near Rocky Flats suffered a marketability problem." Ex. E, Hunsperger et al., Community & Economic Impacts of the Rocky Mountain Arsenal on Commerce City, Colorado, Sept. 16, 1994, at 15.

- Mr. Bartlett, a named plaintiff and real estate broker, testified that Rocky Flats has negatively affected property values in the area since the 1969 fire, and in particular that there was a slow-down in Arvada property sales following 1984 that he attributes to Rocky Flats. (Ex. F, R. Bartlett Dep. at 129, 133.)

- Mr. Tomlinson, a class-member realtor, testified that Rocky Flats has "always" had an impact on prices in the area, since at least the mid-1960s. (Ex. G, Tomlinson Dep. at 28-29, 39.)

- Mr. Lund, a class member, testified that Rocky Flats had a "large" or "significant" impact on property values in the area since at least 1973. (Ex. H, Lund Dep. at 95-96, 98, 179, 187.)

- Mr. Park, a class member, similarly testified that area property values were harmed in the early 1980s when news of water contamination became known. (Ex. I, Park Dep. at 64-66.)

- Mr. Ozaki, a class member who is also the city/county manager for Broomfield, testified that he believes Rocky Flats has impacted properties since at least the 1970s. (Ex. J, Ozaki Dep. at 45-48, 82.)

- Mr. Ladwig, who sold Ms. Cook her property and has owned other property in the class over time, testified that properties in the area had a discount since at least 1979. (Ex. K, Ladwig Dep. 118-19 (Q: "[I]n 1979 was it your

understanding at the time that properties in the area were selling at a discount because of Rocky Flats? [Objection.] A: Well, it certainly was.").)

**Defendants' Responses to Plaintiffs' Other Objections:** *See* Defendants' Objections to Plaintiffs' Proposed Instruction on "Setoff" (filed on September 16, 2005).

**TENDERED BY DEFENDANTS**
**PROPOSED SUPPLEMENTAL INSTRUCTION NO. 3**

**PRIOR MARKET DISCOUNT[3] DEFENSE - NUISANCE**

If you find, in accordance with the instructions above, that a nuisance will continue indefinitely and that there is a diminution in the value of all class members' properties attributable to the prospect of the continuance of that invasion, you must also determine whether a class member purchased his or her property at a time when the value of the property already had been diminished as a result of the nuisance. To do so, you must find the average percentage of diminution of property value attributable to the nuisance for each year prior to the time such nuisance became complete and comparatively enduring.

---

[3] The Court used the phrase "Prior Market Discount Defense" in its May 17, 2005 Order. (5/17/05 Order at 18.) As previously briefed, defendants' position is that whether a class member purchased their class property at a discount is not an issue relating to mitigation of damages. Rather, plaintiffs bear the burden of proving, among other things, that the alleged diminution in value experienced by a class member occurred during the time that the class member owned his or her property. *See, e.g., Westric Battery Co. v. Standard Elec. Co.*, 482 F.2d 1307, 1318 (10th Cir. 1973) (it is "only the damage flowing legally from the defendant's misdeeds which counts"); *Runiks v. Peterson*, 155 Colo. 44, 45, 392 P.2d 590, 591 (1964) ("a claimant must establish that the damages he seeks are traceable to and are the direct result of the wrong sought to be redressed"); *Hyman & Co. v. Velsicol Corp.*, 233 P.2d 977, 1008 (Colo. 1951) ("The rule is that damages based upon mere speculation and conjecture are not allowable; however where it has been definitely established that damages are traceable to and the direct result of a wrong, the uncertainty as to the amount thereof is a question for determination by the trier of the facts."). (*See also generally* Defs.' Mem. re Class-Wide Damages Proof and "Set-Off" filed 10/20/04.)

You must do so for each property category: residential property, commercial property, and vacant land.[4]

**Authority:** 5/17/05 Order at 17-18.

---

[4] In proposing this instruction, Defendants seek to adhere to the terms of the Court's May 17 Order. Defendants do not intend to waive their objections to the method for determining damages set forth in the Court's May 17 Order, including as set forth in the damages instructions previously submitted by defendants and in defendants' other submissions on the subject of damages.

**Plaintiffs' Objections:** See plaintiffs' objections to Defendants' Proposed Supplemental Instruction No. 2.

**Defendants' Responses:** See defendants' responses to plaintiffs' objections to Defendants' Proposed Supplemental Instruction No. 2.