**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-181-JLK

MERILYN COOK, *et al.*,

        Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

        Defendants.

_____

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION
TO HALT DEFENDANTS' TELEPHONE SURVEY AND FOR RELATED
DISCOVERY AND FURTHER RELIEF**
_____

On Monday October 3, 2005, defendants contacted plaintiffs approximately a half hour after plaintiffs requested by email that the parties confer that day about a telephone survey. In the subsequent telephonic conference, defendants informed plaintiffs that on September 30, 2005, they had immediately halted their telephone survey after receipt of plaintiffs' letter request of the same date and in advance of any confirmation that defendants' telephone survey was the one at issue. Counsel for both parties then proceeded to explore possible resolutions of the present dispute. ***Almost forty minutes into this same call*** and as counsel for defendants and plaintiffs were ***on the telephone*** conferring about how to address plaintiffs' concerns, plaintiffs

filed the present motion.  (*See* Ex. B, Notice of Electronic Filing)  Plaintiffs' hastily filed motion should be denied for the following reasons.

*First*, plaintiffs' suggestion that defense counsel "appear to be conducting a telephone 'survey'" in violation of Colorado Disciplinary Rule of Professional Conduct 4.2 is unfounded and wrong.  Far from intentionally contacting known class members represented by class counsel, defendants expressly sought to exclude any named plaintiff, class member, and potential juror from this survey.  To accomplish this, multiple screens were put into place.  Under these circumstances, Rule 4.2 has not been violated.  (*See* Ex. A, Affidavit of Daniel Wolfe)

*Second*, contrary to plaintiffs' claim, no harm has resulted from any telephone survey conducted on behalf of defendants.  The calls placed to Merilyn Cook and Delores Schierkolk -- the only two class members that plaintiffs know were contacted by any telephone survey -- were immediately terminated.  Indeed, neither Ms. Cook nor Ms. Schierkolk participated in the survey.  (Pls.' Mot. at Ex. B)  Even if this suit were described to named plaintiffs as a "big contamination case," this description alone could not have "biased" named plaintiffs in a fifteen-year old lawsuit on the eve of class trial.  Nor can the purported risk of "biasing" class members be a genuine concern where, as here, the opt-out period closed almost six years ago and the calls were made less than a week before the start of the class trial.

*Third*, plaintiffs' requested "relief" is neither necessary nor appropriate.  As an initial matter, much of the relief that plaintiffs request is moot.  Defendants halted the survey on September 30.  The attached Affidavit of Daniel Wolfe describes the protocol for defendants' survey, information about the number of calls made and the number of surveys completed, and a

2

detailed explanation of the screening precautions that were put into place, including a description of the pertinent screening questions. The affidavit itself provides the vast majority of the discovery plaintiffs have sought. Any *additional* "relief" that plaintiffs request is premature, unnecessary, and a transparent and improper attempt to obtain defendants' privileged trial strategy and the privileged mental impressions of defense counsel on the eve of trial.

In sum, as demonstrated more fully below, the telephone study was conducted in good faith, without any intent to communicate or "bias" class members, and with extensive screening measures. Under these circumstances, plaintiffs' motion should be denied.

## BACKGROUND FACTS

On September 22, 2005, defendants informed plaintiffs and the Court "we may want to make telephone calls or conduct a survey with the view of finding out jury attitudes in this area, which is a fairly common practice now." (Pls.' Mot. at Ex. A, Tr. of 9/22/05 Hrg., at 65) The Court stated that "[i]f there has been -- as to one of these samplings that you said, and so forth, and I suspect there has been, and somebody on the jury has already been contacted, then they'll be excused." (*Id.* at 66)

On September 27, 2005, a telephone survey on behalf of defendants was initiated by TrialGraphix, a well-established jury consulting firm. (Ex. A, Wolfe Aff. at ¶¶ 1-2, 6) The protocol for the survey, as well as a summary of measures taken to screen named plaintiffs, class members, potential jurors, and court personnel, are set forth in the attached Affidavit of Daniel Wolfe, which is incorporated by reference herein, and discussed in further detail below.

3

At the end of the day on Friday September 30, 2005, plaintiffs informed defense counsel that two class members had been contacted as part of a telephone survey. In both instances, the calls were immediately terminated before any substantive survey question was asked. (Pls.' Mot. at Ex. B)  In advance of any confirmation that the survey in question had been sponsored by defendants, defense counsel arranged for the immediate cessation of defendants' telephone survey that very evening. (Ex. A, Wolfe Aff. at ¶ 12)  Over the weekend, TrialGraphix double-checked and confirmed that the screening measures had been implemented. (*Id.*)

On Monday October 3, 2005, plaintiffs emailed defense counsel stating that they were prepared to file a motion with the Court unless defendants contacted them immediately. (*See* Ex. C, 10/3/05 Email by P. Nordberg)[1]  Within a half hour, defense counsel responded to plaintiffs to arrange a discussion to address plaintiffs' concerns. (Ex. D, 10/03/05 Email by E. Ahern)  Less than fifteen minutes later, defense and plaintiffs' counsel were engaged in a discussion of how plaintiffs' concerns could be addressed. (Ex. E, 10/03/05 Email By P. Nordberg forwarding proposed Order)  Almost forty minutes into this discussion, plaintiffs filed the present motion. (Ex. B, Notice of Electronic Filing stamped 1:37 p.m.)  Counsel continued to confer throughout the day and jointly filed a report later that evening. (Ex. F, Agreed Filing)[2]

---

[1]  Mr. Nordberg's 10/3/05 email is time-stamped 1:22 p.m. Central Standard Time by defendants' computer and, therefore, was sent at 12:22 p.m. Mountain Time. The times on Exs. D (10/3/05 Email by E. Ahern) and E (10/03/05 Email by P. Nordberg, stamped 2:02 pm) are also CST.

[2]  Defendants' Motion to Compel Compliance with Pretrial Procedures is being filed concurrently herewith.

**ARGUMENT**

**I.     THE DEFENSE DID NOT TARGET THE CLASS, BUT RATHER, EXPRESSLY SOUGHT TO SCREEN ANY CLASS MEMBER FROM ITS SURVEY.**

Plaintiffs' assertion that contacts with class members violate Rule 4.2 of the Colorado Rules of Professional Responsibility is entirely without merit because the defense did not know that any of the randomly-generated anonymous telephone numbers called belonged to a class member and made extensive efforts to exclude any class member.

As an initial matter, the telephone survey was conducted from anonymous phone numbers randomly generated by computer. Specifically, 31,000 phone numbers were randomly generated by computer from the pool of 3.1 million persons residing in the twenty-four counties comprising the district for the U.S. District Court of Colorado. (Ex. A, Wolfe Aff. at ¶¶ 6-7, 10) Significantly, these numbers were unaccompanied by names because survey research firms are prohibited by law to associate a particular phone number with any individual's name or identity. (*Id.* at ¶ 7)  As a result, the defense did not knowingly contact a class member.

In fact, the defense implemented specific screening measures for the purpose of excluding class members from the telephone survey. TrialGraphix compiled a Do Not Call ("DNC") list comprised of the named plaintiffs, as well as local counsel and court personnel. TrialGraphix then proceeded to search publicly available resources, including white pages and other internet sources, to locate last known phone numbers for the names on the DNC list. For some names on the DNC list, TrialGraphix could not identify a phone number with certainty. Out of an abundance of caution, TrialGraphix excluded any available telephone numbers for

persons with the same last name. Notably, TrialGraphix obtained publicly available telephone numbers relating to both Ms. Cook and Ms. Schierkolk. (*Id.* at ¶¶ 8-9) These numbers were placed on the Do Not Call List. (*Id.* at ¶ 9)

The telephone survey then incorporated another screen. Because named class members may have unlisted numbers, including cell phone numbers, and because the telephone numbers that the computer randomly generated were unaccompanied by any names:

> Each person contacted for the Survey was immediately asked at the very beginning of the Survey the following questions to screen out inappropriate respondents. If the answer listed in the parenthesis next to each of the questions below was given, then the respondent was told the following disqualification statement, "This concludes the survey, thank you for participating and for your time. Have a good day."
>
> Are you a U.S. citizen? (No)
>
> Are you registered to vote in the State of Colorado or do you have a Colorado Driver's License (No)
>
> Have you been contacted to serve on an upcoming jury in Colorado? (Yes)
>
> Have you ever been convicted of a felony? (Yes)
>
> Do you have a pending legal case in the state of Colorado? (Yes)
>
> Do you, or anyone close to you, have a pending claim or lawsuit for property damage due to environmental contamination, either as an individual or a part of a class? (Yes)
>
> Do you, or does anyone close to you, handle claims or lawsuits for property damage due to environmental contamination? (Yes)
>
> Did you own property in the northwest Denver metro area, in the cities of Arvada, Westminster and Broomfield, during June, 1989? (Yes/Don't Know)

6

(Ex. A, Wolfe Aff. at ¶ 11)  TrialGraphix asked these overly broad screening questions to ensure that the survey participant was not a class member and immediately discontinued the survey if the answer was yes or, as noted in select cases, even "I don't know."  (*Id.*)

The early placement of these screening questions also would have prevented any caller from communicating with a class member in any material way about the subject matter of the representation.  Named plaintiffs' affidavits reflect that there was no substantive communication about the subject matter of this suit between named plaintiffs and the caller.  (Pls.' Mot. at Ex. B)  Both plaintiffs simply declined to participate in the survey.  (*Id.*)

The cases on which plaintiffs' rely are readily distinguishable from the present facts.  *See, e.g., Blanchard v. EdgeMark Financial Corp.*, 175 F.R.D. 293, 297-298 (N.D. Ill. 1997) (defense counsel deliberately failed to involve plaintiff class counsel when negotiating settlement with known class representative); *In re Complaint of PMD Enters., Inc.*, 215 F. Supp. 519, 524 (D.N.J. 2002) (attorney was aware that his investigator would contact known member of adverse party's litigation control group in course of investigation, yet "failed to take any action" to ensure that represented parties were not contacted, such as instructing investigator as to which persons he could have no contact with during the course of the investigation.); *Holdren v. Gen. Motors Corp.,* 13 F. Supp. 2d 1192, 1193–1195 (D. Kan. 1998) (attorney encouraged client to attempt to obtain sworn affidavits directly from known employees of defendants).[3]  Unlike the

---

[3] Plaintiffs' reliance on *Williams v. Burns*, 463 F.Supp. 1278 (D. Colo. 1979) is particularly misplaced as the facts in that case do not involve alleged improper communications with a represented party.

7

defendants in these cases, the defense here (a) ***did not want*** to contact class members, (b) ***actively sought*** in multiple ways to screen class members, and (c) in the case of the two named plaintiffs, had only perfunctory non-substantive communications.  (Ex. A, Wolfe Aff. at ¶¶ 8-9, 11; Pls.' Mot. at Ex. B)

Finally, based on a sample size of two, plaintiffs have no grounds to claim "that the survey may be targeting a substantial proportion of households in the class area."  (Pls.' Br. at 5)  Far from "targeting" the class area, TrialGraphix designed a survey of "persons residing in 24 counties of the United States District Court for the District of Colorado" and then attempted to "interview respondents from each county in proportion to the county's relative population within the District of Colorado."  (Ex. A, Wolfe Aff. at ¶ 5)  Equally important, since class membership is defined in terms of (i) property ownership (ii) in a defined area (iii) at a particular point in time (June 7, 1989), any phone calls made in late 2005 to anonymous numbers within the "class area" are ***not*** synonymous with calls made to class members.  The "class area" may include many thousands of renters and new property owners who are not by definition class members, while at the same time exclude individuals who owned property in 1989.  In light of all of these circumstances, the defense has not violated Rule 4.2.

## II.     CLASS MEMBERS HAVE NOT BEEN HARMED BY ANY SURVEY.

Plaintiffs have not articulated any concrete harm to named plaintiffs or to the remaining class members as a result of the telephone survey.  Nor can they do so.  It is undisputed that the named plaintiffs did not even participate in the survey in question.  (*See* Pls.' Mot. at Ex. B at Cook Aff. ("I told her I lived in the area and that I would not participate in the survey."); Schierkolk Aff. ("I declined to participate in the survey."))  Thus, these named plaintiffs could not have been "biased" by any statements in the survey.[4]  Based on their sworn statements, neither plaintiff imparted any information regarding the substance of plaintiffs' case.  (*Id.*)

Nor does plaintiffs' vague claim that such communications would bias class members make sense under the present circumstances.  (*See* Pls.' Mot. at 6)  In the cases on which plaintiffs rely, defendants' attempted communications sought to influence class members' decisions to opt-out of the class (*Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1198 (11th Cir. 1985)), or to pursue arbitration (*In Re Currency Conversion Fee Antitrust Litig.*, 361 F.Supp. 237, 254 (S.D.N.Y. 2005)), or to act in some particular manner with respect to their rights (*In re School Asbestos Litigation*, 842 F.2d 671, 682–83 (3d Cir. 1988)).  In contrast, here the opt-out period has been closed for almost 6 years and any calls were made less than a week before the start of trial.  (Ex. G, Notice of Class Action at 2).

---

[4] In any event, it is highly unlikely that the relatively tame references to "a big court case" or "a big contamination case," if such references were indeed made, could have "biased" named plaintiff Merilyn Cook who has pursued this action for almost 15 years.

### III. PLAINTIFFS ARE NOT ENTITLED TO THE OVERLY BROAD DISCOVERY OF PRIVILEGED DEFENSE MATERIALS THAT THEY SEEK.

As a threshold matter, much of the relief that plaintiffs seek is moot. Defendants halted the survey on September 30, 2005. The identity of the jury research firm conducting the survey, as well as the name of the senior consultant heading the survey, are reflected in Daniel Wolfe's attached affidavit. In an effort to cooperate with plaintiffs and to assure both the Court and plaintiffs that the survey was designed and conducted in good faith, the Wolfe affidavit also describes (i) the protocol for the survey, (ii) the manner in which the survey pool was selected, (iii) the multiple screening measures implemented for the express purpose of *not* contacting class members, (iv) the key screening questions placed at the very beginning of the survey, and (v) the measures that the defense took to address plaintiffs' concerns. (Ex. A) Thus, this information confirms that plaintiffs' allegations of improper defense conduct are wrong.

Plaintiffs' overly broad requests for additional information are unnecessary to evaluate the propriety of the telephone survey. Instead, the only purpose that these requests serve are to provide plaintiffs with a view of privileged defense strategy on the eve of trial. For example, plaintiffs seek, in part:

> all survey protocols, scripts, and similar materials, including all documents relating to the purpose and design of the survey(s), the selection of the survey sample(s), the questions asked of respondents, and the maintenance, tabulation, and presentation of data and information generated in or from the survey(s).

(Pls.' Proposed Order at 2(c)) These materials are all protected work product generated in connection with defense counsel's request and for the express purpose of defending the present suit. (Ex. A, Wolfe Aff. at ¶¶ 4-6 (explaining that the survey was designed to "identify attitudes

10

among these residents with respect to issues of interest to Kirkland & Ellis in connection with preparing for trial."))

As a result, the survey itself, drafts of the survey, communications between Kirkland and TrialGraphix regarding the substance of the survey, and in particular, the data and analysis resulting from the survey, are all privileged work product that reveal defense trial strategy and, therefore, counsel's mental impressions. *See* Fed. R. Civ. P. 26(b)(3) ("[T]he court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.")  Notably, plaintiffs make no "showing that the party seeking discovery has a substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of materials by other means."  (*Id.*)

Nor can plaintiffs make any showing of need because defendants will not present this telephone survey at trial. *See, e.g., Karan v. Nabisco*, 82 F.R.D. 683 (W.D. Pa. 1979) (materials relating to defense survey were not necessary for the preparation of plaintiffs' case and were not discoverable unless defendants sought to use survey at trial). Notably, in *Karan*, the court held that "final aspects of the theories of defendant's experts regarding [] defense strategy would be revealed if the questionnaires and 'Interviewer's Manuals' were produced in discovery."  82 F.R.D. at 685.  *See also In re Cedant Corp. Sec. Litig.*, 343 F.3d 658, 667 (3rd Cir. 2003)

11

(information regarding substance of non-testifying trial consultant's consultation with attorneys and witnesses was non-discoverable work product).[5]

In sum, the "relief" that plaintiffs seek is ***not*** a "suitable first remedial step" as they claim. (Pls.' Br. at 6) The cases on which plaintiffs rely are readily distinguishable because they involved allegations that improper ex parte communications were made with an actual decisionmaker in an administrative proceeding.[6] That is not the case here. As plaintiffs' motion makes clear, their concern is with communications with ***class members*** -- not the Court. Thus, there is no basis to hastily compel disclosure of defendants' privileged materials, particularly in light of the evidentiary showing that defendants have made here. If the Court does determine that additional information is necessary, however, an *in camera* inspection of select privileged materials could be made to resolve any additional concerns, instead of a compelled production of privileged materials directly to plaintiffs.

---

[5] Plaintiffs' overly broad requests in paragraphs 2(a), (b), (d)-(h), and (3) are also, in part, unnecessary in light of the sworn statements of Daniel Wolfe, and improper because they seek to discover the same privileged information revealing defense counsel's trial strategy.

[6] *See, e.g., PATCO v. FLRA I*, 672 F.2d 109, 113–115 (D.D.C. 1982) (labor leader allegedly attempted to influence the decision of a Federal Labor Relations Board member in labor organization proceeding); *Bethlehem Steel Corp. v. EPA*, 638 F.2d 994, 999–1000 (7th Cir. 1980) (Appellant alleged that "[a]gency personnel improperly commingled adjudicative and prosecutorial functions and relied upon improper ex parte communications arriving at [their] decision."); *Grolier Inc. v. FTC*, 615 F.2d 1215, 1222 (9th Cir. 1980) (petitioner claimed that administrative law judge's former employment as attorney-advisor to FTC Commissioner resulted in ex parte information that may have influenced ruling); *Coastal States Gas Corp. v. DOE*, 84 F.R.D. 278 (D. Del. 1979) (company alleged the DOE's Office of Hearings and Appeals was biased against it.).

## CONCLUSION

For the reasons stated above, this Court should deny plaintiffs' motion, including any relief requested in plaintiffs' proposed Order.

Dated:  October 4, 2005              Respectfully submitted,


                                     /s/ John E. Tangren_____
                                     One of the Attorneys for the Defendants
                                     David M. Bernick
                                     Douglas J. Kurtenbach
                                     Ellen Therese Ahern
                                     Mark J. Nomellini
                                     John E. Tangren
                                     KIRKLAND & ELLIS LLP
                                     200 East Randolph Drive
                                     Chicago, Illinois 60601-6636
                                     Phone:  312-861-2000
                                     Fax:     312-861-2200

                                     Joseph J. Bronesky
                                     SHERMAN & HOWARD L.L.C.
                                     633 Seventeenth Street, Suite 3000
                                     Denver, Colorado 80202
                                     Phone:  303-297-2900
                                     Fax:     303-298-0940

                                     Attorneys for ROCKWELL
                                     INTERNATIONAL CORPORATION and
                                     THE DOW CHEMICAL COMPANY

## **CERTIFICATE OF SERVICE**

       I hereby certify that on October 4, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses for the following:

Peter B. Nordberg, Esq.
c/o Karen M. Markert
Apartments at Denver Place, Apt. 2812
1880 Arapahoe Street
Denver, CO 80202
pnordberg@bm.net
kmarkert@bm.net

Gary B. Blum, Esq.
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206
blumg@s-d.com

                                        /s/ Kari Knudsen_____
                                        Kari Knudsen (legal assistant)