**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-181-JLK

MERILYN COOK, *et al.*,

       Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL  COMPANY,

       Defendants.

---

**DEFENDANTS' EMERGENCY MOTION TO COMPEL COMPLIANCE WITH
PRETRIAL REQUIREMENTS**

---

Now two days before jury selection, plaintiffs have continued in their failure to put this case on track for trial.  At this point, there are, unfortunately, serious questions as to whether plaintiffs are ready to prosecute their case and as to whether the Court may need to inform the jury of the unpleasant possibility that the case may not be completed by Christmas.  Instead of completing the ***existing*** pre-trial work, plaintiffs have been occupying the parties' time with ***new*** witnesses and issues that have nothing to do with the claims to be tried in this case.  In short, less than a week before trial, plaintiffs are moving the case backwards.

This emergency motion is the result of repeated oral and written communications with plaintiffs over the course of this week and last week concerning each of the issues set forth herein.  *See* D.C. Colo. L. Civ. R. 7.1.

**I.      OUTSTANDING PRETRIAL ISSUES.**

As of this filing, the following pre-trial issues remain open:

<u>Witness Lists</u>.  On September 21, the parties agreed that plaintiffs would provide their order of call of witnesses on September 30, and defendants would provide their order of call of witnesses two Fridays before the beginning of defendants' case-in-chief.  (Ex. 1.)  On September 24, following the September 22 pretrial conference, plaintiffs reaffirmed in writing their agreement to provide plaintiffs' order of call of witnesses on September 30.  (Ex. 2.)  Plaintiffs have since failed to provide their order of call of witnesses on September 30, which is contrary to the parties' agreement.

And the situation has gone from bad to worse.  Plaintiffs now state that they will not provide any order of call until 9 a.m. on Thursday, October 6 (<u>only four days before trial</u>), and then <u>only for the witnesses to be called the following week</u>.  (Ex. 3.)  Plaintiffs' delay on witnesses is unacceptable and can only be regarded as hiding the ball.  At last count, plaintiffs had listed forty-eight witnesses.  Counsel for the plaintiffs have acknowledged that many witnesses might not be called.  This puts defendants in an untenable position with respect to preparing for plaintiffs' witnesses, effectively requiring defendants to prepare for forty-eight witnesses at the same time.

The problem goes beyond an imposition of an unfair burden.  It effectively disables the defendants from preparing for meaningful cross-examination.  And it renders infeasible the process of deciding whom to call as defendants' witnesses, assuring witness availability, and preparing witnesses to testify.  In sum, plaintiffs' refusal to provide their complete order of call

violates defendants' right to due process and to a fair trial.  Defendants respectfully request that the Court require plaintiffs to provide their complete order of call forthwith, consistent with the parties' agreement and with fundamental fairness.

Deposition Designations.  On September 19, 2005, September 24, and September 28, defendants indicated to plaintiffs that defendants were prepared to exchange deposition designations, and defendants asked plaintiffs to let defendants know when plaintiffs were also prepared to do so.  (Exs. 4-6.)  Having heard nothing from plaintiffs, defendants filed their deposition designations on September 29.  On October 3, plaintiffs indicated that plaintiffs "may" be able to provide some deposition designations at some point in the future (with other deposition designations "lagging behind").  (Ex. 3.)   Even if plaintiffs were to provide their deposition designations on October 4 (which appears extremely unlikely), defendants would have less than one week to respond to those designations before the start of trial.  Again, plaintiffs' delay puts defendants in an untenable position.

Demonstratives.  Defendants have made three installments of disclosures of demonstratives to plaintiffs.  (Exs. 7-9.)  Plaintiffs have not responded, other than to "flag[] defendants' model as a potential subject of controversy and one that we are currently studying." (Ex. 3.)  At this point, substantial work has gone into the demonstratives and some have reached the point where requests for alteration will improperly provide strategic leverage over defendants' trial presentation.  Meanwhile, plaintiffs have indicated that they have no present intention of making any disclosures of demonstratives to be used with any witness, until 9 a.m. of the day prior to when that witness is called.  (Ex. 10.)

Pre-trial order:  Defendants provided plaintiffs with defendants' latest draft of the pre-trial order on September 21, 2005.  (Ex. 11.)  Plaintiffs did not provide comments on the pre-trial order until two weeks later, on October 3.  (Ex. 12.)  Making matters worse, plaintiffs' October 3 cover e-mail enclosing plaintiffs' comments on the pre-trial order stated:  "*[W]e are still in the draft phase*, so there *may be some additional edits from our side*."  (*Id.* (emphasis added).)  It is simply too late for plaintiffs to be in the "draft phase," especially given that (1) defendants had provided plaintiffs with the latest draft pre-trial order two weeks ago (on September 21), and (2) there is less than a week remaining before trial.

Stipulations:  Defendants provided proposed stipulations to plaintiffs on September 26, 2005.  (Ex. 13.)  Plaintiffs have not responded to defendants' proposed stipulations.  Most recently, plaintiffs indicated that they would "attempt" to provide responses to defendants' stipulations on October 5—five days before trial—but plaintiffs could not commit even to that date.  (Exs. 3, 10.)

## II.    INSTEAD OF COMPLETING *EXISTING* PRETRIAL WORK, PLAINTIFFS HAVE RAISED NEW ISSUES THAT HAVE NOTHING DO WITH THE CLAIMS TO BE TRIED

Making matters worse, instead of completing existing pre-trial work, plaintiffs appear to be focusing their efforts on raising new, irrelevant issues that will only delay the trial of this case.

*First*, on September 27, 2005, less than two weeks before trial, plaintiffs added four *new witnesses*: David Minshall, LeRoy Moore, Niels Schoenbeck, and Joel Selbin.  Defendants were

required to draft a motion to strike these belatedly-added witnesses, which motion is currently pending before the Court.

**Second**, on October 3, 2005, plaintiffs—before the parties had completed any "meet and confer" or any other discussion regarding the survey—filed an "Emergency Motion to Halt Telephone Survey." Had plaintiffs waited to discuss the survey with defendants before filing their motion, plaintiffs would have learned that: (1) defendants had ***already*** halted the telephone survey; and (2) extensive screening procedures had been implemented in connection with the survey in an effort to prevent any contact with class members from occurring (*see* Defendants' Response to Plaintiffs' Emergency Motion to Halt Telephone Survey, which is being filed concurrently herewith). Those facts—which plaintiffs did not learn until after they had already filed their motion—only underscore that this non-issue is merely a distraction from outstanding pre-trial order work.

**Third**, plaintiffs have included on their witness list individuals who, if plaintiffs were to comply with the Court's ruling on motions in limine, would have nothing to say. For example, plaintiffs' latest witness list includes Wesley McKinley, the "foreman of the grand jury that investigated Rockwell" (Ex. 14), even though the Court has ruled that evidence relating to the "runaway grand jury" is inadmissible (Ex. 15, 8/22 Hr'g Tr. at 7).

Plaintiffs' apparent intent is to use the trial process to "negotiate" better rulings. Plaintiffs' conduct not only reflects a failure to abide by the Court's rulings, but imposes on defendants the burden of conducting discovery with respect to witnesses and issues that the Court has already excluded from the case.

*Fourth*, plaintiffs have continued on their futile quest to implicate Dow, Rockwell, and their counsel in connection with classification and "MUF" issues, including "classification" witnesses such as Rodney Hoffmann and Richard Kaufman to their witness list.  For example, plaintiffs have indicated that Mr. Kaufman will testify about "*any* involvement of personnel from the defense law firm of Kirkland & Ellis in the decision to withhold discoverable information concerning MUF in response to plaintiffs' discovery requests."  (Ex. 16 (emphasis added).)

As defendants have previously argued, the classification issue is a red herring.  In fifteen years of litigation, there has been no evidence of wrongful classification conduct by defendants or their counsel.

Critically, the Court has permitted the jury to learn of the *fact* of classification.  But the Court has never permitted plaintiffs to use classification as evidence of liability.  Nor has the Court permitted plaintiffs to use classification as evidence of any wrongful conduct by defendants or by the government.  Doing so would have many implications.  First, the government is not a defendant, and the government's liability to plaintiffs is not at issue.  Second, allowing classification to be tried in any fashion would open up the door to non-litigable issues relating to classification decisions.

Third, plaintiffs in recent times have sought desperately to use classification in an effort to smear defendants and their counsel.  There is no evidence that defendants or their counsel have engaged in wrongful conduct with respect to classification, and any such implication is improper.  The Court has made clear that plaintiffs will not be allowed to imply that defendants or their counsel acted wrongfully in connection with classification issues.  Allowing plaintiffs to

continue on this quest before the jury not only is in violation of the Court's prior decisions, but will in a heartbeat result in irremediable jury taint.

## CONCLUSION

In conclusion, defendants respectfully request that the Court enter an order requiring plaintiffs to comply with applicable pre-trial requirements, and order such other relief as is appropriate and just.

Dated:  October 4, 2005                    Respectfully submitted,


/s/ John E. Tangren_____
One of the Attorneys for the Defendants
David M. Bernick
Douglas J. Kurtenbach
Ellen Therese Ahern
Mark J. Nomellini
John E. Tangren
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636
Phone:  312-861-2000
Fax:      312-861-2200

Joseph J. Bronesky
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Phone:  303-297-2900
Fax:      303-298-0940

Attorneys for ROCKWELL
INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 4, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses for the following:

Peter B. Nordberg, Esq.
c/o Karen M. Markert
Apartments at Denver Place, Apt. 2812
1880 Arapahoe Street
Denver, CO 80202
pnordberg@bm.net
kmarkert@bm.net

Gary B. Blum, Esq.
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206
blumg@s-d.com

/s/ Kari Knudsen
Kari Knudsen (legal assistant)