# Exhibit 1

Sept 22 pm.txt

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF COLORADO

 3    Civil Action No. 90-CV-00181

 4    MERILYN COOK, et al.,

 5        Plaintiffs,

 6    v.

 7    ROCKWELL INTERNATIONAL CORPORATION, and
      THE DOW CHEMICAL COMPANY,
 8
          Defendants.
 9
```

```
10                       REPORTER'S TRANSCRIPT
11                       PRETRIAL CONFERENCE
```

```
12

13              Proceedings before the HONORABLE JOHN L. KANE, JR.,

14    Senior Judge, United States District Court for the District
of

15    Colorado, commencing at 1:30 p.m., on the 22nd day of
September,

16    2005, in Courtroom A802, Alfred A. Arraj United States

17    Courthouse, 901 19th Street, Denver, Colorado.

18                           APPEARANCES

19              MERRILL GENE DAVIDOFF, PETER NORDBERG, LOUISE
ROSELLE,

20    BERGER & MONTAGUE, 1622 Locust Street, Philadelphia, PA.
19103,

21    and;

22              Suzanne M. Claar, Official Reporter
                         901 19th Street
23                  Denver, Colorado 80294-3589
                        (303)825-8874
24
              PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
25                  TRANSCRIPT PRODUCED BY COMPUTER
```

Sept 22 pm.txt

4    Mr. McKay's family were parties.

5         And I understand from somebody in Mr. McKay's office

6    that there was a lawyer from Kirkland & Ellis there for two
or

7    three days, basically ripping their files apart, and ordering

8    this be copied, that thing be copied, the other thing be
copied.

9    That was over a year ago.

10        You know, it just is calculated to wreak the maximal

11   disruption of our case and our trial preparation to come back
--

12   and many of these depositions were not deferred by us.  We
don't

13   control all -- we don't control hardly any of these
witnesses.

14        They were deferred by the defendants, for whatever

15   reason.  They were deferred by the defendants.  They just
didn't

16   come back.  And to come back two weeks before trial as to the

17   witnesses who were known for a long time and have been known
for

18   a long time, that's just fundamentally unfair.

19        And we have missed our chance to take many
depositions

20   or renewed depositions of their witnesses who have been known

21   for a while.

22        Now, as to the new witnesses, I -- you know, I
concede

23   that there should be a severely limited right to take

24   depositions.  But to say an average of two hours is no

25   limitation at all, because some of these witnesses are on
very


85

1    discrete areas.  For example, the two, I will call them,
                              Page 19

Sept 22 pm.txt

2    Bartlett children.  One of them's name is not Bartlett
anymore,

3    but the two Bartlett children, I don't think those need to be

4    lengthy depositions, so when you average a ten or
fifteen-minute

5    deposition of them with what might be a six or seven-hour

6    deposition of someone else, that can come out to two hours.

7         They took 27 depositions last summer and we took 20.

8    This was all during 2004.  That was our count, anyway.  We
went

9    back.

10        We exchanged witness lists in December of 2003, and

11   approximately 45 to 50 depositions were taken, more by them
than

12   by us.  Many of those depositions were five, six, seven-hour

13   depositions.  Seven hours of testimony.

14        They were, in our view, quite harassing, and I would

15   say some of our prospective witnesses were daunted, and
perhaps

16   even dissuaded, from further cooperation by going through the

17   experience.  It's probably a little worse than a root canal.

18        So to do this now, on the eve of trial, and adhere
to

19   the exact same schedule that we have been talking about now
for

20   the last -- at least the last four to six weeks, is unfair.

21        I am willing to agree to a maximum of one hour for

22   newly-designated witnesses, and I don't know this GIS fellow

23   that's creating these beautiful elaborate models for them, I

24   don't know whether we are going to want to take his
deposition

25   or not.  I don't know if he will testify or if he is going to

86

Sept 22 pm.txt

on

13    November 10th of 2004, to a colleague of mine who has since

14    passed away, her writing, "Brett, as we discussed earlier, we

15    will work together to complete any outstanding discovery

16    completed of our intended witnesses Lacy, McKay and Thigpen,
and

17    any other loose remaining ends before trial?

18         A subsequent e-mail confirming a conversation to the

19    same effect between my partner, Mr. Nomellini, and Mr.
Nordberg,

20    also attached to these materials in March of '05.   Mr.
Nordberg

21    himself under tab 5 of our materials, Ms. Ahern, who is
sitting

22    here with me, writes to them and says, "Should permission be

23    received for him to testify," this is Mr. Lipski, "in the

24    future, it is my understanding that you do not object to our

25    taking a discovery deposition of Mr. Lipski at that time."


95

1          Mr. Nordberg, "Ellen, you are quite correct."   There
is

2     an agreement.

3          MR. DAVIDOFF:   Well, those are ancient
communications

4     relative to the last year and a half for trial preparation in

5     this case, and may I just say one thing.   To hit us with a

6     motion on the eve of a pretrial conference -- they didn't
even

7     raise it at the pretrial conference we had nine days ago.   To

8     hit us with a motion that we get when we are trying to get
ready

9     for this conference, we are all flying in here last night, we

10    are trying to get ready for this conference, and to expect us
to

Page 30

Sept 22 pm.txt

| | 11 | spend overnight searching our e-mail trails from the last |
year
| | 12 | and a half to prove what is quite obvious in what we have |
said
| | 13 | repeatedly, fine, we will cooperate with you, but cooperation |
| | 14 | does not entail disrupting our final trial preparation in the |
| | 15 | last two weeks before trial.  That is absurd.  Respectfully. |
| | 16 | THE COURT:  Well, okay.  That's enough.  Thank you. |
| | 17 | I have said this before, and I don't want to sound |
like
| | 18 | a broken record about this.  But given the difficulty in |
trying
| | 19 | to get a trial date with counsel's on both sides schedules, |
and
| | 20 | the fact that you do, speaking to all of you, you do |
specialize
| | 21 | in an area of law that takes certain demands on the system |
that
| | 22 | the system isn't really able to deal with.  You have got, for |
| | 23 | instance, a trial, or you had one that lasted five or six |
| | 24 | months. |
| | 25 | MR. BERNICK:  Nine. |

96

| | 1 | THE COURT:  Okay, nine.  Another trial, you know, to |
| | 2 | get you people in is more difficult than it was to find a |
| | 3 | filming date for John Wayne.  Your time is taken up. |
| | 4 | And we are accustomed, we are not accustomed |
anymore,
| | 5 | but the system itself was designed for trials lasting three |
or
| | 6 | four days, and the system itself was one where -- in fact, I |
| | 7 | wish we were there now -- but where you could have term days, |
| | 8 | and all the lawyers that had cases for a whole year would |
show

Page 31

Sept 22 pm.txt

9  up and the whole calendar was set at that time.

10     We aren't there anymore. We are talking about

11 different times for this case to go to trial, and you saw
what

12 happened last time. It was over a year before we could get

13 everybody together, and I am not trying to fault anybody with

14 that, it's the nature of what we are trying to do.

15     Another aspect is that these rules of procedure were

16 never designed for cases like this, and so there is plenty of

17 authority that says once you reach the discovery cutoff date,

18 that's it.

19     Well, they are talking -- I think the higher courts

20 are, and trial courts rarely make these rulings -- they are

21 talking about single party, individual parties, kinds of

22 litigation. Traffic accidents, and personal injury, and
perhaps

23 a breach of contract. They are not talking about something
like

24 this where it's well nigh impossible to keep track of
everything

25 that's going on, so I am, on the one hand, I am very


97

1  sympathetic; on the other, I am forced not to look at what
the

2  usual kind of decisions are made.

3     The kind -- and I don't mean to demean anybody by

4  saying this, but the kind of routine rulings that are made,
we

5  are not there.

6     I also have to look at this in the sense of allowing

7  counsel the time to put all this monumental work into effect
to

Page 32

Sept 22 pm.txt
8    get this case going and on trial day, as scheduled.  And we
have

9    already seen today where we know that it's going to go way

10   beyond what was anticipated.

11        I am not going to continue this trial.  That would
be a

12   typical kind of thing to do.  It's virtually impossible in
this

13   case to do that.

14        And I suppose there is another aspect, too, that has

15   convinced me more and more that we ought to abolish
depositions

16   entirely, but that's a matter for speculation over a fifth of

17   brandy, I think, but at any rate, I have got to be arbitrary,
I

18   guess is what I am telling you, and I am going to permit the

19   depositions of newly-endorsed witnesses, and they will have
to

20   be taken by September 28, unless counsel agree to another
fixed

21   definite time after September 28th.

22        With regard to witnesses already deposed, I am not

23   going to permit additional depositions of them, but those

24   witnesses will be limited to the testimony in their
depositions,

25   and if any additional testimony on direct is intended, then
the


98

1    calling party must provide a sworn statement of that witness
to

2    the opposing party not later than September 28th.

3         A sworn statement is to what that additional
testimony

4    is.  An affidavit.  I hereby declare this is my testimony.

5    That's the best thing I can do to avoid surprise.
                              Page 33

Sept 22 pm.txt

6      As to the opposing party, as Mr. Bernick pointed
out,

7      he has learned some information he wants to go into at
greater

8      length and he seeks additional information, and this applies
to

9      both sides, if either side expects or wants additional

10     information from a witness already deposed, that party
seeking

11     that information on new matters, matters not contained in the

12     previous deposition, may serve a maximum of five
interrogatories

13     to the other side to be answered, and that has to be served

14     by -- I hate to do this -- but Monday, September 26th, and it

15     has to be answered by Friday, September 30th.

16          MR. DAVIDOFF:  Can I make a comment, your Honor?
The

17     depositions of the witnesses that we are calling were, by and

18     large, taken by the defendants.  They were not limited.

19          I can't control what they did or did not ask in a

20     deposition.  Um, so I assume -- I shouldn't assume -- I am

21     asking, I guess, for some guidance here.  If the facts were

22     within the witness's knowledge and could have been asked
about

23     in the deposition --

24          THE COURT:  Yeah.  This is not to plow over fields
that

25     have already been gone over.  This is new matters.  If the


99

1      Bartletts have sold their property since their depositions
were

2      taken, and he wants the details on that, he is entitled to
that.

3          MR. DAVIDOFF:  Right.  I agree with that.
                                Page 34

Sept 22 pm.txt

         4          THE COURT:  If you are going to ask one of these

         5    witnesses for information that came up after their deposition

         6    was taken, at any time from that date forward, new
information,

         7    then you must provide sworn statements.

         8          MR. DAVIDOFF:  I understand that.  I am not
quarreling

         9    with that at all.

        10          THE COURT:  I am just trying to avoid ambush.

        11          MR. DAVIDOFF:  I completely understand, and I think

        12    that's fair.  Okay.  So if it was available at the time of
the

        13    deposition, whether they asked about it or not, it's fair
game.

        14    I don't want to have to go back and figure out between now --

        15    let me finish, David, because I had a second point too.

        16          MR. BERNICK:  I will sit down.

        17          MR. DAVIDOFF:  Thank you.  All right.

        18          Part one is, if they could have asked about it at
the

        19    deposition because the facts had occurred prior to the

        20    deposition, what I am requesting is that we not have to go
back

        21    and do the work of determining whether Kirkland & Ellis asked

        22    about a witness -- asked the witness that we are going to
call

        23    about something at his deposition that they could have asked

        24    about, but didn't, that we then have to supplement.

        25          As I understand it, we don't have to do that.


100

         1          THE COURT:  Depends.  Are they going to testify to
it

         2    or not?  If they are going to testify to it, then you will.
                                 Page 35

Sept 22 pm.txt

3        MR. DAVIDOFF:  Okay.

4        THE COURT:  It's hard to figure out, but I don't
know

5   what else I can do.

6        MR. DAVIDOFF:  Then I have -- that's a daunting task

7   because if they could have asked the question that they
didn't

8   ask, and if I have to figure out whether they asked the
question

9   that they didn't ask, September 28th is a -- not a realistic

10  deadline.

11       The other part of the clarification I was seeking, I
am

12  respectfully suggesting it's not realistic.  I would suggest

13  maybe five days before the witness's testimony would be more

14  appropriate.

15       THE COURT:  I need to get it done before trial.  I

16  really do.

17       MR. DAVIDOFF:  All right.  The other clarification
is

18  you said you want a sworn statement.  I may not be able to
get

19  sworn statements from every witness.

20       THE COURT:  You can fax it, but they can sign it
sworn

21  wherever they like, and if you can't get it because they are
not

22  your clients or something of that nature, then notify

23  Mr. Bernick, and we will figure out what to do.

24       MR. DAVIDOFF:  Well, many of our witnesses do fall
in

25  that category.

101

Sept 22 pm.txt

them
1    THE COURT:   You can ask them, can't you, to go ask

2    to file a sworn statement.  It seems to me, it isn't going to

3    hurt to ask them.  If they say no, I suppose I can issue a

4    subpoena to have their deposition taken.  We are trying to
save

5    them time too.

6         MR. DAVIDOFF:  All right.

7         MR. BERNICK:  I think I understand we have these

8    categories.  We have the named plaintiffs, who have been
deposed

9    before.  It's easy to understand your Honor's determination
with

10   respect to them.

11        We have new witnesses, who have not been deposed as

12   plaintiffs' new witnesses, and I don't know that your Honor's

13   direction just now addresses the new witnesses not previously

14   disclosed.

15        THE COURT:  I said you can take their depositions.

16        MR. BERNICK:  Take their depositions.  And the same

17   thing would apply to our people.

18        THE COURT:  Right.

19        MR. BERNICK:  And with respect to the people who are

20   old that were designated before, one of them was deposed,
which

21   is Mr. McKay, and would fall well within the guidance that
your

22   Honor offered.  We then have three people, Lipski, Lacy and

23   Williams who were never deposed, and may I make a suggestion,

24   which is that if we could just get a statement -- doesn't
have

25   to even be a sworn statement.

102

Page 37

Sept 22 pm.txt

1          THE COURT:  I said, you can send them
interrogatories.

2          MR. BERNICK:  Send them interrogatories.

3          THE COURT:  Yes.

4          MR. BERNICK:  Okay.  And that would be fine.

5          THE COURT:  Okay.  All right.

6          MR. NORDBERG:  Your Honor, can I just get
clarification

7    on one point?

8          THE COURT:  Yes, sir.

9          MR. NORDBERG:  This has all come up, your Honor, in
the

10   context of a motion filed by defendants about twelve
witnesses.

11         Do we have to go back through the entire corpus of
all

12   the witnesses on our list?

13         THE COURT:  No.

14         MR. NORDBERG:  Just the twelve, correct.

15         THE COURT:  Yes.

16         MR. NORDBERG:  I just want to be clear, your Honor.

17         MR. BERNICK:  With respect to, and again by way of

18   saving timing, suggestion.  With respect to Kaufman, the
AUSA,

19   and McKinley and Lipski.  Lipski again is FBI.

20         THE COURT:  Why can't you people get them on the
phone

21   and talk to them?  Why don't we do that?  Is it possible?  A

22   retired FBI agent isn't going to be that difficult to talk
to.

23         MR. BERNICK:  But what I am focused on -- I don't
know,

24   for example, McKinley is the grand jury foreman.  What is the
--

25   instead of hunting in the dark about what he is being
proffered

Page 38

Sept 22 pm.txt

103

1    for, why don't we find out what he is being proffered for.

2             THE COURT:   That's what I expect you to do, to find
out

3    what he is being proffered for.  It seems to me you can get
on

4    the phone.  There are people in lawsuits who can't afford

5    depositions, and that's what they do, so it's worth a try.

6             MR. BERNICK:   Certainly even if they are not willing
to

7    talk, what I am raising about those people in particular, is

8    they fall within this area where your Honor has been very
clear

9    about what it is that is going to be permitted or not.  And
if

10   there is any ambiguity if it's something else that we haven't

11   foreseen, let's put it out in the open.  I don't know what a

12   grand jury foreman could testify to now other than how was
the

13   grand jury foreman we met.

14            THE COURT:   That may well.  They might be deciding
not

15   to call him after they heard what I have to say.  But I think
if

16   you talk to one another, you can work it out.  You have seen

17   what the parameters are.  And I am just trying to cut to the

18   chase.  Okay?

19            Is there anything else we need to do today?
Anything

20   else?  Okay.  Thank you, gentlemen.  And ladies.

21            (Proceedings concluded at 2:35 p.m.)

22

23

24

Page 39