**Exhibit 5**

Hunter + Geist   Denver, Colorado

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

In the Matter of:

## Merilyn Cook, et al. v. Rockwell International Corporation, et al.

90-K-181

### VIDEOTAPE DEPOSITION OF:

# KAREN BANISTER

| | |
|---|---|
| DATE TAKEN: | October 3, 2005 |
| PAGES: | 1-82 |
| REPORTED BY: | Barb Birger, CRR |



Hunter + Geist, Inc.

(303) 832-5966

- www.huntergeist.com
- depo@huntergeist.com

1900 Grant Street, Suite 800
Denver, Colorado 80203
Fax: (303) 832-9525
Toll Free: 1-800-525-8490

```
1    think it would be out of the ordinary for someone to say
2    that they did not want to come to my facility because of
3    that.
4         Q.   So --
5         A.   Many of those people, they wouldn't know.  If
6    they didn't live there, many of those people don't -- if
7    they hadn't lived in Arvada their whole life, they didn't
8    know Rocky Flats was over the hill.  And the ones that did
9    know asked -- asked how worried we were, how concerned we
10   were.  So . . .
11        Q.   So the answer is that no one ever told you they
12   didn't want to become a customer because of Rocky Flats; is
13   that right?
14        A.   Not that I can recall.
15             MR. DAVIDOFF:  Are we making some progress on
16   time because we're running a little short here?
17             MS. BRENNAN:  I still have a number of questions.
18   I'll continue to do my best to answer them, but -- or to
19   ask them, but as you know, it's our position that we're not
20   limited to, you know, any time restriction.
21             MR. DAVIDOFF:  Would you try to finish?  I mean,
22   I think Ms. Banister thought this was going to take an
23   hour, and she gave a time window when she available.  We've
24   already gone a hour and 20 minutes, approximately, so just
25   try to wrap-up to the best of your ability.
```

10/3/2005 Banister, Karen

1  A.  Stratton.  It's far away.  That, however, does
2  not service the immediate Arvada area.
3  Q.  Do you recall an economic recession in the late
4  '80s or early 1990s?
5  MR. DAVIDOFF:  It's objection -- it's objected to
6  on grounds of foundation.  Lacks foundation for the
7  witness' knowledge.
8  A.  I believe in the last 18 years there have been
9  periods of economic downturn and improvement.  And do I
10 specifically remember dates that go with that?  I do not
11 specifically remember dates.
12 Q.  (BY MS. BRENNAN)  Would you agree that an
13 economic recession could affect a horse business?
14 MR. DAVIDOFF:  Objection to the form.  Objection,
15 lacks foundation.  The witness is not an expert economist,
16 she's a horsewoman, as I understand it, and a very
17 accomplished one.  And I really think this is verging on,
18 you know, frolic and a detour that is unnecessary.  And on
19 the eve of trial, to take testimony and delve deeply into
20 her horse business, which is not even at issue in the
21 forthcoming trial, I think is a diversion from all of our
22 trial preparation tasks.  I object on all of those grounds.
23 MS. BRENNAN:  Mr. Davidoff, I would appreciate it
24 if you could please try to keep speaking objections to a
25 minimum.

10/3/2005  Banister, Karen

```
 1        A.   He has been an acquaintance for a long, long
 2   time.
 3             MR. DAVIDOFF:  Can we draw this to a close?  We
 4   have been going for nearly two hours.  I have not requested
 5   any breaks, and I originally thought this deposition should
 6   take, and it shouldn't have taken more than an hour.  But
 7   can we try to draw it to a close, please.
 8             MS. BRENNAN:  And I still have some additional
 9   questions.  But, you know, I'll do the best can I to get
10   through them.
11        Q.   (BY MS. BRENNAN)  When did the Alkire property
12   sell?  Did it all sell in one piece in 1999?
13        A.   I think so.  I don't know.  I didn't do the money
14   end of that.
15        Q.   Do you know whether the purchaser in 1999 owned
16   the whole 10-acre property?
17        A.   I believe so.  Gary Olson, I believe so.
18        Q.   Do you know what the sale price was for the
19   property?
20        A.   I wasn't privy to that information.
21        Q.   Did your parents ever discuss the eventual sale
22   with you?
23        A.   Well, yes, because it involved the business.
24        Q.   Did they ever tell you whether they were
25   satisfied with the sale price?
```

10/3/2005 Banister, Karen

1   related to a golf course near the Alkire property; are you
2   aware of that?
3       A.   No.  I mean, I would have to -- my father was
4   involved in real estate; therefore, there was always
5   conversation about what he was doing in real estate,
6   but . . .
7       Q.   Do you remember your mother ever having sleeping
8   problems?
9           MR. DAVIDOFF:  Excuse me.  I am going to have to
10  remind you again, Ms. Brennan, that we were obliged to
11  furnish supplemental statements for the plaintiffs, which
12  we did.  The court did not authorize renewed discovery of
13  Mr. and Mrs. Bartlett, Ms. Banister's parents.  The purpose
14  of this deposition, as I understand it, three days before a
15  jury is being selected in the trial of this matter after 16
16  long years, was for you to have some opportunity to have
17  advanced notice of what Ms. Banister would be testifying
18  about, not to renew your discovery of Mr. and
19  Mrs. Bartlett.
20          I think the deposition process is becoming
21  abusive, and we are nearly at two hours.  I am asking you
22  to draw your examination to a close and focus on questions
23  that are within Ms. Banister's personal knowledge.
24          MS. BRENNAN:  Well, I would say I don't want to
25  get in a fight with you on the record, but I do believe I'm

0070

10/3/2005  Banister, Karen

1   entitled to discovery of this witness, and this is our
2   opportunity to find out what she is planning to testify at
3   trial about and what the scope of her knowledge is, and
4   that is the basis for these questions.
5           MR. DAVIDOFF:  Right.  I wish you would just get
6   to that and try to wrap it up.  She has already told you
7   that she's got to break off before 1 o'clock because she
8   has to resume her business then.  And I have allowed you to
9   go for nearly two hours, so let's draw this to a close,
10  please.
11          Q.   (BY MS. BRENNAN)  Would it be fair to say that
12  you're familiar with your mother's anxiety, or lack
13  thereof, about Rocky Flats?
14          A.   It's fair for you to say that.
15          Q.   Is that something that potentially you could
16  testify about at trial?
17          A.   If she has sleeplessness?
18          Q.   Anxiety of any form.
19          A.   My mother has anxiety about Rocky Flats.
20          Q.   Do you ever remember your mother having sleeping
21  problems at any time?
22          MR. DAVIDOFF:  Objection, this is really verging
23  on the irrelevant.  It's not a personal injury case.  Would
24  you please answer the question.
25          A.   I guess I don't identify my -- I would know that

10/3/2005  Banister, Karen

1   my mother had sleeping problems if she told me, I didn't
2   sleep well last night.  Does she have a pattern of sleeping
3   problems?  Not that I can identify.
4        Q.   (BY MS. BRENNAN)  You don't recall that ever
5   being the case?
6        A.   That she can't sleep?
7        Q.   Correct.
8        A.   Oh, I can certainly recall that she can't sleep.
9   But she has to -- I mean, it's not that -- in other words,
10  I don't remember waking up at night and having her pacing
11  around or -- anyway, I guess I'm not sure what you're
12  asking me.  And since it's so like far out from what I
13  thought I was answering, I never thought about stuff like
14  that.
15       Q.   Do you recall your mother ever having sleeping
16  problems when you were growing up before you left for
17  college?
18            MR. DAVIDOFF:  Again, this is an effort to take
19  discovery about Mrs. Bartlett, not to take discovery of
20  Ms. Banister.  I object, and I'm asking you once again to
21  draw your examination to a conclusion.
22       A.   I mean, yes.  I mean, I know my mom had nights
23  that she didn't sleep well because she would tell us that
24  she didn't sleep well.  Is there a pattern that goes with
25  that?  I don't know.

1   never borrowed money from me, so there you have it.
2           MS. BRENNAN:  Would you be agreeable to giving me
3   a five minute-break to look over my notes, then I think we
4   could wrap this deposition up?
5           THE DEPONENT:  I personally would beg a
6   five-minute break.
7           MR. DAVIDOFF:  I'm agreeable to that, but let's
8   just draw it to a close.
9           THE DEPONENT:  My pocket is buzzing.
10          THE VIDEOGRAPHER:  We're going off the record at
11  12:34.
12          (Recess taken from 12:26 p.m. to 12:34 p.m.)
13          MR. DAVIDOFF:  We have now burned up a two-hour
14  tape in what should have been a one-hour deposition.  I've
15  objected to starting another tape.  I can't stop you from
16  doing that, but Ms. Banister has to break in a few minutes,
17  as she told you hours ago, and she will break in a few
18  minutes, as she told you hours ago.  So please conclude
19  your questioning and go back on the record, please.
20          While he's changing the tape, may I go on the
21  record.  I want to admonish you and your colleagues,
22  Ms. Brennan, that I'm going to object to any trial
23  discovery deposition on the eve or during trial henceforth
24  that is permitted by the court that exceeds one hour in
25  length without good cause shown.  There has been no good

10/3/2005  Banister, Karen

```
 1    cause shown for this witness.  I'm trying to avoid bringing
 2    a fight to the court, and that's why I've allowed you to go
 3    as long as you have, but I urge you again to conclude.  But
 4    please take that admonition to heart.  I admonish you and
 5    your colleagues.  I'm going to object to anything longer
 6    than an hour from now on.
 7              MS. BRENNAN:  For the record, our position is
 8    that the judge has not limited any of these depositions to
 9    one hour in time, and we do not believe that we are limited
10    in our deposition taking to that sort of a time limit.
11              MR. DAVIDOFF:  A two-plus-hour-deposition of a
12    relatively minor trial witness three days before jury is
13    being picked is harassing and abusive.  Now you have my
14    position on that.  Let's conclude this as rapidly as we
15    can.
16              THE VIDEOGRAPHER:  We're going back on the record
17    at 12:45, beginning tape 2.
18         Q.   (BY MS. BRENNAN)  Ms. Banister, I have a few more
19    questions.  Other than the anxiety about health issues and
20    uncertainties related to Rocky Flats, do you believe that
21    Rocky Flats affected you in any way?
22              MR. DAVIDOFF:  Objection, vastly overbroad.
23         A.   Well, I can't answer that -- I can't answer that.
24    Rocky Flats has been such a part of -- in the background of
25    my whole -- like from 15 to four years ago that I can't say
```

0075