**10**

```
1

1                  IN THE UNITED STATES DISTRICT COURT

2                      FOR THE DISTRICT OF COLORADO

3    Civil Action No. 90-cv-00181(JLK)

4    MERILYN COOK, et al.,

5         Plaintiffs,

6    vs.

7    ROCKWELL INTERNATIONAL CORPORATION and THE DOW CHEMICAL
COMPANY,
8
Defendants.
9
_____

10
REPORTER'S TRANSCRIPT
11                              (Pretrial Conference)

12
_____

13            Proceedings before the HONORABLE JOHN L. KANE, JR.,

14   Senior Judge, United States District Court for the District
of

15   Colorado, commencing at 10:22 a.m., on the 22nd day of

16   September,  2005, in Courtroom A802, United States
Courthouse,

17   Denver, Colorado.

18

19

20

21

22

23

24     Proceeding Recorded by Mechanical Stenography, Transcription
Produced via Computer by Gwen Daniel, 901 19th Street,
25          Room A259, Denver, Colorado, 80294, (303) 629-9285
```

33

1       THE COURT: I'll get them to you as soon as I can.

2       MR. BERNICK: That's fine. The second point deals

3       with your Honor's determination on F.B.I., grand jury and plea,

4       and I know it will come up in connection with the limiting

5       instructions, because we have been working on it, and it's just

6       very difficult to figure out exactly what's going to come in.

7       And let me just put it in my own terms just very briefly.

8       THE COURT: Yeah.

9       MR. BERNICK: The jury is going to hear about the

10      F.B.I. raid, your Honor has decided that; the jury is going to

11      hear about the plea, your Honor has decided that. The F.B.I.

12      raid was predicated upon claims or potential claims that differ

13      from what's in the plea, and the jury is going to I think know

14      of that, although I'm not positive about that based on the

15      rulings.

16              Certainly the plaintiffs have said they're going to

17      introduce evidence of things that were not pled to but had been

18      done wrong, for example, the use of the incinerator -- the

19      midnight burning of the incinerator.

20              So we have an FBI raid, one of the claims was or the

```
           21      issue was the incinerator, it didn't make its way into
the
           22      plea, but the plaintiffs will introduce evidence saying
that
it
           23      actually occurred, and we can defend ourselves.  I think
that
           24      that's all pretty much clear.
           25                What becomes unclear is if the plaintiffs
introduce
```

34

```
           1       that evidence, we of course will use as very important
           2       exculpatory evidence the fact that that very issue was
           3       investigated as part of the F.B.I.'s investigation.
They know
           4       about the investigation, the jury will infer from the
fact of
           5       the investigation that the F.B.I. did something with
that,
and
           6       we want to tell them, Yeah, the F.B.I. looked at that
and said,
           7       I'm sorry, we don't believe that happened.
           8                 THE COURT:  It's not admissible.  It's not
admissible.
           9                 MR. BERNICK:  So we can't put into evidence
what the
           10      F.B.I. or the Justice Department determined --
           11                THE COURT:  No, no, and neither can the other
side
as
           12      to what they determined.  We're not going to get into
that.
           13      The fact is that there was a grand jury -- there was no
           14      indictment in this case, it was a grand jury
investigation,
           15      period.  There was a plea bargain by the corporate
entity
that
```

```
16   pled, period.  That's it.  None of that -- what the F.B.I. does
17   or doesn't do doesn't prove anything in this case.
18           MR. BERNICK:  That's fine, but then the jury learns of
19   the fact of the F.B.I. raid without learning about why or the
20   motives or what they thought was going on.  It's just the fact?
21           THE COURT:  Just the fact that there was an F.B.I. --
22   there was a fire, there was an F.B.I. investigation, there
23   were -- however long they spent on it.  I don't know how long
24   they spent on it, I don't care.
25           MR. BERNICK:  Okay, fine.  They will learn about the
```

35

```
1    fact of the grand jury, they'll learn about the plea and the
2    content of the plea, not just the fact of the plea, but the --
3            THE COURT:  No, I don't think so, I don't think so.
4    There's a lot of self-serving stuff in the content of that plea
5    bargain.  If it relates to the fact that they pled guilty to
6    certain -- to a certain charge, and they paid the fine, that's
7    admissible as a judicial admission, period.  But I'm not going
8    to get into, you know, which criminal defense attorney was able
```

```
          9    to twist the tail of the prosecution on this or what government
         10    agency was fighting with another government agency.  I don't
         11    want this thing to get that politicized.
         12            MR. BERNICK:  I don't want to take on your Honor, I
         13    just want to understand what your Honor wants to do.
         14            THE COURT:  No, I know that.
         15            MR. BERNICK:  If the plea comes in, the plea itself is
         16    a package of materials, and whatever those materials say, they
         17    say, that's what the agreement was.  Now there may be
         18    collateral materials that we're not -- as I understand it we're
         19    not going to see those collateral materials come in here, but
         20    whatever is a part of the plea is what the agreement was.  I
         21    don't know how some of it would come in and some of it would
         22    not come in.  But that's probably the least of the problems.
         23            THE COURT:  Yeah.
         24            MR. BERNICK:  All anyone is going to say is that there
         25    was a raid, not why, not what they looked at, not anything, but


36
          1    there was a raid, there was a grand jury, and then on the plea
          2    what the plea was.
          3            THE COURT:  Guilty.
```

```
 4          MR. BERNICK:  I understand, but guilty as to what?
 5          THE COURT:  Guilty as to that particular charge,
 6   period, that's it.
 7          MR. BERNICK:  Then the other side is going to say,
 8   well, there was other misconduct that wasn't a part of the
 9   plea, they can prove that up --
10          THE COURT:  If they prove that, you have the right to
11   defend on that.
12          MR. BERNICK:  Just like it was the fire, or something
13   else, in other words there's no connection --
14          THE COURT:  There's no connection with that.  You
15   know, I mean maybe I'm a little bit jaded about what
16   prosecutions of crimes are about, but after 45 years of
17   experience with it I think I have a right to be jaded about it.
18          I'm not going to expect jurors in a civil case to rely
19   upon what went on in that process.  I think the playwright
20   Jeanouilh Antigone referred to it as "the smelly kitchen of
21   politics," and I'm just not going there.
22          MR. BERNICK:  I can think of other, perhaps not quite
23   as vivid images, but I don't disagree with that.
24          THE COURT:  I'm going to address this in the jury
25   instructions and you'll have an opportunity to go over them,
```

37

1   but I haven't finished yet.

2          MR. BERNICK:  That's really what we're trying to get

3   at, because that will help us figure out what to do with the

4   limiting instructions.  We're really talking about really a

5   couple of facts about the F.B.I. raid and the grand jury, then

6   the plea, and then it's -- really in a sense everything else is

7   like all of the other incidents at the plant, if they can be

8   proven up, fine, we'll defend them.  So like the incinerator

9   they'll say, There's also this incinerator event; we'll say,

10  No, it didn't happen.

11         THE COURT:  You know, I know full well that the grand

12  jury, sometimes referred to as the "runaway grand jury," and

13  they wanted to do a lot more, and they weren't permitted to,

14  and the U.S. attorney and our then Chief Judge did something,

15  and then Judge Matsch made a ruling and said none of it comes

16  out.  So I'm not going there in this case with any of that,

17  with any of it.

18         What grand jurors thought or felt about stuff, and it

19  didn't come out, there's a place for them to go, and it's

20  called the Congress of the United States if they're unhappy

21  with that.  I'm not trying that matter here.

```
          22         MR. BERNICK:  I know with -- and our not getting into
          23    limiting instructions, but what do you think just generally
          24    when we might be able to see the instructions that are going to
          25    be --
```

38

```
          1          THE COURT:  I'm hoping to have those done and in your
          2     hands by a week from tomorrow, and I'm doing everything I can
          3     to do that and so is my staff.  It's a monumental task, the
          4     hardest part of the case for the Judge and my staff, and that's
          5     what we're working on.
          6          MR. BERNICK:  Still the idea is that the jury will
          7     have those from the beginning?
          8          THE COURT:  To the extent that we can.  I don't think
          9     I'm going to be able to have a complete set of instructions for
          10    the jury, but I'm going to give them what I can so that they
          11    can -- it will help them to understand the case.
          12         MR. BERNICK:  Thank you.
          13         MR. DAVIDOFF:  Your Honor, we viewed the rulings on
          14    the motions in limine -- and I understand your Honor's
          15    reasoning and I'm not in any measure rearguing that.  We
          16    understood the rulings on the motion in limines on the grand
```

```
a              17    jury -- so-called "runaway grand jury," I'll use that as

ruled          18    shorthand, and we understand that that's basically been

case and       19    off limits to us, which we view as dilatorious to our

been           20    our ability to combat some of the arguments that have

               21    made.

some of        22              I think your Honor has correctly responded to

is I           23    the questions Mr. Bernick raised.  What I want to avoid

would          24    don't want to have defense counsel opening the door that

for us         25    then make it necessary for me to try to reintroduce or
```

39

```
               1     to try to reintroduce --

Plea           2              THE COURT:  That's why all that stuff in that

extra          3     Agreement isn't coming in.  I'm not going to spend an

               4     three weeks going over that.

to             5              MR. DAVIDOFF:  I think we can figure out a way

               6     handle it.

personally,    7              THE COURT:  I know some of those attorneys

would want     8     they're friends of mine, and if I were in trouble I

of the         9     some of them, only I couldn't afford them, but the fact

thing          10    matter is I'm not going to get involved in that sort of

is I           11    here.  One of the prerogatives of being a senior judge
```

```
12   don't have to handle criminal cases anymore.
13            MR. DAVIDOFF:  I think I read that in your procedures,
14   and you seemed to be announcing it with a great deal of re- --
15            THE COURT:  Great deal of relief.
16            MR. DAVIDOFF:  Great deal of relief.
17            THE COURT:  I think I'm going to add class actions to
18   the next one.
19            MR. BERNICK:  There's one point, there's no way to
20   really pin this down now, it really is tough.  The issue from
21   our point of view is less what was, you know, in a formal
22   document that was negotiated, although I understand our
23   position is that it's all -- a contract is a contract, it's the
24   whole thing, but there is an independent problem of whether the
25   effect of your Honor's determination is actually to affect our


40
 1   ability to offer in actual exculpatory evidence that would
 2   otherwise be completely admissible.
 3            For example, if they had a witness to the operation of
 4   the incinerator, who said, I was there when it happened; and we
 5   have an F.B.I. agent or somebody else who was involved in the
```

```
          6     investigation who interviewed that very person and said,
well,
          7     when we went over the events they said something
completely
          8     different --
          9          THE COURT:  Let me cut to the chase.  If it
happened
         10     on the ground it's evidence.  What happened in the
darkrooms of
         11     other places, it isn't coming in.  Okay?  If you've got
         12     somebody -- if they have somebody that says, I was there
when
         13     this thing burned and I saw it at night; and then you
have
         14     somebody that says, I took a statement, and he gave a
different
         15     answer, that's appropriate impeachment, prior inconsistent, and
         16     it's admissible under the rules.
         17          MR. BERNICK:  Got it.
         18          THE COURT:  Mr. Nordberg.
         19          MR. NORDBERG:  Your Honor had asked about the
PTF,
         20     whether there would be one and how we were doing.
         21          THE COURT:  Yes.
         22          MR. NORDBERG:  And, yes, there will be one, if
only
         23     because you order it, but even if you did not order it
there
         24     would be one, and we have made I think good progress on
         25     agreeing on most of its components.  We have been
exchanging
```