Westlaw.

784 F.2d 1040                                                                                                                          Page 1
784 F.2d 1040, 19 Fed. R. Evid. Serv. 1564
**(Cite as: 784 F.2d 1040)**

▷

United States Court of Appeals,
Tenth Circuit.
Deborah Kay PERRIN, Administratrix of the Estate of
Terry Kim Perrin, Deceased,
as Administratrix and as Guardian of Chance Lee Perrin,
Sole Heir of Terry Kim
Perrin, Deceased, Plaintiff-Appellant,
v.
Donnie ANDERSON and Roland Von Schriltz,
Defendants-Appellees.
**No. 83-1714.**

Feb. 27, 1986.

Administratrix of estate brought civil rights action as administratrix and guardian of fatal shooting victim's son against state highway patrol officers involved in shooting. The United States District Court for the Western District of Oklahoma, Ralph G. Thompson, J., entered judgment for officers based on jury verdict, and administratrix appealed. The Court of Appeals, Logan, Circuit Judge, held that: (1) testimony about prior specific violent incidents involving victim and uniformed police officers was admissible as habit evidence; (2) district court did not abuse its discretion in finding shooting review board report concluding that officer acted within guidelines set forth in policies and procedures manual in shooting victim admissible; (3) defense counsel's statement that judgment against defendants was their individual judgment to be paid by them and no one else was not improper; and (4) testimony about numerous sexually explicit pornographic items strewn about victim's home that were readily accessible to his six-year-old son was relevant on damages issue.

Affirmed.

West Headnotes

**[1]** Evidence ⚷106(1)
157k106(1) Most Cited Cases
When the central issue involved in a civil case is in nature criminal, defendant may invoke exceptions to Federal Evidence Rule 404(a), providing for admission of character evidence. Fed.Rules Evid.Rule 404(a), 28 U.S.C.A.

**[2]** Evidence ⚷106(1)
157k106(1) Most Cited Cases
State highway patrol officers who were defendants in 42 U.S.C.A. § 1983 civil rights action for compensatory and punitive damages arising from allegedly wrongful shooting death were entitled to present evidence of victim's character from which jury could infer that decedent was the aggressor under Federal Evidence Rule 404(a), where verdict against officers in civil rights action would be tantamount to finding that they killed without cause. Fed.Rules Evid.Rule 404(a), 28 U.S.C.A.

**[3]** Evidence ⚷106(1)
157k106(1) Most Cited Cases
Evidence of decedent's character was relevant to issue of who was the aggressor in fight which led to fatal shooting by state highway patrol officer, for purposes of admitting evidence of decedent's character under Federal Evidence Rule 404(a), even though officers had no personal knowledge of decedent's character, so that evidence of his character had no bearing on whether officers had a reasonable fear of victim. Fed.Rules Evid.Rule 404(a), 28 U.S.C.A.

**[4]** Evidence ⚷106(5)
157k106(5) Most Cited Cases
District court should not have permitted testimony about prior specific incidents involving victim of fatal shooting and uniformed law enforcement officers under Federal Evidence Rule 404(a), providing for admissibility of character evidence, to establish that victim was the aggressor in civil rights action under 42 U.S.C.A. § 1983 based on shooting of victim by state highway patrol officer. Fed.Rules Evid.Rules 404(a), 405 note, 28 U.S.C.A.

**[5]** Evidence ⚷106(1)
157k106(1) Most Cited Cases
Where character is viewed circumstantially to prove that person acted in conformity with the character trait, only reputation and opinion are acceptable forms of proof, not evidence of specific incidents. Fed.Rules Evid.Rules 404(a), 405 note, 28 U.S.C.A.

**[6]** Evidence ⚷106(5)
157k106(5) Most Cited Cases

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

784 F.2d 1040     Page 2
784 F.2d 1040, 19 Fed. R. Evid. Serv. 1564
**(Cite as: 784 F.2d 1040)**

Character is "in issue," so as to permit use of specific incidents on direct examination only when the existence of the character trait itself will affect the rights of the parties, under Federal Evidence Rule 404(a), receding from *Hackbart v. Cincinnati Bengals, Inc., 601 F.2d 516*. Fed.Rules Evid.Rules 405, 405 note, 28 U.S.C.A.

**[7]** Evidence ⚖️138
157k138 Most Cited Cases
Limitations on methods of proving character set out in Federal Evidence Rule 405 do not apply to proof of habit admissible under Federal Evidence Rule 406. Fed.Rules Evid.Rules 405, 406, 28 U.S.C.A.

**[8]** Evidence ⚖️138
157k138 Most Cited Cases
Testimony concerning prior specific incidents is allowed under Federal Evidence Rule 406, providing for admission of habit evidence. Fed.Rules Evid.Rule 406, 28 U.S.C.A.

**[9]** Evidence ⚖️138
157k138 Most Cited Cases
State highway patrol officers who were defendants in civil rights action under 42 U.S.C.A. § 1983 for compensatory and punitive damages arising from fatal shooting demonstrated that victim repeatedly reacted with extreme aggression when dealing with uniformed police officers, so as to permit admission of specific prior incidents involving violent reactions to uniformed police officers under Federal Evidence Rule 406, permitting admission of habit evidence, where officers made offer of proof of testimony from eight police officers concerning numerous different incidents. Fed.Rules Evid.Rule 406, 28 U.S.C.A.

**[10]** Evidence ⚖️333(1)
157k333(1) Most Cited Cases
Report on fatal shooting of victim by state highway patrol officer prepared by
shooting review board consisting of state police members which was convened under auspices of the State Department of Public Safety had been prepared "pursuant to authority granted by law," for purposes of admitting the report under Federal Evidence Rule 803(8)(C), providing for admission in civil actions of reports of public offices or agencies setting forth factual findings resulting from investigation made pursuant to authority granted by law, in civil rights action under 42 U.S.C.A. § 1983 for compensatory and punitive damages for shooting death. Fed.Rules Evid.Rule 803(8)(C), 28 U.S.C.A.; 47 O.S.1981, § 2-103.

**[11]** Evidence ⚖️333(1)
157k333(1) Most Cited Cases
Report by shooting review board on fatal shooting by state highway patrol officer was admissible under Federal Evidence Rule 803(8)(C), permitting admission in civil actions of reports of public offices or agencies setting forth factual findings resulting from investigation made pursuant to authority granted by law, even though the report contained conclusions concerning propriety of patrol officers' conduct, in civil rights action under 42 U.S.C.A. § 1983 for compensatory and punitive damages for death of shooting victim. Fed.Rules Evid.Rule 803(8)(C), 28 U.S.C.A.

**[12]** Evidence ⚖️333(1)
157k333(1) Most Cited Cases
Court of Appeals was unwilling to conclude that internal investigation by state police was necessarily biased, absent specific evidence, for purposes of determining whether shooting review board report should be admitted in civil rights action under 42 U.S.C.A. § 1983 seeking compensatory and punitive damages for death of victim shot by state highway patrol officer under Federal Evidence Rule 803(8)(C), permitting admission in civil actions of reports of public offices or agencies setting forth factual findings resulting from investigation made pursuant to authority granted by law. Fed.Rules Evid.Rules 803(8)(C), 803 note, 28 U.S.C.A.

**[13]** Evidence ⚖️333(1)
157k333(1) Most Cited Cases
Fact that investigation was conducted by public agency internally should affect weight to be given report of the shooting review board, rather than its admissibility, for purposes of civil rights action under 42 U.S.C.A. § 1983 seeking compensatory and punitive damages for death of victim shot by state highway patrol officer, under Federal Evidence Rule 803(8)(C), permitting admission of reports of public offices or agencies in civil actions setting forth factual findings resulting from investigation made pursuant

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case No. 1:90-cv-00181-JLK   Document 1513-5   filed 10/17/05   USDC Colorado   pg 3 of 9

Westlaw.

784 F.2d 1040                                                                                           Page 3
784 F.2d 1040, 19 Fed. R. Evid. Serv. 1564
**(Cite as: 784 F.2d 1040)**

to authority granted by law. Fed.Rules Evid.Rules 803(8)(C), 803 note, 28 U.S.C.A.

**[14]** Evidence 333(1)

157k333(1) Most Cited Cases

District court did not abuse its discretion in finding report of shooting review board admissible in civil rights action under 42 U.S.C.A. § 1983 seeking punitive and compensatory damages for death of victim who was shot by state highway patrol officer under Federal Evidence Rule 803(8)(C), permitting admission of reports of public offices or agencies in civil action setting forth factual findings resulting from investigation pursuant to authority granted by law. Fed.Rules Evid.Rules 803(8)(C), 803 note, 28 U.S.C.A.

**[15]** Federal Courts 896.1

170Bk896.1 Most Cited Cases

(Formerly 170Bk896)

Cautionary instruction that shooting review board report was an agency hearing of its own personnel and for its own purpose and was to have no determinative effect on any issue in the case mitigated any prejudice which admission of report concluding that actions of state highway patrol officer who fatally shot victim were proper might have had in civil rights action under 42 U.S.C.A. § 1983 seeking punitive and compensatory damages for death of victim. Fed.Rules Evid.Rules 803(8)(C), 803 note, 28 U.S.C.A.

**[16]** Civil Rights 1412

78k1412 Most Cited Cases

(Formerly 78k241, 78k13.13(2))

Ultimate source of payment of damages was relevant in civil rights action under 42 U.S.C.A. § 1983 seeking punitive damages for death of victim shot by state highway patrol officer; jury had to know the impact award would have on defendant to properly assess punitive damages.

**[17]** Federal Civil Procedure 1973

170Ak1973 Most Cited Cases

State highway patrol officers' counsel's statement that action was against the patrol officers personally, and not against the state or anyone else, and that judgment against officers was individual judgment to be paid by them and no one else, was not improper, in civil rights action under 42 U.S.C.A. § 1983 seeking punitive damages for death of victim shot by state highway patrol officer.

**[18]** Civil Rights 1412

78k1412 Most Cited Cases

(Formerly 78k241, 78k13.13(2))

Testimony about numerous sexually explicit pornographic items strewn about home of victim who was fatally shot that were readily accessible to his six-year-old son, and about hand-drawn pictures signed by victim depicting oral sodomy and nude women with straps on them that were in every room but the kitchen and one bedroom was relevant on damages issue in civil rights action under 42 U.S.C.A. § 1983 seeking compensatory and punitive damages on behalf victim's son against state highway patrol officers involved in fatal shooting.

**[19]** Civil Rights 1462

78k1462 Most Cited Cases

(Formerly 78k271, 78k13.17(3))

Value of relationship of fatal shooting victim with his child was not necessarily diminished because victim exposed his child to pornography, for purposes of damages to be awarded in civil rights action under 42 U.S.C.A. § 1983 based on fatal shooting of victim by state highway patrol officer.

**\*1042** Jack L. Shears of Shears & Shears, Ponca City, Okl., for plaintiff-appellant.

Stephen Jones and Susan McNaughton of Jones, McNaughton & Blakley, Enid, Okl., for defendants-appellees.

Before LOGAN, SETH and SEYMOUR, Circuit Judges.

**\*1043** LOGAN, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R.App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

This is a 42 U.S.C. § 1983 civil rights action for compensatory and punitive damages arising from the death of Terry Kim Perrin. Plaintiff, administratrix of Perrin's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



784 F.2d 1040 Page 4
784 F.2d 1040, 19 Fed. R. Evid. Serv. 1564
**(Cite as: 784 F.2d 1040)**

estate and guardian of his son, alleged that defendants, Donnie Anderson and Roland Von Schriltz, members of the Oklahoma Highway Patrol, deprived Perrin of his civil rights when they shot and killed him while attempting to obtain information concerning a traffic accident in which he had been involved. The jury found in favor of defendants.

In this appeal plaintiff contends that the district court erred in admitting: (1) testimony by four police officers recounting previous violent encounters they had had with Perrin; (2) a report by the Shooting Review Board of the Oklahoma Department of Public Safety; (3) a defense attorney's statement in closing argument that defendants would be personally liable for any judgment; and (4) evidence that Perrin's home contained many pornographic drawings, sketches, books, and materials.

A simple highway accident set off the bizarre chain of events that culminated in Perrin's death. The incident began when Perrin drove his car into the back of another car on an Oklahoma highway. After determining that the occupants of the car he had hit were uninjured, Perrin walked to his home, which was close to the highway.

Trooper Von Schriltz went to Perrin's home to obtain information concerning the accident. He was joined there by Trooper Anderson. They knocked on and off for ten to twenty minutes before persuading Perrin to open the door. Once Perrin opened the door, the defendant officers noticed Perrin's erratic behavior. The troopers testified that his moods would change quickly and that he was yelling that the accident was not his fault. Von Schriltz testified that he sensed a possibly dangerous situation and slowly moved his hand to his gun in order to secure its hammer with a leather thong. This action apparently provoked Perrin who then slammed the door. The door bounced open and Perrin then attacked Anderson. A fierce battle ensued between Perrin and the two officers, who unsuccessfully applied several chokeholds to Perrin in an attempt to subdue him. Eventually Anderson, who testified that he feared he was about to lose consciousness as a result of having been kicked repeatedly in the face and chest by Perrin, took out his gun, and, without issuing a warning, shot and killed Perrin. Anderson stated that he was convinced Perrin would have killed both officers had he not fired.

I

At trial the court permitted four police officers to testify that they had been involved previously in violent encounters with Perrin. These officers testified to Perrin's apparent hatred or fear of uniformed officers and his consistently violent response to any contact with them. For example, defendants presented evidence that on earlier occasions Perrin was completely uncontrollable and violent in the presence of uniformed officers. On one occasion he rammed his head into the bars and walls of his cell, requiring administration of a tranquilizer. Another time while barefoot, Perrin kicked loose a porcelain toilet bowl that was bolted to the floor. One officer testified that he encountered Perrin while responding to a public drunk call. Perrin attacked him, and during the following struggle Perrin tried to reach for the officer's weapon. The officer and his back-up had to carry Perrin handcuffed, kicking and screaming, to the squad car, where Perrin then kicked the windshield out of the car. Another officer testified that Perrin attacked him after Perrin was stopped at a vehicle checkpoint. During the ensuing struggle three policemen were **\*1044** needed to subdue Perrin, including one 6'2" officer weighing 250 pounds and one 6'6" officer weighing 350 pounds.

Defendants introduced this evidence to prove that Perrin was the first aggressor in the fight--a key element in defendants' self-defense claim. The court admitted the evidence over objection, under Federal Rules of Evidence provisions treating both character and habit evidence. Plaintiff contends this was error.

A

Section 404(a) of the Federal Rules of Evidence carefully limits the circumstances under which character evidence may be admitted to prove that an individual, at the time in question, acted in conformity with his character. [FN1] This rule is necessary because of the high degree of prejudice that inheres in character evidence. *See* Fed.R.Evid. 404 advisory committee note. In most instances we are unwilling to permit a jury to infer that an individual performed the alleged acts based on a particular character trait. The exceptions to Rule 404(a)'s general ban on the use of character evidence permit criminal defendants to offer

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



evidence of their own character or of their victim's character. Fed.R.Evid. 404(a)(1)-(2). Not until such a defendant takes this inital step may the prosecution rebut by offering contrary character evidence. *Id.* advisory committee note. Although the Advisory Committee on the Rules of Evidence has observed that this rule "lies more in history and experience than in logic," *id.,* it does seem desirable to afford a criminal defendant every opportunity to exonerate himself. [FN2] In offering such potentially prejudicial testimony, the defendant of course proceeds at his own risk. Once he offers evidence of his or his victim's character, the prosecution may offer contrary evidence. Fed.R.Evid. 404(a)(1)-(2).

> FN1. Rule 404(a) provides:
> "(1) **Character Evidence Generally.** Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
> (1) **Character of accused.** Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;
> (2) **Character of victim.** Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor; ...."

> FN2. We agree with Professor Uviller's explanation of why a criminal defendant is entitled to use character evidence to a greater extent than a civil defendant:
> "About the best one can do with this puzzle is to guess that somewhere, somehow the rule was relaxed to allow the criminal defendant with so much at stake and so little available in the way of conventional proof to have special dispensation to tell the factfinder just what sort of person he really is."
> Uviller, *Evidence of Character to Prove Conduct: Illusion, Illogic, and Injustice in the Courtroom,* 130 U.Pa.L.Rev. 845, 855 (1982).

[1] Although the literal language of the exceptions to Rule 404(a) applies only to criminal cases, we agree with the district court here that, when the central issue involved in a civil case is in nature criminal, the defendant may invoke the exceptions to Rule 404(a). *Accord Carson v. Polley,* 689 F.2d 562, 575-76 (5th Cir.1982) (exceptions to Rule 404(a) apply in 42 U.S.C. § 1983 action alleging assault and battery); *Crumpton v. Confederation Life Insurance Co.,* 672 F.2d 1248, 1253 (5th Cir.1982) (exceptions to Rule 404(a) apply in civil action focusing on whether a rape had occurred); *see also Hackbart v. Cincinnati Bengals, Inc.,* 601 F.2d 516, 525-26 (10th Cir.) (considering Rule 404(a) exceptions in civil action examining whether plaintiff was a "dirty football player"), *cert. denied,* 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 188 (1979).

[2][3] In a case of this kind, the civil defendant, like the criminal defendant, stands in a position of great peril. *See* E. Cleary, *McCormick on Evidence* § 192, at 570-71 (3d ed. 1984) (hereinafter *McCormick* ). A verdict against the defendants in this case would be tantamount to finding that they killed Perrin without cause. The **\*1045** resulting stigma warrants giving them the same opportunity to present a defense that a criminal defendant could present. Accordingly we hold that defendants were entitled to present evidence of Perrin's character from which the jury could infer that Perrin was the aggressor. The self-defense claim raised in this case is not functionally different from a self-defense claim raised in a criminal case. [FN3]

> FN3. Plaintiff also argues that, because defendants had no personal knowledge of Perrin's character, evidence of his character was irrelevant. Although plaintiff is correct that this evidence has no bearing on whether defendants had a reasonable fear of Perrin, it is directly relevant to the issue of who was the aggressor in the fight. *See, e.g., United States v. Burks,* 470 F.2d 432, 434-35 & n. 4 (D.C.Cir.1972).

[4] Although we agree with the district court that character evidence was admissible in this case, we hold that the district court should not have permitted testimony about

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case No. 1:90-cv-00181-JLK    Document 1513-5    filed 10/17/05    USDC Colorado    pg 6 of 9

Westlaw.

784 F.2d 1040                                                                                                    Page 6
784 F.2d 1040, 19 Fed. R. Evid. Serv. 1564
**(Cite as: 784 F.2d 1040)**

prior specific incidents.

Federal Rule of Evidence 405 establishes the permissible methods of proving character:

"(a) **Reputation or opinion.** In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

(b) **Specific instances of conduct.** In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct."

Testimony concerning specific instances of conduct is the most convincing, of course, but it also "possesses the greatest capacity to arouse prejudice, to confuse, to surprise and to consume time." Fed.R.Evid. 405 advisory committee note. Rule 405 therefore concludes that such evidence may be used only when character is in issue "in the strict sense." *Id.*

Character is directly in issue in the strict sense when it is "a material fact that under the substantive law determines rights and liabilities of the parties." *McCormick § 187, at 551*. In such a case the evidence is not being offered to prove that the defendant acted in conformity with the character trait; instead, the existence or nonexistence of the character trait itself "determines the rights and liabilities of the parties." *Id.* at 552 n. 5. In a defamation action, for example, the plaintiff's reputation for honesty is directly at issue when the defendant has called the plaintiff dishonest. *See* Uviller, *Evidence of Character to Prove Conduct: Illusion, Illogic, and Injustice in the Courtroom,* 130 U.Pa.L.Rev. 845, 852 (1982).

[5][6] Defendants here offered character evidence for the purpose of proving that Perrin was the aggressor. "[E]vidence of a violent disposition to prove that the person was the aggressor in an affray" is given as an example of the circumstantial use of character evidence in the advisory committee notes for Fed.R.Evid. 404(a). When character is used circumstantially, only reputation and opinion are acceptable forms of proof. Fed.R.Evid. 405 advisory committee note. [FN4] We therefore find that the district court erroneously relied upon the character evidence rules in permitting testimony about specific violent incidents involving Perrin.

> FN4. In *Hackbart v. Cincinnati Bengals, Inc.,* we intimated that character would be at issue in determining who was the aggressor in a fight. 601 F.2d at 526. We now think this statement was inaccurate. Character is "in issue" only when the existence of the character trait itself will affect the rights of the parties. For examples of when character is in issue, see *McCormick § 187, at 551-52* & nn. 1-4.

B

Character and habit are closely akin. The district court found, alternatively, that the testimony recounting Perrin's previous violent encounters with police officers was *1046 admissible as evidence of a habit under Fed.R.Evid. 406. Here, we concur.

[7][8] Rule 406 provides:

"Evidence of the habit of a person ..., whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person ... on a particular occasion was in conformity with the habit...."

The limitations on the methods of proving character set out in Rule 405 do not apply to proof of habit. Testimony concerning prior specific incidents is allowed. *See McCormick § 195, at 577*.

[9] This court has defined "habit" as "a regular practice of meeting a particular kind of situation with a certain type of conduct, or a reflex behavior in a specific set of circumstances." *Frase v. Henry,* 444 F.2d 1228, 1232 (10th Cir.1971) (defining "habit" under Kansas law). The advisory committee notes to Rule 406 state that, "[w]hile adequacy of sampling and uniformity of response are key factors, precise standards for measuring their sufficiency for evidence purposes cannot be formulated." Fed.R.Evid. 406 advisory committee note. That Perrin might be proved to have a "habit" of reacting violently to uniformed police officers seems rather extraordinary. We believe, however, that defendants did in fact demonstrate that Perrin repeatedly

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



784 F.2d 1040 Page 7
784 F.2d 1040, 19 Fed. R. Evid. Serv. 1564
**(Cite as: 784 F.2d 1040)**

reacted with extreme aggression when dealing with uniformed police officers.

Four police officers testified to at least five separate violent incidents, and plaintiff offered no evidence of any peaceful encounter between Perrin and the police. Five incidents ordinarily would be insufficient to establish the existence of a habit. *See* Reyes v. Missouri Pacific Railway Co., 589 F.2d 791, 794-95 (5th Cir.1979) (four convictions for public intoxication in three and one-half years insufficient to prove habit). But defendants here had made an offer of proof of testimony from eight police officers concerning numerous different incidents. To prevent undue prejudice to plaintiff, the district court permitted only four of these witnesses to testify, and it explicitly stated that it thought the testimony of the four officers had been sufficient to establish a habit. *Id.* We hold that the district court properly admitted this evidence pursuant to Rule 406. There was adequate testimony to establish that Perrin invariably reacted with extreme violence to any contact with a uniformed police officer.

II

Plaintiff asserts that the district court should not have admitted a report by the Shooting Review Board. This report concluded that there was "no doubt that [Anderson] acted within the guidelines set forth in the Policies and Procedures Manual." The Shooting Review Board consisted of five members of the Oklahoma State police and was convened under the auspices of the Oklahoma Department of Public Safety. In reaching its conclusion the Board interviewed defendants and their superior officers.

The district court admitted the shooting report pursuant to Fed.R.Evid. 803(8)(C). Rule 803(8) admits
   "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... (C) in civil actions ..., factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."

[10] Several factors must be addressed in determining the applicability of Rule 803(8)(C). First, the report must have been prepared "pursuant to authority granted by law." This requirement helps to ensure that the report is reliable. *See* Franklin v. Skelly Oil Co., 141 F.2d 568, 572 (10th Cir.1944). The Shooting Review Board was a properly constituted body of the Department of Public Safety pursuant to Okla.Stat.Ann. tit. 47, § 2-103 (Commissioner of Public Safety has authority to organize department in manner he "may deem necessary").

[11] Second, the rule applies only to "factual findings." Courts have construed **\*1047** this term broadly, however, and regularly have admitted conclusions and opinions found in evaluative reports of public agencies. *See, e.g.,* Wilson v. Beebe, 743 F.2d 342, 346-47 (6th Cir.1984) (admitting report by police captain that officer's conduct was contrary to department training); Litton Systems, Inc. v. American Telephone and Telegraph Co., 700 F.2d 785, 818-19 (2d Cir.1983) (admitting findings of FCC that tariffs were "unreasonable" and "discriminatory"), *cert. denied,* 464 U.S. 1073, 104 S.Ct. 984, 79 L.Ed.2d 220 (1985); *see also* Zenith Radio Corp. v. Matsushita Electric Industrial Co., 505 F.Supp. 1125, 1144-45 (E.D.Pa.1980) (reports "rendering normative judgments or opinions" admissible). Therefore, although the Shooting Report contained conclusions concerning the propriety of defendants' conduct, the report comes within the scope of Rule 803(8)(C). [FN5]

> FN5. *See generally* Zenith Radio Corp., 505 F.Supp. at 1143-44 & n. 9 (discussing legislative history concerning admissibility of evaluative reports).

Finally, Rule 803(8)(C) also declares that circumstances must not indicate the report is untrustworthy. We have stated that, in determining whether an evaluative report is trustworthy, the court should consider at least the following factors: the timeliness of the investigation; the special skill or experience of the investigator; whether a hearing was held and the level at which it was conducted; and any possible motivation problems in the preparation of the report. Denny v. Hutchinson Sales Corp., 649 F.2d 816, 821 (10th Cir.1981) (citing Fed.R.Evid. 803(8)(C) advisory committee note).

[12][13][14] Plaintiff here has not offered any convincing evidence that this report is untrustworthy. It was prepared

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



784 F.2d 1040                                                                                                                  Page 8
784 F.2d 1040, 19 Fed. R. Evid. Serv. 1564
**(Cite as: 784 F.2d 1040)**

approximately five weeks after the incident by high-ranking officers. Hearings, although not adversarial, were held. Moreover we are unwilling to conclude that an internal investigation is necessarily biased, absent specific evidence. That an investigation was conducted internally should affect the weight to be given the report, not its admissibility. The district court therefore did not abuse its discretion in finding this report admissible. See *Nulf v. International Paper Co., 656 F.2d 553, 563 (10th Cir.1981)* (admission of report is within trial court's discretion); *Franklin v. Skelly Oil Co., 141 F.2d at 572* (trial court is "first and best judge ... of trustworthiness and reliability").

[15] In addition, the district court instructed the jury that the report was "an agency hearing of its own personnel and for its own purpose" and was to have no "determinative effect on any issue in the case." R. VI, 492. We believe that this cautionary instruction mitigated any prejudice the report may have had. See *Litton Systems, Inc., 700 F.2d at 818-19; see also* 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(8)[03], at 803-257 (1985) (judge may caution jurors against substituting official's judgment for their own).

III

Plaintiff's third claim of error is based on a defense attorney comment during closing argument. Counsel stated:
> "I think that there is one matter that I would like to leave you with. My clients are being asked to account in money damages. And incidentally, this is an action against them, personally, not against the State of Oklahoma, not against anyone else. A judgment against them is their individual judgment to be paid by them and no one else."

R. VI, 510. Plaintiff claims that this remark was equivalent to an assertion that defendants were uninsured.

Statements that a defendant in a negligence action is insured or uninsured typically have been forbidden. See *Fed.R.Evid. 411*; *McCormick § 201, at 593*. Such remarks are irrelevant to the issue of whether a defendant acted negligently or otherwise wrongfully.

[16][17] Here, however, punitive damages were requested; the ultimate source ***1048** of payment therefore is relevant. See *Rodgers v. Fisher Body Division, General Motors Corp., 739 F.2d 1102, 1105 (6th Cir.1984)* (approving district court holding that remarks concerning defendant's size and wealth are relevant when punitive damages are at issue). The jury must know the impact an award will have on the defendant to properly assess punitive damages. See *City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 269, 101 S.Ct. 2748, 2761, 69 L.Ed.2d 616 (1980)* (punitive damages in *42 U.S.C. § 1983* action should be based on official's "personal financial resources"). We therefore hold that defendants' counsel's remarks were not improper.

IV

[18] Plaintiff's final assertion is that the trial court erred in admitting testimony about numerous sexually explicit pornographic items that were strewn about Perrin's home and were readily accessible to his six-year-old son. Defendants offered evidence that approximately fifty magazines containing pictures of "kinky-type sex" were in the bathroom, a bedroom, and the living room. There also was evidence that hand-drawn pictures signed by Perrin depicting oral sodomy and nude women with straps on them were in every room but the kitchen and one bedroom. Plaintiff contends that this testimony was irrelevant, and, even if relevant, unduly prejudicial. Defendants counter that this testimony was permissible rebuttal to plaintiff's contention that Perrin was a good father and that his son's loss of his companionship should be valued by the jury at $1,000,000.

We agree with defendants that this testimony was relevant on the damages issue. In determining the amount to which Perrin's son was entitled, the jury properly could have considered the nature of the influence Perrin was having on his son. *See, e.g., Smith v. United States, 587 F.2d 1013, 1017 (3d Cir.1978)* (admitting evidence that defendant's mental condition precluded award of damages for loss of services and nurture); *Solomon v. Warren, 540 F.2d 777, 788 (5th Cir.1976)* (evidence must be admitted that deceased parent furnished physical, intellectual, and moral training to child); *In re Paris Air Crash of March 3, 1974, 423 F.Supp. 367, 373 (C.D.Cal.1976)* (instructing jury to consider factors such as the disposition of the decedent in assessing loss to child).

[19] We do not hold, however, that because Perrin exposed his child to pornography, the value of his relationship to the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



784 F.2d 1040 Page 9
784 F.2d 1040, 19 Fed. R. Evid. Serv. 1564
**(Cite as: 784 F.2d 1040)**

child diminished. We only state that it was within the discretion of the trial judge to admit such evidence. *See Blim v. Western Electric Company, Inc., 731 F.2d 1473, 1477 (10th Cir.1984)* (trial court has broad discretion to balance probity versus prejudice). Regarding the possible prejudice to plaintiff's case, we would be more convinced that this evidence might have prejudiced plaintiff if the jury had found in plaintiff's favor but rendered only a small award.

AFFIRMED.

784 F.2d 1040, 19 Fed. R. Evid. Serv. 1564

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.