**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-181-JLK

MERILYN COOK, *et al.*,

        Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

        Defendants.

---

**DEFENDANTS' MOTION TO BAR TESTIMONY BY WES MCKINLEY**

---

According to plaintiffs' most recent witness list (submitted October 12), plaintiffs seek to elicit testimony from Wes McKinley on two subjects: (1) his experiences as the "foreman of the grand jury that investigated Rockwell;" and (2) his "efforts to pass a bill requiring full disclosure of the potential radiation risks to visitors of the future Rocky Flats wildlife refuge." (Ex. A, Draft PTO, at 24) However, during his deposition, McKinley refused to respond to basic questions about either of these subjects, on the ground that his counsel (counsel for plaintiffs here) had prohibited him from answering because of Federal Rule of Criminal Procedure 6(e) (the grand jury secrecy rule). *See* Exhibit B, Examples of Questions That McKinley Refused to Answer or Could Not Answer. It is obvious that what plaintiffs want McKinley to tell the jury is: "The clean-up effort at Rocky Flats is flawed, and there are continuing health risks at Rocky

Flats, but because of Rule 6(e) I cannot tell you why I believe this." If allowed, plaintiffs' strategic use of Rule 6(e) would prevent defendants from conducting any meaningful cross-examination of McKinley.

Moreover, McKinley's proposed testimony regarding "his efforts *to pass a bill* requiring full disclosure of the potential radiation risks to visitors of the future Rocky Flats wildlife refuge," and "*lobbying efforts* by DOE and/or related entities," necessarily involves *politics*. The Court has repeatedly ruled that politics will not be allowed into evidence in this trial. 9/22/05 H'rg Tr. at 37 ("smelly kitchen of politics" is excluded); *see also* Ex. C, McKinley Dep. 13:7-11 (testifying that, following alleged efforts of DOE and Kaiser Hill (but not Dow and Rockwell) to defeat McKinley's proposed [Rocky Flats] legislation in 2005, McKinley had told a lobbyist "that he could go to [Kaiser Hill's CEO Nancy Tour] and deliver a message to her from me, that the rodeo had just started, and she better strap her tits down tight and take a deep breath and get ready to ride, because it was going to be a lot more fun next year").

## I. DURING HIS DEPOSITION, MCKINLEY REPEATEDLY REFUSED TO ANSWER BASIC QUESTIONS ABOUT THE ONLY TWO SUBJECTS HE IS BEING OFFERED TO TESTIFY ABOUT

Following the instructions of plaintiffs' counsel and citing Rule 6(e), McKinley repeatedly refused to answer basic questions about the only two matters that plaintiffs have indicated he will testify about at trial: the "grand jury" investigation and his bill "requiring full disclosure of the potential radiation risks to visitors of the future Rocky Flats wildlife refuge." (Ex. A).

McKinley's invocation of Rule 6(e) was extremely broad. For example, McKinley refused to testify about *any* "wrongdoing by Dow or Rockwell":

> Q.   Mr. McKinley, you will not provide me with information about anything you believe to be wrongdoing by Dow or Rockwell, because you believe that doing so would violate Rule 6(e); is that correct?
>
> A.   On advice of my counsel, that's correct.
>
> Q.   Okay.  Have you -- and your counsel is Mr. Nordberg?
>
> A.   (Deponent nodded head up and down.)  (Ex. C, McKinley Dep. 91:9-16)

Other subjects that Mr. McKinley could not or would not testify about at his deposition (examples of which are set forth in the chart attached as Exhibit B) include the following:

- Exposure to any class member from Rocky Flats contaminants (Ex. B, Row 2; Ex. C, McKinley Dep. 89:10-17)

- Health effects to people living off-site from Rocky Flats (Ex. B, Row 3; Ex. C, McKinley Dep. 118:1-6)

- Any "cover-up" of the grand jury investigation by Dow, Rockwell, the Department of Justice or the Department of Energy, whether under Rule 6(e) or otherwise (Ex. B, Row 4; Ex. C, McKinley Dep. 94:34-37; 107:23-108:22)

- Whether Rockwell was the subject of the grand jury's investigation.  (Ex. B, Row 5; Ex. C, McKinley Dep. 78:21-79:24)

- Whether Dow was the subject of the grand jury's investigation. (Ex. B, Row 5; Ex. C, McKinley Dep. 78:21-79:24)

- The "subject matters" of the grand jury's investigation.  (Ex. B, Row 6; Ex. C, McKinley Dep. 80:2-7)

- The basis for McKinley's proposed legislation regarding disclosure of continuing health risks at Rocky Flats, including the basis for McKinley's contention that samples that have been taken in connection with the clean-up are "not accurate."  (Ex. B, Row 6-10, Ex. C, McKinley Dep.80:2-80:7; 121:17-124:6; 125:13-19; 128:6-16; 141:5-11)

3

Accordingly, McKinley should be barred from testifying about any of these subjects (which together form the totality of the subjects about which McKinley is being offered to testify) at trial.

## II. MCKINLEY SHOULD NOT BE ALLOWED TO TESTIFY ABOUT HIS PROPOSED LEGISLATION REGARDING ROCKY FLATS

McKinley should not be allowed to testify about his proposed legislation regarding Rocky Flats. That legislation seeks to warn future visitors to the Rocky Flats Wildlife Refuge of continuing radiation hazards at the former plant site. (Ex. C, McKinley Dep. 121:17-124:6) However, any discussion of "continuing risk" is incomplete and misleading without a discussion of the voluminous amount of sampling that has been done at the plant in recent years (by the Colorado Department of Health and others), to ensure that no continuing health risk exists. (Ex. D, McKinley Dep. Ex. 13) (discussing extensive sampling done by the Colorado Department of Health since the mid-1990's).

During his deposition, McKinley testified that such clean-up-related sampling by the Colorado Department of Health is "inaccurate." However, McKinley claimed that Rule 6(e) prohibited him from disclosing *why* he believed that such sampling was "inaccurate":

> Q. Now, you proposed a bill in the state legislature regarding Rocky Flats in 2004, correct?
>
> A. Yes.
>
> Q. And can you tell me -- can you summarize for me what that bill is about?
>
> A. We put signs at Rocky Flats.
>
> Q. And what were the signs to be about?

4

> A.   History, the cleanup, the contamination, and the dangers.
>
> . . .
>
> Q.   Do you have any reason to believe that the samples taken by the Colorado Department of Health in connection with the cleanup are not accurate?
>
> A.   Yes.
>
> Q.   And what's the basis for your testimony that the samples taken by the Colorado Department of Public Health and Environment in connection with the Rocky Flats cleanup are not accurate?
>
> A.   Can't talk about that.
>
> Q.   Why can't you talk about the basis for your view that the samples taken by the Colorado Department of Public Health and Environment are not accurate?
>
> A.   Because that may go into Rule 6(e). I've been advised by counsel not to go there. (Ex. C, McKinley Dep. 121:17-124:6)

The threshold reason why McKinley should not be allowed to testify about his Rocky Flats bill is not because of Rule 6(e), but because he cannot offer admissible (i.e., non-hearsay) testimony on any "continuing health risk" from Rocky Flats. McKinley testified that he was not an expert on plutonium, radiation, or radiation safety standards. (Ex. C, McKinley Dep. 122:16-123:4; 136:13-137:5)  Moreover, McKinley testified that the only basis for his view that the clean-up standard currently in effect at Rocky Flats (50 picocuries per gram) was unsafe was hearsay:  namely, what he had been "told" by individuals not employed by Dow or Rockwell. (Ex. C, McKinley Dep. 135:22-136:12)

Given the hearsay basis of McKinley's proposed testimony regarding the Rocky Flats clean-up and sampling, and given McKinley's repeated invocations of Rule 6(e) during his

5

deposition as a basis not to answer (*see* Ex. B), McKinley should not be allowed to testify at trial regarding his proposed legislation to warn visitors about alleged continuing health risks at Rocky Flats.

### III. A SECOND REASON THAT MCKINLEY SHOULD NOT BE ALLOWED TO TESTIFY REGARDING HIS PROPOSED ROCKY FLATS LEGISLATION IS THAT SUCH LEGISLATION IS INHERENTLY POLITICAL

As discussed above, plaintiffs have indicated that they seek to elicit testimony from McKinley regarding his efforts to pass legislation relating to the clean-up of Rocky Flats, as well as testimony regarding "lobbying efforts by DOE and/or related entities." (Ex. E)  Such testimony is "political," and therefore is barred by this Court's *in limine* rulings. (9/22/05 H'rg Tr. at 37)  Moreover, any such testimony by McKinley would be far more prejudicial than probative, as demonstrated by McKinley's deposition testimony on the subject:

> Q.   [T]ell me what you know about any lobbying efforts by DOE to defeat your bill.
>
> A.   Okay.  I won't reveal the name.  If it's public record, you can look at it.  A lobbyist whom I have a lot of respect for come in and told me that he had been retained to kill my bill.  It was very honorable of him.  And then he wanted to know if I wanted to meet with Nancy Tour, the CEO of Kaiser Hill.  I said, sure, I'll meet with anybody.  And that was about all that was said then.  And it was a very good lobbying job for him.
>
> And then later, on a bill that he lobbied against -- and I was against it also -- he came and told me what side he was on.  So it was kind of unusual that here this guy was against one of my bills and then for the other.  But, you know, my feeling is still the same; he was respected, and he respected me.
>
> Then when the bill died in appropriations -- he was there and told me later that DOE and Kaiser Hill people were in appropriations.  And when it was over and the bill had died by a vote of one, they were quite happy.  And Nancy Tour was quite excited about the fact that my bill had been killed.

>And he said he told her that probably it wasn't over.  So I told him that he could go to Nancy [Tour, Kaiser Hill's CEO] and deliver a message to her from me, that the rodeo had just started, and she better strap her tits down tight and take a deep breath and get ready to ride, because it was going to be a lot more fun next year. (Ex. C, McKinley 12:9-13:11)

### IV. MCKINLEY SHOULD NOT BE ALLOWED TO TESTIFY:  "I CANNOT TELL YOU ABOUT THINGS THAT HAPPENED BEFORE THE GRAND JURY BECAUSE OF RULE 6(E)"

There are at least six reasons that Mr. McKinley should not be allowed to tell the jury:  "I cannot tell you about things that happened before the grand jury because of Rule 6(e)" (or similar testimony to that effect).

*First*, plaintiffs' and McKinley's disclosure of events that occurred before the grand jury is selective.  McKinley has authored a book, The Ambushed Grand Jury, concerning his experiences as a grand juror.  Plaintiffs' counsel has stated that this book "could be germane to the market perceptions in this case."  (Ex. C, McKinley Dep. 10:12-15)  In that book, McKinley repeatedly discussed matters that occurred before the grand jury.  Ambushed Grand Jury, p. 114 ("We learned about this in the grand jury room."); p. 139 ("Here's what happened in grand jury chambers."); (Ex. C, McKinley Dep. 71:18-21) ("Q.   So your book, The Ambushed Grand Jury, relies on a journal you kept during the grand jury sessions; is that correct?  A.   Yes.").  Yet, during his deposition, McKinley refused to testify about the same subjects that are discussed at great length in his book. *Compare* Ambushed Grand Jury, p. 139 ("Here's what happened in grand jury chambers. . . . ."); *with* Ex. C, McKinley Dep. 92:2-4 ("Q.   And you will not disclose to me anything that occurred before Grand Jury 89-2, correct?  A.   That's right.")

7

Plaintiffs and McKinley should not be allowed to disclose matters occurring before the grand jury when they believe it to be in their interests to do so, and not disclose such matters when doing so would be adverse to their interests.

***Second***, the threshold reason why McKinley should not be allowed to testify about his grand jury experiences is not because of Rule 6(e), but rather because no such testimony would be allowed under the hearsay rule. During McKinley's deposition, plaintiffs' counsel prevented McKinley from disclosing whether he had any non-hearsay basis to testify about events that occurred before the grand jury:

> Q.  In the course of your service as a grand juror, you learned about Rocky Flats through what you were told by someone or through documents that you saw; is that correct?
>
> MR. NORDBERG:  Instruct the witness not to answer.  (Ex. C, McKinley 67:25-68:5)

Thus, the threshold reason why Mr. McKinley cannot provide testimony about his experiences as a grand juror is not that he is prevented from doing so by Rule 6(e), ***but rather that he has no admissible (i.e., non-hearsay) testimony to offer***. Only if it were first established that McKinley could offer admissible, non-hearsay testimony about his grand jury service (a matter which defendants were prevented from exploring at Mr. McKinley's deposition) would it make any sense to tell the jury that Rule 6(e) was preventing McKinley from testifying to anything.

***Third***, any testimony by McKinley about his grand jury experiences not only would be inadmissible hearsay, but also would violate this Court's motion in limine rulings. Those rulings would prevent McKinley from talking about his grand jury experiences regardless of whether Rule 6(e) applied or not.

8

*Fourth*, plaintiffs should not be allowed to use Rule 6(e) to prevent defendants from conducting effective cross-examination.  Plaintiffs seek to elicit testimony from Mr. McKinley that Rocky Flats is a continuing health risk, and that the sampling currently being conducted at Rocky Flats is not accurate.  (Ex. C, McKinley Dep. 123:18-124:6)  When defendants seek to probe Mr. McKinley's testimony on cross-examination, however (*e.g.*, the basis for his view that clean-up sampling is not accurate), plaintiffs will invoke Rule 6(e).  (Ex. C, McKinley Dep. 123:18-124:6)  Thus, allowing McKinley to testify while repeatedly invoking Rule 6(e) will violate defendants' right to conduct a meaningful cross-examination.

*Fifth*, allowing McKinley to testify while invoking Rule 6(e) will result in the jury drawing an adverse (and unjustified) inference against defendants.  The jury will infer that, if McKinley would have been allowed to testify about his grand juror experiences, that testimony would have been adverse to defendants.  Such an inference is unwarranted, particularly where any testimony by McKinley about his grand jury experiences would be hearsay, and where defendants are not allowed to cross-examine McKinley on these subjects.

*Sixth*, defendants have nothing to do with the existence or application of Rule 6(e) (which was enacted in 1946, and is based on common-law rules dating from the Fourteenth Century), and thus the jury should not be permitted to draw an adverse inference against defendants based upon its application here.

**V.      IF THE COURT DOES NOT BAR MCKINLEY'S TESTIMONY, IT SHOULD ORDER ALTERNATIVE RELIEF.**

As discussed above, McKinley should be barred from testifying for two separate and independent reasons: (1) plaintiffs refused to allow McKinley to answer basic questions during his deposition concerning the two areas about which he is expected to testify; and (2) McKinley's testimony concerning his proposed Rocky Flats bill is inherently "political," and thus is barred by the Court's *in limine* rulings.

In the event that the Court does not bar McKinley's testimony, it should order the following relief:

(1)     Plaintiffs should be ordered to produce McKinley for an additional two and one half hours of deposition. Notwithstanding the Court's order that each side is to be allowed seven hours for deposition, plaintiffs halted the deposition after four and a half hours.

(2)     The Court should order Mr. McKinley to produce to defendants the "journal" that he kept during his grand jury deliberations (and all other documents responsive to defendants' subpoena, Ex. F), and which McKinley acknowledged that he relied upon in writing the book The Ambushed Grand Jury (which plaintiffs have indicated they may use at trial). In the alternative, the Court should order production of those portions of the journal relied by McKinley in writing his book.

(3)     The Court should order McKinley to respond to the questions that he refused to answer during the deposition, as set forth in Exhibit B hereto.

Dated: October 20, 2005 Respectfully submitted,

/s/ John E. Tangren_____
One of the Attorneys for the Defendants
David M. Bernick
Douglas J. Kurtenbach
Ellen Therese Ahern
Mark J. Nomellini
John E. Tangren
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636
Phone:  312-861-2000
Fax:     312-861-2200

Joseph J. Bronesky
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Phone:  303-297-2900
Fax:     303-298-0940

Attorneys for ROCKWELL
INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY

## **CERTIFICATE OF SERVICE**

       I hereby certify that on October 20, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses for the following:

Peter B. Nordberg, Esq.
c/o Karen M. Markert
Apartments at Denver Place, Apt. 2812
1880 Arapahoe Street
Denver, CO 80202
pnordberg@bm.net
kmarkert@bm.net

Gary B. Blum, Esq.
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206
blumg@s-d.com

                                                /s/ Kari Knudsen_____
                                                Kari Knudsen (legal assistant)