WESLEY PAUL McKINLEY

1    within the deliberations of the special grand jury that

2    might be barred either under Rule 6(e) or under the

3    judge's rulings on the parties' motions in limini in this

4    case as they relate to the criminal investigation.

5         I think Mr. McKinley said he had two sources of

6    knowledge about Rocky Flats.  One was from his work on

7    the special grand jury and one was in connection with the

8    legislation.  So just to be very clear, speaking as

9    counsel for plaintiffs, plaintiffs do not intend to offer

10   any testimony from Mr. McKinley on the deliberations of

11   the special grand jury or matters falling within the

12   Federal Rule of Criminal Procedure 6(e), or under the

13   judge's rulings on the motions in limini, so long as

14   those rulings remain unaltered.

15        And speaking as Mr. McKinley's attorney, I will

16   instruct him not to answer any questions trenching on

17   Rule 6(e).

18        Q.   (BY MR. NOMELLINI)  And you intend to follow

19   your counsel's instruction, Mr. McKinley?

20        A.   Yes, sir.

21        Q.   Now, I just want to try to understand the scope

22   of that.  Is there anything that you're going to be --

23   you expect to testify about that occurred prior to

24   November of 2004 when the efforts to pass your bill

25   started?

WESLEY PAUL McKINLEY

12

1          MR. NOMELLINI:   Thank you.

2          Q.   (BY MR. NOMELLINI)   Incidentally, in the answer

3     to interrogatory No. 1, there's a reference to lobbying

4     efforts by DOE and/or affiliated entities.

5               You have to answer audibly or the court

6     reporter won't get it down.   You nodded your head, and

7     you have to say yes or no or she won't be able to record

8     it.

9          A.   Yeah.   Say that again.

10         Q.   Sure.   In response to interrogatory No. 1,

11    plaintiffs have indicated that you'll be testifying about

12    legislative measures relating to Rocky Flats and lobbying

13    efforts by DOE and/or affiliated entities.

14         A.   Yes.

15         Q.   And my question is, what do you expect to

16    testify about with respect to lobbying efforts by DOE

17    and/or affiliated entities in connection with your Rocky

18    Flats bill?

19         A.   Well, again, I'm not -- I'll have to answer the

20    questions.   So I don't know what the question will be.

21    If you could specifically ask me a question about that

22    lobbying effort, then I will try to answer that.

23         Q.   Did you have any discussions with plaintiffs'

24    counsel before this morning about this case?

25         A.   Yes.

WESLEY PAUL McKINLEY

13

1       Q.    And did those discussions include discussions

2    about what you might testify about as a witness at trial?

3       A.    Yes, they did.  But as far as specifically, it

4    was very, very general.

5       Q.    Well, tell me the substance of what you recall

6    about the discussions that you had with plaintiffs'

7    counsel before this morning about what you might testify

8    about in this case.

9       A.    Basically, the bill that I wrote, that was what

10   most of our discussion was about.

11      Q.    Did you discuss lobbying efforts by DOE and/or

12   affiliated entities?

13      A.    We might have.  But, see, I wouldn't have been

14   too close to the lobbying effort of DOE.  Whenever

15   they're lobbying to kill my bill, they don't come in and

16   say, here's what we're going to do to kill your bill.

17      Q.    Well, tell me what you know about any lobbying

18   efforts by DOE to defeat your bill.

19      A.    Okay.  I won't reveal the name.  If it's public

20   record, you can look at it.  A lobbyist whom I have a lot

21   of respect for come in and told me that he had been

22   retained to kill my bill.  It was very honorable of him.

23   And then he wanted to know if I wanted to meet with Nancy

24   Tour, the CEO of Kaiser Hill.  I said, sure, I'll meet

25   with anybody.  And that was about all that was said then.

WESLEY PAUL McKINLEY

1    A.    Yes.

2    Q.    Well, let's talk about the journal that you

3  took as a grand juror that contained notes relating to

4  documents that you were shown as a Rocky Flats grand

5  juror.

6         Is it your understanding that notes that you

7  took from documents -- not testimony, not voting records,

8  and not deliberations, but notes that you took from

9  documents as a Rocky Flats grand juror -- would lead to a

10 violation of Rule 6(e) if you disclosed them?

11        MR. NORDBERG:  I will instruct the witness not

12 to answer.  And I am about to adjourn this deposition for

13 the purposes of calling the court to determine whether

14 this line of questioning should be permitted.

15        There is nothing -- the reason that the court

16 has authorized depositions of witnesses in this case is

17 not so that defendants can appoint themselves a roving

18 commission to conduct an inquiry into violations that

19 they suspect or perceive grand juries have or have not

20 made under somebody's interpretation of Rule 6.

21        I'm at a total loss to perceive the relevance

22 of this line of questioning to any issue in the

23 litigation.  And its sole discernable purpose appears to

24 be to intimidate Mr. McKinley and discourage him from

25 participation in this lawsuit.

WESLEY PAUL McKINLEY

1            So unless we move on to a line of questioning

2     that involves issues of fact concerning which plaintiffs

3     have indicated they will offer his testimony or which are

4     relevant in some articulable way to some matter in

5     factual controversy in this lawsuit --

6            MR. NOMELLINI:  Well, let me ask you this,

7     Peter.

8            MR. NORDBERG:  -- I will adjourn the deposition

9     pending opportunity to seek judicial resolution to this

10    situation.

11           MR. NOMELLINI:  Do plaintiffs intend to elicit

12    testimony from Mr. McKinley that he can't tell the jury

13    what he learned about because of Rule 6(e)?

14           THE DEPONENT:  Correction here.  Could you read

15    just what he said.

16           (The record was read back as follows:  "Do

17    plaintiffs intend to elicit testimony from Mr. McKinley

18    that he can't tell the jury what he learned about because

19    of Rule 6(e)?")

20           THE DEPONENT:  Okay.  You got "jury."  I

21    thought he said, "grand jury."

22           MR. NORDBERG:  We may.

23           MR. NOMELLINI:  Okay.  Well, then, among other

24    things, I'm entitled to find out if that is a reason why

25    he can't tell the jury about what he learned about, and

WESLEY PAUL McKINLEY

1    the witness not to answer the question as framed.

2        Q.    And you're following your attorney's

3    instructions?

4        A.    Yes.

5        Q.    Have you ever been under investigation for

6    disclosing grand jury information?

7        A.    I read in the newspapers we were under

8    investigation.  I was never served any papers or

9    anything.

10       Q.    And approximately when did you read in the

11   newspapers that you were under investigation?

12       A.    It would have been summer '92.

13       Q.    And did you have any understanding as to why

14   you were under investigation with respect to the

15   disclosure of grand jury information?

16            MR. NORDBERG:   Based on his review of the

17   newspaper article?

18            MR. NOMELLINI:   In general.

19       Q.    Did you have any understanding at all?

20            MR. NORDBERG:   You can answer to the extent

21   that your answer doesn't involve information learned by

22   you in the course of your service on Special Grand Jury

23   89-2.

24       A.    There was a lot of information in the

25   newspapers about the grand jury.

WESLEY PAUL McKINLEY

1    Q.   -- not to testify about any instructions that

2    you were given as a grand juror?

3    A.   Yes.

4         MR. NOMELLINI:  Off the record for a second.

5         (Discussion off the record.)

6    Q.   (BY MR. NOMELLINI)  As a general matter,

7    setting aside the Rocky Flats grand jury, do you have any

8    understanding as to whether a grand juror is permitted to

9    do his or her own investigation separate and apart from

10   the rest of the grand jury?

11   A.   Haven't we covered that?

12   Q.   I don't think so.

13        MR. NORDBERG:  I'm letting it go.  I'm not

14   objecting.  If you have an understanding about --

15   A.   Yes.

16   Q.   Your understanding is that a grand juror is

17   permitted to do his own investigation in general while

18   the grand jury is pending?

19   A.   Define investigation.

20   Q.   That is, could a grand juror, for example, make

21   his own trip to the scene of the events that the grand

22   jury is hearing about without the rest of the grand jury

23   in order to gather more information?

24   A.   Yes.

25   Q.   And what is the basis of that understanding?

WESLEY PAUL McKINLEY

1          MR. NORDBERG:  You can answer to the extent

2     that it does not involve material relating to the

3     investigations of Special Grand Jury 89-2.

4          A.   I can't differentiate between them.

5          Q.   Prosecutors are not required to present

6     exculpatory evidence to a grand jury, correct?

7          A.   Grand jury is a power within itself.  It can

8     subpoena witnesses; can ask any question they want.

9          Q.   And the prosecutor is not required to present

10    the defendants' side of the story, correct?

11         A.   I don't know that much about the prosecutors.

12    I never looked into that area.

13         Q.   You don't know one way or the other whether the

14    prosecutor is required to present the defendants' side of

15    the story to the grand jury?

16         A.   I don't know that much about prosecutors.  I

17    never read the attorneys manual.

18         Q.   Now, while you were a grand juror, no Rockwell

19    lawyers appeared before you to present Rockwell's side of

20    the case, correct?

21         MR. NORDBERG:  With respect, I instruct the

22    witness not to answer on the grounds that by definition,

23    an answer would require disclosing proceedings occurring

24    before Special Grand Jury 89-2.

25         Q.   As a general matter, do you have an

WESLEY PAUL McKINLEY

80

1    understanding as to whether a defendant gets to have his

2    lawyer present the defendants' case to a grand jury?

3         A.    I don't know anything about that.

4         Q.    Do you have any knowledge as to what

5    safeguards, if any, or what rights a defendant is

6    entitled to in connection with a grand jury

7    investigation?

8         A.    No.

9         Q.    Did you ever have any interest in determining

10   what rights a defendant had in connection with grand jury

11   investigation, as a general matter?

12        A.    Could you give me a definition of defendant?

13        Q.    That's a fair clarification.   Do you have any

14   knowledge as to what rights a person or corporation who

15   is the subject of a grand jury investigation has in

16   connection with the grand jury proceedings?

17        A.    No.

18        Q.    Did you ever have any interest in learning what

19   rights a person or corporation who was the subject of a

20   grand jury investigation has in connection with a grand

21   jury proceeding?

22        A.    Never thought about it.

23        Q.    Was Dow the subject of the investigation in

24   which Special Grand Jury 89-2 was involved?

25              MR. NORDBERG:   Objection, form.   Vague.   Again,

WESLEY PAUL McKINLEY

89

1    where they went and what they did.

2        Q.    Do you know if people living in Westminster

3    within the class area would have had any contact with

4    water from Rocky Flats?

5             MR. NORDBERG:   Again, to the extent that your

6    knowledge is from sources other than information

7    disclosed in the proceedings of Special Grand Jury 89-2.

8        A.    If I knew where they went and what they did.  I

9    have no idea where they went or what they did.

10       Q.    But as you sit here today, you don't know

11   whether people living within Westminster within the class

12   boundary would have any contact with water from Rocky

13   Flats, correct?

14            MR. NORDBERG:   Same instruction.

15       A.    I'll follow my counsel's instruction.  I would

16   have to know when they lived there.

17       Q.    Do you know whether individuals living in

18   Arvada within the class boundary as of June 7th, 1989,

19   would have had any contact with water from the Rocky

20   Flats plant?

21       A.    It's Rule 6(e).

22       Q.    Other than what you learned as a grand juror,

23   do you know if people living in Arvada within the class

24   boundary would have had any contact with water from Rocky

25   Flats?

WESLEY PAUL McKINLEY

91

1      Q.   And sitting here today, you can't tell me

2  whether people living within the class area were exposed

3  to any contaminants from Rocky Flats, correct?

4      A.   You're making that sound like I don't know.

5  But I would be violating Rule 6(e) if I told.

6      Q.   Sitting here today, you can't give me any

7  information about whether anyone living within the class

8  area was exposed to any contaminants from Rocky Flats,

9  because you believe you would be violating Rule 6(e) if

10 you told, correct?

11     A.   It would be a better question if you asked,

12 you will not give me any information.  Then I can say

13 yes.

14     Q.   Sitting here today, you will not give me any

15 information about whether anyone living within the class

16 area was exposed to any contaminant from Rocky Flats,

17 because you believe it would violate Rule 6(e); is that

18 correct?

19     A.   It's possible, yes.

20     Q.   Is that a yes?

21     A.   Yes.

22     Q.   So you're not going to be testifying before the

23 jury about anything that you learned as a grand juror,

24 correct?

25     A.   I can't anticipate what I'll be testifying

WESLEY PAUL McKINLEY

92

1   about.  I'm a cowboy, not a lawyer.

2           MR. NOMELLINI:  Is Mr. McKinley going to be

3   testifying about anything he learned as a grand juror?  I

4   believe we're entitled to know that, given that we've

5   been instructed -- he's been instructed not to answer any

6   question that relates to that subject.

7           MR. NORDBERG:  Well, he's been instructed not

8   to -- he's been given the instructions he has.  And I'm

9   hesitating, Mark, just because the question is vague.

10          I will repeat that plaintiffs do not intend to

11  call Mr. McKinley to elicit testimony about the grand

12  jury investigation or that would disclose material from

13  the grand jury proceedings.

14      Q.   (BY MR. NOMELLINI)  You mentioned in your

15  Ambushed Grand Jury book that you conducted a citizens

16  investigation of matters at Rocky Flats, correct?

17      A.   Yes.

18      Q.   And over what time period did that citizens

19  investigation take place?

20          MR. NORDBERG:  Do you have a page reference,

21  Mark?

22          MR. NOMELLINI:  I don't have one handy.

23          MR. NORDBERG:  Because it's a question about

24  what he indicated in his book, so -- is the question

25  about what the book indicated about the time period over

WESLEY PAUL McKINLEY

94

1          MR. NORDBERG:   I instruct the witness not to

2     answer.

3          Q.   You're following your attorney's instruction?

4          A.   Yes.

5          Q.   And you will not disclose to me anything that

6     occurred before Grand Jury 89-2, correct?

7          A.   That's right.

8          Q.   Do you know what the state standard is for

9     plutonium in soil in Colorado?

10         MR. NORDBERG:   Form.  Also, I instruct the

11    witness not to answer to the extent the knowledge would

12    reveal proceedings before Special Grand Jury 89-2.

13         A.   I'll follow my counsel, yes.

14         Q.   So other than the special grand jury

15    proceedings, you don't have any knowledge of what the

16    state contamination standard is, correct?

17         A.   That's not correct.

18         Q.   What is your knowledge, apart from the special

19    grand jury proceedings, as to what the state

20    contamination standard is?

21         A.   The contamination levels out at Rocky Flats by

22    the cleanup agreement is 50 pico curies per gram of soil

23    down to 3 feet.

24         Q.   And that's for plutonium on-site --

25         A.   Yes.

WESLEY PAUL McKINLEY

1    findings would persuade a member of Congress to launch an

2    official investigation into the claims, but no member of

3    Congress has offered to do that yet, correct?

4         A.   Yes.   I'm not in Congress yet.

5         Q.   You're in the state legislature.

6         A.   Yes.

7         Q.   In the paragraph on this final page of McKinley

8    Deposition Exhibit 8 that begins with the words, "Each of

9    the four citizens grand jury members."  Do you see that?

10        A.   Yes.

11        Q.   That paragraph, second sentence, states,

12   "McKinley is still under FBI investigation."  Do you see

13   that?

14        A.   Yes.

15        Q.   Is that true?

16        A.   Don't know.

17        Q.   And it says, "If McKinley is found in contempt

18   of violating the grand jury's secrecy oath, he could go

19   to prison."  Do you know if that's true?

20             MR. NORDBERG:   Foundation.   You can go ahead

21   and answer.

22        A.   Yes.

23        Q.   Let's turn to page 124 of your Ambushed Grand

24   Jury book.

25        A.   Okay.

WESLEY PAUL McKINLEY

108

1       Q.     There's references to Mike Norton.   Do you see

2    that?

3       A.     On 100 --

4       Q.     Excuse me.   125.

5       A.     Okay.

6       Q.     Do you see that?

7       A.     Yes.

8       Q.     Who is Mike Norton?

9       A.     He was the government attorney.

10       Q.     With the Department of Justice?

11       A.     Yes.

12       Q.     Do you have any information as to anything that

13    the Department of Justice did to prevent you from talking

14    about what you learned as a grand juror on Rocky Flats

15    Special Grand Jury 89-2?

16             MR. NORDBERG:   You can answer to the extent the

17    answer does not disclose proceedings before Special Grand

18    Jury 89-2.

19       A.     Yes.

20       Q.     What information do you have as to anything

21    that the Justice Department or the U.S. Attorneys Office

22    did to prevent you from talking about what you learned as

23    a member of the grand jury?

24       A.     It's outlined in the Wolpe report.   Testimony

25    by Fimberg, Murtha, Lipsky, and Norton.

WESLEY PAUL McKINLEY

1   the neighboring citizens and the workers?

2         MR. NORDBERG:   Foundation.

3     A.   I probably -- I'm sure she does.  I don't

4   really know.

5     Q.   Does Caron Balkany share your views that it's

6   not possible to make nuclear weapons without creating

7   tons of nuclear waste, as far as you know?

8     A.   Probably, yeah.

9     Q.   Does Caron Balkany share your views that

10  there's no safe way to make nuclear bombs, as far as you

11  know?

12     A.   As far as I know, uh-huh.  I think we're agreed

13  on that.  There's one thing in here she didn't agree to,

14  though.

15     Q.   Okay.  You're looking at another page in your

16  book?

17     A.   Yeah.  We didn't agree on everything.

18     Q.   What is it that she did not agree on?

19     A.   She didn't agree when I said that my granddad,

20  on page 84 -- start on page 83.  Caron -- I would start

21  off by telling people who I am and how ordinary a person.

22  "My grandfather homesteaded at this very place where I

23  now live.  He came here with a fine mule, a good milk cow

24  and a worn-out wagon.  The air was clear, the water was

25  pure, and a desirable woman soon joined him.  He was a

WESLEY PAUL McKINLEY

121

1      A.    Roman Numeral VII?  Where is that exactly?

2      Q.    Excuse me.  I think it's Roman Numeral XII.

3      A.    Is that in the front or back?

4      Q.    In the front of the book.

5      A.    I don't see Roman Numeral XII.

6      Q.    XII.

7            MR. NOMELLINI:  Peter, do you want to share?

8            MR. NORDBERG:  Yes.  It's in the note to

9      readers, Wes, beginning before part 1.  I don't know

10     where the coverup is, but --

11     A.    Okay.  Note to readers.  Maybe I'm not far

12     enough.  Okay.  Now I found it.

13     Q.    (BY MR. NOMELLINI)  If you'd look in Roman

14     Numeral XII, the reference to a government coverup.  Do

15     you see that?

16           MR. NORDBERG:  Second full paragraph on the

17     page.

18     A.    Uh-huh.

19     Q.    Okay.  Is it your belief that Judge Finesilver

20     was involved in the government coverup that you referred

21     to in Roman Numeral XII?

22           MR. NORDBERG:  May I confer with my client

23     before he responds to that question?

24           MR. NOMELLINI:  Yes.  As long as the time is

25     not counted against me.

WESLEY PAUL McKINLEY

122

1            MR. NORDBERG:  Well, we do have to leave at

2    6:00, so it's not a question of counting against you.

3    But it's understood that I requested the conference.

4            (Recess taken from 5:35 p.m. to 5:36 p.m.)

5            MR. NORDBERG:  May we have the question read

6    back.

7        Q.    (BY MR. NOMELLINI)  Was Judge Finesilver part

8    of the coverup?

9            MR. NORDBERG:  I will instruct the witness not

10   to answer on the grounds any answer would seemingly

11   implicate proceedings before the grand jury -- Special

12   Grand Jury 89-2.

13           MR. NOMELLINI:  And are you going to give the

14   same instruction if I ask if any individual was a part of

15   the coverup?

16           MR. NORDBERG:  Not necessarily.  Judge

17   Finesilver was a participant in the grand jury

18   proceedings.  If you asked about people who weren't

19   participants, I would not necessarily give that

20   instruction.

21       Q.    (BY MR. NOMELLINI)  Was Judge Maitsch a part of

22   the coverup?

23           MR. NORDBERG:  Same instruction.

24       Q.    Was the State of Colorado a part of the

25   coverup?

WESLEY PAUL McKINLEY

123

1      A.   Who is the State of Colorado?

2      Q.   Was the Colorado Department of Health a part of

3  the coverup?

4      A.   No.

5      Q.   Was the Rocky Flats Coalition of Local

6  Governments a part of the coverup of events at Rocky

7  Flats?

8      A.   I never knew them.

9      Q.   So you have no information that the Rocky Flats

10  Coalition of Local Governments was a part of any coverup?

11      A.   Not during -- no.

12      Q.   You have no information that Rocky Flats

13  Citizens Advisory Board was a part of any coverup?

14      A.   No.

15      Q.   You have no information that the Health

16  Advisory Panel was a part of any coverup?

17      A.   No.

18      Q.   How about Binny Abbott?  Do you know Binny?

19      A.   No.

20      Q.   You have no information that the Environmental

21  Protection Agency was a part of any coverup?

22           MR. NORDBERG:   I object to that question to the

23  extent it would involve or implicates proceedings before

24  Special Grand Jury 89-2.

25      A.   Yes, I'm following his lead.

WESLEY PAUL McKINLEY

124

1     Q.    Do you know what the ATSDR is?

2     A.    No.

3     Q.    Do you know whether the ATSDR issued a report

4   on Rocky Flats?

5     A.    I wouldn't know.

6     Q.    Now, you proposed a bill in the state

7   legislature regarding Rocky Flats in 2004, correct?

8     A.    Yes.

9     Q.    And can you tell me -- can you summarize for me

10  what that bill is about?

11     A.    We put signs at Rocky Flats.

12     Q.    And what were the signs to be about?

13     A.    History, the cleanup, the contamination, and

14  the dangers.

15          MR. NOMELLINI:  Let's mark this draft of

16  the -- Mr. McKinley's bill on Rocky Flats as McKinley

17  Exhibit 11.

18          (Deposition Exhibit 11 was marked.)

19     Q.    Is McKinley Exhibit 11 a draft of your bill on

20  Rocky Flats?

21     A.    Yes.

22     Q.    And is it the first draft or one of several

23  drafts?

24     A.    It's one of several.

25     Q.    Is it the most recent draft?

WESLEY PAUL McKINLEY

125

1       A.   Yes.   The last draft.

2       Q.   And this is one of the documents that you

3  brought with you today in response to the subpoena?

4       A.   Yes.

5       Q.   You are not an expert on plutonium, correct,

6  Mr. McKinley?

7       A.   That's correct.

8       Q.   You're not an expert on radiation?

9       A.   That's correct.

10      Q.   You're not an expert on how radiation impacts

11  children versus how it impacts adults?

12      A.   That's true.

13      Q.   You're not an expert on the cleanup of nuclear

14  weapons plants?

15      A.   That's true.

16      Q.   You're not an expert on sampling of nuclear

17  weapons plants?

18      A.   That's true.

19      Q.   Do you know whether samples have been taken at

20  Rocky Flats in connection with the cleanup?

21      A.   Yes.

22      Q.   And have samples been taken?

23      A.   Yes.

24      Q.   And one of the entities that's taken those

25  samples is the Colorado Department of Public Health and

WESLEY PAUL McKINLEY

128

1      A.    No.

2      Q.    Do you know one way or the other whether the

3    Colorado Department of Health has taken into account

4    information -- the same information that you learned as a

5    grand juror in sampling from 1993 to the present?

6           MR. NORDBERG:   Instruct the witness not to

7    answer.

8           MR. NOMELLINI:   I'm just asking him if he

9    knows.   It's a yes or no question.

10          MR. NORDBERG:   Depending on the answer, and

11   plus it would disclose information from the proceedings

12   before the grand jury.   And as I've made very clear, I'm

13   going to instruct him not to answer any question that

14   would entail such a disclosure.

15     Q.    (BY MR. NOMELLINI)   Do you know if there is any

16   relevant information that the Colorado Department of

17   Health has not taken into account during the sampling

18   that the Colorado Department of Health has done from 1993

19   to the present?

20     A.    Yes.

21     Q.    And what information that the Colorado

22   Department of Health has not taken into account?

23     A.    There have been different sites disclosed to me

24   by people that worked out there on the cleanup.   And I

25   won't reveal who has told me this.

WESLEY PAUL McKINLEY

135

1   the cleanup?

2       A.   I've gotten -- I've asked and gotten

3   information from them that would read that.  But -- yes,

4   I have.  And they did give it to me.

5       Q.   Do you believe the Rocky Flats Coalition of

6   Local Governments is involved in any coverup with respect

7   to sampling data?

8       A.   No.

9       Q.   Have you asked the Rocky Flats Coalition of

10  Local Governments for any sampling data?

11      A.   No.

12      Q.   Do you believe that David Abelson is

13  trustworthy?

14      A.   No.

15      Q.   No?  What's the basis -- now, David Abelson

16  is -- does not work for Dow or Rockwell, right?

17      A.   That's true.

18      Q.   He represents local governments, correct?

19      A.   It's funded by DOE.

20      Q.   What's the basis for your view that Rocky Flats

21  coalition of governments was funded by the DOE?

22      A.   What's the basis for that?

23      Q.   Yes.

24      A.   I've got several papers of that.  I can find

25  out and get back to you.

WESLEY PAUL McKINLEY

1       Q.    So the basis for your view that the Rocky Flats

2   Coalition of Local Governments is funded by the DOE is

3   papers that you've read?

4       A.    No.  I've got that somewhere.  It's not the --

5   yes, I'll find that.  I'll be more specific.  I'll

6   research that out, because I've got it.

7       Q.    But the basis of your view that the Rocky Flats

8   Coalition of Local Governments is funded by the DOE is

9   something that you've read, correct?

10      A.    Yes.

11      Q.    And as far as you know, is it anything that you

12  read that was written by Dow or Rockwell?

13      A.    No.

14      Q.    Look at page 3 of your bill.  This is McKinley

15  Deposition Exhibit 11, I believe.  Page 3 of McKinley

16  Deposition Exhibit 11, section E, states, "The EPA and

17  the State of Colorado, using mathematical modeling, have

18  determined that cleanup of what is now the Rocky Flats

19  National Wildlife Refuge has made the refuge safe for

20  visitors and wildlife refuge workers."  Do you see

21  that?

22      A.    Yes.

23      Q.    And do you believe that that's true?  First

24  that the State of Colorado has determined that the

25  cleanup of what is now the Rocky Flats National Wildlife

WESLEY PAUL McKINLEY

137

1    Refuge have made the refuge safe for visitors and

2    wildlife refuge workers?

3        A.   No.

4        Q.   You believe that the State of Colorado has not

5    determined that cleanup of what is now the Rocky Flats

6    National Wildlife Refuge has made the refuge safe for

7    visitors and wildlife refuge workers?

8        A.   I believe that the EPA and the State of

9    Colorado, using mathematical modeling, have determined

10   that cleanup of what is now the Rocky Flats National

11   Wildlife Refuge has made the refuge safe for visitors.

12   They have determined through their mathematical

13   modelings.

14       Q.   And have you asked to see the results of the

15   mathematical modeling done by the EPA or the State of

16   Colorado regarding whether the cleanup is safe for

17   visitors and wildlife refuge workers?

18       A.   I don't need to.  It's the EPA and Colorado

19   have determined.

20       Q.   And have you asked to see the results of the

21   EPA -- what the EPA and the State of Colorado have

22   determined as a result of their testing?

23       A.   No.  But they determined that 50 pico curies

24   per gram of soil up to 3 feet is safe.  2,000 from 3 to

25   5 -- or 3 to 6.  And below 6,000.  That is what they have

WESLEY PAUL McKINLEY

141

1      Q.   In any event, you haven't asked the Rocky Flats

2   Citizens Advisory Council to share with you sampling data

3   regarding the cleanup of Rocky Flats, correct?

4      A.   No.

5      Q.   And you're not aware one way or the other as to

6   whether the Rocky Flats Citizens Advisory Council has

7   gotten all of the information that they've asked for in

8   terms of sampling data in connection with the Rocky Flats

9   cleanup?

10     A.   No.

11          MR. NORDBERG:  Mark, can I ask if, on the brink

12   of exhaustion, the question is the defendants' ambition

13   to ask?

14          MR. NOMELLINI:  The question that it is

15   defendants' ambition to ask?

16          MR. NORDBERG:  Are we near the end of this

17   deposition, from your point of view?

18          MR. NOMELLINI:  Here is what I would like to

19   do:  I would like to go to 6:30 and then to reserve my

20   right to go on.

21          MR. NORDBERG:  Can we go off the record for a

22   second?

23          MR. NOMELLINI:  Yes.

24          (Discussion off the record.)

25          (Recess taken from 6:04 p.m. to 6:11 p.m.)