## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-181-JLK

MERILYN COOK, *et al.*,

        Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL  COMPANY,

        Defendants.

---

### DEFENDANTS' MOTION TO BAR TESTIMONY BY JON LIPSKY

---

Plaintiffs have stated that Jon Lipsky will testify at trial regarding, among other things, his knowledge of the criminal investigation of Rockwell International relating to Rockwell's operation of the Rocky Flats nuclear facility and alleged environmental crimes committed at the Rocky Flats nuclear facility.  (*See* Ex. A, Disclosures of Subject Matter of Anticipated Testimony.)  During his deposition, however, Mr. Lipsky selectively and arbitrarily refused to answer basic questions about his investigation of Rockwell as an FBI agent on the ground that he was barred from answering by a letter he received from the Federal Bureau of Investigation ("FBI"), urging him to follow certain confidentiality obligations related to his prior employment with the FBI.  (*See* Ex. B, 10/23/2005 FBI Letter to Lipsky.)  Mr. Lipsky -- who has been providing investigative services as an independent contractor to Berger & Montague since he retired from the FBI in January 2005, consulted with Berger & Montague attorneys before his deposition about the regulations cited in the FBI letter.  (Ex. C, Lipsky Dep. at 53, 59-60, 65.)  Thereafter, at his deposition, Mr. Lipsky himself, in his discretion, determined which questions

he would answer, and which questions he would refuse to answer based on his own interpretation of the limitations urged by the FBI. (*Id*. at 144.) Lipksy's refusal to provide full discovery and complete testimony prevents Defendants from being able to prepare for, and counter, Mr. Lipsky's anticipated trial testimony "about his experiences as the lead FBI agent involved in the raid on Rocky Flats." (*See* Ex. D (Pls.' Submission of: (1) Statement re Rocky Flats Mission; (2) List of Lawyers & Witnesses & Jury Questionnaire; and (3) Witness List, at 2.) If Mr. Lipsky's trial testimony were allowed to proceed in this manner, Defendants would be irreparably prejudiced. Mr. Lipsky would be allowed to make his (and Plaintiffs') points about the FBI raid, but Defendants would not be in a position to conduct meaningful cross-examination of Mr. Lipsky.

In addition, Plaintiffs apparently intend to use Mr. Lipsky as an undisclosed expert on topics related to the FBI raid, the criminal investigation, and the existence of any environmental violations at Rocky Flats. For example, Mr. Lipsky is expected to testify about infrared imaging and surveillance of the plant conducted by the FBI during the criminal investigation of Rockwell preceding the raid. Mr. Lipsky should not be permitted to testify about his interpretation of infrared imaging, a matter that qualifies as expert testimony. Plaintiffs never listed Mr. Lipsky as an expert witness. Further, Mr. Lipsky has absolutely no qualifications to interpret infrared imaging, as he admitted in his deposition. And, Mr. Lipsky refused to answer basic foundational questions related to this infrared surveillance, preventing Defendants from eliciting meaningful information about the equipment, methods, and circumstances surrounding the creation of the infrared surveillance tapes. At the very least, he should be limited to testifying about things that he personally observed and about which he has personal knowledge, experience, and the appropriate foundation.

For all of these reasons, Defendants respectfully request that this Court bar Mr. Lipsky from testifying at trial.

## I.     LIPSKY REFUSED TO ANSWER BASIC QUESTIONS ABOUT THE SUBJECTS OF HIS ANTICIPATED TRIAL TESTIMONY

During his deposition, Mr. Lipsky repeatedly refused to answer questions that, in his own, uninformed opinion, would violate regulatory obligations imposed upon him by way of a cautionary letter from the FBI.  According to this letter, Mr. Lipsky was required to speak to the FBI if he was at all "unsure" about whether his testimony would violate federal law.  (Ex. B.) The letter states that he "should consult with an FBI representative prior to providing any such testimony."  (*Id*.)  Nevertheless, Mr. Lipsky unilaterally chose which questions he would and would not answer, after conducting his own research regarding the regulations and statutes.  (Ex. C, Lipsky Dep. at 144.)  This is not a situation where the FBI told Mr. Lipsky that he was not permitted to answer certain specific questions based on regulatory requirements, but rather one where Mr. Lipsky decided on his own, without any guidance as mandated by the letter, which questions he would answer:

- "This letter research ***I conducted myself*** regarding these regulations and statutes and the U.S. Department of Justice executive office of the U.S. Attorney's Office manual that's on the Internet."  (*Id*. at 144 (emphasis added).)

- "***Contrary to what [an FBI attorney] said, I believe*** the regulations allow me to testify about what I learned while I was on the job about Rocky Flats except certain categorical areas."  (*Id*. at 148 (emphasis added).)

- "It's not confusing to me, it's just a ***filter process*** that I need to be sensitive to."  (*Id*. at 147 (emphasis added).)

Mr. Lipsky should not be permitted to cherry pick the topics to which he will testify while providing incomplete answers or entirely avoiding other topics of inquiry related to the

investigation.[1]  It is improper and prejudicial for a witness to "filter" relevant testimony in this fashion.

Moreover, even assuming Mr. Lipsky correctly interpreted the federal regulations and statutes, Mr. Lipsky still failed to answer questions that on their face did not implicate his understanding of his regulatory obligations.  In Mr. Lipsky's stated view, he could testify "about what [he] . . . learned on the job about Rocky Flats except certain categorical areas."  (Ex. C, Lipsky Dep. at 148.)  He claimed that these "categorical areas" included: "Privilege . . . like an attorney-client privilege;" "informants or sources, protected sources;" "classified material;" "trade secrets, proprietary information;" or "Federal Rules of Criminal Procedure Rule 6(e)." (*Id.* at 148-149.)

However, Mr. Lipsky refused to testify about matters that have nothing to do with any of these "categorical areas," including:

- Whether Mr. Lipsky had interviewed any former Rocky Flats employees before the June 6, 1989 raid.  (*Id.* at 149.)

- *Any* information regarding the plane or other equipment utilized in the infrared surveillance of Rocky Flats, including type, model number, serial number or even whether a camera was mounted on the plane.  (*Id.* at 161-63.)

- Whether Mr. Lipsky is aware of any evidence other than "anecdotal log entries" regarding industrial processes that may have been treated at the plant's sewage treatment plant.  (*Id.* at 260-61.)

- In a truly egregious instance, Mr. Lipsky refused to testify about the contents of *public documents*.  Mr. Lipsky stated "I'm not even sure if I can even restate it even if it is in a public document."  (*Id.* at 141.)

---

[1] Mr. Lipsky is not a neutral, disinterested non-party.  Mr. Lipsky has been serving as a private investigator for plaintiffs' law firm since January 2005 and has been paid over $35,000 in that time.  (Ex. C, Lipsky Dep. at 53.)  (*See also* Ex. E (invoices addressed to Berger and Montague by Mr. Lipsky).)

None of these questions or topics relate in any way to Mr. Lipsky's self-imposed restrictions on his testimony. For example, the fact of whether Mr. Lipsky ever interviewed former employees does not fall into any of these categories. Although Mr. Lipsky claimed that it could relate to "informants or sources" (*id*. at 148), the mere issue of whether Mr. Lipsky interviewed any former plant employees would not itself reveal any protected source. Nor does information about the surveillance of Rocky Flats, evidence related to the issues of industrial materials that may have been processed at the plant's sewage treatment plant, and, especially, the content of public documents related to the investigation implicate any of the purportedly protected categories of testimony identified by Mr. Lipsky as being the subject of limitations advocated in the FBI's letter, such as revealing potentially classified information.[2]

However, Mr. Lipsky was quite willing to selectively answer other questions that might implicate sources or reveal confidential information when he thought it suited his purposes. For example, Mr. Lipsky testified that Suzanne Wuerthele, a toxicologist from the EPA, reviewed sampling data from Walnut Creek generated by the criminal investigation. (Ex. C, Lipsky Dep. at 227.) Mr. Lipsky willingly named names when it came to testing done on Walnut Creek, but was not willing to mention any names of former Rockwell employees he interviewed during the course of his investigation of Rockwell prior to the June 6, 1989 raid. This is but one example of

---

[2] Similarly, any such testimony would not violate any limitations on Mr. Lipsky's testimony that may be posed by Rule 6(e) about Grand Jury secrecy. Rule 6(e) is designed to protect the deliberations of jurors and to prevent those for whom indictments are not obtained for having their reputation damaged. *See Anaya v. United States*, 815 F.2d 1373, 1378-79 (10th Cir. 1987) ("[i]t cannot be overemphasized that the purpose for grand jury secrecy is to protect the sanctity of the proceeding and to protect the participants from detrimental publicity.") Infrared overflight surveillance of Rocky Flats, information regarding operations of the plant's sewage treatment plant, and publicly available information does not relate to anything about which the grand jury secretly deliberated.

the way Mr. Lipsky selectively applied his personal interpretation of the confidentiality obligation required of him by the FBI.

Mr. Lipsky's failure to provide testimony is not harmless.  For example, Defendants may be unable to fairly and adequately cross examine Mr. Lipsky and test his assertions regarding his infrared surveillance of Rockwell because Mr. Lipsky refused to provide Defendants with any background or foundational information about his surveillance.  Defendants may also be hampered in their ability to demonstrate whether the infrared equipment used was appropriate, or even adequate, for the purpose it was employed.  Mr. Lipsky should not be given a free pass to testify about those things that he chooses while avoiding potentially unfavorable or damaging testimony by invoking his self-analysis of regulatory confidentiality obligations.  This would preventing Defendants from exercising their right to a meaningful cross examination of Mr. Lipsky. As the United States Supreme Court has noted:

> Cross-examination of a witness is a matter of right.  Its permissible purposes, among others, are that the witness may be identified with his community so that independent testimony may be sought and offered of his reputation for veracity in his own neighborhood; that the jury may interpret his testimony in the light reflected upon it by knowledge of his environment; and that facts may be brought out tending to discredit the witness by showing that his testimony in chief was untrue or biased.

*Alford v. United States*, 282 U.S. 687, 691-92 (1931) (citations omitted).  Because Mr. Lipsky has hampered a meaningful cross-examination by his selective invocation of FBI confidentiality regulations, his testimony should be excluded in its entirety.

## II.     MR. LIPSKY SHOULD NOT BE ALLOWED TO OFFER EXPERT TESTIMONY OR OTHER TESTIMONY ABOUT WHICH HE LACKS FOUNDATION

Mr. Lipsky should not be allowed to offer expert testimony or testimony necessarily drawing upon specialized knowledge or training.  For example, Mr. Lipsky should not be permitted to testify about aerial surveillance of Rocky Flats.  Infrared analysis is expert analysis

and requires qualified expert testimony.  However, plaintiffs did not disclose Mr. Lipsky as an expert under Fed. R. Civ. P. 26(a)(2).  Rule 26(a)(2) sets forth several requirements that expert evidence must meet before it may be used, including disclosure of the identity of all witnesses expected to testify at trial and a report containing a statement of opinions and the basis and reasons for them. (*Id.*); *see also Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 951-52 (10th Cir. 2002) ("Rule 26(a)(2) requires expert reports 'contain a complete statement of all opinions to be expressed.'") (citation omitted.)  The purpose of requiring parties to comply with Rule 26(a)'s expert disclosure and report requirements is two-fold: (1)  "to allow the opposing party 'a reasonable opportunity to prepare for effective cross examination;'" and (2) to give the opposing party the chance to '"'" arrange for expert testimony from other witnesses.'"  *Id.* at 953.

Although Plaintiffs had many opportunities to disclose Mr. Lipsky as a testifying expert and to submit a Rule 26(a)(2) report for him in accordance with the Court's Orders, they failed to do so.[3]  To this day, plaintiffs have not listed Mr. Lipsky as an expert witness.  Therefore, Mr. Lipsky may not be permitted to testify to expert matters.

To the extent that any of Mr. Lipsky's testimony is not barred under Rule 26(a)(2), such testimony is impermissible lay witness opinion testimony.  Mr. Lipsky seeks to offer opinions that go beyond the bounds of testimony that Fed. R. Evid. 602 and 701 permit.  Rule 602 provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that a witness has personal knowledge of the matter.  *See, e.g.*, *Curtis v. Oklahoma City Public Schools Bd. of Educ.*, 147 F.3d 1200, 1219 (10th Cir. 1998).  Thus,

---

[3] Further, Mr. Lipsky himself relies on the analysis of an infrared expert, Al Divers, that plaintiffs have not proposed as a trial witness.  (*See* Ex. C, Lipsky Dep. at 172.)  Thus, Divers' analysis is impermissible hearsay that cannot be admitted through Mr. Lipsky.

whether Mr. Lipsky may give testimony depends, in part, on whether he has personal knowledge of the facts to which Plaintiffs seek to have him testify.

Fed. R. Evid. 701(c) provides: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are . . . not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  In *Lifewise Master Funding v. Telebank*, the Tenth Circuit held that:

> [w]hen the subject matter of proffered testimony constitutes "scientific, technical, or other specialized knowledge," the witness must be qualified as an expert under Rule 702.  Rule 701 applies only "[i]f the witness is not testifying as an expert." Fed. R. Evid. 701.  Indeed, the rule expressly prohibits the admission of testimony as lay witness opinion if it is based on 'specialized knowledge.'  *Id.*  In other words, "a person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person."

374 F.3d 917, 929 (10th Cir. 2004) (citation omitted.)  Therefore, to the extent that Mr. Lipsky is offered to testify to any opinions (rather than facts), in order to be admissible as a non-expert opinion, that testimony cannot depend on scientific, technical, or specialized knowledge.

In any event, Mr. Lipsky does not have the background knowledge to testify about infrared technology.  For example, Mr. Lipsky has no expertise in using infrared technology as an investigative tool:

> Q:      Prior to the prospect of using infrared technology to investigate the Rocky Flats plant came up in the course of the investigation of that site, had you ever had any contact or use with infrared technology as an investigative tool before?  I'm talking about you personally.
>
> A:      No.

(Ex. C, Lipsky Dep. at 160-61.)  Mr. Lipsky also admitted that he had no training in the use of infrared technology, physics, or the "nitty-gritty scientific portions of [photography]." (*Id.* at 37-38.)  It is axiomatic that an expert must be qualified in the area to which he seeks to testify.  *See*

*Daubert v. Merrell Dow Pharms., Inc.* 509 U.S. 579, 591 (1993) (expert's opinion must "have a reliable basis in the knowledge and experience of his discipline."); *Bratt v. Western Air Lines, Inc.* 155 F.2d 850, 853 (10th Cir. 1946) ("A witness is an expert witness and is qualified to give expert testimony if the judge finds that to perceive, know, or understand the matter concerning which the witness is to testify, requires special knowledge, skill, experience or training, and that the witness has the requisite special knowledge, skill, experience, or training.").  Therefore, because Mr. Lipsky does not have the requisite knowledge to discuss infrared technology, he may not be permitted to testify about it at trial.

Finally, Mr. Lipsky refused to provide the necessary foundation for testimony about infrared testimony or any basis by which Defendants could adequately evaluate his infrared analysis.  Mr. Lipsky refused to answer any questions about his use of this technology:

- Mr. Lipsky refused to provide the type of plane used in the surveillance.  (Ex. C, Lipsky Dep. at 161.)

- Mr. Lipsky refused to provide the model or serial number of any equipment used during the overflights. (*Id*. at 162.)

- Mr. Lipsky refused to testify if a camera on the plane was attached to a camera port on the outside of the plane or was physically attached to the plane.  (*Id*.)

- Mr. Lipsky refused to say what type of material any camera attachment may have been made of.  (*Id*. at 163.)

- Mr. Lipsky refused to say whether a "black body calibration" was used during the overflights.  (*Id*. at 168.)

- Mr. Lipsky refused to testify to the thermal sensitivity of the infrared equipment, whether a measurement cursor was used to highlight differences in intensity, and whether the Delta temperatures were recorded in differential terms.  (*Id*. at 170.)

Further, Mr. Lipsky testified that in many instances he "wouldn't be able to answer" questions "if allowed" to testify about them.  (*Id*. at 165-70.)  Consequently, Mr. Lipsky lacks any foundation to testify to the infrared tapes.  Because Mr. Lipsky cannot or will not provide the

necessary foundation for testimony regarding these tapes, he should not be permitted to testify about them.  *See United States v. Samaniego*, 187 F.3d 1222, 1224 (10th Cir. 1999) (failure to lay foundation for business records exception to hearsay rule required exclusion of evidence).

Pursuant to Local Rule 7.1, Defendants' counsel Ellen Ahern called Plaintiffs' Counsel, Peter Nordberg, in an attempt to confer on this motion on the evening of 10/25/05.  Mr. Nordberg was unavailable and Ms, Ahern left a substantive voicemail concerning the requested relief.  Plaintiffs' counsel had not responded as of the filing of this motion.

### Conclusion

For all of the foregoing reasons, Jon Lipsky should not be permitted to testify at trial.  In the alternative, if permitted to testify, his testimony should be limited to to: (1) those matters as to which he: has (1) first-hand knowledge; and (2) did not refuse to answer questions in his deposition.

Dated:  October 20, 2005                          Respectfully submitted,


/s/ John E. Tangren_____
One of the Attorneys for the Defendants
David M. Bernick
Douglas J. Kurtenbach
Ellen Therese Ahern
Mark J. Nomellini
John E. Tangren
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636
Phone:  312-861-2000
Fax:     312-861-2200

Joseph J. Bronesky
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Phone:  303-297-2900

Fax:      303-298-0940

Attorneys for ROCKWELL
INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on  October 20, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses for the following:

Peter B. Nordberg, Esq.
c/o Karen M. Markert
Apartments at Denver Place, Apt. 2812
1880 Arapahoe Street
Denver, CO 80202
pnordberg@bm.net
kmarkert@bm.net

Gary B. Blum, Esq.
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206
blumg@s-d.com

/s/ Kari Knudsen_____
Adrienne Reynolds (legal assistant)