IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

No. 90-cv-181-JLK
_____

MERILYN COOK, et al.,

      Plaintiffs,

          v.

ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,

      Defendants.
_____

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO BAR TESTIMONY BY JON LIPSKY
_____

      Plaintiffs respectfully submit this memorandum in opposition to "Defendants' Motion to Bar Testimony by Jon Lipsky" (filed Oct. 20, 2005). We attach Mr. Lipsky's complete deposition transcript as Exhibit A.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

      Prior to his deposition, Mr. Lipsky (the former FBI agent in charge of the Rocky Flats criminal investigation) received a letter dated October 13, 2005, from Messrs. Richard C. Powers and Robert J. Goffi of the Federal Bureau of Investigation, concerning the permissible scope of Mr. Lipsky's testimony. In the letter, which was copied to counsel for the parties, and which is attached to defendants' motion as Exhibit B, Mr. Lipsky was advised that he was not authorized to testify concerning certain narrow matters. Specifically, Mr. Lipsky was told that he was not authorized to

offer testimony that would violate Fed. R. Crim. P. 6(e), the Privacy Act, 5 U.S.C. § 552a, or 28 C.F.R. § 16.26(b)(1)-(6).  The latter regulation, which is attached to defendants' motion as part of Exhibit B, covers such topics as classified information, tax records, revelation of confidential sources and informants, sensitive investigative techniques, and trade secrets.

Plaintiffs were initially advised that counsel from the Department of Justice would attend Mr. Lipsky's deposition, presumably for the purpose of affording guidance to Mr. Lipsky if any questions arose about the permissibility of specific testimony.  Plaintiffs so informed Mr. Lipsky. On the day before the deposition, however, plaintiffs received a phone message stating that DOJ counsel would not in fact be attending.  Plaintiffs relayed that information to Mr. Lipsky as well. As a consequence, Mr. Lipsky was left without the advice of counsel at the deposition, and was required to interpret and apply for himself the restrictions set forth in the FBI's letter, and in the statutes and regulations it cited, based on his knowledge of the relevant legal provisions and his many years of experience as a federal law enforcement officer.  That experience includes thirty hours of testimony in 1992 on these very subjects before a congressional subcommittee chaired by Rep. Howard Wolpe.  Defendants criticize Mr. Lipsky for proceeding in this manner but do not say how Mr. Lipsky should have proceeded instead.

Mr. Lipsky's deposition lasted in excess of seven hours.

## II.  ARGUMENT

Defendants argue that their ability to cross-examine Mr. Lipsky at trial is radically undermined by Mr. Lipsky's invocation at deposition of the October 13 letter, and the applicable testimonial restrictions, in connection with a few of defendants' questions on two specific subjects: any interviews conducted by Mr. Lipsky with informants or sources who were former Rocky Flats

employees, and certain technical details concerning the aircraft and photographic equipment used to conduct secret overflight surveillance of the Rocky Flats site.  Defendants are wrong on both counts.[1]

### A.  Interviews with Informants

As regards any interviews by Mr. Lipsky of former Rocky Flats employees, defendants are mistaken in saying that Mr. Lipsky disclosed testimony about sources and informants "selectively." The sole stated basis for defendants' assertion is that Mr. Lipsky did identify Ms. Suzanne Wuerthele, an EPA toxicologist who reviewed sampling data from Walnut Creek as part of the investigation.  Manifestly, however, Ms. Wuerthele is not an "informant" whose welfare, safety, or usefulness in future investigations might be compromised by disclosure of her identity or role.  Ms. Wuerthele was a toxicologist on the payroll of one of the federal agencies conducting the investigation.

In any event, defendants have not shown how the number or identity of former plant employees whom Mr. Lipsky may have interviewed is even relevant to any issue on which Mr. Lipsky is expected to testify.  Should defendants make such a showing, remedies seem likely to exist

---

[1]  In passing, defendants also refer to Mr. Lipsky's hesitation to testify to the contents of certain documents, authored by Rockwell and a Rockwell contractor, whose classification status was uncertain at the time of deposition.  (The documents, obtained from the Rocky Flats Reading Room, had previously been categorized as UCNI material, and the copying process had obscured the declassification markings.  It may sometimes constitute a violation of classification laws to discuss the content of classified documents even if those documents or the information in them have been "made public."  Perhaps for that reason, or perhaps for others, defendants did not press the point at deposition). Plaintiffs have since learned that the documents are in unclassified form.  Defendants, who authored the documents in question themselves or through their agents, raise no argument that they were prejudiced by Mr. Lipsky's reluctance to testify to their contents.

falling far short of the extreme and prejudicial sanction of precluding Mr. Lipsky's testimony in its entirety. Those remedies potentially include an application by defendants, to the FBI or this Court, seeking authorization for Mr. Lipsky to testify on the subject. So far as plaintiffs know, defendants have sought no such authorization, whether before Mr. Lipsky's deposition or in the week since it was conducted – perhaps because defendants are less interested in securing the answers than in finding some pretext to preclude Mr. Lipsky's testimony in its entirety.

### B.  Aerial Surveillance Video

As regards defendants' questions about technical information relating to the aircraft and photographic equipment, Mr. Lipsky repeatedly testified that even if permitted to answer defendants' questions, he would be unable to do so. *See* Lipsky Dep. at 165-70. A witness may not be barred from testifying simply because he does not know or remember the answers to some of the questions asked on cross-examination (e.g., the serial number of the photographic equipment).

Conspicuously absent from defendants' submission, meanwhile, is any allegation that they themselves do not already know the answers –  but if they do not, they have long been free to seek them through other means. Nor does a witness's inability to give the model of a camera (or the physical or chemical composition of its constituents, or its serial number) imply that the witness is incompetent to testify concerning the images it captured (which Mr. Lipsky personally observed *as* they were being captured).

Defendants also raise the prospect that some of Mr. Lipsky's testimony concerning the infrared images may cross the line into expert opinion, and that Mr. Lipsky may be unqualified to give such an opinion. The lines between fact and opinion testimony, of course, can be fuzzy, as can the lines between lay opinion and expert opinion. As matters stand, however, plaintiffs believe

defendants' concern to be speculative.  To resolve it on this motion, without actual consideration of the relevant testimony and images, would be premature.  In plaintiffs' belief, the images on the videos can be viewed and weighed by jurors of ordinary intelligence and experience, without the need for expert forensic analysis.  If defendants contend otherwise with respect to some particular testimonial interpretation of some particular portion of the video, any objection can be addressed as it arises.  At the time of this submission, defendants have identified no segments from the tapes that they contend could be interpreted only by someone with expertise exceeding Mr. Lipsky's.

Moreover, as Mr. Lipsky was involved in the act of securing the infrared images during the actual investigation, he is a fact witness involved in what was actually done, as opposed to expert reconstructions or opinions about what was done.

### C.  Services to Plaintiffs Rendered by Mr. Lipsky

Finally, although defendants do not base their motion on this point, their submission does take special pains to mention that Mr. Lipsky has provided certain services to plaintiffs since his retirement from the FBI, in his capacity as a private investigator licensed by the State of California. Defendants' submission, and certain of defendants' remarks in the courtroom, could leave the impression that Mr. Lipsky is somehow an employee or contract worker for one of plaintiffs' law firms.  He is not.  Mr. Lipsky is a self-employed private investigator.  Defendants had an opportunity, at deposition, to inquire into the general nature of the services performed by Mr. Lipsky for plaintiffs, but defendants declined the invitation.  *See* Lipsky Dep. at 140-41.

### IV.  CONCLUSION

To place this motion in perspective, it may be helpful to summarize Mr. Lipsky's career as a witness designated by plaintiffs in this litigation.  Last year, while he was still employed by the

FBI, the parties sought FBI authorization for Mr. Lipsky's deposition testimony, and the FBI declined to grant it. Content, no doubt, with that disposition, defendants made no known effort to revisit the issue following Mr. Lipsky's retirement from the Bureau late last year, save for an informal phone call to an unidentified official, mentioned in passing in one of defendants' submissions, based on which defendants prophesied that permission would still be withheld.

Once that prophecy went unfulfilled, defendants argued that Mr. Lipsky should not be permitted to testify unless he was first deposed (as defendants had neglected to attempt for many months), and unless plaintiffs were moreover required to produce him. The Court agreed to that condition, and plaintiffs produced him, and he was deposed.

None of the information emerging during the deposition will have surprised defendants. The substance of Mr. Lipsky's testimony has been reprised on multiple occasions in publicly available documents, and Rockwell, in particular, may be presumed to enjoy intimate familiarity with its subject matter. Nor did Mr. Lipsky decline to supply any information of material importance that he actually knew or remembered. On the one subject where Mr. Lipsky did decline to testify at deposition despite probable actual knowledge – interviews with former Rocky Flats employees who served as sources or informants – defendants have cited no authority suggesting that Mr. Lipsky did so in error, nor mounted any argument that the omission prejudices defendants, nor sought the information withheld through any of the legal channels available to them.

This motion, in short, is not about any material information that Mr. Lipsky has been unwilling or unable to provide. It is about defendants' apparent disappointment that FBI will not now attempt to stop Mr. Lipsky from taking the witness stand. Defendants' understandable

disappointment, however, is not a legal basis for suppressing Mr. Lipsky's testimony.  Nor are any

of the other grounds defendants have raised.  Defendants' motion should be denied.

                                        Respectfully submitted,


Dated: October 22, 2005                 s/ Peter Nordberg
                                        Merrill G. Davidoff
                                        Peter Nordberg
                                        Berger & Montague, P.C.
                                        1622 Locust Street
                                        Philadelphia, PA 19103
                                        (215) 875-3000

                                        Gary B. Blum
                                        Steven W. Kelly
                                        Silver & DeBoskey, P.C.
                                        1801 York Street
                                        Denver, CO 80206
                                        (303) 399-3000

                                        Attorneys for Plaintiffs
                                        And the Class