**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-181-JLK

MERILYN COOK, *et al.*,

        Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

        Defendants.

_____

**DEFENDANTS' MOTION TO EXCLUDE EVIDENCE OF PLAINTIFFS' CONSUMER
PRICE INDEX ADJUSTMENT FOR PROPERTY DAMAGES**
_____

As set forth in the 1996 report of Plaintiffs' expert Wayne Hunsperger, Plaintiffs

originally claimed $190,000,000 in damages, "expressed in 1995 dollars." (Ex. A at 62.)

However, on September 26, 2005—less than two weeks before the start of trial and over a year

after the July 2004 deadline for supplementation of expert reports—Plaintiffs belatedly disclosed

a new damages analysis, which included a new adjustment based on the change in the Consumer

Price Index ("CPI") between 1995 and 2005.

Plaintiffs' proffered Consumer Price Index adjustment is based on "the consumer price

index for the Denver-Boulder-Greeley Area." (Ex. B.) The CPI "is a measure of the average

change over time in the prices paid by urban consumers for a market basket of consumer goods

and services." (*See* Ex. C, Department of Labor Website, http://www.bls.gov/cpi/cpifaq.htm)

According to Plaintiffs' analysis, the Denver-Boulder-Greeley CPI increased from 147.9 in 1995

to 189.2 at mid-year 2005—a 27.9% increase. (Ex. B.) Applying this 27.9% increase to

plaintiffs' original $190 million damages claim (which was expressed "in 1995 dollars"), plaintiffs claim that they are now entitled to $243 million in damages (expressed "in 2005 dollars")—a $53 million increase.  (Ex. D, 10/11/2005 Trial Tr. at 616-17.)  Moreover, it now appears that Dr. Radke will also apply a CPI adjustment to his damages calculation, from $154 million (1993 dollars) to $215 million (2005 dollars).  Plaintiffs' CPI-adjusted damages analysis is fundamentally flawed, and should be excluded from evidence for several reasons:

*First*, Plaintiffs' CPI-adjusted damages analysis came too late.  The deadline for supplementation of expert reports was July 30, 2004.  However, Plaintiffs did not disclose their CPI-adjusted damages analysis until September 26, 2005.  (Ex. B.)

*Second*, under well-established law, property damage plaintiffs are not permitted to increase their damages by using a "CPI adjustment."  Plaintiffs are not permitted to use a lawsuit to hedge against the risk of inflation.

*Third*, Plaintiffs' use of a CPI adjustment for the 1995-2005 period is not a valid substitute for real-world data on post-1995 property values.  The CPI was not designed or intended to measure changes in real estate values over time.  (*See* Ex. C. ("[T]he CPI does not include . . . real estate").)

When supplemental expert reports were filed in 2004, Plaintiffs had the opportunity to include post-1995 property value data in their expert damages analyses.  But Plaintiffs elected not to do so.  A CPI adjustment is not a meaningful substitute for real-world post-1995 property values, because the CPI (which does not even include real estate) does not accurately predict how class and control area property values have changed from 1995 to the present.  Plaintiffs cannot use the CPI as an end-run around this Court's rulings limiting damages to those that have become "complete and comparatively enduring."  *Cook IX*, 273 F.Supp.2d at 1210.

2

I.     **PLAINTIFFS' CPI-ADJUSTED DAMAGES ANALYSIS COMES TOO LATE; THE DEADLINE FOR SUPPLEMENTATION OF EXPERT REPORTS WAS JULY OF 2004**

Plaintiffs filed their original expert reports in 1996.  On June 17, 2004, the Court ordered that any supplemental expert reports be filed by July 30, 2004.  (Ex. E, 6/17/04 Order.)  Plaintiffs elected not to file any supplemental expert reports on that date.  Following the deadline for disclosure of supplemental expert reports, Plaintiffs indicated to Defendants that they intended to supplement their reports after the deadline anyway.  On each such occasion, Defendants responded that any such post-July 2004 supplementation was not permitted under this Court's orders.

On September 26, 2005, Plaintiffs belatedly disclosed a supplemental, CPI-adjusted, damages analysis, which is attached as Exhibit B hereto.  Because this supplemental analysis came two years after the Court's December 10, 2003 deadline, it should be excluded.  *See* Fed. R. Civ. P. 37(c)(1) ("A party that without substantial justification fails to disclose information required by Rule [] 26(e)(1) . . . is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed;"[1] *Miller v. Pfizer, Inc.*, 356 F.3d 1326, 1332 (10th Cir. 2004); *Southern States Rack & Fixtures, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003) ("Of importance here, Rule 26(e)(1) requires a party to supplement its experts' reports and deposition testimony when the party learns of new information.  If the party fails to do so, the court may exclude any new opinion offered by the expert.")

---

[1] Plaintiffs' failure in this case is hardly harmless.  Plaintiffs waited until the eve of trial, after Defendants had completed preparation for Plaintiffs' damages case, to inform Defendants that they were going to be requesting a CPI adjustment to damages.

II.     **PROPERTY PLAINTIFFS ARE NOT PERMITTED TO RECOVER INFLATION-ADJUSTED DAMAGES**

Plaintiffs have failed to cite any authority (from Colorado or any other jurisdiction) for the proposition that a plaintiff seeking to recover for the loss in value of his property may recover CPI-adjusted damages.  In fact, the universal rule is that the ***maximum[2]*** property damages that can be recovered are awarded based upon the diminution in value "***at the time of the loss***."  *Bennett v. Allstate Ins. Co.*, 889 F.2d 776, 780 (8th Cir. 1989) (emphasis added).  *See also Robert E. Cantu Building Contractors, Inc. v. Garrett Machine & Const., Inc.*, 608 S.E.2d 280, 282 (Ga. App. Ct. 2004) ("[T]he general rule for the measure of damages involving real property is the diminution of the fair market value of the property and/or the cost of repair or restoration, ***but limited to the fair market value at the time of the breach or tort***) (emphasis added); *see also* Restatement § 930 ("measur[ing damages] at the time when the injurious situation became complete and comparatively enduring").  For this reason, courts routinely refuse property plaintiffs' requests for inflation adjustments.  *See*, *e.g.*, *Saden v. Kirby*, 759 So. 2d 921, 932 (La. App. 2000) ("To enhance an award through the use of the CPI would be to award personal property losses occurring in 1983 at the 1998 value, which the trial court could not lawfully do."); *CMSH Co. v. Antelope Dev.*, 223 Cal. App. 3d 174, 181-82 (1990) ("Even assuming that the Consumer Price Index has some rational connection to real estate values, inflation is not a damage which 'actually results' from the nonexpungement of a lis pendens. Inflation is a fact of economic life which pervades all economic transactions.").

This rule accords with common sense.  Plaintiffs should not be allowed to use the federal courts to hedge against inflation risks.

---

[2] The point in time of the loss does not set the minimum, because of, *inter alia*, prior market discount and subsequent recovery of value.

**III.     BECAUSE REAL-WORLD PROPERTY VALUES EXIST AFTER 1995, USE OF CPI-ADJUSTMENT FOR 1995-2005 IS IMPERMISSIBLE AND UNNECESSARY**

Plaintiffs' use of a CPI-adjustment for the 1995-2005 period is not a valid substitute for post-1995 real-world property values.

As an initial matter, the CPI was not intended to measure changes in property values over time.  The CPI is an index based on the average price of a "basket" of goods and services.  (*See* Ex. C, Labor Department Website <http://www.bls.gov/cpi/ cpifaq.htm#Question_1>.)  The CPI is designed to measure day-to-day consumption expenses, not investments.  (*Id.* at Question 7.) For this reason, the CPI does not include real estate.  (*Id* ("[T]he CPI does not include . . . real estate."))  Nor does the CPI include the only subcategory of real estate that is relevant here:  real estate in the class and control areas that are the subject of plaintiffs' and defendants' expert damages analyses.  Thus, changes in the CPI from 1995 to the present are not a valid proxy for what is relevant here:  post-1995 changes in class and non-class property values.

When supplemental expert reports were filed in 2003, Plaintiffs had the opportunity to include *real-world* post-1995 property value data in their expert damages analyses.  But Plaintiffs elected not to do so.  Plaintiffs' decision may have been influenced, in part, by the fact that Plaintiffs' own expert analysis (by Dr. Radke) shows improvement in class property values between 1992 and 1995:

**Radke Report, Table 1, Phase II Property Value Findings**

| Year | "Mean Undervaluation" |
|------|------------------------|
| 1988 | -7.68% |
| 1989 | -7.29% |
| 1990 | -9.33% |
| 1991 | -7.69% |
| 1992 | -9.18% |
| 1993 | -8.56% |
| 1994 | -7.50% |
| 1995 | -5.45% |

Moreover, *real-world* post-1995 property values establish that no class-wide loss exists. Numerous Plaintiffs testified in their depositions that recent trends in property values are positive.  For instance, Charles McKay testified:

> Q.      And when did—did the amount of impact of Rocky Flats on the value of Jefferson County area properties lessen after the FBI raid?
>
> [Colloquy among counsel.]
>
> A.      Well, now it's less.
>
> Q.      (By Mr. Nomellini)  And when did that lessening begin; that is, the lessening of the impact of Rocky Flats on Jefferson County property?
>
> A.      Probably with the announcement of the proposed shutdown of the Rocky Flats plant.
>
> Q.      And when did that announcement occur, approximately?
>
> A.      Approximately, seven, eight years ago, nine years ago.

(Ex. F, McKay Dep. at 82.)  McKay further testified that:

> Q.      You're not personally aware of any impact that Rocky Flats has had on the value of Church Ranch Corporate Center from 1995 through 2005, correct?
>
> A.      Correct.

(*Id*. at 60.)  Nor is evidence of property value appreciation since the FBI raid limited to McKay.

Ed Ladwig also testified that property values are increasing since the closing of Rocky Flats:

> Q.      And how has the tearing down of the Rocky Flats plant and the cleaning up of the pollution had a very positive effect on the value of your property?
>
> A.      Would you like to live near a plutonium factory?  That's what most other people think.  They don't want to either.  So it affects the county government, the developers, everybody.
>
> Q.      And how have you become aware that the tearing down of the plant and the cleanup has improved the value of your property?
>
> A.      Well, they're building a big – it is no secret this Village of Five Parks and the City of Broomfield made their own development.  It has had a huge effect.

(Ex. G, Ladwig Dep. at 103.)

Plaintiffs are free to rebut such evidence with their own post-1995 real-world data (if such evidence exists), but if Plaintiffs fail to provide such evidence, Plaintiffs should not be allowed to present evidence based on the CPI which represents an fundamentally inaccurate prediction of how real estate prices in the class and control areas have changed since 1995 (and, indeed, a prediction based on an index that does not include real estate).

Finally, as of 1995, over 7,000 class members had not sold their properties. Since 1995, their properties may have appreciated or depreciated. But that appreciation or depreciation is reflected in real-world data (which plaintiffs have the opportunity to present, if they have such evidence). The CPI is not a reliable predictor of such post-1995 changes, either for individuals, or for the class (in part because it does not track real estate, much less real estate in Jefferson County in the class).

## CONCLUSION

For the foregoing reasons, plaintiffs' inflation-adjusted damages analysis—which purports to increase plaintiffs' damages from $190 million to $243 million—should be excluded.

Dated:  October 25, 2005                                      Respectfully submitted,


                                                   /s/ John E. Tangren_____
                                                   One of the Attorneys for the Defendants
                                                   David M. Bernick
                                                   Douglas J. Kurtenbach
                                                   Ellen Therese Ahern
                                                   Mark J. Nomellini
                                                   John E. Tangren
                                                   KIRKLAND & ELLIS LLP
                                                   200 East Randolph Drive
                                                   Chicago, Illinois 60601-6636
                                                   Phone:  312-861-2000
                                                   Fax:     312-861-2200

                                                   Joseph J. Bronesky

8

SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Phone:  303-297-2900
Fax:     303-298-0940

Attorneys for ROCKWELL
INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 25, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses for the following:

Peter B. Nordberg, Esq.
c/o Karen M. Markert
Apartments at Denver Place, Apt. 2812
1880 Arapahoe Street
Denver, CO 80202
pnordberg@bm.net
kmarkert@bm.net

Gary B. Blum, Esq.
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206
blumg@s-d.com

/s/ Courtney Biggins_____
Courtney Biggins (legal assistant)