IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

No. 90–K-181

**MERILYN COOK, et al.,**

    **Plaintiffs,**

        v.

**ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,**

    **Defendants.**

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR
RECONSIDERATION REGARDING ADMISSION OF SANCHINI JOURNALS**

## I. INTRODUCTION

The Court has already ruled that Exhibits P-1239 through P-1249, the diaries of Dominic Sanchini, are admissible. Defendants now dispute the admissibility of the *whole* of these exhibits, by raising (mostly hypothetical) objections to scattered *pieces* of the exhibits. Defendants offer no real challenge to the overall admissibility of the diaries. Such a challenge would be futile, as the journals fit neatly within at least two evidence rules, namely statements of a party-opponent (Fed. R. Evid. 801(d)(2)) and business records (R. 803(6)). Instead, defendants' apparent aim is to have certain material redacted from the documents. Plaintiffs have already expressed a willingness to redact material that clearly falls within the Court's *in limine* rulings, and the Court has already dealt with the issue of redactions as needed for specific portions of the diaries. However, instead of providing a realistic proposal for redacting the documents, defendants simply ask the Court to

exclude from evidence broad categories of material. As the overall admissibility of the documents is without question, defendants' motion should be denied.

## II.   ARGUMENT

### A.   REDACTION

Defendants raise premature, "floating" objections that are not anchored to any specific portions of the exhibits. Plaintiffs have no quarrel with redacting parts of the diaries that clearly and unambiguously deal with matters covered by the Court's rulings on the motions *in limine*. However, the proper way to carry out this goal would be for plaintiffs to redact the documents before presenting them to the jury, just as plaintiffs have been doing since this trial began, while allowing defendants time to object to any material left unredacted. Plaintiffs cannot respond to a request for redaction based on defendants' characterizations of unspecified portions of the documents.

### B.   SUBSTANTIVE OBJECTIONS

#### 1.   The Probative Value of the Diaries Far Outweighs Any Hypothetical Prejudice or Confusion.

Defendants ask this Court to exclude evidence based on hypothetical prejudice. The diaries are a rare, uncensored look into the daily activities and state of mind of the man who managed Rocky Flats. As such, they are highly probative, and highly embarrassing for defendant Rockwell.

Defendants point to no section of the Sanchini journals that is clearly prejudicial or confusing. Their arguments about three sections of the diaries upon which that the Court has already

2

ruled, *see* Def. Br. at 4, are moot.[1]  The only concrete example defendants could muster basically turns on whether the Court believes defendants' (unsupported) assertion that a person named in Mr. Sanchini's notes is not a Rockwell employee.  *See* Def. Br. at 5 (discussing P-1243, page 11).  However, even that page of the journals contains enough circumstantial evidence to support a finding that the participants are indeed Rockwell employees, and the matters discussed at the meeting (including one participant's dim view of the ALARA standard) are relevant to the issue of Rockwell's negligence.  *See infra* n.2.  Essentially defendants attempt here to create an ambiguity where there is none.

Defendants' objection regarding the "fragmented" nature of the notes goes to the weight to be given this evidence, not to its admissibility.  There is no basis to believe that the "true" meaning of Mr. Sanchini's notes is any different than the plain reading of the text.  Even if any real ambiguity is found, Mr. Sanchini is no longer alive and thus, both parties must rely on extrinsic or circumstantial evidence to support their of the journals.  Defendants are on equal footing with plaintiffs and are therefore not prejudiced.

### 2. Any Out-of-Court Statements Recorded in the Diaries Are Likely Admissible, Although Defendants Have Not Pointed to Particular Inadmissible Statements.

Nearly every type of report made and kept by any business contains some amount of hearsay.  The overriding consideration in determining the admissibility of such records is whether the documents are statements of a party-opponent, *cf.* Fed. R. Evid. 801(d), or business records, *cf.* Fed.

---

[1] Additionally, as defendants acknowledge, *see* Def. Br. at 3, plaintiffs have already agreed to redact references to a nuclear reactor and those which are clearly to *worker* safety only.

R. Evid. 803(6), and there are no countervailing indicia of untrustworthiness which outweigh admissibility. Mr. Sanchini's diaries comprise the thoughts, impressions, and ideas of the Rockwell manager of Rocky Flats. He necessarily relied on information reported to him by his employees and others in order to carry out his duties. There is nothing to indicate why the Court and the jury may not similarly rely on this information.

As previously argued (*see* Plaintiffs' Memorandum of Law in Support of Their Motion to Admit Exhibits P-1239 Through P-1249 (The Sanchini Diaries), filed Oct. 24, 2005), Mr. Sanchini's diaries themselves are admissible as statements of a party-opponent under Rule 801(d)(2)(A), (C), and/or (D). They are also admissible under other applicable hearsay exceptions (including Rule 803(6), a record of regularly conducted business activity, and Rule 804(b)(3), statements against interest). To the extent defendants wish to challenge discrete portions of the journals as containing a second layer of hearsay, these challenges do not affect the overall admissibility of the documents.

Regarding defendants' hearsay-within-hearsay objection, here again, defendants ask the Court to rule on a hypothetical controversy. If defendants can point to specific portions of the diaries that contain inadmissible hearsay, plaintiffs are willing to confer in good faith and redact truly objectionable material. However, at the present time defendants have not come forward with a single example of inadmissible hearsay within hearsay.[2]

---

[2] Defendants' one example, the meeting with "Mike" and "Wayne," is emblematic of defendants' attempt to manufacture a controversy where there is none. The statements defendants cite raise no hearsay issue. Plaintiffs have no interest in using these individuals' statements to prove the truth of the matter asserted – namely, Mike's assertion that "ALARA is ... stupid." P-1243 at p. 111 (quoted in Def. Br. at 5). Rather, the cited language shows the company's state of mind regarding safety, which is relevant to the negligence element of

In fact, there is every reason to believe that most or all of the statements recorded by Mr. Sanchini are admissible because the vast majority of those statements are likely those of Rockwell employees. Such statements are themselves admissions under Fed. R. Evid. 801(d) or business records under Rule 803(6). "If both the source and recorder of the information were acting in the regular course of the organization's business [ ] the hearsay upon hearsay problem may be excused by the business records exception to the rule against hearsay." *U.S. v. Turner*, 189 F.3d 712, 720 (8th Cir. 1999); *see United States v. Snyder*, 787 F.2d 1429, 1423-24 (10th Cir. 1986). *See also* Fed. R. Evid. 803(6), advisory committee note ("Sources of information presented no substantial problem with ordinary business records. All participants, including the observer or participant furnishing the

---

plaintiffs' nuisance claim. *Cf. Denison v. Swaco Geolograph, Inc*., 941 F.2d 1416, 1423 (10th Cir. 1991) (document admissible as non-hearsay to show intent).

Further, when the entire set of notes from this meeting is viewed in context (*see* Ex. A), it is clear that the participants in this meeting were Rockwell employees. There are numerous indicators, for example:

- the title of the meeting is "Offsite mtg on 2/22/87 discussion about what to do about TSA DOE findings," *id.* at 99, or alternatively, "off-site session w/ staff", *id.* at 111;
- the bulk of the meeting is devoted to management and safety problems at the plant, with suggestions about how "we" should improve;
- the meeting contains several statements from a "Weston," who is most likely Bill Weston, a manager at Rocky Flats who also appears on defendants' witness list;
- in several places, the notes discuss problems Rockwell was having in complying with DOE orders, *e.g. id.* at 99, 117, which makes it unlikely that any outside parties were present at such a sensitive discussion;
- the fact that "Mike" talks about air monitoring results during the time when Rocky Flats was "jellying" barrels – that is, processing waste oil barrels, likely from the 903 area, *see* Oct. 19 Tr. at 1660 (discussing removal of barrels from 903 area) – makes it highly unlikely that he is an outside party.

5

information to be recorded, were acting routinely, under a duty of accuracy, with employer reliance on the result, or in short 'in the regular course of business.'") Rockwell employees reported to Mr. Sanchini in the regular course of their work and were obligated to report truthfully. Alternatively, statements of Rockwell employees are admissible under Rule 801(D)(2)(d) as statements "by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."

Additional hearsay exceptions likely apply to other statements recorded in the journals, however defendants have not referenced a particular statement for plaintiffs to address.

### 3.     The Authentication and Foundation Requirements are Met.

Defendants attempt to conflate authenticity with foundation. Defendants have no good-faith basis to question the authenticity of these documents. The fact that the documents were produced by DOE in this litigation; labeled with Mr. Sanchini's name and the dates of each journal; stamped "Secret," meaning they contained state secrets (*see* Oct. 25 Tr. at 2489); and subjected to a classification review which found and redacted (presumably) classified material, is enough evidence that the documents are in fact authentic journals of the Rockwell Rocky Flats plant manager. Further, former FBI agent Jon Lipsky testified that all of the writing in the exhibits P-1239 through P-1249 was Mr. Sanchini's writing. *See* Oct. 25 Tr. at 2509.

Neither is there a foundation problem for these documents. Mr. Lipsky had sufficient knowledge about the journals to testify about them. During the course of his investigation, he became intimately familiar with the workings of Rocky Flats, especially regarding waste management. He also testified that in the course of the investigation, he personally read all of the

notebooks after they were seized from Mr. Sanchini's office. *See* Oct. 25 Tr. at 2484-85. In a directly parallel case, the Tenth Circuit has allowed a law enforcement officer to sponsor a document found on the defendant's property, even though a different officer actually found the document. *U.S. v. Emmons*, 24 F.3d 1210, 1214, 1217 (10th Cir. 1994). Defendants attempt to raise the bar for a sponsoring witness too high.

Additionally, there is no difficult question about the foundation for admitting the diaries under Rule 801(d)(2) as statements of a party opponent: defendants do not dispute that Mr. Sanchini, as the plant manager, had the authority to speak for Rockwell (Fed. R. Evid. 801(d)(2)(A) & (B)) and was an employee of Rockwell acting within the scope of his employment when he wrote his diaries (Fed. R. Evid. 801(d)(2)(D)). There is also sufficient foundation to find that the documents are in fact records of a regularly conducted business activity under Rule 803(6). It is apparent from the face of the documents that Mr. Sanchini took regular, extensive notes as part of his regular business practices. Those notes continue on a nearly daily (or more frequent) basis until the last dated entry, June 9, 1989 – that is, the point in time when the FBI raided the plant and seized the diaries from Mr. Sanchini's office. *See* P-1249 at 40,720 - 40,722 (Ex. B). It is not necessary that plaintiffs call Mr. Sanchini (an impossibility) or some other custodian of records to lay the foundation for these exhibits. "[T]here is no requirement that the party offering a business record produce the author of the item. [ ] '[A] foundation for admissibility may at times be predicated on judicial notice of the nature of the business and the nature of the records as observed by the court . . ..'" *Federal Deposit Ins. Corp. v. Staudinger*, 797 F.2d 908, 910 (10th Cir. 1986) (quoting

Weinstein's Evidence ¶ 803(6)[02] at 803-179 to -181 (1985)).[3]

### III. CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court deny defendants' Motion for Reconsideration.

Respectfully submitted,

Dated: October 27, 2005

/s   Jennifer MacNaughton
Merrill G. Davidoff
Peter Nordberg
Jennifer MacNaughton
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

Gary B. Blum
Steven W. Kelly
SILVER & DEBOSKEY, P.C.
1801 York Street
Denver, CO 80206
(303) 399-3000

Attorneys for Plaintiffs

---

[3] Moreover, there is no basis for defendants' request to limit the admissibility of the journals to "[o]nly the journal pages actually shown to the witness and about which testimony was received . . .." Def. Br. at 1. It is a well-recognized practice that counsel may read a document to the jury. *E.g. Worden v. TriState Ins. Co.*, 347 F.2d 336, 342 (10th Cir. 1965) ("Thus, the trial judge merely testified before the jury as to what an exhibit in the case said, and this same extract from the exhibit in the case could just as well have been read to the jury by any attorney desiring to bring this facet of the evidence to the attention of the jury."); *see also* Sydney C. Schweitzer, *Cyclopedia of Trial Practice* § 205, at 545 (1970) ("There are various methods by which a document or paper may be placed in evidence after proper identification. Counsel may read the document aloud to the jury, or he may request that the jury be allowed to examine [it].")