IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
No. 90-cv-181-JLK

---

**MERILYN COOK, et al.,**
**Plaintiffs,**

v.

**ROCKWELL INTERNATIONAL CORPORATION and**
**THE DOW CHEMICAL COMPANY,**
**Defendants.**

---

### PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EXHIBIT P-63

---

Defendants have moved [1] to exclude Plaintiffs' Exhibit P-63, a document cited and relied upon by Robert Budnitz, Ph. D., who began testifying on Thursday, October 27.

The document at issue was authored by Edward Putzier, who worked for many years at Rocky flats for both Defendants Dow and Rockwell, and is one of Defendants' named witnesses in this trial. The document sets forth Mr. Putzier's own report on Dow's and Rockwell's environmental practices, including a history of the "903 Pad" area. As Dr. Budnitz has testified, Dow stored thousands of drums – the majority containing plutonium-contaminated waste – outside in the 903 area for many years. Many of the drums corroded and leaked, and the plutonium that spilled out was spread onto Class properties.

Mr. Putzier testified at his deposition that he was *expressly asked* by Rockwell to create P-63, which is titled: "The Past 30 Years at Rocky Flats Plant" and subtitled, "A summary of

---

[1] See Court Doc. 1559, filed Oct. 27, 2005.

experiences and observations at Rocky Flats Plant over the past 30 years with emphasis on health and safety." *See* P-63 at Bates EGG2008857 (cover page) (copy attached to Defendants' Motion as Ex. A).

Mr. Putzier testified as follows:

Q. Tell us what it is?

A. It's what the title says. A Summary of Experience and Observations of Rocky Flats Plant over the Past 30 Years.

Q. Did you write this document?

A. I compiled I think is a better word.

Q. I realize that the document has within it copies of other documents, but it also has **about a total of 131 pages of text, written text. Did you write the written text?**

**A. I wrote the written text.**

...

Q. Did you spend a number of months preparing this document?

A. Yes.

Q. Can you recall how many months you spent?

A. Probably about six to seven.

...

Q. Tell me why you wrote this document?

A. Because Dr. Yoder asked me to.[2]

Q. When you spent the six or seven months writing it, was that part of your responsibilities in the last –

---

[2] Mr. Puzier testifed that Mr. Yoder was his superior at Rocky Flats at the time. Putzier dep., 3/15/95 at 137 lines 11-14 (Mr. Putzier's complete two-day deposition transcript is attached as Exh. 1).

>A. That was my own responsibility.
>
>**Q. That was your assigned responsibility in your job at the plant?**
>
>**A. Right.**

Putzier dep., 3/15/95 at 142-44 (emphases added) (Exh. 1).

In Exhibit P-63, Mr. Putzier candidly criticized Dow for its failure to correct the 903 barrel leakage. Mr. Putzier wrote:

> We do know that somewhere in the earlier 1960's . . . **we discovered definite leaks into the ground, and we discovered rabbits inhabiting the area and our management agreed to put up a rabbit-proof fence**. To **quote from an FY-1961 summary** from myself to Piltinsgrud, "Leakage from barrels of contaminated coolants stored outside has been a problem. . . ." A report in October 1960 stated that one plutonium-contaminated oil drum had leaked empty, six with oralloy-contaminated oil had leaked empty, and three with depleted uranium-contaminated oil had leaked empty.
> ...
> **We in the Health Physics Department were fully aware of the potential for materials to blow off plantsite**. . . .So it was uppermost in our minds at the time that **with some haste we should cover up this area to prevent the high winds that would come on as expected in the winter months of 1968 and 1969 from carrying the soils off plantsite. We discussed it with management and I think pretty much all the pressure we could bear was brought on them. Even so, it seemed like the Engineering head at the time was not excited enough about it to at least have some gravel brought in and put down. Instead, there was a lot of discussion.** . . .
> ....
> I have witnessed on presentation of the Plant briefing for visitors in which the speaker implied we did not have as much concern for the environment in those days. As far as Health Physics is concerned, I would take issue with that but with respect to **our management** and the AEC the reader **can draw his own conclusions**."

*See* P-63 at Bates Page EGG2009011-12 (internal pagination page 66-67) (emphases added).

Dr. Budnitz both cites and quotes this document in his expert report (P-1150) in this case.

*See* P-1150 at 16-17.

3

Mr. Putzier's own words demonstrate the reckless and negligent conduct of Dow. And Mr. Putzier was there at Rocky Flats from the start. He worked in health physics and monitoring at Rocky Flats for Dow beginning on June 11, 1952 (see P-63 at EGG2008862; and Putzier dep., 3/15/95 at 27); and held, among other jobs, the title of health sciences director and the lead health physics person at Rocky Flats. Putzier dep., 3/15/95 at 26, 64, 138.

Exhibit P-63 is plainly an admission by a party-opponent under Fed. R. Evid. 801(d)(2), and therefore admissible for that reason. A statement is admissible as an admission by a party-opponent if *any one* of the subparts of 801(d)(2) is satisfied:

> (2) **Admission by a party-opponent**. The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity **or** (B) a statement of which the party has manifested an adoption or belief in its truth, **or** © a statement by a person authorized by the party to make a statement concerning the subject, **or** (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, **or** (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

Fed. R. Evid. 801(d)(2) (emphases added).

Exhibit P-63 qualifies, at least, under both 801(d)(2)(A) and 801(d)(2)(B), because Mr. Putzier, at his deposition, affirmed that he made the admissions contained in P-63,[3] and, subsequently, defendants *Dow and Rockwell* have endorsed Mr. Putzier as their witness to testify at this trial *about Dow's conduct*.[4]  Dow should not be heard to proffer Mr. Putzier as *Dow's own* witness to testify about *its* conduct, yet pretend he is a stranger for purposes of Fed. R. Evid. Rule 801.

---

[3]*See* Putzier dep., 3/16/95 at 68 - 72.

[4]*See* Defendants' September 29, 2005 Witness List at 5 (except attached as Exh. 2).

4

In addition, P-63 qualifies under Rule 801(d)(2)© because Mr. Putzier was authorized – indeed, he was expressly asked as part of his job responsibility – to write P-63.[5]

Moreover, even if, arguendo, Rule 801 did not apply (which it expressly does), P-63 would be admissible as an exception to hearsay under Fed. R. Evid. 803(5); 803(6); and 803(16).   Rule 803(5) provides an exception for a  "Recorded recollection;" and P-63 was created by Mr. Putzier in 1982, when the matters discussed were much closer in time in his memory.  Indeed, defendants have indicated Mr. Putzier's current health will not permit him to testify in person at trial, and have asked for leave to permit him to testify via deposition.

Rule 803(6) provides an exception for "Records of Regularly Conducted Activity."  Mr Putzier testified that defendant Rockwell expressly asked him to write P-63, in the regular course of business as part of, and within the scope of, his job responsibilities.

Rule 803(16) provides an exception for "Statements in ancient documents" in existence 20 years or more.  Mr. Putzier himself authenticated P-63 at his deposition, and the documents is indisputably more than 20 years old (as are any attachments to it).

In sum, P-63 is admissible under numerous evidentiary rules and should be received into evidence.

Defendants' complain, however, that this lengthy document includes a few references that, defendants say, are barred by Fed. R. Evid. 407.[6]  Defendants have not established that any

---

[5]Rule 801(d)(2)(D) may also apply because not only have defendants Dow and Rockwell named Mr. Putzier, their former employee, as their witness, they served an "expert" report by him *after* he had been deposed in 1995, and so *after* Mr Putzier had confirmed the admissions contained in P-63.

[6]Defendants cite to Mr. Putzier's deposition with respect to these few references; but it appears this was a mistake.  Defendants likely meant to refer to page numbers (23, 38, and 48) in

of these few references actually qualify under 407. Moreover, Rule 407 itself provides that subsequent measures are admissible for other purposes, including to prove ownership, control, or feasibility of precautionary measures. Hence, even if 407 applies to the three snippets that defendants cite, the same evidence remains admissible under the exceptions to 407.

Defendants also complain that parts of P-63 are illegible, or consist of other documents that Mr. Putzier compiled (documents of Dow or Rockwell). Defendants largely do not contest the admissibility of these other, included documents, and none of these minor complaints provides any basis for the relief defendants seek - i.e., the exclusion of P-63.

Finally, even assuming that any of defendants' arguments to exclude P-63 had merit (and they do not), under F.R.E. 703, the bases for an expert's opinion may be admitted if "the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703.

The probative value of P-63 is plain. Mr. Putzier worked at Rocky Flats for both Dow and Rockwell. As he wrote, he and others tried to persuade Dow management to correct the 903 contamination problem, but Dow management "was not excited enough" about the chronic leakage of plutonium-contaminated waste into the soil to "at least have some gravel brought in and put down."

Exhibit P-63 thus shows that ***Dow management knew*** that plutonium from the 903 area would likely spread off-site if preventive measure were not taken. This is highly probative and its "prejudicial" effect – showing Dow's utter and conscious disregard for the likelihood of plutonium being spread off-site – is important and highly probative evidence, and not the type of

---

P-63 itself.

unfair prejudice that supports exclusion.

In conclusion, Plaintiffs respectfully request that the Court *deny* Defendants' Motion in Limine to Exclude Exhibit P-63.


Dated: October 30, 2005                             /s Merrill G. Davidoff
                                                    Merrill G. Davidoff
                                                    David F. Sorensen
                                                    Berger & Montague, P.C.
                                                    1622 Locust Street
                                                    Philadelphia, PA 19103
                                                    (215) 875-3000



                                                    Gary B. Blum
                                                    Steven W. Kelly
                                                    Silver & DeBoskey, P.C.
                                                    1801 York Street
                                                    Denver, CO 80206
                                                    (303) 399-3000
                                                    Attorneys for Plaintiffs
                                                    And the Class