**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-181-JLK

MERILYN COOK, *et al.*,

        Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

        Defendants.

---

**DEFENDANTS' MOTION IN LIMINE TO LIMIT THE TESTIMONY OF K. SHAWN SMALLWOOD**

---

There are two problems with K. Shawn Smallwood's expected testimony. First, he now seeks to supplement it with new articles, opinions, and observations not previously disclosed in accordance with this Court's June 17, 2004 Order. (Ex. A, 6/17/2004 Order.) Second, based upon his deposition testimony and expert report, Defendants expect that Dr. Smallwood will also attempt to testify about irrelevant matters having nothing to do with his area of expertise, "soil bioturbation," or any of Dow or Rockwell's conduct. Dr. Smallwood should not be permitted to testify about these matters for several reasons.

As an initial matter, Dr. Smallwood should not be permitted to testify about any new work, study, or opinions that he developed after the date of his November 1996 report, including articles published after 1996 and observations he made of Rocky Flats in 2001. Dr. Smallwood did not file a supplemental expert report detailing these new findings. In addition, many of these previously undisclosed materials discuss observations and opinions about other DOE facilities,

such as Hanford. They are not relevant to whether Dow or Rockwell caused any plutonium to be deposited off-site on Plaintiffs' properties.

Moreover, Dr. Smallwood is expected to testify about irrelevant observations he made of Rocky Flats that fall outside his area of expertise and do not implicate Dow or Rockwell. For example, Dr. Smallwood is expected to testify about:

- Observations of the Rocky Flats plant during three plant tours in *1996*, *twenty-one* years after Dow had left the plant and *seven* years after Rockwell left.

- Irrelevant and prejudicial observations made by Kaiser Hill employees in 1996 that do not implicate the conduct of either Dow or Rockwell and do not relate to Dr. Smallwood's bioturbation opinions.

- Pondcrete and other environmental practices that do not relate in any way to bioturbation.

Dr. Smallwood's observations about Rocky Flats site conditions and personnel in 1996 is irrelevant to the question of whether any activities by Dow or Rockwell caused any contamination to migrate off-site. Speculation and innuendo about safety practices of Kaiser Hill personnel in 1996 is not relevant to the issues being tried in this case and is intended to inflame the jury.

Finally, Dr. Smallwood may not testify about conversations with Kaiser Hill employees because these statements constitute hearsay not within any exception. Nor may plaintiffs properly seek to admit these statements through Federal Rule of Evidence 703. It is not the practice of experts in Dr. Smallwood's field to rely on irrelevant comments by employees; nor does their probative value in assisting the jury to understand Dr. Smallwood's opinion on bioturbation substantially outweigh the danger of unfair prejudice to Defendants.

### I. DR. SMALLWOOD SHOULD NOT BE PERMITTED TO TESTIFY ABOUT ANY OBSERVATIONS OR CONCLUSIONS HE MADE AFTER HIS NOVEMBER 1996 EXPERT REPORT BECAUSE HE DID NOT FILE A SUPPLEMENTAL EXPERT REPORT.

Plaintiffs intend to introduce a number of articles published after Dr. Smallwood filed his expert report in 1996. The new materials not relied upon by Dr. Smallwood in his 1996 report, but about which he apparently intends to testify, are P-1294, P-1344, P-1345, P-1346, P-1347, P-1348, P-1349, and P-1350[1]. In addition, Defendants expect that Dr. Smallwood will attempt to testify about observations he made of the Rocky Flats Plant in 2001, five years after the filing of his report. However, Dr. Smallwood never filed a supplemental expert report discussing either these articles or his 2001 observations. Consequently, he is not permitted to testify about them at trial.

The new materials sought to be used by Dr. Smallwood include a series of articles written by Dr. Smallwood and others after 1996 that contain supplemental data, experiments, and opinions. For example, Plaintiffs intend to introduce:

- Research published in 1999 detailing methods of estimating population density of pocket gophers. (P-1347.)

- Research "estimating burrow volume and excavation rate of pocket gophers." (P-1348.)

- An article describing the creation of a plaster cast of a harvester ant colony's nest. (P-1349.)

In addition, many of these articles detail studies at other facilities. (*See*, *e.g.*, P-1344, P-1345, and P-1346 (discussing dispersal of contamination by wildlife at Hanford).) Evidence of

---

[1] Although P-1350 was created in 1977, like these other documents it was not disclosed as a reliance material in Dr. Smallwood's report.

3

environmental practices at other sites is irrelevant.  (*See*, *e.g.*, 10/17/2005 Trial Tr. at 1205-06.)
Therefore, these articles are inadmissible.

Under Federal Rule of Civil Procedure 26(a)(2)(B), any expert who is expected to testify at trial is required to provide a report containing "a complete statement of ***all*** opinions to be expressed and the basis and reasons therefore." (emphasis added).  Rule 26(e)(1) provides that a party must supplement its disclosures if it "learns that in some material respect the information disclosed is incomplete or incorrect."  The Court ordered the parties to submit all supplemental expert reports by July 30, 2004.  (Ex. A, 6/17/2004 Order.)  Plaintiffs failed to file such a report for Dr. Smallwood.  Obviously, Dr. Smallwood's 1996 report did not, and indeed could not, cite to articles published after 1996.  Not could it contain observations he made in 2001.  Plaintiffs were required to supplement Dr. Smallwood's 1996 report if Plaintiffs planned to have Dr. Smallwood testify regarding matters not contained within it.

Rule 37(c)(1) provides the remedy for failure to provide the disclosures required by Rules 26(a) and (e): "A party that without substantial justifications fails to disclose information required by Rule 26(a) or 26(e)(1) . . . is not, unless such failure is harmless, [] permitted to use as evidence at trial . . . information not so disclosed."  Plaintiffs' failure to disclose is not harmless.  Defendants were not informed of Dr. Smallwood's reliance upon these new articles or the opinions contained in them until one day before he was scheduled to testify.  Defendants had no opportunity to conduct any discovery with respect to these new articles or the opinions expressed in them and will be hampered in their ability to conduct meaningful cross-examination of Dr. Smallwood.  Because Plaintiffs never supplemented Dr. Smallwood's report with any additions to Dr. Smallwood's testimony based upon articles published after 1996 or observations of the plant in 2001, Dr. Smallwood should not be permitted to testify about these articles or the

4

data or opinions contained within them, his 2001 visit to Rocky Flats, or to any other matters that post-date the creation of his November 1996 report.

## II. DR. SMALLWOOD'S OBSERVATIONS OF THE CONDITION OF ROCKY FLATS PLANT IN 1996 ARE IRRELEVANT AND UNDULY PREJUDICIAL

Dr. Smallwood visited Rocky Flats three times in 1996. The ostensible purpose of these trips was to improve Dr. Smallwood's "familiarity with the site and the surrounding environment." (Ex. B, Smallwood Report at 2.) To this end, Dr. Smallwood "made notes of ground conditions, wildlife . . . [and] specifically examined the sites for signs of animal presence and animal burrowing in the soil." (*Id.* at 3.) Dr. Smallwood also made notes about matters unrelated to bioturbation and observed and reported on conditions at the Rocky Flats plant that cannot be attributed to Defendants. For instance, Dr. Smallwood noted in his report, and is expected to testify, that:

- "The 903 Pad has deteriorated since the last reported repairs of cracks in 1989." (Ex. B, Smallwood Report at 9.)

- "Winds also destroyed some of the tents on the 750 and 904 Pads, leaving entire side and ceiling segments missing or tattered and dangling amid the rows of boxes containing pondcrete." (Ex. B, Smallwood Report at 9.)

- "[T]he Radiological Control Technicians [] struggled with the instrumentation, the math, and the manuals . . . .We were not entirely confident our equipment was actually uncontaminated." (Ex. B, Smallwood Report at 7-8.)

Neither Dow nor Rockwell had been on site for years at the time Dr. Smallwood made these observations. Because these observations are not probative of whether Dow or Rockwell caused any offsite contamination, Dr. Smallwood should not be permitted to testify about them at trial.

It is axiomatic that evidence must be relevant in order to be admissible. The touchstone for relevance of expert testimony is whether "the evidence or testimony [will] assist the trier of fact to understand the evidence or to determine a fact in issue." *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 591

5

(1993)).  The only facts at issue in this case are whether Defendants caused any plutonium contamination to be deposited off-site.  Therefore, in order to be relevant, Dr. Smallwood's testimony must be probative of whether *Defendants*, Dow or Rockwell, caused any off-site contamination.

Here, Dr. Smallwood's proposed testimony regarding the condition of the 903 pad in 1996, tents around pondcrete in 1996, and radiation technicians employed by Kaiser Hill has nothing to do with any activities undertaken by Defendants.  Dow left the plant in 1975 and Rockwell left in 1989.  Thus, Dr. Smallwood's observations do not relate to Dow or Rockwell and are irrelevant.  Indeed, Dr. Smallwood specifically acknowledges that the condition of the 903 pad "has deteriorated since the last reported repairs of cracks *in 1989*."  (Ex. B, Smallwood Report at 9 (emphasis added).)  Any deterioration would have been attributable to a party other than Dow or Rockwell, since Dow left the plant in 1975 and Rockwell left the plant in 1989.  Therefore, Dr. Smallwood's proposed testimony does not relate to Defendants in any way, is irrelevant, is unduly prejudicial, and must be excluded.

Similarly, Dr. Smallwood's speculation that the radiation technicians – at the time Dr. Smallwood visited the plant – did not know what they were doing, and his unfounded concern that his own equipment may have become contaminated, does not relate in any way to Dow or Rockwell.  These technicians were employed or supervised by Dow or Rockwell personnel. Even more importantly, this testimony does not relate in any way to whether contamination made it off-site and onto Plaintiffs' properties.  It thus does not assist the jury to "understand evidence or determine a fact in issue," *Gabaldon*, 389 F.3d at 1098, and is inadmissible.

Finally, these observations of Dr. Smallwood are inadmissible under Federal Rule of Evidence 403.  Rule 403 permits the exclusion of evidence if "its probative value is substantially

6

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Here, Dr. Smallwood's testimony, if permitted, would cause a needless waste of time because it does not relate to any conduct by Dow or Rockwell. Moreover, there is a serious risk of unfair prejudice to defendants because any arguably improper conduct observed by Dr. Smallwood might be erroneously attributed to Defendants. Accordingly, such testimony should be barred under Rule 403's balancing test.

### III. DR. SMALLWOOD MAY NOT TESTIFY TO ANY HEARSAY MATTERS RELAYED TO HIM BY ROCKY FLATS EMPLOYEES

During his visits to Rocky Flats, Dr. Smallwood made notes of "interviews with Rocky Flats personnel." (Ex. B, Smallwood Report at 3.) Not only is this testimony irrelevant, because none of these Kaiser Hill personnel were employees of Dow or Rockwell, but it is also hearsay not within any exception and is therefore inadmissible. *See* Fed. R. Evid. 801(c) (" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1297 (10th Cir. 1998) (admission of hearsay evidence not within any exception was substantially prejudicial and warranted new trial.)

In his expert report, Dr. Smallwood's discussion of these conversations is replete with hearsay:

- "According to Anne Siemen, who was an Environmental Remediation Project Manager provided by DOE as my guide during the site visit, these pipes at the spray fields were used to spray sanitary sewage effluent containing nitrates, trace plutonium, and other contaminants on the grounds, but the pipes had never been cleaned since abandonment." (Ex. B, Smallwood Report at 5.)

- "According to local ecologists . . . nearly every trap contained a mouse." (*Id.*)

- "[T]he Radiological Control Technicians . . . remarked on several occasions that their instrumentation for detecting gross Alpha and gross Beta became unreliable

7

> in the weather conditions we were experiencing, which was only a light breeze and cold enough to wear a flannel shirt." (*Id.* at 8.)

- "I asked the RCT (Rich Adkins) to check the scat for radioactivity, but he refused on the grounds that such surveys were not explicitly authorized in the RWP. The RCT said he had always wanted to survey fecal material from wild animals on the Plant, but his supervisors would never authorize it." (*Id.* at 9.)

- "While waiting for confirmation of our scheduled visit, this foreman complained . . . of considerable pressure he is receiving to ship out large amounts of waste as soon as possible." (*Id.* at 9.)

- "The RCT told me that he and his fellow employees all know they are contaminated with beryllium and asbestos and his employers are seeking to take biopsies from his lungs." (*Id.* at 10.)

If Dr. Smallwood were to testify about these conversations at trial, it would constitute hearsay of the worst sort. Dr. Smallwood would be reporting second and third-hand allegations and innuendos of improper conduct. These hearsay statements bear no independent indicia of reliability and Defendants would have no way to test the truth or accuracy of such assertions. Nor do these statements constitute party admissions because they were not made by Dow or Rockwell employees.

In addition, any marginal probative value these statements might have is dramatically outweighed by the unfair prejudice it would cause Defendants. Allowing Dr. Smallwood to testify about these conversations would risk having the jury associate Dow or Rockwell's conduct with the allegedly improper conduct of Kaiser Hill employees. The statements should therefore be excluded under Federal Rule of Evidence 403.

Furthermore, Plaintiffs may not properly seek to admit the substance of these conversations through Federal Rule of Evidence 703. Although Rule 703 permits an expert to rely upon "facts or data" not admissible into evidence, the facts or data must be of a type "reasonably relied upon by experts in the particular field . . . ." Here, a bioturbation expert would not reasonably rely on statements by employees that have nothing to do with bioturbation.

8

Therefore, the innuendos and allegations contained in these conversations are not of a type upon which an expert would reasonably rely.

Moreover, facts or data may be disclosed to the jury under Rule 703 only if "their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect."  This rule creates a "presumption against disclosure to the jury . . . ." Advisory Committee Notes to 2000 Amendments.  The purpose of disclosing the facts to the jury is to help the jury evaluate the expert's opinion – not to help the jury reach a substantive conclusion on the merits.  Hence, the facts or data should not be disclosed if there is danger that the jury will misuse them for substantive purposes.  *See Turner v. Burlington Northern Santa Fe R.R. Co.*, 338 F.3d 1058, 1062 (9th Cir. 2003) (excluding evidence where expert did not use evidence as basis for opinion but as substantive evidence of ultimate conclusion); McCormick on Evidence § 324.3 (2003 Pocket Part) ("[T]he proponent now has a much more substantial burden in showing how receiving the inadmissible evidence will aid the jury in evaluating the expert's opinion, as opposed to being misused by the jury for substantive purposes.")

Here, these conversations do nothing to assist the jury in understanding Dr. Smallwood's opinion because these conversations have nothing to do with the substance of his testimony – the potential spread of contamination through winds caused by animal activity.  There is a substantial risk that defendants will be prejudiced by these comments.  Consequently, the substance of these conversations may not be disclosed to the jury under Rule 703.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that Dr. Smallwood not be permitted to testify as to: (1) articles published and matters observed after the filing of his

9

expert report in 1996; (2) personal observations he made of the Rocky Flats plant having nothing to do with bioturbation; and (3) hearsay conversations with 1996 Rocky Flats employees.

Dated:  November 2, 2005                                    Respectfully submitted,


/s/ John E. Tangren_____
One of the Attorneys for the Defendants
David M. Bernick
Douglas J. Kurtenbach
Ellen Therese Ahern
Mark J. Nomellini
John E. Tangren
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636
Phone:  312-861-2000
Fax:     312-861-2200

Joseph J. Bronesky
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Phone:  303-297-2900
Fax:     303-298-0940

Attorneys for ROCKWELL INTERNATIONAL CORPORATION and THE DOW CHEMICAL COMPANY

## **CERTIFICATE OF SERVICE**

     I hereby certify that on November 2, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses for the following:

Peter B. Nordberg, Esq.
c/o Karen M. Markert
Apartments at Denver Place, Apt. 2812
1880 Arapahoe Street
Denver, CO 80202
pnordberg@bm.net
kmarkert@bm.net

Gary B. Blum, Esq.
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206
blumg@s-d.com


                                                 /s/ Adrienne Reynolds_____
                                                 Adrienne Reynolds (legal assistant)