## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

### No. 90-cv-181-JLK

_____

**MERILYN COOK, et al.,**

      **Plaintiffs,**

         **v.**

**ROCKWELL INTERNATIONAL CORPORATION and**
**THE DOW CHEMICAL COMPANY,**

      **Defendants.**

_____

### PLAINTIFFS' OPPOSITION TO "DEFENDANTS' OBJECTIONS AND RENEWED MOTION TO STRIKE PORTIONS OF LIPSKY TESTIMONY"

_____

Plaintiffs respectfully submit this memorandum in opposition to "Defendants' Objections and Renewed Motion to Strike Portions of Lipsky Testimony" (the "Motion") (filed Nov. 1, 2005) [Ct. Rec. 1573].

### I.  OVERVIEW

Defendants' motion seeks characteristically ambitious relief: the striking of unspecified testimony within any of several broadly defined topics from a third-party witness of pivotal importance to plaintiffs' case – perhaps the *only* witness with such wide-ranging knowledge of the criminal investigation of Rockwell.  Defendants seek that relief based primarily on the witness's good-faith attempt, on cross-examination, to respond to defense counsel's questions without violating instructions from the United States Department of Justice ("DOJ") placing certain narrow

and defined restrictions on the permissible scope of his testimony.  Secondarily, defendants rely on spurious hearsay arguments.

We address below the primary categories of testimony raised in defendants' motion. Defendants' arguments involving confidential sources and informants fail because: (1) defendants can point to no testimony dependent on information from such sources or informants; (2) Mr. Lipsky expressly testified that if the allegations in the search warrant affidavit had depended on such information, the affidavit would have said so, as it does not; and (3) even if evidence involving informants were material, defendants could have sought authorization from the Department of Justice for Mr. Lipsky to testify on those subjects, but failed to pursue such relief.

Defendants' arguments involving testimony barred by Fed. R. Crim. P. 6(e) fail on similar grounds: (1) the few questions on which Mr. Lipsky invoked Rule 6(e) concerned  topics first raised by defendants themselves during cross-examination, and those questions were not necessary to test the credibility or veracity of any testimony offered by Mr. Lipsky on direct examination; (2) defendants' ability to cross-examine Mr. Lipsky (or to offer other evidence) on even those topics was not materially hampered; (3) defendants do not even contend that Mr. Lipsky's invocation of Rule 6(e) was incorrect or improper; and (4) defendants could have sought dispensation from Rule 6(e)'s requirements but failed to pursue such relief.

Finally, defendants' arguments based on hearsay are invalid because any hearsay issues should have been explored during the examination itself, when foundational problems might still have been cured, and also because the testimonial examples cited by defendants do not, in fact, involve hearsay at all.

## II.  ARGUMENT

### A.  "Information from Informants"

The first "category" of evidence that defendants apparently seek to exclude is any testimony by Mr. Lipsky based on "information from informants."  However, defendants do not list any actual substantive testimony that they consider subject to exclusion on this basis.  Defendants certainly cite *no* example in which plaintiffs sought to elicit from Mr. Lipsky any testimony whose foundation is alleged by anyone to have rested on information that informants supplied to Mr. Lipsky.  The *only* line of questioning cited by defendants in this "category" was initiated by defendants themselves, on cross-examination, and defendants selectively cite only the first two pages (Tr. 2531-32) from six pages (Tr. 2531-36) of relevant colloquy.  When read in full, that colloquy refutes defendants' position rather than supporting it.

Indeed, even the fragmentary portion of the transcript that defendants do cite begins with an explicit disclaimer of any interest by defense counsel in questioning Mr. Lipsky about specific informants, or about any information they may have provided:

> Q.  And is it true that when it comes to the informants that came to you prior to the time that you did that affidavit, would it be fair to say that what those informants told you also went into some of the things that were said in that affidavit?
>
> A.  From my understanding of Title 28, I'm not authorized to talk about sources or informants.
>
> Q.  Okay.  I don't want to -- and ***God knows I have no interest in even coming close to the line, because I understand that that's something that is not only important to me, it's important to you, so I'm not trying to do that.***

*See* Tr. 2531-32 (emphasis added).

That disclaimer is consistent with defendants' own previous conduct.  Defendants knew, prior to Mr. Lipsky's testimony, and even prior to Mr. Lipsky's deposition, that DOJ had sent Mr.

*Plaintiffs' Response to Defendants' Motion to Strike Testimony from Mr. Lipsky – Page 3*

Lipsky a letter outlining the permissible scope of his testimony and also setting forth certain restrictions. *See* Tr. 2231-37 & Ex. P-1272 (DOJ letter to Mr. Lipsky dated Oct. 13, 2005). Those restrictions, of course, hampered plaintiffs as much as they did defendants, if not more, and plaintiffs had no authority to excuse Mr. Lipsky from adherence to them. However, if defendants felt it important to secure permission from DOJ to question Mr. Lipsky about informants, or if defendants wanted clarification of the guidance that DOJ had already provided, defendants were free to present DOJ with their request. *See* 28 C.F.R. § 16.26(c) (giving DOJ discretion to permit disclosure of informant-related information where circumstances warrant).

Defendants do not even purport to have pursued any such remedy – before, during, or after Mr. Lipsky's testimony, whether at deposition or at trial. Quite the contrary, defendants expressly agreed to an instruction advising the jury that *no* party had sought to compel Mr. Lipsky's testimony on any matter within the scope of the DOJ's restrictions:

> THE COURT: The instruction I am giving you is that this witness is testifying under certain constraints, and that's what Mr. Davidoff is going into, but these are not constraints that are imposed upon him; in other words, no restrictions by the defendants in this case, but because he is a retired F.B.I. agent, at the time he left the F.B.I. he was required to sign a certain letter just so that he cannot disclose certain matters that the F.B.I. considers to be privileged. One of those is trade secrets and other certain kinds of equipment that were used, another is names of informants, and I think there are a few others but I don't recall specifically what they are.

> MR. DAVIDOFF: I am going to try to develop that briefly, your Honor.

> THE COURT: This is a rather common thing that when a former agent testifies or somebody presently in the F.B.I, that the F.B.I. requires them not to testify to certain matters that can be under certain circumstances brought up in court to compel that kind of testimony, but *that hasn't been done in this case*.

> Okay. Does that satisfy you for the instruction? Or do you want more?

> MR. DAVIDOFF: I think it was Mr. Bernick.

THE COURT:  I know, I'm asking you first.

MR. DAVIDOFF:  If he isn't satisfied, I would be surprised.

THE COURT:  Are you satisfied that I've given an accurate --

MR. DAVIDOFF:  I'm satisfied, your Honor.

THE COURT:  Mr. Bernick?

MR. BERNICK:  *That's fine, your Honor.*

Tr. 2232-33 (emphasis added).

In any event, defendants cannot establish that *any* testimony by Mr. Lipsky about the allegations in his affidavit rested on information from informants.  The reason is very simple: Mr. Lipsky himself testified flatly to the contrary, in the portions of his testimony that defendants omit to cite:

Q.  Let me go on to something else.  *I want to get back to the things you can't share with us.*  What I am asking you is that recognizing where you chose to include a document, we concede that, but how do we know which of the statements contained in the affidavit, particularly the more conclusory statements like  probable cause, how do we know which ones of them were affected  by information that you did receive but that you can't share with us?  Is there any way that we can figure that out?

A.  *Yes, I can actually answer that pretty straightforward.*

Q.  Okay.

A.  Mr. Bernick, as a law enforcement officer, if anything that I considered in my probable cause statements as a concluding paragraph at the end -- in this particular declaration, *I would mislead the Court if I didn't include everything that I considered in that conclusory probable cause statement.  So the inference that I made a determination of probable cause for things that I decided not to put in the affidavit is absolutely false.*

Q.  Well, I'm not suggesting that.

A.  No, I want to make it clear --

*Plaintiffs' Response to Defendants' Motion to Strike Testimony from Mr. Lipsky – Page 5*

Q.  Again, bear with me so that –

A.  No, I think it's really important for everybody to understand that.

Q.  Again --

MR. DAVIDOFF:  Your Honor, I object to the witness being interrupted.

THE COURT:  Overruled, overruled.

BY MR. BERNICK:

Q.  Mr. Lipsky, again, can you focus on my question?  I'm not drawing an inference that you misled anything, that anything is false.  That's all stuff I'm not saying, I'm not suggesting.   I'm just trying to figure out what facts in the affidavit – you've told me that the affidavit was done at the time in the middle of the field investigation, correct?

A.  The full field, yes.

Q.  Yes.  All I'm saying is I'm assuming that when you did the affidavit it is a fact, is it not, and I think you just told us a few minutes ago that you considered all of the information that you had in the investigation when you put together the affidavit, correct?

A.  Whether to put it in the affidavit or not.

Q.  Yes.  And all I'm saying is that for us to go back – and I think it's almost a self-evident question, there's no way we can go back from the affidavit itself, determine what impact or what judgments that you made about what to select and what not to select, because we don't have all of the information that you had at the time, correct?

A.  *No, that's not correct at all.*

Q.  Let's push on.

*See* Tr. 2534-36 (emphasis added).

In sum, defendants' motion fails to point to a single substantive statement or allegation by

Mr. Lipsky – in his affidavit, or on direct examination, or on cross – resting on information from

informants.  Indeed, defendants' motion does not offer one shred of evidence to support a claim that

*anything* in Mr. Lipsky's testimony even *implicated* any knowledge that informants may have supplied.  What evidence there is supports the contrary view, which may explain why defendants never sought DOJ's authorization for Mr. Lipsky to answer more fully, or an order compelling his testimony – an omission that would suffice, even standing alone, to defeat the relief that defendants seek.

### B.  "Sources of Information"

Defendants also seek to exclude testimony from Mr. Lipsky involving "sources of information."  *See* Motion at 2.  What has already been said regarding informants applies with equal force to this category, for which defendants rely on the same testimonial excerpt.  Little need be added, except to clear up a potential ambiguity.

It is an attribute of *all* admissible testimony, of course, that it relies on some "source of information" (a phrase of defendants' coinage that nowhere appears in the relevant testimony or regulations).   In the current context, however, the term "source" carries a narrower meaning.  Mr. Lipsky's testimony was that under the governing regulations, he felt he was not permitted to testify about "sources or informants."  *See* Tr. 2531; *see also id.* 2532 ("informants or sources").  From the context, this was plainly a reference to 28 C.F.R. § 16.26(b)(4) (limiting testimony that could reveal "a confidential source or informant, unless the investigative agency and the source or informant have no objection").

Plaintiffs do not understand defendants to have moved to strike all portions of Mr. Lipsky's testimony that may have relied on some "source of information" in the broader, everyday sense.  In this narrower context, "source" and "informant" are essentially synonyms, and the same arguments apply to testimony involving both categories.

### C.  Investigation of the Building 771 Incinerator

Defendants identify no testimony that they seek to exclude from Mr. Lipsky's direct examination in this category (the status and pendency at various times of investigations into the operation of the Building 771 incinerator).  Defendants instead discuss Mr. Lipsky's responses during cross-examination on a sub-topic that defendants themselves introduced.  In particular, the questions on which defendants focus involved an inquiry *by defendants* about whether "the investigation" had reached a "conclusion" as to the Building 771 incinerator before Mr. Lipsky's own investigative authority was revoked.

Plaintiffs cannot be sure of having made complete sense of this portion of the cross-examination.  That is largely because plaintiffs cannot be sure precisely what questions defense counsel intended to ask – an uncertainty that Mr. Lipsky, by some indications, appears to have shared.  The language in defendants' *motion* says defendants' questions were about views and undertakings of "the investigative team" (*see* Motion ¶ 3, at 3).  But the language in defendants' actual questioning was considerably less exact.  As the Court is aware, the word "team" came to carry a very particular meaning during Mr. Lipsky's examination.  It was used to denote a group of professionals including the prosecutors, Mr. Lipsky, and Mr. Smith, but it was not used to embrace the Special Grand Jury, considered as an investigative organ in its own right.  This, no doubt, was a helpful distinction, but defendants' questioning of Mr. Lipsky did not consistently draw it.  We italicize a few of the vague spots, as well as a place or two where confusion by the witness seems manifest:

> Q.  Okay.  Now you say that your authority was revoked by the end of 1989, and I'm asking you now whether ***the investigation had reached a conclusion*** prior to the time or even, say, at the time that your authority was revoked, ***had there been a***

*conclusion to the investigation* on this question of whether the incinerator had operated?

A.  Yes.

Q.  Yeah.  In fact, isn't it true that the operation of the incinerator during the shutdown period was a claim that *was investigated* both before the F.B.I. raid and then after the F.B.I. raid lasting into the fall of 1989?

A.  *I'm sorry, I didn't follow the dates.*

Q.  Was *the investigation* into the incinerator's operation *pursued* during the fall of 1989?

A.  *I'm still not following.  Sorry.*

Q.  Okay.  June 6th, 1989, the raid takes place.

A.  Yes.

Q.  By the end of 1989 your authority is revoked?

A.  Yes.

Q.  During the interim period of time, *was there or was there not an investigation* into the operation of the incinerator?

A.  Yes.

Q.  And isn't it true that *the team reached a conclusion* regarding the operation of the incinerator and announced it in November of 1989?

A.  A truthful response to that question is more than a one-word answer.

Q.  Did *the investigation reach a conclusion* before your authority was revoked?

A.  My answer would be that I'm not authorized to discuss certain matters regarding Title 28 Code of Federal Regulations.

*See* Tr. 2912-13 (emphasis added).

Plaintiffs do not believe the ambiguities in these questions to be entirely accidental. To speak of the "conclusion" of an "investigation" would normally involve (if not the date of its cessation) a reference to some formal finding by some definite set of investigators possessed of recognized institutional competence to determine the question. In this litigation, by contrast, defendants have long been keen to extend the concept to swirling eddies of prevailing opinion among a certain cadre of DOJ officials and employees – some of whom may have had discretion whether to prosecute, but none of whom possessed any semblance of institutional authority to indict, convict, acquit, or "conclude." To others, meanwhile, perhaps including Mr. Lipsky, the "investigation" might be thought to include the Special Grand Jury's own inquiries.

However that may be, and whether or not defense counsel and Mr. Lipsky reliably reached a meeting of the minds on the language being spoken, one thing seems plain. Mr. Lipsky understood some of the questions he was asked to call for disclosure of proceedings before the grand jury. Defendants have raised no argument that he was mistaken in that appraisal. Defendants did not attempt to probe whether Mr. Lipsky's understanding of Rule 6(e) might be unduly expansive (a hypothesis for which there is no support in the record) and have made no argument on this motion that it was. Nor did defendants attempt, at any time, to secure the relief that Rule 6(e) expressly permits: court-approved disclosure, upon a showing of particularized need, of discrete portions of the grand jury's proceedings, subject to any appropriate terms and conditions, for use in another judicial proceeding. *See* Fed. R. Crim. P. 6(e)(3)(E)(1); *see also, e.g.*, *In re Grand Jury 95-1*, 118 F.3d 1433, 1437 (10th Cir. 1997).

A litigant who attempts and fails to secure disclosure of grand jury material for use in another judicial proceeding is in the same position as any other litigant who cross-examines a

witness on a subject within some privilege or other testimonial bar.  That is, the appropriate legal authorities have balanced the litigant's need for the information for use in cross-examination, on the one hand, against other legitimate policy concerns, such as those embodied in Rule 6(e) or the hearsay rule, on the other.  Everyone acknowledges the importance of cross-examination to our adversary system, but no one supposes that right to extend to the elicitation on cross-examination of inadmissible evidence.  If the evidence sought to be elicited on cross-examination is inadmissible, the disappointed litigant simply moves on to the next question.  The rules of evidence produce that result every day.

But let us be plain.  *This* case involves *no* litigant who pursued judicial authorization for disclosure of grand jury material and was frustrated in the attempt.  This case involves defendants who were on notice for many months of Mr. Lipsky's probable testimony but disdained to pursue relief from the grand jury secrecy rules through readily available procedures that the law expressly affords.  Plaintiffs are not responsible for Rule 6(e) and lack the power to grant dispensation from it.  The same is true of Mr. Lipsky.  And as the Court well knows, the United States District Judge assigned to this case does not have primary authority or jurisdiction over Special Grand Jury 89-2.  But if defendants wanted to find the judge who did have that authority and jurisdiction, they knew where to file.

It may be that  defendants' chances of securing relief under Rule 6(e)(3)(E)(1) would not have been good.  But if that is so, it is because their petition would likely have foundered on the absence of legitimate particularized need.  That is, it would have foundered because internal debates among DOJ prosecutors and investigators, or evidence about their private personal opinions, would not be of paramount importance to the primary factual issues in this case: whether Dow and

Rockwell engaged in conduct at the site resulting in a trespass or a nuisance.  Press reports about the opinions of different members of the investigative team might be relevant to issues of market perception, but of course neither Mr. Lipsky nor Rule 6(e) stopped defendants from offering such press coverage.

In sum, these defendants seek to strike testimony from a key third-party witness because defendants themselves raised a subject on cross-examination ("conclusions" reached by "the investigation") and then sought to elicit testimony on that subject falling within the prohibitions of Rule 6(e), without ever having pursued relief from those prohibition through the legally prescribed channels.  No authority supports the proposition that a litigant can get admissible evidence stricken by the simple artifice of inquiring into inadmissible evidence on cross.

In any event, defendants have suffered no substantial prejudice, because personal opinions privately harbored by different participants in the "investigation," to the extent they may be admissible for their truth at all under the provisions of Fed. R. Evid. 701, are not especially probative on the core material issues in this case.  The evidence sought by defendants would be relevant primarily to arguments *ad verecundiam* with which defendants might hope to distract the jury from the facts on the ground.  If such arguments were permissible in the first place, defendants would be free to advance them by calling the various prosecutorial witnesses on their most recent list.

### D.  Public Statements Misrepresenting Team-Member Views

Again, much of what has already been said concerning Rule 6(e) applies equally to Mr. Lipsky's testimony on whether public statements by prosecutors faithfully represented the views of the "team's" various members.  This is a subject that defendants themselves raised on cross-

examination; it was not explored on direct.  Mr. Lipsky was able to answer most of defendants'

questions on this subject and to give the basis for his answers.  In a few instances, a response would

have necessitated disclosure of statements made during proceedings before the Special Grand Jury,

and Mr. Lipsky invoked Rule 6(e) on those occasions.  Defendants do not say what testimony from

this category should be stricken, but it would be inequitable to strike the witness's responses to

defendants' own questions on the mere ground that the witness felt himself barred by law from

responding to some of defendants' other questions.

### E.  Defendants' Hearsay Arguments

If valid, defendants' hearsay arguments would actually tend to negate their arguments based

on Mr. Lipsky's invocation of the DOJ's instructions and Rule 6(e).  That is, defendants' arguments

would imply that even if Mr. Lipsky had been at liberty to respond to questions implicating those

prohibitions, his responses would have been inadmissible anyway, on independent grounds.

But again, let us be clear.  As a basis for retroactively striking unspecified portions of Mr.

Lipsky's testimony, defendants' hearsay arguments are *not* valid.  The time to explore the bases for

a witness's knowledge is during the examination itself, when any issues of foundation might still

be cured.  During direct examination, defendants were free to object at any time if they felt that a

foundation should first be established showing Mr. Lipsky to possess personal knowledge responsive

to plaintiffs' questions.  During cross-examination, defendants were free to explore foundational

issues themselves, through their own questioning.  And if Mr. Lipsky had volunteered some

statement during cross  for which no foundation had been established, defendants could have moved

to strike in timely fashion, and plaintiffs could have attempted to cure any difficulty on redirect.  In

failing to pursue that course, defendants waived objection.  To address these issues now, after the

witness has left the stand, and at a time when any foundational problems can no longer be cured, would be both improper and prejudicial.

In any event, the primary examples of supposed hearsay offered in defendants' motion are not, in fact, hearsay at all.  To repeat, it is *defendants* who chose to explore on cross-examination what different opinions were held by members of the investigative team.  To the extent this was a legitimate subject of cross-examination to begin with, statements by members of the team about their own opinions are directly probative of the fact that the declarants stated and held those opinions – which is precisely what defense counsel was asking.  Hearsay, in this context, would be (for example) an out-of-court statement by prosecutor X about the opinions of prosecutor Y. Defendants' motion offers no examples of testimony in this latter category.

### III.  CONCLUSION

Plaintiffs are not responsible for Fed. R. Crim P. 6(e), nor for DOJ's instructions to Mr. Lipsky, nor for the witness's interpretations of them, and indeed plaintiffs interposed no objection on those bases to the cross-examination at issue.  Nor do plaintiffs have the power to lift any restrictions that may apply to Mr. Lipsky's testimony.  Defendants themselves chose not to pursue the remedies available to them that would or could have permitted Mr. Lipsky to respond to their questions – e.g., a request that DOJ authorize Mr. Lipsky to respond to questions about informants, or application to this Court for dispensation from Rule 6(e).  In any event, the modest limits on defendants' cross-examination under the DOJ's instructions and Rule 6(e) resulted in no material prejudice to defendants.  Their motion should be denied.

Respectfully submitted,

Dated: November 4, 2005

s/ Peter Nordberg
Merrill G. Davidoff
Peter Nordberg
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

Attorneys for Plaintiffs
And the Class