**MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

**EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

MERILYN COOK, et al.,                          )
                                               )
      Plaintiffs,                             )
                                               )
v.                                             )      Civil Action No. 90-K-181
                                               )
ROCKWELL INTERNATIONAL CORP.,                  )
  et al.,                                      )
                                               )
      Defendants.                             )
                                               )

## DECLARATION OF ANDREW WESTON-DAWKES

I, Andrew Weston-Dawkes, declare as follows:

1.  I am currently the Acting Deputy Director, Office of Classification, United States Department of Energy (DOE). I have a B.S. in Chemistry and a Ph.D. in Nuclear Chemistry from the University of Maryland. I have over 20 years of experience concerning all aspects of nuclear technology while working for the Department of Navy and the Department of Energy. Over the years within the Office of Classification and its predecessor organizations, I have been responsible for the following: developing classification guidance as an action officer; overseeing document declassification efforts to include responses to requests for classified documents made under the Freedom of Information Act; managing the overall effort to develop and keep current DOE classification guidance as the Director of Technical Guidance; and finally serving as Director of the Office of Classification and Information Control, the former organization to the current Office of Classification.

2.  In my current position, I serve as Acting Deputy Director, Office of Classification, and with the Director, my duties include the supervision and management

of the comprehensive program for the classification and control of information and documents within the DOE.

3.  This declaration is based on my personal knowledge, experience, and observation as well as on information made available to me in my official capacity, including information provided by other employees of DOE.  My general understanding is that, in the *Cook* case, plaintiffs are a class of property owners who, in suing the former operators of the Rocky Flats manufacturing plant, claim a loss in property values due to alleged trespass and nuisance.  In preparing this declaration, I reviewed some of the materials prepared for the *Cook* litigation by former officials in what is now called the Office of Classification in connection with the declassification review of a category of documents related to "material unaccounted for" (MUF) or inventory difference.  I am also familiar with information in the Office of Classification relating to the court-ordered production of an unclassified version of portions of DOE's classification guides, which are the basis for determinations made by derivative classifiers and declassifiers as to whether information in a document is classified or controlled.

4.  I have been advised that a subpoena for trial testimony has been issued to Rodney Hoffman, a DOE employee who is the classification officer for the agency's Rocky Flats Project Office.  Based on my review of the above-noted materials and my understanding of potential areas that may be covered during the course of Mr. Hoffman's testimony, I write this declaration in support of a motion for a protective order, which I believe is necessary to prevent the risk of an inadvertent disclosure of information that is classified under section 141 of the Atomic Energy Act (AEA), 42 U.S.C. § 2161.  This information, which is called "Restricted Data," pertains to (1) the

"design, manufacture, or utilization of atomic weapons; (2) the production of special

nuclear material; or (3) the use of special nuclear material in the production of

energy. . . ." 42 U.S.C. § 2014.

5.   Performing the responsibilities under the AEA, the Department of Energy

classifies information to prevent or at least slow down the efforts of nuclear proliferants

and terrorist groups from gaining and using nuclear weapons.  A key element in United

States nonproliferation policy is to limit access to information that might either assist in

the design of a weapon of mass destruction or identify costly or time consuming

mistakes to be avoided in developing such a weapon.  In the case of nuclear terrorists,

the first goal is to prevent the terrorist group from obtaining nuclear materials by strictly

controlling the inventories of materials in the United States and by assisting other

governments to control nuclear materials in their possession.  Additionally, to prevent

potential malefactors from obtaining nuclear materials which could be used in nuclear

weapons, the United States controls the technology and information used to produce

such nuclear materials through classification and by export control regimes and seeks

to limit the spread of this type of information/technology through international

agreements.   Finally, by limiting the spread of nuclear weapon design information, we

believe that a terrorist group will find it difficult to design and produce a weapon that will

produce a nuclear yield of significant proportion even if the terrorist group were to obtain

the basic nuclear materials.  These measures are crucial to allow the United States and

others to detect and defeat a nuclear terrorist act before it can be carried out.

6.  Consistent with DOE responsibilities, detailed information relating to the

designs and characteristics of specific nuclear weapons and their utilization, including

–3–

information about the size and nature of the stockpile of nuclear weapons, has remained classified under the AEA. Some classified information relates to the designs of early nuclear weapons that would be far simpler to construct than later designs and, thus, would make that task easier for a potential adversary, nuclear proliferant, or terrorist group. Indeed, over the past few years, the United States Government has been especially concerned with simple and crude designs of nuclear weapons in relation to the terrorist threat and has sought to enhance the protection of such information.

7. The fact that much information relating to nuclear weapons in general is unclassified and, thus, in the public domain renders information regarding specific weapon designs or the exact amounts of special nuclear materials contained in a nuclear weapon component even more sensitive. A great deal of information relating to nuclear weapons exists in the open literature, on the Internet, and in other media, both domestically and internationally. Although some of this publicly available information is accurate, some is not and, therefore, seemingly unclassified information contained in the Government-released documents could be used to either validate or invalidate some already public information. In this light, the release of information regarding nuclear weapons must be evaluated carefully or the ability of a potential proliferant or terrorist to create a nuclear weapon could be enhanced.

8. In other words, although the basic physical principles used to design a nuclear weapon are publicly known, DOE, through its classification guides that describe whether specific information is classified, continues to protect engineering design and manufacturing technology of such weapons in order to prevent and deter potential

proliferants or terrorists from developing nuclear weapons.

9.   The determination of whether information is classified is complicated by how the information might be associated or compiled with other information. In associations and compilations, care must be taken to account for how the information is connected logically to other information.  Because a determination of whether a particular fact is classified could depend on its context, the possible harm to national security from the release of any one fact that remains classified must be evaluated in the context of all the other information that will be produced or may already be in the public domain.  For example, although the fact that DOE used a particular material may be unclassified, the association of that material with a certain function could reveal how or why the material is used in a nuclear weapon and would be classified.

10.   In this specific litigation around 1996, the DOE completed an intensive document declassification review of hundreds of thousands of pages concerning Rocky Flats.  In that period, the then Office of Declassification performed an analysis of the kinds of information that were classified for the categories of documents undergoing review.  This characterization of types of documents and potential national security harm is contained in the February 14, 1996, and March 7, 1996, affidavits of Bryan Siebert for the MUF and MUF-related documents (hereinafter referred to as the "MUF documents") reviewed in response to the request by the *Cook* plaintiffs that DOE undertake a declassification review of such documents.  The damage to the national security that would result from the public release of the classified documents in question derives from the fact that, for many years, Rocky Flats made the pits of nuclear weapons as well as other components.  A pit is the source of all of the nuclear energy

–5–

released in a single stage weapon or the source of the nuclear energy that drives the secondary in every thermonuclear weapon.  Inside the pit is the tamper and the fission fuel (*i.e.,* plutonium and/or highly enriched uranium).  Some of the design parameters that are sensitive and, thus, classified are the masses of the fission fuel and its corresponding tamper.  Many of the nuclear and non-nuclear tests that the United States has conducted were for the purpose of developing pits.

11. As explained in detail below, the sensitive information redacted from the MUF documents, which are comprised largely of periodic reports generated during the years that Rocky Flats was in operation as a manufacturing facility, provides details relating to the design and construction of the pits of nuclear weapons and to the military utilization of nuclear weapons, including the size and nature of the stockpile.  As such, these categories continue to be among the most vital national security secrets that the United States Government maintains.

12. Some of the MUF documents contain information relating to inventory quantities and throughput (*i.e.,* the movement through each stage of production) of special nuclear material relating to nuclear weapon stockpile data.  Inventory difference data in relation to a specific material balance area (MBA) (*i.e.,* an identifiable physical area where the quantity of nuclear material is accountable and, therefore, measured) could reveal throughput or the mass of special nuclear material in a weapon component.  Because a great deal of information pertaining to weapons built and retired has been declassified, the additional information contained in some of the MUF documents could provide insight into quantities of nuclear materials in the nuclear weapons designs of the United States.  Such information could permit potential

–6–

adversaries, proliferants, or terrorists to deduce U.S. nuclear weapon design information and capabilities.

13.  Some of the nuclear weapon design information that is reflected in a portion of the MUF documents includes information on the type of material chosen for a specific component, the amount of material for certain tampers (*i.e.,* depleted uranium), and classified alloys used in combination with plutonium in some weapons.  Such detailed information also could provide insight into how much manufacturing tolerance is acceptable by examining variability in the amount of material across different designs for pits and the components used to produce pits.  In addition, some of the information specifically relates to amounts of fissile material in nuclear weapon components.

14.  Other MUF documents contain explicit details about the amounts of plutonium and/or highly enriched uranium in U.S. nuclear weapons components.  Such information could assist a terrorist, proliferant or adversary in designing a nuclear weapon as well as provide information in addition to that already in the public domain relating to the nuclear weapon stockpile, such as the amounts of specific material in weapon components, including pits, and weapon retirement information.

15.  In addition to the general description provided above, the MUF documents contain details relating, *inter alia*, to the following: (a) the total mass of fission material in a pit; (b) the mass of each kind of fission material (*i.e.,* plutonium and highly enriched uranium) in a pit; (c) the ratio of masses of kinds of fission material in a pit; (d) the mass of a tamper in a pit; (e) the material used as a tamper in a specific weapon; (f) material used for an alpha barrier or other safety materials in a specific weapon; (g) the alloying of plutonium that solved problems regarding the use of plutonium; (h) materials added

–7–

for diagnostic purposes for tests of weapons; and (i) tritium quantities required for stockpiled weapons.  If declassified or otherwise disclosed to the public, such information could enable a nuclear weapons state to improve its weapons, permit a proliferant to rapidly expand its knowledge base of nuclear technology, help validate the conceptual designs of potential proliferants, and reveal design capabilities and vulnerabilities of U.S. nuclear weapons.

   16.  The Office of Classification recently completed a reexamination of the damage assessments described in the February 14, 1996, and March 7, 1996, affidavits of Bryan Siebert covering the fifteen categories of MUF documents.  Based on that reanalysis, all fifteen categories of documents remain classified under current policy and consistent with Table I, "Damage Assessment Associated with Document Category," of the March, 7, 1996, affidavit of Bryan Siebert, there are multiple reasons to classify each category of document.  From 1996 to today, the DOE has changed its classification policy in one relevant area.  As referenced as reason (8) in the February 14, 1996, affidavit of Bryan Siebert, it is now unclassified to reveal that a specified weapon's pit is composed of only plutonium.  This declassification occurred in 2000.  Because this declassification applies solely to the fact of use of only plutonium in a specified pit, this declassification would not likely provide any additional quantitative plutonium information within the fifteen categories of MUF documents.  Therefore, based on the recent evaluation undertaken by Office of Classification staff, the vast majority of information redacted from the MUF documents during the declassification review that occurred in the 1996 timeframe remains classified at the present time for the reasons set forth in the attachment to Mr. Siebert's February 14, 1996, affidavit.

–8–

17.  Although it is difficult to quantify the precise damage to the national security that could result from the disclosure of specific nuclear weapon design information contained in the MUF documents, without question, the potential damage would be significant.  For this reason, DOE must take certain precautions to prevent the disclosure of classified information during the testimony of DOE officials at the *Cook* trial.  As set forth above, general information about the data contained in the MUF documents and DOE classification guides is not classified and does not present a risk of harm to the national security.  However, specific information about amounts of special nuclear materials used in pits or other weapon components, weapon designs, and the nature and size of the U.S. stockpile of nuclear weapons could be harmful to the national security interests.

18.  In addition, an explanation of the reasons why certain information is or is not classified often requires the inclusion of classified information in order to be comprehensive and accurate.   With respect to DOE, the determination of whether specific information is classified derives from DOE's application of the requirements of the AEA as well as other statutes and rules governing the disclosure of governmental information, including but not limited to DOE's classification guides.

19.  Given the sensitivities pertaining to the information that could be the subject of trial testimony, one measure that is required to protect against the disclosure of classified information is the presence of a classification officer in the court room to monitor the testimony for the purpose of identifying instances when the risk of disclosure is imminent.   Another measure necessary to protect classified information is the prevention of questions in two areas: (a) specifics concerning the manufacturing

–9–

processes at the Rocky Flats plant, the use and amounts of special nuclear materials in weapons, the design of pits or other nuclear weapon components, and the stockpile of U.S. nuclear weapons and (b) the detailed determination of why certain information is or is not classified.

I declare under the penalties of perjury that the foregoing is true and correct to the best of my personal knowledge and information made available to me in the performance of my official duties.

Dated: _November 2, 2005_       _____
                                        Andrew Weston-Dawkes