**MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

**EXHIBIT 3**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 90-K-181

MERILYN COOK, et al.,

    Plaintiff,

v.

ROCKWELL INTERNATIONAL CORPORATION, et al.,

    Defendants.

'96 FEB 14 AM 10:02

---

### AFFIDAVIT OF A. BRYAN SIEBERT

---

STATE OF COLORADO )
                  ) ss.
COUNTY OF DENVER )

I, A. Bryan Siebert, being duly sworn, make the following statement:

1. I am an employee of the United States Department of Energy (D.O.E.) and am currently Director, Office of Declassification (OD), D.O.E. in Washington, D.C. My duties as Director include, among others, the responsibility for managing and supervising a comprehensive program for the classification and declassification review of documents. My responsibilities also include interpreting the Atomic Energy Act to provide specific guidelines for both classification and declassification of information and documents. The statements contained herein are based on my personal knowledge and experience as Director for the past eight years and on information made available to me in my official capacity.

2. The Atomic Energy Act of 1954, as amended, 42 U.S.C. § 2011, et. seq. (AEA) is the statutory basis requiring classification of atomic energy information. This information is known as Restricted Data (RD) and Formerly Restricted Data (FRD). Section 11.y of the AEA defines RD as "...all data concerning (1) design, manufacture, or utilization of atomic weapons; (2) the production of special nuclear material, or (3) the use of special nuclear material in the production of energy, but shall not include data declassified or removed from the Restricted Data category pursuant to section 142." Pursuant to section 141 of the AEA, the Department of Energy (D.O.E.) is required to "... control the dissemination and declassification of Restricted Data in such a manner as to assure the common defense and security." As such, all information falling within the definition of RD is classified at its inception (born classified) and remains so until a positive action is taken by authorized persons to declassify the information. Section 142 of the AEA further provides that only the Department of Energy (D.O.E.) may declassify RD. Section 142d of the AEA provides that classified information that is jointly determined by the D.O.E. and the Department of Defense (D.O.D.) to be related primarily to the military utilization of atomic weapons may be removed from the RD category. This category of information is then referred to as Formerly Restricted Data (FRD) and it also remains classified until it is declassified by proper D.O.E and D.O.D.

3. Executive Order (EO) 12958 (April 20, 1995) is the current basis for classification of National Security Information (NSI). NSI is information that pertains to the

3.

national defense and foreign relations of the United States and which has been classified in accordance with an Executive order.

4. Chapter VI, Part C, Section 1a of D.O.E. Order 5650.2B dated December 31, 1991, specifies that all documents marked as RD or FRD, and NSI documents not yet declassified, must be reviewed before they are declassified.

5. Chapter VI, Part C, D.O.E. Order 5650.2B, states that all classified documents requiring sanitization or declassification in order to be approved as unclassified shall receive two independent reviews. (The terms "redaction" and "sanitization" mean the physical removal of classified information from a document, usually for the purpose of making the document eligible for release to the public.) These reviews are conducted by authorized classifiers and declassifiers. Personnel selected for these positions are trained and certified prior to performing those duties. An Authorized Derivative Declassifier is authorized to determine that a classified document still contains or no longer contains classified information. Determinations by authorized classifiers and declassifiers are based on classification guides which I authorize for their use. The first review may be conducted by either an Authorized Derivative Declassifier or an Authorized Derivative Classifier knowledgeable in the subject area. An Authorized Derivative Declassifier (different from the first reviewer) must conduct the second review and must make the final determination that the documents, following redaction or declassification, are unclassified. This dual review requirement may be waived by me as the Director, OD, following consideration of the types of documents to be reviewed and a determination that a single review is adequate for the

4

documents concerned. The intent of D.O.E. Order 5650.2B, however, is that dual review is the rule for previously classified documents proposed for public disclosure as unclassified and that exceptions to this rule will be made only under unusual circumstances.

6. As stated above, D.O.E. Order 5650.2B allows for granting exceptions to the requirements when deemed appropriate. The OD staff has reviewed sample documents that Rocky Flats classification officers sent to Headquarters. In addition, members of Headquarters staff visited Rocky Flats, examined more of the requested records, and determined that under the circumstances an exception was appropriate for some of the records because of the highly repetitive nature of the reports requested by the plaintiff. I, as OD Director, therefore, granted an exception to allow a one-person review for repetitive "inventory dump" documents, subject to a 20 percent quality assurance review by an Authorized Derivative Declassifier who was knowledgeable of the subject matter. This approval was dated January 31, 1996. At the same time, I, as OD Director offered to consider extending limited Authorized Derivative Declassifier authority to certain Authorized Derivative Classifiers who are otherwise knowledgeable in the area, in order to expedite the review process.

7. The OD staff conducted a survey of a sample of classified records requested by plaintiffs. Based on that survey, which covers fifteen categories of documents, the OD staff has determined that the requested records are covered by D.O.E. Classification Guidance topics. D.O.E. Order 5650.2B, Chapter V, Part B specifies that classification guides will be used to review documents plaintiffs have requested.

5

Broad classification guidance is broken into two areas: Program Guides and Local Guides. Program Guides are developed and approved by the Office of Declassification. Their purpose is to define and implement D.O.E. policies regarding classification in broad programmatic areas. More detailed guidance tailored to a specific location may be required in some cases, i.e. Local Guides. The Local Guides, based on broad Headquarters Guidance, are prepared by the local D.O.E. Field Element or contractor and are approved either by the D.O.E. Field Element Classification Officer, where authorized, or by the OD.

8. Discussion of Reasons for Classification and Assessment of Damage.

   a. For many years, the Rocky Flats Plant made the pits of nuclear weapons, as well as certain other components. A pit is the component within the high explosive of every nuclear weapon. It is the source of all of the nuclear energy released by a single stage weapon or the source of nuclear energy that drives the secondary in every thermonuclear weapon. Inside the pit is the "tamper" and the fission fuel, i.e., plutonium and/or highly enriched uranium. Some of the many design parameters that are very sensitive are the masses of the fission fuel and its corresponding tamper. These requirements and other technical details make the design of the pit a very complicated technology that must be protected. Many of the nuclear and non-nuclear tests that have been done by the United States and other nuclear weapon states were to develop pits.

   b. The Treaty for the Non-Proliferation of Nuclear Weapons imposes an obligation on the United States not to assist, either directly or indirectly, non-weapon

6

states in the development of nuclear weapons. Revealing sensitive information concerning nuclear weapon design would clearly be a violation of the treaty.

c. The rationale for damage assessments to the national security by disclosure of information contained in the documents requested by plaintiffs may fall into the following 15 categories established by D.O.E. Classification Guidelines:

(1) Reveals the mass of fission material in a pit.

(2) Reveals the mass of each fission material (plutonium and highly enriched uranium) in a pit.

(3) Reveals the ratio of masses of fission material in a pit.

(4) Reveals the mass of a tamper in a pit.

(5) Reveals the material used as a tamper in a specified weapon.

Note: The basis for the above five categories is as follows:

To prevent potential adversaries from building an operational nuclear device, certain design features are protected:

(a) The actual design of a pit, including the amount and dimensions of fission material, is classified. This information, if revealed, would enable a nuclear weapons state to improve its weapons; permit a proliferant to rapidly expand its knowledge base of nuclear technology; or simplify the process by which an adversary could acquire a nuclear weapon. To prevent other nations from improving the military effectiveness and usefulness of their weapons, all designs and techniques are protected.

7

(b) Disclosure of the masses of fission materials in pits would help potential proliferants to determine if their conceptual designs would work. Disclosure of the ratio of materials in a pit provides similar information and would help potential adversaries better understand the design and functioning of nuclear weapons. If released, such information would assist potential adversaries by reducing the time and effort required to develop a nuclear weapon. Also, by release of such information, proliferants would avoid potential developmental dead-ends by understanding specific successful designs.

(c) Performance data of nuclear devices and components are classified because they reveal design vulnerabilities and capabilities of U.S. weapons. Some of the technology of phase stabilization of plutonium is classified because of its importance in designing and fabricating a stable pit assembly. Information regarding the efficient use of fission material is protected because such information relates to total stockpile numbers and to the management of reactor products and design goals.

(d) Better understanding of the design and functioning of U.S. nuclear weapons in general or the design and functioning of specific weapons allows adversaries to better understand and exploit any vulnerabilities of U.S. nuclear weapons designs by helping them to develop countermeasures.

8

(6) Reveals the exact quantity of fission material at a specified location or in a specific current or historical shipment, thus targeting the material for theft.

    (a) Information regarding the quantities and accountability of fission material is classified to prevent the theft of material by knowledge about particular location. Inventory difference information can be used to construct a credible threat that material has in fact been diverted (stolen).

    (b) Information about schedules, itineraries, or quantities of fission material in specific shipments is classified to avoid helping a potential adversary identify or locate an attractive target. Such information remains classified after completion of shipments to avoid revealing patterns that would assist a potential adversary in planning a future attack to steal or sabotage nuclear weapons.

(7) Reveals material used for an alpha barrier or other safety materials in a specified weapon.

    (a) An alpha barrier is a layer of material in a pit that prevents interaction of alpha particles with other materials in the pit or in the nuclear weapon. Its use in a specified weapon is classified to avoid revealing design information about that weapon.

    (b) Some other materials are also used in pits for safety reasons. The use of such materials in specified weapons is classified.

10/20/2005 15:10 FAX 202 586 3274    DOE/GC    Case No. 1:90-cv-00181-JLK    Document 1603-4    filed 11/07/05    USDC Colorado    pg 10 of 16

DOE/GC-30, 31, and 32

@010/016

9

(8) Reveals the fact that only plutonium is used in a specified weapon's pit and thus the weapon is more vulnerable to defensive measures.

(a) The fact that some unspecified weapons may contain only plutonium as the fission material in the pit is not classified. Which specific weapons contain only plutonium as fission material is a classified matter.

(9) Reveals sensitive design details of special features of some pits. Even the existence of certain concepts of sensitive design details is classified.

(a) There is no way to describe these classified design details that is not also classified.

(10) Reveals information on the quantity of weapons in the D.O.D. stockpile and thus information about the possible utilization of nuclear weapons.

(a) Information about the quantities of nuclear weapons in the D.O.D. stockpile is of intelligence value because it reveals strengths, weaknesses, and vulnerabilities of U. S. nuclear deterrent forces. The total stockpile quantity of nuclear weapons reveals the overall ability of the U. S. to provide nuclear deterrence against any potential adversary. This information relates to military utilization of nuclear weapons, which is the joint responsibility of both D.O.D. and D.O.E. under the Atomic Energy Act.

(11) Reveals information on the quantity of a specified weapon type in the D.O.D. stockpile.

(a) The quantities of various specified weapons in the stockpile reveal operational strengths and capabilities of the D.O.D. to defend the U.S. against any potential adversary and to deter potential nuclear attack against the U. S.

(12) Reveals unique information concerning the alloying of plutonium that solves sensitive problems regarding the use of plutonium.

(a) Plutonium is a brittle metal that is extremely difficult to machine and which undergoes phase changes (and consequent changes in physical properties) at various temperatures. By alloying plutonium with other elements, these undesirable characteristics can be mitigated.

(13) Reveals information about materials added for diagnostic purposes for tests of weapons.

(a) Tracers and detectors provide valuable information about the design and output of the device that would greatly assist in the development of a nuclear weapon.

(14) Reveals quantities of fission materials that are in the stockpile reserve required to meet future contingencies.

(a) Stockpile reserve quantities are necessary in order to meet possible contingencies brought about by hostile action.

(15) Reveals tritium quantities required for stockpile weapons.

(a) Deuterium and tritium gas are purposely inserted into the pit to "boost" the yield of the weapon. The amount of tritium used to boost

11

a nuclear weapon would be invaluable to a proliferant nation in designing a weapon of higher yield.

9. The potential damage to national security which reasonably could be expected to result by the release of the information contained in many of the requested documents while difficult to quantify is significant. O.D. is concerned with the potential risk to national security and nuclear non-proliferation if classified nuclear weapons programmatic or design information is released and subsequently used by a potential adversary.

10. The United States is looked to and does, provide leadership in nonproliferation and nuclear arms control matters. The release of classified information would be contrary to our nonproliferation obligations. However, in pursuit of arms control objectives, the United States has also declassified and released significant amounts of information, which among other things has contributed to arms control measures.

11. D.O.E. will make every reasonable practical effort to provide the plaintiffs with all unclassified and declassified information they require. In reviewing large numbers of documents involving an exceptionally large number of pages of information covering 45 years of Rocky Flats Plant operations, D.O.E. is striving to assure consistent and accurate identification of classified information and to release reasonably segregable unclassified information. Nevertheless, despite these efforts, it is recognized that errors may occur.

12. However, based on samples of documents I have viewed, and on information made available to me in my official capacity, it is clear that the documents being

reviewed are properly and currently classified and that information being deleted is conscientiously and properly identified as classified information in accordance with existing classified guidance.

Further Affiant sayeth not.

_____
A. Bryan Siebert

Subscribed and sworn to before me this 14th day of February, 1996

_____
Notary Public

10/18/99
Commission Expires

13

## CERTIFICATE OF MAILING

I hereby certify that on the 14th day of February, 1996, a true and correct copy of the foregoing Affidavit of Bryan A. Siebert was mailed, postage prepaid, to:

Bruce H. DeBoskey, Esq.
Steven W. Kelly, Esq.
SILVER & DeBOSKEY
The Smith Mansion
1801 York Street
Denver, CO 80206

Ronald Simon, Esq.
CONNERTON, RAY & SIMON
1920 L Street, NW, 4th Floor
Washington, DC 20006

Joseph J. Bronesky, Esq.
Christopher Lane, Esq.
SHERMAN & HOWARD
633 - 17th Street, #3000
Denver, CO 80202

Doug Kurtenbach, Esq.
Mark S. Lillie, Esq.
KIRKLAND & ELLIS
200 E. Randolph Drive
Chicago, IL 60601

R. Bruce McNew, Esq.
Suite 902
913 N. Market Street
Wilmington, DE 19801

Louis W. Pribila, Esq.
The Dow Chemical Co.
2030 Willard H. Dow Center
Midland, MI 48674

Kenneth A. Jacobsen, Esq.
John D. Stoner, Esq.

Case No. 1:90-cv-00181-JLK Document 1603-4 filed 11/07/05 USDC Colorado pg 15 of 16
10/20/2005 15:11 FAX 202 586 3274 DOE/GC 30,31,and 32 ☒015/016

14

Christopher T. Reyna, Esq.
CHIMICLES, JACOBSEN & TIKELLIS
361 W. Lancaster Ave.
Haverford, PA 19041


Joseph F. Yenouskas, Esq.
Franklin D. Kramer, Esq.
Patrick Hanlon, Esq.
Mark Raffman, Esq.
1800 Massachusetts Ave., NW
Washington, DC 20036

Stanley M. Chesley, Esq.
WAITE, SCHNEIDER, et al.
1513 Central Trust Tower
Cincinnati, OH 45202

Daniel Satriana, Esq.
Sean R. Gallagher, Esq.
HALL & EVANS
1200 - 17th Street, #1700
Denver, CO 80202-5817

David Bernick, Esq.
Kevin T. Van Wart, Esq.
KIRKLAND & ELLIS
200 East Randolph Drive
Chicago, IL 60601

Robert Golten, Esq.
1881 9th Street, #216
Boulder, CO 80302

John Auerbach, Esq.
Merrill Davidoff, Esq.
Daniel Berger, Esq.
Peter B. Nordberg, Esq.
BERGER & MONTAGUE
1622 Locust Street
Philadelphia, PA 19103-6365

15

Peter Nadel, Esq.
1401 17th Street, Suite 1100
P.O. Box 17180 T.A.
Denver, CO 80217

Carli Wells, Esq.
U.S. Department of Justice
901 E Street, N.W.
Room 1058
Washington, D.C. 20044

Dana Lindsay, Esq.
Chief Counsel
DOE-Rocky Flats
P.O. Box 928
Golden, CO 80402

*Dorothy Salvator*
U.S. Attorney's Office