BEST COPY AVAILABLE

N001906

AUG 10 1974

John A. Erlewine, General Manager, HQ

PROPOSED AEC POLICY RE ASSISTING OWNERS OF LAND ADJACENT TO ROCKY FLATS PLANT

In proceeding with the land acquisition program at Rocky Flats, whereby the buffer zone surrounding the Rocky Flats Plant is being expanded by approximately 4100 acres, we have encountered an understandable concern on the part of some of the landowners pertaining to their lands in the vicinity of Rocky Flats which are not being acquired by the Government. Those property owners whose lands have been contaminated as the result of Rocky Flats operations (i.e., the concentrations of plutonium-in-soil on such lands are above the levels occurring naturally in the area and/or which are attributable to worldwide fallout from nuclear testing) are faced with potential restrictions with respect to their future use of any such lands. These possible restrictions have been brought about as follows:

1. As a result of the Plant's 22 years of operations, low-level concentrations of plutonium-in-soil contamination have been deposited upon land in the vicinity of the Plant, both on-site and off-site. Enclosure No. 1 shows the soil contamination levels for plutonium in the Rocky Flats vicinity, based on soil sampling data obtained by the Health and Safety Laboratory, the Colorado Committee for Environmental Information, and RFAO (sampling done by both Dow and EG&G).

2. In December 1972 the State of Colorado Department of Health declared the area surrounding the Rocky Flats Plant to be an "area of concern" because of the potential radiation hazards. As presently defined, this area of concern is depicted on Enclosure No. 2 and contains approximately 9000 acres of land which will remain outside of the Plant boundary after completion of the Rocky Flats land acquisition. In connection with this area, the State has established that any plutonium contamination of the soil in excess of 2.0 dpm/gram of dry

**PLAINTIFFS' EXHIBIT P-455 90-CV-181**

Record copy to OCC

| OFFICE ▶ | OCC | Ch Counsel | AM/Op | AM/Log | Dep Mgr | Manager |
|---|---|---|---|---|---|---|
| SURNAME ▶ | Randall/js McNett | Jacobvitz | Burke | Lehoouts | Roser | Donnelly |
| DATE ▶ | 8/14/74 | 8/16/74 | 8/16/74 | 8/16/74 | 8/  /74 | 8/16/74 |

rm AEC-318 (Rev. 9-53) AECM 0240    ☆ U. S. GOVERNMENT PRINTING OFFICE: 1968 O-320-507    082000

John A. Erlewine                           2

> soil presents "a sufficient hazard to the public health to require the utilization of special techniques of construction." Accordingly, before any landowner may proceed with any subdivision development project within the area of concern, he must have a radiation survey performed and submit the results, along with proposed methods to control any potential radiation hazards, to County and State officials for evaluation and approval of the project.

This situation is viewed with apprehension by owners of land in the area of concern. One of the owners of land which the Corps of Engineers is attempting to purchase for us as a part of the land acquisition requested, as a condition of the proposed sale, that the Government agree to assist him in satisfying the aforementioned State requirements with respect to his remaining lands in the area of concern. While we have taken the position, as has the Corps, that questions pertaining to land which is not part of the acquisition have no bearing on the acquisition, we recognize that such landowners have a valid concern in this regard and that it is only a question of time as to when one or more of them will seek to recover damages from the Government for the injury caused such property as the result of said "contamination."

Rather than remain silent on this matter and merely await the eventual filing of complaints, claims and/or lawsuits and the adverse public relations which would accompany them, we would prefer to take a positive approach to the matter by offering to assist such landowners in their efforts to obtain the necessary State and County approvals with respect to the radiation hazards issues. Admittedly, such promises of assistance could not go so far as to our assuring the owners of ultimate success in gaining such approvals. But we are of the opinion that AEC could do much to improve its acceptance in the community, as a concerned and responsible member of that community, by publicly declaring our intention to assist the affected landowners. Although a detailed definition of what AEC assistance could be offered has yet to be fully explored, it is expected that such assistance would include the performance of sampling and analyses and the furnishing of expert testimony in connection therewith before the appropriate State and County authorities. It could also entail our advising on the use of special techniques during construction and providing expert evaluation and testimony in support thereof.

C82001

John A. Erlewine                              3

The expected cost of providing the limited assistance of the type suggested above is highly uncertain since it is not known how extensive such tests and studies will have to be in order to satisfy the State and County requirements. However, for the AEC not to take positive action of this nature would probably mean that significant expenses would have to be incurred subsequently anyway in defending and/or settling claims brought against us by such landowners, either under the Federal Tort Claims Act for the damage caused their property or because of the AEC's constructive "taking" of it without just compensation in violation of the Fifth Amendment of the U. S. Constitution. The attorney for one of the landowners with whom negotiations are underway in connection with acquisition of the buffer zone has already alluded to possible litigation in this area. Rather than being subsequently forced to expend such amounts in defense or settlement of claims, we believe that the AEC should take the initiative in attacking the problem in the spirit of cooperation and assistance. We are of the opinion that to do anything less, even if the AEC were ultimately able to prove itself legally immune from all such claims, would be inconsistent with the AEC's policy of being a responsible member of the communities in which its facilities are located.

If you concur in our view that some AEC assistance to landowners in the area of concern is appropriate, we will actively explore various means of providing same. We envision initial meetings with State and other authorities to explain our intention to cooperate with the State and the local citizenry and to determine what sampling data and techniques would satisfy State requirements. We could then proceed to identify to you specific types of assistance, limitations thereto, preliminary sampling plans, procedures, and cost estimates.

We would appreciate your views on our proposal as soon as possible. An early public announcement of our intentions would certainly enhance our image and improve our community relations in the Denver area.

                                          Original Signed By
                                          H. C. Donnelly

                                          H. C. Donnelly
OGC:JER                                   Manager

082002

John A. Erlewine                4

Enclosures:
1. Map showing contamination levels
2. Map showing area of concern

cc: Maj Gen Ernest Graves, USA, AGMMA, DMA, HQ, w/encl
    Martin B. Biles, Jr., Dir, Operational Safety, HQ, w/encl
    Stephen H. Greenleigh, Counsel, Environment & Safety, OGC, HQ, w/encl

082003