**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**No. 90-cv-181-JLK**

---

**MERILYN COOK, et al.,**
**Plaintiffs,**

**v.**

**ROCKWELL INTERNATIONAL CORPORATION and**
**THE DOW CHEMICAL COMPANY,**
**Defendants.**

---

**PLAINTIFFS' MOTION TO ADMIT EXHIBITS**
**P-10, P-371, P-548, P-651, P-652, P-653, P-654, & P-655**

---

Plaintiffs respectfully move for admission into evidence of Exhibits P-10, P-371, P-548, P-651, P-652, P-653, P-654, and P-655, for use in plaintiffs' questioning, as on cross-examination, of Mr. Rodney Hoffman, who has served as a classification officer for Dow, Rockwell and DOE. Plaintiffs expect to use other documents in the course of Mr. Hoffman's examination, but these are expected to be the most controversial.

## I. INTRODUCTION

The Court has instructed the jury that, as to information redacted or deleted by defendants' indemnitor, the Department of Energy ("DOE"), from formerly classified documents, "you may, but are not required, to infer that such unavailable or redacted information would have been favorable, or unfavorable, to one side or the other in this case." Instr. No. 1.9. This instruction expressly permits the jury to infer and conclude that the DOE has used its judicially unreviewable classification power to withhold evidence that would be unfavorable to its own

financial interest and the interests of its indemnitees, the defendants, in this trial. Specifically, DOE has redacted massive amounts of information from documents relating to large quantities of plutonium at Rocky Flats that neither DOE nor defendants can find; called "material unaccounted for" or "MUF."

Plaintiffs intend to introduce into evidence a series of documents that would provide part of a foundation for the jury to draw precisely the type of inference that the Court has told the jury that it is entitled to draw. These documents – nearly all of which were introduced into evidence at the DOE contempt hearing years ago – show a pattern, stretching back decades, of misuse of classification powers by the DOE and its predecessor agencies (the Atomic Energy Commission or AEC, and the Energy Research and Development Administration, or ERDA). The documents show a particular concern about the "embarrassment" attendant to public revelations that neither DOE nor its contractors can find huge amounts of plutonium at Rocky Flats.

Direct or indirect references to the *Church* litigation in two of these documents is directly relevant to showing that DOE's classification decisions are tainted by improper motives, including for purposes of litigation. That is the purpose for which these documents are offered; *not* to present or even discuss the *Church* settlement. Indeed, the particular document to which defendants primarily objected during opening arguments – Plaintiffs' trial Exhibit P-548 – ***does not even mention*** the *Church* case by name. *See* P-548 (attached as Ex. A).

We discuss these documents below.

## II. THE EXHIBITS SHOW A PATTERN OF ABUSE AND MISUSE OF CLASSIFICATION POWER

The *only* legitimate justification for withholding or redacting information from the MUF documents is national security. So testified Rodney B. Hoffman, who worked as a classification

officer for defendants Dow and Rockwell, and later for DOE, and who was involved in DOE's failure to comply with the Stipulated Order entered in September 1994:

> Q. [] In producing the MUF documents to the plaintiffs, can you think of a reason, **other than a threat to national security**, that would justify the deletion of information form the MUF documents?
>
> A. **No**.[1]

The evidence is, however, that DOE and its predecessors (the AEC and ERDA) have used their classification power to shield themselves from embarrassment and potential legal liability.

An AEC document dated **October 7, 1947** (Plaintiffs' Ex. P-660) (attached as Ex. C hereto), makes this explicit. This document, admitted into evidence at the Contempt hearing, states that:

> Declassification of medical and biological documents has become a considerable task. All researchers are anxious to have their work appear in the journals as soon as possible. When critical process steps or materials are involved the problem is greatly simplified, since all must abide by security. However, there [sic] **a large number of papers which do not violate security, but do cause considerable concern to the Atomic Energy Commission Insurance Branch and may well compromise the public prestige and best interests of the Commission.**
>
> **Paper referring to levels of soil and water contamination surrounding Atomic Energy Commission installations**, idle speculation on the future genetic effects of radiation and papers dealing with potential process hazards to employees **are definitely prejudicial to the best interests of the government. Every such release is reflected in an increase in insurance claims, increased difficulty in labor relations and adverse public sentiment**.
>
> Following consultation with the Atomic Energy Commission Insurance Branch, the following declassification criteria appears desirable. **If specific locations or activities of the Atomic Energy Commission and/or its contractors are closely**

[1] *See* Hoffman Dep., 6/16/97 at 83 lines 8-12 (excerpt attached as Ex. B hereto) (emphasis added).

**associated with statements and information which would invite or tend to encourage claims against the Atomic energy Commission or its contractors, such portions of article to be published should be reworded or deleted.** The effective establishment of this policy necessitates review by the Atomic Energy Commission Insurance Branch, as well as by the Medical Division, prior to declassification.[2]

In **1964**, an internal study of MUF at Rocky Flats was completed and concluded that:

**The plutonium losses experienced during the entire history of the Rocky Flats Plant have been significant. These losses have never been explained or properly justified** and this study was conducted to determine their source and causes.[3]

Significantly, this analysis of MUF concluded that there was a "Fire Loss" of *nearly 6 kilograms of plutonium* that "resulted" from the plutonium fire that occurred on September 11, 1957. *See* Ex. P-10 at 8 (attached as Ex. D). Nevertheless, this entire document was kept secret and classified for more than 30 years, until declassified in 1994. *Id.* at 1 (cover page showing declassification date as 6/27/94). It was introduced into evidence at the Contempt hearing.

Classification also was subject to abuse in the 1970s. Mr. Hoffman testified at the contempt hearing that he attended and took minutes of regular meetings of contractor classification personnel.[4] One such set of minutes, dated **June 30, 1977** and signed by Mr. Hoffman (and admitted into evidence at the Contempt hearing), states that:

The question was asked: Is the "if in doubt, classify" philosophy an abuse?

---

[2] Plaintiffs' Ex. P-660 at page 8, attached as Ex. C (emphasis added) (admitted at the contempt hearing as Plaintiffs' Ex. 135). Plaintiffs showed this exhibit to the jury during opening without objection by defendants.

[3] Plaintiffs' Ex. P-10, dated January 6, 1964 at 4 (Ex. D).

[4] *See* Contempt Hearing Tr., 7/21/95 at 236-238 (excerpt attached as Ex. E).

> ...Examples were cited of classification people being asked to assign NSI [national security information] classification **for political reasons**.[5]

This same document discusses MUF. The DOE (then called ERDA) declassified certain MUF information in 1977, *but not* for Rocky Flats. The minutes that Mr. Hoffman signed state that:

> June 30, 1977 MUF figures will be released for all plants except Y-12 [Oak Ridge] and RFP. We need to have answers ready for the inquiries that are sure to follow.
>
> ...
>
> **Headquarters does not like** any implication that there are safeguard deficiencies at the plants.[6]

Another set of minutes, dated **August 2, 1977,** and also signed by Mr. Hoffman (and also admitted into evidence at the Contempt hearing), states that:

> Several WCCC attendees have recently had the experience of having **ERDA headquarters request the deletion of information from reports submitted for clearance because the information is sensitive or should not be released to the public rather than because it is what we consider classified**.[7]

The pattern of classification abuse continued into the 1980s. In a memorandum dated **April 1983**, a DOE manager wrote to Rockwell that:

> **Unexplainable inventory differences continue to be a major deficiency in the operation of plutonium production processes at Rocky Flats. Since 1980 there have been five major incidents of this type** involving metallurgical operations in Buildings 707-776-777. Each time this happens the entire AL system is held hostage while we attempt to resolve the dilemma of meeting our production commitment and maintaining adequate control over the DOE's special

---

[5] Plaintiffs' Ex. P-654 at 2 (emphasis added) (attached as Ex. F).

[6] P-654 at 2-3 (Ex. F).

[7] *See* Plaintiffs' Ex. P-655, attached hereto as Ex. G (admitted at the contempt hearing as Plaintiffs' Ex. 122-A), at 5 (emphasis added). "WCCC" stands for "Weapon Contractor Classification Conference." Tr., 7/21/95 at 236 (testimony of Mr. Hoffman) (Ex. E).

> nuclear materials. The repercussions of these events have included lost production time, extensive redirection of Rockwell and AL staff effort, investigations of AL activities by the GAO, the FBI, the departmental IG, and DOE/HQ elements, and **embarrassment to the highest levels of DOE management**. The most severe consequence is erosion of the confidence of these oversight and regulatory bodies in our ability to safeguard large quantities of special nuclear materials.[8]

Next, we come to the document, Plaintiffs' Ex. P-652, a small portion of which defendants objected to for use in opening. This document was discovered in a secure, locked vault at Rocky Flats by one of Plaintiffs' Q-cleared counsel in June 1995. Plaintiffs then requested that DOE declassify and produce the document in advance of the Contempt hearing.[9]

DOE has actually produced *two* versions of the same document – Plaintiffs' Ex. P-652, which was admitted at the Contempt hearing (as Ex. 119); and Plaintiffs' Ex. P-548. The redactions that DOE made differ as between the two versions, but both documents bear a "Rocky Flats Classified Document" bar code; and both bear a stamp indicating the document was classified in 1992.

The document is titled, "Classification of Rocky Flats SNM Material Unaccounted For (MUF)." "SNM" stands for "special nuclear material. The first page explains that:

> This report was prepared in response to numerous conversations and correspondence between the Division of Classification, Department of Energy, HQS and ALO with Rocky Flats over a period of time dating back to August, 1976.
>
> A letter form J.A. Griffin to H.E. Roser of July 22, 1977, was transmitted to Rocky Flats on August 4, 1977 requesting that a **comprehensive study be**

---

[8] Plaintiffs' Ex. P-653 at 1 (emphasis added) (attached as Ex. H).

[9] *See* Plaintiffs' Ex. P-651, attached as Ex. I (letter to Richard S. Kaufman, Office of U.S. Attorney, dated June 23, 1995) (admitted into evidence at the contempt hearing), at 1-3.

> **conducted on the implications concerning the possible declassification of MUF** at this weapons facility.

Ex. P-652 at 1 (emphasis added) (attached as Ex. J).

The document goes on to state that:

> Rockwell and Dow Chemical Officials feel that the declassification and release of MUF (including explanations0 for SNM at Rocky Flats could reveal production data [redacted] and possibly weapons information. The following data is presented in support of this position.

Ex. P-652 at 3 (Ex. J). The document then lists 10 reasons to "support" the position that MUF data should remain classified and secret.

Paragraphs (or reasons) numbered 8 and 10 are very revealing:

> Anti-nuclear environmentalists and pacifist groups consider Rocky Flats as the "Nuclear Crossroads of the Nation." **The declassification and possible release of MUF in this unfriendly environment whether due to misunderstanding, lack of knowledge or misinterpretation could seriously damage the posture of the Department of Energy, Rockwell International and former contractor, the Dow Chemical Company.**
>
> ....
>
> At the present time multi-million dollar litigation action is being carried out against the Department of Energy, Rockwell International and the Dow Chemical Company. **Declassification of MUF and subsequent release could have an adverse effect on the final court decision of settlement.**

Ex. P-652 at 9-10 (emphases added) (Ex. J).

During opening arguments, Plaintiffs' counsel showed the former paragraph to the jury, but not the latter.

After the *Church* settlement amount had been inadvertently mentioned during opening by Plaintiffs' counsel, and during a sidebar, Plaintiffs' counsel informed the Court that Plaintiffs intended to show both paragraphs (above) of P-652 to the jury. *See* Tr. at 552. There seemed to be some confusion or lack of clarity, however, about the purpose of this evidence. It was *not* to discuss the *Church* settlement (P-652 does not even mention the case by name, nor does it

mention the amount of any settlement). Rather, it bears directly on DOE's abuse and misuse of its classification power. That is, it is entirely improper for DOE *to even consider* keeping MUF information secret for litigation reasons. The mere discussion of this in P-652 is highly probative, particularly when viewed in context of the other evidence, discussed above, of DOE considering factors *other than* national security in making its classification/declassification decisions.

Moreover, Richard Kaufman, former assistant United States Attorney who represented DOE in this case until early 1996, testified at his deposition in this case that he and DOE internal counsel discussed – in *this* case – whether declassifying MUF data *that Plaintiffs had requested in this* case would hurt or injure the posture of DOE, Rockwell and Dow (as discussed in Paragraph 8 of Ex. P-652). *See* Kaufman dep, 10/18/05 at 203, attached as Ex. K (answering "yes" to a "yes or no" question about whether such conversations took place). When asked the substance of this conversation, the Assistant U.S. Attorney (Stephen Taylor) representing Mr. Kaufman, objected on grounds of privilege. *Id.* at 203.

Plaintiffs then asked Mr. Kaufman about Paragraph 10 of P-652 (a copy of which was marked as Ex. 9 at the Kaufman deposition).

> Q. Now, if you take a look at Paragraph 10 of Exhibit 9 – and you've read this paragraph before. Did you have any conversations – this is a yes or no question. Did you have any conversations with any DOE in-house counsel, the subject of which was whether release of additional MUF information in this litigation would potentially harm the interests of DOE and/or the defendants in this litigation?
>
> MR. TAYLOR: I'll assert the privilege.

Kaufman dep., 10/18/05 at 205 (Ex. K).

Lastly, Plaintiffs' Exhibit P-371 is a telex, dated February 1977, addressed to Rodney B. Hoffman. The document was produced by DOE in response to Plaintiffs' request for MUF-

related information (as it states on the Bates legend at the bottom), and it discusses various MUF-related issues. For example, the document asks Mr. Hoffman:

> Tritium - what happened to the 1.67 grams of T in 1964? It does not show up as a shipment or NOL [normal operating loss] and is not in the inventory.

P-371 at 1 (attached as Ex. L).

On the next page, the document states:

> **Is Church to be told what happened to the material written off as NOL**?

P-371 at 2 (emphasis added) (Ex. L). Significantly, the *very next sentence* (presumably related to the question posed) is *redacted*. Thus, here is evidence that Mr. Hoffman - former employee of Dow and Rockwell, and a DOE classification officer – was personally involved in discussions concerning whether DOE would reveal certain MUF data in the context of litigation.

The pattern is plain. DOE repeatedly relies on, or considers, blatantly improper reasons and motives in wielding its classification power – to protect itself and its contractors from embarrassment and liability.

The jury is entitled to hear this evidence, so that it may make an informed judgment about an inference that the Court has instructed it may draw.

## III. CONCLUSION

For all of the reasons listed above, plaintiffs respectfully request that the Court admit the listed documents as requested.

Respectfully submitted,

Dated: November 10, 2005

/s Jennifer MacNaughton

Merrill G. Davidoff
Peter Nordberg
David F. Sorensen
Jennifer MacNaughton
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
fax (215) 875-4604
jmacnaughton@bm.net

Gary B. Blum
Steven W. Kelly
SILVER & DEBOSKEY, P.C.
1801 York Street
Denver, CO 80206
(303) 399-3000

*Attorneys for Plaintiffs*
*And the Class*