## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 90-K-181

MERILYN COOK, *et al.*,

      Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
 and THE DOW CHEMICAL COMPANY,

      Defendants.

---

## DEFENDANTS' MOTION TO BAR CERTAIN TESTIMONY
## FROM DR. THOMAS COCHRAN

---

There are three fundamental problems with the proposed testimony of Dr. Thomas Cochran. First, the vast majority of his expected testimony is either cumulative of Dr. Budnitz's prior testimony or is an overview of the work of Dr. North whom plaintiffs have chosen not to call. Second, Dr. Cochran is clearly not an expert on some of the topics on which he intends to offer opinions such as fire safety and prevention, waste management practices, criticality, and classification. Third, plaintiffs intend to offer a significant portion of Dr. Cochran's testimony through a videotape. The videotape is a narrative, without any questions or answers or the opportunity to interpose objections. In addition, the video does not lay a proper foundation for many of the proffered opinions and Cochran lacks the expertise to offer many of those opinions.

For these reasons, Dr. Cochran should be barred from testifying, or at a minimum, should not be allowed to testify concerning fire safety and prevention, waste management practices, criticality, or classification or show the videotape to the jury.

I.     **Dr. Cochran Should Not Be Allowed To Testify Because His Testimony Would Be Cumulative.**

      A.     **His Overview Report Merely Restates Plaintiffs' Other Experts' Opinions**

Dr. Cochran's Overview Report assesses defendants' conduct in managing waste disposal, fire safety, and criticality.  (Ex. B, Overview Rpt. at  23-30)  As the title suggests, this "overview" is not really an expert report at all; rather, it simply summarizes others' reports and documents.  Dr. Cochran admits that he merely provides an "overview" of Dr. North's and Dr. Budnitz's summaries of the evidence.  (Ex. C, Cochran Dep. at 231)  Thus, his testimony would be cumulative of testimony already in evidence.

      B.     **Dr. Cochran Relies On The Same Dow Documents And Reaches The Same Conclusions as Dr. Budnitz**

Dr. Cochran's proposed testimony regarding Dow's fire safety and environmental practices adds nothing to, and is cumulative of, Dr. Budnitz's three days of trial testimony.

- **903 Pad**. Dr. Budnitz testified that Dow management made six mistakes at the 903 pad:  (1) failure to label drums, (2) failure to protect drums from weather, (3) failure to keep good records on drums, (4) failure to stop drum leakage, (5) failure to adequately monitor the condition of the 903 area, and (6) failure to prevent the spread of contamination during cleanup of the 903 area.  Dr. Budnitz's direct testimony on the 903 pad takes up over 75 transcript pages.  (Tr. at 3021-3077; 3101-3123.)  Dr. Cochran's proposed testimony simply reiterates Dr. Budnitz's conclusions.  (Ex. B, Overview Rpt. at 24-25.)

- **1957 and 1969 Fires**.  Dr. Budnitz testified extensively on the 1957 and 1969 fires.  (*See* Tr. at 3170 (failure to maintain physical separation between buildings), 3172-73 (criticizing firefighters for using carbon dioxide on fire), 3173 (inadequate heat detection equipment), 3175-76 (use of Benelex), and 3180 (failure to provide fire breaks in glove boxes).  Dr. Budnitz's direct testimony on the fires comprises over 65 transcript pages.  Cochran criticizes Dow for the exact same conduct: "permitting the installation of flammable Benelex shielding in gloveboxes, fail[ure] to install and maintain adequate fire detection equipment, fail[ure] to provide adequate fire protection training, fail[ure] to install and maintain fire breaks between working areas and permit[ing] the piecemeal removal of the wall between buildings 776 and 777."  (Overview Rpt. at 23.)

- **Criticality**.  Dr. Budnitz already testified about criticality and, more specifically, the Scientech Report, which was read from and admitted during Dr. Budnitz's testimony

(as PX 1317).  (Tr. at 2327-3250)  Dr. Cochran relies on the same study as Dr. Budnitz concerning criticality, the Scientech Report, and says nothing unique concerning either the subject or the report.  (Overview Rpt. at 28-29; video)

Plaintiffs already explored these topics at length with Dr. Budnitz.  Plaintiffs should not be permitted to cover the exact same ground with Dr. Cochran.  Such repetition is the quintessence of "cumulative" testimony that should be excluded under Rule 403.

**C.     Dr. Cochran's Testimony Regarding Rockwell's Waste Management Practices Is Cumulative Of The Testimony Of Holeman, Lipsky And Others**

Dr. Cochran's proposed Rockwell testimony is cumulative and unnecessary because other witnesses have already extensively covered the same subjects.  In particular, Mr. Holeman and Mr. Lipsky had lengthy direct examinations on:

- **Pondcrete/Saltcrete**:  Mr. Holeman testified about pondcrete and saltcrete extensively.  (*E.g.,* Tr. at 1129-30, 1191-93, 1236-37, 1273, 1325, 1334)  Mr. Lipsky also testified about these issues.  (*E.g.,* Tr. at 2335-36, 2424-25, 2507, 2932-33)  As did Mr. Ray and Mr. Ozaki.  (Tr. at 1590-91, 1464, 1733-34)

- **Residue and Waste Generation**:  Mr. Holeman testified in detail about wastes and residues (including generation of large volumes of these materials).  (*E.g.,* Tr. 1128-31, 1142, 1151-52, 1154-55, 1157-58, 1194-95, 1197-98, 1231-42, 1379-84, 1390-91).  Mr. Lipsky also testified about issues related to waste generation and handling.  (*E.g.,* Tr. 2378-89, 2485, 2552, 2933-35)

- **Sewage Treatment Plant**:  Mr. Lipsky discussed allegations concerning discharges from the sewage treatment plant and allegations that hazardous waste went to the sewage treatment plant.   (*E.g.,* Tr. at 2305, 2351-52, 2401-03, 2418-22, 2433, 2546-47, 2549, 2560-71, 2573-89, 2645-46, 3730, 3739, 3744).  Mr. Holeman also discussed FBI raid allegations concerning the sewage treatment plant.  (*E.g.,* Tr. at 1172-74, 1195, 1289-90, 1293-94, 1328-29)  Mr. Ozaki did as well.  (Tr. at 1703-04, 1707-09, 1732, 1736)

- **VOCs**:  Mr. Lipsky testified about VOCs at Rocky Flats.  (Tr. at 2318-21, 2478-80, 2492, 2642-44)  Mr. Ozaki did as well. (Tr. at 1733-35)

Dr. Cochran should not be allowed to simply rehash what others have already said about Rockwell's waste management practices at Rocky Flats.

## II.    Dr. Cochran Should Not Be Allowed To Testify Concerning Matters On Which He Is Not An Expert.

### A.    Dr. Cochran Is Not A Fire Expert And Should Not Be Allowed To Offer Opinions Regarding The 1957 And 1969 Fires

Dr. Cochran has no education or work experience that qualifies him as a fire expert. Cochran has never taken any courses on fire safety or fire protection.  (Cochran Dep. at 17)  Nor has he ever taught such courses.  (*Id.* at 36)  Prior to his work in this case, Cochran never reviewed any book on fire protection.  (*Id.* at 13)  Cochran has never written any articles or drafted any recommendations regarding fire safety.  (*Id.* at 16)  Cochran has never been a member of any fire protection or fire safety organization.  (*Id.* at 11)

During his professional career, Cochran has never been retained as an expert in fire safety nor has he represented himself as such an expert.  (*Id.* at 15)  Cochran has never served as a fire examiner, never been asked to determine the cause of any fire, and never worked on a team to determine the cause of any fire.  (*Id.* at 7)  Cochran has never designed a fire protection system nor managed any group of people who were responsible for fire protection.  (*Id.* at 13)  Likewise, he has never been hired to determine whether a manufacturing facility is in compliance with fire codes or prepared any documents discussing whether a manufacturing facility is in compliance with fire codes.  (*Id.* at 10-11, 182)  As Cochran's own testimony makes clear, he is not an expert in fire safety, and his opinions concerning the 1957 and 1969 fires should be excluded.

### B.    Dr. Cochran Is Not A Waste Management Expert

Dr. Cochran is a nuclear physicist, not a waste management expert.  Moreover, he is not an expert in Dow's or Rockwell's waste management practices.  Dr. Cochran has never managed a nuclear facility or been responsible for waste management at such a facility.  (*Id.* at 105-106) He never witnessed Dow's or Rockwell's operation of Rocky Flats.  (*Id.* at 26)  While he

4

discusses the plant's supposed burial of low level wastes, he has never seen such wastes.  (*Id.* at 139)  Accordingly, he should be precluded from opining about waste management practices.

### C.       Dr. Cochran Is Not A Criticality Expert

Dr. Cochran is not a criticality expert.  Dr. Cochran has never been asked to — either individually or as a member of a team — audit any facility to determine whether that facility was in compliance with criticality guidelines.  (Cochran Dep. at 32)  Nor has he ever worked on a criticality experiment, ever prepared any procedures to ensure criticality safety, nor designed or witnessed a criticality experiment.  (*Id.* at 28-29)

### D.       Dr. Cochran Is Not An Expert On Classification

Dr. Cochran contends that "DOE continues to over-classify MUF related information" and speculates that various nuclear-weapons related information can be declassified without harm to U.S. national security interests.  (Ex. D, Cochran MUF Rpt. at 1-2)  Yet, Cochran has admitted that he has never reviewed classified MUF information.  (Ex. E, Contempt Hrg. Tr. (7/26/95) at 100-101)  Indeed, even when he had an active Q-clearance (which lapsed in 1982 and which he did not renew), Cochran "never used it for access to nuclear weapons-related information[.]"  (Contempt Hrg. Tr. (7/26/95 at 100-101)   Cochran has never been trained or authorized to classify or declassify documents and has no experience as a classifier or declassifier in applying DOE's extensive classification guidelines and rules.  (*Id.* at 93-94)  In addition, allowing such testimony would be highly improper and prejudicial because defendants cannot rebut any such testimony without revealing classified information, which defendants indisputably cannot do.  In addition, this civil jury cannot and should not evaluate whether DOE has properly classified MUF documents.  Accordingly, Cochran should be barred from testifying about whether DOE properly classified or declassified MUF-related information.

**III.    Dr. Cochran Should Not Be Allowed To Offer Opinions Based On Dr. North's Work Because Plaintiffs Have Chosen Not to Call Dr. North.**

As explained above, Dr. Cochran's "overview" report is, in large measure, an overview and repetition of the observations and conclusions of Drs. Budnitz and North.  For example, in their opposition to defendants' *Daubert* motion, plaintiffs noted that "Dr. Cochran relied on and sought assistance from Dr. Budnitz and Dr. North in any area, such as fire safety, in which Dr. Cochran felt that additional specialized expertise would be helpful."  (Ex. F, Pls.' Mem. at 118)  At his deposition, Dr. Cochran acknowledged that "[s]ome of [his work] is based on the work of North and Budnitz, and so I'm relying to some extent on their work."  (Cochran Dep. at 231)

Plaintiffs have now elected not to call Dr. North.  For that reason, no foundation has been laid for Dr. Cochran to testify or provide an "overview" of those topics on which he relied on Dr. North (at a minimum his discussions of fire safety, pondcrete and saltcrete).  For this reason, Dr. Cochran should be precluded from testifying concerning fire safety, pondcrete, saltcrete or any other topic on which he was relying on the now non-existent testimony of Dr. North.

**IV.    Dr. Cochran's Video Is Inadmissible And Should Not Be Played Before The Jury.**

Plaintiffs seek to play for the jury a videotape in which Dr. Cochran states his views about the Rocky Flats plant and alleged deficiencies in Dow's and Rockwell's fire safety and environmental practices.  (*See* Ex. G, Cochran Video.)  This video should not be admitted into evidence because: (1) it is hearsay narrative; (2) it is cumulative; and (3) Dr. Cochran has no expertise to opine on the subjects detailed in it.

The Cochran video is nothing more than an expert report prepared in audiovisual form.  Like written expert reports, video presentations are inadmissible hearsay because they consist of out-of-court statements offered for their truth.  For this reason, courts regularly preclude introduction of videos into evidence.  *See Rotolo v. Digital Equipment Corp.*, 150 F.3d 223, 225

6

(2nd Cir. 1998) ("Simply put, the [] videotape was inadmissible hearsay").  As this Court has recognized, it is well-settled law that expert reports are hearsay and are not admissible.  (*See* Tr. at 4347 ("my view [is] that expert reports are not admissible, *per se*"); Tr. at 4797 ("I have already made that ruling before, reports themselves are not admissible."))  Further, introduction of the video is improper because it gives Dr. Cochran an opportunity to present his views without being subject to the Federal Rules of Evidence.  Because the videotape is a canned narrative, there are no questions or answers or opportunities for defense counsel to object to improper questions or testimony.  For this reason, courts have held that narrative video testimony is inadmissible.  *See Government of the Virgin Islands v. Albert*, 241 F.3d 344, 348 (3rd Cir. 2001) (upholding decision to introduce video, but barring "opinionated" narrative portion from jury).

     Moreover, the topics covered in the video are cumulative of testimony already offered by Plaintiffs through several other witnesses.  (*See* Ex. A, Chart of Topics Covered in Cochran Videotape; *see also* Section I, *infra*).  Because this video has nothing to add to testimony that has already been presented, there is no reason to show it to the jury.  Finally, Dr. Cochran has no expertise to opine on Dow or Rockwell's waste management practices, fires, criticality, or classification, for the reasons set forth in section II above.

     For these reasons, plaintiffs should not be allowed to show the Cochran video to the jury.  Nevertheless, if plaintiffs are allowed to present this testimony – to which defendants object regardless of whether it is live or by videotape – plaintiffs must do it live, with Dr. Cochran on the stand.  Any testimony must be presented in a question and answer format so that defendants can interpose objections, conduct voir dire to determine Dr. Cochran's competency to offer the opinions, and ensure that a proper foundation is laid – if it can be – for the opinions.

## **Conclusion**

For these reasons, Dr. Cochran should be barred from testifying.  At a minimum, he should be barred from offering opinions relating to fire safety and prevention, waste management, criticality, and classification and he should not be allowed to play his videotape.

Dated:  November 9, 2005                              Respectfully submitted,


/s/ John E. Tangren_____
One of the Attorneys for the Defendants
David M. Bernick
Douglas J. Kurtenbach
Ellen Therese Ahern
Mark J. Nomellini
John E. Tangren
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636
Phone:  312-861-2000
Fax:     312-861-2200

Joseph J. Bronesky
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Phone:  303-297-2900
Fax:     303-298-0940

Attorneys for ROCKWELL
INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 9, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses for the following:

Peter B. Nordberg, Esq.
c/o Karen M. Markert
Apartments at Denver Place, Apt. 2812
1880 Arapahoe Street
Denver, CO 80202
pnordberg@bm.net
kmarkert@bm.net

Gary B. Blum, Esq.
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206
blumg@s-d.com

/s/ Kari Knudsen
Kari Knudsen (legal assistant)

## EXHIBIT A

## Chart of Topics Covered in Cochran Videotape

| Topic | Cumulative of other witnesses? | Lacks Competence to testify on topic? |
|---|---|---|
| Plant History | Yes (Ray, Budnitz) | No |
| Toxicity of Plutonium | Yes (Budnitz, Clapp) | No |
| 1957 and 1969 Fires | Yes (Budnitz, Ray) | Yes |
| 903 Pad | Yes (Budnitz, Ray) | Yes |
| Pondcrete/Saltcrete & Sewage Treatment Plant | Yes (Lipsky, Holeman, Ozaki) | Yes |
| Criticality | Yes (Budnitz) | Yes |
| Inventory Control | No | Yes |
| VOCs/Materials other than plutonium | Yes (Lipsky, Ray) | Yes |