# Exhibit E

```
 1                IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLORADO
 2

 3   MERILYN COOK, et al.,            )
                                      )
 4                  Plaintiffs        )
                                      )
 5        vs.                         )     90 K 181
                                      )
 6   ROCKWELL INTERNATIONAL, et al.,  )
                                      )
 7                  Defendant.        )

 8   _____

 9                       CONTINUED HEARING
                      TRANSCRIPT OF PROCEEDINGS
10   _____

11         Proceedings held before the HONORABLE JOHN L. KANE,

12   JR., U.S. District Judge, for the District of Colorado,

13   beginning at 9:31 a.m. on the 26th day of July, 1995, in

14   Courtroom C-401, United States Courthouse, Denver, Colorado.

15                          APPEARANCES

16   For the Plaintiffs:        Bruce H. Deboskey, Esq.
                                Steven William Kelly, Esq.
17                              Silver & Deboskey, P.C.
                                1801 York Street, #700
18                              Denver, Colorado   80206-5607

19                              Merrill Davidoff, Esq.
                                Peter Nordberg, Esq.
20                              David F. Sorensen, Esq.
                                Berger & Montague, P.C.
21                              1622 Locust Street
                                Philadelphia, PA   19103
22

23

24

25         Proceedings recorded by electronic sound recording;
              transcript produced by transcription service.
```

Cochran - Cross - Rebuttal                    95

1  accelerate the declassification process, and to review which
2  types of information, now that the cold war's over, which
3  types of information warrant continued classification, which
4  kinds of documents can be declassified in a wholesale manner,
5  and which ones you have to sort of go through the laborious
6  process of page-by-page review of looking for information
7  that would still be classified under current policy.
8  Q    So, basically, what you're referring to is just
9  information generally dealing with classification and
10 declassification, but not, again, to actually sitting down
11 yourself and trying to apply those criteria to a particular
12 document or set of documents?
13 A    I have never sat down and tried to apply those criteria.
14 I have--let me say I have been on the receiving end of many
15 of these types of documents where you--where I would identify
16 areas that I thought were erroneously classified, or should
17 be reviewed for further declassification.  I mean, even under
18 the Freedom of Information Act process, you know, there's an
19 appeal process by which you can go back and ask for an
20 additional review for further declassification.  Oftentimes,
21 you get additional, you know, if you make your case, get
22 additional data declassified, which--and that experience
23 clearly indicates that the classification people don't always
24 operate in a perfect world, and even the orders are
25 sometimes--the guidelines are sometimes interpreted too

1  stringently.
2           I mean, there are areas of classification where
3  you--where it's subject to interpretation of the classifier
4  as to whether this is in or out, and it's subject to debate,
5  and you can appeal those cases, and so, you know, I have a
6  fair amount of familiarity being on the receiving end; none
7  being on the--working for the agency or the government or a
8  contractor as a classification officer.
9  Q    Dr. Cochran, can you explain for me what the difference
10 is between national security information and restricted data?
11 A    Restricted is data that falls under the Atomic Energy
12 Act, and is born secret, and relates to nuclear weapons or
13 nuclear weapons materials, fissile materials. Much of the
14 data, for example, at Rocky Flats would be restricted data.
15          National security information would be information
16 that one would classify that falls outside of the
17 restrictions under the Atomic Energy Act. This might involve
18 ship movements or satellite information or something like
19 that, or policy information that would be classified, so
20 there are different rules and different penalties for
21 violating those rules.
22 Q    Isn't it true that, also, that different guidelines
23 apply to--
24 A    Absolutely.
25 Q    --release of that information, whether it's in a site

1  classified data, and don't have a "need to know."
2  Q    In fact, you haven't had an active Q clearance since,
3  what, 1973; is that right?
4  A    No, that's incorrect. I had an active Q clearance from
5  19--, I guess, --62, or, yeah, I guess '62, '63 to about '65
6  or so, and then I didn't, you know, I left the ADC Health
7  Physics fellow program. It was reactivated when I joined the
8  Energy Research Advisory Board, which would have been 1978-
9  ish, '77, '78, and it was active for four years, and then
10 lapsed.
11           I was, at one point, shortly after DOE--shortly
12 after Hazel O'Leary took office, she offered me the job to
13 head the classification program--actually, to head the Office
14 of Non-Proliferation and--excuse me--not the--head the Office
15 of Non-Proliferation. It's not the head of the
16 classification office, and I went through a Q clearance
17 process then, but I never took the job, and so it was never
18 activated.
19 Q    So that was a long way of saying that instead of 1973
20 being the date, in fact, it was around 1982, approximately,
21 since you've had an active Q clearance?
22 A    I think that's--yes, that would be correct, but I have--
23 incidentally, I mean, this might help you out. I've never
24 used--any time I had active Q clearance, I never used it for
25 access to nuclear weapons-related information, even during

Cochran - Cross - Rebuttal                                101

1  those periods.
2  Q    So you're telling me that even when you've had an active
3  Q clearance, you never actually reviewed MUF documents, for
4  example?
5  A    That's correct.
6  Q    So, either when you had a Q clearance, or, certainly
7  with respect to this case, you've never actually seen any of
8  the documents that are in dispute and about which you
9  testified earlier; isn't that true?
10 A    You've got documents.  I've got a document here in my
11 hand, in my package, I should say--
12 Q    Look at Exhibit B-18, which has been declassified and
13 reviewed and sanitized.
14 A    Is the Exhibit--Plaintiffs' Exhibit 56, the Zottner and
15 Rogers document of '56.  There's Exhibit B-18, which has--
16 Q    Right.  Other than those that are exhibits that you've
17 reviewed in preparation for your testimony here, as I'm sure
18 you're aware, there are a number of documents, classified
19 documents, documents that are still--that have not been
20 released still because they're classified and they're
21 contained in--
22 A    Never seen them.
23 Q    You've never seen those documents?
24 A    No.
25 Q    Therefore, you just mentioned Plaintiffs' Exhibit 56.