IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-00181(JLK)

MERILYN COOK, et al.,

Plaintiffs,

vs.

ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,

Defendants.

---

**REPORTER'S TRANSCRIPT**
TRIAL TO JURY
VOLUME 3

---

Proceedings before the HONORABLE JOHN L. KANE, JR., Senior Judge, United States District Court for the District of Colorado, continuing at 9:16 a.m., on the 7th day of October, 2005, in Courtroom A802, United States Courthouse, Denver, Colorado.

Proceeding Recorded by Mechanical Stenography, Transcription Produced via Computer by Therese Lindblom, 901 19th Street, Room A259, Denver, Colorado, 80294, (303) 628-7877

proof before it's ever mentioned to or disclosed to a jury. Kirkland & Ellis is not on trial in this case, and I won't permit it to be.

The Department of Energy has withheld evidence in this case. It has classified evidence. It has made it difficult, if not impossible, for the parties to present their case to a jury, and that is a fact, and it can be brought into evidence in this case.

*MR. BERNICK:* May I ask for clarification on that? Because it's very important.

Is it Your Honor's determination that counsel will be permitted not only to identify -- to state that the Department of Energy classified or underclassified or overclassified, but it did so for purposes of controlling or manipulating the evidence in this case?

*THE COURT:* I don't know about that. I don't know. I did see a document that may or may not be that. I don't know.

What they can say is that the Department of Energy did withhold this information by refusing to declassify it and that they have not been able to bring forth that sort of evidence, and you can say the same thing to the extent that that's the case.

*MR. BERNICK:* Well --

*THE COURT:* Now, whether -- what their purpose and motivation, you know, that takes about three nano seconds for

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-00181 (JLK)

**MERILYN COOK, et al,**

**Plaintiffs,**

**v.**

**ROCKWELL INTERNATIONAL CORPORATION and THE DOW CHEMICAL COMPANY,**

**Defendants.**

---

**REPORTER'S TRANSCRIPT
(Jury Trial -- Volume IV-A)**

---

Proceedings before the HONORABLE JOHN L. KANE, JR., Judge, United States District Court, for the District of Colorado, commencing at 9:14 a.m. on the 11th day of October, 2005, Alfred A. Arraj United States Courthouse, Denver, Colorado.

This policy remains in effect today, and let me give you an example. I am sure you all had dental x-rays you know when you go in for dental x-ray they put a big led shield over you. That is to keep your exposures to radiation as low as possible during the x-ray, and you also notice that the technician who is doing the x-ray never stays in the same room with you. They set you up, put the big thing here, then go outside. That is to keep their exposures as low as reasonably achievable.

There is no safe level of radiation exposure. Government standards keep going down. There is much uncertainty still about low level affects of radiation. But everybody agrees that less exposure is better.

In this case, no one disputes that plutonium from Rocky Flats has traveled from the plant site into the neighborhood. The plutonium traveled by air and by water from Rocky Flats, okay? And I am going to explain these maps to you, okay? This is the map of the Rocky Flats site. And we will be talking about some of the buildings here.

Okay. This is the map of the actual plant site, and there are three areas that you will probably hear much more about than any other place at the plant. One is building 771. One is building 776 and 777. And one is the 903 pad. These are the three main areas that I would

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-00181 (JLK)

**MARILYN COOK, et al,**

**Plaintiffs,**

**v.**

**ROCKWELL INTERNATIONAL CORPORATION and THE DOW CHEMICAL COMPANY,**

**Defendants.**

---

**REPORTER'S TRANSCRIPT**
**(Jury Trial -- Volume IV-B)**

---

Proceedings before the HONORABLE JOHN L. KANE, JR., Judge, United States District Court, for the District of Colorado, commencing at 1:25 a.m. on the 11th day of October, 2005, Alfred A. Arraj United States Courthouse, Denver, Colorado.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-00181 (JLK)

**MARILYN COOK, et al,**

**Plaintiffs,**

**v.**

**ROCKWELL INTERNATIONAL CORPORATION and THE DOW CHEMICAL COMPANY,**

**Defendants.**

---

**REPORTER'S TRANSCRIPT**
**(Jury Trial -- Volume IV-B)**

---

Proceedings before the HONORABLE JOHN L. KANE, JR., Judge, United States District Court, for the District of Colorado, commencing at 1:25 a.m. on the 11th day of October, 2005, Alfred A. Arraj United States Courthouse, Denver, Colorado.

**OCTOBER 11, 2005 - AFTERNOON SESSION**

(The following is had outside the hearing and presence of the jury.)

THE COURT: I had a question from the jury as to what happens if somebody has to be excused for illness, and I will tell them.

MR. BERNICK: I had one small matter, at an appropriate point in time, we would ask the Court to instruct the jury this case is not about worker safety at the plant. I sure it was inadvertent, but Ms. Roselle said it wasn't safe for the workers and wasn't safe for people who lived around the plant, and that is contrary to Your Honor. I am sure it was unintentional, but I think that is important.

THE COURT: All right. I will tell them. Ms. Roselle, why don't you tell them.

MS. ROSELLE: Sure. I would be glad to tell them.

(The following is had in the hearing and presence of the jury.)

THE COURT: Ms. Bush reports you had a question what happens if somebody on the jury gets sick and can't continue. You go to jail. Actually, what happens is that we try the case to 11. And the law permits us to go down in number from 12. So if that is necessary, that is what we'll do. We certainly hope it isn't necessary.

As to being here, we can't work without you. You have to be here every day in order to be on the jury. So if you have an orthodontist appointment, you will have to tell him to get his money someplace else.

Okay. Go ahead.

MS. ROSELLE: Thank you, Your Honor.

This case is about the neighbors, and we won't be considering this case the workers at the plant. I mentioned the workers to you earlier, just to give you an idea of what went on at the plant.

I also have here a book that you'll be seeing during the trial, which is called the Summary of Findings. This is the chem risk and the summary of their findings, and in this book they do have a picture of a plutonium trigger, or pit from the plutonium buttons. So this is a plutonium button that they used in manufacture at Rocky Flats.

As I said before lunch, Dow was one of the foremost companies in the chemical business at the time that they took over the manufacturing operations at Rocky Flats. And, in fact, they have been one of the top 50 Fortune 500 companies in this country for many, many years.

Now, I am going to talk to you about the evidence or the problems that plagued Rocky Flats from the beginning of its operations in the early 1950s, right up

You are going to hear from another epidemiologist, Dr. Steven Wing. And he is from the University of North Carolina. And he is going to tell you that there has been medical research done on plutonium, but that most of that research -- or much of that research has been controlled, funded, and effectuated by the Department of Energy. And as I said, the Atomic Energy Commission, ERDA, or the Department of Energy, they are all the same. It is just a different name now, the Department of Energy.

The Department of Energy, he will tell you, has no interest in finding out how deadly plutonium is because they are using it to manufacture weapons, and the result has been that the so called research that has been done cannot be trusted.

In 1975, after Jefferson County refused to allow some of the neighbors living very close to Rocky Flats to develop their land, Marcus Church -- you remember I showed you his picture way back when here -- and two neighbors sued the United States Government, Dow, and Rockwell. And after many years, that lawsuit was settled for $9,000,000. And as part of that lawsuit, Marcus Church was required to return to the defendants all of the documents that he got during the pendency of the litigation.

Now, during the 15 years this lawsuit has been pending, we have gotten access to the documents. But I

bring this up to you for two reasons: One is that the defendants in this case have already acknowledged, if you will, and paid money to some of the neighbors for the contamination problems it caused.

MR. BERNICK: Your Honor, I object and ask the jury to disregard all that has been said about Church.

THE COURT: Sustained. And please disregard the comments. That is a separate lawsuit entirely.

MS. ROSELLE: Why was this lawsuit not filed until 1990? Because during the 1980s and 1970s there was still development and growth going on in the contaminated area. The Government and the defendants kept reassuring people that everything was okay. The public had no indication that there was anything illegal going on at the plant.

But in the late 1980s things got worse at Rocky Flats. And as Mr. Davidoff told you, there was an FBI raid at the plant in June of 1989.

Dow left Rocky Flats in 1985, and when they left there was an editorial that ran in the Rocky Mountain News. And I am going to read you just a bit of that editorial. This is the editorial. I will read you what it says.

It says that Dow has so mismanaged the Government-owned half-billion dollar plant, that its Colorado operation has become a textbook case on how not

make an objection, making Your Honor rule on this all over again, and it is totally improper.

This is the whole purpose of orders and rulings in limine. Your Honor, if this comes in, it is very simple. He'll argue information, of course, was concealed in order to avoid this being disclosed in Church. Church was settled in part not to have to make the disclosure.

After Church was settled, a demand was made for all of the materials to be returned, and they have never been released since. And it is on ongoing fraud by the Government. We are all big boys here, if he wants to do that, this trial is useless.

MR. DAVIDOFF: May I respond? I don't intend to say anything about settlement or Church litigation.

THE COURT: You did.

MR. DAVIDOFF: I am sorry. We have documents that go beyond the settlement of the Church litigation that show the same thing. I have documents from the '80s. I have documents from the '90s.

THE COURT: You can't go into No. 10. Your objection is overruled as to the other, but not to the questions related to the litigation or as it relates to Church.

MR. BERNICK: All you are trying to do is get him angry.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-00181 (JLK)

**MARILYN COOK, et al,**

**Plaintiffs,**

**v.**

**ROCKWELL INTERNATIONAL CORPORATION and THE DOW CHEMICAL COMPANY,**

**Defendants.**

---

**REPORTER'S TRANSCRIPT**
**(Jury Trial -- Volume V-A)**

---

Proceedings before the HONORABLE JOHN L. KANE, JR., Judge, United States District Court, for the District of Colorado, commencing at 8:21 a.m. on the 12th day of October, 2005, Alfred A. Arraj United States Courthouse, Denver, Colorado.

case and whether they feel any longer -- the woman, Ms. Laska, whose husband knows all about classification, whose job is a classified job, and she is now being told, well, you are going to decide whether classification is proper or improper.

How can she separate out her feelings about classification from the issues that are being put before the jury in this case? How is that going to work? How can people see a cleanup headline saying $150 billion, and somehow that is not part of their thinking anymore.

So we need to have the jurors polled individually to see if they can any longer serve, then reserve our right to strike the jury and go forward with a different jury in the event we start to lose people. We did not sign onto the idea of starting out with a jury that was less than 12.

Second, we believe curative instruction should be given and we outlined the curative instruction should be.

And, third, we want counsel to specifically be admonished in the presence of the jury. This is a situation where it needs to be corrected now. It needs to be corrected decisively, because otherwise a disrespect is being shown for this process. It will carry over to this jury.

There was a naked invitation throughout the day