**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**No. 90-cv-181-JLK**
_____

**MERILYN COOK, et al.,**

    **Plaintiffs,**

       **v.**

**ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,**

    **Defendants.**
_____

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO "DEFENDANTS'
MOTION TO BAR CERTAIN TESTIMONY FROM DR. THOMAS COCHRAN"**
_____

Plaintiffs respectfully submit this memorandum in opposition to "Defendants' Motion to Bar Certain Testimony from Dr. Thomas Cochran" (filed Nov. 10, 2005) [Ct. Rec. 1618].

## I. SUMMARY

Most of the points in defendants' motion were raised, or should have been, in defendants' pretrial *Daubert* submissions. In any event, defendants' points are unmeritorious. Dr. Cochran's testimony does not overlap with any other expert evidence, except insofar as it addresses some of the incidents also covered in Dr. Budnitz's testimony, and plaintiffs do not intend to revisit those incidents at any substantial length. The videotape represents an effort to present technical expert testimony in a form that the jury can digest, and Dr. Cochran would be available for cross-examination on its content.

## II.  ARGUMENT

### A.  This Motion Is Untimely

This motion was filed the morning of November 10, 2005, as part of a flurry of submissions described in the Court's Order Limiting Motions Practice During Trial, which was entered later that same day (the "Motions Practice Order") [Ct. Rec. 1626].  The motion did not satisfy, has not been amended to satisfy, and cannot be amended to satisfy the conditions set forth in the Motions Practice Order:

> Any motion that raises matters previously ruled on – or matters that could have been raised by the June 2005 deadlines for filing *Daubert* motions and motions in limine – must identify and cite that original ruling, and state a specific, substantive reason for raising the matter at this point.  Unless I am persuaded that an intervening change in the controlling law, new facts or manifest error exists as would warrant reconsideration of previous rulings, the motion would be denied.

*See id.* at 4.

Every point in defendants' motion could have been raised by the June 2005 deadlines for *Daubert* motions and motions in limine.  Indeed, most of defendants' points *were* raised in Defendants' Motion to Exclude Expert Witness Testimony Relating to Defendants' Conduct (filed June 16, 2005) [Ct. Rec. 1374].  *See, e.g.*, *id.* at 23 (Dr. Cochran merely rehashes underlying evidence and documents that could just as easily be evaluated by jury itself); *id.* at 24 (Dr. Cochran merely provides cumulative "overview" of subjects already covered in testimony from Drs. Budnitz and North); *id.* at 26-28 (Dr. Cochran not an expert on fires, waste management, criticality, or MUF).  What points were not raised, could have been.  In particular, Dr. Cochran's video (which was not challenged in defendants' *Daubert* motion but *was* addressed at argument) was served almost a decade ago, contemporaneously with his reports.

In sum, this motion exhibits all the faults discussed in the Court's Motions Practice Order. It asks the Court to revisit issues on which the Court has already ruled. It points to no change in controlling law, no new facts, no manifest error. It advances arguments that could have been raised, but were not raised, by the Court's pretrial deadlines. It vexatiously multiplies the proceedings in this case. For those reasons alone, the motion should be denied.

## B.  The Motion Is Unmeritorious

Because the Court has already considered and ruled on most of the issues presented in defendants' motion, plaintiffs confine this discussion to a few pertinent points.

Because Dr. Cochran is offered as an expert, for the purpose of assisting the jury in interpreting the underlying facts involving defendants' conduct, his testimony is not duplicative of evidence offered by fact witnesses. Messrs. Holeman and Lipsky have not offered expert evidence on defendants' conformity to the standard of care applicable to the industry. Nor did either of those witnesses testify, for example, on issues of fire safety, criticality, or MUF. And plainly, Dr. Cochran's testimony plainly cannot be cumulative of Dr. North's. It is precisely to avoid duplicative testimony that plaintiffs determined *not to call* Dr. North. To the extent that Dr. Cochran's testimony will touch on ground already covered in part by other witnesses, such as Dr. Budnitz, the evidence will be presented in summary form. At this point, plaintiffs have no interest in earning the jury's antipathy by laboriously rehashing what the jurors have already heard. The time limits adopted by the Court provide an additional incentive to focus Dr. Cochran's testimony on areas not previously addressed.

As for the videotape, plaintiffs submit that it represents precisely the sort of effort to make complex testimony comprehensible to the jury that the Court has repeatedly urged the parties to

undertake. Dr. Cochran would be available for cross-examination about its content. That leaves the question whether the video is otherwise consistent with evidentiary rules.

The admissibility of a videotape must be decided on a case-by-case basis. *Bannister v. Noble*, 812 F.2d 1265, 1270 (10th Cir. 1987). It is purely a matter of judicial discretion. *Robinson v. Missouri Pac. R.R.*, 16 F.3d 1083, 1087 (10th Cir. 1994) (certiorari pending). To be admitted into evidence, a videotape must meet exactly the same requirements as any other evidence; namely:

> (1) that it be authenticated – the trial court should determine that it is a correct representation of the object portrayed, or that it is a fair and accurate representation of the evidence to which it relates, (2) that it is relevant, and (3) that its probative value is not "substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise."

*Harris v. Poppell*, 411 F.3d 1189, 1193-94 (10th Cir. 2005) (quoting *Harris v. State*, 13 P.3d 489, 492-97 (Okla. Crim. App. 2000)).

The video is plainly authentic and relevant. Defendants' motion raises no Rule 403 issues, but they may warrant brief discussion. The Tenth Circuit has held that "[t]he possibility that a film will be prejudicial is significantly reduced when the subject of that film can be cross-examined at trial." *Bannister*, 812 F.2d at 1270 (affirming admissibility of "day in the life" video of accident victim). In this case, Dr. Cochran is the expert who narrates the videotape and is knowledgeable about its content. He will be on the witness stand when the videotape is played, and so he would be subject to cross-examination on the video.

Courts have also recognized that there is much less possibility of prejudice when the video illustrates general principles rather than depicting a recreation of an event at issue in the trial. *Gilbert v. Cosco, Inc.*, 989 F.2d 399, 402 (10th Cir. 1993). Dr. Cochran's video plainly is not intended to simulate the exact circumstances of events at Rocky Flats. The animation within the

*Plaintiffs' Opposition to Defendants' Motion to Bar Testimony from Dr. Cochran  – Page 4*

video is used for purely illustrative purposes – to explain to the jury, for example, how a glovebox works.

The content of the videotapes is not prejudicial. The animation does not sensationalize or distort any of the events that took place. By comparison, the Tenth Circuit has upheld (on a habeas appeal) the fairness of admitting a videotape of a bloody murder scene that included footage of the victim's body. *Duckett v. Mullin*, 306 F.3d 982, 999-1000 (10th Cir. 2002).

### III.  CONCLUSION

For the reasons given above, plaintiffs ask that defendants' motion be denied.

Dated: November 13, 2005

s/ Peter Nordberg
Merrill G. Davidoff
Peter Nordberg
Jennifer MacNaughton
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

Attorneys for Plaintiffs
And the Class