# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

No. 90-K-181

MERILYN COOK, et al.,

Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,

Defendants.

---

**DEFENDANTS' MOTION IN *LIMINE* NO. 5 TO EXCLUDE EVIDENCE OF DOCUMENT CLASSIFICATION ISSUES AND DISCOVERY CONDUCT BY THE DEPARTMENT OF ENERGY**

---

## INTRODUCTION

Defendants move in *limine* to preclude all evidence of Department of Energy ("DOE") discovery conduct in this litigation. Such discovery conduct would include, but not be limited to, document classification issues, the declassification review process undertaken by the DOE and any suggestion that DOE somehow spoliated documents or wrongfully withheld materials in this case. This evidence is irrelevant to Plaintiffs' claims and would be unduly prejudicial to Defendants.

## SUMMARY OF RELEVANT FACTS

At all times relevant to this lawsuit, Rocky Flats has been owned by the United States government. Both Dow and Rockwell operated Rocky Flats as government contractors for the

DOE (and its predecessor agencies). The jury will be called upon to decide liability solely with respect to Defendants Dow and Rockwell. Plaintiffs did not sue DOE, and the DOE is not a party to this case. The DOE's actions in withholding classified materials from non-party production in this case, and any refusal by DOE to declassify documents is irrelevant to Plaintiffs' claims and to allow Plaintiffs to comment on document classification matters at trial would be inappropriate. DOE's actions in providing non-party discovery – including any discovery responses, motions, hearings, orders, stipulations or any other history of DOE's efforts to comply with Plaintiffs' discovery requests – are also irrelevant to Plaintiffs' claims. Any reference to such DOE conduct, including this Court's 1995 Order holding the DOE in contempt, would have no probative value, would be unfairly prejudicial to Defendants, would be confusing to the jury and would consume undue resources and trial time.

Nevertheless, it is appears that Plaintiffs intend to introduce evidence at trial of what they continue to characterize as DOE discovery misconduct. In fact, Plaintiffs have proposed a jury instruction that is illustrative of the type of use Plaintiffs apparently hope to make of DOE's actions in discovery matters, including an effort to hold Defendants' responsible for DOE discovery and classification decisions:

> You have heard evidence that the United States Department of Energy has refused to declassify certain evidence that could relate to the issue of contamination. The United States Department of Energy is financially responsible for reimbursing defendants for any damages that Defendants may be required to pay plaintiffs and the class members. You are permitted to draw the inference that this evidence would have been unfavorable to defendants if the United States Department of Energy had made it available.

Plfs' 7/5/04 Proposed Instructions, No. 13. Defendants oppose this instruction on numerous grounds. *See* Defendants' 8/15/04 Response Br. at 31-44.[1]

In addition, based on Plaintiffs' statements in the almost two-year-old December 2003 Status Report, Plaintiffs would appear to include many documents on their proposed trial exhibit list that demonstrate or reference their discovery disputes with DOE.[2] *See, e.g.,* Pls' Dep. Ex. Nos. 1988 (November 1995 Draft DOE Document Production Management Plan for Review and Release of Rocky Flats Related Documents in *Cook*; this document is a plan "to describe [DOE's] declassification review of Rocky Flats related documents as well as the production of unclassified documents" and it includes a summary of DOE non-party discovery efforts in *Cook*, Plaintiffs' discovery motions and hearings on such issues); 2012 (February 21, 1996 discovery pleading filed by DOE in *Cook* entitled United States Department of Energy's Notice of New Discovery Developments, referencing a hearing on the Court's contempt ruling, the declassification review of MUF documents and the volume of materials to be reviewed by DOE in response to discovery rulings); 2021 (May 10, 1996 Plaintiffs' counsel Peter Nordberg letter to DOE's Dana Lindsay and U.S. Attorney's Henry Solano and Linda Surbaugh regarding the DOE's then on-going declassification review of MUF documents, citing numerous discovery disputes related to such materials); and 2169 (October 28, 1993 Silverman memo to Bixby regarding Declassification of Rocky Flats plant Documents, urging an aggressive approach to declassification). In addition to being inadmissible for the reasons discussed in this motion,

---

[1] Defendants have also separately moved in *limine* to bar any evidence of the DOE's indemnification obligations. *See* Defendants' Motion in *Limine* re Indemnification.

[2] *See* 12/10/03 Joint Status Rep. at 46 (attaching Plaintiffs' proposed trial witness and exhibit lists).

these documents also contain multiple levels of hearsay and they do not fall within any applicable hearsay exception.

Defendants seek, through this motion in *limine,* to exclude all evidence of DOE discovery conduct. Defendants also seek to bar all evidence of document classification issues, including the DOE's declassification review process. Specifically, Defendants' motion seeks to bar Plaintiffs from introducing, eliciting testimony about, or otherwise making reference to evidence of, including but not limited to, the following:

- Plaintiffs' various discovery requests to DOE and DOE's responses, including DOE status reports on discovery compliance;

- Discovery disputes between the Plaintiffs and DOE, motions to compel discovery from DOE or motions for discovery sanctions, including but not limited to Plaintiffs' motions to hold the DOE in contempt;

- Hearings held by this Court to address discovery issues or motions, including the 1995 hearing on Plaintiffs' motion to hold DOE in contempt;

- Orders entered into to resolve discovery disputes, including but not limited to any stipulated orders;

- Allegations that documents or other evidence was improperly withheld, classified, concealed, destroyed, or that materials were not properly declassified by DOE; and

- Any other alleged discovery disputes with DOE, alleged DOE discovery violations, or discovery sanctions entered against DOE.

In short, Defendants seek to preclude all evidence of any alleged discovery conduct (whether by act or omission) by the DOE. Plaintiffs' counsel should likewise be precluded from suggesting or arguing in any way that the DOE withheld evidence (whether through the classification process or otherwise) that would have been favorable to Plaintiffs.

4

## ARGUMENT

### I. PLAINTIFFS SHOULD NOT BE PERMITTED TO COMMENT AT TRIAL ON THE UNAVAILABILITY OF DOCUMENTS BASED ON DOE'S CLASSIFICATION DETERMINATIONS.

Among other things, the Atomic Energy Act, 42. U.S.C. §§ 2011, et seq. ("AEA") prevents the disclosure of classified materials. Since its passage in 1954, the AEA has sought to protect national security by, in part, preventing disclosure of material related to nuclear weapons production and testing. Plaintiffs apparently seek to comment at trial upon the unavailability of materials that the DOE appears to have determined are classified primarily pursuant to the AEA and Executive Order 12958. *See Cook v. Rockwell Int'l Corp.*, 935 F. Supp. 1452, 1458-59, 1462 (D. Colo. 1996). Unless that material is properly declassified, the statutory presumption and privilege protecting the information must be maintained. The net effect of the AEA in this regard is that Plaintiffs cannot rely on protected data in a public proceeding if there is a reasonable threat that disclosure of such information would pose danger to the national security. *See* 42 U.S.C. § 2277.

The common-law state secrets privilege has much the same effect as withholding classified materials pursuant to the AEA. And, as under the analogous common law state secrets privilege, the effect of classification under the AEA is that a factfinder may not derive a negative inference from the government's lawful non-disclosure of information. *Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268, 268-69 (4th Cir. 1980); *Bareford v. General Dynamics Corp.*, 973 F.2d 1138, 1141 (5th Cir. 1992); *Ellsberg v. Mitchell*, 709 F.2d 51, 64 (D.C. Cir. 1983).

*Farnsworth* is particularly instructive. There a munitions manufacturer sued a Navy employee for wrongfully interfering with the manufacturer's prospective contractual relations

5

with the Navy. 635 F.2d at 268. The government, a non-party, invoked the state secrets privilege, and the court refused to allow the parties to use the materials for which the government had asserted the privilege. *Id.* at 269. In doing so, the Fourth Circuit addressed whether sanctions may flow to a party as a result of the government's action in withholding documents:

> "When the government is not a party and successfully resists disclosure sought by a party, the result is simply that the evidence is unavailable, as though a witness had died, and the case will proceed accordingly, with no consequences save those resulting from the loss of the evidence." MCCORMICK'S HANDBOOK OF THE LAW OF EVIDENCE § 109, at 233 (E. Cleary ed. 1972). *Accord*, 2 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 509(10) at 509-65 (1979) (quoting the passage from McCormick). Judge Weinstein continues, "In such a case, sanctions against a party are inappropriate because neither party is responsible for the suppression of the evidence."

*Id.* at 270–71; *accord Ellsberg,* 709 F.2d at 64-65 (citing MCCORMICK). The settled law on the issue is clear; it is inappropriate to comment upon at trial and/or ask the jury to draw an adverse inference from the unavailability of government-classified materials.[3] The instant case is no different. Consequently, document classification is not the equivalent of spoliation, and this Court may not impose what in effect would amount to an evidentiary sanction on Defendants due to DOE's non-disclosure of classified materials under the AEA.

## II. NON-PARTY DISCOVERY MATTERS ARE IRRELEVANT TO ISSUES OF WHETHER DEFENDANTS' CONDUCT DIMINISHED PLAINTIFFS' PROPERTY VALUES.

It is axiomatic that "[e]vidence which is not relevant is not admissible." Fed. R. Evid. 402. The Rules define "relevant evidence" as "evidence having any tendency to make the

---

[3] Commentators agree. *See, e.g.*, THE NEW WIGMORE: EVIDENTIARY PRIVILEGES § 8.5.1, at 1168 ("Suppose that the federal government successfully asserts the claim [of state secrets privilege] in a suit between two private parties. In that situation, the only consequence is that the evidence is unavailable to the parties.").

6

existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. It is Plaintiffs' burden to demonstrate relevance. *E.g., United States v. Samaniego,* 187 F.3d 1222 (10th Cir. 1999) (burden of proving admissibility is on proponent of evidence).

In this case, any relevancy determination turns on the scope of Plaintiffs' claims. Plaintiffs bring two claims that are to be tried on a class-wide basis: trespass and nuisance. Plaintiffs' trespass claim requires a physical intrusion upon the property of another. *See* 12/17/04 Order re Instructions; *Hoery v. United States,* 64 P.3d 214, 217 (Colo. 2003). In the Court's December 17, 2004 Order re Instructions, the Court held that, in order to prove a trespass, Plaintiffs must establish that "Dow or Rockwell or both of them intentionally undertook an activity or activities that in the usual course of events caused plutonium to be deposited on the Class Properties." 12/17/04 Order, Instruction No. 3.11, at 2.

Under Colorado law, a nuisance requires an intentional, negligent, or unreasonably dangerous activity resulting in the unreasonable and substantial interference with Plaintiffs' use and enjoyment of their properties. *Hoery,* 64 P.3d at 218. As Defendants understand the Court's May 17, 2005 Order, the Court held that Plaintiffs can prove the "interference" element of their nuisance claims in one of three ways. First, to make out a prima facie case of nuisance, Plaintiffs can prove an interference by establishing "class-wide exposure to plutonium and resulting class-wide increase in human health risk"; provided that, in making this determination, the jury may only consider the magnitude of the "common, class-wide health risk." 5/17/05 Order at 5. Second, Plaintiffs can prove an interference by demonstrating "that all Class members were exposed to [an alleged contaminant other than plutonium] and all suffered some increased health

7

risk as a result." *Id.* Third, Plaintiffs can prove an interference by establishing "that there is an objectively demonstrable risk of future harm" that is "based on objective conditions, such as existing contamination on-site and off-site that may be released or remobilized in some fashion that would result in human exposure and increased health risk, that have the potential to affect all of the Class Area." *Id.* at 6. All three paths to nuisance liability require a demonstration of increased health risk to all class members, arising from the past or future release of plutonium or some contaminant from Rocky Flats.

As Defendants understand the Court's recent rulings, evidence that is probative of Plaintiffs' claims must relate to one of the following subjects: (1) "activities that in the usual course of events caused plutonium to be deposited on the Class Properties" (trespass), 12/17/04 Order re Instructions, at 4; (2) the common, class-wide health risk resulting from past or potential future releases of plutonium (nuisance), 5/17/05 Order, at 5; or (3) the common, class-wide health risk resulting from past or potential future releases of contaminants other than plutonium (nuisance), *id.*

Also important is the Court's requirement that "Plaintiffs must further demonstrate that it appears any nuisance they prove ***will continue indefinitely.***" *Id.* at 3 (emphasis added). In addition, consistent with the Court's Orders, for Plaintiffs to recover damages under Section 930, Plaintiffs must show that the trespass or nuisance at issue exists today and is continuing. *Id.*; *see also* 12/17/04 Mem. Op. and Order at 19-20.

Evidence of discovery matters – including allegations of ***non-party*** discovery conduct or disputes – simply do not make anything with respect to these claims more or less probable. Federal courts have refused to allow evidence at trial of a ***party's*** discovery conduct on relevancy

8

grounds. *Empire Gas Corp. v. American Bakeries Co.*, 840 F.2d 1333, 1341 (7th Cir. 1988) (evidence that *a party* willfully failed to provide documents during pretrial discovery was properly excluded as irrelevant); *BankAtlantic v. Blythe Eastman Paine Webber*, 130 F.R.D. 153 (S.D. Fla. 1990) (refusing to allow plaintiffs to introduce evidence to the jury regarding *defendants'* discovery misconduct), *aff'd* 955 F.2d 1467 (11th Cir. 1992).[4] Evidence of *non-party* discovery conduct is even less probative – if probative at all.

Non-party discovery conduct has nothing to do with the Defendants. DOE is not a party to this litigation. Plaintiffs – through their request that the Court allow an adverse instruction based on the government's continued classification of documents and their apparent intention to reference and introduce evidence of DOE discovery conduct at trial – seek improperly to treat the government as a party to this litigation. Among other things, Plaintiffs assert that the jury should be told that because the DOE continues to treat certain unspecified documents as classified (and thus privileged from disclosure), the DOE is somehow akin to an actual party that has spoliated discovery. But whether the *DOE* (a non-party in this action) acted properly or failed to take certain actions in the discovery process has nothing to do with whether *Defendants* should be held liable to Plaintiffs under nuisance and trespass theories. Plaintiffs made a conscious choice not to sue the United States or have it joined as a defendant to this action, thereby avoiding the DOE's sovereign immunity and the jurisdictional and statutory limitations

---

[4] *Accord Burwell v. American Edwards Labs*, 574 N.E.2d 1094, 1102-02 (Ohio Ct. App. 1989) (excluding evidence of discovery disputes as irrelevant and unduly prejudicial); *Amlan Inc., v. Detroit Deisel Corp.*, 651 So.2d 701, 702-03 (Fla. Ct. Ap. 1995) (refusing to allow evidence of discovery violation at trial; "this collateral evidence might distract the jury from main issues on liability").

of the Federal Tort Claims Act.[5] Plaintiffs must live with the consequences of that choice and cannot have it both ways. Plaintiffs should not be allowed, through introduction of evidence of DOE discovery conduct and references to such conduct at trial, to achieve what they could not have achieved pursuant to applicable law, *i.e.*, to treat the federal government as a party but without the jurisdictional and statutory impediments Plaintiffs would have had to face had they so structured their lawsuit.

Nevertheless, even if the DOE were a party, evidence of its discovery conduct should still be barred at trial. *See Empire Gas Corp.* 840 F.2d at 1341; *BankAtlantic*, 130 F.R.D. at 153. For these same reasons, DOE discovery conduct is irrelevant and any reference to such conduct at trial would be inappropriate.

### III. RULE 403 BALANCING REQUIRES THE EXCLUSION OF DOE DISCOVERY CONDUCT EVIDENCE.

Even if DOE discovery conduct evidence were somehow marginally relevant (which it is not), it should still be excluded because any probative value would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury and undue waste of time and resources. *See* Fed. R. Evid. 403; *see also Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 939-40 (10th Cir. 1994) (excluding evidence whose probative value was substantially outweighed by danger of prejudice); *Security State Bank v. Baty,* 439 F.2d 910, 913 (10th Cir. 1971) ("The court has not only the discretion but also the duty to exclude evidence of little or no relevance or probative value which might have a prejudicial effect."). Here, introducing evidence of DOE discovery conduct would have little or no probative value yet it would be

---

[5] *See* Defendants' 8/18/04 Response Br. at 33-41; DOE 3/04/96 Mem. in Opp. to Plfs' Mot. for Suppl. Sanctions at 5-8.

unfair to Defendants, would mislead and confuse the jury, and would waste time. All justify the exclusion of this evidence under Rule 403.

Evidence of DOE discovery conduct would be extremely prejudicial to Defendants. Plaintiffs' efforts to introduce evidence of DOE discovery conduct seeks to penalize or disadvantage Defendants for DOE's classification determinations and other DOE discovery decisions, over which Dow and Rockwell had absolutely no control. But Dow and Rockwell are not responsible for DOE's decisions and conduct, and played no role regarding DOE's discovery actions. Leaving aside the threshold matter that the federal government's classification decisions are based on a statutorily mandated privilege under the AEA and this Court has previously held that DOE did not act in bad faith in reviewing or processing classified documents,[6] the actions of the DOE (as a non-party) simply cannot form the basis for Defendants' liability. *See, e.g., Westric Battery Co. v. Standard Elec. Co.*, 482 F.2d 1307, 1318 (10th Cir. 1973) (it is "only the damage flowing legally from the defendant's misdeeds which counts"); *Davis v. Bonebrake*, 135 Colo. 506, 522-23 (1957) ("must be some connection between injury and damages . . . the asserted consequences must be linked to the injury . . . otherwise, there is presented to the jury evidence of unrelated conditions and circumstances wholly prejudicial to the party against whom such evidence is being introduced").[7]

Evidence of DOE discovery conduct also would be extremely confusing in a case that does not involves the liability of the DOE. The jury cannot be expected to separate evidence of

---

[6] *See* Defendants' 8/18/04 Response Br. at 36-39.

[7] *See further* Defendants' 8/18/04 Response Br. at 33-41; Dow 3/4/96 Mem. in Opp. to Pls.' Mot. for Sanctions at 27-40; *see also* generally Rockwell 3/4/96 Mem. in Opp. to Pls.' Mot. for Sanctions.

11

DOE's discovery conduct from evidence (if any) that goes to Defendants' liability in this case. Defendants have no control over DOE discovery actions or decisions, which, as the DOE has represented to this Court, have been made based in part on national security considerations. *See* DOE 3/04/96 Mem. in Opp. to Plfs' Mot. for Suppl. Sanctions at 19. Yet, Plaintiffs' introduction of, or references to, evidence of DOE discovery conduct at trial may cause the jury to conflate the DOE's actions with that of the Defendants and to blur the identities of Defendants with the DOE.[8] Plaintiffs should not be allowed to ask or encourage the jury to "punish" Defendants for conduct of a non-party for which Defendants cannot fairly be held responsible.

Plaintiffs' references to DOE discovery conduct also would urge the jury to decide the case based on speculation and conjecture related to the DOE's discovery production rather than the evidence before it. The desire to unfairly influence jurors in this manner is clearly demonstrated by Plaintiffs' proposed jury instruction on DOE classification. Plaintiffs want to suggest to the jury (through an instruction or otherwise) that, due to continued classification of documents by the DOE, and/or DOE's refusal to declassify materials for national security reasons, there is unseen evidence that is detrimental to the Defendants' case. The suggestion that the DOE withheld evidence that may be favorable to Plaintiffs is highly inflammatory. As discussed in greater length in Defendants' August 18, 2004 brief, it is inappropriate to draw an adverse inference from the unavailability of government-classified materials. This example alone demonstrates why such references to DOE discovery conduct should be barred. Plaintiffs

---

[8] Certainly, Plaintiffs' proposed jury instruction regarding document classification issues attempts expressly to do just that.

12

should not be permitted to seek a verdict against Defendants based upon conjecture about documents that are not available to either party.

What is more, because jurors cannot be expected to understand the rules of discovery (much less the nuances of such complicated legal doctrines as government classification of documents), the Defendants would be forced to call witnesses to try to explain the DOE's discovery behavior and classification review process to the jury. *See Empire Gas Corp. v. American Bakeries Co.*, 646 F. Supp. 269, 276 (N.D. Ill. 1986), *modified on unrelated grounds and aff'd*, 840 F.2d 1333 (7th Cir. 1988) ("It is understandable that jurors do not know ... the rules of discovery. Consequently, if [defendant's evidence were admissible, plaintiff] under any concept of fairness, would be entitled to call its witnesses to explain how discovery rules function.... In the process, these proceedings will become enmeshed in one of the pitfalls Rule 403 is designed to prevent: confusion of the issues and misleading of the jury."). The presentation of DOE discovery conduct evidence and Defendants' inevitable need to rebut such evidence would waste time and resources. This would needlessly complicate and delay the trial. On balance, therefore, this Court should exclude evidence of or argument about DOE discovery conduct under Rule 403.

## IV. INTRODUCTION OF EVIDENCE OF DOE DISCOVERY CONDUCT AT TRIAL WOULD AMOUNT TO AN UNTIMELY AND INAPPROPRIATE DISCOVERY SANCTION AGAINST DEFENDANTS.

The introduction of evidence of DOE discovery conduct at trial would, in effect, amount to a discovery sanction against Defendants for DOE actions in which the Defendants had no involvement. This is impermissible under the Federal Rules. For example, Federal Rule of Civil Procedure 37 grants authority to penalize a "party, or an officer, director or managing agent of a

13

party" only when the party has failed to comply with a court order. Likewise, Rule 45 grants authority to hold in contempt a person who has failed "without adequate excuse to obey a subpoena served on that person." Since neither Dow nor Rockwell has violated a court order or failed to obey a subpoena, the Federal Rules cannot be invoked as authority for penalizing Dow and Rockwell under the circumstances of this case.

In a similar context, federal courts have refused to impose preclusive sanctions (such as adverse evidentiary inferences) against parties based on the conduct of non-parties. Federal courts have refused to impose such sanctions for non-party conduct, even in cases where the party and the non-party's interests were aligned and the party was unable to provide the requested discovery because the material sought was in the sole possession of the non-party. *See, e.g., Read v. Ulmer*, 308 F.2d 915 (5th Cir. 1962). In *Read*, the Fifth Circuit recognized the reality that preclusive sanctions operate against parties and that, as a result, the Rules did not permit sanctions where the parties lacked the ability to make the discovery. *Id.* at 918; *see also B.F. Goodrich Tire Co. v. Lyster*, 328 F.2d 411 (5th Cir. 1964) (reversing imposition of evidentiary sanctions on defendant-employer where nonparty-employee failed to provide discovery).[9]

Nor do Defendants believe that, in this situation, the Court could properly invoke its inherent power to allow Plaintiffs to introduce evidence at trial of non-party discovery conduct here, as Plaintiffs have suggested. *Cf., In re Novak*, 932 F.2d 1397, 1406 n. 17 (11th Cir. 1991)

---

[9] For the same reason, federal courts have refused to impose sanctions that operate against one party-defendant for the discovery misconduct of another party-defendant. *See, e.g., Southern Railway Co. v. Templar*, 463 F.2d 967 (10th Cir. 1972) (reversing evidentiary sanction that operated against all defendants where the discovery misconduct leading to the sanction was perpetrated only by some of the defendants).

(A federal court "may not take action under the guise of its inherent power when that action either contravenes a statute or rule or unnecessarily enlarges the court's authority"). Because sanctions based on inherent powers are essentially punitive in nature, a finding of some act of bad faith on the part of the party sanctioned is an essential predicate to the imposition of any such sanction. *Roadway Express Inc. v. Piper*, 447 U.S. 752, 765-66 (1980); *Glass v. Pfeffers*, 657 F.2d 252, 257 (10th Cir. 1981), overruled in part on other grounds by *Cox v. Flood*, 683 F.2d 330 (10TH Cir. 1982). As the Supreme Court explained in reviewing a district court's invocation of its inherent powers to assess attorney's fees for bad faith conduct, "a court must, of course, . . . comply with the mandates of due process [] in determining that the requisite bad faith exists and in [imposing the sanction]." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). But here, the Defendants have not been found to have acted in bad faith. There can be no basis for the Court to sanction Defendants pursuant to its inherent powers by allowing the admissibility of DOE discovery conduct and classification decisions at trial when it is not even the Defendants' discovery conduct that is at issue.[10]

Moreover, referencing discovery conduct at trial is an untimely and improper way to seek discovery sanctions. The appropriate procedure for redressing alleged discovery violations under the Federal Rules is through a pretrial motion to compel or for sanctions (such as exclusion of evidence), not by presenting evidence and argument on discovery disputes during trial. *See* Fed. R. Civ. P. 37 (setting forth procedure for discovery sanctions); *BankAtlantic*, 130 F.R.D. at 154-

---

[10] Nor does the DOE's document production record (for which Defendants bear no responsibility) demonstrate the requisite culpability by DOE that would be necessary for the Court to invoke its inherent power to sanction DOE. *See further* Defendants' 8/18/04 Response Br. at 36-39.

15

55 (refusing to permit plaintiff to introduce evidence of defendant's discovery conduct at trial; any prejudice to plaintiff had been amply cured by pretrial discovery sanctions).[11] Plaintiffs, in fact, exercised their prerogative to seek relief related to DOE discovery actions. The issues Plaintiffs raised were resolved (through agreement, Order, or otherwise) more than seven years ago. Plaintiffs have not sought any further relief against DOE in the intervening seven years. *See* Defendants' 8/18/04 Response Br. at 36-38. Plaintiffs should not be permitted to raise these issues again before the jury.

---

[11] *Cf. Kawamata Farms, Inc. v. United Agri Products*, 948 P. 2d 1055, 1083 (Hawaii 1997) (jury should not have been allowed to consider defendants' pretrial discovery misconduct); *Palmer v. Ted Stevens Honda, Inc.*, 193 Cal. App. 3d 530, 540 (Cal. App. Ct. 1987) (it "is for the law-and-motion judge and not the jury to assess whether a party should be penalized for bad-faith discovery positions."); *Burwell*, 574 N.E. 2d at 1102 ("The Civil Rules adequately provide for sanctions or other remedies when requests for discovery are not properly met, and there is no need to introduce evidence of discovery problems at trial."); *Emerson Electric Co. v. Garcia*, 623 So.2d 523, 524-25 (Fla. Ct. App. 1993) (decision to impose appropriate sanction for pretrial discovery violation was for trial court, not jury).

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion in *Limine* To Exclude Evidence of Document Classification Issues and Discovery Conduct By The DOE should be granted.

Dated: June 16, 2005                                        Respectfully submitted,

                                                                            *[signature]*
                                                                            One of the Attorneys for the Defendants
                                                                            David M. Bernick
                                                                            Douglas J. Kurtenbach
                                                                            Ellen Therese Ahern
                                                                            Stephanie A. Brennan
                                                                            KIRKLAND & ELLIS LLP
                                                                            200 East Randolph Drive
                                                                            Chicago, Illinois 60601-6636
                                                                            Phone: 312-861-2000
                                                                            Fax:     312-861-2200

                                                                            Joseph J. Bronesky
                                                                            SHERMAN & HOWARD L.L.C.
                                                                            633 Seventeenth Street, Suite 3000
                                                                            Denver, Colorado 80202
                                                                            Phone: 303-297-2900
                                                                            Fax:     303-298-0940

                                                                            Attorneys for ROCKWELL
                                                                            INTERNATIONAL CORPORATION and
                                                                            THE DOW CHEMICAL COMPANY

## CERTIFICATE OF SERVICE

I, Patricia Eckman, hereby certify that a true and correct copy of the foregoing was served this 16th Day of June, 2005, upon the following counsel via Federal Express or hand delivery as indicated:

Peter B. Nordberg, Esq. (via Federal Express)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103-6365

Gary B. Blum, Esq. (via hand delivery)
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206

*/s/ Patricia Eckman*
Patricia Eckman