**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**No. 90-cv-181-JLK**
_____

**MERILYN COOK, et al.,**

    **Plaintiffs,**

       **v.**

**ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,**

    **Defendants.**
_____

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO "DEFENDANTS'
MOTION TO EXCLUDE TESTIMONY BY DR. WING"**
_____

Plaintiffs respectfully submit this memorandum in opposition to "Defendants' Motion to Exclude Testimony by Dr. Wing Regarding Conduct by the DOE/AEC, Including the DOE Plutonium Injection Studies" (filed Nov. 11, 2005) [Ct. Rec. 1632 & 1633].

This motion involves an expert report by Dr. Steven Wing that was prepared and served nine years ago  Although defendants were on explicit notice that plaintiffs contemplated calling Dr. Wing at trial, defendants submitted no *Daubert* motion involving Dr. Wing by the time of the Court's June 2005 pretrial deadline.  The Court later permitted defendants to file a *Daubert* motion out of time.  *See* Defendants' Motion to Exclude the Testimony of Dr. Steven Wing (filed Sept. 16, 2005) [Ct. Rec. 1444].  That out-of-time motion was subsequently denied.  *See* Minute Order (Oct. 3, 2005) [Ct. Rec. 1483].

On November 10, 2005, in response to a deluge of evidentiary motions filed during trial, the Court issued its Order Limiting Motions Practice During Trial (the "Motions Practice Order") [Ct. Rec. 1626]. In that Order, the Court required that any further motions on expert testimony include a reference to any relevant previous rulings and a justification for raising the issue at this point. The Court's Order further provided that absent an intervening change in controlling law, new facts, or manifest error, such motions would be denied. *Id.*

This motion was filed the following day. It makes no mention of the Court's previous ruling. It alleges no manifest error in that ruling. It claims no intervening change in the law. It points to the emergence of no new facts. It offers no justification for the raising the issues it does at this time. It raises no claim that some procedural impediment prevented defendants from raising those issues earlier. And, incredibly, it foreshadows still further motions in which unidentified additional issues involving Dr. Wing's testimony may yet be raised. *See* Motion at 2 n.1.

This Court enjoys no discretion to abdicate its gatekeeping function under *Daubert*. However, the Court does enjoy wide discretion in regulating the time, place, and manner of its performance. *See Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004), *cert. denied*, 126 S. Ct. 395 (2005). "*Daubert* does not require a district judge to linger at the 'gate,' as if caught in Zeno's paradox, unable to proceed to the main trial without first conducting a series of mini-trials with regard to every objection raised against a party's expert witnesses." *Id.* at 1234-35. Defendants cannot possibly contend on appeal that the Court has failed to afford them whatever process may be due concerning their challenges to Dr. Wing. The Court would be well within its sound discretion to deny defendants' latest motion on procedural grounds alone.

*Plaintiffs' Opposition to Defendants' Motion to Exclude Testimony from Dr. Wing – Page 2*

The motion warrants denial on the merits as well. Defendants seeks preclusion of Dr. Wing's testimony on an undefined range of "conduct" by DOE, but defendants focus on just one single instance: the DOE-sponsored plutonium injection study on human subjects, addressed at page 14 of Dr. Wing's report. Dr. Wing's discussion of that study is logically germane to the topic of his report and to the conclusions he draws. For example, the study's methodology, sample size, and follow-up procedures are directly supportive of Dr. Wing's finding, recited at page 14 of his report, that "Contrary to epidemiological principles that emphasize the importance of adequate study sample sizes, the use of appropriate comparison populations, and the preferability of studying morbidity to mortality, the medical follow-up efforts of DOE have been limited in size and required decades of follow-up to obtain a small amount of information on outcomes."

Defendants' concern, evidently, is that DOE will be painted as sponsoring unethical research, and that defendants will be tarred with that brush. Dr. Wing will not testify, however, that Dow or Rockwell was involved in the relevant study in any way. It would meanwhile tend to portray Dr. Wing himself as ethically insensitive, if he were required to narrate the circumstances of this study as though he were utterly agnostic on the question of its ethical propriety. Insofar as the details of this human study tend to shed a disfavorable light on DOE, it is because the details are factually true.

Dr. Wing's report does not dwell on the ethical dubiety of this study or seek to sensationalize it. His description of the study is as dry and neutral as ordinary human decency permits. If Dr. Wing's objective had been to spotlight DOE's weak ethical record in the field of human experimentation, he would have had a wealth of more exotic material on which to draw. *See* "Human Radiation Experiments Associated with the U.S. Department of Energy and Its

*Plaintiffs' Opposition to Defendants' Motion to Exclude Testimony from Dr. Wing  – Page 3*

Predecessors" (http://www.eh.doe.gov/ohre/roadmap/experiments/index.html) (visited Nov. 13, 2005) (listing over 400 human experiments and studies). That Dr. Wing refrained from rehearsing other examples is proof in itself that neither he nor plaintiffs are attempting to sensationalize his testimony.

The circumstances of the plutonium injection study are plainly linked to the legitimate purposes of Dr. Wing's report, and they offer direct empirical support for its conclusions. Dr. Wing should be permitted to testify to the bases for those conclusions.

Dated: November 13, 2005  s/ Peter Nordberg
Merrill G. Davidoff
Peter Nordberg
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

Attorneys for Plaintiffs
And the Class