**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-181-JLK

MERILYN COOK, *et al.*,

        Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

        Defendants.

---

**DEFENDANTS' MOTION TO EXCLUDE TESTIMONY BY DR. WING REGARDING:
(1) ALLEGEDLY IMPROPER CLASSIFICATION BY THE DOE/AEC; AND (2)
ALLEGED IMPROPER EFFORTS BY THE DOE/AEC TO INFLUENCE THE
SCIENTIFIC PROCESS[1]**

---

[1]     Defendants recognize that this Court previously denied defendants' general *Daubert* motion regarding Dr. Wing. While defendants disagree with this ruling, they do not quarrel with it here. For example, defendants recognize that, under the Court's ruling, Dr. Wing may testify about studies regarding the health effects of plutonium. Defendants understand that a written opinion is forthcoming. However, defendants here seek to focus the Court's attention on several discrete issues (***including Rule 403 issues***) that have not been addressed by the Court (to defendants' knowledge) — namely (1) testimony by Dr. Wing regarding classification issues (an issue which is affected by rulings made by the Court as recently as last Thursday), and (2) testimony by Dr. Wing regarding alleged improper efforts by the DOE/AEC to influence the scientific process. Likewise, to defendants' knowledge, the Court has not previously addressed the specific Federal Rule of Evidence 403 objections raised in defendants' motion of November 10 (to exclude evidence relating to DOE plutonium-injection studies), which raises issues regarding the relationship between the DOE and Dow/Rockwell that have been the subject of extensive discussions between among the Court and the parties since the initial round of *Daubert* briefing. This motion goes beyond defendants' *Daubert* motion and raises Federal Rule of Evidence 403 and 703 issues.

(Continued…)

Based on Dr. Wing's expert report, defendants expect that plaintiffs will seek to elicit testimony from Dr. Wing regarding: (1) allegedly improper classification by the DOE/AEC; and (2) alleged improper efforts by the DOE/AEC to influence the scientific process. (Classification by the DOE/AEC is discussed on pages 28-30 of Dr. Wing's report, which are attached as Exhibit A hereto. Alleged efforts by the DOE/AEC to influence the scientific process is discussed at pages 21-28 of Dr. Wing's report, which are attached as Exhibit B hereto). Such testimony should be excluded for the reasons discussed below.

## I. EVIDENCE OF ALLEGEDLY IMPROPER CLASSIFICATION BY THE DOE/AEC SHOULD BE EXCLUDED.

According to Dr. Wing, "[t]he AEC established a written policy of security classification which controlled access to information by the scientific community and the public. The written policy was adopted in 1947 following recommendations of the Advisory Committee on Declassification and the AEC Medical Board of Review." (Ex. A, at 28) According to Dr. Wing, however, this classification policy was "consistently violated" by the AEC:

> However, in practice the AEC consistently violated this policy. Instead, criteria other than national security were used to prevent release of information, creating classification categories of restricted and confidential, in addition to secret and top secret classifications, to control access to information. . . .

---

Defendants, out of an abundance of caution, and in an attempt to comply with the Court's 4-day rule regarding motions announced last Thursday, immediately filed the motion to exclude Dr. Wing's evidence regarding the plutonium injection studies under Rule 403. This motion was not filed at that time because it was not ready, in part because defendants wished to scrutinize the transcript of the Court's classification rulings made at the end of the day Thursday.

> The AEC Insurance Branch also became actively involved in the classification process, evaluating the potential liability to the AEC and its contractors if specific documents were declassified. (Ex. A, at 28, 30)

Dr. Wing should be barred from testifying about such allegedly improper classification conduct by the DOE/AEC for four reasons.

First, this Court has ruled that the propriety or impropriety of classification decisions is not at issue in this trial. (Ex. C, Trial Tr. at 5006.) ("The evidence that some information that might be admissible for plaintiffs was – remains classified, is admissible and that's it. That's it. I am not going to permit any further testimony."); (*id.*) ("I am not going to get into the wisdom of what's in the security interests of the United States. That's simply not a matter for me to decide."); (Ex. D, Trial Tr. at 5050-51.) ("What you have are comments that people are talking about it's bad for PR, it's bad for pending litigation, bad for this, bad for that, but you still have a classification decision that's made, and the Congress says it's none of my business.")

Second, such classification conduct by the DOE/AEC has nothing to do with Dow or Rockwell, or with any of the claims or defenses in this case.

Third, in addition to its lack of probative value, testimony by Dr. Wing regarding such DOE/AEC conduct would be highly inflammatory and extremely prejudicial to defendants, and therefore is inadmissible under Rule 403.

Fourth, Dr. Wing is not an expert on classification.

For the foregoing reasons, Dr. Wing should not be allowed to make reference to the propriety or impropriety of classification decisions by the DOE/AEC. In addition, although

3

defendants have not received any of Dr. Wing's exhibits, defendants move to exclude any of Dr. Wing's exhibits relating to classification.

In addition, for the reasons previously stated by defendants, Dr. Wing's expert report should not allowed into evidence. However, if Dr. Wing's report is allowed into evidence, then portions regarding classification, including pages 28-30 attached as Exhibit A hereto, should be redacted.

On November 10, defendants filed a separate motion to exclude testimony by Dr. Wing regarding studies (such as plutonium-injection studies) by the DOE/AEC, including on the ground that such testimony is inadmissible under Rule 403. Dr. Wing's discussion of classification also addresses the DOE plutonium injection studies, and thus is also objectionable for that reason. Defendants likewise move to exclude any portions of any documents relating to human experimentation or DOE plutonium injection studies that plaintiffs may seek to use in connection with Dr. Wing's testimony.

## II.   EVIDENCE OF ALLEGED IMPROPER EFFORTS BY THE DOE/AEC TO INFLUENCE THE SCIENTIFIC PROCESS SHOULD ALSO BE EXCLUDED.

Based on Dr. Wing's report, defendants expect that plaintiffs will also attempt to elicit testimony from Dr. Wing regarding the "role of the DOE" in scientific research, including "pressure" exerted by the DOE on researchers "to come up with the 'right' answer." (Ex. B, Wing Report, at 21-28) For example, Dr. Wing's report states:

> Pressure on DOE researchers to come up with the "right" answer is exemplified by the experience of Gregg Wilkinson, formerly epidemiology group leader at LANL and principal investigator of the plutonium workers study. Wilkinson, who described his experiences before the SPEERA committee, considered his

4

> "mission as a public health professional [was] to investigate whether or not there were health effects, ostensibly associated with exposure to internal radiation, primarily, but also external radiation." (page 211). After finding evidence of excess cancer at Rocky Flats, Wilkinson "decided to inform some of my superiors at the laboratory . . . [one of whom] was very upset and made the statement that, if these findings are true, this will shut the nuclear industry down." (page 211) He was "called to the Director's office at Los Alamos and berated and accused of not having these results properly reviewed," and told that, "we should not be publishing using or trying to please peer reviewers, but rather we should be publishing to please the Department of Energy because they were a customer of ours." He further stated that, "at that time, pressure was put on me to withdraw the paper and which I refused to do." Pressure to withdraw the paper came not only from his superiors at LANL. "There was very definite pressure from several sources within the Department of Energy to withdraw the results of that study to change the findings or the interpretation."

(Ex. B, Wing Report, at 27); *see also id.* at 21 ("The history of DOE research shows that contesting voices, even at the highest levels of the organization, were silenced.") (*citing* "examples" of Dr. Mancuso, Dr. Gofman, and Dr. Brandom); *id.* (citing his "own experiences").

Such evidence of allegedly improper efforts by the DOE/AEC to influence the scientific process should be excluded for five reasons.

First, according to Dr. Wing, such alleged efforts to influence the scientific process were undertaken by the DOE/AEC — not by Dow or Rockwell — and thus are irrelevant to this action. (Ex. B, 21-28) Nor have these episodes (of supposedly improper influence on the scientific process) that Dr. Wing seeks to the relay to the jury involved Rocky Flats, or even the Department of Energy's Rocky Flats personnel.

Second, in addition to its lack of probative value, testimony by Dr. Wing regarding such DOE/AEC conduct would be unfairly prejudicial to defendants, who played no role in

5

determining which studies DOE/AEC would or would not fund, and therefore is inadmissible under Rule 403.

Third, Dr. Wing asserts himself to be an expert in epidemiology. There has been no showing that these types of materials concerning allegedly improper efforts to influence the scientific process are of the type admissible under Rule 703. Statements made by a researcher about alleged improper efforts to influence his research do not constitute facts or data "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject," *see* Federal Rule of Evidence 703, and thus are not admissible.

Fourth, such testimony by Dr. Wing would be based on hearsay (*e.g.*, Gregg Wilkinson's account of alleged pressure by the DOE, discussed *supra*). Plaintiffs should not be allowed to introduce such hearsay evidence via the "backdoor" — that is, by calling an individual who purports to be an expert regarding "the health effects of plutonium."

Fifth, were such evidence to be admitted, then defendants would be forced to attempt to locate the individuals who allegedly made the threatening hearsay statements, in an effort to rebut Dr. Wing's testimony regarding the hearsay statements of individuals such as Gregg Wilkinson. This would turn this trial into a sideshow, on issues that have no relevance (or virtually none) and are highly prejudicial to defendants.

For the foregoing reasons, Dr. Wing should not be allowed to make reference to alleged improper efforts by the DOE/AEC to influence the scientific process (as set forth in pages 21-28 of his expert report, attached as Exhibit B hereto). In addition, although defendants have not

6

received any of Dr. Wing's exhibits, defendants move to exclude portions of any of Dr. Wing's exhibits relating to this subject matter.

Dated:  November 14, 2005                                    Respectfully submitted,


/s/ Stephanie A. Brennan
One of the Attorneys for the Defendants
David M. Bernick
Douglas J. Kurtenbach
Ellen Therese Ahern
Mark J. Nomellini
Stephanie A. Brennan
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636
Phone:  312-861-2000
Fax:     312-861-2200

Joseph J. Bronesky
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Phone:  303-297-2900
Fax:     303-298-0940

Attorneys for ROCKWELL INTERNATIONAL CORPORATION and THE DOW CHEMICAL COMPANY

7

## **CERTIFICATE OF SERVICE**

  I hereby certify that on November 14, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses for the following:

Peter B. Nordberg, Esq.
c/o Karen M. Markert
Apartments at Denver Place, Apt. 2812
1880 Arapahoe Street
Denver, CO 80202
pnordberg@bm.net
kmarkert@bm.net

Gary B. Blum, Esq.
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206
blumg@s-d.com

               /s/ Kari Knudsen_____
               Kari Knudsen (legal assistant)