Slip Copy                                                                                                                                  Page 1
Slip Copy, 2005 WL 2415965 (E.D.Tex.)
**(Cite as: 2005 WL 2415965 (E.D.Tex.))**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Texas, Sherman Division.
Karen F. HICKS and Benny J. Hicks, Plaintiffs,
v.
CHARLES PFIZER & COMPANY INC. aka Charles Pfizer & Company, Pfizer, Ltd. aka
Charles Pfizer Ltd., and Pfizer Inc. aka Pfizer, individually and as successor
in interest to Charles Pfizer & Company and Pfizer, Ltd., Defendants.
**No. Civ.A. 1:04-CV-201.**

Sept. 29, 2005.

Glen W. Morgan, Thomas Nave Kiehnhoff, Reaud Morgan & Quinn, Beaumont, TX, for Plaintiffs.

Lisa Gaye Mann, Phillips & Akers, Joseph Samuel Cohen, Beirne Maynard & Parsons, Houston, TX, for Defendants.

MEMORANDUM AND ORDER

CRONE, J.

**\*1** Pending before the court is Defendants Charles Pfizer & Company Inc., Pfizer, Ltd., and Pfizer Inc.'s (collectively, "Pfizer") Motion for Summary Judgment (# 126). Pfizer seeks summary judgment on Plaintiffs Karen Hicks and Benny Hicks's ("the Hicks") personal injury action asserting claims for products liability, negligence, fraud, and breach of warranty, arising out of Karen Hicks's ("Karen") ingestion of oral polio vaccine ("OPV"). The Hicks contend that the vaccine caused Karen to develop two, non-malignant, brain tumors. Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that summary judgment is not warranted.

I. *Background*

In June 2001, Karen was diagnosed with a brain tumor that she alleges was caused by OPV administered to her as a child. She was subsequently diagnosed with a second brain tumor. The Hicks contend that, during the manufacturing process, the OPV was contaminated with simian virus 40 ("SV 40") while being cultured in tissue from monkey kidneys. SV 40 has allegedly been linked to brain tumor formation and cancer in humans. The Hicks maintain that tests on the tissue of Karen's first tumor revealed the presence of SV 40 deoxyribo-nucleic acid.

In 1962, the Jefferson County, Texas, Medical Society ("Medical Society") sponsored a massive public health campaign, Project XP, to vaccinate the public against polio. Free OPV was provided to any resident over six weeks of age who wished to receive the vaccine. The Project XP campaign was administered in three phases in 1962: September 9 (Type I), October 21 (Type III), and December 2 (Type II). Three drops of OPV were placed on a sugar cube that was then ingested by the recipient. Karen claims to have participated in Project XP and ingested three separate sugar cube vaccinations in 1962, when she was approximately five-years-old. Karen further alleges that she received one or two more doses of OPV from plastic dispettes at her physician's office in 1968 and 1971.

The Hicks filed suit in the 58th Judicial District Court of Jefferson County, Texas, on February 19, 2004, asserting that one or more of thirty-three named defendants manufactured the OPV Karen received. On April 8, 2004, the case was removed to federal court based on the diversity of citizenship of the parties. *See* 28 U.S .C. § 1332. The court held a status conference on July 9, 2004, during which the parties agreed to an interim discovery schedule designed to ascertain which, if any, of the named defendants manufactured the vaccine Karen ingested. The court's order directed the Hicks to disclose all information and documents in their possession "relevant to the product identification issue" and allowed the defendants to depose Karen on the limited issue of product identification. Additionally, the court ordered the defendants to provide all documents in their possession relating to the distribution or sale of their polio vaccines in Jefferson County, Texas, during the time periods identified by the Hicks.

**\*2** As a result of the product identification discovery, the Hicks dismissed all but ten of the defendants from this action. The remaining defendants were corporate entities related through acquisition or merger to Wyeth. Wyeth moved for summary judgment on the grounds that, after extensive product identification discovery, the Hicks could

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



not identify who manufactured the OPV Karen received, and therefore, could not establish that Wyeth produced the vaccine in question. On March 8, 2005, this court granted Wyeth's motion for summary judgment on the basis of product identification. The court permitted the Hicks to amend their complaint to name additional defendants, specifically certain Pfizer entities. Pfizer now argues that there is no competent evidence that Karen received its products, thus defeating the causation element of the Hicks' claims.

II. *Analysis*

A. *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The parties seeking summary judgment bear the initial burden of informing the court of the basis for their motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lincoln Gen. Ins. Co. v. Reyna,* 401 F.3d 347, 349 (5th Cir.2005); *Martinez v. Schlumberger, Ltd.,* 338 F.3d 407, 411 (5th Cir.2003); *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.,* 310 F.3d 870, 877 (5th Cir.2002). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248; *accord Harken Exploration Co. v. Sphere Drake Ins. PLC,* 261 F.3d 466, 471 (5th Cir.2001); *Merritt-Campbell, Inc. v. RxP Prods., Inc.,* 164 F.3d 957, 961 (5th Cir.1999). The moving parties, however, need not negate the elements of the nonmovants' case. *See Boudreaux v. Swift Transp. Co.,* 402 F.3d 536, 540 (5th Cir.2005); *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir.1996) (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994)).

Once a proper motion has been made, the nonmoving parties may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corp.,* 477 U.S. at 322-23; *Anderson,* 477 U.S. at 257; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Smith ex rel. Estate of Smith v. United States,* 391 F.3d 621, 625 (5th Cir.2004); *Malacara v. Garber,* 353 F.3d 393, 404 (5th Cir.2003) (citing *Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 349 (5th Cir.2001)); *Rushing v. Kansas City S. Ry. Co.,* 185 F.3d 496, 505 (5th Cir.1999), *cert. denied,* 528 U.S. 1160, 120 S.Ct. 1171, 145 L.Ed.2d 1080 (2000). "[T]he court must review the record 'taken as a whole.' " *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Matsushita Elec. Indus. Co.,* 475 U.S. at 587). All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.,* 98 F.3d 179, 181 (5th Cir.1996); *see Reeves,* 530 U.S. at 150; *Malacara,* 353 F.3d at 398; *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir.2003); *Harken Exploration Co.,* 261 F.3d at 471; *Daniels v. City of Arlington,* 246 F.3d 500, 502 (5th Cir.), *cert. denied,* 534 U.S. 951, 122 S.Ct. 347, 151 L.Ed.2d 262 (2001). The evidence of the nonmovants is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in their favor. *See Palmer v. BRG of Ga., Inc.,* 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 112 L.Ed.2d 349 (1990) (citing *Anderson,* 477 U.S. at 255); *Lincoln Gen. Ins. Co.,* 401 F.3d at 349; *Martin v. Alamo Cmty. Coll. Dist.,* 353 F.3d 409, 412 (5th Cir.2003); *Martinez,* 338 F.3d at 411; *Gowesky v. Singing River Hosp. Sys.,* 321 F.3d 503, 507 (5th Cir.), *cert. denied,* 540 U.S. 815, 124 S.Ct. 66, 157 L.Ed.2d 30 (2003); *Chaplin v. Nations Credit Corp.,* 307 F.3d 368, 372 (5th Cir.2002).

**\*3** Summary judgment is mandated if the nonmovants fail to make a showing sufficient to establish the existence of an element essential to their case on which they bear the burden of proof at trial. *See Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Celotex Corp.,* 477 U.S. at 322; *Wenner v. Texas Lottery Comm'n,*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Slip Copy                                                                                                                                         Page 3
Slip Copy, 2005 WL 2415965 (E.D.Tex.)
**(Cite as: 2005 WL 2415965 (E.D.Tex.))**

123 F.3d 321, 324 (5th Cir.1997), *cert. denied,* 523 U.S. 1073, 118 S.Ct. 1514, 140 L.Ed.2d 667 (1998). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23.

B. *Product Identification*

1. *Causation*

The Hicks pleaded this case as one arising in strict liability, negligence, fraud, and breach of warranty. In order to recover under any of these theories, the Hicks must establish the element of causation. *See* In re Norplant Contraceptive Prods. Litig., 215 F.Supp.2d 795, 830 (E.D.Tex.2002) (as with any tort claim, causation is an essential element of a products liability claim); IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798-99 (Tex.2003) (the elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach); In re FirstMerit Bank, N.A., 52 S.W.3d 749, 758 (Tex.2001) (holding that plaintiff must have relied on the false misrepresentation and suffered an injury from such reliance); Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez, 995 S.W.2d 661, 667 (Tex.1999) (liability for breach of warranty cause of action requires a showing of proximate cause). In Texas, a showing of producing cause is necessary for recovery in a products liability case. *See* Flock v. Scripto-Tokai Corp., 319 F.3d 231, 238 (5th Cir.2003) (citing Tex. Civ. Prac. & Rem.Code Ann. § 82.005(a)(2)). "Producing cause is the cause-in-fact of the harm, meaning that a 'defendant's conduct must have been a substantial factor in bringing about the injury and that the injury would not have occurred but for the defendant's conduct." ' Flock, 319 F.3d at 238 (quoting General Motors Corp. v. Harper, 61 S.W.3d 118, 124 (Tex.App.--Eastland 2001, pet. denied)).

In essence, the Hicks must prove Pfizer's product caused Karen's brain tumors. "A fundamental principle of traditional products liability law is that the plaintiff must prove that the defendants supplied the product which caused the injury." Gaulding v. Celotex Corp., 772 S.W.2d 66, 68 (Tex.1989); *see* In re Fibreboard Corp., 893 F.2d 706, 711 (5th Cir.1990). "It is not enough that the seller merely introduced products of similar design and manufacture into the stream of commerce." Firestone Steel Prods. Co. v. Barajas, 927 S.W.2d 608, 614 (Tex.1996). "[U]nder Texas substantive law causation of plaintiff's injury by defendant's product and plaintiff's resultant damages must be determined as to 'individuals, not groups." ' Cimino v. Raymark Indus., 151 F.3d 297, 313 (5th Cir.1998) (citing In re Fibreboard, 893 F.2d at 711). Like the courts in *Cimino and Fibreboard,* this court is bound to apply Texas law as it currently exists and will not create " 'innovative theories of recovery or defense' under local law." *Id.* at 314 (quoting Johnson v. Sawyer, 47 F.3d 716, 726 (5th Cir.1995)). Texas state courts have not adopted the theories of alternative liability, concert of action, enterprise liability, or market share liability. *See id.;* Spring Branch Indep. Sch. Dist. v. NL Indus., No. 01-02-01006-CV, 2004 WL 1404036, at \*4 (Tex.App.--Houston [1st Dist.] June 24, 2004, no writ) (affirming trial court ruling disposing of all claims against paint manufacturers for lack of product identification, including claims for strict liability for design and marketing defects, negligence, and fraud). To establish Pfizer's liability, therefore, it is not enough for the Hicks merely to show that Pfizer distributed OPV in Texas in 1962. Instead, the plaintiffs must adduce evidence that Pfizer supplied the specific doses that allegedly caused Karen's injury. *See id.;* accord Cimino, 151 F.3d at 313.

2. *Newspaper Articles and Hearsay Concerns*

**\*4** The Hicks offer as evidence several newspaper articles, four of which link Pfizer with the doses of OPV that Karen allegedly ingested. An article dated August 9, 1962, from the *Beaumont Enterprise* states that "[t]he medical society has purchased the vaccine from Pfizer Laboratories." Warren Weber, *250,000 in Jefferson Are Expected to Receive Polio Vaccine Sept. 9,* BEAUMONT ENTERPRISE, Aug. 9, 1962. An article from the *Beaumont Journal,* also dated August 9, 1962, quotes Dr. Paul Meyer, described as the director of Project XP, stating that "Pfizer Laboratories of New York will provide the vaccine...." *Immunization Set for Sept. 9: Education Drive to Start Aug.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Slip Copy                                                                                                                                                   Page 4
Slip Copy, 2005 WL 2415965 (E.D.Tex.)
**(Cite as: 2005 WL 2415965 (E.D.Tex.))**

*15 in Polio Project,* BEAUMONT JOURNAL, Aug. 9, 1962. An August 14, 1962, article from the *Beaumont Journal* states that "Southwestern Drug Corp .... will receive the live vaccine from the Pfizer Laboratories of New York...." Edythe Capreol, *Drivein Station to Be Added to Clinics in Polio Drive Here,* BEAUMONT JOURNAL, Aug. 14, 1962. Finally, an article dated November 27, 1962, from the *Beaumont Enterprise* states that the vaccine "was ordered from Charles Pfizer Laboratories of New York...." *Third and Final Phase of Polio Eradication Drive Slated Sunday in County,* BEAUMONT ENTERPRISE, Nov. 27, 1962.

The Hicks have not proffered the testimony of a person who has present, personal knowledge of the identity of the vaccine manufacturer or business records identifying the supplier of the relevant doses. Karen admits she does not remember and, in fact, never knew the identity of the manufacturer of the polio vaccine that she ingested. Discovery directed at the defendants has not unearthed any documentation concerning the manufacturer of the relevant doses of OPV. Pfizer no longer retains any records that could potentially shed light on whether it manufactured the OPV doses at issue. Accordingly, the newspaper articles represent the only known, existing link between Pfizer and the product that allegedly caused Karen's injury.

Pfizer contends that the newspaper accounts should not be considered as competent summary judgment evidence because the assertive statements contained therein constitute inadmissable double hearsay. Generally, newspaper articles are "classic, inadmissible hearsay" and are "unusable to defeat summary judgment." Roberts v. City of Shreveport, 397 F.3d 287, 295 (5th Cir.2005); *see* The Barnes Foundation v. Township of Lower Merion, 242 F.3d 151, 166 n. 8 (3d Cir.2001); Miller v. Tony & Susan Alamo Found., 924 F.2d 143, 146 (8th Cir.1991); Pennington v. Vistron Corp., 876 F.2d 414, 427 n. 15 (5th Cir.1989); Dallas County v. Commercial Union Assur. Co., 286 F.2d 388, 392 (5th Cir.1961); Anchee v. Port Drum Co., 197 F.Supp.2d 723, 730 n. 5 (E.D.Tex.2002); Ladner v. City of N.Y., 20 F.Supp.2d 509, 519 (E.D.N.Y.1998), *aff'd,* 181 F.3d 83 (2d Cir.), *cert. denied,* 528 U.S. 1006, 120 S.Ct. 502, 145 L.Ed.2d 388 (1999); Dowdell v. Chapman, 930 F.Supp. 533, 541 (M.D.Ala.1996); Tilton v. Capital Cities/ABC, Inc., 905 F.Supp. 1514, 1544 (N.D.Okla.1995), *aff'd,* 95 F.3d 32 (10th Cir.1996), *cert. denied,* 519 U.S. 1110, 117 S.Ct. 947, 136 L.Ed.2d 836 (1997). Newspaper articles are hearsay when offered to prove the truth of the matter asserted. *See Barnes Found.,* 242 F.2d at 164 n. 8; Anchee, 197 F.Supp.2d at 730 n. 5. They are not sworn or certified, and the authors are not subject to cross-examination, rendering such articles incompetent summary judgment evidence. *See* Dowdell, 930 F.Supp. at 541. Thus, any statements made or alluded to in newspaper articles ordinarily cannot be considered as evidence for summary judgment purposes. *See* Anchee, 197 F.Supp.2d at 730 n. 5 (citing McClure v. Mexia Indep. Sch. Dist., 750 F.2d 396, 401 (5th Cir.1985); Dallas County, 286 F.2d at 392). Accordingly, unless an exception to the prohibition against hearsay set forth in Rule 802 applies, the newspaper articles may not be considered as evidence in order to defeat summary judgment. *See* Fed. R. Evid . 802.

**\*5** An additional hearsay problem exists with the *Beaumont Journal* articles dated August 9, 1962, and August 14, 1962. While the articles from the *Beaumont Enterprise* refer to the vaccine being acquired in the past tense, the *Beaumont Journal* articles refer exclusively to events that will occur in the future. Nevertheless, this level of hearsay may also be excused by application of an appropriate hearsay exception. *See* Fed.R.Evid. 805.

a. *The Ancient Documents Hearsay Exception*

The Hicks assert that the ancient documents exception should be applied to render the newspaper articles admissible. This exception provides that "[s]tatements in a document in existence twenty years or more the authenticity of which is established" are admissible. Fed.R.Evid. 803(16). Under the Federal Rules of Evidence, newspaper articles are self-authenticating. *See* Fed.R.Evid. 902(6); Woolsey v. National Transp. Safety Bd., 993 F.2d 516, 520 (5th Cir.1993), *cert. denied,* 511 U.S. 1081, 114 S.Ct. 1829, 128 L.Ed.2d 459 (1994); Perez v. Alcoa Fujikura, Ltd., 969 F.Supp. 991, 998 (W.D.Tex.1997).

The dangers of hearsay relate to flaws in perception, memory, narration, and sincerity. *See* Park v. Huff, 506 F.2d

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



849, 865 (5th Cir.), *cert. denied,* 423 U.S. 824, 96 S.Ct. 38, 46 L.Ed.2d 40 (1975) (citing Morgan, *Hearsay Dangers & the Application of the Hearsay Concept,* 62 HARV. L.REV. 177, 218 (1948)); John W. Strong et al., McCormick on Evidence § 245 (5th ed.2003). An assertive statement found in an ancient document is more likely to be truthful because "age affords assurance that the writing antedates the present controversy," as such a document must have been written before the current motive to fabricate arose. *See United States v. Stelmokas,* No. 92-3440, 1995 WL 464264, at *6 (E.D.Pa. Aug.2, 1995), *aff'd,* 100 F.3d 302 (3d Cir.1996), *cert. denied,* 520 U.S. 1242, 117 S.Ct. 1847, 137 L.Ed.2d 1050 (1997); John W. Strong et al., McCormick on Evidence § 323 (5th ed.2003); Fed.R.Evid. 803(16) Notes of Advisory Committee on 1972 Proposed Rules. Moreover, the requirement that an ancient document be written protects against the danger of inaccurate narration. *See Stelmokas,* 1995 WL 464264, at *6; John W. Strong et al., McCormick on Evidence § 323 (5th ed.2003). Finally, an ancient document is more likely to be accurate than the memory of a person after the passing of a lengthy period of time. *See Dallas County,* 286 F.2d at 396-97; *Stemokas,* 1995 WL 464264, at *6; John W. Strong et al., McCormick on Evidence § 323 (5th ed.2003). Thus, if the author of the ancient document had personal knowledge of the substance underlying the relevant assertive statements, then Rule 803(16) clearly applies.

The crucial issue, however, is whether Rule 803(16) inoculates all assertive statements contained within an ancient document, including double hearsay, against application of the general prohibition against hearsay contained in Rule 802. The rationale of Rule 803(16) in permitting the admission of statements in ancient documents where the author is the declarant does not justify the admission of double hearsay merely because of its presence in an ancient document. The danger of faulty perception persists unabated because a narrator, such as a reporter, may not properly record the remarks of the speaker. *See Stelmokas,* 1995 WL 464264, at *6; Greg Kettles, *Ancient Documents & the Rule Against Multiple Hearsay,* 39 SANTA CLARA L.REV. 719, 735 (1999). More generally, the risk of deception or mistake is compounded with each additional layer of hearsay, as any error will inevitably be passed on regardless of the accuracy or sincerity of the author of the ancient document or prior relators. *See id.*

***6** Courts are divided as to the proper application of Rule 803(16) to ancient documents involving double hearsay. One position is that a separate hearsay exception must apply to each layer of hearsay contained within the ancient document to warrant admission of the specific statement into evidence. *See United States v. Bronislaw Hajda,* 135 F.3d 439, 444 (7th Cir.1998) (holding that "if the [ancient] document contains more than one level of hearsay, an appropriate exception must be found for each level") (citing Fed.R.Evid. 805); *Columbia First Bank, FSB v. United States,* 58 Fed. Cl. 333, 338 (Fed.Cl.2003) (noting that if Rule 803(16) were read so as to inoculate multiple levels of hearsay, "Rule 805 would be superfluous") (citing *Stelmokas,* 1995 WL 464264, at *5-6). Analogously, the Fifth Circuit requires that a separate hearsay exception be applicable to each level of hearsay in a business record to render the document admissible. *See United States v. Ismoila,* 100 F.3d 380, 392-93 (5th Cir.1996), *cert. denied,* 520 U.S.1219, 520 U.S. 1247 (1997) (explaining that double hearsay is admissible only when each layer is excused by a hearsay exception) (citing *United States v. Baker,* 693 F.2d 183, 188 (D.C.Cir.1982)).

Some courts have implied that multiple levels of otherwise inadmissible hearsay may be admitted under Rule 803(16). *See Murray v. Sevier,* 50 F.Supp. 1257, 1265 n. 6 (M.D.Ala.1999) (permitting statements made in an interview in a newspaper article to be used under Rule 803(16), *vacated on other grounds, Murray v. Scott,* 253 F.3d 1308 (11th Cir.2001); *Gonzales v. North Twp. of Lake County,* 800 F.Supp. 676, 681 (N.D.Ind.1992), *rev'd on other grounds,* 4 F.3d 1412 (7th Cir.1993) ("As the newspaper articles in Exhibit C are well more than twenty-years old, the statements contained within are admissible into evidence ....") (citing *Ammons v. Dade City,* 594 F.Supp. 1274, 1280 n. 8 (M.D.Fla.1984), *aff'd,* 783 F.2d 1982 (11th Cir.1986) (admitting newspaper articles to prove the existence of a street paving program in 1925 without inquiry into the double hearsay issue); *Bell v. Combined Registry Co.,* 397 F.Supp. 1241, 1246-47 (N.D.Ill.1975), *aff'd,* 536 F.2d 164, 166-67 (7th Cir.1976) (receiving into

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



evidence newspaper articles detailing the use of a poem to further good works and announcing the poet's death)); John W. Strong et al., McCormick on Evidence § 323 (5th ed. 2003) ("The more common tendency appears to be to admit newspaper articles over 20 years old without the proper inquiry.").

Better reasoned authority indicates that the ancient documents exception permits the introduction of statements only where the declarant is the author of the document. Even if a document qualifies as ancient under Rule 803(16), other hearsay exceptions must be used to render each individual layer of hearsay admissible. This interpretation best reconciles the underlying justifications of Rule 803(16) with the limitations of Rule 805. *See Columbia First Bank, FSB,* 58 Fed. Cl. at 338; *Stelmokas,* 1995 WL 464264, at *6. Rule 805 provides that "[h]earsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule...." Fed.R.Evid. 805. "[A]s long as there is no 'positive repugnancy' between two laws ... a court must give effect to both." *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (citing *Wood v. United States,* 16 Pet. 342, 363, 10 L.Ed. 987 (1842)). Rule 805 would be superfluous if the explicit hearsay exceptions excused double hearsay. Therefore, the canons of statutory interpretation compel this court to give effect to Rule 805 as well as Rule 803(16), rendering the newspaper articles inadmissible under the ancient documents exception to the hearsay rule.

b. *The Residual Hearsay Exception*

**\*7** In the alternative, the Hicks contend that the **newspaper articles** are **admissible** under the residual **hearsay** exception contained in Rule 807. Rule 807 provides:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by the admission of the statement into evidence.

Fed.R.Evid. 807. The residual hearsay exception was created to deal with situations such as the unique circumstances presented in *Dallas County. See* Fed.R.Evid. 803(24) Advisory Committee Notes on 1974 Enactment.

In that case, the Fifth Circuit, after weighing the trustworthiness and necessity of the document, upheld the admission in evidence of a newspaper article detailing a fire at the local courthouse, marking an early harbinger of the residual hearsay exception. *See Dallas County,* 286 F.2d at 395-97; Fed. R. Evid . 807. The court did not view any of the classic hearsay exceptions, including the ancient documents exception, as applicable, stating, "We do not characterize this newspaper as a 'business record,' nor as an 'ancient document,' nor as any other readily identifiable and happily tagged species of hearsay exception," but noting that " 'we would hardly think that a court ... would have to stand helpless in the face of a new situation.' " *Dallas County,* 286 F.2d at 394, 397-98 (quoting *Monarch Ins. Co. v. Spach,* 281 F.2d 401, 411 (5th Cir.1960)). The court did not rely on the existing ancient documents exception but instead applied "a liberal, flexible rule for the admissibility of evidence, unencumbered by common law archaisms." *Id.* at 395; *see* Fed.R.Evid. 803(24) Advisory Committee Notes on 1974 Enactment (describing *Dallas County* as an archetypal case for application of the residual hearsay exception).

Before admitting evidence under the residual hearsay exception, the court must find that the evidence satisfies the prerequisites of trustworthiness, notice, necessity, and materiality, and must also determine that the purposes of the rules and justice will be served by admission of the evidence. *See* Fed.R.Evid. 807; *Herdman v. Smith,* 707 F.2d 839, 841-42 (5th Cir.1983); John W. Strong et al., McCormick on Evidence, § 324 (5th ed.2003). "The residual hearsay exception is to be 'used only rarely, in truly exceptional cases." ' *United States v. Phillips,* 219 F.3d 404, 419 n. 23 (5th Cir.2000) (quoting *United States v. Thevis,* 665 F.2d 616, 629 (5th Cir.1982)). " 'The proponent of the statement bears a heavy burden to come forward with indicia of both trustworthiness and probative force." ' *Id.* (quoting *United States v. Washington,* 106 F.3d 983,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



1001-02 (D.C.Cir.), *cert. denied,* 522 U.S. 984, 118 S.Ct. 446, 139 L.Ed.2d 382 (1997)). "In order to find a statement trustworthy, a court must find that the declarant of the statement was 'particularly likely to be telling the truth when the statement was made." ' *Id.* (quoting Washington, 106 F.3d at 1001-02). "There is no procedural canon against the exercise of common sense in deciding the admissibility of hearsay evidence." Dallas County, 286 F.2d at 397. In determining whether to apply the residual hearsay exception, a court should keep in mind that the exception was developed to provide flexibility in " 'new and unanticipated situations," ' " 'to preserve the integrity of the specifically enumerated exceptions," ' and to " 'facilitate ... truth ascertainment and fair adjudication of controversies." ' United States v. Sposito, 106 F.3d 1042, 1048 (5th Cir.1997) (quoting 11 Moore's Federal Practice § 803(24)[7] (2d ed. 1994 & Supp.1996-1997)).

(1). *Trustworthiness*

**\*8** The statements contained in the four newspaper articles offered by the Hicks evince particularized guarantees of trustworthiness. First, as in *Dallas County,* the statements in question were made long before any motive to fabricate arose. It is completely implausible that those who provided the information contained in the articles could have anticipated the current controversy more than forty years ago or that their statements would be proffered as evidence in a court case. *See* Dallas County, 286 F.2d at 397 (citing 5 WIGMORE ON EVIDENCE 1422 (3d ed.1940)); Fed.R.Evid. 803(16) Notes of Advisory Committee on 1972 Proposed Rules (justifying the ancient documents exception on the grounds that the such hearsay is trustworthy because it predates any present controversy).

Second, any other drug company that was actually supplying the vaccine would have possessed a motive to correct inaccurate public statements on this issue, given that Project XP was a high-profile, public health campaign designed to eradicate a devastating illness. Any manufacturer that supplied the vaccine would surely have cultivated the good will of the surrounding community. Had Pfizer not manufactured the vaccine, it is likely that the true manufacturer, or someone connected with Project XP, would have stepped forward to correct the misinformation contained in the newspaper articles. Indeed, the Hicks' initial presentation of certain newspaper articles indicating that Wyeth was to supply the OPV was successfully repudiated by subsequent articles explaining that Pfizer had replaced Wyeth as the provider of the vaccine. The relevant statements were printed in newspapers of general circulation, so it is unlikely that inaccuracies would have gone unnoticed in the community. *See* Dallas County, 286 F.2d at 397 (arguing that an indication of trustworthiness exists where inaccuracies are likely to be identified by the community).

Third, the fact that four articles, by a minimum of two different authors, in two separate newspapers, without any relation to the present controversy, all identified Pfizer as the manufacturer of the doses distributed by Project XP after August 9, 1962, corroborates their credibility. The risk of mistake or dishonesty is reduced given the multiple publications by different sources. *See* United States v. Bell, 367 F.3d 452, 467 n. 6 (5th Cir.2004) ("[I]f the Confrontation Clause is not implicated and the concern is only whether the statement is within the hearsay exception, the district court can properly consider any corroborating circumstances ....") (citing United States v. Dean, 59 F.3d 1479, 1493 (5th Cir.1995), *cert. denied,* 516 U.S. 1082, 116 S.Ct. 794, 133 L.Ed.2d 742 (1996)); *see also* Larez v. Los Angeles, 946 F.2d 630, 643-44 (9th Cir.1991) (holding that where three different, independent newspaper articles corroborated a fact, sufficient guarantees of trustworthiness existed to satisfy the requirements of the residual hearsay exception). Significantly, both articles that initially identified Pfizer as the manufacturer of the relevant doses of OPV were published simultaneously on August 9, 1962, in two different newspapers. This strongly suggests that the information was released from a common source at the same time, and that both newspapers accurately reported the statement, thus providing equivalent assurances of trustworthiness as when the ancient documents exception of Rule 803(16) is properly applied.

**\*9** Fourth, the newspaper articles were written and published nearly contemporaneously with the events in question. *See* United States v. Sinclair, 74 F.3d 753, 758 (7th Cir.1996) ("[I]mmediacy of knowledge is one of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Slip Copy                                                                                                                         Page 8
Slip Copy, 2005 WL 2415965 (E.D.Tex.)
**(Cite as: 2005 WL 2415965 (E.D.Tex.))**

key circumstances indicating trustworthiness."). Indeed, any "fresh" testimony now would be inferior evidence, tainted by the passing of more than forty years. *See Dallas County, 286 F.2d at 397*. In contrast, the newspaper accounts were written at a time when the events were unfolding, and their contents remain as timely and trustworthy as they were on the respective dates the articles were written.

Fifth, the issue of product identification presented in this case is a "binary event": either Pfizer supplied the doses, or it did not. *Jacobson v. Deutsche Bank, A.G., 206 F.Supp.2d 590, 595-96 (S.D.N.Y.2002)*, *aff'd*, *59 F. App'x 430 (2d Cir.2003)* (analyzing the reasoning behind the Fifth Circuit's decision in *Dallas County* ). There are no more difficult, qualitative issues that would involve complicated issues of perception and description. The dangers of hearsay, as well as the value of cross-examination, are minimized when the fact sought to be proved is binary; "even if the author's perception, memory, or narration ... [is] less than perfect," a binary event is still likely to be reported accurately. *Id. at 595.*

(2). *Notice*

Pfizer has been made aware of the Hicks' intention to present these newspaper articles as evidence sufficiently in advance of trial so as to obviate the dangers of prejudice and unfair surprise. While the Hicks have not complied explicitly with the requirement of Rule 807 that a party provide the opposing party, "sufficiently in advance of the trial or hearing," the "name and address of the declarant," such notice is virtually impossible in this case, given that forty-three years have passed since the articles in question were published. Fed.R.Evid. 807. Additionally, the August 27, 1962, article neither contains a byline nor identifies a particular person as the source of the information. *See Third and Final Phase of Polio Eradication Drive Slated Sunday in County,* Beaumont Enterprise, Nov. 27, 1962.

Courts have disagreed about whether the notice provision in Rule 807 should be strictly construed when circumstances render technical compliance impossible. Generally, the notice requirement "must be interpreted flexibly." *United States v. Evans, 572 F.2d 455, 489 (5th Cir.)*, *cert. denied*, *439 U.S. 870 (1978)* (holding that the notice requirement is satisfied so long as the opposing party has "sufficient opportunity to determine its trustworthiness"). The Fifth Circuit has upheld the admission of evidence under the residual hearsay exception despite the impossibility of the offering party's providing the name and address of the hearsay declarant. *See Universal Elec. Co. v. United States Fid. & Guar. Co., 792 F.2d 1310, 1314- 15 (5th Cir.)*, *cert. denied*, *479 U.S. 987, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986)* (holding that the trial court did not abuse its discretion in admitting the hearsay testimony of a deceased person under the residual hearsay exception); *Dartez v. Fibreboard Corp., 765 F.2d 456, 460-63 (5th Cir.1985)* (finding that the notice requirement of the residual hearsay exception was satisfied in case involving deceased witness); *see also United States v. West, 574 F.2d 1131, 1134-36 (4th Cir.1978)* (holding that the district court did not abuse its discretion where deceased witness's grand jury testimony was admitted as evidence under the residual hearsay exception); *United States v. Medico, 557 F.2d 309, 313-16 (2d Cir.)*, *cert. denied*, *434 U.S. 986, 98 S.Ct. 614, 54 L.Ed.2d 480 (1977)* (upholding the district court's admission of evidence under the residual hearsay exception where declarants were unidentified bystanders). Other courts, however, have determined that strict, technical compliance with the notice provision's name and address requirement is essential for the admission of evidence under Rule 807. *See United States v. Mandel, 591 F.2d 1347, 1368-69 (4th Cir.)*, *rev'd en banc*, *602 F.2d 653 (4th Cir.1979)* (holding that the declarants' unidentified status precluded compliance with the notice provision and consequently rendered the statements inadmissible under Rule 807); *Azko Coatings, Inc. v. Aigner Corp., 881 F.Supp. 1202, 1212 (N.D.Ind.1994)*, *aff'd in part, vacated in part,* *197 F.3d 302 (7th Cir.1999)* (holding that failure to provide the names and addresses of the hearsay declarants rendered statements inadmissible under Rule 807).

**\*10** Under these circumstances, exacting compliance with the technical requirements of Rule 807 is not mandated, where conformity is impossible and the purpose of the rule has been satisfied. Consistent with Fifth Circuit case law, the Hicks' inability to provide the names and addresses of the declarants in the newspaper articles is not fatal, in view of their substantial compliance with the notice provisions of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Rule 807. *See Universal Elec. Co.,* 792 F.2d at 1314-15; *Dartez,* 765 F.2d at 460-63.

(3). *Necessity and Materiality*

The articles are both necessary and material to the Hicks' case. *See* Fed.R.Evid. 807; *Herdman,* 707 F.2d at 841-42. In the absence of these newspaper articles, summary judgment on the issue of product identification would be proper. *See Spring Branch Indep. Sch. Dist.,* 2004 WL 1404036, at * 4. These articles represent the only link between Pfizer and the doses of OPV in question. Pfizer apparently destroyed, albeit as part of a routine document destruction policy, any documents that might have shed light on the dispute. The Hicks, after seeking discovery from Pfizer, deposing members of Karen's family, and directing inquiries to the Medical Society, have been unable to locate any living person with personal knowledge of or documentation related to the identity of the provider of the relevant doses of OPV. The newspaper articles are "more probative on the point for which [they are] offered than any other evidence" because there is absolutely no other available evidence, despite the plaintiffs' engaging in reasonable efforts to procure additional evidence. Fed.R.Evid. 807; *see United States v. Mathis,* 559 F.2d 294, 299 (5th Cir.1977) (holding that the residual exception is unavailable where live testimony on the same matter could be procured with very little effort). Likewise, the newspaper articles are material, as they are probative with regard to the issue of causation. *See Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir.2001); *Gaulding,* 772 S.W.2d at 68; *see also In re Fibreboard Corp.,* 893 F.2d at 711.

(4). *Purposes of the Rules*

Finally, admitting these newspaper articles serves "the general purposes of [the Federal Rules of Evidence] and the interests of justice." Fed.R.Evid. 807. The rules are to be applied so as to ensure "that the truth may be ascertained and proceedings justly determined." Fed.R.Evid. 102. The court, after examining the record and applying the applicable tests, is convinced that justice requires the admission of the aforementioned newspaper articles under Rule 807, despite the hearsay concerns, because they strongly suggest that Pfizer manufactured the OPV in question. It is best left to a jury to hear the evidence and determine whether Karen ingested Pfizer's product. Thus, the four newspaper articles at issue will be considered, thereby defeating summary judgment.

III. *Conclusion*

The four newspaper articles, admitted under Rule 807, are sufficient to raise a material issue of fact, precluding the entry of summary judgment in favor of Pfizer. The articles indicate that Pfizer supplied the OPV administered in Project XP. Karen's testimony, if believed by the jury, would establish that she ingested OPV provided by Project XP. Together, such evidence raises a genuine issue of material of fact on the issue of the identity of the manufacturer of the OPV allegedly ingested by Karen. Accordingly, Defendant Pfizer's Motion for Summary Judgment is denied.

Slip Copy, 2005 WL 2415965 (E.D.Tex.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.