**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**No. 90-cv-181-JLK**
_____

**MERILYN COOK, et al.,**

    **Plaintiffs,**

        **v.**

**ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,**

    **Defendants.**
_____

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION OF 11/14/05 TO EXCLUDE TESTIMONY BY DR. WING**
_____

Plaintiffs respectfully submit this memorandum in opposition to "Defendants' Motion to Exclude Testimony by Dr. Wing Regarding: (1) Allegedly Improper Classification by the DOE/AEC; and (2) Alleged Improper Efforts by the DOE/AEC to Influence the Scientific Process" (filed Nov. 14, 2005) [Ct. Rec. 1651].

### I.  THE MOTION VIOLATES THE MOTIONS PRACTICE ORDER

This is the second motion to be filed seeking preclusion of Dr. Wing's testimony within as many business days. Plaintiffs have already responded [Ct. Rec. 1643] to the first motion [Ct. Rec. 1632] and incorporate that response by reference here. This second motion, like defendants' first, is violative of the Court's Order Limiting Motions Practice During Trial (the "Motions Practice Order") [Ct. Rec. 1626].

The violations are multiple. First, defendants did not file the motion four business days before the witness is scheduled to take the stand. *See* Motions Practice Order, at 3. The instant motion was filed electronically at 9:30 a.m. on Monday, November 15, 2005. Dr. Wing is expected to take the stand on Wednesday, November 17, 2005. The Court and plaintiffs were thus afforded only about two calendar days' notice, after defendants had devoted *at least* three days to preparing their motion, and presumably more. Meanwhile, plaintiffs were afforded only 23 hours to satisfy the requirement that responses be filed by 8:30 a.m. on the day preceding the testimony. *See id.*

The Motions Practice Order permits relaxation of the four-business-day rule on a showing of "good cause." *Id.* The phrase "good cause" is glossed in a footnote in the Order, *id.* at 3 n.1., where is it explained that a want of diligence does not suffice. By way of demonstrating "good cause" for the untimeliness of their submission, defendants offer the following footnoted explanations:

- Defendants did file another, different motion involving Dr. Wing [Ct. Rec. 1632] last week, the day after the Motions Practice Order was entered. (That motion too violated the Motions Practice Order, as plaintiffs have already explained in their response to it.)

- The instant motion was not filed earlier because "it was not ready."

- The instant motion was not ready "in part because defendants wished to scrutinize the transcript of the Court's classification rulings made at the end of the day Thursday."

*See* Motion, at 3 (unnumbered footnote). The "classification rulings" to which defendants refer presumably consist of the Court's remarks upon its rejection of plaintiffs' offer of proof for Mr. Hoffman. Those remarks, however, occupy only about three transcript pages and should not have

required four days to review.  *See* Tr. 11/10/05, at 5005-06, 5050-51, 5054.[1]

Defendants' motion also violates the Motions Practice Order in failing to offer reasons why any argument it raises could not have been advanced earlier.  *See* Motions Practice Order, at 4.  The closest defendants come to satisfying this requirement is to announce defendants' apparent view that the Court's pretrial deadlines for motions involving expert testimony *never even applied* to arguments based on Fed. R. Evid. 403 or 703 (as some but not all of the arguments in the instant motion purport to be).  *See* Motion, at 1 n.1.  Plaintiffs do not believe, however, that the Court intended the applicability of its pretrial deadlines to depend on how the movants characterized the technical legal bases for their motions in limine or their challenges to expert testimony.  Nor was that defendants' apparent understanding at the time.  Defendants' *Daubert* motions freely raised arguments based on Rules 403 and 703.[2]  So did their motions in limine, which cited Rule 403 on almost a hundred separate occasions.[3]

---

[1]  Moreover, even under defendants' expansive interpretation of the Court's remarks concerning Mr. Hoffman, those remarks would bear, at most, on only one of the arguments raised in defendants' motion: i.e., that Dr. Wing should not be permitted to testify about how DOE's classification regime affected the progress of medico-scientific research.  *See* Motion, at 2-4.  They have little or no bearing on (and are not even cited in support of) defendants' other argument: i.e., that Dr. Wing should be barred more broadly from testifying *at all* about the role of the DOE in exerting pressure on scientific investigators.  *See* Motion, at 4-7.

[2] *See, e.g.*, Defendants' Amended Brief in Support of Their Motion to Exclude Expert Witness Testimony Relating to Damages, at 53-54 (filed June 21, 2005) (Mr. Hunsperger's report should be excluded in its entirety under Rule 703) [Ct. Rec. 1379]; Defendants' Amended Motion to Exclude Expert Witness Testimony Relating to Risk, at 2, 25 (filed June 21, 2005) (Dr. Goble's testimony should be excluded on grounds including Rule 403) [Ct. Rec. 1380].

[3]  The actual total is 98.  *See* Defendants' Motion in Limine No. 1 (filed June 16, 2005) (eleven citations of Rule 403) [Ct. Rec. 1354]; No. 2 (eight citations) [Ct. Rec. 1355];

(continued...)

Finally, defendants' motion violates the Motions Practice Order by failing to note that certain of defendants' arguments *were* in fact raised previously. *See, e.g.*, Defendants' [First] Motion to Exclude the Testimony of Dr. Steven Wing, at 4 (filed Sept. 16, 2005) (DOE's conduct has nothing to do with Dow or Rockwell) [Ct. Rec. 1444]. Defendants cite no intervening change in the law, new facts, or manifest error that would warrant revisiting those issues. *See* Motions Practice Order, at 4.

The Court would be within its sound discretion to deny this motion based on these violations alone.

## II.  THE MOTION IS WITHOUT SUBSTANTIVE MERIT

Defendants raise two principal substantive points: (a) that Dr. Wing should not be permitted to testify about how DOE's classification practices affected research on radiation health effects; and (b) that he should not be permitted to testify to DOE's "improper efforts . . . to influence the scientific process." *See* Motion, at 4. We address each point in turn.

### A.  Classification

Defendants raise four arguments in support of their contention that Dr. Wing should not testify about how DOE's classification practices have affected research on radiation health effects. None of them has merit.

---

[3](...continued)
   No. 3 (sixteen) [Ct. Rec. 1356]; No. 4 (ten) [Ct. Rec. 1357]; No. 5 (five) [Ct. Rec. 1358];
   No. 6 (six) [Ct. Rec. 1359]; No. 7 (two) [Ct. Rec. 1360]; No. 8 (two) [Ct. Rec. 1361]; No.
   9 (two) [Ct. Rec. 1362]; No. 10 (two) [Ct. Rec. 1363]; No. 11 (two) [Ct. Rec. 1364]; No.
   12 (two) [Ct. Rec. 1365]; No. 13 (two) [Ct. Rec. 1366]; No. 14 (nine) [Ct. Rec. 1367];
   No. 15 (eleven) [Ct. Rec. 1368]; No. 16 (eight) [Ct. Rec. 1369].

First, defendants invoke the Court's remarks on Mr. Hoffman's testimony. But unlike Mr. Hoffman's proffered testimony, Dr. Wing's report does not involve whether "some information that might be admissible for plaintiffs . . . remains classified." *See* Motion, at 3 (quoting Tr. 11/10/05 at 5006). Nor will his testimony embroil the Court (or the jury) in any judicial review of DOE classification decisions, however loosely the concept of "judicial review" might be construed. Rather, Dr. Wing's testimony involves the ways in which a policy of suppressing or discouraging free investigation (from good motives or ill) can impede the general progress of scientific inquiry.

As a practicing scientist and epidemiologist, Dr. Wing is amply qualified to opine on that topic (an issue on which plaintiffs would be in a better position to establish a complete record, given more than 23 hours' notice). His views on the subject do not amount to personal pontification or *ipse dixit*. They draw on such reputable and reliable sources as the Presidential Advisory Committee on Human Radiation Experiments ("ACHRE"), and on materials on which ACHRE, in turn, relied. *See* Wing Report at 28-30. ACHRE comprised fourteen members: one drawn from the general public, and thirteen experts in bioethics, radiation oncology and biology, nuclear medicine, epidemiology and biostatistics, public health, history of science and medicine, and law. *See* "ACHRE Report" (www.eh.doe.gov/ohre/roadmap/achre/summary.html) (visited Nov. 15, 2005). That those public health experts relied on the same sorts of information as Dr. Wing is, by itself, an indicium that practitioners in Dr. Wing's field and related disciplines consider such information to be relevant and informative.

Second, defendants say DOE's conduct has "nothing to do" with Rockwell or Dow. *See* Motion, at 3. It is true that DOE's conduct is not Dow's conduct or Rockwell's – a point that the jury can readily be expected to absorb, and which nothing in Dr. Wing's testimony contradicts. But

*Plaintiffs' Opposition to Defendants' 11/14/05 Motion to Exclude Testimony by Dr. Wing – Page 5*

the larger point, that DOE's classification practices have influenced the progress of radiation health research and hampered the ability of other investigators to test the reliability of DOE-sponsored findings, is very germane to estimates of risks incurred by members of the class exposed to plutonium (and to the uncertainties surrounding those estimates). Defendants, it should be remembered, are keen to tout DOE-established radiation exposure standards in front of the jury. Plaintiffs are entitled to present evidence through which the jury may evaluate the scientific *bona fides* of the standards, and of the standard-setting body.

Third, defendants say that evidence in this area would be inflammatory and extremely prejudicial. Defendants, however, do not explain why this is so. Defendants have been avid, throughout this trial and before, to extol the merits of good science. Plaintiffs are entitled to offer evidence on whether the science is good. Measures of good science, under *Daubert*, include testability and peer review. *See generally Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993). If DOE has hampered access to information on the health effects of radiation exposure, that conduct bears on the application of those measures. Once again, Dr. Wing does not rely on personal authority for such a proposition. He cites published literature to substantiate the deleterious impact of DOE's practices on "free scientific discussion." *See* Wing Report, at 29 (quoting B.J. Bak, F. Friedman, & V. Weisskopf, *Security regulations in the field of nuclear research*, Bulletin of the Atomic Scientists 1947; 3:321-324 & 344).

Fourth, defendants say Dr. Wing is not an expert on classification. But Dr. Wing need not be an expert on the technical details of classification lore to opine on the consequences of classification for the integrity of scientific research. To repeat, Dr. Wing does not simply rely on

his own personal authority in this area. He cites sources including the medico-scientific experts from the presidential ACHRE panel.

In sum, defendants offer no valid reasons for excluding Dr. Wing's testimony in this area. Certainly they offer none that could not have been advanced sooner.

### B.  DOE's Improper Influence on the Scientific Process

Defendants offer five grounds for excluding testimony concerning pressure exerted by DOE on scientific investigators. We respond to each in turn.

First, defendants again argue that any improper efforts to influence researchers are attributable to DOE, not to Dow or Rockwell, and are therefore irrelevant. What plaintiffs have already said in connection with this argument in the context of classification applies with equal force here.

Second, defendants say that because Dow and Rockwell are not themselves accused of having exerted pressure on researchers, testimony on DOE's efforts would be prejudicial. Plaintiffs' earlier response to a similar argument again applies here. It is difficult to see how Dow or Rockwell could be prejudiced if a different entity is charged with hindering research. The research is impaired no matter what the identity of the hindering party.

Third, defendants say that the bases for Dr. Wing's opinions on this subject are inadmissible under Fed. R. Evid. 703. But under Rule 703, that decision rests in the Court's sound discretion. In plaintiffs' view, the jury would be ill-equipped to evaluate the validity of Dr. Wing's opinions on this subject unless supplied with the bases therefor.

Fourth, defendants complain that Dr. Wing's testimony on this subject rests on hearsay. This objection fails because under Rule 703, which defendants themselves invoke, expert testimony may legitimately rely on hearsay.

Finally, defendants complain that if Dr. Wing is permitted to testify on this subject, defendants would be forced to locate and call the individuals who are asserted to have exerted improper pressure on various researchers. This argument proves too much. A similar objection could be raised in connection with any hearsay source on which any expert might rely. Defendants, in any event, have had almost a decade, since service of Dr. Wing's report, to pursue the course they describe. Having neglected to pursue it, or even to raise the issue until the very eve of Dr. Wing's testimony, they are themselves the architects of any prejudice they may suffer. In plaintiffs' estimation, any such prejudice will range from minimal to nonexistent.

## III.  CONCLUSION

For the reasons given above, plaintiffs respectfully request that defendants' untimely third motion to exclude testimony from Dr. Wing be denied.

Dated: November 15, 2005                 s/ Peter Nordberg
                                                          Merrill G. Davidoff
                                                          Peter Nordberg
                                                          Berger & Montague, P.C.
                                                          1622 Locust Street
                                                          Philadelphia, PA 19103
                                                          (215) 875-3000

                                                          Attorneys for Plaintiffs
                                                          And the Class