**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

No. 90-cv-181-JLK
_____

**MERILYN COOK, et al.,**

    **Plaintiffs,**

        **v.**

**ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,**

    **Defendants.**
_____

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
"DEFENDANTS' MOTION TO EXCLUDE EVIDENCE OF PLAINTIFFS'
CONSUMER PRICE INDEX ADJUSTMENT FOR PROPERTY DAMAGES"**
_____

Plaintiffs respectfully submit this memorandum in opposition to "Defendants' Motion to Exclude Evidence of Plaintiffs' Consumer Price Index Adjustment for Property Damages" (filed Oct. 25, 2005) [Ct. Rec. 1541].

## I.  BACKGROUND

In their 1996 expert reports, both Dr. Radke and Mr. Hunsperger presented damage figures that incorporated adjustments to constant dollars. Under the heading "Correcting for Inflation," Dr. Radke's report stated:

> The yearly Consumer Price Indices (CPI's) of the Denver-Boulder Metropolitan Area were used to normalize the sale price figures in the property sale records. This adjusted the property sale records for inflation and resulted in the dependent variable (*LNPRICE*) being recorded in constant 1993 dollars.

*See* John Radke, "Measuring the Effects of Proximity to the Rocky Flats Nuclear Weapons Plant on Property Values," at 24 (1996).  Similarly, Mr. Hunsperger's report presented damage figures "expressed in 1995 dollars."  *See* Wayne L. Hunsperger, "Rocky Flats Nuclear Weapons Plant Property Impact Study," at 259 (1996).

Defendants have long been aware of these constant-dollar adjustments.  *See, e.g.*, Defendants' Amended Brief in Support of Their Motion to Exclude Expert Testimony Relating to Damages, at 53 (filed June 21, 2005) ("All data was adjusted by Dr. Radke to 1993 dollars.") [Ct. Rec. 1379].  Yet in all of defendants' compendious *Daubert* submissions, no challenge was ever raised to the relevance or "fit" of damage estimates expressed in then-current dollars under the legally governing damage measure, nor to the methodological validity of such adjustments, whether made via CPI figures or otherwise.

On September 26, 2005, plaintiffs transmitted to defendants the United States Bureau of Labor Statistics CPI figures for the Denver-Boulder-Greeley area for the years 1990 through mid-2005.  Plaintiffs propose to present those figures to the jury through Mr. Hunsperger's testimony, along with calculations applying them to plaintiffs' existing damages estimates and data, so that plaintiffs' decade-old damage estimates can be adjusted to current dollars.  Plaintiffs' transmittal also included illustrative calculations applying the CPI figures, by way of example, to liquidated damages (losses realized in consummated property sales) as reflected in Dr. Radke's data for residential properties in the class area for the years 1990-95.  *See* Ex. A.

On October 25, 2005, defendants filed the instant motion.  Defendants raise three arguments in the motion: (1) that plaintiffs' CPI adjustment to 2005 dollars for trial is untimely; (2) that adjusting damages to current value is legally impermissible; and (3) that if an adjustment is

*Plaintiffs' Opposition to Defendants' Motion re CPI Adjustment – Page 2*

permissible, the CPI is the wrong measure. The Court has indicated that it does not require a response from plaintiffs on the first point. *See* Tr. 10/25/05 at 2474. This memorandum addresses defendants' second and third arguments.

## II.  ARGUMENT

### A.  The Legal Permissibility of Evidence Adjusting Damages to Current Value

In the solitary page of briefing that defendants devote to this issue, defendants chastise plaintiffs for having cited no authority, "from Colorado or elsewhere," in support of adjusting damages to current value. *See* Defendants' Motion at 4. It is true, of course, that plaintiffs have cited no such authority to date. It was defendants who raised the issue by filing their motion. This memorandum therefore represents plaintiffs' first opportunity to present legal authorities for the Court's consideration.

Plaintiffs will begin with authority "from Colorado." Defendants cite no decisions from Colorado, and plaintiffs have found none directly on point.[1] However, the Colorado Supreme Court has stated broad governing principles that do supply considerable guidance. In *Board of County Comm'rs v. Slovek*, 723 P.2d 1309 (Colo. 1986), landowners sued Weld County after the county negligently allowed a pond on county property to overflow, causing flooding of the landowners' neighboring property. The trial court held that the plaintiffs' maximum permissible recovery was the diminution in property value attributable to damage caused by the flooding. The landowners

---

[1]  The jury's consideration of inflation in fashioning a damage award is a distinct issue from prejudgment interest, which would be awarded by the Court and not the jury under Colorado law. *See* C.R.S. § 13-21-101; *see also Miller v. Carnation Co.*, 39 Colo. App. 1, 564 P.2d 127 (1977). Plaintiffs will brief the issue of prejudgment interest at the appropriate time, should the occasion arise.

*Plaintiffs' Opposition to Defendants' Motion re CPI Adjustment – Page 3*

appealed, contending they were entitled to seek a larger compensatory damage award, based on the costs of repairing the property and to compensate them for their loss of use and enjoyment.

The Colorado Supreme Court held for plaintiffs and remanded for a new trial on damages. In doing so, the court emphasized that "[t]he measure of damages for injury to real property 'is not invariable.'" *Id.* at 1314 (quoting *Colorado Bridge & Construction Co. v. Preuit*, 75 Colo. 107, 109, 224 P. 222, 223 (1924)). The court also quoted with approval the remarks of a commentator endorsing a modern and flexible approach:

> It seems obvious that no one measure of damages is likely to be appropriate to compensate for injury to all these interests in realty. Some cases, older ones in particular, often failed to recognize that more than one kind of interest and hence more than one kind of damage might be involved in real property cases. Such cases generally assumed that a single, universal measure of damages for realty had to be devised, even if it failed to compensate adequately in many cases. This older tendency to seek a single rule has now largely given way in practice to a more flexible approach. Courts today do not tend to treat all interests in realty alike. They may, in an effort to afford full compensation, even treat two cases of physical damage quite differently, approaching a case of damage to structures quite differently from a case of damage to shrubbery. Sometimes this flexible approach is practiced sub silentio; but there is very considerable explicit recognition today that no one rule is sufficient or desirable as a measure of damages in realty-damage cases, and probably most courts now avoid the older inflexible approach.

D. Dobbs, *Handbook on the Law of Remedies* § 5.1, at 311 (1973) (footnotes omitted) (quoted in *Slovek*, 723 P.2d at 1316 n.6).

"In summary," the *Slovek* court said, "we conclude that the selection of the proper measure of damages in tort for injury to real property requires the exercise of informed discretion by the trial court and that no single measure of damages and no arbitrary limit on the amount permissible can be applied to limit the exercise of that discretion." *Slovek*, 723 P.2d at 1317. The *Slovek* opinion calls for trial courts to exercise their discretion in such as way as "to achieve the *cardinal objective*

*of making the plaintiff whole*." *Id*. at 1317 (emphasis added); *see also, e.g.*, *Westfield Dev. Co. v. Rifle Inv. Assoc.*, 786 P.2d 1112, 1120 (Colo. 1990).

The flexible principles extolled in *Slovek* are at loggerheads with defendants' contention that the maximum amount of damages recoverable is fixed by diminution in value as measured in nominal dollars as of the time of loss. *Slovek's* emphasis on making plaintiffs whole also harmonizes with decisions from "elsewhere" recognizing the fairness, in appropriate cases, of adjusting the dollar value of a plaintiffs' damages, as measured at the time of loss, to reflect inflation between the time of loss and judgment. *See, e.g.*, *Leslie Salt Co. v. St. Paul Mercury Ins. Co.*, 637 F.2d 657, 661 (9th Cir. 1981); *Law v. NCAA*, 185 F.R.D. 324, 344-49 (D. Kan. 1999) (citing cases).

The circumstances of this case, in which over fifteen years have passed between the filing of suit and the time of trial, are particularly suited to such an adjustment. Plaintiffs are not asking that the jury be *instructed to include* a CPI adjustment as part of its award. Plaintiffs are asking only that the jury be *permitted to hear evidence* on inflation for its own discretionary consideration in fashioning a damage award. That modest request is legitimate. *See Restatement (Second) of Torts* § 913(2) (even where prejudgment interest is not permitted, "the time that has elapsed between the harm and the trial can be considered in determining the amount of damages"); *id.* comment c ("when [a] loss has been suffered a considerable period before the trial, it is proper for the trier of fact in assessing damages to consider the period that has elapsed before compensation has been made").

The authorities cited by defendants are not to the contrary. *Bennett v. Allstate Ins. Co.*, 889 F.2d 776 (8th Cir. 1989), was a homeowner's insurance case arising under Arkansas law, and no question of a CPI or inflation adjustment was presented or decided. Nor did that issue arise in *Robert E. Canty Bldg. Contrs., Inc. v. Garrett Mach. & Constr., Inc.*, 270 Ga. App. 871, 608 S.E.2d

280 (2004), *cert. denied*, 2005 Ga. LEXIS 320 (Ga. Apr. 26, 2005). Indeed, that decision, rendered by an intermediate appellate court in Georgia, did not even involve a diminution-in-value damage measure. It was an action for breach of contract to construct, and damages were assessed based on the cost of correcting the defective workmanship, because that measure of damages would better conduce to making the plaintiff whole. *See id*. at 873, 608 S.E.2d at 282.

Similarly, in *Saden v. Kirby*, 759 So. 2d 921 (La. App. 4th Cir. 2000), the court expressly refused to reach the question whether a CPI adjustment was appropriate for damages for a decrease in real estate values. *See id.* at 932. And in *CMSH Co. v. Antelope Development, Inc.*, 223 Cal. App. 3d 174, 272 Cal. Rptr. 605 (3d Dist. 1990), the court explicitly distinguished the damage principles applicable in that lis pendens proceeding from "'the context of tort cases wherein the purposes and calculation of damages differ from those in contract disputes.'" *Id.* at 183, 272 Cal. Rptr. at 611 (quoting *C. Norman Peterson Co. v. Container Corp. of America*, 172 Cal. App.3d 628, 650, 218 Cal. Rptr. 592 (1st Dist. 1985)).

In sum, despite having touted their reliance on "well-established property law," *see* Motion at 2, defendants have cited *no authority*, "from Colorado or elsewhere," holding that the trier of fact may not consider an inflation adjustment when awarding damages in a tort claim for diminution in value of real property. The Colorado Supreme Court's decision in *Slovek* meanwhile suggests that the courts of Colorado would acknowledge the trial court's discretion to allow for such an adjustment, and *Restatement* § 913(2) supports the presentation of such information to the trier of fact – as do authorities from other jurisdictions, such as the Ninth Circuit's decision in *Leslie Salt Co. See* 637 F.2d at 661. Plaintiffs should be allowed to present such evidence here, especially given the circumstances of this case and its fifteen-year pendency.

### **B.  Use of the CPI in Adjusting Damages to Current Value**

Defendants also argue that if a damage adjustment is permissible, use of the CPI is not. Defendants cite no legal authority in this portion of their argument.  They simply state the opinions of counsel, based primarily on (irrelevant) snatches of testimony that defendants believe to support their (irrelevant and factually contested) position that no underlying damages exist to adjust in the first place.

Defendants do raise one argument that is, at least, germane.  Real estate prices are not included, they say, in the bundle of goods and services that are used to compute the CPI.  The CPI therefore should not be used, defendants say, to adjust plaintiffs' damages.

There are two responses to this argument.

First, the noninclusion of real estate prices in the underlying CPI calculations would be an argument, at most, that use of the CPI was inappropriate in *estimating real estate values*.  It would be an argument, that is, against the methodology of an expert who appraised the 2005 value of a house at $127,900 by reasoning that its value in 1995 was $100,000 and that the CPI for the intervening years rose by 27.9%.

Whatever might be thought about the validity of such an argument, it is not an argument that defendants raised in their *Daubert* submissions.  More to the point, it has no bearing on the issue under discussion.  Plaintiffs are not proposing to use the CPI to measure the amount by which property values have appreciated since 1990 or 1995.  Plaintiffs seek to use the CPI to adjust to current value their *monetary damages*.  There is no requirement, in a section 930 action, that successful plaintiffs reinvest their damage awards in real estate.  Had those damages been recovered sooner, plaintiffs would have been entitled to use the proceeds for any purpose, including the

purchase of goods and services from the bundle of items whose prices are reflected in the CPI. The CPI is therefore an appropriate tool to use in the adjustment.

Second, the CPI is actually a much more conservative measure than the one that defendants would apparently propose to substitute. For example, for the ten years from 1993 to 2003, the Denver-Boulder-Greeley CPI rose from 135.8 to 186.8 – a 37.6% increase. *See* Ex. A. One of defendants' experts, Dr. Wise, has prepared a *real estate sales price* index for the Denver metropolitan area covering the years from 1984 through 2003, setting the index at 100 for his base year of 1989. *See* Kenneth T. Wise, "Supplemental Report for the *Cook* Case" (Ex. 6) (Aug. 6, 2004). We attach Dr. Wise's chart depicting the appreciation in this index as Exhibit B to this memorandum. For the ten years from 1993 to 2003, Dr. Wise's real estate sales price index for the Denver metropolitan area rose from approximately 120 to approximately 260, for an increase of about 116%.

To put this another way, if a jury had found in 2003 that the injurious situation at Rocky Flats became complete and comparatively enduring as of 1993, then use of the CPI to translate plaintiffs' damages into 2003 dollars would have resulted in an upward adjustment of a little over one-third. Use of Dr. Wise's property value index, by contrast, would have more than doubled plaintiffs' award.

Dr. Wise's chart constitutes a party admission, and if there did exist any legal requirement that adjustment of plaintiffs' damages to current value must employ an index incorporating what defendants call "real-world property values," *see* Motion at 5, it would be tempting for plaintiffs to rely on Dr. Wise's computations. Unfortunately, plaintiffs know of no authority holding that real estate price indices are the measure of choice in bringing monetary damage awards to current value.

The U.S. Bureau of Labor Statistics Consumer Price Index, by contrast, is a standard measure of inflation, and is suitable for the purpose at hand.

### III.  CONCLUSION

For the reasons given above, plaintiffs respectfully request that defendants' motion be denied.


Dated: November 16, 2005            s/ Peter Nordberg
                                                           Merrill G. Davidoff
                                                           Peter Nordberg
                                                           Berger & Montague, P.C.
                                                           1622 Locust Street
                                                           Philadelphia, PA 19103
                                                           (215) 875-3000

                                                           Attorneys for Plaintiffs
                                                           And the Class