# Exhibit A

5068

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, et al.,

    Plaintiffs,

vs.

ROCKWELL INTERNATIONAL CORPORATION, and THE DOW CHEMICAL
COMPANY,

    Defendants.

_____

REPORTER'S TRANSCRIPT
Trial to Jury
Volume 37

_____

        Proceedings before the HONORABLE JOHN L. KANE, JR.,

Senior Judge, United States District Court for the District of

Colorado, commencing at 9:07 a.m., on the 14th day of November,

2005, in Courtroom A802, United States Courthouse, Denver,

Colorado.

Proceeding Reported by Mechanical Stenography, Transcription
Produced via Computer by Kara Spitler, RMR, CRR,
901 19th Street, Denver, CO, 80294, (303) 623-3080

5176

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, et al.,

    Plaintiffs,

vs.

ROCKWELL INTERNATIONAL CORPORATION, and THE DOW CHEMICAL
COMPANY,

    Defendants.

_____

REPORTER'S TRANSCRIPT
Volume 38

_____

    Proceedings before the HONORABLE JOHN L. KANE, JR.,
Senior Judge, United States District Court for the District of
Colorado, commencing at 1:22 p.m., on the 14th day of November,
2005, in Courtroom A802, United States Courthouse, Denver,
Colorado.

Proceeding Reported by Mechanical Stenography, Transcription
Produced via Computer by Kara Spitler, RMR, CRR,
901 19th Street, Denver, CO, 80294, (303) 623-3080

Richard Kaufman - Redirect                5216

1      THE COURT:  It's a nonissue.  If it would be objected

2  to, it would be sustained.

3      (In open court:)

4      MR. SORENSEN:  Just have one moment, Your Honor.

5      THE COURT:  Yes.

6      MR. SORENSEN:  May be done.

7  BY MR. SORENSEN:

8  Q   Mr. Kaufman, you were asked by defense counsel about

9  ChemRisk and some ChemRisk documents.  Do you recall that?

10 A   Yes.

11 Q   I believe you may have testified that ChemRisk was a

12 consultant?

13 A   They may have been.

14 Q   Do you know their status?

15 A   I don't know what their status is now.

16 Q   Okay.

17      MR. SORENSEN:  Your Honor, I just want to make sure

18 the record is clear on the documents we're offering, and then

19 I'm done.

20      THE COURT:  Okay.

21      MR. SORENSEN:  P1386.  P1387.  P1388.  P646, these are

22 the subpoenas.  P647.  P635.  P1410.  P636.  We understand

23 defendants' objection to portions of P1420.  We may submit an

24 amended version of that.

25      P1390.  P1213.  P1419, again, is a hearing.  We intend

Richard Kaufman - Redirect                        521

1   to submit an amended version of that, narrowed to the portions

2   we discussed.

3            P1392.  And P1209.

4            And then portions of P1417 and P1418.

5            MR. BERNICK:  Your Honor?

6            THE COURT:  Yes.

7            MR. BERNICK:  That really raises a matter that we want

8   to take up at sidebar.  I have a very -- I don't know if

9   counsel is done -- I have a very short recross on the 1418

10  document that he read portions of, and there are other portions

11  that are relevant.

12           THE COURT:  We'll take up the rulings on those.  But

13  go ahead and do yours, and then I'm going to ask the jury to

14  take a short break because I have to make some rulings on the

15  next witness as well.

16           Sorry.

17                    **RECROSS-EXAMINATION**

18  BY MR. BERNICK:

19  Q   Mr. Kaufman, counsel just showed you a submission that was

20  made -- a brief that was filed in connection with plaintiffs'

21  request for more Q clearances; do you recall that?

22  A   Yes.

23  Q   It was, in fact, dated, I was mistaken, December 27, which

24  was very shortly after the letter request for MUF.  So I've

25  gone back to 1381, and I've marked on here that that 1418 was a

1  documents and they were all shown to the jury, and the only one

2  that I think Your Honor sustained an objection to was the news

3  articles that were attached to Exhibit P650.

4         THE COURT:  Well, I know I did that.

5         MR. DAVIDOFF:  And on redirect there were two, 1417

6  and 1418.  But all the documents on the list were shown to the

7  jury.

8         MR. BERNICK:  Our notes show that that's wrong, but

9  that will --

10        THE COURT:  You'll have a transcript.  You're ordering

11 it and you can do it in the morning and it will happen.

12        MR. DAVIDOFF:  I have a scheduling request.  I don't

13 know how long it's going to take to discuss the rulings before

14 Mr. Cochran --

15        THE COURT:  It isn't.  I'm going to make my rulings

16 right now, and then you can have Dr. Cochran testify.

17        MR. DAVIDOFF:  Right.  I would -- well, I need a ten-

18 or 15-minute break because I have an emergency phone call --

19        THE COURT:  I do, too.  I'm older than you are, so I'm

20 going to take it.  We'll do that.  But I mean, I'm not going to

21 spend a whole lot of time.  I've already gone over these things

22 and read everything, and now I'm ready to rule on those.

23        MR. DAVIDOFF:  All right.

24        THE COURT:  Anything else?

25        MR. DAVIDOFF:  No, Your Honor.

Richard Kaufman - Direct                    5139

1  before the February 15, 1996, hearing before Judge Kane,

2  correct?

3  A  ·I think so, yes.

4  Q  And among the issues that were again in front of the Court

5  were DOE's production, or lack thereof, of MUF documents,

6  correct?

7  A  Well, it was the issue that there were so many more --

8  there was no way the March 15 deadline could be met because of

9  the increase in the number of pages.

10  Q  So that was one of the issues that DOE presented to the

11  Court in February 1996, correct?

12  A  Yes.

13  Q  So DOE was, among other things, telling the Court, there

14  was no way DOE could meet the March 15, 1996, deadline; is that

15  correct?

16  A  Right.  Based on the requirements of the declassification

17  process.

18  Q  Okay.· And you just were looking at a document where DOE

19  was saying that 75 percent of these documents were being whited

20  out.  Do you recall that?

21  A  Yes.

22  Q  And do you understand that in May 1996 plaintiffs, in fact,

23  advised DOE that because so much of the documents or some much

24  of the content of the documents was being whited out,

25  plaintiffs said to DOE as to a number of types of these

Richard Kaufman - Direct                    5122

1   point in time.

2   Q   Could you turn to Exhibit P1420, please.

3           Are you there, sir?

4   A   Yes.

5   Q   Now, this is a transcript of a hearing held before Judge

6   Kane on December 16, 1996, correct?

7   A   Yes.

8   Q   All right.  Could you turn to page 28 of this transcript,

9   please.

10          Are you there, sir?

11  A   Yes.

12  Q   Now, towards the bottom of this page, the first full

13  paragraph, the Court is saying, I'm going to have a hearing in

14  this matter on Thursday, February 15.  Do you see that?

15  A   Yes.

16  Q   And then it indicates that it, the Court is requesting a

17  plan of production for declassifying those documents and

18  turning them over by March 15.  Do you see that?

19  A   Yes.

20  Q   Okay.  And the Court is also asking for the parties to

21  brief or submit discussions of other legal issues, correct.

22          Do you see that towards the bottom of 28?

23  A   Yes.

24          MR. SORENSEN:  Your Honor, may I approach for one

25  second?

Richard Kaufman - Direct                    5123

1          THE COURT:  Yes.

2      (At the bench:)

3          MR. SORENSEN:  Your Honor, out of an abundance before

4   approaching, I wasn't sure whether I could mention the briefing

5   on the impoundment of documents.  I didn't want to mention

6   that.  You mentioned not to mention the issue of DOE taking

7   over the case, but I want to make clear I can mention the other

8   issue.

9          THE COURT:  The other issue.

10         MR. SORENSEN:  You wanted briefing on whether these

11  documents could be impounded by the United States marshal.

12         THE COURT:  I don't see what it does.  I think it's

13  probably just best not to.

14         Can we take a recess now.

15         MR. SORENSEN:  Sure.

16     (In open court:)

17         THE COURT:  Let's take a recess for about 15 minutes,

18  please.

19     (Jury out at 10:25 a.m.)

20     (Recess at 10:25 a.m.)

21     (Reconvened at 11:46 a.m.)

22         THE COURT:  Thank you.  I guess we'll all stand.

23         MR. SORENSEN:  Your Honor, I have a question before

24  the jury comes in.

25         THE COURT:  Be seated, please.

Richard Kaufman - Direct                    5124

1        Yes, sir.

2            MR. SORENSEN:  I want to be clear, make sure I'm not

3   going over any lines.  Later -- or soon we're going to get to a

4   February hearing which I mentioned in my proffer, in which this

5   Court indicated that it was considering moving to evidentiary

6   sanctions for DOE's failure to produce documents.  I was going

7   to going to draw the witness's attention to it and introduce

8   it.

9            THE COURT:  I didn't enter any order.

10           MR. SORENSEN:  Correct.  You were stating on the

11  record that it's -- it's out.

12           THE COURT:  Don't go there.  I didn't do it.  It's not

13  a fact.

14           MR. SORENSEN:  And I take it the defendants are also

15  not permitted to go there, correct, I mean that the --

16           MR. BERNICK:  I'm surely not going to bring out

17  anything Your Honor didn't order.

18           THE COURT:  I didn't order it.  So don't bring it out.

19           All right.

20           MR. SORENSEN:  Glad I raised it.

21           THE COURT:  I missed most of the game yesterday which

22  makes me rather testy, but I did see that interception and

23  80-yard touchdown.

24           It's hard to be an agnostic when you see something

25  like that.

Richard Kaufman - Direct                5125

1        MR. BERNICK:  They didn't let me into the cab

2   yesterday at the airport --

3        THE COURT:  Is that right?

4        MR. BERNICK:  -- unless I swore fielty to the Broncos.

5   I said, say who.

6        THE COURT:  Did you tell them that the Bears won

7   yesterday?

8        MR. BERNICK:  I figured that won't help my cause.

9        (Jury in at 10:48 a.m.)

10       THE COURT:  Thank you.  And be seated, please.

11  BY MR. SORENSEN:

12  Q   Good morning, again, Mr. Kaufman.

13  A   Good morning.

14  Q   Now, before the break, we were discussing a hearing before

15  this Court that took place on January 16, 1996.  Do you recall

16  that?

17  A   Yes.

18  Q   Okay.  And at that hearing, the Court was setting a

19  deadline of March 15, 1996, for the production of documents,

20  including the MUF documents, correct?

21  A   I believe that was the MUF -- that deadline was

22  specifically for the MUF documents.

23  Q   Okay.

24       Would you please turn to Exhibit P1390, please.

25  A   I'm there.

Richard Kaufman - Redirect                              5205

1  hearings, for example, that, in fact, plaintiffs did narrow

2  their request, correct?

3  A   Yeah.

4        MR. BERNICK:   It's a very broad question.   Requests

5  refers to all kinds of things.   There are --

6        THE COURT:   Sustained.

7  BY MR. SORENSEN:

8  Q   Could you look at Plaintiffs' P1417, please.

9  A   I'm there.

10 Q   1417?

11 A   Yes.

12 Q   That is a transcript before the Court on August 15, 1994.

13 Do you see that?

14 A   Yes.

15 Q   Could you please turn to page 50 of the transcript.

16 A   Okay.   I'm there.

17 Q   All right.   Now, it states, Mr. Kaufman, and then it

18 describes what is said.   That's your statement for the Court,

19 correct?

20 A   I presume so, yes.

21 Q   Okay.   If you could go over to page 51.

22 A   I'm there.

23 Q   And in the middle of the top paragraph, it states -- this

24 is you telling the Court, And in some instances, we have made

25 documents available, like building 061 where there's 562 boxes

Richard Kaufman - Redirect

1   and I believe they've requested -- when it's they've, that's

2   plaintiffs?

3   A   Yes.

4   Q   Plaintiffs had requested 30,000 pages of documents.  That

5   is not nearly all of them.  Not even close.  I mean, they have

6   narrowed their search.  Do you see that?

7   A   Yes.

8   Q   Now, you were shown a subpoena that plaintiffs served on

9   DOE from July '93, subpoena -- Exhibit 1386.  You were asked

10  some questions about it by defense counsel.  Do you recall

11  that?

12  A   Yes.

13      MR. BERNICK:  Actually, so the record is clear, I

14  believe that was offered in originally by the plaintiffs.

15      MR. SORENSEN:  I'm just referring to the questions you

16  asked about it.

17      MR. BERNICK:  Sure.

18  BY MR. SORENSEN:

19  Q   Do you recall the questions that defense counsel asked

20  about the scope of the subpoena?

21  A   Yes.

22  Q   And I believe you testified that the scope would take in

23  essentially every document about Rocky Flats; was that your

24  testimony?

25  A   Yes.

Richard Kaufman - Redirect                                5209

1  Q   Well, in the 1994 time frame, do you recall that that
2  happened?
3  A   I recall that -- that your law firm and some of the other
4  firms that were working on this case for plaintiffs' side
5  requested more Q clearances.  What happened to those, I am not
6  sure.  I don't think they were granted immediately.  But I
7  really just don't remember.
8  Q   Okay.  Could you please turn to Exhibit P1418, please.  You
9  there, sir?
10  A   Okay, I'm there.
11  Q   This is a filing by the DOE titled "U.S. DOE's response to
12  plaintiffs' motion to compel to process additional security
13  clearances and response to plaintiffs' motion to expedite
14  adjudication of plaintiffs' motion," correct?
15  A   Yes.
16  Q   And this filing was made in or around December 30, 1994?
17  A   Yes.  It said it was received on that date, yes.
18  Q   Yes.  Can you turn to page 9, please.
19  A   Okay.  I'm there.
20  Q   Is that your signature?
21  A   Yes, it is.
22          MR. SORENSEN:  Your Honor, motion to admit P1418.
23          MR. BERNICK:  I don't think it's really necessary to
24  admit the entire document for the sake of the defendant.  I'm
25  not sure what else this really sets forth.

Richard Kaufman - Redirect                    5210

1           MR. SORENSEN:  It goes directly to --

2           THE COURT:  The whole document?

3           MR. SORENSEN:  Well, Your Honor, if -- I'm going to

4    draw his attention to certain portions.

5           THE COURT:  All right.  Go ahead.  It's admitted.

6           (Exhibit 1418 admitted.)

7           MR. SORENSEN:  Is it admitted?

8           THE COURT:  Yes.  I said go ahead; it's admitted.

9           MR. SORENSEN:  Thank you.

10          Showing the jury the title as I read it.

11   BY MR. SORENSEN:

12   Q    Now, on page 2 of this document, paragraph 2, you there,

13   sir?

14   A    Yes.

15   Q    It states, Plaintiffs are seeking to have this Court

16   require DOE to provide and process three additional

17   applications for expedited security clearances.  This Court,

18   however, lacks authority to grant the relief requested.

19          Do you see that?

20   A    Yes.

21   Q    That's what DOE's position was, correct?

22   A    Yes.

23   Q    Then turn to page 3, please.

24   A    Okay.  I'm there.

25   Q    Paragraph 3, you there?

Richard Kaufman - Redirect                    5211

1 | A    Yes.   Yes.

2 | Q    It says, Plaintiffs' motion conveys the idea that their

3 | attorneys have the unfettered right to require DOE to process

4 | applications for security clearances so that they may have

5 | access to classified documents.   Simply put, there is no such

6 | right.

7 |          Do you see that?

8 | A    Yes.

9 | Q    That was DOE's position, correct?

10 | A    Yes.

11 | Q    And if you could turn to page 7, please.

12 | A    I'm there.

13 | Q    Right above the footnotes, it states, Without question,

14 | three experienced attorneys -- and I'll stop there.   That's a

15 | reference to the number of plaintiffs' counsels that DOE

16 | believed already had security clearances, correct?

17 | A    Yes.

18 | Q    Okay.   Without question, three experienced attorneys should

19 | be able to review the limited universe of classified documents

20 | in a relatively short period of time.

21 |          Do you see that?

22 | A    Yes.

23 | Q    That was DOE's position, correct?

24 | A    Yes.

25 | Q    And that was in -- before DOE revealed the actual volume of

Richard Kaufman - Redirect                5212

1  MUF documents, correct?

2          MR. BERNICK:  I'm sorry, that is really very

3  misleading.  There has not even been a request for MUF

4  documents at this time.

5          THE COURT:  Sustained.

6  BY MR. SORENSEN:

7  Q   This pleading was dated December 27, 1994.  Do you see

8  that?

9  A   Yes.

10  Q   That's after plaintiffs' December -- December request for

11  MUF documents, correct?

12  A   Yes.

13  Q   It's Exhibit P650, if you'd like to check.

14  A   No.  I remember.  The letter was like ten days or so before

15  this.

16  Q   So the sequence is plaintiffs asked for classified MUF

17  documents in their December '94 request, then DOE submits this

18  filing with the Court that we're looking at, P1418, correct?

19  A   Yes.  But we had no idea what the volume was at that point.

20  Q   I understand.

21          Take a look at P650 for a moment.

22  A   Pardon me?  Which number?

23  Q   P650.

24          Do you have it?

25  A   Yes.

Richard Kaufman - Redirect

5216

1       THE COURT:  It's a nonissue.  If it would be objected

2  to, it would be sustained.

3       (In open court:)

4       MR. SORENSEN:  Just have one moment, Your Honor.

5       THE COURT:  Yes.

6       MR. SORENSEN:  May be done.

7  BY MR. SORENSEN:

8  Q   Mr. Kaufman, you were asked by defense counsel about

9  ChemRisk and some ChemRisk documents.  Do you recall that?

10 A   Yes.

11 Q   I believe you may have testified that ChemRisk was a

12 consultant?

13 A   They may have been.

14 Q   Do you know their status?

15 A   I don't know what their status is now.

16 Q   Okay.

17      MR. SORENSEN:  Your Honor, I just want to make sure

18 the record is clear on the documents we're offering, and then

19 I'm done.

20      THE COURT:  Okay.

21      MR. SORENSEN:  P1386.  P1387.  P1388.  P646, these are

22 the subpoenas.  P647.  P635.  P1410.  P636.  We understand

23 defendants' objection to portions of P1420.  We may submit an

24 amended version of that.

25      P1390.  P1213.  P1419, again, is a hearing.  We intend

1  to submit an amended version of that, narrowed to the portions

2  we discussed.

3            P1392.  And P1209.

4            And then portions of P1417 and P1418.

5            MR. BERNICK:  Your Honor?

6            THE COURT:  Yes.

7            MR. BERNICK:  That really raises a matter that we want

8  to take up at sidebar.  I have a very -- I don't know if

9  counsel is done -- I have a very short recross on the 1418

10 document that he read portions of, and there are other portions

11 that are relevant.

12           THE COURT:  We'll take up the rulings on those.  But

13 go ahead and do yours, and then I'm going to ask the jury to

14 take a short break because I have to make some rulings on the

15 next witness as well.

16           Sorry.

17                    **RECROSS-EXAMINATION**

18 BY MR. BERNICK:

19 Q   Mr. Kaufman, counsel just showed you a submission that was

20 made -- a brief that was filed in connection with plaintiffs'

21 request for more Q clearances; do you recall that?

22 A   Yes.

23 Q   It was, in fact, dated, I was mistaken, December 27, which

24 was very shortly after the letter request for MUF.  So I've

25 gone back to 1381, and I've marked on here that that 1418 was a

Richard Kaufman - Direct                    5141

1  A   Yes.  I sent in the changes.

2  Q   So other than the changes, you indicated you gave truthful

3  and accurate testimony, correct?

4  A   Yes.

5  Q   Could you turn, please, to Exhibit P1209.

6      Do you see that?

7  A   Yes.

8  Q   Now, this is another filing by the Department of Energy now

9  in August of 1996.  Do you see that?

10 A   Yes.

11 Q   And it's titled "Status report, Department of Energy."  Do

12 you see that?

13 A   Yes.

14     MR. SORENSEN:  Your Honor, I'd move admission of

15 P1209.

16     MR. BERNICK:  You'd have to give me a moment to take a

17 look at it, Your Honor.

18     THE COURT:  All right.

19     MR. BERNICK:  The document has a series of letters

20 attached that we would object to.  They come from plaintiffs'

21 counsel.  And they would be -- they would obviously be hearsay

22 documents.  I don't know that they're really necessary to the

23 examination.

24     MR. SORENSEN:  I have no problem introducing the

25 exhibit with the letter deleted.

Richard Kaufman - Direct                                5142

1          THE COURT:  Okay.  It's admitted, then, without the

2     letter.

3          (Exhibit 1209 admitted.)

4     BY MR. SORENSEN:

5     Q    So, again, this is filed in August 1996.  Do you see that,

6     sir?

7     A    Yes.

8     Q    And it's in this case.  And the title is as I described it,

9     correct?

10    A    Yes.

11    Q    All right.  Then just to give the jury some background as

12    to this filing.  It states, United States Department of Energy,

13    hereinafter referred to as DOE, or the department, by and

14    through United States Attorney Henry Solano, L. Solano, and

15    assistant U.S. attorney, Linda Surbaugh, and pursuant to this

16    Court's order, submits a status report regarding document

17    production.

18          Just for the jury's -- just to clarify, the Court at

19    this point had ordered DOE to submit regular status reports,

20    correct?

21          Are you aware that?

22    A    Yes, when I was still on the case, we were filing monthly

23    status reports, right.

24    Q    Because the Court had ordered DOE to do that, correct?

25    A    You may be correct.  I just don't remember.