Exhibit B

# Openness...Creating a Legacy

## DRAFT REPORT FOR PUBLIC COMMENT

### FEBRUARY 1, 1996

## FUNDAMENTAL CLASSIFICATION POLICY REVIEW

This report was prepared for public comment by the
Fundamental Classification Policy Review Group.
This study is ongoing and no decisions have been
made with respect to adoption or implementation
of any recommendations herein.



PLAINTIFF'S DEPOSITION
EXHIBIT

ABS418

February 1, 1996

*DRAFT*

*Intentionally Left Blank*

*DRAFT*

*DRAFT*

*February 1, 1996*

# Fundamental Classification Policy Review

## Draft for Public Comment

Al Narath, Chairman

*DRAFT*

February 1, 1996

*DRAFT*

*Intentionally Left Blank*

*DRAFT*

February 1, 1996

# Table of Contents

Preface

Chapter 1 – Introduction
    – DOE Openness Initiative
    – The Review Task
    – The Approach
    – Stakeholder Concerns

Chapter 2 – Principles for Governing the Classification System
    – Classification as a System
    – General Principles
    – Nuclear Weapon-Specific Principles
    – Military Reactor-Specific Principles
    – Safeguards and Security–Specific Principles

Chapter 3 – Overarching Issues
    – Modifying the Atomic Energy Act
    – Improving DOE Practices
    – Relying on Protection of Unclassified Information

Chapter 4 – Nuclear Weapon Science, Technology, Design, Weaponization and
        Testing

Chapter 5 – Nuclear Materials Production and Disposal

Chapter 6 – Inventories of Nuclear Weapon, Special Nuclear Material and
        Tritium

Chapter 7 – Military Reactors

Chapter 8 – Safeguards and Security

*DRAFT*

-2-                              February 1, 1996

# Figures

1. Fundamental Classification Policy Review Organization
2. Fundamental Classification Policy Review Schedule
3. Classification as a System
4. Graded Portion Marking
5. Example Decision Logic Chart for Applying Guiding Principles to Restricted Data

# Appendices

A. Tasking
B. Stakeholder Input
C. Report of the Weapon Design Working Group
D. Report of the Weapon Science Working Group
E. Report of the Weaponization Working Group
F. Report of the Nuclear Materials Production Working Group
G. Report of the Weapons Production and Military Utilization Working Group
H. Report of Military Reactors Working Group
I. Report of the Safeguards and Security Working Group
J. Acknowledgments
K. Organization and Participants
L. Bibliography

*DRAFT*

-3-                                    February 1, 1996

## Preface to the Draft for Public Comment

This draft report for public comment gives an overview of the Fundamental Classification Policy Review work to date; however, the reader should note that this is truly work in progress. The report has not been formally evaluated or approved by the Department of Energy or any other government agency. Comments are, therefore, not only welcomed but will be fully considered before the final report is submitted to the Secretary of Energy in April 1996.

Not included in this draft are the reports of the seven working groups. These documents, which will be appendices to the final report, contain much of the detail needed to revise DOE classification guidance. Consequently, finer resolution of some complex technical issues is needed in order to avoid presenting recommendations inconsistent with our overall intent. Also, the examination of several other issues (e.g., export controlled information and greater protection for the most sensitive design information) has not progressed sufficiently to report at this time.

The Review team is grateful to stakeholders from both the private sector and from within the government for their contributions. We have tried to understand and deal with each suggestion and idea. Shortcomings are most likely due to two factors:

1. Limitations of human communications. This draft offers an opportunity to identify defects arising from misunderstanding.

2. Bounds on the Review charter. For example, the Review steering group is very sympathetic to the plight of atomic veterans in obtaining records. We have had the DOE Office of Declassification verify that dose and exposure records are not classified within the Department of Energy. The difficulty, in part, lies in searching large volumes of unclassified material – a matter being currently addressed by the DOE Office of Declassification. Similarly, issues of access and monitoring at DOE facilities, electronic access to released material, abstracts of withheld information, etc. fall outside the charter of the Review.

*DRAFT*

-4-                          February 1, 1996

To proceed in a timely manner and provide the Secretary our recommendation in April, we need your comments by February 29.  Please send them to the following address:

> Dr. Glen R. Otey
> Deputy Chair
> Fundamental Classification Policy Review
> P.O. Box 5800
> Sandia National Laboratories, MS 0517
> Albuquerque, New Mexico  87185-0517
> FAX:  (505) 844-4543

*DRAFT*

-5-                         February 1, 1996

# Chapter 1 - Introduction

"Much of the strength and efficiency of any government in procuring and securing happiness to the people depends on opinion, on the general opinion of the goodness of that government ..."

**Benjamin Franklin to the
Constitutional Convention, 1787**

### *The DOE Openness Initiative*

In December 1993, Secretary of Energy Hazel O'Leary launched a comprehensive initiative to move the Department of Energy (DOE) into a new era of government openness. She outlined a broad package of classification and declassification reforms and disclosed for the first time:

- that 1/5 of all U.S. nuclear tests were kept secret including some which resulted in radiation releases into the environment;

- information on U.S. plutonium production and locations of portions of the plutonium stockpile;

- key information about fusion energy, a potential energy source for the 21st century; and

- the amount of mercury used in U.S. weapons production.

The Openness Initiative is DOE's response to President Clinton's commitment to improve public access to government. The President emphasized the importance of accessibility when he stated, "The more the American people know about their government the better they will be governed." After reviewing DOE's approach, the President called it, "a bold new initiative that will allow an informed group of stakeholders to work with the Department of Energy to solve the problems that face our nation." Key elements of the Openness Initiative include:

- reducing the amount of information classified, especially documents relating to environmental, safety, and health issues;

- speeding up the Department's information declassification process, including seeking input from the public to establish declassification priorities, appointing additional document declassifiers, and developing automated systems to screen documents for classified information;

## *DRAFT*

-6-                          February 1, 1996

- reviewing all existing classification policies and related technical guidance, including the Atomic Energy Act.
- establishing an interagency coordinating process to expedite declassification and release of shared information.

The announcement of the Openness Initiative was followed by 28 public meetings aimed at garnering public support and trust. Over 1,000 DOE stakeholders responded. During her June 1994 press conference, Secretary O'Leary stated, "We've been listening and what we've heard loud and clear is that openness in government is very important to our citizens. We've also heard that accessibility is important." The Secretary then outlined broad classification reforms and released information about the nation's nuclear materials production program, its nuclear testing programs, and the U.S. nuclear weapons stockpile.

In addition, the Secretary described new actions aimed at declassification and classification reform and accessibility. These commitments included:

- increasing DOE support to the National Archives and Records Administration;
- establishing a Freedom of Information Process Improvement Team;
- simplifying facility access controls at DOE Headquarters and at DOE Operations Offices, plants and laboratories;
- establishing a systematic document declassification review program;
- conducting stakeholder meetings, on the average of one each month, at locations around the United States; and
- undertaking a comprehensive, fundamental review of all nuclear related information, with the goal of declassifying all information that no longer warrants protection ... The Fundamental Classification Policy Review.

*DRAFT*

-7-                              February 1, 1996

*The Review Task*

"In proportion as the structure of a government gives force to public opinion, it is essential that public opinion should be enlightened ..."

**George Washington**
**Farewell Address, 1796**

The Under Secretary of Energy, in a February 13, 1995 letter to Dr. Albert Narath (Appendix A), requested that he chair a group to carry out a comprehensive, fundamental review of DOE's classification policy. The stated objective was to determine which information must continue to be protected and which no longer requires protection and should be made available to the public. The review was identified as a major component of Secretary O'Leary's Openness Initiative with an overarching objective of making openness a DOE legacy. Twelve months were allowed for the review so that the views of stakeholders both within and outside the government could be solicited and expertise from the Department of Defense and other government agencies brought to bear.

All information within DOE's responsibility was included in the review. Within the Department there are four major categories of protected information. Three are derived from the Atomic Energy Act (AEA) of 1954, as amended; the fourth is defined by Executive Order 12958 of April 19, 1995. The charge to the Review Group applied not only to the individual categories, briefly described below, but also to the manner in which they collectively are used to protect information.

- *Restricted Data (RD)* is defined by the AEA as all data concerning (1) design, manufacture or utilization of atomic (nuclear) weapons; (2) the production of special nuclear material (i.e., uranium enriched in $U^{235}$, $U^{233}$ and plutonium); or (3) the use of special nuclear material in the production of energy, but not data declassified or removed from the RD category (now almost everything associated with energy production). The AEA requires continuous review of RD and associated classification guides to determine which information may be declassified without undue risk to the common defense and security. Unless expressly declassified or removed from this category by an authorized DOE official, all data meeting the RD definition is considered to be "Born Classified" and remains classified, indefinitely.

- *Formerly Restricted Data (FRD)* is characterized in the AEA as RD relating primarily to the military utilization of atomic (nuclear) weapons. The DOE

**DRAFT**

-8-                               February 1, 1996

and DoD jointly determine whether FRD may be declassified without constituting an unreasonable risk to the common defense and security.

- *Unclassified Controlled Nuclear Information (UCNI)*, as defined by the AEA, is government information concerning details of DOE facilities involved in the production of special nuclear material, the design and manufacture of nuclear weapons and components, and certain safeguards and security information as determined by the Secretary of Energy that could reasonably be expected to have a significant adverse effect on the health and safety of the public or the common defense and security by significantly increasing the likelihood of illegal production of nuclear weapons, or theft, diversion or sabotage of nuclear materials, equipment or facilities. Once designated UCNI, information can be removed from this category only by a determination by a DOE Controlling Official that the information is no longer UCNI.

- *National Security Information (NSI)* is defined by Executive Order 12958 as information that has been determined to require protection against unauthorized disclosure and is marked to indicate its classified status when in documentary form. At the time of original classification, the classification authority must attempt to establish a specific date or event for declassification. NSI shall be declassified as soon as it no longer meets the standards for classification under the Executive Order.

Guidance associated with these four categories of information is contained in more than 50 headquarters classification guides and about 800 local classification guides. General policy for classification is given in CG-C-3A, "Classification Policy Guide for Nuclear Programs," dated June 1993. In that the final report to the Secretary was to make clear, concise recommendations for change, along with supporting rationale, review of all policy driving the various guides, and in many cases, the details of how that policy is applied, was integral to the study task.

*DRAFT*

February 1, 1996

## The Approach

"The mutual confidence on which all else depends can be maintained only by an open mind and a brave reliance on free discussion."

**Justice Learned Hand**
**October 24, 1952**

The nature of the task suggested an organization with enough formality to foster completeness and timeliness yet retaining flexibility to deal with prominent issues arising from research and deliberations. The arrangement shown in Figure 1 was selected to meet these needs. A steering group, comprised of the chair, deputy chair and working group and coordinator group chairs, was formed to direct and coordinate the various activities.

Working groups, suitable for collegial discussions, were formed with experts in the relevant areas of technology and policy. Since the main job of the groups was to determine the boundary between information which can be published without undue risk and that which must continue to be protected, classified research and deliberations were essential. For this reason, working group members were selected from the population holding appropriate clearances. The groups were arranged to span the full spectrum of DOE classified information with some deliberate subject matter overlap among groups.

A schedule emphasizing stakeholder input was developed by the steering group (see Figure 2). Distinguished speakers from inside and outside the government followed Secretary O'Leary in addressing the initial steering group meeting in Washington, D. C. Written comments were solicited through the Federal Register and by direct mailing to stakeholders known to the DOE Office of Declassification. Another public meeting was held in Oakland, CA, on July 28 to gain additional stakeholder comment. Again, a distinguished group of public speakers expressed their concerns and suggestions for improvements. Both public sessions were video-taped so that Review participants could carefully consider this important counsel.

Following the initial meeting, the steering group developed a set of interim guiding principles. The 50 or so headquarters classification guides were divided among the working groups. Study areas were, in many cases, interdependent and in some cases overlapping.

**DRAFT**

February 1, 1996

Research for the Review was greatly facilitated by two previous studies.  The Classification Policy Study, requested by the Under Secretary and carried out by DOE's Office of Declassification, examined statutes, Executive Orders, DOE Orders, and other records.  A number of findings and recommendations, largely dealing with issues requiring modifications to the Atomic Energy Act, were presented.[1]  A Committee on Declassification of Information for the DOE Environmental Remediation and Related Programs was convened by the National Academy of Sciences at the request of Secretary O'Leary.  The July 1995 final report put forth four basic principles and a number of recommendations.[2]

After a May 2 plenary session involving all working groups and associated support staff, detailed investigation proceeded under the direction of the working group chairs.  Periodic steering group meetings monitored progress, considered emerging issues and coordinated efforts.

Informal cooperation building was pursued throughout the process as a means for widening the spectrum of issues and concerns under consideration and for informing stakeholders in both government and the private sector of the intent and progress of the Review.

---

[1] "Classification Policy Study," U.S. Department of Energy, July 4, 1992.
[2] "A Review of Department of Energy Classification Policy and Practice," National Academy Press, July 16, 1995.

*DRAFT*

-11-                                    February 1, 1996

## Stakeholder Concerns

"Every citizen owes the country a vigilant watch and close scrutiny of its public servants and a fair and reasonable estimate of their fidelity and usefulness. Thus is the people's will impressed on the whole framework of our civil policy ...; and this is the price of our liberty and the inspiration of our faith in the Republic."

**Grover Cleveland
First Inaugural Address
March 4, 1885**

Stakeholder comments came from a diverse group of private citizens, federal and non-federal government personnel, public and private interest groups, and experts from various disciplines. In addition to public meetings, questionnaires and surveys were used to solicit inputs on specific classification policy issues and to invite comment on topics of individual or organizational interest or concern. As the number of responses expanded, a database was established which grouped information into six major categories: accessibility; openness concerns; declassification proposals; human experimentation; nonproliferation and testing; and environment, safety and health (ES&H).

Analysis indicated major concerns in the following areas:

- Environment, Safety & Health;
- Accessibility ... including Freedom of Information Act (FOIA) policy, unclassified controlled nuclear information (UCNI), born classified;
- Nuclear weapons stockpile numbers;
- Human radiation experiments;
- Nuclear weapons design.

ES&H concerns were voiced by a broad range of stakeholders including private citizens, environmentalists, historians, and health researchers. The stakeholders felt that access to ES&H data would:

- permit better monitoring of activities that have a potential impact on public safety and health;
- allow informed public participation in an open debate of policy issues pertaining to cleanup, storage, and disposal of nuclear materials;

*DRAFT*

- enable accurate determination of the environmental impact at various test and production facilities, and project costs for reclamation and cleanup measures;
- assist in the estimation of radiation and chemical releases, and in the public review of information for epidemiologic or other health studies regarding workers and the community.

Accessibility was a major concern for historians, public interest groups, journalists and individuals.  The majority stated that the review of pertinent documents must be done more promptly and, upon completion of the declassification process, the documents must be released to the public.  In addition, the public should be advised of newly released materials.  Specific suggestions included:

- automate the declassification review process, using artificial intelligence, and modern information management technology;
- hire more declassification reviewers while developing an automated process;
- produce unclassified abstracts of withheld information;
- provide electronic access to released materials;
- continue to identify public priorities for declassification of information and documents;
- review security levels, access controls and, where possible, incorporate improved procedures for greater facility access.

All human experimentation data were declassified prior to the Review; however, stakeholder interest remained high.  Interested parties included veterans organizations, private citizens, medical researchers, and historians.  Stakeholders praised the Department's efforts that began in 1993.  The major concerns expressed by this group were accessibility to the declassified information and the lack of interagency cooperation in response to information requests.  Ongoing litigation and the age of the population concerned makes this an extremely complex and emotional issue.

Researchers, historians, environmentalists, and special interest groups requested that data relative to the U.S. nuclear weapons stockpile be declassified.  Requests included:

- warhead numbers in active and inactive stockpiles;
- number of warheads awaiting dismantlement;

*DRAFT*

-13-                          February 1, 1996

- megatonnage for weapons in the active stockpile;

- present and projected threats the stockpile is to deter;

- number of weapons required to deter each threat;

- amounts of special nuclear material and tritium in the various warheads;

- strategies for use of nuclear weapons;

- tritium inventory.

Stakeholders indicated that the release of these data allows independent review of U.S. strategic policy. Weapons storage, stockpile maintenance and the Science-Based Stockpile Stewardship Program were included in this area of concern.

While Stakeholders demanded improved access to both DOE facilities and information, they were in general agreement that critical nuclear weapon design information must remain safeguarded. The belief that scientific information should be declassified on relatively short schedules was expressed by several. However, they recommended that all design data be reviewed and that detailed technical information which continues to be critical should be protected in the most stringent manner available. "High fences" around truly sensitive subjects, but declassification and dissemination of a large volume of lesser materials was a popular theme.

A compendium of stakeholder comments is given in Appendix B.

*DRAFT*

February 1, 1996

*Intentionally Left Blank*

***DRAFT***

## Chapter 2 - Principles for Governing the Classification System

"Moderation in temper is always a virtue, but moderation in principle is always a vice."

Thomas Paine, 1792

### Classification as a System

Classification policy and practice, like nuclear weapons themselves, exist to support national security policy and objectives. In turn, classification policy must be founded on sound principles. Doctrine for developing, modifying and applying classification guides — the primary instruments used in classifying and declassifying information — flows from both policy and principles.

Figure 3 illustrates schematically how the classification system works. The products generated by the system are classification and declassification actions — determinations by individual authorized classifiers as to the proper classification category and level for documents and materials within their responsibilities. These actions are supported by a hierarchy of classification guides which are the basic tools of the authorized classifier.[3] Local guides — issued by DOE Operations Offices or contractors, after approval by the Office of Declassification — provide detailed direction in selected technical areas. Program guides are developed for work involving two or more field offices or for cooperative efforts with another government agency. Both local and program guides are prepared and revised in conformance with the DOE Classification Policy Guide — a critical link between policy and individual classification and declassification actions. Changes in national policy must generally flow through this hierarchy before practice is revised at the working level.

The system has several feedback mechanisms for adjusting to changing conditions. A Technical Evaluation Panel — the principal scientific advisory group — advises on specific items submitted for declassification and makes recommendations for modifying and interpreting policy. Formal appraisals are conducted to determine whether practices actually conform to DOE policy and to evaluate the effectiveness of classification personnel in implementing the

---

[3] DOE Order 5650.2B, "Identification of Classified Information," December 31, 1991.

*DRAFT*

program.[4]  DOE also conducts various reviews of documents for declassification and downgrading.  These mechanisms were devised to keep the system in tune with slowly evolving Cold War policy.

The system is currently keyed to the underlying principle of achieving a balance among four aims[5] :

1.  assuring defense and nonproliferation by controlling declassification;

2.  promoting peaceful applications of atomic energy by dissemination of scientific and technical information;

3.  promoting dissemination of environmental, safety and health-related information; and

4.  promoting technology transfer for U.S. commercial interests.

Fifteen general policy statements, including criteria for declassification, are provided for authorized users seeking to apply the underlying principle to specific problems.[6]

The previously discussed DOE Openness Initiative is only one manifestation of policy changes since the end of the Cold War.  Defense focus has shifted toward a world where regional powers may attempt to gain local hegemony through aggression or intimidation.  These threats cannot, for the most part, be adequately addressed by the United States or any other single nation state.[7]  In general, the changes in national security policy provide a greater opportunity to emphasize our commitment to open Government.[8]  However, a critical priority of the U.S. is to stem the proliferation of weapons of mass destruction and their missile delivery systems.[9]  It is largely within this arena of sometimes competing national priorities — international cooperation, openness in government and nonproliferation — that a new DOE classification policy must be formulated.

---

[4] DOE Classification Appraisal Procedure Guide, February 1988.

[5] CG-C-3A, "Classification Policy Guide for Nuclear Programs," DOE Office of [De]Classification, June 1993.

[6] Ibid.

[7] "Annual Report to the President and the Congress," W. J. Perry, February 1995.

[8] Executive Order 12958, "Classified National Security Information," April 19, 1995.

[9] The White House, A National Security Strategy of Engagement and Enlargement, July 1994.

**DRAFT**

February 1, 1996

The Review sought to identify and evaluate fundamental changes that could bring the DOE classification system more closely into line with national policy. A premium was placed on expressing policy and principles so that both practitioners of classification and the public at large can understand which information must be protected and which can be made available to the public. In contrast to the current principle of balancing four aims, the Review recommends eleven general and another ten area-specific principles aimed primarily at defining what DOE classification must and must not do.

## General Principles

1.  Public trust can best be held by providing complete and accurate information in a timely manner and ensuring that only information requiring protection is classified.[10]

2.  Classification must be based on explainable judgments of identifiable risk to national security and no other reason.[11]

3.  Information relating to environmental, safety and health issues should be classified only when national security requirements clearly outweigh the public's need to know.

4.  Classification must never be used to conceal or delay the discovery of violations of law, inefficiency, or errors; to prevent embarrassment; or to restrain competition.

5.  Classification policy must be unambiguously related to national policy and enunciated in a manner understandable by the public.

---

[10] This first principle acknowledges our understanding of the importance of disclosure. The right of the public to government information is defined in statutes (e.g., Freedom of Information Act). A number of types of information, including classified information, are excluded from disclosure under these statutes. So while the public does not have a right to classified information, we recognize that classification is proper only for information requiring protection. The second principle tightens the concept.

[11] It follows that an identified benefit or need is not required to justify declassification and release to the public. Rather, the federal government must establish the reason for classification. If information does not meet classification criteria, it should be released to the public unless otherwise restricted by law.

*DRAFT*

February 1, 1996

6. Classification guidance must be traceable to classification policy and must provide a clear, unambiguous understanding of what information must be classified.

7. Classification policy and guidance must be reviewed periodically to ensure harmony with national policy and to identify information that can be declassified.

8. Classification policy and practices must honor U.S. international commitments contained in treaties and other agreements and not inhibit authorized cooperation with other countries.

9. Unauthorized disclosure does not necessarily provide a basis for declassification.

10. Information or technology considered obsolete by U.S. standards may still be classified due to its usefulness to terrorists and proliferators.

11. Open communication of fundamental science does not preclude classification of implementing technology.

## Nuclear Weapons - Specific Principles

1. DOE classification is primarily focused on stemming the flow of information that could materially advance the objectives of nuclear proliferators, terrorists or saboteurs; assist in significantly improving a nuclear weapon capability; or expose a significant vulnerability or defect in U.S. weapons.

2. Classification is a major element in assuring that a U.S. nuclear weapon cannot be used in an unauthorized manner.

3. Classification may delay, but cannot prevent, acquisition of a first-generation nuclear weapon; it can significantly increase the cost and the time to develop more advanced capabilities.

4. Information confirming the technical merits of various approaches to nuclear weapon development, detailed nuclear weapon design information, performance data gained from nuclear tests, and information on how test data are used to validate models and data bases must be closely guarded.

5. Basic scientific information, not revealing details of weapon design or fissile material production, should not be classified unless there is a compelling reason to believe that disclosure would significantly assist in gaining or enhancing a nuclear capability.

*DRAFT*

-19-                              February 1, 1996

## Nuclear Materials Production — Specific Principles

1. Information that could materially assist a proliferator in producing special nuclear material shall be classified.

## Military Reactor-Specific Principles

1. DOE classification is primarily focused on protecting information which could materially assist potential adversaries in exploiting vulnerabilities in U.S. military reactor systems or in developing or significantly improving their military reactors.

2. Information on retired programs is generally obsolete and decisions to retain as classified should only be made on the basis of applicability to current programs.

## Safeguards and Security-Specific Principles

1. Sound risk management approaches should be applied in the decision process to classify safeguards and security information.

2. Safeguards and security information that could result in an adversary obtaining a nuclear weapon or nuclear material, or in nuclear sabotage, or in damage to the health and safety of government employees or the public must be protected.

*DRAFT*

-20-                              February 1, 1996

*Intentionally Left Blank*

**DRAFT**

## Chapter 3 - Overarching Issues

"When our Founders boldly declared America's independence to the world . . . they knew that America to endure would have to change; not change for change sake, but change to preserve America's ideals:  life, liberty, and the pursuit of happiness."

**Bill Clinton**
**Inaugural Address, January 20, 1993**

*Modifying the Atomic Energy Act*

The stringent provisions for classification prescribed by the Atomic Energy Act of 1954 (AEA) were appropriate for the times.  Four decades of intensive technical work, however, provide the understanding needed to simplify those provisions without compromising national security.  Changing the AEA is fundamental to changing DOE classification policy.

Restricted Data is defined in the AEA in a very conservative manner.  All data meeting the general definition is considered to be "Born Classified."  Unlike National Security Information, no decision by an official is needed to render information falling within the AEA definition classified.  The very nature of this approach leads to an environment fostering overclassification.

Today, an extensive set of classification guides (briefly described in Chapter 2) provides workers with official direction on which material is to be classified.  Consequently, it is now time to make the provisions for Restricted Data more consistent with those governing classified material throughout the government.

> *Recommendation 1.*  Amend the AEA definition of Restricted Data by changing the wording of Chapter 2, Section 11 (y) from "all data concerning ..." to "all data designated by the Secretary of Energy concerning ..."

Another shortcoming in the AEA has arisen through examination of the legality of reclassifying previously declassified material.  Implementation of Recommendation 1 will make it less likely that a reclassification action is needed, but the Secretary of Energy should have this authority in order to rectify previous decisions which are inappropriate because of errors or changing national security conditions.

*DRAFT*

-22-                              February 1, 1996

> *Recommendation 2.*  Amend the AEA to provide the Secretary of Energy
> authority to reclassify specific information in the area of Restricted Data.

The AEA also provides for removing from the Restricted Data category
information primarily relating to military utilization of nuclear weapons provided
that the information is safeguarded adequately as "defense information," and
that it is shared with other nations only pursuant to agreements for cooperation
as defined in the AEA.

Information in this category is known as Formerly Restricted Data – a term which
has caused much confusion and unnecessary work over the years.  Little
difference exists between National Security Information and Formerly Restricted
Data except for the cumbersome requirement for joint DoD-DOE determinations
on declassification and the process for sharing the information with other nations
– a process largely redundant with other mechanisms for achieving similar
objectives.

The DoD and DOE could benefit by jointly reviewing and separating topics
classified Formerly Restricted Data for transclassification to National Security
Information or Restricted Data, as appropriate, with the objective of eliminating
Formerly Restricted Data from current usage.  One result should be a reduced
number of topics classified by joint DoD-DOE guidance, thereby removing DOE
from classification decisions on military utilization more properly made by DoD.[12]
Legislation would, however, be required to apply NSI processes unencumbered
by stipulated AEA (Sec. 142.d) restrictions on sharing military utilization
information with other nations.

> *Recommendation 3.*  Amend the AEA to allow designation as National Security
> Information information now categorized as Formerly Restricted Data.

Implementation of the three recommendations discussed above is essential if
DOE is to significantly improve classification policy.  Reining in "Born Classified" is
needed to deal with overclassification.  The authority to reclassify is essential to
address timidity in the declassification process.  Eliminating Formerly Restricted

---

[12] A process for ensuring that the impact of DoD classification decisions on DOE is
fully considered is discussed in Chapter 4.  If Recommendation 3 is not
accepted, a principle on military utilization and system capabilities must be
added.

*DRAFT*

February 1, 1996

Data simplifies processes and clarifies classification lines of responsibility. All three have been recommended by the Classification Policy Study and the National Academy of Sciences review.

### Improving DOE Practices

As a matter of practice, DOE has generally classified entire documents at the highest level of any material contained therein without further identification of the relative sensitivity of the various parts. By contrast, most government agencies use segregation and portion marking of classified material so that the reader can more precisely identify the sensitivity of the various parts. Segregation and portion marking based on a strong system of classification guides offers a significant measure for reducing overclassification today, for more easily declassifying material in the future, and for more clearly distinguishing between classified and unclassified information.

What constitutes an appropriate portion may vary greatly from document to document. Figure 4 illustrates a decision logic that can be applied on a case by case basis. Choices on appropriate portions for segregation or marking can best be made by well-informed technical staff with review and assistance by authorized derivative classifiers. Caution must be exercised to ensure that the entire assemblage of all portions in a document that are marked at given level and category, is itself classified at that level and category as a whole, and that the overall marking on the document reflects the highest classification level contained therein and the most restrictive category of information.

*Recommendation 4.* The DOE should institute a graded system (as illustrated in Figure 4) for segregation and portion marking of all new Restricted Data documents by authors and authorized derivative classifiers. (Implementation should begin as classification guides are revised.)

There are four main categories of Unclassified Controlled Nuclear Information (UCNI): security, nuclear materials production, nuclear power production, and nuclear weapons. Implementation of UCNI is confusing; criteria for use are difficult to distinguish from that for classification. For example, the phrase in the AEA, Sec. 148, "... significant adverse effect on health and safety of the public or the common defense and security," is similar to the definition for "Secret" classified information in Executive Order 12958: "... reasonably could be expected to cause serious damage to national security."

-24-                                    February 1, 1996

The most compelling argument for retaining UCNI is to provide some protection for sensitive material that needs to be shared with those not holding security clearances (e.g., law enforcement officials). Release of UCNI to the general public is prohibited. It is thought that this lowers the risk of terrorist attacks on sensitive facilities, operations, and associated personnel.

Our analysis indicates that an 80% reduction in UCNI-marked documents can be achieved if application is limited to safeguards and security needs.

> *Recommendation 5.* The use of UCNI should be limited to nuclear safeguards and physical security information which is clearly unclassified.

One major advantage gained by collective implementation of the previous recommendations will be a much clearer understanding of which information must remain Restricted Data. This will allow greater protection because stringent measures can be applied more effectively around sharply defined areas of importance.

### Relying on Protection of Unclassified Information

The provisions for protecting classified material at the confidential level (disclosure could cause damage to national security) are far stronger than the various measures for controlling special categories of unclassified information. Unclassified Controlled Nuclear Information (UCNI) and Official Use Only information, while curbing information requests under the Freedom of Information Act, do not have protective measures consistent with preventing disclosure to determined adversaries. For example, non-U.S. citizens who are employees of a government subcontractor can access UCNI for purposes of bidding on a government contract.[13]   Consequently, if information needs to be withheld for reasons of national security, it should remain classified. Declassifiers should not count on protection against disclosure under any of the controls for unclassified information today, and, as world wide communications systems grow, instant disclosure becomes a real possibility. Classification, as previously noted, can only delay an adversary from obtaining or developing technical information; no delay can be expected when the information is unclassified.

-------------------------------------------------

[13] "Unclassified Controlled Nuclear Information at Sandia National Laboratories," July 1995.

***DRAFT***