**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-181-JLK

MERILYN COOK, *et al.*,

       Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

       Defendants.

_____

**DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO
EXCLUDE EVIDENCE OF PLAINTIFFS' CONSUMER PRICE
INDEX ADJUSTMENT FOR PROPERTY DAMAGES**
_____

       Defendants respectfully submit this reply in support of their motion to exclude evidence of plaintiffs' consumer price index adjustment for property damages.

**I.   PLAINTIFFS CANNOT RECEIVE BOTH PREJUDGMENT INTEREST AND AN INFLATION ADJUSTMENT.**

       Plaintiffs now indicate in a footnote that they also intend to seek prejudgment interest from this Court ***in addition to*** the inflation adjustment they seek from the jury.[1] (Pls.' Mem. at 3 n.1.) Plaintiffs decline to argue their entitlement to an award of prejudgment interest (*id.* ("Plaintiffs will brief the issue of prejudgment interest at the appropriate time, should the

---

[1] Prejudgment interest is an issue of law for the Court, not an issue for the trier of fact. *Colwell v. Mentzer Invs., Inc.*, 973 P.2d 631, 641 (Colo. Ct. App. 1998) ("When interest becomes due in accordance with the provisions of a statute is a matter to be assessed by the trial court, not by the jury.").

occasion arise.")), and defendants will likewise not address the issue in this reply brief.[2] However, the fact that plaintiffs also intend to seek prejudgment interest constitutes yet another barrier precluding them from seeking an additional adjustment in the form of inflation, because prejudgment interest is itself an adjustment for inflation.  "Prejudgment interest compensates a victim of discrimination for the time value of lost money *as well as the effects of inflation*." *Carr v. Fort Morgan Sch. Dist.*, 4 F. Supp. 2d 989, 997 (D. Colo. 1998) (emphasis added); *see also Vance v. Am. Hawaii Cruises, Inc.*, 789 F.2d 790, 794 (9th Cir. 1986) (noting that prejudgment interest was awarded "as a substitute for" an adjustment "to take account of inflation").  Courts recognize that allowing a party to recover both for inflation and for prejudgment interest would result in a double recovery.  For example, in *Felice Fedder Oriental Art, Inc. v. Scanlon*, 708 F. Supp. 551 (S.D.N.Y. 1989), the plaintiffs received prejudgment interest, but also argued that an additional adjustment should have been made on account of inflation.  *Id.* at 558–59.  The court rejected that argument, holding that the plaintiffs "would get an undeserved windfall if inflation were considered."  *Id.* at 559.[3]  Plaintiffs in this case likewise are not entitled to the windfall they would receive if damages were adjusted twice.

---

[2] Defendants reserve the right to oppose prejudgment interest once Plaintiffs finally believe their prejudgment interest is ripe.  Defendants do not waive any rights relating to prejudgment interest.

[3] *See also Kansas v. Colorado*, No. 105, 2000 WL 34508307, at *41 (U.S. Aug 31, 2000) ("Prejudgment interest, as a legal matter, is intended to compensate injured parties both for the time value of the lost money *as well as for the effects of inflation*.") (emphasis added); *McCrann v. U.S. Lines, Inc.*, 803 F.2d 771, 774 (2d Cir. 1986) (stating that the "prejudgment interest rate will exceed the discount rate by roughly the rate of inflation"); *Golden State Transit Corp. v. City of Los Angeles*, 773 F.Supp. 204, 219 (C. D. Cal. 1991) ("The Court finds that use of the CPI is inappropriate, since it has been rejected as a rate for prejudgment interest by all of the other courts which have considered it."); *Carter-Wallace, Inc. v. Hartz Mountain Indus., Inc.*, No. 81 CIV. 458, 1983 WL 1805, at *3 (S.D.N.Y. Apr 13, 1983) (stating that "to allow recovery of both interest and an inflation factor is *considered a double recovery*") (emphasis added); *Duxbury v. Spex Feeds, Inc.*, 681 N.W.2d 380, 392 (Minn. Ct. App. 2004) ("[P]rejudgment
(Continued…)

## II. PLAINTIFFS FAIL TO CITE ANY AUTHORITY FOR THE PROPOSITION THAT PLAINTIFFS ARE ENTITLED TO AN UPWARD ADJUSTMENT OF DAMAGES FOR INFLATION.

Plaintiffs *concede* that there is no direct authority in Colorado law to support their request for a damages adjustment based on inflation. (Pls.' Mem. at 3.) While Plaintiffs criticize (wrongly) Defendants for not citing an authority "consider[ing] an inflation adjustment when awarding damages in a tort claim for diminution in value of real property" (*id.* at 6), Plaintiffs themselves also fail to cite *any* authority on that issue. Yet Plaintiffs, not defendants, bear the burden of proving plaintiffs' damages in accordance with Colorado law.

The authorities that Plaintiffs rely upon do not support the adjustment that they seek. *Board of County Commissioners v. Slovek*, 723 P.2d 1309 (Colo. 1986), contains no discussion of an inflation adjustment, much less of an inflation adjustment where a plaintiff is also seeking a prejudgment interest award. Its only relevance to this issue comes in its admonition that damages to property be measured to reimburse the plaintiffs "for losses actually suffered" and to "be vigilant not to award damages that exceed the goal of compensation and inflict punishment on the defendant." *Id.* at 1316. As discussed in Part III, application of this principle to these circumstances advises *against* Plaintiffs' proposed adjustment based on inflation, because such an adjustment would award Plaintiffs *more* than the losses actually suffered. The other Colorado authority cited by plaintiffs, *Westfield Development Co. v. Rifle Investment Associates*, 786 P.2d 1112 (Colo. 1990), is inapposite because it discusses a statutory award of prejudgment interest,

---

interest compensates the plaintiff for inflation for the period from the claim to the verdict. It is not based on any loss intrinsic to the plaintiff's claim."); *Sterling Freight Lines, Inc. v. Prairie Material Sales, Inc.*, 674 N.E.2d 948, 953 (Ill. App. Ct. 1996) ("Plaintiff's 'inflationary factor' is little more than a thinly veiled attempt to secure prejudgment interest.").

not inflation. In that respect, *Westfield* underscores by implication that plaintiffs cannot seek **both** prejudgment interest and inflation, as plaintiffs are doing here.

Plaintiffs' authorities from outside Colorado (and outside this Circuit) also do not apply to this case. In *Leslie Salt Co. v. St. Paul Mercury Ins. Co.*, 637 F.2d 657 (9th Cir. 1981), the Ninth Circuit held that, ***under "California law,"*** it was not error to take inflation into account in awarding damages for insurance bad faith under the "unique circumstances" of the case, including that "(1) there was a loss which could only be compensated only by replacement cost; (2) there was bad faith on the part of the insurer; and (3) there was a steady rate of inflation during the compensable period." *Id.* at 661. The *Leslie Salt* court cited various California cases in support of its reasoning. *Id.* at 661 & n.6 (citing *Tri-Delta Eng'g, Inc. v. Ins. Co. of N. Am.*, 146 Cal. Rptr. 14 (Ct. App. 1978); *Camrosa County Water Dist. v. Sw. Welding & Mfg. Co.*, 123 Cal. Rptr. 93 (Ct. App. 1975)).

Plaintiffs have not shown that any of these circumstances are present in this case. Furthermore, the dissent in *Leslie Salt* noted that such an adjustment for inflation was unprecedented, even under California law. *See id.* at 663 ("There is not presently any clear California precedent for such an open sesame to damages.") (Poole, J., dissenting in part). Defendants have been unable to locate any case law in the twenty-four years since *Leslie Salt*, in California or elsewhere, citing that decision in support of an inflation adjustment under California law (much less Colorado law).

Finally, *Leslie Salt* did not involve diminution-in-value property damages, but insurance bad faith damages. *Id.* at 661.

Plaintiffs' remaining case, *Law v. National Collegiate Athletic Ass'n*, 185 F.R.D. 324 (D. Kan. 1999), is a ***Clayton Act*** case, and it provides no support for an inflation adjustment at

4

common law or in real property actions.  Even with respect to the narrow context of the Clayton Act, the *Law* court's allowance for an adjustment based on inflation conflicts with two circuit courts and a decision from this district.  *See Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51 (2d Cir. 1971) (holding that Clayton Act did not provide for a damages adjustment), rev'd on other grounds, 409 U.S. 363 (1973); *Locklin v. Day-Glo Color Corp.*, 429 F.2d 873, 876 (7th Cir. 1970) (rejecting damages adjustment to account for "inflationary shrinkage" in Clayton Act case); *Colorado v. Goodell Bros.*, No. 84-A-803, 1987 WL 6771, at *4 (D. Colo. Feb. 17, 1987) (stating in Clayton Act case that "plaintiff requests an upward adjustment in the damage award equivalent to the inflationary shrinkage which has occurred" and "find[ing] that an adjustment for inflation should not be allowed").

Finally, Restatement (Second) of Torts § 913(2) is also counter to plaintiffs' position.  Plaintiffs quote only the second half of this provision.  In full, it reads:  "***Interest is not allowed*** upon an amount found due for bodily harm, for emotional distress or for injury to reputation, but the time that has elapsed between the harm and the trial can be considered in determining the amount of damages."  Restatement § 913(2).  What this means is that, if the compensatory damages have grown or decreased from the time of injury to the time of trial (such as an increased length of time over which a victim of medical malpractice has suffered pain), then that should be considered by the trier of fact.  Section 913(2) does *not* mean that the plaintiff receives an inflation adjustment for this period—to the contrary, § 913(2) provides that such an adjustment is "not allowed."  *Id.  See* Restatement § 913 cmt. c ("The damages given for these harms are usually not referable solely to the hurt sustained at some definite prior time, but embrace all the harm that has been inflicted up to the time of trial as well as, in many cases, that which will be suffered in the future.").  Moreover, § 913(2) applies only to ***personal injuries***,

5

including "bodily harm," "emotional distress," and "injury to reputation," and does not include the ***harms to property*** that Plaintiffs assert in their class trespass and nuisance claims. *Id.* As Plaintiffs have repeatedly stated, this is not a personal injury case. (*See*, *e.g.*, 10/12/05 Trial Tr. at 655 ("This is not a trial for personal injury. Nobody is trying to prove a personal injury in this case.").) Finally, Plaintiffs fail to cite any case relying on Restatement § 913(2) in making an inflation-based damages adjustment, and Defendants have not located any.

Plaintiffs fail to meaningfully distinguish the cases that Defendants cited in their original motion that establish the general rule against adjustments based on inflation. Plaintiffs are correct that in *Bennett v. Allstate Ins. Co.*, 889 F.2d 776 (8th Cir. 1989), and *Robert E. Canty Building Contractors, Inc. v. Garrett Machine & Construction, Inc.*, 608 S.E.2d 280 (Ga. Ct. App. 2004), there is no discussion of an inflation adjustment. (Pls.' Mem. at 5–6.) That is the whole point. Those courts measured damages to property at the time of the loss, making no adjustment for inflation. Plaintiffs point out that the court in *Saden v. Kirby*, 759 So.2d 921 (La. Ct. App. 2000), did not reach the question with respect to "real estate values" (Pls.' Mem. at 6), but fail to address the *Saden* court's rejection of an inflation-based adjustment with respect to "personal property losses." Also, plaintiffs attempt to distinguish *CMSH Co. v. Antelope Development, Inc.*, 223 Cal. Rptr. 605 (App. Ct. 1990), as a "lis pendens proceeding" rather than a "tort case[] wherein the purposes and calculation of damages differ from those in contract disputes." (Pls.' Mem. at 6 (quoting *CMSH*, 223 Cal. Rptr. at 611).) But the "purposes and calculation of damages" in tort cases that the *CMSH* court distinguished were damages "for future medical expenses and loss of earnings." 223 Cal. Rptr. at 610. By contrast, the *CMSH* court rejected taking inflation into account for "past, actual damages," such as those damages that Plaintiffs seek in this action. *Id.* at 611.

### III. DAMAGES SHOULD BE AWARDED BASED ON REAL-WORLD DATA ABOUT HOW PROPERTY VALUES HAVE CHANGED, NOT BASED ON THE "PREDICTIONS" OF THE CPI WHICH EXCLUDE SUCH DATA

As Colorado law makes clear, if any adjustment is to be made to plaintiffs' damages in light of the passage of time, it should be made with reference to the loss that Plaintiffs actually suffered. *See Slovek*, 723 P.2d at 1316 ("The trial court must take as its principal guidance the goal of reimbursement of the plaintiff for *losses actually suffered*.") (emphasis added). Plaintiffs first cite, then depart from, this "broad governing principle" (Pls.' Mem. at 3–4) by proposing a CPI adjustment that bears no resemblance to Plaintiffs' actual financial loss (if any).

It is undisputed that over four thousand class members still owned their land as of 2003 and therefore have received the benefit of that relative appreciation. (Ex. A, Wise Supp. Report Ex. 1.) Computing the damages of these class members with reference to the CPI, rather than real-world property data, would result in a misleading damages amount that does not reflect the loss (or lack thereof) that class members have actually suffered. Assume that the class experienced a $1,000 drop in property values from 1989 to 1995, but that this diminution disappeared due to the announcement of a date of the Rocky Flats cleanup in 1997. A class member who sold in 2005 would have experienced an economic loss of $0 because she experienced a $1,000 drop in 1989-1992 that was completely erased in 1997. Yet under Plaintiffs' proposal, such an individual would still recover a large "inflation adjustment"! That is because Plaintiffs' inflation adjustment is calculated based upon Mr. Hunsperger's damages estimate as of 1995 and ignores the actual experience of class members who continued to own their properties in subsequent years.

Plaintiffs' reliance on Dr. Wise's analysis, though a step in the right direction, is still flawed in that it assumes that the purported damages for the class have grown exactly in proportion with real estate values in the Denver area. (Pls.' Mem. at 8.) Dr. Wise's analysis

7

demonstrates that this assumption is false. It shows that, even if Plaintiffs' claim of a 1989-1992 difference between class and control area properties were correct (it is not), whatever deficit is alleged to have existed between class-area property values and Denver-area property values has *not* remained constant, making it inappropriate to use a one-size-fits-all "property inflation index." Plaintiffs state that "[f]or the ten years from 1993 to 2003, Dr. Wise's real estate sales price index for the *Denver metropolitan area* rose from approximately 120 to approximately 260 . . . ." (Pls.' Mem. at 8.) Plaintiffs omit to mention that, within that same period, Dr. Wise's index for the *class area* rose from to approximately 270, **10 points higher** than the metropolitan area generally.



Thus, any consideration by the jury of post-1995 property values must take into account the real world experience of properties *both* inside and outside the class area. That is to say, like a

8

"general price index," even a "property price index" would not do, because it would not take into account the variation of class properties *relative to* other properties since 1995.

Plaintiffs, of course, have presented their own evidence of post-1995 real world property values, and are free to continue to do so. What they may not do is use a "CPI adjustment as a substitute for such evidence.[4]

Dated: November 21, 2005                                      Respectfully submitted,


/s/ John E. Tangren
One of the Attorneys for the Defendants
David M. Bernick
Douglas J. Kurtenbach
Ellen Therese Ahern
Mark J. Nomellini
John E. Tangren
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636
Phone:  312-861-2000
Fax:      312-861-2200

Joseph J. Bronesky
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Phone:  303-297-2900
Fax:      303-298-0940

Attorneys for ROCKWELL INTERNATIONAL CORPORATION and THE DOW CHEMICAL COMPANY

---

[4] This is particularly true given Plaintiffs' admission that the CPI adjustment does not even begin to take property values into account. (Pls.' Mem. at 7.)

## **CERTIFICATE OF SERVICE**

  I hereby certify that on November 21, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses for the following:

Peter B. Nordberg, Esq.
c/o Karen M. Markert
Apartments at Denver Place, Apt. 2812
1880 Arapahoe Street
Denver, CO 80202
pnordberg@bm.net
kmarkert@bm.net

Gary B. Blum, Esq.
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206
blumg@s-d.com

              /s/ Courtney Biggins_____
              Courtney Biggins (legal assistant)