IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

No. 90–K-181

**MERILYN COOK, et al.,**

    **Plaintiffs,**

        v.

**ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,**

    **Defendants.**

### PLAINTIFFS' OBJECTIONS TO DEFENDANTS' NOVEMBER 20 MOTION TO ADMIT EXHIBITS

**A.    Learned Treatises (DX 463, 729, 732, 733)**

DX 463, 729, 732, 733 are scientific articles (or in the case of DX 733, a letter published in a scientific journal) that are inadmissible as hearsay and as unsponsored expert opinion under Fed. R. Evid. 702. Although the Federal Rules of Evidence permit learned treatises to be used for impeachment, see Rule 803(18), the Rule also states that "the statements may be read into evidence but may not be received as an exhibit." The drafters were careful not to let cross-examination serve as a back door to allow otherwise inadmissible evidence to be admitted and given to the jury.

**B.    Written Boards (DX 1009z, 1010z, 1274z, 1416z)**

Exhibits DX 1009z, 1010z, 1274z, and 1416z, are boards used with various witnesses. They all simply transcribe defense counsel's argument, rather than presenting actual admissible evidence. No explanation is offered for the various numbers or jottings written on the boards, and some of the

information is illegible. For most of these exhibits it is nearly impossible to determine where in the transcript these boards were used with the various witnesses. These boards can offer no assistance to the jury and are more likely to mislead and confuse than to inform. They should therefore be excluded under Federal Rule of Evidence 403.

**DX 1009z** and **DX1010z** purport to summarize Merilyn Cook's testimony about her properties. The information is confusing and potentially misleading. DX 1010z is especially problematic because the statement on the right side of the document, "No Loss As A Result of Raid," is defense counsel's own statement, not Ms. Cook's testimony.

**DX 1078z** is a board used with Dr. Radke's testimony. As the board apparently purports to describe Dr. Radke's methodology, it is misleading and inaccurate. Dr. Radke analyzed sales prices from 1988 through 1995, not just the years 1989 and 1990 depicted in this exhibit. Also, "Factor A/B" and "C" (which, though undefined here, apparently stand for the independent variables that Dr. Radke used in his analysis) are misleading: Dr. Radke considered many more than three independent variables.

**DX 1274z** presents a misleading description of Drs. Flynn and Slovic's methodology. For example, under the heading "Impact," the exhibit purports to divide graphics representing people into a "Survey Group" and a "Buyers Group." However, the survey does not depict two such groups. Instead, the survey specifically targeted people who were likely market participants; respondents would be chosen only if they "(1) have bought a home in the past five years, or (2) have plans to purchase a home in the next couple of years, or (3) have been actively in the market for a home some time in the past five years." P-1355 (Survey Report) at 2 (attached as Ex. A). The graphic also

shows a certain number from each group in red who are labeled, "Investigated." It is confusing as to whether these numbers represent survey respondents (*i.e.* people whose opinions were investigated for the survey), or the numbers of people who had investigated the allegations surrounding the FBI raid. Assuming that "investigation" has the latter meaning, there is no evidence in the record to show how many people – either questioned by the survey or otherwise – had actually investigated the allegations in the FBI raid. *See* Nov. 7 Tr. at 4308 ("Q. You could have had some people in the survey group who cared enough to do an investigation to find out what really happened at Rocky Flats and whether there was risk. There could be people in the group that would fall into that category, right? A. It's possible. Q. You never found out, did you? You never found out who within this group actually became knowledgeable about Rocky Flats, correct? A. We didn't investigate that.") As a result, there is simply no basis for the assertion in this exhibit that twice as many people in the "Buyers Group" would have investigated Rocky Flats than in the "Survey Group," just as there is no evidence that far fewer people in the "Buyers Group" would have not never heard of Rocky Flats than in the "Survey Group."

**DX 1416z** is completely incomprehensible. Even if the jury has the patience to sit down with the transcript (the relevant section appears to be roughly Nov. 16 at 5517- 5541) and try to decipher this exhibit, the information contained therein is misleading in a number of respects. First, as Dr. Cochran pointed out, the chart lists the wrong time frames for routine releases (denoted in blue as "ROUT" on DX 1416z) and for the 903 pad releases (the blue "903"). *See* Nov. 16 Tr. at 5517 & 5518. Dr. Cochran also disagreed with the chart's implied message that dose and risk from these events are time-limited (Nov. 16 Tr. at 5520); instead, he testified that the dose and risk continue into

3

the future once the material has been released (e.g. Nov. 16 Tr. at 5519).

**C.     Other Graphics (DX 1409, 1427, 1439)**

**DX 1409**, which purports to summarize the results of a risk assessment study but cites no source for the information, is expert testimony masquerading as a demonstrative.  Dr. Wing did not subscribe to any of the information in this exhibit.  It is therefore inadmissible as hearsay and as expert opinion governed by Fed. R. Evid. 702.

**DX 1427**, a chart taken from Dr. Wing's study of Oak Ridge workers, is irrelevant.

**DX 1439**, which shows the flow of knowledge about radiation science between various organizations, is misleading because it omits the one source of information that was the focus of Dr. Wing's report:  the Department of Energy and its contractors.  As Dr. Wing testified regarding one of the groups represented on this exhibit, "A   I believe that all of the members of the committee relied upon the opportunities for research that they were given by the funders of radiation research. They relied on information such as I relied on when I was involved in studies of Oak Ridge workers. We relied on information that we were given by contractors and by the government. So if that information were inadequate, if it were selected in a way that affected the outcome of the research, I would say that the work that we do that suffers from that is biased." Nov. 7 Tr. at 5795.)

Respectfully submitted,

Dated: November 21, 2005                     /s  Jennifer MacNaughton
                                                                       Merrill G. Davidoff
                                                                       Peter Nordberg
                                                                       Jennifer MacNaughton
                                                                       BERGER & MONTAGUE, P.C.

        1622 Locust Street  
        Philadelphia, PA 19103  
        (215) 875-3000  
        Fax (215) 875-4604  
        jmacnaughton@bm.net  

        Gary B. Blum  
        Steven W. Kelly  
        SILVER & DEBOSKEY, P.C.  
        1801 York Street  
        Denver, CO 80206  
        (303) 399-3000  

        *Attorneys for Plaintiffs*