**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-181-JLK

MERILYN COOK, *et al.*,

        Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

        Defendants.

___

**DEFENDANTS' OBJECTIONS TO VIDEO EXHIBITS SOUGHT TO BE USED BY PLAINTIFFS ON NOVEMBER 22, 2005**
___

Defendants hereby file their Objections to videoclips that plaintiffs have indicated will be offered on November 22, 2005.

**I.  OBJECTIONS MADE WITH RESPECT TO PREVIOUS MOTIONS *IN LIMINE* WHICH THE COURT HAS ALREADY DENIED**

    **A.  Motion in Limine No. 1 (FBI Raid)**

Defendants seek to preserve this objection to V051b, V052c, V189.

    **B.  Motion in Limine No. 2 (Grand Jury Investigation)**

Defendants seek to preserve this objection to V189.

    **C.  Motion in Limine No. 3 (Rockwell's Guilty Plea)**

Defendants seek to preserve this objection to V189.

**D.    Motion in Limine No. 6 (Substances Other Than Plutonium)**

Defendants seek to preserve this objection to V189.

**E.    Motion in Limine No. 7 (Worker Health and Safety)**

Defendants seek to preserve this objection to V189, V012b.

**F.    Motion in Limine No. 8 (Conditions Wholly Within Buildings)**

Defendants seek to preserve this objection to V189, V012b.

**G.    Motion in Limine No. 9 (MUF)**

Defendants seek to preserve this objection to V189.

**H.    Motion in Limine No. 10 (Past Risks that Never Occurred)**

Defendants seek to preserve this objection to V052c, V189, V012b.

**I.    Motion in Limine No. 11 (Plutonium Practices and Incidents)**

Defendants seek to preserve this objection to V189, V012b.

**J.    Motion in Limine No. 12 (Not Classwide)**

Defendants seek to preserve this objection to V051b, V052c, V189, V012b.

**K.    Motion in Limine No. 13 (Lay Witness Opinion)**

Defendants seek to preserve this objection to V189, V012b.

**L.    Motion in Limine No. 14 (Other Lawsuits)**

Defendants seek to preserve this objection to V189.

**II.   OBJECTIONS MADE WITH RESPECT TO PREVIOUS MOTIONS *IN LIMINE* WHICH THE COURT HAS ALREADY GRANTED**

**A.    Motion in Limine No. 2 (Grand Jury -- granted in part)**

This ruling applies to V189.

### B. Motion in Limine No. 16 (Cleanup Costs)

This ruling applies to V189.

## III. ADDITIONAL OBJECTIONS WITH RESPECT TO WHICH THE COURT HAS NOT ALREADY RULED

**V012b**: Defendants object to V012b on grounds of hearsay, relevance, and because it relates to worker safety issues. Although this video was prepared by the Rocky Flats Communications Office, it primarily relates to media coverage of two events. The first event occurred in 1988 when a DOE inspector unknowingly entered an area inside building 771 where respirators were required without wearing a respirator. As a result of this incident, building 771 was temporarily shut down. This event occurred solely within a building and is nothing more than a worker exposure issue. Such worker exposure issues are completely irrelevant to any issues in this case. The second event occurred a few weeks later in 1988 when the Governor of Idaho refused to allow rail cars of transuranic waste from Rocky Flats to enter the State of Idaho for storage at INEL. The rail cars eventually returned to Rocky Flats. This event also has no relevance to any issue in this case. The rail cars contained properly stored and packaged waste that never leaked or got offsite. The fact that the rail cars were sent back to Rocky Flats and sat onsite for a period of time is completely irrelevant. Moreover, the video contains clips of news coverage of both events that are rife with hearsay and inflammatory statements made by protestors at Rocky Flats. These news clips should be excluded as hearsay, hearsay within hearsay and because they contain material that is more prejudicial than probative under Fed. R. Evid. 403.

**V052c**:  Defendants object to V052c on the ground that it simply discusses the Tiger Team result reports and the Scientech Criticality Assessment results.  Both reports have already been admitted into evidence, and Admiral Watkins testified about the former, while Drs. Budnitz and Cochran testified about the latter.  V052c is therefore cumulative and a waste of the jury's time.

**V189**:  Defendants object to plaintiffs exhibit V189 on many grounds.  V189 is an excerpt from a December 20, 1994 episode of ABC's Nightline.  A transcript of this video clip is attached. (See Tab A)  This video is irrelevant, speculative, lacking in foundation, contains rampant hearsay (including hearsay within hearsay), and it is unduly prejudicial.

Much of the information and material covered in this video involve a 1994 plant tour of and events at the Rocky Flats plant occurring long after Rockwell and Dow had both left the plant site.  For example, the video graphically describes an incident under EG&G management where an EG&G worker disregarded safety codes (*id.* at 3), and depicts drum sampling procedures that were conducted by EG&G in 1994 -- prejudicially describing this EG&G drum sampling procedure as "an endless game of Russian roulette."  (*Id.* at 1)  The video also contains comments from Ray Geyer, purportedly a long-term plant employee, describing the risks, circa 1994, of various can storage on the plant site.   (*Id.* at 2)  This tour depicting EG&G management, conduct and activities and similar events and conditions in 1994 are irrelevant to Dow or Rockwell's liability.  Furthermore, the vast majority of the video, including the entire first two segments (*see id.* at 1-3), relate to conditions within plant buildings and have nothing whatsoever to do with offsite plutonium contamination or risk.

4

Examples of foundational problems include the video's reliance on commentary from Mark Silverman (from whom the Court has already excluded testimony as irrelevant, among other reasons). Silverman was a DOE employee who managed the DOE's Rocky Flats field office from 1993-1996 (while EG&G was the plant contractor, years after Defendants had stopped operating the facility). Silverman has extremely limited knowledge of the Dow and Rockwell eras at the plant. He could not even name basic Rocky Flats production buildings' functions at his deposition. The Court found that he "is not an expert on any plutonium issues." (Order re Silverman Designations, at 3) He therefore lacks foundation to talk about issues concerning Dow and Rockwell plant operations. (*See* Silverman Dep. at 98:14-99:7; *see also id.* at 244:7-24 (admits no basis to answer questions about handling and disposal of hazardous materials and compliance with environmental laws at Rocky Flats in the 1970s and 1980s)) Even Silverman's limited knowledge of Dow and Rockwell conduct is based on hearsay. (*See* Silverman Dep. at 111:19-113:3 (describing people he talked to in order to find out about past operations)) *See also* comments of EG&G's Anson Burlingame regarding plutonium processing and movement during the execution of the plant's cold war mission (12/20/94 Nightline transcript at 1-2), activities that took place years, if not decades before Burlingame ever came to the plant. Similarly, plant workers' comments about the plant contractor's motivation or production goals (*see, e.g., id.* at 1) and commentator Dave Marash's comments about the migration of purported plant groundwater contamination (*id.* at 3) are lacking in any foundation whatsoever.

The unduly prejudicial nature of this video is evident throughout.  Several examples of the inflammatory content of this video include:

- likening "what happened at Rocky Flats" with "[t]he case of Karen Silkwood" as far as it's ability to shock the nation (*id.* at 1)
- shots of a young girl playing in a residential housing development construction site while Nightline commentator discusses the offsite area of concern and developers' greed with Paula Ellofson-Gardine (*id.* at 3-4)
- descriptions of "scary schoolroom [nuclear safety] drills when we huddled under our desks" (*id.* at 4)
- references to the "danger of the mushroom cloud looming" (*id.*)
- hearsay accounts of Rocky Flats worker exposure incidents (*id.* at 1-2)
- referencing "a whole catalog of illnesses associated to radiation and toxic chemicals" (*id.* at 2)
- a worker's observation that "[a] lot of my good friends that I worker with in the '50s and '60s are real bad ill" (*id.*)

The video also includes numerous unfounded, prejudicial and speculative comments about possible risks from the circa 1994 plant conditions under EG&G such as Silverman's speculative comments that "the cleanup  . . .[is] going to be more hazardous and more dangerous for the workers, for the workers first of all, than when we were in actual operations." (*Id.* at 2)  Indeed, this Nightline episode is designed for dramatic prejudicial effect, as the contents and musical effects illustrate.[1]

In addition, this video contains materials that violate the Court's evidentiary rulings, including those barring information related to other lawsuits, worker health and safety issues,

---

[1] In the video, commentator Cokie Roberts also falsely states that is "little disagreement on the dangers within the facility." (*Id.* at 3)  As is evidence by the testimony to date in this lawsuit, any such conclusions are strenuously debated.

cleanup costs and the grand jury investigation. In particular, the video specifically references a lawsuit brought against Rockwell by Karen Pitts and others. (*Id.* at 2) It discusses various alleged worker exposure-related medical conditions and health problems (*id* at 2-3), purported difficulties of Rocky Flats workers in obtaining health insurance (*id.* at 2), and possible worker exposure and personal injury lawsuits and claims against Rockwell (*id* at 4).

The violations of the court's orders regarding grand jury matters are particularly troublesome in this video. The video depicts several purported former Rocky Flats grand jurors talking in a roundtable fashion about their experiences as grand jurors (*id.* at 4 ("I had nightmares, you know. I couldn't sleep at night, thinking about what I heard for a whole week in that jury room."), their desire to indict "Rocky Flats officials from both Rockwell International and the Energy Department"(*id.*), the grand jurors' "unanimous rebellion. . . against federal prosecutors" (*id.*), and threats of prosecution against grand jurors for violating grand jury secrecy rules (*id.* ("we'd like to answer. . . we could be doing 209 years [in jail] for doing that"; "threats of imprisonment silenced the grand jurors"). The Nightline video even contains lengthy quotes about the grand jury saga from former investigative reporter (and current private investigator for plaintiffs' counsel) Ryan Ross. (*Id.*) The Nightline episode goes on to explain that a congressional investigation was undertaken into prosecutorial impropriety and "the case of the silenced grand jury, blasting the Department of Justice . . . for quashing individual indictments." (*Id.*) This is all the more prejudicial in that the video then quotes a former plant employee who speculates that the Rockwell plea and related settlement provisions "may shield [Rockwell and the DOE] from liability for damages to workers"; "it may be very difficult for my co-worker to

7

get any kind of restitution for the damages done to their health because of the global immunity give to Rockwell in that settlement." (*Id.*).

The video also contains undisclosed expert testimony such as that from Gregg Wilkinson discussing a study he conducted in 1987 (*see id.* at 2-3) and the comments of individuals such as Gale Biggs and Ken Korkia regarding soil sampling, wind patterns and purported offsite migration of plant materials. (*Id.* at 3-4)  Notwithstanding that none of these individuals have been disclosed or offered as qualified experts in this case, this type of evidence is improper, as are the many other seemingly scientific assertions made in the video.  None of these assertions is substantiated by anyone who has been qualified as an expert in this trial and none meets *Daubert* reliability standards.  Plaintiffs should not be able to use this videotape in lieu of real scientific evidence.

Dated:  November 22, 2005                                   Respectfully submitted,


/s/ Stephanie A. Brennan_____
One of the Attorneys for the Defendants
David M. Bernick
Douglas J. Kurtenbach
Ellen Therese Ahern
Mark J. Nomellini
Stephanie A. Brennan
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636
Phone:  312-861-2000
Fax:     312-861-2200

Joseph J. Bronesky
SHERMAN & HOWARD L.L.C.

8

633 Seventeenth Street, Suite 3000  
Denver, Colorado 80202  
Phone:  303-297-2900  
Fax:      303-298-0940  

Attorneys for ROCKWELL INTERNATIONAL CORPORATION and THE DOW CHEMICAL COMPANY

**CERTIFICATE OF SERVICE**

  I hereby certify that on November 22, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses for the following:

Peter B. Nordberg, Esq.
c/o Karen M. Markert
Apartments at Denver Place, Apt. 2812
1880 Arapahoe Street
Denver, CO 80202
pnordberg@bm.net
kmarkert@bm.net

Gary B. Blum, Esq.
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206
blumg@s-d.com

                /s/ Kari Knudsen_____
                Kari Knudsen (legal assistant)