IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-181-JLK

MERILYN COOK, *et al.*,

        Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

        Defendants.

_____

**DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF DR. JOEL SELBIN**
_____

**I.   INTRODUCTION**

      Defendants move to exclude the testimony of Dr. Joel Selbin.  Dr. Selbin is a Boulder resident whose first involvement with Rocky Flats began in 1998 when he served on the Radionuclide Soil Action Level Oversight Panel ("RSALOP"), a citizens' panel formed to provide input on the remediation of Rocky Flats and funded by the Department of Energy ("DOE").  (*See* Ex A, Selbin Dep. at 12–13, 48).  Dr. Selbin apparently will testify to a single issue—that, in his personal opinion, the DOE's support for RSALOP in 1998 was a "sham" intended by DOE to mislead citizens into thinking that DOE was open to citizen input on soil remediation levels when in fact, it was not.  (*See id.* at 88; Plaintiffs' Witness List 9/29/05 ("[Dr. Selbin] is expected to testify that the committees were shams, and that DOE attempted to evade its responsibility to clean up the contamination left by Dow and Rockwell.").)

      The basis for Selbin's personal opinion apparently is that the RSALOP hired the Radiological Assessment Corporation ("RAC") to recommend a soil action level.  (*See* Selbin

Dep. at 51.)  RAC recommended a level of 35 picocuries per-gram.  (*See id.* at 52.)  The RSALOP tendered RAC's recommended action level to the DOE, but the DOE, Colorado Department of Health and the Environment ("CDPHE"), and the Environmental Protection Agency ("EPA") settled on a level of 50 picocuries per gram.  (*See id*. at 60; 107. )  Plaintiffs apparently seek to have Dr. Selbin further testify that the three agencies' soil action level determination was based solely on available funding and that they never intended to accept the panel's input.  (*See id.* at 116.)

Defendants seek to exclude this testimony on several grounds.  ***First***, on the sole issue which Plaintiffs' apparently seek to elicit Dr. Selbin's trial testimony—that the rejection of the RAC-recommended soil action level was pretextual—Dr. Selbin is not qualified to offer lay witness testimony; he has no personal knowledge of any facts of the reasons that DOE, EPA, and CDPHE declined to adopt the RAC recommendation.  *See* Fed. R. Evid. 701.  ***Second***, the sole testimony that Dr. Selbin intends to offer is his own personal opinion that is not based on his own perceptions but on inadmissible hearsay.  ***Third***, Dr. Selbin's testimony is irrelevant.  ***Fourth***, the probative value of his testimony is outweighed by its prejudicial effect.  ***Fifth***, Dr. Selbin's testimony is based, in part, on the costs of remediation.  The Court has barred such evidence.  ***Sixth***, to the extent that Dr. Selbin seeks to offer expert opinions, he should be precluded from doing so.  Plaintiffs never disclosed Dr. Selbin as an expert, never have sought to have Dr. Selbin qualified as an expert, never have submitted an expert report for him and have represented that Dr. Selbin will not offer expert opinion testimony at trial.  (*See* Ex A, Selbin

Dep. at 7 ("Dr. Selbin is not being offered as an expert witness."); *see also* Fed. R. Evid. 702; Fed. R. Civ. P. 26.).)[1]

## II.   DR. SELBIN LACKS THE PERSONAL KNOWLEDGE NECESSARY TO ADMIT HIS TESTIMONY AS A LAY WITNESS.

Dr. Selbin's testimony must be admissible under Federal Rule of Evidence 701 to be presented to the jury.  Lay witness testimony "is limited to those opinions or inferences which are [] rationally based on the perception of the witness."  Fed. R. Evid. 701.  This limitation "is the familiar requirement of first-hand knowledge or observation."  *Id.* (advisory committee's note).  At his deposition, Dr. Selbin admitted that he "was not in any direct way involved in Rocky Flats" and has "never actually been to Rocky Flats, but read as much as was—well, not everything that was published about it, but read about what was going on at Rocky Flats."  (Ex. A, Selbin Dep. at 12.)  Dr. Selbin's only connection to Rocky Flats began in 1998 when he agreed to serve on RSALOP—long after Dow and Rockwell ceased operation of the plant.  (*See id.* at 13.)  RSALOP had been given $500,000 by DOE to develop its own recommended soil action level.  (*See id.* at 48–49.)  RSALOP hired RAC to come up with an action level.  (*See id.* at 51.)  In February 2000, RAC recommended a 35 picocurie per gram action level, which RSALOP then recommended to DOE, the EPA and the CDPHE.  (*See id.* at 60.)

---

[1]Plaintiffs' counsel representing Dr. Selbin at his deposition specifically made clear that "Dr. Selbin is not being offered as an expert witness."  (Ex A, Selbin Dep. at 7; *see also id.* at 8 ("Again, let's put a continuing objection on . . . [defendants'] questions as to whether or not he holds himself out to be an expert.").)  Moreover, Dr. Selbin testified:  "I'm not an expert witness is my understanding."  (*Id.* at 11; *id.* at 8–10 (Selbin is not an expert in "epidemiology," "radiation health effects," "soil sampling," "radiobiology," or "risk assessment," among other things).)  Additionally, Selbin has not been "qualified as an expert by knowledge, skill, experience, training or education," *see* Fed. R. Evid. 702, nor have Plaintiffs ever made the requisite expert disclosure or provided an expert report under Federal Rule of Civil Procedure 26(a)(2).

Dr. Selbin testified at his deposition that, in his own opinion, "money," not "concern for public safety," caused the DOE, EPA and CDPHE to reject RSALOP's recommended soil action level of 35 picocuries per-gram in favor of a 50 picocurie per-gram standard. (*Id*. at 65, 67, 116–117). Yet, Dr. Selbin admitted that he had no first-hand knowledge of what consideration the agencies gave to the soil action level recommendations. (*Id.* at 168 ("[Y]ou don't know, do you, what, if any consideration they actually gave the RAC recommendation? . . . No, I don't. I don't know. They presumably—again, I'm just guessing—they talked amongst themselves and said, Hey, we can't do this with the money we have, and therefore we better keep going."); *id.* at 116 ("[Q:] Do you know whether there were any meetings that the EPA, CDPHE and DOE had where they discussed the RAC Task 5 recommendation of 35 picocuries per gram? [A:] I can only conjecture that they must have, but I was not aware of them, and I certainly wasn't invited to any of those meetings.").) Rather, as shown below, Dr. Selbin testified that his "personal" opinion that the EPA, CDPHE and DOE cleaned up the soil only to a certain level due to the money available was based solely on two hearsay items: an article written by community activist Leroy Moore and a statement made to Dr. Selbin by a social acquaintance and RSALOP member who also was a DOE employee. (*Id.* at 122–23.) Thus, Dr. Selbin's testimony that the RSALOP was a "sham" is not based on personal knowledge, as required by Federal Rule of Evidence 701.

### III. DR. SELBIN'S TESTIMONY IS BASED ON HEARSAY.

Dr. Selbin's personal opinion that the EPA, DOE and CDPHE limited their soil cleanup efforts based on funding is based solely on hearsay and hearsay within hearsay. In his deposition, when asked for the basis for his statements, Dr. Selbin directed defense counsel to an article by Leroy Moore and a statement made to him by an RSALOP member:

4

> Q: And again, going back to the article by Mr. Moore, that's the basis for that statement, correct?
> A: Yes, and other statements by members of the committee. . . . I got to know one of the members from the [DOE]. We became friendly and actually saw each other occasionally at parties of mutual friends. And he confided in me . . . You know, Joel, you're absolutely right about the need for better cleanup, but we can't do it be because we don't have the money and can't get the money. We can't get any more money.

(*Id.* at 122–23; *id.* at 75–76 ("So it's Leroy's article that you read that gave you your belief that there was this prior agreement? Exactly."); *see also* Ex. B.) Dr. Selbin further testified that it was not Leroy Moore's article alone that formed the basis for his conclusion—but also an article that Leroy Moore <u>cited</u> in his article. (*See id.* ("Well, it's in his article, but he has a specific reference where it came from, and that is another article that was put together describing the citizen input into Rocky Flats.").) Thus, his personal opinions are not just based on hearsay, but hearsay within hearsay.

These out-of-court statements to which Dr. Selbin testified are hearsay not falling within any exception. *See* Fed. R. Evid. 802. Because they form the basis for the sole topic of his trial testimony, his testimony should be excluded entirely.

## IV.    DR. SELBIN'S TESTIMONY IS IRRELEVANT.

Dr. Selbin's testimony should be excluded as irrelevant. *See* Fed. R. Evid. 401. He was not involved with Rocky Flats until 1998, and his testimony has absolutely nothing to do with the actions of Dow or Rockwell. (*See* Ex. A, Selbin Dep. at 153–54.) He is not an expert, nor does he have personal knowledge of any fact in issue. He has never been to Rocky Flats (*see id.* at 12), never done any study on the movement of plutonium at Rocky Flats (*see id.* at 145), never participated in the taking of any environmental samples at Rocky Flats (*see id.* at 113), and never even looked at any of the off-site soil sampling studies (*see id.* at 143–44).

5

## V. DR. SELBIN'S TESTIMONY IS UNDULY PREJUDICIAL UNDER RULE 403.

The main thrust of Dr. Selbin's testimony is that the EPA, DOE and CDPHE did not set an appropriate level for remediation of soil at Rocky Flats. However, as discussed above, Dr. Selbin is not an expert in any matter relevant to this case. Any testimony he would give on the appropriateness of the clean-up would be wholly improper and only prejudice and mislead the jury. Dr. Selbin's utter speculation about why the EPA, DOE and CDPHE accepted one soil recommendation over another and whether that decision was proper lacks any probative value. The potential that the jury will punish Dow and Rockwell for allegedly "sham" actions taken by DOE, CDPHE and the EPA far outweighs any possible probative value that Dr. Selbin's testimony could have. It will only confuse and mislead the jury and waste the Court's time.

## VI. DR. SELBIN'S TESTIMONY WILL RUN AFOUL OF THE COURT'S ORDER ON THE COSTS OF REMEDIATION.

Dr. Selbin testified in his deposition that his personal opinion of the true reasons for the rejection of the 50 picocurie per-gram soil action level was based, in part, on his belief that only 7% of the $7 billion allotted for the clean-up of Rocky Flats went to the clean-up of the soil. (*See id.* at 68.) Such statements regarding clean-up costs are barred by this Court's ruling on Defendants' Motion in Limine No. 16 related to the costs of remediation.

For the foregoing reasons, Defendants ask that the Court strike Dr. Selbin's testimony.


Dated: December 1, 2005                           Respectfully submitted,



                                                  /s/ Stephanie A. Brennan_____

One of the Attorneys for the Defendants
David M. Bernick
Douglas J. Kurtenbach
Ellen Therese Ahern
Mark J. Nomellini
John E. Tangren
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636
Phone:  312-861-2000
Fax:     312-861-2200

Joseph J. Bronesky
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Phone:  303-297-2900
Fax:     303-298-0940

Attorneys for ROCKWELL
INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY

**CERTIFICATE OF SERVICE**

  I hereby certify that on December 1, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses for the following:

Peter B. Nordberg, Esq.
c/o Karen M. Markert
Apartments at Denver Place, Apt. 2812
1880 Arapahoe Street
Denver, CO 80202
pnordberg@bm.net
kmarkert@bm.net

Gary B. Blum, Esq.
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206
blumg@s-d.com

               /s/ Kari Knudsen_____
               Kari Knudsen (legal assistant)