## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

### No. 90-cv-181-JLK
_____

MERILYN COOK, et al.,

      **Plaintiffs,**

         **v.**

ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,

      **Defendants.**
_____

### PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY
### FROM DR. SHIRLEY FRY, DR. HELEN A. GROGAN, & MR. PAUL G. VOILLEQUÉ
_____

Plaintiffs respectfully move to exclude the testimony of Dr. Shirley Fry, Dr. Helen A. Grogan, and Mr. Paul G. Voillequé. All three are undesignated experts who have never submitted reports under Fed. R. Civ. P. 26(a)(2)(B) and for whom defendants did not comply with the Court's pretrial deadlines for expert discovery. Admission of expert testimony from these witnesses would be prejudicial to plaintiffs and would violate Fed. R. Civ. P. 37(c)(1).

### I.  COMPLIANCE WITH MOTIONS PRACTICE ORDER

Pursuant to the Order Limiting Motions Practice During Trial (Nov. 10, 2005) (the "Motions Practice Order") [Ct. Rec. 1626], plaintiffs make the following representations.

### A.  Timeliness of Motion

Under the defendants' most recent witness schedule, dated November 29, 2005 [Ct. Rec. 1718], none of the three witnesses at issue will testify within the next four trial days.

### B.  Prior Motions and Rulings

### 1.  Dr. Fry

Plaintiffs did not raise any issue concerning Dr. Fry prior to the Court's pretrial deadlines for *Daubert* motions because defendants did not identify Dr. Fry as a witness until October 2005. When defendants did identify her, as a "rebuttal" witness to Dr. Wing, plaintiffs promptly challenged her designation on grounds including those raised in this motion.  The Court issued the following ruling from the bench:

> THE COURT:  Well, they're not offered as expert witnesses, they're offered as rebuttal witnesses, and it's a question of when they may be called, and if they are to be called in the defense case and not limited to solely as rebuttal witnesses, then you can take their depositions.  If all they're going to do is stand up and say, we know Wing and he's a nut, I -- no disrespect intended -- but I'm just trying to express myself.  If that's what they're going to do, then that's fine.  They can call rebuttal witness to do that.

*See* Tr. (10/7/05) at 349-54.

Plaintiffs have not yet had any discovery concerning Dr. Fry (her deposition is scheduled for this week).  For that and other reasons, including the absence of any expert report from Dr. Fry, plaintiffs cannot be sure precisely what the scope of Dr. Fry's proposed testimony may be. However, to the extent, if any, that the Court's ruling was intended to permit Dr. Fry to offer expert testimony despite defendants' noncompliance with Rule 26(a)(2)(B) and the Court's pretrial expert disclosure and discovery deadlines, plaintiffs respectfully renew their objection.  There was no briefing in connection with the Court's earlier ruling, and plaintiffs believe that fuller consideration of the record may lead the Court to conclude that expert testimony from Dr. Fry should be barred under Rule 37(c)(1).

## 2.  Dr. Grogan

Plaintiffs did not raise any issue concerning Dr. Grogan prior to the Court's pretrial deadlines for *Daubert* motions because defendants did not identify Dr. Grogan as a witness until November 2005.  *See* Defendants' Witness List (Nov. 23, 2005) [Ct. Rec. 1714].  The Court has not previously ruled on Dr. Grogan's testimony.

## 3.  Mr. Voillequé

Plaintiffs did not raise any issue concerning Mr. Voillequé prior to the Court's pretrial deadlines for *Daubert* motions because defendants did not identify Mr. Voillequé as a witness until November 2005.  *See* Defendants' Statement Concerning Its [sic] Trial Witness List (Nov. 11, 2005) [Ct. Rec. 1630].  The Court has not previously ruled on Mr. Voillequé's testimony.

## C.  Potential Future Motions

Not yet having deposed Dr. Fry or Mr. Voillequé, plaintiffs cannot determine what grounds may emerge for additional motions concerning their testimony, including but not limited to challenges under Fed. R. Evid. 403 and 702.  Likewise, plaintiffs have only just had an opportunity to depose Dr. Grogan, on Friday, December 2, 2005, and the ink is still drying on her 197-page deposition transcript – to which plaintiffs are, however, already devoting assiduous study.  If any additional motions are warranted for these witnesses, plaintiffs will file them as soon as practicable.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

## A.  Dr. Fry

According to her internet bio,[1] Dr. Shirley Fry is an M.D. and also holds a master's degree in public health from the University of North Carolina's Department of Epidemiology.  From 1980

---

[1]  *See* <http://www.orau.org/visitor/history/fry.htm> (visited Dec. 3, 2005).

until her retirement in 1995, she was assistant director of the Medical Sciences Division at Oak Ridge Associated Universities ("ORAU").  She also served as director of ORAU's Center for Epidemiology Research from 1984 to 1991.  She has reportedly authored a number of publications on the acute and long-term health effects of radiation.

These credentials may or may not qualify Dr. Fry to testify as an expert.  But plainly, she is not being offered as a fact witness.  There is no indication that Dr. Fry possesses personal knowledge of any events relevant to this lawsuit.  (Defendants have said that Dr. Fry once refused to be listed as a co-author on an article of Dr. Wing's, but that would not be probative on any material issue in this lawsuit, except to the extent that her refusal was based on alleged expertise in epidemiology or some allied discipline.)  She is being offered to testify about epidemiology.  Dr. Fry should be barred from offering expert testimony, because defendants have offered no report from Dr. Fry, nor have they otherwise complied with the Court's pretrial deadlines for expert disclosure and discovery.

Indeed, defendants first identified Dr. Fry as a potential witness only after the Court's recent denial of defendants' renewed motions to exclude testimony from Dr. Wing.  *See* Tr. (10/7/05) at 350 ("We've identified two witnesses to respond to Dr. Wing.  They are Shirley Fry, who used to work at the Oak Ridge Associated Universities, and is [eminently] familiar with Dr. Wing's work . . . .").[2]  The rationale given was that defendants were surprised by Dr. Wing's inclusion on plaintiffs' witness list and would be prejudiced unless now afforded an opportunity to develop testimony in response to Dr. Wing's.  The facts, however, are that Dr. Wing's inclusion was no

_____

[2]  The other witness who defendants said would rebut Dr. Wing's testimony was an epidemiologist identified only as "Dr. Hoel."  *See* Tr. (10/7/05) at 350.  Dr. Hoel, however, apparently has been withdrawn; his name does not appear on defendants' subsequent witness lists.  *See* Defendants' Witness List in Alphabetical Order (Nov. 23, 2005) [Ct. Rec. 1714].

surprise, and that defendants had almost a decade to develop expert testimony in response to Dr. Wing's report but either failed to do so or failed to disclose it.

The relevant procedural history begins with the Court's Scheduling Order of December 22, 1994 [Ct. Rec. 440], in which the Court directed the parties to "identify testimonial experts and the subject matter of their expected testimony" by May 5, 1995. *Id.* at 2. Plaintiffs complied, identifying Dr. Wing in their May 1995 filing [Ct. Rec. 550]. When defendants filed their own disclosure [Ct. Rec. 551], they did not identify Dr. Fry.

Expert reports were then served in 1996. Plaintiffs served a report from Dr. Wing. Defendants deposed Dr. Wing at length and moved to exclude his testimony under *Daubert* in 1997. Dr. Fry remained meanwhile undisclosed.

On December 10, 2003, in compliance with the Court's directives, the parties filed a joint status report [Ct. Rec. 1218], which included their tentative witness lists. Dr. Wing's name was inadvertently omitted from plaintiffs' list. Defendants, for their part, did not list Dr. Fry.

On July 24, 2004 – more than a year before trial – plaintiffs wrote defendants and expressly placed them on notice of plaintiffs' continuing intention to call Dr. Wing:

> We had mentioned to defendants that in light of Dr. Radford's death, plaintiffs might seek a new expert to comment generally on the health effects of plutonium. Our current thought, however, is to rely, if possible, on some expert from the ranks of those having already filed reports covering this subject in 1996. We have been attempting to contact Drs. Clapp, Gochfeld, and Wing to confirm whether they are currently available for this purpose, but that process is not yet complete, owing partly to the dispersal of academics during the summer months. It is likely that we would not have to rely on testimony from all three, but we would like to hear from all three before eliminating any from our designation.

*See* Exhibit A to Plaintiffs' Response to "Defendants' Statement Identifying a Matter for Discussion at the August 22 Conference" (Aug. 20, 2005) [Ct. Rec. 1424]. Defendants have neither denied receipt of this communication nor professed confusion over its content.

On August 6, 2004, defendants served supplemental expert reports – including "supplemental" reports from some experts, such as Dr. Till, who had filed no earlier reports. Defendants served no report from Dr. Fry.

On August 19, 2005, defendants filed Defendants' Statement Identifying a Matter for Discussion at the August 22 Conference [Ct. Rec. 1423]. In the statement, defendants claimed surprise at seeing Dr. Wing's name included in a draft pretrial filing that plaintiffs had tendered that week for defendants' review. Defendants' submission did not explicitly request that Dr. Wing be stricken from plaintiffs' list, and in fact left it unclear what relief *was* requested.

On August 22, 2005, the Court placed defendants on notice that the Court would not strike Dr. Wing's testimony:

> Now, with regard to the last – let's take the last first, this objection to the calling of Dr. Steven Wing. I [am] certainly not going to strike him as a witness in this case. He has been mentioned numerous times and I will listen to Defendants, if there is something more that they want to do; and Plaintiffs, I have already seen your response that you object to anything being done. But if it's something within reason, I will be happy to listen to it.

*See* Tr. (8/22/05) at 16. At defense counsel's urging, the Court deferred further consideration of the issue until the next scheduled pretrial conference on September 22, 2005. The Court adopted this course so that defendants would have an opportunity to confer with plaintiffs about what alternative relief defendants might seek. *Id.*

Prior to the September 22 conference, defendants pursued relief in the form of a motion to exclude Dr. Wing's testimony under *Daubert*. *See* Defendants' Motion to Exclude the Testimony

of Dr. Steven Wing (Sept. 16, 2005) [Ct. Rec. 1444].  In their motion, defendants did not seek leave, in the alternative, to designate Dr. Fry or some other new expert to respond to Dr. Wing's testimony.  Nor did defendants request such relief in any separate filing, or at the September 22 conference.

The Court denied defendants' *Daubert* motion on October 3, 2005.  *See* Minute Order [Ct. Rec. 1483].  Defendants then disclosed their intention to call Dr. Fry in remarks addressed to the Court on October 7, 2005.

Subsequently, on November 11, 2005, defendants announced their additional intention to elicit testimony from Dr. Fry, now in rebuttal to Dr. Clapp, "about epidemiological process and procedures, including statements made by Dr. Clapp concerning statistical significance and other issues."  *See* Defendants' Statement Concerning Its [sic] Trial Witness List, at 1 (Nov. 11, 2005) [Ct. Rec. 1630].  Defendants, however, have raised no argument that Dr. Clapp's testimony, or his presence on plaintiffs' witness list, came as any surprise.  Nor could they.  Dr. Clapp was designated in 1995 and at every subsequent stage, and his report was served in 1996.

## B.  Dr. Grogan

Dr. Grogan's deposition transcript is attached as Exhibit A.  She holds a Ph.D. in radioecology.  *See* Grogan Dep. at 51 (Ex. A).  She worked for seven years, from 1992 to 1999, as a subcontractor for Dr. Till's company, Risk Assessment Corporation ("RAC"), on Phase II of the Rocky Flats environmental dose reconstruction project.  Her work focused on quantifying organ-specific cancer risk and its uncertainty following exposure to plutonium from inhalation.[3]

Defendants have not disclosed, even to Dr. Grogan, precisely what her testimony will

---

[3]  *See* <http://www.racteam.com/Experience/Bios/HelenAGrogan.htm> (visited Dec. 3, 2005).

involve, or what subjects it will cover, but her understanding is that it will somehow relate to her

work on the RAC project:

> Q      Have you been told what you're being called to testify about?
>
> A      As I -- I have not been told exactly what I'm to testify about.
>
> Q      Well, can you tell me generally what you understand?
>
> A      My understanding is that I am -- would be called to testify about the work
> and study that I did as a part of risk assessment -- as a part of the dose
> reconstruction performed by Risk Assessment Corporation.
>
> Q      And which part of the work and study are you referring to?
>
> A      Well --
>
> MR. KURTENBACH:  I'll object to form and foundation to the question.
>
> A      I was involved in many different aspects of the study.
>
> Q      (BY MS. ROSELLE)  Tell me what you're going to talk about.
>
> MR. KURTENBACH:  Same objections.
>
> A      I don't know what I'm going to talk about.  I just -- my understanding is it
> could be essentially many -- most components of the study.  How it was
> performed and what we did.

See Grogan Dep. at 50-51 (Ex. A).  Dr. Grogan's understanding is consistent with Dr. Till's

deposition testimony, according to which  Dr. Till, Dr. Grogan, and Mr. Voillequé have met with

defense counsel on multiple occasions dating back to at least 2004.  See Till Dep. at 40-45 (Ex. B).

From the beginning, it was Dr. Till's understanding that defendants might call other members of the

RAC team, in addition to calling Dr. Till himself, and that if Dr. Grogan or other team members

were called, it would be to offer expert testimony on RAC's work.  See Till Dep. at 46-48 (Ex. B).

There is, indeed, no indication that Dr. Grogan possesses personal knowledge of any facts relevant to this litigation concerning which she could testify as a lay witness.

Defendants did not designate Dr. Grogan as an expert in 1995, and defendants did not serve disclosures under Rule 26(a)(2)(B) for Dr. Grogan in 1996 or at any other time.  Although defendants met with her as far back as 2004, Dr. Grogan was never listed as a potential witness until November 2005, when trial was already well underway.

## C.  Mr. Voilequé

Defendants have indicated that Mr. Voilequé will be made available for deposition on December 14, 2005.[4]   He is a health physicist.  For eight years, he worked in the AEC's Health Services Laboratory at the Idaho National Engineering Laboratory as chief of its Environmental Studies Section, where he performed research on human exposure pathways and performed dose calculations for radionuclides in the environment.  Following his work at AEC, Mr. Voilequé founded MJP Risk Assessment, Inc., where the focus of his work has been on radiation-related issues.  Like Dr. Grogan, he has worked extensively with Dr. Till and RAC on the Rocky Flats dose reconstruction project.[5]

---

[4]  To judge from defendants' order of call for the first two weeks of their case, Mr. Voilequé could be called to the stand as early as Thursday, December 15.  If his deposition is conducted only the previous day, it is questionable whether even a rough deposition transcript will be available by the time he takes the stand.  Certainly this timetable would not afford plaintiffs sufficient time to prepare cross-examination or to prepare and file any motions addressing his testimony (let alone on a timetable consistent with the Motions Practice Order).  This is doubly prejudicial in the case of hitherto undisclosed expert witnesses who have served no report.  Plaintiffs intend to approach defendants about rescheduling Mr. Voilequé's deposition in the event this motion is denied in whole or in part.

[5]  *See* <http://www.racteam.com/Experience/Bios/PaulGVoilleque.htm> (visited Dec. 3, 2005).

Defendants have stated that Mr. Voillequé will be called to rebut Dr. Biggs's testimony. *See* Defendants' Statement Concerning Its [sic] Trial Witness List, at 1 (Nov. 11, 2005) [Ct. Rec. 1630]. Plaintiffs do not know whether defendants also intend to elicit testimony from Mr. Voillequé concerning other aspects of his work on the RAC project.

Dr. Biggs was designated as a fact witness and deposed by defendants in mid-2004, and he testified only as a lay witness on his participation in the Governor's panel. Indeed, several of his opinions were excluded at trial even though they had been disclosed through his deposition testimony nearly a year beforehand. Mr. Voillequé, by contrast, was never even designated as a defense witness until November 2005, and plainly *could* have been designated sooner if defendants sought to rebut Dr. Biggs's testimony. No Rule 26(a)(2)(B) disclosures have ever been served for Mr. Voillequé.

### III.  ARGUMENT

As is obvious from the background recited above, Dr. Fry, Dr. Grogan, and Mr. Voillequé would be called not because they have personal knowledge of any facts involving Rocky Flats to which they might testify as lay witnesses, but rather by virtue of their specialized knowledge and training in epidemiology, dose reconstruction, and health physics. That is, they would be called as expert witnesses. Their expert testimony should be barred, because defendants have not made the slightest gesture toward compliance with any of the applicable disclosure requirements.

In particular, Rule 26(a)(2)(A) requires the disclosure, at the times directed by the trial court, of the identity of any witness who will testify as an expert at trial. Rule 26(a)(2)(B) additionally requires, for witnesses retained to testify as experts, a written report, signed by the witness, to include:

> a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

*See* Fed. R. Civ. P. 26(a)(2)(B). The rules do not excuse defense or "rebuttal" experts from these disclosure requirements. *See, e.g., Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105-07 (9th Cir. 2001). Quite the contrary, Rule 26(a)(2)(C) expressly contemplates reports from rebuttal experts.

The normal remedy for failure to provide a timely report is the preclusion of the expert's testimony at trial. *See id.* 1993 Advisory Committee Notes ("a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed"); Fed. R. Civ. P. 37(c)(1). Indeed, that sanction *must* be imposed unless the nondisclosure is justified or harmless. *Id.*

Defendants cannot show that the relevant nondisclosures were justified or harmless. *See generally Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 951-54 (10th Cir. 2002) (discussing factors to consider), *cert. denied*, 537 U.S. 1066 (2002). As regards Dr. Fry, even if defendants' claimed reliance on Dr. Wing's omission from plaintiffs' tentative witness list in 2003 is taken at face value, it does not justify defendants' failure to designate Dr. Fry or supply a report from her once defendants were advised in mid-2004 of plaintiffs' continued intention to call Dr. Wing. Nor does it justify defendants' continuing omission to meet their Rule 26(a)(2)(B) obligations after the Court declined to strike Dr. Wing's testimony in August 2005, or after the Court denied defendants' *Daubert* motion on Dr. Wing in October 2005, or even after defendants finally announced their intention to call Dr. Fry, two months ago.

Defendants are meanwhile without *any* colorable excuse for having made no designations or disclosures for Dr. Grogan and Mr. Voillequé. For both experts, defendants simply missed the 1995 deadline for designation, the 1996 deadline for reports, and the 2004 deadline for supplemental reports. According to the deposition testimony, defense counsel have been meeting with Dr. Grogan and Mr. Voillequé since early 2004. Yet defendants took no steps to disclose even the identity of these witnesses until trial was already well underway.

Preclusive sanctions will not work a harsh or unfair result. Defendants could have avoided that outcome by the simple expedient of disclosure in compliance with Rule 26 and the Court's pretrial orders. Meanwhile, defendants have been permitted to offer the RAC report itself into evidence, and they plan to offer four hours of testimony from Dr. Till during their case. Presumably Dr. Till has sufficient knowledge and expertise to defend his own report.

To permit expert testimony from these three defense experts would meanwhile work substantial prejudice on plaintiffs. Expert reports serve vital functions. They disclose and delimit the scope of direct testimony. Just as importantly, they provide a detailed description of the expert's reasoning and methods, as well as any underlying data, so that the opposing party may prepare not only for any *Daubert* challenges but also for effective cross-examination. Plaintiffs now find themselves in the predicament of preparing for both in the midst of trial, and without even the most basic of the disclosures that Rule 26 requires. As is illustrated by Dr. Grogan's strange agnosticism about the subject matter of her own testimony, depositions are no substitute. It is not especially helpful, for example, to be informed at this late date that Dr. Grogan's testimony will likely relate to *something* from her seven years' of labor on the compendious, four-volume RAC report. That

is why the rules provide that experts will be subject to deposition *in addition* to requiring their submission of reports.  *See* Fed. R. Civ. P. 26(b)(4)(A).

## IV.  CONCLUSION

Defendants having simply ignored the Court's pretrial deadlines and the disclosure requirements of Rule 26, defendants should be barred from calling Dr. Fry, Dr. Grogan, or Mr. Voillequé as expert witnesses.  Plaintiffs do not believe, based on the information currently available, that these witnesses have personal knowledge of any relevant facts to which they could testify as lay witnesses.  If defendants contend otherwise, defendants should be ordered to submit a prompt offer of proof, so that the Court may determine (just as it did, for example, with Mr. McKinley and Mr. Hoffman) whether any of these witnesses do in fact have any competent and material testimony that may permissibly be offered.

Dated: December 4, 2005                    s/ Peter Nordberg

                                           Merrill G. Davidoff
                                           Peter Nordberg
                                           Berger & Montague, P.C.
                                           1622 Locust Street
                                           Philadelphia, PA 19103
                                           (215) 875-3000

                                           Attorneys for Plaintiffs
                                           And the Class