**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**No. 90-cv-181-JLK**

---

**MERILYN COOK, et al.,
Plaintiffs,**

**v.**

**ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,
Defendants.**

---

**OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF
JOEL SELBIN**

---

**1.   Dr. Selbin Has Sufficient Personal Knowledge and May Offer Admissible Lay Opinion.**

Plaintiffs intend to offer Dr. Selbin's testimony about the DOE's decision to reject the 35 picocuries per gram cleanup standard recommended by the Radionuclide Soil Action Level Oversight Panel ("RSALOP") in favor of a much more lenient, 50 picocuries per gram standard that is limited to the top three feet of soil. Defendants object that Dr. Selbin's testimony is not based on personal knowledge. Apparently in defendants' view, the requisite "personal knowledge" sufficient for Dr. Selbin to testify requires nothing short of a full-blown investigation into the motives, reasoning, and activities of several government agencies. Fortunately, this is not the standard required by the Rules of Evidence.

Dr. Selbin's testimony will consist of both describing his personal actions and observations, and relaying his opinion that he formed based on those observations. Plantiffs expect his factual testimony to include:

- The current cleanup standard for Rocky Flats (namely, soil down to three feet will be remediated if it exceeds 50 picocuries per gram of alpha radiation; below three feet, the soil will be remediated to a lesser degree depending on a number of factors; and below six feet, no remediation will take place). (Selbin dep. at 69-70, 107-08, 117) (attached as Ex. A)

- The nominal purpose of the RSALOP was to allow citizens and independent scientists to have input into the cleanup of Rocky Flats. (*Id*. at 40-41)

- The panel engaged a scientific consultant, RAC, to study the issue and recommend a cleanup standard. (*Id*. at 51-52)

- The panel approved RAC's 35 picocurie per gram standard and recommended this standard to DOE. (*Id*. at 59-60 )

- DOE ignored the panel's recommendation. (*Id*. at 85-86)

- Dr. Selbin joined the Rocky Flats Cleanup Agreement Stakeholders' Focus Group in their effort to lobby the DOE in support of the 35 pCi/g standard. (*Id*. at 72)

- The Focus Group was not successful in convincing DOE and the other agencies to implement the more protective cleanup standard. (*Id.* at 82-84)

- Multiple individuals, including Jeremy Karpatkin of DOE and possibly Steve Gunderson of CDPHE, explicitly told him the cleanup was limited by funding constraints. (*Id*. at 67-68, 90, 122-24, 163-64)

Dr. Selbin certainly has sufficient personal knowledge to testify about the first-hand observations listed above, and defendants do not claim otherwise. He will testify solely as a percipient witness about his personal involvement with the Rocky Flats cleanup standards, just as Dr. Gale Biggs testified about his participation in Rocky Flats-related committees.

In addition, plaintiffs intend to elicit from Dr. Selbin a limited amount of lay opinion testimony, including:

- Based on the events leading up to the DOE's approval of the 50 pCi/g soil

2

        action level, Dr. Selbin believes the RSALOP was misled about the degree to which its work and input would be used in determining the soil cleanup standards.  (*Id*. at 65, 67-68)

- Based on his dealings with DOE leading up to the DOE's approval of the 50 pCi/g soil action level, Dr. Selbin believes the RSALOP was a sham, and that the true usefulness of the committee to DOE was to create the illusion of public participation, rather than to actually give the public any input into cleanup decisions.  (*Id*. at 89-90, 163-64)

- Based on his conversations with representatives from the relevant government agencies (DOE, EPA, CDPHE), he rationally perceived their reactions to his concerns regarding the cleanup standard as saying, there was not enough funding made available to implement the more protective cleanup standard.  (*Id*. at 85-86, 90, 122-24, 163-64, 167-68)

- Based on the entire course of events in which he participated as a member of RSALOP and the Focus Group, he believes the less protective soil action level standard was adopted due to a lack of funding.  (*Id*. at 65, 67-68, 89-90, 122-24, 163-64, 163-64, 167-68)

      Dr. Selbin's lay opinion testimony is admissible under Rule 701, which allows witnesses to testify to "opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Dr. Selbin's opinions are rationally based on the actions and words of the DOE and other participants in the cleanup process – actions including their rejection of the 35 pCi/g standard chosen by the panel and reluctance to lobby for more funding, and words such as the bare admission that there was not enough funding for a better cleanup.  Dr. Selbin does not need to have personal knowledge of all the behind-the-scenes activities of DOE and other agencies regarding the soil action level standards; his own perceptions of these agencies' conduct are sufficient evidence to show an ulterior motive behind the less thorough cleanup standard.

Additionally, although defendants object to Dr. Selbin's testimony as relying on expert knowledge (Def. Br. at 2-3), they do not identify any potential areas of testimony that may fit this description. The lay opinion testimony described above does not depend on Dr. Selbin's expert knowledge. Although Dr. Selbin participated in the RSALOP because of his expert knowledge, he will testify in his capacity as a percipient witness, not as an expert witness. The Court has ruled such testimony by scientists involved in Rocky Flats issues to be admissible. *See* Sept. 22 Hearing Tr. at 9.

**2.  Dr. Selbin's Testimony About the Statements of DOE and Other Agency Officials is Admissible.**

The statements of agency officials to the effect that there was limited funding available for the cleanup are all admissible for their non-hearsay purpose, to explain the basis of Dr. Selbin's knowledge and belief. In addition, those statements – especially those identified as spoken by Mr. Karpatkin, a DOE official, and CDPHE official who Dr. Selbin believes was Steve Gunderson – are statements against interest under Fed. R. Evid. 804(b)(3). These officials' statements that there was not enough funding available to complete a more thorough cleanup, were highly embarrassing to DOE and CDPHE and would certainly provoke anger and outrage by the many citizen and local government participants in the cleanup agreement process. Lastly, as DOE is the party in interest behind this litigation (as the agency that owned the Rocky Flats plant and that must pay any damages in this case), the statement of Mr. Karpatkin should be admitted as an admission of a party-opponent under Fed. R. Evid. 801(d)(2).

**3.  Defendants' Relevance, Prejudice, and Cleanup Costs Objections are Unavailing.**

Dr. Selbin's testimony is relevant to the issues of future risk and market knowledge. Because

DOE rejected the more conservative cleanup standard, more plutonium will be left on the Rocky Flats plant site to be stirred up by natural forces over the next 24,000 or more years and transported downwind onto the class properties.  Also, while DOE promised to invite citizens and independent scientists to participate in the cleanup process, as part of its much-touted campaign of greater openness, DOE reneged on that promise.  This latest betrayal by an agency with such a poor history of dishonesty and secrecy with the public is likely a source of further uneasiness in the real estate market's perception of the class properties.

It is also unclear what unfair prejudice against defendants could arise from Dr. Selbin's testimony.  Dr. Selbin will testify about the actions of DOE, other agencies, and the RSALOP participants, not Dow or Rockwell's actions.  His testimony is factually accurate and focuses on a distinct set of events.  Rather than confuse the jury, Dr. Selbin will aid their understanding of the cleanup standards and the process by which those standards were set.

Lastly, plaintiffs have no intention of eliciting from Dr. Selbin any of the dollar figures associated with the cleanup costs.  Defendants' objection is baseless.

                                                                    Respectfully submitted,


Dated: Dec. 6,  2005                           /s    Jennifer MacNaughton
                                                                    Merrill G. Davidoff
                                                                    Peter Nordberg
                                                                    Jennifer MacNaughton
                                                                    Berger & Montague, P.C.
                                                                    1622 Locust Street
                                                                    Philadelphia, PA 19103
                                                                    (215) 875-3000
                                                                    fax (215) 875-4604
                                                                    jmacnaughton@bm.net

Gary B. Blum
Steven W. Kelly
Silver & DeBoskey, P.C.
1801 York Street
Denver, CO 80206
(303) 399-3000

*Attorneys for Plaintiffs
And the Class*