**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-181-JLK

MERILYN COOK, *et al.*,

       Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

       Defendants.

___

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE CERTAIN TESTIMONY FROM MICHAEL NORTON**
___

The issue is simple. Plaintiffs chose to put on Jon Lipsky. In so doing they put Michael Norton's credibility directly at issue. Mr. Lipsky repeatedly attacked Mr. Norton's integrity and truthfulness. Mr. Norton deserves an opportunity to respond. The jury should not be forced to accept Mr. Lipsky's views and opinions (proffered to further his own purposes) but should instead be allowed to judge Mr. Norton's credibility for themselves. Defendants should be allowed to present Mr. Norton's side of the story with respect to the investigation. Having opened the door to this and other factual issues through Mr. Lipsky – over defendants' vociferous objections – plaintiffs should not be able to preclude defendants from responding. This Court has already said as much.

I.  **DEFENDANTS ARE ENTITLED TO PRESENT MR. NORTON'S RESPONSE TO MR. LIPSKY'S ACCUSATIONS.**

Mr. Lipsky continually placed at issue Mr. Norton's credibility, as well as the honesty of other members of the investigative team.  For example, Mr. Lipsky testified that:

- Norton misrepresented to Congress that the findings of the investigation were that the incinerator did not operate during the shutdown period. (Tr. at 2928:10-2929:16)

- Norton's announcement to the press that the investigation "didn't find the serious public health risks we thought were there" misrepresented Lipsky's and Fimberg's views. (Tr. at 2942:23-2943:2)

- Norton's statement to Congress that the investigation "did not find, however, the kind of deceptive conduct we thought may have occurred" misrepresented the conclusions of the investigation.  (Tr. at 2946:15-25)

- Norton's statement to Congress that the investigation pursued and charged every serious environmental crime they found misrepresented the views of the investigative team. (Tr. 2949:11-25)

- Fimberg's private comments about the sufficiency of the evidence differed from his public comments:  "[H]e may have misrepresented himself to me or he could have misrepresented himself to the public, and if you're asking me which it is -- I don't know what the answer is."  (Tr. at 2568:15-25)

- Smith's statement that there was agreement among every other major decision maker on the criminal investigation prosecutorial team, except Lipsky that there was insufficient evidence to prosecute the 771 incinerator conduct claim was false. (Tr. at 2922:12-19)

Defendants should be allowed to present Mr. Norton's response to these accusations.  It cannot be that Mr. Lipsky can place all these matters at issue, but defendants would be barred from contesting these statements through Mr. Norton's testimony.  The jury is entitled to hear the other side of the story and to judge Mr. Norton's (and Mr. Lipsky's) credibility for themselves.

Mr. Lipsky also repeatedly testified that his authority to investigate was revoked by the U.S. Attorney's office before he was able to reach a conclusion on various matters.  For example, Mr. Lipsky testified that:

- He was not allowed to pursue his investigation related to the secret medical waste facility claim (*see* Tr. at 2645:13-16) because the U.S. Attorney's Office revoked his authority. (Tr. at 2646:9-13; 2865:17-2866:17; 2910:8-2911:6)

- He had not finished his investigation of the 771 and 776 incinerator issues before the U.S. Attorney's Office revoked authority to further investigate. (Tr. at 2910:8-2911:6; 3750-3751)

- The decision to revoke his authority to further investigate the claim regarding the operation of the 771 incinerator during shutdown was made well before it could be fully investigated, so it was not possible to assess the sufficiency of the evidence. (Tr. at 2926)

- "There was a discussion that individuals would not be prosecuted, but there was also decisions made that the false statements aspect of the case would not be prosecuted or further investigated." (Tr. at 2510:21-2511:2)

- He was not the only one on the investigative team who thought that there was sufficient evidence to prosecute a claim based upon the operation of the incinerator during the shutdown period. (Tr. at 2918:18-2921:7)

Plaintiffs have opened the door on these issues, among others, and defendants' proffer of Mr. Norton as a response witness is not improper.

## II.   THE COURT HAS ALREADY RULED THAT THIS AVENUE OF EVIDENCE IS PERMISSIBLE.

During the Court's many colloquies in response to defendants' objections to Mr. Lipsky's testimony, the Court consistently held that where plaintiffs opened the door, defendants would be allowed to respond.[1]  In fact, during Mr. Lipsky's testimony the plaintiffs already brought to the

---

[1] A telling example is plaintiffs' questions to Mr. Lipsky regarding false statements:

(Continued…)

Court's attention the very quote from the August 22, 2005 transcript that they raise again in their motion here.  (*See* Tr. at 2521:1-10)  At that time, the Court explained that:

> The word "exonerate" has a meaning to it, and that's the thrust of what I was saying at that time, is that I don't want to get into this question of that a U.S. attorney or the Attorney General of the United States or any of those other people make up their mind about this case.  That's the jury's decision to make.  And I don't want them influenced by such things as highly crafted statements that are intended primarily for the press with plea agreements and that sort of thing.

---

MR. BERNICK:  The much more disconcerting thing is we have now sat through what is the better part of how many hours, I think it's probably around nine hours now of this examination, including exhaustive examinations of facts and claims and probable cause determinations that potentially did lead to the possibility of false statement, I mean all of the WSIC statements, all of the other things that they've talked about would be directly relevant to a false statement claim. Counsel then in contravention to what I had thought was your Honor's determination said, Well, there was a decision made not to prosecute false statement claims. Well, what does that mean?  It means that we got into hours of testimony that probably doesn't have very much relevance until it ultimately was decided.  We also got into, then, a very central statement in front of this jury that apparently although this witness thought there was probable cause and liability, somebody else made the determination not  to go forward. Then to add on to it, I then can't cross-examine concerning why -- what the merits of those statements were, the false statement claims were, and why it was that they were dropped and whether it had anything to do with us.

THE COURT:  *No, you can go into those things.*  What I'm not letting in is a written Plea Agreement that's filled with self-serving statements.  It's the self-serving statements that makes it objectionable as far as I'm concerned, and that's the basis for my ruling.  You can go into that.  You can ask him of every charged --

    *  *  *  *

THE COURT:  Well, this witness just testified that decisions were made not to pursue the false statements or the perjury claims against individuals, and Mr. Bernick is entitled to go into that, and it has opened the door to that inquiry.

(*See* Tr. at 2515-2519) (emphasis added)  The subject of plaintiffs' motion to limit the testimony of Mr. Norton is no different.

(Tr. 2521:22-2522:5)  Defendants responded, stating that "we will not pursue those, but we intend to pursue very specifically what other members of the team [thought]" And the Court replied, "*[y]ou're absolutely entitled to do that* . . . ." (Tr. at 2522:6-9) (emphasis added)  Later, when the plaintiffs raised the issue yet again, defendants explained that, in response to the inferences raised by Mr. Lipsky's testimony, defendants were trying only to establish that the evidence was not there and that Mr. Lipsky was at odds with other people on the investigative team with respect to the evidence.  (*See* Tr. at 2605-2610)  The Court ruled that this was permissible:

> *I think you're right*, that is what you're doing, and you mustn't confine yourself to that, but I'm not going to sustain any objections to your going into that.  The witness, Mr. Lipsky, did testify about other team members and what they were doing, and *you're perfectly entitled to do that*.  And it's also come out that the -- for whatever reasons they had, the prosecutors decided not to go against individuals and they dropped certain charges.  Now whether that's on the basis of a lack of evidence or not, I don't know, but the witness is entitled to testify to that because it's already been brought out on both his direct, and you've gone into it to some extent already.

(Tr. at 2610:6-11) (emphasis added).  Because plaintiffs opened the door, the Court allowed defendants to cross-examine Mr. Lipsky – over plaintiffs' objections – on the fact that certain charges were not brought and as to the views of the prosecutors regarding the factual evidence in support of various allegations.  (*See*, *e.g.*, Tr. at 2566-2567)  For the same reason, the Court's ruling with respect to Mr. Lipsky's cross-examination should extend to defendants' examination of Mr. Norton; that is, defendants are entitled to elicit testimony responsive to matters put at issue by plaintiffs.

Through Mr. Lipsky, plaintiffs deliberately put into evidence not only what the prosecutors did and did not do, but also impugned their integrity. Mr. Lipsky specifically questioned Mr. Norton's honesty and the credibility of his statements to Congress and the press. Plaintiffs opened the door and should not be allowed to complain now that Defendants are walking through it. Plaintiffs' motion should be denied.

Dated:  December 6, 2005                                    Respectfully submitted,


                                                            /s/ Stephanie A. Brennan___
                                                            One of the Attorneys for the Defendants
                                                            David M. Bernick
                                                            Douglas J. Kurtenbach
                                                            Ellen Therese Ahern
                                                            Mark J. Nomellini
                                                            Stephanie A. Brennan
                                                            KIRKLAND & ELLIS LLP
                                                            200 East Randolph Drive
                                                            Chicago, Illinois 60601-6636
                                                            Phone:  312-861-2000
                                                            Fax:     312-861-2200

                                                            Joseph J. Bronesky
                                                            SHERMAN & HOWARD L.L.C.
                                                            633 Seventeenth Street, Suite 3000
                                                            Denver, Colorado 80202
                                                            Phone:  303-297-2900
                                                            Fax:     303-298-0940

                                                            Attorneys for ROCKWELL
                                                            INTERNATIONAL CORPORATION and
                                                            THE DOW CHEMICAL COMPANY

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 6, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses for the following:

Peter B. Nordberg, Esq.
c/o Karen M. Markert
Apartments at Denver Place, Apt. 2812
1880 Arapahoe Street
Denver, CO 80202
pnordberg@bm.net
kmarkert@bm.net

Gary B. Blum, Esq.
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206
blumg@s-d.com

                                         /s/ Kari Knudsen_____
                                         Kari Knudsen (legal assistant)