**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
No. 90-cv-181-JLK**

---

**MERILYN COOK, et al.,
Plaintiffs,**

**v.**

**ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,
Defendants.**

---

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION
TO LIMIT THE SCOPE OF TESTIMONY
OF DR. JOHN R. FRAZIER**

---

Plaintiffs' Motion to Limit the Scope of Testimony of Dr. John Frazier, filed Dec. 4, 2005, is based on the simple, *undisputed* fact that Dr. Frazier himself wrote or substantively contributed only to very narrow, specific portions of a lengthy expert report that was written by a *different* expert, Dr. John Auxier, who *is available to testify*, but whom Defendants have chosen not to call as a witness.

Dr. Frazier testified at his deposition that he saw Dr. Auxier in person just a few weeks ago. Dr. Frazier testified that Dr. Auxier is still president of Auxier & Associates, the consulting firm where Dr. Frazier formerly worked, and that Dr. Auxier is in "very good" health. *See* Frazier dep., 12/05/05 at 15-16 (attached as Ex. 1). Defendants *do not claim* that Dr. Auxier is unavailable to testify. Rather, Defendants say they have elected not to call him as a witness because, in

Defendants' view, Dr. Auxier is too old to testify "effectively" on their behalf.[1]

Defendants' strategic decision, however, cannot transform Dr. Frazier into the author of expert work he *admits* he did not perform. Plaintiffs are entitled to cross-examine the actual expert who performed the work and analysis; not a substitute "spokesman" whom Defendants hope will be more "effective" for them on the witness stand.

Dr. Auxier's 1996 expert report contains 14 separate chapters. See Ex. 2 to Plaintiffs' Motion (copy of the report). Dr. Frazier testified that he wrote *one* of these chapters, relating to federal plutonium standards in air and water. Frazier dep., 12/05/05 at 104 (Ex. 1). *And see id.* at 104-05 ("I did not actually write the other chapters of the report.").

Defendants say they intend to call Dr. Frazier to testify, however, about numerous subjects referenced in Dr. Auxier's report that Dr. Frazier admits he did not write or develop. *See* Defts' Br. at 1 ("Defendants intend to call Dr. John Frazier to testify about the same subjects as his long-time partner, Dr. Auxier, including 'Radiation, Dose, Dosimetry, Metabolism, Compliance with Standards, Risk, Health Effects, Health Physics, [and] Environmental Monitoring.'").[2] Indeed, Dr. Auxier's report does contain numerous chapters relating to, *inter alia*, estimated radiation doses and risk of class members and health effects; and a review of ChemRisk's dose estimates.

Dr. Frazier testified at his deposition, however, that:

---

[1]*See* Defendants' Response to Plaintiffs' Motion to Limit the Scope of Testimony of Dr. John R. Frazier, filed Dec. 5, 2005, at 2.

[2]Defendants omit the fact that Dr. Frazier is no longer Dr. Auxier's partner, having left Auxier & Associates last year.

–he "was not asked to do any radiation dose calculations," Frazier dep., at 72, and that he did not perform any such dose calculations, whether for an actual class member or a hypothetical person; Frazier dep., at 73 ("I have not" calculated any individual dose). *See also* Frazier dep. at 105-06 (testifying that he did not even *review*, much less write, "the extensive portions on dose calculations that they put in this [Auxier] report."); at 112 (same); at 140 ("I did not" calculate anyone's dose); at 145 (same); at 156 ("Q: Dr. Frazier, I asked you whether you have calculated any person's dose or risk in this case and you said no. Have you calculated any hypothetical dose or risk for any hypothetical person in this case? A: No."); at 207-08 (same);

–he was *not asked* to develop opinions on dose assessment methodology, Frazier dep., at 142 ("I have not been asked to give opinions on that and I have not prepared any reports on that.");

–he did *not* compare, or prepare any report comparing, radiation doses people received or may received from Rocky Flats to doses from natural background radiation or nuclear fallout; Frazier dep. at 208-09 ("I did not do any comparison of those doses");

–he wrote no report in this case on health effects from exposure to radiation, such as genetic effects; Frazier dep., at 144 ("Q: You've authored no report in this case on that subject, correct? A: That's correct.");

–he did *not* estimate any health risks from exposures to radiation or any other substance, whether for a hypothetical person or any actual person, arising from releases from Rocky Flats; Frazier dep., at 74 ("Q: Have you calculated any individual risk, cancer risk in this case? A: I have not."); at 113 (he "didn't write any" of Chapter XIII of the Auxier report on risk); at 140 ("Q: Did you calculate anyone's risk in this case? A: No, I have not."); at 145 (same); at 201 ("Q: Do you believe that you'll be testifying in any way about health risks to people in the class area from releases

from Rocky Flats? . . .A: I – I don't have any written reports – I've not prepared any written reports to that subject for this case.");

–he "didn't prepare any reports . . . regarding health risks from fallout radiation or natural background radiation for this project"; Frazier dep., at 203;

–he did *not* prepare any analysis comparing health risks from exposure to natural background radiation or nuclear fallout to risks from exposure to radionuclides from Rocky Flats; Frazier dep. at 209-210;

–he did *not* have any role in the section of the Auxier Report on soil contamination or comparing doses from contaminated soil to "natural soil"; Frazier dep., at 166 (he had no role in preparing graphs, appearing at pages III-13 and III-14 of the Auxier Report, comparing doses from contaminated soil to "natural soil";); at 206 (he has not prepared a report "of any kind" concerning the results of soil sampling);

– he did *not* write any report himself, or any part of the Auxier Report, concerning the work done by ChemRisk; Frazier dep., at 203;

– he did *not* prepare any report analyzing the reports of RAC; Frazier dep. at 206;

– he did *not* write any report on qualitative or quantitative uncertainty analysis of any kind; Frazier dep. at 205-06;

– he did *not* develop any expert opinion concerning the alleged clean-up at Rocky Flats; Frazier dep. at 211-12;

– though he had some role in the chapter of the Auxier report on monitoring, Dr. Frazier also testified that he "did not prepare a separate report of any analysis" of the accuracy of off-site air monitoring; and *just in the last few weeks*, he has spoken to two former plant employees about

quality control, or lack thereof, relating to monitoring, but he has written no report on this subject. Frazier dep., at 232-33; 237 (Ex. 1).

In sum, Dr. Frazier prepared an analysis on federal standards relating to concentrations of plutonium in air and plutonium in water; and did some very limited work relating to monitoring. The work and analysis he *actually performed* and that he set forth in a timely written report pursuant to Rule 26 should define and limit the scope of his testimony.

Defendants have not even attempted to establish that Dr. Auxier is unavailable as a witness because of a mental or physical condition. In fact, Dr. Frazier's own testimony establishes the opposite. *See* Frazier dep. at 16-17 (Dr. Auxier is "still president" of Auxier & Associates, the firm where Dr. Frazier once worked; and Dr. Auxier is in "very good" health).

More importantly, even if Dr. Auxier were unavailable, *which is not the case*, Dr. Frazier cannot testify to expert work he did not do. That would deprive Plaintiffs of the ability to cross-examine the expert who did the work.

Defendants argue, though, that they previously notified Plaintiffs of their desire to potentially have Dr. Frazier testify for Dr. Auxier.

First, even as of Monday, December 5 – just days before he is set to testify – Dr. Frazier himself could not identify the areas of his expected testimony.

> Q: Okay. One more question before we break. What portions, if any, of this Auxier report by chapter, if you could identify them, do you believe you're going to be testifying about in this case?
>
> A: **I don't really know**. . . .
>
> ...
>
> Q: ...That's what I'm trying to understand. In other words,, do you have an understanding, based on your discussions with Kirkland & Ellis counsel, **which particular portions, if any, of this Auxier report** they expect to put

on in front of the jury through you?

A. No. **They have not told me that**. . . .

Frazier dep. at 113-114 (Ex. 1) (emphasis added).

Second, Defendants' "notice" argument is completely beside the point. Such "notice" cannot contravene Dr. Frazier's undisputed testimony that Dr. Auxier, today, is in "very good" health and still active. Nor can it change Dr. Frazier's own testimony about the actual, narrow scope of his own work in this case.

In conclusion, Plaintiffs respectfully request that their Motion to Limit the Scope of Testimony of Dr. John R. Frazier be granted.

Dated: Dec. 7, 2005

/s Jennifer MacNaughton

Merrill G. Davidoff
David F. Sorensen
Jennifer MacNaughton
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
fax (215) 875-4604
jmacnaughton@bm.net

Gary B. Blum
Steven W. Kelly
Silver & DeBoskey, P.C.
1801 York Street
Denver, CO 80206
(303) 399-3000

*Attorneys for Plaintiffs*
*And the Class*