IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

No. 90–K–181

MERILYN COOK, et al.,

    Plaintiffs,

        v.

ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,

    Defendants.

**PLAINTIFFS' OBJECTIONS TO EXHIBITS TO BE USED WITH DR. OTTO RAABE**

Through their collection of exhibits for use with Dr. Raabe, defendants have cavalierly signaled their intention to violate a basic rule of expert testimony that this Court has firmly and consistently enforced throughout this trial: that an expert's testimony may not venture beyond the four corners of his or her report. Defendants have stridently argued for this Court to enforce the limits on expert testimony during the Plaintiffs' case. The rules should be enforced equally against both parties.

Dr. Raabe's exhibits and graphics violate the limits on expert testimony in two ways. First, much of the scientific evidence presented through these exhibits was absent from his reports. Especially noteworthy is the contrast between Dr. Raabe's report, which discusses general principles of radiation and health, and the slides that now incorporate comparative radiation exposure data for the Denver area. Dr. Raabe's report did not discuss the alleged specific risks of living in Colorado as they are depicted on these slides. Further, most of the

slides contain no source for the data, so plaintiffs are unable to verify whether they are accurate or not. This line of inquiry impermissibly expands the scope of Dr. Raabe's testimony from a general discussion of radiation to a specific, point-by-point comparison of the doses of radiation received by people in Denver and the rest of the United States – doses that plaintiffs are unable to test or verify.

Second, defendants have essentially asked Dr. Raabe to give his expert opinion on the trial testimony of other witnesses. A review of the slides presents a picture that defendants reviewed all of the evidence in the case and decided to use Dr. Raabe to rebut any evidence that he could possibly discuss. However, Rule 26 does not permit an expert to roam through the trial transcript and opine on any matter that strikes his fancy. Dr. Raabe submitted two reports: one in 1996 (attached as Ex. 1) and a second in 1997 (attached as Ex. 2). No further reports were provided. Plaintiffs anticipate that because of Dr. Raabe's credentials and the fact that he is the first witness for the Defendants, he will be a powerful presence in the courtroom. It would be manifestly unfair to allow Dr. Raabe to expand beyond the scope of his report in the manner that Defendants are attempting.

Below are the Plaintiffs' objections to particular exhibits for Dr. Otto Raabe.

**A.     Exhibits Incorporating Studies Not Cited in Dr. Raabe's Reports.**

**DX 516**, "Final Report Development of the Rocky Flats Plant 903 Area Plutonium Source Term," is dated August 1999, almost three years after Dr. Raabe's reports.

**DX 527**, "Final Report Comprehensive Assessment of Exposure and Lifetime Cancer Incidence Risk from Plutonium Released from the Rocky Flats Plant, 1953-1989," is a report dated September 1999, also well after Dr. Raabe's 1996 and 1997 reports.

**DX 685**, a Health Physics Society Position Paper concerning plutonium, is not referenced in Dr. Raabe's reports.

**DX 1529** is a map graphic entitled, "Goble Study Area: ChemRisk Sectors." ChemRisk maps were not used in Dr. Raabe's March 16, 1997 rebuttal report to Dr. Goble (see Ex. 2). Nor did Dr. Raabe compare Dr. Goble's work to that of ChemRisk, a new line of inquiry which this slide appears to introduce.

**DX 1554**, a graphic entitled "Radiation Studies," is objectionable because Dr. Raabe's report does not reference the Uranium Miners or the Thorotrast studies.

**DX 1555**, a slide entitled "Low Dose Limitations," is objectionable because nowhere in his report does Dr. Raabe state that the low dose effect due to Rocky Flats could not be observed due to "noise." Plaintiffs further object to the bar graph for Colorado and the High Dose Rate Studies slide for the reasons set forth in their objections to DX 1549 and 1550.

**DX 1556**, "RAC Risk Estimates," and **DX 1557**, "Combining Decades," both refer to or incorporate data from the RAC studies. Dr. Raabe did not cite or rely on the RAC reports.

**DX 1559** is a slide entitled, " Lifespan Limitations." Plaintiffs object to the HAP dose estimates, which do not appear in Dr. Raabe's report.

**DX 1562** is a graphic entitled, "Not Enough Pu Effects Data." Dr. Raabe's report does not cite the Mayak Studies referred to in this slide.

3

B.	**Exhibits Containing Topics Beyond the Scope of Dr. Raabe's Report**

**DX 1558**, "Risk During Lifetime?" – While Dr. Raabe's report does contain a discussion of risk, it does not discuss that the time for risk to materialize may extend beyond lifetime.

**DX 1563**, "Experimental Dogs Died at Microcurie Lung Burdens" – The discussion of the Beagle dog studies on pages 15-18 of Dr. Raabe's report (Ex. 1) does not include either of the conclusions stated in this graphic.

**DX 1564**, "Plaintiffs: 'Radiation Can Damage DNA'" – There is no discussion of DNA damage in Dr. Raabe's report.

**DX 1565**, "Alpha Recoil" – Dr. Raabe's report contains no discussion of alpha recoil, nor any discussion of air filters whatsoever.

**DX.1566**, "Filter Efficiency" – Dr. Raabe's report contains no discussion of air filters.

**DX1567**, "Dr. Goble's Equation" – Dr. Raabe's 1997 rebuttal report to Dr. Goble's work (Ex. 2) does not include calculations of "overestimates."

**DX 1570** and **1571**, "Dr. Goble's Testimony" – It is inappropriate for Dr. Raabe to comment on Dr. Goble's trial testimony. Obviously, these discussions were not found in Dr. Raabe's report. Defendants should not turn their experts into deputy attorneys; expert witnesses may testify to facts, not arguments. Further, Dr. Raabe himself never addresses the class (DX 1570) or regulatory agencies (DX 1571) in his report, so he has no foundation to criticize Dr. Goble on these subjects.

C.     **Exhibits with New Data Not Presented in Dr. Raabe's Report**

Many of the graphics defendants have created to use with Dr. Raabe include data that are found nowhere in Dr. Raabe's report. Dr. Raabe never supplemented his report with this information. Additionally, these new numbers are frequently not attributed to any source. Defendants may not use Dr. Raabe as a talking head to present miscellaneous data of their choosing; as an expert witness, Dr. Raabe is limited to the information set forth in his report.

The exhibits containing new data are:

**DX 1542** is a slide entitled "'EDE' – Tissue Weighting Factors." While Dr. Raabe's report did contain numbers for tissue weighting factors (*see* Ex. 1 at 26), the numbers in the exhibit are different. Additionally, Dr. Raabe references only gonad, lung red marrow, bone surfaces and remainder. *See* Ex. 1 at 26. In Exhibit DX1542, he has new numbers and many new organs.

**DX 1544** is a graphic entitled, "Background Radiation." This graph does not appear in Dr. Raabe's report, nor are all the numbers referenced in the report. Further, some of the numbers referenced in the report are different from the numbers on DX 1544. For example, terrestrial radiation was described as 9% of natural background in the report, but as 8% on this graph. *See* Ex. 1 at 7. The source material (BEIR V) was available to Dr. Raabe at the time that his report was written.

**DX 1545** is a slide entitled "Dose Terrestrial Variation." While the attributed source, NCRP Report No. 94, is referenced at the end of Dr. Raabe's report, Figure 5.4 is not referenced in the report. The only references to NCRP Report No 94 are at the bottom of page 6 to define

5

naturally occurring radiation sources, at the top of page 9 for the proposition that the most significant source of exposure to technology-based radiation sources is from medical diagnosis and therapy, and on page 13 to list the typical levels of radioactive materials found in human beings. *See* Ex. 1 at 6, 9, 13.

**DX 1546**, a slide entitled "Background Radiation Dose Variation," is the first of many graphics that have specific doses for Denver. There is no reference to specific doses for Colorado in the report except for a lung dose of 9,000 mrem/yr. found on page 8 of the report (Ex. 1) and a dose from cosmic radiation to people in Leadville of 125 millirem per year on page 7. DX 1546 has no reference cited so it is not even possible to know the source of the purported doses for Denver.

**DX 1547** is a graphic entitled, "Radon and Daughters." The only one of those numbers that appears in the report is the Denver lung dose of 9.000 mrem/year (which is different from the one on this chart). The balance of these numbers are not in the report. There is no discussion in the report that the Denver dose is greater than 1 mrem/day higher. The slide gives no source for this data.

**DX 1548** is a slide entitled, "Background Radiation Dose Variation – Radon." Plaintiffs object to the last bullet on this slide. There is no reference in the report that the radon can vary by more than 50% from one home to next. *See* Ex. 1 at 7, 8 (discussion of radon).

**DX 1549** and **DX 1550** are two graphics entitled, "Background Radiation Dose Variation." A few of the dose numbers appear in the report. However, the report does not include any of the numbers listed for Denver except for radon, which gives a different number

6

(*see* Ex. 1 at 8). The reference to NCRP Report No 93 is for the U.S. Average, not for Denver in the report. Nowhere does the report discuss that it is "almost 2 mrem/day more in Denver."

**DX 1553** is a slide entitled, "What does '1 in a Million' Mean?" Plaintiffs object to this slide because this discussion is not found in Dr. Raabe's report. Additionally, the second bullet point is false and misleading: it is a basic, grade-school principle of statistics that if there is a one in a million risk, the risk may still materialize even if there is a smaller group (such as 10,000).

**DX 1560** is a slide entitled, "What Does 1 Millirem Mean?" The only number in this chart that appears in the report is the first one, the 1 millirem daily radiation dose for the average U.S. citizen. The report does give a number for a transcontinental flight, but it is a different number from the one in the slide. *See* Ex. 1 at 7. The other references to x-rays and Denver are not in the report. Further, defendants do not identify the source for the data in this slide.

**D.    Miscellaneous Objections**

**DX 463**, which is NCRP Report No. 94, and **DX 4003**, NCRP Report No. 93, are learned treatises that are inadmissible as hearsay and as expert opinion under Rule 702. The authors of the studies are not present in the courtroom to cross-examine and test under the requirements of Daubert. The exhibits are not admissible under Fed. R. Evid. 703 because their prejudicial effect outweighs any probative value. These reports are both dense, technical works that are far more likely to confuse than to enlighten the jury.

**DX 4002** is a published paper authored by Dr. Raabe. The Court has previously barred plaintiffs from presenting their expert's published works. *See* Nov. 3 Tr. at 3922-23 (Dr.

7

Smallwood may testify about his published article but the article is not admissible into evidence). The same rule should apply here.

**DX 1017**, a map graphic entitled "Class members in 1989", and **DX 1137**, "Properties Owned by Class Members (1969)," and **DX 1138**, "Properties Owned by Class Members (1955)" all exceed the scope of Dr. Raabe's report and are prejudicial. The issue of when class members lived in the area was not discussed in Dr. Raabe's report. He cannot lay a foundation for these exhibits. Further, these graphics improperly raise the arguments of "coming to the nuisance," assumption of the risk, or statute of limitations, which this Court has ruled inadmissible. *See* Sept. 13, 2005 Hearing Tr. at 5-6. While the Court has allowed their use in cross examination, however, now Defendants seek to use these graphics in their case in chief.

Respectfully submitted,

Dated: December 8, 2005

/s   Jennifer MacNaughton
Merrill G. Davidoff
Jennifer MacNaughton
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
fax (215) 875-4604
*jmacnaughton@bm.net*

Louise Roselle
WAITE SCHNEIDER BAYLESS & CHESLEY
Central Trust Tower, Suite 1513
Cincinnati, OH 45202
(513) 621-0267

Gary B. Blum
Steven W. Kelly
SILVER & DEBOSKEY, P.C.
1801 York Street
Denver, CO 80206
(303) 399-3000

*Attorneys for Plaintiffs*

9