

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No. 90-K-181

MERILYN COOK, et al.,

**Plaintiffs,**

v.

ROCKWELL INTERNATIONAL CORPORATION,
a Delaware Corporation, and

THE DOW CHEMICAL COMPANY,
a Delaware Corporation,

**Defendants.**

## THE REPRESENTATIVE PLAINTIFFS' JOINT RESPONSES TO "DOW'S SECOND SET OF INTERROGATORIES DIRECTED TO EACH CLASS REPRESENTATIVE PLAINTIFF"

### INTRODUCTORY STATEMENT

Pursuant to Fed. R. Civ. P. 33(b) and this Court's Order dated June 20, 1995, representative plaintiffs Merilyn Cook, William Schierkolk, Jr., Delores Schierkolk, Richard Bartlett, Sally Bartlett, Lorren Babb, Gertrude Babb, Bank Western, A Federal Savings Bank, Field Corporation, Michael Dean Rice, Thomas L. Deimer, Rhonda J. Deimer, Stephen M. Sandoval, and Peggy J. Sandoval hereby respond to interrogatories 1-3, 5-7, 8-12, 14-28, 31, and 33 from "Dow's Second Set of Interrogatories Directed to Each Class Representative Plaintiff" (served July 29, 1994). Dow has agreed that the representative plaintiffs will not be required to respond to interrogatories 4, 13, 29, 30, 32, and 34 at this time. In addition, pursuant to Fed. R. Civ. P. 33(b)(1) and 72,

plaintiffs have previously asserted objections to answering interrogatories 4, 13, 29, 30, 32, and 34, and those objections are incorporated here by reference.

These responses are based on information available to the representative plaintiffs as of the date of these responses, including information from public sources, materials obtained in discovery, and previous filings in this litigation. Fact discovery is not yet complete, and accordingly these responses are necessarily preliminary and subject to revision as plaintiffs' investigations continue and further information becomes available. The representative plaintiffs reserve the right to amend these responses pursuant to Fed. R. Civ. P. 26(e)(2).

A number of the interrogatories seek responses regarding the class representatives' contentions on technical scientific or medical subjects -- for example, the nature and quantity of hazardous radioactive and non-radioactive substances released from Rocky Flats, the level of the class representatives' exposures to those substances, or the health risks associated with those exposures. The representative plaintiffs have no special scientific or medical expertise that qualifies them to provide such estimates, and intend to rely on the reports and testimony of plaintiffs' experts for that purpose. Plaintiffs' experts are still in the course of obtaining and analyzing the pertinent information and data, and have not yet submitted reports on these issues. The representative plaintiffs are responding here to the

best of their ability, based on the information currently at their disposal.

A number of these interrogatories are not germane to certain plaintiffs or to certain claims. For example, the bank plaintiffs are not natural persons and therefore are not subject to exposure to hazardous substances or concomitant increased risks of disease. Similarly, certain interrogatories are germane only to the claims of the representatives of the Medical Monitoring Class and not to plaintiffs who are serving as representatives of only the Property Class. Where responses to particular interrogatories are offered by only some of the representative plaintiffs, the response so indicates.

Where a response gives information common to all class representatives responding to that interrogatory, each responding plaintiff's verification is expected to be applicable to that response. Where a response contains information peculiarly within the personal knowledge of one or more responding plaintiffs (e.g., location of residence), the response indicates that such information is subject to verification by the relevant responding plaintiff only.

**RESPONSES TO INTERROGATORIES**

1.    Identify and list each radionuclide or other hazardous substance that you maintain you have been significantly exposed to due to routine or non-routine releases from Rocky Flats.

> **Response:** This interrogatory is applicable only to the representatives of the Medical Monitoring Class, who respond as follows:

*REPRESENTATIVE PLAINTIFFS' RESPONSES TO DOW'S CONTENTION INTERROGATORIES – PAGE 3*

The representative plaintiffs for the Medical Monitoring Class have only limited personal knowledge responsive to this interrogatory. In general, the radionuclides and other hazardous substances released from Rocky Flats to which responding plaintiffs and members of the Medical Monitoring Class were exposed were not perceptible to the senses at the time and location of the exposures. Responding plaintiffs were not warned of such releases at the time of their occurrence, and in general no attempt was made, by defendants or anyone else, to measure the concentrations of these hazardous substances in plaintiffs' immediate vicinity at the time of exposure. It is the understanding of responding plaintiffs that past releases from Rocky Flats, and the consequent exposures of plaintiffs and class members to plutonium and other hazardous substances, must be estimated through a process known as dose reconstruction, which involves complex analysis of technical data and other information by persons with the requisite scientific, medical, or other appropriate expertise. The class representatives are laypersons who do not possess the specialized knowledge or training that would qualify them to offer expert opinions on these subjects. They intend to rely for this purpose on reports and testimony from certain of the testimonial experts they designated on May 5, 1995, pursuant to this Court's directive. With fact discovery still in progress, those experts are in the course of gathering and analyzing the pertinent data and information, and their reports are not yet available.

Responding plaintiffs nevertheless offer the following information as their best current understanding. The radioactive substances released from Rocky Flats to which it is believed that members of the Medical Monitoring Class were significantly exposed are:

- americium
- cesium
- plutonium
- strontium
- thorium
- tritium
- uranium

The non-radioactive substances are:

- beryllium
- carbon tetrachloride
- ethylene oxide

Exposures to each of these substances are believed to have been significant in themselves, without regard to contributions from exposures to additional materials. In

addition, an enormous quantity and variety of other hazardous substances were routinely used at Rocky Flats throughout its years of operation. As a consequence, routine and non-routine releases of these hazardous substances occurred and contributed to off-site exposures. Such substances are identified in inventories developed by ChemRisk, the Phase I contractor for the Colorado Department of Health's Rocky Flats Toxicological Review and Dose Reconstruction study, in Tasks 1 and 2 of its study, including the underlying Rocky Flats Plant chemical inventories of 1974 and 1988/89. Exposure to these additional hazardous substances is believed to have been significant on a statistically cumulative basis.

Exposures to some or all of the foregoing hazardous substances may have varied as a function of time, duration, and location of residence. The exposures of the relevant representative plaintiffs are addressed in response to interrogatory number 2.

2.    For each radionuclide or other hazardous substance identified in response to Interrogatory No. 1, please provide the following:

(a)   The date(s) of exposure;

(b)   The source of the release;

(c)   The duration of the exposure;

(d)   The mode of exposure, i.e., inhalation, ingestion, etc.

(e)   The dose.

(f)   The location where the exposure occurred.

Response: This interrogatory is applicable only to the representatives of the Medical Monitoring Class, who respond as follows:

(a)   Dates of Exposure. See response to interrogatory number 1. It is believed that the representative plaintiffs was exposed to each of the hazardous substances at issue on a continuing basis during their residency within the Medical Monitoring Class area. The geographic boundaries of the Medical Monitoring Class area are set forth in Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Class Certification, at 19-22 (filed June 28, 1993). For a chronology of the representative plaintiffs' residential histories by date and location, Dow is referred to the

*REPRESENTATIVE PLAINTIFFS' RESPONSES TO DOW'S CONTENTION INTERROGATORIES -- PAGE 5*

following interrogatory responses served by the representative plaintiffs on October 30, 1992, and subject to their respective verifications here: Responses to Dow's Interrogatories Directed to Individual Class Representatives Richard and Sally Bartlett (response to interrogatory 1, at page 2); Responses to Dow's Interrogatories Directed to Individual Class Representatives Thomas L. and Rhonda J. Deimer (response to interrogatory 1, at page 2); Responses to Dow's Interrogatories Directed to Individual Class Representative Michael Dean Rice (response to interrogatory 1, at page 2); Responses to Dow's Interrogatories Directed to Individual Class Representatives Stephen M. and Peggy J. Sandoval (response to interrogatory 1, at page 2); and Responses to Dow's Interrogatories Directed to Individual Class Representatives William and Delores Schierkolk (response to interrogatory 1, at page 2).

In general, it is believed that exposure to plutonium and americium came in waves associated with specific non-routine releases (e.g., the 1957 and 1969 fires; the 903 pad), as well as continuing subsequent exposures from wind-driven resuspension. Routine releases are also believed to have contributed to radionuclide exposures. Volatile organic compounds (e.g., carbon tetrachloride) were regularly released from Rocky Flats as a part of routine operations.

(b) <u>Source of Release</u>. See response to interrogatory number 1. The following response represents responding plaintiffs' best understanding: The hazardous substances at issue were released from the Rocky Flats nuclear weapons plant. Both routine and accidental releases of radioactive and nonradioactive hazardous substances have occurred on virtually a continuous basis throughout the tenure of both Dow and Rockwell as operators of the Rocky Flats facility. Various on-site processes and conditions that led to the release of radionuclides and other hazardous substances to which responding plaintiffs and members of the Medical Monitoring Class have been exposed include: normal operations; accidents, including, fires, spills and leaks; accelerated operations; experiments; and waste handling, storage and disposal. Responding plaintiffs further understand that specific release mechanisms have been previously identified by Dr. Jan Beyea in connection with the representative plaintiffs' Motion for Class Certification. These release mechanisms include:

1) Monitored and unmonitored releases through emissions of gases, particulates, and liquids through effluent stacks or pipes;

2)   Deliberate releases of radionuclides and other hazardous substances, including dumping and burning of waste materials;

3)   Releases resulting from deliberate and accidental bypasses of filtering and monitoring systems;

4)   Fugitive emissions associated with pathways other than effluent pipes, stacks, or vents, including passage of liquids and gases through leaks, leaks in the normal effluent pathway, gaps in building containments, outdoor industrial operations, and resuspension of hazardous substances located within the plant boundaries, which is a major source of offsite plutonium contamination; and

5)   Unmonitored "backdoor" releases, such as blowback of air through the ventilation system, operations where building containment was compromised, and sale to the public of accidentally contaminated materials.

See Declaration of Dr. Jan Beyea dated June 15, 1993, which was attached as Exhibit A to Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Class Certification (filed June 28, 1993) ("Beyea Class Declaration").

     (c)   Duration of Exposure.  See response to interrogatory number 2(a).

     (d)   Mode of Exposure.  See response to interrogatory number 1.  Most of the exposures are believed to have occurred via inhalation.  Investigation of exposures via other pathways (e.g., ingestion of drinking water) is continuing.

     (e)   Dose.  In compliance with the Court's directive, plaintiffs identified their testimonial experts on May 5, 1995.  Those experts have not completed their calculations regarding dose.  Preliminary estimates of doses for the representatives of the Medical Monitoring class were previously provided for certain substances in the Declaration of Dr. Jan Beyea dated December 24, 1992, which was attached as Exhibit A to the Representative Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion of Defendants Rockwell and Dow to Dismiss Class Claims Under Fed. R. Civ. P. 11 and 37 (filed Jan. 13, 1993).  For plutonium (and accompanying americium), those estimates were expressed as dose commitments to specific organs (in rems) as follows:

### DOSE COMMITMENT TO SPECIFIC ORGAN (rem)

| PLAINTIFF | Bone | Liver | Lung |
|-----------|------|-------|------|
| Richard Bartlett | 15.00 | 6.00 | 4.00 |
| Sally Bartlett | 15.00 | 6.00 | 4.00 |
| Thomas Deimer | 2.25 | 0.90 | 0.60 |
| Rhonda Deimer | 2.25 | 0.90 | 0.60 |
| Michael Rice | 3.00 | 1.20 | 0.75 |
| Stephen Sandoval | 4.50 | 1.80 | 1.10 |
| Peggy Sandoval | 4.50 | 1.80 | 1.10 |
| William Schierkolk | 15.00 | 6.00 | 4.00 |
| Delores Schierkolk | 15.00 | 6.00 | 4.00 |

It was estimated that the Bartletts, the Deimers, Mr. Rice, the Sandovals, and the Schierkolks were exposed to beryllium via inhalation at a concentration of 0.6 micrograms per cubic meter during their residence within the Medical Monitoring Class area. Exposure to ethylene oxide by inhalation was estimated at a concentration of six micrograms per cubic meter over a four-year period for the Bartletts and the Schierkolks. Exposure to carbon tetrachloride by inhalation was estimated as follows (with concentrations expressed in micrograms per cubic meter of ambient air):

| PLAINTIFF | DURATION | CONCENTRATION |
|-----------|----------|---------------|
| Richard Bartlett | 15 years | 1.00 |
| Sally Bartlett | 15 years | 1.00 |
| Thomas Deimer | 9 years | 0.50 |
| Rhonda Deimer | 9 years | 0.50 |
| Michael Rice | 4 years | 0.75 |
| Stephen Sandoval | 7 years | 0.60 |
| Peggy Sandoval | 7 years | 0.60 |
| William Schierkolk | 15 years | 1.00 |
| Delores Schierkolk | 15 years | 1.00 |

Plaintiffs' experts are in the course of preparing more current estimates of exposures and doses for these and other hazardous substances released from Rocky Flats. It is believed that their analysis, once completed, will permit estimation of exposures and doses not only for the representatives of the Medical Monitoring Class, but also for class members in general.

(f) <u>Location of Exposure</u>. See response to interrogatory number 2(a). Exposures also occurred as plaintiffs engaged in routine travels within the Medical Monitoring Class area.

3. Did you seek medical treatment for any of the exposures identified in Interrogatory No. 2? If so, please identify: (a)

*REPRESENTATIVE PLAINTIFFS' RESPONSES TO DOW'S CONTENTION INTERROGATORIES -- PAGE 8*

each medical care facility; (b) each physician, psychiatrist, psychologist, nurse or other health care provider who provided treatment; and (c) the date of each treatment.

> **Response:** This interrogatory is applicable only to the representatives of the Medical Monitoring Class, who respond as follows: No, except insofar as previously disclosed to defendants in the prior discovery responses identified in the next paragraph. Responding plaintiffs do not allege that their exposures to hazardous substances from Rocky Flats have caused them to suffer any manifest physical injury that would currently call for medical "treatment." Nor have responding plaintiffs been made aware of any sudden, acute exposures of a magnitude likely to lead to immediate health effects and warranting medical intervention for that reason. Rather, responding plaintiffs believe that they have been subject to continuing and chronic exposures to hazardous substances released from Rocky Flats over a period of years, of the kind that may ultimately cause cancer or other latent diseases.
>
> The following responsive information is subject to separate verification by the respective responding plaintiffs: Plaintiffs have previously provided defendants with personal medical records in their own possession, and have previously authorized defendants to obtain medical records from responding plaintiffs' health care providers. For information responsive to this interrogatory and concerning the respective responding plaintiffs' medical histories in general, plaintiffs refer Dow to those records. Responding plaintiffs also refer Dow to their deposition testimony on this subject, and to responding plaintiffs' respective interrogatory responses on this subject served October 30 and November 4, 1992.

4. For each date(s) of exposure identified in response to Interrogatory No. 2(a), please provide a complete chronology of your activities on that date(s).

> **Response:** Dow has agreed that the representative plaintiffs are not required to respond to this interrogatory at this time. In addition, pursuant to Fed. R. Civ. P. 33(b)(1) and 72, plaintiffs have previously asserted objections to answering this interrogatory, and those objections are incorporated here by reference.

5. For each dose described in response to Interrogatory No. 2(e), please identify:

*REPRESENTATIVE PLAINTIFFS' RESPONSES TO DOW'S CONTENTION INTERROGATORIES -- PAGE 9*

     (a)   The methodology used in calculating your dose; and

     (b)   All documents that relate to either your dose or
the methodology used in calculating your dose.

**Response:** This interrogatory is applicable only to the
representatives of the Medical Monitoring Class, who respond
as follows:

     (a)  <u>Methodology</u>.  The methods used to calculate the
preliminary estimated doses for the representative plaintiffs
given in response to interrogatory number 2(e) were given in
the declaration referenced in that response.  Plaintiffs'
testimonial experts, who were designated pursuant to the
Court's directive on May 5, 1995, are in the course of
preparing their own estimates of exposure and dose for
responding plaintiffs and members of the Medical Monitoring
Class.  The specific methods employed will not be known to
responding plaintiffs until those reports are completed.

     (b)  <u>Documents</u>.  Documents consulted by Dr. Beyea in the
course of preparing the preliminary estimated doses for
responding plaintiffs and members of the Medical Monitoring
Class described in response to interrogatory 2(e) have
previously been identified in the 11 page bibliography
attached to the Statement of Factual Basis for Plaintiffs'
Claims, dated August 14, 1992, at pp. 50-60.  Plaintiffs'
testimonial experts, who were designated on May 5, 1995,
pursuant to the Court's directive, are in the course of
preparing their own estimates of exposure and dose for
responding plaintiffs and members of the Medical Monitoring
Class. The specific documents on which they rely will not be
known to responding plaintiffs until those reports are
completed.

     Apart from papers previously filed by the parties in this
litigation, responding plaintiffs are aware of no documents
purporting to state or estimate their personal exposures to or
doses from hazardous substances released from Rocky Flats.

6.    For each dose described in response to Interrogatory No.

2(e), please identify each person who is knowledgeable concerning

your dose.    (Note: Experts identified in response to this

interrogatory should be identified as such.)

     **Response:** This interrogatory is applicable only to the
representatives of the Medical Monitoring Class, who respond
as follows: In general, the radionuclides and other hazardous
substances released from Rocky Flats to which responding

plaintiffs and members of the Medical Monitoring Class were exposed were not perceptible to the senses at the time and location of the exposures. Responding plaintiffs were not warned of such releases at the time of their occurrence, and in general no attempt was made, by defendants or anyone else, to measure the concentrations of these hazardous substances in plaintiffs' immediate vicinity at the time of exposure. It is the understanding of responding plaintiffs that past releases from Rocky Flats, and the consequent exposures of plaintiffs and class members to plutonium and other hazardous substances, must be estimated through a process known as dose reconstruction, which involves complex analysis of technical data and other information by persons with the requisite scientific, medical, or other appropriate expertise. Specialized expertise is also required for evaluation of the health effects associated with various doses of hazardous substances. Responding plaintiffs intend to rely for this purpose on reports and testimony from certain of the testimonial experts designated on May 5, 1995, pursuant to the Court's directive. The pertinent experts are:

- Baruch S. Blumberg
- Robert J. Budnitz
- Richard W. Clapp
- Thomas B. Cochran
- Roland A. Finston
- H. Jack Geiger
- Robert L. Goble
- Michael Gochfeld
- Bernd Kahn
- Lawrence S. Mayer
- Richard A. Parent
- Edward P. Radford
- Daniel Teitelbaum

For the expected subject matter of their reports and testimony, Dow is referred to Plaintiffs' Identification of Planned Testimonial Experts, Subjects of Expected Expert Testimony and Hazardous Substances at Issue (May 5, 1995).

7. If you contend that The Dow Chemical Company was negligent in any way concerning any routine or non-routine releases of radionuclides or other hazardous substance from Rocky Flats, describe or identify in detail the following:

(a) Each negligent act or omission;

(b) The amount of radiation or other hazardous substance that was released by each negligent act or omission;

(c) The amount of radiation or other hazardous substance that travelled off-site due to each negligent act or omission; and

(d) Every person known to you that was exposed to significant amounts of radiation or other hazardous substance due to each negligent act or omission.

**Response:** The representative plaintiffs have only limited personal knowledge responsive to this interrogatory. Rocky Flats is a secure facility, and the representative plaintiffs were not percipient witnesses to the day-to-day operations of the site. Moreover, in general, the radionuclides and other hazardous substances released from Rocky Flats to which responding plaintiffs and members of the classes (and their properties) were exposed were not perceptible to the senses at the time and location of the exposures. Responding plaintiffs were not warned of such releases at the time of their occurrence, and in general no attempt was made, by defendants or anyone else, to measure the concentrations of these hazardous substances in plaintiffs' immediate vicinity, or that of their land, at the time of the releases. It is the understanding of responding plaintiffs that past releases from Rocky Flats, and the consequent exposures of plaintiffs and class members to plutonium and other hazardous substances, must be estimated through a process known as dose reconstruction, which involves complex analysis of technical data and other information by persons with the requisite scientific, medical, or other appropriate expertise. The class representatives are laypersons who do not possess the specialized knowledge or training that would qualify them to offer expert opinions on these subjects. They intend to rely for this purpose on reports and testimony from certain of the testimonial experts they designated on May 5, 1995, pursuant to this Court's directive. Those experts are in the course of gathering and analyzing the pertinent data and information, and their reports are not yet available. With fact discovery still in progress, investigation is continuing.

The representative plaintiffs nevertheless respond to the best of their current ability, as follows:

(a) <u>Negligent Acts and Omissions</u>. Based on documents obtained in discovery, plaintiffs are able to identify a number of specific negligent acts and omissions at this time. See Exhibit E hereto. Plaintiffs do not vouch for the accuracy of every statement in the documents cited in Exhibit E. Plaintiffs did not create these documents and did not

witness the events to which they relate.   However, it is believed that these documents offer evidence of negligence. Investigation is continuing.

(b)   <u>Amount Released Through Each Negligent Act or Omission</u>.   Dow's negligence included an ongoing failure to afford adequate monitoring or sampling that might facilitate estimates of releases attributable to particular incidents. For this and other reasons, including those discussed above, the representative plaintiffs are not personally able to quantify the releases associated with each of Dow's negligent acts.   It is responding plaintiffs' understanding that even experts in dose reconstruction may be unable to determine, based on existing data, the precise fraction of plaintiffs' and class members' exposures associated with "each negligent act or omission" committed by Dow.   Nevertheless, plaintiffs refer Dow to Exhibit E hereto, summarizing estimates by Dow and others of releases associated with a number of incidents and conditions attributable to Dow's failure to exercise reasonable care.

(c)   <u>Amount that Travelled Off-Site</u>.   See response to interrogatory 7(b).

(d)   <u>Every Person Exposed</u>.  See response to interrogatory number 7(b).  Persons exposed to plutonium and other hazardous substances released by Dow are believed to include many thousands of members in the Medical Monitoring Class Area. Responding plaintiffs do not have the expertise in the relevant fields to identify every person exposed, and intend to rely on the reports and testimony of their experts to estimate exposures on a class-wide basis.

8.   If you contend that as a result of the 1957 fire that you have been significantly exposed to radiation, then identify:

(a)   The dose that you received due to the 1957 fire;

(b)   The method you used to calculate your dose; and

(c)   Where you were living during the year 1957.

<u>Response</u>: This interrogatory is applicable only to the representatives of the Medical Monitoring Class, who respond as follows:

(a)   <u>Dose</u>.   Responding plaintiffs do contend that releases from the 1957 fire, including plutonium originally released during that fire and subsequently resuspended, have contributed to their significant exposures to plutonium.   It is responding plaintiffs' understanding that the preliminary

dose estimates previously provided by plaintiffs were for exposure from all plutonium releases from Rocky Flats, based on back-calculations from soil measurements and dispersion estimates, in part because contemporaneous monitoring data for incidents such as the 1957 fire were inadequate or unavailable.   Plaintiffs are seeking access to information relating to "Material Unaccounted For" at Rocky Flats that may eventually contribute to estimates of plutonium releases and consequent exposures resulting from the 1957 fire and other incidents, but defendants' indemnitor, the United States Department of Energy, has not yet provided this information to plaintiffs.  For these reasons, as well as the reasons already given in response to interrogatory number 1, responding plaintiffs cannot currently estimate what fraction of their plutonium dose is attributable to plutonium released during the 1957 fire.

(b)  Method.  See response to interrogatory number 8(a).

(c)  Residence.   See response to interrogatory 2(a). Because plutonium originally released in the 1957 fire has subsequently been resuspended, it is responding plaintiffs' understanding that exposures attributable to the fire did not end when the fire was put out, but persisted long thereafter.

9.   If you contend that as a result of the 1969 fire that you have been significantly exposed to radiation, then identify:

(a)  The dose that you received due to the 1969 fire;

(b)  The method you used to calculate your dose; and

(c)  Where you were living during the year 1969.

Response: This interrogatory is applicable only to the representatives of the Medical Monitoring Class, who respond as follows:

(a)  Dose.   Responding plaintiffs do contend that releases from the 1969 fire and other incidents, including plutonium originally released during that fire and subsequently resuspended, have contributed to their significant exposures to plutonium.   It is responding plaintiffs' understanding that the preliminary dose estimates previously provided by plaintiffs were for exposure from all plutonium releases from Rocky Flats, based on back-calculations from soil measurements and dispersion estimates, in part because contemporaneous monitoring data for incidents such as the 1969 fire were inadequate or unavailable. Plaintiffs are seeking access to information relating to "Material Unaccounted For" at Rocky Flats that may eventually

*REPRESENTATIVE PLAINTIFFS' RESPONSES TO DOW'S CONTENTION INTERROGATORIES -- PAGE 14*

contribute to estimates of plutonium releases and consequent exposures resulting from the 1969 fire and other incidents, but defendants' indemnitor, the United States Department of Energy, has not yet provided this information to plaintiffs. For these reasons, as well as the reasons already given in response to interrogatory number 1, responding plaintiffs cannot currently estimate what fraction of their plutonium dose is attributable to plutonium released during the 1969 fire.

      (b)  <u>Method</u>. See response to interrogatory number 9(a).

      (c)  <u>Residence</u>.  See response to interrogatory 2(a). Because plutonium originally released in the 1969 fire has subsequently been resuspended, it is responding plaintiffs' understanding that exposures attributable to the fire did not end when the fire was put out, but persisted long thereafter.

10.  If you contend that as a result of the releases from the 903 Pad that you have been significantly exposed to radiation or other hazardous substances, then identify:

      (a)  The dose that you received due to the releases from the 903 Pad;

      (b)  The method you used to calculate your dose; and

      (c)  Where you were living during the years 1966-1971.

**Response:** This interrogatory is applicable only to the representatives of the Medical Monitoring Class, who respond as follows:

      (a)  <u>Dose</u>.  Responding plaintiffs do contend that releases from 903 Pad, including plutonium originally released and subsequently resuspended, have contributed to their significant exposures to plutonium.  It is responding plaintiffs' understanding that the preliminary dose estimates previously provided by plaintiffs were for exposure from all plutonium releases from Rocky Flats, based on back-calculations from soil measurements and dispersion estimates, in part because contemporaneous monitoring data for incidents such as the 903 Pad releases were inadequate or unavailable. Plaintiffs are seeking access to information relating to "Material Unaccounted For" at Rocky Flats that may eventually contribute to estimates of plutonium releases and consequent exposures resulting from 903 Pad releases and other incidents, but defendants' indemnitor, the United States Department of Energy, has not yet provided this information to plaintiffs. For these reasons, as well as the reasons already given in

response to interrogatory number 1, responding plaintiffs cannot currently estimate what fraction of their plutonium dose is attributable to plutonium released from the 903 Pad.

(b)  Method.  See response to interrogatory number 10(a).

(c)  Residence.  See response to interrogatory 2(a).  In part because plutonium originally released from the 903 Pad has subsequently been resuspended, it is responding plaintiffs' understanding that exposures attributable to releases from the 903 Pad did not end in 1971, but persisted long thereafter.

11.  If you contend that as a result of the burning of waste oil that you have been significantly exposed to radiation or other hazardous substances, then identify:

(a)  The dose that you received due to the waste oil burning; and

(b)  The method you used to calculate your dose.

Response: This interrogatory is applicable only to the representatives of the Medical Monitoring Class, who respond as follows:

(a)  Dose.  Responding plaintiffs do contend that releases from Dow's deliberate burning of many thousands of gallons of contaminated waste oil have contributed to their significant exposures to radioactive hazardous substances. Dow burned more than 1000 drums of contaminated oil in the open air between approximately 1956 and 1965. See Putzier, "A Summary of On Site Radioactive Waste Disposal" (April 22, 1970), at 2-3 [EMF 0013927].  Dow failed to keep accurate records of how much contaminated oil was burned.  Id. ("[I]t is not clear how many were 30-gallon capacity drums and how many were 55-gallon capacity drums.").  The oil was contaminated with, among other substances, uranium.  See Lee, "Burial of Radioactive Contaminated Waste on the Rocky Flats Plant Site" (undated), at 29 (Bates No. GRM02911, 02913); Owen & Steward, "A Historical Summation of Environmental Incidents Affecting Soils at or Near the U.S.AEC Rocky Flats Plant" (draft), at 41 (Bates No. CHAV00848, 889).  Dow itself recognized that the open-pit burning of uranium-contaminated oil spewed radioactivity into the air at a rate at least 300% to 600% higher than the alleged rate at which contamination was being released through the plant stacks during routine operations in 1961.  See Letter dated February 13, 1961 from E.S. Ryan to J.G. Epp (Doty Doc. B 00010546).  Plaintiffs do not vouch for the accuracy of every statement in the documents

cited here. Plaintiffs did not create these documents and did not witness the events to which they relate. However, it is believed that these documents offer evidence of significant releases and consequent exposures. Plaintiffs investigations are continuing and plaintiffs expect that they will identify additional documents relevant to this subject.

In part for the reasons already given in response to interrogatory number 1, responding plaintiffs do not know the precise amount of uranium and other hazardous substances to which they have been exposed as a result of Dow's burning of contaminated oil. Dow kept incomplete and inadequate records regarding the precise contents of this contaminated oil, as well as the off-site contamination which resulted. The plaintiffs contend that the burning of waste oil, however, contributed to their significant exposures. Uranium (and other hazardous substances) carried off-site through the air was available to be deposited in soil, and from there was available to be resuspended, redistributed, and inhaled.

(b)   Method. See response to interrogatory number 11(a).

12.   If you contend that as a result of the burial of waste drums that you have been significantly exposed to radiation or other hazardous substances, then identify:

(a)   The dose that you received due to the drum burial;

(b)   The method you used to calculate your dose.

Response: This interrogatory is applicable only to the representatives of the Medical Monitoring Class, who respond as follows:

(a)   Dose.   Responding plaintiffs do contend that releases resulting from Dow's deliberate burial of waste drums contributed to their significant exposures to radioactive hazardous substances. Dow buried huge amounts of radioactive waste on-site. In one area, known as the "Mound Area," Dow buried at least 1483 drums containing liquid and solid wastes contaminated with uranium and plutonium. These burials began at least as early as 1954. See Putzier, "A Summary of On Site Radioactive Waste Disposal" (April 22, 1970), at 1-2 [EMF 0013927]. These drums corroded, many developed holes, and they eventually were removed. See id.; Letter dated June 2, 1970, from R.M. Vogel to E.A. Putzier. By definition, Dow did not monitor these leaks as they developed. Soil near the Mound Area was measured by Dow itself as being contaminated with radioactivity to a level of 112 dpm/g -- a level 56 times the standard which defendants contend is applicable to off-

site soil.  See Owen & Steward, "A Historical Summation of Environmental Incidents Affecting Soils at or Near the U.S.AEC Rocky Flats Plant" (draft), at 41.  Dow buried many thousands of pounds of radioactive waste in other sites scattered around the plant.  See, e.g. Illsley, "Environmental Inventory: Updated Information on Burial Sites at Rocky Flats" (January 28, 1983) [EMF 00003408]; Owen & Steward, at 41-44.  Dow kept poor records of these burials.  See Putzier, "A Summary of On Site Radioactive Waste Disposal" at 1 ("There are obvious omissions in records").  Dow itself has admitted that many of the burials violated restrictions that would have been placed on a licensee of the Atomic Energy Commission.  See "Environmental Awareness Council: Rocky Flats Data Sheet" (1/29/71), at 1 [EMF 00003030].  Plaintiffs do not vouch for the accuracy of every statement in the documents cited here. Plaintiffs did not create these documents and did not witness the events to which they relate.  However, it is believed that these documents offer evidence of significant releases and consequent exposures.

Plaintiffs contend that the burial of radioactive waste on site has contributed to their exposures.  Radioactive waste buried underground contaminated the soil on-site (see the Mound Area, for example).  Plaintiffs believe that the wind has carried some amount of this contamination off-site.  In part for the reasons already given in response to interrogatory number 1, plaintiffs do not know the precise amount of uranium and other hazardous substances to which they have been exposed as a result of Dow's burial of waste on site.

(b)  Method.  See response to interrogatory number 12(a).

13.  Do you contend that Chemrisk Task 5, 6, 7, and 8 reports are inaccurate, misleading or deficient in any way?  If yes, then please set forth each inaccuracy, misleading statement or deficiency.

Response: Dow has agreed that the representative plaintiffs are not required to respond to this interrogatory at this time.  In addition, pursuant to Fed. R. Civ. P. 33(b)(1) and 72, plaintiffs have previously asserted objections to answering this interrogatory, and those objections are incorporated here by reference.

14.   Do you contend that you live on land that contains plutonium ("Pu") in the soil in excess of 2 dpm? If your answer is yes, then describe or identify:

(a)   The level of Pu in the soil; and

(b)   The method used to sample the soil.

**Response:**   Responding plaintiffs do not know whether they currently live on land containing plutonium in excess of 2 dpm (two disintegrations per minute per gram of dry soil).   The representative plaintiffs have already provided defendants with the results of all soil tests known to have been conducted on their property. Responding plaintiffs refer Dow to the following: Responses to Rockwell's Interrogatories Directed to Individual Class Representative Merilyn Cook, dated November 4, 1992, at 5; Responses to Rockwell's Interrogatories Directed to Individual Class Representative Richard Bartlett, dated November 4, 1992, at 5-6; Responses to Rockwell's Interrogatories Directed to Individual Class Representative Richard Bartlett, dated November 4, 1992, at 5-6. Plaintiffs understand that the results of spot soil tests reflect measurements of radioactivity in particular samples, but that the results do not necessarily apply to an entire area or parcel.   The level of radioactivity that would be found in other samples is not known.

Defendants have contended that the state of Colorado has adopted a standard for plutonium in soil of 2 dpm/g (two disintegrations per minute per gram of dry soil).   The representative plaintiffs contend that soil off-site from the Rocky Flats plant has been contaminated with plutonium in amounts in excess of this figure due to releases from Rocky Flats.   We refer Dow to the following documents: ChemRisk A000014767, A000014821, Church I-1841, DOTY B17870, New Church DNR-4479, DNR4491; Rocky Flats Environmental Monitoring Results (March 1971), at Table VIII; Rocky Flats Environmental Monitoring Results (May 1970); Annual Report: Environmental Safeguard '71, Dow Chemical U.S.A. (Jan-Dec. 1971), at Table X; Annual Environmental Monitoring Report Rocky Flats Plant, Dow Chemical U.S.A., (Jan-Dec. 1972), at Table 16; US AEC Rocky Flats Plant 1973 Environmental Surveillance Summary Report, Colorado Department of Health (1973), at 57; US AEC Rocky Flats Plant 1973 Environmental Surveillance Summary Report, Colorado Department of Health (1973), at 31.   Plaintiffs did not create these documents, and do not vouch for their accuracy in every respect.   However, they do indicate that soil off-site has been contaminated above the 2 dpm/g level. We refer Dow also to Plaintiffs' Responses to Defendant Rockwell's Second Set of Requests for Production of Documents

Directed to the Representative and Class Plaintiffs, dated June 30, 1995, at 3-4 & Exhs. 1 and 2. Dow's co-defendant, Rockwell International Corporation, asked plaintiffs to identify documents relating to measurements of plutonium in soil. In plaintiffs' responses dated June 30, 1995, plaintiffs identified a number of documents relating to measurements of plutonium in soil in excess of 2 dpm/g. Although these documents date from Rockwell's tenure at Rocky Flats, the plutonium measured may have been released by Dow. Plutonium in soil is subject to resuspension into the air. The Medical Monitoring Plaintiffs contend that they have been exposed to plutonium resuspended from off-site areas contaminated with plutonium at levels in excess of 2 dpm/g, as well as from areas contaminated with plutonium below this level.

15.   Do you contend that at any time you have inhaled air that contained plutonium in excess of .001 pCi/m$^3$?

**Response:** This interrogatory is applicable only to the representatives of the Medical Monitoring Class, who respond as follows: Yes. It is responding plaintiffs' understanding that the geographic boundaries of the Medical Monitoring Class were defined in part by reference to an area where average annual air concentrations for plutonium were preliminarily estimated to range from .003 to 0.12 picocuries per cubic meter.

16.   If your answer to Interrogatory No. 15 is anything other than an unqualified no, then describe or identify:

(a)   The date(s) on which that inhalation occurred;

(b)   The location where the inhalation occurred;

(c)   The source of the elevated air concentration; and

(d)   The type of air monitor or other measuring device used to measure the air concentration.

**Response:** This interrogatory is applicable only to the representatives of the Medical Monitoring Class, who respond as follows: See response to interrogatory numbers 1 & 2. As to subpart (d) of this interrogatory, responding plaintiffs do not understand Dow's apparent assumption that some sort of "measuring device" was present or available in responding plaintiffs' proximity at the time their exposures occurred. So far as responding plaintiffs are aware, none was.

17.   Do you contend that you are at a substantially increased risk of illness or death due to routine or non-routine releases of radionuclides or other hazardous substances from Rocky Flats.

If yes, then:

(a)   Quantify the extent to which your risk has been increased; and

(b)   Identify the specific illnesses, if any, for which you are now at an increased risk of contracting.

**Response:**   This interrogatory is applicable only to the representatives of the Medical Monitoring Class, who respond as follows: Responding plaintiffs do contend that they and members of the Medical Monitoring Class are at increased risk of serious illness or disease due to routine and non-routine releases of radionuclides and other hazardous substances from Rocky Flats.   Responding plaintiffs are laypersons who do not possess the specialized knowledge or training that would qualify them to offer expert opinions on these subjects.   They intend to rely for this purpose on reports and testimony from certain of the testimonial experts designated on May 5, 1995, pursuant to this Court's directive.   With fact discovery still in progress, those experts are in the course of gathering and analyzing the pertinent data and information, and their reports are not yet available.     Nonetheless, responding plaintiffs have been previously advised by one of their experts, Dr. Michael Gochfeld, that "persons residing near Rocky Flats have been significantly exposed to radioactive and non-radioactive hazardous substances released from Rocky Flats, thereby increasing their risk of serious latent disease."   See Declaration of Dr. Michael Gochfeld dated June 18, 1993, which was attached as Exhibit B to Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Class   Certification,   paragraph   3   (filed   June   28, 1993)("Gochfeld Class Declaration").   Moreover, Dr. Gochfeld determined that based on the preliminary exposure estimates made at that juncture in discovery, and given the significance of those exposures, the associated risks to area residents warranted medical monitoring, which Dr. Gochfeld determined to be medically justified.     See Gochfeld Class Declaration, paragraph 4.     Responding plaintiffs have previously been advised by Dr..Gochfeld that "the representatives of the class have been significantly exposed to hazardous radioactive and non-radioactive substances; however, the full nature and extent of this exposure awaits further characterization upon the completion of discovery."   See Declaration of Dr. Michael Gochfeld dated December 24, 1992, which was attached as Exhibit D to the Representative Plaintiffs' Memorandum of

Points and Authorities in Opposition to Motion of Defendants Rockwell and Dow to Dismiss Class Claims Under Fed. R. Civ. P. 11 and 37, paragraph 2 (filed Jan. 13, 1993)("Gochfeld Rule 11/37 Declaration").

(a) <u>Quantification of Risk</u>. Quantitative assessment of the increase in risk to responding plaintiffs and members of the Medical Monitoring Class that is associated with their exposure to radionuclides and other hazardous substances released from Rocky Flats is necessarily dependent on a quantification of those exposures and calculation of the resulting dose estimates. It is the understanding of responding plaintiffs that past releases from Rocky Flats, and the consequent exposures of plaintiffs and class members to plutonium and other hazardous substances, must be estimated through a process known as dose reconstruction, which involves complex analysis of technical data and other information by persons with the requisite scientific, medical, or other appropriate expertise. The class representatives are laypersons who do not possess the specialized knowledge or training that would qualify them to offer expert opinions on these subjects. They intend to rely for this purpose on reports and testimony from certain of the testimonial experts designated on May 5, 1995, pursuant to this Court's directive. With fact discovery still in progress, those experts are in the course of gathering and analyzing the pertinent data and information, and their reports are not yet available.

(b) <u>Specific Illnesses</u>. The class representatives are laypersons who do not possess the specialized knowledge or training that would qualify them to offer expert opinions on these subjects. A determination of the specific illnesses or diseases for which responding plaintiffs and members of the Medical Monitoring Class are at increased risk due to their exposure to radionuclides and other hazardous substances released from Rocky Flats requires specialized expertise in such scientific and medical disciplines as health physics, toxicology and environmental medicine. They intend to rely for this purpose on reports and testimony from certain of the testimonial experts designated on May 5, 1995, pursuant to this Court's directive. With fact discovery still in progress, those experts are in the course of gathering and analyzing the pertinent data and information, and their reports are not yet available. Nevertheless, responding plaintiffs have previously been advised by one of plaintiffs' experts, Dr. Michael Gochfeld, that based on preliminary estimates of responding plaintiffs' exposures previously provided to defendants, those exposures were significant and responding plaintiffs are at increased risk of developing: cancer, including leukemia and cancer of the bone, liver and lung; immune disfunction, including bone marrow depression; and other liver, kidney and lung diseases. <u>See</u> Gochfeld Rule

11/37 Declaration, paragraphs 3, 5; Gochfeld Class Declaration, paragraph 3.

18. Do you contend that The Dow Chemical Company failed to comply with the state of the art as it pertains to any of the following for the years 1950-1957.

        (a)  Disposal of low activity (radiation) solids;

        (b)  Disposal of low activity (radiation) liquids;

        (c)  Environmental air monitoring;

        (d)  Environmental water sampling; and

        (e)  Environmental soil sampling.

**Response:** Yes, as to (a) through (e). See response to interrogatory number 22.

19. Do you contend that The Dow Chemical Company failed to comply with the state of the art as it pertains to any of the following for the years 1957-1960.

        (a)  Disposal of low activity (radiation) solids;

        (b)  Disposal of low activity (radiation) liquids;

        (c)  Environmental air monitoring;

        (d)  Environmental water sampling; and

        (e)  Environmental soil sampling.

**Response:** Yes, as to (a) through (e). See response to interrogatory number 22.

20. Do you contend that The Dow Chemical Company failed to comply with the state of the art as it pertains to any of the following for the years 1961-1969.

        (a)  Disposal of low activity (radiation) solids;

        (b)  Disposal of low activity (radiation) liquids;

        (c)  Environmental air monitoring;

*REPRESENTATIVE PLAINTIFFS' RESPONSES TO DOW'S CONTENTION INTERROGATORIES -- PAGE 23*

     (d)   Environmental water sampling; and

     (e)   Environmental soil sampling.

**Response**: Yes, as to (a) through (e).   See response to
interrogatory number 22.

21.   Do you contend that The Dow Chemical Company failed to
comply with the state of the art as it pertains to any of the
following for the years 1970-1975.

     (a)   Disposal of low activity (radiation) solids;

     (b)   Disposal of low activity (radiation) liquids;

     (c)   Environmental air monitoring;

     (d)   Environmental water sampling; and

     (e)   Environmental soil sampling.

**Response**: Yes, as to (a) through (e).   See response to
interrogatory number 22.

22.   If any of your answers to Interrogatory Nos. 18, 19, 20
and 21 is other than an unqualified no, then describe in detail how
The Dow Chemical Company failed to comply with the existing state
of the art for each failure identified.

> **Response**: It is the understanding of the representative
> plaintiffs that if a "state of the art" defense were legally
> available to Dow (which plaintiffs dispute), the burden of
> proof on such a defense would rest with Dow.   Dow has not
> described what it contends the "state of the art" to have been
> with respect to any of the subjects, or at any of the times,
> specified in interrogatory numbers 18 through 22.   Responding
> plaintiffs do not have the necessary expertise in the relevant
> fields to determine what the "state of the art," if any, may
> have been as to the subjects and times specified in
> interrogatory numbers 18 through 22, and intend to rely on
> their experts for this purpose.   Nevertheless, responding
> plaintiffs are able to identify a number of documents which
> are believed to evidence Dow's failure to comply with
> reasonable standards of care as to the subjects, and during
> the time periods, specified in interrogatory numbers 18-22,
> and refer Dow to the documents identified in Exhibit E hereto.
> Documents are coded in Exhibit E with the letters (a) through

(e) to correspond to each of the subparts of interrogatory numbers 18-22, and the dates for each document are given where known.

23. Identify the documents that you contend demonstrate that you have been exposed to significant amounts of plutonium attributable to releases from Rocky Flats during 1952 to 1975.

> **Response:** This interrogatory is applicable only to the representatives of the Medical Monitoring Class, who respond as follows: Responding plaintiffs interpret Dow's reference to documents that "demonstrate" exposure to mean documents evidencing it. For the reasons already given in response to interrogatory number 1, plaintiffs expect to rely on the reports and testimony of their experts to establish their exposures. Plaintiffs' experts' investigations are continuing, and their reports are not yet available. Plaintiffs therefore do not currently know on what documents their experts will rely.
>
> Responding plaintiffs are able to identify numerous documents that may relate to the release of plutonium from the Rocky Flats plant, and refer Dow to the documents listed in Exhibit A to these responses. Plaintiffs do not vouch for the accuracy of every statement in the documents cited here. Plaintiffs did not create these documents and did not witness the events to which they relate. However, it is believed that these documents may offer evidence of significant releases and consequent exposures.

24. Identify the documents that you contend demonstrate that you have been exposed to significant amounts of uranium attributable to releases from Rocky Flats during 1952 to 1975.

> **Response:** This interrogatory is applicable only to the representatives of the Medical Monitoring Class, who respond as follows: Responding plaintiffs interpret Dow's reference to documents that "demonstrate" exposure to mean documents evidencing it. For the reasons already given in response to interrogatory number 1, plaintiffs expect to rely on the reports and testimony of their experts to establish their exposures. Plaintiffs' experts' investigations are continuing, and their reports are not yet available. Plaintiffs therefore do not currently know on what documents their experts will rely.
>
> Responding plaintiffs are able to identify numerous documents that may relate to the release of uranium from the

Rocky Flats plant, and refer Dow to the documents listed in Exhibit B to these responses. Plaintiffs do not vouch for the accuracy of every statement in the documents cited here. Plaintiffs did not create these documents and did not witness the events to which they relate. However, it is believed that these documents may offer evidence of significant releases and consequent exposures.

25. Identify the documents that you contend demonstrate that you have been exposed to significant amounts of americium attributable to releases from Rocky Flats during 1950 to 1975.

**Response:** This interrogatory is applicable only to the representatives of the Medical Monitoring Class, who respond as follows: Responding plaintiffs interpret Dow's reference to documents that "demonstrate" exposure to mean documents evidencing it. For the reasons already given in response to interrogatory number 1, plaintiffs expect to rely on the reports and testimony of their experts to establish their exposures. Plaintiffs' experts' investigations are continuing, and their reports are not yet available. Plaintiffs therefore do not currently know on what documents their experts will rely.

Responding plaintiffs are able to identify numerous documents that may relate to the release of americium from the Rocky Flats plant, and refer Dow to the documents listed in Exhibit C to these responses. Plaintiffs do not vouch for the accuracy of every statement in the documents cited here. Plaintiffs did not create these documents and did not witness the events to which they relate. However, it is believed that these documents may offer evidence of significant releases and consequent exposures.

26. Identify the documents that you contend demonstrate that you have been exposed to significant amounts of beryllium or any other hazardous substance attributable to releases from Rocky Flats during 1950 to 1975.

**Response:** This interrogatory is applicable only to the representatives of the Medical Monitoring Class, who respond as follows: Responding plaintiffs interpret Dow's reference to documents that "demonstrate" exposure to mean documents evidencing it. For reasons already given in response to interrogatory number 1, plaintiffs expect to rely on the reports and testimony of their experts to establish their exposures. Plaintiffs' experts' investigations are

*REPRESENTATIVE PLAINTIFFS' RESPONSES TO DOW'S CONTENTION INTERROGATORIES -- PAGE 26*

continuing, and their reports are not yet available.
Plaintiffs therefore do not currently know on what documents
their experts will rely.

Responding plaintiffs are able to identify numerous
documents that may relate to the release of beryllium and
other hazardous substances from the Rocky Flats plant, and
refer Dow to the documents listed in Exhibit D to these
responses. Plaintiffs do not vouch for the accuracy of every
statement in the documents cited here. Plaintiffs did not
create these documents and did not witness the events to which
they relate. However, it is believed that these documents may
offer evidence of significant releases and consequent
exposures.

27. Describe in detail each fact that you contend supports

your claim that you have been significantly exposed to any of the

elements described in Interrogatory Nos. 23-26.

Response: This interrogatory is applicable only to the
representatives of the Medical Monitoring Class, who respond
as follows: For the reasons already given in response to
interrogatory number 1, plaintiffs expect to rely on the
reports and testimony of their experts to establish their
exposures. Plaintiffs' experts' investigations are
continuing, and their reports are not yet available.
Plaintiffs therefore do not currently know on what facts their
experts will rely.

In addition to the documents already identified in
interrogatory numbers 23-26, plaintiffs are able to identify
further documents that may relate to their exposures, and
refer Dow to the documents listed in Exhibit E to these
responses. Plaintiffs do not vouch for the accuracy of every
statement in the documents cited here. Plaintiffs did not
create these documents and did not witness the events to which
they relate. However, it is believed that these documents may
offer evidence of significant releases and consequent
exposures.

28. Identify each report, article, study or treatise that you

contend is authoritative with respect to:

> (a) Your claim that you have been exposed to
> significant amounts of radiation or other hazardous
> substances due to releases from Rocky Flats during
> 1950-1975;

     (b)   Your claim that you are at an increased risk of illness or death due to releases from Rocky Flats during 1950-1975; and

     (c)   Your claim that you should receive medical monitoring due to releases of radiation or other hazardous substances from Rocky Flats during 1950-1975.

    **Response:** This interrogatory is applicable only to the representatives of the Medical Monitoring Class, who respond as follows: Responding plaintiffs do not possess sufficient expertise in the specialized fields relevant to these issues to identify reports, articles, studies, or treatises they consider authoritative, or that may be considered authoritative by others. Plaintiffs' expert reports, when completed, are expected to identify the source materials on which plaintiffs' experts rely.

29.  Do you contend that any of the annual or monthly environmental surveillance reports put out by the Colorado Department of Health ("CDH") concerning Rocky Flats are inaccurate, misleading or deficient in any way? If so, please describe in detail each inaccuracy, misleading statement or deficiency.

    **Response:** Dow has agreed that the representative plaintiffs are not required to respond to this interrogatory at this time. In addition, pursuant to Fed. R. Civ. P. 33(b)(1) and 72, plaintiffs have previously asserted objections to answering this interrogatory, and those objections are incorporated here by reference.

30.  Do you contend that the methods utilized by the CDH from 1969 to the present for sampling/monitoring releases of radionuclides into the air, water or soil from Rocky Flats are deficient in any way? If yes, then describe each deficiency.

    **Response:** Dow has agreed that the representative plaintiffs are not required to respond to this interrogatory at this time. In addition, pursuant to Fed. R. Civ. P. 33(b)(1) and 72, plaintiffs have previously asserted objections to answering this interrogatory, and those objections are incorporated here by reference.

31.   Do you contend that the methods utilized by The Dow
Chemical Company from 1969 to 1975 for sampling/monitoring releases
of radionuclides into the air, water or soil from Rocky Flats were
deficient in any way?  If yes, then describe each deficiency.

>    **Response:** For the reasons already given in response to
>    interrogatory number 1, plaintiffs expect to rely on the
>    reports and testimony of their experts to address this issue.
>    Plaintiffs' experts' investigations are continuing, and their
>    reports are not yet available.   Plaintiffs therefore do not
>    currently know what deficiencies their experts will identify.
>
>    Responding plaintiffs are able to identify numerous
>    documents that may relate to deficiencies in Dow's sampling
>    and monitoring practices, and refer Dow to the documents
>    listed in Exhibit F to these responses.   Plaintiffs do not
>    vouch for the accuracy of every statement in the documents
>    cited here.  Plaintiffs did not create these documents and did
>    not witness the events to which they relate.  However, it is
>    believed that these documents may relate to deficiencies in
>    Dow's sampling and monitoring practices at Rocky Flats.

32.   Do you contend that the study authored by John Cobb
entitled "Plutonium Burdens in People Living Around the Rocky Flats
Plant" is inaccurate, misleading or deficient in any way?  If yes,
then identify each inaccuracy, misleading statement or deficiency.

>    **Response:** Dow has agreed that the representative plaintiffs
>    are not required to respond to this interrogatory at this
>    time.   In addition, pursuant to Fed. R. Civ. P. 33(b)(1) and
>    72, plaintiffs have previously asserted objections to
>    answering this interrogatory, and those objections are
>    incorporated here by reference.

33.   Identify all documents that refer or relate to any of
your responses to the preceding interrogatories.

>    **Response:** See responses to preceding interrogatories.

34.   Identify all individuals, excluding consulting experts,
who, during the period January 1, 1992, to July 1, 1994, have
provided you with information concerning Rocky Flats.

*REPRESENTATIVE PLAINTIFFS' RESPONSES TO DOW'S CONTENTION INTERROGATORIES -- PAGE 29*

**Response:** Dow has agreed that the representative plaintiffs
are not required to respond to this interrogatory at this
time.   In addition, pursuant to Fed. R. Civ. P. 33(b)(1) and
72,  plaintiffs  have  previously  asserted  objections  to
answering  this  interrogatory,  and  those  objections  are
incorporated here by reference.

DATED: September 15, 1995

As to objections:

Merrill G. Davidoff
Daniel Berger
Peter Nordberg
BERGER & MONTAGUE
1622 Locust Street
Philadelphia, PA   19103-6365
(215) 875-3000

Bruce H. DeBoskey
Steven W. Kelly
SILVER & DEBOSKEY, P.C.
The Smith Mansion
1801 York Street
Denver, CO  80206
(303) 399-3000

Ronald Simon
CONNERTON, RAY AND SIMON
1920 L Street, NW, 4th Floor
Washington, DC   20036-5004
(202) 466-6790

Stanley M. Chesley
WAITE, SCHNEIDER, BAYLESS & CHESLEY
Suite 1513 Central Trust Tower
Cincinnati, OH   45202
(513) 621-0268

COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I, Eric L. Cramer, do hereby certify that a copy of Plaintiffs' Responses to Defendant Dow's Second Set of Interrogatories Directed to Each Class Representative Plaintiff was served this 15th day of September, 1995 by the law firm of Berger & Montague on counsel as follows:

### VIA UPS OVERNIGHT DELIVERY:

Mark Raffman, Esq.
Patrick Hanlon, Esq.
SHEA & GARDNER
1800 Massachusetts Ave., NW
Washington, DC  20036

Douglas J. Kurtenbach, Esq.
KIRKLAND & ELLIS
200 East Randolph Drive
Chicago, IL  60601
(Also served via telecopier w/o exhibits)

### VIA FIRST CLASS MAIL:

Joseph J. Bronesky, Esq.
SHERMAN & HOWARD
633 Seventeenth Street
Suite 3000
Denver, CO  80202

Richard Kaufman, Esq.
OFFICE OF U.S. ATTORNEY
1961 Stout Street, DR 3608
Denver, CO  80202

Sean Gallagher, Esq.
HALL & EVANS
1200 Seventeenth Avenue
Suite 1700
Denver, CO  80202

Mark S. Lillie, Esq.
KIRKLAND & ELLIS
1999 Broadway
Denver, CO  80202

Lou Pribila, Esq.
Attorney at Law
THE DOW CHEMICAL COMPANY
2030 Williard H. Dow Center
Midland, MI  48674

Eric L. Cramer