**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CIVIL ACTION NO. 90-K-181**

**MERILYN COOK,** *et al.***,**

      **Plaintiffs,**

      v.

**ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,**

      **Defendants.**

**PLAINTIFFS' SUPPLEMENT TO THEIR MOTION TO EXCLUDE
THE TESTIMONY OF SHIRLEY A. FRY, M.D.**

Now that Shirley A. Fry, M.D. has been deposed, and the scope of her proposed testimony is clear, plaintiffs hereby supplement their Motion to Exclude Expert Testimony from Dr. Shirley Fry, Dr. Helen A. Grogan and Mr. Paul G. Voillequé (Doc. 1728) ["Motion to Exclude"], as it relates to Dr. Fry.[1]

At the risk of stating the obvious, an expert witness is a witness qualified by his or her knowledge, skill, experience, training or education, whose scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702. Notwithstanding defendants' representations that "Dr. Fry will not be offering expert opinions," and that she will simply rebut Dr. Wing's testimony regarding "the credibility of DOE science," there is no question that she is being called to offer expert

---

[1] Plaintiffs timely filed their Motion to Exclude, pursuant to the Order Limiting Motions Practice During Trial (Doc. 1626) on December 4, 2005. This supplemental motion is also timely filed given that, under the defendants' most recent witness schedule, dated December 8, 2005 (12/08/2005 Tr. at 6958), Dr. Fry is not scheduled to testify until December 16, 2005.

testimony.  *See* Defendants' Response to Plaintiffs' Motion to Exclude the Testimonies of Fry, Grogan and Voillequé at 1 & 3.

At her deposition, Dr. Fry testified that, in preparation for her deposition and trial testimony, she has been given and reviewed the following items:

- Dr. Wing's expert report;
- Dr. Wing's deposition transcript;
- Dr. Wing's trial testimony;
- Dr. Clapp's expert report;
- Dr. Clapp's trial testimony;
- the final RAC report;
- scientific studies by Crump and Chinn; and
- Ruttenber's report on mortality.

Dep. of Shirley A. Fry at 35-36.[2]  She further testified:

> What is your understanding with respect to what you will be testifying to at trial as it relates to Dr. Wing?
>
> A His role as a co-investigator when . . . he was a co-investigator as a subcontractor.  The activities as the -- again, ***how the studies were conducted, how they were reviewed, how we interacted with other epidemiology groups within the DOE.***
>
> Q Okay.  Is that specific to Dr. Wing, the last?
>
> A No, no.  That's not specific to Dr. Wing.  Specific to Dr. Wing would be the discussions that went on with respect to the analysis that he conducted for the mortality follow-up study and how that stood in the conclusions that he -- or his results rather, how those related to results of other epidemiologic studies of populations exposed to radiation, both from atomic bomb radiation

---

[2] Excerpts of Dr. Fry's testimony are attached, collectively, as Exhibit A.

as well as occupational studies.

Q     Anything else that you will be specifically testifying to at trial with respect to Dr. Wing?

A     My recollection as to the advisory committee meeting that he refers to.

Q     Anything else?

A     I think that's about it.

Okay.  With respect to Dr. Clapp, what is your understanding regarding what you will be testifying to at trial?

A     *Really my reactions to his report and the conclusions that he arrived at based on his study.*

Q     Anything else?

A     No.

Q     With regard to Dr. Clapp?

A     No.

Q     Okay.  Other than specific to Dr. Wing and Dr. Clapp, what is your understanding as to what you will be testifying to at trial?

A     *My experience in occupational epidemiology, particularly with respect to the DOE worker studies, my expertise in the areas those studies involve, my training, former training, the findings of a number of the occupational epidemiologic studies and how they relate to each other and what their impact might be.*

Q     Anything else?

* * * * *

In this context, I had said that the culture of how the studies were conducted and the culture that we had responsibilities that I had at Oak Ridge Associated Universities in my time there.  That's about it.

Q     Anything else that you can think of that you're going to be

3

>    testifying to at trial that we've not discussed or not listed?
>
>    A   *I think some basic radiation health effects, basic information about radiation health effects, biological effects.*
>
>    Q   Anything else?
>
>    A   *How those have been developed over time, the scientific knowledge, the scientific basis for those.*
>
>    Q   Okay.  Anything else?
>
>    A   I think that's it.

*Id.* at 43-45 (emphasis added).  And she conceded that the expertise that she brings to this case, and the testimony that she intends to give at trial, is the same expertise and type of testimony that she brought to, and gave in, the two other cases in which she has testified as an expert witness.  *See id.* at 45-47.

In short, Dr. Fry's testimony goes far beyond "stand[ing] up and say[ing], [I] know Wing and he's a nut,"[3] and clearly belies defendants' attempts to characterize her as simply a "rebuttal witness."  *See* 10/07/2005 Tr. at 352 (quoting Hon. John L. Kane).  Indeed, it falls squarely within the realm of expert testimony.  Dr. Fry's expected testimony regarding Dr. Clapp is particularly illustrative.

As defendants noted in their Supplemental Response to Plaintiffs' Motion to Exclude the Testimony of Dr. Shirley A. Fry (Doc. 1771) ["Supplemental Response"], "[a]mong the testimony by Dr. Clapp to which Dr. Fry will respond is the use of statistical significance in epidemiologic studies."  Supplemental Response at 4.  *See also* Defendants' Statement Concerning Its [sic] Trial Witness List (Doc. 1630) at 1 (defendants intend to elicit testimony

---

[3]   In fact, Dr. Fry "had a very high regard for Steve [Wing] as an epidemiologist."  Fry Dep. at 150.

from Dr. Fry in rebuttal to Dr. Clapp "about epidemiological significance and other issues"). In the first instance, commenting on studies is clearly the province of an expert witness. Moreover, Dr. Fry has never met Dr. Clapp and knew absolutely nothing about him, his work or opinions until she was educated by defense counsel. Fry Dep. at 22 & 31-32. It, therefore, borders on disingenuous[4] to even suggest that she "does, in fact, have personal knowledge of the areas in which defendants designated her to testify in rebuttal." Supplemental Response at 1. And of what possible relevance are Dr. Fry's credentials, which defendants painstakingly chronicle, to her personal knowledge regarding factual issues about which Dr. Wing testified? *See id.* at 2.

Under the Federal Rules of Civil Procedure, the identity of expert witnesses who will be used at trial must be disclosed to other parties. Fed. R. Civ. P. 26(a)(2)(A). Such disclosure, moreover, must be accompanied by a written report,[5] prepared and signed by the witness. Fed. R. Civ. P. 26(a)(2)(B). *See also* 12/08/2005 Tr. at 7051 (being "called in as an expert . . . requires an expert opinion"). And, in the absence of other directions from the court or stipulation by the parties, if the evidence is intended solely to contradict or rebut evidence on the same subject matters identified by another party under paragraph (2)(B), the disclosure must be

---

[4]    As further evidence of defendants' propensity to be disingenuous, in response to a request from plaintiffs' counsel that Dr. Fry's deposition be scheduled to December 5 or 6 to allow counsel who resides in Cincinnati to take the deposition immediately after the Thanksgiving break before returning to Denver, defense counsel informed plaintiffs that "[w]e have checked with Shirley Fry on her availability for deposition and it needs to be next Wednesday in Indianapolis." E-mail Message from Mark Nomellini to Merrill Davidoff dated December 1, 2005 (Exhibit B). Dr. Fry, however, testified that she informed defense counsel that she was available to have her deposition taken on December 6. Fry Dep. at 20.

[5]    The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years. Fed. R. Civ. P. 26(a)(2).

made within 30 days after the disclosure made by the other party. Fed. R. Civ. P. 26(a)(2)(C). None of that was done here. Given defendants' failure to comply with the mandatory requirements of Rule 26, the Court must bar Dr. Fry's testimony under Rule 37(c)(1).

Finally, with respect to her proposed testimony regarding factual issues (*see* Supplemental Response at 3), Dr. Fry plainly cannot testify to matters of which she does not have personal knowledge, including the reasons for the termination of the funding of Dr. Mancuso's research in 1974. *See* Fry Dep. at 103 (Dr. Fry, whose first contact at Oak Ridge Associated Universities ["ORAU"] was 1978, "was not involved in anything there," and has no personal knowledge of anything done at ORAU before 1978).

Respectfully submitted,

December 11, 2005                    */s/ Jean M. Geoppinger*

_____

Louise M. Roselle
Jean M. Geoppinger
WAITE, SCHNEIDER, BAYLESS
& CHESLEY CO., L.P.A.
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, Ohio  45202
(513) 621-0267

Merrill G. Davidoff
Peter Nordberg
Jenna MacNaughton-Wong
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

Gary B. Blum
Steven W. Kelly
SILVER & DEBOSKY, P.C.
1801 York Street
Denver, Colorado  80206
(303) 399-3000

*Attorneys for Plaintiffs*
*and the Class*

CERTIFICATE OF SERVICE

I hereby certify that, on December 11, 2005, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will effect service of such pleading upon:

David M. Bernick
KIRKLAND & ELLIS, LLP
200 East Randolph Drive
Chicago, Illinois  60601

and

Joseph J. Bronesky
SHERMAN & HOWARD, LLC
633 Seventeenth Street, Suite 3000
Denver, Colorado  80202

*Attorneys for Defendants*

*/s/ Jean M. Geoppinger*
_____

Jean M. Geoppinger