**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-181-JLK

MERILYN COOK, *et al.*,

        Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

        Defendants.

---

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION
OF DOCUMENTS FROM WILLIAM WESTON AND TO LIMIT HIS TESTIMONY**

---

Dr. William Weston is a former Rockwell manager who is being proffered to testify as a fact witness based on his personal knowledge and experiences during fifteen years as a Rockwell employee and manager at the Rocky Flats Plant. (*See* Proffer, attached as Ex. A) While Defendants considered utilizing Dr. Weston as an expert, they never did. Thus, Dr. Weston's testimony at trial will be as a fact witness. Furthermore, Dr. Weston, Rockwell's Acting Plant Manager at the time production ceased in 1989, has been present for much of this trial as the Rockwell representative responsible for reporting on the conduct of the trial to Rockwell's in-house counsel, John Stocker. As such, his notes fall squarely within the attorney-client and work product privileges.

**I.    DR. WESTON'S TESTIMONY WILL BE FACTUAL AND NEED NOT BE LIMITED.[1]**

There is no question that Dr. Weston is uniquely qualified to offer broad-based factual testimony about the history of Rocky Flats' operations, having been involved in (and in many cases, responsible for) those operations for fifteen years. Dr. Weston was hired by the Dow Chemical Company in June 1975 and worked for Dow for one day before Rockwell became the new contractor. He then worked for Rockwell from June 1975 to December 1989 (Rockwell's entire tenure at Rocky Flats), holding the following positions and carrying out the following responsibilities:

| Position | Responsibilities |
| --- | --- |
| Research Physicist (1975-1977) | nuclear research and development |
| Program Management (1977) | managed advanced grade weapons R&D program, including design safety |
| Head of Plutonium Fabrications in 707 (1980-81) | plutonium pit manufacturing, production operation, troubleshooting; became familiar with use and handling of plutonium; R&D |

---

[1] Defendants dispute that there has been any kind of improper interference with Plaintiffs' ability to learn the scope of Dr. Weston's testimony. Defendants' provided the following, accurate description of Dr. Weston's testimony to Plaintiffs prior to trial: "[Dr. Weston] will testify about Rocky Flats plant operations, management, inventory issues, environmental regulatory issues, and other matters concerning Rockwell's tenure at the plant." Plaintiffs had the opportunity to take Dr. Weston's deposition throughout the discovery period in this litigation and chose not to do so. They finally availed themselves of that opportunity during trial and cannot blame Defendants for their delay in learning about Dr. Weston's testimony. Nor can they reasonably object to Defendants' legitimate assertion of privilege at Dr. Weston's deposition when Plaintiffs asked directly about conversations between counsel and Dr. Weston. (See discussion in Section II below.) In any event, Defendants submitted a detailed offer of proof concerning the subjects of Dr. Weston's testimony, and Plaintiffs' complaint is therefore moot. (*See* Ex. A)

|  |  |
|---|---|
|  | with use and handling of plutonium; R&D |
| Resource Management (Early 1980s) | involved with production control, industrial engineering, budgeting, R&D; controlled inventory and production, facilities management to get production back on schedule, and strategic planning |
| Director of Safeguards and Materials Management (Early 1980s) | production control, safeguards, material control and accountability for Special Nuclear Material, inventory process, and determination of plutonium content in various forms for inventory process; investigated Rocky Flats MUF history; involved in DOE reviews |
| Director of Plutonium Operations (Mid 1980s) | recovery operations, waste operations, regulatory compliance (including RCRA), departments that perform daily inventories; oversight over plutonium recovery (Bldg 771, 371), waste management (Bldg 374, 774), research & development (Bldg 374, 774) |
| Assisting/Acting Plant Manager (Fall 1989) | all plant operations |

Defendants have provided a detailed offer of proof setting forth the factual testimony that will be offered by Dr. Weston.  (*See* Ex. A.)  That testimony covers topics such as RCRA disputes, the FBI raid and plea allegations, outside assessments of Rockwell's performance, criticality safety, MUF, and so forth.  All such testimony is based on Dr. Weston's personal knowledge of Plant operations and stems directly from his above-listed areas of responsibility while at Rocky Flats.  Moreover, Dr. Weston continues to work as a senior advisor to the University of California at Los Alamos National Laboratories, chairing the Nuclear Weapons Program Committee and sitting on the Nuclear Materials Technology Division Review Committee and the Engineering Science and Application Division Review Committee.

3

Because he has direct knowledge of issues related to waste handling, regulatory compliance, and so forth, Dr. Weston previously has testified numerous times about these issues as a fact witness in litigation involving Rockwell. For instance, he has testified as a fact witness in the following lawsuits: (1) a RCRA regulatory dispute relating to the use of the Building 771 incinerator and handling of plutonium residues (Sierra Club lawsuit, by affidavit); (2) a contractual dispute with DOE over Rockwell fees relating to pondcrete and other waste storage/handling issues (*Rockwell v. United States*; deposition and trial testimony); and (3) a False Claims Act lawsuit relating to pondcrete and other waste storage/handling issues (Stone lawsuit; deposition and trial testimony).

Plaintiffs raise two specific areas with respect to which they claim Defendants should not be permitted to offer opinion testimony from Dr. Weston: (1) regulatory compliance; and (2) inventory issues. As an initial matter, Defendants will only elicit factual testimony on these issues. Concerning regulatory compliance, Dr. Weston will offer factual testimony about the history of dispute between EPA/CDH and DOE over application of RCRA at Rocky Flats, resolution of some of those disputes in the July 31, 1986 Compliance Agreement, efforts by Rockwell and DOE to comply with RCRA and the Compliance Agreement once it was signed, difficulties encountered by Rockwell and DOE in attempting to comply with RCRA and the deadlines in the Compliance Agreement, and the Waste Stream Characterization Study

conducted by Rockwell as a result of the Compliance Agreement.[2]  Concerning inventory difference, Dr. Weston also will offer factual testimony, including testimony about Rocky Flats historical MUF, contributors to MUF, contractor efforts to address MUF, measurement capabilities over time, challenges to measuring Pu in waste and holdup, contractor inventory control practices (e.g., physical inventories), DOE scrutiny and investigation of MUF issues, how MUF was and was not used by the contractor, and records and documentation kept in course of inventory control.  All of the testimony is based on Dr. Weston's personal knowledge and experience at Rocky Flats.

While Defendants will seek to elicit factual testimony on these issues as described, lay opinion testimony from Dr. Weston based on his first hand experience would be permissible under Rule 701 as rationally based on his own perceptions, helpful to understanding his testimony, and not based on any specialized knowledge.[3]  Indeed, Plaintiffs have little leeway to complain about such testimony, given opinion testimony they elicited from lay witnesses such as Timothy Holeman, Sam Cassidy, Gale Biggs, and Joel Selbin.  Mr. Holeman, in particular, testified extensively about his opinions of Rockwell's conduct (including Rockwell regulatory compliance, waste treatment and handling, surface water, and MUF).  As a governor's aide who

---

[2]  Plaintiffs' claim that Dr. Weston's memory is poor is without basis.  The selective quotes offered by Plaintiffs indicate only that he was not familiar with why specific dates in the plea were selected.  That says nothing about his familiarity with RCRA compliance at the plant, of which he has extensive knowledge.

visited the plant only on occasion, Mr. Holeman had far less direct, personal knowledge of any of those issues than does Dr. Weston. As one example, Mr. Holeman offered the following testimony about Rockwell's conduct:

> Q. Can you *generally describe the way from your experience with the plant that Rockwell ran the Rocky Flats plant* during the period of time that you -- that they were there and you were in the governor's office?
>
> A. Well, our views on how the plant manager ran the plant between 1987 and 1991 evolved over the course of the years, and as events unfolded at the plant site, we became increasingly concerned that *there was not the level of commitment to environmental management problems at the plant site that we thought were necessary to bring the plant into compliance*. . . .
>
> We were also concerned about the waste generation at the plant site . . . . We began to see that *the plant site was not in compliance with the federal and state statutes that we call RCRA, and were concerned about their current storage practices* . . . .
>
> [W]e were increasingly concerned about operations inside the industrial area, the plutonium zone . . . whether or not safety and health concerns were meeting the standard . . . .

(Tr. 1127-31 (emphasis added).) If Mr. Holeman, who concedes he is not a regulatory compliance expert, can offer opinions about lack of regulatory compliance, Dr. Weston, who was responsible for ensuring regulatory compliance at Rocky Flats for a portion of his tenure there, should be permitted to respond. Simply put, Dr. Weston should similarly be permitted to

---

[3] Defendants will make clear that they are asking Dr. Weston questions based upon his experience, not as an expert, and Plaintiffs can ask the Court to instruct the jury to this effect, as Defendants have done with Plaintiffs' witnesses. (*E.g.,* Tr. at 4514.)

6

"generally describe the way from [his] experience with the plant that Rockwell ran the Rocky Flats plant during the period of time [that he was there]."

## II. DR. WESTON'S NOTES WERE TAKEN FOR THE PURPOSE OF REPORTING TO ROCKWELL IN HOUSE COUNSEL AND ARE PROTECTED BY THE ATTORNEY-CLIENT AND WORK PRODUCT PRIVILEGES.[4]

Dr. Weston has attended the trial and taken notes. He has done so in his capacity as a Rockwell representative, responsible for reporting to Rockwell in-house counsel about the trial. As such, his notes fall squarely within the attorney-client privilege and work product doctrine.

### A. The Attorney-Client Privilege Applies to Dr. Weston's Notes.

*First*, Dr. Weston has been retained to be Rockwell's representative at trial, and his notes were made for the purpose of informing Rockwell's in house counsel about the trial:

> Q. (BY MR. SORENSEN) And the same answer would be as to any notes you've taken? In other words, the reason you entered into an attorney-client relationship with Kirkland & Ellis is so that any notes you've taken such as the ones you've described could, at least in theory, be shielded or potentially shielded from discovery; is that correct?
>
> A. As I -- when I started to take notes at the trial, I did so with the idea that I would be providing Mr. Stocker [Rockwell's in house counsel] updates on the status . . . .

(Weston Dep. at 17) There is nothing improper about Dr. Weston serving in that capacity, and Plaintiffs' claim that this role is designed to hinder discovery rather than support the defense of

---

[4] Defendants disagree that this motion is timely. Plaintiffs have been on notice that Dr. Weston would testify since before the trial, were aware that he was in court taking notes, and could have made a request for the notes prior to Dr. Weston's deposition (and more than four days prior to his testimony, rather than filing this motion one day before Dr. Weston is to testify).

7

this case is wholly without factual basis.[5] Because Dr. Weston's notes were made for the purpose of communicating with Rockwell's in house attorney and to support Rockwell's trial defense, they fall squarely within the scope of the attorney-client privilege. *See*, *e.g., In re Grand Jury Subpoena*, 697 F.2d 277, 278 (10th Cir. 1983) ("A document is protected by the attorney client privilege if it reveals a communication between a client and an attorney, made in order to obtain or deliver legal assistance, that was intended to be treated as confidential.").

*Second*, Dr. Weston may invoke the attorney-client privilege as a former Rockwell manager. *See, e.g., Jobin v Bank of Boulder*, 161 B.R. 689 (D. Colo. 1993) (holding privileged memoranda drafted at corporate counsel's request by two former officers and one former employee); Restatement (3d) of the Law Governing Lawyers § 73, Comment e ("privilege covers communications with a lawyer for an organization by a retired officer of the organization concerning a matter within the officer's prior responsibilities that is of legal importance to the organization").

Dr. Weston's notes are covered by the attorney-client privilege both due to his current role as Rockwell's representative at trial and due to his past role as Acting Plant Manager for Rockwell.

---

[5] The excerpt Plaintiffs cite from Dr. Weston's testimony does not suggest otherwise. Dr. Weston answered, in response to leading questions from Plaintiffs, that he is not personally seeking legal advice about some matter and stated that the attorney-client privilege was "at least a part of" the arrangement. (*See* Weston Dep. at 15-16.) In fact, Dr. Weston's role is to serve as the client representative and assist counsel with Rockwell's defense, as Dr. Weston later explained. (*Id*. at 17.)

### B.     The Work Product Privilege Applies to Dr. Weston's Notes.

The work product privilege provides an independent reason that Dr. Weston should not be required to produce his notes.  Dr. Weston's notes were prepared at the direction of counsel during the course of this trial and in preparation for Rockwell's defense.  Thus, they are work product.  *See, e.g., Aull v. Cavalcade Pension Plan,* 185 F.R.D. 618, 624 (D. Colo. 1998) ("A document is protected by the work product privilege if it was prepared in anticipation of litigation by another party or that party's representative, and was intended to remain confidential"); *see also* Fed. R. Civ. P. 26(b)(3).

*Gall ex. rel. Gall v. Jaminson,* 44 P.3d 233 (Colo. 2002 ) (cited by Plaintiffs), holds merely that a party may obtain work product from a testifying expert.  (*See* Pls' Mot. at 4) Because Dr. Weston is a fact witness, not a testifying expert, Plaintiffs may not seek disclosure of his work product.  Nor have Plaintiffs shown any need for these notes, much less substantial need, as they were present in Court to see the same testimony on which Dr. Weston took notes. (*See id.*)  Moreover, they have had the opportunity to take Dr. Weston's deposition and ask him about his impressions of the testimony he has seen thus far.  Thus, they have already had access to the substance of the information in his notes and can demonstrate no substantial need to see the notes themselves.

In short, Plaintiffs motion to limit Dr. Weston's testimony and for production of his notes is without merit and should be denied.

Dated:  December 12, 2005                                  Respectfully submitted,


/s/ Stephanie A. Brennan_____
One of the Attorneys for the Defendants
David M. Bernick
Douglas J. Kurtenbach
Ellen Therese Ahern
Mark J. Nomellini
Stephanie A. Brennan
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636
Phone:  312-861-2000
Fax:     312-861-2200


Joseph J. Bronesky
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Phone:  303-297-2900
Fax:     303-298-0940

Attorneys for ROCKWELL
INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY

## **CERTIFICATE OF SERVICE**

       I hereby certify that on December 12, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses for the following:

Peter B. Nordberg, Esq.
c/o Karen M. Markert
Apartments at Denver Place, Apt. 2812
1880 Arapahoe Street
Denver, CO 80202
pnordberg@bm.net
kmarkert@bm.net

Gary B. Blum, Esq.
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206
blumg@s-d.com

                                                  /s/ Kari Knudsen_____
                                                  Kari Knudsen (legal assistant)