## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

### No. 90–K–181

MERILYN COOK, et al.,

     **Plaintiffs,**

       **v.**

ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,

     **Defendants.**

### PLAINTIFFS' OBJECTIONS TO EXHIBITS TO BE USED WITH
### DR. WILLIAM WESTON

**A.**    **Documents Designed to Elicit Expert Testimony**

Dr. Weston will testify as a fact witness. *See* Weston dep. at 12 (attached as Ex. 1) ("MS. AHERN: We are only proffering him as a fact witness."); Defendants' List of Witnesses and Attorneys for Attachment to the Jury Questionnaire, Exhibit A, filed Sept. 29, 2005 [Ct. Rec. 1475] (describing Dr. Weston's testimony). However, many of the exhibits offered for Dr. Weston are clearly designed to elicit expert testimony. For example, many of the graphics ask Dr. Weston to comment on the testimony or expert reports of plaintiffs' witnesses. Dr. Weston's *opinions* about the validity of other witnesses' testimony are not based on his personal knowledge and thus not a proper subject for lay witness testimony.

**1.**    **Exhibits Commenting on Other Fact Witness' Testimony**

A number of exhibits prompt Dr. Weston to discuss testimony by other witnesses in this case.

It is improper for a fact witness to comment on the testimony of other witnesses and draw conclusions from that testimony.  Essentially defendants are attempting to use Dr. Weston to deliver defendants' closing arguments.

The exhibits are:

> DX 1717, "Building 771 Incinerator Allegations"
> DX 1718, "Avery Testimony:  Plutonium Recovery from Incinerator Ash"
> DX 1719, "Lipsky Testimony"
> DX 1721, "Holeman Testimony:  Regulatory Compromise"
> DX 1725, "Avery Testimony - Building 771 Complaints"
> DX 1726, "Avery Claims"
> DX 1739, "Avery Testimony:  Raffinate Transfers"
> DX 1740, "Avery Testimony:  Stack Effluent"
> DX 1742, "Watkins Testimony re DOE Culture"
> DX 1743, "Watkins Testimony re DOE Culture"
> DX 1745, "Watkins Testimony re Tiger Team Findings"
> DX 1746, "Watkins Testimony re Tiger Team Findings"
> DX 1748, "Watkins Testimony re Tiger Team Findings"
> DX 1757, "Lipsky Testimony"

Additionally, <u>DX 1735, "FBI Allegation"</u> and <u>DX 1736, "Holeman Testimony"</u> set up the FBI allegations regarding the fluidized bed incinerator, and ask Dr. Weston to opine on whether Tim Holeman's testimony disproves the allegations.  This is pure expert testimony.  A fact witness such as Dr. Weston cannot interpret testimony and draw conclusions based on that testimony.

**2.     Exhibits Commenting on Experts' Testimony**

The following exhibits prompt Dr. Weston to rebut plaintiffs' experts' testimony.  This type of analysis and rebuttal of the experts' opinions is not appropriate for a fact witness.

> DX 1730, "Criticality Safety Experience"
> DX 1731, "Never a Criticality at Rocky Flats"
> DX 1734, "Budnitz Testimony re Pu in Ducts"
> DX 1750, "Cochran Testimony"

DX 1751, "Cochran Testimony"
DX 1752, "Cochran Testimony"
DX 1753, "Cochran Testimony"
DX 1754, "Cochran Testimony"
DX 1755, "Cochran Testimony"
DX 1756, "Cochran Testimony"
DX 1776, "Weston will respond to"
DX 4045, Cochran story boards

**B      Documents Regarding Matters that Exceed the Scope of Dr. Weston's Personal Knowledge**

**1.      Exhibits Dated After Dr. Weston Left Rocky Flats**

Several documents, and graphics that are taken from documents, post-date Dr. Weston's employment at Rocky Flats, and there is no evidence that Dr. Weston was involved in creating the documents, so he could have no personal knowledge about the documents.  Dr. Weston left Rocky Flats at the end of 1989.  *See* Weston dep. at 68 (Ex. 1).  The exhibits at issue are:

DX 485, "Plutonium Effluent Air Data, 771 Stack (1988 & 1989)"

The cited source is dated 1990.

DX 649, "Rocky Flats Plant History of Inventory Differences"

This document is dated 1991.

DX 654, Rogers, A Discussion of lnventory Difference - Its Origins and Effect

This document is dated 1994

DX 1394, "Ability To Measure Plutonium In Waste Improves"

The source for this graphic is dated 1994.  Additionally, the timeline includes an entry for 1990, after Dr. Weston had left the plant.

DX 1677, "Contributions to MUF"

3

The source cited for this document, the "Roberts report" (DX 654) is dated 1994.  Dr. Weston testified that he had not seen the Roberts report until after he became involved with helping Kirkland and Ellis.  Weston dep. at 66 (Ex. 1).  He also did not know the amounts of MUF with any specificity, so this document exceeds his personal knowledge.  *See id*. at 78-79 (recalls only approximate amount of total MUF disclosed to him at briefings during his employment at Rockwell); *id.* at 173.

DX 1679, "EG&G 1994 Analysis of MUF"

The "EG&G 1994 Analysis" referenced in this graphic is the "Roberts report" (DX 654), which is dated 1994.  Dr. Weston testified that he had not seen the Roberts report until after he became involved with helping Kirkland and Ellis.  Weston dep. at 66 (Ex. 1).

DX 1698, "Total Pu Inventory Difference" and P-1132, DOE Openness Press Conference

P-1132 is the DOE "Openness Press Conference Fact Sheets," dated 1994, and DX 1698 is a graphic that discusses this document.  Dr. Weston testified that he was not familiar with that document.  *See* Weston dep. at 79 (Ex. 1).  Additionally, this exhibit is inadmissible because it reflects information about other DOE plants:  the Court has ruled such information inadmissible (*e.g.* Oct. 17 Tr. at 1111-12), and Dr. Weston would have no personal knowledge about the MUF numbers for other plants.

DX 1705, "Must Have's for Complete Account of Pu"

The source document for this graphic is dated 1996.

DX 1706, "Sample Historical MUF Reports"

This timeline depicts events into the 1990's, after Dr. Weston had left Rocky Flats.

4

DX 4012, DOE News Fact Sheet

This document is dated 1993.

DX 4019, Plutonium: The First 50 Years

This report is dated 1996.

**2.      Documents Portraying Physical Condition of Plant When Dr. Weston Did Not Work There**

Several graphics depict the air filters and filter plenum as they appeared in 1966, before Dr.

Weston's tenure, so he cannot verify the accuracy of the information depicted.  These exhibits are:

>       DX 1156, Filter Plenum Photo
>       DX 1157, Filter Plenum Photo
>       DX 1158, Filter Plenum Photo

**3.      Lack of Personal Knowledge**

Many documents relate to subjects about which, at his deposition, Dr. Weston admitted he

had no personal knowledge.  These are discussed in more detail below.

DX 47, "Rockwell Plea Counts"
DX 1066, "FBI Raid Main Allegations"

These graphics depict the ten counts of the Rockwell plea agreement and several allegations

found in the FBI affidavit.  Regarding DX 47, Dr. Weston testified that he had no involvement in

the negotiation of the plea agreement, Weston dep. at 112 (Ex. 1), and he had very limited

knowledge of the exact offenses described in the plea, *e.g. id.* at 175-76.[1]  He also testified that he

---

[1]  For example, Dr. Weston testified:  "And as far as the details, then, in – in some of the statements I was reviewing, numbers, number of days in violation, et cetera, I just don't have any familiarity with that and so I really -- it's not a matter of whether I disagree or agree with them.   I just don't know them."  *Id*. at 176.

had no responsibility for several subjects covered by these graphics, including Clean Water Act compliance (Weston dep. at 302, attached as Ex. 1); spray irrigation (*id.* at 335); water discharges to Walnut or Woman Creeks (*id.* at 302-03); NPDES permits (*id.* at 273-74, 309); or the sewage treatment plant (*id.* at 323-24). His knowledge of the pondcrete and saltcrete violation and the solar ponds violation was limited. *See id.* at 285-86 (pondcrete)[2]; 300-01 (solar ponds)[3].

Plaintiffs also object to DX 1066 to the extent defendants use the document to argue that the FBI allegations were "proven false" because Rockwell did not plead guilty to all of the allegations.

---

[2]

Q:  Okay.  So if the pondcrete was there June 15th through the 24th, it's not as if on the 25th of 1987 -- June 25th, 1987, 12,000 boxes of pondcrete and saltcrete were removed from the 750 pad just because that's what it states in the plea document; correct?

A:  I have no idea why those dates were selected and singled out, so I don't know what else to say.  I mean, the -- we were using that 750 pad for some number of blocks.  . . .

[ . . ]

Q:  And that was in violation of RCRA; correct?

A:  I don't -- again, without some more data, I can't remember what that first count means.

*Id.* at 286-87.

[3]

Q:  Do you have reason to believe that the allegations in -- concerning the solar ponds are inaccurate?

A:  I'm not even sure at this point what the allegations really mean so I'm not sure I can comment a lot more than that.

This line of argument has been ruled inadmissible.  *See* Aug. 22, 2005 Hearing Tr. at 7 (" I intend to bar Defendants from arguing or presenting evidence that the U.S. Attorney and the Department of Justice ultimately exonerated Rockwell from most of the conduct that had been alleged.")  This document is further objectionable as argumentative and unsupported by the evidence because it characterizes the FBI allegations pictured as the "main" allegations.

P-548, "Classification for Rocky Flats Material Unaccounted For"

This exhibit discusses the reasons for classifying MUF data.  Dr. Weston testified he had no involvement with decisions about whether to declassify documents, Weston dep. at 65-66 (Ex. 1), and his involvement in classification decisions included his department, id. at 66.  There is no evidence that Dr. Weston had any involvement in classification policy.

**C.      Documents for Which No Foundation Exists**

Many of the documents offered for use with Dr. Weston's testimony were not written by him or sent to him.  Defendants must lay the foundation for Dr. Weston's personal knowledge about these documents before they can be used.  In order to build that foundation, defendants must prove that Dr. Weston in fact saw the document while he was employed at Rocky Flats, and that he took some action based on information in the document, or that the document actually formed the basis of his knowledge about some matter.  Defendants may not simply use Dr. Weston as a vehicle to admit testimony about documents written by others about which he had no personal knowledge or involvement.

DX 238, Update on DOE Status of Compliance with Agreement at Rocky Flats Facility

This document appears to be an internal EPA memorandum.  There is no evidence it was sent

to Rockwell or Dr. Weston.

<u>DX 285, An Assessment of Critically Safety at the Department of Energy Rocky Flats Plant</u>
<u>DX 1733, "Scientech Findings"</u>

DX 285 is the Scientech report on criticality safety, and DX 1733 is a graphic containing quotations from the report.  There is no evidence that Dr. Weston was involved in this investigation or relied upon it in his work.

<u>DX 273, Liquefied Gas Log</u>
<u>DX 273A, Liquefied Gas Log</u>
<u>DX 291, "Two page spreadsheet"</u>
<u>DX 295, "Log Sheets"</u>

These exhibits appear to be log books.  It is unclear from the face of the document what the book purports to record, who wrote it, or on whom the author relied for this information.  As a high-level manager it is unlikely that Dr. Weston would have reviewed or worked with this log book during his employment at Rockwell.  In addition, the information in these books is hearsay.

<u>DX 394, Final Environmental Impact Statement, 1980</u>

There is no evidence that Dr. Weston had any involvement in preparing this environmental impact statement.

<u>DX 416, Memo from Whiteman to Romatowski attaching Prerenewal Appraisal Report</u>

This document was sent by the DOE area manager's office to the Albuquerque Operations Office.  There is no evidence that Rockwell or Dr. Weston ever received the document.

<u>DX 656, Rocky Flats Plant Plutonium History of Material Unaccounted For (MUF)</u>

Dr. Weston is not on the distribution list for this document.

<u>DX 1043, "771 Incinerator Documents"</u>

8

This graphic purports to list the types of documentation that existed about the incinerator. The purpose of this document is presumably to show that if the incinerator were operated during the shutdown of Building 771, there would be a paper trail, and that it would be too many documents for Rockwell to falsify. However, Dr. Weston testified that he was not involved in Rockwell's investigation of the FBI's incinerator allegation. *See* Weston dep. at 130-36 (Ex. 1). There is no evidence that he personally reviewed any of the incinerator documents to look for evidence that the incinerator had been operated. The only activity he undertook to learn whether the incinerator had been operated was to ask some employees. *Id*. at 130. The basis for Dr. Weston's opinion that the incinerator did not run is "[a]ll the investigations and data that has been collected that I had reviewed in that time period." *Id*. at 133; *see also id.* at 261-63. Any knowledge he gained from reading the investigating team's reports is based on hearsay and is inadmissible.

DX 1709 & DX 1710, "Rockwell Informed DOE of These Problems"

There is no proof Dr. Weston had any involvement with the source document for these graphics, a letter from Potter to Bellows.

DX 1716, "RCRA Permitting Challenges"

Plaintiffs object to the last bullet, which claims that "EPA understood that the permit application was preliminary ..." Dr. Weston cannot testify as to what the EPA's understanding was.

DX 4014, Safeguards and Security Division, Survey Report of Rockwell Int'l Rocky Flats Plant

This document is a report by the DOE Albuquerque Operations Office. There is no evidence that Dr. Weston or Rockwell ever received a copy.

DX 4016, Investigative Report of the Inventory Difference in the Aqueous Process

9

Dr. Weston's name does not appear on this document.

DX 4017, Rocky Flats Plant (RF) Building 371 Inventory Difference Facts and Actions

Dr. Weston's name does not appear on this document, and it is not clear that he has personal knowledge of the events described in the document.

DX 4018, Status Report on the Inventory Difference in the Aqueous Recovery Process

Dr. Weston's name does not appear on this document.

DX 4024, Accountability Milestones

No author or date is given for this document.  There is no evidence that Dr. Weston was involved with its creation.

DX 4025, Memo from H.E.Roser to D.C.Sewell, et al.

This document appears to have been written by and sent to AEC personnel.  There is no evidence it was ever sent to Dr. Weston or Rockwell.

DX 4029, DOE letter from A.E.Whiternan to K.Waesche

This document is a letter written by the DOE Area Manager for Rocky Flats to the CDH. There is no evidence it was sent to Rockwell or Dr. Weston.

DX 4030, DOE letter from J.B.Whitsett to R.L.Duprey

This document is a letter written by the DOE Deputy Area Manager for Rocky Flats to the EPA.  There is no evidence it was sent to Rockwell or Dr. Weston.

DX 4034, Letter from G.W.Baughman and F. Dowsett to A.E. Whiteman

This document is a letter from the CDH to the DOE Rocky Flats Area Manager.  There is no evidence it was sent to Rockwell or Dr. Weston.

DX 4042, Letter from A.E.Whiteman to D.Shelton and R.L.Duprey

This document is a letter written by the DOE Area Manager for Rocky Flats to the CDH and EPA.  There is no evidence it was sent to Rockwell or Dr. Weston.

DX 4043, Letter from D.J.Sanchini to A.E.Whiteman

This document is a letter from Dominic Sanchini to the DOE Area Manager.  There is no evidence it was sent to Dr. Weston.

P-1394, Accountability and Safety Functions in Fissile Material Operations

This document is a memorandum from the DOE's Albuquerque Operations Office that appears to have been sent to a number of DOE employees.  There is no evidence it was sent to Rockwell or Dr. Weston.

**D.      Hearsay**

Several of the documents offered by defendants are hearsay, and no foundation has been laid for any of the hearsay exceptions to apply.  These documents are:

> DX 238, Update on DOE Status of Compliance with Agreement at Rocky Flats Facility
> DX 416, Memo from Whiteman to Romatowski attaching Prerenewal Appraisal Report
> DX 4043, Letter from D.J.Sanchini to A.E.Whiteman
> DX 4046, Letter from D.J.Sanchini to A.E.Whiteman

**E.      Miscellaneous Objections**

DX 1045, "People Needed to Operate Incinerator"

This graphic is misleading.  Plaintiffs incorporate by reference their objection to this exhibit when it was used with Mr. Avery.  *See* Plaintiffs' Objections to Avery Cross-examination Exhibits,

filed Dec. 8, 2005 [Ct. Rec. 1761].

DX 1676, "Plaintiffs Ask if MUF Released to Class Area," and DX 1774, "Plaintiffs' Question"

These graphics are nearly identical to DX 1397, which this Court has already excluded.  See DX 1397 (attached as Ex. 2); Order, Dec. 7, 2005 [Ct. Rec. 1757].  Plaintiffs incorporate by reference their objections to the previous incarnation of this exhibit.  *See* Plaintiffs' Opposition to Defendants' November 16 Motion for Admission of Exhibits, filed Nov. 18, 2005 [Ct. Rec. 1683].

DX 1713, " Regulation of Rocky Flats Waste," and DX 1763, "RCRA Timeline: Residues"

These graphics are factually inaccurate.  They represent that EPA and CDH did not have any authority to regulate mixed waste until the July 31, 1986 Compliance Agreement.  However, mixed waste was subject to RCRA (and thus EPA regulation) as early as 1984.  *See* P-1620 at 11 (attached as Ex. 3).

DX 1715, "FBI Raid Main Allegations"

Plaintiffs object to the characterization of the listed FBI allegations as the "main" allegations as argumentative and inaccurate.

DX 1724, "Building 771 Incinerator Allegations-Response"

The first bullet point is objectionable because it contains a legal opinion, that "Plutonium residues are not wastes; not subject to RCRA."   The second bullet point, which states "Evidence demonstrates incinerator not run during shutdown," purports to either draw a conclusion based on the evidence in this case, which should be the responsibility of the jury, or it expresses an opinion that the incinerator did not run, which is not based on Dr. Weston's personal knowledge, see supra p.9 (re DX 1043).  The third bullet point, "Building 771 safely and reasonably operated," contains

a statement of opinion that exceeds the scope of permissible lay opinion testimony under Fed. R. Evid. 701.

DX 1741, "Environmental Conduct Allegation Topics"

This document, which purports to summarize the FBI's allegations regarding "environmental conduct" (presumably, Rockwell's violations of environmental laws), is incomplete and misleading. There are several allegations missing from this graphic, such as the illegal wastewater discharges described in DX 1066.

**F.     No Objection**

Plaintiffs do not object to the following documents:  DX 273, 273a, 281, 650, 652, 653, 672, 4009, 4015, 4022, 4023, 4026, 4027, 4028, 4031, 4032, 4033, 4036, 4037, 4038, 4039, 4040, 4041, 4044, P-10, P-373, P-374, P-559, P-1090, P-1267, and PG-027B.

Plaintiffs do not object to the following graphics if they are used for demonstrative purposes only:  DX 1033, 1048, 1049, 1050, 1053, 1054, 1055, 1075, 1076, 1180, 1341, 1343, 1349, 1363, 1364, 1667, 1669, 1670, 1671, 1672, 1673, 1674, 1675, 1680, 1681, 1682, 1684, 1685, 1686, 1701, 1702, 1707, 1708, 1712, 1727, 1728, 1729, 1737, 1749, 1758, 1761, 1762, 1764, 1765, 1766, 1767, 1768, 1769, 1770, 1771, 1772, 1775, 1778, PG-657A, PG-658, PG-659, and PG-660.

Respectfully submitted,

Dated: December 13, 2005

   /s   Jennifer MacNaughton      

Merrill G. Davidoff
Jennifer MacNaughton
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
fax (215) 875-4604
*jmacnaughton@bm.net*

Louise Roselle
WAITE SCHNEIDER BAYLESS &
CHESLEY
Central Trust Tower, Suite 1513
Cincinnati, OH 45202
(513) 621-0267

Gary B. Blum
Steven W. Kelly
SILVER & DEBOSKEY, P.C.
1801 York Street
Denver, CO 80206
(303) 399-3000

*Attorneys for Plaintiffs*