IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-181-JLK

MERILYN COOK, *et al.*,

      Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

      Defendants.

---

**DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO EXHIBITS TO BE USED WITH DR. JOHN TILL**

---

Defendants respond to plaintiffs' objections to exhibits to be used with Dr. John Till as follows. A chart summarizing defendants' responses to plaintiffs' objections is attached as Exhibit A.

**I.**  **Videotape**

The video defendants seek to offer though Dr. Till simplifies a complex body of science for the jury and puts things "into focus" in a way that other evidence will not. (Ex. B, 11/14/2005 Trial Tr. at 5225.) As the Court has noted, "our primary job here is to have the jury have an understanding of what's going on." (*Id.*) Because this video helps the jury understand doses received by class members over time, it is admissible into evidence.

The Till video follows the precedent of the video plaintiffs presented in connection with Dr. Cochran's testimony, which similarly combined information and opinions prepared by Dr. Cochran, Dr. Budnitz and others. (*See* Ex. B, 11/14/2005 Trial Tr. at 5257 ("I worked with Dr. Budnitz on developing a videotape for this case that was sort of part of my overview and part of

his presentation").) Dr. Till's video combines the date on which class members moved into the class area (as disclosed to the plaintiffs in 2004 and referred to throughout this trial) in graphic form with the doses they would have received.

Plaintiffs object to Dr. Till's video on the ground that it contains matters outside of Dr. Till's expert report. But as plaintiffs concede, these matters — *i.e.,* data regarding when the class members moved into the class area — were *fully* disclosed in the reports of other defense experts. The Till simply marries, in understandable, visual form, Dr. Till's work on air concentrations, doses, and risks, with the work of another defense expert, Dr. Wise.

Furthermore, contrary to what plaintiffs suggest, Dr. Till's report and his reliance materials do discuss the evolution of class-area demographics. As plaintiffs acknowledge, Dr. Till discusses the changing demographics of the area surrounding the site. (*See* Ex. C, Till Report at 2 ("The population of the area is rapidly growing, especially in the corridor between Boulder and Denver.")) The demographics of the plant area, including population growth, are discussed extensively in the ChemRisk reports, which were reviewed by Dr. Till and form the backdrop for all the work done by RAC. (*See* DX-505, ChemRisk Task 7 Report, at 1 ("A key factor in dose reconstruction involves the historical characterization of demography and land use in the area of interest").)

The point of the video is to address what health risks, if any, class members may have as a result of living in the class area, not to show that plaintiffs "came to the nuisance." Nor does the video suggest that the only time people were exposed to plutonium were during the 1957 fire and 903 pad incidents. These are included among "other events" discussed in the video. In any event, plaintiffs' objection goes to weight, not admissibility.

Similarly, plaintiffs' objection that the 1957 fire dose descriptions only apply to those who may have been outdoors is inaccurate. The video depicts a worst-case scenario – the dose a hypothetical individual, outside from 10:00 p.m. to 7:00 a.m., would have received. Dr. Till will use this hypothetical not to argue that those who were inside would not have received any exposures, but rather to demonstrate that if the dose received by a hypothetical individual who would have received the highest exposure from the fire is inconsequential, then no other individuals, including those inside, need be concerned about doses they received. In any event, Plaintiffs' objection goes to weight, not admissibility.

## II.     Evidence Allegedly Outside the Scope of Dr. Till's Report

### A.     Papers Not Authored By Dr. Till

#### 1.     DX 454, ATSDR Public Health Assessment for Rocky Flats

This document has already been admitted into evidence. Plaintiffs' objection that Dr. Till will testify for two days and "does not need an additional ... report to bolster or parrot the RAC study's results" is utterly without basis. It is common and proper for an expert to testify about the acceptance of his work by government agencies and the scientific community — particularly in a case, such as this, where the opposing party has repeatedly attacked the expert's objectivity, independence, and results.

#### 2.     DX 507, Colorado Central Cancer Registry, "Ratios of Cancer Incidence in Ten Areas Around Rocky Flats, Colorado"

Plaintiffs object to the Colorado Central Cancer Registry (CCCR) study on the grounds that it was not cited in Till's report, is hearsay, and is not admissible under Fed. R. Evid. 702. Again, this document has already been admitted. Dr. Till should be allowed to refer to it. Furthermore, plaintiffs are wrong on all counts. The CCCR study was part of the Health Advisory Panel study of Rocky Flats. (*See* DX 507 at 1.) The results of the study were

3

presented to RAC, and RAC relied on those results in reaching its own conclusions on the issue of whether further epidemiological studies were needed. Second, the CCCR report is exactly the type of material professionals in Dr. Till's field rely on in forming opinions or inferences. Thus the study is also important to the jury's evaluation of Dr. Till's opinions regarding the need for further epidemiological studies. It therefore should be admitted under Fed. R. Evid. 703.

### 3. *DX 4055, Draft RCRA Facility Investigation, Appx. A- Comprehensive Risk Assessment*

Plaintiffs concede that DX 4055 is admissible but argue that defendants cannot use it in connection with Dr. Till's testimony because RAC did not rely on it. However, Dr. Till need not have specifically relied upon the report in his study for it to be used during his testimony. Plaintiffs have specifically put the appropriateness of the cleanup addressed by DX 4055 in issue by calling Dr. Selbin, whose committee retained Dr. Till and RAC. The basis of Dr. Selbin's testimony was that the DOE, CDPHE and EPA rejected RAC (and Dr. Till's) Radionuclide Soil Action Level (RSAL) in favor of one 15 pCi/g higher and that RAC's number was "far more protective of the people now and in the future." (*See* Ex. B, Trial Tr. at 7116). Dr. Till should be allowed to compare his study to the final cleanup risk assessments to rebut Dr. Selbin's conclusions. (*See* Ex. B, 12/9/2005 Trial Tr. at 7188 ("[I]f you object in court to something like this, and he says, it's rebuttal testimony and refers to a specific statement made by one of your experts, then it's appropriate, even though it's not contained in his report").)

### 4. *DX 536, "Summary of Findings - Historical Public Exposure Studies on Rocky Flats"; P-1334, "Health Advisory Panel's Report to the Public"; and DX 1833a, "HAP Conclusions on Need for Epidemiologic Studies"*

Plaintiffs object to these Health Advisory Panel (HAP) documents on the ground that Dr. Till had no role in preparing them. But each of these documents deals with the background and context for the RAC study and is important for understanding Dr. Till's opinions and the

4

bases for those opinions. An expert should be able to testify and introduce background documents that explain the nature and scope of his study.

DX 536 has already been admitted and was explicitly cited in Dr. Till's report. (*See* Ex. C at 1, 30.) Among other things, DX 536 contains extensive discussion of the background for the RAC study, the objectives of the study, the process followed in performing the study, public involvement in the study, and availability of information about the study to the public. (DX 536) All of this information is important to understanding the context and credibility of the RAC study and its conclusions.

Plaintiffs object to DX 1833a, asserting that Dr. Till should not be able to present evidence about HAP's September 1999 opinions regarding the need for further epidemiological studies. However, again, HAP's conclusions — based in large part on RAC's exposure estimates — are important for understanding the context of RAC's work and corroborate RAC's nearly identical conclusion. (*See* Ex. C at 1).

Plaintiffs' exhibit P-1334, the "Health Advisory Panel's Report to the Public," was shown to the jury in connection with the testimony of Dr. Gale Biggs. It contains (among other things) extensive discussions of the history, context and substance of the RAC studies, as well as responses to criticisms raised by Dr. Biggs, who testified regarding these criticisms in this trial. Use of this document with Dr. Till is proper.

> 5. *P-1469, Proposed Modifications and Additions to the Rocky Flats Cleanup Agreement.*

This document was offered by plaintiffs and has already been admitted.

> B. **Papers Written by Scientists Other Than Dr. Till Who Worked For RAC**
>
> 1. *DX-37, Plutonium Releases from the 903 Pad at Rocky Flats; DX-38, Plutonium Releases from the 1957 Fire at Rocky Flats; DX-379, Past Radionuclide Releases from Routine Operations at Rocky Flats; and*

5

>   ### DX-735, Risks of Fatal Cancer from Inhalation of $^{239,240}$Plutonium by Humans

DX-37, DX-38, and DX-379 are reports by ChemRisk, the firm that performed Phase I of the dose reconstruction that RAC completed. Each of these documents is already admitted. Furthermore, ChemRisk's Phase I reports were an important input in RAC's work and are key to understanding the bases to RAC's conclusions and Dr. Till's opinions. DX 735 is a paper published by the Health Physics Society concerning the risks of cancer from inhalation of plutonium by humans. This paper explains for the jury Dr. Till's opinions concerning the risk caused by exposure to various doses of plutonium, and plaintiffs do not argue it will cause any prejudice. DX 735 is therefore admissible under Fed. R. Evid. 703. In addition, the paper is directly responsive to testimony offered by Dr. Wing and others about the health consequences of plutonium.

### C. Papers Co-Written by Dr. Till

>   #### 1. DX-398, A Model for a Comprehensive Assessment of Exposure and Lifetime Cancer Incidence Risk from Plutonium Released from the Rocky Flats Plant, 1953-1989; and DX-543, Risks to the Public from Historical Releases of Radionuclides and Chemicals at the Rocky Flats Environmental Technology Site

DX-398 has already been admitted and was cited in Dr. Till's report. Furthermore, as plaintiffs concede, both of these exhibits were co-authored by Dr. Till, and both contain conclusions RAC reached in its study. DX-543 should be admitted because it would help the jury understand Dr. Till's opinions and assess the bases for those opinions. Plaintiffs have never argued that admission of this document would unfairly prejudice them.[1]

### D. Miscellaneous Objections

---

[1] Instead, plaintiffs have made a hearsay objection. They have made no argument that DX-543 is not admissible under Fed. R. Evid. 703. In contrast, defendants demonstrated that Smallwood's published articles do not qualify for admission under Rule 703.

6

### 1.   *DX-1809, "Plaintiffs' Experts on RAC (before trial)"*

DX-1809 contains transcribed statements by one of plaintiffs' experts regarding the quality of Dr. Till's and RAC's work. These statements are admissible because they are admissions of plaintiffs' agent (upon whose affidavit plaintiffs relied to obtain a class) and because they are highly relevant to rebut plaintiffs' current positions that RAC is not independent and that its conclusions are unreliable.

### 2.   *DX-1773, Lifetime Cancer Risk by Decade; and DX-1779, RAC Calculated Doses by Decade*

As the graphics themselves indicate, these graphics come directly out of the RAC Risk report. The class contour merely gives the jury context as to where these samples were taken in relation to the class boundary. Plaintiffs' objection goes to weight, not admissibility, and can be brought out on cross-examination.

### 3.   *DX-1800, "Current Acceptable Annual Doses"*

These graphics are admissible because they directly respond to testimony by plaintiffs' witnesses about acceptable levels of risk.

### 4.   *DX-1810, "Cochran on ChemRisk"; and DX-1811, "Cochran on RAC's Calculations"*

These graphics are admissible because they directly respond to testimony by Dr. Cochran. They are not "unduly argumentative" because Dr. Cochran's testimony was factually inaccurate. In any case, the allegedly "argumentative" portions can be addressed on cross examination.

### 5.   *DX-1843, "1 in 1 Million"*

Dr. Till is expected to testify about risks of one in one million and less  This graphic simply explains what those terms mean.

### 6.   *DX-1844, "Burrowing Animals Considered"*

7

This graphic is admissible because it is directly responsive to testimony presented by Drs. Smallwood and Selbin.

### 7. DX-1845, "RSALs"

Not only does Dr. Till's report contain a discussion of Radionuclide Soil Action Levels ("RSALs"), as plaintiffs admit, but RAC performed its own work on RSALs applicable to Rocky Flats. (*See* Ex. C at 30-31.) Further this graphic is directly responsive to Dr. Selbin's testimony.

Dated: December 14, 2005

Respectfully submitted,

/s/ John E. Tangren
One of the Attorneys for the Defendants
David M. Bernick
Douglas J. Kurtenbach
Ellen Therese Ahern
Mark J. Nomellini
John E. Tangren
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636
Phone:  312-861-2000
Fax:    312-861-2200

Joseph J. Bronesky
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Phone:  303-297-2900
Fax:    303-298-0940

Attorneys for ROCKWELL INTERNATIONAL CORPORATION and THE DOW CHEMICAL COMPANY

## CERTIFICATE OF SERVICE

  I hereby certify that on December 9, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses for the following:

Peter B. Nordberg, Esq.
c/o Karen M. Markert
Apartments at Denver Place, Apt. 2812
1880 Arapahoe Street
Denver, CO 80202
pnordberg@bm.net
kmarkert@bm.net

Gary B. Blum, Esq.
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206
blumg@s-d.com

              /s/ Kari Knudsen
              Kari Knudsen (legal assistant)