IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

No. 90-cv-181

**MERILYN COOK, et al.,**
**Plaintiffs,**

v.

**ROCKWELL INTERNATIONAL CORPORATION and**
**THE DOW CHEMICAL COMPANY,**
**Defendants.**

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN
SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE
THE TESTIMONY OF PAUL G. VOILLEQUÉ**

By Order dated December 15, 2005, this Court excluded the testimony of one of Defendants' proposed expert witnesses, Dr. Shirley Fry, because she was an expert who had failed to serve a timely expert report as required by Rule 26 and this Court's prior orders. *See* Order on Motion to Exclude Testimony of Dr. Shirley Fry (the "Exclusion Order") [Ct. Rec. 1876].

Plaintiffs also have moved to exclude the testimony of another proposed expert for Defendants - Paul Voilleque - on similar grounds.[1] Specifically, Mr. Voilleque is, like Dr. Fry, an expert who failed to serve any kind of expert report - timely or otherwise. As with Dr. Fry, there is no justification for Defendants' failure to comply with Rule 26 and this Court's prior orders and

---

[1] *See* Plaintiffs' Motion to Exclude Expert Testimony from Dr. Shirley Fry, Dr. Helen Grogan, & Mr. Paul G. Voilleque, filed December 4, 2005 [Ct. Rec. 1728]. Defendants have *withdrawn* Dr. Grogan. *See* Defendants' Letter dated Dec. 22, 2005, at 1 ("we do not intend to call Dr. Grogan as a witness. Therefore, your motion with respect to her testimony is moot.") [Ct. Rec. 1881].

deadlines and, accordingly, Mr. Voilleque's testimony should be excluded.

Defendants did not identify Mr. Voilleque as a witness until November 2005. *See* Defendants' Statement Concerning Its Trial Witness List (Nov. 11, 2005) [Ct. Rec. 1630]. Mr. Voilleque is a health physicist who participated in RAC's dose reconstruction project during the 1990s. *See* Voilleque dep., 12/16/05 at (Exh. 1 hereto). Indeed, Mr. Voilleque participated in preparing RAC's proposal to perform the work back in 1991 or 1992. *Id.* at 31. Yet Defendants did not even contact him about testifying in this case until quite recently. *Id.* at 43 ("Q: Okay. When were you first contacted about being a potential witness in this case? . . . A. I can't say exactly. Within the last – I'd say with the last two months. Perhaps three.").

At his deposition on December 16, 2005, Mr. Voilleque repeatedly testified that he *did not know* specifically what subjects Defendants expected him to testify about – despite the fact that he is Defendants' *next proposed witness*. *See* Voilleque dep. at 53 ("I don't know what specific topics I'll be testifying about."); and at 65 ("I have said more than once that I do not know what it is that I'm going to be asked to testify about."); and at 77 ("I have said probably three or four times that no, they [Defendants' counsel] have not told me what I'm going to be testifying about.").

*After* Mr. Voilleque's deposition had been completed, Defendants disclosed in their Letter dated Dec. 22, 2005, that they intend to elicit testimony from Mr. Voilleque on two topics: "MUF and the 1957 fire." Ct. Rec. 1881 at 1.

*Both* of these topics were the subject of a timely expert report served in 1996 by one of

Plaintiffs' experts. Dr. Thomas Cochran. *See* Exh. 2 (copy of Dr. Cochran's MUF report).[2] *Defendants failed to serve any kind of expert rebuttal report. Cf.* Exclusion Order at 2 ("Pursuant to Rule 26(a)(2)(C), Defendants were required to identify and provide an expert report for any expert evidence they intended to present to contradict or rebut Dr. Wing's expert testimony within 30 days of Plaintiffs' disclosure of Dr. Wing's expert report."). Accordingly, Mr. Voilleque's testimony should be excluded. *Cf.* Exclusion Order at 3 ("Accordingly, unless Defendants had substantial justification for failing to disclose Dr. Fry's testimony in December, 1996, she may not testify as an expert in rebuttal to Dr. Wing's properly disclosed expert testimony.").

Defendants may argue that Mr. Voilleque prepared a final RAC report on MUF and the 1957 fire in August 1999, yet Defendants *again failed* to serve any kind of expert report by Mr. Voilleque by the deadline for the supplementation of expert reports in the summer of 2004.[3] By contrast, Defendants served a report by Dr. John Till, the head of RAC, in August 2004; Plaintiffs did not move to exclude Dr. Till; and Dr. Till testified at trial on Dec. 15-16.

Defendants have no excuse for failing to serve a timely expert report by Mr. Voilleque. Accordingly, his testimony should be excluded.

Moreover, there is no doubt that Mr. Voilleque would be testifying as an *expert*, not as a fact witness. Mr. Voilleque has no *direct personal knowledge* about MUF or the 1957 fire at Rocky Flats (or anything else relevant to this case). Voilleque dep. at 187-193. He never worked at Rocky Flats for Dow or Rockwell, and he was never physically present at the plant from 1952 through 1989 in

---

[2] The 1957 fire also was analyzed by another of Plaintiffs' experts, Dr. Robert Budnitz. He also served a timely expert report on the subject in 1996.

[3] *See* June 17, 2004 Order [Ct. Rec. 1238].

3

any capacity whatsoever. *Id.* at 188 ("Q  Did you ever do any work at Rocky Flats from '52 to '89? Physically present at Rocky Flats?   A  No.  Not that I can recall.").

Mr. Voilleque's work on MUF and the 1957 fire for RAC was based on his review of documents, some interviews, and his *claimed expertise* in specialized subjects outside the experience and understanding of ordinary citizens.

Mr. Voilleque participated in writing or creating a number of RAC reports, including those relating to MUF and the 1957 fire.  He testified that *all* of his work for RAC required him to draw on and utilize his expertise or specialized knowledge in one or more of the following subjects: (1) internal dosimetry; (2) environmental transport of radioactivity; (3) behavior of radioactivity in the environment; (4) releases of radioactivity from nuclear facilities; and (5) the behavior of radionuclides within facilities.[4]  Voilleque dep. at 69-71.  *See also id.* at 59 ("Q  And is it fair to say that the [RAC] reports that you've just described and your work in them required you to apply your specialized knowledge and expertise in preparing these reports?  Is that correct?  A  Yes.").

Mr. Voilleque further testified as follows:

> Q   Okay.  I want to make sure something is clear.  Mr. Voilleque, is there anything specific – specific that you can identify that you did in connection with your work for RAC relating to Rocky Flats that did not depend on or rely on one or more of the five areas of expertise or knowledge that you identified earlier?  That is, internal dosimetry, environmental transport, release of radionuclides and other materials from Rocky Flats, and behavior of radionuclides in facilities?  Is there anything specific that you can identify for me?

---

[4] Mr. Voilleque testified that each of these subject areas is *outside* the understanding and experiences of lay persons.  *See* Voilleque dep. at 73 ("Q  [T]hese are all areas outside the general understanding of most members of the public?  A  I think that's generally true, yes."). *See also id.* at 72 (same); and at 128 (same).  Mr. Voilleque includes MUF or material balance analysis within topic No. 5, i.e., behavior of radionuclides in facilities.  Voilleque dep. at 122-23.

[objection omitted]

A    Well, I believe that – the short answer to your question is no[.]

Voilleque dep. at 233-34.

In sum, Mr. Voilleque is an expert who failed to serve an expert report of any kind, by any date. Defendants can offer no substantial justification for this failure, and Defendants' use of his testimony would not be harmless.[5] Accordingly, Plaintiffs respectfully request that his testimony be excluded.

Respectfully submitted,

Dated: Dec. 21, 2005

/s   Jennifer MacNaughton
Merrill G. Davidoff
David F. Sorensen
Jennifer MacNaughton
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
fax (215) 875-4604
*jmacnaughton@bm.net*

---

[5] *See* Exclusion Order at 3 n.3 ("Dr. Fry was not disclosed as a witness until the eve of trial and never filed an expert report of any kind. That Plaintiffs were able to take her deposition, during trial and barely a week before her scheduled testimony, does not cure the prejudice that resulted from this untimely and incomplete disclosure."). Here, Mr. Voilleque repeatedly testified at his deposition on Dec. 16 that he *did not know what he would be asked by Defendants to testify about.* Only *after* his deposition did Defendants identify with particularity the specific subjects of his expected testimony. Defendants' prior disclosure, filed December 16, 2005 – the same day as Mr. Voilleque's deposition – included every topic under the sun. *See* Defendants' Proffer with Respect to the Testimony of Paul Voilleque. [Ct. Rec. 1878]. Thus, the prejudice to Plaintiffs here is even worse than it was with respect to Dr. Fry, because Plaintiffs were deprived of the opportunity to focus the deposition on the specific subjects of Mr. Voilleque's proposed testimony. And this was entirely due to Defendants' failure to specify those subjects until *after* the deposition had been completed.

5

Gary B. Blum
Steven W. Kelly
Silver & DeBoskey, P.C.
1801 York Street
Denver, CO 80206
(303) 399-3000

*Attorneys for Plaintiffs
And the Class*