**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-181-JLK

MERILYN COOK, *et al.*,

        Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

        Defendants.

_____

**DEFENDANTS' MOTION TO STRIKE THE
TESTIMONY OF DR. BIGGS AND DR. SELBIN**
_____

On December 15, 2005, this Court issued an Order barring Dr. Shirley Fry, an epidemiologist affiliated with Oak Ridge Associated Universities, from presenting rebuttal testimony in response to allegations by Dr. Wing, who testified on behalf of the plaintiffs. Although Defendants did not retain Dr. Fry to conduct any expert analysis for this case -- and proffered Dr. Fry to testify solely based on her historical, firsthand knowledge of Dr. Wing and the research culture within the Department of Energy complex -- the Court nevertheless found that Dr. Fry's testimony would be expert testimony because it involved specialized knowledge beyond the "knowledge or a process of reasoning familiar to the layman in everyday life." (12/15/05 Order at 7.)

Under this standard, the testimony of two of plaintiffs' purported fact witnesses, Dr. Gale Biggs and Dr. Joel Selbin, should not have been permitted. Like Dr. Fry, both of these witnesses proposed to testify based on their historical affiliation with scientific organizations that conducted investigations outside of the context of this litigation. In fact, both Dr. Biggs and Dr. Selbin actually went a step further than Defendants proposed that Dr. Fry would do: they each testified at length concerning the opinions and conclusions they and their affiliated organizations reached regarding scientific and technical issues in this case. Yet neither Dr. Biggs nor Dr. Selbin ever prepared an expert report.

Thus, under the standard announced in the Court's December 15, 2005 Order, Drs. Biggs and Selbin should not have been permitted to testify. The Court should remedy this unfair situation by striking Dr. Biggs's and Dr. Selbin's testimony and instructing the jury to disregard this testimony in its entirety.

**I.     UNDER THE DECEMBER 15, 2005 ORDER, TESTIMONY CONCERNING THE WORK OF A SCIENTIFIC ORGANIZATION IS EXPERT TESTIMONY IF IT RELATES TO SCIENTIFIC ISSUES BEYOND THE KNOWLEDGE OF LAYPERSONS.**

On October 5, 2005, almost immediately after the Court ruled that Dr. Wing would be permitted to testify, defendants identified Dr. Shirley Fry as a rebuttal fact witness to respond to Dr. Wing. (*See* Ex. A, Defs.' 10/5/05 Stmt. Concerning Trial Witness List.)[1] Defendants sought to have Dr. Fry respond to a number of allegations by Dr. Wing about improprieties and

2

"conflicts of interest" in the DOE's epidemiological studies, including allegations against Dr. Fry herself.  (*See* Ex. B, Defs.' Supp. Resp. to Pls.' Mot. to Exclude Testimony of Shirley Fry at 3-4.)  Dr. Fry's expected testimony would have been based on her *historical* and *factual* knowledge of Dr. Wing and the research culture at the DOE.  Dr. Fry had first-hand, factual knowledge of these issues because she was the Director of the Center for Research at Oak Ridge Associated Universities, attended the Advisory Committee meeting at issue, and was at one time listed as a co-author of Dr. Wing's study.  In fact, it was Dr. Fry that Dr. Wing claims asked to have her name withdrawn from his article.  Defendants did not proffer Dr. Fry to testify in this case to any opinions based on specialized scientific or technical analysis.

Nevertheless, in its December 15, 2005 Order granting plaintiffs' motion to exclude Dr. Fry, the Court found that *all* of Dr. Fry's proposed testimony would be *expert* testimony.  The Court stated that the proposed testimony involved scientific knowledge beyond the knowledge or process of reasoning of a layman in everyday life:

> … Dr. Fry's intended testimony would be based on her knowledge and alleged expertise in epidemiology … rather than knowledge or a process of reasoning familiar to the layman in everyday life.

(12/15/05 Order at 7.)  Thus, even though Dr. Fry's testimony would be historical and factual, the Court reasoned that the scientific nature of the subject matter rendered it expert testimony. The Court therefore refused to permit Dr. Fry to testify *at all*, even regarding historical events

---

[1] Plaintiffs never informed Defendants that Dr. Wing would be testifying at any time beginning December 2003, when Plaintiffs witness list was due, until after all the Daubert briefing and argument was completed in 2005.

3

and facts she was aware of through her personal involvement with DOE epidemiological research and her familiarity with Dr. Wing.  (*Id*. at 5-7.)

## II. DR. BIGGS'S AND DR. SELBIN'S TESTIMONY WAS EXPERT TESTIMONY UNDER THE STANDARD APPLIED TO DR. FRY'S TESTIMONY.

The same reasoning should have applied to two of plaintiffs' witnesses, Dr. Gale Biggs and Dr. Joel Selbin.  These two witnesses *were* permitted to testify at length concerning the work of purported scientific organizations with which they were affiliated.

### A. Dr. Gale Biggs's Testimony Regarding The Work Of The Governor's Panel And Other Committees.

Plaintiffs offered Dr. Biggs to testify regarding "his experiences on several committees charged with the review of Rocky Flats environmental management," including "the work of those committees and their findings and recommendations."  (Ex. C, Pls.' 9/29/05 Witness List.)  Defendants objected to this testimony, arguing (among other things) that the testimony would constitute improper expert opinion, and that Dr. Biggs did not prepare an expert report and had not been qualified under Fed. R. Evid. 702.  Nevertheless, on November 7, 2005, over Defendants' objection, the Court ruled that Dr. Biggs would be allowed to testify "about the *historical events* surrounding his work," including the findings of a Governors' Panel dealing with Rocky Flats on which he served.[2]  (Ex. D, 11/7/05 Trial Tr. at 4207 (emphasis added).)

---

[2] Dr. Biggs was permitted to testify about his work on the Governor's Panel though the Panel consisted of experts.  Dr. Biggs acknowledged at his deposition that the Governor's Panel comprised technical experts and scientific experts, and everyone on the panel had a Ph.D.  (*See* Ex. F, Biggs Dep. at 234–35.)  When asked whether the work that he did on the panel could have been done by someone without his education, training, and experience in his field, Biggs answered:  "Absolutely not."  (*Id*. at 234.)

(Continued…)

Dr. Biggs' proposed testimony was no less expert testimony than Dr. Fry's proposed testimony: both Dr. Biggs and Dr. Fry were involved with purported scientific organizations conducting scientific work outside this litigation, and both sought to testify about facts and historical events, based on their personal knowledge of the work of these organizations. In fact, Dr. Biggs' ultimate trial testimony went far beyond what defendants proposed for Dr. Fry. The Court permitted Dr. Biggs to present his own and his affiliated organizations' opinions regarding a number of key issues in the case. For example:

- Dr. Biggs testified that he had marketed Rocky Flats to put up a meteorological tower in the 1970s, and in that context had been asked to review technical documents coming out of Rocky Flats. This work had nothing to do with his work for the Governor's Panel. Yet, he was permitted to relate his opinion at the time that he "came away very concerned at what [he] thought was very poor science." (Ex. D, 11/8/05 Trial Tr. at 4588.)

- Dr. Biggs testified regarding a letter he and others wrote to the Colorado Department of Health urging the Department to deny an incinerator burn permit to Rocky Flats. In that testimony, he was permitted to relate the "feelings of [him] and the other scientists" that "It is our belief that the equipment, the plan, the monitoring, and the documentation are so flawed and deficient, so threatening to public safety that the application is beyond expectation of a remedy." (*Id.* at 4595.)

- Dr. Biggs stated that he served on a committee to a panel created by Governor Romer, "representing independent science, research and private industry specialists." (*Id.* at 4605.) He testified at length concerning his and his committee's conclusions regarding the duct work, stack sampling and air monitoring programs at Rocky Flats (*see id.* at 4613–17), including the committee's purported opinion that Rocky Flats' monitoring was inadequate:

    [W]e came away as a committee very concerned that there were not adequate monitoring devices to determine what was coming out of the stack, so therefore, we concluded that they did not know how much plutonium was coming out of their stacks. …We also

5

>concluded that the ambient monitors, ambient being monitors out in the air, free air, not in the building, were not really monitoring the plutonium coming off the site so that they did not know what was coming off the facility. There was no adequate way of measuring either out of the building or off of the site.

(Ex. D, 11/9/05 Trial Tr. at 4654; *see also id.* at 4658–61.)

### B. Dr. Joel Selbin's Testimony Regarding The Work Of Various Citizens' Committees.

Like Dr. Biggs, Plaintiffs proffered Dr. Selbin to testify about "his experiences as a member" of purported scientific organizations, including "the Radionuclide Soil Action Level[] oversight panel and other Rocky Flats citizens' committees funded by DOE." (Ex. C, Pls.' 9/29/05 Witness List.[3]) As with Dr. Biggs, defendants objected to Dr. Selbin's testimony because (among other problems) his conclusions about the Radionuclide Soil Action Level (RSAL) chosen by the three agencies would constitute expert opinion. Dr. Selbin never prepared a report and should not have been permitted to provide expert testimony. Nevertheless, on December 7, 2005, the Court overruled defendants' objection, permitting Dr. Selbin to testify regarding his *historical* work on the Radionuclide Soil Action Level Oversight Panel (RSALOP).

Permitting Dr. Selbin to testify about his historical work with a scientific organization is not consistent with the standard set forth in the December 15, 2005 Order. Indeed, Dr. Fry was specifically *not* permitted to testify regarding the historical facts surrounding her work with Oak

---

[3] The September 29, 2005 witness list was the first time that defendants learned of Plaintiffs' intention to call Dr. Selbin. Indeed, when Defendants deposed Dr. Selbin on November 9, 2005, he stated that Plaintiffs had first contacted him only "weeks ago." (Ex. E, Selbin Dep. at 149.)

6

Ridge Associated Universities, the DOE and Dr. Wing.  Furthermore, as with Dr. Biggs, plaintiffs went a step further and effectively used Dr. Selbin's historical experience to present Dr. Selbin's and the RSALOP's expert opinions regarding issues in this litigation.  For example:

- Dr. Selbin presented his and the RSALOP's opinion that Rocky Flats should have been cleaned up based on a 35 pCi/g RSAL rather than the 50 pCi/g RSAL used.  (Ex. D, 12/8/05 Trial Tr. at 7083–84, 7101.)

- As justification for his belief that the lower RSAL was appropriate, Dr. Selbin offered his purported expert opinion that "every extra millirem of radiation causes the potential for harm or the potential to a cancer."  (*Id.* at 7159.)

- Dr. Selbin presented the RSALOP's purported "consensus" opinion regarding whether all the "hot spots" Rocky Flats could be successfully remediated.  According to Selbin, "there was no way in the world to physically sample the entire site."  Consequently "there were hot spots [at Rocky Flats] and that [they] were probably not going to be able to know them all."  (*Id.* at 7160-61.)

Like Dr. Biggs's testimony, this testimony goes well beyond the rebuttal testimony defendants proposed to present through Dr. Fry.  Under the standard the Court applied to Dr. Fry, both Dr. Selbin's and Dr. Biggs' testimony in this case was expert testimony.

## **CONCLUSION**

For the foregoing reasons, defendants request that the Court strike the testimony of Dr. Gale Biggs and Dr. Joel Selbin and instruct the jury to disregard this testimony in its entirety.

Dated:  December 23, 2005                                         Respectfully submitted,


/s/ John E. Tangren_____
David M. Bernick
Douglas J. Kurtenbach
Ellen Therese Ahern
Mark J. Nomellini
John E. Tangren

7

8

        KIRKLAND & ELLIS LLP
        200 East Randolph Drive
        Chicago, Illinois 60601-6636
        Phone:  312-861-2000
        Fax:     312-861-2200

        Joseph J. Bronesky
        SHERMAN & HOWARD L.L.C.
        633 Seventeenth Street, Suite 3000
        Denver, Colorado 80202
        Phone:  303-297-2900
        Fax:     303-298-0940

        Attorneys for ROCKWELL
        INTERNATIONAL CORPORATION and
        THE DOW CHEMICAL COMPANY

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses for the following:

Peter B. Nordberg, Esq.
c/o Karen M. Markert
Apartments at Denver Place, Apt. 2812
1880 Arapahoe Street
Denver, CO 80202
pnordberg@bm.net
kmarkert@bm.net

Gary B. Blum, Esq.
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206
blumg@s-d.com

/s/ Kari Knudsen_____
Kari Knudsen (legal assistant)