# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-181-JLK

MERILYN COOK, *et al.*,

    Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

    Defendants.

---

## SUPPLEMENTAL RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE THE TESTIMONY OF DR. SHIRLEY A. FRY

---

On December 4th, plaintiffs moved to exclude the testimony of defendants' witness Dr. Shirley A. Fry. (Docket No. 1728-1)  Nearly two months ago, defendants identified Dr. Fry as a witness to rebut the testimony of plaintiffs' witness Steven Wing. As plaintiffs' motion acknowledges, the Court indicated its approval of Dr. Fry as a rebuttal witness. (*See* Pls.' Mot at 2.)  Despite that ruling, and despite the fact that plaintiffs had not yet even taken Dr. Fry's deposition, plaintiffs' motion baldly asserted that Dr. Fry was "not being offered as a fact witness" and that neither could she testify as an expert witness. (Pls.' Mot. at 4.)  Plaintiffs have now had the opportunity to take Dr. Fry's deposition. That deposition revealed that Dr. Fry does, in fact, have personal knowledge of the areas in which defendants designated her to testify in rebuttal.

Dr. Fry's deposition testimony established that for nearly 20 years, she participated in epidemiologic studies of nuclear workers throughout the United States, including Rocky Flats, Oak Ridge, Hanford, Savannah River, and other facilities (Ex. A, Fry Dep. at 8, 50-51, 96, 126); that she rose to the position of Director of the Center for Epidemiologic Research at Oak Ridge Associated Universities and held that position at the time that Steve Wing published his paper on Oak Ridge workers (*id.* at 142); that she authored or co-authored at least 52 publications on radiation epidemiology or related topics (Ex. B, Fry Dep. Ex. 1); that she collaborated with her colleagues at other institutions performing epidemiologic studies on nuclear workers in the United States (*id.* at 96); that she has extensive education, training, and experience in radiation epidemiology (*id.* at 44, 135-36); that she authored a publication summarizing the history of epidemiologic studies of workers in DOE facilities (*id.* at 167-68); and that she was personally involved with incidents about which Steve Wing testified at his deposition (*see, e.g.*, Fry Dep. at 142-50).

Examples of the areas in which Dr. Fry has personal knowledge to rebut Dr. Wing's testimony include the following:

2

| Wing's Trial Testimony | Fry's Deposition Testimony |
|---|---|
| "... there was tremendous controversy over Mancuso's reports. And interestingly, by, I believe it was 1978, although Mancuso had been funded by DOE from the early 1960s through the middle 1970s, his funding was removed in the late 1970s." (Tr. 5725-5726.) | Mancuso was informed in 1974 that his contract would be terminated because "it took much longer to develop the materials than he had anticipated" and "there was concern that he wasn't making as much progress as ... the AEC would liked to have seen." (Fry Dep. at 75-76.) |
| "... a climate of research has been created that makes it difficult for critical research to be conducted." (Tr. 5757.) | Has knowledge about "general background information as an employee of a DOE contractor, how we had conducted the studies, what the environment was – the work environment was, the culture." (Fry Dep. at 17-18.) |
| Wing's Oak Ridge study was "not well-received" and that he was "told from the very beginning of when I went to work at Oak Ridge that we were not expected to find any relationship between radiation and mortality or cancer" but that, when he presented his mortality study, the Advisory Committee members were "pretty upset." (Tr. 5672-73.) | Has knowledge about Wing's "role as a co-investigator when he was at ... University of North Carolina .... how the studies were conducted, how they were reviewed, how we interacted with other epidemiology groups within the DOE." (Fry Dep. at 42-43.)<br><br>"I don't think anyone [on the Advisory Committee] disagreed with the results. . . . I think they were surprised by it and puzzled by the findings." (Fry Dep. at 155.) |
| The "director of the epidemiology program at Oak Ridge Associated Universities ... asked that her name be withdrawn before the article was published." (Tr. 5680.) | Dr. Fry was the Director of the Center for Epidemiologic Research and asked that her name be removed from the article because she felt that some of the editorial comments that Wing had put in the Oak Ridge study manuscript "were not appropriate in this particular paper, that that would be much more suitable for discussion in more of a philosophical, sociological paper." (Fry Dep. at 149.) |

| **Wing's Trial Testimony** | **Fry's Deposition Testimony** |
|---|---|
| One of the Advisory Committee members "asked me to do some other manipulations of the data," including switching "the lowest dose groups . . . to see if the results would change." (Tr. 5676-78) | " . . . [T]here was a lot of discussion about did you look at this; did you do this, a lot of interchange of ideas of what might have contributed to the results and suggestions of what else might be looked at to make sure that the results were as valid as could be achieved." (Fry Dep. at 155-56.)<br><br>The findings of Wing's study were "a surprise," and in such circumstances, "it's not uncommon to collapse, expand, rearrange the dose groups to see if there is any evidence of misclassification of individuals." (Fry Dep. at 183-84.) |

In addition, Dr. Fry testified at her deposition that she had reviewed the trial testimony of Dr. Wing and Dr. Clapp and that she was prepared to address statements made in their testimony. (Fry Dep. at 42-43.) Among the testimony by Dr. Clapp to which Dr. Fry will respond is the use of statistical significance in epidemiologic studies. Dr. Clapp testified that if a result is not statistically significant, the result can "still be more likely than not true." (Tr. 4945.) Dr. Fry explained in her deposition that a lack of statistical significance, as used by epidemiologists (including in Steve Wing's Oak Ridge study), means that an observed result "could have happened by chance." (Fry Dep. at 136, 179-81.)

Dr. Fry's testimony contains additional examples of the personal knowledge that she obtained in her 20 years of experience as an epidemiologist studying nuclear workers that enables her to testify as a rebuttal witness. Accordingly, plaintiffs' motion to strike her testimony should be denied.

4

Dated: December 9, 2005                          Respectfully submitted,


                                                 /s/ John E. Tangren
                                                 One of the Attorneys for the Defendants
                                                 David M. Bernick
                                                 Douglas J. Kurtenbach
                                                 Ellen Therese Ahern
                                                 Mark J. Nomellini
                                                 John E. Tangren
                                                 KIRKLAND & ELLIS LLP
                                                 200 East Randolph Drive
                                                 Chicago, Illinois 60601-6636
                                                 Phone: 312-861-2000
                                                 Fax:   312-861-2200

                                                 Joseph J. Bronesky
                                                 SHERMAN & HOWARD L.L.C.
                                                 633 Seventeenth Street, Suite 3000
                                                 Denver, Colorado 80202
                                                 Phone: 303-297-2900
                                                 Fax:   303-298-0940

                                                 Attorneys for ROCKWELL
                                                 INTERNATIONAL CORPORATION and
                                                 THE DOW CHEMICAL COMPANY

**CERTIFICATE OF SERVICE**

I hereby certify that on December 9, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses for the following:

Peter B. Nordberg, Esq.
c/o Karen M. Markert
Apartments at Denver Place, Apt. 2812
1880 Arapahoe Street
Denver, CO 80202
pnordberg@bm.net
kmarkert@bm.net

Gary B. Blum, Esq.
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206
blumg@s-d.com

/s/ Kari Knudsen
Kari Knudsen (legal assistant)