# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-181-JLK

MERILYN COOK, *et al.*,

       Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

       Defendants.

___

### DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE THE TESTIMONY OF PAUL G. VOILLEQUE

___

      Plaintiffs mischaracterize Mr. Voilleque's deposition testimony and the testimony that he will give at trial. Contrary to Plaintiffs' assertions, Mr. Voilleque will testify to the historical facts of the HAP and RAC investigation into the 1957 fire and material unaccounted for ("MUF") at Rocky Flats. In giving that testimony, Mr. Voilleque is no different from Plaintiffs' witnesses, Dr. Biggs and Dr. Selbin who were permitted to testify to the scientific investigations that they and others conducted without being disclosed as experts or filing expert reports.

**I.  MR. VOILLEQUE IS NO DIFFERENT THAN DR. BIGGS OR DR. SELBIN IN THE TYPE OF TESTIMONY THAT HE SEEKS TO OFFER.**

      Plaintiffs' assertions that Mr. Voilleque is an expert witness who cannot testify because he has not submitted an expert report ignore the Court's prior rulings with respect to Dr. Biggs and Dr. Selbin. It is undisputed that although both Dr. Biggs and Dr. Selbin have specialized

knowledge in particular fields, neither filed an expert report in this case. Yet the Court permitted both witnesses to testify about work involving and reflecting their experience and knowledge.

For example, the Court permitted Dr. Biggs to testify "about the historical events surrounding his work including" the Governor's Panel's findings. (Ex. D, 11/7/05 Trial Tr. at 4207)[1] Yet Dr. Biggs' work on the Governor's Panel involved not only his, but others' experience and specialized scientific knowledge. Dr. Biggs acknowledged that the Governor's Panel was comprised of technical experts and scientific experts and that everyone on the panel had a Ph.D. (*See* Ex. B, Biggs Dep. at 234-35) (*See also* 11/8/05 Trial Tr. at 4602 ("members representing independent science, research and private industry specialists.")) Significantly, when asked whether the work that he did on the panel could have been done by someone *without* his education, training and experience in his field, Dr. Biggs answered: "Absolutely not." ( Ex. B, Biggs Dep. at 234.) Nonetheless, Dr. Biggs was permitted to testify at length about his and the Panel's conclusions and opinions regarding a number of technical, scientific issues, such as the design and sufficiency of the duct work, stack sampling, and air monitoring programs at Rocky Flats, and their conclusion that the Rocky Flats air monitoring was inadequate. (*See* Defs' Mot. Strike the Testimony of Dr. Biggs and Dr. Selbin, 12/23/05 at 4–6 (collecting citations).)

Similarly, the Court permitted Dr. Selbin to testify about his work on the Radionuclide Soil Action Level Oversight Panel (RSALOP), as well as the concerns and conclusions of that panel. Dr. Selbin testified that he "and a few others were invited to join [the Panel] *as technically trained people to help interpret some of the technical discussions* that we were going to have." (12/8/05 Trial Tr. at 7048; 7126-27) (emphasis added) Despite an instruction

---

[1] Excerpts of relevant portions of trial testimony are appended hereto at Exhibit D.

from the Court that Dr. Selbin was not qualified as an expert, during cross-examination, Dr. Selbin stated:  "I hope that people understand I am an expert in chemistry."  (12/8/05 Trial Tr. at 7129)  Dr. Selbin testified about the discussions that the panel had about the movement of plutonium through resuspension, ground water and animal disturbance as well as the presence of "hot spots" and the fact that "there were hot spots [at Rocky Flats] and that [they] were probably not going to be able to know all of them."  (*Id*. at 7056–66.)  He offered opinions drawing on knowledge of specialized matters.  *See, e.g., Id*. at 7159 ("every extra millirem of radiation causes the potential for harm or the potential to a cancer"); *Id.* at 7071.

Under these circumstances, Plaintiffs' attempts to characterize Mr. Voilleque as an expert witness are meritless, particularly because Plaintiffs have ***failed to identify any meaningful distinction*** between Dr. Biggs' testimony, Dr. Selbin's testimony, and Mr. Voilleque's proposed testimony.  As a threshold matter, Mr. Voilleque disagreed with Plaintiffs counsel's use of the word "expertise," which was also the subject of objections throughout the deposition.  Mr. Voilleque explained that he "would use the word 'knowledge' rather than your [plaintiffs' counsel's] term."  (Ex. A, Voilleque Dep. at 122:1-2) (*see also Id.* at 123:18-20 ("I would use the term 'knowledge' rather than 'expertise' as you've heard."))  He explained, "I do not go around with a sign that says I am an expert . . . I don't go around holding a sign proclaiming that I'm an expert in X, Y, Z, and D, and I wouldn't respond that way to a question."  (*Id.* at 109:7-17)

Instead, Mr. Voilleque made clear that he intends to offer factual and historical testimony.  He stated at his deposition that "[m]y understanding is that I'll be testifying about work that I did as part of the dose reconstruction for Rocky Flats."  (Ex. A, Voilleque Dep. at 53:20-22)  He repeated that "I explained to you already that it's my understanding that I'm going to be asked to testify about parts of the work in the -- in the dose reconstruction that -- that I

either performed or participated in." (*Id.* at 60:6-10) (*See also* Ex. A, Voilleque Dep. at 306-310) (explaining that the purpose of the his work was "to examine historical events at Rocky Flats," that he has personal knowledge of RAC's efforts in conducting this historical investigation, and that the RAC reports "reflect what -- what we did.  Not just I did.  What we did in Phase II of -- of the -- of the Rocky Flats health studies project.").

Plaintiffs' criticisms of Mr. Voilleque also make no sense in the context of their proffer of Dr. Selbin and Dr. Biggs' testimony.  Plaintiffs complain that Mr. Voilleque "has no *direct personal knowledge* about MUF or the 1957 fire at Rocky Flats," that he "never worked at Rocky Flats for Dow or Rockwell," and that "he was never physically present at the plant from 1952 to 1989." (Pls.' Supp. Br. at 3)  But like Mr. Voilleque, neither Dr. Biggs nor Dr. Selbin worked at Rocky Flats.  Both acquired their knowledge of Rocky Flats *after* the facility ceased operations.  Indeed, unlike Mr. Voilleque, Dr. Selbin has never even been to Rocky Flats.  And although Dr. Biggs may have traveled to Rocky Flats as part of his work in 1989, it would have only been after Rocky Flats had ceased operations.  Thus, Dr. Biggs and Dr. Selbin do not possess any greater "direct personal knowledge" about Rocky Flats than Mr. Voilleque.

Plaintiffs next argue that Mr. Voilleque cannot testify as a lay witness because his work was "based on his review of documents" and "some interviews." (Pls' Supp. Br. at 4) (*See* Ex. A, Voilleque Dep. at 188-189) (Mr. Voilleque also toured Rocky Flats in conjunction with his work and interviewed individuals)  But those are exactly the sources of information upon which Dr. Biggs and Dr. Selbin based their work.  Dr. Selbin never visited Rocky Flats and solely relied on hearsay statements and documents provided to him by others.  Dr. Biggs testified at his deposition that he conducted interviews with Rocky Flats personnel.  (*See* Ex. B, Biggs Dep. at 144–148), and toured Building 707 (*id.* at 147, 151–52).

In sum, the Court stated when permitting the testimony of Dr. Biggs, "[t]he essence of the distinction is, as I see it, is whether the testimony is based on facts, extrinsic or intrinsic to his work in this investigation, by the committee or the panel on which he serves." (11/7/05 Trial Tr. at 4208) Like Dr. Biggs and Dr. Selbin, Mr. Voilleque was not retained as an expert in this lawsuit and will testify about matters intrinsic to the work and conclusions that are expressed in the RAC reports that were created outside of, and separate to, this lawsuit. (*See* Ex. A, Voilleque Dep. at 310:11-23 (none of the RAC reports were prepared as part of this litigation and were prepared in advance of any time that he knew about potential involvement in this suit)). Under these circumstances, Mr. Voilleque should be permitted to testify as a lay witness.

## II. PLAINTIFFS CANNOT COMPLAIN ABOUT THE TIMING OF DEFENDANTS' DISCLOSURE OF MR. VOILLEQUE AS A TRIAL WITNESS.

Plaintiffs nowhere explain to the Court how they have been prejudiced by the timing of the disclosure of Mr. Voilleque as a trial witness. Nor can they in light of their own conduct in this case. Plaintiffs first disclosed that they would call Dr. Selbin just days before trial, and less than two weeks before the start of their case-in-chief. (*See, e.g.,* Pls' Witness List, filed September 29, 2005) In marked contrast, Defendants identified Mr. Voilleque *as a rebuttal witness* as soon as it became apparent that Mr. Voilleque's testimony was needed to rebut allegations made during Plaintiffs' case-in-chief. After admitting the testimony of Dr. Biggs over objection, the Court instructed Defendants to file a motion regarding rebuttal witnesses. (11/9/05 Trial Tr. at 4773–74) On November 11, 2005, Defendants identified Mr. Voilleque as a rebuttal witness. (*See* Ex. C, Defs.' Stmt Concerning Its Trial Witness List, 11/11/05) On November 14, 2005, the Court informed the Parties that it had "**granted a motion from the defense to go ahead and add additional witnesses based upon testimony you had as rebuttal witnesses**, and I will do that if good cause is shown." (11/14/05 Trial Tr. at 5294–95) (emphasis added).

5

### III. PLAINTIFFS HAD A FULL AND FAIR OPPORTUNITY TO DEPOSE MR. VOILLEQUE ON THE SUBJECTS OF HIS TRIAL TESTIMONY.

Contrary to Plaintiffs' claims, Plaintiffs spent a majority of the over seven (7) hour deposition questioning Mr. Voilleque extensively about the two proposed subjects of his trial testimony -- MUF and the 1957 fire. (*See, e.g.,* Ex. A, Voilleque Dep. at 135-184, 193-200, 266-276 (extensive examination on MUF-related topics, including, but not limited to, the 1964 Rogers & Zodtner Report on Material Unaccounted For (PX 10), RAC's work relating to MUF and mass balance accounting, RAC's review of classified MUF and MUF-related documents, and MUF as it relates to material balance areas within the plant); *see also id*. at 67–68, 86–89, 165–168, 222–225, 239–249, 256–264 (extensive examination regarding the 1957 fire, including, but not limited to the factual circumstances surrounding authorship of the 1957 fire report, Mr. Voilleque's review of classified documents related to the 1957 fire; RAC's attempts to address unmonitored releases; and RAC's consideration of factors in calculating the 1957 fire source term))[2]  Plaintiffs also have known that Mr. Voilleque would testify about MUF for over a month.  (*See, e.g.,* 11/21/05 Trial Tr. at 6130)  Thus, Plaintiffs have had a full and fair opportunity to examine Mr. Voilleque regarding the topics of his trial testimony.

Dated:  December 23, 2005                                         Respectfully submitted,


                                                                  /s/ John E. Tangren_____
                                                                  One of the Attorneys for the Defendants
                                                                  David M. Bernick
                                                                  Douglas J. Kurtenbach
                                                                  Ellen Therese Ahern
                                                                  Mark J. Nomellini

---

[2] Furthermore, Mr. Voilleque informed Plaintiffs at the outset of the deposition of the specific topics and RAC reports that he discussed at length with defense counsel in preparation for his deposition. (Ex. A, Voilleque Dep. at 59:7-20)

6

John E. Tangren
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636
Phone:  312-861-2000
Fax:     312-861-2200

Joseph J. Bronesky
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Phone:  303-297-2900
Fax:     303-298-0940

Attorneys for ROCKWELL
INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY

7

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 23, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses for the following:

Peter B. Nordberg, Esq.
c/o Karen M. Markert
Apartments at Denver Place, Apt. 2812
1880 Arapahoe Street
Denver, CO 80202
pnordberg@bm.net
kmarkert@bm.net

Gary B. Blum, Esq.
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206
blumg@s-d.com

                                            /s/ Courtney Biggins
                                            Courtney Biggins (legal assistant)