**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, *et al.*,

        Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

        Defendants.

_____

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR MISTRIAL OR, IN THE ALTERNATIVE, DEFENDANTS' PROPOSED INSTRUCTIONS**
_____

On December 16, 2005, Plaintiffs' counsel again disregarded the Court's prior rulings by expressly inviting the jury (i) to find that the DOE, a non-party, abused its classification powers and, (ii) based on this premise, to draw the inference that the classified MUF documents are unfavorable to Defendants. (Ex. B, Excerpts of Trial Testimony (12/16/05 Trial Tr.) at 8573-8574) Defendants immediately moved for a mistrial and now offer this brief in further support of their oral motion. (*Id.* at 8578-8579) Plaintiffs' systematic violation of the Court's rulings as to classification forecloses any likelihood that Defendants can be judged fairly by this jury based on ***their actions***, as opposed to the alleged and unproven conduct of third parties. Therefore, this Court should grant Defendants' motion for a mistrial, or, in the alternative, strike the last four paragraphs of Instruction 1.9 and read to the jury the proposed instruction attached as Exhibit A.

**I.      THE COURT HAS REPEATEDLY HELD THAT PLAINTIFFS CANNOT RAISE THE ALLEGED IMPROPER CLASSIFICATION OF DOCUMENTS.**

The Court has made clear that the alleged improper classification of documents is off-limits:  "***The improper classification of documents is not coming in.  That's just it.***"  (11/14/05 Trial Tr. at 5230) (emphasis added)  In equally unambiguous terms, the Court explained to Plaintiffs on a number of occasions what they may not seek to place before the jury:

■        Plaintiffs "cannot go into the classification process itself as to whether it was done in good faith or not because that's beyond the purview of this Court . . . Whatever other motivations they [DOE] have, I can't go into.  That is -- I don't sit as a court of review as to the -- as to how classifications are made."  (11/14/05 Trial Tr. at 5081-82)

■        "It isn't what the defense does, how much they have paid, what the Department of Energy does, how many people they have working on this or not working on it, when they make their decision, none of that matters.  If you have specific evidence that you have tried to bring forth and you have been frustrated in your effort by the classification process, that is admissible, that and that alone."  (11/10/05 Trial Tr. at 4886–87)

■        "What you have are comments that people are talking about it's bad for PR, it's bad for pending litigation, bad for this, bad for that, but you still have a classification decision that's made, and the Congress says it's none of my business."  (11/14/05 Trial Tr. at 5050–51)

■        "Whether or not they had bad faith motivations or otherwise, whether it's political, philosophical or religious doesn't matter.  What matters is the test that I set out, and I am very confident in that test."  (11/14/05 Trial Tr. at 5054)

■        "Now, whether they - whether they refused to give you information, the Department of Energy did, they refused to declassify MUF information on the grounds of national security, is not something I'm going to go into."  (11/14/05 Trial Tr. at 5081–82)

■        "I am not going to get into the wisdom of what's in the security interests of the United States.  That's simply not a matter for me to decide."  (11/10/05 Trial Tr. at 5006)

## II.   PLAINTIFFS HAVE DELIBERATELY AND SYSTEMATICALLY ATTEMPTED TO UNDERMINE THIS COURT'S RULINGS ON CLASSIFICATION.

Since the very start of trial and culminating in the most recent mini-summation, Plaintiffs have systematically ignored the Court's rulings.  At the very outset of this trial, Plaintiffs suggested to the jury that "[t]he truth has been whited out by the misuse of the classification power of the DOE . . . ."  (10/11/05 Trial Tr. at 600)  They accused the DOE of using "its national security, top secret rights, to conceal from you and from this court massive amounts of evidence."  (10/11/05 Trial Tr. at 492-493)  Plaintiffs invited the jury to confuse and conflate the actions of the DOE with those of Defendants:  "The defendants and the DOE used the national security power to keep them [MUF documents] secret."  (10/11/05 Trial Tr. at 597)

Plaintiffs' efforts to undermine the Court's classification rulings continue.  For example, Plaintiffs recently sought to admit unauthenticated photos purporting to depict the number and height of boxes of redacted documents relating to MUF (P-1489), as well as ten boxes of unauthenticated documents purportedly containing more redacted information (P-1494).  None of these proposed exhibits revealed the specific content of the information Plaintiffs were allegedly unable to obtain, which is the only information that is arguably admissible.  (11/10/05 Trial Tr. at 4886-4887 ("If you have *specific evidence* that you tried to bring forth and you have been frustrated in your effort by the classification process, that is admissible, that and that alone.") (emphasis added)  Instead, Plaintiffs sought to show the jury these materials for their theatrical effect -- not their probative value.  (*See* Ex. C, Defs.' Resp to Pls' Second Mot. to Admit Documents)  These exhibits were properly excluded.

3

Plaintiffs have also tried to introduce testimony and documents that squarely implicate alleged improper classification. *See*, *e.g.*, Ex. D, Order (sustaining Defendants' objections to proposed designations from Mark Silverman's deposition relating to alleged improper classification of documents); 11/14/05 Trial Tr. at 5148–49 (seeking to ask Kaufman if he was removed for cooperating with Plaintiffs and whether the DOE discussed the impact of producing MUF documents on DOE and contractor interests); 11/15/05 Trial Tr. at 5300 (prohibiting Plaintiffs' efforts to use an exhibit to suggest that the DOE refused to declassify documents for fear of embarrassment); 11/15/05 Trial Tr. at 5360 (prohibiting references to how long documents had remained classified); 11/16/05 Trial Tr. at 5514 (excluding an exhibit proffered for the purpose of demonstrating improper classification). Plaintiffs also recently read verbatim to the jury P-548/P-652, a document for which Plaintiffs have ***never*** been able to establish through a witness or otherwise (a) authorship, (b) date of creation, (c) distribution/use, if any, and (d) status as a draft or final.  (11/22/05 Trial Tr. at 6228-6232)[1]

---

[1]  The Court admitted this exhibit over Defendants' objections because it believed (a) the exhibit was "highly probative of other matters other than declassification" and (b) that it had not previously declined to admit the document: "I had to comb through the transcripts to find that out because I thought inadvertently I may have, but I didn't."  (11/22/05 Trial Tr. at 6231) Both premises are incorrect.  Plaintiffs used P-548/P-652 as part of their proffer for Rodney Hoffman, which this Court rejected.   (11/10/05 Trial Tr. at 4969-4973 (Plaintiffs argued that "those purposes [in P-548/P-652] are flatly improper under the national security statutes," and represented to the Court that this document is "***being introduced for proof of the improper purpose.***") (emphasis added)  The Court also previously rejected P-548/P-652.  For example, at the conclusion of the Hoffman proffer, Plaintiffs' counsel pleaded "I think that Your Honor should at least allow us to put in these documents . . . ."  The Court responded, "[b]ecause you have asked me to, I will look at them, but frankly, I have yet to hear an argument as to why the motives of anyone in this case are relevant."  (11/10/05 Trial Tr. at 5049)  The Court stood by its
(Continued…)

Most recently, Plaintiffs' counsel inflamed the jury at the latest mini-summation. Plaintiffs argued that DOE had not conducted the classification process in good faith, but rather, had improperly declassified documents selectively to benefit RAC and to frustrate Plaintiffs:

> This document—RAC requested, RAC requested in 1994 that this document be declassified.  They requested in 1994 that it be declassified.  And guess what?  Like Jiminy Cricket, at their request DOE declassified it. . . . What had happened when the plaintiffs tried to get the notes? . . . If you would just take a look here, we tried to get them for two and a half years.  As you heard in court, they were held in contempt.  We then tried to get them for another seven or eight months.  Plaintiffs' expert, Budnitz, went down there with our Q-cleared counsel, asked for 9,000 specific documents.  We ended up getting those and most of the other 1.3 million.  As Attorney Kaufman—U.S. Attorney Kaufman testified in our case, 75 percent or more of them were whited out, redacted and useless.

(12/16/05 Trial Tr. at 8572–73)  Plaintiffs' counsel went on to suggest that classified information was withheld because it was unfavorable to Defendants, and urged the jury to draw such a negative inference based on Instruction 1.9.  (12/16/05 Trial Tr. at 8574–75)

Plaintiffs' statements to the jury are not only false (as discussed below), they are a clear violation of the Court's rulings.  Plaintiffs also have now put into issue the knowledge of their own Q-cleared counsel by claiming, "*[w]e know* the whited-out redacted evidence cannot be favorable to the defense side of the case."  (12/16/95 Trial Tr. at 8574–75) (emphasis added) Yet, because the challenged information is classified under national security laws, Defendants

---

rulings and kept these exhibits out.  (11/14/05 Trial Tr. at 5224 ("[Y]ou had asked me to review the exhibits that you had wanted to offer through Mr. Hoffman over the weekend.  I did that.  And I'm adhering to my previous rulings with the exception of Plaintiffs' Exhibit 170 . . . ."))

cannot rebut fully the baseless and improper claims of Plaintiffs' counsel.   Under these
circumstances, the prejudice to Defendants is substantial and warrants a mistrial.[2]

## III.   THERE IS NO EVIDENCE THAT PLAINTIFFS DID NOT HAVE ACCESS TO INFORMATION BECAUSE OF ALLEGED IMPROPER CLASSIFICATION.

After fifteen years of litigation and almost three months of trial, Plaintiffs have failed to
establish that MUF-related documents were improperly classified and that plaintiffs were
wrongly denied any specific evidence in this case.  (11/10/05 Trial Tr. at 5005-5006)

*First*, at the threshold, it is undisputed that Plaintiffs have failed to establish that
Defendants and/or their counsel were involved in any alleged improper classification of MUF-
related documents in this case.  *See*, *e.g.*, Ex. E, Siebert Dep. at 287 ("As a general rule, I can
recall not once myself consulting with counsel about declassification actions.  I can't recall that
happening on this or any other issue related to declassifications."); *id.* at 425-426 (testifying that
he did not recall receiving any communications by Dow, its counsel, or anyone connected with
Dow in connection with this case); Ex. F, Kaufman Dep. at 62 (testifying that defense counsel
played no role in the declassification review of MUF documents).[3]

---

[2]  Plaintiffs' counsel have also systematically violated various other Court rulings by improperly
raising additional highly prejudicial matters before the jury.  *See*, *e.g.*, Ex. J (collecting examples
of Plaintiffs' counsel's statements improperly raising various issues before the jury, including
*Church* litigation, clean-up costs, worker safety, and the FBI warrant)

[3]  Plaintiffs offer only a handful of documents such as P-548/P-652 that are undisputedly not
related to the review of MUF documents undertaken in this litigation.  *See*, *e.g.*, 11/22/05 Trial
Tr. at 6247 (Court instructing the jury that what is being discussed in P-548/P-652 is
declassification as it "applies to other litigation that you [jury] do not have to decide.")

*Second*, Plaintiffs have failed to establish that DOE abused the classification process to withhold specific evidence from Plaintiffs.  Plaintiffs cannot rely on the Contempt Order because the Court did not find that the DOE improperly declassified documents.  The Contempt Order was prompted by this Court's findings that DOE had not commenced its classification review of various categories of documents according to the timetable set forth in the Stipulated Order, and that DOE had not produced certain documents, for which there was no indication that they were classified.  *Cook v. Rockwell Int'l Corp.*, 907 F. Supp., 1460, 1463-1467 (D. Colo. 1995)[4]  *See*, *e.g.*, 11/14/05 Trial Tr. at 5190-5191 (Kaufman testifying that there has never been a finding in connection with the Contempt Order that materials had been improperly classified to conceal information)

*Third*, the record evidence overwhelmingly establishes that Plaintiffs had full and fair access to the requested classified information.  As Mr. Kaufman testified, DOE undertook immediate and extensive efforts to comply with the Contempt Order.  *See*, *e.g.*, 11/14/05 Trial Tr. at 5191, 5193 (discussing DOE's efforts to purge contempt).  Notably, the Court found that Plaintiffs "have not produced any evidence of bad faith concerning the manner in which DOE has conducted the declassification process to warrant an investigation into the process at this time." *Cook v. Rockwell Int'l Corp.,* 935 F. Supp. 1452, 1470 (D. Colo. 1996) ("*Cook VII*")

---

[4]   *See also* 11/14/05 Trial Tr. at 5182 (Kaufman testifying that at the time of the Stipulated Order, DOE had not anticipated that a substantial volume of documents would need to be reviewed for classified information))

*Fourth*, Plaintiffs' Q-cleared counsel and their experts had ample opportunity review the MUF-related documents.  Plaintiffs' counsel, such as David Sorenson, Jonathan Auerbach, and Eric Cramer, as well as their experts such as Robert Budnitz, not only had Q-clearances to review classified MUF information in unredacted form, they did so.  *See*, *e.g.*, 11/14/05 Trial Tr. at 5180, 5188 (Plaintiffs' counsel had Q-clearances and were invited to come to Rocky Flats to look at classified MUF documents over ten (10) years ago); Ex. G, Budnitz Dep. at 51; 54 (Budnitz went with Plaintiffs' counsel to review classified MUF documents on at least two occasions); 10/27/05 Trial Tr. at 3002-3003 (same).  Significantly, Budnitz testified that he was able to request and review "broad categories of reports" and other documents.  (Ex. G, Budnitz Dep. at 48, 51-52)   Budnitz testified that DOE "did not hold back, as far as I know, any documents that I requested to look at at that time . . . ."  (Ex. G, Budnitz Dep. at 52-53)

*Fifth*, Plaintiffs have no evidence to support their unfounded claim that DOE treated RAC differently than Plaintiffs.  In fact, the evidence establishes that both Plaintiffs and RAC had to follow the same procedures to review classified materials and to obtain declassified information.  *Compare* 10/27/05 Trial Tr. at 3006 (Budnitz describing the procedures that he was asked to follow) *with* 12/15/05 Trial Tr. at 8208-8211 (Till testifying that "It's very important to understand there are very strict rules regarding classified information and the process that one goes through to get that information declassified.  We had to follow those rules just like anybody else.").  *See also* 11/14/05 Trial Tr. at 5200-5201 (Kaufman testifying "same rules" applied to Plaintiffs' lawyers).  In sum, there is no evidence to support Plaintiffs' complaint that specific documents were declassified "like Jiminy Cricket," as they put it, for RAC.

*Sixth*, Plaintiffs' suggestion that DOE abused the classification process by giving RAC "preferential treatment" is also irrelevant because the materials that RAC reviewed and relied on were all made publicly available. (*See*, *e.g.*, 12/15/05 Trial Tr. at 8210-8211 (Till testifying that "any member of the public then who wants a copy of that record could get it during the course of the study, and then in the end, all of the records -- previously classified records, unclassified records, everything, was put in a couple of reading rooms here in Denver, in Westminster, I believe, so that members of the public could have access to them.")) Thus, Plaintiffs' complaints of alleged preferential treatment do not bear at all on the question of what *specific evidence* Plaintiffs were unable to obtain as of the time of trial because of DOE's classification decisions. (11/10/05 Trial Tr. at 4886-4887; 11/14/05 Trial Tr. at 5081-5082)

*Seventh*, Plaintiffs misstated Mr. Kaufman's testimony to the jury when they claimed that he "testified in our case, 75 percent or more of them [the over 1.3 million pages of MUF-related documents Plaintiffs received] were whited out, redacted and useless." (12/16/05 Trial Tr. at 8573) As Mr. Kaufman testified, the requested MUF-related documents were *irrelevant*. *See*, *e.g.*, 11/14/05 Trial Tr. at 5097, 5188 (DOE invited Plaintiffs to look at the MUF documents so "they could see for themselves that most of the information had nothing to do with the lawsuit")

Nor is it surprising that much of the classified MUF-related information is irrelevant to this property case. As William Weston testified, the process of tracking plutonium was "very paper intensive, a lot of paper with this." (12/13/05 Trial Tr. at 7771-7772) Much of this MUF-related information will reflect classified information (such as the mass of a nuclear weapons component and the design of nuclear weapons) that have no bearing on this case. (12/13/05 Trial

Tr. at 7771)  Dr. Budnitz agreed that "a lot of it [MUF documents] was numerical work in which people were weighing material to try to figure out how much they had . . . ."  (Trial Tr. at 3006)  Notably, Budnitz also testified that the MUF documents he reviewed reflected weighing of atomic bomb parts and included "little drawings" of atomic bomb parts which he understood was "sensitive information."  (Trial Tr. at 3006; *see also* Ex. G, Budnitz Dep. at 53:1-9 (he felt some of the classified MUF-related documents he reviewed would not be appropriate to release))

*Finally,* Plaintiffs' own actions belie their claim that "we know" classified MUF-related information would be unfavorable to Defendants.  Significantly, Plaintiffs told DOE to stop declassification review of 14 of the 15 categories of MUF-related documents.  (Ex. H, 5/10/96 Nordberg Letter)  In the more than nine years that followed, Plaintiffs (including their Q-cleared counsel and experts) never reinstated the request.  Nor have Plaintiffs pursued *any* administrative appeal remedies, as and to the extent permitted by federal law.  (*See, e.g.,* Ex. I, (P-1397) (Executive Order 12958), at 14-15, 21-22)  Plaintiffs have never identified what specific MUF-related documents they believe they need and asked the Court to review these specific documents *in camera*.[5]  As this Court stated specifically in response to Plaintiffs' complaints that DOE redacted the MUF-related information in bad faith, "it seems to me that what you have just outlined is a proper remedy for coming back *in the pretrial stage* with another motion for

---

[5]   In the over fifteen years of this litigation, Plaintiffs' self-proclaimed "MUF expert," Dr. Thomas Cochran, never once renewed his Q-clearance (despite the fact that DOE made a number of Q-clearances available to Plaintiffs and their experts) so that he could personally review in unredacted form any and all MUF information that Plaintiffs claim is critical to their case.

contempt and that didn't happen.  And I didn't have that.  What we have now is another -- is a

jury, and the jury has to look at evidence."  (11/10/05 Trial Tr. at 5054) (emphasis added)

## IV.   PLAINTIFFS' CONDUCT SEVERELY PREJUDICES DEFENDANTS AND WARRANTS A MISTRIAL, OR IN THE ALTERNATIVE, AN INSTRUCTION.

Plaintiffs' repeated references to DOE's alleged abuse of the classification process have

irreparably contaminated this jury trial.  It is now impossible to ensure that Defendants will

receive a fair and impartial trial.  Defendants cannot rebut Plaintiffs' baseless charges with a full

and frank discussion of the classified information at issue because that would violate federal law.

For the same reason, Defendants cannot fully defend themselves against the improper and one-

sided statements by Plaintiffs' lawyers that they "know" the classified MUF-related information

would be unfavorable to Defendants.  Under these circumstances, a mistrial should be declared.[6]

In the alternative, Defendants propose the attached instruction in the hopes that it may

partially cure the severe prejudice caused by the statements of Plaintiffs' counsel.  The jury

should be instructed that the merits of classification decisions are not at issue in this case and that

there is no evidence that any classification decisions in this case were made improperly, or that

Defendants and their counsel were even involved.  Importantly, given Plaintiffs' multiple

---

[6]  *See United States v. Novak*, 918 F.2d 107, 108 (10th Cir. 1990) (mistrial warranted by counsel's "failure to substantiate claims made during opening arguments"); *United States v. Westbo*, 576 F.2d 285, 292 (10th Cir. 1978) ("hold[ing] that the trial court abused its discretion in not declaring a mistrial" where counsel "violated the clear intent of the court's ruling" thus denying the defendant "a fair opportunity to defend"); *Maestas v. United States*, 341 F.2d 493, 496 (10th Cir. 1965) ("[W]here the character of the testimony is such that it will create so strong an impression on the minds of the jurors that they will be unable to disregard it in their consideration of the case, although admonished to do so, a mistrial should be ordered.").

11

improper statements, there can no longer be any confidence that an inference ultimately drawn by the jury against Defendants as to the unavailability of classified information would not rest, either in whole or in part, on the jury's improper speculation that the DOE failed to declassify the unavailable information in good faith.   Accordingly, the jury should no longer be permitted to draw *any inference* against the Defendants based on the unavailability of classified documents.

Dated:  December 28, 2005

Respectfully submitted,


s/ John E. Tangren_____
One of the Attorneys for the Defendants
David M. Bernick
Douglas J. Kurtenbach
Ellen Therese Ahern
Mark J. Nomellini
John E. Tangren
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636
Phone:  312-861-2000
Fax:     312-861-2200

Joseph J. Bronesky
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Phone: 303-297-2900
Fax:     303-298-0940

Attorneys for ROCKWELL
INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses for the following:

Peter B. Nordberg, Esq.
c/o Karen M. Markert
Apartments at Denver Place, Apt. 2812
1880 Arapahoe Street
Denver, CO 80202
pnordberg@bm.net
kmarkert@bm.net

Gary B. Blum, Esq.
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206
blumg@s-d.com

s/ Adrienne Reynolds_____
Adrienne Reynolds (legal assistant)