Richard Kaufman - Cross

1  Q   No such finding in the order?

2  A   No.

3  Q   Has there ever been a finding that you're aware of that

4  classification has been misused; that is, that it's not been

5  properly done?  Let me be very, very clear.  Has there ever

6  been a finding that the documents that have stayed classified

7  should not have stayed classified, regardless of whatever

8  motive, the documents should have been declassified?

9  A   No.

10  Q   Okay.  Let's move forward.  You have a contempt order.

11  It's a -- would it be fair to say that was a very significant

12  event for the Department of Energy and, for that matter, for

13  the U.S. attorney's office?

14  A   Yes.

15  Q   Not a happy day?

16  A   No.  No.  Not at all.

17  Q   Following the contempt order, were there or were there not

18  steps that were undertaken to purge the contempt?

19  A   Yes.

20  Q   Could you just explain to the jury what it means to purge

21  contempt.  That's not something that kind of leaps to your mind

22  as what you do with contempt.

23  A   It means the Court has found somebody in contempt for this

24  case for not producing certain sets of documents.  So you

25  produce them.  In other words, you take yourself out of

1  to Philadelphia to meet with plaintiffs' counsel.

2  Q   Okay.  Now, I want to bring us into this whole question of

3  the 11,000 pages, but I'd like to kind of go through it a

4  little bit and then come back to it.  Would it be fair to say,

5  again, as reflected on 1385, that the DOE or that your office

6  learned that MUF-related documents would well exceed 11,000

7  pages, that subsequently an estimate of approximately 670,000

8  pages, that estimate was disclosed, and then immediately

9  thereafter, the DOE tripled to 82 the staff dedicated to

10 declassification and by that time 14,000 pages had been

11 declassified?

12 A   Yes.

13 Q   So basically it was discovered that the volume of documents

14 was not just 11,000 pages; it was much, much more.  And the

15 DOE, well-recognizing that it was already in trouble with the

16 Court, dramatically increased the level of staffing necessary

17 to get the job done?

18 A   Yes.  Yes.

19 Q   And then I think probably within a month or so, you're

20 gone.

21 A   Yeah.  I was gone by the end of February '96.

22 Q   As of the time that you left, I know that things were very,

23 very busy.  But was it your assessment at the time of this

24 report to the Court that the steps necessary to complete the

25 job were, in fact, being taken; they would take more time, but

1  bound by the national securities laws?

2  A    Sure.  Yes.

3  Q    Did you feel that you had any latitude whatsoever, any

4  discretion whatsoever when it came to complying with those

5  laws?

6  A    None.

7  Q    Did you feel that the DOE had any discretion or latitude

8  when it came to complying with those laws?

9  A    None.

10  Q    Now, the jury has heard testimony about the difficulty of

11  reviewing classified documents.  And in fact, counsel for

12  plaintiffs has brought out some of the limitations.  For

13  example, he can't walk into court with classified documents or

14  share classified information in court.

15       But it's also been pointed out that if you even want

16  to go look at a classified document, you got to get your

17  clearance, you got to show up in a room, if you take notes, you

18  can't leave with the notes, they got to be reviewed, you can't

19  take copies and all the rest.

20       Is that basically consistent with your own

21  understanding of the procedures?

22  A    Yes.

23  Q    Were those same rules -- are those rules any different

24  insofar as they were applied to the plaintiffs' lawyers in this

25  case; that is, did they get a different version of the rules

1  applied to them?

2  A   No.   Same rules.

3  Q   It's also been said that -- it was pointed out that very

4  substantial volumes of these MUF-related documents ended up

5  getting whited out.  Did you have any information that said

6  that the classification process that was followed or

7  declassification process that was followed -- let me withdraw

8  that and put it slightly differently.

9          Are you in a position to tell us whether the

10  declass -- the sanitization that took place of those documents

11  in any fashion failed to comply with the national securities

12  laws?

13  A   No.

14  Q   You leave in the spring of 1996.  A lot of material has

15  been redacted out or sanitized out of those documents.  A lot

16  of proceedings have taken place before the Court.  We're now

17  fast-forward to almost ten years later.

18          Are you aware of any efforts that have been undertaken

19  by the plaintiffs in this case to make a more focused request

20  for classified information to be declassified for use in this

21  case?

22  A   No.

23  Q   Let me put into perspective what you've told us with

24  questions.  You said that literally millions of pages of

25  historical documents were copied.  That would have covered the

1          THE COURT:  I think I already ruled, told you that,

2     first of all -- you had asked me to review the exhibits that

3     you had wanted to offer through Mr. Hoffman over the weekend.

4     I did that.  And I'm adhering to my previous rulings with the

5     exception of Plaintiffs' Exhibit 170, which I think you can

6     admit through the testimony of Dr. Cochran.  And it's no need

7     to call Mr. Hoffman here.  And that's the 1964 study of MUF

8     that -- the deleted version.

9          MR. DAVIDOFF:  I believe that's Plaintiffs' 10, the

10    Zotner-Rogers study, Your Honor, is Plaintiffs' Exhibit 10.

11    And that was the document that was specifically discussed in

12    Dr. Cochran's MUF report.

13         THE COURT:  I'm talking about the one that you had

14    with Mr. Hoffman you asked me to review.

15         MR. DAVIDOFF:  Yes, Your Honor.

16         THE COURT:  And that was numbered Plaintiffs' 170.

17         MR. DAVIDOFF:  Okay.

18         THE COURT:  So, I don't know, look it up and see.

19         MR. SORENSEN:  It may be that the other number was

20    from the contempt hearing.  Some of these documents have

21    multiple numbers.

22         THE COURT:  That could be.  Could be.  Why would

23    this -- why would this be not confused more than it already is.

24         MR. BERNICK:  Let's spend more time talking about it.

25         THE COURT:  The other thing is defendants' objection

Richard Kaufman - Recross                    5230

1          And so, you know, I don't -- I don't see why this has

2     to be aired before the jury --

3          THE COURT:   I don't know what's to be aired before the

4     jury.

5          MR. BERNICK:   It's real simple.   It's a report that

6     says documents were improperly classified.   He has exhibits

7     that say the same thing.

8          THE COURT:   I've ruled that that part can't come in.

9     And his report is not admissible.   The improper classification

10    of documents is not coming in.   That's just it.   I don't want

11    to -- well, I don't want to visit that again.

12          All right.

13          We'll be in recess.

14     (Recess at 2:42 p.m.)

15     (Reconvened at 2:57 p.m.)

16          THE COURT:   Thank you.   And be seated, please.

17     (Jury in at 2:58 p.m.)

18          THE COURT:   Thank you.   And be seated.

19          MR. DAVIDOFF:   Plaintiffs call Dr. Tom Cochran.

20          THE COURT:   Come forward, please, Doctor.

21          THE COURTROOM DEPUTY:   If you'd just come right up

22     here, please.

23          Your attention, please.

24          **(THOMAS COCHRAN, PLAINTIFFS' WITNESS, SWORN)**

25          THE COURTROOM DEPUTY:   Please be seated.

5297

1          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLORADO
2

3    Civil Action No. 90-cv-00181-JLK

4    MERILYN COOK, et al.,

5        Plaintiffs,

6    vs.

7    ROCKWELL INTERNATIONAL CORPORATION, and THE DOW CHEMICAL
     COMPANY,
8
         Defendants.
9    _____

10                   REPORTER'S TRANSCRIPT
                       Trial to Jury
11                      Volume 39
     _____
12

13          Proceedings before the HONORABLE JOHN L. KANE, JR.,

14   Senior Judge, United States District Court for the District of

15   Colorado, commencing at 9:00 a.m., on the 15th day of November,

16   2005, in Courtroom A802, United States Courthouse, Denver,

17   Colorado.

18

19

20

21

22

23

24   Proceeding Reported by Mechanical Stenography, Transcription
         Produced via Computer by Kara Spitler, RMR, CRR,
25       901 19th Street, Denver, CO, 80294, (303) 623-3080

5300

1        MR. BERNICK:  We would object -- I thought we were
2  going to have problems with the document because the document
3  on its face, the text of the document, basically deals with
4  kind of an injunction for people to be more careful about
5  materials accounting.

6        But if it's going to be used for the purpose for which
7  apparently it's being proffered, per Mr. Davidoff's remarks, we
8  most certainly would object to it because it goes, then, again,
9  to the idea of there being some kind of conspiracy or effort to
10  use classification in order to maintain as secret documents
11  that would otherwise be embarrassing to the Department of
12  Energy.

13        So if that's the purpose of the proffer, we would --
14  most certainly would object to the document being used for that
15  purpose.

16        We have no objection to the text of the document
17  coming in, so long as it is not during the course of the trial
18  used to advance the proposition that classification
19  designations were misused by the Department to maintain as
20  secret information that would be of consequence to litigation
21  or PR.

22        MR. DAVIDOFF:  Well, if that's a limitation that Your
23  Honor is -- wants to accept, I'll abide by that.

24        THE COURT:  All right.

25        Let's do it this way.

1   all throughout this litigation and throughout this trial that

2   in the 19 -- early 1970s there was tremendous publicity about

3   this plant and all the facts about this plant and the dangers

4   posed by this plant were, quote, out there in the public arena.

5   And they've even introduced media articles from the early 1970s

6   which purport to show that.  And what I am trying to show,

7   among other things, and leaving aside the propriety or

8   impropriety of classification, is this information was not out

9   there.  It was only in the -- in the --

10          THE COURT:  Okay.  All right.  I understand what

11  you're saying.

12          The objection is sustained.  You may ask a question,

13  when did this become known to the public and leave away the

14  classification.  Just stay away from that and ask in terms of

15  when did it become known to the public.  That's a fair

16  rebuttal.

17          MR. DAVIDOFF:  Your Honor, can I just -- this won't

18  take but a second.

19          There's nothing much to say.  Just when we break for

20  lunch at twelve o'clock, I can put my other two grounds on the

21  record.  I didn't want to take the time of the jury in the

22  court to do that now.

23          THE COURT:  All right.  All right.  All right.

24      (In open court.)

25  BY MR. DAVIDOFF:

5505

```
 1                  IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLORADO
 2
    Civil Action No. 90-cv-00181-JLK
 3
    MERILYN COOK, et al.,
 4
         Plaintiffs,
 5
    vs.
 6
    ROCKWELL INTERNATIONAL CORPORATION, and THE DOW CHEMICAL
 7  COMPANY,

 8       Defendants.

 9  _____

10                      REPORTER'S TRANSCRIPT
                            Trial to Jury
11                           Volume 41

12  _____

13            Proceedings before the HONORABLE JOHN L. KANE, JR.,

14  Senior Judge, United States District Court for the District of

15  Colorado, commencing at 8:57 a.m., on the 16th day of November,

16  2005, in Courtroom A802, United States Courthouse, Denver,

17  Colorado.

18

19

20

21

22

23

24  Proceeding Reported by Mechanical Stenography, Transcription
        Produced via Computer by Kara Spitler, RMR, CRR,
25       901 19th Street, Denver, CO, 80294, (303) 623-3080
```

5514

1  the 1990s. And this is just a repeated effort to go back into

2  the same things that Your Honor has ruled off limits.

3           And, again, we're sitting here talking about this.

4  This has been put to Your Honor at least 10 or 15 different

5  times.

6           MR. DAVIDOFF: Your Honor, even though I don't agree

7  that the history of declassification is irrelevant, this

8  document bears upon what became available in the '90s because

9  even in the '90s, significant, significant parts of this

10 document, when it was finally declassified, were still

11 unavailable to Dr. Cochran --

12          MR. BERNICK: The problem with that -- but that's not

13 the purpose for which it's proffered.

14          MR. DAVIDOFF: I'm not going to read paragraphs 9 and

15 10 that counsel referred to. That's really not what I'm

16 concerned about, paragraphs 9 and 10 on that page. I'm

17 concerned about the fact that there are huge amounts of

18 material, and this is declassified in the 1990s, that are still

19 unavailable. I won't characterize why they're unavailable. I

20 disagree respectfully with Your Honor's rulings, but I'm trying

21 to respect them. But this is a factual document that I think I

22 have a right to use, we have a right to use.

23          THE COURT: You can use appendix 3. The other ruling

24 stands other than that.

25          Let's bring in the jury, please.

6225

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, et al.,

    Plaintiffs,

vs.

ROCKWELL INTERNATIONAL CORPORATION, and THE DOW CHEMICAL
COMPANY,

    Defendants.

_____

REPORTER'S TRANSCRIPT
Trial to Jury
Volume 48

_____

      Proceedings before the HONORABLE JOHN L. KANE, JR.,
Senior Judge, United States District Court for the District of
Colorado, commencing at 1:30 p.m., on the 22nd day of November,
2005, in Courtroom A802, United States Courthouse, Denver,
Colorado.

Proceeding Reported by Mechanical Stenography, Transcription
Produced via Computer by Kara Spitler, RMR, CRR,
901 19th Street, Denver, CO, 80294, (303) 623-3080

6228

1           MR. DAVIDOFF:  We have one long witness who is

2    Dr. Hunsperger and one shorter witness, who is Dr. Selbin, and

3    then some depositions, so I think you probably have to allow

4    three days, rather than two after the break, in order to get

5    that done.

6           MR. BERNICK:  Then at that point, the schedule that

7    we've just been crafting, I was going to give it to them this

8    afternoon, I'm not going to be able to do that.  There's a

9    limit to what we can do.  I gave them two days.  We should have

10   started Hunsperger this afternoon.  And their case is God knows

11   how prolonged, but if we're not going to start till the 8th,

12   that's fine, but we're going to have to redo our schedule.

13          MR. DAVIDOFF:  I'm not going to respond.

14          THE COURT:  All right.  Fine.

15          I'm ready to make those rulings that you wanted, and

16   then we'll bring in the jury and complete.

17          So with regard to DX37, DX38, DX379, the objection is

18   sustained.  The defendants can offer specific pages of the

19   ChemRisk reports to which these articles refer, but not these

20   articles themselves.

21          With regard to DX1228, DX1244, the exhibits are

22   admitted as demonstrative exhibits.  It's okay to reoffer them

23   later if you have an appropriate foundation as actual summaries

24   of data.

25          (Exhibit 1228 admitted.)

6229

1      (Exhibit 1244 admitted.)

2          THE COURT:  The DX122 -- 1222, excuse me, through

3  1226, the reconsideration has been given.  The objection is

4  sustained, again.

5          THE COURT:  The exhibit which is the same, essentially

6  P48 and P652, the exhibit is admitted with paragraph 10

7  redacted --

8      (Exhibit 48 admitted.)

9      (Exhibit 652 admitted.)

10         THE COURT:  -- as to the multimillion dollar phrase.

11         MR. DAVIDOFF:  So the words -- just so I can be clear,

12 Your Honor, the words multimillion dollars are redacted out

13 before litigation.

14         THE COURT:  Yes.

15         MR. BERNICK:  Your Honor, I know you've ruled, you've

16 ruled five different times that it doesn't come in and now it's

17 coming in.

18         THE COURT:  No, I haven't.  I really haven't.  I spent

19 a lot of time looking over that.  I never did rule that way.  I

20 just didn't.  And I can give you specifics, but I want to get

21 moving right now.

22         MR. BERNICK:  That would be appreciated because right

23 now, what you just determined now imports into this case

24 motivations for classification, because that's what

25 paragraphs 8 and 10 deal with specifically is motivations for

6230

1  classification.  You've already told the jury that the

2  motivations are irrelevant.  The documents are classified or

3  not, you adopted a test that said they're classified or not.

4  If we're now going to open the motivations for classification,

5  it completely changes what we're going to have to pursue in our

6  case.

7      We're now going to have to -- I'm just saying it

8  pursues -- frankly, we have Mr. Kaufman on the stand.  There

9  are matters that we could have pursued with Mr. Kaufman, we

10 didn't pursue them.  Your Honor, whatever you want to do is

11 fine, but we're now talking about redoing a significant part of

12 this trial and for one reason only which is the reproffer of

13 these documents under the idea that they're going to be read to

14 the jury.  I know you want to get the jury in here, but I would

15 strenuously suggest that the Court reconsider the

16 reconsideration, if it means the motivation is going to come

17 in.

18     The Church litigation, also, you instructed the jury

19 with regard to the Church litigation --

20     THE COURT:  I'm leaving out the multimillion dollar

21 litigation, and other than that, paragraph 10 can come in and

22 paragraph 8 stays in, and that's my ruling, and it's not

23 inconsistent with what I did.  But if you have to restructure

24 your case, do it.

25     MR. BERNICK:  Well, but could you explain so we can

6231

1    restructure the case.

2         THE COURT:  I think it's highly probative of other

3    matters other than declassification.  I think it's probative of

4    the degree of care.  And it goes right directly to that, the

5    degree of care that was being used.

6         MR. BERNICK:  By?

7         THE COURT:  By your clients.

8         MR. BERNICK:  For what?

9         THE COURT:  I'm not going to argue with you about it.

10   I've made my ruling, and I did not previously rule as you had

11   suggested.  I had to comb through the transcripts to find that

12   out because I thought inadvertently I may have, but I didn't.

13   And I'm allowing it to come in.

14        MR. BERNICK:  Your Honor, you're saying this.  Now, my

15   client, my client has failed to act or acted in a certain way,

16   and you're making that determination.  I think I'm entitled to

17   know the theory that drives that.  This is not -- I mean,

18   how --

19        THE COURT:  I'll give it to you later, I'm not going

20   to waste any time now.  I'll give it to you later, Mr. Bernick,

21   but not now.

22        MR. BERNICK:  Then I will say we are not prepared to

23   proceed with giving any order to our case.  I can't structure a

24   case when Your Honor has now articulated a completely different

25   theory, apparently, regarding classification.  I'm just not

6232

1   even --

2           THE COURT:  It doesn't even have anything to do with

3   that.

4           MR. BERNICK:  Your Honor can say that, I'm not

5   prepared to proceed.

6           THE COURT:  Well, that's your problem, not mine.  I've

7   done the best I can.  And I realize that that's not very good,

8   but it's the best I can do.

9           Bring in the jury, please.

10      (Jury in at 21:39 p.m.)

11          THE COURT:  Thank you very much.  Be seated, please.

12          MS. ROSELLE:  Good afternoon.

13          Would you turn, please, to page 31 in Exhibit P338.

14          I'm going to read the second full paragraph on

15  page 31.

16          Finally, we would emphasize that in this report there

17  is a good deal of discussion about radiation standards.  Many

18  scientists and laymen are concerned that these standards are

19  unsafe; that is, too high.  It is important to understand that

20  standards are established on the basis of currently accepted

21  hazards.  These are established as one might expect by

22  experience.  Although the dangers may in the future prove to be

23  graver than can now be identified, those recommending standards

24  deal only with current knowledge.  Although the task force

25  cannot set different standards, it can point out that radiation

6247

The declassification and possible release of MUF in this
unfriendly environment, whether due to misunderstanding, lack
of knowledge, or misinterpretation could seriously damage the
posture of the Department of Energy, Rockwell International,
and former contractor, the Dow Chemical Company.

     9.   Release of MUF information could make specific
information available to terrorist groups, providing them with
more credible data which could be used in bomb threats for
blackmail or extortion purposes.  Threats of sabotage could
result which would be damaging to the national security.

     10.   At the present time litigation action is being
carried out against the Department of Energy, Rockwell
International and the Dow Chemical Company.  Declassification
of MUF and subsequent release could have an adverse effect on
the final court decision or settlement.

     MR. BERNICK:  Your Honor, we would ask for an
instruction with regard to this document that be made clear to
the jury that what's being discussed here is declassification
in connection with an earlier case that was pending in the
1970s but not with respect to the declassification that took
place in connection with this case that's pending before the
Court.

     THE COURT:  The jury is so instructed, that's clear.
It applies to other litigation that you do not have to decide.

     Go ahead.

7672

1              IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF COLORADO

3   Civil Action No. 90-cv-00181(JLK)

4   MERILYN COOK, et al.,

5      Plaintiffs,

6   vs.

7   ROCKWELL INTERNATIONAL CORPORATION and THE DOW CHEMICAL
    COMPANY,

8

9      Defendants.

10

                  **REPORTER'S TRANSCRIPT**

11               TRIAL TO JURY
                 VOLUME 61

12

13      Proceedings before the HONORABLE JOHN L. KANE, JR.,

14   Senior Judge, United States District Court for the District of

15   Colorado, commencing at 9:13 a.m., on the 13th day of December,

16   2005, in Courtroom A802, United States Courthouse, Denver,

17   Colorado.

18

19

20

21

22

23

24   Proceeding Recorded by Mechanical Stenography, Transcription
      Produced via Computer by Gwen Daniel, 901 19th Street,
25     Room A259, Denver, Colorado, 80294, (303) 629-9285

7771

William Weston - Direct

1    BY MR. BERNICK:

2    Q.  Does this describe the kinds of information that is

3    classified --

4           MR. BERNICK:  Strike that.

5    BY MR. BERNICK:

6    Q.  Does this list, with respect to MUF, the kinds of

7    information relating to MUF that is going to be classified?

8    A.  Yes.

9    Q.  And that is if we're talking about documents which track

10   plutonium, is it or is it not correct that those documents will

11   reflect the mass of a nuclear weapons component, the design of

12   nuclear weapons, etc., as reflected in 1343?

13   A.  Yeah.  They did studies, and basically they would look at

14   could our adversaries take MUF information and from that

15   determine any of this stuff on this list, and how accurate

16   could they do that.  So they did those studies.

17   Q.  Showing you Exhibit 1680.

18          MR. BERNICK:  Which we would offer, your Honor.

19          THE COURT:  Admitted.

20   BY MR. BERNICK:

21   Q.  This lists all kinds of MUF-related documents from the

22   summary reports, all the way down through all kinds of specific

23   types of documents.  Are those or are those not the types of

24   documents that would be relevant to MUF?

25   A.  That's a good lesson.  I want to emphasize how paper

William Weston - Direct                                    7772

1    intensive we were here.  In the late '80s we began to move to a

2    little more computerized system, but the bulk of our time we

3    were very paper intensive, a lot of paper with this.

4    Q.  Let me be clear.  You told us you were knowledgeable

5    concerning the kinds of information, the kinds of documents

6    that contain classified information.  Did you ever become

7    involved -- the jury has seen a lot of documentation like

8    Plaintiffs' Exhibit 548, a lot of documents that relate to

9    declassification.  Have you ever been involved in decisions

10   about whether to declassify documents?

11   A.  No, I was never involved in that, and that was not a part

12   of my responsibility.

13   Q.  Okay.  Now over time, when it comes to MUF, did you become

14   familiar with whether periodically people at the plant, either

15   for Dow or Rockwell, took a big step back and said, What's

16   going on with MUF and can we do a better job?

17   A.  It was done several times in the history of the plant,

18   "several" meaning, you know, at least a half a dozen times, and

19   I was a party to that a few times, to try and understand

20   inventory difference of material unaccounted.

21              MR. BERNICK:  D756 can that be received, your Honor?

22              THE COURT:  Yes.

23   BY MR. BERNICK:

24   Q.  Did this reflect a time line of various overview studies

25   that have been done dating back from 1964 up through the period

8151

1                    IN THE UNITED STATES DISTRICT COURT

2                       FOR THE DISTRICT OF COLORADO

3     Civil Action No. 90-cv-00181(JLK)

4     MERILYN COOK, et al.,

5          Plaintiffs,

6     vs.

7     ROCKWELL INTERNATIONAL CORPORATION and THE DOW CHEMICAL
      COMPANY,

8          Defendants.

9     _____

10

11                          REPORTER'S TRANSCRIPT
                              TRIAL TO JURY
12                             VOLUME 65
      _____

13            Proceedings before the HONORABLE JOHN L. KANE, JR.,

14    Senior Judge, United States District Court for the District of

15    Colorado, commencing at 9:05 a.m., on the 15th day of

16    December,  2005, in Courtroom A802, United States Courthouse,

17    Denver, Colorado.

18

19

20

21

22

23

24    Proceeding Recorded by Mechanical Stenography, Transcription
           Produced via Computer by Gwen Daniel, 901 19th Street,
25          Room A259, Denver, Colorado, 80294, (303) 629-9285

8208

John Till - Direct

1    A.  No, they weren't.  And what's important is you really have

2    to -- I tell me team you've got to spend time in the box.  We

3    all take our time.  You've got to go through these boxes of

4    material meticulously looking for the kind of information that

5    you need in historical dose reconstruction.

6         Some of the boxes -- in fact, most of the information

7    you don't need, most of it is information you nor I would even

8    want declassified.

9         But we were able to find a lot of information and

10   sufficient information to carry out our dose reconstruction,

11   yes.

12   Q.  Let me go back over that.

13   A.  Yes.

14   Q.  There has been testimony in this case that these documents,

15   because they're classified, can't be taken kind of back to your

16   office or off-site.  I want to just ask about the experience

17   that people in your organization had.

18        Were you all permitted to kind of say, Hey, just FedEx

19   them over to my farm, and I'll spend the weekend kind of poring

20   through them in South Carolina?

21   A.  Absolutely not.  It's very important to understand there

22   are very strict rules regarding classified information and the

23   process that one goes through to get that information

24   declassified.  We had to follow those rules just like anybody

25   else.  You can go in, you can identify a document, then you

8209

John Till - Direct

1   request that it be declassified.  It gets declassified.  In

2   some cases there's particular information that might be

3   redacted, meaning eliminated so you cannot see it.

4         In no case that I recall was any information that we

5   were looking for not provided to us.  You just have to go and

6   ask for it.  You have to know what you're looking for.

7   Q.  Okay.  So you've got to go show up in a special room,

8   you've got to have Q clearance.

9   A.  Yes.

10  Q.  They bring you a box that you ask for, you go through it,

11  and you can't leave with it, you have to make a request to have

12  it declassified?

13  A.  That's absolutely right.

14  Q.  Let's find out how truly obnoxious the rules are, in the

15  interest of national security.  What if you actually took a few

16  notes?  Can you walk out of the room with your notes?

17  A.  No, that's a very strict rule, that you cannot.  Your

18  notes, if you take notes while you're reviewing these records,

19  have to be declassified, and then they'll be turned back over

20  to you once they're declassified if there's anything in it

21  that's classified.

22  Q.  So you've basically got 2100 boxes, you've got a bunch of

23  file indices.  I guess the file indices themselves are probably

24  some of them classified, right?

25  A.  Yes, that's correct.

8210

John Till - Direct

1    Q.   Okay.  So you go through, you look through the boxes, you

2    find out what it is that you want -- or I should say not what

3    you want, but what you need, and then you make a focused

4    request for classification and review?

5         MS. ROSELLE:  Your Honor, he's leading the witness.

6         THE COURT:  He is, sustained.

7    BY MR. BERNICK:

8    Q.   Just describe --

9         MR. BERNICK:  I'm just trying to save time, your

10   Honor.

11   BY MR. BERNICK:

12   Q.   Could you tell us whether or not the procedure that you

13   followed was to make a focused request for declassification?

14   A.   Yes, that is correct.

15   Q.   Okay.  Now -- and this is very, very important.  At the end

16   of the day, did RAC, in fact, ask that certain documents be

17   declassified, including notes that RAC took on documents?

18   A.   Yes, that's correct.

19   Q.   Okay.  And were those requests processed or were they not

20   processed?

21   A.   They were processed, all of them.

22   Q.   Okay.  And what did you all do with the declassified

23   material that you reviewed and actually relied upon?

24   A.   Well, as I said, we go back to the -- back to -- back to

25   the HAP, back to these meetings, because all of these

8211

John Till - Direct

1   documents, they don't come to us, they come to the Colorado

2   Department of Public Health.

3        CDH will turn documents over to us, they keep

4   documents, copies are made, any member of the public then who

5   wants a copy of that record could get it during the course of

6   the study, and then in the end, all of the records --

7   previously classified records, unclassified records,

8   everything, was put in a couple of reading rooms here in

9   Denver, in Westminster, I believe, so that members of the

10  public could have access to them.

11  Q.   To your knowledge is there any information that RAC

12  actually used, that is, relied upon in its studies that came

13  from classified documents, but that was never declassified,

14  that is, that people, the public cannot get access to today?

15  A.   No.   And that -- really as a scientist you couldn't do

16  that, but the answer is no.

17  Q.   Thank you.   One other category I want to ask you about are

18  these Church litigation files.   The jury has heard very

19  briefly, and there are limitations that have been set by the

20  Court with respect to evidence concerning the Church

21  litigation, but are you familiar with the fact that there once

22  was litigation brought by certain individuals in connection

23  with Rocky Flats?

24  A.   Yes.

25  Q.   Okay.   It says the Church litigation files were reviewed.

12/16/2005  Cook v. Rockwell 12/16/05 PM

```
     8460
1                          IN THE UNITED STATES DISTRICT COURT
2                            FOR THE DISTRICT OF COLORADO
     2
3        Civil Action No. 90-cv-00181(JLK)
     3
4        MERILYN COOK, et al.,
     4
5            Plaintiffs,
     5
6        vs.
     6
7        ROCKWELL INTERNATIONAL CORPORATION and THE DOW CHEMICAL
     7   COMPANY,
8
     8       Defendants.
9        _____
     9
10
    10                          REPORTER'S TRANSCRIPT
11                               TRIAL TO JURY
    11                             VOLUME 68
12       _____
    12
13            Proceedings before the HONORABLE JOHN L. KANE, JR.,
14       Senior Judge, United States District Court for the District of
15       Colorado, commencing at 1:20 p.m., on the 16th day of December,
16       2005, in Courtroom A802, United States Courthouse, Denver,
17       Colorado.
18
19
20
21
22
23
24            Proceeding Recorded by Mechanical Stenography, Transcription
    24         Produced via Computer by Gwen Daniel, 901 19th Street,
25              Room A259, Denver, Colorado, 80294, (303) 629-9285
```

12/16/2005   Cook v. Rockwell 12/16/05 PM

1           THE COURTROOM DEPUTY:  You have nine minutes.

2           MR. DAVIDOFF:  This is P10, I mentioned it last week.

3     Can I have the ELMO back, please.

4           This document -- RAC requested, RAC requested in 1994

5     that this document be declassified.  They requested in 1994

6     that it be declassified.  And guess what?  Like Jiminy Cricket,

7     at their request DOE declassified it.  30 years after the fact.

8           And what does it show?  It shows that there are six

9     kilograms, 5,987 grams, six kilograms by their own estimate,

10    their own internal estimate, missing from the 1957 fire.  This

11    is done seven years after the fire and kept secret for 30 more

12    years.

13          Now there's a lot of places in here where even that is

14    subject to question, where they make estimates that there are

15    60 pounds here and 70 pounds here, but even they acknowledge

16    6,000 grams.

17          What does Dr. Till say and his experts from RAC?

18    Dr. Till says he is certain now, 42 years later, that only 300

19    grams got off the site, and that was the worst problem that the

20    Rocky Flats plant ever had.

21          There's another point to be made about this document.

22    You saw it late this afternoon in DX542, defendants' exhibit.

23          What did we do?  We went and we requested the

24    declassification of notes taken while reviewing the 1957 fire.

25    And lo and behold, DOE obliged and declassified the notes.

12/16/2005  Cook v. Rockwell 12/16/05 PM

```
1              What had happened when the plaintiffs tried to get the
2        notes?
3              MR. BERNICK:  Your Honor, I would object to this.
4        There is no suggestion that is permitted in this case that
5        somehow your Honor has instructed the jury that -- there's no
6        question about the declassification efforts that were
7        undertaken at the request of the plaintiffs in this case.  It's
8        not a matter that's at issue.
9              MR. DAVIDOFF:  Your Honor, I am often tempted to
10        interrupt counsel's arguments.
11              THE COURT:  Go ahead.  Overruled.
12              MR. DAVIDOFF:  I'm going to read the jury instruction.
13              THE COURT:  Just go ahead.
14              MR. DAVIDOFF:  If you would just take a look here, we
15        tried to get them for two and a half years.  As you heard in
16        court, they were held in contempt.  We then tried to get them
17        for another seven or eight months.  Plaintiffs' expert,
18        Budnitz, went down there with our Q-cleared counsel, asked for
19        9,000 specific documents.  We ended up getting those and most
20        of the other 1.3 million.  As Attorney Kaufman -- U.S. Attorney
21        Kaufman testified in our case, 75 percent or more of them were
22        whited out, redacted and useless.
23              And there is a jury instruction on this, and I'm going
24        to read you exactly what the jury instruction says so that you
25        can know what you are allowed to do and what you're not allowed
```

1     to do.  It's jury Instruction 1.9, and it's about burden of

2     proof and classified information.  I wish I had time to point

3     it all out to you, but I'll give you the last paragraph.

4          "For the reasons I have just given, not only are the

5     parties in this case not required to produce as exhibits all

6     papers and other things mentioned in the evidence, they cannot

7     produce some of these documents and things because the DOE has

8     classified that information as secret.  While you may not

9     speculate as to what the unavailable or redacted information

10    might be, you may, but are not required, to infer that such

11    unavailable or redacted information would have been favorable

12    or unfavorable to one side or the other in this case."  "You

13    may."

14          Why is that important?  We know the whited-out

15    redacted evidence cannot be favorable to the defense side of

16    the case.

17          MR. BERNICK:  Your Honor, again, this is a totally

18    impermissible argument.  He's making himself --

19          MR. DAVIDOFF:  Your Honor, I object --

20          MR. BERNICK:  I'm sorry, he's making himself into a

21    witness.  He's making statements before the jury that are not

22    before the jury.

23          MR. DAVIDOFF:  Your Honor, I didn't even finish my

24    sentence.

25          THE COURT:  Go ahead.

12/16/2005  Cook v. Rockwell 12/16/05 PM

```
1          MR. BERNICK:  It doesn't make a difference.  It
2     shouldn't be finished.
3          MR. DAVIDOFF:  The reason it should not be favorable
4     to them, I would argue to you, ladies and gentlemen, is
5     because, as they have admitted, they have not considered MUF to
6     have contributed as much as one gram, one gram to the estimate
7     as to what's been released off-site this plant.
8          So I would argue that it cannot be favorable to them.
9     I would argue that it can and should be construed favorably to
10    us.
11         Now let me continue, if I can, in my few minutes.  I
12    don't think I have many.
13         THE COURT:  Two.
14         MR. DAVIDOFF:  Your Honor, I wouldn't want to keep the
15    jury here any longer than they have to be kept here, and I
16    don't think any of us do.
17         I want to talk briefly about punitive damages -- no,
18    I'm going to use the ELMO because we don't have time to do
19    that.
20         I'm going to talk briefly about punitive damages, and
21    there is an Instruction No. 3.27 on that.  And we will answer
22    the questions that have been raised in the closing argument
23    when we have a little more time to do so.
24         But these are the things that the defendants did.
25    They permanently polluted.  They repeatedly lied to the public.
```

12/16/2005  Cook v. Rockwell 12/16/05 PM

1          THE COURT:  Thank you.

2          Okay.  Now this morning I met briefly with the jury,

3     as I sometimes do, to see if they hate me or not yet, and they

4     and I have a message for you that we want you to take back to

5     New York, Philadelphia, Cincinnati and Chicago, and that is our

6     secular religion here:  Go Broncos.

7          We'll be in recess.  Have a good holiday.

8          (Jury out at 4:46 p.m.)

9          MR. BERNICK:  I hate to interrupt the holiday cheer,

10    but I have a motion to make and a request to make.

11         THE COURT:  Yeah.

12         MR. BERNICK:  I have a motion -- the motion to make

13    that I have is for a mistrial based upon attorney misconduct.

14    Mr. Davidoff, contrary to the instructions of this Court,

15    basically told this jury that documents were not

16    declassified -- or declassified selectively in the interests of

17    the defense of this case.  That's a false accusation.  There's

18    no evidence of it.  It runs completely contrary to what your

19    Honor has determined.  The declassification of documents for

20    this case is not an issue and it's not before the jury.

21         Moreover, in so doing, Mr. Davidoff made a witness out

22    of himself.  He made a witness out of everybody else in his law

23    firm who is involved in trying -- as he says, trying to get

24    access to these documents, because he made a statement before

25    the jury that basically said that their efforts were frustrated

8578

1          and they were not permitted to get access to these documents.

2                  That is a false statement.  It's a false statement as

3          to which he is a material witness.  And we would seek to put

4          him on the witness list, other people from Berger and Montague

5          on the witness list because of these representations being made

6          to the jury.

7                  That is my request for a mistrial.  It's my -- I

8          further request that the jury be instructed that what counsel

9          said is not only false, but it is not before the jury.  It is a

10          very prejudicial statement to make at this stage of the trial.

11          Everyone is getting very excited here, but counsel has got to

12          obey the rules of this Court, and counsel has consistently

13          disobeyed these rules.  He's made a record of it, and we've

14          seen it yet again today.  Three months of trial down the tubes.

15                  MR. DAVIDOFF:  Your Honor, may I briefly respond?

16          Everything I said in this statement in this time line is based

17          on evidence that has already been admitted in this trial.

18                  MR. BERNICK:  I don't know what the time line says;

19          it's the representation you made personally as an officer of

20          this Court.

21                  THE COURT:  All right.  Gentlemen, I'll get a

22          transcript of this, and I'll look at it, and I'll make a ruling

23          on the motion later.  Thank you.

24                  MR. DAVIDOFF:  Your Honor, may I hand up to you the

25          graphic that I had, which was G1163, that was shown to the jury