Exhibit J

**10/11/2005  Cook v. Rockwell 10/11/05 AM**

418

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-00181 (JLK)

MARILYN COOK, et al,

Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION and THE DOW CHEMICAL
COMPANY,

Defendants.

---

REPORTER'S TRANSCRIPT

(Jury Trial -- Volume IV-A)

---

Proceedings before the HONORABLE JOHN L. KANE, JR.,
Judge, United States District Court, for the District of
Colorado, commencing at 9:14 a.m. on the 11th day of
October, 2005, Alfred A. Arraj United States Courthouse,
Denver, Colorado.

DARLENE M. MARTINEZ, RMR, CRR

United States District Court

For the District of Colorado

419

A P P E A R A N C E S

FOR THE PLAINTIFFS:

MERRILL GENE DAVIDOFF, PETER NORDBERG, DAVID F.
SORENSEN and ELLEN T. NOTEWARE, Attorneys at Law, Berger &
Montague, P.C., 1622 Locust Street, Philadelphia, PA
19103; GARY BLUM, Attorney at Law, Silver & Deboskey, 1801
York Street, Denver, CO 80206.

FOR THE DEFENDANTS:

DAVID M. BERNICK, DOUGLAS J. KURTENBACH, MARK J.
NOMELLINI, ELLEN T. AHERN and STEPHANIE A. BRENNAN,
Attorneys at Law, Kirkland & Ellis LLP, 200 East Randolph
Drive, Chicago, IL 60601, appearing for the Defendants.

**10/11/2005  Cook v. Rockwell 10/11/05 AM**

1    your lungs.  And while they are in your lung tissue, they

2    are going to be giving off these alpha particles.

3            And scientific studies have been done, and this is

4    a picture of plutonium in lung.  It is the lung of an ape,

5    and this particular one was done at Lawrence Radiation

6    Laboratory in Berkley California.  The black star in the

7    middle of this picture shows tracks made by alpha rays

8    emitted from a particle of plutonium in the lung tissue of

9    an ape.  Alpha rays do not travel far, but once inside the

10   body they can pen trade more than 10 thousand cells within

11   their range.

12           This constant bombardment of the cells with the

13   alpha particles can cause mutations of the cells.  Once

14   the cells are mutated, cancer can develop.  Because of the

15   known dangers of plutonium, before Rocky Flats opened, at

16   least in theory, special precautions were taken for the

17   handling of plutonium at the plant.

18           One of the precautions were glove boxes.  And I

19   will show you some pictures now of the glove boxes.  These

20   are workers at Rocky Flats working in the glove boxes.

21   And what you did is you put your hands inside the glove

22   boxes so that no part of your body, the worker's body,

23   ever touched the plutonium.  So you see them working

24   inside the glove boxes.

25           We have a couple.  Here is a piece of plutonium

**10/11/2005  Cook v. Rockwell 10/11/05 AM**

1   that is being handled by this worker wearing his gloves,

2   and that is inside.  Here is a hand that looks like it is

3   metal filings.  We will see a picture of the actual

4   filings, okay?  And then he's putting them in some type of

5   liquid to keep processing.

6       So that is what the glove boxes were.  They also,

7   the way Rocky Flats worked, is that you would have the

8   operations area, and then there were ducts, ventilation

9   systems to take the air from where the work was being done

10  and eventually through filters and then to a smoke stack

11  from which it would be -- go up into the air.

12      And you will hear testimony that the ducts where

13  the air went through had filters to remove the plutonium

14  before it went up into the air.  They also knew that they

15  needed to take measurements of the air.  They took

16  measurements at these facilities in the working area, in

17  the stack before the air went out of the stack, and off --

18  outside the buildings, and they were supposed to take

19  measurements in the neighborhood.

20      Workers wore special clothing.  When you came to

21  Rocky Flats, you changed clothes.  You took off your

22  street clothes.  You got special clothing, you got special

23  boots, you got respirators.  The reason they did that is

24  because you don't want to track plutonium outside the

25  plant.  What you work with at the plant stays at the

10/11/2005  Cook v. Rockwell 10/11/05 AM

1    plant.  You weren't supposed to ever take radioactive

2    materials outside these plants.

3           And the workers wore dosimeters.  Dosimeters were

4    badges they used to put them right here and the badge

5    would measure how much radiation the worker was being

6    exposed to.  And if the radiation levels got too high for

7    a given worker, then he was taken out of that area and

8    wasn't allowed to work in that area for awhile.

9           But the evidence that you hear in this case will be

10   that the precautions were not adequate.  They were not

11   adequate to protect either the workers or the neighbors.

12   The glove boxes and the duct work leaked and allowed

13   plutonium into the work area and into the neighborhood.

14   Waste storage and handling allowed plutonium into the

15   neighborhood through the air and water.

16          And with regard to the neighbors, the neighbors had

17   no protective equipment at all.  They had no way of

18   knowing when they were being exposed to radiation from

19   Rocky Flats.  Now there was ALARA policy.  The ALARA

20   policy is as low as reasonably achievable.

21          And you will see in documents in this case that the

22   ALARA policy was already in effect in 1950, before this

23   plant opened, because of the known dangers of radiation.

24   It was already expected and required that exposures to

25   radiation be kept as low as reasonably achievable.

**10/11/2005  Cook v. Rockwell 10/11/05 PM**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-00181 (JLK)

MARILYN COOK, et al,

Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION and THE DOW CHEMICAL

COMPANY,

Defendants.

---

REPORTER'S TRANSCRIPT

(Jury Trial -- Volume IV-B)

---

Proceedings before the HONORABLE JOHN L. KANE, JR.,

Judge, United States District Court, for the District of

Colorado, commencing at 1:25 a.m. on the 11th day of

October, 2005, Alfred A. Arraj United States Courthouse,

Denver, Colorado.

**10/11/2005  Cook v. Rockwell 10/11/05 PM**

A P P E A R A N C E S

FOR THE PLAINTIFFS:

    MERRILL GENE DAVIDOFF, PETER NORDBERG, DAVID F. SORENSEN and ELLEN T. NOTEWARE, Attorneys at Law, Berger & Montague, P.C., 1622 Locust Street, Philadelphia, PA 19103; GARY BLUM, Attorney at Law, Silver & Deboskey, 1801 York Street, Denver, CO 80206

FOR THE DEFENDANTS:

    DAVID M. BERNICK, DOUGLAS J. KURTENBACH, MARK J. NOMELLINI, ELLEN T. AHERN and STEPHANIE A. BRENNAN, Attorneys at Law, Kirkland & Ellis LLP, 200 East Randolph Drive, Chicago, IL 60601, appearing for the Defendants.

10/11/2005  Cook v. Rockwell 10/11/05 PM

```
1            You are going to hear from another epidemiologist,
2       Dr. Steven Wing.  And he is from the University of North
3       Carolina.  And he is going to tell you that there has been
4       medical research done on plutonium, but that most of that
5       research -- or much of that research has been controlled,
6       funded, and effectuated by the Department of Energy.  And
7       as I said, the Atomic Energy Commission, ERDA, or the
8       Department of Energy, they are all the same.  It is just a
9       different name now, the Department of Energy.
10           The Department of Energy, he will tell you, has no
11      interest in finding out how deadly plutonium is because
12      they are using it to manufacture weapons, and the result
13      has been that the so called research that has been done
14      cannot be trusted.
15           In 1975, after Jefferson County refused to allow
16      some of the neighbors living very close to Rocky Flats to
17      develop their land, Marcus Church -- you remember I showed
18      you his picture way back when here -- and two neighbors
19      sued the United States Government, Dow, and Rockwell.  And
20      after many years, that lawsuit was settled for $9,000,000.
21      And as part of that lawsuit, Marcus Church was required to
22      return to the defendants all of the documents that he got
23      during the pendency of the litigation.
24           Now, during the 15 years this lawsuit has been
25      pending, we have gotten access to the documents.  But I
```

**10/11/2005  Cook v. Rockwell 10/11/05 PM**

1      bring this up to you for two reasons:  One is that the

2      defendants in this case have already acknowledged, if you

3      will, and paid money to some of the neighbors for the

4      contamination problems it caused.

5              MR. BERNICK:  Your Honor, I object and ask the jury

6      to disregard all that has been said about Church.

7              THE COURT:  Sustained.  And please disregard the

8      comments.  That is a separate lawsuit entirely.

9              MS. ROSELLE:  Why was this lawsuit not filed until

10     1990?  Because during the 1980s and 1970s there was still

11     development and growth going on in the contaminated area.

12     The Government and the defendants kept reassuring people

13     that everything was okay.  The public had no indication

14     that there was anything illegal going on at the plant.

15              But in the late 1980s things got worse at Rocky

16     Flats.  And as Mr. Davidoff told you, there was an FBI

17     raid at the plant in June of 1989.

18              Dow left Rocky Flats in 1985, and when they left

19     there was an editorial that ran in the Rocky Mountain

20     News.  And I am going to read you just a bit of that

21     editorial.  This is the editorial.  I will read you what

22     it says.

23              It says that Dow has so mismanaged the

24     Government-owned half-billion dollar plant, that its

25     Colorado operation has become a textbook case on how not

**10/11/2005  Cook v. Rockwell 10/11/05 PM**

```
 1    to do things.  But careful assessment of the history of
 2    Rocky Flats indicates that the bulk of Dow's mistakes have
 3    been management errors, mostly of judgment and philosophy.
 4    After all, there are no great technical barriers to
 5    running such a plant properly.  And then the editorial
 6    goes on to say, let's hope that Rockwell does better.   In
 7    a few minutes Mr. Davidoff is going to tell you what
 8    happened at Rocky Flats under Rockwell.  Thank you for
 9    your time and attention.
10         MR. BERNICK:  May I have a side bar briefly.  Your
11    Honor?
12         (A bench conference is had, and the following is
13    had outside the hearing of the jury.)
14         MR. BERNICK:  I am very disturbed about this.  It
15    could not have been clearer the Court's order was the only
16    thing that would come in about Church is the fact of there
17    being this litigation.  I will listen to that file later,
18    but a settlement chunk came out and was introduced to the
19    jury as an admission.  We all know it is not an admission,
20    not an admission by Dow and Rockwell.  This is the second
21    time there is a violation of the Court's order.
22         THE COURT:  That was my ruling.  Let's not get into
23    that at all.  I will advise the jury, and I don't want to
24    be in a habit to have them disregard your statements.
25         MR. DAVIDOFF:  Can I raise one thing about the
```

10/11/2005  Cook v. Rockwell 10/11/05 PM

```
1      Rockwell was fired, the Cook versus Rockwell complaint in

2      this case was filed.  And a little over just about two

3      years later, the Government finally announced that Rocky

4      Flats would be permanently closed.

5           Coming back to the FBI raid, one of the things that

6      made property values very, very low in the class area, in

7      addition to the three years of publicity we see here, was

8      the publicity that was ushered in by the FBI raid.  On

9      June 6, 1989, the federal Government, through the FBI,

10     raids a federal facility, their own facility, a remarkable

11     event that is stranger than fiction.

12          Even more remarkable, they needed the help of the

13     DOE to get onto the property and get records from DOE's

14     contractor.  This is unprecedented.  It never happened

15     before, and it has never happened since.

16          You will hear from John Lipsky, the FBI agent, that

17     he spent two years preparing for the raid.  And you will

18     hear of the violations he found, of federal and

19     environmental laws, how he was stonewalled by Rockwell and

20     by DOE, the cover up that occurred of the incinerator

21     burning at night, and publicity about his affidavit.

22          I think the best way to summarize this briefly,

23     ladies and gentlemen, is to show you a few video clips

24     from the media coverage at about this time.  Let's start

25     with --
```

10/11/2005 Cook v. Rockwell 10/11/05 PM

```
 1                 (Video played.)
 2                 MR. DAVIDOFF:  And the affidavit about which they
 3       were -- that video clip was talking, is this affidavit by
 4       John Lipsky, the lead FBI agent, who we expect to testify
 5       in the next week or so in this case, that was used to
 6       justify the search warrant for the 75 FBI agents and the
 7       15 EPA agents at the Rocky Flats plant.
 8                 (Video played.)
 9                 MR. DAVIDOFF:  This is on the day of the raid,
10       itself, on June 6th.
11                 (Video played.)
12                 MR. DAVIDOFF:  Ladies and gentlemen, this is just a
13       small taste of the hundreds and hundreds of media reports
14       on TV, radio, throughout the United States, even the
15       world, and newspaper reports that have accompanied the FBI
16       raid.
17                 What happened was you saw a steady progression from
18       the three-party agreement in 1986.  The news got steadily
19       worse at Rocky Flats.  More bad news emerged every year,
20       it was like water torture.  Every month, a new news item
21       about a new spill or a new scandal or a new problem.
22                 For three years, from July of '86 tri-party
23       agreement until June of '89, the FBI raid, what happened
24       with the FBI raid was that whatever little bit of public
25       trust was left after these three years of terrible news
```

```
1              THE COURT:  I understand.  Do that.
2              (A bench conference is had, and the following is
3         had outside the hearing of the jury.)
4              MR. DAVIDOFF:  Your Honor, can I have a second?
5              So here we are 30 years later, and there are some
6         anti-nuclear demonstrations.  And this document, if we
7         look at the top, is a report discussing classification of
8         Rocky Flats SNM, special nuclear material, unaccounted
9         for, MUF.  We have to go to the front of the document so
10        the jury can see what the document is about.
11             At the very top, ladies and gentlemen, it is hard
12        to read, classification of Rocky Flats SNM, special
13        nuclear material, unaccounted for, MUF.  And it is a
14        report that was requested -- done by Rocky Flats personnel
15        and requested by the Department of Energy.  And it was
16        exchanged between the Department of Energy and Rocky
17        Flats.
18             .  There is one part here, Your Honor, that I would
19        like to show on page 2 -- page 3, rather.  And this is --
20        there are spaces here, ladies and gentlemen, where the
21        classification officer who declassified this document in
22        the 1990s, the document, itself, is from the 1970s, has
23        whited out certain information.
24             But Rockwell management and certain Dow Chemical
25        officials feel that the declassification or release of
```

## 10/11/2005  Cook v. Rockwell 10/11/05 PM

1      MUF, including explanations for SNM, could reveal

2      production, blank, data and possibly weapons information.

3      So Dow chemical, which had been gone for two years, was

4      still being consulted on decisions as to whether.

5            MR. BERNICK:  I object to that statement, as well

6      as beyond the scope of Your Honor's order.

7            THE COURT:  Sustained.

8            MR. DAVIDOFF:  If we could focus on paragraph 8.

9      Again, remember the classification power is to be used for

10     top secret military secrets that would compromise the

11     security of the United States.  So what do we get?

12     Anti-nuclear environmental and passivist groups consider

13     Rocky Flats as the nuclear crossroads of the nation.  The

14     declassification and possible release of MUF -- can you

15     focus in on that, please?

16          In this unfriendly environment, whether due to

17     misunderstanding, lack of knowledge, or misinterpretation,

18     could seriously damage the posture of the Department of

19     Energy, Rockwell International and former contractor, the

20     Dow Chemical Company.

21          Again, worried about public relations and using

22     classification for public -- to protect the public

23     relations and the image of the plant rather than the

24     secrets of the United States.  I think the remainder has

25     been ruled out, so can you take that document down?

```
1              Now, can we look at 653 -- Your Honor, could I just
2       have a second?  I want to make sure this is not within the
3       scope of what Your Honor just ruled.
4              THE COURT:  Yes.
5              MR. DAVIDOFF:  I think this one is okay.  Can you
6       bring this up?  We are going to fast forward another 6
7       years to April of 1983.  And this is another DOE document
8       to J.R. Hicks, area manager of Rocky Flats area office of
9       DOE, and J.E. Dorr, general manager Rockwell, Rocky Flats
10      plant.
11             I think it pays to highlight the whole top
12      paragraph there.  Unexplainable inventory differences
13      continue to be a major deficiency in the operation of
14      plutonium production processes at Rocky Flats.  Since
15      1980, there have been five major incidents of this type
16      involving metallurgical operation in buildings 707, 776
17      and 777.
18             Each time this happens, the entire AL system is
19      held hostage while we attempt to resolve the dilemma of
20      meeting our production commitment and maintaining adequate
21      control over the DOE special nuclear materials.  The
22      repercussions of these events have included lost
23      production time, extensive redirection of Rockwell and AL
24      staff effort.
25             I think that is Albuquerque.  Investigations of
```

10/11/2005  Cook v. Rockwell 10/11/05 PM

```
 1      Albuquerque activities by the GAO, the FBI, the
 2      departmental inspector general, and DOE headquarters
 3      elements.  And embarrassment to the highest levels of DOE
 4      management.
 5          The most severe consequence is erosion of the
 6      confidence of these oversight and regulatory bodies and
 7      our ability to safe guard large quantities of special
 8      nuclear materials.  The common thread in the investigation
 9      of all of these instances has been the failure of
10      production personnel to follow procedures for plutonium
11      accountability.
12          Now, and --
13          MR. DAVIDOFF:  And, Your Honor, I will forego the
14      other document, and we will submit that in a brief.
15          THE COURT:  All right.
16          MR. DAVIDOFF:  So 2,600 pounds of one of the most
17      deadly substances known to man, enough to kill millions of
18      people, goes missing at Rocky Flats, a few miles from
19      where the neighbors live, and 16 miles from downtown
20      Denver, and DOE and its contractors continue to cover it
21      up.
22          That brings us to the 1990s. After Rocky Flats was
23      raided by the FBI in 1989, I mentioned Admiral Watkins,
24      the secretary of energy, and in the Clinton
25      administration, following the first Bush administration
```

10/11/2005  Cook v. Rockwell 10/11/05 PM

```
 1        Hazel O'Leary was the secretary of energy.  And both

 2     secretaries of energy promised there would be a new dawn

 3     of openness and honesty.

 4             You will see media coverage about this during the

 5     course of this trial.  And they made these problems of

 6     openness and honesty, but the DOE broke these promises

 7     too.  Watkins left, O'Leary left, the DOE bureaucracy

 8     stayed.

 9             This is from a 1994 press conference.  This is five

10     years after the plant was raided, DOE called the openness

11     press conference.  This is DOE's fact sheets.  I hope you

12     don't have to read them all.  We will call your attention

13     to them during the trial.  This is how they were going to

14     become open and honest and tell the people of Denver, as

15     well as the people of the United States --

16             MR. BERNICK:  I object.  This is political speech

17     we specifically sought to avoid.

18             THE COURT:  Sustained.

19             MR. DAVIDOFF:  How did MUF remain a secret for all

20     these years?  Why are most of the MUF documents and

21     information still secret?  The defendants and the DOE used

22     the national security power to keep them secret.  The

23     evidence will show a few documents were declassified

24     during the so-called period of openness in 1994.

25             We press that in this case, because the MUF was the
```

10/12/2005  Cook v. Rockwell 10/12/05 AM

619

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-00181 (JLK)

MARILYN COOK, et al,

Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION and THE DOW CHEMICAL
COMPANY,

Defendants.

---

REPORTER'S TRANSCRIPT

(Jury Trial -- Volume V-A)

---

Proceedings before the HONORABLE JOHN L. KANE, JR.,
Judge, United States District Court, for the District of
Colorado, commencing at 8:21 a.m. on the 12th day of
October, 2005, Alfred A. Arraj United States Courthouse,
Denver, Colorado.

DARLENE M. MARTINEZ, RMR, CRR

United States District Court

For the District of Colorado

620

A P P E A R A N C E S

FOR THE PLAINTIFFS:

MERRILL GENE DAVIDOFF, PETER NORDBERG, DAVID F.
SORENSEN, Attorneys at Law, Berger & Montague, P.C., 1622
Locust Street, Philadelphia, PA 19103; GARY BLUM, HOLLY
SHOOK, Attorneys at Law, Silver & Deboskey, 1801 York
Street, Denver, CO 80206; LOUISE ROSELLE, Waite,
Schneider, Bayless & Chesley.

FOR THE DEFENDANTS:

DAVID M. BERNICK, DOUGLAS J. KURTENBACH, Attorneys
at Law, Kirkland & Ellis LLP, 200 East Randolph Drive,
Chicago, IL 60601, appearing for the Defendants.

10/12/2005  Cook v. Rockwell 10/12/05 AM

```
 1                    OCTOBER 12, 2005 - MORNING SESSION
 2               (The following is had outside the hearing and
 3          presence of the jury.)
 4               THE COURT:  Good morning.
 5               MR. BERNICK:  Your Honor, we obviously, we tried as
 6          best we could to avoid interrupting the course of the
 7          openings that were made yesterday, but we have now,
 8          basically, serial violations of Your Honor's motion in
 9          limine, and we are filing a motion for relief that sets
10          out what I will just cover very, very briefly right here
11          now.
12               But in light of the fact that we know the
13          plaintiffs haven't finished yet, we do have an opportunity
14          to speak to the Court now, we want to at least make our
15          records what all of the problems are.  Some of them I know
16          Your Honor will find familiar.  We don't have -- the
17          screen on the projector is not on.
18               I will not spend too much time going back over
19          these.  You are familiar with -- can you read that, Your
20          Honor?
21               THE COURT:  Yes, I can.  Thank you.
22               MR. BERNICK:  Obviously the Church litigation -- I
23          am sure Merrill will fix it before he starts -- Your
24          Honor, the Church litigation and the problems we had
25          there, that was problem number one.  You also are familiar
```

10/12/2005  Cook v. Rockwell 10/12/05 AM

```
1        with the issues that were raised with regard to worker

2        safety; that was another specific violation of Your

3        Honor's orders in limine.

4              The statute of limitations is not in this suit, yet

5        there was an argument specifically made by counsel

6        yesterday, why was this lawsuit not filed until 1990?

7        And, basically, putting at issue, the question of why was

8        the lawsuit filed so late?

9              Again, these are all matters that were litigated

10       extensively, and one of the responsibilities of counsel is

11       to make sure that they're abided by, particularly in the

12       opening statement, and they were not.  So we have three

13       different violations of orders in limine, even before we

14       got to the most disconcerting violations in the orders in

15       limine, which is what happened in connection with the FBI

16       raid.

17             The -- there are several different things:  First,

18       the basis for the FBI investigation, the warrant.  Your

19       Honor specifically ruled that the warrant was not going to

20       come before the jury.  The content of the Lipsky

21       affidavit.  The Lipsky affidavit is the basis for the

22       warrant and basis for what the FBI decided to do.  He got

23       up waived it, it is an inch thick, and contains all these

24       different things.

25             Clandestine use of the building 771 incinerator
```

1      could only come in as something that was proven

2      independently, yet there was a reference to it in

3      connection with the FBI.  This was actually patent

4      clandestine discharge of Woman's Creek.

5            Remember there were newspaper articles that got

6      into that.  This was one of the issues that the FBI

7      investigated and dropped.  So it was specifically one of

8      the things that was not supposed to be brought to the

9      attention of the jury as being something that the FBI

10     looked into and was not in the plea agreement.

11           False groundwater certification.  Remember that

12     that was again pursued, again, specifically, one of the

13     issues the FBI looked into then decided not to pursue.

14     Allegation of coverup related to FBI investigation, we

15     weren't supposed to get into any of that.  Your Honor

16     ruled on all of these different things yet we see and we

17     said it here, I won't go through them in any details,

18     specific and knowing violations of Your Honor's

19     determination not to turn this into a case about the FBI

20     investigation.

21           This is something I think the cat is out of the

22     bag.  They have clearly put at issue.  Remember, they were

23     then quoting what attorney -- U.S. Attorney Norton had to

24     say.  His assessments of the significance of the charges

25     that were being brought.  Pentz, another official, his

```
 1     assessment.  Attorney General Thornberg, his assessment.

 2     These were all assessments that we all subjective

 3     conclusions and as being made by government officials at

 4     the time that the FBI raid took place.

 5             This was specifically to be foreclosed, so we now

 6     have a very, very big door opened, and we intend, Your

 7     Honor, to go absolutely right through it.  We don't see

 8     any choice whatsoever.  They had a hero out of Lipsky, and

 9     they have other people endorsing what he had to say.  And

10     we are entitled to show their endorsement ended.  It was

11     over.  And then Lipsky was alone in insisting that the

12     investigation should be pursuing other matters that the

13     others found not to be credible.

14             Then we get to classification and declassification.

15     And I can't think of any issue that we have spent more

16     time dealing with before the Court than the question of

17     whether these defendants have anything to do with

18     classification issues.

19             And, Your Honor has said to us repeatedly,

20     classification is a matter solely within the control of

21     other government agencies.  Yet repeatedly, during the

22     course of the -- during the course of the presentation

23     yesterday, not only did Mr. Davidoff suggest that somehow

24     this jury was going to visit on the merits whether the

25     classification was proper or not.  Something Your Honor
```

10/12/2005  Cook v. Rockwell 10/12/05 AM

1       can't determine, something a jury can't determine,

2       something the Court can't determine in any kind of

3       context.   It is a function that is not subject to the --

4       in fact, it is jurisdictional.

5              To have this jury sit here and decide, I kind of

6       think I know a lot about national security and this

7       national security designation is pretextual for concealing

8       matters from the high and mighty Rocky Flats litigation,

9       so we are going to take all of national security dealing

10      with MUF all over the country and have it wagged with the

11      tale of what counsel wants to do in the Rocky Flats case.

12             Not only is that before the jury, but specifically

13      before the jury are claims that these defendants were

14      responsible for the classification and declassification.

15      Repeatedly talks about these defendants.  Talks about

16      "they," that is the Government and the defendants.

17             The jury now is being told the claim in this case

18      is we participated in this process.  Nothing could be

19      further from the truth.  They specifically in investigated

20      this in connection with contempt proceedings.  They took

21      discovery of the head of the office of classification,

22      specifically asked those questions.  And it was

23      specifically denied.

24             Yet they are making these representations before

25      the jury.  It is slanderous.  It is irresponsible.  It is

10/12/2005  Cook v. Rockwell 10/12/05 AM

```
1        in clear violation of the Court's orders.  It is a plain
2        case of attorney misconduct.
3             At this point -- at this point, Your Honor, cleanup
4        cost -- Your Honor ruled on cleanup cost, said they
5        couldn't come before the jury.  The newspaper article
6        headline shown to the jury that cleanup costs of $150
7        billion, they have now seen it.
8             So we have no less than five, six, or seven
9        violations of counsel, who is putting before the Court
10       Your Honor's contempt orders, to then turn around and
11       violate Your Honor's orders in connection with this case
12       is outrageous.  It is outrageous conduct.  It is making a
13       mockery of these proceedings.
14            Our request for relief we ask for several things:
15       One, we want to have the jury polled individually.  Each
16       individual juror, to see what influence these various
17       representations these various discussions have had on
18       their ability to continue these deliberations.
19            Your Honor conducted a superb voir dire of this
20       jury.  We then had -- counsel had the opportunity to ask
21       the hard questions of the jurors about whether they were
22       capable of handling this case.  And you know how difficult
23       that was.  It was a difficult process to get the jury.
24            We need to know to what extent these
25       representations have now influenced their thinking in the
```

 1    case and whether they feel any longer -- the woman,

 2    Ms. Laska, whose husband knows all about classification,

 3    whose job is a classified job, and she is now being told,

 4    well, you are going to decide whether classification is

 5    proper or improper.

 6         How can she separate out her feelings about

 7    classification from the issues that are being put before

 8    the jury in this case?  How is that going to work?  How

 9    can people see a cleanup headline saying $150 billion, and

10    somehow that is not part of their thinking anymore.

11         So we need to have the jurors polled individually

12    to see if they can any longer serve, then reserve our

13    right to strike the jury and go forward with a different

14    jury in the event we start to lose people.  We did not

15    sign onto the idea of starting out with a jury that was

16    less than 12.

17         Second, we believe curative instruction should be

18    given and we outlined the curative instruction should be.

19         And, third, we want counsel to specifically be

20    admonished in the presence of the jury.  This is a

21    situation where it needs to be corrected now.  It needs to

22    be corrected decisively, because otherwise a disrespect is

23    being shown for this process.  It will carry over to this

24    jury.

25         There was a naked invitation throughout the day

10/12/2005  Cook v. Rockwell 10/12/05 AM

1        yesterday that this jury should sit in judgment on all

2        kinds of political and controversial issues.  Your Honor

3        specifically admonished that is not what this case was to

4        be about and that is nakedly it is a government coverup

5        case, they don't care about the people of Colorado.  They

6        don't care about the people of Broomfield.

7              This is a referendum on Rocky Flats.  It is a

8        referendum on the federal government.  This is exactly the

9        kind of trial that Your Honor, I believe has taken pains

10       to avoid.  If we are wrong on that we are wrong on that.

11       We wanted to put that this matter before the Court.

12             THE COURT:  Thank you, Mr. Bernick.

13             MR. DAVIDOFF:  Your Honor, reserving the right to

14       respond in writing to the brief that they say that they're

15       filing, can I make some preliminary comments?

16             THE COURT:  Yes.

17             MR. DAVIDOFF:  Number one, I think it has been

18       clear from the motions in limine and all of the hearings

19       in connection with them that publicity because it affects

20       market perceptions, is admissible in this case.  And

21       certainly the jury is going to know by the end of the

22       trial that not everything that is in the newspapers was

23       correct.  But it is the onslaught, the avalanche of

24       publicity that had a perceptible, negative affect on

25       property values at Rocky Flats.

10/12/2005  Cook v. Rockwell 10/12/05 AM

```
1     including from the government, federal government, in

2     1989, 1990, and in the years following that.  It can take

3     anywhere from 30 to 50 years or more to clean up this

4     site.

5              Unfortunately, some of those articles have wildly

6     inflated cleanup cost estimates, and we can tell the jury

7     that is not it.  I don't care if the jury is told the

8     actual cleanup cost.  That was kept out of the defendants'

9     motion, not ours.

10             But it is certainly fine with me if the jury is

11    told they are to ignore the cleanup cost estimates and the

12    articles.  The articles are being shown only for the

13    purpose of showing that the people in this area, and

14    particularly the people that resided in the area of Rocky

15    Flats, and the neighborhood that was affected, were

16    fearful, justifiably fearful, that it would take decades

17    and decades to clean up this mess.  And, of course, we are

18    going to contend that the mess is not cleaned up.

19             I believe that we have been -- we have tried to be

20    advocates, but attempt -- we have tried to adhere to Your

21    Honor's rulings, and I think the motion is baseless and

22    request permission to respond further in writing after we

23    have seen it.

24             THE COURT:  Well, you may file a response to

25    anything that is written and submitted to the Court.  And
```

10/12/2005  Cook v. Rockwell 10/12/05 AM

1     that's true of the defense, as well.  The standard

2     procedure, I shouldn't say to anything that, is written

3     because if there is a reply I don't want surrebuttal going

4     on ad nauseam.

5              But if anybody files a brief, the other side, the

6     quicker that you can get an answer brief in, and if you

7     want a reply, that is fine, too.  I am going to have to

8     move as quickly as I can on these things.

9              But let me -- let me try at this point to -- well,

10    I will go over a few things with you.  The first is I am

11    not sure what other things I will be doing, but I will not

12    in this instance, nor in any other, admonish counsel in

13    front of the jury.  That is something which I think is

14    inappropriate for a judge to do.  If anybody needs to be

15    admonished, it will not be in front of the jury.

16             And that's related exactly to the same thing I keep

17    trying to tell the jury that there is no hidden signals of

18    what I am trying to do.  I have to maintain both my own

19    equanimity, and I have to maintain some sense of balance

20    in front of the jury.  So that won't happen to anybody

21    here, certainly not intentionally.

22             Now, the next thing is that we are dealing with, as

23    I see it, a problem in what is generally referred to as

24    informal logic or inductive logic.  And that is one draws

25    inferences, and I have said, and this continues to be my

10/12/2005  Cook v. Rockwell 10/12/05 AM

1    ruling, that no adverse inference can be drawn from the

2    opinions and comments of authoritative figures or others

3    who are not qualified to give an opinion in this case.

4         Opinion testimony is simply not permissible, and

5    no -- other than as expert testimony, and no adverse

6    inferences can be drawn from such things as Mr. Norton's

7    view or any other public official.

8         At times I may sound like an anarchist, and I

9    really don't mean to be that, although it is difficult for

10   me to maintain any degree of positive attitude about our

11   Government -- officials, I should say, but that's beside

12   the point.  What really matters is this, that it is

13   inappropriate to draw inferences from false logic

14   argument.  The argument oned ad hominem the argument on ad

15   baculum, and so forth.  The inferences can be drawn from

16   facts.

17        And this is what I have been trying to draw is that

18   the mere fact that there is an affidavit is of no

19   significance.  An FBI affidavit is of no significance in

20   this case.  There are facts which may be contained in that

21   affidavit which can be proved by having a competent

22   witness to testify to it.

23        The same fact may come in as being relevant and

24   probative, but the fact that it is contained in an

25   affidavit has no significance and no inference can be

**10/12/2005  Cook v. Rockwell 10/12/05 AM**

```
 1      drawn from that.  If -- and it is quite right that if this
 2      witness, the FBI agent, and it's been said in opening
 3      statement, has investigated, I have already said what he
 4      observed, what he did, and in what were, in some
 5      instances, the admissions made and so forth to him, can he
 6      testify to, and that opens the door for rebuttal by the
 7      defense to go into the fact that his views were rejected,
 8      et cetera, so forth, and it does.  And that is a matter
 9      for cross-examination.
10              But the inferences must come from factual data.
11      And that's it.  Not from the opinions or arguments of some
12      people.  Now, the other aspect of that, and it did happen,
13      and I don't know exactly what I will do yet, I have to
14      think about this.
15              And I will certainly take Mr. Bernick's argument
16      into consideration, and whatever response you have to it,
17      as well, but this is the problem with the comments about
18      the Church litigation, is that what is being done there,
19      whether intentionally or not, is to attempt to draw an
20      adverse inference from a negotiated settlement.  And a
21      negotiated settlement is one in which by very definition
22      of negotiation, facts are disregarded.
23              Some of them are abandoned.  Others are simply not
24      part of the negotiation process at all.  And I alluded to
25      the bizarre, the Turkish bizarre bargaining that goes on
```

10/12/2005  Cook v. Rockwell 10/12/05 AM

```
 1        in the bargaining process.  So whatever the Church case

 2        settled for has no probative value of anything, in this

 3        case.

 4             If someone in the Church litigation made an

 5        admission against interest, it may very well be relevant

 6        to this case and, therefore, could be admissible as an

 7        exception to the hearsay rule.  But that is about the

 8        extent of it.  And it does create a problem, because there

 9        isn't a single lawyer here, and certainly not before I was

10        disbarred, I participated in negotiated settlements, too.

11             That is the majority of what lawyers do, and I will

12        opine that it may very well be why the legal profession is

13        held in such disrepute, because of what goes on in

14        negotiation, we are -- haven't quite reached the stage of

15        the United Nations, but we are getting close in that

16        regard of abandoning the pursuit of truth for the goal of

17        economic compromise.

18             Now, with that in mind, I will tell the jury right

19        now that they are to ignore any comments made about the

20        cleanup cost, and they also are to ignore and disregard

21        anything about any other case, including the Church

22        litigation settlement, or the amounts involved.

23             The one other thing I did say, and I want to be

24        very clear about this, too, and this is going beyond the

25        realms of informal logic, into the pure governance of the
```

**10/12/2005  Cook v. Rockwell 10/12/05 AM**

```
 1      case, and that is this, that I said that no inference can
 2      be drawn, nor any implications made that counsel, or their
 3      law firms, have participated in any misconduct of any
 4      kind, including using classification or participating in
 5      that.  That the only way that that could possibly come out
 6      is outside the presence of the jury, with direct evidence,
 7      and otherwise it is clearly prohibited.
 8              Now, with respect to the press releases that were
 9      done by Rockwell and Dow, and the manipulations and so on,
10      those are relevant to the market, and those kinds of
11      statements can be brought in, in rebuttal to what was said
12      in opening statement, is clearly appropriate for that,
13      too.
14              I think perhaps the reins I tried to put on this
15      have not been held tight enough, and I will have to look
16      at the briefs and arguments and see about that.  But I do
17      want counsel to understand that the lawyers in this case
18      are not on trial, and the other cases that were filed are
19      not on trial, and the opinions of public officials in this
20      case are not on trial in this case.
21              MR. DAVIDOFF:  Your Honor, may I make a couple
22      comments?  First of all, I have completely taken Your
23      Honor's admonition on opposing counsel and the only
24      accusations of attorney misconduct and they happened
25      several times in the Daubert hearings and just again this
```

10/27/2005  Cook v. Rockwell 10/27/05 PM

2959

```
 1                 IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF COLORADO

 3     Civil Action No. 90-cv-00181(JLK)

 4     MERILYN COOK, et al.,

 5          Plaintiffs,

 6     vs.

 7     ROCKWELL INTERNATIONAL CORPORATION and THE DOW CHEMICAL
       COMPANY,

 8
            Defendants.

 9     _____

10

                       REPORTER'S TRANSCRIPT

11                       TRIAL TO JURY
                          VOLUME 19

12     _____

13          Proceedings before the HONORABLE JOHN L. KANE, JR.,

14     Senior Judge, United States District Court for the District of

15     Colorado, commencing at 1:24 p.m., on the 27th day of October,

16     2005, in Courtroom A802, United States Courthouse, Denver,

17     Colorado.

18

19

20

21

22

23

24      Proceeding Recorded by Mechanical Stenography, Transcription
           Produced via Computer by Gwen Daniel, 901 19th Street,

25          Room A259, Denver, Colorado, 80294, (303) 629-9285
```

10/27/2005  Cook v. Rockwell 10/27/05 PM

```
 1    at the documents, without describing what was in the documents,

 2    which you obviously can't do --

 3    A.   No.

 4    Q.   -- how much of the -- how much of those documents would

 5    have been at least relevant to the case that the plaintiffs are

 6    bringing here?

 7         MR. KURTENBACH:   I object to the form of the question,

 8    your Honor, foundation.   It goes far beyond anything that this

 9    man has offered an opinion on in this case, and we're now far

10    afield of any expert opinions.

11         THE COURT:   Overruled.

12    BY MR. DAVIDOFF:

13    Q.   Go ahead, sir.

14    A.   Of the documents I looked at, which were a few thousand, I

15    suppose, in fact, I remember thinking that's how many there

16    were, an important fraction, like a third or a half of them,

17    had some relevance, and a smaller number, perhaps dozens or a

18    hundred or two, were of higher relevance, that is, you know,

19    more relevant than the others.   And that hierarchy was because

20    sometimes after you read the summary document you would want to

21    go to the underlying stuff to dig more, but you would want to

22    start with the stuff that I considered of higher relevance and

23    then only dig more later.

24    Q.   All right.   And you also saw documents from how far back in

25    time?
```

MR. KURTENBACH: Your Honor, may we approach?

MR. DAVIDOFF: Your Honor, can I just conclude this line? I'm almost done here.

THE COURT: If he wants to, we will.

(At the bench.)

MR. BERNICK: At this point, if this examination continues, I think we have no choice but to move for a mistrial. I can't think of anything more prejudicial to this proceeding than for a witness to comment upon the substance of documents, saying they're relevant, and then say, I can't tell you why they're relevant, I can't tell you the content of the document, I can't tell you anything.

At this point there is no way to cross-examine, and at this point, for that matter, I'm not sure whether he's in compliance with the classification rules themselves.

THE COURT: I'm going to overrule the objection. All he's talking about so far is the difficulty in acquiring the information, and he's able to do that without giving an expert opinion on it, and he's doing that, as I consider, to be foundational work for one of the primary contentions of the plaintiffs in this case that -- and I am instructing the jury on that as to both sides, that some information and material is not available because of classification.

So unless he starts opining about whether the classification is necessary or not, if he gets into that sort