Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 1899927 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

H

Briefs and Other Related Documents

Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern Division.
SUNSTAR, INC., Plaintiff,
v.
ALBERTO-CULVER COMPANY, INC. and Bank One
Corporation f/k/a First National Bank of Chicago,
Defendants.
ALBERTO-CULVER COMPANY, a Delaware
Corporation, Plaintiff,
v.
SUNSTAR, INC., a Japanese corporation, Sunstar Group
Company (f/k/a Alberto-Sunstar Co., Ltd.), a Japanese
corporation, Kaneda, Kasan, Kabushiki Kaisha, a Japanese
corporation, and Bank One, National Association, as
Trustee under Trust Agreement No. 22-81196, dated
February 27, 1980, a national banking association,
Defendants.
**No. 01 C 0736, 01 C 5825.**

Aug. 23, 2004.

Craig S. Fochler, Charles Robert Mandly, Jr., John Sheldon Letchinger, Mike M Yaghmai, Wildman, Harrold, Allen & Dixon, Chicago, IL, for Plaintiff.
Paul Ethan Slater, Sperling & Slater, Timothy Todd Patula, Charles Thomas Riggs, Jr., Carolyn C Andrepont, Paige J Thomson, Patula & Associates, Chicago, IL, Robert A Schwinger, Marvin R Lange, Scott Sonny Balber, Janice A Payne, Melissa Jayne Larocca, Chadbourne & Parke LLP, William S D'Amico, Chadbourne & Parke LLP, New York, NY, Daniel A. Dupre, Patricia Susan Smart, John Bostjancich, Smart & Bostjancich, Chicago, IL, for Defendant.

MEMORANDUM OPINION AND ORDER

NOLAN, Magistrate J.

**\*1** These two consolidated cases arises from a dispute between Sunstar, Alberto-Culver, and Bank One regarding Sunstar's use in Japan starting in 1999 of a certain "VO5" mark on women's hair care products that Sunstar manufactures and sells in Japan.[FN1] The parties have filed their Final Pretrial Order and are proceeding to trial. District

Judge Ronald A. Guzman referred the case for resolution of pretrial matters. This opinion resolves the nineteen motions in limine.

FN1. The factual background of this case has been set forth in previous decisions in this matter including, *Sunstar, Inc. v. Alberto-Culver Co., Inc., 2003 WL 22287380 (N.D.Ill. Sept.30, 2003)*; *Sunstar, Inc. v. Alberto-Culver Co., Inc., 2003 WL 21801428 (N.D.Ill. Aug.1, 2003)*; and *Alberto-Culver, Co. v. Sunstar, Inc., 2001 WL 124905 (N.D.Ill. Oct. 17, 2001)*. The Court assumes familiarity with those facts.

BACKGROUND

On November 7, 2002, the Honorable George W. Lindberg denied Alberto's summary judgment motion on its breach of contract claim regarding the issue of whether Sunstar's use of the 1999 Mark exceeds the scope of the License Agreement. The district court concluded that several genuine issues of material fact exist, including "whether the 1999 Mark falls within the range of marks defined by Japanese trademark law as being encompassed within the use-rights under those registrations" and "what the parties intended in the License Agreement-whether the full range of use-rights inherent in the listed trademark registrations were licensed to Sunstar, or the specific marks only (as Alberto attests) ." 11/7/02 Memo. & Order at 10.

On November 14, 2002, these cases were reassigned to the Honorable Ronald A. Guzman. In denying Alberto and Bank One's request that the court exclude experts on Japanese trademark law from testifying before the jury, Judge Guzman found that the term *senyo-shiyoken* renders the License Agreement ambiguous.[FN2] 9/30/03 Memo. Opinion & Order at 8. Judge Guzman held that "the jury in this case may consider extrinsic evidence as to the scope of rights under Japanese law that a party may have intended to convey by inclusion of the term *senyo-shiyoken* in the License Agreement ." *Id.* Judge Guzman further ruled that "[t]estimony by experts in Japanese trademark law will constitute one piece of evidence as to what the parties may have intended by inclusion of the term *senyo-shiyoken* as a parenthetical to the phrase 'exclusive license' in the License



Not Reported in F.Supp.2d                                                                                      Page 2
Not Reported in F.Supp.2d, 2004 WL 1899927 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Agreement." *Id.* at 9.

> FN2. "It is undisputed that *senyo-shiyoken* is the Japanese term for an exclusive license registered with the Japanese Patent Office ("JPO")." 9/30/03 Memo. Opinion & Order at 3.

DISCUSSION

A. *Alberto-Culver's Motions in Limine*

1. *Conduct of the Trustee*

Alberto Culver's first motion in limine seeks to exclude argument and evidence related to Bank One's conduct in suspending the License Agreement and any alleged bias that Bank One supposedly has because of its relationship with Alberto. Alberto's motion is granted.

Alberto argues that the evidence that Sunstar seeks to introduce (i.e. the existence of an indemnification agreement and the contacts and relationships between Alberto and Bank One representatives) only relates to Sunstar's breach of fiduciary duty and breach of contract claims against Bank One and a claim against Alberto for tortious interference which have been dismissed. Alberto states that this evidence should be excluded because Judge Lindberg ruled on summary judgment that Bank One acted reasonably in deciding whether to suspend the License Agreement.

**\*2** Sunstar responds that § 5 of the License Agreement sets forth certain conditions precedent to the effectiveness of any suspension of Sunstar's license rights by Bank One. The License provides that Bank One may suspend the rights of Sunstar to use the licensed marks if "in the opinion of [Bank One] based upon reasonable ground," any act of Sunstar presents "a danger to the value or validity of [Bank One's] ownership and title" in the licensed marks. Sunstar wants to show that Bank One failed to act as an impartial, independent, detached neutral decisionmaker in suspending Sunstar's right to use the licensed marks under the License Agreement. Specifically, Sunstar seeks to present evidence at trial showing that prior to Bank One issuing the suspension, "Alberto undertook to ply Bank One decisionmakers with memoranda, private conferences, food,

drink and a valuable indemnification, and indeed provided drafts of the very words that Alberto wanted Bank One to issue as its own." Sunstar's Memo. at 8. Sunstar contends that this evidence is relevant to a determination of whether the circumstances here truly evidence an "opinion" by Bank One that was "based upon reasonable ground" and its defense of Alberto's breach of contract claim based upon Sunstar's continued use of the marks after Bank One's suspension of the License Agreement.

The Court agrees with Alberto that the reasonableness of Bank One's actions with respect to the suspension are no longer an issue for trial. Sunstar's breach of contract claim against Bank One was based on Bank One's alleged failure to provide reasonable grounds for suspending the License Agreement. Sunstar Am. Cmplt. ¶¶ 20, 22, 24, 26, 31, 38, 40. Sunstar alleged that the suspension resulted from undisclosed private communications between Bank One and Alberto. *Id.* ¶ 23. Judgment as a matter of law has been granted in favor of Bank One and against Sunstar on Sunstar's breach of contract claim. Judge Lindberg based his dismissal of Sunstar's breach of contract claim as well as its claims for breach of fiduciary duty and waste of trust assets against Bank One on § 4.09 of the Illinois Trust and Trustees Act, [760 ILCS §§ 5/1](#) *et seq.* As Judge Lindberg noted, when a trustee like Bank One "uses reasonable care, skill, and caution in the selection of the agent, the trustee may rely upon the advice or recommendation of the agent without further investigation and ... shall have no responsibility for action taken or omitted upon the advice or recommendation of the agent." 11/7/02 Memo. & Order at 17. In dismissing Sunstar's claims at summary judgment, Judge Lindberg specifically held that the fact that Bank One selected outside counsel based upon the recommendation by Alberto's outside counsel "does not warrant a conclusion that Bank One did not exercise the appropriate level of 'care, skill and caution' in selecting its counsel." 11/7/02 Memo. & Order at 17. Judge Lindberg thus held that Bank One used reasonable care, skill, and caution in the selection of outside counsel.

**\*3** Sunstar seeks to argue at trial that the indemnification agreement "tempted and permitted Bank One to side with Alberto without fear of liability or litigation expense in a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                    Page 3
Not Reported in F.Supp.2d, 2004 WL 1899927 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

way that the 1980 Agreements did not contemplate as being appropriate." Sunstar Memo. at 9. Judge Lindberg ruled against Sunstar as to this issue. Judge Lindberg held that a reasonable jury could not find in favor of Sunstar on its argument that Bank One made its suspension decision by relying on the indemnification agreement from Alberto rather than the advice of counsel. *Id.* at 18. The district court has ruled that Bank One did not in fact rely upon the indemnification in deciding to suspend the License Agreement.

Sunstar emphasizes that the district court held on summary judgment that Bank One could not be held liable for alleged breaches of its obligations and that Alberto could not be held liable for inducing those alleged breaches based on the statutory protections from legal liability granted to trustees under the Trustees Act but that the district court did not rule that the suspension was reasonable or proper. The district court did discuss Bank One's conduct in connection with the suspension in its opinion. In granting summary judgment, the district court specifically held that no genuine dispute of material fact existed as to whether Bank One used "reasonable care, skill, and caution in the selection" of outside counsel and whether Bank One actually relied on the advice of outside counsel in deciding whether to suspend the License Agreement. 11/7/02 Memo. & Order at 17-18. Sunstar does not adequately explain how Bank One could have used reasonable care, skill, and caution in the selection of outside counsel, a specialist in trademark law at the firm of Michael Best and Fredreich, and actually relied on the advice of outside counsel in making the decision to suspend the License Agreement but failed to form an "opinion ... based upon reasonable ground" that a danger to the value or validity of the licensed marks existed. To grant summary judgment against Sunstar on its breach of contract claim because Bank One used reasonable care, skill, and caution in the selection of outside counsel and actually relied on counsel's advice is the practical equivalent of holding that Bank One formed an "opinion ... based upon reasonable ground," even if Judge Lindberg's opinion did not explicitly state that the suspension was "based upon reasonable ground." Because the reasonableness of Bank One's conduct in connection with the suspension is no longer an issue for trial, the evidence Sunstar wants to admit

is irrelevant and is excluded.

### 2. *Reason or Justification for Adopting the 1999 Mark*

Alberto seeks to exclude at trial argument or evidence concerning any reason or justification for Sunstar's adoption and use of the 1999 Mark. Alberto's motion is granted.

Sunstar wants to tell that jury that it adopted the 1999 Mark "to help revitalize the declining VO5 brand in Japan in direct response to consumer market research results and recommendations regarding the VO5 logo received from outside consultants, and not as an attempt to palm off its VO5 products as the products of someone else." Sunstar Memo. at 2. Alberto contends that evidence concerning any reason or justification for Sunstar's adoption and use of the 1999 Mark is irrelevant. Alternatively, Alberto argues that such evidence should be barred under Federal Rule of Evidence 403 because it could confuse the jury by creating the false impression that Sunstar's business reasons for adopting the 1999 Mark constitute a valid defense to Alberto's breach of contract claim and cause the jury to prejudicially perceive Alberto as an unreasonable business partner that ignored Sunstar's marketing studies and efforts.

**\*4** Sunstar responds that evidence of how and why it adopted the 1999 Mark for use in Japan is critical to the jury's evaluation of the infringement issues raised by both sides in this case. Sunstar states that one of the most important factors in evaluating infringement is the intent of the party alleged to have infringed. Sunstar additionally argues that evidence of the reasons why Sunstar adopted the 1999 Mark is admissible as background evidence to give the jury a complete story.

The parties appear to agree that the contractual prohibition in § IV of the License Agreement against acts by Sunstar that "infringe" the licensed marks contractualizes what would otherwise be statutory claims for trademark infringement. Sunstar states, and Alberto does not dispute, that both sides in this case have looked to U.S. federal trademark law to define the nature, elements, and relevant proof for trademark infringement. The Seventh Circuit has noted that "[t]he linchpin of both common law and federal statutory trademark infringement claims is whether

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 4
Not Reported in F.Supp.2d, 2004 WL 1899927 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

consumers in the relevant market confuse the alleged infringer's mark with the complainant's mark." *AHP Subsidiary Holding Co. v. Stuart Hale Co.,* 1 F.3d 611, 614 (7th Cir.1993). The Seventh Circuit has found seven factors, including "defendant's intent to palm off its goods as those of the plaintiffs," relevant to the "likelihood of confusion" analysis. *Ty. Inc. v. Jones Group, Inc.,* 237 F.3d 891, 897 (7th Cir.2001). Bad faith or wrongful intent to "palm off" or lack of intent to confuse customers is not required to establish likelihood of confusion, but when present, it is an important factor in the likelihood-of-confusion analysis. *Eli Lilly & Co. v. Natural Ans., Inc.,* 233 F.3d 456, 465 (7th Cir.2000); *Henri's Food Products Co., Inc. v. Kraft, Inc.,* 717 F.2d 352, 359 (7th Cir.1983). The issue here is whether Sunstar's adoption of the 1999 Mark breached the 1980 Agreements by infringing, i.e. causing a likelihood of confusion.

"[T]he only kind of intent that is relevant to the issue of likelihood of confusion is the intent to confuse." 3 McCarthy on Trademarks and Unfair Competition § 23:110 (4th ed.2004); *Eli Lilly & Co.* 233 F.3d at 465 (stating "the fact that one actively pursues an objective greatly increases the chances that the objective will be achieved."). Presence of good faith or good intent is not a valid defense to a claim of trademark infringement. 3 McCarthy on Trademarks and Unfair Competition § 23:106 (4th ed.2004) (stating "good faith intentions of an infringer are no defense to a finding of liability"); *see also Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.,* 109 F.3d 275, 287 (6th Cir.1997 (stating "the *presence* of intent can constitute strong evidence of confusion.... The converse of this proposition, however, is not true; *lack* of intent by a defendant is 'largely irrelevant in determining if consumers likely will be confused as to source.' '); *Polaroid Corp. v. Polaroid Inc. ,* 319 F.2d 830, 836 (7th Cir.1963); *Playboy Enterprises v. Frena,* 839 F.Supp. 1552, 1561 (M.D.Fla.1993) (stating "[e]ven though a guilty state of mind is relevant evidence of trademark infringement, an innocent state of mind is irrelevant on the issue of likelihood of confusion since the lack of intent to deceive does nothing to alleviate the confusion precipitate by similarity of trademarks.").

**\*5** Whether Sunstar had a good business reason for adopting the 1999 Mark is not relevant to the likelihood of confusion issue. FN3 It does not matter whether Sunstar acted prudently or sensibly by introducing the 1999 Mark. The fact that Sunstar may have adopted the 1999 Mark for legitimate business reasons does not make it more or less probable that Sunstar intended to confuse consumers or negate any wrongful intent to confuse. *Daddy's Junky Music,* 109 F.3d at 287 (stating "lack of intent neither reduces nor increases the probability of consumer confusion."); 3 McCarthy on Trademarks and Unfair Competition § 23:106 (4th ed.2004) (stating "while evidence of intent is probative of likelihood of confusion of customers, the absence of such evidence does not prove that confusion is unlikely."). Sunstar's alleged good faith or business reasons for adopting the 1999 Mark is not probative as to the likelihood of confusion issue and not information the jury needs to determine whether there was a breach of the 1980 Agreements by infringement.

> FN3. "Relevant evidence" is "evidence having any tendency to make the evidence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401.

Finally, even if the reasons why Sunstar adopted the 1999 Mark could be considered useful or permissible "background" information, the potential for unfair prejudice outweighs its slight probative value. *See* Fed.R.Evid. 403. FN4 Evidence of Sunstar's business reasons for adopting the 1999 Mark-allegedly "to help revitalize the declining VO5 brand in Japan in direct response to the information and recommendation received from the DGA consulting firm"-may cause jury confusion regarding the relevant infringement standard or suggest a decision on an improper bias and unfairly prejudice Alberto by suggesting that business reasons or lack of improper intent constitute a valid defense to infringement. The jury may improperly infer that Sunstar was entitled to use the 1999 Mark if it was justified by business conditions. The jury may also infer from such evidence that Alberto was an unreasonable business partner that improperly ignored Sunstar's marketing studies and efforts. The problem with that inference is that Alberto's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Case No. 1:90-cv-00181-JLK   Document 1904-5   filed 12/29/05   USDC Colorado   pg 5 of 31

Not Reported in F.Supp.2d                                                                 Page 5
Not Reported in F.Supp.2d, 2004 WL 1899927 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

reasonableness is irrelevant to the issue of likelihood of confusion.

> FN4. Under Rule 403, even relevant evidence may be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice." The phrase "unfair prejudice" used in Rule 403 "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Notes of the Advisory Committee of the Proposed Rules.

For these reasons, Alberto's motion is granted with the understanding that Alberto will not be allowed to argue at trial that the absence of evidence regarding why Sunstar adopted the 1999 Mark indicates Sunstar intended to confuse consumers.

### 3. *Unexpressed Intent for Including the Phrase* Senyo-Shiyoken *in the Agreements*

Alberto's third motion in limine seeks to bar argument, evidence or testimony concerning any unexpressed or uncommunicated intent for including the phrase *Senyo-Shiyoken* in the agreements. Alberto's motion is denied without prejudice.

The License Agreement granted Sunstar an "exclusive license to manufacture, use, sell and offer for sale within the territorial limits of Japan, Licensed Products bearing Licensed Trademarks.... [Sunstar] agrees to cause said exclusive license (*Senyo-Shiyoken* ) to be registered at the Japanese Patent Office...." Judge Lindberg has ruled that a genuine dispute of fact exists regarding "what the parties intended [by including the phrase *Senyo-Shiyoken* ] in the License Agreement-whether the full range of use-rights inherent in the listed trademark registrations were licensed to Sunstar, or the specific marks only (as Alberto attests)." 11/7/02 Memo. and Order at 10.

**\*6** Sunstar seems to concede that it will not offer any evidence of unexpressed intent at trial. Sunstar claims that Alberto's motion is based on an "utterly false premise." Sunstar Memo. at 10. Sunstar states that Alberto's motion "assumes that nothing was ever communicated during

negotiations about the purpose behind *'senyo-shiyoken'* when in fact the opposite is true." *Id.* at 10-11. According to Sunstar, the term *"senyo-shiyoken"* was put into the 1980 Agreements to make clear that Sunstar had the right to use a certain range of variations on the originally-filed trademark designs that is defined by principles of Japanese law. Sunstar asserts that "[t]his understanding was clearly communicated and agreed upon in the course of substantive business negotiations for the 1980 Agreements." *Id.* at 2. Since Sunstar does not appear to intend to offer evidence relating to unexpressed intent behind the inclusion of the phrase *senyo-shiyoken* into the agreements, Alberto's motion is denied without prejudice.

### 4. *Agreements and Negotiations that Preceded the 1980 Agreements*

Alberto seeks to exclude argument, evidence, or testimony concerning alleged agreements, understandings or conversations that pre-date the execution of the 1980 Agreements to which Bank One was not a party. Alberto's motion is granted in part and denied in part.

Sunstar "plans to offer evidence concerning the history of the negotiation of the deal which led to the 1980 Agreements, including predecessor documents, to show that the parties' intent was for Sunstar as *senyo-shiyoken* licensee to enjoy the full range of use-rights inherent in the licensed trademark registrations under Japanese law for *senyo-shiyoken* licensees." Sunstar Memo. at 4. Alberto argues that this evidence should be excluded for three reasons: (1) it is irrelevant and being offered for an improper purpose; (2) its introduction is barred by the integration clause of the 1980 Agreements; and (3) such evidence is not probative of the parties' intent in including *senyo-shiyoken* into the 1980 Agreements because Bank One did not participate in the pre-1980 agreements, negotiations and understandings. The Court addresses each argument in turn.

Alberto contends that neither the Memorandum of Discussion ("MOD") nor the Agreement in Principle ("AIP"), both pre-1980 agreements between Alberto and Sunstar, is relevant to determining the meaning of *senyo-shiyoken* in the 1980 Agreements. The MOD set forth

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Alberto's and Sunstar's intentions with respect to a proposed transaction involving Sunstar's purchase and ownership of all of the rights in the licensed marks. Alberto argues that because Sunstar did not become the owner of the licensed marks and the MOD deals only with a possible assignment it "has no relevance to the meaning of the term *Senyo-Shiyoken* used in a provision dealing exclusively with the registration of a license agreement...." Alberto Reply, at 5. With respect to the AIP, Alberto argues that its single use of *senyo-shiyoken* is "substantively and virtually literally the same as the use made of *Senyo-Shiyoken* in the License Agreement, which Judge Lindberg found to be ambiguous ." Alberto's Reply at 5. Therefore, Alberto contends that the sole reference to *Senyo-Shiyoken* in the AIP sheds no light on the meaning of that term as it is used in the License Agreement. Finally, Alberto argues that Sunstar's attempt to tie the "philosophy of the assignment of the Trademarks" provisions of the AIP to the meaning of *senyo-shiyoken* fails because: (1) the references to a *senyo-shiyoken* registration and "philosophy of assignment" are in two separate provisions of the AIP that are separated by almost four pages of numerous other, diverse provisions and make no reference to one another; (2) by its literal terms, the "philosophy of assignment" provision deals with Sunstar's desire to get the benefits of an assignment "to the extent practicably possible" and it is not "practicably possible" to give the benefits of an assignment through the grant of a license; and (3) the "philosophy of assignment" provision expressly anticipated other "detailed agreements" and the simultaneous assignment that was accomplished when all of the 1980 Agreements were executed sufficiently placated Sunstar's unfulfilled desire to become the owner of the Licensed Marks.

**\*7** Alberto's arguments regarding the relevancy of the pre-1980 Agreements go to their weight, not their admissibility. In denying Alberto summary judgment on its breach of contract claim, Judge Lindberg ruled that:
"[S]enyo-shiyoken" is in the License Agreement for a reason. However, a question of fact still exists as to whether the 1999 mark falls within the range of marks defined by Japanese trademark law as being encompassed within the use-rights under those registrations. A question of fact also exists as to what the parties intended in the License

Agreement-whether the full range of use-rights inherent in the listed trademark registrations were licensed to Sunstar, or the specific marks only (as Alberto attests).

11/7/02 Memo. & Order at 10. Judge Guzman expressly ruled that "the jury in this case may consider extrinsic evidence as to the scope of rights under Japanese law that a party may have intended to convey by inclusion of the term *senyo-shiyoken* in the License Agreement. 9/29/03 Memo. Opinion & Order at 8.

The pre-1980 extrinsic evidence Sunstar seeks to admit is not clearly inadmissible. *Marlow v. Winston & Strawn,* 1994 WL 424124, \*1 (N.D.Ill. Aug.11, 1994) (stating evidence should be excluded on a motion in limine only if it "clearly is not admissible for any purpose."). Evidence of the negotiations and agreements that preceded the execution of the 1980 Agreements may be relevant to resolving the ambiguity in the parties' use of the term *senyo-shiyoken* in the License Agreement. As one Illinois court has explained:
" '... In the construction of an ambiguous or uncertain writing which is intended to state the entire agreement, preliminary negotiations between the parties may be considered in order to determine their meaning and intention and to ascertain in what sense the parties themselves used the ambiguous terms in the writing which sets forth their contract. \* \* \* In the determination of the meaning of an ambiguous or uncertain contact and as an aid to its construction, the court must have recourse, not only to the working and context of the agreement, but also to the circumstances and correspondence between the parties pending the negotiation of the final agreement." '

*Rybicki v. Anesthesia & Analgesia Assoc.,* 246 Ill.App.3d 290, 186 Ill.Dec. 179, 615 N.E.2d 1236, 1243 (Ill.App.1993) (quoting 17A Am.Jur.2d *Contracts* § 403, at 429-30 (1991)). Alberto takes too narrow a view of relevance with respect to admissibility of the pre-1980 evidence at trial. The prior proposed agreements need not define *senyo-shiyoken* or expressly state why it was used in the 1980 Agreements to be relevant to the question of the parties' intent in including the term *senyo-shiyoken* in the License Agreement.

In making its relevancy argument, Alberto assumes that no

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



part of the prior proposed agreements sheds light on the meaning of *senyo-shiyoken* in the 1980 Agreements. In contrast, Sunstar contends that evidence concerning the history of the negotiations, including portions of the prior proposed agreements, will show that the intent behind the grant of the *senyo-shiyoken* license was to give Sunstar use-rights that were as close as possible to the use-rights that Sunstar would have enjoyed as the owner under the original sale version of the transaction. The reasonableness of Sunstar's version is an issue for the jury to determine at trial. Alberto's objections, including its arguments about why Sunstar's attempts to tie the "philosophy of the assignment" provision of the AIP to the meaning of *senyo-shiyoken* fail, implicate the weight that should be afforded this evidence rather than its admissibility. The Court declines to find, as Alberto urges, that the "philosophy of assignment" provision, the *senyo-shiyoken* registration provision of the AIP, or the assignment provisions of the MOD are irrelevant as a matter of law in determining the parties' intent in using the term *senyo-shiyoken*. How much weight to be accorded this evidence is an issue for the jury to resolve.

**\*8** Alberto next argues that Article II of the License Agreement and the integration clause in Article XII of the License Agreement prevent Sunstar from introducing pre-1980 agreements. Article II provides in relevant part: Sunstar "shall not represent in any way that legal title in or legal right to the ownership of Licensed Trademarks rests in [Sunstar]...." Alberto claims that by offering pre-1980 agreements to explain the parties' intent in inserting *senyo-shiyoken* in the 1980 License Agreement, Sunstar is "in effect, taking the position that it should be treated as an owner of the Licensed Trademarks...." Alberto's argument amounts to an untimely request for summary judgment. Under the guise of a motion in limine, Alberto seeks to eliminate Sunstar's position regarding the scope of rights granted by the License Agreement. Judge Lindberg set a September 11, 2002 deadline for summary judgment motions. Alberto filed a motion for summary judgment which included numerous arguments but there was no argument that as a matter of law Article II precluded Sunstar's position regarding the breath of the license. The Court rejects Alberto's current request.

Alberto also argues that the integration clause in Article XII of the License Agreement prevents Sunstar from introducing pre-1980 agreements. Article XII provides in relevant part: "This Agreement (and the Basic Sale Agreement and the Trust as described herein) represents the entire understanding of the parties respecting its subject matter and all previous trademark agreements executed by the parties are hereby superseded." The integration clause contained in the 1980 Agreements does not prevent Sunstar from presenting pre-1980 conversations, negotiations, and agreements for the purpose of determining the parties' intent as to the meaning of the term *senyo-shiyoken* as used in the License Agreement. *See Rybicki, 186 Ill.Dec. 179, 615 N.E.2d at 1243* (indicating that preliminary negotiations between the parties may be considered when construing an ambiguous term in an integrated agreement); *Fox v. The Montell Corp., 2001 WL 293632 at \*2 (N.D.Ill. March 19, 2001)* (holding that "extrinsic evidence may be used to clarify the meaning of ambiguous contract terms" even though the "contract contains an integration clause."). Sunstar will not offer any pre-1980 evidence to vary or contradict the unambiguously expressed terms of the 1980 Agreements. Instead, pre-1980 conversations, negotiations, and agreements will be presented solely to assist the jury in understanding the parties' intent in inserting *senyo-shiyoken* into the 1980 Agreements.

Without citation to any authority, Alberto next contends that the AIP and the other pre-1980 Agreements should not be admitted because Bank One was not involved in the negotiations leading up to the AIP signed between Alberto and Sunstar. According to Alberto, that negotiation history has "no bearing on the meeting of the minds of all parties with the respect to the subsequently executed 1980 Agreements" Alberto Memo. at 9.

**\*9** The Court rejects Alberto's argument as a basis for excluding Alberto and Sunstar's pre-1980 negotiation history. The 1980 Agreements cannot be viewed in isolation from the history that led to the 1980 Agreements. Rather, the 1980 Agreements are more properly analyzed in the context of Alberto and Sunstar's relationship as a whole. As shown in the November 6, 1979 MOD signed by Alberto and Sunstar, they originally intended that Alberto would sell

Not Reported in F.Supp.2d                                                                 Page 8
Not Reported in F.Supp.2d, 2004 WL 1899927 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

to Sunstar the Japanese VO5 trademarks as well as Alberto's 49% interest in their joint venture company. Then, in January 1980, Alberto and Sunstar agreed in the AIP after "re-negotiation" regarding "the basic structure of the transactions contemplated" to "change the form of the transaction from assignment of the Trademarks to [a] trust arrangement with the trustee holding for the benefit of Sunstar." The AIP contemplated "detail agreements to be prepared in connection with the" AIP. Finally, in February 1980, Sunstar, Alberto, and Bank One entered into a group of agreements, referred to collectively as the 1980 Agreements regarding the sale of Japanese VO5 trademarks. The preliminary negotiations between Alberto and Sunstar are not irrelevant to resolving the ambiguity as to what Alberto and Sunstar may have intended by using *senyo-shiyoken* simply because Bank One was not involved in the negotiations.

Finally, Alberto argues that Sunstar should not be allowed to introduce to the jury any pre-1980 negotiations, conversations, or agreements for the purpose of showing whether or not the Trustee's suspension of the License Agreement was justified. Because this Court has already determined in ruling on Alberto's first motion in limine that the reasonableness of Bank One's actions with respect to the suspension are no longer an issue for trial, Alberto's motion is granted in this regard.

*5. Actions Taken By Alberto or Its Subsidiary Licensee*

Alberto next seeks to bar argument or evidence that conduct of Alberto or by related entities relating to marks other than the 1999 Mark constitutes acquiescence by Alberto to use of the 1999 Mark by Sunstar or is otherwise a defense to Alberto's claims for breach of contract. Alberto's motion in limine raises the following arguments: (1) Sunstar's acquiescence defense is equitable and inapplicable to Alberto's legal claim for breach of contract; (2) even if the defense were to apply, the evidence that Sunstar relies on is irrelevant to that defense because it only matters whether Alberto consented to Sunstar's use and not what Alberto knew or should have know; and (3) conduct outside of Japan is irrelevant as a matter of law to a defense of acquiescence because that defense is only applicable within the geographic scope of the consent. Alberto's motion is

denied because it is really an untimely motion for summary judgment on Sunstar's fifth affirmative defense. FN5

> FN5. Sunstar's fifth affirmative defense states:
> To the extent that any of Alberto's claims rest upon an allegation that Sunstar's use of the Modernized VO5 logo would impair, lessen the value of or infringe rights with respect to VO5 marks, or prevent the protection of the rights in VO5 marks intended by the 1980 Agreements, Alberto is estopped from asserting such claims by virtue, *inter alia,* of its July 20, 1993 and July 28, 1993 letters to Sunstar authorizing Sunstar to depart (at Sunstar's sole option) from using the same major worldwide logotypes as being employed by Alberto's various Units worldwide, and, on information and belief, by Alberto's own deviations from its guidelines for VO5 trademarks on products marketed in Hong Kong and England and its knowing acquiescence to deviating VO5 trademark uses.

Alberto's summary judgment motion argued, in relevant part, that Sunstar's use of the 1999 Mark impairs and lessens the value of the licensed VO5 marks. Alberto's Memo. in Support of its Motion for SJ at 12-13. In response to Alberto's request for summary judgment on the impairment and lessening of value claim, Sunstar relied on its expert's opinion that in light of numerous factors, including (a) lack of consistency between the Licensed VO5 Trademarks and VO5 trademarks used by Alberto outside Japan and (b) Alberto's past willingness to have Sunstar use in Japan new unregistered VO5 marks that were created long after the 1980 Agreements were signed, "it is impossible reasonably to conclude that Sunstar's use of the 1999 Mark has lessened, impaired or created a danger to the value of the Japanese VO5 Trademarks or the Trustee's interest therein." Sunstar's Memo. in Opposition to Alberto's SJ at 15-16. Sunstar additionally argued in opposition to Alberto's summary judgment motion that Alberto's conduct as alleged in Sunstar's fifth affirmative defense raised issues of fact as to whether Alberto is subject to an estoppel or waiver barring its claim that Sunstar's use of the 1999 Mark lessens the value of the Trademarks. *Id.* at 22.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                     Page 9
Not Reported in F.Supp.2d, 2004 WL 1899927 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

**\*10** Judge Lindberg denied summary judgment on Alberto's claim that the 1999 Mark infringes, impairs and lessens the value of the licensed trademarks in breach of § IV of the License Agreement. Judge Lindberg ruled as follows:

After reviewing the evidence, the Court concludes that whether the 1999 mark infringes the License Agreement and whether Sunstar has diminished the value of the "Licensed Trademarks" depends on genuine issues of material fact that should be determined by the trier of fact. Sunstar's fifth affirmative defense raises genuine issues of material fact: in this defense Sunstar states that Alberto's basic position in this action against Sunstar's use of the 1999 Mark is inconsistent with Alberto's willingness to have Sunstar switch in Japan from using the Licensed Trademarks to using the "global logo" developed in 1993 that has never been registered as a trademark in Japan and that Alberto's claims of injury from the use of the 1999 Marks are inconsistent with the fact that Alberto knowingly acquiesces in the use of various VO5 trademarks around the world that deviate from Alberto's own worldwide trademark guidelines.

11/7/02 Memo. and Order at 11.

Alberto's motion in limine amounts to request for the entry of summary judgment on Sunstar's fifth affirmative defense because a ruling favorable to Alberto would be dispositive of Sunstar's fifth affirmative defense. Alberto raised numerous arguments in its summary judgment motion but did not move for summary judgment on Sunstar's fifth affirmative defense. In response to Sunstar's argument that its fifth affirmative defense raised genuine issues of fact precluding summary judgment on Alberto's claim that use of the 1999 Mark lessens the value of the Trademarks, Alberto's reply brief in support of summary judgment did not raise the main arguments raised in its current motion. Rather, Alberto characterized the fifth affirmative defense as one of waiver and argued only that the 1980 Basic Sale Agreement forbids an unwritten waiver. *See* Alberto's SJ Reply Memo, at 14. Alberto could have moved for summary judgment on Sunstar's fifth affirmative defense arguing that it failed as a matter of law for all of the reasons it now asserts. Alberto has offered no justification, such as an intervening change in the law or the availability of new

evidence, for this Court to consider the merits of an untimely dispositive motion.

The Court also rejects Alberto's argument that if in denying Alberto's summary judgment motion on its breach of contract claims under section IV of the License Agreement, Judge Lindberg ruled that Sunstar's acquiescence defense was valid and presented triable issues of fact, the ruling is either clearly erroneous or will work a manifest injustice. This Court cannot find that Judge Lindberg's ruling on summary judgment was clearly erroneous where Alberto did not raise its current arguments in its summary judgment pleadings. Alberto's fifth motion in limine is denied. FN6

> FN6. The Court expresses no opinion at this time on whether the trial court or the jury should ultimately resolve Sunstar's acquiescence defense.

*6. Expert Testimony on Foreign Law. Japanese Courts Decisions, and Credibility of Witnesses*

**\*11** In its sixth motion in limine, Alberto seeks to bar Japanese law experts from testifying at trial because such testimony relates to the determination of foreign law which is a question for the Court, not the jury; such testimony will rely in part on Japanese case law which has no precedential effect; and such testimony cannot be used to bolster the credibility of witnesses. In response, Sunstar argues that Alberto is foreclosed from relitigating the issue of whether Japanese law experts should be allowed to testify before the jury. Alberto's reply argues that its present motion is directed to issues "arising for the first time out of [Judge Guzman's] decision to allow Japanese law experts to testify to the jury." Alberto's Reply at 3. According to Alberto, the "new issues" raised by Judge Guzman's prior decision to allow law expert testimony before the jury are: (1) whether the expert legal testimony should be permitted to determine if a party is "believable" (i.e.credible); (2) whether the jury can make such an evaluation without reaching a decision as to what the correct construction of the relevant Japanese law in 1980; and (3) whether the jury should be charged with making evaluations as to the intent of an individual party, rather than the parties' joint intent. Alberto's motion is denied without prejudice.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                Page 10
Not Reported in F.Supp.2d, 2004 WL 1899927 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

In their Motion for Determination of Responsive Expert Report Dates and Exclusion of Law Expert Testimony from Trial, Alberto and Bank One requested the district court to "exclude experts on Japanese trademark law from testifying before the jury." 9/29/03 Memo. and Order at 7. They argued, as Alberto argues in its current motion, that foreign law experts may not properly testify before the jury under Fed.R.Civ.P. 44.1 and *Pittway Corp. v. U.S.,* 88 F.3d 501, 504 (7th Cir.1996). *See* Alberto and Bank 1 Memo. for Exclusion of Law Expt. Testim. from Trial, p. 7; Alberto's 6th Motion in Limine at 4. Judge Guzman denied Alberto/Bank One's Motion for Exclusion of Law Expert Testimony from Trial. Judge Guzman held that "the jury in this case may consider extrinsic evidence as to the scope of rights under Japanese law that a party may have intended to convey by inclusion of the term *senyo-shiyoken* in the License Agreement" and that "[t]estimony by experts in Japanese trademark law will constitute but one piece of evidence as to what the parties may have intended by inclusion of the term *senyo-shiyoken* ...." 9/23/03 Memo. and Order at 8, 9. Judge Guzman explained that "expert testimony as to the different available constructions of the foreign legal terminology [will be] used solely to aid the trier of fact in determining the reasonableness of the positions of the parties as to their true intent." *Id.* at 10.

By requesting an order barring expert testimony on foreign law, Alberto now seeks the exact same relief in its sixth motion in limine as it did in its prior motion. Alberto acknowledges that Judge Guzman has ruled that the Japanese law experts may testify on the law of *senyo-shiyoken* trademark licenses as it was in 1980. Alberto contends, however, that Judge Guzman's prior ruling in that regard was "clearly erroneous." The only way this Court could grant Alberto's requested relief would be to overrule Judge Guzman's ruling that Japanese trademark law experts will be allowed to testify before the jury. This Court declines to reconsider Judge Guzman's ruling and expresses no opinion on the merits of Alberto's current arguments. FN7 Any request for an order barring testimony by experts in Japanese trademark law should be made to Judge Guzman in the form of a motion for reconsideration.

FN7. The Court also declines to address Alberto's

argument that Sunstar should be precluded from presenting testimony regarding Section 50.1 on the Japanese Trademark Act on relevancy grounds because this argument was raised for the first time in its reply brief and Sunstar has not had an opportunity to respond. *Wagner v. Magellan Health Services, Inc.,* 121 F.Supp.2d 673, 680 (N.D.Ill.2000).

### 7. *Interlocutory Orders*

**\*12** Alberto's seventh motion in limine seeks an order barring argument, evidence or testimony which would be inconsistent with various prior rulings by Judge Lindberg in this case. Alberto's motion is granted in part and denied in part.

a. Alberto first argues that argument or evidence indicating that Sunstar's adoption of the 1999 Mark was necessary due to the Japanese market conditions and the economic pressures it was facing would be inconsistent with Judge Lindberg's ruling that "the fundamental purpose of the Trust is to secure the performance and observance of undertakings and covenants made by the parties to the Trust Agreement, and not to allow Sunstar to maximize the full inherent value of the Japanese V05 Trademarks." 1/15/02 Memo. and Order at 10. In granting Alberto's second motion in limine, this Court ruled that the circumstances and reasons behind Sunstar's adoption of the 1999 Mark are excluded. Accordingly, Alberto's request that such evidence be excluded as inconsistent with an interlocutory order is denied as moot.

b. Alberto next seeks to exclude any evidence or argument regarding Alberto's purported wrongful acts and intent in influencing the Trustee as inconsistent with Judge Lindberg's ruling that Alberto has a beneficial interest in the Trust and such interest is not negligible. *See* 1/15/02 Memo. and Order. Alberto's motion is granted because any evidence regarding Alberto's purported wrongful efforts to influence the Trustee to suspend the License, including alleged improper secret dealings between Alberto and Bank One, is irrelevant given Judge Lindberg's grant of summary judgment in favor of Alberto on Sunstar's tortious interference with contract claim and inducement of breach

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                           Page 11
Not Reported in F.Supp.2d, 2004 WL 1899927 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

of fiduciary duty claim. Any evidence of purported wrongful conduct by Alberto to influence the Trustee is also irrelevant given this Court's ruling in connection with Alberto's first motion in limine that the reasonableness of the Trustee's conduct in suspending the License is no longer an issue for trial.

c. Alberto also argues that any testimony or argument suggesting that Sunstar has complied with the requirements of the 1980 Agreements for it to use the Licensed Trademarks because it complied with the statutory requirements for use under Japanese law should be excluded as inconsistent with Judge Lindberg's ruling that Sunstar is contractually obligated to make continuous use of each of the Licensed Trademarks. Alberto's argument is sustained. Sunstar argues that Judge Lindberg did not hold that Sunstar is contractually obligated to use each of the Licensed Trademarks continuously. In ruling on Sunstar's claim that Alberto is not entitled to have the License Agreement and the Trust structure terminated and the trademarks transferred to itself, Judge Lindberg stated that "[i]t is a factual dispute as to whether Sunstar has complied with the obligation to keep the Licensed VO5 Mark in continuous use." 11/7/02 Memo. and Order at 5. This Court interprets Judge Lindberg's opinion as necessarily holding that the Trust Agreement creates a continuous use obligation, not just an obligation to satisfy Japanese statutory use requirements.

*13 d. Alberto further seeks to exclude evidence of Alberto's contacts with Bank One, including correspondence between Alberto and Bank One, business dealings between them, a meeting they had regarding this dispute, Alberto's indemnification agreement with Bank One, and the joint defense of this matter because such evidence is inconsistent with Judge Lindberg's ruling that Alberto's actions related to this dispute did not constitute tortious interference with the contract between Sunstar and Bank One. Sunstar responds that such evidence is relevant to the jury's determination of whether the "based upon reasonable ground" condition of § V of the License Agreement was satisfied. Because this Court has ruled in connection with Alberto's first motion in limine that the reasonableness of Bank One's actions with respect to the suspension are not an issue for trial, Alberto's motion is granted in this regard.

e. Alberto next argues that evidence suggesting that Alberto's actions related to this dispute are a mere pretext for it to re-enter the Japanese market should be barred as inconsistent with Judge Lindberg's grant of summary judgment in favor of Alberto on Sunstar's claim for inducement of breach of fiduciary duty. Sunstar asserts that evidence of Alberto allegedly "seeking to re-enter the Japanese market and regain control of the Japanese VO5 trademarks back from Sunstar" is relevant for two reasons. First, such evidence is pertinent to the jury's determination of whether the "based upon reasonable ground" condition precedent was satisfied. Second, such evidence is relevant and admissible for the purpose of impeaching Alberto's executives by establishing that they are not disinterested. Alberto's argument is sustained in part and overruled in part.

Sunstar's first argument for admissibility of evidence and argument that Alberto's actions related to this dispute are a mere pretext to re-enter the Japanese market is rejected because the issue of whether Bank One's suspension of Sunstar's license rights was "based upon reasonable ground" is not an issue for trial. Sunstar is allowed, however, to introduce evidence of Alberto's desire to re-enter the Japanese market to show potential bias of Alberto's testifying executives.

The Court rejects Alberto's assertion that in granting summary judgment on Sunstar's tortious inducement of breach of fiduciary duty, Judge Lindberg rejected evidence regarding Alberto's purported wrongful intent for all purposes. Judge Lindberg ruled:
Sunstar claims Alberto's claimed good faith is a fact issue, that a fact-finder can reasonably infer from the evidence that Alberto was not in fact acting to protect a contingent interest in the Trademarks but rather was raising a supposed concern about the Trademarks as a pretext for its real interest of engineering a return to the Japanese market that it gave up 22 years ago. However, this seems conjecture, and does not rise to the level of evidence on which a reasonable jury could find for [Sunstar].

*14 11/7/02 Memo. and Order at 13. Judge Lindberg's ruling must be considered in the context of the issue before him at the time. He held that evidence that Alberto's actions related to this dispute are "a pretext for its real interest of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 12
Not Reported in F.Supp.2d, 2004 WL 1899927 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

engineering a return to the Japanese market that it gave up 22 years ago" did not rise to a level of evidence on which a reasonable jury could find for Sunstar on its inducement of breach of fiduciary duty claim. Nothing in Judge Lindberg's ruling prevents Sunstar from using evidence of Alberto's alleged desire to re-enter the Japanese market as a basis for impeachment of Alberto's executives at trial.

f. Alberto next seeks to bar argument, testimony, and trial exhibits to suggest that Sunstar's use of the 1999 Mark was permitted under Section 9.3 of the Basic Sales Agreement. Alberto argues that Sunstar's evidence is irrelevant under Judge Lindberg's ruling on Count V of Sunstar's Amended Complaint. Alberto also requests that the Court rule that Section 9.3 is inconsistent with Sunstar's *senyo-shiyoken* arguments. Sunstar responds that it will not argue that its use in Japan of the 1999 Mark was authorized by § 9.3 of the Basic Sale Agreement. Rather, with regard to § 9.3 of the Basic Sale Agreement, Sunstar intends to argue that the wording of this provision "circumstantially corroborates" Sunstar's position as to the intended scope of the license grant. Alberto's request is denied.

In Count V of its Amended Complaint, Sunstar sought a declaration that under Section 9.3 of the Basic Sale Agreement, it can "freely use 'any variation' of the Japanese VO5 Trademarks in Japan." Section 9.3 of the Basic Sale Agreement states that: "[Sunstar] shall not, except for purpose of defending the Trademarks in Japan, register any new trademarks containing the names Alberto, Alberto VO5 or VO5 or any of the names or marks set forth in Appendices I or II, or any variation of any of the foregoing, in Japan and [Sunstar] shall not attempt to use or register any of the Trademarks anywhere else in the world, except with the written consent of Alberto." Sunstar points out that this language specifically prohibits both "use" and "regist[ration]" of VO5 trademarks by Sunstar outside of Japan, but within Japan this section only prohibits Sunstar from "register[ing] any new trademarks containing the names Alberto, Alberto VO5 or VO5 or any of the names or marks set forth in Appendices I or II, or any variations of any of the foregoing." According to Sunstar, the "drafting of § 9.3 in this way reflects the parties' understanding that under Sunstar's *senyo-shiyoken* license grant Sunstar would

be able to use in Japan certain new VO5 marks or certain variations on existing VO5 marks, because it was necessary that § 9.3 not conflict with or seem to contradict Sunstar's contractual *senyo-shiyoken* license right to *use* such marks in *Japan"* Sunstar's Memo. at 9.

Judge Lindberg granted summary judgment in favor of Alberto on Count V of Sunstar's Amended Complaint and ruled as follows:
**\*15** The scope of the grant allows Sunstar, the Licensee, to use only the specific VO5 Marks identified in the Appendices. The absence of an express 'negative covenant' in the License barring Sunstar from using other marks does not expand this grant to modified versions of the Licensed Trademarks. The license is a limited grant of authority to use the trademark in a defined way. Another use is not authorized by the grant and is a breach.... Sunstar's interpretation would render meaningless all references to the "Licensed Trademarks" and the specific identification of the 13 Licensed VO5 Marks in the License. The law will not construe contractual provisions as meaningless.... Therefore, the Court grants Alberto's motion for summary judgment on Sunstar's Count V.

11/7/02 Memo. and Order at 15. Judge Lindberg rejected Sunstar's claim regarding § 9.3 as pled in Count V of the Sunstar's Amended Complaint. He did not address § 9.3 in regard to any other claim or issue raised by Sunstar. Judge Lindberg did not hold that § 9.3 had no relevance to the remaining issue of what the parties intended by inclusion of *senyo-shiyoken* in the License Agreement.

g. Alberto next argues that any argument or testimony suggesting that the 1999 Mark is a Licensed Trademark or that use of the 1999 Mark satisfies the use requirement of the Licensed Trademarks should be excluded as irrelevant and inconsistent with Judge Lindberg's findings. Alberto's argument is sustained. Sunstar has stated that it will not seek to argue at trial that the 1999 Mark is a Licensed Trademark. Judge Lindberg has ruled that Section 3 of the Trust Agreement requires Sunstar to keep the Licensed VO5 Trademarks in continuous use. *See* 11/7/02 Memo. and Order at 5. Judge Lindberg therefore rejected any argument that Section 3 of the Trust Agreement only contained a statutory compliance obligation. As Alberto correctly

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                Page 13
Not Reported in F.Supp.2d, 2004 WL 1899927 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

argues, it necessarily follows that use of the 1999 Mark cannot constitute use of the Licensed Trademarks under § 3 of the Trust Agreement. Any argument that use of the 1999 Mark satisfies Sunstar's "continuous use" obligation under § 3 of the Trust Agreement is barred.

h. Alberto also argues that Sunstar should be barred from arguing and offering evidence suggesting that its use of the 1999 Mark constitutes use of the Licensed Trademarks and therefore, inures to the benefit of the Trustee. Alberto's argument is sustained. Sunstar concedes that Judge Lindberg rejected Sunstar's argument that use of the 1999 Mark insures to the benefit of the Trustee because the 1999 Mark is not a Licensed Trademark and the License provides that "all use of Licensed Trademarks by Licensee shall inure to the benefit of Licensor." 11/7/02 Memo. and Order at 15-16.

i. Alberto further seeks to exclude any argument or evidence that in connection with this dispute, the Trustee engaged in actions which constitute breach of contract, breach of fiduciary duty, or waste of assets. Alberto's request is granted because Judge Lindberg granted summary judgment in favor of Bank One on Sunstar's claims of breach of contract, breach of fiduciary duty, and waste of trust assets. 11/7/02 Memo. and Order at 17-18.

**\*16** j. Lastly, Alberto argues that argument and evidence regarding use of VO5 Marks by Alberto outside of Japan should be barred from trial. Alberto's argument is overruled. Alberto contends that Sunstar intends to offer evidence regarding Alberto's worldwide trademark usage guidelines and specimens and to argue that use of the 1999 Mark does not damage Alberto outside of Japan. Sunstar makes clear in its opposition that it will not argue at trial that Alberto's use in Japan of the 1999 Mark does not damage Alberto outside of Japan. Alberto's assertion that its trademark practices and usage outside of Japan are irrelevant to the remaining issues in this case is not accurate. Judge Lindberg ruled that Sunstar's fifth affirmative defense raised genuine issues for trial, including the issue of whether "Alberto's claims of injury from use of the 1999 Marks are inconsistent with the fact that Alberto knowingly acquiesces in the use of various VO5 trademarks around the world that deviate from Alberto's own worldwide trademark guidelines." 11/7/02

Memo. and Order at 11.

8. *"Naked License Defense"*

Alberto's eighth motion in limine seeks an order barring argument, evidence, or testimony that the license agreement constitutes a "naked license" or that the licensed marks are otherwise invalid. Alberto insists that the doctrine of "licensee estoppel" prevents Sunstar from raising a naked licensing defense at trial. Sunstar contends that Alberto's licensee estoppel argument was considered and rejected by Judge Lindberg in the summary judgment ruling. Sunstar alternatively argues that even if the licensee estoppel doctrine is applicable here, "that doctrine does not eliminate the 'naked license' defense as a matter of law so as to warrant exclusion of all 'naked license' evidence." Sunstar's Memo. in Opp. at 13. Alberto's motion is granted.

Sunstar maintains that the 1980 Agreements are a naked license, meaning that they licensed marks to Sunstar without control over the quality of products offered by Sunstar. A licensor who issues a naked license abandons the trademark. *TMT North America, Inc. v. Magic Touch GmbH,* 124 F.3d 876, 885 (7th Cir.1997). According to Sunstar, "the 1980 Agreements do not contain any provisions dictating or controlling the specific hair car products that Sunstar can sell in Japan under the VO5 brand pursuant to its trademark license, or the quality, ingredients or formulations of any such products, or the manufacturing processes to be used in manufacturing such products." Sunstar Memo. in Opp. at 4. Alberto responds that under the doctrine of licensee estoppel, Sunstar is estopped to deny the validity of Alberto's trademark rights by claiming lack of quality control during the terms of the license. The doctrine of licensee estoppel "stops a licensee from contesting 'the validity of the licensor's title during the course of the licensing arrangement.' " *Westco Group, Inc. v. K.B. & Associates, Inc.,* 128 F.Supp.2d 1082, 1088 (N.D.Ohio Jan.24, 2001) (*quoting Professional Golfers Ass'n of America v. Bankers Life & Casualty Co.,* 514 F.2d 665, 670 (5th Cir.1975)).

**\*17** Both sides briefed and argued the issue of whether licensee estoppel barred Sunstar's naked license defense to infringement during the summary judgment briefing.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 14
Not Reported in F.Supp.2d, 2004 WL 1899927 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Sunstar moved for summary judgment on its declaratory claim that it could not have infringed under § IV of the License Agreement in part by relying on the naked license defense raised in its fourth affirmative defense. Sunstar SJ Memo. at 17-20. Alberto responded by arguing that Sunstar was estopped as a matter of law under the doctrine of licensee estoppel from attacking the License as a naked license. Alberto Memo. in Opp. at 17-18. In reply, Sunstar argued that only a licensor may assert a licensee estoppel defense to fend off a naked license challenge. Sunstar Reply at 11. Sunstar similarly opposed Alberto's summary judgment motion against Sunstar on Alberto's infringement claim by arguing that the agreements here amounted to a prohibited naked license. Sunstar Memo. in Opp. at 12, 13, 22. Alberto argued in its reply brief that Sunstar's naked license argument was barred as a matter of law by licensee estoppel.

In denying Alberto's summary judgment motion on its infringement claims, Judge Lindberg held that there was not enough evidence to conclude as a matter of law that Sunstar's use of the 1999 Mark was likely to cause confusion. 11/7/02 Memo. and Order at 11-12. In reaching this conclusion, Judge Lindberg made no reference to Sunstar's naked licensing defense or the doctrine of licensee estoppel. In denying Sunstar's motion for summary judgment on Alberto's trademark infringement claims, Judge Lindberg rejected Sunstar's argument that it could not be found guilty of infringement as a matter of law because the agreements were naked license agreements. Judge Lindberg held that Alberto presented sufficient evidence to raise a genuine issue of material fact regarding whether Alberto "had the necessary quality control"11/7/02 Memo, and Order at 6-8.

Sunstar argues that in holding that issues of fact existed with respect to Sunstar's naked license defense, the Court necessarily considered and rejected Alberto's claim that such defense was precluded as a matter of law by the licensee estoppel doctrine. It is clear that if Judge Lindberg had found that the licensee estoppel doctrine precluded Sunstar's naked license defense as a matter of law, he would not have had to reach the issue of whether a genuine issue of fact existed with respect to Sunstar's naked license defense.

It may have been more efficienT to address the legal issues before sending a case to trial. This does not mean, however, that by holding that genuine issues of material fact exist with respect to whether Alberto had the necessary quality control, Judge Lindberg necessarily rejected Alberto's licensee estoppel argument. In the absence of a single reference to the licensee estoppel doctrine in Judge Lindberg's opinion, this Court is unwilling to assume that Judge Lindberg rejected Alberto's licensee estoppel argument.

**\*18** Moreover, Sunstar's naked license defense is barred as a matter of law. Illinois law recognizes that a trademark licensee is estopped from disputing the validity of the licensor's trademarks. *Lums Restaurant Corp. v. Bloomington Restaurant Investments, Inc., 92 Ill.App.3d 1143, 48 Ill.Dec. 478, 416 N.E.2d 751, 753 (Ill.App.1981)* (citing *Smith v. Dental Products Co., 140 F.2d 140* (7th Cir.1944)). "The basis for this rule is that a licensee who freely enters into a license and pays royalties or agrees to the limitations imposed by a licensor effectively recognizes that the licensor possesses a valid trademark." *Chrysler Motors Corp. v. Ally Automotive Co., Inc., 661 F.Supp. 191, 192-92 (N.D.Ill.1987)* (*citing Smith, 140 F.2d at 148).* In addition, "[t]he majority of courts ... have found that the doctrine of licensee estoppel bars a licensee from asserting a naked licensing defense." *Westco Group, 128 F.Supp.2d at 1089* (*citing Creative Gifts, Inc. v. UFO, 235 F.3d 540, 547-48* (10th Cir.2000)) (Hon. Milton I. Shadur, U.S.D.J ., sitting by designation); *see also Big Boy Restaurants v. Cadillac Coffee Co., 238 F.Supp.2d 866, 873-74 (E.D.Mich.2002); Bunn-O-Matic Corp. v. Bunn Coffee Service, Inc., 88 F.Supp.2d 914, 927 (C.D.Ill.2000); STX, Inc. v. Bauer USA, Inc., 1997 WL 337578, at \*11 (N.D.Cal. June 5, 1997).* "The leading commentators have likewise found the doctrine of licensee estoppel applicable to naked licensing claims." *Id.* Accordingly, Sunstar is precluded from challenging the validity of the trademarks licensed to Sunstar, including raising its naked license contentions. [FN8]

> FN8. Sunstar's argument, mentioned only in passing and without citation to any supporting authority, that Alberto lacks standing to assert the licensee estoppel doctrine because it is not the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                          Page 15
Not Reported in F.Supp.2d, 2004 WL 1899927 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

licensee is also rejected. Alberto is entitled to assert licensee estoppel. Alberto is a party to the 1980 Agreements and has a contractually agreed right to enforce the license.

Finally, Sunstar argues that even if this Court concludes that the licensee estoppel doctrine is applicable here, "that doctrine does not eliminate the 'naked license' defense as a matter of law so as to warrant exclusion of all 'naked license' evidence." Sunstar Memo. in Opp. at 13. Sunstar points out that "licensee estoppel is an equitable doctrine, and a court remains free to consider the particular circumstances of the case, including the nature of the licensee's claim and the terms of the license." Restatement (Third) of Unfair Competition § 33, cmt. d (1995). Sunstar contends that the Court has discretion to decline to apply licensee estoppel but has failed to offer any specific reason why the Court should exercise its discretion not to apply licensee estoppel to the circumstances of this case. Accordingly, Alberto's motion is granted.

### B. *Bank One's Motions in Limine*

#### 1. *The Trustee's Suspension*

Bank One moves to bar evidence and argument on the issue of the correctness, reasonableness, alleged motivation and any other consideration of the propriety of Bank One's suspension of Sunstar's license to use the Licensed Trademarks. Because this Court has already held in ruling on Alberto's first motion in limine that Judge Lindberg's ruling granting summary judgment in favor of Bank One on Sunstar's breach of contract, breach of fiduciary duty, and waste of trust assets claims necessarily included a finding that Bank One acted reasonably in deciding whether to suspend the License Agreement, Bank One's first motion in limine is granted.

#### 2. *Indemnification Agreement; Choice of Counsel; and Bank One-Alberto Relationships*

**\*19** In its second motion in limine, Bank One seeks an order barring the introduction of evidence or argument by Sunstar regarding: (a) an indemnification given by Alberto to Bank One and any payments pursuant thereto; (b) any alleged

failure by Bank One to use reasonable care, skill and caution in selection of a trademark law expert to advise it concerning suspension of Sunstar's license; and (c) business relationships (other than the Trust at issue in this case) between Bank One and Alberto or certain Alberto employees. The admission of this evidence is barred to the extent Sunstar intends to use it to challenge the correctness or propriety of Bank One's suspension of Sunstar's license, which is not an issue for trial. Bank One's motion is granted.

#### 3. *Joint Defense*

Bank One seeks an order barring evidence and argument concerning an assertion of a "joint defense" privilege by Alberto with respect to a memorandum prepared by Alberto's counsel and revealed to Bank One's in-house counsel. Sunstar responds that evidence of a joint defense relationship is relevant to the jury's "determination of whether Bank One's purported suspension was based upon the contractually required 'reasonable ground." ' Sunstar Memo. in Opp. at 2. Bank One's motion is granted as the reasonableness of Bank One's actions with respect to the suspension is not an issue for trial.

#### 4. *Licensee Estoppel*

Bank One's fourth motion in limine seeks an order barring evidence and argument on Sunstar's theory of naked licensing. Bank One's motion is granted. As discussed above, Sunstar is barred as a matter of law by the doctrine of licensee estoppel from asserting a defense of naked licensing.

#### 5. *Sunstar's Motivations for Adopting the 1999 Mark*

Bank One moves to bar evidence and argument at trial relating to Sunstar's alleged motivation for adoption of the 1999 Mark as irrelevant to the remaining issue of whether Sunstar's use of the 1999 Mark constitutes a breach of the 1980 Agreements. Bank One's motion is granted. In granting Alberto's second motion in limine, this Court held that evidence of Sunstar's reason or justification for adopting the 1999 is irrelevant and even if minimally relevant as "background" information, the potential for unfair prejudice outweighs its slight probative value.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 16
Not Reported in F.Supp.2d, 2004 WL 1899927 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

6. *Japanese Law*

Bank One seeks an order barring evidence and argument concerning certain matters of Japanese law, namely: (1) that Article 50(1) of the Japanese Trademark Law ("JTL"), as amended in 1996, supports the opinion that a *senyo-shiyoken* licensee of a registered trademark has the right to use a range of trademarks; and (2) that Japanese court decisions support the opinion that a *senyo-shiyoken* licensee of a registered trademark has the right to use a range of trademarks. Sunstar responds in part that Judge Guzman has already rejected Bank One's current arguments in denying Alberto and Bank One's Motion for Determination of Japanese Law. Bank One's motion is denied.

**\*20** In their Motion for a Determination of Japanese Law, Alberto and Bank One sought a ruling as a matter of law that Japanese trademark law does not expand the scope of the license grant in the License Agreement and thus, an order holding that Sunstar's use of the 1999 Mark breaches the 1980 Agreements. Alberto and Bank One argued that: (1) under Article 30(2) of the JTA, the licensee acquires only a right to use a "registered trademark" limited by the contract granting the license; (2) Article 50(1) of the JTA has no applicability to construing a license under Article 30(2); and (3) Article 70(1) of the JTA confirms that "registered trademark" is to be narrowly construed. Alberto/Bank One's Memo. in Support of Their Mo. for Determination of Japanese Law at 7-14. Bank One makes these same exact arguments in its sixth motion in limine. Bank 1 Memo. in Support of its Sixth Motion in Limine at 4-8.

Judge Guzman denied the Alberto/Bank One motion and declined to determine as a matter law what a *senyo-shiyoken* license is under Japanese trademark law and what rights, if any, registration of an exclusive license as a *senyo-shiyoken* with the JPO gives the licensee beyond those stated in the License Agreement. Judge Guzman ruled:
In an attempt to affix meaning to the term *senyo-shiyoken,* the parties point the Court to the Japanese Trademark Act and thrust upon the Court numerous expert reports, declarations, and deposition transcripts purporting to clarify the term's meaning. Yet, even the experts disagree on the

scope of the rights granted by a *senyo-shiyoken* license under Japanese law, *i.e.,* whether the term conveys to a licensee the full range of use rights inherent in the registered trademarks under Japanese law or whether a licensee's rights are limited to exclusive use of specific, registered marks only. Clearly, then, the term is ambiguous and reasonably susceptible to different constructions. Therefore, the parties' intent as to the meaning of the term *senyo-shiyoken* as used in the License Agreement is an issue to be determined by the jury at trial.

9/30/03 Memo. Opinion and Order at 7.

By requesting an order barring evidence and argument indicating that Article 50(1) supports Sunstar's position that a *senyo-shiyoken* licensee of a registered trademark has the right to use a range of trademarks, Bank One seeks the same relief it did in its prior motion-namely, that as a matter of law Sunstar's position regarding the scope of the license is contrary to Japanese law. Judge Guzman has declined to decide as a matter of law whether Sunstar's position regarding the substance of Japanese law is correct or incorrect. Any request for reconsideration of that decision should be directed to Judge Guzman.

Bank One also seeks to bar evidence and argument concerning three Japanese court decisions, one dated 1978 and two dated 1990, which Sunstar contends support its position that a *senyo-shiyoken* licensee of a registered trademark has the right to use a range of trademarks. Bank One's request is denied. Bank One first argues that Japan is a civil law county and that court decisions in Japan do not constitute binding precedent. For the reasons stated in Sunstar's memorandum, the Court is not persuaded that Japanese court decisions are irrelevant to analyzing issues of Japanese law even if they do not constitute binding precedent. Bank One next argues that the three Japanese court decisions should be excluded because none relate to the rights of a *senyo-shiyoken* licensee but rather deal with cancellation issues. Bank One concludes that for the same reasons that testimony and argument regarding the definition of "registered trademark" used in the context of cancellation proceedings is improper, testimony and argument about cases discussing cancellation issues likewise is improper. Again, Judge Guzman has refused to

Westlaw.

Not Reported in F.Supp.2d                                                                      Page 17
Not Reported in F.Supp.2d, 2004 WL 1899927 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

determine as a matter of law whether Sunstar's position regarding Japanese law and specifically, the applicability of Article 50(1) is incorrect. This Court declines to reconsider Judge Guzman's decision.

**\*21** Bank One further contends that two of three court decisions Sunstar seeks to introduce in evidence were decided after 1980. Judge Guzman has ruled that "the rights inherent in a trademark registered as *senyo-shiyoken* under Japanese trademark law at the time the parties entered into the License Agreement [in 1980] is relevant to, but not determinative of, the parties' intent." 9/29/03 Memo. Opinion and Order at 9. Judge Guzman further ruled that reference to or interpretation of the Japanese Trademark Act by the parties' experts is relevant to determining what the parties could reasonably have intended by inclusion of the term *senyo-shiyoken* in the License Agreement. *Id.* Pursuant to Judge Guzman's ruling, Sunstar's experts are allowed to rely on post-1980 case law to the extent it is helpful in determining the rights inherent in a trademark registered as *senyo-shiyoken* under Japanese trademark law in 1980. Finally, Bank One argues that the court decisions Sunstar relies on are factually distinguishable and introducing testimony as to marks in other cases and showing depictions of them will confuse the jury. The Court is not convinced that the threat of confusion envisioned by Bank One justifies exclusion of evidence Judge Guzman has previously deemed relevant.

### C. *Sunstar's Motions in Limine*

#### 1. *1989 Agreements*

Sunstar's first motion in limine involves Rule 408 of the Federal Rules of Evidence. FN9 Sunstar seeks to exclude all evidence relating to certain 1989 agreements between Sunstar and Alberto as settlement material inadmissible under Fed.R.Evid. 408 and for similar reasons also under Fed.R.Evid. 401, 402, and 403. Alberto responds that none of the subject evidence constitutes settlement materials under Rule 408 and, even if it did, is admissible under exceptions to Rule 408. Bank One also opposes Sunstar's motion. Bank One contends that it intends to offer evidence relating to Sunstar's and Alberto's dispute over the 1989 Marks and the 1989 Letter Amendment to show that

Sunstar expressed no belief in 1989 when the issue arose, that *senyo-shiyoken* would expand its right to use trademarks beyond the Licensed Trademarks. Sunstar's motion is granted in part and denied in part.

> FN9. Federal Rule of Evidence 408 provides, in relevant part:
> Evidence of ... accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to provide liability for invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

Sunstar states that in or around 1988, it began using one or more new VO5 designs (the "1989 Marks") on some of its products in Japan. Alberto objected. According to Sunstar, the situation "rapidly escalated into an intense exchange of letters between counsel for the two companies" in July and August of 1988. Sunstar's Motion at 3. In early September 1988, "cooler heads began to prevail, and the parties moved from arguing the legal merits of the situation to working amicably toward a negotiated resolution of the dispute." *Id.* at 4. On September 7, 1988, Sunstar's counsel wrote to the trustee stating, "Whereas one alternative is to refer the disagreement as to the interpretation of the License Agreement to court for decision, the top executives of Sunstar would like to settle this matter amicably to maintain good relationship between Sunstar and Alberto-Culver Company." *Id.,* Ex. 20. Sunstar's counsel proposed a "face-to-face meeting" to discuss their dispute and other subjects toward the end of September 1988. *Id.* On that same day, Sunstar's counsel also wrote to Alberto's general counsel and similarly stated: "While it is one alternative to refer the dispute to judgment by court, the top executives of Sunstar prefer solving the subject issue in a businesslike manner, if feasible, to maintain good relationship with your esteemed company." *Id.,* Ex. 21. Sunstar's president then had several days of meetings with Alberto's chairman and then-president at Alberto's offices in Chicago at the end of September 1988. *Id.* at 5. "Thereafter, over a period of months, the parties had a series of meetings and

Westlaw.

Not Reported in F.Supp.2d                                                                                   Page 18
Not Reported in F.Supp.2d, 2004 WL 1899927 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

communications to draft and negotiate the details of the formal agreement that would implement the agreed-upon framework for resolving the dispute." *Id.* The parties finalized two written agreements on February 8, 1989: (1) the 1989 License and Know-How Agreement and (2) the 1989 Side Letter Agreement.

**\*22** Sunstar argues that all communications between the lawyers relating to the 1989 Marks, through the initial meetings of the company leaders in Chicago, through the execution of the 1989 Agreements are protected by Rule 408, as are the substantive terms of those Agreements. Rule 408 excludes evidence of "conduct or statements made in compromise negotiations." Conduct or statements not a part of compromise discussions are not subject to Rule 408. Sunstar must show that the discussions in question were made in compromise negotiations. *New Burnham Prairie Homes, Inc. v. Village of Burnham,* 910 F.2d 1474, 1482 (7th Cir.1990) (holding letter properly excluded under Rule 408 where "[t]here was a substantial showing that the letter was part of a settlement attempt.").

The statements made in the pre-September 7, 1988 correspondence between Alberto and Sunstar were not part of settlement negotiations nor were they offers to compromise. On their face, these letters do not offer to compromise Alberto's claim that Sunstar's use of new VO5 designs violated the 1980 Agreements. These letters also fail to contain any suggestion of compromise. The letters from Alberto as well as Bank One's August 10, 1988 letter (Exh. 18 to Sunstar's Motion) consist of cease and desist demands and set forth Alberto's and Bank One's positions regarding whether the use of the 1989 Marks was prohibited or allowed by the 1980 Agreements. *See Winchester Packaging, Inc. v. Mobil Chemical Co.,* 14 F.3d 316, 319-20 (7th Cir.1994) (stating a demand for payment accompanied by a threat of legal action is not a settlement offer or a part of settlement negotiations excludable under Rule 408); *Hanson v. Waller,* 888 F.2d 806, 813-14 (11th Cir.1989). Sunstar's responses asked what provisions of the 1980 Agreements Sunstar's actions violated and set forth its position regarding the proper interpretation of the 1980 Agreements. There are no offers to settle nor any indication that any party is willing to settle in the pre-September 7,

1988 correspondence. The first indication of a willingness to settle came in Sunstar's counsel's September 7, 1988 letters to the trustee and Alberto's general counsel.

The cases cited by Sunstar do not compel a different result. *Pierce v. F.R. Tripler & Co.,* 955 F.2d 820, 827 (2d Cir.1972), indicates only that attorney threats of litigation accompanied by an offer to compromise is presumably inadmissible under Rule 408. The excluded attorney communication in *Pierce* included a job offer "conditioned on the release of Pierce's claims, which is another way of saying that the job offer was an attempt to compromise a claim." *Id.* The *Pierce* court held that the plain language of Rule 408 barred evidence of the job offer. Here, the pre-negotiation correspondence as well as Bank One's August 10, 1988 letter do not contain any attempt to compromise Alberto's claim that Sunstar's use of new VO5 designs violated the 1980 Agreements.

**\*23** In *Davis v. Rowe,* 1993 WL 34867 (N.D.Ill. Feb.10, 1993), also cited by Sunstar, the Court granted defendants' motion in limine to exclude three items under Rule 408. The first two items were a letter from defendant to its insurer after a fire setting forth the value of the art collection, including projected sales, and a sworn statement from the defendant providing the projected sales figures. The district court found that the communications were part of a negotiation effort because "[t]he relationship between a claimant and its insurer is inherently adversarial and can generally be assumed to be clothed in continual negotiation and conciliation efforts." *Id.* at *3. The court also excluded a third item which was a letter from the defendant to the plaintiff which included a request for a release from liability in exchange for a payment of $250,000. The *Davis* court had no trouble concluding that this letter was written as part of a negotiation effort in an attempt to settle a dispute. *Id.* at 4. In contrast, no assumption that compromise negotiations were occurring during the pre-September 7, 1988 correspondence between Alberto and Sunstar and no explicit offer to settle for an amount in exchange for a release of liability occurred during this correspondence. FN10

> FN10. Sunstar's remaining citations similarly fail to aid its attempt to bar admission of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw.**

Not Reported in F.Supp.2d                                                        Page 19
Not Reported in F.Supp.2d, 2004 WL 1899927 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

pre-September 7, 1988 correspondence. In *Kritikos v. Palmer Johnson,* 821 F.2d 418, 423 (7th Cir.1987), the Seventh Circuit held that the trial judge improperly admitted two letters written by plaintiff's representative to the plaintiff because they were written "with the objective of advising the plaintiff of [a] possible compromise solution before legal action was commenced." One letter detailed a specific compromise solution for the plaintiff to consider in an attempt to reconcile the differences between the parties, and the second letter clarified what was said in the first letter. *Affiliated Mfrs., Inc. v. Aluminum Co. of Am.* 56 F.3d 521, 526 (3d Cir.1995), held that the district court properly construed Rule 408's exclusion as applying to less formal stages of a dispute short of threatened or contemplated litigation; (2) found that a dispute existed between the parties as of May 1, 1990 and that the documents at issue evidenced attempts to compromise the dispute; and (3) found that internal memoranda prepared as a basis for settlement negotiations and not communicated to the opposing party were excluded under Rule 408. Again, in sharp contrast, no possible compromise solution or attempt to compromise appears in any of the pre-September 7, 1988 correspondence in the present case.

With respect to the admissibility of post-September 6, 1988 statements and conduct under Rule 408, Professors Wright and Graham have considered this precise situation in their Federal Practice and Procedure treatise. They identified the issue as "whether Rule 408 bars evidence that there were no offers of compromise, or more realistically, that certain statements were not made during compromise negotiations." Wright & Graham, Federal Practice and Procedure: Evidence § 5308, at 239 (1980). Professors Wright and Graham then give the following illustration: "[S]uppose that in a dispute over the meaning of a contract, one of the parties offers evidence that during attempts to settle the disagreement his adversary never advanced the construction of the contract that he is now urging on the jury." *Id.* Wright and Graham noted that such evidence would be circumstantial evidence of offers to compromise but

concluded that Rule 408 does not prohibit admission of evidence that certain statements were not made during compromise negotiations. "Read literally, Rule 408 would not seem to prohibit evidence that an offer of compromise was not made or that certain statements were not made during negotiations. Nor does there seem any strong policy reason for departing from the literal interpretation." *Id.* The parties have not cited, and this Court has not found, any case addressing whether Rule 408 bars evidence that certain statements were not made during compromise negotiations to show that the current meaning assigned to a contractual phrase by the opposing party was an afterthought. In the absence of any case authority addressing this precise issue, this Court follows the approach suggested by Professors Wright and Graham and finds that statements and conduct post-September 6, 1988 are admissible to show that during the parties' dispute regarding the 1989 Marks, Sunstar did not take the position that the *senyo-shiyoken* provision allowed it to use a mark other than the Licensed Trademarks.

**\*24** Alternatively, Sunstar argues that all evidence relating to the 1989 Agreements is barred by Rules 401-403. Sunstar's failure to assert in pre-September 7, 1988 correspondence with Alberto that it was allowed to use the 1989 Mark pursuant to the *senyo-shiyoken* provision is highly probative in that it undercuts Sunstar's current position that *senyo-shiyoken* was intended in 1980 to allow Sunstar to use trademarks in addition to the Licensed Trademarks specified in the License grant. If there is any prejudicial impact to Sunstar from the pre-September 7, 1988 correspondence it is negligible and clearly does not outweigh the probative value, as required by Rule 403. Evidence of post-September 6, 1988 statements to show that Sunstar did not take a certain position during compromise negotiations is needlessly cumulative and thus, has little probative value. Moreover, evidence of settlement negotiations and the 1989 Agreements poses a threat of unfair prejudice. There exists a danger that such evidence could lead the jury to improperly conclude that the 1989 settlement implies a concession of contractual liability for using any VO5 trademark variation in Japan.[FN11]

[FN11.] Sunstar's attempt to justify exclusion of the

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 20
Not Reported in F.Supp.2d, 2004 WL 1899927 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

pre-September 7, 1988 correspondence on the basis that the jury will be confused and misled "by the introduction of partial evidence concerning that dispute without sufficient context or explanation, and might infer liability in the present dispute based on an incomplete understanding of the facts concerning the earlier dispute" is unpersuasive. Sunstar's Reply at 15. The Court is confident the jury will be able to give appropriate consideration to this correspondence as it bears on the intent of the parties in 1980 only and will not infer liability in the present dispute based on the mere existence of a prior dispute. Sunstar's request to offer a limiting instruction is granted.

### 2. *Single Expert Witness on Matters of Japanese Law*

Sunstar next moves for an order limiting Alberto and Bank One collectively to a single expert witness at trial on matters of Japanese law. Alberto proferred expert reports on matters of Japanese law by Professors Hidetaka Aizawa and Akihiko Hara. Bank One proferred an expert report on matters of Japanese law by David S. Guttman, Esq. Alberto listed both of its Japanese law experts as witnesses in the Final Pretrial Order. Bank One listed Mr. Guttman as a trial witness for Bank One. Sunstar's motion is granted in part and denied in part.

Alberto and Bank One first assert that the Court has already determined that Alberto's experts and Bank One's expert may testify at trial. None of the cited materials indicate that Judge Lindberg or Judge Guzman has definitely ruled that Alberto's experts and Bank One's expert may testify at trial. Alberto also argues, without citation to any authority, that Sunstar's objection to multiple experts on Japanese law testifying at trial comes too late because multiple experts on Japanese law have appeared during discovery and motion practice in this case. The prohibition against multiple experts on the same subject matter is not a rule pertaining to the discovery or motion practice stages of the case. Rather, it is a rule governing the trial stage of the case. *Commonwealth Ins. Co. v. Stone Container Corp.*, 2002 WL 385559, at *6 (N.D.Ill. March 12, 2002) (stating "While it is generally the practice in this district to prohibit a party from offering multiple experts to express the same opinions on a

subject, there is no general practice or rule that prohibits a party from identifying under Fed.R.Civ.P. 26(a)(2) more than one testifying expert on a subject and reserving for later the decision as to which one to use at trial."). Sunstar timely objected to Alberto's naming of two experts on Japanese law in the final pretrial order.

**\*25** As noted above, this district generally prohibits a party from offering multiple experts to express the same opinions on a subject. This Court's standard form of Final Pretrial Order, Form LR 16.1.1, footnote 7 to Item 2(e) states, in relevant part: "Only one expert witness on each subject for each party will be permitted to testify absent good cause shown." Alberto has not demonstrated good cause for deviating from this general rule. Only one of Alberto's experts will be permitted to testify at trial on each subject of Japanese law. This does not mean that Alberto is limited to one testifying expert regarding Japanese law; it is limited to one testifying expert on each subject of Japanese law.

Sunstar also moves under Rule 403 to limit Alberto and Bank One collectively to using a single Japanese-law expert at trial because "allowing testimony from more than one of them would simply be repetitive and cumulative and thus a waste of time for both the Court and the jury." Sunstar Motion at 4. Under Rule 403, the trial court may exclude relevant evidence on grounds of "undue delay, waste of time, or needless presentation of cumulative evidence." Multiple expert witnesses expressing the same opinions on a subject is a waste of time and needlessly cumulative. It also raises the unfair possibility that jurors will resolve competing expert testimony by "counting heads" rather than evaluating the quality and credibility of the testimony.

The Court therefore rules that Mr. Guttman's testimony will be permitted to the extent it is not duplicative of the testimony of Alberto's expert(s) on Japanese law. Bank One contends that the reports of Alberto's and Bank One's experts are not merely cumulative. Bank One gives two examples of points made by its expert Mr. Guttman not covered by Alberto's experts. *See* Bank One's Memo. at 12. Testimony regarding these two points is not cumulative and will be permitted to the extent it is otherwise admissible. FN12

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw.**

Not Reported in F.Supp.2d                                                                 Page 21
Not Reported in F.Supp.2d, 2004 WL 1899927 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

FN12. Sunstar contends that these points by Mr. Guttman are "extraneous." Sunstar's Reply at 14 n.6.

Finally, Alberto and Bank One complain that it is unfair that Sunstar's testifying expert plans to incorporate in his expert testimony the expert opinions of Sunstar's other expert. There is nothing improper about one expert adopting and incorporating the opinions of another expert so long as it is made clear in the expert report. Alberto and Bank One could have done the same thing. Alberto and Bank One knew long before they submitted their expert reports in October 2003 that Sunstar's expert, Professor Port, had adopted and incorporated the opinions of Professor Doi. *See* May 29, 2002 Expert Declaration of Professor Port at ¶ 14 and Expert Report of Professor Port at ¶ 1.

### 3. *Bank One's Japanese-Law Expert, David S. Guttman*

Sunstar's next motion in limine also involves expert testimony. Sunstar moves for an order excluding any expert testimony by David S. Guttman, the expert witness on matters of Japanese law proffered by Bank One under Fed.R.Evid. 702. Sunstar argues that Mr. Guttman's testimony is improper because: (1) he makes and relies upon legal interpretations of the parties' agreements that directly contradict prior holdings of this Court and (2) he makes or assumes (and then relies upon) factual findings as to matters outside the subject-matter area of his claimed expertise and which this Court previously held were required to be determined by the jury at trial. Sunstar states that this is not a *Daubert* motion but rather, it seeks "to reaffirm certain fundamental principles about the proper role of expert testimony, which Bank One's proffer of Mr. Guttman's report flouts at every turn." Sunstar Motion at 2.

*26 In light of the Court's above rulings that the reasonableness of Bank One's conduct in connection with the suspension is no longer an issue for trial and that Mr. Guttman's testimony will only be permitted to the extent it is not duplicative of the testimony of Alberto's expert(s) on Japanese law, the extent of any remaining expert testimony by Mr. Guttman is unclear. Therefore, Sunstar's motion is denied without prejudice to reassertion if necessary after the precise content of Mr. Guttman's testimony, if any, is

determined.

### 4. *Alberto Deposition Exhibit 162 and Any Similar Testimony/Documents*

Sunstar moves for an order excluding from evidence Alberto's Deposition Exhibit 162 and any other potential testimony or documents that are of similar effect or whose offering into evidence is intended for a similar purpose, pursuant to Fed.R.Evid. 402, 403, 404(a), 608(a) and 802. Neither Alberto nor Bank One indicate that it seeks to offer any similar testimony or documents. Sunstar's motion is granted.

Exhibit 162 was used as an exhibit during the deposition taken by Alberto of Junji Masuda, Esq. and was listed on Alberto's proposed trial exhibit list in the Final Pretrial Order. Mr. Masuda is an attorney and member of the bar in both Japan and New York. Mr. Masuda is a partner in the law firm of Masuda & Ejiri, which he founded in 1977. Mr. Masuda represented Sunstar in connection with the negotiation of the 1980 Agreements that are at issue here and has continued to represent Sunstar on various matters since that time. Alberto states that Mr. Masuda requested the insertion of the term *senyo-shiyoken* into the 1980 Agreements.

Exhibit 162 (the "Web Page") is part of a 46-page document entitled "Lawyer's Guide to Japan," dated 1997. The Web Page was printed from the Masuda & Ejiri website. The Web Page states:

Japanese Attitudes Toward Contracts

The Japanese often prefer to include vague contract provisions such as "(certain things) shall be determined by mutual negotiation" rather than explicit provisions which clearly state the rights of each party on every presumable occasion. In fact, the Japanese sometimes ask for things that are completely different from the contract signed. Such attitudes reflect their preference for the flexible implementation of a contract according to the subsequent situations upon the mutual understanding which they believe is implied in the contract. FN13

FN13. The current version of the Web Page

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 22
Not Reported in F.Supp.2d, 2004 WL 1899927 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

provides:

> The Japanese traditionally prefer to include vague contract provisions such as "(certain things)" shall be determined by mutual negotiation" rather than explicit provisions which clearly state the rights of each party on every presumable occasion. Such attitudes reflect a preference for the flexible implementation of a contract according to the subsequent situations upon the mutual understanding which they believe is implied in the contract. However, more and more Japanese, particularly major corporations, are becoming legalistic in the approach towards contracts.

The Web Page is not admissible because it is not relevant. Generalizations about a country's business practices without an adequate connection to the particular transaction at issue are not relevant:

> The problem with Pelham's testimony is that it was simply not relevant to any issue in this case. As the majority correctly notes, none of Pelham's testimony was directly connected to Jinro itself, and none was based on personal knowledge of Jinro or this particular transaction. It is a factual question whether a majority of Korean businessmen act in a certain way, but whether that fact is proven or not, it has no relevancy to show that this particular Korean businessman (or company) is that type of businessman or acted that way in this specific contractual arrangement. No serious effort was made at trial, or in any brief on appeal, to link Pelham's generalized testimony about Korean businessmen and the Korean financial and regulatory landscape to Jinro or the particular transaction at issue here. Thus, under Rule 401 Pelham's testimony was irrelevant and inadmissible because it sheds no light on Jinro's activities in this case.

**\*27** _Jinro Am. Inc. v. Secure Investments, Inc.,_ 266 F.3d 993, 1010-11 (9th Cir.2001) (Wallace, J., concurring in the result). Similarly, the Web Page is not relevant because it says nothing about the particular transaction at issue in this case. Alberto has not adequately linked the Web Page to Masuda, Sunstar, or this particular transaction. Even if it is true that Japanese companies prefer to include vague contract provisions rather than explicit provisions, Japanese

businessmen often ask for things that are completely different from the signed contract, and Japanese businessmen prefer a flexible implementation of a contract, these generalizations do not make it more probable that Masuda and Sunstar acted that way in this particular transaction in 1980.

Alberto asserts that the Web Page is relevant to Sunstar's state of mind and intent in negotiating the 1980 Agreements. Alberto contends that the Web Page reflects the state of mind of a Japanese lawyer representing Japanese clients, about how he and his clients view contract negotiations. Alberto seeks to offer the Web Page to show that "Masuda believed that Japanese businesses negotiate contracts this way and that he negotiated the Agreements and inserted the phrase _senyo shiyoken_ on Sunstar's behalf consistent with this intent." Alberto Resp. at 6 n.7.

Nothing in the record shows that the statements in the Web Page represent the approach of Mr. Masuda in 1980 or that he negotiated the 1980 Agreements in this manner. The statements in the Web Page were written by persons other than Mr. Masuda more than 17 years after the 1980 transaction. Mr. Masuda testified at his deposition that he did not write the material in the Web Page, had no involvement with its preparation, did not know who was involved in its preparation, did not know who had edited it, and had never read it before it was shown to him at his deposition. Masuda Dep. at 186-87. Mr. Masuda further testified that he believed "relatively young lawyers" or "very young lawyers" in his firm wrote the statements contained in the Web Page. _Id._ Mr. Masuda explained that he believed the general statements made in the Web Page pertain to domestic contracts only and not lawyer-assisted international business transactions. _Id._ at 189. In sum, Alberto has not cited any evidence showing that the statements in the Web Page reflect the opinions of Mr. Masuda in the 1980 time frame or that he acted in a manner consistent with these generalizations in his work on this specific transaction. There is also no evidence indicating that Sunstar generally acts in this way or that Sunstar did so in the specific transaction which is the subject of this litigation. FN14

> FN14. Alberto argues that the Web Page is also

**Westlaw.**

Not Reported in F.Supp.2d                                                      Page 23
Not Reported in F.Supp.2d, 2004 WL 1899927 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

probative of which party should bear the responsibility for the existence of an ambiguity in the Agreements. *Contra proferentum* is a rule of contract construction which requires that an ambiguous contract provision be construed more strongly against the person who selected the language. Black's Law Dictionary 327 (6 th ed.1990). Sunstar responds that the rule of *contra proferentum* is inapplicable when dealing with contracts freely negotiated by sophisticated parties. The Court expresses no opinion on whether the doctrine of *contra proferentum* is applicable to the instant case. Even if the doctrine applied to this case, the Web Page is not probative of whether Sunstar inserted the phrase *senyo-shiyoken* to create an ambiguity because there is no adequate link between the generalized statements in the Web Page regarding a Japanese preference for vague contract provisions and Masuda, Sunstar, or this specific transaction.

Even if the Web Page was marginally relevant, the Court finds it inadmissible under Rule 403. Testimony that "either directly or indirectly seeks to link a defendant's conduct to that which is said to be typical of a particular racial, ethnic group or nationality" is excludable under Rule 403's balancing test:

*28 Allowing an expert witness in a civil action to generalize that most Korean businesses are corrupt, are not to be trusted and will engage in complicated business transaction to evade Korean currency laws is tantamount to ethnic or cultural stereotyping, inviting the jury to assume the Korean litigant fits the stereotype. In stark terms, [the expert's] syllogism reduced to this: (a) Korean businesses generally are corrupt; (b) Jinro is a Korean business; (c) therefore, Jinro is corrupt. Our caselaw, and that of other circuits, establishes that this is an impermissible syllogism.

*Jinro,* 266 F.3d at 1007. The Web Page Alberto seeks to admit would only serve to introduce the same kind of "impermissible syllogism" here. Alberto clearly wants the jury to infer from the Web Page that Japanese businesses generally disregard the terms of written contracts and therefore in this particular instance, Sunstar, as a Japanese

company, did not honor the terms of the 1980 Agreements. The problem with that inference is that a stereotype or generalization about Japanese companies is not probative of how Sunstar acted in this specific transaction. Likewise, there exists a real danger that the proposed evidence could suggest a decision to the jury on an improper basis. The Web Page could lead the jury to decide the issue of what the parties intended by including the phrase *senyo-shiyoken* into the 1980 Agreements by improper reference to ethnic stereotypes. The cultural generalizations in the Web Page may also improperly divert the jury's attention away from the real issue of whether Sunstar disregarded the terms of the 1980 Agreements.

### 5. *Damages Calculations*

Sunstar's final motion in limine seeks pursuant to Rule 408 (and also Rules 401, 402, and 403) to bar admission of all evidence pertaining to any purported reasonable royalty or other damages calculations that are based (in whole or in part, directly or indirectly) on either or both of two agreements between Sunstar and Alberto dated February 8, 1989: a License and Know-How Agreement and an accompanying side letter agreement. Sunstar's motion is denied.

Aron Levko, Alberto's damages expert, prepared a report regarding the damages that Alberto allegedly sustained due to Sunstar's use of the 1999 Mark. Levko's Report states that it

sets forth [his] opinions about (a) the damages that may be recoverable by Alberto due to Sunstar's use of the 1999 Mark; and (b) the proper methodology for calculating such damages.

Levko reached his conclusion regarding the amount of damages allegedly due Alberto from Sunstar's use of the 1999 Mark by "using the 1989 License as a benchmark regarding the economic terms that would have been incorporated into an agreement in 1999, prior to Sunstar's use of the 1999 Mark." Levko Report at 4. Specifically, the Levko Report states that he determined the "reasonable royalty" by "tak[ing] the annual minimum sum per the 1989 Agreement and increased it by the percentage increase in the United States Consumer Price Index for Personal Care

*Westlaw.*

Not Reported in F.Supp.2d                                                              Page 24
Not Reported in F.Supp.2d, 2004 WL 1899927 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Products ("CPI") for the time period February 1989 to February 1999." *Id.* at 4-5.

**\*29** Sunstar contends that Rule 408 precludes Alberto and its expert from making any evidentiary use of amounts taken from the 1989 Agreements as support for a calculation of claimed damages in this litigation. Alberto argues, among other things, that the 1989 Agreements and its expert's damage calculation made in reliance thereon should be admitted at trial because Rule 408 is inapplicable where Alberto's claims at issue in this action are not the claims which are the subject of the 1989 compromise.

Rule 408 forbids admission of evidence from compromises or compromise negotiations "to prove liability for or invalidity of *the claim* or its amount." Fed.R.Evid. 408 (emphasis added). The Tenth Circuit has noted that "[r]ead literally, the rule does not appear to cover compromises and compromise offers that do not involve the dispute that is the subject of the suit, even if one of the parties to the suit was also a party to the compromise." *Bradbury v. Phillips Petroleum Co., 815 F.2d 1356, 1363* (10th Cir.1987). Substantial authority supports Alberto's contention that Rule 408 only bars evidence of settlement negotiations to prove the validity or amount of the claim under negotiation. "Rule 408 does not require the exclusion of evidence regarding the settlement of a claim different from the one litigated." *Towerridge, Inc. v. T.A.O., Inc., 111 F.3d 758, 770* (10th Cir.1997); *see also Boardcort Capital Corp. v. Summa Med. Corp., 972 F.2d 1183, 1194* (10th Cir.1992). The Sixth Circuit Court of Appeals has explained that the "general principle" is that "Rule 408 only bars the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim." *Uforma/Shelby Business Forms, Inc. v. NLRB, 111 F.3d 1284, 1293-94* (6th Cir.1997) (*quoting* 23 Wright & Graham, Federal Practice & Procedure: Evidence § 5314 n.25). Notwithstanding Rule 408, settlement evidence regarding a claim or dispute different from the one being litigated has been held admissible in numerous other cases. *See Wyatt v. Security Inn Food & Beverage, 819 F.2d 69, 71* (4th Cir.1987); *Vulcan Hart Corp. v. National Labor Relations Bd., 718 F.2d 269, 277* (8th Cir.1983); *Herman v. City of Allentown, 985 F.Supp. 569, 577 (E.D.Pa.1997);*

*United States v. McCorkle, 1994 WL 329679, at *2 (N.D.Ill. July 7, 1994)* ("[ ]Rule 408 does not bar settlement information in one case from admissibility in another case."). [FN15]

> [FN15] *But see Williams v. Fermenta Animal Health Co., 984 F.2d 261, 264* (8th Cir.1993); *Playboy Enterprises, Inc. v. Chuckleberry Publ, Inc., 687 F.2d 563, 568-69 (2d Cir.1982); Citibank v. Citytrust, 1988 WL 88437 (E.D.N.Y. Aug.23, 1988); Lo Bosco v. Kure Engineering Limited, 891 F.Supp. 1035, 1038 (D.N.J.1995)* (holding that the better view is that Rule 408 may exclude settlement proposals in one case from admission in another case where the cases are related); *Scaramuzzo v. Glenmore Distilleries, Co., 501 F.Supp. 727, 733 (N.D.Ill.1980).*

Most importantly, the Seventh Circuit has held: "[Rule 408] provides that statements made in settlement negotiations are not admissible to establish a party's liability, or damages, in the dispute that was the subject of the negotiation." *Cates v. Morgan Portable Building Corp., 780 F.2d 683, 691* (7th Cir.1985). The *Cates* court held that the district court did not violate Rule 408 by using a 1973 settlement agreement to fix damages incurred thereafter. Judge Posner, writing for the court, explained: "Nothing [the defendant] said or agreed to in the negotiations that culminated in the execution of the stipulation in September 1973 could have been used to establish its liability for the breach of contract that occurred in September 1970 or to fix its damages for that breach." *Id. Cates* is controlling precedent. Alberto is therefore precluded under Rule 408 from introducing the 1989 Agreements to establish Sunstar's liability for breaching the 1980 Agreement through its use of the 1989 Marks as well as to fix damage for that alleged breach. Since the dispute under negotiation in the 1989 Agreements is different than the dispute at issue in this litigation, Rule 408 does not bar this evidence from being considered here.

**\*30** Sunstar also argues that for similar reasons the 1989 Agreements should be excluded under the general relevance Rules of 401 and 402 and because of their excessive prejudice in comparison to any probative value under Rule 403. Sunstar argues that the 1989 Agreements are not

Westlaw.

Not Reported in F.Supp.2d                                                                 Page 25
Not Reported in F.Supp.2d, 2004 WL 1899927 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

relevant to what a willing licensee would pay a willing licensor in arms length negotiation because they were settlement agreements, made in the face of explicit threats of litigation and for the purpose of avoiding the burden of complex and expensive litigation. The Court concludes that any prejudice from admitting the 1989 Agreements for the purpose of establishing a reasonable royalty rate does not substantially outweigh their probative value, as required by Rule 403.

Sunstar does not dispute that license agreements are generally relevant for the purpose of showing a reasonable royalty. *Medtronic, Inc. v. Catalyst Research Corp., 547 F.Supp. 401, 415 (D.Minn.1982)* (stating that the "most persuasive evidence" of what a willing buyer and willing seller would agree to consisted of two existing agreements between the patent owner and nonparties, and the terms that the patent owner actually offered the proposed infringer."). Rather, Sunstar contends that royalties paid under threat of litigation have no probative value. It is true that the Supreme Court stated more than a century ago that: "a payment of any sum in settlement of a claim for an alleged infringement cannot be taken as a standard to measure the value of the improvements patented, in determining the damages sustained by the owners of the patent in other cases of infringement." *Rude v. Westcott, 130 U.S. 152, 164, 9 S.Ct. 463, 32 L.Ed. 888 (1889)*. The Supreme Court explained: "Many considerations other than the value of the improvements patented may induce the payment in such cases. The avoidance of the risk and expense of litigation will always be a potential motive for a settlement." *Id.*

The Court does not interpret *Rude* as prohibiting the introduction of licenses or offers to license made after litigation or threat of litigation on the issue of a reasonable royalty. The Court concludes that the rule stated in *Rude* governs the weight, not the admissibility of such license evidence in a reasonable royalty analysis. Courts have recognized that the trier of fact may properly consider the context in which the license was reached in weighing the probative value of such evidence. *See Deere & Co. v. International Harvester Co., 710 F.2d 1551, 1557 (Fed.Cir.1983)* (holding that district court could properly "discount the probative value" of a license negotiated

"against a backdrop of continuing litigation."); *Devex Corp. v. General Motors Corp., 667 F.2d 347, 362 (3d Cir.1981)* (noting that an industry-wide licensing offer made by plaintiffs in 1964 "doubtlessly included an element of a desire to end this already extensive litigation" but "that factor, although to be taken into account, does not automatically rule out use of the [licensing offer to establish a reasonable royalty.]"); *Tights, Inv. v. Kayser-Roth Corp., 442 F.Supp. 159, 162 (M.D.N.C.1977)* (holding that in awarding a reasonably royalty to a patent holder it is improper to give "substantial evidentiary weight" to existing license agreements having a royalty rate which was arrived at under conditions of open, industry-wide infringement.). FN16

> FN16. *See also Deere, 710 F.2d at 1560* (Davis, J. dissenting in part) (noting that numerous Court of Claims cases have held that licenses, even in settlement, furnish a relevant component for determining a royalty).

**\*31** The Seventh Circuit has recognized that licenses agreed to under threat of litigation or to settle litigation are relevant to fix damages for infringement. In *Columbia Broadcasting System, Inc. v. Zenith Radio Corp., 537 F.2d 896* (7th Cir.1976), the Seventh Circuit upheld a judgment for royalties based upon the plaintiff's license grants, settlements of litigation, and an offer to settle with other American tube manufacturers. Moreover, in a case cited by Sunstar, this court confirmed that the context in which the licenses were negotiated effects the weight rather than the admissibility of the license evidence. *Activated Sludge, Inc. v. Sanitary Dist. of Chicago, 64 F.Supp. 25, 33-35 (N.D.Ill.1946), aff'd per curiam, 157 F.2d 517* (7th Cir.1946) (considering but failing to give determinative weight to licenses which included settlements for past infringement). Finally, in *B & H Manufacturing, Inc. v. Foster-Forbes Glass Co., 1993 WL 141120 (N.D.Ind. Jan.6, 1993)*, a magistrate judge rejected defendant's attempt to prevent plaintiff from introducing at trial evidence concerning the licenses between plaintiff and third parties. The plaintiff argued that the license agreements were relevant because they showed "the result obtained from a negotiation between a willing licensor and a willing

Westlaw.

Not Reported in F.Supp.2d                                                                      Page 26
Not Reported in F.Supp.2d, 2004 WL 1899927 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

licensee: an agreed upon royalty rate of 18¢ per gross." *Id.* at *6. The magistrate judge refused to exclude the license agreements at trial, stating:

[T]he court agrees with B & H that the agreements will be useful to the jury for the purpose of establishing a damages floor. Although Owens-Illinois and Anchor Glass had both been threatened with litigation (and Owens-Illinois had fought a lawsuit for three years), due to the size and strength of these two companies the court finds that the licenses are evidence of a reasonable royalty rate obtained after negotiation between a willing licensor and a willing licensee.

*Id.* at *7.

Sunstar's arguments about royalties paid under threat of litigation implicate the weight, not the admissibility, of the 1989 Agreements. The trier of fact may consider the context in which the 1989 Agreements were reached and determine whether the probative value of the 1989 license should be discounted because it was negotiated under threat of litigation. Alberto is entitled to show that the 1989 Agreements have relevance to the reasonable royalty determination despite their negotiation under the threat of litigation. Sunstar is free to cross-examine Levko about the basis for his opinion. Through cross-examination and testimony from its own witnesses, Sunstar is also free to reveal any weaknesses in Levko's opinion and establish that the 1989 license included a premium for litigation avoidance.

## CONCLUSION

For the reasons stated above, the parties' motions in limine are granted in part and denied in part. In Case No. 01 C 0736, Sunstar's motion in limine [150-1] is granted; Sunstar's motion in limine [151-1] is granted in part and denied in part; Sunstar's motion in limine [152-1] is denied; Sunstar's motion in limine [153-1] is denied without prejudice; Sunstar's motion in limine [154-1] is granted in part and denied in part; Bank One's motion in limine [156-1] is granted; Bank One's motion in limine [157-1] is granted; Bank One's motion in limine [158-1] is granted; Bank One's motion in limine [159-1] is granted; Bank One's motion in limine [160-1] is granted; Bank One's motion in limine

[161-1] is denied; Alberto's motion in limine [163-1] is granted; Alberto's motion in limine [164-1] is granted; Alberto's motion in limine [165-1] is denied without prejudice; Alberto's motion in limine [166-1] is granted in part and denied in part; Alberto's motion in limine [167-1] is denied; Alberto's motion in limine [168-1] is denied without prejudice; Alberto's motion in limine [169-1] is granted in part and denied in part; and Alberto's motion in limine [170-1] is granted.

**\*32** Under Rule 72(a), objections to this memorandum opinion and order must be filed with the district court within ten days after being served with a copy of this opinion. Failure to object to a magistrate judge's ruling on nondispositive pretrial matters waives the right to attack such rulings on appeal. *United States v. Brown,* 79 F.3d 1499, 1504 (7th Cir.1996).

N.D.Ill.,2004.
Sunstar, Inc. v. Alberto-Culver Co., Inc.
Not Reported in F.Supp.2d, 2004 WL 1899927 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 3286059 (Trial Motion, Memorandum and Affidavit) Alberto-Culver Company's Response to Sunstar Inc.'s Motion to Reconsider (Oct. 21, 2005)

• 2005 WL 3286055 (Trial Motion, Memorandum and Affidavit) Motion for Reconsideration Based upon Newly-Issued Authority (Oct. 11, 2005)

• 2004 WL 2725474 (Trial Motion, Memorandum and Affidavit) Sunstar's Corrected Reply Memorandum of Law in Further Support of Motion in Limine to Exclude Evidence of Damages Calculations Based Upon Inadmissible Settlement Agreements (May. 24, 2004)

• 2004 WL 2725450 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Bank One's First Motion in Limine Re: Trustee's Suspension (Apr. 26, 2004)

• 2004 WL 2725451 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Bank One's Second Motion in Limine Re: Indemnification Agreement; Choice of Counsel; and Bank One-Alberto Relationships (Apr. 26, 2004)

• 2004 WL 2725452 (Trial Motion, Memorandum and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                           Page 27
Not Reported in F.Supp.2d, 2004 WL 1899927 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Affidavit) Reply Memorandum in Support of Bank One's Third Motion in Limine Re: Joint Defense (Apr. 26, 2004)

• 2004 WL 2725453 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Bank One's Fourth Motion in Limine Re: Licensee Estoppel (Apr. 26, 2004)

• 2004 WL 2725455 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Bank One's Fifth Motion in Limine Re: Sunstar's Motivations for Adopting the 1999 Mark (Apr. 26, 2004)

• 2004 WL 2725457 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Bank One's Sixth Motion in Limine Re: Japanese Law (Apr. 26, 2004)

• 2004 WL 2725459 (Trial Motion, Memorandum and Affidavit) Sunstar's Reply Memorandum of Law in Further Support of Motion in Limine to Exclude from Evidence Alberto-Culver Deposition Exhibit 162 and any Similar Testimony/Documents (Apr. 26, 2004)

• 2004 WL 2725461 (Trial Motion, Memorandum and Affidavit) Sunstar's Reply Memorandum of Law in Further Support of Motion in Limine to Limit Alberto-Culver and Bank One Collectively to a Single Expert Witness at Trial on Matters of Japanese Law (Apr. 26, 2004)

• 2004 WL 2725462 (Trial Motion, Memorandum and Affidavit) Sunstar's Reply Memorandum of Law in Further Support of Motion in Limine to Exclude Evidence of Damages Calculations Based Upon Inadmissible Settlement Agreements (Apr. 26, 2004)

• 2004 WL 2725463 (Trial Motion, Memorandum and Affidavit) Sunstar's Reply Memorandum of Law in Further Support of Motion in Limine to Exclude Expert Testimony By Bank One's Purported Japanese-Law Expert, David S. Guttman (Apr. 26, 2004)

• 2004 WL 2725464 (Trial Motion, Memorandum and Affidavit) Sunstar's Reply Memorandum of Law in Further Support of Motion in Limine to Exclude All Evidence Relating to 1989 Agreements as Inadmissible Rule 408 Settlement Material (Apr. 26, 2004)

• 2004 WL 2725465 (Trial Motion, Memorandum and Affidavit) Alberto-Culver Company's Reply Brief in Support of its Motion in Limine No. 1 to Preclude Evidence of the Trustee's Conduct (Apr. 26, 2004)

• 2004 WL 2725466 (Trial Motion, Memorandum and Affidavit) Alberto-Culver Company's Reply Memorandum

in Support of its Motion in Limine No. 2 to Barany Argument, Evidence or Testimony Concerning any Reason or Justification for Adopting the 1999 Mark (Apr. 26, 2004)

• 2004 WL 2725467 (Trial Motion, Memorandum and Affidavit) Alberto-Culver Company's Reply Brief in Support of Its Motion in Limine No. 3-to Bar Argument, Evidence, or Testimony Concerning any Unmanifested or Unexpressed Intent Behind the Inclusion of the Phrase Senyo-Shiyoken into the Agreements (Apr. 26, 2004)

• 2004 WL 2725468 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Alberto-Culver Company's Motion in Limine No. 4 - to Bar Certain Agreements and Negotiations that Preceded the 1980 Agreements (Apr. 26, 2004)

• 2004 WL 2725469 (Trial Motion, Memorandum and Affidavit) Alberto-Culver Company's Reply Memorandum in Support of Its Motion in Limine #5-to Bar Argument, Evidence, or Testimony That Actions Taken by It or Its Subsidiary Licensee Regarding Use of Marks Not at Issue Here Constitute A Defense to Sunstar's Bre aches of the License Agreement (Apr. 26, 2004)

• 2004 WL 2725470 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Alberto-Culver Company's Motion in Limine No. 6 - to Bar Expert Testimony on Foreign Law, Credibility of Witnesses, and Case Holdings from Japanese Courts (Apr. 26, 2004)

• 2004 WL 2725471 (Trial Motion, Memorandum and Affidavit) Alberto-Culver Company's Reply Memorandum in Support of Its Motion in Limine No. 7 to Bar Argument, Evidence or Testimony Which Would be Inconsistent With This Court's Interlocutory Orders (Apr. 26, 2004)

• 2004 WL 2725473 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Alberto-Culver Company's Motion in Limine No. 8 Regarding Naked Licensing (Apr. 26, 2004)

• 2004 WL 2725289 (Trial Motion, Memorandum and Affidavit) Sunstar's Memorandum of Law in Opposition to Bank One's Third Motion in Limine (Re: Joint Defense) (Apr. 05, 2004)

• 2004 WL 2725293 (Trial Motion, Memorandum and Affidavit) Alberto's Response to Sunstar's Motion in Limine to Exclude Expert Testimony by Bank One's Japanese-Law Expert, David S. Guttman (Apr. 05, 2004)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw.**

• 2004 WL 2725294 (Trial Motion, Memorandum and Affidavit) Alberto-Culver Company's Memorandum in Opposition to Sunstar, Inc.'s Motion in Limine to Exclude All Evidence Relating to 1989 Agreements as Inadmissible Rule 408 Settlement Material (Apr. 05, 2004)

• 2004 WL 2725291 (Trial Motion, Memorandum and Affidavit) Alberto-Culver's Memorandum of Law in Response to Sunstar's Motion in Limine to Limit Alberto-Culver and Bank One Collectively to A Single Expert Witness at Trial on Matters of Japanese Law (Apr. 02, 2004)

• 2004 WL 2725285 (Trial Motion, Memorandum and Affidavit) Bank One's Response to Motion in Limine to Exclude from Evidence Alberto-Culver Deposition Exhibit 162 and any Similar Testimony/Documents (Apr. 01, 2004)

• 2004 WL 2725286 (Trial Motion, Memorandum and Affidavit) Bank One's Response to Motion in Limine of Sunstar Inc. and Kaneda, Kosan, Kabushiki Kaisha to Exclude Evidence of Damages Calculations (Apr. 01, 2004)

• 2004 WL 2725287 (Trial Motion, Memorandum and Affidavit) Bank One's Memorandum in Opposition to Motion in Limine of Sunstar, Inc. & Kaneda, Kosan, Kabushiki Kaisha to Exclude All Evidence Relating to 1989 Agreements Under Rule 408 Fre (Apr. 01, 2004)

• 2004 WL 2725288 (Trial Motion, Memorandum and Affidavit) Bank One's Memorandum in Opposition to Sunstar's Motion in Limine to Limit Alberto-Culver and Bank One Collectively to a Single Expert Witness at Trial on Matters of Japanese Law (Apr. 01, 2004)

• 2004 WL 2725290 (Trial Motion, Memorandum and Affidavit) Alberto-Culver's Response Brief in Opposition to Sunstar's Motion in Limine Concerning Alberto's Proposed Exhibit 162 (Apr. 01, 2004)

• 2004 WL 2725292 (Trial Motion, Memorandum and Affidavit) Alberto-Culver Company's Response to Sunstar, Inc.'s Motion in Limine to Exclude Evidence of Damages Calculations Based Upon Inadmissible Settlement Agreements (Apr. 01, 2004)

• 2004 WL 2725295 (Trial Motion, Memorandum and Affidavit) Sunstar's Memorandum of Law in Opposition to Alberto-Culver's Motion in Limine No. 2 and Bank One's Motion in Limine No. 5 (Regarding Sunstar's Reasons for Adopting the Modernized VO5 Logo) (Apr. 01, 2004)

• 2004 WL 2725439 (Trial Motion, Memorandum and Affidavit) Sunstar's Memorandum of Law in Opposition to Bank One's Motion in Limine No. 1 (Seeking to Bar the Issue of the Validity of Bank One's Purported Suspension of Sunstar's License Rights) (Apr. 01, 2004)

• 2004 WL 2725440 (Trial Motion, Memorandum and Affidavit) Sunstar's Memorandum of Law in Opposition to Bank One's Motion in Limine No. 2 and Alberto-Culver's Motion in Limine No. 1 (Seeking to Bar Evidence of Bank One's Actions in Connection With Its Purported Suspension of Sunstar's License Rights) (Apr. 01, 2004)

• 2004 WL 2725441 (Trial Motion, Memorandum and Affidavit) Sunstar's Memorandum of Law in Opposition to Alberto-Culver's Motion in Limine No. 3 (To Bar Argument, Evidence, Or Testimony Concerning any Unmanifested Or Unexpressed Intent Behind The Inclusion of the Phrase Senyo-Shiyokeninto the Agreements) (Apr. 01, 2004)

• 2004 WL 2725442 (Trial Motion, Memorandum and Affidavit) Sunstar's Memorandum of Law in Opposition to Alberto-Culver's Motion in Limine No. 4 (To Bar Certain Agreements and Negotiations That Preceded the 1980 Agreements) (Apr. 01, 2004)

• 2004 WL 2725443 (Trial Motion, Memorandum and Affidavit) Sunstar's Memorandum of Law in Opposition to Alberto-Culver's Motion in Limine No. 5 (Seeking to Bar Evidence That Its Use of Marks Purportedly Not at Issue Here Constitutes A Defense to Its Breach of Contract Claim) (Apr. 01, 2004)

• 2004 WL 2725444 (Trial Motion, Memorandum and Affidavit) Sunstar's Memorandum of Law in Opposition to Bank One's Motion in Limine No. 6 (Seeking to Bar Evidence and Argument Concerning Japanese Law) (Apr. 01, 2004)

• 2004 WL 2725446 (Trial Motion, Memorandum and Affidavit) Sunstar's Memorandum of Law in Opposition to Alberto-Culver's Motion In Limine No. 6 (Seeking to Bar Evidence Concerning Japanese Law) (Apr. 01, 2004)

• 2004 WL 2725448 (Trial Motion, Memorandum and Affidavit) Sunstar's Memorandum of Law in Opposition to Alberto-Culver's Motion in Limine No. 7 (Seeking to Bar Evidence Supposedly Inconsistent With Prior Interlocutory Orders) (Apr. 01, 2004)

• 2004 WL 2725449 (Trial Motion, Memorandum and Affidavit) Sunstar's Memorandum of Law in Opposition to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 29
Not Reported in F.Supp.2d, 2004 WL 1899927 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Alberto-Culver's Motion in Limine No. 8 and Bank One's Fourth Motion In Limine (Regarding Naked Licensing / Licensee Estoppel) (Apr. 01, 2004)
• 2004 WL 2725279 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Bank One's Second Motion in Limine Re: Indemnification Agreement; Choice of Counsel; and Bank One-Alberto Relationships (Mar. 05, 2004)
• 2004 WL 2725280 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Bank One's Third Motion in Limine Re: Joint Defense (Mar. 05, 2004)
• 2004 WL 2725271 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Alberto Culver Company's Motion in Limine No. 1 - to Bar Argument, Evidence, or Testimony Concerning Conduct of the Trustee (Mar. 04, 2004)
• 2004 WL 2725272 (Trial Motion, Memorandum and Affidavit) Alberto-Culver Company's Memorandum in Support of its Motion in Limine No.2 to Bar any Argument, Evidence or Testimony Concerning any Reason or Justification for Adopting the 1999 Mark (Mar. 04, 2004)
• 2004 WL 2725273 (Trial Motion, Memorandum and Affidavit) Alberto-Culver Company's Memorandum of Law in Support of its Motion in Limine No. 3 - to Bar Argument, Evidence, or Testimony Concerning any Unmanifested or Unexpressed Intent Behind the Inclusion of the Phrase Senyo-Shiyoken Into the Agreements (Mar. 04, 2004)
• 2004 WL 2725274 (Trial Motion, Memorandum and Affidavit) Alberto-Culver Company's Memorandum in Support of its Motion in Limine No. 4 to Bar Certain Agreements and Negotiations that Preceded the 1980 Agreements (Mar. 04, 2004)
• 2004 WL 2725275 (Trial Motion, Memorandum and Affidavit) Alberto-Culver Company's Memorandum in Support of its Motion in Limine #5 - to Bar Argument, Evidence, or Testimony that Actions Taken by it or its Subsidiary Licensee Regarding Use of Marks Not at Issue Here Constitute a Defense to Sunstar's Breache s of the License Agreement (Mar. 04, 2004)
• 2004 WL 2725276 (Trial Motion, Memorandum and Affidavit) Alberto-Culver Company's Memorandum of Law in Support of its Motion in Limine No. 6 to Bar Expert Testimony on Foreign Law, Credibility of Witnesses, and Case Holdings from Japanese Courts (Mar. 04, 2004)

• 2004 WL 2725277 (Trial Motion, Memorandum and Affidavit) Alberto-Culver Company's Memorandum in Support of its Motion in Limine No. 7 to Bar Argument, Evidence or Testimony Which Would be Inconsistent with this Court's Interlocutory Orders (Mar. 04, 2004)
• 2004 WL 2725278 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Alberto-Culver Company's Motion in Limine No. 8 Regarding Naked Licensing (Mar. 04, 2004)
• 2004 WL 2725281 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Bank One's Fourth Motion in Limine Re: Licensee Estoppel (Mar. 04, 2004)
• 2004 WL 2725282 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Bank One's Fifth Motion in Limine Re: Sunstar's Motivations for Adopting the 1999 Mark (Mar. 04, 2004)
• 2004 WL 2725283 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Bank One's Sixth Motion in Limine Re: Japanese Law (Mar. 04, 2004)
• 2004 WL 2725284 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Bank One's First Motion in Limine Re: Trustee's Suspension (Mar. 04, 2004)
• 2004 WL 2725268 (Trial Motion, Memorandum and Affidavit) Trial Brief of Sunstar Inc. and Kaneda, Kosan, Kabushiki Kaisha (Feb. 05, 2004)
• 2004 WL 2725269 (Trial Motion, Memorandum and Affidavit) Bank One's Trial Brief (Feb. 05, 2004)
• 2004 WL 2725270 (Trial Motion, Memorandum and Affidavit) Alberto-Culver's Trial Brief (Feb. 05, 2004)
• 2003 WL 23910164 (Trial Motion, Memorandum and Affidavit) Alberto-Culver's and Bank One's Reply Memorandum in Support of the Motion for Determination of Responsive Expert Report Dates and Exclusion of Law Expert Testimony from Trial (Feb. 25, 2003)
• 2003 WL 23910165 (Trial Motion, Memorandum and Affidavit) Alberto-Culver's and Bank One's Reply Memorandum in Support of the Motion for Determination of Japanese Law (Feb. 25, 2003)
• 2003 WL 23909996 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Opposition to Alberto-Culver's and Bank One's Motion for Determination of Responsive Expert Report Dates and Exclusion of Law Expert Testimony from Trial (Feb. 10, 2003)
• 2003 WL 23909997 (Trial Motion, Memorandum and

Westlaw.

Not Reported in F.Supp.2d                                                                  Page 30
Not Reported in F.Supp.2d, 2004 WL 1899927 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Affidavit) Memorandum of Law in Opposition to Alberto-Culver's and Bank One's Motion for Determination of Japanese Law (Feb. 10, 2003)

• 2003 WL 23910161 (Trial Motion, Memorandum and Affidavit) Alberto-Culver's and Bank One's Motion and Memorandum for Determination of Responsive Expert Report Dates and Exclusion of Law Expert Testimony from Trial (Jan. 27, 2003)

• 2003 WL 23910163 (Trial Motion, Memorandum and Affidavit) Alberto-Culver's and Bank One's Motion for Determination of Japanese Law (Jan. 27, 2003)

• 2002 WL 32741804 (Trial Motion, Memorandum and Affidavit) Alberto-Culver Company's Response to the Supplemental Statement of Material Facts of Sunstar, Inc. and Kaneda, Kosan, Kabushiki, Kaisha (Oct. 04, 2002)

• 2002 WL 32741808 (Trial Motion, Memorandum and Affidavit) Bank One's Reply Memorandum in Support of its Motion for Summary Judgment (Oct. 04, 2002)

• 2002 WL 32741813 (Trial Motion, Memorandum and Affidavit) Bank One's Response to ""Counter-Statement of Material Facts of Sunstar, Inc. in Opposition to the Motion of Bank One for Summary Judgment" (Oct. 04, 2002)

• 2002 WL 32742161 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of the Motion of Defendants Sunstar, Inc. and Kaneda, Kosan, Kabushiki Kaisha for Summary Judgment (Oct. 04, 2002)

• 2002 WL 32742175 (Trial Motion, Memorandum and Affidavit) Reply of Sunstar, Inc. and Kaneda, Kosan, Kabushiki Kaisha to Alberto-Culver's 56.1(b)(3)(B) Statement of Material Facts (Oct. 04, 2002)

• 2002 WL 32741799 (Trial Motion, Memorandum and Affidavit) Memorandum of Sunstar, Inc, and Kaneda, Kosan Kabushiki Kaisha in Opposition to Bank One's and Alberto-Culver's Motions to Strike (Oct. 01, 2002)

• 2002 WL 32741791 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Opposition to the Motion of Alberto-Culver Company for Summary Judgment (Sep. 25, 2002)

• 2002 WL 32741794 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Opposition to Bank One's Motion for Summary Judgment (Sep. 25, 2002)

• 2002 WL 32742156 (Trial Motion, Memorandum and Affidavit) Bank One's Response to Alberto-Culver's Motion for Summary Judgment (Sep. 25, 2002)

• 2002 WL 32741789 (Trial Motion, Memorandum and Affidavit) Alberto-Culver's Memorandum in Support of its Motion for Summary Judgment (Sep. 18, 2002)

• 2002 WL 32742152 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of the Motion of Defendants Sunstar, Inc. and Kaneda Kosan, Kabushiki Kaisha for Summary Judgment (Sep. 11, 2002)

• 2002 WL 32742146 (Trial Motion, Memorandum and Affidavit) Alberto-Culver's Reply to Sunstar's Counterclaims as Set Forth in Sunstar's Answer to Alberto-Culver's Second Amended Complaint (Aug. 06, 2002)

• 2002 WL 32742138 (Trial Motion, Memorandum and Affidavit) Reply to Cross-Claim (Aug. 01, 2002)

• 2002 WL 32741787 (Trial Motion, Memorandum and Affidavit) Alberto-Culver's Reply to Sunstar's Counterclaims as Set Forth in Sunstar's Answer to Alberto-Culver's Second Amended Complaint (Jul. 31, 2002)

• 2002 WL 32741786 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Alberto-Culver's Motion to Adopt and to Strike Sunstar's Rebuttal Expert Report (Jul. 12, 2002)

• 2002 WL 32741783 (Trial Motion, Memorandum and Affidavit) Memorandum of Sunstar, Inc. and Kaneda, Kosan Kabushiki Kaisha in Opposition to Alberto-Culver's Motion to Adopt and to Strike Sunstar's Rebuttal Expert Report (Jul. 09, 2002)

• 2002 WL 32741780 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Defendant Bank One's Motion to Strike Expert Reports (Jul. 03, 2002)

• 2002 WL 32741778 (Trial Motion, Memorandum and Affidavit) Memorandum of Sunstar, Inc. and Kaneda, Kosan Kabushiki Kaisha in Opposition to Bank One's Motion to Strike Expert Reports (Jun. 25, 2002)

• 2002 WL 32741776 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of the Motion of Sunstar, Inc. and Kaneda, Kosan, Kabushiki Kaisha for Judgment on the Pleadings (May. 31, 2002)

• 2002 WL 32741771 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Alberto-Culver's Opposition to the Motion of Sunstar, Inc. and Kaneda, Kosan, Kabushiki Kaisha for Judgment on the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Westlaw.*

Not Reported in F.Supp.2d                                                                                                                  Page 31
Not Reported in F.Supp.2d, 2004 WL 1899927 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Pleadings (May. 22, 2002)

• 2002 WL 32741768 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Opposition to the Motion of Alberto-Culver Company for the Entry of a Protective Order (May. 03, 2002)

• 2002 WL 32741765 (Trial Motion, Memorandum and Affidavit) Memorandum of Sunstar Inc. in Opposition to the Motion to Compel of Alberto-Culver Company (Mar. 26, 2002)

• 2002 WL 32741763 (Trial Pleading) Answer to Amended Complaint (Feb. 08, 2002)

• 2002 WL 32741760 (Trial Motion, Memorandum and Affidavit) Sunstar's Memorandum in Opposition to Alberto-Culver's Motion to Compel (Jan. 23, 2002)

• 2002 WL 32741756 (Trial Motion, Memorandum and Affidavit) Sunstar's Memorandum in Opposition to Alberto-Culver's Motion to Compel (Jan. 22, 2002)

• 2002 WL 32742129 (Trial Motion, Memorandum and Affidavit) Alberto-Culver's Memorandum in Response to Sunstar's Motion for a Protective Order (Jan. 22, 2002)

• 2001 WL 34706536 (Trial Motion, Memorandum and Affidavit) Alberto-Culver's Reply in Support of its Motion to Dismiss (Dec. 12, 2001)

• 2001 WL 34706535 (Trial Pleading) Amended Complaint (Oct. 25, 2001)

• 1:01CV05825 (Docket) (Jul. 27, 2001)

• 2001 WL 34706533 (Trial Pleading) Complaint (Feb. 02, 2001)

• 1:01CV00736 (Docket) (Feb. 02, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.