**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
No. 90-cv-181-JLK**

**MERILYN COOK, et al.,
Plaintiffs,**

**v.**

**ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,
Defendants.**

**PLAINTIFFS' REPLY BRIEF IN
SUPPORT OF MOTION TO EXCLUDE
THE TESTIMONY OF PAUL G. VOILLEQUÉ**

On December 23, 2005, Defendants filed a response (Ct. Rec. 1901) to Plaintiffs' Supplemental Brief in Support of Plaintiffs' Motion to Exclude the Testimony of Paul G. Voilleque (Ct. Rec. 1882).

Defendants argue that: (1) Mr. Voilleque is "no different" than Dr. Biggs and Dr. Selbin, and since they testified, Mr. Voilleque should be permitted to also; (2) Mr. Voilleque has allegedly "made clear" that "he intends to offer factual and historical testimony"; (3) Mr. Voilleque allegedly was "not retained" as an expert; (4) Mr. Voilleque is supposedly being offered as a rebuttal witness; and (5) Plaintiffs would not be prejudiced by Mr. Voilleque's testimony.

None of these arguments has merit, and Mr. Voilleque should be excluded, consistent with the Court's prior ruling excluding Dr. Fry.

As to Defendants' attempt to equate Mr. Voilleque – an expert member of RAC who was

paid to write or co-write a number of RAC reports – with Drs. Biggs or Selbin – concerned citizens who simply participated as unpaid volunteers in some meetings or took an interest in certain issues – we refer the Court to Plaintiffs' separately filed response to Defendants' Motion to strike their testimony.

Here, we will say that Mr. Voilleque is the sole named author of a *107-page* RAC report on the 1957 fire, and the potential use of mass balance or MUF to analyze that fire.  *See* copy attached as Exh. 1.[1]  The RAC report on the 1957 fire (a report which includes within it an analysis of MUF), is a dense, expert analysis that attempts to reconstruct the release of plutonium from that fire.  Any testimony that Mr. Voilleque would offer about the report would necessarily be expert testimony. *See, e.g.,* Exh. 1 at 38 (stating that "[t]he fractional release of plutonium into the air depends upon the chemical and physical form of the material and the forces that are applied.  Estimates of airborne release fractions for various situations are based upon experimental studies."); and at 39 ("Airborne release fractions for oxidation of plutonium metal depend upon several factors.  The metallurgical type and temperature of the metal are quite important.  Under some conditions, the surface area of the metal, the humidity of the air, and the air velocity have also been shown to be important considerations when estimating release fractions."); and at 39 (setting forth complex equation for estimating the "airborne release rate"); and at 40 (setting forth complex equation for estimating the

---

[1]Mr. Voilleque also authored or contributed to numerous other RAC reports (see Ct. Rec. 1878, Defendants' prior proffer regarding his testimony), but Defendants finally disclosed – *after* Mr. Voilleque's deposition had been completed – that they intend to limit his testimony to MUF and the 1957 fire.  *See* Ct. Rec. 1881 (Defendants' letter dated Dec. 22, 2005).  As discussed below, however, Defendants have still, as of today, failed to identify the specific RAC report(s) that they intend to ask Mr. Voilleque about.

"respirable fraction" of plutonium); and at 42 (equation for "airborne release fraction"); and at 45 (table setting forth various estimated release fractions).

This RAC report was issued in 1999, and therefore Defendants had ample opportunity to serve an expert report by Mr. Voilleque – as Defendants did with Dr. Till in August 2004 – but Defendants chose not to. The RAC report on the 1957 fire is not "historical" because no historical, contemporaneous measurements were made of the plutonium released during the fire. *See* Exh. 1 at iii ("Estimates of the amount of plutonium released to the atmosphere are needed because stack effluent sampling capability was lost during the fire. No measurements of the amounts of airborne plutonium in gaseous effluents were made."). Hence, any testimony that Mr. Voilleque's might offer would consist of his attempt, as an expert, to compensate for this gap in historical data by using various complex equations and experimental data. That is expert testimony, and it should not be permitted, since Mr. Voilleque has not served any expert report, timely or otherwise.

Second, Mr. Voilleque made nothing "clear" at his deposition regarding his potential testimony. To the contrary, he repeatedly testified that he did not know what he would be testifying about. *See, e.g.,* Voilleque dep. at 53 ("I don't know what specific topics I'll be testifying about."); and at 65 ("I have said more than once that I do not know what it is that I'm going to be asked to testify about."); and at 77 ("I have said probably three or four times that no, they [Defendants' counsel] have not told me what I'm going to be testifying about.") (a copy of his deposition is attached as Exh. 1 to Ct. Rec. 1882).

Third, Mr. Voilleque testified that he is being paid $125/hour by RAC for working on behalf of Defendants in this case – and that it is "only logical" that RAC is passing on these costs. *See* Voilleque dep. at 63, 133-34. Defendants are silent on the actual financial arrangements that have

been made regarding Mr. Voilleque.

Fourth, Defendants imply that Mr. Voilleque's proposed testimony about the 1957 fire (or MUF) is somehow in "rebuttal" to the testimony of Dr. Biggs or Dr. Selbin, but neither of them testified about the 1957 fire or MUF. In fact, Defendants fail to identify in their brief whose testimony Mr. Voilleque's allegedly would be rebutting. In any event, calling Mr. Voilleque a "rebuttal" witness does not excuse Defendants' from complying with Rule 26 or the Court's prior orders regarding the deadlines for filing expert reports *and* rebuttal expert reports.

Fifth, Plaintiffs *would be* prejudiced by Mr. Voilleque's testimony. Expert reports serve vital functions, including defining and limiting the scope of testimony, and providing the opposing side the opportunity to focus their discovery efforts, such as through deposition, on the precise testimony being proffered. *See also* Plaintiffs' Motion to Exclude Expert Testimony From Dr. Shirley Fry, Dr. Helen Grogan, and Mr. Paul G. Voilleque, at 12 (Ct. Rec. 1728). Defendants, however, failed to disclose the actual subjects of Mr. Voilleque's testimony until *after* Plaintiffs' deposed him on December 16, 2005.

Defendants' first proffer regarding Mr. Voilleque's expected testimony, dated December 16, not only was filed on the same day as Mr. Voilleque's deposition, but contained every topic imaginable. *See* Ct. Rec. 1878. Though Plaintiffs did ask Mr. Voilleque some questions about the 1957 fire and MUF at his deposition, Plaintiffs were deprived of any chance to focus the deposition on the actual content of Mr. Voilleque's expected testimony because Defendants failed to specify it until Dec. 22[2] – *after* the deposition was done – and Mr. Voilleque testified he *didn't know* what he'd be testifying about. Indeed, Defendants have *failed to date* to identify the specific RAC reports

---

[2] *See* Ct. Rec. 1881.

that they intend to ask Mr. Voilleque about.  Hence, Plaintiffs have not had a fair opportunity to compensate for Defendants' failure to serve a Rule 26 expert report (timely or otherwise) by Mr. Voilleque.

For all these reasons, and for the reasons set forth previously, (s*ee* Ct. Recs. 1728 and 1882), Plaintiffs respectfully request that their Motion to Exclude testimony from Mr. Voilleque be granted.

Respectfully submitted,

Dated: Dec. 30,  2005

 /s  Jennifer MacNaughton
Merrill G. Davidoff
David F. Sorensen
Jennifer MacNaughton
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
fax (215) 875-4674
jmacnaughton@bm.net

Gary B. Blum
Steven W. Kelly
Silver & DeBoskey, P.C.
1801 York Street
Denver, CO 80206
(303) 399-3000

*Attorneys for Plaintiffs*
*And the Class*

5