IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

No. 90-cv-181-JLK
_____

MERILYN COOK, et al.,

    Plaintiffs,

        v.

ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,

    Defendants.
_____

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR MISTRIAL OR, IN THE ALTERNATIVE,
DEFENDANTS' PROPOSED INSTRUCTIONS**
_____

Plaintiffs respectfully submit this memorandum in opposition to "Defendants' Motion for Mistrial or, in the Alternative, Defendants' Proposed Instructions" (Dec. 28, 2005) [Ct. Rec. 1903]. Plaintiffs understand that the Court has already denied defendants' motion insofar as the motion requested a mistrial. *See* Order (Dec. 30, 2005) [Ct. Rec. 1912]. Plaintiffs respond here, as the Court has directed, to only so much of defendants' motion as requests modification of the jury instructions.

### I. PROCEDURAL BACKGROUND

Defendants have never made any secret of their longstanding displeasure with Instruction No. 1.9, and they make only the flimsiest pretense now that it was remarks from plaintiffs' counsel during the December 16 mini-closings that supplied the real inspiration for defendants' renewed

attack on that instruction. Still, because those remarks by plaintiffs' counsel do constitute at least the nominal occasion for defendants' submission, it is worth revisiting what actually occurred at the mini-closings – a topic on which defendants' motion does not dwell.

What occurred was this. Defendants themselves had put into evidence an exhibit from the RAC Reports (DX-542) (Ex. A), demonstrating that Mr. Voillequé had the DOE declassify, promptly and at his request, P-10 (a 1964 report on MUF) and other documents in June of 1994. Plaintiffs showed that exhibit to the jury. Plaintiffs also showed a timeline illustrating that while RAC, one of DOE's favored contractors, was succeeding in getting MUF documents promptly declassified at its request, DOE waited until sometime in 1996, after the contempt ruling, before declassifying (and mostly redacting) MUF documents that plaintiffs requested. Plaintiffs then read verbatim the portion of Court-approved Jury Instruction No. 1.9 concerning the jury's *option* to draw an adverse inference.

Plaintiffs' counsel did indeed state that we "know" the classified documents cannot be favorable to the *defense*:

> The reason it should not be favorable to them, I would argue to you, ladies and gentlemen, is because, as they have admitted, they have not considered MUF to have contributed as much as one gram, one gram to the estimate as to what's been released off-site this plant.
>
> So I would argue that it cannot be favorable to them. I would argue that it can and should be construed favorably to us.

*See* Tr. (12/16/05) at 8575-76. The argument just recited, it should be noted, does not rest on any allegation of classification abuse. It rests on the logic of defendants' own position. Because defendants deny that MUF information is even relevant to estimating releases, no MUF information could reduce defendants' estimates below what they already are.

*Plaintiffs' Opposition to Defendants' Proposed Revisions to Instruction No. 1.9 – Page 2*

Plaintiffs did also raise a point, in the mini-closings, concerning the timing of the MUF declassification. Plaintiffs remarked that DOE readily declassified documents at RAC's request, while failing to act on plaintiffs' document requests for a period of years. Defendants do not contest those brute facts, nor can they, because they are documented by defendants' own trial exhibit. In fact, until plaintiffs saw DX-542, plaintiffs did not know why P-10, a 1964 Report on MUF, had been partially declassified in June of 1994. This document was not obtained in document requests, but was rather obtained by Dr. Cochran, after it was declassified, directly from the Department of Energy. Even apart from any issue of classification abuse, that train of events goes to RAC's supposed neutrality and arm's-length independence from DOE.

## II. ARGUMENT

Defendants cite no new legal authority in support of their opposition to Instruction No. 1.9 or in support of their proposed substitute. Indeed, defendants cite no legal authority in that connection at all. Defendants' brief is primarily devoted to rehashing defendants' previously stated grievances on the subject. So strongly aggrieved do defendants apparently feel, that they actually devote two pages of their brief to complaining about the multiple occasions on which the Court has *sustained their objections* to plaintiffs' evidence on classification practices – rulings with which plaintiffs respectfully differ, but which surely cannot have operated to *defendants'* prejudice. *See* Def. Mem. at 3-4. If defendants' recital of accumulated grievances has the air of expository contrivance, it is for good reason. At bottom, defendants' argument is that plaintiffs' counsel have repeatedly shown themselves to be bad people, whose clients should perforce be punished by an equally bad instruction.

Plaintiffs' counsel have done their best to comply with the Court's rulings as plaintiffs' counsel understood them. It does not constitute valid substantive grounds for altering the Court's instruction, however, that plaintiffs' counsel have read the instruction aloud to the jury, nor that plaintiffs have asked the jury to draw precisely the sort of inference that Instruction No. 1.9 would permit. Indeed, if any possible argument would ever satisfy defendants that the jury is not being invited to review DOE's classification decisions, it should be an argument like the one made by plaintiffs in the mini-closing. That argument was based on defendants' own exhibit. As that exhibit shows, by 1994, DOE had already made a decision, immune from judicial review and equally immune to second-guessing from defendants, that a MUF document could be declassified without damage to national security. Yet even after declassification, the document was provided only to DOE's serial dose-reconstruction contractor, RAC, and not in response to plaintiffs' discovery requests. Such a differential in treatment would be of interest *whether or not* the documents at issue were originally classified for good and legitimate reasons.

In any case, nothing in this litigation calls upon the Court or the jury to review any declassification decision by DOE. No one has asked the Court or the jury to override any DOE classification decision, or to find that any such decision was made in error. Plaintiffs have simply argued to the jury that it is entitled to consider DOE's interests when considering the unavailability of certain evidence. The even-handed compromise adopted in Instruction No. 9, in lieu of the stronger spoliation instruction that plaintiffs still believe to be warranted, constitutes no affront to DOE's classification authority. Nor has DOE itself sought to intervene for the purpose of asserting that it does.

As for defendants' proposed substitute instruction, plaintiffs have previously stated their objections when defendants tendered substantially similar instructions. *See, e.g.*, Plaintiffs' Objections to Defendants' Supplemental Jury Instructions, at 5 (Sept. 29, 2005) (objections to defendants' proposed limiting instruction no. 3) [Ct. Rec. 1469]. We will briefly state plaintiffs' objections to the latest instantiation of defendants' proposal.

What "claims" are before the Court and the jury in this case is a function, in part, of what causes of action are legally cognizable and within this Court's jurisdiction. To state to the jury that there is no "claim" of overclassification might falsely imply to the jurors that plaintiffs elected to forego a claim or cause of action that would have been cognizable in tort, had plaintiffs only located evidence to support it. What "evidence" is before the jury, meanwhile, is partly a function of what evidence has been admitted (some of which defendants choose to overlook). To suggest to the jury that "there is no evidence in this case" that defendants or persons in privity with defendants did anything to impede disclosure would falsely imply the nonexistence of such evidence.

In addition, it would be either false or tautologous to say, as defendants propose, that "Both Defendants and Plaintiffs have had access to the information that the Department of Energy has provided to the parties in this case." It would be a mere tautology, albeit a misleading one, if all that were meant were that the DOE has provided to the parties (in the plural) whatever information it has provided to the parties (in the plural). It would be false (or without foundation, at the least) to the extent intended to imply equal access by the parties to information in DOE's possession and control.

Finally, the concluding language of defendants' proposed instruction appears to confuse two very distinct issues: (a) the admissibility of evidence about the wisdom or motivation behind particular declassification decisions by DOE in this litigation; and (b) how a jury may weigh the

*Plaintiffs' Opposition to Defendants' Proposed Revisions to Instruction No. 1.9 – Page 5*

unavailability of evidence in light of DOE's multiple interests as (1) guardian of nuclear secrets and (2) defendants' indemnitor. To require that the jury consider only DOE's role in preventing proliferation, while insisting that the jury ignore DOE's other real interests, would unfairly bias the scales. Those scales are already balanced, as matters stand, in a neutral and even-handed instruction. The Court should deny defendants' motion.

Dated: January 3, 2006   s/ Peter Nordberg
Merrill G. Davidoff
Peter Nordberg
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

Attorneys for Plaintiffs
And the Class

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will effect service of such pleading upon:

>David M. Bernick, Esq.
>Kirkland & Ellis LLP
>200 East Randolph Drive
>Chicago, IL 60601
>
>and
>
>Joseph J. Bronesky, Esq.
>Sherman & Howard, LLC
>633 Seventeenth Street, Suite 3000
>Denver, CO 80202
>
>Attorneys for Defendants

                                                             s/ Peter Nordberg
                                                             Peter Nordberg