IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-181-JLK

MERILYN COOK, *et al.*,

    Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

    Defendants.

---

### DEFENDANTS' AMENDED PROFFER WITH RESPECT TO THE TESTIMONY OF SHIRLEY FRY

---

    Defendants recognize that this issue has been raised previously but are not certain that the proffer of Dr. Fry's testimony has been made entirely clear in past submissions. As such, Defendants submit this precise proffer of Dr. Fry's proposed testimony. Defendants recognize the many burdens that the Court faces, but Defendants believe that this particular issue is important, as Dr. Wing's factual testimony will go unrebutted due to the Court's ruling that any testimony that Defendants offer in rebuttal must meet the expert disclosure requirements of Federal Rule of Evidence 26(a).

    On October 3, 2005, the Court denied Defendants' motion to exclude the testimony of Dr. Stephen Wing. (*See* 10/3/05 Minute Order.) Defendants, in response, identified Shirley Fry

as a witness to testify in rebuttal to Dr. Wing. The Court condoned this, stating:

> Well, they're not offered as expert witnesses, they're offered as rebuttal witnesses, and it's a question of when they may be called, and if they are to be called in the defense case and not limited to solely as rebuttal witnesses, then you can take their depositions. If all they're going to do is stand up and say, we know Wing and he's a nut, I—no disrespect intended—but I'm just trying to express myself. If that's what they're going to do, then that's fine. They can call a rebuttal witness to do that. . . .They really are being disadvantaged by the lateness of Dr. Wing's being permitted to testify. So if that's what they're going to do, they can do it.

(10/7/05 Trial Tr. at 352–53.)

As Defendants anticipated when they identified Dr. Fry as a witness, Dr. Wing made several factual statements during his trial testimony that impugned the integrity of Dr. Fry, as well as epidemiological research programs conducted and funded by the Department of Energy (DOE), including the program at Oak Ridge Associated Universities that Dr. Fry headed. Through Dr. Wing, Plaintiffs attempted to suggest that the entire body of science on the radiation health effects of plutonium has been manipulated by DOE and the research culture that pervaded it. Dr. Fry's testimony was offered to rebut these very serious factual credibility allegations raised by Dr. Wing.

Though Dr. Fry has extensive background in the field of epidemiology, it does not follow that any testimony she offered having to do with her epidemiological work while at the DOE would be expert testimony. A percipient witness with first-hand knowledge of relevant events may testify as to her own observations and experiences, even if she also happens to have expertise in a specialized area. *See Gomez v. Rodriguez*, 344 F.3d 103, 113–115 (1st Cir. 2003) (abuse of discretion to exclude witness for failure to submit an expert report who, though

2

possessing expert knowledge in an area, was not providing expert testimony under Federal Rule of Evidence 702); *West Tenn. Chapter of Assoc. Builders and Contractors, Inc. v. City of Memphis*, 219 F.R.D. 587 (W.D. Tenn. 2004) ("[T]he fact that a person has expertise [does not] mean that the person *must* be offered as an expert at trial.") (emphasis in original); *see also* Fed. R. Evid 701, advisory committee's notes (2000) ("The amendment does not distinguish between expert and lay *witnesses*, but rather between expert and lay *testimony*.").

Moreover, concerns that a witness providing proper relevant testimony may stray into impermissible areas are properly addressed by objections to specific testimony—not total exclusion of the witness, much like when the Court allowed the testimony of Dr. Biggs. (11/7/05 Trial Tr. at 4207–08); *see also*, *United States v. Shay*, 57 F.3d 126, 134 n.6 (1st Cir. 1995); *Pioneer Hi-Bred Int'l Inc., v. Ottowa Plant Food, Inc.*, 219 F.R.D. 135, 143 (N.D. Iowa 2003).

I. **FACTS TO WHICH DR. WING TESTIFIED OF WHICH DR. FRY HAS PERSONAL KNOWLEDGE**

- Dr. Wing testified that a study of Oak Ridge workers that he completed in the early 1980s was "not well-received" and that he "had been told from the beginning of when [he] went to work at Oak Ridge that we were not supposed to find relationship between radiation and mortality or cancer." (11/16/05 Trial Tr. at 5673.)

- Dr. Wing testified that the advisory committee that oversaw the epidemiologic studies conducted at Oak Ridge was "upset because we found this relationship between the radiation readings and the cancer rates and they thought we shouldn't find such a relationship." (11/16/05 Trial Tr. at 5674.)

- Dr. Wing testified that at a meeting with the Advisory Committee, he was taken aside by an epidemiologist with the National Institutes of Health who "asked me to do some other manipulations of the data. . . . And then when I was resistant to that because I didn't think [it] made sense, he shook his finger and told me, go back to Chapel Hill and get the right answer."

3

(11/16/05 Trial Tr. at 5677.)

- Dr. Wing testified that the "director of the epidemiology program at Oak Ridge Associated Universities" who was a coresearcher on the study "asked that her name be withdrawn before the article was published." (11/17/05 Trial Tr. at 5680.)

## II. FRY PROFFER

Dr. Fry has personal knowledge of the facts identified below. In response to the factual testimony given by Dr. Wing, Dr. Fry would testify to and explain the following facts:

- Dr. Fry was present at the same Advisory Committee meeting at which Dr. Wing's worked was discussed. She would testify to what she observed at the same meeting and that members of the Committee were not "upset" at Dr. Wing's study.

- Dr. Fry would testify through her personal experiences and knowledge that the comments made at this meeting were no different than comments given to researchers at other Advisory Committee meetings where expert work is examined and tested.

- Dr. Fry would testify based on her personal experiences that she never was encouraged to manipulate data to reach a conclusion favorable to DOE.

- Dr. Fry would testify that she was the co-researcher on Dr. Wing's study who asked to have her name removed and would explain why she made that request.

Dated: January 4, 2006                                  Respectfully submitted,

/s/ John E. Tangren
One of the Attorneys for the Defendants
David M. Bernick
Douglas J. Kurtenbach
Ellen Therese Ahern
Mark J. Nomellini
John E. Tangren
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636

4

Phone:  312-861-2000
Fax:    312-861-2200

Joseph J. Bronesky
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Phone:  303-297-2900
Fax:    303-298-0940

Attorneys for ROCKWELL
INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY

Dated:  January 4, 2006

Respectfully submitted,

/s/ John E. Tangren
One of the Attorneys for the Defendants
David M. Bernick
Douglas J. Kurtenbach
Ellen Therese Ahern
Mark J. Nomellini
John E. Tangren
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636
Phone:  312-861-2000
Fax:     312-861-2200

Joseph J. Bronesky
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Phone:  303-297-2900
Fax:     303-298-0940

Attorneys for ROCKWELL INTERNATIONAL CORPORATION and THE DOW CHEMICAL COMPANY

## CERTIFICATE OF SERVICE

  I hereby certify that on January 4, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses for the following:

Peter B. Nordberg, Esq.
c/o Karen M. Markert
Apartments at Denver Place, Apt. 2812
1880 Arapahoe Street
Denver, CO 80202
pnordberg@bm.net
kmarkert@bm.net

Gary B. Blum, Esq.
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206
blumg@s-d.com

                /s/ Kari Knudsen
                Kari Knudsen (legal assistant)