**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, *et al.*,

        Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

        Defendants.

___

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DR. LAURENTIUS MARAIS**
___

        Plaintiffs have known since February 1999 that Defendants would likely seek to introduce the opinions of Dr. Laurentius Marais at trial. In the almost *six years* since this disclosure, Defendants have repeatedly identified Dr. Marais as a possible trial witness. Thus, Plaintiffs' present motion to exclude Dr. Marais' opinions as untimely and inadequate, and their request that Dr. Wecker may not testify as to these opinions, should be denied.

**I.  PLAINTIFFS HAVE KNOWN SINCE FEBRUARY 1999 THAT DR. MARAIS' OPINIONS WOULD LIKELY BE PRESENTED AT TRIAL.**

        The record evidence flatly contradicts Plaintiffs' claim that Defendants failed to timely disclose Dr. Marais as a potential trial witness. As an initial matter, Plaintiffs misstate the facts. In March 1997, Defendants disclosed the expert opinions of Dr. William E. Wecker, a statistician

and applied mathematician who is currently President of William E. Wecker Associates, Inc. (Ex. B, Report of Dr. William E. Wecker)  In late 1998/early 1999, Dr. Wecker was seriously ill and for periods hospitalized in the Intensive Care Unit.

Given these unexpected and extreme circumstances, on February 4, 1999, Defendants identified as potential trial witnesses *both* Dr. Wecker and his colleague Dr. M. Laurentius Marais, also a statistician and applied mathematician who is the Vice President and Senior Consultant at Dr. Wecker's firm.  (*See* Ex. C, Defs.' Pldg In Resp. to Court's 1/5/99 Order at 2) Defendants also provided a declaration by Dr. Marais that set forth several additional opinions in great detail, as well as the bases and reasons for his opinions.  (Ex. D, Marais Decl.)  Defendants informed the Court of all these facts on February 8, 1999:

> Last Friday, we also filed a list of our trial experts; and the list is the same as the original list, with the exception of Mr. Marais, who is own [sic] one of our original experts' partners.  And that original expert was in the ICU, and so we -- on our list we said Wecker/Marais to cover ourselves in case something happens to Dr. Wecker.

(Ex. E, Tr. of 2/8/99 Hrg. at 14-15)

Plaintiffs claim now that Dr. Marais' opinions are untimely because "Dr. Marais first appeared on defendants' tentative witness list on November 7, 2005."  (Pls.' Mot. at 2)  As the record evidence establishes, this claim is false.  Plaintiffs have been repeatedly informed since February 1999 that Dr. Marais' opinions may be presented at trial:

- **February 4, 1999**: Defendants identify Dr. Marais as a trial witness. (*See* Ex. C, Defs.' Pleading In Response to Court's 1/5/99 Order at 2);

- **February 8, 1999**: Defendants inform Court that Dr. Marais will be a trial witness.  (*See* Ex. E, Tr. of 2/8/99 Hrg. at 14-15);

2

- **December 27, 2000**: In a *joint submission* with Plaintiffs, Defendants identify both Dr. Wecker and Dr. Marais as experts that may be called at trial. (*See* Ex. F, Jt. Submission Pursuant to the Court's Order of Nov. 16, 2000, at 42)

- **December 10, 2003**: In *another joint submission*, Defendants identify Dr. Marais as a potential trial witness. (*See* Ex. G, Status Rpt. Responding to the Court's September 11, 2003 Order)

- **September 29, 2005**: Days before the start of trial, Defendants filed their Amended Pre-Trial Submissions identifying both Dr. Marais and Dr. Wecker as potential witnesses *and* describing the general subject matter of their testimony. (*See* Ex. H, Defs.' Am. Pre-trial Submissions at Ex. A)

In short, the extensive record evidence undermines Plaintiffs' excuse that they "did not raise any issues concerning Dr. Marais prior to the Court's pretrial deadlines for *Daubert* motions because defendants did not identify Dr. Marais as a potential trial witness until November 2005." (Pls.' Mot. at 2) Indeed, as the facts establish, it is Plaintiffs' present motion -- not Defendants' disclosure -- that is untimely.[1]

Under these circumstances, Plaintiffs cannot claim that they will be prejudiced if Dr. Marais' opinions are presented at trial. (Pls.' Mot. at 1) Plaintiffs have had ample opportunity to move to strike Dr. Marais from Defendants' witness lists, and at a minimum, to take a deposition of Dr. Marais based on the opinions in his report. Instead, they did nothing for almost six years.

## II. DR. MARAIS' DECLARATION SATISFIES THE REQUIREMENTS OF RULE 26(A)(2)(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE.

Plaintiffs' assertion that Dr. Marais' Declaration fails to comply with Rule 26(a)(2)(B) elevates form over function. As an initial matter, there is nothing in Rule 26 requiring that a

---

[1]  Given that there is no factual basis to Plaintiffs' excuse, the present motion also should be denied as a violation of the Court's November 10, 2005, Order regarding motion practice.

3

declaration or affidavit cannot also be an expert report. As evident from a review of the Marais Declaration, Dr. Marais submitted exactly the type of report required by Rule 26(a)(2)(B).

*First*, Dr. Marais' Declaration contains "a complete statement of all opinions to be expressed and the basis and reasons therefore." Fed.R.Civ.P. 26(a)(2)(B) Indeed, Dr. Marais' 28-page declaration sets forth in great detail the matters that Dr. Marais was asked to examine, his opinions, and a detailed explanation of the bases and reasons therefor. (*See* Ex. D, Marais Decl. at pp. 2-33) Furthermore, Dr. Marais explains in his Declaration that: "I have worked with Dr. William E. Wecker on every aspect of his previous reports in this matter. This declaration incorporates the opinions expressed in those reports." (Ex. D, Marais Decl. at 1)

*Second*, Dr. Marais' Declaration clearly identifies the "data or other information considered by the witness in forming the opinions . . . ." Fed.R.Civ.P. 26(a)(2)(B) Indeed, Dr. Marais explains that his opinions are based not only on his "background, knowledge, and experience in applied mathematics and statistics," but also on his review and statistical analyses of a detailed list of documents. (*See* Ex. D, Marais Decl. at pp.1-2)

*Third*, appended to the Marais Declaration are various exhibits that were "used as a summary of or support for the opinions." Fed.R.Civ.P. 26(a)(2)(B) (*See, e.g.,* Ex. D, Marais Decl. at Exh. 2-4) *Fourth*, Defendants provided Plaintiffs with Dr. Marais' qualifications, which include a list of Dr. Marais' publications and working papers. (*See, e.g., Id.* at Ex. 1)

As for compensation, although Dr. Marais' hourly rate, as well as a list of any other cases in which he has testified as an expert, were not appended to Dr. Marais' Declaration, Plaintiffs cannot claim prejudice where, as here, they have not once sought to depose Dr. Marais in the

4

intervening six years since he was first disclosed. Nor can Plaintiffs claim any prejudice where such information is being provided in advance of any deposition of Dr. Wecker or Dr. Marais on the matters set forth in Dr. Marais' Declaration. (*See* Ex. M (List of other cases in which Marais has testified as an expert, and reflecting Dr. Marais' hourly rate))[2]

## III. DR. WECKER SHOULD BE PERMITTED TO TESTIFY ABOUT THE OPINIONS OF HIS COLLEAGUE AND EMPLOYEE.

Dr. Wecker and Dr. Marais are not only both statisticians and mathematicians, they work closely together as part of the same firm and as colleagues on this project. (*See* Ex. I, Wecker Dep. at 6-7) (Dr. Marais "works with me and *has worked with me on this project*. He works -- he's an employee of William E. Wecker Associates, Inc.") (emphasis added) Dr. Marais reiterated in his Declaration that "I have worked with Dr. William E. Wecker *on every aspect of his previous reports in this matter.*" (Ex. D, Marais Decl. at ¶ 3) (emphasis added)

Thus, in submitting the Marais Declaration, Dr. Marais simply provided opinions as a continuation of his ongoing work with his employer, Dr. Wecker, particularly in light of the unexpected and serious nature of Dr. Wecker's illness. (Ex. E, Tr. of 2/8/99 Hrg. Tr. at 14) To highlight the relationship between his opinions and Dr. Wecker's work, Dr. Marais stated that his

---

[2] Plaintiffs claim that Dr. Marais has "absolutely no compunction about offering expert opinions" on subjects such as "plutonium released to the environment," "proper format of survey inquiries," and "interpretation of Decision Research/Flynn survey responses." (Pls. Mot. at 4) (citing to paragraphs 5-9, 31, and 33 of Marais Decl.) Plaintiffs mischaracterize his opinions, which apply Dr. Marais' statistical and mathematical experience in logic, analysis, sampling, and sampling methodologies. However, Plaintiffs' complaint is moot because Dr. Wecker does not seek to testify about the opinions set forth in these paragraphs of the Marais Declaration. (*See* Ex. A, Proffer of Dr. Wecker testimony)

Declaration "incorporates the opinions expressed in those [Dr. Wecker's] reports." (Ex. D, Marais Decl. at 3)[3]  Under these circumstances, Dr. Wecker should be permitted to testify as to the additional opinions by his long-time partner Dr. Marais in the same manner that the Court permitted Dr. John Frazier to testify about the work and opinions of Dr. Frazier's partner Dr. Auxier.  (Ex. J, Defs.' Resp. to Pls.' Mot. to Limit the Scope of Testimony of Dr. John R. Frazier; Ex. K, 12/12/05 Order (denying Plaintiffs' motion))  Indeed, it is even more appropriate to permit Dr. Wecker to testify about the matters in the Marais Declaration because, unlike in the case of Drs. Frazier and Auxier, Defendants are not seeking to switch out or substitute the author of the original report, but rather, to have Dr. Wecker speak about the continued work of his partner Dr. Marais, which plaintiffs acknowledge he has adopted.  Furthermore, out of an abundance of caution, Dr. Wecker is being submitted to a deposition on the opinions in the Marais Declaration identified in the attached proffer this Saturday January 7, 2005.  (Ex. A)

In sum, plaintiffs cannot have it both ways.  Dr. Marais' opinions have been fully disclosed for over six years and were prepared by Dr. Marais precisely because of Dr. Wecker's illness.  After repeatedly providing notice to Plaintiffs that they would seek to introduce Dr.

---

[3] Given these facts, the cases relied on by Plaintiffs are inapposite. *See, e.g., Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 613-14 (7th Cir. 2002)) (omitting full quote that "[a] scientist, however, well credentialed he may be, is not permitted to be the mouthpiece of a scientist ***in a different specialty***") (emphasis added); *Sunstar, Inc. v. Alberto-Culver Co., Inc.*, Nos. 01-C-0736 & 01-C-5825, 2004 WL 1899927, at *24-25 (N.D. Ill. 2004) (no indication that Sunstar's experts were colleagues from the same firm who had worked together on the same project). *Sunstar* is also inapt because in the present case Dr. Wecker's report was filed before Dr. Marais' Declaration.  Therefore, Dr. Wecker could not have adopted Dr. Marais' opinions in his expert report.

6

Marais' opinions, Defendants informed Plaintiffs that Dr. Wecker will testify, in part, on the opinions in the Marais Declaration specified in the attached proffer.  If Dr. Wecker is not allowed to testify, then Dr. Marais should be permitted to testify as to the specified matters in the Marais Declaration.  (*See* Ex. L, Defs.' 12/31/05 Witness List)  But Plaintiffs cannot do nothing for almost six years in the face of Defendants' repeated notices and then seek to exclude Dr. Marais' opinions from trial in their entirety on the meritless of grounds of claimed untimeliness and purported prejudice.

Dated:  January 4, 2006                                                        Respectfully submitted,


s/ John E. Tangren_____
One of the Attorneys for the Defendants
David M. Bernick
Douglas J. Kurtenbach
Ellen Therese Ahern
Mark J. Nomellini
John E. Tangren
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636
Phone:  312-861-2000
Fax:     312-861-2200

Joseph J. Bronesky
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Phone:  303-297-2900
Fax:     303-298-0940

Attorneys for ROCKWELL
INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY

**CERTIFICATE OF SERVICE**

        I hereby certify that on January 4, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses for the following:

Peter B. Nordberg, Esq.
c/o Karen M. Markert
Apartments at Denver Place, Apt. 2812
1880 Arapahoe Street
Denver, CO 80202
pnordberg@bm.net
kmarkert@bm.net

Gary B. Blum, Esq.
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206
blumg@s-d.com

                                                   s/ Kari Knudsen_____
                                                   Kari Knudsen (legal assistant)