**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, *et al.*,

        Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

        Defendants.

---

**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR MISTRIAL
OR, IN THE ALTERNATIVE, DEFENDANTS' PROPOSED INSTRUCTIONS**

---

Plaintiffs admit in their response that their statements go to how the *motivations of the DOE* as an indemnitor influenced DOE's decisionmaking in the declassification process -- a matter that this Court has clearly held is off-limits. Plaintiffs' response confirms that Defendants' proposed instruction is not only proper, but necessary.

**I.   PLAINTIFFS' "EXPLANATION" IS UNSUPPORTED BY THE RECORD FACTS AND CONFIRMS THAT AN INSTRUCTION IS NECESSARY.**

Plaintiffs admit that they raised in the mini-closings "the timing of the MUF declassification." (Pls.' Br. at 3) Specifically, Plaintiffs explain that they sought to raise before the jury the issue of the "differential in treatment" (Pls.' Br. at 4) so that the jury could then weigh the unavailability of the classified evidence *in light of DOE's interests as defendants' indemnitor* (Pls.' Br. at 6). Plaintiffs want the jury to infer that DOE conducted the

declassification decision in bad faith by stonewalling Plaintiffs, while declassifying documents "like Jiminy Cricket" for RAC *because DOE was motivated by the indemnity* -- even though RAC had no involvement in this case at that time, and for many years thereafter.  Plaintiffs' explanation underscores the need for an instruction for several reasons.

*First*, Plaintiffs' explanation highlights another attempt to evade the Court's rulings relating to classification and the DOE.  This Court has already held that whether DOE conducted the declassification process in good faith, including the timing of DOE's decisions, is inadmissible.  *See, e.g.,* Op. Br. at 2 ("'It isn't . . . what the Department of Energy does, how many people they have working on this or not working on it, ***when they make their decision, none of that matters.***'") (emphasis added).  The Court has also stressed that the DOE is "not a real party in interest" and "I can't get into the fact of who has bankrolled this case or what it's about."  (Ex. A, 1/4/06 Trial Tr. at 8691)

*Second*, Plaintiffs' attempt to separate questions of "timing" of declassification decisions from DOE's decisions as to whether a document is classified creates a distinction without a difference.  In both cases, Plaintiffs invite the jury to draw the same inference -- the DOE made its declassification decisions in bad faith.  In both cases, the jurors cannot fully and fairly determine this issue because they cannot see classified materials.  For example, the jurors cannot *compare* the "timing" of declassification decisions -- which is what Plaintiffs claim they want the jury to do -- because the jurors have no basis to evaluate whether the various groups of materials requested by RAC (of specific content, quantity, and selection) *legitimately* took longer or

shorter to review for declassification than different groups of materials (of varying content, quantity, and selection) requested by Plaintiffs.

*Third*, contrary to Plaintiffs' claim, Defendants have contested Plaintiffs' claim that "DOE readily declassified documents at RAC's request while failing to act on plaintiffs' document requests for a period of years." (Pls.' Br. at 3) (*See, e.g.,* Op. Br. at 8-9) (providing evidence that DOE required RAC and Plaintiffs to follow the same rules). It is Plaintiffs who do not address Defendants' evidence.

Instead, Plaintiffs mistakenly rely on DX-542[1] (a May 1995 memorandum authored by Paul Voilleque titled "Examination of Mass Balance Accounting as a Means for Estimating Plutonium Releases") to support their claim of "differential treatment." (attached Ex. B) But DX-542 states only that (1) RAC requested the declassification of notes taken while reviewing the 1957 fire and, separately, that (2) "Information regarding the plutonium accounting for the two fires was declassified and released by Secretary O'Leary in June 1994, together with information on plant inventory differences at Rocky Flats and elsewhere." (DX-542 at 2)

DX-542 does not set forth (a) the *specific* identity and number of documents RAC requested be declassified, (b) the date on which information was declassified at RAC's request, (c) how long it took RAC to obtain specific declassified documents, and (d) how the specific number/group of documents RAC requested compared with Plaintiffs' requests. In fact, Paul

---

[1] Plaintiffs fail to append a true and correct copy of DX -542 as Exhibit A to their motion because it is attached to a portion of a HAP transcript that is not a part of DX-542. A true and correct copy of DX-542 is attached hereto as Exhibit B.

3

Voilleque submitted selected notes for declassification review in July 1993, and did not receive the declassified notes from DOE until almost two years later in 1995.  (*See* Defs.' Am. Proffer of Testimony for Paul Voilleque, at Ex. A)  Under these circumstances, Plaintiffs have no factual basis to claim DX-542 is evidence of "differential treatment."

*Fourth*, Plaintiffs fail to respond to Defendants' explanation that the alleged "differential treatment" is irrelevant since the information is available to the public.  (Op. Br. at 9)  Also, Plaintiffs' complaints about *when* they received various declassified materials cannot overcome the fact that *they did receive the declassified material*.  In other words, even if Plaintiffs' statements involved only the "timing" of when documents were declassified for Plaintiffs (and they do not), that does not change the basic fact that Plaintiffs have these documents.  Thus, Plaintiffs' statements about the "timing" of DOE's declassification decisions do not pass the test articulated by the Court.  (*See, e.g.,* Op. Br. at 3 ("'If you have specific evidence that you tried to bring forth *and you have been frustrated in your effort by the classification process*, that is admissible, that and that alone.'") (emphasis added)

*Finally*, Plaintiffs' claim that the reason they said they "know" the classified documents allegedly cannot be favorable to the defense is because defendants claim MUF is irrelevant is not credible.  (Pls.' Br. at 2)  Plaintiffs did not simply use the words "classified documents," but rather, deliberately described these materials to the jury as "the whited-out redacted evidence" to reinforce to the jury Plaintiffs' prior statements to the jury that DOE abused its classification powers.  (Op. Br. at 5)

4

## II.   PLAINTIFFS OFFER NO EVIDENCE TO SUPPORT THEIR CRITIQUE OF DEFENDANTS' PROPOSED INSTRUCTION.

*First*, Plaintiffs complain the use of the word "claim" may lead jurors to think that plaintiffs "elected to forego a claim or cause of action that would have been cognizable in tort." (Pls. Br. at 5)  This concern is not only highly speculative, it also underestimates the jurors. Regardless, it is not a reason to reject the proposed instruction, which the Court may easily amend by substituting "claim" with "issue" to address Plaintiffs' concerns, if necessary.

*Second*, Plaintiffs argue that the jury should not be instructed about the truth that "there is no evidence or claim in this case that Dow, Rockwell, or their counsel were involved in the Department of Energy's decisions regarding the classification, declassification, or redaction of documents in this case" because it "would falsely imply the nonexistence of such evidence." (Pls.' Br. at 5)  There would be no "false" implication because there is no such evidence of involvement.  Not only are Plaintiffs silent as to the evidence Defendants identified (Op. Br. at 6-7), Plaintiffs also offer *no evidence* to support their assertions.

*Third*, contrary to Plaintiffs' claim, the sentence "Both Defendants and Plaintiffs have had access to the information that the Department of Energy has provided to the parties in this case" is neither tautological or unclear.  (Pls.' Br. at 5)  In any event, it is not a reason to deny the instruction, particularly where the Court may substitute the phrase "provided to the parties" with "made available" to cure any objection, if necessary.

*Finally*, Plaintiffs offer no evidence to support their claim that it would be "false (or without foundation, at the least)" to imply that the parties had equal access to information in

5

DOE's possession and control.  (Pls.' Br. at 5)   Again, Plaintiffs fail to address the extensive record evidence that Defendants identified establishing that DOE made these requested materials available to both parties, and both parties had Q-cleared counsel who could view these documents.  (Op. Br. at 7-8)

Dated:  January 6, 2006                                        Respectfully submitted,


                                                    s/ John E. Tangren_____
One of the Attorneys for the Defendants
David M. Bernick
Douglas J. Kurtenbach
Ellen Therese Ahern
Mark J. Nomellini
John E. Tangren
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636
Phone:  312-861-2000
Fax:     312-861-2200

Joseph J. Bronesky
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Phone:  303-297-2900
Fax:     303-298-0940

Attorneys for ROCKWELL
INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY

## CERTIFICATE OF SERVICE

      I hereby certify that on January 6, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses for the following:

Peter B. Nordberg, Esq.
c/o Karen M. Markert
Apartments at Denver Place, Apt. 2812
1880 Arapahoe Street
Denver, CO 80202
pnordberg@bm.net
kmarkert@bm.net

Gary B. Blum, Esq.
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206
blumg@s-d.com

                                              s/ Courtney Biggins_____
                                              Courtney Biggins (legal assistant)