**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, *et al.*,

      Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

      Defendants.

---

### DEFENDANTS' MOTION TO PRECLUDE REBUTTAL WITNESSES

---

Defendants move to preclude plaintiffs' six proffered rebuttal witnesses from testifying because the proffers are not the proper subject of rebuttal testimony. It is black letter law in the Tenth Circuit that a rebuttal witness may not be called if the issue being rebutted could reasonably have been anticipated to be part of defendants' case. Here, all of the subjects on which plaintiffs seek to present rebuttal testimony could have been (and in many cases were) anticipated by plaintiffs. For instance, the criticisms of Hunsperger, Flynn, and Slovic on which plaintiffs seek to present testimony from Barton/Clark, Hunsperger and Bell, were all disclosed in defendants' expert reports, the depositions of those experts, defendants' opening statement, and defendants' cross-examination of plaintiffs' witnesses. Likewise, the testimony of Till and Norton that plaintiffs seek to rebut with Coyle and Schonbeck were well known to plaintiffs prior to the close of their case. Because plaintiffs were well aware of these issues, it was their burden to respond in their case-in-chief and not to sandbag defendants by waiting for rebuttal.

Moreover, the proffers for at least four of these rebuttal witnesses – Barton, Clark, Bell and Schonbeck – include expert testimony on subjects such as whether there have been health effects from Rocky Flats, whether Hunsperger's appraisals satisfied generally accepted appraisal standards, and whether the cleanup at Rocky Flats is protective of human health and the environment. None of these witnesses has been disclosed as an expert or drafted an expert report in accordance with Rule 26 and the orders of this Court. Plaintiffs cannot be allowed to introduce completely new experts at this late date.

Finally, several of these witnesses do not provide rebuttal testimony, but instead are proffered simply to bolster plaintiffs' case and get the last word on certain issues. For instance, plaintiffs want to introduce the Barton/Clark public perception survey, despite the fact that the Court has consistently excluded other public perception surveys, to bolster the credibility of the Flynn/Slovic survey. Likewise, plaintiffs seek to have Mr. Coyle bolster Mr. Lipsky's credibility despite the fact that Mr. Norton did not attack Mr. Lipsky's credibility and, indeed, testified consistently with the proffer proposed by plaintiffs for Mr. Coyle. The Tenth Circuit has held that rebuttal testimony is only proper to rebut new evidence or new theories and is not admissible if cumulative of plaintiffs' case-in-chief or not responsive to new evidence in defendants' case.

For these reasons, as explained in more detail below, defendants' motion to preclude plaintiffs' rebuttal witnesses from testifying should be granted. Contrary to plaintiffs' representation to the Court that only two witnesses had not been deposed, five of these witnesses have not been deposed. Therefore, if this motion is not granted, these five witnesses will need to be deposed in the next two to three days before the close of defendants' case.

2

## ARGUMENT

**I.     PLAINTIFFS' REBUTTAL PROFFER DOES NOT SATISFY THE TENTH CIRCUIT'S STANDARDS FOR REBUTTAL TESTIMONY.**

**A.     Plaintiffs should not be permitted to rebut defense evidence or theories which they knew about or reasonably could have anticipated.**

Rebuttal testimony is permissible where it rebuts *new* evidence or *new* theories proffered in defendants' case-in-chief. When plaintiffs, however, seek to rebut defense evidence or theories which they knew about or reasonably could have anticipated, the district court should disallow the rebuttal testimony. *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1225 (10th Cir. 2000).

The Tenth Circuit routinely affirms preclusion of witnesses proffered to rebut evidence that they should have reasonably anticipated. *E.g.*, *Flaming v. Colorado Springs Properties Funds I*, 98 Fed. Appx. 796, 800-01 (10th Cir. 2004) (affirming ruling disallowing rebuttal testimony); *Koch*, 203 F.3d at 1224-25 (affirming ruling precluding rebuttal witness); *Comcoa, Inc. v. NEC Telephones, Inc.*, 931 F.2d 655, 663-64 (10th Cir. 1991) (affirming refusal to allow rebuttal testimony). In evaluating reasonable anticipation of defense evidence, the Tenth Circuit looks to the content of expert reports, relevant factual information contained in the record, past pleadings, and defendants' opening statements and cross-examination of witnesses at trial. Thus, rebuttal is only available in cases when defendant's evidence causes unfair surprise.

The Tenth Circuit's *Koch* decision is particularly instructive. In *Koch*, plaintiff sought to call a rebuttal witness to testify about defendants' interpretation of certain accounting standards. The district court precluded this testimony, holding that the plaintiffs reasonably could have anticipated this defense theory in their case-in-chief. *Koch*, 203 F.3d at 1224. Affirming this

ruling, the Tenth Circuit noted that plaintiffs had referenced the relevant evidence and theories in

prior briefs. *Id.* at 1225. What is more, the Tenth Circuit held that testimony which defendants

elicited on cross-examination early in plaintiffs' case-in-chief should have put plaintiffs on

notice of defendants' theory. *Id.* at 1225 ("The effect of this testimony should not have been lost

on the Plaintiffs."). The Tenth Circuit held that the rebuttal testimony was properly excluded.

Similarly, in *Flaming*, the Tenth Circuit refused to allow rebuttal testimony where the

opinions they sought to rebut were contained in defendant's expert report. *Flaming*, 98 Fed.

Appx. at 800-01. Because the defense evidence was previously disclosed, the court ruled that

plaintiffs had not shown that they could not have reasonably anticipated the evidence. *Id.*

### B.      In order to be permissible, plaintiffs must establish that the proffered rebuttal testimony in fact rebuts the defense testimony at issue.

In addition to establishing that the evidence could not have been reasonably anticipated,

plaintiffs must also demonstrate that the proffered rebuttal testimony in fact rebuts the defense

testimony. *See Fashauer v. New Jersey Transit Rail Operations, Inc.*, 57 F.3d 1269, 1287 (3d

Cir. 1995) ("What was really wanted by the plaintiff was to put its vocational expert last and get

the last shot at the jury [rather than actually rebutting anything], and I don't think that's a proper

use of rebuttal"). The Tenth Circuit routinely affirms preclusion of rebuttal witnesses when the

proffered rebuttal testimony does not rebut opinions of defendant's experts. *Munoz v. St. Mary-*

*Corwin Hospital,* 221 F.3d 1160, 1168 (10th Cir. 2000); *Koch,* 203 F.3d at 1224-26.

In *Munoz*, plaintiffs designated Mr. Jeffrey to rebut defense expert Dr. Pace's opinion

related to standards and procedures applicable to interns and plaintiffs' performance during his

residency. *Munoz,* 221 F.3d at 1168. In contrast, plaintiffs' proffer for Mr Jeffrey indicated he

4

would testify about the fairness of personnel procedures and discrimination in employment. *Id.* The court concluded that Mr. Jeffrey did not rebut Dr. Pace. *Id.* The Tenth Circuit affirmed the refusal to allow the rebuttal testimony. *See also Koch*, 203 F.3d at 1224 (finding that rebuttal expert did not actually rebut defendant's expert and precluding testimony).

### C. Plaintiffs should not be permitted to present rebuttal testimony that is repetitive and cumulative.

The Tenth Circuit has also held that it is proper to strike rebuttal testimony that would be cumulative. *E.g., Marsee v. U.S. Tobacco Company*, 866 F.2d 319, 324 (10th Cir. 1989). There, plaintiffs sought to call two doctors on rebuttal to testify to an epidemic of oral cancer among young people who use snuff. Plaintiffs asserted that this testimony was to rebut the defense theory that certain cancers among young people were anomalous. But the issue of an oral cancer epidemic among young people had been raised in plaintiffs' case-in-chief. The Tenth Circuit found that the trial court had properly excluded it as cumulative of plaintiffs' case-in-chief.[1]

## II. PLAINTIFFS' REBUTTAL WITNESSES DO NOT MEET THESE STANDARDS.

### A. Judy Barton/Lauren Clark

Plaintiffs seek to call one of two nurses – Drs. Barton and/or Clark – to rebut the testimony of defendants' experts Drs. Raabe, Frazier, Till, and d'Arge. Specifically, plaintiffs contend that the nurses will respond to the testimony of Drs. Till, Raabe and Frazier concerning

---

[1] *See also McElroy v. Arkansas Log Homes, Inc.*, No. 82-1642-C, 1989 WL 18755 (D. Kan. Feb. 13, 1989). In *McElroy*, the court held that "a trial court is well within its discretion to exclude rebuttal testimony that is cumulative and repetitive of issues raised during plaintiff's case-in-chief." *Id.* The *McElroy* court found that "plaintiffs' rebuttal testimony was merely expected to bolster its case-in-chief, an improper purpose for rebuttal" and that "Plaintiffs had an adequate opportunity to present in their case-in-chief all of the evidence proposed for rebuttal." *Id.*

whether there have been health risks from Rocky Flats and will respond to anticipated arguments of Dr. d'Arge criticizing the methodology of the Flynn and Slovic survey.  In addition, the nurses are expected to testify concerning a public opinion study they were involved in entitled "Rocky Flats Community Needs Assessment" which was published in Fall, 1996.  Plaintiffs should be precluded from offering this testimony for several reasons.

*First*, the proffer is inadequate because it does not specify which points from defendants' case these witnesses will rebut.  For instance, the proffer simply states that they will respond to testimony that "there have been no health effects from Rocky Flats" without any specificity as to what specific points they intend to respond to and without any citation to the record.  This is an improper proffer because it does not allow defendants or the Court to determine what the witnesses will actually testify about and whether it is in response to some brand new point.

*Second*, Barton/Clark's testimony is not proper rebuttal because the testimony they seek to rebut was disclosed in advance of trial.  On the first proffered subject – "address[ing] the health risk testimony of Drs. Raabe, Frazier and Till that there have been no effects from Rocky Flats" (Barton/Clark proffer, Ex. 1) – this testimony was well known prior to the close of plaintiffs' case.  All three of these experts issued expert reports well in advance of trial in which they stated their views about health risks from plutonium at Rocky Flats.  (8/6/04 Frazier Rpt. at 2-3, Ex. 2; 8/6/04 Till Rpt. at iii, 26-31, Ex. 3; 11/19/96 Raabe Rpt. at 1-3, 9-31, Ex.4; 3/16/97 Raabe Rpt. at 1, 4-6, Ex. 5.)  Further, these experts were deposed at length and questioned about their views on health risks from Rocky Flats.  (*E.g.*, Frazier Dep. at 50-51, Ex. 6; Till Dep. at 83-95, Ex. 7; Raabe Dep. at 15-16, 64-65, 113-114, Ex. 8.)  In addition, during opening defense counsel emphasized the lack of offsite health risks from Rocky Flats.  (10/12/05 Tr. at 783-792.)

Defense counsel's cross-examination of plaintiffs' witnesses has brought this point home again and again. (*E.g.*, 11/02/05 Tr. at 3703, 11/16/05 Tr. at 5589-5592.) Accordingly, plaintiffs could have anticipated this testimony by defendants' witnesses, and this is not proper rebuttal.

On the second proffered subject – "address[ing] the anticipated testimony of Dr. d'Arge where he criticized the methodology of the Flynn and Slovic surveys" – this testimony was likewise known well in advance of trial. Dr. d'Arge criticized the Flynn and Slovic survey in his 1997 expert report (3/18/97 d'Arge Rpt. at 1-44, Ex. 9), he was deposed on these criticisms well before trial (d'Arge Dep. at 25-100, Ex. 10), defense counsel raised these same criticisms in opening (10/12/05 Tr. at 817-822), and defense counsel cross-examined Dr. Slovic on these criticisms during trial (11/07/05 Tr. at 4311-4322). Indeed, Dr. d'Arge has not even testified yet, so the filing of this proffer shows that, by definition, plaintiffs *anticipate* the testimony of Dr. d'Arge on the Flynn and Slovic survey. And the basis for that *anticipation* is the prior reports and deposition testimony of Dr. d'Arge. Clearly, this testimony could have been taken on in their case-in-chief and is not the proper subject of rebuttal. *See Flaming,* 98 Fed. Appx. at 800-01 (disallowing rebuttal testimony where there was no unfair surprise regarding defendant's witness testimony); *Koch*, 203 F.3d at 1224-25 (precluding rebuttal witness where plaintiffs should reasonably have anticipated the evidence they sought to rebut).

*Third*, Barton/Clark's testimony should be precluded because it is improper expert testimony. Plaintiffs intend to call Barton/Clark to testify concerning whether "there have been no health effects from Rocky Flats" as well as the "findings and conclusions" of their study of community perceptions about Rocky Flats. (Barton/Clark proffer, Exhibit 1.) Testimony about whether there have been health effects from Rocky Flats clearly requires specialized knowledge

and expertise in health physics, epidemiology or other related fields.  Likewise, testimony about

the conclusions and recommendations contained in a public perception study requires specialized

expertise.  If plaintiffs wanted to elicit such expert testimony, they were required to submit

expert reports in accordance with Rule 26 and this Court's orders.  Barton/Clark were never

disclosed as experts under Fed. R. Civ. P. 26 and did not prepare an expert report.  Plaintiffs

cannot designate new experts during their rebuttal case.  Allowing them to do so would

circumvent Rule 26 as well as this Court's required gate-keeping function for determining *prior

to trial* whether the expert's methodologies are valid.[2]

The Tenth Circuit has specifically held that a plaintiff cannot call an expert during

rebuttal who was never previously disclosed and who was being called to rebut testimony that

could reasonably have been anticipated.  In *Harvey v. General Motors Corp.*, 873 F.2d 1343,

1352 (10th Cir. 1989), the trial court refused to allow the testimony of a rebuttal toxicologist, Dr.

Verdeal.  The plaintiff claimed that he should have been allowed to call Dr. Verdeal to rebut the

testimony of General Motors' expert, Dr. Wingeleth, that a third party was substantially impaired

by marijuana.  The district court had held:

---

[2] Plaintiffs should be held to the same standard as defendants on calling experts who have not
previously issued expert reports.  In this case, the testimony plaintiffs seek to elicit from
Barton/Clark is no different than the testimony that defendants sought to elicit from Mr.
Voilleque.  The report Barton/Clark issued in 1996 after doing a DOE-funded study of
community perceptions around Rocky Flats is no different than the reports Mr. Voilleque issued
after participating in the DOE-funded RAC studies.  They are being called to present the
conclusions of the DOE-funded study they conducted which is no different than what defendants
sought to do with Mr. Voilleque and Dr. Fry.  Thus, if Mr. Voilleque and Dr. Fry are not allowed
to testify, in fairness the Court should not allow Barton or Clark to testify either.

> The issue is why didn't you endorse this person as an expert and give the substance of the testimony at the final pretrial conference when you knew of these issues that were going to arise . . . . I think you should have endorsed this witness as an expert witness and I think that it comes as a surprise to the defendant and the defendant has had no opportunity to depose this witness. The rules, I don't think, bend that far. The objection to the offer of proof is sustained.

*Id.* The Tenth Circuit affirmed. *Id.; see also Fashauer*, 57 F.3d at 1287 (refusing to allow rebuttal testimony by an expert not disclosed pre-trial); *Sundberg v. Keller Ladder*, 189 F. Supp. 2d 671, 683 (E.D. Mich. 2002) (finding "no basis for permitting an essentially non-disclosed expert to testify in rebuttal" when that same expert had not been allowed to testify during the case in chief due to the lack of disclosure). Similarly here, plaintiffs could have elected to designate Barton/Clark as experts and called them during their case-in-chief, but made a strategic decision not so. As such, they did not comply with the rules for expert testimony, and Barton/Clark cannot come in as experts at this late hour.

**Fourth**, Barton/Clark's testimony is not proper rebuttal because it would be cumulative of that of Flynn and Slovic and is simply intended to bolster the credibility of their study. Barton/Clark's 1996 public perception study has been available to plaintiffs and their experts for years. Indeed, Mr. Hunsperger brought it to his deposition back in 1997. (04/24/97 Hunsperger Dep. at 157:7-17, Ex. 11) Plaintiffs did not rely on it in their case-in-chief, despite its availability, but now want to rely on it to add credibility to Flynn and Slovic's study. This is improper rebuttal. *See Marsee*, 866 F.2d at 324 (refusing to allow redundant rebuttal designed to bolster case-in-chief). Plaintiffs also seek to admit the Broomfield opinion survey through Barton/Clark, despite the fact that the Court previously refused to admit the survey. They should not be allowed to get evidence in through rebuttal that they were not permitted to get in during

their case-in-chief.  Barton/Clark should be precluded from testifying for these additional reasons.

**B.      Thomas Coyle**

Plaintiffs seek to call former FBI agent Thomas Coyle to respond to Michael Norton's testimony and to rebut unspecified attacks on Jon Lipsky in graphics and exhibits.  Plaintiffs assert that Mr. Coyle will testify to the following subjects:  (1) he approved the search warrant; (2) he believed there was evidence to support the search warrant at the time; (3) the crimes were serious; (4) the investigation was a major investigation; (5) Lipsky was a meticulous, competent agent; and (6) Lipsky would not distort the truth for any reason.  (Coyle proffer, Ex. 12) Plaintiffs should be precluded from presenting this testimony for several reasons.

*First,* plaintiffs could have raised each of these issues in their case-in-chief.  In fact, plaintiffs did offer similar testimony from Jon Lipsky himself on most of these points.  Mr. Lipsky testified that the search warrant was approved by other members of the investigation team, that he believed there was evidence to support the issues raised in the search warrant at the time of the raid, that the crimes at issue were serious, that the investigation was a major investigation and that he was a careful, experienced, responsible agent.  (*See, e.g.* 10/25/05 Tr. at 2531.)  Further, Mr. Lipsky has been employed by plaintiffs for nearly a year.  Plaintiffs obviously knew or could have determined who Mr. Lipsky's FBI supervisor was and called him in their case-in-chief.  Moreover, very early in this trial, defendants disclosed that they would likely call Michael Norton to respond to issues raised by Jon Lipsky (*see* Def's. Stmt. Concerning its Trial Witness List filed 10/5/05, Ex. 13).  Mr. Norton's congressional testimony, which spells out the substance of almost everything Mr. Norton said, has been available to

plaintiffs for years. There could be no unfair surprise in anything Mr. Norton testified about

warranting rebuttal by Mr. Coyle. *See Flaming,* 98 Fed. Appx. at 800-01; *Koch,* 203 F.3d at

1224-25. Accordingly, plaintiffs should be barred from presenting this testimony on rebuttal.

*Second,* Mr. Coyle's proffered testimony is not proper rebuttal. Mr. Norton's testimony

was very focused. Mr. Norton testified essentially to two points: that he had been truthful and

accurate in the testimony he gave to Congress regarding the Rocky Flats investigation; and that

he did not "shut down" or short circuit any aspect of the criminal investigation prior to the time

the guilty plea was entered. The testimony that plaintiffs seek to offer from Mr. Coyle does not

contradict Mr. Norton's testimony. Indeed, Mr. Norton testified that: (1) the U.S. Attorney's

office had approved the search warrant (12/14/05 Tr. at 7925); (2) he believed there was

evidence to support the search warrant at the time of the raid (12/14/05 Tr. at 7951-53); (3) the

crimes at issue in the investigation were serious (12/14/05 Tr. at 7989; *see also id.* at 7951-53,

7960); and (4) the investigation was a major investigation (12/14/05 Tr. at 7929-31, 7936-38).

Mr. Norton did not question Lipsky's competency as an FBI agent. To the contrary, Mr. Norton

testified: "I have no reason to believe that he wasn't qualified and competent." (12/14/05 Tr. at

7931)

This is no different than *Koch.* In *Koch,* plaintiffs claimed that defense expert Ms.

Markel disputed the testimony of Mr. Hall and sought to call Mr. Gibbs to rebut to Markel's

testimony. *Koch,* 203 F.3d at 1224. But, Markel did not dispute Hall's testimony. *Id.* at 1226.

Thus, the proffered rebuttal testimony from Gibbs was stricken. So too here, Norton did not

dispute the propositions plaintiffs seek to rebut through Coyle. Hence, Mr. Coyle should not be

11

permitted to offer such rebuttal testimony. *See also Munoz,* 221 F.3d at 1168 (striking

plaintiff's rebuttal witness where the proffered testimony did not rebut defendant's witness).

**Third,** it would be improper to allow Mr. Coyle to give character testimony to bolster Mr.

Lipsky's reputation under these circumstances. Plaintiffs assert that they seek to have Mr. Coyle

testify that Mr. Lipsky "would not distort the truth for any reason." (Coyle proffer, Ex. 12.)

However, under Fed. R. Evid. 608(a)(2), such character evidence is only relevant where the

character of the witness for truthfulness has been attacked. *See Mason v. Texaco*, 948 F.2d 1546,

1556 (10th Cir. 1991) (evidence properly excluded under Rule 608 where objectivity, not

character for truthfulness or untruthfulness, was being challenged); *see also id.* at 1556 (Rule 608

is subject to Rule 403); *United States v. Drury*, 396 F.3d 1303, 1314-16 (11th Cir. 2005). Here,

Michael Norton did not attack Jon Lipsky's honesty and integrity. (12/14/05 Tr. at 7931) To the

contrary, it was Mr. Lipsky who claimed Mr. Norton had misrepresented himself to Congress

and the public. (*See, e.g.,* 10/27/05 Tr. at 2949.) Mr. Norton merely defended his own

truthfulness: "I really don't know what Mr. Lispky has said, but I certainly do believe what I

testified to under oath on that occasion and on this occasion were true and correct." (12/14/05

Tr. at 7954-56, 7968.)

**Fourth,** Mr. Coyle's rebuttal testimony should be barred because it would be cumulative.

Jon Lipsky and Michael Norton have already testified to the subjects that plaintiffs seek to elicit

from Mr. Coyle on rebuttal. Where the proffered rebuttal testimony is cumulative and repetitive

of issues previously raised during the trial, it is properly excluded. *Marsee*, 866 F.2d at 324.

**C.** **Wayne Hunsperger**

In their proffer for Mr. Hunsperger, plaintiffs state that Mr. Hunsperger will "respond to the criticisms made by defense witnesses [already called and yet to be called] to his determination of diminution in property value and his calculation of damages." (Hunsperger proffer, Ex. 14.) Plaintiffs provide no further detail.

As an initial matter, plaintiffs' Hunsperger proffer is woefully inadequate to establish that he is a proper rebuttal witness. The proffer does not identify what Mr. Hunsperger will say or what specific testimony will be rebutted. Importantly, plaintiffs have not identified *any* criticisms that they were not able to reasonably anticipate during their case in chief. *See Koch*, 203 F.3d at 1224-25. Nor have they identified *any* testimony that has caused them any unfair surprise. *See Flaming*, 98 Fed. Appx. at 800-01.

In any event, Mr. Hunsperger cannot provide any permissible rebuttal testimony because plaintiffs have been well aware of defendants' criticisms of Mr. Hunsperger's methodology for years, and could reasonably have anticipated such criticisms. Plaintiffs could have addressed these criticisms during Mr. Hunsperger's *six-hour* direct examination, but chose not to do so.

For instance, Dr. d'Arge's criticisms of the Flynn and Slovic survey and Hunsperger's analogous case studies method are set forth in detail in his March 18, 1997 report (Ex. 9, at 1-45) and are updated in his August 6, 2004 supplemental report (Ex. 15, at 2-34). Dr. Wecker's March 19, 1997 report (Ex. 16, at 5-8) and the 1999 Marais declaration (Ex. 17, at 6-25) set forth Dr. Wecker's statistics-related criticisms of Mr. Hunsperger's methodologies, including his criticisms of Hunsperger's analogous case studies, his use of the Flynn and Slovic survey, his vacant land analysis, his MLS analysis, and the Radke regression relied upon by him. Mr.

13

Dorchester explains his criticism of Hunsperger's failure to follow appraisal standards in his March 17, 1997 report (Ex. 18, at 1-22), as well as in his August 2, 1997 declaration (Ex. 19, at 1-9). Dr. McFadden's criticism of the Radke regression relied upon by Mr. Hunsperger are specified in his April 16, 1997 report (Ex.20, at 1-30) (also an affidavit), his March 5, 1998 affidavit (Ex. 21, at 1-16), and his February 1, 1999 affidavit (Ex. 22, at 1-63). Plaintiffs also had the opportunity to depose each of these experts concerning their criticisms of Mr. Hunsperger's opinions and methodologies. Under these circumstances, plaintiffs cannot identify any criticisms that they could not reasonably anticipate.

Thus, plaintiffs have not and will not be able to identify any proper rebuttal for Mr. Hunsperger and they should be precluded from calling him as a rebuttal witness.

### D.     Randall Bell

Plaintiffs have submitted a proffer for Mr. Randall Bell, a witness who has never been previously identified in the sixteen-year history of this case. According to plaintiffs, Mr. Bell is a "real estate appraiser" who "specializes in real estate damage economics" and "is knowledgeable about the prevailing standards and techniques for studies of area-wide impacts from environmental disamenities." (Bell proffer, Ex. 23) They claim that Mr. Bell will be called to "rebut contentions by defendants that Mr. Hunsperger's work did not conform with prevalent appraisal standards and techniques." (*Id.*) Any testimony by Mr. Bell as a rebuttal witness would be patently improper because it would constitute expert testimony by a witness who was not properly disclosed under Fed. R. Civ. P. 26 as an expert and did not file an expert report. Also, plaintiffs should reasonably have anticipated in their case-in-chief (and, in fact, did

14

anticipate) that defendants would attack Mr. Hunsperger for failure to follow appraisal standards, because they have been on notice of such criticisms for years.

*First,* any testimony by Mr. Bell in response to defendants' criticism of Hunsperger's failure to conform his work to prevalent appraisal standards "would be based on [his] knowledge and alleged expertise [as an appraiser] ... rather than knowledge or a process of reasoning familiar to the layman in everyday life." (12/15/05 Order at 7.) Plaintiffs admittedly seek to elicit testimony from Mr. Bell concerning "the prevailing standards and techniques for studies of area-wide impacts from environmental disamenities." (Bell proffer, Ex. 23.) That testimony necessarily relies upon Mr. Bell's alleged knowledge and experience as an appraiser and would require an expert analysis that should have been set forth in an expert report.

Plaintiffs cannot designate brand new experts during their rebuttal case. The Tenth Circuit has specifically held that a plaintiff cannot call an expert during rebuttal who was never previously disclosed and who was being called to rebut testimony that could reasonably have been anticipated. *See Harvey,* 873 F.2d at 1352; *see also Fashauer,* 57 F.3d at 1287; *Sundberg,* 189 F.Supp.2d at 682. Because they did not comply with the rules for expert testimony, Mr. Bell should be precluded from testifying as an expert at this late hour.

*Second,* there is no justification for plaintiffs' failure to call Mr. Bell during their case in chief to talk about "prevailing standards and techniques for studies of area-wide impacts from environmental disamenities" and the applicability of "appraisal standards and techniques." Plaintiffs have been on notice for at least eight years that defendants intended to criticize Mr. Hunsperger for failure to follow established appraisal standards. Mr. Dorchester's 1997 report specifically states that appraisal standards apply to Mr. Hunsperger's work. (Ex. 18, 3/17/97

Dorchester Rpt. at 1)  Mr. Dorchester goes on in that report to explain the history and importance

of those standards (*id.* at 2-4), and then describes in detail Mr. Hunsperger's failure to conform

to them (*id.* at 5-22).  Mr. Dorchester's conclusions include:

- The plaintiffs' property impact study is an "appraisal" that does not comply with USPAP standards.  That is contrary to the standards and practices of the appraisal profession.  (*Id.* at 5-8.)
- The methods applied in the plaintiffs' property impact study to estimate "property impacts" (i.e., market value) are contrary to fundamental appraisal approaches.  (*Id.* at 8-14.)
- The Property Impact Study's use of survey research as a direct valuation methodology does not apply an approach that is customarily relied upon by experts valuing property under USPAP.  (*Id.* at 14-16.)

(*See also* 8/2/97 Dorchester decl., at 1-9, Ex. 19.)

What is more, defendants pursued their theory that Mr. Hunsperger failed to comply with

appraisal standards during plaintiffs' case-in-chief.  Defendants argued before the Court:

> Here is the problem, basically:  We know what the rules of
> appraisal are, we know he's an appraiser, we also know that he
> hasn't done an appraisal. . . .
>
> * * *
>
> What we take issue with is his being qualified as an appraiser,
> because he hadn't rendered an appraisal, or qualified as appraisal
> consultant, because he hadn't done it.  It's really important in doing
> each one of these, the USPAP standards speak to what you have to
> do for appraisal, what you have to do for appraisal consulting, and
> also contain ethical requirements with respect to real estate
> consulting, that is, consulting that does not involve an opinion of
> value.

(12/05/05 Tr. at 6373-74)  Defendants cross-examined Mr. Hunsperger extensively on his failure

to follow appraisal standards, specifically USPAP standards.  (*E.g.,* 12/07/05 Tr. at 6721, 6781-

85, 6833, 6835)  Defendants also raised this issue in mini-summations following Mr. Hunsperger's testimony (12/09/05 Tr. at 7414 ("we have an appraiser who does no appraisal")).

Tellingly, even though Mr. Dorchester has not yet testified concerning Mr. Hunsperger's failure to follow appraisal standards, plaintiffs have already designated Mr. Bell as a rebuttal witness.  This alone proves that plaintiffs could have anticipated this testimony during their case-in-chief.  Moreover, plaintiffs actually *did* anticipate and address this line of questioning by asking Mr. Hunsperger about appraisal standards during his direct examination and having him explain his failure to do one.  (*See* 12/05/05 Tr. at 6330-41, 6361-69.)  Under these circumstances, plaintiffs cannot reasonably argue that they could not have anticipated these criticisms.  Mr. Bell should be precluded from testifying as a rebuttal witness.

### E.     Niels Schonbeck

Dr. Schonbeck's primary connection to Rocky Flats is through his work as a member of the Health Advisory Panel and as a member of the Radionuclide Soil Action Level Oversight Panel.  Plaintiffs first identified Dr. Schonbeck as a "will call" trial witness on September 29, 2005, two weeks before trial commenced.  (Pl's. 9/29/05 Witness list, Ex. 24.)  Plaintiffs informed the Court at that time that they would call Dr. Schonbeck, along with Dr. Joel Selbin (a fellow member of RSALOP) to testify to his "experience as a member of the Health Advisory Panel, [and] the Radionuclide Soil Action Levels Oversight Panel" (*id.*), and that "the cleanup standards at Rocky Flats are inadequate."  (10/07/05 Tr. at 348.)  Defendants challenged plaintiffs' ability to disclose both Dr. Schonbeck and Dr. Selbin at such a late time.  (*See* 10/07/05 Tr. at 343-348.)  Initially, the Court held that plaintiffs could call Schonbeck and Selbin only as rebuttal witnesses, if necessary.  (10/07/05 Tr. at 348.)  The parties later agreed that

plaintiffs could call these witnesses in their case-in-chief. Selbin testified on December 8;
however, plaintiffs elected not to call Schonbeck in their case-in-chief.

Dr. Schonbeck's proposed rebuttal testimony is inadmissible. *First*, the points that Dr.
Schonbeck would make already have been made by other witnesses in plaintiffs' case-in-chief
and are therefore cumulative. *Second*, the testimony is on issues that plaintiffs could have
anticipated and, indeed, *did* anticipate because they put on testimony addressing those issues in
their case-in-chief. It is clear that plaintiffs held Schonbeck back to act as a "cleanup" witness so
that they could get the final word on these issues.

**The RSAL Committee** – Plaintiffs state that Dr. Schonbeck will testify in rebuttal to Dr.
Till about the RSALOP's understanding of RAC's proposed soil action level and that "some
RSAL panel members . . . are not happy with the cleanup." (Schonbeck proffer, Ex. 25.) This is
cumulative of Dr. Selbin's testimony regarding RSALOP, including the RSALOP's views about
RAC's recommended depth and the soil action level ultimately agreed to by the CDH, EPA, and
DOE. (12/08/05 Tr. at 7094; *see also* 11/16/05 Tr. at 5632-5635 (Cochran).) Moreover, Dr.
Till's testimony on this point was well known to plaintiffs before Dr. Selbin testified at trial. In
his deposition, Dr. Till testified that RAC's recommended soil action level applied to "a depth of
15 cm or thereabout." (Till Dep. at 221, Ex. 7.) Plaintiffs then had Dr. Selbin respond to this
point. (12/08/05 Tr. at 7092.) Not only would Schonbeck's testimony be cumulative of
Selbin's, but plaintiffs could have anticipated this testimony based on Dr. Till's deposition.
Indeed, plaintiffs did foresee this issue and called Dr. Selbin to testify on this *very same point*
during their case-in-chief. Dr. Schonbeck should not be permitted to retread ground that
plaintiffs' witnesses already have plowed.

**The HAP Study** – Plaintiffs state that Dr. Schonbeck will rebut Dr. Till's testimony about various aspects of the HAP study, including what the HAP did and did not control; projects that HAP suggested for a "Phase III" but that were not completed; MUF; RAC's uncertainty calculations, etc. (Schonbeck proffer, Ex. 25.) Dr. Schonbeck's proposed testimony is improper rebuttal because the Court expressly prohibited plaintiffs' counsel from getting into testimony concerning what RAC ***did not*** study, and Dr. Till never testified on direct about the Phase III work. (12/15/05 Tr. at 8324-8328.) In addition, the HAP "Summary" report and "Report to the Public," both of which set forth HAP's positions on the RAC work, were admitted into evidence during the plaintiffs' case-in-chief, and plaintiffs' witnesses, including Dr. Cochran, testified extensively about HAP's conclusions and RAC's work. (*See* DX-58 and PX-1334; 11/16/05 Tr. at 5577-5598, 5606-5636) Dr. Schonbeck's testimony on these subjects would be cumulative. Further, plaintiffs not only reasonably ***could*** have anticipated that defendants would explain these issues, but ***did*** anticipate and put on such evidence in their case-in-chief.

**Inadequacy of the Cleanup** – Plaintiffs state that Dr. Schonbeck will testify in rebuttal to Dr. Till, Mr. Blaha, and Dr. Weston that the standards for remediation of Rocky Flats are inadequate, not protective of public health, and that the public was opposed to them. First, this is cumulative of testimony already given by Dr. Cochran, Dr. Selbin and other witnesses during plaintiffs' case-in-chief. (11/16/05 Tr. at 5629-5635, 12/08/05 Tr. at 7042-7046, 7115.) Second, these opinions are the province of expert testimony, and plaintiffs never identified Dr. Schonbeck as an expert witness. (Tr. at 7060-7061.) Third, plaintiffs could have reasonably anticipated this testimony because it has been clear since at least August 2004 when defendants

tendered Dr. Till's and Mr. Blaha's reports that issues relating to the remediation of Rocky Flats would be presented at trial.  (8/6/04 Blaha Supp. Report at 3-6, Ex. 26; 8/6/04 Till Report at 3-25, Ex. 3.)  Defendants also referred to the cleanup in their opening statement.  (10/12/05 Tr. at 840.)  Indeed, plaintiffs anticipated this issue because plaintiffs' counsel stated on the record in their case-in-chief that Dr. Schonbeck "will basically testify that the cleanup standards at Rocky Flats are inadequate."  (10/7/05 Tr. at 348.)

Thus, Dr. Schonbeck's proffered testimony is not proper rebuttal because it is cumulative of the testimony of Dr. Selbin and others, the issues could have been anticipated during plaintiffs' case-in-chief, and some areas of testimony constitute improper expert testimony.

## CONCLUSION

For the foregoing reasons, and any additional reasons stated on the record in the trial transcript, defendants respectfully request that the Court preclude each of plaintiffs' proposed rebuttal witnesses from testifying.

Dated:  January 9, 2006                           Respectfully submitted,

                                           s/ Stephanie A. Brennan
                                           One of the Attorneys for the Defendants
                                           David M. Bernick
                                           Douglas J. Kurtenbach
                                           Ellen Therese Ahern
                                           Mark J. Nomellini
                                           Stephanie A. Brennan
                                           KIRKLAND & ELLIS LLP
                                           200 East Randolph Drive
                                           Chicago, Illinois 60601-6636
                                           Phone:  312-861-2000
                                           Fax:     312-861-2200

Joseph J. Bronesky
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Phone:  303-297-2900
Fax:     303-298-0940

Attorneys for ROCKWELL
INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses for the following:

Peter B. Nordberg, Esq.
c/o Karen M. Markert
Apartments at Denver Place, Apt. 2812
1880 Arapahoe Street
Denver, CO 80202
pnordberg@bm.net
kmarkert@bm.net

Gary B. Blum, Esq.
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206
blumg@s-d.com

> s/ Kari Knudsen_____
> Kari Knudsen (legal assistant)