# EXHIBIT 16

**Cook, et al., v. Rockwell International Corp., et al.**

**No.  90-K-181**

**United States District Court, District of Colorado**

**Report of William E. Wecker**

**March 19, 1997**

value for the 95th percent quantile. Thus, completely apart from the facts regarding the actual risk, Dr. Goble's formulation automatically produces higher risk assessments when he has greater uncertainty about the input variables. Under Dr. Goble's approach, the less information the plaintiff expert brings to the analysis, the higher the potential result.

15.    I have also been asked by attorneys for the defendants to evaluate the conclusions that Mr. Wayne Hunsperger has drawn from the sample survey conducted by Decision Research.    In this connection I have reviewed the following materials produced by Mr. Hunsperger: the "Public Opinion Surveys" section of his expert report; a Decision Research report entitled "Rocky Flats Health and Housing Survey," by Flynn et al., dated July 5, 1996, and attached to the Hunsperger expert report as Appendix A; the interview script used in the Flynn survey; a 3.5 inch floppy disk containing the responses to the survey; and tabulations from the statistical analyses and underlying the Decision Research report.  Based on my review of these materials, it is my opinion that Mr. Hunsperger's conclusions from the survey data are not reliable. The basis for my opinion includes the following observations.

16.    Upon finding that 192 survey respondents (46.2 percent of the respondents) would not buy a home within a four-mile radius of Rocky Flats at any discount, Mr. Hunsperger assumes that their reason for not buying near Rocky Flats is the presence of the plant.  This assumption is not supported by the survey data, however.  In many cases it is demonstrably false. Indeed, only 5.1% of the 192 respondents mentioned Rocky Flats as the "main disadvantage" or one of the "other disadvantages" of Arvada or Westminster.

17.    The survey responses to the open-ended questions reveal several potential reasons, other than the presence of the plant, for a preference not to buy a house near the Rocky Flats plant.  Indeed, 53.7% of the 192 respondents mention other disadvantages of the area.  For example, "transportation" and "growth/development" are listed as the "main disadvantages" of both Arvada and Westminster.  In Mr. Hunsperger's interpretation of the survey data, discounts

- 5 -

demanded by potential buyers for any of these reasons are attributed to the presence of the Rocky Flats plant.

18.     For his damage calculation Mr. Hunsperger imputes a required discount of $30,000 to each potential buyer represented by the 46.2 percent of respondents who prefer not to buy houses near the Rocky Flats plant. Even if Mr. Hunsperger's calculation of the effect of this imputed discount on housing prices near Rocky Flats were correct, which it is not, it is wrong to attribute to the presence of Rocky Flats the effects of buyer preferences which depend on a variety of factors, as illustrated above, and not primarily on the presence of Rocky Flats.

19.     For his damage calculation Mr. Hunsperger attributes a required discount of $6,825 to each potential buyer represented by the other 53.8 percent of respondents, i.e., the complement of the 46.2 percent of respondents. He includes in this group respondents who reported that they had never heard of Rocky Flats, and others who were not asked the discount questions because they had indicated that "being near Rocky Flats" makes a house "somewhat more desirable" or "considerably more desirable". It is clearly wrong to attribute to Rocky Flats a decline in housing prices induced by such respondents. Furthermore, the preferences of those respondents who are correctly included in the 53.8 percent depend on a variety of factors, as illustrated above, and in several cases not primarily on the presence of Rocky Flats. Thus it is wrong to attribute their effect on housing prices near the plant solely to the presence of the Rocky Flats plant.

20. Mr. Hunsperger's analysis of the survey data is based on several apparently arbitrary methodological choices. For example, for those subjects who reported a required discount in more than one zone near Rocky Flats, Mr. Hunsperger retains only one reported discount and discards the rest. For a different group of subjects a required discount of zero in the four-to-six mile zone can be inferred from their zero required discount in the two-to-four mile zone, but Mr. Hunsperger uses the zero discount in only the two-to-four mile zone.

21. For his damage calculation involving potential buyers' required discounts, Mr. Hunsperger chose to analyze only the responses of residents of the Denver metropolitan area, not including Arvada/Westminster. This choice influences his results in a predictable direction. By choosing to live near the Rocky Flats plant the residents of Arvada/Westminster, who constituted over 30 percent of the survey respondents, revealed preferences different from those of the Denver metropolitan area residents. These differences are reflected, for example, in that 79 percent of Arvada/Westminster residents answered "no difference" when asked their "opinions about the influence of Rocky Flats on the desirability of homes in the Arvada/Westminster area," compared to 33 percent of the Denver metropolitan area residents.

22. Mr. Hunsperger reports that "the margin of error for a total sample size of 604 respondents is 4.1% at the 95% confidence level" (page 234). This calculation falsely assumes a 100 percent response rate, however, while at a response rate of 63.9 percent — the highest of several response rate estimates contained in the report — the corresponding, corrected "margin of error" is 21.1 percent.

23. I have also been asked by attorneys for the defendants to evaluate the conclusions that Mr. Hunsperger has drawn from data other than the sample survey. The data provided thus far by plaintiffs on these subjects is incomplete. My analysis cannot be completed until that data is turned over and has been reviewed. My review of Mr. Hunsperger's other

conclusions is continuing, and I may refine my evaluation of Mr. Hunsperger's conclusions from the sample survey in light of that review.

Wᵐ Wecker

_____
William E. Wecker

_____
3/:19/97
Date

– 8 –