# EXHIBIT 20

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO


MERILYN COOK et al

vs

ROCKWELL INTERNATIONAL CORP.

and

THE DOW CHEMICAL CORPORATION


CIVIL ACTION

(No. 90-K-181)


EXPERT REPORT OF DANIEL L. MCFADDEN

APRIL 16, 1997


Daniel L. McFadden

## EXPERT REPORT OF DANIEL L. MCFADDEN

## APRIL 16, 1997

### 1. PERSONAL BACKGROUND/QUALIFICATIONS

1.1. I am the E. Morris Cox Professor of Economics at the University of California, Berkeley, and Director of the Econometrics Laboratory. I received a Bachelor of Science degree in Physics, with high distinction, in 1957, and a Ph.D. degree in Behavioral Science, with specialization in Economics, in 1962. Both degrees are from the University of Minnesota. I joined the faculty of the University of California in 1963. In 1977, I became the James Killian Professor of Economics at the Massachusetts Institute of Technology. From 1988 to 1991, I was Director of the Statistics Center at MIT. In 1991, I returned to Berkeley, and assumed my current position. I have taught economic theory, econometrics, and statistics at the graduate level since 1962. I have received the John Bates Clark medal and the Frish medal, and have been elected to the American Academy of Arts and Sciences and the National Academy of Science. I have served as Department Chair, as President of the Econometric Society, and as Vice-President of the American Economics Association.

1.2. My research has spanned many topics in economic theory, econometrics, and applications. Publications germane to this expert report include the development of the theory of econometric estimation and specification testing in linear and nonlinear models [resume 4.24], investigation of housing arrangements for the elderly that carry out extensive hedonic price studies for residential properties [resume 8.2-8.4], and development of the theory of sampling and analysis [resume 4.9, 9.9, 10.31, 10.33].

1

## 2. THE BASIS FOR THE OPINIONS IN THIS REPORT

At the request of attorneys for the defendants, I have reviewed the 1996 expert report <u>Measuring the Effects of Proximity to the Rocky Flats Nuclear Weapons Plant on Property Values</u>, prepared by Dr. John Radke. I have also reviewed background documents and analyses provided by Dr. Radke, including outputs from his estimation programs and descriptions of variables and procedures provided on March 10 and March 24, 1997, and the deposition of Dr. Radke, delivered to me on April 7, 1997. In addition, I have reviewed relevant sections of the 1996 report <u>Rocky Flats Weapons Plant Property Impact Study</u> by Hunsperger and Weston, Ltd. Finally, at my request and under my supervision, Dr. Paul Liu of the Brattle Group has repeated Dr. Radke's statistical analysis, as well as alternative statistical procedures that I have suggested, and I have used these results in forming my opinions.

Dr. Radke's production of documentation on his study has been neither timely nor complete, and questions of procedure, data sources, and variable construction remain unanswered. I may have further opinions, or modify my current opinions, upon receipt of additional materials related to his study.

## 3. SUMMARY OF OPINIONS

3.1. The Radke report uses the hedonic regression method to determine the influence of property attributes and location factors on real estate prices, with particular attention to the impact of proximity to the Rocky Flats plant. This approach is often used by economists for the study of economic goods with complex attributes, and has become a common tool for analysis of real estate prices. Three steps are required for a hedonic analysis of the impact on real estate prices of an event such as public announcement that a plant has released hazardous materials.

2

*First*, data must be collected on property sales, on the physical attributes of these properties, and on their location characteristics.   It is necessary for both economic and legal reasons to collect sales data *before* and *after* the event in order to distinguish the impact of the event from persistent proximity effects:   If prices of properties in an area are *persistently* depressed relative to other locations, and there is an *additional increment* or *offset* of price depression following the event, then *only* property owners who buy *before* the event and sell lower *after* the event are economically damaged, and these owners are damaged *only* by the effect of the *additional increment* of price depression.   Persistent depression of prices in an area is *not* in itself a source of economic damages:   property owners who both "buy low" and "sell low" because of persistent price depression suffer *no* net economic loss. In addition, it is necessary to collect sales data in both the *impact area* and a *control area* outside the impact area, in order to distinguish price changes associated with the event from market-wide price changes that are independent of the event.   The control properties selected outside the impact area must be chosen so that they do *not* differ systematically from properties within the impact area, other than in the physical attribute, location, and proximity variables that are included in the hedonic price model.   Otherwise, these systematic differences confound measurement and adjustment for market-wide price effects.

*Second*, the data must be analyzed statistically to determine the systematic impact on prices of the event, controlling for physical attributes, locational characteristics, and general market fluctuations that might otherwise confound this impact.

*Third*, a *but for* analysis must be carried out to predict prices in the absence of the event. Then, damage estimates are based on the differences in *as is* and *but for* estimated prices for the properties within the impact area, controlling for

3

locational price differences that are independent of the event, and controlling for market-wide price variations that are not caused by the event. The Radke report follows these three steps, with exceptions that are described in this report.

3.2. I have examined the methodological, statistical, and technical procedures followed by Dr. Radke, and the remainder of this report details my findings. Based on this investigation, I have formed the following opinions on his analysis:

■ Dr. Radke's study contains logical and statistical errors that render invalid its conclusions on causation and damages from events at the Rocky Flats plant.

■ The procedures Dr. Radke has followed for documenting and retaining a record of his work fail to meet prevailing standards in econometrics. The National Science Foundation and major journals require that data, programs, and materials necessary to replicate published economic studies be archived and made available to any interested scientist. Dr. Radke reports that he has done portions of his analysis interactively, without maintaining a log. He has also provided incomplete documentation on the data he has used, and on models used to construct some of his variables, such as accessibility measures.

■ Dr. Radke has made a serious logical error in his analysis, failing to distinguish effects of proximity to Rocky Flats that might be associated with the 1989 FBI raid and attendant publicity from persistent proximity effects. As a result, he makes claims for damages arising from persistent price depression effects without demonstrating that these persistent effects are historically related to information about releases of hazardous materials at the Rocky Flats plant, or that other probable causes of these price effects have been excluded. *Even if* there were persistent price depression linked to historical releases of hazardous materials at Rocky Flats, Dr. Radke has not established that lost

4

property values that would result from such an effect would accrue to class members. *Only* owners who purchased property prior to the onset of a persistent price depression effect suffer lost property values as a result of this effect.

■ Dr. Radke has made several serious statistical errors in his analysis. First, he has used a factor analysis to select composite location variables. The properties of the multiple regression method used for his hedonic analysis imply that this step cannot improve his estimate of the effects of proximity to Rocky Flats, and may introduce bias. The correct procedure is to use all the location variables he collects. Then, the factor analysis is redundant, and can be eliminated. Second, he has used weighted regression, with weights reflecting sampling rates inside and outside the MPC. This is an unnecessary and statistically incorrect method for dealing with sample stratification which leads Dr. Radke to inefficient estimates of model parameters and biased estimates of their standard errors. The correct procedure is to use unweighted regression. Third, Dr. Radke has used a statistically inconsistent criterion to estimate cutoff values for proximity effects. This leads to biased estimates of proximity effects and their significance. The correct procedure is to estimate the cutoff values that minimize the sum of squared residuals.

■ Dr. Radke's hedonic regression results for multi-family residential and vacant properties, corrected to eliminate statistical errors and to identify the incremental effect of the FBI raid and attendant publicity on properties near Rocky Flats, indicate that these property classes suffered *zero economic damages* as a result of the raid. For commercial properties, Dr. Radke's regression, with the same corrections, provides *no evidence* that prices are influenced by proximity to Rocky Flats, either persistently or following the FBI raid, and

5

thus this analysis provides no basis for a damage claim for these properties.

- Dr. Radke's hedonic regression results for single-family residential properties, corrected to eliminate statistical errors and to identify the incremental effect of the FBI raid and attendant publicity on the prices of properties near Rocky Flats, indicate that this property class incurred *no statistically significant* loss in sales value as a result of the raid. Thus, this analysis provides no basis for a damage claim for these properties.

- Dr. Radke's damage analysis for his four property classes, when corrected to eliminate statistical errors and to identify the incremental effect of the 1989 FBI raid on the Rocky Flats plant and attendant publicity, fails to establish *any statistically significant* impact of this event on property prices.

- To establish a basis for damages from correlations of price and proximity to Rocky Flats that may have prevailed *prior* to the FBI raid in 1989, Dr. Radke would have to carry out the following steps: (1) Establish that probable causes of the correlation other than release of hazardous materials at the Rocky Flats plant can be eliminated. (2) Establish an onset date for any pre-1989 effect that can be attributed to release of hazardous materials at Rocky Flats. (3) Enumerate the class members and establish the fraction that purchased their properties before the onset date for the pre-1989 effect attributable to the plant. Dr. Radke does none of these steps. Therefore, his study does not support the component of his estimate of damages that is attributable to pre-1989 proximity effects.

- Incomplete documentation, sampling, and variable construction issues in Dr. Radke's study make his analysis unreliable, even if he were to correct the specific logical and statistical errors that I have idenfified.

6

## 4. MULTI-RESIDENTIAL, COMMERCIAL, AND VACANT LAND ANALYSIS

4.1. In Phase I of his analysis, Dr. Radke studies three classes of property in the Denver metropolitan area, multiple-family residential property, commercial property, and vacant land. The data for this analysis come from a computerized file of property sales records obtained from the DRESCO company, containing 1021 multiple-family residential property transactions, 2114 commercial property transactions, and 3444 vacant parcel transactions, over the period 1983-1993. Comparing these numbers with the total number of transactions contained in the DRESCO database, about 5700 transactions were in the data base, but not used, due to missing values or inappropriate property type. Of the transactions not used, 985 were multi-family residential. Thus, 49.1 percent of the observations in the multiple-family category are excluded from the analysis, a sufficiently high rate to raise a concern that the observations used may not be representative. In addition, the DRESCO data appear to under represent small properties, such as vacant parcels with low acreage. Each property in the DRESCO database was located within a cell approximately one square mile in area.

A critical problem with the DRESCO data is that it contains small numbers of observations within the MPC. Taking six miles from the center of Rocky Flats as the approximate outer edge of the MPC, Dr. Radke uses only 20 multi-family residential transactions and only 17 commercial transactions over the eleven years of observation 1983-1993. Estimation of the effect on price of proximity to Rocky Flats rests on these observations, and these sample sizes are too small for reliable statistical analysis of this effect.

7

4.2. Dr. Radke augments the DRESCO data files, which contain selected information on the physical attributes of properties, with locational attributes that are constructed by collecting spatial data on a variety of variables, and matching it to DRESCO transactions by use of Geographical Information System (GIS) software. While some of these variables are straightforward (e.g., location in Boulder County), others involve substantial analysis and modeling assumptions (e.g., gravity-weighted measure of proximity to traffic, construction of accessibility measures by use of a transportation network to calculate travel times, and gravity-weighting). Dr. Radke's report and supporting documentation that I have received contain no detail to support the flow charts given in the appendix to his report. Specifically, he does not indicate the source of the transportation network he uses, how the travel times it contains were established, whether they are peak or off-peak travel times, and how they have been adjusted by year over the decade of the DRESCO data as the metropolitan area population and transportation network have evolved. Also, he does not give us the values of the parameters of the gravity models used to produce measures of proximity or accessibility, or provide a behavioral or statistical foundation for these values. Finally, there are some locational variables, such as viewshed, for which resolution to an area of one square mile may be a poor description of the views from a specific site.

Dr. Radke's development of location characteristics using a GIS system is considerably more extensive, and more complex, than has previously been customary in hedonic analysis of property prices. Scientifically, this is a step in the right direction. However, Dr. Radke has failed to provide the supporting documentation needed to verify or replicate this novel and untested approach. Consequently, it is my opinion that his report fails to establish that these locational data are sufficiently reliable to use in determining damages.

8

4.3. Dr. Radke estimates hedonic price models for multi-residential, commercial, and vacant parcels. The dependent variable is the log of the selling price, converted to 1993 prices using the Denver metropolitan area Consumer Price Index. The regressions have the following form:

$$y = x_1\beta_1 + \dots x_K\beta_K + z_1\gamma_1 + \dots + z_J\gamma_J + \alpha q,$$

where $y$ is the dependent variable, $x_1,\dots,x_K$ are physical characteristics of the property, $z_1,\dots,z_J$ are locational characteristics, and $q$ is a measure of proximity to the Rocky Flats plant. The Greek letters $\alpha$, $\beta_1,\dots,\beta_K, \gamma_1,\dots,\gamma_J$ denote the regression coefficients to be estimated. It is convenient to rewrite this regression equation in compact form,

$$y = x\beta + z\gamma + \alpha q,$$

where $x$ stands for $(x_1,\dots,x_K)$, $\beta$ stands for $(\beta_1,\dots,\beta_K)$, and so forth. Comments on the regressions follow:

(a) The physical characteristics $x$ are limited to acres, number of units (or potential units), and for multi-residential and commercial, age and square feet. All these attributes are expressed in logs. Commonly, hedonic regressions for residential parcels include number of bedrooms, number of baths, and other features that are related to construction cost and to desirability. Dr. Radke's analysis omits these variables, leaving unanswered the question of whether they are correlated with variables such as proximity to Rocky Flats, causing estimates of the coefficient of the proximity variable to be biased.

(b) The regressions include dummy variables for the year of the sale, which capture year to year market-wide price fluctuations. Since the regression has a constant term, one year dummy is redundant, and the 1993 dummy is omitted.

9

(c) The location characteristics z are constructed variables, obtained by factor analysis of a longer list of location variables.   Dr. Radke states that the constructed variables are introduced to reduce problems of high correlation, or multicollinearity, among explanatory variables.   However, the objective of this analysis is to determine the coefficient $\alpha$ on the variable q measuring proximity to Rocky Flats, and the estimation of this coefficient is not affected by shuffling the remaining variables in the regression in various linear combinations.   Thus, the factor analysis is a *completely unnecessary step* that *cannot improve* the estimation of the coefficient $\alpha$ determining the correlation between price and proximity to Rocky Flats, and may worsen it by introducing bias.   To see this, it helps to understand how factor analysis and multiple regression work.   Let w denote the complete list of location variables used by Dr. Radke as inputs to his factor analysis.   Then, factors are linear combinations of these variables, $z = w\lambda$, where $\lambda$ is an array of numbers called *factor loadings*.   The maximum number of factors equals the number of w variables, excluding any that are perfectly correlated with linear combinations of the remainder, and w is uniquely determined as a linear combination of all these factors.  What factor analysis does is choose the factor loadings so that the factors are ordered in terms of the size of their contribution to the sample variation in w, and arranged to emphasize association with clusters of location variables that suggest plausible names for the factors.  Now consider the multiple regression, which in the most general case has the form

$$y = x\beta + z\gamma + \alpha q = x\beta + w(\lambda\gamma) + \alpha q,$$

where z is the complete list of factors.   In this case, the only thing the factor analysis does is shuffle the w variables into different linear combinations, so the regression can be reinterpreted as a regression on the variables x, w, and q, with

10

coefficients $\theta = \lambda\gamma$ on w.  Now, the multiple regression estimate of the parameter $\alpha$ can be interpreted as coming from the following series of steps:  First, find the part of the variable q that is *uncorrelated* with the variables x and w.  This can be done by regressing q on x and w and forming the residual that is not explained by a linear combination of x and w. Then, the estimate of $\alpha$ is obtained by regressing y on this residual.  The estimated coefficient in this last regression is identical to the estimate of $\alpha$ provided by a conventional multiple regression program.  An implication of this interpretation is that the estimate of $\alpha$ is completely unaffected by forming linear combinations of the w variables before regressing q on x and these transformations:  The residual formed from this regression is determined solely by the requirement that it be uncorrelated with each of the x and w variables, and will be unchanged by the transformations of w.  In particular, transforming w by a factor analysis, and including all the factors z in the regression $y = x\beta + z\gamma + \alpha q$ leads to exactly the same estimate of $\alpha$ as would be obtained by running the regression $y = x\beta + w\theta + \alpha q$ without doing any factor analysis.  Next consider the regression $y = x\beta + z\gamma + \alpha q$ where some of the factors that make little contribution to the variance of w are dropped.  If any of the dropped factors are correlated with q, doing this causes the estimate of $\alpha$ to be biased.  On the other hand, if they are uncorrelated with q, then the estimate of $\alpha$ will be the same whether or not they are dropped.  Then, there is no statistical reason to drop factors when one is estimating $\alpha$, and any change in the estimate of $\alpha$ when factors are dropped is an indication that dropping these factors has introduced bias.

(d) The measure of proximity to Rocky Flats employed by Dr. Radke is

$$q = \text{Max}(0, \delta - D),$$

where D is the straight line distance of the property from the center of the Rocky

Flats plant in miles, and $\delta$ is a parameter. (In his regressions, Dr. Radke uses the negative of this variable, and in reporting results he reverses the signs of coefficients; I use the definition that is consistent with the sense of proximity used in his report.) Then, q is a variable that decreases linearly from a maximum value of $\delta$ as one moves away from the plant, cutting off at zero at a distance $\delta$. Dr. Radke estimates $\delta$ by taking a grid of values (at 1/4 mile increments), running the regression $y = x\beta + z\gamma + \alpha q$ for each value of $\delta$, and then choosing the cutoff $\delta$ that yields the largest T-statistic (ratio of estimate to its standard error) for $\alpha$. This is *not* a legitimate statistical procedure.    It does not correspond to a statistically consistent estimation criterion such as minimizing the sum of squared residuals, and it produces estimates of $\alpha$ and the standard error of the estimate of $\alpha$ that are biased. Dr. Radke's model should be interpreted as a non-linear regression model,

$$y = x\beta + z\gamma + \alpha \cdot Max(0, \delta - D).$$

This model can be estimated by a non-linear regression procedure, in which the parameters will be estimated so that the sum of squared residuals is minimized. It is possible to accomplish essentially the same results by a grid search in $\delta$, using the minimum sum of squared residuals as the criterion to select $\delta$. The procedure followed by Dr. Radke will in general fail to obtain the least squares estimate of $\delta$, and will lead him to overstate the size and significance of the $\alpha$ coefficient. Also, his procedure biases the distribution of the T-statistic, so that it no longer has a Student's T distribution, and the significance levels reported by Dr. Radke are no longer accurate.    An additional issue with Dr. Radke's grid search is that it provides no estimate of the standard error of the estimate of $\delta$, nor does it take into account the contribution of estimation error in $\delta$ to the errors in estimating

12

the remaining coefficients, leading to underestimates of their standard errors. A computationally convenient method for estimating the standard errors in this problem consistently, taking the grid search into account, is to run an auxiliary regression

$$y = x\beta + z\gamma + \alpha\hat{q} + (\hat{\alpha}r)\psi$$

where $\hat{\alpha}$ and $\hat{q} = Max(0,\hat{\delta} - D)$ are estimates at the grid point that minimizes sum of squared residuals, and r is a dummy variable that is one for properties inside the cutoff. The standard errors for the coefficients $\beta$, $\gamma$, and $\alpha$ obtained from this auxiliary regression are now consistent, and the standard error of $\psi$ is a consistent estimate of the standard error of $\hat{\delta}$.

(e) The coefficient $\alpha$ multiplying Dr. Radke's variable q that measures proximity to Rocky Flats will be significantly different from zero if property values on average are lower near the plant over the period of the data, 1983-1993. Establishing this correlation does *not* establish that Rocky Flats *causes* a reduction in property values. There are many other factors that could induce a correlation between proximity to Rocky Flats and property prices. For example, proximity to Rocky Flats may also be related to access to water and other advantages of incorporated areas, to planning restrictions on construction and density, to variations in school quality that are not captured by census tract demographics, to the effects of proximity to facilities such as the Jefferson County Airport, and to features of the land such as remoteness from population centers that originally made the Rocky Flats area more suitable for industrial development and less attractive for residential and commercial development.

(f) Dr. Radke's hedonic models do not permit a determination of an impact from the 1989 FBI raid at the Rocky Flats plant. This could have been done by estimating models of the form

13

$$y = x\beta + z\gamma + (\alpha_0 + \alpha_1 F) \cdot q$$

where F is a dummy variable that is zero before the FBI raid, and one after the raid (i.e., after 1989). Then, $\alpha_0$ is the baseline effect of proximity to Rocky Flats that has persisted at least since 1983, and $\alpha_1$ is the *added* or *incremental* effect of proximity associated with the publicity surrounding the FBI raid. I shall term $\alpha_1 F \cdot q$ the *offset proximity effect*. A persistent correlation of property values with proximity to Rocky Flats, captured by $\alpha_0$, *cannot* be used as a foundation for damages, because property owners who "buy low" and "sell low" suffer no economic damages, and because the presence of a correlation does not establish a causal link from release of hazardous materials at the plant to property prices. Even *if* additional analysis were to show that the $\alpha_0$ effect appeared at the time of early concerns with hazardous materials releases at the plant in the 1960's or 1970's, providing some foundation for the argument that these releases depressed property values and caused property owners at the time to suffer economic losses, these damages were *not* caused by or related to the 1989 FBI raid and attendant publicity, nor are they incurred by any class member who purchased his property after the onset of the persistent effect.

(g) Dr. Radke uses a stepwise regression procedure, excluding variables with low explanatory power. This statistical procedure has several undesirable features. It introduces bias in the estimated coefficients of the remaining variables, and their T-statistics, and can lead to the exclusion of variables that if reintroduced singly would be statistically significant. For the purposes of estimating the coefficient on proximity to Rocky Flats, there is no statistical reason to exclude any of the remaining variables in the regression. The sounder method, and the simplest in terms of statistical properties and interpretation, is to use ordinary regression rather than stepwise regression, and exclude no variables.

14

4.4. At my request and under my supervision, Dr. Paul Liu of the Brattle Group has attempted to repeat Dr. Radke's hedonic regressions for multi-residential, commercial, and vacant properties, using the data and statistical procedures that Dr. Radke has provided. We are unable to replicate Dr. Radke's results. Also at my request, Dr. Liu has re-estimated Dr. Radke's equations with the following specific corrections:  (a) ordinary regression is used and no variables are excluded, (b) the redundant factor analysis step is dropped, and all location variables are used in their original form, (c) persistent and "post-FBI" effects of proximity to Rocky Flats are estimated, and (d) the cutoff for the Rocky Flats proximity variable is estimated by a grid search using minimum sum of squared residuals as the criterion. An auxiliary regression with the added    variable $(\hat{\alpha}_O + \hat{\alpha}_1 \cdot F) \cdot r$, where $r$ is a dummy variable that is one for properties inside the cutoff, and $\hat{\alpha}_O$ and $\hat{\alpha}_1$ are estimates from the optimal grid point regression, provides consistent estimates of the standard errors.

The regression results for the critical parameters are given in Table 1. The variables for which coefficients are reported are $q = Max(0, \delta - D)$, the persistent component of proximity, and $q \cdot F$, where $F$ is a dummy variable that is one in the years following the FBI raid, with $D$ the straight line distance from the plant and $\delta$ the cutoff parameter.  A negative coefficient indicates that prices are lower for properties near the plant; a positive coefficient indicates that they are higher.

There is considerable variation between the cutoff distances for proximity effects estimated by the correct statistical criterion of minimizing the sum of squared residuals, and the incorrect criterion used by Dr. Radke:  9.75 versus 6.5 for multi-family residential, 5.25 versus 5.75 for commercial property, and 5.5 versus 4.25 for vacant land.  We also estimated models in which the persistent and offset proximity effects were allowed to have different cutoffs.  We find that there

15

## Table 1. Radke Hedonic Regressions, with Specified Corrections

| Variable | Multi-Family Residential | | Commercial | | Vacant Land | |
|---|---|---|---|---|---|---|
| | COEFF | SE | COEFF | SE | COEFF | SE |
| Baseline Component of proximity | 0.0482 | 0.0459 | -1.5839 | 4.9316 | -0.6818 | 0.2509 |
| Offset Component of proximity following FBI raid | 0.1272 | 0.0476 | -1.5481 | 13.3447 | 0.8141 | 0.2808 |
| Cutoff Distance | 9.7500 | 0.5807 | 5.2500 | 0.8365 | 5.5000 | 0.4145 |
| R-Squared | 0.8761 | | 0.7447 | | 0.5406 | |
| Source Program | rres2bd.tsp | | rcom2bd.tsp | | rvac2bd.tsp | |

is no significant difference in the cutoffs for the two effects in the multi-family residential and commercial classes. In the vacant land class, the cutoff for the persistent effect is 5.0 and for the offset effect is 5.5; this difference is statistically significant.

The coefficients of the proximity effects in the regressions are negative if prices of properties near Rocky Flats are depressed. For multi-family residential properties and vacant land, Dr. Radke's regressions with the specified corrections show a statistically significant *increase* in prices of properties near Rocky Flats following the FBI raid. These offset effects are larger in magnitude than the estimated persistent effects. For commercial property, there is no statistically significant relationship of prices to proximity to Rocky Flats. The numbers of multi-family residential and commercial transactions near Rocky Flats in the DRESCO database used by Dr. Radke are too small to obtain a reliable statistical analysis of the relationship between distance from Rocky Flats and prices for these property classes.

## 5. SINGLE-FAMILY RESIDENTIAL PROPERTY ANALYSIS

5.1. In Phase II of his analysis, Dr. Radke studies single-family residential properties. The data for this analysis comes from MLS listings, and was collected for the years 1988-1995. Dr. Radke states that this data set contains virtually all transactions within the MPC during these years, and in addition a random sample of about three percent of the transactions in the Denver metropolitan area outside the MPC. The sample used for the analysis contained 6392 transactions. The MLS provides variables describing physical attributes of the properties. Using GIS software, Dr. Radke associates a list of location variables with each observation.

17

5.2. Many of the data issues surrounding the Phase I analysis recur here. The documentation of the steps used in constructing the location variables is insufficient to determine if they are valid. The method used to sample MLS listings outside the MPC is insufficiently documented.     The report states that "the stratification was accomplished by digitizing the MLS reporting districts (spatial polygons), producing a random sample within each district, and address matching the samples until a more than adequate control sample was generated." If this sample is representative of Denver metropolitan area sales, then it should have transactions that are distributed over space and over the year in the same way as the MLS population.   The description suggests that address matching was done serially, at least within MLS districts, so that sampled transactions may be biased sample of sales over the year. The description also suggests that areas where address matching was more difficult may have been under sampled. *Any* systematic differences between properties in the MPC and control areas that are *not* captured by variables in the hedonic price model may lead to systematic price differences that hedonic price analysis will attribute, incorrectly, to location within the MPC.   For example, if control sample sales are concentrated early in the calendar year, then there may be an apparent price difference between MPC and control properties due to seasonal variation in prices, and this will be attributed incorrectly to proximity to Rocky Flats.

An additional issue with the MLS sample outside the MPC is that it is spread over the Denver metropolitan area, with relatively thin coverage in the areas to the northwest of downtown Denver that share many locational characteristics and development patterns with properties inside the MPC.   This makes it difficult to estimate accurately cutoff points for proximity measures to Rocky Flats.   It also increases the probability that there are broad regional variations in the Denver

18

housing market, not completely captured in the location variables included in the model, that introduce variations from the MPC area for reasons other than proximity to Rocky Flats.

5.3. Dr. Radke estimates a hedonic price model for single-family residences of the form

$$y = x_1\beta_1 + ... \, x_K\beta_K + z_1\gamma_1 + ... + z_J\gamma_J + q_{88}\alpha_{88} + ... + q_{95}\alpha_{95},$$

where the dependent variable $y$ is log selling price in 1993 dollars; the $x$'s are physical attributes of the property such as square feet, number of bedrooms, and age; $z$'s are constructed composite location variables obtained by factor analysis of a longer list of original location variables, and $q$'s are measures of proximity to Rocky Flats for the years 1988 through 1995. Comments on this regression follow:

(a) The physical characteristics are entered as log transformations.   This is plausible for variables such as square feet. For other variables, such as garage parking spaces which may be zero, the log transformation requires that the variable first be translated so that it is never zero.    The report does not describe or justify this complicated procedure.

(b) The Rocky Flats proximity variables are constructed by two alternative methods. For the first method, $q_{88}$ is a dummy variable that is one for transactions in 1988 within the MPC, and zero otherwise. For the second method, $q_{88} = F_{88}\cdot\text{Max}(0,\delta_{88} - D)$, where $F_{88}$ is a dummy variable that is one for 1988 transactions, $D$ is straight line distance from the center of the Rocky Flats plant, and $\delta_{88}$ is a cutoff parameter. Analogous definitions apply for the remaining $q$'s.  Radke's Method 2 for defining proximity to Rocky Flats in this analysis is the same as the definition of proximity for the analysis of multi-family residential, commercial, and vacant properties.

19

(c) As in my comments on Dr. Radke's Phase I analysis, the factor analysis is a completely unnecessary step that cannot improve, and may worsen, estimates of the $\alpha$ parameters that determine the effects of proximity to Rocky Flats. A simpler and statistically sounder procedure is simply to include all of the original location variables in the hedonic regression, without forming composite variables.

(d) Dr. Radke uses an invalid statistical procedure to choose cutoff values in his Method 2 for defining proximity variables $q_t = \text{Max}(0, \delta_t - D)$, picking the value of $\delta_t$ to maximize the T-statistic on the associated coefficient $\alpha_t$. As I explained in my comments in ¶4.3(d), Dr. Radke's procedure leads to biased estimates of the proximity effects $\alpha_t$, and leads him to overstate their significance levels. A correct statistical procedure is to choose the cutoffs to minimize sum of squared residuals, corresponding to nonlinear least squares.

(e) Dr. Radke gives each observation inside the MPC a weight of 0.03 in his factor analysis and a weight of 0.15 in his regression, where observations outside the MPC get a weight of one. Dr. Radke states that he does this to make the sample look more like the overall metropolitan housing market, since he sampled sales outside the MPC at approximately a 3 percent rate. However, this is an incorrect statistical procedure that violates the Gauss-Markov theorem, the first and most basic result in regression analysis. Weighting in regression analysis is appropriate *only* to compensate for systematic variation in the variance of the regression disturbance (heteroscedasticity), *not* to compensate for stratified sampling. The consequences of weighting are a loss in statistical efficiency in the estimation of regression coefficients, and statistically inconsistent estimates of standard errors of the weighted least squares estimates. Dr. Radke's reasoning that the weighted regression will be more representative of the metropolitan area places him in a logical dilemma. If his model is incorrectly specified, there may well be substantial changes in

20

coefficient estimates between weighted and ordinary regressions.  However, in this
case, the model cannot be used to estimate damages reliably, since it is then using
controls that are different than the properties in the class, and the model fails to
account for these differences through location or physical attribute variables.  On
the other hand, if the model is correctly specified, then weighted and ordinary
regressions are both statistically consistent for the regression coefficients, and
ordinary regression is simpler and more accurate.

   (f) Dr. Radke uses a stepwise regression procedure, which I argued in ¶4.2(g) is
statistically inferior to ordinary regression using all the variables.

   5.4. At my request and under my supervision, Dr. Paul Liu· has replicated,
successfully, Dr. Radke's hedonic regressions for single-residence properties.  Also
at my request, Dr. Liu has re-estimated Dr. Radke's equations with the following
corrections: (a) Ordinary regression is used and no variables are excluded.  (b) The
redundant factor analysis step is dropped.    (c) Unweighted regression is used.
(d) To obtain direct estimates of the impact of the FBI raid and publicity, the
proximity variables are entered as follows: Let q be either a dummy variable for MPC
properties (Method 1) or $q = \text{Max}(0, \delta - D)$, with $\delta$ a cutoff parameter to be estimated
(Method 2).  Let q enter the regression without interaction with year dummies.  The
coefficient of this variable, $\alpha_0$, has the interpretation of a baseline or persistent
proximity effect.    Then, enter proximity variables $q \cdot F_t$ that are interactions of q
with dummy variables for each of the years t = 1989,...,1995.  The coefficients $\alpha_t$
associated with these "offset" variables have the interpretation of additional
increments to prices of properties near Rocky Flats following the FBI raid and
publicity.    Table 2 gives Dr. Radke's Method 1 hedonic regression with the
corrections specified above.  A negative coefficient corresponds to lower property
prices within the MPC, relative to baseline and relative to areas outside the MPC.

21

## Table 2. Radke Hedonic Regression with Specified Corrections

### (Single-Family Residences, Method 1)

| Variable | COEFF | SE |
|---|---|---|
| Baseline Component of Proximity | -0.0107 | 0.0203 |
| Offset Component of Proximity, 1989 | -0.0141 | 0.0202 |
| Offset Component of Proximity, 1990 | -0.0275 | 0.0198 |
| Offset Component of Proximity, 1991 | -0.0108 | 0.0198 |
| Offset Component of Proximity, 1992 | -0.0225 | 0.0198 |
| Offset Component of Proximity, 1993 | -0.0188 | 0.0192 |
| Offset Component of Proximity, 1994 | -0.0070 | 0.0201 |
| Offset Component of Proximity, 1995 | 0.0147 | 0.0205 |
| R-Squared | 0.7076 | |

Source Program    rmlstbdq.tsp

22

The Table 2 regression shows a statistically *insignificant* decrease in property values following the FBI raid, largest in 1990 and gone by 1995. I also tested and found that the all of the offset proximity tests taken together are statistically insignificant.    The statistically insignificant point estimate of the average offset price depression effect is -0.013, with a standard error of 0.016.

For Method 2, the cutoffs for the Rocky Flats proximity variables are estimated by a grid search using minimum sum of squared residuals as the criterion.   An auxiliary regression with added variables $F \cdot r \cdot \hat{\alpha}$ for each proximity effect cutoff that is estimated, where $\hat{\alpha}$ is the estimate obtained from the best grid point regression, r is a dummy variable that is one for transactions inside the cutoff, and F is a dummy variable for the years over which the effect operates, gives consistent estimates of all the standard errors.  Table 3 gives Dr. Radke's hedonic regression for Method 2, with the corrections specified above and a common cutoff for all the proximity effects.    I tested and found that this regression shows *no statistically significant* offset proximity effects.    The statistically insignificant point estimates indicate small price depression effects near Rocky Flats in the years 1990-94, and a price increasing effect in 1995.    The statistically insignificant point estimate of the average offset price depression effect is -0.00678, with a standard error of 0.0216.

Dr. Radke reports substantial variation from year to year in the cutoffs he estimates using his incorrect statistical procedure.  Table 4 compares the cutoffs he obtains with cutoffs for the yearly proximity offset effects estimated in his model, with specified corrections, using the statistically correct procedure of minimizing the sum of squared residuals.   The results indicate that Dr. Radke's method is substantially biased, estimating considerably larger cutoffs than the statistically correct procedure.  I have tested and accept the hypothesis of a common cutoff.

23

## Table 3. Radke Hedonic Regression with Specified Corrections (Single-Family Residences, Method 2)

| Variable | COEFF | SE |
|---|---|---|
| Baseline Component of Proximity | -0.1006 | 0.0255 |
| Offset Component of Proximity, 1989 | 0.0148 | 0.0276 |
| Offset Component of Proximity, 1990 | -0.0077 | 0.0280 |
| Offset Component of Proximity, 1991 | -0.0034 | 0.0260 |
| Offset Component of Proximity, 1992 | -0.0257 | 0.0256 |
| Offset Component of Proximity, 1993 | -0.0037 | 0.0257 |
| Offset Component of Proximity, 1994 | -0.0052 | 0.0258 |
| Offset Component of Proximity, 1995 | 0.0131 | 0.0281 |
| Cutoff, common to all components | 4.0000 | 0.1294 |
| R-Squared | 0.7104 | |
| Source Program | rmla4bd.tsp | |

24

## Table 4. Estimated Cutoffs
### (Single-Family Residences, Method 2)

| Year | Radke Procedure | Least Squares Procedure | |
|---|---|---|---|
| | Distance | Distance | SE |
| 1988 | 7 | 4 | 0.11 |
| 1989 | 6.5 | 3 | 0.22 |
| 1990 | 9 | 3 | 0.56 |
| 1991 | 7.5 | 3 | 0.29 |
| 1992 | 9 | 2.75 | 0.14 |
| 1993 | 8.5 | 2.5 | 0.18 |
| 1994 | 9.5 | 2.75 | 0.15 |
| 1995 | 6.5 | 10.5 | 5.99 |

25

Dr. Liu has conducted at my request a Hausman test that compares coefficient estimates from weighted and ordinary least squares applied to Dr. Radke's model. For this test, we do not eliminate any factors, and dispense with the redundant factor analysis. The Hausman test can be interpreted as a test of the model specification. If there are no systematic differences between properties within the MPC and outside the MPC that are not captured by the model, then the weighted and ordinary least squares procedures should give similar estimates. We find that the Hausman test convincingly rejects the hypothesis that the weighted and unweighted regressions estimate the same coefficients, for either Method 1 or Method 2 measures of proximity to Rocky Flats. This rejection implies that there are systematic differences between the MPC and non-MPC properties *not* captured by the model. I have confirmed this result using a F-test on differences between MPC and non-MPC models. These results imply that the non-MPC properties fail to act as controls to eliminate market-wide price effects, and confound the measurement of proximity effects so that the model *cannot* be reliably used to estimate damages associated with proximity.

## 6. ESTIMATION OF DAMAGES FROM HEDONIC REGRESSIONS

6.1. The final step in damage estimation based on hedonic regressions is to translate the price effects of 1989 FBI raid, as estimated in the regression formula, into an estimate of the economic outcomes for each class property in the absence of the event. Property owners in the class may be affected differently, depending on the year in which they sell their property, or were as of the cutoff data for analysis still the owners of the property. A property owner who sold his property after July 1, 1989 *realized* the actual market price at that date, including any impact on prices that are attributed to the FBI raid and publicity. Property owners who held their properties at the end of 1995 face a potential, but unrealized,

selling price that reflects any impact on prices at the end of 1995 that are attributed to Rocky Flats.

Estimation of damages would ordinarily proceed by estimating for each class property from the hedonic regression the selling price at date of first sale after 1989, or at the end of 1995 if not sold, both *as is* and *but for* the incremental impact on prices that are attributed to the FBI raid and publicity. The difference in the selling prices estimated *but for* and *as is* is an estimate of lost value for this property. The formula for this calculation is

$$\text{Lost Sales Value} = [\exp(-\alpha q) - 1] \cdot [\text{Sales Price}] \ ,$$

where $\alpha q$ is the term in the hedonic price model that estimates the *incremental* or *offset* impact of the FBI raid and publicity. The most critical component in determining the magnitude of Lost Sales Value is the term $[\exp(-\alpha q) - 1]$, which I shall refer to as the Lost Sales Value Ratio. For properties that are sold, the observed sales price can be used in the lost sales value calculation; for unsold properties, it must be estimated from the hedonic regression. The sum of Lost Sales Values over all properties in the class is then the estimate of damages. When the proximity effect $\alpha q$ varies with distance, as it does for Dr. Radke's multi-family residential, commercial, and vacant land models, and his Method 2 single-family residential model, it is necessary to obtain the distance of each property from Rocky Flats, and to apply $\alpha q$ effect appropriate to each distance. An analogous construction is required when $\alpha q$ varies by year.

6.2. Dr. Radke utilizes a simpler, and substantially biased, method for estimating damages. The major bias results from his failure to distinguish between effects of proximity to Rocky Flats resulting from the FBI raid, and pre-existing persistent effects. Thus, he improperly claims damages for proximity effects that

27

may have prevailed from the time the class area was initially developed, and that have not been demonstrated to be caused by release of hazardous materials at Rocky Flats. Further, any class member who purchased his property *after* the onset of a persistent proximity effect on prices has suffered no economic loss from this source, *even if* Rocky Flats were the cause of a price effect, because he has "bought low" and "sold low". Dr. Radke has not attempted to determine a date of onset of persistent proximity effects, or the fraction of the class members who might be entitled to damages because they purchased their properties before the onset date.

6.3. Dr. Radke calculates losses for properties within the MPC in two steps. First, he applies the Lost Sales Value formula above to each observed sale within the MPC. These lost sales values are summed across observations and divided by the sum of observed sales prices to obtain a mean Lost Sales Value Ratio. In forming this sum, $\alpha q$ varies by year in Phase II, Method I, and by distance in Phase I and in Phase II, Method 2. Second, Dr. Radke multiplies the mean Lost Sales Ratio by the number of properties in the MPC and by the average sales price to obtain his damage estimate.

There are several potential biases in this estimation. First, properties *sold* in the MPC may not be representative of properties *held* in the MPC. In particular, their distributions may differ by *location* or by *average value*. Then, the Radke procedure will give a biased estimate of the lost value to all properties within the MPC. Second, observed sales are affected by general market conditions in the year of sale. This is appropriate for estimating losses associated with realized sales in years after 1989. However, it is inappropriate for estimating potential losses as of 1995 for properties that were not sold between 1989 and 1995; these should be valued at the general market conditions prevailing in 1995.

28

*If* the hedonic price model indicates that in 1995 the offset attributed to Rocky Flats has disappeared, then there are *no* remaining potential losses to properties that have not sold since 1989. Then, they must be excluded from the damage estimation, and the estimated mean lost value should be multiplied by the number of properties *sold* between 1989 and 1995, *not* the total number of properties.

In Dr. Radke's damage estimation for Phase I property types, Dr. Radke's report indicates that a pooled 1983-93 calculation was done. Mean observed sales prices in this pooled period will be a biased estimate of sales prices during the 1989-1993 period when losses in value attributable to the FBI raid and subsequent publicity may have occurred.

6.4.   Dr. Radke obtains an enumeration of single-family residential properties in the class from tax assessor's records. His report states that the address matching process was imperfect, and therefore the matched records were overlaid on the TSR map to estimate the frequency with which addresses occurred in the MPC area, and the matching rate. The report then states that the number of properties in the MPC were estimated. Documentation for this estimation has not been provided.

Dr. Radke used Metrolist data to obtain estimates of the number of commercial properties in the class area; he does not document this data source or indicate how he determined whether properties in Metrolist were in the MPC. He does all damage calculation on a price per square foot basis. However, the commercial price model is not linear in square feet in the hedonic price model, so the distribution of sizes of commercial properties matters.

Dr. Radke also used Metrolist to obtain a count of vacant parcels; documentation is not provided. Because land area was often missing from the Metrolist records, he used 1989 aerial photographs to estimate the area of vacant land in the MPC, and deducted the land area for Rocky Flats, government, parks, and so forth. He then

29

added the area of vacant lots recorded in the tax assessor's records. The details of these calculations are not reported, and one cannot determine whether or not some areas are counted twice because they are in large vacant areas and also on the individual tax rolls. Dr. Radke does not describe how acreage of vacant parcels, an explanatory variable in the hedonic price equation, is calculated for the MPC. Because price is nonlinear in acreage, the distribution of parcel sizes matters for the damage estimation. Dr. Radke has not estimated the number of multiple-family properties in the class area, or provided a damage estimate for this class.

6.5. In using Dr. Radke's damage estimates, Hunsperger and Weston have perpetuated Dr. Radke's conceptual error in confounding persistent proximity effects and those attributable to the 1989 FBI raid on the Rocky Flats plant. In addition, they have used an inaccurate average of the Lost Sales Value Ratios estimated by Dr. Radke, and have double-counted by adjusting observed sales values by the estimated price depression effect.