**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**No. 90-cv-181-JLK**
_____

**MERILYN COOK, et al.,**

    **Plaintiffs,**

        **v.**

**ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,**

    **Defendants.**
_____

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO
DEFENDANTS' MOTION TO PRECLUDE REBUTTAL WITNESSES**
_____

Plaintiffs respectfully submit this memorandum in response to "Defendants' Motion to Preclude Rebuttal Witnesses" (filed Jan. 9, 2006) [Ct. Rec. 1946].

**I.  SUMMARY**

Plaintiffs withdraw their proffer of rebuttal witnesses Judith Barton and Lauren Clark.

Rebuttal witness Randall Bell will not offer any expert opinion on Mr. Hunsperger's empirical findings. Mr. Bell's testimony will address professional standards in the field of appraisal. Mr. Bell has factual knowledge of such standards, in part because he has personally participated in their authorship or promulgation. His testimony will rebut defendants' interpretations of those standards – e.g., in the testimony elicited by defendants from Mr. Dorchester. This is a modest and reasonable remedy, given Mr. Dorchester's departure from the limits set by his 1996 and 2004 expert reports and this Court's pretrial *Daubert* rulings.

Rebuttal witness Thomas Coyle is ill with a serious case of the flu and will probably be unavailable to testify. As a potential substitute, plaintiffs have approached Robert Pence, who was Special Agent in Charge of the FBI's Denver Division at the time of the FBI investigation. Mr. Pence, however, is traveling on business and does not plan to return to Denver until January 23, by which time the trial is expected to have concluded. Should Mr. Coyle recover, or should Mr. Pence's plans change, plaintiffs would seek to call whichever one might be available for the sole purpose of supporting Mr. Lipsky's credibility under Fed. R. Evid. 608(a). Plaintiffs will not seek to delay the trial's conclusion for that purpose.

Mr. Hunsperger would be recalled primarily to rebut testimony from Mr. Dorchester and other defense experts that was not reflected within their Rule 26 reports. Because some of those defense experts have yet to testify, it would be premature, at best, to preclude Mr. Hunsperger's rebuttal testimony now.

Dr. Schonbeck would be called primarily to rebut testimony from Dr. Till about the activities, beliefs, and positions of Health Advisory Panel ("HAP"), the RSAL committee, and their members, as detailed at length in plaintiffs' proffer. His testimony would be based on his work on those bodies and would be factual in nature.

## II.  LEGAL STANDARDS AND PROCEDURAL BACKGROUND

What is "black letter law in the Tenth Circuit," *see* Def. Mem. at 1, is that the trial court enjoys wide discretion in deciding whether to permit rebuttal testimony. *E.g.*, *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1224-25 (10th Cir. 2000) ("broad discretion"); *United States v. Ovido*, 80 F.3d 1466, 1470 (10th Cir. 1996) (same). Where rebuttal evidence is responsive to new evidence offered in the defendant's case-in-chief, the fact that the evidence could have been offered in plaintiffs' own

case does *not* preclude its admission in rebuttal. *Bell v. AT&T*, 946 F.2d 1507, 1512 (10th Cir. 1991).

Plaintiffs do agree that in exercising its discretion, the Court should weigh the extent to which plaintiffs were on notice that defendants would present the testimony to be rebutted. *E.g.*, *Comcoa, Inc. v. NEC Tel., Inc.*, 931 F.3d 655, 664 (10th Cir. 1991). In that appraisal, the Court is entitled to consider, and should consider, pertinent aspects of the singular procedural history in this case. The litigation has spanned sixteen years, generating many thousands of pages of filings. Scores and scores of witnesses have been deposed. Lay and expert witnesses have come and gone. Sworn testimony has been offered in contexts ranging from discovery disputes to class certification proceedings to expert reports to *Daubert* motions. Hundreds of thousands of pages of documents have been reviewed in discovery. So vast is the corpus of evidentiary material in this case, that resourceful counsel could undoubtedly mine it to argue, in hindsight, that almost any conceivable trial testimony should have been anticipated.

In making a *realistic* evaluation of whether plaintiffs should have anticipated during their case-in-chief that defendants would offer particular evidence, the Court should remain mindful of two general considerations. First, in the case of expert witnesses, the Court should note whether the testimony to be rebutted was disclosed in a timely report under Rule 26(a)(2). If not, then it should be fair game for rebuttal. Affidavits offered in support of defendants' *Daubert* motions (affidavits that defendants repeatedly characterize misleadingly as "reports") should not suffice, because nothing placed plaintiffs on notice that defendants could offer such affiants' testimony for any purpose other than facilitating the Court's admissibility determinations under Fed. R. Evid. 104. In the case of an expert, only a timely report in 1996, or a supplemental report in 2004, would have

forthrightly signaled defendants' intention to offer the testimony for the jury's benefit at trial. That is precisely the function of expert reports.

Second, the Court should bear in mind that certain methods by which plaintiffs normally might have anticipated the course of defendants' case were unavailable to plaintiffs in this trial. Exhibits, for example, were not pre-admitted before trial, but rather were disclosed only 24 hours before the witnesses' testimony. More importantly, defendants repeatedly professed an inability to provide a stable and reliable witness list during plaintiffs' case-in-chief, and plaintiffs consequently did not possess anything resembling such a list by the time plaintiffs rested. *See, e.g.*, Tr. (12/7/05) at 6808 ("Right now, we couldn't tell them who our witnesses in January would be . . . .") (remarks of defense counsel); Tr. (12/9/05) at 7430-32 ("We're working on it. I think sometime, I'd say, you know, maybe mid next week.") (remarks of defense counsel). Well into December, the provisional lists that defendants did provide shifted dramatically, with some witnesses being dropped and others being added. Plaintiffs do not seek to question here defendants' oft-repeated statements that there were excellent reasons for all this uncertainty. But for whatever reasons, the fact remains, defendants' various lists neither exhibited stability nor afforded accurate notice in fact.[1]

---

[1] *See* Defendants' Tentative Witness List as of September 16, 2005 (transmitted to plaintiffs by e-mail on Sept. 16, 2005) (listing 34 witnesses, "subject to revision," most of whom have never been called) (Ex. A); Defendants' Amended Pretrial Submissions (Sept. 29, 2005) (attaching revised "good-faith" list, "subject to amendment," of 31 witnesses, most of whom have never been called) [Ct. Rec. 1475]; Defendants' Statement Concerning Its Trial Witness List (Oct. 5, 2005) ("preliminary" addition of nine putative "rebuttal" witnesses, only one of whom has ever been called, though defendants did attempt to call Dr. Fry) [Ct. Rec. 1492]; Defendants' Tentative Witness List as of November 7, 2005 (Nov. 7, 2005) ("defendants may need to call more (or may call fewer) individuals than are set forth on this list") (listing 33 witnesses, of whom a majority have never been called) [Ct. Rec. 1600]; Defendants' Statement Concerning Its Trial Witness List (adding two putative "rebuttal" witnesses, neither of whom has been
(continued...)

### III.  THE WITNESSES

We turn now to a brief witness-by-witness discussion.

#### A.  Judith Barton and Lauren Clark

As noted above, plaintiffs are withdrawing their designation of rebuttal witnesses Judith Barton and Lauren Clark.[2]

#### B.  Randall Bell

Defendants have offered significant testimony, during their case, criticizing Mr. Hunsperger on the theory that his analysis does not comport with applicable appraisal standards.  Much of this testimony has come from defendants' expert appraiser John D. Dorchester, Jr.  In the Court's decision partially granting plaintiffs' *Daubert* motion concerning Mr. Dorchester, the Court ruled that Mr. Dorchester could testify only to the work described in Chapter 5 and Appendix L of his 1996 report.  *See* Tr. (9/13/05) at 8.  No general discussion of appraisal standards appears in Chapter 5 or Appendix L.  Nor do Chapter 5 or Appendix L contain *any* critique of Mr.

---

[1](...continued)
called, though defendants did attempt to call Mr. Voilleque) [Ct. Rec.1630]; Defendants' Witness List in Alphabetical Order (Nov. 23, 2005) (filed in lieu of true order-of-call) [Ct. Rec. 1714]; Order (Nov. 23, 2005) (directing defendants to file true order-of-call rather than alphabetical list) [Ct. Rec. 1715]; Motion to Compel Defendants to Disclose Their Entire Witness List (Dec. 16, 2005) [Ct. Rec. 1877]; Ct. Rec. 1884 (Dec. 16, 2005) (granting plaintiffs' motion to compel disclosure of defendants' entire list in part and denying it in part); Letter from Scott A. McMillin to Merrill G. Davidoff (Dec. 21, 2005) (attaching list of seven live witnesses and three deposition designations finally purporting to "present[] all of our witnesses for the remainder of our case") [Ct. Rec. 1881]; Defendants' Witness List for January 1, 2005 [sic] through January 13, 2006 (Dec. 31, 2005) (now listing nine live witnesses, dropping two deposition designations, and adding another) [Ct. Rec. 1913].

[2]  Plaintiffs may offer certifications from these witnesses in support of the admissibility of P-1464 (Rocky Flats Community Needs Assessment – Final Report).

*Plaintiffs' Response to Defendants' Motion to Preclude Rebuttal Witnesses – Page 5*

Hunsperger's report. Mr. Dorchester's 2004 supplemental report is likewise silent on the subject of appraisal standards, and silent on the subject of Mr. Hunsperger's analysis. Any argument that plaintiffs should have anticipated this testimony from Mr. Dorchester is wholly spurious. Even if his 1997 *Daubert* affidavit were to be treated, ex post facto, as a supplemental expert "report" (which is not how it was styled at the time), it would not have been a true supplement insofar as it covered areas beyond the scope of Mr. Dorchester's original report. To compound the problem, the jury is likelier to credit this testimony coming from Mr. Dorchester than if it came from some other source, because Mr. Dorchester, unlike defendants' other principal property experts, is an appraiser.

Randall Bell is an appraiser who is well-acquainted with professional techniques and professional standards for estimating area-wide impacts on property value, having participated in the promulgation of many of those standards, and having authored pertinent literature, himself. It is true that that his factual knowledge of those standards was gathered in the course of Mr. Bell's professional experience. However, his testimony will not apply those standards to form any professional opinion by Mr. Bell on the impact of Rocky Flats on area property values, or to vouch for Mr. Hunsperger's empirical findings. Given that plaintiffs have been surprised and prejudiced by Mr. Dorchester's unheralded expert testimony on this subject, permitting Mr. Bell to explain some of the relevant professional standards to the jury is the most modest remedy possible.

### C. Thomas Coyle

As noted above, both Thomas Coyle and a potential substitute witness, Robert Pence, are probably unavailable to testify before the trial is over. In the unlikely event that one of them becomes available, their testimony should be admitted for the limited purpose of rehabilitating Mr. Lipsky's credibility under Fed. R. Evid. 608(a). The theory on which the Court permitted

defendants to call Mr. Norton was precisely that Mr. Norton's testimony about the course of the criminal investigation would shed light on Mr. Lipsky's credibility.  *See* Tr. (11/14/05) at 7915 ("That directly applies to the credibility of Mr. Lipsky. That's the reason it's admissible.") (remarks by the Court).

That is precisely the theme of the testimony that defendants did in fact elicit from Mr. Norton on direct.  *See generally id.* at 7922-68.  Defendants repeatedly contrasted Mr. Lipsky's assertions that his investigation was curtailed with asseverations from Mr. Norton that the "team" followed the evidence relentlessly, without fear or favor, wherever it might lead.  Mr. Norton may not have felt it decorous to attack Mr. Lipsky's integrity as vociferously as defendants may have hoped.  But the veracity of Mr. Lipsky's testimony was directly and repeatedly called into question.  To cite just one example from many:

> Q.  Do you have any response to Mr. Lipsky's testimony that his authority as one of the major investigators into both the incinerator and the medical waste plant issue was revoked on instruction from your office?
>
> A.  Well, certainly I gave no instructions to Mr. Lipsky at any point in time during the course of the investigation.  I would find it, frankly, difficult to believe that anyone gave Mr. Lipsky any such instructions.  That was -- it just doesn't make any sense whatsoever.

*See id.* at 7936.

It cannot be claimed that plaintiffs reasonably should have anticipated this testimony. Defendants' witness lists had included multiple members of the prosecution team, and it did not become clear which, if any, they might actually call, until defendants' case was already underway. Moreover, neither plaintiffs nor defendants communicated with Mr. Norton concerning the substance of his testimony until his deposition shortly before he took the stand.  He had testified before Congress, to be sure, but not to challenge Mr. Lipsky's veracity.

*Plaintiffs' Response to Defendants' Motion to Preclude Rebuttal Witnesses – Page 7*

Plaintiffs believe that defendants will continue to invoke Mr. Norton's testimony to argue to the jury that Mr. Lipsky's testimony was inaccurate or misleading.  If defendants contend there is no credibility issue for plaintiffs to rebut, the minimum price of that contention should be an order precluding defendants from making such arguments in closing.

### D.  Wayne Hunsperger

Plaintiffs were required to designate rebuttal witnesses with defendants still in the midst of their case.  Mr. Hunsperger was included because plaintiffs did indeed anticipate, in the sense of fearing, that one or more of defendants' experts would attempt to offer criticisms of Mr. Hunsperger's analysis that were not reflected in the relevant witnesses' expert reports.  As noted above in connection with Mr. Bell, that prophecy has materialized, for example, in the testimony from Mr. Dorchester.  Suchs testimony includes not merely discussion of standards, to which Mr. Bell might respond in part, but also substantive attacks on Mr. Hunsperger's empirical findings, to which it must necessarily be Mr. Hunsperger who responds.

The Court has permitted defendants' experts to offer commentary on Mr. Hunsperger's work even where the relevant commentary was not disclosed in a report, and meanwhile defendants still have further property witnesses to present, who may well do the same.  That plaintiffs generally anticipated departures by defense experts from the scope of their reports does not imply that plaintiffs should have been able, during their case-in-chief, to foresee what particular form those departures would assume, or what departures would be permitted.  For Mr. Hunsperger to defend himself against such attacks is paradigmatic rebuttal.

### E.  Niels Schonbeck

As plaintiffs' proffer describes in greater detail, Dr. Schonbeck would be called primarily to rebut testimony, including testimony from Dr. Till, about the activities, beliefs, and positions of Health Advisory Panel ("HAP"), the RSAL committee, and their members.  This testimony is factual in nature, based on personal knowledge by Dr. Schonbeck from his work on those panels.  Although defendants' reports may have mentioned HAP and RSAL and discussed their overall role, defendants' elicitation of the specific testimony implying that those bodies and their members were in agreement with particular conclusions drawn by defendants' witnesses was not.

This basis for Dr. Schonbeck's rebuttal testimony bears a striking resemblance, plaintiffs note, to the basis offered by defendants, and accepted by the Court, for Mr. Norton's testimony in rebuttal to Mr. Lipsky's.

### IV.  CONCLUSION

For the reasons given, plaintiffs respectfully request: (a) that defendants' motion be denied as moot, as to rebuttal witnesses Judith Barton and Lauren Clark; (b) that the motion be denied, as to witness Randall Bell; (c) that the motion be denied, or its adjudication deferred, as to witnesses Thomas Coyle and potential substitute Robert Pence; (d) that the motion be denied, or its adjudication deferred, as to Mr. Hunsperger; and (e) that the motion be denied, as to witness Niels Schonbeck.

                                                    Respectfully submitted,

Dated: January 10, 2006                      s/ Peter Nordberg
                                                    Merrill G. Davidoff
                                                    Peter Nordberg
                                                    Berger & Montague, P.C.
                                                    1622 Locust Street
                                                    Philadelphia, PA 19103
                                                    (215) 875-3000

                                                    Attorneys for Plaintiffs
                                                    And the Class

# CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will effect service of such pleading upon:

    David M. Bernick, Esq.
    Kirkland & Ellis LLP
    200 East Randolph Drive
    Chicago, IL 60601

        and

    Joseph J. Bronesky, Esq.
    Sherman & Howard, LLC
    633 Seventeenth Street, Suite 3000
    Denver, CO 80202

    Attorneys for Defendants

                                            s/ Peter Nordberg
                                            Peter Nordberg