[The underlying legal principle of the revised language of this instruction was incorporated in Defs.' Proposed Limiting Instruction No. 8 (Evidence of Media Coverage Not Evidence of Liability) and Supplemental Damages Instruction No. 2 (Stigma) filed Sept. 23, 2005, and in Defs.' Proposed Instruction Regarding Stigma filed Dec. 7, 2005.]

## DEFENDANTS' PROPOSED INSTRUCTION NO. 3.22A

### Consideration of Evidence of Stigma

Plaintiffs seek an award of actual damages in this action caused by the asserted presence of plutonium contamination on the Class Properties (trespass) and/or interference with the use and enjoyment of the Class Properties through an increased risk of health problems or risk of future health risk (nuisance). The measurement of any such damages, as I have instructed you, is the difference between the actual value of the Class Properties and the value these Properties would have had if Dow or Rockwell or both of them had not committed any trespass and/or nuisance proved by Plaintiffs (see Instruction 3.22).

You have heard evidence regarding stigma and whether the value of Class Properties has been affected by stigma. Stigma evidence is not liability evidence. Stigma evidence is relevant only to the extent that it tends to prove the difference in the actual value of Class Properties and the value of Class Properties as it would have been absent any trespass and/or nuisance proved by Plaintiffs.

If you find that there is a diminution in value of the Class Properties caused by multiple factors, then Plaintiffs bear the burden of proving (1) that some

**diminution is caused by trespass or nuisance, and (2) the portion of the diminution in value that is caused by the trespass or nuisance.**

**Argument and Authority:**  This instruction should be adopted for the reasons Defs.' Proposed Instructions re Stigma Evidence and Class Members filed Dec. 7, 2005. *See* Instruction 3.21 ("Actual damages are a monetary award to compensate a plaintiff for the loss *caused by the defendants' wrongful conduct.*") (emphasis added); Instruction 3.22; Instruction 3.24 ("[Y]ou should not consider or award any diminution in value caused solely by the proximity of the Class Area to Rocky Flats."); *see also Staley v. Segal*, 841 P.2d 379, 382 (Colo. Ct. App. 1992) (diminution in value attributable to proximity to neighboring hog facility insufficient to establish nuisance liability); *Adams v. Star Enter.*, 51 F.3d 417, 422 (4th Cir. 1995) (dismissing nuisance claim based on allegation that "the value of [plaintiffs'] properties has been substantially reduced as a result of the 'stigma' attached to the community because of the oil spill"); *Berry v. Armstrong Rubber Co.*, 989 F.2d 822, 829 (5th Cir. 1993) (barring recovery "for reduced market value caused by a 'stigma' absent some physical damage to plaintiffs' land caused by the defendant"); *Wilson v. Amoco Corp.*, 33 F. Supp. 2d 981, 986 (D. Wyo. 1998) ("Plaintiffs in the instant matter may not recover damages based solely on stigma absent proof of some physical injury or harm to the specific Plaintiff's property (i.e., separate establishment of a claim for trespass, nuisance, or negligence)."); *Mercer v. Rockwell Int'l Corp.*, 24 F. Supp. 2d 735, 744 (W.D. Ky. 1998) ("Stigma damages are recoverable only in instances where there has been physical damage to the property in the first

instance."); *Adkins v. Thomas Solvent Co.*, 487 N.W.2d 715, 717 (Mich. 1992)

(dismissing claim for property depreciation where plaintiffs' "properties were not and

would never be subject to ground water contamination).

## INSTRUCTION NO. 3.23

### Both Claims

### Aggregate Damages and Percentage Diminution

If you find Plaintiffs have proved actual damages as described in Instruction No. 3.22, you will be asked to report your findings regarding the amount of their actual damages in several ways. First, you will be asked to decide both the total amount of damages suffered by the entire Class as a whole (called "aggregate" Class damages), and the percentage diminution in property values in the Class Areas as a whole.

Additionally, you will be asked to decide the amount of actual damages and percentage diminution in Class property values for three different types of property in the Class:  vacant land, commercial property and residential property.

You will not be asked to determine the amount of actual damages suffered by any individual Class member.  Individual Class members' share of any damages you award will be determined in later proceedings.  Therefore, you must only concern yourselves with the total, class-wide measures of actual damages I just described.

[The underlying legal principle of the first proposed revision of this instruction was incorporated in Defs.' Proposed Damages Instruction No. 3.3 (Damages Must Have Been Caused by Defendants' Actionable Conduct).  Defendants have not previously submitted an instruction incorporating the remainder of the revised language or its underlying legal principle.  Defendants propose these revisions at this time because of the testimony of plaintiffs' expert Wayne Hunsperger regarding the timing of the alleged diminution of value as of 1986 (which had not previously been disclosed in his deposition or his expert report).  *See* 12/7/05 Trial Tr. at 6710–17.]

## INSTRUCTION NO. 3.24

### Both Claims

### Matters Not Relevant to Determining Actual Damages

In determining any actual damages to be awarded in this case, you should not consider or award any diminution in value caused ~~solely~~ by the proximity of the Class Area to Rocky Flats.  Instead, you must follow my directions in Instruction No. 3.22 to award damages for diminution in value you find was caused **specifically** by any trespass or nuisance you find Dow or Rockwell or both of them committed.

In determining whether Plaintiffs have proved actual damages, ~~you also should remember that Plaintiffs are not required to prove that~~ **evidence regarding the timing of** any diminution in value ~~caused by Dow or Rockwell's activities at Rocky Flats~~ **(such as whether it** came into existence before or after the FBI raid or some other specific event**) may be relevant to (1) whether any injurious situation became complete and comparatively enduring between June 6, 1989 and March 26, 1992, and (2) whether**

98

**the diminution arose from a trespass or nuisance caused by one or both defendants**. ~~Instead, as stated in Instruction No. 3.22, the measure of damages to be proved by Plaintiffs is the value the Class Properties would have had "but for" any trespass or nuisance by Dow and/or Rockwell.~~

**Argument and Authority: "Specifically":** This instruction should make clear that damages must be caused *specifically* by defendants' conduct, and not caused indirectly or in combination with other, non-actionable factors. *See Westric Battery Co. v. Standard Elec Co.*, 482 F.2d 1307, 1318 (10th Cir. 1973) (stating that it is "only the damage flowing legally from the defendant's misdeeds which counts); *Hyman & Co. v. Velsicol Corp.*, 233 P.2d 977, 1008 (Colo. 1951) ("The rule is that damages based upon mere speculation and conjecture are not allowable; however where it has been definitely established that damages are traceable to and the direct result of a wrong, the uncertainty as to the amount thereof is a question for determination by the trier of the facts."); *see also* Defs.' Proposed Instruction No. 3.22A and authority cited therein.

**"Evidence regarding the timing":** Evidence that there was no additional diminution during the time at which the injurious situation allegedly became complete and comparatively enduring date suggests that the injurious situation did not, in fact, become complete and comparatively enduring. The reason why damages are measured at the time that the injurious situation became complete and comparatively enduring under Restatement § 930 is that it is expected that some amount of additional diminution will arise at that time. *See* Restatement § 930, cmt. d ("Obviously, the standard, to be fair to

the injured person, must not look to a time before the invasions have begun and the effects of the injurious conditions have been revealed in their full extent. At the time when the injurious situation has become complete and comparatively enduring, the amount of depreciation because of the prospect of future invasion can be determined with greatest accuracy.").

Evidence of the timing of diminution also is suggestive of the *cause* of the diminution. For example, assuming that Hunsperger is correct that properties proximate to Rocky Flats had already decreased in value prior to 1989, *see* 12/7/05 Trial Tr. at 6710–17, it cannot be said that such diminution was caused by the 1989 FBI raid.

[Defendants previously submitted an instruction regarding prior market discount, *see* Defs.' Proposed Supplemental Instruction No. 2 filed 9/16/05, but this instruction did not incorporate the revised language below.  Defendants submit this revised language because they respectfully disagree with the explanation of the rule underpinning this defense in the current preliminary instruction.]

### INSTRUCTION NO. 3.25

Both Claims

Affirmative Defense:  Setoff

If you find that the Plaintiff class has proved actual damages, then you must consider whether Dow and Rockwell have proved their affirmative defense of setoff.

This defense is based on the rule that if ~~the defendants' wrongful conduct has caused harm to the plaintiff, but also has conferred a direct benefit on the plaintiff, then the value of the benefit conferred mitigates, that is reduces, the actual damages that may be recovered for the defendants' wrongful conduct~~ **all or some Class members purchased their properties at a diminished price as a result of a trespass or nuisance, and yet also were awarded damages for that trespass or nuisance, then such Class members would receive a "windfall" award of damages regardless of whether they suffered any actual loss.**

~~In this case, Dow and Rockwell argue that any trespass or nuisance you find harmed the Plaintiff Class by diminishing the value of their properties also conferred a benefit on the Class because all or some Class members purchased their properties at a diminished price as a result of the same trespass or nuisance.~~

101

In order to prevail on this affirmative defense of setoff, Dow and Rockwell must prove by a preponderance of the evidence:

1.  That the trespass and/or nuisance that damaged the Plaintiff Class by diminishing the value of property in the Class Area also caused a diminution in the value of Class Properties in one or more specific time periods before June 7, 1989; and

2.  The amount of any such pre-existing diminution in the value of Class properties, expressed as the percentage decrease in value, for each specific time period or periods for which Defendants proved a pre-June 7, 1989 diminution in Class property values caused by their trespass and/or nuisance.

If you find that Dow and/or Rockwell did not prove both of the elements for setoff by a preponderance of the evidence, then you must find Dow and/or Rockwell failed to prove this affirmative defense.

On the other hand, if you find that Dow and/or Rockwell proved both elements of this defense by a preponderance of the evidence, then you must find they proved this affirmative defense as to the time period or periods you report on the Jury Verdict Form. If you make this finding, then your findings regarding the pre-existing percentage diminution in value for the specific time period or periods will be used in a later proceeding to calculate the amount by which the Plaintiffs' actual damages will be reduced on account of this defense of setoff.

If you find Dow and/or Rockwell has proved this affirmative defense, then you must use calm discretion and sound reason, not sympathy, prejudice, or speculation, in fixing the amount of any pre-existing diminution in Class property values.  Difficulty or uncertainty in determining the precise amount of any setoff does not prevent you from deciding an amount.  You should use your best judgment based on the evidence.

**Argument and Authority:**  As previously briefed, defendants' position is that whether a class member purchased their class property at a discount is not an issue relating to mitigation of damages, rather than an issue concerning whether the alleged diminution in value occurred during the time that a plaintiff owned his or her property. *See Westric*, 482 F.2d at 1318 (stating that it is "only the damage flowing legally from the defendant's misdeeds which counts); *Hyman*, 233 P.2d at 1008 ("The rule is that damages based upon mere speculation and conjecture are not allowable; however where it has been definitely established that damages are traceable to and the direct result of a wrong, the uncertainty as to the amount thereof is a question for determination by the trier of the facts."); *see also generally* Defs.' Mem. re Class-Wide Damages Proof and "Set-Off" filed 10/20/04.  That defendants somehow "conferred a benefit" on plaintiffs through their alleged trespass and/or nuisance is not only analytically incorrect, but would be confusing to a jury.

**INSTRUCTION NO. 3.26**

Both Claims

Multiple Recovery Prohibited

A plaintiff in a civil action may recover only once for the same injury, even though the plaintiff seeks an award for that injury under several claims for relief or against multiple defendants.  For example, a plaintiff who lost $100 as a result of the conduct of multiple defendants may recover only $100, even if the plaintiff sought $100 in damages from each defendant on one claim, and $100 in damages from each defendant on a different claim.

In this case, Plaintiffs are seeking to recover from Dow and Rockwell on their claims of trespass and nuisance on behalf of the Class.  Under the rule prohibiting multiple recovery, the Plaintiffs may recover actual damages only once, even if you return verdicts in their favor on more than one claim for relief, or against more than one Defendant.

I am instructing you on the rule prohibiting multiple recovery so that you will be aware of the law on the issue.  It is I, rather than you, however, who will apply the rule. You are specifically instructed to consider the Plaintiffs' nuisance and trespass claims against each Defendant independently.  That is, you are to consider each of those claims as though it were the only claim in the case.  If you find for Plaintiffs on either of these claims against either Dow or Rockwell, you are to write an award of damages on that claim without regard to your finding for or against Dow or Rockwell on any other claim.

104

I will apply the rule prohibiting multiple recovery when I issue my judgment on your verdict, whatever that may be.

Perhaps it bears repeating that nothing in this or any other instruction is meant to suggest what your finding on any or all claims should be. My instructions on damages are only to be applied in the event you find for Plaintiffs on one or more of their claims.

[Defendants have not previously submitted an instruction incorporating the proposed revision regarding "intentional conduct," but do so now because plaintiffs have failed to provide evidence sufficient to support a finding of willful and wanton conduct. Defendants previously incorporated their proposed addition regarding the maximum amount of punitive damages in Defs.' Proposed Jury Verdict Form, filed Sept. 3, 2004, at 92.]

## INSTRUCTION NO. 3.27

Both Claims

Punitive Damages

If you find for Plaintiffs and award them actual damages on their claims of trespass and/or nuisance against either Dow or Rockwell or both of them, then you must consider whether you should award punitive damages against the same Defendant or Defendants that you found liable for trespass and/or nuisance.

For Plaintiffs to recover punitive damages, they must prove beyond a "reasonable doubt" that the **intentional** conduct of the Defendant ~~that committed~~ **in committing** the trespass and/or nuisance ~~in committing a trespass or a nuisance~~ was "willful and wanton." In deciding this question with respect to any conduct relating to plutonium, you can only consider the Defendants' conduct up to August 20, 1988, including conduct occurring before this date that resulted in harm on or after that date.

"Willful and wanton" conduct means an act or omission purposefully committed by the Defendant in question, who must have realized that the conduct was dangerous, and which conduct was done heedlessly and recklessly, either without regard to the

106

consequences, or without regard to the rights and safety of others, particularly the Plaintiff Class.

"Reasonable doubt" means an uncertainty of mind in which your judgment is not at rest and you can explain this uncertainty based on a fair and thoughtful consideration of all of the evidence, or lack of evidence, in the case.

The purpose of punitive damages is not to compensate the Plaintiffs, but rather to punish the Defendant, and to deter that Defendant and others from committing such acts in the future.

If you find beyond a reasonable doubt that one or both of the Defendants acted in a willful and wanton manner, then you may award a reasonable sum as punitive damages against the Defendant or Defendants you found acted in this manner.

**If you find that a Defendant's conduct was negligent, but that Defendant's conduct was not intentional, you may not award punitive damages.**

**The maximum amount of punitive damages that may be awarded to Plaintiffs is limited to the amount of compensatory damages, if any, caused by any conduct by defendants that you determine to be "willful and wanton."**

**Argument and Authority:  "Intentional" Conduct:**  Plaintiffs may not recover punitive damages for defendants' conduct found merely to be negligent. *See Van Leeuwan v. Nuzzi*, 810 F. Supp. 1120, 1124 (D. Colo. 1993) ("Van Leeuwan's viable claims are based on negligence, not intentional, malicious conduct.  Her request for punitive damages is stricken.") (Kane, J.).

**"Maximum Amount":**  As a matter of Colorado statutory law, the jury may not award punitive damages in an amount exceeding the amount of compensatory damages. C.R.S. § 13-21-102(1)(a) ("The amount of such reasonable exemplary shall not exceed an amount which is equal to the amount of the actual damages awarded to the injured party.").

[Defendants have not previously submitted a jury instruction incorporating the revised language below or its underlying legal principles.  Defendants submit these proposed changes in light of the evidence and the arguments of plaintiffs' counsel in this trial.  *See* Pls.' mini-summation, 1/6/05 Trial Tr. at 9259 ("What they were saying was it could be 20 years, 30 years, 50 years, 70 years into the future before this plant was cleaned up. . . . But the fact is as of 1989, nobody had any reason to expect or know or believe that this plant would be cleaned up at any definite point in the future.").]

**INSTRUCTION NO. 3.28**

<u>Additional Questions</u>

In addition to deciding the issues of trespass, nuisance, and damages in this action, I will ask you at the end of the trial to answer several additional questions that will help me and the parties in future proceedings in this case.  The first two questions are related.  They are:

1.  Did it appear on or before January 30, 1990, which is the date this case was filed, that the alleged trespass and/or nuisance by Dow or Rockwell or both of them would continue indefinitely?  In answering this question, "continue indefinitely" means there was no reason to expect that the trespass and/or nuisance would end ~~at any definite time in the future~~ **<u>in the reasonably foreseeable future</u>**.

2.  If you answer to Question No. 1 is "no," then when did it become apparent that the proven trespass and/or nuisance would continue indefinitely?

109

The third additional question concerns a form of interference with the use and enjoyment of property.  Plaintiffs assert that one of the ways Dow and Rockwell interfered with Class members' use and enjoyment of their land was by causing individual Class members to suffer fear, anxiety or mental discomfort because of concerns about **health** risks created by Defendants' activities at Rocky Flats.  Because this is a trial of claims by the whole Class, I earlier instructed you <u>not</u> to consider whether individual Plaintiffs or Class members suffered this form of interference in deciding whether Plaintiffs had proved their class-wide nuisance claim (see Instruction No. 3.7).  Nonetheless, to assist me and the parties in deciding how to proceed later in this case, you will be asked to answer the following question:

> Have Plaintiffs proved by a preponderance of the evidence that the intentional or negligent conduct of Dow or Rockwell or both of them at Rocky Flats, and/or actual or threatened harms caused by such conduct, created a situation that is capable of causing fear, anxiety, or mental discomfort in individual Class members?

In answering this question, you should know that Plaintiffs do not need to show that any actual or threatened future contamination from Rocky Flats poses an actual or verifiable health risk.  An individual Class members' fear, anxiety or mental discomfort can also be based on concerns that may be without scientific foundation or other support in fact.

**Argument and Authority:**

<u>"In the reasonably foreseeable future"</u>:  Plaintiffs have argued that an injurious situation is complete and comparatively enduring if one cannot identify the precise point

in time at which it will cease. *See, e.g.*, 1/6/05 Trial Tr. at 9259. This misconstrues Restatement § 930, which defines "complete and comparatively enduring" when "there is no reason to expect its termination at ***any*** definite time in the future." Restatement § 930 cmt. b (emphasis added). If it appears that an injurious situation will cease at some time, even if that point in time cannot be predicted definitively, Restatement § 930 cannot be applied because its underlying assumption that the injurious situation will continue indefinitely is false.

<u>Health Risk:</u> Plaintiffs have not produced evidence of fear, anxiety, or mental discomfort relating to anything from Rocky Flats other than risk to health.

## Section 4

## Final Instructions

**INSTRUCTION NO. 4.1**

Jury Deliberations - General Instructions

Each of you has a copy of the instructions to consult as you find it necessary.
You may keep your copy throughout the trial and in your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts,
you must apply and follow the law as I give it to you whether you agree with it or not.
You must base your verdict upon the evidence. You must not be influenced by any
personal likes or dislikes, opinions, prejudices or sympathy. That means you must decide
the case solely on the evidence before you and according to the law as I give it to you.
You have taken an oath promising to do just so.

In following my instructions, you must follow all of them and not single out some
and ignore others; they are all equally important. You must not read into these
instructions or into anything I may say or do any suggestions as to what verdict you
should return. Your verdict is a matter entirely for you to decide.

## INSTRUCTION NO. 4.2

Jury Deliberations - General Instructions

When you go to the jury room to begin your deliberations, you must elect one member of the jury as your Presiding Juror.  He or she will preside over your deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreements if you can do so.  In order to answer any question on the Verdict Form, ten jurors must agree upon the answer.  It is not necessary that the jurors who agree on the answer be the same jurors who agreed on the answer to any other question, so long as ten jurors agree to each answer.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it with your fellow jurors, and listened to the views of your fellow jurors.  I offer some suggestions on how you might do this in the next jury instruction, entitled "Jury - The Deliberations Process."

Do not be afraid to change your opinion if the discussion persuades you that you should.  But do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach agreement to answer the questions on the Verdict Form, but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight of the evidence simply to reach an answer.

**INSTRUCTION NO. 4.3**

<u>Jury - The Deliberations Process</u>

Once you have elected your Presiding Juror as directed by the previous instruction, you are free to proceed as you agree is appropriate. Therefore, I am not directing you how to proceed, but I offer the following suggestions that other juries have found helpful so that you can proceed in an orderly fashion, allowing full participation by each juror, and arrive at a verdict that is satisfactory to each of you.

First, it is the responsibility of the Presiding Juror to encourage good communication and participation by all jurors and to maintain fairness and order. Your Presiding Juror should be willing and able to facilitate productive discussions even when disagreements and controversy arise.

Second, the Presiding Juror should let each of you speak and be heard before expressing his or her own views.

Third, the Presiding Juror should never attempt to promote nor permit anyone else to promote his or her personal opinions by coercion or intimidation or bullying of others.

Fourth, the Presiding Juror should make certain that the deliberations are not rushed to reach a conclusion.

If the Presiding Juror you select does not meet these standards, he or she should voluntarily step down or be replaced by a majority vote.

After you select a Presiding Juror you should consider electing a secretary who will tally the votes, help keep track of who has or hasn't spoken on the various issues, make certain that all of you are present whenever deliberations are under way and

115

otherwise assist the Presiding Juror.  Some juries are tempted at this point to hold a preliminary vote on the case before them to "see where we stand."  It is most advisable, however, that no vote be taken before a full discussion is had on the issue to be voted on, otherwise you might lock yourself into a certain view before considering alternative and possibly more reasonable interpretations of the evidence.  Experience has also shown that such early votes frequently lead to disruptive, unnecessarily lengthy, inefficient debate and ineffective decision-making.

Instead, I suggest the Presiding Juror begin your deliberations by directing the discussion to establishing informal ground rules for how you will proceed.  These rules should assure that you will focus upon, analyze and evaluate the evidence fairly and efficiently and that the viewpoints of each of you is heard and considered before any decisions are made.  No one should be ignored.  You may agree to discuss the case in the order of the questions presented in the special verdict form or in chronological order or according to the testimony of each witness.  Whatever order you select, however, it is advisable to be consistent and not jump from one topic to another.

To move the process of deliberation along in the event you reach a controversial issue, it is wise to pass it temporarily and move on to the less controversial ones and then come back to it.  You should then continue through each issue in the order you have agreed upon unless a majority of you agrees to change the order.

It is very helpful, but certainly not required of you, that all votes be taken by secret ballot.  This will help you focus on the issues and not be overly influenced by personalities.  Each of you should also consider any disagreement you have with another

116

juror or jurors as an opportunity for improving the quality of your decision and therefore should treat each other with respect. Any differences in your views should be discussed calmly and, if a break is needed for that purpose, it should be taken.

Each of you should listen attentively and openly to one another before making any judgment. This is sometimes called "active listening" and it means that you should not listen with only one ear while thinking about a response. Only after you have heard and understood what the other person is saying should you think about a response. Obviously, this means that, unlike TV talk shows, you should try very hard not to interrupt. If one of your number is going on and on, it is the Presiding Juror who should suggest that the point has been made and it is time to hear from someone else.

You each have a right to your individual opinion, but you should be open to persuasion. When you focus your attention and best listening skills, others will feel respected and, even while they may disagree, they will respect you. It helps if you are open to the possibility that you might be wrong or at least that you might change your mind about some issues after listening to other views.

Misunderstanding can undermine your efforts. Seek clarification if you do not understand or if you think others are not talking about the same thing. From time to time the Presiding Juror should set out the items on which you agree and those on which you have not yet reached an agreement.

In spite of all your efforts, it is indeed possible that serious disagreements may arise. In that event, recognize and accept that "getting stuck" is often part of the decision making process. It is easy to fall into the trap of believing that there is something wrong

with someone who is not ready to move toward what may be an emerging decision.  Such

a belief is not helpful.  It can lead to focusing on personalities rather than the issues.  It is

best to be patient with one another.  At such times slower is usually faster.  There is a

tendency to set deadlines and seek to force decisions.  Providing a break or more time

and space, however, often helps to shorten the overall process.

You may wish from time to time to express your mutual respect and repeat your

resolve to work through any differences.  With such a commitment and mutual respect,

you will most likely render a verdict that leaves each of you satisfied that you have

indeed rendered justice.

## INSTRUCTION NO. 4.4

Communications with the Judge

If it becomes necessary during your deliberations to communicate with me, you may send a folded note through the court security officer, signed by one of you.  Do not disclose the content of your note to the court security officer.  No member of the jury should hereafter attempt to communicate with me except by signed writing; and I will communicate with any member of the jury on anything concerning the case only in writing, or orally here in open court.  You are not to tell anyone - including me - how the jury stands, numerically or otherwise, until you have reached a verdict or I have discharged you.

If you send a note to me containing a question or request for further direction, please bear in mind that responses take considerable time and effort.  Before giving an answer or direction I must first notify counsel and bring them back to the court.  I must confer with them, listen to arguments, research the legal authorities, if necessary, and reduce the answer or direction to writing.

There may be some question that, under the law, I am not permitted to answer.  If it is improper for me to answer the question, I will tell you that.  Please do not speculate about what the answer to your question might be or why I am not able to answer a particular question.

In some instances jurors request that certain testimony be read to them.  This cannot be done as it is inappropriate for the court to single out testimony.  In those circumstances you must rely upon your own recollection.

119

[Defendants propose the below changes in light of the recent departure of one of the jurors. *See* Defs.' Statement Regarding the Jury Verdict, filed 9/29/05.]

## INSTRUCTION NO. 4.5

<u>Jury Verdict Form</u>

You will each have copies of a document called a Jury Verdict form.  There is one Jury Verdict Form for each Defendant.  You are instructed to answer the questions in each Jury Verdict Form as directed in that form.

In order to answer any question on the Jury Verdict Form, ~~ten~~ **nine** jurors must agree upon the answer.  It is not necessary that the jurors who agree on the answer be the same jurors who agreed on the answer to any other question, so long as ~~ten~~ **nine** jurors agree to each answer.

Upon arriving at an agreement, your Presiding Juror will insert each answer on the appropriate Jury Verdict Form.  After all of the questions have been answered as directed by the Jury Verdict Form, your Presiding Juror will date each Jury Verdict Form, sign it, and then ask all of the other jurors to sign it.

After you have filled out both Jury Verdict forms in this manner, your Presiding Juror should advise the court security officer stationed outside the jury room that you have reached a verdict.