[Defendants have not previously submitted an instruction incorporating the revised language because the revision below merely proposes removing language from the preliminary instruction.]

## INSTRUCTION NO. 3.13

### Nuisance Claim

### Third Element: "Intentional" or "Negligent" Conduct

As stated in Instruction No. 3.6, the third element Plaintiffs must prove to prevail on their nuisance claim is that the activity or activities causing the unreasonable and substantial interference were either "intentional" (see Instruction No. 3.14) or "negligent" (see Instruction No. 3.15). Thus, Plaintiffs must do more than show that the existence of Rocky Flats interfered with Class members' use and enjoyment of their properties. They must show that either Defendant or both of them engaged in intentional or negligent conduct at Rocky Flats that caused such an interference.

**Argument and Authority:**

Under Colorado Supreme Court precedent, plaintiffs must prove either that defendants' conduct which allegedly gave rise to the substantial and unreasonable interference was intentional, or that defendants' conduct was negligent. *See Pub. Serv. Co. of Colorado v. Van Wyk*, 27 P.3d 377, 382 (Colo. 2001). Plaintiffs may not "mix and match" among different claims.

[The underlying legal principle regarding class-wide proof was incorporated in Defs.'
Proposed Supplemental General Instruction No. 2 (No Liability to Class as a Whole Unless
Liability to Each Class Member) filed Sept. 23, 2005.  Defendants have not previously submitted
an instruction incorporating the rest of the revised language, but do so now in light of plaintiffs'
failure to provide sufficient evidence of intentional conduct underlying a nuisance.]

## INSTRUCTION NO. 3.14

Nuisance Claim

Third Element:  Definition of "Intentional" Conduct

The conduct that results in an interference with another's use and enjoyment of property
is considered "intentional" if it meets any of the following three tests:

(1)     The defendant knew that its conduct would interfere with all of the Class
members' use and enjoyment of their property; or

(2)     The defendant knew it was substantially certain that its conduct would interfere
with all of the Class members' use and enjoyment of their property; or

(3)     The defendant learned that its conduct was interfering with or was substantially
certain to interfere with all of the Class members' use and enjoyment of their property and yet
continued this conduct without regard to the invasion interfering with the use and enjoyment of
all of the Class members' property.

**Argument and Authority:**

<u>Class-wide Proof</u>:  This is a trial of the class claim and no individual claims are being tried.  *See, e.g.,* 5/17/04 Order, at 3.  If plaintiffs do not prove a claim for the class as a whole, then no class member may recover on that claim.  *See, e.g.,* U.S.C. § 2072 (class action device cannot be used to "abridge, enlarge or modify any substantive right" of any litigant); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999); *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

<u>"Without regard to the invasion"</u>:  This language comes directly from the Colorado Supreme Court's decision in *Van Wyk*, which defines what constitutes an "intentional" trespass. *See Pub. Serv. Co. of Colorado v. Van Wyk*, 27 P.3d 377, 395 (Colo. 2001) ("I]f a defendant, with notice that an invasion interfering with the use and enjoyment of the plaintiff's property has occurred, or is substantially certain to occur, continues his conduct ***without regard to the invasion interfering with the use and enjoyment of the plaintiff's property***, that defendant's conduct will be the proper basis for an intentional nuisance cause of action.") (emphasis added).

[The underlying legal principle regarding class-wide proof was incorporated in Defs.' Proposed Supplemental General Instruction No. 2 (No Liability to Class as a Whole Unless Liability to Each Class Member) filed Sept. 23, 2005. Defendants have not previously submitted an instruction incorporating the rest of the revised language because defendants' original position was that the standard of care incorporated into the instruction is not correct.]

## INSTRUCTION NO. 3.15

Nuisance Claim

Third Element:  Definition of "Negligent" Conduct

The generation, use, storage, and disposal of plutonium and other hazardous radioactive and non-radioactive substances as part of the operation of a nuclear weapons plant are inherently dangerous activities.  As a result, if Dow and Rockwell could foresee that their activities would substantially and unreasonably interfere with all Class members' use and enjoyment of their properties, then Dow and Rockwell were required to exercise the highest practicable degree of skill, care, diligence, and foresight (consistent with their obligations to the Department of Energy) in conducting these activities, according to the best technical, mechanical, and scientific knowledge and methods that were practical and available at the time.  If either Dow or Rockwell or both of them did not fulfill this duty when they performed any activities that they could foresee would cause a substantial and unreasonable interference with all Class members' use and enjoyment of their properties (as defined in these instructions), then their conduct was negligent.

**Argument and Authority:**

Foreseeability:  Foreseeability is a requirement for claims based on the "heightened standard of care" for "inherently dangerous activities."  *Walcott v. Total Petroleum, Inc.*, 964 P.2d 609, 612 (Colo. App. 1998) ("We therefore conclude that, whether analyzed under the

rubric of duty or proximate cause, the risk that a purchaser would intentionally throw gasoline on a victim and set the victim on fire was not reasonably foreseeable. . . . The same result obtains even assuming, without deciding, that Total was subject to the heightened standard of care the supreme court prescribed in *Huddleston v. Union Rural Electric Ass'n*, 841 P.2d 282 (Colo.1992), for inherently dangerous activities.")

Consistent with Their Obligations to the Department of Energy: The uncontroverted evidence presented at trial has established that defendants Dow or Rockwell were required to act in a manner consistent with their obligations to the Department of Energy. The jury instructions should not suggest that Dow or Rockwell may be held liable for nuisance even if they were acting in accordance with those obligations.

Highest Practicable Degree of Skill, Care, Diligence, and Foresight: The law does not permit defendants to be held to the highest "possible" degree of skill, care, diligence, and foresight. *Any* degree of care is "possible," and it is incorrect to hold defendants to such a standard over the course of each moment of the four decades that they operated the Rocky Flats Plant. Moreover, the application of a standard involving the highest "possible" degree of skill, care, diligence, and foresight implies that defendants may have been required to act in a manner inconsistent with their obligations to the Department of Energy.

Class-wide Proof: This is a trial of the class claim and no individual claims are being tried. *See, e.g.*, 5/17/04 Order, at 3. If plaintiffs do not prove a claim for the class as a whole, then no class member may recover on that claim. *See, e.g.*, 28 U.S.C. § 2072 (class action device cannot be used to "abridge, enlarge or modify any substantive right" of any litigant); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

**INSTRUCTION NO. 3.16**

Nuisance Claim

<u>Third Element:  Accident Not Presumptive Negligence</u>

The occurrence of an accident does not raise any presumption of negligence on the part of a defendant.  Negligence may be established, however, by the facts and circumstances surrounding an accident.

[Defendants have not previously submitted an instruction incorporating the revised language below or its underlying legal principles, but do so now in light of plaintiffs' failure to produce evidence supporting a finding of continuing nuisance.]

## INSTRUCTION NO. 3.17

Nuisance Claim

Fourth Element:  Continuing Nuisance

In deciding the fourth element of Plaintiffs' nuisance claim, which is whether the nuisance will continue indefinitely, you must determine whether Plaintiffs have proved each of the following by a preponderance of the evidence:

1.    Dow and Rockwell continue to intentionally or negligently undertake an activity or activities at the Rocky Flats plant.

2.    These activities continue to substantially and unreasonably interfere with all Class members' use and enjoyment of their properties, either by continuing to cause Class members to be exposed to plutonium and placing them at a substantially increased risk of health problems as a result, or by continuing to create objective conditions that make it more likely than not that the Class Area will be exposed to plutonium in the future and will be placed at a substantially increased health risk as a result.

In deciding this element, it is not necessary for you to find that the substantial and unreasonable interference meeting these requirements will last forever.  Instead, you should consider whether there is any reason to expect that the substantial and unreasonable interference with all Class members' use and enjoyment of their properties either has ended or will end.  If you find that the substantial and unreasonable interference has not ended and that there is no reason to expect the substantial and unreasonable interference to end within the reasonably

70

foreseeable future, then you must find it appears the substantial and unreasonable interference will continue indefinitely.

**Argument and Authority:**  In order for the damages measure of Section 930 of the Restatement to apply, the trespass must be "continuing."  Restatement (Second) of Torts § 930. In order for the trespass to be "continuing" within the meaning of Section 930, the following conditions must be met:  (1) the defendant's operational activities which give rise to the trespass must be continuing; (2) the defendant's intent to cause a class-wide trespass must be continuing; and (3) the plutonium contamination resulting from the trespass must be continuing.  *See* Restatement (Second) of Torts Section 930 ("(1) If one causes continuing or recurrent tortious invasions on the land of another ***by the maintenance of a structure or acts or operations not on the land of the other*** . . .") (emphasis added); Restatement (Second) of Torts Section 930, cmt. d ("Manifestly, this element of depreciation is distinct from the loss in value brought by the actual effects of past invasions (see Comment on § 929) such as damage by floods to the soil's fertility."); Restatement (Second) of Torts Section 929, cmt. a (Section 929 (and not Section 930) applies where "future losses are ***not contingent upon the continuance in the future of the defendant's wrongdoing***, and hence the result follows regardless of whether the owner can recover in advance for the prospective harm of future operations of the cement plant. This is a distinct question that is dealt with in § 930") (emphasis added).

**INSTRUCTION NO. 3.18**

Both Claims

<u>Causation</u>

The word "cause" as used in these instructions means an act or failure to act that in natural and probable sequence produced the claimed effect.  It is a cause without which the claimed effect would not have happened.

**INSTRUCTION NO. 3.19**

Both Claims

<u>Separate Findings for Each Defendant</u>

You must make a separate determination on both the trespass and nuisance claims against each Defendant.  If you find that the evidence establishes a trespass or nuisance by one Defendant but not the other, you must render separate verdicts on each claim.

## INSTRUCTION NO. 3.20

Both Claims

<u>Damages - Introduction</u>

I am now going to instruct you on the measure of damages to be awarded if you find in favor of the plaintiff class on their claims of trespass or nuisance against Dow or Rockwell.

You must determine the amount of damages in accordance with these instructions. The fact I will instruct you on the measure of damages does not mean I am instructing you as to which party is entitled to your verdict or that I am instructing you to award or not award damages. The questions of whether or not damages are to be awarded, and the amount of such damages, are for your consideration alone.

If you decide to award damages, you should fix the amount using calm discretion and sound reason, not sympathy, prejudice, or speculation.

Difficulty or uncertainty in determining the precise amount of damages does not prevent you from deciding an amount. You should use your best judgment based on the evidence.

[Defendants have not previously submitted a jury instruction incorporating the additional language below or its underlying legal principles.  Defendants submit this proposed addition in light of the evidence and the arguments of plaintiffs' counsel in this trial.  *See, e.g.*, Pls.' mini-summation, 10/21/05 Trial Tr. at 2101 ("The property damage evidence that you will hear in the coming weeks is going to be an average . . . .  It's greater closer in; it's less on the edge.").]

## INSTRUCTION NO. 3.21

Both Claims

Damages - Actual or Nominal

If you find in favor of Plaintiffs on either of their claims against Dow and/or Rockwell, then you must award them actual or nominal damages.

Actual damages are a monetary award to compensate a plaintiff for the loss caused by the Defendant's wrongful conduct.  The goal of an award of actual damages is to make the injured person whole or, in other words, to put them in the position they would have been in if they had not been harmed by the Defendant.

To award Plaintiffs actual damages, you must find that Plaintiffs proved by a preponderance of the evidence that:  (1) the Plaintiff Class as a whole incurred actual damages as a result of the trespass and/or nuisance caused by Dow or Rockwell or both of them (as defined in Instruction Nos. 3.2 and 3.6), and (2) the amount of these actual damages.  I will tell you in the next instructions (Nos. 3.22 - 3.24) how to decide these questions.

If you find in favor of Plaintiffs on a particular claim, but do not find any actual damages with respect to that claim, you shall nonetheless award Plaintiffs nominal damages in the sum of one dollar on that claim.

**Argument and Authority:**  Plaintiffs cannot rely on a finding by the jury that class-area properties, *on average*, suffered a diminution in value.  They must show that *each and every one* of the class properties suffered a diminution in value.  *See Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 319-21 (5th Cir. 1998) (reversing damages award based on extrapolation rather than individual evidence).  Allowing class members who have suffered no diminution in property value to nevertheless recover on the basis of an average violates the fundamental principle of damages under Colorado law:  "The trial court must take as its principal guidance the goal of reimbursement of the plaintiff for losses actually suffered."  *Bd. of County Comm'rs v. Slovek*, 723 P.2d 1309, 1316 (Colo. 1986); *see also Zwick v. Simpson*, 572 P.2d 133, 134 (Colo. 1977) ("[T]he goal of the law of compensatory damages is reimbursement of the plaintiff for the actual loss suffered.").

[Defendants previously submitted this Instruction in Defs.' Proposed Instruction re the Type of Compensatory Damages That Can Be Awarded, filed 12/8/05.]

**DEFENDANTS' <u>PROPOSED</u> INSTRUCTION NO. 3.21A**

**Both Claims**

**<u>Type of Damages That Can Be Awarded</u>**

**The only damages that can be awarded in this case are for diminution in property value. You may not consider compensatory damages for any other alleged injury.**

**Argument and Authority:** This instruction should be provided for the reasons given in Defs.' Proposed Instruction re the Type of Compensatory Damages That Can Be Awarded, filed 12/8/05. *See* 5/17/05 Order at 18 ("Here, plaintiffs contend Defendants' trespass and nuisance harmed class members' pecuniary interests by diminishing the value of their properties."); Pls' Statement of Claims, filed 8/10/05, at 4.

[Defendants have not previously submitted a jury instruction incorporating the revised language below or its underlying legal principles. Defendants submit these proposed changes in light of the evidence and the arguments of plaintiffs' counsel in this trial. *See* Pls.' mini-summation, 10/21/05 Trial Tr. at 2101 ("The property damage evidence that you will hear in the coming weeks is going to be an average . . . . It's greater closer in; it's less on the edge."); 12/7/05 Trial Tr. at 6875 ("What Mr. Davidoff is saying somehow is that we can't contest, A, that there has been a loss to the class or a loss on value of class property; and, B, we can't contest the things have changed. We believe that they have changed."); Pls.' mini-summation, 1/6/05 Trial Tr. at 9259 ("What they were saying was it could be 20 years, 30 years, 50 years, 70 years into the future before this plant was cleaned up. . . . But the fact is as of 1989, nobody had any reason to expect or know or believe that this plant would be cleaned up at any definite point in the future.").]

## INSTRUCTION NO. 3.22

### Both Claims

### Measure of Actual Damages

Plaintiffs seek an award of actual damages based on the decrease in the value of properties in all of the Class Area caused by the trespass and/or nuisance committed by Dow or Rockwell or both of them. This type of actual damages is sometimes called diminution in property value.

The diminution of property value that Plaintiffs may recover here is measured by the difference between the actual value of the Class Properties and the value these Properties would have had if Dow or Rockwell or both of them had not committed the trespass and/or nuisance proved by Plaintiffs. In other words, you must compare the actual value of all of the Class Properties to what their value would have been "but for" the trespass and/or nuisance, and that

difference is the diminution in property value that Plaintiffs can recover as actual damages in this case.

In a case like this, the law requires that you measure the amount of any such diminution in all Class property values at a particular point in time. That point is the time or time period when the injurious situation became "complete" and "comparatively enduring." The injurious situation is "complete" when the effects of the trespass or nuisance are known to their full extent. It is "comparatively enduring" when there is no reason to expect that these effects will end in the reasonably foreseeable future. Evidence that any diminution in Class property values has decreased or diminished after the time when plaintiffs allege the injurious situation is complete and comparatively enduring is evidence that the injurious situation was not, in fact, complete and comparatively enduring. When the injurious situation became "complete" and "comparatively enduring" in this case is a question you will decide as I will describe in just a moment.

Plaintiffs contend that the diminution in the value of Class properties should be measured as of the period between June 6, 1989, when the FBI and U.S. Environmental Protection Agency searched Rocky Flats as part of their investigation into alleged wrong-doing by Rockwell, and March 26, 1992, when Rockwell pled guilty to certain environmental crimes at Rocky Flats. Plaintiffs allege this is the right time period to measure their actual damages because this is when the injurious effects of Defendants' alleged trespass and nuisance became "complete" and "comparatively enduring."

Accordingly, to decide whether Plaintiffs are entitled to the actual damages they seek in this case, you must determine whether Plaintiffs have proved by a preponderance of the evidence that:

1. The injurious situation became "complete" and "comparatively enduring" (as defined in this instruction); and

2. The injurious situation became "complete" and "comparatively enduring" (as defined in this instruction) only between June 6, 1989, and March 26, 1992; and

3. As of this time, the actual value of all of the Class Properties was less than the value these properties would have had but for the trespass and/or nuisance committed by Dow or Rockwell or both of them; and

4. The amount of the difference between the actual value of Class Properties and what their value would have been but for the trespass and/or nuisance (see Instruction No. 3.23).

**Argument and Authority:**

"All of the class properties": Plaintiffs cannot rely on a finding by the jury that class-area properties, *on average*, suffered a diminution in value. They must show that *each and every one* of the class properties suffered a diminution in value. *See Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 319-21 (5th Cir. 1998) (reversing damages award based on extrapolation rather than individual evidence). Allowing class members who have suffered no diminution in property value to nevertheless recover on the basis of an average violates the fundamental principle of damages under Colorado law: "The trial court must take as its principal guidance the goal of reimbursement of the plaintiff for losses actually suffered." *Bd. of County Comm'rs v. Slovek*, 723 P.2d 1309, 1316 (Colo. 1986); *see also Zwick v. Simpson*, 572 P.2d 133, 134 (Colo. 1977)

("[T]he goal of the law of compensatory damages is reimbursement of the plaintiff for the actual loss suffered.").

"In the reasonably foreseeable future":  Plaintiffs have argued that an injurious situation is complete and comparatively enduring if one cannot identify the precise point in time at which it will cease.  *See, e.g.*, 1/6/05 Trial Tr. at 9259.  This misconstrues Restatement § 930, which defines "complete and comparatively enduring" when "there is no reason to expect its termination at ***any*** definite time in the future."  Restatement § 930 cmt. b (emphasis added).  If it appears that an injurious situation will cease at some time, even if that point in time cannot be predicted definitively, Restatement § 930 cannot be applied because its underlying assumption that the injurious situation will continue indefinitely is false.

"Evidence that any diminution in Class property values has decreased . . .":  Plaintiffs would have the jury disregard any evidence that class-area property values have increased relative to values outside the class area after 1992.  *See, e.g.*, 12/7/05 Trial Tr. at 6875.  But this Court has held that relative appreciation in class-area property values is relevant to the continuing nature of the alleged injurious situation.  *See* 9/13/05 Hr'g Tr. at 5 (denying plaintiffs' motion in limine seeking to exclude property values after 1992).  Ignoring such appreciation would enable plaintiffs to perpetuate a fiction of enduring harm notwithstanding the cleanup at the plant and the simultaneous relative appreciation in class-area property values.

**"The injurious situation became 'complete' and 'comparatively enduring'"**:  Before determining whether the injurious situation became "complete" and "comparatively enduring" between June 6, 1989 and March 26, 1992, the jury should first determine whether the injurious situation became "complete" and "comparatively enduring" ***at all***.  Under the current instruction, it may not be clear to the jury that they need to make this first-step determination.

[The underlying legal principle of the revised language of this instruction was incorporated in Defs.' Proposed Limiting Instruction No. 8 (Evidence of Media Coverage Not Evidence of Liability) and Supplemental Damages Instruction No. 2 (Stigma) filed Sept. 23, 2005, and in Defs.' Proposed Instruction Regarding Stigma filed Dec. 7, 2005.]

## DEFENDANTS' PROPOSED INSTRUCTION NO. 3.22A

### Consideration of Evidence of Stigma

Plaintiffs seek an award of actual damages in this action caused by the asserted presence of plutonium contamination on the Class Properties (trespass) and/or interference with the use and enjoyment of the Class Properties through an increased risk of health problems or risk of future health risk (nuisance). The measurement of any such damages, as I have instructed you, is the difference between the actual value of the Class Properties and the value these Properties would have had if Dow or Rockwell or both of them had not committed any trespass and/or nuisance proved by Plaintiffs (see Instruction 3.22).

You have heard evidence regarding stigma and whether the value of Class Properties has been affected by stigma. Stigma evidence is not liability evidence. Stigma evidence is relevant only to the extent that it tends to prove the difference in the actual value of Class Properties and the value of Class Properties as it would have been absent any trespass and/or nuisance proved by Plaintiffs.

If you find that there is a diminution in value of the Class Properties caused by multiple factors, then Plaintiffs bear the burden of proving (1) that some diminution is caused by trespass or nuisance, and (2) the portion of the diminution in value that is caused by the trespass or nuisance.

**Argument and Authority:**  This instruction should be adopted for the reasons Defs.' Proposed Instructions re Stigma Evidence and Class Members filed Dec. 7, 2005.  *See* Instruction 3.21 ("Actual damages are a monetary award to compensate a plaintiff for the loss *caused by the defendants' wrongful conduct.*") (emphasis added); Instruction 3.22; Instruction 3.24 ("[Y]ou should not consider or award any diminution in value caused solely by the proximity of the Class Area to Rocky Flats."); *see also Staley v. Segal*, 841 P.2d 379, 382 (Colo. Ct. App. 1992) (diminution in value attributable to proximity to neighboring hog facility insufficient to establish nuisance liability); *Adams v. Star Enter.*, 51 F.3d 417, 422 (4th Cir. 1995) (dismissing nuisance claim based on allegation that "the value of [plaintiffs'] properties has been substantially reduced as a result of the 'stigma' attached to the community because of the oil spill"); *Berry v. Armstrong Rubber Co.*, 989 F.2d 822, 829 (5th Cir. 1993) (barring recovery "for reduced market value caused by a 'stigma' absent some physical damage to plaintiffs' land caused by the defendant"); *Wilson v. Amoco Corp.*, 33 F. Supp. 2d 981, 986 (D. Wyo. 1998) ("Plaintiffs in the instant matter may not recover damages based solely on stigma absent proof of some physical injury or harm to the specific Plaintiff's property (i.e., separate establishment of a claim for trespass, nuisance, or negligence)."); *Mercer v. Rockwell Int'l Corp.*, 24 F. Supp. 2d 735, 744 (W.D. Ky. 1998) ("Stigma damages are recoverable only in instances where there has been physical damage to the property in the first instance."); *Adkins v. Thomas Solvent Co.*, 487 N.W.2d 715, 717 (Mich. 1992) (dismissing claim for property depreciation where plaintiffs' "properties were not and would never be subject to ground water contamination).

## INSTRUCTION NO. 3.23

Both Claims

<u>Aggregate Damages and Percentage Diminution</u>

If you find Plaintiffs have proved actual damages as described in Instruction No. 3.22, you will be asked to report your findings regarding the amount of their actual damages in several ways. First, you will be asked to decide both the total amount of damages suffered by the entire Class as a whole (called "aggregate" Class damages), and the percentage diminution in property values in the Class Areas as a whole.

Additionally, you will be asked to decide the amount of actual damages and percentage diminution in Class property values for three different types of property in the Class: vacant land, commercial property and residential property.

You will not be asked to determine the amount of actual damages suffered by any individual Class member. Individual Class members' share of any damages you award will be determined in later proceedings. Therefore, you must only concern yourselves with the total, class-wide measures of actual damages I just described.

[The underlying legal principle of the first proposed revision of this instruction was incorporated in Defs.' Proposed Damages Instruction No. 3.3 (Damages Must Have Been Caused by Defendants' Actionable Conduct).  Defendants have not previously submitted an instruction incorporating the remainder of the revised language or its underlying legal principle. Defendants propose these revisions at this time because of the testimony of plaintiffs' expert Wayne Hunsperger regarding the timing of the alleged diminution of value as of 1986 (which had not previously been disclosed in his deposition or his expert report).  *See* 12/7/05 Trial Tr. at 6710–17.]

## INSTRUCTION NO. 3.24

### Both Claims

<u>Matters Not Relevant to Determining Actual Damages</u>

In determining any actual damages to be awarded in this case, you should not consider or award any diminution in value caused by the proximity of the Class Area to Rocky Flats. Instead, you must follow my directions in Instruction No. 3.22 to award damages for diminution in value you find was caused specifically by any trespass or nuisance you find Dow or Rockwell or both of them committed.

In determining whether Plaintiffs have proved actual damages, evidence regarding the timing of any diminution in value (such as whether it came into existence before or after the FBI raid or some other specific event) may be relevant to (1) whether any injurious situation became complete and comparatively enduring between June 6, 1989 and March 26, 1992, and (2) whether the diminution arose from a trespass or nuisance caused by one or both defendants.

**Argument and Authority:  "Specifically":**  This instruction should make clear that damages must be caused *specifically* by defendants' conduct, and not caused indirectly or in

combination with other, non-actionable factors. *See Westric Battery Co. v. Standard Elec Co.*, 482 F.2d 1307, 1318 (10th Cir. 1973) (stating that it is "only the damage flowing legally from the defendant's misdeeds which counts); *Hyman & Co. v. Velsicol Corp.*, 233 P.2d 977, 1008 (Colo. 1951) ("The rule is that damages based upon mere speculation and conjecture are not allowable; however where it has been definitely established that damages are traceable to and the direct result of a wrong, the uncertainty as to the amount thereof is a question for determination by the trier of the facts."); *see also* Defs.' Proposed Instruction No. 3.22A and authority cited therein.

**"Evidence regarding the timing":** Evidence that there was no additional diminution during the time at which the injurious situation allegedly became complete and comparatively enduring date suggests that the injurious situation did not, in fact, become complete and comparatively enduring. The reason why damages are measured at the time that the injurious situation became complete and comparatively enduring under Restatement § 930 is that it is expected that some amount of additional diminution will arise at that time. *See* Restatement § 930, cmt. d ("Obviously, the standard, to be fair to the injured person, must not look to a time before the invasions have begun and the effects of the injurious conditions have been revealed in their full extent. At the time when the injurious situation has become complete and comparatively enduring, the amount of depreciation because of the prospect of future invasion can be determined with greatest accuracy.").

Evidence of the timing of diminution also is suggestive of the ***cause*** of the diminution. For example, assuming that Hunsperger is correct that properties proximate to Rocky Flats had already decreased in value prior to 1989, *see* 12/7/05 Trial Tr. at 6710–17, it cannot be said that such diminution was caused by the 1989 FBI raid.

[Defendants previously submitted an instruction regarding prior market discount, *see* Defs.' Proposed Supplemental Instruction No. 2 filed 9/16/05, but this instruction did not incorporate the revised language below.  Defendants submit this revised language because they respectfully disagree with the explanation of the rule underpinning this defense in the current preliminary instruction.]

## INSTRUCTION NO. 3.25

### Both Claims

### Affirmative Defense:  Setoff

If you find that the Plaintiff class has proved actual damages, then you must consider whether Dow and Rockwell have proved their affirmative defense of setoff.

This defense is based on the rule that if all or some Class members purchased their properties at a diminished price as a result of a trespass or nuisance, and yet also were awarded damages for that trespass or nuisance, then such Class members would receive a "windfall" award of damages regardless of whether they suffered any actual loss.

In order to prevail on this affirmative defense of setoff, Dow and Rockwell must prove by a preponderance of the evidence:

1.    That the trespass and/or nuisance that damaged the Plaintiff Class by diminishing the value of property in the Class Area also caused a diminution in the value of Class Properties in one or more specific time periods before June 7, 1989; and

2.    The amount of any such pre-existing diminution in the value of Class properties, expressed as the percentage decrease in value, for each specific time period or periods for which Defendants proved a pre-June 7, 1989 diminution in Class property values caused by their trespass and/or nuisance.

If you find that Dow and/or Rockwell did not prove both of the elements for setoff by a preponderance of the evidence, then you must find Dow and/or Rockwell failed to prove this affirmative defense.

On the other hand, if you find that Dow and/or Rockwell proved both elements of this defense by a preponderance of the evidence, then you must find they proved this affirmative defense as to the time period or periods you report on the Jury Verdict Form.  If you make this finding, then your findings regarding the pre-existing percentage diminution in value for the specific time period or periods will be used in a later proceeding to calculate the amount by which the Plaintiffs' actual damages will be reduced on account of this defense of setoff.

If you find Dow and/or Rockwell has proved this affirmative defense, then you must use calm discretion and sound reason, not sympathy, prejudice, or speculation, in fixing the amount of any pre-existing diminution in Class property values.  Difficulty or uncertainty in determining the precise amount of any setoff does not prevent you from deciding an amount.  You should use your best judgment based on the evidence.


**Argument and Authority:**  As previously briefed, defendants' position is that whether a class member purchased their class property at a discount is not an issue relating to mitigation of damages, rather than an issue concerning whether the alleged diminution in value occurred during the time that a plaintiff owned his or her property.  *See Westric*, 482 F.2d at 1318 (stating that it is "only the damage flowing legally from the defendant's misdeeds which counts); *Hyman*, 233 P.2d at 1008 ("The rule is that damages based upon mere speculation and conjecture are not allowable; however where it has been definitely established that damages are traceable to and the direct result of a wrong, the uncertainty as to the amount thereof is a question for determination

by the trier of the facts."); *see also generally* Defs.' Mem. re Class-Wide Damages Proof and "Set-Off" filed 10/20/04.  That defendants somehow "conferred a benefit" on plaintiffs through their alleged trespass and/or nuisance is not only analytically incorrect, but would be confusing to a jury.

## INSTRUCTION NO. 3.26

Both Claims

<u>Multiple Recovery Prohibited</u>

A plaintiff in a civil action may recover only once for the same injury, even though the plaintiff seeks an award for that injury under several claims for relief or against multiple defendants. For example, a plaintiff who lost $100 as a result of the conduct of multiple defendants may recover only $100, even if the plaintiff sought $100 in damages from each defendant on one claim, and $100 in damages from each defendant on a different claim.

In this case, Plaintiffs are seeking to recover from Dow and Rockwell on their claims of trespass and nuisance on behalf of the Class. Under the rule prohibiting multiple recovery, the Plaintiffs may recover actual damages only once, even if you return verdicts in their favor on more than one claim for relief, or against more than one Defendant.

I am instructing you on the rule prohibiting multiple recovery so that you will be aware of the law on the issue. It is I, rather than you, however, who will apply the rule. You are specifically instructed to consider the Plaintiffs' nuisance and trespass claims against each Defendant independently. That is, you are to consider each of those claims as though it were the only claim in the case. If you find for Plaintiffs on either of these claims against either Dow or Rockwell, you are to write an award of damages on that claim without regard to your finding for or against Dow or Rockwell on any other claim. I will apply the rule prohibiting multiple recovery when I issue my judgment on your verdict, whatever that may be.

Perhaps it bears repeating that nothing in this or any other instruction is meant to suggest what your finding on any or all claims should be. My instructions on damages are only to be applied in the event you find for Plaintiffs on one or more of their claims.

[Defendants have not previously submitted an instruction incorporating the proposed revision regarding "intentional conduct," but do so now because plaintiffs have failed to provide evidence sufficient to support a finding of willful and wanton conduct.  Defendants previously incorporated their proposed addition regarding the maximum amount of punitive damages in Defs.' Proposed Jury Verdict Form, filed Sept. 3, 2004, at 92.]

## INSTRUCTION NO. 3.27

Both Claims

Punitive Damages

If you find for Plaintiffs and award them actual damages on their claims of trespass and/or nuisance against either Dow or Rockwell or both of them, then you must consider whether you should award punitive damages against the same Defendant or Defendants that you found liable for trespass and/or nuisance.

For Plaintiffs to recover punitive damages, they must prove beyond a "reasonable doubt" that the intentional conduct of the Defendant in committing the trespass and/or nuisance in committing a trespass or a nuisance was "willful and wanton."  In deciding this question with respect to any conduct relating to plutonium, you can only consider the Defendants' conduct up to August 20, 1988, including conduct occurring before this date that resulted in harm on or after that date.

"Willful and wanton" conduct means an act or omission purposefully committed by the Defendant in question, who must have realized that the conduct was dangerous, and which conduct was done heedlessly and recklessly, either without regard to the consequences, or without regard to the rights and safety of others, particularly the Plaintiff Class.

"Reasonable doubt" means an uncertainty of mind in which your judgment is not at rest and you can explain this uncertainty based on a fair and thoughtful consideration of all of the evidence, or lack of evidence, in the case.

The purpose of punitive damages is not to compensate the Plaintiffs, but rather to punish the Defendant, and to deter that Defendant and others from committing such acts in the future.

If you find beyond a reasonable doubt that one or both of the Defendants acted in a willful and wanton manner, then you may award a reasonable sum as punitive damages against the Defendant or Defendants you found acted in this manner.

If you find that a Defendant's conduct was negligent, but that Defendant's conduct was not intentional, you may not award punitive damages.

The maximum amount of punitive damages that may be awarded to Plaintiffs is limited to the amount of compensatory damages, if any, caused by any conduct by defendants that you determine to be "willful and wanton."

**Argument and Authority: "Intentional" Conduct:** Plaintiffs may not recover punitive damages for defendants' conduct found merely to be negligent. *See Van Leeuwan v. Nuzzi*, 810 F. Supp. 1120, 1124 (D. Colo. 1993) ("Van Leeuwan's viable claims are based on negligence, not intentional, malicious conduct. Her request for punitive damages is stricken.") (Kane, J.).

**"Maximum Amount":** As a matter of Colorado statutory law, the jury may not award punitive damages in an amount exceeding the amount of compensatory damages. C.R.S. § 13-21-102(1)(a) ("The amount of such reasonable exemplary shall not exceed an amount which is equal to the amount of the actual damages awarded to the injured party.").

[Defendants have not previously submitted a jury instruction incorporating the revised language below or its underlying legal principles. Defendants submit these proposed changes in light of the evidence and the arguments of plaintiffs' counsel in this trial. *See* Pls.' mini-summation, 1/6/05 Trial Tr. at 9259 ("What they were saying was it could be 20 years, 30 years, 50 years, 70 years into the future before this plant was cleaned up. . . . But the fact is as of 1989, nobody had any reason to expect or know or believe that this plant would be cleaned up at any definite point in the future.").]

## INSTRUCTION NO. 3.28

### Additional Questions

In addition to deciding the issues of trespass, nuisance, and damages in this action, I will ask you at the end of the trial to answer several additional questions that will help me and the parties in future proceedings in this case. The first two questions are related. They are:

1.   Did it appear on or before January 30, 1990, which is the date this case was filed, that the alleged trespass and/or nuisance by Dow or Rockwell or both of them would continue indefinitely? In answering this question, "continue indefinitely" means there was no reason to expect that the trespass and/or nuisance would end in the reasonably foreseeable future.

2.   If you answer to Question No. 1 is "no," then when did it become apparent that the proven trespass and/or nuisance would continue indefinitely?

The third additional question concerns a form of interference with the use and enjoyment of property. Plaintiffs assert that one of the ways Dow and Rockwell interfered with Class members' use and enjoyment of their land was by causing individual Class members to suffer fear, anxiety or mental discomfort because of concerns about health risks created by Defendants'

activities at Rocky Flats.  Because this is a trial of claims by the whole Class, I earlier instructed

you <u>not</u> to consider whether individual Plaintiffs or Class members suffered this form of

interference in deciding whether Plaintiffs had proved their class-wide nuisance claim (see

Instruction No. 3.7).  Nonetheless, to assist me and the parties in deciding how to proceed later in

this case, you will be asked to answer the following question:

> Have Plaintiffs proved by a preponderance of the evidence that the intentional or
> negligent conduct of Dow or Rockwell or both of them at Rocky Flats, and/or
> actual or threatened harms caused by such conduct, created a situation that is
> capable of causing fear, anxiety, or mental discomfort in individual Class
> members?

In answering this question, you should know that Plaintiffs do not need to show that any

actual or threatened future contamination from Rocky Flats poses an actual or verifiable health

risk.  An individual Class members' fear, anxiety or mental discomfort can also be based on

concerns that may be without scientific foundation or other support in fact.


**Argument and Authority:**

<u>"In the reasonably foreseeable future"</u>:  Plaintiffs have argued that an injurious situation

is complete and comparatively enduring if one cannot identify the precise point in time at which

it will cease.  *See, e.g.*, 1/6/05 Trial Tr. at 9259.  This misconstrues Restatement § 930, which

defines "complete and comparatively enduring" when "there is no reason to expect its

termination at *any* definite time in the future."  Restatement § 930 cmt. b (emphasis added).  If it

appears that an injurious situation will cease at some time, even if that point in time cannot be

predicted definitively, Restatement § 930 cannot be applied because its underlying assumption

that the injurious situation will continue indefinitely is false.

<u>Health Risk</u>:  Plaintiffs have not produced evidence of fear, anxiety, or mental discomfort

relating to anything from Rocky Flats other than risk to health.

**Section 4**

**Final Instructions**

## INSTRUCTION NO. 4.1

<u>Jury Deliberations - General Instructions</u>

Each of you has a copy of the instructions to consult as you find it necessary. You may keep your copy throughout the trial and in your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts, you must apply and follow the law as I give it to you whether you agree with it or not. You must base your verdict upon the evidence. You must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means you must decide the case solely on the evidence before you and according to the law as I give it to you. You have taken an oath promising to do just so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. You must not read into these instructions or into anything I may say or do any suggestions as to what verdict you should return. Your verdict is a matter entirely for you to decide.

## INSTRUCTION NO. 4.2

### Jury Deliberations - General Instructions

When you go to the jury room to begin your deliberations, you must elect one member of the jury as your Presiding Juror.  He or she will preside over your deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreements if you can do so.  In order to answer any question on the Verdict Form, ten jurors must agree upon the answer.  It is not necessary that the jurors who agree on the answer be the same jurors who agreed on the answer to any other question, so long as ten jurors agree to each answer.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it with your fellow jurors, and listened to the views of your fellow jurors.  I offer some suggestions on how you might do this in the next jury instruction, entitled "Jury - The Deliberations Process."

Do not be afraid to change your opinion if the discussion persuades you that you should.  But do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach agreement to answer the questions on the Verdict Form, but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight of the evidence simply to reach an answer.

## INSTRUCTION NO. 4.3

### Jury - The Deliberations Process

Once you have elected your Presiding Juror as directed by the previous instruction, you are free to proceed as you agree is appropriate. Therefore, I am not directing you how to proceed, but I offer the following suggestions that other juries have found helpful so that you can proceed in an orderly fashion, allowing full participation by each juror, and arrive at a verdict that is satisfactory to each of you.

First, it is the responsibility of the Presiding Juror to encourage good communication and participation by all jurors and to maintain fairness and order. Your Presiding Juror should be willing and able to facilitate productive discussions even when disagreements and controversy arise.

Second, the Presiding Juror should let each of you speak and be heard before expressing his or her own views.

Third, the Presiding Juror should never attempt to promote nor permit anyone else to promote his or her personal opinions by coercion or intimidation or bullying of others.

Fourth, the Presiding Juror should make certain that the deliberations are not rushed to reach a conclusion.

If the Presiding Juror you select does not meet these standards, he or she should voluntarily step down or be replaced by a majority vote.

After you select a Presiding Juror you should consider electing a secretary who will tally the votes, help keep track of who has or hasn't spoken on the various issues, make certain that all of you are present whenever deliberations are under way and otherwise assist the Presiding Juror. Some juries are tempted at this point to hold a preliminary vote on the case before them to "see where we stand." It is most advisable, however, that no vote be taken before a full discussion is

had on the issue to be voted on, otherwise you might lock yourself into a certain view before considering alternative and possibly more reasonable interpretations of the evidence.  Experience has also shown that such early votes frequently lead to disruptive, unnecessarily lengthy, inefficient debate and ineffective decision-making.

Instead, I suggest the Presiding Juror begin your deliberations by directing the discussion to establishing informal ground rules for how you will proceed.  These rules should assure that you will focus upon, analyze and evaluate the evidence fairly and efficiently and that the viewpoints of each of you is heard and considered before any decisions are made.  No one should be ignored.  You may agree to discuss the case in the order of the questions presented in the special verdict form or in chronological order or according to the testimony of each witness.  Whatever order you select, however, it is advisable to be consistent and not jump from one topic to another.

To move the process of deliberation along in the event you reach a controversial issue, it is wise to pass it temporarily and move on to the less controversial ones and then come back to it.  You should then continue through each issue in the order you have agreed upon unless a majority of you agrees to change the order.

It is very helpful, but certainly not required of you, that all votes be taken by secret ballot.  This will help you focus on the issues and not be overly influenced by personalities.  Each of you should also consider any disagreement you have with another juror or jurors as an opportunity for improving the quality of your decision and therefore should treat each other with respect.  Any differences in your views should be discussed calmly and, if a break is needed for that purpose, it should be taken.

Each of you should listen attentively and openly to one another before making any judgment. This is sometimes called "active listening" and it means that you should not listen with only one ear while thinking about a response. Only after you have heard and understood what the other person is saying should you think about a response. Obviously, this means that, unlike TV talk shows, you should try very hard not to interrupt. If one of your number is going on and on, it is the Presiding Juror who should suggest that the point has been made and it is time to hear from someone else.

You each have a right to your individual opinion, but you should be open to persuasion. When you focus your attention and best listening skills, others will feel respected and, even while they may disagree, they will respect you. It helps if you are open to the possibility that you might be wrong or at least that you might change your mind about some issues after listening to other views.

Misunderstanding can undermine your efforts. Seek clarification if you do not understand or if you think others are not talking about the same thing. From time to time the Presiding Juror should set out the items on which you agree and those on which you have not yet reached an agreement.

In spite of all your efforts, it is indeed possible that serious disagreements may arise. In that event, recognize and accept that "getting stuck" is often part of the decision making process. It is easy to fall into the trap of believing that there is something wrong with someone who is not ready to move toward what may be an emerging decision. Such a belief is not helpful. It can lead to focusing on personalities rather than the issues. It is best to be patient with one another. At such times slower is usually faster. There is a tendency to set deadlines and seek to force

decisions.  Providing a break or more time and space, however, often helps to shorten the overall process.

You may wish from time to time to express your mutual respect and repeat your resolve to work through any differences.  With such a commitment and mutual respect, you will most likely render a verdict that leaves each of you satisfied that you have indeed rendered justice.

**INSTRUCTION NO. 4.4**

<u>Communications with the Judge</u>

If it becomes necessary during your deliberations to communicate with me, you may send a folded note through the court security officer, signed by one of you. Do not disclose the content of your note to the court security officer. No member of the jury should hereafter attempt to communicate with me except by signed writing; and I will communicate with any member of the jury on anything concerning the case only in writing, or orally here in open court. You are not to tell anyone - including me - how the jury stands, numerically or otherwise, until you have reached a verdict or I have discharged you.

If you send a note to me containing a question or request for further direction, please bear in mind that responses take considerable time and effort. Before giving an answer or direction I must first notify counsel and bring them back to the court. I must confer with them, listen to arguments, research the legal authorities, if necessary, and reduce the answer or direction to writing.

There may be some question that, under the law, I am not permitted to answer. If it is improper for me to answer the question, I will tell you that. Please do not speculate about what the answer to your question might be or why I am not able to answer a particular question.

In some instances jurors request that certain testimony be read to them. This cannot be done as it is inappropriate for the court to single out testimony. In those circumstances you must rely upon your own recollection.

[Defendants propose the below changes in light of the recent departure of one of the jurors. *See* Defs.' Statement Regarding the Jury Verdict, filed 9/29/05.]

## INSTRUCTION NO. 4.5

### Jury Verdict Form

You will each have copies of a document called a Jury Verdict form.  There is one Jury Verdict Form for each Defendant.  You are instructed to answer the questions in each Jury Verdict Form as directed in that form.

In order to answer any question on the Jury Verdict Form, nine jurors must agree upon the answer.  It is not necessary that the jurors who agree on the answer be the same jurors who agreed on the answer to any other question, so long as nine jurors agree to each answer.

Upon arriving at an agreement, your Presiding Juror will insert each answer on the appropriate Jury Verdict Form.  After all of the questions have been answered as directed by the Jury Verdict Form, your Presiding Juror will date each Jury Verdict Form, sign it, and then ask all of the other jurors to sign it.

After you have filled out both Jury Verdict forms in this manner, your Presiding Juror should advise the court security officer stationed outside the jury room that you have reached a verdict.