**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**No. 90–CV-00181-JLK**

---

**MERILYN COOK, et al.,**

    **Plaintiffs,**

       **v.**

**ROCKWELL INTERNATIONAL CORPORATION and**
**THE DOW CHEMICAL COMPANY,**

    **Defendants.**

---

**PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

---

## I.  INTRODUCTION

Plaintiffs respectfully move for judgment as a matter of law with regard to: (1) defendants' affirmative defense of prior market discount, at least for time periods prior to 1988; and (2) a defense that defendants have avoided naming or characterizing, but which is apparently founded on the concept that real-estate development may have resulted in the removal of plutonium from some unspecified class properties, in unidentified geographic areas, at undefined times, by unnamed persons.  Whether this second, nameless defense is viewed as an abatement defense, a statute-of-limitations defense, or some other kind of animal, defendants have offered no evidence – certainly not sufficient evidence – to support it.

Defendants have the burden of proof on prior market discount. The Court's jury instructions call for defendants to offer evidence, in support of this defense, from which a jury could reasonably

determine the time period(s) during which any such discount applied, and the percentage amount of any such discount.  *See* Jury Instruction 3.25.  Defendants have offered no evidence of their own about the timing and amount of any discount.  Even if defendants seek to rely on Dr. Radke's Phase II regressions for this defense, those regressions do not demonstrate the existence, or quantify the amount or duration, of any discount prior to 1988.  They cover only the years 1988-95.  *See* Tr. (10/26/05) at 2721.

As for the "development" issue, plaintiffs have proffered abundant, convincing, and largely undisputed evidence of class-wide contamination, and defendants' own counsel has admitted that Rocky Flats caused off-site contamination in the class area.  Defendants did not take a contrary position during the extensive pretrial proceedings in which the Court exercised its authority under Fed. R. Civ. P. 23(d) to shape this class trial, and defendants should not be heard to change the rules of engagement now.

In any event, defendants' principal basis for disputing the existence of a trespass – their argument that development in the class area could have removed some of the plutonium – is based not on competent evidence, but on the mere ipse dixit of defendants' counsel, coupled with speculative testimony from one expert witness.  That expert, Dr. Till, issued no expert report on the subject, and has articulated no reliable methodology to support any conclusion he might reach about the effects of development on contamination.  His testimony should therefore be stricken.  Even if it is not stricken, Dr. Till's testimony is insufficient to support any defense based on the supposed removal of plutonium from one or more class properties, because it does not identify any location at which the plutonium was actually removed, nor any time at which such a removal was effected.

## II.  APPLICABLE LEGAL STANDARDS

A party is entitled to judgment as a matter of law if "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a).  "'The question is not whether there is literally no evidence supporting the [nonmoving] party ... but whether there is evidence upon which the jury could properly find [for that party].'" *Hurd v. American Hoist and Derrick Co.*, 734 F.2d 495, 499 (10th Cir.1984) (quoting 9 C. Wright & A. Miller, Federal Practice and Procedure § 2524, at 543 (1971)).  Judgment as a matter of law is appropriate "if the evidence points but one way and is susceptible to no reasonable inferences supporting the party [against whom the motion is filed]." *Weese v. Schukman*, 98 F.3d 542, 547 (10th Cir. 1996).

The Court should weigh the evidence in terms of the underlying burden of proof for the claims at issue.  *Rajala v. Allied Corp.*, 919 F.2d 610, 615 (10th Cir. 1990).  Defendants bear the burden of proving their affirmative defense of prior market discount by a preponderance of the evidence.  *See* Jury Instruction No. 3.25.  While plaintiffs bear the burden of proof on the existence of a trespass, plaintiffs are entitled to judgment as a matter of law on defendants' unsupported "bulldozer" defense.

## III.  ARGUMENT

### A.    Defendants Cannot Point to Sufficient Evidence to Sustain Their "Prior Market Discount Defense" For Time Periods Prior to 1988.

There is insufficient evidence to establish the affirmative defense of prior market discount for any time period prior to 1988.  This defense requires that defendants prove two elements:

1.    That the trespass and/or nuisance that damaged the Plaintiff Class by diminishing the value of property in the Class Area also caused a diminution

*Plaintiffs' Motion for Judgment as a Matter of Law – Page 3*

in the value of Class Properties in one or more specific time periods before June 7, 1989; and

2.    The amount of any such pre-existing diminution in the value of Class properties, expressed as the percentage decrease in value, for each specific time period or periods for which Defendants proved a pre-June 7, 1989 diminution in Class property values caused by their trespass and/or nuisance.

*See* Jury Instruction No. 3.25.

Defendants must prove diminution in value using some actual evidence of the amount. Damage awards are not sustained where the fact or amount of damages are purely speculative. *See Engler v. Hatch*, 472 P.2d 680 (Colo. Ct. App. 1970) (finding damages for trees destroyed by trespass too speculative where plaintiff offered no evidence as to dollar value of trees); *see also Lee v. Durango Music*, 355 P.2d 1083, 1087 (1960) ("Damages ... may not be speculative, remote, imaginary, or impossible of ascertainment."). So too here, defendants cannot take their theory of a discount on damages to the jury, unless they can point to evidence sufficient for the jury to find: (1) that a diminution in value existed before June 7, 1989; (2) for what time periods a discount existed; and (3) by what percentage or amount property values were depressed.

Defendants cannot point to such evidence, for the record does not contain it. Defendants' damages experts have consistently alleged that class properties were *never* discounted, *at any time*, including the time period before the FBI raid. *See* Tr. (1/12/06) at 9963 (McFadden); Tr. (1/5/06) at 9073 (Wise) (no post-1974 impact); *id.* at 9081 (Wise: "I don't know whether there's an impact or not pre-1974."). None of defendants' other expert or lay witnesses have contradicted this testimony. Thus defendants cannot rely on their own evidence to carry their burden of proof.

Plaintiffs' damages experts, Mr. Hunsperger and Dr. Radke, are therefore defendants' sole potential source of *any* evidence showing a diminution in class property values before June 7, 1989.

It is dubious that defendants should be permitted, in opposing judgment as a matter of law, to rely on evidence of a discount whose very existence they deny. It is doubly dubious where that evidence is offered by plaintiffs' experts whose reliability defendants so strenuously contest. But even if defendants were entitled to defeat judgment as a matter of law by the simple expedient of taking inconsistent positions, the evidence from plaintiffs' experts that defendants would need to invoke does not suffice to support their defense for times prior to 1988. To that extent, at least, plaintiffs should be awarded judgment as a matter of law on this defense.

### B. Defendants Have Offered No Evidence of Plutonium's Removal from Any Location.

In the conscientious exercise of its authority to manage these class proceedings under Fed. R. Civ. P. 23(d), the Court has taken painstaking measures to fashion carefully the contours of this class trial. That process began with the original class certification decision itself. The class was geographically defined based on measurements by DOE scientists gauging the scope of areal plutonium contamination from Rocky Flats. Defendants minimized the magnitude of contamination within the class boundaries but did not challenge its existence. *See Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 383 (D. Colo. 1993).

Extensive pretrial proceedings were then conducted to carve out legal and factual issues that might not be amenable to class-wide treatment. *See, e.g.*, Order on Scheduling and Jury Instruction Issues, at 7 (May 17, 2005) (providing for classwide determination on generic emotional distress and separate proceedings on individual issues) [Ct. Rec. 1338]; *id.* at 15-16 (two subclasses for compensatory damages). At no time in this process have defendants proposed that any subclass be created for any geographic areas where the fact of contamination was in even putative dispute, nor have defendants identified any allegedly uncontaminated properties or proposed that claims by the

owners of any such properties be severed.  *See* Reporter's Transcript: Status Conference (10/22/04), at 27-28.

Quite the reverse, in the course of pretrial proceedings, defense counsel repeatedly conceded the issue of the contamination's existence, going so far as to disclaim the necessity of trying that question to the jury at all.  At a pretrial hearing on June 25, 1999, for example, the following exchange took place:

> THE COURT:  [. . .] We know that these elements that are man-made are out there off-site.
>
> MR. BERNICK:  Right, but that's the –
>
> THE COURT:  Okay, so necessarily it came from this plant.
>
> MR. BERNICK:  Correct.
>
> THE COURT:  There's no dispute about that.
>
> MR. BERNICK:  There's no issue about it.  None.

*See* P-637 at 19-20.  On July 22, 2004, defense counsel again stated that the existence of contamination was not at issue:

> If, in fact, your Honor has held in this case that a trespass claim can be made out by the mere movement of plutonium particles invisible to all human beings through any of the senses, the transportation of those particles to the plaintiffs' property; that that constitutes an actionable trespass; that there doesn't need to be any further demonstration of physical damage or the magnitude of that physical damage, then I *don't know why we're trying that issue to a jury at all*.  There is no question but the fact that at least with respect to most, if not all, of the people who were described as being class members, there is plutonium present on their property and it came from no place other than Rocky Flats.  *We don't have to submit that issue to the jury.*

*See* P-638 at 31 (emphasis added).

Having disclaimed any need for individual proceedings or subclasses for purposes of

determining the *existence* of plutonium contamination from Rocky Flats in the class area – having, indeed, disclaimed the need for any jury determination on that issue *at all* – defendants should be judicially estopped from now seeking a contrary jury determination, for some or all of the class area, at this class trial.  The Tenth Circuit applies a flexible test for judicial estoppel, recognizing that the doctrine is ""probably not reducible to any general formulation of principle."  *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).  Factors to consider include: (1) whether the party to be estopped has indeed taken clearly inconsistent positions on a question of fact; (2) whether the courts have accepted the party's previous position, such that acceptance of the party's later, inconsistent position would create a perception that the courts were misled; and (3) whether the party asserting the inconsistent positions would derive unfair advantage or impose an unfair detriment on the opposing party.  *Johnson*, 405 F.3d at 1069. All three factors militate in favor of estoppel here.

Even if defendants are not judicially estopped from contesting the existence of plutonium contamination, the Court should bar defendants' attempts to present to the jury in this trial any defense based on the contention that real estate development may have resulted in the removal of plutonium, via bulldozer or otherwise, from one or more class properties.  Not only does the thirteenth-hour assertion of this defense constitute an affront to the Court's efforts to manage these proceedings pursuant to its authority under Rule 23(d); in addition, the evidence offered by defendants is insufficient to support the defense.

Plaintiffs have presented overwhelming evidence of class-wide plutonium contamination, including several soil sampling studies showing offsite dispersal of plutonium from Rocky Flats. *See* P-264 ("Plutonium-239 and Americium-241 Contamination in the Denver Area," by S.E. Poet

and E.A. Martell); P-149 ( "Plutonium in Soil Around the Rocky Flats Plant," by Krey and Hardy); DX-477 (Jones & Zhang, "Spatial and Temporal Analysis of the Rocky Flats Plutonium Soil Data," by Jones & Zhang).  The Krey & Hardy study (P-149), on which the class boundaries are based, was conducted under the auspices of the AEC itself.  The Jones & Zhang study (DX-477) analyzed CDH soil sampling results through 1991 and found plutonium continued to be present in stable concentrations throughout the class area.

Defendants' "bulldozer" theory could have some legal bearing on plaintiffs' evidence of contamination in only certain limited ways.  In theory, proof of plutonium's actual removal from some identified area, at some specific time, could support a statute of limitations defense to plaintiffs' trespass claims, for properties within that area.  Alternatively, it might rebut the contention that future harms would result from past trespasses on the decontaminated properties. Finally, it could be offered to negate the trespass claim entirely, for class members who purchased properties within decontaminated areas at times after the decontamination was effected.

To be probative for any of those purposes, however, defendants' evidence would need to show three things: (1) the plutonium's actual removal; (2) the locations from which it was removed; and (3) the times at which it was removed.  Defendants have no competent evidence on any of those three points.

The closest defendants can come to clearing the first hurdle – evidence of actual removal – is through speculative testimony by Dr. Till on the subject of bulldozing.  *See* Tr. (12/15/05) at 8206 (video spoon-fed to Dr. Till by defendants); Tr. (12/16/05) at 8449.  That testimony should be stricken, and the jury should be instructed to disregard it, because no discussion of the issue appears in Dr. Till's 2004 expert report, no reliable methodology has been offered to support it, and Dr. Till

did not profess personal knowledge on the issue.  *See* Plaintiffs' Motion to Strike the Testimony of Dr. John Till Regarding the "Bulldozer Theory" (to be filed contemporaneously herewith).

Even if Dr. Till's testimony is not stricken, his testimony is not probative, even on the subject of plutonium's removal, because Dr. Till was able to defend any conclusion concerning plutonium's removal only conditionally, by assuming the very point to be concluded.  *See* Tr. (12/16/05) at 8449 (assumption that plutonium was removed, via bulldozer or cartage, would warrant conclusion that plutonium was removed).  In any event, Dr. Till's testimony identifies no locations or times at which developers' bulldozers allegedly rescued any class properties from contamination.

If the jury is presented with no evidence that plutonium contamination has been remediated at any identifiable location or time, it is obviously unable to reach any finding, based on the evidence, that remediation was accomplished in any specific area or time period.  But this, perhaps, is just the way defendants want it.  Defendants have not sought to present actual evidence of adventitious-remediation-via-bulldozer in support of any contention that claims by some specified subset of class members are unmeritorious.  Defendants have instead sought to argue that the jury should render a verdict against the entire class, on the theory that some unspecified class member's claims could hypothetically be unmeritorious.  At the very least, the Court should rule that because defendants have presented no class-wide evidence of decontamination, any finding of decontamination can be supported, as a matter of law, only to the extent that defendants can point to competent evidence of actual decontamination in defined locations, at defined times.  Plaintiffs believe no such evidence to exist.

## IV.  CONCLUSION

For the reasons given, plaintiffs respectfully request judgment as a matter of law: (1) on defendants' "prior market discount" defense, at least for time periods prior to 1988; and (2) on the issue of any alleged decontamination of class properties.


Dated: January 14, 2006                    s/ Peter Nordberg
                                           Merrill G. Davidoff
                                           Peter Nordberg
                                           Jennifer MacNaughton
                                           Berger & Montague, P.C.
                                           1622 Locust Street
                                           Philadelphia, PA 19103
                                           (215) 875-3000

                                           Attorneys for Plaintiffs
                                           And the Class

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 14, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will effect service of such pleading upon:

> David M. Bernick, Esq.
> Kirkland & Ellis LLP
> 200 East Randolph Drive
> Chicago, IL 60601
>
>      and
>
> Joseph J. Bronesky, Esq.
> Sherman & Howard, LLC
> 633 Seventeenth Street, Suite 3000
> Denver, CO 80202
>
> Attorneys for Defendants

s/ Peter Nordberg
Peter Nordberg
