Exhibit A

## INSTRUCTION NO. 1.1

### Statement of the Case

In order to help you understand this case, I will give you a brief summary of the claims and defenses.

The person or "party" who brings a lawsuit is called the plaintiff. The named plaintiffs in this case are Merilyn Cook, William and Delores Schierkolk, Richard and Sally Bartlett, and Lorren and Gertrude Babb. In actuality, there are thousands of plaintiffs in this case. Because it would not be practical to conduct thousands of trials, these individuals filed this case as a class action. In a class action, a few plaintiffs act as the representatives in court for all of the other class members. I will sometimes refer to this group as the "Plaintiff Class" or simply the "Class."

The members of the Plaintiff Class are persons who owned property in a specific, defined area, known as the "Class Area," near the Rocky Flats Nuclear Weapons Plant on June 7, 1989. That means, only persons who owned property within the Class Area on June 7, 1989, are considered plaintiffs, and only those persons can recover damages if the plaintiffs prevail in this action.

The Rocky Flats Nuclear Weapons Plant ("Rocky Flats") is a government-owned facility located on about 6500 acres sixteen miles northwest of downtown Denver. Before operations at Rocky Flats were halted in 1989, nuclear weapons components were manufactured there. The components were fashioned from materials including plutonium, a man-made radioactive element. Other hazardous substances, both radioactive and non-radioactive, were also used or disposed of at Rocky Flats when the plant was in operation.

6

The defendants in this case are Dow Chemical Company and Rockwell International Corporation. Dow and Rockwell operated the Rocky Flats Nuclear Weapons plant at different times as contractors for the United States Department of Energy. That means, they worked under a contract for the federal government to manage and run the plant. Dow operated the plant between 1952 and 1975, and Rockwell operated the plant from 1975 until 1989.

The Plaintiffs make two claims against Dow and Rockwell on behalf of themselves and the rest of the Class. The first claim is for trespass. Trespass is an invasion of a person's property without his permission. Plaintiffs claim Dow and Rockwell caused a trespass because the Class Area is contaminated with plutonium released from Rocky Flats as a result of various accidents, mishaps, and bad environmental practices that occurred during each defendant's period of operation.

Plaintiffs' second claim is for nuisance. A nuisance is something that substantially and unreasonably interferes with another person's use and enjoyment of their land. Plaintiffs claim Dow and Rockwell substantially and unreasonably interfered with Class members' use and enjoyment of their properties because plutonium contamination in the Class Area has led to increased health risk and because there is a risk of additional future releases of plutonium and other hazardous substances into the Class Area from the plant site.

Plaintiffs claim that Dow and Rockwell's trespass and nuisance have depressed the value of properties in the Class Area. The Plaintiffs seek damages to compensate the Plaintiff Class for this lost property value. Plaintiffs also seek punitive damages from both Dow and Rockwell.

Defendants deny Plaintiffs' claims and contend that they each operated Rocky Flats in a safe and responsible manner. Defendants admit that plutonium from Rocky Flats is present in

7

the Class Area, but dispute that it is located throughout this area or that they are liable for trespass. They also deny that plutonium is present in the Class Area at levels that pose any significant health risk or that there is a threat of future releases of plutonium or other hazardous substances from the Rocky Flats site to the Class Area. Defendants further deny that any interference with Class members' use and enjoyment of property is substantial and unreasonable enough to constitute a nuisance or that they are otherwise liable for nuisance. Finally, Defendants deny that the alleged trespass or nuisance depressed property values in the Class Area or that plaintiffs and the other Class members suffered any loss of property value as a result of Defendants' operations at Rocky Flats.

### Defendants' Objections:

First, Defendants incorporate by reference Defendants' Proposed Instructions and Defendants' Previous Objections as though fully set forth herein.

Second, it is unnecessary, prejudicial, and confusing to comment on the merits of the decision to certify the plaintiff class in this case. It is not necessary to the jury's task that they be instructed that "it would not be practical to conduct thousands of trials." (*See further* Defs.' Objection No. 1 to Pls' Proposed General Instruction No. 1 ("Statement of the Case"), filed Sept. 3, 2004.) The decision as to whether class certification is appropriate or not is an issue for the Court, not for the jury.

Third, defendants object to this instruction (and to the instructions generally) to the extent that the Court does not provide Defendants' Proposed Instruction 1.9B, Burden of Proof and Class Members Other Than the Class Representatives, originally filed on December 7, 2005, and

8

re-filed on January 10, 2006. Defendants have been barred, with only one exception, from

conducting their own discovery with respect to absent class members in this case. (*See* Ex. B,

9/12/94 Mem. Op. and Order at 8–10 (limiting discovery of absent class members to the "largest

commercial landowners in the area").) The only discovery available to Defendants relates to

those absent class members who Plaintiffs have designated as witnesses. Counsel for Plaintiffs,

on the other hand, enjoy unfettered access to communicate with every absent class member.

Plaintiffs have elicited testimony in this trial from four of these absent class members—Charles

Ozaki, Gretchen Robb, Karen Whalen, and Joseph Bowman—concerning their experiences

living and owning property in the class area. Plaintiffs have had the opportunity to cherry-pick

these witnesses and their personal stories from a pool of thousands of residential absent class

members—a pool to which Defendants have had no access of their own. This Court has already

instructed the jury that some information is classified and has been made unavailable to both

parties. (*See* Instruction No. 1.9.) Defendants therefore object to the extent that the Court does

not include an instruction that information regarding class members has also been made

unavailable to Defendants, even though such information is available to Plaintiffs.

Fourth, any references to "other hazardous substances" should be stricken. Substances

other than plutonium cannot give rise to a trespass claim in this trial. (*See* Instruction No. 3.2.)

Plaintiffs have likewise failed to produce evidence of a class-wide nuisance. *See* DX 36, OU3

ROD at 2 ("No hazardous substances, pollutants or contaminant will remain within the

boundaries of OU3 above levels that allow for unlimited use and unrestricted exposure.");

Holeman testimony, 10/18/05 Trial Tr. 1392-98; *see also* DX 69, EPA Superfund ROD; DX 43,

Agreement in Principle; DX 454, ATSDR 5/13/05 report, at 76 ("[L]evels of offsite soil

contamination are no apparent public health hazard for past, current, and future exposures."); *id.*

at 1-2, 45, 55, 57. Because plaintiffs have failed to present sufficient evidence of hazardous

substances other than plutonium, all references to them should be stricken.

Fifth, Defendants object to this instruction's description of the elements of a trespass

claim and a nuisance claim, for the reasons described more fully in defendants' objections to the

specific trespass and nuisance instructions set forth below.

## INSTRUCTION NO. 1.2

### Equality of Parties

All persons are equal before the law regardless of race, national origin, citizenship, or even whether the party is a corporation.  I tell you that all parties are equal before the law to remind you that you must base any decision in this case on the law and facts, not outside factors such as race, national origin, citizenship, or corporate status.

### **Defendants' Objections:**

As defendants have argued during the trial (*see* 1/12/06 Trial Tr. at 10063) (in part because of questioning by plaintiffs' counsel suggesting that defendants' experts are biased in favor of large corporations), the jury should be instructed that:   (1) companies that are involved in litigation are entitled to retain and to pay experts; and (2) the fact that an expert has been retained by a company should not considered as evidence that the expert is biased or not credible.  Defendants object to this instruction to the extent that it does not contain these additions.  (*See* Defs.' Proposed Instruction re Corporate Retention of Expert Witnesses, filed 1/17/06.)

11

## INSTRUCTION NO. 1.3

### Status of a Corporation

All persons are equal before the law.  A corporation is considered by the law to be a person.  Corporations are entitled to the same fair and conscientious consideration by you as any physical person.

Corporations can act only through their officers and employees.  Any act or omission of an officer or employee while acting within the scope of his or her employment or authority is the act or omission of the corporation.


**Defendants' Objections:**

As defendants have argued during the trial (*see* 1/12/06 Trial Tr. at 10063) (in part because of questioning by plaintiffs' counsel suggesting that defendants' experts are biased in favor of large corporations), the jury should be instructed that:   (1) companies that are involved in litigation are entitled to retain and to pay experts; and (2) the fact that an expert has been retained by a company should not considered as evidence that the expert is biased or not credible.  Defendants object to this instruction to the extent that it does not contain these additions.  (*See* Defs.' Proposed Instruction re Corporate Retention of Expert Witnesses, filed 1/17/06.)

## INSTRUCTION NO. 1.4

### Evidence – General

It is your duty to decide from the evidence what the facts are.  You, and you alone, are the judges of the facts.  You have heard the evidence, and now it is time for you to decide what the facts are, and then apply those facts to the law I give you.  That is how you will reach your verdict.  In doing so, you must follow the law whether you agree with it or not.

At no time during the trial did I suggest what I think your verdict should be nor do I want you to guess or speculate about my views of what verdict you should render.  You will decide what the facts are from the evidence that the parties have presented during the trial.  That evidence consists of the sworn testimony of witnesses on both direct and cross-examination, regardless of who called the witness; documents and other things received into evidence as exhibits; and any facts on which the lawyers agreed or which I may instruct you to accept as true.

The following things are **not** evidence and you must not consider them as evidence in deciding the facts of this case:

1.      Statements and arguments by lawyers are not evidence.  The lawyers are not witnesses.  What they say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of the facts controls.

2.      Questions and objections by the lawyers are not evidence.  Lawyers have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by my ruling on it.

13

3.      Testimony that has been excluded or stricken, or that you have been instructed to

disregard, is not evidence and must not be considered.  In addition, I have allowed

some testimony or exhibits only for a limited purpose, and you must consider

such only for that limited purpose.  For example, I have instructed you that

newspaper articles and other media reports were admitted for the limited purpose

of showing that the information contained in these articles was available to the

public, but not for the purpose of proving the facts stated in these articles and

reports were true.  I will remind you of this and other limiting instructions in a

few minutes.

4.      Anything you may see or hear when the Court is not in session is not evidence,

even if what you see or hear is done or said by one of the parties or by one of the

witnesses.  You are to decide the case solely on the evidence received in this

courtroom during the trial.

You are to consider only the evidence in the case.  But in your consideration of the

evidence, you are not limited solely to what you see and hear as the witnesses testify.  You are

permitted to draw, from facts that you find have been proved, such reasonable inferences as seem

justified in the light of your experience.  Inferences are deductions or conclusions your reason

and common sense lead you to draw from the facts established by the evidence in the case.

## INSTRUCTION NO. 1.5

### Evidence – Direct and Circumstantial

There are two kinds of evidence:  direct and circumstantial.  Direct evidence is testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is indirect evidence; that is, it is proof of one or more facts from which one can find that another fact exists or is true.

You should consider both kinds of evidence in deciding this case.  It is for you to decide how much weight to give to any evidence, direct or circumstantial.

There are rules of evidence that control what can be received into evidence.  When one lawyer asks a question or offers an exhibit into evidence and another lawyer on the other side thinks that it is not permitted by the rules of evidence, the other lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore such evidence.  That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

## INSTRUCTION NO. 1.6

### Filing of a Lawsuit or Pleading

The fact that a plaintiff files a lawsuit is not evidence that the other party did anything wrong. The fact that a plaintiff complains that he has been damaged is not evidence that he has been damaged or that the other party violated the law. You cannot say, "Well, there must be something wrong here or the case would not be in court."

## INSTRUCTION NO. 1.7

### Credibility of Witnesses

In deciding the facts of this case, you will have to decide which witnesses to believe and
which witnesses not to believe. You may believe everything a witness says, only part of it, or
none of it.

In considering the testimony of any witness, you may consider:

1.    The witness's opportunity and ability to see or hear or know the things to which
      the witness testified;

2.    The quality of the witness's memory;

3.    The witness's manner while taking the oath and while testifying;

4.    Whether the witness had an interest in the outcome of the case or any motive, bias
      or prejudice;

5.    Whether the witness's testimony is contradicted by anything the witness said or
      did at another time, by the testimony of other witnesses, or by other evidence;

6.    How reasonable the witness's testimony was in light of all the evidence; and

7.    Any other facts that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of
witnesses who testify to that fact.

If you believe a witness has willfully lied regarding any material fact, you have the right
to disregard all or any part of that witness's testimony.

17

## INSTRUCTION NO. 1.8

### Burden of Proof - Generally

This is a civil case. Therefore, the Plaintiffs have the burden of proving their claims by what is called a preponderance of the evidence. That means that no matter who produces the evidence, when you consider the Plaintiffs' claim in light of all the facts, you believe their claim is more likely true than not true. To put it differently, if you were to put all of the evidence in favor of the Plaintiffs and all of the evidence in favor of Dow or Rockwell on opposite sides of the scales, Plaintiffs would have to make the scale tip to their side in order for your verdict to be against Dow or Rockwell. If Plaintiffs fail to meet this burden, your verdict must be for Dow and Rockwell.

In defense to Plaintiffs' claims, Dow and Rockwell have each asserted an affirmative defense, which will be described to you more fully later. An affirmative defense is more than a denial of the claim. You should treat Dow and Rockwell's affirmative defenses in the same way you treat the Plaintiffs' claims. That is, Dow and Rockwell, as the parties asserting the affirmative defense, have the burden of proving that defense by the same standard, that is, of proving that the affirmative defense is more likely true than not true.

### **Defendants' Objections:**

First, Defendants incorporate by reference Defendants' Proposed Instructions and Defendants' Previous Objections as though fully set forth herein.

Second, defendants object to the Court's statement that prior-market discount is an affirmative defense. Plaintiffs bear the burden of showing that any diminution in market value

18

occurred after plaintiffs purchased their properties.  *See, e.g., Bd. of County Comm'rs v. Slovek*, 723 P.2d 1309, 1314 (Colo. 1986) ("The trial court must take as its principal guidance the goal of reimbursement of the plaintiff for losses actually suffered, but must be vigilant not to award damages that exceed the goal of compensation and inflict punishment on the defendant."); *see also Ario v. Metro Airports Comm'n*, 367 N.W.2d 509, 515 (Minn. 1985) ("If, for example, plaintiff buys a Zone 1 house in 1980, he presumably buys at a market price already discounted for aircraft noise existing at that time.  Plaintiff has no diminution in market value of his property unless he shows that the noise level has increased since 1980 and such increase has measurably depressed the value of his property."); *State of N.J. Dept. of Envtl' Prot. and Energy v. Gloucester Envtl' Mgmt. Servs. Inc.*, 866 F. Supp. 826, 830 (D.N.J. 1994) ("Unless conditions worsened . . ., the market value of that property will not be apt to decline further based on landfill proximity.  It is doubtful that persons who purchased homes after the marketplace already reflected negative impacts from proximity to the GEMS Landfill will suffer a loss in property value thereafter, assuming conditions did not worsen.").[1]

---

[1] To the extent the Court has ruled that the "prior market discount" argument is an affirmative defense with respect to which defendants bear the burden of demonstrating a pre-existing discount, defendants preserve their disagreement with the Court's ruling.  The plaintiff - not the defendant - bears the burden of proving both the fact and the amount of damages.  *See Buckley Powder Co. v. State*, 70 P.3d 547, 563 (Colo. App. 2002).  Unless a plaintiffs shows that the alleged "Rocky Flats discount" was greater when he or she sold the property then when he or she purchased the property, not even the fact of damages has been proved.  Plaintiffs have cited no cases from any jurisdiction holding that evidence as to the price at which a plaintiff purchased his or her property is an affirmative defense.  According to Wright & Miller, an affirmative defense "encompasses two types of defensive allegations: those that admit the allegations of the complaint but suggest some other reason why there is no right of recovery, and those that concern allegations outside of the plaintiff's prima facie case that the defendant therefore cannot raise by a simple denial in the answer."  Wright & Miller, 5 Fed. Prac. & Proc. Civ.3d § 1271.

(Continued...)

## INSTRUCTION NO. 1.9

### Burden of Proof and Classified Information

In evaluating whether Plaintiffs and Defendants have met their respective burdens on

their claims and defenses, you need to know that the law does not require parties to call as

witnesses all persons who may have been present at any time or place involved in the case, or

who may appear to have some knowledge of the matters to be determined by you from the

evidence.  Nor does the law require the parties to produce as exhibits all papers or other things

mentioned in the evidence in the case.

This is a law that is uniformly applied in all civil cases as a matter of practical necessity

and common sense.  It is simply not possible for the law to require proof to the degree of

absolute certainty.

In this case, the problem of proof is further complicated because of government imposed

secrecy concerning activities at the Rocky Flats installation.  The U.S. Department of Energy has

classified documents concerning these activities and the resulting classification means that some

information is deemed secret and is not available to the public.  The authority of the Department

of Energy to classify information as secret is firmly established by laws enacted by the Congress

of the United States.  Neither this court nor the jury in the case has the authority to decide

---

Defendants do not "admit the allegations of the complaint" by arguing for a prior market
discount – to the contrary, the existence of a prior market discount negates the allegations of the
complaint because plaintiffs have no suffered any damages.  For the same reason, a prior market
discount does not concern "allegations outside of the plaintiff's prima facie case" because a
plaintiff is required to plead and prove damages as part of his prima facie case.

whether such classification was proper irrespective of any reason or allegations made
challenging the process.

The Department of Energy has made some information concerning Rocky Flats available
by a process known as "declassification," meaning that some documents and some parts of
documents are no longer considered secret. The propriety of these declassification decisions is
likewise not a matter to be decided in this action.

You will also see some documents that have been made available by the Department of
Energy that contain obliterated or marked out words. This process is called "redaction," which
means that the information removed is not available to us in this trial.

For the reasons I've just given, not only are the parties in this case not required to
produce as exhibits all papers or other things mentioned in the evidence, they cannot produce
some of these documents and things because the Department of Energy has classified that
information as secret.

You may not speculate or guess about what the unavailable or redacted information
might be. Such unavailable or redacted information might have been favorable, or unfavorable,
to one side or the other in this case, but you must confine your evaluation to the evidence
presented to you and base your decision solely on the evidence received during trial.


**Defendants' Objections:**

As an initial matter, Defendants incorporate by reference Defendants' Proposed
Instructions and Defendants' Previous Objections as though fully set forth herein.

21

Defendants' objection to this instruction and its underlying legal principles were previously incorporated in Defs.' Limiting Instruction No. 3 (Classification) filed Sept. 23, 2005, Defs.' Limiting Instruction No. 1 (No Evidence That Dow or Rockwell or Their Counsel Were Involved in the Withholding of Documents) filed Oct. 10, 2005, and Defs.' Proposed Instruction re Classification filed Dec. 28, 2005, all of which are expressly incorporated by reference as though fully set forth herein. For the reasons set forth in those filings, the third, fourth, fifth, sixth and seventh paragraphs of this instruction should be deleted, and Defendants' Proposed Instruction 1.9A (which is set forth in Defendants' Proposed Changes to Jury Instructions filed January 10, 2006) should be given. As Defendants discussed in their motion for mistrial (*see* Defs.' Mem. in Supp. of Defs.' Mot. for Mistrial or, in the Alternative, Defs.' Proposed Instructions, filed 12/28/05), defendants' proposed instruction is necessary to dispel the unfair, prejudicial effect of plaintiffs' insinuations of improper classification by the DOE. (8/22/05 Hr'g Tr. at 23–24; 11/10/05 Trial Tr. at 5050–51 ("[Y]ou still have a classification decision that's made, and the Congress says it's none of my business."); *id.* at 5054 ("Whether or not they had bad faith motivations or otherwise, whether it's political, philosophical or religious doesn't matter. What matters is the test that I set out, and I am very confident in that test."); 11/14/05 Trial Tr. at 5082 (whether classification "was done in good faith or not [is] beyond the purview of this Court"); *id.* ("Whatever other motivations they have, I can't go into. I don't sit as court of review as to the—as to how classifications are made."); *id.* ("Now, whether they—whether they refused to give you information, the Department of Energy did, they refused to declassify MUF information on the grounds of national security, is not something I'm going to go into."); *id.* at 5149 (barring questioning on DOE's discussions about whether producing MUF documents

22

would hurt DOE and its contractors); *id.* at 5230 ("The improper classification of documents is not coming in.  That's just it.").)

Defendants also object to the Court's instruction to the extent that it does not incorporate Defendants' Proposed Instruction No. 1.8A, filed on January 10, 2006, entitled "Speculation and Uncertainty."  The jury should be instructed that any finding of fact it makes must be based on probabilities (not possibilities), that it should not guess or speculate about a fact, and that the existence of uncertainty as to a particular fact may not be considered as proof that the fact is true.  These proposed instructions are supported by well-established law.  Plaintiffs cannot prove their claims based on assertions of uncertainty (*see* Pls.' mini-summation, 11/22/05 Trial Tr. at 6274 ("The only conclusive proof of anything that we have learned . . . is that the uncertainties are very great."); plaintiffs must produce evidence of a reasonable certainty to support their claims.  CJI-Civ. 3:4 (CLE ed. 2004) (No Speculation) ("Any finding of fact you make must be based on probabilities, not possibilities. You should not guess or speculate about a fact.").  *See also Kirschner v. Broadhead*, 671 F.2d 1034, 1039 (7th Cir. 1982) ("[A] doctor's testimony can only be considered evidence when he states that the conclusion he gives is based on reasonable medical certainty that a fact is true or untrue.  A doctor's testimony that a certain thing is possible is no evidence at all.  His opinion as to what is possible is no more valid than the jury's own speculation as to what is or is not possible."); *Caiazzo v. Volkswagenwerk A.G.*, 647 F.2d 241, 255 (2d Cir. 1981) ("Once a case presents a fair jury question, as all agree this case does, selection of a burden of proof rule requires a choice as to which party should be assigned the risk of loss in the event that the uncertainties in the evidence make it difficult to say that the fact in dispute is more likely so than not so.").

Defendants also object to this instruction, as well as to the Court's instructions as a whole, to the extent that the Court's instructions do not include Defendants' Proposed Instruction No. 1.10A ("Department of Energy"), filed January 10, 2006. The jury should be instructed that, while the DOE owned the Rocky Flats plant at all relevant times and contracted with Dow and Rockwell, it is not a party to the case. The jury should also be instructed that, while it may consider the DOE's involvement in the events giving rise to the case as historical facts which may or may not be relevant to defendants' conduct, it may not assess the liability of the DOE or seek to hold defendants liable for any wrongful conduct of the DOE. As a non-party, the DOE cannot be held liable by this jury. (12/14/05 Trial Tr. at 8005 ("Liability, criminal or civil, of the Department of Energy is not at issue in this case.")); *see also* 3 Kevin F. O'Malley et al., Federal Jury Practice and Instructions § 103.14 (5th ed. 2001) (Multiple Defendants); (8/22/05 Hr'g Tr. at 8, 23–24). This instruction is particularly appropriate given plaintiffs' counsel's invective against the DOE in this trial. (*See* Pls.' opening, 10/11/05 Trial Tr. at 488 ("Why would DOE want to cover up? Because they were part of the negligent and wrongful conduct."), 489 ("[W]e believe the evidence will show DOE was part of the problem.").)

Finally, Defendants object to this instruction, as well as to the Court's instructions as a whole, to the extent that the Court's instructions do not include Defendants' Proposed Instruction No. 1.10B ("Indemnification"), filed January 10, 2006. The jury should be instructed that evidence of indemnification is not relevant to determining whether defendants are liable. It is undisputed that whether defendants will receive indemnification is not an element of, and is not relevant to, either plaintiffs' claims or defendants' defenses. The jury should also be instructed that it should not assume that the DOE will indemnify defendants in the event of a judgment

24

against defendants.  There is no evidence in the record on this issue, and the jury should be cautioned not to speculate.  *See United States v. Arras*, 373 F.3d 1071, 1073 (10th Cir. 2004) ("Jurors are not permitted to speculate.")

## INSTRUCTION NO. 1.10

### Multiple Defendants

Although there are two defendants in this action, it does not follow from that fact alone that if one defendant is liable to the Plaintiffs, both defendants are liable. Each defendant is entitled to a fair consideration of the evidence. Neither defendant is to be prejudiced should you find against the other. All instructions I give you govern the case as to each defendant.

## INSTRUCTION NO. 1.11

<u>Juror Conduct</u>

I will now say a few words about your conduct as jurors.

First, do not talk with one another about this case or about anyone who has anything to do with it until the end of the case when you go to the jury room to decide on your verdict.

Second, do not talk with anyone else about this case or about anyone who has anything to do with it until the trial has ended and you have been discharged as jurors. "Anyone else" includes members of your family and your friends. You may tell them that you are a juror in a case and that I have ordered you not to tell them anything else about the case until I have discharged you.

Third, do not let anyone talk to you about the case or about anyone who has anything to do with it. If someone tries to talk to you, please report it to me immediately.

Fourth, do not read any news stories or articles or listen to any radio or television reports about the case or about anyone who has anything to do with the case.

Fifth, do not do any research, such as consulting dictionaries or other reference materials, and do not make any investigation about the case on your own.

Sixth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence. Keep an open mind until then.

Seventh, each of you will have one or more notebooks containing the names of the witnesses and copies of exhibits. You are free to take notes in order to enhance your memory or assist you in recollecting during your deliberations. I caution you, however, not to become a

27

slave to your notes.  It is most important that you observe the witnesses and listen to their testimony.  Your note taking should merely assist you.

## INSTRUCTION NO. 2.1

### Consideration of Deposition Testimony

A deposition is testimony taken under oath before the trial and preserved in writing or on videotape. Deposition testimony can be read into evidence or shown by videotape. You are to give the same consideration to deposition testimony as to live testimony presented here in the courtroom. That is, you are to judge the credibility of the witness and determine the weight to be given to the testimony to the best of your ability under the circumstances, as if the witness had been before you on the witness stand when he made the statement under oath.

## INSTRUCTION NO. 2.2

### Opinion Evidence and Expert Witnesses

You have heard opinion evidence from people I held were qualified to testify as experts. People who I found are expert in some field by knowledge, skill, experience, training or education, may state their opinions on matters in that field and may also state the reasons for their opinions. Witnesses who I did not identify as expert witnesses are not to be considered experts in any field, even if they have specialized training or advanced degrees.

Expert opinion testimony should be judged just like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinions, and all of the other factors that you consider when determining the credibility of the other witnesses.

Experts generally rely upon some assumptions in developing their opinions. These assumptions are likewise subject to your evaluation and should be considered along with the rest of the evidence.

In resolving the conflict in the testimony of expert witnesses, you should weigh the opinion of one expert against that of another. In doing this, you should consider the qualifications and believability of each witness, the reasons for each opinion and the matter upon which it is based.

**Defendants' Objections:**

Defendants object to this instruction to the extent that it is not amended to include the modifications set forth in defendants' proposed revised instruction, filed January 10, 2006:

"Some witnesses were called to testify about historical events but also had specialized training in certain areas.  You are not to consider their testimony as carrying any weight as expert testimony.  You may only consider it as evidence that the events they testified to did or did not occur."  The additional language is necessary to guide the jury in their consideration of those witnesses, such as Dr. Biggs and Dr. Selbin, who have specialized knowledge but were not called as experts.  (*See* 11/9/05 Trial Tr. at 4640 ("[Dr. Biggs] is not being permitted to go outside of what the committee did, and he is not permitted to give an opinion that calls upon special training and knowledge, but only upon what he did in or the committee did that he was a participant in."); 12/8/05 Trial Tr. at 7062–63 ("Here is the problem, if we get into the matter of expert testimony—and I'm sure after having listened to you [Dr. Selbin] that you could easily be qualified as an expert in chemistry, but the fact is that you were not.  And that's not the purpose for your being here.").)

### INSTRUCTION NO. 2.2A

<u>Consideration of Deposition Testimony by Dr. James Flynn</u>

In light of his illness, Dr. James Flynn was unavailable to testify any further in this trial. The live testimony offered by Dr. Flynn on his direct examination therefore was stricken, because the Defendants did not have the opportunity to cross-examine Dr. Flynn on that testimony. You are not to consider Dr. Flynn's live testimony for any purpose.

Dr. Flynn's report is still in evidence. Also, the parties have each designated testimony from Dr. Flynn's earlier deposition to be read into evidence. I instruct you, however, that the Defendants did not have the same opportunity to cross-examine Dr. Flynn at his deposition that they would have had at trial, because one of the purposes of a deposition is to help a party prepare for the witness's cross-examination. In judging the evidence you have received from Dr. Flynn and determining how much weight to give it, you should consider that Defendants did not have a full opportunity to cross-examine Dr. Flynn.

## INSTRUCTION NO. 2.3

### Charts, Summaries, Graphic Materials and Demonstrative Exhibits

Counsel have shown you a number charts, summaries and other graphic materials in order to help explain the facts and documents in evidence in the case. Such charts, summaries and graphic materials are not in and of themselves evidence or proof of any facts unless they are admitted into evidence.

You have heard me say throughout trial that many of these charts, summaries and graphic materials are admitted "for demonstrative purposes only." This means that these "demonstrative exhibits" are not necessarily based on the evidence presented at trial, and that they may relate solely to arguments and statements or interpretations of evidence by counsel. "Demonstrative exhibits" are not evidence and were presented only to assist you in understanding the argument, statement or interpretation being made. All exhibits admitted for this limited purpose will be marked "demonstrative." You should consider "demonstrative exhibits" only as visual aids t understanding counsel's arguments, statements or interpretations of the evidence. You may disregard "demonstrative exhibits" if you do not find them helpful, and must disregard them if the facts, figures or other information they contain do not correctly reflect facts shown by the evidence in the case.

33

**INSTRUCTION NO. 2.4**

Evidence Regarding FBI Raid and Grand Jury Investigation

It is undisputed that the FBI and a federal grand jury investigated allegations of criminal misconduct by Rockwell at Rocky Flats. The fact that the FBI and grand jury conducted these investigations or investigated certain allegations does not prove that Rockwell committed any particular acts or wrongs at Rocky Flats. You may, however, consider evidence that was collected in the course of these investigations or was presented to the grand jury in determining whether, based on all of the evidence presented in this action, Rockwell acted, or failed to act, in a particular manner as relevant to the trespass and/or nuisance claims against it. In other words, it is up to you to decide what the evidence presented to you proves.

## INSTRUCTION NO. 2.5

### Evidence Regarding Rockwell's Plea Agreement

You have heard evidence about the plea agreement between Rockwell and the United States in which Rockwell pled guilty to certain environmental crimes at Rocky Flats. The plea agreement is evidence that Rockwell admitted guilt for the conduct specifically set forth in the plea agreement. This means Rockwell admitted it committed the acts to which it pled guilty, and that no further evidence is required to establish that these acts occurred.

You should not consider the plea agreement or its content, however, or the fact that Rockwell did not plead guilty to additional crimes and that the government did not seek to prosecute Rockwell for any other crimes, in determining whether Rockwell committed any particular conduct at Rocky Flats in addition to the misconduct to which it pled guilty. You should make your determination regarding Rockwell's other alleged conduct based solely on the other evidence presented at this trial.

### Defendants' Objections:

Defendants object to this instruction on the ground that the following language should be deleted: "You should not consider the plea agreement or its content, however, or the fact that Rockwell did not plead guilty to additional crimes and that the government did not seek to prosecute Rockwell for any other crimes, in determining whether Rockwell committed any particular conduct at Rocky Flats in addition to the misconduct to which it pled guilty." Through the testimony of Mr. Lipsky and others (*see*, *e.g.*, 10/24/05 Trial Tr. at 2207-2651, 10/27/05 Trial Tr. at 2865-2953, 11/02/05 Trial Tr. at 3709-3764), plaintiffs have opened the

35

door to, and the jury is now permitted to consider, the fact that additional misconduct was not

pursued by the prosecution.  For example, Mr. Lipsky testified that:

- Norton's statement to Congress that the investigation pursued and charged every serious environmental crime they found misrepresented the views of the other decision makers of on the investigative team. (10/27/05 Trial Tr. 2949:11-25)

- Smith's statement that there was agreement among everybody, every other major decision maker on the criminal investigation prosecutorial team, except Lipsky that there was insufficient evidence to prosecute the 771 incinerator conduct claim was false. (10/27/05 Trial Tr. at 2922:12-19)

- Norton misrepresented to Congress that the findings of the investigation were that the incinerator did not operate during the shutdown period. (10/27/05 Trial Tr. at 2928:10-2929:16)

- Norton's announcement to the press that the investigation "didn't find the serious public health risks we thought were there" misrepresented Lipsky's and Fimberg's views. (10/27/05 Trial Tr. at 2942:23-2943:2)

- Norton's statement to Congress that the investigation "did not find, however, the kind of deceptive conduct we thought may have occurred" misrepresented the conclusions of the investigation.  (10/27/05 Trial Tr. at 2946:15-25)

- He was not allowed to pursue his investigation related to the secret medical waste facility claim, *see* 10/26/05 Trial Tr. at 2645:13-16, because the U.S. Attorney's Office revoked his authority.  (10/26/05 Trial Tr. at 2646:9-13; 10/27/05 Trial Tr. at 2865:17-2866:17; 10/27/05 Trial Tr. at 2910:8-2911:6)

- He had not finished his investigation of the 771 and 776 incinerator issues before U.S. Attorney's Office revoked authority to further investigate. (10/27/05 Trial Tr. at 2910:8-2911:6; 11/02/05 Trial Tr. at 3750-3751)

- The decision to revoke his authority to further investigate the claim regarding the operation of the 771 incinerator during shutdown was made well before it could be fully investigated, so it was not possible to  assess the sufficiency of the evidence. (Trial Tr. at 2926 at _____)

- "There was a discussion that individuals would not be prosecuted, but there was also decisions made that the false statements aspect of the case would not be prosecuted or further investigated." (10/25/05 Trial Tr. at 2510:21-2511:2)

- No claim was charged or pled to regarding the medical waste allegations. (10/27/05 Trial Tr. at 2867:1-4)

- It was a consensus that the evidence was not sufficient to press charges on the 776 incinerator allegations. (10/27/05 Trial Tr. at 2874:17-2875:4). And, in fact, no charge was brought or pled to. (10/27/05 Trial Tr. at 2875:5-6)

- He was not the only one on the investigative team who thought that there was sufficient evidence to prosecute a claim based upon the operation of the incinerator during the shutdown period. (10/27/05 Trial Tr. at 2918:18-2921:7)

The Court properly held that, in light of such statements, Mr. Lipsky's testimony had "opened

the door,"[2] and defendants called Mr. Norton to respond to this testimony. *See, e.g.*, Norton

testimony, 12/14/05 Trial Tr. at 7954–56 ("A principle of the plea agreement was that it would

---

[2] (*See* 10/25/05 Trial Tr. at 2515-2519 ("MR. BERNICK: The much more disconcerting thing is we have now sat through what is the better part of how many hours, I think it's probably around nine hours now of this examination, including exhaustive examinations of facts and claims and probable cause determinations that potentially did lead to the possibility of false statement, I mean all of the WSIC statements, all of the other things that they've talked about would be directly relevant to a false statement claim. Counsel then in contravention to what I had thought was your Honor's determination said, Well, there was a decision made not to prosecute false statement claims. Well, what does that mean? It means that we got into hours of testimony that probably doesn't have very much relevance until it ultimately was decided. We also got into, then, a very central statement in front of this jury that apparently although this witness thought there was probable cause and liability, somebody else made the determination not to go forward. Then to add on to it, I then can't cross-examine concerning why -- what the merits of those statements were, the false statement claims were, and why it was that they were dropped and whether it had anything to do with us.

THE COURT: *No, you can go into those things.* What I'm not letting in is a written Plea Agreement that's filled with self-serving statements. It's the self-serving statements that makes it objectionable as far as I'm concerned, and that's the basis for my ruling. You can go into that. You can ask him of every charged --

. . . .

THE COURT: Well, this witness just testified that decisions were made not to pursue the false statements or the perjury claims against individuals, and Mr. Bernick is entitled to go into that, *and it has opened the door to that inquiry*.") (emphasis added).)

include the most serious environmental crimes we found."); 7958 (testifying that he pursued and charged every serious criminal charge that he thought could be proven); 7988 ("There were no serious environmental charges that were not pursued to my knowledge."). Accordingly, the last two sentences of this instruction are no longer applicable and should be deleted.

## INSTRUCTION NO. 2.6

### Evidence Regarding Other Civil Lawsuits

You should not consider the fact that either Rockwell or Dow has been involved in other
civil lawsuits for the purpose of determining whether Rockwell or Dow engaged in any of the
conduct alleged by the class members in this lawsuit.  You should make your determinations
based solely on the evidence presented at this trial.

**Objections:**  Defendants object to the Court's decision not to provide the jury with
defendants' proposed instruction regarding the *Church* lawsuit, particularly because counsel for
plaintiffs attempted to discuss the *Church* litigation on several occasions, and the jury should be
reminded not to consider such statements.

> MS. ROSELLE In 1975, after Jefferson County refused to allow some of the
> neighbors living very close to Rocky Flats to develop their land, Marcus Church -
> - you remember I showed you his picture way back when here -- and two
> neighbors sued the United States Government, Dow, and Rockwell.  And after
> many years, that lawsuit was settled for $9,000,000.  And as part of that lawsuit,
> Marcus Church was required to return to the defendants all of the documents that
> he got during the pendency of the litigation.
> Now, during the 15 years this lawsuit has been pending, we have gotten
> access to the documents.  But I bring this up to you for two reasons:  One is that
> the defendants in this case have already acknowledged, if you will, and paid
> money to some of the neighbors for the contamination problems it caused.
> MR. BERNICK:  Your Honor, I object and ask the jury to disregard all
> that has been said about Church.
> THE COURT:  Sustained.  And please disregard the comments.  That is a
> separate lawsuit entirely.

(*See, e.g.*, 10/11/05 Tr. at 549-50; see also *id.* at 592 ("THE COURT: It relates to the Church
litigation.  I won't let you do it.); *id.* ("It relates to the Church litigation.  I won't let you do it.").)

Defendants' proposed instruction, filed on October 10, 2005, read:  "In 1975, Marcus Church
filed a lawsuit against the United States, Dow, and Rockwell, which included claims of

plutonium on property in the class area from Rocky Flats. You may consider only the fact that

the Church Lawsuit existed from 1975 to 1984."

## INSTRUCTION NO. 2.7

### Evidence of Media Coverage

You have heard evidence of media coverage relating to Dow and Rockwell and their operations at Rocky Flats. Such evidence of media coverage does not establish the accuracy of any statements made by the media. Evidence of media coverage is relevant, however, to public perceptions that may have influenced the market values of properties in the Class Area.

### **Defendants' Objections:**

First, Defendants' incorporate by reference Defendants' Proposed Instructions and Defendants' Previous Objections as though fully set forth herein.

Second, as set forth in defendants' proposed revised instruction dated January 10, 2005, the words "Evidence of media coverage is relevant, however, to public perceptions that may have influenced the market values of properties in the Class Area" should be deleted. The instruction should end with the words "only to the extent you find that it was accurate and the real estate market values reflected the facts that were accurately reported." To the extent that the Court does not adopt this change, defendants object on the ground that, in light of the voluminous amount of media coverage with which the plaintiffs have inundated the jury, such a change is necessary to guide the jury in their consideration of this evidence. Because the relevant measure of damages is "but for" Defendants' wrongful conduct (*see* Instruction 3.22), media coverage is relevant only to the extent that it accurately reports this wrongful conduct and where such coverage is reflected in market values. As the current instruction reads, even if media coverage was unrelated to any actionable trespass or nuisance but impacted property

41

values, the jury would be led to believe that it is relevant. However, only damages that are caused by the trespass or nuisance are recoverable. *See, e.g.*, *Westric Battery Co. v. Standard Elec. Co.*, 482 F.2d 1307, 1318 (10th Cir. 1973) (it is "only the damage flowing legally from the defendant's misdeeds which counts"); *Hyman & Co. v. Velsicol Corp.*, 233 P.2d 977, 1008 (Colo. 1951) ("The rule is that damages based upon mere speculation and conjecture are not allowable; however where it has been definitely established that damages are traceable to and the direct result of a wrong, the uncertainty in the amount thereof is a question for determination by the trier of the facts."). Similarly, if media coverage did relate to the trespass or nuisance but was false, the jury would still be led to believe that it is relevant, even though Dow and Rockwell are not responsible for any diminution in value caused by false statements about their conduct. *See Boughton v. Cotter Corp.*, 65 F.3d 823, 831-33 & 832 n.13 (10th Cir. 1995) ("unfounded fears" cannot give rise to recovery); *Holmes v. Sec. Invest. Prot. Corp.*, 503 U.S. 258, 273 (1992) (in civil RICO action, "the link is too remote between the stock manipulation alleged and the customers' harm, being purely contingent on the harm suffered by the broker-dealers."); *Int'l Bhd of Teamsters, Local 734 Health & Welfare Trust Fund v. Phillip Morris, Inc.*, 196 F.3d 818, 825-26 (7th Cir. 1999); *Roberts v. TXY Energy Retail Co. LP*, 171 S.W.3d 901, 903 (Tex. Ct. App. 2005) ("At some point in time in the causal chain, the defendant's conduct may be too remotely connected with the plaintiff's injury to constitute legal causation.")

## INSTRUCTION NO. 3.1

### Introduction to Plaintiffs' Claims

Plaintiffs assert two claims in this action on behalf of themselves and the Class members. This means Plaintiffs' claims are made and must be proved for the Class as a whole as stated in the instruction for each claim that I am about to give you. Individual claims by individual Plaintiffs are not to be decided in this trial.

Plaintiffs' first claim is for trespass and the second is for nuisance. Both claims are asserted against both Dow and Rockwell. It is your responsibility to consider and decide each of these claims separately against Dow and Rockwell.

I will now instruct you about these claims and what you must consider in deciding each one. When the instructions I am about to give you apply to more than one claim, I will tell you that. At the end of my instructions on Plaintiffs' two claims, I will talk to you about determination of damages, which applies to both claims.

43

### INSTRUCTION NO. 3.2

Trespass Claim

Elements of the Claim of Trespass

The tort of trespass protects a landowner's right to exclusive possession and control of his property, which includes the right to keep the property free from contamination deposited there by others without the landowner's consent.

In this case, Plaintiffs and Defendants have stipulated that Plaintiffs and other Class members owned property in the Class Area as of June 7, 1989. I will sometimes refer to these properties collectively as the "Class Properties." Plaintiffs and Defendants have also stipulated that Plaintiffs and the other Class members do not consent to plutonium being on their properties.

Given these stipulations, in order for the Plaintiffs and the other Class members to recover from either Dow or Rockwell or both of them on their claim of trespass, you must find Plaintiffs have proved each of the following elements by a preponderance of the evidence:

1.    Plutonium from Rocky Flats is present on the Class Properties (see Instruction No. 3.3).

2.    Dow or Rockwell or both of them intentionally undertook an activity or activities that in the usual course of events caused plutonium from Rocky Flats to be present on the Class Properties (see Instruction No. 3.18).

3.    It appears this plutonium will continue to be present on the Class Properties indefinitely (see Instruction No. 3.4).

You must consider whether the Plaintiffs have proved each of these elements against each Defendant. If you find that an element has not been proved as to a particular Defendant,

44

then your verdict on the trespass claim must be for that Defendant. On the other hand, if you find Plaintiffs have proved all three elements as to a particular Defendant, then your verdict must be for Plaintiffs and against that Defendant.

### Defendants' Objections

First, defendants incorporate by reference Defendants' Proposed Instructions and Defendants' Previous Objections as though fully set forth herein.

Second, as set forth in defendants' revised trespass instruction submitted on January 10, 2006, this instruction should be revised to make clear that plaintiffs must prove a trespass as to *all* class properties. This is a class trial and no individual claims are being tried. *See, e.g.*, 4/14/04 Order at 5-6. If plaintiffs do not prove their claims for the class as a whole, then no class member may recover. (*See, e.g.*, 28 U.S.C. § 2072 (class action device cannot be used to "abridge, enlarge or modify any substantive right" of any litigant); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

Third, as set forth in defendants' revised trespass instruction submitted on January 10, 2006, plaintiffs must prove not only that it "appears" that the plutonium is present on the class properties, but also that it *is* present, and that the trespass will continue indefinitely. Plaintiffs' proof as to the continuing nature of the trespass is necessary in order for plaintiffs to recover under Section 930. Because the Court has ruled that this is a Section 930 case, in order to establish liability, plaintiffs must also prove that defendants' allegedly wrongful conduct is continuing, and that defendants' intent to cause the trespass on a class-wide basis is continuing, in order to establish liability. *See* Restatement (Second) of Torts § 930 (Section 930 measure of

45

damages applies only where "one causes continuing or recurrent tortious invasions on the land of

another by the maintenance of a structure or acts or operations not on the land of the other");

Restatement (Second) of Torts § 930 cmt. d ("Manifestly, this element of depreciation [measured

under Section 930] is distinct from the loss in value brought by the actual effects of past

invasions (see Comment on § 929) such as damage by floods to the soil's fertility.");

Restatement (Second) of Torts § 929 cmt. a (Section 929 measure of damages applies where

"future losses are not contingent upon the continuance in the future of the defendant's

wrongdoing, and hence the result follows regardless of whether the owner can recover in

advance for the prospective harm of future operations of the cement plant.  This is a distinct

question that is dealt with in § 930.")

   Fourth, the instruction fails to accurately reflect Colorado Supreme Court precedent in

*Van Wyk*, under which plaintiffs must demonstrate either (1) that the trespass was tangible

(which the *Van Wyk* Court defined as palpable); or (2) that the trespass caused serious and

substantial physical damage.  *See Pub. Serv. Co. v. Van Wyk*, 27 P.3d 377, 389 (Colo. 2001)

("[A]n intangible intrusion may give rise to a claim for trespass, but only if an aggrieved party is

able to prove physical damage to the property owner caused by such intangible intrusions . . . .

Moreover, a property owner forced to prove damages will be further limited to seeking redress in

cases of serious or substantial invasions."); *Cook v. Rockwell Int'l Corp.*, 273 F. Supp.2d 1175,

1200 (D. Colo. 2003) ("Cook IX") (quoting the Colorado Supreme Court's definition of

"intangible" as "'something that is impalpable, or incapable of being felt by touch'") *(*quoting

*Van Wyk*, 27 P.3d at 387)[3]. Thus, the jury should be instructed that it must either find that the trespass is tangible (defined as palpable) or that it caused serious and substantial physical damage in order to find for plaintiffs on their nuisance claim.

There is no basis for taking the question of tangibility/palpability away from the jury, which effectively awards plaintiffs judgment as a matter of law on this issue. Indeed, there is no evidence in the record that plutonium is tangible, much less evidence sufficient to meet the judgment as a matter of law standard: that no reasonable juror could find that plutonium is not tangible. To the contrary, all of the record evidence demonstrates that plutonium is not tangible. (11/03/05 Trial Tr. 4039-40 (Smallwood) ("[T]he different particle -- particles would it be correct -- you know, you're an ecologist, would it be correct that these particles are completely -- you can't see them, you can't touch them by any ordinary means, they're completely intangible, correct? A. Well, I think that our normal sensory perception cannot perceive them. Q. Right. A. Right. Q. You would agree with that, by any stretch of the common sense word 'intangible,' they're intangible, right? A. Yes.").)

---

[3] For the reasons set forth in defendants' objections to plaintiffs' proposed trespass instructions, filed July 13, 2005, *Hoery v. United States*, 64 P.3d 214, 217 (Colo. 2003), is not to the contrary. Among other things, the *Hoery* Court **did not**, and **did not need to** consider the issue of whether impalpable contamination such as TCE constitutes a "tangible" intrusion. In *Van Wyk*, the Court held an intrusion may give rise to a trespass if **either**: (1) that intrusion causes "physical damage" to the property; **or** (2) that intrusion is "tangible," meaning that it is "[]palpable, or []capable of being felt by touch." *Van Wyk*, 27 P.3d at 387, 390. In *Hoery*, the plaintiff alleged the first element — that is, that the TCE had caused physical damage to his property. *Id.* at 1221-22 (alleging contamination of "groundwater well" which plaintiff used "to irrigate the lawn and vegetable garden"). Given these allegations of physical damage in *Hoery*, there was no need for the *Hoery* Court to reach the second element — namely, the question of whether the TCE contamination in *Hoery* was "tangible" or "intangible."

47

Fifth, as set forth in Defendants' Objection No. 4 to Plaintiffs' Proposed Instruction

No. 1, filed July 13, 2004, the instruction impermissibly deviates from the Colorado Pattern Jury

Instructions on trespass, *see* CJI-Civ. 4th 18:1 (May 2004) ("Chapter 18:  Trespass to Land"),

including the requirement that the trespass have occurred while the plaintiffs owned their

properties, *id.* (citing *Hugunin v. McCunniff,* 2 Colo. 367, 369–70 (1874) ("By the strict rule

which anciently obtained in the English courts, trespass quare clausum fregit lay only by one

having a possession, in fact, of the premises trespassed upon, at the time of the trespasses."))

Plaintiffs have suggested that this rule does not apply where the trespass is "continuing."[4]  Here,

however, plaintiffs have introduced no evidence that any plutonium on class properties will

"continue indefinitely" (and thus is "continuing").[5]  While plaintiffs have introduced evidence

---

[4] Plaintiffs bear the burden of proving that their claim is "continuing."  *See, e.g., Mangini v. Aerojet-General Corp.*, 51 Cal. Rptr. 2d 272, 273 (Cal. 1996) (holding that "because plaintiffs had failed to present **any** substantial evidence that the contamination of their land . . . was capable of being abated at a reasonable cost, the nuisance must be deemed permanent . . . plaintiffs' nuisance and trespass claims were time barred").

[5] Defendants have previously argued that, in order for a trespass to be "continuing," plaintiffs also must prove that it is not reasonably abateable.  *See* Defendants' Response to Plaintiffs' Brief on the Statute of Limitations, State Regulatory Standards, Ultrahazardous Liability, Spoliation, and Negligent Trespass, filed August 18, 2004; *see also* W. Keeton, *Prosser and Keeton on Torts*, 5th ed. (West Group 1984) at § 89 (a "permanent" nuisance is one that is "unlikely to abate or to be avoided by any reasonable expenditure of money"); D. Dobbs, *The Law of Torts*, § 57 (West Group 2001), cited in *Hoery* at p. 223 (listing first among the "most significant factors favoring a classification as temporary" that "(1) the invasion can in fact be terminated or abated" and "(2) the cost of termination is not wasteful or oppressive"); *In re Hoery v. United States*, 64 P.3d 214, 216 n.2 (Colo. 2003) ("the record at this stage of the litigation indicates that the contamination is not permanent — that is, it is remediable or abatable."); *Middlecamp v. Bessemer Irrigating Ditch Co.*, 103 P. 280, 283 (1909) (when nuisance or trespass "is not practicable to remedy" or could not "by a reasonable expenditure be checked," the nuisance is considered permanent).

(Continued…)

about the half-life of plutonium once it gets in the soil, plaintiffs have not introduced evidence that the *soil itself* has remained on the class properties. (Smallwood testimony, 11/03/05 Trial Tr. at 4067, 4083, 4084)

Because plaintiffs have failed to introduce evidence of a "continuing" trespass, plaintiffs' claims are subject to the rules applicable to "permanent" trespasses. *See Hoery*, 64 P.3d at 217-223. In the case of a permanent trespass, a plaintiff must prove that the contamination came onto the property during the time the plaintiff owned the property. *See also Hugunin*, 2 Colo. at 369–70; *see also* CJI-Civ. 4th 18:1 (May 2004) (requiring as element that "[w]hile Plaintiff was (the owner) . . . the Defendant intentionally (caused [the alleged contaminant] to come upon) that property), *with Hoery*, 64 P.3d at 217-223 (holding that, where undisputed evidence showed that contamination was "not permanent – that is, it is remediable or abatable," then cause of action continues as long as "continuing property invasions remain[ed]" on plaintiff's property, regardless of whether "the United States continues to release toxic pollutants"). Here, plaintiffs have introduced no evidence of plutonium contamination of the class properties after the date when all of the class members had acquired their properties - that is, after June 7, 1989. To the contrary, the evidence at trial has shown that 99.9% of all plutonium releases from Rocky Flats occurred before 1970, a time when only a small fraction of class members owned their properties. (DX 454, ATSDR Report, at 2; *see also* Goble testimony, 11/02/05 Trial Tr. 3678)

---

Plaintiffs have introduced no evidence in this regard. Defendants recognize that the Court has rejected defendants' position on this issue.

49

Thus, the jury should be instructed that, unless plaintiffs can prove that the trespass occurred while all of their class members owned their properties, then they cannot establish a trespass.

Sixth, as defendants have stated on numerous occasions, defendants object to this instruction on the ground that it does not require plaintiffs to prove a violation of state and federal standards. *See* Defendants' Proposed Trespass Instructions, filed July 13, 2004, Instruction Nos. 7-9; Defendants' Response to Plaintiffs' Brief on the Statute of Limitations, State Regulatory Standards, Ultrahazardous Liability, Spoliation, and Negligent Trespass, filed August 18, 2004; Defendants' Memorandum Regarding Federal and Colorado Nuisance Law, filed October 15, 2004; Defendants' Report Concerning Opinion Testimony Pertinent to Trial Issues, filed July 30, 1999. The authorities that have considered this issue have held that a plaintiff must prove violations of federal standards to prevail on a claim under the Price Anderson Act. *See Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1308 (11th Cir. 1998); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1105 (7th Cir. 1994); *In re TMI Litigation Cases Consol. II*, 940 F.2d 832, 859 (3d Cir. 1991); *Good v. Fluor Daniel Corp.*, 222 F. Supp. 2d 1236, 1247 (E.D. Wash. 2002); *Gassie v. SMH Swiss Corp. for Microelec. and Watchmaking Indus., Ltd.*, No. Civ. A. 97-3557, 1998 WL 158737, at *4 (E.D. La. Mar. 26, 1998); *Boggs v. Divested Atomic Corp.*, No. C-2-90-840, 1997 WL 33377790, at *3 (S.D. Ohio Mar. 24, 1997); *Corcoran v. New York Power Auth.*, 935 F. Supp. 376, 386 (S.D.N.Y. 1996); *Bohrmann v. Maine Yankee Atomic Power Co.*, 926 F. Supp. 211, 220 (D. Me. 1996); *McLandrich v. S. California Edison Co.*, 942 F. Supp. 457, 465 (S.D. Cal. 1996); *Lamb v. Martin Marietta Energy Sys.*, 835 F. Supp. 959, 965 (W.D. Ky. 1993); Atomic Energy Commission Manual Chapter 0524, Issued August 12, 1963 (DX0351); DOE Order 5480.1 (Tab 10, App. B to

50

Defs. Brs. in Supp. of Their Mots. for Summ. J. Based on Expert Disc.); DOE Order 5480.1A

(Tab 11, App. B to Defs. Brs. in Supp. of Their Mots. for Summ. J. Based on Expert Disc.); DOE

Interim Standard for DOE Environmental Activities For All Exposure Pathways, Issued August

5, 1985 (Tab 12, App. B to Defs. Brs. in Supp. of Their Mots. for Summ. J. Based on Expert

Disc.).  The same holds true with respect to plaintiffs' burden of proving a violation of state

standards in order to prevail on a trespass claim.  *See* Defendants' Response to Plaintiffs' Brief

on the Statute of Limitations, State Regulatory Standards, Ultrahazardous Liability, Spoliation,

and Negligent Trespass, filed August 18, 2004; *Hoery*, 64 P.3d at 222; *see also Taco Cabana v.

Exxon Corp.*, 5 S.W.3d 773, 780 (Tex. App. 1999) ("Because the evidence presented at trial did

not establish that Exxon failed to remove soil that contained contaminants above state action

levels, Taco Cabana failed to establish its trespass theory of liability."); 6 Colo. Code Regs.

1007-1, RH 4.60.1, Permissible Levels of Plutonium in Uncontrolled Areas.

Seventh, although the Court has already rejected defendants' position on this subject,

defendants also object to this instruction (and to the trespass instructions generally) to the extent

that it does not recognize the statute of limitations defense.  In *Cook X*, this Court ruled that, if

plaintiffs prove a continuing trespass, then the statute of limitations does not apply.  *See Cook v.

Rockwell Int'l Corp.*, 358 F. Supp. 2d 1003, 1004 (D. Colo. 2004) ("the continuing presence of

plutonium on the Class Properties, if proven, would constitute a continuing trespass" in such

circumstances, "Defendants do not have a limitations defense to liability on the trespass claim

because the statute of limitations has not yet begun to run on this claim").  Under this Court's

rulings, to prove that a trespass is "continuing," plaintiffs must show that "it appears that

plutonium will continue to be on the Class Properties indefinitely."  (Instruction No. 3.4)  As

51

discussed above, plaintiffs have introduced no evidence of such a "continuing" trespass. While

plaintiffs have introduced evidence about the half-life of plutonium once it gets into the soil,

plaintiffs have not introduced evidence that any plutonium-contaminated soil itself has remained

on the class properties, notwithstanding the massive amounts of development that have occurred

on those lands during the last four decades. (Smallwood testimony, 11/03/05 Trial Tr. at 4067,

4083, 4084)  Because plaintiffs have failed to introduce evidence that any trespass was

"continuing," the statute of limitations defense applies. *See Cook*, 358 F. Supp. 2d at 1004;

*Hoery*, 64 P.3d at 216–17.

The statute of limitations for trespass actions is two years.  Colo. Rev. Stat. § 13-80-102

(tort actions for trespass "shall be commenced within two years after the cause of action accrues,

and not thereafter").  Under Colorado statute of limitations rules, a claim "accrues the later of

when the injury first occurs or when the plaintiff learned or should have learned of his injury and

its cause." *Hoery*, 64 P.3d at 216–17 (Colo. 2003).  Thus, if plaintiffs' claims accrued on or

before January 30, 1988 (two years before plaintiffs filed their Complaint), they are time-barred.

Thus, the jury should be allowed to determine whether class members knew or should have

known of the trespass before January 30, 1988 (although only the "should have known" question

could properly be part of this class trial), and defendants object to the Court's instruction to the

extent that it does not incorporate defendants' proposed statute of limitations instruction

submitted July 13, 2004 (Instruction No. 10).

For all of these reasons, defendants object to this instruction (and to the trespass

instructions generally) to the extent that they do not reflect defendants' proposed trespass

instructions, including without limitation Defendants' Proposed Trespass Instructions submitted

52

July 13, 2004; Defendants' Revised Proposed Trespass Jury Instructions and Jury Verdict Forms,

filed August 6, 2004; Defendants' Proposed Supplemental Jury Instructions and Jury Verdict

Form, filed September 16, 2005; Defendants' Proposed Limiting and Supplemental Jury

Instructions, filed September 23, 2005; and Defendants' Proposed Changes to Preliminary Jury

Instructions, filed January 10, 2006.