## INSTRUCTION NO. 3.3

Trespass Claim

First Element:  Presence of Plutonium

The first element of the trespass claim requires that Plaintiffs prove that plutonium is present on the Class Properties.  To prove this element, Plaintiffs are <u>not</u> required to show that plutonium is present on the Class Properties at any particular level or concentration, that they suffered any bodily harm because of the plutonium or that the presence of plutonium on the Class Properties damaged these properties in some other way.

**Defendants' Objections:**

First, defendants incorporate by reference Defendants' Proposed Instructions and Defendants' Previous Objections as though fully set forth herein.

Second, the instruction fails to accurately reflect Colorado Supreme Court precedent in *Van Wyk*, under which plaintiffs must demonstrate either (1) that the trespass was tangible (which it defined as palpable); or (2) that the trespass caused serious and substantial physical damage. *See Pub. Serv. Co. v. Van Wyk*, 27 P.3d 377, 389 (Colo. 2001) ("[A]n intangible intrusion may give rise to a claim for trespass, but only if an aggrieved party is able to prove physical damage to the property owner caused by such intangible intrusions . . . .  Moreover, a property owner forced to prove damages will be further limited to seeking redress in cases of serious or substantial invasions."); *Cook v. Rockwell Int'l Corp.*, 273 F. Supp.2d 1175, 1200 (D. Colo. 2003) ("*Cook IX*") (quoting the Colorado Supreme Court's definition of "intangible" as "'something that is impalpable, or incapable of being felt by touch'") *(*quoting *Van Wyk*, 27 P.3d

54

at 387)[6]. Thus, defendants object to the instruction that plaintiffs are not required to show "that

they suffered any bodily harm because of the plutonium or that the presence of the plutonium on

the Class Properties damaged these properties in some other way." To the contrary, the jury

should be instructed that it must either find that the trespass is tangible (defined as palpable) or

that it caused serious and substantial physical damage in order to find for plaintiffs on their

nuisance claim. At the very least, the jury should be instructed (as defendants have argued in the

alternative) that plutonium must be present in amounts that are enough to impose a significant

physical impact on the property or its users.

There is no basis for taking the question of tangibility/palpability away from the jury,

which effectively awards plaintiffs judgment as a matter of law on this issue. Indeed, there is no

evidence that plutonium is tangible. To the contrary, all of the record evidence demonstrates that

plutonium is not tangible. (11/03/05 Trial Tr. 4039-40 (Smallwood) ("[T]he different particle --

particles would it be correct -- you know, you're an ecologist, would it be correct that these

particles are completely -- you can't see them, you can't touch them by any ordinary means,

---

[6] For the reasons set forth in defendants' objections to plaintiffs' proposed trespass instructions,
filed July 13, 2005, *Hoery v. United States*, 64 P.3d 214, 217 (Colo. 2003), is not to the contrary.
Among other things, the *Hoery* Court *did not*, and *did not need to* consider the issue of whether
impalpable contamination such as TCE constitutes a "tangible" intrusion. In *Van Wyk*, the Court
held an intrusion may give rise to a trespass if *either*: (1) that intrusion causes "physical
damage" to the property; *or* (2) that intrusion is "tangible," meaning that it is "[]palpable, or
[]capable of being felt by touch." *Van Wyk*, 27 P.3d at 387, 390. In *Hoery*, the plaintiff alleged
the first element — that is, that the TCE had caused physical damage to his property. *Id.* at
1221-22 (alleging contamination of "groundwater well" which plaintiff used "to irrigate the lawn
and vegetable garden"). Given these allegations of physical damage in *Hoery*, there was no need
for the *Hoery* Court to reach the second element — namely, the question of whether the TCE
contamination in *Hoery* was "tangible" or "intangible."

they're completely intangible, correct? A. Well, I think that our normal sensory perception cannot perceive them. Q. Right. A. Right. Q. You would agree with that, by any stretch of the common sense word 'intangible,' they're intangible, right? A. Yes.").)

Third, as set forth in defendants' objections to plaintiffs' instructions filed on July 13, 2004, the instruction impermissibly deviates from the Colorado Pattern Jury Instructions on trespass, *see* CJI-Civ. 4th 18:1 (May 2004) ("Chapter 18: Trespass to Land"), including the requirement that the trespass have occurred while the plaintiffs owned their properties, *id.* (citing *Hugunin*, 2 Colo. at 369–70 (1874) ("By the strict rule which anciently obtained in the English courts, trespass quare clausum fregit lay only by one having a possession, in fact, of the premises trespassed upon, at the time of the trespasses.")) Plaintiffs have suggested that this rule does not apply where the trespass is "continuing." As discussed in defendants' objections to Instruction No. 3.2, however, plaintiffs have introduced no evidence that any plutonium on class properties will "continue indefinitely" (and thus is "continuing"). In the case of a permanent trespass, a plaintiff must prove that the contamination came onto the property during the time the plaintiff owned the property. *See Hugunin*, 2 Colo. at 369–70; *see also* CJI-Civ. 4th 18:1 (May 2004)

Fourth, for the reasons stated in defendants' Objections to Instruction No. 3.2, defendants object to this instruction on the ground that it does not require plaintiffs to prove a violation of state and federal standards. *See* Defendants' Proposed Trespass Instructions Submitted July 13, 2004, Instruction Nos. 7-9; Defendants' Response to Plaintiffs' Brief on the Statute of Limitations, State Regulatory Standards, Ultrahazardous Liability, Spoliation, and Negligent Trespass, filed August 18, 2004; Defendants' Memorandum Regarding Federal and Colorado Nuisance Law, filed October 15, 2004; Defendants' Report Concerning Opinion Testimony

Pertinent to Trial Issues, filed July 30, 1999.  Thus, defendants object to the instruction that plaintiffs do not have to prove that plutonium is present at any level or concentration.

## INSTRUCTION NO. 3.4

Trespass Claim

Third Element:  Continuing Trespass

In deciding the third element of Plaintiffs' trespass claim, which is whether it appears that plutonium will continue to be present on Class Properties indefinitely, it is not necessary for you to find that the plutonium will be there forever.  Instead, in deciding this element, you should consider whether there is any reason to expect that the plutonium present on Class Properties will be removed at any definite time in the future.  If you find there is no reason to expect it will be removed by a definite time, then you must find it appears that plutonium will continue to be present on the Class Properties indefinitely.

**Defendants' Objections**:

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, defendants object to the instruction to the extent that the Court does not change it to reflect Instruction No. 3.4, proposed by defendants on January 10, 2006.  Defendants' proposed instruction reflects the fact that, in order for the damages measure of Section 930 of the Restatement to apply, the trespass must be "continuing."  Restatement (Second) of Torts § 930. Defendants' proposed instruction thus requests the following changes:  (1) the defendant's *operational* activities which give rise to the trespass must be continuing; (2) the defendant's intent to cause a class-wide trespass must be continuing; and (3) the plutonium contamination resulting from the trespass must be continuing.  *See* Restatement (Second) of Torts § 930 ("(1) If

one causes continuing or recurrent tortious invasions on the land of another by the maintenance of a structure or acts or operations not on the land of the other . . .") (emphasis added); Restatement (Second) of Torts § 930, cmt. d ("Manifestly, this element of depreciation is distinct from the loss in value brought by the actual effects of past invasions (see Comment on § 929) such as damage by floods to the soil's fertility."); Restatement (Second) of Torts § 929, cmt. a (Section 929 (and not Section 930) applies where "future losses are not contingent upon the continuance in the future of the defendant's wrongdoing, and hence the result follows regardless of whether the owner can recover in advance for the prospective harm of future operations of the cement plant. This is a distinct question that is dealt with in § 930").

Third, the instruction does not account for the possibility that the plutonium at issue *has already been* removed.

Fourth, by using the word "remove," the instruction suggests that the defendants, rather than somebody or something else, must remove the plutonium in order for the trespass to stop. In fact, any cause that results in plutonium not continuing to be present on the properties of all class members is sufficient to prevent the trespass from being continuing.

Fifth, the instruction presumes that plutonium is still present on plaintiffs' properties. Instead of referring to "the plutonium present on Class Properties," the instruction should refer to "any plutonium still present on Class Properties."

Sixth, defendants object to the language: "no reason to expect it will be removed by a definite time." As an initial matter, this language presumes that plutonium is present on plaintiffs' properties. Moreover, there is no requirement that the plutonium be scheduled for removal at a definite time, so long as it is expected that the plutonium will be removed within the

reasonably foreseeable future.  What is important under Section 930 is an expectation that the trespass will cease - not the expectation that the trespass will cease by *some* date certain.  Moreover, the instruction misquotes the comments to Section 930.  Comment b to Section 930 does not require that the invasion be expected to cease by *a* definite time in the future, but rather that the invasion by expected to cease by *any* definite time in the future.  *See* Restatement (Second) of Torts Section 930, cmt. b ("'Indefinitely' as used in this Section does not mean that the situation may be expected to last forever, but merely that there is no reason to expect its termination at *any* definite time in the future.")

Seventh, defendants object to the instruction's statement that the third element of plaintiffs' claims is "whether it *appears* that plutonium will continue to be present."  It must not only *appear* that the invasion will continue indefinitely; rather, the invasion must continue to be present through the time of trial.  *See* Restatement (Second) of Torts § 930, illus. 2 ("The operations of the gas plant began in 1931 and fumes and smoke invaded the greenhouse and damaged the flowers. This damage, small at first, reached a peak in June, 1932, when the gas plant first began to be operated to full capacity. It has since been carried on at the same level *and the damage to B's business has continued*.") (emphasis added).

## INSTRUCTION NO. 3.5

### Trespass Claim

### Matters That Are Not Relevant to Deciding the Trespass Claim

A trespass may exist even though the conduct that originally caused the invasion of the plaintiff's land has ceased. Accordingly, in considering whether Plaintiffs have proved the elements of their trespass claim as stated in Instruction No. 3.2, it is irrelevant that Dow and/or Rockwell ceased any such activities before Plaintiffs brought this suit or that the Rocky Flats plant itself is now shut down.

That Plaintiffs or Class members knew or could have known that plutonium was present on their properties when they purchased them is also irrelevant to determining whether Dow or Rockwell are liable for trespass as stated in Instruction No. 3.2.

These irrelevant matters should not be considered in determining the trespass claim.

**Defendants' Objections:**

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, as reflected in defendants' revised instruction proposed on January 10, 2006, it is incorrect to instruct the jury that defendants' operations need not be ongoing in order for plaintiffs to prove their trespass claims here. Rather, in order for the damages measure of Section 930 of the Restatement to apply, the trespass must be "continuing." Restatement (Second) of Torts § 930. In order for the trespass to be "continuing" within the meaning of Section 930, the defendant's operations must be ongoing, and those ongoing operations must

cause "continuing or recurrent invasions on the land of another." *See* Restatement (Second) of

Torts § 930 ("(1) If one causes continuing or recurrent tortious invasions on the land of another

*by the maintenance of a structure or acts or operations not on the land of the other* . . .")

(emphasis added); Restatement (Second) of Torts § 930, cmt. d ("Manifestly, this element of

depreciation is distinct from the loss in value brought by the actual effects of past invasions (see

Comment on § 929) such as damage by floods to the soil's fertility."); Restatement (Second) of

Torts § 929, cmt. a (Section 929 (and not Section 930) applies where "future losses are *not*

*contingent upon the continuance in the future of the defendant's wrongdoing*, and hence the

result follows regardless of whether the owner can recover in advance for the prospective harm

of future operations of the cement plant. This is a distinct question that is dealt with in § 930")

(emphasis added). Thus, it is contrary to law to instruct the jury that "[a] trespass may exist even

though the conduct that originally caused the invasion of the plaintiff's land has ceased.

Accordingly, in considering whether Plaintiffs proved the elements of their trespass claim as

stated in Instruction No. 3.2, it is irrelevant that Dow and/or Rockwell ceased any such activities

before Plaintiffs brought this suit or that the Rocky Flats plant itself is now shut down."

Third, as set forth in defendants' proposed instruction filed January 10, 2006, even if

plaintiffs' knowledge of plutonium at the time they purchased their properties is irrelevant to

issues of *liability* (which defendants also dispute, as stated below), it is indisputably relevant to

the three following, relevant issues: (1) to establish the value of properties in the class area

before the CCE date to support defendants' prior discount defense; and (2) as a factor to be

considered in determining whether any alleged nuisance is substantial and unreasonable. As to

the first point, as this Court ruled in its May 17, 2005 Order, and intends to instruct the jury in

Instruction 3.25, one issue that the jury must decide is whether there is a prior market discount. A subject that is certainly relevant to the question of whether a prior market discount exists is when plaintiffs have knowledge of the issues that allegedly gave rise to the discount, such as the presence of plutonium. Plaintiffs themselves have acknowledged this when they identify the "variable at issue, namely, ***market reaction*** to the nuisance and contamination caused by Rocky Flats." (Pls.' Mem. in Support of Their *Daubert* Mot. at 14.) What people knew about Rocky Flats, and when they knew it, is certainly relevant to the existence and magnitude of any prior market discount. In addition, evidence that plaintiffs knew about an alleged nuisance, and acquired or improved their land in spite of it, is a factor to be considered in determining whether the alleged nuisance is substantial and unreasonable. *See* Restatement (Second) of Torts § 840D ("The fact that the plaintiff has acquired or improved his land after a nuisance interfering with it has come into existence is . . . a factor to be considered in determining whether the nuisance is actionable."); W. Page Keeton, Prosser and Keeton on Torts § 88, at 630 (5th ed. 1984) ("Whether or not the plaintiff or the defendant should be required to bear the loss of substantial interference to plaintiff from defendant's reasonable conduct depends upon[, among other factors,] priority in time as to the respective activities of the plaintiff and the defendant in the area."); *Platte & Denver Ditch Co. v. Anderson*, 6 P. 515, 521 (Colo. 1885) ("Where one buys a city lot bordering upon ground set apart or dedicated to any public use, he takes it subject to all the annoyances incident to the purposes of the dedication.").

Fourth, although the Court has already rejected defendants' position on this subject, market knowledge is also relevant to the statute of limitations defense. In *Cook X*, this Court ruled that, if plaintiffs prove a continuing trespass, then the statute of limitations does not apply.

*See Cook*, 358 F. Supp. 2d at 1004) ("the continuing presence of plutonium on the Class

Properties, if proven, would constitute a continuing trespass"; in such circumstances, "then

Defendants do not have a limitations defense to liability on the trespass claim because the statute

of limitations has not yet begun to run on this claim").  Under this Court's rulings, to prove that a

trespass is "continuing," plaintiffs must show that "it appears that plutonium will continue to be

on the Class Properties indefinitely."  (Instruction No. 3.4)  Plaintiffs have introduced no

evidence of such a "continuing" trespass. As discussed above, while plaintiffs have introduced

evidence about the half-life of plutonium once it gets into the soil, plaintiffs have not introduced

evidence that any plutonium-contaminated soil itself has remained on the class properties,

notwithstanding the massive amounts of development that have occurred on those lands during

the last four decades. (Smallwood testimony, 11/03/05 Trial Tr. 4067, 4083, 4084)  Because

plaintiffs have failed to introduce evidence that any trespass was "continuing," the statute of

limitations defense applies.[7]  *See Cook*, 358 F. Supp. 2d at 1004, (D. Colo. 2004); H*oery*, 64

P.3d at 216–17 (Colo. 2003).

---

[7] Defendants have previously argued that, in order for a trespass to be "continuing," plaintiffs
also must prove that it is not reasonably abatable. *See* Defendants' Response to Plaintiffs' Brief
on the Statute of Limitations, State Regulatory Standards, Ultrahazardous Liability, Spoliation,
and Negligent Trespass, filed August 18, 2004; *see also* W. Keeton, *Prosser and Keeton on
Torts*, 5th ed. (West Group 1984) at § 89 (a "permanent" nuisance is one that is "unlikely to
abate or to be avoided by any reasonable expenditure of money"); D. Dobbs, *The Law of Torts*, §
57 (West Group 2001), cited in *Hoery* at p. 223 (listing first among the "most significant factors
favoring a classification as temporary" that "(1) the invasion can in fact be terminated or abated"
and "(2) the cost of termination is not wasteful or oppressive"); *Hoery*, 64 P.3d at 216 n.2 ("the
record at this stage of the litigation indicates that the contamination is not permanent — that is, it
is remediable or abatable."); *Middlecamp*, 103 P. at 283 (when nuisance or trespass "is not
practicable to remedy" or could not "by a reasonable expenditure be checked," the nuisance is
considered permanent).

(Continued...)

The statute of limitations for trespass actions is two years. Colo. Rev. Stat. § 13-80-102 (tort actions for trespass "shall be commenced within two years after the cause of action accrues, and not thereafter"). Under Colorado statute of limitations rules, a claim "accrues the later of when the injury first occurs or when the plaintiff learned or should have learned of his injury and its cause." *Hoery*, 64 P.3d at 216–17. Thus, if plaintiffs' claims accrued on or before January 30, 1988 (two years before plaintiffs filed their Complaint), they are time-barred. Thus, the jury should be allowed to determine whether class members knew or should have known of the trespass before January 30, 1988 (although only the "should have known" question could properly be part of this class trial), and defendants' object to the Court's decision not to read to the jury defendants' proposed statute of limitations instruction. *See* Defendants' Proposed Trespass Instructions Submitted July 13, 2004, Instruction No. 10.

---

Plaintiffs have introduced no evidence in this regard. Defendants recognize that the Court has rejected defendants' position on this issue.

## INSTRUCTION NO. 3.6

Nuisance Claim

Elements of the Nuisance Claim

Plaintiffs claim that Defendants, through their operation of the Rocky Flats plant, caused a nuisance. In order for the Plaintiff Class to recover from either Dow or Rockwell or both of them on their claim of nuisance, you must find Plaintiffs have proved each of the following elements by a preponderance of the evidence:

1.   Dow or Rockwell or both of them interfered with Class members' use and enjoyment of their properties in the Class Area in one or both of these two ways:

    A.   By causing Class members to be exposed to plutonium and placing them at some increased risk of health problems as a result of this exposure (see Instruction Nos. 3.7, 3.18); and/or

    B.   By causing objective conditions that pose a demonstrable risk of future harm to the Class Area (see Instruction Nos. 3.7, 3.18);

2.   This interference with Class members' use and enjoyment of their properties was both "unreasonable" and "substantial" (see Instruction Nos. 3.8 - 3.12);

3.   The activity or activities causing the unreasonable and substantial interference were either "intentional" or "negligent" (see Instruction Nos. 3.13 - 3.16); and

4.   It appears the unreasonable and substantial interference with the use and enjoyment of property caused by Dow and/or Rockwell's intentional or negligent conduct will continue indefinitely (see Instruction No. 3.17).

66

You must consider whether the Plaintiffs have proved these elements against each Defendant. If you find that any one of these elements has not been proved as to a particular Defendant, then your verdict on the nuisance claim must be for that Defendant. On the other hand, if you find Plaintiffs have proved each of these elements as to a particular Defendant, then your verdict on the nuisance claim must be for Plaintiffs and against that Defendant.

**Defendants' Objections:**

Defendants' objections to this instruction include the following:

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, defendants object on the ground that the instruction does not make clear that the interference must apply to *all* class members. This is a trial of the class claim and no individual claims are being tried. (*See*, *e.g.*, 5/17/04 Order, at 3. If plaintiffs do not prove their claims for the class as a whole, then no class member may recover. *See*, *e.g.*, 28 U.S.C. § 2072 (class action device cannot be used to "abridge, enlarge or modify any substantive right" of any litigant); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

Third, defendants object to the instruction that plaintiffs may prove a health risk by proving that defendants "caus[ed] Class members to be exposed to plutonium and placing them at some increased risk of health problems as a result of this exposure." There is no Colorado authority for the proposition that a health risk can give rise to a nuisance claim. Other states

67

have properly rejected claims in the absence of proof of a physical injury. *See, e.g.*, *Metro-North Commuter R. Co. v. Buckley*, 521 U.S. 424, 428 (1997).

Even if there were Colorado authority to support the proposition that a health risk is actionable, the standard would not be whether there is "some increased risk," but rather (at a very minimum) whether the risk is "more likely than not." *See Boryla v. Pash*, 937 P.2d 813, 816-17 (Colo. Ct. App. 1996) ("[the plaintiff] cannot recover damages for an increased risk of cancer recurrence because she failed to prove to a reasonable medical probability that the future harm was more likely than not to occur"), *rev'd on other grounds*, 960 P.2d 123 (Colo. 1998); *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 801 (Cal. 1993) ("[A] plaintiff should be allowed to recover without having to show knowledge that it is more likely than not that the feared cancer will occur"); *see also Boryla*, 937 P.2d at 128-29 (policy rationales announced in *Potter* are "relevant in a toxic tort case").

Fourth, because a nuisance requires a substantial and unreasonable interference with the use and enjoyment of property, the standard should at the very least be a "substantial health risk." *See Van Wyk*, 27 P.3d at 395.

Fifth, defendants object to the instruction that plaintiffs can establish a nuisance by proving "objective conditions that pose a demonstrable risk of future harm to the Class Area." In order to prove a nuisance, plaintiffs must do more than show a "future risk." *See, e.g.,* 42 U.S.C. § 2014 (requiring that a public liability action assert liability "arising out of or resulting from a nuclear incident," which is further defined as an "occurrence"); *see also Adams-Arapahoe School Dist. No. 28-J v. GAF Corp.*, 959 F.2d 868 (10th Cir. 1992) ("find[ing] nothing . . . which supports the notion that tort liability may be premised on the mere risk of harm") (applying

68

Colorado law of negligence, which is plaintiff's only apparent nuisance theory); *Van Wyk*, 27 P.3d at 391 (defining theory of nuisance predicated on invasion that is "unintentional and otherwise actionable under the rules for negligent or reckless conduct"). Accordingly, defendants object to this instruction to the extent that it refers to a "demonstrable risk of future harm," rather than incorporating defendants' proposed instruction that a future risk is not enough. *See* Defendants' Proposed Nuisance Jury Instructions filed August 6, 2004, Instruction No. 5.

Even if a future risk were actionable, plaintiffs cannot show that it is class-wide. As of today, at most 5,000 class members (defined as individuals who owned property in a certain geographical area as of June 7, 1989) live in the class. *See* PX-1426.[8] Thus, any "objective conditions that pose a demonstrable risk of future harm to the Class Area" cannot give rise to a class-wide harm, and thus should be part of a class-wide trial.

Sixth, if plaintiffs are allowed to recover based on a future risk, than the standard under Colorado law must be whether the risk is "more likely than not" to materialize – not whether there is a "potential" for the risk to occur. *See, e.g., Boryla*, 937 P.2d at 816-17 ("[the plaintiff] cannot recover damages for an increased risk of cancer recurrence because she failed to prove to a reasonable medical probability that the future harm was more likely than not to occur"), *Potter*, 863 P.2d at 801 (Cal. 1993) ("[A] plaintiff should be allowed to recover without having to show knowledge that it is more likely than not that the feared cancer will occur"); *see also Boryla*, 937 P.2d at 128-29 (policy rationales announced in *Potter* are "relevant in a toxic tort case").

---

[8] Plaintiffs' have not disputed defendants' bought-sold analysis, as set forth in PX-1426.

Defendants therefore object to this instruction to the extent that it refers to a "demonstrable risk of future harm," rather than incorporating the "more likely than not" standard from Defendants' Proposed Instruction No. 3.6, filed with Defendants' Proposed Changes to Preliminary Jury Instructions on January 10, 2006.

Seventh, plaintiffs have presented no evidence of any future risk based on any substance other than plutonium. Nor have plaintiffs presented evidence of any future risk other than a health risk. Thus, the future risk instruction should be limited to future health risks attributable to plutonium.

Eighth, under Section 930, any future risk claim must be based on the continuing operations of the Rocky Flats Plant. In order for the nuisance to be "continuing" within the meaning of Section 930, the following conditions must be met: (1) the defendant's *operational* activities which give rise to the nuisance must be continuing; (2) the defendant's intent to cause a class-wide nuisance must be continuing; and (3) the health risk resulting from the nuisance must be continuing. See Restatement (Second) of Torts § 930 ("(1) If one causes continuing or recurrent tortious invasions on the land of another by the maintenance of a structure or acts or operations not on the land of the other . . .") (emphasis added); Restatement (Second) of Torts § 930, cmt. d ("Manifestly, this element of depreciation is distinct from the loss in value brought by the actual effects of past invasions (see Comment on § 929) such as damage by floods to the soil's fertility."); Restatement (Second) of Torts § 929, cmt. a (Section 929 (and not Section 930) applies where "future losses are not contingent upon the continuance in the future of the defendant's wrongdoing, and hence the result follows regardless of whether the owner can recover in advance for the prospective harm of future operations of the cement plant. This is a

70

distinct question that is dealt with in § 930") (emphasis added).  Thus, the jury should be instructed that any future risk must be attributable to "the continuing operation of the Rocky Flats plant," as set forth in Defendants' Proposed Instruction No. 3.6 filed January 10, 2006.

Ninth, Section 930 is inapplicable to nuisance claims, because Section 930 requires the presence of an "invasion."

Tenth, this instruction omits the requirement that, in order to find a nuisance, the jury must find, among other things, that the plaintiff has proved, by a preponderance of the evidence, that the interference has caused a reduction in the value of the property.  *See Van Wyk*, 27 P.3d at 392 ("[T]he interference complained of by the Van Wyks must be a substantial invasion interfering with the use and enjoyment of the land, and reducing the value of the land.") (citing W. Page Keeton et al., Prosser & Keeton on Torts 622-23); Prosser & Keeton on Torts § 87, at 623 ("The substantial interference requirement is to satisfy the need for a showing that the land is reduced in value because of the defendant's conduct."); *Saunders*, 1998 WL 42146, at *6 ("Such interference must be substantial and unreasonable.  It exists only upon a showing of damages-- that is, that the land is reduced in value because of the defendant's conduct.") (internal citations and quotations omitted); *Bower v. Weisman*, 639 F. Supp. 532, 542 (S.D.N.Y. 1986) ("[A]n action for private nuisance cannot be sustained without a showing of damages.").

Eleventh, this instruction omits the requirement that, in order to find a nuisance, the jury must find a violation of both federal and state standards.  *See* Defendants' Proposed Trespass Instructions Submitted July 13, 2004, Instruction Nos. 7-9; Defendants' Response to Plaintiffs' Brief on the Statute of Limitations, State Regulatory Standards, Ultrahazardous Liability, Spoliation, and Negligent Trespass, filed August 18, 2004; Defendants' Memorandum Regarding

71

Federal and Colorado Nuisance Law, filed October 15, 2004; Defendants' Report Concerning

Opinion Testimony Pertinent to Trial Issues, filed July 30, 1999. The authorities that have

considered this issue have held that a plaintiff must prove violations of federal standards to

prevail on a claim under the Price Anderson Act. *See also Roberts v. Fla. Power & Light Co.*,

146 F.3d 1305, 1308 (11th Cir. 1998); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090,

1105 (7th Cir. 1994); *In re TMI Litigation Cases Consol. II*, 940 F.2d 832, 859 (3d Cir. 1991);

*Good v. Fluor Daniel Corp.*, 222 F. Supp. 2d 1236, 1247 (E.D. Wash. 2002); *Gassie v. SMH*

*Swiss Corp. for Microelec. and Watchmaking Indus., Ltd.*, No. Civ. A. 97-3557, 1998 WL

158737, at *4 (E.D. La. Mar. 26, 1998); *Boggs v. Divested Atomic Corp.*, No. C-2-90-840, 1997

WL 33377790, at *3 (S.D. Ohio Mar. 24, 1997); *Corcoran v. New York Power Auth.*, 935 F.

Supp. 376, 386 (S.D.N.Y. 1996); *Bohrmann v. Maine Yankee Atomic Power Co.*, 926 F. Supp.

211, 220 (D. Me. 1996); *McLandrich v. S. California Edison Co.*, 942 F. Supp. 457, 465 (S.D.

Cal. 1996); *Lamb v. Martin Marietta Energy Sys.*, 835 F. Supp. 959, 965 (W.D. Ky. 1993);

Atomic Energy Commission Manual Chapter 0524, Issued August 12, 1963 (DX0351); DOE

Order 5480.1 (Tab 10, App. B to Defs. Brs. in Supp. of Their Mots. for Summ. J. Based on

Expert Disc.); DOE Order 5480.1A (Tab 11, App. B to Defs. Brs. in Supp. of Their Mots. for

Summ. J. Based on Expert Disc.); DOE Interim Standard for DOE Environmental Activities For

All Exposure Pathways, Issued August 5, 1985 (Tab 12, App. B to Defs. Brs. in Supp. of Their

Mots. for Summ. J. Based on Expert Disc.).

Twelfth, defendants object to the instruction to the extent that it allows for plaintiffs'

nuisance claims to be tried on a class-wide basis, for the reasons set forth in Defendants'

72

Response to Plaintiffs' Statement Regarding Alleged Forms of Interference With Use and Enjoyment, filed November 30, 2004.

For all of the foregoing reasons, defendants object to this instruction and to the instructions generally to the extent that they do not incorporate defendants' proposed nuisance instructions, including without limitation Defendants' Proposed Trespass Instructions submitted July 13, 2004; Defendants' Revised Proposed Trespass Jury Instructions and Jury Verdict Forms, filed August 6, 2004; Defendants' Proposed Supplemental Jury Instructions and Jury Verdict Form, filed September 16, 2005; Defendants' Proposed Limiting and Supplemental Jury Instructions, filed September 23, 2005; and Defendants' Proposed Changes to Preliminary Jury Instructions, filed January 10, 2006.

## INSTRUCTION NO. 3.7

Nuisance Claim

First Element:  Interference with Use and Enjoyment of Property

The purpose of a nuisance claim is to protect a landowner's right to use and enjoy his

property.  Although there are countless ways that a person or company can interfere with this

right, for purposes of deciding the first element of the Plaintiff Class' nuisance claim, you may

only consider the two possible forms of interference with Class members' use and enjoyment of

their property that I stated in Instruction No. 3.6 and will describe further here.

The first possible form of class-wide interference is whether one or both of Defendants'

activities at Rocky Flats interfered with Class members' use and enjoyment of their properties by

causing Class members to be exposed to plutonium and placing them at some increased risk of

health problems as a result of this exposure.  To find that Plaintiffs proved this form of

interference, you do not need to find that all Class members were exposed to plutonium at the

same time or by the same methods or to the same degree or that they all incurred the same level

of health risk as a result of exposure to plutonium.  It is enough to find for purposes of this form

of interference with use and enjoyment of property that all the Class members were exposed to

plutonium in some way as a result of one or both Defendants' activities and incurred some

increment of increased health risk as a result.

There may be some nonresident Class members - that is, Class members who owned

property within the Class Area but without living there.  If you find that occupancy of their

properties would have resulted in exposure to plutonium in some way, causing some increment

of increased health risk, as a result of one or both Defendants' activities, then you should find

that these Class members too suffered an interference with the use and enjoyment of their properties.

The second possible form of interference you must consider in deciding this first element of the Plaintiff Class' nuisance claim is whether one or both of Defendants' activities at Rocky Flats interfered with Class members' use and enjoyment of their properties by creating objective conditions that pose a demonstrable risk of future harm to the Class Area. For example, if plutonium or other hazardous substances present on or in the vicinity of Rocky Flats is at risk of being released to the Class Area – through natural forces, cleanup activity, the conduct of others and/or accidents – and could cause harm to properties in the Class Area by increasing the health risk to residents or impairing the future use of their land in some way, then this would be an objective condition that poses a demonstrable risk of future harm to the Class Area.

In order for you to find interference based on the threat or risk of future harm, you also need not find that the future harm *will* occur and affect the whole of the Class Area. You need only find that conditions exist that present the *potential* for such class-wide harm to occur.

You need not find that all Class members were subject to the same form of interference with use and enjoyment of their properties. It is enough if you find the Class members were all subject to at least one form of interference described in this instruction, even if some Class members were subject only to the first form of interference, others only to the second, and still others to both.

In deciding whether either or both forms of possible class-wide interference exists, you should not consider whether individual Plaintiffs or Class members are or might be fearful, anxious or otherwise disturbed by any real or perceived risks relating to Rocky Flats and the

75

Defendants' activities there or the conditions they left behind.  Individual reactions to these matters are not relevant to the question of whether a class-wide interference exists.

You also should not consider in deciding this element of the nuisance claim whether Defendants' activities caused any decrease in the value of Class members' properties.  The law does not consider a decrease in property value to be an interference with the use and enjoyment of property.

If you find that Plaintiffs have proved either Dow or Rockwell or both of them interfered with Class members' use and enjoyment of property in one or both of the ways I described in Instruction No. 3.6 and in this instruction, then you must find that Plaintiffs have proved the first element of their nuisance claim with respect to the Defendant or Defendants who caused or contributed to the proven interference.  If, however, you find that neither Defendant interfered with Class members' use and enjoyment of property in at least one of these ways, then you must find Plaintiffs have not proved this element of their nuisance claim against either Defendant.

**Defendants' Objections:**

Defendants' objections to this instruction include the following:

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, defendants object on the ground that the instruction does not make clear that the interference must apply to *all* class members.  This is a trial of the class claim and no individual claims are being tried.  *See*, *e.g.*, 5/17/04 Order at 3)  If plaintiffs do not prove their claims for the class as a whole, then no class member may recover.  (*See*, *e.g.*, 28 U.S.C. § 2072 (class

76

action device cannot be used to "abridge, enlarge or modify any substantive right" of any litigant); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

Third, defendants object to the instruction that plaintiffs may prove a health risk by proving that defendants caused "[c]lass members to be exposed to plutonium and plac[ed] them at some increased risk of health problems as a result of this exposure." There is no Colorado authority for the proposition that a health risk can give rise to a nuisance claim. Other states have properly rejected claims in the absence of proof of a physical injury. *See, e.g., Metro-North* at 521 U.S. at 428. Even if there were Colorado authority to support the proposition that a health risk is actionable, the standard would not be whether there is "some increased risk," but rather (at the very minimum) whether the risk is "more likely than not." *See Boryla,* 937 P.2d at 816-17 (Colo. Ct. App. 1996) ("[the plaintiff] cannot recover damages for an increased risk of cancer recurrence because she failed to prove to a reasonable medical probability that the future harm was more likely than not to occur"), *rev'd on other grounds*, 960 P.2d 123 (Colo. 1998); *Potter*, 863 P.2d at 801 (Cal. 1993) ("[A] plaintiff should be allowed to recover without having to show knowledge that it is more likely than not that the feared cancer will occur"); *see also Boryla*, 937 P.2d at 128-29 (policy rationales announced in *Potter* are "relevant in a toxic tort case").

Fourth, because a nuisance requires a substantial and unreasonable interference with the use and enjoyment of property, the standard should at the very least be a "substantial health risk." *See Van Wyk*, 27 P.3d at 395 (Colo. 2001).

Fifth, defendants object to the instruction that plaintiffs can establish a nuisance by proving "objective conditions that pose a demonstrable risk of future harm to the Class Area." In

order to prove a nuisance, plaintiffs must do more than show a "future risk." *See*, *e.g.*, 42 U.S.C.

§ 2014 (requiring that a public liability action assert liability "arising out of or resulting from a

nuclear incident," which is further defined as an "occurrence"); *see also Adams-Arapahoe* 959

F.2d 868 (10th Cir. 1992) ("find[ing] nothing . . . which supports the notion that tort liability may

be premised on the mere risk of harm") (applying Colorado law of negligence, which is

plaintiff's only apparent nuisance theory); *Van Wyk*, 27 P.3d at 391 (defining theory of nuisance

predicated on invasion that is "unintentional and otherwise actionable under the rules for

negligent or reckless conduct").

Even if a future risk were actionable, plaintiffs cannot show that it is class-wide.  As of

today, at most 5,000 class members (defined as individuals who owned property in a certain

geographical area as of June 7, 1989) live in the class.  Thus, any "objective conditions that pose

a demonstrable risk of future harm to the Class Area" cannot give rise to a class-wide harm, and

thus should be part of a class-wide trial.

Sixth, if plaintiffs are allowed to recover based on a future risk, than the standard is not

whether defendants "conditions exist that present the potential" for future harm.  Rather, under

Colorado law, the standard would be whether the risk is "more likely than not" to materialize –

not whether there is a "potential" for the risk to occur. *See Boryla,* 937 P.2d at 816-17 ("[the

plaintiff] cannot recover damages for an increased risk of cancer recurrence because she failed to

prove to a reasonable medical probability that the future harm was more likely than not to

occur"); *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 801 (Cal. 1993) ("[A] plaintiff

should be allowed to recover without having to show knowledge that it is more likely than not

78

that the feared cancer will occur"); *see also Boryla*, 937 P.2d at 128-29 (policy rationales announced in *Potter* are "relevant in a toxic tort case").

Seventh, plaintiffs have presented no evidence of any future risk based on any substance other than plutonium. Nor have plaintiffs presented evidence of any future risk other than a health risk. Thus, the future risk instruction should be limited to future health risks attributable to plutonium, rather than "plutonium or other substances" resulting in an increased health risk or "impairing the future use of their land in some way."

Eighth, under Section 930, any future risk claim must be based on the continuing operations of the Rocky Flats Plant. In order for the nuisance to be "continuing" within the meaning of Section 930, the following conditions must be met: (1) the defendant's ***operational*** activities which give rise to the nuisance must be continuing; (2) the defendant's intent to cause a class-wide nuisance must be continuing; and (3) the health risk resulting from the nuisance must be continuing. *See* Restatement (Second) of Torts § 930 ("(1) If one causes continuing or recurrent tortious invasions on the land of another by the maintenance of a structure or acts or operations not on the land of the other . . .") (emphasis added); Restatement (Second) of Torts § 930, cmt. d ("Manifestly, this element of depreciation is distinct from the loss in value brought by the actual effects of past invasions (see Comment on § 929) such as damage by floods to the soil's fertility."); Restatement (Second) of Torts §  929, cmt. a (Section 929 (and not Section 930) applies where "future losses are not contingent upon the continuance in the future of the defendant's wrongdoing, and hence the result follows regardless of whether the owner can recover in advance for the prospective harm of future operations of the cement plant. This is a distinct question that is dealt with in § 930") (emphasis added).

Ninth, Section 930 is inapplicable to nuisance claims, because Section 930 requires the presence of an "invasion."

Tenth, this instruction omits the requirement that, in order to find a nuisance, the jury must find, among other things, that the plaintiff has proved, by a preponderance of the evidence, that the interference has caused a reduction in the value of the property. *See Van Wyk*, 27 P.3d at 392 ("[T]he interference complained of by the Van Wyks must be a substantial invasion interfering with the use and enjoyment of the land, and reducing the value of the land.") (citing W. Page Keeton et al., Prosser & Keeton on Torts 622-23); Prosser & Keeton on Torts § 87, at 623 ("The substantial interference requirement is to satisfy the need for a showing that the land is reduced in value because of the defendant's conduct."); *Saunders*, 1998 WL 42146, at *6 ("Such interference must be substantial and unreasonable.  It exists only upon a showing of damages-- that is, that the land is reduced in value because of the defendant's conduct.") (internal citations and quotations omitted); *Bower*, 639 F. Supp. at 542 ("[A]n action for private nuisance cannot be sustained without a showing of damages.").

Eleventh, defendants object to the instruction that "[t]o find that Plaintiffs proved this form of interference, you do not need to find that all Class members were exposed to plutonium at the same time or by the same methods or to the same degree or that they all incurred the same level of health risk as a result of exposure to plutonium.  It is enough to find for purposes of this form of interference with use and enjoyment of property that all Class members were exposed to plutonium in some way as a result of one or both Defendants' activities . . . ."  Because this is a class trial, plaintiffs may only recover for ***classwide*** harms based on ***classwide*** evidence. *See Blades v. Monsanto Co.*, 400 F.3d 562, 571 (8th Cir. 2005) (class certification inappropriate

80

where "not every member of the proposed classes can prove with common evidence that they suffered impact from the alleged conspiracy"); *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003) ("fact of damage cannot be established for every class member through proof common to the class, the need to establish [] liability for individual class members defeats Rule 23(b)(3) predominance."); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 188 (3d Cir. 2001) ("Proof of injury (whether or not an injury occurred at all) must be distinguished from calculation of damages (which determines the actual value of the injury)."); *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 344-45 (4th Cir. 1998); *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 142 (D.N.J. 2002), aff'd 84 Fed. Appx. 257 (3d Cir. 2004) ("Plaintiff must establish that each class member has, in fact, been injured by the alleged conduct.") (emphasis added); *Glitronix Corp. v. AT&T Co.*, 603 F. Supp. 552, 586 (D.N.J. 1984) (plaintiffs must demonstrate that "fact of injury can be proved for the entire class by common evidence").

Twelfth, defendants object to this instruction to the extent that it allows recovery for ***any*** future risk caused by "natural forces, cleanup activity, the conduct of others and/or accidents." At best, defendants can only be held responsible for such future contamination to the extent that plaintiffs have satisfied the applicable requirements relating to foreseeability, proximate cause, and intervening cause.

Thirteenth, defendants object to this instruction to the extent it allows plaintiffs to "mix and match" interferences (past health risk and future risks) to arrive at classwide harm. The class may only recover to the extent that plaintiffs can establish liability for all class members based on common injuries and common evidence. *See, e.g., Broussard* 155 F.3d at 344-45.

81

## INSTRUCTION NO. 3.8

Nuisance Claim

Second Element:  "Substantial" and "Unreasonable" Interference - Introduction

Practically all human activities interfere to some extent with other people or involve some risk of interference.  One such possible interference is with another person's right to use and enjoy his property.  The law of nuisance does not attempt to hold an actor liable for all interferences with this right, but rather only for those interferences that are both "substantial" and "unreasonable."  That is why this is an element of Plaintiffs' nuisance claim.  The definitions of these terms are set out in Instruction Nos. 3.9 and 3.10.

In deciding whether Plaintiffs have proven that the interference they claim is substantial and unreasonable, you may only consider any interference with Class members' use and enjoyment of property you find based on Instruction Nos. 3.6 and 3.7.  Thus, if you find Plaintiffs proved that Dow and/or Rockwell interfered with Class members' use and enjoyment of property in only one of the ways stated in these instructions, you may only consider this proven form of interference in deciding whether Plaintiffs have proved a substantial and unreasonable interference.  If, however, you find Plaintiffs proved that Dow and/or Rockwell interfered with Class members' use and enjoyment of property in both of the ways stated in these instructions, you should consider these two forms of interference together to decide whether the total interference caused by each Defendant was substantial and unreasonable.

**Defendants' Objections:**

Defendants' objections to this instruction include the following:

82

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, defendants object to this instruction to the extent that it does not require class-wide proof. This is a trial of the class claim and no individual claims are being tried. *See, e.g.,* 5/17/04 Order, at 3. If plaintiffs do not prove their claims for the class as a whole, then no class member may recover. *See, e.g.,* 28 U.S.C. § 2072 (class action device cannot be used to "abridge, enlarge or modify any substantive right" of any litigant); *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 845 (1999); *Amchem Products Inc. v. Windsor,* 521 U.S. 591, 613 (1997). Accordingly, the last sentence should refer to "all class members' use and enjoyment of property, rather than "class members' use and enjoyment of property."

Third, because this is class trial, in determining whether the interference is substantial and unreasonable, the jury may not "mix and match" different quantities of interferences that may exist among different class members to arrive at a classwide interference that is "substantial and unreasonable for the class overall" (*i.e.,* the jury should not be allowed to conclude that because class member "a" has interference "x" that is 30% of "substantial and unreasonable" and interference "y" that is 70% of substantial and unreasonable," class member "a" has interference "x" that is 70% of "substantial and unreasonable" and interference "y" that is 30% of substantial and unreasonable," that the interference is "substantial and unreasonable" for the class of "a/b" as a whole). Rather, plaintiffs may only recover for ***classwide*** harms that are substantial and unreasonable for each class member. based on ***classwide*** evidence. *See Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 344-45 (4th Cir. 1998); *Bell Atl. Corp. v. AT&T Corp.,* 339 F.3d 294, 302 (5th Cir. 2003) ("fact of damage cannot be established for every class

83

member through proof common to the class, the need to establish [] liability for individual class members defeats Rule 23(b)(3) predominance."); *Blades v. Monsanto Co.*, 400 F.3d 562, 571 (8th Cir. 2005) (class certification inappropriate where "not every member of the proposed classes can prove with common evidence that they suffered impact from the alleged conspiracy"); *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 142 (D.N.J. 2002), aff'd 84 Fed. Appx. 257 (3d Cir. 2004) ("Plaintiff must establish that each class member has, in fact, been injured by the alleged conduct.") (emphasis added); *Glitronix Corp. v. AT&T Co.*, 603 F. Supp. 552, 586 (D.N.J. 1984) (plaintiffs must demonstrate that "fact of injury can be proved for the entire class by common evidence"); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 188 (3d Cir. 2001) ("Proof of injury (whether or not an injury occurred at all) must be distinguished from calculation of damages (which determines the actual value of the injury).") Thus, the jury should not be instructed that if "Plaintiffs proved that Dow and/or Rockwell interfered Class members' use and enjoyment of property in both of the ways stated in these instructions, you should consider these two forms of interference together to decide whether the total interference caused by each Defendant was substantial and unreasonable."

## INSTRUCTION NO. 3.9

Nuisance Claim

### Second Element:  "Substantial" Interference - Defined

An interference with a person's right to use and enjoy their land is "substantial" if the interference is significant enough that a normal person in the community would find it offensive, annoying or inconvenient.  In this case, that means you must determine whether a reasonable landowner of normal sensibilities would find the proven interference caused by Dow or Rockwell to be offensive, annoying or inconvenient.  "Normal sensibilities" for these purposes means a person who is neither unusually sensitive nor unusually insensitive to the interference you are considering.

In deciding whether any interference proven by Plaintiffs is substantial under this test, you must consider only the magnitude or level of interference that is common to the Class as a whole, and not any more severe level of interference that may have been suffered by some class members by not by others.

Evidence that the value of Class members' properties has diminished because of any interference proven by Plaintiffs is evidence that the interference is substantial under the test stated in this instruction.  This is so because normal members of the community are part of the market that determines the value of properties, and if they consider an interference with the use and enjoyment of these properties to be offensive, annoying or inconvenient, they may place a lower value on the property than they would if the interference did not exist.  Evidence that Class Properties have a lower value because of any proven interference is not necessary, however, for you to find that the interference is substantial under the test I just described to you.

85

**Defendants' Objections**

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, defendants object to this instruction to the extent that it does not require class-wide proof. This is a trial of the class claim and no individual claims are being tried. *See, e.g.,* 5/17/04 Order, at 3. If plaintiffs do not prove their claims for the class as a whole, then no class member may recover. *See, e.g.,* 28 U.S.C. § 2072 (class action device cannot be used to "abridge, enlarge or modify any substantive right" of any litigant); *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 845 (1999); *Amchem Products Inc. v. Windsor,* 521 U.S. 591, 613 (1997). Thus, the instruction should contain the following language, as proposed in Defendants' Proposed Changes to Preliminary Jury Instructions filed January 10, 2006: "In deciding whether any interference proven by Plaintiffs is substantial under this test, you must consider only harm that is common to the class as a whole, and not any more severe harm that may have been suffered by some Class members but not by others."

Third, defendants object to the following language: "the interference is significant enough that a normal person in the community would find it offensive, annoying or inconvenient." In order to give rise to liability, an interference must be far more than "offensive, annoying, or inconvenient." Instead, as this Court recognized in *Cook* IX, the interference must be "definitely offensive, seriously annoying, or intolerable." *Cook v. Rockwell Int'l Corp.,* 273 F.Supp.2d 1175, 1203-04 (D. Colo. 2003). As the Court explained: "Section 821F of the Restatement and its supporting commentary, relied upon by the Colorado Supreme Court in Van

86

Wyk, states that a significant invasion of another's interest in the use and enjoyment of property exists '[i]f normal persons living in the community would regard the invasion in question as definitely offensive, seriously annoying or intolerable." *Cook v. Rockwell Int'l Corp.*, 273 F.Supp.2d 1175, 1203-04 (D. Colo. 2003).

Fourth, contrary to what the instruction states, evidence that Class Properties have a lower value because of any proven interference *is* necessary "to find that the interference is substantial." In order to find a nuisance, the jury must find, among other things, that the plaintiff has proved, by a preponderance of the evidence, that the interference has caused a reduction in the value of the property. *See Pub. Serv. Co. v. Van Wyk*, 27 P.3d 377, 392 (Colo. 2001) ("[T]he interference complained of by the Van Wyks must be a substantial invasion interfering with the use and enjoyment of the land, and reducing the value of the land.") (citing W. Page Keeton et al., Prosser & Keeton on Torts 622-23); Prosser & Keeton on Torts § 87, at 623 ("The substantial interference requirement is to satisfy the need for a showing that the land is reduced in value because of the defendant's conduct."); *Saunders v. Hilperthauser*, 1998 WL 42146, at *6 (S.D.N.Y. 1998) ("Such interference must be substantial and unreasonable. It exists only upon a showing of damages--that is, that the land is reduced in value because of the defendant's conduct.") (internal citations and quotations omitted); *Bower v. Weisman*, 639 F. Supp. 532, 542 (S.D.N.Y. 1986) ("[A]n action for private nuisance cannot be sustained without a showing of damages.").

Fifth, the test for whether a nuisance is actionable is not only whether it would offend a landowner of normal sensibilities, but whether it would offend both a landowner of normal sensibilities and the plaintiff (here, the class members). *See* April 14, 2004 Order at 8 (cause of

87

action for nuisance may exist where, inter alia, interference was "capable of causing class members to suffer fear, anxiety or discomfort" and "did cause such an interference with class' members use and enjoyment of their property (an individual question)"); *Cook v. Rockwell Int'l Corp.*, 273 F. Supp.2d 1175,1201 (D. Colo. 2003) (citing Restatement (Second of Torts § 821F in connection with elements of nuisance claim); Restatement (Second) of Torts § 821F cmt. d (deaf man may bring an action for nuisance, but only to remedy the interference he has individually suffered, such as the enjoyment of entertaining guests); *Adkins v. Thomas Solvent Co.*, 487 N.W.2d 715, 721 n.13 (Mich. 1992) ("The deafness of the plaintiff does not prevent the existence of genuine interference, i.e., the enjoyment of entertaining guests. The Restatement does not suggest that absent an interference with the use and enjoyment of land, the deaf person could recover on the basis that hearing persons would not pay as much for his house."). Accordingly, the interference must be definitely offensively, seriously annoying or intolerable not only for a person with "normal sensibilities" (as the instruction states), but for all class members.

Sixth, defendants object to the phrase regarding the "proven interference caused by Dow or Rockwell" on the ground that it suggests that an interference has been proven.

## INSTRUCTION NO. 3.10

Nuisance Claim

Second Element: "Unreasonable" Interference - Balancing Test

In an action for damages, such as this case, an interference with a person's right to use and enjoy their land is "unreasonable" if the gravity of the harm outweighs the utility of the conduct that caused it. Accordingly, to determine whether a proven interference is unreasonable in this case, you must consider and balance the gravity of the harm to Class members against the utility of the Dow and Rockwell's conduct at Rocky Flats and determine whether the gravity of this harm outweighs the utility of this conduct.

I will tell you more about this balancing test in my next instructions, but I want to caution you now that it does not mean that Dow and Rockwell can interfere with Class members' use and enjoyment of their properties as long as their activities at Rocky Flats served an important purpose or these activities are deemed more valuable or profitable than Class members' use of their land. Instead, you must consider a number of factors as part of the balancing test to decide whether any interference Defendants caused was unreasonable. I will describe those factors for you in a moment. (See Instruction Nos. 3.11 and 3.12.)

In considering these factors and deciding whether any interference by Dow or Rockwell was unreasonable, you must also use an objective perspective. In other words, the question is now how Plaintiffs, Class members or the Defendants would consider the gravity of the harm or the utility of Defendants' conduct, or the judgment they would make about whether any proven interference is unreasonable. Instead, the question is whether reasonable persons generally,

89

looking at the whole situation impartially and objectively, would consider the interference to be unreasonable.

### Defendants' Objections:

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, the second paragraph of this instruction is unnecessary argument. The jury should be informed of the balancing test that applies under Colorado law for determining whether an interference is "unreasonable." There is no reason to inform the jury what the balancing test is not. For example, there is no need to inform the jury that the nuisance is not unreasonable just because (hypothetically) the class members' activities were more valuable than defendants' activities. Moreover, the second paragraph as currently worded may give jurors the misimpression that the economic and national security value of Rocky Flats is irrelevant to the question of whether the interference is unreasonable.

Third, the test for whether a nuisance is actionable is not only whether it would offend "reasonable persons," but whether it would offend both "reasonable persons" and the plaintiff (here, the class members). *See* April 14, 2004 Order at 8 (cause of action for nuisance may exist where, inter alia, interference was "capable of causing class members to suffer fear, anxiety or discomfort" and "did cause such an interference with class' members use and enjoyment of their property (an individual question)"); *Cook v. Rockwell Int'l Corp.*, 273 F. Supp.2d 1175,1201 (D. Colo. 2003) (citing Restatement (Second of Torts § 821F in connection with elements of nuisance claim); Restatement (Second) of Torts § 821F cmt. d (deaf man may bring an action for

nuisance, but only to remedy the interference he has individually suffered, such as the enjoyment

of entertaining guests); *Adkins v. Thomas Solvent Co.*, 487 N.W.2d 715, 721 n.13 (Mich. 1992)

("The deafness of the plaintiff does not prevent the existence of genuine interference, i.e., the

enjoyment of entertaining guests.  The Restatement does not suggest that absent an interference

with the use and enjoyment of land, the deaf person could recover on the basis that hearing

persons would not pay as much for his house.").

### INSTRUCTION NO. 3.11

Nuisance Claim

Second Element:  Unreasonable Interference:  Factors Regarding Gravity of the Harm

The gravity of the harm refers to the gravity of the proven interference with Class members' use and enjoyment of their property.  The factors you should consider in assessing the gravity of this harm are:

1.     The extent of the harm involved.

The extent of the harm depends on both the degree of the harm and its duration. You can consider both harm that has actually been incurred and the risk of future harm.  In assessing the extent of the harm, you must also consider only harm that is common to the class as a whole, and not any more severe harm that may have been suffered by some Class members but not by others.

2.     The character of the harm involved.

This factor refers to the kind of harm suffered by the Class members.

3.     The social value of the type of use or enjoyment of property that has been harmed. This factor considers the social value of the use to which the Class members' lands are being put.  The social value of a particular type of use depends on the extent to which the use or uses advances or protects the general public good.

4.     The suitability of the particular use or enjoyment harmed to the character of the locality. This factor considers whether the particular use or enjoyment the Class members make of their land in the Class Area is suitable to this area.

5.     The burden on the Class members of avoiding the harm.

This factor is considered when it is possible for the landowner to take some action to avoid the harm.

**Defendants' Objections:**

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, defendants object to the phrases "the gravity of the proven interference" and "the kind of harm suffered by class members" in that they assume that a harm has been proved.

Third, to the extent that the Restatement standard is the proper one to apply, defendants object to this instruction to the extent that it deviates from the language of Restatement Section 827.

Fourth, defendants object to this instruction to the extent that it applies not only to any intentional nuisance proved by plaintiffs, but also to any negligent nuisance proven by plaintiffs. The Restatement balancing test (utility versus harm) applies only to "intentional" conduct. *See* Restatement (Second) of Torts Section 826 ("An ***intentional*** invasion of another's interest in the use and enjoyment of land is unreasonable if (a) the gravity of the harm outweighs the utility of the actor's conduct, or (b) the harm caused by the conduct is serious and the financial burden of compensating for this and similar harm to others would not make the continuation of the conduct not feasible.") (emphasis added). Here, however, the jury could find that defendants committed a negligent nuisance, under which circumstances the balancing test would be inapplicable.

Fifth, defendants object to this Plaintiffs' Proposed Nuisance Instruction No. 13 because it is inconsistent with federal nuclear regulations, and is thus preempted by the Price Anderson Act. *See* 42 U.S.C. § 2014 (preempting state law to the extent that "such law is inconsistent" with the Price Anderson Act); *see also Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1308 (11th Cir. 1998) (plaintiffs must prove violation of federal nuclear safety standards to prevail on Price Andersen claims); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1105 (7th Cir. 1994) (same); *In re TMI Litigation Cases Consol. II*, 940 F.2d 832, 859 (3d Cir. 1991) (same).

## INSTRUCTION NO. 3.12

Nuisance Claim

Second Element:  Unreasonable Interference:  Factors Regarding Utility of the Conduct

There are also certain factors you must consider in assessing the utility of the conduct
that caused the harm, that is, any proven interference.  Some of these factors focus directly on the
conduct causing the harm, while other factors focus on any actions Dow or Rockwell have taken
to avoid or compensate others for any interference they caused.

The factors focusing on the conduct causing the harm include:

1.  The social value of the primary purpose of this conduct.

It is undisputed that the primary purpose of the conduct that allegedly interfered
with Class members' right to use and enjoy their properties was to manufacture
nuclear weapons components.  The social value of this purpose depends on the
extent to which it advanced or protected the general public good.  The parties
agree that the manufacture of nuclear weapons at Rocky Flats, as a general matter,
advanced the public good by protecting national security.

2.  The suitability of the conduct to the character of the locality.

This factor considers whether the Defendants' conduct is suitable to the area in
which it occurred.

In evaluating the utility of the conduct causing the harm, you must also consider whether
and to what extent the actor causing the harm took steps to address the consequences of its
conduct.  Thus, you must consider the following factors focusing on any actions Dow or
Rockwell have taken to avoid or compensate others for any interference they caused:

95

3.     The impracticability of preventing or avoiding the interference.

If it was practicable for Dow or Rockwell to avoid causing any interference with Class members' use and enjoyment of property, and they did not take the necessary measures to do so, then the law considers their conduct to have no utility, regardless of its social value. Any interference caused by Dow and/or Rockwell was practicably avoidable if by some means the company could have substantially reduced the harm without incurring prohibitive expense or hardship in its operation of Rocky Flats. If you find it was practicable for Dow or Rockwell to avoid any harm they caused under this test, then you must find the gravity of the harm outweighed the utility of Dow or Rockwell's conduct, and that any interference proved by Plaintiffs was unreasonable.

4.     The financial burden to compensate others for any interference caused by Dow and/or Rockwell's activities.

A nuisance action for damages seeks to place the financial burden for any interference with the use and enjoyment of property on the actor that caused this harm. The financial burden of this cost is therefore a significant factor in determining whether the conduct of causing the harm without paying for it is unreasonable. You may find that Dow or Rockwell's conduct lacks sufficient utility to outweigh any interference it caused if you find it would be unreasonable for Class members to bear this cost without compensation.

**Defendants' Objections:**

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, defendants object to the description of the second factor: "This factor considers whether the Defendants' conduct is suitable to the area in which it occurred."  Restatement Section 828 considers "the primary purpose" of defendants' conduct, not the allegedly tortious aspects of defendants' conduct as this instruction implies, and the instruction should be revised accordingly, to reflect defendants' Proposed Instruction No. 3.12, submitted January 10, 2006 with Defendants' Proposed Changes to Preliminary Jury Instructions.  *See* Restatement (Second) of Torts Section 828 (a) (relevant consideration is "the social value that the law attaches to the primary purpose of the conduct").

Fourth, defendants object to the third and fourth factors in this instruction to the extent that they apply not only to intentional nuisance, but also to negligent nuisance.  As Restatement Section 828 makes clear, these factors apply only if the defendant's conduct was "intentional." *See* Restatement Section 828, cmt. h ("h. Impracticability of preventing or avoiding the invasion. *When a person knows that his conduct will interfere* with another's use or enjoyment of land and it would be practicable for him to prevent or avoid part or all of the interference and still achieve his purpose, his conduct lacks utility if he fails to take the necessary measures to avoid it.") (emphasis added); *see also* Restatement Section 826 ("An *intentional* invasion of another's interest in the use and enjoyment of land is unreasonable if  (a) the gravity of the harm outweighs the utility of the actor's conduct, or  (b) *the harm caused by the conduct is serious and the financial burden of compensating for this and similar harm to others would not make the*

97

*continuation of the conduct not feasible*.") (emphasis added)  Here, however, the jury could find defendants liable for negligent nuisance, in which case these factors should not apply.

Fifth, defendants object to the fourth factor in the instruction: "the financial burden to compensate others."  Under the plain language of Restatement Section 826, the jury should be instructed on "the financial burden to compensate others" only if it first determines that the "harm" is "serious." *Id.* Moreover, the test is not whether it is reasonable for the plaintiff to bear the financial burden of the harm, but whether it is reasonable for the defendant to bear the financial burden of the harm. *See* Restatement (Second) of Torts § 826 cmt. f ("The extent of the burden of compensating may also affect the determination of what persons can recover.").  Thus, the instruction as written is one-sided and unfair.

Sixth, defendants object to this instruction to the extent that it omits the consideration that, if it would have been necessary to cease operation of Rocky Flats in order to avoid any harm to class members, then the invasion is not practically avoidable. *See* Restatement Section 828, cmt. h ("But if he would have to abandon his activity or incur expense or hardship of such magnitude that it would be considerably less profitable to continue, in order to reduce the harm materially, the invasion is not practicably avoidable.")

Seventh, assuming arguendo that Restatement Section 828 were to apply, defendants object to this instruction to the extent that it is inconsistent with the actual language of that Section of the Restatement.

Eighth, the third factor in this instruction, which is based on Restatement (Second) of Torts § 830, is a question of law that should not be submitted to the jury. *See Kopecky v. Nat'l Farms, Inc.*, 510 N.W.2d 41, 48 (Neb. 1994) ("[W]hether the facts of a particular case fit within

98

one of the rules contained in § § 829 through 831 is a question of law and, as such, must be decided by the court. The jury, therefore, should not have been instructed as it was according to §§ 829A and 830."). In any event, plaintiffs here have not made even a partial class-wide showing that it would have been practicable for either defendant to avoid the alleged "harm" in whole or in part without undue hardship.

Ninth, the third factor in this instruction omits Restatement Section 830's requirement that the harm be "significant" before an interference may be found to be "unreasonable" under Section 830. *See* Restatement Second of Torts § 830 ("An intentional invasion of another's interest in the use and enjoyment of land is unreasonable if the harm is significant and it would be practicable for the actor to avoid the harm in whole or in part without undue hardship.") (emphasis added).

Tenth, defendants object to the statement in the instruction that "a nuisance action for damages seeks to place the financial burden for *any* interference with the use and enjoyment of property on the actor that caused this harm." The statement is incorrect in several respects. As an initial matter, to prove a nuisance claim, a plaintiff must prove a "substantial and unreasonable" interference, not "any interference." The correct statement is that "a nuisance action places the financial burden on the defendant *if* the interference is substantial and unreasonable." Whether the interference is unreasonable, in turn, depends upon the factors set forth in this instruction. Thus, the instruction as written is circular: the juror is told to read the instruction in determining whether the nuisance is unreasonable, and the instruction says that the defendant should pay for nuisance *if* it is unreasonable.

Eleventh, this instruction is inconsistent with federal nuclear regulations, and is thus preempted by the Price Anderson Act. *See* 42 U.S.C. § 2014 (preempting state law to the extent that "such law is inconsistent" with the Price Anderson Act); *see also Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1308 (11th Cir. 1998) (plaintiffs must prove violation of federal nuclear safety standards to prevail on Price Andersen claims); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1105 (7th Cir. 1994) (same); *In re TMI Litigation Cases Consol. II*, 940 F.2d 832, 859 (3d Cir. 1991) (same).

Twelfth, the uncontroverted evidence presented at trial has established that defendants Dow or Rockwell were required to act in a manner consistent with their obligations to the Department of Energy. The jury instructions should not suggest that Dow or Rockwell may be held liable for nuisance even if they were acting in accordance with those obligations. Thus, defendants object to this instruction to the extent that it is modified to state that an interference was practically avoidable by Dow and Rockwell only if defendants could have done so "consistent with their obligations to the Department of Energy" (as set forth in Defendants' Proposed Instruction No. 3.12 submitted January 10, 2006).

INSTRUCTION NO. 3.13

Nuisance Claim

Third Element:  "Intentional" or "Negligent" Conduct

As stated in Instruction No. 3.6, the third element Plaintiffs must prove to prevail on their nuisance claim is that the activity or activities causing the unreasonable and substantial interference were either "intentional" (see Instruction No. 3.14) or "negligent" (see Instruction No. 3.15).  Thus, Plaintiff must do more than show that the existence of Rocky Flats interfered with Class members' use and enjoyment of their properties.  They must show that either Defendant or both of them engaged in intentional or negligent conduct at Rocky Flats that caused such an interference.

You do not need to find that all of the conduct that caused any substantial and unreasonable interference was intentional or that all of it was negligent in order to find that Plaintiffs proved this element of their nuisance claim.  Proof that a substantial and unreasonable interference resulted from a combination of intentional conduct and negligent conduct is sufficient to prove this element.

**Defendants' Objections:**

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, defendants object to the second paragraph of this instruction.  Under Colorado Supreme Court precedent, plaintiffs must prove either that defendants' conduct which allegedly gave rise to the substantial and unreasonable interference was intentional, or that defendants'

101

conduct was negligent. *See Public Service Co. of Colorado v. Van Wyk*, 27 P.3d 377, 382 (Colo. 2001). Plaintiffs may not "mix and match" among different claims. Nor may the class prevail by having different class members with different "mixes" of harms caused by intentional and negligent conduct. *See Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 344-45 (4th Cir. 1998); *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003) ("fact of damage cannot be established for every class member through proof common to the class, the need to establish [] liability for individual class members defeats Rule 23(b)(3) predominance."); *Blades v. Monsanto Co.*, 400 F.3d 562, 571 (8th Cir. 2005) (class certification inappropriate where "not every member of the proposed classes can prove with common evidence that they suffered impact from the alleged conspiracy"); *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 142 (D.N.J. 2002), aff'd 84 Fed. Appx. 257 (3d Cir. 2004) ("Plaintiff must establish that each class member has, in fact, been injured by the alleged conduct.") (emphasis added); *Glitronix Corp. v. AT&T Co.*, 603 F. Supp. 552, 586 (D.N.J. 1984) (plaintiffs must demonstrate that "fact of injury can be proved for the entire class by common evidence"); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 188 (3d Cir. 2001) ("Proof of injury (whether or not an injury occurred at all) must be distinguished from calculation of damages (which determines the actual value of the injury).") Thus, the jury should not be instructed that if "Plaintiffs proved that Dow and/or Rockwell interfered Class members' use and enjoyment of property in both of the ways stated in these instructions, you should consider these two forms of interference together to decide whether the total interference caused by each Defendant was substantial and unreasonable"