## INSTRUCTION NO. 3.14

Nuisance Claim

Third Element:  Definition of "Intentional" Conduct

The conduct that results in an interference with another's use and enjoyment of property is considered "intentional" if it meets any of the following three tests:

(1)     The defendant knew that its conduct would interfere with others' use and enjoyment of their property; or

(2)     The defendant knew it was substantially certain that its conduct would interfere with others' use and enjoyment of their property; or

(3)     The defendant learned that its conduct was interfering with or was substantially certain to interfere with others' use and enjoyment of their property and yet continued this conduct.

**Defendants' Objections:**

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, Plaintiffs waived any nuisance claim based on any of defendants' intentional conduct: "Plaintiffs will seek a jury instruction predicating strict liability for their nuisance claim on defendants' conduct of an abnormally dangerous activity at Rocky Flats.  Plaintiffs will also offer proof of liability on the nuisance claim through evidence of defendants' negligence." (Plaintiffs' 12/10/03 Status Report at 2.)

103

Third, as set forth in defendants' proposed instructions submitted on January 10, 2006, this instruction should be amended to make clear that plaintiffs' proof must apply to all class members. This is a trial of the class claim and no individual claims are being tried. *See, e.g.,* 5/17/04 Order, at 3. If plaintiffs do not prove their claims for the class as a whole, then no class member may recover. *See, e.g.,* U.S.C. § 2072 (class action device cannot be used to "abridge, enlarge or modify any substantive right" of any litigant); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999); *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

Fourth, paragraph (3) should include at the end the language "without regard to the invasion interfering with the use and enjoyment of all of the class members' property," as set forth in proposed instruction no. 3.14 of Defendants' Proposed Changes to Preliminary Jury Instructions. This language comes directly from the Colorado Supreme Court's decision in *Van Wyk*, which defines what constitutes an "intentional" trespass. *See Pub. Serv. Co. of Colorado v. Van Wyk*, 27 P.3d 377, 395 (Colo. 2001) ("[I]f a defendant, with notice that an invasion interfering with the use and enjoyment of the plaintiff's property has occurred, or is substantially certain to occur, continues his conduct ***without regard to the invasion interfering with the use and enjoyment of the plaintiff's property***, that defendant's conduct will be the proper basis for an intentional nuisance cause of action.") (emphasis added).

104

## INSTRUCTION NO. 3.15

### Nuisance Claim

### Third Element:  Definition of "Negligent" Conduct

The generation, use, storage and disposal of plutonium and other hazardous radioactive and non-radioactive substances as part of the operation of a nuclear weapons plant are inherently dangerous activities.  As a result, Dow and Rockwell were required to exercise the highest possible degree of skill, care, diligence, and foresight in conducting these activities, according to the best technical, mechanical and scientific knowledge and methods that were practical and available at the time.  If either Dow or Rockwell or both of them did not fulfill this duty when they performed any activities that caused or contributed to a substantial and unreasonable interference (as defined in these instructions), then their conduct was negligent.

**Defendants' Objections:**

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, defendants incorporate by reference their objection to an inherently dangerous activities instruction set forth in Defendants' Objections to Plaintiffs' Additional and Revised Jury Instructions, filed November 8, 2004.

Third, this instruction sets forth a standard of care that is inconsistent with federal nuclear regulations, and is thus preempted by the Price Anderson Act.  *See* 42 U.S.C. § 2014 (preempting state law to the extent that "such law is inconsistent" with the Price Anderson Act); *see also Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1308 (11th Cir. 1998) (plaintiffs

105

must prove violation of federal nuclear safety standards to prevail on Price Andersen claims); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1105 (7th Cir. 1994) (same); *In re TMI Litigation Cases Consol. II*, 940 F.2d 832, 859 (3d Cir. 1991) (same).

Fourth, plaintiffs have never made a showing of which activities at Rocky Flats, if any, are inherently dangerous. To prove that an activity is inherently dangerous such that the highest standard of care applies, a plaintiff must show that "all minds concur that the defendant is engaged in an activity that poses a high risk of injury to others that the court, as a matter of law, may instruct the jury to hold the defendant to the highest standard of care." *Imperial Distrib. Servs., Inc. v. Forrest*, 741 P.2d 1251, 1255 (Colo. 1987). Plaintiffs never even attempted to make this showing here, or to define the activity at issue.

Fifth, even if this Court were to find that some particular aspect of the operation of Rocky Flats constituted an inherently dangerous activity, plaintiffs have not shown that they have suffered any interference that is linked to a failure to exercise the highest degree of care in that activity. *See Kulik v. Pub. Serv. Co.*, 605 P.2d 475 (holding that instruction on heightened standard of care would be inappropriate where "[t]here was no evidence presented linking the accident to any breakdown or error in the" dangerous activity) (emphasis added).

Sixth, even if plaintiffs were to show that an inherently dangerous activity at Rocky Flats caused some "interference" to some of the class members, plaintiffs cannot show such interference-caused-by-an-inherently-dangerous-activity on a class-wide basis. Thus, this instruction is inappropriate for a class-wide trial.

106

Seventh, defendants object to this instruction to the extent that it is inconsistent with the Colorado pattern instruction regarding inherently dangerous activities. CJI-Civ. 9:7 (CLE ed. 2004) ("Negligence–Defined–Inherently Dangerous Activities").

Eighth, defendants object to this instruction to the extent that it does not include the element of foreseeability. Foreseeability is a requirement for claims based on the "heightened standard of care" for "inherently dangerous activities." *Walcott v. Total Petroleum, Inc.*, 964 P.2d 609, 612 (Colo. App. 1998) ("We therefore conclude that, whether analyzed under the rubric of duty or proximate cause, the risk that a purchaser would intentionally throw gasoline on a victim and set the victim on fire was not reasonably foreseeable. . . . The same result obtains even assuming, without deciding, that Total was subject to the heightened standard of care the supreme court prescribed in *Huddleston v. Union Rural Electric Ass'n*, 841 P.2d 282 (Colo.1992), for inherently dangerous activities.")

Ninth, the uncontroverted evidence presented at trial has established that defendants Dow or Rockwell were required to act in a manner consistent with their obligations to the Department of Energy. The jury instructions should not suggest that Dow or Rockwell may be held liable for nuisance even if they were acting in accordance with those obligations.

Tenth, the law does not permit defendants to be held to the highest "possible" degree of skill, care, diligence, and foresight. *Any* degree of care is "possible," and it is incorrect to hold defendants to such a standard over the course of each moment of the four decades that they operated the Rocky Flats Plant. Moreover, the application of a standard involving the highest "possible" degree of skill, care, diligence, and foresight implies that defendants may have been required to act in a manner inconsistent with their obligations to the Department of Energy.

Eleventh, defendants object to this instruction on the ground that it omits the requirement that the interference apply to all class members' use and enjoyment of their properties. This is a trial of the class claim and no individual claims are being tried. *See, e.g.,* 5/17/04 Order, at 3. If plaintiffs do not prove their claims for the class as a whole, then no class member may recover. *See, e.g.,* 28 U.S.C. § 2072 (class action device cannot be used to "abridge, enlarge or modify any substantive right" of any litigant); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999); *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

## INSTRUCTION NO. 3.16

Nuisance Claim

Third Element: Accident Not Presumptive Negligence

The occurrence of an accident does not raise any presumption of negligence on the part of a defendant. Negligence may be established, however, by the facts and circumstances surrounding an accident.

## INSTRUCTION NO. 3.17

Nuisance Claim

Fourth Element:  Continuing Nuisance

As stated in Instruction No. 3.6, the fourth element Plaintiffs must prove to prevail on their nuisance claim is that it appears that the unreasonable and substantial interference with the use and enjoyment of property caused by Dow and/or Rockwell's intentional or negligent conduct will continue indefinitely.  In deciding this element, it is not necessary for you to find that the interference meeting these requirements will last forever.  Instead, you should consider whether there is any reason to expect that this interference will end at any definite time in the future.  If you find there is no reason to expect this interference to end by a definite time, then you must find it appears the interference will continue indefinitely.

**Defendants' Objections:**

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, defendants object to this instruction to the extent that it does not incorporate the changes set forth in defendants' proposed revised instruction No. 3.17 filed January 10, 2006. Those changes are necessary to make the instruction consistent with Restatement (Second) of Torts Section 930.  In order for the damages measure of Section 930 of the Restatement to apply, the nuisance must be "continuing."  Restatement (Second) of Torts § 930.  In order for the nuisance to be "continuing" within the meaning of Section 930, the following conditions must be met:  (1) the defendant's operational activities which give rise to the nuisance must be

110

continuing; (2) the defendant's intent to cause a class-wide nuisance must be continuing; and (3) the past or future health risk resulting from the defendant's operational activities must be continuing. *See* Restatement (Second) of Torts Section 930 ("(1) If one causes continuing or recurrent tortious invasions on the land of another *by the maintenance of a structure or acts or operations not on the land of the other* . . .") (emphasis added); Restatement (Second) of Torts Section 930, cmt. d ("Manifestly, this element of depreciation is distinct from the loss in value brought by the actual effects of past invasions (see Comment on § 929) such as damage by floods to the soil's fertility."); Restatement (Second) of Torts Section 929, cmt. a (Section 929 (and not Section 930) applies where "future losses are *not contingent upon the continuance in the future of the defendant's wrongdoing*, and hence the result follows regardless of whether the owner can recover in advance for the prospective harm of future operations of the cement plant. This is a distinct question that is dealt with in § 930") (emphasis added).

Third, defendants object to the language: "no reason to expect the interference to end by a definite time." As an initial matter, this language presumes that plutonium is present on plaintiffs' properties. Moreover, there is no requirement that the plutonium be scheduled for removal at a definite time, so long as it is expected that the plutonium will be removed at some time in the future. What is important under Section 930 is an expectation that the trespass will cease within the reasonably foreseeable future - not the expectation that the trespass will cease by *some* date certain. *See* Restatement (Second) of Torts Section 930, cmt. b. Moreover, the instruction misquotes the comments to Section 930 - those comments do not require that the invasion be expected to cease by *a* definite time in the future, but rather that the invasion by expected to cease by *any* definite time in the future. *See* Restatement (Second) of Torts Section

111

930, cmt. b ("'Indefinitely' as used in this Section does not mean that the situation may be expected to last forever, but merely that there is no reason to expect its termination at *any* definite time in the future.")

Fourth, it must not only "*appear*" that the invasion will continue indefinitely; rather, the invasion must continue to be present through the time of trial. *See* Restatement (Second) of Torts Section 930, illus. 2 ("The operations of the gas plant began in 1931 and fumes and smoke invaded the greenhouse and damaged the flowers. This damage, small at first, reached a peak in June, 1932, when the gas plant first began to be operated to full capacity. It has since been carried on at the same level *and the damage to B's business has continued*.") (emphasis added).

Fifth, defendants object to this instruction to the extent that references to "interference" are not changed to "substantial and unreasonable interference" (as proposed in Defendants' Proposed Instruction No. 3.17 submitted January 10, 2006), which is the standard for nuisance under Colorado law. *See Public Service Co. of Colorado v. Van Wyk*, 27 P.3d 377, 395 (Colo. 2001).

## INSTRUCTION NO. 3.18

Both Claims

<u>Causation</u>

The word "cause" as used in these instructions means an act or failure to act that in natural and probable sequence produced the claimed effect.  It is a cause without which the claimed effect would not have happened.

### **Defendants' Objections:**

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, defendants' object to the Court's failure to include an intervening cause instruction.  Defendants' incorporate by reference herein defendants' briefs on intervening cause filed January 14, 2005 and February 4, 2005, as well as Defendants' Proposed Trespass Jury Instructions filed July 13, 2004 (Instruction No. 5) as well as Defendants' Proposed Nuisance Jury Instructions filed August 6, 2004 (Instruction No. 11).

Third, defendants object to the Court's omission of the following sentences from defendants' proposed instructions submitted July 13, 2004 and August 6, 2004:  "Each plaintiff must prove by a preponderance of the evidence that any act or failure to act by the defendant was a substantial factor in causing the claimed effect.  The plaintiff must establish causation beyond mere possibility or speculation."  The jury should be instructed on these standards, which are consistent with well-established Colorado law.  *See Kaiser Found. Health Plan of Colo. v. Sharp*, 741 P.2d 714, 719 (Colo. 1987) ("[T]he plaintiff must establish causation beyond mere

possibility or speculation."); *Smith v. State Compensation Ins. Fund*, 749 P.2d 462, 464 (Colo. Ct. App. 1987) ("The test for causation is the 'but for' test — whether, but for the alleged negligence, the harm would not have occurred.  The requirement of 'but for' causation is satisfied if the negligent conduct in a 'natural and continued sequence, unbroken by any efficient, intervening cause, produce[s] the result complained of, and without which that result would not have occurred.'  Here, decedent's death was occasioned by an independent, intervening cause — the motorcycle accident — which could not have reasonably been foreseen to occur as a result of the wrongful delay in approving his vocational rehabilitation plan."); *Ayala v. United States*, 846 F. Supp. 1431, 1441 (D. Colo. 1993), aff'd, 49 F.3d 607 (10th Cir. 1995) ("An act is the proximate cause of an injury if the act was a substantial factor in bringing about the injury.").

## INSTRUCTION NO. 3.19

### Both Claims

<u>Separate Findings for Each Defendant</u>

You must make a separate determination on both the trespass and nuisance claims against

each Defendant.  If you find that the evidence establishes a trespass or nuisance by one

Defendant but not the other, you must render separate verdicts on each claim.

## INSTRUCTION NO. 3.20

Both Claims

<u>Damages - Introduction</u>

I am now going to instruct you on the measure of damages to be awarded if you find in favor of Plaintiffs class on either of their claims against Dow and/or Rockwell.

You must determine the amount of damages in accordance with these instructions. The fact I will instruct you on the measure of damages does not mean I am instructing you as to which party is entitled to your verdict or that I am instructing you to award or not award damages. The questions of whether or not damages are to be awarded, and the amount of such damages, are for your consideration alone.

If you decide to award damages, you should fix the amount using calm discretion and sound reason, not sympathy, prejudice, or speculation.

Difficulty or uncertainty in determining the precise amount of damages does not prevent you from deciding an amount. You should use your best judgment based on the evidence.

## INSTRUCTION NO. 3.21

Both Claims

Damages - Actual or Nominal

If you find in favor of Plaintiffs on either of their claims against Dow and/or Rockwell, then you must award them actual or nominal damages.

Actual damages are a monetary award to compensate a plaintiff for the loss caused by the Defendant's wrongful conduct. The goal of an award of actual damages is to make the injured person whole or, in other words, to put them in the position they would have been in if they had not been harmed by the Defendant.

To award Plaintiffs actual damages, you must find that Plaintiffs proved by a preponderance of the evidence that: (1) the Plaintiff Class incurred actual damages as a result of the trespass and/or nuisance caused by Dow or Rockwell or both of them (as defined in Instruction Nos. 3.2 and 3.6), and (2) the amount of these actual damages. I will tell you in the next instructions (Nos. 3.22 - 3.24) how to decide these questions.

If you find in favor of Plaintiffs on a particular claim, but do not find any actual damages with respect to that claim, you shall nonetheless award Plaintiffs nominal damages in the sum of one dollar on that claim.

**Defendants' Objections:**

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

117

Second, defendants object to trying plaintiffs' damages claims on a class-wide basis, for

the reasons set forth in Defendants' Response to Plaintiffs' Proposed Plan for Determination of

Compensatory Damages, filed July 21, 2004, which is incorporated by reference herein, as well

as in the oral argument on that issue, on July 22, 2004.

Third, defendants object to this instruction to the extent that it does not incorporate

defendants' proposed addition of a requirement that any damages be proved as to the ***class***.

Plaintiffs cannot rely on a finding by the jury that class-area properties, ***on average***, suffered a

diminution in value. They must show that ***each and every one*** of the class properties suffered a

diminution in value. *See Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 319-21 (5th Cir. 1998)

(reversing damages award based on extrapolation rather than individual evidence). Allowing

class members who have suffered no diminution in property value to nevertheless recover on the

basis of an average violates the fundamental principle of damages under Colorado law: "The

trial court must take as its principal guidance the goal of reimbursement of the plaintiff for losses

actually suffered." *Bd. of County Comm'rs v. Slovek*, 723 P.2d 1309, 1316 (Colo. 1986); *see also*

*Zwick v. Simpson*, 572 P.2d 133, 134 (Colo. 1977) ("[T]he goal of the law of compensatory

damages is reimbursement of the plaintiff for the actual loss suffered.").

Fourth, defendants object to this instruction to the extent that it is not changed to reflect

Defendants' Proposed Instruction No. 3.21A, filed January 10, 2006, which makes clear that the

only type of compensatory damages that may be awarded to plaintiffs are diminution in value

damages. This instruction should be provided for the reasons given in Defs.' Proposed

Instruction re the Type of Compensatory Damages That Can Be Awarded, filed 12/8/05, which is

incorporated by reference herein. *See* 5/17/05 Order at 18 ("Here, plaintiffs contend Defendants'

118

trespass and nuisance harmed class members' pecuniary interests by diminishing the value of their properties."); Pls' Statement of Claims, filed 8/10/05, at 4.

### INSTRUCTION NO. 3.22

Both Claims

Measure of Actual Damages

Plaintiffs seek an award of actual damages based on the decrease in the value of

properties in the Class Area caused by the trespass and/or nuisance committed by Dow or

Rockwell or both of them. This type of actual damages is sometimes called diminution in

property value.

The diminution in property value that Plaintiffs may recover here is measured by the

difference between the actual value of the Class Properties and the value these Properties would

have had if Dow or Rockwell or both of them had not committed the trespass and/or nuisance

proved by Plaintiffs. In other words, you must compare the actual value of the Class Properties

to what their value would have been "but for" the trespass and/or nuisance, and the difference is

the diminution in property value that Plaintiffs can recover as actual damages in this case.

In a case like this, the law requires that you measure the amount of any such diminution

in Class property values at a particular point in time. That point is the time or time period when

the injurious situation became "complete" and "comparatively enduring." The injurious situation

is "complete" when the effects of the trespass or nuisance are known to their full extent. It is

"comparatively enduring" when there is no reason to expect that these effects will end at a

definite time in the future. When the injurious situation became "complete" and "comparatively

enduring" in this case is a question you will decide as I will describe in just a moment.

Plaintiffs contend that the diminution in the value of Class properties should be measured

as of the period between June 6, 1989, when the FBI and U.S. Environmental Protection Agency

120

searched Rocky Flats as part of their investigation into alleged wrong-doing by Rockwell, and March 26, 1992, when Rockwell pled guilty to certain environmental crimes at Rocky Flats. Plaintiffs allege this is the right time period to measure their actual damages because this is when the injurious effects of Defendants' alleged trespass and nuisance became "complete" and "comparatively enduring."

Plaintiffs have also presented evidence, however, of the injurious effects of the alleged trespass and nuisance in the larger period of 1988 through 1995. If you find these effects became "complete" and "comparatively enduring" at any time during this period, therefore, you may award actual damages to Plaintiffs measured as of the time you find the effects became "complete" and "comparatively enduring." If you do not find the injurious effects of the alleged trespass and/or nuisance became "complete" and "comparatively enduring" some time during the 1988-1995 period, then you should not award actual damages to Plaintiffs.

Accordingly, to decide whether Plaintiffs are entitled to the actual damages they seek in this case, you must determine whether Plaintiffs have proved by a preponderance of the evidence that:

1.  The injurious situation became "complete" and "comparatively enduring" (as defined in this instruction) sometime between January 1, 1988 and December 30, 1995; and

2.  As of the time you find the injurious situation became "complete" and "comparatively enduring," the actual value of the Class Properties was less than the value these Properties would have had but for the trespass and/or nuisance committed by Dow or Rockwell or both of them; and

121

3.      As of the time you find the injurious situation became "complete" and
        "comparatively enduring," the amount of the difference between the actual value
        of Class Properties and what their value would have been but for the trespass
        and/or nuisance (see Instruction No. 3.23).

**Defendants' Objections:**

First, defendants incorporate by reference herein the objections and proposed instructions
set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, defendants object to trying plaintiffs' damages claims on a class-wide basis, for
the reasons set forth in Defendants' Response to Plaintiffs' Proposed Plan for Determination of
Compensatory Damages, filed July 21, 2004, which is incorporated by reference herein, as well
as in the oral argument on that issue, on July 22, 2004.

Third, defendants object to this instruction to the extent that it does not require that
plaintiffs prove a diminution in value for all class members. Plaintiffs cannot rely on a finding
by the jury that class-area properties, on average, suffered a diminution in value. They must
show that each and every one of the class properties suffered a diminution in value. *See Cimino
v. Raymark Indus., Inc.*, 151 F.3d 297, 319-21 (5th Cir. 1998) (reversing damages award based
on extrapolation rather than individual evidence). Allowing class members who have suffered
no diminution in property value to nevertheless recover on the basis of an average violates the
fundamental principle of damages under Colorado law: "The trial court must take as its principal
guidance the goal of reimbursement of the plaintiff for losses actually suffered." *Bd. of County
Comm'rs v. Slovek*, 723 P.2d 1309, 1316 (Colo. 1986); *see also Zwick v. Simpson*, 572 P.2d 133,

134 (Colo. 1977) ("[T]he goal of the law of compensatory damages is reimbursement of the plaintiff for the actual loss suffered.").

Fourth, instead of stating that an injurious situation is complete and comparatively enduring unless there is evidence that it will end at "a definite time" in the future, the instruction should provide that the injurious situation is not complete and comparatively enduring if there is evidence that it will end in the reasonably foreseeable future. Plaintiffs have argued that an injurious situation is complete and comparatively enduring if one cannot identify the precise point in time at which it will cease. *See*, *e.g.*, 1/6/05 Trial Tr. at 9259. This misconstrues Restatement § 930, which defines "complete and comparatively enduring" when "there is no reason to expect its termination at *any* definite time in the future." Restatement § 930 cmt. b (emphasis added). If it appears that an injurious situation will cease at some time, even if that point in time cannot be predicted definitively, Restatement § 930 cannot be applied because its underlying assumption that the injurious situation will continue indefinitely is false.

Fifth, under Section 930, damages are available only for the "prospect of the continuance of the invasion." Restatement (Second) of Torts Section 930. As written, the instruction would allow recovery for damages resulting from past invasions, even though damages from past invasions are measured not under Section 930 of the Restatement but under Section 929. Restatement (Second) of Torts Section 930 cmt. d ("Manifestly, this element of depreciation [measured under Section 930] is distinct from the loss in value brought by the actual effects of past invasions (see Comment on § 929) such as damage by floods to the soil's fertility."); Restatement (Second) of Torts Section 929 cmt. a (Section 929 measure of damages applies where "future losses are not contingent upon the continuance in the future of the defendant's

123

wrongdoing, and hence the result follows regardless of whether the owner can recover in advance for the prospective harm of future operations of the cement plant.  This is a distinct question that is dealt with in § 930.")  Section 929 damages are not being assessed in the class trial.  *See generally* 5/17/04 Order.  Accordingly, defendants object to this instruction to the extent that the potential recovery is not limited to damages resulting from the prospect of the continuance of the invasion, as opposed to damages resulting from past invasions.

Sixth, this instruction improperly assumes that a Section 930 measure of damages applies irrespective of whether plaintiffs have proved that the injurious situation is "continuing."  In fact, Section 930 applies only to continuing trespasses or nuisances.  *See* Restatement (Second) of Torts Section 930; *Cook v. Rockwell Intern. Corp.*, 273 F. Supp.2d 1175, 1209 (D. Colo. 2003)("[S]ection 930 of the Restatement (Second) of Torts . . . provides that the decrease in the value of land caused by a continuing tortious invasion of land is measured 'at the time when  the injurious situation became complete and comparatively enduring.' Id. § 930(3).") (emphasis added).  It is defendants' position that, if plaintiffs fail to demonstrate that their alleged injuries are "abateable" (and therefore "continuing" within the meaning of Section 930), plaintiffs: (1) are not entitled to seek diminution in value damages under Section 930; and (2) are not entitled to seek "diminution in value" damages at all unless they establish that the value of their properties diminished after the alleged nuisance from what it was before (Restatement (Second) of Torts Section 929).  See Defs.' August 18, 2004 Brief on the Statute of Limitations, State Regulatory Standards, Ultrahazardous Liability, Spoliation, and Negligent Trespass.  The requirement that plaintiffs must prove a continuing (abateable) nuisance in order for Section 930

124

to apply is set forth in Defendants' Submission of Phase III Jury Instructions and Jury Verdict

Forms filed September 3, 2004, but apparently has been rejected by the Court.[9]

Seventh, even if the "abateability" requirement is inapplicable (as this Court has ruled), the following requirements must still be met in order for Section 930 to apply:  (1) the defendant's *operational* activities which give rise to the trespass must be continuing; (2) the defendant's intent to cause a class-wide trespass must be continuing; and (3) the plutonium contamination resulting from the trespass must be continuing. *See* Restatement (Second) of Torts Section 930 ("(1) If one causes continuing or recurrent tortious invasions on the land of another by the maintenance of a structure or acts or operations not on the land of the other . . .") (emphasis added); Restatement (Second) of Torts Section 930, cmt. d ("Manifestly, this element of depreciation is distinct from the loss in value brought by the actual effects of past invasions (see Comment on § 929) such as damage by floods to the soil's fertility."); Restatement (Second) of Torts Section 929, cmt. a (Section 929 (and not Section 930) applies where "future losses are not contingent upon the continuance in the future of the defendant's wrongdoing, and hence the

---

[9] Defendants have previously argued that, in order for a trespass to be "continuing," plaintiffs also must prove that it is not reasonably abatable. *See* Defendants' Response to Plaintiffs' Brief on the Statute of Limitations, State Regulatory Standards, Ultrahazardous Liability, Spoliation, and Negligent Trespass, filed August 18, 2004; *see also* W. Keeton, *Prosser and Keeton on Torts*, 5th ed. (West Group 1984) at § 89 (a "permanent" nuisance is one that is "unlikely to abate or to be avoided by any reasonable expenditure of money"); D. Dobbs, *The Law of Torts*, § 57 (West Group 2001), cited in *Hoery* at p. 223 (listing first among the "most significant factors favoring a classification as temporary" that "(1) the invasion can in fact be terminated or abated" and "(2) the cost of termination is not wasteful or oppressive"); *In re Hoery v. United States*, 64 P.3d 214, 216 n.2 (Colo. 2003) ("the record at this stage of the litigation indicates that the contamination is not permanent — that is, it is remediable or abatable."); *Middlecamp v. Bessemer Irrigating Ditch Co.*, 103 P. 280, 283 (1909) (when nuisance or trespass "is not practicable to remedy" or could not "by a reasonable expenditure be checked," the nuisance is considered permanent).

   Plaintiffs have introduced no evidence in this regard.  Defendants recognize that the Court has rejected defendants' position on this issue.

result follows regardless of whether the owner can recover in advance for the prospective harm of future operations of the cement plant. This is a distinct question that is dealt with in § 930") (emphasis added). The jury instructions should contain each of these requirements, as set forth in Defendants' Proposed Instruction No. 3.22 filed January 10, 2006.

Eighth, for Section 930 to apply, plaintiffs must also demonstrate that the "invasions" have become "complete and comparatively enduring," which means that the "the effects of the injurious conditions have been revealed in their full extent" and are "carried on at the same level." Restatement (Second) of Torts Section 930, cmt. d & illus. 2. All of these standards (which are not reflected in the Court's current instruction) should be incorporated into defendants' proposed instruction No. 3.22 filed January 10, 2006, and defendants object to the Court's instruction to the extent that defendants' changes are not incorporated..

Ninth, defendants object to this instruction to the extent that it omits the consideration (as set forth in defendants' proposed instruction submitted January 10, 2006) that: "Evidence that any diminution in Class property values has decreased or diminished after the time when plaintiffs allege the injurious situation is complete and comparatively enduring is evidence that the injurious situation was not, in fact, complete and comparatively enduring." Plaintiffs would have the jury disregard any evidence that class-area property values have increased relative to values outside the class area after 1992. *See, e.g.*, 12/7/05 Trial Tr. at 6875. But this Court has held that relative appreciation in class-area property values is relevant to the continuing nature of the alleged injurious situation. *See* 9/13/05 Hr'g Tr. at 5 (denying plaintiffs' motion in limine seeking to exclude property values after 1992). Ignoring such appreciation would enable

126

plaintiffs to perpetuate a fiction of enduring harm notwithstanding the cleanup at the plant and the simultaneous relative appreciation in class-area property values.

Tenth, defendants object to this instruction on the ground that it prevents the jury from considering any subsequent re-appreciation in the value of the properties of class members who did not sell before 1995. To award such class members damages as of the 1988-1995 period, notwithstanding such post-1995 re-appreciation, would be to sanction a double recover in violation of Colorado law. *See Bd. of County Comm'rs v. Slovek*, 723 P.2d 1309, 1316 (Colo. 1986) ("The trial court must take as its principal guidance the goal of reimbursement of the plaintiff for losses actually suffered."); *see also Zwick v. Simpson*, 572 P.2d 133, 134 (Colo. 1977) ("[T]he goal of the law of compensatory damages is reimbursement of the plaintiff for the actual loss suffered.")

Eleventh, defendants object to this instruction to the extent that it does not limit plaintiffs' recovery to the portion of any alleged diminution in value that occurred within the two-year statute of limitations window between January 30, 1988, and January 30, 1990, which is the only period for which plaintiffs can recover if the tort is continuing. *See In re Hoery v. United States*, 64 P.3d 214, 216 (Colo. 2003) ("For continuing torts . . plaintiff's recovery is limited to the statute of limitations period dating back from when plaintiff's complaint was filed.") (internal citations omitted); *United States v. Hess*, 194 F.3d 1164, 1177 (10th Cir. 1999).

Twelfth, defendants object to this instruction to the extent that it assumes that the injurious situation became complete and comparatively enduring at some point in time. it is up to the jury to (1) first determine whether the injurious situation ever became complete and comparatively enduring; (2) next determine what the complete and comparatively point is; and

127

(3) then measure damages as of that time, in accordance with Section 930's requirements. That

is why defendants' proposed jury instructions and jury verdict forms would instruct the jury that,

if Section 930 is determined to apply, the jury should first determine the complete and

comparatively enduring point (if any), and then (inter alia) measure the reduction in the value of

each plaintiff's property (if any) as of that point in time.

Thirteenth, defendants object to this instruction to the extent that it suggests that there

**must** be a single complete and comparatively enduring date for trespass and nuisance, and a

single complete and comparatively enduring date for both Dow and Rockwell.  In fact, the

complete and comparatively enduring dates may be different for trespass and nuisance, and for

Dow and Rockwell, because the "injurious situations" may be different (*e.g.*, as between a Dow

trespass caused by plutonium in 1970 and a Rockwell nuisance caused the threat of future

releases in 2006).

Fourteenth, defendants object to this instruction to the extent that it fails to incorporate

defendants' proposed instruction regarding consideration of stigma evidence, Instruction No.

3.22A, most recently submitted on January 10, 2006. This instruction should be adopted for the

reasons set forth in Defs.' Proposed Instructions re Stigma Evidence and Class Members filed

Dec. 7, 2005. *See* Instruction 3.21 ("Actual damages are a monetary award to compensate a

plaintiff for the loss *caused by the defendants' wrongful conduct.*") (emphasis added);

Instruction 3.22; Instruction 3.24 ("[Y]ou should not consider or award any diminution in value

caused solely by the proximity of the Class Area to Rocky Flats."); *see also Staley v. Segal*, 841

P.2d 379, 382 (Colo. Ct. App. 1992) (diminution in value attributable to proximity to

neighboring hog facility insufficient to establish nuisance liability); *Adams v. Star Enter.*, 51

128

F.3d 417, 422 (4th Cir. 1995) (dismissing nuisance claim based on allegation that "the value of [plaintiffs'] properties has been substantially reduced as a result of the 'stigma' attached to the community because of the oil spill"); *Berry v. Armstrong Rubber Co.*, 989 F.2d 822, 829 (5th Cir. 1993) (barring recovery "for reduced market value caused by a 'stigma' absent some physical damage to plaintiffs' land caused by the defendant"); *Wilson v. Amoco Corp.*, 33 F. Supp. 2d 981, 986 (D. Wyo. 1998) ("Plaintiffs in the instant matter may not recover damages based solely on stigma absent proof of some physical injury or harm to the specific Plaintiff's property (i.e., separate establishment of a claim for trespass, nuisance, or negligence)."); *Mercer v. Rockwell Int'l Corp.*, 24 F. Supp. 2d 735, 744 (W.D. Ky. 1998) ("Stigma damages are recoverable only in instances where there has been physical damage to the property in the first instance."); *Adkins v. Thomas Solvent Co.*, 487 N.W.2d 715, 717 (Mich. 1992) (dismissing claim for property depreciation where plaintiffs' "properties were not and would never be subject to ground water contamination).

### *NEW OBJECTION:*

Fifteenth, Defendants object to the expansion of plaintiffs' alleged "complete and comparatively enduring" time period from June 6, 1989 to March 26, 1992, to January 1, 1988 to December 31, 1995. Plaintiffs are estopped from making this eleventh-hour switch by their repeated statements, both before and during trial, that the only period at issue was from 1989 to 1992. (*See* Pls.' Proposed Plan for Determination of Compensatory Damages, filed 7/13/04, at 7 n.1 ("Plaintiffs contend that the harms from Rocky Flats became complete and enduring at some point during the period between the FBI raid on June 7, 1989, and Rockwell's guilty plea in 1992."); Pls.' Omnibus Mot. in Limine, filed 6/3/05, at 1–3 (seeking to bar evidence of property

values after 1992); 10/12/05 Trial Tr. at 632 ("Whether in 1989 or 1990, the harm appears to be

complete and comparatively enduring."); 1/6/06 Trial Tr. at 9257 ("Remember that [CCE,

complete and comparatively enduring] is going to be judged as of early 1990 or late 1989 when

this case was filed.").)

> Perhaps most telling is the following excerpt from plaintiffs' opening statement:
>
> "Now, we believe that as of 1990 these conditions were met, or certainly between the
>
> 1989 FBI raid and the 1992 guilty plea of Rockwell . . . . The nuisance became complete
>
> and comparatively enduring between the June 6, 1989, raid by the FBI and EPA and
>
> March 26, 1992, when Rockwell pled guilty to environmental crimes at Rocky Flats."

(11/4/05 Trial Tr. at 4151–52.) The Court has relied on plaintiffs' statements in crafting the jury

instructions as they stand.  Moreover, ***defendants have relied on them in selecting the evidence
to present at this trial***.  Plaintiffs cannot in fairness change this period after the window for

defendants to present their evidence has closed.

For example, had plaintiffs proposed this instruction before trial, defendants could have

vigorously cross-examined Mr. Hunsperger on how anything could have become complete and

comparatively enduring from 1988 to 1995, especially given that (1) Mr. Hunsperger testified

that any variations in diminution in value within that period were based on "normal fluctuations"

(12/7/05 Trial Tr. at 6847); and (2) Mr. Hunsperger did not know the level of diminution in value

existing before 1988 (12/7/05 Trial Tr. at 6865).  Defendants also would have cross-examined

Dr. Radke on the subject, given that (1) Dr. Radke's Phase II only studies 1988 to 1995, and

cannot show that the 1988 to 1995 diminution is a departure from any other period; and (2)

130

Phase I is a pooled regression of the period from 1983 to 1993 that does not break down results by year.  (10/26/05 Trial Tr. at 2721–22.)

Indeed, plaintiffs' desire to use the 1988 to 1995 period is not a function of any coherent theory of when the injurious situation became complete and comparatively enduring; rather, it is simply a function of the exact time period studied by plaintiffs' damages expert Dr. Radke in Phase II.[10]  (10/26/05 Trial Tr. at 2755.)  Dr. Radke's selection of the 1988 to 1995 period had nothing to do with any theory that the injurious situation became complete and comparatively enduring over this period.  Rather, as Dr. Radke testified, the reason for the use of the 1988 to 1995 period was that Dr. Radke wanted to look before and after the FBI Raid.

Q.  Okay.  Can you tell me why you chose 1988, the first year that you studied in Phase II?

A.  Right.  So if you recall, way back at the beginning of this, I was trying to—the second question I was trying to answer was, was there an impact of the raid in 1989, and I wasn't able to do that in the first phase, but in the second phase I wanted to be able to do that.  I was only looking at single family residential, but I had a very good database, lots of data.  So I wanted to go before the raid.  So the raid was in 1989, so I went to 1988.  And then I wanted to go after the raid as long as I could.  And I finished this project with only 1995 sales information.  That's when it ended.  I think I finished my model in '96 or the beginning of '96.  So that's why I ended in '95.

---

[10] In Phase I, Dr. Radke looked at the time period 1983 to 1993.  However, only Phase II of Dr. Radke's report was used by Mr. Hunsperger in his final damages calculations.

Q. Okay.  So you started a year before the F.B.I. raid, you have a whole year of data for

1988, and you ended in 1995 because that was the last year of data that was available to

you at the time you did the study?

A. Correct.

(10/26/05 Trial Tr. at 2721.)  As defendants would have brought out further on cross-

examination of Dr. Radke (had plaintiffs raised this issue before the end of the trial), his

selection of the 1988 to 1995 period *had nothing to do with any claim that the injurious*

*situation became complete and comparatively enduring within that period*.[11]  Plaintiffs offer no

justification for instructing the jury that the injurious situation must have become complete and

comparatively enduring within a time window that exists simply because it was the time period

analyzed by Dr. Radke.

For all of the foregoing reasons, defendants object to the Court's rejection of defendants'

proposed damages instructions as set forth in Defendants' Submission of Phase III Jury

Instructions and Jury Verdict Forms filed September 3, 2005;  Defendants' Proposed

Supplemental Jury Instructions and Jury Verdict Form, filed September 16, 2005; Defendants'

Proposed Limiting and Supplemental Jury Instructions, filed September 23, 2005; and

Defendants' Proposed Changes to Preliminary Jury Instructions, filed January 10, 2006.

---

[11] It would be equally appropriate to instruct the jury that the complete and comparatively enduring period must fall
within the window studied by defendants' experts:  1974 to 2003.  (1/5/06 Trial Tr. at 9049 (Wise).)

## INSTRUCTION NO. 3.23

### Both Claims

### Aggregate Damages and Percentage Diminution

If you find Plaintiffs have proved actual damages as described in Instruction No. 3.22, you will be asked to report your findings regarding the amount of their actual damages in several ways. First, you will be asked to decide both the total amount of damages suffered by the entire Class as a whole (called "aggregate" Class damages), and the percentage diminution in property values in the Class Areas as a whole.

Additionally, you will be asked to decide the amount of actual damages and percentage diminution in Class property values for three different types of property in the Class: vacant land, commercial property and residential property.

You will not be asked to determine the amount of actual damages suffered by any individual Class member. Individual Class members' share of any damages you award will be determined in later proceedings. Therefore, you must only concern yourselves with the total, class-wide measures of actual damages I just described.

**Defendants' Objections:**

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

***NEW OBJECTION:***

133

Second, defendants object to this instruction to the extent that it relates to commercial property. Plaintiffs indicated in their opening statement that they were only seeking damages for residential property and vacant land. 10/12/2005 Tr. at 644 ("Yesterday, when we left off, I had explained the compensatory damages portion of the plaintiffs' case; that Mr. Hunsperger and the other experts, but primarily Mr. Hunsperger, their opinion is there was a 10 percent -- at least a 10-percent diminution or depression in the value of houses in the class area. And that that, in 1995, 10 years ago, was $169 million. And in today's dollars, that is $216 million. These are obviously approximate figures. And 30-percent depression in land values, which 10 years ago was $21 million, and when adjusted for the consumer price index is $27 million. *And the total of that, those two constituent elements is $243 million, which would be allocated among the 12,000 or more members of the class under a procedure that Judge Kane would approve and establish*.") (emphasis added).

Likewise, plaintiffs' statement of claims omitted any mention of damages for commercial properties. *See* Plaintiffs' Statement of Claims filed August 8, 2005, at 5 ("Those damages are *sought for residential properties and vacant land* within the Class Area, expressed as total class-wide damages, in 2005 dollars, and as a percentage diminution for properties in both categories.")

Ultimately, plaintiffs' expert Dr. Radke testified as to commercial property damages (contrary to what plaintiffs had represented in their statement of claims). However, Radke testified that the alleged impact on commercial properties only existed within a narrow band of distance from Rocky Flats: within 5.7 miles - thus conceding that the impact was not class-wide. Trial Tr. 2771 (" I will say that less than 5.7 miles inward to Rocky Flats was the diminution

134

effect [for commercial properties], and I averaged it over that area.")  Dr. Radke also admitted

that his Phase I estimate for commercial properties (like his other Phase I estimates) was based

upon "assumption upon assumption"

Q. If you just say what you just said, there are assumptions upon assumptions, correct?

A. Correct, there are assumptions in Phase I.

Q. Okay.  So --

A. There are assumptions in the total loss.

Q. Okay.

A. But I never said there wasn't assumptions in the total loss.

Q. I'm not saying you haven't been candid with us.

A. Okay.

Q. What I'm saying is that you have in Phase I an effort that is assumption built upon assumption, correct?

A. Correct.

Q. Yet at the end of the day you put on your chart -- with those acknowledgements, but you put on the chart no less than $60 million worth of loss, correct?

A. Right.  But you have to look at that value with the assumptions, you can't divorce it from the assumptions.

Q. Okay.  That's fair.

A. So, you know, in fuzzy logic you shade it gray.  (Trial Tr. 2774-75)

Because plaintiffs' only evidence of commercial damages was based upon "assumptions

upon assumptions" and "fuzzy logic," the question of commercial damages should not go to the

jury. *See Roberts v. Adams*, 47 P.3d 690, 697 (Colo. Ct. App. 2001) ("[D]amages based on mere

speculation and conjecture are not allowed.")

135

Even more importantly, regardless of what evidence was ultimately submitted to the jury, plaintiffs had previously represented that they would not be seeking commercial damages. *See* 10/12/2005 Tr. at 644; Plaintiffs' Statement of Claims filed August 8, 2005, at 5.   Given that plaintiffs represented that they were only seeking damages for residential and vacant land properties (and not damages for commercial properties), and given that defendants relied upon those representations in preparing their case, plaintiffs are now estopped from seeking damages for commercial properties here.   Accordingly, the jury should not be instructed that it may award damages for commercial properties.

Third, defendants object to trying plaintiffs' damages claims on a class-wide basis, for the reasons set forth in Defendants' Response to Plaintiffs' Proposed Plan for Determination of Compensatory Damages, filed July 21, 2004.

Fourth, defendants object to this instruction to the extent that it does not require that plaintiffs prove a diminution in value for all class members.  Plaintiffs cannot rely on a finding by the jury that class-area properties, on average, suffered a diminution in value.  They must show that each and every one of the class properties suffered a diminution in value. *See Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 319-21 (5th Cir. 1998) (reversing damages award based on extrapolation rather than individual evidence).  Allowing class members who have suffered no diminution in property value to nevertheless recover on the basis of an average violates the fundamental principle of damages under Colorado law:  "The trial court must take as its principal guidance the goal of reimbursement of the plaintiff for losses actually suffered." *Bd. of County Comm'rs v. Slovek*, 723 P.2d 1309, 1316 (Colo. 1986); *see also Zwick v. Simpson*, 572 P.2d 133,

134 (Colo. 1977) ("[T]he goal of the law of compensatory damages is reimbursement of the plaintiff for the actual loss suffered.").

## INSTRUCTION NO. 3.24

### Both Claims

#### Matters Not Relevant to Determining Actual Damages

In determining any actual damages to be awarded in this case, you should not consider or award any diminution in value caused solely by the proximity of the Class Area to Rocky Flats. Instead, you must follow my directions in Instruction No. 3.22 to award damages for diminution in value you find was caused by any trespass or nuisance you find Dow or Rockwell or both of them committed.

In determining whether Plaintiffs have proved actual damages, you also should remember that Plaintiffs are not required to prove that any diminution in value caused by Dow or Rockwell's activities at Rocky Flats came into existence before or after the FBI raid or some other specific event. Instead, as stated in Instruction No. 3.22, the measure of damages to be proved by Plaintiffs is the value the Class Properties would have had "but for" any trespass or nuisance by Dow and/or Rockwell.

**Defendants' Objections:**

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, defendants object to the word "solely" in the first sentence of the instruction. Damages caused by proximity to Rocky Flats are not recoverable, regardless of whether or not they are caused solely by proximity. Plaintiffs - not defendants - bear the burden of separating

138

which portion of plaintiffs' damages are caused by actionable factors, as opposed to which portion of plaintiffs' damages are caused by proximity.[12]

Third, this instruction should make clear that damages must be caused *specifically* by defendants' conduct, and not caused indirectly or in combination with other, non-actionable factors. *See Westric Battery Co. v. Standard Elec Co.*, 482 F.2d 1307, 1318 (10th Cir. 1973) (stating that it is "only the damage flowing legally from the defendant's misdeeds which counts); *Hyman & Co. v. Velsicol Corp.*, 233 P.2d 977, 1008 (Colo. 1951) ("The rule is that damages

---

[12] *See, e.g.,* Robert E. Hall & Victoria A. Lazear, Reference Manual on Scientific Evidence 307-308 (2d ed. 2000) ("If a damages analysis includes the effects not caused by the defendant, it is a defective analysis. It has not followed the standard format for damages, which, by its nature, isolates the effects of the harmful act on the plaintiff."); *Schmidt & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 415 (7th Cir. 1992) (Posner, J.) ("For years we have been saying, without much visible effect, that people who want damages have to prove them, using methodologies that need not be sophisticated but must not insult the intelligence. . . . The expert should have tried to separate the damages that resulted from the lawful entry of a powerful competitor - Nordisco - from the damages that resulted from the particular forms of misconduct allegedly committed by that competitor."); *see also City of Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361, 1372 (9th Cir. 1992) ("[The expert] study failed to segregate the losses, if any, caused by acts which were not antitrust violations from those that were. . . . The question remaining is whether the district court was nevertheless required to allow Vernon to go the jury with its erroneous approach or to give it still another opportunity to refine a study that, according to Vernon, could not be refined. We think not."); *Isaksen v. Vermont Castings, Inc.*, 825 F.2d 1158, 1164 (7th Cir. 1989) ("The jury pulled the figure of $100,000 out of a hat in which Isaksen's expert witness had done the usual magic tricks; but as there was no evidence of how much the antitrust violation, as distinct from unrelated market forces, contributed to Isaksen's losses, or of how much of the loss was an antitrust injury as distinct from a purely private loss form being deprived of the opportunity to take a free ride on competing dealers, the expert's efforts to translate his losses into a present-value figure were irrelevant.  We do not allow antitrust plaintiffs or any other plaintiffs to obtain damage awards without proving what compensable damages were actually suffered as result of the defendant's unlawful conduct."); *Farley Transp. v. Santa Fe Transp. Co.*, 786 F.2d 1342, 1352 (9th Cir. 1986) ("In sum although Farley produced evidence it had suffered some injury due to Santa Fe's antitrust violation, Farley provided no evidence on the amount of damages attributable only to the unlawful conduct.  Farley's utter failure to make any segregation between damages attributable to lawful competition and that attributable to the unlawful scheme to deviate from the tariff rate requires reversal of the verdict and remand for a new trial on the amount of damages."); *In re Executive Telecard, Ltd. Securities Litig.*, 979 F. Supp. 1021, 1025 (S.D.N.Y. 1997) (excluding expert witness under reliability prong of *Daubert* on ground that expert "fail[ed] adequately to distinguish between fraud related and non-fraud related company specific influences on EXTL's stock price."); *In re Oracle Securities Litig.*, 829 F. Supp. 1176, 1181 (N.D. Cal. 1993) ("Mr. Hammerslough's analysis fails to distinguish between the fraud-related and non-fraud related influences on the stock's price behavior. . . . As a result of his failure to employ such a study, the results reached by Mr. Hammerslough cannot be evaluated by standard measures of statistical significance.  Hence, the reliability of the magnitude and direction of his value estimates are incapable of verification.").

based upon mere speculation and conjecture are not allowable; however where it has been definitely established that damages are traceable to and the direct result of a wrong, the uncertainty as to the amount thereof is a question for determination by the trier of the facts."); *see also* Defs.' Proposed Instruction No. 3.22A and authority cited therein.  Thus, defendants object to this instruction to the extent that it does not include the changes set forth in Defendants' Proposed Instruction No. 3.24 filed January 10, 2006.

Fourth, defendants object to the second paragraph of this instruction on the ground that plaintiffs' claims in this case have always been premised on the FBI Raid.  Merilyn Cook, after whom this case is named, so testified.  Trial Tr. 2057-59.  Dr. Radke likewise testified that one of his goals was to determine the impact of the FBI Raid on class property values, by looking before and after the FBI Raid.  Thus, to prove damages *under plaintiffs' own theory of the case*, plaintiffs *are* required to show a difference between class property values before the FBI Raid and class property values after the FBI Raid.  Trial Tr. at 2782 ("Q.  Okay.  And this essentially, therefore, if we want to put a shorthand by it, was kind of a before-and-after approach to see if the raid had an impact, correct?  A.  Correct.")

Fifth, defendants object to this instruction on the ground that a "before and after" approach is in no way inconsistent with a "but for" measure of damages such as that set forth in Section 930.  Plaintiffs contend that the "injurious situation" became "complete and comparatively enduring" from "1989 to 1992."  (Pls.' Mot. in Limine at 1–3.)  Indeed, plaintiffs state in their Consolidated Memorandum in Opposition to Defendants' Motion in Limine that the market was "bombarded" with information about "problems" from Rocky Flats in 1989:

> [E]vidence concerning the FBI raid and the criminal proceedings is not merely
> relevant with respect to liability, but is also highly material to the issue of dam-

> ages. A market cannot readily discount property values by virtue of problems of
> which the market has not inkling. The Denver area was bombarded with news
> accounts involving the criminal proceedings in 1989 and the early 1990's.

(Pls.' Consol. Mem. in Opp. to Defs.' Mots. in Limine at 9–10.) Plaintiffs' arguments only

underscore the value of a time trend analysis in determining a but-for measure of damages.

Plaintiffs contend that, prior to 1989, the market had "no inkling" of "problems" at Rocky Flats,

but that, "in 1989 and the early 1990's," the "Denver area was bombarded" was information

about such "problems." *Id.* If that were true, then a before and after measurement would

constitute a highly probative and reliable method of answering the question: "But for the

'problems' from Rocky Flats which allegedly came to light in 1989, what would the value of

class properties have been?"

For example, if the value of class properties continued on an essentially steady upward

trend until 1989 (the period when the public allegedly had no "inkling" of problems at Rocky

Flats), but then decreased in 1989 when the market was allegedly "bombarded" with information

about problems at Rocky Flats, such a before and after analysis may support the conclusion that

the problems at Rocky Flats did have a "but for" impact on the value of class properties. By

contrast, if the value of class properties continued on an essentially steady upward trend until

1989, and continued on that trend from 1989 to 1992 when the market was allegedly

"bombarded" with information about problems at Rocky Flats, such a before and after analysis

would support the conclusion that the problems at Rocky Flats did have a "but for" impact on the

value of class properties.

Such an analysis also comports with the measure of damages under Section 930 of the

Restatement (Second) of Torts. Section 930(3)(b) requires an analysis of "the decrease in the

value of the land caused by the prospect of the continuance of the invasion measured at the time

when the injurious situation became complete and comparatively enduring." Restatement

(Second) of Torts Section 930(3)(b). But Section 930 says nothing about the ***method*** used to

determine "the decrease in the value of the land caused by the prospect of the continuance of the

invasion measured at the time when the injurious situation became complete and comparatively

enduring." A before and after analysis is one such method. For example, if the CCE date is

January 2, 2000, a before and after analysis showing that the value of a property was $150,000

on January 1, 2000, $100,000 on January 2, 2000, and $100,000 on January 3, 2000, would

support the conclusion that the measure of damages under Section 930(3)(b) — "the decrease in

the value of the land caused by the prospect of the continuance of the invasion measured at the

time (January 2, 2000) when the injurious situation became complete and comparatively

enduring"—was $50,000.

Sixth, the "before and after" measure of Section 929 - and not the measure of damages

set forth in Section 930 - is applicable here. As an initial matter, plaintiffs have pointed to no

precedent holding that Section 930 is the law of Colorado. Moreover, this instruction improperly

assumes that a Section 930 measure of damages applies irrespective of whether plaintiffs have

proved that the injurious situation is "continuing." In fact, Section 930 applies only to

continuing trespasses or nuisances. *See* Restatement (Second) of Torts Section 930; *Cook v.*

*Rockwell Intern. Corp.*, 273 F. Supp.2d 1175, 1209 (D. Colo. 2003)("[S]ection 930 of the

Restatement (Second) of Torts . . . provides that the decrease in the value of land caused by a

continuing tortious invasion of land is measured 'at the time when  the injurious situation

became complete and comparatively enduring.' Id. § 930(3).") (emphasis added). For plaintiffs

142

to prove that a trespass or nuisance is continuing, they must first demonstrate that it is

"abateable." See Defs.' Resp. Brief on the Statute of Limitations, State Regulatory Standards,

Ultrahazardous Liability, Spoliation, and Negligent Trespass, filed August 18, 2005.  Plaintiffs

have offered no such evidence here.

Seventh, even if the "abateability" requirement is inapplicable (as this Court has ruled),

the following requirements must still be met in order for Section 930 to apply:  (1) the

defendant's *operational* activities which give rise to the trespass must be continuing; (2) the

defendant's intent to cause a class-wide trespass must be continuing; and (3) the plutonium

contamination resulting from the trespass must be continuing.  *See* Restatement (Second) of

Torts Section 930 ("(1) If one causes continuing or recurrent tortious invasions on the land of

another by the maintenance of a structure or acts or operations not on the land of the other . . .")

(emphasis added); Restatement (Second) of Torts Section 930, cmt. d ("Manifestly, this element

of depreciation is distinct from the loss in value brought by the actual effects of past invasions

(see Comment on § 929) such as damage by floods to the soil's fertility."); Restatement (Second)

of Torts Section 929, cmt. a (Section 929 (and not Section 930) applies where "future losses are

not contingent upon the continuance in the future of the defendant's wrongdoing, and hence the

result follows regardless of whether the owner can recover in advance for the prospective harm

of future operations of the cement plant. This is a distinct question that is dealt with in § 930")

(emphasis added).

Eighth, the uncontroverted evidence demonstrates that - far from being irrelevant  - - the

before-and-after approach is one used by economists to measure diminution in value.  (Trial Tr.

(Radke) at 2782; Trial Tr. (McFadden) at 9933 ("In your field, is it typical for the members of

143

your field if they want to determine whether or not some even had an effect on value to look

before and after a particular event in the manner that Dr. Radke did here vis-a-vis the F.B.I. raid?

A.  I would say that this is the most common way in economics more broadly in science to

determine if an event has an effect.")

Ninth, defendants object to this instruction to the extent that it omits defendants'

proposed instruction that "evidence regarding the timing of any diminution in value (such as

whether it came into existence before or after the FBI raid or some other specific event) may be

relevant to (1) whether any injurious situation became complete and comparatively enduring

between June 6, 1989 and March 26, 1992, and (2) whether the diminution arose from a trespass

or nuisance caused by the defendants."  Evidence that there was no additional diminution during

the time at which the injurious situation allegedly became complete and comparatively enduring

date suggests that the injurious situation did not, in fact, become complete and comparatively

enduring.  The reason why damages are measured at the time that the injurious situation became

complete and comparatively enduring under Restatement § 930 is that it is expected that some

amount of additional diminution will arise at that time.  *See* Restatement § 930, cmt. d

("Obviously, the standard, to be fair to the injured person, must not look to a time before the

invasions have begun and the effects of the injurious conditions have been revealed in their full

extent. At the time when the injurious situation has become complete and comparatively

enduring, the amount of depreciation because of the prospect of future invasion can be

determined with greatest accuracy.").

Evidence of the timing of diminution also is suggestive of the *cause* of the diminution.

For example, assuming that Hunsperger is correct that properties proximate to Rocky Flats had

144

already decreased in value prior to 1989, *see* 12/7/05 Trial Tr. at 6710–17, it cannot be said that such diminution was caused by the 1989 FBI raid.

Tenth, Eighth, defendants object to the instruction on the ground that it leads the jury to believe that plaintiffs do not have to tie their alleged diminution in value to any "event" (much less to defendants' allegedly actionable conduct).  Only diminution in value resulting from defendants' allegedly actionable conduct (as opposed to diminution in value attributable to mere proximity to Rocky Flats) is actionable here.  *See, e.g.*, Sen. Rep. No. 296, 85th Cong., 1st Sess. at 16 (1957) (Price-Anderson Act legislative history) ("It is not the intention of the committee to have the damage to property which is included in the term 'nuclear incident' include the diminution in value or other similar causes of action which may occur, namely, from the location of an atomic energy activity at a particular site."); *Staley v. Segal*, 841 P.2d 379, 382 (Colo. Ct. App. 1992) (diminution in value attributable to proximity to neighboring hog facility insufficient to establish nuisance liability).

## INSTRUCTION NO. 3.25

Both Claims

Affirmative Defense:  Setoff

If you find that the Plaintiff Class has proved actual damages, then you must consider whether Dow and Rockwell have proved their affirmative defense of setoff.

This defense is based on the rule that if the defendant's wrongful conduct has caused harm to the plaintiff, but also has conferred a direct benefit on the plaintiff, then the value of the benefit conferred mitigates, that is reduces, the actual damages that may be recovered for the defendant's wrongful conduct.

In this case, Dow and Rockwell argue that any trespass or nuisance you find harmed the Plaintiff Class by diminishing the value of their properties also conferred a benefit on the Class because all or some Class members purchased their properties at a diminished price as a result of the same trespass or nuisance.

In order to prevail on this affirmative defense of setoff, Dow and Rockwell must prove by a preponderance of the evidence:

1.      That the trespass and/or nuisance that damaged the Plaintiff Class by diminishing the value of property in the Class Area also caused a diminution in the value of Class Properties in one or more specific time periods before June 7, 1989; and

2.      The amount of any such pre-existing diminution in the value of Class properties, expressed as the percentage decrease in value, for each specific time period or periods for which Defendants proved a pre-June 7, 1989 diminution in Class property values caused by their trespass and/or nuisance.

146

If you find that Dow and/or Rockwell did not prove both of the elements for setoff by a preponderance of the evidence, then you must find Dow and/or Rockwell failed to prove this affirmative defense.

On the other hand, if you find that Dow and/or Rockwell proved both elements of this defense by a preponderance of the evidence, then you must find they proved this affirmative defense as to the time period or periods you report on the Jury Verdict Form.  If you make this finding, then your findings regarding the pre-existing percentage diminution in value for the specific time period or periods will be used in a later proceeding to calculate the amount by which the Plaintiffs' actual damages will be reduced on account of this defense of setoff.

If you find Dow and/or Rockwell has proved this affirmative defense, then you must use calm discretion and sound reason, not sympathy, prejudice, or speculation, in fixing the amount of any pre-existing diminution in Class property values.  Difficulty or uncertainty in determining the precise amount of any setoff does not prevent you from deciding an amount.  You should use your best judgment based on the evidence.

### Defendants' Objections:

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, as previously briefed, defendants' position is that whether a class member purchased their class property at a discount is not an issue relating to mitigation of damages; rather, it is an issue concerning whether the alleged diminution in value occurred during the time that a plaintiff owned his or her property. *See* Defendants' Response to Plaintiffs' Proposed Plan

147

for Determination of Compensatory Damages, filed July 21, 2004.  To the extent the Court has

ruled that the "prior market discount" argument is an affirmative defense with respect to which

defendants bear the burden of demonstrating a pre-existing discount, defendants preserve their

disagreement with the Court's ruling.  The plaintiff - not the defendant - bears the burden of

proving both the fact and the amount of damages.  *See Buckley Powder Co. v. State*, 70 P.3d 547,

563 (Colo. App. 2002).  Unless a plaintiffs shows that the alleged "Rocky Flats discount" was

greater when he or she sold the property then when he or she purchased the property, not even

the fact of damages has been proved.  Nor is the so-called prior market discount defense an

"affirmative defense."  Plaintiffs have cited no cases from any jurisdiction holding that evidence

as to the price at which a plaintiff purchased his or her property is an affirmative defense.

According to Wright & Miller, an affirmative defense "encompasses two types of defensive

allegations: those that admit the allegations of the complaint but suggest some other reason why

there is no right of recovery, and those that concern allegations outside of the plaintiff's prima

facie case that the defendant therefore cannot raise by a simple denial in the answer."  Wright &

Miller, 5 Fed. Prac. & Proc. Civ.3d § 1271.  Defendants do not "admit the allegations of the

complaint" by arguing for a prior market discount – to the contrary, the existence of a prior

market discount negates the allegations of the complaint because plaintiffs have no suffered any

damages.  For the same reason, a prior market discount does not concern "allegations outside of

the plaintiff's prima facie case" because a plaintiff is required to plead and prove damages as part

of his prima facie case.

   Third, defendants object to this instruction to the extent that it is not revised to reflect

defendants' proposed instruction No. 3.25 filed January 10, 2006.  As set forth in that revised

148

instruction, the issue is not whether defendants "conferred a benefit" on plaintiffs (which sounds patronizing), but instead whether plaintiffs would "receive a windfall" if they were awarded damages because they purchased their properties at a price that was already discounted for the value of Rocky Flats. *See   See, e.g., Bd. of County Comm'rs v. Slovek*, 723 P.2d 1309, 1314 (Colo. 1986) ("The trial court must take as its principal guidance the goal of reimbursement of the plaintiff for losses actually suffered, but must be vigilant not to award damages that exceed the goal of compensation and inflict punishment on the defendant."); *see also generally* Defs.' Mem. re Class-Wide Damages Proof and "Set-Off" filed 10/20/04.

Fourth, defendants object to this instruction to the extent that it requires defendants to prove that a prior market discount existed for specific time periods, or in specific amounts. Plaintiffs bear the burden of proof on damages. Even if defendants did bear the burden of proof, uncertainty as to the length of time that the prior market discount goes back should not preclude a determination that there was a prior market discount, so long as the jury determines that the discount went back for some length of time. Moreover, with respect to the amount of the prior market discount, the jury should be allowed to determine that it is simply equal to the amount of affirmative damages, if any, proved by the plaintiffs as of the complete and comparatively enduring. In other words, defendants should be allowed to argue in the alternative that there are no damages, but if there are damages, then the prior market discount applies.

149

## INSTRUCTION NO. 3.26

### Both Claims

### Multiple Recovery Prohibited

A plaintiff in a civil action may recover only once for the same injury, even though the plaintiff seeks an award for that injury under several claims for relief or against multiple defendants. For example, a plaintiff who lost $100 as a result of the conduct of multiple defendants may recover only $100, even if the plaintiff sought $100 in damages from each defendant on one claim, and $100 in damages from each defendant on a different claim.

In this case, Plaintiffs are seeking to recover from Dow and Rockwell on the claims of trespass and nuisance on behalf of the Class. Under the rule prohibiting multiple recovery, the Plaintiffs may recover actual damages only once, even if you return verdicts in their favor on more than one claim for relief, or against more than one Defendant.

I am instructing you on the rule prohibiting multiple recovery so that you will be aware of the law on the issue. It is I, rather than you, however, who will apply the rule. You are specifically instructed to consider the Plaintiffs' nuisance and trespass claims against each Defendant independently. That is, you are to consider each of those claims as though it were the only claim in the case. If you find for Plaintiffs on either of these claims against either Dow or Rockwell, you are to write an award of damages on that claim without regard to your finding for or against Dow or Rockwell on any other claim. I will apply the rule prohibiting multiple recovery when I issue my judgment on your verdict, whatever that may be.

150

Perhaps it bears repeating that nothing in this or any other instruction is meant to suggest what your finding on any or all claims should be.  My instructions on damages are only to be applied in the event you find for Plaintiffs on one or more of their claims.