## INSTRUCTION NO. 3.27

Both Claims

Punitive Damages

If you find for Plaintiffs and award them actual damages on their claims of trespass and/or nuisance against either Dow or Rockwell or both of them, then you must consider whether you should award punitive damages against the same Defendant or Defendants that you found liable for trespass and/or nuisance.

For Plaintiffs to recover punitive damages, they must prove beyond a "reasonable doubt" that the conduct of the Defendant that committed the trespass and/or nuisance was "willful and wanton." In deciding this question with respect to any conduct relating to plutonium or other radioactive materials, you can only consider the Defendant's conduct up to August 20, 1988, including conduct occurring before this date that resulted in harm on or after that date.

"Willful and wanton" conduct means an act or omission purposefully committed by the Defendant in question, who must have realized that the conduct was dangerous, and which conduct was done heedlessly and recklessly, either without regard to the consequences, or without regard to the rights and safety of others, particularly the Plaintiff Class.

"Reasonable doubt" means an uncertainty of mind in which your judgment is not at rest and you can explain this uncertainty based on a fair and thoughtful consideration of all of the evidence, or lack of evidence, in the case.

The purpose of punitive damages is not to compensate the Plaintiffs, but rather to punish the Defendant, and to deter that Defendant and others from committing such acts in the future.

If you find beyond a reasonable doubt that one or both of the Defendants acted in a willful and wanton manner, then you may award a reasonable sum as punitive damages against the Defendant or Defendants you found acted in this manner.  :The sum you award may not be more than the amount you awarded as actual damages against the Defendant or Defendants.

### Defendants' Objections:

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, defendants object to these instructions to the extent that they do not limit plaintiffs to punitive damages for trespass or intentional nuisance, as opposed to negligent nuisance.  Plaintiffs may not recover punitive damages for defendants' conduct found merely to be negligent. *See Van Leeuwan v. Nuzzi*, 810 F. Supp. 1120, 1124 (D. Colo. 1993) ("Van Leeuwan's viable claims are based on negligence, not intentional, malicious conduct.  Her request for punitive damages is stricken.") (Kane, J.).

Third, defendants object to this instruction to the extent that it does not properly reflect the limits on punitive damages impose under the Price Anderson Amendments Act.  Under the Price Anderson Amendments Act of 1988, "[n]o court may award punitive damages in any action with respect to a nuclear incident . . . ."  42 U.S.C. § 2210(s).  Under this Court's interpretation of that provision,  the Act bars punitive damages only for "nuclear incidents occurring on or after" August 20, 1988. *See Cook v. Rockwell Intern. Corp.*, 755 F. Supp. 1479-81 (D. Colo. 1991).   A "nuclear incident" is defined as "any *occurrence . . . causing* . . . bodily injury, sickness, disease, or death, or *loss of or damage to property, or loss of use of property*,

arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of [nuclear materials.]" 42 U.S.C. § 2014(q) (emphasis added).   Thus, under the Amendments Act, to determine whether punitive damages can be awarded, the jury must first determine when the "nuclear incident" (in the case, the "occurrence . . . causing . . . loss of or damage to property, or loss of use of property") happened.  If the nuclear incident occurred after August 20, 1988, the jury may not award punitive damages.  *See Cook v. Rockwell Intern. Corp.*, 755 F. Supp. 1479-81 (D. Colo. 1991).   If a portion of the "nuclear incident" (or "nuclear incidents") occurred before August 20, 1988, and a portion of the "nuclear incident" (or "nuclear incidents") occurred after August 20, 1988, then the maximum amount of punitive damages that may be awarded is limited to the amount of damages attributable to the "nuclear incidents" occurring prior to August 20, 1988.[13]  Thus, given the Court's rulings in this case, a nuclear incident could have "occurred" before August 20, 1988 only if class members experienced "***loss of or damage to property, or loss of use of property***" before August 20, 1988.  42 U.S.C. § 2014(q).  The jury instruction should reflect this standard, but instead states that it is whether the conduct occurred before August 20, 1988 (as opposed to whether the loss occurred before August 20, 1988) that matters.

---

[13] *See Hensley v. Tri-QSI Denver Corp.*, 98 P.3d 965 (Colo. App. Aug. 12, 2004) (if punitive damages are not allowed for a particular claim, then compensatory damages awarded pursuant to that claim do not increased the amount of punitive damages may be awarded; *e.g.*, if $2,500 is awarded for a claim for which punitives are allowed, and $7,500 is awarded for a claim for which punitive damages are not allowed, then the maximum amount of punitive damages that may be awarded is $2,500); *see also Cook v. Rockwell Intern. Corp., Nuclear Reg*, 755 F. Supp. 1468, 1480 (D. Colo. 1991) ("plaintiffs have alleged distinct 'nuclear incidents' occurring before August 20, 1988") [13]

Fourth, defendants preserve the position that the Price Anderson Act bars plaintiffs from pursuing punitive damages entirely. *See In re Hanford Nuclear Reservation Litig.*, 780 F. Supp. 1551, 1572 n.38 (E.D. Wash. 1991) (Section 2014(hh) of the Act, which provides that state law does not apply in a Price Anderson Act case if that state law is inconsistent with (among other things) the prohibition on punitive damages in Section 2210(h), ***expressly*** applies to nuclear incidents occurring "***before, on, or after*** the date of the enactment of this Act," and thus is not covered by the "catch all" provision that restricts the applicability of ***other*** provisions of the act to dates "on or after August 20, 1988); *see also* Pub.L. 100-104, § 20(a), Historical and Statutory Notes to 42 U.S.C.A. § 2014 (West Supp.1990) ("(a) ***Except as provided in subsection (b)***, the amendments made by this Act [enacting section 2282a of this title, amending this section and sections 2210 and 2273 of this title, and enacting provisions set out as notes under sections 2011 and 2210 of this title] shall become effective on the date of the enactment of this Act [Aug. 20, 1988] and shall be applicable with respect to nuclear incidents occurring on or after such date. (b)(1) The amendments made by section 11 [***enacting subsec. (hh)*** and (jj) of this section and section 2210(m)(3) of this title and amending section 2210(m)(2) and (o) of this title] shall apply to nuclear incidents occurring ***before, on, or after*** the date of the enactment of this Act [Aug. 20, 1988].") (emphasis added).

## INSTRUCTION NO. 3.28

### Additional Questions

In addition to deciding the issues of trespass, nuisance and damages in this action, I will ask you at the end of the trial to answer several additional questions that will help me and the parties in future proceedings in this case. The first two questions are related. They are:

1.      Did it appear on or before January 30, 1990, which is the date this case was filed, that the alleged trespass and/or nuisance by Dow or Rockwell or both of them would continue indefinitely? In answering this question, "continue indefinitely" means there was no reason to expect that the trespass and/or nuisance would end at any definite time in the future.

2.      If your answer to Question No. 1 is "no," then when did it become apparent that the proven trespass and/or nuisance would continue indefinitely?

The third additional question concerns a form of interference with the use and enjoyment of property. Plaintiffs assert that one of the ways Dow and Rockwell interfered with Class members' use and enjoyment of their land was by causing individual Class members to suffer fear, anxiety or mental discomfort because of concerns about risks created by Defendants' activities at Rocky Flats. Because this is a trial of claims by the whole Class, I earlier instructed you not to consider whether individual Plaintiffs or Class members suffered this form of interference in deciding whether Plaintiffs had proved their class-wide nuisance claim (see Instruction No. 3.7). Nonetheless, to assist me and the parties in deciding how to proceed later in this case, you will be asked to answer the following question:

Have Plaintiffs proved by a preponderance of the evidence that the intentional or

negligent conduct of Dow or Rockwell or both of them at Rocky Flats, and/or actual or

threatened harms caused by such conduct, created a situation that is capable of causing

fear, anxiety or mental discomfort in individual Class members?

In answering this question, you should know that Plaintiffs do not need to show that any

actual or threatened future contamination from Rocky Flats poses an actual or verifiable health

risk.  An individual Class members' fear, anxiety or mental discomfort can also be based on

concerns that may be without scientific foundation or other support in fact.


### Defendants' Objections:

First, defendants incorporate by reference herein the objections and proposed instructions

set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, as defendants have stated repeatedly, defendants object to the question of

"generic emotional distress" being tried on a classwide basis. *See* Defendants' Response to

Plaintiffs' Statement Regarding Alleged Forms of Interference With Use and Enjoyment, filed

November 30, 2004.

Third, to the extent that "generic emotional distress" is tried on a classwide basis, such a

trial violates the Seventh Amendment.  The Seventh Amendment provides: "In Suits at common

law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be

preserved, and no fact tried by jury, shall be otherwise reexamined in any Court of the United

States, than according to the rules of the common law." U.S. Const. Amend. VII (emphasis

added).  The Seventh Amendment "entitles parties to have fact issues decided by one jury, and

prohibits a second jury from reexamining those facts and issues." *Castano v American Tobacco Co.*, 84 F.3d 734, 750 (5th Cir. 1996). This rule is in part based on the rationale that "if two juries were allowed to pass on an issue involving the same factual and legal elements, the verdicts rendered by those juries could be inconsistent, producing intolerably anomalous results." *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 305 (5th Cir. 1993).

In the class action context, some courts have permitted bifurcation so long as the "the judge [does] not divide issues between separate trials in such a way that the same issue is reexamined by different juries." *In re Rhone-Poulenc-Rorer Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995). However, "such division must 'carve at the joint' between liability and damages." *Rhone-Poulenc*, 51 F.3d at 1302.

This jury instruction would violate the Seventh Amendment in two ways. First, one jury would determine "[t]he generic causation question of whether Defendants' activities and the conditions resulting from them were capable of causing Class members to suffer fear, anxiety or other mental or emotional discomfort." (5/17/05 Order at 7) Subsequent juries would then determine the question of whether defendants' activities did in fact cause class members fear, anxiety, or other mental or emotional discomfort. Having two or more juries reexamine the issue of proximate causation violates the Seventh Amendment. As the Court held in *In re Methyl Tertiary Butyl Ether (""MTBE"") Products Liability Litigation*, 209 F.R.D. 323 (S.D.N.Y. 2002).

> [P]laintiffs propose that litigation be divided between generic and specific liability in a way that violates the Seventh Amendment's prohibition on reexamination of a jury verdict. See U.S. Const. amend. VII. While a court may instruct a jury to try only certain issues, see Simon, 200 F.R.D. at 32-35 (defending liberal use of Rule 23(c)(4) to aid judicial efficiency), it is constitutionally limited by concerns over juror confusion and uncertainty, see id. at 36-39 (discussing *Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 75 L.Ed. 1188 (1931)). Here, juries in follow-on suits would be charged with the impermissible

task of sorting out the following issues: (1) whether defendants were liable to a
particular individual given the first jury's finding of general liability; (2) whether
a particular release of gasoline was foreseeable in light of the first jury's
determination of general foreseeability; and (3) whether a particular UST owner
received a warning in light of a jury finding that no warnings were given in
general. *See Rhone-Poulenc*, 51 F.3d at 1303-04 (explaining juror confusion that
would result from attempting to decide comparative negligence and proximate
causation in follow-on trials where "negligence" had already been determined);
accord *In re Fibreboard Corp.*, 893 F.2d 706, 712 (5th Cir.1990) (rejecting
proposal that "general causation" issue be tried because "[c]ommonality among
class members on issues of causation and damages can be achieved only by lifting
the description of the claims to a level of generality that tears them from their
substantively required moorings to actual causation and discrete injury."); *In re
Agent Orange*, 818 F.2d at 164-65 (stating that "generic causation" is not a proper
issue that may be tried in a class action).

*Id.* at 352; *see also, e.g., Neely v. Ethicon, Inc.,* 2001 WL 1090204 (E.D. Tex. 2001). As the

Court further recognized in *MTBE*, "[i]t is well-settled that bifurcation of trial is authorized in

federal court, but such division must "carve at the joint" between liability and damages" *Id.* at

352 (*citing Rhone-Poulenc*, 51 F.3d at 1302).

Here, with respect to the issue of "generic causation" of emotional distress, there is no

"carving at the joint" between "liability" and "damages." Rather, "liability" itself is "carved" in

two, because one jury determine generic causation of emotional distress, and a second jury

determines individual causation of emotional distress.

Finally, defendants have been unable to locate any precedent from any court regarding a

trial on "general causation of emotional distress." Even apart from the fact that a trial on

"general causation of emotional distress" would violate the Seventh Amendment, generic

causation should not be tried for the very first time in the United States (to the best of

defendants' knowledge) as part of a case that is already filled with complex issues.

159

Fourth, as defendants have stated on previous occasions (though the Court has rejected this argument, and defendants merely seek to preserve the issue here, defendants object to this instruction to the extent that it does not require "scientific foundation or other support" as being contrary to Colorado and Tenth Circuit law. The Tenth Circuit has predicted that the Colorado Supreme Court would rule that unscientific fears cannot give rise to recovery under Colorado law, even if those fears are "normal" for the community. *See Boughton v. Cotter Corp.*, 65 F.3d 823, 831-33 & 832 n.13 (10th Cir. 1995) (predicting that Colorado Supreme Court would *not* follow Section 821F, under which, "[i]n determining whether the harm would be suffered by a normal member of the community, fears and other mental reactions common to the community are to be taken into account, even though they may be without scientific foundation or other support in fact," and that Colorado Supreme Court would not allow "compensation for wholly unfounded fears").

Fifth, defendants object to the language: "no reason to expect that the trespass and/or nuisance would end at any definite time in the future." There is no requirement the trespass or nuisance be scheduled to end at a definite time, so long as it is expected that the plutonium will be removed at some time in the future. What is important under Section 930 is an expectation that the trespass or nuisance will cease - not the expectation that the trespass will cease by *some* date certain. Moreover, the instruction misquotes the comments to Section 930 - those comments do not require that the invasion be expected to cease by *a* definite time in the future, but rather that the invasion by expected to cease by *any* definite time in the future. *See* Restatement (Second) of Torts Section 930, cmt. b ("'Indefinitely' as used in this Section does

not mean that the situation may be expected to last forever, but merely that there is no reason to expect its termination at *any* definite time in the future.")

Sixth, defendants object to this instruction to the extent that it does not require class-wide proof, as required by defendants' proposed instruction proffered on January 10, 2006. This is a class trial and no individual claims are being tried. *See, e.g.,* 5/17/04 Order, at 3. If plaintiffs do not prove their claims for the class as a whole, then no class member may recover. *See, e.g.,* 28 U.S.C. § 2072 (class action device cannot be used to "abridge, enlarge or modify any substantive right" of any litigant); *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 845 (1999); *Amchem Products Inc. v. Windsor,* 521 U.S. 591, 613 (1997). For the same reason, the sentence stating "I will now instruct you about these claims" should be changed to read: "I will not instruct you about the class claims."

## INSTRUCTION NO. 4.1

### Jury Deliberations - General Instructions

Each of you has a copy of the instructions to consult as you find it necessary. You may keep your copy throughout the trial and in your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts, you must apply and follow the law as I give it to you whether you agree with it or not. You must base your verdict upon the evidence. You must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means you must decide the case solely on the evidence before you and according to the law as I give it to you. You have taken an oath promising to do just so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. You must not read into these instructions or into anything I may say or do any suggestions as to what verdict you should return. Your verdict is a matter entirely for you to decide.

## INSTRUCTION NO. 4.2

### Jury - Deliberations

When you go to the jury room to begin your deliberations, you must elect one member of the jury as your Presiding Juror. He or she will preside over your deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreements if you can do so. In order to answer any question on the Verdict Form, nine jurors must agree upon the answer. It is not necessary that the jurors who agree on the answer be the same jurors who agreed on the answer to any other question, so long as nine jurors agree to each answer.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it with your fellow jurors, and listened to the views of your fellow jurors. I offer some suggestions on how you might do this in the next jury instruction, entitled "Jury - The Deliberations Process."

Do not be afraid to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach agreement to answer the questions on the Verdict Form, but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight of the evidence simply to reach an answer.

163

## INSTRUCTION NO. 4.3

### Jury - The Deliberations Process

Once you have elected your Presiding Juror as directed by the previous instruction, you are free to proceed as you agree is appropriate. Therefore, I am not directing you how to proceed, but I offer the following suggestions that other juries have found helpful so that you can proceed in an orderly fashion, allowing full participation by each juror, and arrive at a verdict that is satisfactory to each of you.

First, it is the responsibility of the Presiding Juror to encourage good communication and participation by all jurors and to maintain fairness and order. Your Presiding Juror should be willing and able to facilitate productive discussions even when disagreements and controversy arise.

Second, the Presiding Juror should let each of you speak and be heard before expressing his or her own views.

Third, the Presiding Juror should never attempt to promote nor permit anyone else to promote his or her personal opinions by coercion or intimidation or bullying of others.

Fourth, the Presiding Juror should make certain that the deliberations are not rushed to reach a conclusion.

If the Presiding Juror you select does not meet these standards, he or she should voluntarily step down or be replaced by a majority vote.

After you select a Presiding Juror you should consider electing a secretary who will tally the votes, help keep track of who has or hasn't spoken on the various issues, make certain that all of you are present whenever deliberations are under way and otherwise assist the Presiding Juror.

164

Some juries are tempted at this point to hold a preliminary vote on the case before them to "see where we stand." It is most advisable, however, that no vote be taken before a full discussion is had on the issue to be voted on, otherwise you might lock yourself into a certain view before considering alternative and possibly more reasonable interpretations of the evidence. Experience has also shown that such early votes frequently lead to disruptive, unnecessarily lengthy, inefficient debate and ineffective decision-making.

Instead, I suggest the Presiding Juror begin your deliberations by directing the discussion to establishing informal ground rules for how you will proceed. These rules should assure that you will focus upon, analyze and evaluate the evidence fairly and efficiently and that the viewpoints of each of you is heard and considered before any decisions are made. No one should be ignored. You may agree to discuss the case in the order of the questions presented in the special verdict form or in chronological order or according to the testimony of each witness. Whatever order you select, however, it is advisable to be consistent and not jump from one topic to another.

To move the process of deliberation along in the event you reach a controversial issue, it is wise to pass it temporarily and move on to the less controversial ones and then come back to it. You should then continue through each issue in the order you have agreed upon unless a majority of you agrees to change the order.

It is very helpful, but certainly not required of you, that all votes be taken by secret ballot. This will help you focus on the issues and not be overly influenced by personalities. Each of you should also consider any disagreement you have with another juror or jurors as an opportunity for improving the quality of your decision and therefore should treat each other with respect.

165

Any differences in your views should be discussed calmly and, if a break is needed for that purpose, it should be taken.

Each of you should listen attentively and openly to one another before making any judgment. This is sometimes called "active listening" and it means that you should not listen with only one ear while thinking about a response. Only after you have heard and understood what the other person is saying should you think about a response. Obviously, this means that, unlike TV talk shows, you should try very hard not to interrupt. If one of your number is going on and on, it is the Presiding Juror who should suggest that the point has been made and it is time to hear from someone else.

You each have a right to your individual opinion, but you should be open to persuasion. When you focus your attention and best listening skills, others will feel respected and, even while they may disagree, they will respect you. It helps if you are open to the possibility that you might be wrong or at least that you might change your mind about some issues after listening to other views.

Misunderstanding can undermine your efforts. Seek clarification if you do not understand or if you think others are not talking about the same thing. From time to time the Presiding Juror should set out the items on which you agree and those on which you have not yet reached an agreement.

In spite of all your efforts, it is indeed possible that serious disagreements may arise. In that event, recognize and accept that "getting stuck" is often part of the decision making process. It is easy to fall into the trap of believing that there is something wrong with someone who is not ready to move toward what may be an emerging decision. Such a belief is not helpful. It can

lead to focusing on personalities rather than the issues. It is best to be patient with one another. At such times slower is usually faster. There is a tendency to set deadlines and seek to force decisions. Providing a break or more time and space, however, often helps to shorten the overall process.

You may wish from time to time to express your mutual respect and repeat your resolve to work through any differences. With such a commitment and mutual respect, you will most likely render a verdict that leaves each of you satisfied that you have indeed rendered justice.

## INSTRUCTION NO. 4.4

### Communications with the Judge

If it becomes necessary during your deliberations to communicate with me, you may send a folded note through the court security officer, signed by one of you.  Do not disclose the content of your note to the court security officer.  No member of the jury should hereafter attempt to communicate with me except by signed writing; and I will communicate with any member of the jury on anything concerning the case only in writing, or orally here in open court. You are not to tell anyone - including me - how the jury stands, numerically or otherwise, until you have reached a verdict or I have discharged you.

If you send a note to me containing a question or request for further direction, please bear in mind that responses take considerable time and effort.  Before giving an answer or direction I must first notify counsel and bring them back to the court.  I must confer with them, listen to arguments, research the legal authorities, if necessary, and reduce the answer or direction to writing.

There may be some question that, under the law, I am not permitted to answer.  If it is improper for me to answer the question, I will tell you that.  Please do not speculate about what the answer to your question might be or why I am not able to answer a particular question.

In some instances jurors request that certain testimony be read to them.  This cannot be done as it is inappropriate for the court to single out testimony.  In those circumstances you must rely upon your own recollection.

## INSTRUCTION NO. 4.5

### Jury Verdict Form

You will each have copies of a document called a Jury Verdict Form.  You are instructed to answer the questions in each Jury Verdict Form as directed in that form.

In order to answer any question on the Jury Verdict Form, nine jurors must agree upon the answer.  It is not necessary that the jurors who agree on the answer be the same jurors who agreed on the answer to any other question, so long as nine jurors agree to each answer.

Upon arriving at an agreement, your Presiding Juror will insert each answer on the Jury Verdict Form.  After all of the questions have been answered as directed by the Jury Verdict Form, your Presiding Juror will date each Jury Verdict Form, sign it, and then ask all of the other jurors to sign it.

After you have filled out the Jury Verdict Forms in this manner, your Presiding Juror should advise the court security officer stationed outside the jury room that you have reached a verdict.

**Defendants' Objections:**

Defendants object to the use of a combined jury verdict form for both defendants.  In support of their proposed joint verdict form, plaintiffs referred to the doctrine of joint and several liability.  However, joint and several liability is a collection doctrine that has no application to this case.  Dow and Rockwell are two separate defendants with separate and independent conduct.  Each defendant operated the plant at different times—Dow operated the plant from 1952 to 1975, and Rockwell from 1975 to 1989—and is alleged to have committed different

169

conduct.  Because Dow cannot be held liable for Rockwell's conduct, nor Rockwell for Dow's, each defendant should be treated as if the other were never there.  Dow cannot be held responsible for damages that (hypothetically) occurred in 1989 as a result of the FBI Raid (assuming as plaintiffs' witness Mr. Holeman testified that Dow had nothing to do with the FBI Raid).   Nor can Rockwell be held responsible for damages that (hypothetically) occurred in 1970 as a result of plutonium contamination.  *See Westric Battery Co. v. Standard Elec Co.*, 482 F.2d 1307, 1318 (10th Cir. 1973) (stating that it is "only the damage flowing legally from the defendant's misdeeds which counts); *Schmidt & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 415 (7th Cir. 1992) (Posner, J.) ("For years we have been saying, without much visible effect, that people who want damages have to prove them, using methodologies that need not be sophisticated but must not insult the intelligence . . . . The expert should have tried to separate the damages that resulted from the lawful entry of a powerful competitor - Nordisco - from the damages that resulted from the particular forms of misconduct allegedly committed by that competitor.").

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **90-cv-181-JLK**

**MERILYN COOK, et al.,**

Plaintiffs,

v.

**ROCKWELL INTERNATIONAL CORPORATION AND THE DOW CHEMICAL COMPANY,**

Defendants.

---

## JURY VERDICT FORM

---

We the jury in the above entitled case, being first duly empaneled and sworn and having heard the evidence at trial and being instructed in the applicable law, present our Answers to the Questions submitted by the Court, to which we have agreed as provided in Instruction No. 4.5.

### ¶ A.   Trespass Claim Against Defendant Dow Chemical Company

With regard to Plaintiffs' claim against Defendant Dow Chemical Company ("Dow") for trespass (*Instruction Nos. 3.2 through 3.5*), we find as follows:

1.    Do you find that plutonium from Rocky Flats is present on the Class Properties *(see Instruction No. 3.3)*?

ANSWER: _____ Yes        _____ No.

IF YOUR ANSWER TO QUESTION NO. 1 IS "YES," THEN GO TO QUESTION NO. 2.  IF YOUR ANSWER TO QUESTION NO. 1 IS "NO," THEN SKIP TO ¶ B.

2.      Do you find that Dow intentionally undertook an activity or activities that in the usual course of events caused plutonium from Rocky Flats to be present on the Class Properties *(see Instruction No. 3.18)*?

ANSWER:  _____ Yes  _____ No.

IF YOUR ANSWER TO QUESTION NO. 2 IS "YES," THEN GO TO QUESTION NO. 3.  IF YOUR ANSWER TO QUESTION NO. 2 IS "NO," THEN SKIP TO ¶ B.

3.      Do you find it appears that this plutonium will continue to be present on the Class Properties <u>indefinitely</u> *(see Instruction No. 3.4)*?

ANSWER:  _____ Yes  _____ No

IF YOU ANSWERED "YES" TO QUESTION NOS. 1-3 1- 3 IN THIS PARAGRAPH, THEN YOU HAVE FOUND FOR PLAINTIFFS AND AGAINST DOW ON THIS TRESPASS CLAIM.

PLEASE GO TO ¶ B.

## ¶ B.   <u>Trespass Claim Against Rockwell International Corporation</u>

With regard to Plaintiffs' claim against Defendant Rockwell International Corporation ("Rockwell") for trespass *(Instruction Nos. 3.2 through 3.5)*, we find as follows:

1.     Do you find that plutonium from Rocky Flats is present on the Class

Properties *(see Instruction No. 3.3)*?

            **ANSWER:** _____ Yes          _____ No.

IF YOUR ANSWER TO QUESTION NO. 1 IS "YES," THEN GO TO
QUESTION NO. 2.  IF YOUR ANSWER TO QUESTION NO. 1 IS "NO," THEN
SKIP TO ¶ C.

2.     Do you find that Rockwell intentionally undertook an activity or activities

that in the usual course of events caused plutonium from Rocky Flats to be present on the

Class Properties *(see Instruction No. 3.18)*?

            **ANSWER:** _____ Yes          _____ No.

IF YOUR ANSWER TO QUESTION NO. 2 IS "YES," THEN GO TO
QUESTION NO. 3.  IF YOUR ANSWER TO QUESTION NO. 2 IS "NO," THEN
SKIP TO ¶ C.

3.     Do you find it appears that this plutonium will continue to be present on the

Class Properties <u>indefinitely</u> *(see Instruction No. 3.4)*?

            **ANSWER:** _____ Yes          _____ No

IF YOU ANSWERED "YES" TO QUESTION NOS. ~~1-3~~ 1- 3 IN THIS
PARAGRAPH, THEN YOU HAVE FOUND FOR PLAINTIFFS AND
AGAINST ROCKWELL ON THIS TRESPASS CLAIM.

PLEASE GO TO ¶ C.

## ¶ C.   <u>Nuisance Claim Against Dow Chemical Company</u>

With regard to Plaintiffs' claim against Dow for nuisance (*Instruction Nos. 3.6 through 3.17*), we find as follows:

1.   Do you find Dow interfered with Class members' use and enjoyment of their properties in the Class Area in one or both of these ways: (a<u>A</u>) by causing Class members to be exposed to plutonium and placing them at some increased risk of health problems as a result of this exposure *(see Instruction Nos. 3.7, 3.18)*; and/or (b<u>B</u>) by causing objective conditions that pose a demonstrable risk of future harm to the Class Area *(see Instruction Nos. 3.7, 3.18)*?

**ANSWER:** _____ Yes        _____ No

IF YOUR ANSWER TO QUESTION NO. 1 IS "YES," THEN GO TO QUESTION NO. 2.  IF YOUR ANSWER TO QUESTION NO. 1 IS "NO," THEN SKIP TO ¶ D.

2.   Do you find this interference with Class members' use and enjoyment of their properties was both "unreasonable" and "substantial" *(see Instruction Nos. 3.8 - 3.12)*?

**ANSWER:** _____ Yes        _____ No.

IF YOUR ANSWER TO QUESTION NO. 2 IS "YES," THEN GO TO QUESTION NO. 3.  IF YOUR ANSWER TO QUESTION NO. 2 IS "NO," THEN SKIP TO ¶ D.

3.      Do you find the activity or activities causing the unreasonable and substantial interference by Dow were either "intentional" or "negligent" *(see Instruction Nos. 3.13 - 3.16)*?

**ANSWER:** _____ Yes          _____ No

IF YOUR ANSWER TO QUESTION NO. 3 IS "YES," THEN GO TO QUESTION NO. 4.  IF YOUR ANSWER TO QUESTION NO. 3 IS "NO," THEN SKIP TO ¶ D.

4.      Do you find it appears the unreasonable and substantial interference with the use and enjoyment of property caused by Dow's intentional or negligent conduct will continue indefinitely *(see Instruction No. 3.17)*?

**ANSWER:** _____ Yes          _____ No

IF YOU ANSWERED "YES" TO QUESTION NOS. 1- 4 IN THIS PARAGRAPH, THEN YOU HAVE FOUND FOR PLAINTIFFS AND AGAINST DOW ON THIS NUISANCE CLAIM.

PLEASE GO TO ¶ D.

**¶ D.  Nuisance Claim Against Rockwell International Corporation**

With regard to Plaintiffs' claim against Rockwell for nuisance *(Instruction Nos. 3.6 through 3.17)*, we find as follows:

1.      Do you find Rockwell interfered with Class members' use and enjoyment of their properties in the Class Area in one or both of these ways: (a̶A̲) by causing Class members to be exposed to plutonium and placing them at some increased risk of health problems as a result of this exposure *(see Instruction Nos. 3.7, 3.18)*; and/or (b̶B̲) by

6

causing objective conditions that pose a demonstrable risk of future harm to the Class Area *(see Instruction Nos. 3.7, 3.18)*?

ANSWER: _____ Yes _____ No

IF YOUR ANSWER TO QUESTION NO. 1 IS "YES," THEN GO TO QUESTION NO. 2. IF YOUR ANSWER TO QUESTION NO. 1 IS "NO," THEN SKIP TO ¶——¶E.

2.    Do you find this interference with Class members' use and enjoyment of their properties was both "unreasonable" and "substantial" *(see Instruction Nos. 3.8 - 3.12)*?

ANSWER: _____ Yes _____ No.

IF YOUR ANSWER TO QUESTION NO. 2 IS "YES," THEN GO TO QUESTION NO. 3. IF YOUR ANSWER TO QUESTION NO. 2 IS "NO," THEN SKIP TO ¶——¶E.

3.    Do you find the activity or activities causing the unreasonable and substantial interference by Rockwell were either "intentional" or "negligent" *(see Instruction Nos. 3.13 - 3.16)*?

ANSWER: _____ Yes _____ No

IF YOUR ANSWER TO QUESTION NO. 3 IS "YES," THEN GO TO QUESTION NO. 4. IF YOUR ANSWER TO QUESTION NO. 1 IS "NO," THEN SKIP TO ¶ E.

4.     Do you find it appears the unreasonable and substantial interference with

the use and enjoyment of property caused by Rockwell's intentional or negligent conduct

will continue indefinitely *(see Instruction No. 3.17)?*

**ANSWER:** _____ Yes          _____ No

IF YOU ANSWERED "YES" TO QUESTION NOS. 1- 4 IN THIS
PARAGRAPH, THEN YOU HAVE FOUND FOR PLAINTIFFS AND
AGAINST ROCKWELL ON THIS NUISANCE CLAIM.

PLEASE GO TO ¶ E.

8

**¶ E   Actual Damages for Trespass**

IF YOU DID <u>NOT</u> ANSWER "YES," TO ALL OF THE QUESTIONS IN ¶ A (TRESPASS BY DOW) <u>OR</u> ¶ B (TRESPASS BY ROCKWELL), PLEASE ~~GO~~<u>SKIP</u> TO ¶ F (ACTUAL DAMAGES FOR NUISANCE).

IF YOU ANSWERED "YES," TO ALL OF THE QUESTIONS IN ¶ A (TRESPASS BY DOW), BUT DID NOT ANSWER "YES," TO ALL OF THE QUESTIONS IN ¶ B (TRESPASS BY ROCKWELL), GO TO QUESTION NO. 1 IN THIS PARAGRAPH.

IF YOU ANSWERED "YES," TO ALL OF THE QUESTIONS IN ¶ B (TRESPASS BY ROCKWELL), BUT DID NOT ANSWER "YES," TO ALL OF THE QUESTIONS IN ¶ A (TRESPASS BY DOW), ~~GO~~<u>SKIP</u> TO QUESTION NO. 6 IN THIS PARAGRAPH.

IF YOU ANSWERED "YES," TO ALL OF THE QUESTIONS IN ¶ A (TRESPASS BY DOW) <u>AND</u> IN ¶ B (TRESPASS BY ROCKWELL), ~~GO~~<u>SKIP</u> TO QUESTION NO. 11 IN THIS PARAGRAPH.

With regard to actual damages resulting from trespass, (*Instruction Nos. 3.20 through 3.25*), we find as follows:

<u>Trespass Verdict Against Dow Only</u>

1.   Do you find the injurious situation resulting from the trespass by Dow became "complete" and "comparatively enduring" some time between January 1, 1988 and December 31, 1995 *(see Instruction No. 3.22)*?

ANSWER:   _____ Yes          _____ No

IF YOUR ANSWER TO QUESTION NO. 1 IS "YES," THEN GO TO QUESTION NO. 2.  IF YOUR ANSWER TO QUESTION NO. 1 IS "NO," THEN SKIP TO ¶ F (actual damages for nuisance).

9

2.     As of the time you find the injurious situation became "complete" and "comparatively enduring," do you find the actual value of the Class Properties was less than the value these Properties would have had but for the trespass committed by Dow *(see Instruction No. 3.22)*?

> **ANSWER:**  _____ Yes          _____ No, and so we award nominal damages of $1 per class member on this claim.

IF YOUR ANSWER TO QUESTION NO. 2 IS "YES," THEN GO TO QUESTION NO. 3.  IF YOUR ANSWER TO QUESTION NO. 2 IS "NO," THEN SKIP TO ¶ F (actual damages for nuisance).

3.     As of the time you find the injurious situation became "complete" and "comparatively enduring," what is the amount of the difference between the actual value of Class Properties and what their value would have been but for the trespass by Dow? For each of the three types of property below, please state your answer ~~two forms~~as follows *(see Instruction No. 3.23)*:

> (a) in the first column, state the average percentage by which Class Properties were diminished or depressed in value, relative to what their value would have been, without the trespass; and
>
> (b) in the second column, the corresponding total dollar amount by which Class Properties, as a whole, were diminished or depressed in value, relative to what their value would have been, without the trespass.

For purposes of this answer, you should not consider Dow's affirmative defense of setoff or any "prior market discount" at which Class Members may have purchased their properties.

|  | Percentage Undervaluation | Aggregate Damages (Entire Class) |
|---|---|---|
| RESIDENTIAL | _____ % | $ _____ |
| VACANT LAND | _____ % | $ _____ |
| COMMERCIAL | _____ % | $ _____ |
|  | TOTAL: | $ _____ |

PLEASE GO TO QUESTION NO. 4.

With regard to Dow's affirmative defense of setoff *(see Instruction No. 3.25)*, we find as follows:

4.      Do you find that Dow proved that its trespass caused a diminution in the value of Class Properties in one or more specific time periods before June 7, 1989?

**ANSWER:** _____ Yes          _____ No

IF YOUR ANSWER TO QUESTION NO. 4 IS "YES," THEN GO TO QUESTION NO. 5.  IF YOUR ANSWER TO QUESTION NO. 4 IS "NO," THEN SKIP TO ¶____¶ F (actual damages for nuisance).

5.      For each time period in which you found there was a pre-existing diminution in Class Property values, state when the period began, when it ended and the average percentage by which Class Property values were diminished by Dow's trespass during this period.  (Add more lines if necessary.)

11

| Beginning of Period | End of Period | Percentage Diminution in Value |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

PLEASE GO TO ¶ F (~~nuisance~~actual damages ¶~~for nuisance~~).

Trespass Verdict Against Rockwell Only

6.      Do you find the injurious situation resulting from the trespass by Rockwell became "complete" and "comparatively enduring" some time between January 1, 1988 and December 31, 1995 *(see Instruction No. 3.22)*?

ANSWER: _____ Yes          _____ No

IF YOUR ANSWER TO QUESTION NO. 6 IS "YES," THEN GO TO
QUESTION NO. 7. IF YOUR ANSWER TO QUESTION NO. 6 IS "NO," THEN
SKIP TO ¶ F (actual damages for nuisance).

7.      As of the time you find the injurious situation became "complete" and "comparatively enduring," do you find the actual value of the Class Properties was less than the value these Properties would have had but for the trespass committed by Rockwell *(see Instruction No. 3.22)*?

ANSWER: _____ Yes          _____ No, and so we award nominal
                                                       damages of $1 per class member on this
                                                       claim.

IF YOUR ANSWER TO QUESTION NO. 7 IS "YES," THEN GO TO
QUESTION NO. 8. IF YOUR ANSWER TO QUESTION NO. 7 IS "NO," THEN
SKIP TO ¶ F (actual damages for nuisance).

8.     As of the time you find the injurious situation became "complete" and "comparatively enduring," what is the amount of the difference between the actual value of Class Properties and what their value would have been but for the trespass by Rockwell?  For each of the three types of property below, please state your answer ~~two forms~~ as follows *(see Instruction No. 3.23)*:

> (a) in the first column, state the average percentage by which Class Properties were diminished or depressed in value, relative to what their value would have been, without the trespass; and
>
> (b) in the second column, the corresponding total dollar amount by which Class Properties, as a whole, were diminished or depressed in value, relative to what their value would have been, without the trespass.

For purposes of this answer, you should not consider Rockwell's affirmative defense of setoff or any "prior market discount" at which Class Members may have purchased their properties.

|  | Percentage Undervaluation | Aggregate Damages (Entire Class) |
|---|---|---|
| RESIDENTIAL | _____ % | $ _____ |
| VACANT LAND | _____ % | $ _____ |
| COMMERCIAL | _____ % | $ _____ |
|  | TOTAL: | $ _____ |

PLEASE GO TO QUESTION NO. 9.

13

With regard to Rockwell's affirmative defense of setoff *(see Instruction No. 3.25)*, we find as follows:

9.   Do you find that Rockwell proved that its trespass caused a diminution in the value of Class Properties in one or more specific time periods before June 7, 1989?

> **ANSWER:** _____ Yes       _____ No

IF YOUR ANSWER TO QUESTION NO. 9 IS "YES," THEN GO TO QUESTION NO. 10.  IF YOUR ANSWER TO QUESTION NO. 4 IS "NO," THEN SKIP TO ¶——¶ F (actual damages for nuisance).

10.   For each time period in which you found there was a pre-existing diminution in Class Property values, state when the period began, when it ended and the average percentage by which Class Property values were diminished by Rockwell's trespass during this period.  (Add more lines if necessary.)

| Beginning of Period | End of Period | Percentage Diminution in Value |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

PLEASE GO TO ¶ F (~~nuisance~~actual damages ¶for nuisance).

14

<u>Trespass Verdicts Against Both Dow and Rockwell</u>

11.     Do you find the injurious situation resulting from the trespass by Dow and

Rockwell became "complete" and "comparatively enduring" some time between

January 1, 1988 and December 31, 1995 *(see Instruction No. 3.22)*?

ANSWER:     _____ Yes          _____ No

IF YOUR ANSWER TO QUESTION NO. 11 IS "YES," THEN GO TO
QUESTION NO. 12.  IF YOUR ANSWER TO QUESTION NO. 11 IS "NO,"
THEN SKIP TO ¶——¶ F (actual damages for nuisance).

12.     As of the time you find the injurious situation became "complete" and

"comparatively enduring," do you find the actual value of the Class Properties was less

than the value these Properties would have had but for the trespass committed by Dow

and Rockwell *(see Instruction No. 3.22)*?

ANSWER:     _____ Yes          _____ No, and so we award nominal
                                    damages of $1 per class member on this
                                    claim.

IF YOUR ANSWER TO QUESTION NO. 12 IS "YES," THEN GO TO
QUESTION NO. 13.  IF YOUR ANSWER TO QUESTION NO. 12 IS "NO,"
THEN SKIP TO ¶ F (actual damages for nuisance).

13.     As of the time you find the injurious situation became "complete" and

"comparatively enduring," what is the amount of the difference between the actual value

of Class Properties and what their value would have been but for the trespass by Dow and

Rockwell?  For each of the three types of property below, please state your answer ~~two~~

~~forms~~<u>as follows</u> *(see Instruction No. 3.23)*:

15

(a) in the first column, state the average percentage by which Class

Properties were diminished or depressed in value, relative to what their

value would have been, without the trespass; and

(b) in the second column, the corresponding total dollar amount by which

Class Properties, as a whole, were diminished or depressed in value, relative

to what their value would have been, without the trespass.

For purposes of this answer, you should not consider Defendants' affirmative

defense of setoff or any "prior market discount" at which Class Members may have

purchased their properties.

| | Percentage Undervaluation | Aggregate Damages (Entire Class) |
|---|---|---|
| RESIDENTIAL | _____ % | $_____ |
| VACANT LAND | _____ % | $_____ |
| COMMERCIAL | _____ % | $_____ |
| | TOTAL: | $_____ |

PLEASE GO TO QUESTION NO. 14.

14.     Taking as 100 percent the combined trespass that caused the damages you

have found, what percentage, if any, was caused by the trespass by Dow and the trespass

by Rockwell *(see Instruction No. 3.19A)*:

16

**ANSWER:**   Percentage, if any, charged to Dow:   _____ %

Percentage, if any, charged to Rockwell   _____ %

MUST TOTAL:   100%

PLEASE GO TO QUESTION NO. 15

With regard to Dow and Rockwell's affirmative defense of setoff *(see Instruction No. 3.25)*, we find as follows:

15.   Do you find that Dow and Rockwell proved that their trespass caused a diminution in the value of Class Properties in one or more specific time periods before June 7, 1989?

**ANSWER:**   _____ Yes   _____ No

IF YOUR ANSWER TO QUESTION NO. 15 IS "YES," THEN GO TO QUESTION NO. 16.  IF YOUR ANSWER TO QUESTION NO. 15 IS "NO," THEN SKIP TO ¶———¶ F (actual damages for nuisance).

16.   For each time period in which you found there was a pre-existing diminution in Class Property values, state when the period began, when it ended and the average percentage by which Class Property values were diminished by Dow and Rockwell's trespass during this period.  (Add more lines if necessary.)

| Beginning of Period | End of Period | Percentage Diminution in Value |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

PLEASE GO TO ¶ F (nuisance actual damages ¶for nuisance).

17

**¶ F   Actual Damages for Nuisance**

IF YOU DID <u>NOT</u> ANSWER "YES," TO ALL OF THE QUESTIONS IN ¶ C (NUISANCE BY DOW) <u>OR</u> ¶ D (NUISANCE BY ROCKWELL), PLEASE ~~GO~~<u>SKIP</u> TO ¶ G (PUNITIVE DAMAGES).

IF YOU ANSWERED "YES," TO ALL OF THE QUESTIONS IN ¶ C (NUISANCE BY DOW), BUT DID NOT ANSWER "YES," TO ALL OF THE QUESTIONS IN ¶ D (NUISANCE BY ROCKWELL), GO TO QUESTION NO. 1 IN THIS PARAGRAPH.

IF YOU ANSWERED "YES," TO ALL OF THE QUESTIONS IN ¶ D (NUISANCE BY ROCKWELL), BUT DID NOT ANSWER "YES," TO ALL OF THE QUESTIONS IN ¶ C (NUISANCE BY DOW), ~~GO~~<u>SKIP</u> TO QUESTION NO. 6 IN THIS PARAGRAPH.

IF YOU ANSWERED "YES," TO ALL OF THE QUESTIONS IN ¶ C (NUISANCE BY DOW) <u>AND</u> IN ¶ D (NUISANCE BY ROCKWELL), ~~GO~~<u>SKIP</u> TO QUESTION NO. 11 IN THIS PARAGRAPH.

With regard to actual damages resulting from nuisance, (*Instruction Nos. 3.20 through 3.25)*, we find as follows:

<u>Nuisance Verdict Against Dow Only</u>

1.     Do you find the injurious situation resulting from the nuisance by Dow became "complete" and "comparatively enduring" some time between January 1, 1988 and December 31, 1995 *(see Instruction No. 3.22)*?

**ANSWER:** _____ Yes     _____ No

IF YOUR ANSWER TO QUESTION NO. 1 IS "YES," THEN GO TO QUESTION NO. 2.  IF YOUR ANSWER TO QUESTION NO. 1 IS "NO," THEN SKIP TO ¶ G (punitive damages).

2. As of the time you find the injurious situation became "complete" and "comparatively enduring," do you find the actual value of the Class Properties was less than the value these Properties would have had but for the nuisance committed by Dow *(see Instruction No. 3.22)*?

**ANSWER:** _____ Yes        _____ No, and so we award nominal
damages of $1 per class member on this
claim.

IF YOUR ANSWER TO QUESTION NO. 2 IS "YES," THEN GO TO
QUESTION NO. 3. IF YOUR ANSWER TO QUESTION NO. 2 IS "NO," THEN
SKIP TO ¶ G (punitive damages).

3. As of the time you find the injurious situation became "complete" and "comparatively enduring," what is the amount of the difference between the actual value of Class Properties and what their value would have been but for the nuisance by Dow? For each of the three types of property below, please state your answer as follows *(see Instruction No. 3.23)*:

> (a) in the first column, state the average percentage by which Class
> Properties were diminished or depressed in value, relative to what their
> value would have been, without the trespass; and

> (b) in the second column, the corresponding total dollar amount by which
> Class Properties, as a whole, were diminished or depressed in value, relative
> to what their value would have been, without the trespass.

19

For purposes of this answer, you should not consider Dow's affirmative defense of setoff or any "prior market discount" at which Class Members may have purchased their properties.

|  | Percentage Undervaluation | Aggregate Damages (Entire Class) |
|---|---|---|
| RESIDENTIAL | _____ % | $ _____ |
| VACANT LAND | _____ % | $ _____ |
| COMMERCIAL | _____ % | $ _____ |
|  | TOTAL: | $ _____ |

PLEASE GO TO QUESTION NO. 4.

With regard to Dow's affirmative defense of setoff *(see Instruction No. 3.25)*, we find as follows:

4.     Do you find that Dow proved that its nuisance caused a diminution in the value of Class Properties in one or more specific time periods before June 7, 1989?

**ANSWER:** _____ Yes      _____ No

IF YOUR ANSWER TO QUESTION NO. 4 IS "YES," THEN GO TO QUESTION NO. 5.  IF YOUR ANSWER TO QUESTION NO. 4 IS "NO," THEN SKIP TO ¶ G (punitive damages).

5.     For each time period in which you found there was a pre-existing diminution in Class Property values, state when the period began, when it ended and the

average percentage by which Class Property values were diminished by Dow's nuisance during this period.  (Add more lines if necessary.)

| Beginning of Period | End of Period | Percentage Diminution in Value |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

PLEASE GO TO ¶ G (punitive damages).

Nuisance Verdict Against Rockwell Only

6.     Do you find the injurious situation resulting from the nuisance by Rockwell became "complete" and "comparatively enduring" some time between January 1, 1988 and December 31, 1995 *(see Instruction No. 3.22)*?

**ANSWER:** _____ Yes          _____ No

IF YOUR ANSWER TO QUESTION NO. 6 IS "YES," THEN GO TO QUESTION NO. 7.  IF YOUR ANSWER TO QUESTION NO. 6 IS "NO," THEN SKIP TO ¶ G (punitive damages).

7.     As of the time you find the injurious situation became "complete" and "comparatively enduring," do you find the actual value of the Class Properties was less than the value these Properties would have had but for the nuisance committed by Rockwell *(see Instruction No. 3.22)*?

**ANSWER:** _____ Yes          _____ No, and so we award nominal damages of $1 per class member on this claim.

21

IF YOUR ANSWER TO QUESTION NO. 7 IS "YES," THEN GO TO QUESTION NO. 8.  IF YOUR ANSWER TO QUESTION NO. 7 IS "NO," THEN SKIP TO ¶ G (punitive damages).

8.     As of the time you find the injurious situation became "complete" and "comparatively enduring," what is the amount of the difference between the actual value of Class Properties and what their value would have been but for the nuisance by Rockwell?  For each of the three types of property below, please state your answer ~~two forms~~ as follows *(see Instruction No. 3.23)*:

> (a) in the first column, state the average percentage by which Class Properties were diminished or depressed in value, relative to what their value would have been, without the trespass; and

> (b) in the second column, the corresponding total dollar amount by which Class Properties, as a whole, were diminished or depressed in value, relative to what their value would have been, without the trespass.

For purposes of this answer, you should not consider defendants' affirmative defense of setoff or any "prior market discount" at which Class Members may have purchased their properties.

|  | Percentage Undervaluation | Aggregate Damages (Entire Class) |
|---|---|---|
| RESIDENTIAL | _____ % | $_____ |
| VACANT LAND | _____ % | $_____ |
| COMMERCIAL | _____ % | $_____ |
|  |  | TOTAL: $_____ |

22

PLEASE GO TO QUESTION NO. 9.

With regard to Rockwell's affirmative defense of setoff *(see Instruction No. 3.25)*, we find as follows:

9.  Do you find that Rockwell proved that its nuisance caused a diminution in the value of Class Properties in one or more specific time periods before June 7, 1989?

    **ANSWER:** _____ Yes        _____ No

IF YOUR ANSWER TO QUESTION NO. 9 IS "YES," THEN GO TO QUESTION NO. 10.  IF YOUR ANSWER TO QUESTION NO. 4 IS "NO," THEN SKIP TO ¶ G (punitive damages).

10.  For each time period in which you found there was a pre-existing diminution in Class Property values, state when the period began, when it ended and the average percentage by which Class Property values were diminished by Rockwell's nuisance during this period.  (Add more lines if necessary.)

| Beginning of Period | End of Period | Percentage Diminution in Value |
| --- | --- | --- |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

PLEASE GO TO ¶ G (punitive damages).

<u>Nuisance Verdicts Against Both Dow and Rockwell</u>

11.    Do you find the injurious situation resulting from the nuisance by Dow and Rockwell became "complete" and "comparatively enduring" some time between January 1, 1988 and December 31, 1995 *(see Instruction No. 3.22)?*

      **ANSWER:** _____ Yes _____ No

IF YOUR ANSWER TO QUESTION NO. 11 IS "YES," THEN GO TO QUESTION NO. 12.  IF YOUR ANSWER TO QUESTION NO. 11 IS "NO," THEN SKIP TO ¶ G (punitive damages).

12.    As of the time you find the injurious situation became "complete" and "comparatively enduring," do you find the actual value of the Class Properties was less than the value these Properties would have had but for the nuisance committed by Dow and Rockwell *(see Instruction No. 3.22)?*

      **ANSWER:** _____ Yes      _____ No, and so we award nominal damages of $1 per class member on this claim.

IF YOUR ANSWER TO QUESTION NO. 12 IS "YES," THEN GO TO QUESTION NO. 13.  IF YOUR ANSWER TO QUESTION NO. 12 IS "NO," THEN SKIP TO ¶ G (punitive damages).

13.    As of the time you find the injurious situation became "complete" and "comparatively enduring," what is the amount of the difference between the actual value of Class Properties and what their value would have been but for the nuisance by Dow and Rockwell?  For each of the three types of property below, please state your answer as follows *(see Instruction No. 3.23)*:

24

(a) in the first column, state the average percentage by which Class Properties were diminished or depressed in value, relative to what their value would have been, without the nuisance; and

(b) in the second column, the corresponding total dollar amount by which Class Properties, as a whole, were diminished or depressed in value, relative to what their value would have been, without the nuisance.

For purposes of this answer, you should not consider Defendants' affirmative defense <u>of setoff</u> or any "prior market discount" at which Class Members may have purchased their properties.

|  | <u>Percentage Undervaluation</u> | <u>Aggregate Damages (Entire Class)</u> |
|---|---|---|
| RESIDENTIAL | _____ % | $ _____ |
| VACANT LAND | _____ % | $ _____ |
| COMMERCIAL | _____ % | $ _____ |
|  | TOTAL: | $ _____ |

PLEASE GO TO QUESTION NO. 14.

14. Taking as 100 percent the combined nuisance that caused the damages you have found, what percentage, if any, was caused by the nuisance by Dow and the nuisance by Rockwell *(see Instruction No. 3.19A)*:

25

**ANSWER:**   Percentage, if any, charged to Dow: _____ %

Percentage, if any, charged to Rockwell _____ %

MUST TOTAL:   100%

PLEASE GO TO QUESTION NO. 15

With regard to Dow and Rockwell's affirmative defense of setoff *(see Instruction No. 3.25)*, we find as follows:

15.   Do you find that Dow and Rockwell proved that their nuisance caused a diminution in the value of Class Properties in one or more specific time periods before June 7, 1989?

**ANSWER:**   _____ Yes   _____ No

IF YOUR ANSWER TO QUESTION NO. 15 IS "YES," THEN GO TO QUESTION NO. 16. IF YOUR ANSWER TO QUESTION NO. 15 IS "NO," THEN SKIP TO ¶ G (punitive damages).

16.   For each time period in which you found there was a pre-existing diminution in Class Property values, state when the period began, when it ended and the average percentage by which Class Property values were diminished by Dow and Rockwell's nuisance during this period. (Add more lines if necessary.)

| Beginning of Period | End of Period | Percentage Diminution in Value |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

PLEASE GO TO ¶ G (punitive damages ¶).

26

## ¶ G   Punitive Damages

<u>Punitive Damages Against Dow</u>

ANSWER THIS SECTION ONLY IF YOU AWARDED ACTUAL DAMAGES AGAINST DOW IN ¶ E (ACTUAL DAMAGES FOR TRESPASS) AND/OR ¶ F (ACTUAL DAMAGES FOR NUISANCE)<u>. IF YOU DID NOT AWARD ACTUAL DAMAGES AGAINST DOW, SKIP TO NEXT SECTION IN THIS PARAGRAPH, "PUNITIVE DAMAGES AGAINST ROCKWELL."</u>:

With regard to punitive damages against Dow, we find as follows:

1.     Do you find beyond a reasonable doubt that Dow's conduct in committing

the trespass and/or nuisance was "willful and wanton" as defined in Instruction No. 3.27?

In deciding this question, you may only consider Dow's conduct up to August 20, 1988,

including conduct that resulted in harm on or after this date.

        **ANSWER:** _____ Yes          _____ No

IF YOUR ANSWER TO QUESTION NO. 1 IS "YES," THEN GO TO QUESTION NO. 2.  IF YOUR ANSWER TO QUESTION NO. 1 IS "NO," THEN SKIP TO ~~QUESTION NO. 3~~<u>NEXT SECTION</u> IN THIS PARAGRAPH<u>,</u> <u>"PUNITIVE DAMAGES AGAINST ROCKWELL."</u>

2.     What amount of punitive damages do you find should be awarded against

Dow?  This amount may not exceed the total amount of actual damages you found against

Dow in ¶ E and ¶ F.

        **ANSWER:** —————— $ _____

PLEASE GO TO ~~QUESTION NO~~<u>NEXT SECTION IN THIS PARAGRAPH,</u> <u>"PUNITIVE DAMAGES AGAINST ROCKWELL.</u>~~3.~~<u>"</u>

27

Punitive Damages Against Rockwell

ANSWER THIS SECTION ONLY IF YOU AWARDED ACTUAL DAMAGES AGAINST ROCKWELL IN ¶ E (ACTUAL DAMAGES FOR TRESPASS) AND/OR ¶ F (ACTUAL DAMAGES FOR NUISANCE). IF YOU DID NOT AWARD ACTUAL DAMAGES AGAINST ROCKWELL, SKIP TO ¶ H (ADDITIONAL QUESTIONS).

With regard to punitive damages against Rockwell, we find as follows:

3.     Do you find beyond a reasonable doubt that Rockwell's conduct in committing the trespass and/or nuisance was "willful and wanton" as defined in Instruction No. 3.27?  In deciding this question, you may only consider Rockwell's conduct up to August 20, 1988, including conduct that resulted in harm on or after this date.

ANSWER:  _____ Yes         _____ No

IF YOUR ANSWER TO QUESTION NO. 3 IS "YES," THEN GO TO QUESTION NO. 4.  IF YOUR ANSWER TO QUESTION NO. 3 IS "NO," THEN SKIP TO QUESTION NO. 4 IN THIS PARAGRAPH ¶ H.

4.     What amount of punitive damages do you find should be awarded against Rockwell?  This amount may not exceed the total amount of actual damages you found against Rockwell in ¶ E and ¶ F.

ANSWER:  ——————— $_____

PLEASE GO TO ¶ H.

28

**¶ H   Additional Questions**

1.      Do you find it appeared on or before January 30, 1990, which is the date

this case was filed, that any trespass or nuisance by Dow would continue indefinitely *(see*

*Instruction No. 3.28)*?

_____ YES as to any trespass or nuisance by Dow

_____ NO as to any trespass or nuisance by Dow

_____ NOT APPLICABLE because we did not find any trespass or

nuisance by Dow

IF YOUR ANSWER TO QUESTION NO. 1 IS "NO," GO TO QUESTION
NO. 2.  IF YOUR ANSWER IS "YES" OR "NOT APPLICABLE," ~~GO~~SKIP TO
QUESTION NO. 3.

2.      When do you find it became apparent that the trespass or nuisance by Dow

would continue indefinitely?  If you found against Dow on both claims, please state the

date for each claim separately.

_____

PLEASE GO TO QUESTION NO. 3.

29

3.  Do you find it appeared on or before January 30, 1990, which is the date this case was filed, that any trespass or nuisance by Rockwell would continue indefinitely *(see Instruction No. 3.28)*?

_____ YES as to any trespass or nuisance by Rockwell-

_____ NO as to any trespass or nuisance by Rockwell

_____ NOT APPLICABLE because we did not find any trespass or nuisance by Rockwell

IF YOUR ANSWER TO QUESTION NO. 3 IS "NO," GO TO QUESTION NO. 4.  IF YOUR ANSWER IS "YES" OR "NOT APPLICABLE," ~~GO~~SKIP TO QUESTION NO. 5.

4.  When do you find it became apparent that the trespass or nuisance by Dow would continue indefinitely?  If you found against Dow on both claims, please state the date for each claim separately.

_____

PLEASE GO TO QUESTION NO. 5.

5.  Do you find that any intentional or negligent conduct by Dow or Rockwell or both of them at Rocky Flats, and/or actual or threatened harms caused by such conduct, created a situation that is capable of causing fear, anxiety, or mental discomfort in individual Class Members *(see Instruction No. 3.28)*?

|  | DOW | ROCKWELL |
|---|---|---|
| YES | _____ | _____ |
| NO | _____ | _____ |

30

PLEASE SIGN AND DATE THIS VERDICT FORM.

Dated this _____ day of _____, 2006.

_____
Presiding Juror

_____
Juror

_____
Juror

_____
Juror

_____
Juror

_____
Juror

_____
Juror

_____
Juror

_____
Juror

_____
Juror

_____
Juror

_____
Juror

**Defendants' Objections:**

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, defendants incorporate by reference herein the objections set forth above to the instructions upon which this jury verdict form is based.

Third, defendants object to this instruction to the extent that it does not require class-wide proof. This is a trial of the class claim and no individual claims are being tried. *See, e.g.,* 5/17/04 Order, at 3. If plaintiffs do not prove their claims for the class as a whole, then no class member may recover. *See, e.g.,* 28 U.S.C. § 2072 (class action device cannot be used to "abridge, enlarge or modify any substantive right" of any litigant); *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 845 (1999); *Amchem Products Inc. v. Windsor,* 521 U.S. 591, 613 (1997). Thus, the instruction should contain the following language, as proposed in Defendants' Proposed Changes to Preliminary Jury Instructions filed January 10, 2006: "In deciding whether any interference proven by Plaintiffs is substantial under this test, you must consider only harm that is common to the class as a whole, and not any more severe harm that may have been suffered by some Class members but not by others."

Fourth, defendants object to the treatment of defendants' "prior market" defense in this form. The jury should instead be asked what portion of the diminution in property value that the jury finds plaintiffs proved existed in prior years.

Fifth, defendants object to the use of a combined jury verdict form for both defendants. In support of their proposed joint verdict form, plaintiffs referred to the doctrine of joint and several liability. However, joint and several liability is a collection doctrine that has no

application to this case. Dow and Rockwell are two separate defendants with separate and independent conduct. Each defendant operated the plant at different times—Dow operated the plant from 1952 to 1975, and Rockwell from 1975 to 1989—and is alleged to have committed different conduct. Because Dow cannot be held liable for Rockwell's conduct, nor Rockwell for Dow's, each defendant should be treated as if the other were never there. Dow cannot be held responsible for damages that (hypothetically) occurred in 1989 as a result of the FBI Raid (assuming as plaintiffs' witness Mr. Holeman testified that Dow had nothing to do with the FBI Raid). Nor can Rockwell be held responsible for damages that (hypothetically) occurred in 1970 as a result of plutonium contamination. *See Westric Battery Co. v. Standard Elec Co.*, 482 F.2d 1307, 1318 (10th Cir. 1973) (stating that it is "only the damage flowing legally from the defendant's misdeeds which counts); *Schmidt & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 415 (7th Cir. 1992) (Posner, J.) ("For years we have been saying, without much visible effect, that people who want damages have to prove them, using methodologies that need not be sophisticated but must not insult the intelligence . . . . The expert should have tried to separate the damages that resulted from the lawful entry of a powerful competitor - Nordisco - from the damages that resulted from the particular forms of misconduct allegedly committed by that competitor.").