# Exhibit A

# INSTRUCTION NO. 2.2AA (new)

<u>Retention of Expert Witnesses</u>

Some of the expert witnesses from whom you have heard were retained on behalf of Dow and Rockwell, both of whom are corporations, and others were retained on behalf of the Class. In judging the testimony of these expert witnesses, you should remember that all persons are equal before the law regardless of race, national origin, citizenship, or whether the party is a corporation or an individual. All parties involved in this litigation, whether they are individuals or corporations, are entitled to retain and to pay experts.

**<u>Defendants' Objections:</u>**

First, Defendants incorporate by reference Defendants' Proposed Instructions and Defendants' Previous Objections as though fully set forth herein.

Second, Defendants object to the extent that this instruction does not incorporate Defendants' Proposed Instruction Regarding Corporate Retention of Expert Witnesses, filed January 17, 2006. Defendants' proposed instruction should be read instead for the reasons stated by counsel on January 12, 2006:

> MR BERNICK: [W]hat [plaintiffs' counsel's cross-examination] is really being used for is to suggest that somehow these people should discount his testimony because he works for big companies, and that very strongly suggests that the people who are not big companies are entitled to a different brand of justice. It is very insidious. It's particularly insidious, your Honor we objected to this yesterday, we saw it being used yesterday as well, that where—what happens is he's just quoting headlines. He wants the jury to reach a conclusion about discounting without getting into the substance of anything he had to say in any of those cases simply because he was involved in that kind of litigation. It's guilt by association. It is the same problem of having prejudicial effects if the Court allows it, gives blessing to the notion that this is okay.

7

> Well, if you testified in a case that involves a large company, you can't be a good person. That is exactly what's being suggested.
>
> You testify for these big companies, you can't possibly be a person that's worthy of the same consideration . . . .
>
> That is completely unnecessary, and it is very prejudicial. The only way this witness can respond is to say, Let me tell you what was going on in this case, let me tell you what was going on in that case. It's totally collateral. He can't defend himself, we can't defend ourselves, and that's why I think it's very important for your Honor to instruct the Court that in this case these jurors can reach no judgment because people work for big companies or small companies—

(1/12/06 Trial Tr. at 10038–39.)

8

## INSTRUCTION NO. 2.2B (new)

<u>Dr. Till's Testimony Regarding Removal of Plutonium</u>

I have stricken from the evidence the testimony of Dr. Till in which he stated or suggested that plutonium present in the Class Area has been removed by bulldozing and other construction and development activities. You are not to consider Dr. Till's testimony on this subject for any purpose.

**<u>Defendants' Objections:</u>**

First, Defendants incorporate by reference Defendants' Proposed Instructions and Defendants' Previous Objections as though fully set forth herein.

Second, Defendants object to this instruction for the reasons stated in open court on January 18, 2006, (*see* Trial Tr. at 10356–65); in Defendants' Motion for Clarification and Defendants' Statement Regarding the Court's Ruling Relating to Jury Instruction No. 3.5, filed January 19, 2006; and in Defendants' Response to Plaintiffs' Motion for Judgment as a Matter of Law, filed January 17, 2006, and incorporate those objections and the Response as though fully set forth herein.

Third, the *timing* of the addition of this instruction—on the eve of closing arguments—is grossly prejudicial to defendants. Defendants have vigorously pursued the development-impact theory during the direct examination of Dr. Till (12/16/2005 Trial

9

Tr. at 8528-29),[1] and accordingly have been preparing their case, and their closing argument, with the development-impact theory as an important element. For the Court to now grant this instruction *at the close of the evidence* would be extremely prejudicial to defendants.

Fourth, this revision is inconsistent with the Court's other rulings on "inference" issues. The Court's jury instruction on Evidence, Instruction No. 1.4, states:

> You are to consider only the evidence in the case. But in your consideration of the evidence, you are not limited solely to what you see and hear as the witnesses testify. ***You are permitted to draw, from facts that you find have been proved, such reasonable inferences as seem justified in the light of your experience.*** Inferences are deductions or conclusions your reason and common sense lead you to draw from the facts established by the evidence in the case. (Instruction No. 1.4) (emphasis added)[2]

A juror can reasonably *infer* from the fact that an undisturbed parcel has been developed that plutonium does not continue to be present on such parcels, as well as that plutonium samples taken (especially on the surface) of such undisturbed soil are no longer a valid indication of plutonium's presence once development has occurred.

This is especially true where, as here, the only plutonium samples that have ever shown any higher-than-background levels of plutonium were taken on undisturbed soil.[3] This means

---

[1] (12/16/2005 Trial Tr. at 8528-29 ("Q: Now, once that bulldozer comes in and churns the dirt up and the plutonium goes down where it is, or it may be off-site, are you going to have -- is there any way that you can see based upon your work that we're still going to have the same nice little layer of plutonium on the surface of the soil? A: No.").)

[2] Counsel for the plaintiffs repeatedly made reference to this instruction, urging jurors to use "inference" and "common sense." (*See generally* 1/18/2006 Trial Tr. (referring to "common sense" 48 times).)

[3] "Q. Are those studies that are studies of asphalt and developed land or are those studies of samples taken from undeveloped land?

(Continued...)

10

that there is no *evidence* (only plaintiffs' lawyers' arguments) that any developed soil has *ever* contained Rocky Flats plutonium. That is, there is no *evidence in the record* of any plutonium sample that has ever shown Rocky Flats plutonium on developed residential property. Indeed, testing on two parcels that are *partially developed*—the Cook property and the Bartlett property—showed no plutonium above background levels. (10/21/2005 Trial Tr. at 2025-2026; P-1230; P-962; 10/14/2005 Trial Tr. at 954-59, 1055-58, 1061.) Surely this evidence is sufficient for the jury to "infer" that development had an impact, especially given that plaintiffs bear the burden of proving continuing contamination.

---

A. Well, the samples are all taken from undisturbed soil, undeveloped, *undisturbed in any way*." (12/15/2005 Till Trial Tr. at 8284 (emphasis added).)

11

## INSTRUCTION NO. 3.5 (revised - 1/17)

Trespass Claim

<u>Matters That Are Not Relevant to Deciding the Trespass Claim</u>

A trespass may exist even though the conduct that originally caused the invasion of the plaintiff's land has ceased. Accordingly, in considering whether Plaintiffs have proved the elements of their trespass claim as stated in Instruction No. 3.2, it is irrelevant that Dow and/or Rockwell ceased any such activities before Plaintiffs brought this suit or that the Rocky Flats plant itself is now shut down.

That Plaintiffs or Class members knew or could have known that plutonium was present on their properties when they purchased them is also irrelevant to determining whether Dow or Rockwell are liable for trespass as stated in Instruction No. 3.2.

You have also heard argument that plutonium has been removed from properties in the Class Area as a result of bulldozing, soil excavation and other disturbance during real estate construction and development activities in the Class Area. You are to disregard all such argument because I recently ruled that it cannot be presented or considered in deciding the trespass claims. For purposes of deciding the trespass claims, therefore, the notion that plutonium has been removed from the Class Area through development and construction activities is irrelevant.

None of the irrelevant matters described in this instruction should be considered in determining the trespass claim.

12

**Defendants' Objections:**

First, Defendants incorporate by reference Defendants' Proposed Instructions and Defendants' Previous Objections as though fully set forth herein, particularly Defendants' Objections to Instruction 3.5, filed January 18, 2006.

Second, Defendants object to the additional paragraph for the reasons stated in open court on January 18, 2006, (*see* Trial Tr. at 10356–65); in Defendants' Motion for Clarification and Defendants' Statement Regarding the Court's Ruling Relating to Jury Instruction No. 3.5, filed January 19, 2006; and in Defendants' Response to Plaintiffs' Motion for Judgment as a Matter of Law, filed January 17, 2006, and incorporate those objections and the Response as though fully set forth herein.

Third, plaintiffs bear the burden not only of proving by a preponderance of the evidence that contamination occurred, but also of proving by a preponderance of the evidence that plutonium contamination has continued. Thus, plaintiffs are essentially seeking judgment as a matter of law on an element of plaintiffs' own case—namely, that any plutonium that was deposited on Class Properties remains on Class Properties. To take this issue away from the jury would be to conclude that ***no reasonable juror*** could decide that ***plaintiffs have not proven*** continuing contamination by a preponderance of the evidence. In fact, plaintiffs have offered no evidence of continuing contamination, much less proven it to the extent that no reasonable juror could conclude otherwise.

Fourth, the ***timing*** of this revision—on the eve of closing arguments—is grossly prejudicial to defendants. Plaintiffs have known about defendants' argument about the impact of development on plutonium contamination at least since January 2005, when the

13

parties briefed the issue of whether defendants had "stipulated" to the presence of plutonium on class properties. Defendants' counsel discussed this argument during closing statements.[4] Defendants have vigorously pursued the development-impact theory during the direct examination of Dr. Till (12/16/2005 Trial Tr. at 8528-29),[5] as during the cross-examination of Dr. Smallwood (11/3/2005 Trial Tr. at 4079-4083). Accordingly, defendants have been preparing their case, and their closing argument, with the development-impact theory as an important element. For the Court to now grant a "motion in limine" on this issue *at the close of the evidence* on this issue would be extremely prejudicial to defendants.

Fifth, this revision is inconsistent with the Court's other rulings on "inference" issues. The Court's jury instruction on Evidence, Instruction No. 1.4, states:

> You are to consider only the evidence in the case. But in your consideration of the evidence, you are not limited solely to what you see and hear as the witnesses testify. ***You are permitted to draw, from facts that you find have been proved, such reasonable inferences as seem justified in the light of your experience.*** Inferences are deductions or conclusions your reason and common sense lead you to draw from the facts established by the evidence in the case. (Instruction No. 1.4) (emphasis added)[6]

---

[4] (10/12/2005 Trial Tr. at 841 ("This also shows you why, if you develop property, and you skim off the original soil to make way for development, you are not talking about plutonium anymore. So to suggest to you that lurking in the depths is this seeping, fulminating plutonium, is completely contrary to science and completely contrary to what has happened out there.").)

[5] (12/16/2005 Trial Tr. at 8528-29 ("Q: Now, once that bulldozer comes in and churns the dirt up and the plutonium goes down where it is, or it may be off-site, are you going to have -- is there any way that you can see based upon your work that we're still going to have the same nice little layer of plutonium on the surface of the soil? A: No.").)

[6] Counsel for the plaintiffs repeatedly made reference to this instruction, urging jurors to use "inference" and "common sense." (*See generally* 1/18/2006 Trial Tr. (referring to "common sense" 48 times).)

A juror can reasonably *infer* from the fact that an undisturbed parcel has been developed that plutonium does not continue to be present on such parcels, as well as that plutonium samples taken (especially on the surface) of such undisturbed soil are no longer a valid indication of plutonium's presence once development has occurred.

This is especially true where, as here, the only plutonium samples that have ever shown any higher-than-background levels of plutonium were taken on undisturbed soil.[7] This means that there is no *evidence* (only plaintiffs' lawyers' arguments) that any developed soil has *ever* contained Rocky Flats plutonium. That is, there is no *evidence in the record* of any plutonium sample that has ever shown Rocky Flats plutonium on developed residential property. Indeed, testing on two parcels that are *partially developed*—the Cook property and the Bartlett property—showed no plutonium above background levels. (10/21/2005 Trial Tr. at 2025-2026; P-1230; P-962; 10/14/2005 Trial Tr. at 954-59, 1055-58, 1061.) Surely this evidence is sufficient for the jury to "infer" that development had an impact, especially given that plaintiffs bear the burden of proving continuing contamination.

---

[7] "Q. Are those studies that are studies of asphalt and developed land or are those studies of samples taken from undeveloped land?

A. Well, the samples are all taken from undisturbed soil, undeveloped, *undisturbed in any way*." (12/15/2005 Till Trial Tr. at 8284 (emphasis added).)

15

# INSTRUCTION NO. 3.19A (new)

## Apportioning Fault Between Defendants

If you find both Dow and Rockwell committed a trespass and/or nuisance in this action, and that Plaintiffs have proved actual damages resulted from both Defendants' trespass and/or nuisance under the instructions I will give you in a moment (see Instruction Nos. 3.20-3.22), then you must also determine to what extent Dow's trespass or nuisance and Rockwell's trespass or nuisance contributed to the Class' actual damages. In making this determination, you must express Dow's contribution to the Class' damages (if any) and Rockwell's contribution to the Class' damages (if any) as a percentage of 100.

If you find only one of the Defendants liable for trespass and/or nuisance, then you will only decide the actual damages caused by that Defendant's trespass and/or nuisance.

The questions on the jury verdict form will guide you through these circumstances.

**Defendants' Objections:**

First, Defendants incorporate by reference Defendants' Proposed Instructions and Defendants' Previous Objections as though fully set forth herein, particularly Defendants' Objections to Instruction 3.5, filed January 18, 2006.

Second, Defendants object to the application of Colo. Rev. Stat. § 13-21-111.5 to this case. Dow and Rockwell are two separate defendants with separate and independent conduct. Each defendant operated the plant at different times—Dow operated the plant from 1952 to 1975, and Rockwell from 1975 to 1989—and is alleged to have committed different conduct. Because Dow cannot be held liable for Rockwell's conduct, nor Rockwell for Dow's, each

16

defendant should be treated as if the other were never there. Dow cannot be held responsible for damages that (hypothetically) occurred in 1989 as a result of the FBI Raid (assuming as plaintiffs' witness Mr. Holeman testified that Dow had nothing to do with the FBI Raid). Nor can Rockwell be held responsible for damages that (hypothetically) occurred in 1970 as a result of plutonium contamination. *See Westric Battery Co. v. Standard Elec Co.*, 482 F.2d 1307, 1318 (10th Cir. 1973) (stating that it is "only the damage flowing legally from the defendant's misdeeds which counts); *Schmidt & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 415 (7th Cir. 1992) (Posner, J.) ("For years we have been saying, without much visible effect, that people who want damages have to prove them, using methodologies that need not be sophisticated but must not insult the intelligence . . . . The expert should have tried to separate the damages that resulted from the lawful entry of a powerful competitor - Nordisco - from the damages that resulted from the particular forms of misconduct allegedly committed by that competitor.").