# Exhibit A

**INSTRUCTION NO. 1.1**

<u>Statement of the Case</u>

In order to help you understand this case, I will give you a brief summary of the claims and defenses.

The person or "party" who brings a lawsuit is called the plaintiff.  The named plaintiffs in this case are Merilyn Cook, William and Delores Schierkolk, Richard and Sally Bartlett, and Lorren and Gertrude Babb.  In actuality, there are thousands of plaintiffs in this case.  Because it would not be practical to conduct thousands of trials, these individuals filed this case as a class action.  In a class action, a few plaintiffs act as the representatives in court for all of the other class members.  I will sometimes refer to this group as the "Plaintiff Class" or simply the "Class."

The members of the Plaintiff Class are persons who owned property in a specific, defined area, known as the "Class Area," near the Rocky Flats Nuclear Weapons Plant on June 7, 1989.  That means, only persons who owned property within the Class Area on June 7, 1989, are considered plaintiffs, and only those persons can recover damages if the plaintiffs prevail in this action.

The Rocky Flats Nuclear Weapons Plant ("Rocky Flats") is a government-owned facility located on about 6500 acres sixteen miles northwest of downtown Denver.  Before operations at Rocky Flats were halted in 1989, nuclear weapons components were manufactured there.  The components were fashioned from materials including plutonium, a man-made radioactive element.  Other hazardous substances, both radioactive and non-radioactive, were also used or disposed of at Rocky Flats when the plant was in operation.

9

The defendants in this case are Dow Chemical Company and Rockwell International Corporation. Dow and Rockwell operated the Rocky Flats Nuclear Weapons plant at different times as contractors for the United States Department of Energy. That means, they worked under a contract for the federal government to manage and run the plant. Dow operated the plant between 1952 and 1975, and Rockwell operated the plant from 1975 until 1989.

The Plaintiffs make two claims against Dow and Rockwell on behalf of themselves and the rest of the Class. The first claim is for trespass. Trespass is an invasion of a person's property without his permission. Plaintiffs claim Dow and Rockwell caused a trespass because the Class Area is contaminated with plutonium released from Rocky Flats as a result of various accidents, mishaps, and bad environmental practices that occurred during each defendant's period of operation.

Plaintiffs' second claim is for nuisance. A nuisance is something that substantially and unreasonably interferes with another person's use and enjoyment of their land. Plaintiffs claim Dow and Rockwell substantially and unreasonably interfered with Class members' use and enjoyment of their properties because plutonium contamination in the Class Area has led to increased health risk and because there is a risk of additional future releases of plutonium and other hazardous substances into the Class Area from the plant site.

Plaintiffs claim that Dow and Rockwell's trespass and nuisance have depressed the value of properties in the Class Area. The Plaintiffs seek damages to compensate the Plaintiff Class for this lost property value. Plaintiffs also seek punitive damages from both Dow and Rockwell.

Defendants deny Plaintiffs' claims and contend that they each operated Rocky Flats in a safe and responsible manner. Defendants admit that plutonium from Rocky Flats is present in

the Class Area, but dispute that it is located throughout this area or that they are liable for

trespass.  They also deny that plutonium is present in the Class Area at levels that pose any

significant health risk or that there is a threat of future releases of plutonium or other hazardous

substances from the Rocky Flats site to the Class Area.  Defendants further deny that any

interference with Class members' use and enjoyment of property is substantial and unreasonable

enough to constitute a nuisance or that they are otherwise liable for nuisance.  Finally,

Defendants deny that the alleged trespass or nuisance depressed property values in the Class

Area or that plaintiffs and the other Class members suffered any loss of property value as a result

of Defendants' operations at Rocky Flats.


   **<u>Defendants' Objections:</u>**

   First, Defendants incorporate by reference Defendants' Proposed Instructions and

Defendants' Previous Objections as though fully set forth herein.

   Second, it is unnecessary, prejudicial, and confusing to comment on the merits of the

decision to certify the plaintiff class in this case.  It is not necessary to the jury's task that they be

instructed that "it would not be practical to conduct thousands of trials."  (*See further* Defs.'

Objection No. 1 to Pls' Proposed General Instruction No. 1 ("Statement of the Case"), filed

Sept. 3, 2004.)  The decision as to whether class certification is appropriate or not is an issue for

the Court, not for the jury.

   Third, defendants object to this instruction (and to the instructions generally) to the extent

that the Court does not provide Defendants' Proposed Instruction 1.9B, Burden of Proof and

Class Members Other Than the Class Representatives, originally filed on December 7, 2005, and

re-filed on January 10, 2006.  Defendants have been barred, with only one exception, from conducting their own discovery with respect to absent class members in this case.  (*See* Ex. B, 9/12/94 Mem. Op. and Order at 8–10 (limiting discovery of absent class members to the "largest commercial landowners in the area").)  The only discovery available to Defendants relates to those absent class members who Plaintiffs have designated as witnesses.  Counsel for Plaintiffs, on the other hand, enjoy unfettered access to communicate with every absent class member. Plaintiffs have elicited testimony in this trial from four of these absent class members—Charles Ozaki, Gretchen Robb, Karen Whalen, and Joseph Bowman—concerning their experiences living and owning property in the class area.  Plaintiffs have had the opportunity to cherry-pick these witnesses and their personal stories from a pool of thousands of residential absent class members—a pool to which Defendants have had no access of their own.  This Court has already instructed the jury that some information is classified and has been made unavailable to both parties.  (*See* Instruction No. 1.9.)  Defendants therefore object to the extent that the Court does not include an instruction that information regarding class members has also been made unavailable to Defendants, even though such information is available to Plaintiffs.

Fourth, any references to "other hazardous substances" should be stricken.  Substances other than plutonium cannot give rise to a trespass claim in this trial.  (*See* Instruction No. 3.2.) Plaintiffs have likewise failed to produce evidence of a class-wide nuisance.  *See* DX 36, OU3 ROD at 2 ("No hazardous substances, pollutants or contaminant will remain within the boundaries of OU3 above levels that allow for unlimited use and unrestricted exposure."); Holeman testimony, 10/18/05 Trial Tr. 1392-98; *see also* DX 69, EPA Superfund ROD; DX 43, Agreement in Principle; DX 454, ATSDR 5/13/05 report, at 76 ("[L]evels of offsite soil

12

contamination are no apparent public health hazard for past, current, and future exposures."); *id.* at 1-2, 45, 55, 57.  Because plaintiffs have failed to present sufficient evidence of hazardous substances other than plutonium, all references to them should be stricken.

Fifth, Defendants object to this instruction's description of the elements of a trespass claim and a nuisance claim, for the reasons described more fully in defendants' objections to the specific trespass and nuisance instructions set forth below.

## INSTRUCTION NO. 1.2

### Equality of Parties

All persons are equal before the law regardless of race, national origin, citizenship, or even whether the party is a corporation.  I tell you that all parties are equal before the law to remind you that you must base any decision in this case on the law and facts, not outside factors such as race, national origin, citizenship, or corporate status.

**Defendants' Objections:**

As defendants have argued during the trial (*see* 1/12/06 Trial Tr. at 10063) (in part because of questioning by plaintiffs' counsel suggesting that defendants' experts are biased in favor of large corporations), the jury should be instructed that:   (1) companies that are involved in litigation are entitled to retain and to pay experts; and (2) the fact that an expert has been retained by a company should not considered as evidence that the expert is biased or not credible.  Defendants object to this instruction to the extent that it does not contain these additions.  (*See* Defs.' Proposed Instruction re Corporate Retention of Expert Witnesses, filed 1/17/06.)

## INSTRUCTION NO. 1.3

### Status of a Corporation

All persons are equal before the law.  A corporation is considered by the law to be a person.  Corporations are entitled to the same fair and conscientious consideration by you as any physical person.

Corporations can act only through their officers and employees.  Any act or omission of an officer or employee while acting within the scope of his or her employment or authority is the act or omission of the corporation.

**Defendants' Objections:**

As defendants have argued during the trial (*see* 1/12/06 Trial Tr. at 10063) (in part because of questioning by plaintiffs' counsel suggesting that defendants' experts are biased in favor of large corporations), the jury should be instructed that:   (1) companies that are involved in litigation are entitled to retain and to pay experts; and (2) the fact that an expert has been retained by a company should not considered as evidence that the expert is biased or not credible.  Defendants object to this instruction to the extent that it does not contain these additions.  (*See* Defs.' Proposed Instruction re Corporate Retention of Expert Witnesses, filed 1/17/06.)

**INSTRUCTION NO. 1.4**

Evidence – General

It is your duty to decide from the evidence what the facts are.  You, and you alone, are the judges of the facts.  You have heard the evidence, and now it is time for you to decide what the facts are, and then apply those facts to the law I give you.  That is how you will reach your verdict.  In doing so, you must follow the law whether you agree with it or not.

At no time during the trial did I suggest what I think your verdict should be nor do I want you to guess or speculate about my views of what verdict you should render.  You will decide what the facts are from the evidence that the parties have presented during the trial.  That evidence consists of the sworn testimony of witnesses on both direct and cross-examination, regardless of who called the witness; documents and other things received into evidence as exhibits; and any facts on which the lawyers agreed or which I may instruct you to accept as true.

The following things are **not** evidence and you must not consider them as evidence in deciding the facts of this case:

1.    Statements and arguments by lawyers are not evidence.  The lawyers are not witnesses.  What they say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of the facts controls.

2.    Questions and objections by the lawyers are not evidence.  Lawyers have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by my ruling on it.

16

3.      Testimony that has been excluded or stricken, or that you have been instructed to

disregard, is not evidence and must not be considered.  In addition, I have allowed

some testimony or exhibits only for a limited purpose, and you must consider

such only for that limited purpose.  For example, I have instructed you that

newspaper articles and other media reports were admitted for the limited purpose

of showing that the information contained in these articles was available to the

public, but not for the purpose of proving the facts stated in these articles and

reports were true.  I will remind you of this and other limiting instructions in a

few minutes.

4.      Anything you may see or hear when the Court is not in session is not evidence,

even if what you see or hear is done or said by one of the parties or by one of the

witnesses.  You are to decide the case solely on the evidence received in this

courtroom during the trial.

You are to consider only the evidence in the case.  But in your consideration of the

evidence, you are not limited solely to what you see and hear as the witnesses testify.  You are

permitted to draw, from facts that you find have been proved, such reasonable inferences as seem

justified in the light of your experience.  Inferences are deductions or conclusions your reason

and common sense lead you to draw from the facts established by the evidence in the case.

**INSTRUCTION NO. 1.5**

<u>Evidence – Direct and Circumstantial</u>

There are two kinds of evidence:  direct and circumstantial.  Direct evidence is testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is indirect evidence; that is, it is proof of one or more facts from which one can find that another fact exists or is true.

You should consider both kinds of evidence in deciding this case.  It is for you to decide how much weight to give to any evidence, direct or circumstantial.

There are rules of evidence that control what can be received into evidence.  When one lawyer asks a question or offers an exhibit into evidence and another lawyer on the other side thinks that it is not permitted by the rules of evidence, the other lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore such evidence.  That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

**INSTRUCTION NO. 1.6**

<u>Filing of a Lawsuit or Pleading</u>

The fact that a plaintiff files a lawsuit is not evidence that the other party did anything wrong.  The fact that a plaintiff complains that he has been damaged is not evidence that he has been damaged or that the other party violated the law.  You cannot say, "Well, there must be something wrong here or the case would not be in court."

**INSTRUCTION NO. 1.7**

<u>Credibility of Witnesses</u>

In deciding the facts of this case, you will have to decide which witnesses to believe and which witnesses not to believe.  You may believe everything a witness says, only part of it, or none of it.

In considering the testimony of any witness, you may consider:

1.     The witness's opportunity and ability to see or hear or know the things to which the witness testified;

2.     The quality of the witness's memory;

3.     The witness's manner while taking the oath and while testifying;

4.     Whether the witness had an interest in the outcome of the case or any motive, bias or prejudice;

5.     Whether the witness's testimony is contradicted by anything the witness said or did at another time, by the testimony of other witnesses, or by other evidence;

6.     How reasonable the witness's testimony was in light of all the evidence; and

7.     Any other facts that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify to that fact.

If you believe a witness has willfully lied regarding any material fact, you have the right to disregard all or any part of that witness's testimony.

**INSTRUCTION NO. 1.8**

<u>Burden of Proof - Generally</u>

This is a civil case.  Therefore, the Plaintiffs have the burden of proving their claims by what is called a preponderance of the evidence.  That means that no matter who produces the evidence, when you consider the Plaintiffs' claim in light of all the facts, you believe their claim is more likely true than not true.  To put it differently, if you were to put all of the evidence in favor of the Plaintiffs and all of the evidence in favor of Dow or Rockwell on opposite sides of the scales, Plaintiffs would have to make the scale tip to their side in order for your verdict to be against Dow or Rockwell.  If Plaintiffs fail to meet this burden, your verdict must be for Dow and Rockwell.

In defense to Plaintiffs' claims, Dow and Rockwell have each asserted an affirmative defense, which will be described to you more fully later.  An affirmative defense is more than a denial of the claim.  You should treat Dow and Rockwell's affirmative defenses in the same way you treat the Plaintiffs' claims.  That is, Dow and Rockwell, as the parties asserting the affirmative defense, have the burden of proving that defense by the same standard, that is, of proving that the affirmative defense is more likely true than not true.

**<u>Defendants' Objections</u>:**

First, Defendants incorporate by reference Defendants' Proposed Instructions and Defendants' Previous Objections as though fully set forth herein.

Second, defendants object to the Court's statement that prior-market discount is an affirmative defense.  Plaintiffs bear the burden of showing that any diminution in market value

occurred after plaintiffs purchased their properties.  *See, e.g., Bd. of County Comm'rs v. Slovek*, 723 P.2d 1309, 1314 (Colo. 1986) ("The trial court must take as its principal guidance the goal of reimbursement of the plaintiff for losses actually suffered, but must be vigilant not to award damages that exceed the goal of compensation and inflict punishment on the defendant."); *see also Ario v. Metro Airports Comm'n*, 367 N.W.2d 509, 515 (Minn. 1985) ("If, for example, plaintiff buys a Zone 1 house in 1980, he presumably buys at a market price already discounted for aircraft noise existing at that time.  Plaintiff has no diminution in market value of his property unless he shows that the noise level has increased since 1980 and such increase has measurably depressed the value of his property."); *State of N.J. Dept. of Envtl' Prot. and Energy v. Gloucester Envtl' Mgmt. Servs. Inc.*, 866 F. Supp. 826, 830 (D.N.J. 1994) ("Unless conditions worsened . . ., the market value of that property will not be apt to decline further based on landfill proximity.  It is doubtful that persons who purchased homes after the marketplace already reflected negative impacts from proximity to the GEMS Landfill will suffer a loss in property value thereafter, assuming conditions did not worsen.").[1]

---

[1] To the extent the Court has ruled that the "prior market discount" argument is an affirmative defense with respect to which defendants bear the burden of demonstrating a pre-existing discount, defendants preserve their disagreement with the Court's ruling.  The plaintiff - not the defendant - bears the burden of proving both the fact and the amount of damages.  *See Buckley Powder Co. v. State*, 70 P.3d 547, 563 (Colo. App. 2002).  Unless a plaintiffs shows that the alleged "Rocky Flats discount" was greater when he or she sold the property then when he or she purchased the property, not even the fact of damages has been proved.  Plaintiffs have cited no cases from any jurisdiction holding that evidence as to the price at which a plaintiff purchased his or her property is an affirmative defense.  According to Wright & Miller, an affirmative defense "encompasses two types of defensive allegations: those that admit the allegations of the complaint but suggest some other reason why there is no right of recovery, and those that concern allegations outside of the plaintiff's prima facie case that the defendant therefore cannot raise by a simple denial in the answer."  Wright & Miller, 5 Fed. Prac. & Proc. Civ.3d § 1271.

(Continued…)

## INSTRUCTION NO. 1.9

### Burden of Proof and Classified Information

In evaluating whether Plaintiffs and Defendants have met their respective burdens on their claims and defenses, you need to know that the law does not require parties to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters to be determined by you from the evidence. Nor does the law require the parties to produce as exhibits all papers or other things mentioned in the evidence in the case.

This is a law that is uniformly applied in all civil cases as a matter of practical necessity and common sense. It is simply not possible for the law to require proof to the degree of absolute certainty.

In this case, the problem of proof is further complicated because of government imposed secrecy concerning activities at the Rocky Flats installation. The U.S. Department of Energy has classified documents concerning these activities and the resulting classification means that some information is deemed secret and is not available to the public. The authority of the Department of Energy to classify information as secret is firmly established by laws enacted by the Congress of the United States. Neither this court nor the jury in the case has the authority to decide

---

Defendants do not "admit the allegations of the complaint" by arguing for a prior market discount – to the contrary, the existence of a prior market discount negates the allegations of the complaint because plaintiffs have no suffered any damages. For the same reason, a prior market discount does not concern "allegations outside of the plaintiff's prima facie case" because a plaintiff is required to plead and prove damages as part of his prima facie case.

whether such classification was proper irrespective of any reason or allegations made challenging the process.

The Department of Energy has made some information concerning Rocky Flats available by a process known as "declassification," meaning that some documents and some parts of documents are no longer considered secret.  The propriety of these declassification decisions is likewise not a matter to be decided in this action.

You will also see some documents that have been made available by the Department of Energy that contain obliterated or marked out words.  This process is called "redaction," which means that the information removed is not available to us in this trial.

For the reasons I've just given, not only are the parties in this case not required to produce as exhibits all papers or other things mentioned in the evidence, they cannot produce some of these documents and things because the Department of Energy has classified that information as secret.

You may not speculate or guess about what the unavailable or redacted information might be.  Such unavailable or redacted information might have been favorable, or unfavorable, to one side or the other in this case, but you must confine your evaluation to the evidence presented to you and base your decision solely on the evidence received during trial.

**Defendants' Objections:**

As an initial matter, Defendants incorporate by reference Defendants' Proposed Instructions and Defendants' Previous Objections as though fully set forth herein.

Defendants' objection to this instruction and its underlying legal principles were previously incorporated in Defs.' Limiting Instruction No. 3 (Classification) filed Sept. 23, 2005, Defs.' Limiting Instruction No. 1 (No Evidence That Dow or Rockwell or Their Counsel Were Involved in the Withholding of Documents) filed Oct. 10, 2005, and Defs.' Proposed Instruction re Classification filed Dec. 28, 2005, all of which are expressly incorporated by reference as though fully set forth herein.  For the reasons set forth in those filings, the third, fourth, fifth, sixth and seventh paragraphs of this instruction should be deleted, and Defendants' Proposed Instruction 1.9A (which is set forth in Defendants' Proposed Changes to Jury Instructions filed January 10, 2006) should be given.  As Defendants discussed in their motion for mistrial (*see* Defs.' Mem. in Supp. of Defs.' Mot. for Mistrial or, in the Alternative, Defs.' Proposed Instructions, filed 12/28/05), defendants' proposed instruction is necessary to dispel the unfair, prejudicial effect of plaintiffs' insinuations of improper classification by the DOE.  (8/22/05 Hr'g Tr. at 23–24; 11/10/05 Trial Tr. at 5050–51 ("[Y]ou still have a classification decision that's made, and the Congress says it's none of my business."); *id.* at 5054 ("Whether or not they had bad faith motivations or otherwise, whether it's political, philosophical or religious doesn't matter.  What matters is the test that I set out, and I am very confident in that test."); 11/14/05 Trial Tr. at 5082 (whether classification "was done in good faith or not [is] beyond the purview of this Court"); *id.* ("Whatever other motivations they have, I can't go into.  I don't sit as court of review as to the—as to how classifications are made."); *id.* ("Now, whether they—whether they refused to give you information, the Department of Energy did, they refused to declassify MUF information on the grounds of national security, is not something I'm going to go into."); *id.* at 5149 (barring questioning on DOE's discussions about whether producing MUF documents

would hurt DOE and its contractors); *id.* at 5230 ("The improper classification of documents is not coming in.  That's just it.").)

Defendants also object to the Court's instruction to the extent that it does not incorporate Defendants' Proposed Instruction No. 1.8A, filed on January 10, 2006, entitled "Speculation and Uncertainty."  The jury should be instructed that any finding of fact it makes must be based on probabilities (not possibilities), that it should not guess or speculate about a fact, and that the existence of uncertainty as to a particular fact may not be considered as proof that the fact is true. These proposed instructions are supported by well-established law.  Plaintiffs cannot prove their claims based on assertions of uncertainty (*see* Pls.' mini-summation, 11/22/05 Trial Tr. at 6274 ("The only conclusive proof of anything that we have learned . . . is that the uncertainties are very great."); plaintiffs must produce evidence of a reasonable certainty to support their claims. CJI-Civ. 3:4 (CLE ed. 2004) (No Speculation) ("Any finding of fact you make must be based on probabilities, not possibilities. You should not guess or speculate about a fact.").  *See also Kirschner v. Broadhead*, 671 F.2d 1034, 1039 (7th Cir. 1982) ("[A] doctor's testimony can only be considered evidence when he states that the conclusion he gives is based on reasonable medical certainty that a fact is true or untrue.  A doctor's testimony that a certain thing is possible is no evidence at all.  His opinion as to what is possible is no more valid than the jury's own speculation as to what is or is not possible."); *Caiazzo v. Volkswagenwerk A.G.*, 647 F.2d 241, 255 (2d Cir. 1981) ("Once a case presents a fair jury question, as all agree this case does, selection of a burden of proof rule requires a choice as to which party should be assigned the risk of loss in the event that the uncertainties in the evidence make it difficult to say that the fact in dispute is more likely so than not so.").

Defendants also object to this instruction, as well as to the Court's instructions as a whole, to the extent that the Court's instructions do not include Defendants' Proposed Instruction No. 1.10A ("Department of Energy"), filed January 10, 2006.  The jury should be instructed that, while the DOE owned the Rocky Flats plant at all relevant times and contracted with Dow and Rockwell, it is not a party to the case.  The jury should also be instructed that, while it may consider the DOE's involvement in the events giving rise to the case as historical facts which may or may not be relevant to defendants' conduct, it may not assess the liability of the DOE or seek to hold defendants liable for any wrongful conduct of the DOE.  As a non-party, the DOE cannot be held liable by this jury.  (12/14/05 Trial Tr. at 8005 ("Liability, criminal or civil, of the Department of Energy is not at issue in this case.")); *see also* 3 Kevin F. O'Malley et al., Federal Jury Practice and Instructions § 103.14 (5th ed. 2001) (Multiple Defendants); (8/22/05 Hr'g Tr. at 8, 23–24).  This instruction is particularly appropriate given plaintiffs' counsel's invective against the DOE in this trial.  (*See* Pls.' opening, 10/11/05 Trial Tr. at 488 ("Why would DOE want to cover up?  Because they were part of the negligent and wrongful conduct."), 489 ("[W]e believe the evidence will show DOE was part of the problem.").)

Finally, Defendants object to this instruction, as well as to the Court's instructions as a whole, to the extent that the Court's instructions do not include Defendants' Proposed Instruction No. 1.10B ("Indemnification"), filed January 10, 2006.  The jury should be instructed that evidence of indemnification is not relevant to determining whether defendants are liable.  It is undisputed that whether defendants will receive indemnification is not an element of, and is not relevant to, either plaintiffs' claims or defendants' defenses.  The jury should also be instructed that it should not assume that the DOE will indemnify defendants in the event of a judgment

against defendants.  There is no evidence in the record on this issue, and the jury should be cautioned not to speculate.  *See United States v. Arras*, 373 F.3d 1071, 1073 (10th Cir. 2004) ("Jurors are not permitted to speculate.")

**INSTRUCTION NO. 1.10**

<u>Multiple Defendants</u>

Although there are two defendants in this action, it does not follow from that fact alone that if one defendant is liable to the Plaintiffs, both defendants are liable.  Each defendant is entitled to a fair consideration of the evidence.  Neither defendant is to be prejudiced should you find against the other.  All instructions I give you govern the case as to each defendant.

**INSTRUCTION NO. 1.11**

<u>Juror Conduct</u>

I will now say a few words about your conduct as jurors.

First, do not talk with one another about this case or about anyone who has anything to do
with it until the end of the case when you go to the jury room to decide on your verdict.

Second, do not talk with anyone else about this case or about anyone who has anything to
do with it until the trial has ended and you have been discharged as jurors.  "Anyone else"
includes members of your family and your friends.  You may tell them that you are a juror in a
case and that I have ordered you not to tell them anything else about the case until I have
discharged you.

Third, do not let anyone talk to you about the case or about anyone who has anything to
do with it.  If someone tries to talk to you, please report it to me immediately.

Fourth, do not read any news stories or articles or listen to any radio or television reports
about the case or about anyone who has anything to do with the case.

Fifth, do not do any research, such as consulting dictionaries or other reference materials,
and do not make any investigation about the case on your own.

Sixth, do not make up your mind about what the verdict should be until after you have
gone to the jury room to decide the case and you and your fellow jurors have discussed the
evidence.  Keep an open mind until then.

Seventh, each of you will have one or more notebooks containing the names of the
witnesses and copies of exhibits.  You are free to take notes in order to enhance your memory or
assist you in recollecting during your deliberations.  I caution you, however, not to become a

30

slave to your notes.  It is most important that you observe the witnesses and listen to their

testimony.  Your note taking should merely assist you.

**INSTRUCTION NO. 2.1**

Consideration of Deposition Testimony

A deposition is testimony taken under oath before the trial and preserved in writing or on videotape.  Deposition testimony can be read into evidence or shown by videotape.  You are to give the same consideration to deposition testimony as to live testimony presented here in the courtroom.  That is, you are to judge the credibility of the witness and determine the weight to be given to the testimony to the best of your ability under the circumstances, as if the witness had been before you on the witness stand when he made the statement under oath.

**INSTRUCTION NO. 2.2**

Opinion Evidence and Expert Witnesses

You have heard opinion evidence from people I held were qualified to testify as experts. People who I found are expert in some field by knowledge, skill, experience, training or education, may state their opinions on matters in that field and may also state the reasons for their opinions.  Witnesses who I did not identify as expert witnesses are not to be considered experts in any field, even if they have specialized training or advanced degrees.

Expert opinion testimony should be judged just like any other testimony.  You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinions, and all of the other factors that you consider when determining the credibility of the other witnesses.

Experts generally rely upon some assumptions in developing their opinions.  These assumptions are likewise subject to your evaluation and should be considered along with the rest of the evidence.

In resolving the conflict in the testimony of expert witnesses, you should weigh the opinion of one expert against that of another.  In doing this, you should consider the qualifications and believability of each witness, the reasons for each opinion and the matter upon which it is based.

**Defendants' Objections:**

Defendants object to this instruction to the extent that it is not amended to include the modifications set forth in defendants' proposed revised instruction, filed January 10, 2006:

33

"Some witnesses were called to testify about historical events but also had specialized training in certain areas.  You are not to consider their testimony as carrying any weight as expert testimony.  You may only consider it as evidence that the events they testified to did or did not occur."  The additional language is necessary to guide the jury in their consideration of those witnesses, such as Dr. Biggs and Dr. Selbin, who have specialized knowledge but were not called as experts.  (*See* 11/9/05 Trial Tr. at 4640 ("[Dr. Biggs] is not being permitted to go outside of what the committee did, and he is not permitted to give an opinion that calls upon special training and knowledge, but only upon what he did in or the committee did that he was a participant in."); 12/8/05 Trial Tr. at 7062–63 ("Here is the problem, if we get into the matter of expert testimony—and I'm sure after having listened to you [Dr. Selbin] that you could easily be qualified as an expert in chemistry, but the fact is that you were not.  And that's not the purpose for your being here.").)

**INSTRUCTION NO. 2.2A**

<u>Consideration of Deposition Testimony by Dr. James Flynn</u>

In light of his illness, Dr. James Flynn was unavailable to testify any further in this trial. The live testimony offered by Dr. Flynn on his direct examination therefore was stricken, because the Defendants did not have the opportunity to cross-examine Dr. Flynn on that testimony.  You are not to consider Dr. Flynn's live testimony for any purpose.

Dr. Flynn's report is still in evidence.  Also, the parties have each designated testimony from Dr. Flynn's earlier deposition to be read into evidence.  I instruct you, however, that the Defendants did not have the same opportunity to cross-examine Dr. Flynn at his deposition that they would have had at trial, because one of the purposes of a deposition is to help a party prepare for the witness's cross-examination.  In judging the evidence you have received from Dr. Flynn and determining how much weight to give it, you should consider that Defendants did not have a full opportunity to cross-examine Dr. Flynn.

**INSTRUCTION NO. 2.2AA**

Retention of Expert Witnesses

Some of the expert witnesses from whom you have heard were retained on behalf of Dow and Rockwell, both of whom are corporations, and others were retained on behalf of the Class. In judging the testimony of these expert witnesses, you should remember that all persons are equal before the law regardless of race, national origin, citizenship, or whether the party is a corporation or an individual.  All parties involved in this litigation, whether they are individuals or corporations, are entitled to retain and to pay experts.

**Defendants' Objections:**

First, Defendants incorporate by reference Defendants' Proposed Instructions and Defendants' Previous Objections as though fully set forth herein.

Second, Defendants object to the extent that this instruction does not incorporate Defendants' Proposed Instruction Regarding Corporate Retention of Expert Witnesses, filed January 17, 2006.  Defendants' proposed instruction should be read instead for the reasons stated by counsel on January 12, 2006:

> MR BERNICK:  [W]hat [plaintiffs' counsel's cross-examination] is really being used for is to suggest that somehow these people should discount his testimony because he works for big companies, and that very strongly suggests that the people who are not big companies are entitled to a different brand of justice.  It is very insidious.  It's particularly insidious, your Honor we objected to this yesterday, we saw it being used yesterday as well, that where—what happens is he's just quoting headlines.  He wants the jury to reach a conclusion about discounting without getting into the substance of anything he had to say in any of those cases simply because he was involved in that kind of litigation.  It's guilt by association.  It is the same problem of having prejudicial effects if the Court allows it, gives blessing to the notion that this is okay.

Well, if you testified in a case that involves a large company, you can't be a good person. That is exactly what's being suggested.

You testify for these big companies, you can't possibly be a person that's worthy of the same consideration . . . .

That is completely unnecessary, and it is very prejudicial. The only way this witness can respond is to say, Let me tell you what was going on in this case, let me tell you what was going on in that case. It's totally collateral. He can't defend himself, we can't defend ourselves, and that's why I think it's very important for your Honor to instruct the Court that in this case these jurors can reach no judgment because people work for big companies or small companies—

(1/12/06 Trial Tr. at 10038–39.)

## INSTRUCTION NO. 2.2B

### Dr. Till's Testimony Regarding Removal of Plutonium

I have stricken from the evidence the testimony of Dr. Till in which he stated or suggested that plutonium present in the Class Area has been removed by bulldozing and other construction and development activities.  You are not to consider Dr. Till's testimony on this subject for any purpose.

**Defendants' Objections:**

First, Defendants incorporate by reference Defendants' Proposed Instructions and Defendants' Previous Objections as though fully set forth herein.

Second, Defendants object to this instruction for the reasons stated in open court on January 18, 2006, (*see* Trial Tr. at 10356–65); in Defendants' Motion for Clarification and Defendants' Statement Regarding the Court's Ruling Relating to Jury Instruction No. 3.5, filed January 19, 2006; and in Defendants' Response to Plaintiffs' Motion for Judgment as a Matter of Law, filed January 17, 2006, and incorporate those objections and the Response as though fully set forth herein.

Third, the ***timing*** of the addition of this instruction—on the eve of closing arguments—is grossly prejudicial to defendants.  Defendants have vigorously pursued the development-impact theory during the direct examination of Dr. Till (12/16/2005 Trial

Tr. at 8528-29),[2] and accordingly have prepared their case with the development-impact theory as an important element.  For the Court to add this instruction *at the close of the evidence* is extremely prejudicial to defendants.

Fourth, this revision is inconsistent with the Court's other rulings on "inference" issues. The Court's jury instruction on Evidence, Instruction No. 1.4, states:

> You are to consider only the evidence in the case.  But in your consideration of the evidence, you are not limited solely to what you see and hear as the witnesses testify.  *You are permitted to draw, from facts that you find have been proved, such reasonable inferences as seem justified in the light of your experience.* Inferences are deductions or conclusions your reason and common sense lead you to draw from the facts established by the evidence in the case.  (Instruction No. 1.4) (emphasis added)[3]

A juror can reasonably *infer* from the fact that an undisturbed parcel has been developed that plutonium does not continue to be present on such parcels, as well as that plutonium samples taken (especially on the surface) of such undisturbed soil are no longer a valid indication of plutonium's presence once development has occurred.

This is especially true where, as here, the only plutonium samples that have ever shown any higher-than-background levels of plutonium were taken on undisturbed soil.[4]  This means

---

[2] (12/16/2005 Trial Tr. at 8528-29 ("Q:  Now, once that bulldozer comes in and churns the dirt up and the plutonium goes down where it is, or it may be off-site, are you going to have -- is there any way that you can see based upon your work that we're still going to have the same nice little layer of plutonium on the surface of the soil?  A:  No.").)

[3] Counsel for the plaintiffs repeatedly made reference to this instruction, urging jurors to use "inference" and "common sense."  (*See generally* 1/18/2006 Trial Tr. (referring to "common sense" 48 times).)

[4] "Q.  Are those studies that are studies of asphalt and developed land or are those studies of samples taken from undeveloped land?

A.  Well, the samples are all taken from undisturbed soil, undeveloped, *undisturbed in any way*."  (12/15/2005 Till Trial Tr. at 8284 (emphasis added).)

that there is no *evidence* (only plaintiffs' lawyers' arguments) that any developed soil has *ever* contained Rocky Flats plutonium.  That is, there is no *evidence in the record* of any plutonium sample that has ever shown Rocky Flats plutonium on developed residential property.  Indeed, testing on two parcels that are *partially developed*—the Cook property and the Bartlett property—showed no plutonium above background levels.   (10/21/2005 Trial Tr. at 2025-2026; P-1230; P-962; 10/14/2005 Trial Tr. at 954-59, 1055-58, 1061.)  Surely this evidence is sufficient for the jury to "infer" that development had an impact, especially given that plaintiffs bear the burden of proving continuing contamination.

**INSTRUCTION NO. 2.3**

<u>Charts, Summaries, Graphic Materials and Demonstrative Exhibits</u>

Counsel have shown you a number charts, summaries and other graphic materials in order to help explain the facts and documents in evidence in the case.  Such charts, summaries and graphic materials are not in and of themselves evidence or proof of any facts unless they are admitted into evidence.

You have heard me say throughout trial that many of these charts, summaries and graphic materials are admitted "for demonstrative purposes only."  This means that these "demonstrative exhibits" are not necessarily based on the evidence presented at trial, and that they may relate solely to arguments and statements or interpretations of evidence by counsel.  "Demonstrative exhibits" are not evidence and were presented only to assist you in understanding the argument, statement or interpretation being made.  All exhibits admitted for this limited purpose will be marked "demonstrative."  You should consider "demonstrative exhibits" only as visual aids t understanding counsel's arguments, statements or interpretations of the evidence.  You may disregard "demonstrative exhibits" if you do not find them helpful, and must disregard them if the facts, figures or other information they contain do not correctly reflect facts shown by the evidence in the case.

## INSTRUCTION NO. 2.4

### Evidence Regarding FBI Raid and Grand Jury Investigation

It is undisputed that the FBI and a federal grand jury investigated allegations of criminal misconduct by Rockwell at Rocky Flats.  The fact that the FBI and grand jury conducted these investigations or investigated certain allegations does not prove that Rockwell committed any particular acts or wrongs at Rocky Flats.  You may, however, consider evidence that was collected in the course of these investigations or was presented to the grand jury in determining whether, based on all of the evidence presented in this action, Rockwell acted, or failed to act, in a particular manner as relevant to the trespass and/or nuisance claims against it.  In other words, it is up to you to decide what the evidence presented to you proves.

**INSTRUCTION NO. 2.5**

<u>Evidence Regarding Rockwell's Plea Agreement</u>

You have heard evidence about the plea agreement between Rockwell and the United States in which Rockwell pled guilty to certain environmental crimes at Rocky Flats. The plea agreement is evidence that Rockwell admitted guilt for the conduct specifically set forth in the plea agreement. This means Rockwell admitted it committed the acts to which it pled guilty, and that no further evidence is required to establish that these acts occurred.

You should not consider the plea agreement or its content, however, or the fact that Rockwell did not plead guilty to additional crimes and that the government did not seek to prosecute Rockwell for any other crimes, in determining whether Rockwell committed any particular conduct at Rocky Flats in addition to the misconduct to which it pled guilty. You should make your determination regarding Rockwell's other alleged conduct based solely on the other evidence presented at this trial.

**<u>Defendants' Objections:</u>**

Defendants object to this instruction on the ground that the following language should be deleted: "You should not consider the plea agreement or its content, however, or the fact that Rockwell did not plead guilty to additional crimes and that the government did not seek to prosecute Rockwell for any other crimes, in determining whether Rockwell committed any particular conduct at Rocky Flats in addition to the misconduct to which it pled guilty." Through the testimony of Mr. Lipsky and others (*see*, *e.g.*, 10/24/05 Trial Tr. at 2207-2651, 10/27/05 Trial Tr. at 2865-2953, 11/02/05 Trial Tr. at 3709-3764), plaintiffs have opened the

door to, and the jury is now permitted to consider, the fact that additional misconduct was not

pursued by the prosecution.  For example, Mr. Lipsky testified that:

- Norton's statement to Congress that the investigation pursued and charged every serious environmental crime they found misrepresented the views of the other decision makers of on the investigative team. (10/27/05 Trial Tr. 2949:11-25)

- Smith's statement that there was agreement among everybody, every other major decision maker on the criminal investigation prosecutorial team, except Lipsky that there was insufficient evidence to prosecute the 771 incinerator conduct claim was false. (10/27/05 Trial Tr. at 2922:12-19)

- Norton misrepresented to Congress that the findings of the investigation were that the incinerator did not operate during the shutdown period. (10/27/05 Trial Tr. at 2928:10-2929:16)

- Norton's announcement to the press that the investigation "didn't find the serious public health risks we thought were there" misrepresented Lipsky's and Fimberg's views. (10/27/05 Trial Tr. at 2942:23-2943:2)

- Norton's statement to Congress that the investigation "did not find, however, the kind of deceptive conduct we thought may have occurred" misrepresented the conclusions of the investigation.  (10/27/05 Trial Tr. at 2946:15-25)

- He was not allowed to pursue his investigation related to the secret medical waste facility claim, *see* 10/26/05 Trial Tr. at 2645:13-16, because the U.S. Attorney's Office revoked his authority.  (10/26/05 Trial Tr. at 2646:9-13; 10/27/05 Trial Tr. at 2865:17-2866:17; 10/27/05 Trial Tr. at 2910:8-2911:6)

- He had not finished his investigation of the 771 and 776 incinerator issues before U.S. Attorney's Office revoked authority to further investigate. (10/27/05 Trial Tr. at 2910:8-2911:6; 11/02/05 Trial Tr. at 3750-3751)

- The decision to revoke his authority to further investigate the claim regarding the operation of the 771 incinerator during shutdown was made well before it could be fully investigated, so it was not possible to  assess the sufficiency of the evidence. (Trial Tr. at 2926)

- "There was a discussion that individuals would not be prosecuted, but there was also decisions made that the false statements aspect of the case would not be prosecuted or further investigated." (10/25/05 Trial Tr. at 2510:21-2511:2)

- No claim was charged or pled to regarding the medical waste allegations. (10/27/05 Trial Tr. at 2867:1-4)

- It was a consensus that the evidence was not sufficient to press charges on the 776 incinerator allegations.  (10/27/05 Trial Tr. at 2874:17-2875:4). And, in fact, no charge was brought or pled to.  (10/27/05 Trial Tr. at 2875:5-6)

- He was not the only one on the investigative team who thought that there was sufficient evidence to prosecute a claim based upon the operation of the incinerator during the shutdown period. (10/27/05 Trial Tr. at 2918:18-2921:7)

The Court properly held that, in light of such statements, Mr. Lipsky's testimony had "opened

the door,"[5] and defendants called Mr. Norton to respond to this testimony.  *See*, *e.g.*, Norton

testimony, 12/14/05 Trial Tr. at 7954–56 ("A principle of the plea agreement was that it would

---

[5] (*See* 10/25/05 Trial Tr. at 2515-2519 ("MR. BERNICK:  The much more disconcerting thing is we have now sat through what is the better part of how many hours, I think it's probably around nine hours now of this examination, including exhaustive examinations of facts and claims and probable cause determinations that potentially did lead to the possibility of false statement, I mean all of the WSIC statements, all of the other things that they've talked about would be directly relevant to a false statement claim. Counsel then in contravention to what I had thought was your Honor's determination said, Well, there was a decision made not to prosecute false statement claims. Well, what does that mean?  It means that we got into hours of testimony that probably doesn't have very much relevance until it ultimately was decided.  We also got into, then, a very central statement in front of this jury that apparently although this witness thought there was probable cause and liability, somebody else made the determination not  to go forward. Then to add on to it, I then can't cross-examine concerning why -- what the merits of those statements were, the false statement claims were, and why it was that they were dropped and whether it had anything to do with us.

THE COURT:  ***No, you can go into those things.***  What I'm not letting in is a written Plea Agreement that's filled with self-serving statements.  It's the self-serving statements that makes it objectionable as far as I'm concerned, and that's the basis for my ruling.  You can go into that. You can ask him of every charged --

. . . .

THE COURT:  Well, this witness just testified that decisions were made not to pursue the false statements or the perjury claims against individuals, and Mr. Bernick is entitled to go into that, ***and it has opened the door to that inquiry***.") (emphasis added).)

include the most serious environmental crimes we found."); 7958 (testifying that he pursued and charged every serious criminal charge that he thought could be proven); 7988 ("There were no serious environmental charges that were not pursued to my knowledge.").  Accordingly, the last two sentences of this instruction are no longer applicable and should be deleted.