**INSTRUCTION NO. 2.6**

<u>Evidence Regarding Other Civil Lawsuits</u>

You should not consider the fact that either Rockwell or Dow has been involved in other civil lawsuits for the purpose of determining whether Rockwell or Dow engaged in any of the conduct alleged by the class members in this lawsuit.  You should make your determinations based solely on the evidence presented at this trial.

**Objections:**  Defendants object to the Court's decision not to provide the jury with defendants' proposed instruction regarding the *Church* lawsuit, particularly because counsel for plaintiffs attempted to discuss the *Church* litigation on several occasions, and the jury should be reminded not to consider such statements.

> MS. ROSELLE In 1975, after Jefferson County refused to allow some of the neighbors living very close to Rocky Flats to develop their land, Marcus Church - - you remember I showed you his picture way back when here -- and two neighbors sued the United States Government, Dow, and Rockwell.  And after many years, that lawsuit was settled for $9,000,000. And as part of that lawsuit, Marcus Church was required to return to the defendants all of the documents that he got during the pendency of the litigation.
>
> Now, during the 15 years this lawsuit has been pending, we have gotten access to the documents.  But I bring this up to you for two reasons:  One is that the defendants in this case have already acknowledged, if you will, and paid money to some of the neighbors for the contamination problems it caused.
>
> MR. BERNICK:  Your Honor, I object and ask the jury to disregard all that has been said about Church.
>
> THE COURT:  Sustained.  And please disregard the comments.  That is a separate lawsuit entirely.

(*See*, *e.g.*, 10/11/05 Tr. at 549-50; see also *id.* at 592 ("THE COURT: It relates to the Church litigation.  I won't let you do it.); *id.* ("It relates to the Church litigation.  I won't let you do it.").)

Defendants' proposed instruction, filed on October 10, 2005, read:  "In 1975, Marcus Church filed a lawsuit against the United States, Dow, and Rockwell, which included claims of

plutonium on property in the class area from Rocky Flats.  You may consider only the fact that

the Church Lawsuit existed from 1975 to 1984."

## INSTRUCTION NO. 2.7

Evidence of Media Coverage

You have heard evidence of media coverage relating to Dow and Rockwell and their operations at Rocky Flats.  Such evidence of media coverage does not establish the accuracy of any statements made by the media.  Evidence of media coverage is relevant, however, to public perceptions that may have influenced the market values of properties in the Class Area.

**Defendants' Objections:**

First, Defendants' incorporate by reference Defendants' Proposed Instructions and Defendants' Previous Objections as though fully set forth herein.

Second, as set forth in defendants' proposed revised instruction dated January 10, 2005, the words "Evidence of media coverage is relevant, however, to public perceptions that may have influenced the market values of properties in the Class Area" should be deleted.  The instruction should end with the words "only to the extent you find that it was accurate and the real estate market values reflected the facts that were accurately reported."  To the extent that the Court does not adopt this change, defendants object on the ground that, in light of the voluminous amount of media coverage with which the plaintiffs have inundated the jury, such a change is necessary to guide the jury in their consideration of this evidence.  Because the relevant measure of damages is "but for" Defendants' wrongful conduct (*see* Instruction 3.22), media coverage is relevant only to the extent that it accurately reports this wrongful conduct and where such coverage is reflected in market values.  As the current instruction reads, even if media coverage was unrelated to any actionable trespass or nuisance but impacted property

49

values, the jury would be led to believe that it is relevant.  However, only damages that are caused by the trespass or nuisance are recoverable.  *See*, *e.g.*, *Westric Battery Co. v. Standard Elec. Co.*, 482 F.2d 1307, 1318 (10th Cir. 1973) (it is "only the damage flowing legally from the defendant's misdeeds which counts"); *Hyman & Co. v. Velsicol Corp.*, 233 P.2d 977, 1008 (Colo. 1951) ("The rule is that damages based upon mere speculation and conjecture are not allowable; however where it has been definitely established that damages are traceable to and the direct result of a wrong, the uncertainty in the amount thereof is a question for determination by the trier of the facts.").  Similarly, if media coverage did relate to the trespass or nuisance but was false, the jury would still be led to believe that it is relevant, even though Dow and Rockwell are not responsible for any diminution in value caused by false statements about their conduct. *See Boughton v. Cotter Corp.*, 65 F.3d 823, 831-33 & 832 n.13 (10th Cir. 1995) ("unfounded fears" cannot give rise to recovery); *Holmes v. Sec. Invest. Prot. Corp.*, 503 U.S. 258, 273 (1992) (in civil RICO action, "the link is too remote between the stock manipulation alleged and the customers' harm, being purely contingent on the harm suffered by the broker-dealers."); *Int'l Bhd of Teamsters, Local 734 Health & Welfare Trust Fund v. Phillip Morris, Inc.*, 196 F.3d 818, 825-26 (7th Cir. 1999); *Roberts v. TXY Energy Retail Co. LP*, 171 S.W.3d 901, 903 (Tex. Ct. App. 2005) ("At some point in time in the causal chain, the defendant's conduct may be too remotely connected with the plaintiff's injury to constitute legal causation.")

**INSTRUCTION NO. 3.1**

<u>Introduction to Plaintiffs' Claims</u>

Plaintiffs assert two claims in this action on behalf of themselves and the Class members. This means Plaintiffs' claims are made and must be proved for the Class as a whole as stated in the instruction for each claim that I am about to give you.  Individual claims by individual Plaintiffs are not to be decided in this trial.

Plaintiffs' first claim is for trespass and the second is for nuisance.  Both claims are asserted against both Dow and Rockwell.  It is your responsibility to consider and decide each of these claims separately against Dow and Rockwell.

I will now instruct you about these claims and what you must consider in deciding each one.  When the instructions I am about to give you apply to more than one claim, I will tell you that.  At the end of my instructions on Plaintiffs' two claims, I will talk to you about determination of damages, which applies to both claims.

**INSTRUCTION NO. 3.2**

Trespass Claim

Elements of the Claim of Trespass

The tort of trespass protects a landowner's right to exclusive possession and control of his property, which includes the right to keep the property free from contamination deposited there by others without the landowner's consent.

In this case, Plaintiffs and Defendants have stipulated that Plaintiffs and other Class members owned property in the Class Area as of June 7, 1989.  I will sometimes refer to these properties collectively as the "Class Properties."  Plaintiffs and Defendants have also stipulated that Plaintiffs and the other Class members do not consent to plutonium being on their properties.

Given these stipulations, in order for the Plaintiffs and the other Class members to recover from either Dow or Rockwell or both of them on their claim of trespass, you must find Plaintiffs have proved each of the following elements by a preponderance of the evidence:

1.      Plutonium from Rocky Flats is present on the Class Properties (see Instruction No. 3.3).

2.      Dow or Rockwell or both of them intentionally undertook an activity or activities that in the usual course of events caused plutonium from Rocky Flats to be present on the Class Properties (see Instruction No. 3.18).

3.      It appears this plutonium will continue to be present on the Class Properties indefinitely (see Instruction No. 3.4).

You must consider whether the Plaintiffs have proved each of these elements against each Defendant.  If you find that an element has not been proved as to a particular Defendant,

then your verdict on the trespass claim must be for that Defendant.  On the other hand, if you

find Plaintiffs have proved all three elements as to a particular Defendant, then your verdict must

be for Plaintiffs and against that Defendant.

**Defendants' Objections**

First, defendants incorporate by reference Defendants' Proposed Instructions and

Defendants' Previous Objections as though fully set forth herein.

Second, as set forth in defendants' revised trespass instruction submitted on January 10,

2006, this instruction should be revised to make clear that plaintiffs must prove a trespass as to

**all** class properties.  This is a class trial and no individual claims are being tried.  *See*, *e.g.*,

*4/14/04* Order at 5-6.  If plaintiffs do not prove their claims for the class as a whole, then no class

member may recover.  (*See*, *e.g.*, 28 U.S.C. § 2072 (class action device cannot be used to

"abridge, enlarge or modify any substantive right" of any litigant); *Ortiz v. Fibreboard Corp.*,

527 U.S. 815, 845 (1999); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

Third, as set forth in defendants' revised trespass instruction submitted on January 10,

2006, plaintiffs must prove not only that it "appears" that the plutonium is present on the class

properties, but also that it **is** present, and that the trespass will continue indefinitely.  Plaintiffs'

proof as to the continuing nature of the trespass is necessary in order for plaintiffs to recover

under Section 930.  Because the Court has ruled that this is a Section 930 case, in order to

establish liability, plaintiffs must also prove that defendants' allegedly wrongful conduct is

continuing, and that defendants' intent to cause the trespass on a class-wide basis is continuing,

in order to establish liability.  *See* Restatement (Second) of Torts § 930 (Section 930 measure of

damages applies only where "one causes continuing or recurrent tortious invasions on the land of another by the maintenance of a structure or acts or operations not on the land of the other"); Restatement (Second) of Torts § 930 cmt. d ("Manifestly, this element of depreciation [measured under Section 930] is distinct from the loss in value brought by the actual effects of past invasions (see Comment on § 929) such as damage by floods to the soil's fertility."); Restatement (Second) of Torts § 929 cmt. a (Section 929 measure of damages applies where "future losses are not contingent upon the continuance in the future of the defendant's wrongdoing, and hence the result follows regardless of whether the owner can recover in advance for the prospective harm of future operations of the cement plant.  This is a distinct question that is dealt with in § 930.")

Fourth, the instruction fails to accurately reflect Colorado Supreme Court precedent in *Van Wyk*, under which plaintiffs must demonstrate either (1) that the trespass was tangible (which the *Van Wyk* Court defined as palpable); or (2) that the trespass caused serious and substantial physical damage.  *See Pub. Serv. Co. v. Van Wyk*, 27 P.3d 377, 389 (Colo. 2001) ("[A]n intangible intrusion may give rise to a claim for trespass, but only if an aggrieved party is able to prove physical damage to the property owner caused by such intangible intrusions . . . . Moreover, a property owner forced to prove damages will be further limited to seeking redress in cases of serious or substantial invasions."); *Cook v. Rockwell Int'l Corp.*, 273 F. Supp.2d 1175, 1200 (D. Colo. 2003) ("Cook IX") (quoting the Colorado Supreme Court's definition of "intangible" as "'something that is impalpable, or incapable of being felt by touch'") *(quoting*

*Van Wyk*, 27 P.3d at 387)[6].  Thus, the jury should be instructed that it must either find that the trespass is tangible (defined as palpable) or that it caused serious and substantial physical damage in order to find for plaintiffs on their nuisance claim.

There is no basis for taking the question of tangibility/palpability away from the jury, which effectively awards plaintiffs judgment as a matter of law on this issue.  Indeed, there is no evidence in the record that plutonium is tangible, much less evidence sufficient to meet the judgment as a matter of law standard:  that no reasonable juror could find that plutonium is not tangible.  To the contrary, all of the record evidence demonstrates that plutonium is not tangible.  (11/03/05 Trial Tr. 4039-40 (Smallwood) ("[T]he different particle -- particles would it be correct -- you know, you're an ecologist, would it be correct that these particles are completely -- you can't see them, you can't touch them by any ordinary means, they're completely intangible, correct?  A.  Well, I think that our normal sensory perception cannot perceive them.  Q.  Right.  A.  Right.  Q.  You would agree with that, by any stretch of the common sense word 'intangible,' they're intangible, right?  A.  Yes.").)

---

[6] For the reasons set forth in defendants' objections to plaintiffs' proposed trespass instructions, filed July 13, 2005, *Hoery v. United States*, 64 P.3d 214, 217 (Colo. 2003), is not to the contrary. Among other things, the *Hoery* Court **did not**, and **did not need to** consider the issue of whether impalpable contamination such as TCE constitutes a "tangible" intrusion.  In *Van Wyk*, the Court held an intrusion may give rise to a trespass if **_either_**:  (1) that intrusion causes "physical damage" to the property; **_or_** (2) that intrusion is "tangible," meaning that it is "[]palpable, or []capable of being felt by touch." *Van Wyk*, 27 P.3d at 387, 390.  In *Hoery*, the plaintiff alleged the first element — that is, that the TCE had caused physical damage to his property.  *Id.* at 1221-22 (alleging contamination of "groundwater well" which plaintiff used "to irrigate the lawn and vegetable garden").  Given these allegations of physical damage in *Hoery*, there was no need for the *Hoery* Court to reach the second element — namely,  the question of whether the TCE contamination in *Hoery*  was "tangible" or "intangible."

Fifth, as set forth in Defendants' Objection No. 4 to Plaintiffs' Proposed Instruction No. 1, filed July 13, 2004, the instruction impermissibly deviates from the Colorado Pattern Jury Instructions on trespass, *see* CJI-Civ. 4th 18:1 (May 2004) ("Chapter 18:  Trespass to Land"), including the requirement that the trespass have occurred while the plaintiffs owned their properties, *id.* (citing *Hugunin v. McCunniff,* 2 Colo. 367, 369–70 (1874) ("By the strict rule which anciently obtained in the English courts, trespass quare clausum fregit lay only by one having a possession, in fact, of the premises trespassed upon, at the time of the trespasses.")) Plaintiffs have suggested that this rule does not apply where the trespass is "continuing."[7]  Here, however, plaintiffs have introduced no evidence that any plutonium on class properties will "continue indefinitely" (and thus is "continuing").[8]  While plaintiffs have introduced evidence

---

[7] Plaintiffs bear the burden of proving that their claim is "continuing."  *See*, *e.g.*, *Mangini v. Aerojet-General Corp.*, 51 Cal. Rptr. 2d 272, 273 (Cal. 1996) (holding that "because plaintiffs had failed to present **any** substantial evidence that the contamination of their land . . . was capable of being abated at a reasonable cost, the nuisance must be deemed permanent . . . plaintiffs' nuisance and trespass claims were time barred").

[8] Defendants have previously argued that, in order for a trespass to be "continuing," plaintiffs also must prove that it is not reasonably abateable.  *See* Defendants' Response to Plaintiffs' Brief on the Statute of Limitations, State Regulatory Standards, Ultrahazardous Liability, Spoliation, and Negligent Trespass, filed August 18, 2004; *see also* W. Keeton, *Prosser and Keeton on Torts*, 5th ed. (West Group 1984) at § 89 (a "permanent" nuisance is one that is "unlikely to abate or to be avoided by any reasonable expenditure of money"); D. Dobbs, *The Law of Torts*, § 57 (West Group 2001), cited in *Hoery* at p. 223 (listing first among the "most significant factors favoring a classification as temporary" that "(1) the invasion can in fact be terminated or abated" and "(2) the cost of termination is not wasteful or oppressive"); *In re Hoery v. United States*, 64 P.3d 214, 216 n.2 (Colo. 2003) ("the record at this stage of the litigation indicates that the contamination is not permanent — that is, it is remediable or abatable."); *Middlecamp v. Bessemer Irrigating Ditch Co.*, 103 P. 280, 283 (1909) (when nuisance or trespass "is not practicable to remedy" or could not "by a reasonable expenditure be checked," the nuisance is considered permanent).

(Continued…)

about the half-life of plutonium once it gets in the soil, plaintiffs have not introduced evidence that the *soil itself* has remained on the class properties.  (Smallwood testimony, 11/03/05 Trial Tr. at 4067, 4083, 4084)

Because plaintiffs have failed to introduce evidence of a "continuing" trespass, plaintiffs' claims are subject to the rules applicable to "permanent" trespasses.  *See Hoery*, 64 P.3d at 217-223.  In the case of a permanent trespass, a plaintiff must prove that the contamination came onto the property during the time the plaintiff owned the property.  *See also Hugunin*, 2 Colo. at 369–70; *see also* CJI-Civ. 4th 18:1 (May 2004) (requiring as element that "[w]hile Plaintiff was (the owner) . . . the Defendant intentionally (caused [the alleged contaminant] to come upon) that property), *with Hoery*, 64 P.3d at 217-223 (holding that, where undisputed evidence showed that contamination was "not permanent – that is, it is remediable or abatable," then cause of action continues as long as "continuing property invasions remain[ed]" on plaintiff's property, regardless of whether "the United States continues to release toxic pollutants").  Here, plaintiffs have introduced no evidence of plutonium contamination of the class properties after the date when all of the class members had acquired their properties - that is, after June 7, 1989.  To the contrary, the evidence at trial has shown that 99.9% of all plutonium releases from Rocky Flats occurred before 1970, a time when only a small fraction of class members owned their properties.  (DX 454, ATSDR Report, at 2; *see also* Goble testimony, 11/02/05 Trial Tr. 3678)

---

Plaintiffs have introduced no evidence in this regard.  Defendants recognize that the Court has rejected defendants' position on this issue.

Thus, the jury should be instructed that, unless plaintiffs can prove that the trespass occurred while all of their class members owned their properties, then they cannot establish a trespass.

Sixth, as defendants have stated on numerous occasions, defendants object to this instruction on the ground that it does not require plaintiffs to prove a violation of state and federal standards. *See* Defendants' Proposed Trespass Instructions, filed July 13, 2004, Instruction Nos. 7-9; Defendants' Response to Plaintiffs' Brief on the Statute of Limitations, State Regulatory Standards, Ultrahazardous Liability, Spoliation, and Negligent Trespass, filed August 18, 2004; Defendants' Memorandum Regarding Federal and Colorado Nuisance Law, filed October 15, 2004; Defendants' Report Concerning Opinion Testimony Pertinent to Trial Issues, filed July 30, 1999. The authorities that have considered this issue have held that a plaintiff must prove violations of federal standards to prevail on a claim under the Price Anderson Act. *See Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1308 (11th Cir. 1998); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1105 (7th Cir. 1994); *In re TMI Litigation Cases Consol. II*, 940 F.2d 832, 859 (3d Cir. 1991); *Good v. Fluor Daniel Corp.*, 222 F. Supp. 2d 1236, 1247 (E.D. Wash. 2002); *Gassie v. SMH Swiss Corp. for Microelec. and Watchmaking Indus., Ltd.*, No. Civ. A. 97-3557, 1998 WL 158737, at *4 (E.D. La. Mar. 26, 1998); *Boggs v. Divested Atomic Corp.*, No. C-2-90-840, 1997 WL 33377790, at *3 (S.D. Ohio Mar. 24, 1997); *Corcoran v. New York Power Auth.*, 935 F. Supp. 376, 386 (S.D.N.Y. 1996); *Bohrmann v. Maine Yankee Atomic Power Co.*, 926 F. Supp. 211, 220 (D. Me. 1996); *McLandrich v. S. California Edison Co.*, 942 F. Supp. 457, 465 (S.D. Cal. 1996); *Lamb v. Martin Marietta Energy Sys.*, 835 F. Supp. 959, 965 (W.D. Ky. 1993); Atomic Energy Commission Manual Chapter 0524, Issued August 12, 1963 (DX0351); DOE Order 5480.1 (Tab 10, App. B to

Defs. Brs. in Supp. of Their Mots. for Summ. J. Based on Expert Disc.); DOE Order 5480.1A

(Tab 11, App. B to Defs. Brs. in Supp. of Their Mots. for Summ. J. Based on Expert Disc.); DOE

Interim Standard for DOE Environmental Activities For All Exposure Pathways, Issued August

5, 1985 (Tab 12, App. B to Defs. Brs. in Supp. of Their Mots. for Summ. J. Based on Expert

Disc.).  The same holds true with respect to plaintiffs' burden of proving a violation of state

standards in order to prevail on a trespass claim.  *See* Defendants' Response to Plaintiffs' Brief

on the Statute of Limitations, State Regulatory Standards, Ultrahazardous Liability, Spoliation,

and Negligent Trespass, filed August 18, 2004; *Hoery*, 64 P.3d at 222; *see also Taco Cabana v.

Exxon Corp.*, 5 S.W.3d 773, 780 (Tex. App. 1999) ("Because the evidence presented at trial did

not establish that Exxon failed to remove soil that contained contaminants above state action

levels, Taco Cabana failed to establish its trespass theory of liability."); 6 Colo. Code Regs.

1007-1, RH 4.60.1, Permissible Levels of Plutonium in Uncontrolled Areas.

  Seventh, although the Court has already rejected defendants' position on this subject,

defendants also object to this instruction (and to the trespass instructions generally) to the extent

that it does not recognize the statute of limitations defense.  In *Cook X*, this Court ruled that, if

plaintiffs prove a continuing trespass, then the statute of limitations does not apply.  *See Cook v.

Rockwell Int'l Corp.*, 358 F. Supp. 2d 1003, 1004 (D. Colo. 2004) ("the continuing presence of

plutonium on the Class Properties, if proven, would constitute a continuing trespass" in such

circumstances, "Defendants do not have a limitations defense to liability on the trespass claim

because the statute of limitations has not yet begun to run on this claim").  Under this Court's

rulings, to prove that a trespass is "continuing," plaintiffs must show that "it appears that

plutonium will continue to be on the Class Properties indefinitely."   (Instruction No. 3.4)  As

59

discussed above, plaintiffs have introduced no evidence of such a "continuing" trespass. While plaintiffs have introduced evidence about the half-life of plutonium once it gets into the soil, plaintiffs have not introduced evidence that any plutonium-contaminated soil itself has remained on the class properties, notwithstanding the massive amounts of development that have occurred on those lands during the last four decades. (Smallwood testimony, 11/03/05 Trial Tr. at 4067, 4083, 4084) Because plaintiffs have failed to introduce evidence that any trespass was "continuing," the statute of limitations defense applies. *See Cook*, 358 F. Supp. 2d at 1004; *Hoery*, 64 P.3d at 216–17.

The statute of limitations for trespass actions is two years. Colo. Rev. Stat. § 13-80-102 (tort actions for trespass "shall be commenced within two years after the cause of action accrues, and not thereafter"). Under Colorado statute of limitations rules, a claim "accrues the later of when the injury first occurs or when the plaintiff learned or should have learned of his injury and its cause." *Hoery*, 64 P.3d at 216–17 (Colo. 2003). Thus, if plaintiffs' claims accrued on or before January 30, 1988 (two years before plaintiffs filed their Complaint), they are time-barred. Thus, the jury should be allowed to determine whether class members knew or should have known of the trespass before January 30, 1988 (although only the "should have known" question could properly be part of this class trial), and defendants object to the Court's instruction to the extent that it does not incorporate defendants' proposed statute of limitations instruction submitted July 13, 2004 (Instruction No. 10).

For all of these reasons, defendants object to this instruction (and to the trespass instructions generally) to the extent that they do not reflect defendants' proposed trespass instructions, including without limitation Defendants' Proposed Trespass Instructions submitted

July 13, 2004; Defendants' Revised Proposed Trespass Jury Instructions and Jury Verdict Forms, filed August 6, 2004; Defendants' Proposed Supplemental Jury Instructions and Jury Verdict Form, filed September 16, 2005; Defendants' Proposed Limiting and Supplemental Jury Instructions, filed September 23, 2005; and Defendants' Proposed Changes to Preliminary Jury Instructions, filed January 10, 2006.

## INSTRUCTION NO. 3.3

Trespass Claim

First Element:  Presence of Plutonium

The first element of the trespass claim requires that Plaintiffs prove that plutonium is present on the Class Properties.  To prove this element, Plaintiffs are <u>not</u> required to show that plutonium is present on the Class Properties at any particular level or concentration, that they suffered any bodily harm because of the plutonium or that the presence of plutonium on the Class Properties damaged these properties in some other way.

**Defendants' Objections:**

First, defendants incorporate by reference Defendants' Proposed Instructions and Defendants' Previous Objections as though fully set forth herein.

Second, the instruction fails to accurately reflect Colorado Supreme Court precedent in *Van Wyk*, under which plaintiffs must demonstrate either (1) that the trespass was tangible (which it defined as palpable); or (2) that the trespass caused serious and substantial physical damage.  *See Pub. Serv. Co. v. Van Wyk*, 27 P.3d 377, 389 (Colo. 2001) ("[A]n intangible intrusion may give rise to a claim for trespass, but only if an aggrieved party is able to prove physical damage to the property owner caused by such intangible intrusions . . . .  Moreover, a property owner forced to prove damages will be further limited to seeking redress in cases of serious or substantial invasions."); *Cook v. Rockwell Int'l Corp.*, 273 F. Supp.2d 1175, 1200 (D. Colo. 2003) ("*Cook IX*") (quoting the Colorado Supreme Court's definition of "intangible" as "'something that is impalpable, or incapable of being felt by touch'") *(quoting Van Wyk*, 27 P.3d

at 387)[9].  Thus, defendants object to the instruction that plaintiffs are not required to show "that they suffered any bodily harm because of the plutonium or that the presence of the plutonium on the Class Properties damaged these properties in some other way."  To the contrary, the jury should be instructed that it must either find that the trespass is tangible (defined as palpable) or that it caused serious and substantial physical damage in order to find for plaintiffs on their nuisance claim.  At the very least, the jury should be instructed (as defendants have argued in the alternative) that plutonium must be present in amounts that are enough to impose a significant physical impact on the property or its users.

There is no basis for taking the question of tangibility/palpability away from the jury, which effectively awards plaintiffs judgment as a matter of law on this issue.  Indeed, there is no evidence that plutonium is tangible.  To the contrary, all of the record evidence demonstrates that plutonium is not tangible.  (11/03/05 Trial Tr. 4039-40 (Smallwood) ("[T]he different particle -- particles would it be correct -- you know, you're an ecologist, would it be correct that these particles are completely -- you can't see them, you can't touch them by any ordinary means,

---

[9] For the reasons set forth in defendants' objections to plaintiffs' proposed trespass instructions, filed July 13, 2005, *Hoery v. United States*, 64 P.3d 214, 217 (Colo. 2003), is not to the contrary. Among other things, the *Hoery* Court **did not**, and **did not need to** consider the issue of whether impalpable contamination such as TCE constitutes a "tangible" intrusion.  In *Van Wyk*, the Court held an intrusion may give rise to a trespass if *either*:  (1) that intrusion causes "physical damage" to the property; *or* (2) that intrusion is "tangible," meaning that it is "[]palpable, or []capable of being felt by touch." *Van Wyk*, 27 P.3d at 387, 390.  In *Hoery*, the plaintiff alleged the first element — that is, that the TCE had caused physical damage to his property.  *Id.* at 1221-22 (alleging contamination of "groundwater well" which plaintiff used "to irrigate the lawn and vegetable garden").  Given these allegations of physical damage in *Hoery*, there was no need for the *Hoery* Court to reach the second element — namely,  the question of whether the TCE contamination in *Hoery*  was "tangible" or "intangible."

they're completely intangible, correct?  A.  Well, I think that our normal sensory perception cannot perceive them.  Q.  Right.  A.  Right.  Q.  You would agree with that, by any stretch of the common sense word 'intangible,' they're intangible, right? A.  Yes.").)

Third, as set forth in defendants' objections to plaintiffs' instructions filed on July 13, 2004, the instruction impermissibly deviates from the Colorado Pattern Jury Instructions on trespass, *see* CJI-Civ. 4th 18:1 (May 2004) ("Chapter 18:  Trespass to Land"), including the requirement that the trespass have occurred while the plaintiffs owned their properties, *id. (*citing *Hugunin*, 2 Colo. at 369–70 (1874) ("By the strict rule which anciently obtained in the English courts, trespass quare clausum fregit lay only by one having a possession, in fact, of the premises trespassed upon, at the time of the trespasses."))  Plaintiffs have suggested that this rule does not apply where the trespass is "continuing."  As discussed in defendants' objections to Instruction No. 3.2, however, plaintiffs have introduced no evidence that any plutonium on class properties will "continue indefinitely" (and thus is "continuing").  In the case of a permanent trespass, a plaintiff must prove that the contamination came onto the property during the time the plaintiff owned the property.  *See Hugunin*, 2 Colo. at 369–70; *see also* CJI-Civ. 4th 18:1 (May 2004)

Fourth, for the reasons stated in defendants' Objections to Instruction No. 3.2, defendants object to this instruction on the ground that it does not require plaintiffs to prove a violation of state and federal standards.  *See* Defendants' Proposed Trespass Instructions Submitted July 13, 2004, Instruction Nos. 7-9; Defendants' Response to Plaintiffs' Brief on the Statute of Limitations, State Regulatory Standards, Ultrahazardous Liability, Spoliation, and Negligent Trespass, filed August 18, 2004; Defendants' Memorandum Regarding Federal and Colorado Nuisance Law, filed October 15, 2004;  Defendants' Report Concerning Opinion Testimony

Pertinent to Trial Issues, filed July 30, 1999.  Thus, defendants object to the instruction that plaintiffs do not have to prove that plutonium is present at any level or concentration.

**INSTRUCTION NO. 3.4**

Trespass Claim

<u>Third Element:  Continuing Trespass</u>

In deciding the third element of Plaintiffs' trespass claim, which is whether it appears that plutonium will continue to be present on Class Properties indefinitely, it is not necessary for you to find that the plutonium will be there forever.  Instead, in deciding this element, you should consider whether there is any reason to expect that the plutonium present on Class Properties will be removed at any definite time in the future.  If you find there is no reason to expect it will be removed by a definite time, then you must find it appears that plutonium will continue to be present on the Class Properties indefinitely.

**<u>Defendants' Objections</u>:**

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, defendants object to the instruction to the extent that the Court does not change it to reflect Instruction No. 3.4, proposed by defendants on January 10, 2006.  Defendants' proposed instruction reflects the fact that, in order for the damages measure of Section 930 of the Restatement to apply, the trespass must be "continuing."  Restatement (Second) of Torts § 930.  Defendants' proposed instruction thus requests the following changes:  (1) the defendant's *operational* activities which give rise to the trespass must be continuing; (2) the defendant's intent to cause a class-wide trespass must be continuing; and (3) the plutonium contamination resulting from the trespass must be continuing.  *See* Restatement (Second) of Torts § 930 ("(1) If

one causes continuing or recurrent tortious invasions on the land of another by the maintenance

of a structure or acts or operations not on the land of the other . . .") (emphasis added);

Restatement (Second) of Torts § 930, cmt. d ("Manifestly, this element of depreciation is distinct

from the loss in value brought by the actual effects of past invasions (see Comment on § 929)

such as damage by floods to the soil's fertility."); Restatement (Second) of Torts § 929, cmt. a

(Section 929 (and not Section 930) applies where "future losses are not contingent upon the

continuance in the future of the defendant's wrongdoing, and hence the result follows regardless

of whether the owner can recover in advance for the prospective harm of future operations of the

cement plant. This is a distinct question that is dealt with in § 930").

Third, the instruction does not account for the possibility that the plutonium at issue *has*

*already been* removed.

Fourth, by using the word "remove," the instruction suggests that the defendants, rather

than somebody or something else, must remove the plutonium in order for the trespass to stop.

In fact, any cause that results in plutonium not continuing to be present on the properties of all

class members is sufficient to prevent the trespass from being continuing.

Fifth, the instruction presumes that plutonium is still present on plaintiffs' properties.

Instead of referring to "the plutonium present on Class Properties," the instruction should refer to

"any plutonium still present on Class Properties."

Sixth, defendants object to the language:  "no reason to expect it will be removed by a

definite time."  As an initial matter, this language presumes that plutonium is present on

plaintiffs' properties.  Moreover, there is no requirement that the plutonium be scheduled for

removal at a definite time, so long as it is expected that the plutonium will be removed within the

reasonably foreseeable future.  What is important under Section 930 is an expectation that the trespass will cease - not the expectation that the trespass will cease by *some* date certain. Moreover, the instruction misquotes the comments to Section 930.  Comment b to Section 930 does not require that the invasion be expected to cease by *a* definite time in the future, but rather that the invasion by expected to cease by *any* definite time in the future.  *See* Restatement (Second) of Torts Section 930, cmt. b ("'Indefinitely' as used in this Section does not mean that the situation may be expected to last forever, but merely that there is no reason to expect its termination at *any* definite time in the future.")

Seventh, defendants object to the instruction's statement that the third element of plaintiffs' claims is "whether it *appears* that plutonium will continue to be present."  It must not only *appear* that the invasion will continue indefinitely; rather, the invasion must continue to be present through the time of trial.  *See* Restatement (Second) of Torts § 930, illus. 2 ("The operations of the gas plant began in 1931 and fumes and smoke invaded the greenhouse and damaged the flowers. This damage, small at first, reached a peak in June, 1932, when the gas plant first began to be operated to full capacity. It has since been carried on at the same level *and the damage to B's business has continued*.") (emphasis added).

**INSTRUCTION NO. 3.5**

Trespass Claim

<u>Matters That Are Not Relevant to Deciding the Trespass Claim</u>

A trespass may exist even though the conduct that originally caused the invasion of the plaintiff's land has ceased.  Accordingly, in considering whether Plaintiffs have proved the elements of their trespass claim as stated in Instruction No. 3.2, it is irrelevant that Dow and/or Rockwell ceased any such activities before Plaintiffs brought this suit or that the Rocky Flats plant itself is now shut down.

That Plaintiffs or Class members knew or could have known that plutonium was present on their properties when they purchased them is also irrelevant to determining whether Dow or Rockwell are liable for trespass as stated in Instruction No. 3.2.

You have also heard argument that plutonium has been removed from properties in the Class Area as a result of bulldozing, soil excavation and other disturbance during real estate construction and development activities in the Class Area.  You are to disregard all such argument because I recently ruled that it cannot be presented or considered in deciding the trespass claims.  For purposes of deciding the trespass claims, therefore, the notion that plutonium has been removed from the Class Area through development and construction activities is irrelevant.

None of the irrelevant matters described in this instruction should be considered in determining the trespass claim.

**<u>Defendants' Objections:</u>**

69

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, as reflected in defendants' revised instruction proposed on January 10, 2006, it is incorrect to instruct the jury that defendants' operations need not be ongoing in order for plaintiffs to prove their trespass claims here.  Rather, in order for the damages measure of Section 930 of the Restatement to apply, the trespass must be "continuing."  Restatement (Second) of Torts § 930.  In order for the trespass to be "continuing" within the meaning of Section 930, the defendant's operations must be ongoing, and those ongoing operations must cause "continuing or recurrent invasions on the land of another."  *See* Restatement (Second) of Torts § 930 ("(1) If one causes continuing or recurrent tortious invasions on the land of another ***by the maintenance of a structure or acts or operations not on the land of the other*** . . .") (emphasis added); Restatement (Second) of Torts § 930, cmt. d ("Manifestly, this element of depreciation is distinct from the loss in value brought by the actual effects of past invasions (see Comment on § 929) such as damage by floods to the soil's fertility."); Restatement (Second) of Torts § 929, cmt. a (Section 929 (and not Section 930) applies where "future losses are ***not contingent upon the continuance in the future of the defendant's wrongdoing***, and hence the result follows regardless of whether the owner can recover in advance for the prospective harm of future operations of the cement plant. This is a distinct question that is dealt with in § 930") (emphasis added).  Thus, it is contrary to law to instruct the jury that "[a] trespass may exist even though the conduct that originally caused the invasion of the plaintiff's land has ceased. Accordingly, in considering whether Plaintiffs proved the elements of their trespass claim as

stated in Instruction No. 3.2, it is irrelevant that Dow and/or Rockwell ceased any such activities before Plaintiffs brought this suit or that the Rocky Flats plant itself is now shut down."

Third, as set forth in defendants' proposed instruction filed January 10, 2006, even if plaintiffs' knowledge of plutonium at the time they purchased their properties is irrelevant to issues of *liability* (which defendants also dispute, as stated below), it is indisputably relevant to the three following, relevant issues:  (1) to establish the value of properties in the class area before the CCE date to support defendants' prior discount defense; and (2) as a factor to be considered in determining whether any alleged nuisance is substantial and unreasonable.  As to the first point, as this Court ruled in its May 17, 2005 Order, and intends to instruct the jury in Instruction 3.25, one issue that the jury must decide is whether there is a prior market discount. A subject that is certainly relevant to the question of whether a prior market discount exists is when plaintiffs have knowledge of the issues that allegedly gave rise to the discount, such as the presence of plutonium.  Plaintiffs themselves have acknowledged this when they identify the "variable at issue, namely, *market reaction* to the nuisance and contamination caused by Rocky Flats."  (Pls.' Mem. in Support of Their *Daubert* Mot. at 14.)  What people knew about Rocky Flats, and when they knew it, is certainly relevant to the existence and magnitude of any prior market discount.  In addition, evidence that plaintiffs knew about an alleged nuisance, and acquired or improved their land in spite of it, is a factor to be considered in determining whether the alleged nuisance is substantial and unreasonable.  *See* Restatement (Second) of Torts § 840D ("The fact that the plaintiff has acquired or improved his land after a nuisance interfering with it has come into existence is . . . a factor to be considered in determining whether the nuisance is actionable."); W. Page Keeton, Prosser and Keeton on Torts § 88, at 630 (5th ed. 1984)

("Whether or not the plaintiff or the defendant should be required to bear the loss of substantial interference to plaintiff from defendant's reasonable conduct depends upon[, among other factors,] priority in time as to the respective activities of the plaintiff and the defendant in the area."); *Platte & Denver Ditch Co. v. Anderson*, 6 P. 515, 521 (Colo. 1885) ("Where one buys a city lot bordering upon ground set apart or dedicated to any public use, he takes it subject to all the annoyances incident to the purposes of the dedication.").

Fourth, although the Court has already rejected defendants' position on this subject, market knowledge is also relevant to the statute of limitations defense.  In *Cook X*, this Court ruled that, if plaintiffs prove a continuing trespass, then the statute of limitations does not apply. *See Cook*, 358 F. Supp. 2d at 1004) ("the continuing presence of plutonium on the Class Properties, if proven, would constitute a continuing trespass"; in such circumstances, "then Defendants do not have a limitations defense to liability on the trespass claim because the statute of limitations has not yet begun to run on this claim").  Under this Court's rulings, to prove that a trespass is "continuing," plaintiffs must show that "it appears that plutonium will continue to be on the Class Properties indefinitely."   (Instruction No. 3.4)  Plaintiffs have introduced no evidence of such a "continuing" trespass. As discussed above, while plaintiffs have introduced evidence about the half-life of plutonium once it gets into the soil, plaintiffs have not introduced evidence that any plutonium-contaminated soil itself has remained on the class properties, notwithstanding the massive amounts of development that have occurred on those lands during the last four decades.  (Smallwood testimony, 11/03/05 Trial Tr. 4067, 4083, 4084)  Because plaintiffs have failed to introduce evidence that any trespass was "continuing," the statute of

limitations defense applies.[10]   *See Cook*, 358 F. Supp. 2d at 1004, (D. Colo. 2004); H*oery*, 64 P.3d at 216–17 (Colo. 2003).

The statute of limitations for trespass actions is two years.  Colo. Rev. Stat. § 13-80-102 (tort actions for trespass "shall be commenced within two years after the cause of action accrues, and not thereafter").  Under Colorado statute of limitations rules, a claim "accrues the later of when the injury first occurs or when the plaintiff learned or should have learned of his injury and its cause."  *Hoery*, 64 P.3d at 216–17.  Thus, if plaintiffs' claims accrued on or before January 30, 1988 (two years before plaintiffs filed their Complaint), they are time-barred.  Thus, the jury should be allowed to determine whether class members knew or should have known of the trespass before January 30, 1988 (although only the "should have known" question could properly be part of this class trial), and defendants' object to the Court's decision not to read to

---

[10] Defendants have previously argued that, in order for a trespass to be "continuing," plaintiffs also must prove that it is not reasonably abateable.  *See* Defendants' Response to Plaintiffs' Brief on the Statute of Limitations, State Regulatory Standards, Ultrahazardous Liability, Spoliation, and Negligent Trespass, filed August 18, 2004; *see also* W. Keeton, *Prosser and Keeton on Torts*, 5th ed. (West Group 1984) at § 89 (a "permanent" nuisance is one that is "unlikely to abate or to be avoided by any reasonable expenditure of money"); D. Dobbs, *The Law of Torts*, § 57 (West Group 2001), cited in *Hoery* at p. 223 (listing first among the "most significant factors favoring a classification as temporary" that "(1) the invasion can in fact be terminated or abated" and "(2) the cost of termination is not wasteful or oppressive"); *Hoery*, 64 P.3d at 216 n.2 ("the record at this stage of the litigation indicates that the contamination is not permanent — that is, it is remediable or abatable."); *Middlecamp*, 103 P. at 283 (when nuisance or trespass "is not practicable to remedy" or could not "by a reasonable expenditure be checked," the nuisance is considered permanent).

Plaintiffs have introduced no evidence in this regard.  Defendants recognize that the Court has rejected defendants' position on this issue.

the jury defendants' proposed statute of limitations instruction.  *See* Defendants' Proposed

Trespass Instructions Submitted July 13, 2004, Instruction No. 10.

Fifth, defendants object to the additional paragraph regarding the removal of plutonium

for the reasons stated in open court on January 18, 2006, (*see* Trial Tr. at 10356–65); in

Defendants' Motion for Clarification and Defendants' Statement Regarding the Court's Ruling

Relating to Jury Instruction No. 3.5, filed January 19, 2006; and in Defendants' Response to

Plaintiffs' Motion for Judgment as a Matter of Law, filed January 17, 2006, and incorporate

those objections and the Response as though fully set forth herein.

Sixth, plaintiffs bear the burden not only of proving by a preponderance of the evidence

that contamination occurred, but also of proving by a preponderance of the evidence that

plutonium contamination has continued.  Thus, this instruction essentially grants plaintiffs

judgment as a matter of law on an element of plaintiffs' own case—namely, that any plutonium

that was deposited on Class Properties remains on Class Properties.  In fact, plaintiffs have

offered no evidence of continuing contamination, much less proven it to the extent that no

reasonable juror could conclude otherwise.

Seventh, the ***timing*** of this revision—on the eve of closing arguments—is grossly

prejudicial to defendants.  Plaintiffs have known about defendants' argument about the

impact of development on plutonium contamination at least since January 2005, when the

parties briefed the issue of whether defendants had "stipulated" to the presence of

plutonium on class properties.  Defendants' counsel discussed this argument during

opening statements.[11]  Defendants have vigorously pursued the development-impact

theory during the direct examination of Dr. Till (12/16/2005 Trial Tr. at 8528-29),[12] as

during the cross-examination of Dr. Smallwood (11/3/2005 Trial Tr. at 4079-4083).

Accordingly, defendants have prepared their case with the development-impact theory as

an important element.  The Court's addition of a new instruction on this issue **at the close**

**of the evidence** on this issue is extremely prejudicial to defendants.

     Eighth, this revision is inconsistent with the Court's other rulings on "inference"

issues.  The Court's jury instruction on Evidence, Instruction No. 1.4, states:

> You are to consider only the evidence in the case.  But in your consideration of
> the evidence, you are not limited solely to what you see and hear as the witnesses
> testify.  ***You are permitted to draw, from facts that you find have been proved,***
> ***such reasonable inferences as seem justified in the light of your experience.***
> Inferences are deductions or conclusions your reason and common sense lead you
> to draw from the facts established by the evidence in the case.  (Instruction No.
> 1.4) (emphasis added)[13]

A juror can reasonably *infer* from the fact that an undisturbed parcel has been developed that

plutonium does not continue to be present on such parcels, as well as that plutonium samples

---

[11] (10/12/2005 Trial Tr. at 841 ("This also shows you why, if you develop property, and you skim off the original soil to make way for development, you are not talking about plutonium anymore.  So to suggest to you that lurking in the depths is this seeping, fulminating plutonium, is completely contrary to science and completely contrary to what has happened out there.").)

[12] (12/16/2005 Trial Tr. at 8528-29 ("Q:  Now, once that bulldozer comes in and churns the dirt up and the plutonium goes down where it is, or it may be off-site, are you going to have -- is there any way that you can see based upon your work that we're still going to have the same nice little layer of plutonium on the surface of the soil? A:  No.").)

[13] Counsel for the plaintiffs repeatedly made reference to this instruction, urging jurors to use "inference" and "common sense."  (*See generally* 1/18/2006 Trial Tr. (referring to "common sense" 48 times).)

taken (especially on the surface) of such undisturbed soil are no longer a valid indication of plutonium's presence once development has occurred.

This is especially true where, as here, the only plutonium samples that have ever shown any higher-than-background levels of plutonium were taken on undisturbed soil.[14]  This means that there is no **evidence** (only plaintiffs' lawyers' arguments) that any developed soil has **ever** contained Rocky Flats plutonium.  That is, there is no **evidence in the record** of any plutonium sample that has ever shown Rocky Flats plutonium on developed residential property.  Indeed, testing on two parcels that are **partially developed**—the Cook property and the Bartlett property—showed no plutonium above background levels.  (10/21/2005 Trial Tr. at 2025-2026; P-1230; P-962; 10/14/2005 Trial Tr. at 954-59, 1055-58, 1061.)  Surely this evidence is sufficient for the jury to "infer" that development had an impact, especially given that plaintiffs bear the burden of proving continuing contamination.

---

[14]  "Q.  Are those studies that are studies of asphalt and developed land or are those studies of samples taken from undeveloped land?

A.  Well, the samples are all taken from undisturbed soil, undeveloped, **undisturbed in any way**."  (12/15/2005 Till Trial Tr. at 8284 (emphasis added).)

**INSTRUCTION NO. 3.6**

Nuisance Claim

Elements of the Nuisance Claim

Plaintiffs claim that Defendants, through their operation of the Rocky Flats plant, caused a nuisance. In order for the Plaintiff Class to recover from either Dow or Rockwell or both of them on their claim of nuisance, you must find Plaintiffs have proved each of the following elements by a preponderance of the evidence:

1.      Dow or Rockwell or both of them interfered with Class members' use and enjoyment of their properties in the Class Area in one or both of these two ways:

   A.      By causing Class members to be exposed to plutonium and placing them at some increased risk of health problems as a result of this exposure (see Instruction Nos. 3.7, 3.18); and/or

   B.      By causing objective conditions that pose a demonstrable risk of future harm to the Class Area (see Instruction Nos. 3.7, 3.18);

2.      This interference with Class members' use and enjoyment of their properties was both "unreasonable" and "substantial" (see Instruction Nos. 3.8 - 3.12);

3.      The activity or activities causing the unreasonable and substantial interference were either "intentional" or "negligent" (see Instruction Nos. 3.13 - 3.16); and

4.      It appears the unreasonable and substantial interference with the use and enjoyment of property caused by Dow and/or Rockwell's intentional or negligent conduct will continue indefinitely (see Instruction No. 3.17).

You must consider whether the Plaintiffs have proved these elements against each Defendant.  If you find that any one of these elements has not been proved as to a particular Defendant, then your verdict on the nuisance claim must be for that Defendant.  On the other hand, if you find Plaintiffs have proved each of these elements as to a particular Defendant, then your verdict on the nuisance claim must be for Plaintiffs and against that Defendant.

**Defendants' Objections**:

Defendants' objections to this instruction include the following:

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, defendants object on the ground that the instruction does not make clear that the interference must apply to ***all*** class members.  This is a trial of the class claim and no individual claims are being tried.  (*See*, *e.g.*, 5/17/04 Order, at 3.  If plaintiffs do not prove their claims for the class as a whole, then no class member may recover.  *See*, *e.g.*, 28 U.S.C. § 2072 (class action device cannot be used to "abridge, enlarge or modify any substantive right" of any litigant); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

Third, defendants object to the instruction that plaintiffs may prove a health risk by proving that defendants "caus[ed] Class members to be exposed to plutonium and placing them at some increased risk of health problems as a result of this exposure."  There is no Colorado authority for the proposition that a health risk can give rise to a nuisance claim.  Other states

have properly rejected claims in the absence of proof of a physical injury.  *See*, *e.g.*, *Metro-North Commuter R. Co. v. Buckley*, 521 U.S. 424, 428 (1997).

Even if there were Colorado authority to support the proposition that a health risk is actionable, the standard would not be whether there is "some increased risk," but rather (at a very minimum) whether the risk is "more likely than not."  *See Boryla v. Pash*, 937 P.2d 813, 816-17 (Colo. Ct. App. 1996) ("[the plaintiff] cannot recover damages for an increased risk of cancer recurrence because she failed to prove to a reasonable medical probability that the future harm was more likely than not to occur"), *rev'd on other grounds*, 960 P.2d 123 (Colo. 1998); *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 801 (Cal. 1993) ("[A] plaintiff should be allowed to recover without having to show knowledge that it is more likely than not that the feared cancer will occur"); *see also Boryla*, 937 P.2d at 128-29 (policy rationales announced in *Potter* are "relevant in a toxic tort case").

Fourth, because a nuisance requires a substantial and unreasonable interference with the use and enjoyment of property, the standard should at the very least be a "substantial health risk."  *See Van Wyk*, 27 P.3d at 395.

Fifth, defendants object to the instruction that plaintiffs can establish a nuisance by proving "objective conditions that pose a demonstrable risk of future harm to the Class Area."  In order to prove a nuisance, plaintiffs must do more than show a "future risk."  *See, e.g.,* 42 U.S.C. § 2014 (requiring that a public liability action assert liability "arising out of or resulting from a nuclear incident," which is further defined as an "occurrence"); *see also Adams-Arapahoe School Dist. No. 28-J v. GAF Corp.*, 959 F.2d 868 (10th Cir. 1992) ("find[ing] nothing . . . which supports the notion that tort liability may be premised on the mere risk of harm") (applying

Colorado law of negligence, which is plaintiff's only apparent nuisance theory); *Van Wyk*, 27 P.3d at 391 (defining theory of nuisance predicated on invasion that is "unintentional and otherwise actionable under the rules for negligent or reckless conduct"). Accordingly, defendants object to this instruction to the extent that it refers to a "demonstrable risk of future harm," rather than incorporating defendants' proposed instruction that a future risk is not enough. *See* Defendants' Proposed Nuisance Jury Instructions filed August 6, 2004, Instruction No. 5.

Even if a future risk were actionable, plaintiffs cannot show that it is class-wide. As of today, at most 5,000 class members (defined as individuals who owned property in a certain geographical area as of June 7, 1989) live in the class. *See* PX-1426.[15] Thus, any "objective conditions that pose a demonstrable risk of future harm to the Class Area" cannot give rise to a class-wide harm, and thus should be part of a class-wide trial.

Sixth, if plaintiffs are allowed to recover based on a future risk, than the standard under Colorado law must be whether the risk is "more likely than not" to materialize – not whether there is a "potential" for the risk to occur. *See*, *e.g.*, *Boryla*, 937 P.2d at 816-17 ("[the plaintiff] cannot recover damages for an increased risk of cancer recurrence because she failed to prove to a reasonable medical probability that the future harm was more likely than not to occur"), *Potter*, 863 P.2d at 801 (Cal. 1993) ("[A] plaintiff should be allowed to recover without having to show knowledge that it is more likely than not that the feared cancer will occur"); *see also Boryla*, 937 P.2d at 128-29 (policy rationales announced in *Potter* are "relevant in a toxic tort case").

---

[15] Plaintiffs' have not disputed defendants' bought-sold analysis, as set forth in PX-1426.

Defendants therefore object to this instruction to the extent that it refers to a "demonstrable risk of future harm," rather than incorporating the "more likely than not" standard from Defendants' Proposed Instruction No. 3.6, filed with Defendants' Proposed Changes to Preliminary Jury Instructions on January 10, 2006.

Seventh, plaintiffs have presented no evidence of any future risk based on any substance other than plutonium. Nor have plaintiffs presented evidence of any future risk other than a health risk. Thus, the future risk instruction should be limited to future health risks attributable to plutonium.

Eighth, under Section 930, any future risk claim must be based on the continuing operations of the Rocky Flats Plant. In order for the nuisance to be "continuing" within the meaning of Section 930, the following conditions must be met: (1) the defendant's *operational* activities which give rise to the nuisance must be continuing; (2) the defendant's intent to cause a class-wide nuisance must be continuing; and (3) the health risk resulting from the nuisance must be continuing. See Restatement (Second) of Torts § 930 ("(1) If one causes continuing or recurrent tortious invasions on the land of another by the maintenance of a structure or acts or operations not on the land of the other . . .") (emphasis added); Restatement (Second) of Torts § 930, cmt. d ("Manifestly, this element of depreciation is distinct from the loss in value brought by the actual effects of past invasions (see Comment on § 929) such as damage by floods to the soil's fertility."); Restatement (Second) of Torts § 929, cmt. a (Section 929 (and not Section 930) applies where "future losses are not contingent upon the continuance in the future of the defendant's wrongdoing, and hence the result follows regardless of whether the owner can recover in advance for the prospective harm of future operations of the cement plant. This is a

distinct question that is dealt with in § 930") (emphasis added).  Thus, the jury should be

instructed that any future risk must be attributable to "the continuing operation of the Rocky

Flats plant," as set forth in Defendants' Proposed Instruction No. 3.6 filed January 10, 2006.

Ninth, Section 930 is inapplicable to nuisance claims, because Section 930 requires the

presence of an "invasion."

Tenth, this instruction omits the requirement that, in order to find a nuisance, the jury

must find, among other things, that the plaintiff has proved, by a preponderance of the evidence,

that the interference has caused a reduction in the value of the property.  *See Van Wyk*, 27 P.3d at

392 ("[T]he interference complained of by the Van Wyks must be a substantial invasion

interfering with the use and enjoyment of the land, and reducing the value of the land.") (citing

W. Page Keeton et al., Prosser & Keeton on Torts 622-23); Prosser & Keeton on Torts § 87, at

623 ("The substantial interference requirement is to satisfy the need for a showing that the land is

reduced in value because of the defendant's conduct."); *Saunders*, 1998 WL 42146, at *6 ("Such

interference must be substantial and unreasonable.  It exists only upon a showing of damages--

that is, that the land is reduced in value because of the defendant's conduct.") (internal citations

and quotations omitted); *Bower v. Weisman*, 639 F. Supp. 532, 542 (S.D.N.Y. 1986) ("[A]n

action for private nuisance cannot be sustained without a showing of damages.").

Eleventh, this instruction omits the requirement that, in order to find a nuisance, the jury

must find a violation of both federal and state standards.  *See* Defendants' Proposed Trespass

Instructions Submitted July 13, 2004, Instruction Nos. 7-9; Defendants' Response to Plaintiffs'

Brief on the Statute of Limitations, State Regulatory Standards, Ultrahazardous Liability,

Spoliation, and Negligent Trespass, filed August 18, 2004; Defendants' Memorandum Regarding

Federal and Colorado Nuisance Law, filed October 15, 2004; Defendants' Report Concerning

Opinion Testimony Pertinent to Trial Issues, filed July 30, 1999.  The authorities that have

considered this issue have held that a plaintiff must prove violations of federal standards to

prevail on a claim under the Price Anderson Act.  *See also Roberts v. Fla. Power & Light Co.*,

146 F.3d 1305, 1308 (11th Cir. 1998); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090,

1105 (7th Cir. 1994); *In re TMI Litigation Cases Consol. II*, 940 F.2d 832, 859 (3d Cir. 1991);

*Good v. Fluor Daniel Corp.*, 222 F. Supp. 2d 1236, 1247 (E.D. Wash. 2002); *Gassie v. SMH*

*Swiss Corp. for Microelec. and Watchmaking Indus., Ltd.*, No. Civ. A. 97-3557, 1998 WL

158737, at *4 (E.D. La. Mar. 26, 1998); *Boggs v. Divested Atomic Corp.*, No. C-2-90-840, 1997

WL 33377790, at *3 (S.D. Ohio Mar. 24, 1997); *Corcoran v. New York Power Auth.*, 935 F.

Supp. 376, 386 (S.D.N.Y. 1996); *Bohrmann v. Maine Yankee Atomic Power Co.*, 926 F. Supp.

211, 220 (D. Me. 1996); *McLandrich v. S. California Edison Co.*, 942 F. Supp. 457, 465 (S.D.

Cal. 1996); *Lamb v. Martin Marietta Energy Sys.*, 835 F. Supp. 959, 965 (W.D. Ky. 1993);

Atomic Energy Commission Manual Chapter 0524, Issued August 12, 1963 (DX0351); DOE

Order 5480.1 (Tab 10, App. B to Defs. Brs. in Supp. of Their Mots. for Summ. J. Based on

Expert Disc.); DOE Order 5480.1A (Tab 11, App. B to Defs. Brs. in Supp. of Their Mots. for

Summ. J. Based on Expert Disc.); DOE Interim Standard for DOE Environmental Activities For

All Exposure Pathways, Issued August 5, 1985 (Tab 12, App. B to Defs. Brs. in Supp. of Their

Mots. for Summ. J. Based on Expert Disc.).

Twelfth, defendants object to the instruction to the extent that it allows for plaintiffs'

nuisance claims to be tried on a class-wide basis, for the reasons set forth in Defendants'

Response to Plaintiffs' Statement Regarding Alleged Forms of Interference With Use and Enjoyment, filed November 30, 2004.

For all of the foregoing reasons, defendants object to this instruction and to the instructions generally to the extent that they do not incorporate defendants' proposed nuisance instructions, including without limitation Defendants' Proposed Trespass Instructions submitted July 13, 2004; Defendants' Revised Proposed Trespass Jury Instructions and Jury Verdict Forms, filed August 6, 2004; Defendants' Proposed Supplemental Jury Instructions and Jury Verdict Form, filed September 16, 2005; Defendants' Proposed Limiting and Supplemental Jury Instructions, filed September 23, 2005; and Defendants' Proposed Changes to Preliminary Jury Instructions, filed January 10, 2006.

**INSTRUCTION NO. 3.7**

Nuisance Claim

<u>First Element:  Interference with Use and Enjoyment of Property</u>

The purpose of a nuisance claim is to protect a landowner's right to use and enjoy his property.  Although there are countless ways that a person or company can interfere with this right, for purposes of deciding the first element of the Plaintiff Class' nuisance claim, you may only consider the two possible forms of interference with Class members' use and enjoyment of their property that I stated in Instruction No. 3.6 and will describe further here.

The first possible form of class-wide interference is whether one or both of Defendants' activities at Rocky Flats interfered with Class members' use and enjoyment of their properties by causing Class members to be exposed to plutonium and placing them at some increased risk of health problems as a result of this exposure.  To find that Plaintiffs proved this form of interference, you do not need to find that all Class members were exposed to plutonium at the same time or by the same methods or to the same degree or that they all incurred the same level of health risk as a result of exposure to plutonium.  It is enough to find for purposes of this form of interference with use and enjoyment of property that all the Class members were exposed to plutonium in some way as a result of one or both Defendants' activities and incurred some increment of increased health risk as a result.

There may be some nonresident Class members - that is, Class members who owned property within the Class Area but without living there.  If you find that occupancy of their properties would have resulted in exposure to plutonium in some way, causing some increment of increased health risk, as a result of one or both Defendants' activities, then you should find

that these Class members too suffered an interference with the use and enjoyment of their properties.

The second possible form of interference you must consider in deciding this first element of the Plaintiff Class' nuisance claim is whether one or both of Defendants' activities at Rocky Flats interfered with Class members' use and enjoyment of their properties by creating objective conditions that pose a demonstrable risk of future harm to the Class Area. For example, if plutonium or other hazardous substances present on or in the vicinity of Rocky Flats is at risk of being released to the Class Area – through natural forces, cleanup activity, the conduct of others and/or accidents – and could cause harm to properties in the Class Area by increasing the health risk to residents or impairing the future use of their land in some way, then this would be an objective condition that poses a demonstrable risk of future harm to the Class Area.

In order for you to find interference based on the threat or risk of future harm, you also need not find that the future harm *will* occur and affect the whole of the Class Area. You need only find that conditions exist that present the *potential* for such class-wide harm to occur.

You need not find that all Class members were subject to the same form of interference with use and enjoyment of their properties. It is enough if you find the Class members were all subject to at least one form of interference described in this instruction, even if some Class members were subject only to the first form of interference, others only to the second, and still others to both.

In deciding whether either or both forms of possible class-wide interference exists, you should not consider whether individual Plaintiffs or Class members are or might be fearful, anxious or otherwise disturbed by any real or perceived risks relating to Rocky Flats and the

Defendants' activities there or the conditions they left behind.  Individual reactions to these matters are not relevant to the question of whether a class-wide interference exists.

You also should not consider in deciding this element of the nuisance claim whether Defendants' activities caused any decrease in the value of Class members' properties.  The law does not consider a decrease in property value to be an interference with the use and enjoyment of property.

If you find that Plaintiffs have proved either Dow or Rockwell or both of them interfered with Class members' use and enjoyment of property in one or both of the ways I described in Instruction No. 3.6 and in this instruction, then you must find that Plaintiffs have proved the first element of their nuisance claim with respect to the Defendant or Defendants who caused or contributed to the proven interference.  If, however, you find that neither Defendant interfered with Class members' use and enjoyment of property in at least one of these ways, then you must find Plaintiffs have not proved this element of their nuisance claim against either Defendant.

**Defendants' Objections:**

Defendants' objections to this instruction include the following:

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, defendants object on the ground that the instruction does not make clear that the interference must apply to *all* class members.  This is a trial of the class claim and no individual claims are being tried.  *See*, *e.g.*, 5/17/04 Order at 3)  If plaintiffs do not prove their claims for the class as a whole, then no class member may recover.  (*See*, *e.g.*, 28 U.S.C. § 2072 (class

action device cannot be used to "abridge, enlarge or modify any substantive right" of any litigant); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

Third, defendants object to the instruction that plaintiffs may prove a health risk by proving that defendants caused "[c]lass members to be exposed to plutonium and plac[ed] them at some increased risk of health problems as a result of this exposure."  There is no Colorado authority for the proposition that a health risk can give rise to a nuisance claim.  Other states have properly rejected claims in the absence of proof of a physical injury.  *See*, *e.g.*, *Metro-North* at 521 U.S. at 428.  Even if there were Colorado authority to support the proposition that a health risk is actionable, the standard would not be whether there is "some increased risk," but rather (at the very minimum) whether the risk is "more likely than not."  *See Boryla,* 937 P.2d at 816-17 (Colo. Ct. App. 1996) ("[the plaintiff] cannot recover damages for an increased risk of cancer recurrence because she failed to prove to a reasonable medical probability that the future harm was more likely than not to occur"), *rev'd on other grounds*, 960 P.2d 123 (Colo. 1998); *Potter*, 863 P.2d at 801 (Cal. 1993) ("[A] plaintiff should be allowed to recover without having to show knowledge that it is more likely than not that the feared cancer will occur"); *see also Boryla*, 937 P.2d at 128-29 (policy rationales announced in *Potter* are "relevant in a toxic tort case").

Fourth, because a nuisance requires a substantial and unreasonable interference with the use and enjoyment of property, the standard should at the very least be a "substantial health risk."  *See Van Wyk*, 27 P.3d at 395 (Colo. 2001).

Fifth, defendants object to the instruction that plaintiffs can establish a nuisance by proving "objective conditions that pose a demonstrable risk of future harm to the Class Area."  In

order to prove a nuisance, plaintiffs must do more than show a "future risk."  *See*, *e.g.*, 42 U.S.C.

§ 2014 (requiring that a public liability action assert liability "arising out of or resulting from a

nuclear incident," which is further defined as an "occurrence"); *see also Adams-Arapahoe* 959

F.2d 868 (10th Cir. 1992) ("find[ing] nothing . . . which supports the notion that tort liability may

be premised on the mere risk of harm") (applying Colorado law of negligence, which is

plaintiff's only apparent nuisance theory); *Van Wyk*, 27 P.3d at 391 (defining theory of nuisance

predicated on invasion that is "unintentional and otherwise actionable under the rules for

negligent or reckless conduct").

Even if a future risk were actionable, plaintiffs cannot show that it is class-wide.  As of

today, at most 5,000 class members (defined as individuals who owned property in a certain

geographical area as of June 7, 1989) live in the class.  Thus, any "objective conditions that pose

a demonstrable risk of future harm to the Class Area" cannot give rise to a class-wide harm, and

thus should be part of a class-wide trial.

Sixth, if plaintiffs are allowed to recover based on a future risk, than the standard is not

whether defendants "conditions exist that present the potential" for future harm.  Rather, under

Colorado law, the standard would be whether the risk is "more likely than not" to materialize –

not whether there is a "potential" for the risk to occur.  *See Boryla,* 937 P.2d at 816-17 ("[the

plaintiff] cannot recover damages for an increased risk of cancer recurrence because she failed to

prove to a reasonable medical probability that the future harm was more likely than not to

occur"); *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 801 (Cal. 1993) ("[A] plaintiff

should be allowed to recover without having to show knowledge that it is more likely than not

that the feared cancer will occur"); *see also Boryla*, 937 P.2d at 128-29 (policy rationales announced in *Potter* are "relevant in a toxic tort case").

Seventh, plaintiffs have presented no evidence of any future risk based on any substance other than plutonium. Nor have plaintiffs presented evidence of any future risk other than a health risk. Thus, the future risk instruction should be limited to future health risks attributable to plutonium, rather than "plutonium or other substances" resulting in an increased health risk or "impairing the future use of their land in some way."

Eighth, under Section 930, any future risk claim must be based on the continuing operations of the Rocky Flats Plant. In order for the nuisance to be "continuing" within the meaning of Section 930, the following conditions must be met: (1) the defendant's ***operational*** activities which give rise to the nuisance must be continuing; (2) the defendant's intent to cause a class-wide nuisance must be continuing; and (3) the health risk resulting from the nuisance must be continuing. *See* Restatement (Second) of Torts § 930 ("(1) If one causes continuing or recurrent tortious invasions on the land of another by the maintenance of a structure or acts or operations not on the land of the other . . .") (emphasis added); Restatement (Second) of Torts § 930, cmt. d ("Manifestly, this element of depreciation is distinct from the loss in value brought by the actual effects of past invasions (see Comment on § 929) such as damage by floods to the soil's fertility."); Restatement (Second) of Torts § 929, cmt. a (Section 929 (and not Section 930) applies where "future losses are not contingent upon the continuance in the future of the defendant's wrongdoing, and hence the result follows regardless of whether the owner can recover in advance for the prospective harm of future operations of the cement plant. This is a distinct question that is dealt with in § 930") (emphasis added).

Ninth, Section 930 is inapplicable to nuisance claims, because Section 930 requires the presence of an "invasion."

Tenth, this instruction omits the requirement that, in order to find a nuisance, the jury must find, among other things, that the plaintiff has proved, by a preponderance of the evidence, that the interference has caused a reduction in the value of the property.  *See Van Wyk*, 27 P.3d at 392 ("[T]he interference complained of by the Van Wyks must be a substantial invasion interfering with the use and enjoyment of the land, and reducing the value of the land.") (citing W. Page Keeton et al., Prosser & Keeton on Torts 622-23); Prosser & Keeton on Torts § 87, at 623 ("The substantial interference requirement is to satisfy the need for a showing that the land is reduced in value because of the defendant's conduct."); *Saunders*, 1998 WL 42146, at *6 ("Such interference must be substantial and unreasonable.  It exists only upon a showing of damages-- that is, that the land is reduced in value because of the defendant's conduct.") (internal citations and quotations omitted); *Bower*, 639 F. Supp. at 542 ("[A]n action for private nuisance cannot be sustained without a showing of damages.").

Eleventh, defendants object to the instruction that "[t]o find that Plaintiffs proved this form of interference, you do not need to find that all Class members were exposed to plutonium at the same time or by the same methods or to the same degree or that they all incurred the same level of health risk as a result of exposure to plutonium.  It is enough to find for purposes of this form of interference with use and enjoyment of property that all Class members were exposed to plutonium in some way as a result of one or both Defendants' activities . . . ."  Because this is a class trial, plaintiffs may only recover for **classwide** harms based on **classwide** evidence.  *See Blades v. Monsanto Co.*, 400 F.3d 562, 571 (8th Cir. 2005) (class certification inappropriate

where "not every member of the proposed classes can prove with common evidence that they suffered impact from the alleged conspiracy"); *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003) ("fact of damage cannot be established for every class member through proof common to the class, the need to establish [] liability for individual class members defeats Rule 23(b)(3) predominance."); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 188 (3d Cir. 2001) ("Proof of injury (whether or not an injury occurred at all) must be distinguished from calculation of damages (which determines the actual value of the injury)."); *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 344-45 (4th Cir. 1998); *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 142 (D.N.J. 2002), aff'd 84 Fed. Appx. 257 (3d Cir. 2004) ("Plaintiff must establish that each class member has, in fact, been injured by the alleged conduct.") (emphasis added); *Glitronix Corp. v. AT&T Co.*, 603 F. Supp. 552, 586 (D.N.J. 1984) (plaintiffs must demonstrate that "fact of injury can be proved for the entire class by common evidence").

Twelfth, defendants object to this instruction to the extent that it allows recovery for ***any*** future risk caused by "natural forces, cleanup activity, the conduct of others and/or accidents." At best, defendants can only be held responsible for such future contamination to the extent that plaintiffs have satisfied the applicable requirements relating to foreseeability, proximate cause, and intervening cause.

Thirteenth, defendants object to this instruction to the extent it allows plaintiffs to "mix and match" interferences (past health risk and future risks) to arrive at classwide harm. The class may only recover to the extent that plaintiffs can establish liability for all class members based on common injuries and common evidence. *See*, *e.g.*, *Broussard* 155 F.3d at 344-45.