## INSTRUCTION NO. 3.8

Nuisance Claim

<u>Second Element:  "Substantial" and "Unreasonable" Interference - Introduction</u>

Practically all human activities interfere to some extent with other people or involve some risk of interference.  One such possible interference is with another person's right to use and enjoy his property.  The law of nuisance does not attempt to hold an actor liable for all interferences with this right, but rather only for those interferences that are both "substantial" and "unreasonable."  That is why this is an element of Plaintiffs' nuisance claim.  The definitions of these terms are set out in Instruction Nos. 3.9 and 3.10.

In deciding whether Plaintiffs have proven that the interference they claim is substantial and unreasonable, you may only consider any interference with Class members' use and enjoyment of property you find based on Instruction Nos. 3.6 and 3.7.  Thus, if you find Plaintiffs proved that Dow and/or Rockwell interfered with Class members' use and enjoyment of property in only one of the ways stated in these instructions, you may only consider this proven form of interference in deciding whether Plaintiffs have proved a substantial and unreasonable interference.  If, however, you find Plaintiffs proved that Dow and/or Rockwell interfered with Class members' use and enjoyment of property in both of the ways stated in these instructions, you should consider these two forms of interference together to decide whether the total interference caused by each Defendant was substantial and unreasonable.

**<u>Defendants' Objections:</u>**

Defendants' objections to this instruction include the following:

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, defendants object to this instruction to the extent that it does not require class-wide proof.  This is a trial of the class claim and no individual claims are being tried.  *See, e.g.,* 5/17/04 Order, at 3.  If plaintiffs do not prove their claims for the class as a whole, then no class member may recover.  *See, e.g.,* 28 U.S.C. § 2072 (class action device cannot be used to "abridge, enlarge or modify any substantive right" of any litigant); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999); *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Accordingly, the last sentence should refer to "all class members' use and enjoyment of property, rather than "class members' use and enjoyment of property."

Third, because this is class trial, in determining whether the interference is substantial and unreasonable, the jury may not "mix and match" different quantities of interferences that may exist among different class members to arrive at a classwide interference that is "substantial and unreasonable for the class overall" (*i.e.*, the jury should not be allowed to conclude that because class member "a" has interference "x" that is 30% of "substantial and unreasonable" and interference "y" that is 70% of substantial and unreasonable," class member "a" has interference "x" that is 70% of "substantial and unreasonable" and interference "y" that is 30% of substantial and unreasonable," that the interference is "substantial and unreasonable" for the class of "a/b" as a whole).   Rather, plaintiffs may only recover for ***classwide*** harms that are substantial and unreasonable for each class member.  based on ***classwide*** evidence.  *See Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 344-45 (4th Cir. 1998); *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003) ("fact of damage cannot be established for every class

94

member through proof common to the class, the need to establish [] liability for individual class members defeats Rule 23(b)(3) predominance."); *Blades v. Monsanto Co.*, 400 F.3d 562, 571 (8th Cir. 2005) (class certification inappropriate where "not every member of the proposed classes can prove with common evidence that they suffered impact from the alleged conspiracy"); *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 142 (D.N.J. 2002), aff'd 84 Fed. Appx. 257 (3d Cir. 2004) ("Plaintiff must establish that each class member has, in fact, been injured by the alleged conduct.") (emphasis added); *Glitronix Corp. v. AT&T Co.*, 603 F. Supp. 552, 586 (D.N.J. 1984) (plaintiffs must demonstrate that "fact of injury can be proved for the entire class by common evidence"); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 188 (3d Cir. 2001) ("Proof of injury (whether or not an injury occurred at all) must be distinguished from calculation of damages (which determines the actual value of the injury).") Thus, the jury should not be instructed that if "Plaintiffs proved that Dow and/or Rockwell interfered Class members' use and enjoyment of property in both of the ways stated in these instructions, you should consider these two forms of interference together to decide whether the total interference caused by each Defendant was substantial and unreasonable."

**INSTRUCTION NO. 3.9**

Nuisance Claim

<u>Second Element:  "Substantial" Interference - Defined</u>

An interference with a person's right to use and enjoy their land is "substantial" if the interference is significant enough that a normal person in the community would find it offensive, annoying or inconvenient.  In this case, that means you must determine whether a reasonable landowner of normal sensibilities would find the proven interference caused by Dow or Rockwell to be offensive, annoying or inconvenient.  "Normal sensibilities" for these purposes means a person who is neither unusually sensitive nor unusually insensitive to the interference you are considering.

In deciding whether any interference proven by Plaintiffs is substantial under this test, you must consider only the magnitude or level of interference that is common to the Class as a whole, and not any more severe level of interference that may have been suffered by some class members by not by others.

Evidence that the value of Class members' properties has diminished because of any interference proven by Plaintiffs is evidence that the interference is substantial under the test stated in this instruction.  This is so because normal members of the community are part of the market that determines the value of properties, and if they consider an interference with the use and enjoyment of these properties to be offensive, annoying or inconvenient, they may place a lower value on the property than they would if the interference did not exist.  Evidence that Class Properties have a lower value because of any proven interference is not necessary, however, for you to find that the interference is substantial under the test I just described to you.

96

**Defendants' Objections**

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, defendants object to this instruction to the extent that it does not require class-wide proof.  This is a trial of the class claim and no individual claims are being tried.  *See, e.g.,* 5/17/04 Order, at 3.  If plaintiffs do not prove their claims for the class as a whole, then no class member may recover.  *See, e.g.,* 28 U.S.C. § 2072 (class action device cannot be used to "abridge, enlarge or modify any substantive right" of any litigant); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999); *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 613 (1997).  Thus, the instruction should contain the following language, as proposed in Defendants' Proposed Changes to Preliminary Jury Instructions filed January 10, 2006:  "In deciding whether any interference proven by Plaintiffs is substantial under this test, you must consider only harm that is common to the class as a whole, and not any more severe harm that may have been suffered by some Class members but not by others."

Third, defendants object to the following language:  "the interference is significant enough that a normal person in the community would find it offensive, annoying or inconvenient."  In order to give rise to liability, an interference must be far more than "offensive, annoying, or inconvenient."  Instead, as this Court recognized in *Cook* IX, the interference must be "definitely offensive, seriously annoying, or intolerable."  *Cook v. Rockwell Int'l Corp.*, 273 F.Supp.2d 1175, 1203-04 (D. Colo. 2003).  As the Court explained:  "Section 821F of the Restatement and its supporting commentary, relied upon by the Colorado Supreme Court in Van

Wyk, states that a significant invasion of another's interest in the use and enjoyment of property exists '[i]f normal persons living in the community would regard the invasion in question as definitely offensive, seriously annoying or intolerable." *Cook v. Rockwell Int'l Corp.*, 273 F.Supp.2d 1175, 1203-04 (D. Colo. 2003).

Fourth, contrary to what the instruction states, evidence that Class Properties have a lower value because of any proven interference *is* necessary "to find that the interference is substantial." In order to find a nuisance, the jury must find, among other things, that the plaintiff has proved, by a preponderance of the evidence, that the interference has caused a reduction in the value of the property. *See Pub. Serv. Co. v. Van Wyk*, 27 P.3d 377, 392 (Colo. 2001) ("[T]he interference complained of by the Van Wyks must be a substantial invasion interfering with the use and enjoyment of the land, and reducing the value of the land.") (citing W. Page Keeton et al., Prosser & Keeton on Torts 622-23); Prosser & Keeton on Torts § 87, at 623 ("The substantial interference requirement is to satisfy the need for a showing that the land is reduced in value because of the defendant's conduct."); *Saunders v. Hilperthauser*, 1998 WL 42146, at *6 (S.D.N.Y. 1998) ("Such interference must be substantial and unreasonable. It exists only upon a showing of damages--that is, that the land is reduced in value because of the defendant's conduct.") (internal citations and quotations omitted); *Bower v. Weisman*, 639 F. Supp. 532, 542 (S.D.N.Y. 1986) ("[A]n action for private nuisance cannot be sustained without a showing of damages.").

Fifth, the test for whether a nuisance is actionable is not only whether it would offend a landowner of normal sensibilities, but whether it would offend both a landowner of normal sensibilities and the plaintiff (here, the class members). *See* April 14, 2004 Order at 8 (cause of

action for nuisance may exist where, inter alia, interference was "capable of causing class members to suffer fear, anxiety or discomfort" and "did cause such an interference with class' members use and enjoyment of their property (an individual question)"); *Cook v. Rockwell Int'l Corp.*, 273 F. Supp.2d 1175,1201 (D. Colo. 2003) (citing Restatement (Second of Torts § 821F in connection with elements of nuisance claim); Restatement (Second) of Torts § 821F cmt. d (deaf man may bring an action for nuisance, but only to remedy the interference he has individually suffered, such as the enjoyment of entertaining guests); *Adkins v. Thomas Solvent Co.*, 487 N.W.2d 715, 721 n.13 (Mich. 1992) ("The deafness of the plaintiff does not prevent the existence of genuine interference, i.e., the enjoyment of entertaining guests. The Restatement does not suggest that absent an interference with the use and enjoyment of land, the deaf person could recover on the basis that hearing persons would not pay as much for his house."). Accordingly, the interference must be definitely offensively, seriously annoying or intolerable not only for a person with "normal sensibilities" (as the instruction states), but for all class members.

Sixth, defendants object to the phrase regarding the "proven interference caused by Dow or Rockwell" on the ground that it suggests that an interference has been proven.

**INSTRUCTION NO. 3.10**

Nuisance Claim

<u>Second Element:  "Unreasonable" Interference - Balancing Test</u>

In an action for damages, such as this case, an interference with a person's right to use and enjoy their land is "unreasonable" if the gravity of the harm outweighs the utility of the conduct that caused it.  Accordingly, to determine whether a proven interference is unreasonable in this case, you must consider and balance the gravity of the harm to Class members against the utility of the Dow and Rockwell's conduct at Rocky Flats and determine whether the gravity of this harm outweighs the utility of this conduct.

I will tell you more about this balancing test in my next instructions, but I want to caution you now that it does not mean that Dow and Rockwell can interfere with Class members' use and enjoyment of their properties as long as their activities at Rocky Flats served an important purpose or these activities are deemed more valuable or profitable than Class members' use of their land.  Instead, you must consider a number of factors as part of the balancing test to decide whether any interference Defendants caused was unreasonable.  I will describe those factors for you in a moment.  (See Instruction Nos. 3.11 and 3.12.)

In considering these factors and deciding whether any interference by Dow or Rockwell was unreasonable, you must also use an objective perspective.  In other words, the question is now how Plaintiffs, Class members or the Defendants would consider the gravity of the harm or the utility of Defendants' conduct, or the judgment they would make about whether any proven interference is unreasonable.  Instead, the question is whether reasonable persons generally,

looking at the whole situation impartially and objectively, would consider the interference to be unreasonable.

**Defendants' Objections:**

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, the second paragraph of this instruction is unnecessary argument.  The jury should be informed of the balancing test that applies under Colorado law for determining whether an interference is "unreasonable."   There is no reason to inform the jury what the balancing test is not.  For example, there is no need to inform the jury that the nuisance is not unreasonable just because (hypothetically) the class members' activities were more valuable than defendants' activities.  Moreover, the second paragraph as currently worded may give jurors the misimpression that the economic and national security value of Rocky Flats is irrelevant to the question of whether the interference is unreasonable.

Third, the test for whether a nuisance is actionable is not only whether it would offend "reasonable persons," but whether it would offend both "reasonable persons" and the plaintiff (here, the class members).  *See* April 14, 2004 Order at 8 (cause of action for nuisance may exist where, inter alia, interference was "capable of causing class members to suffer fear, anxiety or discomfort" and "did cause such an interference with class' members use and enjoyment of their property (an individual question)"); *Cook v. Rockwell Int'l Corp.*, 273 F. Supp.2d 1175,1201 (D. Colo. 2003) (citing Restatement (Second of Torts § 821F in connection with elements of nuisance claim); Restatement (Second) of Torts § 821F cmt. d (deaf man may bring an action for

nuisance, but only to remedy the interference he has individually suffered, such as the enjoyment of entertaining guests); *Adkins v. Thomas Solvent Co.*, 487 N.W.2d 715, 721 n.13 (Mich. 1992) ("The deafness of the plaintiff does not prevent the existence of genuine interference, i.e., the enjoyment of entertaining guests.  The Restatement does not suggest that absent an interference with the use and enjoyment of land, the deaf person could recover on the basis that hearing persons would not pay as much for his house.").

**INSTRUCTION NO. 3.11**

Nuisance Claim

<u>Second Element:  Unreasonable Interference:  Factors Regarding Gravity of the Harm</u>

The gravity of the harm refers to the gravity of the proven interference with Class members' use and enjoyment of their property.  The factors you should consider in assessing the gravity of this harm are:

1.    <u>The extent of the harm involved</u>.

The extent of the harm depends on both the degree of the harm and its duration. You can consider both harm that has actually been incurred and the risk of future harm.  In assessing the extent of the harm, you must also consider only harm that is common to the class as a whole, and not any more severe harm that may have been suffered by some Class members but not by others.

2.    <u>The character of the harm involved</u>.

This factor refers to the kind of harm suffered by the Class members.

3.    <u>The social value of the type of use or enjoyment of property that has been harmed</u>. This factor considers the social value of the use to which the Class members' lands are being put.  The social value of a particular type of use depends on the extent to which the use or uses advances or protects the general public good.

4.    <u>The suitability of the particular use or enjoyment harmed to the character of the locality</u>.

This factor considers whether the particular use or enjoyment the Class members make of their land in the Class Area is suitable to this area.

5.      <u>The burden on the Class members of avoiding the harm</u>.

This factor is considered when it is possible for the landowner to take some action to avoid the harm.

**<u>Defendants' Objections</u>:**

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, defendants object to the phrases "the gravity of the proven interference" and "the kind of harm suffered by class members" in that they assume that a harm has been proved.

Third, to the extent that the Restatement standard is the proper one to apply, defendants object to this instruction to the extent that it deviates from the language of Restatement Section 827.

Fourth, defendants object to this instruction to the extent that it applies not only to any intentional nuisance proved by plaintiffs, but also to any negligent nuisance proven by plaintiffs. The Restatement balancing test (utility versus harm) applies only to "intentional" conduct.  *See* Restatement (Second) of Torts Section 826 ("An ***intentional*** invasion of another's interest in the use and enjoyment of land is unreasonable if (a) the gravity of the harm outweighs the utility of the actor's conduct, or (b) the harm caused by the conduct is serious and the financial burden of compensating for this and similar harm to others would not make the continuation of the conduct not feasible.") (emphasis added).  Here, however, the jury could find that defendants committed a negligent nuisance, under which circumstances the balancing test would be inapplicable.

Fifth, defendants object to this Plaintiffs' Proposed Nuisance Instruction No. 13 because it is inconsistent with federal nuclear regulations, and is thus preempted by the Price Anderson Act.  *See* 42 U.S.C. § 2014 (preempting state law to the extent that "such law is inconsistent" with the Price Anderson Act); *see also Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1308 (11th Cir. 1998) (plaintiffs must prove violation of federal nuclear safety standards to prevail on Price Andersen claims); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1105 (7th Cir. 1994) (same); *In re TMI Litigation Cases Consol. II*, 940 F.2d 832, 859 (3d Cir. 1991) (same).

**INSTRUCTION NO. 3.12**

Nuisance Claim

Second Element:  Unreasonable Interference:  Factors Regarding Utility of the Conduct

There are also certain factors you must consider in assessing the utility of the conduct that caused the harm, that is, any proven interference.  Some of these factors focus directly on the conduct causing the harm, while other factors focus on any actions Dow or Rockwell have taken to avoid or compensate others for any interference they caused.

The factors focusing on the conduct causing the harm include:

1.      The social value of the primary purpose of this conduct.

It is undisputed that the primary purpose of the conduct that allegedly interfered with Class members' right to use and enjoy their properties was to manufacture nuclear weapons components.  The social value of this purpose depends on the extent to which it advanced or protected the general public good.  The parties agree that the manufacture of nuclear weapons at Rocky Flats, as a general matter, advanced the public good by protecting national security.

2.      The suitability of the conduct to the character of the locality.

This factor considers whether the Defendants' conduct is suitable to the area in which it occurred.

In evaluating the utility of the conduct causing the harm, you must also consider whether and to what extent the actor causing the harm took steps to address the consequences of its conduct.  Thus, you must consider the following factors focusing on any actions Dow or Rockwell have taken to avoid or compensate others for any interference they caused:

3.      <u>The impracticability of preventing or avoiding the interference</u>.

If it was practicable for Dow or Rockwell to avoid causing any interference with Class members' use and enjoyment of property, and they did not take the necessary measures to do so, then the law considers their conduct to have no utility, regardless of its social value.  Any interference caused by Dow and/or Rockwell was practicably avoidable if by some means the company could have substantially reduced the harm without incurring prohibitive expense or hardship in its operation of Rocky Flats.  If you find it was practicable for Dow or Rockwell to avoid any harm they caused under this test, then you must find the gravity of the harm outweighed the utility of Dow or Rockwell's conduct, and that any interference proved by Plaintiffs was unreasonable.

4.      <u>The financial burden to compensate others for any interference caused by Dow and/or Rockwell's activities</u>.

A nuisance action for damages seeks to place the financial burden for any interference with the use and enjoyment of property on the actor that caused this harm.  The financial burden of this cost is therefore a significant factor in determining whether the conduct of causing the harm without paying for it is unreasonable.  You may find that Dow or Rockwell's conduct lacks sufficient utility to outweigh any interference it caused if you find it would be unreasonable for Class members to bear this cost without compensation.

**Defendants' Objections:**

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, defendants object to the description of the second factor:  "This factor considers whether the Defendants' conduct is suitable to the area in which it occurred."  Restatement Section 828 considers "the primary purpose" of defendants' conduct, not the allegedly tortious aspects of defendants' conduct as this instruction implies, and the instruction should be revised accordingly, to reflect defendants' Proposed Instruction No. 3.12, submitted January 10, 2006 with Defendants' Proposed Changes to Preliminary Jury Instructions.  *See* Restatement (Second) of Torts Section 828 (a) (relevant consideration is "the social value that the law attaches to the primary purpose of the conduct").

Third, defendants object to the third and fourth factors in this instruction to the extent that they apply not only to intentional nuisance, but also to negligent nuisance.  As Restatement Section 828 makes clear, these factors apply only if the defendant's conduct was "intentional."  *See* Restatement Section 828, cmt. h ("h. Impracticability of preventing or avoiding the invasion. ***When a person knows that his conduct will interfere*** with another's use or enjoyment of land and it would be practicable for him to prevent or avoid part or all of the interference and still achieve his purpose, his conduct lacks utility if he fails to take the necessary measures to avoid it.") (emphasis added); *see also* Restatement Section 826 ("An ***intentional*** invasion of another's interest in the use and enjoyment of land is unreasonable if  (a) the gravity of the harm outweighs the utility of the actor's conduct, or  (b) ***the harm caused by the conduct is serious and the financial burden of compensating for this and similar harm to others would not make the***

***continuation of the conduct not feasible*.**") (emphasis added)  Here, however, the jury could

find defendants liable for negligent nuisance, in which case these factors should not apply.

Fourth, defendants object to the fourth factor in the instruction:  "the financial burden to

compensate others."  Under the plain language of Restatement Section 826, the jury should be

instructed on "the financial burden to compensate others" only if it first determines that the

"harm" is "serious."  *Id.*  Moreover, the test is not whether it is reasonable for the plaintiff to bear

the financial burden of the harm, but whether it is reasonable for the defendant to bear the

financial burden of the harm.  *See* Restatement (Second) of Torts § 826 cmt. f ("The extent of the

burden of compensating may also affect the determination of what persons can recover.").  Thus,

the instruction as written is one-sided and unfair.

 Fifth, defendants object to this instruction to the extent that it omits the consideration

that, if it would have been necessary to cease operation of Rocky Flats in order to avoid any

harm to class members, then the invasion is not practically avoidable.  *See*  Restatement Section

828, cmt. h ("But if he would have to abandon his activity or incur expense or hardship of such

magnitude that it would be considerably less profitable to continue, in order to reduce the harm

materially, the invasion is not practicably avoidable.")

Sixth, assuming arguendo that Restatement Section 828 were to apply, defendants object

to this instruction to the extent that it is inconsistent with the actual language of that Section of

the Restatement.

Seventh, the third factor in this instruction, which is based on Restatement (Second) of

Torts § 830, is a question of law that should not be submitted to the jury.  *See Kopecky v. Nat'l*

*Farms, Inc.*, 510 N.W.2d 41, 48 (Neb. 1994) ("[W]hether the facts of a particular case fit within

one of the rules contained in § § 829 through 831 is a question of law and, as such, must be decided by the court.  The jury, therefore, should not have been instructed as it was according to §§ 829A and 830.").  In any event, plaintiffs here have not made even a partial class-wide showing that it would have been practicable for either defendant to avoid the alleged "harm" in whole or in part without undue hardship.

Eighth, the third factor in this instruction omits Restatement Section 830's requirement that the harm be "significant" before an interference may be found to be "unreasonable" under Section 830.  *See* Restatement Second of Torts § 830 ("An intentional invasion of another's interest in the use and enjoyment of land is unreasonable if the harm is significant and it would be practicable for the actor to avoid the harm in whole or in part without undue hardship.") (emphasis added).

Ninth, defendants object to the statement in the instruction that "a nuisance action for damages seeks to place the financial burden for ***any*** interference with the use and enjoyment of property on the actor that caused this harm."  The statement is incorrect in several respects.  As an initial matter, to prove a nuisance claim, a plaintiff must prove a "substantial and unreasonable" interference, not "any interference."   The correct statement is that "a nuisance action places the financial burden on the defendant ***if*** the interference is substantial and unreasonable."  Whether the interference is unreasonable, in turn, depends upon the factors set forth in this instruction.  Thus, the instruction as written is circular:  the juror is told to read the instruction in determining whether the nuisance is unreasonable, and the instruction says that the defendant should pay for nuisance ***if*** it is unreasonable.

Tenth, this instruction is inconsistent with federal nuclear regulations, and is thus preempted by the Price Anderson Act.  *See* 42 U.S.C. § 2014 (preempting state law to the extent that "such law is inconsistent" with the Price Anderson Act); *see also Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1308 (11th Cir. 1998) (plaintiffs must prove violation of federal nuclear safety standards to prevail on Price Andersen claims); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1105 (7th Cir. 1994) (same); *In re TMI Litigation Cases Consol. II*, 940 F.2d 832, 859 (3d Cir. 1991) (same).

Eleventh, the uncontroverted evidence presented at trial has established that defendants Dow or Rockwell were required to act in a manner consistent with their obligations to the Department of Energy.  The jury instructions should not suggest that Dow or Rockwell may be held liable for nuisance even if they were acting in accordance with those obligations.  Thus, defendants object to this instruction to the extent that it is modified to state that an interference was practically avoidable by Dow and Rockwell only if defendants could have done so "consistent with their obligations to the Department of Energy" (as set forth in Defendants' Proposed Instruction No. 3.12 submitted January 10, 2006).

## INSTRUCTION NO. 3.13

Nuisance Claim

<u>Third Element:  "Intentional" or "Negligent" Conduct</u>

As stated in Instruction No. 3.6, the third element Plaintiffs must prove to prevail on their nuisance claim is that the activity or activities causing the unreasonable and substantial interference were either "intentional" (see Instruction No. 3.14) or "negligent" (see Instruction No. 3.15).  Thus, Plaintiff must do more than show that the existence of Rocky Flats interfered with Class members' use and enjoyment of their properties.  They must show that either Defendant or both of them engaged in intentional or negligent conduct at Rocky Flats that caused such an interference.

You do not need to find that all of the conduct that caused any substantial and unreasonable interference was intentional or that all of it was negligent in order to find that Plaintiffs proved this element of their nuisance claim.  Proof that a substantial and unreasonable interference resulted from a combination of intentional conduct and negligent conduct is sufficient to prove this element.

**<u>Defendants' Objections</u>:**

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, defendants object to the second paragraph of this instruction.  Under Colorado Supreme Court precedent, plaintiffs must prove either that defendants' conduct which allegedly gave rise to the substantial and unreasonable interference was intentional, or that defendants'

112

conduct was negligent. *See Public Service Co. of Colorado v. Van Wyk*, 27 P.3d 377, 382 (Colo. 2001).  Plaintiffs may not "mix and match" among different claims.  Nor may the class prevail by having different class members with different "mixes" of harms caused by intentional and negligent conduct. *See Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 344-45 (4th Cir. 1998); *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003) ("fact of damage cannot be established for every class member through proof common to the class, the need to establish [] liability for individual class members defeats Rule 23(b)(3) predominance."); *Blades v. Monsanto Co.*, 400 F.3d 562, 571 (8th Cir. 2005) (class certification inappropriate where "not every member of the proposed classes can prove with common evidence that they suffered impact from the alleged conspiracy"); *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 142 (D.N.J. 2002), aff'd 84 Fed. Appx. 257 (3d Cir. 2004) ("Plaintiff must establish that each class member has, in fact, been injured by the alleged conduct.") (emphasis added); *Glitronix Corp. v. AT&T Co.*, 603 F. Supp. 552, 586 (D.N.J. 1984) (plaintiffs must demonstrate that "fact of injury can be proved for the entire class by common evidence"); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 188 (3d Cir. 2001) ("Proof of injury (whether or not an injury occurred at all) must be distinguished from calculation of damages (which determines the actual value of the injury).")  Thus, the jury should not be instructed that if "Plaintiffs proved that Dow and/or Rockwell interfered Class members' use and enjoyment of property in both of the ways stated in these instructions, you should consider these two forms of interference together to decide whether the total interference caused by each Defendant was substantial and unreasonable"

## INSTRUCTION NO. 3.14

Nuisance Claim

Third Element:  Definition of "Intentional" Conduct

The conduct that results in an interference with another's use and enjoyment of property is considered "intentional" if it meets any of the following three tests:

(1)     The defendant knew that its conduct would interfere with others' use and enjoyment of their property; or

(2)     The defendant knew it was substantially certain that its conduct would interfere with others' use and enjoyment of their property; or

(3)     The defendant learned that its conduct was interfering with or was substantially certain to interfere with others' use and enjoyment of their property and yet continued this conduct.


**Defendants' Objections:**

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, Plaintiffs waived any nuisance claim based on any of defendants' intentional conduct: "Plaintiffs will seek a jury instruction predicating strict liability for their nuisance claim on defendants' conduct of an abnormally dangerous activity at Rocky Flats.  Plaintiffs will also offer proof of liability on the nuisance claim through evidence of defendants' negligence." (Plaintiffs' 12/10/03 Status Report at 2.)

114

Third, as set forth in defendants' proposed instructions submitted on January 10, 2006, this instruction should be amended to make clear that plaintiffs' proof must apply to all class members.  This is a trial of the class claim and no individual claims are being tried.  *See, e.g.,* 5/17/04 Order, at 3.  If plaintiffs do not prove their claims for the class as a whole, then no class member may recover.  *See, e.g.,* U.S.C. § 2072 (class action device cannot be used to "abridge, enlarge or modify any substantive right" of any litigant); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999); *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

Fourth, paragraph (3) should include at the end the language "without regard to the invasion interfering with the use and enjoyment of all of the class members' property," as set forth in proposed instruction no. 3.14 of Defendants' Proposed Changes to Preliminary Jury Instructions.  This language comes directly from the Colorado Supreme Court's decision in *Van Wyk*, which defines what constitutes an "intentional" trespass.  *See Pub. Serv. Co. of Colorado v. Van Wyk*, 27 P.3d 377, 395 (Colo. 2001) ("I]f a defendant, with notice that an invasion interfering with the use and enjoyment of the plaintiff's property has occurred, or is substantially certain to occur, continues his conduct ***without regard to the invasion interfering with the use and enjoyment of the plaintiff's property***, that defendant's conduct will be the proper basis for an intentional nuisance cause of action.") (emphasis added).

## INSTRUCTION NO. 3.15

Nuisance Claim

Third Element:  Definition of "Negligent" Conduct

The generation, use, storage and disposal of plutonium and other hazardous radioactive and non-radioactive substances as part of the operation of a nuclear weapons plant are inherently dangerous activities.  As a result, Dow and Rockwell were required to exercise the highest possible degree of skill, care, diligence, and foresight in conducting these activities, according to the best technical, mechanical and scientific knowledge and methods that were practical and available at the time.  If either Dow or Rockwell or both of them did not fulfill this duty when they performed any activities that caused or contributed to a substantial and unreasonable interference (as defined in these instructions), then their conduct was negligent.

**Defendants' Objections:**

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, defendants incorporate by reference their objection to an inherently dangerous activities instruction set forth in Defendants' Objections to Plaintiffs' Additional and Revised Jury Instructions, filed November 8, 2004.

Third, this instruction sets forth a standard of care that is inconsistent with federal nuclear regulations, and is thus preempted by the Price Anderson Act.  *See* 42 U.S.C. § 2014 (preempting state law to the extent that "such law is inconsistent" with the Price Anderson Act); *see also Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1308 (11th Cir. 1998) (plaintiffs

must prove violation of federal nuclear safety standards to prevail on Price Andersen claims); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1105 (7th Cir. 1994) (same); *In re TMI Litigation Cases Consol. II*, 940 F.2d 832, 859 (3d Cir. 1991) (same).

Fourth, plaintiffs have never made a showing of which activities at Rocky Flats, if any, are inherently dangerous. To prove that an activity is inherently dangerous such that the highest standard of care applies, a plaintiff must show that "all minds concur that the defendant is engaged in an activity that poses a high risk of injury to others that the court, as a matter of law, may instruct the jury to hold the defendant to the highest standard of care." *Imperial Distrib. Servs., Inc. v. Forrest*, 741 P.2d 1251, 1255 (Colo. 1987). Plaintiffs never even attempted to make this showing here, or to define the activity at issue.

Fifth, even if this Court were to find that some particular aspect of the operation of Rocky Flats constituted an inherently dangerous activity, plaintiffs have not shown that they have suffered any interference that is linked to a failure to exercise the highest degree of care in that activity. *See Kulik v. Pub. Serv. Co.*, 605 P.2d 475 (holding that instruction on heightened standard of care would be inappropriate where "[t]here was no evidence presented linking the accident to any breakdown or error in the" dangerous activity) (emphasis added).

Sixth, even if plaintiffs were to show that an inherently dangerous activity at Rocky Flats caused some "interference" to some of the class members, plaintiffs cannot show such interference-caused-by-an-inherently-dangerous-activity on a class-wide basis. Thus, this instruction is inappropriate for a class-wide trial.

Seventh, defendants object to this instruction to the extent that it is inconsistent with the Colorado pattern instruction regarding inherently dangerous activities.  CJI-Civ. 9:7 (CLE ed. 2004) ("Negligence–Defined–Inherently Dangerous Activities").

 Eighth, defendants object to this instruction to the extent that it does not include the element of foreseeability.  Foreseeability is a requirement for claims based on the "heightened standard of care" for "inherently dangerous activities."  *Walcott v. Total Petroleum, Inc.*, 964 P.2d 609, 612 (Colo. App. 1998) ("We therefore conclude that, whether analyzed under the rubric of duty or proximate cause, the risk that a purchaser would intentionally throw gasoline on a victim and set the victim on fire was not reasonably foreseeable. . . . The same result obtains even assuming, without deciding, that Total was subject to the heightened standard of care the supreme court prescribed in *Huddleston v. Union Rural Electric Ass'n*, 841 P.2d 282 (Colo.1992), for inherently dangerous activities.")

Ninth, the uncontroverted evidence presented at trial has established that defendants Dow or Rockwell were required to act in a manner consistent with their obligations to the Department of Energy.  The jury instructions should not suggest that Dow or Rockwell may be held liable for nuisance even if they were acting in accordance with those obligations.

Tenth, the law does not permit defendants to be held to the highest "possible" degree of skill, care, diligence, and foresight.  ***Any*** degree of care is "possible," and it is incorrect to hold defendants to such a standard over the course of each moment of the four decades that they operated the Rocky Flats Plant.  Moreover, the application of a standard involving the highest "possible" degree of skill, care, diligence, and foresight implies that defendants may have been required to act in a manner inconsistent with their obligations to the Department of Energy.

Eleventh, defendants object to this instruction on the ground that it omits the requirement that the interference apply to all class members' use and enjoyment of their properties.  This is a trial of the class claim and no individual claims are being tried.  *See, e.g.,* 5/17/04 Order, at 3.  If plaintiffs do not prove their claims for the class as a whole, then no class member may recover. *See, e.g.,* 28 U.S.C. § 2072 (class action device cannot be used to "abridge, enlarge or modify any substantive right" of any litigant); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999); *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

**INSTRUCTION NO. 3.16**

Nuisance Claim

<u>Third Element:  Accident Not Presumptive Negligence</u>

The occurrence of an accident does not raise any presumption of negligence on the part of a defendant.  Negligence may be established, however, by the facts and circumstances surrounding an accident.

INSTRUCTION NO. 3.17

Nuisance Claim

Fourth Element:  Continuing Nuisance

As stated in Instruction No. 3.6, the fourth element Plaintiffs must prove to prevail on their nuisance claim is that it appears that the unreasonable and substantial interference with the use and enjoyment of property caused by Dow and/or Rockwell's intentional or negligent conduct will continue indefinitely.  In deciding this element, it is not necessary for you to find that the interference meeting these requirements will last forever.  Instead, you should consider whether there is any reason to expect that this interference will end at any definite time in the future.  If you find there is no reason to expect this interference to end by a definite time, then you must find it appears the interference will continue indefinitely.

**Defendants' Objections:**

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, defendants object to this instruction to the extent that it does not incorporate the changes set forth in defendants' proposed revised instruction No. 3.17 filed January 10, 2006. Those changes are necessary to make the instruction consistent with Restatement (Second) of Torts Section 930.  In order for the damages measure of Section 930 of the Restatement to apply, the nuisance must be "continuing."  Restatement (Second) of Torts § 930.  In order for the nuisance to be "continuing" within the meaning of Section 930, the following conditions must be met:  (1) the defendant's operational activities which give rise to the nuisance must be

121

continuing; (2) the defendant's intent to cause a class-wide nuisance must be continuing; and (3) the past or future health risk resulting from the defendant's operational activities must be continuing.  *See* Restatement (Second) of Torts Section 930 ("(1) If one causes continuing or recurrent tortious invasions on the land of another ***by the maintenance of a structure or acts or operations not on the land of the other*** . . .") (emphasis added); Restatement (Second) of Torts Section 930, cmt. d ("Manifestly, this element of depreciation is distinct from the loss in value brought by the actual effects of past invasions (see Comment on § 929) such as damage by floods to the soil's fertility."); Restatement (Second) of Torts Section 929, cmt. a (Section 929 (and not Section 930) applies where "future losses are ***not contingent upon the continuance in the future of the defendant's wrongdoing***, and hence the result follows regardless of whether the owner can recover in advance for the prospective harm of future operations of the cement plant. This is a distinct question that is dealt with in § 930") (emphasis added).

Third, defendants object to the language:  "no reason to expect the interference to end by a definite time."  As an initial matter, this language presumes that plutonium is present on plaintiffs' properties.  Moreover, there is no requirement that the plutonium be scheduled for removal at a definite time, so long as it is expected that the plutonium will be removed at some time in the future.  What is important under Section 930 is an expectation that the trespass will cease within the reasonably foreseeable future - not the expectation that the trespass will cease by ***some*** date certain.  *See* Restatement (Second) of Torts Section 930, cmt. b.  Moreover, the instruction misquotes the comments to Section 930 - those comments do not require that the invasion be expected to cease by ***a*** definite time in the future, but rather that the invasion by expected to cease by ***any*** definite time in the future.  *See* Restatement (Second) of Torts Section

930, cmt. b ("'Indefinitely' as used in this Section does not mean that the situation may be expected to last forever, but merely that there is no reason to expect its termination at *any* definite time in the future.")

Fourth, it must not only "*appear*" that the invasion will continue indefinitely; rather, the invasion must continue to be present through the time of trial.  *See* Restatement (Second) of Torts Section 930, illus. 2 ("The operations of the gas plant began in 1931 and fumes and smoke invaded the greenhouse and damaged the flowers. This damage, small at first, reached a peak in June, 1932, when the gas plant first began to be operated to full capacity. It has since been carried on at the same level *and the damage to B's business has continued*.") (emphasis added).

Fifth, defendants object to this instruction to the extent that references to "interference" are not changed to "substantial and unreasonable interference" (as proposed in Defendants' Proposed Instruction No. 3.17 submitted January 10, 2006), which is the standard for nuisance under Colorado law.   *See Public Service Co. of Colorado v. Van Wyk*, 27 P.3d 377, 395 (Colo. 2001).

INSTRUCTION NO. 3.18

Both Claims

<u>Causation</u>

The word "cause" as used in these instructions means an act or failure to act that in natural and probable sequence produced the claimed effect.  It is a cause without which the claimed effect would not have happened.


**Defendants' Objections:**

First, defendants incorporate by reference herein the objections and proposed instructions set forth in Defendants' Proposed Instructions and Defendants' Previous Objections.

Second, defendants' object to the Court's failure to include an intervening cause instruction.  Defendants' incorporate by reference herein defendants' briefs on intervening cause filed January 14, 2005 and February 4, 2005, as well as Defendants' Proposed Trespass Jury Instructions filed July 13, 2004 (Instruction No. 5) as well as Defendants' Proposed Nuisance Jury Instructions filed August 6, 2004 (Instruction No. 11).

Third, defendants object to the Court's omission of the following sentences from defendants' proposed instructions submitted July 13, 2004 and August 6, 2004:  "Each plaintiff must prove by a preponderance of the evidence that any act or failure to act by the defendant was a substantial factor in causing the claimed effect.  The plaintiff must establish causation beyond mere possibility or speculation."  The jury should be instructed on these standards, which are consistent with well-established Colorado law.  *See Kaiser Found. Health Plan of Colo. v. Sharp*, 741 P.2d 714, 719 (Colo. 1987) ("[T]he plaintiff must establish causation beyond mere

possibility or speculation."); *Smith v. State Compensation Ins. Fund*, 749 P.2d 462, 464 (Colo. Ct. App. 1987) ("The test for causation is the 'but for' test — whether, but for the alleged negligence, the harm would not have occurred.  The requirement of 'but for' causation is satisfied if the negligent conduct in a 'natural and continued sequence, unbroken by any efficient, intervening cause, produce[s] the result complained of, and without which that result would not have occurred.'  Here, decedent's death was occasioned by an independent, intervening cause — the motorcycle accident — which could not have reasonably been foreseen to occur as a result of the wrongful delay in approving his vocational rehabilitation plan."); *Ayala v. United States*, 846 F. Supp. 1431, 1441 (D. Colo. 1993), aff'd, 49 F.3d 607 (10th Cir. 1995) ("An act is the proximate cause of an injury if the act was a substantial factor in bringing about the injury.").

**INSTRUCTION NO. 3.19**

Both Claims

<u>Separate Findings for Each Defendant</u>

You must make a separate determination on both the trespass and nuisance claims against each Defendant.  If you find that the evidence establishes a trespass or nuisance by one Defendant but not the other, you must render separate verdicts on each claim.