# Exhibit 1 - Part 2

October 7, 2005

or both Defendants' activities and that all incurred some increment of increased health risk as a result.

The second possible form of interference you must consider in deciding this first element of the Plaintiff Class' nuisance claim is whether one or both of Defendants' activities at Rocky Flats interfered with Class members' use and enjoyment of their properties by creating objective conditions that pose a demonstrable risk of future harm to the Class Area. For example, if plutonium or other hazardous substances present on or in the vicinity of Rocky Flats is at risk of being released to the Class Area -- through natural forces, cleanup activity, the conduct of others and/or accidents -- and could cause harm to properties in the Class Area by increasing the health risk to residents or impairing the future use of their land in some way, then this would be an objective condition that poses a demonstrable risk of future harm to the Class Area.

In order for you to find interference based on the threat or risk of future harm, you also need not find that the future harm *will* occur and affect the whole of the Class Area. You need only find that conditions exist that present the *potential* for such class-wide harm to occur.

In deciding whether either or both forms of possible class-wide interference exists, you should not consider whether individual Plaintiffs or Class members are or might be fearful, anxious or otherwise disturbed by any real or perceived risks relating to Rocky

39

October 7, 2005

Flats and the Defendants' activities there or the conditions they left behind. Individual

reactions to these matters are not relevant to the question of whether a class-wide

interference exists.

You also should not consider in deciding this element of the nuisance claim

whether Defendants' activities caused any decrease in the value of Class members'

properties. The law does not consider a decrease in property value to be an interference

with the use and enjoyment of property.

If you find that Plaintiffs have proved either Dow or Rockwell or both of them

interfered with Class members' use and enjoyment of property in one or both of the ways

I described in Instruction No. 3.6 and in this instruction, then you must find that Plaintiffs

have proved the first element of their nuisance claim with respect to the Defendant or

Defendants who caused or contributed to the proven interference. If, however, you find

that neither Defendant interfered with Class members' use and enjoyment of property in

at least one of these ways, then you must find Plaintiffs have not proved this element of

their nuisance claim against either Defendant.

40

October 7, 2005

**Revised -10/05**

## INSTRUCTION NO. 3.8

### Nuisance Claim

Second Element: "Substantial" and "Unreasonable" Interference - Introduction

Practically all human activities interfere to some extent with other people or involve some risk of interference. One such possible interference is with another person's right to use and enjoy his property. The law of nuisance does not attempt to hold an actor liable for all interferences with this right, but rather only for those interferences that are both "substantial" and "unreasonable." That is why this is an element of Plaintiffs' nuisance claim. The definitions of these terms are set out in Instruction Nos. 3.9 and 3.10.

In deciding whether Plaintiffs have proven that the interference they claim is substantial and unreasonable, you may only consider any interference with Class members' use and enjoyment of property you find based on Instruction Nos. 3.6 and 3.7. Thus, if you find Plaintiffs proved that Dow and/or Rockwell interfered with Class members' use and enjoyment of property in only one of the ways stated in these instructions, you may only consider this proven form of interference in deciding whether Plaintiffs have proved a substantial and unreasonable interference. If, however, you find Plaintiffs proved that Dow and/or Rockwell interfered with Class members' use and

41

enjoyment of property in both of the ways stated in these instructions, you should

consider these two forms of interference together to decide whether the total interference

caused by each Defendant was substantial and unreasonable.

October 7, 2005

**Revised -10/05**

### INSTRUCTION NO. 3.9

Nuisance Claim

Second Element: "Substantial" Interference - Defined

An interference with a person's right to use and enjoy their land is "substantial" if the interference is significant enough that a normal person in the community would find it offensive, annoying or inconvenient. In this case, that means you must determine whether a reasonable landowner of normal sensibilities would find the proven interference caused by Dow or Rockwell to be offensive, annoying or inconvenient. "Normal sensibilities" for these purposes means a person who is neither unusually sensitive nor unusually insensitive to the interference you are considering.

In deciding whether any interference proven by Plaintiffs is substantial under this test, evidence that the value of Class members' properties has diminished because of this interference is evidence that the interference is substantial. This is so because normal members of the community are part of the market that determines the value of properties, and if they consider an interference with the use and enjoyment of these properties to be offensive, annoying or inconvenient, they may place a lower value on the property than they would if the interference did not exist. Evidence that Class Properties have a lower

43

October 7, 2005

value because of any proven interference is not necessary, however, for you to find that

the interference is substantial under the test I just described to you.

44

October 7, 2005

**New -10/05**

### INSTRUCTION NO. 3.10

Nuisance Claim

<u>Second Element: "Unreasonable" Interference - Balancing Test</u>

In an action for damages, such as this case, an interference with a person's right to use and enjoy their land is "unreasonable" if the gravity of the harm outweighs the utility of the conduct that caused it. Accordingly, to determine whether a proven interference is unreasonable in this case, you must consider and balance the gravity of the harm to Class members against the utility of the Dow and Rockwell's conduct at Rocky Flats and determine whether the gravity of this harm outweighs the utility of this conduct.

I will tell you more about this balancing test in my next instructions, but I want to caution you now that it does not mean that Dow and Rockwell can interfere with Class members' use and enjoyment of their properties as long as their activities at Rocky Flats served an important purpose or these activities are deemed more valuable or profitable than Class members' use of their land. Instead, you must consider a number of factors as part of the balancing test to decide whether any interference Defendants caused was unreasonable. I will describe those factors for you in a moment. (See Instruction Nos. 3.11 and 3.12.)

45

October 7, 2005

In considering these factors and deciding whether any interference by Dow or Rockwell was unreasonable, you must also use an objective perspective. In other words, the question is not how Plaintiffs, Class members or the Defendants would consider the gravity of the harm or the utility of Defendants' conduct, or the judgment they would make about whether any proven interference is unreasonable. Instead, the question is whether reasonable persons generally, looking at the whole situation impartially and objectively, would consider the interference to be unreasonable.

October 7, 2005

**Revised -10/05**

### INSTRUCTION NO. 3.11

Nuisance Claim

Second Element:  Unreasonable Interference: Factors Regarding Gravity of the Harm

The gravity of the harm refers to the gravity of the proven interference with Class members' use and enjoyment of their property.  The factors you should consider in assessing the gravity of this harm are:

1.     The extent of the harm involved.

The extent of the harm depends on both the degree of the harm and its duration.  You can consider both harm that has actually been incurred and the risk of future harm.  In assessing the extent of the harm, you must also consider only harm that is common to the class as a whole, and not any more severe harm that may have been suffered by some Class members but not by others.

2.     The character of the harm involved.

This factor refers to the kind of harm suffered by the Class members.

3.     The social value of the type of use or enjoyment of property that has been has been harmed.

47

October 7, 2005

This factor considers the social value of the use to which the Class members' lands are being put.  The social value of a particular type of use depends on the extent to which the use or uses advances or protects the general public good.

4.    The suitability of the particular use or enjoyment harmed to the character of the locality.

This factor considers whether the particular use or enjoyment the Class members make of their land in the Class Area is suitable to this area.

5.    The burden on the Class members of avoiding the harm.

This factor is considered when it is possible for the landowner to take some action to avoid the harm.

48

October 7, 2005

**New-10/05**

## INSTRUCTION NO. 3.12

Nuisance Claim

Second Element:  Unreasonable Interference: Factors Regarding Utility of the Conduct

There are also certain factors you must consider in assessing the utility of the conduct that caused the harm, that is, the proven interference.  Some of these factors focus directly on the conduct causing the harm, while other factors focus on any actions Dow or Rockwell have taken to avoid or compensate others for any interference they caused.

The factors focusing on the conduct causing the harm include:

1.      The social value of the primary purpose of this conduct.

It is undisputed that the primary purpose of the conduct that allegedly interfered with Class members' right to use and enjoy their properties was to manufacture nuclear weapons components.  The social value of this purpose depends on the extent to which it advanced or protected the general public good.  The parties agree that the manufacture of nuclear weapons at Rocky Flats, as a general matter, advanced the public good by protecting national security.

49

October 7, 2005

2.     The suitability of the conduct to the character of the locality.

This factor considers whether the Defendants' conduct is suitable to the
area in which it occurred.

In evaluating the utility of the conduct causing the harm, you must also consider
whether and to what extent the actor causing the harm took steps to address the
consequences of its conduct. Thus, you must consider the following factors focusing on
any actions Dow or Rockwell have taken to avoid or compensate others for any
interference they caused:

3.     The impracticability of preventing or avoiding the interference.

If it was practicable for Dow or Rockwell to avoid causing any interference
with Class members' use and enjoyment of property, and they did not take
the necessary measures to do so, then the law considers their conduct to
have no utility, regardless of its social value. Any interference caused by
Dow and/or Rockwell was practicably avoidable if by some means the
company could have substantially reduced the harm without incurring
prohibitive expense or hardship in its operation of Rocky Flats. If you find
it was practicable for Dow or Rockwell to avoid any harm they caused
under this test, then you must find the gravity of the harm outweighed the

50

October 7, 2005

utility of Dow or Rockwell's conduct, and that any interference proved by

Plaintiffs was unreasonable.

4. The financial burden to compensate others for any interference caused by

   Dow and/or Rockwell's activities.

A nuisance action for damages seeks to place the financial burden for any

interference with the use and enjoyment of property on the actor that caused

this harm. The financial burden of this cost is therefore a significant factor

in determining whether the conduct of causing the harm without paying for

it is unreasonable. You may find that Dow or Rockwell's conduct lacks

sufficient utility to outweigh any interference it caused if you find it would

be unreasonable for Class members to bear this cost without compensation.

October 7, 2005

**New -10/05**

### INSTRUCTION NO. 3.13

Nuisance Claim

Third Element: "Intentional" or "Negligent" Conduct

As stated in Instruction No. 3.6, the third element Plaintiffs must prove to prevail on their nuisance claim is that the activity or activities causing the unreasonable and substantial interference were either "intentional" (see Instruction No. 3.14) or "negligent" (see Instruction No. 3.15). Thus, Plaintiff must do more than show that the existence of Rocky Flats interfered with Class members' use and enjoyment of their properties. They must show that either Defendant or both of them engaged in intentional or negligent conduct at Rocky Flats that caused such an interference.

You do not need to find that all of the conduct that caused any substantial and unreasonable interference was intentional or that all of it was negligent in order to find that Plaintiffs proved this element of their nuisance claim. Proof that a substantial and unreasonable interference resulted from a combination of intentional conduct and negligent conduct is sufficient to prove this element.

52

October 7, 2005

**Revised -10/05**

### INSTRUCTION NO. 3.14

Nuisance Claim

Third Element:  Definition of "Intentional" Conduct

The conduct that results in an interference with another's use and enjoyment of property is considered "intentional" if it meets any of the following three tests:

(1)  The defendant knew that its conduct would interfere with others' use and enjoyment of their property; or

(2)  The defendant knew it was substantially certain that its conduct would interfere with others' use and enjoyment of their property; or

(3)  The defendant learned that its conduct was interfering with or was substantially certain to interfere with others' use and enjoyment of their property and yet continued this conduct.

53

October 7, 2005

**Revised -10/05**

### INSTRUCTION NO. 3.15

Nuisance Claim

<u>Third Element: Definition of "Negligent" Conduct</u>

The generation, use, storage and disposal of plutonium and other hazardous radioactive and non-radioactive substances as part of the operation of a nuclear weapons plant are inherently dangerous activities. As a result, Dow and Rockwell were required to exercise the highest possible degree of skill, care, diligence, and foresight in conducting these activities, according to the best technical, mechanical and scientific knowledge and methods that were practical and available at the time. If either Dow or Rockwell or both of them did not fulfill this duty when they performed any activities that caused or contributed to a substantial and unreasonable interference (as defined in these instructions), then their conduct was negligent.

54

October 7, 2005

**Revised -10/05**

## INSTRUCTION NO. 3.16

Nuisance Claim

<u>Third Element: Accident Not Presumptive Negligence</u>

The occurrence of an accident does not raise any presumption of negligence on the part of a defendant. Negligence may be established, however, by the facts and circumstances surrounding an accident.

55

October 7, 2005

New -10/05

## INSTRUCTION NO. 3.17

### Nuisance Claim

### Fourth Element:  Continuing Nuisance

As stated in Instruction No. 3.6, the fourth element Plaintiffs must prove to prevail on their nuisance claim is that it appears that the unreasonable and substantial interference with the use and enjoyment of property caused by Dow and/or Rockwell's intentional or negligent conduct will continue indefinitely.  In deciding this element, it is not necessary for you to find that the interference meeting these requirements will last forever.  Instead, you should consider whether there is any reason to expect that the interference will end at any definite time in the future.  If you find there is no reason to expect the interference to end by a definite time, then you must find it appears the interference will continue indefinitely.

56

October 7, 2005

**Revised -10/05**
**(former No. 3.14)**

## INSTRUCTION NO. 3.18

Both Claims

Causation

The word "cause" as used in these instructions means an act or failure to act that in natural and probable sequence produced the claimed effect. It is a cause without which the claimed effect would not have happened.

57

October 7, 2005

**Revised -10/05**

## INSTRUCTION NO. 3.19

### Both Claims

### Separate Findings for Each Defendant

You must make a separate determination on both the trespass and nuisance claims against each defendant. If you find that the evidence establishes a trespass or nuisance by one defendant but not the other, you must render separate verdicts on each claim.

58

October 7, 2005

**Revised - 10/05**

## INSTRUCTION NO. 3.20

### Both Claims

### Damages - Introduction

I am now going to instruct you on the measure of damages to be awarded if you

that in favor of the plaintiff class on their claims of trespass or nuisance against Dow or

Rockwell.

You must determine the amount of damages in accordance with these instructions.

The fact I will instruct you on the measure of damages does not mean I am instructing

you as to which party is entitled to your verdict or that I am instructing you to award or

not award damages.  The questions of whether or not damages are to be awarded, and the

amount of such damages, are for your consideration alone.

If you decide to award damages, you should fix the amount using calm discretion

and sound reason, not sympathy, prejudice, or speculation.

Difficulty or uncertainty in determining the precise amount of damages does not

prevent you from deciding an amount.  You should use your best judgment based on the

evidence.

59

October 7, 2005

**[Damages instructions to be inserted.]**

October 7, 2005

## Section 4

## Final Instructions

## [to be inserted]

Revised - 10/05

## INSTRUCTION NO. 3.21

### Both Claims

<u>Damages - Actual or Nominal</u>

If you find in favor of Plaintiffs on either of their claims against Dow and/or Rockwell, then you must award them actual or nominal damages.

Actual damages are a monetary award to compensate a plaintiff for the loss caused by the defendant's wrongful conduct. The goal of an award of actual damages is to make the injured person whole or, in other words, to put them in the position they would have been in if they had not been harmed by the defendant.

To award Plaintiffs actual damages, you must find that Plaintiffs proved by a preponderance of the evidence that: (1) the Plaintiff Class incurred actual damages as a result of the trespass and/or nuisance caused by Dow or Rockwell or both of them (as defined in Instruction Nos. 3.2 and 3.6), and (2) the amount of these actual damages. I will tell you in the next instructions (Nos. 3.22 - 3.24) how to decide these questions.

If you find in favor of Plaintiffs on a particular claim, but do not find any actual damages with respect to that claim, you shall nonetheless award Plaintiffs nominal damages in the sum of one dollar on that claim.

Revised - 10/05

## INSTRUCTION NO. 3.22

### Both Claims

#### Measure of Actual Damages

Plaintiffs seek an award of actual damages based on the decrease in the value of properties in the Class Area caused by the trespass and/or nuisance committed by Dow or Rockwell or both of them. This type of actual damages is sometimes called diminution in property value.

The diminution in property value that Plaintiffs may recover here is measured by the difference between the actual value of the Class Properties and the value these Properties would have had if Dow or Rockwell or both of them had not committed the trespass and/or nuisance proved by Plaintiffs. In other words, you must compare the actual value of the Class Properties to what their value would have been "but for" the trespass and/or nuisance, and the difference is the diminution in property value that Plaintiffs can recover as actual damages in this case.

In a case like this, the law requires that you measure the amount of any such diminution in Class property values at a particular point in time. That point is the time or time period when the injurious situation became "complete" and "comparatively enduring." The injurious situation is "complete" when the effects of the trespass or nuisance are known to their full extent. It is "comparatively enduring" when there is no reason to expect that these effects will end at a definite time in the future. When the

injurious situation became "complete" and "comparatively enduring" in this case is a question you will decide as I will describe in just a moment.

Plaintiffs contend that the diminution in the value of Class properties should be measured as of the period between June 6, 1989, when the FBI and U.S. Environmental Protection Agency searched Rocky Flats as part of their investigation into alleged wrong-doing by Rockwell, and March 26, 1992, when Rockwell pled guilty to certain environmental crimes at Rocky Flats. Defendants allege this is the right time period to measure their actual damages because this is when the injurious effects of Defendants' alleged trespass and nuisance became "clear" and "comparatively enduring."

Accordingly, to decide whether Plaintiffs are entitled to the actual damages they seek in this case, you must determine whether Plaintiffs have proved by a preponderance of the evidence that:

1.    The injurious situation became "complete" and "comparatively enduring" (as defined in this instruction) between June 6, 1989, and March 26, 1992; and

2.    As of this time, the actual value of the Class Properties was less than the value these Properties would have had but for the trespass and/or nuisance committed by Dow or Rockwell or both of them; and

3.    The amount of the difference between the actual value of Class Properties and what their value would have been but for the trespass and/or nuisance (see Instruction No. 3.23).

Revised - 10/05

## INSTRUCTION NO. 3.23

### Both Claims

#### Aggregate Damages and Percentage Diminution

If you find Plaintiffs have proved actual damages as described in Instruction No. 3.22, you will be asked to report your findings regarding the amount of their actual damages in several ways. First, you will be asked to decide both the total amount of damages suffered by the entire Class as a whole (called "aggregate" Class damages), and the percentage diminution in property values in the Class Area as a whole.

Additionally, you will be asked to decide the amount of actual damages and percentage diminution in Class property values for three different types of property in the Class: vacant land, commercial property and residential property.

You will not be asked to determine the amount of actual damages suffered by any individual Class member. Individual Class members' share of any damages you award will be determined in later proceedings. Therefore, you must only concern yourselves with the total, class-wide measures of actual damages I just described.

New - 10/05

### INSTRUCTION NO. 3.24

Both Claims

<u>Matters Not Relevant to Determining Actual Damages</u>

In determining any actual damages to be awarded in this case, you should not consider or award any diminution in value caused solely by the proximity of the Class Area to Rocky Flats. Instead, you must follow my directions in Instruction No. 3.22 to award damages for diminution in value you find was caused by any trespass or nuisance you find Dow or Rockwell or both of them committed.

In determining whether Plaintiffs have proved actual damages, you also should remember that Plaintiffs are not required to prove that any diminution in value caused by Dow or Rockwell's activities at Rocky Flats came into existence before or after the FBI raid or some other specific event. Instead, as stated in Instruction No. 3.22, the measure of damages to be proved by Plaintiffs is the value the Class Properties would have had "but for" any trespass or nuisance by Dow and/or Rockwell.

New - 10/05

### INSTRUCTION NO.  3.25

Both Claims

Affirmative Defense:  Setoff

If you find that the Plaintiff Class has proved actual damages, then you must

consider whether Dow and Rockwell have proved their affirmative defense of setoff.

This defense is based on the rule that if the defendant's wrongful conduct has

caused harm to the plaintiff, but also has conferred a direct benefit on the plaintiff, then

the value of the benefit conferred mitigates, that is reduces, the actual damages that may

be recovered for the defendant's wrongful conduct.

In this case, Dow and Rockwell argue that any trespass or nuisance you find

harmed the Plaintiff Class by diminishing the value of their properties also conferred a

benefit on the Class because all or some Class members purchased their properties at a

diminished price as a result of the same trespass or nuisance.

In order to prevail on this affirmative defense of setoff, Dow and Rockwell must

prove by a preponderance of the evidence:

1.     That the trespass and/or nuisance that damaged the Plaintiff Class by

diminishing the value of property in the Class Area also caused a

diminution in the value of Class Properties in one or more specific time

periods before June 7, 1989; and

2.     The amount of any such pre-existing diminution in the value of Class

properties, expressed as the percentage decrease in value, for each specific time period or periods for which Defendants proved a pre-June 7, 1989 diminution in Class property values caused by their trespass and/or nuisance.

If you find that Dow and/or Rockwell did not prove both of the elements for setoff by a preponderance of the evidence, then you must find Dow and/or Rockwell failed to prove this affirmative defense.

On the other hand, if you find that Dow and/or Rockwell proved both elements of this defense by a preponderance of the evidence, then you must find they proved this affirmative defense as to the time period or periods you report on the Jury Verdict Form. If you make this finding, then your findings regarding the pre-existing percentage diminution in value for the specific time period or periods will be used in a later proceeding to calculate the amount by which the Plaintiffs' actual damages will be reduced on account of this defense of setoff.

If you find Dow and/or Rockwell has proved this affirmative defense, then you must use calm discretion and sound reason, not sympathy, prejudice, or speculation, in fixing the amount of any pre-existing diminution in Class property values. Difficulty or uncertainty in determining the precise amount of any setoff does not prevent you from deciding an amount. You should use your best judgment based on the evidence.

Revised - 10/05

## INSTRUCTION NO. 3.26

### Both Claims

### Multiple Recovery Prohibited

A plaintiff in a civil action may recover only once for the same injury, even though the plaintiff seeks an award for that injury under several claims for relief or against multiple defendants. For example, a plaintiff who lost $100 as a result of the conduct of multiple defendants may recover only $100, even if the plaintiff sought $100 in damages from each defendant on one claim, and $100 in damages from each defendant on a different claim.

In this case, Plaintiffs are seeking to recover from Dow and Rockwell on the their claims of trespass and nuisance on behalf of the Class. Under the rule prohibiting multiple recovery, the Plaintiffs may recover actual damages only once, even if you return verdicts in their favor on more than one claim for relief, or against more than one Defendant.

I am instructing you on the rule prohibiting multiple recovery so that you will be aware of the law on the issue. It is I, rather than you, however, who will apply the rule. You are specifically instructed to consider the Plaintiffs' nuisance and trespass claims against each Defendant independently. That is, you are to consider each of those claims as though it were the only claim in the case. If you find for Plaintiffs on either of these claims against either Dow or Rockwell, you are to write an award of damages on that

claim without regard to your finding for or against Dow or Rockwell on any other claim. I will apply the rule prohibiting multiple recovery when I issue my judgment on your verdict, whatever that may be.

Perhaps it bears repeating that nothing in this or any other instruction is meant to suggest what your finding on any or all claims should be. My instructions on damages are only to be applied in the event you find for Plaintiffs on one or more of their claims.

Revised - 10/05

## INSTRUCTION NO. 3.27

### Both Claims

### Punitive Damages

If you find for Plaintiffs and award them actual damages on their claims of trespass and/or nuisance against either Dow or Rockwell or both of them, then you must consider whether you should award punitive damages against the same Defendant or Defendants that you found liable for trespass and/or nuisance.

For Plaintiffs to recover punitive damages, they must prove beyond a "reasonable doubt" that the conduct of the Defendant that committed the trespass and/or nuisance was "wilful and wanton." In deciding this question with respect to any conduct relating to plutonium, you can only consider the Defendant's conduct up to August 20, 1988, including conduct occurring before this date that resulted in harm on or after that date.

"Willful and wanton" conduct means an act or omission purposefully committed by the Defendant in question, who must have realized that the conduct was dangerous, and which conduct was done heedlessly and recklessly, either without regard to the consequences, or without regard to the rights and safety of others, particularly the Plaintiff Class.

"Reasonable doubt" means an uncertainty of mind in which your judgment is not at rest and you can explain this uncertainty based on a fair and thoughtful consideration of all of the evidence, or lack of evidence, in the case.

The purpose of punitive damages is not to compensate the Plaintiffs, but rather to punish the Defendant, and to deter that Defendant and others from committing such acts in the future.

If you find beyond a reasonable doubt that one or both of the Defendants acted in a willful and wanton manner, then you may award a reasonable sum as punitive damages against the Defendant or Defendants you found acted in this manner.

## INSTRUCTION NO. 3.28

### Additional Questions

In addition to deciding the issues of trespass, nuisance and damages in this action,

I will ask you at the end of the trial to answer several additional questions that will help

me and the parties in future proceedings in this case. The first two questions are related.

They are:

1.     Did it appear on or before January 30, 1990, which is the date this case was

       filed, that the alleged trespass and/or nuisance by Dow or Rockwell or both

       of them would continue indefinitely? In answering this question, "continue

       indefinitely" means there was no reason to expect that the trespass and/or

       nuisance would end at any definite time in the future.

2.     If your answer to Question No. 1 is "no," then when did it become apparent

       that the proven trespass and/or nuisance would continue indefinitely?

The third additional question concerns a form of interference with the use and

enjoyment of property. Plaintiffs assert that one of the ways Dow and Rockwell

interfered with Class members' use and enjoyment of their land was by causing individual

Class members to suffer fear, anxiety or mental discomfort because of concerns about

risks created by Defendants' activities at Rocky Flats. Because this is a trial of claims by

the whole Class, I earlier instructed you not to consider whether individual Plaintiffs or

Class members suffered this form of interference in deciding whether Plaintiffs had

proved their class-wide nuisance claim (see Instruction No. 3.7).  Nonetheless, to assist me and the parties in deciding how to proceed later in this case, you will be asked to answer the following question:

> Have Plaintiffs proved by a preponderance of the evidence that the intentional or negligent conduct of Dow or Rockwell or both of them at Rocky Flats, and/or actual or threatened harms caused by such conduct, created a situation that is capable of causing fear, anxiety or mental discomfort in individual Class members?

In answering this question, you should know that Plaintiffs do not need to show that any actual or threatened future contamination from Rocky Flats poses an actual or verifiable health risk.  An individual Class members' fear, anxiety or mental discomfort can also be based on concerns that may be without scientific foundation or other support in fact.

**Section 4**

**Final Instructions**

## INSTRUCTION NO. 4.1

### Jury Deliberations - General Instructions

Each of you has a copy of the instructions to consult as you find it necessary.  You may keep your copy throughout the trial and in your deliberations.

It is your duty to find the facts from all the evidence in the case.  To those facts, you must apply and follow the law as I give it to you whether you agree with it or not.  You must base your verdict upon the evidence.  You must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy.  That means you must decide the case solely on the evidence before you and according to the law as I give it to you.  You have taken an oath promising to do just so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important.  You must not read into these instructions or into anything I may say or do any suggestions as to what verdict you should return.  Your verdict is a matter entirely for you to decide.

Revised - 10/05

## INSTRUCTION NO. 4.2

### Jury - Deliberations

When you go to the jury room to begin your deliberations, you must elect one member of the jury as your Presiding Juror. He or she will preside over your deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreements if you can do so. In order to answer any question on the Verdict Form, ten jurors must agree upon the answer. It is not necessary that the jurors who agree on the answer be the same jurors who agreed on the answer to any other question, so long as ten jurors agree to each answer.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it with your fellow jurors, and listened to the views of your fellow jurors. I offer some suggestions on how you might do this in the next jury instruction, entitled "Jury - The Deliberations Process."

Do not be afraid to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach agreement to answer the questions on the Verdict Form, but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight of the evidence simply to reach an answer.

As stipulated

## INSTRUCTION NO. 4.3

### Jury - The Deliberations Process

Once you have elected your Presiding Juror as directed by the previous instruction, you are free to proceed as you agree is appropriate. Therefore, I am not directing you how to proceed, but I offer the following suggestions that other juries have found helpful so that you can proceed in an orderly fashion, allowing full participation by each juror, and arrive at a verdict that is satisfactory to each of you.

First, it is the responsibility of the Presiding Juror to encourage good communication and participation by all jurors and to maintain fairness and order. Your Presiding Juror should be willing and able to facilitate productive discussions even when disagreements and controversy arise.

Second, the Presiding Juror should let each of you speak and be heard before expressing his or her own views.

Third, the Presiding Juror should never attempt to promote nor permit anyone else to promote his or her personal opinions by coercion or intimidation or bullying of others.

Fourth, the Presiding Juror should make certain that the deliberations are not rushed to reach a conclusion.

If the Presiding Juror you select does not meet these standards, he or she should voluntarily step down or be replaced by a majority vote.

After you select a Presiding Juror you should consider electing a secretary who

will tally the votes, help keep track of who has or hasn't spoken on the various issues, make certain that all of you are present whenever deliberations are under way and otherwise assist the Presiding Juror.  Some juries are tempted at this point to hold a preliminary vote on the case before them to "see where we stand."  It is most advisable, however, that no vote be taken before a full discussion is had on the issue to be voted on, otherwise you might lock yourself into a certain view before considering alternative and possibly more reasonable interpretations of the evidence.  Experience has also shown that such early votes frequently lead to disruptive, unnecessarily lengthy, inefficient debate and ineffective decision-making.

Instead, I suggest the Presiding Juror begin your deliberations by directing the discussion to establishing informal ground rules for how you will proceed.  These rules should assure that you will focus upon, analyze and evaluate the evidence fairly and efficiently and that the viewpoints of each of you is heard and considered before any decisions are made.  No one should be ignored.  You may agree to discuss the case in the order of the questions presented in the special verdict form or in chronological order or according to the testimony of each witness.  Whatever order you select, however, it is advisable to be consistent and not jump from one topic to another.

To move the process of deliberation along in the event you reach a controversial issue, it is wise to pass it temporarily and move on to the less controversial ones and then come back to it.  You should then continue through each issue in the order you have agreed upon unless a majority of you agrees to change the order.

It is very helpful, but certainly not required of you, that all votes be taken by secret ballot. This will help you focus on the issues and not be overly influenced by personalities. Each of you should also consider any disagreement you have with another juror or jurors as an opportunity for improving the quality of your decision and therefore should treat each other with respect. Any differences in your views should be discussed calmly and, if a break is needed for that purpose, it should be taken.

Each of you should listen attentively and openly to one another before making any judgment. This is sometimes called "active listening" and it means that you should not listen with only one ear while thinking about a response. Only after you have heard and understood what the other person is saying should you think about a response. Obviously, this means that, unlike TV talk shows, you should try very hard not to interrupt. If one of your number is going on and on, it is the Presiding Juror who should suggest that the point has been made and it is time to hear from someone else.

You each have a right to your individual opinion, but you should be open to persuasion. When you focus your attention and best listening skills, others will feel respected and, even while they may disagree, they will respect you. It helps if you are open to the possibility that you might be wrong or at least that you might change your mind about some issues after listening to other views.

Misunderstanding can undermine your efforts. Seek clarification if you do not understand or if you think others are not talking about the same thing. From time to time the Presiding Juror should set out the items on which you agree and those on which you

have not yet reached agreement.

In spite of all your efforts, it is indeed possible that serious disagreements may arise. In that event, recognize and accept that "getting stuck" is often part of the decision making process. It is easy to fall into the trap of believing that there is something wrong with someone who is not ready to move toward what may be an emerging decision. Such a belief is not helpful. It can lead to focusing on personalities rather than the issues. It is best to be patient with one another. At such times slower is usually faster. There is a tendency to set deadlines and seek to force decisions. Providing a break or more time and space, however, often helps to shorten the overall process.

You may wish from time to time to express your mutual respect and repeat your resolve to work through any differences. With such a commitment and mutual respect, you will most likely render a verdict that leaves each of you satisfied that you have indeed rendered justice.

Revised- 10/05

## INSTRUCTION NO. 4.4

### Communications with the Judge

If it becomes necessary during your deliberations to communicate with me, you may send a folded note through the court security officer, signed by one of you. Do not disclose the content of your note to the court security officer. No member of the jury should hereafter attempt to communicate with me except by signed writing; and I will communicate with any member of the jury on anything concerning the case only in writing, or orally here in open court. You are not to tell anyone - including me - how the jury stands, numerically or otherwise, until you have reach a verdict or I have discharged you.

If you send a note to me containing a question or request for further direction, please bear in mind that responses take considerable time and effort. Before giving an answer or direction I must first notify counsel and bring them back to the court. I must confer with them, listen to arguments, research the legal authorities, if necessary, and reduce the answer or direction to writing.

There may be some question that, under the law, I am not permitted to answer. If it is improper for me to answer the question, I will tell you that. Please do not speculate about what the answer to your question might be or why I am not able to answer a particular question.

In some instances jurors request that certain testimony be read to them. This

cannot be done as it is inappropriate for the court to single out testimony. In those

circumstances you must rely upon your own recollection.

Revised- 10/05

## INSTRUCTION NO. 4.5

### Jury Verdict Form

You will each have copies of a document called a Jury Verdict Form. There is one Jury Verdict Form for each Defendant. You are instructed to answer the questions in each Jury Verdict Form as directed in that form.

In order to answer any question on the Jury Verdict Forms, ten jurors must agree upon the answer. It is not necessary that the jurors who agree on the answer be the same jurors who agreed on the answer to any other question, so long as ten jurors agree to each answer.

Upon arriving at an agreement, your Presiding Juror will insert each answer on the appropriate Jury Verdict Form. After all of the questions have been answered as directed by the Jury Verdict Form, your Presiding Juror will date each Jury Verdict Form, sign it, and then ask all of the other jurors to sign it.

After you have filled out both Jury Verdict Forms in this manner, your Presiding Juror should advise the court security officer stationed outside the jury room that you have reached a verdict.