# Exhibit 1 - Part 3

# Exhibit B

**INSTRUCTION NO. 2.2A**

<u>Consideration of Deposition Testimony by Dr. James Flynn</u>

In light of his illness, Dr. James Flynn was unavailable to testify any further in this trial. The live testimony offered by Dr. Flynn on his direct examination therefore was stricken, because the Defendants did not have the opportunity to cross-examine Dr. Flynn on that testimony. You are not to consider Dr. Flynn's live testimony for any purpose.

Dr. Flynn's report is still in evidence. Also, the parties have each designated testimony from Dr. Flynn's earlier deposition to be read into evidence. I instruct you, however, that the Defendants did not have the same opportunity to cross-examine Dr. Flynn at his deposition that they would have had at trial, because one of the purposes of a deposition is to help a party prepare for the witness's cross-examination. In judging the evidence you have received from Dr. Flynn and determining how much weight to give it, you should consider that Defendants did not have a full opportunity to cross-examine Dr. Flynn.

# Exhibit C

January 16, 2006

## INSTRUCTION NO. 1.4

<u>Evidence – General</u>

It is your duty to decide from the evidence what the facts are.  You, and you alone, are the judges of the facts.  You have heard the evidence, and now it is time for you to decide what the facts are, and then apply those facts to the law I give you.  That is how you will reach your verdict.  In doing so, you must follow the law whether you agree with it or not.

At no time during the trial did I suggest what I think your verdict should be nor do I want you to guess or speculate about my views of what verdict you should render.  You will decide what the facts are from the evidence that the parties have presented during the trial.  That evidence consists of the sworn testimony of witnesses on both direct and cross-examination, regardless of who called the witness; documents and other things received into evidence as exhibits; and any facts on which the lawyers agreed or which I may instruct you to accept as true.

The following things are **not** evidence and you must not consider them as evidence in deciding the facts of this case:

1.      Statements and arguments by lawyers are not evidence. The lawyers are not witnesses.  What they say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of the facts controls.

2.      Questions and objections by the lawyers are not evidence.  Lawyers have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by my ruling on it.

7

January 16, 2006

3.      Testimony that has been excluded or stricken, or that you have been
        instructed to disregard, is not evidence and must not be considered.  In
        addition, I have allowed some testimony or exhibits only for a limited
        purpose, and you must consider such only for that limited purpose.  For
        example, I have instructed you that newspaper articles and other media
        reports were admitted for the limited purpose of showing that the
        information contained in these articles was available to the public, but not
        for the purpose of proving the facts stated in these articles and reports were
        true.  I will remind you of this and other limiting instructions in a few
        minutes.

4.      Anything you may see or hear when the Court is not in session is not
        evidence, even if what you see or hear is done or said by one of the parties
        or by one of the witnesses.  You are to decide the case solely on the
        evidence received in this courtroom during the trial.

You are to consider only the evidence in the case.  But in your consideration of
the evidence, you are not limited solely to what you see and hear as the witnesses testify.
You are permitted to draw, from facts that you find have been proved, such reasonable
inferences as seem justified in the light of your experience.  Inferences are deductions or
conclusions your reason and common sense lead you to draw from the facts established
by the evidence in the case.

January 16, 2006

## INSTRUCTION NO. 1.9

### **Burden of Proof and Classified Information**

In evaluating whether Plaintiffs and Defendants have met their respective burdens on their claims and defenses, you need to know that the law does not require parties to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters to be determined by you from the evidence.  Nor does the law require the parties to produce as exhibits all papers or other things mentioned in the evidence in the case.

This is a law that is uniformly applied in all civil cases as a matter of practical necessity and common sense.  It is simply not possible for the law to require proof to the degree of absolute certainty.

In this case, the problem of proof is further complicated because of government imposed secrecy concerning activities at the Rocky Flats installation.  The U.S. Department of Energy has classified documents concerning these activities and the resulting classification means that some information is deemed secret and is not available to the public.  The authority of the Department of Energy to classify information as secret is firmly established by laws enacted by the Congress of the United States.  Neither this court nor the jury in this case has the authority to decide whether such classification was proper irrespective of any reasons or allegations made challenging that process.

The Department of Energy has made some information concerning Rocky Flats available by a process known as "declassification," meaning that some documents and some parts of documents are no longer considered secret.  The propriety of these declassification decisions is likewise not a matter to be decided in this action.

You will also see some documents that have been made available by the Department of Energy that contain obliterated or marked out words.  This process is

13

January 16, 2006

called "redaction," which means that the information removed is not available to us in this trial.

For the reasons I've just given, not only are the parties in this case not required to produce as exhibits all papers or other things mentioned in the evidence, they cannot produce some of these documents and things because the Department of Energy has classified that information as secret.

You may not speculate or guess about what the unavailable or redacted information might be. Such unavailable or redacted information might have been favorable, or unfavorable, to one side or the other in this case, but you must confine your evaluation to the evidence presented to you and base your decision solely on the evidence received during trial.

January 16, 2006

## INSTRUCTION NO. 2.2

<u>Opinion Evidence and Expert Witnesses</u>

You have heard opinion evidence from people I held were qualified to testify as experts.  People who I found are expert in some field by knowledge, skill, experience, training or education may state their opinions on matters in that field and may also state the reasons for their opinions.  Witnesses who I did not identify as expert witnesses are not to be considered experts in any field, even if they have specialized training or advanced degrees.

Expert opinion testimony should be judged just like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinions, and all of the other factors that you consider when determining the credibility of the other witnesses.

Experts generally rely upon some assumptions in developing their opinions. These assumptions are likewise subject to your evaluation and should be considered along with the rest of the evidence.

In resolving the conflict in the testimony of expert witnesses, you should weigh the opinion of one expert against that of another. In doing this, you should consider the qualifications and believability of each witness, the reasons for each opinion and the matter upon which it is based.

January 16, 2006

## INSTRUCTION NO. 2.2A

<u>Consideration of Deposition Testimony by Dr. James Flynn</u>

In light of his illness, Dr. James Flynn was unavailable to testify any further in this trial.  The live testimony offered by Dr. Flynn on his direct examination therefore was stricken, because the Defendants did not have the opportunity to cross-examine Dr. Flynn on that testimony.  You are not to consider Dr. Flynn's live testimony for any purpose.

Dr. Flynn's report is still in evidence.  Also, the parties have each designated testimony from Dr. Flynn's earlier deposition to be read into evidence.  I instruct you, however, that the Defendants did not have the same opportunity to cross-examine Dr. Flynn at his deposition that they would have had at trial, because one of the purposes of a deposition is to help a party prepare for the witness's cross-examination.  In judging the evidence you have received from Dr. Flynn and determining how much weight to give it, you should consider that Defendants did not have a full opportunity to cross-examine Dr. Flynn.

January 16, 2006

## INSTRUCTION NO. 2.3

### Charts, Summaries, Graphic Materials and Demonstrative Exhibits

Counsel have shown you a number of charts, summaries and other graphic materials in order to help explain the facts and documents in evidence in the case.  Such charts, summaries and graphic materials are **not** in and of themselves evidence or proof of any facts **unless** they are admitted into evidence.

You have heard me say throughout trial that many of these charts, summaries and graphic materials are admitted "for demonstrative purposes only."  This means that these "demonstrative exhibits" are not necessarily based on the evidence presented at trial, and that they may relate solely to arguments or statements or interpretations of evidence by counsel.  "Demonstrative exhibits" are **not** evidence and were presented only to assist you in understanding the argument, statement or interpretation being made.  All exhibits admitted for this limited purpose will be marked "demonstrative."  You should consider "demonstrative exhibits" only as visual aids to understanding counsel's arguments, statements or interpretations of the evidence.  You may disregard "demonstrative exhibits" if you do not find them helpful, and must disregard them if the facts, figures or other information they contain do not correctly reflect facts shown by the evidence in the case.

## INSTRUCTION NO. 2.4

### Evidence Regarding FBI Raid and Grand Jury Investigation

It is undisputed that the FBI and a federal grand jury investigated allegations of criminal misconduct by Rockwell at Rocky Flats.  The fact that the FBI and grand jury conducted these investigations or investigated certain allegations does not prove that Rockwell committed any particular acts or wrongs at Rocky Flats.  You may, however, consider evidence that was collected in the course of these investigations or was

January 16, 2006

# INSTRUCTION NO. 2.5

## Evidence Regarding Rockwell's Plea Agreement

You have heard evidence about the plea agreement between Rockwell and the United States in which Rockwell pled guilty to certain environmental crimes at Rocky Flats.  The plea agreement is evidence that Rockwell admitted guilt for the conduct specifically set forth in the plea agreement.  This means Rockwell admitted it committed the acts to which it pled guilty, and that no further evidence is required to establish that these acts occurred.

You should not consider the plea agreement or its content, however, or the fact that Rockwell did not plead guilty to additional crimes and that the government did not seek to prosecute Rockwell for any other crimes, in determining whether Rockwell committed any particular conduct at Rocky Flats in addition to the misconduct to which it pled guilty.  You should make your determination regarding Rockwell's other alleged conduct based solely on the other evidence presented at this trial.

24

January 16, 2006

## INSTRUCTION NO. 2.7

### Evidence of Media Coverage

You have heard evidence of media coverage relating to Dow and Rockwell and their operations at Rocky Flats.  Such evidence of media coverage does not establish the accuracy of any statements made by the media.  Evidence of media coverage is relevant, however, to public perceptions that may have influenced the market values of properties in the Class Area.

January 16, 2006

## INSTRUCTION NO. 3.1

### <u>Introduction to Plaintiffs' Claims</u>

Plaintiffs assert two claims in this action on behalf of themselves and the Class members.  This means Plaintiffs' claims are made and must be proved for the Class as a whole as stated in the instructions for each claim that I am about to give you.  Individual claims by individual Plaintiffs are not to be decided in this trial.

Plaintiffs' first claim is for trespass and the second is for nuisance.  Both claims are asserted against both Dow and Rockwell.  It is your responsibility to consider and decide each of these claims separately against Dow and Rockwell.

I will now instruct you about these claims and what you must consider in deciding each one.  When the instructions I am about to give you apply to more than one claim, I will tell you that.  At the end of my instructions on Plaintiffs' two claims, I will talk to you about determination of damages, which applies to both claims.

January 16, 2006

## INSTRUCTION NO. 3.5

Trespass Claim

<u>Matters That Are Not Relevant to Deciding the Trespass Claim</u>

A trespass may exist even though the conduct that originally caused the invasion of the plaintiff's land has ceased.  Accordingly, in considering whether Plaintiffs have proved the elements of their trespass claim as stated in Instruction No. 3.2, it is irrelevant that Dow and/or Rockwell ceased any such activities before Plaintiffs brought this suit or that the Rocky Flats plant itself is now shut down.

That Plaintiffs or Class members knew or could have known that plutonium was present on their properties when they purchased them is also irrelevant to determining whether Dow or Rockwell are liable for trespass as stated in Instruction No. 3.2.

These irrelevant matters should not be considered in determining the trespass claim.

January 16, 2006

## INSTRUCTION NO. 3.7

Nuisance Claim

<u>First Element:  Interference with Use and Enjoyment of Property</u>

The purpose of a nuisance claim is to protect a landowner's right to use and enjoy his property.  Although there are countless ways that a person or company can interfere with this right, for purposes of deciding the first element of the Plaintiff Class' nuisance claim, you may only consider the two possible forms of interference with Class members' use and enjoyment of their property that I stated in Instruction No. 3.6 and will describe further here.

The first possible form of class-wide interference is whether one or both of Defendants' activities at Rocky Flats interfered with Class members' use and enjoyment of their properties by causing Class members to be exposed to plutonium and placing them at some increased risk of health problems as a result of this exposure.  To find that Plaintiffs proved this form of interference, you do not need to find that all Class members were exposed to plutonium at the same time or by the same methods or to the same degree or that they all incurred the same level of health risk as a result of exposure to plutonium.  It is enough to find for purposes of this form of interference with use and enjoyment of property that the Class members were exposed to plutonium in some way as a result of one or both Defendants' activities and incurred some increment of increased health risk as a result.

There may be some nonresident Class members - that is, Class members who owned property within the Class Area but without living there.  If you find that occupancy of their properties *would* have resulted in exposure to plutonium in some way, causing some increment of increased health risk, as a result of one or both Defendants' activities, then you should find that these Class members too suffered an interference

36

January 16, 2006

with the use and enjoyment of their properties.

The second possible form of interference you must consider in deciding this first element of the Plaintiff Class' nuisance claim is whether one or both of Defendants' activities at Rocky Flats interfered with Class members' use and enjoyment of their properties by creating objective conditions that pose a demonstrable risk of future harm to the Class Area. For example, if plutonium or other hazardous substances present on or in the vicinity of Rocky Flats is at risk of being released to the Class Area -- through natural forces, cleanup activity, the conduct of others and/or accidents -- and could cause harm to properties in the Class Area by increasing the health risk to residents or impairing the future use of their land in some way, then this would be an objective condition that poses a demonstrable risk of future harm to the Class Area.

In order for you to find interference based on the threat or risk of future harm, you also need not find that the future harm *will* occur and affect the whole of the Class Area. You need only find that conditions exist that present the *potential* for such class-wide harm to occur.

You need not find that all Class members were subject to the same form of interference with use and enjoyment of their properties. It is enough if you find the Class members were all subject to at least one form of interference described in this instruction, even if some Class members were subject only to the first form of interference, others only to the second, and still others to both.

In deciding whether either or both forms of possible class-wide interference exists, you should not consider whether individual Plaintiffs or Class members are or might be fearful, anxious or otherwise disturbed by any real or perceived risks relating to Rocky Flats and the Defendants' activities there or the conditions they left behind. Individual reactions to these matters are not relevant to the question of whether a class-wide

37

January 16, 2006

interference exists.

You also should not consider in deciding this element of the nuisance claim whether Defendants' activities caused any decrease in the value of Class members' properties.  The law does not consider a decrease in property value to be an interference with the use and enjoyment of property.

If you find that Plaintiffs have proved either Dow or Rockwell or both of them interfered with Class members' use and enjoyment of property in one or both of the ways I described in Instruction No. 3.6 and in this instruction, then you must find that Plaintiffs have proved the first element of their nuisance claim with respect to the Defendant or Defendants who caused or contributed to the proven interference.  If, however, you find that neither Defendant interfered with Class members' use and enjoyment of property in at least one of these ways, then you must find Plaintiffs have not proved this element of their nuisance claim against either Defendant.

January 16, 2006

## INSTRUCTION NO. 3.9

Nuisance Claim

### Second Element: "Substantial" Interference - Defined

An interference with a person's right to use and enjoy their land is "substantial" if the interference is significant enough that a normal person in the community would find it offensive, annoying or inconvenient.  In this case, that means you must determine whether a reasonable landowner of normal sensibilities would find the proven interference caused by Dow or Rockwell to be offensive, annoying or inconvenient. "Normal sensibilities" for these purposes means a person who is neither unusually sensitive nor unusually insensitive to the interference you are considering.

In deciding whether any interference proven by Plaintiffs is substantial under this test, you must consider only the magnitude or level of interference that is common to the Class as a whole, and not any more severe level of interference that may have been suffered by some Class members but not by others.

Evidence that the value of Class members' properties has diminished because of any interference proven by Plaintiffs is evidence that the interference is substantial under the test stated in this instruction.  This is so because normal members of the community are part of the market that determines the value of properties, and if they consider an interference with the use and enjoyment of these properties to be offensive, annoying or inconvenient, they may place a lower value on the property than they would if the interference did not exist.  Evidence that Class Properties have a lower value because of any proven interference is not necessary, however, for you to find that the interference is substantial under the test I just described to you.

## INSTRUCTION NO. 3.10

Nuisance Claim

40

January 16, 2006

## INSTRUCTION NO. 3.12

Nuisance Claim

Second Element:  Unreasonable Interference: Factors Regarding Utility of the Conduct

There are also certain factors you must consider in assessing the utility of the conduct that caused the harm, that is, any proven interference.  Some of these factors focus directly on the conduct causing the harm, while other factors focus on any actions Dow or Rockwell have taken to avoid or compensate others for any interference they caused.

The factors focusing on the conduct causing the harm include:

1.    The social value of the primary purpose of this conduct.

It is undisputed that the primary purpose of the conduct that allegedly interfered with Class members' right to use and enjoy their properties was to manufacture nuclear weapons components.  The social value of this purpose depends on the extent to which it advanced or protected the general public good.  The parties agree that the manufacture of nuclear weapons at Rocky Flats, as a general matter, advanced the public good by protecting national security.

2.    The suitability of the conduct to the character of the locality.

This factor considers whether the Defendants' conduct is suitable to the area in which it occurred.

In evaluating the utility of the conduct causing the harm, you must also consider whether and to what extent the actor causing the harm took steps to address the consequences of its conduct.  Thus, you must consider the following factors focusing on any actions Dow or Rockwell have taken to avoid or compensate others for any interference they caused:

44

January 16, 2006

3.   <u>The impracticability of preventing or avoiding the interference</u>.

If it was practicable for Dow or Rockwell to avoid causing any interference with Class members' use and enjoyment of property, and they did not take the necessary measures to do so, then the law considers their conduct to have no utility, regardless of its social value.  Any interference caused by Dow and/or Rockwell was practicably avoidable if by some means the company could have substantially reduced the harm without incurring prohibitive expense or hardship in its operation of Rocky Flats.  If you find it was practicable for Dow or Rockwell to avoid any harm they caused under this test, then you must find the gravity of the harm outweighed the utility of Dow or Rockwell's conduct, and that any interference proved by Plaintiffs was unreasonable.

4.   <u>The financial burden to compensate others for any interference caused by Dow and/or Rockwell's activities</u>.

A nuisance action for damages seeks to place the financial burden for any interference with the use and enjoyment of property on the actor that caused  this harm.  The financial burden of this cost is therefore a significant factor in determining whether the conduct of causing the harm without paying for it is unreasonable.  You may find that Dow or Rockwell's conduct lacks sufficient utility to outweigh any interference it caused if you find it would be unreasonable for Class members to bear this cost without compensation.

January 16, 2006

**INSTRUCTION NO. 3.17**

Nuisance Claim

<u>Fourth Element:  Continuing Nuisance</u>

As stated in Instruction No. 3.6, the fourth element Plaintiffs must prove to prevail on their nuisance claim is that it appears that the unreasonable and substantial interference with the use and enjoyment of property caused by Dow and/or Rockwell's intentional or negligent conduct will continue indefinitely.  In deciding this element, it is not necessary for you to find that the interference meeting these requirements will last forever.  Instead, you should consider whether there is any reason to expect that this interference will end at any definite time in the future.  If you find there is no reason to expect this interference to end by a definite time, then you must find it appears the interference will continue indefinitely.

January 16, 2006

## INSTRUCTION NO. 3.22

Both Claims

<u>Measure of Actual Damages</u>

Plaintiffs seek an award of actual damages based on the decrease in the value of properties in the Class Area caused by the trespass and/or nuisance committed by Dow or Rockwell or both of them.  This type of actual damages is sometimes called diminution in property value.

The diminution in property value that Plaintiffs may recover here is measured by the difference between the actual value of the Class Properties and the value these Properties would have had if Dow or Rockwell or both of them had not committed the trespass and/or nuisance proved by Plaintiffs.  In other words, you must compare the actual value of the Class Properties to what their value would have been "but for" the trespass and/or nuisance, and the difference is the diminution in property value that Plaintiffs can recover as actual damages in this case.

In a case like this, the law requires that you measure the amount of any such diminution in Class property values at a particular point in time.  That point is the time or time period when the injurious situation became "complete" and "comparatively enduring."  The injurious situation is "complete" when the effects of the trespass or nuisance are known to their full extent.  It is "comparatively enduring" when there is no reason to expect that these effects will end at a definite time in the future.  When the injurious situation became "complete" and "comparatively enduring" in this case is a question you will decide as I will describe in just a moment.

Plaintiffs contend that the diminution in the value of Class properties should be measured as of the period between June 6, 1989, when the FBI and U.S. Environmental Protection Agency searched Rocky Flats as part of their investigation into alleged

54

January 16, 2006

wrong-doing by Rockwell, and March 26, 1992, when Rockwell pled guilty to certain environmental crimes at Rocky Flats.  Plaintiffs allege this is the right time period to measure their actual damages because this is when the injurious effects of Defendants' alleged trespass and nuisance became "complete" and "comparatively enduring."

Plaintiffs have also presented evidence, however, of the injurious effects of the alleged trespass and nuisance in the larger period of 1988 through 1995.  If you find these effects became "complete" and "comparatively enduring" at any time during this period, therefore, you may award actual damages to Plaintiffs measured as of the time you find the effects became "complete" and "comparatively enduring."  If you do not find the injurious effects of the alleged trespass and/or nuisance became "complete" and "comparatively enduring" some time during the 1988-1995 period, then you should not award actual damages to Plaintiffs.

Accordingly, to decide whether Plaintiffs are entitled to the actual damages they seek in this case, you must determine whether Plaintiffs have proved by a preponderance of the evidence that:

1. The injurious situation became "complete" and "comparatively enduring" (as defined in this instruction) sometime between January 1, 1988 and December 30, 1995; and

2. As of the time you find the injurious situation became "complete" and "comparatively enduring," the actual value of the Class Properties was less than the value these Properties would have had but for the trespass and/or nuisance committed by Dow or Rockwell or both of them; and

3. As of the time you find the injurious situation became "complete" and "comparatively enduring," the amount of the difference between the actual value of Class Properties and what their value would have been but for the

55

January 16, 2006

trespass and/or nuisance (see Instruction No. 3.23).

# Exhibit D

**INSTRUCTION NO. 2.2B (new)**

<u>Dr. Till's Testimony Regarding Removal of Plutonium</u>

I have stricken from the evidence the testimony of Dr. Till in which he stated or suggested that plutonium present in the Class Area has been removed by bulldozing and other construction and development activities.  You are not to consider Dr. Till's testimony on this subject for any purpose.

**INSTRUCTION NO. 3.5 (revised - 1/17)**

Trespass Claim

<u>Matters That Are Not Relevant to Deciding the Trespass Claim</u>

A trespass may exist even though the conduct that originally caused the invasion of the plaintiff's land has ceased.  Accordingly, in considering whether Plaintiffs have proved the elements of their trespass claim as stated in Instruction No. 3.2, it is irrelevant that Dow and/or Rockwell ceased any such activities before Plaintiffs brought this suit or that the Rocky Flats plant itself is now shut down.

That Plaintiffs or Class members knew or could have known that plutonium was present on their properties when they purchased them is also irrelevant to determining whether Dow or Rockwell are liable for trespass as stated in Instruction No. 3.2.

You have also heard argument that plutonium has been removed from properties in the Class Area as a result of bulldozing, soil excavation and other disturbance during real estate construction and development activities in the Class Area.  You are to disregard all such argument because I recently ruled that it cannot be presented or considered in deciding the trespass claims.  For purposes of deciding the trespass claims, therefore, the notion that plutonium has been removed from the Class Area through development and construction activities is irrelevant.

None of the irrelevant matters described in this instruction should be considered in determining the trespass claim.

**INSTRUCTION NO. 3.19A (new)**

<u>Apportioning Fault Between Defendants</u>

If you find both Dow and Rockwell committed a trespass and/or nuisance in this action, and that Plaintiffs have proved actual damages resulted from both Defendants' trespass and/or nuisance under the instructions I will give you in a moment (see Instruction Nos. 3.20-3.22), then you must also determine to what extent Dow's trespass or nuisance and Rockwell's trespass or nuisance contributed to the Class' actual damages.  In making this determination, you must express Dow's contribution to the Class' damages (if any) and Rockwell's contribution to the Class' damages (if any) as a percentage of 100.

If you find only one of the Defendants liable for trespass and/or nuisance, then you will only decide the actual damages caused by that Defendant's trespass and/or nuisance.

The questions on the jury verdict form will guide you through these circumstances.

# Exhibit E

**INSTRUCTION NO. 2.2AA**

<u>Retention of Expert Witnesses</u>

Some of the expert witnesses from whom you have heard were retained on behalf of Dow and Rockwell, both of whom are corporations, and others were retained on behalf of the Class.  In judging the testimony of these expert witnesses, you should remember that all persons are equal before the law regardless of race, national origin, citizenship, or whether the party is a corporation or an individual.  All parties involved in this litigation, whether they are individuals or corporations, are entitled to retain and to pay experts.

# Exhibit F

Revised January 26, 2006

## INSTRUCTION NO. 4.2

### Jury - Deliberations

When you go to the jury room to begin your deliberations, you must elect one member of the jury as your Presiding Juror. He or she will preside over your deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreements if you can do so. In order to answer any question on the Verdict Form, eight jurors must agree upon the answer. It is not necessary that the jurors who agree on the answer be the same jurors who agreed on the answer to any other question, so long as eight jurors agree to each answer.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it with your fellow jurors, and listened to the views of your fellow jurors. I offer some suggestions on how you might do this in the next jury instruction, entitled "Jury - The Deliberations Process."

Do not be afraid to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach agreement to answer the questions on the Verdict Form, but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight of the evidence simply to reach an answer.

81

Revised January 26, 2006

### INSTRUCTION NO. 4.5

<u>Jury Verdict Form</u>

You will each have copies of a document called a Jury Verdict Form.  You are instructed to answer the questions in each Jury Verdict Form as directed in that form.

In order to answer any question on the Jury Verdict Forms, eight jurors must agree upon the answer.  It is not necessary that the jurors who agree on the answer be the same jurors who agreed on the answer to any other question, so long as eight jurors agree to each answer.

Upon arriving at an agreement, your Presiding Juror will insert each answer on the Jury Verdict Form.  After all of the questions have been answered as directed by the Jury Verdict Form, your Presiding Juror will date Jury Verdict Form, sign it, and then ask all of the other jurors to sign it.

After you have filled out the Jury Verdict Form in this manner, your Presiding Juror should advise the court security officer stationed outside the jury room that you have reached a verdict.

New - January 26, 2006

## INSTRUCTION NO. 4.6

### Number of Jurors Necessary to Reach Agreement

Yesterday, I re-read certain instructions to all of you. As you are aware from a note I sent you that same day in response to a question from you, the instructions I re-read to you are now incorrect in one respect. That respect is that now that a second juror has been excused, and there are ten of you remaining rather than eleven, it is no longer necessary for nine of you to agree to reach a decision on questions on the verdict form. Only eight of you must now agree.

Along with this new instruction No. 4.6, I am providing you with revised copies of Instruction Nos. 4.2 and 4.5 that have been corrected to show that the agreement of eight jurors is necessary to answer the questions on the Jury Verdict Form. You should continue your deliberations with this change in mind.