IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **90-K-181**

**MERILYN COOK, et al.,**

    Plaintiffs,

v.

**ROCKWELL INTERNATIONAL CORPORATION AND THE DOW CHEMICAL COMPANY,**

    Defendants.

_____

**AMENDED ORDER ON PENDING MOTIONS FILED UNDER SEAL
(DOCS. 2122, 2123, 2156) AND TO PRESERVE JURY NOTES (DOC. 2124)**
_____

Kane, J.

This matter is before me on Defendants' Motion to Speak with Juror (Filed Under Seal) (Doc. 2122), Defendants' Motion to Unseal Redacted Version of Juror Notes and Transcripts (Filed Under Seal) (Doc. 2123), Defendants' Motion to Preserve Jury Notes (Doc. 2124), and Defendants' Motion to Correct Error in Transcription (Filed Under Seal) (Doc. 2156). Being fully advised of their premises and the applicable law, I issue the following rulings:

    1. <u>Defendants' Motion to Speak with Juror (Filed Under Seal) (Doc. 2122)</u>.

Citing *United States v. Samet*, 207 F. Supp. 2d 269 (S.D.N.Y. 2002), Defendants move under D.C.COLO.LCiv.R 47.1 for an order (1) allowing them to speak with Juror

1

X[1] and (2) disclosing "any communications the Court or Court personnel have had with [Juror X] following her exit from the jury room." The Motion is **DENIED** in both regards under *Tanner v. United States*, 483 U.S. 107 (1987) and F.R.E. 606(b).

District courts have wide discretion to shield jurors from post-trial "fishing expeditions" carried out by losing attorneys interested in casting doubt on the jury's verdict or deliberations process. *See e.g. United States v. Hall*, 424 F. Supp. 508, 538-39 (W.D.Okla.1975), *aff'd*, 536 F.2d 313 (10th Cir.1976). "'There are many cogent reasons militating against post-verdict inquiry into jurors' motives for decision. The jurors themselves ought not be subjected to harassment; the courts ought not be burdened with large numbers of applications mostly without real merit; the chances and temptations for tampering ought not be increased; verdicts ought not be made so uncertain.'" *Id.* at 538 (quoting *United States v. Crosby*, 294 F.2d 928, 950 (2d Cir. 1961), *cert. den'd.*, 368 U.S. 984 (1962)).

*Samet*, Defendants' principle authority for the relief requested, provides a single case in which a court, in a criminal prosecution, deemed it necessary to declare a mistrial rather than continue with fewer than 12 jurors when a juror sent communications and made statements, *during* the course of deliberations, suggesting she held a minority view on the merits of the case, was experiencing pressure from other jurors to change her vote,

---

[1] Defendants' repeated use of Juror X's name in their briefing, even if filed under seal, is unnecessary and contravenes my explicit order in this case that filings *not* do so. *See* Order (Doc. 2115), dated February 14, 2006. Administrative errors resulting in the inadvertent release of sealed documents are not unprecedented.

2

had changed her vote on some counts, and no longer believed she could deliberate fairly. Finding the limited exception for proceeding with fewer than 12 jurors in criminal cases set forth in Fed. R. Crim. P. 23(b) could not be invoked without violating jury secrecy, the district court declared a mistrial. 207 F. Supp.2d at 277 & n.4.

*Samet* is completely distinguishable on its facts from the scenario that presented itself in the *Cook v. Rockwell* case on January 25th when Juror X left the jury deliberation room in distress. Had Defendants pursued their motion for mistrial at that time (which motion was anticipated and suggested orally but never formally pursued with a written motion or briefing) I would have denied it both because *Samet* was inapplicable[2] and because, quite simply, Juror X was excused for cause because she was no longer able to

---

[2]    *Samet* is a criminal case decided under Fed. R. Crim. P 23(b) where 12-man jury and unanimous verdict considerations significantly impact the discharge of a juror for cause during the course of deliberations. While the modern trend is that the prosecution and defendant may stipulate at any time before verdict to a jury of fewer than 12 members in criminal cases, the practice is limited and closely scrutinized for Sixth Amendment considerations. *See generally*, C. Wright, Federal Practice & Procedure: Criminal 3d § 371 (3d ed. 2000). Specifically, Rule 23 was amended in 1977 to allow the parties to stipulate that a valid verdict may be returned by a jury of fewer than 12 should the court find it necessary to excuse one or more jurors for cause. It was amended in 1983 to allow the court even without a stipulation to proceed with 11 jurors "if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict." *See id.* (quoting Rule 23 as amended). Because of the constitutional imperative of a unanimous verdict, however, courts in criminal cases must avoid the risk of excusing a holdout juror and ensure that any juror excused for cause once deliberations have started not be excused based any views that juror may have on the merits of the government's case. *See id.* at n. 19 (collecting cases). Where this cannot be done, an appropriate course may be, as in *Samet*, to declare a mistrial. In civil cases, where parties may stipulate to a nonunanimous verdict under Fed. R. Civ. P. 48 (and the parties did so here), the constitutional concerns are not the same. Even in the criminal context, moreover, the option of declaring a mistrial is discretionary, and not compelled. In the absence of evidence that a judge's decision to excuse a juror for inability to perform duties was influenced by a juror's view of the case, the refusal to declare a mistrial is not error. *See U.S. v. Gonzalez-Soberal*, 109 F.3d 64 (1st Cir. 1997).

3

perform her duties.  With no indication that Juror X held *any* view on the merits of the case at that time (which was two days into what became 18 days of deliberations), minority or otherwise, no indication that she was being pressured to change any such "view," and no indication that she was leaving because she could no longer deliberate fairly – and with the remaining jurors' public assurance that they could continue to do so – there was simply no basis for declaring a mistrial at that time.  Fishing for such indices *now*, however, after the remaining jurors deliberated for 15 additional days and returned a verdict against Defendants, is not only unsupported by *Samet*, but is in direct contravention of Rule 606(b) of the Federal Rules of Evidence and the sound, centuries-old legal and public policy considerations underlying that Rule.

Defendants raised all manner of issues on January 25th in the wake of Juror X's discharge, but in the end, failed to formalize their motion for mistrial or to provide briefing they promised was forthcoming.[3]  Instead, Defendants allowed the jury to continue deliberating for three full weeks after Juror X's dismissal, not following up on the issue, and instead, acted in a manner entirely inconsistent with any objection to

---

[3] MR BERNICK: "[W]e intend to file a motion for a mistrial that more fully sets out both the facts that relate to this case." (Tr. at 10745.)

\* \* \*

THE COURT: "[D]efense counsel has asked for time to file some matters on a motion for mistrial [and] I'll defer any ruling until I receive those." (Tr. at 10754.)

It should be noted that these statements are set forth in parts of the January 25, 2006 hearing transcripts I am unsealing pursuant to my order issued *infra*, at Section 2.

4

allowing the jury to continue its deliberations to final verdict or a desire to have the issue resolved before final verdict was reached.

For example, one of Defendants' first actions after Juror X's dismissal on January 25th was to revisit their stipulation to allow a consensus verdict with up to two dissenters per verdict form question, stating that having lost two jurors, they were "not prepared to accept less than [a] unanimous verdict." (Tr. at 10764-65.) Defendants revealed a change of heart over the noon hour, however, *reaffirming* in response to a question submitted by the newly convened 10-member jury their original agreement to allow a binding vote with two dissents, expressly acknowledging that this meant an 8-2 vote would be binding, and repeating that agreement on the record. (Tr. at 10765.)[4] Defendants made no objection then or at any time thereafter to the jury continuing to deliberate with 10, rather than 11, jurors.

During the course of the following three weeks, moreover, Defendants filed numerous responses to at least eight questions/requests by the jury as it deliberated, but neither requested that deliberations be halted nor filed any briefing in support of their *Samet*-based suggestion that Juror X's departure without questioning her somehow created or revealed an insurmountable taint on the jury requiring mistrial. Instead,

---

[4] THE COURT: Had a question from the jury right after you left, and I think you got it. And what's your position with regard to the jury question? Do we still have to have nine yes or no votes, or is it eight to two, equals ten total jurors.

MR. BERNICK: Well, we understand the plaintiffs have taken the position that eight to two is enough, and we're in agreement with that position.

Defendants waited until *after* the jury reached its verdict and *after* the verdict went against them to reassert the specter that Juror X "may" have been a dissenting juror who "may" have been rousted from the jury based on that dissent such that they should be allowed to investigate that specter post-verdict to determine whether a mistrial or new trial is warranted now. Had the verdict gone their way, Defendants would have received the benefit of their hedge and we would undoubtedly have heard nothing further from them on the issue.[5]

Once a jury has deliberated to verdict, *Samet*, even if it were to apply in this case, falls away and no reasonable argument can be made that anything other than FRE 606(b) governs a *post hoc* inquiry into a potential "taint" in the deliberative process, particularly one that ostensibly occurred two days into an 18-day deliberation process and after a four month, exceedingly complex trial. In this case, Rule 606(b) governs the issues raised and precludes the fishing expedition requested by Defendants.

FRE 606(b) prohibits jurors from testifying "as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent

---

[5] Evidence of Defendants' "hedge" is apparent in their briefing, which quite obviously was prepared after January 25th but *before* the jury's verdict, but held until after the final verdict was issued. From footnote 1 of the Motion:

> Plaintiffs also cite to Federal Rule of Evidence 606(b), but that rule simply indicates that upon inquiry into a verdict *(which we do not yet have here)*, a juror cannot become a witness concerning the jury's deliberations.

(Emphasis mine.)

from the verdict . . . or concerning the juror's mental processes in connection therewith," and prohibits a juror's affidavit or evidence of any juror's statement concerning any such matter from being received by a Court for purposes of questioning the validity of a verdict.

The Rule is a codification of principles dating back to the 18th century and long held inviolate in our system of laws. *See McDonald & United States Fidelity & Guaranty Co.*, 238 U.S. 264, 269 (1915)(citing the 1785 ruling of Lord Mansfield in *Vaise v. Delaval*, 1 T.R. 11, and concluding it "is unquestionably the general rule that the losing party cannot, in order to secure a new trial, use the testimony of jurors to impeach their verdict"). The Supreme Court wrote specifically about the nature and underpinnings of Rule 606(b) in *Tanner v. United States*, 483 U.S. 107 (1987), reiterating the substantial policy considerations underlying the Rule and reviewing case law treating allegations of the physical or mental incompetence of a juror as falling squarely within its prohibitions.

The exceptions to the Rule are few and narrowly construed. While a juror may not testify about matters that affected her mind or emotions to assent or dissent from a verdict, she may testify on the question of whether "extraneous prejudicial information was improperly brought to Juror X's attention [such as newspaper accounts or the like]" or "whether any outside influence was improperly brought to bear upon any juror." *Tanner*, 483 U.S. at 121(quoting FRE 606(b)). There has been no suggestion in this case that extraneous prejudicial information was brought to the jury's attention in deliberations or that influence from anything outside the jury deliberations process was brought to

7

bear.  A juror's mental state or mental incompetence is conclusively an "internal" matter into which inquiry may not be made, *see Tanner* at 117-18 (collecting cases), as is the assertion, fundamental to Defendants' claims of impropriety here, that other jurors involved in the deliberations exercised influence over her.  *See McDonald*, 238 U.S. at 267 ("public injury [] would result if jurors were permitted to testify as to what had happened in the jury room"); *United States v. Stansfield*, 101 F.3d 909, 914 (3d Cir. 1996)("Testimony concerning intimidation or harrassment of one juror by another falls squarely within the core prohibition of the Rule.")(quoted favorably in *Robinson v. Gibson*, 35 Fed. Appx. 715 (10th Cir. 2002)(unpublished decision)).

The Tenth Circuit has been adamant in enforcing these principles in the face of the very sort of evidence Defendants seek to discover.  *See, e.g., United States v. Voigt*, 877 F.2d 14641469-70 (10th Cir. 1989)(citing *United States v. Miller*, 806 F.2d 223 (10th Cir. 1986) and *United States v. Jelsma*, 630 F.2d 778 (10th Cir. 1980)).  In *Miller*, for example, the Tenth Circuit affirmed the trial court's denial of defendant's motion to make inquiry of a juror who reportedly had told her pastor that she may have misunderstood the court's instructions and may have been unduly influenced by the other jurors.  806 F.2d at 225 ("settled law" that juror testimony is inadmissible to impeach a verdict except where the proffered testimony relates to *extraneous* prejudicial information or the fact of *outside* influence being improperly brought to bear upon any juror, neither of which was implicated by juror's statements).  In *Jelsma*, the Tenth Circuit stated Rule 606(b) "specifically precludes judicial 'inquiry into the validity of a verdict'" and refused to

consider affidavits of jurors presented by appellant to impeach it. 630 F.2d at 779. Defendants repeatedly urge the unfairness or discord of a rule that might allow intra-jury intimidation to proceed unchecked, but the Supreme Court, in *McDonald*, has explicitly rejected that sentiment. "Precluding this evidence represents a choice of the 'lesser of two evils' – not redressing a private litigant's injury in favor of upholding the public policy promoting private and unassailable juror deliberations." *McDonald* at 267-68; *see Tanner*, 438 U.S. at 120.

Defendants here seek to inquire as to the circumstances that existed in the deliberation room when Juror X was excused in order to determine whether Juror X was a dissenting juror who may have become incapacitated and left the jury as a result of undue influence brought to bear against her during the deliberations process by other jurors. Even *if* Defendants were to confirm such a state of affairs existed on January 25th and brought such evidence before the court, binding authority from the Supreme Court and this Circuit would preclude its admission for any post-verdict relief Defendants may seek.[6] As a result, there is no basis for granting Defendants relief from the general local

---

[6] Defendants in their Supplemental Reply shift their focus to suggest their factfinding is necessary to "complete the record" as it existed on January 25, 2006, when Juror X was excused. I disagree. To the extent Defendants' position is a *post hoc* attempt to establish that a mistrial was warranted as of January 25 (because, now that they have lost, Defendants would like to argue that forcing the issue of speaking with Juror X at that time may have resulted in grounds, under their overbroad interpretation of *Samet*, for mistrial) it is rejected. The Tenth Circuit has more than ample "record" on which to consider any purported error on my part to rule on a motion for mistrial effective January 25, 2006 that was never formally asserted, briefed or pursued before a final verdict was reached. Speaking with Juror X now would add nothing to that record and would be in flagrant violation of FRE 606(b).

9

court rule prohibiting counsel from communicating with jurors to allow them to contact an individual juror who was dismissed two days into deliberations and did not deliberate to verdict.

The situation here is similar to that decried by the district court in *United States v. Miller*, 284 F. Supp. 220 (D. Conn.1968), quoted favorably in *Hall:*

> 'To maintain the integrity of our jury system for reaching final decisions requires that its internal process shall be inviolable, even in court proceedings. . . . Leaving jurors at the mercy of investigators for both sides to probe into their conduct would make the already difficult task of obtaining competent citizens willing to serve as jurors well nigh impossible. In this case, the whole purpose of the jury investigation conducted by the defendants was to rake up the past in an effort to find some basis for reading into it some features which the defense would like to stress on another motion for a new trial.'

*U.S. v. Hall*, 424 F. Supp. 508, 538 (W.D. Ok. 1975).

The foregoing, Rule 606(b) and the long-standing principles of law it codifies form the basis, by themselves, for denying Defendants' Motion. I take a moment, however, to illuminate the contrived nature of Defendants' assertion that a *Samet*-like mistrial may have been warranted in this case at any time, depending on "facts" that Defendants sought first to elicit in interviews with Juror X and/or the remaining jurors on January 25th, and now seek to elicit from Juror X alone post-verdict.

First, Defendants seek to ascertain whether Juror X held views favorable to Defendants at the time she was excused. This is important under Defendants' theory because "if" Juror X held views favorable to Defendants, then she "may" have been the third vote in Defendants' favor and her continued participation in deliberations may have

altered the outcome on the questions ultimately answered 8-2 against them. Mot. to Speak with Juror (Doc. 2122) at 1. There is absolutely no indication anywhere, however, that Juror X held any particular views on the merits of the case, favorable to Defendants or otherwise and contrary to the views of a majority of jurors, at the time she was excused. Juror X completed two days of an 18-day deliberations process and did not participate in the verdict ultimately reached. Similarly, whether Juror X's hypothetical dissent in favor of Defendants on January 25th would have remained static through the remaining three weeks of deliberations is unknowable, by Juror X or anyone else. Finally, Juror X could not have changed the outcome on the majority of the questions, in any event, that were answered 9-1 and 10-0. Allowing Defendants to question Juror X in an attempt to ascertain the unascertainable would be futile and foolish, and in any event would not yield any evidence admissible to impeach the verdict or support a new trial for the reasons stated earlier.[7]

Even assuming Juror X was a dissenting juror with views favorable to Defendants at the time she was excused, this eventuality was something entirely anticipated by Defendants and no basis for surprise. Defendants agreed at the outset of the trial to be

---

[7] Defendants attempt at various places in their briefing to distinguish between evidence admissible to impeach a verdict under Rule 606(b) (conceding evidence is not admissible for that purpose) and evidence admissible to support an argument regarding the basis for a mistrial *before* a verdict is reached. Besides the futility of that argument given the fact that this jury *did* proceed to final verdict, the argument fails on its merits. The principles underlying FRE 606(b) do not limit themselves to only post-verdict inquiries into the deliberations process. Both *McDonald* and *Tanner* as well as a litany of cases cited under them reveal that the sanctity of jury deliberations exists and must be observed throughout the deliberations process.

bound by answers reached by the jury with up to two dissenters (as long as there were at least 10 jurors), so the potential that Juror X "may" have been a dissenter at the time she was excused was neither shocking nor unanticipated.  As stated above, moreover, Defendants reaffirmed that agreement *after* Juror X's departure, fully aware that she may have been a "dissenting" vote.  The difference is, at the time Juror X left, Defendants did not know whether Juror X's potentially "dissenting" vote would have worked in their favor or against it (as would have been the case if Juror X been pro-plaintiffs when the majority of jurors were pro-defendants).

Even if it could be determined that Juror X held a "minority" view of the case and favored Defendants at the time she was excused, there would, under Defendants' *Samet*-based theory, have to be some kind of nexus between Juror X's distress and that view.  Defendants suggest Juror X's distress may have been the result of being pressured of "bullied" as a result of her minority views, and claim it is necessary to speak to her to determine if that was so.  Again, in *Samet*, this nexus – or certainly an inference of it – was established by the juror herself, who explicitly told the Court she was being pressured to change her vote and could no longer deliberate fairly as a result.  There is *no* indication of such pressure (or the premise underlying it that Juror X held a minority view on the merits of the case that favored Defendants) in the instant case and to suggest it

12

reveals a fundamental cynicism regarding the jury process and a willingness to impugn the character of the remaining jurors utterly belied by the circumstances of this case.[8]

In sum, Defendants' position that the jury deliberations process in this case may have involved bullying or intimidation of dissenting jurors and that this possibility warrants investigation is contrary to established law, agonistic, and conditioned on successive and intertwining layers of the rankest speculation. The suggestion that Juror X was rousted from the jury on the basis of her favorable views to Defendants is belied by the fact that the remaining jurors included up to two dissenters and deliberated without incident for 15 days after she was excused. After the special verdict form was read, I polled the jurors and each represented that the verdict form indeed represented his or her verdict. There is no indication that anything other than the internal workings of the jury and the effect of those workings on Juror X's mind or emotions were at play on January 25th, 2006, when Juror X was excused.

---

[8] I note the jurors in this case were repeatedly offered guidance in the jury instructions to reach their "own conscientious decision[s]," and "not to come to a decision simply because other jurors think it is right." *See* Instruction 4.2 (entitled "Jury - Deliberations). In Instruction 4.3, jurors were provided suggestions regarding the role of the Presiding Juror. Each member of the jury was urged to be allowed "to speak and be heard" and to refrain from "promot[ing] his or her personal opinions by coercion or intimidation or bullying of others." Instruction 4.3 – the longest instruction at four full pages – also provides suggestions regarding concepts such as "active listening," the right to individual opinion, and the taking of breaks so that differences in views can be discussed calmly. The instruction charges the Presiding Juror not only with the job of monitoring any "bullying" behavior, but calls for the Presiding Juror voluntarily to step down or be replaced by a majority vote if he fails to do so. None of the many communications sent by the jury during the deliberations process gave any indications that the jurors were not complying with these guidelines. Defendants' attempt to paint the Presiding Juror's rejectec request the day before Juror X was excused for a conference with me as an indication that bullying may be taking place is beyond tenuous and is rejected.

> Public policy requires a finality to litigation. And common fairness requires that absolute privacy be preserved for jurors to engage in the full and free debate necessary to the attainment of just verdicts. Jurors will not be able to function effectively if their deliberations are to be scrutinized in post-trial litigation. In the interest of protecting the jury system and the citizens who make it work, Rule 606 should not permit any inquiry into the internal deliberations of the jurors.

F.R.E. 606(b), Advisory Committee Notes (citing Senate Report No. 93-1277). The conclusion reached by the district judge in *Hall* is equally apt here:

> The Court has an obligation to the members of the jury in this case to safeguard them from harassment and annoyance and to afford them deserved protection after they have faithfully and conscientiously discharged their duties in an unpleasant and disheartening trial of more than usual duration. As said Defendants cite no "extraneous prejudicial information" or "outside influence" having been improperly brought to the jury's attention, the Court declines, in its discretion, to grant the desired interviews of the trial jurors on these assertions, interviews which are obviously sought for the purpose of browsing among the thoughts of the members of the jury, interviews which would amount to a pure fishing expedition inspired by adverse verdicts of conviction. The Defendants cite no authority that permits such an excursion unsupported at the outset by any allegation of impropriety. The record will reveal that the Court meticulously and repeatedly instructed the jury against any such impropriety and further implicitly and repeatedly charged the jury to report any such violation to the Court at their earliest opportunity. No report was made. The fishing expedition desired by the Defendants has been condemned as being useless and harmful to the jury system. [Citations omitted.]

424 F. Supp. at 538 -539.

The Motion to Speak to Juror is **DENIED**.

2. <u>Defendants' Motion to Unseal Redacted Version of Juror Notes and Transcripts (Doc. 2123) (Filed Under Seal)</u>.

In this Motion, Defendants request an order unsealing (1) a redacted version of the jury notes that the Court previously ordered sealed; and (2) a redacted version of the

14

11/25/06 [sic] hearing transcripts.   I **GRANT** the Motion in part and **DENY** it in part.  I deny the request to unseal the two sealed jury notes, however "redacted," because no purpose besides compromising Juror X's identity and privacy interests would be served thereby.  Even if anything comprehensible remained after appropriate redaction, it would not be admissible to impeach the jury's verdict.  The request to unseal redacted versions of the two sealed jury notes in this case is **DENIED.**

The request to unseal redacted versions of the January 25, 2006 hearing transcripts is appropriate, however the redactions proposed by Defendants are underinclusive.  I have reviewed the transcripts and will unseal them with additional confidential material redacted.

       3.     <u>Defendants' Motion to Preserve Jury Notes (Doc. 2136)</u>.

In this Motion, Defendants ask that I "preserve all of the notes created or used by the jurors during their deliberations" as "evidence" supporting their objection to my refusal to require the jury to retrieve their notes to answer Defendants' post-verdict question regarding the basis for their punitive damages calculation.  While it is unclear how or when the notes could ever be accessed for this point – because they are not part of the record and are inadmissible under FRE 606(b) to probe the jury's internal deliberations – Plaintiffs have no objection to their continuing to be lodged in my chambers and I will therefore **GRANT** the Motion for the time being.

It should be understood that the jurors had access to unlimited blank spiral stenographic notebooks from the outset of this case and took volumes of notes.  I have, of

15

course, not looked at these notes but it is fair to surmise that it would be difficult, if not impossible, to even distinguish notes taken during the course of the four-month trial from notes made during deliberations, if, indeed, any were taken during the deliberations period. I frankly cannot imagine what use counsel or the court of appeals could ever make of these notes, but for the time being, I will continue to lodge them here.

    4.    <u>Defendants' Motion to Correct Error in Transcription (Doc. 2156) (Filed Under Seal)</u>.

Defendants move to "correct" the transcription of a single sentence from the January 25, 2006 hearing transcript, asserting the transcription omitted a word which reversed the argument defense counsel was making. Specifically, the transcript at page 10723, line 3, currently reflects that defense counsel stated: "I think the Court has absolutely no discretion to inquire into the circumstances" when what defense counsel "actually" stated was "I think the Court has absolutely no discretion **but** to inquire into the circumstances." While unsurprising that counsel does not allow for the possibility that it was he who misspoke rather than the court reporter who erred in transcribing, this is much ado about nothing. Judges, witnesses – even counsel – occasionally misspeak, and court reporters occasionally misapprehend, on the record. Where an omitted "but" or "not" changes the meaning of a sentence in a manner inconsistent with the context in which it is made, reviewing courts are capable of reading the sentence in its overall context. I read the subject sentence accordingly, and it did not affect my decisions one way or the other.

Based on all of the foregoing,

1. Defendants' Motion to Speak with Juror (Filed Under Seal) (Doc. 2122) is **DENIED**;

2. Defendants' Motion to Unseal Redacted Version of Juror Notes and Transcripts (Filed Under Seal) (Doc. 2123), is **GRANTED IN PART** with certain additional redactions;

3. Defendants' Motion to Preserve Jury Notes (Doc. 2124), is **GRANTED**; and

4. Defendants' Motion to Correct Error in Transcription (Filed Under Seal) (Doc. 2156) is **DENIED**.

Dated this 18th day of April, 2006, *nunc pro tunc* to March 13, 2006.

                                          **s/John L. Kane**
                                          SENIOR U.S. DISTRICT JUDGE