**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**No. 90-cv-181**

_____

**MERILYN COOK, et al.,**

      **Plaintiffs,**

          **v.**

**ROCKWELL INTERNATIONAL CORPORATION and**
**THE DOW CHEMICAL COMPANY,**

      **Defendants.**

_____

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR ENTRY OF JUDGMENT**

_____

**Dated: May 4, 2006**

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  OVERVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.  PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A.  Entry of Final Judgment Is Preferable to
Certification Under 28 U.S.C. § 1292(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

1.  Reliance on Section 1292(b) Would Involve
Significant Uncertainties and Disadvantages . . . . . . . . . . . . . . . . . . 4

a.  Criteria for Certifiability Under Section 1292(b) . . . . . . . . . . . 4

b.  Three Scenarios for Appellate Review Under Section 1292(b) . . 5

(i)  Certification of All Relevant Rulings . . . . . . . . . . . . . . . 5

(ii)  Pendent Appellate Jurisdiction . . . . . . . . . . . . . . . . . . . . 8

(iii)  Piecemeal Appellate Review . . . . . . . . . . . . . . . . . . . . . . 9

c.  Further Practical Considerations . . . . . . . . . . . . . . . . . . . . . . . . 12

2.  Entry of Final Judgment Is Appropriate and Permissible . . . . . . . . . . . 15

a.  Standards for Entry of Judgment Under Rule 54(b) . . . . . . . . . 16

b.  The Verdict Completely and Finally Resolved
A Distinct "Claim for Relief" . . . . . . . . . . . . . . . . . . . . . . . . . . 18

c.  The *Strey* Decision Is Not an Impediment to Finality . . . . . . . . 20

**TABLE OF CONTENTS (cont'd)**

**Page:**

B.    Plaintiffs' Proposed Plan of Allocation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

C.    Plaintiffs' Proposed Form of Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

    1.    Pre-Judgment Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

    2.    Exemplary Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

        a.    Amount of the Exemplary Damage Awards . . . . . . . . . . . . . . . . 29

        b.    Judicial Augmentation of the Exemplary Damage Award Against Rockwell . . . . . . . . . . . . . . . . . . . . . . . . 30

    3.    Post-Judgment Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

# TABLE OF AUTHORITIES

**Page:**

## Cases

*Ahrenholz v. Bd. of Trustees*, 219 F.3d 674 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Allstate Ins. Co. v. Starke*, 797 P.2d 14, 19 (Colo. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 25

*Boughton v. Cotter Corp.*, 65 F.3d 823 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Coale v. Dow Chem. Co.*, 701 P.2d 885 (Colo. App. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

*Cook v. Rockwell Int'l Corp.*, 755 F. Supp. 1468 (D. Colo. 1991) . . . . . . . . . . . . . . . . . . . . . . . 27

*Cook v. Rockwell Int'l Corp.*, 181 F.R.D. 473 (D. Colo. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Cook v. Rockwell Int'l Corp.*, 273 F. Supp. 2d 1175 (D. Colo. 2003) . . . . . . . . . . . 2, 6, 11, 18, 31

*Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1 (1980) . . . . . . . . . . . . . . . . . . . . 17, 18, 20

*Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Erie R.R. v. Tompkins*, 304 U.S. 64 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*General Elec. Co. v. Joiner*, 522 U.S. 136 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Gross v. Pirtle*, 116 F. App'x 189 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Heddendorf v. Goldfine* (*In re Heddendorf*), 263 F.2d 887 (1st Cir. 1959) . . . . . . . . . . . . . . . . 13

*Hoery v. United States*, 64 P.3d 214 (Colo. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Homeland Stores, Inc. v. Resolution Trust Corp.*, 17 F.3d 1269 (10th Cir.),
    *cert. denied*, 513 U.S. 928 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**TABLE OF AUTHORITIES (cont'd)**

**Page:**

**Cases (cont'd)**

*In re Hanford Nuclear Reservation Litig.*, 350 F. Supp. 2d 871 (E.D. Wash. 2004) . . . . . . . . 11

*In re TMI Metro. Edison Co.*, 67 F.3d 1119 (3d Cir. 1995),
    *cert. denied*, 517 U.S. 1163 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Isbill Assoc., Inc. v. City & County of Denver*, 666 P.2d 1117 (Colo. App. 1983) . . . . . . . . . . 27

*James v. Coors Brewing Co.*, 73 F. Supp. 2d 1250 (D. Colo. 1999) . . . . . . . . . . . . . . . . . . . . . 30

*Jordan v. Pugh*, 425 F.3d 820 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 20

*Lowell Staats Mining Co. v. Pioneer Uravan, Inc.*, 878 F.2d 1259 (10th Cir. 1989) . . . . . . 27-28

*Marquez v. City of Albuquerque*, 399 F.3d 1216 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 7

*McKibben v. Chubb*, 840 F.2d 1525 (10th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Mesa Sand & Gravel Co. v. Landfill, Inc.*, 776 P.2d 362 (Colo. 1989) . . . . . . . . . . . . . . . . . . . . 28

*Miller v. Carnation Co.*, 564 P.2d 127 (Colo. App. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Okla. Tpk. Auth. v. Bruner*, 259 F.3d 1236 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Old Republic Ins. Co. v. Durango Air Serv., Inc.*, 283 F.3d 1222 (10th Cir. 2002) . . . . . . . . . . 17

*Paper Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285 (10th Cir. 2005) . . . . . . . . . . . 9

*Parks v. Pavkovic*, 753 F.2d 1397 (7th Cir.),
    *cert. denied*, 473 U.S. 906 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Richardson Elecs., Ltd. v. Panache Broad. of Pa., Inc.*, 202 F.3d 957 (7th Cir. 2000) . . . . . . . 10

*Rodriguez v. Schutt*, 914 P.2d 921 (Colo. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**TABLE OF AUTHORITIES (cont'd)**

**Page:**

**Cases (cont'd)**

*Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427 (1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Shawnee Tribe v. United States*, 423 F.3d 1204 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 31

*Silkwood v. Kerr-McGee Corp.*, 667 F.2d 908 (10th Cir. 1981),
   *aff'd in part & rev'd in part*, 464 U.S. 238 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Sprung v. Adcock*, 903 P.2d 1224 (Colo. App. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Stevens v. Humana of Delaware, Inc.*, 832 P.2d 1076 (Colo. App. 1992) . . . . . . . . . . . . . . . . . 28

*Stockman's Water Co., LLC v. Vaca Partners, L.P.*, 425 F.3d 1263 (10th Cir. 2005) . . . . . 17, 18

*Strey v. Hunt Int'l Res. Corp.*, 696 F.2d 87 (10th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . 18, 21-22

*Strey v. Hunt Int'l Res. Corp.*, 749 F.2d 1437 (10th Cir. 1984),
   *cert. denied*, 479 U.S. 870 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Swint v. Chambers County Comm'n*, 514 U.S. 35 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Transpower Constructors v. Grand River Dam Auth.*, 905 F.2d 1413 (10th Cir. 1990) . . . . . . . 30

*United Bank of Pueblo v. Hartford Accident & Indem. Co.*, 529 F.2d 490 (10th Cir. 1976) . . . 20

*United States v. Stanley*, 483 U.S. 669 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Utah ex rel. Utah State Dep't of Health v. Kennecott Corp.*, 14 F.3d 1489 (10th Cir.),
   *cert. denied*, 513 U.S. 872 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Webco Indus. v. Thermatool Corp.*, 278 F.3d 1120 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . 27

*Wilson v. Merrell Dow Pharms.*, 20 F.3d 379 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## TABLE OF AUTHORITIES (cont'd)

**Page:**

### Statutes and Rules

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15, 16

28 U.S.C. § 1292(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. § 1961 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

42 U.S.C. § 2014(hh) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 30

28 U.S.C. § 2111 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

42 U.S.C. § 2210(s) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Civ. P. 23(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fed. R. Civ. P. 54(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 54(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 21-22

Fed. R. Civ. P. 58(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Fed. R. Evid. 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Colo. Const. art. X, § 3(1)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

C.R.S. § 5-12-102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

C.R.S. § 13-21-101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28, 31

C.R.S. § 13-21-102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30

### Other Authorities

*Manual for Complex Litigation* (*Fourth*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24, 26

*Restatement* (*Second*) *of Torts* § 930 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 19-20

# I. INTRODUCTION

Pursuant to Fed. R. Civ. P. 54(b), plaintiffs respectfully move for entry of judgment on the jury's special verdict.

# II. OVERVIEW

Following the trial of the class claims, the Court invited the parties to state their views on the best method by which to put this case in a posture for appeal. In this motion, plaintiffs propose that final judgment be entered on the class claims under Fed. R. Civ. P. 54(b). That is the only method, plaintiffs believe, by which to insure full and prompt appellate review, and the only approach that will avoid piecemeal appellate proceedings and unnecessary delay. Any other course is more likely to frustrate than to promote what should be everyone's goal: the orderly progress of this case toward final resolution.

After a brief recital of relevant procedural history, plaintiffs will begin by explaining why certification of "interlocutory" appeals under 28 U.S.C. § 1292(b) would likely prove impracticable. Plaintiffs will then turn to a showing that entry of final judgment under Rule 54(b) is permissible and appropriate. Specifically, plaintiffs propose a plan under which the Court: (a) adopts a workable plan of allocation, proposed by plaintiffs, that would supply a formula on which eventual allocation of damages to class members would be based (*see* Ex. F); (b) enters judgment on the jury's damage award (*see* Ex. H); (c) stays proceedings on attorneys' fees and expenses pending defendants' appeal; and (d) stays execution pending filing of the appeal as well. Plaintiffs conclude with a discussion of the proposed form of judgment that plaintiffs tender with this motion.

### III. PROCEDURAL BACKGROUND

In 2003, during the extensive pre-trial preparations in this matter, the Court offered a

preliminary indication of its plans for post-verdict proceedings:

> If class-wide liability and damages are found by the jury, the court will then, with the assistance of counsel, determine appropriate principles and procedures for distributing the compensatory and any exemplary damages awarded. These principles and procedures will address, at a minimum, the division of damages among Property Class members, the disposition of any unclaimed funds and the measure and method of payment of attorney fees due to class counsel. *See Strey v. Hunt Int'l Res. Corp.*, 696 F.2d 87 (10th Cir. 1982) (identifying these as necessary elements to final judgment based on jury's class-wide damage award); *see generally* Conte and Newberg §§ 10:12-10:25.

*Cook v. Rockwell Int'l Corp.*, 273 F. Supp. 2d 1175, 1212 (D. Colo. 2003) ("*Cook IX*").  At a post-

trial conference on February 17, 2006, the Court offered the following additional remarks on the

subject:

> . . . I think it would be inefficient to proceed to the damages allocation phase of this action before the parties have had the opportunity to appeal any matters that might affect the fact or amount of the damages awarded by the jury.  Accordingly, I am inclined – and I want to hear from counsel about my inclination – to take whatever steps are necessary to give the parties the opportunity to appeal these matters before proceeding to the allocation of damages.
>
> In that regard I am not sure whether this can be accomplished by entering final judgment on the jury's verdict or whether 28 U.S.C. Section 1292(b) will have to be invoked.  I want counsel to comment on this matter.

*See* Tr. (2/17/06) at 10821.

At the February 17 conference, defendants stated their view, in which plaintiffs concur, that

the choice between entry of final judgment, on the one hand, versus interlocutory appeal under 28

U.S.C. § 1292(b), on the other, represents an important "fork in the road" that carries substantial

implications for the path of further proceedings.  *See* Tr. (2/15/06) at 10827.  Plaintiffs file this

motion in the hope it will assist in that choice.  Plaintiffs recognize that before any appellate

proceedings are commenced, the Court will first be completing its work on certain pending opinions in this matter.  The Court has indicated, however, that it would be receptive to hearing the parties' views in the interim.  *Id.* at 10830-31.

## IV. ARGUMENT

**A.**  **Entry of Final Judgment Is Preferable to Certification Under 28 U.S.C. § 1292(b).**

Several considerations deserve weight in the choice between entry of final judgment and certification under section 1292(b).  They include: (1) the interests of class members, after sixteen years of litigation, in securing payment of their damages at the earliest practicable time, given the desirability of appellate review prior to distribution of those damages; (2) the interests of the Court and the parties in eventually reaching a final resolution of the class claims; and (3) the interests of the appellate courts in efficient appellate proceedings and avoidance of piecemeal review.  Although it probably should not carry dispositive weight in the Court's decision, another also factor warrants mention: (4) the public interest in prompt resolution of these claims, so that demands on the public fisc, including accrual of pre- and post-judgment interest, will not continue to mount.

For reasons explained later in this memorandum (pages 15-23), plaintiffs believe that entry of judgment under Rule 54(b) is a  proper and permissible vehicle for furthering the goals just recited.  Before turning to that issue, however, plaintiffs wish to state their reasons for believing that entry of final judgment is by far the superior method for achieving those goals.  The alternative of certification under section 1292(b) will not permit the level of full appellate review that is needed to move this case toward final resolution.  We explain below.

1.      **Reliance on Section 1292(b) Would Involve Significant Uncertainties and Disadvantages.**

In this section, plaintiffs first set forth the familiar criteria for certification under section 1292(b), and some of the policies those criteria embody, before then turning to a practical evaluation of the potential for securing full appellate review through section 1292(b) in the current procedural posture of this case.

a.      **Criteria for Certifiability Under Section 1292(b)**

The general rule in the federal courts is that appeals may be taken only from final judgments under 28 U.S.C. § 1291.  The policies supporting the final judgment rule include: (1) avoiding interference with trial proceedings; (2) avoiding cost and burden to litigants caused by piecemeal appeals; and (3) promoting efficient judicial administration. *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981).

In recognition of the need, notwithstanding those policies, for appellate review of certain nonfinal orders, Congress enacted the Interlocutory Appeals Act of 1958. *See* 28 U.S.C. § 1292(b). In doing so, however, Congress carefully confined the availability of appellate review under the Act. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 474 (1978).  Section 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

Several conditions, in short, must be satisfied before a district court may certify a nonfinal order for appeal under section 1292(b). First, the order must involve a "question of law." Second, that question of law must be "controlling." Third, there must be "substantial ground for difference of opinion" on that controlling question of law. And fourth, the court must certify that immediate appeal from the order may "advance the ultimate termination of the litigation."

### b.      Three Scenarios for Appellate Review Under Section 1292(b)

Plaintiffs can envision three potential approaches to securing appellate review under section 1292(b) at this stage of the proceedings. First, an attempt might be made to certify all of the numerous individual orders and rulings by this Court (whether issued before, during, or after trial) that might form the eventual subject of appellate review. Second, some smaller subset of those rulings might be certified, in the hope that the Tenth Circuit would exercise pendent appellate jurisdiction over the rest. Third, the goal of seeking full appellate review at this stage might simply be abandoned, in favor of immediate appellate review on some narrower range of purely legal issues.

Plaintiffs are skeptical that any practicable method can be found to obtain full appellate review under the first two approaches. The third approach would result in multiple and piecemeal appeals, delaying rather than expediting the ultimate termination of this litigation. We consider each approach, in turn, below.

### (i)      Certification of All Relevant Rulings

If appellate review is desired for *all* pertinent rulings by this Court (whether issued before, during, or after trial), then the most straightforward approach might be to certify all such rulings for appeal under section 1292(b), one by one. Unfortunately, even if the obvious practical difficulties

of such an undertaking are left to one side, it is doubtful that every ruling of interest could independently satisfy the criteria for certifiability in section 1292(b).

To be sure, some of the Court's rulings might fairly be said to have involved "a controlling question of law." Defendants have contended, for example, that the 1988 amendments to the Price-Anderson Act operate to bar punitive damages in this case, even for nuclear incidents predating their enactment. *See Cook IX*, 273 F. Supp. 2d at 1211-12. That is indeed a legal question, and its answer controls the availability of exemplary damages. It might even be regarded as a question on which there is "substantial ground for difference of opinion," at least in the weak sense that no known Supreme Court or Tenth Circuit authority directly addresses it.

Other legal rulings by the Court, however, have simply applied a substantial body of settled and governing authority. *See, e.g.,* Tr. (1/25/06) at 10731-33 (denying "Defendants' Motion Regarding the Jury's Note with Respect to Jury Verdict Question 2, and Request That, If the Court Is to Provide a New Definition of 'Intentionally' Based on the Colorado Supreme Court's Decision in *Hoery*, It Provide a Definition That Comes Verbatim from *Hoery*" [Ct. Rec. 2050]). Defendants should not be armed on appeal with a certification from this Court attesting to "substantial ground for difference of opinion" on the Court's rulings, if that certification would not be accurate. In numerous instances, the existence of any such "substantial ground" is subject to substantial doubt.

Still other orders by the Court have not depended on any substantive "question of law" at all, controlling or otherwise. This is particularly true of the Court's many evidentiary rulings, not only during trial, but also in connection with the parties' pretrial motions in limine and under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993). Admittedly, some of the Court's evidentiary decisions do implicate substantive legal issues – for example, the Court's

rejection of defendants' "fit" objection to plaintiffs' expert testimony on damages, based on defendants' "before-and-after" theory of the governing damage measure. Many if not most of the Court's evidentiary rulings, however, have more centrally depended on the exercise of the Court's judgment and discretion, in balancing the probative value of the evidence against the risk of prejudice, confusion, and delay. The only "questions of law" regarding such rulings might be whether the Court abused its discretion, and whether any error was harmless. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 141-42 (1997) (evidentiary rulings reviewed for abuse of discretion); *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005) (same); 28 U.S.C. § 2111 (harmless error).

Those are not the type of legal uncertainties that section 1292(b) was designed to resolve, and section 1292(b) is not commonly used to resolve them. *See generally Ahrenholz v. Bd. of Trustees*, 219 F.3d 674, 675-77 (7th Cir. 2000) (Posner, J.). Since the issuance of the Supreme Court's *Daubert* decision in 1993, for example, over a thousand federal appellate opinions have addressed issues involving the admissibility of expert evidence. Of those, plaintiffs have been unable to locate *any* appellate decision, published or not, in which a district court's *Daubert* ruling was certified and accepted for interlocutory review under section 1292(b).[1] If any do exist, they are distinct rarities.

---

[1] The closest thing to an exception uncovered in plaintiffs' research is *Wilson v. Merrell Dow Pharms.*, 20 F.3d 379 (10th Cir. 1994), in which the Tenth Circuit accepted a district court's certification for interlocutory appeal from an order denying summary judgment that also implicated subsidiary issues of admissibility. The Court of Appeals did not reach the merits in that appeal, instead remanding for further proceedings in light of the Supreme Court's intervening decision in *Daubert*.

In sum, there are substantial grounds to doubt that every order or ruling subject to eventual appellate review would independently satisfy the criteria for certifiability under section 1292(b). Evidentiary rulings, in particular, commonly do not depend on unsettled questions of law, but rather involve striking a discretionary and pragmatic balance between competing factors.

### (ii)   Pendent Appellate Jurisdiction

It might be hoped that the Tenth Circuit could give this case full appellate review even if not every pertinent order and ruling by the Court were certified.  It might be hoped, that is, that if the Court of Appeals accepts appellate jurisdiction over enough uncontroversially certifiable orders and rulings, the certified issues might reach some critical mass and exert a kind of gravitational tug that would capture other, uncertified issues within the orbit of the Tenth Circuit's pendent appellate jurisdiction.

The truth, however, is that reliance on pendent appellate jurisdiction would be problematic at best.  The Supreme Court has been careful to cabin the scope of pendent appellate jurisdiction, lest it balloon to proportions that would subvert statutory limitations on interlocutory appellate review.  *See, e.g., Swint v. Chambers County Comm'n*, 514 U.S. 35, 43-51 (1995).  In the specific context of section 1292(b), the Supreme Court *has* made it clear, at least, that appellate jurisdiction extends not just to the "controlling questions" listed in the district court's certification, but also to issues arising in appellate review of the certified *order*.  The Supreme Court has been equally clear, however, that appellate jurisdiction extends *only* to the certified order, and not to other orders:

> An appeal under this statute is from the *certified order*, not from any other orders that may have been entered in the case. Even if the Court of Appeals' jurisdiction is not confined to the precise question certified by the lower court (because the statute brings the "order," not the question, before the court), that jurisdiction *is* confined to the particular order appealed from. Commentators and courts have consistently observed that "the scope of the issues open to the court of appeals is closely limited

to the order appealed from [and] the court of appeals will not consider matters that were ruled upon in other orders." 16 C. Wright, A. Miller, E. Cooper, & E. Gressman, Federal Practice and Procedure § 3929, p. 143 (1977).

*United States v. Stanley*, 483 U.S. 669, 677 (1987) (emphasis in original). The Tenth Circuit has applied the rule in *Stanley* consistently and conscientiously. *See, e.g., Paper Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1291-92 (10th Cir. 2005) ("it appears that the correct test for determining if an issue is appropriate for interlocutory review is (1) whether that issue was raised in the certified order; and (2) whether the issue can *control* the disposition of the order") (emphasis added); *Homeland Stores, Inc. v. Resolution Trust Corp.*, 17 F.3d 1269, 1271-72 (10th Cir.) ("Homeland contends that, because the certified order *discussed* the question of injunctive relief along with the question of federal jurisdiction, we can and should address the injunctive relief issue in this appeal. We disagree.") (emphasis added), *cert. denied*, 513 U.S. 928 (1994).

It may be unrealistic, in short, to expect that some subset of the Court's rulings can readily be found that would sustain appellate jurisdiction on all other material issues, or even on most.

**(iii)      Piecemeal Appellate Review**

A third approach would be to certify only a few designated legal issues under section 1292(b), deferring appellate review of all remaining issues to some future occasion. Such an approach, however, would more likely delay than speed the ultimate resolution of the claims, because it would almost certainly result in multiple, serial appeals.

Let us be clear. Plaintiffs believe there is no material issue on which defendants' appellate prospects are good. Suppose, however, for argument's sake, that defendants were to identify several rulings that they considered their best candidates for reversal. To judge from past filings, defendants' list might include, for example, the Court's rulings on exemplary damages, the statute

of limitations, regulatory standards, the governing damage measure, and perhaps class certification.[2] Suppose further that appeals from these rulings were certified and accepted. Suppose, finally, that defendants were to prevail in the Tenth Circuit, in whole or in part, on every issue just listed (a supposition, to repeat, that tests plaintiffs' powers to suspend disbelief).

Even on those assumptions, substantial further proceedings in this Court would almost certainly be necessary. If the Tenth Circuit were to hold that the Price-Anderson Act bars punitive damages under the circumstances of this case, those damages could simply be deducted from plaintiffs' award. But if it also held that a statute-of-limitations defense should be available to Dow on the class claims, some sort of further trial would be necessary to address that issue. If the Tenth Circuit ruled that regulatory standards supply the governing duty of care, or that Colorado would follow some different damage measure, then further proceedings on those issues would be needed as well.

In short, even if defendants enjoyed remarkable appellate success with some selected list of certified issues, it would not likely result in the termination of the litigation. Substantial further proceedings would be required in this Court. That much would be true, of course, under any scenario involving reversal, even on appeal under Rule 54(b). But in the piecemeal approach to appellate review under discussion, those further proceedings would have to occur without any appellate guidance on the Court's remaining, uncertified rulings – and, indeed, under the cloud of their potential future reversal, on later appeal from an eventual final judgment.

---

[2] It remains an unsettled question whether the 1998 adoption of Fed. R. Civ. P. 23(f) abrogated the appealability of class certification orders pursuant to section 1292(b). *See Richardson Elecs., Ltd. v. Panache Broad. of Pa., Inc.*, 202 F.3d 957, 957-59 (7th Cir. 2000) (Posner, J.). There appears to be no Tenth Circuit authority on the issue.

Even that much progress could be made only if defendants enjoyed a very substantial appellate hitting streak. The contrary assumption is more realistic. Other courts have confirmed that the ban on punitive damages adopted in the 1988 amendments to the Price-Anderson Act[3] does not apply retroactively.[4] The Court's ruling on the statute of limitations was based on a sound and well-reasoned interpretation of the Colorado Supreme Court's decision in *Hoery v. United States*, 64 P.3d 214 (Colo. 2003). Plaintiffs know of no authority casting the slightest doubt on the proposition that the courts of Colorado would follow *Restatement* (*Second*) *of Torts* § 930. And even those who may differ with the Court's opinion on regulatory standards in *Cook IX* must acknowledge that its reversal would be an uphill battle, in light of the analytical force of the opinion's preemption discussion[5] – to say nothing of its solid foundations in Supreme Court and Tenth Circuit authority.[6] Finally, the Court devoted unusual care to structuring the class trial, in a series of thoughtful decisions that exemplify the sound exercise of judicial discretion, not its abuse.[7]

---

[3] *See* 42 U.S.C. § 2210(s).

[4] *See, e.g., In re TMI Metro. Edison Co.*, 67 F.3d 1119, 1124 (3d Cir. 1995), *cert. denied*, 517 U.S. 1163 (1996).

[5] *See In re Hanford Nuclear Reservation Litig.*, 350 F. Supp. 2d 871, 884-87 (E.D. Wash. 2004) (following this Court's "scholarly" and "comprehensive" opinion).

[6] *See Silkwood v. Kerr-McGee Corp.*, 667 F.2d 908, 921 (10th Cir. 1981), *aff'd in part & rev'd in part on other grounds*, 464 U.S. 238 (1984).

[7] *See Boughton v. Cotter Corp.*, 65 F.3d 823, 828 (10th Cir. 1995) ("Whether, on balance, individual issues predominated over common issues and whether the advantages of a class action outweighed the potential problems such as case manageability and jury confusion of multiple issues are determinations that are generally best left to the trial court.").

In sum, much as defendants might wish to envision scenarios in which this Court's legal rulings are reversed, it is also appropriate to plan proceedings with an eye toward their potential affirmance. Even if selective certified appeals resulted in reversal on some legal issues, the ultimate appellate disposition of others would remain just as much in suspense, pending a second round of appeals, as before the first appeals were taken. In the event of affirmance, meanwhile, the Court and the parties would be precisely *no* further along, in their progress toward satisfying the conditions for entry of judgment, than they already are. The only net effect would be that the case had been consigned to the very sort of piecemeal appellate review and judicial inefficiencies that the final judgment rule and section 1292(b) are in place to prevent.

### c.    Further Practical Considerations

Three additional, practical considerations involving certification under section 1292(b) warrant some discussion. All three militate in favor of finding a better approach.

First, under all three scenarios just considered, it would be necessary to identify and select the rulings and orders to be certified. Under the first scenario (certification of all rulings), this would mean combing not only the trial transcript, but also the entire pre- and post-trial history of this litigation, for orders subject to potential challenge on appeal. Under the second scenario, it would also mean choosing some subset conducive to supporting pendent appellate jurisdiction over uncertified legal issues and rulings (if any such subset could indeed be found). Under all three scenarios, further proceedings would be required, before any appeal could be taken, in which the parties negotiated or litigated their differences over just which rulings could and/or should be certified. Those proceedings could well embroil the Court and the parties in a lengthy and difficult phase of proceedings whose ultimate efficacy would remain, all the while, in doubt.

*Plaintiffs' Memorandum in Support of Motion for Entry of Judgment – Page 12*

Second, and relatedly, it has largely been assumed, in the discussion up to this point, that the Tenth Circuit would *accept* jurisdiction over whatever orders this Court might ultimately certify. Plaintiffs recognize that upon acquainting itself with the history and posture of this case, the Tenth Circuit might bend its will to the purpose of facilitating prompt appellate review, to the extent the law permits. All the same, the Tenth Circuit does have discretion to refuse appeals under section 1292(b), and that discretion is not a dead letter.

It will be recalled, for example, that in 1998, at defendants' behest, the Court certified for interlocutory appeal several rulings from its decision in *Cook v. Rockwell Int'l Corp.*, 181 F.R.D. 473 (D. Colo. 1998). The certified rulings involved a number of the same legal issues that defendants presumably would seek to raise on appeal today. *See* Order Amending Memorandum Opinion and Order on Pending Motions to Certify Certain Issues for Interlocutory Appeal, Staying All Proceedings, and Deferring Ruling on Motion for Approval of Revised Class Notices (Aug. 27, 1998) [Ct. Rec. 1046] (Ex. A).

The Tenth Circuit declined the appeals. *See Cook v. Rockwell Int'l Corp.*, Nos. 98-533 & 98-534 (10th Cir. Oct. 8, 1998) (order denying petitions for interlocutory appeal) (Brorby & Murphy, JJ.) (Ex. B). In its order, the Court of Appeals said:

> The avoidance of "wasted trial court time is the sole purpose of § 1292(b)." *Utah ex rel. Utah State Dep't of Health v. Kennecott Corp.*, 14 F.3d 1489, 1495 (10th Cir. 1994) (citation omitted) [*cert. denied*, 513 U.S. 872 (1994)]. The court of appeals may, in its discretion, permit an appeal to be taken from an order which the district court certifies as "involv[ing] a controlling question of law as to which there is substantial ground for difference of opinion" and states that an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The statutory criteria that guide the district court do not directly apply to the court of appeals, but they serve to inform the court in deciding whether to accept a properly certified appeal. *See Heddendorf v. Goldfine* (*In re Heddendorf*), 263 F.2d 887, 889 (1st Cir. 1959).

> Upon review of the petitions for leave to appeal filed by plaintiffs, in case No. 98-533, and by defendants, in case No. 98-534, we determine that interlocutory appeal is not warranted.  Therefore, the petitions are denied.

*Id.* at 2-3 (emphasis added).  If the Court of Appeals was not of the view in 1998 that immediate appeals were warranted, in a *pre-trial* context, to avoid "wasted trial court time," it is not a foregone conclusion that its assessment, in the *post-trial* setting of 2006, would be any different.

Third, given the substantial possibility, even if the appeals are accepted, that certification under section 1292(b) will not, in fact, "materially advance the ultimate termination of the litigation," it is reasonable to consider how long the section 1292(b) process might take.  Attached as Exhibit C is a table giving the duration of appellate proceedings for the last ten decisions in which the Tenth Circuit has accepted jurisdiction under section 1292(b).  For each decision, the table gives the date of the first appellate docket entry, the date on which the appellate mandate issued, and (if applicable) the date on which a petition for certiorari was denied.[8]  The duration of appellate proceedings in these cases averaged about 1.7 years, ranging from a low of about eight months, in one case, to a high of about twenty-six months, in two others.  It is reasonable to conclude that appellate proceedings in any section 1292(b) appeals in this case, even if commenced immediately, would last at least until mid-2008.  Tens of millions of dollars in pre-judgment interest would accrue in the interim, at public expense.[9]

It is a lot of time and money to spend, on a very uncertain result.

---

[8] The information in the table is based on Tenth Circuit docket reports retrieved via Pacer, which are collected in Exhibit D.

[9] Pre- and post-judgment interest are addressed later in this memorandum, at pages 27-31.

**2.      Entry of Judgment Under Rule 54(b) Is Appropriate and Permissible.**

Certification of final judgment under Rule 54(b) would also be attended by some modest uncertainties. Those uncertainties, however, are fewer in number, and of far more manageable proportions, than with appeal under section 1292(b). Meanwhile, if entry of final judgment is indeed permissible, it would plainly have one compelling advantage. Appeal from final judgment would guarantee final disposition by the Tenth Circuit, in a single round of appellate proceedings, of *all* claimed errors that defendants may ever wish to raise in connection with the class trial and verdict. Defendants, in other words, would be required to speak or hold their peace. If the judgment were affirmed, it would then be possible to proceed on remand with disbursement of funds to class members, without concern that the jury's award might later be undone in any subsequent appeal.

Plaintiffs believe that the requirements of Rule 54(b) and section 1291 can be satisfied in the circumstances presented. To accomplish this, the Court should: (a) approve the plan of allocation submitted in conjunction with this motion; (b) make the findings required under Rule 54(b); (c) enter judgment in the form submitted in conjunction with this motion; (d) stay enforcement of the judgment pending perfection of defendants' appeal, if any; and (e) stay proceedings on attorneys' fees and expenses, pursuant to Fed. R. Civ. P. 54(d)(2)(B), until remand from proceedings in the Tenth Circuit.

Before turning to the details of this plan, plaintiffs will first address the general legal requirements for entry of judgment under Rule 54(b) and discuss two questions that could arise concerning its availability.

### a.    Standards for Entry of Judgment Under Rule 54(b)

Rule 54(b) provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for entry of judgment.

The evolution of Rule 54(b) is helpfully chronicled in *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427 (1956). Subject to certain exceptions, the general rule, both before and after Rule 54(b)'s adoption, has long been that appellate review may be had only of "final decisions" under 28 U.S.C. § 1291. Prior to the 1939 adoption of the *Federal Rules of Civil Procedure*, a "final decision" generally meant final resolution of all claims by all parties in the case. There was simply "no authority for treating anything less than the whole case as a judicial unit for purposes of appeal." *Mackey*, 351 U.S. at 432. Such an approach was workable enough, perhaps, in a legal system that generally dealt with cases and controversies far simpler than the complex, multi-party litigation common today. *Id.*

With the advent of the *Federal Rules of Civil Procedure*, however, came an increased opportunity for the liberal joinder of claims. "This, in turn, demonstrated a need for relaxing the restrictions upon what should be treated as a judicial unit for purposes of appellate jurisdiction." *Mackey*, 351 U.S. at 432. Rule 54(b) was promulgated to meet that "demonstrated need for flexibility." *Id.* at 436.

Under Rule 54(b), the district court serves as a "dispatcher." *Id.* It is for the district court, in light of its familiarity with the record, to determine, in the first instance, whether a "claim for relief" has been adjudicated that is sufficiently separable from other claims in the case to be certified

for final judgment and immediate appellate review.  *See Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7-8 (1980).  The district courts may not certify judgments that are not, in fact, final, but "substantial deference" is owed, on appeal, to the district court's exercise of its sound discretion, which is measured against the standard of "sound judicial administration."  *Id.* at 10.

The Tenth Circuit has recently emphasized one limit on the district courts' discretion.  A Rule 54(b) certification, the Court of Appeals has said, *must* make two separate and express determinations: that the judgment is indeed final, and that no just reason for delay in entry of judgment exists.  *Stockman's Water Co., LLC v. Vaca Partners, L.P.*, 425 F.3d 1263, 1265 (10th Cir. 2005).  Certifying district courts should also "'clearly articulate their reasons and make careful statements based on the record supporting their determination of "finality" and "no just reason for delay" so that [the Court of Appeals] can review a 54(b) order more intelligently and thus avoid jurisdictional remands.'"  *Id.* (quoting *Old Republic Ins. Co. v. Durango Air Serv., Inc.*, 283 F.3d 1222, 1225 n.5 (10th Cir. 2002)).[10]

---

[10] Tenth Circuit authorities reflect some indecision over the proper standard of appellate review for Rule 54(b) certifications.  In *Okla. Tpk. Auth. v. Bruner*, 259 F.3d 1236, 1242 (10th Cir. 2001), the court followed a "two-tiered" standard, subjecting the district court's "finality" determination to de novo review, and its "no just reason for delay" determination to review for abuse of discretion.  A similar formula was articulated in *Jordan v. Pugh*, 425 F.3d 820, 827 (10th Cir. 2005).  In other decisions, however, the Tenth Circuit has seemingly reviewed both determinations under an "abuse of discretion" standard.  *E.g.*, *McKibben v. Chubb*, 840 F.2d 1525, 1528-29 (10th Cir. 1988).  In still other cases, the Court of Appeals has taken direct or oblique notice of both distinct lines of internal circuit authority, while finding it unnecessary to resolve the issue, *e.g., Gross v. Pirtle*, 116 F. App'x 189, 194 & n.6 (10th Cir. 2004) (concluding that certification was sound under either standard) (unpublished decision attached as Ex. E), or in the course of following some different test still, *e.g., Stockman's Water Co.*, 425 F.3d at 1265-66 & n.1 (following a "clearly erroneous" standard while noting two-tiered approach in *Oklahoma Turnpike*).

In this case, the absence of just reason for delay should be uncontroversial.  Two concerns might arise, however, about finality.  First, it might be questioned whether any "claim for relief" has been adjudicated to finality, because the verdict in the class trial did not address damages sustained by individual class members prior to the time when the injurious situation became "complete and comparatively enduring" ("CCE").  Second, as the Court has noted previously, *see Cook IX*, 273 F. Supp. 2d at 1212, the decision in *Strey v. Hunt Int'l Res. Corp.*, 696 F.2d 87 (10th Cir. 1982), may require that some additional steps be taken before judgment may be entered.  Plaintiffs will address both issues in turn.

> **b.      The Verdict Completely and Finally Resolved a Distinct "Claim for Relief."**

The Tenth Circuit has said "there is no bright-line rule to distinguish multiple claims, which may be appealed separately, from multiple legal grounds in a single claim, which may not."  *Jordan v. Pugh*, 425 F.3d 820, 827 (10th Cir. 2005).  The distinction "is based largely on practical concerns, particularly the question whether a subsequent appeal of the claims before the district court will require the court of appeals to revisit the same issues decided in the first appeal."  *Id.; accord, e.g.*, *Curtiss-Wright*, 446 U.S. at 8 ("whether the nature of the claims already determined [is] such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals"); *Stockman's Water Co.*, 425 F.3d at 1265 (same).  In evaluating whether the same ground will need to be covered in subsequent appeals, factors to consider include the factual and legal overlap between the resolved and unresolved claims, and whether they involve separate relief.  *E.g.*, *Jordan*, 425 F.3d at 827.

Certification under Rule 54(b) would satisfy those standards in this case.

For two reasons, issues resolved on appeal from the class verdict would not need to be revisited in any later appeals from decisions on class members' individual, pre-CCE claims.  The first reason flows from the way in which the Court has structured these proceedings, through a class trial on common issues (as opposed, say, to bellwether proceedings).  As a result of that structure, the parties to the class trial comprise the entire universe of potential parties to any later proceedings in this action.  In consequence, issues of fact decided by the first jury, in the class trial, are settled, and not open to relitigation, for purposes of any later individual proceedings.  So too, any legal rulings in the first appeal, from the class verdict, will be binding, as the law of the case, on all potential parties to any subsequent appeals involving individual class members' claims.

Second, the claims tried in the class trial, for post-CCE harms attributable to future invasions under section 930, are, in fact, *distinct claims* from those for past, pre-CCE invasions.  The claims are for harms occurring in different, nonoverlapping time periods.  *See Restatement* § 930(3) (pre- versus post-CCE harms); *id.* comment d (same); *id.* illus. 1 (same).  They seek nonduplicative relief, under different damage measures, for different losses.  *See id.* § 930(3) (differing damage measures); *id.* comment d ("Manifestly, this element of depreciation [to compensate for prospective invasions] is distinct from the loss in value brought by the actual effects of past invasions . . . ."); *id.* illus. 1 (lost pre-CCE profits versus post-CCE diminution in value).  Recovery for future invasions even requires proof of different elements (e.g., indefinite continuance, and the complete and comparatively enduring character of the invasions).  And according to section 930, a  favorable judgment in a claim for future harms also carries different res judicata consequences.  *See id.* comment b (easement).

So distinct, indeed, are the two claims, that claims for future harm under section 930 are made available, in the first place, as an *elective substitute* for a series of successive lawsuits, seeking serial recoveries for actual harms suffered in successive time periods. *See id.* comment b. Accordingly, the language of section 930 commits to the lawndowner's election (and the courts' discretion) the choice whether recovery for future invasions will even be pursued in the *same action* as claims arising from past harms. *Id.* §§ 930(1) & 930(2). By direct implication, the claims could be brought in separate civil actions altogether – and may be severed, within the limits of sound judicial discretion, if brought in a single one.[11]

The class trial, in other words, completely resolved one discrete "claim for relief" under Rule 54(b). As the Tenth Circuit expressed the matter in *Jordan*, the pre- and post-CCE claims are "multiple claims, that may be appealed separately," rather than "multiple legal grounds in a single claim, which may not." *See* 425 F.3d at 827. The considerations of "sound judicial administration" extolled by the Supreme Court in *Curtiss-Wright*, 446 U.S. at 10, meanwhile clamor for *full and prompt* appellate review. Entry of final judgment is, in fact, the only method by which to *prevent* multiple appeals, to say nothing of potentially wasteful proceedings in this Court. It is the surest method, by far, through which to speed the fair and final judicial resolution of these claims. *Cf. Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995).

---

[11] Indeed, the Court did sever the pre- and post-CCE claims for trial in this litigation, except for some common issues such as fault and generic emotional distress. Severability is one indicium that claims may appropriately be treated as distinct for purposes of Rule 54(b). *See United Bank of Pueblo v. Hartford Accident & Indem. Co.*, 529 F.2d 490, 492 (10th Cir. 1976) (district court severed claims for trial and commented that they were not similar except as to their factual basis).

### c.    The *Strey* Decision Is Not an Impediment to Finality.

In *Strey v. Hunt Int'l Res. Corp.*, 696 F.2d 87 (10th Cir. 1982), the Tenth Circuit declined appellate jurisdiction over a Rule 54(b) judgment, entered on the jury's verdict on claims by a class of sugar beet growers against the company that purchased their crops.[12]  The certified judgment did not provide "for the division of damages among the class members, for the disposition of any funds that go unclaimed by class members, and for the measure of attorney's fees to be assessed against the common fund."  *Id.* at 87.  The Court of Appeals held, in a five-paragraph opinion,[13] that the class claims "will not be the subject of a final decision, and therefore will not be appealable, until the district court establishes both the formula that will determine the division of damages among class members and the principles that will guide the disposition of any unclaimed funds."  *Id.* at 88.

To the extent that the the absence of provision for attorneys' fees was one basis for the *Strey* court's ruling of nonfinality, the holding in *Strey* has been superseded by the 1993 amendments to Fed. R. Civ. P. 54.  Under Rule 54(d)(2), disposition of claims for attorneys' fees and nontaxable expenses to be recovered from a common fund is not a prerequisite to entry of judgment.  Rather, such claims must now be made by motion within fourteen days *after* entry of judgment, unless the district court sets a different time, as Rule 54(d)(2) permits.  *See also* Fed. R. Civ. P. 54, Advisory

---

[12]   *See Strey v. Hunt Int'l Res. Corp.*, 749 F.2d 1437, 1438-39 (10th Cir. 1984) (describing claims in subsequent appellate opinion), *cert. denied*, 479 U.S. 870 (1986).

[13] Plaintiffs recognize that *Strey* is a published Tenth Circuit opinion that has not been overruled in any subsequent Tenth Circuit decision and which this Court therefore is not free to disregard.  Plaintiffs note, however, that *Strey* panel's decision may have been driven, in part, by its desire to remand for further proceedings on other issues.  *See* 696 F.2d at 88.

Committee Notes (1993 amendments to paragraph (d)(2)) (district courts may defer ruling on fees pending appeal).

As for allocation of damages and unclaimed funds, *Strey* does not prescribe that funds must actually be disbursed, or that awards to class members must be calculated at the individual level, before judgment may be entered.  For insight into what steps on the allocational front are unambiguously *sufficient* to support entry of judgment, it is helpful to consult the Supreme Court's decision in *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980), which the *Strey* panel cited with approval.  *See Strey*, 696 F.2d at 88.   In *Boeing*, it was enough that the district court determined the amount of the defendant's liability to the class as a whole, and established a formula that would guide eventual disbursement of damages, and allocation of fees and expenses, to class members. *Boeing*, 444 U.S. at 475-76; *see also Parks v. Pavkovic*, 753 F.2d 1397, 1401-02 (7th Cir.) (distinguishing *Strey* and upholding reviewability of aggregate damage award prior to calculation of individual awards) (Posner, J.), *cert. denied*, 473 U.S. 906 (1985).

In this case, where the jury has already determined the aggregate damages for which Dow and Rockwell are liable to the class under section 930, there is no judicial economy to be effected by awaiting the actual computation of individualized damage awards before appeal is taken.  As Judge Posner noted in *Parks*, such a computation is not costless, and it could be affected by appellate rulings.  *See* 753 F.2d at 1402.  It is wisest for an appellate court to ratify the size of the judgment before individual class member shares are computed.

Accordingly, the proposed plan of allocation submitted with this motion provides, as in *Boeing*, for a formula to guide allocation of damages among class members, as well their individual shares of fees and expenses – all in a manner consistent with the jury's verdict, the evidence

presented at trial, and basic principles of fairness and equity.  The plan also provides for reasonable disposition of any undisbursed funds.  Plaintiffs believe the plan is amply sufficient to support entry of judgment under *Boeing* and *Strey*.  In the next section, we detail its features.

**B.      Plaintiffs' Proposed Plan of Allocation**

Plaintiffs' Proposed Plan of Allocation is attached as Exhibit F.  Plaintiffs have prepared it with an eye toward satisfying requirements for finality of the judgment under *Strey*.   As just discussed, this is primarily a matter of describing the principles that will guide division of the award among class members.  Plaintiffs have also included certain very basic procedural and administrative provisions, to indicate how the process might unfold in practical terms.  Plaintiffs believe, however, that some of administrative and procedural details can and should be clarified after appellate proceedings, so that those details may be planned and refined with the benefit of any appellate guidance, at a time closer to actual disbursement of the funds.  Substantial guidance about some of the administrative and procedural practicalities, which also arise frequently in a settlement context, can meanwhile be found in *Manual for Complex Litigation* (*Fourth*) § 21.66, at 331-34 (West 2004).

To summarize plaintiffs' proposal, section A of the Plan of Allocation (*see* ¶ 1) defines certain terms, including terms of art to be used in calculating the allocation of damages.  Section B (*see* ¶ 2) provides for the appointment of a Claims Administrator.  Section C (*see* ¶¶ 3-7) outlines the duties and authority of the Claims Administrator, subject to later adjustment by the Court.

A primary duty of the Claims Administrator will be to recommend an allocation of damages based on the principles set forth in the Plan of Allocation (*see* ¶ 3).  Candidates for the position, therefore, should ideally possess suitable expertise in the collection and interpretation of real estate data, as well as the wherewithal to perform and document the relevant calculations.  Because

appellate review may take a year or more, and because the Claims Administrator would be able to accomplish only limited tasks in the interim, plaintiffs suggest that appointment of a Claims Administrator be deferred until after defendants' appeal is complete (*see* ¶¶ 2, 7).  At that or some other future time, the Court may wish to assign additional duties involving the claims process to the Claims Administrator, or to persons acting under supervision of the Claims Administrator and the Court (*see* ¶ 4).  Alternatively, the Court may wish to appoint other officers to handle at least some of those other tasks independently.  In any event, it is appropriate to make provision for the Claims Administrator to report periodically to the Court (*see* ¶ 5), and for his compensation and reimbursement of his expenses (*see* ¶ 6).  *See generally Manual for Complex Litigation* (*Fourth*) § 21.661, at 332-33.

Section D of the Plan of Allocation (*see* ¶¶ 8-11) sets forth substantive principles to guide the division of the award among class members.  The recommended allocation would be developed in several steps.  The Declaration of Wayne L. Hunsperger (Ex. G) attests that the proposed steps are feasible and reasonable.  Data from Jefferson County property records would first be canvassed to identify the properties and property-owners satisfying the class definition, and to sort them into the three relevant property categories (commercial, residential, and vacant) (*see* ¶ 8).  The total net award available for distribution in each property category would then be computed (*see* ¶ 9).  Individual properties in each category would then be assigned a percentage share of the total net award for that category, based on Jefferson County tax assessment data (*see* ¶¶ 10-11) .  Reliance on those data is appropriate for computing the relative values of class properties, because: (a) the data exist, are accessible, and are reliably maintained; (b) they represent valuation under a common

metric by a unitary, reliable, and neutral governmental authority;[14] and (c) their use would promote fairness and avoid the inefficiencies and transaction costs likely to be associated with any process based on individual private appraisals.

Section E (*see* ¶ 12) would establish appropriate procedures for preliminary and later final approval of the allocation, notice to class members, and an opportunity for class members to be heard before some appropriate judicial officer to contest their allocation.  As noted above, plaintiffs suggest that the detailed structure of such proceedings be developed after defendants' appeal, with the benefit of any appellate guidance that may emerge.

Section F (*see* ¶¶ 13-14) provides for distribution of unclaimed funds.  Plaintiffs propose they simply be distributed to other class members on a pro rata basis.  The net effect would be that any unclaimed funds would go toward making class members whole notwithstanding payment of attorneys' fees, expenses, and administrative costs from the common fund.  *See Boeing v. Van Gemert*, 444 U.S. at 477-82.  Plaintiffs do not expect any substantial fraction of funds to go unclaimed. The identities of class members are ascertainable from public property records.  Because individual awards will involve nontrivial sums, it would be cost-efficient to take additional steps to locate class members who may have moved, through the use of skip-tracing services, advertisements, the internet, and/or other, similar methods.

C.    **Plaintiffs' Proposed Form of Judgment**

Plaintiffs' proposed form of judgment is attached as Exhibit H.  Under Fed. R. Civ. P. 58(a), final judgment must be set forth on a separate document identified as such, but no particular form

---

[14] *See* Colo. Const. art. X, § 3(1)(a) (requiring uniformity of property tax levies upon all properties within the territorial limits of the taxing authority).

of judgment is prescribed.  Obviously the judgment must describe the parties with sufficient specificity to identify those bound by the decision.  As to the class, this can be accomplished by including a map of the class area and a suitable definition of class membership.[15]  As to defendants, the judgment should identify Rockwell's successors in interest following its 1996 merger with Boeing and subsequent restructurings and spinoffs.  Plaintiffs have raised the latter issue in discussions with defense counsel and will address it in a separate motion to add Rockwell's successors, to be filed imminently if agreement is not forthcoming in the interim.

The judgment should reflect compensatory damages, exemplary damages, and pre-judgment interest.  As to the compensatory damages of $176,850,340,  the judgment should provide that up to 90% may be recovered from Dow (based on its share of fault for the trespass claim), and up to 70% from Rockwell (based on its share of fault for the nuisance claim), with plaintiffs' total recovery obviously capped at 100%.  The judgment should also provide for pre-judgment interest on compensatory damages, at the rate of 9%, compounded annually from January 30, 1990, through the date of entry of judgment.  In addition, judgment should include the $110,800,000 in exemplary damages awarded against Dow, and the $89,400,000 in exemplary damages awarded against Rockwell.  Pre-judgment interest on the exemplary damages is not available under Colorado law for the time period prior to the jury's award, but should be awarded from and after February 14, 2006. We amplify below.

---

[15] The *Manual for Complex Litigation* (*Fourth*) § 15.2, at 212, suggests reference in the judgment to a list of persons who received individual notice of class certification. Plaintiffs do not believe that procedure (for which the *Manual* cites no authority) to be commonplace, but the mailing list used for sending class notice remains available and could be lodged with the Court if desired.

1.      **Pre-Judgment Interest**

The trespass and nuisance claims presented to the jury were brought pursuant to, and are governed by, the Price-Anderson Act (the "Act").  By its express terms, the Act borrows the substantive law of the state in which the nuclear incident took place.  *See* 42 U.S.C. § 2014(hh); *Cook v. Rockwell Int'l Corp.*, 755 F. Supp. 1468, 1471 (D. Colo. 1991).  Accordingly, issues of pre-judgment interest are governed by Colorado law in this case, just as they would be in a routine diversity action.  *See Webco Indus. v. Thermatool Corp.*, 278 F.3d 1120, 1134 (10th Cir. 2002) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)).

Under Colorado law, pre-judgment interest on all compensatory damage awards for personal injuries must be awarded at the rate of 9% per annum from the date the cause of action accrues and compounded annually from the date the action is filed.  *See* C.R.S. § 13-21-101(1).[16]  Colorado courts have determined that nuisance awards affording compensation for annoyance and discomfort are governed by this statute.  *See Miller v. Carnation Co.*, 564 P.2d 127, 132 (Colo. App. 1977). In contrast, awards for trespass and for damage inflicted on property that do not include compensation for annoyance and discomfort are governed by C.R.S. § 5-12-102(1)(b).[17]

---

[16] In *Rodriguez v. Schutt*, 914 P.2d 921 (Colo. 1996), the Colorado Supreme Court held that insofar as it prescribed different rates for pre-judgment interest depending on whether the judgment debtor appealed, section 13-21-101(1) violated the equal protection provisions of the federal and Colorado constitutions.

[17] Section 5-12-102 applies to claims for property damage not falling under section 13-21-201 and also requires that interest run from the time the cause of action accrued.  *See Isbill Assoc., Inc. v. City & County of Denver*, 666 P.2d 1117, 1121-22 (Colo. App. 1983); *Lowell Staats Mining Co. v. Pioneer Uravan, Inc.*, 878 F.2d 1259, 1270 (10th Cir. 1989).  The statute is liberally applied in all cases, "even where the withholding is merely a refusal to pay over damages which are theoretically due at the time the claim arises." *Id.* at 365 (quoting Cairns & Tredennick, *Collecting Pre- and Post-judgment Interest in*

(continued...)

"A plaintiff is entitled to only one recovery for losses incurred because of defendant's conduct; however when claims are merged the larger of the awards survives." *Sprung v. Adcock*, 903 P.2d 1224, 1226 (Colo. App. 1995). The nuisance award is certainly no *smaller* than the trespass award. Plaintiffs would thus be entitled to the benefit of the 9% rate applicable to the nuisance award under section 13-21-101(1), even if a lower rate might apply to plaintiffs' trespass damages in the absence of the nuisance award.

The purposes of pre-judgment interest are to fully compensate the plaintiff, to award the plaintiff for the loss of earnings on the money due to its delayed payment, and to encourage prompt payment of claims. *See Coale v. Dow Chem. Co.*, 701 P.2d 885, 890 (Colo. App. 1985); *Mesa Sand & Gravel Co. v. Landfill, Inc.*, 776 P.2d 362, 364 (Colo. 1989) (the purpose of pre-judgment interest "is to discourage a person responsible for payment of a claim to stall and delay payments until judgment or settlement"); *Stevens v. Humana of Delaware, Inc.*, 832 P.2d 1076, 1081 (Colo. App. 1992) ("pre-judgment interest serves not only the purpose of compensating a party for the loss of use of money but is also used to encourage the settlement of cases both pre- and post-trial"); *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 19 (Colo. 1990) ("Pre-judgment interest is an element of compensatory damages in actions for personal injuries, awarded to compensate the plaintiff for the time value of the award eventually obtained against the tortfeasor.").

Here, the jury specifically found that "it appeared on or before January 30, 1990, which is the date this case was filed, that any trespass or nuisance by [Rockwell and Dow] would continue

---

[17](...continued)
*Colorado: A Primer*, 15 Colorado Law, 753, 756 (1986)).

indefinitely." Accordingly, the interest award on the compensatory damages should run from January 30, 1990, compounded annually, to the date judgment is entered.

Colorado law generally disallows pre-judgment interest on exemplary damages. The rationale given for that rule is that the right to exemplary damages does not accrue at the time of the underlying legal wrong, but only once the trier of fact awards them. *See Coale,* 701 P.2d at 890. Under that rationale, plaintiffs plainly would not be entitled to interest on the exemplary damages running from the time the underlying claims accrued. Once the jury has returned a verdict, however, the damages have indeed been awarded, and no sound policy rationale prevents the taxation of pre-judgment interest from and after that date – especially if a substantial interval intervenes between verdict and judgment. Accordingly, plaintiffs respectfully request an award of pre-judgment interest on the exemplary damages, running from the date of the jury's verdict on February 14, 2006.

### 2.    Exemplary Damages

### a.    Amount of the Exemplary Damage Awards

The jury found Dow's share of fault on the trespass claim to be 90%. The jury has therefore awarded $159,165,306 (90% of $176,850,340) in compensatory damages against Dow on that claim. That exceeds the $110,800,000 it awarded in exemplary damages against Dow, and so the statutory cap on exemplary damages in C.R.S. § 13-21-102(1)(a) does not come into play. The same reasoning applies to Rockwell, which the jury found to be 70% at fault on the nuisance claim. The jury's award of $123,795,238 in compensatory damages against Rockwell on the nuisance claim (70% of $176,850,340) exceeds its award of $89,400,000 in exemplary damages against Rockwell.

In addition, Colorado law calls for pre-judgment interest to be added to compensatory damages before any application of the statutory cap on exemplary damages. *See James v. Coors Brewing Co.*, 73 F. Supp. 2d 1250, 1254-55 (D. Colo. 1999) (Babcock, J.).

**b.      Judicial Augmentation of the Exemplary Damage Award Against Rockwell**

Earlier in this litigation, in upholding a ruling by Magistrate Judge Borchers barring discovery by plaintiffs into Rockwell's conduct at a facility in Santa Susana, California, the Court held that Rockwell's conduct at Santa Susana would not be relevant to any potential judicial enhancement of exemplary damages against Rockwell under C.R.S. § 13-21-102(3)(a). *See* Order (Nov. 16, 2000) (denying objections to Magistrate Judge's ruling) [Ct. Rec. 1169]; Order (Feb. 6, 1997) (Magistrate Judge's ruling) [Ct. Rec. 913]. Plaintiffs assume the Court would adhere to its prior ruling and do not now seek to relitigate the issue, to which plaintiffs advert only to preserve the record. But for that prior ruling, plaintiffs would seek to present evidence to the Court in support of an augmentation of exemplary damages against Rockwell on the basis of Rockwell's conduct at Santa Susana during the pendency of this litigation.

**3.      Post-Judgment Interest**

Plaintiffs recognize that the Tenth Circuit has held that post-judgment interest in diversity cases is governed by 28 U.S.C. § 1961. *See Transpower Constructors v. Grand River Dam Auth.*, 905 F.2d 1413, 1423-24 (10th Cir. 1990). Jurisdiction in this case, however, is predicated on the Price-Anderson Act. The 1988 amendments to the Price-Anderson Act call for the rules of decision in public liability actions to be derived from the law of the state where the nuclear incidents occur, except where state law is inconsistent with the Act itself. *See* 42 U.S.C. § 2014(hh). Those amendments postdate the 1982 enactment of section 1961. The more recent and specific

congressional enactment is controlling.  *See Shawnee Tribe v. United States*, 423 F.3d 1204, 1213-16 (10th Cir. 2005); *Cook IX*, 273 F. Supp. 2d at 1187-93.  Post-judgment interest is therefore governed by C.R.S. § 13-21-101.

## V.  CONCLUSION

For the reasons given, plaintiffs respectfully request: (a) that plaintiffs' proposed Plan of Allocation be approved; (b) that judgment be entered in the form attached; and (c) that the Court afford such other relief as may be just and appropriate.

Dated: May 4, 2006                                  Respectfully submitted,


                                                    s/ Peter Nordberg
                                                    Merrill G. Davidoff
                                                    Peter Nordberg
                                                    Berger & Montague, P.C.
                                                    1622 Locust Street
                                                    Philadelphia, PA 19103
                                                    (215) 875-3000

                                                    Gary B. Blum
                                                    Steven W. Kelly
                                                    Silver & DeBoskey, P.C.
                                                    1801 York Street
                                                    Denver, CO 80206
                                                    (303) 399-3000

                                                    Louise Roselle
                                                    Waite, Schneider, Bayless
                                                       & Chesley Co., L.P.A.
                                                    1513 Central Trust Tower
                                                    Cincinnati, OH 45202
                                                    (513) 621-0267

                                                    Attorneys for Plaintiffs
                                                    And the Class

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 4, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will effect service of such pleading upon:

      David M. Bernick, Esq.
      Kirkland & Ellis LLP
      200 East Randolph Drive
      Chicago, IL 60601

          and

      Joseph J. Bronesky, Esq.
      Sherman & Howard, LLC
      633 Seventeenth Street, Suite 3000
      Denver, CO 80202

      Attorneys for Defendants

                       <u>s/ Peter Nordberg                  </u>
                       Peter Nordberg