3 of 3 DOCUMENTS

Copyright 1996 Disclosure Incorporated EdgarPlus

COMPANY: ROCKWELL INTERNATIONAL CORP CROSS-REFERENCE: NORTH AMERICAN ROCKWELL CORP TICKER: ROK EXCHANGE: NYS

FORM-TYPE: PROXY

DOCUMENT-DATE: October 30, 1996 FILING-DATE: November 1, 1996

Full text  Company info  Contents  Other  Return

* * * * * * * * * * * * * * * * TEXT OF FILING * * * * * * * * * * * * * * * *

1

SCHEDULE 14A (RULE 14a-101)

INFORMATION REQUIRED IN PROXY STATEMENT SCHEDULE 14A INFORMATION

PROXY STATEMENT PURSUANT TO SECTION 14(a) OF THE SECURITIES EXCHANGE ACT OF 1934

Filed by the Registrant X

Filed by a Party other than the Registrant

Check the appropriate box:

Preliminary Proxy Statement

Confidential, for Use of the Commission Only (as permitted by Rule 14a-6(e)(2))

X   Definitive Proxy Statement
X   Definitive Additional Materials
    Soliciting Material Pursuant to 14a-11(c) or 14a-12


ROCKWELL INTERNATIONAL CORPORATION
(Name of Registrant as Specified In Its Charter)


(Name of Person(s) Filing Proxy Statement, if other than the Registrant)

Payment of Filing Fee (Check the appropriate box):

No fee required.

X Fee computed on table below per Exchange Act Rules 14a-6(i)(4) and 0-11.

(1) Title of each class of securities to which transaction applies:

Common Stock, par value $1 per share and Class A Common Stock, par value $1 per share.

(2) Aggregate number of securities to which transaction applies: (as of October 14, 1996)

190,756,213    Common Stock and
27,867,120    Class A Common Stock

(3) Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (Set forth the amount on which the filing fee is calculated and state how it was determined):

1/50th of 1% of the book value as of June 30, 1996 of the assets to be transferred to New Rockwell International Corporation ($5.462 billion) pursuant to the transactions described in the Preliminary Proxy Statement-Prospectus.

(4) Proposed maximum aggregate value of transaction: $5,462,000,000

(5) Total fee paid: $1,092,400

X Fee paid previously with preliminary materials.

Check box if any of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

(1) Amount Previously Paid: N/A

(2) Form, Schedule or Registration Statement No.: N/A

(3) Filing Party: N/A

(4) Date Filed: N/A

2

ROCKWELL LOGO

October 29, 1996

Dear Shareowner:

You are cordially invited to attend a Special Meeting of Shareowners of Rockwell International Corporation (the "Company") to be held on December 4, 1996 at 10:00 a.m. local time at the Second Floor Auditorium, 1221 Avenue of the Americas (at 49th Street), New York, New York. At this important meeting you will be asked to vote on certain matters relating to the proposed tax-free reorganization of the Company (the "Reorganization") as described in the accompanying Proxy Statement-Prospectus.

On July 31, 1996, the Company, The Boeing Company ("Boeing") and a subsidiary of Boeing entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which Boeing will indirectly acquire the Company's Aerospace and Defense businesses. Among the transactions contemplated by the Merger Agreement is the contribution of the Company's Automation, Avionics and Communications, Semiconductor Systems and Automotive businesses to a new company ("New Rockwell"), the shares of which will be distributed to the Company's shareowners immediately prior to the merger of the Company (then holding only the Company's Aerospace and Defense businesses) with the Boeing subsidiary (the "Merger"). Following the Merger, New Rockwell will be renamed "Rockwell International Corporation" and the Company will be renamed "Boeing North American, Inc."

The formation of New Rockwell is a major milestone in the transformation that has shifted the Company's strategic focus to our historically higher growth commercial and international businesses, with primary growth derived from our electronics businesses. Our

Case No. 1:90-cv-00181-JLK   Document 2171-1   filed 05/05/06   USDC Colorado   pg 3 of 7

Automation, Avionics and Communications, Semiconductor Systems and Automotive businesses are global leaders with leading market positions and well-known brands. We believe that New Rockwell's ability to focus even more intensely on those businesses with strengthened financial capacity will set the stage for more rapid growth and greater profitability.

In the Merger, the Company's shareowners will receive shares of Boeing Common Stock with an aggregate market value of approximately $860 million (subject to possible adjustment as provided in the Merger Agreement). The Reorganization will thus allow the Company's shareowners to continue to participate in the Company's commercial and international businesses, with estimated sales in excess of $10 billion for the fiscal year ended September 30, 1996, while also sharing an interest in Boeing. The Reorganization also will benefit the Aerospace and Defense businesses, their customers and their employees, as the complementary strengths of Boeing and the Company's Aerospace and Defense businesses will enhance the Boeing Defense & Space Group's position as a leading worldwide competitor in the space and defense industry. We believe this combination will provide our Aerospace and Defense businesses with the resources they will need to reach their full potential in a consolidating industry and an increasingly competitive global market.

As a result of the Reorganization, each shareowner of the Company will receive, in exchange for each share of Common Stock or Class A Common Stock of the Company, (a) one share of Common Stock or Class A Common Stock, as the case may be, of New Rockwell and (b) a fraction of a share of Boeing Common Stock having a market value of approximately $3.93. Based on the closing market price per share of Boeing Common Stock on October 28, 1996, we currently estimate the fraction to be approximately .042 of a share of Boeing Common Stock. In addition, in connection with the Merger, Boeing will assume, pay down or guarantee $2.165 billion of debt to be retained by the Company.

The Reorganization is subject, among other things, to the approval of the Company's shareowners, the consent or approval of various governmental entities, the consent of the holders of the Company's publicly

3

held notes and the consummation of certain pre-Merger transactions, including the contribution and distribution described above.

YOUR BOARD OF DIRECTORS HAS CAREFULLY CONSIDERED THE TERMS OF THE PROPOSED REORGANIZATION AND BELIEVES THAT THE REORGANIZATION IS IN THE BEST INTERESTS OF THE COMPANY AND ITS SHAREOWNERS. THE BOARD HAS UNANIMOUSLY APPROVED THE REORGANIZATION AND RECOMMENDS THAT SHAREOWNERS VOTE FOR THE PROPOSALS DESCRIBED IN THE ACCOMPANYING PROXY STATEMENT-PROSPECTUS.

Your vote is important. If you plan to attend the Special Meeting, please complete and return the form enclosed with your proxy or direction card, and an admittance card will be forwarded to you promptly. Whether or not you expect to attend the Special Meeting, please complete, sign and date the enclosed proxy or direction card and return it as promptly as possible. Approval of each proposal described in the accompanying Proxy Statement-Prospectus requires the affirmative vote of the holders of a majority of the votes entitled to be cast by the holders of the Company's Common Stock and Class A Common Stock, voting together as a single class. If the proposals are approved and the Reorganization is consummated, instructions will be sent to you regarding the exchange and issuance of new share certificates. PLEASE DO NOT SEND IN ANY SHARE CERTIFICATES UNTIL YOU RECEIVE FURTHER

The assets retained by the Company will consist principally of the assets that are used primarily in or held primarily for use in or otherwise necessary for the operation, as presently conducted, of the A&D Business (with certain additions and exclusions as described below) (the "Retained Assets"). The Retained Assets also include: (i) the assets that are used primarily in or held primarily for use in or otherwise necessary for the operation, as presently conducted, of the Company's Seal Beach, California world headquarters, the Company's Systems Development Center, the Company's Information Systems Center and the Company's Government Affairs, Marketing and International Offices and certain related international and field offices (the "Additional Retained Facilities") (other than miscellaneous furnishings, artwork, computers and other equipment and personal property used by Company employees who will become New Rockwell employees following the Time of Contribution), (ii) one helicopter and one corporate jet aircraft and (iii) all assets reflected on the statement of assets and liabilities of the A&D Business as of June 30, 1996 included elsewhere herein, as such assets may have been added to, sold in the ordinary course of business or otherwise changed since such date. Also included in the Retained Assets are: (i) all issued and outstanding shares of capital stock of certain aerospace and defense related subsidiaries of the Company (the "Retained Subsidiaries"); (ii) all rights in and use of the names "Autonetics", "North American Aviation" and "Rocketdyne" and all derivatives thereof; (iii) all rights of the Company under the Reorganization Agreements, except as otherwise specifically provided therein and except that certain of the Company's rights under the Merger Agreement will not constitute Retained Assets; and (iv) the Environmental Coverage Claims (as defined below).

The Distribution Agreement specifically excludes from the Retained Assets: (i) cash or cash equivalents (other than certain amounts identified in the Distribution Agreement to be retained by the Company and cash in an amount equal to the excess, if any, of (A) the sum of (1) $4.5 million and (2) all accrued and unpaid interest on the Retained Company Debt to the Closing Date other than accretion on commercial paper to the extent such accretion is included in Retained Company Debt (the "Accrued Interest") over (B) the excess, if any, of $2.165 billion over the aggregate principal amount of the Retained Company Debt at the Effective Time (the "Paydown Amount")), (ii) the Contributed A&D Assets (as defined below) and (iii) the assets associated with certain headquarters and other corporate functions.

39

The liabilities that will be retained by the Company pursuant to the Distribution Agreement (the "Retained Liabilities") consist of: (i) all liabilities (other than the Assumed Liabilities) relating primarily to or arising primarily from the A&D Business; (ii) Retained Company Debt, which consists of: (A) Old Company Notes in the aggregate principal amount of $1.6 billion, as the same may be amended pursuant to the Consent Solicitation; (B) commercial paper or other short-term borrowings in the aggregate principal amount of $565 million (with respect to commercial paper issued at a discount, the accreted value at the Closing Date will be deemed to be the principal amount thereof), less the aggregate principal amount of any outstanding Rockwell Australia Debt (as defined below), or any indebtedness issued in replacement thereof or in exchange therefor; and (C) bank borrowings of Rockwell Australia Limited in an aggregate principal amount of not more than the equivalent of U.S. $30 million (the "Rockwell Australia Debt"), in each case, together with the Accrued Interest; (iii) all liabilities associated with the current and former operations of the

Additional Retained Facilities; and (iv) all liabilities that are contemplated by the Reorganization Agreements (other than the Merger Agreement) as liabilities to be retained by the Company or any of the Retained Subsidiaries (collectively, the "Company Group"), and any agreements, obligations and liabilities of the Company Group under the Reorganization Agreements (other than the Merger Agreement), except as otherwise specifically provided therein and except for obligations which are required or contemplated to be performed prior to the Effective Time. The liabilities to be retained by the Company Group include liabilities related to certain pension obligations of the Company. See "Effect on Employment and Employee Benefits–Employee Benefits–Qualified Retirement Plans".

In order to create a holding company structure for New Rockwell, the Distribution Agreement provides that the assets of the Company contributed to New Rockwell that are used primarily in or held primarily for use in the A-B Business (the term used in the Distribution Agreement for the Company's Automation Business), the Collins Business, the Semiconductor Systems Business, the LVS Business and the HVS Business (as such terms are defined in the Distribution Agreement) will be contributed to A-B, Collins, RSS, LVS and HVS, respectively. As part of the Contribution, (i) the Company will contribute to New Rockwell the capital stock of the Operating Subsidiaries and the Operating Subsidiaries will become wholly-owned subsidiaries of New Rockwell, (ii) Reliance, a wholly-owned subsidiary of the Company, will become a wholly-owned subsidiary of A-B and (iii) Brooktree will become a wholly-owned subsidiary of RSS.

In addition, the Distribution Agreement provides that the Company's properties at El Segundo, California, Lakewood, California, and Building 37 at Canoga Park, California (collectively, the "Contributed A&D Assets") will be contributed to A-B, if not previously sold, and the following assets will be contributed to New Rockwell or to one of the Operating Subsidiaries or as New Rockwell shall otherwise direct: (i) the Company's Science Center; (ii) all issued and outstanding shares of Atomics International, Inc., Narland Corporation and Rockwell Aerospace & Electronics, Inc.; (iii) the Health Care Claims (as defined below); (iv) all cash and cash equivalents of the Company and its subsidiaries (other than certain amounts identified in the Distribution Agreement to be retained by the Company); and (v) certain of the Company's rights under the Merger Agreement. The assets of the Company to be contributed to New Rockwell or to the Operating Subsidiaries are referred to herein as the "Contributed Assets".

The Distribution Agreement further provides that the liabilities of the Company to be assumed by New Rockwell and one of the Operating Subsidiaries (the "Assumed Liabilities") include the following: (i) all liabilities relating primarily to or arising primarily from the Automation Business, the Collins Business, the Semiconductor Systems Business, the LVS Business and the HVS Business; (ii) all liabilities (including without limitation indemnification obligations) relating primarily to or arising primarily from (A) the reports, registration statements and other documents filed by the Company with the Commission prior to the Time of Contribution and (B) any breach or alleged breach by any director of the Company of his or her fiduciary duties to the Company and its shareowners occurring at or prior to the Time of Contribution, in each case referred to in the foregoing clauses (A) and (B) notwithstanding the fact that such liabilities may relate primarily to or arise primarily from the A&D Business or the Additional Retained Facilities, but excluding any matter for which the Company would be required to provide indemnification pursuant to certain provisions of the Post-Closing Covenants Agreement to be entered into among the Company, Boeing, Merger Sub and New Rockwell (the "Post-Closing Covenants Agreement"); (iii) all liabilities relating primarily to or arising primarily from any divested business of the A&D Business; (iv)

all liabilities relating primarily to or arising

primarily from Atomics International, Inc., Narland Corporation and Rockwell Aerospace & Electronics, Inc.; (v) all liabilities relating to the Contributed A&D Assets; (vi) all liabilities in respect of indebtedness for borrowed money (including any guarantees of the Company and any of its subsidiaries in respect of indebtedness for borrowed money of any third party) other than the Retained Company Debt; (vii) all liabilities of the Company or any of its subsidiaries (including certain environmental liabilities) arising out of or relating to (A) the Rocky Flats Plant, Golden, Colorado, (B) the Hanford Nuclear Reservation, Hanford, Washington, (C) the INEL complex in Idaho, (D) the Company's or any of its subsidiaries' decontamination and decommissioning work at various atomic or nuclear facilities throughout the United States (excluding Santa Susana and Canoga Park, California), (E) the Company's work relating to Interatom (Internationale Atomreaktorbau GmbH) and (F) any products manufactured or any services provided by the Company or any of its subsidiaries which involved radioactive, fissionable or fusionable materials or any waste products or by-products thereof (other than activities of the Company and its subsidiaries at Santa Susana and Canoga Park, California) (the "Special Liabilities"); and (viii) all liabilities that are contemplated by the Reorganization Agreements as liabilities to be assumed by any member of the New Rockwell Group (as defined below), including any other liabilities that do not constitute Retained Liabilities, and any agreements, obligations and liabilities of the New Rockwell Group under the Merger Agreement, the Distribution Agreement, the Post-Closing Covenants Agreement and the Tax Allocation Agreement to be entered into among the Company, New Rockwell and Boeing (the "Tax Allocation Agreement" and together with the Merger Agreement, the Distribution Agreement and the Post-Closing Covenants Agreement, the "Reorganization Agreements").

Recapitalization Of New Rockwell. The Distribution Agreement provides that immediately prior to the time as of which the Distribution is effective (the "Time of Distribution"), the Company will cause New Rockwell to amend its certificate of incorporation to, among other things, (i) increase the authorized number of shares of capital stock of New Rockwell to 1,125,000,000 shares, consisting of 25,000,000 shares of Preferred Stock, without par value, 1,000,000,000 shares of New Rockwell Common Stock and 100,000,000 shares of New Rockwell Class A Common Stock, and (ii) exchange all the issued and outstanding shares of New Rockwell stock owned by the Company for a total number of shares of New Rockwell Common Stock and New Rockwell Class A Common Stock equal to the total number of shares of Company Common Stock and Company Class A Common Stock, respectively (other than Company Common Stock and Company Class A Common Stock held in the treasury of the Company), outstanding as of the Distribution Record Date.

The Distribution. The Distribution Agreement provides that the Distribution will be effected by the delivery to each holder of record of Company Common Stock and Company Class A Common Stock as of the Distribution Record Date, of certificates representing one share of New Rockwell Common Stock for each share of Company Common Stock and one share of New Rockwell Class A Common Stock for each share of Company Class A Common Stock held by such holder.

The Board of Directors of the Company will formally declare the Distribution and authorize the Company to make it immediately prior to the Effective Time, subject to the satisfaction or waiver of the conditions to the Distribution, by delivery of certificates for New Rockwell Common Stock and New Rockwell Class A Common Stock to the Paying Agent for delivery to the holders entitled thereto. The Distribution will be deemed to be effective upon notification by the

Company to the Paying Agent that the Distribution has been declared and that the Paying Agent is authorized to proceed with the distribution of New Rockwell Common Stock and New Rockwell Class A Common Stock. Following the Effective Time, the Paying Agent will deliver certificates for shares of New Rockwell Common Stock and New Rockwell Class A Common Stock to the holders of record of Company Common Stock and Company Class A Common Stock on the Distribution Record Date without any further action by such holders.

Cross-License of Intellectual Property. The Distribution Agreement provides that, effective as of the Time of Distribution, each of the Company and New Rockwell will grant to the other and its subsidiaries a non-exclusive license for all intellectual property rights which it owns or has a right to license immediately after the Time of Contribution, and which are used in the conduct of the licensee's business (whether or not such rights are also used in the conduct of the licensor's business) at the Time of Contribution, to make, have made, use, import, sell or otherwise dispose of products, or to practice any process in connection therewith.

40

Use of Names, Trademarks, etc. Pursuant to the Distribution Agreement, from and after the Effective Time, New Rockwell will have all rights in and, except for certain limited rights of use granted to the Company Group, use of the names "Rockwell", "Rockwell International" and "Collins" and all derivatives thereof and the Company will have all rights in and, except for certain limited rights of use granted to New Rockwell and its subsidiaries (the "New Rockwell Group"), use of the names "Autonetics", "North American Aviation" and "Rocketdyne" and all derivatives thereof. The Company will change the names of its subsidiaries or other persons under its control to eliminate therefrom the names "Rockwell", "Rockwell International" and "Collins" and all derivatives thereof, and New Rockwell will change the names of its subsidiaries or other persons under its control to eliminate therefrom the names "Autonetics", "North American Aviation" and "Rocketdyne" and all derivatives thereof.

Mutual Release, etc. The Distribution Agreement provides that, effective as of the Time of Distribution and except as otherwise specifically set forth in the Reorganization Agreements or the Transition Agreement (as defined below), each of New Rockwell, on the one hand, and the Company, on the other hand, on its own behalf and on behalf of each of its respective subsidiaries, releases and forever discharges the other and its subsidiaries, and its and their respective officers, directors, agents, affiliates, record and beneficial security holders (including, without limitation, trustees and beneficiaries of trusts holding such securities), advisors and representatives (in their respective capacities as such) and their respective heirs, executors, administrators, successors and assigns, of and from all debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements, damages, claims and liabilities whatsoever of every name and nature, both in law and in equity, which the releasing party has or ever had, which arise out of or relate to events, circumstances or actions taken by such other party occurring or failing to occur or any conditions existing on or prior to the Time of Distribution; provided, however, that the foregoing general release will not apply to certain liabilities set forth in the Distribution Agreement, including (i) any liabilities (including liabilities with respect to indemnification) under the Transition Agreement or assumed, transferred, assigned, allocated or arising under any of the Reorganization Agreements and shall not affect any party's right to enforce the Reorganization Agreements in accordance with their terms, and (ii) certain liabilities