# EXHIBIT B

# Juror Z April 20, 2006 Redacted Affidavit

# More Complete Version Filed Under Seal

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-181-JLK

MERILYN COOK, et al.,

       Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

       Defendants.

---

### [JUROR Z NAME REDACTED]    AFFIDAVIT

---

I, [JUROR Z], after first being duly sworn, state the following:

1. My name is [JUROR Z]. I live in [REDACTED] Colorado in [REDACTED] County.

2. I am over 21 years of age and mentally competent to offer this affidavit. The contents of this affidavit are accurate, true and correct to the best of my knowledge.

3. I was a juror in the recent trial by property owners against Dow and Rockwell regarding the former Rocky Flats plant. I was present for the whole trial from the beginning and during all deliberations.

4. After talking with another former juror, I initiated contact with defense counsel. This other juror did not ask me to call defendants. I met with defense attorneys one time. Defendants did not initiate contact with me. I also wrote defense counsel a letter which is attached. In that letter, in my own words and my own handwriting, I shared some of my views related to the case. In my discussions with

defendants' lawyers, we talked about what happened at the trial and my impressions. Counsel did not discuss with me any information that was not presented at the trial in the spirit of criticizing the jury's decision or that would create a negative impression with me regarding future jury service. Counsel did not ask questions or make comments that were harassing or embarrassing to me as a jury member.

5. I am writing this affidavit because I believe the verdict in the case was wrong. I am uneasy about how the deliberations in this case happened. I don't believe our judicial system worked the way it was meant to in this case. I think the Court and the public should be told about how the deliberations really occurred, how much disagreement there was on the jury and the bullying that took place by the pro-plaintiff jurors during the deliberations. If the Court had questioned me about the subjects covered by this affidavit in late January, around the time when one juror was dismissed from deliberations or at any time afterwards, I would have told the Court the facts that are stated in this affidavit.

6. When we first began to state our positions about the case at the start of deliberations, there were several jurors who were leaning toward the defendants. The jury was split on whether the defendants were liable from the very beginning of deliberations. Every issue was very contentious.

7. Even at the start of deliberations, in those first few days, pro-plaintiff jurors were angry that any jurors supported the defense. These pro-plaintiff jurors were outspoken and aggressive. They would bully and criticize other jurors who expressed views supporting Dow and Rockwell or who suggested there was no harm to the class plaintiffs or class properties. It went well beyond heated debate.

2

8. The presiding juror was one of the worst bullies. He never looked at or discussed the defendants' exhibits; he reviewed only the plaintiffs' exhibit binders. He would allow unlimited discussion of pro-plaintiff points, but would cut off any jurors who tried to offer comments supporting the defense case. On at least one occasion, he tried to prevent another juror from locating or reviewing an exhibit that he believed would have been positive to the defendants. He was hostile towards and bullied pro-defense jurors, sometimes cursing while he did so.

9. Another man on the jury was also an outspoken critic of anyone expressing a defense view. That juror and the presiding juror drove to Court together. This other male juror would become angry with defense-leaning jurors, display extreme temper, make ugly personal comments and attack individuals who made pro-defense comments. He made particularly vicious attacks toward one defense-leaning juror (who was later dismissed from the jury) and upset [Juror X] emotionally. His actions, together with the attacks of other pro-plaintiff jurors, caused [Juror X] to leave the jury. This male juror's attacks on pro-defense jurors in general, and on [Juror X] who was dismissed from the jury in particular, were ugly, totally uncalled for, hypocritical and out of proportion to anything that the defense jurors had said.

10. This male juror and the presiding juror were often joined in these outbursts and bullying episodes by a pro-plaintiff female juror. Like the presiding juror, this pro-plaintiff female juror never once looked at the defendants' evidence binders during deliberations.

11. Other jurors too had made comments expressing their opinions on the merits of the case before deliberations began.

3

12. It was difficult to participate in deliberations when confronted with angry, mean personal attacks and criticism from the pro-plaintiff jurors. The attacks by pro-plaintiff jurors made pro-defense jurors, including myself, hold back from active participation and caused me to consider dropping out of the deliberations.

13. One pro-defense juror did end up leaving the jury due to the ugly comments against [Juror X], the harsh confrontations and the bullying [Juror X] experienced for [Juror X's] defense-leaning views. This juror was often animated and tried to express [Redacted] views during the early days of deliberations. [Juror X] was subjected to particularly mean attacks because of the pro-defense comments [Juror X] made and the pro-defense positions [Juror X] took. Pro-plaintiff jurors, including the presiding juror and the two other pro-plaintiffs jurors described above, repeatedly attacked the juror who was later dismissed, said [Juror X] was biased and told [Juror X] had no business being on the jury.

14. Before [Juror X] left, the juror who ultimately left the jury was also upset that pro-plaintiff jurors dominated the discussions during deliberations and that such jurors would talk over [Juror X] and others – preventing [Juror X] and other jurors from having a chance to have their say. This juror wanted to try to ensure that all jurors could express their views. [Juror X] proposed that the jurors use a talking stick to control whose turn it was to speak, and actually brought a talking stick to the deliberations one day, but [Juror X's] proposal was rejected. [Juror X] was personally attacked by the pro-plaintiff jurors described above for proposing the talking stick. These pro-plaintiff jurors were really quite nasty to the juror who ended up leaving the jury.

15. During deliberations, the juror who ended up being dismissed acted upset, said [Juror X] had trouble sleeping due to the deliberations, and remarked that [REDACTED]

4

[REDACTED] Immediately after being harshly attacked and criticized, [ ↓ Juror X ] broke into tears and ran out of the deliberations. Later [ ↓ Juror X ] was dismissed from the jury.

16. After this juror left the jury, pro-plaintiff jurors (such as the presiding juror and others) did not express any concern for the dismissed juror's mental health or well-being. In fact, these pro-plaintiff jurors continued to be mad at the juror who was dismissed, made mean comments about [ ↓ Juror X ] after [ ↓ Juror X ] was gone, and acted happy that [ ↓ Juror X ] had been dismissed.

17. Toward the very end of deliberations, like the juror who was dismissed, I myself wanted to quit the deliberations and leave the jury due to the bullying and the personal attacks on those who supported the defendants' case. I told this to another juror who raised the issue with the jury as a whole. The presiding juror's response was to say, "Bring it on!" He commented that he would gladly send Judge Kane a note in order to get me off the jury. This struck me as completely improper, particularly coming from the presiding juror.

18. Several jurors recalled Judge Kane telling the jury that he would not let this be a hung jury. The pro-plaintiff jurors used this statement to wear down the pro-defense jurors. Pro-defense jurors began to feel like we would never reach a verdict unless we gave in, or like the one pro-defense juror who was dismissed, we tried to get off the jury. The bullying tactics of pro-plaintiff jurors and their reminders of Judge Kane's comment about not letting this be a hung jury wore down the pro-defense jurors and led to the ultimate verdict.

5

19. Recently, I spoke with the juror described above who was dismissed from deliberations. Defense counsel did not ask me to call this other former juror. In fact, David Bernick specifically asked me not to call [Juror X]. I called [Juror X] on my own to ask [Juror X] how [Juror X] was doing now. When I spoke to [Juror X], I mentioned to [Juror X] that I had spoken to defense counsel, but I did not ask [Juror X] to call the lawyers for the defendants. I did not give [Juror X] the phone number of any of defendants' lawyers.

20. I understand that by filing this affidavit, my name may become public. I am willing to take this risk so that these matters can be made known.

[JUROR Z SIGNATURE REDACTED]

[JUROR Z NAME REDACTED]

Subscribe and sworn before me this 20th day of April, 2006
Marcella Kimminau
My commission expires on:

My Commission Expires
January 13, 2010

6