**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, *et al.*,

        Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

        Defendants.

_____

**DEFENDANTS' RENEWED AND NEW[1] MOTION FOR MISTRIAL BASED
ON UNDISCLOSED *EX PARTE* COMMUNICATIONS**

_____

Charles Fried
1545 Massachusetts Avenue
Cambridge, Massachusetts  02138

David M. Bernick
Douglas J. Kurtenbach
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois  60601-6636

Joseph J. Bronesky
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado  80202

Attorneys for ROCKWELL
INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY

_____

[1] This motion renews defendants' earlier requests for mistrial based on the circumstances surrounding Juror X's departure from the jury, but relies on previously undisclosed grounds.

1

The occasion for this renewed motion is the affidavit of Juror X,[2] who initiated contact with counsel for defendants during the week of April 10.  (*See* Defs.' 5/9/06 Renewed Mot. for Mistrial, at 3 ("Juror X has also now initiated contact with defendants, and defendants intend to have substantive conversations with that juror as well, supplementing this motion as appropriate.").)  Defendants did not have substantive conversations with Juror X until after the Court's May 10 Order, and Juror X's affidavit was not prepared or executed until after that Order.  Because it was Juror X who was dismissed from the jury on January 25, Juror X's affidavit is central to this motion.

During a hearing on the morning of January 25, 2006, the Court announced that a juror ("Juror X") had left the jury room during a "heated discussion."  (1/25/06 Trial Tr. at 10713-14.) Concerned that Juror X may have been a minority-view juror who was being bullied off the jury by other jurors, defendants immediately requested an inquiry into the circumstances of Juror X's departure.  (*Id.* at 10715.)  The Court responded that both parties would be given the opportunity to speak to the juror in the Court's chambers.  (*Id.*)  The Court also stated that Juror X could not be located, but that a "record" would be made of the circumstances surrounding her departure from the jury room "when we find her."  (*Id.*)  Shortly thereafter, at approximately 10:12 a.m., the Court called a recess.  Proceedings reconvened at approximately 10:20 a.m.  (*Id.* at 10717.)

Until recently, what took place at the courthouse between the time Juror X left the jury room and 10:20 a.m. on January 25 was largely unknown to defendants.  Defendants knew only

---

[2] Consistent with the Court's orders, defendants refer to the dismissed juror as "Juror X."  (*See, e.g.*, 2/14/06 Order at 1; 3/13/06 Order at 2.)

what the Court told them when proceedings restarted.  Specifically, the Court informed the

parties that:

- The Court had dismissed Juror X from the jury.  (*Id.* at 10718.)

- The Court referred to Juror X's current condition as a "health emergency" and indicated that she may "need[] to be hospitalized."  (*Id.*)

- The Court met with Juror X during the break.  The Court stated that Juror X had "started to try to tell me something," but "I stopped her before she did."  The Court asserted that it did not "know what it is" Juror X was saying.  (*Id.* at 10719.)

- Juror X was being sent for health care, where her conversations with her health provider would be covered by a "privilege."  (*Id.*)

Contrary to what the Court stated prior to the 10:12 a.m. break, the Court never allowed the

parties to meet with Juror X and make a record of the circumstances surrounding her departure.

Over the last six months, defendants have repeatedly (and unsuccessfully) asked the

Court to:  (1) inquire into the circumstances of Juror X's departure, and (2) provide information

about the substance of any *ex parte* communications that may have occurred between Juror X

and Court personnel after Juror X left the jury room:

- On **January 25**, defendants repeatedly renewed their request for an inquiry into Juror X's departure.  (*Id.* at 10721, 10746-47.)  But no inquiry was conducted.

- On **February 14**, before the verdict was read, defendants asked for permission to initiate communication with Juror X.  (2/14/06 Trial Tr. at 10784.)  The Court indicated that all jurors would be allowed to initiate communications with the parties (*id.* at 10782-83), but that defendants would have to "put in writing" their request to initiate contact with Juror X.  On **February 16**, defendants made such a written request.  (*See* Defs.' Mot. to Speak with Juror.)  That request was also denied on March 13, 2006.  (3/13/06 Order at 1-14.)

- On **February 16**, defendants asked the Court to disclose all communications that had occurred between Juror X and the Court or Court personnel.  (*See* Defs.' Mot. to Speak with Juror.)  That request was denied on March 13.  (3/13/06 Order at 1-14.)

- On **May 9**, defendants renewed their motion for mistrial, based on the Court's decision not to conduct any inquiry into the circumstances of Juror X's departure.  Defendants

attached affidavits from two jurors attesting that, had the Court conducted an inquiry into the circumstances of Juror X's departure on January 25, they would have informed the Court that Juror X had been bullied off the jury for her minority views. The Court denied defendants' motion on May 10. (5/10/06 Order at 5.) After discussing Rule 606(b), the Court also stated that "[f]urther indifference to this clearly established law by counsel for either side on the issue will be deemed sanctionable." (*Id.* at 4.)

The Court's March 13 Order barred defendants from initiating contact with Juror X. However, as noted in defendants' May 9 motion, Juror X has since initiated contact with defendants. Juror X's affidavit (Exhibit A hereto)[3] sheds new and critical light upon the circumstances surrounding her departure.

Juror X reports that, on January 25, there were significant *ex parte* communications between her and judicial personnel that had never before been revealed to defendants.[4] According to Juror X, after leaving the jury room in tears, she was approached by the Courtroom Deputy, Ms. LaDonne Bush. (Ex. A, ¶ 12.) Juror X states that she told the Courtroom Deputy that "[t]here is bullying going on in the jury room," and further stated that the presiding juror was one of the bullies. (*Id.*, ¶ 13.) According to Juror X, the Deputy responded by saying: "Don't tell me that! If you tell me that, that would mean a mistrial!" (*Id.*) Juror X recites that the Deputy then "went on to say words to the effect of": "This case has gone on for 16 years and we've all invested so much in it. The judge has invested so much. The judge is a very nice

---

[3] In order to comply with the Court's orders, defendants are attaching a redacted version of Juror X's affidavit.

[4] As addressed in detail below, under Tenth Circuit precedent, such *ex parte* communications between a juror and judicial personnel are not covered by Rule 606(b). *See United States v. Scisum*, 32 F.3d 1479, 1481 (10th Cir. 1994).

man."  (*Id.*)  Per Juror X, the Deputy seemed "uncomfortable and chagrined by what [Juror X] said about the bullying."  (*Id.*)

The Courtroom Deputy then brought Juror X into the Judge's chambers.  (*Id.*, ¶ 14.) Juror X claims she sat on a chair in the middle of the room near the cubicles.  (*Id.*)  Several other people were either present or nearby.  (*Id.*)  Judge Kane entered the room five to ten minutes later in his robes.  (*Id.*)  Juror X reports that Judge Kane did ***not*** ask her about her mental or emotional state or whether she felt she could continue to deliberate.  (*Id.*)  Instead, Juror X recites that, when he entered the room, the first thing Judge Kane did was to put his arm around her shoulders and say:  "Don't worry, you don't have to do this anymore."  (*Id.*)  As Juror X explains, she then told Judge Kane about the bullying that was occurring in the jury room.  (*Id.*) Juror X also states that she told Judge Kane that the presiding juror was one of the bullies.  (*Id.*) According to Juror X, Judge Kane then covered his ears and said:  "Don't say that.  I can't hear that."  (*Id.*)  Juror X reports that Judge Kane did not cover his ears until after she had spoken the word "bully" and told him about the "bullying."  (*Id.*)  Juror X is certain that the judge heard and understood what she was saying.  (*Id.*)

According to Juror X, ***she never asked to be released from jury duty***.  (*Id.* ¶ 15.)  Nor did anyone ask her whether she wanted to continue to deliberate or to be dismissed.  (*Id.*)  In fact, Juror X claims she wanted to complete the deliberation process, but wanted the deliberations to be conducted in a more mature, responsible fashion.  (*Id.*)  Neither the Court nor any Court personnel told Juror X that she had been dismissed.  (*Id.*)

The Court told Juror X that she would be taken to health services.  (*Id.*, ¶ 17.)  Juror X was escorted from chambers and given her personal belongings and notes.  (*Id.*, ¶¶ 17-19.)  The

health services counselor asked Juror X about her mental and emotional state, and she told him that she had **not** had a mental breakdown.  (*Id*., ¶ 18.)  Juror X explained to the counselor what had happened, describing the bullying that had occurred during deliberations.  (*Id*.)  Per Juror X, the counselor said that it was her misfortune to have gotten on a jury with a bunch of bullies.  (*Id*.)

The Court held no hearing into (1) Juror X's *ex parte* communications with either the Courtroom Deputy or the Court, or (2) the bullying in the jury room.  As set forth in her affidavit, if she had been asked on January 25, Juror X would have been willing to participate in a hearing on that date.  (*Id., ¶* 16.)  Juror X asserts she could have composed herself for such a hearing on January 25 (or thereafter) if she had been asked to do so.  (*Id*.)  In fact, it would have made her feel better to know that the bullying would be addressed by a hearing.  (*Id.*)

There is now clear, uncontroverted evidence that Juror X was bullied off the jury because of her views on the merits.  (*See* Ex. A, Juror X Affidavit.)  This requires a mistrial.  A jury cannot achieve a verdict by forcing the dismissal of jurors who disagree with the majority view.  Defendants' consent to a non-unanimous verdict was not an agreement that minority-view jurors could be bullied until they were emotionally upset and then removed from the jury as a result.

Defendants hereby renew their motion for mistrial and set forth six reasons why their renewed motion should be granted.  ***First***, as a preliminary matter, Juror X's affidavit regarding *ex parte* communications between herself and Court personnel is not barred by Federal Rule of Evidence 606(b).  *See Scisum*, 32 F.3d at 1481 (reversing district court's determination that portions of post-verdict affidavit relating to *ex parte* communications were excluded under Rule 606(b)).  Another reason why Juror X's affidavit should not be excluded under Rule 606(b) is

that it is evidence of what the Court would have learned had it granted defendants' **pre-verdict** request to conduct a **pre-verdict** inquiry during the jury's deliberations.   Such pre-verdict inquiries are not covered by Rule 606(b).  *See United States v. Sababu*, 891 F.2d 1308, 1335 (7th Cir. 1989) ("In the instant case, the judge was requested to question the jurors during their deliberations and before they had reached a verdict.  In such a situation, [Rule 606(b)] is inoperative and the trial judge was not restricted by it from conducting a *voir dire* of the jury as to the effect of the transcript on the deliberations.").

**Second**, the occurrence of *ex parte* communication between Juror X and both the Court and the Courtroom Deputy is grounds for declaring a mistrial.  Such *ex parte* communications are not permitted.  *See Scisum*, 32 F.3d at 1481; *see also* Code of Conduct for United States Judges Canon 3(a)(4) (federal judges may neither initiate nor consider *ex parte* communications with jurors).

**Third,** the Court's non-disclosure and incomplete disclosure of *ex parte* communications independently warrant a mistrial.  The Court should have disclosed all *ex parte* communications *sua sponte*.  On January 25, defendants asked the Court for an opportunity to make a record of the events related to Juror X's departure from the jury room and the Court indicated that counsel would be able to meet with her and make a record once she was found.  Thereafter, the Court refused to allow any interview of Juror X by counsel and instead described on the record its account of the contacts between Juror X and the Court that morning.   On February 16, defendants repeated their request to talk to Juror X and for the Court to reveal all communications between Juror X and "Court personnel" (Defs.' 2/16/06 Mot. To. Speak With Juror), but the Court did not disclose such contacts as reported by Juror X, including *ex parte*

6

discussions that occurred between Juror X and the Courtroom Deputy and/or between Juror X and the Court.  Until Juror X initiated contact with defendants, nobody had informed defendants of any *ex parte* discussions between Juror X and the Deputy.  The failure to disclose the Deputy's *ex parte* contacts independently requires a mistrial.  *See Scisum*, 32 F.3d at 1481.

In addition, Juror X's report of the interactions with the Court both goes beyond and conflicts with the Court's account of the same event.[5]  Juror X describes a series of communications in chambers initiated by the Court, when the judge approached her, put his arm around her shoulders and said:  "Don't worry, you don't have to do this anymore."  (Ex. A, ¶ 14.) The Court stated only that Juror X had "started to say something," but that it had "stopped" her, so that it did not "know" what Juror X had said.  Juror X, however, reports that "Judge Kane did not cover his ears until after I had spoken the word 'bully' and had told him about the 'bullying.'"  (*Id.*)  Juror X further asserts that "I am certain that both the judge and Ms. Bush heard and understood what I was saying.  Otherwise they would not have responded as they did." (*Id.*)  Juror X's account is consistent with common sense in so far as, ordinarily, people do not cover their ears unless they already have heard something they do not want to hear and about which they do not want to hear more.  Presumably, neither the Trial Judge nor the Courtroom Deputy would have covered their ears if, for example, Juror X had indicated that she wanted water or a Tylenol.  The Court's incomplete disclosure of its *ex parte* communications with Juror X, according to her affidavit, necessitates a mistrial.

---

[5] As discussed in Section VII, *infra*, the procedure for deciding this motion depends on whether the Court will need to resolve any factual issues.  If the Court finds that it will need to resolve factual disputes in order to adjudicate this motion, defendants will seek to submit additional briefing on the correct procedure for deciding the motion.

**Fourth**, the lack of any hearing, either into the *ex parte* communications or the bullying reported by Juror X, also requires that a mistrial be declared. It was not enough for the Court to give an "after-the-fact recitation to counsel of his own recollection of an [*ex parte*] episode." *Scisum*, 32 F.3d at 1483. Rather, a hearing should have been held on the *ex parte* communications, which would have also included the Courtroom Deputy, as well as "the other party to the two-person conversation, the juror." *Id.*

Although the *ex parte* communications described by Juror X independently were sufficient to require a hearing, a hearing also should have been conducted with respect to: (1) whether Juror X's departure from the jury room was caused by bullying, *see, e.g.*, *Lowe v. Norfolk and Western Ry. Co.*, 463 N.E.2d 792, 812 (Ill. App. Ct. 1984) ("while the court by observation can determine good cause in the case of an emotionally upset juror, it must go one step further and make a sufficient inquiry to negate any element of coercion or duress"); and (2) whether, in light of Juror X's testimony, the jury was following the Court's instructions. The lack of such a hearing requires a mistrial. Had such a hearing been conducted on January 25 (with Juror X and the Courtroom Deputy present), Juror X would have had an opportunity to testify that an attempt was being made by other jurors to bully her off the jury for her views on the merits. (Ex. A, ¶ 2.)[6] This uncontroverted testimony would have required a mistrial.[7]

---

[6] Jurors Y and Z confirm that Juror X was the target of bullying during deliberations, and both jurors would have informed the Court of this had the Court conducted a pre-verdict hearing. (*See* Juror Y & Juror Z Affidavits, Exs. A & B to Defs.' 5/9/06 Renewed Mot. for Mistrial.)

[7] *See, e.g.*, *United States v. Thomas*, 116 F.3d 606, 621-22 (2d Cir. 1997); *United States v. Brown*, 823 F.2d 591, 596 (D.C. Cir. 1987); *United States v. Samet*, 207 F. Supp. 2d 269, 281 (S.D.N.Y. 2002); *cf. United States v. Symington*, 195 F.3d 1080, 1087 (9th Cir. 1999); *see also People v. Gallano*, 821 N.E.2d 1214, 1224 (Ill. App. Ct. 2004).

Even assuming *arguendo* that such testimony did not result in a mistrial (as it should have), it was the type of information that is material to any ongoing jury deliberations.  Juror X reported extensive bullying in the jury room, in violation of the Court's jury instructions.  (*See*, *e.g.*, Instruction No. 4.3 (prohibiting "coercion or intimidation or bullying of others").)  No investigation was ever held into the bullying reported by Juror X, and no means of redressing bullying was ever attempted.[8]  Therefore, even assuming *arguendo* that deliberations should have been allowed to continue after Juror X's dismissal, the lack of any hearing into bullying further tainted the deliberations and constitutes another reason that a mistrial should be granted.  This is especially true if the investigation confirmed that the presiding juror was one of the bullies, as Juror X now reports.  (Ex. A, ¶¶ 13-14.)

*Fifth*, a mistrial should have been declared due to the jury's failure to comply with the Court's jury instructions regarding deliberations, which led to a juror being pressured off of the jury due to her minority views.[9]  In addition to other evidence that defendants have cited in previous filings, Juror X's *ex parte* communications with Court personnel further demonstrate the necessity of a mistrial.

*Sixth*, Juror X's dismissal under these circumstances mandated a mistrial.  As an initial matter, Juror X did not want to be dismissed, never indicated to the Court that she wanted to be dismissed, and was not asked by the Court whether she wanted to be dismissed.  (Ex. A, ¶¶ 15-

---

[8] This is an alternative ground for a mistrial.  As defendants have argued elsewhere, and continue to press here, the jury should not have continued to deliberate once Juror X was dismissed from the jury; rather, a mistrial should have been declared.

[9] *See, e.g., Thomas*, 116 F.3d at 621-22; *Brown*, 823 F.2d at 596; *Samet*, 207 F. Supp. 2d at 281; *cf. Symington*, 195 F.3d at 1087; *see also Gallano*, 821 N.E.2d at 1224.

16.)  All of these are facts that defendants did not know until after speaking with Juror X after May 10.  In addition, defendants were not informed Juror X had told both the Courtroom Deputy and the Court that she was being bullied, as Juror X now describes.  Nor were the parties informed previously that the Courtroom Deputy had told Juror X not to say "that" — report the bullying — because to do so would require a mistrial and waste 16 years of effort that had been expended by the Court on the case.  Had defendants been so informed, defendants would have objected to Juror X's dismissal on those grounds.

Furthermore, the Court had promised to "hear from both of you before I take any further action" (1/25/06 Trial Tr. at 10717), and that, before Juror X's departure, it would "certainly do what I've done in the past with one other juror in this case, and that's to bring one counsel from each side into my chambers to talk with her."   (*Id.* at 10715.)   Had such procedures been followed, defendants would have learned that Juror X did not consent to dismissal, of her account of the bullying, and that she was being bullied because she was a minority-view juror. And even assuming *arguendo* that Juror X's dismissal was proper, a mistrial is required where a holdout juror is bullied to the point that he or she cannot continue.  *See Samet*, 207 F. Supp. 2d at 281 (declaring mistrial upon dismissal of holdout juror).

## ARGUMENT

## I.     JUROR X'S AFFIDAVIT IS NOT BARRED BY RULE 606(B).

Rule 606(b) does not cover *ex parte* communications involving a juror and judicial personnel.  The Tenth Circuit has squarely addressed this issue.  *See Scisum,* 32 F.3d at 1481.

In *Scisum*, after the jurors informed the Court that they had reached a verdict, but before the verdict was announced, a "very emotionally upset and crying" juror met with the judge.  32

F.3d at 1489.  She first met with the Marshal who then brought her to the judge when she "really started to cry."  The juror was "emotionally distraught" and told the judge that she did not want to go back into the courtroom and "look at the Defendant."  *Id.* at 1488.  The judge did not notify counsel of the meeting or hold a hearing at that time.  Instead, after the court asked the juror to compose herself, the entire jury reassembled in the courtroom and rendered a guilty verdict.  The court did not disclose the *ex parte* episode until the next day.  In a post-verdict affidavit filed in support of a motion for a new trial, this juror swore to the content of her *ex parte* communications with the judge, that she told the judge she could not return to the courtroom and publicly state she agreed with the verdict, and that, but for her meeting with the judge, she would have dissented from the guilty verdict when polled.  Relying on Rule 606(b), the trial court refused to consider the juror's affidavit and denied the defendant's new trial motion.  *Id.*

The Tenth Circuit reversed and remanded for a new trial.  The Tenth Circuit noted that *ex parte* communications are barred by the Code of Conduct.  *See id.* (*citing* Code of Conduct Canon 3(a)(4)).  The Tenth Circuit held that all "non-public non-record communication with a juror," including *ex parte* discussions between court personnel and jurors, require a presumption of prejudice.  *Id.* at 1482.[10]  Because all *ex parte* communications are presumptively prejudicial, the trial court should not act on its own any time it is "presented with a problem that appears

---

[10] The doctrine of presumed prejudice is equally applicable in civil cases.  *See Fillippon v. Albion Vein Slate Co.*, 250 U.S. 76, 81 (1919); *Haley v. Blue Ridge Transfer Co., Inc.*, 802 F.2d 1532, 1535 (4th Cir. 1986) ("doctrine of presumed prejudice has been applied no less forcefully in civil cases in the federal courts."); *Spencer v. A-1 Crane Serv., Inc.*, 880 S.W.2d 938, 941 (Tenn. 1994) ("Reversal is appropriate, and indeed required, in situations where the complaining party demonstrates specific prejudice, or where the nature of the [*ex parte*] communication makes it impossible for the reviewing court to determine whether the action was actually harmless.")

likely to call for a communication with a juror." Rather, the court is required to both disclose the

*ex parte* contact and hold a hearing with the juror and all counsel present and participating:

> [T]he most sensible reaction of any judge who is presented with any problem that
> appears likely to call for a communication with a juror is a Pavlovian response:
> Notify counsel for both parties promptly, both to identify the problem and to
> discuss the appropriate procedure to follow — almost invariably that calls for a
> meeting on the record with the juror, with all counsel present and participating.

*Id.* at 1482. The Tenth Circuit concluded that the *ex parte* contact was not harmless. Relying on

the juror's affidavit, the Tenth Circuit reasoned that but for the *ex parte* episode, the juror likely

"would not have responded when the jury was polled on the guilty verdict." *Id.* at 1484.

    As noted above, the *Scisum* district court held that the juror's entire affidavit, including

the portions relating to *ex parte* communications with court personnel, was excluded by Rule

606(b). *Id.* The Tenth Circuit reversed, holding that the affidavit's paragraphs regarding *ex*

*parte* contact between the juror and the Court were not excluded by 606(b):

> [Rule 606(b)] forbids our consideration of the second paragraph of the juror's
> affidavit, in which she says flatly that she would never have voted Scisum guilty
> on Count Three. ***We can and do however credit her Aff. ¶¶ 1, 3, and 4 as to***
> ***what happened in the meeting with the judge*** (an issue on which the judge's
> recollection was not as precise as, but certainly did not controvert, the juror's Aff.
> ¶ 3.) And it is certainly not amiss for us to recognize that what the juror says in
> her Aff. ¶ 2 . . . ."

*Scisum*, 32 F.3d at 1483 (emphasis added); *see also United States v. Williams*, 613 F.2d 573, 576

(5th Cir. 1980); *State v. Schiebel*, 564 N.E.2d 54, 84 (Ohio 1990) ("[J]urors' affidavits were

admissible in support of an allegation that improper *ex parte* communication occurred between a

member of the court staff and the jury."). Moreover, as the Tenth Circuit has recognized, in a

case involving *ex parte* communications between the Court and a juror, "it is certainly not amiss

for [the Court] to recognize what the juror says" in portions of an affidavit that do not directly relate to the *ex parte* communications.  *Scisum*, 32 F.3d at 1483.

Consideration of Juror X's affidavit also does not contravene Rule 606(b) because defendants offer it to complete the record as to what the Court would have learned if it had granted defendants' ***pre-verdict*** request for an inquiry during the jury's deliberations.  Juror X states:  "If the Court had questioned me about the subjects covered by this affidavit on or about January 25, or at any time afterwards, I would have told the Court the facts that are stated in this affidavit."  (Ex. A, ¶ 2.)  Rule 606(b) does not apply to pre-verdict requests for pre-verdict inquiries, such as defendants' January 25, 2006 request.  *See Sababu*, 891 F.2d at 1335 ("In the instant case, the judge was requested to question the jurors ***during*** their deliberations and ***before*** they had reached a verdict.  ***In such a situation, [Rule 606(b)] is inoperative*** and the trial judge was not restricted by it from conducting a *voir dire* of the jury as to the effect of the transcript on the deliberations.") (emphasis added).  The Supreme Court has acknowledged a juror may report misconduct by other jurors pre-verdict without violating Rule 606(b).  *United States v. Tanner*, 483 U.S. 107, 128 (1987) ("jurors are observable by each other, and may report inappropriate juror behavior to the court ***before*** they render a verdict.") (emphasis original).  Here, Juror X reported inappropriate juror behavior to both the Court and Courtroom Deputy before the verdict.  Juror X's affidavit also fills a gap in the record concerning the *ex parte* discussions which only recently came to light.  To exclude such an affidavit on the grounds that the affidavit itself — as opposed to the *ex parte* discussions the affidavit relates — comes after the verdict turns Rule 606(b) on its head.

II.    **THE OCCURRENCE OF *EX PARTE* COMMUNICATIONS BETWEEN JUROR X AND THE COURT, INCLUDING COURT PERSONNEL, IS GROUNDS FOR A MISTRIAL.**

According to Juror X's affidavit, she had substantive *ex parte* interactions with the Court and Court personnel.  After she left the jury room, the Courtroom Deputy, Ms. Bush, approached her.  Juror X recites that she told the Deputy that she was being bullied and that the presiding juror was one of the bullies.  According to Juror X, the Deputy responded by saying, among other things, "don't tell me that! If you tell me that, that would mean a mistrial!"  (Ex. A, ¶ 13.)  Juror X also recites that the Deputy exclaimed words to the effect of: "this case has gone on for 16 years and we've all invested so much in it.  The judge has invested so much.  The judge is a very nice man."  (*Id.*)  Juror X's account of this conversation with Ms. Bush has never been disputed by the Court or by the Courtroom Deputy.  Similarly, as reported by Juror X, she had *ex parte* discussions with the Court on January 25, after she was brought back to the judge's chambers that morning.  Juror X recites that Judge Kane approached her and initiated communications by saying, "Don't worry, you don't have to do this anymore."  (*See id.*, ¶ 14.)  Juror X also states that she told the Court about the bullying that was occurring in the jury room and Judge Kane responded by saying, "don't say that.  I can't hear that."  (*Id.*)

*Ex parte* communications between jurors and the Court, including Court personnel, such as those described by Juror X, are prohibited.  *See Scisum*, 32 F.3d at 1481; *see also* Code of Conduct for United States Judges Canon 3(a)(4) (federal judges may neither initiate nor consider *ex parte* communications with jurors); Flamm, Judicial Disqualification, § 14.5.2 ("It is well settled that a trial judge should not entertain — let alone initiate — communications with individual jurors, except in open court with prior notification to counsel."); Charles Wolfram,

14

Modern Legal Ethics, § 17.6.4 ("A judge may not fraternize or hold *ex parte* conversations with jurors or send them instructions without giving counsel notice and an opportunity to be present"). Nor does it matter that some of the *ex parte* communications were with Court personnel rather than the Judge.  *See United States v. Brande*, 329 F.3d 1173, 1177 (9th Cir. 2003); *Schiebel*, 564 N.E.2d at 68; *see also* Code of Conduct for United States Judges, Commentary to Canon 3(A)(4) ("A judge should make reasonable efforts to ensure that this provision [prohibiting *ex parte* communications] is not violated through law clerks or other staff personnel"); ABA Model Code of Judicial Conduct Canon 3(C)(2) ("A judge shall require staff, court officials, and others subject to the judge's direction and control to observe the standards of fidelity and diligence that apply to the judge and to refrain from manifesting bias or prejudice in the performance of their official duties.").

Per Juror X, after she mentioned the bullying, the Courtroom Deputy exclaimed, "Don't tell me that!  If you tell me that, that would mean a mistrial!"  (Ex. A, ¶ 13.)  According to Juror X, during their *ex parte* conversation, the Courtroom Deputy also communicated words to the effect of:  "This case has gone on for 16 years and we've all invested so much in it.  The judge has invested so much.  The judge is a very nice man."  (*Id.*)  Such comments, as recited, were improper, because they had the effect of dissuading Juror X from expressing her concerns regarding bullying and from revealing the circumstances that led to her departure from the jury room.  It was improper for Juror X to be burdened with being the possible cause of a mistrial and the cause of waste of 16 years of effort for reporting her concerns about bullying.  Nor was it proper to suggest to Juror X that her reports of bullying were somehow an affront to the judge by asserting to Juror X that "the judge is a very nice man."  (*Id.*)  Likewise, the length of time that a

case has been pending should play no role in either the jury's deliberations or the Deputy's conduct.[11]  A defendant is entitled to a fair trial, to be notified of *ex parte* communications, and to be given an opportunity to respond regardless of how much time has elapsed since the case was filed.

The occurrence of prohibited, *ex parte* communications between Juror X and both the Courtroom Deputy and the Court was improper and independently requires a mistrial.

## III.   THE COURT'S FAILURE TO DISCLOSE *EX PARTE* COMMUNICATIONS BETWEEN JUROR X AND COURT PERSONNEL WARRANTS A MISTRIAL.

### A.   The Non-Disclosure of *Ex Parte* Communications with the Courtroom Deputy Warrants a Mistrial.

As discussed above, *ex parte* communications are prohibited.  If they do occur, they must be disclosed to the parties.  *See* ABA Model Code of Judicial Conduct Canon 3(b)(7)(a); *see also Scisum*, 32 F.3d at 1482 ("[T]he most sensible reaction of any judge who is presented with any problem that appears likely to call for a communication with a juror is a Pavlovian response: Notify counsel for both parties promptly . . . "). (*citing* Code Canon 3(a)(4)); Richard E. Flamm, Judicial Disqualification, § 14.7 (1996) ("[W]hen an oral *ex parte* communication has been

---

[11] *See United States v. Gallo*, 668 F. Supp. 736, 755 (E.D.N.Y. 1987) ("After the case has been under way for some time, the judge is increasingly concerned about the possibility of a mistrial, which would require yet another extended period in tying up the court. Thus, as the trial develops, it becomes increasingly difficult for the court to view objectively the case and its evidentiary decisions without the added tension of avoiding errors that might result in a mistrial or reversal. . . .  It becomes increasingly doubtful whether a court so concerned with the need for avoiding a retrial and avoiding error can preside in a relaxed way completely unconcerned with the outcome and concentrating only on the due process that is requisite under our system of justice.").

received by a judge, he should ordinarily disclose the contents of such communication to all parties immediately.").[12]

Even where "circumstances require" that such communications occur for non-"substantive" purposes, and no party will gain a tactical advantage as a result of such communications, the parties still are to "promptly" be "notif[ied]" of such communications:

> Where circumstances require, *ex parte* communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits are authorized; provided:
>
> (i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the *ex parte* communication, and
>
> (ii) the judge makes provision promptly to notify all other parties of the substance of the *ex parte* communication and allows an opportunity to respond.

ABA Model Code of Judicial Conduct Canon 3(b)(7)(a).[13]

Here, the *ex parte* communications with the Courtroom Deputy reported by Juror X were never disclosed to the parties. This constitutes another reason why a mistrial should be declared.[14]   *See Scisum*, 32 F.3d at 1482; Richard E. Flamm, Judicial Disqualification, § 14.7

---

[12] *See also* Code Canon 3(a)(4); Code of Conduct for United States Judges, Commentary to Canon 3(A)(4); ABA Model Code of Judicial Conduct Canon 3(C)(2).

[13] The Tenth Circuit has cited and relied upon the Model Code of Judicial Conduct. *See*, *e.g.*, *Ryder v. City of Topeka,* 814 F.2d 1412, 1427 (10th Cir. 1987).

[14] Court personnel may not violate the prohibition on *ex parte* contacts with jurors. Code Canon 3(a)(4). *See also Haugh v. Jones & Lauhglin Steel Corp.*, 949 F.2d 914, 917-19 (7th Cir. 1991) (ordering new trial after court became aware of *ex parte* communication with marshal through the jury foreman's submission of a note after the verdict); *Middleby Corp. v. Hussmann Corp.*, 1992 WL 398442 at *2 (N.D. Ill. 1992) (ordering new trial after court became aware of improper *ex parte* communication between court security officer and jury after the verdict); *Mallory v. Hartsfield, Almand & Grisham, LLP*, 86 S.W.3d 863, 867 (Ark. 2002) (indicating that *ex parte* communication with the law clerk, as part of the judge's staff, is a violation of Canon 3). The Court is required to inquire as to whether *ex parte* communications occurred. *See* Code Canon
(Continued…)

(1996).  Accordingly, the fact that the *ex parte* communications with the Courtroom Deputy were never disclosed to the parties until Juror X came forward with her affidavit requires that a mistrial be declared.

**B.    *Ex Parte* Communications with Judge Kane, According to Juror X, Were Not Fully Disclosed.**

The Court's disclosure of communications with Juror X was:

> I'll tell you quite frankly, she started to try to tell me something, and I stopped her before she did.  And I said, I don't want to hear anything from you, I can't, about the jury deliberations.  So I don't know what it is, but I stopped her.  And I said, once you get into the health services and you're talking to a doctor over there, or a nurse, then whatever you say is for your benefit, and the doctor will handle that. You can tell him whatever you want, and that would be covered by privilege.  But I don't want to know from her what is going on at this moment.

(1/25/2006 Trial Tr. at 10719.)  But Juror X swears that she told the Court that she was being "bullied" before Judge Kane "covered his ears" and said, "Don't say that.  I can't hear that." (*Id.*)  Juror X reports that she used the word "bullying" before Judge Kane put his hands over his ears.  (*Id.*)  Juror X states that she is "certain" that Judge Kane "heard and understood what I was saying," because he otherwise "would not have responded as [he] did."  (*Id.*)  The Court's disclosure also makes no mention of the fact, as reported by Juror X, that the Court had her

---

3(a)(4); *see also* ABA Model Code of Judicial Conduct Canon 3(C)(2).  Thus, in connection with the January 25 events, an inquiry should have been made into the possibility of any such contact related to Juror X.  In addition, on February 16, when defendants moved for disclosure of all communications between Juror X and Court personnel, disclosure of such communications should have occurred.  Additionally, if the Court had held a hearing on January 25, or any time thereafter, with Juror X present, relating to her dismissal and/or any *ex parte* communications with the Court, these *ex parte* discussions with the Deputy would have come to light.  Were the law otherwise, then an *ex parte* communication that fundamentally impacts a party's rights might never come to light, so long as the Court never asks about it and the Deputy never reveals it.

brought to chambers, where the Court approached her and initiated communications saying, "Don't worry, you don't have to do this anymore."  (*See* Ex. A, ¶ 14.)

Based on Juror X's affidavit, there was not a full disclosure of *ex parte* communications between the Court and Juror X, either on January 25 or thereafter — including in response to defendants' February 16, 2006 request to disclose communications between Court personnel and Juror X.  Such *ex parte* contacts are to be fully disclosed to the parties.  *See* ABA Model Code of Judicial Conduct Canon 3(b)(7)(a); Code Canon 3(a)(4); *see also Scisum*, 32 F.3d at 1482 (*citing* Code Canon 3(a)(4)); *Moore v. Knight*, 368 F.3d 936, 944 (7th Cir. 2004); Richard E. Flamm, Judicial Disqualification, § 14.7 (1996).  Accordingly, based on Juror X's sworn affidavit, the non-disclosure of her *ex parte* communications with the Court independently require a mistrial.

### C.   Non-Disclosure of *Ex Parte* Communications Also Was Inconsistent with the Court's Statement to the Parties as to How Matters Regarding Juror X Would Be Handled, and Its Prior Practice With Other Jurors in This Case.

The *ex parte* communications, and the Court's non-disclosure of those discussions, also were inconsistent with the Court's statement to the parties that it would make a record after finding Juror X (1/25/06 Trial Tr. at 10715), and that "I will certainly do what I've done in the past with one other juror in this case, and that's to bring one counsel from each side into my chambers to talk with her."  (*Id.*)  As the Court's comments reflect, during trial, another juror, Juror A[15], asked to be discharged based on events related to the case.  Juror A sent a note to the Court stating that "Ms. Cook's [comment] made on the witness stand, it makes me question my ability to come to a fair and just decision on behalf of all the other parties involved."  (10/21/05

---

[15] Consistent with the Court's instructions, defendants do not reveal the name of any jurors in this brief and instead have assigned them letters.  (*See* 2/14/06 Order at 1.)

Trial Tr. at 1996.)  Rather than simply dismissing Juror A, as the Court did with Juror X, the Court instead interviewed Juror A in chambers with counsel present.  (*Id.* at 1998-99.)  After this interview, the Court did not dismiss Juror A.

The Court indicated that, regarding Juror X, it would follow the same procedure that it had employed with Juror A.  (1/25/06 Trial Tr. at 10715)  Yet the Court dismissed Juror X following what Juror X describes as *ex parte* communications with the Court and Courtroom Deputy.  The difference between the Court's handling of the situation involving Juror A and that involving Juror X further illustrates that defendants were denied fundamental procedural safeguards relating to Juror X's departure, and why a mistrial is warranted here.

## IV.    THE LACK OF A HEARING INTO THE *EX PARTE* COMMUNICATIONS WARRANTS A MISTRIAL.

For many of the same reasons that the *ex parte* communications between the Court, Court personnel and Juror X were in error, there should have been a hearing on the record regarding the circumstances disclosed in these *ex parte* communications.

### A.    There Should Have Been a Hearing into *Ex Parte* Communications.

Separate and independent from *disclosing* the January 25 discussions between Juror X, the Court, and the Deputy, the Court should have conducted a *hearing* regarding such communications.  *See Scisum*, 32 F.3d at 1482 (holding that after *ex parte* contacts with juror, court should have conducted an interview on the record with the juror, counsel and all interested parties present and participating)[16]; *id.* at 1483 & n.5.  The Court's "after-the-fact recitation to

---

[16] Per the ABA Model Code of Judicial Conduct, even where emergencies require the Court to engage in *ex parte* communications, the Court must still "make[] provision promptly to notify all other parties of the substance of the ex parte communication and allow[] an opportunity to

(Continued…)

counsel of his own recollection of an episode" is not enough and cannot provide an adequate substitute for a hearing. *Id.* Indeed, the Tenth Circuit in *Scisum* recognizes the need for counsel to have an opportunity to examine the juror on the record as well as the inherent difficulty and prejudice in testing the strength of Court assertions regarding any *ex parte* contact between judge and juror, particularly when the juror is not present:

> Is counsel really in a position to cross-examine the judge, as would be possible with any other witness? And what of the total absence from the proceeding of the other party to the two-person conversation, the juror? Both examination and cross-examination of that nonwitness are of course unavailable to counsel as well.

32 F.3d at 1483 & n.5; *see also Fina v. United States*, 46 F.2d 643, 644 (10th Cir. 1931) ("In fact, the record is silent as to what was said by the court to the jury. Hence to be required to show something as prejudicial on which the record is silent, and defendant had no opportunity to hear, would be requiring of defendant the impossible. Such is not the law."). Though this Court should have held a hearing *sua sponte*, defendants were all the more entitled to one in light of their specific request for a hearing with Juror X.

The lack of a hearing into the *ex parte* communications, with Juror X, the Courtroom Deputy, and both parties present, resulted in prejudice to the defendants in several ways. The Deputy's comments would have discouraged Juror X from reporting the circumstances that led to her departure from the jury room and expressing her concerns regarding the deliberation process. (*See* Ex. A, ¶ 13.) The *ex parte* contacts with the Court resulted in the Court's *sua*

_____

respond." Based on Juror X's affidavit, that did not happen here. Even if Juror X's emotional distress qualified as an "emergent situation," the Court was still required to notify the parties of the substance of Juror X's *ex parte* communications and hold a hearing. *See Scisum,* 32 F.3d at 1483 ("the moment that the juror responded in the manner that she did, it should have been a conclusive signal to the judge to cut the conversation off and to bring counsel into the picture.").

*sponte, ex parte* dismissal of a minority-view juror.  Juror X's *ex parte* dismissal without a hearing prevented defendants from learning that she wanted to continue to deliberate and from determining whether she was capable of deliberating and whether there was any possible cure for the problems that gave rise to her departure from the jury room (such as additional instruction or admonition by the Court).  Had a hearing been conducted, measures may have been attempted to cure the issue and might have eliminated the bullying from the deliberations after it was revealed.[17]  Such a hearing also presumably would have revealed the necessity of declaring a mistrial, because other jurors were attempting to bully a minority-view juror off the jury due to her views about the case.

Notably, the Court's procedures here were more problematic than those employed by the *Scisum* trial court.  In *Scisum*, the trial court fully disclosed the *ex parte* communications a day after they occurred; however, the Tenth Circuit reversed because the trial court nevertheless failed to conduct a hearing.  *Id.*  The Tenth Circuit required a hearing into the *ex parte* contact with the juror present despite the fact that the juror's account of the same events via affidavit "did not controvert" the judge's recollection.  *Id.* at 1483.  Here, by contrast, Juror X reports non-disclosed, *ex parte* contacts with the Courtroom Deputy and the Court that differ from what the Court told the parties regarding those discussions.  Thus, circumstances here serve only to underscore further (beyond the events in *Scisum*) that a mistrial should be declared.

---

[17] The lack of any hearing into the *ex parte* communications — with Juror X, the Courtroom Deputy, and both parties present — also requires a presumption of prejudice, *see Scisum*, 32 F.3d at 1483, and constitutes yet another reason why a mistrial should be granted here.  In *Scisum*, the Tenth Circuit held it was necessary to **presume** prejudice where the district court does not hold a hearing on the subject of the *ex parte* communications with the pertinent witnesses, including the juror, present.  *Id.*  The same presumption applies here.

**B.** **Juror X's Affidavit Further Demonstrates Why There Should Have Been an On-The-Record Inquiry Into Bullying On January 25, 2006.**

In addition to the hearing that should have been conducted on January 25 into the *ex parte* communications between Juror X and Court personnel (discussed in Part IV.A., *supra*), there should also have been a hearing on January 25 into: (1) whether jurors were attempting to bully Juror X off the jury because of her views on the merits of the case; and (2) whether, in light of Juror X's testimony about bullying, the jurors were following the Court's instructions.

Juror X's affidavit provides support for the argument made by defendants in their prior mistrial motions — that there should have been an inquiry into whether Juror X was bullied off the jury for her views on the merits.[18]  *See, e.g., Lowe*, 463 N.E.2d at 813 ("while the court by observation can determine good cause in the case of an emotionally upset juror, it must go one step further and make a sufficient inquiry to negate any element of coercion or duress"); *see also Samet*, 207 F. Supp. 2d at 271 (conducting inquiry where juror was emotionally distressed); *Green v. Zant,* 715 F.2d 551, 556 (11th Cir. 1983) (holding that "some hearing or inquiry into the situation is appropriate to the proper exercise of judicial discretion" where "[t]he circumstances of the dismissal of [the] juror [] raise the suggestion that" her minority view "was a factor in her

---

[18] *See also Thomas*, 116 F.3d at 620 (Under Rule 606(b), where a juror becomes unavailable or incapacitated, the judge is not prevented from conducting "a thorough examination of the basis for removal — a basis that is itself unlikely to be confused with a juror's views of the sufficiency of the evidence."  Thus, Rule 606(b) does not prevent the court from making "appropriate findings of fact, including determinations of the credibility of the juror in question."); *United States v. Ginyard*, 444 F.3d 648, 654 (D.C. Cir. 2006) ("Where a juror's request to be excused does not stem from his view of the evidence, the district court, upon having reason to believe the juror is a holdout, has an enhanced duty to determine the precise circumstances of the juror's availability lest the action of the court interfere with a defendant's Sixth Amendment right to a unanimous verdict.").

dismissal").   These new and additional facts revealed by Juror X focus and strengthen the arguments previously set forth by defendants; they require declaration of a mistrial.  (*See* 3/13/06 Order at 12-13 (rejecting defendants' mistrial motion and declaring nexus between Juror X's minority view, bullying and her departure "rankest speculation"); *contrast* Ex. A, ¶¶ 4-5, 11-12, 15-16.)

A hearing could have been conducted.  Juror X was willing to participate in a hearing and she could have composed herself:

> If I had been asked, I believe I would have been willing to participate in a hearing on January 25 into the bullying that was going on in the jury room.  Because of the bullying and attacks on me, I was crying when I left the jury room.  But I believe I would have been able to compose myself for a hearing if I had been asked to do so.  ***In fact, it would have made me feel better (not worse) to know that the bullying was going to be addressed by a hearing.***

(*Id.*, ¶ 16) (emphasis added).  Juror X was never asked to participate in any such hearing.

Importantly, the necessity for a hearing was driven by Juror X's ***assertions*** about bullying, regardless of whether they would have been borne out upon investigation.  Had a hearing been held, the Court may have elicited evidence that Juror X's assertions were true, partially true, or false.  In fact, one reason for such an inquiry would have been to weigh Juror X's assertions.  No such hearing was ever conducted.  The failure to conduct such a hearing necessitates a mistrial.

**V.     A MISTRIAL SHOULD HAVE BEEN DECLARED DUE TO THE JURY'S FAILURE TO COMPLY WITH THE COURT'S INSTRUCTIONS, WHICH LED TO A MINORITY-VIEW JUROR BEING BULLIED OFF THE JURY.**

Based on Juror X's affidavit-testimony, a mistrial is required for two additional reasons: (1) Juror X was bullied off the jury for her views; and (2) the jury failed to follow the Court's

jury instructions, including the instruction not to let anyone "promote his or her personal opinions by coercion or intimidation or bullying of others" (Instruction No. 4.3).

First, Juror X confirms that she was a minority-view juror who was being bullied due to her views on the merits of the case.  (*See*, *e.g.*, Ex. A, ¶¶ 5, 12.)  There is no evidence to controvert Juror X's affidavit in this regard.  What is more, the dismissal of Juror X forever changed those deliberations by her very absence, regardless of any impact she may have had. Juror X's dismissal also undoubtedly emboldened the bullies, sending a message to them that they could bully other jurors with impunity and that their methods for quieting minority-view jurors worked.  Plus, it sent a dramatic message to other minority-view or undecided jurors that they too could be bullied from the jury.  In these circumstances, the Court should declare a mistrial.[19]

Second, according to Juror X, the jury violated several of the Court's instructions and thus failed to deliberate consistently with the law as embodied in the instructions.  These include instructions:

- prohibiting "coercion or intimidation or bullying of others;"

- to "consider any disagreement you have with another juror or jurors as an opportunity for improving the quality of your decision and therefore [you] should treat each other with respect";

- not "to fall into the trap of believing that there is something wrong with someone who is not ready to move toward what may be an emerging decision"; and

- "to be patient with one another."

---

[19] *See*, *e.g.*, *Thomas*, 116 F.3d at 621-22; *Brown*, 823 F.2d at 596; *Samet*, 207 F. Supp. 2d at 281 (declaring mistrial because court could neither dismiss juror nor permit her to continue deliberating); *cf. Symington*, 195 F.3d at 1087; *see also Gallano*, 821 N.E.2d at 1224.

(Instruction No. 4.3.)   The jury's violation of these instructions independently warrants a mistrial, especially where, as here, those violations had serious consequences (such as a juror being forced from the jury because of her view of the case).[20]  Had such a hearing been held, the Court might have taken remedial action that might have avoided a mistrial:  *e.g.*, admonishing jurors to follow the instructions set out above.[21]

## VI.    THE COURT'S DISMISSAL OF JUROR X ALSO REQUIRES A MISTRIAL.

A mistrial also is mandated by the dismissal of Juror X.  This ground for a mistrial is based on information that was not revealed to defendants until Juror X initiated contact with them.  We now know, according to Juror X, that she did not want to be dismissed from the jury; that she did not tell either the Deputy or the Court that she wanted to be dismissed; nor was she ever asked whether she wanted to be dismissed.  (Ex. A, ¶ 15.)  According to Juror X, the health professional she consulted at the Court's direction concluded that she was the target of bullies

---

[20] There should have been an inquiry (with Juror X, the Courtroom Deputy, and other witnesses present) into whether jurors were complying with the Court's instructions, including polling the jurors individually.  Instruction No. 4.3 prohibits jurors from "promot[ing] [their] personal opinions by coercion or intimidation or bullying of others."   However, there was no such investigation, and no possible cure for the bullying was ever explored.  The lack of any hearing into the circumstances that led to Juror X's departure, or of polling of the jurors, thus further tainted the deliberations and requires that a mistrial be granted.

[21] In light of what is now known, merely rereading portions of Instruction 4.3 to the jury proved insufficient to remedy the coercive atmosphere of the deliberations.  The remaining jurors were provided no indication upon the rereading of Instruction 4.3 that they had not complied with that instruction.   Absent any admonition from the Court, Juror X's absence from the rest of deliberations served to condone the abusive tactics of those responsible for that absence.   As Jurors Y and Z have attested, the bullying and attacks continued until the end of deliberations. (*See* Juror Y Aff., ¶ 4, Juror Z Aff., ¶¶ 16-18, Exs. A & B to Defs.' 5/9/06 Renewed Mot. for Mistrial.)

(Ex. A, ¶ 18), and she was released to her husband's care without any further precautions.[22]  Nor were defendants informed that Juror X reported the bullying to Court personnel, as recited in Juror X's affidavit.  Nor were the parties ever informed that the Deputy had discouraged Juror X from reporting the bullying by telling her that to do so would require a mistrial, and, in effect, that it would waste 16 years of Court effort and implying that it would be an affront to the judge.

In addition, the Court stated that that it would consult with the parties before taking any action and that it would allow the parties to meet with Juror X in chambers (as it had done with Juror A).  Defense counsel stated:  "I think we have to have some record made of what it is that this woman herself believes is happening and the effect that it's having on her.  We can't simply take a note that comes from somebody else as being facts of what happened --"  (*See* 1/25/06 Trial Tr. at 10714-15; *see also id.* ("MR. BERNICK:  But I think that we can't dismiss her.  We have to find out where she is --  THE COURT:  I'll find out.  MR. BERNICK:  -- and make a record.  THE COURT:  When we find her.").)  After the Court's and Courtroom Deputy's *ex parte* contacts with Juror X, the Court dismissed Juror X without allowing defendants the promised opportunity to speak to her.  In such a meeting, presumably Juror X could have revealed the facts stated in her affidavit — namely, that she did not want to be dismissed from service, and that she was both upset by and left the jury room because she was being bullied.  Accordingly, the Court's dismissal of Juror X without interviewing her and making a record as it

---

[22] Although the Court told the parties that the interactions between Juror X and the health professional were "subject to privilege," presumably to protect Juror X's privacy, Juror X wanted someone to listen to her complaint about the bullying and was not at all concerned with keeping such communications private.  (*Id.*, ¶¶ 2, 16, 21.)  Had the Court consulted Juror X on these matters, or permitted the parties to do so, this would have been revealed, and defendants would have raised additional objections to dismissal.

had promised it would do regarding Juror X (and as it had done with Juror A), further warrants a mistrial.[23]

The error in dismissing Juror X is further compounded by the fact that she was a minority-view juror.  (Ex. A, ¶¶ 4-5.)  It is improper for a minority-view juror to be dismissed due to her views on the case; this is particularly true where, as here, the juror does not indicate affirmatively that she wants to be dismissed.  Even where the juror does request his or her own dismissal, as the D.C. Circuit Court of Appeals explained in *Brown*, 823 F.3d at 596, "if the record evidence discloses any possibility that the request for discharge stems from the juror's view of the sufficiency of the government's evidence, the court must deny the request."  *Id.* Where the juror cannot continue, this means that the Court must declare a mistrial.  *See Samet*, 207 F. Supp. at 271.  Here, unlike the *Brown* juror, Juror X did not even request to be discharged, but the Court dismissed her despite evidence that she was being pressured to leave due to her views on the case.  (Ex. A, ¶¶ 13-14, 16.)

Any suggestion that defendants acceded to or ratified the events now challenged is squarely contrary to the record, which reflects defendants' diligence at every step.  When the Court announced that Juror X had been excused, defendants knew only the contents of the jury

---

[23] Juror X now reports that she told both the Court and the Courtroom Deputy that the presiding juror was one of the bullies.  (Ex. A, ¶¶ 13-14.)  In light of these revelations regarding *ex parte* communications, any reliance on the foreperson's note is even more misplaced.  *See Green*, 715 F.2d at 556 ("a court's acceptance of ambiguous statements of a foreperson cannot, standing alone, be deemed sufficient.")  As the Court indicated, the foreperson's note in the case at bar is ambiguous.  (*See* 1/25/06 Trial Tr. at 10725 ("It says, we need help.  I don't know, that's ambiguous.").)  In fact, defendants objected to reliance on the note as evidence of Juror X's incapacity.  (*Id.* at 10714-15 (BERNICK:  "We can't simply take a note that comes from somebody else as being facts of what happened").)

note and what the Court had told them after meeting with her, which is that there was a "health emergency" that might require that she be "hospitalized." (1/25/06 Trial Tr. at 10718.) Whatever doubts defendants may have had about the veracity of the note,[24] common decency dictated at that point that Juror X receive whatever care she needed as soon as possible, for the sake of her well-being. Defendants specifically raised and preserved, however, requests that:

- The parties meet with Juror X to inquire into the circumstances surrounding the note and her departure from the jury room (*see id.* at 10746-48);

- The parties interview the other jurors individually concerning Juror X's departure and the nature of the jury's deliberations (*see id.* at 10747-48, 10756, 10762);

- A mistrial be declared due to the dismissal of a juror because she was in the minority (*see id.* at 10721, 10748); and

- Any communications that Juror X may have had with the Court and Court personnel be disclosed (*see* Defs.' 2/16/06 Mot. To. Speak With Juror).

Moreover, defendants had not yet been informed that: (1) Juror X had not had a mental breakdown, (2) she was willing to continue to serve, (3) *ex parte* communications took place between Juror X and both the Court and the Deputy, and (4) in those *ex parte* communications, Juror X alerted the Court and the Deputy that bullying was infecting the jury deliberations. Under *Scisum*, the parties were entitled to both notice of the full content of any *ex parte* communications and an opportunity to respond to the *ex parte* contact, 32 F.3d at 1482, which they did not receive. It is only after the juror contacted defense counsel and shared her account of the events and circumstances of January 25 leading to her dismissal that defense counsel had further basis for objection. Had defendants been provided this information (which Juror X

---

[24] (*See id.* at 10715 ("We can't simply take a note that comes from somebody else as being facts of what happened.").)

provided to the Court at the time), they would have objected to the Court's dismissal of Juror X, made further requests of the Court, and moved for mistrial on additional grounds.

## VII.   THE PROCEDURE FOR DECIDING THIS MOTION DEPENDS ON WHETHER THIS COURT MUST RESOLVE ANY FACTUAL ISSUES.

In defendants' view, so long as there are no factual disputes that require this Court's resolution, this motion may be decided by the Court.  At present, defendants are not aware that plaintiffs or this Court dispute the facts presented in Juror X's affidavit.  Defendants see no impediment to this Court ruling on this motion as a matter of law, so long as this Court's consideration of this motion does not require it to resolve any factual disputes regarding communications with Juror X, including the events of January 25, the accuracy of Juror X's recitation of her interactions with the Court and Court personnel and Juror X's perception of the circumstances and events leading to her departure from the jury room.  In the event that this Court finds that it is necessary to resolve any factual disputes in order to resolve this motion, then defendants would request the opportunity to submit supplemental briefing concerning the appropriate method(s) of disposing of this Motion.

## VIII.   SANCTIONS ARE UNWARRANTED.

### A.    Neither Juror X's Affidavit Nor This Motion Violate Rule 606(b).

In its May 10, 2006 Order denying defendants' renewed motion for mistrial, the Court discussed Federal Rule of Evidence 606(b) and certain case law involving that Rule, stating that: "[f]urther indifference to this clearly established law by counsel for either side on the issue will

be deemed sanctionable." (5/10/06 Order at 4.) [25]  Neither Juror X's affidavit nor this motion reflect indifference to Rule 606(b) or the Court's rulings.

Defendants acknowledge the Court's view of the law regarding Rule 606(b) and specifically acknowledge that, under the Court's view, certain decisions relating to Rule 606(b) may prohibit consideration of juror affidavits such as those previously submitted by defendants in this case.  (*See* 3/13/06 Order at 6-10.)  Defendants, however, are pursuing a good faith position that such affidavits are admissible under existing case law related to Rule 606(b) and otherwise cited herein — and/or a reasonable extension of such law — and thus should be permitted to state their good faith arguments on the law and the facts presented here.  *See Scisum*, 32 F.3d at 1481; *Williams*, 613 F.2d at 576; *Schiebel*, 564 N.E.2d at 68; *see also Sababu*, 891 F.2d at 1335.  Defendants are entitled to pursue these arguments based on legitimate advocacy in an effort to persuade the Court of their position and, in any event, are entitled to make a record for appellate review by the Tenth Circuit should the District Court reject defendants' arguments here.  Nor should defendants be sanctioned for attempting to do so.  (*See generally* Ex. B, Affidavit of Charles W. Wolfram (stating that defendants should not be sanctioned for filing the present motion).)

### 1.      Consideration of Juror X's Affidavit Does Not Violate Rule 606(b).

As discussed in Section I, *supra*, consideration of Juror X's affidavit does not violate Rule 606(b).  Rule 606(b) does not cover *ex parte* communications involving a juror and judicial

---

[25] The Court has not stated under what authority it would impose sanctions.  The Court's May 10 Order does not sufficiently describe the conduct alleged to be sanctionable in order to support the imposition of sanctions.  *See*, *e.g.*, *Hutchinson v. Pfeil*, 208 F.3d 1180, 1184 (10th Cir. 2000).

personnel.  *See Scisum*, 32 F.3d at 1481.  The Tenth Circuit has also held that, where an affidavit relates to *ex parte* communications, "it is certainly not amiss for [the Court] to recognize" portions of an affidavit that do not directly relate to the *ex parte* communications.  *Scisum*, 32 F.3d at 1483.

Defendants offer Juror X's affidavit not only for the purpose of revealing the relevant information concerning the *ex parte* communications, but also to complete the record as to what the Court and the parties would have learned had it conducted defendants' requested ***pre-verdict*** inquiry.  As discussed *supra*, Rule 606(b) does not apply to pre-verdict inquiries.  *See Sababu*, 891 F.2d at 1335.  Juror X's account of the events of January 25 appears nowhere in the record as it now exists — indeed, the information provided by Juror X differs from what is already in the record.  Because the information in Juror X's affidavit is not currently part of the record, the only way for defendants to complete the record for purposes of appeal is by filing the affidavit.  *See United States v. Adams*, 271 F.3d 1236, 1242 (10th Cir. 2001) ("Our rules anticipate that when an appeal is based upon the challenge to the admission or exclusion of evidence, we must be furnished not only with pertinent transcript excerpts, but also with pertinent trial exhibits that are part of the record").  Defendants should not be sanctioned for filing an affidavit that they are procedurally required to file.

### 2.    This Motion Does Not Contravene Rule 606(b).

In addition, this motion does not contravene Rule 606(b).  The motion is premised upon the Court and Courtroom Deputy's *ex parte* communications with Juror X — and does not ask the Court to "consider[] juror statements regarding the internal deliberations process" (5/10/06 Order at 4) except in so far as such a statement may be recognized or permitted by Tenth Circuit

law in *Scisum* in the context of analyzing *ex parte* communications with a juror.  32 F.3d at 1483 (It is "not amiss for [the court] to recognize what the juror says in her Aff. ¶ 2," despite the fact that Rule 606(b) forbids the court from considering that paragraph).  This motion also provides additional compelling support for the argument defendants previously raised, but that was rejected by the Court on May 10, that mistrial should have been declared if Juror X's emotional distress — and subsequent dismissal — were caused by her views of the case.  *See Samet*, 207 F. Supp. 2d at 281 (declaring mistrial where court could neither dismiss juror nor permit her to continue deliberating).  Because defendants' motion does not violate Rule 606(b), defendants should not be sanctioned.

### B.  Sanctions Would Have an Improper Chilling Effect on Litigants.

Sanctions should not be imposed because both the threat and imposition of penalties under these circumstances would deter litigants — including defendants — from pursuing potentially meritorious arguments, claims and positions on the facts and the law.  As courts have recognized, the purpose of sanctions is "not to chill the bringing of facially valid lawsuits, or a lawyer's creativity in introducing novel theories of recovery."[26]  As one court has put it:

---

[26] The danger of a chilling affect is not limited to the initiation of lawsuits.  Sanctions should not be imposed to chill any legitimate advocacy, including the filing of motions.  *See United States v. Figueroa-Arenas*, 292 F.3d 276, 279 (1st Cir. 2002) (reversing imposition of sanctions based on motion to dismiss or reassign case; "a judge's power to sanction an attorney is not unbridled — and that power cannot be used to chill vigorous but legitimate advocacy"); *Hackman v. Valley Fair,* 932 F.2d 239, 242 (3d Cir. 1991) (advising that courts exercise great restraint in imposing sanctions "lest the prospect thereof chill the ardor of proper and forceful advocacy"); Fed. R. Civ. P. 11, advisory committee note ("[Rule 11] is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories."); *see also In re Yagman,* 796 F.2d 1165 (9th Cir. 1986) (reversing imposition of sanctions where their imposition posed a direct threat to the balance between sanctioning improper behavior and chilling vigorous advocacy).

> we embrace the fact that zealous advocacy is the attorney's ideal. Hard-fought, energetic and honest representation is at the bedrock of our judicial process. None of the various rules and statutes that authorize sanctions are intended, nor should they be implemented, "to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories."

*Brown v. Baden*, 796 F.2d 1165, 1183 (9th Cir. 1986). The Tenth Circuit has repeatedly refused to impose sanctions where there was some basis to a litigant's claim. *See, e.g.*, *Aerotech v. Estes*, 110 F.3d 1523, 1528 (10th Cir. 1997) (imposition of sanctions under 28 U.S.C. § 1927 requires a "serious and standard disregard for the orderly process of justice. This is an extreme standard."); *Burkhart v. Kinsley Bank*, 852 F.2d 512, 515 (10th Cir. 1988) (no abuse of discretion in denying sanctions against plaintiffs where several rulings by a different court supported the plaintiffs' theory); *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1274 (10th Cir. 1989) (upholding denial of sanctions where the party at issue "ha[d] raised some complex issues"); *Bridgestone/Firestone, Inc. v. Local Union No. 998*, 4 F.3d 918, 924 n.3 (10th Cir. 1993) (upholding denial of sanctions where "neither side was able to find authority squarely on point"; court notes that overzealous advocacy, while annoying to the court, did not call for sanctions).

Here, the imposition of sanctions would not only penalize defendants for pursuing factual and legal theories they believe warrant a mistrial, but would also discourage future litigants from filing motions based upon disputed *ex parte* contacts between Court personnel and jurors — a result the Tenth Circuit surely did not intend. *See Scisum*, 32 F.3d at 1486 (granting mistrial based upon judge's *ex parte* contact with juror as set forth in juror affidavit). Litigants should not be discouraged from raising such *ex parte* communications as error, particularly where participants in those communications (such as Juror X) swear to them under oath.

## CONCLUSION

For the foregoing reasons, the circumstances recited in Juror X's affidavit, including the Trial Judge's and Court personnel's *ex parte* communications with the juror, and the Court's dismissal of the juror without a hearing, require that the Court declare a mistrial, and defendants respectfully renew their request that the Court declare such a mistrial.   Separately and independently, each of the errors based on Juror X's affidavit and discussed herein, could have, and should have, resulted in a mistrial.  When taken together, in their totality, the effect of these multiple errors was compounded and resulted in significant prejudice to defendants.  If the Court finds it necessary to consider any factual disputes in order to adjudicate this motion, defendants also request the opportunity to submit additional briefing regarding the procedure for deciding the motion.

Pursuant to Local Rule 7.1, counsel for defendants Ellen Ahern conferred with counsel for plaintiffs Peter Nordberg by telephone on July 20, 2006.  Mr. Nordberg indicated that plaintiffs oppose defendants' motion.

Dated: July 20, 2006

Respectfully submitted,

One of the Attorneys for the Defendants

Charles Fried
1545 Massachusetts Avenue
Cambridge, Massachusetts 02138
Phone: 617-495-4636

Attorney for ROCKWELL
INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY

36

s/ John E. Tangren
One of the Attorneys for the Defendants

David M. Bernick
Douglas J. Kurtenbach
Ellen Therese Ahern
Mark J. Nomellini
John E. Tangren
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636
Phone:  312-861-2000
Fax:     312-861-2200

Attorneys for ROCKWELL
INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY

s/ Joseph J. Bronesky
One of the Attorneys for the Defendants

Joseph J. Bronesky
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Phone:  303-297-2900
Fax:      303-298-0940

Attorneys for ROCKWELL
INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 20, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses for the following:

Peter B. Nordberg, Esq.
BERGER & MONTAGUE P.C.
1622 Locust Street
Philadelphia, PA  19103
pnordberg@bm.net
kmarkert@bm.net

Gary B. Blum, Esq.
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206
blumg@s-d.com

s/ Courtney Biggins_____
Courtney Biggins (legal assistant)