IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, et al.,

Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION and THE DOW CHEMICAL COMPANY,

Defendants.

---

## ORDER ON DEFENDANTS' SECOND RENEWED
## AND NEW MOTION FOR MISTRIAL

---

Kane, J.

The instant motion for mistrial (Doc. 2195) follows Defendants' previous renewed motion for mistrial and related motions, *see, e.g.*, Defs.' Renewed Mot. For Mistrial (Docs. 2174/2175); Defs.' Mot. to Speak with Juror (Doc. 2122); Defs.' Mot. to Preserve Jury Notes (Doc. 2124), and my orders deciding these motions, *see* Order on Pending Mots. (Doc. 2161), as amended, (Doc. 2168, Attach. 1) [hereinafter "March 13 Order"]; Order (Doc. 2179), dated May 10, 2006 [hereinafter "May 10 Order"]. All previous requests for mistrial in these motions and made orally during trial have been denied.

Jury selection began on October 2, 2005. A jury of eleven commenced deliberations on Friday afternoon, January 20, 2006.[1] On January 25, 2006, after 2 ½ days of deliberations, I excused Juror X. The ten remaining jurors returned verdicts in favor of Plaintiffs and against

---

[1] Twelve jurors were originally seated, but one had been excused during the course of trial for reasons not germane to the instant motion.

Defendants on February 14.  The parties had previously stipulated that unanimous verdicts were not required, and reiterated that stipulation after Juror X's departure.  The only question raised by the latest motion is whether the post-verdict Affidavit of Juror X raises any additional grounds for declaring a mistrial now.[2]

The Record Regarding Juror X's Excusal

The record regarding the circumstances immediately preceding and following Juror X's being excused from the jury is as follows:

! The jury began deliberations on Friday afternoon, January 20.  It recessed for the weekend and returned on Monday, January 23.

! On Tuesday, January 24, the court received the following note from the person later identified as the presiding juror:

> I need to request a meeting with Judge Kane @ 12:45 Today if Possible.

Feb. 14, 2006 Courtroom Minutes (Doc. 2116), Jury Notes attach.

! All counsel were notified and given copies of the note.  They agreed with the court's proposed response, and the following letter was delivered to the jury via the Court Security Officer:

> Dear [Presiding Juror],
>
> Please refer to Jury Instruction No. 4.4 on Page 86.  I cannot meet with you except on the record in open court with counsel for the parties present. Please write a note to me and if I have to bring counsel in, I will. Otherwise, I will answer you in writing.  This process is cumbersome, but the law is intend[ed] to make certain that I do not attempt in any way to

---

[2]     Juror X's Affidavit, as provided with Defendants' Notice of Filing of Juror Affidavit (Doc. 2202), is appended to this order.

influence your deliberations or verdict.  Thus, a written record of all communications must be made.

Thank you for your cooperation in this regard.

Sincerely,

/s/ John L. Kane

*Id.*

!      On Wednesday, January 25, at 9:25 a.m., a hearing began on an unrelated defense motion

in the same case.  At 10:06 a.m. the court received the following note from the presiding

juror:[3]

> [Juror X]
> Just left the room and
> During a heated Discussion
> she said she would… thinking
> Suicidal thoughts last night
> And she would rather Die
> Then finish this case.  We Need
> Immediate help.  We…

!      I declared a brief recess to read the jury note.  After reconvening at 10:07, I advised

counsel as follows:[4]

---

[3]      I originally sealed this and a related jury note regarding Juror X to protect Juror X's privacy.  *See* Jan. 25, 2006 Trial Tr. at 10737; *see also* March 13 Order (Doc. 2161) at 15 (denying Defendants' motion to unseal notes).  Juror X has since declared this protection is unnecessary.  Juror X Aff. ¶ 21.  Accordingly, I have ordered that the jury note quoted above and on page 7-8 *infra*, both received by the court on January 25, 2006 and currently denominated as pages 18 and 19 (sealed) of Doc. 2120, be unsealed with the name of any jurors redacted.

[4]      I also originally sealed the transcript excerpts quoted below, *see* Order Sealing Transcript (Doc. 2055), again to protect Juror X's privacy.  I subsequently ordered that a significantly redacted version of this transcript appear in the public record.  *See* March 13 Order at 15; Jan. 25, 2006 Trial Tr. (Doc. 2164) (redacted).  In light of Juror X's subsequent statements, *see supra* note 3, I have ordered that the publically available transcript for the January 25, 2006 proceedings in this action be redacted only with respect to juror names.

THE COURT:  We have a juror that's [sic] having a mental breakdown.  There are eleven jurors.  I've called for the health services facility here.  She has left the jury room, the particular juror.  And I think my primary obligation is to attend at this point to her welfare.  But at the same time, I think it's already sufficient that I excuse her from the case.

[COUNSEL FOR PLAINTIFFS]:  Will you tell – can you tell us, Your Honor, which juror it is?

THE COURT:  It is – I only have a first name, [Juror X].  So I don't know – I'll have to look and see which one it is.  I just got this information.  I'll Xerox copies of the note, but – I'm going to excuse her from the jury.  Any objection to that?

[COUNSEL FOR PLAINTIFFS]:  No, there is no objection if her health warrants it, Your Honor.

THE COURT:  All right.

[COUNSEL FOR DEFENDANTS]:  Your Honor, the only thing – she clearly should be excused.  But I'm a little bit wondering whether this has some implication for what is actually happening in that room.

THE COURT:  Yes, it does.  I'll give you a copy of it, but let's go on the record right now.  It says, '[Juror X] just left the room during a heated discussion.  She said she was thinking suicidal thoughts last night, and she would rather die than finish this case.  We need immediate help.  We – '  That's the --- I'm reading it verbatim.

Jan. 25, 2006 Trial Tr. at 10713-14.

¡      After further discussion with counsel about what to advise the remaining members of the

jury, I excused Juror X from the jury and this colloquy ensued:

[COUNSEL FOR DEFENDANTS]:  . . . I think that we have to have some record made of what it is that this woman herself believes is happening and the effect that it's having on her.  We can't simply take a note from somebody else as being facts of what happened ---.

THE COURT:  We don't know where she is right now.  We're looking for her.

[COUNSEL FOR DEFENDANTS]:  But I think that we can't dismiss her.  We have to find out where she is. . . .

4

THE COURT:  I'll find out.

[COUNSEL FOR DEFENDANTS]:  --- and make a record.

THE COURT:  When we find her.

[COUNSEL FOR DEFENDANTS]:  We'll see where to go from there.  Right now it's premature. . . .  She can't be compelled to deliberate. (Tr. 10715).

THE COURT:  No.  I'm going to excuse her from the jury, period.  That I'm going to do.  I'm going to – my primary obligation is to see how she's able doing [sic], if she's able to talk.  And I will certainly do what I've done in the past with one other juror in this case, and that's to bring one counsel from each side into my chambers to talk with her.[5]

* * *

[COUNSEL FOR PLAINTIFFS]:  Before anything is done, either in the way of interrogating the excused juror or anything else, I do not believe the Court should be delving into the details of the jury deliberations.

THE COURT:  I'm not going to.  I'm going to do what I just said.  We're looking for her, people are searching for her now, we're trying to get her some medical care, and take that responsibility as the top priority.  After we do that, if she is able to even talk, whether she's sedated or – I don't know.  There is [sic] lots of things that are pure speculation.  Once we find out, then I'll meet with ---.

[COUNSEL FOR PLAINTIFFS]:  Your Honor.

THE COURT:  Let me finish please, Counsel.

[COUNSEL FOR PLAINTIFFS]:  I just want  to note – Your Honor, I'll go back and look at the law if I can.  I very respectfully object to any intrusion or any intervention or any interrogation about the process of jury deliberations.  The jury deliberations should be allowed to continue without any –

THE COURT:  I'll hear from both of you before I take any further action.  I told you what I want to do on this right now, and that's all.  And I'm going to ask the jury not to deliberate further until we get to the bottom of this.

---

[5]     This reference is to a situation early in trial in which a juror indicated that she might not be able to be fair and impartial in light of certain testimony by one of the named Plaintiffs.  *See infra* note 17.

*Id.* at 10714-17.

Court recessed at 10:12 a.m.

! By the time court recessed, Juror X had been located and brought to my chambers by the

Courtroom Deputy.  I met briefly with Juror X and arranged for her to receive medical

care before returning to the bench.

! Court reconvened at 10:20 a.m. and counsel were advised as follows with respect to

Juror X:

> THE COURT:  The juror was found, and she is in my chambers at this point, with some of my staff comforting her.  She has called for her husband.  I have excused her from the jury.  That's why she called her husband to come and pick her up.  And she is going to be walked over to the health services department, which is in the building across the street.

> I just learned – I digress, but I just learned that if you have a health emergency, you have to take people there, rather than them coming here, which is, I guess, another triumph of bureaucracy over common decency.  But nevertheless, that's what we're doing.  And I want her to be in professional hands, such as they may be, and to see whether she needs to be hospitalized or whether she can be sent back to her husband – have her husband pick her up and take her home.  I don't know, and I'm not trying to judge that.

> So that's where we are at this point with her.

> And the other thing is, I – the jury declared their own thirty minute recess.  And I instructed the Court Security Officer to tell the jury when they come back not to deliberate until further order of court.

> So that's where we are.

*Id.* at 10718.

*  *  *

> I'll tell you quite frankly, she started to try to tell me something, and I stopped her before she did.  And I said, "I don't want to hear anything from you, I can't, about the jury deliberations."  So I don't know what it is, but I stopped her.  And I said, "Once you get into the health services and you're talking to a doctor over there, or a nurse, then whatever you say is for your benefit, and the doctor will handle that.

6

You can tell him whatever you want, and that would be covered by privilege."
But I don't want to know from her what is going on at this moment.

*Id.* at 10719.

\* \* \*

THE COURT:  I don't think the Rules of Evidence really contemplate a juror
having a nervous breakdown, and that's – I'm using that term in its popular sense.
I don't know exactly, but I do know that this woman is demonstrating a lack of
control over her emotions.  She is crying and not doing too well.  But I'm certainly
not a doctor, and I'm not going to say anything more about that.

*Id.* at 10720-21.

!   After the conclusion of the arguments made on the unrelated motion that had been

interrupted earlier, the court returned to the matter of Juror X:

THE COURT:  And I'll get back to this more pressing matter with regard to the
juror now.  And I think that the – I don't know that it does, but whether the code
of judicial ethics requires me to say this or not, but I will tell you all that I am
going to confer with Judge Matsch, my colleague, about – see if he has any
experience in handling situations like this.  And whatever he says, I will share with
you, once I talk to him.

[COUNSEL FOR DEFENDANTS]:  The defendants would not have a problem
with it on that basis.

*Id.* at 10733.

Court recessed at 10:49 a.m.

!   At 11:20 a.m., the jury sent a second note to the court, signed by the presiding juror:[6]

I Just Want to make sure
that The Court knows that
[Juror X] made comments about
Suicidal thoughts last night &
Restated it today in front of
everyone in the Jury Room.  It may
not be proper to release her right

---

[6]   *See supra* note 3.

now Even to her husband.  I
am concerned about her safety.

!   At 11:35 a.m. court reconvened.  After colloquy about sealing the record to protect

Juror X's privacy, counsel presented the authorities they had gathered during the recess

regarding what to do with the remaining jurors who had been ordered not to deliberate

until further notice.  Jan. 25, 2006 Trial Tr. at 10739-51.  Defendants argued they should

be allowed to interview both Juror X and the remaining jurors on the record "to determine

the circumstances surrounding this juror's departure, whether in fact votes were taken

where she was a minority, whether votes were taken where she was being put under

pressure by the other jurors in an improper way."  *Id.* at 10747.  Plaintiffs argued that such

inquiry would violate the secrecy of the jury's deliberations and therefore was not

permitted under various authority.  *Id.* at 10739-44, 10749-51.  After hearing from both

sides, I advised counsel as follows:

> THE COURT:  Thank you.  My sole concern with sealing – and I frankly have to
> tell you that other than trade secrets [and] patent litigation, this is the first time
> I've ever sealed anything, and I only do it in the most extreme circumstances.
>
> And my only concern is to protect the privacy interests of  a juror who has been
> here throughout this trial and devoted her very, very best efforts to it.  And I see
> no useful purpose in allowing her name to be disclosed.
>
> Other than that, the attorneys and parties can be guided by either the rules of
> professional conduct or their own sense of appropriateness in discussing the matter
> with anyone else.
>
> I – first of all, there is no indication at all of any threats from outside of this jury.
> The second is that none of these situations, the few cases I've been able to
> consider – and, as I told you, I would talk to my colleague of many years, Judge
> Matsch, to see if he had any experience in these matters.  And conclude that there
> simply are no two situations that are alike.

I did talk with Judge Matsch, and he said that he felt that what scant authority there was for something of this nature, not concerning an outside threat from the jury, was that it was a matter of judicial discretion.  And he said, when it gets down to something like this, you've got to go with your gut.  And that's essentially what I am doing.  And he said, "What are your instincts?"  And I told him, and he said that his were essentially the same.

So to the extent that I did consult with somebody else, you know, and you know what I discussed with him.  And this is what my instincts have told me to do, and that's what I'm going to.

I'm going to bring the jury into this courtroom.  I'm going to inquire generally if they feel that they can continue in light of the fact that one of their fellow jurors has  been excused from further deliberation in this case.  I'm then going to tell them that the deliberations of the jury must remain secret, and that is why I am not permitting any kind of inquiry into where they stand or what their vote is of any sort and that they continue to remain under order of court, not to discuss such things with anyone, other than the jury while they are deliberating, and that there will be no inquiry further about this until they have returned their verdicts and are discharged from the case, at which time there may or may not be a further inquiry.

*Id.* at 10751-53.

! At 12:30 p.m. the jury was brought into the courtroom.  *Id.* at 10757.  After advising them that Juror X had been excused from further jury service, I continued as follows:

THE COURT:  Now it's incumbent upon me to ask you if you feel that you can continue in light of the fact that this juror has been excused and that there has been some degree of turmoil, for want of a better word, that has taken place.

Do you believe that you can continue with your deliberations?

THE JURY:  Yes.

THE COURT:  Okay.  Then there [are] a couple of things I need to tell you about.  And it's this:  That I'm going to repeat a couple of the jury instructions to you.  And in one of the jury instructions I told you that if you had a question, I couldn't answer it without bringing the attorneys in and going over things, and that if there was no answer to it, I would tell you that.

The primary consideration that I have at this point, and the actions that I am taking, is to maintain and keep inviolate the secrecy of your deliberations.  We do

9

> not want the – the law does not want, and I will not permit, inquiry into what your deliberations are.  That's a matter for you people to decide.  And that's a matter – until you reach a verdict, there is certainly nothing more.
>
> If you need any additional assistance or guidance, something of that nature that comes up, you know what to do.  That's to write a letter or a note, and then I will give the note to counsel, and we'll figure out if it can be answered or not, and if so, how.  But I can't go further than the instructions in advising you about the deliberative process that you have.

*Id.* at 10757-58.

!   I read the jury a paragraph from Instruction 4.1, and Instruction 4.2 in its entirety, *id.*

at 10758-59, including the following admonition:

> Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it with your fellow jurors, and listened to the views of your fellow jurors.

*Id.* at 10759.

I then read a substantial portion of Instruction No. 4.3 and directed the jury to return to

their deliberations.[7]  *Id.* at 10760-62.

!   The jury continued to deliberate for almost three more weeks with no objection from

Defendants.  During those deliberations, the jury raised eight additional questions on

matters unrelated to the instant motion.  Defendants filed numerous responses to those

questions but never requested that deliberations be halted, nor raised any objection to the

_____

[7]        As noted earlier, the parties had stipulated that unanimity was not required to reach a verdict:  if there were 12, 11 or 10 jurors, there could be two dissenting votes, and if there were 9 or fewer jurors, there could be one dissenting vote.  *See* March 13 Order at 5 (discussing parties' stipulation).  I misspoke on January 25 by advising the jury in Instruction 4.2 that nine jurors must agree to any answer on the verdict form.  After the error was pointed out by Plaintiffs' counsel and the jury submitted a question on this point the same day, I consulted with counsel and with their consent notified the jury that eight votes were sufficient to answer any question on the verdict form.  *See* Jan. 25, 2006 Trial Tr. at 10763-67.

excusing of Juror X nor the manner in which that matter was handled until after the jury

returned its verdicts for Plaintiffs and against Defendants.

<u>Duty to Safeguard Jury Deliberations</u>.

"The secrecy of deliberations is the cornerstone of the modern Anglo-American jury

system." *United States v. Thomas*, 116 F.3d 606, 618 (2nd Cir. 1997).  This principle, which is

manifested in Federal Rule of Evidence 606(b) and other long-established authority, is

fundamental to consideration of Juror X's affidavit and the matters raised by Defendants' most

recent arguments.

Rule 606(b) provides:

> (b)  Inquiry into validity of verdict or indictment.
>
> Upon an inquiry into the validity of a verdict or indictment, *a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or to dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith*, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.  Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

(emphasis added).

I thoroughly discussed Rule 606(b), its history and the Supreme Court and Tenth Circuit

cases informing it in my March 13 and May 10 Orders.  No useful purpose would be served by

repeating that discussion here.  Suffice to say that Rule 606(b) has not been amended since then[8]

---

[8]    Earlier this year, the Supreme Court adopted an amendment to Rule 606(b) that will become effective in the absence of contrary Congressional action.  See H.R. Doc. 109-108, at 36-39 (2006); 28 U.S.C. § 2072.  This proposed amendment adds language to the Rule authorizing juror testimony about whether there was a mistake in entering the verdict on the

and no Tenth Circuit decision has been issued changing, reversing, altering or modifying the rule, as stated in *United States v. Jelsma*, 630 F.2d 778 (10th Cir. 1980), that Rule 606(b) "specifically precludes judicial inquiry into the validity of a verdict," and that courts may not consider affidavits of jurors presented to impeach it. *Id.* at 779.

The court's duty to safeguard the secrecy of the jury's deliberations does not rest solely on Rule 606(b), and does not come into being only after the jury reaches its verdict. *E.g.*, *Thomas*, 116 F.3d at 618-20 ("[t]he jury as we know it is *supposed* to reach its decisions in the mystery and security of secrecy; objections to the secrecy of jury deliberation are nothing less than objections to the jury system itself")(emphasis in original at 619). In *McDonald v. Pless*, 238 U.S. 264, 267-68 (1915), for example, the Supreme Court underscored the strong public policy promoting private and unassailable jury deliberations, stating that the securing of evidence of facts that might establish internal misconduct in the course of jury deliberations risks making "what was intended to be a private deliberation the constant subject of public investigation – to the destruction of all frankness and freedom of discussion and conference." So, too, the Advisory Committee Notes to Federal Rules of Evidence 606(b) (citing Senate Report No. 93-1277) observe that "common fairness requires that absolute privacy be preserved for jurors to engage in the full and free debate necessary to the attainment of just verdicts." The Tenth Circuit has described this as "the cardinal principle that the deliberations of the jury shall remain private and secret in every case." *United States v. Dempsey*, 830 F.2d 1084, 1089 (10th Cir. 1987) (quotation omitted); *United States v. Beasely*, 464 F.2d 468, 470 (10th Cir. 1972) (same).

---

verdict form. *See* H.R. Doc. 109-108 at 36-39. It is not relevant to the issues addressed herein.

This principle, and the district court's duty to safeguard the secrecy of the jury's deliberations, therefore applies both during deliberations and after a verdict is reached.  *See Thomas*, 116 F.3d at 618-20 (once the jury has begun to deliberate, the trial judge has a duty to safeguard the secrecy of its deliberations); *United States v. Symington*, 195 F.3d 1080, 1086 (9th Cir. 1999) ("a trial judge must not compromise the secrecy of jury deliberations").  The duty begins with the commencement of deliberations and bars inquiry into the deliberations by both counsel and the presiding judge.  *See, e.g.*, *Thomas*, 116 F.3d at 618-21 ("Protecting the deliberative process requires not only a vigilant watch against external threats to juror secrecy, but also strict limitations on intrusions from those who participate in the trial process itself, including counsel and the presiding judge."); *Symington*, 195 F.3d at 1086; *see also United States v. Scisum*, 32 F.3d 1479,1483 (10th Cir. 1994) (judge should have cut off conversation with juror the moment she began to talk to him about jury deliberations).  The Tenth Circuit has condemned pre-verdict inquiry into a jury's deliberations, calling it "a dangerous intrusion into the proceedings of the jury" and stating that "the purpose sought to be achieved at such a hearing is not of sufficient importance to warrant such an inquiry in comparison to the possible harm or appearance of interference." *Beasely*, 464 F.2d at 470.[9]

---

[9]     In *Beasely*, the Tenth Circuit considered whether the district court erred in denying the defendant's pre-verdict motion for mistrial following the discovery that an alternate juror had retired with the jury at the start of deliberations.  One of the alternatives considered by the Tenth Circuit was whether the district court should have determined whether any prejudice resulted by holding a pre-verdict hearing to question the jurors about how far their deliberations had proceeded when the alternate was present and whether the alternate had participated in them. *Beasely*, 464 F.2d at 469-70.  The Tenth Circuit rejected this alternative for the reasons stated above, but held that a mistrial was necessary because the sanctity of the jury had been destroyed by the alternate juror's presence. *Id.*

Thus, neither a trial judge nor counsel may inquire into the substance of the jury's deliberations, either before or after a verdict is reached. This rule applies even when a juror alleges she is being harassed by another juror or jurors. *See, e.g.*, *United States v. Norton*, 867 F.2d 1354, 1366 (11th Cir. 1989) (affirming trial judge's pre-verdict decision not to question juror who alleged in a note to the judge that he had experienced "duress" during jury deliberations; such pre-verdict inquiry "would itself have risked reversible error"); *United States v. Briggs*, 291 F.3d 958, 963-64 (7th Cir. 2002) (affirming district court denial of motion for hearing and for new trial based on juror allegation that she had been intimidated by other jurors to vote as she did); *see also United States v. Tallman*, 952 F.2d 164, 166-67 (8th Cir. 1991) (finding juror's pre-verdict note to judge alleging harassment of minority view juror by majority jurors did not warrant new trial); *United States v. Gravely*, 840 F.2d 1156, 1159 (4th Cir. 1988) (court does not take cognizance of alleged pressure brought by one juror on another).[10]

As stated in *United States v. Hall*, "'There are many cogent reasons militating against post-verdict inquiry into jurors' routines for decisions. The jurors themselves ought not be subjected to harassment; the courts ought not be burdened with large numbers of applications mostly without merit; the chances and temptations for tampering ought not be increased; verdicts ought not be made so uncertain.'" 424 F. Supp. 508, 538 (W.D. Okla. 1975) (quoting *United*

---

[10]     As other courts have observed, "[t]otal placidity is not the nature of jury deliberations." *Tallman*, 952 F.2d at 167. The normal dynamic of jury deliberations often includes intense pressure among the jurors in their efforts to reach a verdict. *See United States v. Cuthel*, 903 F.2d 1381, 1383 (11th Cir. 1990). Testimony about internal pressure in the jury room is incompetent to impeach a verdict. *See Anderson v. Miller*, 206 F. Supp. 2d 352, 360-61 (E.D.N.Y. 2002) (collecting cases).

14

*States v. Crosby*, 294 F.2d 928, 950 (2d Cir. 1961)), *aff'd*, 536 F.2d 313 (10th Cir. 1976)).  A

fortiori, examining jurors in the middle of their deliberations would be even worse.[11]

  To be sure, a judge must protect a jury from outside influence or extraneous prejudicial

evidence and any indication of such would require immediate investigation.  As there has never

been a complaint or even a suggestion that someone outside the jury had attempted to influence

or intimidate Juror X or any other juror, there was no basis for examining the jurors on this

ground.[12]

---

[11] Defendants cite the Seventh Circuit's decision in *United States v. Sababu*,
891 F.2d 1308 (7th Cir. 1989), for the proposition that pre-verdict inquiry into the jury's
deliberations is permitted.  In that case, a criminal defendant in a conspiracy case sought to voir
dire sitting jurors regarding the impact on their ongoing deliberations of extra-record evidence
that had inadvertently been brought into the jury room.  *Id.* at 1334.  The Seventh Circuit held it
was not an abuse of discretion for the court to refuse the defendant's request as unnecessary and
inappropriate, but rejected the trial court's additional rationale that such inquiry was barred by
Rule 606(b)'s prohibition on post-verdict inquiries.  *Id.* at 1334-35.  The Seventh Circuit did not
consider whether pre-verdict inquiry into the jury's deliberations was prohibited under any other
authority, including the array of Supreme Court and other authority on this point cited above and
in my two prior orders denying Defendants' efforts to inquire into the jury's deliberations.

[12] Even in the circumstances of an extraneous influence on the jury deliberations,
examination of jurors with the participation of counsel is limited to determining the nature of the
extraneous influence.  *See* Fed. R. Evid. 606(b); *United States v. Davis*, 60 F.3d 1479, 1482-83
(10th Cir. 1995); *United States v. Hornung*, 848 F.2d 1040, 1045 (10th Cir. 1988).  The court
then applies an objective test to determine the likelihood that the extraneous influence would
affect a typical juror, and no inquiry is permitted into the actual effect the influence had on any
juror's mental processes or the jury's deliberations.  *See Hornung*, 848 F.2d at 1045; *United
States v. Aguirre,* 108 F.3d 1284, 1288 (10th Cir. 1997*); United States v. Greer*, 620 F.2d 1383,
1385 (10th Cir. 1980); *see also Mattox v. United States*, 146 U.S. 140, 149 (1892) ("a juryman
may testify as to any facts bearing upon the question of the existence of any extraneous influence,
although not as to how far that influence operated upon his mind").

### Juror X's Allegations

Juror X's affidavit addresses two separate subjects:  (1) events that occurred during jury deliberations in the two and a half days in which she participated, including her internal deliberative process regarding the merits of the case; and (2) events that occurred from the time Juror X left the jury room on the morning of January 25 until she departed the courthouse complex with her husband.

The first set of allegations is inadmissible and may not be considered for the reasons stated above.  The Tenth Circuit 's decision in *United States v. Scisum*, 32 F.3d 1479 (10th Cir. 1994), is in accord with this conclusion.  *See id.* at 1483 (citing Rule 606(b), stating court is forbidden from considering portion of juror affidavit reporting on the juror's internal deliberations and conclusions on the merits of the case).  The second set of allegations, which do not concern Juror X's or the jury's deliberations, does not fall within this rule and is hence admissible and will be considered here.  *See id.*

A.      Juror X's Affidavit

For purposes of analysis I am treating Juror X's Affidavit in the same manner as allegations in a complaint are treated in a motion to dismiss.  That is, for purposes of this ruling only, the statements in the Affidavit are accepted as true.  Care should be taken, however, to recognize this limitation.  The account in Juror X's Affidavit does not comport in many significant respects with my recollection of events, nor is there any basis for the theatrics attributed to me and court personnel.  Moreover, the Affidavit has substantial omissions relevant to Juror X's mental health.

Suffice to say that the use of affidavits in motion practice presents nothing more than unexamined comments upon which there is no basis to establish reliability. Therefore, in evaluating the Affidavit, it is accepted as true solely for the purpose of determining whether the statements, if true, would have any legal consequence.

According to Juror X's Affidavit, this is what occurred after Juror X left the jury deliberation room without authorization on January 25, 2006:

In the midst of heated discussion, Juror X left the jury room in tears after telling her fellow jurors that she had had suicidal thoughts over the weekend. Defs.' Notice of Filing of Juror Aff., Ex. A [hereinafter "Juror X Aff."] ¶¶ 11-12. When found by the courtroom deputy who was searching for her, she was asked if she wanted to talk with a doctor or counselor. *Id.* ¶ 13. Juror X attempted to tell the courtroom deputy that "bullying" was going on in the jury room, but the deputy responded by covering her ears with her hands and exclaiming, "Don't tell me that! If you tell me that, that would mean a mistrial!" *Id.*

The courtroom deputy brought Juror X to the Judge's chambers. *Id.* ¶ 14. Juror X was crying when she met with the Judge. *Id.* When she tried to tell the court about the bullying she alleges was occurring in the jury room, the Judge, too, covered his ears and said, "Don't say that. I can't hear that." *Id.* No one asked her any questions or if she wanted to continue to deliberate, *id.* ¶ 15, but she asked the courtroom deputy to retrieve her purse and notes from the jury room. *Id.* ¶ 17.

The courtroom deputy walked Juror X to another building where she met with a health services counselor. *Id.* ¶¶ 17-18. The Health Services Counselor asked Juror X if she was

suicidal. *Id.* ¶18. She remained at the Health Services Unit in the neighboring building until her husband arrived and then departed with him. *Id.* ¶19.

Juror X did not tell her fellow jurors that she was going to commit suicide, but that she had had suicidal thoughts, because she wanted to see changes in how the jurors interacted. *Id.* ¶ 11.

B.     Legal Consequences of Juror X's Allegations

In order for a trial to proceed, jurors by necessity communicate with court personnel on a daily basis regarding all manner of non-substantive matters, such as scheduling, lunch orders and administrative matters. A trial could not proceed without such daily "*ex parte*" communications.[13] Such communications are not improper when they do not concern the matter pending before the jury.

As a consequence, while a trial judge should not ordinarily engage in private communications with a juror, this rule is not absolute. "'There is scarcely a lengthy trial in which one or more jurors do not have occasion to speak to the trial judge about something, whether it relates to a matter of personal comfort or to some aspect of trial.'" *United States v. McDonald*, 933 F.2d 1519, 1524-25 (10th Cir. 1991) (quoting *Rushen v. Spain*, 464 U.S. 114, 118 (1983)). While it is "good practice" for a trial judge to terminate a conversation as soon as it becomes clear what the juror wishes to discuss and hold a hearing later, if necessary, with all interested parties permitted to participate, "deviating from this preferred approach does not necessarily mean a trial is tainted by plain error that warrants granting a mistrial." *Id.* (citing *Rushen*, 464 U.S. at 118-20)

_____

[13]     Black's Law Dictionary defines *ex parte* as being "done for, in behalf of, or on the application of one party only." The term, however, has been used with a great deal of imprecision and has come to connote more than its literal meaning.

(an unrecorded *ex parte* communication between a trial judge and juror is not *per se* plain error). The question of mistrial based on private communications between the trial judge or court personnel and a juror instead requires consideration of the circumstances of the communication, whether it affected the juror and whether any prejudice resulted. *See Scisum*, 32 F.3d at 1481.[14]

In *Scisum*, the Tenth Circuit considered whether a new trial was required as a result of the trial judge's private meeting with an individual juror in chambers without apprising counsel of that meeting until after the verdict had been returned and the jury had been discharged. 32 F.3d at 1480. The meeting was prompted by a marshal's report to the judge that the juror was visibly distressed and crying. *Id.* at 1481. The juror reported in a post-trial affidavit that she had met with the judge just before the verdict was announced and told him then that she could not return to the courtroom and publicly state that she agreed with the verdict. *Id.* at 1481. She reported that the judge responded that he knew how she felt. *Id.* The juror then rejoined the jury, returned to the courtroom for the announcement of the verdict and, when polled individually with the other jurors, responded that it was her own verdict. *Id.*[15]

In a split decision, the Tenth Circuit reversed the conviction, holding that the government had not met its burden of showing that the juror's undisclosed meeting with the judge was

---

[14]    Out of an abundance of caution and for purposes of this analysis only, I assume that the standards stated in *Scisum*, which was a direct appeal of a criminal conviction requiring a unanimous verdict, apply in a civil case such as this where the parties stipulated and agreed to be bound by a nonunanimous verdict. *See supra* note 7.

[15]    The juror's post-verdict affidavit also reported that she did not agree with the verdict and that "but for" her private meeting with the judge she would have dissented from the guilty verdict when polled. *Id.* at 1481. The Tenth Circuit held that Rule 606(b) prohibited it from considering this portion of the juror's affidavit or from utilizing it in reaching its decision. *Id.* at 1483.

19

harmless error.  *Id.* at 1484.  The majority based its ruling on the principle, drawn from *Remmer v. United States*, 347 U.S. 227, 229 (1954), that "[i]n a criminal case, any private communication . . . with a juror during a trial about the matter pending before the juror is, for obvious reasons, deemed presumptively prejudicial."  *Scisum*, 32 F.3d at 1482 (quoting *Remmer*, 347 U.S. at 229).[16]

In announcing its decision, the Tenth Circuit discussed the procedures the trial judge should have followed in the discrete circumstances of that case.  The court stated that "the most sensible reaction of any judge who is presented with any problem that appears likely to call for a communication with a juror is a Pavlovian response:  Notify counsel for both parties promptly, both to identify the problem and to discuss the most appropriate procedure to follow."  *Id.* at 1482.  This, of course, was done in the case of Juror X, as both counsel were immediately informed of the note regarding her unauthorized departure from the jury room and the need to locate and deal with her reported immediate mental health issues.  *See* Jan. 25, 2006 Trial Tr. at 10713-19.

The *Scisum* court declared that the appropriate procedure to follow after this is "almost invariably" for the judge to meet with the juror on the record with all counsel present and participating.  *Scisum*, 32 F.3d at 1482.  The court immediately clarified, however, that there are

---

[16]     This presumption is not conclusive.  *See, e.g.*, *Hornung*, 848 F.2d at 1044-45.  In *Scisum*, the court found the government had failed to carry its burden of rebutting the presumption of prejudice because the juror's "statement to the judge that she could not return to the courtroom and announce publicly that she would vote for [the defendant's] conviction on the remaining count (Count Three) must be taken as an indication that had it not been for her intervening meeting with the judge, she would not have responded when the jury was polled that the guilty verdict on Count Three was her own true individual verdict."  *Scisum*, 32 F.3d at 1484.

circumstances, such as "a juror's sudden illness or other truly emergent situations," in which an

"*ex parte*" meeting between the juror and judge are permitted. *Id.* at 1482. The situation faced

by this court on January 25, in which a juror had left the jury room in distress after announcing

she had had suicidal thoughts and "would rather die" than continue deliberating, was just such an

exigent situation. Neither party objected to my private meeting with Juror X when I expressed

that intent on the record.[17]

Finally, the majority in *Scisum* criticized the trial judge for failing to conduct a hearing

after his private meeting with the juror to assess whether it was prejudicial or was harmless error.

*Id.* at 1483. It is clear under Tenth Circuit authority before and after *Scisum*, however, that the

district court has discretion in determining whether to hold a hearing for this purpose. *See United

States v. Davis*, 60 F.3d 1479, 1483 (10th Cir. 1995); *United States v. Gigax*, 605 F.2d 507, 516

(10th Cir. 1979). The Tenth Circuit has affirmed that no hearing is required when, for example,

---

[17]    Defendants suggest they were lulled into thinking they would be permitted to
attend a later conference with Juror X based on my statements immediately upon receiving the
first note on January 25 regarding Juror X and my handling of a separate matter concerning
another juror (for ease of reference, Juror D). As to the first matter, the record reflects that I
revised my view of counsel meeting with Juror X in light of the authority presented by counsel
regarding inquiry into jury deliberations. As to the second, the circumstances with respect to
Juror D were quite different and warranted different handling. *See* Oct. 21, 2005 Trial Tr.
at 1995-99. Early in trial, Juror D sent a note directly to me in which she questioned her ability to
be fair and impartial in light of a racially inflammatory statement made by a named plaintiff during
her trial testimony. Juror D's note was shown to counsel, and one lawyer from each side was
invited to chambers where Juror D was advised in their presence that she could recuse herself
from the jury if she wished. I advised Juror D to continue to sit through the day, think about it
overnight and, if she decided she couldn't be fair, she would be excused. *See id.* Juror D elected
to continue to serve, and did so through the return of the verdicts. Her situation had nothing
whatever to do with jury deliberations. Nor did it present a mental health emergency as was the
case with Juror X. Even if it were appropriate to do so, there was no time or opportunity for
counsel to interview Juror X before she received medical attention. Under these circumstances,
and based on Juror X's admittedly distraught demeanor in chambers, it would have been both
cruel and dangerous to subject her to an examination by counsel.

the district court already has sufficient facts to know the extent of the private communication, *see Davis*, 60 F.3d at 1483-84, or when there was no possibility that the private communication affected the jury or its deliberations.  *See United States v. Rosales*, 680 F.2d 1304, 1306 (10th Cir. 1981) (no abuse of discretion to decline to hold hearing when there was no evidence that any juror other than the one discharged heard the extraneous remark); *see also United States v. McVeigh*, 153 F.3d 1166, 1186 (10th Cir. 1998) (district court has discretion to refuse to hold a hearing "when it can be clearly established that a hearing would not be useful or necessary"); *Gigax*, 605 F.2d at 516 ("failure to provide a full evidentiary hearing into possible prejudice resulting from communications with jurors does not automatically require reversal or remand").

No hearing was necessary to determine whether Juror X's private communications with the courtroom deputy or the court prejudiced one or both parties by influencing the jury's deliberations and ultimately its verdict.  No matter what was said during these private contacts, they cannot have affected the verdict because it is undisputed that Juror X never returned to the jury after these contacts and did not participate in any further deliberations or the jury's verdict some three weeks later.  In fact, she had been excused from the jury at the time the private communications occurred.

## Juror X was not a "Minority" Juror

Juror X's remaining testimony in her affidavit concerns her and the jury's deliberations and as such is inadmissible and will not be considered to question the validity of the jury's verdict or my refusal to declare a mistrial on January 25, 2006 or subsequently.  *See* Fed. R. Evid. 606(b); *Scisum*, 32 F.3d at 1483.  Nevertheless, I comment here to point out that Juror X's statements on

these topics do not support the inference that she was a minority or hold-out juror whose departure affected the final verdict.

In the jury instructions and verdict form, the jury was directed to decide liability on four separate claims:  trespass and nuisance against Defendant Dow Chemical Company and trespass and nuisance against Defendant Rockwell International Corporation.  *See* Jury Verdict Form (Doc. 2117).  If liability was found on any of the claims, the jury was then directed to decide whether compensatory damages and punitive damages had been proved and the amounts of each as against each Defendant.  *See id.*  The detailed jury verdict form included special interrogatories addressing each element of each claim, as well as additional questions directed at compensatory and punitive damages, Defendants' affirmative defense as to damages and certain additional questions. *See id.*

In order to find Defendants liable on all claims and award compensatory and punitive damages, the jury was required to answer 28 separate interrogatories on the verdict form.  *See id.*, ¶¶ A-G.[18]  The parties had stipulated and confirmed that unanimity was not required to answer any interrogatory or to reach a verdict:  so long as there were 10 or more jurors, there could be two dissenting votes.  *See supra* note 7.

In her affidavit, Juror X states she was present during deliberations on the first two of these 28 questions.  Juror X Aff. ¶ 6.  These two questions addressed two of the three elements the jury had to find in order to find Dow liable on the trespass claim against it.  *See* Jury Verdict Form.  According to Juror X, the jury had decided at best one of those questions at the time she

---

[18]     The jury was also asked to decide several additional questions of relevance to future proceedings in this action.  *See* Jury Verdict Form, ¶ H.

left deliberations, and there was no clear majority one way or the other on the second.  Juror X

Aff. ¶ 6.  Neither of these two questions, even if fully answered in Juror X's presence and decided

in the affirmative over her objection, would have rendered a verdict on liability on the trespass

claim against Dow.  Neither would either of these questions or Juror X's position on them have

determined Dow's liability on the nuisance claim against it, Rockwell's liability on the two claims

against it, or the question of whether any damages resulted from any trespass or nuisance that was

proved against either Defendant.

Accordingly, even assuming Juror X was a "minority juror" on the first two questions

relating to the trespass claim against Dow at the time she was excused, that "fact" establishes

nothing in terms of where she would have ended up on the remaining issues that were decided in

the next three weeks of deliberations.  The presumption, indeed, is to the contrary:  that she

would have followed the instructions and  listened to her fellow jurors before deciding the case.

*See* Jury Instructions (Doc. 2121), No. 4.2.  Juror X herself attests that she remained open

minded and was willing to listen and participate in deliberations.  Juror X Aff. ¶ 4.  How can

anyone, including Defendants and Juror X herself, know what Juror X would have decided on the

27 unanswered questions on the verdict form had Juror X continued to participate in good faith in

the jury's deliberations?  The pointlessness of such metaphysical speculation illuminates the

wisdom of the rules against delving into a jury's deliberations both during their normal course and

certainly now, post-verdict.

Finally, the claim that Juror X's dismissal somehow allowed the trio of jurors she says

intimidated her to convince the remaining jurors to vote with them is not only an unwarranted

attack on the integrity of those jurors and the deliberation process itself, but is belied by the fact

that dissent among jurors clearly existed after Juror X departed, as reflected in the nonunanimous verdicts reached without a single further incident of juror distress being brought to the court's attention.

Conclusion

Rule 47 of the Federal Rules of Civil Procedure was amended in 1991 to provide that a trial judge "may for good cause excuse a juror from service during trial or deliberation." Fed. R. Civ. P. 47(c) & 1991 advisory committee's note. I excused Juror X from further jury service in accordance with this Rule because she absented herself from the jury's deliberations without permission and contrary to the orders given to the jurors to remain together and deliberate, *see* Jury Instructions, Nos. 4.1, 4.2 and 4.4, and because of her statements regarding suicidal ideation. That she was reported by the Presiding Juror to have expressed suicidal thoughts and that she "would rather die than finish the case" presented two necessary responses: The first was to respond to a medical emergency, and the second was to safeguard the deliberations of the jury.

The medical emergency required locating Juror X to provide her with assistance. Safeguarding the jury deliberations required that no further disruptions be permitted and that anything said to Juror X following her departure from the jury room not be available to the remaining jurors. Once Juror X was located, her distraught condition confirmed the need to obtain medical help. The Presiding Juror by then had also sent yet another note expressing concern for Juror X's safety. In chambers Juror X was comforted while medical/evaluative assistance was obtained for her.

25

The second priority was to safeguard the jury deliberations.  Having first listened to counsels' arguments, I brought the jury back to the courtroom, asked them whether they could continue in spite of the interruption, and then reinstructed them regarding the deliberative process.

Juror X's Affidavit confirms she told jurors she had had suicidal thoughts over the preceding weekend, following only the half day of deliberations that took place after the jury received the case on Friday, January 20, 2006.  Juror X Aff. ¶ 11.  Now, months later, Juror X says she really did not mean she was suicidal but was merely conducting herself in a manner she thought would cause other jurors to pay more attention to her statements.  *See id.*  She now claims the reactions of her fellow jurors and the court were overblown.  In the circumstances presented on January 25, however, no responsible judge would have failed to take Juror X at her word and actions.  Statements of suicidal ideation coupled with erratic actions by a person demonstrating distress are clearly matters for mental health professionals – not the diagnostic pretensions of lawyers and judges.

Defendants in their arguments have misapprehended the fundamental role of a trial judge.  That role is not to preserve adversary interests but to orchestrate the trial process according to established norms.  A larger responsibility than being an umpire is at work.  Protecting the judicial process is the fundamental responsibility.  Safeguarding the integrity of the jury and the confidentiality and continuity of its deliberations constitute the keystone of that process so that a just verdict is attained.

For the foregoing reasons, Defendants' Renewed and New Motion for Mistrial

(Doc. 2195) is DENIED.

Dated this 7th day of December, 2006.

**s/John L. Kane**
John L. Kane, Senior District Judge
United States District Court
