IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, et al.,

      Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION AND THE DOW CHEMICAL
COMPANY,

      Defendants.

_____

**MEMORANDUM OPINION REGARDING JURY INSTRUCTIONS**
_____

Kane, J.

**Table of Contents**

Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

The Parties' Proposed Jury Instructions and Revisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    I.     Instructions on Trespass Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

          A.     Defendants' Responses to the Court's December 2004 Trespass
               Instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

              1.     Causation instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

              2.     Stipulations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          B.     Defendants' Other Pretrial Trespass Arguments and Proposals     . . . . . . 12

              1.     Pretrial arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

              2.     Proposed supplemental trespass instruction . . . . . . . . . . . . . . . 13

          C.     Parties' Proposed Revisions to Trespass Instructions at
               End of Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

              1.     Plaintiffs' proposed revisions . . . . . . . . . . . . . . . . . . . . . . . . . . 14

              2.     Defendants' proposed revisions . . . . . . . . . . . . . . . . . . . . . . . . . 15

          D.     Defendants' Proposed Revision to Trespass Instructions During Jury
               Deliberations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    II.    Instructions on Nuisance Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

          A.     Plaintiffs' Proposed Nuisance Instructions . . . . . . . . . . . . . . . . . . . . . . 22

          B.     Defendants' Proposed Nuisance Instructions . . . . . . . . . . . . . . . . . . . . . 34

          C.     Parties' Proposed Revisions to Nuisance Instructions at End of Trial . . . 47

              1.     Plaintiffs' proposed revisions . . . . . . . . . . . . . . . . . . . . . . . . . . 47

              2.     Defendants' proposed revisions . . . . . . . . . . . . . . . . . . . . . . . . . 48

III.    Instructions on Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

      A.    Plaintiffs' Proposed Damages Instructions . . . . . . . . . . . . . . . . . . . . . 60

      B.    Defendants' Proposed Damages Instructions . . . . . . . . . . . . . . . . . . . . 66

      C.    Parties' Proposed Revisions to Damages Instructions at End of Trial . . 73

            1.    Plaintiffs' proposed revisions . . . . . . . . . . . . . . . . . . . . . . . . . . 73

            2.    Defendants' proposed revisions . . . . . . . . . . . . . . . . . . . . . . . . 74

IV.    Other Disputed Instructions and Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

      A.    Instructions Regarding the Nature of the Case . . . . . . . . . . . . . . . . . . . 81

      B.    Instructions Regarding Burden of Proof . . . . . . . . . . . . . . . . . . . . . . . . 82

      C.    Limiting and Other Evidentiary Instructions . . . . . . . . . . . . . . . . . . . . 83

            1.    Classified information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83

            2.    Other evidence relating to DOE . . . . . . . . . . . . . . . . . . . . . . . . 85

            3.    Evidence regarding the FBI raid, grand jury investigation and Rockwell plea agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 86

            4.    Evidence of other lawsuits . . . . . . . . . . . . . . . . . . . . . . . . . . . . 88

            5.    Evidence of media coverage . . . . . . . . . . . . . . . . . . . . . . . . . . 88

            6.    Evidence of Defendants' contractual obligations . . . . . . . . . . . . 89

            7.    Expert opinion evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 90

            8.    Demonstrative exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 91

      D.    Miscellaneous Instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 91

            1.    Joint and several liability and comparative fault . . . . . . . . . . . . 91

            2.    Additional questions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 93

      E.    Defendants' Final Objections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 94

V.    Verdict Form and Related Instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 95

Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 96

Attachment A:      Chronology of Parties' Proposed Jury Instructions and Verdict Forms

Attachment B:      Instructions to Jury at the Start of Trial

Attachment C:      New and Revised Instructions to Jury at the End of Trial, with changes
                   from Start of Trial Instructions shown

This memorandum opinion addresses the process and proposals that resulted in the final jury instructions in the property damages trial in this class action.[1]  The relevant background to this opinion is as follows:

## Background

In July 2003, I issued an opinion pursuant to Rules 16 and 23(d) to identify and narrow the issues to be tried in the property class trial.[2]  *See Cook v. Rockwell Int'l Corp.* (*"Cook IX"*), 273 F. Supp. 2d 1175 (D. Colo. 2003); *see also* Fed. R. Civ. P. 16 & 23(d).  Because the parties continued to disagree on many of the basic components of the trial, I issued several follow-up decisions seeking to define further its scope and the issues to be tried.  *See* Order (Doc. 1220) [hereinafter "April 2004 Order"]; Order (Doc. 1235) [hereinafter "May 2004 Order"].  I also ordered the parties to prepare proposed jury instructions to assist in this process.  April 2004 Order at 24-25; May 2004 at 15-16.

As required by these decisions, the parties filed proposed instructions on Plaintiffs' trespass and nuisance claims, affirmative defenses, damages and general trial matters in the

---

[1]      This memorandum opinion is one of four opinions issued today addressing various motions and disputes that were decided before, during and after completion of the class trial.  *See* Mem. Op. re: *Daubert* Mots. and Mots. in Limine; Mem. Op. re: Defs.' Theory of Plutonium Removal Through Real Estate Development; Order on Defs.' Second Renewed and New Mot. for Mistrial.  I opted to issue all of these opinions at one time rather than as they were completed because some of them address related issues and because I wanted to ensure that the parties had all relevant opinions in hand before they filed any final motions in this case.  *See generally* Mem. Op. re: *Daubert* Mots. and Mots. in Limine at 3-5 (Dec. 7, 2006).

[2]      For information regarding the nature of the property class claims and the challenges in bringing these claims to trial, see *Cook IX*, 273 F. Supp. 2d at 1178-79, Order (Doc. 1235) at 1-4, 10-11 (May 28, 2004), and Memorandum Opinion and Order in Advance of February 28, 2001 Hearing (Doc. 1176) at 3-9.

summer and early fall of 2004.[3]  Each side's instructions continued to present starkly different versions of the issues to be tried, and each side objected to virtually every substantive instruction proposed by the other.  The parties' submissions also raised additional substantive issues, some of which the parties addressed in supplemental briefing at my direction.  In addition, I held several conferences at which I heard argument on jury instruction issues.

In December 2004, I issued an order and related memorandum opinion addressing the parties' proposed instructions regarding the trespass claims and associated affirmative defenses. *See* Order re: Proposed Trespass Instructions (Doc. 1311) [hereinafter "Trespass Instructions Order"]; *Cook v. Rockwell Int'l Corp. ("Cook X")*, 358 F. Supp. 2d 1003 (D. Colo. 2004). Included in these rulings were instructions I prepared for these claims based on the parties' submissions, relevant authority and my practice of providing the jury with as clear an explanation as possible regarding the factual issues to be decided and the relevant legal standards.  Trespass Instructions Order at 1-2, 7 & Attach. A.  I also permitted the parties to submit further briefing on several issues relating to the trespass instructions I had prepared.  *See id.* at 3, 8-9.

Early in 2005 I set the property class claims for trial beginning in October, 2005.  Order (Doc. 1325).  Subsequently, in May 2005, I issued an order resolving the majority of the disputes raised by the parties' competing instructions on Plaintiffs' nuisance claims and on damages.  *See* Order on Scheduling and Jury Instruction Issues (Doc. 1338) [hereinafter "May 2005 Order"].  I did not issue instructions on these matters at this time.

---

[3]      Record citations to these and the parties' subsequent proposed jury instructions are included in the discussion that follows.  A chronology of all of the parties' submissions containing proposed instructions and revisions is also set forth in Attachment A to this opinion.

Over the following months, the parties briefed and argued a number of motions in limine and *Daubert* motions that raised additional matters relevant to the jury instructions. *See generally* Mem. Op. re: *Daubert* Mots. & Mots. in Limine (Dec. 7, 2006). At my direction, the parties also provided updated statements of their theories of the case. *See* Pls.' Statement of Claims (Doc. 1419); Defs.' Theories of the Case (Doc. 1420). Following my rulings on the motions in limine and *Daubert* motions, I permitted the parties to propose additional jury instructions on matters addressed in these rulings and on certain other issues. Both parties responded by submitting supplemental proposed instructions.

Based on these submissions by the parties, the law of the case and relevant authority, I prepared a complete set of jury instructions in advance of trial that, as is my standard practice, I provided to the parties and to the jury before opening arguments began. *See* Fed. R. Civ. P. 51(b)(3) (authorizing instruction any time after trial begins). These instructions are attached to this memorandum opinion. *See infra* Attach. B (Jury Instructions dated Oct. 12, 2005) [hereinafter "Start of Trial Instructions"].[4] As is also my practice, I informed the parties and the jury that these instructions would be revised if necessary as the trial progressed. *See, e.g.*, Oct. 11, 2005 Trial Tr. at 428.

---

[4]      I provided the parties with most of these instructions on October 7, so that they could be used in preparation for opening arguments scheduled to begin on October 11, and provided them with the remainder on October 10. I read the jury Sections 1 and 3 of the instructions (general and substantive instructions) immediately before Plaintiffs began their opening argument, *see* Oct. 11, 2005 Trial Tr. at 426-73, and provided each juror with a complete set of the instructions in writing at that time. The jurors received a new set of written instructions the next day that corrected several typographical errors in the original, October 11 version. *See id.* at 426-27 (notifying jury of corrections). The corrected instructions are dated October 12, 2005 and are the Start of Trial Instructions referred to herein and set forth in Attachment B to this opinion.

3

The parties proposed a number of additional and revised instructions during the course of the four and a half month trial.  Most were submitted in response to my direction near the close of trial that the parties submit any proposed revisions to the jury instructions of record in time for me to consider them before instructing the jury for the final time.  *See* Order on Jury Instruction Submissions (Doc. 1929).  Defendants filed extensive proposed revisions and objections to these instructions, and Plaintiffs filed more limited proposed revisions and objections.

In response to these proposed revisions and objections and my own final review of the jury instructions, I made mostly minor revisions to fifteen of the fifty-one instructions of record.  The final jury instructions incorporating these revisions and four new instructions added during or at the close of trial were provided to the parties and the jury in written form before closing arguments began on January 18, 2006.[5]  I read these instructions to the jury on January 20, just before the jurors began their deliberations.  Both parties filed objections to these instructions, in which they incorporated their previously filed proposed instructions, revisions and objections.[6]

The final set of jury instructions in this action are of record, *see* Notice of Final Jury Instructions (Doc. 2121) [hereinafter "Final Instructions"], as is the Verdict Form.  *See* Jury

---

[5]    New Instruction Nos. 2.2AA, 2.2A, 2.2B and 3.19A were provided to the jury during and/or at the end of trial.  An additional instruction, No. 4.6, was provided to the jury after it began deliberations.  The following instructions were revised at the end of trial *sua sponte* or in response to submissions from the parties:  Instruction Nos. 1.4, 1.9, 2.2, 2.3, 2.5, 2.7, 3.1, 3.5, 3.7, 3.9, 3.12, 3.17, 3.22, 4.2, 4.5.  These new and revised instructions, with additions and deletions from the Start of Trial Instructions shown, are set forth in Attachment C to this opinion.

[6]    Defendants asserted a handful of new objections to the Final Instructions at the close of trial.  *See* Defs.' Objs. to Jury Instructions and Verdict Form (Doc. 2015) at 4; Defs.' Objs. to Additional and Revised Jury Instructions (Doc. 2023).  I reviewed the new objections identified by Defendants before instructing the jury for the final time and found they did not warrant further changes to the instructions.

Verdict Form (Doc. 2117).  As noted, most of the Final Instructions are identical to or substantially the same as the Start of Trial Instructions.  Unless otherwise specified, therefore, references or citations in this opinion to the instructions I prepared refer to both the Start of Trial and Final Instructions.

Preparation of the jury instructions required me to decide a number of additional legal issues raised by the parties' competing proposals and objections.  Although my decisions on these issues were inherent in the instructions I prepared and provided to the jury, I write here to provide a more complete record of these decisions and my rulings on the specific instructions proposed by the parties before, during and at the close of trial.[7]  I first address the parties' proposed instructions on trespass, nuisance and damages, and then their other disputed instructions and the jury verdict form and related instructions.

**The Parties' Proposed Jury Instructions and Revisions**

I.      **Instructions on Trespass Claims**

I set out my rulings on the parties' initial proposed trespass instructions and my intended instructions on the trespass claims in December 2004.  *See* Trespass Instructions Order. Defendants submitted additional arguments and proposed revisions to the trespass instructions before trial, and both parties proposed revisions to the trespass instructions near the close of trial. My rationale for ruling on these proposals, as incorporated in the instructions I provided to the

---

[7]      I informed the parties when I issued the Start of Trial Instructions and at other points that I intended to document my jury instruction rulings in this written opinion, as I had done with respect to the parties' first proposed trespass instructions.  *See* Trespass Instructions Order.

jury at the start and end of trial, *see* Start of Trial and Final Instructions, Nos. 3.2-3.5, is set forth

below.

A.      **Defendants' Responses to the Court's December 2004 Trespass Instructions**

1.      **Causation instruction**[8]

Defendants proposed that the trespass instructions include a paragraph, drawn from a

standard Colorado jury instruction for negligence claims, that relieved them of liability if the jury

found an intervening cause.  *See* Defs.' Submission of Trespass Jury Instructions (Doc. 1245)

at 15-16 (proposed Instruction No. 5, citing Colo. Jury Instructions (Fourth) Civ. § 9:20 (2004)).

In my December 2004 order, I directed Defendants to identify the facts and law supporting this

proposed instruction.  Trespass Instructions Order at 3.

Defendants responded that an intervening cause instruction was warranted with respect to

the trespass claim because plutonium contamination in the Class Area resulted solely from three

especially intense windstorms in January 1969 that blew plutonium-contaminated soil from the

903 pad area of Rocky Flats to the Class Area.  They further asserted they had submitted

sufficient evidence supporting these allegations to warrant the instruction.  *See* Defs.' Mem. re:

Facts & Evidence Warranting Intervening Cause Instruction (Doc. 1316) [hereinafter "Defs.'

Mem. re: Intervening Cause Instruction"].  Plaintiffs disputed that an intervening cause instruction

was warranted under trespass law or the evidence proffered by Defendants.

I determined that an intervening cause instruction was not warranted for the trespass

claims and therefore did not include Defendants' proposed language on this point in my

---

[8]      This discussion pertains to Instruction No. 3.18 (causation) in the Start of Trial and Final Instructions.  This instruction was designated as No. 3.14 in the Trespass Instructions Order.

instruction to the jury on causation.  *See* Instruction No. 3.18.[9]  I reached this conclusion for two

reasons.  First, Defendants failed to demonstrate that an intervening cause as defined in

Colorado's standard jury instructions is a defense to liability for trespass under Colorado law.

The concept of intervening cause is part of the framework for determining proximate cause for

negligent conduct.  *See, e.g.*, *White v. Caterpillar, Inc.*, 867 P.2d 100, 109 (Colo. Ct. App.

1994); *Ayala v. United States*, 846 F. Supp. 1431, 1441 (D. Colo. 1993); *see also*

Restatement (Second) of Torts § 441 (1965) (defining intervening cause as one that produces

harm to another after the defendant has committed a negligent act or omission and identifying

rules for determining whether the intervening cause "prevents the actor's antecedent negligence

from being a legal cause" of another's harm).  Under Colorado law, trespass is not grounded in

negligence, *see Burt v. Beautiful Savior Lutheran Church*, 809 P.2d 1064, 1067 (Colo. Ct. App.

1990), but rather is a strict liability tort for which proximate causation is established by proof that

the defendant intentionally undertook an activity or activities that in the usual course of events

caused the trespass.  *See In re Hoery*, 64 P.3d 214, 217-18 (Colo. 2003); Trespass Instructions

Order at 3-5.  Defendants did not identify any Colorado authority recognizing intervening cause

as a defense to trespass, and the Restatement makes no mention of such a defense in its discussion

of the tort of trespass.[10]  Accordingly, I found no legal basis for instructing the jury that

---

[9]     I reached the same conclusion with respect to Defendants' request for an
intervening causation instruction for the nuisance claims.  *See infra* Section II.B (regarding
Defendants' proposed nuisance Instruction No. 11).

[10]     Defendants represented in their reply brief that the Tenth Circuit had affirmed a
district court's instruction regarding intervening cause on a trespass claim.  *See* Defs.' Reply re:
Intervening Cause Instruction at 2 (citing *Scheufler v. General Host Corp.*, 126 F.3d 1261,
1267-68 (10th Cir. 1997) (applying Kansas law)).  This is not correct.  The instruction at issue in
*Scheufler* concerned a nuisance claim.  *See* 126 F.3d at 1267.

Defendants could avoid liability for any trespass that resulted "in the usual course of events" from their activities if they demonstrated the existence of an intervening cause as defined in Colorado's standard negligence instructions.

Second, even if proof of an intervening cause could defeat a trespass claim under Colorado law, Defendants failed to demonstrate there was competent evidence supporting such an instruction. An intervening cause is an action by a third party or other force that relieves the defendant of liability by breaking the chain of causation. *See, e.g.*, *Ayala*, 846 F. Supp. at 1441. The chain of causation is only deemed broken, however, if the intervening cause was not reasonably foreseeable. *Id.*; *Jones v. Caterpillar Tractor Co.*, 701 P.2d 84, 86 (Colo. Ct. App. 1984).

Defendants argued this requirement was satisfied because virtually all plutonium contamination in the Class Area resulted from three unforeseeable wind events in January 1969 that blew plutonium-contaminated soil from the 903 pad. Defendants characterized these wind events as unusual, unprecedented and therefore not reasonably foreseeable because they included gusts exceeding 100 miles per hour.

The evidence submitted by Defendants did not support these assertions. Even the report excerpts cited by Defendants acknowledged that the 903 pad was not the exclusive source of off-site plutonium contamination. *See* Defs.' Mem. re: Intervening Cause Instruction at 2-3 & Ex. 1. Nor did this evidence link releases from the 903 pad to three distinct wind events, but rather identified at least 24 high wind events in 1968-69 that contributed to the release of plutonium from the site. *Id.*, Ex. 1. One report provided by Defendants further stated that even "under routine meteorological conditions, wind-driven suspension of [plutonium-contaminated] particles

[from the 903 pad] occurred on a relatively constant basis." Defs.' Reply re: Intervening Cause Instruction (Doc. 1323), Ex. 3 at VIII-12.

The authors of the various reports submitted by Defendants also identified high wind events as any wind event with gusts greater than 40 miles an hour. *See id.*, Ex. 5 at III-2. Anyone who lives along the Colorado Front Range knows wind events of this magnitude are quite common in the vicinity of Rocky Flats. I do not need to take judicial notice of this fact because Defendants' proffered evidence on the intervening cause issue included a history of Boulder-area wind events from 1966 to 1995 demonstrating that wind events featuring gusts exceeding 60, 80, or even 100 miles per hour occur regularly in this area. Defs.' Mem. re: Intervening Cause Instruction, Ex. 1 (NOAA storm data); *see also id.*, Ex. 2. Finally, none of the various report excerpts produced by Defendants characterized any of the wind events they studied as unusual or unprecedented in any way. Accordingly, I found Defendants had not presented sufficient evidence to support an intervening cause instruction based on unforeseeably high winds in the Rocky Flats area.

In finalizing the instruction on causation (Instruction No. 3.18) before trial, I also deleted language that had been included in the corresponding instruction in the Trespass Instructions Order (No. 3.14 in the attachment to that order) because the standard Colorado jury instruction on causation did not include it. *See* Colo. Jury Instructions (Fourth) § 9:18.

### 2.    Stipulations

The trespass instructions I prepared in December 2004 included certain stipulations based on the parties' submissions and representations to the court. In the Trespass Instructions Order, I directed any party objecting to these stipulations: (1) to explain why the cited source of the

stipulation was not conclusive; and (2) to identify the evidence the party intended to present at trial to dispute the challenged stipulation.  Trespass Instructions Order at 7-8.  Defendants responded by objecting to two of the three stipulations I had included:  that "Plaintiffs and other class members owned property in the Class Area as of June 7, 1989;" and that "Plutonium from the Rocky Flats plant has been deposited on the Class Properties and continues to be present there."  *See* Defs.' Objs. to Identification of Stipulated Facts (Doc. 1315) [hereinafter "Defs.' Objs. to Stipulated Facts"].

Defendants objected to the first stipulation to the extent that "other class members" referred to holders of non-possessory interests in Class Area properties such as mortgage holders. This objection was unwarranted because I had previously severed claims made on behalf of individuals owning mortgagee or other security interests from the class trial.  *See* May 2004 Order at 15.  The definition of the "Class" for purposes of this trial provided in the subsequently prepared "Statement of the Case" instruction, *see* Instruction No. 1.1, reflected this ruling and addressed this concern.

The second stipulation to which Defendants objected had two components: (1) that plutonium from Rocky Flats had been deposited on Class Properties at some point in time; and (2) that plutonium from Rocky Flats continues to be present there.[11]  Both components were based on statements by defense counsel at the July 22, 2004 hearing in this action.  *See* Trespass Instructions Order at 8; July 22, 2004 Tr. at 31-32.  These statements were consistent with other statements by Defendants in open court both before and after objecting to this proposed

---

[11]     "Class Properties" were defined as properties in the Class Area owned by Class members as of June 7, 1989.  *See* Trespass Instructions Order at 7.

stipulation.  *See* July 28, 2005 Hr'g Tr. (Doc. 1434) at 112-15; June 25, 1999 Tr. (Doc. 1133) at 19-21.

Defendants' initial objections to this stipulation did not dispute its first component, that plutonium from Rocky Flats was deposited on Class Properties, but rather focused on the second component, that plutonium continues to be present there.  Defs.' Objs. to Stipulated Facts at 2-5. Defendants' theory and evidence disputing the latter proposition were based on newly submitted declarations by Peter Elzi and defense expert Dr. F. Ward Whicker to the effect that development in parts of the Class Area had disturbed plutonium-contaminated soil there.  *Id.* & Exs. 4, 5. When Plaintiffs pointed out quite accurately that evidence of soil disturbance was not the same as evidence of soil removal, Defendants submitted additional declarations from Mr. Elzi and Dr. Whicker stating that certain properties in the Class Area had been stripped of all plutonium-contaminated soil in the course of their development.[12]  *See* Defs.' Reply re: Objs. to Stipulated Facts (Doc. 1330), Exs. 3, 5.

Defendants also argued in their objections that they were not bound by their counsel's statements admitting the continuing presence of plutonium in the Class Area and/or that their counsel's statements did not have this meaning.  Defs.' Objs. re: Stipulated Facts at 5.  I was not persuaded by these arguments.  Nonetheless, I decided to permit this issue to be tried after considering Defendants' prior statements in the light most favorable to them and doing the same with respect to the evidence Defendants asserted they would present at trial to dispute the continuing presence of plutonium in certain developed portions of the Class Area.  Mr. Elzi's

---

[12]      I subsequently excluded Dr. Whicker's 2005 declarations upon Plaintiffs' motion. *See* Sept. 13, 2005 Hr'g Tr. (Doc. 1443) at 9; Mem. Op. re: *Daubert* Mots. and Mots. in Limine, Section II.B.1 (Dec. 7, 2006).

supplemental declaration that plutonium-contaminated soil had been completely removed from

certain Class Properties was critical to this decision, which I reached with reluctance given

Defendants' prior statements disclaiming any need to try the issue of continuing contamination.  I

determined, however, to give Defendants the benefit of the doubt in this regard.[13]

In accordance with these determinations, I revised the trespass instructions to delete the

stipulation regarding the deposition and continuing presence of Rocky Flats plutonium in the

Class Area, and instead instructed the jury in the introductory "Statement of the Case" instruction

that "Defendants admit that plutonium from Rocky Flats is present in the Class Area but dispute

that it is located throughout this area."  Instructions No. 1.1.  I further revised the trespass

instructions to state that Plaintiffs had the burden of proving that "Plutonium from Rocky Flats is

present on the Class Properties."  Instruction No. 3.2.  The instructions defined "Class Properties"

as the properties owned by Class members in the Class Area.  *Id.*

B.       **Defendants' Other Pretrial Trespass Arguments and Proposals**

1.       **Pretrial arguments**

In arguments to the court in connection with their *Daubert* motions and other motions in

limine, and again in their August 2005 statement of their case, Defendants raised certain other

issues relating to the jury instructions on the trespass claim.  These arguments ignored my prior

rulings and none warranted changes to the trespass instructions I had prepared.

---

[13]       Defendants ultimately did not present Mr. Elzi or other competent evidence on this point at trial, which caused this issue to reemerge at the close of trial as described in a separate memorandum opinion entered this date.  *See* Mem. Op. re: Defs.' Theory of Plutonium Removal Through Real Estate Development (Dec. 7, 2006).

First, Defendants asserted that the issues to be decided at trial included whether any plutonium from Rocky Flats present on Class members' properties was tangible or intangible and also whether it had caused significant and substantial physical damage to these properties. Defs.' Theories of Case (Doc. 1420) at 2-3. I had previously considered and rejected these same contentions in both *Cook IX* and the Trespass Instructions Order. *See Cook IX*, 273 F. Supp. 2d at 1201; Trespass Instructions Order at 5-6. These prior rulings were reflected in the instructions I prepared for the trespass claims in December 2004, *see* Trespass Instructions Order, Attach. A at 2-4 (Nos. 3.11, 3.12), and in my instructions to the jury at trial. Instructions No. 3.2 (elements of trespass), 3.3 (presence of plutonium).

Defendants further requested before trial that the jury "be provided with guidance as to what magnitude of an invasion is required for a trespass to be actionable." Defs.' Theories of Case at 3 n.2. This request assumed an affirmative answer to a question I had already answered several times in the negative. Under Colorado law, a trespass by means of a physical invasion of property, such as I had held was at issue in this case, does not require a showing of a certain magnitude of invasion to be actionable. *See Cook IX*, 273 F. Supp. 2d at 1201 (citing *Hoery*, 64 P.3d at 221-222); Trespass Instructions Order at 5-6. Defendants' protestations in the months before trial that this issue remained to be decided ignored these prior rulings.

## 2. Proposed supplemental trespass instruction

Proposed Supplemental Trespass Instruction No. 1 (significance of invasion) (submitted September 23, 2005): In this proposed supplemental instruction, Defendants requested that the jury be instructed that because plutonium is not perceptible to the senses, plutonium contamination on the Class properties would not constitute a trespass unless it was "of such a

13

magnitude as to impose a significant physical impact on the property or its users." *See* Defs.' Am.

Submission of Supplemental Jury Instructions (Doc. 1455), Ex. A at 17.  Defendants asserted this

instruction was required to fill "a gap" in my prior rulings regarding the elements of Plaintiffs'

trespass claim.  *Id.*  There was no gap in these rulings.  This proposed instruction contradicted my

prior rulings in *Cook IX* and the Trespass Instructions Order, as described above, and was

rejected for this reason.

### C.    Parties' Proposed Revisions to Trespass Instructions at End of Trial

### 1.    Plaintiffs' Proposed Revisions[14]

Instruction Nos. 3.2 to 3.4 (elements of trespass claims): Near the close of trial, Plaintiffs

proposed that I revise each of these instructions to direct the jury that it need not find that the

trespassory invasion continued to the time of trial.  The basis for this proposal was Plaintiffs'

contention that § 930 of the Restatement (Second) of Torts only required them to demonstrate

that there was no reason to believe as of the time suit was filed that the injurious situation would

terminate at any definite time in the future.  *See* Pls.' Proposed Revions to Jury Instructions

(Doc. 1978), Ex. A, Nos. 3.2-3.4.  I do not concur with this reading of Restatement § 930 for the

reasons stated in my subsequent order on a related jury instruction issue.  *See* Order re:

Instruction No. 3.28 (Doc. 2064) at 9-10 (Jan. 27, 2006).  Accordingly, I rejected Plaintiffs'

proposed revisions to these instructions.

Instruction No. 3.5 (matters not relevant to trespass claim): In addition to a clarifying,

non-substantive change to the last paragraph of this instruction, Plaintiffs proposed that I add a

---

[14]     These proposed revisions were submitted in Plaintiffs' Proposed Revisions to Jury
Instructions (Doc. 1978), filed January 13, 2006.

new paragraph instructing the jury that Defendants had not presented evidence that any plutonium

deposited in the Class Area had been removed by them or any other person. *See* Pls.' Proposed

Revisions to Jury Instructions, Ex. A, No. 3.5. This proposed revision was directed at

Defendants' theory that Rocky Flats plutonium deposited in the Class Area had been removed

from some Class Properties through development activities, as was made clear by the related

motion Plaintiffs filed seeking judgment as a matter of law on this theory. I treated this motion as

a motion to exclude this theory from the jury's consideration, granted it, and revised Instruction

No. 3.5 in accordance with this decision. The background and reasoning for this decision and my

denial of Defendants' subsequent motions to reconsider it and revised Instruction No. 3.5 are too

lengthy to be included here and therefore are set forth in a separate opinion issued this date. *See*

Mem. Opinion re: Defs.' Theory of Plutonium Removal Through Real Estate Development

(Dec. 7, 2006).

### 2.    Defendants' proposed revisions[15]

Instruction Nos. 3.2 through 3.4 (elements of trespass claims): Defendants proposed that I

insert nine references in these three instructions emphasizing that the jury make its findings with

respect to the Class as a whole. This concept was already present in the jury instructions. *See,*

*e.g.*, Instruction No. 1.1 (statement of the case and description of the Class); Instruction No. 3.2

(defining "Class Properties" as the properties owned by the Class). To eliminate any possibility of

confusion, however, I added language to Instruction No. 3.1 (introduction to Plaintiffs' claims)

specifically directing the jury that Plaintiffs were required to prove their trespass and nuisance

---

[15]    Unless otherwise noted, these proposed revisions were submitted in Defendants' Proposed Changes to Preliminary Jury Instructions (Doc. 1958), filed January 10, 2006.

claims for the Class as a whole. *See* Final Instructions, No. 3.1. This revision adequately

addressed Defendants' concern and eliminated any need for the further revisions Defendants

sought on this point here and elsewhere in the final instructions.

Instruction No. 3.2 (elements of trespass claims): Defendants' additional proposed

revision to the last paragraph of this instruction repeated matters already covered by this and

other instructions and was therefore unnecessary. *See, e.g.*, Instruction Nos. 1.4 & 1.5

(evidence), 1.8 (burden of proof), 3.2 (elements of trespass claims).

Instruction No. 3.3 (presence of plutonium): Most of Defendants' proposed revisions to

this instruction were again based on their contention that the physical intrusion of plutonium onto

Class Properties did not constitute a trespass under Colorado law unless it caused some additional

actual and substantial damages to these properties. This contention was first rejected in 2003, and

again in December, 2004. *See Cook IX*, 273 F. Supp. 2d at 1199-1201; Trespass Instructions

Order at 5-6. Defendants' final attempt to insert this contention into the case, based on the same

authority they advanced in 2003 and 2004, was also rejected.

Instruction Nos. 3.4 (continuing trespass): Defendants proposed that this instruction be

revised to direct the jury that Plaintiffs must not only prove that it appears that plutonium will

continue to be present on Class Properties indefinitely, but also that the activities that caused this

contamination were themselves continuing. I rejected this proposal because it was contrary to

Colorado law holding that the cessation or continuance of the conduct that caused a trespass is

immaterial to deciding whether a continuing trespass exists. *See Hoery*, 64 P.3d 214 at 221.

What is material to determining whether contamination is a continuing trespass is whether the

contamination remains on the plaintiff's property, *see id.*, and whether it appears it will be there

indefinitely, *see* Restatement (Second) of Torts § 930 (1979) [hereinafter "Restatement"].
Defendants' proposed revisions were inconsistent with both authorities.

      Instruction No. 3.5 (matters not relevant to trespass claim): I rejected Defendants' request
that I delete the first paragraph of Instruction No. 3.5 because this paragraph accurately reported
the Colorado Supreme Court's holding in *Hoery* that a continuing trespass may exist even though
the conduct that originally caused the invasion has ceased.  *See* 64 P.3d at 221.

      I denied Defendants' January 19 motion to strike the second paragraph of this instruction,
which directed the jury that Class members' actual or constructive knowledge of plutonium
contamination when they purchased their Class property was irrelevant to determining trespass
liability, for the reasons stated in my order of the same date.  *See* Order (Doc. 2024) (denying
Defs.' Mot. to Strike Portion of Jury Instruction No. 3.5 (Doc. 2019)).

      My reasons for rejecting Defendants' objections to Instruction No. 3.5 as revised to
address Defendants' theory of plutonium removal through development are too lengthy to be
stated here and therefore are set forth in a separate memorandum opinion entered this date.  *See*
Mem. Op. re: Defs.' Theory of Plutonium Removal Through Real Estate Development (Dec. 7,
2006). *See also supra* Section I.C.1 (regarding Plaintiffs' proposed revisions to Instruction
No. 3.5).

    **D.**    **Defendants' Proposed Revision to Trespass Instructions During Jury
Deliberations**

      On January 24, 2006, on the second full day of deliberations, the jury sent out a note
asking for a definition of the word "intentionally" as used in the statement of the second element
of Plaintiffs' trespass claims, *see* Instruction No. 3.2, and also asking whether the definition was

the same as "intentional" as used and defined in connection with Plaintiffs' nuisance claims.  I

informed the parties of this note and that I intended to answer "no," the definitions were not the

same, that Colorado law did not require Plaintiffs to prove that Defendants intended to commit a

trespass, *see, e.g.*, *Bittersweet Farms, Inc. v. Zimbelman*, 976 P.2d 326, 329 (Colo. Ct.

App. 1998); Colo. Jury Instructions (Fourth) Civ. § 18:1 n.4, and that "intentionally" in the

context of the trespass claim meant just what was stated in Instruction No. 3.2:  that one or both

Defendants must have intended to commit act or acts that in the usual course of events resulted in

the trespass.  *See Hoery*, 64 P.3d at 217; Colo. Jury Instructions (Fourth) Civ. § 18:1 n.5;

Trespass Instructions Order at 3-5 (discussing *Hoery* and other Colorado law).

The Defendants took the jury's question as an opportunity to seek revision of Instruction

No. 3.2.  In an "emergency motion" and accompanying letter requesting an immediate hearing,

Defendants requested that the jury be instructed according to the Colorado Supreme Court's

"verbatim" and "critical" direction in *Hoery* that "intentionally" means an act "done with

knowledge that it will to a substantial certainty result in entry of the foreign matter."  Defs.' Mot.

re: Jury's Note (Doc. 2050).[16]  The language cited by Defendants, however, was not a verbatim

holding from *Hoery*, or part of the court's holding on this issue at all.  Instead, it was a quotation

from a comment to the Restatement (Second) of Torts § 158(a), which the *Hoery* court cited as

indirect support for its actual holding, which, as reported in Instruction No. 3.2 and the answer to

the jury's question, is that "[a] landowner who sets in motion a force which, in the usual course of

---

[16]    Although Defendants' motion contains some language disclaiming any intent to
change Instruction No. 3.2, the thrust of their letter, motion and oral argument was for precisely
this result.

18

events, will damage property of another" is liable for trespass. *Hoery*, 64 P.3d at 217.[17]  In

addition, Defendants' emergency motion failed to mention that I had ruled on this precise issue in

December, 2004, in response to a proposed jury instruction by Defendants that included the same

"substantial certainty" language they sought to insert in this instruction during the jury's

deliberations. *See* Trespass Instructions Order at 3-5.  Defendants' renewed and misleading

arguments on this point added nothing to my previous analysis and were rejected.

## II.     Instructions on Nuisance Claims

Both parties submitted proposed instructions and jury verdict forms regarding Plaintiffs'

nuisance claims in August, 2004.  Objections and argument regarding these instructions continued

into the fall.  After my May 2005 decision resolving the major issues presented by these

---

[17]      Defendants reported in their letter to the court requesting an emergency hearing on
this issue that the "verbatim language" from *Hoery* is as follows:

> Under Colorado law, a defendant who sets in motion a force which, in the usual
> course of events, will damage property of another is guilty of a trespass on such
> property.  It is enough that an act is done with knowledge that it will to a
> substantial certainty result in the entry of the foreign matter.

Letter from J. Tangren, Counsel for Defendants, to the Hon. John L. Kane (Jan. 25, 2006).  The
actual quotation from *Hoery* is:

> A landowner who sets in motion a force which, in the usual course of events, will
> damage property of another is guilty of a trespass on such property. *Miller v.*
> *Carnation Co.*, 33 Colo. App. 62, 68, 516 P.2d 661, 664 (1973) (citing *Fairview*
> *Farms, Inc. v. Reynolds Metals Co.*, 176 F.Supp. 178 (D. Or. 1959); *see also*
> Restatement (Second) of Torts § 158(a) cmt. i ("It is enough that an act is done
> with knowledge that it will to a substantial certainty result in entry of the foreign
> matter.")

*Hoery*, 64 P.3d at 217.  Use of the "*see also*" citation identifies the Restatement comment as
additional source material that less directly supports the court's statement of its "usual course of
events" standard. *See* The Bluebook: A Uniform System of Citation R. 1.2(a), at 46 (Columbia
Law Review Ass'n et al. eds., 18th ed. 2005).

instructions, both parties submitted supplemental proposed nuisance instructions before trial, and

proposed revisions to the Start of Trial nuisance instructions during and/or at the close of trial.

My rulings on the parties' proposed nuisance instructions and revisions were conveyed in

the May 2005 Order and the instructions I prepared and provided to the parties and the jury at the

start and close of trial.  The rationale for these rulings, to the extent not previously conveyed, is

set out below.  These rulings were based on the common law of private nuisance declared by the

Colorado courts, as informed by the Restatement (Second) of Torts and other relevant authority

consistent with Colorado law.

Colorado nuisance law, however, as is the case in virtually all jurisdictions, is not always

clear and consistent.  This is not unexpected or intended as any criticism of the Colorado courts,

because nuisance law has long been recognized as notoriously contingent and difficult to define.

It has been called a "quagmire,"[18] and an "impenetrable jungle" full of "vagueness, uncertainty and

confusion."[19]  Justice Blackmun once observed that "one searches in vain . . . for anything

resembling a principle in the common law of nuisance."  *Lucas v. South Carolina Coastal*

*Comm'n*, 505 U.S. 1003, 1055 (1992) (Blackmun, J., dissenting).

Nonetheless, to instruct a jury meaningfully on a nuisance claim, a judge must do his best

to search for and find the common law principles and rules governing the claim, and to present

those principles and rules to a lay jury in a form it can follow.  Given the abundance of vague and

sometimes contradictory authority in nuisance law, this was not an easy task in this action, which

---

[18]      John E. Bryson & Angus MacBeth, *Public Nuisance, the Restatement (Second) of Torts, and Environmental Law*, 2 Ecology L.Q. 241, 241 (1972).

[19]      W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 86, at 616, 617 (5th ed. 1984).

20

because of its nature, *see, e.g.*, May, 2005 Order at 3-4, and the obdurate positions taken by the parties, required a more complete and coherent definition of these principles and rules than is often the case.  It is, for example, one thing to state the general Colorado rule that a plaintiff asserting a claim for private nuisance must prove an interference with the use and enjoyment of property was "substantial and unreasonable," or the rule that an "unreasonable" interference is one in which the gravity of the harm outweighs the utility of the conduct causing it, *see, e.g.*, *Public Serv. Co. v. Van Wyk*, 27 P.3d 377, 391 (Colo. 2001), but quite another to define what this means, especially in a manner that a lay jury can understand and apply, when the parties ascribe such different meanings to these terms.

As described below, the parties' proposed instructions on such matters for the most part were too general and vague to be useful, or attempted to limit the relevant inquiry in a manner that, while occasionally having some basis in Colorado case law or the Restatement, ignored other equally binding or persuasive authority that required the jury to engage in a broader review.  The jury instructions I prepared for the nuisance claims, Instruction Nos. 3.6 to 3.17, were based on a thorough review of Colorado nuisance law, the Restatement nuisance provisions relied upon by the Colorado courts and related authority.  They were intended to provide the jury with a more complete, consistent and tailored statement of the law governing Plaintiffs' nuisance claims than was proposed by either party.  *See Elbel v. United States*, 364 F.2d 127, 134 (10th Cir. 1966) (judge cannot fulfill duty to guide, direct and assist the jury with "mere abstract statements of legal definitions," but rather must "fairly and impartially state the issues and applicable law in logical sequence and in the common speech of man").

21

A.      **Plaintiffs' Proposed Nuisance Instructions**[20]

No. 1 (elements of nuisance): I rejected this proposed instruction regarding the elements

of Plaintiffs' nuisance claims in favor of an instruction I prepared, Instruction No. 3.6, which

incorporates the concepts and some of the language proposed by Plaintiffs but in the easier-to-

follow format used in Colorado's standard civil jury instructions for stating the elements of a

claim.  *See, e.g.*, Colo. Jury Instructions (Fourth) Civ. § 18:1 (trespass claim).  Instruction

No. 3.6 also states elements of the nuisance claim omitted from Plaintiffs' proposed instruction,

namely that Plaintiffs must prove Defendants acted either intentionally or negligently in causing

the nuisance, *see, e.g., Cook IX*, 273 F. Supp. 2d at 1202, and that the nuisance will apparently

continue indefinitely, as required for Plaintiffs to prove a continuing nuisance for which they may

recover damages in the form of diminution in market value.  *See Cook X*, 358 F. Supp. 2d

at 1013; Restatement § 930(1).

Instruction No. 3.6 and related Instruction Nos. 3.10-3.12 include the requirement that

Plaintiffs prove that any interference caused by Defendants' intentional or negligent conduct was

unreasonable.  This requirement is based on the Colorado Supreme Court's statement in *Public

Service Co. v. Van Wyk*, 27 P.3d 377, 391 (Colo. 2001), that "[t]o maintain a successful nuisance

claim, a plaintiff must establish that the defendant has unreasonably interfered with the use and

enjoyment of her property."  *Van Wyk*, 27 P.3d at 391.  This statement is in accord with other

more general statements in Colorado case law that an interference must be unreasonable to

---

[20]      Unless otherwise noted, these proposed instructions were submitted in Plaintiffs'
Proposed Nuisance Jury Instructions and Jury Verdict Form, submitted August 6, 2004.

constitute a nuisance.[21]  *See, e.g.*, *Allison v. Smith*, 695 P.2d 791, 794 (Colo. Ct. App. 1984);

*Lowder v. Tina Marie Homes, Inc.*, 601 P.2d 657, 658 (Colo. Ct. App. 1979).

The difficulty with addressing this requirement is that in *Van Wyk*, the Colorado high court

also stated quite clearly, based on § 822 of the Restatement (Second) of Torts, that proof of

unreasonableness is *only* required for interference caused by intentional conduct, and is *not* an

element of a nuisance claim premised on negligent, reckless or abnormally dangerous conduct.

*See Van Wyk*, 27 P.3d at 391 (citing Restatement § 822).  *See also* Restatement § 822 (actor who

causes interference with another's use and enjoyment of property is liable for private nuisance if

the interference "is either (a) intentional and unreasonable, or (b) unintentional and otherwise

actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally

dangerous conditions or activities. "); *id.* § 822 cmt. c ("A person is subject to liability for an

intentional invasion when his conduct is unreasonable under the circumstances of the particular

case, and he is subject to liability for an unintentional invasion when his conduct is negligent,

reckless or abnormally dangerous.").  Plaintiffs alleged here that Defendants interfered with Class

members' use and enjoyment of property through both intentional and negligent conduct.

Accordingly, one of the questions presented by this instruction regarding the elements of nuisance

under Colorado law was which statement by the *Van Wyk* court regarding the "unreasonableness"

---

[21]       I note, however, that in its most recent delineation of the elements of nuisance
under Colorado law, the Colorado Supreme Court did not include the requirement that the
invasion of the plaintiff's interest in the use and enjoyment of his property be unreasonable.  *See*
*Hoery*, 63 P.3d at 218 (stating only that the invasion must be substantial).  No party, however,
argued that this decision did away with the "unreasonableness" element of a nuisance claim stated
in *Van Wyk* and other, earlier Colorado decisions.

requirement to follow in a case that includes allegations of interference caused by intentional and negligent conduct.[22]

After reviewing applicable authorities, I decided to instruct the jury that Plaintiffs must prove the alleged interference was "unreasonable," without making a distinction between interference caused by intentional conduct, negligent conduct or some combination of the two. This conclusion was based in part on the difficulty the jury would face in a case such as this, in which the alleged nuisance may have resulted from a combination of intentional conduct and negligent conduct, if it had to apply an unreasonableness standard to the portion of the interference resulting from one type of conduct but not the other.  More importantly, however, as the Restatement authors indicated, the standard for finding negligent conduct is very similar to the balancing test employed in Restatement § 826 for determining whether an intentional interference with use and enjoyment of property is unreasonable.  *See* Restatement § 822 cmt. k; *id.* § 828 cmt. c.  The Colorado Supreme Court has adopted this balancing test, which weighs the gravity of the harm against the utility of the conduct that caused the harm, as the standard for determining whether an interference with the use and enjoyment of property is "unreasonable."  *See Van Wyk*, 27 P.3d at 391 (citing Restatement § 826).  Accordingly, directing the jury to determine whether any proven interference is unreasonable using this balancing test, even with respect to an

---

[22]    The Restatement explains that the concept of unreasonableness as used in nuisance law was developed only to establish liability for intentional interferences, because general principles of liability already existed for unintentional conduct that harmed another's interests, including the interest in the use and enjoyment of property.  *See* Restatement § 822, cmt. g; *see also* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 87, at 624-25 (5th ed. 1984) (noting their discussion of nuisance, including its "unreasonableness" requirement, applies only to interferences resulting from intentional as opposed to negligent or abnormally dangerous conduct).  The conduct at issue in *Van Wyk* was intentional.  27 P.3d at 391-92.

interference that may be caused by negligent conduct or some combination of negligent and intentional conduct, is not necessarily inconsistent with the Restatement or *Van Wyk*'s recitation of Restatement § 822, but rather is merely redundant in some respects. *Cf. Pestey v. Cushman*, 788 A.2d 496, 506 (Conn. 2002) (concluding on this basis that while Restatement language does not make point clearly, a showing of unreasonableness is an essential element of a private nuisance action based on negligent conduct). Finally, directing the jury in this manner is in accord with the Colorado Supreme Court's unequivocal statement that "[t]o maintain a successful nuisance claim, a plaintiff must establish that the defendant has unreasonably interfered with the use and enjoyment of her property." *Van Wyk*, 27 P.3d at 391.

No. 2 (interference defined): I rejected this proposed instruction in favor of the instruction I prepared, Instruction No. 3.7 (interference defined), based on Plaintiffs' subsequent narrowing of the forms of interference they allege Defendants caused, and my ruling in the May 2005 Order regarding which of Plaintiffs' proffered forms of interference were capable of resolution on a class-wide basis. *See* May 2005 Order at 3-11. Instruction No. 3.7 defines this element of Plaintiffs' nuisance claim by specifying and explaining the forms of interference the jury may consider in deciding whether either Defendant has interfered with Class members' use and enjoyment of property.

No. 3 (interference and contamination): I adopted Instruction No. 3.7 (interference defined) in lieu of this instruction because it is a more complete statement of what could constitute an actionable interference in this case.

25

In preparing Instruction No. 3.7, I rejected Plaintiffs' proposed language suggesting that contamination alone can constitute interference with the use and enjoyment of property for the reasons stated in the May 2005 Order at 9-11.

No. 4 (interference and health risk): I rejected this proposed instruction in favor of Instruction No. 3.7 (interference defined), which is generally consistent with this proposed instruction but provides clearer direction on what might constitute an actionable interference in this case.

No. 5 (conduct element): I rejected this proposed instruction in favor of an instruction I prepared, Instruction No. 3.13, which more fully defines the conduct element of Plaintiffs' nuisance claim and reflects my subsequent ruling that the activities alleged to have caused the nuisance are not ultrahazardous activities subjecting Defendants to strict liability.  *See* May 2005 Order at 11-14.

In preparing Instruction No. 3.13, I overruled Defendants' objection that Plaintiffs had waived the right to claim nuisance based on intentional conduct.  Although Defendants are correct that Plaintiffs failed to note this issue in the December 2003 Status Report, I found no prejudice in allowing Plaintiffs to try it in connection with their nuisance claims because it had long been part of these claims and was also at issue in connection with Plaintiffs' trespass claims.

No. 6 (intentional conduct): I rejected this proposed instruction in favor of Instruction No. 3.14, which I prepared, because Instruction No. 3.14 more closely follows the Colorado Supreme Court's definition of intentional conduct in *Van Wyk*.  *See* 27 P.3d at 394, 395; *see also* Restatement § 825 & cmt. d.

No. 7A (ordinary negligence): I rejected this proposed instruction in favor of Instruction No. 3.15 (defining negligent conduct), which I based in part on Plaintiffs' alternate proposed negligence instruction, No. 7B.

No. 7B (negligence - inherently dangerous activity):  I accepted this proposed instruction subject to revisions I made to conform it to Plaintiffs' theory of the case, *see* Pls.' Statement of Claims (Doc. 1419) at 3-4 (nuisance claim premised on risk posed by plutonium and other hazardous substances), and the standard Colorado jury instruction defining an inherently dangerous activity and the corresponding standard of care.  *See* Colo. Jury Instructions (Fourth) Civ. § 9:7 & n.1 (2002).  The instruction I prepared is Instruction No. 3.15.

Defendants' objections to Plaintiffs' proposed instruction were overruled.  As Defendants acknowledge, the concept of inherently dangerous activity, requiring the highest degree of care, is distinct from the concept of ultrahazardous activity triggering strict liability.  *See* Defs.' Objs. to Pls.' Nuisance Jury Instructions at 55 (Aug. 6, 2004); *Bennett v. Greeley Gas Co.*, 969 P.2d 754, 764 (Colo. Ct. App. 1998).  Thus, my determination that Plaintiffs had failed to demonstrate that the activities in question were ultrahazardous and thus subject to strict liability, *see* May 2005 Order at 11-14, was not determinative of whether these activities were inherently dangerous.

Whether an activity is inherently dangerous and subject to the higher standard of care is a question of law to be determined by the court.  *Imperial Distr. Servs., Inc. v. Forrest*, 741 P.2d 1251, 1254 (Colo. 1987).  The higher standard applies only when:  (1) the activity in question is inherently dangerous; (2) the defendant possesses expertise in dealing with the activity; and (3) the general public would not be able to recognize or guard against the potential danger.  *See id.* at 1255-56; *Melton v. Larrabee*, 832 P.2d 1069, 1072 (Colo. Ct. App. 1992); *Mannhard*

27

*v. Clear Creek Skiing Co.*, 682 P.2d 64, 65-66 (Colo. Ct. App. 1983).  "It is only where all minds concur that the defendant is engaged in an activity that poses a high risk of injury to others that the court, as a matter of law, may instruct the jury to hold the defendant to the highest standard of care." *Imperial Dist.*, 741 P.2d at 1255.  Applying this standard, the Colorado courts have found that activities including the transmission of electricity and the sale of propane gas are inherently dangerous activities to which the higher standard of care applies.  *See Federal Ins. Co. v. Public Serv. Co.*, 570 P.2d 239 (Colo. 1977); *Blueflame Gas, Inc. v. Van Hoose*, 679 P.2d 579, 587-89 (Colo. 1984); *see also Pizza v. Wolf Creek Ski Development Corp.,* 711 P.2d 671, 683 (Colo. 1985) (discussing *Federal Ins. Co.* and *Blueflame Gas*).

Upon consideration of the criteria stated by the Colorado Supreme Court, I found the activities underlying Plaintiffs' trespass and nuisance claims were inherently dangerous activities to which the higher standard of care applied.  Inherently dangerous activities are activities that "by their very nature create a danger to the public that otherwise does not exist." *Mannhard*, 682 P.2d at 66.  It is beyond dispute that the generation, use, storage and disposal of plutonium and other hazardous materials in the course of nuclear weapons production constitute inherently dangerous activities under this test.  There should also be no question that Defendants possessed expertise in dealing with plutonium and these other dangerous substances and that the general public had no means to recognize or guard against their potential danger.  Accordingly, the higher standard of care applies to these activities, and the jury was so instructed in Instruction No. 3.15 (defining negligent conduct).

28

No. 8 (res ipsa loquitur): I rejected this proposed instruction because Plaintiffs failed to demonstrate it was appropriate given, among other things, the variety of conduct Plaintiffs alleged was responsible for the alleged nuisance.

No. 9 (ultra-hazardous activity): I rejected this proposed instruction for the reasons stated in the May 2005 Order at 11-14.

No. 10 (unreasonable interference defined): I rejected this proposed instruction because it was an incomplete statement of what constitutes an unreasonable interference under Colorado law and the Restatement provisions on which the Colorado Supreme Court has relied in defining unreasonable interference. *See Van Wyk*, 27 P.3d at 391 (citing Restatement § 826).  The instructions I prepared on this issue in lieu of this instruction are Instruction Nos. 3.10 to 3.12.

Defendants objected to the concept stated by Plaintiffs in this proposed instruction, which is that harm without compensation may be unreasonable.  I overruled this objection and included this concept as one of the factors to be considered by the jury in deciding the utility of Defendants' conduct.  *See* Instruction No. 3.12 (utility of conduct).  I made this determination based on the Restatement and other authorities recognizing that in a nuisance action for damages,[23] "the legal utility of the activity [causing the nuisance] may also be greatly reduced by the fact that the actor [is causing the nuisance] without compensating his neighbors for the harm done to them."  Restatement (Second) of Torts § 826 cmt. e; *id.* § 822 cmt. d ("It may be reasonable to continue an important activity if payment is made for the harm it is causing but

---

[23]   The Restatement and others have noted that the determination of whether an interference is unreasonable is different in a nuisance action seeking damages as opposed to one seeking injunctive relief, and that much confusion has resulted from the failure of courts to recognize this difference. *See, e.g.*, Restatement § 822 cmt. d; W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 88A at 631-32 (5th ed. 1984).

unreasonable to initiate or continue it without paying."); *id.* cmt. g (stating, in connection with the rules for determining when an interference with use and enjoyment of property is unreasonable, that "[l]iability for damages is imposed in those cases in which the harm or risk to one is greater than [a person] ought to be required to bear under the circumstances, at least without compensation."); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 88, at 629 (5ᵗʰ ed. 1984) [hereinafter "*Prosser & Keeton*"] (unreasonable interference may be found when it was unreasonable for defendant to act as it did without paying for the harm inflicted).

Other courts employing the Restatement's balancing test for determining whether an interference is unreasonable in the context of an action for damages have recognized this factor, *see, e.g.*, *Pestey*, 788 A.2d at 508 ("Ultimately, the question of reasonableness is whether the interference is beyond that which the plaintiff should bear, under all of the circumstances of the particular case, without being compensated."); *Walsh v. Town of Stonington Water Pollution Control Auth.*, 736 A.2d 811, 819-20 (Conn. 1999) (the utility of the conduct weighed under the balancing test stated in Restatement § 826 includes both the general activity and what is done about its consequences), and numerous other courts have recognized and applied the general principle that, in a nuisance action for damages, a useful and important activity may be unreasonable if no compensation is paid for even the relatively small harm that it causes. *See, e.g.*, *Rattigan v. Wile*, 841 N.E.2d 680, 686 (Mass. 2006); *Adkins v. Thomas Solvent Co.*, 487 N.W.2d 715, 723 (Mich. 1992); *Meat Producers, Inc. v. McFarland*, 476 S.W.2d 406, 411 (Tex. Civ. App. 1972). Although the Colorado Supreme Court has not considered this issue, I have no reason to believe it would take a different path and omit this fundamental consideration from the "gravity of harm versus utility of conduct" balancing test it has declared for deciding

30

whether an interference with use and enjoyment of property is "unreasonable" in a nuisance action for damages. *See Van Wyk*, 27 P.3d at 382, 392 (in a nuisance action for damages, "a finding of unreasonableness" requires "[a] determination that the social utility of the act causing the invasion that interferes with the use and enjoyment of the land does not outweigh the harm of that invasion").

*See also infra* Section II.B (regarding Defendants' proposed nuisance Instruction No. 6 and the definition of "unreasonable" interference under Colorado law); *infra* Section II.C.2 (regarding Defendants' proposed revisions to Instruction No. 3.12).

No. 11 (unreasonable and substantial defined by normal community member standard): I rejected this proposed instruction in favor of instructions I prepared, Nos. 3.8 (introduction to substantial and unreasonable interference) and 3.9 (substantial interference), which accepted the definition advanced by Plaintiffs in this proposed instruction, but, to avoid juror confusion, assigned this definition to the determination of whether an interference is substantial, rather than both "substantial" and "unreasonable." *See* Instruction No. 3.9. The concept of an "unreasonable" interference was addressed separately in Instruction Nos. 3.10 through 3.12.

Application of the "normal community member" standard to determine whether an interference is "substantial" is consistent with Colorado authority, *see Lowder*, 601 P.2d at 658; *Northwest Water Corp. v. Pennetta*, 479 P.2d 398, 400 (Colo. Ct. App. 1970), and with the Restatement's separate treatment of the concepts of "significant" or substantial interference, *see* Restatement § 821F (cited with approval in *Van Wyk*, 27 P.3d at 391), and "unreasonable" interference, *see* Restatement § 826 (also cited with approval in *Van Wyk*, 27 P.3d at 391, 392). The Tenth Circuit has also treated the requirements that the interference be "substantial" and

31

"unreasonable" as separate requirements under Colorado law, and defined "substantial" interference by reference to the community member standard.  *Haas v. Lavin*, 625 F.2d 1384, 1389 (10th Cir. 1980).

Treating the "substantial" and "unreasonable" requirements separately also eliminates the confusion inherent in the *Van Wyk* court's statement of the two different Restatement tests, § 821F's community member standard and § 826's harm versus utility balancing test, for determining whether an interference is "unreasonable," without stating any test for determining when an interference is also "substantial."  *See Van Wyk*, 27 P.3d at 391.

No. 12 (lower property values as evidence of substantial and unreasonable interference):  I rejected this proposed instruction but incorporated one of the concepts it advanced, that evidence of a depreciation in property values is evidence that an interference is substantial, in Instruction No. 3.9 (defining "substantial" interference).  *See also infra* Section II.B (regarding Defendants' proposed nuisance Instruction No. 9).

I also rejected the implication in this proposed instruction that a decrease in property value, in combination with other factors, could establish the separate element of interference with the use and enjoyment of property.  This implication is contrary to my subsequent ruling in the May 2005 Order that a decrease in market value is not an interference with the use and enjoyment of property or evidence that an interference has occurred.  May 2005 Order at 8-9; *see Cook IX*, 273 F. Supp. 2d at 1209.  The jury was instructed consistent with this ruling in Instruction No. 3.7 (interference defined).

No. 13 (balancing harm and utility):  I rejected this proposed instruction in favor of an instruction I prepared, No. 3.10 (balancing test), which incorporates many of the concepts

proposed here by Plaintiffs and further instructs the jury that they must determine the

unreasonableness of the interference using an objective standard.  *See* Restatement § 826 cmt. c.

No. 14 (gravity of the harm): I rejected this proposed instruction in favor of an instruction

I prepared, No. 3.11 (gravity of harm), which incorporates Plaintiffs' proposal and expands on it

consistent with Restatement § 827 and its commentary.

No. 15 (utility of conduct): I rejected this proposed instruction in favor of Instruction

No. 3.12 (utility of conduct), in which I incorporated Plaintiffs' proposal and expanded on it

consistent with Restatement § 828 and its commentary.  For the reasons stated in connection with

Plaintiffs' proposed nuisance Instruction No. 10 above, I also instructed the jury in Instruction

No. 3.12 that one of the factors to be considered in assessing the utility of Defendants' conduct

was whether it was unreasonable for this conduct to harm Class members, that is, interfere with

Class members' use and enjoyment of their properties, without compensation.[24]

No. 16 (separate findings for each defendant):  I accepted this instruction, but revised it to

apply to both the trespass and nuisance claims.  The final instruction on this topic is Instruction

No. 3.19 (separate findings).

Supplemental Proposed Limiting Instruction: Utility versus Harm (submitted

September 23, 2005 in Doc. 1456):  I rejected this proposed instruction in favor of Instruction

Nos. 3.10 (balancing test) and 3.12 (utility of conduct), which provided a more complete

explanation of the balancing test used to determine whether an interference with the use and

enjoyment of property is unreasonable and the factors to be considered in evaluating the utility of

---

[24]     Instruction Nos. 3.10-3.12 defined the "harm" to Class members for purposes of
the gravity of the harm versus utility of the conduct balancing test as any proven interference with
Class members' use and enjoyment of their properties.

the conduct as part of that balancing test. *See* discussion in this section regarding Plaintiffs'

proposed nuisance Instruction Nos. 10 and 15.

### B.      Defendants' Proposed Nuisance Instructions[25]

No. 1 (elements of nuisance liability):  I accepted the form of this proposed instruction

over that proposed by Plaintiffs, *see supra* Section II.A (regarding Plaintiffs' proposed nuisance

Instruction No. 1), but rejected its statement of the elements of the nuisance claims in favor of the

more complete and accurate statement of these elements in Instruction No. 3.6.  I also rejected

this proposed instruction's statement of various affirmative defenses and suggestion that liability

for nuisance would be tried on an individual rather than class basis because they were contrary to

the law of the case.  *See, e.g.*, May 2005 Order at 3-10; *Cook X*, 358 F. Supp. 2d at 1004, 1013;

May 2004 Order at 5-10; April 2004 Order at 6-10.  Defendants' concerns regarding individual as

opposed to class-wide liability were addressed by the definition of the class-wide interferences to

be tried.  *See* May 2005 Order at 3-11; Instruction No. 3.7 (interference defined).

No. 2 (interference based on diminution in value): I rejected the form of this proposed

instruction, but accepted the concepts it stated, which I included in Instruction No. 3.7

(interference defined) and No. 3.13 (actionable conduct).

No. 3 (interference based solely on contamination): I rejected the form of this proposed

instruction, but accepted the concept it stated, which I incorporated in Instruction No. 3.7

(interference defined).

---

[25]      Unless otherwise noted, these proposed instructions were submitted in
Defendants' Submission of Nuisance Jury Instructions and Jury Verdict Forms, and Defendants'
Objections to Plaintiffs' Nuisance Jury Instructions, dated August 6, 2004.

Nos. 4 & 5 (interference based on unfounded fears or threat of future harm): I rejected these proposed instructions in a bench ruling at the September 8, 2004 jury instruction conference because both instructions were contrary to the law of the case.  Sept. 8, 2004 Tr. (Doc. 1279) at 18; *see Cook IX*, 273 F. Supp. 2d at 1202-08.  In addition, Defendants' proposed nuisance Instruction No. 4 was unnecessary in light of my subsequent determination that interference based on Class members' fears and concerns would not be decided in the class trial.  *See* May 2005 Order at 7.

No. 6 (definition of substantial and unreasonable): I rejected this proposed instruction because it was an incomplete and incorrect statement of applicable law.

I rejected the proposed instruction's statement of a single definition for the concept of "substantial and unreasonable" interference for the reasons stated above in connection with Plaintiffs' proposed nuisance Instruction No. 11.  *See supra* Section II.A.  I addressed the concept of "substantial" interference separately in Instruction No. 3.9 and defined it by reference to the "normal member of the community" consistent with Colorado precedent.  *See supra* Section II.A (regarding Plaintiffs' proposed nuisance Instruction No. 11).

With respect to the requirement that an interference be "unreasonable" for nuisance liability to attach, Colorado law follows Restatement § 826(a) in requiring plaintiffs to prove unreasonable interference by demonstrating that the gravity of the harm outweighs the utility of the conduct that caused the harm.  *See Van Wyk*, 27 P.3d at 391, 392.  Defendants' interpretation of this test in this proposed instruction would have precluded a finding of substantial and unreasonable interference, and hence a finding of nuisance, any time the utility of a defendant's enterprise to the general public outweighed the harm to individual plaintiffs.

35

The Colorado Supreme Court has not specifically addressed the scope or content of the gravity of the harm versus utility of conduct test. It has indicated, however, that it follows the Restatement on this issue, *see id.*, and neither the Restatement section upon which *Van Wyk* relies nor related Restatement provisions and commentary support the simplistic interpretation of this test advanced by Defendants. The Restatement identifies a variety of factors that should be considered in determining whether the gravity of the harm outweighs the utility of the conduct, only one of which, the "social value" of the conduct causing the harm, is included in Defendants' proposed instruction. *See* Restatement § 828 & cmt. e (one factor to be considered in determining the utility of the conduct causing an interference is the "social value" served by this conduct, that is the degree to which the conduct advances or protects the public good). The Restatement specifically recognizes that a high social utility is not determinative, especially in an action for damages. *See, e.g.*, Restatement § 828 (identifying three factors, social value of the conduct, its suitability to the locality and the impracticability of preventing or avoiding the invasion, as important to utility of conduct determination); *id.* § 828 cmt. c (conduct must have utility from the standpoint of all factors to outweigh the gravity of the harm it causes, so the fact that conduct has utility from the standpoint of one factor is not controlling); *id.* § 826 cmt. e (in damages action, utility of conduct may be greatly reduced by fact that neighbors are not being compensated for harm done to them). Other jurisdictions have also rejected the notion that an enterprise that interferes with the use and enjoyment of neighboring properties is not "unreasonable" or a nuisance in an action for damages if it serves a sufficiently important public purpose. *See, e.g.*, *Walsh*, 736 A.2d at 819-20 (relying on Restatement § 826 and related comments to reject this notion); *Atlas Chem. Indus., Inc. v. Anderson*, 514 S.W.2d 309, 316

36

(Tex. App. 1974); *Jost v. Dairyland Power Cooperative*, 172 N.W.2d 647, 651, 653-54 (Wis.

1970); *see also Prosser & Keeton* § 88 at 626 ("It is not necessarily a justification on the issue of

damages that the social value or utility of the defendant's conduct outweighs the gravity of the

harm that is being done.").[26]  Defendants have not cited any Colorado precedent suggesting the

Colorado courts would ignore this authority and the Restatement to adopt the rule advocated by

them.

    In addition, under the Restatement, one of the factors to be considered in assessing the

utility of a defendant's conduct is whether it was practicable for the defendant to prevent or avoid

the interference with the use and enjoyment of neighboring properties.  Restatement § 828 (c) &

cmt. h.  Consistent with this principle, the Colorado Supreme Court has declared that "it would be

a sorry condition of the law if the courts were compelled to hold that the property of another

might be taken because it would be either inconvenient or expensive to the one committing the

nuisance to restrain or prevent its continuance."  *Krebs v. Hermann*, 6 P.2d 907, 910 (Colo.

1931) (quotations omitted).  Defendants' proposed definition of what constitutes an

---

[26]     As one court succinctly stated:

    We know of no acceptable rule of jurisprudence which permits those engaged in
    important and desirable enterprises to injure with impunity those who engaged in
    enterprises of lesser economic significance.  The costs of injuries resulting from
    pollution must be internalized by industry as a cost of production and borne by
    consumers and shareholders, or both, and not by the individual.

*Atlas Chem. Indus., Inc. v. Anderson*, 514 S.W.2d 309, 316 (Tex. App. 1974).  That the
enterprise in question here is a government facility rather than a private enterprise does not alter
this analysis.  *See, e.g.*, *Walsh*, 736 A.2d at 820 (same in context of municipal sewage treatment
plant).

37

"unreasonable" interference ignores this principle and Restatement factor and thus is inconsistent with Colorado law as well.

Accordingly, I rejected the definition of "substantial and unreasonable" proposed by Defendants in their nuisance Instruction No. 6 and prepared Instruction Nos. 3.8-3.12 instead to provide the jury with a more complete and accurate definition of "substantial" and "unreasonable" based on the Colorado law, the Restatement (Second) of Torts §§ 821F, 822, 826-28 and related comments, and the other authority cited above. *See also supra* Section II.A (regarding Plaintiffs' proposed nuisance Instruction Nos. 10-15).

No. 7 (finding of unreasonableness requires showing of non-compliance with state and federal standards): I rejected this proposed instruction because Defendants failed to produce any authority supporting it. Defendants based this instruction and their proposed nuisance Instruction Nos. 14-15, 17-19 on their assertion that, as a matter of Colorado law, compliance with applicable state or federal regulatory standards conclusively establishes that an interference with use and enjoyment of property is reasonable and therefore not a private nuisance.[27]  Defendants' authority for this assertion was the Colorado Supreme Court's decision in *Van Wyk v. Public Service Co*, 27 P.3d 377 (Colo. 2001).

In *Van Wyk*, the plaintiffs asserted that the defendant's upgrade of an electrical transmission line adjacent to their properties constituted a private nuisance. In order to upgrade the line, the defendant had been required by statute to apply to the Colorado Public Utility Commission ("PUC") for approval. Colo. Rev. Stat. § 30-28-127 (2004). As required by statute,

---

[27]     To the extent Defendants relied on federal preemption of the state duty of care to support these instructions, this contention was rejected in *Cook IX*. *See* 273 F. Supp. 2d at 1199.

the PUC reviewed the defendant's application to determine whether the proposed upgrade was

"reasonable," using much the same gravity of harm versus utility of conduct balancing test as is

applied in the nuisance context to determine whether an interference is reasonable or

unreasonable. *Id.*; *see Douglas County Bd. of Comm'rs v. Pub. Utils. Comm'n ("Douglas*

*County I")*, 829 P.2d 1303, 1305-06 (Colo. 1992). The PUC determined after receiving evidence

and testimony in a five-day public hearing and in written post-hearing statements that the

proposed upgrade, including the anticipated noise and electromagnetic fields emitted by the

upgraded line, was reasonable under this standard. *Douglas County I*, 829 P.2d at 1305-06. The

PUC's quasi-judicial determination of reasonableness, *id.* at 1307, was then heavily litigated in the

courts and ultimately affirmed by the Colorado Supreme Court. *See Douglas County I*,

829 P.2d 1313 (reversing and remanding appeal of PUC's decision); *Douglas County Bd. of*

*Comm'rs v. Pub. Utils. Comm'n ("Douglas County II")*, 866 P.2d 919, 921-22 (Colo. 1994)

(affirming PUC decision).

     Under these circumstances, when the plaintiff property owners brought a separate action

alleging the noise and electromagnetic fields from the upgraded transmission line were an

unreasonable interference with their use and enjoyment of property, the Colorado Supreme Court

found that the PUC's adjudicatory determination that the upgraded line was reasonable, as

previously affirmed by the Colorado Supreme Court, established that the alleged interference was

reasonable as a matter of law to the extent that the PUC had anticipated and considered the noise

and electromagnetic fields actually caused by the now operating transmission line in making this

determination. *Van Wyk*, 27 P.3d at 393-94, 396-97. *Van Wyk*, therefore, does not stand for the

general proposition that compliance with state or federal regulatory standards establishes the

reasonableness of a claimed interference in a private nuisance action.  Instead, it teaches that a

state agency's quasi-judicial determination that a specific activity is reasonable,[28] performed

pursuant to statute and employing much the same utility versus harm balancing test as applies in

the nuisance context, especially when affirmed by the courts on appeal, establishes that the

specific activity so approved is reasonable in a subsequent nuisance action.

The state and federal standards identified by Defendants in their proposed nuisance

Instruction No. 7 and in their subsequent briefing, that is the state regulatory standard for

plutonium contamination in soil for construction purposes[29] and a variety of federal regulatory

standards for the release of plutonium into the environment, share virtually none of the

characteristics of the adjudicated determination of reasonableness relied upon by the *Van Wyk*

court.  Instead, these regulatory standards are more akin to zoning regulations and ordinances,

compliance with which the Colorado courts have held does *not* defeat a claim of nuisance.  *See,*

*e.g., Hobbs v. Smith*, 493 P.2d 1352, 1354 (Colo. 1972) (approving generally accepted rule that

an activity may constitute a nuisance regardless of compliance with zoning regulations); *Allison*,

695 P.2d at 794 ("Even if a particular use complies with zoning regulations, it may still constitute

a private nuisance if there is substantial interference with a plaintiff's use and enjoyment of his

land.").  Further, the Colorado Supreme Court has affirmed a judgment of private nuisance even

---

[28]     The Colorado Supreme Court concluded the PUC's determination was
adjudicative in nature because it affected specific parties and resolved particular issues of disputed
fact between these parties by applying previously determined rules or policies.  *Douglas County I*,
829 P.2d at 1307-08.

[29]     The state regulation in question, 6 Colo. Code Regs. 1007-1 § 4.60.1 (2005),
requires that special construction techniques be used when plutonium contamination in soil
exceeds two disintegrations per minute of plutonium per dry gram of soil or square centimeter of
surface area.  *Id.*

though the act in question was permitted by zoning regulations, done with reasonable care and skill and, of particular relevance here, performed in compliance with health regulations. *Hobbs*, 493 P.2d at 1354-55, 1356.

I was also persuaded by the additional grounds stated in Plaintiffs' September 1, 2004 reply brief (Doc. 1269) and November 8, 2004 response brief (Doc. 1292) that the state and federal regulations cited by Defendants are not the legal measure of what constitutes an unreasonable interference with the use and enjoyment of property under Colorado law.

For all of these reasons, I found no basis in Colorado law for Defendants' contention that Plaintiffs must prove that plutonium releases from Rocky Flats exceeded the cited state and federal standards in order to establish that the claimed interference with use and enjoyment of property was unreasonable and substantial. As a result, I rejected Defendants' proposed nuisance Instruction No. 7.

No. 8 (definition of substantial interference): I rejected this proposed instruction because it misstated the standard for determining substantial interference under Colorado law, *see, e.g.*, *Cook IX*, 273 F. Supp. 2d at 1202 (stating Colorado test); *Van Wyk*, 27 P.3d at 391; *Haas*, 625 F.2d at 1389 (applying Colorado law), and improperly interjected a subjective and individual component to this determination. The instruction I prepared defining this requirement is Instruction No. 3.9. *See also supra* Section II.A (regarding Plaintiffs' proposed nuisance Instruction No. 11), Section II.C.2 (regarding Defendants' proposed revisions to Instruction No. 3.9).

No. 9 (unreasonableness and reduction in property value): I rejected this proposed instruction because it incorrectly stated that Plaintiffs were required to prove that Defendants'

interference with the use and enjoyment of property caused a reduction in the value of Class

properties as part of their burden of proving a substantial and unreasonable interference.  While

this factor is evidence of a substantial interference, *see Cook IX*, 273 F. Supp. 2d at 1209, it is not

required to prove this element of Plaintiffs' nuisance claims.

The authorities cited by Defendants in support of this proposed instruction rely on the

same passage in § 88 of *Prosser and Keeton on Torts*, which states that the substantial

interference requirement is intended "to satisfy the need for a showing that the land is reduced in

value because of the defendant's conduct."  *Id.* at 623.  In support of this statement, Prosser and

Keeton cite comment c to Restatement § 821F.  *Id.*  However, neither this comment nor anything

else in this Restatement section or its commentary, which define and explain the substantial

interference requirement, supports Prosser and Keeton's statement.  In *Van Wyk*, the Colorado

Supreme Court relied on § 821F in defining what constituted a substantial and unreasonable

interference under Colorado law, *see* 27 P.3d at 391, and there is no mention in other Colorado

cases discussing this requirement that diminution in property value is a necessary component of it.

*See, e.g.*, *Lowder*, 601 P.2d at 658; *Northwest Water Corp.*, 479 P.2d at 400.

When a plaintiff in a private nuisance action seeks to recover "permanent" damages, which

are measured by the diminution in property value caused by the nuisance, then obviously proof of

damages in this form is required for the plaintiff to prevail on his claim.  That was the case in *Van

Wyk*[30] and is the case in this action.  It does not mean, however, that such proof is also required to

establish the separate "substantial and unreasonable" element of nuisance liability, and to do so

---

[30]     I believe this fact explains the *Van Wyk* court's subsequent statement that the plaintiffs in that case were required to prove a "substantial invasion . . . reducing the value of the land."  27 P.3d at 392.

would be nonsensical given that the law permits recovery of a variety of damages in a private nuisance action. *See Cook IX*, 273 F. Supp. 2d at 1210 (other damages that may be recovered in appropriate cases include the reasonable cost of repairing damage caused by the nuisance, lost rent and the like). Accordingly, Instruction No. 3.9 in this case instructed the jury that diminution in Class property value may be evidence that a substantial interference exists, but is not required to make this finding.

No. 10 (unreasonableness and priority in time): I rejected this proposed instruction because it was contrary to Colorado law. I had previously held that "coming to the nuisance" is not a defense to nuisance liability under Colorado law. *See* May 2004 Order at 6-7. In this instruction, Defendants asserted that whether a plaintiff knowingly came to the nuisance is nonetheless a factor for the jury to consider in deciding whether a claimed interference with the use and enjoyment of property is substantial and unreasonable enough for nuisance liability to attach. The only Colorado authority Defendants cited in support of this proposition, the Colorado Supreme Court's 1885 decision in *Platte & Denver Ditch Co. v. Anderson*, 6 P. 515 (Colo. 1885), did not support this assertion.[31] In addition, the Colorado Supreme Court and Court of

---

[31]     In this case, the Colorado Supreme Court considered whether a property owner could maintain a public nuisance claim based on the existence of a lawfully constructed and maintained ditch along the public street in front of his house. *Platte & Denver Ditch Co.*, 6 P. at 517-21. The Court held the property owner could not recover on this claim because he failed to prove he had suffered specific damages as required for an individual to recover for an alleged public nuisance. *Id.* at 520, 522. In the course of its discussion, the Court also noted that a person who buys property adjacent to ground lawfully dedicated to a public use such as a street or ditch easement takes that property subject to all the annoyances incident to the purposes of this dedication, while also making it clear that such annoyances did not include any damages resulting from "unlawful, improper, or negligent" operation of the public use. *Id.* at 521. These statements simply cannot be extrapolated to establish the general rule asserted by Defendants, especially in light of the other Colorado authority cited above.

Appeals have since affirmed that being first in time does not "in any measure operate to protect" a defendant from nuisance liability.  *Krebs*, 6 P.2d at 910; *see Allison*, 695 P.2d at 794 ("it is no defense to an action for nuisance that the plaintiff 'came to the nuisance' by knowingly acquiring property in the vicinity of the defendants' premises"; quotation omitted).  Restatement § 840D also does not support Defendants' proposed rule,[32] and to the extent it does it is contrary to established Colorado law as just described.  The same is true with respect to Defendants' reliance on the cited selection from *Prosser and Keeton on Torts*.

No. 11 (cause and intervening cause):  The first paragraph of this proposed instruction was undisputed, *see* Pls.' Submission re:  Nuisance Instructions at 1 (Aug. 6, 2004), and was therefore accepted as set forth in Instruction No. 3.18 (causation).  *See also supra* Section I.A.1 (regarding revisions to parties' causation instruction).

I rejected the second paragraph of this proposed instruction, which would have instructed the jury that Defendants' conduct was not the legal cause of any alleged effect if an intervening cause also contributed to the effect.  My decision was based on Defendants' failure to demonstrate an intervening cause instruction was warranted for either the trespass claim, *see supra* Section I.A.1, or the nuisance claim.

With respect to the nuisance claim, Defendants identified three alleged intervening causes: high wind events, the population boom in northwest Denver and the 1989 FBI raid on Rocky

---

[32]      This section and its commentary actually confirms that "coming to the nuisance" in itself will not bar recovery because "the defendant is required to contemplate and expect the possibility that the adjoining land may be settled, sold or otherwise transferred and that a condition originally harmless may result in an actionable nuisance when there is later development."  Restatement § 840D cmt. b.  Under this section, "coming to the nuisance" is only one factor to be considered in limited circumstances, *see id.* cmt. c, none of which were present in this action.

Flats. *See* Defs.' Mem. re: Intervening Cause Instruction (Doc. 1316) at 2-5. In order to be an intervening cause, the cause of the harm must not be reasonably foreseeable. *Ayala*, 846 F. Supp. at 1441; *Jones*, 701 P.2d at 86. For the reasons stated earlier, Defendants did not present evidence that the high wind events cited were not reasonably foreseeable. *See supra* Section I.A.1. Defendants' argument that it was unforeseeable that the Denver metro area would expand towards Rocky Flats was not supported by evidence, and the notion that a population boom in this area "caused" the alleged trespass or nuisance in any part defies logic.[33] Defendants' assertion that the FBI raid constituted an intervening cause for the claimed interferences with Class members' use and enjoyment of their properties was similarly unsupported.

No. 12 (negligence defined): I rejected this proposed instruction because it was not consistent with my subsequent determination that the activities at issue were inherently dangerous and therefore subject to a higher standard of care. *See supra* Section II.A (regarding Plaintiffs' proposed nuisance Instruction No. 7B); *see also* Instruction No. 3.15 (defining negligent conduct).

No. 13 (no presumption of negligence): I accepted this proposed instruction and incorporated it in Instruction No. 3.16 (accident not presumptive negligence), while also including some clarifying language drawn from the Colorado Supreme Court's decision in *Remley v. Newton*, 364 P.2d 581, 583 (Colo. 1961). *See* Colo. Jury Instructions (Fourth) Civ. § 9:12 & note (2002). Plaintiffs' objection, based on their unsuccessful request for a res ipsa loquitur instruction, was overruled.

---

[33]     Even if the private lands around Rocky Flats had remained lightly populated during Rocky Flats' nearly 40 years of operation, any trespass or nuisance caused by these operations would still have affected these lands and the property rights of their owners.

Nos. 14 & 15 (Plaintiffs' burden to prove non-compliance with federal standards):

I rejected these proposed instructions in bench rulings made at the September 8, 2004 jury instruction conference because both instructions were contrary to my prior rulings in *Cook IX*. Sept. 8, 2004 Tr. (Doc. 1279) at 18; *see Cook IX*, 273 F. Supp. 2d at 1179-99. To the extent these instructions relied on the Colorado Supreme Court's *Van Wyk* decision, they were rejected for the reasons stated earlier in this section with respect to Defendants' proposed nuisance Instruction No. 7.

No. 16 (statute of limitations defense): I rejected this proposed instruction for the reasons stated in *Cook X*, 358 F. Supp. 2d 1003 (D. Colo. 2004).

Nos. 17-18 (compliance with federal standards defense): I rejected these proposed instructions because they were contrary to my prior rulings in *Cook IX*, 273 F. Supp. 2d at 1179-99, and for the reasons stated earlier in this section with respect to Defendants' proposed nuisance Instruction No. 7.

No. 19 (compliance with state standards defense): I rejected this proposed instruction for the reasons stated earlier in this section with respect to Defendants' proposed nuisance Instruction No. 7.

No. 20 (prescriptive easement defense): I rejected this proposed instruction in a bench ruling at the September 8, 2004 conference because it was contrary to my May 2004 ruling barring this defense. *See* Sept. 8, 2004 Tr. at 18; May 2004 Order at 7-10.

Proposed Supplemental Nuisance Instruction No. 1 (substantial and unreasonable - plaintiffs' knowledge) (submitted Sept. 23, 2005 in Doc. 1455): This proposed supplemental instruction is a variation on Defendants' August 2004 proposed nuisance Instruction No. 10

46

(substantial and unreasonable - priority in time), and Defendants cited the same authority in support of both instructions.  I rejected this supplemental proposed instruction for the same reasons I rejected Defendants' first proposed instruction on this topic.  *See supra* this section (regarding proposed nuisance Instruction No. 10).

Proposed Limiting Instruction No. 7 (no emotional distress claims) (submitted Sept. 23, 2005 in Doc. 1455):  I rejected this proposed instruction because it was unnecessary in light of Instruction Nos. 3.7 (interference defined) and 3.28 (additional questions), which both directed the jury not to consider or decide whether Class members had suffered any fear, anxiety or other emotional disturbance as a result of Defendants' activities.

### C.    Parties' Proposed Revisions to Nuisance Instructions at End of Trial

### 1.    Plaintiffs' proposed revisions

Instruction Nos. 3.6 (elements of nuisance claim), 3.7 (interference defined), 3.17 (continuing nuisance):  Plaintiffs proposed that I revise each of these instructions to reflect that the jury need not find that the non-trespassory invasion continued to the time of trial.  *See* Pls.' Proposed Revisions to Jury Instructions (Doc. 1978) at 7-13.  I rejected these proposed revisions for the reasons stated with respect to Plaintiffs' similar proposed revisions to the trespass instructions.  *See supra* Section I.C.1 (regarding Plaintiffs' proposed revisions to Instruction Nos. 3.2-3.4).

Instruction No. 3.7 (interference defined):  Plaintiffs proposed two additional revisions to this instruction during and near the end of trial.  The first proposed revision instructed the jury that while Plaintiffs were required to prove that all Class members were subject to some form of interference with their use and enjoyment of property, it need not be the same form of interference

47

for all Class members.  The second proposed revision addressed and defined interference as it

related to Class members who did not live on their Class property.  *See* Pls.' Proposed Revisions

to Jury Instructions at 1-3 (Doc. 1885); Pls.' Proposed Revisions to Jury Instructions (Doc. 1978)

at 10-11.  Defendants did not object to these proposed revisions, which were consistent with my

other instructions to the jury and supported by relevant authority.  Accordingly, I accepted these

revisions and incorporated them in the final version of Instruction No. 3.7.

## 2.   Defendants' proposed revisions[34]

Instruction No. 3.6 (elements of nuisance claim): I rejected Defendants' proposed

revisions to this instruction.  The proposed revisions directing the jury to decide the nuisance

claims based on the evidence as a whole and with respect to the Class as a whole were

unnecessary in light of other instructions addressing these points.  *See, e.g.*, Instruction Nos. 1.1,

1.4 & 1.5; Final Instructions, No. 3.1; *supra* Section I.C.2 (regarding Defendants' proposed

revisions to Instruction Nos. 3.2 through 3.4).  Defendants' proposal to define the requirement of

"substantial" interference by reference to a "substantially increased health risk" was not supported

by any Colorado authority and was contrary to Colorado and other authority defining

"substantial" interference by reference to the "normal community member" standard set out in

Instruction No. 3.9.  *See supra* Section II.A (regarding Plaintiffs' proposed nuisance Instruction

No. 11), Section II.B (regarding Defendants' proposed nuisance Instruction No. 6).

I rejected on multiple grounds Defendants' proposal to redefine interference based on the

"risk of future harm" to require proof that it is "more likely than not that the Class Area will be

---

[34]     These proposed revisions were set forth in Defendants' Proposed Changes to
Preliminary Jury Instructions (Doc. 1958), filed January 10, 2006.

placed at a substantially increased health risk in the future by the continuing operation of the

Rocky Flats plant."  First, I had previously held that a risk of future harm can constitute an

interference with the use and enjoyment of property.  *See, e.g.*, *Cook IX*, 273 F. Supp. 2d at 1208;

May 2005 Order at 6.  A "risk" of future harm by definition means the "possibility" or "chance" of

future injury or loss, *Webster's Third New Int'l Dictionary* 1961 (1976); *Random House College

Dictionary* 1139 (1980), or "the element of uncertainty" regarding such future harm.  *Black's

Law Dictionary* 690 (5th ed. 1983).  Defendants' proposed revision would improperly require

Plaintiffs to prove a certainty, that the Class Area "will be placed at a substantially increased

health risk," rather than that there is a risk that some future harm will occur.[35]  Defendants'

further proposal that the type and magnitude of future harm that might give rise to an interference

be limited to "a substantially increased health risk" was also inconsistent with my previous rulings

on this subject.  *See, e.g.*, *Cook IX*, 273 F. Supp. 2d at 1202-03, 1208; May 2005 Order at 5-6.

The two cases cited by Defendants in support of their proposed redefinition of interference

based on the risk of future harm were inapposite and unpersuasive for a number of reasons,

including that both concerned recovery of damages in negligence actions based on enhanced risk

of disease and/or emotional distress resulting from this risk.  *See Boryla v. Pash*, 937 P.2d 813

(Colo. Ct. App. 1996) (medical malpractice action), *rev'd*, 960 P.2d 123 (Colo. 1998); *Potter v.

Firestone Tire & Rubber Co.*, 863 P.2d 795 (Cal. 1993).  Instruction No. 3.6 addressed liability

---

[35]     Defendants' proposal that Plaintiffs prove this condition was "more likely than
not" to occur merely repeated Plaintiffs' burden with respect to each element of their nuisance
claim.  *See* Instruction No. 1.8 (burden of proof).  Deleting this surplus language from
Defendants' proposed revision demonstrates that the effect of Defendants' proposed revision
would have been to require that Plaintiffs prove "the Class Area will be placed at a substantially
increased health risk," rather than that there is "chance" or "possibility" that this (or some other
harm) could occur in the future.

for nuisance, not recovery of damages for this or some other claim.  Further, the jury was specifically instructed at the start of trial in this instruction and in Instruction No. 3.7 (interference defined) that it should not consider Class members' fears or other emotional disturbance in deciding whether Defendants had interfered with Class members' use and enjoyment of property, and that interference based on a "risk of future harm" must be based on the existence of objective conditions that pose a demonstrable risk of future harm to the Class Area.

Instruction No. 3.7 (interference defined): I rejected Defendants' proposed revisions to this instruction for the reasons stated above with respect to their proposed revisions to Instruction No. 3.6.

Instruction No. 3.8 (introduction to "substantial" and "unreasonable" concepts): I rejected Defendants' proposed revision to this instruction because it was unnecessary in light of other instructions.  *See, e.g.*, Final Instructions, No. 3.1 (trespass and nuisance claims must be proved for the Class as a whole); *see also supra* this section (regarding Defendants' proposed revisions to Instruction No. 3.6).

Instruction No. 3.9 ("substantial" interference defined): I accepted Defendants' proposal to add a paragraph to this instruction directing the jury to decide whether any proven interference was "substantial" based only on the interference that was common to the class as a whole.  *See* Final Instructions, No. 3.9 (second paragraph).  This revision was consistent with an equivalent direction included in Instruction No. 3.11 regarding the jury's determination of whether any proven interference was "unreasonable."  *See* Start of Trial Instruction No. 3.11; May 2005 Order at 5.

I rejected Defendants' additional proposal that I replace the direction that an interference was "substantial" if a normal member of the community would find it "offensive, annoying or inconvenient," with a standard requiring that a normal member of the community find the interference "definitely offensive, seriously annoying, or intolerable." Defendants asserted this same standard in their August 2004 proposed nuisance instructions, which I rejected before trial because the proper standard for determining substantial interference under Colorado law is the "offensive, annoying or inconvenient" language stated in Instruction No. 3.9. *See supra* Section II.B (regarding  Defendants' proposed nuisance Instruction No. 8); *Cook IX*, 273 F. Supp. 2d at 1202 (stating Colorado test).

Defendants misstated my decision in *Cook IX* when they asserted that I "recognized in *Cook IX* [that] the interference must be 'definitely offensive, seriously annoying, or intolerable'" to be "substantial" under Colorado law. Defs.' Proposed Changes to Prelim. Jury Instructions (Doc. 1958) at 61 (citing *Cook IX*, 273 F. Supp. 2d at 1203-04). The passage they cited reports the standard set out in § 821F of the Restatement, and makes no finding that this standard has been adopted in Colorado. My finding on the "offensive, annoying or inconvenient" standard employed by the Colorado courts and the Tenth Circuit (applying Colorado law) for determining a "substantial" interference is clearly stated earlier in *Cook IX*. *See* 273 F. Supp. 2d at 1202 (citing *Van Wyk*, 27 P.3d at 391 and *Haas*, 625 F.2d at 1389).

Instruction No. 3.10 (balancing test for "unreasonable" interference): I rejected Defendants' proposed deletion of the second paragraph of this instruction because this paragraph was an accurate statement of law and I deemed it necessary to prevent juror confusion in applying

the gravity of harm versus utility of conduct test for unreasonable interference.  *See, e.g., supra*

Section II.B (regarding Defendants' proposed nuisance Instruction No. 7).

Instruction No. 3.11 (gravity of the harm defined): I rejected Defendants' proposed

revision to the "character of the harm" portion of this instruction because it was confusing and

unnecessary.  Instruction No. 3.11 defined "harm" as any proven interference.  *See* Instruction

No. 3.11 (first paragraph).  Under this and other instructions, therefore, the jury would only

consider the gravity of this interference if it had already found interference was proved.  *See id.*;

Instruction No. 3.8; Jury Verdict Form, ¶¶ C, D.

Instruction No. 3.12 (utility of conduct defined): I accepted Defendants' proposed

revision to the first paragraph of this instruction to clarify that it applied to the utility of the

conduct that caused any proven interference.

I rejected Defendants' proposed revisions to numbered paragraph 2 because the original

language more accurately stated this factor as set forth in the Restatement.  *See* Restatement

§ 828(b) & cmt. g.

I rejected Defendants' proposed revisions to the third paragraph for several reasons.  First,

the Restatement provides that "the conduct for which the utility is being weighed includes both

the general activity and what is done about its consequences."  Restatement § 826 cmt. e; *see id.*

§ 828(c) & cmt. h.  There was no basis, therefore, to delete the language to this effect from this

instruction as Defendants proposed.

Defendants further proposed the addition of language to this and numbered paragraph 3

that would have precluded the jury from considering the steps Defendants took to address the

consequences of its conduct unless the jury first found that Defendants knew their conduct would

interfere with Class members' use and enjoyment of their property.  In support of these proposed

revisions, Defendants cited comment h to Restatement § 828, which, like the rest of the

Restatement's discussion of the "unreasonableness" requirement, states that this requirement only

applies to interferences that result from intentional conduct.[36]  *See, e.g.*, Restatement § 822 &

cmts. c, g; *id.* §§ 826-828.  As discussed earlier in this opinion, however, the Restatement's

gravity of harm versus utility of conduct balancing test is the measure of unreasonableness under

Colorado law for all alleged private nuisances, including those based on negligent conduct or a

combination of negligent and intentional conduct.  *See supra* Section II.A (regarding Plaintiffs'

proposed nuisance Instruction No. 1).  Accordingly, consistent with Colorado law, I prepared this

and the other instructions regarding the jury's determination of the utility of Defendants' conduct

and the whole of the unreasonableness determination to apply to any proven interference caused

by Defendants' intentional or negligent conduct.  This treatment is consistent with *Van Wyk*, the

Restatement and other authority for the reasons stated with respect to Plaintiffs' proposed

nuisance Instruction No. 1.  *See id.*  Defendants' proposal that a portion of the jury's

unreasonableness determination be limited based on a distinction between intentional and

negligent conduct was inconsistent with these determinations and was therefore rejected.

Defendants proposed that in numbered paragraph 3 the jury be instructed that any

interference Defendants caused was practicably avoidable only if they could have substantially

reduced the harm "consistent with their obligations to the Department of Energy."  Defendants

---

[36]     Defendants' proposed revisions, however, assumed a more limited definition of
"intentional conduct" than that set out in the Restatement or Colorado law.  *See, e.g.*,
Restatement § 825; *Van Wyk*, 27 P.3d at 394-95; *see also* Instruction No. 3.14 (defining
"intentional" conduct based on these authorities).

cited no authority in support of this proposed revision, and I am not aware of any that would support it. This proposed revision appears to be an attempt to interject something akin to a government contractor defense into this case, *see Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988) (recognizing and defining government contractor defense to tort claims), notwithstanding Defendants' failure to pursue this affirmative defense.[37] *See infra* Section IV.C.6 (regarding Defendants' proposed instruction regarding evidence of contractual obligations).

Defendants further proposed that a sentence be added to numbered paragraph 3 directing the jury that "if it would have been necessary to cease the operation of the Rocky Flats Plant in order to avoid all harm to the Class members, the invasion was not practicably avoidable." Defs.' Proposed Changes to Prelim. Jury Instructions (Doc. 1958) at 69. I rejected this proposed revision for two reasons. First, no evidence was presented that would support a finding that it was necessary to cease operations at Rocky Flats to avoid all interference with Class members' use and enjoyment of their properties. Second, the authority cited in support of this proposed revision, a sentence in comment h to Restatement § 828, is addressed to on-going operations that would have to be discontinued to reduce the harm materially. This concern does not exist in a situation such as this, in which operations ceased more than fifteen years ago.

Defendants also proposed deletion of all language in numbered paragraph 3 that instructed the jury that if it determined it was practicable for Dow or Rockwell to avoid causing any

---

[37] Although Defendants asserted the government contractor defense in their 1991 Answers to the Second Amended Complaint, neither pursued the defense or identified it as an issue to be tried as required in the pretrial planning process. *See* May 2004 Order at 2-3, 4 (summarizing Defendants' pretrial representations regarding affirmative defenses to be tried). Defendants also specifically disclaimed they were asserting this defense before trial. *See* July 29, 2005 Hr'g Tr. (Doc. 1433) at 299-300.

54

interference but that they did not take the measures necessary to do so, then the law would consider their conduct to have no utility.  Defendants cite no authority for deleting this language, which is consistent with the Restatement's direction on this point.  *See, e.g.*, Restatement § 828 cmt. h.  I therefore rejected this proposed revision.

Finally, Defendants proposed revisions to numbered paragraph 4 of this instruction based on Restatement § 826(b), which states that an interference is unreasonable if the harm caused by the defendant's conduct "is serious and the financial burden of compensating for this and similar harm to others would not make the continuation of the conduct not feasible."  This test for unreasonable interference, however, is an alternative to the gravity of harm versus utility of conduct balancing test stated in Restatement § 826(a).  *See* Restatement § 826.

The jury instructions, consistent with Colorado law and both parties' August 2004 proposed nuisance instructions, directed the jury to apply § 826(a)'s balancing test to determine whether any proven interference was unreasonable.  *See Van Wyk*, 27 P.3d at 392; Instruction No. 3.10 (balancing test).  In an action seeking damages for a private nuisance, the Restatement contemplates that, as part of this balancing test, a jury may consider whether the defendant has interfered with the plaintiff's use and enjoyment of property without compensating the plaintiff for this harm, and that this factor may greatly reduce the legal utility of defendant's conduct.  *See* Restatement § 826 cmt. e (commenting on § 826(a)'s gravity versus utility balancing test); *see also supra* Section II.A (regarding Plaintiffs' proposed nuisance Instruction No. 10).  Instruction No. 3.12 as provided to the jury at the start of trial included this direction.  Restatement § 826(b)'s separate test for unreasonable interference did not warrant any revision to this instruction.

Instruction No. 3.13 (intentional or negligent conduct): Defendants proposed that this instruction be revised to require that Plaintiffs prove any interference with the use and enjoyment of Class Properties caused by Defendants resulted from either intentional acts or negligent acts, and not from a combination of acts, some of which were negligent and others intentional.  I rejected this proposed revision because neither common sense nor the only authority cited by Defendants, *Van Wyk*, 27 P.3d 377 (Colo. 2001), supported it.

Instruction No. 3.14 ("intentional" conduct defined): I rejected Defendants' proposed revisions to this instruction because the original text of this instruction was a correct statement of Colorado law, *see Van Wyk*, 27 P.3d at 394, 395, and other instructions directed the jury to decide Plaintiffs' claims for the Class as a whole.  *See, e.g.*, Final Instructions, No. 3.1; *see also supra* this section (regarding Defendants' proposed revisions to Instruction No. 3.6).

Instruction No. 3.15 (negligent conduct defined): I based this instruction on the standard Colorado jury instruction defining negligence and the standard of care for inherently dangerous activities.  *See* Colo. Jury Instructions (Fourth) Civ. § 9:7 (2003).  Defendants proposed to rewrite this standard instruction to change the standard of care from the "highest *possible* degree of skill, care, diligence and foresight" to the "highest *practicable* degree of skill, care, diligence and foresight" and to insert additional language regarding the foreseeability of their actions.  I rejected both proposed changes because they were inconsistent with Colorado's standard instruction on this subject and not supported by Colorado law.

I also rejected Defendants' attempt to define their standard of care in this instruction by reference to their obligations to the Department of Energy.  This legal contention was not supported by authority, and was inconsistent with Defendants' decision not to pursue a

56

government contractor defense in this action.  *See supra* note 37 and accompanying text; *infra* Section IV.C.6 (regarding Defendants' proposed instruction regarding evidence of contractual obligations).

Instruction No. 3.17 (continuing nuisance): Defendants proposed that this instruction be revised to require Plaintiffs to prove that Defendants continue at the present time to undertake activities at Rocky Flats that substantially and unreasonably interfere with Class members' use and enjoyment of their properties.  I rejected this proposed revision based on Colorado law holding that the cessation or continuance of the conduct causing the property invasion is immaterial to determining whether a continuing property invasion exists.  *Hoery*, 64 P.3d at 221.  The relevant inquiry is whether the property invasion, *i.e.*, the substantial and unreasonable interference in the nuisance context, is continuing.  *See id.*

I also rejected Defendants' proposal to revise this instruction to insert their proposed redefinition of what constitutes an interference with the use and enjoyment of property for the reasons stated earlier in this section with respect to Defendants' proposed revisions to Instruction Nos. 3.6 and 3.7.

## III.    Instructions on Damages

In *Cook IX*, I held that compensatory or actual damages, if any, in this action would be determined in accordance with Restatement § 930, and that the amount of these damages to the Class would be determined in the same trial at which any liability to the Class was decided.  *See* 273 F. Supp. 2d at 1212, 1213.  I also reiterated previous rulings rejecting Defendants' argument that Plaintiffs were barred from seeking punitive damages in this action.  *Id.* at 1211-12.

I subsequently ordered Plaintiffs to prepare a plan for determining compensatory damages to the Class that addressed Defendants' arguments that various individual damages factors must be considered in deciding and awarding Class damages.  *See* May 2004 Order at 12-14.  Plaintiffs complied in July, 2004, and both parties provided additional briefing on the plan and Defendants' opposition to it.  Subsequently, in September, 2004, both parties filed proposed instructions regarding the determination of damages in this action, a verdict form for damages and objections to each other's proposed damages instructions and verdict form.

Following a thorough review of the parties' briefs and proposed damages instructions, I ruled on the major issues presented by the parties' competing positions in May 2005.  *See* May 2005 Order at 14-20.  In summary, I held that the jury at the upcoming class trial would determine aggregate damages for Class members who, pursuant to Restatement § 930(1), were entitled to seek damages for any diminution in their properties' value caused by a continuing trespass or nuisance.[38]  May 2005 Order at 15-16.  I found the measure of these damages would be that stated in Restatement § 930(3)(b), that is the decrease in the value of the land caused by the continuing trespass or nuisance "measured at the time when the injurious situation became complete and comparatively enduring."  Restatement § 930(3)(b).  I further found that the primary individual damages factor asserted by Defendants, that some Class members had purchased their properties at a discount because of the continuing trespass or nuisance, was

---

[38]     The members of this sub-class consist of Class members who owned property within the Class Area on the later of:  (i) January 30, 1990, when this action was filed; or (ii) the date on which the jury, per Restatement § 930(1), found that it appeared the trespass and/or nuisance committed by Defendants would continue indefinitely.  *See* Restatement § 930(1) & cmt. b; *see also* Order re: Instruction No. 3.28 (Doc. 2064) at 4-9 (explaining basis for sub-class under these authorities).

58

properly viewed as the affirmative defense of setoff, and rejected the remainder of Defendants' asserted individual damages factors.  *See* May 2005 Order at 17-20.  I also concluded that the fact of any compensatory damages suffered by the Class, the amount of any such damages, and the facts necessary to determine any setoff for such damages could and would be determined by the jury at the class trial.  *See id.*  Finally, I held that the jury would be instructed to determine the amount of any compensatory damages for three categories of land – residential, vacant and commercial – and to express its findings regarding the amount of compensatory damages for each category in terms of both aggregate damages and an average percentage diminution in value.  *Id.*

Based on these determinations and the parties' proposals, I prepared jury instructions regarding compensatory and punitive damages that were presented to the jury at the start of trial in October, 2005.  *See* Start of Trial Instructions, Nos. 3.20-3.27.  In preparing these instructions, I also relied on my standard instructions on damages where appropriate.

During and at the close of trial, the parties proposed additional and/or revised instructions to the jury regarding the determination of actual and punitive damages, which I considered in preparing my final instructions to the jury.  My rationale for accepting or rejecting the parties' specific proposed jury instructions on damages is summarized below.

### A.    Plaintiffs' Proposed Damages Instructions[39]

No. 1 (damages introduction): I rejected this proposed instruction in favor of an instruction I prepared, No. 3.20 (damages - introduction), which was based on my standard

---

[39]    Unless otherwise noted, these proposed instructions were submitted in Plaintiffs' Proposed Phase III Jury Instructions, Verdict Form, and Objections (Doc. 1272), filed September 3, 2004.

introductory damages instruction and included both the substance of Plaintiffs' proposed

instruction and additional direction to the jury on the determination of actual damages.

No. 2 (compensatory damages): I rejected this proposed instruction in favor of Instruction

No. 3.21 (damages - actual or nominal), which includes the substance of Plaintiffs' proposed

instruction and additional direction tailored to the damages determination in this case.

No. 3 (measure of damages): I rejected this proposed instruction in favor of Instruction

No. 3.22 (measure of actual damages), in which I included the substance of Plaintiffs' proposed

instruction and additional, tailored direction on the measure of damages based on Restatement

§ 930 and Plaintiffs' final statement of claims before trial.  *See* Pls.' Statement of Claims

(Doc. 1419) at 5-6.

No. 4 (no double recovery): I rejected this instruction in favor of a revised version of

Defendants' proposed instruction on this issue.  *See infra* Section III.B (regarding Defendants'

proposed damages Instruction No. 3.14).  The instruction I prepared based on Defendants'

proposed instruction and my standard instruction barring mulitiple recovery is Instruction

No. 3.26.

No. 5 (mathematical certainty not needed): I rejected this proposed instruction but

included some of the language it proposed in Instruction No. 3.20 (damages - introduction) where

it was in accordance with my standard introductory damages instruction.

No. 6 (measuring diminution in value):  I rejected this proposed instruction in favor of an

instruction I prepared, No. 3.22 (measure of actual damages), which provided a more complete

statement of the measure of damages under Restatement § 930(3)(b), tailored to reflect Plaintiffs'

theory of the case as stated in their final pretrial statement of claims.  *See* Order re: Instruction

No. 3.28 (Doc. 2064) at 3-4 (discussing Instruction No. 3.22 and its basis in Restatement § 930(3)(b)); Pls.' Statement of Claims (Doc. 1419) at 5-6.  In Instruction No. 3.22, I also clarified, as requested by Defendants, that the jury only consider any diminution in the value of Class properties caused by a continuing trespass and/or nuisance proved by Plaintiffs, and included a more complete statement of the "but for" test for determining whether any trespass or nuisance had caused a diminution in these properties' values.

My instruction on the measure of damages in the class trial and Plaintiffs' burden in this regard generally followed that stated in the May 2005 Order, but also simplified the damages determination set out therein in several respects.  As relevant to Instruction No. 3.22, this included requiring Plaintiffs to prove by a preponderance of the evidence that the time for measuring any actual damages, *i.e.*, the time at which the injurious situation became "complete" and "comparatively enduring," was some time between June 6, 1989, when the FBI and U.S. Environmental Protection Agency raided Rocky Flats, and March 26, 1992, when Rockwell pled guilty to certain environmental crimes at Rocky Flats.  This requirement was based on Plaintiffs' final pretrial statement of their theory of the case.  *See* Pls.' Statement of Claims (Doc. 1419) at 5-6.  The jury was instructed that if it found Plaintiffs had failed to prove that the "CCE" time fell within this window, then it could not award actual damages.[40]  *See* Instruction No. 3.22;

---

[40]     In the May 2005 Order, I also referred to the point in time at which actual damages should be measured as the CCE "date," rather than the CCE "time" or "time period" as stated in Instruction No. 3.22.  May 2005 Order at 16.  It was not my intention in sometimes using the short-hand phrase "CCE date" to suggest that Plaintiffs were required to prove the injurious situation became "complete" and "comparatively enduring" as of a specific date.  The Restatement does not include this requirement, but rather identifies the "*time* when the injurious situation became complete and comparatively enduring" as the point at which the decrease in property value caused by a continuing invasion should be measured.  Restatement § 930(3)(b) (emphasis added).

Verdict Form, ¶¶ E, F (Question Nos. 1, 6, 11).  This was a narrower standard than was

contemplated in the May 2005 Order, which would have allowed Plaintiffs to prove and recover

actual damages measured at any point in time the jury found the injurious situation became

complete and comparatively enduring.  *See* May 2005 Order at 16-17.

No. 7 (aggregate damages and percentage reduction): I accepted this proposed instruction

subject to some minor, clarifying revisions.  The revised instruction is Instruction No. 3.23.

Plaintiffs' proposed instruction and Instruction No. 3.23 both simplified the damages

determination process stated in the May 2005 Order by allowing the jury to determine and report

the amount of aggregate damages to each property category, and the corresponding average

diminution in property value, without the intermediate multiplication step set out in the May 2005

Order.  *See* May 2005 Order at 16-17.  I found this simplified treatment consistent with the May

2005 Order.

Before accepting this proposed instruction, I considered and rejected Defendants'

objections to it, most of which were based on their ultimately unsuccessful contention that

damages could not be determined on a class-wide basis.  *See* May 2005 Order at 19-20.  Two

other objections asserted by Defendants, however, warrant a brief response.

First, Defendants asserted that permitting the jury to decide aggregate damages based on

statistical proof would permit the jury to determine compensatory damages by "extrapolation" in

the same manner that the Fifth Circuit disapproved in *Cimino v. Raymark Industries, Inc.*,

151 F.3d 297, 319-21 (5th Cir. 1998).  I disagree.  For reasons I will describe in a moment, the

determination of aggregate damages as provided in this proposed instruction and adopted in

Instruction No. 3.23 bears no resemblance to the damages determination disapproved in *Cimino*.

62

Defendants' further assertion that statistical proof of damages is *per se* impermissible under *Cimino*, and that only individual, non-statistical evidence may be used to prove damages in a class action, was unsupported and unsupportable.

In *Cimino*, the Fifth Circuit considered the validity of a three phase trial in personal injury and wrongful death suits brought by more than 2000 asbestos workers and their survivors against various manufacturers and suppliers of asbestos-containing products. In the last phase of this trial, two different juries decided whether 160 individual class members, who were selected as "sample cases," suffered from an asbestos-related injury or disease and, if so, the amount of wage loss, pain and suffering or other damages they incurred as a result. Following this trial and a bench hearing, the district court determined that the 160 sample cases were reliably representative of all cases involving like diseases and on this basis ruled each of the remaining 2128 cases would receive individual final judgments and damages based on the average of the verdicts rendered in the 160 sample cases involving their disease category. *See* 151 F.3d at 299-300, 302-305. As a result no trial on damages was held in these additional cases. *See id.* at 319-20. On appeal, the Fifth Circuit held, among other things, that the district court's extrapolation of the averaged results of the 160 sample damages cases to decide damages in the more than 2000 cases that not been tried violated the defendants' "Seventh Amendment right to have the amount of legally recoverable damages fixed and determined by a jury." *Id.* at 320.

This Seventh Amendment concern did not exist under Plaintiffs' proposed instruction or Instruction No. 3.23 because both directed that the amount of damages (if any) to be awarded to the Class was to be tried to and determined by the jury. Specifically, Instruction No. 3.23 directed the jury to consider and decide whether any proven trespass or nuisance by one or both

63

Defendants caused a diminution in value of Class Properties (defined as the properties owned by Class members within the Class Area), and, if so, the amount of this diminution in value expressed in the aggregate and in terms of the average percentage diminution in value suffered by these properties. *See* Instruction Nos. 3.22 & 3.23; Verdict Form, ¶¶ E, F. The parties presented evidence consistent with these directions and the jury decided these questions. There was no violation, therefore, of Defendants' Seventh Amendment right to have the amount of the legally recoverable damages caused by any proven trespass or nuisance fixed and determined by a jury. That the jury considered evidence derived through multiple regression analysis or other statistical techniques in making this determination is of no consequence under *Cimino* or the Seventh Amendment.

Defendants also argued in their objections to this proposed instruction that their Seventh Amendment right to have a single jury decide their liability and damages would be violated if the jury in the class trial was allowed to determine aggregate damages but allocation of these damages to individual Class members was deferred to a later proceeding. Again, I disagree. The jury instructions *in toto* required the jury to determine Defendants' liability to the Class for trespass and/or nuisance, and the amount of damages to the Class as a whole caused by any trespass or nuisance. How these damages are allocated to individual Class members will not require that these determinations be revisited. The post-trial allocation of any aggregate damages awarded by the jury is not, therefore, a matter that implicates Defendants' Seventh Amendment right to have fact issues decided by a single jury.

No. 8 (punitive damages): I rejected this proposed instruction in favor of Instruction No. 3.27, which incorporates most of Plaintiffs' proposed language but is a more complete

statement of applicable law.  Instruction No. 3.27, for example, instructs the jury regarding what

constitutes a "reasonable doubt" and that it could not consider Defendants' conduct relating to

plutonium and other radioactive materials after August 20, 1988 in deciding whether to award

punitive damages.  *See, e.g.*, *Cook IX*, 273 F. Supp. 2d at 1211 (explaining basis for August 20,

1988 limitation).

No. 8 (sic) (pre-August 20, 1998 occurrences): I rejected this proposed instruction but

incorporated its content in Instruction No. 3.27 (punitive damages).

Proposed Instruction on "Setoff" (submitted Sept. 6, 2005 in Doc. 1436):  I rejected this

proposed instruction in favor of Instruction No. 3.25 (affirmative defense of setoff), which is a

more accurate and complete statement of this affirmative defense as delineated in the May 2005

Order.  *See* May 2005 Order at 17-19.

**B.      Defendants' Proposed Damages Instructions**[41]

Most of Defendants' proposed instructions on damages assumed damages would not be

decided on a class-wide basis and were rejected for this reason alone.  Many also contained

additional direction to the jury on the substantive elements of Plaintiffs' trespass and nuisance

claims, which was unnecessary and potentially confusing to the jury in the damages context.

Many of Defendants' statements regarding the substantive law of trespass and nuisance in their

proposed damages instructions were also contrary to my prior rulings or other applicable law, and

sometimes differed even from Defendants' previously proposed instructions on these claims.

Defendants' proposed damages instructions ignored the law of the case in other respects as well.

---

[41]      Unless otherwise noted, these proposed instructions were submitted in
Defendants' Submission of Phase III Jury Instructions and Jury Verdict Forms (Doc. 1271), filed
September 3, 2004.

I accepted the few damages instructions proposed by Defendants that did not suffer from these or other defects and rejected the rest, as summarized below.

No. 3.1 (damages introduction):  I accepted most of this proposed instruction, which was based on my standard introductory damages instruction.  I omitted additional language Defendants proposed for this instruction because it was unnecessary in light of other instructions and also assumed damages would only be decided for individual  plaintiffs.  The introductory damages instruction I prepared is Instruction No. 3.20.

No. 3.2 (no speculative damages): I rejected this proposed instruction because it was unnecessary given the direction on this point in Instruction No. 3.20.  Defendants' proposed language regarding prospective loss was also confusing and unnecessary given other, more precise instructions I prepared defining Plaintiffs' burden of proof with respect to damages.  *See, e.g.*, Instruction Nos. 3.21-3.24.

No. 3.3. (damages causation): I rejected this proposed instruction for several reasons, including that it posited that damages would not be decided on a class-wide basis.  It also misstated Plaintiffs' burden of proof by requiring that damages not be awarded unless they were "definitively established"and "traceable to and a direct result of" a defendant's trespass or nuisance.  I included the requirement that the jury determine actual damages based only on damages caused by any proven trespass or nuisance in several other instructions.  *See* Instruction Nos. 3.21 (damages - actual or nominal), 3.22 (measure of actual damages), 3.24 (matters not relevant to determining actual damages).

No. 3.4 (no damages based on proximity):  I accepted the principle stated in this proposed

instruction and incorporated it in Instruction No. 3.24 (matters not relevant to determining actual

damages).

Nos. 3.5 (permanent v. continuing trespass): I accepted the first paragraph of this

proposed instruction to the extent that it described actual and nominal damages.  This description

was incorporated in Instruction No. 3.21 (damages - actual or nominal).

The second paragraph of this proposed instruction, which directed the jury to decide

whether plutonium from Rocky Flats could be removed from an individual Plaintiff's property by

reasonable measures and at a reasonable cost, reasserted Defendants' position that the question of

whether the trespass alleged here is permanent or continuing is a jury issue to be determined based

on this standard.  I rejected this proposed language because I held in *Cook IX*, 273 F. Supp. 2d

at 1211, and confirmed in *Cook X*, 358 F. Supp. 2d at 1004-09, that the Colorado Supreme

Court's decision in *In re Hoery*, 64 P.3d 214 (Colo. 2003), established that the trespass alleged by

Plaintiffs was a continuing trespass.  *See also* April 2004 Order at 12-15 (discussing issue).

Defendants' proposed language in this paragraph was also unacceptable because it unnecessarily

and incorrectly restated the elements of Plaintiffs' trespass claim and assumed that damages would

decided on an individual basis.

No. 3.6 (damages for permanent trespass): I rejected this proposed instruction for the

reasons stated above with respect to the second paragraph of Defendants' proposed damages

Instruction No. 3.5.

No. 3.7 (damages for continuing trespass):  I rejected this proposed instruction on

multiple grounds, including that it lacked legal or logical coherence and was generally unworkable

as a direction to a jury. Specific deficiencies in this instruction included its unnecessary and inaccurate restatement of the elements of Plaintiffs' trespass claim and incorrect direction that only damages for individual Plaintiffs should be decided. This proposed instruction also unnecessarily required the jury to make a second finding that the trespass was continuing; did not correctly define the "complete and comparatively enduring" concept, *see* Instruction No. 3.22 (measure of actual damages); Order re: Instruction No. 3.28 (Doc. 2064) at 3-4 & n.3; and incorporated a temporal limit on recoverable damages that was implicitly rejected in *Cook IX*, *see* 273 F. Supp. 2d at 1209-10 (adopting Restatement § 930(3)(b)'s standard for measuring damages caused by a continuing invasion), and expressly rejected in *Cook X*, 358 F. Supp. 2d at 1010-13. I rejected this instruction's treatment of any "prior market discount" based on my subsequent ruling that this issue is an affirmative defense and not part of Plaintiffs' burden of proof. *See* May 2005 Order at 17-19. Defendants' attempt in this instruction to address the issue of Class members who sold their property before the right to seek damages under Restatement § 930(1) accrued or was exercised was not successful and in any event was rendered unnecessary by my subsequent management of this issue through the use of sub-classes. *See* May 2005 Order at 15-16; Order re: Instruction No. 3.28 at 5-9. To the extent this proposed instruction included any relevant and accurate principles of law, I included them in Instruction No. 3.22 (measure of actual damages).

No. 3.8 (trespass - fears without scientific foundation): I rejected this proposed instruction because Defendants failed to produce authority supporting its asserted rule that damages for diminution in value are not recoverable if the decrease in value was caused by fears without scientific foundation. In Defendants' primary authority, *Boughton v. Cotter Corp.*, 65 F.3d 823,

833 (10th Cir. 1995), the issue considered and decided was "whether unfounded fears of disease are a form of recoverable annoyance and discomfort damages" under Colorado law in a trespass or nuisance action. *Id.* at 831-32. Plaintiffs did not seek damages here for annoyance and discomfort, but rather for the decrease in the value of Class Properties as a result of the alleged continuing trespass and nuisance, which is a separate and unrelated category of damages under Colorado law. *See Cook IX*, 273 F. Supp. 2d at 1206 nn.33 & 34.

The only other authority cited by Defendants does not concern damages at all, but rather what must be proved under North Carolina law to establish liability for contaminating property. *See Brooks v. E.I. Du Pont de Nemours & Co.*, 944 F. Supp. 448 (E.D.N.C. 1996). Even as to liability, this authority departs from Colorado law, which I have held does not require proof of a scientifically demonstrated health risk to establish liability for nuisance or a physical trespass. *See Cook IX*, 273 F. Supp. 2d at 1200-01 (trespass), 1202-08 (nuisance); *see also supra* Section II.B (regarding Defendants' proposed nuisance Instruction Nos. 4 & 5).

Nos. 3.9 (permanent v. continuing nuisance), 3.10 (permanent nuisance), No. 3.11 (continuing nuisance), No. 3.12 (nuisance - fears without scientific foundation): These proposed instructions mirror Defendants' proposed damages Instruction Nos. 3.5 through 3.8 (regarding damages for trespass) and suffer from the same flaws. I, therefore, rejected these proposed instructions for the reasons stated in this section with respect to Defendants' proposed damages Instruction Nos. 3.5 through 3.8.

No. 3.13 (reasonable market value): I rejected this proposed instruction because it defined a term that was not used in or necessary to any of the damages instructions. In addition, if I had found it necessary to use and define this concept in the jury instructions, the proper formulation,

69

under Defendants' own authority, would have been "fair market value," not "reasonable market value."

No. 3.14 (multiple recovery prohibited): I accepted this proposed instruction but revised it to reflect that damages would be decided on a class-wide basis and to consolidate the first two paragraphs as proposed by Plaintiffs in their objections.  *See* Instruction No. 3.26 (multiple recovery prohibited).

No. 3.15 (exemplary damages): I accepted the last paragraph of this proposed instruction, which defined "reasonable doubt," and included it in Instruction No. 3.27 (punitive damages).  I rejected the remainder of this proposed instruction because it directed that punitive damages be decided only for individual plaintiffs, incorrectly asserted that Plaintiffs did not seek punitive damages in connection with their nuisance claim, and contradicted at least two decisions in this case defining what incidents and conduct could be considered in deciding punitive damages.  *See Cook IX*, 273 F. Supp. 2d at 1211-12; *Cook v. Rockwell Int'l Corp. ("Cook I")*, 755 F. Supp. 1468 (D. Colo. 1991).

Proposed Supplemental Instruction Nos. 2 & 3 (prior market discount defense - trespass and nuisance) (submitted September 16, 2005 in Doc. 1445):   I rejected these proposed instructions because, among other things, they did not fully define this affirmative defense, did not state its elements in a manner that could be readily followed by the jury and did not inform the jury that this was an affirmative defense on which Defendants bore the burden of proof.  These proposed instructions also unnecessarily required the jury to make findings on a year-by-year basis.  The instruction I prepared and used in lieu of this proposed instruction, Instruction

70

No. 3.25, provided a more complete and accurate statement of this affirmative defense consistent with my prior rulings. *See* May 2005 Order at 17-18.

Proposed Supplemental Damages Instruction No. 1 (damages not based on past harm) (submitted Sept. 23, 2005 in Doc. 1455): I rejected this proposed instruction because it was unnecessary in light of the damages instructions I prepared. Under these instructions, as well as the jury verdict form, the jury would not consider whether to award actual damages unless it had already determined that Plaintiffs had proved a continuing trespass and/or nuisance. *See, e.g.*, Instruction Nos. 3.2 (elements of trespass claim), 3.6 (elements of nuisance claim), 3.20 (damages - introduction); Jury Verdict Form ¶¶ E, F. In addition, the only damages the jury was directed to consider in this action, diminution in property value caused by a continuing trespass and/or nuisance, *see* Instruction Nos. 3.22 (measure of actual damages), is by definition the measure of damages for the prospect of the harm continuing into the future. *See, e.g.*, Restatement § 930 cmt. d (depreciation in value of land caused by prospect that invasion will continue indefinitely is usual standard of compensation for continuing invasions).

Proposed Supplemental Damages Instruction No. 2 (stigma) (submitted Sept. 23, 2005 in Doc. 1455): I rejected this proposed instruction because it was unnecessary in light of Instruction No. 3.22, which directed the jury that it could only award actual damages if it found the proven trespass or nuisance had caused a diminution in the value of Class Properties.

Proposed Instruction Regarding Stigma Evidence (submitted Dec. 7, 2005 and amended Dec. 11, 2005 in Doc. 1783): I rejected this proposed instruction, which Defendants requested during trial, because it was unnecessary in light of the direction provided to the jury in Instruction Nos. 3.21, 3.22 and 3.24 (regarding actual damages), as well as Instruction Nos. 3.2 and 3.6

71

(defining requirements for finding liability for trespass or nuisance).  Defendants' primary

authority for this proposed instruction was, in fact, Instruction Nos. 3.21, 3.22 and 3.24, thus

demonstrating that this additional instruction was redundant of direction already provided to the

jury.

Proposed Instruction Regarding the Type of Damages That Can Be Awarded (submitted

Dec. 8, 2005 in Doc. 1768): I rejected this proposed instruction, which Defendants requested

during trial, because it was unnecessary given the direction in Instruction No. 3.22 (measure of

actual damages) and the Verdict Form, ¶¶ E, F, that the jury consider and award actual damages

based on their findings regarding any diminution in property values caused by a proven trespass or

nuisance.

**C.**     **Parties' Proposed Revisions to Damages Instructions at End of Trial**

**1.**     **Plaintiffs' proposed revisions**[42]

Instruction No. 3.22 (measure of actual damages): I revised this instruction consistent

with Plaintiffs' proposal because Plaintiffs had presented evidence of damages during the larger

1988-95 time period and thus were entitled to recover actual damages (assuming all other

prerequisites were proved) if the jury found the injurious situation became complete and

comparatively enduring at any point during this period.

In objections filed January 18, 2006, after I had finalized the instructions and provided

them to the jury, Defendants objected to this revision, arguing that they relied on Plaintiffs'

assertion of a June 6, 1989 to March 26, 1992 window for determining actual damages in

---

[42]     These proposed revisions were submitted in Plaintiffs' Proposed Revisions to Jury
Instructions (Doc. 1978), filed January 13, 2006.

selecting the evidence they would present at trial.  The only example of this alleged reliance and resulting prejudice given by Defendants, however, was that they would have more vigorously cross-examined Plaintiffs' witnesses Mr. Hunsperger and Dr. Radke about the 1988 to June 1989 and April, 1992 to 1995 periods if they had known the jury could consider whether the injurious situation became complete and comparatively enduring sometime during these periods and award damages on this basis.  *See* Defs.' Objs. to Jury Instructions (Doc. 2015), Ex. A at 130-32.

As the transcript excerpts cited by Defendants themselves demonstrate, Defendants cross-examined both of these witnesses about their findings and conclusions regarding these periods.  I also note that Defendants' cross-examination of Mr. Hunsperger and Dr. Radke was nothing if not vigorous in all respects.  This cross-examination and Defendants' previous *Daubert* motions challenging the testimony of these witnesses also demonstrated that Defendants were fully aware that Plaintiffs would present evidence regarding damages from 1988-1995.  I therefore found no prejudice in revising Instruction No. 3.22 as requested by Plaintiffs.  *See also supra* Section III.A (regarding Plaintiffs' proposed damages Instruction No. 6 and the initial 1989-92 time period).

Instruction No. 3.25 (setoff affirmative defense): I rejected Plaintiffs' proposed revision to this instruction because, by definition, all Class members purchased their properties on or before June 7, 1989.  *See Cook v. Rockwell Int'l Corp. (Cook IV)*, 151 F.R.D. 378, 382 (D. Colo. 1993) (defining property class by ownership of Class property on this date).  Accordingly, any benefit Class members received in purchasing their property, *i.e.*, any then existing diminution in property value caused by the continuing trespass or nuisance, necessarily occurred before this date as well.  For purposes of deciding this affirmative defense, therefore, it was unnecessary for the jury to consider any such "prior market discount" that might have existed after June 7, 1989.

73

2.      **Defendants' proposed revisions**[43]

Instruction No. 3.21 (actual or nominal damages): I rejected Defendants' proposed

revision to this instruction because it was unnecessary.  Instruction No. 3.21 as I drafted it

directed the jury to determine whether the Plaintiff Class incurred actual damages, and other

instructions also directed the jury to decide Plaintiffs' claims for the Class as a whole.  *See, e.g.*,

Final Instructions, No. 3.1; *see also supra* Section II.C.1 (regarding Defendants' proposed

revisions to Instruction No. 3.6).  Defendants' concern that the jury would determine actual

damages based on a finding of average diminution in value was not warranted because, under the

damages instructions and related special interrogatories in the Verdict Form, the jury would only

consider the average diminution in the value of Class properties if it had already found the Class

as a whole incurred actual damages in the form of a diminution in the value of their properties as a

result of the trespass and/or nuisance committed by one or both of the Defendants.  *See, e.g.*,

Instruction Nos. 3.22 (numbered paragraph 2) & 3.23; Final Instructions, No. 3.1; Verdict Form,

¶¶ E, F.

Instruction No. 3.21A (types of damages to be awarded): Defendants originally proposed

this supplemental new instruction on December 8, 2005.  *See* Defs.' Proposed Instruction re:

Type of Compensatory Damages (Doc. 1768).  I rejected it for the reasons stated earlier in this

opinion.  *See supra* Section III.B (regarding same proposed supplemental instruction).

Instruction No. 3.22 (measure of actual damages):  I rejected Defendants' proposed

revisions to this instruction because they were unnecessary.  Defendants' request that the

---

[43]      Unless otherwise stated, these proposed revisions were submitted in Defendants'
Proposed Changes to Preliminary Jury Instructions (Doc. 1958), filed January 10, 2006.

instruction be revised to emphasize at five different points that the damages were to be decided for the Class as a whole was redundant of the direction in Final Instruction No. 3.1 and other instructions on this point. *See supra* Sections II.C.2 (regarding Defendants' similar proposed revisions to Instruction No. 3.6). Their proposed revisions to the second paragraph of this instruction were unnecessary because the original text of this paragraph defined the concept of "comparatively enduring" consistent with the Restatement, *see* Restatement § 930 cmts. b, d, and the additional proposed revision did not define this term but rather was a matter for counsel's argument. The revisions Defendants proposed for the fourth paragraph of this instruction were unnecessary because they were included when I first instructed the jury and provided them with a copy of the jury instructions at the start of trial. *See* Oct. 11, 2005 Trial Tr. at 426-27; Start of Trial Instructions, No. 3.22.

Defendants' proposal that Instruction No. 3.22 be revised to direct the jury first to determine whether the injurious situation ever became complete and comparatively enduring, and then to determine whether Plaintiffs had proved it became complete and comparatively enduring within a specified time period was also rejected as unnecessary. The first numbered paragraph in the original, Start of Trial Instruction No. 3.22 already covered both concepts. That is, if the injurious situation never became complete and comparatively enduring *or* did not do so during the specified time period, then the jury would answer "no" to the first numbered paragraph of Start of Trial Instruction No. 3.22. If the injurious situation became complete and comparatively enduring *and* did so during the specified time period, then the jury would answer "yes" to this question. Defendants' proposed revision, therefore, did not add anything to this instruction. As a result of my final review of Instruction No. 3.22 at the close of trial, I revised its second and third

75

numbered paragraphs to clarify that if the jury found the injurious situation became complete and comparatively enduring at some time during the specified time period, then its determination of the fact and amount of any actual damages were to be made as of the time it found the injurious situation became "complete and comparatively enduring." *See* Final Instructions, No. 3.22.

Instruction No. 3.22A (stigma evidence):  Defendants originally proposed this supplemental new instruction on Dec. 7, 2005.  *See* Defs.' Proposed Instruction re: Stigma Evidence (Doc. 1755), amended Dec. 11, 2005 (Doc. 1783).  I rejected it for the reasons stated earlier in this opinion.  *See supra* Section III.B (regarding same proposed supplemental instruction).

Instruction No. 3.23 (aggregate damages and percentage diminution):  Defendants did not propose any revisions to this instruction in their January 10 comprehensive review of the jury instructions governing this action.  On January 18, however, after I had finalized these instructions in response to the parties' proposed revisions and provided them to the jury, Defendants for the first time objected to this instruction's direction that the jury should decide damages to commercial property in the Class Area.  *See* Defs.' Objs. to Jury Instructions and Verdict Form (Doc. 2015), Ex. A at 133-36.  As grounds for this objection, Defendants cited Plaintiffs' failure to mention damages to commercial property in their August 2005 statement of claims.  *See id.*  They also asserted that Plaintiffs' evidence of a diminution in the value of commercial properties was insufficient for this issue to go to the jury.  *See id.*

Plaintiffs' proposed damages Instruction No. 7, submitted in September, 2004, directed that damages be determined for commercial properties in the Class Area.  *See* Pls.' Proposed Phase III Jury Instructions (Doc. 1272) at 14.  Defendants did not object to this proposed

76

language.  *See* Defs.' Submission of Phase III Jury Instructions (Doc. 1271), Ex. B at 40

(asserting five objections to Plaintiffs' proposed damages Instruction No. 7, none of which

pertained to its direction regarding damages to commercial property).  Given this lack of

objection, I included this direction in the May 2005 Order, *see id.* at 16, and the jury instructions I

prepared and provided to the jury at the start of trial in October, 2005.  *See* Start of Trial

Instructions, No. 3.23.  Defendants did not object to this direction at any point before or during

trial or by the January 9 deadline I set for Defendants' proposed revisions to the Start of Trial

Instructions.  Order on Jury Instruction Submissions (Doc. 1929).  They also, without objection,

included damages to commercial properties in the proposed Verdict Forms they submitted near

the end of trial.  *See* Defs.' Proposed Jury Verdict Forms (Doc. 1963).  Neither did Defendants

seek judgment on the issue of damages to commercial property, or mention the issue at all, in

their motions for judgment as a matter of law filed at the close of Plaintiffs' case and again at the

close of evidence.

        Under these circumstances, I find Defendants waived any objection to this instruction's

direction regarding damages to commercial properties, and to the submission of this issue to the

jury.  Even if this were not the case, I find that Plaintiffs' submission of proposed jury instructions

containing this direction and other statements of their case over the years provided Defendants

with ample notice that the issue of damages to commercial property in the Class Area would be

tried, and that Plaintiffs presented sufficient evidence to allow this issue to go to the jury.

        Instruction No. 3.24 (matters not relevant to determining actual damages): I rejected

Defendants' proposed revision to the first paragraph of this instruction because it and Instruction

No. 3.22 already adequately defined the requirement that Plaintiffs prove the damages they sought

were caused by a proven trespass or nuisance. Defendants' proposed revision was also

inconsistent with my ruling in *Cook IX* that the jury could consider and rely on evidence that Class

Properties had a lower value than properties not in proximity to Rocky Flats, along with evidence

of Defendants' tortious invasion of properties proximate to the plant, to infer that Defendants'

trespass and/or nuisance had caused a diminution in Class property values. *See* 273 F. Supp. 2d

at 1210.

I rejected Defendants' proposed revisions to the second paragraph of Instruction No. 3.24

because they eliminated my direction to the jury that Plaintiffs were not required to prove any

diminution in value caused by Defendants' continuing trespass and/or nuisance came into

existence before or after the FBI raid or some other specific event. This direction was dictated by

my 2003 decision denying Defendants' long-held contention that Plaintiffs were required as a

matter of law to make such a "before and after" showing in order to recover actual damages in

this case. *See Cook IX*, 273 F. Supp. 2d at 1209-1210. Instead, I ruled that the "but for"

measure of damages set forth in Restatement § 930 applied here. *See id.* Defendants did not

offer any rationale for eliminating this direction, which was necessary (especially in light of

Defendants' arguments at trial) to avoid jury confusion on this point.

Defendants further requested that I revise this instruction to direct the jury that the timing

of any diminution in the value of Class properties relative to the FBI raid or other events might be

relevant to other issues, such as whether and when the injurious situation became complete and

comparatively enduring. This additional proposed instruction, was, in my judgment, both

unnecessary and inappropriate. Defendants were fully capable of arguing, and did in fact argue

during trial, that various evidence rebutted Plaintiffs' contention that any injurious situation

78

resulting from the alleged trespass and nuisance became complete and comparatively enduring after the FBI raid and the controversy it engendered.  Instruction No. 3.22 and the other damages instructions provided the jury with the direction necessary to decide this question and whether Plaintiffs had otherwise carried their burden of proving actual damages.

Instruction No. 3.25 (affirmative defense of setoff): I rejected Defendants' proposed revisions to this instruction because they were unnecessary.  The language Defendants sought to strike and replace was sufficient and consistent with my rulings on this defense.  *See* May 2005 Order at 17-19.

Instruction No. 3.27 (punitive damages): I accepted Defendants' proposal that this instruction be revised to instruct the jury that any sum awarded as punitive damages could not be more than the amount awarded as actual damages.  *See* Colo. Jury Instructions (Fourth) Civ. § 5:3; Colo. Rev. Stat. § 13-21-102(1)(a).

I rejected Defendants' proposal that this instruction be revised to direct the jury that it could award punitive damages only for intentional conduct that it found was willful and wanton, and not for any negligent conduct it found met this standard.  While it is true that "mere negligence" cannot support an award of punitive damages under Colorado law, *see Jacobs v. Commonwealth Highland Theatres, Inc.*, 738 P.2d 6, 10 (Colo. Ct. App. 1986), punitive damages may be awarded for negligent acts or omissions a jury finds rose to the level of willful and wanton conduct under the definition stated in this instruction.  *See* Colo. Jury Instructions (Fourth) Civ. § 9:30 & n.2 (defining "willful and wanton negligence"); *Jacobs*, 738 P.2d at 10 (exemplary damages may be awarded where negligent conduct is also found to be willful and wanton). Defendants' proposed revisions on this point, therefore, were contrary to Colorado law.

**IV.      Other Disputed Instructions and Issues**

The parties proposed approximately 45 instructions in addition to those already discussed. Some of these proposed instructions were stipulated, but most were not.  The additional disputed instructions focused on topics such as the nature of the case and evidentiary matters.  Defendants also proposed significant revisions to many of these additional instructions during and at the end of trial.  My rulings on these additional disputed instructions are set forth in summary fashion below.

**A.      Instructions Regarding the Nature of the Case**

The parties submitted competing instructions stating the nature of the case in September 2004.  *See* Pls.' Proposed Phase III Jury Instructions (Doc. 1272), No. 1.1; Defs.' Submission of Phase III Jury Instructions (Doc. 1271), No. 1.1.  I relied on the parties' proposed instructions, their August 2005 statements of their theories of the case and the law of the case to prepare a Statement of the Case instruction that described the nature of the case, Plaintiffs' claims and Defendants' denial of these claims in neutral language that was consistent with my rulings on the scope of the class trial and the more detailed instructions that followed.  *See* Instruction No. 1.1. I rejected Defendants' January 10, 2006 proposed revisions to this instruction because the revisions were unnecessary and improperly assumed that Plaintiffs had failed to present evidence that hazardous substances other than plutonium were used and disposed of at Rocky Flats and could pose a risk of future harm.

Defendants also proposed a number of additional instructions regarding the nature of the case which I rejected.  Defendants' September 3, 2004 Proposed General Instruction No. 1.9 (included in Doc. 1271), regarding determination of a claim made by multiple plaintiffs, was

inappropriate in a class trial.  Their September 23, 2005 Proposed Supplemental General

Instruction No. 2 (included in Doc. 1455), which would have directed the jury that "each class

member" was required to prove "the elements of his or her trespass and nuisance claims" against

each defendant, was also improper in a class trial and was unnecessary because other general and

substantive instructions stated Plaintiffs' burden of proof with respect to the class claims and class

damages.  *See, e.g.*, Instruction Nos. 1.1, 3.2, 3.6, 3.22; Final Instructions, No. 3.1.  Defendants'

September 23, 2005 Proposed Supplemental General Instruction No. 1 (included in Doc. 1455),

which would have informed the jury that their verdict "will not result in a final judgment for any

of the class members," was unnecessary and also inaccurate, because the jury's verdict on liability

and class damages would result in "final judgment" for class members, even if additional, post-

class trial proceedings were necessary to apportion any class damages to individual class

members.

### B.     Instructions Regarding Burden of Proof

The parties stipulated to my standard instruction on burden of proof, *see* Pls.' Proposed

Phase III Jury Instructions (Doc. 1272) at 19 (regarding No. 1.8); Defs.' Submission of Phase III

Jury Instructions (Doc. 1271), Ex. A, No. 1.9, which was provided to the jury in Instruction

No. 1.8 and the first paragraph of Instruction No. 1.9.

During and at the end of trial, Defendants proposed two additional instructions that they

characterized as going to the burden of proof.  The first proposed that the jury be informed that

Defendants were not permitted to talk to most class members before trial, while Plaintiffs had

been allowed to do so as class counsel, and that the jury could consider this disproportionate

access in judging the testimony of class members.  *See* Am. Defs.' Proposed Instructions

81

(Doc. 1783), Ex. A at 3; Defs.' Proposed Changes to Prelim. Jury Instructions (Doc. 1958),

No. 1.9B.  I rejected this proposed instruction because it improperly suggested that adverse

evidentiary inferences could be drawn from the standard prohibition on ex parte contacts between

defendants and class members represented by class counsel.  *See* Order (Doc. 583) (stating

general rule against ex parte contact).  The proposed instruction was also misleading in suggesting

that Defendants were absolutely barred from seeking discovery from all class members, when in

fact Defendants were permitted to seek discovery from individual Class members upon a showing

of need.  *See id.*

I rejected Defendants' second additional proposed instruction in this category, a separate

instruction regarding speculation and uncertainty, *see* Defs.' Proposed Changes to Prelim. Jury

Instructions (Doc. 1958), No. 1.8A, because it was unnecessary in light of the existing

instructions.  *See, e.g.*, Instruction Nos. 1.4, 1.8, 1.9, 3.20, 3.25.

### C.      Limiting and Other Evidentiary Instructions

#### 1.      Classified information

One of the more hotly disputed issues before and during trial was how to instruct the jury

regarding relevant information about contamination at Rocky Flats that was unavailable in

discovery and at trial because it had been classified as secret by the plant owner, the U.S.

Department of Energy ("DOE").  Based on DOE's status as Defendants' indemnitor and other

circumstances, Plaintiffs requested that I treat DOE's decision to classify such information in the

same manner as spoliation of evidence, which would warrant an instruction advising the jury that

it was permitted to infer that the classified information would have been unfavorable to

Defendants if DOE had made it available.  *See, e.g.*, Pls.' Proposed Supplemental Instructions

82

(Doc. 1436), Proposed Instruction on Spoliation; Pls.' Br. on Statute of Limitations, State

Regulatory Standards, Ultrahazardous Liability, Spoliation (Doc. 1254) at 18-19; Pls.' Reply Br.

(Doc. 1269) at 9.

Defendants, in turn, argued that there was no basis for a spoliation instruction regarding

DOE's classification decisions, *see, e.g.*, Defs.' Objs. to Pls.' Supplemental Jury Instructions

(Doc. 1445), Ex. B at 24-30; Defs.' Resp. to Pls.' Br. (Doc. 1263) at 31-44.  They also asserted

the jury should be instructed that, as a factual matter, there was no evidence that either

Defendants or their counsel had any involvement in DOE's classification decisions or were

involved in trying to conceal evidence through this process.  *See* Defs.'Am. Submission of

Supplemental Jury Instructions (Doc. 1455), Ex. A, Proposed Limiting Instruction No. 3; Defs.'

Submission of Limiting Instruction Pursuant to 10/7/05 Hearing (Doc. 1499); Defs.' Mem. in

Supp. of Mot. for Mistrial or Alternative Proposed Instructions (Doc. 1903), Ex. A.  Defendants

further proposed that I instruct the jury, again as a matter of fact, that DOE had provided

Plaintiffs, Defendants and their respective counsel with equal access to all relevant information in

DOE's custody, *see* Defs.' Am. Submission of Supplemental Jury Instructions (Doc. 1455),

Ex. A, Proposed Limiting Instruction No. 3; Defs.' Mem. in Supp. of Mot. for Mistrial or

Alternative Proposed Instructions (Doc. 1903), Ex. A; Defs.' Proposed Changes to Prelim. Jury

Instructions (Doc. 1958), Proposed Instruction No. 1.9A, and that the jury could *not* draw any

inferences from the fact that the information remained classified.  Defs.' Mem. in Supp. of Mot.

for Mistrial or Alternative Proposed Instructions (Doc. 1903), Ex. A; Defs.' Proposed Changes to

Prelim. Jury Instructions (Doc. 1958), Proposed Instruction 1.9A.

After considering the parties' pre-trial arguments on the classified information issue, I determined that a spoliation instruction was not warranted.  I also determined that the jury needed to be informed why classified information was not available for their consideration, and that the parties should be placed on an even basis with respect to this issue.[44]  Accordingly, I prepared an instruction, No. 1.9, that addressed these points in the context of the standard instruction that a party's burden of proof does not require it to produce all possible evidence relevant to their claims or defenses.  *See* Start of Trial Instructions, No. 1.9.  At the close of trial, I revised this instruction to clarify to the jury that it could not and should not decide the propriety of any of the DOE's classification decisions and should not speculate about what the classified information might be.  *See* Final Instructions, No. 1.9.

## 2.    Other evidence relating to DOE

Defendants proposed additional limiting instructions regarding DOE's involvement with Rocky Flats.  One set of proposed instructions would have informed the jury that DOE was not on trial and that any wrongful conduct by DOE was irrelevant to determining the liability of either Defendant.  *See* Defs.' Am. Submission of Supplemental Jury Instructions (Doc. 1455), Ex. A, Proposed Limiting Instruction No. 1; Defs.' Proposed Changes to Prelim. Instructions (Doc. 1958), Proposed Instruction No. 1.10A.  I rejected these proposed instructions because they were unnecessary and inaccurate.  They were unnecessary because other instructions identified Dow and Rockwell as the defendants in this action, and neither the jury instructions nor the verdict form called for the jury to make any findings regarding DOE or its conduct.  The

---

[44]    I also determined it was inappropriate to include the unsupported factual declarations Defendants sought in their proposed instructions.

84

proposed instructions were inaccurate because DOE's conduct was relevant to events and

operations at Rocky Flats during each Defendant's tenure there, including events and operations

relevant to Defendants' alleged liability for trespass and nuisance.  DOE also generated or funded

studies, reports and other documents that were admitted into evidence and employed witnesses

who testified at trial, which rendered its conduct relevant to the jury's interpretation and weighing

of this evidence.

Defendants also proposed instructions stating that DOE was financially responsible for this

litigation as Defendants' indemnitor, *see* Defs.' Am. Submission of Supplemental Jury Instructions

(Doc. 1455), Ex. A, Proposed Limiting Instruction No. 2, and directing the jury not to consider

this fact in determining Defendants' liability.  *See id.*; Defs.' Proposed Changes to Prelim.

Instructions (Doc. 1958), Proposed Instruction No. 1.10B.  These instructions were unnecessary

because the jury was properly instructed elsewhere regarding the elements necessary to establish

Defendants' liability, none of which involve DOE's indemnity.  Counsel also questioned the jurors

extensively regarding DOE's indemnification of Defendants during voir dire, and all jurors

confirmed during this process that they would not consider this indemnification in determining

Dow and Rockwell's liability.  *See* Oct. 6, 2005 Trial Tr. at 235-49.  It was not necessary under

these circumstances to instruct the jury as proposed by Defendants.

> **3.**     **Evidence regarding the FBI raid, grand jury investigation and Rockwell plea agreement**

Defendants proposed instructions limiting the jury's consideration of evidence regarding

the FBI's June 6, 1989 raid on Rocky Flats and the grand jury investigation and plea agreement

that followed.  *See* Defs.' Am. Submission of Supplemental Jury Instructions (Doc. 1455), Ex. A,

Proposed Limiting Instruction Nos. 4, 5.  This evidence was the subject of several of Defendants' motions in limine, which I granted in part and denied in part before trial.  *See* Aug. 22, 2005 Tr. at 5-8; Mem. Op. re: *Daubert* Mots. and Mots. in Limine, Section I.E.1 (Dec. 7, 2006). Defendants' proposed instructions were not fully consistent with my rulings because, among other things, their instructions could be read as barring the jury from considering any evidence arising from the FBI raid and grand jury investigation.  Their proposed instructions also did not provide the jury with guidance in considering the Department of Justice's decision not to prosecute Rockwell for any other crimes, which I had addressed in pretrial rulings.  *See* Aug. 22, 2005 Tr. at 5-8.  Accordingly, I did not accept the instructions proposed by Defendants regarding this evidence and instead prepared Instruction Nos. 2.4 and 2.5, which more accurately conveyed the limitations I imposed during the pretrial process on the presentation and consideration of these categories of evidence.  *See* Aug. 22, 2005 Tr. at 5-8; Mem. Op. re: *Daubert* Mots. and Mots. in Limine, Section I.E.1 (Dec. 7, 2006).

Defendants subsequently proposed that Instruction No. 2.5 be revised to allow the jury to consider the Department of Justice's decision not to prosecute Rockwell for additional misconduct.  *See* Defs.' Proposed Changes to Prelim. Instructions (Doc. 1958), Ex. A, No. 2.5. I rejected this proposed change because it contradicted my previous express ruling on this issue, *see* Aug. 22, 2005 Tr. at 6-7; Mem. Op. re: *Daubert* Mots. and Mots. in Limine, Section I.E.1 (Dec. 7, 2006), and because I found no merit in Defendants' contention that during trial Plaintiffs had "opened the door" to the jury's consideration of this evidence.  As I ruled before trial, Defendants' assertion that the Department of Justice (DOJ) "exonerated" Rockwell of additional alleged misconduct by entering into a plea agreement that did not address this alleged misconduct,

and Plaintiffs' rebuttal that the DOJ acted improperly in concluding the criminal investigation in

this manner, were not matters that needed to or should be litigated and considered in this action.

*See* Aug. 22, 2005 Tr. at 6-7.  Plaintiffs did nothing during trial to change this conclusion.

### 4.      Evidence of other lawsuits

Defendants proposed that I instruct the jury not to consider Dow's or Rockwell's

involvement in other lawsuits in determining whether they engaged in any of the conduct alleged

by Plaintiffs.  *See* Defs.' Am. Submission of Supplemental Jury Instructions (Doc. 1455), Ex. A,

Proposed Limiting Instruction No. 6.  I accepted this instruction after revising it to address

Plaintiffs' objection, which was to clarify that it applied to civil suits.  *See* Instruction No. 2.6.

This revision prevented an inconsistency with Instruction No. 2.5 and potential juror confusion

about whether they could consider Rockwell's guilty plea in the criminal suit brought against it for

conduct at Rocky Flats.

Defendants proposed a second limiting instruction relating specifically to the civil lawsuit

brought by Marcus Church against the United States, Dow and Rockwell in 1975.  Defs.'

Submission of Limiting Instructions Pursuant to 10/7/05 Hearing (Doc. 1499), Proposed Limiting

Instruction No. 2.  I rejected this proposed instruction as unnecessary in light of the direction

provided in Instruction No. 2.6 regarding Defendants' involvement in civil lawsuits generally.

### 5.      Evidence of media coverage

Before trial, Defendants proposed a limiting instruction regarding evidence of media

coverage.  *See* Defs.' Am. Submission of Supplemental Jury Instructions (Doc. 1455), Ex. A,

Proposed Limiting Instruction No. 8.  I accepted the first two sentences proposed by Defendants,

and revised the remainder of their proposed language to state the relevance of this evidence more directly and neutrally.  *See* Instruction No. 2.7.

I rejected Defendants' proposed revisions to Instruction No. 2.7 at the close of trial, *see* Defs.' Proposed Changes to Prelim. Instructions (Doc. 1958), No. 2.7, because I was not persuaded the revisions were necessary or appropriate.

### 6.    Evidence of Defendants' contractual obligations

Defendants proposed I instruct the jury that it could consider evidence of Defendants' contractual obligations to the federal government in determining whether Plaintiffs had proved each Defendant committed a trespass or nuisance.  *See* Defs.' Am. Submission of Supplemental Jury Instructions (Doc. 1455), Ex. A, Proposed General Instruction No. 3.[45]  I rejected this proposed instruction because Defendants failed to demonstrate it had any basis in law.

Defendants' sole authority for this instruction was a Tenth Circuit decision holding that a government contractor acting in accord with its contractual duties can assert a qualified immunity defense.  *See id.* (citing *DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714 (10th Cir. 1988)).  Defendants waived any such affirmative defense long before trial, however, as they acknowledged several months before proposing this instruction.  *See* July 29, 2005 Hr'g Tr. at 299-300.[46]

---

[45]    Although the heading to this instruction also referenced "regulatory obligations," neither the text of the instruction nor the authority cited by Defendants in its support addressed this subject.

[46]    Defendants asserted an immunity defense in their 1991 Answers to the Second Amended Complaint, but waived the right to pursue the defense during the pretrial planning process.  *See* May 2004 Order at 1-10 (describing pretrial process identifying affirmative defenses to be tried and barring defenses not identified by Defendants during this process).  There is also some question whether the Tenth Circuit's statement of this defense in *DeVargas* was superseded

Even if this were not the case, Defendants' proposed instruction did not properly instruct the jury on any version of the government contractor defense to tort liability, because it did not identify the elements of this defense or assign Defendants the burden of proving these elements. Nothing in the *DeVargas* decision or in *Boyle v. United Technologies Corp.*, the seminal Supreme Court decision on the government contractor defense, suggests that a defendant may avoid tort liability based on compliance with government contracts except through successful assertion of this affirmative defense. *See DeVargas*, 844 F.2d at 721-22; *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988). Defendants' proposed instruction improperly suggested otherwise and was rejected for this reason as well.

### 7.    Expert opinion evidence

The parties stipulated to Instruction No. 2.2, regarding opinion evidence and expert witnesses, as it was provided to the jury at the start of trial. Near the close of trial, Defendants proposed that this instruction be revised to clarify that some witnesses with specialized training had not testified as expert witnesses. *See* Defs.' Proposed Changes to Prelim. Instructions (Doc. 1958), No. 2.2. I revised the first paragraph of Instruction No. 2.2 to clarify this point.

Near the end of trial, Defendants also proposed a new instruction regarding corporate retention of experts. *See* Defs.' Proposed Instruction (Doc. 2009). I revised Defendants' proposed language and provided it to the jury as Instruction No. 2.2AA. The purpose of my

---

by the Supreme Court's subsequent statement of the government contractor defense in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), and whether a government contractor defense under either authority is available in an action such as this brought under the Price-Anderson Act, *see* 42 U.S.C. § 2014(hh).

revisions was to make the instruction more balanced and to remove the implication that an expert's litigation history and client base were irrelevant to assessing the expert's credibility.

The parties also proposed several instructions dealing with particular expert witnesses.  I accepted Defendants' proposed instruction regarding the live and deposition testimony of Dr. James Flynn.[47]  *See* Final Instructions, No. 2.2A; Defs.' Proposed Instruction re: Dep. Test. of Dr. James Flynn (Doc. 1679).  I rejected Defendants' proposed instruction regarding the expert testimony of Dr. S. Paul Slovic, Defs.' Mot. for a Limiting Inst. re: Test. of Dr. S. Paul Slovic (Doc. 1595), because it was unnecessary in light of existing instructions.  *See, e.g.*, Nov. 8, 2005 Trial Tr. at 4446; Instruction Nos. 3.2, 3.6, 3.7, 3.22, 3.28.  I granted Plaintiffs' motion to strike certain testimony by defense expert Dr. John Till, and prepared a jury instruction informing the jury of this decision.  *See* Final Instructions, No. 2.2B; Jan. 17, 2006 Trial Tr. at 10188; Mem. Op. re: Defs.' Theory of Plutonium Removal at 8-12 (Dec. 7, 2006).

### 8.    Demonstrative exhibits

I instructed the jury regarding counsel's use of charts, summaries and other graphic materials at the start of trial.  *See* Start of Trial Instruction No. 2.3.  During trial, a number of such materials were admitted for demonstrative purposes only.  Following discussions with the parties and proposed revisions from Defendants, I revised this instruction to clarify for the jury what was meant by this designation.  *See* Final Instruction No. 2.3; Jan. 6, 2006 Trial Tr. at 9225-30; Defs.' Proposed Changes to Prelim. Instructions, No. 2.3.

### D.    Miscellaneous Instructions

---

[47]      Defendants proposed this instruction as a result of Dr. Flynn's inability to complete his live testimony due to illness.

### 1.      Joint and several liability and comparative fault

Just before the close of trial, the parties for the first time raised the issue of whether Dow and Rockwell were jointly and severally liable for the alleged harm to the Class and, if not, how damages caused by each Defendant were to be determined.  Plaintiffs asserted Defendants were jointly and severally liable for all damages under the common law tort rule that where tortfeasors contribute to an indivisible harm, they are jointly and severally liable.  *See* Pls.' Proposed Verdict Form (Doc. 1947) at 2; *see, e.g.*, Restatement (Second) of Torts § 875 (1979) (stating rule). Defendants argued that joint and several liability was merely a collection doctrine with no application here, and that any damages attributable to each Defendant's trespass or nuisance should be decided separately.  *See* Defs.' Proposed Jury Verdict Forms (Doc. 1963) at 2.

The Colorado legislature abrogated the common law rule of joint and several liability in Colorado Revised Statute § 13-21-111.5, which provides that "[i]n an action brought as a result of a death or an injury to person or property, no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant that produced the claimed injury, death, damage, or loss."  Colo. Rev. Stat. § 13-21-111.5(1) (2005); *see Barton v. Adams Rental, Inc.*, 938 P.2d 532, 535-36 (Colo. 1997) (holding statute abrogated common law rule); *Brochner v. Western Ins. Co.*, 724 P.2d 1293, 1299 (Colo. 1986) (same).[48]  The Colorado statute further requires that the jury make special findings determining the percentage of negligence or fault attributable to each of the parties so that

---

[48]      The statute recognizes certain exceptions that allow the imposition of joint and several liability, none of which apply here.  *See* Colo. Rev. Stat. § 13-21-111.5(1), (4).

damages can be assessed based on the pro rata liability of the defendants.  *See* Colo. Rev. Stat. § 13-21-111.5(2).

Based on the Colorado statute and related authority, I therefore rejected Plaintiffs' assertion of joint and several liability in this action and prepared a new instruction, No. 3.19A, directing the jury to determine the percentage of fault for each Defendant if they found both liable for trespass or for nuisance.  This new instruction was modeled on relevant portions of Colorado's standard instructions for actions involving multiple defendants.  *See* Colo. Jury Instructions (Fourth) Civ. §§ 9:29 - 9:29B (2002 & Supp. 2004).  I was not persuaded by the parties' subsequent objections to this instruction and corresponding special interrogatories.  *See* Defs.' Objs. to Additional and Revised Jury Instructions (Doc. 2023) at 16; Pls.' Objs. to Jury Instructions (Doc. 2027) at 4.

### 2.    Additional questions

The parties also submitted proposed instructions regarding a class-wide question of relevance to possible future proceedings regarding Plaintiffs' nuisance claim:  whether Defendants' activities at Rocky Flats and the conditions resulting from them were capable of causing Class members to suffer fear, anxiety or other mental or emotional discomfort.  *See* May 2005 Order at 7 (discussing question); April 2004 Order at 7-8 (same).  I rejected both parties' proposed instructions on this "generic causation" question in favor of Instruction No. 3.28, which limited and defined this question in a manner that was more consistent with my prior orders.[49]  In  Instruction No. 3.28, I also directed the jury that it was not to consider the

---

[49]    Instruction No. 3.28 also included additional questions directed at defining the members of the Class that would be entitled to receive any damages awarded in the class trial. *See supra* note 38.  Defendants' tardy objections to these additional questions were addressed in a

"generic causation" question, or the further "specific causation" question of whether these activities or conditions actually caused individual Plaintiffs or Class members to suffer this form of interference with the use and enjoyment of property, in deciding whether Plaintiffs had proved their class-wide nuisance claim. *See* Instruction No. 3.28; *see also* May 2005 Order at 7; April 2004 Order at 7-8.

### E.   Defendants' Final Objections

In their final objections to the jury instructions I prepared, Defendants complained that the instructions were not impartial because I informed jurors not to consider certain arguments and assertions in deciding various issues. *See* Defs.' Renewed Objs. to Jury Instructions and Verdict Form (Doc. 2029) at 2. Most of the instructions cited by Defendants in this regard directed the jury not to consider certain legal arguments or interpretations advanced by Defendants which I had rejected during the long pretrial process necessary to define the issues to be tried and the law applicable to them. *See* Instruction Nos. 3.3, 3.5, 3.10, 3.24. Defendants nonetheless, in the jury instruction process, in pretrial motion practice, in their Rule 50(a) motions and before the jury, refused to adapt their theory of the case to many such rulings and instead repeatedly reasserted legal arguments, theories and interpretations that had been rejected and were thus contrary to the law of the case. The instructions Defendants complain of accurately informed the jury of the law of the case on these points, and were necessary to prevent the jury from becoming confused by arguments and insinuations that different legal standards applied.[50]

---

previous order. *See* Order re: Instruction No. 3.28 (Doc. 2064).

[50]     The other instructions cited by Defendants as being biased, Instruction Nos. 3.4 (continuing trespass) and 3.12 (utility of conduct), are statements of law based on Colorado common law and/or the Restatement, *see Cook X*, 358 F. Supp. 2d 1003 (Colo. 2004) (continuing

## V.    Verdict Form and Related Instructions

The parties proposed special verdict forms for the trespass and nuisance claims and for damages in conjunction with their original proposed jury instructions on each of these topics.  I rejected these proposals because none were consistent with the applicable law as stated in my prior and subsequent orders and/or the jury instructions I ultimately prepared.

I also rejected the parties' original proposed verdict forms because they did not reflect their subsequent agreement to a less-than-unanimous verdict.[51]  This agreement was incorporated in Instruction Nos. 4.2 and 4.5 as provided to the jury at the start of trial, and both parties submitted proposed jury instruction revisions consistent with their stipulation and these instructions after one of the jurors was excused over the holiday break, *see* Pls.' Proposed Revisions to Jury Instructions (Doc. 1978), No. 4.5; Defs.' Proposed Changes to Prelim. Jury

_____

trespass under Colorado law); *supra* Section I.D.2 (regarding Instruction No. 3.4); Section II.A (regarding Plaintiffs' proposed nuisance Instruction Nos. 10 & 15), Section II.B (regarding Defendants' proposed nuisance Instruction No. 6), Section II.C.2 (regarding Defendants' proposed revision to No. 3.12), or are based on my determination that operation of a nuclear weapons plant constitutes an inherently dangerous activity.  *See* Instruction No. 3.15; *supra* Section II.A (regarding Plaintiffs' proposed nuisance Instruction No. 7B), Section II.C.2 (regarding Defendants' proposed revisions to No. 3.15).

I also note that Defendants make no complaint about instructions they proposed and that I accepted that direct the jury not consider or rely on certain matters in a manner that would appear to favor Defendants.  *See, e.g.,* Instruction Nos. 3.7 (individual fear or other emotional disturbance not to be considered), 3.13 (Plaintiffs must prove more than that existence of Rocky Flats interfered with the use and enjoyment of property), 3.16 (accident not presumptive negligence), 3.24 (no damages to be awarded based on mere proximity to Rocky Flats).

[51]      The parties agreed to accept a non-unanimous verdict for a jury of ten to twelve if there were no more than two dissenters to the verdict.  If the jury was less than ten, then the jury could reach a verdict with up to one dissenter.  *See* Sept. 22, 2005 Tr. at 16-18; Defs.' Statement Re: Jury Verdict (Doc. 1473); *see also* Fed. R. Civ. P. 48 (permitting parties to stipulate to less than a unanimous verdict).

94

Instructions (Doc. 1958), No. 4.5, and after a second juror was excused early in deliberations, *see*

Pls.' Proposed Supplemental Jury Instruction (Doc. 2052); Jan. 25, 2006 Trial Tr. at 10765-66.

I accepted these proposed revisions.  *See* Final Instruction Nos. 4.2, 4.5, 4.6.

Near the close of trial, I directed the parties to submit revised proposed verdict forms that

were consistent with the jury instructions of record.  Both parties submitted proposed forms, *see*

Pls.' Proposed Verdict Form (Doc. 1947); Defs.' Proposed Jury Verdict Forms (Doc. 1963),

none of which were acceptable for a variety of reasons.  These reasons included the parties'

failure to set out each substantive element or question to be decided by the jury along with

appropriate cross-references to relevant instructions, as well as inconsistencies and other problems

in the parties' directions for deciding compensatory and punitive damages.  Accordingly, I

prepared and provided the jury with a verdict form that incorporated appropriate elements of the

parties' proposals, but more closely mirrored the jury instructions and provided the jury with a

better "roadmap" to the questions it was to consider and decide to reach its verdict.  *See* Jury

Verdict (Doc. 2117).

## Conclusion

Preparation of the jury instructions in this action was a substantial and challenging task.

My goal was to state the issues and applicable law accurately and neutrally, in logical sequence

and in the plainest language possible under the circumstances, so that the jury could understand

the issues to be decided and apply the law fairly and intelligently to reach its verdict.

Dated this 7th day of December, 2006.

s/John L. Kane
John L. Kane, Senior District Judge
United States District Court

95