# EXHIBIT 8



Not Reported in F.Supp.  Page 1

Not Reported in F.Supp., 1988 WL 42146 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

H
Briefs and Other Related Documents
Saunders v. HilpertshauserS.D.N.Y.,1988.Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Francis SAUNDERS and Thomas Saunders, Plaintiffs,
v.
Harry HILPERTSHAUSER, Florence M. Hilpertshauser, and Keuffel & Esser Company, Defendants.
**No. 84 CIV. 6153 (MJL).**

April 26, 1988.

Zane & Rudofsky by Edward S. Rudofsky, John M. Barth, of counsel, New York City, for plaintiffs.
Archibald A. Patterson, New York City, for defendants Harry and Florence M. Hilpertshauser.
Rogers & Wells by John M. Quitmeyer, New York City, for defendant Keuffel & Esser Co.
LOWE, District Judge.
**\*1** Plaintiffs in this diversity action seek relief from damages allegedly caused by chemical wastes dumped on their farm. Three requests for relief are presently before the Court. First, defendant Keuffel & Esser Company ("K & E") moves for partial summary judgment against plaintiffs. Second, plaintiffs Francis and Thomas Saunders seek partial summary judgment against both the Hilpertshausers and K & E. Third, the Hilpertshausers seek summary judgment against the plaintiffs. For the reasons set forth below, K & E's motion is denied in part and granted in part, and plaintiffs' and the Hilpertshausers' motions are denied.

BACKGROUND

The facts thus far discovered yield few answers about what has occurred on the Old Summit Farm (" the Farm"). The following details from the parties' joint pretrial order are not in dispute:

Plaintiffs are dairy farmers of many years experience. On May 14, 1974, they purchased the Farm, which is located in Millerton, New York, from the Hilpertshausers for $420,000. The Hilpertshausers had lived on the Farm and used it to raise dairy cattle and crops. They were aware at the time of the sale that plaintiffs intended to put the Farm to the same uses.

K & E operates a film and paper processing plant in Millerton. A byproduct of its operations is the production of chemical waste. The waste contains acetone, toluene, tetrachloroethylene, and other hydrocarbons. At times relevant to the complaint, K & E produced about 800-1,000 gallons of this waste per week.

Prior to May 1974, K & E's waste was on numerous occasions dumped at the Farm. In particular, in or about March 1972, K & E contracted with a local firm to dispose of the waste in accordance with government regulations. Grove Leffingwell, a local refuse hauler and long-time Millerton resident, knew Harry Hilpertshauser and employed his brother. He asked the Hilpertshausers for permission to dump K & E waste on the Farm. Harry Hilpertshauser granted the request, but told him to dump only on or between the railroad tracks running through the Farm. Leffingwell followed these directions, as did those to whom he later sold his business. Much of the waste dumped was burned by those who did the dumping. No dumping took place after the Farm was sold to plaintiffs.

During an inspection of the Farm prior to buying it, plaintiffs observed the dumping area along the railroad tracks, as well as several dead calves on the Farm. Nevertheless, at no time before, at, or after the closing on the sale of the Farm did they discuss or attempt to discuss with the Hilpertshausers the dumping or presence of hazardous or similar waste

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 2
Not Reported in F.Supp., 1988 WL 42146 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

on the Farm. Nor, for that matter, prior to the start of this suit, did any of the defendants disclose that chemical waste was dumped on the Farm.

In 1983 or 1984, the New York State Department of Environmental Conservation tested the Farm's soil. The results indicated the presence of the above-named chemicals. Yet Dr. Kent Kay, a veterinarian who since 1974 had made approximately 30 visits to the Farm to care for plaintiffs' cattle, including to investigate the deaths of several, recalls no indications of poisoning in the cattle he inspected.

In 1983, the Federal Land Bank foreclosed on the Farm. The Farm was sold to the Bank for $495,000 and, in October 1985, the Bank received the foreclosure referee's deed.

*2 The complaint in this action was filed on August 27, 1984. It asserts numerous causes of action against the defendants. Against the Hilpertshausers, plaintiffs allege fraud, mutual mistake, unilateral mistake, and frustration of purpose in the execution of the purchase and sale agreement. Against K & E, they allege negligence and strict liability. And against both the Hilpertshausers and K & E, they allege nuisance and trespass. They seek compensatory damages on the fraud, negligence, strict liability, nuisance, and trespass claims. Alternatively, they seek rescission of the contract of sale and restitution of the purchase price on the basis of their allegations of fraud, unilateral and mutual mistake, and frustration of purpose. The specific contours of these claims will be discussed below.

After completion of discovery, the instant motion and non-motion requests [FN1] for summary judgment were filed. The first of these is K & E's motion seeking summary judgment on plaintiffs' negligence and strict liability claims, and also seeking to limit the damages, if any, on the nuisance and trespass claims to those incurred no sooner than three years prior to the service of the complaint. The second is plaintiffs' non-motion request for summary judgment against the Hilpertshausers on the fraud, nuisance, and trespass claims, and against K & E on the nuisance and trespass claims. The third is the Hilpertshausers' non-motion request for summary judgment on all of plaintiffs' claims against them-fraud, mutual and unilateral mistake, frustration, nuisance, and trespass.

Soon after these submissions were filed, the entire case was placed on this Court's suspense docket pending completion of the bankruptcy proceedings in which plaintiffs were engaged. Upon restoration to the active docket, the parties reaffirmed their respective requests for relief. They thereafter submitted the above-mentioned joint pretrial order, which is based on discovery completed at the time their summary judgment requests were filed.

DISCUSSION

A. *K & E's Motion for Summary Judgment*

K & E seeks summary judgment on plaintiffs' negligence and strict liability claims, and to limit damages, if any, on the nuisance and trespass claims to three years prior to the filing of the complaint. These requests will be discussed in turn.

1. *Summary Judgment on the Negligence and Strict Liability Claims*

In the complaint, plaintiffs allege that K & E negligently disposed of the waste from its plant, thereby causing damage to plaintiffs' land, crops, and cattle. In addition, they allege that disposal of K & E waste on the Farm was an abnormally dangerous activity, rendering K & E strictly liable for plaintiffs' damages.

In its motion, K & E states that summary judgment is appropriate on the negligence and strict liability claims because they were interposed more than three years from the date of injury, in violation of New York's statute of limitations. Plaintiffs answer that K & E fraudulently concealed facts but for which plaintiffs would have filed suit earlier, and accordingly are estopped from asserting the statute of limitations as a bar to their claims.

A motion for summary judgment may be made as to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 3
Not Reported in F.Supp., 1988 WL 42146 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

all or any part of a claim. F.R.Civ.P. 56(b). The movant bears the burden of establishing that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56(c). *Beyah v. Coughlin,* 789 F.2d 986, 989 (2d Cir.1986). Although summary judgment is not a substitute for the trial of disputed fact issues, *Perma Research & Development Co. v. Singer Co.,* 410 F.2d 572 (2d Cir.1969), a motion therefor will not be defeated by the mere allegations of the opposing party. Rather, that party's pleadings must set forth specific, legally admissible facts showing that there is a genuine issue for trial. F.R.Civ.P. 56(e); 10A C. Wright, A. Miller, M. Kane, *Federal Practice and Procedure* §§ 2738-39 (2d ed. 1983 & Supp.1987) (hereinafter "Wright and Miller").

**\*3** New York [FN2] requires that actions to recover damages for injuries to property be commenced within three years of the time the cause of action arises. N.Y.Civ.Prac.L. & R. 214 (McKinney 1988) (hereinafter "NYCPLR"). In tort actions based upon exposure to substances, the statute traditionally began to run from the time of exposure, regardless of the time of discovery of the alleged injury. *See Steinhardt v. Johns Manville Corp.,* 54 N.Y.2d 1008, 430 N.E.2d 1297, 446 N.Y.S.2d 244 (N.Y.1981), *appeal dismissed,* 456 U.S. 967 (1982). In 1986, however, the Legislature enacted a date of discovery rule. NYCPLR 214-c. The rule contains a retroactivity provision for exposures which occurred prior to July 1, 1986. NYCPLR 214-c(6).

Plaintiffs' negligence and strict liability claims, though, are not saved by this retroactivity provision, since the alleged injury was discovered prior to July 1, 1986, and since the applicable period of limitation (presumably under the date-of-injury rule) had expired prior to that date.[FN3] NYCPLR 214-c(6). *See* NYCPLR 214-c(6) "Practice Commentaries", Subdivision 6 (McKinney Supp.1988). Nor are they saved by the special legislative provision reviving time-barred claims for one year from July 30, 1986.[FN4] 1986 N.Y.Laws ch. 682 § 4.

Nevertheless, the statute of limitations will be barred as a defense where the defendant concealed facts so that plaintiff could not bring suit within the normal limitations period. *See, e.g., Lowell Wiper Supply Co. v. Helen Shops, Inc.,* 235 F.Supp. 640 (S.D.N.Y.1964); *General Stencils v. Chiappa,* 18 N.Y.2d 125, 219 N.E.2d 169, 272 N.Y.S.2d 337 (N.Y.1966). Where, as here, the defendant is not a fiduciary, plaintiff must establish (1) an intent to deceive by concealment, though not necessarily to delay suit, (2) an affirmative misrepresentation (rather than a mere failure to inform), and (3) a causal relationship between defendant's conduct and plaintiff's failure to timely file suit. *See General Stencils,* 18 N.Y.2d at 128, 219 N.E.2d at 172, 272 N.Y.S.2d at 340; *McIvor v. DiBenedetto,* 121 A.D.2d 519, 503 N.Y.S.2d 836 (N.Y.App.Div.1986); *Jordan v. Ford Motor Company,* 73 A.D.2d 422, 426 N.Y.S.2d 359 (N.Y.App.Div.1980). *See generally* Weinstein, Korn & Miller, *New York Civil Practice,* § 201.13 at 2-40 (1987) (hereinafter "Weinstein, Korn and Miller").

There is an issue of fact as to K & E's actions. Evidence that the Hilpertshausers represented to plaintiffs that nothing was wrong with the Farm, and that plaintiffs saw a garbage dump and dead calves during their pre-purchase inspection of the Farm, PTO at 4 (undisputed facts), raises an issue as to whether K & E intended to conceal and affirmatively misrepresented the impact of the dumping on the Farm, thereby causing plaintiffs' failure to timely file suit.[FN5] Thus, it is appropriate to deny summary judgment. [FN6]

**\*4** 2. *Summary Judgment on the Nuisance and Trespass Claims*

Plaintiffs claim that K & E waste has infiltrated into and contaminated the Farm, thus creating a nuisance upon it. They also claim that the waste constitutes a continuing trespass on the Farm. K & E claims that any damages recoverable by plaintiffs on these claims accrue no earlier than three years prior to the filing of the complaint. Plaintiffs do not rebut this contention. The Court agrees with K & E.

The limitations period for nuisance and trespass claims is three years. NYCPLR 214(4); *Amax, Inc. v. Sohio Industrial Products Co.,* 121 Misc.2d

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                   Page 4
Not Reported in F.Supp., 1988 WL 42146 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

814, 469 N.Y.S.2d 282 (N.Y.Sup.Ct.1983). Where, as here, the nuisance and trespass are alleged to be ongoing, the action continually accrues "throughout the period that harm is suffered and damages sustained-that is, the period during which the wrongful act has consequences adverse to the use and enjoyment of the property." *Amax,* 121 Misc.2d at 815, 469 N.Y.S.2d at 284. *See also New York v. Schenectady Chemicals, Inc.,* 117 Misc.2d 960, 966-67, 459 N.Y.S.2d 971, 977 (N.Y.Sup.Ct.1983), *aff'd with modification on other grounds,* 103 A.D.2d 33, 37, 479 N.Y.S.2d 1010, 1014 (N.Y.App.Div.1984). Damages, however, are limited to the pecuniary loss sustained by the plaintiff in the use and enjoyment of the property during the three years before the time suit is commenced. *Amax,* 121 Misc.2d at 816, 469 N.Y.S.2d at 284; *Schenectady Chemicals,* 117 Misc.2d at 967, 459 N.Y.S.2d at 997; 103 A.D.2d at 37-38, 479 N.Y.S.2d at 1014. *See generally* 36 N.Y.Jur. § 88 (1964).

Accordingly, plaintiffs may not recover from K & E-or from the Hilpertshausers-any damages prior to three years before the complaint was served, or August 30, 1981.

B. *Plaintiffs' Non-Motion Request for Summary Judgment*

In its memorandum of law in opposition to K & E's motion for partial summary judgment, plaintiffs request partial summary judgment. In particular, they seek summary judgment against the Hilpertshausers on the fraud, nuisance, and trespass claims; and they seek summary judgment against K & E on the nuisance and trespass claims.

1. *Summary Judgment Against the Hilpertshausers on the Fraud Claim*

Failing to cite any law in support of their argument, plaintiffs assert that they are entitled to summary judgment on the fraud claim because the Hilpertshausers were aware that plaintiffs intended to use the Farm as a residence and to raise crops and dairy cows, yet knew that chemical waste was being dumped and burned there, and failed to disclose this activity to plaintiffs. Plaintiffs' assertion cannot stand.

To establish actual fraud, plaintiff must prove the following:

**\*5** (1) [T]hat the defendant made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendant, (5) that the representation was made for the purpose of inducing the other party to rely upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity, (8) to his injury....

*Brown v. Lockwood,* 76 A.D.2d 721, 730-31, 432 N.Y.S.2d 186, 193-94 (2d Dept.1980). *See also Nashaba Corp. v. Harfred Realty Corp.,* 287 N.Y. 290, 39 N.E.2d 243 (N.Y.1942); Weinstein, Korn & Miller at ¶ 213.26.

Plaintiffs' request for summary judgment on this claim is on its face inadequate because they have failed to even allege that there is no material issue as to several of the required elements, most especially those requiring scienter and causation. Moreover, as the Hilpertshausers indicate, there are material issues of fact as to at least three of these elements. First, the falsity element is still in issue-that is, whether the Hilpertshausers' falsely represented that the Farm could be used by the plaintiffs for residential and farming purposes. The parties do not dispute that the Hilpertshausers used the Farm for living and farming purposes. PTO at 4 (undisputed facts). In addition, Francis Saunders testified at his deposition that at about the time he and his brother purchased the Farm, he had been told by "[e]veryone" that the Farm "was one of the top farms in the county at the time." F. Saunders Depo. at 204-05. The Farm, he testified, had even been pictured on the cover of a New York State agricultural magazine. *Id.* Also, in an affidavit submitted on plaintiffs' motion to dismiss, Harry Hilpertshauser states that he and his wife never had "unusual problems with the milk, the water, the cattle, the crops, or the Farm." April 25, 1985 Affidavit of H. Hilpertshauser.

Second, the scienter element is in issue-that is, assuming the falsity of the Hilpertshausers'

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                     Page 5
Not Reported in F.Supp., 1988 WL 42146 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

representations of usefulness, whether they knew of such falsity. In separate affidavits, the Hilpertshausers state that none of their experiences or activities while on the Farm ever caused them to suspect that the Farm was in any way unfit. April 25, 1985 Affidavits of H. and F. Hilpertshauser. Harry Hilpertshauser states in particular that their crops "were just as good in the years during and after the dumping, as they had ever been before that", and that "[t]he milk inspectors came regularly and we never had problems with them." April 25, 1985 Affidavit of Harry Hilpertshauser at 2.

Third, the causation element is in issue-that is, whether the dumping caused plaintiffs' injuries. Plaintiffs state that they hired a veterinarian, Dr. Kent Kay, to "investigate[] the deaths of the cows." Response to Hilpertshausers' Interrogatory No. 4. Yet, in over thirty visits to inspect several of plaintiffs' cattle after May 1974, Dr. Kay was unable to recall signs or indications of poisoning in the animals. PTO at 5 (undisputed facts). Further, Francis Saunders testified that, starting in about 1976, he and his brother experienced "a lot of bacteria problems" with their milk, and that these problems were caused by "different types of mastitis," and that the milk was on several occasions not accepted by Connecticut inspectors.[FN7] F. Saunders Depo. at 239-40.

Plaintiffs are accordingly not entitled to summary judgment on their fraud claim against the Hilpertshausers.

**\*6** 2. *Summary Judgment Against the Hilpertshausers on the Nuisance and Trespass Claims*

Failing again to cite any law in support of their argument, plaintiffs assert that they are entitled to summary judgment against the Hilpertshausers on the nuisance and trespass claims. In support of their application, they recite the same facts recited in their request for summary judgment on the fraud claim: that the Hilpertshausers knew of the dumping and did not disclose it to the plaintiffs at the time the Farm was sold. The Hilpertshausers reply that the facts fail to establish either that the dumping has caused a hazardous condition, or that the Hilpertshausers knew of and concealed such condition, if present, at the time of the sale.

The essential feature of a nuisance is "an interference with the use or enjoyment of land." *Copart Industries v. Consolidated Edison Co.,* 41 N.Y.2d 564, 568, 362 N.E.2d 968, 971, 394 N.Y.S.2d 169, 172 (N.Y.1977). Such interference must be substantial and unreasonable. It exists only upon a showing of damages-that is, that "the land is reduced in value because of the defendant's conduct." Prosser and Keeton, *The Law of Torts,* § 87 at 623 (5th ed. 1984 & Supp.1988) (hereinafter " Prosser and Keeton"). *See Bower v. Weisman,* 639 F.Supp. 532, 541-42 (S.D.N.Y.1986). Where, as here, the nuisance is private-an invasion of the use or enjoyment of land by one person or a relatively few, *Copart Ind.,* 41 N.Y.2d at 568, 362 N.E.2d at 971, 394 N.Y.S.2d at 172-liability exists only if the alleged tortfeasor's conduct "is a legal cause of the invasion ... and such invasion is (1) intentional and unreasonable, (2) negligent or reckless, or (3) actionable under the rules governing liability for abnormally dangerous conditions or activities." *Id.*

Although plaintiffs do not specify the nature of the Hilpertshausers' conduct in which the nuisance allegedly had its origin, the law of nuisance at least requires legal causation between the conduct and the invasion alleged. Here, such causation is still in issue. As discussed in section B.1 above, the facts do not establish beyond question that the dumping allowed by the Hilpertshausers was the legal cause of the injuries sustained by plaintiffs. Accordingly, plaintiffs' request for summary judgment against the Hilpertshausers on this claim is denied.

Likewise, summary judgment is denied on the continuing trespass claim. To be liable, an alleged trespasser need not intend or expect the damaging consequences of his intrusion.[FN8] He must, though, "intend the act which amounts to or produces the unlawful invasion, and the intrusion must at least be the immediate or inevitable consequence of what he willfully does or which he does so negligently as to amount to willfullness." *Ivancic v. Olmstead,* 66 N.Y.2d 349, 352, 488 N.E.2d 72, 74, 497 N.Y.S.2d 326, 328 (N.Y.1985),

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case No. 1:90-cv-00181-JLK   Document 2221-10   filed 01/22/07   USDC Colorado   pg 7 of 11

Not Reported in F.Supp.                                                                                   Page 6
Not Reported in F.Supp., 1988 WL 42146 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

*citing Phillips Petroleum Corp. v. Sun Oil Co.,* 307 N.Y. 328, 121 N.E.2d 249 (N.Y.1954). Even where the allegedly polluting material has been deliberately put by a defendant onto his or her land, that defendant is not liable in trespass for any damages therefrom "unless he (defendant) had good reason to know or expect that ... conditions were such that" the entry upon and damage of another's land would result. *Phillips Petroleum Corp.,* 307 N.Y. at 331, 121 N.E.2d at 250-51. The facts here fail to establish beyond doubt such knowledge or expectation. Evidence set forth above supports the view that the Hilpertshausers were unaware of any alleged deleterious effect of the dumping. *See, e.g.,* April 25, 1985 Affidavits of H. and F. Hilpertshauser. Moreover, much of the waste was burned, PTO at 3 (undisputed facts), which tends to support the view that the Hilpertshausers believed that waste residue to be harmless, if not largely nonexistent. There is thus an issue as to whether the Hilpertshausers possessed the intent required for trespass.

3. *Summary Judgment Against K & E on the Nuisance and Trespass Claims*

**\*7** Failing again to offer a legal basis for their request, plaintiffs seek summary judgment against K & E on the nuisance and trespass claims. The facts they present in support of their request are, first, that K & E turned over its waste to "untrained, unsophisticated local refuse haulers who dumped [it] on the Farm," and second, that K & E "did not disclose to anyone that such dumping took place." Pls.' Memo. of Law at 4-5. In a one paragraph reply, K & E states that plaintiffs have failed to establish a proper factual and legal basis for granting the motion.

Regarding the nuisance claim, plaintiffs' motion is denied. As stated above, there remains an issue as to whether the dumping was the legal cause of the alleged invasion of plaintiffs' interest in the private use and enjoyment of the land.

As to the trespass claim, plaintiffs motion is also denied. K & E states that none of its employees "in a position of responsibility ... had any knowledge that any chemical waste materials had been dumped on the Farm." PTO at 9 (K & E's contentions). Further, K & E states that, by contracting with local refuse haulers, it acted reasonably to dispose of the waste. PTO at 2-3 (undisputed facts). These assertions, without more specific facts from plaintiffs, leave in issue whether K & E acted with the intent required to establish trespass. *Ivancic,* 66 N.Y.2d at 352, 488 N.E.2d at 74, 497 N.Y.S.2d at 328.

C. *The Hilpertshausers' Motion for Summary Judgment*

The Hilpertshausers seek summary judgment on all of plaintiffs' claims-fraud, mutual and unilateral mistake, frustration, nuisance, and trespass. Their motion is denied in all respects.

1. *Fraud*

The eight elements required to establish actual fraud in New York are, again,

(1) that the defendant made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendant, (5) that the representation was made for the purpose of inducing the other party to rely upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity, (8) to his injury....

*Brown v. Lockwood,* 76 A.D.2d 721, 730-31, 432 N.Y.S.2d 186, 193-94 (N.Y.App.Div.1980).

In the context of the Hilpertshausers' motion, summary judgment will be granted if at least one of these elements has not been established.[FN9]

The Hilpertshausers assert that there is no material issue as to the reliance, falsity, scienter, and causation elements of fraud. On the element of reliance, the Hilpertshausers contend there is no issue of fact because the purchase and sale agreement signed by the plaintiffs contains the disclaimer that "[t]he purchasers have inspected the above described premises and personal property and are purchasing the same in their present state and condition." Hilpertshausers Brief for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case No. 1:90-cv-00181-JLK   Document 2221-10   filed 01/22/07   USDC Colorado   pg 8 of 11

Page 8 of 11

Not Reported in F.Supp.                                                                                             Page 7
Not Reported in F.Supp., 1988 WL 42146 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Summary Judgment at Exh.E. The Hilpertshausers cite *Danann Realty Corp. v. Harris,* 5 N.Y.2d 317, 157 N.E.2d 597, 184 N.Y.S.2d 599 (N.Y.1959), to support their assertion that this provision of the written agreement with plaintiffs prevents the consideration of parol evidence where a cause of action of fraud is asserted. *See also Citibank v. Plapinger,* 66 N.Y.2d 92, 485 N.E.2d 974, 495 N.Y.S.2d 309 (N.Y.1985). Consideration of such evidence is usually allowed to show fraud, even where the agreement contains a general merger clause or a general statement that no representations have been made. *Citibank,* 66 N.Y.2d at 94, 485 N.E.2d at 976, 495 N.Y.S.2d at 311; *Sabo v. Delman,* 3 N.Y.2d 155, 143 N.E.2d 96, 164 N.Y.S.2d 714 (N.Y.1957).

However, the agreement here is incompatible with that in *Danann Realty.* In *Danann Realty,* it was the specificity of the agreement's disclaimer as to prior representations [FN10] that "destroy[ed] the allegations in plaintiff's complaint that the agreement was executed in reliance upon those contrary oral representations." 5 N.Y.2d at 320-21, 157 N.E.2d at 599, 184 N.Y.S.2d at 602.[FN11] Here, on the other hand, the agreement does not even contain a merger clause, much less any other specific language disclaiming reliance on prior representations. New York courts have repeatedly upheld the admission of parol evidence on fraud claims where such language is absent. *See, e.g., GTE Automatic Electric Inc. v. Martin's Inc.,* 127 A.D.2d 545, 512 N.Y.S.2d 107 (N.Y.App.Div.1987); *Stahl Equities Corp. v. Prudential Building Maintenance Corp.,* 95 A.D.2d 222, 465 N.Y.S.2d 718 (N.Y.App.Div.1983). Thus, the agreement cannot be said to have constituted a denial by plaintiffs of any reliance on the Hilpertshausers' representations.

**\*8** The falsity element is also still in issue. During an inspection made before purchasing the Farm, plaintiffs "observed a garbage dump along the railroad tracks and several dead calves on the farm." PTO at 4 (undisputed facts). Notwithstanding the Hilpertshausers' unusual interpretation of this fact-that it indicated that the Farm was operating normally, Hilpertshausers' Brief at 3-it may indicate that the Farm was not problem-free. Where an undisputed fact such as this is subject to conflicting interpretations, summary judgment is inappropriate. *See Empire Electronics Co. v. U.S.,* 311 F.2d 175, 180 (2d Cir.1962); *Zaretsky v. E.F. Hutton & Co.,* 509 F.Supp. 68 (S.D.N.Y.1981).

Assuming the Farm was not operating normally, the scienter element also remains in issue. The dead calves seen by plaintiffs raise a question about whether the Hilpertshausers saw them, too, and thereby became aware that the Farm was to some extent unfit for the purposes to which they knew plaintiffs intended to put it.

Finally, there also remains a triable issue as to causation-that is, whether the Hilpertshausers' allegedly false representations caused the injuries of which plaintiffs complain. While plaintiffs have failed to present any facts directly linking the waste to their crops and cattle damage, the Hilpertshausers have not clearly established that there is no such link. For instance, the fact that the veterinarian, Dr. Kay, does not recall signs of poisoning in the cattle he inspected, PTO at 5 (undisputed facts), is inconclusive. He inspected only 6 of the over 100 cows that allegedly died, finding that they were electrocuted by lightning or a defective electrical connection on their trough. Hilpertshausers' Brief at 4. Further, there is no indication that his examination allowed for the possibility that any of the cows were made ill or died as a result of poisoning. In addition, the Hilpertshausers have not conclusively established that the plaintiffs' chlorine treatments for mastitis caused the injuries alleged.

2. *Unilateral Mistake, Mutual Mistake, and Frustration of Purpose*

**\*9** The Hilpertshausers contend that summary judgment on plaintiffs' contract claims is appropriate because the claims were interposed in 1984 on causes of action which accrued in 1974, far beyond the six year statute of limitations allowed in New York on contract claims. NYCPLR 213. Because the facts fail to indicate precisely when the three causes of action accrued, summary judgment is inappropriate.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 8
Not Reported in F.Supp., 1988 WL 42146 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

In an action to reform a contract on the grounds of mutual or unilateral mistake, the general rule is that the action accrues at the date of execution of the instrument and not at the date of discovery of the mistake. *See Diematic Mfg. Corp. v. Packaging Industries, Inc.,* 412 F.Supp. 1367, 1373 (S.D.N.Y.1976); *Allen v. First Wall Street Settlement Corp.,* 130 A.D.2d 824, 514 N.Y.S.2d 726 (N.Y.App.Div.1987). *See generally* Weinstein, Korn, and Miller, ¶ 213.18 at p. 2-162. However, an exception arises where, as here, a party is in possession of real property under an instrument of title. In such instances, the cause of action accrues "when the party has notice of an adverse claim under the instrument or his possession is otherwise disturbed." Weinstein, Korn, and Miller, ¶ 213.18 at pp. 2-162-63, *citing Hart v. Blabey,* 287 N.Y. 257, 39 N.E.2d 230 (N.Y.1942). *See also Nash v. Kornblum,* 12 N.Y.2d 42, 46, 186 N.E.2d 551, 554, 234 N.Y.S.2d 697, 700 (N.Y.1962). The facts do not conclusively indicate when, if at all, plaintiffs received notice that their possession was disturbed. They may have received it as late as 1983 or 1984, when a test by the New York Department of Environmental Conservation revealed the existence of toxic chemicals on the Farm. PTO at 5 (undisputed facts). Any determination of when plaintiffs should have reasonably been on notice of the disturbance is thus an issue for trial.

In an action to reform a contract on the grounds of frustration, the cause of action accrues only when unforseen circumstances nearly or quite completely destroy the purpose of the bargain. *See Amtorg Trading Corp. v. Miehle Printing Press and Mfg. Co.,* 206 F.2d 103 (2d Cir.1953). *See also* Williston, *Contracts,* § 1954 at 131-33 (1978 ed.). Here, the facts fail to indicate when, if at all, the purpose of the bargain was destroyed. Accordingly, summary judgment is not warranted.

3. *Nuisance*

The Hilpertshausers contend that summary judgment on the nuisance claim is appropriate because plaintiffs have failed to establish that the Hilpertshausers knew of the alleged substantial and unreasonable interference with plaintiffs' use of the Farm. However, as stated in the section above regarding the scienter element of the fraud claim, the Hilpertshausers' knowledge of the waste's alleged impact is still in issue. Furthermore, a showing of actual knowledge may not even be required to establish liability: plaintiffs have yet to indicate whether their claim of nuisance liability is based on a theory that the alleged invasion by the Hilpertshausers was intentional, negligent or reckless, or in consequence of an abnormally dangerous activity. *See Copart Industries v. Consolidated Edison Co.,* 41 N.Y.2d 564, 362 N.E.2d 968, 394 N.Y.S.2d 169 (1977). Therefore, summary judgment is inappropriate.

4. *Trespass*

**\*10** The Hilpertshausers are not entitled to summary judgment in their favor on the trespass claim. The open presence on the Farm of the dump and dead calves at about the time of the sale, as well as the Hilpertshausers' knowledge that the waste derived from industrial processes, raises an issue as to whether they knew or expected that the chemicals dumped would have such an impact on the Farm as to constitute an unprivileged entry upon it. *See Ivancic v. Olmstead,* 66 N.Y.2d 349, 488 N.E.2d 72, 497 N.Y.S.2d 326 (N.Y.1985); *Amax, Inc. v. Sohio Industrial Products Co.,* 121 Misc.2d 814, 469 N.Y.S.2d 282 (N.Y.Sup.Ct.1983).

CONCLUSION

K & E's motion for summary judgment on the nuisance and trespass claims, limiting any damages to three years prior to the filing of the complaint, is granted. This limitation applies also to the trespass and nuisance claims against the Hilpertshausers. In all other respects, the requests by the parties for relief are denied. Because the parties have already submitted their joint pretrial order, this case shall be scheduled for trial at the earliest possible date.

Additionally, the Court notes that recent statutory provisions governing the disposal of toxic wastes do not appear to preempt the private rights of action asserted here. *See, e.g.,* N.Y.Envtl.Conserv.Law Arts. 1, 3, 27, 37, & 71. Should any of the parties

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case No. 1:90-cv-00181-JLK   Document 2221-10   filed 01/22/07   USDC Colorado   pg 10 of 11

Not Reported in F.Supp.                                                                                     Page 9
Not Reported in F.Supp., 1988 WL 42146 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

be of a different view, they may submit a brief expressing that view within thirty days of the date of this opinion.

It Is So Ordered.

> FN1. Plaintiffs and the Hilpertshausers did not file formal cross-motions for summary judgment. Their requests may be treated as cross-motions, however, since the parties against whom they seek summary judgment have had an opportunity to be heard in opposition. *See Lowenschuss v. Kane,* 520 F.2d 255 (2d Cir.1975); *Suffolk County P.B.A. v. County of Suffolk,* 595 F.Supp. 1471, 1482 (E.D.N.Y.1984), *aff'd,* 751 F.2d 550 (2d Cir.1985); 10A C. Wright, A. Miller, M. Kane, *Federal Practice and Procedure* § 2720 (2d Ed.1983 & Supp.1987).
>
> FN2. In diversity actions, the applicable statute of limitations is that of the state in which the district court sits. *See Walker v. Armco Construction Co.,* 446 U.S. 740 (1980).
>
> FN3. The exposure occurred no later than May 14, 1974. PTO at 5 (undisputed facts). Under the date-of-injury rule, the action would have had to have been commenced no later than May 14, 1977.
>
> FN4. Claims are revived only if they allege exposure to one or more of the following chemicals: diethylstilbestrol, tungsten-carbide, asbestos, chlordane, and polyvinylchloride. Plaintiffs allege no such exposure here. *See* Complaint at 1-5, PTO at 5 (undisputed facts).
>
> FN5. Although plaintiffs' siting of the dump and the dead calves arguably put them on notice that the Farm may have been unsound, thus precluding them from alleging fraudulent concealment, the Court is nevertheless obligated to construe " evidence proffered and the inferences to be drawn therefrom ... in the light most favorable to the party opposing the motion. " *Beyah,* 789 F.2d at 989.
>
> FN6. The Court notes that K & E employee Kenneth Pulver testified at his deposition that the dumping on the Farm was the result of "a hush hush deal ... [between] ... K & E and Hilpertshauser and Grove [Leffingwell]." Pulver Depo. at 14. When asked who from K & E transacted the deal, Pulver named Victor Smith, the manager of the Millerton plant. *Id.;* Pls.' Memo. of Law at 2. This testimony, however, may not be considered on the motion because it is inadmissible hearsay, and plaintiffs have not shown that admissible corroborating evidence will be available at trial. F.R.Civ.P. 56(e); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 924 (2d Cir.1985).
>
> FN7. It is presently unclear whether the milk was rejected because of a high bacteria count, or because of chlorine in the milk. Chlorine was used by plaintiffs in their efforts to eliminate the bacteria. F. Saunders Depo. at 240.
>
> FN8. In fact, a trespass, unlike a nuisance, may be found without a showing of damages, since it is the unprivileged entry upon the land that creates the violation. Prosser and Keeton, § 13 at 75, § 87 at 623; *Bower,* 639 F.Supp. at 541-42.
>
> FN9. Plaintiffs' complete failure to respond to the Hilpertshausers' motion does not automatically entitle the latter to the relief sought. First, the affidavit and specificity requirement of Rule 56(e) apply only to summary judgment motions "made as provided in this rule." F.R.Civ.P. 56(e). The Hilpertshausers have not filed a formal summary judgment motion as provided by Rule 56, but an informal request for summary judgment without a motion. Furthermore, the Supreme Court,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 10
Not Reported in F.Supp., 1988 WL 42146 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

citing with approval the Advisory Committee Note to Rule 56(e), states that it "was not intended to modify the burden of the moving party under 56(c) to show initially the absence of a genuine issue concerning any material fact." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159 (1970). *See* Wright and Miller at § 2739. Thus, the record must be reviewed to ensure that the Hilpertshausers have met their burden under Rule 56(c). *See Heath v. John Morrell & Co.,* 768 F.2d 245, 249 (8th Cir.1985); *Lubrizol International, S.A. v. M/V Stolt Argobay,* 562 F.Supp. 565 (S.D.N.Y.1982).

FN10. The agreement contained the following language:
The Seller has not made and does not make any representations as to the physical condition ... or any other matter or thing affecting or related to the aforesaid premises, except as herein specifically set forth, and the Purchaser hereby expressly acknowledges that no such representations have been made, and the Purchaser further acknowledges that it has inspected the premises and agrees to take the premises ' as is'.... [A]ll understandings and agreements ... are merged in this contract, which alone fully and completely expresses their agreement, and ... the same is entered into after full investigation, neither party relying upon any statement or representation, not embodied in this contract, made by the other.
5 N.Y.2d at 320, 157 N.E.2d at 598, 184 N.Y.S.2d at 601.

FN11. In *Danann Realty,* the court presumed true plaintiff's allegations of falsity. 5 N.Y.2d at 319, 157 N.E.2d at 598, 184 N.Y.S.2d at 601. No such presumption is made here.

S.D.N.Y.,1988.
Saunders v. Hilpertshauser
Not Reported in F.Supp., 1988 WL 42146 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:84cv06153 (Docket) (Aug. 27, 1984)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.