**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-181-JLK

MERILYN COOK, *et al.*,

       Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

       Defendants.

---

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL**

---

David M. Bernick
John E. Tangren
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636
Phone:  312-861-2000
Fax:      312-861-2200

Joseph J. Bronesky
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Phone:  303-297-2900
Fax:      303-298-0940

Attorneys for ROCKWELL
INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY

**TABLE OF CONTENTS**

I.      **THIS COURT SHOULD CERTIFY DISCRETE ORDERS FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B).** .......................................2

     A.     Congress Expressly Recognized that Some Cases Deserve Interlocutory Appeal. ....................................................................................................................2

     B.     This Court Should Certify Four Discrete Orders for Immediate Appellate Review. .................................................................................................................6

         1.     July 24, 2003 Order.......................................................................................6

         2.     December 17, 2004 Order...........................................................................14

         3.     May 17, 2005 Order....................................................................................16

         4.     December 7, 2006 Order.............................................................................20

II.     **PLAINTIFFS OFFER NO LEGITIMATE OBJECTION TO AN INTERLOCUTORY APPEAL UNDER § 1292(B).** .......................................................20

# TABLE OF AUTHORITIES

## Cases

*Ahrenholz v. Board of Trustees of University of Illinois*,
219 F.3d 674 (7th Cir. 2000) ....................................................................................... 3, 23

*Bd. of County Comm'rs. v. Slovek* ,
723 P.2d 1309 (Colo. 1986) ................................................................................................ 19

*Bell Atlantic Corp.*,
339 F.3d 294 (5th Cir. 2003) ............................................................................................. 20

*Boggs v. Divested Atomic Corp.*,
No. C-2-90-840, 1997 WL 33377790 (S.D. Ohio Mar. 24, 1997) ..................................... 7

*Bohrmann v. Maine Yankee Atomic Power Co.*,
926 F. Supp. 211 (D. Me. 1996) ........................................................................................... 8

*Borland v. Sanders Lead Co.*,
369 So.2d 523 (Ala. 1979) ................................................................................................... 11

*Bouchat v. Baltimore Ravens, Inc.*,
241 F.3d 350 (4th Cir. 2001) ................................................................................................ 4

*Boughton v. Cotter Corp.*,
65 F.3d 823 (10th Cir. 1995) ............................................................................................. 13

*Bradley v. American Smelting & Ref. Co.*,
709 P.2d 782 (Wash. 1985) ................................................................................................. 11

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
155 F.3d 331 (4th Cir. 1998) .................................................................................... 18, 20

*Cook v. Rockwell*,
273 F. Supp. 2d 1175 (D. Colo. 2003) ..................................................................... passim

*Cook v. Rockwell*,
358 F. Supp. 2d 1003 (D. Colo. 2004) ................................................................... 14, 15

*Corcoran v. New York Power Auth.*,
935 F. Supp. 376 (S.D.N.Y. 1996) ...................................................................................... 8

*Dade County v. Alvarez*,
124 F.3d 1380 (11th Cir. 1997) ........................................................................................... 5

*Devine v. Commonwealth Edison Co.*,
   No. 06-C-2383, 2006 WL 2038593 (N.D. Ill. July 19, 2006) ........................................... 7

*Finestone v. Fla. Power & Light Co.*,
   319 F. Supp. 2d 1347 (S.D. Fla. 2004) ............................................................................. 7

*Firestone Tire & Rubber Co. v. Risjord*,
   449 U.S. 368 (1981) ........................................................................................................ 21

*Gassie v. SMH Swiss Corp. for Microelec. & Watchmaking Indus., Ltd.*,
   No. Civ. A. 97-3557, 1998 WL 158737 (E.D. La. Mar. 26, 1998)................................... 7

*Gibbs Props. Corp. v. Cigna Corp.*,
   196 F.R.D. 430 (M.D. Fla. 2000)..................................................................................... 20

*Good v. Fluor Daniel Corp.*,
   222 F. Supp. 2d 1236 (E.D. Wash. 2002) ......................................................................... 7

*Griesmann v. Chemical Leaman Tank Lines, Inc.*,
   776 F.2d 66 (3d Cir. 1985)................................................................................................ 5

*Hadjipateras v. Pacifica, S.A.*,
   290 F.2d 697 (5th Cir. 1961) ................................................................................... 2, 4, 23

*Haraburda v. U.S. Steel Corp.*,
   187 F.Supp. 86 (W.D. Mich., 1960) .................................................................................. 4

*In re Grand Jury Proceedings June 1991*,
   767 F.Supp. 222 (D. Colo. 1991)..................................................................................... 23

*In re Hoery v. United States*,
   64 P.3d 214 (Colo. 2003)................................................................................... 10, 11, 15

*In re Quest Communications Int'l Inc. Securities Litigation*,
   Slip Op., 2006 WL 278279 (D. Colo. 2006)................................................................... 23

*In re TMI Litig. Cases Consol. II*,
   940 F.2d 832 (3d Cir. 1991).............................................................................................. 7

*Koehler v. Bank of Bermuda Ltd.*,
   101 F.3d 863 (2d Cir. 1996).............................................................................................. 3

*Kuenzle v. HTM Sport-Und Freizeitgerate AG*,
   102 F.3d 453(10th Cir. 1996) ........................................................................................... 4

*Lamb v. Martin Marietta Energy Sys.*,
   835 F. Supp. 959 (W.D. Ky. 1993).................................................................................... 8

*Maddy v. Vulcan Materials Co.*,
    737 F. Supp. 1528 (D. Kan. 1990) .................................................................................. 11

*Mangini v. Aerojet-General Corp.*,
    51 Cal. Rptr. 2d 272 (Cal. 1996) .................................................................................. 16

*McLandrich v. S. Cal. Edison Co.*,
    942 F. Supp. 457 (S.D. Cal. 1996) .................................................................................. 8

*Middlecamp v. Bessemer Irrigating Ditch Co.*,
    103 P. 280 (1909) .................................................................................. 16

*Miller v. Cudahy Co.*,
    858 F.2d 1449 (10th Cir. 1988) .................................................................................. 16

*National Asbestos Workers Med. Fund v. Philip Morris, Inc.*,
    71 F.Supp.2d 139 (E.D.N.Y., 1999) .................................................................................. 3

*Newton v Merrill Lynch*,
    259 F.3d 154 (3d Cir. 2001) .................................................................................. 20

*Nieman v. NLO, Inc.*,
    108 F.3d 1546 (6th Cir. 1997) .................................................................................. 7, 16

*O'Conner v. Commonwealth Edison Co.*,
    13 F.3d 1090 (7th Cir. 1994) .................................................................................. 7

*O'Connor v. Boeing N. Am., Inc.*,
    No. CV 97-1554, slip op. (C.D. Cal. Aug. 18, 2005) .................................................................................. 7

*Osarczuk v. Associated Univs. Inc.*,
    No. 96-2836 (N.Y.-Part. 32, Suffolk Co. Mar. 10 2005) .................................................................................. 7

*Public Service Co. of Colorado v. Van Wyk*,
    27 P.3d 377 (Colo. 2001) .................................................................................. 9, 10, 11

*Roberts v. Fla. Power & Light Co.*,
    146 F.3d 1305 (11th Cir. 1998) .................................................................................. 7

*Steering Comm. v. United States*,
    6 F.3d 572 (9th Cir. 1993) .................................................................................. 5

*Steering Committee v. Exxon Mobile Corp.*,
    461 F.3d 598 (5th Cir. 2006) .................................................................................. 20

*Steinle v. Boeing Co.*,
    24 F.3d 1250 (10th Cir. 1994) .................................................................................. 4

*Tilton v. Richardson*,
  6 F.3d 683 (10th Cir. 1993) ........................................................................ 4

*United States v. Woodbury*,
  263 F.2d 784 (9th Cir. 1959) .................................................................. 23

*Utah By and Through Dept. of Health v. Kennecott Corp*.,
  14 F.3d 1489 (10th Cir. 1994) ................................................................. 23

*Wilcox v. Homestake Mining Co.*,
  No. CIV-04-534, slip op. (D.N.M. Nov. 15, 2005) ..................................... 7

**Statutes**

28 U.S.C. § 1291 .............................................................................................. 2

28 U.S.C. § 1292(b) ................................................................................. passim

42 U.S.C. § 2014 .............................................................................................. 1

**Other Authorities**

*In re Hoery v. United States: Compensating Homeowners for Loss of Property Value Due
  to Toxic Pollution under the Continuing Tort Doctrine*, 16 Vill. Envtl. L.J. 35, 53
  (2005) ....................................................................................................... 15

**Rules**

Rule 54(b) ................................................................................................. 1, 5

**Treatises**

Charles A. Wright, *Law of Federal Courts* (5th ed. 1994) ............................. 4

Dana L. Eismeier, *Continuing Trespass and Nuisance for Toxic Chemicals*, 32-JUL Colo.
  Law (2003) .............................................................................................. 16

Restatement (Second) of Torts § 930(3)(b) ............................................ 13, 17

W. Page Keeton *et al.,* Prosser and Keeton on the Law of Torts (5th ed. 1984) ........................... 11

Shortly after trial, this Court recognized that "it would be inefficient to proceed to the damages allocation phase of this action before the parties have had the opportunity to appeal any matters that might affect the fact or amount of the damages awarded by the jury." 2/17/06 Tr. at 10821. This Court supported taking "whatever steps are necessary to give the parties the opportunity to appeal these matters before proceeding to the allocation of damages." *Id*. Defendants agree that the parties and this Court should not expend vast resources resolving outstanding issues and allocating damages before the Tenth Circuit has had an opportunity to review this extraordinary case. Any other approach would risk the possibility that an enormous amount of work could be for naught.

This case is not ready for final judgment under Rule 54(b), yet that does not mean that an appeal cannot be on the immediate horizon. The Tenth Circuit can and should review discrete, controlling questions of law at the earliest possible opportunity under 28 U.S.C. § 1292(b). Interlocutory appeals under § 1292 were designed precisely for cases such as this one, when the edifice of an entire case is built upon cornerstone rulings that may not withstand the weight of appellate scrutiny. This Court made a number of critical rulings on hotly contested issues of law, and the outcome of those rulings directly impacted the need for and the outcome of the trial. In particular, this Court held that:

- the Price-Anderson Act, 42 U.S.C. § 2014, does not preempt state standards of care that are inconsistent with federal nuclear safety regulations;

- a trespass claim can be based on the presence of plutonium contaminants, even if they cannot be felt, touched, or perceived by the senses;

- a nuisance claim can be based on a health risk so long as there is "some" increased risk, even where plaintiffs' experts admit that the risk is so small that it would not even spark concern among government regulators;

- the statute of limitations does not apply when a claim is based on the ongoing presence of plutonium; and

- issues of nuisance and damages could be, and would be, tried as a class.

Each of those rulings had a pivotal impact on the trial, and the outcome of the appeal of these issues may alleviate or virtually eliminate the need for additional work by this Court.

This Court should allow the Tenth Circuit to inspect the foundations of the trial before it proceeds any further. The remaining damages work in this case alone will be extensive, covering, *inter alia*: (1) the allocation of prospective damages to members of the Damages Subclass; (2) the existence and allocation of past damages to members of the Damages Subclass; (3) the resolution of damages issues for thousands of class members one-by-one on claims that this Court recognized were not susceptible to class-wide treatment, and so on. Enormous time, effort, and expense can be saved by testing whether the rulings above were based on bedrock or a foundation of sand. This Court should certify discrete orders for interlocutory appeal under 28 U.S.C. § 1292, and thus avoid the risk that the parties and the Court will do an extraordinary amount of additional work, only to have the Tenth Circuit send this case back to square one.

## I.     THIS COURT SHOULD CERTIFY DISCRETE ORDERS FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b).

### A.     Congress Expressly Recognized that Some Cases Deserve Interlocutory Appeal.

The general rule in federal court is that appeals may be taken only from "final judgments." *See* 28 U.S.C. § 1291. That rule makes sense in most cases. Yet it is equally true that some cases cry out for early intervention by an appellate court. In some cases, the "orderly administration is frustrated" while a case "grinds through to a final judgment as the sole medium through which to test the correctness of some isolated identifiable point of fact, of law, of substance or procedure …." *Hadjipateras v. Pacifica, S.A.*, 290 F.2d 697, 703 (5th Cir. 1961).

Congress recognized that, in some cases, forcing parties to litigate until the entry of final judgment would create extra costs and waste judicial resources. Congress thus passed the

2

Interlocutory Appeals Act to give parties and district courts the opportunity to pursue efficient appeals on fundamental questions of law.  The statute provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order ….

28 U.S.C. § 1292(b).

Congress was not alone in recognizing the inherent value of interlocutory appeals on key questions of law.  The Interlocutory Appeals Act "was a judge-sought, judge-made, judge-sponsored enactment" aimed at remedying this problem.  *Id.* at 702.  In fact, the Tenth Circuit Judicial Conference argued on behalf of the statute, noting that "[t]oo rigid a bar against such appeals from interlocutory orders may result in injustice … and burdening the parties."  *National Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F.Supp.2d 139, 163 (E.D.N.Y. 1999) (quoting letter from study committee to the Tenth Circuit Judicial Conference, in S. Rep. No. 85-2434, at 8-9 (1958)).

Under the statute, an interlocutory appeal is appropriate when a ruling involves:  (1) a "controlling question of law," for which (2) there is "substantial ground for difference of opinion," and (3) immediate appeal "may materially advance" the ultimate termination of the litigation.  28 U.S.C. § 1292(b); *see also Ahrenholz v. Board of Trustees*, 219 F.3d 674, 675 (7th Cir. 2000).  These safeguards have worked well.  "Although the statute represents a slight retreat from the policy of finality and strict enforcement of the final judgment rule, § 1292(b) has not caused a large problem in the federal appellate courts."  *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 866 (2d Cir. 1996).  This is true even though courts certify approximately 100 cases

under Section 1292(b) each year.  *See id.* (citing Charles A. Wright, *Law of Federal Courts* § 102, at 758 (5th ed. 1994)).  The Tenth Circuit has recognized the value of interlocutory appeals by granting such review in a number of cases.  *See, e.g., Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 454 (10th Cir. 1996); *Steinle v. Boeing Co.*, 24 F.3d 1250, 1251 (10th Cir. 1994); *Tilton v. Richardson*, 6 F.3d 683, 684 (10th Cir. 1993).

Plaintiffs disparage the Section 1292(b) process as "piecemeal appellate review," as if there were some bright-line rule against interlocutory appeals.  *See, e.g.*, Pls.' Mem. at 9.  As an initial matter, plaintiffs' criticism is inconsistent with their request that the Court enter judgment pursuant to Rule 54(b) on some (but not all) of the claims in the case.  Moreover, Congress and the judiciary had a different view of Section 1292(b), recognizing that an interlocutory appeal is the most efficient and appropriate way to proceed in certain cases.  *See Hadjipateras*, 290 F.2d at 703.  The House Judiciary Committee addressed this issue in its report on the bill which became Section 1292(b):  "It is felt that the instant bill, in permitting appeals in nonfinal orders, will not only save protracted and expensive litigation, but, with its built-in safeguards, prevent numerous and groundless appeals to our appellate courts."  *Haraburda v. U.S. Steel Corp.*, 187 F. Supp. 86, 88 (D. Mich. 1960) (quoting House Report No. 1667, 85 Cong. 2d Sess., at 1, 2).

There is no doubt that district courts can certify questions under Section 1292(b) following trial.  The text of the statute does not confine interlocutory appeals to any particular period in the life of a case, which suggests that such an appeal is appropriate whenever a case satisfies the statutory requirements.  *See* 28 U.S.C. § 1292(b).  In fact, the case law is replete with examples of circuit courts accepting interlocutory appeals after the liability phase and before proceeding to damages.  *See, e.g., Bouchat v. Baltimore Ravens, Inc.*, 241 F.3d 350, 353 (4th Cir. 2001) (reviewing questions certified by the district court following denial of defendants'

motion for judgment as matter of law made after trial); *Dade County v. Alvarez*, 124 F.3d 1380,

1383 (11th Cir. 1997) (accepting questions certified following trial and district court's denial of

defendant's Rule 50(b) renewed motion for judgment as a matter of law); *Steering Comm. v.*

*United States*, 6 F.3d 572, 574-75 (9th Cir. 1993) (accepting questions certified after a jury trial

had determined liability); *Griesmann v. Chemical Leaman Tank Lines, Inc.*, 776 F.2d 66, 70 (3d

Cir. 1985) (accepting questions certified after the trial's liability phase was completed). Such an

interlocutory appeal is especially appropriate where, as here, the damages phase will prove to be

complex, time-consuming, and potentially unnecessary.

 This case fits well within the framework of section 1292(b). In particular, the following

four orders involve controlling questions of law on which there is a substantial ground for

difference of opinion:

1.  Order of July 24, 2003, published at 273 F. Supp. 2d 1175 (D. Colo. 2003), which addressed (a) whether the Price-Anderson Act, 42 U.S.C. § 2014, preempts state standards of care that are inconsistent with federal nuclear safety regulations, (b) whether the entry of plutonium contaminants can serve as a predicate for a claim for trespass regardless of whether those contaminants can be felt by touch, and (c) whether a nuisance claim may be based upon a health risk that is not scientifically verifiable. (Attached as Ex. 1).

2.  Order of December 17, 2004, published at 358 F. Supp. 2d 1003 (D. Colo. 2005), which addressed whether the statute of limitations applies to trespass and nuisance claims premised on the ongoing presence of plutonium. (Ex. 2).

3.  Order of May 17, 2005, which addressed whether nuisance and damages should have been tried as part of a class trial. (Ex. 3).

4.  Memorandum Opinion Regarding Jury Instructions dated December 7, 2006, which addressed the jury instructions on the issues above. (Ex. 4).

As explained in Defendants' Response to Plaintiffs' Motion for Entry of Judgment, a number of

complex issues remain unresolved, which means that this case is far from ready for final

judgment under Rule 54(b). The Tenth Circuit should have the immediate opportunity to review

each of the above orders under § 1292 before the parties and this Court proceed any further.

Thus, defendants respectfully request that the Court issue an order amending each of the four rulings set forth above to include a 28 U.S.C. § 1292 certification.

**B.     This Court Should Certify Four Discrete Orders for Immediate Appellate Review.**

**1.     July 24, 2003 Order**

This Court made critical rulings on three distinct issues of law in its Order dated July 24, 2003. *First*, this Court "reject[ed] Defendants' contention that Plaintiffs must prove Defendants violated federal standards as an element of their tort claims." *Cook IX*, 273 F. Supp. 2d 1175, 1180 (D. Colo. 2003). *Second*, this Court held that "Plaintiffs need not demonstrate that plutonium and other Plant-derived contaminants are present on their properties at levels of toxicological concern or are otherwise causing damage to their properties in order to prevail on their trespass claim." *Id.* at 1193. *Third*, this Court held that "Colorado law does not require that contamination pose an actual or verifiable health risk in order for it to be found a private nuisance." *id.* at 1203. Each of those rulings involves "a controlling question of law as to which there is substantial ground for difference of opinion," and as to which an "appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

**a.     The Federal Standards Ruling**

This Court's ruling that federal nuclear safety standards do not preempt more stringent state standards of care is obviously "controlling," both because it establishes the threshold requirements for plaintiffs' claims, and because the subsequent record confirms that plaintiffs would not have been able to prove any off-site violation of those federal standards. *See* DX1651a; DX1663; DX1664; Frazier testimony, 12/12/05 Tr. 7529-31 (air monitoring results were "always less than standards"; the plant was always in compliance with DOE or AEC's standards for plutonium in air); *id*. at 7534-37, 7539; Weston testimony, 12/14/05 Tr. 8096 ("I

never saw anything even close to standard.").)  A different ruling on the preemption issue would have required the dismissal of plaintiffs' claims.  The question was indisputably vital to the litigation.

A significant number of federal courts disagree with this Court's conclusion.  This Court conceded as much.  This Court candidly acknowledged that "my holding that federal regulations do not preempt state standards of care in Price-Anderson public liability actions is contrary to the existing weight of authority on the issue."  *Cook IX*, 273 F. Supp. 2d at 1193.  Since that time, five more courts – including a district court in the Tenth Circuit – have agreed with the majority view that the Price-Anderson Act preempts state law to the extent that it creates a duty inconsistent with federal nuclear safety standards.  *See Devine v. Commonwealth Edison Co.*, No. 06-C-2383, 2006 WL 2038593, at *3 (N.D. Ill. July 19, 2006) (attached as Ex. 5); *Wilcox v. Homestake Mining Co.*, No. CIV-04-534, slip op. at 6–7 (D.N.M. Nov. 15, 2005) (attached as Ex. 6); *O'Connor v. Boeing N. Am., Inc.*, No. CV 97-1554, slip op. at 77–87 (C.D. Cal. Aug. 18, 2005) (attached as Ex. 7); *Osarczuk v. Associated Univs. Inc.*, No. 96-2836, at *16 (N.Y.-Part. 32, Suffolk Co. Mar. 10 2005) (attached as Ex.8); *Finestone v. Fla. Power & Light Co.*, 319 F. Supp. 2d 1347, 1349 (S.D. Fla. 2004).  The following decisions are in accord:  *Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1308 (11th Cir. 1998); *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1553 (6th Cir. 1997); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1105 (7th Cir. 1994); *In re TMI Litig. Cases Consol. II*, 940 F.2d 832, 859 (3d Cir. 1991); *Good v. Fluor Daniel Corp.*, 222 F. Supp. 2d 1236, 1247 (E.D. Wash. 2002); *Gassie v. SMH Swiss Corp. for Microelec. & Watchmaking Indus., Ltd.*, No. Civ. A. 97-3557, 1998 WL 158737, at *4 (E.D. La. Mar. 26, 1998) (attached as Ex. 9); *Boggs v. Divested Atomic Corp.*, No. C-2-90-840, 1997 WL 33377790, at *3 (S.D. Ohio Mar. 24, 1997) (attached as Ex. 10); *Corcoran v. New York Power*

*Auth.*, 935 F. Supp. 376, 386 (S.D.N.Y. 1996); *Bohrmann v. Maine Yankee Atomic Power Co.*, 926 F. Supp. 211, 220 (D. Me. 1996); *McLandrich v. S. Cal. Edison Co.*, 942 F. Supp. 457, 465 (S.D. Cal. 1996); *Lamb v. Martin Marietta Energy Sys.*, 835 F. Supp. 959, 965 (W.D. Ky. 1993). The weight of authority is heavily in favor of the majority view, and the Tenth Circuit should have an immediate opportunity to address this fundamental question.

Certifying this issue for immediate interlocutory appeal would materially advance this litigation.  If the Tenth Circuit agrees with the majority view, then there will be no need for the time-consuming damages phase for the prospective damages, as well as proceedings involving past damages, medical monitoring, and so on.  If this Court proceeds to the damages phase now – only to have the Tenth Circuit reverse later – months if not years of work would be wasted.  This Court should certify this issue now, and remove the cloud of uncertainty by allowing the finality that only appellate review can provide.

### b.        The Trespass Ruling

This Court also ruled that the entry of a contaminant like plutonium on a property can serve as the basis for a trespass claim, even if that contaminant cannot be felt or perceived by the senses, without requiring proof that the intangible intrusion caused physical damage to the property.  That ruling is "controlling" because it eliminated any floor on the amount of contamination that is necessary for a trespass claim.  A contrary ruling would have had serious consequences for plaintiffs' trespass claim, which would otherwise fail as a matter of law.  The evidence at trial established that ***none*** of the class properties – let alone ***all*** of the properties – have deposits of plutonium at a level that poses toxicological concerns.  *See*, *e.g.*, R. Bartlett testimony, 10/14/05 Tr. 1060-61 (plutonium sampling showed property safe to build on); *see also* Schierkolk testimony, 10/20/05 Tr. 1932, 1934-35 (sampling showed well water safe); Watkins testimony, Dep. Design. at 159-60, 167-69 (no public health risk offsite); Norton

testimony, 12/14/05 Tr. 7958-66 ("there had been no evidence of off-site physiological or

environmental damages"); Raabe testimony, 12/9/05 Tr. 7339-40 ("The doses we're talking

about in this case are so trivial they won't have any effect one way or another.  They're small,

tiny fraction of what we get every week.  There is no way you can assign a risk or a benefit to

such a small dose.  No way."); *see also id.* at 7270-71;  DX536 at 23-25 (highest risks same as

risk from background plutonium from fallout, within EPA's range of acceptable risk, and less

than risk of dying from lighting strike); P1334 at 15-18 (same); Till testimony, 12/15/05 Tr.

8273-81, 8282-84, 12/16/06 Tr. 8529-31 (cumulative 37-year doses are thousands of times less

than a single year of background radiation dose and risks are so small that they do not show up in

the real world and have to be assumed to exist); DX1187; DX1779a; DX1843; DX1855;

DX1856.

There is substantial room for reaching the opposite conclusion on this fundamental legal

issue.  The backdrop for this Court's trespass ruling is the following rule for trespass under

Colorado law:

> In *Public Service Co. of Colorado v. Van Wyk*, 27 P.3d 377 (Colo. 2001), the
> Colorado Supreme Court joined the modern trend by recognizing that an
> intangible intrusion onto another's property may constitute a trespass, but only
> upon proof that the intangible intrusion caused physical damage to the property.
> *See id.* at 390. In so doing, it distinguished between trespass based on a "physical
> entry" and one based on an "intangible intrusion," *id.* at 389, which it defined as
> "something that is impalpable, or incapable of being felt by touch."  *Id.* at 387.

*Cook IX*, 273 F. Supp. 2d at 1200-01.  Plaintiffs have never contended that the contamination at

issue in this case is tangible or capable of being felt by touch.  *See* Representative Pls.' Joint

Resps. to Dow's 2d Set of Interrogs. Directed to Each Class Representative Pl., dated 9/15/95, at

12 (Ex. 11) ("[T]he radionuclides and other hazardous substances released from Rocky Flats to

which responding plaintiffs and members of the classes (and their properties) were exposed were

not perceptible to the senses ...."). At trial, both plaintiffs' counsel and their expert admitted that

contamination from Rocky Flats was intangible and unable to be felt by touch.  *See* Pls.'

opening, 10/11/05 Tr. 496 ("You can't see it, you can't smell it, you can't taste it, you can't hear

it, and you can't feel it ...."); Smallwood testimony, 11/3/05 Tr. 4040.

Despite these admissions, this Court held that "the deposition of pollution ... *is* after all a

tangible matter."  *Cook IX*, 273 F. Supp. 2d at 1201 (emphasis added).  Rather than submitting to

the jury whether the deposits were tangible, this Court decided for itself that the deposits were, in

fact, tangible.  *But see* Smallwood testimony, 11/3/05 Tr. 4040 ("Q.  You would agree with that,

by any stretch of the common sense word 'intangible', [plutonium particles are intangible,]

right?  A.  Yes.").  There is a substantial basis for disagreement with that decision on both

substantive and procedural grounds.  There is every reason to conclude that the deposits were not

tangible, and to the extent there is any question on that score, the issue was the exclusive

province of the jury.

Defendants submit that this Court's ruling is in tension with a straightforward application

of *Van Wyk*'s "incapable of being felt by touch" standard, a tension that this Court recognized

when it noted that its holding did not follow the "potentially expansive definition of an

'intangible intrusion' in *Van Wyk*."  *Cook IX*, 273 F. Supp. 2d at 1201.  In support of this

apparent departure from *Van Wyk*, this Court inferred from the Colorado Supreme Court's

decision in *In re Hoery v. United States*, 64 P.3d 214 (Colo. 2003) that "the migration and

presence of contaminants upon another's property constitutes a physical invasion that is

actionable under the traditional rule of trespass."  *Id.*  The Colorado Supreme Court did not

actually hold that the TCE contamination at issue in that case was a tangible matter – that issue

was not before the Court.  Instead, the Court simply stated that the contamination "constituted a

trespass."  *Hoery*, 64 P.3d at 222.  The *Hoery* court also observed that the TCE contamination

measured in the plaintiff's well exceeded the Colorado drinking water standard by 4 times the permissible amount.  *Id.* at 216 n.2.  In short, under Colorado law, an intangible invasion can give rise to a trespass claim only if it causes serious and substantial real-world physical damage.

Other authorities from jurisdictions that have adopted *Van Wyk*'s distinction between tangible and intangible invasions agree that contamination imperceptible by human senses is intangible and actionable only upon a showing of actual and substantial physical damage.  *See Maddy v. Vulcan Materials Co.*, 737 F. Supp. 1528, 1540-41 (D. Kan. 1990) (holding that plaintiffs "cannot recover in trespass since they have failed to demonstrate an injury implicating their right to exclusive possession" despite plaintiffs' allegation of the "emission and migration of airborne gases" onto their properties); *Bradley v. American Smelting & Ref. Co.*, 709 P.2d 782, 792 (Wash. 1985) (concluding that a "deposit of microscopic particles, undetectable by the human senses," is actionable as a trespass only with "proof of actual and substantial damages"); *Borland v. Sanders Lead Co.*, 369 So.2d 523, 529 (Ala. 1979) (holding, in the case of "pollution emitting from a defendant's smoke stack," that plaintiffs must show "substantial damages to the Res"); *see also* W. Page Keeton *et al.,* Prosser and Keeton on the Law of Torts § 13, at 71 (5th ed. 1984) ("[T]he mere intentional introduction onto the land of another of ***smoke***, ***gas***, noise, and the like, without reference to the amount thereof or other factors that are considered in connection with a private nuisance, is not actionable as a trespass.") (emphasis added), *cited in Van Wyk*, 27 P.3d at 390.

If Colorado trespass law permitted a trespass claim for any entry of contaminants – regardless of whether they are perceptible or cause any damage – then a trespass claim could arise from the deposit of even one microscopic particle on another's property.  This Court seemingly acknowledged that this outcome was untenable, and that some "de minimis" level of

trespass, however defined, must bar actions where the contamination is legally insignificant. *See* 7/22/04 Tr. at 33 (Ex. 12) ("MR. BERNICK: I certainly did not understand that your Honor's decision was designed to go that far. THE COURT: It doesn't. That's the *de minimis* kind of thing; but the plutonium plume is different than a molecule of plutonium."). Even plaintiffs' counsel conceded that their position was not that a single molecule of plutonium should give rise to a trespass claim. *See id.* at 45 ("MR. DAVIDOFF: And obviously, we're not talking about a molecule of plutonium; but the kinds of trespasses of plutonium, both past and ongoing and threatened in the future, that are at issue in this case are far from trivial.").) Yet at trial, plaintiffs were never required to show that contamination from Rocky Flats was more than trivial. Instead, the jury was instructed that "Plaintiffs are **not** required to show that plutonium is present on the Class Properties at **any** particular level or concentration ...." *See* Instruction No. 3.3 (emphasis to "any" added). Based on that instruction, the jury was led to believe that "any" concentration sufficed, no matter how small. There is a substantial ground for concluding that Colorado law does not recognize such a trespass claim.

Immediate appellate review would expedite this case, for the same reasons stated above. There is no reason to decide how to allocate damages and resolve other complex issues when the entire basis for the trespass ruling rests on such a dubious foundation. There is every reason to allow the Tenth Circuit to resolve this issue now.

### c.    The Nuisance Ruling

This Court ruled that a nuisance claim may be based upon "some increased risk of health problems," even if that risk is one-in-a-billion (or less), and irrespective of whether that risk is of any concern to regulatory agencies. Like the trespass ruling, the nuisance ruling is "controlling" because it assumed that "risk" alone was sufficient to support a nuisance claim and it eliminated any baseline for the amount of risk that is necessary for a nuisance claim. In fact, plaintiffs'

nuisance claim otherwise would fail as a matter of law.  The releases of plutonium from Rocky Flats at issue in this case were, as plaintiffs' own expert conceded, "very, very small exposures" that "regulatory agencies would not have been concerned about."  Goble testimony, 11/2/05 Tr. 3661; *see also* Raabe testimony, 12/9/05 Tr. 7339-40 ("The doses we're talking about in this case are so trivial they won't have any effect one way or another.  They're small, tiny fraction of what we get every week.  There is no way you can assign a risk or a benefit to such a small dose. No way.").

There is sizeable ground for difference of opinion on this issue.  This Court found the primary support for its holding in a Restatement commentary.  *See Cook IX*, 273 F. Supp. 2d at 1204 (citing Restatement (Second) of Torts § 821F cmt. f) (suggesting that "fears and other mental reactions common to the community are to be taken into account [under nuisance], even though they may be without scientific foundation or other support in fact").  As this Court acknowledged, however, the Tenth Circuit "has questioned whether the Colorado Supreme Court or any court would follow the Restatement rule allowing nuisance liability to be premised on a landowner's unfounded fear of risks associated with a neighboring property."  *Id.* (*citing Boughton v. Cotter Corp.*, 65 F.3d 823, 832 n.13 (10th Cir. 1995)); *see also Boughton*, 65 F. 3d at 832 n. 13 ("[W]e are not convinced that [the Colorado Supreme Court] would follow this particular comment from two decades ago, allowing compensation for wholly unfounded fears.").  This Court ultimately decided to adopt the Restatement rule, despite *Boughton*, because it interpreted *Boughton* to be limited to the issue of "annoyance and discomfort" damages as distinguished from nuisance liability.  *Cook IX*, 273 F. Supp. 2d at 1206.  Yet the Tenth Circuit's statement that it is "not convinced" that the Restatement rule would be followed in Colorado

demonstrates at a minimum that there is a significant possibility that the appellate court would reach the opposite conclusion.

Appellate resolution of this issue would help fill a yawning gap in the legal standard for nuisance in this case.  Like the trespass issue discussed above, this Court's holding that plaintiffs need not prove more than an "increased" health risk allowed plaintiffs to recover without being constrained by any minimal standard for what constitutes a nuisance.  The jury instructions allowed recovery based on a showing of "*some* increased risk" (Instruction No. 3.7) (emphasis added), no matter how infinitesimal that marginal risk might have been.  *See* 1/20/06 Tr. at 10570 (Pls.' closing) ("The risk does not have to be substantial.  Some increased risk.").  The lack of any threshold for when a risk is actionable is untenable in this industrial age when low-level pollutants permeate almost everywhere.  *See* Till testimony, 12/15/05 Tr. 8273-81, 8282-83, 8529-31 (cumulative 37-year doses from Rocky Flats are thousands of times less than a single year of background radiation dose and present risks so small that they do not show up in the real world and have to be assumed to not exist).

An interlocutory appeal would materially advance this case for the same reasons explained above.  If the Tenth Circuit affirms now, then nothing is wasted by an interlocutory appeal.  But if the Tenth Circuit reverses later – after this Court has resolved all outstanding issues – the parties and this Court will have wasted extraordinary resources unnecessarily.

### 2.     December 17, 2004 Order

This Court held that the alleged contamination here is a continuing tort under Colorado law, regardless of whether it can be reasonably abated.  *Cook X*, 358 F. Supp. 2d 1003, 1004-14 (D. Colo. 2004).  This issue is "controlling" because the statute of limitations would bar plaintiffs' claims if the contamination were held to be a permanent tort.  Many class members had knowledge of contamination from Rocky Flats well before the limitations period.  *See, e.g.*,

Ozaki testimony, 10/20/05 Tr. 1826-27 (testifying that it was "common knowledge" by the

1970s that nuclear materials had been released off-site from Rocky Flats); Schierkolk testimony,

10/20/05 Tr. 1943-45 (testifying that he recalled reading newspaper articles in February 1970

discussing the release of radioactive materials from Rocky Flats offsite which stated:

"Radioactive plutonium from the Dow Chemical Company plant at Rocky Flats has polluted

soils over a radius of several miles . . . ."); DX11 (2/11/70 Denver Post article, "Radioactive Soil

Pollution Tied To Rocky Flats"); DX63 (8/7/73 Denver Post article, "Atom Wastes Buried in

Tons at Flats Plant"); DX568 (11/29/71 Denver Post article, "Plutonium Safety Doubted");

Defendants' Group Exhibit 1 (various newspaper articles).

There is more than ample ground for difference of opinion.  This Court itself noted that

"the question of how to differentiate between permanent and continuing trespasses and nuisances

has vexed and perplexed the Colorado Supreme court and other courts for over a century."  358

F. Supp. 2d at 1008 (*citing Hoery*, 64 P.3d at 224 (Kourlis, J., dissenting)).  Even with the benefit

of the *Hoery* opinion, this issue has been one of the most difficult of the case, as this Court

acknowledged:

> I continue to read and reread the Colorado Supreme Court decision in *Hoery*, and
> it is in many ways, it is an admirable and remarkable decision.  Its scholarship is
> there, but we just happen to hit it in its most vulnerable spot, and I have to
> continue to look at that, and I need whatever further advice I get from counsel on
> *Hoery* is always welcome.  It has a lacuna in it that we need to worry about.

10/22/04 Tr. at 10.  Commentators have differed with this Court's interpretation of *Hoery*,

suggesting that the possibility that an invasion may be abated plays a role in the analysis of

whether it is a continuing tort.  *See* Elizabeth Ann Coleman, Casenote, *In re Hoery v. United*

*States: Compensating Homeowners for Loss of Property Value Due to Toxic Pollution under the*

*Continuing Tort Doctrine*, 16 Vill. Envtl. L.J. 35, 53 (2005) (stating that one of the reasons that

the *Hoery* court found that the contamination was continuing was that "the undisputed record

shows that the contamination ... is abatable and remediable"); Dana L. Eismeier, *Continuing Trespass and Nuisance for Toxic Chemicals*, 32-JUL Colo. Law 107, 109 (2003) ("[A]batability may be required to show continuing trespass and nuisance in a toxic chemical context.").  *Hoery* itself took into account abatability, as have other courts.  *See, e.g., Hoery*, 64 P.3d at 222-23 ("the record at this stage of the litigation indicates that the contamination is not permanent — that is, it is remediable or abatable"); *Middlecamp v. Bessemer Irrigating Ditch Co.*, 103 P. 280, 283 (1909) (when a nuisance or trespass "is not practicable to remedy" or could not "by a reasonable expenditure be checked," the nuisance is considered permanent); *Miller v. Cudahy Co.*, 858 F.2d 1449, 1454, 1456 (10th Cir. 1988) (Kansas law:  continuing tort doctrine is predicated on "the defendant's ability and duty to abate" the nuisance; a nuisance is temporary/continuing where the damage "is remediable and the cause of the damage [was] abatable"); *Nieman*, 108 F.3d at 1555 n.12, cited favorably as precedent by *Hoery* ("the determination of whether the trespass is continuing depends on whether it is abatable"); *Mangini v. Aerojet-General Corp.*, 912 P.2d 1220, 1221 (Cal. 1996) (holding that "because plaintiffs had failed to present any substantial evidence that the contamination of their land . . . was capable of being abated at a reasonable cost, the nuisance must be deemed permanent . . .  plaintiffs' nuisance and trespass claims were time barred") (emphasis added).  Given this contrary authority, this issue is another prime candidate for interlocutory appeal.

### 3.    May 17, 2005 Order

This Court held that liability and damages could be, and would be, tried as part of the classwide trial.  *See* 5/17/05 Order at 1-2.  That, too, was a controversial ruling on a fundamental legal issue.

Concerning nuisance, this Court held that at least three forms of interference asserted by plaintiffs were "capable of determination on a class-wide basis."  5/17/05 Order at 4.  *First*, the Court held that "current human health risk arising from past or on-going exposure to plutonium released from Rocky Flats as a result of one or both of the Defendants' activities there" was capable of class-wide resolution.  *Id.* at 5.  *Second*, this Court held that "current human health risk" from substances *other than* plutonium could be resolved in a class-wide trial.  *Id*.  *Third*, this Court determined that a "[d]emonstrable threat of future injury arising from one or both of Defendants' activities at Rocky Flats" could be resolved in a class-wide trial if based on "conditions caused by Defendants' activities at Rocky Flats [that] create a real, verifiable threat of future harm to Class Properties."  *Id.* at 6.

With respect to damages, the Court determined that damages for prospective invasions pursuant to Restatement (Second) of Torts § 930(3)(b) would be determined in a class-wide trial rather than during individual damages trials.  The sub-class included those class members who owned their class properties on the later of (1) January 30, 1990 or (2) the date on which the jury finds it appeared that the trespass and/or nuisance asserted would continue indefinitely.  5/17/05 Order at 15.

These rulings provided a key procedural foundation for the trial.  As this Court recognized, "whether all or some of the forms of interference with the use and enjoyment of Class properties asserted by Plaintiffs are capable of resolution in the class trial" was "critical to the scope and form" of the class trial.  5/17/05 Order at 3.  The Court's resolution of these issues was critical to both the evidence presented at the class-wide trial and its verdict, which is based, in substantial part, on the nuisance and damages issues.  *See* Verdict Form from Class-Wide Trial at 4-29.  Because appellate review now would provide substantial guidance concerning

what may appropriately be decided on a class-wide basis and thus how the case should proceed, such review would materially advance the ultimate termination of the litigation.

There is substantial room for concluding that these issues were not capable of resolution in a class-wide trial.  This Court acknowledged the danger that "to allow the jury to consider forms of interference that do not apply to the class as a whole would impermissibly invite it to determine nuisance liability based on a non-existent composite class member who had suffered all of the interferences claimed by different class members."  5/17/05 Order at 4 (citing *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 344-45 (4th Cir. 1998)).  Yet the Court held that "current human health risk arising from past or on-going exposure to plutonium released from Rocky Flats as a result of one or both of the Defendants' activities there" was capable of class-wide resolution "***notwithstanding that*** Class members may have been exposed to plutonium from Rocky Flats at different times, by different exposure pathways and to different degrees, and may have incurred varying magnitudes of increased health risk as a result."  5/17/05 Order at 5 (emphasis added).  These individualized differences among class members and others exist for exposure to other substances as well.

Concerning the risk of future harm, many individualized variables come into play, including whether the plaintiff lives on the property, the use to which the property has been or will be put by plaintiff or anyone else, the extent to which contamination remains, the proximity of the property to Rocky Flats, the direction of the property from Rocky Flats, when and how long the plaintiff lived on the property, and so forth.  The class is not bound together even in definition by anything related to threatened release or threats of future harm.  As plaintiffs conceded in their proposed trial plan, "By definition, the geographic scope of future incidents is uncertain."  Pls.' Trial Plan at 3.  In short, the exact interferences at issue were likely to vary

18

significantly from one class member to another, including by type, nature, cause, and extent. Thus, whether these alleged "interferences" should have been tried on a classwide basis is subject to reasonable dispute.

Whether the issue of compensatory damages for prospective invasions was properly capable of being determined as part of the class trial is also subject to reasonable differences of opinion. As a threshold matter, not all class members have affirmatively elected to pursue recovery for prospective damages in this action for which an easement would be placed upon their property. Defendants disagree that such a choice could be made for each class member by the class representatives and/or their counsel. In no case, to defendants' knowledge, has any court held a class trial for Restatement Section 930 damages *presuming* that all absent class members would make this election. 7/22/04 Tr. at 63-64 (Ex. 12).

Furthermore, whether a class member would suffer damages based on prospective invasions as of January 30, 1990 or the "complete and comparatively enduring" date, and if so, to what extent, depends on highly individualized issues. These include, among other things, the proximity of the property to Rocky Flats, the direction of the property from Rocky Flats, the Rocky Flats discount (if any) when sold to the class member, the Rocky Flats discount (if any) when sold by the class member, knowledge levels of the various participants in the relevant real estate transactions, timing of the transactions, and other specific factors in the transactions. Defendants respectfully submit that the decision to allow the jury to decide these damages in the class-wide trial improperly expands the rights of class members who suffered minimal (if any) damages and contradicts well-established law that damages be awarded to compensate for "the actual loss suffered." *E.g., Bd. of County Comm'rs. v. Slovek*, 723 P.2d 1309, 1314 (Colo. 1986).

There is a substantial ground for difference of opinion on the issue of whether damages could be tried on a class-wide basis.  Indeed, there is a substantial body of precedent supporting the conclusion that damages may not be susceptible to class treatment.  *Steering Comm. v. Exxon Mobile Corp.*, 461 F.3d 598, 604-05 (5th Cir. 2006); *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 307 (5th Cir. 2003); *Broussard*, 155 F.3d at 342-43.  That is especially true where, as here, the existence of damages has not been established for all class members.  *See Newton v Merrill Lynch*, 259 F.3d 154, 188 (3d Cir. 2001).

### 4. December 7, 2006 Order

This Court recently entered its Memorandum Opinion Regarding Jury Instructions dated December 7, 2006.  In that Opinion, this Court addressed the issues discussed above, including federal preemption (*see* 12/07/06 Order at 38 n.27, 46), the standards for a trespass claim (*id.* at 13) and a nuisance claim (*id.* at 48-50), the statute of limitations (*id.* at 46), and the method used to try the case on a class-wide basis (*passim*).  In light of the fact that this Court's most recent Opinion covered the issues discussed above, this Court ought to certify that order as well, for all the reasons previously stated.

## II. PLAINTIFFS OFFER NO LEGITIMATE OBJECTION TO AN INTERLOCUTORY APPEAL UNDER § 1292(B).

In Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Entry of Judgment, plaintiffs prematurely object to interlocutory review without even knowing which questions defendants would seek to appeal, claiming that appeals under § 1292(b) would involve "significant uncertainties and disadvantages."  *See* Pls.' Mem. at 4.  Plaintiffs basically set up and attempt to knock down a series of straw men – hypothetical "scenarios" that bear little relation to this case.  Plaintiffs swung in the dark, and missed.

Plaintiffs point to policies underlying the general rule that appeals may arise only from final judgments. Those policies include avoiding interference with trial proceedings, avoiding "piecemeal" appeals, and promoting efficient judicial administration. *See id.* (citing *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981). An immediate interlocutory appeal of the orders cited above would ***not*** interfere with trial proceedings that were completed last year.

Efficiency considerations actually cut in ***favor*** of taking interlocutory appeals. Take, for example, the issue of federal preemption. Plaintiffs propose that this Court deny an interlocutory appeal, calculate damages and resolve other difficult issues, and then enter judgment. Then, after all of that work is completed, defendants would appeal the issue of preemption – and that appeal, if successful, would render all of this Court's intervening work null. Congress enacted § 1292(b) for the purpose of avoiding such obvious inefficiencies. In any event, plaintiffs have certainly not explained why immediate appeal of a few controlling legal questions would be ***less*** efficient than district court rulings followed by a standard post-judgment appeal.

The bulk of plaintiffs' argument consists of speculating about, then criticizing, various "scenarios" that have little or nothing to do with this case. Plaintiffs envision "three potential approaches to securing appellate review under section 1292(b)." Pls.' Mem. 5. These approaches include: (1) the certification of ***all*** individual orders and rulings by this Court; (2) an attempt to certify a smaller subset of rulings in the hope that the Tenth Circuit would exercise pendent appellate jurisdiction over the rest; and (3) certification of discrete orders under § 1292(b), which plaintiffs dismiss as "piecemeal appellate review," Pls.' Mem. 9.

Plaintiffs' first two scenarios are irrelevant. Defendants do not seek certification of all orders, and do not seek an appeal of all orders through pendent jurisdiction. Instead, defendants seek interlocutory review of a small subset of orders that involved critical rulings on disputed

questions of law.  *See* 28 U.S.C. § 1292(b).  Immediate appeal of these issues would advance the ultimate termination of the litigation.  *Id.*

Plaintiffs argue that even if defendants prevail on appeal, "substantial further proceedings in [the District] Court would be almost certainly necessary."  *Id.* at 10.  Plaintiffs contend that even if defendants enjoyed "remarkable" success before the Tenth Circuit, "it would not likely result in the termination of the litigation."  *Id.*  According to plaintiffs, any further proceedings would then occur "under the cloud of their potential future reversal," because the district court would act without the appellate court's guidance on the "remaining, uncertified rulings."  *Id.*

There are numerous flaws in plaintiffs' approach.  ***First***, if defendants prevail on ***any*** issues before the Tenth Circuit, some further proceedings may be necessary.  This is true whether the appeal is interlocutory or is taken after judgment is entered.  Immediate interlocutory review of a few select legal questions – such as federal preemption – would be more efficient than the alternative.  Instead, plaintiffs would have this Court rule on all other issues (including the complex calculation and allocation of damages) only to have defendants appeal these legal questions at some indefinite future time.  But because the questions raised by defendants are controlling and "affect the fact or amount of damages awarded by the jury," *see* 2/17/06 Tr. at 10821, any rulings in favor of defendants would render all of this Court's further proceedings a nullity.  Congress passed § 1292(b) precisely to avoid such inefficiency.

***Second***, plaintiffs' suggestion that a successful interlocutory appeal "would not likely result in the termination of the litigation," Pls.' Mem. 10, misstates the applicable law.  Section 1292(b) asks whether an immediate appeal "***may*** materially ***advance*** the ultimate termination of the litigation."  28 U.S.C. § 1292(b) (emphasis added).  Courts have always understood that an issue "need not [] be dispositive to be a 'controlling question.'"  *Hadjipateras*, 290 F.2d at 702

n.10; *see also United States v. Woodbury*, 263 F.2d 784, 787 (9th Cir. 1959) (offering examples

of questions which would not be "dispositive of the lawsuit," but would "nevertheless be

considered as controlling" under § 1292(b)).  Indeed, a case cited elsewhere in plaintiffs' own

memorandum describes § 1292(b) as requiring only that a favorable resolution "must promise to

***speed up*** the litigation."  *Ahrenholz v. Bd. of Trustees*, 219 F.3d 674, 675 (7th Cir. 2000)

(emphasis in original); *see* Plfs.' Mem. 7 (citing *Ahrenholz*).  The issues need not be case-

dispositive.

    In fact, a sister district court recently recognized that section 1292 does not require

certainty.  An interlocutory appeal is appropriate in "cases in which extended and expensive

proceedings ***probably*** can be avoided by immediate final decision of controlling questions."  *In*

*re Quest Communications Int'l Inc. Securities Litigation*, Slip Op., 2006 WL 278279, *2 (D.

Colo. 2006) (emphasis added), attached as Exhibit 13 (quoting *Utah By and Through Dept. of*

*Health v. Kennecott Corp.*, 14 F.3d 1489,1495 (10th Cir. 1994)).  "The critical requirement is

that the question be one having the ***potential*** for substantially accelerating disposition of the

litigation."  *In re Grand Jury Proceedings June 1991*, 767 F.Supp. 222, 225 (D. Colo. 1991)

(emphasis added).  There is no requirement that a successful appeal ***must*** result in ***termination*** of

the litigation.

    ***Third***, plaintiffs express concern that further proceedings (taking place ***after*** defendants

are successful on interlocutory appeal) would proceed "under the cloud of their potential future

reversal."  Plfs.' Mem. 10.  However, that is no different than the situation plaintiffs face now.

Any rulings made by this Court might be challenged on appeal, whether or not the Court certifies

any questions under § 1292(b).  Furthermore, regardless of defendants' success before the Tenth

Circuit, final appellate decisions on certified legal questions will *decrease* the level of uncertainty faced by the district court as it enters its remaining orders.

Plaintiffs' remaining arguments consist of little more than conclusory statements regarding defendants' chances of success on appeal.  For example, plaintiffs essentially ask this Court to *assume* that defendants will not enjoy an "appellate hitting streak."  Pls.' Mem. 11.  But the question is not whether plaintiffs or the Court believe that one side or the other will "enjoy" a "hitting streak."  Predicting how the Tenth Circuit might rule on the merits is not part of the decision-making under section 1292.

Plaintiffs oppose the interlocutory appeal by applauding this Court's decisions, stating that they were "sound and well-reasoned," crafted with "analytical force" and "unusual care," and so on.  Plfs.' Mem. 11.  Yet the relevant question is whether an issue "involves a controlling question of law as to which there is substantial ground for difference of opinion," not whether plaintiffs agree with the decision.  28 U.S.C. § 1292(b).  The fact that the prevailing party is satisfied with a district court's decision is no reason to deny interlocutory appeal.  A prevailing party typically believes that the district court got it right.  If that were sufficient to oppose an interlocutory appeal, there would never be a basis for any interlocutory appeal.

## CONCLUSION

This Court should grant this motion and issue an order amending the following orders to certify them for interlocutory appeal under 28 U.S.C. § 1292: (1) the Order dated July 24, 2003; (2) the Order dated December 17, 2004; (3) the Order dated May 17, 2005; and (4) the Memorandum Opinion Regarding Jury Instructions dated December 7, 2006.

Dated:  January 22, 2007                                     Respectfully submitted,

s/ John E. Tangren
One of the Attorneys for the Defendants
David M. Bernick
John E. Tangren
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636
Phone:  312-861-2000
Fax:      312-861-2200

Joseph J. Bronesky
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Phone:  303-297-2900
Fax:      303-298-0940

Attorneys for ROCKWELL
INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2007 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses for the following:

Peter B. Nordberg, Esq.
BERGER & MONTAGUE P.C.
1622 Locust Street
Philadelphia, PA  19103
pnordberg@bm.net
kmarkert@bm.net


Gary B. Blum, Esq.
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206
blumg@s-d.com


s/ Courtney Biggins_____
Courtney Biggins (legal assistant)