# EXHIBIT 2



358 F.Supp.2d 1003                                                                                                   Page 1
358 F.Supp.2d 1003, 60 ERC 1017
**(Cite as: 358 F.Supp.2d 1003)**

Briefs and Other Related Documents
Cook v. Rockwell Intern. Corp.D.Colo.,2004.
United States District Court,D. Colorado.
Merilyn COOK, et al., Plaintiffs,
v.
ROCKWELL INTERNATIONAL
CORPORATION and The Dow Chemical
Company, Defendants.
**No. CIV.A.90-K-181.**

Dec. 17, 2004.

**Background:** Class action was brought by landowners against operators of nuclear weapons manufacturing plant, seeking to recover for damage to their property interests caused by releases of plutonium and other hazardous substances from plant. Parties submitted proposed instructions on landowners' trespass claim and related affirmative defenses.

**Holding:** The District Court, Kane, Senior District Judge, held that ongoing presence of plutonium on landowners' property was a continuing trespass under Colorado law, so that limitations period applicable to landowners' claim for damages did not begin to accrue until the tortious conduct ceased.

Ordered accordingly.
West Headnotes
**[1] Limitation of Actions 241 ⚯55(6)**

241 Limitation of Actions
    241II Computation of Period of Limitation
        241II(A) Accrual of Right of Action or Defense
            241k55 Torts
                241k55(6) k. Continuing Injury in General. Most Cited Cases
Ongoing presence of plutonium from nuclear weapons manufacturing plant on landowners' property was a continuing trespass under Colorado law, so that limitations period applicable to landowners' claim for damages could not begin to accrue until the tortious conduct ceased; presence of plutonium was not a permanent tort because it did not serve a socially beneficial purpose.

**[2] Limitation of Actions 241 ⚯55(6)**

241 Limitation of Actions
    241II Computation of Period of Limitation
        241II(A) Accrual of Right of Action or Defense
            241k55 Torts
                241k55(6) k. Continuing Injury in General. Most Cited Cases
Under Colorado law, a tort based on a property invasion that continues in fact is a continuing tort, for which new causes of action continue to accrue, unless two conditions are met: (1) the invasion will continue indefinitely; and (2) the invasion should continue indefinitely because it is integral to an enterprise vital to the development of the state.

**[3] Nuisance 279 ⚯50(4)**

279 Nuisance
    279I Private Nuisances
        279I(D) Actions for Damages
            279k50 Damages
                279k50(4) k. Prospective Damages. Most Cited Cases

**Trespass 386 ⚯51**

386 Trespass
    386II Actions
        386II(D) Damages
            386k51 k. Continuing Trespass to Real Property. Most Cited Cases
Under Colorado law, landowners whose property was allegedly contaminated by plutonium from nuclear weapons manufacturing plant could seek

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

358 F.Supp.2d 1003                                                                                                    Page 2
358 F.Supp.2d 1003, 60 ERC 1017
**(Cite as: 358 F.Supp.2d 1003)**

recovery of prospective damages from plant's operators; in order to recover such damages, landowners were required to prove liability in trespass or nuisance, and that the tortious invasion would continue indefinitely because there was no reason to expect its termination at any definite time in the future. Restatement (Second) of Torts § 930(3)(b).

**\*1003** Daniel R. Satriana, Jr., Hall & Evans, Bruce H. Deboskey, Steven William Kelly, Silver & Deboskey, P.C., David Evans Kreutzer, Attorney General's Office, Denver, CO, Merrill Davidoff, Jonathan Auerbach, David F. Sorensen, Bernadette M. Rappold, Eric L. Cramer, Stanley B. Siegel, Berger & Montague, P.C., Philadelphia, PA, Stanley M. Chesley, Waite, Schneider, Bayless & Chesley Co., L.P.A., Cincinnati, OH, John David Stoner, **\*1004**Christopher Thomas Reyna, Chimicles & Tikellis, L.L.P., Haverford, PA, R. Bruce Mcnew, Taylor, Gruver & Mcnew, P.A., Greenville, DE, Ronald Simon, Simon & Associates, Washington, DC, Kenneth A. Jacobsen, Kenneth A. Jacobsen Law Offices, Media, PA, for Plaintiffs.

Joseph J. Bronesky, Christopher Lane, Sherman & Howard, Louis W. Pribila, Midland, MI, Lester C. Houtz, Bartlit, Beck, Herman, Palenchar & Scott, Denver, CO, Timothy P. Brooks, John D. Aldock, Patrick M. Hanlon, Michael K. Isenman, Edward J. Naughton, Wendy S. White, Valerie E. Ross, Heather H. Anderson, Amy Horton, Shea & Gardner, Washington, DC, Mark S. Lillie, David M. Bernick, Martin Thomas Tully, Douglas J. Kurtenbach, S. Jonathan Silverman, Douglas M. Poland, Kirkland & Ellis, Chicago, IL, for Defendants.

### MEMORANDUM OPINION AND ORDER
KANE, Senior District Judge.

[1] The parties have submitted proposed instructions on Plaintiffs' trespass claim and related affirmative defenses. The most significant issue presented by these proposed instructions and the parties' respective objections thereto concerns Defendants' assertion of a statute of limitations defense premised on the trespass claim constituting a permanent rather than a continuing tort.

Defendants contend the alleged deposition of plutonium from the Rocky Flats Nuclear Weapons Plant on Plaintiffs' and other class members' properties (collectively "Class Properties") constitutes a permanent tort under Colorado law because this contamination is not abatable by reasonable measures and at a reasonable cost.[FN1] *See* Defs.' Proposed Trespass Instruction Nos. 1, 2. As a result, Defendants argue, the trespass claim accrued and the statute of limitations began to run on the claim when the class members knew or should have known both that plutonium had come to be located on their property and that this plutonium contamination resulted from Defendants' acts at Rocky Flats. *See* Defs.' Proposed Trespass Instruction No. 10 (Statute of Limitations-Trespass). Under Defendants' theory, both the question of whether the alleged plutonium contamination is reasonably abatable, so as to determine whether the trespass claim is permanent or not, and when the statute of limitations began to run on the trespass claim if it is deemed permanent, are questions to be presented to the jury.

> FN1. For background information on this case and its procedural history, see *Cook v. Rockwell Int'l Corp.*, 273 F.Supp.2d 1175, 1178-79 (D.Colo.2003).

Plaintiffs counter that the ongoing presence of plutonium on Class Properties constitutes a continuing trespass as a matter of Colorado law, with the result that "for statute of limitations purposes, the claim does not begin to accrue until the tortious conduct has ceased." *In re Hoery*, 64 P.3d 214, 218 (Colo.2003). If Plaintiffs are correct, then Defendants do not have a limitations defense to liability on the trespass claim because the statute of limitations has not yet begun to run on this claim.

The question of whether the alleged contamination of Class Properties is a permanent or continuing trespass under Colorado law turns on interpretation of *In re Hoery*, 64 P.3d 214, 218 (Colo.2003). In *Hoery*, the Colorado Supreme Court, answering two questions certified to it by the Tenth Circuit, held that the ongoing, unauthorized presence of toxic contaminants on the plaintiff's property constituted

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

358 F.Supp.2d 1003                                                                                                   Page 3
358 F.Supp.2d 1003, 60 ERC 1017
**(Cite as: 358 F.Supp.2d 1003)**

a continuing trespass under Colorado law. *Id.* at 222. In *Cook IX,* I relied on this holding to find that the continuing presence of plutonium on the Class Properties, if proven, would constitute a continuing trespass. **\*1005** *Cook v. Rockwell Int'l Corp. (Cook IX),* 273 F.Supp.2d 1175, 1211 (D.Colo.2003).

In response to further argument by Defendants on this point, I examined *Hoery* in more detail in my Order of April 14, 2004. I generally confirmed my initial reading of *Hoery* and conclusion based on it, but acknowledged certain language in the decision might be read otherwise and that the parties had not had an opportunity to brief the issue. 64 P.3d 214. As a result, I allowed the parties to address the question of whether the contamination at issue constituted a continuing or permanent tort under Colorado law in connection with their proffered instructions on the trespass claim and related affirmative defenses.

In this additional briefing and oral argument, Defendants argue that *Hoery* must be read as holding that a trespass or other property invasion is permanent for statute of limitations and other purposes if *either:* (1) the property invasion *will* continue indefinitely because it cannot be removed or otherwise abated by reasonable measures and at a reasonable cost; *or* (2) the property invasion is abatable but *should* continue indefinitely because it serves a socially beneficial purpose. Defendants further assert that to the extent any discussion in *Hoery* is inconsistent with their interpretation of Colorado law, it is only because the *Hoery* court did not fully address the permanent tort concept in light of the questions certified to it by the Tenth Circuit.

After further careful review of the *Hoery* decision, I find Defendants' contentions cannot be reconciled with the Colorado Supreme Court's analysis and holdings in that case. The relevant question certified to the Colorado court was precisely the question presented in this case: "Does the ongoing presence of ... toxic chemicals on plaintiff's property [allegedly caused by the defendant] constitute continuing trespass and/or nuisance under Colorado law." *Hoery,* 64 P.3d at 215. This question arose because the district court had dismissed Hoery's trespass and nuisance claims on statute of limitations grounds based on its findings that: (1) these claims were for permanent rather than continuing torts under both federal and Colorado law; [FN2] (2) these claims accrued no later than 1995, when Hoery knew or should have known that his property might be contaminated as a result of the defendant's activities; and (3) as a result of the foregoing, Hoery's claims were time-barred because Hoery asserted them after the limitations period, measured from the 1995 accrual date, had passed. *Id.* at 216-17; *Hoery v. United States,* No. 01-1100, Certification of State Law Questions at 3 (10th Cir. July 31, 2002); *Hoery v. United States,* No. 99-D-864, Order at 6-7, 9-10 & n. 3 (D.Colo. Jan. 3, 2001). On appeal, Hoery did not challenge the district court's determination that he knew or should have known of the contamination by 1995, but rather challenged the district court's predicate determination that his trespass and nuisance claims were permanent tort claims barred by the statute of limitations if not asserted within the limitations period measured from that date. *See Hoery,* 64 P.3d at 217; Appellant's Opening Br. at 12, *In re Hoery,* No. 01-1100 (10th Cir.). Thus, the very issue presented on appeal and certified to the Colorado Supreme Court was whether Hoery's claims were permanent or continuing torts for the purpose of deciding the defendant's statute of limitations defense.[FN3]

FN2. Federal law was relevant to this question because Hoery sued the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671-80.

FN3. Hoery asserted single claims for trespass and nuisance in his complaint, not separate claims for permanent trespass and nuisance and for continuing trespass and nuisance as Defendants suggest in asserting that Hoery's "permanent" claims were not presented to the Tenth Circuit or Colorado Supreme Court for review. *See* Complaint, *Hoery v. United States,* No. 99-D-864 (D.Colo.).

**\*1006** The Colorado Supreme Court's analysis of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

358 F.Supp.2d 1003                                                                                                        Page 4
358 F.Supp.2d 1003, 60 ERC 1017
**(Cite as: 358 F.Supp.2d 1003)**

the certified questions [FN4] reflects that it understood this was the issue presented. After first reviewing the underlying torts of trespass and nuisance, the Colorado court analyzed what it described as "the distinctions between 'continuing' and 'permanent' torts under Colorado law." *Hoery,* 64 P.3d at 217. Citing the Restatement (Second) of Torts, its 1907 decision in *Wright v. Ulrich,* 40 Colo. 437, 91 P. 43 (1907) and other authority, the court declared that a tortious property invasion constitutes a continuing tort "so long as the offending object remains and continues to cause the plaintiff harm." 64 P.3d at 218; *see id.* at 220. The court further stated that each continuance of the intrusion amounts to another wrong giving rise to a new cause of action, so that for statute of limitations purposes, the claim does not finally accrue until the tortious intrusion has ceased. *Id.* at 218.

> FN4. The second question certified to the Colorado court was whether the continued migration of toxic chemicals from the defendant's property to the plaintiff's property, allegedly caused by the defendant, constituted continuing trespass and nuisance under Colorado law. *See Hoery,* 64 P.3d at 215.

The Colorado Supreme Court declared that a permanent trespass or nuisance is an exception to this general rule for continuing intrusions, and is deemed to exist only in "those unique factual situations" in which a trespass or nuisance that continues in fact "would and should continue indefinitely." *Id.* at 218, 220, 222. This exception arises, the court explained, out of nearly one hundred year-old precedent concerning ongoing trespass and nuisance caused by irrigation ditches and railway lines that were treated as permanent property invasions because they arose from structures that were intended to be permanent and represented enterprises deemed vital to the future development of the state. *See id.* at 219-20. Thus, the court concluded, "Colorado law recognizes the concepts of continuing trespass and nuisance for those property invasions where a defendant fails to stop or remove continuing, harmful physical conditions that are wrongfully placed on the land.

The only exception is a factual situation-such as an irrigation ditch or a railway line-where the property invasion will and should continue indefinitely because defendants, with lawful authority, constructed a socially beneficial structure intended to be permanent." *Id.* at 220 (footnote omitted).

After this review and summary of Colorado law, the *Hoery* court turned to the certified questions of whether the ongoing presence and continuing migration of toxic chemicals each constitutes continuing trespass or nuisance under Colorado law. *Id.* at 220. Based on the cited Colorado precedent and authority from other jurisdictions, the court first rejected the defendant's contention that the ongoing presence or migration of contaminants onto another's property constituted a permanent rather than a continuing tort if the conduct causing the contamination had ceased. *See id.* at 220-21. It then applied the general rule and exception described above to conclude in succession that: the presence of contamination on the plaintiff's property constituted trespass and nuisance under Colorado law, *id.* at 222; these property invasions were continuing in nature; *id.,* and that the permanent tort exception for invasions that "will and should continue" did not apply because the record indicated the contamination could be removed and because "the continued contamination does not benefit the development of our state." **\*1007** *Id.* at 222-23. As a result, the *Hoery* court answered the questions posed to it by the Tenth Circuit in the affirmative, holding that the ongoing, unauthorized presence of contamination on another's property constitutes continuing trespass and nuisance under Colorado law. *Id.* at 223.

[2] The *Hoery* decision thus stands for the rule that a tort based on a property invasion that continues in fact is a continuing tort, for which new causes of action continue to accrue, unless two conditions are met: (1) the invasion will continue indefinitely; and (2) the invasion should continue indefinitely because it is integral to an enterprise vital to the development of the state. If these two conditions are met, then the property invasion is deemed a permanent tort in spite of its ongoing nature.

Defendants' contention that *Hoery's* two conditions

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

358 F.Supp.2d 1003                                                                                                                        Page 5

358 F.Supp.2d 1003, 60 ERC 1017
**(Cite as: 358 F.Supp.2d 1003)**

for establishing a permanent trespass or nuisance should be stated in the disjunctive, so that proof that an invasion will continue indefinitely is enough in itself for a permanent tort to be found, is not persuasive given the *Hoery* court's statement not once but three times that the permanent tort exception only applies to invasions that "will *and* should continue indefinitely." *Id.* at 219, 220, 222 (emphasis added). The only time the court stated these conditions in the disjunctive is when, after examining the record before it, it found there was no indication the contamination at issue met either condition. *Id.* at 222 ("The record does not indicate that ... the ongoing presence of toxic pollution plumes under Hoery's residential property will or should continue indefinitely."). This statement is in no way inconsistent with the *Hoery* court's statement, in the very same paragraph and elsewhere in the opinion, that the permanent tort exception only applies to continuing property invasions that both "will and should continue."
That both conditions must be met for an ongoing invasion to be deemed permanent is further underscored by Justice Kourlis' dissent, which criticizes the majority's decision precisely because it made the permanent tort determination dependent in part on an evaluation of whether the invasion " should continue" because of its perceived social benefits. *See id.* at 229 (Kourlis, J., dissenting).

Defendants assert the Colorado Supreme Court's decisions in *Wright v. Ulrich,* 40 Colo. 437, 91 P. 43 (1907), and *Middelkamp v. Bessemer Irrigating Ditch Co.,* 46 Colo. 102, 103 P. 280 (1909), support their proposed rule that the ability to abate the alleged property invasion through reasonable measures and at a reasonable cost determines whether the invasion is continuing or permanent for statute of limitations purposes. They further cite as support for this proposition the *Hoery* court's statements that a tortfeasor's "failure to remove" a thing tortiously placed on the land constitutes a continuing tort and that the continuing tort designation creates an incentive for the tortfeasor to take corrective action. *See* 64 P.3d at 218, 220, 223. These statements, Defendants argue, demonstrate the *Hoery* court assumed as a threshold matter that a continuing property invasion was one that could in fact be removed or abated, and thus

necessitates a finding that an invasion that cannot be reasonably abated is a permanent tort as a matter of Colorado law.[FN5]

> FN5. Defendants also cite *Arcade Water District v. United States,* 940 F.2d 1265 (9th Cir.1991), and certain other cases cited in *Hoery* as evidence that the Colorado court intended non-abatable property invasions to be deemed permanent without regard to the social benefit component of the *Hoery* test. The *Hoery* court, however, cited these cases in support of its separate ruling that an ongoing invasion can be deemed continuing even if the conduct causing it has ceased. *See* 64 P.3d at 221. There is no indication in *Hoery* that the Colorado Supreme Court adopted or approved these cases' discussion of the abatability question.

**\*1008** That *Wright* and *Middelkamp* might be read to support all or some of Defendants' position independent of the *Hoery* decision is immaterial to my determination of Colorado law on this issue. The *Hoery* court carefully examined both of these decisions and other historic Colorado cases in determining whether ongoing contamination constituted a continuing or permanent tort for statute of limitations purposes under Colorado law. Following the thorough and comprehensive analysis described above, the court stated its conclusion that in order to constitute a permanent tort under Colorado law, an ongoing property invasion must be of a nature that both will continue indefinitely and should continue indefinitely because of the social benefit conferred. It is simply not credible given this analysis and conclusion that the *Hoery* court assumed without stating that a permanent tort could be demonstrated solely by showing that an ongoing invasion would continue indefinitely because it could not be abated. There is also no support in this decision for Defendants' further contention that an invasion that is abatable but only through unreasonable measures or at unreasonable cost must be deemed a permanent tort under Colorado law.[FN6]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

358 F.Supp.2d 1003                                                                                                                 Page 6
358 F.Supp.2d 1003, 60 ERC 1017
**(Cite as: 358 F.Supp.2d 1003)**

FN6. I also note that Defendants improperly assume that whether a property invasion is abatable and whether it will continue indefinitely are equivalent and interchangeable concepts. That an invasion can be abated, even with reasonable measures and at a reasonable cost, does not necessarily mean that it will be abated. *See* Order of April 14, 2004 at 15 n. 12. As noted by Professor McCormick in a seminal law review article, this circumstance and others sometimes cited as all-sufficient indicia of permanency are properly viewed as evidence relevant to the question of whether the invasion will continue indefinitely, and are not necessarily determinative of it. *See* Charles T. McCormick, *Damages for Anticipated Injury to Land*, 37 Harv. L.Rev. 574, 596 (1924).

Defendants next argue this reading of *Hoery* must be incorrect because it would put Colorado out of step with the "basic rule," purportedly approved by courts and commentators alike, that a property invasion is deemed a continuing tort for statute of limitations purposes "only when the invasion is abatable-that is only if the defendants are able to remove the harmful condition." Defs.' Response to Pls.' Br. on Statute of Limitations at 2 (Aug. 18, 2004). It is axiomatic, however, that the Colorado Supreme Court may adopt whatever rule it believes is consistent with Colorado law and public policy in this instance. As described above, the Colorado court has clearly stated that proof that the property invasion is ongoing renders it a continuing tort *unless* the defendant can demonstrate both that it "will continue indefinitely," which it might do by proving the invasion was not capable of abatement, *and* that the invasion serves a socially beneficial purpose. I am not authorized to second-guess this judgment.

Second, Defendants are incorrect in asserting that the two-part test declared by the *Hoery* court represents an unprecedented departure from a generally accepted rule for distinguishing between continuing and permanent torts based on whether the invasion is capable of abatement. In fact, no such generally accepted rule exists. As noted by Justice Kourlis in her dissenting opinion, the question of how to differentiate between permanent and continuing trespasses and nuisances has vexed and perplexed the Colorado Supreme Court and other courts for over a century. 64 P.3d at 224 (Kourlis, J.). This has led to multiple, conflicting lines of authority among and even within jurisdictions on how to distinguish between the two categories of property invasions when an invasion *1009 is ongoing. *See, e.g., id.* at 224 (Kourlis, J., dissenting). As a result, the consistent conclusion of distinguished commentators who have attempted to find order in this area of law is that there is no general rule for distinguishing between continuing and permanent property invasions for statute of limitations and other purposes. *See, e.g.,* W. Page Keeton *et al.,* Prosser and Keeton on the Law of Torts § 13, at 84 (5th ed.1984) (courts are "not in accord in dealing with this question"); 1 Fowler V. Harper *et al.,* The Law of Torts § 1.7, at 1:32 (3rd ed. 1996 & Supp.2004) (tests for distinction "are clouded by doubt and confusion."); 1 Dan B. Dobbs, The Law of Torts § 57, at 115 (2001) ( " conflicting decisions and factual variety make statement of a general rule perilous"); Charles T. McCormick, *Damages for Anticipated Injury to Land,* 37 Harv. L.Rev. 574, 580 (1924) (law distinguishing between continuing and permanent property invasions is one of "irreconcilable contradiction and hopeless confusion").

It is true that some courts, perhaps in an attempt to bring clarity to an otherwise clouded field, at times cite the ability to abate the alleged property invasion as the determinative factor in deciding whether the invasion is permanent or continuing for statute of limitations and/or other purposes. *See, e.g., Mangini v. Aerojet-General Corp.,* 230 Cal.App.3d 1125, 1148, 281 Cal.Rptr. 827 (Cal.Ct.App.1991). This practice is subject to criticism on a number of grounds, however, *see Schneider Nat'l Carriers, Inc. v. Bates,* 147 S.W.3d 264, 284-88 (Tex.2004); *see also* McCormick, 37 Harv. L.Rev. at 591-96 (criticizing reliance on circumstances such as abatability "as all-sufficient indicia of permanency"),[FN7] and in any event is not followed by other courts that, like the Colorado

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

358 F.Supp.2d 1003                                                                                      Page 7
358 F.Supp.2d 1003, 60 ERC 1017
**(Cite as: 358 F.Supp.2d 1003)**

Supreme Court in *Hoery,* focus on the ongoing nature of the property invasion in determining when the cause of action accrues for statute of limitations purposes.

FN7. *See infra* note 6.

The New York state courts, for example, have held an encroaching structure is a continuing trespass giving rise to successive causes of action for purposes of applying the statute of limitations. *509 Sixth Ave. Corp. v. New York City Transit Auth.,* 15 N.Y.2d 48, 255 N.Y.S.2d 89, 203 N.E.2d 486, 488 (1964); *Fifty-Five Corp. v. 10 West 66th St. Corp.,* 220 A.D.2d 278, 632 N.Y.S.2d 106, 107 (N.Y.App.Div.1995). That the invasion is permanent because it cannot be abated or for some other reason is irrelevant to this determination. *See 509 Sixth Ave. Corp.,* 255 N.Y.S.2d 89, 203 N.E.2d at 488 (holding encroaching subway tunnel to be continuing trespass because "although the nature of the structure may be permanent, the nature of the trespass is continuing"); *Fifty-Five Corp.,* 632 N.Y.S.2d at 107 (permanent excavation and backfill on plaintiff's property constituted continuing trespass).

Similarly, the federal district courts in Washington, following a decision by the Washington Supreme Court, have consistently held that claims for trespass and nuisance based on ongoing soil contamination are continuing torts and that "such claims are not barred by the statute of limitations so long as the intruding substance remains in the ground." *See, e.g., In re ASARCO/Vashon-Maury Island Litig.,* 2001 U.S. Dist. LEXIS 7154, at *12-15 (summarizing cases and citing *Bradley v. ASARCO,* 104 Wash.2d 677, 709 P.2d 782, 791-92 (1985)). This, of course, is the same general rule stated by the *Hoery* court for determining whether alleged contamination is a continuing trespass or nuisance under Colorado law. *See* 64 P.3d at 218, 220, 222.

The Georgia Supreme Court, relying on the Restatement (Second) of Torts, has **\*1010** likewise held that the statute of limitations for an ongoing or recurring property invasion that is likely to continue indefinitely does not preclude recovery for any damages other than those occurring outside the limitations period measured from the filing of suit. *Cox v. Cambridge Square Towne Houses, Inc.,* 239 Ga. 127, 236 S.E.2d 73, 75 (1977). This result is fundamentally at odds with Defendants' proposed non-abatement rule, which would hold a non-abatable and hence indefinitely continuing property invasion a permanent tort barred in its entirety if plaintiffs knew or should have known of its harm and its cause outside of the limitations period.

The *Cox* case and the other examples cited above demonstrate there is no merit to Defendants' contention that the *Hoery* decision is so out-of-step with general jurisprudence in this area that it cannot mean what it says and must be interpreted as supporting Defendants' proposed rule that an ongoing trespass or nuisance is a permanent rather than a continuing tort for statute of limitations purposes if it is not reasonably (or otherwise) abatable.

The Georgia Supreme Court's decision in *Cox* addresses a related issue raised by Defendants, which is whether Plaintiffs may recover prospective damages, that is any decrease in the value of Class Properties caused by Defendants' tortious acts, if the allegedly ongoing contamination of these properties is a continuing trespass or nuisance for statute of limitations purposes. I previously addressed this issue in *Cook IX,* but will expound on my analysis here for Defendants' benefit.

As noted in *Cook IX* and elsewhere, the classification of an ongoing trespass or nuisance as "continuing" or "permanent" has historically determined both when the cause of action accrues for statute of limitations purposes and what damages may be recovered. *See, e.g., Cook IX,* 273 F.Supp.2d at 1210-11; *Cox,* 236 S.E.2d at 74; Harper, Law of Torts § 1.7, at 1:31-33; Dobbs, Law of Torts § 57, at 115 & n. 1. In cases in which the ongoing invasion was deemed to be a continuing trespass or nuisance, the courts generally held a new cause of action accrued each day the invasion persisted and allowed recovery for all harms occurring with the relevant limitations period up to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

358 F.Supp.2d 1003                                                                                                         Page 8
358 F.Supp.2d 1003, 60 ERC 1017
**(Cite as: 358 F.Supp.2d 1003)**

the date of suit or trial. *See, e.g.,* Dobbs, Law of Torts § 57, at 116; Harper, Law of Torts § 1.7, at 1:31; *see also Cook IX,* 273 F.Supp.2d at 1210-11 (describing damages available under traditional rule). In general, however, the courts declined to award damages for prospective or anticipated harm, usually measured by the diminution in property value caused by the prospect of the invasion continuing into the future,[FN8] because they were unwilling to presume that the trespass or nuisance would continue indefinitely. *See, e.g., Spaulding v. Cameron,* 38 Cal.2d 265, 239 P.2d 625, 627 (1952) (Traynor, J.); Dobbs, Law of Torts § 57, at 116. Instead, the courts allowed injured parties to bring a succession of suits for past damages occurring within the most recent limitations period as long as the invasion persisted. *Cook IX,* 273 F.Supp.2d at 1210-11; *Spaulding,* 239 P.2d at 627; Dobbs, Law of Torts § 57, at 116; Harper, Law of Torts § 1.7, at 1:31.

>   FN8. Diminution in property value allows the injured party to recover the anticipated loss it will incur in the future due to the property being less saleable than it would be in the absence of the trespass or nuisance. *See, e.g.,* McCormick, 37 Harv. L.Rev. at 583; Restatement (Second) of Torts § 930 cmt. b (1979).

Application of this continuing tort rule sometimes led to what courts deemed undesirable results, such as subjecting socially beneficial but intrusive enterprises to ongoing liability for tortious property invasions and/or barring injured parties from **\*1011** being fully compensated for trespasses and nuisances that for whatever reason were likely to continue indefinitely. In an attempt to avoid these results, courts developed and applied the concept of "permanent" trespass and nuisance to certain kinds of ongoing property invasions. *See Spaulding,* 239 P.2d at 627; McCormick, 37 Harv. L.Rev. at 584-85, 589-90.[FN9] The cause of action for property invasions deemed "permanent" under this concept generally are held to accrue upon the initial trespass or nuisance, and all damages, past and prospective, must be recovered in a single suit brought within the limitations period following the claim's accrual. *See, e.g.,* Harper, Law of Torts § 1.7, at 1:32-33; Dobbs, Law of Torts § 57, at 115; Prosser & Keeton § 13, at 84.

>   FN9. Much of the early case law and commentary on this subject concerned ongoing or recurring nuisances deemed permanent, but this concept was subsequently extended to ongoing trespasses as well. *See, e.g.,* Harper, Law of Torts § 1.7, at 1:32-33; Dobbs, Law of Torts § 57. Colorado law holds the law of continuing nuisances and continuing trespasses to be the same, *Wright,* 91 P. at 44, and the Colorado Supreme Court made no distinction in *Hoery* between the permanent tort exception as applied to ongoing nuisances and trespasses. *See* 64 P.3d at 219-20.

The most common and accepted application of the permanent trespass and nuisance concept to ongoing intrusions has been in cases in which the intrusion is necessary to the operation of a public utility or other socially beneficial structure intended to be permanent. Harper, Law of Torts § 1.7, at 1:33 (quoting *Spaulding,* 239 P.2d at 627); Dobbs, Law of Torts § 57, at 116; Charles T. McCormick, Handbook on the Law of Damages § 127, at 506 (1935). This application is reflected in the *Hoery* court's definition of a permanent trespass or nuisance as one that both will continue and should continue because it is integral to an enterprise vital to the development of the state. *See Hoery,* 64 P.3d at 220.

Application of the "permanent" invasion rule outside this context, however, led courts into a maze of "irreconcilable contradiction and hopeless confusion" as the various tests for "permanency" advanced by different courts, including Defendants' preferred non-abatability test, frequently proved "too vague, and too difficult to apply in advance, to make them satisfactory guides to a litigant or a counselor, however convenient they may be as formulae to place before a jury." McCormick, 37 Harv. L.Rev. at 592; *see* Harper, Law of Torts § 1.7, at 1:33-34; Prosser & Keeton § 13, at 84; *see*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*also* Dobbs, Law of Torts § 57, at 116-18 (classification is partly a matter of fact and partly of policy, with result that "it is not easy to find harmony in case results"). The high stakes of the determination, particularly with respect to application of the statute of limitations and recovery of prospective damages, also strained the courts and placed the parties at risk of serious injustice if they guessed wrong on whether a particular ongoing trespass or nuisance would ultimately be deemed continuing or permanent.[FN10]

> FN10. As Justice Traynor famously observed:
> To attempt categorically to classify ... a nuisance as either permanent or not may lead to serious injustice to one or the other of the parties. Thus, if the plaintiff assumes it is not permanent and sues only for past damages, he may be met with the plea of res judicata in a later action for additional injury if the court then decides the nuisance was permanent in character from its inception. Similarly, if the initial injury is slight and the plaintiff delays suit until he has suffered substantial damage and the court then determines that the nuisance was permanent, the defendant may be able to raise the defense that the statute of limitations ran from the time of the initial injury. On the other hand, if the defendant is willing and able to abate the nuisance, it is unfair to award damages on the theory that it will continue.
> *Spaulding v. Cameron,* 239 P.2d at 628 (citations omitted); *see also* McCormick, 37 Harv. L.Rev. at 591-93 ("the ' permanent nuisance' theory, when coupled with a rule of thumb definition of ' permanent' and Procrustean requirement that a single action be brought.... presents a dilemma to the plaintiff, with unnecessarily drastic penalties for guessing wrong.").

**\*1012** In light of these practical difficulties and the " uncertain and illogical nature" of the permanent and continuing tort distinctions being made by the courts as a result, *see* Prosser & Keeton § 13, at 84, influential commentators suggested over time that the courts move away from the all-in-one concept for continuing and permanent property invasions in favor of an approach that recognized ongoing property invasions as continuing torts while also granting the party injured by such invasions the option, if it appeared the invasion would continue indefinitely, of recovering all damages in a single suit, including prospective or "permanent" damages measured by the diminution in value of the property caused by the prospect of the invasion's continuance. *See, e.g.,* Harper, Law of Torts § 1.7, at 1:34-35; Prosser & Keeton § 13, at 84; McCormick, Law of Damages § 127, at 511-14; McCormick, 37 Harv. L.Rev. at 596-601; 4 J.G. Sutherland, A Treatise on the Law of Damages § 1046, at 3874 (4th ed.1916). This approach was adopted by the authors of the Restatement and is reflected in sections 161 and 930 of the Restatement (Second) of Torts.[FN11] *See id.,* §§ 161, 930; *Cox,* 236 S.E.2d at 74. A number of courts have adopted and applied the Restatement approach to allow plaintiffs injured by continuing invasions to elect to recover prospective damages, *see, e.g., Cox,* 236 S.E.2d at 74-75 (finding "Restatement's approach to dealing with continuing nuisances is both comprehensive and workable"); *Shults v. Champion Int'l Corp.,* 821 F.Supp. 517, 519-20 (E.D.Tenn.1992) (applying North Carolina law); *see also Spaulding,* 239 P.2d at 628 (in doubtful cases, plaintiff has right to elect whether to treat invasion as permanent or not), and it has been applied by federal courts predicting how a state supreme court would rule if presented with the question. *See Reynolds Metals Co. v. Wand,* 308 F.2d 504, 510 (9th Cir.1962) (applying Oregon law).

> FN11. Consistent with the historic origin of the "permanent" trespass and nuisance concept, the Restatement also recognizes that a different rule may apply when the enterprise causing the trespass or nuisance is a public utility or provides an essential public service. Restatement (Second) of Torts § 930(2) & cmt. c.

Consistent with the Restatement approach, the Supreme Court has sanctioned the award of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

358 F.Supp.2d 1003                                                                                                                Page 10
358 F.Supp.2d 1003, 60 ERC 1017
**(Cite as: 358 F.Supp.2d 1003)**

diminution of property value (prospective damages) for an invasion it deemed continuing for statute of limitations purposes because limiting the plaintiff's remedy to that available for a continuing nuisance, *i.e.,* past damages recoverable through a succession of actions, "would be so onerous as to deny to [the plaintiff] adequate relief." *See City of Harrisonville, Mo. v. W.S. Dickey Clay Mfg. Co.,* 289 U.S. 334, 340, 53 S.Ct. 602, 77 L.Ed. 1208 (1933) (applying Missouri law). Other courts have similarly recognized that a trespass or nuisance may be classified and treated as continuing for statute of limitations purposes and permanent for purposes of awarding prospective damages. *See, e.g., Beatty v. Washington Metro. Area Transit Auth.,* 860 F.2d 1117, 1125 (D.C.Cir.1988); *Shaw v. City of Rupert,* 106 Idaho 526, 681 P.2d 1001, 1003 (1984) (that precedent might deem invasion to be continuing for statute of limitations purposes did not preclude plaintiff from recovering diminution in property value if ***1013** invasion probably would continue indefinitely).

After examining the Restatement and other authority, I predicted in *Cook IX* that the Colorado Supreme Court would follow the Restatement approach if presented with the question of whether prospective damages may be recovered in a continuing trespass and nuisance case such as this. *See Cook IX,* 273 F.Supp.2d at 1211. This conclusion is consistent with the Colorado Supreme Court's citation of the Restatement in deciding what constitutes a continuing trespass and nuisance under Colorado law, *see Hoery,* 64 P.3d at 218, and its adoption of a flexible approach to determining the appropriate measure of damages for injury to real property. *See Cook IX,* 273 F.Supp.2d at 1210, 1211 (discussing *Board of County Comm'rs v. Slovek,* 723 P.2d 1309 (Colo.1986)). I further note there is precedent for this approach in Colorado, as the Colorado Court of Appeals has previously allowed diminution in property value to be awarded in a case in which the trespass was deemed a continuing tort for statute of limitations purposes. *See Consol. Home Supply Ditch & Reservoir Co. v. Hamlin,* 6 Colo.App. 341, 40 P. 582, 584, 587 (1894) (affirming trial court holding that action was for continuing nuisance and hence was not barred by statute of limitations, while also approving award of diminution in property's value as a result of the nuisance). Accordingly, I reiterate my decision in *Cook IX* that Plaintiffs, upon proof of liability and compliance with the requirements of section 930 of the Restatement, may recover prospective damages in this action for continuing trespass and nuisance. [FN12]

> FN12. In so holding, I am aware that the *Hoery* decision states in a footnote that damages for continuing torts are limited to injuries sustained up to the time of suit, 64 P.3d at 219 n. 7, but note this statement is dicta as the issue of the damages recoverable by a party injured by a continuing property invasion was not presented to the Colorado Supreme Court for decision or otherwise discussed by it.

[3] In conclusion, for the reasons stated above, I hold the alleged presence of plutonium from Rocky Flats on Plaintiffs' and class members' properties constitutes a continuing tort under Colorado law because, like the contamination at issue in *Hoery,* it allegedly remains on the property and, even if it will remain there indefinitely, is not a permanent tort because it does not serve a socially beneficial purpose. *See Hoery,* 64 P.3d at 223 ("continued contamination does not benefit the development of our state" and "no sound public policy support[s] the classification of contamination from the release of toxic chemicals as a permanent property invasion."). As permitted by Restatement section 930, Plaintiffs may elect, and have elected, to seek recovery of prospective damages for this continuing invasion, which is "the decrease in the value of the land caused by the prospect of the continuance of the invasion measured at the time when the injurious situation became complete and comparatively enduring." Restatement (Second) of Torts, § 930(3)(b). In order to recover prospective damages under this authority, Plaintiffs must prove not only liability in trespass or nuisance, but also that the tortious invasion "will probably continue indefinitely" because "there is no reason to expect its termination at any definite time in the future." *Id.,* § 930 cmt. b. Defendants may defeat this showing, and thus preclude Plaintiffs from

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

358 F.Supp.2d 1003                                                                                              Page 11

358 F.Supp.2d 1003, 60 ERC 1017
**(Cite as: 358 F.Supp.2d 1003)**

recovering prospective damages, by demonstrating that they or others have abated or remedied the trespass or nuisance or are about to do so. *See id.* A judgment awarding damages for prospective invasions, if satisfied, will confer an easement to continue the invasions thus **\*1014** paid for in advance. Restatement (Second) of Torts § 930 cmt. b.FN13

> FN13. The parties' additional arguments regarding the damages that may be recovered in this action and the proper jury instructions on this subject will be decided separately.

IT IS SO ORDERED.

D.Colo.,2004.
Cook v. Rockwell Intern. Corp.
358 F.Supp.2d 1003, 60 ERC 1017

Briefs and Other Related Documents (Back to top)

• 2006 WL 3899351 () Declaration of Wayne Hunsperger (May 2, 2006)
• 2006 WL 622569 (Trial Motion, Memorandum and Affidavit) Defendants' Reply in Support of Their Motion to Preserve Jury Notes (Mar. 6, 2006) Original Image of this Document (PDF)
• 2006 WL 622568 (Trial Motion, Memorandum and Affidavit) Defendants' Reply in Support of their Motion to Preserve Jury Notes (Mar. 3, 2006) Original Image of this Document (PDF)
• 2006 WL 622567 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Response to Defendants' Motion to Preserve Jury Notes (Feb. 24, 2006) Original Image of this Document (PDF)
• 2006 WL 622566 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to Preserve Jury Notes (Feb. 16, 2006) Original Image of this Document (PDF)
• 2006 WL 399316 (Verdict, Agreement and Settlement) Jury Verdict Form (Feb. 14, 2006) Original Image of this Document (PDF)
• 2006 WL 695690 (Verdict and Settlement Summary) (Feb. 14, 2006)
• 2006 WL 622713 (Verdict, Agreement and Settlement) Jury Verdict Form (Feb. 13, 2006)

Original Image of this Document (PDF)
• 2006 WL 622565 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Defendants' ""Emergency Motion" (Jan. 25, 2006) Original Image of this Document (PDF)
• 2006 WL 622564 (Trial Motion, Memorandum and Affidavit) Defendants' Motion Regarding the Jury's Note with Respect to Jury Verdict Question 2, and Request That, If the Court is to Provide a New Definition of ""intentionally" Based on the Colorado Supreme Court's Decision in Hoery, it Provide a Definition that Comes Verbatim from Hoery (Jan. 24, 2006) Original Image of this Document (PDF)
• 2006 WL 622563 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to Clarify the Record Regarding Certain Exhibits (Jan. 23, 2006) Original Image of this Document (PDF)
• 2006 WL 622712 (Verdict, Agreement and Settlement) Stipulation to Clarify the Record Regarding Certain Exhibits (Jan. 23, 2006) Original Image of this Document (PDF)
• 2006 WL 622562 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Defendants' Renewed Motion for Judgment As A Matter of Law (Jan. 20, 2006) Original Image of this Document (PDF)
• 2006 WL 393178 (Trial Motion, Memorandum and Affidavit) Defendants' Motion for Clarification and Defendants' Statement Regarding the Court's Ruling Relating to Jury Instruction No. 3.5 (Jan. 19, 2006) Original Image of this Document (PDF)
• 2006 WL 622560 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to Strike Portion of Jury Instruction No 3.5 (Jan. 19, 2006) Original Image of this Document (PDF)
• 2006 WL 622561 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Defendants' Overnight Motions Re Jury Instructions (Jan. 19, 2006) Original Image of this Document (PDF)
• 2006 WL 622559 (Trial Motion, Memorandum and Affidavit) Defendants' Reply in Support of Their Proposed Instruction on Corporate Retention of Expert Witnesses (Jan. 18, 2006) Original Image of this Document (PDF)
• 2006 WL 393177 (Trial Motion, Memorandum and Affidavit) Defendants' Renewed Motion for Judgment as a Matter of Law (Jan. 17, 2006) Original Image of this Document (PDF)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

358 F.Supp.2d 1003                                                                                            Page 12

358 F.Supp.2d 1003, 60 ERC 1017
**(Cite as: 358 F.Supp.2d 1003)**

- 2006 WL 403027 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiffs' Motion for Judgment as a Matter of Law (Jan. 17, 2006) Original Image of this Document (PDF)
- 2006 WL 403028 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to Strike Selected Testimony of Wayne Hunsperger, John Radke, and Thomas Cochran (Jan. 17, 2006) Original Image of this Document (PDF)
- 2006 WL 622553 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to Clarify the Record Regarding Certain Exhibits, and Motion to Admit Exhibits (Jan. 17, 2006) Original Image of this Document (PDF)
- 2006 WL 622554 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiffs' Motion to Strike the Testimony of Dr. John Till (Jan. 17, 2006) Original Image of this Document (PDF)
- 2006 WL 622555 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply in Support of Motion for Judgment As A Matter of Law (Jan. 17, 2006) Original Image of this Document (PDF)
- 2006 WL 622556 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiffs' January 17, 2006 Motion to Clarify the Record Regarding Certain Exhibits, and Motion to Admit Exhibits (Jan. 17, 2006) Original Image of this Document (PDF)
- 2006 WL 622557 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Statement Re: Defendants' Motion to Strike Selected Testimony of Wayne Hunsperger, John Radke, and Thomas Cochran (Jan. 17, 2006) Original Image of this Document (PDF)
- 2006 WL 622558 (Trial Motion, Memorandum and Affidavit) Defendants' Renewed Motion for Judgment As A Matter of Law (Jan. 17, 2006) Original Image of this Document (PDF)
- 2006 WL 622552 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Supplement to Plaintiffs' Motion to Strike the Testimony of Dr. John Till Regarding the ""Bulldozer Theory" (Jan. 15, 2006) Original Image of this Document (PDF)
- 2006 WL 393176 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion for Judgment as a Matter of Law (Jan. 14, 2006) Original Image of this Document (PDF)
- 2006 WL 622551 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to Strike the Testimony of Dr. John Till Regarding the ""Bulldozer Theory" (Jan. 14, 2006) Original Image of this Document (PDF)
- 2006 WL 622711 (Verdict, Agreement and Settlement) Parties' Stipulated Agreement Regarding Admission of Exhibits (Jan. 12, 2006) Original Image of this Document (PDF)
- 2006 WL 393175 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Defendants' Motion for Judgment as a Matter of Law (Jan. 11, 2006) Original Image of this Document (PDF)
- 2006 WL 399313 (Verdict, Agreement and Settlement) Defendants' Proposed Jury Verdict Forms (Jan. 11, 2006) Original Image of this Document (PDF)
- 2006 WL 399314 (Verdict, Agreement and Settlement) Defendants' Proposed Verdict Form for the Dow Chemical Company (Jan. 11, 2006) Original Image of this Document (PDF)
- 2006 WL 399315 (Verdict, Agreement and Settlement) Defendants' Proposed Verdict Form for Rockwell International Corporation (Jan. 11, 2006) Original Image of this Document (PDF)
- 2006 WL 622550 (Trial Motion, Memorandum and Affidavit) Defendants' Motion for Clarification and Other Relief%n1%n (Jan. 11, 2006) Original Image of this Document (PDF)
- 2006 WL 622549 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Response to Defendants' Motion to Preclude Rebuttal Witnesses (Jan. 10, 2006) Original Image of this Document (PDF)
- 2006 WL 403023 (Verdict, Agreement and Settlement) Verdict Form (Jan. 9, 2006) Original Image of this Document (PDF)
- 2006 WL 403024 (Verdict, Agreement and Settlement) Plaintiffs' Proposed Verdict Form (Jan. 9, 2006) Original Image of this Document (PDF)
- 2006 WL 451763 () Declaration of M. Laurentius Marais (Jan. 9, 2006) Original Image of this Document (PDF)
- 2006 WL 622548 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to Preclude Rebuttal Witnesses (Jan. 9, 2006) Original Image of this Document (PDF)
- 2006 WL 622709 (Verdict, Agreement and Settlement) Plaintiffs' Proposed Verdict Form (Jan. 9, 2006) Original Image of this Document (PDF)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

358 F.Supp.2d 1003                                                                                                       Page 13

358 F.Supp.2d 1003, 60 ERC 1017
**(Cite as: 358 F.Supp.2d 1003)**

• 2006 WL 622710 (Verdict, Agreement and Settlement) Verdict Form (Jan. 9, 2006) Original Image of this Document (PDF)
• 2006 WL 639171 () Proffer of Testimony of Nurse Who Participated in Rocky Flats Community Needs Assessment Final Report - Either. Judy Barton, RN, PhD. or Lauren Clark, RN, PhD. (Jan. 9, 2006)
• 2006 WL 639172 () Expert Report (Jan. 9, 2006)
• 2006 WL 668570 (Trial Motion, Memorandum and Affidavit) Defendants' Reply in Support of Defendants' Motion for Mistrial or, in the Alternative, Defendants' Proposed Instructions (Jan. 6, 2006) Original Image of this Document (PDF)
• 2006 WL 668568 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Defendants' Motion for Reconsideration of Order to Exclude the Testimony of Paul G. Voillequ%21e (Jan. 5, 2006) Original Image of this Document (PDF)
• 2006 WL 668569 (Trial Motion, Memorandum and Affidavit) Reply to Defendants' Response to Plaintiffs' Motion to Exclude the Expert Testimony of Dr. Laurentius Marais (Jan. 5, 2006) Original Image of this Document (PDF)
• 2006 WL 393174 (Trial Motion, Memorandum and Affidavit) Defendants' Amended Proffer of Testimony for Paul Voillequ%21e and Motion for Reconsideration of Court's Order Striking Testimony of Paul Voillequ%21e (Jan. 4, 2006) Original Image of this Document (PDF)
• 2006 WL 403026 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiffs' Motion to Exclude the Expert Testimony of Dr. Laurentius Marais (Jan. 4, 2006) Original Image of this Document (PDF)
• 2006 WL 451762 () Declaration of M. Laurentius Marais (Jan. 4, 2006) Original Image of this Document (PDF)
• 2006 WL 668567 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Memorandum in Support of Plaintiffs' Motion to Preclude the Reading of Designations from the Testimony of Charles Mckay (Jan. 4, 2006) Original Image of this Document (PDF)
• 2006 WL 668565 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Defendants' Motion for Mistrial or, in the Alternative, Defendants' Proposed Instructions (Jan. 3, 2006) Original Image of this Document (PDF)
• 2006 WL 668566 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiffs' Motion to Preclude the Reading of Designations From the Testimony of Charles Mckay (Jan. 3, 2006) Original Image of this Document (PDF)
• 2006 WL 385062 () Affidavit of Paul C. Liu (2006) Original Image of this Document (PDF)
• 2005 WL 3869202 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Supplemental Motion to Exclude the Expert Testimony of M. Laurentius Marais (Dec. 31, 2005) Original Image of this Document (PDF)
• 2005 WL 3869200 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Brief in Support of Motion to Exclude the Testimony of Paul G. Voillequ%21e (Dec. 30, 2005) Original Image of this Document (PDF)
• 2005 WL 3869201 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Defendants' Renewed Motion to Strike the Testimony of Drs. Biggs and Selbin (Dec. 30, 2005) Original Image of this Document (PDF)
• 2005 WL 3785158 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendants' Motion for Mistrial or, in the Alternative, Defendants' Proposed Instructions (Dec. 28, 2005) Original Image of this Document (PDF)
• 2005 WL 3869199 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendants' Motion for Mistrial or, in the Alternative, Defendants' Proposed Instructions (Dec. 28, 2005) Original Image of this Document (PDF)
• 2005 WL 3783188 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to Strike the Testimony of Dr. Biggs and Dr. Selbin (Dec. 23, 2005) Original Image of this Document (PDF)
• 2005 WL 3785157 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiffs' Supplemental Brief in Support of Plaintiffs' Motion to Exclude the Testimony of Paul G. Voilleque (Dec. 23, 2005) Original Image of this Document (PDF)
• 2005 WL 3869195 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to Preclude the Reading of Designations from the Testimony of Charles McKay (Dec. 23, 2005) Original Image of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

358 F.Supp.2d 1003                                                                                                              Page 14

358 F.Supp.2d 1003, 60 ERC 1017
**(Cite as: 358 F.Supp.2d 1003)**

this Document (PDF)
• 2005 WL 3869196 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to Strike the Testimony of Dr. Biggs and Dr. Selbin (Dec. 23, 2005) Original Image of this Document (PDF)
• 2005 WL 3869198 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiffs' Supplemental Brief in Support of Plaintiffs' Motion to Exclude the Testimony of Paul G. Voilleque (Dec. 23, 2005) Original Image of this Document (PDF)
• 2005 WL 3785156 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Supplemental Brief in Support of Plaintiffs' Motion to Exclude the Testimony of Paul G. Voillequ%21e (Dec. 21, 2005) Original Image of this Document (PDF)
• 2005 WL 3869194 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Supplemental Brief in Support of Plaintiffs' Motion to Exclude the Testimony of Paul G. Voillequ%21e (Dec. 21, 2005) Original Image of this Document (PDF)
• 2005 WL 3802604 () Deposition of Paul G. Voilleque (Dec. 16, 2005)
• 2005 WL 3869193 (Trial Motion, Memorandum and Affidavit) Motion to Compel Defendants to Disclose Their Entire Witness List (Dec. 15, 2005) Original Image of this Document (PDF)
• 2005 WL 3869190 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to Compel Production of the ""Barrel Incident" Document Relied on By Rac and Dr. Till But Withheld by Defendants (Dec. 13, 2005) Original Image of this Document (PDF)
• 2005 WL 3869191 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Memorandum in Support of Motion to Exclude Testimony from Michael Norton (Dec. 13, 2005) Original Image of this Document (PDF)
• 2005 WL 3869192 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiffs' Motion to Compel Production of the ""Barrel Incident" Document (Dec. 13, 2005) Original Image of this Document (PDF)
• 2005 WL 3785153 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to Compel the Production of Documents from William Weston and to Limit His Testimony (Dec. 12, 2005) Original Image of this Document (PDF)
• 2005 WL 3785154 (Trial Motion, Memorandum and Affidavit) Defendants' Motion in Limine to Exclude Target Letter and Any Evidence Related to That Letter or Any Individual Indictment Against Dr. Weston (Dec. 12, 2005) Original Image of this Document (PDF)
• 2005 WL 3785155 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiffs' Motion to Compel Production of Documents From William Weston and to Limit His Testimony (Dec. 12, 2005) Original Image of this Document (PDF)
• 2005 WL 3802603 () Deposition of WILLIAM F. WESTON, Ph. D. (Dec. 12, 2005) Original Image of this Document (PDF)
• 2005 WL 3869186 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to Compel the Production of Documents from William Weston and to Limit His Testimony (Dec. 12, 2005) Original Image of this Document (PDF)
• 2005 WL 3869187 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiffs' Supplement to Their Motion to Exclude the Testimony of Shirley Fry (Dec. 12, 2005) Original Image of this Document (PDF)
• 2005 WL 3869188 (Trial Motion, Memorandum and Affidavit) Defendants' Motion in Limine to Exclude Target Letter and any Evidence Related to That Letter or any Individual Indictment Against Dr. Weston (Dec. 12, 2005) Original Image of this Document (PDF)
• 2005 WL 3869189 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiffs' Motion to Compel Production of Documents from William Weston and to Limit His Testimony (Dec. 12, 2005) Original Image of this Document (PDF)
• 2005 WL 3785151 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Supplement to Their Motion to Exclude the Testimony of Shirley A. Fry, M.D. (Dec. 11, 2005) Original Image of this Document (PDF)
• 2005 WL 3785152 (Trial Motion, Memorandum and Affidavit) Motion to Exclude Defendants' Untimely Expert Evidence Regarding Dose Calculations (Dec. 11, 2005) Original Image of this Document (PDF)
• 2005 WL 3802601 () (Partial Testimony) (Dec. 11, 2005)
• 2005 WL 3869182 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Defendants' Proposed Instruction

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.