# EXHIBIT 3

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

MAY 1 7 2005

GREGORY C. LANGHAM
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. 90-K-181

**MERILYN COOK, et al.,**

Plaintiffs,

v.

**ROCKWELL INTERNATIONAL CORPORATION AND THE DOW CHEMICAL COMPANY,**

Defendants.

---

## ORDER ON SCHEDULING AND JURY INSTRUCTION ISSUES

Kane, J.

The parties' Joint Motion for Adjusted Deadlines, filed May 11, 2005, is GRANTED. Objections to trial exhibits shall be filed no later than **August 15, 2005**, the same day the parties' proposed stipulated Pretrial Order shall be submitted. All *Daubert* motions and motions in limine shall be filed no later than **June 3, 2005**, with responses due **June 23** and replies on **July 8**. I will hear argument on the *Daubert* motions, and the motions in limine if necessary, at the hearing currently set for **July 27-28, 2005**. If the parties believe more than two days will be necessary for this hearing given that *Daubert* motions will also be heard then, they should notify me as soon as possible. Both July 26 and July 29 are currently open on my calendar.

To assist the parties in preparing their *Daubert* motions and motions in limine, I have set forth below my rulings on the critical scope of trial issues raised by their proposed jury instructions. Other questions of law raised by the proposed instructions and the proposed instructions themselves will be addressed in future orders.

## I.  Trespass Claim

The primary scope of trial issues raised by the parties' proposed instructions on the trespass claim were decided in the Order Regarding Proposed Trespass Instructions and accompanying Memorandum Opinion and Order entered on December 17, 2004.  The two remaining issues presented by the trespass instructions:  whether certain stipulations can be incorporated in the statement of the trespass claim and whether an intervening cause instruction is warranted, will be decided shortly.

## II.  Nuisance Claim

In order to prevail on their nuisance claim, Plaintiffs must prove that one or both of the Defendants, through their operation of Rocky Flats:  (1) interfered with Plaintiffs' and Class members' use and enjoyment of their Class properties; (2) that this interference was substantial and unreasonable; and (3) that the activity causing the interference was either intentional, negligent or abnormally dangerous.[1] *See Cook v. Rockwell Int'l Corp.* (*"Cook IX"*), 273 F. Supp. 2d 1175, 1202 (D. Colo. 2003).  In order to recover damages

---

[1]     This statement of the elements of Plaintiffs' nuisance claim reflects the parties' stipulation, included in the current draft trespass instructions, that the named Plaintiffs and the Property Class members owned the properties in question.

2

for diminution in Class property values caused by the alleged nuisance pursuant to

Restatement (Second) of Torts § 930 (1979), Plaintiffs must further demonstrate that it

appears any nuisance they prove will continue indefinitely.

Although the parties' proposed instructions on this claim raise a number of issues,

two of them in particular are critical to the scope and form of the class trial set to begin in

October. They are: (1) with respect to the first element of the nuisance claim, whether all

or some of the forms of interference with the use and enjoyment of Class properties

asserted by Plaintiffs are capable of resolution in the class trial; and (2) with respect to the

third element, whether Defendants are subject to strict liability on the nuisance claim

because their allegedly wrongful activities were abnormally dangerous.

A.    Interference with Class members' use and enjoyment of Class properties

"[V]irtually any disturbance of the enjoyment of property may amount to a

nuisance" so long as it is substantial and unreasonable from the perspective of a normal

person. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 87, at 620

(5th ed. 1984); see Cook IX, 273 F. Supp. 2d at 1202-03 ("there are countless ways in

which a defendant can substantially interfere with a plaintiff's use and enjoyment of

land"). As a result, in most cases courts do not separately analyze the claimed

interference with use and enjoyment of property but rather proceed directly to the larger

question of whether the activity "substantially and unreasonably interfered" with the

plaintiff's use and enjoyment of property (i.e., many courts combine the first and second

3

elements stated above).  In so doing, these courts implicitly accept the plaintiff's claim that the defendant's activities interfered with his use and enjoyment of property in some way, but only find this claimed interference constitutes a nuisance if the interference is deemed substantial and unreasonable.

This consolidation of the "interference" and "substantial and unreasonable" components is problematic in a class action, however, because to allow the jury to consider forms of interference that do not apply to the class as a whole would impermissibly invite it to determine nuisance liability based on a non-existent composite class member who had suffered all of the interferences claimed by different class members. *See Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 344-45 (4th Cir. 1998) (reversing class verdict based on incorrect portrayal of class as a uniform group suffering a uniform injury because it improperly enlarged the substantive rights of class members who did not fit the uniform, fictional composite presented to the jury). Accordingly, I have required that Plaintiffs specify what forms of interference they intend to assert on behalf of the Property Class so I may assess whether they can be decided on a class-wide basis.

After carefully considering the parties' briefs on this issue, I find the following forms of interference asserted by Plaintiffs on behalf of the Property Class are legally sufficient to prove interference with Class members' use and enjoyment of their properties and capable of determination on a class-wide basis:

4

1.     Current human health risk arising from past or on-going exposure to plutonium released from Rocky Flats as a result of one or both of the Defendants' activities there

Plaintiffs assert all Class members have been exposed to plutonium released from Rocky Flats either in the past or on an on-going basis from "consummated contamination" in the Class Area and as a result have incurred some increment of increased health risk. I find proof of such class-wide exposure to plutonium and resulting class-wide increase in human health risk would be sufficient to establish an interference with Class members' use and enjoyment of property, notwithstanding that Class members may have been exposed to plutonium from Rocky Flats at different times, by different exposure pathways and to different degrees, and may have incurred varying magnitudes of increased health risk as a result. I will instruct the jury, however, that they must find all Class members were exposed to plutonium and incurred some increased health risk from this exposure in order to find for Plaintiffs on the interference element of their nuisance claim on this basis, and that they may only consider the magnitude of the common, class-wide health risk in determining whether this and any interference(s) they find are substantial and unreasonable.

Plaintiffs may prove an interference with Class members' use and enjoyment of Class properties based on exposure to Rocky Flats contaminants other than plutonium only if they demonstrate that all Class members were exposed to the contaminant or contaminants in question and all suffered some increased health risk as a result.

5

2.     Demonstrable threat of future injury arising from one or both of
Defendants' activities at Rocky Flats

It is the law of the case that "a threat of future injury that is a present menace and
interference with enjoyment" can constitute an interference with a plaintiff's use and
enjoyment of property. *See Cook IX*, 273 F. Supp. 2d at 1202-03 (quotation and citation
omitted). There are two possible bases for a jury to find that a threat or risk of future
health or other harm from Rocky Flats constitutes an interference with Class members'
use and enjoyment of Class properties:  (1) that conditions caused by Defendants'
activities at Rocky Flats create a real, verifiable threat of future harm to Class properties
(such as explosion or additional releases of plutonium or other hazardous substances with
accompanying health risk); and (2) that such conditions cause Class members, rationally
or otherwise, to be fearful, anxious or otherwise disturbed by the real or perceived threat
of future harm.

The first possible basis, that there is an objectively demonstrable risk of future
harm, is capable of class-wide resolution to the extent it is based on objective conditions,
such as existing contamination on-site and off-site that may be released or remobilized in
some fashion that would result in human exposure and increased health risk, that have the
potential to affect all of the Class Area. As stated in the following section, the second
possible basis, that Class members' enjoyment of their properties is impaired because of
an emotional reaction to the real or perceived risk of future harm, cannot be fully resolved
on a class-wide basis.

3.     Fear, anxiety or other emotional disturbance

Fear, anxiety or other emotional discomfort or distress suffered by Class members as a result of Defendants' activities at Rocky Flats can constitute an interference with their use and enjoyment of Class property.[2] *See, e.g., Cook IX*, 273 F. Supp. 2d at 1203-04.  As stated in my April 14, 2004 Order, however, whether Defendants' activities caused Class members to suffer fear or other emotional disturbance raises individual causation questions and thus is not capable of class-wide determination. *See id.* at 7-8.  The generic causation question of whether Defendants' activities and the conditions resulting from them were capable of causing Class members to suffer fear, anxiety or other mental or emotional discomfort is, however, common to the Class and may be decided by the jury in the class trial.

4.     Other forms of interference asserted by Plaintiffs

The imposition of government restrictions on the use or development of Class properties could constitute an interference with Class members' use and enjoyment of properties. *See, e.g., Exxon Corp. v. Yarema*, 516 A.2d 990, 1005 (Md. App. 1986).  The only potential government restriction of this type asserted by Plaintiffs, however, is the Colorado state regulation requiring that special construction techniques be used if plutonium concentration in a property's soils exceeds a certain threshold.  *See* 6 Colo.

---

[2]     Whether this or any other asserted interference is substantial and unreasonable as required for nuisance liability to attach is a separate question as stated earlier.

Code. Reg. 1007-1, RH 4.60.1.  Plaintiffs acknowledge they do not have evidence that plutonium contamination throughout the Class Area meets or exceeds this standard, but speculate that it might or that the government could place other restrictions on Class properties in the future as a result of the contamination or other conditions attributable to Defendants' activities at Rocky Flats.  This speculation is not sufficient to allow the jury to consider government restrictions in determining whether Plaintiffs have proved a class-wide interference with the use and enjoyment of Class properties.

Plaintiffs also assert that a decrease in the market value of Class properties as a result of Defendants' activities at Rocky Flats is a class-wide interference with Class members' use and enjoyment of their properties because it interferes with each property's use as an asset and investment.  I held in *Cook IX*, however, that a decrease in the value of Class properties as a result of Defendants' activities, in and of itself, is not an interference with Class members' use and enjoyment of properties.  *See* 273 F. Supp. 2d at 1209. Plaintiffs acknowledge this ruling, but argue that proof of plutonium contamination in the Class Area allows the jury to consider diminution in property values in deciding whether Defendants' activities interfered with Class members' use and enjoyment of their properties.  Most of the case law cited by Plaintiffs, however, goes to a separate question, which is whether and when diminution in property value is recoverable as an item of damages once liability has been found.  It is already established in this case that Plaintiffs may recover diminution in property value as damages upon proof that Defendants are

8

liable in trespass and/or nuisance and that the requirements of Restatement § 930 have been met. *See, e.g., Cook v. Rockwell Int'l Corp. ("Cook X")*, 358 F. Supp. 2d 1003, 1010-13 (D. Colo. 2004).

Further, the majority rule, followed in *Cook IX*, is that a decrease in the market value of property simply is not an actionable interference with the right to use and enjoy property. *See Cook IX*, 273 F. Supp. 2d at 1209 (citing cases). Diminution in property value is an element of nuisance damages, and may be evidence that a proven interference is substantial and unreasonable, but it is not evidence of interference itself. *See id.* The "use and enjoyment of land" in the nuisance context refers to the actual or potential use of the land itself and the "pleasure, comfort and enjoyment that a person normally derives from the occupancy of land." Restatement of Torts (Second) § 821D (1979) (describing the interest in the use and enjoyment of land implicated in a private nuisance). "Use" of land as a financial asset and investment does not fall within this sphere. *See, e.g., Adkins v. Thomas Solvent Co.*, 487 N.W.2d 715, 724-26 (Mich. 1992) (property depreciation alone is not a cognizable interference with the use and enjoyment of property but may be recovered upon proof of a significant interference with use and enjoyment of property).

To the extent Plaintiffs are asserting that proof of plutonium contamination throughout the Class Area in and of itself demonstrates an interference with the use and enjoyment of property, I also reject this contention. It should be undisputed in this day and age that it is possible for a property to be contaminated with low levels of pollutants

with no impediments at all to actual use of the property or the occupant's enjoyment of it. Thus, in the Order entered April 14, 2004, I stated that "[i]n order to be actionable at nuisance . . . Plaintiffs must also show that such actual or potential contamination, alone or in combination with other factors, caused some harm that interfered with class members' use and enjoyment of property." *Id.* at 7-8. Actual contamination might interfere with the use or enjoyment of property in any number of ways, such as limiting what can be done on the property (*i.e.*, interferes with property use by, for example, rendering the land unusable for planting or livestock, precluding use of groundwater for certain purposes or restricting construction on the property); causing increased health risk to property occupants (interferes with residential use and enjoyment of the property); and causing fear, anxiety or discomfort (interferes with enjoyment). As long as the contamination interferes with the property owner's or occupant's use and enjoyment of the property in some way, it is actionable. If the presence of contamination does not have such an effect, then it may be a trespass (because it violates the right to exclude others from property) but it is not a nuisance because there is no interference with the distinct

right to use and enjoy property.[3] *See Cook IX*, 273 F. Supp. 2d at 1999, 1201 (identifying the distinct property rights underlying trespass and nuisance claims).

B.   Strict liability for abnormally dangerous activities

One of the issues posed by the parties' nuisance instructions and related briefing is whether the activities alleged to constitute a nuisance are abnormally dangerous activities triggering strict liability for harm caused by them.  The parties agree this is a question of law to be decided entirely by me, without fact finding by the jury.  *See* Restatement (Second) of Torts § 520 cmt. l (1977) (this issue "is no part of the province of the jury to decide").

The Colorado courts follow the Restatement (Second) of Torts § 519 (1977) in imposing strict liability on abnormally dangerous activities.  This section provides:

> (1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.
>
> (2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.

The Tenth Circuit has declared that determination of whether an activity is "abnormally dangerous" under these principles requires a "particularized inquiry" that

---

[3]     I recognize that decisions addressing nuisance claims based on contamination of the plaintiff's property frequently do not state how the contamination interferes with the use and enjoyment of property.  The facts of these cases, however, usually demonstrate that the contamination interfered with property's use in some obvious way, such as by making groundwater unsafe for use as drinking water, poisoning streams or lakes on the property, creating a demonstrated health risk to property occupants or preventing certain kinds of property use or development.

11

weighs the six factors set forth in Restatement § 520.  *See Daigle v. Shell Oil Co.,*

972 F.2d 1527, 1544 (10th Cir. 1992) (applying Colorado law).  These factors are:

1.   Existence of a high degree of risk of some harm to the person, land or chattels of others;

2.   Likelihood that the harm that results from it will be great;

3.   Inability to eliminate the risk by the exercise of reasonable care;

4.   Extent to which the activity is not a matter of common usage;

5.   Inappropriateness of the activity to the place where it is carried on; and

6.   Extent to which its value to the community is outweighed by its dangerous attributes.

Each of these factors is to be considered in making the abnormally dangerous

determination, but none is necessarily sufficient in itself.  An activity may be found to be

abnormally dangerous when the activity itself is unusually dangerous or when a more

usual activity creates unusual risks under the particular circumstances at issue.

Restatement § 520 cmt. f.  "The essential question is whether the risk created is so

unusual, either because of its magnitude or because of the circumstances surrounding it,

as to justify the imposition of strict liability for the harm that results from it, even though

it is carried on with all reasonable care."  *Id.*

In their most recent briefing on this issue,[4] Plaintiffs seek a finding that the

following activities undertaken by Defendants at Rocky Flats were abnormally dangerous:

---

[4]      I earlier denied Plaintiffs' motion for summary judgment on this issue.  *See Cook v. Rockwell Int'l Corp. ("Cook VIII"),* 181 F.R.D. 473, 486 (D. Colo. 1998).

the generation, use, storage and disposal of hazardous radioactive and nonradioactive

substances, specifically including plutonium, beryllim, solvents and tritium, as part of the

plant's production of nuclear weapons parts. *See* Pls.' Br. on Statute of Limitations, etc.

at 13-15. Plaintiffs allege these activities were abnormally dangerous based on the

extreme human health risks posed by the release of these hazardous substances into the

environment as a result of both accidents and routine operations. This designation of the

activities at issue and the relevant risks is sufficient to proceed with the "particularized

inquiry" into the Restatement § 520 factors required by *Daigle*.[5]

After carefully reviewing the six § 520 factors and the parties' memoranda and

supporting materials regarding this issue, I find Plaintiffs have failed to demonstrate that

Defendants' generation, use, storage and disposal of hazardous radioactive and

_____

[5]      I reject Defendants' contention that I need not proceed with this inquiry
because they are immune from strict liability pursuant to Restatement § 521, which
exempts from strict liability those carrying on an activity "in pursuance of a public duty
imposed upon the actor as a public officer or employee or as a common carrier."
Restatement (Second) of Torts § 521 (1977). Even if the Colorado courts were to follow
this provision, which is an open question given its rejection by some other courts, *see,
e.g., Chavez v. S. Pac. Trans. Co.*, 413 F. Supp. 1203, 1213 (E.D. Cal. 1973), it would not
apply here because Dow and Rockwell are not public officers, public employees or
common carriers covered by this provision. They are instead government contractors,
which as a general rule are not exempt from strict liability for conducting an abnormally
dangerous activity under government contract. *See* Restatement (Third) of Torts: Liab.
Physical Harm § 24 (T.D. No. 1, 2001) (collecting cases); William K. Jones, *Strict
Liability for Hazardous Enterprises*, 92 Columbia L. Rev. 1705, 1758 (1992) (same). I
concur with Judge Nielsen that *Lamb v. Martin Marietta Energy Systs., Inc.*,
835 F. Supp. 959 (W.D. Ky. 1993), the only decision arguably supporting Defendants'
position, is not persuasive authority for extending § 521 immunity to government
contractors. *See In re Hanford Nuclear Reservation Litigation*, 350 F. Supp. 2d 871, 884
(E.D. Wash. 2004).

nonradioactive substances at Rocky Flats was an abnormally dangerous activity subject to strict liability.  This conclusion is based primarily on the insufficient showing made with respect to the first three critical factors:  existence of a high degree of risk of that hazardous substances would be released into the environment from these activities; likelihood that the harm resulting from such releases would be great; and the inability to eliminate the risk of such harm by the exercise of reasonable care.  With respect to the first two factors, Plaintiffs at best made the requisite showing only with respect to the generation, use, storage and disposal of plutonium, not activities involving the other specified and unspecified hazardous substances present at Rocky Flats.  Plaintiffs also failed to demonstrate that the risk of harmful releases of plutonium or other radioactive and non-radioactive hazardous substances from Rocky Flats could not have been prevented by the exercise of reasonable care.[6]  Accordingly, I find Defendants' generation, use, storage and disposal of hazardous radioactive and nonradioactive substances at Rocky Flats was not an abnormally dangerous activity subjecting Defendants to strict liability for any resulting harm.

III.   Compensatory Damages

The parties submitted extensive memoranda on how compensatory damages should be determined in this class action if one or both Defendants are found liable for

---

[6]      Plaintiffs presented little evidence in support of their position that Defendants' activities were abnormally dangerous.  Their assertion that additional support existed in their experts' reports was of no assistance without specific direction to specific reports relating to specific § 520 factors.

trespass or nuisance.  After carefully reviewing the parties' arguments and proposals and relevant authorities, I hold that compensatory damages for the Property Class will be determined as set forth below.  I believe this plan is most consistent with the Colorado Supreme Court's direction that "the measure of damages for injury to real property is not invariable" and that the principal goal in determining the measure of damages is "to reimburse [the property] owner for the actual loss suffered." *Bd. of County Commrs. v. Slovek*, 723 P.2d 1309, 1314 (Colo. 1986); *see id.* at 1315-16.

Consistent with Plaintiffs' proposed damages determination plan, only damages for prospective invasions pursuant to Restatement (Second) of Torts § 930(3)(b) will be determined in the class trial.  Whether Class members may seek to recover damages for past or present invasions pursuant to Restatement §§ 930(3)(a) and/or 929, and how any such damages would be determined, will be decided after the class trial.  Liability for the entire Class will, however, be determined at the class trial.

Again as proposed by Plaintiffs, the current Class will be divided into two sub-classes for determination of compensatory damages.  The first sub-class shall consist of all Class members who owned property within the Class Area on the later of: (i) January 30, 1990, the date this action was filed; or (ii) the date on which the jury, per Restatement § 930(1), finds it appeared the trespass and/or nuisance asserted by Plaintiffs would continue indefinitely.  This sub-class is authorized to recover damages for the decrease in the value of their Class properties caused by the prospect of the alleged

trespass and/or nuisance (if proved by Plaintiffs) continuing into the future, measured at the time when the injurious situation became complete and comparatively enduring. *See* Restatement § 930(3)(b). The compensatory damages, if any, to be awarded to this sub-class will be determined based on the jury's findings in the class trial as described below.

The second sub-class consists of all other Class members. Members of this sub-class are not entitled to § 930(3)(b) damages because they did not own Class property when this action was filed and/or when the right to elect to recover damages for prospective invasions accrued under Restatement § 930(1). The availability and means of determining any compensatory damages due this sub-class if Defendants are found liable in trespass or nuisance will be decided after the class trial.

As just stated, compensatory damages for the first sub-class (the "Damages" sub-class)[7] will be determined according to Restatement § 930(3)(b). Plaintiffs have indicated they will seek to prove both aggregate and percentage diminution in value for the Damages sub-class for each of three categories of properties - vacant land, commercial property and residential property. As a result, Plaintiffs will be required to prove the following to establish compensatory damages for this sub-class: (1) the date on which injurious situation caused by Defendants became complete and comparatively enduring ("CCE date"); (2) the average percentage diminution in property value that was caused by

---

[7]      This designation is not intended to suggest that members of the second sub-class are not entitled to damages, only that their damages, if any, will be determined in subsequent proceedings.

16

any trespass or nuisance found by the jury, as of the CCE date, for each property category; (3) the value of the properties in the Damages sub-class,[8] by property category, as of the CCE date; and (4) by multiplying the total value of each property category in this sub-class by the average percentage diminution in value for each property category as of the CCE date, and summing these amounts, the aggregate damages for the Damages sub-class.

I further find that Defendants may seek to mitigate any compensatory damages proved by Plaintiffs by demonstrating the fact and amount of any prior market discount the Damages sub-class received as a result of the ongoing trespass and/or nuisance when they purchased their Class property. This finding is based on the well-established rule that when a defendant's tort both harms and provides a direct benefit to a plaintiff, the defendant is entitled to a credit for the benefit conferred.[9] *See, e.g.,* 1 Dan B. Dobbs, Law of Remedies § 3.8(2) (2d ed. 1993). Restatement § 920 states the rule as follows:

> When the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred a special benefit to the interest of the plaintiff that was harmed, the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable.

---

[8]      These are the properties owned by members of the Damages sub-class as of the date this action was filed or the date on which it appeared the  invasion would continue indefinitely, whichever is later.

[9]      There are exceptions to this rule, *see* Dobbs § 3.8(2), but none appear applicable here.

17

Here, Plaintiffs contend Defendants' trespass and nuisance harmed Class members' pecuniary interests by diminishing the value of their properties.  Defendants, in turn, allege that any such trespass or nuisance conferred a benefit to the pecuniary interest of some or all of these Class members because the same, ongoing trespass or nuisance diminished the price these Class members paid to purchase their Class property.  As an issue directed at mitigating or reducing damages, this is an affirmative defense on which the defendant bears the burden of proof.  *See id.*; *Fair v. Red Lion Inn*, 943 P.2d 431, 437 (Colo. 1997) (defendant bears burden of proving mitigation of damages); *Graham v. State*, 16 P.3d 712, 715 (Wyo. 2001) (defendant bears burden of proving matters asserted by him in mitigation or reduction of damages).  I will only present this affirmative defense to the jury for decision if there is sufficient evidence to support it.  *See Garcia v. Wal-Mart Stores, Inc.*, 209 F.3d 1170, 1174 (10th Cir. 2000) (applying Colorado law).

Assuming there is sufficient evidence to justify its submission to the jury, Defendants' prior market defense will be decided in the class trial based on common evidence demonstrating the market discount in effect during the different time periods in which Class members purchased their Class properties.  If Defendants proceed with the defense, the jury will be asked to determine the percentage diminution in property value, by property category (residential, commercial, vacant land) for each relevant time period.  These percentages as found by the jury will then be applied to the actual sales figures for each property in the Damages sub-class purchased in each period to determine the total

amount, if any, of prior market discount for this sub-class. Because both the dates on which Class members purchased their properties and price paid should be undisputed matters of public record, these facts need not be decided by the jury. Similarly, I anticipate that any adjustments that may be necessary to bring the various damages amounts into the same time period can be performed based on undisputed facts. As a result, unless the parties have a better suggestion consistent with these concepts, I anticipate that calculation of any prior market discount and final calculation of the aggregate damages for the Damages sub-class after deducting any such discount will occur in a post-trial proceeding under my direction or the direction of a special master. The allocation and distribution of any compensatory damages awarded through this process to the members of the Damages sub-class will also be determined after the class trial.

—Implicit in the plan just stated for deciding compensatory damages for the Damages sub-class is rejection of Defendants' contention that additional individualized factors, such as individual Class member's knowledge regarding Rocky Flats and plutonium contamination; the effect, if any, this knowledge played in each Class member's property transactions; the location of individual properties within the Class area and the different types of harm to the use and enjoyment of property allegedly suffered by individual Class members, must be considered in deciding the amount of any compensatory damages to be awarded in this case. Plaintiffs have consistently stated that

they are seeking to recover compensatory damages measured by the diminution in value of Class properties.  This diminution in value is a function of the market, not individual Class member's reaction to the alleged trespass or nuisance.   To the extent there are differences in the percentage diminution in property value caused by the trespass or nuisance based on the location of properties within the Class Area or other factors, these differences may be addressed through the use of average rates of diminution in value. Other individual damages factors alleged by Defendants, such as the different impact Rocky Flats may have had on different Class members' use and enjoyment of property, go to class determination of nuisance liability, as addressed above, and not to class determination of damages for nuisance liability.

The parties shall conform their upcoming *Daubert* motions and motions in limine to reflect the rulings set forth in this order.

Dated this _17_ day of May, 2005.

John L. Kane, Senior District Judge
United States District Court

20

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
GREGORY C. LANGHAM, CLERK
U. S. Courthouse
901 19th Street - Room A-105
Denver, CO 80294
(303) 844-3433

Date:        **May 17, 2005**

Case No.     **Civil Action No. 90-K-181 - Merilyn Cook et al. v. Rockwell International
             Corporation, a Delaware corporation, and The Dow Chemical Company,
             a Delaware corporation**

          The undersigned hereby certifies that on the above date a true and correct copy of the
preceding **ORDER** signed by Judge John L. Kane on **May 17, 2005** was mailed to the
following:

Daniel Satriana, Esq.                    Bruce DeBoskey, Esq.
Sean R. Gallagher, Esq.                  Gary Blum, Esq.
Hall & Evans                             Stephen Kelly, Esq.
**D.C. Box No. 5**                       Silver & DeBoskey
                                         The Smith Mansion
                                         1801 York Street
                                         Denver, CO 80206


Merrill Davidoff, Esq.                   Stanley M. Chesley, Esq.
Daniel Berger, Esq.                      Waite, Schneider, Bayless
Ellen Noteware, Esq.                       & Chesley Co., L.P.A.
Jennifer MacNaughton, Esq.               1513 Central Trust Tower
Berger & Montague                        Cincinnati, OH 45202
1622 Locust Street
Philadelphia, PA 19103-6365


R. Bruce McNew, Esq.                     Ronald Simon, Esq.
Taylor, Gruver & McNew, P.A.             Simon & Associates
3711 Kennett Pike, Suite 210             1707 N. Street, N.W.
Greenville, DE 19807                     Washington, D.C.  20036

Kenneth A. Jacobsen, Esq.
22 West Front Street
Media, PA 19063

Patrick Hanlon, Esq.
Mark Raffman, Esq.
Shea & Gardner
1800 Massachusetts Avenue N.W.
Washington, D.C.  20036

John W. Suthers, Esq.
U.S. Attorney
Stephen D. Taylor, Esq.
**Assistant U.S. Attorney**

U.S. Department of Energy
Rocky Flats Field Office
10808 Highway 93, Unit A
Golden, CO 80403-8200

Joseph J. Bronesky, Esq.
Christopher Lane, Esq.
Sherman & Howard
**D.C. Box No. 12**

David M. Bernick, Esq.
Doug Kurtenbach, Esq.
Mark S. Lillie, Esq.
Kirkland & Ellis
200 E. Randolph Drive
Chicago, IL 60601

Carlotta Wells
U.S. Department of Justice
901 E Street, N.W., Room 1058
Washington, D.C.  20044

May 7, 2005

GREGORY C. LANGHAM, CLERK

**Deputy Clerk**