# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, et al.,

     Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION AND THE DOW CHEMICAL
COMPANY,

     Defendants.

---

## MEMORANDUM OPINION REGARDING JURY INSTRUCTIONS

---

Kane, J.

## Table of Contents

Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

The Parties' Proposed Jury Instructions and Revisions . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    I.     Instructions on Trespass Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

           A.    Defendants' Responses to the Court's December 2004 Trespass
               Instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

               1.     Causation instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

               2.     Stipulations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

           B.    Defendants' Other Pretrial Trespass Arguments and Proposals . . . . . . 12

               1.     Pretrial arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

               2.     Proposed supplemental trespass instruction . . . . . . . . . . . . . . . 13

           C.    Parties' Proposed Revisions to Trespass Instructions at
               End of Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

               1.     Plaintiffs' proposed revisions . . . . . . . . . . . . . . . . . . . . . . . . 14

               2.     Defendants' proposed revisions . . . . . . . . . . . . . . . . . . . . . . . 15

           D.    Defendants' Proposed Revision to Trespass Instructions During Jury
               Deliberations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    II.    Instructions on Nuisance Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

           A.    Plaintiffs' Proposed Nuisance Instructions . . . . . . . . . . . . . . . . . . . . . 22

           B.    Defendants' Proposed Nuisance Instructions . . . . . . . . . . . . . . . . . . . . 34

           C.    Parties' Proposed Revisions to Nuisance Instructions at End of Trial . . . 47

               1.     Plaintiffs' proposed revisions . . . . . . . . . . . . . . . . . . . . . . . . 47

               2.     Defendants' proposed revisions . . . . . . . . . . . . . . . . . . . . . . . 48

III.    Instructions on Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

    A.    Plaintiffs' Proposed Damages Instructions . . . . . . . . . . . . . . . . . . . . 60

    B.    Defendants' Proposed Damages Instructions . . . . . . . . . . . . . . . . . . 66

    C.    Parties' Proposed Revisions to Damages Instructions at End of Trial . . 73

        1.    Plaintiffs' proposed revisions . . . . . . . . . . . . . . . . . . . . . . . . 73

        2.    Defendants' proposed revisions . . . . . . . . . . . . . . . . . . . . . . . 74

IV.    Other Disputed Instructions and Issues . . . . . . . . . . . . . . . . . . . . . . . 80

    A.    Instructions Regarding the Nature of the Case . . . . . . . . . . . . . . . . . 81

    B.    Instructions Regarding Burden of Proof . . . . . . . . . . . . . . . . . . . . . 82

    C.    Limiting and Other Evidentiary Instructions . . . . . . . . . . . . . . . . . . 83

        1.    Classified information . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83

        2.    Other evidence relating to DOE . . . . . . . . . . . . . . . . . . . . . . 85

        3.    Evidence regarding the FBI raid, grand jury investigation and Rockwell plea agreement . . . . . . . . . . . . . . . . . . . . . . . . . . 86

        4.    Evidence of other lawsuits . . . . . . . . . . . . . . . . . . . . . . . . . . 88

        5.    Evidence of media coverage . . . . . . . . . . . . . . . . . . . . . . . . 88

        6.    Evidence of Defendants' contractual obligations . . . . . . . . . . . 89

        7.    Expert opinion evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . 90

        8.    Demonstrative exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . 91

    D.    Miscellaneous Instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 91

        1.    Joint and several liability and comparative fault . . . . . . . . . . . . 91

        2.    Additional questions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 93

    E.    Defendants' Final Objections . . . . . . . . . . . . . . . . . . . . . . . . . . . . 94

V.      Verdict Form and Related Instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 95

Conclusion   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 96

Attachment A:        Chronology of Parties' Proposed Jury Instructions and Verdict Forms

Attachment B:        Instructions to Jury at the Start of Trial

Attachment C:        New and Revised Instructions to Jury at the End of Trial, with changes
                     from Start of Trial Instructions shown

This memorandum opinion addresses the process and proposals that resulted in the final jury instructions in the property damages trial in this class action.[1]  The relevant background to this opinion is as follows:

## Background

In July 2003, I issued an opinion pursuant to Rules 16 and 23(d) to identify and narrow the issues to be tried in the property class trial.[2]  *See Cook v. Rockwell Int'l Corp.  ("Cook IX")*, 273 F. Supp. 2d 1175 (D. Colo. 2003); *see also* Fed. R. Civ. P. 16 & 23(d).  Because the parties continued to disagree on many of the basic components of the trial, I issued several follow-up decisions seeking to define further its scope and the issues to be tried.  *See* Order (Doc. 1220) [hereinafter "April 2004 Order"]; Order (Doc. 1235) [hereinafter "May 2004 Order"].  I also ordered the parties to prepare proposed jury instructions to assist in this process.  April 2004 Order at 24-25; May 2004 at 15-16.

As required by these decisions, the parties filed proposed instructions on Plaintiffs' trespass and nuisance claims, affirmative defenses, damages and general trial matters in the

---

[1]  This memorandum opinion is one of four opinions issued today addressing various motions and disputes that were decided before, during and after completion of the class trial.  *See* Mem. Op. re: *Daubert* Mots. and Mots. in Limine; Mem. Op. re: Defs.' Theory of Plutonium Removal Through Real Estate Development; Order on Defs.' Second Renewed and New Mot. for Mistrial.  I opted to issue all of these opinions at one time rather than as they were completed because some of them address related issues and because I wanted to ensure that the parties had all relevant opinions in hand before they filed any final motions in this case.  *See generally* Mem. Op. re: *Daubert* Mots. and Mots. in Limine at 3-5 (Dec. 7, 2006).

[2]  For information regarding the nature of the property class claims and the challenges in bringing these claims to trial, see *Cook IX*, 273 F. Supp. 2d at 1178-79, Order (Doc. 1235) at 1-4, 10-11 (May 28, 2004), and Memorandum Opinion and Order in Advance of February 28, 2001 Hearing (Doc. 1176) at 3-9.

summer and early fall of 2004.[3]  Each side's instructions continued to present starkly different

versions of the issues to be tried, and each side objected to virtually every substantive instruction

proposed by the other.  The parties' submissions also raised additional substantive issues, some of

which the parties addressed in supplemental briefing at my direction.  In addition, I held several

conferences at which I heard argument on jury instruction issues.

    In December 2004, I issued an order and related memorandum opinion addressing the

parties' proposed instructions regarding the trespass claims and associated affirmative defenses.

*See* Order re: Proposed Trespass Instructions (Doc. 1311) [hereinafter "Trespass Instructions

Order"]; *Cook v. Rockwell Int'l Corp. ("Cook X")*, 358 F. Supp. 2d 1003 (D. Colo. 2004).

Included in these rulings were instructions I prepared for these claims based on the parties'

submissions, relevant authority and my practice of providing the jury with as clear an explanation

as possible regarding the factual issues to be decided and the relevant legal standards.  Trespass

Instructions Order at 1-2, 7 & Attach. A.  I also permitted the parties to submit further briefing on

several issues relating to the trespass instructions I had prepared.  *See id.* at 3, 8-9.

    Early in 2005 I set the property class claims for trial beginning in October, 2005.  Order

(Doc. 1325).  Subsequently, in May 2005, I issued an order resolving the majority of the disputes

raised by the parties' competing instructions on Plaintiffs' nuisance claims and on damages.  *See*

Order on Scheduling and Jury Instruction Issues (Doc. 1338) [hereinafter "May 2005 Order"].  I

did not issue instructions on these matters at this time.

---

[3]    Record citations to these and the parties' subsequent proposed jury instructions
are included in the discussion that follows.  A chronology of all of the parties' submissions
containing proposed instructions and revisions is also set forth in Attachment A to this opinion.

Over the following months, the parties briefed and argued a number of motions in limine and *Daubert* motions that raised additional matters relevant to the jury instructions. *See generally* Mem. Op. re: *Daubert* Mots. & Mots. in Limine (Dec. 7, 2006). At my direction, the parties also provided updated statements of their theories of the case. *See* Pls.' Statement of Claims (Doc. 1419); Defs.' Theories of the Case (Doc. 1420). Following my rulings on the motions in limine and *Daubert* motions, I permitted the parties to propose additional jury instructions on matters addressed in these rulings and on certain other issues. Both parties responded by submitting supplemental proposed instructions.

Based on these submissions by the parties, the law of the case and relevant authority, I prepared a complete set of jury instructions in advance of trial that, as is my standard practice, I provided to the parties and to the jury before opening arguments began. *See* Fed. R. Civ. P. 51(b)(3) (authorizing instruction any time after trial begins). These instructions are attached to this memorandum opinion. *See infra* Attach. B (Jury Instructions dated Oct. 12, 2005) [hereinafter "Start of Trial Instructions"].[4] As is also my practice, I informed the parties and the jury that these instructions would be revised if necessary as the trial progressed. *See, e.g.,* Oct. 11, 2005 Trial Tr. at 428.

---

[4] I provided the parties with most of these instructions on October 7, so that they could be used in preparation for opening arguments scheduled to begin on October 11, and provided them with the remainder on October 10. I read the jury Sections 1 and 3 of the instructions (general and substantive instructions) immediately before Plaintiffs began their opening argument, *see* Oct. 11, 2005 Trial Tr. at 426-73, and provided each juror with a complete set of the instructions in writing at that time. The jurors received a new set of written instructions the next day that corrected several typographical errors in the original, October 11 version. *See id.* at 426-27 (notifying jury of corrections). The corrected instructions are dated October 12, 2005 and are the Start of Trial Instructions referred to herein and set forth in Attachment B to this opinion.

The parties proposed a number of additional and revised instructions during the course of the four and a half month trial. Most were submitted in response to my direction near the close of trial that the parties submit any proposed revisions to the jury instructions of record in time for me to consider them before instructing the jury for the final time. *See* Order on Jury Instruction Submissions (Doc. 1929). Defendants filed extensive proposed revisions and objections to these instructions, and Plaintiffs filed more limited proposed revisions and objections.

In response to these proposed revisions and objections and my own final review of the jury instructions, I made mostly minor revisions to fifteen of the fifty-one instructions of record. The final jury instructions incorporating these revisions and four new instructions added during or at the close of trial were provided to the parties and the jury in written form before closing arguments began on January 18, 2006.[5] I read these instructions to the jury on January 20, just before the jurors began their deliberations. Both parties filed objections to these instructions, in which they incorporated their previously filed proposed instructions, revisions and objections.[6]

The final set of jury instructions in this action are of record, *see* Notice of Final Jury Instructions (Doc. 2121) [hereinafter "Final Instructions"], as is the Verdict Form. *See* Jury

---

[5]      New Instruction Nos. 2.2AA, 2.2A, 2.2B and 3.19A were provided to the jury during and/or at the end of trial. An additional instruction, No. 4.6, was provided to the jury after it began deliberations. The following instructions were revised at the end of trial *sua sponte* or in response to submissions from the parties: Instruction Nos. 1.4, 1.9, 2.2, 2.3, 2.5, 2.7, 3.1, 3.5, 3.7, 3.9, 3.12, 3.17, 3.22, 4.2, 4.5. These new and revised instructions, with additions and deletions from the Start of Trial Instructions shown, are set forth in Attachment C to this opinion.

[6]      Defendants asserted a handful of new objections to the Final Instructions at the close of trial. *See* Defs.' Objs. to Jury Instructions and Verdict Form (Doc. 2015) at 4; Defs.' Objs. to Additional and Revised Jury Instructions (Doc. 2023). I reviewed the new objections identified by Defendants before instructing the jury for the final time and found they did not warrant further changes to the instructions.

Verdict Form (Doc. 2117). As noted, most of the Final Instructions are identical to or substantially the same as the Start of Trial Instructions. Unless otherwise specified, therefore, references or citations in this opinion to the instructions I prepared refer to both the Start of Trial and Final Instructions.

Preparation of the jury instructions required me to decide a number of additional legal issues raised by the parties' competing proposals and objections. Although my decisions on these issues were inherent in the instructions I prepared and provided to the jury, I write here to provide a more complete record of these decisions and my rulings on the specific instructions proposed by the parties before, during and at the close of trial.[7] I first address the parties' proposed instructions on trespass, nuisance and damages, and then their other disputed instructions and the jury verdict form and related instructions.

### The Parties' Proposed Jury Instructions and Revisions

**I.      Instructions on Trespass Claims**

I set out my rulings on the parties' initial proposed trespass instructions and my intended instructions on the trespass claims in December 2004. *See* Trespass Instructions Order. Defendants submitted additional arguments and proposed revisions to the trespass instructions before trial, and both parties proposed revisions to the trespass instructions near the close of trial. My rationale for ruling on these proposals, as incorporated in the instructions I provided to the

---

[7]      I informed the parties when I issued the Start of Trial Instructions and at other points that I intended to document my jury instruction rulings in this written opinion, as I had done with respect to the parties' first proposed trespass instructions. *See* Trespass Instructions Order.

jury at the start and end of trial, *see* Start of Trial and Final Instructions, Nos. 3.2-3.5, is set forth

below.

### A.    Defendants' Responses to the Court's December 2004 Trespass Instructions

#### 1.    Causation instruction[8]

Defendants proposed that the trespass instructions include a paragraph, drawn from a

standard Colorado jury instruction for negligence claims, that relieved them of liability if the jury

found an intervening cause. *See* Defs.' Submission of Trespass Jury Instructions (Doc. 1245)

at 15-16 (proposed Instruction No. 5, citing Colo. Jury Instructions (Fourth) Civ. § 9:20 (2004)).

In my December 2004 order, I directed Defendants to identify the facts and law supporting this

proposed instruction. Trespass Instructions Order at 3.

Defendants responded that an intervening cause instruction was warranted with respect to

the trespass claim because plutonium contamination in the Class Area resulted solely from three

especially intense windstorms in January 1969 that blew plutonium-contaminated soil from the

903 pad area of Rocky Flats to the Class Area. They further asserted they had submitted

sufficient evidence supporting these allegations to warrant the instruction. *See* Defs.' Mem. re:

Facts & Evidence Warranting Intervening Cause Instruction (Doc. 1316) [hereinafter "Defs.'

Mem. re: Intervening Cause Instruction"]. Plaintiffs disputed that an intervening cause instruction

was warranted under trespass law or the evidence proffered by Defendants.

I determined that an intervening cause instruction was not warranted for the trespass

claims and therefore did not include Defendants' proposed language on this point in my

_____

[8]        This discussion pertains to Instruction No. 3.18 (causation) in the Start of Trial
and Final Instructions. This instruction was designated as No. 3.14 in the Trespass Instructions
Order.

instruction to the jury on causation. *See* Instruction No. 3.18.[9]  I reached this conclusion for two

reasons.  First, Defendants failed to demonstrate that an intervening cause as defined in

Colorado's standard jury instructions is a defense to liability for trespass under Colorado law.

The concept of intervening cause is part of the framework for determining proximate cause for

negligent conduct.  *See, e.g., White v. Caterpillar, Inc.*, 867 P.2d 100, 109 (Colo. Ct. App.

1994); *Ayala v. United States*, 846 F. Supp. 1431, 1441 (D. Colo. 1993); *see also*

Restatement (Second) of Torts § 441 (1965) (defining intervening cause as one that produces

harm to another after the defendant has committed a negligent act or omission and identifying

rules for determining whether the intervening cause "prevents the actor's antecedent negligence

from being a legal cause" of another's harm).  Under Colorado law, trespass is not grounded in

negligence, *see Burt v. Beautiful Savior Lutheran Church*, 809 P.2d 1064, 1067 (Colo. Ct. App.

1990), but rather is a strict liability tort for which proximate causation is established by proof that

the defendant intentionally undertook an activity or activities that in the usual course of events

caused the trespass.  *See In re Hoery*, 64 P.3d 214, 217-18 (Colo. 2003); Trespass Instructions

Order at 3-5.  Defendants did not identify any Colorado authority recognizing intervening cause

as a defense to trespass, and the Restatement makes no mention of such a defense in its discussion

of the tort of trespass.[10]  Accordingly, I found no legal basis for instructing the jury that

---

[9]       I reached the same conclusion with respect to Defendants' request for an
intervening causation instruction for the nuisance claims.  *See infra* Section II.B (regarding
Defendants' proposed nuisance Instruction No. 11).

[10]       Defendants represented in their reply brief that the Tenth Circuit had affirmed a
district court's instruction regarding intervening cause on a trespass claim.  *See* Defs.' Reply re:
Intervening Cause Instruction at 2 (citing *Scheufler v. General Host Corp.*, 126 F.3d 1261,
1267-68 (10th Cir. 1997) (applying Kansas law)).  This is not correct.  The instruction at issue in
*Scheufler* concerned a nuisance claim.  *See* 126 F.3d at 1267.

Defendants could avoid liability for any trespass that resulted "in the usual course of events" from their activities if they demonstrated the existence of an intervening cause as defined in Colorado's standard negligence instructions.

Second, even if proof of an intervening cause could defeat a trespass claim under Colorado law, Defendants failed to demonstrate there was competent evidence supporting such an instruction. An intervening cause is an action by a third party or other force that relieves the defendant of liability by breaking the chain of causation. *See, e.g.*, *Ayala*, 846 F. Supp. at 1441. The chain of causation is only deemed broken, however, if the intervening cause was not reasonably foreseeable. *Id.*; *Jones v. Caterpillar Tractor Co.*, 701 P.2d 84, 86 (Colo. Ct. App. 1984).

Defendants argued this requirement was satisfied because virtually all plutonium contamination in the Class Area resulted from three unforeseeable wind events in January 1969 that blew plutonium-contaminated soil from the 903 pad. Defendants characterized these wind events as unusual, unprecedented and therefore not reasonably foreseeable because they included gusts exceeding 100 miles per hour.

The evidence submitted by Defendants did not support these assertions. Even the report excerpts cited by Defendants acknowledged that the 903 pad was not the exclusive source of off-site plutonium contamination. *See* Defs.' Mem. re: Intervening Cause Instruction at 2-3 & Ex. 1. Nor did this evidence link releases from the 903 pad to three distinct wind events, but rather identified at least 24 high wind events in 1968-69 that contributed to the release of plutonium from the site. *Id.*, Ex. 1. One report provided by Defendants further stated that even "under routine meteorological conditions, wind-driven suspension of [plutonium-contaminated] particles

8

[from the 903 pad] occurred on a relatively constant basis." Defs.' Reply re: Intervening Cause Instruction (Doc. 1323), Ex. 3 at VIII-12.

The authors of the various reports submitted by Defendants also identified high wind events as any wind event with gusts greater than 40 miles an hour. *See id.*, Ex. 5 at III-2. Anyone who lives along the Colorado Front Range knows wind events of this magnitude are quite common in the vicinity of Rocky Flats. I do not need to take judicial notice of this fact because Defendants' proffered evidence on the intervening cause issue included a history of Boulder-area wind events from 1966 to 1995 demonstrating that wind events featuring gusts exceeding 60, 80, or even 100 miles per hour occur regularly in this area. Defs.' Mem. re: Intervening Cause Instruction, Ex. 1 (NOAA storm data); *see also id.*, Ex. 2. Finally, none of the various report excerpts produced by Defendants characterized any of the wind events they studied as unusual or unprecedented in any way. Accordingly, I found Defendants had not presented sufficient evidence to support an intervening cause instruction based on unforeseeably high winds in the Rocky Flats area.

In finalizing the instruction on causation (Instruction No. 3.18) before trial, I also deleted language that had been included in the corresponding instruction in the Trespass Instructions Order (No. 3.14 in the attachment to that order) because the standard Colorado jury instruction on causation did not include it. *See* Colo. Jury Instructions (Fourth) § 9:18.

### 2.   Stipulations

The trespass instructions I prepared in December 2004 included certain stipulations based on the parties' submissions and representations to the court. In the Trespass Instructions Order, I directed any party objecting to these stipulations: (1) to explain why the cited source of the

stipulation was not conclusive; and (2) to identify the evidence the party intended to present at trial to dispute the challenged stipulation. Trespass Instructions Order at 7-8. Defendants responded by objecting to two of the three stipulations I had included: that "Plaintiffs and other class members owned property in the Class Area as of June 7, 1989;" and that "Plutonium from the Rocky Flats plant has been deposited on the Class Properties and continues to be present there." *See* Defs.' Objs. to Identification of Stipulated Facts (Doc. 1315) [hereinafter "Defs.' Objs. to Stipulated Facts"].

Defendants objected to the first stipulation to the extent that "other class members" referred to holders of non-possessory interests in Class Area properties such as mortgage holders. This objection was unwarranted because I had previously severed claims made on behalf of individuals owning mortgagee or other security interests from the class trial. *See* May 2004 Order at 15. The definition of the "Class" for purposes of this trial provided in the subsequently prepared "Statement of the Case" instruction, *see* Instruction No. 1.1, reflected this ruling and addressed this concern.

The second stipulation to which Defendants objected had two components: (1) that plutonium from Rocky Flats had been deposited on Class Properties at some point in time; and (2) that plutonium from Rocky Flats continues to be present there.[11] Both components were based on statements by defense counsel at the July 22, 2004 hearing in this action. *See* Trespass Instructions Order at 8; July 22, 2004 Tr. at 31-32. These statements were consistent with other statements by Defendants in open court both before and after objecting to this proposed

---

[11]      "Class Properties" were defined as properties in the Class Area owned by Class members as of June 7, 1989. *See* Trespass Instructions Order at 7.

stipulation. *See* July 28, 2005 Hr'g Tr. (Doc. 1434) at 112-15; June 25, 1999 Tr. (Doc. 1133) at 19-21.

Defendants' initial objections to this stipulation did not dispute its first component, that plutonium from Rocky Flats was deposited on Class Properties, but rather focused on the second component, that plutonium continues to be present there. Defs.' Objs. to Stipulated Facts at 2-5. Defendants' theory and evidence disputing the latter proposition were based on newly submitted declarations by Peter Elzi and defense expert Dr. F. Ward Whicker to the effect that development in parts of the Class Area had disturbed plutonium-contaminated soil there. *Id.* & Exs. 4, 5. When Plaintiffs pointed out quite accurately that evidence of soil disturbance was not the same as evidence of soil removal, Defendants submitted additional declarations from Mr. Elzi and Dr. Whicker stating that certain properties in the Class Area had been stripped of all plutonium-contaminated soil in the course of their development.[12] *See* Defs.' Reply re: Objs. to Stipulated Facts (Doc. 1330), Exs. 3, 5.

Defendants also argued in their objections that they were not bound by their counsel's statements admitting the continuing presence of plutonium in the Class Area and/or that their counsel's statements did not have this meaning. Defs.' Objs. re: Stipulated Facts at 5. I was not persuaded by these arguments. Nonetheless, I decided to permit this issue to be tried after considering Defendants' prior statements in the light most favorable to them and doing the same with respect to the evidence Defendants asserted they would present at trial to dispute the continuing presence of plutonium in certain developed portions of the Class Area. Mr. Elzi's

---

[12]     I subsequently excluded Dr. Whicker's 2005 declarations upon Plaintiffs' motion. *See* Sept. 13, 2005 Hr'g Tr. (Doc. 1443) at 9; Mem. Op. re: *Daubert* Mots. and Mots. in Limine, Section II.B.1 (Dec. 7, 2006).

supplemental declaration that plutonium-contaminated soil had been completely removed from certain Class Properties was critical to this decision, which I reached with reluctance given Defendants' prior statements disclaiming any need to try the issue of continuing contamination. I determined, however, to give Defendants the benefit of the doubt in this regard.[13]

In accordance with these determinations, I revised the trespass instructions to delete the stipulation regarding the deposition and continuing presence of Rocky Flats plutonium in the Class Area, and instead instructed the jury in the introductory "Statement of the Case" instruction that "Defendants admit that plutonium from Rocky Flats is present in the Class Area but dispute that it is located throughout this area." Instructions No. 1.1. I further revised the trespass instructions to state that Plaintiffs had the burden of proving that "Plutonium from Rocky Flats is present on the Class Properties." Instruction No. 3.2. The instructions defined "Class Properties" as the properties owned by Class members in the Class Area. *Id.*

### B.    Defendants' Other Pretrial Trespass Arguments and Proposals

#### 1.    Pretrial arguments

In arguments to the court in connection with their *Daubert* motions and other motions in limine, and again in their August 2005 statement of their case, Defendants raised certain other issues relating to the jury instructions on the trespass claim. These arguments ignored my prior rulings and none warranted changes to the trespass instructions I had prepared.

---

[13]    Defendants ultimately did not present Mr. Elzi or other competent evidence on this point at trial, which caused this issue to reemerge at the close of trial as described in a separate memorandum opinion entered this date. *See* Mem. Op. re: Defs.' Theory of Plutonium Removal Through Real Estate Development (Dec. 7, 2006).

First, Defendants asserted that the issues to be decided at trial included whether any plutonium from Rocky Flats present on Class members' properties was tangible or intangible and also whether it had caused significant and substantial physical damage to these properties. Defs.' Theories of Case (Doc. 1420) at 2-3. I had previously considered and rejected these same contentions in both *Cook IX* and the Trespass Instructions Order. *See Cook IX*, 273 F. Supp. 2d at 1201; Trespass Instructions Order at 5-6. These prior rulings were reflected in the instructions I prepared for the trespass claims in December 2004, *see* Trespass Instructions Order, Attach. A at 2-4 (Nos. 3.11, 3.12), and in my instructions to the jury at trial. Instructions No. 3.2 (elements of trespass), 3.3 (presence of plutonium).

Defendants further requested before trial that the jury "be provided with guidance as to what magnitude of an invasion is required for a trespass to be actionable." Defs.' Theories of Case at 3 n.2. This request assumed an affirmative answer to a question I had already answered several times in the negative. Under Colorado law, a trespass by means of a physical invasion of property, such as I had held was at issue in this case, does not require a showing of a certain magnitude of invasion to be actionable. *See Cook IX*, 273 F. Supp. 2d at 1201 (citing *Hoery*, 64 P.3d at 221-222); Trespass Instructions Order at 5-6. Defendants' protestations in the months before trial that this issue remained to be decided ignored these prior rulings.

## 2.    Proposed supplemental trespass instruction

Proposed Supplemental Trespass Instruction No. 1 (significance of invasion) (submitted September 23, 2005): In this proposed supplemental instruction, Defendants requested that the jury be instructed that because plutonium is not perceptible to the senses, plutonium contamination on the Class properties would not constitute a trespass unless it was "of such a

13

magnitude as to impose a significant physical impact on the property or its users." *See* Defs.' Am.

Submission of Supplemental Jury Instructions (Doc. 1455), Ex. A at 17.  Defendants asserted this

instruction was required to fill "a gap" in my prior rulings regarding the elements of Plaintiffs'

trespass claim.  *Id.*  There was no gap in these rulings.  This proposed instruction contradicted my

prior rulings in *Cook IX* and the Trespass Instructions Order, as described above, and was

rejected for this reason.

### C.      Parties' Proposed Revisions to Trespass Instructions at End of Trial

#### 1.      Plaintiffs' Proposed Revisions[14]

Instruction Nos. 3.2 to 3.4 (elements of trespass claims): Near the close of trial, Plaintiffs

proposed that I revise each of these instructions to direct the jury that it need not find that the

trespassory invasion continued to the time of trial.  The basis for this proposal was Plaintiffs'

contention that § 930 of the Restatement (Second) of Torts only required them to demonstrate

that there was no reason to believe as of the time suit was filed that the injurious situation would

terminate at any definite time in the future.  *See* Pls.' Proposed Revions to Jury Instructions

(Doc. 1978), Ex. A, Nos. 3.2-3.4.  I do not concur with this reading of Restatement § 930 for the

reasons stated in my subsequent order on a related jury instruction issue.  *See* Order re:

Instruction No. 3.28 (Doc. 2064) at 9-10 (Jan. 27, 2006).  Accordingly, I rejected Plaintiffs'

proposed revisions to these instructions.

Instruction No. 3.5 (matters not relevant to trespass claim): In addition to a clarifying,

non-substantive change to the last paragraph of this instruction, Plaintiffs proposed that I add a

---

[14]      These proposed revisions were submitted in Plaintiffs' Proposed Revisions to Jury
Instructions (Doc. 1978), filed January 13, 2006.

new paragraph instructing the jury that Defendants had not presented evidence that any plutonium deposited in the Class Area had been removed by them or any other person. *See* Pls.' Proposed Revisions to Jury Instructions, Ex. A, No. 3.5. This proposed revision was directed at Defendants' theory that Rocky Flats plutonium deposited in the Class Area had been removed from some Class Properties through development activities, as was made clear by the related motion Plaintiffs filed seeking judgment as a matter of law on this theory. I treated this motion as a motion to exclude this theory from the jury's consideration, granted it, and revised Instruction No. 3.5 in accordance with this decision. The background and reasoning for this decision and my denial of Defendants' subsequent motions to reconsider it and revised Instruction No. 3.5 are too lengthy to be included here and therefore are set forth in a separate opinion issued this date. *See* Mem. Opinion re: Defs.' Theory of Plutonium Removal Through Real Estate Development (Dec. 7, 2006).

##### 2.    Defendants' proposed revisions[15]

Instruction Nos. 3.2 through 3.4 (elements of trespass claims): Defendants proposed that I insert nine references in these three instructions emphasizing that the jury make its findings with respect to the Class as a whole. This concept was already present in the jury instructions. *See, e.g.*, Instruction No. 1.1 (statement of the case and description of the Class); Instruction No. 3.2 (defining "Class Properties" as the properties owned by the Class). To eliminate any possibility of confusion, however, I added language to Instruction No. 3.1 (introduction to Plaintiffs' claims) specifically directing the jury that Plaintiffs were required to prove their trespass and nuisance

---

[15]    Unless otherwise noted, these proposed revisions were submitted in Defendants' Proposed Changes to Preliminary Jury Instructions (Doc. 1958), filed January 10, 2006.

claims for the Class as a whole. *See* Final Instructions, No. 3.1. This revision adequately addressed Defendants' concern and eliminated any need for the further revisions Defendants sought on this point here and elsewhere in the final instructions.

Instruction No. 3.2 (elements of trespass claims): Defendants' additional proposed revision to the last paragraph of this instruction repeated matters already covered by this and other instructions and was therefore unnecessary. *See, e.g.*, Instruction Nos. 1.4 & 1.5 (evidence), 1.8 (burden of proof), 3.2 (elements of trespass claims).

Instruction No. 3.3 (presence of plutonium): Most of Defendants' proposed revisions to this instruction were again based on their contention that the physical intrusion of plutonium onto Class Properties did not constitute a trespass under Colorado law unless it caused some additional actual and substantial damages to these properties. This contention was first rejected in 2003, and again in December, 2004. *See Cook IX*, 273 F. Supp. 2d at 1199-1201; Trespass Instructions Order at 5-6. Defendants' final attempt to insert this contention into the case, based on the same authority they advanced in 2003 and 2004, was also rejected.

Instruction Nos. 3.4 (continuing trespass): Defendants proposed that this instruction be revised to direct the jury that Plaintiffs must not only prove that it appears that plutonium will continue to be present on Class Properties indefinitely, but also that the activities that caused this contamination were themselves continuing. I rejected this proposal because it was contrary to Colorado law holding that the cessation or continuance of the conduct that caused a trespass is immaterial to deciding whether a continuing trespass exists. *See Hoery*, 64 P.3d 214 at 221. What is material to determining whether contamination is a continuing trespass is whether the contamination remains on the plaintiff's property, *see id.*, and whether it appears it will be there

16

indefinitely, *see* Restatement (Second) of Torts § 930 (1979) [hereinafter "Restatement"].

Defendants' proposed revisions were inconsistent with both authorities.

Instruction No. 3.5 (matters not relevant to trespass claim): I rejected Defendants' request

that I delete the first paragraph of Instruction No. 3.5 because this paragraph accurately reported

the Colorado Supreme Court's holding in *Hoery* that a continuing trespass may exist even though

the conduct that originally caused the invasion has ceased. *See* 64 P.3d at 221.

I denied Defendants' January 19 motion to strike the second paragraph of this instruction,

which directed the jury that Class members' actual or constructive knowledge of plutonium

contamination when they purchased their Class property was irrelevant to determining trespass

liability, for the reasons stated in my order of the same date. *See* Order (Doc. 2024) (denying

Defs.' Mot. to Strike Portion of Jury Instruction No. 3.5 (Doc. 2019)).

My reasons for rejecting Defendants' objections to Instruction No. 3.5 as revised to

address Defendants' theory of plutonium removal through development are too lengthy to be

stated here and therefore are set forth in a separate memorandum opinion entered this date. *See*

Mem. Op. re: Defs.' Theory of Plutonium Removal Through Real Estate Development (Dec. 7,

2006). *See also supra* Section I.C.1 (regarding Plaintiffs' proposed revisions to Instruction

No. 3.5).

**D.    Defendants' Proposed Revision to Trespass Instructions During Jury Deliberations**

On January 24, 2006, on the second full day of deliberations, the jury sent out a note

asking for a definition of the word "intentionally" as used in the statement of the second element

of Plaintiffs' trespass claims, *see* Instruction No. 3.2, and also asking whether the definition was

17

the same as "intentional" as used and defined in connection with Plaintiffs' nuisance claims.  I

informed the parties of this note and that I intended to answer "no," the definitions were not the

same, that Colorado law did not require Plaintiffs to prove that Defendants intended to commit a

trespass, *see, e.g., Bittersweet Farms, Inc. v. Zimbelman*, 976 P.2d 326, 329 (Colo. Ct.

App. 1998); Colo. Jury Instructions (Fourth) Civ. § 18:1 n.4, and that "intentionally" in the

context of the trespass claim meant just what was stated in Instruction No. 3.2:  that one or both

Defendants must have intended to commit act or acts that in the usual course of events resulted in

the trespass.  *See Hoery*, 64 P.3d at 217; Colo. Jury Instructions (Fourth) Civ. § 18:1 n.5;

Trespass Instructions Order at 3-5 (discussing *Hoery* and other Colorado law).

   The Defendants took the jury's question as an opportunity to seek revision of Instruction

No. 3.2.  In an "emergency motion" and accompanying letter requesting an immediate hearing,

Defendants requested that the jury be instructed according to the Colorado Supreme Court's

"verbatim" and "critical" direction in *Hoery* that "intentionally" means an act "done with

knowledge that it will to a substantial certainty result in entry of the foreign matter."  Defs.' Mot.

re: Jury's Note (Doc. 2050).[16]  The language cited by Defendants, however, was not a verbatim

holding from *Hoery*, or part of the court's holding on this issue at all.  Instead, it was a quotation

from a comment to the Restatement (Second) of Torts § 158(a), which the *Hoery* court cited as

indirect support for its actual holding, which, as reported in Instruction No. 3.2 and the answer to

the jury's question, is that "[a] landowner who sets in motion a force which, in the usual course of

---

   [16]   Although Defendants' motion contains some language disclaiming any intent to
change Instruction No. 3.2, the thrust of their letter, motion and oral argument was for precisely
this result.

events, will damage property of another" is liable for trespass. *Hoery*, 64 P.3d at 217.[17]  In

addition, Defendants' emergency motion failed to mention that I had ruled on this precise issue in

December, 2004, in response to a proposed jury instruction by Defendants that included the same

"substantial certainty" language they sought to insert in this instruction during the jury's

deliberations. *See* Trespass Instructions Order at 3-5.  Defendants' renewed and misleading

arguments on this point added nothing to my previous analysis and were rejected.

## II.   Instructions on Nuisance Claims

Both parties submitted proposed instructions and jury verdict forms regarding Plaintiffs'

nuisance claims in August, 2004.  Objections and argument regarding these instructions continued

into the fall.  After my May 2005 decision resolving the major issues presented by these

---

[17]   Defendants reported in their letter to the court requesting an emergency hearing on this issue that the "verbatim language" from *Hoery* is as follows:

> Under Colorado law, a defendant who sets in motion a force which, in the usual course of events, will damage property of another is guilty of a trespass on such property.  It is enough that an act is done with knowledge that it will to a substantial certainty result in the entry of the foreign matter.

Letter from J. Tangren, Counsel for Defendants, to the Hon. John L. Kane (Jan. 25, 2006).  The actual quotation from *Hoery* is:

> A landowner who sets in motion a force which, in the usual course of events, will damage property of another is guilty of a trespass on such property.  *Miller v. Carnation Co.*, 33 Colo. App. 62, 68, 516 P.2d 661, 664 (1973) (citing *Fairview Farms, Inc. v. Reynolds Metals Co.*, 176 F.Supp. 178 (D. Or. 1959); *see also* Restatement (Second) of Torts § 158(a) cmt. i ("It is enough that an act is done with knowledge that it will to a substantial certainty result in entry of the foreign matter.")

*Hoery*, 64 P.3d at 217.  Use of the "*see also*" citation identifies the Restatement comment as additional source material that less directly supports the court's statement of its "usual course of events" standard.  *See* The Bluebook: A Uniform System of Citation R. 1.2(a), at 46 (Columbia Law Review Ass'n et al. eds., 18th ed. 2005).

instructions, both parties submitted supplemental proposed nuisance instructions before trial, and proposed revisions to the Start of Trial nuisance instructions during and/or at the close of trial.

My rulings on the parties' proposed nuisance instructions and revisions were conveyed in the May 2005 Order and the instructions I prepared and provided to the parties and the jury at the start and close of trial. The rationale for these rulings, to the extent not previously conveyed, is set out below. These rulings were based on the common law of private nuisance declared by the Colorado courts, as informed by the Restatement (Second) of Torts and other relevant authority consistent with Colorado law.

Colorado nuisance law, however, as is the case in virtually all jurisdictions, is not always clear and consistent. This is not unexpected or intended as any criticism of the Colorado courts, because nuisance law has long been recognized as notoriously contingent and difficult to define. It has been called a "quagmire,"[18] and an "impenetrable jungle" full of "vagueness, uncertainty and confusion."[19] Justice Blackmun once observed that "one searches in vain . . . for anything resembling a principle in the common law of nuisance." *Lucas v. South Carolina Coastal Comm'n*, 505 U.S. 1003, 1055 (1992) (Blackmun, J., dissenting).

Nonetheless, to instruct a jury meaningfully on a nuisance claim, a judge must do his best to search for and find the common law principles and rules governing the claim, and to present those principles and rules to a lay jury in a form it can follow. Given the abundance of vague and sometimes contradictory authority in nuisance law, this was not an easy task in this action, which

---

[18]     John E. Bryson & Angus MacBeth, *Public Nuisance, the Restatement (Second) of Torts, and Environmental Law*, 2 Ecology L.Q. 241, 241 (1972).

[19]     W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 86, at 616, 617 (5th ed. 1984).

20

because of its nature, *see, e.g.*, May, 2005 Order at 3-4, and the obdurate positions taken by the parties, required a more complete and coherent definition of these principles and rules than is often the case.  It is, for example, one thing to state the general Colorado rule that a plaintiff asserting a claim for private nuisance must prove an interference with the use and enjoyment of property was "substantial and unreasonable," or the rule that an "unreasonable" interference is one in which the gravity of the harm outweighs the utility of the conduct causing it, *see, e.g.*, *Public Serv. Co. v. Van Wyk*, 27 P.3d 377, 391 (Colo. 2001), but quite another to define what this means, especially in a manner that a lay jury can understand and apply, when the parties ascribe such different meanings to these terms.

As described below, the parties' proposed instructions on such matters for the most part were too general and vague to be useful, or attempted to limit the relevant inquiry in a manner that, while occasionally having some basis in Colorado case law or the Restatement, ignored other equally binding or persuasive authority that required the jury to engage in a broader review.  The jury instructions I prepared for the nuisance claims, Instruction Nos. 3.6 to 3.17, were based on a thorough review of Colorado nuisance law, the Restatement nuisance provisions relied upon by the Colorado courts and related authority.  They were intended to provide the jury with a more complete, consistent and tailored statement of the law governing Plaintiffs' nuisance claims than was proposed by either party.  *See Elbel v. United States*, 364 F.2d 127, 134 (10th Cir. 1966) (judge cannot fulfill duty to guide, direct and assist the jury with "mere abstract statements of legal definitions," but rather must "fairly and impartially state the issues and applicable law in logical sequence and in the common speech of man").

A.    **Plaintiffs' Proposed Nuisance Instructions**[20]

No. 1 (elements of nuisance): I rejected this proposed instruction regarding the elements of Plaintiffs' nuisance claims in favor of an instruction I prepared, Instruction No. 3.6, which incorporates the concepts and some of the language proposed by Plaintiffs but in the easier-to-follow format used in Colorado's standard civil jury instructions for stating the elements of a claim. *See, e.g.*, Colo. Jury Instructions (Fourth) Civ. § 18:1 (trespass claim). Instruction No. 3.6 also states elements of the nuisance claim omitted from Plaintiffs' proposed instruction, namely that Plaintiffs must prove Defendants acted either intentionally or negligently in causing the nuisance, *see, e.g., Cook IX*, 273 F. Supp. 2d at 1202, and that the nuisance will apparently continue indefinitely, as required for Plaintiffs to prove a continuing nuisance for which they may recover damages in the form of diminution in market value. *See Cook X*, 358 F. Supp. 2d at 1013; Restatement § 930(1).

Instruction No. 3.6 and related Instruction Nos. 3.10-3.12 include the requirement that Plaintiffs prove that any interference caused by Defendants' intentional or negligent conduct was unreasonable. This requirement is based on the Colorado Supreme Court's statement in *Public Service Co. v. Van Wyk*, 27 P.3d 377, 391 (Colo. 2001), that "[t]o maintain a successful nuisance claim, a plaintiff must establish that the defendant has unreasonably interfered with the use and enjoyment of her property." *Van Wyk*, 27 P.3d at 391. This statement is in accord with other more general statements in Colorado case law that an interference must be unreasonable to

---

[20]    Unless otherwise noted, these proposed instructions were submitted in Plaintiffs' Proposed Nuisance Jury Instructions and Jury Verdict Form, submitted August 6, 2004.

constitute a nuisance.[21] *See, e.g., Allison v. Smith*, 695 P.2d 791, 794 (Colo. Ct. App. 1984);

*Lowder v. Tina Marie Homes, Inc.*, 601 P.2d 657, 658 (Colo. Ct. App. 1979).

The difficulty with addressing this requirement is that in *Van Wyk*, the Colorado high court

also stated quite clearly, based on § 822 of the Restatement (Second) of Torts, that proof of

unreasonableness is *only* required for interference caused by intentional conduct, and is *not* an

element of a nuisance claim premised on negligent, reckless or abnormally dangerous conduct.

*See Van Wyk*, 27 P.3d at 391 (citing Restatement § 822).  *See also* Restatement § 822 (actor who

causes interference with another's use and enjoyment of property is liable for private nuisance if

the interference "is either (a) intentional and unreasonable, or (b) unintentional and otherwise

actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally

dangerous conditions or activities. "); *id.* § 822 cmt. c ("A person is subject to liability for an

intentional invasion when his conduct is unreasonable under the circumstances of the particular

case, and he is subject to liability for an unintentional invasion when his conduct is negligent,

reckless or abnormally dangerous.").  Plaintiffs alleged here that Defendants interfered with Class

members' use and enjoyment of property through both intentional and negligent conduct.

Accordingly, one of the questions presented by this instruction regarding the elements of nuisance

under Colorado law was which statement by the *Van Wyk* court regarding the "unreasonableness"

---

[21]      I note, however, that in its most recent delineation of the elements of nuisance
under Colorado law, the Colorado Supreme Court did not include the requirement that the
invasion of the plaintiff's interest in the use and enjoyment of his property be unreasonable. *See
Hoery*, 63 P.3d at 218 (stating only that the invasion must be substantial).  No party, however,
argued that this decision did away with the "unreasonableness" element of a nuisance claim stated
in *Van Wyk* and other, earlier Colorado decisions.

requirement to follow in a case that includes allegations of interference caused by intentional and negligent conduct.[22]

After reviewing applicable authorities, I decided to instruct the jury that Plaintiffs must prove the alleged interference was "unreasonable," without making a distinction between interference caused by intentional conduct, negligent conduct or some combination of the two. This conclusion was based in part on the difficulty the jury would face in a case such as this, in which the alleged nuisance may have resulted from a combination of intentional conduct and negligent conduct, if it had to apply an unreasonableness standard to the portion of the interference resulting from one type of conduct but not the other. More importantly, however, as the Restatement authors indicated, the standard for finding negligent conduct is very similar to the balancing test employed in Restatement § 826 for determining whether an intentional interference with use and enjoyment of property is unreasonable. *See* Restatement § 822 cmt. k; *id.* § 828 cmt. c. The Colorado Supreme Court has adopted this balancing test, which weighs the gravity of the harm against the utility of the conduct that caused the harm, as the standard for determining whether an interference with the use and enjoyment of property is "unreasonable." *See Van Wyk*, 27 P.3d at 391 (citing Restatement § 826). Accordingly, directing the jury to determine whether any proven interference is unreasonable using this balancing test, even with respect to an

_____

[22]      The Restatement explains that the concept of unreasonableness as used in nuisance law was developed only to establish liability for intentional interferences, because general principles of liability already existed for unintentional conduct that harmed another's interests, including the interest in the use and enjoyment of property. *See* Restatement § 822, cmt. g; *see also* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 87, at 624-25 (5th ed. 1984) (noting their discussion of nuisance, including its "unreasonableness" requirement, applies only to interferences resulting from intentional as opposed to negligent or abnormally dangerous conduct). The conduct at issue in *Van Wyk* was intentional. 27 P.3d at 391-92.

interference that may be caused by negligent conduct or some combination of negligent and intentional conduct, is not necessarily inconsistent with the Restatement or *Van Wyk*'s recitation of Restatement § 822, but rather is merely redundant in some respects. *Cf. Pestey v. Cushman*, 788 A.2d 496, 506 (Conn. 2002) (concluding on this basis that while Restatement language does not make point clearly, a showing of unreasonableness is an essential element of a private nuisance action based on negligent conduct). Finally, directing the jury in this manner is in accord with the Colorado Supreme Court's unequivocal statement that "[t]o maintain a successful nuisance claim, a plaintiff must establish that the defendant has unreasonably interfered with the use and enjoyment of her property." *Van Wyk*, 27 P.3d at 391.

No. 2 (interference defined): I rejected this proposed instruction in favor of the instruction I prepared, Instruction No. 3.7 (interference defined), based on Plaintiffs' subsequent narrowing of the forms of interference they allege Defendants caused, and my ruling in the May 2005 Order regarding which of Plaintiffs' proffered forms of interference were capable of resolution on a class-wide basis. *See* May 2005 Order at 3-11. Instruction No. 3.7 defines this element of Plaintiffs' nuisance claim by specifying and explaining the forms of interference the jury may consider in deciding whether either Defendant has interfered with Class members' use and enjoyment of property.

No. 3 (interference and contamination): I adopted Instruction No. 3.7 (interference defined) in lieu of this instruction because it is a more complete statement of what could constitute an actionable interference in this case.

In preparing Instruction No. 3.7, I rejected Plaintiffs' proposed language suggesting that contamination alone can constitute interference with the use and enjoyment of property for the reasons stated in the May 2005 Order at 9-11.

No. 4 (interference and health risk): I rejected this proposed instruction in favor of Instruction No. 3.7 (interference defined), which is generally consistent with this proposed instruction but provides clearer direction on what might constitute an actionable interference in this case.

No. 5 (conduct element): I rejected this proposed instruction in favor of an instruction I prepared, Instruction No. 3.13, which more fully defines the conduct element of Plaintiffs' nuisance claim and reflects my subsequent ruling that the activities alleged to have caused the nuisance are not ultrahazardous activities subjecting Defendants to strict liability.  *See* May 2005 Order at 11-14.

In preparing Instruction No. 3.13, I overruled Defendants' objection that Plaintiffs had waived the right to claim nuisance based on intentional conduct.  Although Defendants are correct that Plaintiffs failed to note this issue in the December 2003 Status Report, I found no prejudice in allowing Plaintiffs to try it in connection with their nuisance claims because it had long been part of these claims and was also at issue in connection with Plaintiffs' trespass claims.

No. 6 (intentional conduct): I rejected this proposed instruction in favor of Instruction No. 3.14, which I prepared, because Instruction No. 3.14 more closely follows the Colorado Supreme Court's definition of intentional conduct in *Van Wyk*.  *See* 27 P.3d at 394, 395; *see also* Restatement § 825 & cmt. d.

No. 7A (ordinary negligence): I rejected this proposed instruction in favor of Instruction

No. 3.15 (defining negligent conduct), which I based in part on Plaintiffs' alternate proposed

negligence instruction, No. 7B.

No. 7B (negligence - inherently dangerous activity): I accepted this proposed instruction

subject to revisions I made to conform it to Plaintiffs' theory of the case, *see* Pls.' Statement of

Claims (Doc. 1419) at 3-4 (nuisance claim premised on risk posed by plutonium and other

hazardous substances), and the standard Colorado jury instruction defining an inherently

dangerous activity and the corresponding standard of care. *See* Colo. Jury Instructions (Fourth)

Civ. § 9:7 & n.1 (2002). The instruction I prepared is Instruction No. 3.15.

Defendants' objections to Plaintiffs' proposed instruction were overruled. As Defendants

acknowledge, the concept of inherently dangerous activity, requiring the highest degree of care, is

distinct from the concept of ultrahazardous activity triggering strict liability. *See* Defs.' Objs. to

Pls.' Nuisance Jury Instructions at 55 (Aug. 6, 2004); *Bennett v. Greeley Gas Co.*, 969 P.2d 754,

764 (Colo. Ct. App. 1998). Thus, my determination that Plaintiffs had failed to demonstrate that

the activities in question were ultrahazardous and thus subject to strict liability, *see* May 2005

Order at 11-14, was not determinative of whether these activities were inherently dangerous.

Whether an activity is inherently dangerous and subject to the higher standard of care is a

question of law to be determined by the court. *Imperial Distr. Servs., Inc. v. Forrest*,

741 P.2d 1251, 1254 (Colo. 1987). The higher standard applies only when: (1) the activity in

question is inherently dangerous; (2) the defendant possesses expertise in dealing with the activity;

and (3) the general public would not be able to recognize or guard against the potential danger.

*See id.* at 1255-56; *Melton v. Larrabee*, 832 P.2d 1069, 1072 (Colo. Ct. App. 1992); *Mannhard*

27

*v. Clear Creek Skiing Co.*, 682 P.2d 64, 65-66 (Colo. Ct. App. 1983). "It is only where all minds concur that the defendant is engaged in an activity that poses a high risk of injury to others that the court, as a matter of law, may instruct the jury to hold the defendant to the highest standard of care." *Imperial Dist.*, 741 P.2d at 1255. Applying this standard, the Colorado courts have found that activities including the transmission of electricity and the sale of propane gas are inherently dangerous activities to which the higher standard of care applies. *See Federal Ins. Co. v. Public Serv. Co.*, 570 P.2d 239 (Colo. 1977); *Blueflame Gas, Inc. v. Van Hoose*, 679 P.2d 579, 587-89 (Colo. 1984); *see also Pizza v. Wolf Creek Ski Development Corp.*, 711 P.2d 671, 683 (Colo. 1985) (discussing *Federal Ins. Co.* and *Blueflame Gas*).

Upon consideration of the criteria stated by the Colorado Supreme Court, I found the activities underlying Plaintiffs' trespass and nuisance claims were inherently dangerous activities to which the higher standard of care applied. Inherently dangerous activities are activities that "by their very nature create a danger to the public that otherwise does not exist." *Mannhard*, 682 P.2d at 66. It is beyond dispute that the generation, use, storage and disposal of plutonium and other hazardous materials in the course of nuclear weapons production constitute inherently dangerous activities under this test. There should also be no question that Defendants possessed expertise in dealing with plutonium and these other dangerous substances and that the general public had no means to recognize or guard against their potential danger. Accordingly, the higher standard of care applies to these activities, and the jury was so instructed in Instruction No. 3.15 (defining negligent conduct).