No. 8 (res ipsa loquitur): I rejected this proposed instruction because Plaintiffs failed to demonstrate it was appropriate given, among other things, the variety of conduct Plaintiffs alleged was responsible for the alleged nuisance.

No. 9 (ultra-hazardous activity): I rejected this proposed instruction for the reasons stated in the May 2005 Order at 11-14.

No. 10 (unreasonable interference defined): I rejected this proposed instruction because it was an incomplete statement of what constitutes an unreasonable interference under Colorado law and the Restatement provisions on which the Colorado Supreme Court has relied in defining unreasonable interference. *See Van Wyk*, 27 P.3d at 391 (citing Restatement § 826). The instructions I prepared on this issue in lieu of this instruction are Instruction Nos. 3.10 to 3.12.

Defendants objected to the concept stated by Plaintiffs in this proposed instruction, which is that harm without compensation may be unreasonable. I overruled this objection and included this concept as one of the factors to be considered by the jury in deciding the utility of Defendants' conduct. *See* Instruction No. 3.12 (utility of conduct). I made this determination based on the Restatement and other authorities recognizing that in a nuisance action for damages,[23] "the legal utility of the activity [causing the nuisance] may also be greatly reduced by the fact that the actor [is causing the nuisance] without compensating his neighbors for the harm done to them." Restatement (Second) of Torts § 826 cmt. e; *id.* § 822 cmt. d ("It may be reasonable to continue an important activity if payment is made for the harm it is causing but

---

[23]     The Restatement and others have noted that the determination of whether an interference is unreasonable is different in a nuisance action seeking damages as opposed to one seeking injunctive relief, and that much confusion has resulted from the failure of courts to recognize this difference. *See, e.g.*, Restatement § 822 cmt. d; W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 88A at 631-32 (5th ed. 1984).

29

unreasonable to initiate or continue it without paying."); *id.* cmt. g (stating, in connection with the rules for determining when an interference with use and enjoyment of property is unreasonable, that "[l]iability for damages is imposed in those cases in which the harm or risk to one is greater than [a person] ought to be required to bear under the circumstances, at least without compensation."); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 88, at 629 (5th ed. 1984) [hereinafter "*Prosser & Keeton*"] (unreasonable interference may be found when it was unreasonable for defendant to act as it did without paying for the harm inflicted).

Other courts employing the Restatement's balancing test for determining whether an interference is unreasonable in the context of an action for damages have recognized this factor, *see, e.g.*, *Pestey*, 788 A.2d at 508 ("Ultimately, the question of reasonableness is whether the interference is beyond that which the plaintiff should bear, under all of the circumstances of the particular case, without being compensated."); *Walsh v. Town of Stonington Water Pollution Control Auth.*, 736 A.2d 811, 819-20 (Conn. 1999) (the utility of the conduct weighed under the balancing test stated in Restatement § 826 includes both the general activity and what is done about its consequences), and numerous other courts have recognized and applied the general principle that, in a nuisance action for damages, a useful and important activity may be unreasonable if no compensation is paid for even the relatively small harm that it causes. *See, e.g.*, *Rattigan v. Wile*, 841 N.E.2d 680, 686 (Mass. 2006); *Adkins v. Thomas Solvent Co.*, 487 N.W.2d 715, 723 (Mich. 1992); *Meat Producers, Inc. v. McFarland*, 476 S.W.2d 406, 411 (Tex. Civ. App. 1972). Although the Colorado Supreme Court has not considered this issue, I have no reason to believe it would take a different path and omit this fundamental consideration from the "gravity of harm versus utility of conduct" balancing test it has declared for deciding

30

whether an interference with use and enjoyment of property is "unreasonable" in a nuisance action for damages. *See Van Wyk*, 27 P.3d at 382, 392 (in a nuisance action for damages, "a finding of unreasonableness" requires "[a] determination that the social utility of the act causing the invasion that interferes with the use and enjoyment of the land does not outweigh the harm of that invasion").

*See also infra* Section II.B (regarding Defendants' proposed nuisance Instruction No. 6 and the definition of "unreasonable" interference under Colorado law); *infra* Section II.C.2 (regarding Defendants' proposed revisions to Instruction No. 3.12).

No. 11 (unreasonable and substantial defined by normal community member standard): I rejected this proposed instruction in favor of instructions I prepared, Nos. 3.8 (introduction to substantial and unreasonable interference) and 3.9 (substantial interference), which accepted the definition advanced by Plaintiffs in this proposed instruction, but, to avoid juror confusion, assigned this definition to the determination of whether an interference is substantial, rather than both "substantial" and "unreasonable." *See* Instruction No. 3.9.  The concept of an "unreasonable" interference was addressed separately in Instruction Nos. 3.10 through 3.12.

Application of the "normal community member" standard to determine whether an interference is "substantial" is consistent with Colorado authority, *see Lowder*, 601 P.2d at 658; *Northwest Water Corp. v. Pennetta*, 479 P.2d 398, 400 (Colo. Ct. App. 1970), and with the Restatement's separate treatment of the concepts of "significant" or substantial interference, *see* Restatement § 821F (cited with approval in *Van Wyk*, 27 P.3d at 391), and "unreasonable" interference, *see* Restatement § 826 (also cited with approval in *Van Wyk*, 27 P.3d at 391, 392). The Tenth Circuit has also treated the requirements that the interference be "substantial" and

"unreasonable" as separate requirements under Colorado law, and defined "substantial" interference by reference to the community member standard. *Haas v. Lavin*, 625 F.2d 1384, 1389 (10th Cir. 1980).

Treating the "substantial" and "unreasonable" requirements separately also eliminates the confusion inherent in the *Van Wyk* court's statement of the two different Restatement tests, § 821F's community member standard and § 826's harm versus utility balancing test, for determining whether an interference is "unreasonable," without stating any test for determining when an interference is also "substantial." *See Van Wyk*, 27 P.3d at 391.

No. 12 (lower property values as evidence of substantial and unreasonable interference): I rejected this proposed instruction but incorporated one of the concepts it advanced, that evidence of a depreciation in property values is evidence that an interference is substantial, in Instruction No. 3.9 (defining "substantial" interference). *See also infra* Section II.B (regarding Defendants' proposed nuisance Instruction No. 9).

I also rejected the implication in this proposed instruction that a decrease in property value, in combination with other factors, could establish the separate element of interference with the use and enjoyment of property. This implication is contrary to my subsequent ruling in the May 2005 Order that a decrease in market value is not an interference with the use and enjoyment of property or evidence that an interference has occurred. May 2005 Order at 8-9; *see Cook IX*, 273 F. Supp. 2d at 1209. The jury was instructed consistent with this ruling in Instruction No. 3.7 (interference defined).

No. 13 (balancing harm and utility): I rejected this proposed instruction in favor of an instruction I prepared, No. 3.10 (balancing test), which incorporates many of the concepts

proposed here by Plaintiffs and further instructs the jury that they must determine the unreasonableness of the interference using an objective standard. *See* Restatement § 826 cmt. c.

No. 14 (gravity of the harm): I rejected this proposed instruction in favor of an instruction I prepared, No. 3.11 (gravity of harm), which incorporates Plaintiffs' proposal and expands on it consistent with Restatement § 827 and its commentary.

No. 15 (utility of conduct): I rejected this proposed instruction in favor of Instruction No. 3.12 (utility of conduct), in which I incorporated Plaintiffs' proposal and expanded on it consistent with Restatement § 828 and its commentary. For the reasons stated in connection with Plaintiffs' proposed nuisance Instruction No. 10 above, I also instructed the jury in Instruction No. 3.12 that one of the factors to be considered in assessing the utility of Defendants' conduct was whether it was unreasonable for this conduct to harm Class members, that is, interfere with Class members' use and enjoyment of their properties, without compensation.[24]

No. 16 (separate findings for each defendant): I accepted this instruction, but revised it to apply to both the trespass and nuisance claims. The final instruction on this topic is Instruction No. 3.19 (separate findings).

Supplemental Proposed Limiting Instruction: Utility versus Harm (submitted September 23, 2005 in Doc. 1456): I rejected this proposed instruction in favor of Instruction Nos. 3.10 (balancing test) and 3.12 (utility of conduct), which provided a more complete explanation of the balancing test used to determine whether an interference with the use and enjoyment of property is unreasonable and the factors to be considered in evaluating the utility of

---

[24]     Instruction Nos. 3.10-3.12 defined the "harm" to Class members for purposes of the gravity of the harm versus utility of the conduct balancing test as any proven interference with Class members' use and enjoyment of their properties.

the conduct as part of that balancing test. *See* discussion in this section regarding Plaintiffs' proposed nuisance Instruction Nos. 10 and 15.

## B.   Defendants' Proposed Nuisance Instructions[25]

No. 1 (elements of nuisance liability): I accepted the form of this proposed instruction over that proposed by Plaintiffs, *see supra* Section II.A (regarding Plaintiffs' proposed nuisance Instruction No. 1), but rejected its statement of the elements of the nuisance claims in favor of the more complete and accurate statement of these elements in Instruction No. 3.6. I also rejected this proposed instruction's statement of various affirmative defenses and suggestion that liability for nuisance would be tried on an individual rather than class basis because they were contrary to the law of the case. *See, e.g.*, May 2005 Order at 3-10; *Cook X*, 358 F. Supp. 2d at 1004, 1013; May 2004 Order at 5-10; April 2004 Order at 6-10. Defendants' concerns regarding individual as opposed to class-wide liability were addressed by the definition of the class-wide interferences to be tried. *See* May 2005 Order at 3-11; Instruction No. 3.7 (interference defined).

No. 2 (interference based on diminution in value): I rejected the form of this proposed instruction, but accepted the concepts it stated, which I included in Instruction No. 3.7 (interference defined) and No. 3.13 (actionable conduct).

No. 3 (interference based solely on contamination): I rejected the form of this proposed instruction, but accepted the concept it stated, which I incorporated in Instruction No. 3.7 (interference defined).

---

[25]   Unless otherwise noted, these proposed instructions were submitted in Defendants' Submission of Nuisance Jury Instructions and Jury Verdict Forms, and Defendants' Objections to Plaintiffs' Nuisance Jury Instructions, dated August 6, 2004.

Nos. 4 & 5 (interference based on unfounded fears or threat of future harm): I rejected

these proposed instructions in a bench ruling at the September 8, 2004 jury instruction conference

because both instructions were contrary to the law of the case.  Sept. 8, 2004 Tr. (Doc. 1279)

at 18; *see Cook IX*, 273 F. Supp. 2d at 1202-08.  In addition, Defendants' proposed nuisance

Instruction No. 4 was unnecessary in light of my subsequent determination that interference based

on Class members' fears and concerns would not be decided in the class trial. *See* May 2005

Order at 7.

No. 6 (definition of substantial and unreasonable): I rejected this proposed instruction

because it was an incomplete and incorrect statement of applicable law.

I rejected the proposed instruction's statement of a single definition for the concept of

"substantial and unreasonable" interference for the reasons stated above in connection with

Plaintiffs' proposed nuisance Instruction No. 11. *See supra* Section II.A.  I addressed the concept

of "substantial" interference separately in Instruction No. 3.9 and defined it by reference to the

"normal member of the community" consistent with Colorado precedent. *See supra* Section II.A

(regarding Plaintiffs' proposed nuisance Instruction No. 11).

With respect to the requirement that an interference be "unreasonable" for nuisance

liability to attach, Colorado law follows Restatement § 826(a) in requiring plaintiffs to prove

unreasonable interference by demonstrating that the gravity of the harm outweighs the utility of

the conduct that caused the harm. *See Van Wyk*, 27 P.3d at 391, 392.  Defendants' interpretation

of this test in this proposed instruction would have precluded a finding of substantial and

unreasonable interference, and hence a finding of nuisance, any time the utility of a defendant's

enterprise to the general public outweighed the harm to individual plaintiffs.

35

The Colorado Supreme Court has not specifically addressed the scope or content of the gravity of the harm versus utility of conduct test. It has indicated, however, that it follows the Restatement on this issue, *see id.*, and neither the Restatement section upon which *Van Wyk* relies nor related Restatement provisions and commentary support the simplistic interpretation of this test advanced by Defendants. The Restatement identifies a variety of factors that should be considered in determining whether the gravity of the harm outweighs the utility of the conduct, only one of which, the "social value" of the conduct causing the harm, is included in Defendants' proposed instruction. *See* Restatement § 828 & cmt. e (one factor to be considered in determining the utility of the conduct causing an interference is the "social value" served by this conduct, that is the degree to which the conduct advances or protects the public good). The Restatement specifically recognizes that a high social utility is not determinative, especially in an action for damages. *See, e.g.*, Restatement § 828 (identifying three factors, social value of the conduct, its suitability to the locality and the impracticability of preventing or avoiding the invasion, as important to utility of conduct determination); *id.* § 828 cmt. c (conduct must have utility from the standpoint of all factors to outweigh the gravity of the harm it causes, so the fact that conduct has utility from the standpoint of one factor is not controlling); *id.* § 826 cmt. e (in damages action, utility of conduct may be greatly reduced by fact that neighbors are not being compensated for harm done to them). Other jurisdictions have also rejected the notion that an enterprise that interferes with the use and enjoyment of neighboring properties is not "unreasonable" or a nuisance in an action for damages if it serves a sufficiently important public purpose. *See, e.g.*, *Walsh*, 736 A.2d at 819-20 (relying on Restatement § 826 and related comments to reject this notion); *Atlas Chem. Indus., Inc. v. Anderson*, 514 S.W.2d 309, 316

36

(Tex. App. 1974); *Jost v. Dairyland Power Cooperative*, 172 N.W.2d 647, 651, 653-54 (Wis. 1970); *see also Prosser & Keeton* § 88 at 626 ("It is not necessarily a justification on the issue of damages that the social value or utility of the defendant's conduct outweighs the gravity of the harm that is being done.").[26]  Defendants have not cited any Colorado precedent suggesting the Colorado courts would ignore this authority and the Restatement to adopt the rule advocated by them.

In addition, under the Restatement, one of the factors to be considered in assessing the utility of a defendant's conduct is whether it was practicable for the defendant to prevent or avoid the interference with the use and enjoyment of neighboring properties.  Restatement § 828 (c) & cmt. h.  Consistent with this principle, the Colorado Supreme Court has declared that "it would be a sorry condition of the law if the courts were compelled to hold that the property of another might be taken because it would be either inconvenient or expensive to the one committing the nuisance to restrain or prevent its continuance."  *Krebs v. Hermann*, 6 P.2d 907, 910 (Colo. 1931) (quotations omitted).  Defendants' proposed definition of what constitutes an

_____

[26]     As one court succinctly stated:

> We know of no acceptable rule of jurisprudence which permits those engaged in important and desirable enterprises to injure with impunity those who engaged in enterprises of lesser economic significance.  The costs of injuries resulting from pollution must be internalized by industry as a cost of production and borne by consumers and shareholders, or both, and not by the individual.

*Atlas Chem. Indus., Inc. v. Anderson*, 514 S.W.2d 309, 316 (Tex. App. 1974).  That the enterprise in question here is a government facility rather than a private enterprise does not alter this analysis.  *See, e.g., Walsh*, 736 A.2d at 820 (same in context of municipal sewage treatment plant).

"unreasonable" interference ignores this principle and Restatement factor and thus is inconsistent with Colorado law as well.

Accordingly, I rejected the definition of "substantial and unreasonable" proposed by Defendants in their nuisance Instruction No. 6 and prepared Instruction Nos. 3.8-3.12 instead to provide the jury with a more complete and accurate definition of "substantial" and "unreasonable" based on the Colorado law, the Restatement (Second) of Torts §§ 821F, 822, 826-28 and related comments, and the other authority cited above. *See also supra* Section II.A (regarding Plaintiffs' proposed nuisance Instruction Nos. 10-15).

No. 7 (finding of unreasonableness requires showing of non-compliance with state and federal standards): I rejected this proposed instruction because Defendants failed to produce any authority supporting it. Defendants based this instruction and their proposed nuisance Instruction Nos. 14-15, 17-19 on their assertion that, as a matter of Colorado law, compliance with applicable state or federal regulatory standards conclusively establishes that an interference with use and enjoyment of property is reasonable and therefore not a private nuisance.[27] Defendants' authority for this assertion was the Colorado Supreme Court's decision in *Van Wyk v. Public Service Co*, 27 P.3d 377 (Colo. 2001).

In *Van Wyk*, the plaintiffs asserted that the defendant's upgrade of an electrical transmission line adjacent to their properties constituted a private nuisance. In order to upgrade the line, the defendant had been required by statute to apply to the Colorado Public Utility Commission ("PUC") for approval. Colo. Rev. Stat. § 30-28-127 (2004). As required by statute,

---

[27]    To the extent Defendants relied on federal preemption of the state duty of care to support these instructions, this contention was rejected in *Cook IX. See* 273 F. Supp. 2d at 1199.

the PUC reviewed the defendant's application to determine whether the proposed upgrade was "reasonable," using much the same gravity of harm versus utility of conduct balancing test as is applied in the nuisance context to determine whether an interference is reasonable or unreasonable. *Id.*; *see Douglas County Bd. of Comm'rs v. Pub. Utils. Comm'n ("Douglas County I")*, 829 P.2d 1303, 1305-06 (Colo. 1992). The PUC determined after receiving evidence and testimony in a five-day public hearing and in written post-hearing statements that the proposed upgrade, including the anticipated noise and electromagnetic fields emitted by the upgraded line, was reasonable under this standard. *Douglas County I*, 829 P.2d at 1305-06. The PUC's quasi-judicial determination of reasonableness, *id.* at 1307, was then heavily litigated in the courts and ultimately affirmed by the Colorado Supreme Court. *See Douglas County I*, 829 P.2d 1313 (reversing and remanding appeal of PUC's decision); *Douglas County Bd. of Comm'rs v. Pub. Utils. Comm'n ("Douglas County II")*, 866 P.2d 919, 921-22 (Colo. 1994) (affirming PUC decision).

Under these circumstances, when the plaintiff property owners brought a separate action alleging the noise and electromagnetic fields from the upgraded transmission line were an unreasonable interference with their use and enjoyment of property, the Colorado Supreme Court found that the PUC's adjudicatory determination that the upgraded line was reasonable, as previously affirmed by the Colorado Supreme Court, established that the alleged interference was reasonable as a matter of law to the extent that the PUC had anticipated and considered the noise and electromagnetic fields actually caused by the now operating transmission line in making this determination. *Van Wyk*, 27 P.3d at 393-94, 396-97. *Van Wyk*, therefore, does not stand for the general proposition that compliance with state or federal regulatory standards establishes the

39

reasonableness of a claimed interference in a private nuisance action. Instead, it teaches that a state agency's quasi-judicial determination that a specific activity is reasonable,[28] performed pursuant to statute and employing much the same utility versus harm balancing test as applies in the nuisance context, especially when affirmed by the courts on appeal, establishes that the specific activity so approved is reasonable in a subsequent nuisance action.

The state and federal standards identified by Defendants in their proposed nuisance Instruction No. 7 and in their subsequent briefing, that is the state regulatory standard for plutonium contamination in soil for construction purposes[29] and a variety of federal regulatory standards for the release of plutonium into the environment, share virtually none of the characteristics of the adjudicated determination of reasonableness relied upon by the *Van Wyk* court. Instead, these regulatory standards are more akin to zoning regulations and ordinances, compliance with which the Colorado courts have held does *not* defeat a claim of nuisance. *See, e.g., Hobbs v. Smith*, 493 P.2d 1352, 1354 (Colo. 1972) (approving generally accepted rule that an activity may constitute a nuisance regardless of compliance with zoning regulations); *Allison*, 695 P.2d at 794 ("Even if a particular use complies with zoning regulations, it may still constitute a private nuisance if there is substantial interference with a plaintiff's use and enjoyment of his land."). Further, the Colorado Supreme Court has affirmed a judgment of private nuisance even

---

[28]      The Colorado Supreme Court concluded the PUC's determination was adjudicative in nature because it affected specific parties and resolved particular issues of disputed fact between these parties by applying previously determined rules or policies. *Douglas County I*, 829 P.2d at 1307-08.

[29]      The state regulation in question, 6 Colo. Code Regs. 1007-1 § 4.60.1 (2005), requires that special construction techniques be used when plutonium contamination in soil exceeds two disintegrations per minute of plutonium per dry gram of soil or square centimeter of surface area. *Id.*

though the act in question was permitted by zoning regulations, done with reasonable care and skill and, of particular relevance here, performed in compliance with health regulations. *Hobbs*, 493 P.2d at 1354-55, 1356.

I was also persuaded by the additional grounds stated in Plaintiffs' September 1, 2004 reply brief (Doc. 1269) and November 8, 2004 response brief (Doc. 1292) that the state and federal regulations cited by Defendants are not the legal measure of what constitutes an unreasonable interference with the use and enjoyment of property under Colorado law.

For all of these reasons, I found no basis in Colorado law for Defendants' contention that Plaintiffs must prove that plutonium releases from Rocky Flats exceeded the cited state and federal standards in order to establish that the claimed interference with use and enjoyment of property was unreasonable and substantial. As a result, I rejected Defendants' proposed nuisance Instruction No. 7.

No. 8 (definition of substantial interference): I rejected this proposed instruction because it misstated the standard for determining substantial interference under Colorado law, *see, e.g.*, *Cook IX*, 273 F. Supp. 2d at 1202 (stating Colorado test); *Van Wyk*, 27 P.3d at 391; *Haas*, 625 F.2d at 1389 (applying Colorado law), and improperly interjected a subjective and individual component to this determination. The instruction I prepared defining this requirement is Instruction No. 3.9. *See also supra* Section II.A (regarding Plaintiffs' proposed nuisance Instruction No. 11), Section II.C.2 (regarding Defendants' proposed revisions to Instruction No. 3.9).

No. 9 (unreasonableness and reduction in property value): I rejected this proposed instruction because it incorrectly stated that Plaintiffs were required to prove that Defendants'

41

interference with the use and enjoyment of property caused a reduction in the value of Class properties as part of their burden of proving a substantial and unreasonable interference. While this factor is evidence of a substantial interference, *see Cook IX*, 273 F. Supp. 2d at 1209, it is not required to prove this element of Plaintiffs' nuisance claims.

The authorities cited by Defendants in support of this proposed instruction rely on the same passage in § 88 of *Prosser and Keeton on Torts*, which states that the substantial interference requirement is intended "to satisfy the need for a showing that the land is reduced in value because of the defendant's conduct." *Id.* at 623. In support of this statement, Prosser and Keeton cite comment c to Restatement § 821F. *Id.* However, neither this comment nor anything else in this Restatement section or its commentary, which define and explain the substantial interference requirement, supports Prosser and Keeton's statement. In *Van Wyk*, the Colorado Supreme Court relied on § 821F in defining what constituted a substantial and unreasonable interference under Colorado law, *see* 27 P.3d at 391, and there is no mention in other Colorado cases discussing this requirement that diminution in property value is a necessary component of it. *See, e.g., Lowder*, 601 P.2d at 658; *Northwest Water Corp.*, 479 P.2d at 400.

When a plaintiff in a private nuisance action seeks to recover "permanent" damages, which are measured by the diminution in property value caused by the nuisance, then obviously proof of damages in this form is required for the plaintiff to prevail on his claim. That was the case in *Van Wyk*[30] and is the case in this action. It does not mean, however, that such proof is also required to establish the separate "substantial and unreasonable" element of nuisance liability, and to do so

---

[30]  I believe this fact explains the *Van Wyk* court's subsequent statement that the plaintiffs in that case were required to prove a "substantial invasion . . . reducing the value of the land." 27 P.3d at 392.

would be nonsensical given that the law permits recovery of a variety of damages in a private nuisance action. *See Cook IX*, 273 F. Supp. 2d at 1210 (other damages that may be recovered in appropriate cases include the reasonable cost of repairing damage caused by the nuisance, lost rent and the like). Accordingly, Instruction No. 3.9 in this case instructed the jury that diminution in Class property value may be evidence that a substantial interference exists, but is not required to make this finding.

No. 10 (unreasonableness and priority in time): I rejected this proposed instruction because it was contrary to Colorado law. I had previously held that "coming to the nuisance" is not a defense to nuisance liability under Colorado law. *See* May 2004 Order at 6-7. In this instruction, Defendants asserted that whether a plaintiff knowingly came to the nuisance is nonetheless a factor for the jury to consider in deciding whether a claimed interference with the use and enjoyment of property is substantial and unreasonable enough for nuisance liability to attach. The only Colorado authority Defendants cited in support of this proposition, the Colorado Supreme Court's 1885 decision in *Platte & Denver Ditch Co. v. Anderson*, 6 P. 515 (Colo. 1885), did not support this assertion.[31] In addition, the Colorado Supreme Court and Court of

---

[31]     In this case, the Colorado Supreme Court considered whether a property owner could maintain a public nuisance claim based on the existence of a lawfully constructed and maintained ditch along the public street in front of his house. *Platte & Denver Ditch Co.*, 6 P. at 517-21. The Court held the property owner could not recover on this claim because he failed to prove he had suffered specific damages as required for an individual to recover for an alleged public nuisance. *Id.* at 520, 522. In the course of its discussion, the Court also noted that a person who buys property adjacent to ground lawfully dedicated to a public use such as a street or ditch easement takes that property subject to all the annoyances incident to the purposes of this dedication, while also making it clear that such annoyances did not include any damages resulting from "unlawful, improper, or negligent" operation of the public use. *Id.* at 521. These statements simply cannot be extrapolated to establish the general rule asserted by Defendants, especially in light of the other Colorado authority cited above.

Appeals have since affirmed that being first in time does not "in any measure operate to protect" a defendant from nuisance liability. *Krebs*, 6 P.2d at 910; *see Allison*, 695 P.2d at 794 ("it is no defense to an action for nuisance that the plaintiff 'came to the nuisance' by knowingly acquiring property in the vicinity of the defendants' premises"; quotation omitted). Restatement § 840D also does not support Defendants' proposed rule,[32] and to the extent it does it is contrary to established Colorado law as just described. The same is true with respect to Defendants' reliance on the cited selection from *Prosser and Keeton on Torts*.

No. 11 (cause and intervening cause): The first paragraph of this proposed instruction was undisputed, *see* Pls.' Submission re:  Nuisance Instructions at 1 (Aug. 6, 2004), and was therefore accepted as set forth in Instruction No. 3.18 (causation). *See also supra* Section I.A.1 (regarding revisions to parties' causation instruction).

I rejected the second paragraph of this proposed instruction, which would have instructed the jury that Defendants' conduct was not the legal cause of any alleged effect if an intervening cause also contributed to the effect. My decision was based on Defendants' failure to demonstrate an intervening cause instruction was warranted for either the trespass claim, *see supra* Section I.A.1, or the nuisance claim.

With respect to the nuisance claim, Defendants identified three alleged intervening causes: high wind events, the population boom in northwest Denver and the 1989 FBI raid on Rocky

---

[32]      This section and its commentary actually confirms that "coming to the nuisance" in itself will not bar recovery because "the defendant is required to contemplate and expect the possibility that the adjoining land may be settled, sold or otherwise transferred and that a condition originally harmless may result in an actionable nuisance when there is later development." Restatement § 840D cmt. b. Under this section, "coming to the nuisance" is only one factor to be considered in limited circumstances, *see id.* cmt. c, none of which were present in this action.

44

Flats. *See* Defs.' Mem. re: Intervening Cause Instruction (Doc. 1316) at 2-5. In order to be an intervening cause, the cause of the harm must not be reasonably foreseeable. *Ayala,* 846 F. Supp. at 1441; *Jones,* 701 P.2d at 86. For the reasons stated earlier, Defendants did not present evidence that the high wind events cited were not reasonably foreseeable. *See supra* Section I.A.1. Defendants' argument that it was unforeseeable that the Denver metro area would expand towards Rocky Flats was not supported by evidence, and the notion that a population boom in this area "caused" the alleged trespass or nuisance in any part defies logic.[33] Defendants' assertion that the FBI raid constituted an intervening cause for the claimed interferences with Class members' use and enjoyment of their properties was similarly unsupported.

No. 12 (negligence defined): I rejected this proposed instruction because it was not consistent with my subsequent determination that the activities at issue were inherently dangerous and therefore subject to a higher standard of care. *See supra* Section II.A (regarding Plaintiffs' proposed nuisance Instruction No. 7B); *see also* Instruction No. 3.15 (defining negligent conduct).

No. 13 (no presumption of negligence): I accepted this proposed instruction and incorporated it in Instruction No. 3.16 (accident not presumptive negligence), while also including some clarifying language drawn from the Colorado Supreme Court's decision in *Remley v. Newton,* 364 P.2d 581, 583 (Colo. 1961). *See* Colo. Jury Instructions (Fourth) Civ. § 9:12 & note (2002). Plaintiffs' objection, based on their unsuccessful request for a res ipsa loquitur instruction, was overruled.

---

[33]    Even if the private lands around Rocky Flats had remained lightly populated during Rocky Flats' nearly 40 years of operation, any trespass or nuisance caused by these operations would still have affected these lands and the property rights of their owners.

Nos. 14 & 15 (Plaintiffs' burden to prove non-compliance with federal standards):

I rejected these proposed instructions in bench rulings made at the September 8, 2004 jury

instruction conference because both instructions were contrary to my prior rulings in *Cook IX*.

Sept. 8, 2004 Tr. (Doc. 1279) at 18; *see Cook IX*, 273 F. Supp. 2d at 1179-99.  To the extent

these instructions relied on the Colorado Supreme Court's *Van Wyk* decision, they were rejected

for the reasons stated earlier in this section with respect to Defendants' proposed nuisance

Instruction No. 7.

No. 16 (statute of limitations defense):  I rejected this proposed instruction for the reasons

stated in *Cook X*, 358 F. Supp. 2d 1003 (D. Colo. 2004).

Nos. 17-18 (compliance with federal standards defense): I rejected these proposed

instructions because they were contrary to my prior rulings in *Cook IX*, 273 F. Supp. 2d at 1179-

99, and for the reasons stated earlier in this section with respect to Defendants' proposed nuisance

Instruction No. 7.

No. 19 (compliance with state standards defense): I rejected this proposed instruction for

the reasons stated earlier in this section with respect to Defendants' proposed nuisance Instruction

No. 7.

No. 20 (prescriptive easement defense): I rejected this proposed instruction in a bench

ruling at the September 8, 2004 conference because it was contrary to my May 2004 ruling

barring this defense. *See* Sept. 8, 2004 Tr. at 18; May 2004 Order at 7-10.

Proposed Supplemental Nuisance Instruction No. 1 (substantial and unreasonable -

plaintiffs' knowledge) (submitted Sept. 23, 2005 in Doc. 1455):  This proposed supplemental

instruction is a variation on Defendants' August 2004 proposed nuisance Instruction No. 10

46

(substantial and unreasonable - priority in time), and Defendants cited the same authority in support of both instructions. I rejected this supplemental proposed instruction for the same reasons I rejected Defendants' first proposed instruction on this topic. *See supra* this section (regarding proposed nuisance Instruction No. 10).

Proposed Limiting Instruction No. 7 (no emotional distress claims) (submitted Sept. 23, 2005 in Doc. 1455): I rejected this proposed instruction because it was unnecessary in light of Instruction Nos. 3.7 (interference defined) and 3.28 (additional questions), which both directed the jury not to consider or decide whether Class members had suffered any fear, anxiety or other emotional disturbance as a result of Defendants' activities.

### C.      Parties' Proposed Revisions to Nuisance Instructions at End of Trial

#### 1.      Plaintiffs' proposed revisions

Instruction Nos. 3.6 (elements of nuisance claim), 3.7 (interference defined), 3.17 (continuing nuisance): Plaintiffs proposed that I revise each of these instructions to reflect that the jury need not find that the non-trespassory invasion continued to the time of trial. *See* Pls.' Proposed Revisions to Jury Instructions (Doc. 1978) at 7-13. I rejected these proposed revisions for the reasons stated with respect to Plaintiffs' similar proposed revisions to the trespass instructions. *See supra* Section I.C.1 (regarding Plaintiffs' proposed revisions to Instruction Nos. 3.2-3.4).

Instruction No. 3.7 (interference defined): Plaintiffs proposed two additional revisions to this instruction during and near the end of trial. The first proposed revision instructed the jury that while Plaintiffs were required to prove that all Class members were subject to some form of interference with their use and enjoyment of property, it need not be the same form of interference

47

for all Class members. The second proposed revision addressed and defined interference as it related to Class members who did not live on their Class property. *See* Pls.' Proposed Revisions to Jury Instructions at 1-3 (Doc. 1885); Pls.' Proposed Revisions to Jury Instructions (Doc. 1978) at 10-11. Defendants did not object to these proposed revisions, which were consistent with my other instructions to the jury and supported by relevant authority. Accordingly, I accepted these revisions and incorporated them in the final version of Instruction No. 3.7.

###    2.    **Defendants' proposed revisions**[34]

Instruction No. 3.6 (elements of nuisance claim): I rejected Defendants' proposed revisions to this instruction. The proposed revisions directing the jury to decide the nuisance claims based on the evidence as a whole and with respect to the Class as a whole were unnecessary in light of other instructions addressing these points. *See, e.g.*, Instruction Nos. 1.1, 1.4 & 1.5; Final Instructions, No. 3.1; *supra* Section I.C.2 (regarding Defendants' proposed revisions to Instruction Nos. 3.2 through 3.4). Defendants' proposal to define the requirement of "substantial" interference by reference to a "substantially increased health risk" was not supported by any Colorado authority and was contrary to Colorado and other authority defining "substantial" interference by reference to the "normal community member" standard set out in Instruction No. 3.9. *See supra* Section II.A (regarding Plaintiffs' proposed nuisance Instruction No. 11), Section II.B (regarding Defendants' proposed nuisance Instruction No. 6).

I rejected on multiple grounds Defendants' proposal to redefine interference based on the "risk of future harm" to require proof that it is "more likely than not that the Class Area will be

---

[34]    These proposed revisions were set forth in Defendants' Proposed Changes to Preliminary Jury Instructions (Doc. 1958), filed January 10, 2006.

placed at a substantially increased health risk in the future by the continuing operation of the

Rocky Flats plant." First, I had previously held that a risk of future harm can constitute an

interference with the use and enjoyment of property. *See, e.g., Cook IX*, 273 F. Supp. 2d at 1208;

May 2005 Order at 6. A "risk" of future harm by definition means the "possibility" or "chance" of

future injury or loss, *Webster's Third New Int'l Dictionary* 1961 (1976); *Random House College*

*Dictionary* 1139 (1980), or "the element of uncertainty" regarding such future harm. *Black's*

*Law Dictionary* 690 (5th ed. 1983). Defendants' proposed revision would improperly require

Plaintiffs to prove a certainty, that the Class Area "will be placed at a substantially increased

health risk," rather than that there is a risk that some future harm will occur.[35] Defendants'

further proposal that the type and magnitude of future harm that might give rise to an interference

be limited to "a substantially increased health risk" was also inconsistent with my previous rulings

on this subject. *See, e.g., Cook IX*, 273 F. Supp. 2d at 1202-03, 1208; May 2005 Order at 5-6.

The two cases cited by Defendants in support of their proposed redefinition of interference

based on the risk of future harm were inapposite and unpersuasive for a number of reasons,

including that both concerned recovery of damages in negligence actions based on enhanced risk

of disease and/or emotional distress resulting from this risk. *See Boryla v. Pash*, 937 P.2d 813

(Colo. Ct. App. 1996) (medical malpractice action), *rev'd*, 960 P.2d 123 (Colo. 1998); *Potter v.*

*Firestone Tire & Rubber Co.*, 863 P.2d 795 (Cal. 1993). Instruction No. 3.6 addressed liability

---

[35]      Defendants' proposal that Plaintiffs prove this condition was "more likely than
not" to occur merely repeated Plaintiffs' burden with respect to each element of their nuisance
claim. *See* Instruction No. 1.8 (burden of proof). Deleting this surplus language from
Defendants' proposed revision demonstrates that the effect of Defendants' proposed revision
would have been to require that Plaintiffs prove "the Class Area will be placed at a substantially
increased health risk," rather than that there is "chance" or "possibility" that this (or some other
harm) could occur in the future.

for nuisance, not recovery of damages for this or some other claim.  Further, the jury was specifically instructed at the start of trial in this instruction and in Instruction No. 3.7 (interference defined) that it should not consider Class members' fears or other emotional disturbance in deciding whether Defendants had interfered with Class members' use and enjoyment of property, and that interference based on a "risk of future harm" must be based on the existence of objective conditions that pose a demonstrable risk of future harm to the Class Area.

Instruction No. 3.7 (interference defined): I rejected Defendants' proposed revisions to this instruction for the reasons stated above with respect to their proposed revisions to Instruction No. 3.6.

Instruction No. 3.8 (introduction to "substantial" and "unreasonable" concepts): I rejected Defendants' proposed revision to this instruction because it was unnecessary in light of other instructions.  *See, e.g.*, Final Instructions, No. 3.1 (trespass and nuisance claims must be proved for the Class as a whole); *see also supra* this section (regarding Defendants' proposed revisions to Instruction No. 3.6).

Instruction No. 3.9 ("substantial" interference defined): I accepted Defendants' proposal to add a paragraph to this instruction directing the jury to decide whether any proven interference was "substantial" based only on the interference that was common to the class as a whole.  *See* Final Instructions, No. 3.9 (second paragraph).  This revision was consistent with an equivalent direction included in Instruction No. 3.11 regarding the jury's determination of whether any proven interference was "unreasonable."  *See* Start of Trial Instruction No. 3.11; May 2005 Order at 5.

I rejected Defendants' additional proposal that I replace the direction that an interference was "substantial" if a normal member of the community would find it "offensive, annoying or inconvenient," with a standard requiring that a normal member of the community find the interference "definitely offensive, seriously annoying, or intolerable." Defendants asserted this same standard in their August 2004 proposed nuisance instructions, which I rejected before trial because the proper standard for determining substantial interference under Colorado law is the "offensive, annoying or inconvenient" language stated in Instruction No. 3.9. *See supra* Section II.B (regarding Defendants' proposed nuisance Instruction No. 8); *Cook IX,* 273 F. Supp. 2d at 1202 (stating Colorado test).

Defendants misstated my decision in *Cook IX* when they asserted that I "recognized in *Cook IX* [that] the interference must be 'definitely offensive, seriously annoying, or intolerable'" to be "substantial" under Colorado law. Defs.' Proposed Changes to Prelim. Jury Instructions (Doc. 1958) at 61 (citing *Cook IX,* 273 F. Supp. 2d at 1203-04). The passage they cited reports the standard set out in § 821F of the Restatement, and makes no finding that this standard has been adopted in Colorado. My finding on the "offensive, annoying or inconvenient" standard employed by the Colorado courts and the Tenth Circuit (applying Colorado law) for determining a "substantial" interference is clearly stated earlier in *Cook IX. See* 273 F. Supp. 2d at 1202 (citing *Van Wyk,* 27 P.3d at 391 and *Haas,* 625 F.2d at 1389).

Instruction No. 3.10 (balancing test for "unreasonable" interference): I rejected Defendants' proposed deletion of the second paragraph of this instruction because this paragraph was an accurate statement of law and I deemed it necessary to prevent juror confusion in applying

51

the gravity of harm versus utility of conduct test for unreasonable interference.  *See, e.g., supra*

Section II.B (regarding Defendants' proposed nuisance Instruction No. 7).

Instruction No. 3.11 (gravity of the harm defined): I rejected Defendants' proposed

revision to the "character of the harm" portion of this instruction because it was confusing and

unnecessary.  Instruction No. 3.11 defined "harm" as any proven interference.  *See* Instruction

No. 3.11 (first paragraph).  Under this and other instructions, therefore, the jury would only

consider the gravity of this interference if it had already found interference was proved.  *See id.*;

Instruction No. 3.8; Jury Verdict Form, ¶¶ C, D.

Instruction No. 3.12 (utility of conduct defined): I accepted Defendants' proposed

revision to the first paragraph of this instruction to clarify that it applied to the utility of the

conduct that caused any proven interference.

I rejected Defendants' proposed revisions to numbered paragraph 2 because the original

language more accurately stated this factor as set forth in the Restatement.  *See* Restatement

§ 828(b) & cmt. g.

I rejected Defendants' proposed revisions to the third paragraph for several reasons.  First,

the Restatement provides that "the conduct for which the utility is being weighed includes both

the general activity and what is done about its consequences."  Restatement § 826 cmt. e; *see id.*

§ 828(c) & cmt. h.  There was no basis, therefore, to delete the language to this effect from this

instruction as Defendants proposed.

Defendants further proposed the addition of language to this and numbered paragraph 3

that would have precluded the jury from considering the steps Defendants took to address the

consequences of its conduct unless the jury first found that Defendants knew their conduct would

interfere with Class members' use and enjoyment of their property.  In support of these proposed

revisions, Defendants cited comment h to Restatement § 828, which, like the rest of the

Restatement's discussion of the "unreasonableness" requirement, states that this requirement only

applies to interferences that result from intentional conduct.[36]  *See, e.g.*, Restatement § 822 &

cmts. c, g; *id.* §§ 826-828.  As discussed earlier in this opinion, however, the Restatement's

gravity of harm versus utility of conduct balancing test is the measure of unreasonableness under

Colorado law for all alleged private nuisances, including those based on negligent conduct or a

combination of negligent and intentional conduct.  *See supra* Section II.A (regarding Plaintiffs'

proposed nuisance Instruction No. 1).  Accordingly, consistent with Colorado law, I prepared this

and the other instructions regarding the jury's determination of the utility of Defendants' conduct

and the whole of the unreasonableness determination to apply to any proven interference caused

by Defendants' intentional or negligent conduct.  This treatment is consistent with *Van Wyk*, the

Restatement and other authority for the reasons stated with respect to Plaintiffs' proposed

nuisance Instruction No. 1.  *See id.*  Defendants' proposal that a portion of the jury's

unreasonableness determination be limited based on a distinction between intentional and

negligent conduct was inconsistent with these determinations and was therefore rejected.

Defendants proposed that in numbered paragraph 3 the jury be instructed that any

interference Defendants caused was practicably avoidable only if they could have substantially

reduced the harm "consistent with their obligations to the Department of Energy."  Defendants

---

[36]     Defendants' proposed revisions, however, assumed a more limited definition of
"intentional conduct" than that set out in the Restatement or Colorado law.  *See, e.g.*,
Restatement § 825; *Van Wyk*, 27 P.3d at 394-95; *see also* Instruction No. 3.14 (defining
"intentional" conduct based on these authorities).

cited no authority in support of this proposed revision, and I am not aware of any that would support it. This proposed revision appears to be an attempt to interject something akin to a government contractor defense into this case, *see Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988) (recognizing and defining government contractor defense to tort claims), notwithstanding Defendants' failure to pursue this affirmative defense.[37]  *See infra* Section IV.C.6 (regarding Defendants' proposed instruction regarding evidence of contractual obligations).

Defendants further proposed that a sentence be added to numbered paragraph 3 directing the jury that "if it would have been necessary to cease the operation of the Rocky Flats Plant in order to avoid all harm to the Class members, the invasion was not practicably avoidable." Defs.' Proposed Changes to Prelim. Jury Instructions (Doc. 1958) at 69.  I rejected this proposed revision for two reasons.  First, no evidence was presented that would support a finding that it was necessary to cease operations at Rocky Flats to avoid all interference with Class members' use and enjoyment of their properties.  Second, the authority cited in support of this proposed revision, a sentence in comment h to Restatement § 828, is addressed to on-going operations that would have to be discontinued to reduce the harm materially.  This concern does not exist in a situation such as this, in which operations ceased more than fifteen years ago.

Defendants also proposed deletion of all language in numbered paragraph 3 that instructed the jury that if it determined it was practicable for Dow or Rockwell to avoid causing any

---

[37]     Although Defendants asserted the government contractor defense in their 1991 Answers to the Second Amended Complaint, neither pursued the defense or identified it as an issue to be tried as required in the pretrial planning process. *See* May 2004 Order at 2-3, 4 (summarizing Defendants' pretrial representations regarding affirmative defenses to be tried). Defendants also specifically disclaimed they were asserting this defense before trial. *See* July 29, 2005 Hr'g Tr. (Doc. 1433) at 299-300.

interference but that they did not take the measures necessary to do so, then the law would consider their conduct to have no utility. Defendants cite no authority for deleting this language, which is consistent with the Restatement's direction on this point. *See, e.g.*, Restatement § 828 cmt. h. I therefore rejected this proposed revision.

Finally, Defendants proposed revisions to numbered paragraph 4 of this instruction based on Restatement § 826(b), which states that an interference is unreasonable if the harm caused by the defendant's conduct "is serious and the financial burden of compensating for this and similar harm to others would not make the continuation of the conduct not feasible." This test for unreasonable interference, however, is an alternative to the gravity of harm versus utility of conduct balancing test stated in Restatement § 826(a). *See* Restatement § 826.

The jury instructions, consistent with Colorado law and both parties' August 2004 proposed nuisance instructions, directed the jury to apply § 826(a)'s balancing test to determine whether any proven interference was unreasonable. *See Van Wyk*, 27 P.3d at 392; Instruction No. 3.10 (balancing test). In an action seeking damages for a private nuisance, the Restatement contemplates that, as part of this balancing test, a jury may consider whether the defendant has interfered with the plaintiff's use and enjoyment of property without compensating the plaintiff for this harm, and that this factor may greatly reduce the legal utility of defendant's conduct. *See* Restatement § 826 cmt. e (commenting on § 826(a)'s gravity versus utility balancing test); *see also supra* Section II.A (regarding Plaintiffs' proposed nuisance Instruction No. 10). Instruction No. 3.12 as provided to the jury at the start of trial included this direction. Restatement § 826(b)'s separate test for unreasonable interference did not warrant any revision to this instruction.

Instruction No. 3.13 (intentional or negligent conduct): Defendants proposed that this instruction be revised to require that Plaintiffs prove any interference with the use and enjoyment of Class Properties caused by Defendants resulted from either intentional acts or negligent acts, and not from a combination of acts, some of which were negligent and others intentional.  I rejected this proposed revision because neither common sense nor the only authority cited by Defendants, *Van Wyk*, 27 P.3d 377 (Colo. 2001), supported it.

Instruction No. 3.14 ("intentional" conduct defined): I rejected Defendants' proposed revisions to this instruction because the original text of this instruction was a correct statement of Colorado law, *see Van Wyk*, 27 P.3d at 394, 395, and other instructions directed the jury to decide Plaintiffs' claims for the Class as a whole. *See, e.g.*, Final Instructions, No. 3.1; *see also supra* this section (regarding Defendants' proposed revisions to Instruction No. 3.6).

Instruction No. 3.15 (negligent conduct defined): I based this instruction on the standard Colorado jury instruction defining negligence and the standard of care for inherently dangerous activities. *See* Colo. Jury Instructions (Fourth) Civ. § 9:7 (2003).  Defendants proposed to rewrite this standard instruction to change the standard of care from the "highest *possible* degree of skill, care, diligence and foresight" to the "highest *practicable* degree of skill, care, diligence and foresight" and to insert additional language regarding the foreseeability of their actions.  I rejected both proposed changes because they were inconsistent with Colorado's standard instruction on this subject and not supported by Colorado law.

I also rejected Defendants' attempt to define their standard of care in this instruction by reference to their obligations to the Department of Energy.  This legal contention was not supported by authority, and was inconsistent with Defendants' decision not to pursue a

government contractor defense in this action. *See supra* note 37 and accompanying text; *infra* Section IV.C.6 (regarding Defendants' proposed instruction regarding evidence of contractual obligations).

Instruction No. 3.17 (continuing nuisance): Defendants proposed that this instruction be revised to require Plaintiffs to prove that Defendants continue at the present time to undertake activities at Rocky Flats that substantially and unreasonably interfere with Class members' use and enjoyment of their properties. I rejected this proposed revision based on Colorado law holding that the cessation or continuance of the conduct causing the property invasion is immaterial to determining whether a continuing property invasion exists. *Hoery*, 64 P.3d at 221. The relevant inquiry is whether the property invasion, *i.e.*, the substantial and unreasonable interference in the nuisance context, is continuing. *See id.*

I also rejected Defendants' proposal to revise this instruction to insert their proposed redefinition of what constitutes an interference with the use and enjoyment of property for the reasons stated earlier in this section with respect to Defendants' proposed revisions to Instruction Nos. 3.6 and 3.7.

## III.   Instructions on Damages

In *Cook IX*, I held that compensatory or actual damages, if any, in this action would be determined in accordance with Restatement § 930, and that the amount of these damages to the Class would be determined in the same trial at which any liability to the Class was decided. *See* 273 F. Supp. 2d at 1212, 1213. I also reiterated previous rulings rejecting Defendants' argument that Plaintiffs were barred from seeking punitive damages in this action. *Id.* at 1211-12.

I subsequently ordered Plaintiffs to prepare a plan for determining compensatory damages to the Class that addressed Defendants' arguments that various individual damages factors must be considered in deciding and awarding Class damages. *See* May 2004 Order at 12-14. Plaintiffs complied in July, 2004, and both parties provided additional briefing on the plan and Defendants' opposition to it. Subsequently, in September, 2004, both parties filed proposed instructions regarding the determination of damages in this action, a verdict form for damages and objections to each other's proposed damages instructions and verdict form.

Following a thorough review of the parties' briefs and proposed damages instructions, I ruled on the major issues presented by the parties' competing positions in May 2005. *See* May 2005 Order at 14-20. In summary, I held that the jury at the upcoming class trial would determine aggregate damages for Class members who, pursuant to Restatement § 930(1), were entitled to seek damages for any diminution in their properties' value caused by a continuing trespass or nuisance.[38] May 2005 Order at 15-16. I found the measure of these damages would be that stated in Restatement § 930(3)(b), that is the decrease in the value of the land caused by the continuing trespass or nuisance "measured at the time when the injurious situation became complete and comparatively enduring." Restatement § 930(3)(b). I further found that the primary individual damages factor asserted by Defendants, that some Class members had purchased their properties at a discount because of the continuing trespass or nuisance, was

---

[38]     The members of this sub-class consist of Class members who owned property within the Class Area on the later of: (i) January 30, 1990, when this action was filed; or (ii) the date on which the jury, per Restatement § 930(1), found that it appeared the trespass and/or nuisance committed by Defendants would continue indefinitely. *See* Restatement § 930(1) & cmt. b; *see also* Order re: Instruction No. 3.28 (Doc. 2064) at 4-9 (explaining basis for sub-class under these authorities).

properly viewed as the affirmative defense of setoff, and rejected the remainder of Defendants' asserted individual damages factors. *See* May 2005 Order at 17-20. I also concluded that the fact of any compensatory damages suffered by the Class, the amount of any such damages, and the facts necessary to determine any setoff for such damages could and would be determined by the jury at the class trial. *See id.* Finally, I held that the jury would be instructed to determine the amount of any compensatory damages for three categories of land – residential, vacant and commercial – and to express its findings regarding the amount of compensatory damages for each category in terms of both aggregate damages and an average percentage diminution in value. *Id.*

Based on these determinations and the parties' proposals, I prepared jury instructions regarding compensatory and punitive damages that were presented to the jury at the start of trial in October, 2005. *See* Start of Trial Instructions, Nos. 3.20-3.27. In preparing these instructions, I also relied on my standard instructions on damages where appropriate.

During and at the close of trial, the parties proposed additional and/or revised instructions to the jury regarding the determination of actual and punitive damages, which I considered in preparing my final instructions to the jury. My rationale for accepting or rejecting the parties' specific proposed jury instructions on damages is summarized below.

### A.    Plaintiffs' Proposed Damages Instructions[39]

No. 1 (damages introduction): I rejected this proposed instruction in favor of an instruction I prepared, No. 3.20 (damages - introduction), which was based on my standard

_____

[39]    Unless otherwise noted, these proposed instructions were submitted in Plaintiffs' Proposed Phase III Jury Instructions, Verdict Form, and Objections (Doc. 1272), filed September 3, 2004.

introductory damages instruction and included both the substance of Plaintiffs' proposed instruction and additional direction to the jury on the determination of actual damages.

No. 2 (compensatory damages): I rejected this proposed instruction in favor of Instruction No. 3.21 (damages - actual or nominal), which includes the substance of Plaintiffs' proposed instruction and additional direction tailored to the damages determination in this case.

No. 3 (measure of damages): I rejected this proposed instruction in favor of Instruction No. 3.22 (measure of actual damages), in which I included the substance of Plaintiffs' proposed instruction and additional, tailored direction on the measure of damages based on Restatement § 930 and Plaintiffs' final statement of claims before trial. *See* Pls.' Statement of Claims (Doc. 1419) at 5-6.

No. 4 (no double recovery): I rejected this instruction in favor of a revised version of Defendants' proposed instruction on this issue. *See infra* Section III.B (regarding Defendants' proposed damages Instruction No. 3.14). The instruction I prepared based on Defendants' proposed instruction and my standard instruction barring multiple recovery is Instruction No. 3.26.

No. 5 (mathematical certainty not needed): I rejected this proposed instruction but included some of the language it proposed in Instruction No. 3.20 (damages - introduction) where it was in accordance with my standard introductory damages instruction.

No. 6 (measuring diminution in value): I rejected this proposed instruction in favor of an instruction I prepared, No. 3.22 (measure of actual damages), which provided a more complete statement of the measure of damages under Restatement § 930(3)(b), tailored to reflect Plaintiffs' theory of the case as stated in their final pretrial statement of claims. *See* Order re: Instruction

No. 3.28 (Doc. 2064) at 3-4 (discussing Instruction No. 3.22 and its basis in Restatement

§ 930(3)(b)); Pls.' Statement of Claims (Doc. 1419) at 5-6. In Instruction No. 3.22, I also

clarified, as requested by Defendants, that the jury only consider any diminution in the value of

Class properties caused by a continuing trespass and/or nuisance proved by Plaintiffs, and

included a more complete statement of the "but for" test for determining whether any trespass or

nuisance had caused a diminution in these properties' values.

My instruction on the measure of damages in the class trial and Plaintiffs' burden in this

regard generally followed that stated in the May 2005 Order, but also simplified the damages

determination set out therein in several respects. As relevant to Instruction No. 3.22, this

included requiring Plaintiffs to prove by a preponderance of the evidence that the time for

measuring any actual damages, *i.e.*, the time at which the injurious situation became "complete"

and "comparatively enduring," was some time between June 6, 1989, when the FBI and U.S.

Environmental Protection Agency raided Rocky Flats, and March 26, 1992, when Rockwell pled

guilty to certain environmental crimes at Rocky Flats. This requirement was based on Plaintiffs'

final pretrial statement of their theory of the case. *See* Pls.' Statement of Claims (Doc. 1419)

at 5-6. The jury was instructed that if it found Plaintiffs had failed to prove that the "CCE" time

fell within this window, then it could not award actual damages.[40] *See* Instruction No. 3.22;

---

[40]    In the May 2005 Order, I also referred to the point in time at which actual
damages should be measured as the CCE "date," rather than the CCE "time" or "time period" as
stated in Instruction No. 3.22. May 2005 Order at 16. It was not my intention in sometimes
using the short-hand phrase "CCE date" to suggest that Plaintiffs were required to prove the
injurious situation became "complete" and "comparatively enduring" as of a specific date. The
Restatement does not include this requirement, but rather identifies the "*time* when the injurious
situation became complete and comparatively enduring" as the point at which the decrease in
property value caused by a continuing invasion should be measured. Restatement § 930(3)(b)
(emphasis added).