Verdict Form, ¶¶ E, F (Question Nos. 1, 6, 11). This was a narrower standard than was contemplated in the May 2005 Order, which would have allowed Plaintiffs to prove and recover actual damages measured at any point in time the jury found the injurious situation became complete and comparatively enduring. *See* May 2005 Order at 16-17.

No. 7 (aggregate damages and percentage reduction): I accepted this proposed instruction subject to some minor, clarifying revisions. The revised instruction is Instruction No. 3.23.

Plaintiffs' proposed instruction and Instruction No. 3.23 both simplified the damages determination process stated in the May 2005 Order by allowing the jury to determine and report the amount of aggregate damages to each property category, and the corresponding average diminution in property value, without the intermediate multiplication step set out in the May 2005 Order. *See* May 2005 Order at 16-17. I found this simplified treatment consistent with the May 2005 Order.

Before accepting this proposed instruction, I considered and rejected Defendants' objections to it, most of which were based on their ultimately unsuccessful contention that damages could not be determined on a class-wide basis. *See* May 2005 Order at 19-20. Two other objections asserted by Defendants, however, warrant a brief response.

First, Defendants asserted that permitting the jury to decide aggregate damages based on statistical proof would permit the jury to determine compensatory damages by "extrapolation" in the same manner that the Fifth Circuit disapproved in *Cimino v. Raymark Industries, Inc.*, 151 F.3d 297, 319-21 (5th Cir. 1998). I disagree. For reasons I will describe in a moment, the determination of aggregate damages as provided in this proposed instruction and adopted in Instruction No. 3.23 bears no resemblance to the damages determination disapproved in *Cimino*.

62

Defendants' further assertion that statistical proof of damages is *per se* impermissible under *Cimino*, and that only individual, non-statistical evidence may be used to prove damages in a class action, was unsupported and unsupportable.

In *Cimino*, the Fifth Circuit considered the validity of a three phase trial in personal injury and wrongful death suits brought by more than 2000 asbestos workers and their survivors against various manufacturers and suppliers of asbestos-containing products. In the last phase of this trial, two different juries decided whether 160 individual class members, who were selected as "sample cases," suffered from an asbestos-related injury or disease and, if so, the amount of wage loss, pain and suffering or other damages they incurred as a result. Following this trial and a bench hearing, the district court determined that the 160 sample cases were reliably representative of all cases involving like diseases and on this basis ruled each of the remaining 2128 cases would receive individual final judgments and damages based on the average of the verdicts rendered in the 160 sample cases involving their disease category. *See* 151 F.3d at 299-300, 302-305. As a result no trial on damages was held in these additional cases. *See id.* at 319-20. On appeal, the Fifth Circuit held, among other things, that the district court's extrapolation of the averaged results of the 160 sample damages cases to decide damages in the more than 2000 cases that not been tried violated the defendants' "Seventh Amendment right to have the amount of legally recoverable damages fixed and determined by a jury." *Id.* at 320.

This Seventh Amendment concern did not exist under Plaintiffs' proposed instruction or Instruction No. 3.23 because both directed that the amount of damages (if any) to be awarded to the Class was to be tried to and determined by the jury. Specifically, Instruction No. 3.23 directed the jury to consider and decide whether any proven trespass or nuisance by one or both

63

Defendants caused a diminution in value of Class Properties (defined as the properties owned by Class members within the Class Area), and, if so, the amount of this diminution in value expressed in the aggregate and in terms of the average percentage diminution in value suffered by these properties. *See* Instruction Nos. 3.22 & 3.23; Verdict Form, ¶¶ E, F. The parties presented evidence consistent with these directions and the jury decided these questions. There was no violation, therefore, of Defendants' Seventh Amendment right to have the amount of the legally recoverable damages caused by any proven trespass or nuisance fixed and determined by a jury. That the jury considered evidence derived through multiple regression analysis or other statistical techniques in making this determination is of no consequence under *Cimino* or the Seventh Amendment.

Defendants also argued in their objections to this proposed instruction that their Seventh Amendment right to have a single jury decide their liability and damages would be violated if the jury in the class trial was allowed to determine aggregate damages but allocation of these damages to individual Class members was deferred to a later proceeding. Again, I disagree. The jury instructions *in toto* required the jury to determine Defendants' liability to the Class for trespass and/or nuisance, and the amount of damages to the Class as a whole caused by any trespass or nuisance. How these damages are allocated to individual Class members will not require that these determinations be revisited. The post-trial allocation of any aggregate damages awarded by the jury is not, therefore, a matter that implicates Defendants' Seventh Amendment right to have fact issues decided by a single jury.

No. 8 (punitive damages): I rejected this proposed instruction in favor of Instruction No. 3.27, which incorporates most of Plaintiffs' proposed language but is a more complete

statement of applicable law.  Instruction No. 3.27, for example, instructs the jury regarding what

constitutes a "reasonable doubt" and that it could not consider Defendants' conduct relating to

plutonium and other radioactive materials after August 20, 1988 in deciding whether to award

punitive damages. *See, e.g., Cook IX*, 273 F. Supp. 2d at 1211 (explaining basis for August 20,

1988 limitation).

No. 8 (sic) (pre-August 20, 1998 occurrences): I rejected this proposed instruction but

incorporated its content in Instruction No. 3.27 (punitive damages).

Proposed Instruction on "Setoff" (submitted Sept. 6, 2005 in Doc. 1436):  I rejected this

proposed instruction in favor of Instruction No. 3.25 (affirmative defense of setoff), which is a

more accurate and complete statement of this affirmative defense as delineated in the May 2005

Order. *See* May 2005 Order at 17-19.

**B.      Defendants' Proposed Damages Instructions[41]**

Most of Defendants' proposed instructions on damages assumed damages would not be

decided on a class-wide basis and were rejected for this reason alone.  Many also contained

additional direction to the jury on the substantive elements of Plaintiffs' trespass and nuisance

claims, which was unnecessary and potentially confusing to the jury in the damages context.

Many of Defendants' statements regarding the substantive law of trespass and nuisance in their

proposed damages instructions were also contrary to my prior rulings or other applicable law, and

sometimes differed even from Defendants' previously proposed instructions on these claims.

Defendants' proposed damages instructions ignored the law of the case in other respects as well.

---

[41]      Unless otherwise noted, these proposed instructions were submitted in
Defendants' Submission of Phase III Jury Instructions and Jury Verdict Forms (Doc. 1271), filed
September 3, 2004.

65

I accepted the few damages instructions proposed by Defendants that did not suffer from these or other defects and rejected the rest, as summarized below.

No. 3.1 (damages introduction): I accepted most of this proposed instruction, which was based on my standard introductory damages instruction. I omitted additional language Defendants proposed for this instruction because it was unnecessary in light of other instructions and also assumed damages would only be decided for individual plaintiffs. The introductory damages instruction I prepared is Instruction No. 3.20.

No. 3.2 (no speculative damages): I rejected this proposed instruction because it was unnecessary given the direction on this point in Instruction No. 3.20. Defendants' proposed language regarding prospective loss was also confusing and unnecessary given other, more precise instructions I prepared defining Plaintiffs' burden of proof with respect to damages. *See, e.g.,* Instruction Nos. 3.21-3.24.

No. 3.3. (damages causation): I rejected this proposed instruction for several reasons, including that it posited that damages would not be decided on a class-wide basis. It also misstated Plaintiffs' burden of proof by requiring that damages not be awarded unless they were "definitively established" and "traceable to and a direct result of" a defendant's trespass or nuisance. I included the requirement that the jury determine actual damages based only on damages caused by any proven trespass or nuisance in several other instructions. *See* Instruction Nos. 3.21 (damages - actual or nominal), 3.22 (measure of actual damages), 3.24 (matters not relevant to determining actual damages).

No. 3.4 (no damages based on proximity):  I accepted the principle stated in this proposed instruction and incorporated it in Instruction No. 3.24 (matters not relevant to determining actual damages).

Nos. 3.5 (permanent v. continuing trespass): I accepted the first paragraph of this proposed instruction to the extent that it described actual and nominal damages.  This description was incorporated in Instruction No. 3.21 (damages - actual or nominal).

The second paragraph of this proposed instruction, which directed the jury to decide whether plutonium from Rocky Flats could be removed from an individual Plaintiff's property by reasonable measures and at a reasonable cost, reasserted Defendants' position that the question of whether the trespass alleged here is permanent or continuing is a jury issue to be determined based on this standard.  I rejected this proposed language because I held in *Cook IX*, 273 F. Supp. 2d at 1211, and confirmed in *Cook X*, 358 F. Supp. 2d at 1004-09, that the Colorado Supreme Court's decision in *In re Hoery*, 64 P.3d 214 (Colo. 2003), established that the trespass alleged by Plaintiffs was a continuing trespass.  *See also* April 2004 Order at 12-15 (discussing issue). Defendants' proposed language in this paragraph was also unacceptable because it unnecessarily and incorrectly restated the elements of Plaintiffs' trespass claim and assumed that damages would decided on an individual basis.

No. 3.6 (damages for permanent trespass): I rejected this proposed instruction for the reasons stated above with respect to the second paragraph of Defendants' proposed damages Instruction No. 3.5.

No. 3.7 (damages for continuing trespass):  I rejected this proposed instruction on multiple grounds, including that it lacked legal or logical coherence and was generally unworkable

67

as a direction to a jury.  Specific deficiencies in this instruction included its unnecessary and

inaccurate restatement of the elements of Plaintiffs' trespass claim and incorrect direction that

only damages for individual Plaintiffs should be decided.  This proposed instruction also

unnecessarily required the jury to make a second finding that the trespass was continuing; did not

correctly define the "complete and comparatively enduring" concept, *see* Instruction No. 3.22

(measure of actual damages); Order re: Instruction No. 3.28 (Doc. 2064) at 3-4 & n.3; and

incorporated a temporal limit on recoverable damages that was implicitly rejected in *Cook IX, see*

273 F. Supp. 2d at 1209-10 (adopting Restatement § 930(3)(b)'s standard for measuring damages

caused by a continuing invasion), and expressly rejected in *Cook X*, 358 F. Supp. 2d at 1010-13.

I rejected this instruction's treatment of any "prior market discount" based on my subsequent

ruling that this issue is an affirmative defense and not part of Plaintiffs' burden of proof.  *See*

May 2005 Order at 17-19.  Defendants' attempt in this instruction to address the issue of Class

members who sold their property before the right to seek damages under Restatement § 930(1)

accrued or was exercised was not successful and in any event was rendered unnecessary by my

subsequent management of this issue through the use of sub-classes.  *See* May 2005 Order at 15-

16; Order re: Instruction No. 3.28 at 5-9.  To the extent this proposed instruction included any

relevant and accurate principles of law, I included them in Instruction No. 3.22 (measure of actual

damages).

No. 3.8 (trespass - fears without scientific foundation): I rejected this proposed instruction

because Defendants failed to produce authority supporting its asserted rule that damages for

diminution in value are not recoverable if the decrease in value was caused by fears without

scientific foundation.  In Defendants' primary authority, *Boughton v. Cotter Corp.*, 65 F.3d 823,

833 (10th Cir. 1995), the issue considered and decided was "whether unfounded fears of disease are a form of recoverable annoyance and discomfort damages" under Colorado law in a trespass or nuisance action. *Id.* at 831-32. Plaintiffs did not seek damages here for annoyance and discomfort, but rather for the decrease in the value of Class Properties as a result of the alleged continuing trespass and nuisance, which is a separate and unrelated category of damages under Colorado law. *See Cook IX*, 273 F. Supp. 2d at 1206 nn.33 & 34.

The only other authority cited by Defendants does not concern damages at all, but rather what must be proved under North Carolina law to establish liability for contaminating property. *See Brooks v. E.I. Du Pont de Nemours & Co.*, 944 F. Supp. 448 (E.D.N.C. 1996). Even as to liability, this authority departs from Colorado law, which I have held does not require proof of a scientifically demonstrated health risk to establish liability for nuisance or a physical trespass. *See Cook IX*, 273 F. Supp. 2d at 1200-01 (trespass), 1202-08 (nuisance); *see also supra* Section II.B (regarding Defendants' proposed nuisance Instruction Nos. 4 & 5).

Nos. 3.9 (permanent v. continuing nuisance), 3.10 (permanent nuisance), No. 3.11 (continuing nuisance), No. 3.12 (nuisance - fears without scientific foundation): These proposed instructions mirror Defendants' proposed damages Instruction Nos. 3.5 through 3.8 (regarding damages for trespass) and suffer from the same flaws. I, therefore, rejected these proposed instructions for the reasons stated in this section with respect to Defendants' proposed damages Instruction Nos. 3.5 through 3.8.

No. 3.13 (reasonable market value): I rejected this proposed instruction because it defined a term that was not used in or necessary to any of the damages instructions. In addition, if I had found it necessary to use and define this concept in the jury instructions, the proper formulation,

under Defendants' own authority, would have been "fair market value," not "reasonable market value."

No. 3.14 (multiple recovery prohibited): I accepted this proposed instruction but revised it to reflect that damages would be decided on a class-wide basis and to consolidate the first two paragraphs as proposed by Plaintiffs in their objections. *See* Instruction No. 3.26 (multiple recovery prohibited).

No. 3.15 (exemplary damages): I accepted the last paragraph of this proposed instruction, which defined "reasonable doubt," and included it in Instruction No. 3.27 (punitive damages). I rejected the remainder of this proposed instruction because it directed that punitive damages be decided only for individual plaintiffs, incorrectly asserted that Plaintiffs did not seek punitive damages in connection with their nuisance claim, and contradicted at least two decisions in this case defining what incidents and conduct could be considered in deciding punitive damages. *See Cook IX*, 273 F. Supp. 2d at 1211-12; *Cook v. Rockwell Int'l Corp. ("Cook I")*, 755 F. Supp. 1468 (D. Colo. 1991).

Proposed Supplemental Instruction Nos. 2 & 3 (prior market discount defense - trespass and nuisance) (submitted September 16, 2005 in Doc. 1445):  I rejected these proposed instructions because, among other things, they did not fully define this affirmative defense, did not state its elements in a manner that could be readily followed by the jury and did not inform the jury that this was an affirmative defense on which Defendants bore the burden of proof.  These proposed instructions also unnecessarily required the jury to make findings on a year-by-year basis.  The instruction I prepared and used in lieu of this proposed instruction, Instruction

No. 3.25, provided a more complete and accurate statement of this affirmative defense consistent with my prior rulings. *See* May 2005 Order at 17-18.

Proposed Supplemental Damages Instruction No. 1 (damages not based on past harm) (submitted Sept. 23, 2005 in Doc. 1455): I rejected this proposed instruction because it was unnecessary in light of the damages instructions I prepared. Under these instructions, as well as the jury verdict form, the jury would not consider whether to award actual damages unless it had already determined that Plaintiffs had proved a continuing trespass and/or nuisance. *See, e.g.,* Instruction Nos. 3.2 (elements of trespass claim), 3.6 (elements of nuisance claim), 3.20 (damages - introduction); Jury Verdict Form ¶¶ E, F. In addition, the only damages the jury was directed to consider in this action, diminution in property value caused by a continuing trespass and/or nuisance, *see* Instruction Nos. 3.22 (measure of actual damages), is by definition the measure of damages for the prospect of the harm continuing into the future. *See, e.g.,* Restatement § 930 cmt. d (depreciation in value of land caused by prospect that invasion will continue indefinitely is usual standard of compensation for continuing invasions).

Proposed Supplemental Damages Instruction No. 2 (stigma) (submitted Sept. 23, 2005 in Doc. 1455): I rejected this proposed instruction because it was unnecessary in light of Instruction No. 3.22, which directed the jury that it could only award actual damages if it found the proven trespass or nuisance had caused a diminution in the value of Class Properties.

Proposed Instruction Regarding Stigma Evidence (submitted Dec. 7, 2005 and amended Dec. 11, 2005 in Doc. 1783): I rejected this proposed instruction, which Defendants requested during trial, because it was unnecessary in light of the direction provided to the jury in Instruction Nos. 3.21, 3.22 and 3.24 (regarding actual damages), as well as Instruction Nos. 3.2 and 3.6

71

(defining requirements for finding liability for trespass or nuisance). Defendants' primary authority for this proposed instruction was, in fact, Instruction Nos. 3.21, 3.22 and 3.24, thus demonstrating that this additional instruction was redundant of direction already provided to the jury.

Proposed Instruction Regarding the Type of Damages That Can Be Awarded (submitted Dec. 8, 2005 in Doc. 1768): I rejected this proposed instruction, which Defendants requested during trial, because it was unnecessary given the direction in Instruction No. 3.22 (measure of actual damages) and the Verdict Form, ¶¶ E, F, that the jury consider and award actual damages based on their findings regarding any diminution in property values caused by a proven trespass or nuisance.

**C.      Parties' Proposed Revisions to Damages Instructions at End of Trial**

      **1.      Plaintiffs' proposed revisions[42]**

Instruction No. 3.22 (measure of actual damages): I revised this instruction consistent with Plaintiffs' proposal because Plaintiffs had presented evidence of damages during the larger 1988-95 time period and thus were entitled to recover actual damages (assuming all other prerequisites were proved) if the jury found the injurious situation became complete and comparatively enduring at any point during this period.

In objections filed January 18, 2006, after I had finalized the instructions and provided them to the jury, Defendants objected to this revision, arguing that they relied on Plaintiffs' assertion of a June 6, 1989 to March 26, 1992 window for determining actual damages in

---

[42]      These proposed revisions were submitted in Plaintiffs' Proposed Revisions to Jury Instructions (Doc. 1978), filed January 13, 2006.

selecting the evidence they would present at trial.  The only example of this alleged reliance and resulting prejudice given by Defendants, however, was that they would have more vigorously cross-examined Plaintiffs' witnesses Mr. Hunsperger and Dr. Radke about the 1988 to June 1989 and April, 1992 to 1995 periods if they had known the jury could consider whether the injurious situation became complete and comparatively enduring sometime during these periods and award damages on this basis.  *See* Defs.' Objs. to Jury Instructions (Doc. 2015), Ex. A at 130-32.

As the transcript excerpts cited by Defendants themselves demonstrate, Defendants cross-examined both of these witnesses about their findings and conclusions regarding these periods.  I also note that Defendants' cross-examination of Mr. Hunsperger and Dr. Radke was nothing if not vigorous in all respects.  This cross-examination and Defendants' previous *Daubert* motions challenging the testimony of these witnesses also demonstrated that Defendants were fully aware that Plaintiffs would present evidence regarding damages from 1988-1995.  I therefore found no prejudice in revising Instruction No. 3.22 as requested by Plaintiffs.  *See also supra* Section III.A (regarding Plaintiffs' proposed damages Instruction No. 6 and the initial 1989-92 time period).

Instruction No. 3.25 (setoff affirmative defense): I rejected Plaintiffs' proposed revision to this instruction because, by definition, all Class members purchased their properties on or before June 7, 1989.  *See Cook v. Rockwell Int'l Corp. (Cook IV)*, 151 F.R.D. 378, 382 (D. Colo. 1993) (defining property class by ownership of Class property on this date).  Accordingly, any benefit Class members received in purchasing their property, *i.e.*, any then existing diminution in property value caused by the continuing trespass or nuisance, necessarily occurred before this date as well. For purposes of deciding this affirmative defense, therefore, it was unnecessary for the jury to consider any such "prior market discount" that might have existed after June 7, 1989.

### 2.   Defendants' proposed revisions[43]

Instruction No. 3.21 (actual or nominal damages): I rejected Defendants' proposed

revision to this instruction because it was unnecessary.  Instruction No. 3.21 as I drafted it

directed the jury to determine whether the Plaintiff Class incurred actual damages, and other

instructions also directed the jury to decide Plaintiffs' claims for the Class as a whole. *See, e.g.,*

Final Instructions, No. 3.1; *see also supra* Section II.C.1 (regarding Defendants' proposed

revisions to Instruction No. 3.6).  Defendants' concern that the jury would determine actual

damages based on a finding of average diminution in value was not warranted because, under the

damages instructions and related special interrogatories in the Verdict Form, the jury would only

consider the average diminution in the value of Class properties if it had already found the Class

as a whole incurred actual damages in the form of a diminution in the value of their properties as a

result of the trespass and/or nuisance committed by one or both of the Defendants. *See, e.g.,*

Instruction Nos. 3.22 (numbered paragraph 2) & 3.23; Final Instructions, No. 3.1; Verdict Form,

¶¶ E, F.

Instruction No. 3.21A (types of damages to be awarded): Defendants originally proposed

this supplemental new instruction on December 8, 2005. *See* Defs.' Proposed Instruction re:

Type of Compensatory Damages (Doc. 1768).  I rejected it for the reasons stated earlier in this

opinion. *See supra* Section III.B (regarding same proposed supplemental instruction).

Instruction No. 3.22 (measure of actual damages):  I rejected Defendants' proposed

revisions to this instruction because they were unnecessary.  Defendants' request that the

---

[43]     Unless otherwise stated, these proposed revisions were submitted in Defendants'
Proposed Changes to Preliminary Jury Instructions (Doc. 1958), filed January 10, 2006.

instruction be revised to emphasize at five different points that the damages were to be decided for the Class as a whole was redundant of the direction in Final Instruction No. 3.1 and other instructions on this point. *See supra* Sections II.C.2 (regarding Defendants' similar proposed revisions to Instruction No. 3.6). Their proposed revisions to the second paragraph of this instruction were unnecessary because the original text of this paragraph defined the concept of "comparatively enduring" consistent with the Restatement, *see* Restatement § 930 cmts. b, d, and the additional proposed revision did not define this term but rather was a matter for counsel's argument. The revisions Defendants proposed for the fourth paragraph of this instruction were unnecessary because they were included when I first instructed the jury and provided them with a copy of the jury instructions at the start of trial. *See* Oct. 11, 2005 Trial Tr. at 426-27; Start of Trial Instructions, No. 3.22.

Defendants' proposal that Instruction No. 3.22 be revised to direct the jury first to determine whether the injurious situation ever became complete and comparatively enduring, and then to determine whether Plaintiffs had proved it became complete and comparatively enduring within a specified time period was also rejected as unnecessary. The first numbered paragraph in the original, Start of Trial Instruction No. 3.22 already covered both concepts. That is, if the injurious situation never became complete and comparatively enduring *or* did not do so during the specified time period, then the jury would answer "no" to the first numbered paragraph of Start of Trial Instruction No. 3.22. If the injurious situation became complete and comparatively enduring *and* did so during the specified time period, then the jury would answer "yes" to this question. Defendants' proposed revision, therefore, did not add anything to this instruction. As a result of my final review of Instruction No. 3.22 at the close of trial, I revised its second and third

75

numbered paragraphs to clarify that if the jury found the injurious situation became complete and comparatively enduring at some time during the specified time period, then its determination of the fact and amount of any actual damages were to be made as of the time it found the injurious situation became "complete and comparatively enduring."  *See* Final Instructions, No. 3.22.

Instruction No. 3.22A (stigma evidence):  Defendants originally proposed this supplemental new instruction on Dec. 7, 2005.  *See* Defs.' Proposed Instruction re: Stigma Evidence (Doc. 1755), amended Dec. 11, 2005 (Doc. 1783).  I rejected it for the reasons stated earlier in this opinion.  *See supra* Section III.B (regarding same proposed supplemental instruction).

Instruction No. 3.23 (aggregate damages and percentage diminution): Defendants did not propose any revisions to this instruction in their January 10 comprehensive review of the jury instructions governing this action.  On January 18, however, after I had finalized these instructions in response to the parties' proposed revisions and provided them to the jury, Defendants for the first time objected to this instruction's direction that the jury should decide damages to commercial property in the Class Area.  *See* Defs.' Objs. to Jury Instructions and Verdict Form (Doc. 2015), Ex. A at 133-36.  As grounds for this objection, Defendants cited Plaintiffs' failure to mention damages to commercial property in their August 2005 statement of claims.  *See id*.  They also asserted that Plaintiffs' evidence of a diminution in the value of commercial properties was insufficient for this issue to go to the jury.  *See id*.

Plaintiffs' proposed damages Instruction No. 7, submitted in September, 2004, directed that damages be determined for commercial properties in the Class Area.  *See* Pls.' Proposed Phase III Jury Instructions (Doc. 1272) at 14.  Defendants did not object to this proposed

76

language. *See* Defs.' Submission of Phase III Jury Instructions (Doc. 1271), Ex. B at 40

(asserting five objections to Plaintiffs' proposed damages Instruction No. 7, none of which

pertained to its direction regarding damages to commercial property).   Given this lack of

objection, I included this direction in the May 2005 Order, *see id.* at 16, and the jury instructions I

prepared and provided to the jury at the start of trial in October, 2005.  *See* Start of Trial

Instructions, No. 3.23.  Defendants did not object to this direction at any point before or during

trial or by the January 9 deadline I set for Defendants' proposed revisions to the Start of Trial

Instructions.  Order on Jury Instruction Submissions (Doc. 1929).  They also, without objection,

included damages to commercial properties in the proposed Verdict Forms they submitted near

the end of trial.  *See* Defs.' Proposed Jury Verdict Forms (Doc. 1963).  Neither did Defendants

seek judgment on the issue of damages to commercial property, or mention the issue at all, in

their motions for judgment as a matter of law filed at the close of Plaintiffs' case and again at the

close of evidence.

Under these circumstances, I find Defendants waived any objection to this instruction's

direction regarding damages to commercial properties, and to the submission of this issue to the

jury.  Even if this were not the case, I find that Plaintiffs' submission of proposed jury instructions

containing this direction and other statements of their case over the years provided Defendants

with ample notice that the issue of damages to commercial property in the Class Area would be

tried, and that Plaintiffs presented sufficient evidence to allow this issue to go to the jury.

Instruction No. 3.24 (matters not relevant to determining actual damages): I rejected

Defendants' proposed revision to the first paragraph of this instruction because it and Instruction

No. 3.22 already adequately defined the requirement that Plaintiffs prove the damages they sought

77

were caused by a proven trespass or nuisance. Defendants' proposed revision was also inconsistent with my ruling in *Cook IX* that the jury could consider and rely on evidence that Class Properties had a lower value than properties not in proximity to Rocky Flats, along with evidence of Defendants' tortious invasion of properties proximate to the plant, to infer that Defendants' trespass and/or nuisance had caused a diminution in Class property values. *See* 273 F. Supp. 2d at 1210.

I rejected Defendants' proposed revisions to the second paragraph of Instruction No. 3.24 because they eliminated my direction to the jury that Plaintiffs were not required to prove any diminution in value caused by Defendants' continuing trespass and/or nuisance came into existence before or after the FBI raid or some other specific event. This direction was dictated by my 2003 decision denying Defendants' long-held contention that Plaintiffs were required as a matter of law to make such a "before and after" showing in order to recover actual damages in this case. *See Cook IX*, 273 F. Supp. 2d at 1209-1210. Instead, I ruled that the "but for" measure of damages set forth in Restatement § 930 applied here. *See id.* Defendants did not offer any rationale for eliminating this direction, which was necessary (especially in light of Defendants' arguments at trial) to avoid jury confusion on this point.

Defendants further requested that I revise this instruction to direct the jury that the timing of any diminution in the value of Class properties relative to the FBI raid or other events might be relevant to other issues, such as whether and when the injurious situation became complete and comparatively enduring. This additional proposed instruction, was, in my judgment, both unnecessary and inappropriate. Defendants were fully capable of arguing, and did in fact argue during trial, that various evidence rebutted Plaintiffs' contention that any injurious situation

resulting from the alleged trespass and nuisance became complete and comparatively enduring after the FBI raid and the controversy it engendered.  Instruction No. 3.22 and the other damages instructions provided the jury with the direction necessary to decide this question and whether Plaintiffs had otherwise carried their burden of proving actual damages.

Instruction No. 3.25 (affirmative defense of setoff): I rejected Defendants' proposed revisions to this instruction because they were unnecessary.  The language Defendants sought to strike and replace was sufficient and consistent with my rulings on this defense.  *See* May 2005 Order at 17-19.

Instruction No. 3.27 (punitive damages): I accepted Defendants' proposal that this instruction be revised to instruct the jury that any sum awarded as punitive damages could not be more than the amount awarded as actual damages.  *See* Colo. Jury Instructions (Fourth) Civ. § 5:3; Colo. Rev. Stat. § 13-21-102(1)(a).

I rejected Defendants' proposal that this instruction be revised to direct the jury that it could award punitive damages only for intentional conduct that it found was willful and wanton, and not for any negligent conduct it found met this standard.  While it is true that "mere negligence" cannot support an award of punitive damages under Colorado law, *see Jacobs v. Commonwealth Highland Theatres, Inc.*, 738 P.2d 6, 10 (Colo. Ct. App. 1986), punitive damages may be awarded for negligent acts or omissions a jury finds rose to the level of willful and wanton conduct under the definition stated in this instruction.  *See* Colo. Jury Instructions (Fourth) Civ. § 9:30 & n.2 (defining "willful and wanton negligence"); *Jacobs*, 738 P.2d at 10 (exemplary damages may be awarded where negligent conduct is also found to be willful and wanton).  Defendants' proposed revisions on this point, therefore, were contrary to Colorado law.

79

IV.    **Other Disputed Instructions and Issues**

The parties proposed approximately 45 instructions in addition to those already discussed. Some of these proposed instructions were stipulated, but most were not. The additional disputed instructions focused on topics such as the nature of the case and evidentiary matters. Defendants also proposed significant revisions to many of these additional instructions during and at the end of trial. My rulings on these additional disputed instructions are set forth in summary fashion below.

A.    **Instructions Regarding the Nature of the Case**

The parties submitted competing instructions stating the nature of the case in September 2004. *See* Pls.' Proposed Phase III Jury Instructions (Doc. 1272), No. 1.1; Defs.' Submission of Phase III Jury Instructions (Doc. 1271), No. 1.1. I relied on the parties' proposed instructions, their August 2005 statements of their theories of the case and the law of the case to prepare a Statement of the Case instruction that described the nature of the case, Plaintiffs' claims and Defendants' denial of these claims in neutral language that was consistent with my rulings on the scope of the class trial and the more detailed instructions that followed. *See* Instruction No. 1.1. I rejected Defendants' January 10, 2006 proposed revisions to this instruction because the revisions were unnecessary and improperly assumed that Plaintiffs had failed to present evidence that hazardous substances other than plutonium were used and disposed of at Rocky Flats and could pose a risk of future harm.

Defendants also proposed a number of additional instructions regarding the nature of the case which I rejected. Defendants' September 3, 2004 Proposed General Instruction No. 1.9 (included in Doc. 1271), regarding determination of a claim made by multiple plaintiffs, was

80

inappropriate in a class trial.  Their September 23, 2005 Proposed Supplemental General Instruction No. 2 (included in Doc. 1455), which would have directed the jury that "each class member" was required to prove "the elements of his or her trespass and nuisance claims" against each defendant, was also improper in a class trial and was unnecessary because other general and substantive instructions stated Plaintiffs' burden of proof with respect to the class claims and class damages.  *See, e.g.,* Instruction Nos. 1.1, 3.2, 3.6, 3.22; Final Instructions, No. 3.1.  Defendants' September 23, 2005 Proposed Supplemental General Instruction No. 1 (included in Doc. 1455), which would have informed the jury that their verdict "will not result in a final judgment for any of the class members," was unnecessary and also inaccurate, because the jury's verdict on liability and class damages would result in "final judgment" for class members, even if additional, post-class trial proceedings were necessary to apportion any class damages to individual class members.

### B.      Instructions Regarding Burden of Proof

The parties stipulated to my standard instruction on burden of proof, *see* Pls.' Proposed Phase III Jury Instructions (Doc. 1272) at 19 (regarding No. 1.8); Defs.' Submission of Phase III Jury Instructions (Doc. 1271), Ex. A, No. 1.9, which was provided to the jury in Instruction No. 1.8 and the first paragraph of Instruction No. 1.9.

During and at the end of trial, Defendants proposed two additional instructions that they characterized as going to the burden of proof.  The first proposed that the jury be informed that Defendants were not permitted to talk to most class members before trial, while Plaintiffs had been allowed to do so as class counsel, and that the jury could consider this disproportionate access in judging the testimony of class members.  *See* Am. Defs.' Proposed Instructions

(Doc. 1783), Ex. A at 3; Defs.' Proposed Changes to Prelim. Jury Instructions (Doc. 1958),

No. 1.9B. I rejected this proposed instruction because it improperly suggested that adverse

evidentiary inferences could be drawn from the standard prohibition on ex parte contacts between

defendants and class members represented by class counsel. *See* Order (Doc. 583) (stating

general rule against ex parte contact). The proposed instruction was also misleading in suggesting

that Defendants were absolutely barred from seeking discovery from all class members, when in

fact Defendants were permitted to seek discovery from individual Class members upon a showing

of need. *See id.*

I rejected Defendants' second additional proposed instruction in this category, a separate

instruction regarding speculation and uncertainty, *see* Defs.' Proposed Changes to Prelim. Jury

Instructions (Doc. 1958), No. 1.8A, because it was unnecessary in light of the existing

instructions. *See, e.g.*, Instruction Nos. 1.4, 1.8, 1.9, 3.20, 3.25.

### C.      Limiting and Other Evidentiary Instructions

#### 1.      Classified information

One of the more hotly disputed issues before and during trial was how to instruct the jury

regarding relevant information about contamination at Rocky Flats that was unavailable in

discovery and at trial because it had been classified as secret by the plant owner, the U.S.

Department of Energy ("DOE"). Based on DOE's status as Defendants' indemnitor and other

circumstances, Plaintiffs requested that I treat DOE's decision to classify such information in the

same manner as spoliation of evidence, which would warrant an instruction advising the jury that

it was permitted to infer that the classified information would have been unfavorable to

Defendants if DOE had made it available. *See, e.g.*, Pls.' Proposed Supplemental Instructions

82

(Doc. 1436), Proposed Instruction on Spoliation; Pls.' Br. on Statute of Limitations, State

Regulatory Standards, Ultrahazardous Liability, Spoliation (Doc. 1254) at 18-19; Pls.' Reply Br.

(Doc. 1269) at 9.

Defendants, in turn, argued that there was no basis for a spoliation instruction regarding

DOE's classification decisions, *see, e.g.*, Defs.' Objs. to Pls.' Supplemental Jury Instructions

(Doc. 1445), Ex. B at 24-30; Defs.' Resp. to Pls.' Br. (Doc. 1263) at 31-44.  They also asserted

the jury should be instructed that, as a factual matter, there was no evidence that either

Defendants or their counsel had any involvement in DOE's classification decisions or were

involved in trying to conceal evidence through this process.  *See* Defs.' Am. Submission of

Supplemental Jury Instructions (Doc. 1455), Ex. A, Proposed Limiting Instruction No. 3; Defs.'

Submission of Limiting Instruction Pursuant to 10/7/05 Hearing (Doc. 1499); Defs.' Mem. in

Supp. of Mot. for Mistrial or Alternative Proposed Instructions (Doc. 1903), Ex. A.  Defendants

further proposed that I instruct the jury, again as a matter of fact, that DOE had provided

Plaintiffs, Defendants and their respective counsel with equal access to all relevant information in

DOE's custody, *see* Defs.' Am. Submission of Supplemental Jury Instructions (Doc. 1455),

Ex. A, Proposed Limiting Instruction No. 3; Defs.' Mem. in Supp. of Mot. for Mistrial or

Alternative Proposed Instructions (Doc. 1903), Ex. A; Defs.' Proposed Changes to Prelim. Jury

Instructions (Doc. 1958), Proposed Instruction No. 1.9A, and that the jury could *not* draw any

inferences from the fact that the information remained classified.  Defs.' Mem. in Supp. of Mot.

for Mistrial or Alternative Proposed Instructions (Doc. 1903), Ex. A; Defs.' Proposed Changes to

Prelim. Jury Instructions (Doc. 1958), Proposed Instruction 1.9A.

After considering the parties' pre-trial arguments on the classified information issue, I determined that a spoliation instruction was not warranted. I also determined that the jury needed to be informed why classified information was not available for their consideration, and that the parties should be placed on an even basis with respect to this issue.[44] Accordingly, I prepared an instruction, No. 1.9, that addressed these points in the context of the standard instruction that a party's burden of proof does not require it to produce all possible evidence relevant to their claims or defenses. *See* Start of Trial Instructions, No. 1.9. At the close of trial, I revised this instruction to clarify to the jury that it could not and should not decide the propriety of any of the DOE's classification decisions and should not speculate about what the classified information might be. *See* Final Instructions, No. 1.9.

2.      **Other evidence relating to DOE**

Defendants proposed additional limiting instructions regarding DOE's involvement with Rocky Flats. One set of proposed instructions would have informed the jury that DOE was not on trial and that any wrongful conduct by DOE was irrelevant to determining the liability of either Defendant. *See* Defs.' Am. Submission of Supplemental Jury Instructions (Doc. 1455), Ex. A, Proposed Limiting Instruction No. 1; Defs.' Proposed Changes to Prelim. Instructions (Doc. 1958), Proposed Instruction No. 1.10A. I rejected these proposed instructions because they were unnecessary and inaccurate. They were unnecessary because other instructions identified Dow and Rockwell as the defendants in this action, and neither the jury instructions nor the verdict form called for the jury to make any findings regarding DOE or its conduct. The

---

[44]      I also determined it was inappropriate to include the unsupported factual declarations Defendants sought in their proposed instructions.

84

proposed instructions were inaccurate because DOE's conduct was relevant to events and operations at Rocky Flats during each Defendant's tenure there, including events and operations relevant to Defendants' alleged liability for trespass and nuisance. DOE also generated or funded studies, reports and other documents that were admitted into evidence and employed witnesses who testified at trial, which rendered its conduct relevant to the jury's interpretation and weighing of this evidence.

Defendants also proposed instructions stating that DOE was financially responsible for this litigation as Defendants' indemnitor, *see* Defs.' Am. Submission of Supplemental Jury Instructions (Doc. 1455), Ex. A, Proposed Limiting Instruction No. 2, and directing the jury not to consider this fact in determining Defendants' liability. *See id.*; Defs.' Proposed Changes to Prelim. Instructions (Doc. 1958), Proposed Instruction No. 1.10B. These instructions were unnecessary because the jury was properly instructed elsewhere regarding the elements necessary to establish Defendants' liability, none of which involve DOE's indemnity. Counsel also questioned the jurors extensively regarding DOE's indemnification of Defendants during voir dire, and all jurors confirmed during this process that they would not consider this indemnification in determining Dow and Rockwell's liability. *See* Oct. 6, 2005 Trial Tr. at 235-49. It was not necessary under these circumstances to instruct the jury as proposed by Defendants.

### 3. Evidence regarding the FBI raid, grand jury investigation and Rockwell plea agreement

Defendants proposed instructions limiting the jury's consideration of evidence regarding the FBI's June 6, 1989 raid on Rocky Flats and the grand jury investigation and plea agreement that followed. *See* Defs.' Am. Submission of Supplemental Jury Instructions (Doc. 1455), Ex. A,

Proposed Limiting Instruction Nos. 4, 5. This evidence was the subject of several of Defendants' motions in limine, which I granted in part and denied in part before trial. *See* Aug. 22, 2005 Tr. at 5-8; Mem. Op. re: *Daubert* Mots. and Mots. in Limine, Section I.E.1 (Dec. 7, 2006). Defendants' proposed instructions were not fully consistent with my rulings because, among other things, their instructions could be read as barring the jury from considering any evidence arising from the FBI raid and grand jury investigation. Their proposed instructions also did not provide the jury with guidance in considering the Department of Justice's decision not to prosecute Rockwell for any other crimes, which I had addressed in pretrial rulings. *See* Aug. 22, 2005 Tr. at 5-8. Accordingly, I did not accept the instructions proposed by Defendants regarding this evidence and instead prepared Instruction Nos. 2.4 and 2.5, which more accurately conveyed the limitations I imposed during the pretrial process on the presentation and consideration of these categories of evidence. *See* Aug. 22, 2005 Tr. at 5-8; Mem. Op. re: *Daubert* Mots. and Mots. in Limine, Section I.E.1 (Dec. 7, 2006).

Defendants subsequently proposed that Instruction No. 2.5 be revised to allow the jury to consider the Department of Justice's decision not to prosecute Rockwell for additional misconduct. *See* Defs.' Proposed Changes to Prelim. Instructions (Doc. 1958), Ex. A, No. 2.5. I rejected this proposed change because it contradicted my previous express ruling on this issue, *see* Aug. 22, 2005 Tr. at 6-7; Mem. Op. re: *Daubert* Mots. and Mots. in Limine, Section I.E.1 (Dec. 7, 2006), and because I found no merit in Defendants' contention that during trial Plaintiffs had "opened the door" to the jury's consideration of this evidence. As I ruled before trial, Defendants' assertion that the Department of Justice (DOJ) "exonerated" Rockwell of additional alleged misconduct by entering into a plea agreement that did not address this alleged misconduct,

and Plaintiffs' rebuttal that the DOJ acted improperly in concluding the criminal investigation in this manner, were not matters that needed to or should be litigated and considered in this action. *See* Aug. 22, 2005 Tr. at 6-7. Plaintiffs did nothing during trial to change this conclusion.

### 4. Evidence of other lawsuits

Defendants proposed that I instruct the jury not to consider Dow's or Rockwell's involvement in other lawsuits in determining whether they engaged in any of the conduct alleged by Plaintiffs. *See* Defs.' Am. Submission of Supplemental Jury Instructions (Doc. 1455), Ex. A, Proposed Limiting Instruction No. 6. I accepted this instruction after revising it to address Plaintiffs' objection, which was to clarify that it applied to civil suits. *See* Instruction No. 2.6. This revision prevented an inconsistency with Instruction No. 2.5 and potential juror confusion about whether they could consider Rockwell's guilty plea in the criminal suit brought against it for conduct at Rocky Flats.

Defendants proposed a second limiting instruction relating specifically to the civil lawsuit brought by Marcus Church against the United States, Dow and Rockwell in 1975. Defs.' Submission of Limiting Instructions Pursuant to 10/7/05 Hearing (Doc. 1499), Proposed Limiting Instruction No. 2. I rejected this proposed instruction as unnecessary in light of the direction provided in Instruction No. 2.6 regarding Defendants' involvement in civil lawsuits generally.

### 5. Evidence of media coverage

Before trial, Defendants proposed a limiting instruction regarding evidence of media coverage. *See* Defs.' Am. Submission of Supplemental Jury Instructions (Doc. 1455), Ex. A, Proposed Limiting Instruction No. 8. I accepted the first two sentences proposed by Defendants,

and revised the remainder of their proposed language to state the relevance of this evidence more directly and neutrally. *See* Instruction No. 2.7.

I rejected Defendants' proposed revisions to Instruction No. 2.7 at the close of trial, *see* Defs.' Proposed Changes to Prelim. Instructions (Doc. 1958), No. 2.7, because I was not persuaded the revisions were necessary or appropriate.

**6.     Evidence of Defendants' contractual obligations**

Defendants proposed I instruct the jury that it could consider evidence of Defendants' contractual obligations to the federal government in determining whether Plaintiffs had proved each Defendant committed a trespass or nuisance. *See* Defs.' Am. Submission of Supplemental Jury Instructions (Doc. 1455), Ex. A, Proposed General Instruction No. 3.[45]  I rejected this proposed instruction because Defendants failed to demonstrate it had any basis in law.

Defendants' sole authority for this instruction was a Tenth Circuit decision holding that a government contractor acting in accord with its contractual duties can assert a qualified immunity defense. *See id.* (citing *DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714 (10th Cir. 1988)).  Defendants waived any such affirmative defense long before trial, however, as they acknowledged several months before proposing this instruction. *See* July 29, 2005 Hr'g Tr. at 299-300.[46]

---

[45]     Although the heading to this instruction also referenced "regulatory obligations," neither the text of the instruction nor the authority cited by Defendants in its support addressed this subject.

[46]     Defendants asserted an immunity defense in their 1991 Answers to the Second Amended Complaint, but waived the right to pursue the defense during the pretrial planning process. *See* May 2004 Order at 1-10 (describing pretrial process identifying affirmative defenses to be tried and barring defenses not identified by Defendants during this process).  There is also some question whether the Tenth Circuit's statement of this defense in *DeVargas* was superseded

Even if this were not the case, Defendants' proposed instruction did not properly instruct the jury on any version of the government contractor defense to tort liability, because it did not identify the elements of this defense or assign Defendants the burden of proving these elements. Nothing in the *DeVargas* decision or in *Boyle v. United Technologies Corp.*, the seminal Supreme Court decision on the government contractor defense, suggests that a defendant may avoid tort liability based on compliance with government contracts except through successful assertion of this affirmative defense. *See DeVargas*, 844 F.2d at 721-22; *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988). Defendants' proposed instruction improperly suggested otherwise and was rejected for this reason as well.

### 7. Expert opinion evidence

The parties stipulated to Instruction No. 2.2, regarding opinion evidence and expert witnesses, as it was provided to the jury at the start of trial. Near the close of trial, Defendants proposed that this instruction be revised to clarify that some witnesses with specialized training had not testified as expert witnesses. *See* Defs.' Proposed Changes to Prelim. Instructions (Doc. 1958), No. 2.2. I revised the first paragraph of Instruction No. 2.2 to clarify this point.

Near the end of trial, Defendants also proposed a new instruction regarding corporate retention of experts. *See* Defs.' Proposed Instruction (Doc. 2009). I revised Defendants' proposed language and provided it to the jury as Instruction No. 2.2AA. The purpose of my

---

by the Supreme Court's subsequent statement of the government contractor defense in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), and whether a government contractor defense under either authority is available in an action such as this brought under the Price-Anderson Act, *see* 42 U.S.C. § 2014(hh).

89

revisions was to make the instruction more balanced and to remove the implication that an expert's litigation history and client base were irrelevant to assessing the expert's credibility.

The parties also proposed several instructions dealing with particular expert witnesses. I accepted Defendants' proposed instruction regarding the live and deposition testimony of Dr. James Flynn.[47]  *See* Final Instructions, No. 2.2A; Defs.' Proposed Instruction re: Dep. Test. of Dr. James Flynn (Doc. 1679).  I rejected Defendants' proposed instruction regarding the expert testimony of Dr. S. Paul Slovic, Defs.' Mot. for a Limiting Inst. re: Test. of Dr. S. Paul Slovic (Doc. 1595), because it was unnecessary in light of existing instructions. *See, e.g.*, Nov. 8, 2005 Trial Tr. at 4446; Instruction Nos. 3.2, 3.6, 3.7, 3.22, 3.28.  I granted Plaintiffs' motion to strike certain testimony by defense expert Dr. John Till, and prepared a jury instruction informing the jury of this decision. *See* Final Instructions, No. 2.2B; Jan. 17, 2006 Trial Tr. at 10188; Mem. Op. re: Defs.' Theory of Plutonium Removal at 8-12 (Dec. 7, 2006).

### 8.      Demonstrative exhibits

I instructed the jury regarding counsel's use of charts, summaries and other graphic materials at the start of trial. *See* Start of Trial Instruction No. 2.3.  During trial, a number of such materials were admitted for demonstrative purposes only.  Following discussions with the parties and proposed revisions from Defendants, I revised this instruction to clarify for the jury what was meant by this designation. *See* Final Instruction No. 2.3; Jan. 6, 2006 Trial Tr. at 9225-30; Defs.' Proposed Changes to Prelim. Instructions, No. 2.3.

### D.      Miscellaneous Instructions

---

[47]      Defendants proposed this instruction as a result of Dr. Flynn's inability to complete his live testimony due to illness.

### 1.    Joint and several liability and comparative fault

Just before the close of trial, the parties for the first time raised the issue of whether Dow and Rockwell were jointly and severally liable for the alleged harm to the Class and, if not, how damages caused by each Defendant were to be determined.  Plaintiffs asserted Defendants were jointly and severally liable for all damages under the common law tort rule that where tortfeasors contribute to an indivisible harm, they are jointly and severally liable.  *See* Pls.' Proposed Verdict Form (Doc. 1947) at 2; *see, e.g.*, Restatement (Second) of Torts § 875 (1979) (stating rule).  Defendants argued that joint and several liability was merely a collection doctrine with no application here, and that any damages attributable to each Defendant's trespass or nuisance should be decided separately.  *See* Defs.' Proposed Jury Verdict Forms (Doc. 1963) at 2.

The Colorado legislature abrogated the common law rule of joint and several liability in Colorado Revised Statute § 13-21-111.5, which provides that "[i]n an action brought as a result of a death or an injury to person or property, no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant that produced the claimed injury, death, damage, or loss."  Colo. Rev. Stat. § 13-21-111.5(1) (2005); *see Barton v. Adams Rental, Inc.*, 938 P.2d 532, 535-36 (Colo. 1997) (holding statute abrogated common law rule); *Brochner v. Western Ins. Co.*, 724 P.2d 1293, 1299 (Colo. 1986) (same).[48]  The Colorado statute further requires that the jury make special findings determining the percentage of negligence or fault attributable to each of the parties so that

---

[48]    The statute recognizes certain exceptions that allow the imposition of joint and several liability, none of which apply here.  *See* Colo. Rev. Stat. § 13-21-111.5(1), (4).

damages can be assessed based on the pro rata liability of the defendants.  *See* Colo. Rev. Stat. § 13-21-111.5(2).

Based on the Colorado statute and related authority, I therefore rejected Plaintiffs' assertion of joint and several liability in this action and prepared a new instruction, No. 3.19A, directing the jury to determine the percentage of fault for each Defendant if they found both liable for trespass or for nuisance.  This new instruction was modeled on relevant portions of Colorado's standard instructions for actions involving multiple defendants.  *See* Colo. Jury Instructions (Fourth) Civ. §§ 9:29 - 9:29B (2002 & Supp. 2004).  I was not persuaded by the parties' subsequent objections to this instruction and corresponding special interrogatories.  *See* Defs.' Objs. to Additional and Revised Jury Instructions (Doc. 2023) at 16; Pls.' Objs. to Jury Instructions (Doc. 2027) at 4.

### 2.      Additional questions

The parties also submitted proposed instructions regarding a class-wide question of relevance to possible future proceedings regarding Plaintiffs' nuisance claim:  whether Defendants' activities at Rocky Flats and the conditions resulting from them were capable of causing Class members to suffer fear, anxiety or other mental or emotional discomfort.  *See* May 2005 Order at 7 (discussing question); April 2004 Order at 7-8 (same).  I rejected both parties' proposed instructions on this "generic causation" question in favor of Instruction No. 3.28, which limited and defined this question in a manner that was more consistent with my prior orders.[49]  In  Instruction No. 3.28, I also directed the jury that it was not to consider the

---

[49]      Instruction No. 3.28 also included additional questions directed at defining the members of the Class that would be entitled to receive any damages awarded in the class trial. *See supra* note 38.  Defendants' tardy objections to these additional questions were addressed in a

"generic causation" question, or the further "specific causation" question of whether these activities or conditions actually caused individual Plaintiffs or Class members to suffer this form of interference with the use and enjoyment of property, in deciding whether Plaintiffs had proved their class-wide nuisance claim.   *See* Instruction No. 3.28; *see also* May 2005 Order at 7; April 2004 Order at 7-8.

### E.     Defendants' Final Objections

In their final objections to the jury instructions I prepared, Defendants complained that the instructions were not impartial because I informed jurors not to consider certain arguments and assertions in deciding various issues.  *See* Defs.' Renewed Objs. to Jury Instructions and Verdict Form (Doc. 2029) at 2.  Most of the instructions cited by Defendants in this regard directed the jury not to consider certain legal arguments or interpretations advanced by Defendants which I had rejected during the long pretrial process necessary to define the issues to be tried and the law applicable to them.  *See* Instruction Nos. 3.3, 3.5, 3.10, 3.24.  Defendants nonetheless, in the jury instruction process, in pretrial motion practice, in their Rule 50(a) motions and before the jury, refused to adapt their theory of the case to many such rulings and instead repeatedly reasserted legal arguments, theories and interpretations that had been rejected and were thus contrary to the law of the case.  The instructions Defendants complain of accurately informed the jury of the law of the case on these points, and were necessary to prevent the jury from becoming confused by arguments and insinuations that different legal standards applied.[50]

---

previous order.  *See* Order re: Instruction No. 3.28 (Doc. 2064).

[50]     The other instructions cited by Defendants as being biased, Instruction Nos. 3.4 (continuing trespass) and 3.12 (utility of conduct), are statements of law based on Colorado common law and/or the Restatement, *see Cook X*, 358 F. Supp. 2d 1003 (Colo. 2004) (continuing

## V.     Verdict Form and Related Instructions

The parties proposed special verdict forms for the trespass and nuisance claims and for

damages in conjunction with their original proposed jury instructions on each of these topics.  I

rejected these proposals because none were consistent with the applicable law as stated in my

prior and subsequent orders and/or the jury instructions I ultimately prepared.

I also rejected the parties' original proposed verdict forms because they did not reflect

their subsequent agreement to a less-than-unanimous verdict.[51]  This agreement was incorporated

in Instruction Nos. 4.2 and 4.5 as provided to the jury at the start of trial, and both parties

submitted proposed jury instruction revisions consistent with their stipulation and these

instructions after one of the jurors was excused over the holiday break, *see* Pls.' Proposed

Revisions to Jury Instructions (Doc. 1978), No. 4.5; Defs.' Proposed Changes to Prelim. Jury

---

trespass under Colorado law); *supra* Section I.D.2 (regarding Instruction No. 3.4); Section II.A
(regarding Plaintiffs' proposed nuisance Instruction Nos. 10 & 15), Section II.B (regarding
Defendants' proposed nuisance Instruction No. 6), Section II.C.2 (regarding Defendants'
proposed revision to No. 3.12), or are based on my determination that operation of a nuclear
weapons plant constitutes an inherently dangerous activity.  *See* Instruction No. 3.15; *supra*
Section II.A (regarding Plaintiffs' proposed nuisance Instruction No. 7B), Section II.C.2
(regarding Defendants' proposed revisions to No. 3.15).

I also note that Defendants make no complaint about instructions they proposed and that I
accepted that direct the jury not consider or rely on certain matters in a manner that would appear
to favor Defendants.  *See, e.g.*, Instruction Nos. 3.7 (individual fear or other emotional
disturbance not to be considered), 3.13 (Plaintiffs must prove more than that existence of Rocky
Flats interfered with the use and enjoyment of property), 3.16 (accident not presumptive
negligence), 3.24 (no damages to be awarded based on mere proximity to Rocky Flats).

[51]      The parties agreed to accept a non-unanimous verdict for a jury of ten to twelve if
there were no more than two dissenters to the verdict.  If the jury was less than ten, then the jury
could reach a verdict with up to one dissenter.  *See* Sept. 22, 2005 Tr. at 16-18; Defs.' Statement
Re: Jury Verdict (Doc. 1473); *see also* Fed. R. Civ. P. 48 (permitting parties to stipulate to less
than a unanimous verdict).

Instructions (Doc. 1958), No. 4.5, and after a second juror was excused early in deliberations, *see* Pls.' Proposed Supplemental Jury Instruction (Doc. 2052); Jan. 25, 2006 Trial Tr. at 10765-66. I accepted these proposed revisions. *See* Final Instruction Nos. 4.2, 4.5, 4.6.

Near the close of trial, I directed the parties to submit revised proposed verdict forms that were consistent with the jury instructions of record. Both parties submitted proposed forms, *see* Pls.' Proposed Verdict Form (Doc. 1947); Defs.' Proposed Jury Verdict Forms (Doc. 1963), none of which were acceptable for a variety of reasons. These reasons included the parties' failure to set out each substantive element or question to be decided by the jury along with appropriate cross-references to relevant instructions, as well as inconsistencies and other problems in the parties' directions for deciding compensatory and punitive damages. Accordingly, I prepared and provided the jury with a verdict form that incorporated appropriate elements of the parties' proposals, but more closely mirrored the jury instructions and provided the jury with a better "roadmap" to the questions it was to consider and decide to reach its verdict. *See* Jury Verdict (Doc. 2117).

## Conclusion

Preparation of the jury instructions in this action was a substantial and challenging task. My goal was to state the issues and applicable law accurately and neutrally, in logical sequence and in the plainest language possible under the circumstances, so that the jury could understand the issues to be decided and apply the law fairly and intelligently to reach its verdict.

Dated this 7th day of December, 2006.

**s/John L. Kane**
John L. Kane, Senior District Judge
United States District Court