# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CLAUDE WILCOX, as personal representative of the Estate of HARRIET WILCOX, deceased; TRINITY SCOTT, as personal representative of the Estate of MARCELLA MARIE HARTMAN, deceased; KRISTEN BONHAM, as personal representative of the Estate of DAISY RANDALL CRAWFORD, deceased; BETTY CAGLE; SHERRY CRUZ; BRYAN CRUZ, MARY ANN DANIEL; ALPHA DARBY; DEBRA QUINN DARBY, CATHEY DARBY, as natural parent and next friend of JANDELL DARBY; ROBERT LEE DARBY; SAMANTHA EBBERTS; ROBERT FOUST; HELEN REED FRAZIER; WANDA GREGORY; RHONDA QUINN HAWKINS; SHANNON HOWARD; RHONDA KNOTTS; EUNICE QUINN; LORRAINE ROWLAND; CONNIE FOUST ROYAL; DARLENE COWERT SERNA; AMANDA WILCOX; DWAYNE WILCOX; RANDALL WILCOX AND SUSIE WILCOX,

   Plaintiffs,

vs.               No. CIV-04-534 JC/WDS

HOMESTAKE MINING COMPANY, a Delaware corporation; HOMESTAKE MINING COMPANY OF CALIFORNIA, a California corporation; DOE CORPORATIONS I-XX and DOE PARTNERSHIPS I-XX,

   Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendants' Motion to Dismiss and Strike, filed October 28, 2004 (*Doc.* 13). This motion is filed pursuant to FED. R. CIV. P. 12(b)(6) and 9(b). Defendants move to dismiss and/or strike on the following grounds: 1) Plaintiffs' state law causes of action are preempted by the Price-Anderson Act; 2) Plaintiffs' causes of action fail to state a claim for which relief can be granted and 3) Plaintiffs' fraud cause of action is not pleaded with the required particularity. The Court has reviewed the Motion, the memoranda and exhibits submitted by the parties, and the relevant authorities. The Court grants the Motion to dismiss and

strike in part and denies it in part.

I. **Background**

This suit arises from the contamination of groundwater in residential subdivisions located adjacent to a uranium milling facility, operated by Defendants in Cibola County, New Mexico. The subdivisions provided housing for mill workers, their families and other residents. Plaintiffs either currently reside, or formerly resided in, these subdivisions. Both the mill facilities and the subdivisions are located above five separate aquifers. Plaintiffs drilled private wells on their property and used the aquifers as their primary source of water for consumption and use, as there was no municipal water supply available. Plaintiffs claim that both radioactive and non-radioactive hazardous substances leached into the groundwater from two of the mill's tailings, or waste, pipes. Defendants are required under their Nuclear Regulatory Commission operating license to dispose of and contain the tailings within the mill's site. Plaintiffs claim that at all times between the mill's opening in 1958 and the year 1977, Defendants failed to adequately contain the hazardous substances within the mill site, despite warnings from various agencies of the necessity of lining the tailings ponds and despite documentation of actual groundwater contamination. Plaintiffs claim that the water was further contaminated in 1977, when the berms of the Defendants' tailings ponds breached and 20 million gallons of the substances within flooded Plaintiffs' properties.

Plaintiffs claim that Defendants never warned them of the possible contamination, even though they knew or should have known of the significant health risks. Plaintiffs further claim that Defendants failed to comply with state and federal remediation plans between 1978 and 1984, and that Defendants still permit the release of hazardous substances to this day. Plaintiffs also

2

assert that Defendants gave them false information about the actual level of the contamination in flyers and scientific reports. Defendants entered into a Consent Decree with the Environmental Protection Agency in 1983, which was to provide a permanent alternative water supply to the subdivisions and to pay for domestic water for ten years. Plaintiffs claim, though, that no reasonable alternative to the contaminated water was provided, and Defendants continued to expose Plaintiffs to hazardous substances which resulted in death, serious injuries and damages. Plaintiffs brought suit under the public liability provisions of the Price-Anderson Act, 42 U.S.C. §2210, for actions including wrongful death, personal injury, fraud and intentional infliction of emotional distress.

**II. Standard of Review**

A complaint may be dismissed pursuant to Rule 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In deciding a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded factual allegations as true (*See Albright v. Oliver*, 510 U.S. 266, 268 (1994)), and views them in the light most favorable to the nonmoving party. *Sutton*, 173 F.3d at 1236.

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). More specifically, the Court requires a complaint alleging fraud to set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof. *Schwartz v. Celestial Seasonings Inc.*, 124 F.3d 1246, 1252 (10th Cir.

3

1997). The rule's purpose is to give defendants fair notice of the claims presented and the factual grounds upon which they are based. *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir.1992) (citation omitted).

## III. Discussion

### A.   Preemption under the Price-Anderson Act

The Price-Anderson Act provides federal protection from tort liability for the private nuclear industry. *See Kerr-McGee Corp. v. Farley*, 115 F.3d 1498,1503 (10th Cir. 1997). The Act was amended by the Price-Anderson Amendments Act of 1988 (Act). *Id.* The new Act grants original federal jurisdiction and removal jurisdiction over all public liability actions arising from nuclear incidents. *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 477 (1999); 42 U.S.C. §§ 2210(n)(2), 2014(hh). The Supreme Court held that this Act is an example of a "complete preemption doctrine" which would "convert an ordinary state common-law complaint into one stating a federal claim ..." *El Paso*, 526 U.S. at 484 n.6. Although this language appears to clearly support dismissing all of Plaintiffs' state law claims, many courts addressing the issue have agreed with the formation of a single Price-Anderson Act cause of action, but with sub-parts based on state law theories that are not inconsistent with the Act itself.[1]

Indeed, the Act explicitly states that the substantive rules of decision for a public liability action "shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of such section." 42 U.S.C. § 2014(hh). Thus, while there is, in appearance, only one recognized federal claim for relief, several state law theories can be used to support this claim, as long as they are not deemed inconsistent with the

---

[1] Defendants also appear to agree with this interpretation. Mem. at 7.

Act itself. *See In re TMI*, 67 F.3d 1103, 1106 (3d. Cir. 1995); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1099 (7th Cir. 1994).[2]

As of Plaintiffs' Second Amended Complaint, which the Court, incidentally, grants leave to be filed per Plaintiffs' request, there are currently seven separate state law theories of liability. The Court, then, must evaluate which of these theories are consistent with the Act and should be allowed to proceed as causes of action. Defendants most strongly dispute the consistency of the liability standards presented: namely Plaintiffs' claims of Strict and Absolute Liability. Although these have been presented as separate claims in Plaintiffs' Second Amended Complaint, Plaintiffs have recognized it as proper under New Mexico law to merge these two claims into one theory of liability. Resp. at 6, n.2.

Defendants do not dispute that Plaintiffs' claims of negligence, fraud, intentional infliction of emotional distress or medical monitoring are inconsistent with the Act. Other courts have held, as well, that the claims of intentional torts, fraud and negligence are not inconsistent with the Act. *See Bohrmann v. Me. Yankee Atomic Power Co.*, 926 F.Supp. 211, 221 (D. Me. 1996) (intentional torts are not inconsistent with the Act); *Corcoran v. N.Y. Power Auth.*, 935 F.Supp 376, 387-389 (S.D.N.Y. 1996)(battery and fraud causes of action deemed consistent with the Act); *McCafferty v. Centerior Serv. Co.*, 983 F.Supp. 715, 730 (N.D. Ohio 1997) (intentional infliction of emotional distress cause of action would be consistent with the Act if all its elements had been met). This court agrees that although the federal safety standards may preempt the use

---

[2]A spate of district court cases follow the same logic. *See Smith v. Carbide & Chems. Corp.*, 298 F.Supp. 2d 561, 565 (W.D. Ky. 2004); *McCafferty v. Centerior Serv. Co*, 983 F.Supp. 715, 718 (N.D. Ohio 1997); *Bohrmann v. Me. Yankee Atomic Power Co.*, 926 F.Supp. 211, 218 (D. Me. 1996); *Corcoran v. N.Y. Power Auth.*, 935 F.Supp. 376, 385 (S.D.N.Y. 1996); *Smith v. GE*, 983 F.Supp. 70, 76 (D. Mass. 1996).

5

of a state liability standard, they have no bearing on Defendants' liability for intentional acts. *See Bohrmann*, 926 F.Supp. at 221. Therefore, the theories of fraud and intentional infliction of emotional distress will be allowed to remain thus far, as they are not inconsistent with the Act. Claims of medical monitoring and negligence have been allowed to proceed when brought under the Act in the Tenth Circuit, albeit relying on Colorado law. *See Dodge v. Cotter*, 328 F.3d 1212, 1218 (10th Cir. 2003). Further, other circuits have held that a claim of negligence should not be held inconsistent with the Act, as long as the standard of care was to be provided by the federal regulations. *See O'Conner*, 13 F.3d at 1105; *McCafferty*, 983 F.Supp. at 728.

Contrary to an action for negligence, an action for absolute or strict liability acts in the opposite of a federal safety regulation. If an action for strict liability was allowed to stand, there is a possibility that a defendant would meet the federal standard of care mandated, but still be held strictly liable under a state cause of action. To this end, there has been a debate between courts regarding the issue of whether to use a state mandated standard of care or the federal regulations as the standard for claims arising under the Act. All circuit courts who have addressed this issue agree, though, that the federal regulations should control when a public liability action is presented under the Act. *In re TMI*, 67 F.3d at 1006-1007; *O'Conner*, 13 F.3d at 1105. Plaintiffs cite to a few district court dissenters, and place much reliance on *Cook v. Rockwell Int'l Corp.*, 273 F.Supp.2d 1175 (D. Colo. 2003). This case derives much of its reasoning, however, from a case predating the 1998 Amendments to the Act, S*ilkwood v. Kerr-McGee Corp.*, 464 U.S. 238 (1984). The Tenth Circuit has held that the 1998 Amendments can be read in part as a Congressional response to the result in *Silkwood. See Kerr- McGee Corp. v. Farley*, 115 F.3d 1498, 1503 (10th Cir. 1997). The Circuit further held that "from this framework, it is apparent

that Congress intended to expand federal control over safety and liability issues." *Id.* at 1504. Thus, although *Silkwood* was precedential before the Amendments, the interpretation of the circuits since Congress exercised its intent to change the Act in 1988 is more persuasive. Therefore, the cause of action for absolute and strict liability is found to be inconsistent with the Act.

In conclusion, Plaintiffs' public liability action under the Act remains, but with the federal regulations controlling as to the standard of care. Also remaining, under the umbrella of Plaintiffs' single claim under the Act, are Plaintiffs' state law causes of action of fraud, intentional infliction of emotional distress, negligence and medical monitoring. Defendants also dispute, however, the sufficiency of the pleading of these state law claims.

**B.    Rule 12b(6) claims**

1.    Intentional Infliction of Emotional Distress

Defendants assert that the Intentional Infliction of Emotional Distress claim should fail as a matter of law because Plaintiffs have not pleaded as to adequate intent, a necessary element of the claim. As the Act must apply the state law in question, it is helpful to regard the New Mexico elements for this tort, which are as follows: 1) the conduct in question was extreme and outrageous; 2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; 3) the plaintiff's mental distress was extreme and severe; and 4) there is a causal connection between the defendant's conduct and the claimant's mental distress. *See Trujillo v. N. Rio Arriba Elec. Coop., Inc.*, 41 P.3d 333, 342 (N.M. 2001). It is also helpful to observe that New Mexico follows the Restatement of Torts, so that the Court may look to it for guidance as well. *Id.*

7

As noted above, the intent required for this tort can be derived from a reckless disregard for the Plaintiff. No New Mexico cases are particularly on point as to whether groundwater contamination can be construed as proffering enough intent or reckless disregard for this tort. Defendants cite to other district court cases, construing other states' laws, for the proposition that groundwater contamination cannot be intentional for purposes of this tort. Mem. at 20. Because the Court must look at the state law of New Mexico when examining this cause of action, however, these fellow district court cases are not persuasive.

Even if the Court was to look at the most persuasive and relevant cases cited: *Dusoe v. Mobil Oil Corp.*, 167 F.Supp.2d 155 (D.Mass. 2001) and *Lewis v. General Elec. Co.*, 37 F.Supp.2d 55 (D. Mass. 1999), these cases are still distinguishable from the present facts. First, the action in question in *Dusoe* was one accidental spill, not the continuous contamination over a 20 year plus period that is alleged here. 167 F.Supp.2d at 166. Second, no one lived in the allegedly contaminated areas in Dusoe for almost twenty years after the spill, which is also not the case here. *Id.* Third, *Dusoe* was a summary judgment action, requiring the court to actually weight the evidence in question, not to judge sufficiency of pleading as in the present case. *Id.* at 158.

In *Lewis*, contamination of some soil in a neighborhood occurred which was likely to affect some people and not others. 37 F.Supp.2d at 57. This is decidedly different than a water contamination case where the only source of water for the residential subdivisions was the aquifers, which were likely to affect everyone. As opposed to *Lewis*, the Defendants here knew or should have known that the continuous contamination of the Plaintiffs' sole water supply would have some effect on them.

8

Looking to the Restatement, then, for further guidance, the Court can come to no conclusion but that the intent element has been met here. Under the Restatement, intent is met when an actor "knows that distress is certain, or substantially certain, to result from his conduct," or when acting "recklessly, ... , in deliberate disregard of a high degree of probability that the emotional distress will follow." Restatement (Second) of Torts §46 cmt. i (1965). As pled in Plantiffs' Second Amended Complaint, Defendants knowingly allowed waste to contaminate the water supply for an extended period of time, despite warnings about safety necessities beginning from the year of the mill's inception. A reasonable person would know this continuous contamination would be sure to cause distress to whomever was going to use that water. This, then, appears to meet the definition of recklessness required for the intent element of this tort, as defined by New Mexico law. As the Court must look at all well-pleaded facts in the light most favorable to the Plaintiffs, the Complaint is found to meet the elements of the tort sufficiently enough to satisfy Rule 12(b)(6).

2. Claim Against Homestake Mining-Delaware

Defendants seek to have all claims against Defendant Homestake Mining-Delaware dismissed under a theory that this particular Defendant is only operating as a parent corporation to its subsidiary Defendant Homestake Mining-California, and is therefore not liable for any of the causes of action brought by Plaintiffs. Defendants further argue that all factual allegations of the Complaint concern only Homestake Mining-California and that Plaintiffs' assertion of the theory of dominion and control is insufficient to include Homestake Mining-Delaware in their suit.

Plaintiffs allege, on the other hand, that Defendant Homestake Mining-Delaware faces liability not only because of its role as a parent corporation, but also because of its individual

9

operations regarding the Homestake milling facility. Resp. at 27-28. This pleading, whether completely factually grounded or not, is sufficiently worded as to give Defendant notice of the claims presented, which is all that is required at this point. Although Defendants may find this claim egregious and impertinent (Reply at 18), Plaintiffs are correct in their assertion that in a Rule 12(b)(6) motion only the legal sufficiency of the claim should be tested. Even under FED. R. CIV. P. 11, which Defendants so helpfully assert, Plaintiffs must only be "likely to have evidentiary support" for their claims after a reasonable opportunity for further investigation and discovery. Therefore, if the facts do not bear out that Homestake Mining-Delaware should remain a Defendant in this case, the Court is confident that it will be able to decide that matter at a later date. Regarding the motion in the light most favorable to Plaintiffs, then, the claim is allowed to go forward.

### C. Rule 9(b) fraud motion

Defendants attacked Plaintiffs' fraud cause of action on two fronts, but in light of Plaintiffs' Second Amended Complaint, withdrew their complaint that Plaintiffs have not pleaded fraud with the requisite particularity required as to the fraudulent misrepresentation part of their claim. Reply at 9. This still leaves the contested issue of fraud in the concealment, particularly whether Defendants owed a duty to disclose material facts to Plaintiffs. Plaintiffs claim not only that a fiduciary relationship required this disclosure, but also that a statutory duty and a common law duty existed. Resp. at 20-21.

In New Mexico, "[a] fiduciary relationship exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of one reposing the confidence." *State ex rel. Udall v.*

10

*Colonial Penn*, 812 P.2d 777, 785 (N.M. 1991). Although examples of this type of relationship are provided in the Restatement, there is no on point example regarding the duty of mills who may have known of water contamination to residents who shared their water supply. Many New Mexico cases describing a fiduciary duty do cite to contracts as the main source of these duties arising, although the Supreme Court of New Mexico has held that a fiduciary relationship exists in a broader sense, as found in its definition by *Udall* and *Allsup's Convenience Stores, Inc. v. N. River Ins. Co.*, 976 P.2d 1,15 (N.M. 1998).

      Further, the Restatement makes clear that a contract is not necessarily the only source from which a relationship of trust and confidence can spring. Indeed, examples of fiduciary relationships arise between physician and patient, attorney and client, priest and parishioner and guardian and ward. Rstmt. (Second) § 551, cmt. f (1977). Therefore, the Court finds that a fiduciary relationship did exist here, at least at some point in the timeline provided by the pleadings. A special confidence was imposed when Defendants began supplying Plaintiffs with temporary, potable bottled water. Pl's Second Am. Compl. at 29. This duty was allegedly compromised by Defendants knowledge or lack thereof that this water was actually contaminated as well, and further by not supplying adequate amounts of the water, requiring Plaintiffs to resume using their old well water. *Id.* Also, by preparing flyers and scientific reports attempting to educate the residents of the subdivisions about the extent of the contamination, Defendants took a fiduciary duty upon themselves. *Id.* at 31. Whether these reports did actually minimize the extent of the contamination and perpetrate a fraud upon the subdivision residents, as alleged, remains to be seen, but the fact that a duty of special confidence did exist at this point is undeniable.

As Defendants note, the case of *Wirth v. Comm. Resources, Inc.*, 630 P.2d 292 (N.M. Ct. App. 1981), is distinguishable from the present circumstances, as in that case an actual sales contract was the source of the relationship between the parties. However, a duty existed in *Wirth* when the Defendant took the initiative to inform the Plaintiff on some portion of a subject (the availability of water), therefore requiring Defendant to reveal all known material facts concerning that subject. *Id.* at 297. Here, Plaintiffs did have a relationship with Defendants when the scientific information and the bottled water were being distributed to the subdivision residents. If Defendants chose to reveal to Plaintiffs only some of the truth of the level of the contamination, and not the full extent of it, they have violated their duty to disclose and perpetrated a fraud.

Even if a fiduciary relationship was not established here, there is still the existence of a common law duty to disclose in New Mexico. Under *Azar v. Prudential Ins. Co. of America*, 68 P.3d 909, 927-928 (N.M. App. 2003), this duty to disclose arises from knowledge that the other party is acting under a mistaken belief, or if a party has superior knowledge not within the reach of the other party or which could not have been discovered by the exercise of reasonable diligence. While *Azar* cites to other New Mexico cases for this proposition, all of them rely on this duty arising from some sort of business relationship either through banking, insurance or sales contracts. *Id.* (citing *Peck, Inc. v. Liberty Fed. Sav. Bank.*, 766 P.2d 928, 932 (N.M. Ct. App. 1988; *Krupiak v. Payton*, 561 P.2d 1345,1346 (N.M.1977). Here, Defendants affirmatively agreeing in writing to provide Plaintiffs with a safe water supply satisfies the relationship necessary to bring about this duty, as well as the allegation that Defendants solicited Plaintiffs to live in the subdivisions. Resp. at 22. It is also alleged that Defendants had superior knowledge of the possibility of groundwater contamination for quite some time, well before this information

12

was available to Plaintiffs. Further, following the 1983 Consent Decree, Plaintiffs were under a mistaken belief that Defendants would supply them with safe, adequate water.

Plaintiffs also claim that a statutory duty to disclose exists under the Defendants' operating license granted by the Nuclear Regulatory Commission. While this definitely lends credence to the idea that Defendants had a statutory duty to act in a certain way, Plaintiffs at no time assert the statutory language or reasoning which would create a duty to disclose from this basis. Plaintiffs only argue this license required Defendants to dispose of and contain the tailings it produced within its own mill site. Second Am. Compl. at 5. The Court cannot find a statutory duty to disclose from this. Therefore, the Court finds that a duty to disclose did exist, either from a fiduciary relationship or a common law duty to disclose.

In summary, the Court finds that the Price-Anderson Act preempts Plaintiffs' state law claims, but that the Act encompasses the state theories of liability of fraud, intentional infliction of emotional distress, negligence, and medical monitoring. The state theory of absolute and strict liability, however, are found to be inconsistent with the Act. Further, the above stated claims which are found to be consistent with the Act are found to be pled with the required particularity necessary under Rule12(b)(6) and Rule 9(b).

Wherefore,

I.  **IT IS ORDERED that Defendants' Motion to Dismiss and Strike, filed October 28, 2004 (*Doc.* 13) is GRANTED in that Plaintiffs' state law causes of action are preempted by the Price-Anderson Act;**

II. **IT IS FURTHER ORDERED that Plaintiffs' claim sounding in strict and absolute liability is dismissed;**

II. **IT IS FINALLY ORDERED that Defendants' Motion to Dismiss and Strike,**

13

filed October 28, 2004 (*Doc.* 13) is DENIED in that Plaintiffs' theories of recovery are pleaded with sufficient particularity.

DATED November 15, 2005.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiffs:

    Roy A. Jacobson, Jr., Esq.
    The Spence Law Firm
    Spence, Shockey, & McCalla
    Jackson, Wyoming

    Rebecca A. Lorenz, Esq.
    Melat, Pressman & Higbie, LLP
    Colorado Springs, Colorado

    Michael Alarid, Jr., Esq.
    Jason M. Alarid, Esq.
    The Alarid Law Firm, P.C.
    Albuquerque, New Mexico

Counsel for Defendants:
    Daniel J. Dunn, Esq.
    Henry W. Ipsen, Esq.
    Matthew J. Lepore, Esq.
    Geoffrey M. Barry, Esq.
    Holme, Roberts & Owen, LLP
    Denver, Colorado

    John J. Indall, Esq.
    Comeau, Maldegen, Templeman & Indall, LLP
    Santa Fe, New Mexico