# EXHIBIT 12

1447.12

**7/22/2004 Phase I Jury Instructions**

```
 1           IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLORADO
 2
     Civil Action No. 01-K-181
 3
     MERILYN COOK, et al.,
 4
          Plaintiffs,
 5
     vs.
 6
     ROCKWELL INTERNATIONAL CORPORATION, et al.,
 7
          Defendants.
 8   _____
 9
                     REPORTER'S TRANSCRIPT
10     (Hearing on Jury Instructions and Pretrial Conference)
11   _____
12          Proceedings before the HONORABLE JOHN L. KANE, JR.,
13   Judge, United States District Court for the District of
14   Colorado, commencing at 1:10 p.m., on the 22d day of July,
15   2004, in Courtroom 11, United States Courthouse, Denver,
16   Colorado.
17
18
19
20
21
22
23
24   Proceeding Recorded by Mechanical Stenography, Transcription
        Produced via Computer by Paul Zuckerman, 1929 Stout Street,
25       P.O. Box 3563, Denver, Colorado, 80294, (303) 629-9285
```

7/22/2004 Phase I Jury Instructions

1   becomes very simple.

2   Yes, the plutonium is there because of the conduct,

3   our conduct, on this government facility. And it's there. And

4   it's there when they were there at the time that the class was

5   defined because the class was defined by reference to a

6   plutonium plume. Then what we really have to try in the case

7   are probably some of the affirmative defenses. If that's your

8   Honor's decision, that's fine. I certainly did not understand

9   that your Honor's decision was designed to go that far.

10   THE COURT: It doesn't. That's the de minimus kind of

11   thing; but the plutonium plume is different than a molecule of

12   plutonium. Significantly different.

13   MR. BERNICK: That's the problem, your Honor, is then

14   where do we go? We had thought that the de minimus issue

15   essentially gets handled under the Van Wyk decision by saying

16   it has to be substantial. But you only get to that aspect of

17   Van Wyk if this is an intangible invasion. If it's a tangible

18   invasion, I don't know where -- what principle comes out that

19   enables you to say that it has to be of some magnitude or

20   another. How significant does it have to be to be more than de

21   minimus. We can argue that to the jury, and we can have

22   instructions that are tendered to the jury; but what I'm

23   struggling with, your Honor, is what is our normative source to

24   be able to tell the jury what it means to be de minimus and

25   what it means not to be de minimus. Is it the state standard?

33

7/22/2004 Phase I Jury Instructions

1   was speaking; and after he was speaking -- your Honor's ruling
2   in Cook IX on that point.  And it's pretty decisive and clear
3   to me.
4           And I also harken back to when I was a freshman in --
5   or a first year law student.  And Prosser on Torts was pretty
6   clear that even a trivial trespass of the kind that Mr. Bernick
7   described -- and actually, I don't think plutonium is trivial,
8   though the trivial trespass I have in mind is my father-in-law,
9   God rest his soul, the hunters crossing his land out in western
10  Pennsylvania -- You know, whether they had a gun on them or
11  not, that was a trespass.
12          THE COURT:  It wasn't trivial, either, I assure you.
13          MR. DAVIDOFF:  It wasn't trivial when they were armed.
14          THE COURT:  That's right.
15          MR. DAVIDOFF:  But when they were just -- if a bird
16  watcher went down to the gulch to look at the birds -- There
17  was a gulch on that property that we used to go down and shoot
18  in.  But if a bird watcher went down to the gulch to look at
19  the birds, that was still a trespass.
20          And obviously, we're not talking about a molecule of
21  plutonium; but the kinds of trespasses of plutonium, both past
22  and ongoing and threatened in the future, that are at issue in
23  this case are far from trivial.  And I think --
24          THE COURT:  I'll have to try and formulate some kind
25  of a specific wording that you and Mr. Bernick can work off of

45

7/22/2004 Phase I Jury Instructions

1    With respect to future claims -- these are fascinating
2    questions.  Future damage claims:  Did the plaintiffs in this
3    case acquire the right to make the claim for the future loss,
4    or not?  Did they sell that away, or not, in the years since
5    that time?
6    Mr. Davidoff talks about the election that has to be
7    made.  When has the class in this case ever elected to pursue
8    future damages?  When was that election made?  We haven't
9    solicited that election from any of the members of this class.
10   Not even the named plaintiffs in the class have made that
11   election.
12   So when are they going to make the election?  When are
13   we going to find out whether people really want to have future
14   claims litigated on that basis?
15   Do the representative plaintiffs have the right to
16   make an election on behalf of absent class members?  Can
17   Mr. Davidoff and his very able colleagues represent people in
18   this trial who decide, "I don't want to have my right to future
19   damages liquidated and determined now.  I don't think that the
20   facts are ripe now."
21   Class action cannot make substantive elections of that
22   nature.  It is a procedural vehicle.  If we want people to make
23   decisions about what claims they want to pursue, future or
24   present, yes or no, under their Section 930 analysis an
25   election has to be made.  We have to find out who has the right

7/22/2004 Phase I Jury Instructions

1  to make the election. It has to be made. And then we'll know
2  who it is that wants to pursue their future damage claim.
3       Under their own analysis, you can see how these are
4  issues, if you adopt their Section 930 analysis, we never had
5  in the case before and have made the case more, rather than
6  less, complicated.
7       So when you get into this whole world of, Well, gee,
8  what is going to happen, who elects when, is there an
9  incremental loss that's now occurred -- none of their people
10 have addressed the question of whether there is an incremental
11 loss for future use of the property. All they've said is that
12 the properties during the period studied are worth less because
13 they're in the class area and there is contamination. There is
14 no differentiation between past loss and future loss. And
15 because there is no differentiation, we don't even know if a
16 claim for future loss is to be made if it's zero or if it's
17 positive. And if we don't know that, again, how can an
18 election be made according to their analysis of Section 930?
19      So --
20      THE COURT: Mr. Bernick, excuse me a minute. I have a
21 note from the jury I have to look at.
22      Let's take a brief recess.
23   (Recess at 2:50 p.m.)
24   (Reconvened at 3:08 p.m.)
25      THE COURT: Thank you; and be seated, please.