**EXHIBIT 2**

Westlaw.

Slip Copy                                                                                                                Page 1

Slip Copy, 2006 WL 3337472 (S.D.Ohio)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
U.S. v. LawrenceS.D.Ohio,2006.Only the Westlaw citation is currently available.
United States District Court,S.D. Ohio,Eastern Division.
UNITED STATES of America, Plaintiff,
v.
Daryl LAWRENCE, Defendant.
**No. 2:05-CR-11.**

Nov. 16, 2006.

David Devillers, Michael John Burns, United States Attorney's Office, Columbus, OH, for Plaintiff.

*OPINION AND ORDER*
GREGORY L. FROST, District Judge.

*I. Facts*

**\*1** This matter comes before the Court for consideration of Defendant Daryl Lawrence's timely Motion for a New Trial (Doc. # 234) pursuant to Fed.Crim. R. 33(a) and (b)(2). On February 13, 2006, a jury found Defendant guilty of Counts One through Eight of the Indictment. (Doc # 200.) On March 3, 2006, the jury then found that Defendant was eligible for the death penalty. (Doc. # 207.) The jury returned a life sentence verdict on Count Seven and a death sentence verdict on Count Eight on March 10, 2006. On that same day, this Court imposed the sentences on Counts Seven and Eight. (Doc. # 216.) Defendant now comes before this Court requesting both an evidentiary hearing on his Motion for a New Trial (Doc. # 234) and that after the hearing this Court grant him a new trial and/or sentencing in this matter on the following grounds: (1) inconsistent verdicts; (2) double jeopardy; (3) juror bias and/or misconduct; and (4) improper jury instructions.

For the reasons that follow, this Court **GRANTS** in part and **DENIES** in part Defendant's motion. (Doc. # 234.) Specifically, this Court orders that Defendant's death verdict on Count Eight is set aside on grounds of an arbitrary, inconsistent verdict, but rejects Defendant's remaining grounds for relief.

*II. Discussion*

*A. Inconsistent Verdicts*

In his motion for a new trial, Defendant argues that the Court must set aside the death sentence imposed in relation to Count Eight because the jury made inconsistent findings and issued inconsistent verdicts on Counts Seven and Eight. The former count resulted in a sentence of life imprisonment without the possibility of release, while the latter count resulted in a jury recommendation and consequent sentence of death. Defendant's argument is correct, and the Court has no choice but to set aside the sentence of death and order a new sentencing hearing on Count Eight.

In reaching this conclusion, the Court recognizes the sensitive nature of today's decision. The jury found Defendant's conduct in Count Eight punishable by death, and this Court has no doubt that many if not all of the victim's family members and friends want that sentence carried out. But today's decision, which does not foreclose a death sentence but instead sets aside the flawed death sentence for re-sentencing before a new jury, does not lessen the seriousness of Defendant's crime or the sentence the original jury recommended. The Court is also not ignorant of the suffering that additional proceedings in this case will no doubt cause.

The law is the law, however, and even the least deserving member of society is entitled to the full protections of the legal system. Thus, this Court

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 2

Slip Copy, 2006 WL 3337472 (S.D.Ohio)
**(Cite as: Slip Copy)**

must always be dispassionate in its application of the law, regardless of sympathy for the family and friends of the victim, not because the Court is sympathetic to any defendant, but because it is the Court's duty and privilege to strictly enforce the letter of the law without regard to the outcome in any particular case. Justice demands fairness and the principled application of the law, not decisions fueled by passion or predilection. The fundamental principles on which the criminal justice system is based would mean nothing if the Court did not protect the constitutional rights of every defendant in every case, even where any specific result might be contemptible. To conclude otherwise-to *selectively* enforce and protect *any* individual's constitutional rights-would be to diminish those rights and to diminish the very system of law to which the victim in this case so dedicated his life's work.

**\*2** Guided by the foregoing principles, this Court is constrained to conclude that Defendant is entitled to a new sentencing on Count Eight. Under Federal Rule of Criminal Procedure 33, a district court in its discretion "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33(a); *see also United States v. Hill,* 157 Fed. Appx. 830, 833 (6th Cir.2005) (citing *United States v. Seago,* 930 F.2d 482 (6th Cir.1991)). Defendant asserts that his circumstances meet the interest-of-justice standard in regard to Count Eight because the jury's death verdict is inconsistent with the jury's life imprisonment verdict for Count Seven. (Doc. # 234, at 11.) Although the verdicts are inconsistent, inconsistency alone is not sufficient to set side the death verdict on Count Eight. What is sufficient is that the inconsistency was a product of irrationality that requires the Court to set aside the verdict on Count Eight.

The United States Supreme Court has held that "consistency in the verdict is not necessary." *Dunn v. United States,* 284 U.S. 390, 393 (1932). Thus, the general rule is that "inconsistent findings in a jury verdict do not invalidate the verdict." *United States v. Johnson,* 223 F.3d 665, 675 (7th Cir.2000) (citing *e.g., United States v. Powell,* 469 U.S. 57, 64-69 (1984)). This means that rational inconsistent verdicts on separate charges against a single defendant do not necessarily mandate correction. *Getsy,* 456 F.3d at 590-91 (citing *Powell,* 469 U .S. at 59-63). A defendant convicted by a jury on one count cannot therefore attack that conviction if it was rationally and logically inconsistent with the verdict on another count. *See Powell,* 469 U.S. at 57; *Dunn,* 284 U.S. at 393; *Getsy v. Mitchell,* 456 F.3d 575, 590-91 (6th Cir.2006).

But the Sixth Circuit has held that under certain instances inconsistent verdicts may be both " scandalous and inequitable" and "constitute evidence of arbitrariness that would undermine the confidence in the quality of the [jury's] conclusion." *Getsy,* 456 F.3d at 587. Thus, if the inconsistencies were such to indicate that the verdict was a product of irrationality, it would have to be set aside. *See Getsy,* 456 F.3d at 587; *United States v. Johnson,* 223 F.3d 665, 675-76 (7th Cir.2000).

One factual situation where inconsistent verdicts are arbitrary is in cases involving inconsistent jury verdicts between two co-defendants charged with conspiracy or participation in similar criminal contract. *Getsy,* 456 F.3d at 590-91. In this situation, the Supreme Court has applied the rule of consistency to set aside irreconcilable jury verdicts. *Hartzel v. United States,* 322 U.S. 680 (1944) (reversing a conspiracy conviction on the basis of inconsistency); *Morrison v. California,* 291 U.S. 82, 93 (1934) (holding reversal of the conspiracy conviction of the defendant's sole alleged co-conspirator on constitutional grounds required reversal of the defendant's state conspiracy conviction). The Sixth Circuit requires the reversal of irreconcilable verdicts where one defendant is acquitted and the other convicted of a crime that necessarily requires two people to participate. *Getsy,* 456 F.3d at 590-92. Accordingly, the Sixth Circuit has reversed a defendant's murder-for-hire conviction and the resulting death sentence because another defendant was acquitted of the exact same charge. *Id.*

**\*3** Defendant is therefore correct to the extent that the principles articulated in *Morrison* and *Hartzel* and subsequently followed by *Getsy* still apply today. However, courts only invalidate inconsistent findings in situations, such as in *Getsy* and as in the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

present case, where the inconsistency is a product of irrationality.

Here, there is no valid explanation for the jury's inconsistent findings in the present case other than complete arbitrariness. The Government unpersuasively argues that the sentence of death was not imposed under the influence of arbitrary factors and that any inconsistency in the jury's findings was deliberate and rational in light of an additional element that the jury had to consider when reaching the verdict for Count Eight. (Doc. # 9.)

The premise of the Government's argument is that the jury should have blatantly departed from this Court's jury instructions. The Government emphasizes the crucial difference between Count Seven and Eight, which is that in order to find Defendant guilty under Count Eight, the jury had to find that Defendant killed the victim *with malice aforethought*. It argues, in face of contrary jury instructions, that the jury may have logically considered the additional element and concluded that "the additional element, along with the aggravating factors were enough to sufficiently outweigh the mitigation causing the difference in the penalty verdicts." (Doc. # 253, at 8.)

Two considerations refute this argument. First, the jury instructions walked the jury through a sequential process. This Court instructed the jury at the trial phase to consider whether Defendant committed the elements of each crime, one of which was malice aforethought in Count Eight. The jury found Defendant guilty beyond a reasonable doubt of Counts Seven and Eight. At the eligibility phase, this Court then instructed the jury to determine whether eligibility factors existed, including age, intent, and at least one of two statutory aggravating factors. The jury found the existence of the age factor, the intent factor, and both statutory aggravating factors beyond a reasonable doubt. Subsequently, at the sentencing phase, the instructions set forth the aggravating and mitigating factors. The Court specifically instructed the jury to weigh only the aggravating factors and the mitigating factors outlined in the instructions with no mention of malice aforethought or any other element of the crime, and the jury is presumed to have followed the Court's instructions. The Government's explanation of the inconsistent verdicts implicitly posits that the jury disobeyed this Court's jury instructions by improperly considering the elements of the crime at the sentencing phase. The Court therefore rejects the Government's attempt to rationalize the inconsistent verdicts.

The second consideration that refutes the Government's contention of no error is that the inconsistent verdicts can only be regarded as products of irrational findings by the jury. The jury in this case returned special findings plagued by numerous inconsistencies. For example, five jurors found that the fact that "Daryl Lawrence was raised by neither his biological mother nor father" was a mitigating factor in connection with Count Seven, while six jurors found that same fact to be a mitigating factor in connection with Count Eight. Such discrepancies existed in thirty of the mitigating factors at issue.

**\*4** These discrepancies point to irrational, arbitrary juror conduct. The Seventh Circuit addressed a similar factual scenario in *United States v. Johnson,* 223 F.3d 665 (7th Cir.2000). There, the Seventh Circuit addressed death verdicts for two murders in which the jury also found some facts mitigating as relating to one of the murders *but not* to the other. *Id.* at 675-76. The appellate court explained that "if the inconsistencies were such as to indicate that the verdict was a product of irrationality, it would have to be set aside." *Id.* at 676. The court ultimately concluded that the inconsistencies did not indicate that the verdict was the result of irrationality. In reaching this conclusion, the appellate court emphasized that "[w]hat is important here is that *every* juror who found more mitigating factors present with respect to one of the murders than with respect to the other nevertheless voted that the aggravating factors taken as a whole outweighed the mitigating factors as a whole with regard to each murder." *Id.* The court's reasoning thus relied on the fact that in every juror's mind the "bottom line" was the same: the defendant should be sentenced to death, and therefore the inconsistencies did not indicate that the verdict was a product of irrationality that would warrant it being set aside.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                              Page 4
Slip Copy, 2006 WL 3337472 (S.D.Ohio)
**(Cite as: Slip Copy)**

*See id.* As the Seventh Circuit explained, "if a juror couldn't make up his mind whether the defendant had proved 2 mitigating factors or 10 mitigating factors, but was clear in his mind that even in the latter event the aggravating factors outweighed them, there would be no basis for thinking he voted irrationally." *Id.*

In the instant case, however, *not* every juror who found more mitigating factors present with respect to one of the murder counts than with respect to the other murder count nevertheless voted that the aggravating factors taken as a whole outweighed the mitigating factors as a whole with regard to both murder counts. In fact, the jurors reached discordant binding recommendations on the separate counts. This Courts finds that *Johnson* supports the proposition that a verdict is not irrational if a jury concludes that a factor is mitigating with respect to one charge and not the other as long as the end result is the same. *See Johnson,* 223 F.3d at 675-76. But as *Johnson* implicitly suggests, inconsistent mitigating factor findings in conjunction with two different verdicts inescapably means that the verdict is a product of irrationality that a court is required to set aside. *Id.*

The Eight Circuit also supports the inference this Court draws from *Johnson. See Wainwright v. Lockhart,* 80 F.3d 1226, 1231-32 (8th Cir.1996). In *Wainwright,* a defendant argued that his death sentence violated the Eighth and Fourteenth Amendments because of the jury's "inconsistent findings" about the mitigating circumstance that he did not resist when arrested for the murder. *Id.* at 1231. On one special verdict form, the jury indicated it had unanimously found that the lack-of-resistance circumstance and one other mitigating circumstance *existed. Id.* On another form, the jury indicated that it had unanimously found that the lack-of-resistance circumstance *did not exist. Id.* But as in *Johnson,* the Eight Circuit's holding relied on the fact that in every juror's mind the "bottom line" was the same. *Wainwright,* 80 F.3d at 1231-32; *Johnson* 223 F.3d at 675-76. The *Wainwright* court stated that:
**\*5** Whether or not the jury found Wainwright did not resist arrest, the jury clearly considered the circumstance one way or the other. The jury then specifically found the three 'aggravating circumstances outweigh[ed] beyond a reasonable doubt all mitigating circumstances' whether the jury found one or two mitigating circumstances. Because this is not arbitrary or capricious, there is no Constitutional violation.

*Wainwright,* 80 F.3d at 1231-32.

The reasoning in *Wainwright* also suggests that if the jury had reached two different verdicts after finding different mitigating factors, such as in the present case, its decision would have been arbitrary and therefore set aside. *Wainwright,* 80 F.3d at 1231-32; *Johnson* 223 F.3d at 675-76. Here, the jury's arbitrariness lies in the fact that at times the same jurors made different factual findings as to the same mitigating factors and then reached different results. But regardless of the counts considered, the facts Defendant proved as mitigating existed-either Defendant grew up in poverty or he did not-and regardless of the count at issue, either Defendant proved these facts to be mitigating factors or he did not. It is irrational to conclude that Defendant proved a mitigating factor in regard to one count by a preponderance of the evidence, but that he did not meet this burden of proof in regard to another count. The inconsistent findings taint the balancing equation and point to the unavoidable conclusion that irrational, even arbitrary, jury conduct existed. Thus, the end result is that the jury arbitrarily used two different balancing equations to conclude that the aggravating factors sufficiently outweighed the mitigating factors on Count Eight, but not on Count Seven.

There is no explanation for the jury's inconsistent findings in the present case other than arbitrariness. *Johnson* 223 F.3d at 675-76; *Wainwright,* 80 F.3d at 1231-32. *See also Getsy,* 456 F.3d at 587. Recognizing that rational inconsistent verdicts do not invalidate findings, but that irrational inconsistent verdicts that are result of arbitrary inconsistencies require the death verdict to be set aside, this Court is constrained to conclude that the interest of justice requires that the portion of the judgment sentencing Lawrence to death must be set aside. This Court **GRANTS** Defendant's request to set aside the death verdict on Count Eight and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                             Page 5
Slip Copy, 2006 WL 3337472 (S.D.Ohio)
**(Cite as: Slip Copy)**

**ORDERS** that a new sentencing hearing pursuant to 18 U.S.C. § 3593(b)(2)(D) is necessary.

This procedure is in accordance with the federal death penalty scheme and all constitutional considerations. The statutory scheme provides that a "[sentencing] hearing shall be conducted ... before a jury impaneled for the purpose of the hearing if ... after initial imposition of a sentence ... reconsideration of the sentence ... is necessary." 18 U.S.C. § 3593(b)(2)(D). Here, the Court has imposed sentence, Defendant has timely presented the Court with a motion for reconsideration of that sentence via setting aside that portion of the judgment and ordering a new trial, and the Court has reconsidered the sentence imposed on Count Eight. Because the law mandates correction of the error, the statutory scheme directs additional proceedings in regard to Count Eight. *See United States v. Causey,* 185 F.3d 407, 423 (5th Cir.1999) (remanding in capital case for § 3593(b)(2)(D) sentencing hearing after vacating death sentences); *cf.* 18 U.S.C. § 3595(c)(2) (permitting appellate court remand for § 3593 reconsideration hearing). Such re-sentencing proceedings do not run afoul of double-jeopardy protections, given that the jury did not "acquit" Defendant of death on Count Eight, but in fact found that the aggravating factors existed and outweighed the mitigating factors. *See Sattazahn v. Pennsylvania,* 537 U.S. 101 (2003) (predicating attachment of double jeopardy on whether there has been a determination based on findings sufficient to establish legal entitlement to a life sentence).

### B. Double Jeopardy

**\*6** Defendant next claims that the death sentence imposed by the jury in Count Eight, after the jury imposed a life sentence in Count Seven, constitutes a violation of the Double Jeopardy Clause of the Fifth Amendment. (Doc. # 324 at 11-12.) The Government contends that Defendant's failure to raise its double jeopardy claim by motion prior to trial serves to waive its double jeopardy claim. (Doc. # 253 at 10.) Although this Court is unconvinced by the Government's argument, this Court also finds that Defendant's double jeopardy claim fails on the merits.

This Court recognizes that "the defense of double jeopardy is personal and is capable of waiver." *United States v. Branham,* 97 F.3d 835, 842 (6th Cir.1998) (citing *United States v. Broce,* 488 U.S. 563, 568 (1989)). But in order to conclude that a defendant waived his double jeopardy rights, there must be evidence that the defendant took affirmative steps to voluntarily and intelligently waive his claim. *See id.* The Sixth Circuit has held that "a failure to assert double jeopardy at the trial level constituted a forfeiture of that right and not a waiver." *Id.*

Here, there is no evidence of a voluntary and intelligent choice by Defendant to waive his double jeopardy claim on Count Seven and Count Eight. Thus, consistent with the Sixth Circuit rationale, this Court concludes that Defendant's failure to object to Count Seven and Count Eight by motion prior to trial did not constitute a waiver of his claim, and therefore this Court is not precluded from considering the merits.

As to the merits of Defendant's double jeopardy claim, Defendant correctly states that the "Double Jeopardy Clause prevents multiple or succession prosecutions for the 'same offense.' " *Texas v. Cobb,* 532 U.S. 162, 173 (2001) (citing *Brown v. Ohio,* 432 U.S. 161, 164-66 (1977)). The established test to determine whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in *Blockburger v. United States,* 284 U.S. 299, 304 (1932); *see also Brown,* 432 U.S. at 167. In *Blockburger,* the United States Supreme Court held:
The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

*Blockburger,* 284 U.S. at 304.

Thus, this test emphasizes the elements of the two crimes. *Brown,* 432 U.S. at 167. Two crimes are considered the same offense unless one of them

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                           Page 6
Slip Copy, 2006 WL 3337472 (S.D.Ohio)
**(Cite as: Slip Copy)**

requires proof an additional element. *Id.* If one of the crimes does require the proof of an additional element, then there is no double jeopardy violation notwithstanding a substantial overlap in the proof offered to establish the each crime. *See Brown,* 432 U.S. at 167 (quoting *Iannelli v. United States,* 420 U.S. 770, 785 n. 17 (1975)).

**\*7** Defendant misapplies the *Blockburger* test to the present case when he wrongly emphasizes the similarity in facts between Count Seven and Count Eight, mainly that "this was one attempted bank robbery with a firearm," to justify his argument. (Doc. # 234 at 11-13.) But as the Supreme Court has emphasized, a substantial overlap in facts is immaterial when determining whether the Double Jeopardy Clause has been violated. *See Brown,* 432 U.S. at 167. Rather, the double jeopardy test focuses entirely on the elements. *Brown,* 432 U.S. at 167. Thus, because Count Eight requires proof an additional element-in order to be found guilty of murder under Count Eight, the jury had to find that Defendant killed the victim *with malice aforethought*-it is not the "same offense" as Count Seven as Defendant contends. Consequently, this Court rejects Defendant's double jeopardy argument.

### C. Juror Misconduct

Defendant also claims that he is entitled to a hearing to investigate his claim that the jury's verdict was the result of juror bias and/or misconduct. (Doc. # 234 at 6, 7.) Defendant claims he has successfully raised a prima facie case of jury bias and/or misconduct in this case based on the information revealed in an e-mail sent by an alternate juror to the victim's wife after Defendant's sentencing. *Id.* The e-mail revealed that an alternate juror was untruthful in answering the pre-jury selection questionnaire. *Id.* Specifically, the e-mail stated that the alternate juror had several family and friends in law enforcement and that he had a family friend who was shot and killed on duty, which contradicted the alternate juror's statements in his pre-jury selection questionnaire in which he indicated that "[neither he] nor a spouse, relative or close friend, presently or in the past, [have] been a member or employee of a law enforcement agency or organization" and that "[neither he nor] any member of [his] family or any close friends know anyone who was either injured or killed by a firearm." (Doc. # 257.) In addition, the communication also stated to the victim's wife that "we [the jury] were all on your side...." (Doc. # 221.) Defendant contends that this statement implies that prior to the deliberations, of which the alternate juror was not a part, the alternate juror discussed the case and formed an opinion with his fellow jurors. After the sentencing of Defendant, the Government filed a Sealed Notice (Doc. # 221) with this Court as soon as it learned of the e-mail communication between the alternate juror and the victim's wife. (Doc. # 234 at 5.)

The Government contends that Defendant has not made a prima facie case of jury misconduct. Specifically, the Government argues that there is no evidence of extraneous influence on the members of the jury who deliberated and returned the verdict and therefore not only is a hearing unnecessary, but it is prohibited by Rule 606(b) of the Federal Rules of Evidence. This Court finds the Government's argument convincing.

**\*8** A criminal defendant has a constitutional right to an impartial jury. *See, e.g., Duncan v. Louisiana,* 391 U.S. 145, 149 (1968); *United States v. Shackelford,* 777 F.2d 1141, 1145 (6th Cir.1985) (stating that the sixth amendment right to trial by jury is designed to ensure criminal defendants a fair trial by a "panel of impartial, 'indifferent' jurors") (quoting *Irvin v. Dowd,* 366 U .S. 717, 722 (1961)). Defendant cites to *Remmer v. United States,* 347 U.S. 227 (1954), for support for the proposition that he is entitled to a hearing to investigate his claim that the jury verdict was a result of juror bias or misconduct. (Doc. # 234 at 5.) In *Remmer,* the Supreme Court held that because juries in criminal cases must be free from outside influences, "a trial court confronted with an allegation of external tampering or contact with a juror during trial about a matter pending before the jury 'should determine the circumstances, the impact [of the contact] upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate.' " *United States v. Rigsby,* 45 F.3d 120, 123 (6th Cir.1995) (quoting *Remmer,* 347 U .S. at

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 3337472 (S.D.Ohio)
**(Cite as: Slip Copy)**

227-30); *see also United States v. Frost,* 125 F.3d 346, 377 (6th Cir.1997).

Consequently, this Court acknowledges that a trial judge has a duty to investigate possible juror bias to determine whether there may have been a violation of the Sixth Amendment. If this Court makes this determination, it warrants an evidentiary hearing to investigate. *Frost,* 125 F.3d at 377 (citing *Remmer,* 347 U.S. at 227-30); *Shackelford,* 777 F.2d at 1145. This Court also recognizes, however, that its duty to hold a hearing is predicated on the fact that a party has presented a viable claim of juror bias. *See Frost,* 125 F.3d at 377 (citing *Remmer,* 347 U.S. at 227-30); *Shackelford,* 777 F.2d at 1145.

The Sixth Circuit has held that a need for an evidentiary hearing does not arise absent the existence of an external influence on a juror or jurors. *Frost,* 125 F.3d at 377; *see also United States v. Prosperi,* 201 F.3d 1335, 1340 (1st Cir.2002) (recognizing the breadth of a district court's discretion under "Rule 606(b)" and stating that failure to hold a hearing constitutes an abuse of discretion only when there is evidence that the jury was subjected to influence by outside sources). Therefore, before this Court can conduct a hearing, Defendant must demonstrate that an external factor influenced the jury in this case. *Id.* Federal Rule of Evidence 606(b) speaks precisely to this issue. The rule differentiates between internal and external influences on jury deliberations and prohibits inquiries into jury misconduct unless the evidence concerns extraneous prejudicial information that was improperly brought to the jury's attention or evidence that outside influence was improperly brought to bear upon any juror. *Id.* Rule 606(b) states:
**\*9** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations ... except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Fed.R.Evid. 606(b).

The proof of extraneous prejudicial information under Rule 606(b) cannot be speculative. *United States v. Cuthel,* 903 F.2d 1381, 1382 (11th Cir.1990). Allegations of bias or unsubstantiated suspicions do not warrant an inquiry by the court. *Id.* Rather, to justify a post-trial hearing involving trial jurors, a defendant must show " 'clear, strong, substantial and incontrovertible evidence' " of extrinsic influence. *United States v. Ianniello,* 866 F.2d 540, 543 (2d Cir.1989) (quoting *United States v. Moon* 718 F.2d 1210, 1234 (2d Cir.1983); *see also Cuthel,* 903 F.2d at 1382. A debate as to whether a defendant has shown evidence with the proper specificity is predicated on the fact that the misconduct alleged involves external influences. Therefore, if a court concludes that there is no evidence of misconduct, or alternatively, that there is only the presence of internal influences, it is precluded from inquiring into the specificity of the evidence because Rule 606(b) strictly prohibits post-verdict interrogations of jurors as to internal influences.

Thus, this Court must consider the following: whether a deliberately false or misleading statement from an alternate juror in his questionnaire deprived Defendant of his right to an impartial jury, and whether the speculative influence of the alternate juror prior to jury deliberations constitutes an extraneous influence that would warrant an evidentiary hearing. *See United States v. Logan,* 250 F.3d 350, 381 (6th Cir.2001).

The Sixth Circuit has stated that "an extraneous influence on a juror is one derived from specific knowledge about or a relationship with either the parties or their witnesses. This knowledge or relationship is such that it taints the deliberations with information not subject to a trial's procedural safeguards." *United States v. Herndon,* 156 F.3d 626, 636 (6th Cir.1998). Examples of extraneous influences include: a juror in a criminal trial who had previously applied for a job in the district attorney office, a bribe attempt on a juror, and finally newspaper articles and media attention on

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy    Page 8
Slip Copy, 2006 WL 3337472 (S.D.Ohio)
**(Cite as: Slip Copy)**

the case. *Id.* at 634-35. Conversely, internal influences include the behavior of jurors during deliberations, any matter or statement by the juror, the juror's ability to hear or comprehend trial testimony, and the physical or mental incompetence of a juror. *See Herndon,* 156 F.3d at 636; *Manning v. Huffman,* 269 F.3d 720, 725 n. 2 (6th Cir.2001) (quoting *United States v. Acevedo,* 141 F.3d 1421, 1424 (11th Cir .1998) (stating that "Rule 606(b) prevents any inquiry of the twelve regular jurors regarding 'any matter or statement' made by a juror as well as the jurors' 'mental processes.' ").

**\*10** In the present case, any conceivable influence that the non-deliberating alternate juror had on the rest of the jury would have had to be deemed an external influence in order for Defendant's claim of jury bias to have merit. But, this Court rejects Defendant's argument and finds that any speculative influence the alternate juror had on the jury prior to deliberation would have been entirely internal. The communication solely between jurors prior to deliberation is an inherently internal process because it does not involve any extraneous sources of information. *See Cuthel,* 903 F.2d at 1383 (rejecting an appellant's characterization of an alternate juror as an outsider who influenced the jury). The Eleventh Circuit accurately stated the logical fallacy in characterizing the influence of an alternate juror as external: "[I]t is impossible for the alternate to have been an 'outsider' until the deliberations started; and, after deliberations did start, the alternate was separated from the rest of the jury." *Id.*

Here, Defendant acknowledges that the alternate juror did not participate in the actual jury deliberations, and the alternate certainly was not an "outsider" prior to the deliberations. (Doc. # 234 at 7.) Moreover, the statement "we [the jury] were all on your side" does not imply that the jury deliberated prematurely. Rather, the statement could have reflected the jury's sentiment after the trial. Thus, it is entirely unclear whether the alternate juror had any influence over the sitting jurors prior to deliberations. Even assuming arguendo that he did, this court concludes that the alternate juror did so as an "insider." *See Cuthel,* 903 F.2d at 1383.

There is thus no evidence that an outside source influenced the jury. Rule 606(b) explicitly prohibits this Court from engaging in post-verdict interrogations of jurors as to internal influences. Therefore, it implicitly prohibits this Court from interrogating an alternate juror or any sitting jurors based on mere speculation that an alternate juror may or may not have exerted an internal influence on sitting jurors prior to deliberation. *See Manning,* 269 F.3d at 725.

This Court now must consider Defendant's claim that the alternate juror's deliberately false or misleading statement in his voir dire questionnaire deprived Defendant of his right to an impartial jury. The Supreme Court has addressed when a juror's response during the voir dire questionnaire would require a new trial. In *McDonough Power Equipment., Inc. v. Greenwood,* the Court held that "[to] obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." 464 U.S. 548, 556 (1984). Under normal circumstances, if a juror stated on voir dire that "he could set aside any opinion he might hold and decide the case on the evidence and should the juror's protestation of impartiality have been believed," then he is not biased, and there would be no valid basis for a challenge for cause. *Patton v.. Yount,* 467 U.S. 1025, 1036 (1984).

**\*11** This Court recognizes that false or misleading answers given by prospective jurors may result in the seating of a juror who might have been discharged by the Court, challenged for cause by counsel, or stricken through a peremptory challenge. *Photostat Corp. v. Ball,* 338 F.2d 783, 786 (10th Cir.1964). Here, because an alternate juror gave deliberately false or misleading statements regarding his relationships to members of law enforcement, the Court never had the opportunity to ask the alternate juror whether he could "conscientiously apply the law and find the facts" in light of those relationships. Therefore, the Court did not have the chance to conclude whether the alternate was biased. Hypothetically, even if the alternate had divulged his relationships to law

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

enforcement on the jury questionnaire, had stated that he could not "conscientiously apply the law and find the facts" and consequently, this Court then had proceeded to grant Defendant's challenge for cause, this chain of hypothetical situations would have not altered the composition of the jury *that actually deliberated and reached the verdicts* against Defendant in the case. At most, the alternate juror would have been replaced by another alternate. Given that this Court has already established that the alternate juror did not participate in the actual jury deliberations and because Defendant has offered no evidence that external sources of information tainted the jury deliberations, this Court concludes that Defendant has not established a prima facie case of juror misconduct. Therefore, this Court rejects Defendant's contention that his constitutional right to an impartial jury has been violated.

### D. Jury Instructions

Finally, Defendant requests a new trial or a new penalty phase hearing with a new jury based on errors in the jury instructions in the sentencing phase. (Doc. # 234 at 14.) The Court instructed the jury that it must find that the aggravating factors substantially outweigh the mitigating factors. Defendant asserts that the Court should have instructed the jury that it must find that the aggravating factors outweighed the mitigating factors beyond a reasonable doubt before the jury could return a death verdict. *Id* . Prior to trial, Defendant raised the same objection to the proposed jury instruction by arguing that the Federal Death Penalty Act ("FDPA") 18 U.S.C. § 3591 et seq. is unconstitutional because it does not provide a standard for the jury to employ when balancing aggravating and mitigating factors. (Doc. # 111 at 8-9.) This Court rejected Defendant's argument and refused to give such an instruction. (Doc. # 146.) This Court again rejects Defendant's argument.

The FDPA provides that a death sentence may be imposed only if "the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death." 18 U.S.C. § 3593(e). Moreover, the Supreme Court has held that as long as a capital sentencing scheme permits a jury to consider " relevant mitigating evidence of the character and record of the defendant and the circumstances of the crime," *Tuilaepa v. California,* 512 U.S. 967, 979 (1994), the Constitution does not require that the jury be instructed how to weigh any particular fact in the capital sentencing decision. *See Angleon v. Buchanan,* 522 U.S. 269, 276 (1998). Defendant's argument is therefore without merit.

### III. Conclusion

**\*12** In conclusion, this Court **GRANTS** in part and **DENIES** in part Defendant's motion. (Doc. # 234.) Specifically, this Court **ORDERS** that Defendant's death verdict on Count Eight must be set aside on grounds of an arbitrary, inconsistent verdict and that a new sentencing hearing pursuant to 18 U.S.C. § 3593(b)(2)(D) is necessary.

### IT IS SO ORDERED.

S.D.Ohio,2006.
U.S. v. Lawrence
Slip Copy, 2006 WL 3337472 (S.D.Ohio)

Briefs and Other Related Documents (Back to top)

• 2:05cr00011 (Docket) (Jan. 20, 2005)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.