# EXHIBIT 14

Westlaw.

Not Reported in F.Supp.  Page 1

Not Reported in F.Supp., 1997 WL 33377790 (S.D.Ohio)
**(Cite as: Not Reported in F.Supp.)**

Boggs v. Divested Atomic Corp.S.D.Ohio,1997.Only the Westlaw citation is currently available.
United States District Court, S.D. Ohio, Western Division.
Teresa BOGGS, et al., Plaintiffs,
v.
DIVESTED ATOMIC CORPORATION, et al., Defendants.
**No. C-2-90-840.**

March 24, 1997.

Stanley Morris Chesley, Waite Schneider Bayless & Chesley Co., LPA, Cincinnati, OH, for Teresa Boggs. Margaret Apel Miller, Portsmouth, OH; Louise Malbin Roselle, Waite Schneider Bayless & Chesley Co., LPA, Cincinnati, OH; Ronald Simon, Simon & Associates, Washington, DC, for Bernadette Hannah, Carol Jenkins, Ellen Ison, Gertie Tackett, Karen Scott, Sara Chandler, Teresa Boggs and Wayne Chandler.
Gail Chern Ford, Richard Donovan Schuster and Robert Edgar Tait, Vorys Sater Seymour & Pease, Columbus, OH, for Divested Atomic Corp., Goodyear Tire & Rubb and Martin Marietta.

OPINION RULING UPON A NUMBER OF PENDING MOTIONS; CONFERENCE CALL SET TO SET TRIAL DATE AND OTHER DATES
RICE, Chief J.
*1 This litigation arises out of the alleged release of radioactivity from the Portsmouth Gaseous Diffusion Plant ("Plant"), which is owned by the Department of Energy ("DOE") and located in Piketon, Ohio.[FN1] The Plaintiffs bring this action on behalf of themselves and a class of persons who reside in the vicinity of that facility. The Defendants, Divested Atomic Corporation, Goodyear Tire and Rubber Company and Martin Marietta Energy Systems, Inc., were former operators of the Plant.[FN2] Numerous motions are currently pending in this case. Herein, the Court rules upon the majority of them, in the order in which they were filed.[FN3]

> FN1. This litigation was transferred to the docket of the undersigned on July 9, 1996. *See* Doc. # 235.
>
> FN2. On July 1, 1993, Lockheed Martin Utility Services, Inc. became the operator of the Plant.
>
> FN3. When two or more motions are related, the Court will discuss those motions together. In addition to the motions which the Court discusses in the body of this Decision, it rules on the following motions. *First,* Plaintiffs' Motion for Leave to File Memorandum in Excess of 20 Pages (Doc. # 200) is overruled, as moot. With that motion, the Plaintiffs sought to file such a memorandum in support of their motion seeking to exclude the testimony of the Defendants' expert witnesses. Subsequently, the latter motion and accompanying memorandum were filed and docketed. *See* Doc. # 207. *Second,* Plaintiffs' Motion for Leave to File Memorandum in Excess of 20 Pages (Doc. # 209), with which they seek to file a Reply Memorandum in support of their Motion for Summary Judgment in excess of 20 pages, is sustained. *Third,* the Defendants' Motion for Leave to File a Sur-Reply Memorandum in Opposition to the Plaintiffs' Motion for Summary Judgment (Doc. # 220) is also sustained. *Fourth,* the Plaintiffs' Motion for Leave to File a Memorandum, in Excess of 20 Pages, in Opposition to Defendants' Motion for Leave to File a Sur-Reply Memorandum (Doc. # 228), is sustained. Since the Defendants' Motion for Leave to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1997 WL 33377790 (S.D.Ohio)
**(Cite as: Not Reported in F.Supp.)**

File a Sur-Reply Memorandum in Opposition to the Plaintiffs' Motion for Summary Judgment (Doc. # 220) has been sustained, it might seem futile to sustain the Plaintiffs' Motion for Leave to File a Memorandum, in Excess of 20 Pages, in Opposition to that motion. However, in the memorandum which they seek leave to file, the Plaintiffs address the substantive arguments raised by the Defendants in their memorandum. Therefore, the Court has been able to consider the universe of Plaintiffs' arguments when ruling on the Plaintiffs' Motion for Summary Judgment (Doc. # 184).

Herein, the Court does not rule upon the Defendants' Motion for Summary Judgment (Doc. # 192) or the Plaintiffs' Motion to Exclude the Testimony of Defendants' Expert Witnesses and Request for Evidentiary Hearing (Doc. # 207).

### 1. Defendants' Motion for Protective Order (Doc. # 173)

With this motion, the Defendants request a protective order from the Court, relieving them of the obligation of responding to a document request served upon them by the Plaintiffs, seeking photographs and videotapes of the Plant. In their motion, the Defendants contend that the Plaintiffs' request would require them to produce every photograph and videotape taken of the Plant during its 43 year history. On May 8, 1996, Magistrate Judge Kemp issued an Order in which he summarized how certain pretrial disputes had been resolved, during a conference he conducted with counsel on May 3, 1996. In his Order, that judicial officer indicated, *inter alia,* that the Defendants had agreed to produce certain photographs and videotapes within one or two working days. *See* Doc. # 206 at 2. In the absence of any indication from the parties that the Plaintiffs' request for the production of photographs and videotapes was not resolved during the May 3rd conference, this Court is compelled to conclude that Defendants' Motion for Protective Order (Doc. # 173) is moot and same is, therefore, overruled.

### 2. Plaintiffs' Motion to Shorten Time for Defendants to Respond to Plaintiffs' Requests for Admission (Doc. # 182) and Defendants' Motion for Protective Order (Doc. # 195)

On April 23, 1996, less than two months before the trial of this litigation was scheduled to commence, the Plaintiffs served Requests for Admission upon the Defendants. Contemporaneously, the Plaintiffs filed a motion seeking an order requiring the Defendants to respond to those Requests within 14 days, rather than the 30 days provided by Rule 36(a) of the Federal Rules of Civil Procedure. *See* Doc. # 182. In response, the Defendants filed a motion for a protective order, seeking relief from the obligation of responding to the Plaintiffs' Requests for Admission. *See* Doc. # 195. Those Requests and the two motions were discussed during the conference Magistrate Judge Kemp conducted on May 3, 1996. *See* Doc. # 206 at 1-2. Subsequently, the Defendants served and filed their Responses to the Plaintiffs' Requests for Admission. *See* Doc. # 216. Accordingly, the Court overrules, as moot, Plaintiffs' Motion to Shorten Time for Defendants to Respond to Plaintiffs' Requests for Admission (Doc. # 182) and Defendants' Motion for Protective Order (Doc. # 195).

### 3. Plaintiffs' Motion for Summary Judgment on the Issue of Liability (Doc. # 184)

**\*2** As an initial matter, the Court will set forth the standards which govern all motions for summary judgment. A motion for summary judgment "should be granted where the evidence is such that it 'would require a directed verdict [now a judgment as a matter of law] for the moving party.' " *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986), quoting *Sartor v. Arkansas Gas Corp.,* 321 U.S. 620, 624 (1944). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Of course, the moving party:

always bears the initial responsibility of informing the district court of the basis for its motion, and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case No. 1:90-cv-00181-JLK   Document 2225-17   filed 01/22/07   USDC Colorado   Page 4 of 16

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1997 WL 33377790 (S.D.Ohio)
**(Cite as: Not Reported in F.Supp.)**

identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

477 U.S. at 323. *See also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir.1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial." quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 [6th Cir.1987] ). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250 (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitano Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). *See also, Michigan Protection and Advocacy Service, Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson,* 477 U.S. at 255 (emphasis added). Of course, if the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure,* § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091 (1990). *See also, L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 113 S.Ct. 98 (1992) ( "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ....."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

**\*3** In the instant motion, the Plaintiffs argue that they are entitled to summary judgment, since the Defendants are strictly liable as a result of having conducted an ultrahazardous activity. The Defendants counter by arguing that the standard of care which governs the Plaintiffs claims is supplied by federal law and that the Plaintiffs have not presented any evidence, establishing as a matter of law, that they (the Defendants) violated the standards established by that law. This Court agrees.

The Price-Anderson Amendments Act of 1988, P.L. 100-408, 102 Stat. 1066, invested federal courts with jurisdiction over "public liability actions." 42 U.S.C. § 2210(n)(2). A "public liability action" is defined as "any suit asserting a public liability." 42 U.S.C. § 2014(hh). "Public liability" is defined to include "any legal liability arising out of or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 4
Not Reported in F.Supp., 1997 WL 33377790 (S.D.Ohio)
**(Cite as: Not Reported in F.Supp.)**

resulting from a nuclear incident." [FN4] 42 U.S.C. § 2014(w). A "nuclear incident" is defined as:

> FN4. The definition of "public liability" contains three exceptions, none of which is applicable in the present case.

any occurrence, including an extraordinary nuclear occurrence, within the United States causing, within or outside the United States, bodily injury, sickness, disease or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material ....
42 U.S.C. § 2014(q). In this litigation, Plaintiffs seek to recover damages for the harm they have allegedly suffered as a result of radiological emissions from the Plant. Accordingly, the Court concludes that the present action is a "public liability action," as that phrase is used in the Price-Anderson Act Amendments.

Congress has provided that public liability actions such as the present one are to be governed by state law, *unless* "such law is inconsistent with the provisions of [42 U.S.C. § 2210]." 42 U.S.C. § 2014(hh). In *O'Conner v. Commonwealth Edison Co.,* 13 F.3d 1090 (7th Cir.), *cert. denied,* 512 U.S 1222 (1994), the Seventh Circuit applied this language in a lawsuit very similar to the present one. In *O'Conner,* the plaintiff was a trained radiation worker who was employed by a contractor at a nuclear facility owned by the defendant. The plaintiff alleged that on one particular day, he received an excessive dose of radiation, which caused him to have cataracts. The uncontroverted evidence was that the plaintiff received a dose of 45 millirem on the night in question. That dose was slightly less than .4% of the annual exposure to workers allowed by federal regulations. The Seventh Circuit decided that if Illinois common law would not apply federal safety standards as the applicable standard of care, federal law would pre-empt the state standards. The Seventh Circuit concluded that imposing a standard of care that was different than the federal safety standards would be inconsistent with the carefully crafted balance between protecting the public and promoting the development of the atomic industry. The Third Circuit, the only other circuit to address the question, has also concluded that a state standard of care which varied from federal safety standards would be pre-empted. *In re TMI Litigation,* 940 F.2d 832, 858-60 (3rd Cir.1991), *cert. denied,* 503 U.S. 906 (1992).[FN5] *Accord Hennessy v. Commonwealth Edison Co.,* 765 F.Supp. 495 (N.D.Ill.1991); *Akins v. Sacramento Municipal Utility District,* 18 Cal.App.4th 208, 8 Cal.Rptr.2d 785 (1992). *See also, Pacific Gas & Electric Co. v. Energy Resources Comm'n,* 461 U.S. 190 (1983). Based upon the foregoing, this Court agrees with Defendants that their liability is governed by the federal standards relating to radioactive emissions. In other words, the Defendants cannot be held liable unless they violated those standards.[FN6] Since the Plaintiffs' Motion for Summary Judgment on the Issue of Liability (Doc. # 184) is predicated upon the assertion that the Defendants have violated standards established under state law, the Court overrules this motion. [FN7]

> FN5. In *In re TMI Litigation,* the Third Circuit said that the state standard would be preempted, regardless of whether the state standard was stricter or more lenient than the federal regulations. 940 F.2d at 860 n. 22. The Third Circuit thus reaffirmed its conclusion that federal law supplies the standard of care. *In re TMI Litigation,* 67 F.3d 1103, 1106-07 (3rd Cir.1995).

> FN6. This conclusion should come as no surprise to counsel, since the Court reached the same conclusion in *Stepp v. Monsanto Research Corp.,* Case No. C-3-91-468 (S.D.Ohio).

> FN7. In that motion, the Plaintiffs devote one paragraph to the argument that the evidence establishes, as a matter of law, that the Defendants violated federal standards. *See* Doc. # 184 at 35. In support of that argument, the Plaintiffs have supplied an authenticated summary,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 5
Not Reported in F.Supp., 1997 WL 33377790 (S.D.Ohio)
**(Cite as: Not Reported in F.Supp.)**

prepared by Plaintiffs' counsel, which sets forth Defendants' alleged violations of federal and state laws relating to environmental protection, including alleged violations of the permit itself. That evidence does not establish, as a matter of law, that the Defendants violated federal standards relating to the release of radioactive materials. Most of the violations set forth in the summary do not even relate to radioactive emissions.

In addition to radioactive emissions, the Plaintiffs seek to recover from the Defendants for the release of non-radioactive materials. In their Motion for Summary Judgment on the Issue of Liability (Doc. # 184), the Plaintiffs request summary judgment as to liability on that aspect of their claims, as well. However, since the Plaintiffs do not separately argue that portion of their motion, this Court is not able to address this contention.

*4. Defendants' Motion for Separate Trials to Address Case Issues (Doc. # 187)*

**\*4** The Defendants filed this motion shortly before the trial of this litigation was scheduled to commence on June 3, 1996. Therein, they request that this case be tried in three phases. In the first phase, the jury would decide whether the Defendants complied with federal regulations regarding the release of radioactivity. Doc. # 187 at 1. In the second phase (if necessary), $^{FN8}$ the jury would determine whether levels of off-site exposures attributable to the Plant "have been sufficient to cause a significantly increased risk of serious future [adverse] health effects, thereby establishing a reasonable basis for fear." *Id.* The third phase would resolve all other issues. *Id.* The Plaintiffs argue that all issues should be decided in one trial. This Court is not opposed to considering a trial of this litigation in phases; however, it is not appropriate to rule upon the Defendants' request at this time, given the present procedural status of this litigation. A number of potentially dispositive motions are pending. Depending upon how the Court resolves those motions, the trial of this litigation could be greatly effected. Therefore, the Court overrules, without prejudice to renewal, the Defendants' Motion for Separate Trials to Address Case Issues (Doc. # 187). The Defendants may renew this request, either in its current form or as a variant of it, at an appropriate time before the trial of this litigation.$^{FN9}$

> FN8. According to the Defendants, they will be entitled to judgment on all of the Plaintiffs' claims if they prevail in the first phase.
>
> FN9. This Court will give consideration to a request to bifurcate the trial of this litigation into a liability phase and a damages phase. This will avoid the prejudicial effect of evidence which, although relevant to damages, is not relevant to liability.

*5. Defendants' Motion to Dismiss Plaintiffs' Claims for Injunctive Relief and Medical Monitoring Fund (Doc. # 188)*

In their Amended Complaint (Doc. # 4), the Plaintiffs request, as a remedy, that the Court enjoin the Defendants from continuing to operate the Plant in a manner which violates federal and state law and, in addition, enter a mandatory injunction, requiring them to remediate the environmental degradation caused by their operation of that facility. The Plaintiffs request, as an additional remedy, that the Court impose a medical monitoring fund, sufficient to pay the costs of diagnosis and treatment of cancer, abnormal genetic conditions and other health problems which may manifest themselves in the Plaintiffs and members of the class as a result of emissions from the Plant. Thus, although the Defendants caption this motion as a request that the Court dismiss the Plaintiffs' "claims" for injunctive relief and medical monitoring fund, they are, in actuality, requesting that the Court dismiss two of the remedies requested by the Plaintiffs. For reasons which follow, the Court concludes that the Plaintiffs' request for injunctive relief must be dismissed, but that their request for a medical monitoring fund should not be so dismissed.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                             Page 6
Not Reported in F.Supp., 1997 WL 33377790 (S.D.Ohio)
**(Cite as: Not Reported in F.Supp.)**

With respect to the Plaintiffs' request for injunctive relief, it is unquestioned that the Defendants do not currently operate the Plant. Therefore, the Plaintiffs' request that the Court enjoin Defendants from operating that facility in a manner which violates federal or state law is moot. The Defendants argue that this Court could not grant injunctive relief requiring remediation for the same reason (i.e., because they no longer operate the Plant). This Court agrees. Courts have held that "[t]he application of the preliminary injunction standard presupposes that the plaintiff has named the 'right' persons as defendants-persons from whom equitable relief is available." *Trailer Rental Co. v. Buchmeir,* 800 F.Supp. 759, 762 (E.D.Wis.1992); Since the Defendants no longer operate the Plant, the Court would be required to order Defendants to enter that facility, if it were to issue an injunction directing remediation. In an analogous situation, a court indicated that it could not issue a similar injunction. In *Werlein v. United States,* 746 F.Supp. 887 (D.Minn.1990), the Plaintiffs sued a number of entities, requesting a mandatory injunction ordering them to clean up a hazardous waste site. The District Court indicated that such injunctive relief would not be available against two of the defendants, since they neither owned the site nor operated a business on it. The *Werlein* court wrote, "[t]o order injunctive relief, the Court will have to order [the two defendants] onto someone else's property to abate the discharge of pollutants. This is contrary to normal injunctive principles." *Id.* at 897. Accordingly, the Court sustains the Defendants' Motion to Dismiss Plaintiffs' Claims for Injunctive Relief and Medical Monitoring Fund (Doc. # 188), to the extent that, with that motion, the Defendants seek dismissal of the Plaintiffs' request for injunctive relief.[FN10]

> FN10. The Defendants can be ordered to pay costs of remediation; they just cannot be ordered to do it themselves.

**\*5** The Defendants argue that this Court does not have subject matter jurisdiction over the Plaintiffs' " claim" for a medical monitoring fund. In particular, the Defendants contend that § 113(h) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9613(h), prevents this Court from exercising jurisdiction over that "claim." Section 113(h) provides:

(h) Timing of review

No Federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) *to review any challenges* to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action ....

42 U.S.C. § 9613(h) (emphasis added).[FN11] The Defendants assert that by requesting a medical monitoring fund, the Plaintiffs are seeking to have this Court review a challenge to a removal or remedial action selected by the Agency for Toxic Substances and Disease Registry ("ATSDR"), an agency within the Public Health Service, charged with the responsibility of conducting health assessments of persons exposed to toxic substances. *See* 42 U.S.C. § 9604(l). In *Hanford Downwinders Coalition, Inc. v. Dowdle,* 71 F.3d 1469 (9th Cir.1995), the Ninth Circuit explained the role of the ATSDR:

> FN11. Section 113(h) contains five exceptions, none of which is applicable in the present case.

Congress created the ATSDR in 1980 as part of CERCLA, and significantly expanded the ATSDR's role as part of the 1986 Superfund Amendments ("SARA"). Congress gave the Agency the responsibility to "effectuate and implement [CERCLA's] health related authorities." 42 U.S.C. S 9604(i)(1). Among those authorities is a requirement that the ATSDR complete a "health assessment" within one year of an EPA proposal to list a site on the NPL. *See* 42 U.S.C. § 9604(i)(6)(A). The purpose of the health assessment is to help determine "whether actions ... should be taken to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 7
Not Reported in F.Supp., 1997 WL 33377790 (S.D.Ohio)
**(Cite as: Not Reported in F.Supp.)**

reduce human exposure to hazardous substances from a facility and whether additional information on human exposure and associated health risks is needed and should be acquired by conducting epidemiological studies ..., establishing a health surveillance program ..., or through other means." 42 U.S.C. § 9604(i)(6)(G). Only if the ATSDR Administrator determines that "there is a significant increased risk of adverse health effects in humans from exposure to hazardous substances based on the results of a health assessment" must the ATSDR initiate a health surveillance program. 42 U.S.C. § 9604(i)(9). Once initiated, the program must include both periodic medical testing to screen the exposed population for disease and a mechanism to refer for treatment anyone who needs medical attention. 42 U.S.C. § 9604(i)(9)(A), (B).
*Id.* at 1474-75. The ATSDR has conducted a health assessment of the vicinity surrounding the Plant, [FN12] and the Defendants argue that the imposition of a medical monitoring fund will constitute a review by this Court of a challenge to that assessment.[FN13] This Court does not agree.

> FN12. The ATSDR has issued its preliminary report on that assessment, and has concluded that those living in the vicinity of the Plant have not suffered any adverse health effects as a result of the emissions from that facility.
>
> FN13. Courts have held that a health assessment conducted by the ATSDR is a removal or remedial action pursuant to § 104 of CERCLA, 42 U.S.C. § 9604. *See e.g., Hanford, supra.* The Plaintiffs do not argue to the contrary.

**\*6** Herein, the Plaintiffs seek, as a remedy, an order requiring the Defendants to pay a sum of money to fund a program of diagnosis and treatment for themselves and members of the class. Awarding that remedy will not in any manner require this Court to interfere with the ongoing activities of the ATSDR. *Compare Razore v. Tulalip Tribes of Washington,* 66 F.3d 236 (9th Cir.1995) (lawsuit which requests a remedy which could interfere with a remedial investigation/feasibility study of a hazardous waste site is a challenge to a remedial action). In *Durfey v. E.I. DuPont De Nemours Co.,* 59 F.3d 121 (9th Cir.1995), the plaintiffs sued the operators of the Hanford nuclear weapons facility, requesting the imposition of a medical monitoring fund. The District Court, relying upon § 113(h), dismissed the suit, reasoning that such a remedy was a challenge to the ongoing health related activities being conducted by the ATSDR. The Ninth Circuit reversed, concluding that privately funded medical monitoring, which the plaintiffs had sought with their lawsuit, was not a response cost under CERCLA and that, therefore, § 113(h) did not deprive the District Court of jurisdiction. *Id.* at 124-25. The Ninth Circuit also concluded that the request for a medical monitoring fund was not a challenge to any action the ATSDR might take, despite the fact that the goal of such a fund was related to the goal of the clean up of the Hanford site. *Id.* at 125-26. This Court finds *Durfey* to be persuasive and will follow that decision.[FN14] Indeed, to conclude otherwise would effectively prevent plaintiffs from obtaining a medical monitoring fund in any litigation arising out of a toxic waste site which is on the national priorities list, since the ATSDR is obligated to perform a health assessment for all such sites. Accordingly, the Court concludes that Plaintiffs' request for a medical monitoring fund is not a challenge to the remedial activities of the ATSDR and that, therefore, § 113(h) does not prevent this Court from awarding that requested remedy, if it is otherwise appropriate. Moreover, the legislative history of § 113(h) supports this conclusion. The purpose of that statutory provision was to clarify that "there is no right of review of the ... selection and implementation of the response actions until after the response action (sic) have been completed." H. Rep. 99-253(l) at 81, *reprinted in,* 1986 U.S.C.C.A.N. 2835, 2863. By determining whether Plaintiffs are entitled to a medical monitoring fund, as a remedy, this Court will not be conducting any type of pre-implementation review of any remedial action selected by the ATSDR. Therefore, the Court concludes, as a matter of law, that the Plaintiffs' request for a medical monitoring fund is not a challenge to the ATSDR health assessment.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.    Page 8
Not Reported in F.Supp., 1997 WL 33377790 (S.D.Ohio)
**(Cite as: Not Reported in F.Supp.)**

FN14. The cases cited by the Defendants are distinguishable. For instance, in *Hanford Downwinders,* the plaintiffs sought an order directing the Director of the ATSDR to begin a health surveillance program under 42 U.S.C. § 9604(l)(9). The Ninth Circuit, distinguishing *Durfey* on the basis that a privately funded medical monitoring fund was sought therein, affirmed the dismissal of that lawsuit under § 113(h), reasoning that the plaintiffs were seeking review of the remedy chosen by the ATSDR.

Accordingly, the Court overrules the Defendants' Motion to Dismiss Plaintiffs' Claims for Injunctive Relief and Medical Monitoring Fund (Doc. # 188), to the extent that, with that motion, the Defendants seek dismissal of the Plaintiffs' request for such a fund.

*6. Defendants' Motion to Decertify Case as a Class Action (Doc. # 189)*

**\*7** On November 7, 1991, Judge Kinneary certified this litigation as a class action. *Boggs v. Divested Atomic Corp.,* 141 F.R.D. 58 (S .D.Ohio 1991). That judicial officer focused upon the Plaintiffs' request for injunctive relief and acted pursuant to Rule 23(b)(1)(A), which authorizes such certification when the prosecution of separate actions could create the risk of inconsistent adjudications with respect to members of the class, thus establishing incompatible standards of conduct for the Defendants. The Defendants move to decertify this action, arguing that the dismissal of the Plaintiffs' request for injunctive relief destroys that basis for certifying this litigation. Above, this Court has concluded that the Plaintiffs' request for injunctive relief must be dismissed. Therefore, the basis for certifying this litigation as a class action no longer exists. Accordingly, the Court sustains the Defendants' Motion to Decertify Case as a Class Action (Doc. # 189). That does not necessarily mean that this litigation will not ultimately proceed as a class action. Rather, the Plaintiffs must file a renewed motion seeking certification, pursuant to Rule 23(b)(3).[FN15]

FN15. Judge Kinneary indicated that this action could be certified pursuant to Rule 23(b)(3), but that he based his decision upon Rule 23(b)(1)(A), in order to prevent members from opting-out. This Court deems it appropriate to decide whether certify this lawsuit under Rule 23(b)(3) on the basis of the evidence as it now exists, rather than upon the state of the record in 1991.

*7. Defendants' Motion in Limine to Exclude Evidence Barred by the Statute of Limitations (Doc. # 197)*

In this motion, the Defendants seek to exclude all evidence of allegedly tortious conduct which occurred before June 7, 1986, a date four years before this litigation was initiated on June 7, 1990. In their Amended Complaint (Doc. # 4), the Plaintiffs set forth claims of negligence, strict liability for ultrahazardous activity, private nuisance and trespass.[FN16] The Defendants assert that the four-year statute of limitations set forth in Ohio Revised Code § 2305.09 governs the Plaintiffs' claims. The Defendants contend that the discovery rule is applicable to the Plaintiffs' claims and that they (Plaintiffs) knew or should have known about the allegedly hazardous nature of the emissions from the Plant before June 7, 1986. It is apparent that this particular motion is, in reality, a motion for summary judgment disguised as a motion in limine. The underlying basis of this motion is that the evidence before the Court establishes, as a matter of law, that Plaintiffs' claims predicated upon conduct occurring before June 7, 1986, are barred by § 2305.09. *See* Doc. # 197 at 5-7. The Defendants then argue that since claims predicated upon on such conduct are barred by the statute of limitations, evidence relating to them is not relevant under Rule 401 of the Federal Rules of Evidence and, therefore, is not admissible under Rule 402 of those Rules. The appropriate procedural mechanism for raising this issue is a properly supported motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.[FN17] Accordingly, the Court overrules Defendants' Motion in Limine to Exclude Evidence Barred by the Statute of Limitations (Doc. # 197), without prejudice to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.        Page 9
Not Reported in F.Supp., 1997 WL 33377790 (S.D.Ohio)
**(Cite as: Not Reported in F.Supp.)**

renewal as a motion for summary judgment.

> FN16. The Plaintiffs have also set forth a claim under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 *et seq.* The Defendants have not addressed the CERCLA statute of limitations in this particular motion. *See* Doc. # 197 at 2 n.1.

> FN17. The Defendants also argue that evidence of conduct occurring before June 7, 1986 (i.e., evidence of allegedly tortious conduct which is barred by the statute of limitations) is not relevant, under Rule 401 of the Federal Rules of Evidence and, therefore, is not admissible. *See* Rule 402 of the Federal Rules of Evidence. Accepting that statement for present purposes (*but see Black Law Enforcement Officers Association v. City of Akron,* 824 F.2d 475 (6th Cir.1987) (noting that evidence of stale claims is not necessarily irrelevant)), the necessary predicate for that argument is that conduct occurring before June 7, 1986 is, indeed, barred by the statute of limitations. That predicate must be established through a motion for summary judgment, rather than a motion in limine.

*8. Plaintiffs' Motion in Limine to Exclude Draft Document (Doc. # 199)*

**\*8** With this motion, the Plaintiffs seek to exclude a draft Public Health Assessment for the Portsmouth Gaseous Diffusion Plant, prepared by ATSDR ("ATSDR Draft Report"), from evidence at trial.[FN18] In large measure, the Plaintiffs argue that the ATSDR Draft Report should be so excluded because it is a draft report being circulated for public comment. The Court overrules this motion, without prejudice to renewal. The ATSDR Draft Report indicates that the public comment period was to last until February 6, 1996, more than one year ago. Since a new trial date for this litigation has not yet been selected, it is possible that the final version of the ATSDR Draft Report will have been issued before this case goes to trial. Therefore, the Court deems it inappropriate to rule on the potentially moot question of whether the ATSDR Draft Report should be admitted as evidence.[FN19]

> FN18. A copy of the ATSDR Draft Report is Exhibit A to the Plaintiffs' Motion in Limine to Exclude Draft Document (Doc. # 199).

> FN19. Before this case goes to trial, the Plaintiffs may renew this motion, if the final version of this document has not been issued by that time.

*9. Defendants' Motion in Limine to Exclude Anecdotal Evidence (Doc. # 201)*

At the direction of Plaintiffs' counsel, Thomas Reuter ("Reuter"), Plaintiffs' expert witness on real estate valuation, interviewed a number of persons who live in the vicinity of the Plant. The interviewees told Reuter about all manner of unusual phenomena which had occurred in the vicinity, ranging from overheated streams which scalded any cattle standing in those streams to bald squirrels and two-headed cows. In addition, Reuter was told about damages to their property and illnesses which they and their family members had suffered. The Defendants characterize Reuter's testimony about natural phenomena and the like as anecdotal evidence and move, pursuant to Rules 401, 402 and 403 of the Federal Rules of Evidence, for an order preventing Reuter from providing this testimony. The Defendants argue that in the absence of competent expert testimony demonstrating that emissions from the Plant caused those phenomena to occur, the anecdotal evidence is irrelevant. The Plaintiffs contend that the anecdotal evidence is relevant to their claim that they have suffered damages, in the form of diminution of property values as a result of the Defendants' operation of the Plant.[FN20] According to the Plaintiffs, the fair market value of property is what a willing buyer would pay to a willing seller. That amount, the Plaintiffs' argument continues, is, in part, determined by people's perceptions about the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                         Page 10
Not Reported in F.Supp., 1997 WL 33377790 (S.D.Ohio)
**(Cite as: Not Reported in F.Supp.)**

property. The anecdotal evidence is necessary in order to establish the nature of those perceptions. The Plaintiffs assert that the Defendants' expert witness on the valuation of the Plaintiffs' property employed the exact same methodology, to wit: inspecting a number of properties and interviewing people.[FN21]

> FN20. In their Memorandum in Opposition to the Defendants' Motion in Limine to Exclude Anecdotal Evidence, the Plaintiffs also state that the anecdotal evidence is admissible to prove their nuisance claim. *See* Doc. # 215 at 2. The Plaintiffs do not, however, separately argue that point.
>
> FN21. In their Reply Memorandum (Doc. # 223), the Defendants argue, for the first time, that Reuter's testimony would not be admissible under Rule 703 of the Federal Rules of Evidence, because anecdotal evidence is not the type reasonably relied upon by expert witnesses providing valuation testimony. Since the Plaintiffs have not had the opportunity to address that contention, the Court will not do so in this Opinion.

The Court agrees with the Defendants that in the absence of expert testimony to the effect that the Defendants' operation of the Plant caused the incidents which constitute the anecdotal evidence, that evidence is not admissible. Unquestionably, expert testimony is necessary to establish that the incidents which constitute the anecdotal evidence were caused by some emissions from the Plant. *See e.g., Layton v. Yankee Caithness Joint Venture,* 774 F.Supp. 576 (D.Nev.1991) (granting summary judgment to the defendants on plaintiffs' claim that emissions from the defendants' plant caused them to suffer physical injuries, since the plaintiffs did not have expert testimony to establish causation). *See also Richardson v. Richardson-Merrell, Inc.,* 857 F.2d 823, 829 (D.C.Cir.1988) ("The question whether Benedictin causes limb reduction defects is scientific in nature, and it is to the scientific community that the law must look for the answer. For this reason, expert witnesses are indispensable in a case such as this."). As to the Plaintiffs' argument that the anecdotal evidence is nevertheless admissible, because it is relevant to this issue of damages, the Court does agree that evidence of public perception of a particular risk is relevant to the question of value.[FN22] In condemnation proceedings where valuation is the central issue, courts have allowed the introduction of evidence regarding the diminished value of property based upon the public's fear of a particular hazard (such as a high voltage transmission line), regardless of the reasonableness of those fears. *See United States v. 14.38 Acres of Land in Leflore County Mississippi,* 80 F.3d 1074, 1079 (5th Cir.1996) (and cases cited therein); *United States ex rel. TVA v. Easement and Right of Way,* 405 F.2d 305, 309 (6th Cir.1968). *United States ex rel. TVA,* is instructive of this point. Therein, the Tennessee Valley Authority took an easement in order to construct high voltage, electric transmission lines. One of the issues to be resolved was the incidental damages caused to the remaining property by the taking. Upon appeal, the TVA challenged the District Court's award of such damages, arguing that it improperly considered the presence of the high voltage. The TVA based its challenge upon studies it had conducted, which demonstrated that apprehension of injury from the presence of high voltage lines was ill founded. The Sixth Circuit rejected that argument, writing:

> FN22. Obviously, no evidence of damages will have any ultimate relevance, unless the Plaintiffs first prove that their damages were directly and proximately caused by some action(s) or inaction(s) on the part of the Defendants.

**\*9** [I]n final analysis, we are concerned only with market value. Although these studies may show objectively the complete safety of these structures, we are not convinced that certain segments of the buying public may not remain apprehensive of these high voltage lines, and therefore might be unwilling to pay as much for the property as they otherwise would. On this record, allowance of incidental damages of 50 per cent of market value to the triangular tract and for a width of 100 feet on each side of the outer boundary of the remainder of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 11
Not Reported in F.Supp., 1997 WL 33377790 (S.D.Ohio)
**(Cite as: Not Reported in F.Supp.)**

easements appears to us reasonable and proper. *Id.* at 309. Those cases, however, can be distinguished from the instant litigation. Herein, the Plaintiffs do not seek to introduce evidence that their property values have declined, because of public fears regarding emissions from a plant manufacturing nuclear material (irrespective of the reasonableness of those fears). Rather, they seek to introduce evidence of a number of specific occurrences, without proof that emissions from the Plant caused those occurrences. Moreover, in the cases in which perception evidence was admitted, as relevant to valuation, causation was not an issue. For instance in *United States ex rel. TVA, supra,* it was unquestioned that the TVA caused the high voltage lines to be placed where they were. In the absence of any evidence that the incidents which constitute the anecdotal evidence were caused by the Defendants' operation of the Plant, that evidence will not be admissible to prove that the Plaintiffs suffered damages in the form of diminished property values. Despite the fact that the Plaintiffs have not presented any evidence of causation, the Court overrules, as premature, the Defendants' Motion in Limine to Exclude Anecdotal Evidence (Doc. # 201). The Plaintiffs will not be permitted to introduce or comment on such anecdotal evidence, without either a pre-trial proffer by the Plaintiffs that they have evidence that the Defendants' operation of the Plant caused the incidents constituting the anecdotal evidence, or the presentation of evidence at trial by Plaintiffs establishing such linkage.[FN23] If no such proffer is made *or* evidence introduced, then Defendants may renew their motion.[FN24]

> FN23. The Court is not holding that evidence of a willing purchaser's perception of the dangers posed by the Plant is not relevant to the issue of the value of the real estate owned by the Plaintiffs. Rather, the Court is merely holding that a willing buyer's perception cannot be proved by anecdotal evidence, in the absence of expert testimony that the Defendants' operation of the Plant caused the occurrence of the incidents which underlie the anecdotal evidence.

> FN24. Of course, even if such a proffer is made or evidence introduced, Defendants may still challenge the direct causal relationship between the alleged incident(s) and the anecdotal evidence.

*10. Joint Motion for Submission of Supplemental Juror Questionnaire (Doc. # 203)*

With this motion, the parties request that the Court submit an additional questionnaire to potential jurors. A copy of their proposed questionnaire is attached to that motion. Although this Court is not unalterably opposed to the use of such questionnaires, it is premature to consider the parties' specific proposal. It is not certain whether the this litigation will be tried in Dayton or in Columbus. Some of the questions contained in the parties' proposed questionnaire ask prospective jurors whether they, or their families and friends, reside within six miles of the Pike County location of the Plant. If this case is to be tried in Dayton, those questions may not be necessary, since this Court draws it jurors from an area of this state which is relatively distant from Pike County and the Plant in question.[FN25] Accordingly, the Court overrules the Joint Motion for Submission of Supplemental Juror Questionnaire (Doc. # 203), without prejudice to renewal when the date and location of the trial are established.

> FN25. In addition, during *voir dire,* this Court traditionally asks many of the proposed questions, such as whether members of the panel know or are they familiar with any of the attorneys or potential witnesses.

*11. Defendants' Motion to Reconsider Order Allowing Plaintiffs to Designate New Expert Witnesses (Doc. # 219) and Defendants' Motion to Strike New Expert Opinions Offered by Plaintiffs (Doc. # 221)*

**\*10** On March 5, 1996, the Plaintiffs filed a motion, seeking leave to allow them to name two additional expert witnesses and to supplement the reports of the expert witnesses they had previously identified.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 12
Not Reported in F.Supp., 1997 WL 33377790 (S.D.Ohio)
**(Cite as: Not Reported in F.Supp.)**

FN26 *See* Doc. # 172. In that motion, the Plaintiffs indicated that such leave was necessary in order to respond to a report issued by the ATSDR and because one of their attorneys (Louise Roselle) had only recently been allowed to review classified documents. FN27 The Defendants opposed that motion, and the Plaintiffs, in their Reply Memorandum, limited their motion to supplement previously disclosed opinions of expert witnesses to five particular experts, to wit: Dr. Harvey Rosen ("Rosen"), Reuter, Linda Lehman ("Lehman"), and Bernd Franke and Arjun Makhijani ("Franke & Makhijani"). *See* Doc. # 177 at 19. On April 29, 1996, Judge Kinneary sustained the Plaintiffs' motion (*see* Doc. # 193), and on May 2, 1996, the Plaintiffs provided opinions of the two newly designated experts, Dr. Mo Salman ("Salman") and Dr. James M. Melius ("Melius"), and further reports from the five expert witnesses listed above. In addition, Plaintiffs furnished a further report from another previously disclosed expert witness, Jacob Lindy ("Lindy"). After Judge Kinneary had recused himself and had canceled the then scheduled trial, the Defendants, on May 31, 1996, filed two interrelated motions, to wit: their Motion to Reconsider Order Allowing Plaintiffs to Designate New Expert Witnesses (Doc. # 219), and their Motion to Strike New Expert Opinions Offered by Plaintiffs (Doc. # 221). With these motions, the Defendants seek to prevent the opinions of Salman and Melius and the additional opinions of the six previously named expert witnesses from being used at trial. In both, the Defendants argue that the Plaintiffs violated previous scheduling orders entered in this litigation. In particular, the Defendants argue that the Plaintiffs were required to identify their expert witnesses and to provide reports from them by the end of 1992. Despite agreeing with the Defendants that the previously entered scheduling order required the Plaintiffs to accomplish this task more than four years ago, this Court does not deem that to be a sufficient reason to reconsider Judge Kinneary's ruling authorizing the Plaintiffs to name two additional expert witnesses or to strike the additional reports from the six previously identified expert witnesses. The Defendants cogently raised this point in their memorandum in opposition to the Plaintiffs' motion seeking leave to name two additional expert witnesses and to supplement the reports of the expert witnesses previously identified. *See* Doc. # 174. By sustaining the Plaintiffs' motion, Judge Kinneary rejected that argument. Moreover, a new trial date for this litigation has not yet been set; therefore, as is explained below, the Defendants will have ample opportunity to prepare to meet this evidence.FN28

> FN26. When the Plaintiffs filed that motion, the trial of this litigation was scheduled to commence less than three months into the future.
>
> FN27. In their Reply Memorandum (Doc. # 177), the Plaintiffs discussed at length the Defendants' allegedly dilatory document production.
>
> FN28. In these two motions, the Defendants raise only one argument impacting upon their pending Motion for Summary Judgment (Doc. # 192). That argument does not persuade the Court that it should strike the additional expert witnesses or the further opinions of the previously designated expert witnesses. In their motion seeking reconsideration of Judge Kinneary's Order, authorizing the Plaintiffs to designate two additional expert witnesses, the Defendants assert that allowing the Plaintiffs to do so will effectively permit them to amend their claims. The Defendants contend that allowing the Plaintiffs to amend their claims is particularly inappropriate, given that Defendants' Motion for Summary Judgment (Doc. # 192) is pending. Below, this Court concludes that the designation of Salman and Melius does not effectively constitute an amendment of the Plaintiffs' claims.

**\*11** The Defendants also argue that the opinions of Salman and Melius should be stricken, since they have the effect of amending the Plaintiff's Amended Complaint, which the Defendants contend would be improper given the procedural context of this

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 13
Not Reported in F.Supp., 1997 WL 33377790 (S.D.Ohio)
**(Cite as: Not Reported in F.Supp.)**

litigation (i.e., their Motion for Summary Judgment is pending). In his report, Salman opined that animals in the vicinity of the Plant have higher than expected levels of birth defects and cancer, levels which were caused by emissions from the Plant. Salman also states that animal health is a predictor for human health. In his report, Melius states that persons living near the Plant suffer from medical conditions (such as asthma and other lung diseases, joint and bone problems, birth defects and skin disease) which are potentially related to emissions from the Plant. Melius also states that the pattern of his medical findings raises significant concerns that the people residing in the area of the Plant have been impacted by exposure to emissions from the Plant. Melius adds that as a result of being exposed to radioactive material, fluorides and other toxic materials, people living near the Plant have had their health adversely affected, which leads to an increased risk of disease. The Defendants argue that Salman would introduce issues of animal health and veterinary medicine into this litigation and that despite repeated statements by the Plaintiffs that they are not alleging that emissions from the Plant have caused any of them to suffer physical injuries, Melius would interject that issue into this litigation. Plaintiffs, on the other hand, disclaim any intention of introducing new issues into this litigation; rather, they contend that these opinions merely support their request for a remedy in the form of a medical monitoring fund. In other words, the Plaintiffs do not intend to utilize testimony from these two expert witnesses in order to support an award of damages for injuries suffered by animals or people. It cannot be questioned that the Plaintiffs' request for a medical monitoring fund has been a part of this litigation since its inception. Moreover, in order to be entitled to such a remedy, a plaintiff must prove that he or she suffers a significantly increased risk of developing a serious disease. *Redland Soccer Club v. Dept. of the Army,* 55 F.3d 827, 845 (3rd Cir.1995), *cert. denied,* 116 S.Ct. 772 (1996). The Plaintiffs will introduce that evidence in order to support their assertion that they suffer such a risk. Accordingly, the Court concludes that the reports of Salman and Melius do not have the effect of amending Plaintiffs' Amended Complaint.[FN29]

> FN29. Above, the Court has indicated that it will consider bifurcating the trial of this litigation between liability and damages. This evidence would be admissible in the damages phase of the trial.

Alternatively, the Defendants argue that they will suffer prejudice if Salman and Melius are allowed to testify. In particular, they contend that they will be required to expend a substantial sum deposing these new expert witnesses, analyzing their opinions, retaining their own expert witnesses to respond to Salman and Melius and determining whether their opinions meet the test for admissibility set forth in *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993). Although the Defendants will unquestionably incur additional expenses in order to prepare to meet the testimony of these two new Plaintiffs' experts, that is not a sufficient reason to reverse Judge Kinneary's decision to allow the Plaintiffs to name those two individuals as expert witnesses. The prejudice the Defendants have identified flows from the fact that the Plaintiffs have identified Salman and Melius as expert witnesses and not from the timing of that disclosure.[FN30] Whenever a party identifies an expert witness, the opposing party incurs costs to discover the witness's opinions in his or her entirety and to prepare to meet the testimony that witness will provide. Accordingly, the Court rejects the Defendants' argument that the Court should reconsider Judge Kinneary's Order, merely because they will incur costs to prepare to meet the testimony of Salman and Melius.

> FN30. In other words, the Defendants do not argue that the costs they will incur to prepare to meet the testimony of Salman and Melius will be greater because the Plaintiffs identified them more than four years after the deadline for the disclosure of expert witness.

**\*12** In their Motion to Strike New Expert Opinions Offered by Plaintiffs, the Defendants argue that the opinions from Lindy, Rosen, Reuter, Lehman and Makhijani and Franke are not supplemental opinions; rather, according to the Defendants, those

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 33377790 (S.D.Ohio)
**(Cite as: Not Reported in F.Supp.)**

Page 14

expert witnesses provided new opinions.[FN31] The Defendants contend that these new opinions must be stricken pursuant to Rules 26(a)(2) and 37(c)(1) of the Federal Rules of Civil Procedure. Rule 26(a)(2) provides:

> FN31. The Plaintiffs had sought leave to supplement the opinions of these expert witnesses, not that they be permitted to provide new opinions.

(2) *Disclosure of Expert Testimony.*

(A) In addition to the disclosures required by paragraph (1), a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.
(B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

In addition, Rule 37(c)(1), which governs the sanctions which a court can impose upon a party for its failure to make the discovery required by Rule 26(a)(2), provides:(1) A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule and may include informing the jury of the failure to make the disclosure.

When a party does not provide reports from an expert witness, as required by Rule 26(a)(2), Rule 37(c)(1) mandates the exclusion of testimony from that expert witness, unless the party was substantially justified in its actions or its failure to provide the reports was harmless. *Newman v. GHS Osteopathic, Inc.,* 60 F.3d 153, 156 (3rd Cir.1995); *ABB Air v. Reeco,* 167 F.R.D. 668, 671 (D.N.J.1996). To determine whether a particular default was harmless, courts examine the prejudice which one party's non-disclosure has caused the other party to suffer. *Mid-America Tablewares, Inc. v. Mogi Trading Co.,* 100 F.3d 1353, 1363 (7th Cir.1996). A District Court has great discretion to determine whether to exclude testimony from an expert witness pursuant to Rule 37(c)(1). *Ames v. Van Dyne,* 1996 WL 662899 (6th Cir.1996) (citing *Doe v. Johnson,* 52 F.3d 1448, 1464 (7th Cir.1995) ). *See also, Taylor v. Medtronics,* 861 F.2d 980 (6th Cir.1988).

**\*13** This Court will accept for present purposes that Plaintiffs provided "new" rather than "supplemental " opinions from Lindy, Rosen, Reuter, Lehman and Makhijani and Franke. Moreover, the Court will assume that providing such "new" opinions, more than four years after the deadline imposed for the disclosure of opinions of expert witnesses, violated Rule 26(a)(2). Nevertheless, the Court cannot agree with the Defendants that said assumed violation of Rule 26(a)(2) warrants the striking of the "new" opinions from those expert witnesses, pursuant to Rule 37(c)(1). As is stated above, a particular failure to make a disclosure required by Rule 26(a), is deemed to be harmless if it does not cause the opposing party to suffer prejudice. Herein, the only harm identified by the Defendants is the additional fees and expenses they will be forced to incur as a result of the disclosure of the "new" opinions. That

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 15
Not Reported in F.Supp., 1997 WL 33377790 (S.D.Ohio)
**(Cite as: Not Reported in F.Supp.)**

is not sufficient prejudice to cause this Court to conclude that the Defendants have suffered prejudice.[FN32] Since a trial for this litigation has not been scheduled, the Defendants will have an ample opportunity to depose these expert witnesses and, if necessary, to obtain contrary opinions from their own expert witnesses.

> FN32. Rule 37(c)(1) explicitly authorizes the recovery of expenses, including attorney fees, that a party is compelled to incur as a result of the failure of the opposing party to make the disclosures required by Rule 26(a). Herein, the Defendants have not requested such a recovery.

Based upon the foregoing, the Court overrules the Defendants' Motion to Reconsider Order Allowing Plaintiffs to Designate New Expert Witnesses (Doc. # 219) and their Motion to Strike New Expert Opinions Offered by Plaintiffs (Doc. # 221).

*12 Plaintiffs' Motion for Discovery Conference before Magistrate Judge Kemp (Doc. # 226) and Defendants' Motion to Schedule Status Conference and Adopt Initial Case Management Plan (Doc. # 236)*

The Court overrules both of these motions, as moot; however, it will schedule a telephone conference call in order to select a trial date and other pertinent dates leading to the resolution of this litigation.

Counsel listed below will take note that a telephone conference call will be had between the Court and counsel at 9:00 a.m. on Thursday, April 10, 1997, in order to establish a trial date and other dates leading to the resolution of this litigation.

S.D.Ohio,1997.
Boggs v. Divested Atomic Corp.
Not Reported in F.Supp., 1997 WL 33377790 (S.D.Ohio)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.