# EXHIBIT 20

Westlaw.

Not Reported in F.Supp.2d                                                                                                          Page 1
Not Reported in F.Supp.2d, 2002 WL 826956 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents
Granite Partners, L.P. v. Merrill Lynch, Pierce, Fenner & Smith Inc.S.D.N.Y.,2002.Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
GRANITE PARTNERS, L.P., Granite Corporation and Quartz Hedge Fund, by and through the Litigation Advisory Board of Granite Partners, L.P., Granite Corporation and Quartz Hedge Fund, Plaintiffs,
v.
Merrill LYNCH, Pierce, Fenner & Smith Incorporated, Defendant.
**No. 96 CIV.7874(RWS).**

May 1, 2002.

Friedman Kaplan & Seiler, New York, By Eric Seiler, Esq., Robert J. Lack, Esq., Katherine L. Pringle, Esq., Lee D. Sossen, Esq., Of Counsel, Brown Rudnick Berlack Israels, New York, for Plaintiffs.
Sidley Austin Brown & Wood, New York, By Roger J. Hawke, Esq., A. Robert Pietzrak, Esq., Andrew W. Stern, Esq., Of Counsel, for Defendant.

OPINION
SWEET, D.J.
*1 Plaintiffs Granite Partners L.P., Granite Corporation, and Quartz Hedge Fund (collectively the "Funds") and defendant Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill") have moved *in limine* for a number of orders. These are addressed below.[FN1]

> FN1. One motion was decided separately due to the time-sensitive nature of the remedy sought. The Court denied the Funds' motion to preclude evidence relating to an affirmative defense of advice of counsel and instead ordered discovery to address the Funds' concerns.

The facts underlying this dispute are stated in greater detail in *Primavera Familienstifung v. Askin,* 130 F.Supp.2d 450 (S.D.N.Y.2001), familiarity with which is presumed.

I. *PLAINTIFF'S MOTIONS*

A. *Evidence of Oral Agreements With Regard to Margin Calls*

1. *Only Evidence of Objective Intent Is Admissible*

A disputed issue for trial is whether the parties agreed that Merrill may demand additional collateral through a margin call when the market value of the securities for a transaction is less than 120 percent or less than 102 percent of the outstanding purchase price. The Funds rely on written confirmation agreements and claim the parties agreed therein on 102 percent. Merrill seeks to present testimony of an oral agreement that the margin call should instead be the "haircut," or the initial discount off the loan amount, and thus 120 percent.

Plaintiffs seek to exclude evidence of parties' "subjective intentions" with regard to whether the margin call was agreed to be 120 percent.

It is a bedrock rule of contract law that the only competent evidence on the question of whether there was an oral offer and acceptance is the parties' objective manifestation of their intent. Judge Learned Hand stated this principle in 1911, and it remains true today. *Hotchkiss v. Nat'l CIty Bank of New York,* 200 F. 287, 293 (S.D.N.Y.1911) ("A contract, strictly speaking, has nothing to do with the personal, or individual, intent of the parties."); *see also Adjustrite Sys. v. GAB Bus. Sys.,* 145 F.3d

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                 Page 2
Not Reported in F.Supp.2d, 2002 WL 826956 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

543, 549 (2d Cir.1998) (under New York law, the court, in determining the parties' intent "must look to 'the words and conduct [of the parties] which constitute objective signs in a given set of circumstances" ' (citation omitted)). Therefore, evidence of subjective intent is not admissible.

The Funds' motion is granted, and Merrill is limited to presenting evidence of oral conversations showing the objective manifestation of the parties' intent.

### 2. *Margin Calls on Other Customers*

Plaintiffs also seek to exclude evidence with regard to margin calls Merrill made on other customers. Merrill does not plan to offer such evidence and therefore this request is moot.

### 3. *Burden of Proof*

The Funds also seek a declaration that Merrill, and not the Funds, carries the burden of proof on the issue of whether the written confirmations (which they allege established a margin requirement of 102%) or the alleged oral agreements (which Merrill alleges established a margin requirement of 120%) applies.

There is no question that the written confirmations represent an agreement between the parties as has already been held. Both parties have relied on the written confirmations on issues other than the disputed margin requirements. FN2

> FN2. In its motion to dismiss the first complaint, Merrill relied on the existence of written contracts to obtain the dismissal of the Funds' quasi-contractual claims of conversion and unjust enrichment. In dismissing the unjust enrichment claim, the Court accepted Merrill's argument, holding "[u]njust enrichment is a quasi-contractual remedy, so that such a claim is ordinarily unavailable when a valid and enforceable written contract governing the same subject matter exists ... Because both the sale of securities to the Funds and the liquidation of those funds were done pursuant to contracts, namely the PSA and the transaction confirmations, the unjust enrichment claim may not lie." *Granite Partners, L.P. v. Bear Stearns & Co.,* 17 F.Supp.2d 275, 311 (S.D.N.Y.1998). Merrill also argued in support of summary judgment that it "acted in accordance with the applicable written agreements-the PSA Agreement for Quartz and repo trade confirmations for Granite Partners and Granite Corp.-and thus Plaintiff's cannot prove any breach."

**\*2** However, it remains a disputed issue as to whether the language the Funds point to establishes a margin requirement of 102%. Merrill contends, in opposition, that the language merely represents the nadir of Merrill's "tolerance level." Thus, at the very least the Funds carry the burden of proving that the language they reference actually represents an understanding between the parties that the margin requirement was intended to be 102%. The Funds do not carry the burden to "prove a negative" -to prove that the oral agreements did not take place. However, if Merrill establishes that the oral agreements did take place, both Merrill and the Funds will bear the burden of proving that the agreements they rely on are the objective intentions of the parties.

### B. *Merrill Lynch's "Inevitability Defense"*

The Funds have moved to exclude Merrill's " inevitability defense," *i.e.,* Merrill's argument that plaintiffs were not injured by Merrill's margin calls on March 30, 1994, and that, therefore, they should be precluded from presenting damages evidence on that count, including evidence of the "highest intermediate value."

This issue is discussed in greater detail in Part II.C, addressing Merrill's request to exclude all evidence relating to the highest intermediate value, based on this theory. The defendant's request was denied and its theory rejected. Therefore plaintiff's motion is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                    Page 3
Not Reported in F.Supp.2d, 2002 WL 826956 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

granted.FN3

> FN3. The "highest intermediate value" issue involved only Count I. However, Merrill's theory also applies to Counts II and VIII. Because that theory was rejected, Merrill cannot raise it to show lack of injury in Counts II and VIII.

C. *Askin's Restatement*

While the Funds' motion broadly seeks to preclude any evidence "concerning any misconduct by David Askin," their reply memorandum and the oral argument on April 24, 2002 limited the issue to whether Merrill could introduce one particular action by Askin. Three days prior to Merrill's margin calls, Askin restated the February results of the Funds and announced to investors that the Funds had declined some 20 percent in the month of February 1994, rather than the 1 to 2 percent that he had initially reported (the "Restatement"). The Funds agree that Merrill can present evidence that Askin announced that the Funds had declined 20 percent, but not the fact the he had earlier stated lower figures and was forced to restate them.

There is no question that the Restatement is relevant to showing the context in which Merrill decided to make the margin call. The Restatement occurred three days before the margin call, and sent shockwaves in the investment community. The fact that the earlier results had been misstated, with the concomitant implications of impropriety, certainly would amplify the panic arising from the discovery that the Funds had lost a fifth of their value. The evidence bears significantly on the prices that led to Merrill's margin calls and the prices that were attainable for the bonds in the liquidation.

The Funds point out that none of the Merrill traders they deposed mentioned Askin's Restatement, or any alleged wrongdoing, as a factor they took into account personally in valuing the Funds' bonds. However, these traders did consider "market conditions," and the Restatement may have had an affect on those market conditions.

**\*3** The only question, then, is whether the probative value of the Restatement is substantially outweighed by the danger of undue prejudice. Fed.R.Evid. 403. Clearly, this trial is not about Askin's mismanagement of the Funds. However, this single incident may carry probative weight as to Merrill's motives in making the margin calls and the state of the market at the time of liquidation. This motion is denied with regard to the limited issue of Askin's Restatement. This decision is reflected in the parties' motion to exclude portions of the Trustee's Report. The sections concerning Askin's Restatement are not stricken, while sections concerning other general allegations of mismanagement are.

D. *Remote Resale Prices*

After the Funds failed to meet Merrill's margin calls, Merrill liquidated the funds in an auction. Merrill was the highest bidder in the auction on ten of the fourteen securities offered. Over the next two months, Merrill sold nine of those securities. Merrill resold four bonds on the day that it acquired them. The remaining bonds were sold on April 12, April 13, April 28, May 4 and June 3, 1994.

Merrill seeks to offer the prices it received for all of the bonds to show that it suffered a "net loss" on all of its resales. Plaintiffs seek to exclude the prices of the last three bonds sold as irrelevant and the "net loss" argument as unduly prejudicial.

The prices of the bonds are relevant and may be introduced. The Funds argue that (1) they could have gotten higher prices than Merrill if they had sold the bonds instead of their being liquidated; and (2) Merrill acted in bad faith or commercially unreasonably in accepting the prices it took. The prices that Merrill eventually got on the stocks are relevant to address at least the second argument.FN4 It is true that the prices of bonds sold in a completely different environment than during the relevant period have less probative value. However, questions concerning the weight of the evidence may be addressed by cross-examination and rebuttal, and do not go to the admissibility of the evidence. Nor are the prices, by themselves,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case No. 1:90-cv-00181-JLK   Document 2225-26   filed 01/22/07   USDC Colorado   Page 5 of 10

Not Reported in F.Supp.2d                                                                                                    Page 4
Not Reported in F.Supp.2d, 2002 WL 826956 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

prejudicial.

> FN4. It is not relevant to the first argument because, as discussed later, the relevant time period in determining the highest intermediate value is from March 31 to April 7. The challenged sales took place after this period and therefore are not relevant to showing the prices that could have been received.

The Funds are correct, however, that Merrill should not be able to posit any theory of "net loss" on the sales. Merrill may introduce evidence of the price they paid for the securities and the price they sold them for, but may not introduce Merrill's net gain or loss by merely subtracting those two figures. The measure of damages is totally independent of whether Merrill profited from its breach. In addition, every one of Merrill's traders testified that it would be impossible to know whether or not Merrill incurred losses on the bonds without taking into account Merrill's hedging profit on those bonds. Yet Merrill seeks to exclude evidence of the hedges. Engaging in the required fuzzy math to obtain Merrill's true gain or loss on the bonds would unnecessarily confuse the jury and lengthen the trial. Given the small relevance of Merrill's net gain or loss on these bonds, there is no need to unnecessarily complicate the trial.

**\*4** Therefore, Merrill may provide the prices for which it bought and sold the bonds, but may draw no conclusions as to net gain or loss from this figures.

### E. *Advice of Legal Counsel Defense*

This motion was discussed in a separate opinion.

### II. DEFENDANT'S MOTIONS

### A. *Other Broker-Dealer's Bad Conduct*

#### 1. *Liability Issue*

The Funds propose to introduce evidence of the conduct and intentions of other broker-dealers to show that Merrill shared these intentions for the purposes of showing bad faith or commercial unreasonableness in the liquidation. Particularly, the Funds intend to provide taped conversations between Kidder Peabody and Bear Stearns in colorful and earthy terms purportedly evidencing agreements to "low-ball" bids in each others' liquidations. They also have listed brokers from Kidder Peabody, DLJ, and Bear Stearns as witnesses.

Merrill seeks to preclude evidence of the acts or intentions of other broker-dealers toward their liquidations as not relevant and as unduly prejudicial. There will be no evidence offered at trial that Merrill participated in or was aware of the alleged bad conduct or the undisclosed intentions of the other broker-dealers. Nor will there be any evidence that, even if the other broker-dealers colluded or otherwise behaved improperly in their own or other liquidations, they did so in the Merrill Lynch auction. The motives and actions of other broker dealers are irrelevant to a determination of whether Merrill conducted a commercially reasonable liquidation. *Morris v. Citibank, N.A.,* No. 97 Civ. 2127, 1999 WL 461161, at \*5-\*6 (S.D.N.Y. July 6, 1999) (plaintiffs' allegation that collusion existed between bidder and person to whom bidder thereafter assigned his rights, with no evidence that creditor was involved in that collusion, does not raise issue of material fact as to whether sale was commercially reasonable).

Further, Merrill would be unduly prejudiced by being associated with broker-dealers who did commit such acts. *Bloor v. Dansker (In re Investors Funding Corp. of N.Y. Secs. Litig.),* 635 F.Supp. 1262 (S.D.N.Y.1986). This evidence is therefore inadmissible.

#### 2. *Damages*

The Funds seek to introduce the same evidence to show that the broker-dealers did not have an "appetite" to bid in the auction and that no bid in the auction could be taken at face value. While

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 5
Not Reported in F.Supp.2d, 2002 WL 826956 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

arguably more relevant, the unduly prejudicial nature of the evidence, as discussed above, bars its admission. However, the facts concerning such liquidations are relevant as indicated below.

### B. *Kidder Peabody's Liquidation*

Plaintiffs intend to present evidence of how Kidder Peabody conducted a portion of its liquidation in which institutional customers, as opposed to broker-dealers, purchased securities. They intend it to show that there was in fact a robust consumer market for the types of securities Merrill liquidated and that Merrill's auction was not commercially reasonable.

**\*5** Merrill claims that evidence of the actions of one broker deal are irrelevant in determining whether Merrill's liquidation was commercially reasonable. However, it is only by looking at how similarly situated entities acted in similar situation that a factfinder may determine what was commercially reasonable. *See* N .Y. U.C.C. § 9-507(2) (commercial unreasonableness determined by looking to "reasonable commercial practices among dealers in the type of property"). Merrill further contends that admission of this evidence will require the admission of "how 12 different brokers conducted 12 different liquidations," and that this will confuse the jury and prolong the trial. While both are a possibility, the evidence of how other dealers acted is required for this cause of action. The Kidder Peabody liquidation evidence may be admitted, as well as evidence of other relevant broker-dealer's liquidations in the relevant time period.

### C. *Highest Intermediate Value*

Merrill has moved to preclude evidence of the highest intermediate value of the bonds belonging to the Funds that were auctioned by Merrill. This motion is, in part, a mirror image of the Funds' motion to preclude Merrill's "inevitability defense."

Count I of the Second Amended Complaint is a breach of contract claim against Merrill for making improper margin calls. In connection with Count I, the Funds seek liquidation damages under the highest intermediate price rule, *i.e.,* based on the highest intermediate price of the liquidated securities within a reasonable period after the liquidations. In *Primavera,* Merrill argued unsuccessfully that the highest intermediate price rule does not apply to breach of contract cases or to non-publicly traded securities such as the ones at issue here. *Id.* at 535-36. The Court held that "the Funds are entitled to claim liquidation damages measured by the highest intermediate price rule in connection with Count I." *Id.* at 536.

The Court did not rule that the Funds were entitled to damages on Count I, since that would depend on proof that Merrill made improper margin calls. Rather, if the Funds successfully make their case at trial, their damages will be measured by the highest intermediate price.

Merrill now argues that the Funds will not be able to establish that they were injured by the margin call because they would not have been able to sell the bonds during the relevant time period and thus can assert no damages under Count I.[FN5] As a result, it argues, the Funds should be precluded from proffering evidence regarding the highest intermediate price.

> FN5. Under New York law, a plaintiff must prove that its injury was proximately caused by the defendant's breach. *Primavera,* 130 F.Supp.2d at 537. Accordingly, the Funds must prove that but for the allegedly wrongful margin calls, the injury they suffered through the liquidation of their securities could not have occurred. Thus, if the injury would have occurred in the absence of the margin calls on March 31, the element of "but for" causation is lacking.

A plaintiff may only attain the highest intermediate value if it actually has the ability to sell its shares during the relevant period. *E.g., Phansalkar v. Andersen Weinroth & Co.,* No. 00 Civ. 7872, 2001 WL 1524479, at \*35-\*36 (S.D.N.Y. Nov. 29, 2001)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 6
Not Reported in F.Supp.2d, 2002 WL 826956 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

(holding proper measure of damages is "highest price [plaintiff] could have attained for his *alienable* [shares] within a reasonable time after conversation"); *Lucente v. Int'l Business Machine Corp.,* 117 F.Supp.2d 336, 359 (S.D.N.Y.2000) (holding measure of damages must take into account the fact that plaintiff could not have sold restricted shares until restrictions lapsed and thus damages were measurable only by prices that could have been attained when the shares became freely tradeable). At issue is whether the owner is able to sell the securities, not whether the owner actually did. *Schultz v. Commodity Futures Trading Comm'n,* 716 F.2d 136, 140 (2d Cir.1983) (holding the rule does "not require that the injured party actually replace his [securities] in order to recover lost profit damages").

**\*6** Merrill claims that the Funds could not have sold or delivered the bonds on the day of the liquidation, March 31, 1994, because the Funds were constrained by the repo agreements from selling them until the repos terminated on April 25, 1994, without Merrill's consent. Further, the Funds filed for bankruptcy protection on April 7, 1994, at which time Merrill had the contractual right to liquidate the Funds' bonds immediately.

In the absence of the liquidation, the Funds would have been constrained absolutely from selling the bonds-with or without Merrill's consent-on April 7, 1994. Therefore, if the Funds may apply the highest intermediate value, the last time at which it may be based is prior to the bankruptcy filing on April 7, 1994.

It is a closer question as to whether, in the absence of the liquidation, the Funds could have sold the bonds between March 31 and April 7, 1994. However, the language of the agreements suggest that they could have. First, Merrill admits that the Funds could have sold the bonds if Merrill consented to the transaction. The liquidation happened before any such consent could be requested or granted. Further, it appears under the repo agreements that the Funds could have sold the securities even without Merrill's consent. The Repo Confirmation states that the Funds could have at any time substituted other securities for the original securities subject to the repo as long as they were " of the same type as the original securities." Repo Confirmation at 2. This document does not appear to establish any other restraints on the Funds' ability to substitute. The Funds had collateral worth more than their repo obligations to Merrill even at the time of the liquidation. Thus, they argue, Merrill could have been paid what it was owed on the repos and they could have sold the CMOs for the highest intermediate price. Thus, the Funds did have the ability to substitute for the CMOs and could have sold them up to their bankruptcy petition on April 7, 1994.

In liquidation cases, proximate cause is presumed where the plaintiffs have the ability to sell the securities at the time of liquidation. Because the Funds had the ability to sell the bonds, proximate cause will be presumed even though they did not actually sell the bonds. Thus, if the Funds establish that Merrill's margin calls were improper and its liquidation wrongful, the proper measure of damages is the highest intermediate price from March 31 to the time before the Funds filed for bankruptcy protection on April 7, 1994. This creates a shorter window than other courts have held to be a "reasonable period," but is required due to the circumstances of the case. *E.g., Mitchell v. Texas Gulf Sulphur Co.,* 446 F.2d 90, 104-06 (10th Cir.1971) (between nine and seventeen days); *Halifax Fund v. MRV Comm'ns,* No. 00 Civ. 4878, 2001 WL 1622261, at \*6 & n. 11 (S.D.N.Y. Dec. 18, 2001) (three weeks).

Therefore, evidence may be admitted that goes to show the highest intermediate price from March 31 until the time before the Funds filed for bankruptcy protection on April 7, 1994.

**\*7** Merrill's motion is denied.

### D. *The Funds' Expert Reports*

Merrill states that where an expert is expected to testify at trial, her report is inadmissible hearsay and redundant. *E.g., Ake v. General Motors Corp.,* 942 F.Supp. 869, 877-78 (W.D.N.Y.1996) (excluding as hearsay report of expert who was scheduled to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                              Page 7
Not Reported in F.Supp.2d, 2002 WL 826956 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

testify at trial because it was not: a business record; record of events made at or near the time of the event; record involving party's regularly conducted business; public record; prior consistent statement because not offered to rebut a charge of recent fabrication or improper motive; adoptive admission because not offered against the party who adopted it; and basis for the expert opinion because "the report is his opinion"); *Springer v. K-Mart Corp.,* 1998 WL 883318, at *5 (E.D.La. Dec. 16, 1998) (excluding report of expert scheduled to testify as redundant and inadmissible hearsay).

The Funds do not dispute that their experts' written reports should not be allowed and further contend that Merrill's expert reports should also be disallowed. The written reports of any expert expected to testify for either the Funds or Merrill is hereby excluded as inadmissible hearsay.

E. *Materials that Funds' Experts Relied Upon*

At least 115 of the Funds' proposed trial exhibits and five witnesses by deposition designations are being offered solely as support for the opinions that the Funds' experts, Prof. Campbell and Dr. Saha, intend to offer at trial.

Merrill asks that the Funds be limited to introducing material relied upon by the experts only if at trial it becomes apparent that the material would be particularly helpful to the jury in evaluating the expert's opinion.

The Funds state that it has never been their intent to offer into evidence all, or even a substantial portion of, the data sources listed in the exhibit list. Many are listed as exhibits that the Funds "may offer if the need arises" so that Merrill cannot claim surprise if the Funds offered any of them at trial.

The Funds are persuasive in arguing that they should be allowed to submit summary materials to condense the morass of information that Merrill is concerned about. Even if the body of an expert's report is not admitted into evidence, it is within the trial judge's discretion to permit the use of charts by the expert to explain his expert opinion so long as those charts are accurate and not unduly prejudicial. *United States v. Kohlman,* 469 F.2d 247, 252 (2d Cir.1972). In addition, summaries of voluminous materials may be admitted into evidence even if the underlying documents are not introduced into evidence.[FN6] *United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.,* 95 F.3d 153, 163 (2d Cir.1996) (noting that district court gave careful instructions to deal with any prejudice arising from fact that underlying documents may not have been admitted into evidence).

> FN6. The Funds state that many of the "voluminous materials" are business records, and Merrill could stipulate their admission. In the absence of Merrill's stipulation to the admission of the records, the Funds have offered to call records custodians to lay the foundation for their admission. In the interests of all the parties and judicial economy, Merrill should (1) stipulate to the admission of the documents; (2) object to specific documents that will comprise the summaries; or (3) propose an instruction to deal with any alleged failings in the summaries.

The Funds also ask that this Court approve the presentation of excerpts from the depositions of Jeffrey Reich, David Scaramucci, and Michael Vranos in connection with Prof. Campbell's testimony pursuant to Fed.R.Evid. 703. The Funds claim that their admission will result in significant time savings and will not prejudice Merrill. Unless Merrill has specific objections to this testimony, other than the general objection discussed above, the excerpts may be admitted pursuant to Rule 703.

F. *Portions of the Trustee's Report*

*8 The parties have worked together to identify the portions of the Report that are relevant, and in so doing have agreed to redact or admit certain portions. What remains are controversies regarding certain sections and statements. To the extent these

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                     Page 8
Not Reported in F.Supp.2d, 2002 WL 826956 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

controversies have not been resolved by the decisions in other motions *in limine,* the Court will address the remaining issues at a future pretrial conference or during the course of the trial.

### G. *Trustee's Testimony*

Merrill seeks to preclude the testimony of Trustee Harrison J. Goldin as inadmissible hearsay and otherwise cumulative of the evidence presented by the Trustee's Report.

Merrill admits that Goldin has personal knowledge involving his appointment as Trustee, his investigations, and his writing of the Trustee's Report. However, Merrill states that the Trustee's Report covers these issues. The Funds are persuasive in arguing that Merrill's motion would require that a five-page single-spaced footnoted discussion be read to the jury instead of a short oral summary by Goldin. Goldin may testify as to events within his personal knowledge.

On the other hand, Goldin lacks personal knowledge of the factual findings of his investigation as he has no personal knowledge of the events. Thus, Merrill claims that any such testimony by him would be inadmissible hearsay. Further, it argues that Fed.R.Evid. 803(8)(C) provides only for the admissibility of a public report, and not the testimony of the person who authored the report.

The Funds point to a number of cases. The only controlling case fails to support its efforts to have Goldin testify on events outside his personal knowledge. *In re Air Disaster at Lockerbie Scotland,* 37 F.3d 804, 827 (2d Cir.1994). There, the constable "provided deposition testimony as to his work in the Flight 103 investigation." *Id.* This is the only description of the constable's testimony in the case. It is thus unclear whether the constable testified about facts he discovered or merely testified about, as the court stated, his investigation. Goldin may testify about his investigation; he just may not testify about what he has been told as part of that investigation. The constable's report was also objected to on hearsay grounds. *Id.* When discussing Rule 803(8)(C), the Court refers only to the "report," presumably referring only to the constable's report, rather than to the report and deposition testimony. Therefore *Air Disaster* does not stand for the proposition that expert's testimony is admissible under Rule 803(8)(C) in addition to the written report.

Further, in *Dickerson v. Metropolitan Co.,* 659 F.2d 574, 579 (5th Cir.1981), the court noted that once the report and findings of the EEOC officer are admitted, the "incremental probative value" of additional testimony from the EEOC officer is slight. Further, the court merely stated that it was within the district court's discretion to allow it. *Id.* The case is also different in that it was not a jury trial.

**\*9** As an additional consideration, the parties have vehemently disputed which aspects of the Trustee's Report are admissible, as summarized above. That disagreement should not be replicated in the courtroom.

In view of the lack of controlling case law to the contrary, Goldin's testimony is limited to the scope of his investigation, facts discovered, and the writing of the Trustee's Report.

### H. *LAB Representative Jones' Testimony*

Merrill also seeks to preclude the testimony of Harold D. Jones, a practicing attorney and an independent member of the Litigation Advisory Board because Jones was never employed by or associated with the Funds during their existence and was not involved in any way with events underlying this action.

The Funds state they seek Jones's testimony regarding what the Funds are and how they continue to exist despite their bankruptcy. This limited testimony does not require any personal knowledge of the events underlying this dispute. Jones may testify as to what the Funds are and how they continue to exist despite their bankruptcy.

Merrill's motion is denied.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                           Page 9
Not Reported in F.Supp.2d, 2002 WL 826956 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

### III. *SPECIAL VERDICT FORM*

By this order, the parties are required to submit a proposed special verdict form by the close of plaintiff's case.

### *CONCLUSION*

The Funds' and Merrill's motion in limine are granted in part and denied in part, as discussed above.

It is so ordered.

S.D.N.Y.,2002.
Granite Partners, L.P. v. Merrill Lynch, Pierce, Fenner & Smith Inc.
Not Reported in F.Supp.2d, 2002 WL 826956 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:96cv07874 (Docket) (Oct. 18, 1996)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.