# EXHIBIT 21

Case No. 1:90-cv-00181-JLK   Document 2225-27   filed 01/22/07   USDC Colorado   pg 1 of 12

Westlaw.

Not Reported in F.Supp.2d                                                                                                              Page 1
Not Reported in F.Supp.2d, 2005 WL 1277953 (D.Alaska)
**(Cite as: Not Reported in F.Supp.2d)**

C
U.S. Kiewit Const. Co.D.Alaska,2005.Only the Westlaw citation is currently available.
United States District Court,D. Alaska.
UNITED STATES, for the Use of Macomber Corporation, Inc., and Macomber Corporation, Inc., on its own behalf, Plaintiffs,
v.
KIEWIT CONSTRUCTION COMPANY, and Aetna Casualty and Surety Company of North America, Defendants.
KIEWIT CONSTRUCTION COMPANY, Counter-claimant,
v.
MACOMBER CORPORATION, INC., Counterclaim Defendant.
KIEWIT CONSTRUCTION COMPANY, Third Party Plaintiff,
v.
FIDELITY & DEPOSIT COMPANY OF MARYLAND, Bond No. CMB8098061, Third Party Defendant.
**No. A99459CVJWS.**

Jan. 3, 2005.

*ORDER FROM CHAMBERS*
SEDWICK, J.

*I. MOTIONS PRESENTED*

**\*1** At docket 146, plaintiff Macomber Corporation ("Macomber") moves for an order precluding admission of and testimony concerning Exhibit GS which was marked as a trial exhibit by defendant Kiewit Construction Company ("Kiewit"). The motion is opposed. At docket 157, Kiewit opposes Macomber's motion and also moves for an order precluding admission of and testimony about a host of Macomber's trial exhibits. That motion, too, is opposed. Oral argument has not been requested, and oral argument would not assist the court.

*II. BACKGROUND*

This litigation springs from a construction project at Eielson Air Force Base near Fairbanks, Alaska. Kiewit was the general contractor on the project which involved demolition of certain existing housing structures and construction of replacement housing on the base. Macomber was Kiewit's mechanical subcontractor on the project.

During construction, delays were encountered and cost overruns were incurred. At the conclusion of the project, Macomber presented its claims to Kiewit who passed the claims through to the Air Force as part of an overall claim. Kiewit and the Air Force were unable to negotiate a resolution of the claims at the contracting officer level. The Contracting Officer issued a decision denying the claims. Kiewit filed suit in the United States Court of Claims. That lawsuit was settled, and Kiewit was paid $2,400,000.[FN1] Although Macomber's claims formed the basis for a portion of the damages sought in the lawsuit, Kiewit shared none of the $2,400,000 recovery with Macomber. Feeling shortchanged, Macomber sued Kiewit and its surety, Aetna, seeking to recover $288,000 plus costs of extra work, delay, and extended performance in an unspecified amount. Kiewit filed a counterclaim against Macomber and its surety, Fidelity & Deposit Company of Maryland, seeking damages in excess of $200,000.

> FN1. The settlement was for a "lump-sum" without allocation to its component parts.

The parties used a "total cost" method for computing the claims presented to the United States. However, this court ruled that Macomber could not use the total cost method in this litigation for reasons explained at length in an earlier order.[FN2]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 2
Not Reported in F.Supp.2d, 2005 WL 1277953 (D.Alaska)
**(Cite as: Not Reported in F.Supp.2d)**

FN2. Doc. 108 at pp. 4-9 (Preliminary Order). The conclusion was not altered in the subsequent final order entered after hearing oral argument. Doc. 113.

The case is now set for trial on February 7, 2005. The motions at hand seek to exclude exhibits which summarize the damages sought by the party offering the exhibit. The motions also seek to exclude testimony about these summary exhibits.

### III. DISCUSSION

A. Motion at Docket 146

Exhibit GS sets out a summary of Kiewit's damage claim. The exhibit recites that the total due from Macomber is $1,805,183. Macomber advances several arguments why the Exhibit should not be admitted and testimony about the exhibit should be precluded.

1. Exhibit GS is Contrary to Discovery Provided by Kiewit

Macomber asserts that the amount sought in Exhibit GS is at odds with Kiewit's discovery response concerning damages, and further, that Kiewit did not advise Macomber of any change in the adequacy of that response. In particular, Macomber points to Kiewit's July 29, 2003 interrogatory answers which elaborated on Kiewit's initial disclosures pursuant to Rule 26(a)(1)(C). One of the interrogatory responses clearly states that the total damages Kiewit seeks to recover from Macomber is $518,586: "The correct figure of damages is $518,586.00 due from Macomber Corporation, Inc." [FN3] In addition to reciting the specific damage total, Kiewit provided a calculation showing precisely how the $518,586 was determined in an attachment to its interrogatory responses.[FN4] It is worth noting that the calculation was made *after* Kiewit had settled its claim against the United States. This point is self-evident, because the $2,400,000 settlement is used in making the calculation which shows the $518,586 due from Macomber.

FN3. Doc. 146, Ex. 2 at p. 3.

FN4. Attachment to Ex. 2 to Doc. 146.

**\*2** Kiewit responds to Macomber's argument by saying that Macomber's position is "absolute nonsense" which "lack[s] a factual basis.[FN5] However, the only specific item mentioned in Kiewit's response is "attorney's fees and costs" [FN6] as to which Kiewit's lawyer says Kiewit "fully and fairly advised Macomber that it would seek all of its costs and attorney fees...." [FN7] This assertion made in the text of Kiewit's memorandum is met head on by the assertions of Macomber's counsel that Macomber was not given knowledge of what is in exhibit GS.[FN8] Neither party offers an affidavit or declaration to support the statements made in the briefing which leads the court to conclude that it will not consider either of the lawyers' unsupported assertions.

FN5. Doc. 157 at p. 3.

FN6. *Id.*

FN7. *Id.*

FN8. Doc. 161, p. 6.

There is a very large difference between the $518,586 figure for damages due from Macomber given in Kiewit's interrogatory answer and the damages of $1,805,183 Kiewit demands in exhibit GS. Federal Rule of Civil Procedure 26(e) requires a party to supplement both its initial disclosures and its discovery responses during the course of litigation. With respect to an interrogatory answer the rule states:
A party is under a duty seasonably to amend a prior response to an interrogatory ... If the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.[FN9]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 3
Not Reported in F.Supp.2d, 2005 WL 1277953 (D.Alaska)
**(Cite as: Not Reported in F.Supp.2d)**

FN9. Fed. R. Civ. P. 26(e)(2).

The local rules of this court, as well as the planning and scheduling order in this case, obligate counsel to "contemporaneously prepare and maintain a written record of all disclosures and supplementation of disclosures or responses to requests for discovery under Rules 26(a) and (e), Federal Rules of Civil Procedure." [FN10]

FN10. D.Ak.LR 16.1(c)(2); doc. 65 at p. 2.

Kiewit offers no written record of any supplementation which its counsel kept as required by the local rule and the court's order in this case. Instead, Kiewit asserts in the text of its response: "All categories of damages sought by Kiewit are available to it under the parties' Subcontract, and have been previously disclosed to Macomber on numerous occasions." [FN11] This assertion is not supported by an affidavit or declaration, and Kiewit points to no specific document that might be consulted to determine that Kiewit had advised Macomber that its claim had increased almost four-fold. What Kiewit does supply is a stack of papers labeled Exhibit A. There is no affidavit or declaration authenticating any of the documents in Exhibit A. However, there is circumstantial evidence which suggests that the documents in the exhibit are not copies of documents actually made available to Macomber by Kiewit. First, none of the papers displays a "Bates" stamp number, which would ordinarily appear on documents assembled by sophisticated litigants in a case involving a large claim and a large volume of documents. Second, many of the documents show "run dates" of October 20, 2004. One short document shows a run date of October 18, 2004. These dates came after discovery closed. Certainly none of those documents could have been provided to Macomber during the discovery period.

FN11. Doc. 157 at p. 3.

**\*3** Based on the record available, it must be concluded that Kiewit did not comply with its duty to update its discovery responses under Rule 26(e).

To allow Kiewit to proceed to trial seeking damages not properly disclosed would frustrate the scheme of the federal rules and the court's efforts at case management. Moreover, to allow Kiewit to change its claim at this stage would sanction a bait and switch tactic depriving Macomber of the benefit of the discovery rules. Kiewit's damage claim will be limited to the $518,586 set out in, and specifically calculated in, the attachment to its interrogatory answers.[FN12]

FN12. *See* Fed. R. Civ. P. 1.

It is necessary to comment further on the topic of attorney's fees and costs. Kiewit contends that inclusion of its demand for the recovery of attorney's fees and costs in Exhibit GS is proper, because "Kiewit has consistently requested its attorney fees and costs in its Answer to Macomber's Complaint; in its Counterclaim; and in its Third Party Complaint." [FN13] An examination of the pleading cited [FN14] reveals that the only references to costs and attorney fees are the following: The prayer for relief relating to the answer asks, "[t]hat Kiewit be awarded its costs and reasonable attorney fees in defending [against Macomber's] Amended Complaint." [FN15] The prayer for relief relating to Kiewit's counterclaims asks for "costs and attorney fees in pursuing this matter." [FN16] Similarly, the prayers for relief on the third party claims seek "costs and attorney fees in pursuing this matter." [FN17] Yet, these attorney's fees and costs are not what Kiewit has included in Exhibit GS. There, Kiewit includes $370,244 in "government litigation costs" and $108,031 in "claim preparation costs." To the extent such items might be recovered, they would be damages, for they represent economic harm to Kiewit allegedly incurred as a result of Macomber's breach of contract, but which are separate from the litigation costs involved in the case before this court. There is nothing in Kiewit's Answer, Counterclaims or Third-Party Complaint which indicates that Kiewit is seeking to recover government litigation costs or claim preparation costs. Thus, contrary to Kiewit's argument, there is nothing in Kiewit's pleadings which indicates that Kiewit seeks such items as damages in addition to the $518,586 in damages described in the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 4
Not Reported in F.Supp.2d, 2005 WL 1277953 (D.Alaska)
**(Cite as: Not Reported in F.Supp.2d)**

interrogatory answers. Based on the pleadings, Kiewit will be allowed to seek costs and attorney's fees incurred in the litigation of the case at bar, but the pleadings provide no basis for allowing Kiewit to seek the government litigation costs and claim preparation costs included in Exhibit GS.

> FN13. Doc. 157 at p. 3. Kiewit also asserts that during two mediations and otherwise it "fully and fairly" advised Macomber that it was seeking fees and costs, including those incurred in the Court of Federal Claims. *Id.* However, that assertion is not supported by any affidavit or declaration, leaving the pleadings referenced as the only source for verification of the argument.
>
> FN14. The Answer, Counterclaims, and Third Party Complaint are found in a single pleading filed at docket 21.
>
> FN15. Doc. 21 at p. 7.
>
> FN16. *Id.* at p. 12.
>
> FN17. *Id.* at pp. 13 and 17.

In summary, based on its failure to supplement the interrogatory answer which expressly stated its damages to be $518,586, Kiewit requested relief in this case will be limited to that sum, plus any costs and attorney's fees incurred in this case itself. It follows that Exhibit GS will be excluded from evidence, because it is grossly inconsistent with Kiewit's $518,586 allowable damage claim. For the same reason, Kiewit's damage testimony will be restricted to the $518,586 claim. Nothing in this order precludes Kiewit from using David Zemek to testify as to its damages, provided, of course, that his testimony is confined to the $518,586 claim.

2. Other Arguments for Excluding Exhibit GS

**\*4** Macomber has advanced additional argument for the exclusion of Exhibit GS. However, having found that Exhibit GS will be excluded for the reasons given in the preceding section of this order, the court concludes that it is not necessary to address them.

B. Cross Motion at Docket 157

1. Exhibit 568

Macomber's damage exhibit, Exhibit 568, sets out a claim for damages in the amount of $1,936,708.24. It had originally calculated its damages to be $1,185,800 using the total cost method. However, on June 15, 2004, the court ruled that Macomber could not use the total cost method and must calculate its damages claim on the basis of individually identified losses which it alleged were caused by Kiewit, rather than by some other entity such as Perma-Pipe, a former party to this litigation, with whom Macomber reached a settlement.[FN18] In its motion, Kiewit asks the court to exclude Exhibit 568, and to prohibit testimony about the damages claimed therein. Kiewit offers several argument.

> FN18. Docs. 108, 113.

Kiewit's first argument is that because it was denied discovery regarding the damage claims set forth in Exhibit 568, Macomber's damage claims should either be stricken from the record and judgment be entered in Kiewit's favor, or Kiewit should be entitled to conduct discovery concerning the damages described in Exhibit 568. Macomber responds that the exhibit is based on information long since disclosed to Kiewit in connection with the efforts to obtain compensation from the Air Force. Macomber supports its position with various deposition extracts, and other documents attached to its opposition.[FN19] Neither party offers any affidavit or declaration to support its position.

> FN19. Doc. 168.

A review of the procedural history of the litigation in this court is illuminating. Discovery closed on January 23, 2004.[FN20] Following its customary

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                               Page 5
Not Reported in F.Supp.2d, 2005 WL 1277953 (D.Alaska)
**(Cite as: Not Reported in F.Supp.2d)**

practice, about a month later, the court asked the parties to certify the case ready for trial in an order at docket 93.[FN21] Kiewit responded with a request for clarification based on the proposition that pending cross-motions for summary judgment should be decided prior to the setting of a trial date.[FN22] The court granted Kiewit's motion using a form order provided by Kiewit which recited that the "Order at docket 93 is withdrawn until such time as the Motions pending before this Court have been ruled upon...."[FN23] Thus, the effect of the order was to require the parties to certify whether the case was ready for trial, but not until after the court ruled on the summary judgment motions. The court denied Macomber's motion for summary judgment[FN24] and also denied Kiewit's motion for summary judgment.[FN25] In denying Kiewit's motion for summary judgment, the court also explicitly ruled that Macomber could not use the total cost approach it had been using up until that time, and the court also explicitly allowed Macomber to present a claim for damages based on individual, discrete harms which it alleged were caused by Kiewit. Thus, Kiewit knew that Macomber would necessarily present a different type of damage claim at trial than it had theretofore presented in the context of this litigation. Nevertheless, instead of certifying that the case was not ready for trial, because discovery on Macomber's revised damage claim would be needed, Kiewit asked the court to schedule a settlement conference and set a trial date. In its request, Kiewit represented that it could be "well prepared for a Settlement Conference in September 2004." The court responded by arranging a settlement conference and setting a trial date.

FN20. Doc. 82.

FN21. The order is a standard form used by the court. It was filed February 20, 2004.

FN22. Doc. 96.

FN23. Doc. 97.

FN24. Doc. 102. Macomber's motion was denied as untimely.

FN25. Docs. 108 and 113.

*5 The preceding chronology of events belies Kiewit's present assertion that it was denied necessary discovery relating to Macomber's damage claim. Rather, the only explanation for Kiewit's decision to press for a settlement conference and trial date promptly after learning that Macomber would be forced to reconfigure its damage claim is that Kiewit was in fact "well prepared" based on its long-standing familiarity with Macomber's situation dating back to the original efforts to obtain an equitable adjustment from the government contracting officer. The argument that Kiewit has been denied discovery or that discovery should be reopened rings hollow on this record.

Kiewit next argues that Exhibit 568 sets out a total cost claim and must be excluded based on the court's earlier ruling that Macomber may not use a total cost method for calculating its damages. The problem with this argument is that it is wrong. The court agrees with the analysis offered by Macomber as to the nature of the claim.[FN26] The claim is not a total cost claim. Of course, this is not to say that the claim is entirely meritorious. However, the weaknesses in the claim suggested by Kiewit do not alter the nature of the claim, but rather, they identify anticipated weaknesses in Macomber's ability to prove up each of the damage items claimed in the exhibit. Indeed, the court entertains considerable doubt about Macomber's ability to prove that Kiewit is responsible for the entirety of the damages identified in the exhibit, but that will be for a jury to determine. Kiewit will have ample opportunity to expose the weaknesses in Macomber's position at trial. Exhibit 568 will not be excluded, and testimony about it from persons properly listed as witnesses may be presented at trial.

FN26. Doc. 168 at pp. 15-26.

2. Exhibits 530-532, 534, 554-559, 561, and 563-565

Kiewit's main objection to admission of the fourteen

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                  Page 6
Not Reported in F.Supp.2d, 2005 WL 1277953 (D.Alaska)
**(Cite as: Not Reported in F.Supp.2d)**

exhibits identified in the subheading and testimony relating to the same is based on Rules 408 of the Federal Rules of Evidence which forecloses admission of evidence relating to the compromise of claims. Macomber does not dispute that the exhibits all relate to efforts to settle Macomber's claim, "Each of these exhibits relates to the negotiation between the Government and Macomber discussed in the fact section above." [FN27]

> FN27. *Id.* at p. 28.

Rule 408 of the Federal Rules of Evidence provides as follows:
Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

*6 The Advisory Committee Notes to the rule explain that it is rooted in two considerations. First, evidence relating to compromise may be irrelevant, because a party may be "motivated by a desire for peace rather than any concession of weakness of position." Second, and importantly, the rule advances society's interest in promoting the settlement of disputes.[FN28]

> FN28. Advisory Committee Notes to 1972 Proposed Rules reprinted in "Federal Civil Judicial Procedure and Rules (West, 2004 rev. ed.) at p. 410.

According to Macomber, Kiewit's effort to keep the exhibits out of evidence is "groundless," because the point of the exhibits is that many of Macomber's claims were not disputed. The notion that the claims were not disputed is misleading. In fact, the negotiations necessarily blurred what was disputed by whom. It was in the government's interest to play off Kiewit and Macomber against one another, but it was also in Macomber and Kiewit's interest to make each other's positions appear reasonable, because in many instances those positions arose from a common complaint about problems each would lay on the government's doorstep. The situation thus falls neatly within the policy considerations underpinning Rule 408. What was said in the negotiations cannot be accepted at face value, and permitting admission of these exhibits would be contrary to the society's interest in promoting settlements.

Macomber also argues that the exhibits should be admitted because they are relevant to its claim that Kiewit should have allocated a portion of the $2.4 million settlement to Macomber. Although not expressly described as such, this is really an argument for admissibility under the exception noted in Rule 408 which allows admission for " other purposes." The problem with attempting to make the exception fit in this instance is that it would swallow one of the policies supporting the rule. For positions articulated in or in conjunction with the settlement discussions to be evidence that Kiewit's failure to allocate was unjustifiable, one must first posit that the positions articulated were necessarily sincere expressions of the true worth of Macomber's claim unaffected by other factors, such as a desire to purchase peace or play interested parties off against one another. That assumption is clearly not tenable. Thus, the "other purposes" exception does not warrant admission of the exhibits.

Kiewit also argues that the exhibits and testimony about them should be excluded pursuant to Rule 403 of the Federal Rules of Evidence. The court agrees with Kiewit that admission of these exhibits and testimony about them should be excluded under Rule 403. The actual probative value is small for the same reasons why the exception in Rule 408 does not apply. Second, if the evidence were admitted, its admission involves a very substantial risk of confusing and misleading the jury away from

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 7
Not Reported in F.Supp.2d, 2005 WL 1277953 (D.Alaska)
**(Cite as: Not Reported in F.Supp.2d)**

addressing the question of whether or not Macomber has actually proved an entitlement to specific damage items. This risk substantially outweighs the probative value of the evidence.

For the reasons above, the fourteen exhibits identified in the sub-heading will be excluded. Similarly, testimony about those exhibits will also be excluded.

3. Exhibits 515, 517-524, 533, 544, 547-550, 554, 566, 571, 573-576, 586, 587, 588, 591, 592, 807, 970-974, 992, 993 and 1017

***7** Kiewit objects to admission of any of the 36 exhibits identified in the subheading. Exhibit 515 is Macomber's request for an equitable adjustment, and exhibit 517 is its certified claim. These materials were assembled and presented as a total cost claim. Exhibit 518 is Kiewit's request for an equitable adjustment, and exhibit 519 is Kiewit's certified claim. These materials were also assembled and presented as a total cost claim. Kiewit contends they should be excluded from use in this litigation, because the court has ruled that neither party may use the total cost method of presenting its claims. Macomber does not deny the nature of the exhibits, but argues that they contain much information that is useful in regard to the claims which the court has permitted. That may be, but the proper thing to have done with such information would have been to separate it into exhibits which don't comprise a total cost claim. That was not done here. The court agrees with Kiewit; Exhibits 515, 517, 518, and 519 are total cost claims which are inadmissible in this action.[FN29] Neither the exhibits nor testimony about them will be admitted.

FN29. Docs. 108 and 113.

By like reasoning, a number of other exhibits which deal with one or another of the total cost claims or some aspect thereof will not be considered in this litigation. The following exhibits and testimony regarding the same will be excluded: Exhibits 520-524 (government reports analyzing the total cost claims), 533 (a summary of design deficiency aspect of Macomber's total cost claim), 544 (a government review of total cost claim), 547-550 and 554 (correspondence regarding total cost claims), 571 and 573-575 (expert analyses of total cost claim), 576 (analysis of Kiewit's total cost formulation of counterclaim), 586-588 (analyses of total cost claim), 591 and 592 (working papers regarding total cost claim), and 807 (Halcro's total cost claim).

Kiewit also seeks to exclude Exhibit 566 which is correspondence relating to the allocation of Dix Masonry's portion of the $2.4million settlement, and Exhbit 1017 which is a copy of Dix Masonry's demand for payment. Dix was another subcontractor on the project. Macomber's argument is that Kiewit is seeking to recover a sum of money from Macomber based on the theory that Kiewit had to pay a portion of the $2.4 million settlement to Dix as a result of problems created by Macomber. Kiewit failed to respond to Macomber's argument in its reply memorandum. On the record available to the court, Kiewit has failed to persuade the court that Exhibits 566 and 1017 and appropriate testimony about them should be excluded. Consequently, as to these exhibits, Kiewit's motion will be denied. However, if these exhibits are admitted in evidence, the court emphasizes that it will not permit use of the exhibits or testimony about them to open the way for the admission of evidence about Kiewit and Macomber's total cost claims.

The other exhibits which Kiewit seeks to exclude as being evidence of total cost claims are deposition transcripts and related materials at dockets 970 (corrections to Craig Lance deposition), 971 (Craig Lance deposition), 972 (exhibit to Craig Lance deposition), 973 (corrections to Cheryl Stewart deposition), 974 (Cheryl Stewart deposition), 992 (Patricia Kothe deposition, July 2002), and 993 (Patricia Kothe deposition, October 2002). Macomber asserts that the Lance, Stewart, and Koethe depositions contain testimony about the actual cost approach Macomber will use at trial. It appears to the court that at least some of their testimony may be relevant to actual costs.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                   Page 8
Not Reported in F.Supp.2d, 2005 WL 1277953 (D.Alaska)
**(Cite as: Not Reported in F.Supp.2d)**

**\*8** Kiewit also seeks to exclude Exhibits 971-974 concerning Mr. Lance and Ms. Stewart on the grounds that the witnesses are not included on Macomber's witness list. That is incorrect. They are listed as witnesses no. 6 and no. 7 on Macomber's witness list.FN30

> FN30. Doc. 126 at p. 8.

For the reasons above, Kiewit's motion is denied as to Exhibits 970-974, 992, and 993. However, that does not mean that any of the exhibits will be admitted. Deposition transcripts are marked as exhibits pursuant to the applicable local rules, not because the transcripts are ordinarily to be admitted in evidence, but because identifying a deposition transcript as an exhibit facilitates making deposition testimony designations, counter-designations of testimony, and objections to designated testimony. The deposition transcripts themselves are rarely, if ever, admitted in evidence. Rather, designated testimony which is otherwise admissible under the Federal Rules of Civil Procedure and the Federal Rules of Evidence is read from the transcript to the trier of fact. It is beyond the scope of this order to address what portions, if any, of Exhibits 970-974 would be admissible under the pertinent rules.

4. Exhibits 480, 533, 577-83, 585, 589, 590, 591, 593, 952-974, and 977-1014

Kiewit asks the court to exclude the seventy-five exhibits listed in the sub-heading above. The reasons offered vary from one group of exhibits to another. The court address them in the order they are addressed by Kiewit.

a. Exhibits 988-1014

The first group of exhibits Kiewit addresses are the deposition transcripts and associated deposition exhibits identified by Macomber as Exhibits 988-1014.FN31 According to Kiewit none of the persons whose depositions are included in those exhibits is named on Macomber's witness list. That assertion is not entirely correct. There are two exceptions. Patricia Kothe, whose two deposition transcripts are identified as Exhibits 992 and 993, is listed as witness no. 12 on Macomber's witness list, FN32 and Robert Tilly, whose deposition transcript is identified as Exhibit 1002, is listed as witness no. 15 on Macomber's witness list.FN33 Kiewit's motion will be granted as to all of the deposition materials concerning witnesses other than Ms. Kothe and Mr. Tilly. That means Macomber cannot proffer testimony on direct from the deposition transcripts from such witnesses as evidence in its own case, but depending on who Kiewit calls to testify, one or more of the transcripts might be used in cross-examination. Of course, any use of deposition testimony is subject to the Federal Rules of Civil Procedure and the Federal Rules of Evidence, application of which to the deposition transcripts identified above is beyond the scope of this order.

> FN31. It should be noted that Exhibit 996 is an unused exhibit number.
>
> FN32. Doc. 126 at p. 13.
>
> FN33. *Id.* at p. 12.

b. Exhibits 480, 577-583, 589-591, and 593

Kiewit's only argument concerning all save one of these exhibits is limited to the assertion that the exhibits cannot be authenticated and there is no foundation for them. Authentication and other foundation issues cannot be addressed on the record available to the court in the motion papers. Speaking more generally, the parties are advised that the court assumes no party will offer an exhibit without first attempting to lay an adequate foundation for its admission. When an exhibit is offered, any objection based upon lack of authentication or other missing foundation must be renewed. The court also assumes that no party will insist upon consuming judicial and litigant resources by persisting in a foundation objection where it is clear that if a particular witness were called, the foundation would be established. Counsel shall confer and stipulate to the adequacy of authentication wherever possible. At the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case No. 1:90-cv-00181-JLK   Document 2225-27   filed 01/22/07   USDC Colorado   Page 10 of 12

Not Reported in F.Supp.2d                                                                                                    Page 9
Not Reported in F.Supp.2d, 2005 WL 1277953 (D.Alaska)
**(Cite as: Not Reported in F.Supp.2d)**

conclusion of trial, the court will entertain a motion to impose costs on any party who needlessly requires another party to call a witness to lay a foundation which could reasonably have been the subject of a stipulation. Such costs may include, but are not necessarily limited to, the cost of witnesses' travel, the cost of service of subpoenas, witness fees, and attorney's fees associated with securing and presenting the testimony.

**\*9** Kiewit also argues that Exhibit 577 is incomplete. According to Kiewit, it consists of only one page of a multiple page document. Macomber does not respond to this argument. The court's copy of the exhibit is also but a single page from what clearly appears to be a multi-page document. Accordingly, the motion will be granted as to Exhibit 577 for failure to comply with the court's orders regarding provision of exhibits.[FN34]

> FN34. If at trial Macomber can show why a single page of a longer document should be admitted into evidence, the court will reconsider this ruling, but the court will not afford Macomber a chance to provide the entire document. The time for doing that has passed.

### c. Exhibits 968, 969, 977-984, and 987

Kiewit's objection to these exhibits is that Macomber failed to designate any testimony from these exhibits as required by the court's order requiring the parties to designate deposition testimony. Suffice it to say for present purposes that the court will not permit Macomber to introduce as part of its case any deposition testimony which it has not designated as required by the court. On the other hand, deposition testimony may be used in cross-examination of a witness if the use is consistent with the Federal Rules of Civil Procedure and the Federal Rules of Evidence. The court's earlier order did not require anticipatory designations of any deposition testimony which might be used for cross-examination of a live witness.

### d. Exhibits 952-967, 985, and 986

The disputed exhibits are deposition transcripts and related materials for various persons identified on Macomber's witness list. Kiewit's argument is that Macomber has failed to designate any portion of the deposition transcript as required by the court's earlier order. Again, it suffices to say that Macomber may not introduce any deposition testimony as part of its case which has not been properly designated. This does not foreclose other uses consistent with the applicable rules.

### e. Application Of Fed. R. Civ. P. 32(a)(4) To Exhibits 480, 577-583, 589-591, 952-962, 988, 989, and 992-1001

Relying on Federal Rule of Civil Procedure 32(a)(4), Kiewit argues that none of the depositions and related documents from the Federal Court of Claims litigation may be used in this litigation against Kiewit, because Macomber was not a party to that litigation. Kiewit does not offer any other reason for their exclusion. Kiewit's lawyer reads Rule 32 too narrowly. It is necessary to begin with the text of paragraph (a) which reads in pertinent part:
At the trial ..., any part or all of a deposition, so far as admissible under the rules of evidence ..., may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:[FN35]

> FN35. Fed. R. Civ. P. 32(a).

Kiewit does not contend that it was not present at the time the depositions were taken. Its argument is that Macomber was not present. In relying on an incomplete quotation of Rule 32(a)(4), Kiewit's lawyer overlooked the obvious purpose of the paragraph from which the quote was taken. Reading the entire paragraph shows clearly that it is concerned with situations in which there has been a substitution of one party for another. The paragraph does not diminish the force of the language the court has quoted above. Kiewit's argument also

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case No. 1:90-cv-00181-JLK   Document 2225-27   filed 01/22/07   USDC Colorado   pg 11 of 12

Page 11 of 12

Not Reported in F.Supp.2d                                                                                                   Page 10
Not Reported in F.Supp.2d, 2005 WL 1277953 (D.Alaska)
**(Cite as: Not Reported in F.Supp.2d)**

overlooks Fed. R. of Evid. 804(b)(1) which expressly permits introduction of deposition testimony from a different proceeding so long as the party against whom it was offered had an opportunity to and similar motive to develop that testimony. In sum, the argument based on Rule 32(a)(4) is without merit.

### f. Exhibit 528 Explicitly, Other Exhibits an Expert Relied Upon

**\*10** Kiewit offers a host of arguments why Exhibit 528 should be excluded from evidence. The court is not persuaded by the arguments. The court instead is persuaded by Macomber's arguments [FN36] that Kiewit's request to exclude this exhibit from evidence should not be granted. However, it will not necessarily be admitted in evidence at trial. The court will defer deciding that issue until it learns what foundation Macomber may lay for its introduction.

> FN36. Doc. 168 at pp. 36-38.

Speaking more generally, the court emphasizes that whatever its rulings in this order with regard to the independent admissibility of exhibits, if an expert witness testifies on cross-examination that he or she relied on a particular document, then inquiry into that document would be permissible under the Federal Rules of Evidence.[FN37]

> FN37. Fed.R.Evid. 705. *Contrast* Fed.R.Evid. 703 which forecloses such inquiry on direct examination where the material relied upon is otherwise inadmissible.

### Exhibit 585 Explicitly, Expert's Reports Generally

Kiewit objects to the admission of Exhibit 585, which is Mr. Tilly's expert report, on various grounds. The court need not address them here, because neither Mr. Tilly's report nor that of any other expert will be admitted in evidence (unless the parties stipulate to admission). The reason is that such reports are hearsay.

The application of the hearsay rule to exclude experts' reports such as Exhibit 585 is quite straightforward, but a word of explanation and a comment on the extent of the ruling are in order. First, the explanation: This court recognizes that some courts may admit expert reports under Fed.R.Evid. 807 or state court analogs, but such reports generally cannot meet the requirement of Rule 807(B), because the expert's live direct testimony is at least equally probative. Perhaps some courts apply an analysis allowing admission of expert reports under a theory that they are of material aid to the trier-of-fact, and this somehow warrants an exception to the hearsay rule. Whatever the practice of other courts, this court finds no applicable exception to the hearsay rule. It may be added that when the subject of the document is substantive testimony directed at important issues in the case, it is inappropriate to allow the witness to bolster his substantive testimony with what is functionally the equivalent of additional written direct testimony.

Second, a comment on the extent of the ruling: By excluding experts' written reports, the court is not necessarily foreclosing use of tables or other data compilations contained in such reports either as demonstrative exhibits or as exhibits admitted by stipulation. A stipulation providing for the admission of such a table would not, of course, mean that the information in the table is correct, but merely that the particular expert says it is correct. Finally, it may be noted that in some instances tables from an expert's report might be admissible under Federal Rule of Evidence 1006.

### g. Exhibits 963-967

Kiewit lists Exhibits 963-967 in its motion in the heading of section V. However, the court could find no argument supporting the exclusion of the exhibits, and so they will not be excluded on the basis of Kiewit's motion.

### *V. CONCLUSION*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 1277953 (D.Alaska)
**(Cite as: Not Reported in F.Supp.2d)**

Page 11

**\*11** For the reasons set forth above, the motion at docket 146 is GRANTED, and the motion at docket 157 is GRANTED in part and DENIED in part consistent with discussion above.

D.Alaska,2005.
U.S. Kiewit Const. Co.
Not Reported in F.Supp.2d, 2005 WL 1277953 (D.Alaska)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.