**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-181-JLK

MERILYN COOK, *et al.*,

      Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

      Defendants.

---

**DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR ENTRY OF JUDGMENT**

---

David M. Bernick
John E. Tangren
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636
Phone:  312-861-2000
Fax:      312-861-2200

Joseph J. Bronesky
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Phone:  303-297-2900
Fax:      303-298-0940

Attorneys for ROCKWELL
INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY

## TABLE OF CONTENTS

INTRODUCTION...........................................................................................................1

ARGUMENT – Part I....................................................................................................3

I.    THIS COURT CANNOT ENTER FINAL JUDGMENT UNDER RULE 54(b) WITHOUT FIRST RESOLVING A HOST OF COMPLICATED ISSUES.....................................................................................................3

    A.    Allocation Of Damages.......................................................................4

    B.    Section 930 Damages Subclass...........................................................9

    C.    Disposition Of Unclaimed Funds......................................................11

    D.    Easements .......................................................................................13

    E.    Prejudgment Interest .......................................................................18

II.    DEFENDANTS OBJECT TO PLAINTIFFS' PROPOSED JUDGMENT ON OTHER GROUNDS. ..............................................................................19

    A.    The Proposed Judgment Fails To Determine With Specificity A Sum Certain That Each Defendant Must Pay.............................................19

    B.    The Proposed Judgment Is Deficient For Other Reasons. ....................22

III.    THIS COURT SHOULD CERTIFY DISCRETE ORDERS FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b).......................24

ARGUMENT – Part II ................................................................................................25

IV.    PLAINTIFFS CANNOT RECOVER PREJUDGMENT INTEREST BECAUSE THEY ALREADY REQUESTED AND RECEIVED AN INFLATION ADJUSTMENT FROM THE JURY.................................................25

V.    PLAINTIFFS CANNOT RECOVER PREJUDGMENT INTEREST BECAUSE NO STATUTE AUTHORIZES SUCH AN AWARD IN THIS CASE.................................................................................................28

    A.    Plaintiffs Are Not Entitled To Prejudgment Interest Under The Personal Injury Statute, Colo. Rev. Stat. § 13-21-101.......................................29

    B.    Plaintiffs Are Not Entitled To Prejudgment Interest Under The Consumer Credit Code, Colo. Rev. Stat. § 5-12-102. ...........................................37

        1.    The Consumer Credit Code Does Not Apply Here. .................37

2.      The Consumer Credit Code Authorizes Prejudgment Interest For Past Losses, Not Future Losses.................................................................45

VI.      **PLAINTIFFS CANNOT RECOVER PREJUDGMENT INTEREST FROM 1990...........................................................................................................49**

VII.     **PLAINTIFFS CANNOT RECOVER PREJUDGMENT INTEREST ON EXEMPLARY DAMAGES, AND CANNOT RECOVER EXEMPLARY DAMAGES ON PREJUDGMENT INTEREST. ...........................................50**

A.      Plaintiffs Cannot Recover Prejudgment Interest On Exemplary Damages. ..........50

B.      Plaintiffs Cannot Recover Exemplary Damages On Prejudgment Interest. ..........52

VIII.    **FEDERAL LAW, NOT COLORADO LAW, GOVERNS POSTJUDGMENT INTEREST. ....................................................................................................53**

**CONCLUSION ............................................................................................................55**

# TABLE OF AUTHORITIES

## Cases

*Adams-Arapahoe Joint Sch. Dist. No. 28-J v. Continental Ins. Co.*,
891 F.2d 772 (10th Cir. 1989) ......................................................................... 54

*Albright v. UNUM Life Ins. Co. of Am.*,
59 F.3d 1089 (10th Cir. 1995) ................................................................. passim

*Allstate Ins. Co. v. Starke*,
797 P.2d 14 (Colo. 1990) ............................................................................... 26

*Amoco Rocmount Co. v. Anschutz Corp.*,
873 F. Supp. 1492 (D. Wyo. 1994) ................................................................ 40

*Ballow v. Phico Ins. Co.*,
878 P.2d 672 (Colo. 1994) ....................................................................... 50, 51

*Bangert Bros. Const. Co. v. Kiewit Western Co.*,
310 F.3d 1278 (10th Cir. 2002) ..................................................................... 20

*Bartholomew v. CNG Producing Co.*,
832 F.2d 326 (5th Cir. 1987) ......................................................................... 55

*Barton v. Adams Rental, Inc.*,
938 P.2d 532 (Colo. 1997) ............................................................................. 19

*Becker & Tenenbaum v. Eagle Restaurant Co.*,
946 P.2d 600 (Colo. Ct. App. 1997) .............................................................. 50

*Black Gold, Ltd. v. Rockwool Industries, Inc.*,
529 F. Supp. 272 (D. Colo. 1981) .................................................................. 26

*Board of County Comm'rs v. Slovek*,
723 P.2d 1309 (Colo. 1986) ........................................................................... 31

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ......................................................................................... 8

*Bohrer v. DeHart*,
961 P.2d 472 (Colo. 1998) ............................................................................. 20

*Boughton v. Cotter Corp.*,
65 F.3d 823 (10th Cir. 1995) ................................................................... 31, 34

*Branco Eastern Co., Inc. v. Leffler*,
482 P.2d 364 (Colo. 1971) ............................................................................. 30

*Burgess v. Mid-Century Ins. Co.*,
   841 P.2d 325 (Colo. Ct. App. 1992) ................................................................. 51

*Burt v. Beautiful Savior Lutheran Church of Broomfield*,
   809 P.2d 1064 (Colo. Ct. App. 1990) ............................................................... 42

*Callaham v. Slavsky*,
   385 P.2d 674 (Colo. 1963) ................................................................................ 30

*Calvaresi v. Nat'l Development Co., Inc.*,
   772 P.2d 640 (Colo. Ct. App. 1988) ................................................................. 31

*Catlin v. United States*,
   324 U.S. 229 (1945) ........................................................................................... 3

*Chapman & Cole v. Itel Container Int'l B.V.*,
   865 F.2d 676 (5th Cir. 1989) ............................................................................ 54

*Chiu v. United States*,
   948 F.2d 711 (Fed. Cir. 1991) .......................................................................... 26

*Clark v. Hicks*,
   252 P.2d 1067 (Colo. 1953) ........................................................................ 28, 29

*Coale v. Dow Chem. Co.*,
   701 P.2d 885 (Colo. Ct. App. 1985) ............................................................ 50, 52

*Coleman v. United Fire and Casualty Co.*,
   767 P.2d 761 (Colo. Ct. App. 1988) ................................................................. 49

*Colwell v. Mentzer Investments, Inc.*,
   973 P.2d 631 (Colo. Ct. App. 1998) ................................................................. 30

*Combined Communications Corp., Inc. v. Pub. Serv. Co.*,
   865 P.2d 893 (Colo. Ct. App. 1993) ................................................................. 42

*Computer Sys. Eng'g, Inc. v. Quantel Corp.*,
   571 F. Supp. 1379 (D. Mass. 1983) ............................................................. 27, 28

*Cook v. Rockwell Int'l Corp.*,
   273 F. Supp. 2d 1175 (D. Colo. 2003) ................................................... 31, 34, 48

*Cook v. Rockwell Int'l Corp.*,
   358 F. Supp. 2d 1003 (D. Colo. 2004) ......................................................... 47, 48

*Cox v. Flood*,
   683 F.2d 330 (10th Cir. 1982) ............................................................................ 9

iv

*Curragh Queensland Mining Ltd. v. Dresser Indus., Inc.*,
    55 P.3d 235 (Colo. Ct. App. 2002) ................................................................. 46

*Curtiss-Wright Corp. v. General Elec. Co.*,
    446 U.S. 1 (1980) ........................................................................................ 3

*Denver, South Park & Pacific R. R. Co. v. Conway*,
    5 P. 142 (Colo. 1884) ................................................................................. 41

*Denver-Albuquerque Motor Transport, Inc. v. Galligan*,
    358 P.2d 28 (Colo. 1960) ........................................................................... 30

*Department of Transp. v. Stapleton*,
    97 P.3d 938 (Colo. 2004) ........................................................................... 38

*Dillen v. Healthone, LLC*,
    108 P.3d 297 (Colo. Ct. App. 2004) ..................................................... 46, 49

*Dodge v. Cotter Corp.*,
    328 F.3d 1212 (10th Cir. 2003) ................................................................. 18

*Emarine v. Haley*,
    892 P.2d 343 (Colo. Ct. App. 1994) ........................................................ 50

*Erie R.R. v. Tompkins*,
    304 U.S. 64 (1938) ................................................................................... 53

*Everaard v. Hartford Accident & Indem. Co.*,
    842 F.2d 1186 (10th Cir. 1988) ................................................................. 54

*F.D.I.C. v. United Pac. Ins. Co.*,
    20 F.3d 1070 (10th Cir. 1994) ................................................................... 27

*Factory Mut. Ins. Co. v. Bobst Group USA, Inc.*,
    392 F.3d 922 (7th Cir. 2004) ..................................................................... 18

*Fail v. Community Hosp.*,
    946 P.2d 573 (Colo. Ct. App. 1997) ........................................................ 52

*Farmers Reservoir & Irrigation Co. v. City of Golden*,
    113 P.3d 119 (Colo. 2005) ......................................................................... 28

*Federal Ins. Co. v. Ferrellgas, Inc.*,
    961 P.2d 511 (Colo. Ct. App. 1997) ........................................................ 42

*Forest Sales Corp. v. Bedingfield*,
    881 F.2d 111 (4th Cir. 1989) ..................................................................... 53

*Frontier Exploration, Inc. v. American Nat'l Fire Ins. Co.*,
    849 P.2d 887 (Colo. Ct. App. 1992) ............................................................... 51

*G.E.C. Minerals, Inc. v. Harrison Western Corp.*,
    781 P.2d 115 (Colo. Ct. App. 1989) ............................................................... 42

*G.M. Brod. & Co.  v. U.S. Home Corp.*,
    759 F.2d 1526 (11th Cir. 1985) ...................................................................... 54

*Great Lakes Dredge & Dock Co. v. City of Chicago*,
    260 F.3d 789 (7th Cir. 2001) .......................................................................... 27

*Great Western Sugar Co. v. KN Energy, Inc.*,
    778 P.2d 272 (Colo. Ct. App. 1989) ............................................................... 28

*Gustafson v. Alloyd Co., Inc.*,
    513 U.S. 561 (1995) ....................................................................................... 38

*Harbert v. Healthcare Servs. Group, Inc.*,
    391 F.3d 1140 (10th Cir. 2004) ........................................................... 4, 5, 9, 18

*Herod v. Colorado Farm Bureau Mutual Ins. Co.*,
    928 P.2d 834 (Colo. Ct. App. 1996) ............................................................... 30

*Hodges v. Easton*,
    106 U.S. 408 (1882) ....................................................................................... 49

*Hoery v. United States*,
    64 P.3d 214 (Colo. 2003) ............................................................................... 31

*Huffman v. Caterpillar Tractor Co.*,
    645 F. Supp. 909 (D. Colo. 1986) ............................................................ 41, 54

*Hunter v. Wilson*,
    362 P.2d 553 (Colo. 1961) ............................................................................. 28

*I.M.A., Inc. v. Rocky Mountain Airways, Inc.*,
    713 P.2d 882 (Colo. 1986) ............................................................................. 30

*Isbill Assocs., Inc. v. City & County of Denver*,
    666 P.2d 1117 (Colo. Ct. App. 1983) ....................................................... 42, 43, 44, 45

*Jacobs v. Commonwealth Highland Theatres, Inc.*,
    738 P.2d 6 (Colo. Ct. App. 1986) .................................................................. 51

*James v. Coors Brewing Co.*,
    73 F. Supp. 2d 1250 (D. Colo. 1999) ............................................................. 46

*Johnson v. Riddle*,
    305 F.3d 1107 (10th Cir. 2002) ......................................................................... 42

*Kinsella v. Leonard*,
    415 F.2d 574 (10th Cir. 1969) .......................................................................... 31

*Landsberg v. Hutsell*,
    837 P.2d 205 (Colo. Ct. App. 1992) ............................................................... 30

*Library of Congress v. Shaw*,
    478 U.S. 310 (1986)........................................................................................... 26

*Life Care Centers of Am., Inc. v. East Hampden Assoc. Ltd. Partnership*,
    903 P.2d 1180 (Colo. Ct. App. 1995) ............................................................. 46

*Lira v. Davis*,
    832 P.2d 240 (Colo. 1992)........................................................................... passim

*Lowell Staats Mining Co. v. Pioneer Uravan, Inc.*,
    878 F.2d 1259 (10th Cir. 1989) ................................................... 27, 29, 42, 49

*Maddox v. American Airlines, Inc.*,
    298 F.3d 694 (8th Cir. 2002) ........................................................................... 54

*Marcus v. Shalala*,
    17 F.3d 1033 (7th Cir. 1994) ........................................................................... 26

*Masonry Masters, Inc. v. Nelson*,
    105 F.3d 708 (D.C. Cir. 1997) ................................................................... 26, 27

*McCafferty v. Musat*,
    817 P.2d 1039 (Colo. Ct. App. 1991) ............................................................. 30

*McDermott, Inc. v. AmClyde*,
    511 U.S. 202 (1994)........................................................................................... 19

*Miller v. Carnation Co.*,
    564 P.2d 127 (Colo. Ct. App. 1977) ................................................... 30, 31, 33

*Mumford v. Wright*,
    12 Colo. App. 214 (Colo. Ct. App. 1898)...................................................... 29

*Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, Inc.*,
    848 F.2d 613 (5th Cir. 1988) ........................................................................... 53

*Northington v. Marin*,
    102 F.3d 1564 (10th Cir. 1996) ....................................................................... 19

*Northrop Corp. v. Triad Int'l Mktg., S.A.*,
    842 F.2d 1154 (9th Cir. 1988) ....................................... 54

*Occusafe, Inc. v. EG&G Rocky Flats, Inc.*,
    54 F.3d 618 (10th Cir. 1995) ........................................ 42

*Oklahoma Turnpike Auth. v. Bruner*,
    259 F.3d 1236 (10th Cir. 2001) ...................................... 4

*Omaha & Grant Smelting & Ref. Co. v. Tabor*,
    21 P. 925 (Colo. 1889)............................................... 41

*Parks v. Pavkovic*,
    753 F.2d 1397 (7th Cir. 1985) .................................. 6, 8, 9

*People v. Cross*,
    127 P.3d 71 (Colo. 2006)............................................ 38

*Perales v. Casillas*,
    950 F.2d 1066 (5th Cir. 1992) ...................................... 26

*Perez v. United States*,
    830 F.2d 54 (5th Cir. 1987) ........................................ 55

*Perlman v. Zell*,
    185 F.3d 850 (7th Cir. 1999) ....................................... 27

*Peterman v. State Farm Mut. Auto. Ins.  Co.*,
    8 P.3d  549 (Colo. Ct. App. 2000) .................................. 49

*Pierson v. United Bank of Durango*,
    754 P.2d 431 (Colo. Ct. App.1988) ................................. 49

*Rodriguez v. Schutt*,
    914 P.2d 921 (Colo. 1996)........................................... 28

*Romero v. International Harvester Co.*,
    979 F.2d 1444 (10th Cir.1992) ...................................... 42

*Roy Stone Transfer Corp. v. Budd Co.*,
    796 F.2d 720 (4th Cir. 1986) ....................................... 54

*Sears, Roebuck & Co. v. Mackey*,
    351 U.S. 427 (1956)................................................. 3

*Seaward Constr. Co. v. Bradley*,
    817 P.2d 971 (Colo. 1991)....................................... 50, 53

*Shannon v. Colorado School of Mines*,
  847 P.2d 210 (Colo. Ct. App. 1993) ................................................ 47

*Shootman v. Department of Transp.*,
  926 P.2d 1200 (Colo. 1996) ......................................................... 45

*Skidmore v. First Bank of Minneapolis*,
  773 P.2d 587 (Colo. Ct. App. 1988) ................................................ 18

*Slack v. Farmers Ins. Exch*,
  5 P.3d 280 (Colo. 2000) ............................................................ 19

*Sorenson v. Mink*,
  239 F.3d 1140 (9th Cir. 2001) ................................................... 26, 27

*South Park Aggregates, Inc. v. Northwestern Nat'l Ins. Co. of Milwaukee, Wis.*,
  847 P.2d 218 (Colo. Ct. App. 1993) ................................................ 46

*Strey v. Hunt Int'l Res. Corp.*,
  696 F.2d 87 (10th Cir. 1982) ................................................ 3, 5, 9, 11

*Todd v. Bear Valley Village Apts*,
  980 P.2d 973 (Colo. 1999) ..................................................... 26, 49

*Trademark Research Corp. v. Maxwell Online, Inc.*,
  995 F.2d 326 (2d Cir. 1993) ........................................................ 28

*Transco Leasing Corp. v. United States*,
  992 F.2d 552 (5th Cir. 1993) ....................................................... 55

*Tripp v. Cotter Corp.*,
  701 P.2d 124 (Colo. Ct. App. 1985) ................................................ 49

*Underwood v. B-E Holdings, Inc.*,
  269 F. Supp. 2d 125 (W.D.N.Y. 2003) .............................................. 55

*United States v. $30,006.25 in U.S. Currency*,
  236 F.3d 610 (10th Cir. 2000) ..................................................... 26

*United States v. Gaudreau*,
  860 F.2d 357 (10th Cir. 1988) ..................................................... 51

*United States v. Sherman*,
  8 Otto 565 (1879) ................................................................. 26

*Van Gemert v. Boeing Co.*,
  739 F.2d 730 (2d Cir. 1984) ....................................................... 12

*Vitkus v. Beatrice Co.*,
  127 F.3d 936 (10th Cir. 1997) ........................................................................ 42

*Weitz Co., Inc. v. Mo-Kan Carpet Inc.*,
  723 F.2d 1382 (8th Cir. 1983) ........................................................................ 54

*Western Fire Truck, Inc. v. Emergency One, Inc.*,
  2006 WL 726671 (Colo. Ct. App. 2006) ........................................................ 46

*Westric Battery Co. v. Standard Elec. Co.*,
  482 F.2d 1307 (10th Cir. 1973) ...................................................................... 27

*Wilson v. Southwest Airlines, Inc.*,
  880 F.2d 807 (5th Cir. 1989) .......................................................................... 12

**Statutes**

28 U.S.C. § 1291 ....................................................................................................... 3

28 U.S.C. § 1292(b) .......................................................................................... 1, 2, 24

28 U.S.C. § 1961(a) ........................................................................................ 53, 54, 55

28 U.S.C. § 2072 ...................................................................................................... 12

Colo. Rev. Stat. § 13-21-101 ........................................................................... passim

Colo. Rev. Stat. § 13-21-102(1)(a) ......................................................................... 52

Colo. Rev. Stat. § 13-21-111.5(a) ........................................................................... 20

Colo. Rev. Stat. § 13-21-111.5(b) ........................................................................... 20

Colo. Rev. Stat. § 14-14-106 ................................................................................... 39

Colo. Rev. Stat. § 38-1-116 ..................................................................................... 39

Colo. Rev. Stat. § 38-22-101(5) ............................................................................... 39

Colo. Rev. Stat. § 38-36-102 ................................................................................... 17

Colo. Rev. Stat. § 38-36-159 ................................................................................... 17

Colo. Rev. Stat. § 38-36-198(1)(e) .......................................................................... 17

Colo. Rev. Stat. § 5-12-102 ................................................................... 2, 29, 37, 41

Colo. Rev. Stat. § 5-12-104 ..................................................................................... 39

Colo. Rev. Stat. § 8-43-410(2) ........................................................................... 39

**Other Authorities**

Frank F. Spiecker & Edwin G. Ruland, A Creditor's Right to Interest in Colorado, 35 U. Colo. L. Rev. 190 (1963) ................................................................... 41

Nicholas H. Magill, Interest as Damages in Colorado, 28 Dicta 285 (1951) .............................. 41

**Rules**

Fed. R. Civ. P. 54(b) ..................................................................................... 1, 3

Fed. R. Civ. P. 58 ......................................................................................... 19

**Treatises**

10 James Wm. Moore *et al.,* Moore's Federal Practice – Civil § 54.22 ......................................... 4

25 A.L.R. 5th 568 ......................................................................................... 32

25 Am. Jur. 2d Easements and Licenses § 93 ................................................................ 16

58 Am. Jur. 2d Nuisances § 284 ........................................................................... 32

Restatement (First) of Property § 450 ..................................................................... 16

Restatement (Second) of Torts § 913(2) ................................................................ 25, 27

Restatement (Second) of Torts § 929(1) ................................................................ 32, 33

Restatement (Second) of Torts § 930 .................................................................. passim

Restatement (Third) of Property (Servitudes) § 1.2 ......................................................... 18

## INTRODUCTION

Plaintiffs' Motion for Entry of Judgment is deeply problematic on both procedural and substantive levels.  The motion is procedurally amiss because this case is far from ready for the entry of final judgment under Rule 54(b), as explained in Part I (*infra*).  The motion is substantively unfounded because plaintiffs request all sorts of monetary relief to which they are not entitled under Colorado and federal law, as explained in Part II (*infra*).  This case is not ripe for the entry of final judgment under Rule 54(b), and even if it were ready, plaintiffs would not be entitled to the extraordinary relief requested in their motion.

As explained in Part I, the parties and this Court agree on one key point:  it makes sense, before the parties and the Court commit vast additional resources to this protracted litigation, for this Court "to take whatever steps are necessary to give the parties the opportunity to appeal [any matters that might affect the fact or amount of the damages awarded by the jury] before proceeding to the allocation of damages."  2/17/06 Tr. at 10821.  The parties do not agree, however, on the path necessary to reach the Tenth Circuit.  In particular, plaintiffs have moved for the entry of a "final" judgment under Rule 54(b), but that route to appellate review is foreclosed under the law.  An interlocutory appeal under 28 U.S.C. § 1292(b) provides the only viable means to the Tenth Circuit at this juncture.  As explained in the accompanying Memorandum in Support of the Motion for Certification of Interlocutory Appeal, defendants respectfully propose certification of several key orders under that statute.

The premise of plaintiffs' Motion for Entry of Judgment is that this Court now faces a "***choice*** between entry of final judgment and certification under section 1292(b)," and that "entry of final judgment is by far the superior method" of advancing the common goal of resolving this litigation.  Pls.' Mem. at 3 (emphasis added).  That "choice," however, is illusory.  The jury

verdict here – finding defendants liable to a plaintiff subclass and awarding aggregate damages – cannot give rise to a final judgment as to *any* plaintiff, and nothing that plaintiffs now say or do can change that fact.  Under settled law, a "final" judgment is just that – final – and the plan proposed by plaintiffs for allocating the aggregate damages merely underscores, rather than resolves, the lack of finality.  In a nutshell, plaintiffs' observation that "[c]ertification of final judgment under Rule 54(b) would … be attended by some modest uncertainties," Pls.' Mem. at 15, is a masterpiece of understatement.  Plaintiffs are proposing a novel procedure that would magnify, not resolve, the many remaining uncertainties in this case.  At this important crossroad, the only way to accomplish the sensible goal of getting this matter before the Tenth Circuit is for this Court to follow the procedures set forth in 28 U.S.C. § 1292(b).  Defendants respectfully urge this Court to deny plaintiffs' Motion for Entry of Judgment, and instead certify four fundamental orders for immediate review by the Tenth Circuit.

As explained in Part II, plaintiffs' proposed judgment seeks enormous financial relief that far exceeds the boundaries of applicable law.  Plaintiffs' motion is an extraordinary act of overreaching.  For example, plaintiffs seek:

- prejudgment interest on the compensatory damages, even though they already requested and received compensation from the jury for the passage of time;

- prejudgment interest under the personal injury statute, Colo. Rev. Stat. § 13-21-101, even though this case does not involve personal injuries;

- prejudgment interest under the Consumer Credit Code, Colo. Rev. Stat. § 5-12-102, even though this case does not involve a creditor/debtor relationship;

- prejudgment interest on the punitive damages, and punitive damages on the prejudgment interest, even though neither is recoverable; and

- postjudgment interest under Colorado law, even though federal law indisputably governs.

Plaintiffs are not entitled to any such recovery.  This Court should not and cannot enter final judgment under Rule 54(b) at this juncture, but when the time comes, this Court should deny plaintiffs' illegitimate attempt to multiply the amount of the damages awarded by the jury.

## ARGUMENT – Part I

I.    **THIS COURT CANNOT ENTER FINAL JUDGMENT UNDER RULE 54(b) WITHOUT FIRST RESOLVING A HOST OF COMPLICATED ISSUES.**

Rule 54(b) does not provide an avenue for sending this case to the Tenth Circuit at this juncture, contrary to plaintiffs' assertion.  *See* Pls.' Mem. at 15-31.  By its plain terms, the Rule authorizes the entry of a "final judgment," Fed. R. Civ. P. 54(b), and a judgment is final only if it "leave[s] nothing for the court to do but execute the judgment."  *Albright v. UNUM Life Ins. Co. of Am.*, 59 F.3d 1089, 1092 (10th Cir. 1995) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)).  This is the same familiar standard of finality used in 28 U.S.C. § 1291.  Indeed, the only difference between § 1291 and Rule 54(b) is that Rule 54(b) authorizes the entry of judgment on fewer than all claims brought by all parties in a particular case.  But, as to those claims for which final judgment is entered under Rule 54(b), the ordinary standard of finality does apply, and is not relaxed.  *See, e.g.*, *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 432 (1956) ("Sound judicial administration did not require relaxation of the standard of finality in the disposition of the individual adjudicated claims for the purposes of their appealability."); *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7 (1980) (Rule 54(b) requires "an 'ultimate disposition of an individual claim entered in the course of a multiple claims action.'") (quoting *Sears,* 351 U.S. at 436); *Strey v. Hunt Int'l Res. Corp.*, 696 F.2d 87, 88 (10th Cir. 1982) ("Rule 54(b) … permits an entry of judgment only for claims that are in fact finally decided.").  "Accordingly, an order partially adjudicating a multi-party or multi-claim action may be certified for appeal under Rule 54(b) *only* if the order meets § 1291's standard of finality as to the matters

3

adjudicated."  10 James Wm. Moore *et al.,* Moore's Federal Practice – Civil § 54.22[2][a][i] (2006) (emphasis added); *see also Oklahoma Turnpike Auth. v. Bruner*, 259 F.3d 1236, 1241-44 (10th Cir. 2001) (dismissing an appeal of a non-final judgment entered under Rule 54(b)).

Although the finality standard is a demanding one, courts have recognized one narrow exception:  a judgment may be deemed "final" for purposes of appeal if the district court's remaining work is either collateral to the merits (*e.g.*, attorneys' fees and/or costs) or purely ministerial (*e.g.*, distributing damages under a wholly ministerial and uncontroversial formula). *See, e.g.*, *Harbert v. Healthcare Servs. Group, Inc.*, 391 F.3d 1140, 1145 (10th Cir. 2004); *Albright v. UNUM Life Ins. Co. of Am.*, 59 F.3d 1089, 1093 (10th Cir. 1995).  This case does not remotely fall within either category.  Here, the allocation of damages as well as a host of other issues remain unsettled, and those remaining issues are both controversial and inextricably intertwined with the merits.  There is absolutely nothing "collateral" or "ministerial" about the work that remains to be done in this Court.  That is, after all, precisely why this Court indicated that an immediate resolution of certain legal issues made sense in the first place.  *See* 2/17/06 Tr. at 10821 ("I think it would be inefficient to proceed to the damages allocation phase of this action before the parties have had the opportunity to appeal …."").

The fact that this case is not ready for the entry of final judgment under Rule 54(b) hardly comes as a surprise.  In fact, after designing the architecture of the trial for the damages subclass, this Court made it clear that the trial would not lead to final judgment:  "And it is not going to be a final judgment in this case.  So we have to tell the jury that, too. They are here to decide certain factual issues."  *See* 6/30/05 Tr. at 8.

### A.  Allocation Of Damages

It is elementary that a court cannot enter final judgment with respect to any particular claim unless and until the court has determined not only liability but also assessed damages with

respect to that claim.  *See, e.g.*, *Harbert*, 391 F.3d at 1145 ("[A]n order that determines liability but leaves damages to be calculated is not final."); *Albright*, 59 F.3d at 1092 ("[T]he general and well-established rule [is] that an order that determines liability but leaves damages to be calculated is not final.") (internal quotation omitted); *id.* ("[T]he touchstone of a final order is a decision by the court that a party shall recover only a sum certain.") (emphasis omitted).  Here, there can be no final judgment with respect to any claim for the simple reason that the jury awarded a lump-sum amount of damages to the plaintiff subclass on an aggregate basis, and did not allocate damages among individual claimants.  *See*, *e.g.*, *Strey*, 696 F.2d at 87 (dismissing appeal of a judgment entered under Rule 54(b) where "[t]he judgment awards damages in favor of the plaintiff class, but does not provide for the division of damages among the class members [or] for the disposition of any funds that go unclaimed by class members").

The jury's damages award represents ***average*** damages for the subclass as a whole, and provides no principle for allocating the damages to individual plaintiffs.  *See* Jury Verdict Form (Ex. 1) at 15, 24.  The jury was not asked, and did not determine, that each member of the damages subclass actually suffered "average" damages.  In fact, this Court specifically instructed the jury that further proceedings would be required to allocate damages to individual plaintiffs. *See* Jury Instruction No. 3.23.

The difference between average damages for the group as a whole and actual damages for an individual plaintiff is an enormous leap.  To bridge the gap, this Court would need to preside over additional proceedings to determine whether each individual class member suffered damages at all, and if so, how much.  Plaintiffs would be required to present evidence that each particular plaintiff suffered damages, and defendants would have the opportunity to rebut that evidence.

Plaintiffs try to circumvent this straightforward point by proposing a plan for allocating damages among the subclass members. *See* Pls.' Mem. at 23-25. That proposal falls far short of the actual adjudication of damages, and also misses the broader point under Rule 54(b). The allocation of damages among subclass members here is the very antithesis of a "mechanical and uncontroversial" task. *Parks v. Pavkovic*, 753 F.2d 1397, 1401 (7th Cir. 1985). Plaintiffs' allocation plan is inherently unworkable, and would lead to disputes between plaintiffs and defendants, between subclass members and non-members, and likely even among the subclass members themselves.

Plaintiffs contemplate a pro rata distribution of damages to the members of the damages subclass based on the assessed value of each particular property. *See* Pls.' Mem. Ex. F, Pls.' Proposed Plan of Allocation ¶ 10. Plaintiffs thus start from the premise that the assessed value is the only appropriate variable in determining an individual subclass member's damages. *See id.* Yet it is far from clear that the assessed value of the property is the right criteria – let alone the *only* criteria – for allocating compensatory damages.

Other potential criteria abound. At trial, evidence was presented that distance from the plant site, not assessed value, was a key factor in property value diminution. *See* 12/06/2005 Trial Tr. at 6568 ("I selected 10 percent on average, across the subject class area. The highest diminution being closer to Rocky Flats or lowest – diminishes the further away you go from the plant.") (testimony of Wayne Hunsperger); 10/21/2005 Trial Tr. at 2099-2101 (Davidoff mini-summation); 12/05/05 Trial Tr. at 6417 ("For vacant land, it was about 30 percent on average across the class area, recognizing that those properties nearest Rocky Flats were probably diminished greater, and that – the depression or the diminution decreased the further you went from the plant.") (testimony of Wayne Hunsperger); Final Report: Rocky Flats Health &

Housing Survey at Figure 4.7.  One would also expect that the proportion of soil (as opposed to concrete or other materials) on a property may be a more accurate benchmark of damages than its assessed value, since properties with relatively more soil may have had more plutonium deposited there, compared to commercial property with all concrete and no grass.  Plaintiffs also say nothing about the allocation of punitive damages.  Needless to say, the fact that aggregate damages can *sometimes* be allocated in a non-controversial way does not mean that aggregate damages can *always* be allocated in a non-controversial way.  Here, they cannot.

Plaintiffs' proposal oversimplifies the obvious potential for controversy and intra-class conflict.  Some subclass members may prefer one criteria for allocating the jury's lump sum award, and other subclass members may prefer another.  For example, the subclass members living closest to the plant may favor allocating the damages according to the proximity to the plant.  Other subclass members may favor distributing damages based on the relative amount of soil on their property, or the length of time spent living near the site.  Subclass members who currently live in the class area may prefer a disproportionate award compared to subclass members who sold their properties 16 years ago.  Some subclass members may prefer to treat all members equally (regardless of any real-world depreciation), and other subclass members may prefer disproportionate compensation for properties that allegedly suffered disproportionate depreciation.

And so on.  The point is that different subclass members may and will have different views for how to allocate equitably a lump-sum award.  The allocation criteria is far from controversy-free.  In fact, given human nature, the likelihood of controversies about how to allocate such an extraordinarily large amount of money is enormous.

Allocating damages based strictly on the assessed value of the properties would raise practical problems as well.  For example, tax assessment records may or may not reflect a property's true value.  The timing is also important.  Current assessed values will differ markedly from the values as of June 1989, as grasslands have become strip malls, horse properties have added high-tech show arenas and barns, residences have doubled in size due to additions, entire subdivisions have become more valuable due to award-winning developments of adjoining land, and so on.  Plaintiffs do not even hint at an answer to the question of *when* the assessed value should be calculated.  The availability of the data raises issues as well.  Plaintiffs' plan "*assumes* that property records exist." *See* Pls.' Mem. Ex. G at 2 (emphasis added).  Plaintiffs have made no concrete showing that complete and accurate data reflecting the assessed values as of 1989 (or, say, 1990) still exists for all properties in the damages subclass.  The most that they offer is a generalized affidavit from their expert, who stated his belief that data existed based upon his "general professional familiarity" with real estate records and unspecified "consultations" with Jefferson County officials.  *See* Pls. Mem. Ex. G at 2.  In short, the "collection and interpretation" of the real estate data remains an open question.  *See* Pls. Mem. at 23.

The two cases on which plaintiffs rely, *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980), and *Parks v. Pavkovic*, 753 F.2d 1397 (7th Cir. 1985), do not remotely support the plaintiffs' contention.  In *Boeing*, the underlying judgment *did* allocate an aggregate damages award among individual class members.  *See* 444 U.S. at 476 ("The [district] court then fixed the amount that each member of the class could recover on a principal amount of $100 in debentures.").  Thus, the issue there was whether "a proportionate share of the fees awarded to lawyers who represented the successful class may be assessed against the unclaimed portion of the fund created by a judgment."  *Id.* at 473.  The Supreme Court held that a dispute over attorneys' fees

did not negate the finality of the judgment, *id.* at 481 n.7, which underscores the settled rule that disputes over attorneys' fees are collateral to the merits, and hence do not deprive a judgment of finality.  *See, e.g., Cox v. Flood*, 683 F.2d 330, 331 (10th Cir. 1982) ("[J]udgments finally disposing of the merits are appealable even though questions relating to attorney's fees have been left undecided.").  Similarly, in *Parks*, all that remained to be done to determine damages was for the plaintiffs to submit receipts to the court; there was no question "that the defendant agencies would be jointly and severally liable to the class members for whatever amounts are shown to be due."  753 F.2d at 1402.  The Seventh Circuit held that this remaining task was entirely "ministerial" precisely because it would "require no analytical or judgmental determinations that might affect the questions now before us or give rise to other appealable questions."  *Id.*

Thus, like the leading Tenth Circuit cases of *Harbert*, *Albright*, and *Strey*, this case is clearly not final for purposes of appeal, and plaintiffs cannot pretend otherwise by simply proposing a damages allocation plan.  Plaintiffs' proposed plan is intertwined with many contested issues and is fraught with potential controversies.  Because the remaining task of damages allocation here is, by no stretch of the imagination, "sufficiently ministerial that there is no likelihood of further appeal," the judgment is not final and Rule 54(b) does not apply.  *Harbert*, 391 F.3d at 1145; *see also Albright*, 59 F.3d at 1093 ("[I]f calculating damages would be complicated and the possible subject of a separate and future appeal, then we cannot assume appellate jurisdiction over the issue of liability.").

## B.    Section 930 Damages Subclass

Plaintiffs' proposal also fails to provide any method of determining the portion of the jury's damages award that should be allocated to the section 930 damages subclass.  In the May 17, 2005 Order, this Court ruled that the class would be divided into two subclasses.  The first

subclass consists of "all Class members who owned property within the Class Area on the later of: (i) January 30, 1990, the date this action was filed; or (ii) the date on which the jury, per Restatement § 930 (1), finds it appeared the trespass and/or nuisance asserted by Plaintiffs would continue indefinitely." (hereinafter, the "section 930 damages subclass"). 5/17/05 Order at 15. The second subclass consists of "all other Class members." (hereinafter, the "non-section 930 damages subclass"). 5/17/05 Order at 16. The jury determined that it appeared before January 30, 1990 that any trespass or nuisance by Dow and Rockwell would continue indefinitely. *See* Jury Verdict Form at 28-29 (Ex. 1). So presumably, under plaintiffs' plan, it follows that the non-section 930 damages subclass consists of all class members who sold before January 30, 1990.

This Court ruled that ***only*** the section 930 damages subclass can recover damages for prospective invasions under section 930. "Members of [the non-damages subclass] are not entitled to § 930(3)(b) damages because they did not own Class property when this action was filed and/or when the right to elect to recover damages for prospective invasions accrued under Restatement § 930(1). The availability and means of determining any compensatory damages due this sub-class if Defendants are found liable in trespass or nuisance will be decided after the class trial." 5/17/05 Order at 16.

But the jury purported to award damages on behalf of a larger group: the ***class as a whole*** (including both the section 930 damages subclass and the non-section 930 damages subclass). The jury determined the "dollar amount by which ***Class Properties, as a whole***, were diminished or depressed in value, relative to what their value would have been, without the trespass [nuisance]." *See* Jury Verdict Form (Ex. 1) at 15, 24 (emphasis added); *see also* Jury Verdict Form (Ex. 1) at 14 (asking the jury to determine the difference between the actual value

of the Class Properties and what the value would have been but for the invasions).  Under the jury instructions, the "Class Properties" are defined as "property" owned by "Plaintiffs and other Class members . . . in the Class Area as of June 7, 1989."  (Jury Instruction No. 3.2).  The jury thus awarded damages for the class as a whole, but the Court held that only a portion of the class – *i.e.,* the section 930 damages subclass – can recover damages for prospective invasions. Plaintiffs' plan does not suggest a method of determining the portion of damages for the section 930 damages subclass, an obvious prerequisite to allocating damages for individuals in that subclass.

There is a related obstacle.  Plaintiffs' plan glosses over the necessary step of determining who the class members are (meaning names of individuals).  This step is fundamental both to the easement process (*see infra*) and to the determination of any damages owed to the section 930 damages subclass.  Plaintiffs' class-notice list does not reliably identify the property class members, much less the members of the section 930 damages subclass.  Plaintiffs' class-notice list contains owners of property located outside the Class Area, owners who sold property before the class date, and owners who bought property after the class date.  *See generally* Defs.' Opp. to Pls.' Proposed Class Notice filed 11/9/98, at 7–10.

### C.      Disposition Of Unclaimed Funds

The Tenth Circuit has instructed that a district court cannot enter final judgment without setting forth the "principles that will guide the disposition of any unclaimed funds."  *Strey*, 696 F.2d at 88.  Here, this Court has not yet established such principles, and cannot yet do so, because the proper resolution of this issue in turn requires resolution of other outstanding issues, such as an easement process (as discussed in section I.D, *infra*).  Because the disposition of unclaimed funds remains unresolved – and must remain unresolved pending resolution of other issues – final judgment cannot be entered.

Plaintiffs have acknowledged that the Court must resolve the issue of unclaimed funds and have proposed a deceptively simple solution:  redistribution of any unclaimed funds to plaintiffs on a pro rata basis.  *See* Pls.' Mem. at 32.  Under plaintiffs' plan, individual subclass members would receive an extra helping of damages, based on the size of the leftovers.  But any such distribution would be manifestly improper.  Under the Rules Enabling Act, the Federal Rules of Civil Procedure (including Rule 23 authorizing class actions) "shall not abridge, enlarge, or modify any substantive right."  28 U.S.C. § 2072.  Under plaintiffs' proposal, those subclass members sharing in any redistribution would receive damages to which they are not substantively entitled, and therefore their substantive rights would be enlarged as a result of the class action procedure.  Class members, unlike dinner guests, are not entitled to "seconds."  *See*, *e.g.*, *Wilson v. Southwest Airlines, Inc.*, 880 F.2d 807, 811-12 (5th Cir. 1989) ("[A]ll class members who presented their claims received the full payment due them, and those who did not present claims have waived their legal right to do so.  Thus, the class has no further legal rights in the fund.").  Unclaimed funds should be returned to defendants.  *See id.*; *see also Van Gemert v. Boeing Co.*, 739 F.2d 730, 732 (2d Cir. 1984).

Moreover, resolution of unclaimed funds cannot take place at this time, because the amount of the overall judgment will not be determined until the Court resolves the easement issues (which are discussed more fully *infra*).  Under section 930, individual plaintiffs have a choice:  they can elect to recover damages for prospective invasions in exchange for an easement, or they can refuse damages and refuse an easement.  If, as defendants expect, a significant number of plaintiffs decline damages rather than accept an easement on their property, the amount of the judgment will be substantially reduced.  Subclass members who accept an easement certainly are not entitled to **extra** damages simply because other subclass

members may refuse an easement.  Because the number of plaintiffs who may decline damages is unknown, and will remain unknown until the Court resolves the easement process, it would be premature to adopt "principles that will guide the disposition of any unclaimed funds," *Strey*, 696 F.2d at 88, at this time.

D.      **Easements**

The entry of final judgment is also premature because thorny easement issues remain unresolved.  This Court held that a "judgment awarding damages for prospective invasions, if satisfied, will confer an easement to continue the invasions thus paid for in advance. Restatement (Second) of Torts, § 930 cmt. b."  12/17/04 Order at 20; *see also* Restatement (Second) of Torts, § 930 cmt. b ("The exercise of the power of election, followed by satisfaction of a judgment for damages for prospective invasions, confers an easement or privilege to continue the invasions thus paid for in advance.").  This Court will need to determine whether an easement is possible at all, what the easement will cover, how it will be recorded, and so on. This process will lead to disputes between defendants and plaintiffs, between individual subclass members, and between property owners in the subclass and not in the subclass.

Yet plaintiffs and the Court have never explained how the easement process would work, what the easements would look like, or how it would resolve for all future time defendants' liability with respect to the alleged trespass and nuisance.  Because no valid easement for the damages subclass is possible here, it would be improper to allow plaintiffs to recover for "all future damages."  At the very least, substantial questions about the easements remain unresolved:

*First*, any potential easements here would interfere with the property rights of non-party owners who are not before this Court and who neither consented to nor had notice of any easement.  This is not a case in which one plaintiff owned a single piece of property for the duration of the lawsuit; to the contrary, this case involves thousands of properties that were

bought and sold by class members at different times over two decades.  There is simply no precedent for creating and imposing class-wide easements in a case as complex as this one.

Here, the class is not defined by properties, but by persons who owned certain property as of a date certain more than 15 years ago.  Providing defendants with an enforceable easement upon satisfaction of judgment for all class properties poses a sticky problem, because many of those properties are no longer owned by class members.  Indeed, as of October 1, 2003, 10,332 class members (72% of those with available deed information) had apparently sold their properties to new owners who are not before the Court.  *See* Wise 8/6/04 Rep. at Ex. 1 (Ex. 2).[1] These new owners have not consented to easements on their properties.  Nor could their consent be implied from their acceptance of funds in this litigation, because they are not class members and will not recover any damages.  Whether this Court has the power to impose an easement on properties owned by non-parties who are not before the Court and have no voice in the litigation has never been addressed.

Imposing easements on current property owners thus would raise a host of intractable problems.  Damages are awarded to individuals, and easements run against land.  Damages in this case presumably would be awarded to the property owners as of January 30, 1990, the date used in the definition of the damages subclass.  But thousands of the properties have changed hands in the interim.  Imposing easements on the current owners would create an anomalous and

---

[1] No evidence or information has been put before the Court as to the percentages that apply to the members of the damages subclass because no expert has analyzed the damages subclass. The definition of the damages subclass depends on the jury's finding of when "it appeared the trespass and/or nuisance asserted by Plaintiffs would continue indefinitely."  5/17/05 Order at 15. This finding was not made until the jury announced its verdict on February 14, 2006, years after the parties' experts performed their analyses.  Nor could the analyses of plaintiffs' damages experts be retrofitted to the damages subclass, because they did not make separate findings of diminution of value for class members who sold at different points in time after July 7, 1989.

unfair result – the former owners would receive damages in exchange for easements on properties that they do not own, and the current owners would receive nothing in exchange for easements imposed on their land.

Class members who no longer own property upon satisfaction of judgment (when the easement is conferred) cannot assent to the creation of an easement on property they do not own. Former owners cannot consent to *prospective* limitations on land owned by someone else.  In fact, the section 930 commentary specifically provides that the power to grant an easement and recover prospective damages ends when the land is conveyed:

> The exercise of the power of election [to elect to be compensated, once for all, for all the prospective invasions], followed by satisfaction of a judgment for damages for prospective invasions, confers an easement or privilege to continue the invasions thus paid for in advance. ***This power to transfer an interest in the land passes to a grantee, when the land invaded is conveyed. The grantor thereafter could recover only for the invasions occurring before the conveyance.***

Restatement of Torts § 930, cmt. on Subsection (1), Clause (b, ii)  (emphasis added).  Once there is a sale of land, the seller can recover "only" for the invasions "before the conveyance," and not for "prospective invasions."  *Id.*   Thus, the commentary demonstrates that section 930 does not allow full recovery in situations such as this one, in which property is transferred before judgment, because an easement can no longer be exchanged for payment of future damages.

Nor did the class notice place any class members on notice that they were consenting to an easement on their properties.  That notice did not notify class members of a section 930 election nor that there was a chance that staying in the lawsuit would result in an easement on their properties.  *See* Class Notice (Ex. 3).  In fact, the class notice never mentioned an easement at all.  And even if it had, resolving the easement issue still would be highly problematic.  At ***any time*** after the date used to define the class, some class properties had already been sold.  For

instance, as of class certification in 1993, more than 5,900 class properties had already been sold, presumably to non-parties. *See* Wise 8/6/04 Rep. at Ex. 1 (Ex. 2).

Because of the absence of notice, class members who sold their properties could not have notified non-party purchasers about the potential future easement. No "easement" has ever been recorded or otherwise publicized to these non-parties. *See, e.g.,* 25 Am. Jur. 2d *Easements and Licenses* § 93 ("A bona fide purchaser of land without knowledge or actual or constructive notice of the existence of an easement in such land generally takes title free from the burden of the easement."). Thus, even assuming that valid consent was obtained from at least some class members at some earlier time (it was not), the easement would still infringe upon the rights of non-party owners who had no notice of the easement and/or did not consent to it.

***Second***, the scope of the easements remains unresolved. Until the easements are clearly defined, they cannot become effective. *See* Restatement (First) of Property § 450 (2006) ("Some degree of definiteness in the scope or extent of an interest is essential to its recognition as a property interest .... When an interest is definite and precise in its extent it is more readily recognized as an entity which can be the subject matter of a conveyance than when it is indefinite. In order that privileges of use may be recognized as easements there must be some degree of definiteness in the privileged use ...."). Under the Court's Order dated December 17, 2004, the easement must permit "defendants to continue the invasions thus paid for in advance." 12/17/04 Order; *see also* Restatement (Second) of Torts § 930, cmt. on Subsection (1), Clause (b, ii). Thus, in order to fashion an appropriate easement, the Court would be required to determine precisely what is entailed by "continu[ing] the invasions."

Under the easements, what would the defendants have the right to do? Is it the right to substantially interfere with the use and enjoyment of the property? Or is it the right to create

objective conditions causing some health risk?  A vague easement for defendants to continue a

"trespass and nuisance" upon class properties would not suffice to put future purchasers on

notice of the scope of the easements.  But an excessively narrow easement would deprive

defendants of their rights under section 930 by leaving them exposed to possible claims.  As

discussed below, an accurate description of the scope of the easements must be provided upon

recording of the easements.

     *Third*, the logistics of recording easements for the damages subclass remains unresolved.

There are key procedural prerequisites to the creation of an easement, without which the

easement cannot have effect.  Among other requirements, to be effective against a subsequent

property holder:

- the easement must be recorded in the county recorder's office, *see* Colo. Rev. Stat. § 38-36-159 ("The owner of registered land may mortgage or encumber the same by executing a trust deed or other instrument sufficient in law for that purpose ....  But such trust deed or other instrument shall be registered and take effect upon the title only from the time of registration.");

- the easement must be noted on the "certificate of title and the duplicate thereof" (which are recorded in the county recorder's office), *see* Colo. Rev. Stat. § 38-36-102 ("Every such lesser estate, mortgage, lien or charge shall be noted on the certificate of title and the duplicate thereof, and the title or interest certified shall be subject only to such estates, mortgages, liens, and charges as are so noted ....");

- onerous easement paperwork must be completed, including legal descriptions of the property and the easement to be established, *see* Sample Permanent Easement Agreement from Colorado State University website (Ex. 4); and

- substantial filing fees must be paid, *see, e.g.,* Colo. Rev. Stat. § 38-36-198(1)(e) ($10 filing fee per property).

It is unclear how or when the Court expects the parties to accomplish these and other necessary

tasks before the entry of judgment.  Needless to say, there is no basis to make defendants prepare

easement paperwork or pay substantial easement recording fees.

Finally, the Court cannot postpone resolution of the easement process until after entering final judgment. No final judgment can be entered until the rights of all parties have been completely adjudicated. *See Factory Mut. Ins. Co. v. Bobst Group USA, Inc.*, 392 F.3d 922, 924 (7th Cir. 2004) ("Rule 54(b) permits entry of a partial final judgment only when all of one party's claims or rights have been fully adjudicated, or when a distinct claim has been fully resolved with respect to all parties."). Here, the property rights of all parties will not be fully adjudicated until the easement process is complete, among other things. *See, e.g., Skidmore v. First Bank of Minneapolis*, 773 P.2d 587, 589 (Colo. Ct. App. 1988) ("An easement is an interest in property which confers upon its holder an enforceable right to use the property of another for specific purposes."); Restatement (Third) of Property (Servitudes) § 1.2 ("An easement creates a nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement.").

Nor does the easement process fall into the narrow exception against finality for tasks "sufficiently ministerial *that there is no likelihood of further appeal*." *Harbert*, 391 F.3d at 1145 (emphasis added). There are myriad reasons why parties may dispute the outcome of the easement process. Some subclass members may argue that no easement should be recorded on their property. Others may dispute the scope of the easement. Defendants, likewise, may take issue with the outcome of the easement process. In short, one simply cannot conclude – as one must in order for judgment to be entered under Rule 54(b) – that there is "no likelihood" that the easement process in this case will not give rise to a "further appeal." *Id.*

### E.     Prejudgment Interest

This case also is not ripe for final judgment under Rule 54(b) because the issue of prejudgment interest remains unresolved. Prejudgment interest must be resolved before final judgment. *See*, *e.g.*, *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) ("[A] final

judgment was not entered until … the district court set forth a forth a sum certain for every part of the award, including prejudgment interest").  For the reasons set forth below in Part II, no prejudgment interest is recoverable here.  This Court cannot enter final judgment without first resolving this issue.

## II.     DEFENDANTS OBJECT TO PLAINTIFFS' PROPOSED JUDGMENT ON OTHER GROUNDS.

### A.     The Proposed Judgment Fails To Determine With Specificity A Sum Certain That Each Defendant Must Pay.

The proposed judgment fails to resolve perhaps the most basic issue in any lawsuit:  how much does a defendant have to pay to the prevailing party?

It is elementary that a judgment must establish a sum-certain that must be paid to the prevailing party.  *Albright*, 59 F.3d at 1092 ("[T]he touchstone of a final order is a decision by the court that a party shall recover only a *sum certain*.") (emphasis in original) (citing Fed. R. Civ. P. 58).  In cases involving joint and several liability, each defendant is on the hook for the entire injury.  *See Northington v. Marin*, 102 F.3d 1564, 1569 (10th Cir. 1996) (where multiple tortfeasors "are jointly and severally liable … each can be held liable for the entire injury"); *see also McDermott, Inc. v. AmClyde*, 511 U.S. 202, 220-221 (1994) (joint and several liability "can result in one defendant's paying more than its apportioned share of liability").

Yet this case does ***not*** involve joint-and-several liability, as this Court correctly recognized.  *See* 12/7/06 Memorandum Opinion Regarding Jury Instructions at 91.  Nor could it under Colorado law.  Colorado's statutory scheme "abrogate[s] th[e] common law principle" of joint and several liability, and instead "codifie[s] the rule that each of several wrongdoers is liable for only a portion of plaintiffs' injuries, [if any,] according to each tortfeasor's percentage of the fault."  *Barton v. Adams Rental, Inc.*, 938 P.2d 532, 536 (Colo. 1997) (en banc); *Slack v. Farmers Ins. Exch*, 5 P.3d 280, 284 (Colo. 2000) ("As part of the tort reform movement in

19

Colorado, the General Assembly eliminated joint and several liability wherein one tortfeasor might be liable in damages for the acts of another tortfeasor, and adopted a several liability scheme, wherein a tortfeasor is responsible ***only for the portion of the damages that he or she caused***.") (emphasis added); *Bangert Bros. Const. Co. v. Kiewit Western Co.*, 310 F.3d 1278, 1290 (10th Cir. 2002) (same) (quoting *Slack*. Colorado law is clear that in "an action brought as a result of . . . an injury to . . . property, no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant that produced the . . . loss." Colo. Rev. Stat. § 13-21-111.5(a). When there are two or more defendants, the verdict and judgment must establish the aggregate amount of damages, and specify with particularity the damages owed by each defendant. *See, e.g., Lira v. Davis*, 832 P.2d 240, 242 (Colo. 1992) ("[W]here there are multiple defendants, after jury determination of ***total*** compensatory damages, the court applies the comparative negligence and pro rata liability statutes and enters a judgment against each defendant for compensatory damages against each defendant for compensatory damages apportioned in accordance with the percentage of fault attributable to that defendant.") (emphasis added); *Bohrer v. DeHart*, 961 P.2d 472, 476 (Colo. 1998) ("Special verdict forms focus on the essential issues attendant to a finding of liability - ***total*** damages and the relative fault of the parties.") (emphasis added); *see also Bangert Bros. Const. Co.*, 310 F.3d at 1289-90 (holding that the defendant was prejudiced by the lack of a jury instruction on apportionment of fault).

In a case like this one, a plaintiff does not have discretion to decide how much to recover from whom. "***The jury*** shall return a special verdict … determining the percentage of negligence or fault attributable to each of the parties. . . ." Colo. Rev. Stat. § 13-21-111.5(b) (emphasis added). It is the duty of the fact-finder to apportion the specific amount and percentage of

damages for which each defendant is responsible.  This duty is at the core of the legal process.

Without a sum certain, the parties are deprived of the certainty and direction that is the most

basic outcome of a lawsuit.

Plaintiffs' proposed judgment leaves the amount owed by each defendant up in the air.

Everyone agrees that the jury awarded compensatory damages totaling approximately $176

million for trespass and nuisance combined.  *See* Pls.' Mem. at 26; Pls.' Mem. Ex. H, Pls.'

Proposed Judgment at 3.  Yet plaintiffs do not seek a sum certain from either defendant.  Instead,

plaintiffs propose that Dow be responsible for damages "not to exceed" $159 million (*i.e.,* 90%

of the total), and that Rockwell be responsible for damages "not to exceed" $123 million (*i.e.,*

70% of the total).  *Id.*  Plaintiffs presumably selected those amounts because the jury's verdict is

inconsistent on those two causes of action.  The jury assigned 90% of the blame to Dow for the

"trespass damages" and 70% of the blame to Rockwell for the "nuisance damages."

So plaintiffs' proposed judgment begs a critical question:  if a judgment were entered,

how much would each defendant be required to pay?  Plaintiffs' proposed judgment does not

answer this fundamental question.  Plaintiffs offer no authority for leaving this issue unresolved,

or for entering a judgment "not to exceed" a certain amount.  Plaintiffs do not address a host of

obvious questions, such as who would decide the amount to be paid by each defendant, and what

the basis would be for such an allocation.

A judgment must define with care the obligations of the party that did not prevail, and

cannot leave such obligations up in the air.  A moving target is not a "sum certain."  Without

resolving the most basic of legal issues – what is the responsibility of each defendant? –

plaintiffs' proposed judgment provides no basis for final judgment under Rule 54(b).

**B.      The Proposed Judgment Is Deficient For Other Reasons.**

Plaintiffs' proposed judgment poses a host of other problems.  As explained more fully in Defendants' Motion for a New Trial or, in the Alternative, for Remittitur, plaintiffs' proposed judgment cannot give rise to a final judgment at all.  Among the reasons stated in that motion, defendants object to plaintiffs' proposed judgment (exhibit H to plaintiffs' memorandum) on the following grounds:

**Paragraph 2 – Property Class**

Defendants object to paragraph 2 of plaintiffs' proposed judgment because the claims in this trial did not involve all members of "the property class," but rather only members of the "damages subclass."  As the Court has previously ruled, only members of the damages subclass – and not class members who sold their properties before January 30, 1990 – can recover damages in this trial.  5/7/05 Order at 15-16.  As plaintiffs state in their proposed judgment, "The claims for relief as to which final judgment is hereby entered include all claims by Plaintiffs in this action for prospective invasions of their interests in land under Restatement (Second) of Torts § 930, and only such claims."  Pls.' Mem. Ex. H, Pls.' Proposed Judgment ¶ 5. Accordingly, judgment cannot be entered as to any class member who is not within the damages subclass.  *See generally* Defs.' Motion for a New Trial or, in the Alternative, for Remittitur.

**Paragraph 4 – Defendants**

Defendants object to paragraph 4 because it provides that judgment will be entered as to Rockwell's purported successors (Rockwell Automation, Inc., The Boeing Company, ArvinMeritor, Inc., Conexant Systems, Inc, and Rockwell Collins, Inc.).  Since filing their proposed judgment, plaintiffs withdrew their motion to substitute any such successor in interest as a party.  *See* Joint Submission Regarding Plaintiffs' Motion to Amend the Caption or the Complaint or in the Alternative to Substitute Rockwell's Successor Companies as Parties of

22

Interest, filed 6/23/06.  Therefore, judgment cannot be entered as to any purported successors of Rockwell.

### Paragraphs 6-8 – Damages

Defendants object to paragraphs 6-8 because the proposed judgment does not set forth a "sum certain" of damages to be awarded against Dow and Rockwell, as explained above.

### Paragraphs 9-12 – Prejudgment Interest

Defendants object to paragraphs 9-12 because plaintiffs are not entitled to prejudgment interest, as explained in Part II.

### Paragraphs 13-14 – Punitive Damages

Defendants object to paragraphs 13-14 because: (1) plaintiffs are not entitled to recover punitive damages; and (2) the punitive damages award is inconsistent with the compensatory award in that it awards more punitive damages than compensatory damages, in violation of Colo. Rev. Stat. § 13-21-102.  *See* Defs.' Mot. for a New Trial or, in the Alternative, for Remittitur.

### Paragraph 15 – Prejudgment Interest

Defendants object to paragraph 15 because plaintiffs are not entitled to prejudgment interest on exemplary damages, as explained in Part II.

### Paragraph 16 – Costs

Defendants object to paragraph 16 because plaintiffs have not yet filed their bill of costs. Defendants reserve the right to object to an award of costs to plaintiffs, as well as to object to any specific costs sought by plaintiffs, upon receiving plaintiffs' bill of costs.

### Paragraph 17 – Postjudgment Interest

Defendants object to paragraph 17 because federal law, not state law, governs postjudgment interest, as explained in Part II.

**Paragraph 20 – Escrow Agent**

Defendants object to paragraph 20 because there is no basis to appoint plaintiffs' counsel as escrow agent.  Rather, if and when the time comes, this Court should appoint a neutral third-party to serve as any requisite "escrow agent."

## III.   THIS COURT SHOULD CERTIFY DISCRETE ORDERS FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b).

The fact that this Court cannot enter a final judgment does not mean that immediate appellate review is foreclosed.  Congress has authorized interlocutory appeals when there is substantial ground for difference of opinion on controlling questions of law, and when an interlocutory appeal would materially advance the litigation.  *See* 28 U.S.C. § 1292(b).  As explained more fully in the Motion for Certification of Orders for Interlocutory Appeal under 28 U.S.C. § 1292 and the accompanying memorandum in support, this case satisfies the requirements for interlocutory appeal in spades.  This Court should send this case to the Tenth Circuit by certifying four discrete orders for interlocutory appeal.  There is no other viable path to appellate review at this juncture of the case.

In their brief in support of the Motion for Entry of Judgment, plaintiffs preemptively argued that an interlocutory appeal under § 1292(b) was inadvisable, without even knowing which orders defendants would seek to appeal.  *See* Pls.' Mem. at 3-15.  For the sake of continuity, defendants respond to plaintiffs' objections in Defendants' Memorandum in Support of the Motion for Certification of Interlocutory Appeal, and incorporate those responses by reference.

## ARGUMENT – Part II

The procedural problems are only the tip of the iceberg.  Even if this case hypothetically were ready for the entry of final judgment under Rule 54(b), plaintiffs' proposed judgment could not stand because it is substantively improper.  Plaintiffs request a sizeable sum of prejudgment and postjudgment interest, money to which they are not entitled under Colorado law.  Plaintiffs (1) overlook the fact that they already received compensation for the passage of time from the jury, and cannot receive a double recovery, (2) invoke two statutes that are facially inapplicable, (3) seek prejudgment interest on punitive damages in violation of settled precedent, and then seek punitive damages on the prejudgment interest; and (4) request postjudgment interest under Colorado law even though a federal statute squarely governs.

## IV.  PLAINTIFFS CANNOT RECOVER PREJUDGMENT INTEREST BECAUSE THEY ALREADY REQUESTED AND RECEIVED AN INFLATION ADJUSTMENT FROM THE JURY.

Plaintiffs' request for prejudgment interest should be denied, first and foremost, because they requested and received compensation from the jury for the passage of time.  Over defendants' objection, this Court allowed plaintiffs to ask the jury to award inflation-adjusted damages to compensate them for the "time that has elapsed between the harm and the trial." Pls.' Mem. in Opp. to Defs.' Mtn. to Excl. Evid. of Pls.' Consumer Price Index Adjust. for Property Damages at 5 (quoting Restatement (Second) of Torts § 913(2)).  Plaintiffs appealed to the "fairness" of "adjusting the dollar value of plaintiffs' damages," arguing that it would serve the "cardinal objective of making the plaintiff whole."  *Id.* at 4-5; *see id.* at 7 ("Plaintiffs seek to use the CPI to adjust to current value their *monetary damages*.") (emphasis in original).  The jury granted that request, writing on the verdict form that "[a]ll numbers [were] adjusted to 2005 CPI."  Jury Verdict Form at 15 (Ex. 1).  Under settled law, an award of prejudgment interest is inappropriate where, as here, a jury has awarded inflation-adjusted damages.  *See, e.g.*, *Library*

*of Congress v. Shaw*, 478 U.S. 310, 322 (1986); *Sorenson v. Mink*, 239 F.3d 1140, 1148 (9th Cir.

2001); *Masonry Masters, Inc. v. Nelson*, 105 F.3d 708, 711 (D.C. Cir. 1997); *Marcus v. Shalala*,

17 F.3d 1033, 1039 (7th Cir. 1994)*; Perales v. Casillas*, 950 F.2d 1066, 1076 (5th Cir. 1992);

*Chiu v. United States*, 948 F.2d 711, 719 (Fed. Cir. 1991); *see also United States v. $30,006.25

in U.S. Currency*, 236 F.3d 610, 614 (10th Cir. 2000) ("[T]he force of the no-interest rule cannot

be avoided simply by devising a new name for an old institution.") (citing *Shaw*, 478 U.S. at

321).

That rule makes sense, because the whole point of prejudgment interest (like the whole

point of an inflation adjustment) is to compensate a plaintiff for the passage of time.  *See*, *e.g.*,

*Todd v. Bear Valley Village Apts*, 980 P.2d 973, 981 n.8 (Colo. 1999); *Allstate Ins. Co. v. Starke*,

797 P.2d 14, 19 (Colo. 1990).  Thus, any economic or analytical difference between inflation and

interest is legally irrelevant:

> Interest and a delay factor, according to respondent, have distinct purposes: the
> former compensates for loss in the use of money, while the latter compensates for
> loss in the value of money.  We are not persuaded.  ***Interest and a delay factor
> share an identical function.***  They are designed to compensate for the ***belated
> receipt*** of money.  The no-interest rule has been applied to prevent parties from
> holding the United States liable on claims grounded on the belated receipt of
> funds, even when characterized as compensation for delay. *See United States v.
> Sherman*, 8 Otto 565, 568 (1879).  ***Thus, whether the loss to be compensated by
> an increase in a fee award stems from an opportunity cost or from the effects of
> inflation, the increase is prohibited by the no-interest rule.***

*Shaw*, 478 U.S. at 322 (emphasis added); *see also id.* ("[A]s a matter of economic theory, there

may be a distinction between interest and a delay factor, but both are nonetheless prohibited by

the no-interest rule."); *Black Gold, Ltd. v. Rockwool Industries, Inc.*, 529 F. Supp. 272, 279 (D.

Colo. 1981) (Kane, J.) (cited by the Supreme Court in *Shaw* for the proposition that "[p]rivate-

sector decisions, when they adjust for the time of payment, grant interest or a delay factor, ***but

not both***") (emphasis added).  As the Ninth Circuit has explained, an inflation adjustment "is the

functional equivalent of prejudgment interest." *Sorenson*, 239 F.3d at 1148; *see also Masonry Masters,* 105 F.3d at 711 ("functionally equivalent") (internal quotation omitted); *cf. Great Lakes Dredge & Dock Co. v. City of Chicago¸* 260 F.3d 789, 796 (7th Cir. 2001) ("If … compensation for the time value of money is built into a victim's claim for damages, a separate award of prejudgment interest would be double counting."); *Perlman v. Zell*, 185 F.3d 850, 857-58 (7th Cir. 1999) (plaintiff who received the value of the investment at the time of trial cannot also receive prejudgment interest); *Computer Sys. Eng'g, Inc. v. Quantel Corp*., 571 F. Supp. 1379, 1383 (D. Mass. 1983) ("[I]nterest is, by nature, an allowance for the time value of money, and awarding both interest and ***any other form of allowance for the time value of money is inherently duplicative***.") (emphasis added), *aff'd,* 740 F.2d 59, 71 (1st Cir. 1984); Restatement (Second) of Torts § 913(2), cmt. c ("[E]ven in the case in which there has been no financial loss, the length of time elapsing before compensation is made is not an improper element to consider in the awarding of damages. It is, however, ***improper***, having found the amount that should be awarded as compensation, ***to add*** to it a specific amount of ***interest***.") (emphasis added).

To award prejudgment interest where, as here, the jury already adjusted damages for inflation (and thus took into account the passage of time) would amount to a double recovery. Duplicative awards are not recoverable. *F.D.I.C. v. United Pac. Ins. Co.*, 20 F.3d 1070, 1082 (10th Cir. 1994) ("It is a fundamental legal principle that an injured party is ordinarily entitled to only one satisfaction for each injury."); *Westric Battery Co. v. Standard Elec. Co.*, 482 F.2d 1307, 1317 (10th Cir. 1973) (same); *see also* Jury Instruction 3.26. Thus, as the Tenth Circuit has explained in a case applying Colorado law, a court must not award prejudgment interest unless it is "***unquestionably clear*** that the jury allowed no interest." *Lowell Staats Mining Co. v. Pioneer Uravan, Inc.*, 878 F.2d 1259, 1268 (10th Cir. 1989) (emphasis added); *see also Great*

27

*Western Sugar Co. v. KN Energy, Inc.*, 778 P.2d 272, 276 (Colo. Ct. App. 1989) ("[T]o the extent that an award made under the statute provides double compensation for the same wrong, it cannot stand."); *cf. Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, 342 (2d Cir. 1993) ("[W]here there is a ***possibility*** that the jury award already allowed interest, no further prejudgment interest can be recovered on the verdict.") (emphasis added).  "[T]he point is that having chosen to prove damages as it did, plaintiff has not met the burden of disentangling duplicative elements of its claim for the time value of money."  *Computer Sys.*, 571 F. Supp. at 1383.

Indeed, when seeking to use the Consumer Price Index to adjust their monetary damages to current value, plaintiffs themselves recognized that such an award would be duplicative of prejudgment interest:

> [T]he CPI is used to adjust that to 2005 dollars because of the delay in the case coming to trial.  And because the dollars are in 1995 dollars, as he said in his report, are not the same as 2005 dollars, ***no prejudgment interest has been sought***.  And there is no reason why this adjustment could not be made.

Trial Tr. 12/7/05 at 6878 (Davidoff) (emphasis added).  Because plaintiffs asked the jury to adjust their damages to 2005 dollars to account for the passage of time, and the jury granted that request, plaintiffs cannot now seek prejudgment interest on top of the inflation-adjusted damages award.

## V.  PLAINTIFFS CANNOT RECOVER PREJUDGMENT INTEREST BECAUSE NO STATUTE AUTHORIZES SUCH AN AWARD IN THIS CASE.

Plaintiffs do not deny that prejudgment interest is a "creature of statute," and that they are not entitled to an award of such interest unless specifically authorized by some statute.  *See, e.g., Farmers Reservoir & Irrigation Co. v. City of Golden*, 113 P.3d 119, 132 (Colo. 2005); *Rodriguez v. Schutt*, 914 P.2d 921, 925 (Colo. 1996); *Hunter v. Wilson*, 362 P.2d 553, 554 (Colo. 1961); *Clark v. Hicks*, 252 P.2d 1067, 1070 (Colo. 1953); *Lowell Staats Mining Co., Inc. v.*

*Pioneer Uravan, Inc.*, 878 F.2d at 1268 (10th Cir. 1989) ("The right to interest, independent of an agreement to pay it, is statutory."). Yet both of the statutes cited in plaintiffs' brief are facially inapplicable. Plaintiffs cannot recover prejudgment interest under the personal injury statute, Colo. Rev. Stat. § 13-21-101, because this case does not involve personal injuries. Similarly, plaintiffs cannot recover prejudgment interest under the Consumer Credit Code, Colo. Rev. Stat. § 5-12-102, because this case does not involve a dispute about a creditor/debtor relationship.

### A.   Plaintiffs Are Not Entitled To Prejudgment Interest Under The Personal Injury Statute, Colo. Rev. Stat. § 13-21-101.

Plaintiffs first contend that they are entitled to prejudgment interest on their nuisance claim (but not on their trespass claim) under the personal injury statute, Colo. Rev. Stat. § 13-21-101. *See* Pls.' Mem. at 27-28. The basic problem for plaintiffs is that this case does not involve "personal" injuries at all; rather, it involves injuries to property, which are the very ***antithesis*** of "personal" injuries. *See, e.g., Mumford v. Wright*, 12 Colo. App. 214, 217 (Colo. Ct. App. 1898) ("Torts may be divided into two general classes – the first, designated as 'property torts,' embracing all injuries and damages to property, real or personal; the second, known as 'personal torts,' including all injuries to the person, whether to reputation, feelings, or to the body.").

This point is clear from the plain language of the statute, which is notably absent from plaintiffs' brief. The statute provides in relevant part:

> In all actions brought to recover damages for ***personal injuries*** sustained by any ***person*** resulting from or occasioned by the tort of any other person, corporation, association, or partnership, whether by negligence or by willful intent ... and whether such injury has resulted fatally or otherwise, it is lawful for the plaintiff in the complaint to claim interest on the damages .…" (emphasis added).

§ 13-21-101(1) (emphasis added). The phrase "personal injuries" means what it says: the injury must be to a person, not to property or a property interest. *See, e.g., Herod v. Colorado Farm*

*Bureau Mutual Ins. Co.*, 928 P.2d 834, 838 (Colo. Ct. App. 1996) ("An injury is personal when it impairs the well-being or the mental or physical health of the victim. ***In contrast, an injury is not personal when inflicted on property***.") (emphasis added); *Landsberg v. Hutsell*, 837 P.2d 205, 210 (Colo. Ct. App. 1992) (same); *McCafferty v. Musat*, 817 P.2d 1039, 1046 (Colo. Ct. App. 1991) (same); *Miller v. Carnation Co.*, 564 P.2d 127, 132 (Colo. Ct. App. 1977) (same); *see also Colwell v. Mentzer Investments, Inc.*, 973 P.2d 631, 641 (Colo. Ct. App. 1998).  Indeed, the express statutory limitation to "personal injuries" would be meaningless if the statute applied in every case.

Not surprisingly, the Colorado Supreme Court has rejected attempts to recover prejudgment interest under the personal injury statute (and its predecessor) in cases involving property damage, or harms to other legal interests that did not entail a personal injury.  For example, in *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 893 (Colo. 1986), the court rejected a request for prejudgment interest in a breach-of-contract case involving the purchase of an air taxi service, concluding that the case "does not fall under any of the provisions of the statute."  Similarly, in *Branco Eastern Co., Inc. v. Leffler*, 482 P.2d 364 (Colo. 1971), the court denied prejudgment interest in a case involving a damaged crop of pinto beans.  The court reached the same result in *Callaham v. Slavsky*, 385 P.2d 674 (Colo. 1963), allowing plaintiffs to recover prejudgment interest for personal injuries suffered in a car accident, but denying prejudgment interest under the statute for property damage to the vehicle.  And in *Denver-Albuquerque Motor Transport, Inc. v. Galligan*, 358 P.2d 28 (Colo. 1960), the court denied prejudgment interest under the personal injury statute for the failure to deliver perishable meat on time, concluding that the statute "relates exclusively to 'actions brought to recover damages for personal injuries' and is not applicable to the instant case."  *Id.* at 31; *see also Kinsella v.*

*Leonard*, 415 F.2d 574, 578 (10th Cir. 1969) (observing that the statute permits interest for "personal injuries, but not with respect to property damage") (denying prejudgment interest).

While plaintiffs concede that their trespass claim involves injury only to property (and thus the personal injury statute does not apply), they assert that their nuisance claim involves "personal injury" within the meaning of § 13-21-101.  *See* Pls.' Mem. at 27-28.  On this latter point, plaintiffs are wrong.  A nuisance claim, like a trespass claim, "is, at bottom, a claim for injury to property, not to the person."  *Boughton v. Cotter Corp.*, 65 F.3d 823, 833 (10th Cir. 1995); *Hoery v. United States*, 64 P.3d 214, 218 & n.5 (Colo. 2003) ("A private nuisance is a tort *against land* and the plaintiff's actions must always be founded upon his interest in the land.") (emphasis added).

Plaintiffs insist, however, that a nuisance claim *can* involve a personal injury *if* a plaintiff proves "annoyance and discomfort."  *See* Pls.' Mem. at 27.  But the fact that a nuisance claim *can* involve personal injuries in certain cases does not mean that all nuisance claims necessarily *do* involve personal injuries.  Unlike the loss of use and enjoyment, annoyance and discomfort is not a necessary part of a nuisance claim at all, and thus does not arise in all nuisance cases.  *See, e.g., Miller v. Carnation Co.*, 564 P.2d 127, 130 (Colo. Ct. App. 1977) (holding that "annoyance and discomfort" is separate and distinct from the "use and enjoyment of property," and the two are "not duplicative"); *Board of County Comm'rs v. Slovek*, 723 P.2d 1309 (Colo. 1986) (distinguishing between diminution of market value and the "distinct and separate" injury of annoyance and discomfort); *Calvaresi v. Nat'l Development Co., Inc.*, 772 P.2d 640, 645 (Colo. Ct. App. 1988) (observing that loss of use and annoyance and discomfort are "separate injuries"); *Cook v. Rockwell Int'l Corp.*, 273 F. Supp. 2d 1175, 1207 n.33 (D. Colo. 2003) (*Cook IX*) (describing annoyance and discomfort as a "separate element of damages"); Jury Instruction No.

31

3.6 (discussing use and enjoyment as an element of nuisance, but omitting annoyance and discomfort).  In particular, the Restatement (Second) of Torts recognizes that damages for a decline in the "value of the land" are distinct from damages for "discomfort and annoyance." Restatement (Second) of Torts § 929(1) (1979); *see also* 58 Am. Jur. 2d Nuisances § 284 (2006) ("[I]n addition to depreciation in the market or rental or usable value of the realty, the plaintiff may recover the damages he or she personally suffers from deprivation of the comfortable enjoyment of his or her property, and the inconvenience and discomfort the plaintiff and his or her family suffered."); 25 A.L.R. 5th 568 (1994) ("It seems to be the prevailing view in most jurisdictions that, in a nuisance action, an owner or occupant of real estate is entitled to recover damages for personal inconvenience, discomfort, annoyance, anguish, or sickness, distinct from, or in addition to, damages for depreciation in value of property or its use.").[2]

The problem with plaintiffs' argument is that they did not prove the distinct injury of annoyance and discomfort at all, and never could have proved such a personal injury on a class-wide basis.  As this Court stated in its most recent decision, "***Plaintiffs did not seek damages here for annoyance and discomfort***, but rather for the decrease in the value of Class Properties as a result of the alleged continuing trespass and nuisance, which is a separate and unrelated category of damages under Colorado law."  12/07/06 Memorandum Opinion Regarding Jury Instructions at 69 (emphasis added).

---

[2] Section 930 is noticeably different than section 929 with respect to damages.  Section 929 discusses three possible types of damages for past invasions:  (1) diminution in value of the property; (2) the loss of use of the land; and (3) ***annoyance and discomfort***.  *See* Restatement (Second) of Torts § 929(1)(a)-(c).  In contrast, section 930 includes only two possible types of damages for future invasions – diminution in the value of the land, and the cost of avoiding future invasions – with no mention of annoyance and discomfort at all.  *See id.* § 930(3)(b).

The trial here focused exclusively on damage to a property interest, meaning the loss of the "use and enjoyment" of property.  That much is clear from plaintiffs' own trial plan, which stated that plaintiffs would seek damages "for diminution in the value of their property."  *See* Pls.' 2/26/01 Proposed Pretrial Plan at 5.  In a later submission, plaintiffs conceded that "[c]laims of interference with use and enjoyment founded on actual emotional distress pose another potential individual issue" to be resolved in subsequent individual proceedings.  *See* Pls.' 5/14/04 Submission re Trial Plan at 2-3.  Indeed, in an order defining the scope of the trial, this Court outlined the nuisance claim by discussing the "use and enjoyment" of property (a property interest).  *See* 5/17/05 Order at 7 (emphasizing that "[f]ear, anxiety or other emotional ***discomfort*** or ***distress***" raised "individual causation questions" and thus were "***not*** capable of class-wide determination") (emphasis added); *see also* 4/14/04 Order at 8 (whether defendants "did cause" class members to suffer "fear, anxiety or ***discomfort***" was an "individual question") (emphasis added).

The class definition confirms that the trial did not, and could not, involve damages for annoyance and discomfort.  The class here was defined as those who "owned" the land, without requiring actual presence on the property.  *See* Jury Instruction No. 1.1.  But only an owner-occupant – not a mere owner – can recover damages for annoyance and discomfort because such an injury (if any) must be personally experienced.  *See Miller*, 564 P.2d at 130 ("[T]he owner of land who is not an occupant may recover only for the impaired value of his property, while an occupant-owner may recover both his proprietary and personal loss."); Restatement (Second) of Torts § 929 cmt. e ("Discomfort and annoyance to an occupant of the land and to the members of the household are distinct grounds of compensation for which in ordinary cases the person in possession is allowed to recover in addition to the harm to his proprietary interests.  ... The

owner of land who is not an occupant is not entitled to recover for these harms except as they may have affected the rental value of his land.").

This Court's ruling on the issue of a scientifically verifiable health risk similarly confirms that plaintiffs did not recover damages for annoyance and discomfort.  This Court held that plaintiffs did not need to prove that the plutonium caused an "actual, scientifically verifiable health risk," and did so because plaintiffs were not seeking damages for annoyance and discomfort in their own right.  *See Cook*, 273 F. Supp. 2d at 1206 (*Cook IX*) (discussing *Boughton v. Cotter Corp.*, 65 F.3d 823 (10th Cir. 1995)); *see also Boughton*, 65 F.3d at 831-35 (holding that unfounded fears cannot lead to damages for annoyance and discomfort).  In *Boughton*, the Tenth Circuit held that a plaintiff cannot recover damages for annoyance and discomfort based on unfounded fears.  *Id.* at 831-35.  This Court distinguished *Boughton* on the grounds that plaintiffs in that case were seeking ***damages*** for annoyance and discomfort, as opposed to using evidence of annoyance and discomfort to prove ***liability*** for impairing the "utility or desirability of a property."  273 F. Supp. 2d at 1206-07.  This Court explained:  "The [*Boughton*] court's different treatment of these damage elements likely reflects that the interest in being free from discomfort and annoyance in the ***use of land*** is in the nature of a ***property interest*** and hence receives greater legal protection than a plaintiff's ***personal interest*** in being free from discomfort and annoyance."  *Id.* at 1206 n.34 (emphasis added).

Indeed, this Court specifically instructed the jury ***not*** to consider "whether individual Plaintiffs or Class members are or might be ***fearful***, ***anxious*** or otherwise ***disturbed*** by any real or perceived risks relating to Rocky Flats and the Defendants' activities there or the conditions they left behind."  *See* Jury Instruction No. 3.7 (emphasis added); *see also* Jury Instruction No.

3.28.³  And the jury verdict form asked the jury to decide whether the defendants had interfered with the "use and enjoyment" of the plaintiffs' property, with no mention of annoyance and discomfort.  *See* Jury Verdict Form at ¶ C 1, 2, 4; ¶ D 1, 2, 4 (Ex. 1).  The "risk of health problems" and the "risk of future harm" exclusively appeared in the context of the class members' "use and enjoyment of their properties."  *See id.* at ¶ C 1; ¶ D 1.  The jury ultimately found that the "actual value of the Class Properties was less than the value these Properties would have had but for the nuisance" by the defendants.  *See id.* at ¶ F 12.  The jury then awarded "the difference between the actual value of Class Properties and what their value would have been but for the nuisance."  *See id.* ¶ F 13.  The jury specifically determined the "average percentage by which Class Properties were diminished or depressed in value," as well as the "corresponding dollar value amount by which Class Properties, as a whole, were diminished or depressed in value."  *Id.*  In sum, the jury found an injury to a ***property*** interest and awarded damages based on the decline in ***property*** value.  The jury awarded no damages for ***personal*** injuries because it was not asked to do so.

Finally, there is no clearer testament to the fact that the trial was not about personal injuries than the plaintiffs' own statements.  Throughout the trial (and before), plaintiffs repeatedly told this Court and the jury that the trial was ***not*** about personal injuries:

---

³ The jury did receive an instruction about "some increased risk of health problems," but that risk related exclusively to the alleged decline in ***property*** values, not personal injuries.  *See* Jury Instruction Nos. 3.7, 3.22.  That is, the Court ruled that health risks were germane only insofar as they affected the market value of the property, and not because they caused actual harm to the health of individuals.  *Id.*  The jury considered health risks to the extent that they affected a "landowner's right to ***use*** and ***enjoy*** his ***property***" (*i.e.,* a property interest).  *Id.*  The jury was never asked to consider whether the "risk" ever materialized and caused a real-world personal injury, let alone a ***classwide*** personal injury.

- "And the battleground area in modern toxic tort litigation over modern epidemiological evidence involves a context that we are not and a lot of the decisional law involves a context that we are not in. And that involves the context of trying to prove personal injury from a carcinogen or other toxin in a personal injury case. ... One reason obviously is that *this is not a personal injury case. We are not pressing a personal injury claim on anyone's behalf*." 8/3/05 *Daubert* Hearing Tr. at 1-2 (emphasis added).

- "Plaintiffs do not seek, and *have never sought*, to raise or prove any claims for *personal injury* in this litigation, on behalf of workers or anyone else." *See* Pls.' Consolidated Mem. in Opp. to Defs.' Sixteen Motions in Limine at 22 (emphasis added).

- "*This is not a trial for personal injury. Nobody is trying to prove a personal injury in this case*." 10/12/05 Trial. Tr. at 654 (opening argument).

- "*We do not have to show that we suffered any bodily harm* because of the plutonium or that the presence of plutonium on the class properties damaged the properties in some other way, other than the depression in property values. ... And those kinds of testimony are relevant in personal injury cases where it's somebody trying to prove they have an injury or health problem that emanated from the plutonium that was released off-site. We do not believe, and we believe when you review the judge's instructions at the end of the case, that you will not believe that that's relevant to the *property damage* case." 11/4/05 Trial Tr. at 4138.

- "The second major point is *this is not a personal injury case* such as the cases on which, as I understand it, defendants relied. ... And here we are not talking about personal injury cases or even medical monitoring cases." 11/10/05 Trial Tr. at 4894.

- "And I want to stress the next point. We do not have to show bodily harm because of the plutonium. *This is not a personal injury case*. And a lot of the evidence on dose that would be relevant in a personal injury case is not relevant in this case." 11/22/05 Trial Tr. at 6261.

- "*This is not a personal injury case*. Something that I've pointed out to you before. *This is not a personal injury case*." 12/9/05 Trial Tr. at 7389.

- "You know, in this trial *we are not trying a personal injury case*." 1/20/06 Trial Tr. at 10573 (closing argument).

Because "this is not a personal injury case," plaintiffs cannot recover prejudgment interest under

the personal injury statute.

**B.    Plaintiffs Are Not Entitled To Prejudgment Interest Under The Consumer Credit Code, Colo. Rev. Stat. § 5-12-102.**

Plaintiff also cite to the Consumer Credit Code, Colo. Rev. Stat. § 5-12-102, but they do not expressly request prejudgment interest under that statute.  *See* Pls.' Mem. at 27-28 & n.17. In their proposed judgment, plaintiffs request prejudgment interest exclusively under the personal injury statute, not under the Consumer Credit Code.  *See* Pls.' Mem. at 27-28; *see also* Pls.' Mem. Ex. H, Pls.' Proposed Judgment ¶ 9.  Even if they had requested prejudgment interest under the Consumer Credit Code, that statute would not apply for two simple reasons: (1) this case has nothing to do with consumer credit transactions, and (2) prejudgment interest compensates plaintiffs for *past* injury, but the claims here seek compensation for *future* injury. These points are discussed in turn below.

**1.    The Consumer Credit Code Does Not Apply Here.**

The prejudgment interest provision of Colorado's Consumer Credit Code does not remotely entitle plaintiffs to prejudgment interest in this case.  That provision, which again is notably absent from plaintiffs' brief, states in relevant part:

> Except as provided in section 13-21-101, C.R.S., when there is no agreement as to the rate thereof, *creditors* shall receive interest as follows:
>
> (a)    When money or property has been *wrongfully withheld*, interest shall be an amount which fully recognizes the gain or benefit realized by the person withholding such money or property from the date of wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs; or, at the election of the claimant,
>
> (b)    Interest shall be at the rate of eight percent per annum compounded annually for all moneys or the value of all property after they are *wrongfully withheld* or after they become due to the date of payment or to the date judgment is entered, whichever first occurs.

Colo. Rev. Stat. § 5-12-102(1)  (emphasis added).

On its face, this provision applies only to "creditors," in stark contrast to § 13-21-101, which allows a "plaintiff" and "any person" to recover prejudgment interest for personal injuries. The operative noun in section 5-12-102 – "creditors" – necessarily limits the reach of the statute. If the General Assembly had wanted section 5-12-102 to apply broadly to any "plaintiff" and "any person," they would have said so. *See Department of Transp. v. Stapleton*, 97 P.3d 938, 943 (Colo. 2004) ("[W]e presume that the General Assembly understands the legal import of the words it uses . . . .").

While § 5-12-102 does not define the term "creditors," two neighboring definitions of "creditors" in Title 5 underscore its meaning. *See Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 598 (1995) ("[I]dentical words used in different parts of the same act are intended to have the same meaning."); *People v. Cross*, 127 P.3d 71, 73 (Colo. 2006) ("Often the best guide to legislative intent is the context in which the statutory provisions appear . . . ."). Section 5-1-301(17) provides the definition of "creditor" for Articles 1 to 9, and defines that key term as follows: "'Creditor' means the seller, lessor, lender, or person who makes or arranges a *consumer credit transaction* and to whom the *transaction* is initially payable, or the assignee of a creditor's right to payment, but use of the term does not in itself impose on an assignee any obligation of his or her assignor." Colo. Rev. Stat. § 5-1-301(17) (emphasis added). In the case of a credit card, "'creditor' means the card issuer and not another person honoring the credit card." *Id.* Similarly, section 5-12-107(8)(e) defines the terms "creditor" as follows: "'Creditor' means any *seller* or any *lender* located or maintaining a place of business in this state that enters into a *commercial credit plan agreement with a debtor* wherever located, including, without limitation, sellers of goods or services, small loan companies, licensed lenders, industrial banks, commercial banks and trust companies, savings and loan associations, and savings banks." Colo.

Rev. Stat. § 5-12-107(8)(e) (emphasis added).  It is no accident that both definitions of "creditor" in the Consumer Credit Code contemplate *credit* transactions with *consumers*.

The structure of the Colorado Code supports the plain meaning of the text.  The personal injury statute appears in Title 13, entitled "Courts and Court Procedure," and specifically in Article 21, entitled "Damages."  The placement of the personal injury statute in Title 13 suggests that it applies to all suits for "personal injuries."  In sharp contrast, section 5-12-102 appears in Title 5, the Consumer Credit Code, which strongly suggests that it applies only to suits involving consumer credit.  It is instructive that the Colorado General Assembly has enacted a number of other interest provisions, each covering a narrow field such as municipal indebtedness (Colo. Rev. Stat. § 5-12-104), workers' compensation (Colo. Rev. Stat. § 8-43-410(2)), child support (Colo. Rev. Stat. § 14-14-106), eminent domain (Colo. Rev. Stat. § 38-1-116), mechanics' liens (Colo. Rev. Stat. § 38-22-101(5)), and so on.  The placement of section 5-12-102 in the Consumer Credit Code – and the existence of many other interest provisions in the Code in general – suggests that section 5-12-102 has a specific, narrow application.

Legislative history reinforces the text and structure of the statute.  In 1975, the General Assembly raised the interest rate from 6% to 8%.  During the hearings, lawmakers discussed the Consumer Credit Code in a manner that contemplated a traditional creditor/debtor relationship:

> What we are trying to do here is do two things.  I think as the debate illustrated yesterday number one we are trying to get people to pay their just debts so that the people to whom the money is owed can then in turn pay their debts.  And this is not a problem, that the bill is addressing itself toward helping any large company or corporation . . . .  Who we are trying to help here are the *small shopkeepers* and storekeepers who have *open accounts* and do not have sophisticated *credit arrangements* with their purchasers and customers.  These people have current obligations that they must meet and when people can borrow money from them at cheap rate of interest in other words 6% by just not paying their bill and use the money [f]or some other purpose is impairing their ability to stay in business . . . .
>
> [W]hen debts do not get paid and there are a lot of *old accounts receivable* lying around any small storekeeper to the best of his ability is going to try and pass that

> cost on to his other customers who are paying their bills because he's got to make up so much money in order to stay in business and to stay solvent. This means in effect that many of his good paying consumers are going to have to subsidize many of the poor paying customers. And so in that regard **the bill is really a consumer measure** and it really helps those people who pay their bills by not having their prices increased by these merchants.

*See* 5/6/75 Leg. History Hearing Tr. at 3-4 (Ex. 5).[4]  Representative Kramer further explained:

"[T]he purpose of this bill is at least in part is to keep cost[s] down and the way you do that is to get people to **pay their just debts** when they're due so that people are not forced to [pass] off those extra cost[s] and those old **accounts receivables** onto their paying customers."  *Id.* at 4; *see also* 5/5/75 Leg. History Hearing Tr. at 7-10 (Ex. 5) (Rep. Kramer) (discussing "***credit arrangements***" with consumers) (emphasis added); *Id.* at 6 (Rep. Flannery) (discussing a "***consumer***" who seeks "***credit***") (emphasis added); 5/20/75 Leg. History Hearing Tr. at 1-3 (Ex. 5) (discussing "open accounts" of small businessmen).  The consistent references to providing credit to consumers is no accident.  The fact that legislators contemplated a creditor/debtor relationship reinforces the fact that the Consumer Credit Code applies to disputes that arise from such a relationship.

In addition, the Consumer Credit Code does not apply here for the simple reason that defendants have not "withheld" money or property from the defendants.  *See* Colo. Rev. Stat. § 5-12-102(1)(a); *Amoco Rocmount Co. v. Anschutz Corp.*, 873 F. Supp. 1492, 1497 (D. Wyo. 1994) ("[I]t is clear that the threshold determination of whether a party may recover prejudgment

---

[4] Audiotapes of the hearings in the Colorado House and Senate are available from the Colorado State Archives.  Defendants have submitted transcripts of the audiotapes from the hearings, and will provide a copy of the audiotapes upon request from the Court.

interest turns on whether 'money or property' has been 'wrongfully withheld' by the opposing party.") (construing § 5-12-102).[5]

The plain language of the statute reveals that it does not apply to all plaintiffs in all cases. From the very beginning, the text makes clear that the statute applies only when "money or property has been wrongfully withheld."  Colo. Rev. Stat. § 5-12-102(1)(a).  It is indisputable that the defendants did not "withh[o]ld" money just because plaintiffs filed a claim for damages. Money will not "become due" until the entry of judgment, which has not yet taken place.  Colo. Rev. Stat. § 5-12-102(1)(a).  And at that point, the federal postjudgment interest statute will apply (or in cases in state court, section 5-12-102(4) will govern).  *See Huffman v. Caterpillar Tractor Co.*, 645 F. Supp. 909 (D. Colo. 1986) (Kane, J.).  If the General Assembly had wanted the statute to apply to every plaintiff in every case, they would have said so in direct, simple terms.  Applying the statute to all plaintiffs also would render meaningless the limitation commanded by the phrase "[w]hen money or property has been wrongfully withheld."  Colo.

---

[5] The annotated statute says that the current and prior versions of the statute are so "similar" that "relevant cases construing those provisions [of the predecessor statute] have been included in the annotations to this section."  Under the predecessor statute (which has changed relatively little), the cases were "*uniform* in holding that *no interest may be recovered* in an action to recover damages *for injury to property*."  Frank F. Spiecker & Edwin G. Ruland, A Creditor's Right to Interest in Colorado, 35 U. Colo. L. Rev. 190, 201 (1963) (emphasis added); *see also* Nicholas H. Magill, Interest as Damages in Colorado, 28 Dicta 285, 290 (1951) ("Interest in this state is a matter of statute, not of common law, and is recoverable only in cases enumerated in the statutes, and *damages to property* arising from the wrong or negligence of a defendant *is not enumerated in the statute*.") (emphasis added).  From early Colorado jurisprudence, courts drew a distinction between a property damage case and a case about the wrongful detention (*i.e.,* withholding) of property.  *See id.* at 285-87; *see also Denver, South Park & Pacific R. R. Co. v. Conway*, 5 P. 142, 15 (Colo. 1884) ("Interest in this state is a creature of statute and regulated thereby.  It is only recoverable, in the absence of contract, in the cases enumerated in the statute, and *damages to property* arising from the wrong or negligence of a defendant *is not one of the enumerated cases*.") (emphasis added); *Omaha & Grant Smelting & Ref. Co. v. Tabor*, 21 P. 925, 931 (Colo. 1889) (allowing prejudgment interest because the case involved the "wrongful detention of property," and was "*not* for *damages to property*") (emphasis added).

Rev. Stat. § 5-12-102(1)(a).  Similarly, the enumeration in § 5-12-102(1)-(4) would be exceedingly odd if the statute applied in all cases.  And it would be strange to put section 5-12-102 in Title 5 (the Consumer Credit Code) rather than in Title 13 (entitled "Courts and Court Procedure") if it applied in each and every case.

Admittedly, a few Colorado intermediate appellate courts have applied § 5-12-102 in property damage cases.  *See G.E.C. Minerals, Inc. v. Harrison Western Corp.*, 781 P.2d 115 (Colo. Ct. App. 1989); *Combined Communications Corp., Inc. v. Pub. Serv. Co.*, 865 P.2d 893 (Colo. Ct. App. 1993); *Federal Ins. Co. v. Ferrellgas, Inc.*, 961 P.2d 511 (Colo. Ct. App. 1997); *Burt v. Beautiful Savior Lutheran Church of Broomfield*, 809 P.2d 1064 (Colo. Ct. App. 1990); *Isbill Assocs., Inc. v. City & County of Denver*, 666 P.2d 1117 (Colo. Ct. App. 1983).[6]  But it is axiomatic that a federal court need not follow intermediate appellate court decisions where, as here, there is reason to believe that a state supreme court would reach a contrary result.  *See, e.g., Johnson v. Riddle*, 305 F.3d 1107, 1118-19 (10th Cir. 2002) ("[L]ower state court decisions may be helpful, but they are not dispositive of a prediction of how the highest court in the state might rule on the issue."); *Vitkus v. Beatrice Co.*, 127 F.3d 936, 941 (10th Cir. 1997) (federal court "not required to follow the rulings of intermediate state courts"); *Occusafe, Inc. v. EG&G Rocky Flats, Inc.*, 54 F.3d 618, 622 n.1 (10th Cir. 1995) ("[F]ederal courts are not 'absolutely bound' by the decisions of intermediate state appellate courts.") (citing *Romero v. International Harvester Co.*, 979 F.2d 1444, 1449 n.3 (10th Cir.1992)); *Lowell Staats*, 878 F.2d at 1268 ("In the absence of a state supreme court ruling, a federal court must follow an intermediate state

_____

[6] None of those cases involved a request for prejudgment interest after the plaintiff already requested and received an inflation adjustment from the jury.  *See* Section IV, *supra*.

court decision **unless other authority convinces the federal court that the state supreme court would decide otherwise**.") (emphasis added).

Here, there is ample authority to suggest that the Colorado Supreme Court would not apply § 5-12-102 to property damage claims like those at issue here. First and foremost, as described above, that interpretation squarely conflicts with the provision's plain language, structure, and history. Second, the intermediate appellate court cases cited above either contain no reasoning whatsoever or patently flawed reasoning.

The fountainhead of the line of erroneous appellate cases, *Isbill*, acknowledged that "[a] strict reading of this statute might lead to the conclusion that prejudgment interest may not be awarded in a property damage case because the statute specifies that unliquidated claims qualify for prejudgment interest only when 'money or property has been wrongfully withheld.'" 666 P.2d at 1121. Yet the court in *Isbill* refused to give the statute that interpretation, and instead went on an extra-textual frolic and detour. The court simply declared (without explanation) that the "statute is unclear with regard to a claim for property damage," and turned to the legislative history. *Id.* Although that history, as noted above, is entirely consistent with the statutory text, the *Isbill* court relied on the following sentence supposedly spoken by an individual legislator: "'**All plaintiffs**, or defendants who counterclaim, for that matter, are entitled to interest from the time the action accrued, not from the time the suit was filed, not from the time judgment was entered, but from the time they were wronged.'" *Id.* (emphasis added). Based exclusively on that sentence, the court declared that "all cases are to be treated equally **regarding the time interest begins to accrue**," and thus permitted prejudgment interest. *Id.* at 1122 (emphasis added).

The legislative history cannot support the outcome in *Isbill* for two compelling reasons. First, the legislators were not discussing the issue at hand at all.  The legislators discussed ***when*** prejudgment interest would begin to accrue, not ***who*** would be entitled to recover prejudgment interest.  In other words, the senators discussed the timing of prejudgment interest (*e.g.,* whether interest should run from the time of the injury, or the filing of the complaint, or the judgment, and so on), and not whether prejudgment interest applies in all cases.  That much is clear from the very first page of testimony and throughout the hearings on March 12, 1979, when Senator Cole (who allegedly gave the "quote" in question) illustrated that prejudgment interest accrues at different times in different cases.  *See* 3/12/79 Leg. History Hearing Tr. (Ex. 5).  Even the supposed quote in *Isbill* reveals this fact – the speaker was addressing the "time" when interest would begin to accrue, as demonstrated by the use of "time" three times.  As confirmed by the transcript as a whole, the passage in question did not address ***who*** could receive prejudgment interest at all.  *Id.*

Second, *Isbill* badly misquoted the legislative history.  The speaker never made the broad, declaratory statement that "all plaintiffs" are entitled to receive prejudgment interest, no matter what type of claim he or she brings.  Instead, the speaker made a modest point about timing, saying only that "a plaintiff" is entitled to interest when the claim accrues:

| The Misquote in *Isbill* | The Actual Testimony |
|---|---|
| "'***All plaintiffs***, or defendants who counterclaim, for that matter, ***are*** entitled to interest from the time the action accrued, not from the time the suit was filed, not from the time judgment was entered, but from the time they were wronged.'" *Isbill*, 666 P.2d at 1122 (emphasis added). | "It maintains the principal moratory interest or its says that in effect ***a plaintiff***, or for that matter a defendant who counterclaims, ***is*** entitled to interest from the time the action accrued, not from the time the suit was started. Not from the time the judgment was entered, but from the time somebody was wronged." *See* 3/12/79 Leg. History Hearing Tr. at 4 (Ex. 5) (emphasis added). |

The sentence allegedly quoted in *Isbill* – that "all plaintiffs" are entitled to prejudgment interest – was not even uttered in the legislative history. *See* Ex. 5. Instead, the speaker addressed only when "a plaintiff" is entitled to interest, under the circumstances set forth in the statute. Without any legislative history, the sole and exclusive basis for the holding in *Isbill* – and subsequent cases that have relied on *Isbill* – falls like a house of cards. There is simply no reason to conclude that the Colorado Supreme Court would agree with *Isbill*. *Cf. Shootman v. Dept. of Transp.*, 926 P.2d 1200, 1204 (Colo. 1996) ("We held that our precedents adopting and applying sovereign and governmental immunity were pulled out of rather thin air and that those precedents were wrong when announced and they are wrong today; repetition of them forty times or four hundred times doesn't make good law or cause the reasons for the doctrines to become any stronger.") (internal quotations and citations omitted).

> ## 2.    The Consumer Credit Code Authorizes Prejudgment Interest For Past Losses, Not Future Losses.

Above and beyond the point that the Consumer Credit Code does not apply here in the first place, that statute authorizes prejudgment interest only for past losses, not future losses.

Because plaintiffs seek damages for future losses, plaintiffs are not entitled to prejudgment interest.

Even assuming that section 5-12-102 applies to property-damage claims, it does not entitle a plaintiff to recover prejudgment interest on *all* damages awarded for such claims.  To the contrary, the statute authorizes prejudgment interest only where money was "due" and property was "withheld."  *See Dillen v. Healthone, LLC*, 108 P.3d 297, 299 (Colo. Ct. App. 2004) ("[A] plaintiff is not entitled to prejudgment interest on all compensatory damages flowing from a wrongful withholding of property.  Rather, a proper award of prejudgment interest applies only to that part of the compensatory damages awarded for money or property 'wrongfully withheld.'").  By definition, money cannot have been "due" and property cannot have been "withheld" where, as here, a plaintiff is awarded compensation for *future* injury.  *See, e.g., Western Fire Truck, Inc. v. Emergency One, Inc.*, 2006 WL 726671, at *7 (Colo. Ct. App. 2006) ("Prejudgment interest can only be awarded on past, not future, lost profits."); *Dillen*, 108 P.3d at 299 ("Prejudgment interest may not be awarded for future lost earnings because such earnings were not 'due' or 'withheld' within the meaning of § 5-12-102."); *James v. Coors Brewing Co.*, 73 F. Supp. 2d 1250, 1257 (D. Colo. 1999) ("[P]rejudgment interest is allowed only on past losses."); *Curragh Queensland Mining Ltd. v. Dresser Indus., Inc.*, 55 P.3d 235, 242 (Colo. Ct. App. 2002) ("[P]rejudgment interest is allowed only on past, not future, losses."); *Life Care Centers of Am., Inc. v. East Hampden Assoc. Ltd. Partnership*, 903 P.2d 1180, 1189 (Colo. Ct. App. 1995) ("[W]e conclude the trial court's award of prejudgment interest must be reversed and an award of prejudgment interest entered on only those damages incurred prior to the entry of judgment."); *South Park Aggregates, Inc. v. Northwestern Nat'l Ins. Co. of Milwaukee, Wis.*, 847 P.2d 218, 227 (Colo. Ct. App. 1993) ("To interpret § 5-12-102 as permitting recover for *all*

compensatory damages flowing from a wrongful withholding would render meaningless the statutory language limiting prejudgment interest to that money or property 'wrongfully withheld.'") (emphasis in original); *Shannon v. Colorado School of Mines*, 847 P.2d 210, 213 (Colo. Ct. App. 1993) ("The plain language of the statute indicates, however, that prejudgment interest is allowed only on past losses.  ...  Thus, under § 5-12-102, interest may not be awarded on lost *future* wages and benefits because they are not due and owing prior to the entry of judgment.") (emphasis in original).

There can be no question that plaintiffs' claims under § 930 of the Restatement (Second) of Torts will continue into the indefinite future.  That much is clear from the title to the section: "Damages For *Future* Invasions."  Restatement (Second) of Torts § 930 (1979)  (emphasis added).  The whole point of § 930 is to compensate a plaintiff for "invasions that will continue indefinitely" by allowing him or her to recover for the "future invasions."  *Id.* at § 930(1).  Under § 930, a plaintiff may elect to receive a once-and-for-all payment before the "future injury" takes place, thus alleviating the burden of having to bring successive lawsuits for invasions that will continue into the indefinite future.  *See id.* cmt. b ("[W]hen it appears that the wrong will probably continue indefinitely, the person injured is empowered to elect to be compensated once and for all, for the prospective invasions.").  A plaintiff receives damages equal to the loss in value for the "prospect of the continuance of the invasion," and the future invasions are thus "paid for *in advance*."  *Id.* at § 930(3)(b) & cmt. b (emphasis added).

This Court has recognized the prospective nature of the damages sought by plaintiffs in a series of rulings.  For example, this Court held that plaintiffs may seek to recover "prospective damages for this continuing invasion."  *See Cook v. Rockwell Int'l Corp.*, 358 F. Supp. 2d 1003, 1013 (D. Colo. 2004) (*Cook X*).  This Court equated "diminution of property value" with

"prospective damages," meaning that damages under § 930 compensate for future losses.  *Id.*; *see also id.* at 1010 n.8 ("Diminution in property value allows the injured party to recover the ***anticipated*** loss it ***will*** incur in the ***future*** ....") (emphasis added); *Cook IX*, 273 F. Supp. 2d at 1211 (observing that § 930 allows a party "injured by continuing tortious invasions of its property to elect to recover damages for both past and future invasions, including diminution in property value, so as to avoid the necessity of having to bring successive actions as the invasions continue").  The "prospective invasions" will be "paid for ***in advance***."  *Id.* at 1013-14 (emphasis added).

The trial here did not involve claims for past or present invasions at all.  In its Order dated May 17, 2005, this Court held that "***only*** damages for ***prospective*** invasions pursuant to Restatement (Second) of Torts § 930(3)(b) will be determined in the class trial," and ***not*** damages for "***past*** or ***present*** invasions."  *See* 5/17/05 Order at 15 (emphasis added).  This Court thus allowed plaintiffs to recover damages for the "prospect of the alleged trespass and/or nuisance (if proved by Plaintiffs) continuing into the future."  *See id.* at 15-16; *see also* 1/27/06 Order Regarding Instruction No. 3.28, at 1-2 (observing that § 930 allows a plaintiff to "recover damages for prospective invasions, that is, elect to recover damages for the diminution in the property's value caused by the continuing invasion").  Indeed, in their proposed judgment, plaintiffs acknowledge that the jury awarded damages ***only*** for future invasions:  "The claims for relief as to which final judgment is hereby entered include all claims by Plaintiffs in this action for ***prospective*** invasions of their interests in land under Restatement (Second) of Torts § 930, and ***only such claims***."  *See* Pls.' Mem. Ex. H, Pls.' Proposed Judgment  ¶ 5 (emphasis added).[7]

---

[7] Plaintiffs cannot avoid this point by suggesting that the jury might have awarded damages in part for past harms (meaning harms that arose after the invasions became complete and

(Continued…)

## VI.    PLAINTIFFS CANNOT RECOVER PREJUDGMENT INTEREST FROM 1990.

Even if plaintiffs were entitled to any prejudgment interest at all (which, as explained above, they are not), they are not entitled to prejudgment interest (as they request) "from January 30, 1990 … to the date judgment is entered."  Pls.' Mem. at 29.  Plaintiffs are wrong, for three reasons.

*First*, plaintiffs claim that they are entitled to interest from January 30, 1990 because that was the date when the "action [wa]s filed."  *See* Pls.' Mem. at 27; *see also id.* at 29.  But under the statute, a plaintiff can seek prejudgment interest "from the date the action *accrued*," not the date when the action was filed.  Colo. Rev. Stat. § 13-21-101(1).

*Second*, the jury here made no finding that plaintiffs' nuisance and trespass claims accrued on January 30, 1990, when they filed this lawsuit.  In fact, the jury never made any findings about when the claims accrued at all.  At the most, the jury found that "the injurious situation … became 'complete' and 'comparatively enduring' some time between January 1,

---

comparatively enduring, but before the current date).  There is no question that the jury awarded damages for future injury, and there is simply no basis for allocating the general verdict between damages for past and future injury when the jury made no such allocation.  Having failed to request any such allocation by the jury, plaintiffs are now precluded from pursuing prejudgment interest.  *See, e.g.*, *Dillen*, 108 P.3d at 300; *Shannon*, 847 P.2d at 213-14.  Indeed, the Seventh Amendment would preclude any *post hoc* attempt to apportion the jury's damages award between past and future damages.  *See Hodges v. Easton*, 106 U.S. 408, 412 (1882) ("The court could not, consistently with the constitutional right to trial by jury, submit a part of the facts to the jury, and, itself, determine the remainder without a waiver by the defendants of a verdict by the jury.").  Colorado law is in accord.  Under Colorado law, an award of prejudgment interest is supposed to be a "ministerial act," in which the court simply calculates interest based on the findings of the jury.  *See Todd*, 980 P.2d at 981.  A court cannot make findings to support an award of prejudgment interest unless they are "clearly ascertainable" from "uncontroverted facts."  *Peterman v. State Farm Mut. Auto. Ins. Co.*, 8 P.3d  549 (Colo. Ct. App. 2000); *Coleman v. United Fire and Casualty Co.*, 767 P.2d 761, 764 (Colo. Ct. App. 1988); *Pierson v. United Bank of Durango*, 754 P.2d 431, 433 (Colo. Ct. App. 1988); *Tripp v. Cotter Corp.*, 701 P.2d 124, 126 (Colo. Ct. App. 1985); *Lowell Staats Mining Co., Inc.*, 878 F.2d at 1268.

1988 and December 31, 1995."  Jury Verdict Form at 8, 11, 14, 17, 20, 23 (Ex. 1).  The jury never found that the claims accrued during that time period, and if so, when.

*Third*, plaintiffs base their request on the jury's finding that "'it appeared on or before January 30, 1990, which is the date this case was filed, that any trespass or nuisance by [Rockwell and Dow] would continue indefinitely."  *Id.* at 28-29 (quoting Jury Verdict Form at 28-29) (Ex. 1).  Yet that question to the jury appeared in the context of "Additional Questions" regarding class membership, which was ***not*** part of the jury's findings on nuisance or trespass.  *See* Jury Verdict Form at 28-29 (Ex. 1).  As this Court explained, "[t]he purpose of these additional question is ***not*** to determine liability ***or to measure damages***, but rather to determine the sub-class of Class members who are entitled to recover damages for prospective invasions under Restatement § 930 if the jury finds either or both Defendants liable and awards compensatory damages."  1/27/06 Order Regarding Instruction No. 3.28, at 5 (emphasis added).  If the additional questions were not meant "to measure damages," then plaintiffs obviously cannot recover prejudgment interest (a form of damages) based on the jury's answers.

## VII.   PLAINTIFFS CANNOT RECOVER PREJUDGMENT INTEREST ON EXEMPLARY DAMAGES, AND CANNOT RECOVER EXEMPLARY DAMAGES ON PREJUDGMENT INTEREST.

### A.   Plaintiffs Cannot Recover Prejudgment Interest On Exemplary Damages.

Remarkably, plaintiffs request prejudgment interest on the award of exemplary damages, even though they concede (as they must) that Colorado law disallows such interest.  *See* Pls.' Mem. at 29 (citing *Coale v. Dow Chem. Co.*, 701 P.2d 885, 890 (Colo. Ct. App. 1985)); *see also Ballow v. Phico Ins. Co.*, 878 P.2d 672, 683 (Colo. 1994); *Lira*, 832 P.2d at 246; *Seaward Constr. Co. v. Bradley*, 817 P.2d 971, 973-76 (Colo. 1991); *Becker & Tenenbaum v. Eagle Restaurant Co.,* 946 P.2d 600, 602 (Colo. Ct. App. 1997); *Emarine v. Haley*, 892 P.2d 343, 350 (Colo. Ct. App. 1994); *Frontier Exploration, Inc. v. American Nat'l Fire Ins. Co.*, 849 P.2d 887,

893 (Colo. Ct. App. 1992); *Burgess v. Mid-Century Ins. Co.*, 841 P.2d 325, 332-33 (Colo. Ct. App. 1992); *Jacobs v. Commonwealth Highland Theatres, Inc.*, 738 P.2d 6, 13 (Colo. Ct. App. 1986). Notwithstanding this solid wall of authority, plaintiffs gamely assert (in a masterpiece of understatement) that "Colorado law ***generally*** disallows pre-judgment interest on exemplary damages." Pls.' Mem. at 29 (emphasis added). According to plaintiffs, "no sound policy rationale prevents the taxation of pre-judgment interest from and after th[e] date" of a jury verdict, as opposed to the date of a judgment. *Id.* Thus, plaintiffs request prejudgment interest on exemplary damages "from the date of the jury's verdict on February 14, 2006." *Id.*

The short answer to that argument is that this federal court is not free, on a matter of state law, to disregard the decisions of a state supreme court on "policy" grounds. *See, e.g.*, *United States v. Gaudreau*, 860 F.2d 357, 361 & n.11 (10th Cir. 1988). The Colorado Supreme Court has specifically, and repeatedly, held that plaintiffs are not entitled to prejudgment interest on exemplary (or punitive) damages. *See, e.g.*, *Ballow*, 878 P.2d at 683 ("Prejudgment interest is not allowed on punitive damages."); *Lira*, 832 P.2d at 246 ("[P]rejudgment interest does not apply to exemplary damages."); *id.* ("[E]xemplary damages are not subject to prejudgment interest."); *Seaward*, 817 P.2d at 976 ("[T]o allow prejudgment interest on punitive damages would be inconsistent with the compensatory purpose of section 13-21-101. We are confident that the legislature intended no such inconsistency."). It follows that plaintiffs here cannot recover prejudgment interest on the award of exemplary damages. ***Post***-verdict prejudgment interest is just as much a form of prejudgment interest as ***pre***-verdict prejudgment interest, and no Colorado court has ever endorsed the distinction that plaintiffs are now advocating. In fact, *Coale* – the sole case cited by plaintiffs on this point – expressly held that any interest before the entry of judgment is improper: "[A]n award of punitive damages is unliquidated until the date of

*judgment*.  It does not exist until the trier of fact ascertains and assesses that the plaintiff is entitled to such damages *and the trial court enters judgment thereon*."  *Coale*, 701 P.2d at 890 (emphasis added); *see also Fail v. Community Hosp.*, 946 P.2d 573, 582 (Colo. Ct. App. 1997) ("Interest is not recoverable on a jury verdict" because "a verdict is not conclusive until final judgment is entered upon it.").

### B.   Plaintiffs Cannot Recover Exemplary Damages On Prejudgment Interest.

Plaintiffs then ask for the inverse, requesting that prejudgment interest "be added to compensatory damages before any application of the statutory cap on exemplary damages."  Pls.' Mem. at 30.  That request defies the text of the statute.  *See* Colo. Rev. Stat. § 13-21-102(1)(a).

The statute provides that "the jury, in addition to the actual damages sustained by such party, may award him reasonable exemplary damages."  *Id.*  The statute then imposes a ceiling on the amount of exemplary damages that a jury can award:  "The amount of such reasonable exemplary damages shall not exceed an amount which is equal to the amount of the actual damages awarded to the injured party."  *Id.*  The baseline is the amount "awarded to the injured party," and it is "the *jury*" that makes that award.  *Id.*  The text necessarily contemplates that the baseline is the amount of compensatory damages awarded by the jury – exclusive of prejudgment interest – because the court, not the jury, awards prejudgment interest.  *See* Colo. Rev. Stat. § 13-21-101 (providing that "the court" adds interest to the damages awarded by the jury); *see also* Pls.' Mem. in Opp. to Defs.' Mtn. to Excl. Evid. of Pls.' Consumer Price Index Adjust. for Property Damages at 3 n.1 (stating that "prejudgment interest" is "awarded by the Court and not the jury under Colorado law").  In addition to the statutory text, plaintiffs' position is inconsistent with the purpose of the statute, which was "part of the sweeping tort reform legislation" aimed at "limit[ing] excessive punitive damages awards."  *See Lira v. Davis*, 832 P.2d 240, 245-46 (Colo. 1992).

Plaintiffs' request is equally inconsistent with this Court's jury instructions.  Jury Instruction 3.27 expressly stated that "[t]he sum [of punitive damages] you award may not be more than the amount **you awarded** as actual damages against the Defendant or Defendants." *See* Instruction No. 3.27 (emphasis added).  That instruction specifically capped the amount of punitive damages at an amount equal to the amount awarded by the jury, with no mention of prejudgment interest.

Plaintiffs' request is little more than an end-run around the rule that a plaintiff cannot recover prejudgment interest on exemplary damages, because the additional punitive damages would not be recoverable but for the addition of prejudgment interest on the compensatory damages.  *See, e.g.*, *Lira*, 832 P.2d at 246 (holding that "prejudgment interest does not apply to exemplary damages"); *Seaward Constr.*, 817 P.2d at 976  (holding that prejudgment interest on punitive damages "would be inconsistent with the compensatory purpose" of the prejudgment interest statutes).  A plaintiff cannot recover prejudgment interest on exemplary damages, and a plaintiff cannot recover exemplary damages on prejudgment interest.

## VIII.   FEDERAL LAW, NOT COLORADO LAW, GOVERNS POSTJUDGMENT INTEREST.

Finally, plaintiffs request postjudgment interest under Colorado law, not federal law, *see* Pls.' Mem. at 30-31 – presumably because the rate of interest is higher under Colorado law. That request is plainly misguided.  Awards of postjudgment interest (as opposed to prejudgment interest) in federal court are governed by federal (not state) law.  *See* 28 U.S.C. § 1961(a).  That is so for the simple reason that postjudgment interest (in sharp contrast to prejudgment interest) is considered procedural (not substantive) within the meaning of *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).  *See, e.g.*, *Forest Sales Corp. v. Bedingfield*, 881 F.2d 111, 113 (4th Cir. 1989); *Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 623-24 (5th Cir. 1988);

53

*Weitz Co., Inc. v. Mo-Kan Carpet Inc.*, 723 F.2d 1382, 1386 (8th Cir. 1983).  Indeed, the federal postjudgment interest statute on its face applies to "***any*** money judgment in a civil case recovered in a district court" with a few narrow exceptions not applicable here.  28 U.S.C. § 1961(a) (emphasis added).  "[U]nless a case is ***expressly*** exempt from the scope of [§ 1961], the federal postjudgment interest rate applies to cases adjudicated in federal court, regardless of whether the basis for jurisdiction was federal question or diversity."  *Maddox v. American Airlines, Inc.*, 298 F.3d 694, 699-700 (8th Cir. 2002) (emphasis added).

Plaintiffs argue, however, that the "1988 amendments to the Price-Anderson Act call for the ***rules of decision*** in public liability actions to be derived from the law of the state where the nuclear incidents occur."  Pls.' Mem. at 30.  The problem with that argument, as noted above, is that the federal post-judgment interest statute is not a substantive "rule[] of decision."  *Id.* Rather, it is a procedural rule applicable to ***all*** cases tried in federal court, even where (as in diversity cases) the substantive rules of decision are derived from state law.  *See, e.g.*, *Adams-Arapahoe Joint Sch. Dist. No. 28-J v. Continental Ins. Co.*, 891 F.2d 772, 780 (10th Cir. 1989); *Everaard v. Hartford Accident & Indem. Co.*, 842 F.2d 1186, 1193-94 (10th Cir. 1988); *see also Maddox v. American Airlines, Inc.*, 298 F.3d 694, 699-700 (8th Cir. 2002); *Chapman & Cole v. Itel Container Int'l B.V.*, 865 F.2d 676, 689 (5th Cir. 1989); *Northrop Corp. v. Triad Int'l Mktg., S.A.*, 842 F.2d 1154, 1155-56 (9th Cir. 1988); *Roy Stone Transfer Corp. v. Budd Co.*, 796 F.2d 720, 723 n.6 (4th Cir. 1986); *G.M. Brod. & Co.  v. U.S. Home Corp.*, 759 F.2d 1526, 1542 (11th Cir. 1985); *Huffman*, 645 F. Supp. at 911  (Kane, J.) ("The application of § 13-21-101 is limited to calculations of prejudment interest, because postjudgment interest is governed by 28 U.S.C. § 1961."); *Lowell Staats Mining Co. v. Pioneer Uravan, Inc.*, 645 F. Supp. 254, 258 n.5 (D. Colo. 1986) (Kane, J.) ("[S]tate law on the recovery of interest is displaced at the postjudgment

phase by 28 U.S.C. § 1961."), *rev'd on other grounds*, 878 F.2d 1259 (10th Cir. 1989). In fact, "every circuit court to address this issue has concluded that the federal rate applies to ***all*** money judgments recovered in civil cases." *Underwood v. B-E Holdings, Inc.*, 269 F. Supp. 2d 125, 142 (W.D.N.Y. 2003) (emphasis added).

If the federal postjudgment interest statute applies to claims in diversity cases, which by definition arise under state law, then *a fortiori* it applies to claims under federal statutes (like the Price-Anderson Act) that arise under federal law, even though they borrow the substantive rules of decision from state law. *See, e.g.*, *Bartholomew v. CNG Producing Co.*, 832 F.2d 326, 330-31 (5th Cir. 1987) (federal postjudgment interest statute applies to claims under the Outer Continental Shelf Lands Act, even though that federal statute adopts state rules of decision); *Transco Leasing Corp. v. United States*, 992 F.2d 552, 554-56 (5th Cir. 1993) (federal postjudgment interest statute applies to claims under the Federal Tort Claims Act, even though that federal statute adopts state rules of decision); *Perez v. United States*, 830 F.2d 54, 60 (5th Cir. 1987) (same).

## CONCLUSION

This Court should deny plaintiffs' motion for entry of judgment because it is procedurally premature and substantively unfounded.

Dated:  January 22, 2007                    Respectfully submitted,


                                            s/ John E. Tangren
                                            One of the Attorneys for the Defendants
                                            David M. Bernick
                                            John E. Tangren
                                            KIRKLAND & ELLIS LLP
                                            200 East Randolph Drive
                                            Chicago, Illinois 60601-6636
                                            Phone:  312-861-2000
                                            Fax:      312-861-2200

                                            Joseph J. Bronesky
                                            SHERMAN & HOWARD L.L.C.
                                            633 Seventeenth Street, Suite 3000
                                            Denver, Colorado 80202
                                            Phone:  303-297-2900
                                            Fax:      303-298-0940

                                            Attorneys for ROCKWELL
                                            INTERNATIONAL CORPORATION and
                                            THE DOW CHEMICAL COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses for the following:

Peter B. Nordberg, Esq.
BERGER & MONTAGUE P.C.
1622 Locust Street
Philadelphia, PA 19103
Denver, CO 80202
pnordberg@bm.net
kmarkert@bm.net

Gary B. Blum, Esq.
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Coloradomg@s-d.com

s/ Courtney Biggins
Courtney Biggins (legal assistant)