# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, *et al.*,

        Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

        Defendants.

---

**AFFIDAVIT OF ANGELA M. MONTINI**

---

I, Angela M. Montini, after first being duly sworn, state the following:

1.  I am over twenty-one years of age and have personal, first-hand knowledge of the facts stated in this affidavit. If called to testify, I could competently testify to the following:

2.  I am a Certified Shorthand Reporter. I perform work as an independent contractor for Victoria's Transcription Services, Inc., 29 South LaSalle Street, Suite 200, Chicago, IL, 60603-1502. I am not affiliated in any way with defendants or any other parties in this case, and I am not interested in the outcome of this litigation.

3.  I transcribed audiotapes of testimony given on May 5, 1975, May 6, 1975, May 20, 1975, and March 12, 1979 by Colorado state legislators. I transcribed those audiotapes to the best of my ability. The exhibits to this affidavit are fair and accurate copies of transcripts of the audiotapes of the testimony that I personally prepared.

4.  Exhibit A is a fair and accurate copy of a transcript of the audiotape of the testimony provided in Colorado House Chambers on May 5, 1975.

5.   Exhibit B is a fair and accurate copy of a transcript of the audiotape of the testimony provided in Colorado House Chambers on May 6, 1975.

6.   Exhibit C is a fair and accurate copy of a transcript of the audiotape of the testimony provided before the Colorado Senate Finance Committee on May 20, 1975.

7.   Exhibit D is a fair and accurate copy of a transcript of the audiotape of the testimony provided before the Colorado Senate Judiciary Committee on March 12, 1979.

Further affiant sayeth not.

Date: _1-17-07_

_Angela M. Montini_
Angela M. Montini

Subscribed and Sworn to
before me this _17_ Day of
January, 2007

_Eileen Fasano Gue_
Notary Public

My Commission Expires:

_3/21/10_

```
"OFFICIAL SEAL"
EILEEN FASANO-GUE
Notary Public, State of Illinois
My Commission Expires 03/21/10
```

2

A

**Transcription Services, Inc.**

29 South LaSalle Street, Suite 200          877.551.8801                     312.443.1029
                Chicago, Illinois 60603-1502                    312.551.8818

1

```
 1                     House Bill 1087

 2                      2nd Reading

 3          MODERATOR:  The following is the testimony

 4   concerning House Bill 1087 from 1975.  This is the

 5   testimony before the House as a whole in 2nd

 6   reading.  This took place on May 5th, 1975 in the

 7   House Chambers.  This begins at 8:20 p.m.

 8          CHAIRMAN:  Mr. Higgins, will you read the

 9   title of the House Bill 1087.

10          MR. HIGGINS:  House Bill No. 1087 by

11   Representatives Kramer (phonetic), Durham

12   (phonetic) and Hertzberger (phonetic), also

13   Senator Minister (phonetic) concerning legal

14   interest rate.

15          CHAIRMAN:  Representative Kramer.

16          REPRESENTATIVE KRAMER:  Mr. Chairman, by

17   popular demand, I have returned, unlike General

18   MacArthur, a third time and move at this time for

19   the favorable adoption of House Bill 1087.

20          UNIDENTIFIED SPEAKER:  I understand there is

21   a committee amendment.

22          REPRESENTATIVE KRAMER:  Yes.  And I would ask

23   that it not be read at length and I would move the

24   committee amendment at this time.
```

2

1          What the committee amendment does and

2   what the bill will do, if adopted, will raise the

3   legal rate of interest in the State of Colorado

4   from 6 percent to 8 percent.  What this really

5   pertains to is bills, bonds, notes, and other

6   instruments of writing and judgments where no rate

7   of interest is specified.

8          It will not affect any agreement or

9   contractual obligation wherein another rate of

10  legal interest is specified.  It only covers those

11  cases where there is no specified rate.  And I

12  would suggest to the members of the committee that

13  this kind of measure is long overdue in light of

14  realistically what current interest rates are.

15         By having a 6 percent rate, what we

16  find is that people, in effect, borrow money from

17  their creditors and wait to the last possible

18  moment in time before they pay their just debts.

19  The reason being that they can borrow money this

20  way cheaper than they can from any lending

21  institution.

22         The purpose of this measure is not to

23  penalize anybody, but to encourage people to pay

24  their debts in as timely a fashion as possible.

3

1    And I would remind the members of the committee

2    that, in my view, and from what I have seen that

3    transpires, is that the little person, the small

4    merchant, the small shopkeeper, this is the kind

5    of person who is hurt by a 6 percent interest

6    rate, because even if he is forced to sue to

7    collect on his just debt that is owed to him by

8    some debtor, he can only collect 6 percent rate of

9    interest from the time of delinquency.  I believe

10    that an increase in 2 percent in the legal rate of

11    interest will encourage people to pay their debts

12    in a timely fashion.

13    With that explanation, Mr. Chairman, I

14    would move the committee amendment.

15    CHAIRMAN:  Is there any further discussion?

16    Is there any further discussion?  Representative

17    Straley (phonetic).

18    REPRESENTATIVE STRALEY:  Only that I'd like

19    to bring to the attention of this body that we are

20    now dealing with the legal rate of interest, and

21    that notwithstanding the fact that all of us get

22    bills which say that any amount unpaid after the

23    1st of the month will draw interest at the rate of

24    1 percent a month or 1-1/2 percent a month, those

4

1   recitations on the bill are illegal and invalid.

2   Unless you have signed an agreement to the

3   contrary, your bills draw interest at the rate of

4   only 6 percent now.

5           The committee amendment, I think, is

6   realistic in that it recognizes some of the

7   increases that we've had recently and raises it to

8   8 percent, and I'd hope that you'd vote for the

9   committee amendment.

10          But, really, the reason I'm here and

11  the point I would like to make is each of us ought

12  to be able to tell our constituents that these

13  unilateral declarations on bills that if they are

14  unpaid, they will draw interest at a very high

15  rate are illegal and contrary to this statute

16  which we are amending now.

17  CHAIRMAN:  Is there any further discussion on

18  the committee amendment?  Hearing none, the

19  question is the favorable adoption of the

20  committee amendment.  All those in favor, say

21  aye.

22               (Chorus of ayes.)

23  CHAIRMAN:  Those opposed, no.

24          The ayes have it.  The committee

Victoria's Transcription Services, Inc. 312-551-8818

1    amendment is adopted.

2                    Representative Hogan.

3         REPRESENTATIVE HOGAN:  Mr. Chairman, there's

4    been -- I have an amendment that is being typed

5    right now, and very basically is just something

6    that evidently the committee overlooked on Line 10

7    of Page 1.  It also says 12, and now we're going

8    to have to change that to 8, so that's essentially

9    what the amendment is and it is being typed.  I

10   would move the amendment.  It's basically a

11   technical thing.

12        CHAIRMAN:  The question is -- are they going

13   to flash that up on the screen?

14                    Representative Kramer, do you have

15   any --

16        REPRESENTATIVE KRAMER:  Yes, I would hope

17   that the committee would adopt this amendment.  I

18   think Representative Hogan has found a flaw in the

19   committee amendment.

20        CHAIRMAN:  Okay.  The first Hogan amendment

21   is on the screen.

22        UNIDENTIFIED SPEAKER:  I move.

23        CHAIRMAN:  Okay.  It's been moved.  Is there

24   any further discussion?  Hearing none, the

6

```
 1    question is the adoption of the first Hogan

 2    amendment.  All those in favor, say aye.

 3                   (Chorus of ayes.)

 4        CHAIRMAN:  Those opposed, no.

 5                   (Chorus of nos.)

 6             The ayes have it.  The Hogan amendment

 7    is adopted.

 8             Representative Kramer.

 9        REPRESENTATIVE KRAMER:  Mr. Chairman, at this

10    time, I would move the favorable adoption of House

11    Bill 1087 as amended.

12        CHAIRMAN:  Representative Smith.

13        REPRESENTATIVE SMITH:  Mr. Chairman, members

14    of the committee, as I understand Representative

15    Straley's explanation, if a merchant wants to, in

16    opening an account with a purchaser, provide that

17    an interest rate of up to 18 percent will accrue

18    on any bill that's not paid by a certain time,

19    they can do that by -- at the time of entering

20    into the account.

21        UNIDENTIFIED SPEAKER:  If the individual

22    agrees to that.

23        REPRESENTATIVE SMITH:  If the individual

24    agrees to that.  And I'm sure that -- well, in
```

7

1    most cases, like a Master Charge, for example,

2    it's 18 percent and that's something you contract

3    for.  And I'm sure that a storekeeper at the time

4    when someone comes in and desires to charge, you

5    know, charge something, can say, yes, I'll open an

6    account for you, your credit is good, but our

7    policy is on unpaid balances it is 12 percent or

8    15 percent or up to 18 percent.  That seems

9    understandable.

10          But I'm a little bit concerned about us

11   passing along here a 2 percent increase in the

12   interest rate about which purchasers will not be

13   aware.  As Representative Straley represented

14   something to me anyway that I wasn't aware of

15   before, and I'm just not sure that in these times

16   we really ought to be doing that.

17   CHAIRMAN:  Representative Kramer, then

18   Representative Bindelow (phonetic).

19   REPRESENTATIVE KRAMER:  Well, I think that

20   Representative Smith has really clarified the

21   issue for us.  As I indicated, I think this bill

22   is going to help small merchants, and that is what

23   it is exactly intended to do.

24          People from Master Charge or people

8

1    from Sears Roebuck or some of these people really

2    don't -- aren't going to be affected by this bill

3    one ioda because their written agreements that

4    they have with their customers clearly provide

5    that there is going to be a 1-1/2 percent

6    delinquency charge on unpaid accounts.

7        UNIDENTIFIED SPEAKER:  They do that now.

8        REPRESENTATIVE KRAMER:  What we're talking

9    about here are open accounts with small

10   merchants.  They're not really entering into

11   formal kind of credit arrangements that are

12   reduced to writing with their customers and

13   purchasers.

14       And I think that Representative Smith

15   is correct in that the times do have a certain

16   influence on this legislation, and I would think

17   that the economic times that we live in really

18   dictate towards the passage of this legislation

19   and for this reason.

20       I think we find a lot of small

21   businessmen, small merchants who are in a great

22   squeeze now because people do not pay their

23   accounts receivable.  They delay it as long as

24   possible.  And the reason they do this is because

1   that is the cheapest money they can find

2   anywhere.

3           They force the small creditor to take

4   this man to litigation in order to collect just

5   debts.  And it's really the small merchant that

6   I'm out to protect because I think without the

7   added stimulus from this bill, many of these small

8   merchants are not going to have their accounts

9   collected, whereas with legislation of this type,

10  which provides for a greater penalty in the case

11  of nonpayment, it does give the debtor more

12  encouragement to pay his bill in a timely

13  fashion.

14          So we're not helping Sears Roebuck

15  here, we're not helping Mobile Oil, and we're not

16  helping Master Charge.  We're helping your local

17  merchant who may sell something on an open

18  account, but is not sophisticated enough to reduce

19  his credit agreements to writing.

20          In addition, we also find in many

21  instances insurance companies, who are probably

22  more notorious at this than anyone else, who

23  refuse to pay just claims on the hypothesis that

24  they can delay that claim, make a man sue them to

1    collect, and then pay at the very last minute

2    because, again, they have the use of this money

3    for that period of time and then they only have to

4    pay a rate of interest at 6 percent, ultimately,

5    which is much cheaper than they can obtain money

6    from any other source.

7            So, really, this is a bill, in my view,

8    in favor of the little guy and puts the priority

9    on helping him get these debts of his that are

10   owed to him paid off so he can meet his own

11   obligations and stay in business.

12       CHAIRMAN:  Representative Bindelow.

13       REPRESENTATIVE BINDELOW:  Mr. Chairman and

14   members, unfortunately, this bill is getting

15   rapidly cast into a very controversial mode.  And

16   the mode, unfortunately, that's getting cast is

17   consumer versus business.  And given where the

18   votes are, I would suggest that's the wrong way to

19   cast the bill.

20           Might I point out that right now most

21   creditors will indicate, as Representative Straley

22   has said, that the interest rate will be 1 percent

23   a month or 1-1/2 percent a month.  And that isn't

24   statutorily the case, as he pointed out.  But,

1    unfortunately, that is generally the case, if

2    people agree to it.  This is just dealing with a

3    statutory limit.

4             But there is a whole other side to this

5    that hasn't even been talked about and that's

6    judgments in lawsuits.  Right now it is only 6

7    percent interest on your judgment and it is

8    cheaper -- in effect, you're drawing money.  It's

9    like not paying your income tax, you can turn

10    around and invest the money somewhere else and get

11    a greater return on it.

12             And I've had several small people who

13    got a judgment against a big guy and the big guy

14    can afford to appeal the case and the little guy

15    can't, and the 6 percent interest being all that

16    they lose on the judgment, it doesn't hurt them at

17    all to go on and carry the case all the way up.

18             If they had to pay something a little

19    more reasonable -- I would have gone for the 12

20    percent -- then there is going to be more

21    incentive on them to settle these judgments.

22    They're the ones who can afford the big time

23    lawyers and they're the ones who carry the things

24    up on appeal, and there is no incentive for them

12

1    to settle a case.

2          And I would suggest that there is a

3    whole -- this whole judicial ramification of this

4    thing is very important to the guy who tries to

5    see his rights in court.  And if you take this up

6    to -- if you leave it at 6 percent -- I can't even

7    hear myself talk, Mr. Chairman, there is so many

8    people talking around me.

9    CHAIRMAN:  Will everybody try to be quiet and

10    listen to the debate, please.

11    REPRESENTATIVE BINDELOW:  I would suggest

12    that you're going to work -- that it is a good

13    amendment and a good bill.  And I would suggest

14    that if you don't go along with it, and I can see

15    the temper of the debate going now, it is the

16    little guy that's going to get hurt, little guy

17    consumer and little guy businessman.  And I think

18    you'd be making a mistake because it is the big

19    guy who benefits, just as he does -- if you

20    remember, Representative Lyon had a bill several

21    weeks ago dealing with tax default rates.  It was

22    cheaper not to pay the tax because the penalty was

23    so low that you could maintain not paying it and

24    invest the money someplace else.  And it's so

13

1    true, it's the same case with this bill and I

2    would suggest that it is a good bill and we should

3    support it.

4         CHAIRMAN:  Representative Knox.

5         REPRESENTATIVE KNOX:  Representative

6    Bindelow, in regard to the matter of court

7    judgments, I would just like to point out, there

8    is a separate senate bill which has come over

9    here, which is in the finance committee.  We

10   haven't had a chance to get to it, but it deals

11   specifically with the interest rates on court

12   judgments.

13        REPRESENTATIVE BINDELOW:  But I'm saying this

14   bill also deals with the same subject.

15        UNIDENTIFIED SPEAKER:  That's in a different

16   section.

17        UNIDENTIFIED SPEAKER:  No.

18        CHAIRMAN:  Representative Gayon.

19        REPRESENTATIVE BINDELOW:  Mr. Chairman, there

20   is an amendment on the desk.

21        CHAIRMAN:  Will the -- we'll take a 30-second

22   recess.

23             (WHEREUPON, a recess was had.)

24        CHAIRMAN:  If there is no objection, I would

14

1    like to lay this bill over one bill, two bills.

2    Hearing no -- are there any objections to laying

3    this bill over two bills?  Hearing none, so done.

4    Representative -- the clerk will read the title to

5    House --

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

15

1    STATE OF ILLINOIS     )

2                          )

3    COUNTY OF C O O K     )

4         I, ANGELA M. MONTINI, a Certified Shorthand

5    Reporter, do hereby certify that said CD-ROM

6    recording of proceedings were reduced to writing

7    by means of shorthand and thereafter transcribed

8    to the best of my ability into typewritten form;

9    and that the foregoing is a true, correct, and

10   complete transcript of the said proceedings so

11   taken as aforesaid.

12        I further certify that I am not counsel for

13   nor in any way related to any of the parties, nor

14   am I in any way interested in the outcome thereof.

15        I further certify that this certificate

16   applies to the original signed IN BLUE and

17   certified transcripts only.  I assume no

18   responsibility for the accuracy of any reproduced

19   copies not made under my control or direction.

20        IN TESTIMONY WHEREOF I have hereunto set my

21   hand this 26th day of July 2006.

22

23

                 _____

24                ANGELA M. MONTINI, CSR

**Transcription Services, Inc.**

29 South LaSalle Street, Suite 200

Chicago, Illinois 60603-1502

877.551.8801

312.551.8818

312.443.1029

1

```
 1                    House Bill 1087

 2                    2nd Reading (Cont'd)

 3        CHAIRMAN:  Okay.  Now, we're back to House

 4   Bill --

 5        FEMALE SPEAKER:  Appropriations.

 6        CHAIRMAN:  To appropriations, rather.  We're

 7   back to House Bill 1087.  There is an amendment.

 8   The first Gayon (phonetic) Amendment.  Would the

 9   clerk read the Gayon Amendment, and if the staff

10   could flash it up on the screen.

11        CLERK:  Amendment and motion of

12   Representatives Gayon and Demolin (phonetic) and

13   then committee amendment as it appears in the

14   House Journal, April 29th, 1975, Page 1497, Line

15   36, strike, quote, 8, end quote, and insert,

16   quote, 6, end quote.

17             Line 39, strike, quote, 8, end quote,

18   and insert, quote, 6, end quote.

19             Line 42, strike, quote, 8, end quote,

20   insert, quote, 6, end quote.

21        CHAIRMAN:  Representative Gayon.

22        REPRESENTATIVE GAYON:  Well, that's not the

23   whole amendment.  Mr. Chairman, if we could have a

24   30-second recess.  I don't think the amendment on
```

2

1    the screen reflects the whole amendment I was

2    going to offer.

3        CHAIRMAN:  We'll take a 30-second recess.

4            (WHEREUPON, a recess was had.)

5        CHAIRMAN:  The committee will come back in

6    order.  Representative Gayon.

7        REPRESENTATIVE GAYON:  Mr. Chairman, members

8    of the committee, I'd move the first Gayon/Demolin

9    Amendment.  In order to accomplish what I wish to

10    do, I have to offer two amendments.  First, to

11    amend the committee amendment, and then to offer

12    the substantive part of my amendment off a

13    separate amendment.  Let me explain to you what

14    I'd like to do.

15            I believe the scope of this bill should

16    be strictly limited to the interest rates on

17    judgments.  And so what I intend to do if we lower

18    the existing rates of interest back from the

19    printed bill form of 12 percent to 6 percent,

20    which is the present law, I will then offer a

21    separate amendment to raise the interest rates on

22    judgment alone, which I sense there is support for

23    in the chamber, to raise that from 6 to 8 or 10 or

24    12 percent, whatever we can settle on as a

3

1    figure.  And so in that light, I would move this

2    amendment.

3        CHAIRMAN:  Representative Straley.

4        REPRESENTATIVE STRALEY:  I hope you vote

5    against the amendment.  The reason for or at least

6    one of the reasons for setting up a legal rate of

7    interest on unpaid accounts and other areas where

8    there is no designated rate is to attempt to make

9    certain that the person to whom the money is owed

10   can borrow money for about the same rate as he is

11   able to charge the person who owes it to him.

12            For instance, let's take the case of

13   the grocery -- the merchant who sells groceries.

14   If he sells groceries on credit and can borrow

15   money at 8 percent, but can only cause his bills

16   to draw interest at 6 percent, he's losing 2

17   percent a year.

18            The concept of the legal rate is to

19   attempt to balance out what the merchant has to

20   pay and enable him to charge the person who owes

21   him money a similar rate.  And for many years, as

22   you all know, 6 percent was regarded as the normal

23   rate that everybody charged everybody else for

24   debts of one kind or another.  That's not true

4

1    anymore.

2           The merchant simply can't get money at

3    6 percent.  And if you do what Representative

4    Gayon is suggesting and only allow the increase on

5    judgments and not on unpaid debts, you are asking

6    the merchant, who has charged money or charged

7    goods to his customer to subsidize him at the rate

8    of 2 percent a year, and I think that is unfair

9    and improper and ought not to happen.

10           Now, the people like Montgomery Ward

11   and J.C. Penney and the Bank Americard people and

12   all these are not affected by this bill because

13   you will find when you apply for credit from these

14   people, you have signed a consent to be charged at

15   the rate of 1-1/2 percent a month.

16           But when you charge your groceries or

17   your clothing or so on at your local merchant, who

18   is not sophisticated enough to require you to

19   charge this kind of special agreement, you are

20   asking him to subsidize you and that, I think, is

21   simply not right.

22       CHAIRMAN:  Representative Demolin, will you

23   yield to Representative Gayon?

24       REPRESENTATIVE DEMOLIN:  Very well.

5

1          CHAIRMAN:  Representative Gayon.

2          REPRESENTATIVE GAYON:  Mr. Chairman, members

3    of the committee, for my own personal reasons and

4    not those stated eloquently by Representative

5    Straley, I withdraw the amendment.

6               Representative Knox pointed out to me

7    that there is a senate bill pending before I

8    believe it is the finance committee dealing

9    directly with the section on interest in the

10   statutes relating to judgments that I'd like to

11   amend.  I feel I'm amending the wrong section and

12   so for that reason, I will withdraw the amendment.

13         CHAIRMAN:  Representative Demolin.

14         REPRESENTATIVE DEMOLIN:  Mr. Speaker, members

15   of the house, I'd like to speak just very

16   briefly.  What Representative Straley told you is

17   absolutely true.  In your vote on this bill,

18   however, you want to also remember that it isn't

19   just your friendly merchant, it is your friendly

20   doctor, it's your friendly dentist.  It's every

21   one of these people who your constituency may do

22   business with.

23              I don't necessarily quarrel that 8

24   percent is a more realistic figure, but I think

Victoria's Transcription Services, Inc.  312-551-8818

6

1    all of you ought to be aware of, really, where

2    you're allowing this interest to rise.

3        CHAIRMAN:   Representative Flannery

4    (phonetic).

5        REPRESENTATIVE FLANNERY:  Mr. Chairman,

6    members of the committee, speaking to this bill

7    from the standpoint of the consumer, I find it a

8    very good bill.  I think that if we, as consumers

9    who do pay without significant delay, have to pay

10   indirectly for the higher or rather for the delays

11   that would be caused by individuals delaying

12   payment as much as they could, that it really will

13   raise costs to the rest of us as consumers.

14        So what I'm saying is that we shouldn't

15   be subsidizing those individuals who delay payment

16   on their bills.  And from a consumer standpoint, I

17   think this is a good bill and one we ought to

18   pass.  In other words, we're not just helping the

19   small businessman, we're helping the consumer

20   also, at least all the consumers who do not wish

21   to get this kind of credit.

22        I think that people who do want credit

23   ought to pay for the credit on reasonable terms

24   and not expect the small businessman and all these

7

1    other customers to subsidize their credit at

2    extraordinarily low rates.  So I support the bill.

3         CHAIRMAN:  Representative Boley (phonetic).

4         REPRESENTATIVE BOLEY:  Mr. Chairman and

5    members, yeah, I just want you to remember when

6    you vote on this bill about all the people that

7    are unemployed today and what this might do to

8    them.

9         CHAIRMAN:  Representative Shoemaker

10   (phonetic).

11        REPRESENTATIVE SHOEMAKER:  Mr. Chairman and

12   members, the thing that is concerning me about

13   this is, I don't know any place you can borrow

14   money at 8 percent.  The last I looked at my

15   financial statements, it's about 9-1/4.  So what

16   you're doing, it's good for the consumer, but what

17   about a little business?  Now, he's going to

18   demand -- have to go cash, that's what you're

19   saying, because if you can't get your interest

20   back, then you're going to have to go cash, so you

21   better be a little careful with this.

22        CHAIRMAN:  Representative Kramer.

23        REPRESENTATIVE KRAMER:  Well, I think

24   Representative Shoemaker has made a very good

8

1    point.  8 percent is a compromised figure.

2    Really, we would be giving people more

3    encouragement to pay their bills in a timely

4    fashion so that, as Representative Flannery

5    pointed out, we wouldn't be prejudicing those

6    consumers who do pay their bills on time and make

7    them subsidize the nonpayers.  And, also, give our

8    small merchants a chance to collect the debts

9    owing to them so that they can pay their own

10   bills.

11          So the figure that really started out,

12   which was 12 percent, is probably a better rate at

13   which to achieve that goal, however, I think that

14   in the spirit of compromise, I accepted the 8

15   percent rate because I felt that from the tenor of

16   what people were telling me, that 12 percent was

17   just not palatable to them.

18          So I think that probably Representative

19   Shoemaker is correct, it doesn't go quite far

20   enough, but I think 8 percent is a lot preferable

21   than the 6 percent we have now.  And on that

22   basis, I think we ought to pass this bill and I

23   would move again for favorable adoption.

24          CHAIRMAN:  The question is the favorable

9

1    adoption of House Bill 1087.  Is there any further

2    discussion?  Okay.  The question is the adoption

3    of House Bill 1087 as amended.  All those in

4    favor, say aye.

5                     (Chorus of ayes.)

6         CHAIRMAN:  Those opposed, no.

7                     (Chorus of nos.)

8         CHAIRMAN:  The ayes have it.  House Bill 1087

9    is adopted.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

10

```
1    STATE OF ILLINOIS    )

2                         )

3    COUNTY OF C O O K    )

4         I, ANGELA M. MONTINI, a Certified Shorthand

5    Reporter, do hereby certify that said CD-ROM

6    recording of proceedings were reduced to writing

7    by means of shorthand and thereafter transcribed

8    to the best of my ability into typewritten form;

9    and that the foregoing is a true, correct, and

10   complete transcript of the said proceedings so

11   taken as aforesaid.

12        I further certify that I am not counsel for

13   nor in any way related to any of the parties, nor

14   am I in any way interested in the outcome thereof.

15        I further certify that this certificate

16   applies to the original signed IN BLUE and

17   certified transcripts only.  I assume no

18   responsibility for the accuracy of any reproduced

19   copies not made under my control or direction.

20        IN TESTIMONY WHEREOF I have hereunto set my

21   hand this 26th day of July, 2006

22

23                        _____

24                        ANGELA M. MONTINI, CSR
```