# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

### No. 90-cv-181

---

**MERILYN COOK, et al.,**

      **Plaintiffs,**

          **v.**

**ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,**

      **Defendants.**

---

### PLAINTIFFS' REPLY IN SUPPORT OF
### MOTION FOR ENTRY OF JUDGMENT

---

**Dated: March 19, 2007**

**TABLE OF CONTENTS**

**Page:**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

OVERVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   I.  Judgment May and Should Be Entered Under Plaintiffs' Proposed Plan . . . . . . . . . . . . . 3

      A.  The Abstract Potential for Allocational Disputes Does Not Prevent
          Entry of Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.  The Verdict Determined Compensatory Damages for the Damages Subclass . . . . . . 6

      C.  Allocation of Unclaimed Funds to Class Members Is Both Permissible and
          Appropriate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      D.  There Are No "Thorny Easement Issues" for This Court to Resolve . . . . . . . . . . . 12

      E.  Prejudgment Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

  II.  Defendants' "Other" Objections to Entry of Judgment Are Unmeritorious . . . . . . . . . 15

      A.  The Proposed Judgment Fixes Defendants' Damage Liability . . . . . . . . . . . . . . . . 15

      B.  The Proposed Judgment Is Not Otherwise "Deficient" . . . . . . . . . . . . . . . . . . . . . . 16

  III. The Court Should Not Deny Entry of Judgment in Favor of
      Interlocutory Appeals Under 28 U.S.C. § 1292(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

  IV. Plaintiffs' Statutory Right to Prejudgment Interest Is Not Defeated by the
      Jury's Consideration of the Consumer Price Index in Assessing Damages . . . . . . . . . 18

  V.  Plaintiffs Have a Statutory Right to Prejudgment Interest Under Colorado Law . . . . . . 27

      A.  Plaintiffs Are Entitled to Prejudgment Interest Under
          Colo. Rev. Stat. § 13-21-101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

      B.  In the Alternative, Plaintiffs Are Entitled to Prejudgment Interest
          Under Colo. Rev. Stat. § 5-12-102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

**TABLE OF CONTENTS (cont'd)**

**Page:**

      1.  Section 5-12-102 Is Not Restricted to Consumer Credit Transactions . . . . . . . . 28

      2.  Plaintiffs' Damages Are Not for "Future Loss" . . . . . . . . . . . . . . . . . . . . . . . . . 34

VI.  Prejudgment Interest Should Be Awarded from January 30, 1990 . . . . . . . . . . . . . . . 36

VII. Prejudgment Interest and Exemplary Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

    A.  Post-Verdict Prejudgment Interest on Exemplary Damages . . . . . . . . . . . . . . . . . . 37

    B.  Prejudgment Interest and the Exemplary Damages Cap . . . . . . . . . . . . . . . . . . . . . . 37

VIII. Under the Price-Anderson Act, Post-Judgment Interest Is
       Governed by Colorado Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

# TABLE OF AUTHORITIES

**Page:**

## Cases

*Albright v. Unum Life Ins. Co. of Am.*, 59 F.3d 1089 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . 4

*Allstate Ins. Co. v. Starke*, 797 P.2d 14 (Colo. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 38

*Ballow v. Phico Ins. Co.*, 878 P.2d 672 (Colo. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 36

*Bangert Bros. Constr. Co., Inc. v. Kiewit Western Co.*, 310 F.3d 1278 (10th Cir. 2002) . . . . . . 30

*Bartholomew v. CNG Producing Co.*, 832 F.2d 326 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . 40

*Bassett v. Eagle Telecomms., Inc.*, 750 P.2d 73 (Colo. App. 1987) . . . . . . . . . . . . . . . . . . . . . . 36

*Bennett v. Greeley Gas Co.*, 969 P.2d 754, 765-66 (Colo. App. 1998) . . . . . . . . . . . . . . . . . . . . 30

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Brewer v. S. Union Co.*, No. 83-F-1173, 1987 U.S. Dist. LEXIS 15940
    (D. Colo. Aug. 13, 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Burt v. Beautiful Savior Lutheran Church of Broomfield*,
    809 P.2d 1064 (Colo. App. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 36

*Chiu v. United States*, 948 F.2d 711 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Clinchfield Coal Co. v. Fed. Mine Safety & Health Review Comm'n*,
895 F.2d 773(D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Combined Commc'ns Corp. v. Pub. Serv. Co. of Colo.*,
    865 P.2d 893 (Colo. App. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 36

*Cook v. Rockwell Int'l Corp.*, 358 F. Supp. 2d 1003 (D. Colo. 2004) . . . . . . . . . . . . . . . . . . . . 12

*Cooper v. Peoples Bank & Trust Co.*, 725 P.2d 78 (Colo. App. 1986) . . . . . . . . . . . . . . . . . . . 36

*Covanta Onondaga Ltd. v. Onondaga County Res. Recovery Agency*,
    318 F.3d 392 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**TABLE OF AUTHORITIES (cont'd)**

Page:

**Cases (cont'd)**

*Crosby v. Kroeger*, 138 Colo. 55, 64-65, 330 P.2d 958 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Denver Publ'g Co. v. Bueno*, 54 P.3d 893 (Colo. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Erie R.R. v. Tompkins*, 304 U.S. 64 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Estate of Korf v. A.O. Smith Harvester Prods.*, 917 F.2d 480 (10th Cir. 1990) . . . . . . . . . 30, 36

*Evans v. Connecticut*, 967 F. Supp. 673 (D. Conn. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Fail v. Cmty. Hosp.*, 946 P.2d 573 (Colo. App. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 36

*Farmers Reservoir & Irrigation Co. v. Golden*, 113 P.3d 119 (Colo. 2005) . . . . . . . . . . . . . . . 29

*Fed. Deposit Ins. Co. v. Clark*, 768 F. Supp 1402 (D. Colo. 1989) . . . . . . . . . . . . . . . . . . . . . . . 30

*Fed. Ins. Co. v. Ferrellgas, Inc.*, 961 P.2d 511 (Colo. App. 1997) . . . . . . . . . . . . . . . . . . . . . . . 30

*G.E.C. Minerals, Inc. v. Harrison Western Corp.*, 781 P.2d 115 (Colo. App. 1989) . . . . . . . . . 30

*Grand County Custom Home Building, LLC v. Bell*, 148 P.3d 398 (Colo. App. 2006) . . . . 21, 38

*Harbert v. Healthcare Servs. Group, Inc.*, 391 F.3d 1140 (10th Cir. 2004) . . . . . . . . . . . . . . . . . 3

*Heid v. Destefano*, 586 P.2d 246 (Colo. App. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Houck ex rel. United States v. Folding Carton Admin. Comm.*,
     881 F.2d 494 (7th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Houser v. Eckhardt*, 532 P.2d 54 (Colo. App. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*In re Folding Carton Antitrust Litig.*, 744 F.2d 1252 (7th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . 11

*In re Folding Carton Antitrust Litig.*, 557 F. Supp. 1091 (N.D. Ill. 1983),
     *rev'd in part*, 744 F. 2d. 1252 (7th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Urban Broad. Corp.*, 401 F.3d 236 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

-iv-

**TABLE OF AUTHORITIES (cont'd)**

Page:

**Cases (cont'd)**

*Isbill Assocs., Inc. v. Denver*, 666 P.2d 1117 (Colo. App. 1983)  . . . . . . . . . . . . 28-29, 30, 31, 36

*James v. Coors Brewing Co.*, 73 F. Supp. 2d 1250 (D. Colo. 1999) . . . . . . . . . . . . . . . . . . . 37, 38

*Library of Congress v. Shaw*, 478 U.S. 310 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Lira v. Davis*, 832 P.2d 240 (Colo. 1992)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Logixx Automation, Inc. v. Lawrence Michels Family Trust*,
     56 P.3d 1224 (Colo. App. 2002)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Loughridge v. Chiles Power Supply Co., Inc.*, 431 F.3d 1268 (10th Cir. 2005)  . . . . . . . 30, 35, 36

*Lowell Staats Mining Co. v. Pioneer Uravan, Inc.*, 878 F.2d 1259 (10th Cir. 1989)  . . . . . . 19, 29

*Marcus v. Shalala*, 17 F.3d 1033 (7th Cir. 1994)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Masonry Masters, Inc. v. Nelson*, 105 F.3d 708 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . 20

*Masters v. Wilhelmina Model Agency*, 473 F.3d 423 (2d Cir. 2007)  . . . . . . . . . . . . . . . 9-10, 11

*Mesa Sand & Gravel Co. v. Landfill, Inc.*, 776 P.2d 362 (Colo. 1989) . . . . . . . . . . . 21, 28-29, 36

*Midway Motor Lodge v. Innkeepers' Telemanagement & Equip. Corp.*,
     54 F.3d 406 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Miller v. Carnation Co.*, 564 P.2d 127 (Colo. App. 1977)  . . . . . . . . . . . . . . . . . . . . . . . . . 27-28

*Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, Inc.*, 848 F.2d 613 (5th Cir. 1988)  . . . . . . . . 39

*Perales v. Casillas*, 950 F.2d 1066 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Perez v. United States*, 830 F.2d 54 (5th Cir. 1987)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Schnacker v. State Farm Mut. Auto. Ins. Co.*, 843 P.2d 102 (Colo. App. 1992) . . . . . . . . . . . . 30

*Seaward Constr. Co., Inc. v. Bradley*, 817 P.2d 971 (Colo. 1991)  . . . . . . . . . . . . . . . . . . . . . . 38

**TABLE OF AUTHORITIES (cont'd)**

**Page:**

**Cases (cont'd)**

*S.G. Deacon v. Am. Plant Food Corp.*, 782 P.2d 861 (Colo. App. 1989),
    *rev'd on other grounds*, 805 P.2d 1109 (Colo. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Slater v. Shell Oil Co.*, 58 Cal. App. 2d 864, 137 P.2d 713 (1943) . . . . . . . . . . . . . . . . . . . . . . 12

*Sorenson v. Mink*, 239 F.3d 1140 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Stansbury v. Comm'r*, 102 F.3d 1088 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 36

*Stevens v. Humana of Delaware, Inc.*, 832 P.2d 1076 (Colo. App. 1992) . . . . . . . . . . . . . . . . . 21

*Strey v. Hunt Int'l Res. Corp.*, 696 F.2d 87 (10th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Teilhaber Mfg. Co. v. Unarco Material Storage*, 791 P.2d 1164 (Colo. App. 1989) . . . . . . . . . 30

*Todd v. Bear Valley Village Apts.*, 980 P.2d 973 (Colo. 1999) . . . . . . . . . . . . . . . . . . . . 18-19, 20

*Transco Leasing Corp. v. United States*, 992 F.2d 552 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . 40

*Transpower Constructors v. Grand River Dam Auth.*, 905 F.2d 1413 (10th Cir. 1990) . . . . . . . 39

*United Int'l Holdings, Inc. v. The Wharf (Holdings) Ltd.*,
    210 F.3d 1207 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 30, 35, 36

*United States v. $30,006.25 in U.S. Currency*, 236 F.3d 610 (10th Cir. 2000) . . . . . . . . . . . . . 20

*United States v. City of Warren*, 138 F.3d 1083 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Van Gemert v. Boeing Co.*, 739 F.2d 730 (2d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Vento v. Colo. Nat'l Bank-Pueblo*, 907 P.2d 642 (Colo. App. 1995) . . . . . . . . . . . . . . . . . . . . . 36

*Voight v. Colorado Mountain Club*, 819 P.2d 1088 (Colo. App. 1991) . . . . . . . . . . . . . . . . . . . . 21

*Weitz Co., Inc. v. Mo-Kan Carpet Inc.*, 723 F.2d 1382 (8th Cir. 1983) . . . . . . . . . . . . . . . . . . . 39

*Westfield Dev. Co. v. Rifle Inv. Assocs.*, 786 P.2d 1112, 1122 (Colo. 1990) . . . . . . . . . . . . . . . 29

## TABLE OF AUTHORITIES (cont'd)

Page:

### Cases (cont'd)

*Wilson v. Southwest Airlines, Inc.*, 880 F.2d 807 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . 8-9

*Witt v. State Farm Mut. Auto. Ins. Co.*, 942 P.2d 1326 (Colo. App. 1997) . . . . . . . . . . . . . . . . 38

*Wood v. Hazelet*, 77 Colo. 442, 237 P. 151 (1925) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

### Constitutions, Statutes, and Rules

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

28 U.S.C. § 1292 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 18

28 U.S.C. § 1346 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

28 U.S.C. § 1961 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

42 U.S.C. § 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39-40

28 U.S.C. § 2042 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

28 U.S.C. § 2072 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

28 U.S.C. § 2412 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

42 U.S.C. § 2210 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

43 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

43 U.S.C. § 1333 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 54 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

Colo. Const. art. X, § 3(1)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**TABLE OF AUTHORITIES (cont'd)**

**Page:**

**Constitutions, Statutes, and Rules (cont'd)**

Colo. Rev. Stat. § 5-1-101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Colo. Rev. Stat. § 5-12-101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Colo. Rev. Stat. § 5-12-102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28-34

Colo. Rev. Stat. § 5-12-106 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Colo. Rev. Stat. § 13-21-101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 34

Colo. Rev. Stat. § 13-32-108 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Colo. Rev. Stat. § 38-35-109 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Colo. Rev. Stat. § 38-36-133 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

**Other Authorities**

*Restatement (Second) of Torts* § 930 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

9 Stephen W. Seifert, *Colorado Practice, Creditors' Remedies –*
    *Debtors' Relief* (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

18 Charles. A. Wright, Arthur R. Miller & Edward H. Cooper,
    *Federal Practice and Procedure: Jurisdiction* § 4405 (2d ed. 2002) . . . . . . . . . . . . . . . . . . 13

## INTRODUCTION

Plaintiffs respectfully submit this reply in further support of Plaintiffs' Motion for Entry of Judgment (May 4, 2006) [Ct. Rec. 2169].

## OVERVIEW

Defendants' opposition is noteworthy largely for the points it does not seriously contest: (1) entry of judgment, if available, would be the preferable route to appellate review, because the alternative of interlocutory review under 28 U.S.C. § 1292(b) will lead to piecemeal appeals more likely to prolong the litigation than to expedite its ultimate resolution; (2) the claim submitted to the jury, for prospective invasions under *Restatement (Second) of Torts* § 930, constitutes a distinct "claim for relief" within the meaning of Fed. R. Civ. P. 54(b), notwithstanding the continuing pendency of other claims in the litigation; and (3) leaving any other impediments to finality to one side, there is no "just reason for delay" in the entry of final judgment.

Nor, for all their inventiveness, do defendants ultimately raise any valid quarrel with finality. That defendants can conjure up citation-free proposals about creative alternative allocational regimes (e.g., allocation based on ratios of soil to concrete and glass)[1] does not alter the fact that plaintiffs' plan is both workable and supported by the verdict. Likewise, defendants' scheme for convoluted "easement" proceedings, which defendants *concede* would be utterly unsupported by precedent,[2] may be an impressive testament to the irrepressibility of the human imagination. But it is nothing more. The law neither requires nor permits the Court to determine the preclusive effects of its own judgment.

---

[1] *See* Defs.' Mem. at 7.

[2] *See* Defs.' Mem. at 14 ("simply no precedent").

If defendants' opposition proves anything, it proves the wisdom of entering judgment now rather than later.  Rule 54(b) *does* require that the legal and factual issues raised by a distinct "claim for relief" be resolved with sufficient finality to permit appellate review of the judgment.  What the finality standard does *not* require is that all contested legal and factual issues be resolved in a manner so *undeniably* correct as to forestall all possibility of further lawyerly debate over the outcome – a standard that would never be satisfied in this litigation, if it could be satisfied in any.  For further lawyerly debate on the merits, the appellate process supplies an appropriate outlet.

Defendants also raise various objections to plaintiffs' proposed form of judgment.  Some of those objections are simply unmeritorious, as plaintiffs will explain in this reply.  Others, whether meritorious or not, can be met, in whole or in part, through modest changes to the text of the proposed judgment.  Plaintiffs attach a revised proposed judgment (Ex. A) and a revised proposed plan of allocation (Ex. B) incorporating adjustments responsive to some of defendants' objections.

The revised proposed plan of allocation is unchanged, except to clarify (in paragraphs 10, 11, and 13) that the damages will be allocated among members of the Damages Subclass.  The revised proposed form of judgment:

- clarifies that judgment is entered for only the Damages Subclass (¶¶ 2, 3);

- now provides that judgment will be entered only against defendants Dow and Rockwell, but that execution may be levied against The Boeing Company as though against Rockwell (¶ 4);

- now sets forth the compensatory damages owed by each defendant as a sum certain, inclusive of prejudgment interest (¶¶ 6, 7); and

- now sets forth as a sum certain the total compensatory damages, inclusive of prejudgment interest, that may be *collected* under the judgment (¶ 8).

The revised proposed judgment also incorporates a few technical changes not related to defendants' objections. Specifically: (1) the description of the claims in paragraph 5 is conformed to the description given in the judgment's opening paragraph; (2) an explicit recital has been added (*see* ¶ 11) deferring plaintiffs' motion for attorneys' fees, which would otherwise fall due fourteen days from entry of judgment under Fed. R. Civ. P. 54(d)(2)(B); and (3) allowance has been made for the possibility that appropriate assurances from the United States Department of Energy might eliminate the need for defendants to obtain potentially costly supersedeas bonds, at taxpayer expense, on the private market (*see* ¶¶ 13, 14).

## ARGUMENT

For ease of reference, this memorandum has been structured so that the headings and arguments correspond to those in defendants' opposition.

## I.   Judgment May and Should Be Entered Under Plaintiffs' Proposed Plan

### A.   The Abstract Potential for Allocational Disputes Does Not Prevent Entry of Judgment

Defendants argue that no judgment may be entered because the verdict (defendants say) determined only "average damages for the subclass as a whole." *See* Defs.' Mem. at 4-11.

If defendants mean to suggest that the verdict did not determine the *actual* damages owed to the "subclass as a whole," defendants are incorrect. The verdict fixed the total compensatory damages suffered by the collective membership of the Damages Subclass at $176,850,340. Defendants' reliance on such decisions as *Harbert* and *Albright* is therefore misplaced. In *Harbert v. Healthcare Servs. Group, Inc.*, 391 F.3d 1140 (10th Cir. 2004), the Tenth Circuit held only that an order was interlocutory, not final, where it left the amount of overall damages undetermined. *Id.*

at 1145-46.  A similar situation was presented in *Albright v. Unum Life Ins. Co. of Am.*, 59 F.3d 1089 (10th Cir. 1995).  *See id.* at 1092.[3]

To the extent defendants' argument also rests on a contention that the hypothetical potential for *allocational* disputes prevents entry of judgment, defendants are likewise mistaken.

There is no merit, first of all, to defendants' contention that the Court will be required to preside over further proceedings in which *defendants* contest the portion of damages allocable to each individual subclass member.  *See* Defs.' Mem. at 5.  The damages owed by Dow and Rockwell to the Damages Subclass for prospective invasions have been finally determined.  "How these damages are allocated to individual Class members will not require that these determinations be revisited."  Mem. Op. Regarding Jury Instructions, at 64 (Dec. 7, 2006) (the "Jury Instruction Opinion") [Ct. Rec. 2205].  Defendants therefore have no stake in the allocational process – which explains why defendants can cite *no* authority for the proposition that they enjoy any right to participate in it.  Defendants' aggregate damage liability on the relevant claim having been finally determined, allocation of the common fund is between the Court and the class.

Nor is finality impaired by the possibility that some class members may have "different views" on allocation.  *See* Defs.' Mem. at 6-7.  That possibility is inherent in any class award.  The plan proposed by plaintiffs is supported by the jury's findings on diminution and represents a practicable approach to the allocational process.

---

[3] Defendants' attempts to distinguish *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980), are also unavailing.  The judgment in *Boeing* did not calculate the damages allocable to individual class members, as defendants' brief could be read to suggest (*see* Defs.' Mem. at 8); it "fixed" them only in the sense of giving a formula for their allocation.  *See Boeing*, 444 U.S. at 475-76 & n.1.  That the pendency of a dispute over attorneys' fees was held not to deprive the judgment in *Boeing* of finality, *see* Defs.' Mem. at 8-9, merely underscores that the judgment at issue in *Boeing* was indeed final.

Defendants attack the plan, nevertheless, on several grounds.  Defendants object, first of all, that assessed valuation may not reflect the individual properties' "true" value.  *Id.* at 8.  The plan, however, would employ assessment data as a benchmark in determining each property's *relative* share of the jury's diminution award among class properties within the same category.  The data are suitable for that purpose, because (as defendants have not disputed) they reflect assessments by a single taxing authority, operating under a state constitutional command to levy property taxes in uniform fashion.  *See* Colo. Const. art. X, § 3(1)(a).

Defendants also argue that plaintiffs' plan is unworkable because it simply "assumes" that the necessary data exist, *see* Defs.' Mem. at 8, but plaintiffs did not in fact rest their proposal on mere assumptions.  Plaintiffs investigated.  Mr. Hunsperger's declaration attests: "Based on my general professional familiarity with Jefferson County property records, as well as specific consultations with Jefferson County officials undertaken in connection with this declaration, I can report that such records are in fact maintained by Jefferson County, do in fact exist for all relevant time periods, and are suitable for the purposes set forth in the Plan."  *See* Hunsperger Dec. ¶ 4, at 2 (attached as Ex. G to plaintiffs' opening memorandum).  After eight months to conduct investigations of their own, defendants have offered nothing to rebut Mr. Hunsperger's declaration on this or any other subject.  Nor could they.[4]

Defendants say plaintiffs' proposed plan of allocation "say[s] nothing about the allocation of punitive damages."  *See* Defs.' Mem. at 7.  Defendants are incorrect.  To confirm as much, the

---

[4] A simple phone call to the relevant officials would have confirmed for defendants that Jefferson County maintains property records going back to the nineteenth century and possesses all the relevant data.

*Plaintiffs' Reply in Support of Motion for Entry of Judgment – Page 5*

Court need look no further than paragraph 1(a) of plaintiffs' plan, which explicitly includes exemplary damages in the overall fund to be allocated under the detailed terms of the plan.

Finally, defendants suggest, without explicitly arguing, that selection of a date or other temporal reference point for allocational computations might be a necessary ingredient of finality. *See* Defs.' Mem. at 8. If that is so,[5] then the year 1990 (the time by which the jury found that the right to maintain an action for prospective invasions accrued) would represent a choice consistent with the verdict. *See* Jury Verdict Form, at 28-29 (Feb. 14, 2006) (responses to questions No. 1 & No. 3 under ¶ H) [Ct. Rec. 2117]; *see also* Pls.' Mem. of Law in Opp'n to Defs.' Mot. for New Trial or Remittitur, at 38-39 (Mar. 19, 2007) (various reasons favoring 1990) ("Plaintiffs' Rule 59 Brief"); *cf.* Defs.' Mem. at 8 ("say, 1990").[6]

### B.    The Verdict Determined Compensatory Damages for the Damages Subclass

Under the Court's Order on Scheduling and Jury Instruction Issues (May 17, 2005) (the "May 2005 Order") [Ct. Rec. 1338], the only damages to be determined by the jury in the class trial were those of the Damages Subclass. *Id.* at 15-16. There is therefore no "portion" of the jury's award to "allocate" to other class members. Defs.' Mem. at 9. If what defendants mean is that some "portion" of the jury's award should be "allocated" to defendants themselves, the proper place for defendants to press that argument would be in their pending motion for new trial or remittitur.

---

[5] This is ultimately an issue for the Tenth Circuit to consider in its assessment of appellate jurisdiction. Plaintiffs have discovered no authority that would supply definitive guidance on this precise question.

[6] In another portion of their brief, defendants also raise the issue of ascertaining which class members belong to the Damages Subclass. *See* Defs.' Mem. at 11. That problem is ministerial. As defendants do not deny, dates of ownership can be ascertained from review of public property records. *See* Hunsperger Dec. ¶ 4, at 2 (Ex. G to plaintiffs' opening memorandum).

Plaintiffs respectfully refer the Court to the discussion of this point in section II(B)(1) of plaintiffs' Rule 59 Brief.

### C.    Allocation of Unclaimed Funds to Class Members Is Both Permissible and Appropriate

Defendants raise two arguments against plaintiffs' proposal to distribute unclaimed funds to subclass members on a pro rata basis.  Neither argument is sound.  Defendants' proposal that any unclaimed funds be returned to *them* is doubly unsound.

Defendants first object (*see* Defs.' Mem. at 12) that distributing unclaimed funds to class members would somehow violate the Rules Enabling Act's mandate that the *Federal Rules of Civil Procedure* not "abridge, enlarge, or modify any substantive right."  28 U.S.C. § 2072(b).  Plainly, the proposed disposition of unclaimed funds would not affect *defendants'* substantive rights in any way, because it would not operate to enlarge or modify defendants' liability for the damages assessed by the jury.  Defendants suggest, however, that *class members'* substantive rights would be impermissibly "enlarged" under plaintiffs' proposal, because class members would "receive damages to which they are not substantively entitled."  *See* Defs.' Mem. at 12.

Defendants leave it wholly mysterious why they believe this to be so – except to offer the homespun observation that class members are not "dinner guests" to whom "seconds" or "an extra helping" might be owed.  *Id.*  One point wholly overlooked in defendants' prandial metaphor is that each class member's *first* "helping" under the proposed plan would fall short of making the class member whole, because the initial allocation would be net of attorneys' fees, expenses, and administrative costs.  Only insofar as unclaimed funds exceeded those deductions would any arguable excess arise.  Defendants have voiced no grounds to believe that such a scenario might occur.  Even if it did, distributing the excess to class members on a pro rata basis would no more

*Plaintiffs' Reply in Support of Motion for Entry of Judgment – Page 7*

violate the Rules Enabling Act than would the alternatives – e.g., a *cy pres* distribution to some charitable endeavor.[7]

The cases cited by defendants do not warrant a contrary conclusion.  If anything, they support plaintiffs' position.  In *Wilson v. Southwest Airlines, Inc.*, 880 F.2d 807 (5th Cir. 1989), the issue was whether the district court abused its discretion in awarding unclaimed funds from a Title VII class action settlement to a charitable organization, rather than giving effect to a bargain between defendants and *class counsel* under which they proposed to divide the unclaimed funds between themselves.  The Fifth Circuit held that no party had a *legal* right to the unclaimed funds, but was able to reach that conclusion as to plaintiff class members only because all class members filing claims had already received "the *full payment due them*."  *Id.* at 811 (emphasis added).  A different situation is presented here – at least to the extent that fees, expenses, and costs charged to the common fund are likely to exceed any unclaimed amount (as defendants have not contested).[8]

Even in *Wilson*, meanwhile, the absence of any party with a *legal right* to the funds did not end the inquiry.  It was rather the inquiry's point of departure.  It remained to assess the respective

---

[7] *Any* distribution of an excess, of course, would necessarily "expand" *someone's* "rights" from what they would be in the absence of the distribution, in at least the weak sense that by virtue of the distribution, some "right" to the proceeds might be said to accrue to the beneficiary.  Yet defendants appear untroubled, for example, by any concern that a distribution of unclaimed funds to *them* would violate the Rules Enabling Act.  The truth is that the principles guiding the Court's discretion in this area ultimately spring from the Court's general equitable authority over the administration and disposition of the common fund.  *See, e.g.*, *In re Folding Carton Antitrust Litig.*, 557 F. Supp. 1091, 1104-05 (N.D. Ill. 1983), *rev'd in part on other grounds*, 744 F. 2d. 1252 (7th Cir. 1984).  That Fed. R. Civ. P. 23 played a procedural role in the litigation *giving rise* to that common fund (as did a host of other procedural rules) does nothing to "abridge, enlarge, or modify" any "substantive right" implicated by those equitable principles.

[8] This point was raised in plaintiffs' opening brief, at page 25.  Defendants' response does not challenge it or otherwise address it.

*Plaintiffs' Reply in Support of Motion for Entry of Judgment – Page 8*

parties' *equitable* claims to the funds in question. The charity itself obviously had no direct equitable interest in them. From its standpoint, the district court's *cy pres* award had been an unearned gratuity. The *cy pres* award might still have been justified indirectly, by reference to its function in serving the interests of nonclaiming class members, but the Fifth Circuit found that the equitable interests of nonclaiming class members were "not impressive" in light of the facts and posture of the case. *Id.* at 812-13. The defendants in *Wilson* had some equitable claim to the funds, because they had paid them originally, and because the purposes of Title VII, which are compensatory rather than punitive, had already been served through full satisfaction of all claims filed. *Id.* at 814-15. Because the defendants came to the court with "clean hands," *id.* at 815, and because plaintiffs' counsel also had some equitable claim in light of uncompensated work performed, *id.* at 815-16, the Fifth Circuit held that the district court should have honored their settlement of the dispute between them, under which they had agreed to split the money among themselves. *Id.* at 816.

To the extent any funds may remain available after full compensation of all class members submitting claims in *this* case, the Court is being called upon to weigh the equities itself in the first instance – not to assess, as in *Wilson*, whether an agreement between all equitably interested parties falls within the broad range of acceptability. In *this* case, moreover, the equities weigh very differently.[9] The proposed distribution is to class members, not class counsel as in *Wilson*, and the

---

[9] The Second Circuit's decision in *Van Gemert v. Boeing Co.*, 739 F.2d 730 (2d Cir. 1984), on which defendants rely, is distinguishable on these same grounds. *See id.* at 736-38 (lower court's balancing of equities did not abuse its discretion). Any contention that the Second Circuit's *Van Gemert* opinion adopted a *per se* rule against distribution of unclaimed funds to class members would be defeated by the same court's recent decision in *Masters v. Wilhelmina Model Agency*, 473 F.3d 423, 434-36 (2d Cir. 2007). Indeed,

(continued...)

full compensation of class members has yet to be accomplished.  Indeed, it may never be, but the plan under consideration is structured precisely with the goal of full compensation in view. Defendants, meanwhile, will have little or no equitable claim on the fund by virtue of having made any real economic contribution to it, because their indemnitor bears ultimate financial responsibility for satisfaction of the judgment (at least so far as compensatory damages are concerned).  Neither defendant comes to this Court, finally, with the "clean hands" that the Fifth Circuit found in *Wilson*. Rockwell committed environmental felonies at the site, and the jury has also assessed exemplary damages, having found beyond reasonable doubt that both defendants engaged in willful and wanton misconduct.  Those exemplary damages constitute a substantial portion of the award, and they have been assessed pursuant to a state statute intended to serve punitive and deterrent purposes, above and beyond the deterrent purpose that compensatory damages in tort are also designed to serve under Colorado law.  *See Denver Publ'g Co. v. Bueno*, 54 P.3d 893, 897-98 (Colo. 2002) ("Torts are designed to encourage socially beneficial conduct and deter wrongful conduct.").

Defendants, in sum, have no current legal stake in unclaimed funds or the allocational process, and no colorable equitable claim to be given one.  Indeed, defendants have conspicuously failed even to *attempt* an argument that the equities militate in their favor.  *If* any funds remained after *full* compensation of all class members filing claims, and *if* those funds were not to be distributed to class members, the appropriate alternative would *not* be to distribute them to defendants.  A *cy pres* award to some suitable nonprofit enterprise would be preferable to "returning" any funds to these defendants.  Even escheat to the federal treasury under 28 U.S.C. §

---

[9](...continued)
   the *Wilhelmina* opinion strongly supports the view that in distribution of excess funds,
   the interests of the class members are the first place a court should look.  *Id.* at 436.

2042,[10] or to the Colorado treasury under Colo. Rev. Stat. §§ 13-32-108 to -111, would be preferable to "returning" any compensatory or exemplary damages to Dow or Rockwell.  For a fuller discussion of the range of alternatives available, see *Brewer v. S. Union Co.*, No. 83-F-1173, 1987 U.S. Dist. LEXIS 15940 (D. Colo. Aug. 13, 1987) (Finesilver, C.J.).

Other authorities have meanwhile recognized the propriety of distributing unclaimed funds to class members under circumstances comparable to these.  Those authorities include a major Second Circuit decision on the issue, handed down after plaintiffs' opening memorandum was filed (and before defendants' opposition was submitted).  *See Masters v. Wilhelmina Model Agency*, 473 F.3d at 434-36; *see also, e.g., Brewer*, 1987 U.S. Dist. LEXIS 15940, at *8-9.

Defendants' second argument (*see* Defs.' Mem. at 12-13) is that it would be premature to provide for disposition of any unclaimed funds.  To the extent defendants' prematurity argument rests on their contention that "easement" issues must first be addressed, their argument is spurious, because no "easement" issues are before the Court to resolve, as plaintiffs explain in the next section of this brief.  To the extent defendants ask the Court to stay its hand on purely prudential grounds, plaintiffs note that no known authority – including the Tenth Circuit's decision in *Strey v. Hunt Int'l Res. Corp*., 696 F.2d 87 (10th Cir. 1982) – conditions finality on adoption of a complete, final, detailed, and irrevocable plan for disbursement of unclaimed funds.  It is enough, under *Strey*, if the Court states the principles by which it expects to be guided, leaving their  practical application to

---

[10] *See In re Folding Carton Antitrust Litig.*, 744 F.2d 1252, 1255-56 (7th Cir. 1984); *cf. Houck ex rel. United States v. Folding Carton Admin. Comm.*, 881 F.2d 494 (7th Cir. 1989) (subsequent appellate proceedings following resistance to mandate from first *In re Folding Carton* appeal).

a time when the process has reached a more mature stage.  *Id.* at 88 ("*principles* that will *guide* the disposition of unclaimed funds") (emphasis added).

### D.      There Are No "Thorny Easement Issues" for This Court to Resolve

Defendants suggest that before judgment may be entered, the Court must first embark on a long and convoluted "easement" process, in which the Court issues advisory opinions on the scope of any "easement" associated with the judgment, notifies class members so that they may decide whether to "consent" to any such "easement," and oversees the recording of such "easements."

Defendants appear to be right about one point.  So far as plaintiffs can tell, there is "simply no precedent" for the proceedings defendants envisage.  *See* Defs.' Mem. at 14.  No known authority supports defendants' position that such proceedings are required, or even permissible, in this case.

It is doubtful, first of all, that a section 930 judgment should actually be understood as creating any "easement" in the ordinary sense.  Comment b to section 930 of the *Restatement (Second) of Torts* speaks more equivocally of an "easement or privilege."  Plaintiffs' research discloses no occasion on which any court, in any jurisdiction, has recognized an "easement" arising from a section 930 judgment,[11] and other authorities have suggested that the effect of a judgment for diminution in value in barring later claims arising from the same invasions is more appropriately conceptualized under broad principles of claim and issue preclusion.  *See Slater v. Shell Oil Co.*, 58 Cal. App. 2d 864, 872, 137 P.2d 713, 716 (1943).

─────────────

[11] This Court did take note of comment b's "easement" language in *Cook v. Rockwell Int'l Corp.*, 358 F. Supp. 2d 1003, 1013-14 (D. Colo. 2004), but not in a context calling upon the Court to reach an ultimate legal characterization of the "easement or privilege" contemplated in comment b.  No party before the Court, for example, was actually asserting any "easement or privilege" arising from a section 930 judgment.

*Plaintiffs' Reply in Support of Motion for Entry of Judgment – Page 12*

However comment b's "easement or privilege" may be categorized or conceived, one thing is certain.  According to the authors of the *Restatement*, any "easement or privilege" contemplated in comment b is conferred *by operation* of the judgment, upon its *satisfaction* – not by virtue of any separate, post-verdict transaction in which the plaintiff "consents" to whatever inherent effects the judgment may already have.  Under settled law, the effect of this Court's judgment in precluding subsequent claims cannot be decided within the confines of this case.  That issue must be litigated in any subsequent action where the judgment in this case is asserted as a defense, and where the parties against whose claims the defense is asserted will have an opportunity to be heard.[12]  It will be up to a future court, in any such action, to resolve any issues about the scope and extent of any preclusive effects associated with the judgment in this case under Colorado law, under whatever facts such future claims may present.

As for defendants' arguments about recording (*see* Defs.' Mem. at 17): Defendants assume, rather than demonstrate, that their rights under the judgment in this case would represent the kind of interest in land that must be recorded, lest it be denied effect.  If that assumption is incorrect, then defendants' arguments collapse under their own weight.[13]  If it is correct, then two further

---

[12] *E.g.*, *In re Urban Broad. Corp.*, 401 F.3d 236, 245 (4th Cir. 2005); *Covanta Onondaga Ltd. v. Onondaga County Res. Recovery Agency*, 318 F.3d 392, 397-98 (2d Cir. 2003); *GE v. Deutz AG*, 270 F.3d 144, 158 (3d Cir. 2001); *Midway Motor Lodge v. Innkeepers' Telemanagement & Equip. Corp.*, 54 F.3d 406, 409 (7th Cir. 1995); Fed. R. Civ. P. 23, 1966 advisory committee notes ("[T]he court . . . cannot predetermine the res judicata effect of the judgment; this can be tested only in a subsequent action."); 18 Charles. A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4405 (2d ed. 2002).

[13] Although the issue cannot be resolved here, there are grounds (in addition to those already noted) on which defendants' assumption might be questioned.  *See, e.g.*, Colo. Rev. Stat. § 38-36-133(1)(e) (exception for "rights, if any, arising or existing under the

(continued...)

observations are in order.  First, according to comment b, any "easement or privilege" accrues only once judgment is *satisfied* – as cannot occur prior to judgment's *entry*.  Until judgment is entered and satisfied, that is, comment b indicates that no consummated "easement or privilege" will exist to record.  This, by itself, would dispose of defendants' contention that anything about the recording process poses some impediment to finality.

Second, although defendants blithely suggest that it is somehow up to plaintiffs or the Court to accomplish, superintend, and/or subsidize any recording, it is defendants who would invoke, in any future litigation, whatever "easement or privilege" may be conferred by the judgment in this case.  It is defendants, therefore, who must decide whether failure to record would place later recognition of any "easement or privilege" at risk, and whether the value of any "easement or privilege" outweighs the risks,[14] costs, and burdens of recording it themselves.

E.    **Prejudgment Interest**

Plaintiffs agree that prejudgment interest should be addressed in connection with entry of final judgment.  Once the Court has ruled on the governing interest rate, and also on the damage issues presented in defendants' various post-trial motions, and once the date of judgment is also known, the amount of prejudgment interest can be determined through simple arithmetic.  It may be appropriate, under this approach, for the judgment to list the total amount of prejudgment interest separately from other components of plaintiffs' damages, and to direct that up to 90% of the prejudgment interest awarded be recoverable from Dow, and 70% from Rockwell.  Alternatively,

---

[13](...continued)
Constitution or laws of the United States").

[14] *See, e.g.*, Colo. Rev. Stat. § 38-35-109(3).

the Court may wish to compute the sum total of all non-exemplary damages,[15] inclusive of prejudgment interest, and to direct in the judgment that plaintiffs may recover up to the same respective percentages of that total from each defendant (subject, again, to the proviso that plaintiffs' overall recovery not exceed 100% of the total).[16]

## II.   Defendants' "Other" Objections to Entry of Judgment Are Unmeritorious[17]

Section II of defendants' brief (at pages 19-24) sets forth various miscellaneous objections to plaintiffs' proposed judgment, to which plaintiffs respond below.

### A.   The Proposed Judgment Fixes Defendants' Damage Liability

The finality of judgments is governed by 28 U.S.C. § 1291 and other applicable federal law – not by defendants' interpretation of Colorado's proration statute.  As explained at greater length in section I(B) of Plaintiffs' Rule 59 Brief, the jury's verdict fixes the sums owed by each respective defendant.  That the verdict allows for some overlapping damage liability for Dow and Rockwell does not, in plaintiffs' view, constitute a valid ground for any substantive challenge to the verdict. Even if the Court of Appeals were later to hold that it did, the overlapping liability would no more represent an impediment to *finality* than in cases where judgment is entered on a verdict holding multiple defendants jointly and severally liable for the entire award – a routine occurrence in the federal courts, and one that has never previously been thought to deprive judgments of finality.

---

[15] *See* section VII(A) of this reply.

[16] Plaintiffs' revised proposed form of judgment (Ex. A) adopts this latter approach.

[17] Plaintiffs have attempted to craft a succinct heading for this section that does not oversimplify.  It should be said, however, that three of the objections set forth in section II of defendants' brief do have some degree of merit – at least as regards the form and content of the judgment (as opposed to issues of finality).  Plaintiffs explain below, as each relevant objection is addressed.

Plaintiffs' revised proposed form of judgment (Ex. A) has been modified to clarify the total monetary sums owed by each defendant, as well as the total amount that plaintiffs may collect.

**B.      The Proposed Judgment Is Not Otherwise "Deficient"**

In section II(B) of defendants' brief (at pages 22-24), defendants raise various objections to specific numbered paragraphs in plaintiffs' proposed form of judgment.  Most of those objections simply reiterate points addressed elsewhere in the parties' various post-trial submissions.  Three of defendants' objections, however, do have some degree of merit.  Plaintiffs specifically address those three objections below.

**Paragraph 2:** Defendants are correct that the *damages* awarded in the class trial were for the Damages Subclass only.  Because no damages were awarded to other class members, no claim by those other class members has been finally resolved.  Judgment should be entered on behalf of the Damages Subclass only.  Plaintiffs' revised proposed form of judgment (Ex. A) and revised proposed plan of allocation (Ex. B) have been adjusted accordingly.

**Paragraph 4:** At the time plaintiffs' motion for entry of judgment was filed, the issue of Rockwell's successor(s) in interest remained entirely unresolved.  In light of the Boeing Company's subsequent representation and agreement (through counsel representing defendants as well as Boeing) that Boeing will be answerable for any judgment in this case to the same extent as Rockwell,[18] plaintiffs have no current objection to entry of judgment against Rockwell International Corporation – so long as the judgment itself also makes it clear that plaintiffs may execute against Boeing as though against Rockwell, without the need for any further litigation or judicial ruling on

---

[18] *See* Joint Submission Regarding Pls.' Mot. to Amend Caption or Compl. or in the Alternative to Substitute Rockwell's Successor Cos. as Parties of Interest (June 23, 2006) [Ct. Rec. 2193]; *id.* Ex. A (Statement/Description of Successor Interest).

the point.  Plaintiffs' revised proposed form of judgment (Ex. A) has been adjusted accordingly.

**Paragraph 15:** Having reviewed *Fail v. Cmty. Hosp.*, 946 P.2d 573 (Colo. App. 1997), plaintiffs acknowledge that the Court of Appeals' opinion in that case is of questionable consistency with plaintiffs' request that the Court award post-verdict prejudgment interest on exemplary damages.  Plaintiffs adhere to that request, so as to preserve their right to post-verdict prejudgment interest on the exemplary damages in light of any later guidance that may emerge in subsequent decisions from the Colorado courts.  Plaintiffs do recognize, however, that the Court may feel disposed to deny the request, in light of *Fail*, under the current state of reported decisional law. Plaintiffs have therefore deleted the provision for prejudgment interest on exemplary damages in plaintiffs' revised proposed form of judgment (Ex. A).

**Paragraph 20:** Plaintiffs do not believe this objection has merit, but respond because the objection is not addressed elsewhere in plaintiffs' submissions.  Appointment of class counsel as escrow agent is routine, and defendants have offered no basis for departing from that routine here. One normal function of the escrow agent is to see to the payment of taxes on income accruing to the fund on a post-judgment basis in accordance with Treasury Regulation § 1.468B-2 and other applicable provisions of the Internal Revenue Code.  Plaintiffs' counsel, and accounting firms with whom plaintiffs' counsel routinely work in such matters, have substantial experience in this area. Should the Court nevertheless prefer to appoint some other suitable and neutral candidate, plaintiffs do not object.

### III.    The Court Should Not Deny Entry of Judgment in Favor of Interlocutory Appeals Under 28 U.S.C. § 1292(b)

Entry of judgment should not be denied in favor of interlocutory appeals under 28 U.S.C. § 1292(b).  This point is already addressed in plaintiffs' opening memorandum, and also in plaintiffs' response to Defendants' Motion for Certification of Interlocutory Appeal (Jan. 22, 2007) [Ct. Rec. 2222].

### IV.    Plaintiffs' Statutory Right to Prejudgment Interest Is Not Defeated by the Jury's Consideration of the Consumer Price Index in Assessing Damages

Defendants argue (*see* Defs.' Mem. at 25-28) that no prejudgment interest may be awarded at all, because the responses on the verdict form indicate that the jury, in awarding damages, relied on plaintiffs' evidence concerning the Consumer Price Index ("CPI") to include an inflation adjustment.  *See* Jury Verdict Form, at 15 (answer to question No. 13 under ¶ E); *id.* at 24 (answer to question No. 13 under ¶ F).[19]

Defendants' treatment of this point contains no citation, analysis, or discussion of the Colorado statutes providing for prejudgment interest.  Indeed, defendants cite *no* apposite Colorado authorities at all, save for cases tending to contradict their own position.[20]

_____

[19] There is no merit in defendants' contention that "plaintiffs themselves recognized that [a CPI-inclusive award] would be duplicative of prejudgment interest."  *See* Defs.' Mem. at 28.  To the contrary, plaintiffs specifically noted, in briefing the admissibility of the CPI evidence, that "[t]he jury's consideration of inflation in fashioning a damage award is a distinct issue from prejudgment interest, which would be awarded by the Court and not the jury under Colorado law."  *See* Pls.' Mem. in Opp'n to Defs.' Mot. to Exclude Evidence of Pls.' Consumer Price Index Adjustment for Property Damages, at 3 n.1 (Nov. 16, 2005) [Ct. Rec. 1673].

[20] In *Todd v. Bear Valley Village Apts.*, 980 P.2d 973 (Colo. 1999), the issue was whether the trial court had discretion to disallow prejudgment interest for a period of delay attributable to a trial continuance.  Emphasizing the mandatory character of prejudgment

(continued...)

Defendants instead rely on authorities from elsewhere. Those other authorities, defendants say, establish the following proposition: "Under settled law, an award of prejudgment interest is inappropriate where, as here, a jury has awarded inflation-adjusted damages." *See* Defs.' Mem. at 25. In support of the proposition just quoted (which quickly matures, by page 26 of defendants' brief, to a full-fledged "rule"), defendants cite seven cases. Not one of those cases involved a statutory regime providing for prejudgment interest. Not one of them involved the question whether prejudgment interest should be added to any damages awarded by a jury – "inflation-adjusted" or

---

[20](...continued)

interest under Colorado law, the Colorado Supreme Court held that the trial court enjoyed no such discretion. *Id.* at 980-81. Defendants cite a footnote in *Todd* for the proposition that "the whole point of prejudgment interest . . . is to compensate a plaintiff for the passage of time." *See* Defs.' Mem. at 26. Defendants misread that footnote, which did not pronounce on the "whole point" of anything. In rejecting an argument from the defendant in *Todd* that it would be prejudiced if prejudgment interest were awarded for a period beyond the originally scheduled trial date, the *Todd* court noted that the defendant had the use of the money in the interim. It was in this context that the *Todd* court said: "the General Assembly instituted statutory prejudgment interest as a way of accounting for the time value of money." 980 P.2d at 981 n.8. That passing observation did not remotely purport to be an exhaustive or detailed recital of the policies manifest in Colorado's prejudgment interest statutes (nor did it address the distinction between inflation and interest). In *Allstate Ins. Co. v. Starke*, 797 P.2d 14 (Colo. 1990), the court held only that the policy limits of an automobile insurance policy applied to all compensatory damages, including prejudgment interest. In *Lowell Staats Mining Co. v. Pioneer Uravan, Inc.*, 878 F.2d 1259 (10th Cir. 1989), the Tenth Circuit reversed this Court's denial of prejudgment interest under Colo. Rev. Stat. § 5-12-102. The language from *Lowell Staats Mining* quoted at page 27 of defendants' brief: (1) was itself quoted (*see* 878 F.2d at 1268-69) from *Wood v. Hazelet*, 77 Colo. 442, 237 P. 151, 152 (1925), a case in which the Colorado Supreme Court held that the trial court had discretion to add "interest" to an award for labor performed under an oral contract; (2) concerns what a Colorado court did have the discretion, in 1925, to do, under the then-prevailing legal regime, not (as defendants imply) what any law then forbade or now forbids a court to do; (3) was cited in *Lowell Staats Mining* only for the proposition that a district court does not err in computing prejudgment interest itself; and (4) has no application to this case, where no one contends that the jury entertained, or could have entertained, a request for prejudgment interest under the applicable Colorado statutes.

otherwise.  Indeed, not one involved a jury's award of compensatory damages at all.

Six of defendants' seven cases involved disallowance of interest on (or CPI or inflation adjustments to) statutory attorneys' fee awards against the United States, under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1), or similar statutory provisions.  Under familiar principles of sovereign immunity, *no* interest may be assessed against the federal government, absent express congressional waiver of sovereign immunity from interest – such waivers being strictly construed.  The cases cited by defendants stand merely for the proposition that in the absence of express congressional waiver, the sovereign immunity doctrine's "no interest" rule applies regardless of whether the relevant augmentation of attorneys' fees is requested in the form of "interest," adjustment for inflation, or in some other terms.[21]  That may indeed be "settled law," but it is a very different proposition from the one for which defendants cite these cases.  Defendants' seventh case, *United States v. $30,006.25 in U.S. Currency*, 236 F.3d 610 (10th Cir. 2000), relied on sovereign immunity principles to disallow interest against the United States in an action for return of improperly seized assets.  *Id.* at 612.

Under *Colorado* law, prejudgment interest is a creature of statute, and its award is compulsory in cases to which the statute applies.   The Colorado Supreme Court has called the award of prejudgment interest "'a ministerial act that is mandatory and does not require the exercise of judgment or discretion.'"  *Todd*, 980 P.2d at 981 (quoting *Crosby v. Kroeger*, 138 Colo. 55, 64-65, 330 P.2d 958, 963 (1958)).

---

[21] *See Library of Congress v. Shaw*, 478 U.S. 310, 311-23 (1986); *Sorenson v. Mink*, 239 F.3d 1140, 1147-49 (9th Cir. 2001); *Masonry Masters, Inc. v. Nelson*, 105 F.3d 708, 710-13 (D.C. Cir. 1997); *Marcus v. Shalala*, 17 F.3d 1033, 1038-40 (7th Cir. 1994); *Perales v. Casillas*, 950 F.2d 1066, 1074-77 (5th Cir. 1992); *Chiu v. United States*, 948 F.2d 711, 718-22 (Fed. Cir. 1991).

The purposes of prejudgment interest under Colorado law are well settled. They are to fully compensate the plaintiff, award the plaintiff the loss of earnings on the money due to its delayed payment, and encourage prompt payment of claims. *See, e.g.*, *United Int'l Holdings, Inc. v. The Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1232 (10th Cir. 2000) (prejudgment interest statute should be broadly construed "to effectuate the legislative purpose of compensating parties for the loss of money or property to which they are entitled") (citation and internal quotations omitted); *Mesa Sand & Gravel Co. v. Landfill, Inc.*, 776 P.2d 362, 364 (Colo. 1989) (purposes of prejudgment interest include "discourag[ing] a person responsible for payment of a claim to stall and delay payment until judgment or settlement"); *Grand County Custom Home Building, LLC v. Bell*, 148 P.3d 398, 400 (Colo. App. 2006) ("The purpose of [Colo. Rev. Stat.] § 5-12-102(1) is to discourage responsible parties from delaying payment until judgment or settlement, and 'represents a legislative determination that persons suffer a loss when they are deprived of property to which they are legally entitled'") (quoting *Mesa*, 776 P.2d at 364); *Stevens v. Humana of Delaware, Inc.*, 832 P.2d 1076, 1081 (Colo. App. 1992) ("prejudgment interest serves not only the purpose of compensating a party for the loss of use of money, but it is also used to encourage settlement of cases both pre- and post-trial"); *Voight v. Colorado Mountain Club*, 819 P.2d 1088, 1092-93 (Colo. App. 1991) ("the potential of pre-judgment interest being added to a judgment encourages settlements") (citations omitted).[22]

---

[22] *Voight* presented a fact pattern bearing significant similarities to this one. In *Voight*, the defendant argued on appeal that "since the economist took into account several economic concepts, i.e., present value, discounting, expected return on interest investment, inflation, etc., to establish the probable present value of plaintiff's economic losses, it should have been permitted to cross-examine the economist concerning the impact of the statutorily mandated pre-judgment interest on this evaluation." *Id.* at 1092.

(continued...)

Given these policies behind Colorado's prejudgment interest statutes, the "analytical distinction between inflation and interest" is *not* "irrelevant," as defendants would have it.  *See* Defs.' Mem. at 26.  So far as plaintiffs' research reveals, no Colorado decision has ever suggested that a court has authority to withhold statutory prejudgment interest, in whole or in part, on the theory that a jury's award may have partially effectuated one or more of the policies of prejudgment interest.  But even if such discretion did exist, its exercise would not be warranted here.  The policy of compensating plaintiffs for the lost use of the money was not accomplished by the jury's use of a CPI-adjustment.  That adjustment merely expressed the damages in 2005 dollars.  It did not calculate the value of the money as if given to plaintiffs for their use and investment.  *See Evans v. Connecticut*, 967 F. Supp. 673, 684 n.15 (D. Conn. 1997) (awarding prejudgment interest on CPI-adjusted damages), *aff'd*, No. 97-7688, 24 Fed. Appx. 35, 2001 U.S. App. LEXIS 25150 (2d Cir. Nov. 15, 2001); *see also, e.g.*, *United States v. City of Warren*, 138 F.3d 1083, 1096 (6th Cir. 1998) ("the consumer price index does not compensate victims for the time value of the lost money; rather, the CPI simply ensures that inflation does not erode the value of money"); *Clinchfield Coal Co. v. Fed. Mine Safety & Health Review Comm'n*, 895 F.2d 773, 780 (D.C. Cir. 1990) (CPI affords "compensation for losses through inflation but none for the capacity of wealth to generate more wealth").  This leaves entirely to one side the distinct and additional policy of promoting settlement – a function of prejudgment interest that the Colorado courts, as already seen, have consistently emphasized.

---

[22](...continued)
> The Colorado Court of Appeals rejected this argument, noting that "[p]re-judgment interest is considered an additional item of compensatory damages and is, thus, not interest in the strictest sense." *Id.*

Defendants' "double recovery" argument also ignores the sheer numerical disparity between the applicable statutory prejudgment interest rates and the rate of inflation reflected in the specific CPI figures before the jury.  The governing statutory rate is either 8% or 9%, depending on the Court's ruling as to which statutory rate applies (compounded annually in either case).  By contrast, plaintiffs presented the following CPI figures for the period from 1990 through mid-2005:[23]

| Year | Annual |
|---|---|
| 1990 | 120.9 |
| 1991 | 125.6 |
| 1992 | 130.3 |
| 1993 | 135.8 |
| 1994 | 141.8 |
| 1995 | 147.9 |
| 1996 | 153.1 |
| 1997 | 158.1 |
| 1998 | 161.9 |
| 1999 | 166.6 |
| 2000 | 173.2 |
| 2001 | 181.3 |
| 2002 | 184.8 |
| 2003 | 186.8 |
| 2004 | 187.0 |
| 2005 (Mid-Year) | 189.2 |

---

[23] *See* Ex. PG-0955; Tr. (12/5/05) at 6418:16 to 6422:8 (Mr. Hunsperger).

*Plaintiffs' Reply in Support of Motion for Entry of Judgment – Page 23*

For no year during this interval did the CPI increase rise to the level of 8% or 9%. For most years, the annual CPI increase fell well below those rates. It is a straightforward exercise in arithmetic to compute the differences. For example, converting 1990 dollars to 2005 dollars using these CPI data calls for a multiplying the 1990 value by a factor of 1.56 (because $189.2 \div 120.9 = 1.56$). An annually compounded interest rate of 8% over a 15-year period, by contrast, would increase the 1990 value by a factor of 3.17 (because $1.08^{15} = 3.17$); a 9% rate, by a factor of 3.64 (because $1.09^{15} = 3.64$). As these figures illustrate, the jury's consideration of CPI does not place plaintiffs in anything resembling "double recovery" territory. If anything, the CPI would sit squarely in "severely undercompensatory" territory, if used as a substitute for prejudgment interest as defendants effectively propose.

As plaintiffs have already argued, addition of prejudgment interest to the existing compensatory damage award is mandatory and will not result in overcompensation. The maximum extent of any *arguable* overcompensation, however, can be calculated based on the evidence before the jury. So too can adjustments that would eliminate any arguable overcompensation. Table 1, below, presents: (1) the compensatory damages awarded by the jury, for each property category and in total; (2) the damages expressed in 1990 dollars, computed based on the CPI figures before the jury; (3) the damages (after adjustment to 1990 dollars) plus 8% prejudgment interest, compounded annually, for the time period from 1/30/90 through 1/30/07; and (4) the damages (after adjustment to 1990 dollars) plus 9% prejudgment interest, compounded annually, over the same time period.

Table 1
Compensatory Damages After Adjustment to 1990 Dollars

| Property Category | Jury Award | Award Adjusted to 1990 Dollars | Adjusted Award Plus 8% Interest | Adjusted Award Plus 9% Interest |
|---|---|---|---|---|
| Residential | $144,199,088 | $92,144,132 | $340,934,952 | $398,766,024 |
| Vacant Land | $27,000,000 | $17,253,171 | $63,837,044 | $74,665,399 |
| Commercial | $5,651,252 | $3,611,186 | $13,361,453 | $15,627,889 |
| Total | $176,850,340 | $113,008,489 | $418,133,449 | $489,059,312 |

The figures in the last two columns of Table 1 would represent the award for compensatory damages and prejudgment interest through January 30, 2007, were the underlying damage award adjusted to eliminate any CPI component before awarding prejudgment interest from January 30, 1990. To those figures, it would be necessary to add the accrued interest between January 30, 2007, and the date of judgment (assuming judgment were to be entered before January 30, 2008). Table 2 presents the daily interest, at 8% and 9% respectively, on the figures given in the last two columns from Table 1:

Table 2
Current Daily Interest on Adjusted Compensatory Damages (1990)

| Property Category | Current Daily Interest on Adjusted Award (8%) | Current Daily Interest on Adjusted Award (9%) |
|---|---|---|
| Residential | $74,725.46 | $98,325.87 |
| Vacant Land | $13,991.68 | $18,410.64 |
| Commercial | $2,928.53 | $3,853.45 |
| Total | $91,645.67 | $120,589.96 |

Defendants might object that prejudgment interest should run not from the date by which the jury found it appeared the trespass and nuisance would continue indefinitely,[24] but rather from the time the injurious situation became "complete and comparatively enduring." *Cf.* Defs.' Mem. at 49-50. The later that time fell, the more advantageous to defendants would be the result, because the annual CPI increase was less than either statutory prejudgment interest rate for all years in question. The jury determined that the injurious situation became "complete and comparatively enduring" no later than December 31, 1995.[25]

Table 3 presents: (1) the compensatory damages awarded by the jury; (2) the damages expressed in 1995 dollars, computed based on the CPI evidence before the jury; (3) the damages (after adjustment to 1995 dollars) plus 8% prejudgment interest, compounded annually, for the time period from 12/31/95 through 12/31/06; and (4) the damages (after adjustment to 1995 dollars) plus 9% prejudgment interest, compounded annually, over the same period.

Table 3
Compensatory Damages After Adjustment to 1995 Dollars

| Property Category | Jury Award | Award Adjusted to 1995 Dollars | Adjusted Award Plus 8% Interest | Adjusted Award Plus 9% Interest |
|---|---|---|---|---|
| Residential | $144,199,088 | $112,722,226 | $262,827,537 | $290,871,408 |
| Vacant Land | $27,000,000 | $21,106,237 | $49,212,126 | $54,463,092 |
| Commercial | $5,651,252 | $4,417,654 | $10,300,375 | $11,399,431 |
| Total | $176,850,340 | $138,246,117 | $322,340,038 | $356,733,931 |

---

[24] The jury found this had occurred by January 30, 1990. *See* Jury Verdict Form, at 28-29 (question Nos. 1 & 3 under ¶ H)

[25] *See* Jury Verdict Form, at 14 (question No. 11 under ¶ E); *id.* at 23 (question No. 11 under ¶ F).

To these figures, it would again be necessary to add the later-accrued interest, from December 31, 2006, to the date of judgment.  Table 4 presents the daily interest, at 8% and 9% respectively, on the figures given in the last two columns from Table 3:

Table 4
Current Daily Interest on Adjusted Compensatory Damages (1995)

| Property Category | Current Daily Interest on Adjusted Award (8%) | Current Daily Interest on Adjusted Award (9%) |
|---|---|---|
| Residential | $57,606.03 | $71,721.71 |
| Vacant Land | $10,786.22 | $13,429.25 |
| Commercial | $2,257.61 | $2,810.81 |
| Total | $70,649.86 | $87,961.77 |

For the reasons already given, plaintiffs believe that Colorado law requires an award of prejudgment interest on the jury's entire compensatory damage award, from January 30, 1990, through the date of judgment.  If any adjustment in plaintiffs' compensatory damages were to be made, however, plaintiffs believe that Tables 1 and 2 would embody the appropriate calculations, because plaintiffs' claims accrued when it appeared that the trespass and nuisance would continue indefinitely, which the jury found to have occurred no later than January 30, 1990.

## V.    Plaintiffs Have a Statutory Right to Prejudgment Interest Under Colorado Law

### A.    Plaintiffs Are Entitled to Prejudgment Interest Under Colo. Rev. Stat. § 13-21-101

Little in defendants' eight-page argument on interest under Colo. Rev. Stat. § 13-21-101 (*see* Defs.' Mem. at 29-36) engages the narrow point presented by plaintiffs' citation to *Miller v. Carnation Co.*, 564 P.2d 127, 132 (Colo. App. 1977), at page 27 of plaintiffs' opening brief.  Under section 930, diminution in value is the sole compensation plaintiffs may receive for all harms

*Plaintiffs' Reply in Support of Motion for Entry of Judgment – Page 27*

associated with prospective invasions.  *See Restatement* § 930(3); *id.* cmt. d & illus. 1.  Because those damages displace any separate award for annoyance and discomfort, the appropriate prejudgment interest rate is the one prescribed under *Miller* and Colorado law for damages covering those harms.

> ### B.    In the Alternative, Plaintiffs Are Entitled to Prejudgment Interest Under Colo. Rev. Stat. § 5-12-102
>
> #### 1.    Section 5-12-102 Is Not Restricted to Consumer Credit Transactions

Defendants also contend that prejudgment interest is not available under Colo. Rev. Stat. § 5-12-102.  According to defendants, section 5-12-102 provides for prejudgment interest only in consumer credit transactions.  *See* Defs.' Mem. at 37-48.  In presenting this argument, defendants do acknowledge some of the Colorado Court of Appeals opinions rejecting their interpretation, but they ignore and fail to cite the numerous and controlling decisions of the Colorado courts and the Tenth Circuit running contrary to their "consumer credit" argument.  Defendants also place heavy reliance on the alleged mistranscription, by the Colorado courts, of a sentence from the legislative history of section 5-12-102, but defendants' own version of that sentence does not support their position, and defendants meanwhile ignore other relevant portions of the legislative history.

 The Colorado Supreme Court has repeatedly rejected any narrow construction of section 5-12-102 of the sort defendants offer here.  It first did so in *Mesa Sand & Gravel.*  There, the court held that "in cases other than in 'actions brought to recover damages for personal injury sustained by any person resulting from or occasioned by the tort of any other person, corporation, association, or partnership' under [Colo. Rev. Stat.] § 13-21-101, a prevailing party may recover prejudgment interest under § 5-12-102."  *See* 776 P.2d at 363 (citation omitted).  In holding section 5-12-102 applicable to breach of contract claims, the court approvingly cited *Isbill Assocs., Inc. v. Denver*,

666 P.2d 1117 (Colo. App. 1983), and specifically held that section 5-12-102 "was not designed to distinguish between classes of prevailing parties in permitting recovery of prejudgment interest." *Id.* at 365. Applying a liberal construction to the statute (a construction it held to be mandated), it directed that prejudgment interest at the annual rate of 8% be awarded from the time of the breach. *Id.*

In subsequent decisions, the Colorado Supreme Court has repeatedly reaffirmed that a broad, liberal construction is to be given to section 5-12-102. In *Westfield Dev. Co. v. Rifle Inv. Assocs.*, 786 P.2d 1112, 1122 (Colo. 1990), it held that section 5-12-102 applies to claims for intentional interference with contract, and further, that prejudgment interest should be awarded "to effectuate the legislative purpose of compensating parties for the loss of money or property to which they are entitled," even on lost profits claims when "no money or property was withheld." *Id.* at 1122. In *Ballow v. Phico Ins. Co.*, 878 P.2d 672 (Colo. 1994), it again held that section 5-12-102 applies "in cases other than 'actions brought to recover damages for personal injuries.'" Finally, the Colorado Supreme Court has expressly stated that section 5-12-102(1)-(3) applies in "contract and property damage cases." *Farmers Reservoir & Irrigation Co. v. Golden*, 113 P.3d 119, 133 (Colo. 2005) (emphasis supplied). The *Farmers Reservoir* opinion goes on to describe section 5-12-102 as "a general prejudgment and postjudgment statute." *Id.* That broad characterization of the statute's scope is flatly inconsistent with defendants' contention that section 5-12-102 applies only in consumer credit transactions. Not once has the Colorado Supreme Court even hinted that it would subscribe to defendants' interpretation.

The Tenth Circuit followed the same path of liberal construction in *Lowell Staats Mining Co., Inc. v. Pioneer Uravan, Inc.*, 878 F.2d 1259 (10th Cir. 1989). There, the Tenth Circuit held that

*Plaintiffs' Reply in Support of Motion for Entry of Judgment – Page 29*

*Isbill* was a correct statement of Colorado law and that prejudgment interest must be awarded on breach of contract claims from the date of injury.  *Id.* at 1269-70.  The Tenth Circuit subsequently held section 5-12-102 applicable to claims for property damages in *Estate of Korf v. A.O. Smith Harvester Prods.*, 917 F.2d 480, 486 (10th Cir. 1990) ("it would appear from the Colorado Supreme Court's analysis that victims of tortious conduct are clearly entitled to prejudgment interest under the statute").  The Tenth Circuit also applied section 5-12-102 to property damage claims in *Loughridge v. Chiles Power Supply Co., Inc.*, 431 F.3d 1268, 1289-91 (10th Cir. 2005).[26]

Likewise, the intermediate appellate courts of Colorado have "uniformly upheld awards of prejudgment interest in property damage cases."  *Fed. Ins. Co. v. Ferrellgas, Inc.*, 961 P.2d 511, 514 (Colo. App. 1997).  This uniformity extends beyond the cases cited by defendants.[27]

---

[26] *See also Bangert Bros. Constr. Co., Inc. v. Kiewit Western Co.*, 310 F.3d 1278,1297 (10th Cir. 2002) (stating that § section 5-12-102 "operates in favor of victims of tortious conduct"); *United Int'l Holdings*, 210 F.3d at 1234; *Stansbury v. Comm'r*, 102 F.3d 1088, 1093 & n.6 (10th Cir. 1996) ("'The term "creditors" used in the statute . . . has been construed broadly to include all claimants who have been damaged by the actions of another.'") (quoting 9 Stephen W. Seifert, *Colorado Practice, Creditors' Remedies – Debtors' Relief* 411 (1990)); *Fed. Deposit Ins. Co. v. Clark*, 768 F. Supp 1402, 1414 (D. Colo. 1989) (Finesilver, C.J.) ("Colorado law provides for the awarding of prejudgment interest in a tort action for property damage."), *aff'd*, 978 F.2d 1541 (10th Cir. 1992).

[27] *See Bennett v. Greeley Gas Co.*, 969 P.2d 754, 765-66 (Colo. App. 1998) ("The right to recover prejudgment interest for damages other than resulting from personal injuries is a matter of law determined pursuant to § 5-12-102, CRS 1997."); *Combined Commc'ns Corp. v. Pub. Serv. Co. of Colo.*, 865 P.2d 893, 901 (Colo. App. 1993); *Schnacker v. State Farm Mut. Auto. Ins. Co.*, 843 P.2d 102, 104 (Colo. App. 1992) (stating that § 5-12-102 "applies to debt, contract, and property damage cases"); *Burt v. Beautiful Savior Lutheran Church of Broomfield*, 809 P.2d 1064, 1070 (Colo. App. 1990); *G.E.C. Minerals, Inc. v. Harrison Western Corp.*, 781 P.2d 115, 117 (Colo. App. 1989); *Teilhaber Mfg. Co. v. Unarco Material Storage*, 791 P.2d 1164, 1168 (Colo. App. 1989); *S.G. Deacon v. Am. Plant Food Corp.*, 782 P.2d 861, 864 (Colo. App. 1989) (judgment creditors are entitled to receive prejudgment interest), *rev'd on other grounds*, 805 P.2d 1109 (Colo. 1991); *Isbill,* 666 P.2d at 1121.

Defendants also rely heavily on their contention that the *Isbill* opinion misquoted or mistranscribed remarks from the legislative history by one of the bill's supporters. (Defendants omit to mention that the Colorado Supreme Court quoted the remarks identically in *Mesa*. *See* 776 P.2d at 365.)  Even if it is assumed that defendants' court reporter was uniquely able to transcribe the legislative history correctly, defendants' own transcription does not support the contention that section 5-12-102 applies only to consumer credit transactions.  The language in defendants' "corrected" version  simply states that "a plaintiff" is entitled to benefit from compounding of interest from the date of the wrong.  It does not in any way limit the generality of that proposition to only certain classes of plaintiffs, much less to consumer credit claims as defendants postulate.[28]

Defendants meanwhile ignore major portions of the legislative history confirming that section 5-12-102 does not apply merely to cases involving consumer credit transactions.  In 1975, the statute was changed to increase the interest rate from six to eight percent, for (among other things) postjudgment interest "on any judgment recovered before any court or magistrate authorized to enter the same within this state."  Contrary to defendants' selective quotations from the legislative history, the change from six to eight percent was not limited to prejudgment interest on consumer

---

[28] Though defendants say the sentence quoted in *Isbill* was "not even uttered," *see* Defs.' Mem. at 45, the disagreement between defendants' transcription and the *Isbill* quotation, when shorn of punctuational differences of defendants' own interpolation, comes to this:

> ~~All~~ a plaintiffs, or <u>for that matter a</u> defendants who counterclaims ~~for that matter, are~~ <u>is</u> entitled to interest from the time the action accrued, not from the time the suit was ~~filed~~ <u>started</u>, not from the time <u>the</u> judgment was entered, but from the time ~~they were~~ <u>somebody was</u> wronged.

It is difficult to see how these minor differences affect the meaning of the sentence.  The opinion in *Isbill* certainly did not proceed by assigning to the words "all plaintiffs" any meaning not also carried by "a plaintiff."  Nor did the *Isbill* court limit its discussion and analysis of the legislative history to this sentence.  *See* 666 P.2d at 1121-22 & n.1.

credit transactions.[29]  In 1979, the statute was amended to require the compounding of prejudgment

interest from the "date of wrongful withholding."  The legislative history again makes plain that the

amendments on this issue were not confined to consumer credit transactions.[30]  The fact that some

_____

[29] *See, e.g.*, 5/5/75 Leg. History Hearing Tr. at 2 ("What this really pertains to is bills, bonds, notes and other instruments of writing and judgments where no rate of interest is specified"); *id.* ("It only covers those cases where there is no specified rate"); *id.* at 9-10 ("In addition, we also find in many instances insurance companies, who are probably more notorious at this than anyone else, who refuse to pay just claims on the hypothesis that they can delay the claim, make a man sue them to collect, and then pay at the last minute because, again, they have the use of this money for that period of time and then they only have to pay a rate at 6 percent . . . ."); *id.* at 11 ("But there's a whole other side to this that hasn't even been talked about and that's judgments in lawsuits. . . . And I've had several small people who got a judgment against a big guy and the big guy can afford to appeal the case and the little guy can't, and the 6 percent interest being all that they lose on the judgment, it doesn't hurt them at all to go on and carry the case all the way up.  If they had to pay something a little more reasonable – I would have gone for the 12 percent – then there is going to be more incentive on them to settle these judgments. They're the ones who can afford the big time lawyers and they're the ones who carry the things up on appeal, and there is no incentive for them to settle a case."); 5/6/75 Leg. History Tr. at 1-2 ("I understand the reason for the bill and that portion of it made sense, which was if you had certain types of judgments rendered and lawsuits where the costs of the use of the 6 percent rate of interest it became more value for, let's say, insurance companies to withhold payment rather than make payment because they could make more interest on the money in the meantime before a judgment was finally rendered by the court of last resort."); 5/20/75 Leg. History Hearing Tr. at 2 ("But the Senate did pass out a rate of interest on certain judgments in personal injury cases at 10 percent that's presently in the House for which this bill does not really conflict, although this bill also goes to a rate of interest on judgments.  But the Brown Bill, being more specific, would govern those cases in which you were talking about personal injury actions.").

[30] *See, e.g.*, 5/12/79 Legislative History Tr. at 1-4 ("On an automobile accident or a tort action, [interest] runs from the time the plaintiff files his action in court, not from the time of the accident when the injuries occurred, but from the time he files his action in court.  And then a person who has a contract action for damages, for example, arising out of failure to deliver potatoes, for example, interest is allowed only from the time of judgment, even if 5 or 10 or 12 years has gone by before a judgment is rendered.  Now you can see the contradictory way that interest is allowed in the courts of Colorado. Now, in addition, from territorial days, there was another doctrine that allowed interest known as moratory interest.  And it was interest based not upon the injuries to the person

(continued...)

*Plaintiffs' Reply in Support of Motion for Entry of Judgment – Page 32*

individual legislators mentioned "consumers" or "credit" during debate on the legislation does not

support an inference that section 5-12-102 applies only to consumer credit, any more than references

by other legislators to recalcitrant insurance companies implies that the section governs only suits

against insurers.

Defendants' argument suffers from other fundamental flaws.  Defendants argue, for example,

that section 5-12-102 is contained in "the Consumer Credit Code," *see* Defs.' Mem. at 39, and

therefore could not have been intended to apply to other types of claims.  Article 12 of Title 5,

however, is *not* part of the Uniform Consumer Credit Code, which spans only articles 1 through 9

of Title 5.  *See* Colo. Rev. Stat. § 5-1-101 ("Articles 1 to 9 of this title shall be known and may be

---

[30](...continued)

> who sustained injuries, whether it was contract or what, but rather on the benefit that was
> derived by the man who violated the contract upon which the claim for damages is based.
> Ordinarily, interest and a judgment are rendered from the injuries sustained but under
> moratory interest, it is based on the benefit to the wrongdoer.  So you see there are four
> doctrines.  And the worst of those doctrines is the one that says no interest until
> judgment.  And that is based on our statute, which doesn't say that, but which we
> borrowed from Illinois.  And the Illinois Court said that if it was an unliquidated claim,
> interest only from the time of the judgment.  Some more judicial legislation.  And our
> courts picked up that doctrine on unliquidated damages.  Now this, this bill, picks up
> additionally one more thing, and that is compound interest. . . . And you all know that
> even at 6 percent compounded, the principal doubles itself in 12 years.  So this bill is
> addressed to compound interest.  It maintains the principal moratory interest, or it says
> that, in effect, a plaintiff or for that matter a defendant who counterclaims is entitled to
> interest from the time the action occurred, not from the time the suit was started, not from
> the time the judgment was entered, but from the time somebody was wronged"); *id.* at 5
> ("Now, I'll tell you what a lot of insurance companies will do.  They'll stall around if
> their lawyer will let them or if the client will, and make counteroffers and proposals.  A
> year or two will go by.  And if you wait until then, they have gained the use of that
> money for that period of time."); *id.* at 6 ("Well, why shouldn't they have interest from
> the time of the injury?  Are you going to let the wrongdoer benefit by delay or bringing a
> suit?"); *id.* at 12 ("And I grant you, it's hard for people to see why interest should accrue
> from the time the action, you know, had all its elements that entitles a person to damages.
> On the other hand, the wrongdoer has the use of that money all that time.").

cited as the 'Uniform Consumer Credit Code.'").  Article 12 (which bears the summary title "Interest – General Provisions") includes not only section 5-12-102, but also other provisions of general application, including one section setting the legal rate of interest for Colorado, *see* Colo. Rev. Stat. § 5-12-101, and another setting the general rate of postjudgment interest, *see* Colo. Rev. Stat. § 5-12-106.  Moreover, if section 5-12-102 had been intended to apply only to consumer credit transactions, there would have been no need for its exception for "personal injury" damages governed by Colo. Rev. Stat. § 13-21-101.

All in all, defendants' narrow interpretation of section 5-12-102 is squarely at odds with a very substantial body of Tenth Circuit and Colorado authority, lacks support in the legislative history, and rests on a mistaken view of Colorado's statutory framework .  If the personal injury rate is held inapplicable, plaintiffs are entitled to the general rate prescribed in section 5-12-102.

### 2.    Plaintiffs' Damages Are Not for "Future Loss"

Defendants contend that prejudgment interest is not available because damages awarded under section 930 (defendants say) are for future losses.  *See* Defs.' Mem. at 45-48.  This argument confuses the predicates for liability for "future invasions" under section 930 with the timing of the relevant loss.  It also misstates Colorado law on prejudgment interest.

That some of the harms or consequences flowing from tortious misconduct may persist into the future obviously does not imply that the damages suffered by the victims of that misconduct constitute "future losses."  That principle is starkly illustrated by section 930 itself, which provides that a plaintiff may recover "the *decrease in the value* of the land *caused* by the *prospect* of the continuance of the invasion *measured at the time* when the injurious situation *became* complete and comparatively enduring."  *Restatement* § 930(3) (emphases added).  The jury expressly found that

the "prospect of the continuance of the invasion" was a mature fact by the time suit was filed in this case on January 30, 1990.[31]  It also found that the injurious situation became "complete and comparatively enduring" sometime in the interval between 1988 and 1995,[32] found that a "decrease in value" caused by the then-existing prospect of the invasion's continuance had occurred as of that time,[33] and *measured* the "decrease in value" subsisting as of that same time.[34]  In no sense did the jury find that plaintiffs' loss, or any portion of plaintiffs' loss, had yet to occur.  Unlike the authorities on which defendants primarily rely, this case does not involve any claim for future lost earnings, future lost profits, future lost rents, future lost income, or future consequential damages. Nor does it involve a claim for future diminution in value.

Under Colorado law, damages are not for "future loss" where there is no future contingency on which incurrence of the damages depends.  In *Loughridge*, the Tenth Circuit rejected arguments similar to those presented by defendants here, holding prejudgment interest in property damage cases runs from the date of the wrong, even if the damages are intended to compensate a plaintiff for repair and replacement costs not yet incurred.  *See* 431 F.3d at 1290-91; *see also United Int'l Holdings*, 210 F.3d at 1233-34 (rejecting assertion that contract damages characterized as the "right to future income" did not accrue interest from the date of the breach).

---

[31] *See* Jury Verdict Form, at 28-29 (question Nos. 1 & 3 under ¶ H).

[32] *See id.* at 14 (question No. 11 under ¶ E); *id.* at 23 (question No. 11 under ¶ F).

[33] *See id.* at 14 (question No. 12 under ¶ E); *id.* at 23 (question No. 12 under ¶ F).

[34] *See id.* at 14-15 (question No. 13 under ¶ E); *id.* at 23-24 (question No. 13 under ¶ F).

## VI.    Prejudgment Interest Should Be Awarded from January 30, 1990

Defendants do not contest the proposition that under Colorado law, prejudgment interest runs from at least the time the claims accrued.  Nor could they.[35]

Under the jury's various findings, the claims here accrued on or before January 30, 1990.[36] It is true, as defendants say (*see* Defs.' Mem. at 50), that the jury's specific finding as to that date did not, by itself, establish liability (which depended on such other issues as whether defendants had engaged in intentional or negligent misconduct).  The jury *did* find liability, however, and this Court *has* ruled that the right to recover section 930(3) damages for which a defendant is otherwise liable accrues once it appears the harm will continue indefinitely.  *See, e.g.*, Order Regarding Instruction No. 3.28, at 6-7 (Jan. 27, 2006) [Ct. Rec. 2064].  The jury's finding on this point, in combination

---

[35] *See Loughridge*, 431 F.3d at 1291 (interest on property damage claim accrues from time of wrong); *United Int'l Holdings*, 210 F.3d at 1233-34 (interest accrues from time of breach, even if compensatory damages are based on future valuation of rights); *Stansbury*, 102 F.3d at 1093 (time of wrong); *Estate of Korf*, 917 F.2d at 486 (time of wrong, even if that falls before property damage actually was incurred); *Ballow*, 878 P.2d at 683-84 (interest runs from date of breach, even if plaintiffs did not incur expenses until later); *Mesa Sand & Gravel*, 776 P.2d at 365 (interest runs from time of breach); *Logixx Automation, Inc. v. Lawrence Michels Family Trust*, 56 P.3d 1224, 1230 (Colo. App. 2002) (same); *Vento v. Colo. Nat'l Bank-Pueblo*, 907 P.2d 642, 647-48 (Colo. App. 1995) (plaintiffs "entitled to prejudgment interest from the date defendant breached its fiduciary duty, thus causing the harm that ultimately occurred"); *Combined Commc'ns Corp.*, 865 P.2d at 901 (interest on property damage runs from date plaintiffs were wronged); *Burt*, 809 P.2d at 1070-71 (interest on trespass and nuisance claims run from the date each cause of action accrued); *Bassett v. Eagle Telecomms., Inc.*, 750 P.2d 73, 75 (Colo. App. 1987) ("interest is to accrue from the date of the wrong"); *Cooper v. Peoples Bank & Trust Co.*, 725 P.2d 78, 81 (Colo. App. 1986) (interest accrues from date title was to be transferred, even if entire purchase price was not paid until later); *Isbill*, 666 P.2d at 1122 (prejudgment interest in property damage cases runs from the date plaintiffs were wronged).

[36] *See* Jury Verdict Form, at 28-29 (question Nos. 1 & 3 under ¶ H).

*Plaintiffs' Reply in Support of Motion for Entry of Judgment – Page 36*

with its general finding of liability, establishes that the wrong had occurred, and the claims had accrued, by January 30, 1990.

It is also true that the purpose of the jury's determination was not to "measure damages." *See* Defs.' Mem. at 50. It does not remotely follow, however, that the jury's finding cannot be used to fix the date by which prejudgment interest begins to run. That plaintiffs may also have been wronged *prior* to that date also does not negate plaintiffs' entitlement to prejudgment interest from *at least* that date.

## VII.    Prejudgment Interest and Exemplary Damages

### A.    Post-Verdict Prejudgment Interest on Exemplary Damages

As noted above, plaintiffs acknowledge, on review of *Fail v. Cmty. Hosp.*, 946 P.2d 573 (Colo. App. 1997), that the Court of Appeals' opinion in that case is of questionable consistency with plaintiffs' request that the Court award post-verdict prejudgment interest on exemplary damages. Plaintiffs adhere to that request, so as to preserve their right to post-verdict prejudgment interest on the exemplary damages in light of any later guidance that may emerge in subsequent decisions from the Colorado courts. Plaintiffs do recognize, however, that the Court may feel disposed to deny the request, in light of *Fail*, under the current state of reported decisional law.

### B.    Prejudgment Interest and the Exemplary Damages Cap

Defendants discussion of the relation between prejudgment interest and the statutory cap on exemplary damages completely ignores Judge Babcock's analysis and ruling in *James v. Coors Brewing Co.*, 73 F. Supp. 2d 1250, 1255 (D. Colo. 1999) – a decision cited in plaintiffs' opening brief, and one cited by defendants themselves for a different proposition (*see* Defs.' Mem. at 46).

Defendants also fail to recognize that the holding in *Lira v. Davis*, 832 P.2d 240 (Colo. 1992), undercuts their position that a judicial award of prejudgment interest must come after application of the cap.  Under *Lira*, the exemplary damage cap is determined by reference to the amount of the compensatory damages awarded by the Court (as opposed to the amount assessed by the jury).  *See* 832 P.2d at 245.  The courts of Colorado have said on numerous occasions that prejudgment interest is an element of compensatory damages.  *Allstate Ins. Co. v. Starke*, 797 P.2d at 19; *see also Seaward Constr. Co., Inc. v. Bradley*, 817 P.2d 971, 976 (Colo. 1991) ("a component of damages rather than interest as such"); *Grand County Custom Homebuilding*, 148 P.3d at 401; *Witt v. State Farm Mut. Auto. Ins. Co.*, 942 P.2d 1326, 1327 (Colo. App. 1997) ("Prejudgment interest is a form of compensatory damages and represents a legislatively prescribed award for delay in a plaintiff's receipt of money to which he or she is legally entitled."); *Heid v. Destefano*, 586 P.2d 246, 247 (Colo. App. 1978) ("prejudgment interest is an additional item of compensatory damages"); *Houser v. Eckhardt*, 532 P.2d 54, 57 (Colo. App. 1975), *aff'd*, 552 P.2d 308 (Colo. 1976).

Because prejudgment interest is a component of compensatory damages, it forms a part of the "actual damages awarded" by reference to which the exemplary damage cap applies.  As Judge Babcock explained in *James*:

> Prejudgment interest, under Colorado law, is part and parcel of compensatory damages.  Section 13-21-102(1)(a) states that exemplary damages shall be reduced so as not to exceed the amount of 'actual damages awarded to the injured party.'  Rather than forcing strained interpretations, Colorado law requires that statutory terms be given their common, ordinary meaning.  Accordingly, I hold that prejudgment interest on damages should be considered as a part of 'actual damages' within the meaning of § 13-21-102(1)(a).

73 F. Supp. 2d at 1255 (citation omitted).

**VIII.    Under the Price-Anderson Act, Post-Judgment Interest Is Governed by Colorado Law**

Defendants argue that the federal rate of postjudgment interest should apply, rather than the Colorado rate, because postjudgment interest (they say) is not a "substantive" issue under *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), but rather a "procedural" issue.  *See* Defs.' Mem. at 53-55.

Many of defendants' own authorities, however, recognize that postjudgment interest has substantive aspects as well as procedural ones.  *See, e.g.*, *Weitz Co., Inc. v. Mo-Kan Carpet Inc*., 723 F.2d 1382, 1386 (8th Cir. 1983); *Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 623-24 (5th Cir. 1988).  Plaintiffs do not contend on that account that 28 U.S.C. § 1961 must yield to inconsistent state law under *Erie* and its progeny.  To the contrary, plaintiffs expressly noted in plaintiffs' opening brief that the Tenth Circuit (like every circuit to reach the question) has held that section 1961 governs in diversity cases.  *See Transpower Constructors v. Grand River Dam Auth.*, 905 F.2d 1413, 1423-24 (10th Cir. 1990).  Certainly plaintiffs concede the power of Congress to legislate on this subject in a manner governing claims derived from state as well as federal law.  Indeed, plaintiffs' position *rests* on a federal congressional enactment.  It is simply a *different* federal enactment from section 1961.

The Price-Anderson Act, as amended in 1988, provides that "the substantive rules for decision" in Price-Anderson cases "shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of [42 U.S.C. § 2210]."  *See* 42 U.S.C. § 2014(hh).  The rate of postjudgment interest has sufficient substantive aspects that Congress could reasonably have considered it a "substantive rule for decision" in the Price-Anderson context, where Congress has been especially cautious about displacing state law.  Among the many manifestations of that special solicitude for state law is section 2014(hh)'s unusual

provision limiting the scope of federal preemption to circumstances where state substantive law is inconsistent with the Price-Anderson Act itself.

Defendants point to *Bartholomew v. CNG Producing Co.*, 832 F.2d 326, 330-31 (5th Cir. 1987), where the Fifth Circuit held section 1961 to govern in cases under the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331-1356 ("OCSLA"), even though OCSLA too contains a provision adopting state rules of decision. The parallel provision in the OCSLA, however, purports to adopt state law only to the extent it is "not inconsistent with this Act *or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted.*" *See* 43 U.S.C. § 1333(a)(2)(A) (emphasis added). Moreover, that provision predates the 1982 amendments to section 1961 that set a general federal rate of postjudgment interest, whereas section 2014(hh) postdates them.

Defendants also point to two additional Fifth Circuit decisions, applying section 1961 to claims under the Federal Tort Claims Act ("FTCA"). *See Transco Leasing Corp. v. United States*, 992 F.2d 552, 554-56 (5th Cir. 1993); *Perez v. United States*, 830 F.2d 54, 60 (5th Cir. 1987). But unlike section 2014(hh), the FTCA's choice-of-law provision, which long antedates the 1982 amendments to section 1961, contains no special restriction on the preemptive scope of other federal law. *See* 28 U.S.C. § 1346(b)(1) (liability "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred").

Plaintiffs will not pretend this issue is free from doubt. In crafting the 1988 amendments to Price-Anderson, rational lawmakers could conceivably have seen postjudgment interest as a "procedural" issue not embraced within the state "substantive rules of decision" adopted under section 2014(hh). They could also have seen it as "substantive," just as prejudgment interest is

*Plaintiffs' Reply in Support of Motion for Entry of Judgment – Page 40*

universally understood to be.  Unfortunately, plaintiffs' research has revealed no Price-Anderson decision addressing the point.

## CONCLUSION

For the reasons given, plaintiffs respectfully request that judgment be entered in favor of the Damages Subclass in the form attached, and for such other and further relief as may be just.


Dated: March 19, 2007                              Respectfully submitted,


                                                   s/ Peter Nordberg
                                                   Merrill G. Davidoff
                                                   Peter Nordberg
                                                   David F. Sorensen
                                                   Ellen T. Noteware
                                                   Berger & Montague, P.C.
                                                   1622 Locust Street
                                                   Philadelphia, PA 19103
                                                   (215) 875-3000

                                                   Gary B. Blum
                                                   Steven W. Kelly
                                                   Silver & DeBoskey, P.C.
                                                   1801 York Street
                                                   Denver, CO 80206
                                                   (303) 399-3000

                                                   Louise Roselle
                                                   Jean M. Geoppinger
                                                   Waite, Schneider, Bayless
                                                     & Chesley Co., L.P.A.
                                                   1513 Central Trust Tower
                                                   Cincinnati, OH 45202
                                                   (513) 621-0267

                                                   Attorneys for Plaintiffs
                                                   And the Class

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 19, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will effect service of such pleading upon:

> David M. Bernick, Esq.
> Kirkland & Ellis LLP
> 200 East Randolph Drive
> Chicago, IL 60601
>
>     and
>
> Joseph J. Bronesky, Esq.
> Sherman & Howard, LLC
> 633 Seventeenth Street, Suite 3000
> Denver, CO 80202
>
> Attorneys for Defendants and
> The Boeing Company

s/ Peter Nordberg            
Peter Nordberg
