**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-181-JLK

MERILYN COOK, *et al.*,

      Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

      Defendants.

---

**DEFENDANTS' REPLY IN SUPPORT OF THEIR RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW**

---

David M. Bernick
Douglas J. Kurtenbach
Ellen Therese Ahern
Stephanie Brennan
John E. Tangren
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636
Phone: 312-861-2000
Fax:    312-861-2200

Joseph J. Bronesky
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Phone: 303-297-2900
Fax:    303-298-0940

Attorneys for ROCKWELL
INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY

Page(s)

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................1

I.  PLAINTIFFS FAILED TO PROVE TRESPASS. ...........................................3

  A.  There Is No Proof That Plutonium Was Present On Each Class Property. ............3

  B.  Plaintiffs Have Failed To Prove Any Trespass By Rockwell. ................................7

  C.  A Jury Could Not Properly Find A Continuing Trespass, Or That Any Trespass Occurred While Class Members Owned Their Class Properties. .............9

  D.  Plaintiffs Did Not Introduce Sufficient Evidence Of Intentional Trespass. ..........10

II.  DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFFS' NUISANCE CLAIMS. ........................................................12

  A.  Plaintiffs Failed To Establish An Actual Class-Wide Health Risk .......................12

  B.  Plaintiffs Failed To Introduce Evidence That All Class Members Are At An Actual Increased Risk As A Result Of Future Releases From Rocky Flats. ................................................................................................14

  C.  Plaintiffs Have Not Shown A Substantial And Unreasonable Health Risk ..........16

  D.  Plaintiffs Did Not Show That Defendants Intentionally Or Negligently Caused A Health Risk. ..............................................................19

III.  DEFENDANTS' CONDUCT WAS NOT CAPABLE GENERICALLY OF CAUSING FEAR, ANXIETY, OR MENTAL DISCOMFORT. ......................................19

IV.  PLAINTIFFS DID NOT INCUR RECOVERABLE DAMAGES ....................................20

  A.  The Jury Could Not Properly Attribute Alleged Damages To Defendants' Actionable Conduct. ......................................................20

  B.  Plaintiffs Failed To Demonstrate That Any "Injurious Situation" Became Complete And Comparatively Enduring Between 1988 And 1995 ......................24

i

Page(s)

V.     DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW
       ON PLAINTIFFS' DEMAND FOR PUNITIVE DAMAGES.........................................24

CONCLUSION...............................................................................................................28

Page(s)

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alley v. Gubser Development Company*,
    785 F.2d 849 (10th Cir. 1986) ......................................................................... 26

*Allison v. Smith*,
    695 P.2d 791 (Colo. Ct. App. 1984) ............................................................... 18

*Bayer v. Crested Butte Mountain Resort, Incorporated*,
    960 P.2d 70 (Colo. 1998) ................................................................................ 18

*Bennett v. Greeley Gas Company*,
    969 P.2d 754 (Colo. Ct. App. 1998) ............................................................... 28

*Blueflame Gas, Incorporated v. Van Hoose*,
    679 P.2d 579 (Colo. 1984) .............................................................................. 18

*Broussard v. Meineke Discount Muffler Shops, Incorporated*,
    155 F.3d 331 (4th Cir 1998 ) ..................................................................... 4, 13

*Cimino v. Raymark Industries, Incorporated*,
    151 F.3d 297 (5th Cir. 1998) ............................................................................ 4

*Herrera v. Lufkin Industries, Incorporated*,
    474 F.3d 675 (10th Cir. 2007) ......................................................................... 2

*Hurd v. American Hoist & Derrick Company*,
    734 F.2d 495 (10th Cir. 1984) ......................................................................... 2

*In re TMI*,
    67 F.3d 1103 (3d Cir. 1995) ............................................................................ 27

*Juarez v. United Farm Tools, Incorporated*,
    798 F.2d 1341 (10th Cir. 1986) ...................................................................... 25

*McManus v. Fleetwood Enterprises*,
    320 F.3d 545 (5th Cir. 2003) ...................................................................... 4, 13

*Morgan Stanley & Company, Incorporated v. Coleman Holdings, Incorporated*,
    --- So.2d ---, No. 4D05-2606, 2007 WL 837221 (Fla. App. Ct. Mar. 21, 2007) ............. 23

Page(s)

*Platte & Denver Ditch Company v. Anderson,*
    6 P. 515 (Colo. 1885) ........................................................................................ 19

*Public Service Company of Colorado v. Van Wyk,*
    27 P.3d 377 (Colo. 2001) ............................................................................. 10, 19

*Richards v. Michelin Tire Corporation,*
    21 F.3d 1048 (11th Cir. 1994) .......................................................................... 26

*Sanjuan v. IBP, Incorporated,*
    160 F.3d 1291 (10th Cir. 1998) ......................................................................... 2

*Schiller & Schmidt, Incorporated v. Nordisco Corporation,*
    969 F.2d 410 (7th Cir. 1992) ............................................................................ 23

*United States v. Hooker Chemicals & Plastics Corporation,*
    850 F. Supp. 993 (W.D.N.Y. 1994) .................................................................. 26

*Westric Battery Company v. Standard Electric Company,*
    482 F.2d 1307 (10th Cir. 1973) ........................................................................ 23

*Wheeler v. Koch Gathering Systems, Incorporated,*
    131 F.3d 898 (10th Cir. 1997) ........................................................................... 2

*Wickman v. Henderson,*
    19 Fed. Appx. 740 (10th Cir. 2001) ................................................................... 5

*Witt v. Roadway Express,*
    136 F.3d 1424 (10th Cir. 1998) .......................................................................... 2

*Yearous v. Niobrara County Memorial Hospital,*
    128 F.3d 1351 (10th Cir. 1997) .......................................................................... 2

**Statutes**

28 U.S.C. § 2072 ..................................................................................................... 3

**Treatises**

66 C.J.S. NUISANCES § 25 (2007) ......................................................................... 18

9A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE 2d
    § 2528 (2007) ...................................................................................................... 5

9A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE
    § 2524 (1971) ...................................................................................................... 2

Page(s)

Charles T. McCormick, HANDBOOK OF THE LAW OF DAMAGES § 79 (1935) ............................... 25

Dan B. Dobbs, THE LAW OF REMEDIES § 3.11(1) (2d ed. 1993) .................................................. 25

RESTATEMENT (2D) OF TORTS § 288(C) ...................................................................................... 18, 26

RESTATEMENT (2D) OF TORTS § 840(D) ....................................................................................... 19

RESTATEMENT (2D) OF TORTS § 930 ............................................................................................ 14

RESTATEMENT (3D) OF TORTS § 1 ............................................................................................... 10

W. Page Keeton, *et al.*, PROSSER AND KEETON ON THE LAW OF TORTS § 2 (5th ed. 1984) ......... 25

W. Page Keeton, *et al.*, PROSSER AND KEETON ON THE LAW OF TORTS § 88 (5th ed. 1984) ........ 19

## **<u>INTRODUCTION</u>**

Plaintiffs' year-old response to defendants' original motion for judgment as a matter of law filed at the close of plaintiffs' case-in-chief fails to address the significant gaps in their proof.  It merely reconfirms that there is no legally sufficient evidentiary basis for a jury to properly find for plaintiffs in this case.  Three basic defects permeate plaintiffs' response.

***First***, plaintiffs confuse their burden of proof in this class-wide trial.  Instead of demonstrating that they have proved the elements of their claims for each and every class property and class member, plaintiffs concede at several points the absence of such evidence.  To excuse this failure, plaintiffs attempt to shift the burden of proof to defendants and try to pass off speculation as permissible "inference."  Specifically, they repeatedly assert that defendants have failed to disprove purported "inferences" that the alleged impact and/or effect has been class-wide.  But this effort to use the class action procedural device as a mechanism to expand the substantive rights of some class members, as well as to bridge the gaps in their proofs, violates due process and the Rules Enabling Act.  Plaintiffs' admitted failure to present class-wide proof on key elements of their claims warrants the entry of judgment as a matter of law for defendants.

***Second***, plaintiffs ignore the important admissions of their own experts and witnesses. For example, while devoting extensive discussion to the purported "health risks" created by the Rocky Flats plant, plaintiffs offer no defense to admissions by their witnesses that:  (a) the plutonium amount was so small that no health agency would have been concerned about such exposures; and (b) for various locations in the purported class area there is ***no*** evidence that the plutonium levels are any higher than background radiation.  Likewise, plaintiffs assert that "it is more likely than not that the ***entire*** class area is contaminated with plutonium from Rocky Flats"

(Pls.' Br. at 6) (emphasis added), and turn a blind eye to the testimony of their own class representatives who actually had their property tested, only to find that the plutonium on their property was no greater than background levels.  In a similar fashion, plaintiffs insist that Rockwell is liable for class-wide trespass, despite the admissions of their own witnesses that Rockwell's conduct, including that which gave rise to the 1992 guilty plea, did not result in offsite — much less class-wide — contamination.  Given these admissions and numerous others, no jury could properly infer that plaintiffs had established the elements of their claims.

*Third*, plaintiffs' response rests on the mistaken notion that *any* evidence (no matter how weak) suffices to meet their burden under Rule 50(b).  This Circuit has rejected such an interpretation of Rule 50(b).  Instead, "'[t]he question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury properly could find a verdict for the party.'"  *Hurd v. Am. Hoist & Derrick Co.*, 734 F.2d 495, 498–99 (10th Cir. 1984) (quoting 9A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2524 (1971)); *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1298 (10th Cir. 1998) ("A mere scintilla of evidence is not sufficient to submit a case to a jury."). Here, plaintiffs repeatedly offer no response to evidence presented by defendants, and thereby fail to show how the record, considered in its entirety, supports their position.  The Court should grant defendants judgment as a matter of law.  *See, e.g., Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 687-88 (10th Cir. 2007) (affirming grant of judgment as a matter of law); *Witt v. Roadway Express*, 136 F.3d 1424, 1432-33 (10th Cir. 1998) (same); *Wheeler v. Koch Gathering Sys., Inc.*, 131 F.3d 898, 906-07 (10th Cir. 1997) (reversing denial of defendant's Rule 50(b) motion); *Yearous v. Niobrara County Mem'l Hosp.*, 128 F.3d 1351, 1357 (10th Cir. 1997) (same).

2

## ARGUMENT

**I.     PLAINTIFFS FAILED TO PROVE TRESPASS.**

### A.     There Is No Proof That Plutonium Was Present On Each Class Property.

Not a single expert testified at trial that plutonium is present on all class properties today or as of the class date of June 7, 1989, and plaintiffs do not show otherwise in their response. Nor do plaintiffs address the testimony of additional class representatives and other lay witnesses who confirmed that they have no proof of class-wide, current plutonium contamination.  (Defs.' Br. at 19-20)  In fact, class representatives Sally and Richard Bartlett each testified that they actually had the soil on their property tested, and the results demonstrated that plutonium on their property was no greater than normal levels.  (S. Bartlett testimony, 10/14/05 Tr. 959-61; R. Bartlett testimony, 10/14/05 Tr. 1060-61; P962 (test results))  Again, plaintiffs offer no response to this testimony, but rather, admit even today that all the class properties have not been tested.  (Pls.' Br. at 6)  Plaintiffs' failure to meet their burden of proof on this threshold issue of class-wide contamination is fatal to their trespass claims.

Plaintiffs cannot avoid their burden of proof on this threshold issue by relying on evidence purportedly showing the presence of plutonium on *some* class properties, and then asking the jury to conclude that because plutonium is present on some properties "it is more likely than not that the *entire* class area is contaminated with plutonium from Rocky Flats." (Pls.' Br. at 6) (emphasis added)  If there is no plutonium from Rocky Flats present on a particular property, then there is no invasion.  An alleged invasion must be proven by plaintiffs and cannot be assumed.  (*See* Instructions 1.8, 3.2 & 3.3)  The class action device does not alter this burden of proof and plaintiffs cite no authority to the contrary.  *See, e.g.,* 28 U.S.C. § 2072

3

(Procedural "rules shall not abridge, enlarge or modify any substantive right"); *McManus v. Fleetwood Enters., Inc.,* 320 F.3d 545, 549 (5th Cir. 2003) (The procedural device of a class action "does not lessen the quality of evidence required in an individual action or relax substantive burdens of proof"); *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 345 (4th Cir. 1998) ("It is axiomatic that the procedural device of Rule 23 cannot be allowed to expand the substance of the claims of class members"); *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 319-21 (5th Cir. 1998) (reversing damages award based on extrapolation rather than individual evidence).

The evidence presented by defendants, which plaintiffs ignore, establishes that any such "inference" of class-wide contamination would also be unreasonable.  (*See, e.g.,* Defs.' Br. at 12-22 (discussing admissions of plaintiffs' own experts and witnesses))  For example, plaintiffs offer no response to the trial testimony of their own expert Dr. Budnitz in which he testified that (a) researchers such as Krey & Hardy — who developed the class contour — actually took very few samples in the class area; and (b) many of those measurements were not only indistinguishable from worldwide fallout, but "*[i]t's most likely* that those are worldwide fallout numbers . . . ."  (Budnitz testimony, 10/31/05 Tr. 3337) (emphasis added)  (*See also* Defs.' Br. at 13-14)  As Dr. Budnitz's testimony confirms, plaintiffs seek to allow the jury to extrapolate a class-wide conclusion from a few sample points even though (1) those samples do not distinguish plutonium from Rocky Flats from that existing as a result of world-wide fallout, (2) many of the samples do not correspond with the class area, (3) the samples do not collectively cover the class area, (4) the contours were not very precise, and (5) the samples were taken as much as decades before the class membership date and trial, and prior to pervasive and

4

soil-displacing development in the class area.  (Defs.' Br. at 12-22; Budnitz testimony, 10/31/05 Tr. 3335-37, 3341, 3344-47)   (*See also* DX1167, 1245, 1252 (reflecting that the imprecise contamination contours predicted by Poet and Martell, and Krey and Hardy, do not cover the whole class area))   Plaintiffs' expert Dr. Smallwood likewise conceded that he knew of no study that has determined that there is plutonium on the class properties today.  (Smallwood testimony, 11/3/05 Tr. 4083-84)  (*See also* Clapp testimony, 11/10/05 Tr. 4915)

Plaintiffs failed to establish that Rocky Flats plutonium invaded their properties even as to their class representatives and cherry-picked witnesses.  Class members called by plaintiffs as witnesses repeatedly testified that they did not know whether there was plutonium on their properties, and whether that plutonium was from Rocky Flats or other sources.  (*See* Defs.' Br. at 19-20)  It is undisputed that other class representatives like the Bartletts testified that actual test results reflected plutonium amounts on their property no greater than normal levels.  (*Id.*)  Thus, plaintiffs' characterization of defendants' evidence as an attempt to "argue with the proof" (Pls.' Br. at 4) misses the mark because the limitations of plaintiffs' evidence were proven at trial, including through the testimony of their own witnesses. Given these admissions, it is unreasonable for a jury to determine that plutonium was present class-wide at the time of trial. *Wickman v. Henderson*, 19 Fed. Appx. 740, 743 (10th Cir. 2001) (reversing failure to grant defendant judgment as a matter of law and making clear that "reasonable inferences themselves must be more than speculation and conjecture."); 9A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE 2d § 2528 (2007) (jury inference based on evidence must be reasonable).

Nor are the few pieces of evidence that plaintiffs offer in their response sufficient to allow a jury to reasonably infer that plutonium was present on each and every property as of the time of trial.  (Pls.' Br. at 3-6)  For example:

- Plaintiffs contend that numerous unspecified soil samples found plutonium offsite. (Pls.' Br. at 3-5)  But the fact that isolated samples found plutonium offsite decades before plaintiffs' lawsuit was filed does not allow a jury to properly infer that plutonium was present throughout the class properties at the time of trial.

- Plaintiffs argue that defendants' expert found plutonium to be "above background" throughout the entire class.  (Pls.' Br. at 5)  To the contrary, Dr. Till testified that none of the many soil sampling studies conducted around Rocky Flats demonstrates contamination in the class contour in 1989.  (Till testimony, 12/15/05 Tr. 8285)  Moreover, plaintiffs admit, as they must, that the RAC study in which Dr. Till participated found plutonium to be *at or below* expected background for a sample point within the class.  (Pls.' Br. at 5)  Such evidence not only fails to support plaintiffs' proof of class-wide plutonium, it refutes it.

- Plaintiffs argue that DX 477, Figure 2, shows that the level of plutonium would remain relatively consistent year to year.  (Pls.' Br. at 6)  But Figure 2 (taken from the Jones & Zhang survey) does not depict concentrations of plutonium in the class area. Instead, this chart reflects sampling conducted *onsite* (within two miles of the center of the Rocky Flats plant) from 1984-1992 prior to the onsite soil cleanup.  (*See* DX 477 at 17-18 (Article pages 4-5))  Thus, nothing in this chart (nor any testimony by Dr. Budnitz) would allow the jury to reasonably infer that plutonium levels remained consistent in the class area as a whole, particularly where development was occurring.[1]

In sum, a jury could not properly find class-wide contamination based on the model predictions offered by plaintiffs, particularly where, as here, those predictions were not precise when made, based on very few data points, based on topsoil samples taken twenty years before

---

[1] Plaintiffs mistakenly rely on statements of defense counsel that are taken out of context.  (Pls.' Br. at 3-4; *see also* Defs.' 12/08/05 Obj. to Exh. 1-4)  Counsel's statements were not admitted into evidence and, therefore, could not have been relied upon by a reasonable juror.  Indeed, plaintiffs' own position is that materials that have not been admitted cannot be a basis for the determination of this motion.  (*See* Pls.' Br. at 2, n. 1 ("The Court should disregard this and any other evidence that was not actually presented to the jury."))

the class membership date and before significant soil-displacing development in the class area, and later proved wrong by the real-world data in the trial record, such as sampling data from plaintiffs' own properties.  Plaintiffs' failure to introduce evidence that every class property was contaminated with plutonium from Rocky Flats as of 1989, and even as of trial, coupled with their failure to respond at all to the evidence that (i) specific, sampled class properties showed no such concentrations, and that (ii) there has been substantial development in the class area since 1970 (Defs.' Br. at 18-19), warrants judgment for defendants as a matter of law.

**B.      Plaintiffs Have Failed To Prove Any Trespass By Rockwell.**

Plaintiffs do not dispute that the Krey & Hardy and Poet & Martell study results on which they rely cannot establish that Rockwell released plutonium offsite because they pre-date Rockwell's plant operations.  (Defs.' Br. at 22-23)  Instead, plaintiffs claim that onsite "leaks and accidents" continued under Rockwell's management, as well as "routine releases" of plutonium. (Pls.' Br. at 12-13)  But plaintiffs' reliance on these purported onsite events only highlights the critical gap in their trial evidence — their failure to present evidence tying these alleged onsite events to actual, class-wide offsite contamination of plutonium from Rocky Flats by Rockwell.

All plaintiffs point to as evidence of purported "leaks and accidents" attributable to Rockwell is (i) pondcrete, (ii) underground line leaks, and (iii) open-air drying beds.  (Pls.' Br. at 12-13)  But plaintiffs cite no evidence that these events caused offsite — much less class-wide — plutonium contamination.  Plaintiffs' counsel's rhetoric, that "[s]ome of that contamination undoubtedly ended up in the class area," is not proof.  (Pls.' Br. at 12)  Nor could a reasonable juror infer class-wide contamination from these onsite events where, as here, plaintiffs simply cannot attribute pondcrete, process waste leaks, and sewage sludge to class-wide contamination.

(Pls.' Br. at 12-13, 34-35)  Plaintiffs nowhere address the admissions by their own witness, Timothy Holeman, that Rockwell's conduct, including that which gave rise to the 1992 guilty plea, did not result in offsite contamination.  (Defs.' Br. at 23)  Thus, any inference of class-wide contamination caused by Rockwell as a result of "leaks and accidents" is unreasonable.

Plaintiffs' reliance on continued "routine releases" is similarly misplaced.  (Pls.' Br. at 13-15)  Plaintiffs point to Dr. Goble's testimony that "'[t]he routine releases described on my list of things continued under Rockwell and there was continued re-suspension of plutonium from the soil."  (Pls.' Br. at 15)  But they do not go on to cite any evidence establishing that (a) the "routine releases" escaped the 7,000-acre Rocky Flats buffer zone, (b) escaped into the class area, and (c) were deposited on each class property.[2]  Likewise, Rockwell cannot be held liable for claimed re-suspension of any plutonium released prior to Rockwell's operation of the Rocky Flats plant.

Unable to establish the requisite link between these onsite events and offsite class-wide contamination, plaintiffs finally resort to the sweeping claim that "[a]ll plant operations contributed to the offsite pollution."  (Pls.' Br. at 15)  Not only does this contention conflate "offsite" with "class-wide," but plaintiffs fail to cite any trial evidence to prove that "all" plant operations contributed to offsite pollution. Their own witnesses make any such inference unreasonable.  (*See, e.g.,* Holeman testimony, 10/18/05 Tr. 1333-35)  Moreover, plaintiffs ignore

---

[2] Defendants have not repeated here many bases for judgment as a matter of law that are already fully set forth in their opening brief in support of their Renewed Motion for Judgment as a Matter of Law.  Defendants continue to preserve those arguments, including their repeatedly rejected argument that *de minimis* levels of plutonium cannot constitute a trespass.

the testimony of Michael Norton that "there had been no evidence of offsite physiological or environmental damage from the operations of the facility."  (Norton Testimony, 12/14/05 Tr. 7958-66) (cited at Defs.' Br. at 24)

Finally, plaintiffs argue "it would be impossible for plaintiffs, or anyone, to trace the exact path of each plutonium particle that migrated off-site, or to examine those deposited in the class area to determine whether they escaped during the Dow or Rockwell eras."  (Pls.' Br. at 15) This is not a case of joint and several liability.  Plaintiffs must establish the elements of their class-wide trespass claim for Rockwell.  (Jury Instruction No. 1.10)  The evidence plaintiffs point to in their response fails to establish class-wide contamination by Rockwell, thus entitling Rockwell to judgment as a matter of law.

   **C.     A Jury Could Not Properly Find A Continuing Trespass, Or That Any Trespass Occurred While Class Members Owned Their Class Properties.**

Plaintiffs attempt to establish a continuing trespass on behalf of both Dow and Rockwell by patching together results from surveys taken of undisturbed soil with general testimony about the possibility of re-suspension and bioturbation.  (Pls.' Br. at 16-18)  Neither type of evidence satisfies their burden of proof.  Plaintiffs' reliance on studies of undisturbed soil (Jones & Zhang,[3] Krey & Hardy, and Poet & Martell) does not deal with defendants' argument  that the *soil itself* did not remain on all the class properties.  (*See, e.g.,* Defs.' Br. at 25)  Plaintiffs' references to Dr. Smallwood and Joel Selbin's testimony regarding bioturbation and re-suspension fails for lack of specificity.  (Pls.' Br. at 17-18)  Evidence purportedly demonstrating

_____

[3] Moreover, the Jones & Zhang contours do not cover the entire class area during the period Rockwell operated the Rocky Flats plant.  (*See, e.g.,* DX1263, DX1264, DX1265)

that plutonium in soil *may* be disturbed and re-suspended does not rebut evidence that the soil itself was removed.  Equally important, it does not prove that plutonium was *in fact* on each class property while all class members owned their class properties.

Indeed, plaintiffs' experts have all conceded that they "did not know" of evidence that any plutonium deposited on the parcels studied by Krey & Hardy and Poet & Martell had not been removed by subsequent development.   (Smallwood testimony, 11/3/05 Tr. 4083-84 (testifying that he was not aware of anybody who has data showing that even in 1989 there was plutonium on the soil throughout the class area); Budnitz testimony, 10/31/05 Tr. 3346-47 (agreeing that development of subdivisions "would be one of any number of ways that soil containing plutonium might have been removed"); *see also* Clapp testimony, 11/10/05 Tr. 4915 (has not "seen any evidence that after this development took place and after these homes were built and after whatever disturbance of the soil took place that was associated with the building of those homes, that after that happened, then a soil sample was taken on such property and tested to determine whether there was plutonium on it."))  These admissions, coupled with the insufficiency of plaintiffs' evidence, undercut any claim of "continuing trespass."

### D.        Plaintiffs Did Not Introduce Sufficient Evidence Of Intentional Trespass.

Under the Court's instructions, to establish trespass, the invasion must result from an intentional act from which it is known that a trespass would follow.  (*See* Instruction 3.2); *see also Pub. Serv. Co. of Colo. v. Van Wyk,* 27 P.3d 377, 390 (Colo. 2001).[4]  Plaintiffs ignore the

---

[4] The proposed final draft of the RESTATEMENT (3D) OF TORTS § 1, at 8 makes clear that "[a]n intentional tort requires that the actor desires the harm to occur or knows that the harm is *substantially certain* to occur."  (emphasis added)  Moreover, the drafters of the RESTATEMENT
(Continued…)

evidence cited in defendants' opening brief to suggest that defendants "intentionally, and with full knowledge of the problem" acted to release plutonium into the class area.  (Pls.' Br. at 7) The trial evidence does not reasonably support plaintiffs' claim.

Despite their assertions of intentional conduct with respect to the 903 pad, plaintiffs do not dispute that extensive evidence was presented at trial demonstrating that Dow did what it could to avoid both storing the waste barrels on the 903 pad and to avoid environmental contamination from those drums.  (Ray testimony, 10/19/05 Tr. 1551-52, 1658-60, 1671-1673; Frazier testimony, 12/12/05 Tr. 7540-45; *see also* Defs.' Br. at 27-28)  Similarly, plaintiffs failed to rebut the evidence presented at trial demonstrating that Dow took substantial steps to avoid fires, particularly after the 1957 fire occurred.   In fact, plaintiffs' own expert testified to numerous steps taken by Dow to avoid fires.  (Budnitz testimony, 11/01/05 Tr. 3367-3368, 11/1/05 Tr. 3385-3386, 3403-3405, 3375-3376, 3381-3382, 3401-3402, 3396-3397)   While plaintiffs offered evidence of the unremarkable point that "[p]lutonium is pyrophoric" and that Rocky Flats experienced other fires, there is insufficient evidence that fires ***of this magnitude*** were part of the "normal" course of events or could have been anticipated by Dow.  (Pls.' Br. at 10)   Furthermore, as discussed above, there is insufficient evidence to establish that these purported "primary events" resulted in an invasion of each class property.  (*Id.* at 7)

_____

(3D) OF TORTS caution that the "test loses its persuasiveness when the identity of potential victims becomes vaguer and when in a related way the time frame involving the actor's conduct expands and the causal sequence connecting conduct and harm becomes more complex."  *Id.* at 9-10.

Not only have plaintiffs failed to establish any trespass by Rockwell, much less an intentional one (*see, e.g.,* Part I(B) *supra*), they ignore the numerous safety precautions that Rockwell attempted to implement.  For example, Rockwell sought to stop pondcrete production when NTS refused to take the waste.  (Weston testimony, 12/13/05 Tr. 7744-47)  Rockwell also sought an indoor storage facility for pondcrete, but had to wait several years before its request was approved.  (Weston testimony, 12/14/05 Tr. 8051, 8096-98; Norton testimony, 12/14/05 Tr. 7961-58)  (*See also* Defs.' Br. at 29)  As these examples reflect, plaintiffs have failed to prove any "intentional" conduct by Rockwell resulting in offsite, class-wide releases of plutonium.

## II. DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFFS' NUISANCE CLAIMS.

### A. Plaintiffs Failed To Establish An Actual Class-Wide Health Risk.

Plaintiffs rely on the testimony of Drs. Goble, Clapp, and Till to assert that an increased health risk exists due to Rocky Flats.  (Pls.' Br. at 19-20)  Yet, they do not (and cannot) dispute that the testimony of these very same experts establishes that the purported health risks at issue were so minimal that regulatory agencies would not have even been concerned about them. (Defs.' Br. at 39-42)  Dr. Goble, plaintiffs' own expert, testified that "some of these are very, very small exposures.  And, for instance, regulatory agencies would not have been concerned about such exposures."   (Goble testimony, 11/2/05 Tr. 3661)  Dr. Till explained that the cumulative 37-year historical doses are so low that (i) they are hundreds and thousands of times lower than the doses from background radiation that the average Coloradan is subjected to every year, (ii) they do not present real-world risks, and (iii) any risk from those doses is based only on a linear risk *assumption*.  (Till testimony, 12/15/05 Tr. 8273-81, 8282-83, 12/16/05 Tr. 8529-31) Dr. Raabe likewise testified that "[t]he doses we're talking about in this case are so trivial they

won't have any effect one way or another.  They're small, tiny fraction of what we get every week.  There's no way you can assign a risk or a benefit to such a small dose.  No way."  (Raabe testimony, 12/9/05 Tr. 7339-40; *see also id.* at 7270-71; DX536 at 23-25 (highest risks same as risk from background plutonium from fallout, within EPA's range of acceptable risk, and less than risk of dying from lightning strike); P1334 at 15-18 (same); DX1187; DX1779a; DX1843; DX1855; DX1856)  In short, plaintiffs proved no actual verifiable increased health risk.[5]

Nor have they established that any such abstract health risk exists class-wide.  Plaintiffs rely on the work of Dr. Goble and Dr. Clapp, but neither quantified any specific increased health risk to the class as a whole, as they admit.  (*See, e.g.,* Goble testimony, 11/2/05 Tr. 3660-61 (could only say that exposures were uncertain); Clapp testimony, 11/9/05 Tr. 4862-63, 11/10/05 Tr. 4908-10, 4918-19 (did not study the class or any actual exposures))  Plaintiffs also ignore the testimony of William Wecker explaining that Dr. Clapp's findings cannot be the basis of a reliable conclusion that cancer rates are higher for class members.  (Defs.' Br. at 41, n. 31)

Plaintiffs' assertion that it is defendants' burden to establish that some identifiable subset of the class did not experience a health risk misstates the law.  (Pls.' Br. at 21-22)  There can be no class-wide liability without class-wide interference.  Plaintiffs cannot shift to defendants the burden of proof on this basic element of their claims.  *E.g., Broussard*, 155 F.3d at 344-45 (impermissible to use the class action device to expand the rights of uninjured parties); *McManus*, 320 F.3d at 549.  (*See* Instruction Nos. 1.8 & 3.7)

---

[5] Defendants preserve their repeatedly rejected assertion that proof of some increased risk, no matter how small, fails to establish a nuisance claim, particularly under the Price Anderson Act.

As to Rockwell, plaintiffs point only to non-specific evidence of "routine releases" and re-suspension of soil in claiming that Rockwell caused an increased health risk to the class. For the reasons discussed above, no increased health risk to the class may be attributed to plutonium released by Rockwell as no such class-wide releases were ever shown.

**B.      Plaintiffs Failed To Introduce Evidence That All Class Members Are At An Actual Increased Risk As A Result Of Future Releases From Rocky Flats.**

Plaintiffs' evidence also is insufficient to allow a jury to properly determine that all class members are at an increased health risk as a result of future releases from Rocky Flats. Plaintiffs ignore the undisputed evidence that the Rocky Flats site has been fully demolished and remediated. Instead, they take a "snapshot" of the purported conditions as of "the CCE time" to claim that a future risk existed as of that point in time. (*See, e.g.,* Pls.' Br. at 22-26) It is impossible, however, to evaluate the situation as of the CCE date because the jury did not fix the CCE date at any particular time. Furthermore, defendants are entitled to defend the case by showing that no harm or risk to plaintiffs actually occurred as of the time of trial. *See, e.g.,* RESTATEMENT (2D) OF TORTS § 930, cmt. ("Obviously, however, the defendant is at liberty to dispute the averment that the situation is one that will probably continue indefinitely as by proof that he has remedied the cause of harm or is about to do so, and if the fact is so found, the plaintiff will be confined to damages for past invasions."); *see also Cook v. Rockwell Int'l Corp.*, 358 F. Supp. 2d 1003, 1013 (D. Colo. 2004) ("Defendants may defeat this showing, and thus preclude Plaintiffs from recovering prospective damages, by demonstrating that they or others have abated or remedied the trespass or nuisance or are about to do so.").

Nor are plaintiffs' criticisms of the cleanup at Rocky Flats sufficient to establish a future class-wide health risk. While some of plaintiffs' witnesses questioned the adequacy of the

cleanup standard, they did not tie the actual, cleaned-up conditions at the Rocky Flats site to any specific increased health risk to each and every class member.  Defendants affirmatively demonstrated that there was no future health risk to class members.  (*See* Blaha testimony, 1/4/06 Tr. 8637-8823; Till testimony, 12/15/05 Tr. 8290-93; DX454, ATSDR 5/13/05 report, at 76 ("[L]evels of offsite surface soil contamination are no apparent public health hazard for past, current and future exposures."))  Although plaintiffs' witnesses suggest that some unknown quantity of plutonium could possibly be re-suspended, there is no evidence that such re-suspension, even if it occurs, would affect each and every class property, and certainly no evidence that possible re-suspension would create an increased health risk class-wide.

Finally, any inference of future class-wide health risk would be unreasonable where it is undisputed that thousands of class members sold their class properties each year after 1989, and do not live on these properties today.  (*See* Jury Verdict Form at 14, ¶ 11)  Plaintiffs' response that the risk is to the property and not to the class members themselves rests on an incomplete and incorrect reading of Jury Instruction No. 3.7.  (Pls.' Br. at 26-27)  Jury Instruction No. 3.7, as well as Jury Instruction No. 3.6 reflect that the elements of a nuisance claim are tied at all times to the ***class members'*** use and enjoyment of their properties.  Plaintiffs' response, thus, fails to address defendants' point that, with respect to potential future harm, many former property owners no longer own (and no longer live on) their class properties and thus ***they*** are not (and cannot be) subject to any possible future risk.  These class members will not suffer any property or personal damage from future health risks related to Rocky Flats, or any other impairments in the future use of land which they no longer own.  Thus, they cannot claim an interference on that basis.  Accordingly, plaintiffs cannot show class-wide future risk.

**C.     Plaintiffs Have Not Shown A Substantial And Unreasonable Health Risk.**

Plaintiffs begin by incorrectly contending that defendants have misstated the standard for determining what constitutes a "substantial" nuisance because they need only show that the claimed interference, not the increased health risk, was substantial.  (Pls.' Br. at 45-46)  This argument ignores the Court's instructions that the ***increased health risk is the interference*** that plaintiffs could attempt to establish.  (Instruction No. 3.6; 5/17/05 Order at 5-6)  Because plaintiffs failed to establish that any increased health risk itself is substantial, their claim fails.

Instead of establishing that the health risk is substantial, plaintiffs next focus on the perception of those health risks, regardless of whether they are based in fact or the product of sensationalism.  Specifically, plaintiffs rely on (1) the testimony of Dr. Slovic, (2) "anecdotal evidence" from a handful of class members about their fears, as well as testimony concerning various municipalities, and (3) purported evidence of diminished property values near Rocky Flats.  (Pls.' Br. at 44)  None of this "evidence" proves a substantial interference.

***First***, Dr. Slovic's testimony cannot establish whether the health risk perceived by the class was significant enough that a normal person in the community would find it offensive, annoying or inconvenient.  Dr. Slovic did not attempt to isolate the effect of defendants' actual conduct from other acknowledged effects such as (1) false media reports of events at Rocky Flats, (2) events at Rocky Flats that had no offsite impact, and (3) the mere fact that Rocky Flats was a nuclear facility involved in the production of nuclear weapons.  (Slovic Testimony, 11/7/05 Trial Tr. 4305-06, 4308-09, 4311-12, 4316-18)  As a result, he could testify only to the market's general perception of Rocky Flats.  His testimony as to how Rocky Flats ***could*** generally be perceived is too vague and insufficient to meet plaintiffs' burden of proof.

16

**Second**, instead of offering results from a scientifically valid survey isolating actionable Rocky Flats conduct and controlling for false and sensational media coverage, plaintiffs rely on anecdotal evidence from a handful of cherry-picked witnesses, including the named plaintiffs themselves. (Pls.' Br. at 44-45) But even plaintiffs argue that it is the ***average*** person who must view the risk as substantial.[6] Not only did plaintiffs fail to establish that these witnesses were "average" class members, defendants presented unrebutted evidence to the contrary at trial. (*See, e.g.,* Ozaki testimony, 10/20/05 Tr. 1831-32 (not worried, even though he is a class member); Whalen testimony, 11/21/05 Tr. 5954, 5966-67 (her sister, who is also a class member, was not concerned); Schierkolk testimony, 10/20/05 Tr. 1944-45 (likes his house and does not want to move); Holeman testimony, 10/18/05 Tr. 1347 (describing class member who bought more property in the area); Bowman testimony, 11/21/05 Tr. 6064-65, 6113) (same)) Nor can plaintiffs rely on evidence of various municipal actions, such as those of the City of Broomfield. As plaintiffs' own witness made clear, the town of Broomfield continued to annex land within the class area well after learning about the FBI raid. (Ozaki testimony, 10/20/05 Tr. 1793-95)

**Third,** as discussed below, plaintiffs did not establish a diminution in property value. Furthermore, any alleged property value diminution was not tied to the alleged health risk and, thus, does not support a finding that the nuisance was "substantial."

Ultimately, plaintiffs ignore that an unfounded risk cannot constitute an actionable and substantial nuisance. (*See* Defs.' Br. at 71-72) Plaintiffs' response that an interference need not

---

[6] An additional problem, as described further below, is that plaintiffs' witnesses did not specifically link these fears to the alleged increased health risks from Rocky Flats (or any actionable conduct by defendants).

attract the attention of regulators or medical professionals to be substantial (Pls.' Br. at 46),

misses the point – that the purported health risk at issue here was so insignificant that, as

plaintiffs' own experts and witnesses admit, it did not, and would not, attract the attention of any

regulators or medical professionals.   To be actionable the nuisance must not be merely

theoretical.  Likewise, it cannot be slight or trivial.  *See, e.g.,* 66 C.J.S. NUISANCES § 25 (2007)

("The injury or annoyance which will warrant relief against an alleged nuisance must be of a real

and substantial character, disturbing comfort or impairing enjoyment of property . . . There is no

nuisance in a legal sense if the injury or inconvenience is merely theoretical, or if it is slight or

trivial, or fanciful, or one of mere delicacy or fastidiousness")).[7]  Based on the evidence, a jury

could not find that these standards were met here.

Not only did plaintiffs provide insufficient evidence that the alleged nuisance was

substantial, they failed to prove at trial that the alleged nuisance was unreasonable.  In weighing

"the gravity of the harm" versus "the utility" of defendants' conduct, the trier of fact may only

consider the "lowest common exposure" and "lowest common risk" experienced by the class —

namely, "very, very small exposures" that even "regulatory agencies would not have been

concerned about."  (Goble testimony, 11/2/05 Tr. 3661; *see also* Raabe testimony, 12/9/05 Tr.

---

[7]  The cases that plaintiffs cite in support are inapposite.  (Pls.' Br. at 46)  For example, plaintiffs
cite three ***negligence*** (not nuisance) cases which do not address (and do not support) plaintiffs'
interpretation of what constitutes a "substantial" nuisance as a matter of law.  *Bayer v. Crested
Butte Mountain Resort, Inc*., 960 P.2d 70 (Colo. 1998) (noting that compliance with regulatory
standards is relevant in determining whether negligence exists); *Blueflame Gas, Inc. v. Van
Hoose*, 679 P.2d 579 (Colo. 1984) (a product liability negligence case); RESTATEMENT (2D) OF
TORTS § 288(C) (a negligence provision).  Nor is plaintiffs' reference to *Allison v. Smith*, 695
P.2d 791 (Colo. Ct. App. 1984) useful as that case stands only for the limited proposition that
compliance with zoning regulations does not preclude a nuisance claim.  *Id.* at 794.

7339-40)  When such exposures are weighed against the undisputed evidence of the important national security and local economic benefits from Rocky Flats operations, no reasonable fact finder could determine that the claimed nuisance was unreasonable.  *See, e.g., Van Wyk*, 27 P.3d at 393.  That tens of thousands of class members purchased their properties after any purported nuisance arose and was publicized is an added reason that a jury could not properly determine that any interference was substantial and unreasonable.  *See, e.g.,* RESTATEMENT (2D) OF TORTS § 840(D); W. Page Keeton, *et al.*, PROSSER AND KEETON ON THE LAW OF TORTS § 88 (5th ed. 1984), at 630, 635; *Platte & Denver Ditch Co. v. Anderson*, 6 P. 515, 521 (Colo. 1885).

> **D.** **Plaintiffs Did Not Show That Defendants Intentionally Or Negligently Caused A Health Risk.**

For the reasons described above and in defendants' Renewed Motion, Dow's conduct related to the 903 pad, the 1957 fire, and the 1969 fire was neither intentional nor negligent.  (*See* Part I(D) *supra*; Defs.' Br. at 56-57)  In addition, because there is no evidence that Rockwell caused ***any releases*** of plutonium to each class property, plaintiffs' evidence is insufficient to support a finding that Rockwell intentionally or negligently created a nuisance.

**III.** **DEFENDANTS' CONDUCT WAS NOT CAPABLE GENERICALLY OF CAUSING FEAR, ANXIETY, OR MENTAL DISCOMFORT.**

Defendants are entitled to judgment as a matter of law on the question of whether their conduct was generically capable of causing fear, anxiety, or mental discomfort in class members for the following reasons, which are fully set forth in defendants' motion (and elsewhere): (a) The generic question of emotional distress cannot support a judgment on plaintiffs' nuisance claims due to remaining individualized issues (Defs.' Br. at 67-68; Instruction No. 3.28); (b) plaintiffs did not introduce any evidence that defendants' actionable conduct was capable of

causing emotional distress (Defs.' Br. at 69); and (c) plaintiffs cannot recover for emotional distress without demonstrating that their fears were grounded in science (*id.* at 70-72).

## IV.    PLAINTIFFS DID NOT INCUR RECOVERABLE DAMAGES.

Plaintiffs do not address either the unreliability of their damages evidence or defendants' argument that such evidence should have been stricken.  The evidence they do offer does not satisfy their burden of proof on damages.

### A.    The Jury Could Not Properly Attribute Alleged Damages To Defendants' Actionable Conduct.

Plaintiffs claim that there are two prongs to their damages evidence:   (1) market perceptions of Rocky Flats (including, although not entirely based upon, the plutonium and nuisance), and (2) lower property values.[8]  (Pls.' Br. at 61)  But plaintiffs do not, and cannot, trace either of these prongs back solely to the alleged trespass and nuisance, as opposed to other non-actionable factors.  For example, plaintiffs claim that the work of Drs. Flynn and Slovic showed stigma as a result of environmental and health problems related to Rocky Flats.  (Pls.' Br. at 74-76)  However, Flynn and Slovic failed to segregate impact attributable to defendants' actionable conduct from impact attributable to non-actionable factors such as proximity of Rocky Flats.  In studying public attitudes about Rocky Flats, Flynn and Slovic did not even try to distinguish between attitudes stemming from defendants' wrongful conduct and attitudes stemming from conduct that was reported in the news, but did not actually happen.  (Slovic testimony, 11/7/05 Tr. 4305-06, 4308-09, 4311-12)   Nor did they attempt to differentiate

---

[8]  Defendants dispute that any diminution occurred for reasons previously stated.  (*See, e.g.,* Defs.' Br. at 85-90; Defs.' Rule 59 Mot. at 17-26)

between any impact resulting from the FBI raid and impact from other factors.   (Flynn testimony, Dep. Design. 102-03, 198)  They also did not attempt to identify and distinguish public concern over the mere fact that Rocky Flats was a nuclear facility, which they concede would impact people's reactions.  (Slovic testimony, 11/7/05 Tr. 4317-18)  At bottom, Flynn and Slovic failed to link plutonium contamination or health risk due to defendants' alleged actionable conduct to the alleged diminution in property values.

Nor did any of plaintiffs' other experts establish this fundamental, requisite link between purportedly lower property values and actionable conduct.  To the contrary, plaintiffs' expert witnesses freely admitted at trial that they ***could not*** draw such a conclusion.  (*See, e.g.,* Radke testimony, 10/26/05 Tr. 2753 ("I measured proximity.");  Radke testimony, 10/26/05 Tr. 2676 ("I wanted to measure—could I measure the impact of the raid and what it had—did it have any impact at all on property value."); Hunsperger testimony, 12/6/05 Tr. 6683, 12/7/05 Tr. 6788 (for MLS analysis, "we just looked at those that were closer to Rocky Flats for indications of stigma."); Hunsperger testimony, 12/6/05 Tr. 6672)

Plaintiffs also cannot rely on a few isolated statements from lay witnesses (specifically, Whalen, Robb, Sally Bartlett, and Cook) about their personal health concerns to supply the missing link to property value diminution.  None of these statements sufficiently isolate either the contamination or the health risk (as opposed to other concerns they or others may have had about Rocky Flats) as the source of any property value diminution.  In fact, these witnesses repeatedly emphasized that their concern was fueled by publicity surrounding the FBI Raid, which is not actionable.  (*E.g.*, Whalen testimony, 11/21/05 Tr. 5955 (the raid affected how she viewed her property) & 5938-39 (raid affected use and enjoyment); Schierkolk testimony,

10/20/05 Tr. 1902 (could not sell property after raid); Babb testimony, 10/20/05 Tr. 1961 (raid affected her ability to sell); Cook testimony, 10/21/05 Tr. 2039-40 (FBI raid made her give up on her property), 2056-58 (testified at her deposition that the only claim she was making was based on the FBI raid); S. Bartlett testimony, 10/14/05 Tr. 919-22 (raid had a tremendous impact on ability to sell her home))  The FBI raid related to onsite conduct that was not proven to have anything to do with offsite contamination (trespass) or health risk (nuisance).  And as described in defendants' initial brief, the raid was instigated by a third party and the major allegations underlying the raid were proven to be false.[9]  Plaintiffs' response that they need not show that all the information causing the stigma was true is wrong as a matter of law.  (Pls.' Br. at 74) Requiring defendants to pay damages resulting from actions non-parties took against the defendants when those actions are either unactionable, unfounded, and/or false lacks any legal support, and would violate due process.  (*See, e.g.*, Instruction Nos. 3.19A & 3.21 (damages must result from defendants' trespass or nuisance))

Plaintiffs' complete failure to separate the impact on their claimed damages of defendants' actionable conduct with undisputedly non-actionable factors and events leaves the jury with no proper legal or factual basis on which to rest any damages determination.  A jury could not properly attribute the entirety of the claimed damages to defendants.  Nor could it

---

[9]  Plaintiffs now argue that one of the allegations may have been true.  But their own witnesses testified that the raid allegations in general were false.  (*E.g.*, Holeman testimony, 10/17/05 Tr. 1292-96 (Holeman was "dubious" of claims FBI was making when they went in because he knew some could not be true); Watkins testimony, Dep. Design. at 155-57, 161 (FBI went in for the wrong reason); P604; P736)  Furthermore, it cannot be legitimately disputed that the raid allegations had nothing to do with either the offsite plutonium contamination or any alleged health risk to the class.  (*See* Defs.' Br. at 85)

properly apportion any part of the claimed damages to defendants' conduct where plaintiffs' failed to present any evidence of disaggregation. Under these circumstances, plaintiffs failed to present at trial competent proof of the correct measure of damages, and judgment should be awarded to defendants as a matter of law. *See, e.g.,* Instruction 3.21 (to award plaintiffs damages, jury must find that plaintiffs proved by a preponderance of the evidence that the class incurred damages "as a result of the trespass and/or nuisance caused by Dow or Rockwell or both of them"); Instruction 3.22 (diminution in value that plaintiffs may recover is difference between actual value and value properties would have had if Dow and/or Rockwell "had not committed the trespass and/or nuisance proved by Plaintiffs"); Instruction No. 3.24 (general proximity not enough); Instruction 3.19A (if reach damages issue, must apportion damages attributable to each defendants' trespass or nuisance); *Westric Battery Co. v. Standard Elec. Co.*, 482 F.2d 1307, 1318 (10th Cir. 1973) (it is "only the damage flowing legally from the defendant's misdeeds which counts")); *Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 415-16 (7th Cir. 1992) ("[P]eople who want damages have to prove them . . . .The expert should have tried to separate the damages that resulted from the lawful entry of a powerful competitor — Nordisco — from the damages that resulted from particular forms of misconduct allegedly committed by that competitor."); *Morgan Stanley & Co., Inc. v. Coleman Holdings, Inc.*, --- So.2d ---, No. 4D05-2606, 2007 WL 837221, at *6-7 (Fla. App. Ct. Mar. 21, 2007) (reversing final judgment and remanding for entry of judgment for defendant Morgan Stanley where plaintiff "failed to present any competent proof at trial establishing the absence of non-fraud related factors," and, therefore, failed to present proof on the correct measure of damages).

**B.      Plaintiffs Failed To Demonstrate That Any "Injurious Situation" Became Complete And Comparatively Enduring Between 1988 And 1995.**

Regardless of whether the "injurious situation" is viewed as a trespass (contamination) or nuisance (health risk), plaintiffs failed to introduce any evidence that the injurious situation became complete and comparatively enduring between 1988 and 1995.  Plaintiffs claim that the CCE date is between 1989 and 1992 because the events surrounding the raid magnified preexisting diminution.  (Pls.' Br. at 84)  Plaintiffs further assert that they learned of problems at the plant by means of the FBI raid and that there was a corresponding "spike" in property value diminution after the raid.  (*Id.* at 85)  But it is the injurious situation that defines the CCE date – not subsequent publicity.  All the evidence at trial showed that neither the alleged trespass (plutonium contamination) nor the alleged nuisance (health risk) could have become complete and comparatively enduring during that time frame.  According to plaintiffs' own evidence, the claimed contamination and all alleged health risk occurred before 1970.  (*See* P1150; P1151; P149A & P939; P1124, Goble Report, at 49)[10]  Because plaintiffs failed to introduce evidence that the contamination or health risk upon which their case was based became complete and comparatively enduring between 1988 and 1995, no jury could have properly decided otherwise.

**V.      DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFFS' DEMAND FOR PUNITIVE DAMAGES.**

As the Tenth Circuit has observed, "Colorado puts a heavy burden on a plaintiff to show why punitive damages are to be awarded in a particular case."  *Juarez v. United Farm Tools,*

---

[10] Plaintiffs also argue that the injury was not "mature" until after the FBI raid because routine releases and other problems continued.  But it was undisputed at trial that 99.9% of plutonium releases and a similar percentage of any exposure occurred before 1970.  (*E.g.,* DX 454)

*Inc.,* 798 F.2d 1341, 1342 (10th Cir. 1986). The burden is particularly heavy where, as here, there is evidence that defendants undertook significant safety precautions. In *Juarez,* the Tenth Circuit reversed a punitive damages award in light of the safety precautions taken by defendant:

> Punitive damages are appropriate, however, only if the evidence shows beyond a reasonable doubt that the defendant disregarded the consequences of the risk. Even when viewing the evidence in the light most favorable to Juarez, he did not meet that "heavy burden" in this case . . . . The uncontested testimony established that the defendant had included [a relevant] warning in its list of safety instructions for the cart . . . . The warning shows that the defendant did not "disregard the consequences" of the danger posed by the running auger.

798 F.2d at 1343; *see also* W. Page Keeton, *et al.,* PROSSER AND KEETON ON THE LAW OF TORTS § 2 at 9-10 (5th ed. 1984) ("Something more than the mere commission of a tort is always required for punitive damages. There must be circumstances or aggravation of outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called willful and wanton."); Dan B. Dobbs, THE LAW OF REMEDIES § 3.11(1) (2d ed. 1993) ("Punitive damages are awarded only for very serious misconduct coupled with a bad state of mind involving malice or at least a reckless disregard for the rights of others"); Charles T. McCormick, HANDBOOK OF THE LAW OF DAMAGES § 79 (1935) at 280-81 ("Since these damages are assessed for punishment and not for reparation, a positive element of conscious wrongdoing is always required").

Here, plaintiffs do not dispute that the evidence at trial (including evidence from their own witnesses) demonstrated numerous safety precautions taken by defendants to avoid plutonium releases. Plaintiffs do not cite a single case in which punitive damages were awarded despite such reasonable safety precautions taken by the defendant.

Plaintiffs' claim that defendants' compliance with federal and state standards fails to preclude a finding of punitive damages where a defendant should have done more is equally flawed.[11]  (Pls.' Br. at 89-91)  Compliance with standards is compelling evidence that punitive damages are not warranted.  (*See, e.g.,* 9/13/05 Hr'g Tr. 6 ("Evidence [of compliance with standards] is relevant . . . to the issue of punitive damages.")); *Richards v. Michelin Tire Corp.*, 21 F.3d 1048, 1059 (11th Cir. 1994) (finding compliance with regulations to be evidence of due care, and granting judgment notwithstanding the verdict where totality of evidence was insufficient to support wantonness claim); *Alley v. Gubser Dev. Co.*, 785 F.2d 849, 856 (10th Cir. 1986) (defendants' conduct complied with industry standards and was not willful or wanton); *United States v. Hooker Chems. & Plastics Corp.*, 850 F. Supp. 993, 1068 (W.D.N.Y. 1994) ("actual awards of punitive damage are rare in the absence of conclusive evidence of serious injury or deliberate flaunting of regulatory standards. There is no evidence of either in this record").

Nor can plaintiffs dismiss undisputed evidence of defendants' compliance with federal and state standards with sweeping claims that the governing standards themselves were unclear, that defendants' cited standards do not strictly apply, and that defendants violated ALARA (the principle of keeping releases "as low as reasonably achievable").  (Pls.' Br. at 89-95)  The evidence at trial established defendants' compliance with federal and state standards designed by federal and/or state regulators who were specifically tasked with, and concerned about, health

---

[11]  Plaintiffs cite the RESTATEMENT (2D) OF TORTS § 288(C), which addresses only ordinary negligence and not punitive damages.

issues related to the levels of plutonium in soil, air, and water.  For instance, the state plutonium-in-soil standard was set by the Colorado Department of Health to be protective of human health and is intended to be "ultraconservative."   (Hazle Dep. Ex. 4 ("A Risk Evaluation for the Colorado Plutonium-In-Soil Standard," Colo. Dept. of Health, Jan. 1976); *see also* Hazle Dep. Ex. 194, A. Hazle letter to Murphy ("Therefore, both the State and EPA in their efforts have used the soil concentration as an index below which a significant health impact on the population at risk is not anticipated."))  Any offsite plutonium releases onto class member properties met or exceeded those ultraconservative standards, as proven by the fact (among other things) that the State allowed development of the thousands of class properties on such land.  Defendants' compliance with these standards undermines any claim of "willful and wanton" conduct.[12] Moreover, the testimony at trial showed that although ALARA is a philosophy as opposed to a specific enforceable standard, defendants complied.  (*See, e.g.,* Frazier testimony, 12/12/05 Tr. 7588; *see also In re TMI*, 67 F.3d 1103, 1114 (3d Cir. 1995) ("The regulation could not be more clear.  The guidelines that satisfy ALARA 'are not to be construed as radiation protection standards.'"))  Under these circumstances, no jury could properly find defendants' actionable

---

[12] The evidence was also undisputed with respect to defendants' compliance with these standards.  (*See, e.g.,* DX 1651a; DX 1663; DX 1664; Frazier testimony, 12/12/05 Tr. 7529-31 (the plant was always in compliance with DOE or AEC's standards for plutonium in air); *Id.* at 7534-37, 7539; Budnitz testimony, 10/31/05 Tr. 3335-36 (1970 contour below standards for plutonium in soil); Holeman testimony, 10/18/05 Tr. 1363, 1370-71 (water met standards for plutonium in water and other standards); *see also* DX 34, Broomfield Water Quality Report (no violations of Safe Drinking Water Act standards); Norton testimony, 12/14/05 Tr. 7967-68 (based on surface water monitoring at the plant borders, no Safe Drinking Water Act violations noted by cities of Broomfield or Westminster); Weston testimony, 12/14/05 Tr. 8096 ("I never saw anything even close to standard."))

conduct to be either intentional or negligent, and certainly not willful or wanton.[13]   Thus, the

punitive damages finding should be reversed.

## CONCLUSION

For the foregoing reasons and the additional reasons set forth in defendants' Renewed

Motion, the Court should set aside the jury's verdict in its entirety and grant defendants judgment

as a matter of law on plaintiffs' claims of trespass and nuisance, on plaintiffs' claim for damages,

and on plaintiffs' partial claim of generic emotional distress.

Dated:   April 27, 2007                                      Respectfully submitted,


                                                             /s/ John E. Tangren
                                                             One of the Attorneys for the Defendants
                                                             David M. Bernick
                                                             Douglas J. Kurtenbach
                                                             Ellen Therese Ahern
                                                             Stephanie Brennan
                                                             John E. Tangren
                                                             KIRKLAND & ELLIS LLP
                                                             200 East Randolph Drive
                                                             Chicago, Illinois 60601-6636
                                                             Phone:  312-861-2000
                                                             Fax:     312-861-2200

                                                             Joseph J. Bronesky
                                                             SHERMAN & HOWARD L.L.C.
                                                             633 Seventeenth Street, Suite 3000
                                                             Denver, Colorado 80202

---

[13] Much of the evidence cited by plaintiffs refers to conduct that has nothing to do with the purported trespass or nuisance. But as explained in defendants' opening brief, defendants' non-actionable conduct is not relevant to this issue, because there is insufficient nexus to plaintiffs' damages to allow such conduct to be the basis for punitive damages.  (Defs.' Br. at 104)  *E.g., Bennett v. Greeley Gas Co.*, 969 P.2d 754, 761 (Colo. Ct. App. 1998) ("[T]he conduct referred to is that causing the injuries.   It is the quality of that tortious act, not the character of the wrongdoer, that justifies exemplary damages.")

Phone:  303-297-2900
Fax:      303-298-0940

Attorneys for ROCKWELL
INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 27, 2007 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses for the following:

Peter B. Nordberg, Esq.
BERGER & MONTAGUE P.C.
1622 Locust Street
Philadelphia, PA  19103
pnordberg@bm.net
kmarkert@bm.net

Gary B. Blum, Esq.
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206
blumg@s-d.com

/s/_____Courtney Biggins_____
(Courtney Biggins)