# Exhibit 6

#405

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 75-M-1162

PERRY S. McKAY, et al.,

     Plaintiffs,

WILLIAM C. ACKARD, et al.,

     Intervenors,

vs.

UNITED STATES OF AMERICA, et al.,

     Defendants.

---

## SETTLEMENT AGREEMENT

---

This Settlement Agreement ("Agreement"), made and entered into this _14th_ day of December 1984, is by and between: Perry S. McKay, and Charles C. McKay, individually; Perry S. McKay, Charles C. McKay and First Interstate Bank of Denver, N.A. (formerly the First National Bank of Denver), as personal representatives of the estate of Marcus F. Church, deceased, and as Trustees under the Last Will and Testament of Marcus F. Church, Deceased, and Charles Church McKay and Edward A. Landry, Successor Trustees of the Ruth McKay Trust, (hereafter referred to collectively as "McKays"); William C. Ackard, Samuel Butler, Jr., and Butler Investments, Ltd., a limited partnership (hereafter referred to collectively as "Ackard-Butler"); and Great Western Venture, a Colorado limited partnership ("Great

Western"); all of whom also may be referred to hereafter as "Plaintiffs"; and

Dow Chemical Company ("Dow") and Rockwell International Corporation ("Rockwell"), both of whom also may be referred to as "Government Defendants";

the Board of County Commissioners of the County of Jefferson, Colorado ("County"); State of Colorado ("State"); both of whom may also be referred to hereafter as "State Defendants"; and

the United States Department of Energy ("Department").

Government Defendants and State Defendants may also be referred to jointly as "Defendants."

WHEREAS, McKays are Plaintiffs and Ackard-Butler is intervening Plaintiff in Civil Action No. 75-M-1162 against Defendants, and Great Western is Plaintiff in Civil Action No. 75-M-1296 against Defendants, both actions being in the United States District Court for the District of Colorado ("Court"); and

WHEREAS, Plaintiffs and Defendants have reached an agreement to settle their disputes and to terminate such litigation; and

WHEREAS, Plaintiffs own certain lands in Jefferson County, Colorado, and claim property damages and other relief from the Government Defendants arising out of the operations of the Rocky Flats Plant ("Plant"), a nuclear weapons production facility owned by the United States, formerly operated by Dow, and since July 1, 1975, operated by Rockwell under Contract DE-AC04-76-DPO-3533 with the Department ("Rockwell Contract"); and

WHEREAS, the Government Defendants deny any and all liability to Plaintiffs; and

WHEREAS, Plaintiffs and the Government Defendants have agreed to settle their respective claims and defenses as stated in this Agreement; and

WHEREAS, McKays and Ackard-Butler also seek property damages and other relief from the State Defendants arising from their actions with respect to the use and development of the lands of the McKays and Ackard-Butler; and

WHEREAS, the State Defendants deny any and all liability to these Plaintiffs; and

WHEREAS, McKays, Ackard-Butler and the State Defendants have agreed to settle their respective claims and defenses as stated in this Agreement; and

WHEREAS, there is also now pending in the Court Civil Action No. 75-M-1111, wherein the Good Fund, Ltd. - 1972 a Texas limited partnership and Good Financial Corporation, a Texas corporation ("Good") has sued the McKays and the Government Defendants arising out of Good's purchase from the McKays of certain lands east of the Plant, which suit shall be settled or defended by Rockwell under this Agreement; and

WHEREAS, this Agreement has been prepared and executed as a result of settlement negotiations conducted before and supervised by the Honorable Sherman G. Finesilver, Chief Judge of the Court, and this Agreement also is the result of: (1) the interest of the City

-3-

of Broomfield ("City") in obtaining certain of the Plaintiffs' lands east of the Plant for reservoir expansion and other purposes as specified herein; (2) the interest of the County in obtaining certain of the Plaintiff's lands east of the Plant for purposes specified herein which are consistent with its land use plan for the area and with its nearby Standley Lake regional park; (3) the interest of the Department and Rockwell in maintaining the undeveloped status of such eastern lands for security, ease of ingress and egress, and other purposes, and in accommodating the objectives of other governmental agencies; and (4) the interest of the State in maintaining the general undeveloped character of such eastern lands which is consistent with its Emergency Response Plan for the Plant; and

WHEREAS, Great Western and Ackard-Butler own approximately 564 acres abutting Indiana Street east of the plant and the City has expressed an interest in acquiring approximately 354 acres from Great Western and Ackard-Butler pursuant to this Agreement, and the County has expressed an interest in acquiring approximately 210 acres from Ackard-Butler pursuant to this Agreement; and

WHEREAS, the McKays own approximately 275 acres abutting Indiana Street east of the Plant and approximately 1,160 acres to the west and south of the Plant and the County has expressed an interest in acquiring approximately 275 acres of McKays' property east of the Plant pursuant to this Agreement; and

WHEREAS, the McKays own approximately 125 acres of land west of the Plant and about 1,035 acres of land south of the Plant,

which they shall retain ("retained McKay lands"), and the McKays
contemplate applying for rezoning of some or all of these lands to
allow industrial, office and non-intensive commercial uses, and
Rockwell has agreed to take certain steps to provide plant informa-
tion to prospective purchasers and land use planning assistance to
McKays;

NOW, THEREFORE, for and in consideration of the premises,
the mutual understandings and agreements of the parties hereto, and
other good and valuable consideration, the receipt and adequacy of
which are hereby mutually acknowledged, it is hereby agreed as
follows:

1. <u>Payment</u>.

a. Rockwell, on behalf of all Government Defendants,
agrees, within 10 days following Court approval of this
Agreement, and pursuant to a signed stipulation of the
Plaintiffs and Rockwell and Court Order for Investment of Funds
(Exhibit 1 hereto), to deposit 8.75 million dollars of United
States Government funds in a Court-supervised, interest-bearing
account in a national banking association in the name of the
Clerk of the Court. Distribution of such funds shall be made in
accordance with paragraph 6, Closing, hereof pursuant to such
stipulation and Court Order and subparagraph b hereof. If
Closing does not occur, such funds, together with all interest
thereon, shall be returned to Rockwell.

b.   Payments by parties to this litigation at Closing to Plaintiffs shall be as follows:

i.   $6.75 million, plus interest, shall be paid from such account into escrow as established under the Specific Performance Contract, Exhibit 3 hereto, or to McKay's if no escrow is established pursuant to that contract.

ii.   $2.0 million, plus interest, shall be paid from such account jointly to Great Western and Ackard-Butler.

iii.   $1,150,060 shall be paid by the County, jointly to Great Western and Ackard-Butler by County warrant.

2.   <u>Agreements of Plaintiffs</u>.

a.   At Closing, Plaintiffs agree to convey to the City and the County good and merchantable title to the lands described in the attached Specific Performance Contracts with the City and County (Exhibits 2 and 3 hereof).

b.   McKays agree to use their best efforts and to apply due diligence to obtain, by Closing, industrial, office and/or non-intensive commercial zoning from the County for its retained lands.  The McKays agree that they will not reject any reasonable conditions which are part of the rezoning approval.

c.   Plaintiffs agree within 60 days after Closing, to return to Rockwell all copies of documents and materials

obtained from the Government Defendants and the United States by Plaintiffs and their counsel through discovery in these cases or under the Freedom of Information Act (5 U.S.C. § 552a), as well as to submit duly-executed affidavits from Plaintiffs' counsel to the effect that all known copies of such documents and materials in possession of Plaintiffs and their counsel have been returned to Rockwell, that no copies of such documents or materials remain with Plaintiffs or their counsel, and that Plaintiffs' counsel have used their best efforts to obtain such documents and materials from third persons to whom Plaintiffs have delivered such documents and materials and to return the same to Rockwell.

d.   Plaintiffs agree only not to oppose or object in any manner to Defendants' motion to the Court to make the findings referred to in paragraph 8.b hereafter.

e.   McKays agree to refer to Rockwell any inquiries from prospective buyers as to the amounts of radioactive materials released from the Plant and present on the McKays' lands and the consequences thereof.

f.   McKays agree that if Rockwell constructs a water pipeline and supplies treated water, as stated in paragraph 3.c, hereafter, McKays agree to pay to Rockwell, monthly, an amount equal to:  (1) the cost to Rockwell of the raw water charges from the Denver Water Board for water used by the McKays; (2) Rockwell's cost for treatment of the raw water for water

used by the McKays; and (3) the amortized cost over 40 years and at no interest, of the installed water pipeline and related pumps.

g.  At Closing, Plaintiffs agree to dismiss with prejudice all claims in Civil Action Nos. 75-M-1162 and 75-M-1296 against Defendants and the United States of America and to execute and deliver to Rockwell a release of the Defendants and the United States of America.

3.  <u>Agreements of Department and Rockwell</u>.

a.  Upon Court approval of this Agreement, Rockwell agrees to make payments to the McKays for land use planning assistance in accordance with and subject to the conditions of Exhibit 4.

b.  Upon Court approval of this Agreement, Rockwell agrees to designate one of its employees to be a coordinator for the dissemination of information on the Plant to landowners, real estate developers, lenders, prospective users, and state and local government entities.  Within 10 days after Court approval hereof, Rockwell shall provide the name, address, and phone number of such person to Plaintiffs.  Information to be provided on request shall include that pertaining to the Plant mission, past incidents, current and past environmental impacts and the condition of surrounding lands with regard to the presence thereon of plutonium and americium from the Plant, and shall include the provision of expert testimony reasonably

necessary and available from Department resources on such matters in connection with McKays' applications for rezoning and similar requests for permits related to McKays' retained lands. This commitment shall be for a period of three years from the date of Court approval of this Agreement.

    c. i. Rockwell agrees that if after Closing McKays construct a facility or facilities on their land located in Section 9, west of the Plant, Rockwell will use its best efforts, consistent with its needs for off-plant space at the time and without any obligation to breach the terms and conditions of existing off-plant leases, to utilize such a facility or facilities, consistent with its applicable procurement procedures. The two factors primarily used in procurement of rental space are proximity to the Plant and cost per square foot. Rockwell's obligations hereunder shall be for the period of five years from Closing.

    ii. At the time a decision is made by Rockwell to utilize such a facility or facilities and before completion of construction of such a facility or facilities by McKays or its agents or contractors, Rockwell agrees, at its initial expense, to construct a water pipeline not greater than 6 inches in diameter for McKay's exclusive use from the Plant's water treatment facility to a point, determined solely by Rockwell, on that portion of Section 9 owned by McKays. The routing of such pipeline across the

Plant to such point shall also be Rockwell's sole
determination.

    iii.  Upon completion of such water pipeline and
installation of related pumps in its water treatment facil-
ity, Rockwell agrees, upon notice by McKays, to supply up
to 20,000 gallons per day to such point. Rockwell shall
install a water meter at such point and shall bill McKays
monthly for water usage, under the billing formula stated
in paragraph 2.f. hereof. This obligation shall continue
notwithstanding Rockwell's failure to continue use of said
facility. Rockwell shall have no other obligations regard-·
ing construction of pipelines or supply of water except as
stated above.

    d.  On Court approval of this Settlement Agreement,
Rockwell agrees, if requested, to disclose in writing whatever
material facts are legally necessary to fully inform any pro-
spective buyers, or the City or the County, about the amounts of
radioactive materials released from the Rocky Flats Plant and
present on McKays' retained land and Plaintiff's eastern lands
and including that the risks associated with those amounts of
such materials are sufficiently small that they can be disre-
garded in any consideration relating to use of the lands.

    e.  Contingent upon Closing taking place and upon
written request of McKays, the Department shall permit McKays
access to certain portions of the Rocky Flats "Buffer Zone" only

-10-

for the general purposes of: drilling and extracting oil and gas; drilling and extracting well water; and construction and maintenance of a water storage reservoir. The complete purposes, terms and conditions of such access shall be as specified in the attached permits. (Exhibits 5, 6 and 7).

f. Within 60 days after Court approval of this Agreement, Government Defendants agree to file with the Court a motion seeking the findings referred to in paragraph 8.b.

g. Upon Court approval of this Agreement, Rockwell agrees to negotiate in good faith with Good in an attempt to settle Good's case against the McKays, to obtain a release of McKays and Government Defendants from Good, and to obtain the release of Good's lis pendens on McKays' property and Ackard-Butler's property. If such efforts fail to result in a settlement by Closing, Rockwell shall protect, defend, indemnify and hold harmless McKays from any cost, damage, expense and liability, including reasonable attorneys' fees, arising out of or in connection with such case or lis pendens.

4. Agreements of State and County.

a. The State and the County represent that the Colorado Department of Health ("CDH") is the sole agency of the State with jurisdiction on matters related to radiation hazards.

b. The County represents that it is the agency with responsibility for land use and development regulation.

-11-

c.   The County shall utilize the CDH's plutonium-in-soil and guidelines entitled "R.H.4.21 <u>Permissible Levels of Radioactive Materials in Uncontrolled Areas</u>," effective May 1973 (hereinafter referred to as the "State Standard"), and shall abide by CDH's specific response received by the County in connection with the approval process for any proposed development of McKays' properties.

d.   Subject to performance by Rockwell of the actions described in paragraph 5 hereof, the State and County agree with respect to the McKays' retained land that:

i.   Such lands are suitable for industrial, office, and non-intensive commercial use and development, notwithstanding the following matters:  The presence of certain amounts of radioactive materials released from the Plant, the proximity of such land to the Plant, the State's Emergency Response Plan, the State's Area of Concern, and the terms of the letter of April 12, 1979, from Frank Traylor, M.D., then Executive Director of CDH.

ii.   The State and County will not limit the use and development of the McKay's retained lands beyond their present zoning, notwithstanding the matters described in paragraph d.i.

iii.   The State and County shall not deny, delay, or restrict any application for rezoning, platting, or issuance of building permits with respect to the McKays'

retained lands on account of the matters stated in paragraph d.i.

iv.   The State and County shall diligently consider, act upon, and decide, consistent with applicable policies, guidelines, statutes, ordinances, and regulations, any and all rezoning, platting, and building permit applications the McKays may submit concerning the use and development of their retained lands for such industrial, office, and non-intensive commercial purposes.

e.   Subject to performance by Rockwell of the actions described in paragraph 5 hereof, the State agrees to deliver to. McKays a duly executed certificate to the effect that the retained McKay lands have been tested for levels of plutonium and americium and that such tests show that the concentrations of such materials are at or below the State Standard.   The State also agrees to deliver a similar certificate to Great Western, Ackard-Butler, McKays, or their governmental grantees, regarding Plaintiffs' lands to the east of the Plant and assuring their suitability for reservoir expansion, park and open space uses.

f.   The State and County agree to support Government Defendants' motion to be filed pursuant to paragraph 3.f hereof.

g.   The County agrees to execute an agreement substantially in the form of the Specific Performance Contract attached hereto as Exhibit 3.

5. <u>Remedial Actions</u>.

a. Upon Court approval of this Agreement, Rockwell, in consultation with the State, agrees to commence and complete, within 90 days after receipt of McKays' written request to do so, and within the time-frames prescribed in Exhibit 8 discussed below, such soil sampling, testing, soil mixing, and reseeding or other processes, as is necessary to establish that the concentrations of plutonium and americium on McKays' retained lands have been reduced to or below the State Standard. These activities shall be conducted in accordance with the attached "Procedure for Remedial Action." (Exhibit 8). Rockwell will take such action at no cost, expense, or risk to McKays and shall not unreasonably interfere with McKays' cattle operation on said lands.

b. Upon Rockwell performing the soil sampling, testing, and remedial action described above, the County and State agree that no further action of that type will ever be required as a condition of zoning, platting, or issuance of building permits unless CDH determines that a release of plutonium from the Plant has occurred that could contaminate McKays' lands to a level above the State Standard. In the event of such a release, Rockwell shall, at the option of McKays, again take such soil sampling, testing, and remedial actions as are necessary to establish that concentrations of plutonium and americium on McKays' retained properties do not exceed the State Standard.

c.  Upon Court approval of this Agreement, Rockwell, in consultation with the State, agrees to commence and complete within 180 days after receipt of Plaintiffs' (or, after Closing, their grantee's) written request to do so and within the time-frames prescribed in Exhibit 8, such soil sampling, mixing, reseeding (or other processes) and testing on all of Plaintiffs' eastern lands (including the approximately six acres to be retained by McKays) as is necessary to reduce any such concentrations of plutonium and americium in the soils of such lands to or below the State Standard.  These activities shall be conducted in accordance with the attached Exhibit 8, "Procedure for Remedial Action."  Rockwell shall take this action at no cost, expense, or risk to Plaintiffs or their governmental grantees.

d.  Nothing herein shall be construed to imply that Government Defendants or the Department concur in the reasonableness, appropriateness, or applicability of the State Standard.

6.  **The Closing.**

a.  The Closing shall be held at the offices of Sherman & Howard, 633 Seventeenth Street, Denver, Colorado, at 10:00 a.m, Mountain Daylight Time, on July 8, 1985.  The date and time of closing may be advanced or delayed by the written concurrence of the parties to this Agreement.

b.  At the Closing all steps shall be taken and all documents and transactions delivered and completed which are

-15-

specified herein, which are necessary, and which may reasonably be required to consummate this Agreement.

c.   Without limiting the generality of the foregoing at Closing:

i.   Rockwell shall cause the Clerk of the Court to deliver to Plaintiffs checks for the principal amounts as set forth in paragraph 1 hereof, with accumulated interest, to each Plaintiff.

ii.   County shall deliver to Ackard-Butler and Great Western a warrant for the amount set forth in paragraph 1 hereof.

iii.   Plaintiffs shall deliver to Defendants duly executed Releases identical to that attached hereto as Exhibits 9-A, 9-B, and 9C, a duly executed Stipulation for Dismissal in Civil Action Nos. 75-M-1162 and 75-M-1296, identical to that attached hereto as Exhibit 10.

iv.   Plaintiffs shall deliver to the City and County duly-executed warranty deeds, as more specifically set forth in the attached Specific Performance Contracts.

v.   The Department shall deliver to McKays duly executed Permits identical to those attached hereto, provided however that McKays may elect to have the execution and delivery of any of such Permits accomplished after Closing, which election shall be made in writing and delivered to the Department at Closing.

-16-

    vi. Rockwell shall deliver to Ackard-Butler and McKays duly executed Releases of Lis Pendens previously filed by Good on McKays' and Ackard-Butler's eastern lands in connection with Civil Action No. 75-M-1111 in the Court, together with a duly-executed Stipulation for Dismissal with Prejudice in such case and a duly-executed release by Good of McKays and Ackard-Butler.

7. <u>Post-Closing Obligations</u>.

    a. Promptly after the Closing, Plaintiffs shall deliver to the City and County such documents as are required in the attached Specific Performance Contracts.

    b. Within 60 days after Closing, Plaintiffs shall deliver to Rockwell the original and all available copies of the documents and materials described in subparagraph 2.c., as well as the duly executed affidavit referred to in such subparagraph.

8. <u>Conditions Precedent to Closing</u>.

    a. The obligations of Plaintiffs under this Agreement to be performed at or after Closing are subject to the satisfaction of the following conditions, any of which may be waived by Plaintiffs:

    i. by Closing the retained McKay properties shall have been rezoned for industrial, office, and/or non-intensive commercial purposes, reasonably satisfactory to McKays.

-17-

ii.   by January 23, 1985, or such later date as Plaintiffs may mutually agree, the City shall have approved and signed a Specific Performance Contract substantially in the form of Exhibit 2 hereto;

iii.   by December 19, 1984, or such later date as Plaintiffs may mutually agree, the Denver Water Board shall have approved and signed a Permission for Special Use Agreement substantially in the form of Exhibit 11 hereto.

iv.   by December 12, 1984, or such later date as Plaintiffs may mutually agree, the County shall have approved and signed a Specific Performance Contract substantially in the form of Exhibit 3 hereto.

b.   The obligations of Defendants under this Agreement to be performed at or after Closing are subject to the satisfaction of the following conditions which may be waived by Defendants:

i.   by Closing findings by the Court shall have been made, including that the risks associated with levels of plutonium and americium on lands adjacent to the Plant, as evidenced by Government Defendants' soil sampling data, are sufficiently small that they can be disregarded in any considerations relating to use of the lands.

ii.   by January 23, 1985, or such later date as Defendants may mutually agree, the City shall have approved

and signed an agreement substantially in the form of that
attached hereto as Exhibit 12.

c.  Prior to the Closing, all parties shall use their
best efforts to assure satisfaction of, and shall not take any
action which would prevent satisfaction of, the above conditions
of Closing.

d.  If the above conditions of Closing has not been
satisfied by July 8, 1985, or such other date as the parties may
agree to in writing, then the parties shall meet and confer and,
absent any agreement, any party which is not in default hereun-
der may terminate this Agreement without any further obligations·
hereunder.

9.  Indemnification.

a.  Subject to the availability of funds under the
Rockwell Contract, Rockwell agrees to defend, protect, and
indemnify Plaintiffs and their government grantees and hold them
harmless from all liability, loss, damage, and expense, includ-
ing reasonable attorneys' fees, arising out of or in connection
with any claims of any third party which may hereafter be
asserted against Plaintiffs or their government grantees on
account of the remedial actions taken on Plaintiffs' lands east
of Indiana Avenue under paragraph 5 hereof, or on account of the
presence of radioactive materials previously released from the
Plant and now present on such eastern lands, or on account of
the disclosures made by Rockwell under paragraph 3.d hereof.

-19-

b. Subject to the availability of funds under the
Rockwell Contract, Rockwell agrees to defend, protect, and
indemnify the McKays and hold them harmless from all liability,
loss, damage, and expense, including reasonable attorneys' fees,
arising out of or in connection with the claim of any third
party which may hereafter be asserted against the McKays on
account of the remedial actions taken on McKays' retained lands
under paragraph 5 hereof, on account of the disclosures respect-
ing such retained lands made by Rockwell under paragraph 3.d
hereof, or on account of the presence of radioactive materials
released from the Plant and present on such retained lands..

c. If sufficient funds are not available under the
Rockwell Contract to satisfy the indemnity obligation of
subparagraphs a. and b. above, Rockwell and the Department will
use their best efforts to obtain additional Department funding
therefor.

d. Nothing contained in this Agreement shall affect
the existing indemnity obligations of the Department (including
its predecessor agencies) under its contracts with Dow and
Rockwell for operation of the Rocky Flats Plant, including, but
not limited to, the provisions of such contracts pertaining to
allowability of costs, litigation and claims, and the nuclear
hazards indemnity provisions included in such contracts under
the authority of the Price-Anderson Act (Section 170(d) of the
Atomic Energy Act (42 U.S.C. § 2210(d)).

e.  The obligations and liabilities of Rockwell hereunder with respect to claims resulting from the assertion of liability by third parties shall be subject to the following terms and conditions:

i.  The party hereto seeking indemnification ("the Indemnitee") will give Rockwell notice of any claim promptly after the Indemnitee receives notice thereof, and Rockwell will undertake the defense thereof by representatives of its own choosing.  Failure to give such notice shall not waive the obligations of Rockwell except to the extent, if any, that actual prejudice shall be shown.

ii.  In the event that Rockwell, within 30 days after notice of any such claim, fails to defend, the Indemnitee will (upon further notice to Rockwell) have the right to undertake the defense, compromise, or settlement of such claim on behalf of and for the account and risk of Rockwell, subject to the right of Rockwell upon notice to Indemnitee to assume the defense of such claim at any time prior to settlement, compromise, or final determination thereof.

f.  The indemnities contained in subparagraphs a and b hereof are solely for the benefit of Plaintiffs and their government grantees under this Agreement and shall not apply to any subsequent purchaser or assignee therefrom.

-21-

10. **Miscellaneous.**

a.   All obligations assumed by Rockwell under this Agreement, including any exhibit or document incorporated herein, are assumed by Rockwell solely as the operator of the Rocky Flats Plant and in performance of the Rockwell Contract. Rockwell shall be relieved of any obligation hereunder which is not fully satisfied at such time as the Rockwell Contract is terminated or expires, and the Department shall cause any such unsatisfied obligation to be assumed by a successor contractor engaged by the Department for the operation or maintenance of the Rocky Flats Plant.

b.   This Agreement is contingent upon approval thereof by the Court.  If such approval is not given or is terminated by a party not in default hereunder due to the non-satisfaction of a condition precedent, this Agreement shall be of no force and effect and the parties shall have no obligation hereunder, and Civil Action Nos. 75-M-1162 and 75-M-1296 shall be rescheduled for trial as promptly as possible.  If such approval is given, the Court shall retain jurisdiction to enforce this Agreement for a period of one (1) year following Closing.

c.   This Agreement is uniquely beneficial to each party and it is specifically enforceable by all parties hereto. In the event of any breach or failure to perform, the prevailing party in any suit or proceeding to enforce this Agreement or to

-22-

recover damages for breach shall be entitled to recover all of
its cost and expenses of litigation, including reasonable
attorneys' fees, from each party at fault.

d. All terms, conditions and other provisions of
this Agreement, and other agreements referred to herein or to be
executed pursuant hereto, have been and will continue to be the
result of "compromise negotiations" within the meaning of
Rule 408 of the Federal Rules of Evidence. No evidence of any
statement or conduct of any party in the course of such negotia-
tions or pursuant to this Agreement or any agreement executed
pursuant hereto, is or will be admissible in Case
Nos. 75-M-1162, 75-M-1296, or 75-M-1111, or in any other civil
proceeding, to prove the liability for or the invalidity of any
claim or defense in any of such actions or proceedings. For
purposes of this paragraph d., "party" shall mean any party to
the above-referenced civil actions and any party to any agree-
ment executed pursuant to this Agreement and shall include the
Denver Water Board, the City of Westminster, the City of
Broomfield, and all parts or agencies of the County and the
State.

e. The parties agree that execution of this
Agreement is not and shall not be construed as an admission of
liability or wrongdoing by any Defendant. It is further agreed
that this Agreement has no precedential effect, value or impact

whatsoever and that it is entered into solely for purposes of avoiding the costs and uncertainties of continued litigation.

f. The parties shall cooperate fully with each other with respect to all matters contemplated by this Agreement and shall take all reasonable actions and do all reasonable things necessary and/or appropriate to effect this Agreement.

g. Any notice which is or may be required hereunder must be in writing and may be delivered personally or by mail, postage prepaid, properly addressed to the signatories as indicated below. Any party may change its address from that indicated by sending written notice of such change to the others in the manner set forth above. A notice given by mail shall be deemed to have been given three (3) days after the date on which the same was posted.

h. This Agreement is binding upon and shall inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors and assigns. Any and all modifications to this Agreement shall and must be in writing and signed by the parties whose rights or interests are to be affected by any such modification.

i. With respect to all lands of the Plaintiffs to be transferred to the City, it is expressly understood and agreed that the City shall be a third-party beneficiary of this Agreement and entitled, subject to all terms and conditions hereof, to enforce this Agreement with respect to the

-24-

obligations of Rockwell and the Department of Energy under this Agreement.

j. This Agreement, when approved by the Court, shall remain under seal until the Closing occurs. The parties agree, so long as this Agreement shall remain under seal, not to disclose the provisions hereof to any person not a party hereto, except pursuant to a joint press release to be made by the parties. The form, content and timing of the joint press release shall be agreed upon by the parties within 10 days of Court approval of this Agreement. Nothing contained herein shall preclude disclosure by the Parties of any information to their counsel, to the governing bodies of the City or County or their employees in connection with this Agreement or as required by applicable law.

This Agreement may be executed in counterparts, and the execution by all parties, whether of one or more counterparts, will constitute a fully executed Agreement.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives on the date first above written.

**Plaintiffs**

Perry S. McKay, Charles C. McKay and First Interstate Bank of Denver, N.A., as personal representatives of the estate of Marcus F. Church, deceased, and Trustees Under the Last Will and Testament of Marcus F. Church, Deceased

By_____
    Perry S. McKay
    400 Braeburn Way
    Los Angeles, CA 90027

By_____
    Charles C. McKay
    c/o Church Ranch
    10100 Wadsworth Blvd.
    Broomfield, CO 80020

By_____
    (Title)VICE PRES. DEPT AND TRUST OFFICER
First Interstate Bank of
    Denver, N.A.

**Defendants**

The Dow Chemical Company

By_____
    James H. Hanes, Vice President
Dow Chemical USA, and Associate
    General Counsel
The Dow Chemical Company
Willard H. Dow Center
Midland, Michigan 48640

ROCKWELL INTERNATIONAL
    CORPORATION

By_____
Title_____
    Rocky Flats Plant
    P. O. Box 464
    Golden, CO 80401

DEPARTMENT OF ENERGY

By_____
Title_____
    Rocky Flats Area Office
    P. O. Box 928
    Golden, CO 80401

-26-

Charles Church McKay and
Edward Landry, Successor
Trustees to Marcus F.
Church, Deceased


By _____
~ Charles Church McKay


By _____
     Edward A. Landry
     One Wilshire Blvd.,
     20th Floor
     Los Angeles, CA 90017


_____
     William C. Ackard
     Ackard Land Company,
     179 South Monroe Street
     Denver, CO 80209

_____
     Samuel Butler, Jr.
     1660 Lincoln Street
     Denver, Colorado 80264

_____
     Perry S. McKay

_____
     Charles C. McKay


BUTLER INVESTMENTS, LTD.
By _____
     Samuel Butler, Jr.
     General Partner

Great Western Venture

By _____
Title _____


BOARD OF COUNTY COMMISSIONERS
Jefferson County, Colorado
Jefferson County Courthouse
Golden, CO 80419

By _____
     Title _____


_____


SHERMAN & HOWARD
Attorneys for Rockwell

By _____
     William F. Schoeberlein


ROBERT N. MILLER, U.S. Attorney
District of Colorado
Attorneys for Dow

By _____
Jake J. Chavez, Special Assistant
United States Attorney


_____
H. Lawrence Hoyt
Assistant County Attorney
Attorney for Jefferson County

-27-

Adonis A. Neblett, Assistant
Attorney General
Attorney for State

FAIRFIELD AND WOODS
Attorneys for McKay and
Ackard-Butler

By _____

Carol M. Welch
Hall & Evans
Attorneys for State

STATE OF COLORADO

By _____
    Radiation Control Division
    Colorado Department of Health

BUTLER, LANDRUM, PIERCE &
TURNER, Attorneys for Great
Western Venture

By _____

Approved this _14th_ day of December, 1984:


RICHARD W. WILLARD,
Acting Assistant Attorney General

JEFFRY AXELRAD, Director
Donald E. Jose, Assistant Director
Pamela L. Wood, Trial Attorney
Torts Branch, Civil Division
United States Department of Justice
Washington, D.C.

ROBERT N. MILLER
United States Attorney
District of Colorado

By _____
   Jake J. Chavez
   Special Assistant
  United States Attorney

This Settlement Agreement is approved this _____ day of

December 1984.


BY THE COURT:

Sherman G. Finesilver, Judge

REPLY VIA ITT

EI&H DVR

DOWCHEM MIDL F
HSG PN5219
DECEMBER 14, 1984

JAKE J. CHAVEZ
C/O SHERMAN AND HOWARD
DENVER, CO
FT

J. Viass

THIS IS TO CONFIRM OUR TELEPHONE CONVERSATION THAT I APPROVE
OF THE CHANGES MADE IN THE SETTLEMENT AGREEMENT IN THE
CHURCH/MCKAY CASE AND WILL SIGN THE ORIGINAL AS MODIFIED
WHEN IT IS CIRCULATED FOR SIGNATURES.

J. H. HALES
LEGAL DEPARTMENT
THE DOW CHEMICAL COMPANY
2030 WILLARD H. DOW CENTER
MIDLAND, MI 48640  USA
TLLEX 227 455  DOW

DOWCHEM MIDL F

EI&H DVR

# FAIRFIELD AND WOODS

ATTORNEYS AND COUNSELORS AT LAW

1600 COLORADO NATIONAL BUILDING

950 SEVENTEENTH STREET

DENVER, COLORADO 80202

TELEPHONE (303) 534-6135

TELECOPIER (303) 892-9095

GEORGE C. KEELY
MARY E. BRICKNER
CHARLES E. MATHESON
PETER F. BREITENSTEIN
CHARLTON H. CARPENTER
PATRICK F. KENNEY
BRUCE B. JOHNSON
HOWARD HOLME
JAMES L. STONE
MICHAEL M. MCKINSTRY
WILLIAM R. NEFF
JAC K. SPERLING
KEVIN B. PRATT

OF COUNSEL
ROYAL C. RUBRIGHT

CHARLES J. BEISE (1909-1983)

DANIEL R. FROST
DARRELL G. WAAS
MARY JO JACOBS
ROBERT A. HOLMES
ROBERT C. FISHER, JR.
JOHN J. SILVER
JOAN E. SOMMERFELD
THOMAS P. KEARNS
ROCCO A. DODSON
MARY E. MOSER
STEPHEN W. SEIFERT
CHRISTINE K. TRUITT
HENRY I. LOWE
CHRISTINA N. BEATON
BRENT T. JOHNSON
PATRICIA D. McGRAW

December 14, 1984

Mr. William F. Schoeberlein
Sherman & Howard
Attorneys at Law
633 Seventeenth Street, #2900
Denver, Colorado 80202

HAND DELIVERED

Dear Bill:

Re:  Rocky Flats Settlement

We enclose copies of two mailgrams, plus a note that we received from Perry McKay. We recognize the informality of these powers of attorney. Please consider whether they are satisfactory for your purposes or whether you want a more formal document signed. We can prepare such a document if you request or, if you have a form of power of attorney that you want, feel free to send it to us.

Very truly yours,

Howard Holme
of
Fairfield and Woods

HH:rk
Enclosures



LAS FELIZ PLAZA
3949 LAS FELIZ BLVD
LOS ANGELES CA 90027 09AM

4-0104895344 12/09/84 TCS IPMMTZZ CSP DVRB
  2127535868 MGMB TDMT NEW YORK NY 152 12-09 0638P EST

MR HOWARD HULME
1600 COLORADO NATIONAL BUILDING
FAIRFIELD AND WOODS
950 EAST 17 ST
DENVER CO 80202

I, PERRY S MCKAY, OF THE CITY OF NEW YORK AND STATE OF NEW YORK
REPOSING SPECIAL TRUST AND COMPETENCE, DO HEREBY APPOINT MY BROTHER,
CHARLES CHURCH MCKAY OF FALLBROOK CALIFORNIA MY AGENT AND MY TRUE AND
LAWFUL ATTORNEY IN FACT FOR ME AND IN MY NAME, PLACE AND STEAD, TO
MAKE ALL DECISIONS CONCERNING AND TO SETTLE AND SIGN ALL SETTLEMENT
PAPERS AND DOCUMENTS CONCERNING MCKAY VS US, 75M1296, AND 75M1111,
AND 751296.

I FURTHER AUTHORIZE HIM TO SIGN MY NAME TO, SEAL AND DELIVER FOR ME
WHATEVER SETTLEMENT AGREEEMENTS, SPECIFIC PERFORMANCE CONTRACTS,
ZONING APPLICATIONS, WATER AGREEMENTS, LAND PLANNING CONTRACTS,
PERMITS OR PERMIT APPLICATIONS, RELEASES, ASSIGNMENTS OR TRANSFER OR
ANY OTHER DOCUMENTS OF ANY KIND TO ACCOMPLISH THE POWER HEREIN GIVEN
TO HIM, UNTIL JANUARY 1 1985.
  PERRY S MCKAY AND PERRY SIDWAY MCKAY

18:40 EST

MGMCOMP



LOS FELIZ PLAZA
3949 LOS FELIZ BLVD
LOS ANGELES CA 90027 09AM

4-002966S344 12/09/84 ICS IPMMTZZ CSP DVRB
2127535868 MGMB TDMT NEW YORK NY 122 12-09 1013A EST

MR CHARLES C MCKAY CARE HOWARD HOLME
FAIRFIELD AND WOODS 950 EAST 17 ST
DENVER CO 80202

PURSUANT TO OUR MANY TELEPHONE CONVERSATIONS REGARDING ROCKY FLATS
LITIGATION THIS IS YOUR FULL POWER OF ATTORNEY TO SIGN FOR ME THE
SETTLEMENT AGREEMENT WITH THE UNITED STATES, ROCKWELL INTERNATIONAL
AND THE DOW CHEMICAL COMPANY AS OUTLINED TO ME TODAY CONTAINING 6.75
MILLION DOLLARS FOR CERTAIN LANDS AND IN ADDITION TO OTHER PROVISIONS
AS YOU OUTLINED TO ME TODAY I AM ARRANGING FOR THIS METHOD OF YOUR
SIGNING THE AGREEMENT FOR ME SINCE I WILL BE IN LONDON MONDAY DEC 10
1984 WHEN YOU ARE TO APPEAR IN FEDERAL DISTRICT COURT IN DENVER
BEFORE CHIEF JUDGE SHERMAN G FINESILVER TO EFFECT SETTLEMENT
    PERRY S MCKAY

10:15 EST

MGMCOMP

NEW YORK ATHLETIC CLUB
180 CENTRAL PARK SOUTH
NEW YORK. N. Y. 10019

December 9th, 1984
N. Y. , N. Y. 6:40 pm EST

Mr. Ho2 ard Holme
FAIRFIELD AND WOODS
950 East Seventeenth St
Denver, CO 80302

Dear Mr. Holme:

This will confirm and seal the power of
Attorney for my brother, Charles Church
McKay, dated December 9th, 1984, NY NY,
6:35 pm EST, inconnection with McKay VS
US, 75M1296, 75M1111, and 75M1296, sent
via Mailgram Western Union Telegraph Co.
Very truly yours,

Perry S. McKay

Perry Sidway McKay

P. S.  This is being done since I will be
in London on December 10th, 1984.