## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-181-JLK

MERILYN COOK, *et al.*,

      Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

      Defendants.

---

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
## MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL

---

David M. Bernick
John E. Tangren
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636
Phone: 312-861-2000
Fax:    312-861-2200

Joseph J. Bronesky
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado  80202
Phone: 303-297-2900
Fax:    303-298-0940

Attorneys for ROCKWELL
INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY

# TABLE OF CONTENTS

INTRODUCTION....................................................................................................................1

ARGUMENT..........................................................................................................................2

I.      THIS CASE ABUNDANTLY SATISFIES THE STANDARDS FOR AN
INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)........................................2

II.     AN INTERLOCUTORY APPEAL IS THE ONLY AVAILABLE MEANS
TO IMMEDIATE APPELLATE REVIEW....................................................................6

      A.     Prejudgment Interest .............................................................................7

              1.     The CPI Adjustment ........................................................................8

              2.     The Personal Injury Statute..........................................................14

              3.     The Consumer Credit Code ..........................................................16

              4.     Future Damages ............................................................................22

      B.     Allocation of Damages ..........................................................................22

      C.     Section 930 Damages Subclass...............................................................25

      D.     Disposition of Unclaimed Funds ...........................................................25

      E.     A Sum Uncertain....................................................................................27

      F.     Easements ...............................................................................................29

      G.     The Identification of Class Members......................................................31

      H.     The Form of the Judgment .....................................................................34

CONCLUSION .....................................................................................................................37

# TABLE OF AUTHORITIES

**Cases**

*Ahrenholz v. Bd. of Trustees of Univ. of Ill.*,
219 F.3d 674 (7th Cir. 2000) .......................................................................... 2

*Albright v. UNUM Life Ins. Co.*,
59 F.3d 1089 (10th Cir. 1995) ...................................................................... 23

*Ballow v. PHICO Ins. Co.*,
878 P.2d 672 (Colo. 1994).............................................................................. 17

*Bd. of County Comm'rs of Weld County v. Slovek*,
723 P.2d 1309 (Colo. 1986)............................................................................ 26

*Black Gold, Ltd. v. Rockwood Indus.*,
529 F. Supp. 272 (D. Colo. 1981).................................................................. 11

*Blake v. Califano*,
626 F.2d 891 (D.C. Cir. 1980) ....................................................................... 13

*Bouchat v. Baltimore Ravens, Inc.*,
241 F.3d 350 (4th Cir. 2001) ........................................................................... 6

*Chicago, R. I. & P. R. Co. v. Speth*,
404 F.2d 291 (8th Cir. 1968) ......................................................................... 14

*Clinchfield Coal Co. v. Fed. Mine Safety & Health Review Comm'n*,
895 F.2d 773 (D.C. Cir. 1990)........................................................................ 13

*Computer Sys. Eng'g Inc. v. Qantel*,
571 F. Supp. 1379 (D. Mass. 1983) ...................................................... 9, 12, 14

*Crosby v. Kroeger*,
330 P.2d 958 (Colo. 1958).............................................................................. 11

*Estate of Korf v. A.O. Smith Harvestore Prods., Inc.*,
917 F.2d 480 (10th Cir. 1990) ....................................................................... 17

*Evans v. State of Connecticut*,
967 F. Supp. 673 (D. Conn. 1997).................................................................. 13

*Farmers Reservoir & Irrigation Co. v. City of Golden*,
113 P.3d 119 (Colo. 2005)............................................................................... 17

*Gas-A-Car, Inc. v. Am. Petrofina, Inc.*,
484 F.2d 1102 (10th Cir. 1973) ..................................................................... 24

*Goodman v. Lee*,
   988 F.2d 619 (5th Cir. 1993) ........................................................................ 22

*Grand County Custom Home Bldg., LLC v. Bell*,
   148 P.3d 398 (Colo. Ct. App. 2006) .............................................................. 12

*Great Lakes Dredge & Dock Co. v. City of Chicago*,
   260 F.3d 789 (7th Cir. 2001) ..................................................................... 9, 12

*Great Western Sugar Co. v. KN Energy, Inc.*,
   778 P.2d 272 (Colo. Ct. App. 1989) ......................................................... 11, 13

*Hadjipateras v. Pacifica, S.A.*,
   290 F.2d 697 (5th Cir. 1961) .......................................................................... 3

*Harbert v. Healthcare Servs. Group*,
   391 F.3d 1140 (10th Cir. 2004) .............................................................. 22, 23

*Herod v. Colo. Farm Bureau Mut. Ins. Co.*,
   928 P.2d 834 (Colo. Ct. App. 1996) .............................................................. 16

*Howard D. Jury, Inc. v. R & G Sloane Mfg. Co., Inc.*,
   666 F.2d 1348 (10th Cir. 1981) ..................................................................... 14

*In re Grand Jury Proceedings June 1991*,
   767 F. Supp. 222 (D. Colo. 1991) .................................................................... 2

*Interstate Brands Corp. v. Lily Transp. Corp.*,
   256 F. Supp. 2d 58 (D. Mass. 2003) .............................................................. 10

*Isbill Assoc., Inc. v. City & County of Denver*,
   666 P.2d 1117 (Colo. Ct. App. 1983) ............................................................. 19

*Kraebel v. New York City Dep't. of Housing Preservation and Dev.*,
   No. 90 CIV 4391, 2002 WL 14364 (S.D.N.Y. Jan. 3, 2002) ........................... 37

*Library of Congress v. Shaw*,
   478 U.S. 310 (1986) ......................................................................... 11, 12, 13

*Loughridge v. Chiles Power Supply Co., Inc.*,
   431 F.3d 1268 (10th Cir. 2005) ..................................................................... 18

*Lowell Staats Mining Co. v. Pioneer Uravan, Inc.*,
   878 F.2d 1259 (10th Cir. 1989) ..................................... 8, 11, 18, 19, 20, 21

*Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc.*,
   13 F.3d 69 (3d Cir. 1993) .............................................................................. 36

*Marshak v. Treadwell*,
    240 F.3d 184 (3d Cir. 2001)...................................................................... 22

*Masonry Masters, Inc. v. Nelson*,
    105 F.3d 708 (D.C. Cir. 1997) ................................................................ 12

*McConkey v. Hart*,
    930 P.2d 402 (Alaska 1996).................................................................... 10

*Mesa Sand & Gravel Co. v. Landfill, Inc.*,
    776 P.2d 362 (Colo. 1989)............................................................ 12, 16, 17, 21

*Midwest Underground Storage, Inc. v. Porter*,
    717 F.2d 493 (10th Cir. 1983) ................................................................ 14

*Miller v. Carnation Co.*,
    564 P.2d 127 (Colo. Ct. App. 1977) ...................................................... 15, 16

*Natural Resources Defense Council, Inc. v. Texaco Refining & Marketing, Inc.*,
    2 F.3d 493 (3d Cir. 1993) ....................................................................... 36

*Okla. Turnpike Auth. v. Bruner*,
    259 F.3d 1236 (10th Cir. 2001) .............................................................. 24

*Oldham v. Korean Air Lines Co., Ltd.*,
    127 F.3d 43 (D.C. Cir. 1997) .................................................................. 10

*Parks v. Pavkovic*,
    753 F.2d 1397 (7th Cir. 1985) ................................................................ 22

*Perlman v. Zell*,
    185 F.3d 850 (7th Cir. 1999) ................................................................ 9, 12

*Rockwell Int'l Corp. v. United States*,
    127 S. Ct. 1397 (2007)........................................................................... 37

*Roxas v. Marcos*,
    969 P.2d 1209 (Haw. 1998) ................................................................... 10

*Sebring v. Colver*,
    649 P.2d 932 (Alaska 1982).................................................................... 10

*Slack v. Farmers Ins. Exchange*,
    5 P.3d 280 (Colo. 2000).......................................................................... 28

*Slater v. Shell Oil*,
    58 Cal. App. 2d 864 (Cal. 1943)............................................................. 30

*Sorenson v. Mink*,
239 F.3d 1140 (9th Cir. 2001) ........................................................... 12

*Stevens v. Humana of Delaware, Inc.*,
832 P.2d 1076 (Colo. Ct. App. 1992) ............................................... 12

*Strey v. Hunt Int'l Res. Corp.*,
696 F.2d 87 (10th Cir. 1982) ............................................................ 26

*Todd v. Bear Valley Village Apts.*,
980 P.2d 973 (Colo. 1999) ................................................................ 10

*United Int'l Holdings v. The Wharf*,
210 F.3d 1207 (10th Cir. 2000) ....................................................... 12

*United States v. City of Warren*,
138 F.3d 1083 (6th Cir. 1998) .......................................................... 13

*Van Gemert v. Boeing Co.*,
739 F.2d 730 (2d Cir. 1984) ............................................................. 27

*Van Gemert v. Boeing Co.*,
553 F.2d 812 (2d Cir. 1977) ............................................................. 26

*Voight v. Colo. Mountain Club*,
819 P.2d 1088 (Colo. Ct. App. 1991) .............................................. 13

*Westfield Dev. Co. v. Rifle Inv. Assocs.*,
786 P.2d 1112 (Colo. 1990) .............................................................. 17

*Westric Battery Co. v. Standard Elec. Co.*,
482 F.2d 1307 (10th Cir. 1973) ....................................................... 11

**Statutes**

28 U.S.C. § 2072 ............................................................................................ 26

Colo. Rev. Stat. § 13-21-101 ....................................................................... 15

Colo. Rev. Stat. § 5-12-101 ......................................................................... 21

Colo. Rev. Stat. § 5-12-102 ............................................................. 16, 17, 20

Colo. Rev. Stat. § 5-12-103 ......................................................................... 21

**Treatises**

7C C. Wright, A. Miller & M. Kane, Fed. Prac. & Proc. § 1958, at 555 (2d ed. 1986) ............... 36

Dan S. Dobbs,
 *Law of Remedies* (2d ed. 1993)......................................................................... 10, 12

R. Posner,
 *Economic Analysis of Law* (3d ed. 1986)........................................................... 11

Restatement (Second) of Torts § 913(2)................................................................. 10, 12

Restatement (Second) of Torts § 930...................................................................... 29, 30

Restatement (Section) of Torts § 821E................................................................... 29

## INTRODUCTION

Plaintiffs agree with defendants (and the Court) that it makes sense for the Tenth Circuit to review the key legal issues in this case before the parties and the Court invest substantial additional time and effort in the matter. Plaintiffs disagree with defendants, however, on the appropriate procedural vehicle for getting those issues before the Tenth Circuit at this point. Plaintiffs insist that this Court can and should certify a final judgment under Rule 54(b) of the Federal Rules of Civil Procedure instead of certifying the key orders for interlocutory review under 28 U.S.C. § 1292(b). According to plaintiffs, appellate review of a final judgment under Rule 54(b) is preferable to appellate review of interlocutory orders under § 1292(b).

That comparison is flawed, however, because certification of a final judgment here under Rule 54(b) is not possible as a matter of law. Rule 54(b) allows a court to certify an appeal where the court has finally adjudicated a claim, but other claims remain pending. The problem here is that this Court has not finally adjudicated any claim, and cannot finally adjudicate any claim without conducting extensive additional proceedings of the sort that an immediate appeal might foreclose. Indeed, this Court itself explained that it would be "inefficient to proceed to the *damages allocation phase* . . . before the parties have had the opportunity to appeal any matters that might affect the fact or amount of damages awarded by the jury." 2/17/06 Tr. at 10821 (emphasis added); *see also id.* (expressing a willingness to take "whatever steps are necessary to give the parties the opportunity to appeal these matters *before proceeding to the allocation of damages*") (emphasis added). In other words, an appeal may *avoid* the need to enter the remedial thicket in this case, including the allocation of damages. Plaintiffs thus turn matters upside down by essentially pretending that the remedial thicket does not exist. But that is nothing more than wishful thinking on their part, and thus certification of a final judgment under Rule 54(b) is not possible as a matter of law. Accordingly, certification under § 1292(b)

provides the only path to the Tenth Circuit at the moment, and plaintiffs' discussion of the relevant merits and demerits of Rule 54(b) as opposed to § 1292(b) misses the point.

The only real question here, in other words, is whether immediate review of the key orders under § 1292(b) is better than no review at all. The answer to that question is plainly yes, which may explain why plaintiffs cite *not a single authority* in their brief opposing defendants' motion for certification under § 1292(b). As this Court has already recognized, immediate appellate review of those orders is both necessary and appropriate in light of the need for extensive further proceedings before any final judgment can be entered. Because the jury verdict in this case is premised on the legal analysis set forth in those orders, the verdict would have to be set aside (thus obviating the need for further proceedings based on the verdict) if the Tenth Circuit were to disagree with this Court's analysis. Accordingly, this Court should certify the orders listed in defendants' motion for interlocutory review under § 1292(b).

## ARGUMENT

## I.   THIS CASE ABUNDANTLY SATISFIES THE STANDARDS FOR AN INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b).

Plaintiffs effectively concede two of the three elements for an interlocutory appeal under § 1292(b): (1) the rulings in question involve "controlling question[s] of law," and (2) there is "substantial ground for difference of opinion" on those questions. 28 U.S.C. § 1292(b). Thus, plaintiffs challenge only the third element, whether an interlocutory appeal "may materially advance the ultimate termination of the litigation." *Id.*; *see generally Ahrenholz v. Board of Trustees of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000); *In re Grand Jury Proceedings June 1991*, 767 F. Supp. 222, 223 (D. Colo. 1991).

According to plaintiffs, that standard is not met because defendants seek certification of "just *three* pretrial orders, and *one* post-trial order." Pls.' Mem. of Law in Opp. to Defs.' Mtn.

for Cert. of Inter. Appeal ("Pls.' § 1292 Resp. Br.") at 1 (emphasis in original).  Plaintiffs thus

chide defendants for seeking "piecemeal appellate review" of a few "cherry-picked orders."  *Id.*

at 4.  That argument reveals a fundamental misunderstanding of § 1292.  The whole point of that

provision is to create a limited exception to the final judgment rule by authorizing interlocutory

appeals of particular orders.  Precisely as contemplated by the statute, defendants limited their

request to the orders containing the key rulings that created the legal foundations for the rest of

the case.

Plaintiffs insist, however, that there cannot be "meaningful appellate review" unless it is

"fully informed" by the complete factual and procedural record.  *See* Pls.' § 1292 Resp. Br. at 1;

*id.* at 3 (arguing that the appellate court can provide meaningful review only "in the context of

the larger procedural and factual record"); *id.* (claiming that "it verges on the surreal" to review a

"trial plan" without considering the "actual trial already conducted").  But again, the whole point

of § 1292(b) is to allow interlocutory review of discrete questions of law *without* requiring a case

to "grind[] through to a final judgment."  *Hadjipateras v. Pacifica, S.A.*, 290 F.2d 697, 703 (5th

Cir. 1961).  Defendants seek certification of discrete legal questions for which review of a full

factual record is unnecessary.  For example, the Tenth Circuit would not need to be encumbered

with the factual or procedural record to determine whether federal law preempts state standards

of care.

Plaintiffs incorrectly suggest that this Court's orders of July 24, 2003 and December 17,

2004 cannot be appealed under § 1292(b) because those orders did not themselves "adjudicate

any pending motion or afford any relief."  Pls.' § 1292 Resp. Br. at 2; *see id.* at 3 ("it did not

reduce its legal analysis to ultimate operative effect").  Plaintiffs do not and cannot cite *any*

authority in support of that novel requirement.  The requirements of § 1292(b) are set forth on

3

the face of the statute, and that statute does not require a court to "grant or deny summary judgment, admit or exclude testimony, [or] approve or disapprove a jury instruction." *See id.* at 2. As noted in defendants' motion, the orders proposed by defendants established the legal framework that governed the rest of the case.

Plaintiffs thus err by asserting that it is "unclear" whether the orders "could be 'reversed,' or what consequences could follow from such a 'reversal.'" *Id.* at 2-3. Of course the orders can be "reversed"; they set forth key conclusions of law. The legal consequences of a reversal are obvious: subsequent rulings giving effect to those conclusions (such as jury instructions) would be erroneous. And the *practical* consequences—including dismissal or the failure of some claims as a matter of law—were discussed at length in defendants' earlier memorandum. *See* Defs.' Mem. in Support of Cert. at 6-9, 12-14. The upshot is that, if the Tenth Circuit were to reverse the legal conclusions set forth in the orders identified by defendants, the result of the trial could not stand and neither this Court nor the parties would have to waste time or effort on a remedial phase.

Plaintiffs use an even weaker variation of this argument with respect to the December 7, 2006 Order. They acknowledge that the December 7 Order "does memorialize formal relief granted and denied by the Court." Pls.' § 1292 Resp. Br. at 4. Nonetheless, plaintiffs "confess" that there is "uncertainty … about the terms on which 'interlocutory' review of this opinion would be conducted." *Id.* at 4. But there is no "uncertainty" surrounding "the terms" of interlocutory review. The Tenth Circuit will not share plaintiffs' uncertainty—that Court is more than familiar with how to handle an interlocutory appeal. *See* Defs.' Mem. in Support of Cert. at 4 (citing cases from the Tenth Circuit). And such "uncertainty" is fleeting. Plaintiffs concede

that, if this Court certifies an interlocutory appeal, the jury instruction order would "no doubt belong in the collection."  Pls.' § 1292 Resp. Br. at 4.

Plaintiffs' remaining arguments rely on misstatements or misapplications of the law. **First**, plaintiffs argue that a successful appeal of the July 24, 2003 Order would not be "dispositive" and "further proceedings" would be necessary.  *See* Pls.' § 1292 Resp. Br. at 2. Plaintiffs created that requirement out of whole cloth.  As defendants already demonstrated, an order need not be entirely case-dispositive.  Instead, it must have the "potential" for "accelerating" the litigation.  *See* Defs.' Mem. in Support of Cert. at 22-23 (citing cases from the District of Colorado and the Fifth, Seventh, Ninth, and Tenth Circuits).  The orders at issue here meet that requirement in spades.  As defendants have explained in detail, reversal on the issue of preemption would require dismissal of plaintiffs' claims, and reversals of the trespass and nuisance rulings would cause those claims to fail as a matter of law.  *See id.* at 6-9, 12-13.  Even if a new trial were required, starting that process sooner rather than later would materially advance this litigation.

**Second**, plaintiffs make the citation-free suggestion that post-trial interlocutory review is somehow inappropriate or unprecedented.  *See* Pls.' § 1292 Resp. Br. at 3-4.  That position is untenable.  Defendants have thoroughly addressed the question of timing and have demonstrated that interlocutory appeals are appropriate whenever a case satisfies the statutory requirements of section 1292(b), including post-trial.  The case law is replete with examples of circuit courts accepting interlocutory appeals *after* trials of less than all issues.  *See* Defs.' Mem. in Support of Cert. at 4-5 (citing cases from Third, Fourth, Ninth, and Eleventh Circuits).  Moreover, the cases already cited by defendants involved certification of issues similar to those in the present case, including (1) standards for proving a plaintiff's claims; (2) standards of conduct applicable to

defendants under federal regulations; and (3) decisions related to jury instructions. *See, e.g.*, *Bouchat v. Baltimore Ravens, Inc.*, 241 F.3d 350, 357 (4th Cir. 2001) (addressing whether jury instructions improperly coerced the jury).

Defendants' request for certification describes the standards for interlocutory review, and explains why four keystone orders are appropriate for certification under § 1292(b). Defendants' position is supported by a wide body of case law, and plaintiffs have cited *nothing* to the contrary. The mere fact that they do not *want* interlocutory review is no reason to deny defendants' well-founded motion.

## II.   AN INTERLOCUTORY APPEAL IS THE ONLY AVAILABLE MEANS TO IMMEDIATE APPELLATE REVIEW.

Plaintiffs oppose an interlocutory appeal under section 1292(b) based on the mistaken premise that this case is ready for the entry of judgment under Rule 54(b). *See* Pls.' § 1292 Resp. Br. at 5; Pls.' Reply in Support of Mtn. for Entry of Judgment ("Pls.' Rule 54(b) Reply Br.") at 18; *see generally* Pls.' Mem. of Law in Support of Pls.' Mtn. for Entry of Judgment. Far from it. An interlocutory appeal under section 1292(b) is the only feasible route for advancing this litigation, given the many issues that remain unresolved. Outstanding issues include, among others: (1) prejudgment interest; (2) proceedings to determine how to allocate damages to individual class members; (3) the definition of the Section 930 Damages Subclass; (4) the disposition of unclaimed funds; (5) the amounts owed by each defendant in light of an inconsistent verdict; (6) the creation and content of easements; (7) the identification of subclass members covered by the judgment; and (8) the identity of the proper defendant in any judgment form.

Entering final judgment before a case is ready would not make the case proceed any faster; instead, it would slow it down. Now, more than ever, it is apparent that this case is not

ripe for the entry of final judgment under Rule 54(b), and an interlocutory appeal is the only path to immediate appellate review.

### A.      Prejudgment Interest

Plaintiffs devote 20 pages to prejudgment interest in their Rule 54(b) reply brief, a 10-fold increase from the motion itself.  *See* Pls.' Rule 54(b) Reply Br. at 18-37.  Plaintiffs put forward a string of ever-changing numbers, claiming that they are entitled to $525,299,604.97,[1] or $429,028,781.29,[2] or $418,133,449,[3] or $489,059,312,[4] or $322,340,038,[5] or $356,733,931.[6] Plaintiffs then increased their demand by filing a belated "Corrected Proposed Final Judgment," requesting $588,493,100.02,[7] or $477,499,111.[8]  Plaintiffs' vacillation does not inspire confidence, and underscores rather than alleviates the problems with their request for prejudgment interest.  The fact that plaintiffs have asked the Court to select between eight different numbers—involving a range of hundreds of millions of dollars—highlights why it makes sense to reserve this issue for a later day, after an interlocutory appeal.  Depending on how the Tenth Circuit rules, this Court might not have to tackle the issue of prejudgment interest at all.

---

[1] *See* Ex. 1, Pls.' Revised Proposed Final Judgment (3/19/07) at ¶ 8 & n.6.

[2] *Id.*

[3] *See* Pls.' Rule 54(b) Reply Br. at 25 (Table 1).

[4] *Id.*

[5] *Id.* at 26 (Table 3).

[6] *Id.*

[7] *See* Pls.' Corrected Proposed Final Judgment (4/3/07) at ¶ 8 & n.6.

[8] *Id.*

All parties agree that a court cannot enter final judgment under Rule 54(b) without resolving the issue of prejudgment interest.  *See* Pls.' Rule 54(b) Reply Br. at 14.  Yet deciding whether plaintiffs are entitled to any prejudgment interest at all—let alone selecting the right number—is far more complicated than "simple arithmetic."  *Id.*  New arguments unveiled in their reply brief demonstrate that plaintiffs are asking this Court to enter a thicket, and untangle thorny questions that may be avoided by taking the direct path to the Tenth Circuit.

## 1.        The CPI Adjustment

Plaintiffs claim it is "mandatory" that they receive several hundred million dollars in prejudgment interest (Pls.' Rule 54(b) Reply Br. at 20), even though they already requested and received a CPI adjustment to compensate them for the "time that has elapsed between the harm and the trial."  Pls.' Mem. in Opp. to Defs.' Mtn. to Excl. Evid. of Pls.' Consumer Price Index Adjust. for Property Damages at 5.  They are wrong.  As the Tenth Circuit has explained, under Colorado law, a plaintiff cannot recover prejudgment interest unless it is "*unquestionably clear that the jury allowed no interest.*"  *Lowell Staats Mining Co. v. Pioneer Uravan, Inc.*, 878 F.2d 1259, 1268 (10th Cir. 1989) (emphasis added).  Here, it is beyond serious question that the jury *did* award compensation for the passage of time.  That much is clear from the jury's verdict form.  The jury went out of its way to write by hand that they "adjusted" all damages to 2005 through the CPI:

All numbers adjusted to 2005 CPI

| | Percentage Undervaluation | Aggregate Damages (Entire Class) |
|---|---|---|
| RESIDENTIAL | 7 % | $ 144,199,088.00 |
| VACANT LAND | 30 % | $ 27,000,000.00 |
| COMMERCIAL | 53.03 % | $ 5,651,252.00 |
| | TOTAL: | $ 176,850,340.00 |

Adjusted to 2005 CPI

| | Percentage Undervaluation | Aggregate Damages (Entire Class) |
|---|---|---|
| RESIDENTIAL | 7 % | $ 144,199,088.00 |
| VACANT LAND | 30 % | $ 27,000,000.00 |
| COMMERCIAL | 53.03 % | $ 5,651,252.00 |
| | TOTAL: | $ 176,850,340.00 |

*See* Jury Verdict Form at 15, 24.  Plaintiffs cast no doubt on the fact that the jury adjusted damages for inflation.  Plaintiffs would not have gone to the trouble of preparing four brand-new tables in their reply brief to back-out the CPI award if they believed that the jury did not award damages for inflation.

This Court should consider four simple points.  **First**, the law is uniform:  a plaintiff cannot recover two awards for the passage of time.  *See Great Lakes Dredge & Dock Co. v. City of Chicago*, 260 F.3d 789, 796 (7th Cir. 2001) (when "compensation for the time value of money is built into a victim's claim for damages, a separate award of prejudgment interest would be double counting."); *Perlman v. Zell*, 185 F.3d 850, 857-58 (7th Cir. 1999) (stating that a plaintiff who was awarded the value of the investment at the time of trial cannot also receive prejudgment interest); *Computer Sys. Eng'g Inc. v. Qantel*, 571 F. Supp. 1379, 1383 (D. Mass. 1983)

("[A]warding both interest and any other form of allowance for the time value of money is inherently duplicative."); *Oldham v. Korean Air Lines Co., Ltd.*, 127 F.3d 43, 54 (D.C. Cir. 1997) (agreeing that if the jury had awarded damages in current dollars at time of trial, there would have been "no need to add prejudgment interest"); *Sebring v. Colver*, 649 P.2d 932, 936 (Alaska 1982) ("Since the financial impact of the passage of time was thus incorporated into the jury's damage award, any award of prejudgment interest on this amount would therefore constitute a double recovery."); *McConkey v. Hart*, 930 P.2d 402, 406 (Alaska 1996) ("Since the jury made its award for future damages from the perspective of the trial date and not of the date of the injury, prejudgment interest was held inappropriate."); *Interstate Brands Corp. v. Lily Transp. Corp.*, 256 F. Supp. 2d 58, 62-63 (D. Mass. 2003) (stating that where the jury's award is meant to reflect the "present value" of loss, an award of prejudgment interest would be a "double recovery windfall"); *Roxas v. Marcos*, 969 P.2d 1209, 1274 (Haw. 1998) (stating that if the jury already adjusted for "loss of market appreciation," it would be "unfair to award [plaintiff] prejudgment interest" because "the jury has already factored the passage of time into its award"); Dan S. Dobbs, *Law of Remedies* 360 (2d ed. 1993) ("If delay has been compensated by other portions of the judgment, prejudgment interest will be improper."); Restatement (Second) of Torts § 913(2), cmt. c.  Plaintiffs do not refute—or even mention—any of these authorities.

Plaintiffs give no plausible reason why Colorado would reject such a well-established rule and allow a plaintiff to recover two different remedies for the passage of time.  The most that plaintiffs offer is the notion that prejudgment interest is a "ministerial act that is mandatory." Pls.' Rule 54(b) Reply Br. at 20.  Yet in the only case cited by plaintiffs, *Todd v. Bear Valley Village Apts.*, 980 P.2d 973 (Colo. 1999), the prevailing party had *not* received an award for the passage of time, unlike the plaintiffs here.  *Id.* at 980-81.  And *Todd* quoted *Crosby v. Kroeger*,

330 P.2d 958, 963 (Colo. 1958), in which interest had been omitted "through oversight." Plaintiffs do not—and cannot—cite any Colorado authority for the proposition that a court must award prejudgment interest even though a plaintiff already recovered for the passage of time. That position would violate the Tenth Circuit's directive in *Lowell Staats*, and would violate Colorado's precept that a plaintiff cannot recover for the same loss twice. *See Great Western Sugar Co. v. KN Energy, Inc.*, 778 P.2d 272, 276 (Colo. Ct. App. 1989) ("[T]o the extent that an award made under the statute provides double compensation for the same wrong, it cannot stand."); *Westric Battery Co. v. Standard Elec. Co.*, 482 F.2d 1307, 1317 (10th Cir. 1973) ("Unquestionably double or duplicative recoveries are invalid.").

*Second*, there can be no doubt that a CPI award is duplicative of prejudgment interest because both compensate for the passage of time. As the United States Supreme Court explained in *Library of Congress v. Shaw*, 478 U.S. 310 (1986), "Interest and a delay factor share an *identical function*. They are designed to compensate for the belated receipt of money." *Id.* at 322 (emphasis added). An award of prejudgment interest would result in a duplicative recovery when a plaintiff has already received compensation for the passage of time. *See Shaw*, 478 U.S. at 322 n.7 ("An interest rate reflects not only the real opportunity cost of capital, but also the inflation rate. *See* R. Posner, *Economic Analysis of Law* 180 (3d ed. 1986). Thus, loss of value due to delay is an element of an interest adjustment."). In fact, the Supreme Court cited a decision of this Court for the proposition that "[p]rivate-sector decisions, when they adjust for the time of payment, grant interest or a delay factor, but *not both*." *Id.* (emphasis added) (citing *Black Gold, Ltd. v. Rockwood Indus.*, 529 F. Supp. 272 (D. Colo. 1981) (Kane, J.)).

Plaintiffs do not muster any response to a number of the cases cited by defendants. For the remaining cases that they do address, plaintiffs quibble with the facts, arguing that they

involved the availability of interest in claims against the United States. *See* Pls.' Rule 54(b) Reply Br. at 20. The purported factual distinctions are immaterial. Plaintiffs do not dispute that the authorities support defendants' stated propositions: interest and other delay compensation share the same legal function. *See, e.g., Shaw*, 478 U.S. at 322 ("identical function"); *Sorenson v. Mink*, 239 F.3d 1140, 1148 (9th Cir. 2001) ("functional equivalent"); *Masonry Masters, Inc. v. Nelson*, 105 F.3d 708, 711 (D.C. Cir. 1997) ("functionally equivalent"). And thus, both are not available in the same case. *See, e.g., Perlman*, 185 F.3d at 857-58; *Computer Sys.*, 571 F. Supp. at 1383; Dan S. Dobbs, Law of Remedies at 360; Restatement (Second) of Torts § 913(2), cmt. c.

Plaintiffs swing repeatedly at a subset of the cases cited by defendants, claiming that "not one" involved statutory regimes allowing prejudgment interest, "not one" involved the addition of prejudgment interest to a jury damages award, and "not one" involved compensatory damages. *See* Pls.' Rule 54(b) Reply Br. at 19-20. Those assertions are not candid, and they ignore defendants' other cases. For example, *Perlman v. Zell*, 185 F.3d 850 (7th Cir. 1999), involved a statutory regime allowing prejudgment interest, the addition of prejudgment interest to a jury award, and compensatory damages. So did *Computer Sys. Eng'g Inc. v. Qantel*, 571 F. Supp. 1379 (D. Mass. 1983). And *Great Lakes Dredge & Dock Co. v. City of Chicago*, 260 F.3d 789 (7th Cir. 2001), involved compensatory damages.

***Third***, the cases put forward by plaintiffs do not justify a duplicative award of prejudgment interest. Plaintiffs' cases articulated the generic policy rationale for prejudgment interest. *See* Pls.' Rule 54(b) Reply Br. at 21 (citing *United Int'l Holdings v. The Wharf*, 210 F.3d 1207 (10th Cir. 2000); *Mesa Sand & Gravel Co. v. Landfill, Inc.*, 776 P.2d 362 (Colo. 1989); *Grand County Custom Home Bldg, LLC v. Bell*, 148 P.3d 398 (Colo. Ct. App. 2006); *Stevens v. Humana of Delaware, Inc.*, 832 P.2d 1076 (Colo. Ct. App. 1992); and *Voight v. Colo.*

*Mountain Club*, 819 P.2d 1088 (Colo. Ct. App. 1991)).  Not a single case cited by plaintiffs addressed the situation at hand, where the jury already awarded compensation for the time value of money.  Plaintiffs fail to cite a single case for the notion that Colorado tolerates two awards for the passage of time.  There is no general policy in Colorado in favor of duplicative recoveries; in fact, the opposite is true.  *See, e.g., Great Western Sugar Co.*, 778 P.2d at 276.

Plaintiffs also cite three cases for the proposition that prejudgment interest and inflation are not the same economic concept.  *See* Pls.' Rule 54(b) Reply Br. at 22 (citing *Evans v. State of Connecticut*, 967 F. Supp. 673 (D. Conn. 1997); *United States v. City of Warren*, 138 F.3d 1083 (6th Cir. 1998); *Clinchfield Coal Co. v. Fed. Mine Safety & Health Review Comm'n*, 895 F.2d 773 (D.C. Cir. 1990)).  But that proposition misses the point: the issue here is legal, not economic.  As the Supreme Court has explained, it is legally irrelevant that, "as a matter of economic theory, there may be a distinction between interest and a delay factor."  *Library of Congress*, 478 U.S. at 322; *Blake v. Califano*, 626 F.2d 891, 895 (D.C. Cir. 1980) ("Both interest and an inflation adjustment serve the same general end of compensating the recipient for differences in the worth of her award between the date of actual receipt and the date as of which the money should have been paid.").  To the extent that the Connecticut district court suggested in a footnote in *Evans* that interest does not compensate for inflation, it is inconsistent with the Supreme Court's view in *Shaw* (and the treatise from Judge Posner). *See Shaw*, 478 U.S. at 322 n.7.

***Fourth***, in a last-ditch effort to cure the duplication, plaintiffs unveil four brand-new tables that purport to back-out the CPI damages awarded by the jury.  *See* Pls.' Rule 54(b) Reply Br. at 24-27 (Tables 1-4).  Such an attempt is pure guesswork.  Plaintiffs offer no citation to support their tables, and for good reason—there is no factual basis for them.  No one knows the

13

amount of the CPI damages awarded by the jury because the jury was not asked a special interrogatory on that question.  Perhaps, as plaintiffs assume, the jury awarded the full amount of the CPI damages requested by plaintiffs.  But it is also possible that the jury could have awarded more, or awarded less.  We will never know.  Plaintiffs' tables rest on sheer speculation, and now that the jury has been dismissed, it is far too late to parse the verdict and excise any "arguable overcompensation" from the lump-sum award.  Pls.' Rule 54(b) Reply Br. at 24.

Plaintiffs offer no cases to support the novel approach of whittling down the jury's award, and then awarding prejudgment interest on the remainder.  Plaintiffs' proposal runs against the grain of a consistent body of law disallowing guesswork or speculation to affect a jury's award.  *See Howard D. Jury, Inc. v. R & G Sloane Mfg. Co., Inc.*, 666 F.2d 1348, 1352 (10th Cir. 1981) (applying Colorado law) ("[T]his Court will not invalidate a jury verdict on the basis of plaintiff's guesswork as to the manner in which the jurors arrived at that verdict."); *Midwest Underground Storage, Inc. v. Porter*, 717 F.2d 493, 501 (10th Cir. 1983) ("It is well settled that a verdict will not be upset on the basis of speculation as to the manner in which the jurors arrived at it."); *Chicago, R. I. & P. R. Co. v. Speth*, 404 F.2d 291, 295 (8th Cir. 1968) ("If in his discretion a trial judge believes that a jury's verdict is too large or too small, his only alternative would be to grant a new trial.").

In sum, this Court must deny prejudgment interest because, "having chosen to prove damages as it did, plaintiff has not met the burden of disentangling duplicative elements of its claim for the time value of money."  *Computer Sys.*, 571 F. Supp. at 1383 (denying prejudgment interest).

### 2.    The Personal Injury Statute

This Court need not address the inapplicability of the two prejudgment interest statutes because plaintiffs already received compensation for the passage of time.  To the extent that this

Court is inclined to reach this issue at all, plaintiffs have done little to demonstrate that they fall within the four corners of either statute.

Plaintiffs all but concede that they are not entitled to prejudgment interest under the personal injury statute. *See* Colo. Rev. Stat. § 13-21-101. Defendants demonstrated in detail that the personal injury statute is confined to personal injuries, and that the case at hand does not involve personal injuries at all. *See* Defs.' Resp. to Pls.' Mtn. for Entry of Judgment at 28-36. Plaintiffs hardly muster a response, devoting only three sentences to the subject. *See* Pls.' Rule 54(b) Reply Br. at 27-28. Plaintiffs cite but do not engage *Miller v. Carnation Co.*, 564 P.2d 127 (Colo. Ct. App. 1977), a case that undermines their position because it draws a bright line between loss of use (which was at issue in the trial) and annoyance and discomfort (which was not). *Miller* did not award prejudgment interest on loss-of-use damages at all; instead, the court did the opposite, and awarded interest only for annoyance and discomfort and not for loss of use. *Id.* at 132. Loss of use of property cannot give rise to prejudgment interest under the personal injury statute because it is not a *personal* injury. *Id.* at 130, 132.

Plaintiffs do not even attempt to argue that the trial involved damages for annoyance and discomfort. Nor could they. As this Court stated, "*Plaintiffs did not seek damages here for annoyance and discomfort*, but rather for the decrease in the value of Class Properties as a result of the alleged continuing trespass and nuisance, which is a *separate and unrelated category of damages* under Colorado law." 12/07/06 Mem. Op. Regarding Jury Instructions at 69 (emphasis added).

Plaintiffs effectively concede that there was no personal injury. Plaintiffs contend that "diminution in value is the sole compensation" under Section 930, and that such damages "displace any separate award for annoyance and discomfort." *See* Pls.' Rule 54(b) Reply Br. at

15

27-28.  Such concessions are unavoidable, and doom any attempt to invoke the personal injury statute.  Diminution in value of property is not a *personal* injury; by definition, it is the opposite. *Miller*, 564 P.2d at 130, 132; *Herod v. Colo. Farm Bureau Mut. Ins. Co.*, 928 P.2d 834, 838 (Colo. Ct. App. 1996) ("[A]n injury is not personal when inflicted on property.").

### 3.    The Consumer Credit Code

Plaintiffs did not request prejudgment interest under Colo. Rev. Stat. § 5-12-102 in their original motion for entry of judgment; instead, they relegated it to one passing sentence and a footnote, and made no mention of that statute in their proposed judgment.  Now, plaintiffs give sudden and disproportionate attention to that statute, and seemingly latch onto that statute while all but abandoning the personal injury statute.

A glaring omission from plaintiffs' brief is any attempt to argue that this case fits within the text of the Consumer Credit Code.  In fact, plaintiffs barely mention the language of the statute at all.  Plaintiffs do not attempt to argue that they could be "creditors" before the entry of judgment, or that "money or property has been wrongfully withheld."  Colo. Rev. Stat. § 5-12-102(1).  Nor could they.  Defendants already demonstrated why this case does not fit within the parameters of the statute and why the statute does not apply to all cases.  *See* Defs.' Resp. to Pls.' Mtn. for Entry of Judgment at 38-42.  Plaintiffs abandon the statutory text and patch together snippets from cases with little or no precedential weight.

Plaintiffs substantially overstate the load-bearing capacity of the precedent, which cannot support non-textual extensions of the statute.  *See* Pls.' Rule 54(b) Reply Br. at 28-30.  Take, for example, plaintiffs' reliance on *Mesa Sand & Gravel Co. v. Landfill, Inc.*, 776 P.2d 362 (Colo. 1989).  The court in *Mesa* simply held that the statute applied to breach-of-contract claims, not that it applied in each and every case.  *Id.* at 365.  The court's comment that the statute "was not designed to distinguish between classes of prevailing parties" came in the context of different

16

types of *contract* cases.  *Id.*  And the court in *Mesa* did not exactly "approvingly cite[] *Isbill*"—the court simply repeated *Isbill*'s misquotation of legislative history.  *See* Pls.' Rule 54(b) Reply Br. at 28; *Mesa*, 776 P.2d at 365.  The Tenth Circuit assumed, albeit incorrectly, that *Isbill* had properly cited the legislative history.  Repeating a mistake is not a sign of validation.  By way of analogy, a driver does not "approve" of another driver by following that car off a cliff in the fog.

Shards from other cases are equally unhelpful.  *See* Pls.' Rule 54(b) Reply Br. at 29.  In *Westfield Dev. Co. v. Rifle Inv. Assocs.*, 786 P.2d 1112 (Colo. 1990), the court decided that the wrongful filing of a *lis pendens*—which has the effect of discouraging the purchase of property – constituted the wrongful withholding of money or property under the statute.  *Id.* at 1122.  The court did not hold that prejudgment interest was available even though "no money or property was withheld"—instead, it simply held that a wrongful filing fell within the terms of the statute.  Even less meaningful is plaintiffs' citation to *Ballow v. PHICO Ins. Co.*, 878 P.2d 672 (Colo. 1994), which applied the statute in a breach-of-contract case.  Finally, in *Farmers Reservoir & Irrigation Co. v. City of Golden*, 113 P.3d 119 (Colo. 2005), the court held that a plaintiff cannot recover prejudgment interest on costs and attorneys' fees.  In none of those cases did the Colorado Supreme Court hold that the statute applies in all types of cases.

Cases from the Tenth Circuit do not justify a non-textual holiday either.  *See* Pls.' Rule 54(b) Reply Br. at 29-30.  In *Estate of Korf v. A.O. Smith Harvestore Prods., Inc.*, 917 F.2d 480 (10th Cir. 1990), the Tenth Circuit awarded prejudgment interest in a case involving fraud in connection with a sale of goods.  It is no stretch to conclude that "money or property has been wrongfully withheld" (Colo. Rev. Stat. § 5-12-102) when a party commits fraud during a sale.  The Tenth Circuit did not make the blanket decree that the statute applies to all "tortious conduct," as plaintiffs now suggest.  In *Loughridge v. Chiles Power Supply Co., Inc.*, 431 F.3d

1268 (10th Cir. 2005), the Tenth Circuit held that money or property was "wrongfully withheld" within the meaning of the statute when the defendant had sold and installed a defective product, and the court focused exclusively on the timing of prejudgment interest. *Id.* at 1288-91.

In *Lowell Staats Mining Co., Inc. v. Pioneer Uravan, Inc.*, 878 F.2d 1259 (10th Cir. 1989), the Tenth Circuit concluded that the statute applied to breach-of-contract cases. The court did not hold that the Consumer Credit Code entitles all plaintiffs to prejudgment interest in all cases. Quite the opposite. "Whether a particular factual circumstance falls within the prejudgment interest statute" is a "*determination*"—it is a "question of law" that has no automatic answer. *Id.* at 1269 (emphasis added). The Court also did not require an unflinching devotion to the intermediate state court decisions. A federal district court need not follow lower court decisions if "other authority convinces the federal court that the state supreme court would decide otherwise." *Id.* at 1269. Presumably the Tenth Circuit would not have quoted *Isbill* if it knew—like this Court now does—that *Isbill* badly misquoted the legislative history.

Plaintiffs respond only half-heartedly to the egregious transcription error in *Isbill*. Plaintiffs suggest in passing that there may have been no error at all. *See* Pls.' Rule 54(b) Reply Br. at 28-29, 31. But such suggestions are not serious, as demonstrated by the fact that plaintiffs offer no competing transcript, and later cite the correct transcription submitted by defendants. *Id.* at 33 n.30. To remove any conceivable doubt, defendants are submitting the actual audio recording, so that this Court can hear the testimony with its own ears and see the transcription mistake for itself. *See* Ex. 2.[9]

---

[9] The pertinent portion of testimony from the hearing on March 12, 1979 can be heard on track 1 of the CD, approximately 5 minutes, 40 seconds into the recording. Defendants submitted the accurate transcript as exhibit #5 to Defendants' Response to Plaintiffs' Motion for Entry of Judgment.

Far from being "minor," Pls.' Rule 54(b) Reply Br. at 31 n.28, the consequences of *Isbill*'s misquotation were profound. The court in *Isbill* rested its entire decision on two sentences of legislative history. *See Isbill Assoc., Inc. v. City & County of Denver*, 666 P.2d 1117, 1122 (Colo. Ct. App. 1983); *see also Lowell Staats Mining*, 878 F.2d at 1270 (noting that *Isbill* based on "understanding of the legislative history"). The *Isbill* court concluded that the statute applied to property damage cases because "All plaintiffs" are entitled to interest, believing that it had quoted the chief sponsor. *Isbill*, 666 P.2d at 1122. But the transcript and audio recording reveal beyond any doubt that the senator never stated that "All plaintiffs" are entitled to interest. Instead, the senator addressed the *timing* of interest and merely stated that "a plaintiff" is entitled to interest when a claim accrues. In short, the legislative history did not support the notion that "All plaintiffs" are entitled to prejudgment interest, and so there was no basis whatsoever for stretching the statute to reach property damage cases. The significance of the error could not be more obvious: the *Isbill* court thought that the statute applied to property damages cases because it erroneously believed that the legislative history revealed that the statute applied to "All plaintiffs."

Plaintiffs run for the cover of six intermediate state court decisions that cited *Isbill* in rote fashion and applied the statute to property damage cases. But at best, each case offered only a short blurb on prejudgment interest, with no discussion of the text, structure or history of the statute. Not a single case considered whether the statute applied to property damage cases—the cases offer raw conclusions, at the most. Worse yet, four of the six cases rely on *Isbill*, and the other two cases relied on *Isbill* and its progeny:



The branches of the caselaw all run to *Isbill*, and *Isbill* is not rooted in solid ground.  It would be difficult to compile a string cite with less precedential value.  As the Tenth Circuit has instructed, a federal court need not follow intermediate state court decisions if it concludes that the state supreme court would decide otherwise.  *See Lowell Staats Mining Co.*, 878 F.2d at 1269.

Plaintiffs quote other snippets of the legislative history, but those snippets do not help their cause.  The statute has two subsections that allow for prejudgment interest: one subsection applies when "money or property has been wrongfully withheld," and the other applies when money is "due on any bill, bond, promissory note, or other instrument of writing, or money due on mutual settlement of accounts . . . ."  *See* Colo. Rev. Stat. § 5-12-102(1) & (2).  The passages cited by plaintiffs largely speak to the second subsection of the statute.  *See* Pls.' Rule 54(b)

Reply Br. at 31-33 & nn.29-30.  Plaintiffs are equally mistaken about the name of the statute—the entirety of Title 5 is the "Consumer Credit Code," as the title page and ensuing headings make plain.  Plaintiffs are wrong about the structure of the statute as well.  It is no accident that § 5-12-102 is surrounded by a provision setting the presumed rate of interest "on money" (Colo. Rev. Stat. § 5-12-101) and by a provision setting the maximum rate of "credit to the debtor" (Colo. Rev. Stat. § 5-12-103).

This Court previously expressed healthy skepticism about whether the statute applied only to a subset of breach-of-contract cases, or whether it applied to them all, opining that applying the statute to "all garden-variety breach of contract cases . . . strays too far from the plain, ordinary meaning of the statutory language."  *See Lowell Staats Mining Co., Inc. v. Pioneer Uravan, Inc.*, 645 F. Supp. 254, 259 (D. Colo. 1986) (Kane, J.).  But the Tenth Circuit concluded otherwise, relying on *Isbill* without knowing about the transcription error.  *See Lowell Staats Mining Co., Inc. v. Pioneer Uravan, Inc.*, 878 F.2d 1259 (10th Cir. 1989).  Similarly, the Colorado Supreme Court noted that it is "less than clear" whether the statute applies to all breach-of-contract cases.  *Mesa Sand & Gravel Co. v. Landfill, Inc.*, 776 P.2d 362, 364-65 (Colo. 1989).  It is one thing to debate whether the statute applies to all *contract* cases; it is quite another to contend that the Code applies to all plaintiffs in *all types* of cases, no matter what type of claims are at issue.  If applying the Code to all breach-of-contract cases is a "loose construction" that "stretch[es] the language of the interest statute well beyond the confines of its reasonable meaning," *Lowell Staats Mining*, 645 F. Supp. at 259-60, then surely applying the statute to *all types* of cases is a construction completely untethered to the narrow language crafted by the Legislature.

### 4. Future Damages

This Court also would need to consider what portion of the damages award compensated plaintiffs for future invasions.  *See* Defs.' Resp. to Pls.' Mtn. for Entry of Judgment at 45-48. That issue presents yet another obstacle to the entry of final judgment under Rule 54(b).

### B. Allocation of Damages

Another major unresolved issue is the allocation of damages to individual subclass members.  For Rule 54(b) to apply, the division of damages among class members must be mechanical and uncontroversial.  *See Goodman v. Lee*, 988 F.2d 619, 627 (5th Cir. 1993); *Marshak v. Treadwell*, 240 F.3d 184, 191 (3d Cir. 2001); *Parks v. Pavkovic*, 753 F.2d 1397, 1401 (7th Cir. 1985).  Here, the jury awarded "Aggregate Damages" to the class as a whole, without fixing the damages owed to each particular class member.  *See* Jury Verdict Form at 15, 24.  Allocating aggregate damages to individual plaintiffs will not be "sufficiently ministerial that there would be no likelihood of further appeal."  *Harbert v. Healthcare Servs. Group*, 391 F.3d 1140, 1145 (10th Cir. 2004).  If anything, plaintiffs' proposed allocation is the antithesis of mechanical and uncontroversial.

Plaintiffs basically make a number of judgment calls, and take it as a given that such decisions will carry the day.  For example, plaintiffs believe that damages should be: (1) based on the assessed value of the property; (2) in 1990; (3) without individual determinations for particular plaintiffs; and (4) without considering any other criteria (such as distance from the plant, the level of alleged contamination, whether the property sold without any participants in the transaction discounting the price due to defendants' actionable conduct, and so on).  Yet there is a substantial likelihood of disagreement on each of those points, and the likelihood of disputes means that there can be no final judgment.  Plaintiffs believe that their judgment calls are "practicable" and reflect "*a choice* consistent with the verdict" (Pls.' Rule 54(b) Reply Br. at

4, 6) (emphasis added), but the point is that such value judgments are not the *only* possible outcome.  And no jury has yet addressed these issues.

Plaintiffs gloss over the fact that there will need to be individual determinations for particular plaintiffs.  The jury did not decide that any particular plaintiff suffered damages; instead, the jury determined that the class as a whole suffered damages because, on average, the properties declined in value.  There is a big difference between aggregate damages "suffered by the collective membership" of the class (Pls.' Rule 54(b) Reply Br. at 3) and a finding of damages suffered by a particular plaintiff.  There has been no finding that *each* subclass member suffered damages, let alone a finding that *each* subclass member suffered the *same* amount of damages.

Plaintiffs suggest that the jury did award a "sum certain" of damages because the jury fixed the aggregate damages to be awarded to the *class as a whole*.  The correct test, however, is not whether a jury has awarded a sum certain of damages to a class, but rather whether the jury fixed damages for each *class member*.  *See Albright v. UNUM Life Ins. Co.*, 59 F.3d 1089, 1092 (10th Cir. 1995) ("[T]he touchstone of a final order is a decision by the court that a *party* shall recover only a sum certain") (emphasis added).  Here, the jury did not fix each class member's damages, and the process of allocating those damages is neither "ministerial" nor "mechanical and uncontroversial."  *Harbert*, 391 F.3d at 1145.

Plaintiffs also contend that defendants do not have a stake in the allocation process.  Pls.' Rule 54(b) Reply Br. at 4.  But the question under Rule 54(b) is simple—are the remaining issues sufficiently ministerial or uncontroversial, such that there would be no likelihood of further appeal?  *See Harbert*, 391 F.3d at 1145.  Even if defendants hypothetically did not have standing, the issue would not go away.  In any event, defendants do have standing because they

have a stake in the allocation process in at least three ways.  First, defendants are entitled to show that individual class members suffered no damages at all due to defendants' actionable conduct. Second, defendants have an interest in ensuring that the easements adequately protect their interests.  Third, defendants have a stake in the unclaimed funds (which could be sizable).

Plaintiffs observe that the possibility for conflict "is inherent in any class award."  Pls.' Rule 54(b) Reply Br. at 4.  But not every class award can be certified as a partial judgment under Rule 54(b).  Indeed, Rule 54(b) certifications are the exception, not the rule.  *See Oklahoma Turnpike Auth. v. Bruner*, 259 F.3d 1236, 1241 (10th Cir. 2001) ("Rule 54(b) entries are not to be made routinely."); *Gas-A-Car, Inc. v. Am. Petrofina, Inc.*, 484 F.2d 1102, 1105 (10th Cir. 1973) ("trial courts *should be reluctant* to enter Rule 54(b) orders") (emphasis added).  Notably, plaintiffs themselves foresee conflict, as their proposed allocation gives class members "an opportunity to seek adjustment of their awards."  Pls.' Revised Proposed Plan of Allocation at ¶ 12.

Plaintiffs suggest that 1990 might be the appropriate year to calculate the assessed value of properties, because the jury found the wrong would continue indefinitely from that year.  Pls.' Rule 54(b) Reply Br. at 6.  Yet that year cannot be chosen because the jury only found the injurious condition became complete and comparatively enduring at some undefined point in time between 1987 and 1996 (*i.e.,* 1/1/88 to 12/31/95).  Moreover, this Court has already rejected plaintiffs' argument that the "continue indefinitely" time (which is the time when a cause of action accrues under § 930) and the "complete and comparatively enduring" time (which is used to measure damages) are the same.  *See* 1/27/06 Order Regarding Instruction No. 3.28 at 7 ("It is possible for the right to recover prospective damages to accrue before the most accurate time for measuring these damages occurs . . . .").

But regardless of which date is chosen, there will be controversy. Improvements, rezoning and development change the value of particular pieces of property. Some class members will prefer an earlier date, and other class members will prefer a later date, depending on what happened to the properties in the interim. Individual class members are bound to prefer a date that optimizes the value of *their* property. The potential for controversy is palpable.

C.     **Section 930 Damages Subclass**

Plaintiffs argue that the "only damages to be determined by the jury in the class trial were those of the Damages Subclass." Pls.' Rule 54(b) Reply Br. at 6. That is correct. *See* 5/17/05 Order at 16. But there is a significant problem: the jury awarded damages to the class as a whole, and did not confine the damages award to the members of the subclass. *See* Jury Verdict Form at 15, 24 (awarding damages to the "Entire Class"); *see also* Jury Instruction No. 3.2 (defining the "Class Properties" as "property" owned by "Plaintiffs and other Class members . . . in the Class Area as of June 7, 1989"). The jury's verdict would overcompensate the damages subclass because the jury purported to compensate not only the damages subclass, but also the rest of the "Class members" as well.

Plaintiffs offer no means to divine the portion of the jury's damages award that should be allocated to the damages subclass. This issue provides yet another obstacle to a final judgment. Before this Court could enter final judgment, it would need to explore what portion of the jury's award should be allocated to the damages subclass. Defendants believe that the answer is that the award cannot be allocated at all (thus requiring a new trial), but at the very least, it is apparent that this Court must confront this issue before any final judgment could enter.

D.     **Disposition of Unclaimed Funds**

Another unresolved issue is the disposition of unclaimed funds. The Tenth Circuit has instructed that a court must set forth "the principles that will guide the disposition of any

unclaimed funds." *Strey v. Hunt Int'l Res. Corp.*, 696 F.2d 87, 88 (10th Cir. 1982).  Plaintiffs argue that the unclaimed funds should go to the "subclass members," or to "some suitable nonprofit enterprise," or to the "federal treasury," or to the "Colorado treasury," or perhaps to some other recipient within an unspecified "range of alternatives available." *See* Pls.' Rule 54(b) Reply Br. at 7-8, 10-11.  Plaintiffs offer no principle at all, unless the principle is:  "to anyone except the defendants."

Distributing unclaimed funds to subclass members on a pro-rata basis would violate the Rules Enabling Act and Colorado law by enlarging the recovery of individual class members. *See* 28 U.S.C. § 2072; *Board of County Comm'rs of Weld County v. Slovek*, 723 P.2d 1309, 1316 (Colo. 1986) ("The trial court must take as its principal guidance the goal of reimbursement of the plaintiff for losses actually suffered, but must be vigilant not to award damages that exceed the goal of compensation and inflict punishment on the defendant.").  Some subclass members will receive nothing because they suffered no damages, refused an easement, or other possible reasons.  Under plaintiffs' plan, the damages would be allocated to subclass members on a pro-rata share, and any leftover funds would be redistributed to the members of the subclass who received a first helping.  Such a redistribution of excess funds would improperly enlarge the recovery of individual plaintiffs.  Some would receive more because others would receive none.

Plaintiffs contend that pro-rata redistribution to class members does not violate the Rules Enabling Act because the jury's award does not account for attorneys' fees and costs. *See* Pls.' Rule 54(b) Reply Br. at 7.  But pro-rata distribution cannot be used to offset attorneys' fees and other costs of litigation.  *See Van Gemert v. Boeing Co.*, 553 F.2d 812, 816 (2d Cir. 1977) (rejecting argument that claiming class members "should receive the unclaimed funds to defray the legal expenses of the claiming members of the class"); *Van Gemert v. Boeing Co.*, 739 F.2d

730, 736 (2d Cir. 1984) (rejecting argument that further distribution to claiming class members was appropriate to offset the costs of litigation and inflation).

Plaintiffs also overlook how this case differs from a typical class action.  The trade-off of an easement for prospective damages is the essence of the Section 930 scheme.  Some plaintiffs may refuse damages because they do not want an easement on their property, and such plaintiffs cannot recover future damages because they will have refused the *sine qua non* of Section 930 damages.  For such plaintiffs, the funds in question are not "unclaimed," but rather refused. Damages attributed to such plaintiffs should not be part of any judgment at all because plaintiffs will have refused to accept an easement, which is a necessary consequence of a Section 930 action.  This Court should subtract such funds from the judgment, and once the judgment is reduced, no party has any right to the remaining funds (legal or equitable) other than the defendants.  Again, the point is simply that the issue remains unresolved.

### E.    A Sum Uncertain

Plaintiffs do nothing to solve a riddle of their own creation:  Dow cannot be 90% responsible, and Rockwell cannot be 70% responsible, for the same amount of damages without running afoul of the law against joint and several liability.  Plaintiffs' proposed judgment is akin to dividing one side of a quarter 90/10, and dividing the other side of the quarter 30/70.  It cannot be done.

Plaintiffs' only suggestion is to set a maximum amount that each defendant must pay. That is, under plaintiffs' proposal, Dow would pay "up to" $159,165,306, and Rockwell would pay "up to" $123,795,238, of the $176,850,340 verdict.  *See* Pls.' Mem. of Law in Opp. to Defs.' Mtn. for New Trial or Remittitur at 8.   Yet that would leave $106,110,204—60% of the verdict—up for grabs.  Plaintiffs do not explain which defendant must pay that 60% of the verdict, or who would decide such a question, or when it would be decided.  Instead, plaintiffs

simply put forward a judgment in which both defendants are jointly and severally liable for 60% of the verdict, in violation of Colorado law:

| Defendant | Minimum | Maximum | Joint & Several Liability |
|-----------|---------|---------|---------------------------|
| Dow | $53,055,102[10] | $159,165,306 | $106,110,204 |
| Rockwell | $17,685,034[11] | $123,795,238 | $106,110,204 |

Labeling $106,110,204 as "*some* overlapping damage liability" is a mastery of understatement. *See* Pls.' Rule 54(b) Reply Br. at 15 (emphasis added).

It is no answer to say that joint and several liability is a "routine occurrence in the *federal* courts." Pls.' Rule 54(b) Reply Br. at 15 (emphasis added). Colorado law prohibits joint and several liability, as this Court rightly held. *See* 12/7/06 Mem. Opinion Regarding Jury Instructions at 91; *see also Slack v. Farmers Ins. Exchange*, 5 P.3d 280, 284 (Colo. 2000) ("the General Assembly eliminated joint and several liability . . . and adopted a several liability scheme, wherein a tortfeasor is responsible *only for the portion of the damages that he or she caused*.") (emphasis added). So by definition, a judgment cannot be entered that runs afoul of that prohibition. Equally mistaken is plaintiffs' claim that joint and several liability is not an "impediment to *finality*." *Id.* (emphasis in original). If a judgment cannot be entered in accordance with the law, there can be no judgment at all, final or otherwise.

---

[10] $176,850,340 (jury verdict) minus $123,795,238 (maximum recovery from Rockwell).

[11] $176,850,340 (jury verdict) minus $159,165,306 (maximum recovery from Dow).

F.      Easements

The need to create easements poses yet another obstacle to a final judgment.  Section 930 provides that a judgment "will confer an easement to continue the invasions thus paid for in advance."  Restatement (Second) of Torts, § 930 cmt. b.  Based on that plain language, this Court rightly recognized that Section 930 requires the creation of an easement upon satisfaction of the judgment.  *See* 12/17/04 Order at 20.  Plaintiffs now attempt to reargue that ruling, and then encourage the Court to ignore it altogether.  *See* Pls.' Rule 54(b) Reply Br. at 12-14.  Plaintiffs cannot obtain a final judgment by hoping that the issue will go away.

Plaintiffs basically argue that the drafters of Section 930 did not really mean "easement" when they wrote "easement."  Plaintiffs are wrong.  As defendants previously explained, an easement is the *sine qua non* of Section 930 recovery.  Section 930 allows a plaintiff to recover future damages in advance, and in exchange, the defendant receives an easement to continue the invasions.  *See* Restatement (Second) of Torts § 930 & cmt. b ("If one causes continuing or recurrent tortious invasions on the land of another . . . and it appears that the invasions will continue indefinitely, the other may at his election recover damages for the future invasions in the same action as that for the past invasions.").  The drafters equated an "easement" with an "interest in land," meaning a property interest.  *Id.*; *see also* Restatement (Section) of Torts § 821E (stating that "[f]or a private nuisance there is liability only to those who have *property rights and privileges* in respect to the use and enjoyment of the land affected, including . . . owners of easements and profits in the land") (emphasis added); *id.* at cmt. a (defining "property rights and privileges" as "legally protected interests, in respect to the particular use or enjoyment that has been affected").

Plaintiffs contend that "easement" does not mean "'easement' in the ordinary sense," and then attempt to replace that unambiguous term with "claim and issue preclusion."  Pls.' Rule

54(b) Reply Br. at 12.   A legal defense such as issue or claim preclusion is fundamentally different than a property right such as an easement.   The drafters of the Second Restatement undoubtedly knew the difference between "easement" (a property right) and "estoppel" (an affirmative defense).   If the drafters of Section 930 had envisioned that the procedural mechanisms of estoppel and res judicata would provide the only protection for a defendant, they would have said so.   Plaintiffs' argument also overlooks how a case under Section 930 is fundamentally different than a typical case.   Estoppel and res judicata apply whenever there is a judgment, but Section 930 goes further and requires an "easement" because a plaintiff recovers for future invasions "in advance."   *See* Restatement (Second) of Torts § 930 cmt. b (1979).

Equally wrong is plaintiffs' suggestion that the issue "must be litigated" by a "future court" in "any subsequent action."   Pls.' Rule 54(b) Reply Br. at 13.   The whole point of Section 930 is to resolve all issues in one proceeding with no need for subsequent lawsuits.   Plaintiffs' proposal is inconsistent with Section 930 and with this Court's Order dated October 17, 2004, and would deprive the defendants of the finality and repose to which they will be entitled.

The sole case cited by plaintiffs, *Slater v. Shell Oil*, 58 Cal. App. 2d 864 (Cal. 1943), does not stand for the proposition claimed by plaintiffs.   In *Slater*, plaintiff sued in ejectment to enforce the removal of defendant's pipeline from plaintiff's property and for damages for defendant's use and occupation of plaintiff's land.   The same plaintiff had previously sued the same defendant for trespass based on the pipeline and had won a damages award.   The court held that the second suit was barred because "it is not a different cause of action."   *Id.* at 868-69. While the court did cite Section 930 as one of many authorities supporting its decision, *Slater* is a classic claim-preclusion case that nowhere suggests that an easement is not required under Section 930.

Plaintiffs cling to the notion that easements will not exist until the judgment is paid. Yet the fact that the easements spring into existence instantaneously upon satisfaction of the judgment means that the Court must determine the scope and nature of the easements *beforehand*. Under Section 930, "satisfaction of a judgment . . . confers an easement," which necessarily means that a court must define the easement before any judgment is paid. And once defined, the individual plaintiffs who are willing to accept such an easement must be identified.

Plaintiffs noticeably fail to address other questions such as what the easement would say, and how an easement could be imposed on property owned by non-class members, and so on. Instead, plaintiffs want to leave the issue up-for-grabs for a later day. Yet skirting the easement issue does nothing to enhance the finality of any judgment. Many easement issues remain unresolved, and this Court must confront the easement issues before it could enter any final judgment.

### G.    The Identification of Class Members

Another obstacle that stands in the way of final judgment is the identification of class members. Rule 23(c)(3) provides that a "judgment" in a class action certified under Rule 23(b)(3) "shall include and specify or describe those to whom the notice provided in subdivision (c)(2) was directed, and who have not requested exclusion, and whom the court finds to be members of the class." *See* Fed. R. Civ. P. 23(c)(3). That rule creates a sensible requirement – a judgment in a class action must specify who is, and who is not, bound by the terms of the judgment.

Plaintiffs' Revised Proposed Final Judgment does not even purport to "specify or describe those to whom notice . . . was directed, and who have not requested exclusion." *Id.* The proposed judgment does not mention the class "notice" at all—let alone identify who received the notice—and does not specify who requested exclusion from the class. Nor does

plaintiffs' proposed judgment include any "find[ing]" by the Court about who is in the class. *Id.* Instead, the proposed judgment refers generally to unspecified "persons and entities" who owned property within the contours of a map. *See* Ex. 1, Pls.' Revised Proposed Final Judgment at 2 ¶ 2. That proposal should be the starting point, not the end of the analysis. Plaintiffs' generalized approach is a far cry from the specificity contemplated by Rule 23(c)(3), especially in light of the *res judicata* implications of a judgment. *See* Fed. R. Civ. P. 23(c) advisory committee's note ("The court, however, in framing the judgment in any suit brought as a class action, must decide what its extent or coverage shall be, and if the matter is carefully considered, questions of *res judicata* are less likely to be raised at a later time and if raised will be more satisfactorily answered."); *see also id.* ("In a (b)(1) or (b)(2) action the judgment 'describes' the members of the class, but need not specify the individual members; in a (b)(3) action the judgment 'specifies' the individual members who have been identified and describe[s] the others.").

Plaintiffs have yet to specify the class members "to whom notice . . . was directed, and who have not requested exclusion, and whom the court finds to be members of the class," Fed. R. Civ. P. 23(c)(3), instead leaving that task for a later day. As the Court recalls, there were significant problems in defining who should receive the class notice. In fact, plaintiffs have conceded that their prior efforts to identify class members in connection with the class notice were inaccurate and over-inclusive. *See* Pls.' Request for Final Approval of Class Notice at 2 (filed 11/27/96) (plaintiffs' database "was overinclusive" because the geographic borders used "did not correspond perfectly with the boundaries of the 'Property Class'"). For example, plaintiffs' class mailing list included parcels outside of the class area, as well as government entities that were specifically excluded from the class definition. In recognition of these known

problems, this Court has held that "it is the class definition, rather than the mailing list which establishes membership." *See* 12/3/98 Order at 3.  Yet the task of translating "those to whom the notice . . . was directed" into a tangible list of those "whom the court finds to be members of the class" has yet to be performed with the specificity and reliability required by Rule 23(c)(3).

Plaintiffs acknowledge the open issue but propose to relegate it to an administrator.  In their recent motion for judgment, plaintiffs propose as the first step in a plan of allocation:

> For each property in the class, the Claims Administrator shall consult appropriate records and data, from Jefferson County, Colorado, and such other sources as the Claims Administrator may reasonably determine to be suitable and reliable, for the purposes of:  (a) determining ownership of the property as of June 7, 1989 . . .

*See* Pls.' Revised Proposed Plan of Allocation at ¶ 8, attached as Ex. B to Pls.' Rule 54(b) Reply Br.  Yet under Rule 23(c)(3), it is "the court" that must "find" who is in the class and who is not. Fed. R. Civ. P. 23(c)(3).  Defining who is bound by a judgment is a core judicial function, and it cannot be relegated to a claims administrator for final decision-making because it defines legal rights.  Establishing who is bound by a judgment simply is not comparable to the ministerial tasks normally performed by a claims administrator.  And under Rule 23(c)(3), a judicial "find[ing]" is required before the entry of "judgment," and the decision cannot be relegated to some undefined person for resolution at some later time.

If anything, plaintiffs' proposal underscores how much work remains undone.  Plaintiffs acknowledge that class membership still must be "determine[d]" after consulting "appropriate records and data" that are later deemed to be "suitable and reliable."  *See* Pls.' Revised Proposed Plan of Allocation at ¶ 8.  Given the amounts at stake, it is inevitable that there will be disputes about who falls within the boundaries of the map, who owned the property at the pertinent point in time, and who is bound by the terms of any judgment.  In short, the issue is both unresolved and controversial, and thus stands in the way of the entry of final judgment.

**H.       The Form of the Judgment**

On the most basic level, this Court cannot enter final judgment without defining exactly what the judgment would say.  Plaintiffs' reply brief introduced a new wrinkle to the form of the judgment, and significantly back-pedaled from prior agreements of the parties.

On May 4, 2006, plaintiffs moved for entry of judgment against not only Dow and Rockwell, but also against various non-parties, including Boeing.  *See* Ex. 3, Pls.' Proposed Final Judgment 5/4/06 at ¶ 4.  Plaintiffs asserted for the first time that "the judgment should identify Rockwell's successors in interest following its 1996 merger with Boeing," and informed the Court that they would address this issue "in a separate motion to add Rockwell's successors . . . ."  Pls.' Mem. in Supp. of Pls.' Mot. for Entry of Judgment at 26.  Plaintiffs filed that motion the next day.

In a series of ensuing negotiations, the parties successfully resolved over nine months ago the question of whether Boeing should be injected into this suit as a successor-in-interest to Rockwell International Corporation.  Plaintiffs agreed that Boeing would not be named as a defendant and agreed to withdraw their Rule 25(c) Motion.  In exchange, plaintiffs' counsel negotiated for and secured the filing of a Statement/Description of Successor Interest stating that:

> The Boeing Company presently is the successor-in-interest to Rockwell International Corporation and would be answerable for any judgment rendered against Rockwell International Corporation in this suit (assuming that Boeing's corporate form is not further changed prior to actual execution upon a judgment) without being added as a defendant in this matter.

*See* Ex. 4, 6/23/06 Joint Submission at Ex. A.  On June 23, 2006, this Court ordered that the Rockwell Successor Motion be deemed withdrawn.  *See* Ex. 5, 6/23/06 Minute Order.  Thus, the question of whether Boeing should be named as a defendant in this suit already has been resolved.

Now, without a renewed Rule 25(c) motion, without a ruling by the Court naming Boeing as a party, and without any opportunity for Boeing and defendants to be heard on the substance of a renewed Rule 25(c) motion, plaintiffs abruptly seek to add non-party Boeing to the present action by means of a line-edit to a newly revised proposed form of Final Judgment appended for the first time to a reply brief.  Plaintiffs' newly minted revised proposed form of Final Judgment defines "defendants" to include Rockwell, and then defines "Rockwell" to include Boeing.  *See* Ex. 1, Pls.' Revised Proposed Final Judgment at ¶ 4 ("As used in this Final Judgment, the term 'Rockwell' includes both Rockwell International Corporation and The Boeing Company, and the term 'Defendants' includes both Dow and Rockwell.") (Ex. A to Pls.' Rule 54(b) Reply Br.).

Plaintiffs should not be allowed to retread old ground on an issue that has been resolved. Nor should plaintiffs be permitted to circumvent Rule 25(c).  Defendants have not found a single case allowing a court to add a non-party to a final judgment in the absence of a Rule 25(c) motion and ruling (nor have plaintiffs cited any).  To the contrary, it is axiomatic that a court cannot, consistent with due process, add a new party to an adverse final judgment.  *See, e.g., Nelson v. Adams USA, Inc.*, 529 U.S. 460 (2000).  Indeed, permitting plaintiffs to add a non-party at the last minute would lead to a host of anomalous and complicated results.  A non-party then would suddenly be able to move for a stay of judgment, file post-judgment motions, have grounds to appeal, and may face the unexpected prospect of posting a bond—all in an action in which the non-party has never filed an appearance, participated in any of the pretrial or trial proceedings in this suit, or been heard on the merits of a Rule 25(c) motion.  Boeing has never been added as a party to this action and there is no pending Rule 25(c) motion to do so.

Plaintiffs do not articulate any compelling reason why Boeing suddenly must be identified in the form of the final judgment itself.   Nor can they in light of the

Statement/Description of Successor Interest on file, which presumably addressed all of plaintiffs' concerns when it was negotiated and secured by plaintiffs' counsel who then withdrew their Rule 25(c) motion.  Even if the Statement/Description of Successor Interest had not been filed, there still would be no reason to waste time at this stage sorting out the question of whether a successor-in-interest should be added to this case.  Courts have recognized that it is unnecessary to disrupt a suit to address questions of successors-in-interest because even if a successor-in-interest is not named, the judgment against a defendant will later be binding on the defendant's successor.  *See, e.g., Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 71 (3d Cir. 1993);  *see also* 7C C. Wright, A. Miller & M. Kane, Fed. Prac. & Proc. § 1958, at 555 (2d ed. 1986) ("The most significant feature of Rule 25(c) is that it does not require that anything be done after an interest has been transferred.").

Inserting Boeing into this action now will only add to the possibility of future proceedings relating to various collateral issues, including, for example, matters relating to standing to appeal and bond.  Such considerations motivated the parties to reach a negotiated solution to the first Rule 25(c) motion in the first place.  There is no reason for the Court to waste time by having the parties go back over the same ground only to reach the same negotiated result.  The absence of any reason why the sudden substitution of Boeing will facilitate the conduct of this litigation at this juncture, particularly in light of the filed Statement/Description of Successor Interest, underscores the futility of revisiting this issue.  *See, e.g., NRDC, Inc. v. Texaco Refining & Marketing, Inc.*, 2 F.3d 493, 506 (3d Cir. 1993) (affirming denial of Rule 25(c) motion because alleged successor-in-interest "was not necessary to the litigation and would be bound by any injunction"); *Kraebel v. New York City Dep't. of Housing Preservation & Dev.*,

No. 90 CIV 4391, 2002 WL 14364, at *4 (S.D.N.Y. Jan. 3, 2002) (denying substitution, in part, because "[p]laintiff does not offer any justification for substitution.").

A recent decision from the United States Supreme Court shows that plaintiffs' belated request is completely unnecessary.  Only a few weeks ago, the Supreme Court decided a case involving Rockwell International as a named party, without including Boeing as a party at all. *See Rockwell Int'l Corp. v. United States*, 127 S. Ct. 1397 (2007).  Certainly Rockwell International can continue to pursue appeals in this case with respect to any judgment that is entered, without the belated inclusion of Boeing.

In sum, plaintiffs should not be permitted to revisit the question of whether Boeing should be added to this suit.  While defendants object to the entry of any final judgment at this stage under Rule 54(b), if and when any final judgment is entered by the Court, Boeing should not be mentioned in any way therein.  In the alternative, if the Court is inclined to take up the issue of whether Boeing should be added to this suit, notwithstanding the stipulation of the parties, then it should permit the requisite motion practice pursuant to Rule 25(c) so that defendants and all affected non-parties may have a full and fair opportunity to respond.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in defendants' motion and accompanying memorandum, this Court should certify the orders for interlocutory appeal under 28 U.S.C. § 1292(b) and pave the way for immediate appellate review.

Dated:  May 1, 2007

Respectfully submitted,


s/ John E. Tangren
One of the Attorneys for the Defendants
David M. Bernick
John E. Tangren
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636
Phone:  312-861-2000
Fax:      312-861-2200

Joseph J. Bronesky
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Phone:  303-297-2900
Fax:      303-298-0940

Attorneys for ROCKWELL
INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 1, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses for the following:

Peter B. Nordberg, Esq.
BERGER & MONTAGUE P.C.
1622 Locust Street
Philadelphia, PA  19103
pnordberg@bm.net
kmarkert@bm.net


Gary B. Blum, Esq.
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206
blumg@s-d.com


s/ Courtney Biggins
Courtney Biggins (legal assistant)