IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, et al.,

Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION AND THE DOW CHEMICAL
COMPANY,

Defendants.
_____

## MEMORANDUM OPINION AND ORDER
## ON PENDING MOTIONS
_____

Kane, J.

On February 14, 2006, the jury returned a verdict in the class trial on Plaintiffs'

trespass and property claims finding for Plaintiffs and against Defendants on both claims

and awarding Plaintiffs compensatory and exemplary damages.  This matter is now before

me on Defendants' renewed motion for judgment as a matter of a law pursuant to

Rule 50(b) and their motion for new trial or, in the alternative, for remittitur of damages

pursuant to Rule 59.  For the reasons stated below, I deny both motions.

Both parties have also submitted motions directed at putting the claims and issues

decided in the course of the class trial in a posture for immediate appeal.  Upon

consideration of their competing proposals, I have determined that final judgment on the

claims decided in the class trial shall be entered pursuant to Federal Rule of Civil

Procedure 54(b).  The substance of the final judgment and related plan of allocation to be entered is set out in Section III below.

### Discussion

*I.      Defendants' Renewed Motion for Judgment as a Matter of Law*

Defendants moved for judgment as a matter of law under Rule 50(a) at the close of Plaintiffs' case and again at the close of evidence.  I review Defendants' latest Rule 50 motion under the same standard as their previous motions.

Under Rule 50, judgment as a matter of law in favor of Defendants is warranted "only if the evidence points but one way and is susceptible to no reasonable inferences supporting [Plaintiffs]."  *Snyder v. City of Moab*, 354 F.3d 1179, 1184 (10th Cir. 2003); *see* Fed. R. Civ. P. 50(a).  In making this determination, I must view the evidence and any inferences to be drawn from it most favorably to the Plaintiffs, as the non-moving party. *Baty v. Williamette Indus., Inc.*, 172 F.3d 1232, 1241 (10th Cir. 1999), *overruled on other grounds*, *Nat'l R.R. Passenger Corp. v. Morgan*, 563 U.S. 101 (2002).  I also must "refrain from weighing the evidence, passing on the credibility of witnesses or substituting [my] judgment for that of the jury."  *Brown v. Wal-Mart Stores, Inc.*, 11 F.3d 1559, 1563 (10th Cir. 1993); *see Baty*, 172 F.3d at 1241.

I denied Defendants' first and second Rule 50 motions based on my determination that, viewing the evidence and all reasonable inferences therefrom in the light most favorable to Plaintiffs, there was a sufficient basis for a reasonable jury to find for Plaintiffs on each of the issues identified by Defendants in their motions.  In their most

recent Rule 50 motion, Defendants seek judgment on the same issues as in their previous motions relying on much the same arguments as before.  Having carefully considered these renewed arguments and Plaintiffs' response under the standard for decision stated above, I again find that there was a legally sufficient evidentiary basis for a reasonable jury to find for Plaintiffs on each of the issues challenged by Defendants.  Accordingly, I deny Defendants' Renewed Motion for Judgment as a Matter of Law.

II.   *Defendants' Motion for New Trial and Alternative Motion for Remittitur of Damages*

Defendants have also moved pursuant to Rule 59(a) for the jury's verdicts to be set aside and a new trial ordered based on alleged inconsistencies and excesses in the jury's verdicts and other alleged errors committed before, during and after trial.  In the alternative, Defendants seek remitittur of the jury's compensatory and exemplary damages verdicts.

Rule 59 of the Federal Rules of Civil Procedure provides that a court may grant a new trial after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  Granting a new trial is only appropriate, however, where the claimed error substantially and adversely affects the rights of a party.  *See Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1297 (10th Cir. 1998); Fed. R. Civ. P. 61.  The burden of showing an error having this prejudicial effect rests on the party seeking the new trial.  *See Streber v. Hunter*, 221 F.3d 701, 736 (5th Cir. 2000); *Clarksville-Montgomery County Sch. Sys. v. U.S. Gypsum Co.*, 925 F.2d 993, 1002

3

(6th Cir. 1991); *see generally* 11 Charles Alan Wright et al., Federal Practice & Procedure: Civil § 2803, at 47 (2d ed. 1995 & Supp. 2007) (collecting cases).  The decision of whether to grant a new trial rests within the sound discretion of the district court.  *See Shugart v. Cent. Rural Elec. Co-op*, 110 F.3d 1501, 1506 (10th Cir. 1997); *York v. Am. Tel. & Tel. Co.*, 95 F.3d 948, 958 (10th Cir. 1996).  While federal law governs the procedural aspects of a motion for new trial or remittitur, state law sets the substantive standards in this action, *see* 42 U.S.C. § 2014(hh); *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 426-39 (1996), except to the extent that a federal constitutional challenge is raised.

Defendants devote nearly three-fourths of their voluminous Rule 59 motion to rearguing my decisions to proceed with a class trial, to admit certain lay and expert evidence, to reject certain of Defendants' proposed jury instructions and overrule their objections to other instructions, and to deny Defendants' multiple motions for mistrial.  Each of the challenged decisions was reached after reasoned consideration of extensive written and/or oral argument from both parties.  After careful review of Defendants' most recent arguments regarding these matters, I find no basis for reconsidering these decisions.  Accordingly, I deny Defendants' motion for new trial based on the claimed errors in my previous decisions.[1]

---

[1]      In so holding, I did not find it necessary to make findings on whether Defendants have waived any of the arguments now asserted by failing to raise them at the appropriate time before or during trial or on whether any of the errors claimed by Defendants substantially and adversely affected their rights as would be required for a new trial to be ordered.

The remainder of Defendants' arguments for new trial are based on alleged inconsistencies or excesses in the jury's compensatory and exemplary damages verdicts. I examine each of these arguments in turn, as well as Defendants' alternative motion for remittitur of damages.

> A.    *Request for New Trial Based on Alleged Inconsistencies in the Jury's Damages Verdicts*

Defendants assert a new trial is required because the jury's answers to the damages interrogatories in the jury verdict form are inconsistent in various respects.  In order for a new trial to be ordered on this basis, Defendants must "show that any verdict inconsistency demonstrates either confusion or abuse on the jury's part."  *Domann v. Vigil*, 261 F.3d 980, 983 (10th Cir. 2001) (internal quotation omitted).  Special interrogatory answers that are "irreconcilably inconsistent" because they are "logically incompatible" indicate such jury confusion or abuse of power.  *See Loughridge v. Chiles Power Supply Co.*, 431 F.3d 1268, 1275 (10th Cir. 2005).  In determining whether there is any inconsistency meeting this standard, I "must accept any reasonable view of the case that makes the jury's answers consistent," and consider the verdict in light of the instructions given to the jury, among other factors.  *Id.* (internal quotations omitted).

The jury answers challenged by Defendants are not "logically incompatible" or even inconsistent.  Far from indicating that the jury was confused or abused its power in determining damages, these answers indicate a diligent effort by the jury to follow the instructions they received regarding determination of damages.  Defendants' complaints,

as a result, are more properly directed to the jury instructions and verdict form than to any

inconsistency in the jury's verdicts.[2]

There is no inconsistency, for example, in the jury's determination of identical

compensatory damages for the trespass and nuisance claims.  The jury was instructed to

determine any compensatory damages resulting from a trespass or nuisance committed by

the Defendants separately, and informed that the court would apply the rule prohibiting

multiple recovery of the same damages when it issued judgment on the jury's verdict.

Notice of Final Jury Instructions (Doc. 2121) [hereinafter "Final Jury Instructions"],

No. 3.26 ("Multiple Recovery Prohibited").[3]  Following this and other instructions and

the corresponding interrogatories in the verdict form, the jury found both Defendants

liable on both theories of liability and determined that the aggregate damages to the

Class[4] on each claim were $176,850,340.  Jury Verdict Form (Doc. 2117) at 15, 24.  All

concede, and I found following the jury's verdict, *see* 2/14/06 Tr. at 10800-01, that these

responses reflect the jury's determination that Defendants' proven trespass and nuisance

---

[2]    As discussed below, in many instances Defendants failed to object to the
jury instructions and portions of the jury verdict form that they now challenge.

[3]    Defendants proposed this instruction.  *See* Defs.' Submission of Phase III
Jury Instructions and Jury Verdict Forms (Doc. 1271) at 64-65 (Defs.' Proposed Damages
Instruction No. 3.14 - Multiple Recovery Prohibited).

[4]    The jury instructions defined the "Class" as "persons who owned property
in a specific, defined area, known as the 'Class Area,' near the Rocky Flats Nuclear
Weapons Plant on June 7, 1989."  Final Jury Instructions, No. 1.1.

caused the same damages:  a reduction in the aggregate value of the Class Properties of $176,850,340.[5]

The damages verdicts on each claim reflect the jury's determination that the Defendants' trespass and nuisance each bore the requisite causal relationship to the entire diminution in value suffered by the Class Properties.  This determination is consistent with the evidence presented indicating that some conduct by each Defendant contributed to both the continuing trespass and nuisance, and with authority recognizing that the same conduct can contribute to liability under both theories.  *See, e.g.*, *Borland v. Sanders Lead Co.*, 369 So. 2d 523, 527 (Ala.  1979) ("trespass and nuisance are separate torts for the protection of different interest invaded," but "the same conduct on the part of a defendant may, and often does, result in actionable invasion of both interests.").  It is also consistent with the evidence presented on damages and with the jury instructions and legal rule setting the same measure of damages for both types of tortious invasions.  *See* Final Jury Instructions, No. 3.22; Restatement (Second) of Torts § 930(3)(b) (1979) (measure of damages for continuing tortious invasions of land is the decrease in the value of land caused by the prospect of invasion continuing).[6]  There is, therefore, no inconsistency in the jury's answers concerning the aggregate damages to the Class caused by the

---

[5]      The jury instructions defined "Class Properties" as properties owned by Class members as of June 7, 1989 that are located in the Class Area.  Final Jury Instructions, No. 3.2.

[6]      Unless otherwise noted, all references to the Restatement in this memorandum opinion and order are to the Restatement (Second) of Torts (1979).

7

Defendants' continuing trespass and nuisance.  Defendants' concern about multiple recovery of the same damages will, as I stated in the relevant jury instruction and when the jury's verdict was announced, be addressed in the final judgment on the jury's verdict.

Nor is there any inconsistency in the jury's allocation of fault in the verdict form between Dow and Rockwell for their trespass and nuisance.  Under the evidence presented, the jury could reasonably apportion fault differently between the Defendants for the trespass through contamination of the Class Properties and for the Defendants' unreasonable and substantial interference in the use and enjoyment of these Properties as found in the nuisance claim.  In particular, the jury's apportionment to Dow of 90% fault for the trespass and 30% for the nuisance and to Rockwell of 10% fault for the trespass and 70% fault for the nuisance is reasonable and consistent under the evidence presented.

Defendants' attempt to create an inconsistency in the verdict by characterizing the jury's apportionment of fault as an allocation of loss causation or damages is unavailing.  Colorado's pro rata liability statute required that the jury separately determine the total damages sustained by Plaintiffs and the percentage "fault" attributable to each Defendant.  Colo. Rev. Stat. § 13-21-111.5(2).  The jury instruction for the latter determination is titled "Apportioning Fault Between the Defendants."  Final Jury Instructions, No. 3.19A.  This instruction and the corresponding interrogatories in the verdict form are modeled on language approved by the Colorado Supreme Court for this jury determination.  *See* Colo. Jury Instructions (Fourth) Civ. §§ 9:29-9:29B.  The jury followed these instructions and apportioned fault for the trespass and for the nuisance between the Defendants.  It is the

duty of the Court, not the jury, to prorate each Defendant's liability based on the jury's

allocation of fault between them.  *See Lira v. Davis*, 832 P.2d 240, 242 (Colo. 1992)

(after jury determines total compensatory damages, court applies pro rata liability statute

and enters judgment against each defendant for compensatory damages "apportioned in

accordance with the percentage of  fault attributable to that defendant" found by the jury).

The jury was not charged with determining loss allocation and did not do so.

It appears Defendants' true complaint here is not that the jury's apportionment of

fault on the two claims is irreconcilably inconsistent but rather that the jury's answers in

the verdict form did not sufficiently fix the compensatory damages to be awarded against

each Defendant.  In fact, the jury made the factual findings on compensatory damages

that were required of it, leaving to the Court the task of applying the rule against multiple

recovery and the pro rata liability statute.  As described in Section III, this task is readily

accomplished without disregarding any of the jury's factual findings or engaging in

speculation regarding what the jury actually determined.  As a result, there is no cause for

a new trial on the ground that the jury did not make sufficient findings for judgment on

compensatory damages to be entered against each Defendant.

I also note that Defendants' complaints about what they perceive as the jury's

uncertain allocation of compensatory damages between them is of little practical

significance if, as Defendants have maintained throughout this action, they are both fully

indemnified here by the U.S. Department of Energy (DOE) pursuant to their contracts to

operate Rocky Flats Nuclear Weapons Plant for the federal government.  That the DOE

9

has controlled the joint defense of its indemnitees[7] may also explain Defendants' failure

throughout the long history of this action to raise the comparative fault of the other as a

defense or to take other action to protect their interests as against the other, even when

invited to do so by this Court.  Thus, while I find no inconsistency in the jury's allocation

of fault between the Defendants as required by the jury instructions and Colorado law, I

also am dubious that any error on this point would substantially and adversely affect

either Defendant's rights as a result of their joint indemnification by the DOE and their or

the DOE's apparent decision not to protect the interests of each Defendant against the

other in this action.

Defendants also claim that inconsistencies in the jury's determination of

exemplary damages require a new trial.  Specifically, they contend the jury's award of

these damages is irreconcilably inconsistent with its determination of compensatory

damages, because the total amount of exemplary damages awarded exceeds the amount of

compensatory damages found by the jury.  This result is internally inconsistent,

Defendants argue, because it violates the jury instructions and Colorado's statutory cap

on exemplary damages awards.

Defendants' complaint does not state an inconsistency in the jury's verdicts, but

rather a claimed "violation" in the jury's determination of exemplary damages.  Even if

---

[7]         In their memorandum opposing Defendants' Rule 59 motion, Plaintiffs cite
statements to this effect by Rockwell in a Form 10-Q filing with the United States
Securities and Exchange Commission.  *See* Pls.' Mem. of Law in Opp'n to Defs.' Mot.
for New Trial or Remittitur (Doc. 2239) at 6-7 & n.4.  Defendants do not dispute these
statements in their reply brief.

Defendants were correct that the jury "violated" the jury instructions or the statutory cap on exemplary damages as claimed, this would not be cause for a new trial. Resolution of this issue would require no more than a judicial adjustment of the exemplary damages award in entering judgment in accordance with Colorado law. *See Lira*, 832 P.2d at 246 (applying Colorado exemplary damages statute to limit amount of jury's exemplary damage award to amount of compensatory damages due after pro rata apportionment); *see also id.* (remanding for entry of judgment consistent with opinion, rather than for new trial, after determining that jury's award of exemplary damages exceeded statutorily permitted amount).

In fact, Defendants are incorrect that the jury's exemplary damages award violated Instruction No. 3.27, and its direction that any exemplary damages "you award may not be more than the amount you awarded as actual damages against the Defendant or Defendants." From the jury's perspective, its verdict assessed compensatory damages of $353.7 million, the sum of the $176.8 million in actual damages it found on the trespass claim and on the nuisance claim, with the result that the sum of exemplary damages awarded against Dow and Rockwell, $200.2 million, did not exceed the amount of compensatory damages stated in the verdict. It is only upon application of the prohibition on multiple recovery to the jury's compensatory damages determinations, a task reserved for the court under Instruction No. 3.26, that the total amount of compensatory damages due from Defendants, $176.8 million, becomes less than the aggregate exemplary damages determined by the jury.

11

Further, for the reasons stated in Section III below, I find the jury's exemplary

damages awards against each Defendant do not exceed Colorado's statutory cap on

exemplary damages.  *See infra* Section III.B.1.

> B.      *Request for New Trial or Remittitur Based on Excessive Compensatory and*
>         *Exemplary Damages*

Defendants assert a new trial or remittitur is also required because the jury's

compensatory and exemplary damages determinations are excessive on one or more

grounds.  I review each of Defendants' contentions in turn.

> 1.      *Compensatory damages award*

I begin with Defendants' contention that the jury's compensatory damages

determinations must be set aside because they are clearly unsupported by the evidence.

As support for this contention, Defendants incorporate the legal and evidentiary

arguments asserted in support of their Renewed Motion for Judgment as a Matter of Law

(Doc. 2220).

Under both Colorado and federal law, a jury's determination of damages is

inviolate unless the damages award is so excessive or inadequate "as to shock the judicial

conscience."  *Higgs v. Dist. Court*, 713 P.2d 840, 860-61 (Colo. 1985); *Dodoo v. Seagate*

*Tech., Inc.*, 235 F.3d 522, 531 (10th Cir. 2000); *Palmer v. City of Monticello*,

31 F.3d 1499, 1508 (10th Cir. 1994).  If the trial court determines the damages award is

excessive under this test, then it may reduce or remit the jury's damages verdict by the

amount of the damages found to be excessive, or, alternatively, set aside the verdict and

order a new trial on damages alone if the plaintiff refuses to accept the remittutur.  *Higgs*,

713 P.2d at 861; *Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,

703 F.2d 1152, 1168 (10th Cir. 1981); *see Mason v. Texaco, Inc.*, 948 F.2d 1546, 1560

(10th Cir. 1991).  If, however, the court finds further that the damages awarded are so

excessive as to raise "an irresistible inference" that "passion, prejudice, corruption or

other improper cause invaded the trial," then the court must order a new trial on all issues

because it is impossible to determine the degree to which these factors affected the jury

generally and therefore influenced the determination of liability.  *Higgs*, 713 P.2d at 861;

*Malandris*, 703 F.2d at 1168; *see Mason*, 948 F.2d at 1560.

I find the jury's compensatory damages verdicts are not excessive.  The question

of what damages, if any, were caused by Defendants' wrongful conduct was vigorously

litigated at trial.  Plaintiffs presented ample evidence, including both expert and lay

witness testimony, that, if credited, established the fact and amount of compensatory

damages caused by this conduct.  Defendants countered with their own array of expert

and lay witness testimony that, if credited by the jury, would have caused it to find that no

actual damages had resulted from any trespass or nuisance committed by Defendants.

The jury's compensatory damages determination, therefore, turned on its assessment of

conflicting evidence and the credibility of the parties' numerous experts and other

witnesses.  After several weeks of deliberations, the jury returned a verdict assessing

$176.8 million in compensatory damages on each claim, some $70 million *less* than the

$248 million in compensatory damages Plaintiffs had requested the jury find on each

13

claim based on the evidence before it.  *See* 1/18/06 Tr. at 10,350 (trespass), 10,352

(nuisance).  Having considered the evidence presented and the jury's verdicts, I find the

jury's determination of compensatory damages is neither against the weight of the

evidence nor otherwise a shock to this judicial conscience.  As a result, I find neither a

new trial nor remittitur is warranted on the ground the compensatory damages verdicts are

excessive under the evidence presented.

Defendants next contend the jury's determinations of compensatory damages must

be set aside and a new trial ordered because these determinations improperly include

damages to properties that were not owned by Class members on January 30, 1990, the

date this action was filed.  This contention invokes my Order of May 17, 2005

(Doc. 1338) [hereinafter "May 2005 Order"], which was one of a series of pretrial orders

delineating the issues to be tried and decided in the class trial.

In the May 2005 Order, I addressed a number of issues, including whether and

how compensatory damages would be addressed in the class trial.  *See* May 2005 Order

at 14-20.  Based on the parties' extensive submissions on the subject, I ruled that while

liability for the entire Class would be determined in the class trial, the only compensatory

damages to be tried would be damages caused by the prospect of any proven trespass or

nuisance continuing indefinitely, as set forth in Restatement § 930(3)(b).[8]  *Id.* at 15.  As

relevant here, this Restatement section provides that the measure of damages for such

_____

[8]        Consideration of whether and how Class members might seek to recover
damages for past or present invasions pursuant to Restatement §§ 930(3)(a) and/or 929
was deferred until sometime after the class trial.  May 2005 Order at 15.

14

"future" or "prospective invasions" is "the decrease in the value of the land caused by the prospect of the continuance of the invasion measured at the time when the injurious situation became complete and comparatively enduring." *Id.*

Restatement § 930 further provides that a property owner injured by a continuing tortious invasion, such as the trespass and nuisance found here by the jury, may elect to recover this type of damage for continuing tortious invasions if "it appears that the invasions will continue indefinitely." Restatement § 930(1) (cited in May 2005 Order at 15). In this case, Plaintiffs elected to seek damages for the decrease in property values caused by Defendants' continuing tortious invasions on January 30, 1990, when they filed suit seeking to recover these damages on behalf of a Class defined as persons owning property in the Class Area as of June 7, 1989. *See* May 2005 Order at 15-16; Order re: Instruction No. 3.28 (Doc. 2064) at 1-8 (regarding application of Restatement § 930(1) and § 930(3)(b) to this action). Whether this election is valid depends (in part) on Plaintiffs' subsequent demonstration of if and when it appeared that Defendants' wrongful invasions "will continue indefinitely." *See* Restatement § 930(1).

An additional consideration here is that some number of Class members, reportedly representing approximately 10% of the Class Properties, sold the property they owned in the Class Area between the June 7, 1989 date used to define the Class and January 30, 1990, when Plaintiffs filed this suit and elected to recover prospective damages on the Class's behalf. As a result, these Class members could not participate in the election to recover prospective damages that occurred upon the filing of this action.

Based on this consideration and others stated in the May 2005 Order, I declared in
that Order that the Class would be divided into two subclasses for purposes of
determining the "prospective damages" that could be recovered for any continuing
trespass or nuisance found by the jury at the class trial.  The first subclass, which I will
refer to as the "Prospective Damages Subclass" or just the "Damages Subclass," consists
of all Class members who owned property in the Class Area on January 30, 1990 or the
date on which the jury, pursuant to Restatement § 930(1), found that Defendants'
continuing tortious invasions would continue indefinitely, whichever was later.
May 2005 Order at 15.  This subclass, I found, was authorized to recover damages for
these prospective or future tortious invasions, that is, the decrease in the value of their
Class Properties, as provided in Restatement § 930(3)(b).  *Id.* at 15-16.  I further found
that "[t]he compensatory damages, if any, to be awarded to this subclass, will be
determined *based on the jury's findings* in the class trial."[9]  *Id.* at 16 (emphasis added).  I
stated that the availability and means of determining any compensatory damages due to
the second subclass, consisting of all other Class members, would be decided at some
point after the class trial.  *Id.*

Defendants now argue that the jury's assessment of compensatory damages at the
class trial was improper and must be set aside because the jury was instructed to

---

[9]        In the May 2005 Order, I also set out the findings to be made by the jury,
*see id.* at 16-17, but later determined that these findings were unnecessarily complicated
and that the process and findings set out in Instruction No. 3.22 were sufficient and
consistent with the May 2005 Order.  *See* Mem. Op. re: Jury Instructions (Doc. 2205)
at 61-62.

determine the decrease in value of the Class Properties as a whole, without distinguishing

between properties corresponding to the two subclasses set out in the May 2005 Order.

I find no merit to Defendants' argument for two reasons.  First, assuming that the

jury should not have been instructed to determine the aggregate decrease in value for all

Class Properties, Defendants failed to object to this instruction and, in fact, actively

sought for the jury to be instructed in just this manner at the close of trial.  The relevant

background here is that after considering the parties' briefing and proposed instructions

on the jury's determination of damages at the class trial, I prepared instructions directing

the jury to determine the aggregate decrease in the value of properties within the Class

Area and percentage decrease in property values, if any, caused by any continuing

trespass and/or nuisance by one or both Defendants.  *See* Final Jury Instructions,

Nos. 3.20-3.23.  As is my practice, I provided these and other substantive instructions to

the parties and the jury before opening arguments began, with notice that the instructions

would be revised if necessary as the trial progressed.  *See generally* Mem. Op. re: Jury

Instructions (Doc. 2205) at 3 & n.4 (describing jury instruction process).  Neither party

objected at this time to the instructions directing the jury to assess any decrease in

property values for all properties in the Class Area.

Near the end of trial, I directed the parties to submit any proposed revisions to the

jury instructions of record and a proposed jury verdict form.  Defendants submitted

extensive proposed revisions and objections to these instructions, including those

regarding determination of compensatory damages.  Defendants did not, however, object

17

to the compensatory damages instructions on the ground that they improperly failed to
limit the jury's damages determination to the decrease in value of Class Properties owned
by members of the Damages Subclass.  To the contrary, Defendants requested that the
key damages instruction, No. 3.22 ("Measure of Actual Damages") be revised to
emphasize and reemphasize that the jury was to decide any decrease in value for "all of"
the properties in the Class Area.  *See* Defs.' Proposed Changes to Prelim. Jury
Instructions (Doc. 1958), Ex. A at 89-92 (requesting that "all" be inserted before every
reference to properties in the Class Area).[10]  Defendants also submitted proposed jury
verdict forms that required the jury to determine compensatory damages for all Class
Properties, using the same language as in their proposed revisions to Instruction No. 3.22.
*See* Defs.' Proposed Jury Verdict Forms (Doc. 1963), Exs. A & B at 3-4, 5-6 (asking
whether Plaintiffs proved Defendants' trespass or nuisance "caused the actual value of all
of the Class Properties to be less than what the value of these properties would have
been" but for the trespass or nuisance).[11]  Nor did Defendants object to the final jury

---

[10]    I did not adopt these proposed revisions because the damages and other
instructions already adequately communicated this concept.  *See* Mem. Op. re: Jury
Instructions at 75.

[11]    Defendants argue they cannot be held accountable for the compensatory
damages portion of this proposed Jury Verdict Form because I had directed the parties to
prepare their proposed forms "consistent with the current jury instructions."  *See* Order on
Jury Instruction Submissions (Doc. 1929) at 2.  Defendants are correct that the then
current jury instructions directed the jury to determine the decrease in property values for
the Class as a whole.  Defendants' concurrence with this approach, however, is
demonstrated by their separate proposed revisions to these instructions, which sought to
emphasize this approach, not revise it.  *See* Defs.' Proposed Changes to Prelim. Jury
Instructions (Doc. 1958), Ex. A at 89-92.  The order cited by Defendants also placed no

instructions and verdict form on the ground that they failed to limit the jury's

compensatory damages determination to the Damages Subclass.  In short, Defendants did

nothing from the initial presentation of the jury instructions at the start of trial through the

end of trial to call this alleged error to my attention, and, in fact, invited this approach by

pressing for damages to be determined for "all of" the properties in the Class Area.[12]

  The second difficulty with Defendants' argument here is that the jury instructions,

the verdict form and the jury's verdict on compensatory damages, are not, in fact, at odds

---

restrictions on the parties' proposed revisions to the jury instructions, and Defendants in
fact proposed any number of instruction revisions that were not consistent with the
instructions then of record.

  [12]  Defendants cite their objection throughout the pretrial period to
compensatory damages being determined on anything other than an individual basis as
preserving their right to object to the jury's determination of damages for the Class as a
whole as opposed to just the Damages Subclass.  This general objection, however, is
patently insufficient for this purpose.  *See Bitler v. A.O. Smith Corp.*, 391 F.3d 1114,
1127-28 (10th Cir. 2004) (party must raise an objection "distinctly" and "make abundantly
clear the grounds and basis for its objection"); *Unit Drilling Co. v. Enron Oil & Gas Co.*,
108 F.3d 1186, 1190 (10th Cir. 1997) (party "waived its right to claim error in the
instructions by failing to object specifically at trial to the defect in the jury instructions of
which it now complains"); Fed. R. Civ. P. 51.  For the same reasons, Defendants'
criticism of Plaintiffs' proposed compensatory damages plan in July, 2004, on the ground
that some portion of the Class would not be entitled to recover damages for prospective
invasions under the plan, is also insufficient.  This criticism was made in a lengthy
memorandum filed more than a year before trial commenced, before any jury instructions
on damages had even been proposed, and in the context of opposing any kind of class
trial on compensatory damages.  *See* Defs.' Resp. to Pls.' Proposed Plan for
Determination of Compensatory Damages (Doc. 1247) at 11-14; *see also Abuan v.
Level 3 Commc'ns, Inc.*, 353 F.3d 1158, 1172-73 (10th Cir. 2003) (arguments made in
connection with summary judgment motion did not constitute specific objection to
subsequent jury instructions).  Even if this were not the case, Defendants' subsequent
actions during the class trial seeking to have compensatory damages determined for "all
of" the Class Properties waived the right to complain that the jury instructions were
erroneous for doing so and that the verdict must be set aside as a result.

with the plan for deciding compensatory damages set forth in the May 2005 Order.  In

this Order I held that: (1) damages for prospective invasions, *i.e.*, any decrease in property

value caused by Defendants' continuing tortious invasions, would be decided at the class

trial; (2) per Restatement § 930(1), only Class members who owned property within the

Class Area on the later of January 30, 1990, when this action was filed, or the date on

which the jury found it appeared the tortious invasions would continue indefinitely, were

entitled to recover damages for prospective invasions; and (3) any damages for

prospective invasions to be awarded to this subclass would "be determined based on the

jury's findings in the class trial."  May 2005 Order at 15-16.  Pursuant to the jury

instructions and verdict form, the jury at the class trial made all of the findings necessary

to award damages to the Damages Subclass under this plan.

    First, the jury was directed to decide whether it appeared on or before January 30,

1990, or on some other date, that the trespass or nuisance by Dow or Rockwell would

continue indefinitely.  *See* Final Jury Instructions, No. 3.28.  The jury found that this

condition existed on or before January 30, 1990.  *See* Jury Verdict Form at 28-29.

Pursuant to Restatement § 930(1) and the May 2005 Order, this determination establishes

that the right to recover prospective damages existed on January 30, 1990, when the

election to seek these damages was made by the filing of this action, and thereby defines

the "Prospective Damages Subclass" entitled to recover these damages as the Class

members who owned properties in the Class Area on this date.  From this jury finding,

identification of the members of this subclass and their corresponding properties within

the Class Area is a ministerial task to be accomplished as part of the damages allocation

plan based on county real estate records.  *See infra* Section III.B.

Second, the jury was asked to and did determine any decrease in the value of all

properties in the Class Area caused by any continuing trespass or nuisance by Defendants,

and, as directed, expressed their findings by property category (residential properties,

commercial properties and vacant land) and in the aggregate and by percentage.  *See*

Final Jury Instructions, No. 3.23; Jury Verdict Form at 15, 24.  As described in Section III

below, these factual findings are sufficient to allocate the aggregate damages found by the

jury to individual Class Properties based on county property records.  This allocation can

be applied to properties owned by members of the Prospective Damages Subclass as well

as those owned by the second subclass.  The compensatory damages to be awarded and

distributed to the Prospective Damages Subclass, therefore, can be readily determined

from the jury's verdict, just as contemplated by the May 2005 Order, and no additional

factual findings by the jury are required.[13]  As a result, even if Defendants had preserved a

right to object to the jury's verdict because it determined prospective damages for all

Class Properties, no grounds would exist for setting aside the jury's compensatory

damages verdict and ordering a new trial on this basis.

Defendants next contend that a new trial is required because the jury was not

instructed to determine the exact date on which the injurious situation caused by

---

[13]     The question of what disposition should be made of the damages caused by
Defendants' continuing trespass and nuisance to properties in the Class Area that were
owned by Class members not in the Damages Subclass is addressed in Section III below.

Defendants became complete and comparatively enduring or that it must limit its damages
assessment to properties owned by Class members on this date.  This contention suffers
from a number of flaws, beginning with its misreading of the Restatement.  Restatement
§ 930(3)(b) does not, as Defendants assert, require that damages for prospective invasions
be "awarded" as of a specific date.  *See* Defs.' Mem. in Supp. of Mot. for New Trial
(Doc. 2225) at 20; Defs.' Reply in Supp. of Mot. for New Trial (Doc. 2249) at 5.  Rather,
it states clearly that when an injured party is empowered to and does elect to recover
damages for continuation of an invasion into the future, such as occurred here, these
damages are to be "measured" at the "time" when the injurious situation became complete
and comparatively enduring.  Restatement § 930(3)(b).  This is precisely what the jury
was instructed to do, *see* Final Jury Instructions, No. 3.22, and what it did do, *see* Jury
Verdict Form at 15, 24.

　　　Nor can Defendants be heard to complain at this late date about this supposed error
in the jury instructions and verdict form.  Although the Defendants made many challenges
to the instructions and verdict form presented to the jury, nowhere did they assert that the
jury's deliberations and verdict on compensatory damages must be limited to Class
members who owned their Class Property on a specific date the jury determined the
injurious situation caused by Defendants became complete and comparatively enduring.
To the contrary, as described earlier, Defendants affirmatively pressed near the close of
trial for instructions directing the jury to determine compensatory damages for "all of the
Class Properties" and to measure any "diminution in all Class property values" as of the

22

time the injurious situation caused by Defendants became complete and comparatively

enduring.  *See* Defs.' Proposed Changes to Prelim. Jury Instructions (Doc. 1958), Ex. A

at 89-92.  In this same submission, they also did not request that the jury be directed to

decide a specific date on which this condition came into existence, and made no argument

that this finding was required for any reason.  *See id.*, Ex. A at 91, 93 (requesting only

that jury be instructed to determine whether injurious situation became complete and

comparatively enduring at all, before being asked to decide whether it became so during

the time period alleged by Plaintiffs).

Defendants did include a question on this point in their January 11, 2006 proposed

jury verdict form, but they offered no objection or rationale for requesting that the "CCE

date" be specifically determined, and instead represented (consistent with my order) that

their proposed verdict form was prepared in view of the current jury instructions.  Defs.'

Proposed Jury Verdict Forms (Doc. 1963) at 1 n.1.  Those instructions (as well as

Defendants' proposed revisions to them) did not require such a finding.  Nor did

Defendants assert in connection with this proposed interrogatory, or otherwise, that the

jury was required to limit its damages assessment to Class members who owned Class

Properties on this date.  As a result, Defendants did not make the specific objection to the

jury instructions and verdict form necessary to assert the error now claimed.  *See Bitler*,

391 F.3d at 1127-28 (objecting party must make position "abundantly clear" and state

grounds in terms that are "obvious, plain or unmistakeable") (citations and internal

quotations omitted).

I find no greater merit in Defendants' contention that the jury's verdict on
compensatory damages must be set aside "to account for Class Members who decline to
accept an easement on their properties."  Defs.' Mem. in Supp. of Mot. for New Trial
(Doc. 2225) at 22.  This contention is raised for the first time in Defendants' post-trial
motions and is thus subject to waiver for the same reasons stated above.

This untimely objection also elevates a comment to Restatement § 930(3)(b) and
dicta in a prior decision in this case to a rule of law that, Defendants insist, requires that a
formal easement be granted and recorded for each Class property that authorizes
Defendants' continuing trespass and nuisance on it.  Based on this premise, Defendants
further assert the verdict must be set aside because some Class members may refuse to
grant or accept the necessary easement.  Defendants, who provide no other authority for
the alleged easement requirement, read too much into both of the cited statements.

The referenced Restatement comment discusses an injured party's right to elect to
be compensated "once and for all" for an indefinitely continuing invasion.  Restatement
§ 930 cmt. b.  It concludes that "[t]he exercise of the power of election, followed by
satisfaction of a judgment for damages for prospective invasions, confers an easement or
privilege to continue the invasions thus paid for in advance."  *Id.*  In *Cook X*, I referred to
this concept in even more summary fashion, noting that if the Class prevailed in its
election to recover for prospective damages, satisfaction of its judgment would confer "an
easement" for the tortious invasions to continue without payment of additional
compensation.  *See Cook v. Rockwell Int'l Corp. ("Cook X")*, 358 F. Supp. 2d 1003,

1013-14 (D. Colo. 2004).  Other courts have used the terms "license," "grant," "consent"

or waiver to refer to this concept.  *See Severt v. Beckley Coals, Inc.*, 170 S.E.2d 577,

582-83 (W. Va. 1969) (license or grant); *Slater v. Shell Oil Co.*, 137 P.2d 713, 715-16

(Cal. Ct. App. 1943) (consent and waiver); *Strange v. Cleveland, C., C. & St. L. Ry. Co.*,

91 N.E. 1036, 1038 (Ill. 1910) (consent).  No doubt other courts and commentators have

described this concept in other terms and by reference to other legal theories as well.

No matter the term or language used, the common principle behind all of these

expressions is that damages for continuation of a tortious invasion into the future can only

be demanded and received once, and that satisfaction of a judgment for such damages

precludes successors to the affected properties from recovering these same damages.  *Cf.*

*Severt*, 170 S.E.2d at 583 (once future damages are recovered "there can be no second

recovery for [the nuisance's] continuance;" internal quotation omitted).  Thus, the

governing rule here is the familiar doctrine of res judicata or claim preclusion.

Application of that doctrine to the judgment in this action does not require or rely on

some formal or theoretical process based on the grant or acceptance of an easement or

like interest by members of the Class.

Defendants' concern that successive owners of the Class Properties, as nonparties

to this action, will not be bound by this judgment is belied by the general rule that a

successor to an interest in property that is the subject of a pending or completed action at

the time of transfer is bound by the judgment to the same degree as the parties.  *See*

Restatement (Second) of Judgments §§ 43-44 (1982 & Supp. 2007).  As a practical

25

matter, I also think it is highly unlikely that any persons who have acquired or may

acquire property in the Class Area since the commencement of this action will be inspired

by the example of this long and hard-fought suit to bring their own claims for

continuation of the invasion against Defendants.  Were any to do so, Defendants are fully

capable of defending their interests in such a suit by, among other things, asserting the

satisfaction of judgment in this case as a defense.  The conveyance of an easement is not

required for this purpose, and none is required by the cited Restatement comment or any

prior decision in this case.

Defendants also argue the jury's verdict on compensatory damages must be set

aside because its determination of aggregate Class damages improperly includes Class

members who suffered no damages or less than average damages.  This is a reprise of

arguments previously made by Defendants in support of their long-standing objections to

a class trial of any kind on compensatory damages.  I have considered and rejected these

arguments on numerous occasions before, during and after trial, *see, e.g.*, May 2005

Order at 19-20; Mem. Op. re: Jury Instructions (Doc. 2205) at 62-65, and Defendants

provide no grounds for me to reconsider these decisions.

Finally, Defendants assert the jury's compensatory damages verdict must be set

aside or reduced, because the jury improperly included damages incurred by Class

members who previously released their claims against Defendants.  The only Class

members cited by Defendants in this regard are Charles and Perry McKay, who in the

mid-1980's executed a release of certain claims against Defendants in settlement of

*McKay v. United States* and related litigation, Civ. Action Nos. 75-M-1111, 75-M-1162, 75-M-1296 (D. Colo.) (collectively "the *Church* litigation").

Although Defendants have been aware for many years that the McKays were members of the Class in this action, they do not point to any instance in the pretrial planning process or during trial in which they asserted a defense based on the release of claims by the McKays or any other Class member or otherwise raised the issue of such releases in connection with the damages sought by Plaintiffs.  Nor do Defendants identify any instance in which they requested a jury instruction or verdict form question on this subject or objected to the Court's jury instructions or verdict form on this basis.  In fact, this contention should have been raised before trial, *see, e.g.*, Mem. and Order of Feb. 12, 2001 (Doc. 1176) at 10 (requiring Defendants to state each defense to Plaintiffs' claims they intended to try); Order of Sept. 11, 2003 (Doc. 1212) at 2 (requiring parties to specify all claims and defenses to be tried); or (assuming the issue was preserved for trial) through the presentation of evidence regarding the McKays' release and property holdings in the Class Area and argument that compensatory damages should be reduced as a result.[14]  Defendants did none of these things and may not now assert that their failure to present this issue requires a new trial or a reduction in the jury's compensatory damages verdicts.

---

[14]     Defendants included Charles McKay in their witness lists during trial, but did not call him.  Defendants do not deny that he was available, and within the range of a subpoena, to testify.

27

2.      *Exemplary damages awards*

Defendants argue that the jury's determination of exemplary damages is excessive

and must be set aside because it is not supported by the evidence, is unconstitutional, is

not permitted by the Price-Anderson Act and/or is improper as a result of Defendants'

alleged compliance with standards.  If these arguments are not successful, Defendants

request that I exercise my discretion under Colorado law to disallow or reduce the jury's

exemplary damages verdict because the exemplary damages will not have a deterrent

effect on Defendants or others.  After careful consideration of these arguments, I find they

present no basis for vacating or reducing the jury's verdict.

<u>Sufficiency of the evidence</u>

Defendants' challenge in this motion to the sufficiency of the evidence to support

the jury's exemplary damages award constitutes another after-the-fact challenge to the

court's instructions to the jury on this subject.  In connection with Plaintiffs' claim for

exemplary damages, I instructed the jury, as pertinent here, that it could only award

exemplary damages against Dow or Rockwell if it found beyond a reasonable doubt that

the company's conduct in committing the trespass and/or nuisance was "willful and

wanton."  Final Jury Instructions, No. 3.27; Jury Verdict Form at 26-27.  "Willful and

wanton" conduct was defined as "an act or omission purposefully committed by the

Defendant in question, who must have realized that the conduct was dangerous, and

which conduct was done heedlessly and recklessly, either without regard to the

consequences, or without regard to the rights and safety of others, particularly the

28

Plaintiff Class."  This language is drawn almost verbatim from the standard Colorado

Jury Instruction on this subject, *see* Colo. Jury Instructions (Fourth) Civ. § 9:30; *see also*

*id.*, § 5:3, Notes on Use (directing that Instruction 9:30 be used to define "willful and

wanton" in instruction on exemplary damages), which itself closely tracks the definition

for this term provided in Colorado's exemplary damages statute.  *See* Colo. Rev. Stat.

§ 13-21-102(1)(b) (defining "willful and wanton conduct").  There was ample evidence

supporting the jury's award of exemplary damages against both Dow and Rockwell under

this standard.

Defendants now contend, however, that Colorado law required Plaintiffs to prove

something more before exemplary damages could be awarded against them:  that each

Defendant had an "evil intent" or "wrongful motive" or acted with the purpose of injuring

the Plaintiffs.  Because Plaintiffs failed to prove this element beyond a reasonable doubt,

Defendants assert, the jury's award of exemplary damages is contrary to law and must be

set aside.

Defendants cite to no instance in which they proposed that the jury be instructed

that "evil intent," "wrongful motive" or their equivalent was part of Plaintiffs' burden of

proof, or objected that the Court's instructions to the jury did not include this

requirement.  In fact, Defendants' own proposed instruction defining "willful and wanton

conduct" is functionally the same as the instruction ultimately given.  *Compare* Defs.'

Submission of Phase III Jury Instructions (Doc. 1271) at 66 (Proposed Damages

Instruction No. 3.15) *with* Final Jury Instructions, No. 3.27.  Defendants' challenge to the

29

instruction on Plaintiffs' burden of proof is, therefore, untimely at minimum.  *See* Fed. R.

Civ. P. 51(c), (d).

If Defendants had made a timely objection on this basis, it would have been

overruled.  In Colorado, exemplary damages are only available pursuant to Colo. Rev.

Stat. § 13-21-102.  *See Tri-Aspen Constr. Co. v. Johnson*, 714 P.2d 484, 485 (Colo.

1986).  The primary authority Defendants cite in support of this statute requiring proof of

"evil intent" or "wrongful motive," the just referenced *Tri-Aspen* decision, considered an

earlier version of this statute, one that did not include the term "willful and wanton

conduct" or the statutory definition of this term employed in the jury instructions in this

case.  Instead, Colorado's exemplary damages statute at the time of the *Tri-Aspen*

decision authorized an award of exemplary damages when the injury complained of was

attended by "circumstances of fraud, malice or insult, or a wanton and reckless disregard

of the injured party's rights and feelings."  *See id.* at 486 (quoting applicable statute).

The Colorado Legislature amended Colo. Rev. Stat. § 13-21-102 shortly after this

decision to delete "or insult, or a wanton and reckless disregard of the injured party's

rights and feelings" from the statute and replace it with the current "or willful and wanton

conduct."  1986 Colo. Sess. Laws 675 (H.B. 1197), § 1.  It also added a new provision

defining "willful and wanton conduct" at this time.  *Id.*  It is this statutory provision, and

not the *Tri-Aspen* court's discussion of the prior statute and case law interpreting it, that

governed the jury's determination of exemplary damages in this action.

Even if this were not the case, the *Tri-Aspen* decision still fails to support

Defendants' argument.  The Colorado Supreme Court declared in *Tri-Aspen* that an award

of exemplary damages under the prior statute was justified if the plaintiff proved beyond

a reasonable doubt that the defendant acted with evil intent and with the purpose of

injuring the plaintiff *or* with a wanton and reckless disregard of the plaintiff's rights.  *See*

714 P.2d at 486; *see also id.* at 488 (claim for exemplary damages requires proof that the

defendant "acted with an evil intent or wrongful motive *or* created and then purposefully

disregarded a substantial risk of harm") (emphasis added, internal citation omitted).  The

court also specifically disapproved language from a prior Colorado decision, relied upon

by Defendants, that incorporated the concept of "wrongful motive" into the definition of

"wanton and reckless disregard."  *Id.* at 486 n.3 (rejecting this "more demanding

requirement").[15]  As a result, even if *Tri-Aspen* and related authority regarding the

meaning of "wanton and reckless disregard" is relevant to the current Colorado

exemplary damages statute and its definition of "willful and wanton conduct," it does not

support Defendants' contention that "evil motive" or "wrongful purpose" must be proved

to establish this conduct and to recover exemplary damages.

---

[15]    Instead, the Colorado court declared that the most accurate definition of
"wanton and reckless disregard" for purposes of the exemplary damages statute then in
effect was "conduct that creates a substantial risk of harm to another and is purposefully
performed with an awareness of the risk in disregard of the consequences."  *Id.* at 486
(quoting *Palmer v. A.H. Robins Co.*, 684 P.2d 187, 215 (Colo. 1984)).

31

_Constitutionality_

Defendants' assertion that the jury's exemplary damages verdicts are unconstitutional fares no better.  A punitive damages award is unconstitutional if it is "grossly excessive" in relation to a State's legitimate interests in punishing unlawful conduct and deterring its repetition.  *BMW of N. Am. v. Gore*, 517 U.S. 559, 568 (1996). To determine whether this is the case, the court must determine if the defendant received "fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose."  *Id.* at 574; *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1232 (10th Cir. 2000).  Three factors guide analysis of whether adequate notice was provided:  (1) the degree of reprehensibility of the defendant's conduct; (2) the ratio of the punitive damages award to the actual or potential harm inflicted on the plaintiff; and (3) a comparison of the punitive damages award with the civil or criminal penalties that could be imposed for comparable misconduct.  *Wharf*, 210 F.3d at 1232; *see BMW*, 517 U.S. at 574-75.  The absence of one of these guideposts, however, is not determinative of whether the defendant received adequate notice of the magnitude of the punitive damages award that could be imposed for its misconduct.  *Wharf*, 210 F.3d at 1233.

As to the first guidepost, the Supreme Court has noted a number of factors that bear on the reprehensibility of the defendant's conduct and whether the nature of that conduct provided the defendant with adequate notice of the punitive damages that could be awarded against it.  These factors include:  whether any physical harm resulted from

the conduct, *BMW*, 517 U.S. at 576; if the harm was only economic, whether it was done

intentionally through affirmative acts of misconduct or was suffered by a financially

vulnerable target, *id.*; whether the defendant acted intentionally or with reckless disregard

for the health and safety of others, *id*; whether the defendant's misconduct was repeated,

*id.* at 577; whether the harm suffered resulted from some form of malice, trickery or

deceit as opposed to mere accident, *State Farm Mut. Auto. Ins. Co. v. Campbell*,

538 U.S. 408, 419 (2003); and whether the conduct risked harm to many as opposed to a

few, *Philip Morris USA v. Williams*, 127 S. Ct. 1057, 1065 (2007).

Viewed in the light most favorable to Plaintiffs and the jury's verdict, the evidence

in this case shows the presence of a number of the factors the Supreme Court has

identified as indicating reprehensible conduct that would provide a defendant with notice

of the magnitude of punitive damages that could be awarded against it.  The harm

involved was not purely economic, but rather physical contamination of Class members'

properties and substantial interference with Class members' right to use and enjoy their

properties.  There was ample evidence that the conduct by each Defendant that caused

this harm was intentional and/or undertaken with conscious disregard of the Class

members' health and safety.  Defendants' misconduct affected approximately 15,000

individual properties and hence thousands of landowners, who suffered a decrease in the

value of properties that oftentimes represented their single largest economic asset.

Defendants' misconduct was not the result of a single incident, but rather a series of

incidents and also routine practices over decades of operating Rocky Flats, some of which

were attended by circumstances of dishonesty, subterfuge and deceit.  All of these factors

indicate Defendants' conduct was reprehensible to a degree that should have put

Defendants on notice of the magnitude of punitive damages that could be awarded against

them.

As for the ratio of punitive damages to the actual or potential harm, that ratio is

capped by statute at one-to-one for each defendant, far below the ratios that have raised

constitutional concerns.  *See, e.g., BMW*, 517 U.S. at 582 (500 to 1 ratio); *State Farm*,

538 U.S. at 424-25 (finding 145 to 1 ratio of constitutional concern and stating "single-

digit multipliers are more likely to comport with due process").

As for the final guidepost noted by the Supreme Court, it is difficult to predict

what amount of civil and criminal penalties could be assessed against each Defendant for

comparable misconduct.  While the federal environmental laws can impose very

substantial fines against corporations that knowingly or improperly release or dispose of

hazardous substances, *see, e.g.*, 33 U.S.C. § 1319(c), (d) (authorizing criminal fines of up

to $50,000/day for knowing violations and civil penalties of up to $25,000/day for

violations of the Clean Water Act); 42 U.S.C. § 6928(d), (g) (authorizing criminal

penalties of up to $50,000/day for knowing violations and civil penalties of up to

$25,000/day for violations of RCRA's hazardous waste management requirements), the

many instances of misconduct considered by the jury cannot be easily compared to the

various environmental statutes that might apply.  The difficulty in making this

comparison, however, or even the possible existence of a disparity between the

potentially available fines and the amount of exemplary damages awarded here, does not

compel the conclusion that the jury's exemplary damages awards are unconstitutional.  As

the Tenth Circuit has noted, the comparison between available civil and criminal penalties

and an exemplary damages award "is only one of the indicators of whether a defendant is

on notice of the magnitude of the award that may be imposed based on the defendant's

misconduct."  *Wharf*, 210 F.3d at 1233.  The Colorado exemplary damages statute,

Colo. Rev. Stat. § 13-21-102, puts a defendant on notice that exemplary damages may be

imposed in an amount up to the actual harm caused.  *Wharf*, 210 F.3d at 1233 (discussing

§ 13-21-102(1)(a)).  This notice, combined with the magnitude of actual harm caused by

Defendants' misconduct and the reprehensible nature of that conduct, provided the

Defendants with fair notice of the severity of the penalty that might be imposed.  The

jury's exemplary damages awards were not, therefore, unconstitutional under the standard

enunciated in *BMW* and *Wharf*.

In their reply in support of their Rule 59 motion, Defendants raise an additional,

entirely new challenge to the constitutionality of the exemplary damages award in this

action:  that Instruction No. 3.27 is unconstitutional under *Philip Morris USA v. Williams*,

127 S. Ct. 1057 (2007) because it defines "willful and wanton conduct" in part as

"conduct that was done heedlessly and recklessly, either without regard to the

consequences, or without regard to the rights and safety of others, particularly the

Plaintiff Class."  The reference to "the rights and safety of others," Defendants argue,

renders this instruction and the exemplary damages awards based on it unconstitutional

35

because, under *Phillip Morris*, a jury may not consider harm to others in deciding whether to impose punitive damages.  Defs.' Reply (Doc. 2249) at 25-26.

The reference to "the rights and safety of others" in Instruction No. 3.27 is a quotation from the definition of "willful and wanton conduct" provided in Colorado's exemplary damages statute.  Colo. Rev. Stat. § 13-21-102(1)(b).  Defendants are thus inviting me to hold this statute unconstitutional, an invitation that I decline.[16]  I do not read *Phillip Morris* as broadly as Defendants, and do not agree that either Instruction No. 3.27 or the evidence and argument at trial created a significant risk that the jury based its exemplary damages determination on a desire to punish Defendants for causing injury to anyone not before the court.  *Cf. Phillip Morris*, 127 S. Ct. at 1065 (when the evidence or argument presented raises a "significant" risk that the jury will seek to punish the defendant for causing harm to others, the court should, upon request, take action to protect against this risk).  The jury's exemplary damages determination was not unconstitutional on this or any other basis.

<u>*Discretion to disallow or reduce exemplary damages awards*</u>

I also decline Defendants' invitation that I exercise my discretion under Colo. Rev. Stat. § 13-21-102(2) to disallow or reduce the jury's exemplary damages awards.  This

---

[16]    In addition, a party challenging the constitutionality of a state statute in an action to which the state is a nonparty must file written notice with the court identifying the challenged statute and describing the grounds on which unconstitutionality is asserted.  D.C.COLO.LCivR 24.1.B.  It must also serve a copy of this notice on the state attorney general and file proof of this service.  *Id.*  The state is then provided an opportunity to intervene and to present evidence and argument regarding the constitutionality of the challenged statute.  *See* 28 U.S.C. § 2403(b).

provision authorizes the court to reduce an exemplary damages award "to the extent that: (a) The deterrent effect of the damages has been accomplished; or (b) The conduct which resulted in the award has ceased; or (c) The purpose of such damages has otherwise been served." *Id.* While Defendants' operation of the Rocky Flats plant has obviously ceased, the effects of their conduct there, the continuing trespass and nuisance found by the jury, has not. I also cannot agree with Defendants that the deterrent effect of the damages has been accomplished or the purposes of the damages has been served. At minimum, the damages award will deter Defendants and other corporations that presently or may in the future operate hazardous manufacturing facilities from managing their facilities and the risks they pose in the manner that led to the trespass and nuisance the jury found was committed here.

### *Compliance with standards*

Defendants also contend the jury's exemplary damages awards must be set aside as a result of their compliance with "applicable standards" during their operation of Rocky Flats. I disagree. The only legal authority Defendants cite in support of this contention, *Alley v. Gubser Development Co.*, 785 F.2d 849 (10th Cir. 1986), held only that a manufacturer's mere use of wood products containing formaldehyde, in a manner consistent with prevailing industry practice and without evidence that the manufacturer knew or should have known of the potential harm that could result, was not enough to sustain an exemplary damages award in an action arising from exposure to formaldehyde gas released from these products. *Id.* at 856. This holding does not establish a legal rule

37

that exemplary damages are barred whenever a defendant shows it has complied with

industry practice or "applicable standards."

In addition, even if such a rule existed, the jury heard extensive evidence from

which it could have found Defendants' conduct violated any reasonable standard of

industrial care.  Further, Defendants do not specify the "standards" with which they

allegedly complied, and the jury was not asked to and did not make any findings that the

Defendants complied with standards.  In fact, the jury heard evidence from which it could

have concluded Defendants did not comply with some potentially applicable standards

and/or that the environmental monitoring that Defendants conducted was not designed or

implemented in a manner that would allow Defendants' compliance with environmental

standards to be determined.  In short, there is no basis for setting aside the jury's

exemplary damages awards on the basis of Defendants' alleged compliance with

standards.

### *Price-Anderson Act*

Defendants' final challenge to the exemplary damages awards, that they are barred

by the 1988 Amendments to the Price-Anderson Act, has been considered and rejected on

multiple occasions in this action and need not be addressed again.  *See, e.g.*, *Cook v.*

*Rockwell Int'l Corp. ("Cook IX")*, 273 F. Supp. 2d 1175, 1211-12 (D. Colo. 2003); *Cook*

*v. Rockwell Int'l Corp. ("Cook I")*, 755 F. Supp. 1468, 1479-81 (D. Colo. 1991).

C.      *Remittitur of Damages*

As an alternative to their motion for new trial, Defendants request remittitur of the jury's compensatory and exemplary damages awards.  Remittitur is the process by which a court reduces or proposes to reduce the damages awarded in a jury verdict upon finding that the award is grossly and manifestly excessive or inadequate.  *See Garthart ex rel. Tinsman v. Columbia/Healthone, L.L.C.*, 95 P.3d 571, 582 (Colo. 2004) (citing, among other sources, Black's Law Dictionary 1298 (7th ed. 1999)); *Foradori v. Harris*, __ F.3d __, No. 06-60030, 2008 WL 853559, at *21 (5th Cir. Apr. 1, 2008).  It is an alternative to ordering a new trial on these grounds, and the successful claimant may decline the offer of remittitur and receive a new trial instead.  *See, e.g., Foradori,* at *21; *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 914-915 (2[d] Cir. 1997); *O'Gilvie v. Int'l Playtex, Inc.*, 821 F.2d 1438, 1447-48 (10th Cir. 1987).  Thus, a necessary prerequisite to remittitur is a finding that grounds exist to order a new trial if remittitur is not accepted. *Foradori*, at *21.

For the reasons described in the preceding section, I find no grounds that require the jury's damages awards to be set aside and either a new trial or remittitur in lieu of a new trial be ordered.  Accordingly, I deny Defendants' alternative motion for remittitur of damages.

This does not mean, however, that the jury's verdict is not subject to judicial adjustment.  As described earlier, three legal rules or statutes must be applied to the jury's verdict before judgment may be entered.  They are the rule against multiple recovery,

Colorado's pro rata liability statute and Colorado's statutory cap on the amount of

exemplary damages.  Judicial adjustment of the verdict through application of these rules

is a matter of law determined by the court in the course of entering judgment.  *See Lira*,

832 P.2d at 242 (court applies pro rata liability statute before entering judgment); *id.*

at 244 n.4 (describing process as one of "judicial adjustment").  These potential

adjustments are discussed in the following section.

III.    *Post-Trial Motions Regarding Posture for Appeal*

The class trial and jury verdict at its close resolved many but not all of the issues

presented by this action.  For example, the medical monitoring claims of the individual

Plaintiffs were bifurcated from the class trial and remain to be decided.  *See Cook IX*,

273 F. Supp. 2d at 1179.  The allocation and distribution of the jury's property damage

verdicts to the Class as appropriate also must be accomplished.  All parties agree,

nonetheless, that the most efficient manner for this action to proceed, if possible, is to put

the claims decided in the property class trial in a posture for appeal before the parties and

the court invest additional time and resources in this action.  Accordingly, following the

close of trial, I invited the parties to state their views on the best method by which to put

the matters decided in the class trial in a posture for appeal.

Defendants responded by requesting that I certify four orders in this action for

interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  Plaintiffs oppose this approach and

propose instead that I direct entry of judgment on the property class claims pursuant to

Rule 54(b) of the Federal Rules of Civil Procedure.  Plaintiffs also proposed a form of

judgment and plan of allocation in connection with their motion.  For the reasons set forth

below, I deny Defendants' motion for interlocutory appeal and grant in part and deny in

part Plaintiffs' Rule 54(b) motion.

      A.     *Defendants' Motion for Interlocutory Appeal*

      Defendants propose that this matter be presented to the Tenth Circuit through

certification of four orders for interlocutory appeal pursuant to 28 U.S.C. § 1292(b):

(1) the Memorandum Opinion and Order of July 24, 2003 (Doc. 1210) (published as

*Cook IX*); and (2) the Memorandum Opinion and Order of December 17, 2004

(Doc. 1312) (*Cook X*), both of which addressed various long-standing legal disputes

between the parties in order to clarify the scope of trial on the property class claims;

(3) the Order of May 17, 2005 on Scheduling and Jury Instruction Issues (Doc. 1338),

which further addressed the scope of the upcoming property class trial; and (4) the

Memorandum Opinion Regarding Jury Instructions of December 7, 2006 (Doc. 2205),

which reported the basis of jury instruction decisions issued before, during and at the

close of the property class trial.

      Section 1292(b) provides that an order that is otherwise not appealable may be

appealed if the district judge states in writing that: (1) the order "involves a controlling

question of law as to which there is substantial ground for difference of opinion" and

(2) "an immediate appeal from the order may materially advance the ultimate termination

of the litigation."  28 U.S.C. § 1292(b).  If such certification is made, the Tenth Circuit

then has discretion to permit the appeal upon timely application by one of the parties.  *See
id.*

I find interlocutory appeal of the pretrial orders and decisions identified by
Defendants meet neither of the statutory criteria.  A number of the issues addressed in the
orders and cited by Defendants are not, in my view, issues on which there is a substantial
ground for a difference of opinion.  More importantly, interlocutory appeal of any or all
of these orders at this point in the action is highly unlikely to materially advance the
ultimate termination of this litigation.[17]  The class trial on Plaintiffs' property claims has
already occurred.  The four orders address some but by no means all of Defendants' many
complaints about the court's legal, evidentiary and other rulings related to this trial, *see,
e.g.*, Defs.' Renewed Mot. for J. as a Matter of Law (Doc. 2220); Mot. for New Trial or
Remittitur (Doc. 2224), and so it is highly doubtful that affirmation of these orders would
do anything more than set the stage for an additional round of appeals by Defendants.
Nor is it at all clear that success by Defendants on appeal of these orders might materially
advance the termination of this litigation because remand for a new trial, rather than
dismissal of the property class claims, would be the likely result.  In addition, if
Defendants truly believed that interlocutory appeal of these orders might materially
advance the ultimate termination of this litigation, they should have sought interlocutory

---

[17]     For the same reason, the orders do not involve "controlling questions of
law," at this point in the litigation at least.  *See* 16 Charles A. Wright et al., Federal
Practice & Procedure: Jurisdiction § 3930, at 426 (2d ed. 1996) ("a question is controlling
. . . if interlocutory reversal might save time for the district court, and time and expense
for the litigants.").

appeal when the decisions were issued, not years later, after trial defined in part by the

principles set forth in these pretrial decisions has been concluded and a verdict entered

against Defendants.

        B.      *Plaintiffs' Motion for Entry of Judgment*

      Rule 54(b) permits me to direct entry of final judgment as to fewer than all claims

or parties in an action upon an express determination that the judgment on these matters is

final and that there is no just reason to delay entry of judgment. *Stockman's Water Co.,*

*LLC v. Vaca Partners, L.P.*, 425 F.3d 1263, 1265 (10th Cir. 2005); *see* Fed.

R. Civ. P. 54(b). The purpose of this provision is to make an immediate appeal available

when the rule's requirements are met. *See Okla. Tpk. Auth. v. Bruner*, 259 F.3d 1236,

1241 (10th Cir. 2001). In making the required determinations, I must weigh

"Rule 54(b)'s policy of preventing piecemeal appeals against the inequities that could

result from delaying an appeal." *Stockman's*, 425 F.3d at 1265. Factors to consider

include "'whether the claims under review [are] separable from the others remaining to be

adjudicated and whether the nature of the claims already determined [are] such that no

appellate court would have to decide the same issues more than once even if there were

subsequent appeals.'" *Id.* (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8

(1980)).

      A decision is final and subject to appeal if it "'leaves nothing for the court to do

but execute judgment.'" *Copeland v. Toyota Motor Sales U.S.A., Inc.*, 136 F.3d 1249,

1252 (10th Cir. 1998) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)). In

addition, a judgment is final "even if it does not reduce the damages to a sum certain if

[it] sufficiently disposes of the factual and legal issues and any unresolved issues are

sufficiently ministerial that there would be no likelihood of further appeal."  *Id.* at 1252

(internal quotations and citations omitted).  In the class action context, a judgment that

awards damages in favor of the plaintiff class is final when it "establishes both the

formula that will determine the division of damages among class members and the

principles that will guide the disposition of any unclaimed funds."  *Strey v. Hunt Int'l Res.

Corp.*, 696 F.2d 87, 88 (10th Cir. 1982).

### 1.     *Plaintiffs' proposed form of judgment*

Plaintiffs contend a judgment meeting these finality requirements can be entered in

this action and have proposed a form of judgment to this end.  *See* [Pls.' Corrected

Proposed] Final Judgment, Ex. A to Pls.' Statement re: Corrected Proposed Form of J.

(Doc. 2243).  Defendants oppose Plaintiffs' proposed form of judgment, and dispute that

any judgment can be entered at this time because a "host of complicated issues" must be

decided before judgment can be entered on the jury's verdict.  These issues, however,

relate to matters such as a plan for allocating the class damages award to class members,

the disposition of  unclaimed funds and the availability and amount of pre- and post-

judgment interest, all of which have now been extensively argued by the parties in the

context of this and the parties' other post-trial motions.  Accordingly, these matters are

now ripe for decision so that final judgment on the claims tried and decided at the

property class trial can be entered.  My decision on these matters and Defendants' other objections to Plaintiffs' proposed form of judgment is as follows:

### *Amount of damages awarded against each Defendant*

As described earlier in this decision, the jury's compensatory and exemplary damages awards are subject to judicial adjustment before entry of judgment in accordance with the rule against multiple recovery, Colorado's pro rata liability statute and Colorado's statutory cap on the amount of exemplary damages.  I have previously stated, and Plaintiffs do not dispute, that application of the rule against multiple recovery reduces the total compensatory damages owed by Dow and Rockwell to $176.8 million, the aggregate damages to the Class found by the jury on both the trespass and nuisance claims.  Application of the two statutory limits on damages is disputed, however.

As required by Colorado's pro rata liability statute, the jury determined each Defendant's fault for the trespass and nuisance it found the Defendants had committed. The jury found Dow 90% at fault for the trespass on Class Properties and 30% at fault for the nuisance Defendants committed, and Rockwell 10% at fault for the trespass and 70% at fault for the nuisance.

Based on these findings, Plaintiffs propose that the judgment award compensatory damages of $176,850,340 plus prejudgment interest.  The proposed judgment states that Dow is responsible for $159,165,306 (90% of the $176.8 million in trespass damages found by the jury) plus prejudgment interest, and Rockwell for $123,795,238 (70% of the $176.8 million in nuisance damages found by the jury) plus prejudgment interest, while

45

also providing, as just stated, that the total amount recovered from the two Defendants is

limited to the $176.8 million found by the jury, plus prejudgment interest.  The exact

amount of compensatory damages to be recovered from each Defendant within these

parameters would not be set forth in the judgment, allowing Plaintiffs to decide whether

to collect the maximum amount due from one Defendant and the remainder of the

$176.8 million total judgment (plus prejudgment interest) from the other, or to collect the

total amount owed by Dow and Rockwell on some other basis consistent with the

judgment's requirements.

        Plaintiffs' proposal complies with the rule against multiple recovery and also

Colorado's pro rata liability statute.  Defendants dispute the latter conclusion, arguing that

no judgment can be entered consistent with the statute because the jury assigned different

percentages of fault to the Defendants on the trespass and nuisance claims.  As discussed

earlier in this opinion, however, the jury's allocation of fault on the two claims is not

inconsistent and is supported by the evidence.  In addition, Colorado's pro rata liability

statute requires only that the jury return a special verdict "determining the percentage of

. . . fault attributable to each of the parties . . . and the total amount of damages sustained

by each claimant," and then directs the court to enter judgment "based on the jury's

special findings."  Colo. Rev. Stat. § 13-21-111.5(2).  The statute further directs that "no

defendant shall be liable for an amount greater than that represented by the degree or

percentage of the . . . fault attributable to such defendant that produced the claimed . . .

damage."  *Id.* § 13-21-111.5(1).  The judgment to be entered under Plaintiffs' proposal

meets all of these requirements, as it is based on the jury's special findings allocating fault between Dow and Rockwell on each claim, and ensures that neither Defendant is liable for an amount greater than that represented by the degree of fault found by the jury on one of the two claims decided.

Defendants also protest that the proposed judgment fails to state with specificity a sum certain that each Defendant must pay, and that such specificity is required in order for final judgment to enter.  The authority Defendants cite in support of this proposition, however, states only that a final judgment sets out a sum certain to be recovered by the prevailing party, *see Albright v. UNUM Life Ins. Co.*, 59 F.3d 1089, 1092 (10th Cir. 1995), a condition that is met here by reference to the $176.8 million in actual damages found by the jury that is to be recovered by Plaintiffs.  Judgments in cases involving joint and several liability similarly state the amount to be recovered by the plaintiff without specifying a sum certain to be paid by each liable party and yet are routinely entered and approved.  I see no reason why the flexibility allowed in these forms of judgment is not also available here to enter final judgment based on the jury's special findings.  In addition, Defendants' concern on this point appears more technical than real, given the practical consideration that DOE, as indemnitor for both Defendants, presumably will pay the entire $176.8 million in compensatory damages found by the jury regardless of how

this amount is allocated between the Defendants.  For all of these reasons, I will adopt

Plaintiffs' proposed form of judgment as to compensatory damages.[18]

As for exemplary damages, Colo. Rev. Stat. § 13-21-102, as interpreted by the

Colorado Supreme Court in *Lira v. Davis*, 832 P.2d 240 (Colo. 1992), limits liability for

exemplary damages to the amount of actual or compensatory damages owed by the

defendant after application of the pro rata liability statute.[19]  *See id.* at 245-46.  Thus,

where application of the pro rata liability statute results in a reduction of the

compensatory damages owed by a defendant, it is this reduced compensatory amount that

is considered in setting the limit on the exemplary damages that can be recovered from

that defendant.  *Id.* at 246.

---

[18]     If it were necessary to declare in the judgment a sum certain owed by each
Defendant, this sum could be calculated based on the jury's allocation of fault on both the
trespass and nuisance claims and the determination that the trespass and nuisance caused
$176.8 million in damages (after application of the rule against multiple recovery) .
Under this approach, the 90% fault the jury found for Dow's contribution to the trespass
and the 30% fault the jury attributed to Dow for the nuisance would yield an overall fault
allocation of 60% (90 % + 30% divided by 2) for the wrongdoing by Dow that caused the
$176.8 million in total damages found by the jury.  The same calculation yields an
allocation of 40% (10% trespass fault + 70% nuisance fault divided by 2) for Rockwell's
wrongdoing.  Under this approach, therefore, the sum certain owed by Dow for the harm
the jury found it caused would be $106,110,204 (60% of the total compensatory damages
of $176,850,340) and Rockwell's share would be $70,740,136 (40% of the total
compensatory damages of $176,850,340).  This approach takes full account of the jury's
findings and requires no speculation as to them.

[19]     The Colorado Supreme Court uses the terms "actual damages" and
"compensatory damages" interchangeably in discussing the statutory cap on exemplary
damages set by Colo. Rev. Stat. § 13-21-102.  *See Lira*, 832 P.2d at 241 n.1.

Plaintiffs contend that, under this authority, the cap on exemplary damages recoverable from Dow is $159.1 million, representing Dow's 90% fault for the trespass, and $123.8 million for Rockwell, representing its 70% fault for the nuisance.  If this position is correct, Plaintiffs are entitled to recover the full amount of exemplary damages assessed by the jury against each Defendant, $110.8 million against Dow and $89.4 million against Rockwell, because both amounts are less than the individual caps posited by Plaintiffs.  Defendants object, arguing that this outcome would violate § 13-21-102 because the total amount of exemplary damages awarded under this approach ($110.8 million + $89.4 million = $200.2 million) would exceed the $176.8 million in total compensatory damages to be recovered from Dow and Rockwell after application of the rule against multiple recovery.

As relevant here, § 13-21-102 provides:

> In all civil actions in which damages are assessed by a jury for a wrong done to the person or to personal or real property, and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct, the jury, in addition to the actual damages sustained by such party, may award him reasonable exemplary damages.  The amount of such reasonable exemplary damages shall not exceed an amount which is equal to the amount of the actual damages awarded to the injured party.

Colo. Rev. Stat. § 13-21-102(1)(a).

On its face, the statute does not address the question presented, which is whether the amount of exemplary damages awarded against an individual defendant must be reduced on the ground that the total exemplary damages awarded against all defendants exceeds the total compensatory damages awarded against these defendants.

49

The Colorado Supreme Court's decision in *Lira* provides guidance on this issue. In *Lira*, the court considered whether exemplary damages awards are subject to reduction under Colorado's comparative negligence statute, Colo. Rev. Stat. § 13-21-111, and the state's pro rata liability statute, Colo. Rev. Stat. § 13-21-111.5. The court first determined that exemplary damages are not subject to reduction by application of the comparative negligence statute. *Lira*, 832 P.2d at 243. Its rationale was that reducing an exemplary damages award by the plaintiff's percentage of comparative negligence would be inconsistent with the focus of exemplary damages, which is the defendant's misconduct, and with the purpose of exemplary damages, which is to punish the defendant and deter the misconduct. *Id.* at 242-43. It also emphasized that the amount of an exemplary damages award "should be based on a consideration of the 'severity of the injury perpetrated on the injured party by the wrongdoer.'" *Id.* at 243 (quoting *Kirk v. Denver Pub. Co.*, 818 P.2d 262, 266 (Colo. 1991)).

The court continued its focus on the wrongdoer's conduct in determining that the pro rata liability statute limits exemplary damages to the compensatory damages awarded against an individual defendant after application of the jury's fault determinations for that defendant. The court concluded this result effectuated the legislature's intent to "effectively double[] the potential liability of a wrongdoing party." *Id.* at 245-46 (quoting remarks by Representative Grant, one of the bill's sponsors). It stated further that "[The legislation sponsor's] statements focused on the liability of the tortfeasor. Since under the comparative negligence and pro rata liability statutes, one of several negligent persons is

50

only responsible for damages in accordance with his determined percentage of fault, that
party's liability for punitive damages should be no greater than the amount of actual
damages he owes." *Id.* at 246.

In this case, the jury found Dow 90% at fault for the trespass and Rockwell 70% at
fault for the nuisance.  As stated above, Colorado's pro rata liability statute limits actual
damages owed by each of these defendant to these percentages of the actual damages
found by the jury.  Setting the statutory cap established in § 13-21-102(1)(a) at the
amounts calculated based on the jury's allocation of fault to each Defendant on each
claim is consistent with *Lira*'s emphasis on the wrongdoing committed by the individual
tortfeasor and its concern that the purpose of exemplary damages - to punish and deter a
defendant's wrongdoing - be served.[20]  Providing an individual defendant with some
additional reduction in the exemplary damages awarded, as Defendants propose, based on
the total compensatory damages awarded against all defendants, would shift the focus of
the exemplary damages cap away from the individual defendant's wrongdoing and
weaken the punitive and deterrent purposes of exemplary damages awards.

My conclusion that the jury's exemplary damages awards are within the statutory
cap on exemplary damages is bolstered by considering another component of
compensatory damages that is included in determining the amount of the cap:

---

[20]     This result is also consistent with Colorado case law finding that the
Colorado legislature's intent in § 13-21-102(1)(a) was "to limit the punitive damages
awarded on a particular tort claim to the amount of actual damages awarded on that same
claim."  *Hensley v. Tri-QSI Denver Corp.*, 98 P.3d 965, 968 (Colo. Ct. App. 2004).

prejudgment interest.[21]   Colorado courts have repeatedly held that prejudgment interest is

an element of compensatory damages.  *See, e.g.*, *Seaward Const. Co. v. Bradley*,

817 P.2d 971, 976 (Colo. 1991); *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 19 (Colo. 1990);

*Witt v. State Farm Mut. Auto. Ins. Co.*, 942 P.2d 1326, 1327 (Colo. Ct. App. 1997).  The

Tenth Circuit and other courts are in accord with this view.  *Webco Indus., Inc. v.*

*Thermatool Corp.*, 278 F.3d 1120, 1134 (10th Cir. 2002); *Johnson v. Cont'l Airlines Corp.*

964 F.2d 1059, 1062 (10th Cir. 1992) (collecting cases).

   In *James v. Coors Brewing Co.*, 73 F. Supp. 2d 1250 (D. Colo. 1999),

Judge Babcock considered this case law and Colo. Rev. Stat. § 13-21-102 and concluded

that prejudgment interest on damages is part of "actual damages" to be considered in

determining the one-to-one actual damages to exemplary damages cap set by the

Colorado statute.  *Id.* at 1255.  This analysis is sound and has been followed by this and

other courts.  *Mower v. Centry I Chevrolet, Inc.*, No. 02-cv-01632-MSK-MEH,

2006 WL 2729265, *23 (D. Colo. June 16, 2006); *see also Tait v. Hartford Underwriters*

*Ins. Co.*, 49 P.3d 337, 340 (Colo. Ct. App. 2001) (noting without comment that the

district court calculated the statutory cap on exemplary damages as the amount of

compensatory damages awarded plus prejudgment interest).  Accordingly, I find that the

---

[21]   Defendants cite Instruction No. 3.27 and statements regarding this
instruction in the Memorandum Opinion Regarding Jury Instructions as amounting to a
legal ruling that prejudgment interest cannot be considered in determining the statutory
cap on exemplary damages.  Not so.  This issue was not raised in connection with
Instruction No. 3.27 and hence is addressed here for the first time.

statutory cap on each Defendant's liability for exemplary damages in this case includes

the prejudgment interest each Defendant is required to pay on the compensatory damages

recovered from it.  Given the substantial prejudgment interest award to be included in the

judgment, as discussed below, the sum of prejudgment interest and the amount due and

ultimately recovered from each Defendant will exceed the amount of exemplary damages

awarded by the jury against Dow and Rockwell under any reasonably conceivable

scenario.  Accordingly, no reduction of these damages awards is required, and judgment

will be entered on the jury's exemplary damages verdicts.

### *Allocation of damages*

Plaintiffs propose a Plan of Allocation that provides for the appointment of a

Claims Administrator, defines the duties and authorities of the Claims Administrator and

sets forth the procedures and principles for determining the disposition of the

compensatory and exemplary damages, attorney fees, expenses, costs and pre- and post-

judgment interest awarded in the final judgment ("Judgment Fund"), including the

substantive principles and procedures that will govern distribution of the "Net Class

Award" (the Judgment Fund less certain fees, expenses, costs and awards).

In summary, Plaintiffs propose that the Claims Administrator begin the allocation

process by consulting appropriate records and data from Jefferson County and other

suitable and reliable sources to identify the properties and property owners satisfying the

Class definition and to sort them into the three property categories set forth in the jury's

verdict: commercial, residential and vacant.[22] Pls.' Reply in Supp. of Mot. for Entry of J. (Doc. 2240), Ex. B (Pls.' Rev. Proposed Plan of Allocation), ¶ 8. For each of these three property categories, the Claims Administrator would then compute the category's share of the Net Class Award, with the total sum allocable to each category bearing the same ratio to the Net Class Award as the jury's determination of compensatory damages for that category bears to the total of all compensatory damages found by the jury for the three combined categories. *Id.*, ¶ 9. Based on Jefferson County tax assessment records, the Claims Administrator would then determine, for each property in the Prospective Damages Subclass, the property's assessed value and from it calculate the fraction of this value relative to the total assessed value of all properties in the Damages Subclass within the same category (the property's "Fractional Allocable Share"). *Id.*, ¶ 10. Subject to such equitable adjustments as the Claims Administrator might recommend and I might adopt, the Claims Administrator would then compute an award for each property in the Damages Subclass, based on the property's Fractional Allocable Share of the Net Class Award for the relevant property category. *Id.*, ¶ 11. The Proposed Allocation based on these principles and procedures would then be submitted to the Court for approval, along with a proposed process for notifying members of the Class of their awards (if any) under the Proposed Allocation, granting them an opportunity to seek adjustment of these awards, and making payment. *Id.*, ¶ 12. Plaintiffs' proposed Plan of Allocation further

---

[22] Both parties have relied on records such as these for this purpose in the course of this litigation.

provides that any funds that remain unclaimed, after a due allowance period for late claims, would be distributed to members of the Damages Subclass on a pro rata basis to assist in making them whole notwithstanding payment of attorney fees, expenses and administrative costs from the Judgment Fund. *Id.*, ¶ 13. Plaintiffs do not expect the amount of these unclaimed funds to be substantial.[23] Plaintiffs submit the Declaration of Wayne L. Hunsperger, one of their real estate experts from the property class trial, to attest that this process is feasible and reasonable.

Having reviewed Plaintiffs' proposed plan and Defendants' objections to it, I adopt the plan with the following adjustment. As described earlier in this opinion, only Class members who owned property within the Class Area on January 30, 1990, when this action was filed and the date on which the jury found it appeared the tortious invasions would continue indefinitely, are entitled to recover damages for prospective invasions to Class Properties. *See supra* Section II.B.1. In identifying the members of the Class and their corresponding properties, as described above, the Claims Administrator shall identify and categorize members of this subclass, the "Prospective Damages Subclass," and the other subclass ("Non-Prospective Damages Subclass"), which consists of Class members who sold their Class Properties before January 30, 1990. This identification shall be based on Jefferson County records or other appropriate, reliable records that are

---

[23] Given the long and litigious history of this case, the charge against the Judgment Fund for attorney fees and expenses alone is likely to exceed the amount of unclaimed funds to be distributed to the Prospective Damages Subclass in this manner.

used to identify the members of the Class as a whole.  The distinction between these two subclasses and the prospective damages allocable to the Class Properties corresponding to members of each subclass shall be maintained throughout development of the allocation plan described above.

This process will result in some portion of the Net Class Award being allocated to properties once owned by members of the Non-Prospective Damages Subclass, who cannot claim these prospective damages under the Court's prior rulings.  *See supra* Section II.B.1.  Nonetheless, there is no question under the jury's verdicts that these damages exist and were caused by the Defendants' continuing trespass and nuisance.

Courts and commentators have recognized a variety of methods for disposing of unclaimed portions of class damage awards.  *See Brewer v. S. Union Co.*, No. 83-F-1174, 1987 U.S. Dist. LEXIS 15940, *7-18 (D. Colo. Aug. 13, 1987); *see generally* 3 Alba Conte & Herbert B. Newberg, Newberg on Class Actions §§ 10:13-25 (4th ed. 2002). After considering these options, the substantive purposes of the claims of this action and the equities involved, I have determined that the portion of the Net Class Award allocable to the Non-Prospective Damages Class will be distributed to the indirect benefit of the Class in accordance with *cy pres* principles.  Although the Tenth Circuit has not spoken on *cy pres* distributions of class damages, there is precedent for this approach in this court.  *See Brewer*, at *17-19.  Once the amount of monies subject to this distribution has been determined under the approved allocation plan, I shall direct the Plaintiffs to identify options for the distribution of these monies in accordance with *cy pres* principles.  These

principles envision that the monies will be put to their "next best use" in keeping with the intent of the statutes and other law upon which the Plaintiffs' property class claims are based. *See id* at *13-16.

The Plan of Allocation described herein will be entered by separate order. Execution of this Plan, and of the judgment as a whole, will be stayed until such time as either Defendant files a timely notice of appeal from the judgment or the time allowed for filing any such appeal has expired.

### *Prejudgment interest*

Plaintiffs request that the judgment on the jury's verdicts include prejudgment interest. Whether prejudgment interest may be recovered is a matter of Colorado law.[24] In Colorado, the right to prejudgment interest is governed by statute, and it must be awarded in cases to which the statute applies. *See* Colo. Rev. Stat. § 5-12-102(1) (covered parties "shall receive" prejudgment interest); *id.* § 13-21-101(1) ("it is the duty of the court" to award prejudgment interest in cases falling within the statute); *see also Todd v. Bear Valley Village Apts.*, 980 P.2d 973, 981 (Colo. 1999) (trial court's award of prejudgment interest under Colorado statute is "a ministerial act that is mandatory and does not require the exercise of judgment or discretion;" internal quotation omitted). The

---

[24]   This is so because the trespass and nuisance claims decided by the jury were brought pursuant to the Price-Anderson Act ("Act"), which directs that state law provide the substantive rules of decision in the action. 42 U.S.C. § 2014(hh). The entitlement to prejudgment interest is a substantive matter, *see Webco Indus.*, 278 F.3d at 1134, and is therefore governed by Colorado law under the Act.

purpose of this mandatory award, under Colorado law, is to compensate the plaintiff for the loss of earnings on the actual damages due to their delayed payment and also to encourage the settlement of cases both before and after trial. *See Allstate Ins. Co.*, 797 P.2d at 19 ("prejudgment interest is an element of compensatory damages in actions for personal injuries, awarded to compensate the plaintiff for the time value of the award eventually obtained against the tortfeasor."); *Mesa Sand & Gravel Co. v. Landfill, Inc.*, 776 P.2d 362, 364 (Colo. 1989) (purpose of prejudgment interest "is to discourage a person responsible for payment of a claim to stall and delay payments until judgment or settlement"); *Stevens v. Humana of Delaware, Inc.*, 832 P.2d 1076, 1081 (Colo. Ct. App. 1992) ("prejudgment interest serves not only the purpose of compensating a party for the loss of use of money but is also used to encourage the settlement of cases both pre- and post-trial"); *Voight v. Colo. Mountain Club*, 819 P.2d 1088, 1092-93 (Colo. Ct. App. 1991) (same).

Defendants argue Plaintiffs are not entitled to recover prejudgment interest on the jury's verdict on three grounds. First, they contend that prejudgment interest is precluded because the jury, at Plaintiffs' request, awarded damages that included an inflation adjustment, based on the Consumer Price Index ("CPI"), through 2005. This inflation adjustment, Defendants contend, is the equivalent of prejudgment interest prescribed by Colorado statute, with the result that an award of prejudgment interest would amount to a duplicate, and improper, payment to Plaintiffs.

Defendants cite no Colorado authority, or authority from other jurisdictions for that matter, holding that prejudgment interest is not available when the damages awarded by a jury include an adjustment for inflation.[25]  The premise underlying Defendants' argument, that a CPI-adjustment is equivalent to the statutorily-directed award of prejudgment interest, is also incorrect.  Colorado courts have repeatedly held that prejudgment interest is intended to compensate the plaintiff for the "loss of earnings," "loss of use," and "time value" of the money due from the defendant.  *See, e.g.*, *Coale v. Dow Chem. Co.*, 701 P.2d 885, 890 (Colo. Ct. App. 1985); *Stevens*, 832 P.2d at 1081; *Allstate Ins. Co.*, 797 P.2d at 19.  That this concept is more than mere inflation is obvious on its face, as has been recognized by other courts.  *See United States v. City of Warren*, 138 F.3d 1083, 1096 (6th Cir. 1998) (district court abused its discretion in utilizing CPI to assess prejudgment interest because "merely adjusting the dollars the plaintiff would have earned to compensate for diminished purchasing power because of inflation does not

---

[25]     The case law Defendants cite for this proposition does not address this question and often is, at best, tangentially related to it.  Defendants' attempt to portray the Tenth Circuit's decision in *Lowell Staats Mining Co. v. Pioneer Uravan, Inc.*, 878 P.2d 1259 (10th Cir. 1989), as supporting their position is particularly strained.  In the passage relied upon by Defendants, the court merely held that the district court did not err in reserving the issue of interest computation to itself.  *Id.* at 1268-69.  Nor does the quotation from the 1925 Colorado Supreme Court case the Tenth Circuit cited in support of this holding establish or support the proposition that a plaintiff cannot recover prejudgment interest under Colorado law if the damages awarded include an inflation adjustment.  *See id.* (quoting *Wood v. Hazelet*, 237 P. 151, 152 (Colo. 1925)).  In fact, the *Lowell* decision, which reversed the district court's decision not to award prejudgment interest, actually supports the proposition that a district court must award prejudgment interest where required by Colorado statute.  *See id.* at 1270.

compensate for the lost use of the money"); *Chandler v. Bombardier Capital, Inc.*,

44 F.3d 80, 84 (2nd Cir. 1994) (award of prejudgment interest for loss of use of inflation-

adjusted damages did not constitute double recovery because the inflation adjustment did

not compensate for the lost use of the money); *Clinchfield Coal Co. v. Fed. Mine Safey &*

*Health Review Comm'n*, 895 F.2d 773, 780 (D.C. Cir. 1990) (rejecting award of

prejudgment interest that provided "compensation for losses through inflation but none

for the capacity of wealth to generate more wealth"); *Evans v. Connecticut*,

967 F. Supp. 673, 684 n.15 (D. Conn. 1997) (awarding prejudgment interest on damages

award that had been adjusted to compensate for inflation because inflation adjustment did

"not calculat[e] the value of the money as if it had been given to [plaintiff] for his use or

for investment"), *aff'd*, 24 Fed. Appx. 35 (2nd Cir. 2001).[26]  It is also undisputed that the

CPI inflation rate for the period in question was generally far below the 8% and 9%

prejudgment interest rates set by statute, which further indicates the Colorado legislature

did not intend for prejudgment interest to compensate only for inflation.  Defendants'

contention also gives no weight to the second purpose served by an award of prejudgment

interest, which is to encourage settlement.  Finally, Defendants cite no case law indicating

---

[26]     Defendants' attempt to discredit this authority based on the Supreme
Court's earlier decision in *Library of Congress v. Shaw*, 478 U.S. 310 (1986), is not
persuasive.  The Court in *Shaw* did not address the question presented here, and its
statements regarding the bar sovereign immunity imposes on recovery of prejudgment
interest on Title VII attorney fee awards against the federal government is not
inconsistent with the authority cited above.

that I have authority under Colorado law *not* to award prejudgment interest if it is required by statute.

Defendants next contend that Plaintiffs are not entitled to recover prejudgment interest because neither of the Colorado statutes providing for an award of prejudgment interest applies here. While I agree that the Colorado statute governing prejudgment interest in personal injury actions does not apply,[27] I find the second potentially applicable statute, Colo. Rev. Stat. § 5-12-102, applies here and mandates that the judgment include prejudgment interest at the statutory rate of 8% per annum, compounded annually. *See id.* § 5-12-102(1)(b).

Section 5-12-102(1), titled "Statutory Interest," provides as relevant here:

> Except as provided in section 13-21-101, C.R.S., when there is no agreement as to the rate thereof, creditors shall receive interest as follows:
>
> (a)     When money or property has been wrongfully withheld, interest shall be an amount which fully recognizes the gain or benefit realized by the person withholding such money or property from the date of

---

[27]     Plaintiffs argue this statute, Colo. Rev. Stat. § 13-21-101, and its provision for prejudgment interest at a rate of 9% per annum, applies here because the Colorado Court of Appeals has determined that nuisance awards affording compensation for annoyance and discomfort are governed by this statute. *See Miller v. Carnation Co.*, 564 P.2d 127, 132 (Colo. Ct. App. 1977). The *Miller* case and other Colorado authority, however, also establish that a nuisance award for annoyance and discomfort is distinct from an award for diminution in a property's value as a result of the nuisance. *See id.* at 130; *Bd. of County Comm'rs v. Slovek*, 723 P.2d 1309, 1318 (Colo. 1986); *Webster v. Boone*, 992 P.2d 1183, 1185 (Colo. Ct. App. 1999); *see also Cook IX*, 273 F. Supp. 2d at 1206-07 & n.33 (recognizing distinction). In this case, the only nuisance damages sought by Plaintiffs, and awarded by the jury, were for the diminished value of the Class Properties caused by Defendants' nuisance.

wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs; or, at the election of the claimant,

   (b)   Interest shall be at the rate of eight percent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs.

Defendants assert this statute applies only in actions arising from consumer credit transactions, basing this contention on their analysis of the statute and its legislative history and the erroneous contention that the statute is part of Colorado's Consumer Credit Code.[28]  In so doing, Defendants dismiss the long line of Colorado Supreme Court and other cases that, contrary to Defendants' position, have construed § 5-12-102 liberally to apply to all types of cases not involving personal injuries.[29]  For example, in *Mesa Sand & Gravel Co. v. Landfill, Inc.*, 776 P.2d 362 (Colo. 1989), the Colorado Supreme Court stated that "[i]n cases other than in 'actions brought to recover damages for personal injuries sustained by any person resulting from or occasioned by the tort of any other person, corporation, association, or partnership' under [Colo. Rev. Stat.] § 13-21-101, a prevailing party may recover prejudgment interest under section

---

[28]   The Consumer Credit Code consists of Articles 1 through 9 of Title 5 of the Colorado Revised Statutes.  Colo. Rev. Stat. § 5-1-101.  The prejudgment interest statute is found in Article 12 of Title 5.  *See id.* § 5-12-102.

[29]   "The term 'creditors' used in the statute [Colo. Rev. Stat. § 5-12-102] has been construed broadly to include all claimants who have been damaged by the actions of another."  *Stansbury v. Comm'r Internal Revenue Serv.*, 102 F.3d 1088, 1093 n.6 (10th Cir. 1996) (internal quotation omitted).

5-12-102." *Id.* at 363.  The court further declared § 5-12-102 "was not designed to

distinguish between classes of prevailing parties in permitting recovery of prejudgment

interest" and approved the statute's application to a breach of contract claim.  *Id.* at 365.

In subsequent decisions, the Colorado Supreme Court has affirmed this broad

construction of the statute, including its application in property damage cases.  *See*

*Westfield Dev. Co. v. Rifle Inv. Assocs.*, 786 P.2d 1112, 1122 (Colo. 1990) (approving

award of prejudgment interest under statute to pecuniary damages caused by intentional

interference with contract because liberal construction of statute was necessary "to

effectuate the legislative purpose of compensating parties for the loss of money or

property to which they are entitled."); *Ballow v. PHICO Ins. Co.*, 878 P.2d 672, 683

(Colo. 1994) ("In cases other than 'actions brought to recover damages for personal

injuries' under [Colo. Rev. Stat.] § 13-21-101, a prevailing party may recover

prejudgment interest under section 5-12-102"); *Farmers Reservoir & Irrigation Co. v.*

*Golden*, 113 P.3d 119, 133 (Colo. 2005) (holding § 5-12-102(1)-(3) codifies the doctrine

of moratory interest in contract and property damage cases, so that "[t]he right to recover

prejudgment interest for damages other than those resulting from personal injuries is a

matter of law determined under section 5-12-102.").

The Tenth Circuit has also recognized that § 5-12-102 applies to claims for

property damages and other actions not involving consumer credit transactions.  *See, e.g.*,

*Loughridge v. Chiles Power Supply Co.*, 431 F.3d 1268, 1288-89 (10th Cir. 2005)

(recognizing that "prejudgment interest in non-personal injury actions is available" under

63

§ 5-12-102(1) and applying statute to determine prejudgment interest to be awarded in

property damage case); *Estate of Korf v. A.O. Smith Harvestore Prods., Inc.*,

917 F.2d 480, 486 (10th Cir. 1990) (applying § 5-12-102 to claim for property damages

because, under the Colorado Supreme Court's decisions in *Mesa Sand* and *Westfield*,

"victims of tortious conduct are clearly entitled to prejudgment interest under the

statute."); *Lowell Staats Mining Co. v. Pioneer Uravan, Inc.*, 878 F.2d 1259, 1270

(10th Cir.1989) (holding § 5-12-102 entitled plaintiff to prejudgment interest on breach of

contract claim).

Defendants essentially argue that these cases were wrongly decided because they

rely, directly or indirectly, on an alleged mistranscription of a statement by the sponsor of

the legislation that became § 5-12-102.  I disagree that Defendants' report of this sponsor

statement, even if accurate, supports Defendants' narrow reading of the statute or casts

doubt on the Colorado courts' construction of it.[30]  Even if this were not the case, "it is the

duty of the [federal court] to ascertain from all the available data what the state law is and

apply it rather than to prescribe a different view, however superior it may appear."

*Lowell*, 878 F.2d at 1269 (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237

---

[30]      The chief difference between the transcription cited by the Colorado
Supreme Court and that asserted by Defendants is that the Colorado Supreme Court
reports the legislation's sponsor stated "*All* plaintiffs, or defendants who counterclaim, for
that matter, are entitled to interest," *Mesa Sand*, 776 P.2d at 365 (emphasis added), while
Defendants contend he actually stated "*a* plaintiff, or for that matter a defendant who
counterclaims, is entitled to interest."  Defs.' Resp. to Pls.' Mot. for Entry of J.
(Doc. 2226) at 45 (emphasis added).

(1940)).  I am not at liberty, therefore, to depart from the Colorado Supreme Court's

construction of § 5-12-102, even if I were inclined to do so.

Defendants conclude their challenge to the award of any prejudgment interest in

this action by contending that the compensatory damages awarded by the jury were for

"future losses," and as such have not been "withheld" as required for prejudgment interest

to be awarded under § 5-12-102.  Defendants' argument confuses the basis for liability in

this action, that Defendants' tortious invasions will continue into the future, with the

measure of damages for Defendants' on-going invasions.  Pursuant to Restatement

§ 930(3)(b), the jury determined damages for "the decrease in the value of the land caused

by the prospect of the continuance of the invasion measured at the time when the

injurious situation became complete and comparatively enduring."  Restatement

§ 930(3)(b); *see* Jury Verdict Form at 14-15, 23-24.  The jury's verdict, therefore,

determined the damages caused by Defendants' continuing invasions that existed at the

time the injurious situation became complete and comparatively enduring.  In other

words, the damages found by the jury were to remedy an existing wrong.  As a result,

Plaintiffs are entitled to an award of prejudgment interest under § 5-12-102.  *See*

*Loughridge*, 431 F.3d at 1290-91 (rejecting assertion that prejudgment interest was not

available under Colorado law for award of future repair costs, finding these damages were

"to remedy [plaintiffs'] past, not future injury" arising from defendant's wrong); *see also*

*Wharf*, 210 F.3d at 1233-34 (rejecting argument that § 5-12-102 was inapplicable because

contract damages characterized as "right to future income" could not be "wrongfully

withheld" within meaning of statute).

Plaintiffs' entitlement to prejudgment interest under § 5-12-102 is also supported

by Colorado authority holding that prejudgment interest "accrues in a property damage

case from the time the cause of action accrued; in other words, from the date on which the

injured party was wronged."  *Fed. Ins. Co. v. Ferrellgas, Inc.*, 961 P.2d 511, 514 (Colo.

Ct. App. 1997); *see Isbill Assocs., Inc. v. Denver*, 666 P.2d 1117, 1122 (Colo. Ct. App.

1983) (upholding prejudgment interest award from time property was damaged).  By

statute, prejudgment interest is awarded "from the date of wrongful withholding."  Colo.

Rev. Stat. § 5-12-102(1)(a).  Thus, the Colorado courts deem damages to be "wrongfully

withheld" as of the date on which the wrong occurred.  *See Seaward*, 817 P.2d at 975

("addition of prejudgment interest to a judgment for compensatory damages recognizes

that the loss caused by the tortious conduct occurred at the time of the resulting injury but

that the damages paid to compensate for that loss are not received by the injured party

until later.")  There is no question that the wrong here, Defendants' continuing tortious

invasions, has occurred and that the damages attributable to this wrong have been

wrongfully withheld since then.

The jury found that it appeared on or before January 30, 1990 that any trespass or

nuisance by Rockwell and Dow would continue indefinitely.  Jury Verdict Form at 28-29.

This finding, coupled with the jury's determination that both Dow and Rockwell were

liable for continuing trespass and nuisance, establishes that Plaintiffs' trespass and

nuisance claims accrued, and the wrongs occurred, no later than January 30, 1990.

Accordingly, pursuant to § 5-12-102(1), Plaintiffs are entitled to recover prejudgment

interest on the compensatory damages awarded by the jury, at a rate of 8% per annum

compounded annually, from January 30, 1990 through the date of payment or the date

judgment is entered, whichever occurs first.  Colo. Rev. Stat. § 5-12-102(1)(b).

In their Motion for Entry of Judgment, Plaintiffs also requested an award of

prejudgment interest on the jury's exemplary damages award, measured from the date of

the jury's verdict awarding these damages.  This start date was an attempt to

accommodate Colorado case law declaring that prejudgment interest is not available on

exemplary damages in part because these damages are not "wrongfully withheld" until

they are awarded by a jury.  *See Seaward*, 817 P.2d at 975-76; *Coale*, 701 P.2d at 890.

Plaintiffs subsequently acknowledged that the Colorado Court of Appeals' decision in

*Fail v. Community Hospital*, 946 P.2d 573 (Colo. Ct. App. 1997), which noted that a jury

verdict is not conclusive until final judgment is entered on it, *id.* at 582, called this

attempted accommodation into question.  I agree and therefore deny Plaintiffs' request for

an award of prejudgment interest on exemplary damages.

### *Postjudgment interest*

There is no question that Plaintiffs are entitled to recover postjudgment interest,

but the parties dispute whether the applicable rate is set by federal or Colorado law.  In

*Transpower Constructors v. Grand River Dam Authority*, 905 F.2d 1413 (10th Cir. 1990),

the Tenth Circuit considered whether federal or state law governed the determination of

postjudgment interest in a diversity action, in which the substantive rules of decision were

drawn from state law.  The Tenth Circuit determined that the federal statute,

28 U.S.C. § 1961, applied, because the imposition of postjudgment interest, while

"rationally capable of classification as either" substantive or procedural, was most

properly viewed as a procedural rule.  *Transpower*, 905 F.2d at 1424.  Here, the Price-

Anderson Act directs only that "the substantive rules for decision" shall be derived from

state law.  42 U.S.C. § 2014(hh).  As a procedural rule, therefore, postjudgment interest is

not subject to this provision, with the result that the federal statute, 28 U.S.C. § 1961,

governs the entitlement to, and rate of, postjudgment interest in this action.

### *Defendants' additional objections to Plaintiffs' proposed judgment*

I have considered Defendants' additional objections to Plaintiffs' proposed

judgment and find them to be without merit.  In particular, I find the references to The

Boeing Company in Paragraph 4 of Plaintiffs' Corrected Proposed Final Judgment

(Doc. 2243-2) to be consistent with the representation made to this Court by Rockwell

and The Boeing Company that The Boeing Company, as the successor-in-interest to

Rockwell, is answerable for any judgment rendered against Rockwell in this suit.  *See*

Joint Submission re: Pls.' Mot. to Amend Caption or Compl. or to Substitute Rockwell's

Successor Cos. as Parties in Interest (Doc. 2193); *id.*, Ex. A (Doc. 2193-2)

(Statement/Description of Successor Interest by Rockwell and Boeing).

2.      *Entry of final judgment under Rule 54(b)*

I further find that judgment, as described above, shall be entered pursuant to

Rule 54(b) of the Federal Rules of Civil Procedure.

In so holding, I specifically find that the judgment to be entered is a final order

under Rule 54(b).  This is so because it is the ultimate disposition of Plaintiffs' claims to

recover prospective damages for the continuing trespass and nuisance the jury found Dow

and Rockwell had committed.  *See Okla. Tpk.*, 259 F.3d at 1242 (stating standard).  These

claims are distinct and separable from the remaining claims in this case.  Defendants'

liability and the total prospective damages owed on these claims has been decided on the

merits, leaving only the amount due to each member of the Class entitled to recover these

damages (the Prospective Damages Subclass as defined herein) to be determined.

As required to establish finality under *Strey v. Hunt International Resources Corp.*,

696 F.2d 87 (10th Cir. 1987), I have approved a Plan of Allocation that sets forth the

procedures and formula for the division of damages among members of the Prospective

Damages Subclass and the principles that will guide disposition of unclaimed funds.

Even if issues and disputes arise in computing each member's damages entitlement under

this Plan, these issues are not similar to, and in fact are separable from, the trespass,

nuisance and prospective damages claims decided by the judgment to be entered.  In

addition, while it is very unlikely that the issues Defendants have indicated they will seek

to appeal as a result of the judgment will be mooted or altered by the allocation and

disbursement of these damages in accordance with the Plan of Allocation, the judgment

69

also stays execution of the Plan until after any appeal of the judgment is decided.

Accordingly, the judgment is final under Rule 54(b).  *See Parks v. Pavkovic*,

753 F.2d 1397, 1401-02 (7th Cir. 1985) (Posner, J.) (describing circumstances in which

finality is achieved when damages due to individual class members remain to be decided);

*see also Strey*, 696 F.2d at 88 (order deciding liability and class damages not a final

judgment until it also states formula for dividing damages among class members and

principles guiding disposition of any unclaimed funds).

I have also determined, as required by Rule 54(b), that there is no just reason to

delay entry of this final judgment.  No one can seriously dispute that the class trial

determined the central claims and issues in this action: each Defendants' liability for

continuing trespass and nuisance and the decrease in the value of Class Properties caused

by these continuing tortious invasions.  The class trial was the product of an

extraordinarily long and contentious pretrial process that consumed substantial private

and judicial resources and required a number of hotly disputed legal, factual and

evidentiary issues to be decided.  Substantial additional time and resources will be

required to execute the Plan of Allocation approved in this memorandum opinion and to

resolve the remaining claims in this action.  It would be inefficient and uneconomical for

the parties and the court to proceed with this allocation and other claims before the parties

have an opportunity to appeal the jury's verdicts on the claims decided in the class trial.

Immediate appeal of the final judgment also does not pose a risk of piecemeal

appeals.  Although Plaintiffs' medical monitoring claims, and perhaps claims for

additional damages for the proven trespass and nuisance pursuant to Restatement § 929, in theory remain pending, these claims are distinct and separate from those decided in the final judgment to be entered on the jury's verdicts.  In addition, even if there are subsequent appeals from adjudication of these claims or from the allocation of the damages awarded as a result of the class trial, it is highly unlikely they would present the same issues that the parties have indicated they may raise on appeal from the class trial. Nor can I conceive of a situation (other than settlement) in which appellate review of the issues raised by the class trial would be mooted by any future developments in this case.

Finally, this action has been pending now for 18 years.  The parties, and especially the members of the Plaintiff Class, deserve as speedy a resolution of this case as is possible under the Federal Rules.  The opportunity for immediate appeal of the jury's verdicts under Rule 54(b), which would allow all of the parties' concerns regarding the class trial to be heard and decided once and for all, is by far the best means of achieving this end.  There is simply no just reason to delay this action further by continuing proceedings in this court when appeal is virtually certain and may affect the nature of these additional proceedings.

## **Conclusion**

For the reasons stated above:

1.     Defendants' Renewed Motion for Judgment as a Matter of Law (Doc. 2220) is denied.

71

2.  Defendants' Motion for a New Trial or, in the Alternative, for a Remittitur
of Damages (Doc. 2224) is denied.

3.  Defendants' Motion for Certification of Interlocutory Appeal (Doc. 2222) is
denied.

4.  Plaintiffs' Motion for Entry of Judgment (Doc. 2169) is granted in part and
denied in part as follows:

A.  Final judgment on the jury's verdicts in the property class trial, in a
form consistent with this Memorandum Opinion, shall be entered
under Federal Rule of Civil Procedure 54(b);

B.  A Plan of Allocation, in a form consistent with this Memorandum
Opinion, shall be entered for the sum of all compensatory and
exemplary damages awarded in this judgment, inclusive of such
attorney fees, expenses, costs and pre- and post-judgment interest as
have been or may be awarded to Plaintiffs and the Class;

C.  Plaintiffs shall prepare and submit to the Court a revised proposed
Final Judgment and Plan of Allocation that reflects the rulings set
forth in this Memorandum Opinion;

D.  Execution of the Final Judgment and Plan of Allocation entered by
the Court, as well as proceedings to recover attorney fees, costs and
expenses, is stayed until such time as a party files a timely notice of
appeal of the Final Judgment or the time for doing so expires.  An

72

additional stay of execution may also be obtained upon proper

application under Federal Rule of Civil Procedure 62(d).

IT IS SO ORDERED.

Dated this 20th day of May, 2008.

                     s/John L. Kane                  
                     John L. Kane, Senior District Judge
                     United States District Court

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. 90-cv-00181-JLK

MERILYN COOK,
LORREN and GERTRUDE BABB,
RICHARD and SALLY BARTLETT, and
WILLIAM and DELORES SCHIERKOLK,

      Plaintiffs,

          v.

ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,

      Defendants.

---

**FINAL JUDGMENT**

---

      A jury trial was held in this matter beginning October 6, 2005, and ending February 14,

2006, when the jury returned its verdict.  Among the matters tried were claims by the Representative

Plaintiffs (as defined below) and the Prospective Damages Subclass (as defined below) arising from

prospective invasions of their interests in land, pursuant to the Price-Anderson Act, 42 U.S.C.

§ 2210, Colorado law, and *Restatement (Second) of Torts* § 930.  The Representative Plaintiffs and

the Prospective Damages Subclass have moved for entry of judgment on the verdict on those claims

pursuant to 28 U.S.C. § 1291 and Fed. R. Civ. P. 54(b).  As more fully explained in the Court's

Memorandum Opinion and Order on Pending Motions dated May 20, 2008 (Doc. 2261), the Court

has determined that the relevant claims for relief have been finally adjudicated and that there is no

just reason for delay in entry of judgment on those claims.  Accordingly, the Court hereby renders

final judgment for the Representative Plaintiffs and the Prospective Damages Subclass, as more fully

set forth below.

## PARTIES

1.      The Representative Plaintiffs are plaintiffs Merilyn Cook, Lorren and Gertrude Babb,

Richard and Sally Bartlett, and William and Delores Schierkolk, suing on their own behalf and for

a Property Class previously certified by this Court in *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378

(D. Colo. 1993).

2.      The Property Class includes all persons and entities not having opted out of the class

who owned, as of June 7, 1989, an interest (other than mortgagee and other security interests) in real

property situated within the Property Class Area, exclusive of governmental entities, defendants, and

defendants' affiliates, parents, and subsidiaries.  The Property Class Area is a geographic area near

the former Rocky Flats Nuclear Weapons Plant in Colorado; its boundary is portrayed in the map

attached to this Final Judgment as Appendix A.  The Prospective Damages Subclass includes all

members of the Property Class who still owned their properties as of January 30, 1990.

3.      The term "Plaintiffs" is used in this Final Judgment to refer to the Representative

Plaintiffs and the Prospective Damages Subclass, collectively.

4.      The defendants are Dow Chemical Company ("Dow") and Rockwell International

Corporation.  The Boeing Company, a Delaware corporation headquartered in Chicago, Illinois, is

successor-in-interest to Rockwell International Corporation and has represented to the Court that

it is answerable for any judgment rendered against Rockwell International Corporation in this

matter.  Accordingly, execution may proceed against The Boeing Company under this Final

Judgment as though against Rockwell International Corporation and to the same extent.  As used

*Final Judgment – Page 2*

in this Final Judgment, the term "Rockwell" includes both Rockwell International Corporation and The Boeing Company, and the term "Defendants" includes both Dow and Rockwell.

## CLAIMS

5.      The claims for relief as to which final judgment is hereby entered include all claims by Plaintiffs in this action arising from prospective invasions of their interests in land pursuant to the Price-Anderson Act, 42 U.S.C. § 2210, Colorado law, and *Restatement* (*Second*) *of Torts* § 930, and only such claims.

## AMOUNT OF JUDGMENT

### Compensatory Damages

6.      The Court orders that Plaintiffs recover compensatory damages from Dow in the amount of $653,313,678.05, inclusive of prejudgment interest.

7.      The Court orders that Plaintiffs recover compensatory damages from Rockwell in the amount of $508,132,861.39, inclusive of prejudgment interest.

8.      The total compensatory damages collected by Plaintiffs from all Defendants pursuant to this Final Judgment shall not exceed the sum of $725,904,087.00, inclusive of prejudgment interest.

### Exemplary Damages

9.      In addition to the sums recoverable by Plaintiffs under Paragraphs 6-8 of this Final Judgment, the Court orders that Plaintiffs recover exemplary damages from Dow in the amount of $110,800,000.00.

*Final Judgment – Page 3*

10.     In addition to the sums recoverable by Plaintiffs under Paragraphs 6-9 of this Final Judgment, the Court orders that Plaintiffs recover exemplary damages from Rockwell in the amount of $89,400,000.00.

## Costs, Fees, and Expenses

11.     The Court orders that Plaintiffs recover their costs of suit herein.  Further proceedings on costs, attorneys' fees, and related non-taxable expenses pursuant to Fed. R. Civ. P. 54(d)(2) shall be stayed until such time as the Court may later direct, except that plaintiffs may submit a bill of costs at any time after this Final Judgment is entered.

## Post-Judgment Interest

12.     Post-judgment interest is payable on all the above amounts at the rate prescribed in 28 U.S.C. § 1961, from the date this Final Judgment is entered until the date this Final Judgment is paid.

## STAY OF EXECUTION

13.     Execution on this Final Judgment against Dow is STAYED until: (a) such time as Dow files a timely notice of appeal, in which case Dow may secure an additional stay of execution pursuant to Fed. R. Civ. P. 62(d) and effective upon the Court's approval of Dow's supersedeas bond or such alternative security as the Court may approve; or (b) expiration of the time allowed for filing any appeal from this Final Judgment, if Dow files no timely notice of appeal.

14.     Execution on this Final Judgment against Rockwell is STAYED until: (a) such time as Rockwell files a timely notice of appeal, in which case Rockwell may secure an additional stay of execution pursuant to Fed. R. Civ. P. 62(d) and effective upon the Court's approval of Rockwell's

supersedeas bond or such alternative security as the Court may approve; or (b) expiration of the time

allowed for filing any appeal from this Final Judgment, if Rockwell files no timely notice of appeal.

## DEPOSIT OF FUNDS

15.     Subject to further order of the Court, any funds recovered under this Final Judgment

shall be deposited in United States government treasury bills or notes, and/or in such other

investments as may be approved by the Court from time to time, pending implementation of the Plan

of Allocation as approved by the Court and attached to this Final Judgment as Appendix B.  Merrill

G. Davidoff of Berger & Montague, P.C., is hereby appointed as escrow agent.

Dated this 2nd day of June, 2008.

s/John L. Kane_____
John L. Kane, Senior District Judge
United States District Court



**Broomfield**

120th

*Great Western Reservoir*

**Westminster**

*Standley Lake*

Indiana

**Arvada**

0   0.25   0.5        1
Miles

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. 90-cv-00181-JLK

MERILYN COOK,
LORREN and GERTRUDE BABB,
RICHARD and SALLY BARTLETT, and
WILLIAM and DELORES SCHIERKOLK,

     Plaintiffs,

       v.

ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,

     Defendants.

---

## PLAN OF ALLOCATION

---

Before the Court is plaintiffs' proposed plan of allocation. The Court being fully advised

in the premises, and for good cause shown, the Court hereby ORDERS as follows:

### A.  Definition of Terms

1.     For purposes of this Order:

    a.     The term "Class" means the Property Class certified by the Court.

    b.     The term "Class Area" means the geographic area bounding the Property

Class as certified by the Court.

    c.     The "Prospective Damages Subclass" includes all Class members who:

(i) owned a property within the Class Area on June 7, 1989; and (ii) still owned the property as of

January 30, 1990.

d.      The "Non-Prospective Damages Subclass" includes all Class members who:
(i) owned a property within the Class Area on June 7, 1989; but (ii) no longer owned the property
as of January 30, 1990.

e.      The term "Judgment Fund" means the sum of all compensatory and exemplary
damages awarded in the trial of the Class claims in this matter and allowed after defendants' appeal
(or after the expiration of time allowed for filing such appeal, if no appeal is filed within that time),
inclusive of such attorneys' fees, expenses, costs, and pre- and post-judgment interest as have been
or may be awarded to plaintiffs and the Prospective Damages Subclass, and inclusive of any interest
earned through such investments as the Court may direct following defendants' payment of the
judgment.

f.      The term "Claims Administrator" means the officer appointed by the Court
pursuant to this Order to recommend an allocation of damages and to perform such incidental and
additional duties as are set forth in this Order or as the Court may subsequently direct.

g.      The term "Net Class Award" means the Judgment Fund, less: (i) service
awards to the representative plaintiffs; (ii) fees, expenses, and costs awarded from the Judgment
Fund to counsel for plaintiffs and the Class; (iii) compensation and expenses paid or reimbursed to
the Claims Administrator; and (iv) any additional administrative expenses that may be charged
against the Judgment Fund at the Court's direction.

h.      The term "Net Class Commercial Property Award" means the portion of the
Net Class Award allocable to the commercial property category under the formula set forth in
paragraph 9 of this Order.

      i.     The term "Net Class Residential Property Award" means the portion of the Net Class Award allocable to the residential property category under the formula set forth in paragraph 9 of this Order.

      j.     The term "Net Class Vacant Property Award" means the portion of the Net Class Award allocable to the vacant property category under the formula set forth in paragraph 9 of this Order.

### B.  Appointment of Claims Administrator

2.     The Claims Administrator shall be appointed following remand from defendants' appeal, or upon expiration of defendants' time to file an appeal, whichever occurs first.

### C.  Duties of the Claims Administrator

3.     The Claims Administrator shall be responsible for developing a recommended allocation ("Proposed Allocation") of the Net Class Award.  The Proposed Allocation shall be developed under the guidelines set forth in this Order, under supervision from the Court, and subject to ultimate approval by the Court.

4.     The Claims Administrator shall have such additional duties in connection with the allocation of damages and administration of claims as are set forth in this Order or in subsequent directives from this Court.

5.     The Claims Administrator shall report to the Court from time to time to advise the Court of its progress in discharging its responsibilities under this Order, on such occasions and at such intervals as the Claims Administrator may deem appropriate or as the Court may direct.

6.     The Claims Administrator is authorized to make reasonable expenditures to secure the resources and assistance reasonably necessary to the performance of its duties.  Such expenses,

and the compensation of the Claims Administrator at its usual and customary hourly rates, will be paid and reimbursed from the Judgment Fund periodically, as incurred.

7.     The Claims Administrator shall not commence the performance of its duties under this Order until such time as the case is remanded to this Court from defendants' appeal (or until after the expiration of the time allowed for filing such appeal, if no appeal is filed within that time).

### D.  Procedures and Principles for the Proposed Allocation

8.     For each Class property, the Claims Administrator shall consult appropriate records and data, from Jefferson County, Colorado, and such other sources as the Claims Administrator may reasonably determine to be suitable and reliable, for the purposes of: (a) determining ownership of the property as of June 7, 1989, and January 30, 1990; (b) associating the property, and its owner(s) as of June 7, 1989, with the Prospective Damages Subclass or the Non-Prospective Damages Subclass; and (c) assigning the property to one of the three property categories from the jury's verdict form (i.e., commercial, residential, and vacant).

9.     For each of the three property categories, the Claims Administrator shall compute the category's share of the Net Class Award.  The total sum allocable to each category shall bear the same ratio to the Net Class Award as the jury's award of compensatory damages for that category bears to the total of all compensatory damages awarded by the jury for all three categories combined. Thus the total sum allocable to commercial properties (the Net Class Commercial Property Award) will be 3.196% ($5,651,252 ÷ $176,850,340) of the Net Class Award; the total sum allocable to residential properties (the Net Class Residential Property Award) will be 81.537% ($144,199,088 ÷ $176,850,340) of the Net Class Award; and the total sum allocable to properties in the vacant land

category (the Net Class Vacant Land Award) will be 15.267% ($27,000,000 ÷ $176,850,340) of the Net Class Award.

10.     Based on Jefferson County tax assessment records and such other sources as the Claims Administrator may reasonably determine to be suitable and reliable, the Claims Administrator shall determine, for each Class property, the property's assessed value, expressed as a fraction of the total assessed value of all Class properties within the same category (the property's "Fractional Allocable Share").

11.     Subject to such equitable adjustments as the Claims Administrator may recommend and the Court may adopt, the Proposed Allocation shall compute an award for each property in the Prospective Damages Subclass, based on the property's Fractional Allocable Share of the Net Class Award apportioned to that category.   For example, for a residential property, the Proposed Allocation will present an award based on the property's Fractional Allocable Share multiplied by the Net Class Residential Property Award.     The Claims Administrator shall memorialize a similar calculation for each property associated with the Non-Prospective Damages Subclass (see paragraph 14, *infra*).

## E. Procedures for Payment of Claims

12.     Prior to disbursement of any funds to members of the Prospective Damages Subclass, the Court will establish appropriate procedures for approval of the Proposed Allocation, for notifying Prospective Damages Subclass members of their awards under the Proposed Allocation, and for proceedings through which Prospective Damages Subclass members have an opportunity to seek adjustment of their awards under the Proposed Allocation.

**F.  Disposition of Unclaimed Funds**

13.     Subject to further order of the Court, any funds allocable to the Prospective Damages Subclass that remain unclaimed, after due allowance of a period for late claims, shall be distributed to members of the Prospective Damages Subclass on a pro rata basis.

**G.  *Cy Pres* Award**

14.     That portion of the Net Class Award allocable to properties in the Non-Prospective Damages Subclass, as computed pursuant to paragraph 11, *supra*, shall be assigned to a *cy pres* fund, for such subsequent distribution as the Court may later direct.  In aid of such distribution, the Court will direct plaintiffs, at or near the time that approval is sought for the Proposed Allocation, to identify options and recommendations for disbursing the *cy pres* fund in a manner consistent with *cy pres* principles, as set forth at pages 55-57 of this Court's Memorandum Opinion and Order on Pending Motions dated May 20, 2008 (Doc. 2261).

Dated this 2nd day of June, 2008.

s/John L. Kane
John L. Kane, Senior District Judge
United States District Court

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-181-JLK

MERILYN COOK, *et al.*,

       Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

       Defendants.

---

**NOTICE OF APPEAL OF THE DOW CHEMICAL COMPANY**

---

Notice is hereby given that defendant The Dow Chemical Company ("Dow") hereby appeals to the United States Court of Appeals for the Tenth Circuit from the Memorandum Opinion and Order ("Order") denying defendants' motions for judgment as a matter of law and for a new trial entered on May 20, 2008 and from the Judgment entered in this action on June 2, 2008.

In appealing from that Order and that Judgment, Dow appeals from any and all orders antecedent and ancillary thereto, including any and all interlocutory judgments, decrees, decisions, rulings, and opinions that merged into and became part of the Order and of the Judgment, that shaped the Order and the Judgment, that are related to the Order and the Judgment, and upon which the Order and the Judgment are based.

Dated:  June 19, 2008                     Respectfully submitted,

                                          s/ Joseph J. Bronesky
                                          One of the Attorneys for the
                                          Defendants/Appellants

                                          Joseph J. Bronesky
                                          SHERMAN & HOWARD L.L.C.
                                          633 Seventeenth Street, Suite 3000
                                          Denver, Colorado 80202
                                          Phone:  303-297-2900
                                          Fax:     303-298-0940

                                          David M. Bernick
                                          Douglas J. Kurtenbach
                                          James M. Golden
                                          KIRKLAND & ELLIS LLP
                                          200 East Randolph Drive
                                          Chicago, Illinois 60601-6636
                                          Phone:  312-861-2000
                                          Fax:     312-861-2200

**CERTIFICATE OF SERVICE**

I hereby certify that on June 19, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses for the following:

Peter B. Nordberg, Esq.
1622 Locust Street
Philadelphia, PA  19103
pnordberg@bm.net
kmarkert@bm.net

Gary B. Blum, Esq.
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206
blumg@s-d.com

s/ Joseph J. Bronesky
Joseph J. Bronesky
