IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-00181-JLK

---

MERILYN COOK, *et al.*,

      Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

      Defendants.

---

**PLAINTIFFS' OPENING BRIEF PURSUANT TO ORDER OF OCTOBER 16, 2012**

---

# TABLE OF CONTENTS

I.  The Existing Jury Verdict Supports Entry of Judgment on Plaintiffs' Nuisance Claim under Colorado Law and Diversity and Pendent Jurisdiction ........................................................ 1

    A.  Diversity Jurisdiction ............................................................................................... 1

    B.  Pendent and Ancillary Jurisdiction ......................................................................... 4

    C.  The Tenth Circuit Held that the Jury was Properly Instructed on Plaintiffs' Nuisance Claim under Colorado Law .................................................................... 5

    D.  The Nuisance Claim was Supported by Overwhelming Scientific Evidence In any Event, and Defendants Have Waived Any Argument to the Contrary .................. 9

II. A Plaintiff Who Brings a PAA Claim May Simultaneously Pursue a Freestanding State Claim Law Based on the Same Facts .................................................................................... 13

    A.  Under Diversity Jurisdiction, State Law Controls ................................................. 13

    B.  Plaintiffs' Colorado Nuisance Claim Remains ..................................................... 14

        1.  The Tenth Circuit's Opinion ................................................................... 15

        2.  Defendants Cannot Meet Their Burden to Demonstrate Preemption .... 17

            a.  Express Preemption Does Not Apply ......................................... 18

            b.  Any Argument for Field or Complete Preemption Has Been Waived ...................................................................................... 18

            c.  Conflict Preemption Does Not Apply ........................................ 20

    C.  A Finding That the PAA Preempts State Nuisance Law  Would Violate Due Process ................................................................................................................ 29

III. Conclusion ....................................................................................................................... 32

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbot v. American Cyanamid Co.*,
  844 F.2d 1108 (4th Cir. 1988) ..................................................................................24

*Almendarez-Torres v. United States*,
  523 U.S. 224 (1998).........................................................................................21, 31

*Angel v. Bullington*,
  330 U.S. 183 (1947).................................................................................................14

*Arkansas-Platte & Gulf P'ship v. Van Waters & Rogers, Inc.*,
  959 F.2d 158 (10th Cir. 1992), *vac'd on other grounds and rem'd*, 506 U.S. 910
  (1992)........................................................................................................................18

*Black v. Workman*,
  682 F.3d 880 (10th Cir. 2012) ...................................................................................9

*Brzonkala v. Va. Polytechnic Inst. & State Univ.*,
  169 F.3d 820 (4th Cir. 1999), *aff'd sub nom. United States v. Morrison*, 529 U.S. 598
  (2000)........................................................................................................................31

*Busey v. Bd. of County Com'rs of Shawnee*,
  163 F. Supp. 2d 1291 (D. Kan. 2001).....................................................................13

*California v. ARC America Corp.*,
  490 U.S. 93 (1989)...................................................................................................26

*Central Fiber Corp. v. Site Services Ltd.*,
  962 F. Supp. 1426 (D. Kan. 1997).............................................................................3

*Clark v. State Farm Mut. Auto. Ins. Co.*,
  590 F.3d 1134 (10th Cir. 2009) ...............................................................................11

*Clark v. Suarez Martinez*,
  543 U.S. 371 (2005).................................................................................................32

*ClearOne Commc'ns, Inc. v. Bowers*,
  643 F.3d 735 (10th Cir. 2011) ...................................................................................9

*Cohen v. Beneficial Indus. Loan Corp.*,
  337 U.S. 541 (1949).................................................................................................14

*Concrete Works of Colo., Inc. v. City and County of Denver*,
  321 F.3d 950 (10th Cir. 2003) .................................................................................12

*Cook v. Rockwell Int'l Corp.*,
    755 F. Supp. 1468 (D. Colo. 1991) ............................................................................. passim

*Cook v. Rockwell Int'l Corp.*,
    273 F. Supp. 2d 1175 (D. Colo. 2003) ........................................................................ passim

*Cook v. Rockwell Int'l Corp.*,
    580 F. Supp. 2d 1071 (D. Colo. 2006) ........................................................................ passim

*Cook v. Rockwell Int'l Corp.*,
    618 F.3d 1127 (10th Cir. 2010), *cert. denied*, 2012 U.S. LEXIS 4704 (Jun. 25, 2012) .. passim

*Cotroneo v. Shaw Envtl. & Infrastructure*,
    639 F.3d 186 (5th Cir. 2011), *cert. denied*, 133 S. Ct. 22 (U.S. June 25, 2012) ...................... 27

*Coyne & Delany Co. v. Selman*,
    98 F.3d 1457 (4th Cir. 1996) ...................................................................................... 17

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) ................................................................................................ 9, 12

*Devon Energy Prod. Co. v. Mosaic Potash Cardlsbad, Inc.*,
    693 F.3d 1195 (10th Cir. 2012) ............................................................................ 17, 18, 19, 20

*Dow Chem. Corp. v. Weevil-Cide Co.*,
    897 F.2d 481 (10th Cir. 1990) ...................................................................................... 19

*Dueringer v. Gen. Am. Life Ins. Co.*,
    842 F.2d 127 (5th Cir. 1988) ........................................................................................ 19

*Duke Power Co. v. Carolina Environmental Study Group*,
    438 U.S. 59 (1978) .......................................................................................... 29, 30, 31, 32

*English v. Gen. Elec. Co.*,
    496 U.S. 72 (1990) ...................................................................................................... 20

*E.R. Squibb & Sons, Inc. v. Lloyd's & Companies*,
    241 F.3d 154 (2d Cir. 2001) ............................................................................................ 3

*Erie R.R. v. Tompkins*,
    304 U.S. 64 (1938) .................................................................................................. 13, 14

*Eriline Co. S.A. v. Johnson*,
    440 F.3d 648 (4th Cir. 2006) ........................................................................................ 13

*Fein v. Permanente med. Group*,
    474 U.S. 892 (1985) .................................................................................................... 30

*Fryer v. A.S.A.P. Fire & Safety Corp.*,
    658 F.3d 85 (1st Cir. 2011) ............................................................................................19

*Gasperini v. Ctr. for Humanities*,
    518 U.S. 415 (1996) ......................................................................................................13

*Gayvont v. Davol, Inc.*,
    MDL 07-1842ML, 2008 WL 2433258 (D.R.I. Feb. 26, 2008) .................................28

*Geier v. American Honda Co.*,
    529 U.S. 861 (2000) ......................................................................................................20

*Gilchrist v. Jim Slemons Imports, Inc.*,
    803 F.2d 1488 (9th Cir. 1986) ......................................................................................19

*Goodyear Atomic Corp. v. Miller*,
    486 U.S. 174 (1988) ......................................................................................................18

*Gregory v. Ashcroft*,
    501 U.S. 452 (1991) ......................................................................................................31

*Grupo Dataflux v. Atlas Global Group, L.P.*,
    541 U.S. 567 (2004) ........................................................................................................3

*Guar. Trust Co. v. York*,
    326 U.S. 99 (1945) ........................................................................................................14

*Ileto v. Glock, Inc.*,
    565 F.3d 1126 (9th Cir. 2009) ....................................................................29, 30, 31, 32

*In re Aircrash in Bali, Indonesia*,
    684 F.2d 1301, 1312 (9th Cir. 1982) ...........................................................................31

*In re Prempro Prods. Liab. Litig.*,
    2007 WL 641416 (E.D. Ark. Feb. 27, 2007) ..............................................................28

*In re Section 1031 Exch. Litig.*,
    716 F. Supp. 2d 415 (D.S.C. 2010) ..............................................................................28

*In re TMI Litigation Cases Consolidated II*,
    940 F.2d 832 (3d Cir. 1991) .........................................................................................23

*Leonhardt v. W. Sugar Co.*,
    160 F.3d 631 (10th Cir. 1998) ........................................................................................3

*Martin v. Duffie*,
    463 F.2d 464 (10th Cir. 1972) ......................................................................................13

*Martin v. Franklin Capital Corp.*,
  251 F.3d 1284 (10th Cir. 2001) ................................................................3

*Martinez v. Roscoe*,
  100 F.3d 121 (10th Cir. 1996) ................................................................12

*McKay v. U.S. et al.*,
  703 F.2d 464 (10th Cir. 1983) ................................................................22

*N.L.R.B. v. Catholic Bishop of Chi.*,
  440 U.S. 490 (1979)................................................................32

*Navigato v. SJ Rests., LLC*,
  463 Fed. Appx. 770 (10th Cir. 2012)................................................................11

*New York Cent. R. Co. v. White*,
  243 U.S. 188 (1917)................................................................30

*Pruneyard Shopping Ctr. v. Robins*,
  447 U.S. 74 (1980)................................................................30

*Ragan v. Merchs. Transfer & Warehouse Co.*,
  337 U.S. 530 (1949)................................................................14, 25

*Ramsey Winch, Inc. v. Henry*,
  555 F.3d 1199 (10th Cir. 2009) ................................................................17

*Russillo v. Scarborough*,
  935 F.2d 1167 (10th Cir. 1991) ................................................................4

*Saks v. Franklin Covey Co.*,
  316 F.3d 337 (2d Cir. 2003)................................................................19

*Saint Paul Mercury Indem. Co. v, Red Cab Co.*,
  303 U.S. 283 (1938)................................................................4

*Silkwood v. Kerr-McGee Corp.*,
  464 U.S. 238 (1984)................................................................ passim

*Silkwood v. Kerr-McGee Corp.*,
  667 F.2d 908 (10th Cir. 1981), *rev'd and rem'd,* 464 U.S. 238 (1984)................................................................22

*Snyder v. Harris*,
  394 U.S. 332 (1969)................................................................3

*Sprietsma v. Mercury Marine*,
  537 U.S. 51 (2002)................................................................26

*State Farm Mut. Auto. Ins. Co. v. Narvaez,*
149 F.3d 1269 (10th Cir. 1998) .................................................................4

*United Mine Workers of America v. Gibbs,*
383 U.S. 715 (1966).................................................................................4, 13

*United States v. Jin Fuey Moy,*
241 U.S. 394 (1916)....................................................................................31

*United States v. Morrison,*
529 U.S. 598 (2000)....................................................................................31

*United States v. Webb,*
98 F.3d 585 (10th Cir. 1996) .....................................................................12

*Violette v. Smith & Nephew Dyonics,*
62 F.3d 8 (1st Cir. 1995)............................................................................19

*Waitt v. Merck & Co., Inc.,*
C05-0759L, 2005 WL 1799740 (W.D. Wash. July 27, 2005)................28

*Weeks v. Angelone,*
528 U.S. 225 (2000).....................................................................................9

*Weston v. Harmatz,*
335 F.3d 1247 (10th Cir. 2003) .................................................................11

*Wolf v. Reliance Std. Life Ins. Co.,*
71 F.3d 444 (1st Cir. 1995)........................................................................19

*Wyeth v. Levine,*
555 U.S. 555 (2009).............................................................................17, 20

## STATUTES & RULES

28 U.S.C. § 1331..............................................................................................16

28 U.S.C. § 1332.................................................................................... passim

28 U.S.C. § 1367............................................................................................5, 13

28 U.S.C. § 1407..............................................................................................28

28 U.S.C. § 1453..............................................................................................28

28 U.S.C. § 1652..............................................................................................13

42 U.S.C. § 2014.................................................................................... passim

42 U.S.C. § 2210 ................................................................................................... passim

§ 301 of the Labor Management Relations Act of 1947 .................................................20

§ 502 of the Employee Retirement Income Security Act of 1974 ..................................20

F.R.E. 702 ..........................................................................................................................9

Fed. R. Civ. P. Rule 23 ....................................................................................................28

Fed. R. Civ. P. Rule 42 ....................................................................................................28

**OTHER AUTHORITIES**

H.R. Rep. No. 104(I) (1987) ............................................................................................23

Bureau of Labor Statistics, CPI Inflation Calculator, available at
     http://www.bls.gov/data/inflation_calculator.htm. ................................................23

John F. McNett, *Nuclear Indemnity for Government Contractors under the Price-
     Anderson Act: 1988 Amendments*, 19 Pub. Cont. L. J. 1 (Fall 1989) ....................23

Nuclear Energy Institute, *Insurance: Price-Anderson Act Provides Effective Liability
     Insurance at No Cost to the Public*, available at
     http://www.nei.org/corporatesite/media/filefolder/Price_Anderson_Act_Sept_2012.pd
     f ..............................................................................................................................27

Sen. Rep. No. 100-218 (1987), *reprinted in* 1988 U.S.C.C.A.N. 1476 .........................24

Sen. Rep. No. 1605 (1966), *reprinted in* 1966 U.S.C.C.A.N. 3201 ..............................21

Sen. Rep. No. 296 (1957), *reprinted in* 1957 U.S.C.C.A.N. 1803 ..........................21, 24

W. Page Keeton, et al., *Prosser and Keeton on Torts* 619 (5th ed. 1984)....................25

William L. Prosser, *Private Action for Public Nuisance*, 52 Va. L. Rev. 997 (1966)..................25

13E Wright, Miller & Cooper, Federal Practice and Procedure § 3606 (3d ed. 1998)....................3

14AA Wright, Miller & Cooper, Federal Practice and Procedure § 3702 (4th ed. 2009) ..............4

Plaintiffs respectfully submit this opening brief pursuant to the Court's Order dated October 16, 2012 (Doc. No. 2334) ("Order").[1]

The Court directed briefing on two issues: "1) Does the existing jury verdict in this case support entry of this Court's judgment on Plaintiffs' nuisance claim under Colorado law and diversity jurisdiction?;" and "2) May a plaintiff who brings a Price-Anderson Act claim simultaneously pursue a freestanding state-law claim based on the same facts?" Order, p. 1.

For the reasons stated below, the answer to both questions is "Yes."

## I. The Existing Jury Verdict Supports Entry of Judgment on Plaintiffs' Nuisance Claim under Colorado Law and Diversity and Pendent Jurisdiction

### A. Diversity Jurisdiction

From the beginning of the case, Plaintiffs asserted diversity jurisdiction under 28 U.S.C. § 1332. *See* Complaint and Jury Demand, January 30, 1990, ¶¶ 3, 66 ("Complaint"). *See also* Amended Complaint and Jury Demand, April 17, 1990, ¶¶ 3, 72 ("Amended Complaint"); Second Amended Class Action Complaint and Jury Demand, April 8, 1991 (Doc. No. 52), ¶¶ 4, 96 ("Second Amended Complaint").[2]

In the initial Complaint, Plaintiffs pled eight causes of action, the third being "Private Nuisance Under Colorado Law." Complaint, ¶¶ 81-84. The Complaint stated that "Causes of Action numbered One through Seven describe causes of action arising under the law of the State of Colorado, which claims are properly before this Court by virtue of the diversity jurisdiction conferred by 28 U.S.C Section 1332." *Id.* ¶ 66. The Complaint stated further: "These same Causes of Action also constitute claims of public liability with the meaning of 42 U.S.C. Section

---

[1] The Court granted unopposed extensions of time to January 9, 2013.

[2] *See Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1137 n.8 (10th Cir. 2010) (acknowledging that Plaintiffs asserted diversity jurisdiction), *cert. denied*, 2012 U.S. LEXIS 4704 (Jun. 25, 2012).

2014(hh), and such claims are therefore deemed to arise under the Price Anderson Act, 42 U.S.C. Section 2210." *Id.*[3]

These same allegations appear in the operative complaint as of the 2005 trial. *See* Second Amended Complaint, ¶ 4 (alleging diversity jurisdiction); *id.* ¶ 96 ("Causes of Action numbered One through Six describe causes of action arising under the law of the State of Colorado, which claims are properly before this Court by virtue of the diversity jurisdiction conferred by 28 U.S.C. § 1332. These same Causes of Action also constitute claims of public liability within the meaning of 42 U.S.C. § 2014(hh), and such claims are therefore deemed to arise under the Price Anderson Act, 42 U.S.C. § 2210."); *id.* ¶¶ 111-115 ("Third Cause of Action: Private Nuisance Under Colorado Law."). *See also Cook I*, 755 F. Supp. 1468, 1471, 1482-83 (D. Colo. 1991) (deciding statute of limitations issues relevant under diversity jurisdiction).

Thus, from the start of this case more than two decades ago, Plaintiffs alleged a private nuisance, and alleged that the same nucleus of operative facts simultaneously stated a claim under Colorado law properly before this Court pursuant to diversity jurisdiction, and a claim for "public liability" under the Price-Anderson Act ("PAA").

This case meets both statutory requirements for diversity jurisdiction – diversity and amount in controversy – and Defendants have never argued otherwise. The operative time at which diversity jurisdiction must attach is when the case was filed:

> It has long been the case that the jurisdiction of the Court depends upon the state of things at the time of the action brought. This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure. It measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing--whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal.

---

[3] Plaintiffs' eighth cause of action was under CERCLA. Complaint, ¶¶ 108-115.

*Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570-71 (2004) (internal quotations, citations and footnote omitted).

Here, it is undisputed that all the Class representatives were diverse from both Defendants when the case was filed.

Only the named class representatives need to be diverse from defendants. *Snyder v. Harris*, 394 U.S. 332, 340 (1969); *Leonhardt v. W. Sugar Co.*, 160 F.3d 631, 637 n.3 (10th Cir. 1998) ("While *Zahn* requires each individual plaintiff to satisfy the jurisdictional amount, the Supreme Court has historically interpreted § 1332 to require only the named class representatives in a class action to be diverse from the defendants.  Thus, individual class members need not be diverse[.]") (citation omitted).  *See also* 13E Wright, Miller & Cooper, Federal Practice and Procedure § 3606 (3d ed. 1998) ("It was well established in a long line of cases that the federal courts only considered the citizenship of the representative parties for purposes of determining diversity jurisdiction in a class action[.]") & n.55 (citing cases).

Here, there was diversity because all the class representatives were citizens of Colorado when this case was filed, while defendant The Dow Chemical Company ("Dow") was a Delaware corporation with its principal place of business in Michigan, and defendant Rockwell International Corporation ("Rockwell") was a Delaware corporation with its principal place of business in California.  *See* Complaint, ¶ 3.

In addition, the Complaint alleged in good faith claims that met the then-existing statutory minimum of $50,000 in controversy.[4]  *Id.  See also Martin v. Franklin Capital Corp.*,

---

[4] *See Central Fiber Corp. v. Site Services Ltd.*, 962 F. Supp. 1426 (D. Kan. 1997) (under time-of-filing rule, amendment to 28 U.S.C. § 1332(a) which increased amount-in-controversy requirement did not divest court of diversity jurisdiction).  *See also E.R. Squibb & Sons, Inc. v. Lloyd's & Companies*, 241 F.3d 154, 164 (2d Cir. 2001) (citing *Central Fiber* and noting time-of-filing rule "is true with respect to changes in the law. Thus, if a suit is filed and, while the suit

251 F.3d 1284, 1289 (10th Cir. 2001) ("When a case is originally brought in federal court, the plaintiff's claimed amount is presumed to support diversity jurisdiction.") (citing *Saint Paul Mercury Indem. Co. v. Red Cab Co*., 303 U.S. 283, 288-89 (1938)); *State Farm Mut. Auto. Ins. Co. v. Narvaez*, 149 F.3d 1269, 1271 (10th Cir. 1998) ("[W]hen deciding whether the amount in controversy is adequate, 'the sum claimed by the plaintiff controls if the claim is apparently made in good faith.'  In other words, 'it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.'") (quoting *Saint Paul Mercury Indem*., 303 U.S. at 288, 289); 14AA Wright, Miller & Cooper, Federal Practice and Procedure § 3702 (4th ed. 2009) (same).

In short, Plaintiffs alleged and this Court possessed diversity jurisdiction over the Colorado nuisance claim.

### B.   <u>Pendent and Ancillary Jurisdiction</u>

Plaintiffs also asserted pendent and ancillary jurisdiction over Plaintiffs' state law claims, including nuisance.  Second Amended Complaint, ¶ 3.  This case meets both criteria for pendent jurisdiction set forth in *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).  First, the PAA and Colorado nuisance claims "derive from a common nucleus of operative fact."  *Id*. at 725.  Second, hearing the claims together would promote "judicial economy, convenience and fairness to litigants[.]"  *Id.* at 726.

This Court has discretion to continue to exercise jurisdiction over the pendent state law claims even if Plaintiffs choose not to re-try the federal claims.  *Russillo v. Scarborough*, 935 F.2d 1167, 1172 n.5 (10th Cir. 1991) ("[W]e note that jurisdiction over state claims when the

---

is pending, the minimum jurisdictional amount is raised by statute, the court does not lose jurisdiction, even though the amount in controversy in that particular suit does not satisfy the new standard.").

4

federal claims have been dismissed is discretionary[.]").  *See also* 28 U.S.C. § 1367 (enacted December 1, 1990, after the filing of the Complaint, but codifying a district court's discretion to exercise supplemental jurisdiction over "other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").

Considering that this Court has shepherded this case through over a decade of pretrial practice, a full jury trial on the merits, and extensive post-trial motion practice, it would be most efficient for this Court to resolve the remaining state law claims rather than directing the parties to begin anew in state court.

### C.   The Tenth Circuit Held that the Jury was Properly Instructed on Plaintiffs' Nuisance Claim under Colorado Law

The Court of Appeals confirmed that "[t]he jury was properly instructed on the elements of a nuisance claim as well as the definitions of 'substantial' and 'unreasonable.'"  *Cook*, 618 F.3d at 1145.  The Tenth Circuit's "predict[ion]" that Colorado "would not permit recovery premised on a finding that an interference, in the form of anxiety or fear of health risks, is 'substantial' and 'unreasonable' unless that anxiety is supported by some scientific evidence," 618 F.3d at 1146, has no bearing on the jury's conclusions on the class-wide nuisance claim that Plaintiffs proved, pursuant to jury instructions that the Court of Appeals approved.

The jury instruction defining nuisance read:

In order for the Plaintiff Class to recover from either Dow or Rockwell or both of them on their claim of nuisance, you must find Plaintiffs have proved each of the following elements by a preponderance of the evidence:

1.   Dow or Rockwell or both of them interfered with Class members' use and enjoyment of their properties in the Class Area in one or both of these two ways:

A.    By causing Class members to be exposed to plutonium and placing them at some increased risk of health problems as a result of this exposure (see Instruction Nos. 3.7, 3.18); and/or

B.    By causing objective conditions that pose a demonstrable risk of future harm to the Class Area (see Instruction Nos. 3.7, 3.18);

2.    This interference with Class members' use and enjoyment of their properties was both "unreasonable" and "substantial" (see Instruction Nos. 3.8 – 3.12)[.]

*See* Instruction No. 3.6 (Doc. No. 2121-2), p. 38.  *See also* Jury Verdict Form (Doc. No. 2117), pp. 4-7 (questions regarding nuisance claim against Dow and Rockwell).

Critically, the jury was instructed that as to the first element (interference with use and enjoyment) the "only" forms of class-wide interference it could consider were those identified in Instruction 3.6, *i.e.*, "causing Class members to be exposed to plutonium and placing them at some increased risk of health problems as result" and/or "causing objective conditions that pose a demonstrable risk of future harm to the Class Area[.]"  *See* Instruction 3.7 (Doc. No. 2117), p. 40 ("Although there are countless ways that a person or company can interfere with this right, for purposes of deciding the first element of the Plaintiff Class' nuisance claim, **you may only consider** the two possible forms of interference with Class members' use and enjoyment of their property that I stated in Instruction 3.6 and will describe further here.").[5]

Further, the jury was instructed:

In deciding whether either or both forms of possible class-wide interference exists, you should **not** consider whether individual Plaintiffs or Class members are or might be fearful, anxious or otherwise disturbed by any real or perceived risks relating to Rocky Flats and the Defendants' activities there or the conditions they left behind.  Individual reactions to these matters are not relevant to the question of whether a class-wide interference exists.

You also should **not** consider in deciding this element of the nuisance claim whether Defendants' activities caused any decrease in the value of Class members' properties.  The law does not consider a decrease

---

[5] All emphases are added unless stated otherwise.

> in property value to be an interference with the use and enjoyment of
> property.

Instruction 3.7 (Doc. No. 2121-2), p. 42.  *See also* Instruction 3.8 (Doc. No. 2121-2), p. 44 ("In deciding whether Plaintiffs have proven that the interference they claim is substantial and unreasonable, **you may only consider** any interference with Class members' use and enjoyment of property you find based on Instruction Nos. 3.6 and 3.7.").

Defendants recently have argued that "the Tenth Circuit specifically held that this Court had 'erred' by concluding that a scientifically unverifiable risk could pose a 'substantial' and 'unreasonable' interference with use or enjoyment of property."  *See* Motion for Entry of Briefing Schedule Consistent With Tenth Circuit Mandate, September 24, 2012 (Doc. No. 2330), p. 3 (citing *Cook*, 618 F.3d at 1146).  Defendants are wrong.

The Court of Appeals actually said:

> [We] predict that the Colorado Supreme Court would not permit recovery premised on a finding that an interference, in the form of anxiety or fear of health risks, is "substantial" and "unreasonable" unless that anxiety is supported by some scientific evidence. The district court erred in concluding otherwise.

618 F.3d at 1146.

This passage has nothing to do with the two forms of class-wide interference Plaintiffs alleged and tried, and which the jury found.  Rather, this remark by the Court of Appeals related **solely** to a **third** alleged form of interference (in the form of "fear, anxiety or mental discomfort") that was **not tried** on a class-wide basis and formed **no part** of the jury's verdict for Plaintiffs on their class-wide nuisance claim.

The jury was never instructed that it could find for Plaintiffs on either form of class-wide interference with use and enjoyment of property, or find that either form was "unreasonable" and "substantial," on the basis of unfounded "anxiety or fear of health risks."  To the contrary, the Court instructed the jury:

7

Plaintiffs assert that one of the ways Dow and Rockwell interfered with Class members' use and enjoyment of their land was by causing individual Class members to suffer fear, anxiety or mental discomfort because of concerns about risks created by Defendants' activities at Rocky Flats. **Because this is a trial of claims by the whole Class, I earlier instructed you <u>not</u> to consider whether individual Plaintiffs or Class members suffered this form of interference in deciding whether Plaintiffs had proved their class-wide nuisance claims (see Instruction No. 3.7). Nevertheless, to assist me and the parties in deciding how to proceed later in this case**, you will be asked to answer the following question:

> Have Plaintiffs proved by a preponderance of the evidence that the intentional or negligent conduct of Dow or Rockwell or both of them at Rocky Flats, and/or actual or threatened harms cause by such conduct, created a situation that is capable of causing fear, anxiety or mental discomfort in individual Class members?

*See* Instruction No. 3.28 (Doc. No. 2121-2), pp. 76-77 (underlining in original, bold added).

In other words, the jury was expressly instructed that "an interference, in the form of anxiety or fear of health risks" (618 F.3d at 1146) was "<u>not</u>" a form of class-wide interference recoverable by the Class pursuant to its class-wide nuisance claim, but was pertinent **only** to potential **later** proceedings (regarding emotional distress).  It is in **that** instruction (No. 3.28) – about **later** proceedings – that this Court stated that, "[a]n individual Class members' fear, anxiety or mental discomfort can also be based on concerns that may be without scientific foundation or other support in fact."  Instruction No. 3.28 (Doc. No. 2121-2), p. 77.  *See also* Jury Verdict Form (Doc. No. 2117), p. 29.  Again, this instruction was directed exclusively at later proceedings.  *See Cook XIII*, 580 F. Supp. 2d 1071, 1088 & n.10 (D. Colo. 2006) (explaining that a "third form of interference with the use and enjoyment of property," namely "whether Defendants' conduct at Rocky Flats was capable of causing Class members to be fearful, anxious or otherwise disturbed by the real or perceived risks posed by the facility," would also be decided by the jury in a generic sense, "leaving to future proceedings (if

necessary) the separate question of whether particular Class members in fact suffered this form of interference with the right to use and enjoy property.") (footnote omitted).

"'[A] jury is presumed to follow its instructions[.]'" *ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 768 (10th Cir. 2011) (quoting *Weeks v. Angelone*, 528 U.S. 225, 234, (2000)).  *See also Black v. Workman*, 682 F.3d 880, 908 (10th Cir. 2012) ("we presume that juries obey instructions").  Thus, the jury is presumed to have limited its class-wide nuisance findings to the two forms of interference it was instructed it could consider on a class-wide basis. Hence, the Court of Appeals' "predict[ion]" about Colorado law regarding the third form of interference "in the form of anxiety or fear of health risks," 618 F.3d at 1146, has no bearing on the jury's class nuisance verdict under Colorado law.[6]

### D.   The Nuisance Claim was Supported by Overwhelming Scientific Evidence In any Event, and Defendants Have Waived Any Argument to the Contrary

Plaintiffs presented overwhelming scientific evidence in support of the nuisance claim – evidence which satisfied all the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and F.R.E. 702.  *See Cook XIII*, 580 F. Supp. 2d 1071 (D. Colo. 2006).

In rejecting Defendants' *Daubert* challenges, this Court held *inter alia* that:

(1)   Dr. Robert Goble, a professor with a Ph.D. in physics,[7] was qualified to testify regarding class-wide exposure to plutonium, *Cook XIII*, 580 F. Supp. 2d at 1089; and there was "no merit" to Defendants' challenges to the relevance and scientific reliability of his testimony.  *Id.* at 1095.

(2)   Dr. Richard Clapp, a professor and epidemiologist who holds a Master of Public Health Degree and a Doctor of Science, was qualified to testify regarding his

---

[6] The jury carefully deliberated over 17 days and correctly answered a lengthy set of special interrogatories.

[7] All descriptions are as of time of trial.

epidemiological study showing an increased incidence of cancer in off-site areas near Rocky Flats including the Class Area (and Defendants did not argue otherwise), *id.* at 1096; and Dr. Clapp "in conducting his study and reporting its conclusion, employed scientifically sound methods and based his conclusions on facts that satisfy Rule 702's reliability requirements." *Id*. at 1103.

(3)    Dr. Steven Wing, a professor in epidemiology who specializes in studying the health effects of radiation and has extensive experience in evaluating radiation health effects among workers at Department of Energy ("DOE") nuclear facilities, was qualified to testify about the health effects of exposure to plutonium and the effect of DOE's role in research on that subject (and Defendants did not contend otherwise), *id.* at 1106; and his scientific methodology was reliable. *Id*. at 1106-07.

(4)    Dr. Shawn Smallwood, a specialist in system ecology with a Ph.D. in ecology, was qualified to testify regarding, *inter alia*, his study of bioturbation (*i.e.*, soil turnover due to biological activity of plants, insects and animals) as a mechanism to expose underground contaminants, including plutonium, to winds that could transport them off-site, *id*. at 1107-09; and his scientific methodology was reliable. *Id*. at 1109-10.

(5)    Dr. Robert Budnitz, a former senior officer with the United States Nuclear Regulatory Commission ("NRC"), and a frequent consultant to the NRC, DOE, and other U.S. and foreign government agencies on nuclear reactor safety, was "thoroughly qualified" to testify regarding Dow's failures to keep plutonium releases "As Low as Reasonably Achievable" and prevent off-site releases of

plutonium through, *inter alia*, plutonium fires and years-long outdoor storage of thousands of corroding barrels containing plutonium-contaminated waste; and his scientific testimony was reliable. *Id*. at 1149-50.

(6)    Dr. Robert Cochran, a senior scientist and director of the nuclear program at the Natural Resources Defense Council, Inc., who holds a master's degree and Ph.D. in physics and has published extensively on the subjects of nuclear facilities and safety, plutonium toxicity, and radiation protection standards, was qualified to testify regarding, *inter alia*, the major known off-site releases of plutonium from Rocky Flats, Defendants' repeated violations of proper waste management and safety practices, the health effects of plutonium, and Defendants' failure to account for more than one ton of plutonium (known as "Material Unaccounted For" or "MUF") and the doubt such massive amounts of MUF reasonably casts on "official estimates" of off-site plutonium contamination, *id*. at 1151, and his scientific methodology was reliable. *Id*.

Defendants **did not appeal** any of these *Daubert* rulings, (nor any other ruling in *Cook XIII* regarding the admissibility and reliability of Plaintiffs' proffered expert testimony).  As a result, *Cook XIII* and all other orders that Defendants failed to challenge on appeal are binding on remand under the law of the case doctrine and the related waiver doctrine.  *See, e.g. Navigato v. SJ Rests., LLC*, 463 Fed. Appx. 770, 777 (10th Cir. 2012) (issue waived when not raised in appellate briefing); *Clark v. State Farm Mut. Auto. Ins. Co*., 590 F.3d 1134, 1140 (10th Cir. 2009) ("Because they were not challenged on appeal in *Clark III*, both the case management order and the district court's denial of the motion to intervene have now become the law of the case and are binding on the parties."); *Weston v. Harmatz*, 335 F.3d 1247, 1255 (10th Cir. 2003)

("Under the law of the case doctrine, '[a] legal decision made at one stage of litigation,

unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of

the case for future stages of the same litigation, and the parties are deemed to have waived the

right to challenge that decision at a later time.'") (quoting *Concrete Works of Colo., Inc. v. City

and County of Denver*, 321 F.3d 950, 992 (10th Cir. 2003)).[8]

Plaintiffs presented abundant evidence – including expert scientific testimony admitted

pursuant to *Cook XIII*, admissions of Defendants' own experts, DOE documents, and more –

supporting the nuisance claim.  For the Court's convenience, Plaintiffs have attached as Exhibit 1

the "Statement of Facts" portion of Plaintiffs' July 7, 2009 brief submitted to the Court of

Appeals, providing pinpoint evidentiary citations.[9]  Thus, even assuming *arguendo* that the

Tenth Circuit's comment about requiring "**some** scientific evidence," 618 F.3d at 1146, were

directed to the class-wide nuisance claim (it was not, as shown above), Plaintiffs amply satisfied

any such requirement here, and Defendants have waived any argument to the contrary.[10]

---

[8] *See also Martinez v. Roscoe*, 100 F.3d 121, 123 (10th Cir. 1996) ("The issue of whether the
Regulatory Agreement can support a permanent injunction was resolved by the district court in
1993; that decision was not challenged by appeal.  Accordingly, defendants are barred by the
doctrine of law of the case from raising the issue in this appeal."); *United States v. Webb*, 98 F.3d
585, 589 (10th Cir. 1996) ("This issue was not appealed by defendant in *Webb I*; therefore, the
district court's initial ruling on the enhancement became final.  Thus, the district court did not err
in declining to address defendant's objections at the time of resentencing.").

[9] Page 12 of the excerpt cites to "SA1381," a reference to the Supplemental Appendix filed by
Plaintiffs in the Court of Appeals.  "SA1381" refers to the Court's Memorandum Opinion
Regarding Defendants' Theory of Plutonium Removal Through Real Estate Development (Doc.
No. 2206) (December 7, 2006).  Attached as Exhibit 2 is a copy for the Court's convenience.

[10] The Court has deferred the issue of recertification of the Class, but we note that the Court of
Appeals decertified the Class **solely** based on its conclusion that Plaintiffs had not been required
to meet its newly announced "threshold requirements" under the PAA.  618 F.3d at 1149.
Because the nuisance verdict can and should be reinstated, this Court can and should recertify the
Class based on the existing record, including the scientific and economic evidence of class-wide
application that this Court held satisfied *Daubert*.

II.     **A Plaintiff Who Brings a PAA Claim May Simultaneously Pursue a Freestanding State Claim Law Based on the Same Facts**

 A. **Under Diversity Jurisdiction, State Law Controls**

  As a general matter, a plaintiff may bring both federal and state claims based on the same nucleus of operative facts, and if the federal claim fails, a jury may render a verdict on the state claim.  *See, e.g., Gibbs*, 383 U.S. at 721-29 (approving the district's court exercise of pendent jurisdiction over state claims that were derived from the same common nucleus of operative facts as plaintiffs' claims under the federal Labor Management Relations Act); *Martin v. Duffie*, 463 F.2d 464, 467 (10th Cir. 1972) ("The same set of facts may give rise to violations of both the federal statute and the state common law, but the rights are not necessarily coterminous and the essential criteria are not necessarily the same."); *see also Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653 (4th Cir. 2006) ("Pursuant to § 1367(a), when a plaintiff has alleged both federal and state claims, a district court may exercise supplemental jurisdiction over the state claims if they form 'part of the same case or controversy' as the federal claim.  In this case, the Plaintiffs' state claims plainly arise from the same 'case or controversy' as the federal securities claim, for both the securities claim and the state claims arise from the same set of facts: the fraud scheme allegedly orchestrated by the defendants."); *Busey v. Bd. of County Com'rs of Shawnee*, 163 F. Supp. 2d 1291, 1294 (D. Kan. 2001) ("In the present case, all three of plaintiff's claims [federal and state] are derived from the same set of operative facts.").

  Under diversity (and pendent) jurisdiction, state law controls.  *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938).  *Erie*'s command is that, under the Rules of Decision Act, federal courts must apply state law as the substantive "rules of decision" in diversity cases.  28 U.S.C. § 1652; *see also Erie*, 304 U.S. at 78; *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 426-30 & n.6 (1996).  Under *Erie*, the "essence of diversity jurisdiction is that a federal court enforces State

law and State policy." *Angel v. Bullington*, 330 U.S. 183, 191 (1947).  A federal court's role under *Erie*, the Supreme Court has stated, is to "administer[] the state system of law in all except details related to its own conduct of business."  *Cohen v. Beneficial Indus. Loan Corp*., 337 U.S. 541, 555 (1949).  *Erie* "was premised on the theory that, in diversity cases, the rights enjoyed under local law should not vary because enforcement of those rights was sought in the federal court, rather than in the state court."  *Ragan v. Merchs. Transfer & Warehouse Co.*, 337 U.S. 530, 532 (1949).  Because "a federal court adjudicating a State-created right" is "for that purpose, in effect, only another court of the State," it cannot through its rulings "substantially affect the enforcement of the right as given by the State."  *Guar. Trust Co. v. York*, 326 U.S. 99, 108-09 (1945).

### B.    Plaintiffs' Colorado Nuisance Claim Remains

As discussed above, the existing jury verdict supports entry of this Court's judgment on Plaintiffs' nuisance claim under Colorado law and diversity jurisdiction (and/or pendent jurisdiction).  The judgment on Plaintiffs' nuisance claim can therefore be reinstated pursuant to *Erie R.R. v. Tompkins* unless the nuisance claim has been preempted.

As discussed below, while the Tenth Circuit in the appeal of this case embraced a brand new argument by Defendants and held that a **PAA claim** required proof of a "nuclear incident," the Court **did not hold** that Plaintiffs' nuisance claim under Colorado law was preempted.  Thus, the question is whether Defendants can meet their burden to demonstrate preemption.  *See Cook*, 618 F.3d at 1143 ("Because Defendants advocate preemption, they bear the burden of showing that federal and state laws conflict.").

1.      **The Tenth Circuit's Opinion**

Accepting a new argument that Defendants raised for the first time on appeal,[11] the Court of Appeals held that: "the occurrence of a nuclear incident, and thus a sufficient injury under § 2014(q), constitutes a threshold element of any **PAA claim**." *Cook*, 618 F.3d at 1139.  A "nuclear incident" is defined as "any occurrence . . . causing . . . bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material[.]" 42 U.S.C. § 2014(q).

The definition of a "nuclear incident" had not changed materially since enactment of the PAA in 1957, but the Court of Appeals, relying on the 1988 Amendments, stated that through an interlocking chain of definitions in the 1988 Amendments, proof of a "nuclear incident" had become a substantive element of a PAA claim:

> [T]he 1988 Amendments to the PAA created a federal cause of action known as a "public liability action."  A "public liability action … means any suit asserting public liability." 42 U.S.C. § 2014(hh).  In turn, "public liability" is defined as "any legal liability arising out of or resulting from a nuclear incident."  42 U.S.C. § 2014(w).

618 F.3d at 1139.  The Court held that a "threshold element" of a PAA claim was proof of one of the enumerated injuries of § 2014(q) in the manner the Tenth Circuit discussed; that the jury had

---

[11] The Court of Appeals held that Plaintiffs had "forfeited any forfeiture" argument by not sufficiently making a waiver argument on appeal.  618 F.3d at 1138-39.  Plaintiffs respectfully believe that this conclusion (like other parts of the Court's opinion) is fundamentally incorrect.  Regardless, that holding does not change the fact that Defendants had not previously raised their new "threshold PAA element" argument in over a decade of pretrial practice, or during trial, or during post-trial motion practice.

not been correctly instructed on this point; and that therefore the verdict on the PAA claim had to be set aside. *Id.* at 1142.[12]

Though the Court of Appeals stated that it "need not review the sufficiency of the evidence," it discussed what the newly announced "nuclear incident" PAA element would require by way of proof. *Id.* at 1141-42. Regarding "damage to property," the Court held that proof of plutonium contamination alone is insufficient, absent an undefined amount of additional "actual physical damage" to the property. *Id.* at 1140-41. The Court did not explain how much additional "damage" from plutonium – whether a nuclear blast crater or something less – was required.

The Tenth Circuit then discussed "loss of use" in § 2014(q). The Court compared "loss of use" to an evacuation because of massive radiation, stating that "a residential or business use may be lost due to an increased risk to health so high that no reasonable person would freely choose to live on or work at the property." *Id.* at 1141. The Court stated that, to prove a PAA claim, proof of "loss of use" was required in addition to proof of "interference with use" required under Colorado law to prove a nuisance claim, and stated that proof of "loss" of use would necessarily prove "interference" with use. *Id.* at 1145 n.20 ("On its face, the state-law 'interference with use' standard presents a lower threshold than the PAA's 'loss of use'

---

[12] The Tenth Circuit discussed, but did not decide, whether proof of a "nuclear incident" was a prerequisite to jurisdiction under § 2210(n)(2), which provides that "[w]ith respect to any public liability action arising out of or resulting from a nuclear incident, the United States district court in the district where the nuclear incident takes place . . . shall have original jurisdiction without regard to the citizenship of the parties of any party or the amount in controversy." 42 U.S.C. § 2210(n)(2). *See Cook*, 618 F.3d at 1137. Instead, the Court held that jurisdiction existed under 28 U.S.C. § 1331. *See* 618 F.3d at 1139 & n.8 (noting that Plaintiffs also had asserted diversity jurisdiction).

standard.").  As with its discussion of "damage to property," the Court ruled that the jury had not

been required to find a "loss of use."  *Id.* at 1142.[13]

The Tenth Circuit **did not hold**, however, that Plaintiffs' Colorado state nuisance claim

was preempted.  Rather, the Court of Appeals held that to prevail under a **PAA claim**, a plaintiff

must satisfy the PAA's "loss of use" requirement to prove a "nuclear incident," as well as

Colorado's requirement of an "interference with an owner's use" that is both "substantial" and

"unreasonable".  *See id.* at 1145 & n.20.[14]

### 2.     Defendants Cannot Meet Their Burden to Demonstrate Preemption

The Supreme Court has explained that there are

> two cornerstones of our pre-emption jurisprudence.  First, the
> purpose of Congress is the ultimate touchstone in every pre-
> emption case.  Second, [i]n all pre-emption cases, and particularly
> in those in which Congress has legislated . . . in a field which the
> States have traditionally occupied, . . . we start with the assumption
> that the historic police powers of the States were not to be
> superseded by the Federal Act unless that was the clear and
> manifest purpose of Congress.

*Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (citations and internal quotation marks omitted).  The

assumption against preemption "applies with greater force when the alleged conflict is in an area

traditionally occupied by the states."  *Ramsey Winch, Inc. v. Henry*, 555 F.3d 1199, 1204 (10th

Cir. 2009).  Such "traditional" areas "include[] common law tort liability."  *Coyne & Delany Co.

v. Selman*, 98 F.3d 1457, 1467 (4th Cir. 1996) (collecting cases).

There are three general forms of preemption: (1) express; (2) field; and (3) conflict.

*Devon Energy Prod. Co. v. Mosaic Potash Cardlsbad, Inc.*, 693 F.3d 1195, 1203 n.4 (10th Cir.

---

[13] An "interference" with use and enjoyment of property, of course, causes a "loss" just as if
someone blocks half your view at a movie, you have suffered a "loss" in your view, but the
Court of Appeals seemed to equate the phrase "loss of use" with a **total** loss of use of property.
[14] *See also* 618 F.3d at 1140 ("The presence of a nuclear incident is the hallmark of a public
liability action.").

2012).  In *Devon*, the Tenth Circuit distinguished "complete preemption" from "field preemption," suggesting a fourth form.  *Id*.  We address each possible form below.

### a.    Express Preemption Does Not Apply

In the appeal in this case, the Tenth Circuit stated that: "We agree with the district court that § 2014(hh) does not expressly preempt state law."  *Cook*, 618 F.3d at 1143.  The Court of Appeals did not identify any other provision of the PAA that purported to expressly preempt state law.  *See also Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 186 (1988) ("Congress was willing to accept regulatory consequences of application of state tort law to radiation hazards even though direct state regulation of safety aspects of nuclear energy was pre-empted"); *Arkansas-Platte & Gulf P'ship v. Van Waters & Rogers, Inc.*, 959 F.2d 158, 163 (10th Cir. 1992) ("The Atomic Energy Act contains no preemption provision and reserves significant authority to the states. 'Further, the enactment and legislative history [of the AEA] make clear Congress' explicit judgment that state common law damages actions for injuries caused by nuclear operations should be permitted to continue.'") (citation omitted), *vac'd on other grounds and rem'd*, 506 U.S. 910 (1992), *previous opinion adhered to*, 981 F.2d 1177 (10th Cir. 1993).

### b.    Any Argument for Field or Complete Preemption Has Been Waived

The Court of Appeals expressly noted that Defendants did not advance a field preemption argument on appeal.  *Cook*, 618 F.3d at 1143 n.16, 1144 n.19.  Nor have Defendants ever raised a complete preemption argument.  *See Cook IX*, 273 F. Supp. 2d at 1192 n.12 (noting that this action "does not involve complete preemption of state tort law"); *Cook,* 618 F.3d at 1142-44 (discussing preemption but nowhere mentioning that Defendants had argued for complete preemption).

Any field or complete preemption argument in this case is non-jurisdictional because this Court has subject matter jurisdiction under 28 U.S.C. § 1332 and pendent jurisdiction, as discussed above.  Therefore, any non-jurisdictional preemption arguments Defendants might attempt have been waived because of Defendants' failure to timely raise any such arguments on appeal.  *See Dow Chem. Corp. v. Weevil-Cide Co.*, 897 F.2d 481, 486 n.4 (10th Cir. 1990) ("non-jurisdictional issues waived earlier in the proceedings may not be asserted upon remand. . . .  A question not timely raised at a first trial may not be raised at a second trial of the same action. The fortuity that other grounds for reversal and remand exist should not revive an otherwise extinct issue.") (citations omitted); *Dueringer v. Gen. Am. Life Ins. Co.*, 842 F.2d 127, 130 (5th Cir. 1988) (pre-emption argument waived); *Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488, 1497 (9th Cir. 1986) ("[Defendant's] preemption argument therefore implicates only a choice-of-law question that is waived unless it is timely raised.").[15]

Moreover, there has been no intervening, controlling decision that would change this Court's ruling on field preemption in *Cook IX*.  And tellingly, the Tenth Circuit in *Devon* – nearly two full years after its *Cook* decision – identified the three specific areas where the Supreme Court has recognized complete preemption, but did **not** include the PAA.  *See Devon*

---

[15] *See also Saks v. Franklin Covey Co.*, 316 F.3d 337, 349-50 (2d Cir. 2003) ("ERISA prescribes the choice of law, not jurisdiction.  As a result, we find that ERISA preemption in a benefits-due action is a waivable defense."); *Wolf v. Reliance Std. Life Ins. Co.,* 71 F.3d 444, 449 (1st Cir. 1995) (same); *Fryer v. A.S.A.P. Fire & Safety Corp.*, 658 F.3d 85, 90 (1st Cir. 2011) ("Here, the preemption defense is not jurisdictional because a successful preemption defense under USERRA would dictate only a change in law, not a change in forum. . . . As the preemption defense under USERRA is not jurisdictional, and, because A.S.A.P. failed to raise the issue of preemption before the district court, its preemption claim has been waived.") (footnote omitted); *Violette v. Smith & Nephew Dyonics,* 62 F.3d 8, 11-12 (1st Cir. 1995) ("Where . . . the question is whether state tort or federal statutory law controls, preemption is not jurisdictional and is subject to the ordinary rules of appellate adjudication, including timely presentment and waiver. This case presents a 'choice-of-law' question and thus falls squarely within the latter category. Preemption is not here jurisdictional, and was waived when not presented in the district court.") (footnote and citations omitted).

*Energy Prod. Co.*, 693 F.3d at 1203 n.4, 1204-05 (distinguishing field from complete preemption, and noting that "'[c]omplete preemption is a rare doctrine'" that the Supreme Court has recognized in only three circumstances: (1) § 301 of the Labor Management Relations Act of 1947; (2) § 502 of the Employee Retirement Income Security Act of 1974; and (3) "actions for usury against national banks under the National Bank Act.").

**c.**      **Conflict Preemption Does Not Apply**

Nor can Defendants demonstrate conflict preemption.[16]  "State law is preempted due to its conflict with federal law 'where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  *Cook*, 618 F.3d at 1143 (quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990)) (citation and quotation omitted).  Defendants cannot demonstrate either condition.

First, it is plainly possible for Defendants to comply with both federal and state law.  *See Cook IX*, 273 F. Supp. 2d at 1192-93.  *See Wyeth*, 555 U.S. at 573 ("Impossibility pre-emption is a demanding defense.").

In applying "purposes and objectives" conflict preemption, a court should proceed with great caution before holding state law preempted because of the "vague and 'potentially boundless'" nature of the doctrine.  *See Wyeth*, 555 U.S. at 587 (Thomas, J., concurring in the judgment) (citing *Geier v. American Honda Motor Co.*, 529 U.S. 861, 907 (2000) (Stevens, J.,

---

[16] Defendants previously advanced a conflict preemption argument that "various letters, handbooks, manuals, memos, and Department of Energy Orders" regarding plutonium preempted state standards, but the Tenth Circuit stated "it is not clear that any of the standards mentioned in these documents have the force of law or would have controlled the sort of off-site contamination that occurred here."  618 F.3d at 1144 n.18.  The Court generously gave Defendants another chance to identify "federal statutes, regulations or other binding safety standards that controlled their conduct with respect to the class properties during the relevant time" and that supported their prior "conflict" preemption argument which they advanced on appeal.  *Id.* at 1144.

20

dissenting)).  Indeed, as discussed below, the Court should avoid interpreting the PAA as

preempting Colorado state nuisance law, because such an interpretation would render at least

portions of the PAA unconstitutional.  *See Almendarez-Torres v. United States*, 523 U.S. 224,

237-38 (1998) ("'A statute must be construed, if fairly possible, so as to avoid not only the

conclusion that it is unconstitutional but also grave doubts upon that score.'") (citation omitted).

The "purposes and objectives" of the PAA and the 1988 Amendments can be described

as:[17]

(1)  Protecting the public and ensuring compensation for "**any** form of damage arising

from the special dangerous properties of the material used in the atomic energy program."  *See* S.

Rep. 296, *reprinted in* 1957 U.S.C.C.A.N. 1803, 1817; *id*. at 1816  ("The **primary concern** of

the Federal Government is with the protection to the people who might suffer damages from the

new atomic energy industry.") (Exhibit 3); *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 268

(1984) ("Congress has **never** expressed an intention to allow a nuclear licensee to avoid paying

for **any** injury it causes.").

(2)  Minimizing interference with state law.  *See* S. Rep. No. 1605, *reprinted in* 1966

U.S.C.C.A.N. 3201, 3206 ("Since its enactment by Congress in 1957 one of the **cardinal**

**attributes of the Price-Anderson Act has been its minimal interference with State law**.")

(Exhibit 4).  The Supreme Court in *Silkwood* held that Price-Anderson does not preempt: (a)

"'State law,'" 464 U.S. at 252 (quoting S. Rep. No. 296, 1957 U.S.C.C.A.N., pp. 1803, 1810); or

(b) the right of "a state [to] . . . award damages based on its own law of liability" including "state

law of negligence or strict liability," *id*. at 256; or (c) "traditional principles of state tort law," *id*.

---

[17] *See also Cook IX,* 273 F. Supp. 2d at 1182.

at 255.[18]  *See Cook IX*, 273 F. Supp. 2d at 1181-97 (analyzing legislative history of the PAA and the *Silkwood* decisions).

In connection with a prior lawsuit by off-site landowners addressing some of the very same plutonium releases from Rocky Flats at issue here, the Tenth Circuit rejected the notion that a nuisance claim under Colorado law had been preempted.  *See McKay v. U.S. et al.*, 703 F.2d 464 (10th Cir. 1983).  The Tenth Circuit held that federal regulation of atomic energy did not evince an intent by Congress "that persons injured through negligence or wantonness are henceforth to be deprived of a remedy."  *Id*. at 468.  Citing to the Tenth Circuit's own *Silkwood* decision, which had held that compensatory damages under state law were not preempted, the Court in *McKay* stated that "[t]here are no legally significant facts that distinguish the claims in our case from those upheld in *Silkwood* or that justify dismissing our plaintiffs' compensatory damage claims."  703 F.2d at 469 (citing *Silkwood v. Kerr-McGee Corp.*, 667 F.2d 908 (10th Cir. 1981)).  The Supreme Court, of course, went even further than the Tenth Circuit in *Silkwood*, and held that not only compensatory but also punitive damages were not preempted.

The 1988 Amendments were aimed primarily at (1) creating a mechanism for potentially consolidating cases arising from the same "nuclear incident" in one federal court, in light of the multiplicity of suits filed after Three Mile Island; and (2) responding to the Supreme Court's *Silkwood* decision by prospectively prohibiting the award of punitive damages in PAA claim cases involving nuclear incidents.  *See* 42 U.S.C. § 2210(s) (relating to punitive damages); *Cook IX*, 273 F. Supp. 2d at 1187.

---

[18] *Silkwood* was brought under diversity jurisdiction.  *Silkwood v. Kerr-McGee Corp.*, 667 F.2d 908, 912 (10th Cir. 1981) (case was on appeal "after jury trial in a diversity suit. . . . based upon common law tort principles under Oklahoma law."), *rev'd and rem'd*, 464 U.S. 238 (1984).

In previously discussing the effect of the 1988 Amendments on state law, this Court in *Cook IX* praised the "thoughtful concurrence" of Judge Scirica in *In re TMI Litigation Cases Consolidated II*, 940 F.2d 832 (3d Cir. 1991). *Cook IX*, 273 F. Supp. 2d at 1198. Judge Scirica wrote that "a finding that a particular claim does not fall within the definition of 'public liability' **does not preclude** the plaintiff from pursuing that claim in state court under a different name." *TMI*, 940 F.2d at 863 (Scirica, J. concurring). He concluded that "I believe state law remains 'an **independent source** of private rights.'" 940 F.2d at 864 (citation omitted). *See also* H.R. Rep. No. 104(I) at 20 (1987) (the "policy of only interfering with state law to the minimum extent necessary . . . has been embodied in the Price-Anderson Act for the last 30 years."). [19]

(3)  Protecting the nuclear industry from "unlimited liability" in the event of a catastrophic nuclear incident. *See* S. Rep. No. 296 at 1804-05 (discussing "worse imaginable case" of $7 billion in damages (in 1957 dollars) from "contamination of land with fission products" – equivalent to approximately $57.6 billion today). [20]

(4)  Permitting (though not requiring) all suits relating to a "nuclear incident" to be consolidated in one federal court. *See Cook IX*, 273 F. Supp. 2d at 1187; S. Rep. No. 100-218 (1987), *reprinted in* 1988 U.S.C.C.A.N. 1476, 1488 (Exhibit 6).

Permitting Plaintiffs to recover here on their proven Colorado nuisance claim serves and furthers these purposes and objectives, on balance, far better than would a holding that Plaintiffs' proven state nuisance claim is preempted.

[19] *See* copy attached as Exhibit 5. *See also* John F. McNett, *Nuclear Indemnity for Government Contractors under the Price-Anderson Act: 1988 Amendments*, 19 PUB. CONT. L. J. 1 (Fall 1989). Mr. McNett was counsel for Rockwell and former assistant chief counsel for DOE. In analyzing the 1988 Amendments, he wrote that "it is still accurate to state that, 'Since its enactment by Congress in 1957, one of the cardinal attributes of the Price-Anderson Act has been its minimal interference with state law.'" *Id.* at 7 (citation omitted).
[20] *See* Bureau of Labor Statistics, CPI Inflation Calculator at http://www.bls.gov/data/inflation_calculator.htm.

(1) <u>Protecting the public</u>.  Obviously, permitting Plaintiffs' proven nuisance claim to proceed under state law would advance the PAA's "primary concern" of making sure those harmed by the dangerous properties of plutonium and other radioactive materials are made whole, while a finding of preemption would completely frustrate this "primary concern." Although the Tenth Circuit did not rule on the sufficiency of Plaintiffs' evidence to meet its newly announced threshold PAA requirements of "damage to property" and/or "loss of use," Defendants no doubt will use the Court of Appeals' "loss of use" discussion to argue that Plaintiffs cannot sustain a PAA claim absent proof of sufficient plutonium contamination to trigger a mass evacuation, *i.e.*, a total "loss of use."  Plaintiffs, however, proved an interference with the use and enjoyment of their properties that was both "substantial" and "unreasonable" resulting from class-wide plutonium contamination (findings that were undisturbed on appeal). *See* Jury Verdict Form (Doc. No. 2117), pp. 4-7.  According to Defendants, however, Plaintiffs have no federal remedy for such a proven substantial and unreasonable interference with the use and enjoyment of their properties.  This weighs strongly against preemption.  *See generally Abbot v. American Cyanamid Co.*, 844 F.2d 1108, 1112 (4th Cir. 1988) ("Defendant has several canons of interpretation and presumptions set against it. When Congress does not expressly state its intent, there is a presumption against preemption. The presumption is even stronger with state or local regulation of matters related to health and safety. . . . **The presumption against preemption is even stronger against preemption of state remedies, like tort recoveries, when no federal remedy exists**.") (internal quotation, citations, and footnote omitted).

Defendants no doubt will argue that the PAA provides a "federal remedy" in some circumstances – but under the Tenth Circuit's ruling in this case, the PAA applies exclusively to "nuclear incidents."  According to Defendants, therefore, there is **no federal remedy** for the

24

Class here – none.  But denying Plaintiffs any right of recovery whatsoever for a proven

nuisance resulting from widespread plutonium contamination would fly in the face of the PAA's

promise to protect the public; would likely be unconstitutional, as discussed below; and would

violate the Supreme Court's pronouncement "that in diversity cases, the rights enjoyed under

local law should not vary because enforcement of those rights was sought in federal court, rather

than in the State court."  *Ragan*, 337 U.S. at 532.

     (2)  <u>Minimizing interference with state law</u>.  Recognizing Plaintiffs' right to proceed

under Colorado state law obviously serves this purpose, while a finding of preemption would

utterly frustrate it.  Indeed, a holding that the PAA's "**loss** of use" language preempts any state

law that permits recovery for nuisance upon proof of "**interference** with use" would essentially

wipe out the common and statutory nuisance law of all 50 states.  Attached as Exhibit 7 is a 50-

state survey of the law of nuisance currently, and as of 1987 (just before the 1988 PAA

Amendments).  **No** state requires today, or required before the 1988 PAA Amendments, a total

"loss of use" to recover for a nuisance.  **All** states permit recovery for **interference** with use and

enjoyment.  Indeed, "[t]he **essence** of a private nuisance is an **interference** with the use and

enjoyment of land."  W. Page Keeton, et al., *Prosser and Keeton on Torts* 619 (5th ed. 1984).

*See id*. at 617 (tracing roots of a claim for nuisance).

     As the late Dean Prosser explained:

> *Nuisance* is a French word which means nothing more than harm.
> It entered the English law at a very early date as the name of a tort
> against land.   A nuisance, whatever the fascinating variety of
> orthography attached to it, was an **interference** with the use or
> enjoyment of land, or with a right of easement or servitude over
> the land.

*See* William L. Prosser, *Private Action for Public Nuisance*, 52 Vᴀ. L. Rᴇᴠ. 997, 997 (1966)

(italics in original) (footnotes omitted).

A finding that Congress, in passing the 1988 Amendments, intended to preempt state nuisance claims would mean that, despite decades of "minimal interference" with state law, Congress did a complete about-face in 1988 and intended to wipe out the entire corpus of state nuisance law through a few definitional subsections but without expressly saying so and without leaving any trace of such an intent in the legislative history.  That is simply not credible.  *Cf. Silkwood*, 464 U.S. at 251 ("It is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct."); *Cook IX*, 273 F. Supp. 2d at 1192 n.12 ("[I]t is 'perfectly rational for Congress not to pre-empt [state] common law claims, which . . . perform an important remedial role in compensating accident victims.'") (quoting *Sprietsma v. Mercury Marine*, 537 U.S. 51, 64 (2002)).  *See also California v. ARC Am. Corp.*, 490 U.S. 93, 105 (1989) ("Ordinarily, state causes of action are not pre-empted solely because they impose liability over and above that authorized by federal law[.]") (citing *Silkwood*, 464 U.S. at 257-58).

(3)  Protecting the nuclear industry from "unlimited liability" in the event of a nuclear incident.  A finding that Plaintiffs' Colorado nuisance claim is not preempted would not disturb the limitations on liability provided by the PAA for nuclear incidents.  The nuclear industry would remain protected from unlimited liability for all severe releases of radioactive materials, because such severe releases – causing forced evacuations ("loss of use"), or physical deformity to the land such as blast craters or the like ("damage to property"), or "bodily injury, sickness, disease, or death" – would all qualify as "nuclear incidents" within the meaning of the PAA, as interpreted by the Court of Appeals.

It is only lesser releases that fall below the "nuclear incident" threshold the Tenth Circuit established (at Defendants' own belated urging) that would be at issue.  By definition, such non-

"nuclear incident" releases would *not* be catastrophic and would *not* result in "unlimited liability." The jury's compensatory award here, for example, of $177 million[21] is far below the current PAA liability cap (applicable to liability from nuclear incidents) of approximately $12 billion[22], and but a tiny fraction of the $57 billion "worse case" damage against which Congress wanted to protect the nuclear industry when it enacted the PAA (in 2012 dollars).

Section 2210 of the PAA "is focused on providing nuclear licensees and contractors with protection from public liability arising from nuclear incidents, but it does not exclude or bar other types of harms from reparation by state or federal courts." *Cotroneo v. Shaw Envtl. & Infrastructure*, 639 F.3d 186, 204 (5th Cir. 2011), *cert. denied*, 133 S. Ct. 22 (U.S. June 25, 2012) (Dennis, J., concurring in part, dissenting in part). As Judge Dennis stated: "Nothing in § 2210 immunizes licensees and contractors from liability for other kinds of harms or prevents them from providing their own self-insurance or private insurance against such liability." *Id*. at 201.[23]

(4) <u>Mechanism for Consolidation.</u> Even where nuclear incidents are involved, the PAA does not *require* consolidation in federal court. *See* 42 U.S.C. § 2210(n)(2) (providing for concurrent jurisdiction in state court).

---

[21] This is exclusive of prejudgment interest, which simply reflects the two-decade delay in recovery and should not alter the analysis.

[22] *See* Nuclear Energy Institute, *Insurance: Price-Anderson Act Provides Effective Liability Insurance at No Cost to the Public*, available at http://www.nei.org/corporatesite/media/filefolder/Price_Anderson_Act_Sept_2012.pdf (attached as Exhibit 8).

[23] The Boeing Company (Rockwell) reported total revenues of $68.735 billion and gross profits of $12.868 billion in 2011. The Boeing Company 2011 10-K (filed Feb. 9, 2012), available at http://www.boeing.com/bcc/archived_filings.html, pages 18, 19, 49, 54, 105, 108. The Dow Chemical Company reported net sales of $59.985 billion in 2011. The Dow Chemical Company 2011 10-K (filed Feb. 15, 2012), available at http://www.dow.com/investors/reports/index.htm, pages 26, 76, 150, 151, 152. Plaintiffs disagree with Judge Dennis' view of the PAA as involving "complete preemption," an argument Defendants have waived and which would contradict *Devon*.

27

Furthermore, the PAA is by no means the sole method of consolidating actions arising out of accidents or wrongdoing at a nuclear facility.  Most notably, the Class Action Fairness Act ("CAFA"), passed after the 1988 PAA amendments, extends diversity jurisdiction to any class action seeking over $5 million in damages, so long as there is minimal diversity, 28 U.S.C. § 1332(d)(2); allows for consolidation of "mass actions" that are not class actions but that involve common questions of law or fact and 100 or more plaintiffs, § 1332(d)(11); and provides for removal of class actions filed in state courts, 28 U.S.C. § 1453.  Numerous other consolidation tools are available, including consolidation under the multi-district litigation statute, 28 U.S.C. § 1407, consolidation within a district under Fed. R. Civ. P. 42, and plaintiff or defendant-initiated motions to certify a class under Rule 23 or its state law equivalents.  *See In re Section 1031 Exch. Litig.*, 716 F. Supp. 2d 415, 420 (D.S.C. 2010) (claims against financial services companies alleging breach of fiduciary duty and other claims removed under CAFA and then consolidated); *Gayvont v. Davol, Inc.*, MDL 07-1842ML, 2008 WL 2433258, at *1 (D.R.I. Feb. 26, 2008) (product liability actions involving medical implants removed under CAFA and consolidated); *In re Prempro Prods. Liab. Litig.*, MDL 4:03CV1507-WRW, 4:06CV00476, 2007 WL 641416, at *1 (E.D. Ark. Feb. 27, 2007) (product liability cases involving prescription drug Prempro removed under CAFA and  consolidated); *Waitt v. Merck & Co., Inc.*, No. C05-0759L, 2005 WL 1799740, at *1 (W.D. Wash. July 27, 2005) (case removed under CAFA and consolidated with other product liability cases involving prescription drug Vioxx).

In sum, reinstatement of Plaintiffs' proven state-law nuisance claim best serves and harmonizes the multiple objectives of Congress in enacting and amending the PAA.  As noted by Justice Blackmun in *Silkwood* – in a dissent in which he agreed with the majority that the award of compensatory damages under state law was not preempted – "[I]t is **inconceivable that**

**Congress intended to leave victims with no remedy at all.**" *Silkwood*, 464 U.S. at 263 (Blackmun, J., dissenting) (footnote omitted).  The majority agreed: "Congress . . . disclaimed any interest in promoting the development and utilization of atomic energy by means that fail to provide adequate remedies for those who are injured by exposure to hazardous nuclear materials." *Id.* at 257.

      C.    **A Finding That the PAA Preempts State Nuisance Law**
                  **Would Violate Due Process**

Interpreting the PAA to extinguish Plaintiffs' proven Colorado nuisance claim, while providing no replacement remedy for an "interference" with use and enjoyment of property found to be both "substantial" and "unreasonable," would likely render the PAA unconstitutional under the Due Process and Takings clauses of the Fifth Amendment.  The deprivation of Plaintiffs' rights under such a holding would be extreme.  Despite having proved a substantial and unreasonable interference with their use and enjoyment of their property, Plaintiffs could be left with no remedy at all.

In *Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59 (1978), the Court upheld the liability cap of the PAA against a due process challenge.  In doing so, however, the Court expressly left open whether a "legislatively enacted compensation scheme" must "provide a reasonable substitute remedy" if the scheme abrogates common law rights.  *Id.* at 88.  Significantly, the Supreme Court found that the PAA at that time had, in fact, provided a substitute remedy.  *Id.  See Ileto v. Glock, Inc.*, 565 F.3d 1126, 1152 (9th Cir. 2009) ("[T]he availability and effectiveness of alternative remedies was a factor [in *Duke Power*] in determining whether Congress had acted rationally or not.  Thus, *Duke Power* applied a modified rational basis test[.]") (Berzon, J, concurring in part and dissenting in part).

As Judge Berzon noted: "the Supreme Court as a whole and individual Justices of the Court have repeatedly recognized that '[q]uite serious constitutional questions might be raised if a legislature attempted to abolish certain categories of common-law rights in some general way.'" *Id.* at 1150 (quoting *Pruneyard Shopping Ctr. v. Robins*, 447 U.S. 74, 93-94 (1980) (Marshall, J., concurring)). *See also New York Cent. R. Co. v. White*, 243 U.S. 188, 201 (1917) (raising but not deciding whether "a state might, without violence to the constitutional guaranty of 'due process of law,' suddenly set aside all common-law rules respecting liability as between employer and employee, without providing a reasonably just substitute."); *id.* (noting that Workmen's Compensation Law under review provided that employees were "entitled to moderate compensation in **all** cases of injury.").

The Supreme Court also declined to consider the constitutional question in *Fein v. Permanente Medical Group*, where it dismissed certiorari over a dissent by Justice White:

> Whether due process requires a legislatively enacted compensation scheme to be a quid pro quo for the common-law or state-law remedy it replaces, and if so, how adequate it must be, ... appears to be an issue unresolved by this Court, and one which is dividing the appellate and highest courts of several States.

474 U.S. 892, 894-95 (1985) (White, J., dissenting).  *See also Ileto*, 565 F.3d at 1150 ("To date, the Supreme Court has never decided what level of constitutional scrutiny applies to a statute that abrogates a common-law cause of action and leaves no alternative remedy available.") (Benzon, J., concurring in part and dissenting in part).

Indeed, the concern that Congress might seek to nullify traditional state common law has been invoked by courts warning of federal over-reaching into the traditional domain of the states. *See, e.g.*, *Brzonkala v. Va. Polytechnic Inst. & State Univ.*, 169 F.3d 820, 888 (4th Cir. 1999) (holding Violence Against Women Act was not a constitutional exercise of Congress' power:

"Thus, if section 13981 were constitutional under Section 5, then presumably the federal government could adopt and enforce a federal divorce and domestic relations code.  And federal preemption, or even occupation, of other substantive fields of law, such as tort and contract law, would soon follow."), *aff'd sub nom. United States v. Morrison*, 529 U.S. 598 (2000).

A holding that the PAA preempts non-nuclear-incident state-law claims would present a much more extreme situation than the Supreme Court faced in *Duke Power*: it would nullify the nuisance law of all 50 states and provide no substitute whatsoever for a substantial and unreasonable interference with use and enjoyment of property.  Such a result would be "arbitrary and irrational" and would violate due process and be an unconstitutional taking.  *Cf. Duke Power*, 438 U.S. at 83 (upholding PAA's liability cap).  *See Ileto*, 565 F.3d at 1153 ("an individual does have a weighty property interest in having *some* legal means available to redress an injury that would have been compensable at common law.") (Berzon, J., concurring in part and dissenting in part) (emphasis in original); *In re Aircrash in Bali, Indonesia*, 684 F.2d 1301, 1312 (9th Cir. 1982).

The doctrine of constitutional avoidance counsels that this Court should avoid so construing the PAA.  *See Almendarez-Torres v. United States*, 523 U.S. 224, 237-38 (1998) ("'A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score.'") (quoting *United States v. Jin Fuey Moy*, 241 U.S. 394, 401 (1916)); *Gregory v. Ashcroft*, 501 U.S. 452, 464 (1991).  The doctrine is "a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious

constitutional doubts." *Clark v. Suarez Martinez*, 543 U.S. 371, 381 (2005).[24]  The Court should

not embark on the constitutional analysis absent a "clear expression of an affirmative intention of

Congress" to create the constitutionally questionable result.  *N.L.R.B. v. Catholic Bishop of Chi.*,

440 U.S. 490, 504 (1979).  *See also Ileto*, 565 F.3d at 1153 (Berzon, J., concurring in part and

dissenting in part) ("For purposes of the avoidance canon, it is sufficient to determine that a

serious constitutional question exists[.]").

      A finding that Plaintiffs' proven Colorado nuisance claim is preempted – and that the

PAA has provided no substitute remedy for a substantial and unreasonable interference with use

and enjoyment of property – would likely render the PAA unconstitutional, and certainly

implicates grave constitutional concerns, and therefore that reading should be avoided.  Plaintiffs

urge the Court not to wade into this constitutional quandary but instead, to uphold the far more

reasonable interpretation of the PAA, based on a plain reading of its text and legislative history,

that the PAA does not preempt state tort claims falling outside its express scope.

**III.**    <u>**Conclusion**</u>

      For the reasons stated above, and based on the record in this case, Plaintiffs respectfully

submit that the answer to both of the Court's questions is "Yes."

Dated:  January 9, 2013              Respectfully submitted,

                                       */s/ David F. Sorensen*
                                       Merrill G. Davidoff
                                       David F. Sorensen
                                       BERGER &MONTAGUE, P.C.
                                       1622 Locust Street
                                       Philadelphia, PA 19103
                                       (215) 875-3000

---

[24] Plaintiffs do not concede that interpreting the PAA as preempting Plaintiffs' proven Colorado nuisance claim is "plausible."  But even if it were, *arguendo*, the Court should avoid interpreting the PAA in a way that, at a minimum, casts grave doubt on its constitutionality.

Gary B. Blum
Steven W. Kelly
SILVER & DeBOSKEY, P.C.
1801 York Street
Denver, CO 80206
(303) 399-3000

Louise M. Roselle
Paul M. DeMarco
Markovits, Stock & De Marco, LLC
119 E. Court Street, Suite 530
Cincinnati, OH 45202
(513) 651-3700

Attorneys for Plaintiffs and the Class

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 9th day of January, 2013, he caused the foregoing

submission to be served via the Court's ECF system on all participating counsel.

_/s/ David F. Sorensen_
David F. Sorensen
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000