# EXHIBIT 1

Nos. 08-1224, 08-1226, 08-1239

# United States Court of Appeals for the Tenth Circuit

MERILYN COOK; LORREN BABB; GERTRUDE BABB; RICHARD BARTLETT; SALLY BARTLETT; WILLIAM SCHIERKOLK, JR.; AND DELORES SCHIERKOLK, For Themselves and on Behalf of the Prospective Damages Subclass Of the Property Class Certified by the District Court,

*Plaintiffs-Appellees-Cross-Appellants,*

v.

ROCKWELL INTERNATIONAL CORPORATION AND THE DOW CHEMICAL COMPANY,

*Defendants-Appellants-Cross-Appellees.*

On Appeal from the United States District Court
For the District of Colorado (Kane, J.)
Case No. 1:90-cv-00181-JLK

## PRINCIPAL AND RESPONSE BRIEF OF PLAINTIFFS-APPELLEES-CROSS-APPELLANTS

| | |
|---|---|
| Gary B. Blum | Merrill G. Davidoff |
| Steven W. Kelly | Peter Nordberg |
| SILVER & DEBOSKEY, P.C. | David F. Sorensen |
| 1801 York Street | BERGER & MONTAGUE, P.C. |
| Denver, CO 80206 | 1622 Locust Street |
| (303) 399-3000 | Philadelphia, PA 19103 |
| | (215) 875-3000 |

*Counsel for Plaintiffs-Appellees-Cross-Appellants*

[*Names of additional counsel appear on the signature page.*]

**ORAL ARGUMENT REQUESTED**

July 7, 2009

damages: $110.8 million against Dow, and $89.4 million against Rockwell. *See* A1606-35 (completed verdict form).

Following extensive post-trial briefing, the district court denied motions by defendants for judgment as a matter of law, new trial, and remittitur, and granted plaintiffs' motion for entry of judgment. *Cook XIV*, 564 F. Supp. 2d 1189. These appeals followed.

## STATEMENT OF FACTS

Rocky Flats was located just 16 miles northwest of downtown Denver. From 1952 until 1989, when it was shuttered after an unprecedented FBI raid, Rocky Flats made nuclear bomb parts, handling and processing numerous radioactive materials – primarily plutonium – and hazardous non-radioactive substances. P-1279 at 2-8 (DOE report identifying hazardous substances used at Rocky Flats); P-1609 at 2 ("Operations at the Rocky Flats Plant are inherently dangerous because they involve using a wide variety of toxic, hazardous, and radioactive material.") (GAO report). The site experiences frequent, strong winds moving south-southeast off the plant toward Denver. P-149A (AEC study of plutonium contamination from Rocky Flats). The plant was operated from 1952-75 by Dow, and from 1975-89, by Rockwell, under contracts with DOE. P-1049, P-606, P-1625 (contracts). DOE "owned [the] site," however, and conducted "regular audits and assessments." Tr. 7751, 7809 (Weston).

Defendants released plutonium into the off-site environment the entire time they operated the plant, from 1952-89. Tr. 3629, 3678 (Goble). Plutonium is a man-made, radioactive metallic element that, as DOE has acknowledged, "can be extremely dangerous, even in tiny quantities, if it is inhaled," and "[t]herefore, extraordinary precautions are required when handling it." P-1339 at ID06065, 72, 93 (DOE 1995). Even "[a]t lower doses, radiation can damage DNA, sometimes leading to cancer or genetic mutations." *Id.* at ID06092; Tr. 5693 ("at low doses, radiation can cause cancer and it can cause genetic damage") (Wing); Tr. 5309 ("prevailing scientific opinion" is that radiation can cause cancer "even at very low doses.") (Cochran). One particle, one atom, of plutonium, if inhaled, can cause cancer. Tr. 3639 (Goble), 5743-44 (Wing). Plutonium tends to "concentrate in the sensitive organs of the body, the lungs, the liver and the bones." Tr. 3642-43 (Goble).

Plutonium is not only "one of the most toxic elements known to man," it can spontaneously catch fire. P-1339 at ID06093; P-1402 at 079789. Plutonium has a radioactive half-life of approximately 24,000 years, meaning that even with radioactive decay, one-half of any amount of plutonium will remain after 24,000 years. P-338 at US3086851; Tr. 3632-35 (Goble); P-1351 (graphics accompanying Goble's testimony).

As Dow admitted, once soil becomes contaminated with plutonium, "*it is a physical impossibility to remove it all.*" P-1118 at 000841. Plutonium in soil can be

resuspended into the air by wind, and can then be inhaled. Tr. 3672-73 (Goble); Tr. 3942 (Smallwood); Tr. 4657-58 (Biggs); P-533 at EML01005. Once inhaled, "[p]lutonium is retained in the body for a long period of time" and exposes human tissue to radiation continuously. Tr. 8364, 8448 (defendants' expert, Till). *See also* P-1339 at ID06092 (plutonium emits alpha particle radiation and "once an alpha emitter is in living tissue, it can cause substantial damage").

The causal link between radiation exposure and cancer was known by the 1930s. Tr. 3640 (Goble). By 1950 – before Rocky Flats opened – "[s]cientists [had] discard[ed] the idea of a 'maximum permissible exposure,' recognizing that any amount of radiation may be dangerous." P-1339 at ID06091 (DOE report); Tr. 3653 (Goble); Tr. 5287 (Cochran). For this reason – in 1950 – "[r]adiation protection scientists recommend[ed] that exposure be 'as low as reasonably achievable.'" P-1339 at ID06091. This is known as the "ALARA" requirement. Tr. 5287-88 (Cochran). No federal standards relating to purported "permissible" amounts of plutonium in soil have ever been promulgated. Tr. 7549-50, 7590, 7644 (defendants' expert, Frazier).

Dow knew – when Rocky Flats opened in 1952 – that the plant site was "wholly unsuitable" for treating radioactive hazardous waste, because the site was "unreasonably small" and "the drainage and direction of the prevailing wind is toward cultivated land on which food is produced for human consumption." P-281 at

-11-

00008416 (1952 Dow letter). Dow knew that radioactive waste – if kept on-site – should be placed inside "sealed containers within a waterproof reinforced concrete structure" under a roof to "prevent the leaching of the radioactivity from the waste." P-281 at 00008418.

In short, when Rocky Flats opened in 1952, Dow *already knew* that fundamental safety principles required it to handle plutonium with extreme care; to always comply with ALARA; and to safeguard radioactive waste inside waterproof, steel-and-concrete structures protected from wind and rain. Obviously, defendants were required to keep track of all plutonium at the plant.

The evidence showed that defendants repeatedly and recklessly violated all these fundamental safety principles and responsibilities, and contaminated the entire Class Area with plutonium, as documented by AEC and Colorado scientists, and other researchers. SA1381, 1386-87 (district court opinion reviewing evidence at trial showing plutonium contamination "throughout the Class area and beyond" and finding that "this evidence was sufficient for a reasonable jury to find for Plaintiffs on their trespass claims."). Defendants repeatedly admitted that the entire Class Area was contaminated with plutonium. SA1382-83. Defendants' expert agrees that

defendants caused those living in the Class Area to be exposed to plutonium. Tr. 8368-71 (Till) & PG-1014.[2]

Although defendants knew that Rocky Flats was "wholly unsuitable" for hazardous waste, a 1992 DOE study identified 178 hazardous waste sites at the plant. P-1279 at ES-2. As DOE concluded, "[o]ften, releases were detected long after they had started" and defendants had done little or nothing to record the "fates" of much of the waste. P-1279 at 3-7 to 3-8; *see also* PG-026A (map of major waste sites); P-512 (GAO report); P-189 (transcript of plant meeting); Tr. 1185-91 (Timothy Holeman, aide to then-Governor Romer).

A particularly egregious waste site was known as the "903 Area," later the "903 Pad." Dow put *thousands* of drums of plutonium-contaminated waste outside, unprotected, for up to *ten years*. P-223 (Dow document stating that more than 5000 drums of waste were placed outside from 1958 to 1968); P-63 at 91180-83; P-64 at 074879-80, 074882-97, 074960-64; P-1216 (photograph), P-1309 at 000326-329; P-1316 (photograph); P-1067 & *id.* at 19-25 (photographs); P-1082. By 1959, Dow *knew* plutonium was leaking from these drums. P-1309 at 000327; P-64 at 074889.

---

[2] Defense expert John Till also led the allegedly "independent" re-assessment of releases and exposures from Rocky Flats by Radiological Assessments Corporation ("RAC"). RAC has been paid to evaluate several other DOE sites. Tr. 8388. Till is RAC's sole owner, and he runs it out of his house. Tr. 8171, 8384. When Till testified, RAC's only contract was with Kirkland & Ellis, defendants' counsel. Tr. 8401-02.

By 1962, Dow knew that "50-60 per cent of these drums [were] badly corroded"; several had "already spilled out on the ground" and "[u]nless these materials are disposed of in the very near future a serious contamination problem will develop." P-64 at 074928. Yet Dow for *years* did virtually nothing. *E.g.*, P-338 at US3086818.

After finally removing the drums, Dow left the plutonium-saturated, outdoor site unprotected and exposed for another year, despite knowing that plutonium would be blown off-site. P-63 at 91182-83 (Dow document stating Dow personnel were "*fully aware* of the potential for materials to blow off plantsite" from the 903 Area, but upper Dow management "was not excited enough about it to at least have some gravel brought in and put down."). As one defense witness testified: "you folks who live here understand what these winters are like, particularly when you get high winds." Tr. 7751 (Weston).

The 903 Area represents an "egregious" and "remarkable example of an irresponsible practice." Tr. 3025-40, 3043-57, 3060-66, 3072-76 (Budnitz) & PG-569, PG-502. Indeed, the 903 Area is "among the worst . . . if not the worst" example of reckless handling of radioactive waste among all DOE nuclear sites nationwide, "because it went on for so long." Tr. 3076 (Budnitz). Plutonium released from the 903 Area contaminated, and remains throughout, the Class Area. *E.g.*, P-149A; Tr. 3159-63 (Budnitz) & PG-613, PG-611. Budnitz is a respected physicist who managed DOE and NRC facilities and research groups in the past, and was a senior

manager at the DOE Lawrence Livermore Laboratory at the time of his testimony. P-1202.

Rocky Flats was also plagued by plutonium fires. *E.g.,* P-321 (31 reported plutonium fires in one three-year period). Huge plutonium fires occurred in 1957 and 1969. P-1290 (AEC report on 1957 plutonium fire); P-23 (Dow report on 1957 fire); P-1495 at 4-7 (photographs of 1957 fire damage); P-1024 to P-1029 (multi-volume AEC report on 1969 fire); Tr. 1560-76 (Ray, discussing P-1219, photographs of 1969 fire damage). Dow's conduct – including packing too much plutonium into one building, and using flammable materials near plutonium (which can spontaneously catch fire) – contributed to the severity of the 1957 fire. P-1290 at 17-18, 23; P-23.

The investigation of the 1957 fire led to recommended safety improvements, *see, e.g.,* P-1290 at 25-27, but Dow failed to implement most of them, and in 1969, another major plutonium fire occurred. Tr. 3168-3209 (Budnitz); PG-503, PG-504, PG-505, PG-506, PG-507A2. The AEC concluded that the plutonium building where the 1969 fire occurred "did not meet even the minimum AEC fire safety standards." P-1027 at 1; Tr. 3191-92; P-1029 at 1; Tr. 3201-02. Unbeknownst to Colorado residents, the 1969 plutonium fire was nearly a Chernobyl-like nuclear catastrophe – a result averted mostly through sheer luck and the "heroic efforts" of firefighters. P-1027 at 2; Tr. 3192-96.

-15-

Both the 1957 and 1969 fires (like the 903 Area) resulted in off-site plutonium releases,[3] but both times, fire cut electricity to the plutonium air monitors, resulting in great uncertainties about quantities released. Tr. 3178-79, 3204–07.

Dow was fired and Rockwell took over in 1975, but little changed. Rockwell, for example, "spray irrigated" radioactive wastewater, even during winter when the contaminated water simply ran off the frozen ground, and even though a 1952 document had warned of the risk of resuspension of contaminants left by spray irrigation. Tr. 2399, 2436-37, 2461-65, 2468-70 (Lipsky, discussing P-1269, photographs of frozen sprinklers and overhead photograph of plant); P-25 at 071782 (1952 document). Highly contaminated sites like the "881 Hillside," the "Mound" and the "East trenches" were left exposed. P-512 at US3058695-97; P-1279 at 3-13 to 3-23; Tr. 1186-91 (Holeman); Tr. 3969-70 (Smallwood).

By 1986, DOE itself admitted that:

Rocky Flats . . . is in poor condition generally in terms of environmental compliance.

We have basically no RCRA groundwater monitoring wells, our permit applications are grossly deficient (some of the waste facilities there are potentially "illegal"). We have serious contamination, we have extremely limited environmental and waste characterization dat[a] for a site of this complexity.

---

[3] *E.g.*, P-149A; P-338 at US3086854; P-533; P-1068 (report on 1957 fire); P-1069 (1969 fire).

> Much of the good press we have gotten . . . has taken attention away from *just how really bad the site is*.

P-493 at WR 01802; Tr. 1162-69 (Holeman, discussing P-493); Tr. 2253-55 (Lipsky).

On June 6, 1989, the FBI and EPA raided Rocky Flats as part of an investigation into environmental crimes. Tr. 7925 (Norton). After a controversial grand jury investigation, Rockwell pled guilty in 1992 to five environmental felony and five misdemeanor counts (each count involving multiple violations), and paid a $18.5 million fine. DOB 8; Tr. 3714-43 (Lipsky, discussing PG-657 to PG-666).

Rockwell, like Dow, stored huge amounts of radioactive waste – mushy mixtures of cement and radioactive waste called "pondcrete" – outdoors in cardboard boxes, which led to more contamination. Tr. 1191-94, 1236-37 (Holeman); Tr. 3715-18, 3723 (Lipsky); Tr. 7741-42, 7877-7886, 8047-49 (Weston); P-99; P-140; P-1341A-C (photographs); P-1609 at 16-18 (GAO report stating that Rockwell had accumulated 17,000 boxes of pondcrete by 1988); P-1622; PG-1030; PG-1032A; PG-1018B. *See also* PV-188 (Cochran). Like Dow, Rockwell also annually released plutonium into the air in so-called "routine" releases. DX-513 at 27-28.

Rockwell also engaged in wrongful "midnight burning" of plutonium waste. Rockwell secretly operated a radioactive waste incinerator in violation of a DOE shut-down order. Ronald Avery, a former foreman in charge of the incinerator, testified that Rockwell management instructed him to conduct burning at night to avoid detection, and to have workers falsify their time cards to hide their conduct.

Tr. 3780-89 (Avery); P-1090. He testified that "a fairly large quantity of plutonium" was burned. Tr. 3789. *See also* Tr. 2389-91, 2396-2415 (Lipsky, discussing P-1278, FBI surveillance flight video using infrared camera, indicating thermal activity in the incinerator).

Hazardous wastes from Rocky Flats also contaminated the groundwater and surface waters leading off-site. Tr. 7826-27 (Weston) & P-1610 (Rockwell letter stating that violations of EPA permit relating to water discharges had been "increasing at an alarming rate."); Tr. 7864-68 & P-1620 at 18 (groundwater contamination); P-1609 at 1 (GAO report noting "[s]ignificant problems regarding groundwater and soil contamination at the plant site"); P-512 at US3058682; Tr. 1230-42 (Holeman, discussing P-99, Colorado Department of Health order detailing violations of Colorado law); P-533; P-1080. Even Rockwell's own plant president described Rocky Flats as "last" on safety issues among all DOE weapons sites nationwide. PV-46; Tr. 7829-30.

Defendants' off-site monitoring of plutonium was poor, incomplete, and riddled with flaws. P-97 at EML04317 (AEC scientist concluding "[a]nalytical quality control [in monitoring] . . . is practically non-existent."); P-533 at EML00997 (Colorado scientist concluding that "the offsite environmental monitoring program conducted by Dow personnel has been inadequate to assess the buildup of plutonium contamination" off-site); P-214 at 00003407 ("How would the public react if they

-18-

knew we didn't routinely analyze our onsite air samples and offsite air samples for Pu?") (1970 Dow document); Tr. 3120-52 (Budnitz, discussing P-1306, P-412, P-193, P-1021, P-97, PG-610A); P-1062 at II-1; Tr. 3086-92 (Budnitz, discussing P-533); Tr. 3656-57, 3676-78 (Goble); Tr. 4613-14, 4654 (Rockwell "did not know how much plutonium was coming out of their stacks" and was "not really monitoring the plutonium coming off the site") (Biggs) (member of citizen scientific committee) & P-1331 (committee report); Tr. 4655-75 (Biggs). DOE's own report on monitoring at Rocky Flats concluded that "the accuracy of measured concentrations of plutonium in ambient air are questionable." P-529 at 2-11; *see also* Tr. 8064-65 (Weston).

As defendants' own expert acknowledged, efforts to reconstruct past plutonium releases and resulting exposures have resulted in numerous, major revisions of prior estimates. *E.g.,* Tr. 8405-15 (Till, discussing P-1062, P-1068); 8444-46 (Till, discussing DX-513, RAC's report revising estimates of routine plutonium releases upward by 300%)( summary page); P-1334 at 7 ("The exact amount of plutonium released from the 1957 fire is impossible to determine accurately"); *id.* 9 ("Depleted uranium was poorly monitored. As a result, relatively large, off-site releases of depleted uranium cannot be excluded."); *id.* 42 ("significant gaps remain in our knowledge of uranium releases"); P-1082 at III-5 (plutonium releases from the 903 Area remain "inherently uncertain" because of lack of reliable, contemporaneous data); Tr. 5579-97, 5606-36 (Cochran); Tr. 3677-78 (Goble); Tr. 3159-63 (Budnitz).

Moreover, defendants lost track of *1191 kilograms (over 2600 pounds) of plutonium* (known to them as "Material Unaccounted For" or "MUF"), and more than *650 pounds* of uranium. Tr. 5333-90 (Cochran); PG-27B; PG-27C; P-1132 at 108. According to Dow, MUF is "truly a measure of the amount of material that cannot be accounted for." P-559 at 4472191. A 1964 MUF study (publicly released in 1994) stated: "The plutonium losses experienced during the entire history of the Rocky Flats Plant have been significant" but "[t]hese losses have never been explained or properly justified." P-10 at 4. The study found that the 1957 plutonium fire resulted in a "fire loss" of *over six kilograms* of plutonium, far more plutonium than previously thought released. P-10 at 8. MUF remained a problem throughout defendants' tenures. P-653 (DOE reporting "five major incidents" relating to MUF since 1980); P-1143 at 4302564 (1989 DOE document noting "larger than usual" MUF losses).[4]

Because defendants lost track of so much plutonium, off-site plutonium releases could be far larger than otherwise thought. Tr. 5387-90. Most of the MUF likely did not escape off-site, but the amount of missing plutonium is so large that if even a fraction went off-site, it would greatly increase release estimates. Tr. 5606-15 (Cochran); PV-188 (Cochran); *see also* P-1394 (1985 DOE document stating that large MUF amounts "represent a criticality safety and environmental protection concern").

---

[4] DOE later changed the term "MUF" to "inventory difference" ("ID").

Plutonium released by defendants from Rocky Flats has contaminated soil throughout the Class Area and remains present there. P-149A (study by AEC scientists, P.W. Krey and E.P. Hardy, "Plutonium in Soil Around the Rocky Flats Plant") ("Krey & Hardy"); P-533 at EML00997 (study by Colorado scientist Dr. Martell concluding that "independent soil measurements indicate that curies to tens of curies of plutonium from the Rocky Flats plant have been deposited in offsite areas."); Tr. 3080-93, 3109-20 (Budnitz, discussing P-149A and P-533); Tr. 3089 (a curie represents a "huge amount" of radioactivity) (Budnitz); P-303 at EML01012 (United States environmental research report concluding: "There is ample evidence to show that more than normal background amounts of Pu-239 exist in the soil environment surrounding the Rocky Flats facility."); P-1131 (aerial gamma surveys); P-1620 at 23 (GAO report noting "[e]levated levels of plutonium both on- and off-site."); DX-477 at 2 (1994 Colorado study showing plutonium contamination off-site that "is consistent with" Krey & Hardy); *see also* Tr. 8764-65 (defendants' witness admitting that Great Western Reservoir sediment is contaminated with plutonium from Rocky Flats);[5] Tr. 8766 (Standley Lake sediments contaminated with plutonium, requiring that Woman Creek leading from Rocky Flats be diverted to protect drinking water); Tr. 1263-65 (Holeman).

---

[5] *Cf.* P-411 (1958 Dow document emphasizing that "it is imperative that no noxious or toxic chemicals find their way into" the Great Western Reservoir).

-21-

AEC scientists Krey and Hardy found a plutonium "contamination pattern" extending "about 8 miles east and southeast of the plant" although "[t]here is no question" that plutonium contamination from Rocky Flats extends farther, out to 40 miles from the plant. P-149A at 043685, 043717-18. They took soil samples "representative of the area studied," *id.* at 043686, validated by "elaborate and extensive quality control," *id.* at 043707, and developed contours mapping the plutonium off-site. *Id.* 043705. The Class Area is smaller than, and lies completely inside, the plutonium contours they developed. *See* PG-034A; PG-034; PG-051A.

Neither defendants nor DOE ever cleaned up this plutonium contamination in the Class Area in any way, and as Dow admitted, it is a "physical impossibility" to remove all plutonium contamination from soil. P-1118 at 000841. The same is true of plutonium-contaminated soil in the Class Area. Tr. 4121-22 (Smallwood). Moreover, even if some plutonium in the Class Area had been removed, additional plutonium from the plant – including buried plutonium brought to the surface by plants, animals and insects – would have re-contaminated those areas, even after weapons production had stopped. Tr. 3996-4001, 4013, 4067, 4121-26 (Smallwood) & PG-561, PG-562, P-1127A, P-1294 (video), P-1352; Tr. 7056-58 (Selbin). *See also* SA1387.

Plutonium releases by Dow and Rockwell violated ALARA. Tr. 5287 ("one of the real failures at Rocky Flats is the failure to keep exposures, off-site exposures

as low as reasonably achievable") (Cochran); Tr. 5322-28; PV-188 (Cochran). These off-site releases resulted in radiation exposures "sufficient to cause latent diseases" – i.e., disease appearing "long after the exposure that caused it." Tr. 3659-60 (Goble); Tr. 3681 (because of defendants' operations, "class members were exposed to plutonium" putting them at "some increased risk of cancer as a result"); Tr. 3685 & P-1351 (graphics discussed by Goble); *see also* Tr. 8370 (other than those exposed the night of the 1957 fire, "the highest exposure and resulting cancer risks were to people east and southeast of the plant" within the Class Area) (defendants' expert, Till).

A study of cancer incidence showed significantly elevated rates of cancer in off-site areas near Rocky Flats (including the Class Area), as compared to areas farther away, including 29% more lung cancer among women in certain time periods. Tr. 4808-43, 4862 (Clapp); PG-691 (study area); PG-800; PG-799 (results). These results are consistent with two prior cancer studies. Tr. 4800-05. The most likely explanation is plutonium exposures from Rocky Flats releases. Tr. 4836, 5014. The finding of excess cancers suggests that plutonium exposures "may have been greater" than previously estimated, "or that these exposures actually may be more carcinogenic to humans than we had thought." Tr. 4947 (Clapp).[6]

---

[6] DOE has controlled much of the research into the health effects of plutonium exposure, but DOE's conflicting interests in protecting itself and its contractors while
(continued...)

## SUMMARY OF ARGUMENT

*First*, defendants are mistaken in contending that various DOE "standards," which defendants leave unidentified in their brief, preempted Colorado law on the governing duty of care. The Supreme Court squarely held in *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238 (1984), that federal regulations on radiation emissions do *not* preempt the duty of reasonable care supplied by state tort law. Defendants' attempt to limit *Silkwood's* holding are flatly contradicted not only by the Supreme Court's opinion itself, but also by this Court's original decision in *Silkwood v. Kerr-McGee Corp.*, 667 F.2d 908 (10th Cir. 1981), and even more starkly by this Court's decision on remand in *Silkwood v. Kerr-McGee Corp.*, 769 F.2d 1451 (10th Cir. 1985).

Far from undoing the Supreme Court's preemption ruling in *Silkwood*, the 1988 Price-Anderson amendments affirmatively reinforced it, through an express statutory command that the rules of decision in Price-Anderson cases be supplied by the law of the state in which the nuclear incident occurred, except where that law is inconsistent with Section 2210 of Price-Anderson. 42 U.S.C. § 2014(hh). That command implements an unwavering congressional policy of deference to state law dating back to Price-Anderson's original enactment. Indeed, even the Nuclear

---

[6](...continued)
promoting nuclear energy and weaponry have compromised the scientific reliability of that research. Tr. 5685-91, 5748, 5754-57, 5783-84 (Wing).

-24-