# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, et al.,

     Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION AND THE DOW CHEMICAL
COMPANY,

     Defendants.

---

## MEMORANDUM OPINION REGARDING DEFENDANTS' THEORY
## OF PLUTONIUM REMOVAL THROUGH REAL ESTATE DEVELOPMENT

---

Kane, J.

     I today issued a memorandum opinion describing the process, proposals and rulings that

resulted in the final instructions to the jury in this action. *See* Mem. Op. re: Jury Instructions

(Dec. 7, 2006).  One of the issues that arose near the end of this process was Plaintiffs' proposal

that I instruct the jury that Defendants had presented no evidence that any plutonium deposited in

the Class Area had been removed by them or any other person. *See* Pls.' Proposed Revisions to

Jury Instructions (Doc. 1978), Ex. A (proposing new paragraph in Instruction No. 3.5).

Although stated generally, this proposal was directed at Defendants' theory that plutonium

deposited in the Class Area from Rocky Flats had been removed from at least some properties in

this Area through construction and development activities.

     I ultimately instructed the jury to disregard this theory as a result of Defendants' failure to

present competent evidence in support of it, in spite of representations that they would do so

during the extensive pretrial process I employed pursuant to Federal Rules of Civil Procedure 16

and 23(d) to narrow and define the issues to be tried in this complex class action. Because the background to my decision on this jury instruction issue is extensive, I write separately here rather than including this discussion in my jury instruction opinion.

The background to my decision begins with the definition of the property class ("Class") as persons (other than governmental entities and Defendants and their affiliates, parents and subsidiaries) owning property in a specified "Class Area" on a particular date. *See Cook v. Rockwell Int'l Corp. ("Cook IV")*, 151 F.R.D. 378, 382 (D. Colo. 1993). The Class Area is defined as the area bounded by a contour line that depicts a "plume" of plutonium contamination in soils as a result of releases from the Rocky Flats plant. This contour line was generated by scientists in 1970 based on soil sampling in the vicinity of Rocky Flats.

One of the elements of Plaintiffs' trespass claim was that plutonium released from Rocky Flats by one or both Defendants is present on Class members' properties in the Class Area. On at least three occasions during the pretrial planning process, Defendants represented to the court that they did not dispute that these properties are and continue to be contaminated with plutonium from Rocky Flats. In July, 2004, for example, during the extended jury instruction process that was used to narrow the issues to be tried on a class-wide basis, counsel for Defendants stated with respect to the presence of plutonium particles on Class properties: "I don't know why we're trying that issue to the jury at all. There is no question but the fact that at least with respect to most, if not all, of the people who were described as being class members, there is plutonium present on their property and it came from no place other than Rocky Flats. We don't need to

2

submit that issue to the jury." July 22, 2004 Hr'g Tr. at 31.[1] Defense counsel further stated: "Yes, the plutonium is there because of the conduct, our conduct, on this government facility. And it's there. And it's there when they [class members] were there at the time that the class was defined because the class was defined by reference to a plutonium plume." *Id.* at 33. Defendants made similar representations to the court regarding the presence of plutonium in the Class Area in June, 1999, and again in July, 2005. *See* June 25, 1999 Hr'g Tr. (Doc. 1133) at 18-21; July 28, 2005 Hr'g Tr. (Doc. 1434) at 112-15.[2]

In December 2004, I relied on Defendants' 2004 statements to prepare jury instructions on the trespass claim[3] that included a stipulation that "plutonium from the Rocky Flats plant has been deposited on the Class Properties and continues to be present there." Order re: Proposed Trespass Instructions (Doc. 1311) [hereinafter "Trespass Instructions Order"], Attach. A at 2. I gave Defendants the opportunity to object to this proposed stipulation, but required that any

---

[1]    I discovered during preparation of this opinion that the transcript for this hearing had not been entered in the docket for this action. I have ordered that this error be corrected.

[2]    Defendants made their July 2004 statements in response to my 2003 ruling that the physical presence of plutonium on Class Properties constituted a trespass under Colorado law and that proof of harm resulting from this physical invasion was not required to establish liability. *See Cook v. Rockwell Int'l Corp. ("Cook IX")*, 273 F. Supp. 2d 1175, 1199-1201 (D. Colo. 2003). I revisited that ruling following the July 2004 hearing and reaffirmed it in the December, 2004, order on the parties' proposed instructions on the trespass claim. *See* Order re: Proposed Trespass Instructions (Doc. 1311) at 5-6.

[3]    As is my practice, I required that the jury instructions be prepared before trial so they could be provided to the jury at the start of trial and used by counsel during their arguments and presentation of evidence. In this case, I also used the process of preparing jury instructions to narrow and define the issues to be tried. *See* Mem. Op. re: Jury Instructions at 1-5 (Dec. 7, 2006).

3

objection "identify the evidence the party intends to present at trial to dispute" the stipulation. Trespass Instructions Order at 8.

Defendants timely filed objections to the stipulation. Defs.' Objs. to Identification of Stipulated Facts (Doc. 1315). In their objections, Defendants did not dispute that plutonium from Rocky Flats had at one time been deposited throughout the Class Area, but rather disputed that plutonium continued to be present on all properties in the Class Area owned by Class members. *See id.* at 3-5. Defendants based this objection on the theory that construction and development activities in the Class Area since 1970 had removed plutonium from at least some individual Class properties. *See id.* at 4-5.

As the evidence to be presented at trial to support this theory and dispute the continuing presence of plutonium throughout the Class Area, Defendants submitted declarations from Dr. F. Ward Whicker and Mr. Peter Elzi. In his declaration, Dr. Whicker, one of Defendants' designated experts, stated that plutonium from Rocky Flats had been deposited in the Class Area before 1970, Defs.' Objs., Ex. 5 (Jan. 2005 Whicker Decl.), ¶ 1.A, that "essentially all" of this plutonium was located in the top nine inches of undisturbed soils, *id.*, ¶ 1.B, that human disturbance of plutonium-contaminated soils through development and other activities made it difficult or impossible to measure plutonium concentration in the soil, *id.*, ¶ 1.C, 1.D, 10-13, and that because of these considerations plus development in the Class Area "it is not possible to scientifically demonstrate the presence of [Rocky Flats] plutonium now" on the majority of Class properties, *id.*, ¶ 1.D. In his separate declaration, Mr. Elzi, a real estate appraiser, reported that approximately one-third of the privately held land in the Class Area had been graded or otherwise disturbed as part of development activities since 1980, *see* Defs.' Objs., Ex. 4 (Jan. 2005 Elzi

4

Supplemental Appendix Page No. 1384

Decl.), ¶ 9, that grading as part of property development typically disturbed the first foot or two of soil, *id.*, ¶ 2, and that additional "cuts and fills" of up to 20 feet might be required to balance or level a site, *id.*

Plaintiffs rightly pointed out in response that the declarations of Dr. Whicker and Mr. Elzi did not dispute that plutonium from Rocky Flats had been deposited throughout the Class Area as of 1970. They further and accurately noted that the declarations were evidence that plutonium-contaminated soil was moved or redistributed on a parcel during grading and site development, but that they made no claim that any soil, let alone all potentially contaminated surface soils on one or more individual Class properties, had been physically removed and transported to another site as would be necessary for all pre-existing Rocky Flats-derived plutonium on a Class property to be removed through development activities.

In reply, Defendants submitted a second declaration by Mr. Elzi, in which he stated that development in the Class Area had resulted in the removal of top soil from some individual Class properties during the development of larger parcels, and identified two locations, the Westmoor Business Park and the Five Parks area, in which such removal had allegedly occurred. Defs.' Reply to Pls' Resp. to Objs. (Doc. 1330), Ex. 5 (Supplemental Elzi Decl.), ¶¶ 2-4. Defendants also submitted a second declaration by Dr. Whicker, in which he stated that "it is highly likely" that the top few feet of soil, *i.e.*, the soil in which one would expect to find plutonium contamination from Rocky Flats, had been totally removed during development of some of the smaller Class parcels. *Id.*, Ex. 3 (Supplemental Whicker Decl.), ¶ 4.

Upon Plaintiffs' motion before trial, I excluded Dr. Whicker's two declarations and the opinions expressed therein because they were not disclosed in his expert report as required by

5

**Supplemental Appendix Page No. 1385**

Rule 26(a).  *See* Sept. 13, 2005 Tr. at 9; Mem. Op. re: *Daubert* Mots. and Mots. in Limine,

Section II.B.1 (Dec. 7, 2006).  This left Mr. Elzi's declarations as the evidence Defendants

offered to present at trial to dispute that the plutonium from Rocky Flats continued to be present

on all Class Properties.

After careful consideration, I decided that the evidence presented in Mr. Elzi's second

declaration was sufficient to permit Defendants to present their "removal through development"

theory at trial to dispute Plaintiffs' claim of continued plutonium contamination throughout the

Class Area.  I reached this conclusion with reluctance due to Defendants' prior admissions on this

subject, but relied on Defendants' most recent representations of the evidence they would present

at trial to allow the issue to be tried.  *See* Mem. Op. re: Jury Instructions, Section I.A.2 (Dec. 7,

2006).

Accordingly, I revised the trespass instructions to delete the previously stated stipulation,

and instead instructed the jury at the start of trial in October, 2005, that "Defendants admit that

plutonium from Rocky Flats is present in the Class Area but dispute that it is located throughout

this area." Oct. 11, 2005 Trial Tr. at 433 (reading Instruction No. 1.1).  I further instructed the

jury that Plaintiffs had the burden of proving that "Plutonium from Rocky Flats is present on the

Class Properties." Oct. 11, 2005 Trial Tr. at 444 (reading Instruction No. 3.2).  "Class

Properties" were defined as the properties owned by Class members in the Class Area. *Id.*  The

jurors were also provided with written copies of the jury instructions at this time for reference

during trial.  *See* Mem. Op. re: Jury Instructions, Attach. A (Dec. 7, 2006).

In their case-in-chief, Plaintiffs presented evidence that various soil sampling studies had

concluded that plutonium from Rocky Flats was deposited throughout the Class Area and beyond,

6

**Supplemental Appendix Page No. 1386**

that no effort had been made to remove plutonium from the Class Area, and that if removal had been attempted it likely would not have been successful. *See, e.g.*, P-149A (1970 Krey & Hardy study); DX477 (1994 Jones & Zhang study); P-1131 (1989 aerial gamma survey), P-1118 (Dow summary of environmental incidents affecting soils). Plaintiffs also presented evidence from which the jury could conclude that even if all plutonium had been removed from properties within the Class Area, these properties would be re-contaminated as a result of the continued migration of plutonium from the Rocky Flats site. *See, e.g.*, Nov. 3, 2005 Trial Tr. at 3996-4001 (Smallwood testimony); Nov. 4, 2005 Trial Tr. at 4121, 4123 (same); Dec. 8, 2005 Trial Tr. at 7056-59 (Selbin testimony). I held this evidence was sufficient for a reasonable jury to find for Plaintiffs on their trespass claims. *See* Order Denying Defs.' Mot. for J. as a Matter of Law (Doc. 1977).

In response to Plaintiffs' evidence of continuing plutonium contamination throughout the Class Area, Defendants argued and presented evidence that the cited soil studies could not be relied upon to establish that plutonium had ever been present throughout the Class Area. They also presented evidence that any Rocky Flats-derived plutonium in the Class Area had been deposited there before 1970 and that extensive residential and other development occurred in the Class Area after this date. Defense counsel further suggested in their opening statement, in mini-summations during the trial[4] and through their questioning of witnesses that Plaintiffs could not prove that any plutonium deposited in the Class Area before 1970 remained there because bulldozing and soil removal during construction and grading had caused all plutonium to be

---

[4]     At the end of most weeks of trial, counsel were granted 30 minutes each to summarize their view of the evidence presented the preceding week and to inform the jury of what to expect in the coming week.

7

removed from developed properties. *See, e.g.*, Oct. 12, 2005 Trial Tr. at 840; Dec. 16, 2005

Trial Tr. at 8528-29, 8553. Defendants did not, however, present Mr. Elzi or any other evidence

that development activities had resulted in the physical removal of all potentially contaminated soil

from any properties in the Class Area. Neither did they identify any specific locations in the Class

Area where plutonium removal through development had allegedly occurred.[5]

In fact, the only evidence Defendants presented at trial in putative support of their

"removal through development" theory was the testimony of their dose reconstruction expert,

Dr. John Till, and the final minute of an 11 and a half minute videotape intended to illustrate his

testimony. *See* Dec. 15, 2005 Trial Tr. at 8204; Ex. DV0001. Upon Plaintiffs' subsequent

motion, however, I struck Dr. Till's expert testimony on this subject because it had not been

---

[5]     The latter omission is significant because Defendants' "plutonium removal through development" theory applied at best to only one-third of Class members' land in the Class Area. *See* Jan. 2005 Elzi Decl., ¶ 9 (reporting that 3465 of the 10,100 acres of privately held land in the Class Area have been graded or otherwise disturbed through real estate development). It would have been possible, therefore, to create sub-classes within the Class Area to reflect the geographic areas in which Defendants alleged development had resulted in the removal of all Rocky Flats plutonium and other areas in which no real estate development had occurred, *see* Fed. R. Civ. P. 23(c)(1)(C) (authorizing revisions to class certification), so that the jury could decide separately whether Plaintiffs had sustained their burden of proving contamination in the areas in which Defendants disputed the continued presence of Rocky Flats plutonium based on development there as opposed to those areas in which no such dispute existed. Defendants were aware of this possibility because it had been raised several times before and during trial. *See, e.g.*, Apr. 14, 2004 Order (Doc. 1220) at 9 (notifying parties class certification would be modified if "evidence shows that contamination caused by one or both Defendants does not encompass all of the class properties"); Pls.' Proposed Revisions to Jury Instructions at 3-4 (Doc. 1885); Oct. 22, 2004 Tr. (Doc. 1286) at 27-28; *see also Cook IV*, 151 F.R.D. at 389 (noting property class might be divided into subclasses). As demonstrated by Mr. Elzi's second declaration, Defendants had evidence identifying properties within the Class Area that were subject to their plutonium removal through development theory, but they opted not to present it.

8

previously disclosed in compliance with Rule 26(a).  *See* Jan. 17, 2006 Trial Tr. at 10188; Pls.'

Mot. to Strike Test. of Dr. John Till re: "Bulldozer Theory" (Doc. 1980).[6]

Even if admitted, Dr. Till's testimony and the video excerpt regarding development in the

Class Area provided scant support for Defendants' plutonium removal theory.  The video clip

regarding development activities was not prepared by Dr. Till, but rather by defense counsel in the

days before Dr. Till testified.  *See* Dec. 15, 2005 Trial Tr. at 8204, 8206; Dec. 16, 2005 Trial Tr.

at 8390-93.  This portion of the videotape abruptly veered away from the expert testimony

disclosed in Dr. Till's expert report, which addressed dose reconstruction work performed by

Dr. Till and his RAC colleagues, to the unrelated topic of development in the Class Area.  *See*

DV0001.  The narrator then reported, and the video portrayed, that significant development had

occurred in the Class Area since 1970; that buildings, concrete and asphalt now cover some of

what used to be undisturbed soil in the Class Area and that several feet of soil are excavated when

the foundation for a new house is prepared.  *See id.*

Dr. Till's only comment during his direct examination regarding development in the Class

Area and the video's treatment of it was that "[t]here's tremendous development in the class area.

I mean, there's no question about that.  It has been disturbed."  *See* Dec. 15, 2005 Trial Tr.

at 8285.  When pressed on cross-examination regarding the consequences of this development to

the continuing presence of plutonium in the Class Area, Dr. Till responded with the circular

statement that plutonium would no longer be present "if a bulldozer comes in, pushes the stuff off

---

[6]        Plaintiffs timely objected before and during Dr. Till's testimony that various
subjects addressed in the video and his testimony, including development and construction
activities in the Class Area, were not addressed by Dr. Till in his expert report and were beyond
his area of expertise. Pls' Objs. to Exs. to Be Used With Dr. John Till (Doc. 1837) at 1-2;
Dec. 15, 2005 Trial Tr. at 8204, 8350.

**Supplemental Appendix Page No. 1389**

– or it's hauled somewhere, it's not there, it's gone somewhere else." Dec. 16, 2005 Trial Tr. at 8449.  At no time during his testimony did Dr. Till state that plutonium-contaminated soil had been removed from any location or property in the Class Area through this process.

Neither Dr. Till's statements nor the video excerpt were evidence that topsoil potentially contaminated with plutonium was removed from a Class property during development or were sufficient for such an inference to be drawn.  Rather, at best they were evidence only that some plutonium-contaminated soil in the Class Area may have been disturbed or covered by asphalt or concrete as a result of development activities there.[7]

Following the close of Defendants' case on January 12, Plaintiffs moved to revise the jury instructions, as previously described, *see* Pls.' Proposed Revisions to Jury Instructions (No. 1978), Ex. A (proposing revisions to Instruction No. 3.5), and to strike Dr. Till's testimony touching on Defendants' "removal through development" or "bulldozer" theory, *see* Pls.' Mot. to Strike Test. of Dr. Till re: "Bulldozer Theory" (Doc. 1980).  At the same time, Plaintiffs separately moved for judgment as a matter of law on Defendants' "removal through development" theory on the ground that it was unsupported by competent evidence. Pls.' Mot. for J. as a Matter of Law (Doc. 1979).  After requesting and receiving briefing from Defendants over the holiday weekend, I construed Plaintiffs' second motion as a motion to bar presentation of this

---

[7]     Defendants also cited certain of Dr. Till's testimony on redirect examination as evidence supporting their "removal through development" theory.  In the cited testimony, however, Dr. Till only testified that plutonium would have to be close to the surface to pose a risk of suspension in the air, and that development activities that disturbed the layer of plutonium-contaminated soil by burying or encapsulating it could affect this risk.  Dec. 16, 2005 Trial Tr. at 8528–29.  Thus, this testimony addresses the risk posed by plutonium present in developed portions of the Class Area, and is not relevant to the separate question of whether plutonium continues to be present there.

10

theory and granted it and the separate motion to strike Dr. Till's testimony from the bench at the resumption of trial on January 17. Jan. 17, 2006 Trial Tr. at 10188.[8]

With Plaintiffs' closing argument scheduled to begin the following morning, I prepared two jury instructions the evening of January 17 to inform the jury of these decisions. The first instruction, Instruction No. 2.2B, directed the jury to disregard Dr. Till's testimony to the extent it suggested that plutonium in the Class Area had been removed through construction and development activities.[9]  In the second instruction, a revised version of Instruction No. 3.5, I added a paragraph informing the jury that I had ruled Defendants' "removal through development" theory could not be presented to them and that they should disregard the argument they had previously heard from counsel about it.[10]  I deemed this addition to be more direct and

---

[8]      In their motion, Plaintiffs also sought judgment as a matter of law on Defendants' affirmative defense of setoff.  I denied this portion of their motion.  Jan. 17, 2006 Trial Tr. at 10188.

[9]      Instruction 2.2B, titled "Dr. Till's Testimony Regarding Removal of Plutonium," stated:

> I have stricken from the evidence the testimony of Dr. Till in which he stated or suggested that plutonium present in the Class Area has been removed by bulldozing and other construction and development activities. You are not to consider Dr. Till's testimony on this subject for any purpose.

[10]     The added paragraph in Instruction No. 3.5 stated:

> You have also heard argument that plutonium has been removed from properties in the Class Area as a result of bulldozing, soil excavation and other disturbance during real estate construction and development activities in the Class Area.  You are to disregard all such argument because I recently ruled that it cannot be presented or considered in deciding the trespass claims.  For purposes of deciding the trespass claims, therefore, the notion that plutonium has been removed from the Class Area through development and construction activities is irrelevant.

11

consistent with my January 17 rulings than Plaintiffs' proposed revision to Instruction No. 3.5 on this point.

As a courtesy, I directed that both new Instruction No. 2.2B and revised Instruction No. 3.5 be emailed to counsel when they were completed the evening of January 17. Unfortunately, the email to defense counsel was sent to an incorrect email address, so they did not receive the revised instructions until noon the next day, January 18, when they arrived for the start of Plaintiffs' closing argument.

At the end of the day, after Plaintiffs completed their closing, Defendants orally moved for reconsideration or revision of Instruction No. 3.5 so that they could argue their "removal through development" theory in their closing argument the next day. After reviewing Defendants' arguments and the materials they submitted at this time, I confirmed that they reiterated arguments and evidence Defendants had previously submitted and I had considered in making my January 17 ruling. I therefore denied the motion and informed counsel for both sides of this decision by email at 6:15 PM on January 18 because it was not possible to provide them with a written order after business hours, yet Defendants had asked to be informed of my ruling as soon as possible.[11] Not satisfied with my decision, Defendants emailed a request for "clarification" and

---

[11]     That e-mail message, sent by my staff at my direction, stated as follows:

> Counsel - Judge Kane asked me to inform you that Defendants' oral motion to delete the third paragraph of Instruction No. 3.5, regarding the contention that plutonium has been removed from the Class Area as a result of development activities, is DENIED. Consistent with Instruction No. 3.5 and Judge Kane's January 17 ruling on Plaintiffs' motion for judgment as a matter of law on this point (construed as a motion in limine), Defendants may not present this argument to the jury. Defendants may reference development in the Class Area as relevant to other issues, but not in connection with the alleged removal of plutonium or liability on the trespass claim. A confirming order will be entered tomorrow.

reconsideration 30 minutes later, to which I responded consistent with my prior rulings.[12] The next morning, before beginning their closing arguments, Defendants filed a written motion for reconsideration and to strike the new paragraph in Instruction No. 3.5, *see* Defs.' Mot. for Clarification re: Court's Ruling on Jury Instruction No. 3.5 (Doc. 2020), which I denied from the bench before Defendants began their closing.

In their various motions for reconsideration regarding the disputed instruction, Defendants made four basic arguments. First, they contended that the timing of my decision to preclude their "removal through development" theory was prejudicial. Plaintiffs could not bring their motion to exclude this theory for lack of supporting evidence, however, and I could not rule on it, until Defendants finished putting on their evidence. Defendants concluded their case on Thursday, January 12. Plaintiffs filed their motion for judgment as a matter of law on Defendants' removal theory and its affirmative defense of setoff on Saturday, January 14, and Defendants filed their response the morning of Tuesday, January 17. I granted the portion of the motion relating to Defendants' removal theory from the bench that same afternoon. The issue could not have been raised and decided any sooner than it was.

---

[12]     Defendants' followup email message was: "Mr. Bernick asks whether defendants will be permitted to argue the development issue in connection with continuing trespass or CCE." My response, also sent by my staff at my direction, was:

> Judge Kane was informed of your question and asked me to notify you that, consistent with his prior rulings, Defendants will not be permitted to argue, in any context, that development activities in the Class Area have resulted or will or could result in the removal of plutonium from all or part of the class area. If defendants mean something else when they refer to the "development issue," then the answer may be different.

13

Second, Defendants complained they were prejudiced because they did not understand my January 17 bench ruling to have excluded their "removal through development" theory, but thought it only barred their use of Dr. Till's testimony to support this theory. This complaint is based on a selective reading of the transcript of my January 17 ruling.[13] First, I ruled separately on Plaintiffs' motion to strike this portion of Dr. Till's testimony and on Plaintiffs' distinct motion for judgment as a matter of law on this theory. *See* Jan. 17, 2006 Trial Tr. at 10188. Defendants' professed understanding of my decisions reads out of the record my ruling on the second motion, which was sufficient to put Defendants on notice that they would not be permitted to argue their "removal through development" theory.

Furthermore, in response to a question from defense counsel regarding evidence about "the status of plutonium on the plaintiffs' class properties" in light of my rulings, I stated that Defendants were free to argue that plutonium had been removed by natural causes or that it was impossible to determine how much plutonium is present in the Class Area based on estimates and studies, but not "the idea of having a picture of a bulldozer and then saying, well, it's all been removed." *Id.* at 10189.

In their motions for reconsideration, Defendants ignored these rulings and statements and instead focused on the exchange that immediately followed:

> [DEFENSE COUNSEL]:  There has been extensive testimony about the fact of there being development and the impact of development on the soil.
>
> THE COURT: You can argue that, but you can't use Dr. Till to say, I don't know anything –

---

[13]      As was customary each day of trial, the transcript for the January 17 proceedings was e-mailed to the parties before 7:00 PM that evening.

14

[DEFENSE COUNSEL]: That's fine. I understand.

Defendants asserted after the fact that they did not understand my just-announced ruling on Plaintiffs' motion for judgment as a matter of law, or, in the alternative, that I gutted this ruling moments after it was announced by allowing Defendants through this exchange to argue their "removal through development" theory as long as they did not use Dr. Till's testimony for this purpose. This is wishful thinking at best. The whole of the record accurately reflects that I granted Plaintiffs' motion to exclude Defendants' "removal through development" theory. The exchange upon which Defendants rely is consistent with ruling because, in fact, evidence regarding the fact of development was not stricken, as it was relevant to other issues in the case. For example, I did not strike evidence or argument that development activities and related soil disturbance and road and building construction had occurred and impacted plutonium-contaminated soil in other ways, such as by decreasing any health risk contaminated soil posed by capping or burying it so that it was less available for remobilization in wind events or through bioturbation. What was stricken, as a complete reading of Plaintiffs' motion and my January 17 rulings make clear, was Defendants' unsupported argument that Plaintiffs could not prove the continuing presence of plutonium on Class properties because real estate development had resulted in the removal of all Rocky Flats-derived plutonium from one or more of these properties.

Defendants also complained they were prejudiced because they did not receive a copy of revised Instruction No. 3.5 until noon on January 18. The challenged revision, however, merely implemented my ruling of the previous day, of which Defendants had been apprised. Defendants had also been aware since January 14, when Plaintiffs filed their motion, that their "removal

15

through development" theory was under review and could be barred, and had at least the evening of January 18 to revise their closing argument to conform it to Instruction No. 3.5 as revised.  I found no prejudice from the timing of Defendants' receipt of revised Instruction No. 3.5 under these circumstances.

Third, Defendants argued that my January 17 ruling and revised Instruction No. 3.5 essentially granted Plaintiffs judgment as a matter of a law on one of the elements of their trespass claims, that plutonium from Rocky Flats is present on Class Properties.  Not so.  As I stated on January 17, Defendants remained free to argue Plaintiffs had not met their burden of proving the presence of Rocky Flats plutonium by reference to other evidence, such as their evidence that the plutonium contamination estimates and soil studies presented by Plaintiffs were too out-dated or relied on too few sampling points to prove the presence of plutonium contamination throughout the Class Area.  *See, e.g.,* Jan. 17, 2006 Trial Tr. at 10189.[14]

Finally, Defendants asserted the new language in Instruction No. 3.5 should be stricken and they should be allowed to argue their "removal through development" theory because they presented sufficient evidence for a juror to "reasonably infer from the fact that an undisturbed parcel has been developed that plutonium does not continue to be present on such parcels." Defs.' Mot. for Clarification re: Court's Ruling on Jury Instruction No. 3.5 (Doc. 2020) at 4. Most of the evidence Defendants pointed to in this regard, however, was their evidence of general development in the Class Area after 1970. *See, e.g.,* Defs' Resp. to Pls.' Mot. for J. as a Matter

---

[14]     Defendants were, however, fortunate that I allowed them to present these arguments, given that they contradicted the representations Defendants made to the court before trial that they did not dispute that plutonium from Rocky Flats had been deposited throughout the Class Area at one time. *See supra* at 2-4.

16

of Law (Doc. 2001) at 13-14. Just as was the case when Defendants first proffered this category

of evidence and their "removal through development" theory in the 2004 trial planning process,

what was missing was any evidence stating or suggesting that this development could or did result

in all pre-existing plutonium contamination from Rocky Flats being removed from any Class

property. Evidence of soil disturbance is not evidence of soil removal.

During the pretrial planning process, Defendants filled this evidentiary gap by presenting

evidence, in Mr. Elzi's second declaration, that development at some locations in the Class Area

had resulted in the removal of all potentially contaminated surface soils from some Class

properties. As I stated earlier, this was supposed to be evidence that Defendants would present at

trial to dispute the presence of plutonium contamination throughout the Class Area. *See* Trespass

Instruction Order at 8. I relied on Defendants' representation that they would present Mr. Elzi or

equivalent evidence of actual removal at trial in deciding not to enforce Defendants' prior

statements on the subject of the continuing presence of plutonium from Rocky Flat on the Class

Properties. Defendants did not, however, offer Mr. Elzi or other competent evidence on this

point at trial.[15]

Defendants also cited the testimony of Plaintiffs' expert Dr. Smallwood as evidence from

which a jury could infer that development activities had led to the removal of plutonium from one

or more Class Properties. Dr. Smallwood was one of Plaintiffs' experts on the risks posed by

plutonium and other contamination on and off the Rocky Flats plant site. A significant portion of

---

[15]     For the reasons set out earlier, Dr. Till's testimony relating to Defendants' "removal through development" theory was excluded and, even if had been admitted, did not constitute evidence that plutonium deposited on the Class Properties on or before 1970 was removed from any Class property as a result of its development after this period.

17

his direct testimony concerned the risk that Rocky Flats plutonium that had been deposited in soils could be remobilized through the natural forces of burrowing animals and wind.

On cross-examination, defense counsel asked Dr. Smallwood a series of questions directed at whether development in the Class Area had affected the extent of animal burrowing and other biological activities that contributed to this risk. *See* Nov. 3, 2005 Trial Tr. at 4079-81. In the course of this inquiry, defense counsel also asked Dr. Smallwood whether he could say with reasonable scientific certainty that he actually knew that plutonium from Rocky Flats was still present in soil at which development had occurred. *Id.* at 4081. Dr. Smallwood, who had not addressed this issue in his expert report, answered straightforwardly that he did not know and that it would depend on the nature of the development. *Id.*; *see also id.* at 4083 (Dr. Smallwood responding "I don't know" and "I couldn't tell you" to similar questions).

Defendants asserted based on these statements that "plaintiffs' own expert admitted that (depending upon the nature of development) development could remove plutonium from class properties," Defs.' Resp. to Pls.' Mot. for J. as a Matter of Law (Doc. 2001) at 17, and that the cited testimony by Dr. Smallwood was sufficient for the jury to infer that all plutonium was, in fact, removed from one or more Class properties as a result of their development after 1970. This is not a fair reading of Dr. Smallwood's testimony. The condition Dr. Smallwood placed on his answer highlights what is missing from Defendants' case, which is any evidence that the nature of development in the Class Area was such that a reasonable juror could conclude that Rocky Flats plutonium deposited on Class properties before 1970 was no longer present on some of them because it had been physically removed during the course of development.

18

In spite of their pretrial representations, Defendants failed to present evidence supporting their "removal through development" theory, but rather sought to invite the jury to speculate that such actual removal had occurred on one or more Class properties.  In the absence of any supporting evidence and under the circumstances of this case, I refused to allow the jury to engage in this speculation.

For the foregoing reasons, I granted Plaintiffs' motion to preclude Defendants from presenting their unsupported "removal through development" theory to the jury, denied Defendants' motions for reconsideration of that decision, and instructed the jury to disregard this theory in Instruction No. 3.5.

Dated this 7th day of December, 2006.

<u>s/John L. Kane</u>
John L. Kane, Senior District Judge
United States District Court

19