## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, *et al.*,

               Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

               Defendants.

---

## DEFENDANTS' RESPONSE BRIEF
## PURSUANT TO ORDER OF OCTOBER 16, 2012

---

Kevin T. Van Wart, P.C.
Bradley H. Weidenhammer
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
Phone:  312-861-2000
Facsimile:  312-861-2200
Email:  kvanwart@kirkland.com

*Attorneys for Defendants*
*Rockwell International Corporation and*
*The Dow Chemical Company*

Joseph J. Bronesky
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO  80202
Phone:  303-297-2900
Facsimile:  303-298-0940

*Attorneys for Defendants*
*Rockwell International Corporation and*
*The Dow Chemical Company*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION AND SUMMARY ............................................................................... 1

I.    This Court Cannot Enter A New Judgment On Plaintiffs' Nuisance Claim ....................... 1

    A.    There Is No "Existing Jury Verdict." ................................................................. 2

    B.    Plaintiffs Have No "Nuisance Claim Under Colorado Law And Diversity Jurisdiction." ............................................................................... 4

    C.    Plaintiffs' Arguments On The Nuisance Verdict Issue Lack Merit ....................... 4

        1.    The Tenth Circuit Held That The Jury Was Improperly Instructed On Nuisance ............................................................................ 4

        2.    Reversal Of The Nuisance Verdict Was Required Because The Jury May Have Based Its Verdict On Erroneous Instructions ............ 10

        3.    Plaintiffs' Jurisdictional Arguments Are Irrelevant .................................. 11

II.    A Plaintiff Who Brings A PAA Claim May Not Simultaneously Pursue A Freestanding State-Law Claim Based On The Same Facts ............................................ 13

    A.    A "Public Liability Action" Under The PAA Is The Exclusive Cause Of Action For Harm Allegedly Caused By Radioactive Releases From Rocky Flats ..................................................................................... 13

    B.    Simultaneous Pursuit Of Freestanding State-Law Claims Would Undermine The PAA's Exclusive Remedial Scheme ........................................... 17

    C.    Plaintiffs Failed To Address Complete Preemption. ........................................... 19

    D.    Plaintiffs' Additional Preemption Arguments Are Irrelevant And Premature. ..................................................................................................... 19

    E.    The PAA's Exclusive Remedial Scheme Does Not Violate Due Process ............. 21

CONCLUSION .............................................................................................................. 23

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Caterpillar Inc. v. Williams*,
    482 U.S. 386 (1987) .................................................................................................. 15

*City & County of Denver v. Matsch*,
    635 F.2d 804 (10th Cir. 1980) ................................................................................... 3

*City of Wichita v. United States Gypsum Co.*,
    72 F.3d 1491 (10th Cir. 1996) ................................................................................. 11

*Cook v. Rockwell International Corp. ("Cook IX")*,
    273 F. Supp. 2d 1175 (D. Colo. 2003) ................................................................ 5, 16

*Cook v. Rockwell International Corp.*,
    618 F.3d 1127 (10th Cir. 2010) ......................................................................... passim

*Corcoran v. New York Power Authority*,
    202 F.3d 530 (2d Cir. 1999) .................................................................................... 16

*Cotroneo v. Shaw Environment & Infrastructure, Inc.*,
    639 F.3d 186 (5th Cir. 2011) ................................................................................... 16

*Duke Power Co. v. Carolina Environmental Study Group, Inc.*,
    438 U.S. 59 (1978) ............................................................................................ 14, 17

*El Paso Natural Gas Co. v. Neztsosie*,
    526 U.S. 473 (1999) ................................................................................................ 15

*English v. General Electric Co.*,
    496 U.S. 72 (1990) .................................................................................................. 14

*Estate of Whitlock v. Commissioner of Internal Revenue*,
    547 F.2d 506 (10th Cir. 1976) ................................................................................... 3

*In re Berg Litigation*,
    293 F.3d 1127 (9th Cir. 2002) ............................................................................ 16, 18

*In re Hanford Nuclear Reservation Litigation*,
    534 F.3d 986 (9th Cir. 2008) ...................................................................... 16, 18, 19

**Page(s)**

*In re TMI Litigation Cases Consolidated II* ("*In re TMI II*"),
    940 F.2d 832 (3d Cir. 1991) ...................................................................... 15, 18

*Kerr-McGee Corp. v. Farley*,
    115 F.3d 1498 (10th Cir. 1997) .................................................................. 15, 16

*Lujan v. Regents of the University of California*,
    69 F.3d 1511 (10th Cir. 1995) .......................................................................... 18

*Nieman v. NLO, Inc.*,
    108 F.3d 1546 (6th Cir. 1997) .......................................................................... 16

*O'Conner v. Commonwealth Edison Co.*,
    13 F.3d 1090 (7th Cir. 1994) ............................................................................ 16

*Pacific Gas & Electric Co. v. State Energy Resources Conservation &
    Development Commission*,
    461 U.S. 190 (1983) .......................................................................................... 13

*Powers v. Harris*,
    379 F.3d 1208 (10th Cir. 2004) ........................................................................ 22

*Silkwood v. Kerr-McGee Corp.*,
    464 U.S. 238 (1984) .......................................................................................... 14

*Spector Motor Service v. McLaughlin*,
    323 U.S. 101 (1944) .......................................................................................... 21

*Townsend v. Lumbermens Mutual Casualty Co.*,
    294 F.3d 1232 (10th Cir. 2002) ........................................................................ 10

*Wankier v. Crown Equipment Corp.*,
    353 F.3d 862 (10th Cir. 2003) ..................................................................... 10, 11

*Wheeler v. John Deere Co.*,
    935 F.2d 1090 (1991) ..................................................................................... 2, 3

**Statutes**

28 U.S.C. § 1331 ...................................................................................................... 12

28 U.S.C. § 1332 ...................................................................................................... 12

42 U.S.C. § 2011 ...................................................................................................... 14

42 U.S.C. § 2012(a) ................................................................................................. 17

**Page(s)**

42 U.S.C. § 2012(i) ............................................................................................ 17, 18

42 U.S.C. § 2014(hh) .......................................................................................... passim

42 U.S.C. § 2014(q) ............................................................................................ passim

42 U.S.C. § 2014(w) ........................................................................................ 14, 17, 19

**Other Authorities**

*Black's Law Dictionary* (6th ed. 1990) ................................................................. 2

*Restatement (Second) of Torts* (1965) .................................................................. 5

## INTRODUCTION AND SUMMARY

The Court ordered the parties to brief the following two issues: "1) Does the existing jury verdict in this case support entry of this Court's judgment on Plaintiffs' nuisance claim under Colorado law and diversity jurisdiction?; and 2) May a plaintiff who brings a Price-Anderson Act claim simultaneously pursue a freestanding state-law claim based on the same facts?" Order at 1 (Doc. No. 2334). The answer to both questions is "no."

The Court cannot enter judgment on plaintiffs' nuisance claim because there is no "existing jury verdict." The Tenth Circuit set aside the verdict, reversed the case and directed this Court to vacate the judgment. While plaintiffs do not discuss the Tenth Circuit's mandate, this Court is required to comply strictly with its terms. There is no "existing verdict" that can support entry of a new judgment. The parties are in the same position as if they had never tried the case.

A plaintiff who brings a Price-Anderson Act ("PAA") claim may not pursue a freestanding state-law claim based on the same facts. The PAA completely preempts state-law claims arising from a nuclear incident, and establishes an exclusive federal remedial scheme for such claims. The Tenth Circuit's conclusion that plaintiffs' proof was insufficient to satisfy the PAA's injury requirement does not mean that plaintiffs are now free to pursue, outside the PAA, the same claims based on the same alleged radioactive releases. A failed PAA claim based on an alleged nuclear incident is simply a failed claim, not a state-law claim in waiting.

## I.     This Court Cannot Enter A New Judgment On Plaintiffs' Nuisance Claim.

There are three main reasons why this Court cannot enter a new judgment on plaintiffs' nuisance claims. First, there is no "existing jury verdict" on which the Court can enter judgment

because the Tenth Circuit set aside the verdict and reversed the case, leaving the parties in the same position as if the case had never been tried.  Second, plaintiffs have no standalone "nuisance claim under Colorado law and diversity jurisdiction."  They have only a PAA claim. *See* Part II.A.  And third, the Tenth Circuit specifically reversed the nuisance verdict because the instructions improperly allowed the jury to find nuisance based on scientifically unfounded risk.

      **A.**      **There Is No "Existing Jury Verdict."**

      There is no "existing jury verdict" in this case because the Tenth Circuit set aside the verdict, reversed and remanded the case, and directed this Court to "vacate the judgment." *Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127 (10th Cir. 2010).[1]  "To 'reverse' a judgment means to 'overthrow, vacate, set aside, make void, annul, repeal, or revoke it.'" *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1096 (10th Cir. 1991) (quoting *Black's Law Dictionary* 1319 (6th ed. 1990)).  A judgment that has been reversed is "null and void in its entirety," and is "without any validity, force or effect, and ought never to have existed." *Id.* (internal quotation marks omitted). The same goes for the underlying jury verdict on which the reversed judgment was based: "Reversal of a judgment and remand for a new trial places the parties in the same position, insofar as relief is concerned, as if the case had never been tried." *Id.*  The Court cannot enter judgment on the prior jury verdict because the Tenth Circuit's reversal nullified it.

---

[1] *Cook,* 618 F.3d at 1133 ("[T]his court **REVERSES** and **REMANDS** the case to the district court.  We **DIRECT** the district court to vacate the judgment and conduct further proceedings not inconsistent with this opinion."); at 1153 (same);  *see also id*. at 1142 ("[T]he verdict must be set aside and the case remanded for further proceedings not inconsistent with this opinion.").  In their petition for *writ of certiorari*, plaintiffs acknowledged that no verdict remains. Pls.' Pet. for Cert. at 14 ("[T]he court set aside the verdict and remanded.") (attached as Ex. 1).

The Tenth Circuit underscored the nullity of the prior verdict by declining to reach defendants' additional challenges to the verdict and judgment, including evidentiary challenges, on the ground that those issues "may not arise during a new trial."  *Cook*, 618 F.3d at 1152.  The Tenth Circuit could not and would not have declined to reach these challenges if any part of the verdict or judgment retained any force or effect on remand.

The Tenth Circuit's mandate is straightforward and not open to alternative interpretation: it sets aside the verdict and instructs this Court, on remand, to vacate the judgment.  *Id.* at 1133, 1142, 1153.  That ruling means that there is no existing verdict, and the Court must vacate the previous judgment in its entirety, not selected portions of it.  Reinstating a jury verdict that the Tenth Circuit set aside would violate the mandate rule and conflict with controlling precedent holding that reversed verdicts and judgments are nullities.[2]  *See, e.g.*, *City & County of Denver v. Matsch*, 635 F.2d 804, 807-09 & n.1 (10th Cir. 1980) (granting mandamus where district court failed to comply with mandate on remand); *Estate of Whitlock v. Comm'r of Internal Revenue*, 547 F.2d 506, 510 (10th Cir. 1976) (same); *Wheeler*, 935 F.2d at 1096 (holding that a judgment previously reversed is a nullity).

The Tenth Circuit issued its mandate more than two years ago, on December 17, 2010.  As directed by the Tenth Circuit, this Court should vacate the judgment and "conduct further

---

[2] Similarly, it would violate the mandate rule if, as plaintiffs suggest, this Court were summarily to "recertify" the same class the Tenth Circuit decertified.  Pls.' Br. at 12 n.10 (Doc. No. 2344).  The Tenth Circuit held that this Court "must reverse the district court's class certification ruling," and directed that "[u]pon remand, the district court shall revisit the class certification question to determine whether Plaintiffs can establish the elements of their claims, including the PAA threshold requirements, on a class-wide basis."  *Cook*, 618 F.3d at 1149.

proceedings not inconsistent with [the Tenth Circuit's] opinion."   *Cook*, 618 F.3d at 1133 and 1153.

**B.      Plaintiffs Have No "Nuisance Claim Under Colorado Law And Diversity Jurisdiction."**

A separate reason the Court cannot enter "judgment on Plaintiffs' nuisance claim under Colorado law and diversity jurisdiction" is that no such claim exists.   Plaintiffs have no freestanding Colorado state law "nuisance claim."   They have only a claim under the PAA, *see* Part II.A, and the Tenth Circuit held that plaintiffs' PAA nuisance claim failed because they did not prove a threshold element of their claim:  loss of use of property.  *Id.* at 1142.

**C.      Plaintiffs' Arguments On The Nuisance Verdict Issue Lack Merit.**

Plaintiffs ignore the Tenth Circuit's mandate altogether.  Although this issue has arisen in earlier post-appeal submissions to the Court, nowhere in their brief do they discuss the mandate or cite any authority for the proposition this Court need not comply with it.   Instead, they proceed in Part I of their brief as if the Tenth Circuit left intact a separate "nuisance" judgment. Plaintiffs' arguments fail not only because this Court is bound by the Tenth Circuit's mandate, *see* Parts I.A and I.B, but for several additional independent reasons:  *first*, the Tenth Circuit held that the jury was improperly instructed as to nuisance; *second*, the improper nuisance instructions were not harmless; and *third*, the Tenth Circuit implicitly rejected plaintiffs' jurisdictional arguments, which, in any event, are irrelevant.

**1.      The Tenth Circuit Held That The Jury Was Improperly Instructed On Nuisance.**

Defendants argued on appeal that "the nuisance judgment in [plaintiffs'] favor cannot stand" because the jury instructions "allow[ed] plaintiffs to recover under a nuisance theory for

'some increased health risk,' *even if scientifically unfounded*." Defs.' 10th Cir. Br. at 58 (attached as Ex. 2).[3]  As defendants explained, "[a]s a matter of [Colorado] law, an interference cannot be 'substantial' and 'unreasonable' if it is based on a scientifically unfounded risk." *Id.* at 49.  The Tenth Circuit agreed, holding in Part III.D.1 of its opinion that under Colorado law "a scientifically unfounded risk cannot rise to the level of an unreasonable and substantial interference." *Cook*, 618 F.3d at 1145.

Despite this holding, plaintiffs assert that "the Tenth Circuit held that the jury was properly instructed on plaintiffs' nuisance claim under Colorado law."  Pls.' Br. at 5 (capitalization modified).  They base this assertion on a single sentence in the Tenth Circuit's opinion:  "The jury was properly instructed on [1] the elements of a nuisance claim as well as [2] the definitions of 'substantial' and 'unreasonable.'"  *Cook*, 618 F.3d at 1145.  But that sentence does not bless the entirety of the nuisance instruction, as plaintiffs contend.  Rather, it says only that the instructions properly described the "elements" of a nuisance claim ("an interference with the use and enjoyment of his property that is both 'substantial' and 'unreasonable'"), and the definitions of "substantial" and "unreasonable"—points defendants did not challenge on appeal.  *Id.*

---

[3] This point had been the source of substantial controversy in pretrial proceedings before this Court.  In particular, this Court rejected defendants' argument that Colorado law would not recognize a nuisance claim based on a scientifically unfounded risk, and instead held that Colorado would follow the *Restatement (Second) of Torts* in allowing such a claim.  *See Cook v. Rockwell Int'l Corp. ("Cook IX")*, 273 F. Supp. 2d 1175, 1201-08 (D. Colo. 2003).  That comment provides, in relevant part, that a plaintiff may establish a nuisance claim based on "'fears and other mental reactions common to the community . . ., *even though they may be without scientific foundation or other support in fact.*'"  *Id.* at 1204 (quoting *Restatement (Second) of Torts* § 821F cmt. f (1965).  Based on that ruling, this Court allowed plaintiffs to present the jury with evidence—in the Tenth Circuit's words—"that *any* exposure to plutonium whatsoever increases the risk of health problems to some degree."  *Cook*, 618 F.3d at 1142.

Nor is there anything in the opinion to suggest that the Tenth Circuit, through this sentence, intended to exclude the nuisance verdict from its mandate or to imply that plaintiffs' nuisance claim is not subject to the requirements of the PAA. On the contrary, the Tenth Circuit made that statement in the context of its ruling setting aside the entire verdict, reversing the case, and ordering this court to vacate the judgment, *see* Part I.A, and its conclusion that "the jury was not properly instructed on an essential element of Plaintiffs' PAA claims." *Id.* at 1142 ("[T]he verdict must be set aside and the case remanded[.]"); *see also id.* at 1142 n.15 ("[T]his court's ruling that Plaintiffs must establish the existence of a nuclear incident as a threshold element of their claims independently warrants remand.").

These statements would be inexplicable if plaintiffs had a state-law claim independent of the PAA. Indeed, the Tenth Circuit's discussion of Colorado nuisance law assumes that plaintiffs cannot prevail on their nuisance theory without proving the PAA injury element. As the Tenth Circuit explained,

> On its face, the state-law "interference with use" standard presents a lower threshold than the PAA's "loss of use" standard. Accordingly, if a plaintiff establishes a "loss of use" under the PAA, he necessarily establishes an "interference with use" under Colorado law. This does not, however, relieve a plaintiff of his burden of establishing the additional nuisance requirements under Colorado law that any interference must also be "substantial" and "unreasonable."

*Id.* at 1145 n.20. In addition, the Tenth Circuit addressed the question of whether irrational fear of increased health risk is sufficient to render an interference "substantial" and "unreasonable" because, on remand, plaintiffs must satisfy those two elements (in addition to the PAA "loss of use" requirement) to prevail on their nuisance claim. *Id.*; *see also id.* at 1142 ("On remand, Plaintiffs will be tasked with producing additional evidence that could support a jury's finding

6

that a nuclear incident occurred, in the form of 'loss of or damage to property, or loss of use of property' under 42 U.S.C. § 2014(q).").  Nothing in the Tenth Circuit's discussion of Colorado nuisance law states or implies that plaintiffs may avoid proving "loss of use" under the PAA simply by proceeding outside of the PAA.

Plaintiffs next contend that the Tenth Circuit's nuisance holding in Part III.D.1 of its opinion "has nothing to do with the two forms of class-wide interference" identified in Instruction 3.6 and upon which the jury verdict rested.  Pls.' Br. at 7.  They argue that the holding "related **solely**" to Instruction 3.28, *id.*, which posed a purely advisory, non-class question about individual class members' fear and anxiety.[4]  Plaintiffs admit that the question posed by Instruction 3.28 was "**not tried** on a class-wide basis and formed **no part** of the jury's verdict for Plaintiffs on their class-wide nuisance claim."  *Id.* at 7-8.  But plaintiffs attempt, nonetheless, to cabin the Tenth Circuit's nuisance holding exclusively within the confines of Instruction 3.28.  Their argument is implausible and irreconcilable with the actual language of the Tenth Circuit's opinion.

*First*, no issue relating to Instruction 3.28 was part of the appeal.  Instruction 3.28 posed a purely advisory, non-class question that was not before the Tenth Circuit:  defendants never cited or discussed this instruction in their appellate briefs, and the Tenth Circuit never quoted or cited this instruction in its opinion.  Instead, the Tenth Circuit expressly framed its entire discussion in Part III.D.1 in the context of defendants' challenge to the class-wide nuisance

---

[4] Instruction 3.28 asked, "Have Plaintiffs proved by a preponderance of the evidence that the intentional or negligent conduct of Dow or Rockwell or both of them at Rocky Flats, and/or actual or threatened harms caused by such conduct, created a situation that is capable of causing fear, anxiety or mental discomfort in individual Class members?"  Jury Instructions at 77 (Doc. No. 2121-1).

instruction:   the court quoted class-wide Instruction 3.6 and directly addressed defendants' argument that the class-wide instruction was erroneous because "Colorado law does not permit a risk-based theory of nuisance which lacks scientific foundation."  *Cook*, 618 F.3d at 1145.

*Second*, the Tenth Circuit held in Part III.D.1 that "a scientifically unfounded risk cannot rise to the level of an unreasonable and substantial interference" under Colorado nuisance law. *Id.*  This holding directly implicates class-wide nuisance Instruction 3.6 (instructing that the jury may find interference based on "some increased risk" without requiring the jury to find that the risk was scientifically founded), but does not implicate or relate to the non-class question posed in Instruction 3.28 (which focuses on individual class members' "fear, anxiety or mental discomfort").  Jury Instructions at 38-39, 76-77.

*Third*, contrary to plaintiffs' argument, the Tenth Circuit's discussion of fear or anxiety arising from a scientifically unfounded risk is relevant to the class-wide nuisance claim. Instruction 3.6 states that "some increased risk" may serve as a form of interference.  *Id.* at 38. Instructions 3.9 and 3.10 state that an interference is "substantial" if "a normal person in the community would find it offensive, annoying or inconvenient," and "unreasonable" if "the gravity of the harm outweighs the utility of the conduct."  *Id.* at 46-49.  The nuisance instructions thus allowed the jury to conclude that "some increased risk" from plutonium exposure was "substantial" interference if the jury found that a normal person in the community would have irrational (*i.e.*, scientifically unfounded) fear of risk from plutonium exposure.[5]  And at trial,

---

[5]  In their brief, plaintiffs ignore the distinction between fear or anxiety that a "normal" or "reasonable" member of the community might have, and those of individual class members.  The Court instructed the jury to ignore **individual class members'** fears and anxieties for purposes of the class-wide nuisance claim, *see* Pls.' Br. at 7-8 (quoting Instruction 3.28), but left the jury free to find that an interference was "substantial" and "unreasonable" based on the fears and anxieties

plaintiffs exploited this opening, presenting the jury with expert testimony about public fear of health risks from plutonium and other forms of nuclear energy, even if such fears were scientifically unfounded.  *See*, *e.g.*, 11/7/05 Trial Tr. (Slovic) (10th Cir. App. at 2924.2-3); 12/6/05 Trial Tr. (Hunsperger) (*id.* at 3114.1-3); 11/2/05 Trial Tr. (Goble) (*id.* at 2914) (collectively attached as Ex. 3).  The Tenth Circuit held that such fear or anxiety cannot support a nuisance verdict because "[n]o reasonable jury could find that irrational anxiety about a risk that cannot be scientifically verified tips this balance so as to render the interference unreasonable."  *Cook*, 618 F.3d at 1146.

*Fourth*, plaintiffs never suggested to the Tenth Circuit that defendants' challenge to the nuisance instruction was irrelevant to the class-wide verdict and judgment.  On the contrary, plaintiffs acknowledged in their appellate response brief that "[a]s it pertains to the class-wide nuisance verdict, the argument appears to claim that plaintiffs' proof of a health risk was required to meet some (unspecified) hurdle of scientific certainty even before a jury might weigh whether the interference was substantial and unreasonable," Pls.' 10th Cir. Br. at 56, and argued that "Colorado nuisance law does not specify any preferred level of scientific certainty regarding a health risk," *id.* at 57 (capitalization modified) (attached as Ex. 4).

The Tenth Circuit rejected that argument and, contrary to plaintiffs' contentions here, held that the class-wide nuisance instructions erroneously allowed the jury to find nuisance based on a scientifically unverifiable risk.  This Court may not, consistent with the mandate rule, ignore

---

of *"normal" or "reasonable" members of the community*, *see* Instructions 3.9 and 3.10 at 46-49.  Thus, contrary to plaintiffs' argument, Pls.' Br. at 7-9, the Tenth Circuit's holding with regard to "irrational anxiety about a risk that cannot be scientifically verified" is directly applicable to the class-wide nuisance instructions.  *Cook*, 618 F.3d at 1146.

that ruling and treat the nuisance verdict as if the Tenth Circuit affirmed it instead of setting it aside.

### 2. Reversal Of The Nuisance Verdict Was Required Because The Jury May Have Based Its Verdict On Erroneous Instructions.

Plaintiffs argue, in the alternative, that even if, as the Tenth Circuit held, the nuisance instructions erroneously allowed the jury to find a nuisance based on scientifically unverifiable risk, the court should enter a new judgment because plaintiffs "presented abundant evidence— including expert scientific testimony admitted pursuant to *Cook XIII*, admissions of Defendants' own experts, DOE documents, and more—supporting the nuisance claim."  Pls.' Br. at 12. Again, this argument ignores the Tenth Circuit mandate and incorrectly assumes that this Court has authority to enter judgment on a verdict the Tenth Circuit has set aside, *see* Parts I.A and I.B, but it fails also because the nuisance instructions were reversible error irrespective of the evidence plaintiffs presented.[6]

A judgment must be reversed if the jury was improperly instructed and "'the jury might have based its verdict on the erroneously given instruction.'"  *Wankier v. Crown Equip. Corp*., 353 F.3d 862, 867 (10th Cir. 2003) (quoting *Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1242 (10th Cir. 2002)).  Reversal is necessary "[e]ven if that possibility is 'very unlikely.'"

---

[6] Plaintiffs' assertion that defendants waived this argument has no merit.  Defendants expressly argued, and the Tenth Circuit accepted, that the erroneous nuisance instruction was reversible error.  *See* Defs.' 10th Cir. Br. at 58 ("By allowing plaintiffs to recover under a nuisance theory for 'some increased health risk,' even if scientifically unfounded, the district court erred." (quoting Jury Instruction 3.6; emphasis omitted)) (attached as Ex. 2).   The Tenth Circuit acknowledged in its opinion that "[d]efendants next argue that the district court's instructions on Plaintiffs' nuisance claims were legally incorrect," and "specifically" that "Colorado law does not permit a risk-based theory of nuisance which lacks scientific foundation."  *Cook*, 618 F.3d at 1145.

*Id.* (quoting *City of Wichita v. U.S. Gypsum Co.*, 72 F.3d 1491, 1495 (10th Cir. 1996)). Plaintiffs' argument—that the verdict survived because plaintiffs presented sufficient evidence from which a jury *could have* found for plaintiffs under the correct standard requiring scientifically verifiable risk—is directly contrary to the established rule.

Under the correct standard, as articulated in *Wankier*, the nuisance verdict was properly reversed because (among other independent grounds) the jury may have discounted as unreliable or unpersuasive all of plaintiffs' scientific evidence related to risk,[7] but nevertheless returned a nuisance verdict by reasoning, based on the erroneous instruction, that *any risk* (even if scientifically unfounded or unverifiable) was sufficient to find for the plaintiffs. That possibility rendered the erroneous instructions reversible.

### 3.    Plaintiffs' Jurisdictional Arguments Are Irrelevant.

Plaintiffs devote five pages of their brief to arguing that this Court has subject matter jurisdiction (diversity, pendent and ancillary) independent of federal question jurisdiction under the PAA. Pls.' Br. at 1-5. For at least three reasons, these jurisdictional arguments are irrelevant. *First*, the issue here is plaintiffs' effort to obtain a judgment on their "nuisance claim," an effort that fails, not for lack of jurisdiction, but because this Court does not have authority to defy the Tenth Circuit's mandate. *See* Part I.A. While there is a dispute (addressed

---

[7] Indeed, when the Tenth Circuit reviewed the evidence plaintiffs presented at trial, the court concluded plaintiffs did not present "evidence of an increased health risk that would be sufficient to permit a reasonable fact-finder to find a loss of use." *Cook*, 618 F.3d at 1142. Defendants dispute that plaintiffs presented sufficient scientific evidence to meet even the lower, state-law "interference with use" standard, because, as the Tenth Circuit observed, "Plaintiffs' experts did not testify, however, regarding the level of risk of developing cancer from exposure to plutonium released at Rocky Flats. Rather, they suggested any increased risk was small and unquantifiable." *Id.* at 1134.

in Part II below) over whether plaintiffs are permitted to pursue a freestanding state-law claim based on the same facts as their federal PAA claim, that dispute has nothing to do with subject matter jurisdiction and is not a license for this Court to defy the Tenth Circuit's mandate.

*Second*, the Court's subject matter jurisdiction is not in dispute here. The Tenth Circuit already has found that, as a result of plaintiffs' PAA allegations, which include the allegations that their lawsuit is a public liability action arising from a nuclear incident, Second Amended Complaint ¶¶ 1, 3, 5, 96, "the district court clearly had subject matter jurisdiction under 28 U.S.C. § 1331." *Cook*, 618 F.3d at 1137.

*Third*, plaintiffs already made this jurisdictional argument to the Tenth Circuit, contending, as they do here, that they "also assert[] diversity jurisdiction," and, therefore, "[i]f plaintiffs' trespass and nuisance claims do not arise out of a nuclear incident, they must be independent state law tort claims" that they can pursue under 28 U.S.C. § 1332. Pls.' Supp. 10th Cir. Br. at 10 (attached as Ex. 5). The Tenth Circuit implicitly rejected this argument: rather than find that diversity jurisdiction provides an independent basis for affirming all or part of the judgment, the Tenth Circuit set aside the entire verdict and reversed the entire judgment. *Cook*, 618 F.3d at 1142, 1153. This Court is not a court of review, and it must comply with the mandate as written, regardless of whether it agrees or disagrees with the Tenth Circuit's decision.[8]

---

[8] In their petition before the Supreme Court, plaintiffs complained that the Tenth Circuit had improperly "displac[ed] States' authority to determine remedies for injured property owners," Pls.' Pet. for Cert. at 31 (attached as Ex. 1)—a contention that is inconsistent with their argument that their nuisance claim is not subject to the requirements of the PAA and, therefore, this Court need not comply with the mandate as it relates to the nuisance verdict and judgment.

## II.  A Plaintiff Who Brings A PAA Claim May Not Simultaneously Pursue A Freestanding State-Law Claim Based On The Same Facts.

The answer to the second question posed by the Court—whether a plaintiff who brings a PAA claim may "simultaneously pursue a freestanding state-law claim based on the same facts"—is also "no."  A plaintiff who seeks to recover for harm allegedly caused by the "radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material," 42 U.S.C. § 2014(q), has a single cause of action—a "public liability action" under the PAA—and the plaintiff's remedies are limited to those available under the PAA.

Plaintiffs' apparent lack of faith in their ability to prove that they suffered "loss of or damage to property, or loss of use of property," as required by the PAA, 42 U.S.C. § 2014(q), does not give plaintiffs or this Court license to ignore the PAA's exclusive remedial scheme.  The Tenth Circuit was clear:  on remand plaintiffs are "tasked with producing additional evidence that could support a jury's finding" of such damage or loss of use.  *Cook*, 618 F.3d at 1142.  If they cannot do so, that will be the end of the case.  Plaintiffs cannot avoid the requirements of the PAA by recasting their public liability action as a "freestanding state-law claim."

### A.  A "Public Liability Action" Under The PAA Is The Exclusive Cause Of Action For Harm Allegedly Caused By Radioactive Releases From Rocky Flats.

From its inception, nuclear power has been subject to a comprehensive federal regulatory framework.  Given the paramount national-security and safety issues surrounding nuclear technology, "the federal government has occupied the entire field of nuclear safety concerns, except the limited powers expressly ceded to the states."  *PG&E v. State Energy Res.*

13

*Conservation & Dev. Comm'n*, 461 U.S. 190, 212 (1983); *English v. Gen. Elec.* Co., 496 U.S. 72, 82 (1990); *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 249 (1984).

The PAA, 42 U.S.C. § 2011 *et seq.*, is an important part of this comprehensive nuclear regulatory scheme. Congress enacted the PAA in 1957 to encourage private sector involvement in the development of atomic energy by eliminating the threat of crippling financial liability in the event of a nuclear accident. *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 64 (1978). The Act provides a congressionally mandated framework for managing claims and funding liability associated with "nuclear incidents." *Id.* Among other things, it sets an aggregate limit on the liability of nuclear power plant operators and requires the federal government to indemnify, up to that limit, liability above the amount of required private insurance protection. *Id.* at 65.

In 1988, Congress amended the PAA and created a new federal cause of action—called a "public liability action"—for all injury or property claims arising from an alleged nuclear incident.[9] Section 2014(hh) grants federal courts subject matter jurisdiction over public liability actions, and provides that the law governing such actions is to be "derived" from the law of the state in which the nuclear incident at issue occurred unless that state's law is inconsistent with the Act:

> A public liability action shall be deemed to be an action arising under [the Act], and the substantive rules for decision in such action shall be derived from the law

---

[9] The Act defines "public liability action" as "any suit asserting public liability," 42 U.S.C. § 2014(hh), and "public liability" as "any legal liability arising out of or resulting from a nuclear incident[.]" *Id.* § 2014(w). In turn, a "nuclear incident" involves "bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property" allegedly caused by the "radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material." *Id.* § 2014(q).

of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of such section.

42 U.S.C. § 2014(hh).

The purpose of the 1988 amendments to the PAA was to "to expand federal control over safety and liability issues involving the nuclear industry." *Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1504 (10th Cir. 1997). Through these amendments, "Congress ensured that all claims resulting from a given nuclear incident would be governed by the same law, provided for the coordination of all phases of litigation and the orderly distribution of funds, and assured the preservation of sufficient funds for victims whose injuries may not become manifest until long after the incident." *In re TMI Litig. Cases Consol. II* ("*In re TMI II*"), 940 F.2d 832, 857 (3d Cir. 1991); *see also El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 477 (1999) (noting that a major purpose of the PAA amendments was to create a mechanism for consolidating claims that arise from a nuclear incident in federal court, "for managing them once consolidated, and for distributing limited compensatory funds") (citations omitted).

The Supreme Court in *Neztsosie* explained that the PAA's exclusive remedial structure:

> in which a public liability action becomes a federal action, but one decided under substantive state-law rules of decision that do not conflict with the Price-Anderson Act, resembles what we have spoken of as complete pre-emption doctrine, under which the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.

*Neztsosie*, 526 U.S. at 484 n.6 (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987)) (internal quotation marks and citation omitted). "[O]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar,*

482 U.S. at 393 (addressing Section 301 of the Labor Management Relations Act).[10]   "Thus,

[under the PAA] a state cause of action is not merely transferred to federal court; instead, a new

federal cause of action supplants the prior state cause of action." *O'Conner v.

Commonwealth Edison Co.*, 13 F.3d 1090, 1099-1100 (7th Cir. 1994); *see also Cotroneo v.

Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 192 (5th Cir. 2011).

There is no reasonable argument that plaintiffs' claims here fall outside the ambit of the

PAA given that they are based on the hazardous properties of special nuclear material

(plutonium), the releases of that material into the environment, and the injuries allegedly caused

by those releases in the form of increased cancer risk and property damage.  "None dispute this is

a 'public liability action' arising under the Price-Anderson Act[.]"  *Cook IX*, 273 F. Supp. 2d at

1179.   In their complaint, plaintiffs allege that their claims arise under the PAA, Second

Amended Complaint ¶¶ 3, 5, and describe in great detail the nuclear incidents that allegedly

occurred and the harm allegedly caused by the hazardous properties of plutonium, *cf.*

42 U.S.C. § 2014(q).  Even now, on remand, plaintiffs continue to cite and rely on the testimony

of Richard Clapp, an epidemiologist who testified that there is an "increased incidence of cancer

in off-site areas near Rocky Flats"; Robert Goble, a risk assessor who testified about plutonium

---

[10] Numerous other federal courts have reached the same conclusion, consistently holding that the PAA, as amended, preempts all state law causes of action for damages arising from a nuclear incident, meaning "no state cause of action based on public liability exists."  *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1552 (6th Cir. 1997); *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 192 (5th Cir. 2011); *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1003 (9th Cir. 2008); *In re Berg Litig.*, 293 F.3d 1127, 1132 (9th Cir. 2002); *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 537 (2d Cir. 1999); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1099 (7th Cir. 1994); s*ee also Farley,* 115 F.3d at 1504  (the 1988 Amendments to the PAA "appear broad enough to create a federal forum for any tort claim even remotely involving atomic energy production.  The PAA on its face provides the sole remedy for the torts alleged in this case[.]")

releases from Rocky Flats and the risks of such exposure; and, Steven Wing, another epidemiologist who testified about the health effects of plutonium.  Pls.' Br. at 9-10.  Through the testimony of these witnesses and other evidence, plaintiffs tried to prove at trial and still seek to prove precisely what they alleged in their complaint:  that the releases of plutonium from Rocky Flats have harmed the offsite population, and this harm includes cancer and risk caused by property contamination.[11]

There is no new legal ground to tread here.  The PAA provides that "any suit asserting public liability," as defined in 42 U.S.C. § 2014(w), "shall be deemed to be an action arising under" the PAA itself, 42 U.S.C. § 2014(hh).  Having alleged a nuclear incident and asserted public liability, plaintiffs cannot simultaneously pursue a freestanding state-law claim based on the same facts because the PAA preemptively transforms such a claim into a public liability action under the PAA.  *See* 42 U.S.C. § 2014(hh).

**B.  Simultaneous Pursuit Of Freestanding State-Law Claims Would Conflict With The PAA's Exclusive Remedial Scheme.**

Through the PAA, Congress struck a balance between compensating the victims of nuclear incidents and fostering the development of nuclear energy and technology.  That balance is explicit in the PAA itself, where Congress found that "[t]he development, utilization, and control of atomic energy for military and for all other purposes are vital to the common defense and security," and that the PAA was necessary "[1] to protect the public and [2] to encourage the development of the atomic energy industry."  42 U.S.C. § 2012(a) &  (i); *see also Duke Power*,

---

[11] Plaintiffs emphasized this point in their petition for rehearing en banc, telling the Tenth Circuit that the "scientific evidence" they presented at trial showed "both an increased cancer risk and cancer incidence resulting from Defendants' plutonium releases."  Pls.' 10th Cir. En Banc Pet. at 5 (attached as Ex. 6).

438 U.S. at 64 (quoting § 2012(i) in noting the "dual purpose" of the PAA); *Lujan v. Regents of the Univ. of Cal.*, 69 F.3d 1511, 1514 (10th Cir. 1995) (same).

Allowing plaintiffs simultaneously to pursue a so-called freestanding state-law claim based on the same facts as their PAA claim would undermine the liability-limiting purpose of the PAA. *See*, *e.g.*, *Cook*, 618 F.3d at 1145 n.20 (noting that "the state-law 'interference with use' [nuisance] standard presents a lower threshold than the PAA's 'loss of use' standard"); *id.* at 1140 (noting that one purpose of the PAA amendments was "to limit recovery to the discrete group of injuries enumerated in § 2014(q)"). Nuclear operators would face the risk of crippling liability without any of the protections of the PAA, even though the claims are based on harm allegedly resulting from nuclear incidents.

The Ninth Circuit in *In re Hanford* rejected an argument like the one plaintiffs advance here. It held that, even though claims for medical monitoring were not compensable under the PAA absent a present bodily injury, plaintiffs who claimed only increased risk from an alleged nuclear incident could not pursue medical monitoring claims in state court under a state law theory:

> The PAA is the exclusive means of compensating victims for any and all claims arising out of nuclear incidents. *Berg*, 293 F.3d at 1132; *In re TMI Litig.*, 940 F.2d at 854; *see also* 42 U.S.C. § 2014(hh), (w) (federal courts have jurisdiction over public liability actions, defined as "*any* suit asserting . . . *any* legal liability arising out of or resulting from a nuclear accident") (emphasis added). This result is consistent with Congress's explicit intent in enacting the 1988 Amendments and avoiding piecemeal litigation arising from nuclear incidents. We therefore affirm the district court's exercise of jurisdiction over Plaintiffs' medical monitoring claims and its conclusion pursuant to our decision in *Berg* that they were not compensable under the Act. The district court properly denied Plaintiffs' request for a remand to state court.

*In re Hanford*, 534 F.3d at 1009.

That same reasoning applies here.  Plaintiffs have alleged a nuclear incident, and the PAA is their exclusive remedy.  Ultimately, plaintiffs may be unable to prove that they are among the persons who suffered bodily injury, property damage or loss of use of property as a result of plutonium releases from Rocky Flats.  But that means only that they cannot meet their burden of proving that they have suffered a form of damage compensable under the PAA, not that their claim arises outside of the PAA.  A failed PAA claim is just that; the failure of proof does not somehow transform that claim into a state-law claim that may be pursued outside of the PAA.

### C.       Plaintiffs Failed To Address Complete Preemption.

In their brief, plaintiffs do not address or attempt to distinguish the long line of cases cited above holding that the PAA completely preempts state-law claims arising from a nuclear incident.  Nor do plaintiffs cite any authority holding that a plaintiff simultaneously may pursue a PAA claim and a state-law claim based on the same facts.  Instead, plaintiffs assert that defendants "[n]ever raised a complete preemption argument," and thus waived it.  Pls.' Br. at 18.

Plaintiffs are wrong.  As the record shows, defendants argued on appeal that "[t]he 1988 PAA amendments completely federalized this area of the law by making a 'public liability action' under the PAA, 42 U.S.C. § 2014(w), 'the *exclusive* means of compensating victims for any and all claims arising out of nuclear incidents.'"  Defs.' 10th Cir. Br. at 25 (quoting *Hanford*, 534 F.3d at 1009) (attached as Ex. 2).

### D.       Plaintiffs' Additional Preemption Arguments Are Irrelevant And Premature.

Plaintiffs' arguments concerning express and conflict preemption are irrelevant because they confuse the question posed by the Court—whether the PAA permits or preempts standalone

state-law claims based on the same facts as the PAA claim—with the entirely different question of whether PAA § 2014(hh) preempts state tort law standards of care.

Plaintiffs quote the Tenth Circuit as "agree[ing] with the district court that § 2014(hh) does not expressly preempt state law," Pls.' Br. at 18 (quoting *Cook*, 618 F.3d at 1143), and note that the "Court of Appeals did not identify any other provision of the PAA that purported to expressly preempt state law." Pls.' Br. at 18. But that section of the Tenth Circuit's opinion dealt only with the issue of whether "federal nuclear safety standards . . . preempt state tort standards of care under the PAA," *Cook*, 618 F.3d at 1142, not whether the PAA provides the exclusive remedy for claims arising, as alleged here, from a nuclear incident and asserting public liability. The fact that the PAA § 2014(hh) does not expressly preempt state tort law (and in fact uses state law as the substantive rules for decision in PAA cases), is irrelevant to the question of whether the PAA preempts standalone state-law claims based on the same facts as the PAA claim.[12] Similarly, plaintiffs' conflict preemption argument focuses on preemption of state tort law duties of care within the PAA framework, not the PAA's preemption of standalone state-law claims. *See* Pls.' Br. at 20 n.16 (discussing whether federal safety standards preempt state tort law standards of care for purposes of PAA claims).

Plaintiffs similarly miss the mark in arguing that "[t]he Court of Appeals expressly noted that Defendants did not advance a field preemption argument on appeal," (Pls.' Br. at 18 (citing *Cook*, 618 F.3d at 1143 n.16, 1144 n.19)). They are again confusing two distinct preemption

---

[12] The Tenth Circuit expressly noted that "[i]n creating a federal cause of action under the PAA, however, Congress made clear its intention to limit recovery to the discrete group of injuries enumerated in § 2014(q) while simultaneously utilizing state law to frame the 'substantive rules for decision.'" *Cook*, 618 F.3d at 1140.

issues.  In the footnotes plaintiffs cite, the Tenth Circuit was referring to preemption of state tort law duty of care by federal safety standards, whereas the question here is whether the PAA completely preempts state claims arising out of nuclear incidents.

The extent to which state tort law standards of care have been preempted by federal nuclear safety standards will become relevant only if and when plaintiffs attempt to meet the Tenth Circuit's challenge on remand to "produc[e] additional evidence that could support a jury's finding that a nuclear incident occurred, in the form of 'loss of or damage to property, or loss of use of property' under 42 U.S.C. § 2014(q)."  *Cook*, 618 F.3d at 1142.  Until then, plaintiffs' inchoate arguments related to preemption of state tort law standards of care are premature and irrelevant to the second question posed in the Court's October 16, 2012 order.

### E.      The PAA's Exclusive Remedial Scheme Does Not Violate Due Process.

Plaintiffs argue, based on various non-controlling opinions, that the PAA violates their right of due process to the extent it does not allow them to recover based on a scientifically unfounded risk of harm.  Pls.' Br. at 29-32.  But their due process argument is directed to a question that is not before the Court:  whether the PAA preempts tort claims falling outside its express scope.  *See id.* at 32.  That is not the situation here:  plaintiffs explicitly allege a public liability action in their complaint and have litigated the case as a public liability action for over twenty years.  *See* Part II.A, *supra*.  For that reason, this Court need not consider whether the PAA preempts tort claims that do not allege a nuclear incident, do not assert public liability, and do not seek to recover for harm allegedly caused by the "radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material," 42 U.S.C. § 2014(q). *See Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944) ("If there is one doctrine more

21

deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable.").

Similarly, although plaintiffs ruminate extensively on constitutional concerns that might arise "if a legislature attempted to abolish certain categories of common-law rights in some general way," Pls.' Br. at 30, that question also is not before this Court because the PAA does not abolish categories of common law rights in some general way; it creates a federal remedial framework for claims arising out of a nuclear incident that incorporates state law while limiting recovery to plaintiffs who have suffered bodily injury or damage or loss of use of property. *See* 42 U.S.C. § 2014(hh).   Plaintiffs cite no authority for the proposition that such a remedial scheme violates the Due Process Clause.

Plaintiffs' due process argument also fails because it incorrectly assumes that the PAA "extinguish[ed] Plaintiffs' proven Colorado nuisance claim." Pls.' Br. at 29.  Plaintiffs have no "proven" Colorado nuisance claim:  the Tenth Circuit set aside the verdict, reversed the case, and directed this Court to vacate the judgment, which places the parties in the same position as if the case had never been tried.  *See* Part I.  Plaintiffs have not proven their case under the standard established by the Tenth Circuit for their claims.  *See Cook*, 618 F.3d at 1138-53.  Unless and until plaintiffs do so, their constitutional argument is unripe.

But even if plaintiffs were able to make such a showing, their argument, which sounds in substantive due process, would fail because the PAA's "public liability action" remedial framework—which carefully balances numerous competing interests and which contains various provisions favorable to both plaintiffs and defendants—is rationally related to the legitimate goal of limiting liability to promote the nuclear industry. *See Powers v. Harris*, 379 F.3d 1208, 1215

(10th Cir. 2004) (a statute that does not burden a fundamental right "passes constitutional muster, both as a matter of substantive due process and equal protection," if it is rationally related to a legitimate government interest).

## CONCLUSION

The authority cited above prevents this Court from entering a new judgment in plaintiffs' favor on the nuisance claim.  The previous jury verdict is a nullity and cannot support any judgment.  And in any event plaintiffs have no freestanding state-law claims based on the same facts as their PAA claims:  plaintiffs have asserted a nuclear incident, and their only claim is a public liability action under the PAA.

Instead, going forward, the Court must comply with the Tenth Circuit's mandate, which requires this Court to vacate the judgment, "tasked [plaintiffs] with producing additional evidence that could support a jury's finding that a nuclear incident occurred, in the form of 'loss of or damage to property, or loss of use of property' under 42 U.S.C. § 2014(q)," and directed this Court to "revisit the class certification question to determine whether Plaintiffs can establish the elements of their claims, including the PAA threshold requirements, on a class-wide basis." *Cook*, 618 F.3d at 1142, 1149.

DATED:  March 11, 2013                     Respectfully submitted,

                                           /s/ *Kevin T. Van Wart*
                                           Kevin T. Van Wart, P.C.
                                           Bradley H. Weidenhammer
                                           KIRKLAND & ELLIS LLP
                                           300 North LaSalle
                                           Chicago, IL  60654
                                           Phone:  312-861-2000
                                           Facsimile:  312-861-2200
                                           Email:  kvanwart@kirkland.com

                                           Joseph J. Bronesky
                                           SHERMAN & HOWARD L.L.C.
                                           633 Seventeenth Street, Suite 3000
                                           Denver, CO  80202
                                           Phone:  303-297-2900
                                           Facsimile:  303-298-0940

                                           *Attorneys for Defendants*
                                           *Rockwell International Corporation and*
                                           *The Dow Chemical Company*

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on March 11, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Gary B. Blum
blumg@s-d.com
griffiths@s-d.com

Joseph John Bronesky
jbronesk@shermanhoward.com
ddavis@shermanhoward.com
efiling@sah.com

Merrill Gene Davidoff
mdavidoff@bm.net
sleo@bm.net

Jean Marie Geoppinger
jeangeoppinger@wsbclaw.com

Lester C. Houtz
lester.houtz@bartlit-beck.com
renee.grimmett@bartlit-beck.com

Steven William Kelly
skelly@s-d.com
andolsekl@s-d.com
friesenl@s-d.com

Christopher Lane
clane@sah.com
dbaros@shermanhoward.com
efiling@sah.com

Ellen T. Noteware
enoteware@bm.net
csimon@bm.net

Louise M. Roselle
lroselle@msdlegal.com

Daniel R. Satriana, Jr.
satrianad@csbattorneys.com
epsteini@csbattorneys.com
kanes@csbattorneys.com

Ronald Simon
ron@1707law.com
mike@1707law.com

David F. Sorensen
dsorensen@bm.net

Steven D. Taylor
stephen.taylor@usdoj.gov
USACO.ECFCivil@usdoj.gov
USACO.ECFFLUAtty@usdoj.gov
annette.dolce@usdoj.gov

Martin Thomas Tully
martin.tully@kattenlaw.com

Juan Gonzalo Villasenor
juan.villasenor@usdoj.gov
Megan.Ingebrigtsen@usdoj.gov
USACO.ECFCivil@usdoj.gov

Carlotta P. Wells
carlotta.wells@usdoj.gov

/s/ *Kevin T. Van Wart*
Kevin T. Van Wart, P.C.