# Exhibit 6

**Nos. 08-1224, 08-1226, 08-1239**
_____

United States Court of Appeals
for the Tenth Circuit

MERILYN COOK; LORREN BABB; GERTRUDE BABB; RICHARD BARTLETT;
SALLY BARTLETT; WILLIAM SCHIERKOLK, JR.; AND DELORES SCHIERKOLK,
For Themselves and on Behalf of the Prospective Damages Subclass
Of the Property Class Certified by the District Court,

*Plaintiffs-Appellees-Cross-Appellants,*

v.

ROCKWELL INTERNATIONAL CORPORATION AND
THE DOW CHEMICAL COMPANY,

*Defendants-Appellants-Cross-Appellees.*

---

**PETITION OF PLAINTIFFS-APPELLEES
FOR REHEARING *EN BANC***

---

| | |
|---|---|
| Gary B. Blum | Merrill G. Davidoff |
| Steven W. Kelly | David F. Sorensen |
| SILVER & DEBOSKEY, P.C. | BERGER & MONTAGUE, P.C. |
| 1801 York Street | 1622 Locust Street |
| Denver, CO  80206 | Philadelphia, PA  19103 |
| Telephone:  (303) 399-3000 | Telephone:  (215) 875-3000 |

*Counsel for Plaintiffs-Appellees-Cross-Appellants*
[***Names of additional counsel appear on the signature page.***]

**TABLE OF CONTENTS**

Statement of Counsel Pursuant to F.R.A.P. 35(b)(1) ............................................................... 1

Argument in Support of Rehearing *En Banc* ........................................................................... 2

I.   The Panel's "Threshold PAA Element" Holding
     Is Fraught With Errors .................................................................................................. 2

     A.   The Panel Has Made New and Unsupportable Circuit Law ........................... 2

     B.   The Panel Departed from Circuit Law in Ignoring Defendants' Forfeiture
          and Judicial Admissions, Undertaking *De Novo* Rather Than Plain Error
          Review, and Holding That Plaintiffs Forfeited Defendants' Forfeiture ......... 7

II.  The Panel Opinion Seriously Misapplies Colorado Trespass Law ............................ 11

Conclusion .............................................................................................................................. 15

i

**ARGUMENT IN SUPPORT OF REHEARING *EN BANC***

**I.     The Panel's "Threshold PAA Element" Holding Is Fraught With Errors.**

Announcing new Circuit law, the panel held that "a plaintiff must establish an injury sufficient to constitute a nuclear incident as a threshold substantive element of any PAA claim." Op. 19. Therefore, the panel held, the verdict for Plaintiffs cannot stand because Judge Kane failed to instruct that Plaintiffs had to prove, in addition to the elements of trespass and nuisance under Colorado law, the existence of a "nuclear incident" as defined in the PAA (*i.e.*, loss of use of or damage to Plaintiffs' property). Op. 19, 24. Fundamental errors underlie this holding, which so radically departs from the statute, its history, and existing case law as to warrant the full Court's review. *En banc* review is particularly warranted because the panel strained to reach – and wrongly decided – an issue not even preserved for appeal.

**A.     The Panel Has Made New and Unsupportable Circuit Law.**

The panel based its "threshold PAA element" holding on three definitions in the Act: 42 U.S.C. §§ 2014(hh) ("public liability action"), 2014(w) ("public liability"), and 2014(q) ("nuclear incident"). Op. 16-19.[4] However, none of these definitions – read alone, together, or in other sections of the PAA – requires a plaintiff to prove "an injury sufficient to constitute a nuclear incident" as part of a PAA claim. They simply define terms that appear in various PAA sections addressing unrelated collateral issues.

For example, §§ 2210(a) and 2210(b)(1)(C) address the financial protection that licensees must maintain to cover public liability claims; §§ 2210(c) and 2210(d) provide

---

[4] All subsequent section cites are to 42 U.S.C.

2

for governmental indemnification from public liability arising from nuclear incidents; § 2210(e) caps aggregate public liability for a single nuclear incident; § 2210(m) addresses procedures for the settlement of public liability claims; § 2210(n)(2) provides for federal court jurisdiction over public liability actions; and § 2210(s) prospectively prohibits punitive damages for indemnified nuclear incidents.  Like the definitions, neither these nor any other provisions create substantive elements of Plaintiffs' PAA claims.

The very definitions on which the panel relied preclude the conclusion reached.  A "public liability action" is one "*asserting*" public liability (including a nuclear incident). § 2014(hh).[5]  This makes sense in the context of, for example, jurisdiction and indemnity, which logically turn on the complaint's assertions rather than trial proof.  But an element must be proved rather than merely asserted, and so a definition tied to assertions cannot create a substantive element.  Perhaps recognizing this problem, the panel effectively replaced the word "asserting" with "proving."  Lacking any textual basis for that word substitution, the panel offered only this unsupported justification, at Op. 18-19:

> Were a plaintiff only required to plead the presence of a nuclear incident, but never establish one, a "public liability action" would be completely indistinguishable from whichever state tort claim a particular PAA action incorporates.  In creating a federal cause of action under the PAA, however, Congress made clear its intention to limit recovery to the discrete group of injuries enumerated in § 2014(q) while simultaneously utilizing state law to frame the "substantive rules of decision."  42 U.S.C. § 2210(hh).

Respectfully, the panel got it exactly wrong:  Congress specifically intended to make PAA claims substantively "indistinguishable" from state law torts.  In its seminal PAA decision, *Silkwood v. Kerr-McGee Corp.*, the Supreme Court exhaustively analyzed

---

[5] All emphases are added unless otherwise stated.

3

the PAA and its legislative history, and made clear that "a State may . . . award damages based on its own law of liability," which the PAA does not substantively alter. 464 U.S. 238, 256 (1984). "'Since the rights of third parties who are injured are established by State law, there is no interference with the State law,'" unless damages are likely to exceed the amounts of required insurance and indemnity. *Id.* at 252 (quoting S. Rep. No. 296 at 9 (1957), *reprinted in* 1957 U.S.C.C.A.N. 1803, 1810 (SA1876, 1883)). Hence, "'the right of the State courts to establish the liability of the persons involved in the normal way [was] maintained'" under the PAA. *Id.* at 253 (quoting S. Rep. No. 296 at 22, *reprinted in* 1957 U.S.C.C.A.N. at 1823 (SA1896)).[6]

The 1988, post-*Silkwood,* PAA amendments confirm that state law determines liability for claims brought under the PAA: "the substantive rules of decision in [a public liability] action shall be derived from the law of the State in which the nuclear incident involved occurs[.]" § 2014(hh).[7] *See also* S. Rep. No. 100-218 at 13 (1987), *reprinted in*

---

[6] *See also* 464 U.S. at 254 ("'the rights of persons who are injured are established by State law'") (quoting S. Rep. No. 1605 at 26 (1966), *reprinted in* 1966 U.S.C.C.A.N. 3201, 3226 (SA1903, 1928)); *Silkwood v. Kerr-McGee Corp.*, 667 F.2d 908, 921 (10th Cir. 1981) (same), *rev'd on other grounds*, 464 U.S. 238 (1984); Doc. 01018095346 (July 7, 2009) at 30-43.

[7] The panel observed that under § 2014(hh), state law does not control if "such law is inconsistent with the provisions of [§ 2210]," and it then implied inconsistency because "[a] 'public liability action' arising under § 2210 . . . incorporates definitions provided by § 2014, including § 2014(q), which defines 'nuclear incident.'" Op. 19 n.10 (quoting, initially, § 2014(hh)). That logic, however, leads to an inconceivable result in light of Congress's initial and reaffirmed intent, discussed above, that state law would determine liability in PAA claims. If Congress had intended to change the PAA's decades-long premise of "no interference with the State law," it would have said so explicitly – which it did not. Congress would not have effected a radical redefinition of the law through an exception clause in a provision expressly confirming the primacy of state law. Indeed, in 1989, Defendant Rockwell's then-counsel concluded that after the 1988 Amendments, "it

4

1988 U.S.C.C.A.N. 1476, 1488 (SA1987, 1999) (same); *Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1503 (10th Cir. 1997) (the 1988 Amendments, while prospectively prohibiting the award of punitive damages, did "not otherwise supersede the decision in *Silkwood*"). Remarkably, the panel did not even mention *Silkwood* as it rewrote the law governing a PAA claim. *See* Op. 15-24. *But see id.* at 27-28 & n.17 (confirming that *Silkwood* remains good law on the question of federal preemption).

Congress knew how to require proof of a PAA-defined term had that been its intent. Thus, § 2210(q) states that "[n]o court may award costs of a precautionary evacuation unless such costs constitute a public liability." Plaintiffs do not seek precautionary evacuation costs and the absence of comparable language in any PAA sections relevant to their claims makes clear that they have no comparable burden of proof. *See Russello v. United States*, 464 U.S. 16, 23 (1983). There is simply no basis for the panel's transformation of a statutory pleading requirement (for jurisdiction, indemnity, and other purposes) into a substantive element of Plaintiffs' PAA claims.

Compounding its error, the panel held that the physical contamination of the entire Class Area with radioactive plutonium particles – found by the jury and unchallenged on appeal – does not constitute "damage to property." Op. 20-23. The panel reached this conclusion despite scientific evidence – unchallenged on appeal – of both an increased cancer risk and cancer incidence resulting from Defendants' plutonium releases. *See*

---

is still accurate to state that, 'Since its enactment by Congress in 1957, one of the cardinal attributes of the [PAA] has been its minimal interference with state law.'" John F. McNett, *Nuclear Indemnity for Government Contractors under the Price-Anderson Act: 1988 Amendments,* 19 Pub. Cont. L.J. 1, 7 (Fall 1989) (SA2019, 2023 (quoting S. Rep. 1605, *reprinted in* 1966 U.S.C.C.A.N. 3201, 3206).

5

Doc. 01018095346 (July 7, 2009) at 10-13, 21-23, 56-57. See generally also *Id.* at 9-23 summarizing evidence. This holding conflicts with § 2014(q). "The definition of 'nuclear incident' [was] designed to protect the public against *any form of damage* arising from the special dangerous properties of the materials used in the atomic energy program." S. Rep. No. 296 at 14, *reprinted in* 1957 U.S.C.C.A.N. at 1817 (SA1876, 1890). Under the standard Nuclear Energy Insurance Liability policy in effect in 1957, which Congress considered in adopting the PAA's definitions, *id.* at 1817-18 (SA1890-91), "property damage" included, "[p]hysical injury to *or* destruction *or radioactive contamination* of property[.]" 23 Fed. Reg. 6684 (1958). *See also* 10 C.F.R. § 140.91 at §III (2010) (current standard policy, using same definition).[8] In short, "radioactive contamination" constitutes "damage to property."

The panel reached the opposite conclusion through misplaced reliance on *June v. Union Carbide Corp.*, 577 F.3d 1234, 1248-52 (10th Cir. 2009), which affirmed the dismissal of medical monitoring claims because mere exposure to radiation is not "bodily injury" under § 2014(q). Op. 17-20. By analogy, the panel reasoned that something more than "the presence of plutonium" in soil is needed to show "damage to property," which the panel said means actual "physical injury" or "physical damage." Op. 20. This analogy fails. Although a person exposed to transient radiation, as in *June*, might not suffer a "bodily injury," damage to property differs fundamentally. Plutonium is

---

[8] *See also Aetna Cas. & Surety v Comm. Of Ky.,* 179 S.W.3d 830, 839 (Ky. 2006) ("Because radioactive contamination of property has unquestionably occurred at, in, and around Maxey Flats, we find 'property damage' has occurred as the term is defined within the policies.").

6

identified as "special nuclear material" within the definition of a nuclear incident, *see* §§ 2014(aa), 2014(q), and it is undisputed there have never been any federal plutonium-in-soil standards that would even purport to set a "safe" threshold for plutonium contamination.  Unlike the disease processes of the human body, once land has been contaminated with radioactive plutonium particles, which are impossible to fully remove, it has been physically damaged and no further manifestation of damage to the property is yet to develop.  In other words, as Congress and the evidence made clear, contaminating land with plutonium constitutes "damage to property."  The *en banc* Court should rehear the panel opinion on these key questions of liability under the PAA.

      **B.**    **The Panel Departed from Circuit Law in Ignoring Defendants' Forfeiture and Judicial Admissions, Undertaking *De Novo* Rather Than Plain Error Review, and Holding That Plaintiffs Forfeited Defendants' Forfeiture.**

The panel's substantive PAA errors are even more disturbing in the procedural context of this case.  For *eighteen years* of intense litigation, including the entire jury instruction process, Defendants never argued, or even hinted, that the PAA requires Plaintiffs to prove a "nuclear incident."  On appeal – in their original merits briefing, at oral argument, and in supplemental briefing ordered by the Court – Defendants confirmed their forfeiture by never asserting that, or where, they had preserved the issue for appeal.  Disregarding the record, the panel said it was merely "*arguable*" that Defendants "failed to preserve the issue[.]"  Op. 15.  Respectfully, the "arguable" characterization goes beyond charity – it is *undisputed* that the issue was unpreserved.

Defendants' unquestionable forfeiture should have been the end of the issue under

7