# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-00181-JLK

---

MERILYN COOK, *et al.*,

       Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

       Defendants.

---

## PLAINTIFFS' REPLY BRIEF PURSUANT TO ORDER OF OCTOBER 16, 2012

---

## <u>TABLE OF CONTENTS</u>

I.   The "Mandate Rule" Does Not Bar Re-Entry of Judgment on Plaintiffs' Colorado
     Nuisance Claim.................................................................................................................... 1

II.  The Tenth Circuit Held that the Jury was Properly Instructed on Plaintiffs' Class-wide
     Nuisance Claim.................................................................................................................. 11

III. Defendants' Preemption Arguments Fail ......................................................................... 21

IV.  Conclusion ........................................................................................................................ 27

## TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant:small-caps">Cases</span>

*Aguinaga v. United Food & Commercial Workers Int'l Union*,
  854 F. Supp. 757 (D. Kan. 1994) ...............................................................................4

*BioCore, Inc. v. Khosrowshahi*,
  No. 98-2031, 2004 WL 303194 (D. Kan. Feb. 2, 2004) ..........................................11

*Booker v. State*,
  511 So. 2d 1329 (Miss. 1987) ...................................................................................10

*City of Erie v. Pap's A.M.*,
  529 U.S. 277 (2000) .....................................................................................................9

*City of Wichita v. U.S. Gypsum Co.*,
  72 F.3d 1491 (10th Cir. 1996) ...................................................................................19

*ClearOne Commc'ns, Inc. v. Bowers*,
  643 F.3d 735 (10th Cir. 2011) .............................................................................12, 19

*Coleman v. B-G Maint. Mgmt. of Colorado, Inc.*,
  108 F.3d 1199 (10th Cir. 1997) ............................................................................16, 18

*Commonwealth v. Upton*,
  476 N.E.2d 548 (Mass. 1985) .....................................................................................9

*Cook v. Rockwell Int'l Corp.*,
  273 F. Supp. 2d 1175 (D. Colo. 2003) ..............................................................12, 23, 26

*Cook v. Rockwell Int'l Corp.*,
  580 F. Supp. 2d 1071 (D. Colo. 2006) ...................................................................14, 21

*Cook v. Rockwell Int'l Corp.*,
  618 F. 3d 1127 (10th Cir. 2010) ....................................................................... passim

*Cook v. Rockwell Int'l Corp.*,
  No. 08-1224, Doc. 01018490366 (10th Cir. Sept. 3, 2010)........................................5

*Dalal v. Alliant Techsystems, Inc.*,
  927 F. Supp. 1383 (D. Colo. 1996)..........................................................................4, 5

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993)................................................................................................14, 21

*Devon Energy Prod. Co. v. Mosaic Potash Cardlsbad, Inc.*,
   693 F.3d 1195 (10th Cir. 2012) ...................................................................22, 23

*El Paso Natural Gas Co. v. Neztsosie*,
   526 U.S. 485 (1999)........................................................................................23

*English v. Gen. Elec. Co.*,
   496 U.S. 72 (1990) ..........................................................................................24

*Erie R.R. v. Tompkins*,
   304 U.S. 64 (1938)...........................................................................................21

*Espinosa v. Florida*,
   505 U.S. 1079 ..................................................................................................10

*Francis v. Franklin*,
   471 U.S. 307 (1985) ........................................................................................18

*Gaskin v. State*,
   615 So. 2d 679 (Fla. 1993)..............................................................................10

*Grynberg ex rel. United States v. Praxair, Inc.*,
   183 F. App'x 724 (10th Cir. 2006) ....................................................................7

*Guidry v. Sheet Metal Workers Int'l Ass'n*,
   10 F.3d 700 (10th Cir. 1993) .............................................................................4

*Happ v. State*,
   618 So. 2d 205 (Fla. 1993)..............................................................................10

*Henry v. Storey*,
   658 F.3d 1235 (10th Cir. 2011) ......................................................................13

*Hicks v. Gates Rubber Co.*,
   928 F.2d 966 (10th Cir. 1991) ......................................................................5, 7

*Hill v. W. Elec. Co., Inc.*,
   672 F.2d 381 (4th Cir. 1982) ..........................................................................10

*Ileto v. Glock*,
   565 F.3d 1126 (9th Cir. 2009) ........................................................................25

*Kindergartners Count, Inc. v. Demoulin*,
   249 F. Supp. 2d 1214 (D. Kan. 2003)................................................................3

*Massachusetts v. Upton*,
   466 U.S. 727 (1984) ..........................................................................................9

*McKay v. U.S. et al.*,
    703 F.2d 464 (10th Cir. 1983) ...............................................................................26

*Ohio v. Robinette*,
    519 U.S. 33 (1996) ................................................................................................10

*Pap's A.M. v. City of Erie*,
    812 A.2d 591 (Pa. 2002) ........................................................................................9

*Ponte v. Real*,
    471 U.S. 491 (1985)................................................................................................9

*Powers v. Harris*,
    379 F.3d 1208 (10th Cir. 2004) .............................................................................25

*Procter & Gamble Co. v. Haugen*,
    317 F.3d 1121 (10th Cir. 2003) ...............................................................................4

*Roane v. Koch Indus.*,
    103 F. Supp. 2d 1286 (D. Kan. 2000)......................................................................6

*Sanders v. Buchanan*,
    407 F.2d 161 (10th Cir. 1969) ...............................................................................13

*Sherouse v. Ratchner*,
    573 F.3d 1055 (10th Cir. 2009) .............................................................................17

*Silkwood v. Kerr-McGee Corp.*,
    464 U.S. 238 (1984)..........................................................................................26, 27

*Sprague v. Ticonic Nat'l Bank*,
    307 U.S. 161 (1939)................................................................................................4

*Sprietsma v. Mercury Marine*,
    537 U.S. 51, 64 (2002) ..........................................................................................26

*State v. Chrisman*,
    676 P.2d 419 (Wash. 1984)....................................................................................10

*State v. Hallum*,
    606 N.W.2d 351 (Iowa 2000) ................................................................................10

*State v. Robinette*,
    685 N.E.2d 762 (Oh. 1997)....................................................................................10

*State v. Wedgeworth*,
    127 P.3d 1033, 2006 WL 319338, 2006 Kan. Unpub. LEXIS 61 (Kan. Feb. 10, 2006).........10

*Thompson v. Colo.*,
    60 F. App'x 212 (10th Cir. 2003) ...........................................................................7

*Townsend v. Lumbermens Mut. Cas. Co.*,
    294 F.3d 1232 (10th Cir. 2002) ...............................................................17, 19

*Trs. of the Colo. Laborers' Health & Welfare Trust Fund v. Sw. Concrete Placers, Inc.*,
    No. 05-2143, 2006 U.S. Dist. LEXIS 39236, 2006 WL 1658373 (D. Colo. June 8,
    2006) ...........................................................................................................3

*United Mine Workers v. Gibbs*,
    383 U.S. 715 (1966)........................................................................................21

*United States v. Bowling*,
    619 F.3d 1175 (10th Cir. 2010) ...........................................................................13

*United States v. Celio*,
    230 F. App'x 818 (10th Cir. 2007) .......................................................................13

*United States v. Haslip*,
    160 F.3d 649 (10th Cir. 1998) .............................................................................17

*United States v. Hicks*,
    146 F.3d 1198 (10th Cir. 1998) .....................................................................5, 6, 8

*United States v. Lang*,
    405 F.3d 1060 (10th Cir. 2005) .............................................................................6

*United States v. Mullins*,
    613 F.3d 1273 (10th Cir. 2010) .............................................................................3

*United States v. Shipp*,
    644 F.3d 1126 (10th Cir. 2011) .............................................................................7

*United States v. Smith*,
    116 F.3d 857 (10th Cir. 1997) .............................................................................7

*United States v. Vaccaro*,
    946 F.2d 902 (10th Cir. 1991) .............................................................................3

*United States v. Van Pelt*,
    938 F. Supp. 697 (D. Kan. 1996) .........................................................................8

*United States v. Velarde*,
    No. 98-391, 2008 WL 5993210 (D.N.M. May 16, 2008).......................................8

*United States v. Webb*,
    98 F.3d 585 (10th Cir. 1996), *cert. denied*, 519 U.S. 1156 (1997)..........................6

*United States v. West*,
646 F.3d 745 (10th Cir. 2011) ................................................................6

*Voelkel v. Gen. Motors Corp.*,
846 F. Supp. 1468 (D. Kan. 1994) .........................................................3

*Wankier v. Crown Equip. Corp.*,
353 F.3d 862 (10th Cir. 2003) ........................................................18, 19

*Washington v. Chrisman*,
455 U.S. 1 (1982) ...........................................................................6, 10

*Wheeler v. John Deere Co.*,
935 F.2d 1090 (10th Cir. 1991) ..........................................................4, 5

*Williams v. U.S. Elevator Corp.*,
920 F.2d 1019 (D.C. Cir. 1990) ...........................................................18

*Wofford v. Bonilla*,
326 F. App'x 475 (10th Cir. 2009) .......................................................18

*Wollam v. Wright Med. Group, Inc.*,
No. 10-3104, 2012 U.S. Dist. LEXIS 141376, 2012 WL 4510695 (D. Colo. Sept. 30,
2012) ...............................................................................................3

## STATUTES

18 U.S.C. § 924(c)(1) ............................................................................7

18 U.S.C. § 3742(f)(2)(B) ......................................................................6

28 U.S.C. § 1291 ..................................................................................5

28 U.S.C. § 1332 ..................................................................................2

28 U.S.C. § 1367 ..................................................................................2

42 U.S.C. § 2014(q) ............................................................................22

§ 301 of the Labor Management Relations Act of 1947 ...........................23

§ 502 of the Employee Retirement Income Security Act of 1974 ...............23

## OTHER AUTHORITIES

Page Keeton, et al., *Prosser and Keeton on Torts* 619 (5th ed. 1984) ..........25

*Webster's New Collegiate Dictionary*, 790, 46, 577 (1979) .......................16

Plaintiffs respectfully submit this brief pursuant to the Court's Order dated October 16, 2012 (Doc. No. 2334) ("Order")[1] in reply to "Defendants' Response Brief Pursuant to Order of October 16, 2012" (Doc. No. 2345) ("Defts' Br.").

The Court has directed briefing on two issues:  "1) Does the existing jury verdict in this case support entry of this Court's judgment on Plaintiffs' nuisance claim under Colorado law and diversity jurisdiction?;" and "2) May a plaintiff who brings a Price-Anderson Act claim simultaneously pursue a freestanding state-law claim based on the same facts?"  Order, p. 1.

For the reasons explained in Plaintiffs' opening brief,[2] the answer to both questions is "Yes."  Nothing in Defendants' response changes that.

## I.      The "Mandate Rule" Does Not Bar Re-Entry of Judgment on Plaintiffs' Colorado Nuisance Claim

Defendants pose two initial obstacles to re-entering or reinstating the jury's verdict on Plaintiffs' Colorado nuisance claim:  1) "because the Tenth Circuit's reversal nullified it"; and 2) because reinstating it would allegedly violate the mandate rule.  Defts' Br. at 2-3.  Neither represents a legitimate obstacle to reinstating the verdict on the Colorado nuisance claim.

In evaluating the competing arguments, the Court should keep in mind certain key premises that are indisputable or undisputed:

- The Court of Appeals recognized that the Price Anderson Act ("PAA") provides a federal cause of action.  *Cook v. Rockwell Int'l Corp.*, 618 F. 3d 1127, 1133 n.1. (10th Cir. 2010).

- The common law of Colorado provides a state-law cause of action for nuisance.

---

[1] The Court granted unopposed extensions to May 9, 2013.
[2] *See* Plaintiffs' Opening Brief Pursuant to Order of October 16, 2012 (Doc. No. 2344) ("Pls' Op. Br.").

- Plaintiffs' complaint alleged a *Colorado* state-law claim for nuisance, and asserted that this claim "also constitute[d]" a claim under the PAA.[3]

- Plaintiffs' complaint asserted diversity jurisdiction under 28 U.S.C. § 1332, as well as pendent and ancillary jurisdiction.[4]

- Plaintiffs satisfy all requirements for this Court to exercise diversity, pendent and ancillary jurisdiction.[5]

- The jury instructions and verdict form did not distinguish between (1) the elements of a Colorado nuisance or trespass claim, and (2) the elements of a federal PAA claim.

- The Tenth Circuit held, however, that the PAA's federal cause of action and Colorado's nuisance and trespass causes of action are *not* coterminous to the extent the Tenth Circuit held that damage to property/loss of use of property is "an essential element" that Plaintiffs *additionally* had to establish to prove a "nuclear incident" had occurred to prevail on their *PAA* claims.  The Tenth Circuit set aside the jury's verdict on Plaintiffs' PAA claims "[b]ecause the jury was not properly instructed on an essential element of Plaintiffs' *PAA* claims."  618 F.3d at 1142 (all emphases added unless stated otherwise).

- As the Court of Appeals stated:  "The presence of a *nuclear incident* is the hallmark of a *public liability* action."[6]  Defendants themselves emphasize that the PAA was designed to address "liability in the event of a *nuclear incident*."[7]

---

[3] *See* Pls' Op. Br. at 1-2.
[4] *Id.* at 1-5.  As we noted, the complaint in this matter was filed before enactment of 28 U.S.C. § 1367, codifying a district court's discretion to exercise supplemental jurisdiction.  *See* Pls' Op. Br. at 5.
[5] *Id.*
[6] *Cook,* 618 F.3d at 1140.
[7] Defts' Br. at 14.

Logically, a plaintiff's failure to prove an essential element of one claim does not affect another claim that does not require proof of the same element. Courts routinely apply this logic when deciding which counts to dismiss and which can proceed.[8] Given that damage to property/loss of use of property (as discussed by the Court of Appeals in this case) is an essential element of a *PAA* claim but *not* an essential element of a *Colorado* nuisance claim,[9] when the Tenth Circuit set aside the jury's verdict on Plaintiffs' PAA claims for the sole reason that this Court failed to instruct on that element, the Court of Appeals did not perforce set aside the jury's

---

[8] *See*, *e.g.*, *Trs. of the Colo. Laborers' Health & Welfare Trust Fund v. Sw. Concrete Placers, Inc.*, No. 05-2143, 2006 U.S. Dist. LEXIS 39236, at *4-5, 2006 WL 1658373, at *2 (D. Colo. June 8, 2006) ("The characterization of the claims as arising under state law is inaccurate. These causes of action arise from federal statutes, rather than from state law. Although the claims are similar to breach of contract claims and have elements in common, they are not identical. Thus, to the extent that the Defendants seek dismissal under state law, the motion must be denied.") (citations omitted); *Wollam v. Wright Med. Group, Inc.*, No. 10-3104, 2012 U.S. Dist. LEXIS 141376, at *5-14, 2012 WL 4510695, at *2-7 (D. Colo. Sept. 30, 2012) (although there are some "common elements" of claims alleging manufacture and defective design, court could grant summary judgment to defendant on plaintiffs' manufacture claim while denying summary judgment on defective design claim); *United States v. Vaccaro*, 946 F.2d 902, 1991 WL 204945, at *2, 1991 U.S. App. LEXIS 24692, at *5 (10th Cir. 1991) ("We do not think that the verdicts are inconsistent because the elements of the offenses are not identical. Although the evidence overlaps, the jury could have determined that the government failed to prove an element of the travel act counts, yet proved beyond reasonable doubt the elements of a conspiracy."); *Kindergartners Count, Inc. v. Demoulin*, 249 F. Supp. 2d 1214, 1232 (D. Kan. 2003) ("[I]n order to prevail on its unfair competition claim, KCI must initially prove copyright infringement, then prove an 'extra element' of either 1) breach of a fiduciary and confidential duty, or 2) confusion in the nature of 'palming off.'"); *Voelkel v. Gen. Motors Corp.*, 846 F. Supp. 1468, 1475-76, 1482 (D. Kan. 1994) (in explaining why it was granting defendant partial summary judgment on plaintiffs' negligence, breach of implied warranty of merchantability and strict liability claims but not plaintiffs' breach of express warranty, the court pointed out that, unlike the first three claims, "on an express warranty claim, the plaintiff is not required to prove that a specific defect exists in the product or that this defect existed when the product left the defendant's control"); *see also United States v. Mullins*, 613 F.3d 1273, 1284 (10th Cir. 2010) (defining a lesser included offense in criminal law as one that "includes some but not all of the elements of the offense charged," where "a jury could rationally convict the defendant of the lesser offense and acquit him of the greater offense").

[9] *See* Pls' Op. Br. at 25 ("**No** state require today, or required before the 1988 PAA Amendments, a total "loss of use" to recover for a nuisance. **All** states permit recovery for **interference** with use and enjoyment.") (emphases in original).

determination on Plaintiffs' Colorado nuisance claim. Indeed, the very problem that the Tenth

Circuit identified was that the jury had been allowed to render its verdict on Plaintiffs' PAA

claims *as if* they were identical to and coterminous with *state law* nuisance and trespass claims.

Therefore, Plaintiffs' pure state-law claim for nuisance and the jury's determination that

Plaintiffs proved it remain valid (unless preempted).

Nor is the mandate rule an obstacle to reinstating the verdict on Plaintiffs' Colorado

nuisance claim. Under the mandate rule, a district court on remand is "bound to carry the

mandate of the upper court into execution" and may "not consider the questions which the

mandate laid at rest." *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939) (citations

omitted). The mandate rule, however, does *not* foreclose rulings on issues neither presented to

nor resolved on appeal. *Id.* at 168 ("While a mandate is controlling as to matters within its

compass, on the remand *a lower court is free as to other issues*.").[10]

Plaintiffs acknowledge that the Tenth Circuit's mandate forecloses reinstating the jury

verdict on Plaintiffs' PAA claims. But the mandate does not preclude reinstating or re-entering

the verdict and judgment on Plaintiffs' Colorado nuisance claim because that issue was neither

presented to nor decided by the Court of Appeals.[11]

---

[10] *See also Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1126 (10th Cir. 2003) ("Although
a district court is bound to follow the mandate, and the mandate controls all matters within its
scope, . . . a district court on remand is free to pass upon any issue which was not expressly or
impliedly disposed of on appeal.") (quotations and citations omitted); *Guidry v. Sheet Metal
Workers Int'l Ass'n*, 10 F.3d 700, 706 (10th Cir. 1993); *Aguinaga v. United Food & Commercial
Workers Int'l Union*, 854 F. Supp. 757, 773 (D. Kan. 1994) ("The issue presented by the Union
was not resolved by the Tenth Circuit in the prior appeal, and the court does no violence to the
mandate rule by considering the issue herein.").

[11] Defendants distort the significance of *Wheeler v. John Deere Co.*, 935 F.2d 1090 (10th Cir.
1991), to these proceedings. Although *Wheeler* supports the noncontroversial proposition that
Plaintiffs have no *PAA* verdict left to reinstate, *Wheeler* itself recognizes that appellate courts
may reverse or vacate judgments or verdicts to varying degrees. *Id.* at 1097. In *Dalal v. Alliant
Techsystems, Inc.*, 927 F. Supp. 1383, 1385 (D. Colo. 1996), for example, this Court explicitly

To evaluate Defendants' argument, it is necessary to examine the mandate.[12]  The Tenth

Circuit's mandate in *Cook* was general and did not impose any particular limitations on this

Court's discretion on remand.  The judgment merely stated:  "The judgment of [the district] court

is reversed. The case is remanded to the United States District Court for the District of Colorado

for further proceedings in accordance with the opinion of this court."  *Cook v. Rockwell Int'l*

*Corp.*, No. 08-1224, Doc. 01018490366 (10th Cir. Sept. 3, 2010).  The conclusion of the Tenth

Circuit's opinion was similarly spare:  "Exercising appellate jurisdiction pursuant to 28 U.S.C. §

1291, this court **REVERSES** and **REMANDS** the case to the district court. We **DIRECT** the

district court to vacate the judgment and conduct further proceedings not inconsistent with

this opinion."  *Cook*, 618 F. 3d at 1133 (emphasis in original).

The Tenth Circuit plainly reversed this Court's entry of a judgment on Plaintiffs' *PAA*

claims.  *See id*. at 1138-42.  But nowhere did the Court of Appeals expressly or impliedly rule

out reinstatement of the nuisance verdict under Colorado law.[13]  As the Tenth Circuit has

---

distinguished *Wheeler*, stating, "Unlike in *Wheeler*, in the case before me, the court of appeals
did not reverse completely on the merits …."  *Id.*, citing *Dalal v. Alliant Techsystems, Inc.*, No.
94-1483, 72 F.3d 137, 1995 WL 747442, at *7 (10th Cir. Dec. 18, 1995).  The Tenth Circuit
*upheld* the Colorado nuisance instructions here, and therefore the jury's verdict as to that claim
may be reinstated.

[12] *See, e.g., United States v. Hicks*, 146 F.3d 1198, 1200 (10th Cir. 1998) ("the question here is
whether we specifically limited the scope of remand so as to prevent the district court from
resentencing on the remaining convictions after the government decided not to retry the section
924(c)(1) charge.  To answer this question we must look at the language of the mandate.")
(footnote omitted); *Hicks v. Gates Rubber Co.*, 928 F.2d 966, 969 (10th Cir. 1991) ("To decide
whether the district court violated the mandate, it is necessary to examine the mandate and then
look at what the district court did.").

[13] The Tenth Circuit also specifically concluded that the trespass jury instructions were
inadequate under Colorado law.  *Id.* at 1147-49.  Thus, under the mandate rule, the trespass
verdict under Colorado law cannot be reinstated.  But the Tenth Circuit said nothing similar that
would undermine the jury's determination that Plaintiffs established the elements of Colorado
nuisance law.

explained, district courts retain a great deal of discretion on remand, absent express limiting instructions from the appellate court:

> [T]he scope of the mandate on remand in the Tenth Circuit is carved out by exclusion: unless the district court's discretion is specifically cabined, it may exercise discretion on what may be heard.  Therefore we do not make inquiry into whether the issue presented is antecedent to or arises out of the correction on appeal.  Instead the district court is to look to the mandate for any limitations on the scope of the remand and, in the absence of such limitations, exercise discretion in determining the appropriate scope.  This approach has been characterized by a sister circuit as a presumption in favor of a general remand.

*United States v. West*, 646 F.3d 745, 749 (10th Cir. 2011) (holding that the district court erred in concluding that it lacked discretion because of the mandate rule to hear the restitution challenge on remand) (citations omitted).  *See also Roane v. Koch Indus.*, 103 F. Supp. 2d 1286, 1289 (D. Kan. 2000) ("when further proceedings follow a general remand, the lower court is free to decide anything not foreclosed by the mandate issued by the higher court.") (citations and internal quotation omitted).

Express limitations on the district court's discretion on remand must be clear:

> Our opinion in *United States v. Webb*, 98 F.3d 585 (10th Cir. 1996), *cert. denied*, 519 U.S. 1156, 137 L. Ed. 2d 229, 117 S. Ct. 1097 (1997), demonstrates the specificity that we require in order to limit a district court's authority to resentence on remand.  In that case, we held that after this court had directed the district court to impose a sentence within the range of 27-33 months, "the mandate rule prohibited the district court from departing downward from the guideline range enunciated."  *Id.* 98 F.3d at 587.  The mandate in Hicks's case lacks this type of specific direction.  Because we did not specifically limit the scope of the remand with regard to sentencing, the district court was able to exercise its discretion to expand the resentencing beyond simply vacating the sentence for the section 924 charge.  *See Moore*, 83 F.3d at 1235.

*Hicks*, 146 F.3d at 1201.[14]  The Tenth Circuit's mandate in *Cook* did not contain the type of specific limitations set forth in *Hicks* and *Webb* and thus is a general remand, leaving this Court

---

[14] *See also United States v. Lang*, 405 F.3d 1060, 1064 (10th Cir. 2005) (holding that a mandate "we **REVERSE** the district court's downward departures for both Langs, remanding both cases for resentencing pursuant to 18 U.S.C. § 3742(f)(2)(B), and **AFFIRM** the decision of the district

with the discretion to decide whether reinstatement or re-entry of the nuisance verdict and

judgment is appropriate.

The Tenth Circuit repeatedly has approved district courts' consideration of issues not

specifically foreclosed by its mandates.  For example, in *United States v. Shipp*, 644 F.3d 1126

(10th Cir. 2011), the Tenth Circuit affirmed the district court's reinstatement of a sentence that

the court of appeals had vacated, holding that the district court's resentencing on remand was

consistent with the mandate rule:

> The district court did not err.  It correctly determined that the prior panel's
> mandate precluded it from relying on the escape conviction to sentence Mr. Shipp
> as an armed career criminal.  The mandate did not limit the district court's
> discretion to rely on a different predicate offense to sentence Mr. Shipp as an
> armed career criminal.  Accordingly, we AFFIRM the judgment of the district
> court.

*Id.* at 1130.[15]

_____

court on the remaining issues" was a "general mandate" that did "not contain the type of
specificity necessary to limit a district court's authority to resentence on remand.") (emphases in
original).

[15] *See also United States v. Smith*, 116 F.3d 857 (10th Cir. 1997) (holding that the mandate did
not bar the district court on remand from reconsidering the entire sentencing package after the
Tenth Circuit vacated one count of conviction using this mandate: "we **reverse** Smith's
conviction under 18 U.S.C. § 924(c)(1) on Count III, and **remand** with directions that the
conviction and sentence thereon be set aside."); *Gates Rubber*, 928 F.2d at 969 ("The plain
language of the mandate neither requires nor prohibits further hearings. It does, however, call for
revised findings and conclusions necessary for the disposition of the case. There is nothing in the
language suggesting the district court on remand is bound by the original findings."); *Grynberg
ex rel. United States v. Praxair, Inc.*, 183 F. App'x 724, 730-31 (10th Cir. 2006) ("Here, while
this court's prior opinion specifically noted that 'the timing of Grynberg's discovery of [the facts
enumerated herein] is contrary to a finding that he could reasonably believe his claim against
Praxair had a scintilla of merit throughout the litigation,' *Grynberg,* 389 F.3d at 1059, the panel
did not explicitly limit the district court to considering only the 'timing' issue on remand.
Instead, the panel remanded in general terms 'for further discussion and findings.' *Id.* We
therefore reject Praxair's argument that the district court violated this court's mandate.");
*Thompson v. Colo.*, 60 F. App'x 212, 216 (10th Cir. 2003) ("If we were to now foreclose the
district court from considering a motion to amend on its merits, plaintiffs would be unfairly
disadvantaged in a way clearly not contemplated by, and contrary to the express language of, the
mandate.  All the mandate required was that the district court grant summary judgment to the
State on the issue of sovereign immunity and dismiss it as a defendant. It would not be contrary

Even if, as Defendants speculate, the Tenth Circuit did not contemplate the possibility that this Court would reinstate Plaintiffs' nuisance verdict and judgment under state law (which Plaintiffs do not concede),[16] this would not mean that such reinstatement is precluded by the Tenth Circuit's general mandate requiring this Court to vacate the PAA judgment. *See Hicks*, 146 F.3d at 1202 ("Our silence on the issue of enhancement on remand should not be construed as 'a tacit prohibition to such action.' . . . In short, after we vacate a count of conviction that is part of a multi-count indictment, a district court 'possesses the inherent discretionary power' to resentence a defendant on the remaining counts de novo unless we impose specific limits on the court's authority to resentence. Simple commands such as 'vacate,' 'set aside,' and 'affirm' are not sufficiently specific to limit that power.") (citations omitted).[17]

Finally, it is not uncommon for courts on remand to issue precisely the sort of reinstatement order that Plaintiffs seek here – reinstatement under independent state-law grounds

to the mandate to allow plaintiffs to amend their complaint or, alternatively, to add Mr. Fisher in his official capacity as a defendant pursuant to Federal Rule of Civil Procedure 21, before doing so.") (footnote omitted).

[16] Although Defendants appear to argue the Tenth Circuit foreclosed the possibility of resolution of this case without a new trial, the words the Tenth Circuit actually used in reference to a new trial – "in the event of a re-trial" – evince none of the certitude that Defendants now ascribe to the Court of Appeals. *Cook*, 618 F.3d at 1143 n.15 ("While this court's ruling that Plaintiffs must establish the existence of a nuclear incident as a threshold element of their claims independently warrants remand, it is proper to nonetheless decide questions of law raised in this appeal that are certain to arise again in the event of a re-trial in order to guide the district court on remand.") (citation omitted). Moreover, the Court of Appeals' decision not to address other evidentiary issues is plainly not equivalent to an affirmative ruling barring reinstatement on state law grounds.

[17] *See also United States v. Van Pelt*, 938 F. Supp. 697, 706 (D. Kan. 1996) ("Therefore, the fact that the Tenth Circuit's opinion and mandates did not set forth with specificity all of the possible permutations that might conceivably occur following remand is not an indication that enhancement is unequivocally barred by the scope of the mandate."); *United States v. Velarde*, No. 98-391, 2008 WL 5993210, at *35 (D.N.M. May 16, 2008) ("Because these cases entitled to such an inquiry are so rare, it was impossible for the Tenth Circuit to craft a specific mandate that would encompass all the possibilities that the district court could face. The Court believes, however, that by granting Velarde a new trial based on Sinclair it has followed the instructions of the Tenth Circuit and has acted in the interest of justice.").

following a reversal on federal grounds.  The United States Supreme Court has observed that state courts frequently reinstate judgments on state law grounds on remand after the Supreme Court has reversed on federal grounds:  "In a series of recent cases, this Court has reversed a state-court decision grounded on a provision in the Federal Bill of Rights only to have the state court reinstate its judgment, on remand, under a comparable guarantee contained in the State Constitution."  *Ponte v. Real*, 471 U.S. 491, 503 n.4 (1985) (citations omitted) (Stevens, J., concurring).  For example, in *Pap's A.M. v. City of Erie*, 812 A.2d 591 (Pa. 2002), the Pennsylvania Supreme Court, on remand, reinstated its previous verdict after the United States Supreme Court in its opinion had stated, "Erie's ordinance is a content-neutral regulation that is valid under *O'Brien*.  Accordingly, the judgment of the Pennsylvania Supreme Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion."  *City of Erie v. Pap's A.M.*, 529 U.S. 277, 302 (2000); *see also Pap's A.M. v. City of Erie*, 812 A.2d 591, 593 (Pa. 2002) ("This matter is before this Court upon remand following the United States Supreme Court's reversal of our decision in *Pap's A.M. v. City of Erie*, 553 Pa. 348, 719 A.2d 273 (Pa. 1998) ('*Pap's I*')…. For the reasons set forth below, we find that the ordinance violates the freedom of expression provision of Article I, § 7 of the Pennsylvania Constitution.  Accordingly, we reinstate our prior order, which severed the unconstitutional provisions (§§ 1(c) and 2) from the ordinance, and we reverse the order of the Commonwealth Court.").[18]

---

[18] *See also Commonwealth v. Upton*, 476 N.E.2d 548, 551 (Mass. 1985) (Massachusetts Supreme Court reinstated its previous order based on Massachusetts constitutional law after reversal and remand by the United States Supreme Court in *Massachusetts v. Upton* 466 U.S. 727, 735 (1984) (in which the United States Supreme Court had stated, "The judgment of the Supreme Judicial Court of Massachusetts is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.")); *State v. Chrisman*, 676 P.2d 419, 424 (Wash. 1984) (on remand, the Washington Supreme Court reinstated its initial decision based on independent state constitutional grounds after the prior Washington ruling had been reversed and remanded by the United States Supreme Court in *Washington v. Chrisman*, 455 U.S. 1, 9-10 (1982) (in which the

On appeal in this case, the Tenth Circuit held that Plaintiffs have no PAA claim absent a showing of damage to property or loss of use of property (as the Court interpreted those requirements). *Cook*, 618 F. 3d at 1138-42. The Tenth Circuit did not reverse or vacate the jury verdict based on independent state nuisance law grounds. Thus, far from being a "nullity," as Defendants contend, Plaintiffs' jury verdict can and should be reinstated under Colorado nuisance law. To deny reinstatement merely because of the Tenth Circuit's mandate vacating the PAA judgment would be manifestly unjust. *See BioCore, Inc. v. Khosrowshahi*, No. 98-2031,

---

United States Supreme Court had stated, "The seizure of the drugs pursuant to respondent's valid consent did not violate the Fourth Amendment. The judgment of the Supreme Court of Washington is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.") (footnote omitted)); *State v. Robinette*, 685 N.E.2d 762, 772 (Oh. 1997) (re-affirming the judgment of the Ohio court of appeals after the prior affirmance was vacated by the United States Supreme Court in *Ohio v. Robinette*, 519 U.S. 33, 40 (1996) (in which the Supreme Court had stated, "The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and 'voluntariness is a question of fact to be determined from all the circumstances,' 500 U.S. at 248-249. The Supreme Court of Ohio having held otherwise, its judgment is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.")); *State v. Wedgeworth*, 127 P.3d 1033 (Kan. 2006) (*per curiam*) (after the United States Supreme Court vacated the judgment entered by the Kansas Court of Appeals, the Kansas Supreme Court affirmed the same, previously vacated judgment); *State v. Wedgeworth*, 127 P.3d 1033, 2006 WL 319338, 2006 Kan. Unpub. LEXIS 61 (Kan. Feb. 10, 2006) (*per curiam*) (after the United States Supreme Court vacated the judgment entered by the Kansas Court of Appeals, the Kansas Supreme Court affirmed the same, previously vacated judgment); *State v. Hallum*, 606 N.W.2d 351, 352-53 (Iowa 2000) (on remand from the United States Supreme Court, the Iowa Supreme Court held "that the defendant forfeited his right to object to the admission of the statement in question because he procured the witness's unavailability at trial"; reaffirming the defendant's convictions); *Happ v. State*, 618 So. 2d 205 (Fla. 1993) (on remand from the U.S. Supreme Court for further reconsideration in light of *Espinosa v. Florida*, 505 U.S. 1079 (1992), the Florida Supreme Court again affirmed the defendant's sentence of death); *Gaskin v. State*, 615 So. 2d 679, 680 (Fla. 1993) (same); *Booker v. State*, 511 So. 2d 1329, 1332 (Miss. 1987) ("Now, having reviewed our prior decision in light of *Caldwell*, as mandated by the United States Supreme Court, we are of the opinion that our former determination should be and is reaffirmed."); *Hill v. W. Elec. Co., Inc.*, 672 F.2d 381, 388 (4th Cir. 1982) ("upon remand following the vacation of a judgment for a jurisdictional defect, it may be appropriate for a trial court to reinstate the judgment once the defect has been cured. This principle must certainly extend past the reinstatement of a judgment itself to reinstatement of findings and conclusions supporting it, and past true jurisdictional defects to less fundamental defects not affecting the merits.").

2004 WL 303194, at *3 (D. Kan. Feb. 2, 2004) ("To date, neither this Court nor the Tenth

Circuit has explicitly ruled on plaintiff's request for exemplary damages and attorney fees. To

summarily deny the request as beyond the scope of the Tenth Circuit mandate would not be in

the interest of justice and would be inconsistent with the spirit of the mandate.").

## II.   <u>The Tenth Circuit Held that the Jury was Properly Instructed on Plaintiffs' Class-wide Nuisance Claim</u>

The Court of Appeals confirmed that "[t]he jury was properly instructed on the elements

of a nuisance claim as well as the definitions of 'substantial' and 'unreasonable.'"  *Cook*, 618

F.3d at 1145.  As Plaintiffs explained previously, the Tenth Circuit's "predict[ion]" that

Colorado "would not permit recovery premised on a finding that an interference, in the form of

anxiety or fear of health risks, is 'substantial' and 'unreasonable' unless that anxiety is supported

by some scientific evidence," 618 F.3d at 1146, has no bearing on the jury's conclusions on the

class-wide nuisance claim that Plaintiffs proved, pursuant to jury instructions that the Court of

Appeals approved.[19]  Indeed, the jury was expressly instructed that "an interference, in the form

of anxiety or fear of health risks" was "<u>not</u>" a form of class-wide interference recoverable by the

Class, but was pertinent **only** to potential later proceedings.[20]  The **only** forms of *classwide*

interference the jury was permitted to consider were (1) "causing Class members to be exposed

to plutonium and placing them at some increased risk of health problems as a result of this

exposure"; or (2) "causing objective conditions that pose a demonstrable risk of future harm to

the Class area".[21]  Hence, the jury was expressly instructed not to rule against Defendants based

on a "finding of an interference, in the form of anxiety or fear of health risks."  That should end

---

[19] *See* Pls' Op. Br. at 5-12.
[20] Pls' Op. Br. at 8 (quoting Instruction No 3.28) (emphasis in instruction).
[21] *See* Pls' Op. Br. at 5-6; Instruction No. 3.6 (Doc. No. 2121-2), p. 38.

the matter since a jury "'is presumed to follow its instructions.'"  *ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 768 (10th Cir. 2011) (citation omitted); Pls' Op. Br. at 9 (citing cases).

In their brief on appeal, Defendants cited to this Court's general discussion of nuisance in *Cook IX* with a "see also" cite to the Court's Order dated May 17, 2005.  *See* Defts' Br., Exh. 2 at 52 (copy of Defendants' brief in the Court of Appeals).  In *Cook IX*, in 2003, this Court stated that "'fears . . . even though they may be without scientific foundation or other support in fact'" could support a nuisance claim.  *Cook v. Rockwell Int'l Corp.*, 273 F. Supp. 2d 1175, 1204 (D. Colo. 2003) (citation omitted).  By the time of *trial* in 2005, however, this statement related *solely* to the jury instruction regarding potential later, individual proceedings, namely Instruction No. 3.28.  It is in **that** instruction – about **later** proceedings – that this Court stated that, "[a]n individual Class members' fear, anxiety or mental discomfort can also be based on concerns that may be without scientific foundation or other support in fact."  Instruction No. 3.28 (Doc. No. 2121-2), p. 77.  *See also* Jury Verdict Form (Doc. No. 2117), p. 29.  *See* Pls' Op. Br. at 7-9.

By the time of *trial*, the relevant point in time, the jury was instructed that the "only" forms of *class-wide* interference it could consider were those identified in Instruction 3.6, *i.e.*, "causing Class members to be exposed to plutonium and placing them at some increased risk of health problems as result" and/or "causing objective conditions that pose a demonstrable risk of future harm to the Class Area[.]"  *See* Instruction No. 3.6 (Doc. No. 2121-2), p. 38.  *See also* Jury Verdict Form (Doc. No. 2117), pp. 4-7 (questions regarding nuisance claim against Dow and Rockwell).  Furthermore, the jury was expressly instructed that

> In deciding whether either or both forms of possible class-wide interference exists, you should **not** consider whether individual Plaintiffs or Class members are or might be fearful, anxious or otherwise disturbed by any real or perceived risks relating to Rocky Flats and the Defendants' activities there or the conditions they left behind.  Individual reactions to

these matters are not relevant to the question of whether a class-wide interference exists.

You also should **not** consider in deciding this element of the nuisance claim whether Defendants' activities caused any decrease in the value of Class members' properties.  The law does not consider a decrease in property value to be an interference with the use and enjoyment of property.

Instruction 3.7 (Doc. No. 2121-2), p. 42.  *See also* Instruction 3.8 (Doc. No. 2121-2), p. 44 ("In deciding whether Plaintiffs have proven that the interference they claim is substantial and unreasonable, **you may only consider** any interference with Class members' use and enjoyment of property you find based on Instruction Nos. 3.6 and 3.7.").  As this Court explained, Defendants' earlier, proposed instruction regarding "unfounded fears" "was unnecessary in light of my *subsequent* determination that interference based on Class members' fears and concerns would *not* be included in the class trial."  *See* Memorandum Opinion Regarding Jury Instructions, Dec. 7, 2006 (Doc. No. 2205), p. 35.[22]

---

[22] Unnecessary and superfluous jury instructions need not be included.  *See, e.g., Henry v. Storey*, 658 F.3d 1235, 1242 (10th Cir. 2011) ("Even when a proffered jury instruction properly states the law, a district court does not abuse its discretion by rejecting the instruction so long as the material issues in the case have been comprehensively and correctly covered in the general instructions." ) (quotation omitted); *United States v. Bowling*, 619 F.3d 1175, 1184-85 (10th Cir. 2010) ("The district court more than adequately conveyed – with its use and explanation of the term 'knowingly' – that the jury could not find Bowling guilty of bank fraud if the jury found he acted in good faith.  A separate good faith instruction was not necessary 'because a finding of the intent to defraud … necessarily implies that there was no good faith.'  And, the district court's charge to the jury provided a correct statement of the law.") (citation omitted); *United States v. Celio*, 230 F. App'x 818, 829 (10th Cir. 2007) ("Because the court had already instructed the jury moments earlier to disregard any information related to the FBI's prior investigations of Celio, another curative instruction was not necessary."); *Sanders v. Buchanan*, 407 F.2d 161, 163 (10th Cir. 1969) ("The requested instructions were superfluous.  They dealt with facts which were extraneous to the agreed issue in the case; they simply were not relevant.  The instructions should be confined to the issues in the case and the pertinent facts developed by the evidence.  Even though a requested instruction may be a correct statement of abstract law, it should be refused if it is directed to a matter outside the issues presented and the evidence adduced.") (quotations and footnote omitted).

In light of Defendants' (outdated and misleading) citation to *Cook IX*, however, the Court of Appeals said:

> [We] predict that the Colorado Supreme Court would not permit recovery premised on a finding that **an interference, in the form of anxiety or fear of health risks**, is "substantial" and "unreasonable" unless that anxiety is supported by some scientific evidence. The district court erred in concluding otherwise.

618 F.3d at 1146.  The jury was repeatedly instructed, of course, that "an interference, in the form of anxiety or fear of health risks" was *not* a form of *class-wide* interference that Plaintiffs alleged or sought recovery on.  Thus, the Tenth Circuit could not have been addressing the class-wide nuisance claim, but only the potential *third* form of interference that the jury was asked to decide on for purposes of *later* proceedings.[23]  *See* Instruction No. 3.28 (Doc. No. 2121-2), pp. 76-77.[24]

Defendants acknowledge that the Court "instructed the jury to ignore individual class members' fears and anxieties for purposes of the class-wide nuisance claim" yet nevertheless argue that "the jury [was] free to find that an interference was 'substantial' and 'unreasonable'

---

[23] In their brief to the Tenth Circuit, Defendants added a "*see also*" citation to this Court's Order of May 17, 2005.  *See* Defts' Br., Exh. 2 at 52 (citing Order of May 17, 2005 at 5).  In the portion of that May 17, 2005 Order Defendants cited, this Court simply confirmed that "proof of . . . class-wide exposure to plutonium and resulting class-wide increase in human health risk would be sufficient to establish an interference with Class members' use and enjoyment of property[]."  *See* Doc. No. 1338, p. 5.  The Tenth Circuit confirmed that this was correct.

[24] Defendants fail to acknowledge their own outdated discussion of *Cook IX* and claim – without citation to any portion of the record – that "Based on [*Cook IX*], this Court allowed plaintiffs to present the jury with evidence – in the Tenth Circuit's words – 'that any exposure to plutonium whatsoever increases the risk of health problems to some degree.'"  Defts' Br. at 5 n. 3.  What point Defendants are trying to make here is a mystery.  This Court scrutinized the scientific evidence that Plaintiffs presented regarding the health risks of plutonium – including scientific testimony that even one atom of plutonium if inhaled can cause cancer, *see* Tr. 3639 (Goble), 5743-44 (Wing) – and found that it fully satisfied all requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and F.R.E. 702.  *See Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071 (D. Colo. 2006) ("*Cook XIII*").  Defendants did not appeal any of these findings, and therefore have waived any argument challenging them.  *See* Pls' Op. Br. at 9-12.

based on the fears and anxieties of 'normal' or 'reasonable' members of the community[.]"[25]

Defendants construct this flawed argument by misreading Instructions 3.9 and 3.10:

> Instructions 3.9 and 3.10 state that an interference is "substantial" if "a normal person in the community would find it offensive, annoying or inconvenient" and "unreasonable" if the gravity of the harm outweighs the utility of the conduct. [citing Doc. No. 2121-2, pp. 46-49] The nuisance instructions thus allowed the jury to conclude that "some increased risk" from plutonium exposure was "substantial" interference if the jury found that a normal person in the community would have irrational (*i.e.,* scientifically unfounded) fear of risk from plutonium exposure.[26]

Of course, not only was the jury *not* told it could equate an "irrational" or "scientifically unfounded" "fear" with a "substantial" class-wide interference, the jury was repeatedly instructed that such "irrational" "fears" of Class members were *irrelevant* to the *class-wide* nuisance claims.  *See* Instructions 3.6, 3.7, 3.28.  Furthermore, Instruction 3.9 stated that:

> An interference with a person's right to use and enjoy their land is "substantial" if the interference is significant enough that a normal person in the community would find it offensive, annoying or inconvenient.  In this case, that means you must determine whether a **reasonable** landowner of normal sensibilities would find the proven interference caused by Dow or Rockwell to be offensive, annoying or inconvenient.  "Normal sensibilities" for these purposes means a person who is neither unusually sensitive nor unusually insensitive to the interference you are considering.
>
> In deciding whether any interference proven by Plaintiffs is substantial under this test, you must consider **only** the magnitude or level or interference that is common to the Class as a whole, and not any more severe level of interference that may have been suffered by some Class members but not others.

Instruction 3.9 (Doc. No. 2121-2), p. 46.

This instruction expressly instructed the jury to decide whether the "proven interference" – *i.e.* "causing Class members to be exposed to plutonium and placing them at some increased

---

[25] Defts' Br. at 8-9, n.5 (emphases and citations omitted).
[26] Defts' Br. at 8 (footnote omitted).

risk of health problems as result" and/or "causing objective conditions that pose a demonstrable risk of future harm to the Class Area", *see* Instruction No. 3.6 – would be "offensive, annoying or inconvenient" to a "reasonable landowner of normal sensibilities."  The ordinary meanings of "offensive" "annoying" and "inconvenient" are, respectively, "causing displeasure or resentment", "irritating" and "giving trouble or annoyance."[27]  None of these words means or is a synonym for "irrational," "fear" or "unfounded."  And Instruction 3.9 expressly directed the jury to use as a reference a "**reasonable** landowner of normal sensibilities" – the *opposite* of permitting the jury to base its verdict on "irrational[ity]."  To top it off, the jury was told "you must consider **only** the magnitude or level or interference that is common to the Class as a whole, and not any more severe level of interference that may have been suffered by some Class members but not others," which further ensured that the jury would *not* rely on or use extreme potential reactions of any kind as a basis for finding the "proven interference" to be "substantial."[28]

In short, the instructions on Plaintiffs' class-wide nuisance claim when viewed "in their entirety" as they must be, were proper and the Tenth Circuit so found.  *See Coleman v. B-G Maint. Mgmt. of Colorado, Inc.*, 108 F.3d 1199, 1202 (10th Cir. 1997) (a court "must view the instructions in their entirety, deciding not whether the instruction was completely faultless, but

---

[27] *Webster's New Collegiate Dictionary*, 790, 46, 577 (1979).

[28] Defendants cite Plaintiffs' brief in the Tenth Circuit (*see* Defts' Br. at 9) but the cited portion only underscores that Defendants failed to make the argument to the Tenth Circuit that they press here.  Defendants quote Plaintiffs as stating that Defendants' "'argument appears to claim that plaintiff's proof of a health risk was required to meet some (unspecified) hurdle of scientific certainty even before a jury might weigh whether the interference was substantial and unreasonable'" and "'Colorado nuisance law does not specify any preferred level of scientific certainty regarding a health risk.'"  Defts' Br. at 9 (quoting Pls' 10th Cir. Br. at 56).  Nothing in the cited portions of Plaintiffs' appellate brief states or even suggests that Plaintiffs agreed that Defendants had challenged the class-wide verdict on nuisance in the way Defendants *now* claim they did.

whether the jury was misled in any way. [ ] Reversal is warranted when a deficient jury

instruction is prejudicial.") (citation omitted).[29]

Instruction 3.28 could not have been prejudicial, because it was expressly restricted to

*non-class* issues.[30]  The Court plainly and specifically cabined Instruction 3.28 (where the

"scientifically unverifiable risk" language actually resides), within a phase of the case wholly

separate from the class-wide nuisance verdict and judgment Plaintiffs now seek to reinstate.  The

Court's detailed special verdict form asked the jury:

> Do you find [Defendant] interfered with Class members' use and enjoyment of
> their properties in the Class Areas in one or both of these ways: (A) by causing
> Class members to be exposed to plutonium and placing them at some increased
> risk of health problems as a result of this exposure *(see Instruction Nos. 3.7,
> 3.18)*; and/or (B) by causing objective conditions that pose a demonstrable risk of
> future harm to the Class Area *(see Instruction Nos. 3.7, 3.18)*?[31]

Thus, the special verdict instructions for class-wide nuisance (1) specifically directed the jurors

to Instruction 3.7, which cautioned the jurors "you should not consider whether individual

Plaintiffs or Class members are or might be fearful, anxious or otherwise disturbed by any real or

---

[29] Mere conjecture about potential jury confusion is not enough to invalidate otherwise correct
and adequate jury instructions.  *United States v. Haslip*, 160 F.3d 649, 655 (10th Cir. 1998)
("Fourth, Mr. Haslip claims it is necessary in a joint trial to instruct the jury to the effect the
conduct and statements of one defendant cannot be considered in regard to the other defendant.
He argues if such an instruction is not given, the jury 'possibly' is misled into improperly
attributing one defendant's conduct to the other.  The trial court correctly determined that
Mr. Haslip's proposed instruction was unnecessary.  The instructions as a whole made clear the
jury could not attribute the statements or conduct of one defendant to the other defendant.
Mr. Haslip's concern the jury is 'possibly' misled absent his proposed instruction is pure
conjecture and fails to demonstrate prejudice.").
[30] *See also Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1242 (10th Cir. 2002) (cited
in Def. Br. at 10) ("A faulty jury instruction requires reversal when (1) we have substantial doubt
whether the instructions, considered as a whole, properly guided the jury in its deliberations, and
(2) when a deficient jury instruction is prejudicial."); *Sherouse v. Ratchner*, 573 F.3d 1055, 1059
(10th Cir. 2009) ("An erroneous jury instruction requires reversal [ ] 'only if the error is
determined to have been prejudicial, based on a review of the record as a whole.'") (citation
omitted).
[31] *See* Doc. No. 2117, pp. 4-6.

perceived risks…," and (2) limited the forms of interference the jurors could consider to the two class-wide interferences.  As jurors are presumed to follow a court's instructions, *see* Pls' Op. Br. at 9 (citing cases), there is no risk of prejudice here.

For example, in *Coleman*, 108 F.3d at 1206 (cited in *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 867 (10th Cir. 2003), in turn cited in Defts' Br. at 10), the Tenth Circuit affirmed the verdict on the plaintiffs' breach of contract claim despite a fatal error in the instructions on a different claim for termination of employment without good cause. In *Wofford v. Bonilla*, 326 F. App'x 475, 478 (10th Cir. 2009), the court affirmed the verdict and declined to reach the plaintiff's objection to an instruction on contributory negligence where the jury had found for the defendant on negligence.  The court held the erroneous instruction had not tainted the jury's consideration of the defendant's negligence because "the jury's task was laid out in discrete steps" and thus the instruction, "viewed in the context of all the instructions as well as the verdict form, did not mislead the jury[.]"  *Id.*

In *Williams v. U.S. Elevator Corp.*, 920 F.2d 1019, 1024 (D.C. Cir. 1990), cited with approval by the Tenth Circuit in *Coleman*, the court held that "[b]ecause the district court carefully employed a verdict form requiring special verdicts on the questions of negligence and damages, it is easy to ascertain that the erroneous damages instruction could not have influenced the negligence verdict."  The D.C. Circuit cited the time-honored maxim that courts "'presume[ ] the jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions ... and strive to understand, make sense of, and *follow* the instructions given.'"  *Id*. at 1024 (quoting *Francis v. Franklin,* 471 U.S. 307, 324 n. 9 (1985) (emphasis as supplied)).

Tellingly, none of the cases Defendants cite involved an erroneous instruction that was part of a *separate* and *discrete* claim or phase of the case where the jury was properly instructed not to blur the lines between those claims or phases.  Rather, in every case the faulty instruction was on an essential element of the specific claim that was ultimately reversed.  *See Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 867 (10th Cir. 2003) (reversing products liability verdict where trial court failed to instruct the jury on existence of a safer alternative design); *Townsend*, 294 F.3d at 1242 (reversing defense verdict in employment discrimination case where judge failed to instruct that jury could infer discriminatory motive if employer's explanation was pretextual); *City of Wichita v. U.S. Gypsum Co.*, 72 F.3d 1491, 1495 (10th Cir. 1996) (reversing verdict in fraud case where trial court added its own gloss to jury instructions of elements of claim, narrowing scope of what facts would be considered "material").

As a jury "'is presumed to follow its instructions,'" *ClearOne Commc'ns*, 643 F.3d at 768 (citation omitted), the jury is presumed to have limited its class-wide nuisance findings to the two forms of interference it was instructed it could consider on a class-wide basis.  Hence, the Court of Appeals' "predict[ion]" about Colorado law regarding the third form of  interference "in the form of anxiety or fear of health risks," 618 F.3d at 1146, has no bearing on the jury's class nuisance verdict under Colorado law.

Defendants also argue that Plaintiffs "presented the jury with expert testimony about public fear of health risks from plutonium and other forms of nuclear energy, even if such fears were scientifically unfounded."  Defts' Br. at 9.  Defendants cite snippets of testimony from a four-month trial, then quote the Tenth Circuit as stating that "'[n]o reasonable jury could find that irrational anxiety about a risk that cannot be scientifically verified tips this balance so as to render the interference unreasonable.'"  Defts' Br. at 9 (citing *Cook,* 618 F.3d at 1146).

Defendants cite:  (1) testimony by Dr. Slovic that perceptions of risk of nuclear power and medical x-rays differ as between lay people and technical experts, and that the public is more concerned about nuclear power than medical x-rays because "the medical profession who oversees x-rays is much more trusted than the managers of nuclear energy facilities," *see* Defts' Br., Exh. 3 at App. 2924.2-.3; (2) testimony by Mr. Hunsperger on cross-examination concerning his analogous case studies that "it's possible" for off-site property to suffer stigma from risk from future contamination, *id.* at App. 3114.1-3; and (3) testimony by Dr. Goble that "everyone who is living there would have inhaled some amount of plutonium" and therefore "everyone who was living there would have had some risk," *id*. at App. 2914.

None of the cited testimony speaks about "scientifically unfounded" fears.  Plaintiffs presented overwhelming scientific evidence demonstrating *inter alia* that:  (1) the entire Class area had been contaminated with plutonium; (2) Defendants had done nothing to clean up any of this contamination, and that Dow admitted that it was a "physical impossibility to remove it all" regardless; (3) there was no "safe" amount of plutonium and no federal standards for plutonium in soil have even been promulgated; (4) one atom of plutonium, if inhaled, can cause cancer; (5) regardless of any purported "clean up" of the plant site, plutonium remaining underground will continue to be released off-site because of the effects of bioturbation (*i.e.*, plutonium is brought to the surface by the effects of animals, insects and plants, then blown off-site); (6) "official" estimates of plutonium releases from Rocky Flats and resulting health risks are unreliable given poor and sometimes non-existent monitoring and in light of Defendants' failure to even account for more than one ton of plutonium (known as "material unaccounted for" or "MUF") and the distorting role of the Department of Energy into research on the health effects of plutonium exposure; and (7) cancer rates near the plant are elevated.  *See* Pls' Op. Br. at Ex. 1.

Defendants did not appeal any of this Court's rulings in *Cook XIII* that Plaintiffs'

extensive scientific evidence is reliable and satisfied all requirements of *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and F.R.E. 702.  *See Cook XIII*, 580 F. Supp. 2d

1071.[32]  Defendants have waived any argument to the contrary.[33]

Regardless, hypothetical testimony about "scientifically unfounded" fears would not

override the jury instructions explaining that any irrational fears could *not* be the basis for a

class-wide nuisance verdict against Defendants.

## III.   Defendants' Preemption Arguments Fail

Defendants do not dispute that, as a general matter, a plaintiff may bring both federal and

state claims based on the same nucleus of operative facts, and if the federal claim fails, a jury

may render a verdict on the state claim.  *See, e.g., United Mine Workers v. Gibbs*, 383 U.S. 715,

721-29 (1966) (approving the district's court exercise of pendent jurisdiction over state claims

that were derived from the same common nucleus of operative facts as plaintiffs' claims under

the federal Labor Management Relations Act).  Nor can Defendants dispute that under diversity

(and pendent) jurisdiction, state law controls.  *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938).

As discussed, the existing jury verdict supports entry of this Court's judgment on

Plaintiffs' nuisance claim under Colorado law and diversity jurisdiction (and/or pendent

jurisdiction).  The judgment on Plaintiffs' nuisance claim can therefore be reinstated pursuant to

*Erie R.R. v. Tompkins* unless the nuisance claim has been preempted.

While the Tenth Circuit in the appeal of this case embraced a brand new argument by

Defendants and held that a **PAA claim** required proof of a "nuclear incident" (as the Tenth

Circuit defined it) the Court of Appeals **did not hold** that Plaintiffs' nuisance claim under

---

[32] *See* Pls' Br. at 9-12.
[33] *See* Pls' Br. at 11-12.

21

Colorado law was preempted.[34]  Thus, the question is whether Defendants can meet their burden to demonstrate preemption.  *See Cook*, 618 F.3d at 1143 ("Because Defendants advocate preemption, they bear the burden of showing that federal and state law conflict.").  Defendants have not carried their burden.

There are three general forms of preemption: (1) express; (2) field; and (3) conflict.  *Devon Energy Prod. Co. v. Mosaic Potash Cardlsbad, Inc.*, 693 F.3d 1195, 1203 n.4 (10th Cir. 2012).  In *Devon*, the Tenth Circuit distinguished "complete preemption" from "field preemption," suggesting a fourth form.  *Id.*  We addressed each possible form in our opening brief.  *See* Pls' Op. Br. at 18-29.

Defendants do not rely on express preemption (they claim it is "irrelevant").  *See* Defts' Br. at 20.  Defendants allude to field preemption (*see* Defts' Br. at 13) but the Court of Appeals expressly stated that Defendants did *not* advance a field preemption argument on appeal, *Cook*, 618 F.3d at 1143 n.16, 1144 n.19, and any such argument therefore has been waived.  *See* Pls' Op. Br. at 18-20.  Defendants say, however, that the Tenth Circuit was "referring to preemption of state tort duty of care by federal standards."  Defts' Br. at 21.  If Defendants are implying that the Tenth Circuit simply missed some *other* field preemption argument they developed on appeal, they are mistaken and cite nothing that would support such as argument.  Moreover, there has been no intervening, controlling decision that would change this Court's ruling on field preemption in *Cook IX*.

---

[34] The Court of Appeals held that: "the occurrence of a nuclear incident, and thus a sufficient injury under § 2014(q), constitutes a threshold element of any **PAA claim**."  *Cook*, 618 F.3d at 1139.  A "nuclear incident" is defined as "any occurrence . . . causing . . . bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material[.]"  42 U.S.C. § 2014(q).

Defendants argue now for complete preemption, but that argument, too, has been waived. *See* Pls' Op. Br. at 18-20; *Cook IX*, 273 F. Supp.2d at 1192 n. 12 (noting that this action "does not involve complete preemption of state tort law"); *Cook*, 618 F.3d at 1142-44 (discussing preemption but nowhere saying that Defendants had raised a complete preemption argument). Defendants cite cases from other jurisdictions, *see* Defts' Br. at 16 & n.10, but as the Tenth Circuit itself stated in *Cook*, "In these cases, however, it appears the courts' holdings were responsive to arguments involving field preemption.  As previously mentioned, *supra* n. 16, **Defendants have not presented a field preemption argument in this appeal**.  Rather, they have presented **only** a conflict preemption argument."  618 F.3d at 1144 n.19.

Defendants argue against waiver by quoting themselves on appeal, *see* Defts. Br. at 19, but Defendants cannot cite to a prior, timely-made complete preemption argument because they never made one, and therefore it was waived.  Moreover, while Defendants quote *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 477 [sic] [485] (1999), as stating that the PAA "resembles what we have spoken of as complete pre-emption," *see* Defts' Br. at 15, Defendants ignore *Devon Energy Prod. Co.*, in which the Tenth Circuit (two years after its decision in *Cook* and thirteen years after *Neztsosie*) observed that "'[c]omplete preemption is a rare doctrine'" that the Supreme Court has recognized in only *three* circumstances: (1) § 301 of the Labor Management Relations Act of 1947; (2) § 502 of the Employee Retirement Income Security Act of 1974; and (3) "actions for usury against national banks under the National Bank Act."  693 F.3d at 1204-05.  *See* Pls' Op. Br. at 19-20 (citing *Devon Energy Prod. Co.*).  In short, neither the Supreme Court nor the Tenth Circuit has held that the PAA completely preempts state law.

Nor can Defendants demonstrate conflict preemption.  "State law is preempted due to its conflict with federal law 'where it is impossible for a private party to comply with both state and

federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  *Cook*, 618 F.3d at 1143 (quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990)).  Defendants do not and cannot ague impossibility.

Defendants focus on the "liability-limiting" aspect of the PAA, *see* Defts' Br. at 17-18, but ignore that (1) the "primary concern" of the PAA is to protect the public; (2) a "cardinal attribute[]" of the PAA is to *minimize* interference with state law; (3) operators of nuclear plants will *still* obtain the "liability-limiting" protections of the PAA for liability from "nuclear incidents" even if a plaintiff can proceed outside of the PAA for non-nuclear incidents; but (4) to hold that the PAA's requirement of proving "loss of use" (as interpreted by the Court of Appeals) preempts state nuisance law would mean that Plaintiffs here – and plaintiffs anywhere – who suffer a proven substantial and unreasonable *interference* with their use and enjoyment of property are deprived of any remedy whatsoever.  *See* Pls' Op. Br. at 21-29.  Defendants have little to say on these critical points.

Plaintiffs, for example, presented the Court with a comprehensive, 50-state survey of state nuisance law.  *See* Pls' Op. Br. at Exh. 7.  *Every state* provides homeowners and other property owners with protection from unreasonable and substantial interferences with the use and enjoyment of their property, and *no state* requires a homeowner to prove "loss of use" in order to recover on a nuisance claim.  Defendants do not dispute any of this.

Defendants say that "the PAA does not abolish categories of common law rights in some general way; it creates a federal remedial framework for claims arising out of a *nuclear incident* that incorporates state law while limiting recovery to plaintiffs who have suffered bodily injury or damage or loss of use of property."  Defts' Br. at 22.

First, Defendants themselves stress that the PAA (after the Tenth Circuit's opinion in *Cook*) is limited to "nuclear incidents," and so claims that do not involve such "nuclear incidents" are by definition outside the PAA.  Defts' Br. at 14, 17-19.  Second, as the Tenth Circuit stated, proving a "loss of use" (required under the PAA, the Court held) requires something *more* than proving an "interference with use."  But Colorado and the other 49 states do *not* require proof of "*loss* of use" and provide homeowners and other property owners a right to compensation upon proof of "*interference* with use."[35]  Indeed, "[t]he **essence** of a private nuisance is an **interference** with the use and enjoyment of land."  W. Page Keeton, et al., *Prosser and Keeton on Torts* 619 (5th ed. 1984).  *See id.* at 617 (tracing roots of a claim for nuisance).  Thus, if the PAA preempts a state law nuisance claim, property owners who prove an "*interference* with use" that is "substantial" and "unreasonable" but not a "*loss* of use" *have* been deprived of *any* right to compensation.  That outcome – complete abrogation of common law rights – is exactly what Defendants advocate, and why acceptance of their argument could well render at least parts of the PAA unconstitutional.  *See* Pls' Op. Br. at 29-32.

On that last point, Defendants cite the majority opinion in *Powers v. Harris*, 379 F.3d 1208 (10th Cir. 2004), *see* Defts' Br. at 22-23, but Defendants ignore that, "[t]o date, the Supreme Court has never decided what level of constitutional scrutiny applies to a statute that abrogates a common-law cause of action and leaves no alternative remedy available."  *See Ileto v. Glock*, 565 F.3d 1126, 1150 (9th Cir. 2009) (Benzon, J., concurring in part and dissenting in part).  *Powers*, which involved a challenge to a state law that limited the sale of caskets to licensed funeral directors, certainly did not address, let alone, resolve, "what level of

---

[35] As we noted previously, an "interference" results in a "loss" but the Court of Appeals seemed to equate "loss of use" with a "total" loss.

constitutional scrutiny applies to a statute that abrogates a common-law cause of action and leaves no alternative remedy available."

In connection with a prior lawsuit by off-site landowners addressing some of the very same plutonium releases from Rocky Flats at issue here, the Tenth Circuit rejected the notion that a nuisance claim under Colorado law had been preempted. *See McKay v. U.S. et al.*, 703 F.2d 464 (10th Cir. 1983). The Tenth Circuit held that federal regulation of atomic energy did not evince an intent by Congress "that persons injured through negligence or wantonness are henceforth to be deprived of a remedy." *Id*. at 468. The Supreme Court has agreed. *See Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 268 (1984) ("Congress has **never** expressed an intention to allow a nuclear licensee to avoid paying for **any** injury it causes.").

A finding that Congress, in passing the 1988 Amendments to the PAA, intended to completely preempt state nuisance claims would mean that, despite decades of "minimal interference" with state law, Congress did a complete about-face in 1988 and intended to wipe out the entire corpus of state nuisance law through a few definitional subsections but *without* expressly saying so, *without* leaving any trace of such an intent in the legislative history, and *without* any statutory language that would support that interpretation. This is simply not credible. *Cf. Silkwood*, 464 U.S. at 251 ("It is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct."); *Cook IX*, 273 F. Supp. 2d at 1192 n.12 ("[I]t is 'perfectly rational for Congress not to pre-empt [state] common-law claims, which . . . perform an important remedial role in compensating accident victims.'") (quoting *Sprietsma v. Mercury Marine*, 537 U.S. 51, 64 (2002)).

In sum, reinstatement of Plaintiffs' state-law nuisance verdict and judgment would best serve and harmonize the multiple objectives of Congress in enacting and amending the PAA. As

noted by Justice Blackmun in *Silkwood* – in a dissent in which he agreed with the majority that the award of compensatory damages under state law was not preempted – "[I]t is **inconceivable that Congress intended to leave victims with no remedy at all.**"  *Silkwood*, 464 U.S. at 263 (Blackmun, J., dissenting) (footnote omitted).  The majority agreed: "Congress . . . disclaimed any interest in promoting the development and utilization of atomic energy by means that fail to provide adequate remedies for those who are injured by exposure to hazardous nuclear materials."  *Id.* at 257.

## IV.   <u>Conclusion</u>

For the reasons stated above and in our opening brief, and based on the record in this case, Plaintiffs respectfully submit that the answer to both of the Court's questions is "Yes."

Dated:  May 9, 2013

Respectfully submitted,

*/s/ David F. Sorensen*
Merrill G. Davidoff
David F. Sorensen
BERGER &MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

Gary B. Blum
Steven W. Kelly
SILVER & DeBOSKEY, P.C.
1801 York Street
Denver, CO 80206
(303) 399-3000

Louise M. Roselle
Paul M. DeMarco
Markovits, Stock & De Marco, LLC
119 E. Court Street, Suite 530
Cincinnati, OH 45202
(513) 651-3700

Attorneys for Plaintiffs and the Class

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 9th day of May, 2013, he caused the foregoing

submission to be served via the Court's ECF system on all participating counsel.

_/s/ David F. Sorensen_
David F. Sorensen
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000