**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**
Judge John L. Kane

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, *et al.*,

 Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION AND THE DOW CHEMICAL COMPANY,

 Defendants.

---
**ORDER REGARDING BRIEFING at ECF. DOCS. 2344, 2345, & 2350**

---

Kane, J.

## A. Introduction

After holding a Status Conference to determine the contours of remand, I directed the parties to brief the following two issues: "1) May a plaintiff who brings a Price-Anderson Act claim simultaneously pursue a freestanding state-law claim based on the same facts?"; and "2) Does the existing jury verdict in this case support entry of this Court's judgment on Plaintiffs' nuisance claim under Colorado law and diversity jurisdiction?"

The answer to the first question is "no" and consequently I do not reach the second question. I arrive at my conclusion with reluctance and sympathy for Plaintiffs. I remain convinced that the Colorado jurors in this case correctly found Plaintiffs to have suffered a nuisance under Colorado state-law based on the nuclear contamination for which Defendants are responsible, but I have come to terms with the fact that the law, which I

1

am bound to uphold, does not permit independent Colorado state-law claims based on alleged radiation injury.[1]

Simply put, the Price-Anderson Act ("PAA" or "Act") preempts state-law tort claims arising from atomic energy production and establishes an exclusive federal remedial scheme for such claims. Accordingly, a plaintiff who brings a PAA claim may not pursue a freestanding state-law claim based on the same facts. The Tenth Circuit's conclusion that Plaintiffs' proof was insufficient to satisfy the PAA's injury requirement does not mean that Plaintiffs are now free to pursue, outside the PAA, the same claims

---

[1] The Tenth Circuit did not find that a nuisance was established under state-law. Rejecting Restatement (Second) of Torts § 821F cmt. f (1965), it held that "[t]he Colorado Supreme Court would not permit recovery premised on a finding that an interference, in the form of anxiety or fear of health risks, is 'substantial' and 'unreasonable' unless that anxiety is supported by some scientific evidence." *Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1132 (10th Cir. 2010*).* "To the extent Plaintiffs rely on anxiety from an increased risk to their health as an interference with the use and enjoyment of their properties, that anxiety must arise from scientifically verifiable evidence regarding the risk and cannot be wholly irrational." *Id.* Why I nonetheless think the jurors properly found a nuisance, however, is because there *was* evidence scientifically verifying an increased health risk, and I believe that evidence informed the jurors' decision to find the claimed anxiety an unreasonable and substantial harm. The problem is that the Tenth Circuit Opinion requires more than that the risk be scientifically *verified*; it also requires that the risk be *quantified*:

> Plaintiffs' experts merely testified that *any* exposure to plutonium whatsoever increases the risk of health problems to some degree. Without an accompanying estimate or calculation of the increased risk, however, this evidence is insufficient to establish a loss of use under 42 U.S.C. § 2014(q). Plaintiffs must instead prove that the *particular level of risk* created by Defendants' conduct had the effect of actually depriving them of a specific use.

*Id.* at 1142 (first emphasis in the original; second emphasis added). I disagree and would not penalize Plaintiffs for the fact that nuclear science is not yet advanced enough to assign a specific numeric value to an increased health risk. I would not impose an arbitrary bright-line "particular level of risk" standard for anxiety-based nuisance recovery, and I especially would not announce that there was to be a particular level of risk standard and then not specify what that level is. Plaintiffs' experts, whose testimony was not challenged by Defendants on appeal, testified that, if inhaled, even one atom of plutonium could cause cancer. Tr. 3639 (Goble); 5743-44 (Wing). Indeed, recognizing that plutonium can be extremely dangerous, even in tiny quantities, the federal government has never promulgated any rules relating to purported "permissible" amounts of plutonium in soil. Tr. 7549-50, 7590, 7644 (Defendants' expert, Frazier). For dozens of other similar facts about the dangerousness of plutonium, facts that were testified to by both Plaintiffs' *and* Defendants' experts, I refer to ECF Doc. 2344, Ex. 1. These facts are sufficient scientific verification for general acceptance in the scientific community and clearly enough to make anxiety about exposure to plutonium contamination both predictable and reasonable.

2

based on the same alleged radioactive releases. A failed PAA claim based on an alleged nuclear incident is simply a failed claim, not a state-law claim in waiting.

## B.  Statutory Background

From its inception, nuclear power has been subject to a comprehensive federal regulatory framework. The first piece of the framework was laid when Congress passed the Atomic Energy Act of 1946, Act of Aug. 1, 1946, ch. 724, 60 Stat. 755, which established a federal monopoly over the development of nuclear power. *See Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 63 (1978) ("When Congress passed the Atomic Energy Act of 1946, it contemplated that the development of nuclear power would be a government monopoly.").  About a decade later Congress permitted private sector involvement with passage of the Atomic Energy Act of 1954, Act of Aug. 30, 1954, ch. 1073, 68 Stat. 919 (the "1954 Act").

The 1954 Act provided for "licensing of private construction, ownership, and operation of commercial nuclear power reactors for energy production," *id*., and "grew out of Congress' determination that the national interest would be best served if the Government encouraged the private sector to become involved in the development of atomic energy for peaceful purposes under a program of federal regulation and licensing." *Pacific Gas and Electric Co. v. State Energy Resources Conservation & Dev. Comm'n*, 461 U.S. 190, 207 (1983) (citing *H.R.Rep. No. 2181*, 83d Cong., 2d Sess., 1–11 (1954)).  Despite the 1954 Act authorizing private nuclear energy participation, private utilities were reluctant to enter the field, primarily because of "the risk of potentially vast liability in the event of a nuclear accident." *See Duke Power,* 438 U.S. at 64 (discussing

3

that enormous potential liability is associated with nuclear accidents.) To address that concern, Congress enacted the Price–Anderson Act of 1957("PAA" or "Act") "to protect the public and to encourage the development of the atomic energy industry." Pub. L. No. 85–256, § 1, 71 Stat. 576 (1957).

The Act restricted the civil liability of nuclear plant operators and provided federal subvention to help pay damages caused by nuclear accidents. *Id*. The PAA has been amended three times, most notably in 1988. The 1988 Amendments created federal jurisdiction for public liability actions arising from nuclear incidents. 42 U.S.C. § 2014(hh). A "public liability action" is defined as "any suit asserting public liability" based upon alleged exposure to "source, special nuclear, or byproduct material." 42 U.S.C. § 2014(hh), (q). "Public liability" is defined, in part, as "any legal liability arising out of or resulting from a nuclear incident or precautionary evacuation ..." 42 U.S.C. § 2014(w).

A "nuclear incident" is "any occurrence, ... within the United States causing, within or without the United States, bodily injury, sickness, disease, or death, or loss of or damage to property, ... arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material ...." 42 U.S.C. § 2014(q). Section 2014(hh) provides that "the substantive rules for decision of [a public liability] action shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of section [2210]." 42 U.S.C. § 2014(hh).

### C. A "Public Liability Action" Under The PAA Is The Exclusive Cause Of Action For Harm Allegedly Caused By Radioactive Releases From Rocky Flats.

Defendants argue that Plaintiffs may not pursue a freestanding Colorado state-law claim based on harm allegedly caused by radioactive releases from Rocky Flats because the PAA completely preempts any such state-law claim.[2] Plaintiffs make two primary objections to this position, asserting first that Defendants have waived the argument and second that finding the PAA to preempt state-law tort claims would violate due process. I reject both arguments.

The PAA itself does not explicitly address the issue of claim preemption. But every federal circuit, including the Tenth Circuit, to consider whether the PAA preempts state causes of action for public liability arising out of or resulting from nuclear incidents has concluded that it has. For example, in *Nieman v. NLO*, 108 F.3d 1546, 1547 (6th Cir.1997), the plaintiff asserted various state-law claims based on allegations that a discharge of uranium from a nuclear processing facility in Fernald, Ohio had damaged his property. The Sixth Circuit affirmed the district court's dismissal of plaintiff's state-law

---

[2] Although the Tenth Circuit recognizes four distinct types of preemption doctrines, *see Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1203 n.4 (10th Cir. 2012), Defendants focus their energies on the application of so-called "complete" preemption. Because I ultimately conclude that complete preemption does apply, I refrain from passing comment on the parties' remarks surrounding conflict preemption. For purposes of answering the question presented, the definitive query is whether state-law claims are preempted; once preemption is found to apply, the type of preemption applicable does no further work upon the answer. I also note that while it is the Tenth Circuit's practice to distinguish "field" preemption from "complete" preemption, *see id.*, at least one circuit court has suggested that the doctrines of field preemption and complete preemption are coterminous. *See Stuart Weitzman, LLC v. Microcomputer Res., Inc.,* 542 F.3d 859, 864 n. 4 (11th Cir. 2008) (noting that "complete preemption" is "also called 'field preemption' "). Similarly, secondary sources often treat the terms as substitutes. *See, e.g.*, 15 Moore's Federal Practice § 103.45[2] ("[I]n complete preemption cases, federal law *so occupies the field* that any complaint alleging facts that come within the statute's scope necessarily 'arise under' federal law, even if the plaintiff pleads a state law claim only." (Emphasis added)). This memorandum adopts the Tenth Circuit's distinction of the terms for its own prose, but occasionally will make use of case law citations that refer to "field" preemption. Unless otherwise specified, "field" preemption in a citation refers to what the Tenth Circuit considers "complete" preemption.

trespass action, noting that the PAA had not merely created a new federal cause of action, *i.e.* a public liability action, but that "a new federal cause of action supplants the prior state cause of action." *Id*. at 1549 (quoting *O'Conner v. Commonwealth Edison Co.,* 13 F.3d 1090, 1100 (7th Cir.), *cert. denied*, 512 U.S. 1222 (1994)).  "[t]he state law claims *cannot stand as separate causes of action*. Nieman can sue under the Price–Anderson Act, as amended, or not at all." *Id*. at 1553 (emphasis added). The Tenth Circuit similarly used bold language in *Kerr–McGee Corp. v. Farley*, 115 F.3d 1498, 1504 (10th Cir.1997) to describe the preemptive effects of the PAA, calling the Act's provisions "sweeping" and stating that the 1988 Amendments "appear broad enough to create a federal forum for any tort claim even remotely involving atomic energy production."

The Ninth, Eleventh, Seventh, and Third Circuits agree. *See In re Berg Litig*., 293 F.3d 1127, 1132 (9th Cir.2002) (public liability action is plaintiff's "exclusive means" for pursuing claims arising from a nuclear incident); *Roberts v. Florida Power & Light Co.,* 146 F.3d 1305, 1306 (11th Cir.1998) ("Congress passed the Price–Anderson Amendments Act of 1988 ... creating an exclusive federal cause of action for radiation injury."); *O'Conner*, 13 F.3d at 1100, 1105 ("a new federal cause of action supplants the prior state cause of action.... [S]tate regulation of nuclear safety, through either legislation or negligence actions, is preempted by federal law."); *In re TMI Litig. Cases Consol. II*, 940 F.2d 832, 854 (3d Cir.1991) (TMI II ) ("After the Amendments Act, no state cause of action based upon public liability exists. A claim growing out of any nuclear incident is compensable under the terms of the Amendments Act or it *is not compensable at all*.") (emphasis in original).

6

Most defeatingly for Plaintiffs' position, the Supreme Court has also held that the PAA preempts state causes of action for public liability arising out of or resulting from nuclear incidents. In *El Paso Natural Gas Co. v. Neztsosie*, the Supreme Court explained that the exclusive remedial structure of the PAA was one:

> in which a public liability action becomes a federal action, but one decided under substantive state-law rules of decision that do not conflict with the Price-Anderson Act, resembles what we have spoken of as complete pre-emption doctrine, under which the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.

*Neztsosie*, 526 U.S. at 484 n.6 (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987))(internal quotation marks and citation omitted). I interpret the Supreme Court's choosing to describe the PAA's structure as "resembling" complete preemption (as opposed to "presenting" or some other word more directly expressing that the PAA is an example of the complete preemption doctrine) as simply an acknowledgment that the complete preemption of the PAA is unique for applying substantive state-law rules of decision where they are not in conflict with the PAA. The typical complete preemption framework applies only federal law. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 1 (2003)(explaining that complete preemption exists under the Labor Management Relations Act, 1947 and the Employee Retirement Income Security Act of 1974 and that these statutes provide the "exclusive cause[s] of action" and set forth the procedures and remedies for the claims). In other words, in my view, *Neztsosie* stands for the proposition that the PAA completely preempts state-law in terms of the vehicle for bringing a claim, but does not necessarily preempt state substantive law in terms of the rules of decision.

The weight of authority is so great and crystalline on this matter that Plaintiffs voice no disagreement that the PAA preempts tort claims arising from nuclear incidents. Instead, they argue their facts do not concern a "nuclear incident" and therefore that the PAA does not apply at all.[3] I am not persuaded. First, Plaintiffs' argument ignores their own allegations. Plaintiffs' operative complaint includes allegations that their lawsuit is a public liability action arising from a nuclear incident. Second Amended Complaint ¶¶ 1, 3, 5, 96. Second, Plaintiffs already made this argument to the Tenth Circuit, contending, as they do here, that they "also assert[] diversity jurisdiction," and, therefore, "[i]f plaintiffs' trespass and nuisance claims do not arise out of a nuclear incident, they must be independent state law tort claims" pursuable 28 U.S.C. § 1332. Pls.' Supp. 10th Cir. Br. at 10. The Tenth Circuit implicitly rejected this argument, never once hinting that the claims could stand as independent state-law claims and instead giving this clear instruction: "On remand, Plaintiffs will be tasked with producing additional evidence that could support a jury's finding that a nuclear incident occurred, in the form of 'loss of or damage to property, or loss of use of property' under 42 U.S.C. § 2014(q)." *Cook*, 618 F.3d at 1142.

As a district court judge, I am "bound to carry the mandate of the upper court into execution" and may "not consider the questions which the mandate laid at rest." *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939) (citations omitted). I simply not pass upon any issue that was "expressly *or impliedly*" disposed of on appeal. *Procter &*

---

[3] Despite this premise serving as the building block of Plaintiffs' argument, Plaintiffs do not cite any authority holding that a plaintiff simultaneously may pursue a PAA claim and a state-law claim based on the same facts.

8

*Gamble Co. v. Haugen*, 317 F.3d 1121, 1126 (10th Cir. 2003)(emphasis added). Because the Tenth Circuit expressly directed Plaintiffs to present evidence of a nuclear incident and did not authorize their proposed alternative method of pursuing their claims as independent state-law tort claims under 28 U.S.C. § 1332, I may not here endorse their renewed pursuit of independent state-law tort claims.

In any event, I agree that allowing Plaintiffs simultaneously to litigate a freestanding state-law claim based on the same facts as their PAA claim would undermine the liability-limiting purpose of the PAA. *See, e.g., Cook*, 618 F.3d at 1145 n.20 (noting that "the state-law 'interference with use' [nuisance] standard presents a lower threshold than the PAA's 'loss of use' standard"); *id*. at 1140 (noting that one purpose of the PAA amendments was "to limit recovery to the discrete group of injuries enumerated in § 2014(q)"). Through the PAA, Congress struck a balance between compensating the victims of nuclear incidents and fostering the development of nuclear energy and technology. That balance is explicit in the PAA itself, where Congress found that "[t]he development, utilization, and control of atomic energy for military and for all other purposes are vital to the common defense and security," and that the PAA was necessary "[1] to protect the public and [2] to encourage the development of the atomic energy industry." 42 U.S.C. § 2012(a) & (i). *See also Duke Power*, 438 U.S. at 64 (quoting § 2012(i) in noting the "dual purpose" of the PAA). The PAA's twin goals express the intention that nuclear operators should not face the risk of crippling liability without any of the protections of the PAA with regard to plaintiffs who claim injuries

9

stemming from the hazardous properties of special nuclear material but allege those injuries as state-law claims instead of as PAA claims.

The Ninth Circuit in *In re Hanford* rejected an argument similar to the one Plaintiffs advance here. It held that, even though claims for medical monitoring were not compensable under the PAA absent a present bodily injury, plaintiffs who claimed only increased risk from an alleged nuclear incident could not pursue medical monitoring claims in state court under a state-law theory:

> The PAA is the exclusive means of compensating victims for any and all claims arising out of nuclear incidents. *Berg*, 293 F.3d at 1132; *In re TMI Litig.*, 940 F.2d at 854; *see also* 42 U.S.C. § 2014(hh), (w) (federal courts have jurisdiction over public liability actions, defined as "*any* suit asserting . . . *any* legal liability arising out of or resulting from a nuclear accident") (emphasis added). This result is consistent with Congress's explicit intent in enacting the 1988 Amendments and avoiding piecemeal litigation arising from nuclear incidents. We therefore affirm the district court's exercise of jurisdiction over Plaintiffs' medical monitoring claims and its conclusion pursuant to our decision in *Berg* that they were not compensable under the Act. The district court properly denied Plaintiffs' request for a remand to state court.

*In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1003 (9th Cir. 2008).

That same reasoning applies in this case. Plaintiffs have alleged a nuclear incident and the PAA is their exclusive remedy. Plaintiffs may or may not be able ultimately to prove that they are among the persons who suffered bodily injury, property damage or loss of use of property as a result of plutonium releases from Rocky Flats. If they cannot prove one or more of these, however, it means they cannot meet their burden of proving that they have suffered a form of damage compensable under the PAA, not that their claim arises outside of the PAA. A failed PAA claim is a failed claim *in toto*; the failure

of proof does not transform a PAA claim into a state-law claim that may be pursued independent of the PAA.

### 1. Defendants Have Not Waived a Complete Preemption Argument

Plaintiffs assert Defendants "[n]ever raised a complete preemption argument," and thus have waived it. Pls.' Br. at 18. This is incorrect. The record shows that Defendants argued on appeal that "[t]he 1988 PAA amendments completely federalized this area of the law by making a 'public liability action' under the PAA, 42 U.S.C. § 2014(w), 'the *exclusive* means of compensating victims for any and all claims arising out of nuclear incidents.'" Defs.' 10th Cir. Br. at 25 (quoting *Hanford*, 534 F.3d at 1009).

Plaintiffs next push for waiver by selectively quoting the Tenth Circuit as stating that this action "does not involve complete preemption of state tort law," *Cook IX*, 273 F. Supp.2d at 1192 n. 12. Similarly, Plaintiffs quote the Tenth Circuit as "agree[ing] with the district court that § 2014(hh) does not expressly preempt state law," Pls.' Br. at 18 (quoting *Cook*, 618 F.3d at 1143). These quotations come, however, from sections in which the Tenth Circuit dealt only with the issue of whether "federal nuclear safety standards . . . preempt state tort standards of care under the PAA," *Cook*, 618 F.3d at 1142, not whether the PAA provides the exclusive remedy for claims arising, as alleged here, from a nuclear incident and asserting public liability. The argument premised on these quotes is irrelevant and confuses the question I posed—whether the PAA permits or preempts freestanding state-law claims based on the same facts as the PAA claim—with the entirely different question of whether PAA § 2014(hh) preempts state tort law standards of care. The fact that PAA § 2014(hh) does not expressly preempt state tort

11

law—and in fact uses state-law as the substantive rules for decision in PAA cases—is not germane to the question of whether the PAA preempts freestanding state-law claims based on the same facts as the PAA claim.

Plaintiffs similarly miss the mark in arguing that "[t]he Court of Appeals expressly noted that Defendants did not advance a field preemption argument on appeal," Pls.' Br. at 18 (citing *Cook*, 618 F.3d at 1143 n.16, 1144 n.19). They are again confusing two distinct preemption issues. In the footnotes Plaintiffs cite, the Tenth Circuit was again referring to preemption of state tort law duty of care by federal safety standards, whereas the question here is whether the PAA completely preempts state claims arising out of nuclear incidents. I hold that waiver is no bar to Defendants complete preemption argument.

2. The PAA's Exclusive Remedial Scheme Does Not Violate Due Process

Plaintiffs argue in their Opening Brief that the PAA violates their right of due process to the extent it does not allow them to recover based on a scientifically unfounded risk of harm. To begin, "it is not at all clear that the Due Process Clause in fact requires that a legislatively enacted compensation scheme either duplicate the recovery at common law or provide a reasonable substitute remedy." *Duke Power* at 88. Even if it *were* clear, the law has never suggested that an *identical* substitute remedy be afforded. What is required is a "reasonable" substitute remedy, and the Supreme Court has straightforwardly opined that the PAA "provide[s] a reasonably just substitute for the common-law or state tort law

12

remedies it replaces." *Id.* I find no merit in Plaintiffs' due process arguments against preemption and note that Plaintiffs do not renew this line of argument in their Reply.

### D.  Conclusion

For the reasons stated above, Plaintiffs may not litigate this case outside the PAA. Parties shall prepare a Joint Status Report discussing the most effective way to proceed that is consistent with this Order and the Tenth Circuit's mandate. The Joint Status Report is due on or before February 25, 2014.[4]

DATED:      January 28, 2014

BY THE COURT:

*s/John L. Kane*
John L. Kane, U.S. Senior District Judge

---

[4] Because of the extraordinary length of this litigation, I suggest that both parties give serious consideration to requesting a F.Civ.P. Rule 54 (b) certification of this Order.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, et al.,

    Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

    Defendants.

## ORDER APPROVING STIPULATED DISMISSAL WITH PREJUDICE AND ENTRY OF FINAL JUDGMENT

Kane, J.

    To advance the resolution of this long-running litigation, Plaintiffs and Defendants, through their counsel, agree and stipulate as follows:

### Recitals

A.    The Tenth Circuit reversed the judgment in this case and remanded to me for "further proceedings not inconsistent with this opinion." *Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1133, 1153 (10th Cir. 2010), *cert. denied*, No. 10-1377, 2012 WL 2368857 (U.S. June 25, 2012) (the "Tenth Circuit Decision").

B.    On remand, the parties disagreed about the nature and scope of further proceedings. Plaintiffs proposed that I reinstate the jury verdict, recertify the class, and enter judgment on their nuisance claim under Colorado law. Defendants opposed that proposal on the ground, among others, that the PAA preempts state-law claims arising from a nuclear incident and, as a result, a plaintiff who brings a PAA claim may not pursue a state-law claim based on the same facts.

C.      On January 28, 2014, following briefing by the parties, I issued an Order (ECF No. 2351) (the "January 28 Order") ruling, among other things, that a plaintiff who brings a PAA claim may not simultaneously pursue a state-law claim based on the same facts and, as a result, "Plaintiffs may not litigate this case outside the PAA." (*Id*. at 13). In light of that ruling, I declined to address Plaintiffs' proposal to reinstate the jury verdict, re-certify the class, and enter judgment on Plaintiffs' nuisance claim under Colorado law.

D.      In that same Order, I suggested that, "[b]ecause of the extraordinary length of this litigation" the parties "give serious consideration" to an appeal from the Order. (*Id*. at 13, n. 4).

E.      Plaintiffs disagree with the January 28 Order and have indicated they expect to appeal it.

F.      Defendants oppose any appeal from the January 28 Order unless such appeal would potentially lead to final resolution of this action.

G.      To enable Plaintiffs to pursue their appeal from the January 28 Order and to address Defendants' concern that such an appeal is inappropriate unless it could potentially lead to final resolution of this action, the parties stipulate as follows:

## Stipulation

1.      In light of the Tenth Circuit Decision, Plaintiffs will not pursue any claims under the PAA unless the Tenth Circuit Decision is overturned or modified.

2.      Accordingly, my ruling on remand that "Plaintiffs may not litigate this case outside the PAA," (January 28, 2014 Order at 13), means that Plaintiffs have no further claims to litigate in the district court unless that ruling is overturned on appeal or unless the Tenth Circuit Decision is overturned or modified.

3.      So that Plaintiffs may immediately appeal from the January 28 Order, the parties stipulate to the dismissal of this action with prejudice and the entry of judgment in favor of

Defendants. Each side is to bear its own costs.

4.      The parties agree that the judgment entered pursuant to their Stipulated Order constitutes a final appealable order.

5.      The parties agree that nothing in this Stipulation waives Plaintiffs' right to appeal the January 28, 2014 Order.

6.      The parties agree that nothing in this Stipulation affects or waives Plaintiffs' right to seek relief under Fed. R. Civ. P. 59 to modify or clarify the January 28 Order.

Accordingly, this action is DISMISSED WITH PREJUDICE, each side to bear its own costs, and final judgment in favor of Defendants is entered.

DATED:       February 27, 2014              BY THE COURT:

                                            *s/John L. Kane*
                                            John L. Kane, U.S. Senior District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, et al.,

    Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,

    Defendants.

## JUDGMENT

On February 27, 2014, Judge Kane issued an Order APPROVING the parties' Stipulation for Dismissal and directing the Entry of Judgment (Doc. 2356). Accordingly, Judgment is hereby entered in favor of Defendants and against Plaintiffs as follows:

1. In light of the Tenth Circuit Decision on appeal from the jury's verdict in this case, Plaintiffs will not pursue any claims under the PAA unless the Tenth Circuit Decision is overturned or modified.

2. Accordingly, the Court's ruling on remand that "Plaintiffs may not litigate this case outside the PAA," (January 28, 2014 Order at 13), means that Plaintiffs have no further claims to litigate in the district court unless that ruling is overturned on appeal or unless the Tenth Circuit Decision is overturned or modified.

3. So that Plaintiffs may immediately appeal from the January 28 Order, this action is DISMISSED with prejudice. Each side is to bear its own costs.

Dated at Denver, Colorado this  27th  day of February, 2014.

                              FOR THE COURT:
                              JEFFREY P. COLWELL, CLERK

                              By: s/ Edward P. Butler
                              Edward P. Butler, Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-00181-JLK

---

MERILYN COOK, *et al.*,

        Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

        Defendants.

---

## PLAINTIFFS' NOTICE OF APPEAL

---

Notice is hereby given that representative plaintiffs Merilyn Cook, Lorren and Gertrude Babb, Richard and Sally Bartlett, and William and Delores Schierkolk, for themselves and on behalf of all members of the Prospective Damages Subclass of the Property Class previously certified by the Court in this civil action, hereby appeal to the United States Court of Appeals for the Tenth Circuit from the Final Judgment entered in this action on February 27, 2014, ECF No. 2356. In appealing from that Final Judgment, plaintiffs appeal from any and all orders antecedent and ancillary thereto, including any and all interlocutory judgments, decrees, decisions, rulings, and opinions that merged into and became part of the Final Judgment, that shaped the Final Judgment, that are related to the Final Judgment, and upon which the Final Judgment is based. In particular, plaintiffs appeal the Order entered in this action on January 28, 2014, ECF No. 2351.

Dated:  March 25, 2014

Respectfully submitted,

*/s/ Merrill G. Davidoff*
Merrill G. Davidoff
David F. Sorensen
Caitlin G. Coslett
BERGER &MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

Gary B. Blum
Steven W. Kelly
SILVER & DeBOSKEY, P.C.
1801 York Street
Denver, CO 80206
(303) 399-3000

Louise M. Roselle
Paul M. DeMarco
Markovits, Stock & De Marco, LLC
119 E. Court Street, Suite 530
Cincinnati, OH 45202
(513) 651-3700

Attorneys for Plaintiffs and the Class

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 25th day of March 2014, he caused the foregoing submission to be served via the Court's ECF system on all participating counsel.

                                          */s/ Merrill G. Davidoff*
                                          Merrill G. Davidoff
                                          BERGER & MONTAGUE, P.C.
                                          1622 Locust Street
                                          Philadelphia, PA 19103
                                          (215) 875-3000