# EXHIBIT 9

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, *et al.*,

        Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

        Defendants.

## [PROPOSED] ORDER RE CLASS CERTIFICATION

AND NOW, upon consideration of Plaintiffs' Motion for Entry of Judgment, the response and reply thereto, as well as the Court's previous decision of October 8, 1993 certifying a class of property owners (*Cook IV*, 151 F.R.D. 378 (D. Colo. 1993)), the Court's decision of July 29, 1998 upholding certification of the class of property owners (*Cook VIII*, 181 F.R.D. 473 (D. Colo. 1998)), the Court's memorandum opinion of July 24, 2003 holding *inter alia* that a class-wide trial may determine the aggregate damages to the Class (*Cook IX*, 273 F. Supp. 2d 1175 (D. Colo. 2003)), the Court's orders of April 14, 2004 (Doc. No. 1220) and May 17, 2005 (Doc. No. 1338) further clarifying which issues would be subject to a class-wide trial, the Final Judgment entered on June 2, 2008 (Doc. No. 2664) which defined the Class in paragraph 2; and in light of the clear directive from the Tenth Circuit that this Court "should proceed to judgment on the existing nuisance verdict promptly, consistent with resolving the outstanding class action

question", *Cook v. Rockwell Int'l Corp.*, --- F.3d ----, 2015 WL 3853593, at *15 (10th Cir. Jun. 23, 2015) ("*Cook Appeal II*"); it is hereby ORDERED that the Plaintiffs' motion to reinstate the Court's October 8, 1993 Order certifying the Property Class is GRANTED.

The Court makes the following determinations as required by Rule 23:

1. The Court previously defined the Class, which shall be denominated the "Class" or the "Property Class", as follows:

> The Property Class includes all persons and entities not having opted out of the class who owned, as of June 7, 1989, an interest (other than mortgagee and other security interests) in real property situated within the Property Class Area, exclusive of governmental entities, defendants, and defendants' affiliates, parents, and subsidiaries. The Property Class Area is a geographic area near the former Rocky Flats Nuclear Weapons Plant in Colorado; its boundary is portrayed in the map attached to this Final Judgment as Appendix A. The Prospective Damages Subclass includes all members of the Property Class who still owned their properties as of January 30, 1990.

*See* Final Judgment, Doc No. 2264, at ¶ 2.

The "Property Class Area" was defined with reference to geographical representations of the area bounded by the plutonium contour. *See* Second Am. Compl. ¶ 85; *see also Cook IV*, 151 F.R.D. at 382; Ex. 1 Appendix A (map of Property Class Area); Doc. No. 2264-1 (map of Property Class Area).[1] This Class definition remains appropriate.

2. The Court, pursuant to Fed.R. Civ.P. 23(a)(1), previously determined that the Class is so numerous that joinder of all members thereof is impracticable. The Court adheres to that finding. As of the date of the original class certification order (*Cook IV*), the Property Class

---

[1] Exhibit 1 is Plaintiffs' Proposed Final Judgment. Appendix A to Plaintiffs' Proposed Final Judgment is the map of the Property Class.

Area contained approximately 15,370 parcels of property, of which of which an estimated 13,364 were residential. *Cook IV*, 151 F.R.D. at 382.

      3.      The Court, pursuant to Fed.R. Civ.P. 23(a)(2) and 23(b)(3), previously determined that this case presented a number of common, class-wide questions of law or fact. *Cook IV*, 151 F.R.D. at 384-85, 388-89. The Court adheres to that determination. Numerous common questions were addressed and proven at trial through generalized proof applicable to the Class as a whole. In addition, during the pretrial and trial proceedings, the Court has addressed a substantial number of common questions of law. These common questions of law and fact predominated over questions affecting only individual members, and included:

      a.      Whether a threat of future harm can constitute an actionable nuisance under Colorado law;

      b.      Whether a current human health risk can constitute an actionable nuisance under Colorado law;

      c.      Whether the nuisance at issue constitutes a continuing tort;

      d.      Whether under Colorado law the statute of limitations is not a legally cognizable defense to a continuing tort;

      e.      Whether diminution in property values is the proper measure of damages in a continuing nuisance case;

      f.      Whether that diminution should be measured as of the time the nuisance became complete and comparatively enduring, as defined by the Restatement (Second) of Torts § 930;

   g. Whether Dow interfered with Class members' use and enjoyment of their properties in the Class Area in one or both of these ways: (i) by causing Class members to be exposed to plutonium and placing them at some increased risk of health problems as a result of this exposure; and/or (ii) by causing objective conditions that pose a demonstrable risk of future harm to the Class Area;

   h. Whether Dow's interference with Class members' use and enjoyment of their properties was both ''unreasonable" and "substantial";

   i. Whether the activity or activities causing the unreasonable and substantial interference by Dow were either "intentional" or "negligent";

   j. Whether the unreasonable and substantial interference with the use and enjoyment of property caused by Dow's intentional or negligent conduct will continue indefinitely;

   k. Whether Rockwell interfered with Class members' use and enjoyment of their properties in the Class Area in one or both of these ways: (i) by causing Class members to be exposed to plutonium and placing them at some increased risk of health problems as a result of this exposure; and/or (ii) by causing objective conditions that pose a demonstrable risk of future harm to the Class Area;

   l. Whether Rockwell's interference with Class members' use and enjoyment of their properties was both ''unreasonable" and "substantial";

   m. Whether the activity or activities causing the unreasonable and substantial interference by Rockwell were either "intentional" or "negligent";

n. Whether the unreasonable and substantial interference with the use and enjoyment of property caused by Rockwell's intentional or negligent conduct will continue indefinitely;

o. Whether the actual value of the Class Properties was less than the value these Properties would have had but for the nuisance committed by Dow and Rockwell;

p. As of the time the injurious situation became "complete" and "comparatively enduring," the total amount of the difference between the actual value of Class Properties and what their value would have been but for the nuisance by Dow and Rockwell, and the specific percentage undervaluation for residential properties, vacant land, and commercial properties;

q. What percentage of the combined nuisance was caused by Dow and what percentage was caused by Rockwell; and

r. With regard to Dow and Rockwell's affirmative defense of setoff, whether Dow and Rockwell proved that their nuisance caused a diminution in the value of Class Properties in one or more specific time periods before June 7, 1989.

4. The specific evidence presented at trial was overwhelmingly, if not entirely, common to the Class. Plaintiffs' expert and fact witnesses testified about Defendants' conduct leading to the spread of plutonium contamination into the Property Class Area; Defendants' failure to abide by reasonable standards of care for the operation of a nuclear facility; the continuing presence of plutonium on the plant site and in the Class Area and the risk that that plutonium will be transported to the Class Area by air or water; the health risks of even small quantities of plutonium; an increased risk of cancer in off-site areas near Rocky Flats including

5

the Class Area; the public's reaction to the events at Rocky Flats; and the diminution in property values in the Class Area.  Plaintiffs have provided a summary of this testimony with their Motion, which the Court attaches to this Order as an appendix.  This testimony is clearly of class-wide application. Defendants did not challenge on appeal this Court's rulings on the admissibility and reliability of Plaintiffs' expert witnesses.  Likewise, the evidence Defendants presented to try to refute Plaintiffs' case-in-chief was predominantly Class-wide in nature.  In sum, this Court's experience with the trial of this case has conclusively demonstrated that common issues predominated over individual ones.

5.     The Court, pursuant to Fed.R. Civ.P. 23(a)(3), previously determined that the claims of the proposed Class Representatives are typical of the claims of the Class.  *Cook IV*, 151 F.R.D. at 385-86.  The Court adheres to that determination.  The proposed Class Representatives alleged and testified at trial on behalf of the Class concerning the same manner of injury from the same course of conduct that they complain of themselves, and the proposed Class Representatives assert and have asserted throughout this litigation on their own behalf the same legal theories that they assert for the Class.

6.     The Court, pursuant to Fed.R. Civ.P. 23(a)(4), previously determined that the Class Representatives and Lead Counsel (as defined herein) would fairly and adequately represent the interests of the Class. *Cook IV*, 151 F.R.D. at 386-87.  The Court adheres to that determination.  All of the Class members share a common interest in proving Defendants' alleged wrongful conduct, and all Class members share a common interest in recovering the damages sought in the Complaint and proven at trial. During the 25-year history of this case, no conflicts of interest between the Class Representatives and the Class have come to light.

Moreover, any Class member that wished to opt out was previously given an opportunity to do so. Furthermore, the Class Representatives are well-qualified to represent the Class in this case, given the vigor with which they have prosecuted this action over many years.

7. The Court, pursuant to Fed.R. Civ.P. 23(b)(3), previously determined that a class action is superior to other available methods for the fair and efficient adjudication of the Property Class's claims. *Cook IV*, 151 F.R.D. at 389. The Court adheres to that determination. The successfully completed class trial demonstrates the judicial and litigation efficiency of concentrating the claims of the Class in a single action. The Court also has been able to address whatever manageability challenges this case has presented.

8. Pursuant to the factors provided in Rule 23(g)(1)(A), the Court hereby appoints the law firm of Berger & Montague, P.C. as Lead Counsel for the Class pursuant to Federal Rule of Civil Procedure 23(c)(1)(B) and 23(g). The Court finds that Counsel for the Class has prosecuted this litigation aggressively and professionally throughout its long history. Beginning with the filing of the initial Complaint, Counsel persevered through fifteen years of voluminous discovery and hotly contested pretrial proceedings, including prosecuting a successful sanctions motion against the Department of Energy, opposing repeated attempts by Defendants to de-certify the class, and conducting extensive briefing on numerous, highly technical motions to clarify the legal standards for this unique and complex case. In total these proceedings generated fourteen published opinions and what is quite possibly the largest docket of any District of Colorado case to date. Counsel skillfully tried this case to a jury over a nearly four-month-long trial, winning a jury verdict for Plaintiffs and the Class. Counsel then persevered through two separate appeals. This Court sees no reason why counsel, having dedicated over twenty-five

7

years of honorable and diligent service to the Class, should not carry this case through to its conclusion. Additionally, the Court finds that Lead Counsel should be permitted to continue to associate the law firms of Silver & DeBoskey, P.C. and Markovits Stock & De Marco, LLC as co-counsel, and MoloLamken LLP as Supreme Court counsel.

       BY THE COURT:


       _____
       John L. Kane, Senior District Judge
       United States District Court

# APPENDIX "A"

**Summary of Class-Wide Testimony at Trial Relevant to Nuisance and Damages**

Local government official Tim Holeman and Charles Ozaki testified about chronic environmental hazards at Rocky Flats; the State of Colorado and the City of Broomfield's efforts to pressure Rockwell to bring the plant into compliance with applicable environmental laws and to contain and remediate its on-site waste disposal areas; and the public's reaction to the 1989 F.B.I. raid.

Former F.B.I. agent Jon Lipsky testified about deficient waste disposal practices and the resulting environmental violations at Rocky Flats, Rockwell's resistance to the EPA and State of Colorado's authority to regulate environmental conditions at the plant, and the F.B.I. investigation and grand jury proceeding.

Plaintiffs' experts Dr. Robert Budnitz and Dr. Thomas Cochran testified about proper safety procedures for nuclear facilities; how the location and design of the Rocky Flats facility and its equipment raised safety risks; how Defendants' management of Rocky Flats violated reasonable standards of care; and how major incidents at the plant (including plutonium fires), deficient on-site waste disposal practices, and other lapses in safety led to the spread of plutonium contamination throughout the Class Area.

Former Rocky Flats employees John Ray and Ronald Avery testified about deficiencies in safety and waste handling practices at the plant that allowed plutonium to escape, which testimony is relevant to both the existence of a nuisance and whether Dow and Rockwell's conduct was negligent or reckless.

Plaintiffs' experts Dr. Shawn Smallwood and Dr. Robert Goble, and fact witnesses Joel Selbin (a member of the Rocky Flats Soil Action Levels Oversight Panel) and John Ray, testified that plutonium remains in the soil in and around the plant site even after the site cleanup, and that some of that plutonium can become resuspended in the air and pose a continuing risk to people in the Class Area.

Plaintiffs' experts Dr. Shawn Smallwood, and fact witness Joel Selbin, testified about a number of ways in which plutonium travels from the plant site, including wind, vegetation fires that release plutonium that has settled on plants, and transport by surface water or groundwater. Dr. Smallwood also testified about bioturbation, *i.e.*, soil turnover due to biological activity of plants, insects and animals, as a mechanism to expose underground contaminants, including plutonium, to winds that have and will continuously transport them off-site.

Plaintiffs' expert Dr. Budnitz, and fact witness Gale Biggs (who chaired a committee for the governor of Colorado investigating air monitoring at Rocky Flats), testified about deficiencies in Dow and Rockwell's environmental monitoring for plutonium releases, which testimony tends to refute Defendants' claim that plutonium releases were small and demonstrates that considerable uncertainty exists with regard to the amount of plutonium released into the Class Area.

Plaintiffs' expert Dr. Thomas Cochran testified about Defendants' inability to account for 2600 pounds of plutonium (referred to as "Material Unaccounted For" or "MUF"), which adds

additional uncertainty to the official release estimates and further supports a finding of negligence or recklessness by Dow and Rockwell.

Plaintiffs' experts Dr. Robert Goble, Dr. Thomas Cochran, Dr. Steven Wing, and Dr. Richard Clapp testified about the health risks posed by exposure to even small amounts of plutonium.

Plaintiffs' expert Richard Clapp testified about his and other studies showing an increased incidence of cancer in off-site areas near Rocky Flats including the Class Area.

Dr. Wing described how DOE controlled much of the scientific research regarding the health effects of radiation, including research relied upon by Defendants.

Class representatives Merilyn Cook, Richard and Sally Bartlett, William Schierkolk, Gertrude Babb, and property owners Gretchen Robb and Karen Whalen, provided testimony relevant to the existence of a nuisance, whether the interference with use and enjoyment was "substantial" and "unreasonable" as defined by Colorado law (meaning that reasonable people in the community would find the nuisance to be substantial, and whether the benefits of Rocky Flats should be borne by the Property Class Members without compensation), and whether the nuisance had an impact on property values in the Class Area.

Fact witnesses Sam Cassidy, who was president of the Jefferson County Economic Council from 1995 to 1997, and Joseph Bowman, an investor in undeveloped land in the Class Area, plus the Class representative and Class Member witnesses, testified about how the risks posed by Rocky Flats stigmatized properties in the Class Area.

Plaintiffs proffered the work of four expert witnesses whose work showed the class has suffered damages: Dr. Radke, whose regression analysis showed depressed property values in the Class Area; Drs. Flynn and Slovic, who researched media coverage of the FBI raid and conducted a public opinion survey that found overriding negative perceptions of property in the Class Area; and Mr. Hunsperger, who compared sales data and found lower prices in the Class Area, and who also relied on Drs. Radke, Flynn, and Slovic's work and other research to measure the diminution of property values in the Class Area.