**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, *et al.*,

      Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

      Defendants.

---

**PART ONE:**

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ENTRY OF
JUDGMENT: CLASS CERTIFICATION**

---

# TABLE OF CONTENTS

**Page**

BACKGROUND ........................................................................................................ 4

    A.    The Rocky Flats Facility ............................................................ 4

    B.    Overview Of Class Proceedings .................................................. 5

    C.    Trial And First Appeal .............................................................. 8

    D.    Remand And Second Appeal .................................................... 10

I.      RULE 23 AND THE STANDARD FOR CLASS CERTIFICATION ................. 15

II.    *COOK APPEAL I* REQUIRES THIS COURT TO ANALYZE
    RIGOROUSLY PLAINTIFFS' ABILITY TO PROVE THE ELEMENTS
    OF THEIR NUISANCE CLAIM ON A CLASS-WIDE BASIS .......................... 17

III.    PLAINTIFFS' PERFUNCTORY REQUEST FOR RE-CERTIFICATION
    DOES NOT SATISFY THEIR BURDEN UNDER RULE 23 AND *COOK
    APPEAL I.* ......................................................................................... 19

IV.    PLAINTIFFS CANNOT PROVE THE ELEMENTS OF THEIR
    NUISANCE CLAIM ON A CLASS-WIDE BASIS ............................................ 22

    A.    Plaintiffs Cannot Prove Interference On A Class-Wide Basis ................... 24

        (i)    Each Property Owner's Use And Enjoyment Of Property Is
        Highly Individualized ..................................................... 25

        (ii)    The Record Demonstrates That Claims Of Interference With
        Use And Enjoyment Require Individualized Proof. ...................... 28

        (iii)    Plaintiffs Cannot Prove Interference On A Class-Wide Basis
        With Class-Wide Proof, And Did Not Do So At Trial. ................... 35

    B.    Plaintiffs Cannot Prove Interference Was "Substantial" And
    "Unreasonable" On A Class-Wide Basis. .................................................. 40

    C.    Plaintiffs Cannot Prove Damages On A Class-Wide Basis. ....................... 43

## TABLE OF CONTENTS (CONT'D)

**Page(s)**

    (i)      Plaintiffs' Damages Model Is Based On The Location Of Rocky Flats, Not Their Class-Wide Nuisance Theory..................... 43

    (ii)     Plaintiffs Cannot Use Averages To Prove Class-Wide Damages. ........................................................................................ 49

    (iii)    Defendants Are Entitled To Prove Setoff With Individual Evidence. ........................................................................................ 53

V.    THE COURT CANNOT CERTIFY THE PROPOSED PROSPECTIVE DAMAGES SUB-CLASS........................................................................ 54

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Adkins v. Thomas Solvent Co.*,
  487 N.W.2d 715 (Mich. 1992) .............................................................. 25

*Allen v. Wal-Mart Stores, Inc.*,
  241 F.3d 1293 (10th Cir. 2001) ............................................................ 39

*Allison v. Smith*,
  695 P.2d 791 (Colo. App. 1984) .......................................................... 25

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ....................................................................... passim

*American Express Co. v. Italian Colors Restaurant*,
  133 S. Ct. 2304 (2013) ......................................................................... 15

*Bell Atantic Corp. v. AT&T Corp.*,
  339 F.3d 294 (5th Cir. 2003) ................................................................ 49

*Boughton v. Cotter Corp*,
  65 F.3d 823 (10th Cir. 1995) .......................................................... 38, 39

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
  155 F.3d 331 (4th Cir. 1998) .................................................. 39, 50, 52

*Burdette v. Vigindustries, Inc.*,
  2012 WL 405621 (D. Kan. Feb. 8, 2012)............................................. 28

*Church v. General Elec. Co.*,
  138 F. Supp. 2d 169 (D. Mass. 2001).................................................. 38

*Cimino v. Raymark Industries, Inc.*,
  151 F.3d 297 (5th Cir. 1998) .......................................................... 50, 52

*City of San Jose v. Superior Court*,
  525 P.2d 701 (Cal. 1974)...................................................................... 25

**Page(s)**

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013) ................................................................................. passim

*Cook v. Rockwell Int'l Corp. (Cook XVII )*,
    580 F. Supp. 2d 1071, 1112 (D. Colo. 2006) .............................................. 44, 45, 49

*Cook v. Rockwell International Corp. (Cook Appeal I)*,
    618 F.3d 1127 (10th Cir. 2010) ...................................................................... passim

*Cook v. Rockwell International Corp. (Cook Appeal II)*,
    790 F.3d 1088 (10th Cir. 2015) ...................................................................... 11, 20

*Cook v. Rockwell International Corp.* (*Cook IV*),
    151 F.R.D. 378 (D. Colo. 1993) .................................................................. 5, 16, 19

*Cook v. Rockwell International Corp. (Cook IX)*,
    273 F. Supp. 2d 1175 (D. Colo. 2003) ........................................................... passim

*Cook v. Rockwell International Corp. (Cook VIII)*,
    181 F.R.D. 473 (D. Colo. 1998) ...................................................................... 5, 25

*Cook v. Rockwell International Corp. (Cook XVIII)*,
    564 F. Supp. 2d 1189 (D. Colo. 2008) ................................................................. 8

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ............................................................................................ 16

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    131 S. Ct. 2179 (2011) ........................................................................................ 17

*Farrell v. Klein Tools, Inc.*,
    866 F.2d 1294 (10th Cir. 1989) ........................................................................... 39

*Gene & Gene LLC v. BioPay LLC*,
    541 F.3d 318 (5th Cir. 2008) ............................................................................... 17

*General Telephone Co. of Southwest v. Falcon*,
    457 U.S. 147 (1982) ............................................................................................ 21

*Georgia-Pacific Corp. v. Carter*,
    265 S.W.3d 107 (Ark. 2007) ............................................................................... 27

**Page(s)**

*Good Fund, Ltd.-1972 v. Church*,
    540 F. Supp. 519 (D. Colo. 1982) ............................................................... 4

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    134 S. Ct. 2398 (2014) ...................................................................... 37, 39

*Henry v. Dow Chem. Co.*,
    No. 03-47775 (Mich. Cty. Cir. Ct. July 18, 2011) ........................................ 27, 28

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2009) ..................................................................... 39

*In re IPO*,
    471 F.3d 24 (2d Cir. 2006) ...................................................................... 22

*In re Rail Freight Fuel Surcharge Antitrust Litigation*,
    725 F.3d 244 (D.C. Cir. 2013) .................................................................. 17

*In re Urethane Antitrust Litigation*,
    768 F.3d 1245 (10th Cir. 2014) ................................................................. 21

*Isaksen v. Vermont Castings, Inc.*,
    825 F.2d 1158 (7th Cir. 1987) .................................................................. 45

*Mays v. Tennessee Valley Authority*,
    274 F.R.D. 614 (E.D. Tenn. 2011) ............................................................. 28

*McKay v. United States*,
    703 F.2d 464 (10th Cir. 1983) .................................................................... 4

*Mt. Sneffels Co. v. Estate of Scott*,
    789 P.2d 464 (Colo. App. 1989) ................................................................ 25

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ......................................................................... 39, 42

*Parko v. Shell Oil Co.*,
    739 F.3d 1083 (7th Cir. 2014) .................................................................. 52

*Powell v. Tosh*,
    2013 WL 4418531 (W.D. Ky. Aug. 2, 2013) ................................................ 26, 27

**Page(s)**

*Public Service Co. of Colorado v. Van Wyk*,
  27 P.3d 377 (Colo. 2001) ............................................................................... 22, 40

*Ralston v. Volkswagenwerk, A.G.*,
  61 F.R.D. 427 (W.D. Mo. 1973) .......................................................................... 50

*Reed v. Bowen*,
  849 F.2d 1307 (10th Cir. 1988) .......................................................................... 17

*Satsky v. Paramount Communications, Inc.*,
  1996 WL 1062376 (D. Colo. Mar. 13, 1996) ......................................................... 38

*Shuette v. Beazer Homes Holdings Corp*,
  124 P.3d 530 (Nev. 2005) ................................................................................ 25

*Sprague v. G.M.C.*,
  133 F.3d 388 (6th Cir. 1998) ............................................................................. 52

*Staley v. Sagel*,
  841 P.2d 379 (Colo. App. 1992) ......................................................................... 44

*Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*,
  725 F.3d 1213 (10th Cir. 2013) ..................................................................... 17, 49

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ..................................................................... 16, 21, 29, 49

*Weisfeld v. Sun Chem. Corp.*,
  210 F.R.D. 136 (D.N.J. 2002),
  *aff'd*, 84 F. App'x 257 (3d Cir. 2004) .................................................................. 52

*Westric Battery Co. v. Standard Electric Co.*,
  482 F.2d 1307 (10th Cir. 1973) .......................................................................... 45

*Windham v. American Brands, Inc.*,
  565 F.2d 59 (4th Cir. 1977) .......................................................................... 50, 52

*Woodward v. Board of Directors of Tamarron Association of*
  *Condominium Owners, Inc.*,
  155 P.3d 621 (Colo. App. 2007) ......................................................................... 40

**Page(s)**

**Statutes**

28 U.S.C. § 1961 ................................................................................................. 8

28 U.S.C. § 2072 ........................................................................................ passim

28 U.S.C. § 2072(b) .......................................................................................... 54

42 U.S.C. § 2014(hh) ........................................................................................ 19

Ky. Rev. Stat. § 511.530(2) ............................................................................. 27

**Rules**

Fed. R. Civ. P. 23 ................................................................................... 15, 17, 39

**Other Authorities**

Prosser and Keaton on Torts (5th ed. 1984) .................................................... 40

Restatement (Second) Contracts § 360 (1981) ................................................ 25

Restatement (Second) of Torts § 821D (1979) ................................................ 25

Restatement (Second) of Torts § 827 (1979) ............................................ 40, 41

Restatement (Second) of Torts § 930(3)(b) ......................................... 54, 55, 57

Robert E. Hall & Victoria A. Lazear,
    Reference Manual on Scientific Evidence (2d ed. 2000) ....................... 45

## **PRELIMINARY STATEMENT**

The tort of nuisance under Colorado law requires a substantial and unreasonable interference with a landowner's use of his land or the pleasure, comfort, and enjoyment he derives from it.  Plaintiffs seek to certify a class based on a nuisance claim alleging: first, that *all* class members were either exposed to *some* level of plutonium from Rocky Flats that caused *some* level of health risk, or are at *some* risk of future harm from potential releases of plutonium or other hazardous materials from Rocky Flats, *and critically*, that at least one of the two alleged risks interfered with each class member's use and enjoyment of his class property; second, that the interference was substantial and unreasonable; and third, that all class members suffered prospective damages in the form of diminished property value.  All three elements of plaintiffs' nuisance theory require individual proof, so the class cannot be certified and the previous class verdict cannot be reinstated.

*First*, as to the use and enjoyment of property (element one), the approximately 15,000 property owners in the putative class have virtually nothing in common.  The class includes horse ranches, multi-unit residential properties, gas stations, stores, single family homes, condominiums, townhomes, vacant lots, and virtually every other type of real property imaginable.  Some properties adjoin or sit close to Rocky Flats, others are as much as five miles away.  Some owners live on their properties, some have never set foot on them.  Some owners may be deeply afraid of any potential radiation exposure and believe Rocky Flats presents a risk of future harm; others may believe Rocky Flats is safe

because low-level radiation is all around us and poses no meaningful threat to human health; others are utterly unaware of any potential risk from Rocky Flats.  Although *some* members of the putative class (like the named plaintiffs) clearly believe Rocky Flats presents a risk to their property or health and experienced an interference with the use and enjoyment of their property because of that belief (*e.g.*, they sold their homes or felt overwhelmingly unsafe on their property), there is a deep evidentiary record in this case showing that many others are critically different from the named plaintiffs (*e.g.*, they don't believe Rocky Flats presents a risk and/or it never bothered them at all).  The only way to separate the injured from the uninjured here is with individual proof of whether risk from Rocky Flats did or did not interfere with each owner's use or enjoyment of property.

*Second*, even if individual proof were not required for element one, it still would be required for element two because the substantial and unreasonable test, though objective, still requires the jury to weigh the gravity of the harm (*i.e.*, interference) against the utility of defendants' conduct that caused it.  Assessing the gravity of the harm requires an inquiry into inescapably individual factors such as "the social value" of the use to which the land is put (*i.e.*, "the extent to which the use advances or protects the general public good"), and the suitability of each class member's use of land in relation to the surrounding area.  The social utility and suitability of each use of land will differ—

2

churches, massage parlors, bars, residences, and vacant land all have different social value and their suitability to the vicinity will vary by location.

*Third*, plaintiffs cannot prove damages on a class-wide basis. Their damages model does not measure diminished property value attributable only to their alleged nuisance. It primarily measures the mere effect of proximity to an unpopular nuclear site, and at best it partly measures damages attributable to the specific nuisance claim tried on a class-wide basis. In addition, plaintiffs may not rely on average damages across the class, but must show each class member's damages—which they have not done and cannot do on a class-wide basis, in part because defendants are entitled to present individual evidence of setoff for class members who purchased their property at a discount because of Rocky Flats.

Class actions would be easy to certify if courts were permitted to presume away all individual issues and try claims based on an assumed, composite set of facts. But Federal Rule of Civil Procedure 23, the Rules Enabling Act, and a long line of cases preclude exactly that. As shown below, a rigorous analysis of plaintiffs' claims and the proposed class plainly demonstrates that plaintiffs are unable to prove the elements of their claims on a class-wide basis, individual issues predominate over common ones, and the class trial improperly expanded plaintiffs' rights while depriving defendants of theirs. Plaintiffs' "motion" for class certification should be denied.

## BACKGROUND

### A.    The Rocky Flats Facility

The Rocky Flats facility has long been controversial.  In the late 1960s and early 1970s, a series of widely publicized studies found low levels of plutonium on certain properties near the facility.  *See* Ex. Y, Trial Tr. (10/27/2005) at 3080-85 (Budnitz) (Dkt. 1811).  These studies led nearby property owners to sue the operators, alleging that plutonium contamination was a nuisance that diminished their properties' value.  *See, e.g.*, *Good Fund, Ltd.-1972 v. Church*, 540 F. Supp. 519 (D. Colo. 1982), *rev'd sub nom*. *McKay v. United States*, 703 F.2d 464 (10th Cir. 1983).  Many of the properties at issue in this litigation were developed after the studies noted above and after the widely publicized *Church* litigation.  *See, e.g.*, Ex. B, Trial Ex. DX2292.

The Rocky Flats facility closed in 1992, was extensively remediated, and is now a wildlife refuge.  Federal safety regulators in 2005 concluded that "the levels of off-site surface soil contamination [around Rocky Flats] are no apparent public health hazard for past, current and future exposures."  Ex. C, Trial Ex. DX454 at 76; *see also id.* at 35-37. Plaintiffs' own exposure and risk expert testified at trial that people living near the facility in 1989 incurred "very, very small exposures" and "risks would have be extremely small."  Ex. D, Trial Tr. (11/2/2005) at 3660-61 (Goble) (Dkt. 1817).

## B.     Overview Of Class Proceedings[1]

Plaintiffs filed this suit against Dow and Rockwell on January 30, 1990, alleging that plutonium contamination from Rocky Flats lowered property values within a 30-square-mile area near the site, and sought to certify a class of property owners who owned property within that area on June 7, 1989, the day after an FBI raid relating to alleged on-site contamination.  *See* Second Am. Compl. (Dkt. 52).

In October 1993, the district court granted plaintiffs' motion to certify a class consisting of "[a]ll Persons and Entities owning an interest (including mortgagee and other security interests) in real property situated within the Property Class Area, exclusive of governmental entities, defendants, and defendants' affiliates, parents, and subsidiaries," as of June 7, 1989.  *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 382, 388-89 (D. Colo. 1993) (*Cook IV*).  The putative Property Class Area consisted of approximately 15,370 parcels of property, *Cook v. Rockwell Int'l Corp.*, 181 F.R.D. 473, 476 n.3 (D. Colo. 1998) (*Cook VIII*), including commercial properties, agricultural properties, single-family homes, apartments, condominiums, town-houses, and vacant lots.  *See* Radke 1996 Rpt. (Dkt. 1399-40 & 1399-41).   Defendants opposed class certification on a number of grounds, including typicality and predominance, arguing that

---

[1]     To assist the Court, Appendix A (Ex. A) sets forth a more detailed procedural history of class certification, significant class-related rulings, the class trial, and subsequent appeals rulings. This section provides only a high-level summary of those proceedings to orient the reader.

"[o]n virtually every element of each plaintiff's claim, the proof will be individual, case-specific."  Dow Resp. to Mot. for Class Cert. at 2-3 (Dkt. 213).

**_Cook IX_**.  In 2003, the Court entered an order to clarify "the scope of trial in the Property Class phase of this action" in response to the parties' disputes regarding the elements of the property claims and issues to be tried.  *Cook v. Rockwell Int'l Corp.*, 273 F. Supp. 2d 1175, 1179 (D. Colo. 2003) (*Cook IX*).  Among other things, the Court held that diminution of property value due to stigma alone cannot be an actionable interference with the use and enjoyment of property.  *Id*. at 1208-09.  The Court also rejected defendants' argument that plaintiffs' damages model was insufficient to prove damages because it measured the effect of proximity to Rocky Flats, not the effect of the alleged nuisance and trespass.  *Id.* at 1210.

**May 17, 2005 Order**.  On May 17, 2005, the Court entered an Order on Scheduling and Jury Instructions.  To resolve disputes over the need for individualized proof, the Court declared that interference based on a "threat of future injury that is a present menace and interference" or "human health risk" could be proved on a class-wide basis:

> I find proof of ***such class-wide exposure to plutonium and resulting class-wide increase in human health risk would be sufficient to establish an interference with Class members' use and enjoyment of property***, notwithstanding that Class members may have been exposed to plutonium from Rocky Flats at different times, by different exposure pathways and to different degrees, and may have incurred varying magnitudes of increased health risk as a result.

6

. . . .

[Another basis for] a jury to find that a threat or risk of future health or other harm from Rocky Flats constitutes an interference with Class members' use and enjoyment of Class properties [is] that conditions caused by Defendants' activities at Rocky Flats create a real, verifiable threat of future harm to Class properties (such as explosion or additional releases of plutonium or other hazardous substances with accompanying health risk)[.] . . . *[This basis for interference] is capable of class-wide resolution to the extent it is based on objective conditions, such as existing contamination on-site and off-site that may be released or remobilized in some fashion that would result in human exposure and increased health risk, that have the potential to affect all of the Class Area.*

Ex. E, 5/17/2005 Order at 5-6 (Dkt. 1338) (emphasis added).

Three other rulings in the same order related to aggregate class damages. *Id*. at 14-20. **First**, the Court ruled that because only damages for prospective invasions would be determined at the class trial, damages would be limited to a subclass of members who owned property in the class on the later of January 30, 1990, (filing date) or the date it appeared the nuisance would continue indefinitely.[2] *Id*. at 15-16. **Second**, the Court characterized one of defendants' challenges to class damages—that some class members purchased their property at a discount, and so had no damages or lower damages—as a "setoff" affirmative defense and shifted the burden of proof to the defendants. *Id*. at

---

[2] The remaining class members would wait until after the class trial for a system to determine their damages. *Id*. at 16.

17-18.  **Third**, the Court effectively barred evidence on individual class members' actual damages.[3]  *Id*. at 18-20.

### C.     Trial And First Appeal

The trial began in October 2005, and the case was submitted to the jury in January 2006.  After several weeks of deliberations, the jury returned a verdict on February 14, 2006.  *See* Jury Verdict Form (Dkt. 2117).  The jury found both defendants liable for both nuisance and trespass, *id.* at 1-13, and found that the injurious situation had become "complete" and "comparatively enduring" at some point between January 1, 1988, and December 31, 1995, *id.* at 23.[4]

Defendants timely appealed, arguing that this Court "erred as a matter of law by trying this case on a classwide basis."  Defs.' *Cook Appeal I* Opening Br. at 77-85.  More

---

[3]   With regard to prior discount, the Court barred as "undisputed matters of public record" the dates of class members' purchases, the prices paid in individual transactions, and any adjustments necessary to bring damage figures into the same period—all proofs that could demonstrate the lack of damages to individual class members.  *Id.*  The Court also ruled that the jury need not consider individual damage factors (*e.g.*, class member's knowledge; impact of knowledge on purchase/sale; location of properties) in assessing damages.  The Court stated that "diminution in value is a function of the market and not individual Class members' reaction to the alleged nuisance."  *Id*. at 20.

[4]   The jury awarded the class (1) an aggregate total of $176,850,340 in compensatory damages from both defendants, (2) $110,800,000 in punitive damages from Dow, and (3) $89,400,000 in punitive damages from Rockwell.  *See id.* at 15, 24, 26-27.  On June 2, 2008, the court entered a Final Judgment in the amount of $377,050,340 in compensatory and punitive damages and $549,053,747 in prejudgment interest against both defendants, for a grand total of $926,104,087 (excluding post-judgment interest at the rate prescribed in 28 U.S.C. § 1961).  *See Cook v. Rockwell Int'l Corp.*, 564 F. Supp. 2d 1189, 1197-1200, 1216-18 (D. Colo. 2008) (*Cook XVIII*); Final J. at 3-4 (Dkt. 2264).

specifically, defendants argued common issues did not predominate because plaintiffs "never showed how they could establish a substantial and unreasonable interference with each class member's use or enjoyment of his or her property on a classwide basis with classwide proof." *Id.* at 83. Defendants also argued that this Court could not "justify class certification by simply declaring that aggregate damages will be allocated in some fashion in the future." *Id.* at 81-84.

In response, plaintiffs argued this Court rightly refused to inquire into the merits of whether they could prove the elements of their claims on a class-wide basis, and cited this Court's class certification order and the other orders discussed above, as well as the trial record, as proof that class certification and the class-wide trial were proper. Pls.' *Cook Appeal I* Resp. at 88-89. Plaintiffs side-stepped defendants' argument that plaintiffs could not prove interference on a class-wide basis because "individual class members may have experienced different levels of subjective annoyance or discomfort," *id.* at 89 (citing and paraphrasing defendants' opening brief), and instead focused on the objective "substantial" and "unreasonable" elements of nuisance, without addressing defendants' argument about the subjective, individualized interference element, *id*.

The Tenth Circuit rejected the argument that the class-wide trial proved the propriety of class certification, holding:

> As the district court's class certification analysis failed to consider whether Plaintiffs could establish various elements of their PAA claims, ***supplied both by federal and state law***, this court must reverse the district court's

9

class certification ruling.  ***Upon remand, the district court shall revisit the class certification question to determine whether Plaintiffs can establish the elements of their claims, including the PAA threshold requirements, on a class-wide basis.***  Because we now reverse the district court's class certification ruling, we need not reach the question of whether the district court's subdivision of the class for damages purposes was proper.

*Cook v. Rockwell Int'l. Corp.*, 618 F.3d 1127, 1149 (10th Cir. 2010) (*Cook Appeal I*) (emphasis added).

### D.    Remand And Second Appeal

On remand, plaintiffs admitted that, at least on a class-wide basis, they could not prove they suffered the types of harm compensable under the Price-Anderson Act (PAA), and, therefore, they abandoned that claim and sought to reinstate the prior jury verdict on their state law nuisance claim.  Pls.' Opening Br. (Dkt. 2344).  Defendants opposed for a variety of reasons, including most prominently, on the ground that this lawsuit is a public liability action under the PAA, which is the exclusive remedy for claims arising out of a nuclear incident.   Defs.' Resp. (Dkt. 2345).   This Court agreed with defendants, 1/28/2014 Order (Dkt. 2351), and plaintiffs appealed.

On June 23, 2015, the Tenth Circuit reversed this Court, ruling that plaintiffs could proceed with their common law nuisance claim outside the context of Price-Anderson, and remanded to this Court, saying

When the district court receives this case it should proceed to judgment on the existing nuisance verdict promptly, consistent with resolving the outstanding class action question, wary of arguments that have already been rejected or forfeited.   This long lingering litigation deserves to find

10

> resolution soon.  The judgment of the district court is vacated and the case
> is remanded for proceedings consistent with this opinion.

*Cook v. Rockwell Int'l Corp.*, 790 F.3d 1088, 1105 (10th Cir. 2015) (*Cook Appeal II*).

On August 4, 2015, plaintiffs filed their Motion for Judgment.  Mot. for J. (Dkt. 2367); Corr. Mot. for J. (Dkt. 2371).  In a single paragraph in that motion, plaintiffs ask the Court "to confirm that the originally certified class is proper and intact for purposes of entering a state law nuisance judgment based on the nuisance verdict," and say that "class certification remains appropriate for the reasons set forth in the Court's prior orders."  *Id.* at 3.  This brief responds to that request.

## **ARGUMENT**

The Tenth Circuit in *Cook Appeal I* reviewed the record below, including the trial record, and decertified the class because this Court failed to analyze whether plaintiffs could prove the "***various elements*** of their PAA claims, supplied ***both by federal and state law***" on a class-wide basis with class-wide proof. *Cook Appeal I*, 618 F.3d at 1149 (emphasis added). On remand, the Tenth Circuit held that this Court "shall revisit the class certification question to determine whether Plaintiffs can establish the elements of their claims, including the PAA [claim], on a class-wide basis." *Id.* Under *Cook Appeal I* and Rule 23, this Court is bound to engage in a rigorous analysis of whether plaintiffs satisfied the requirements for class certification, including the question of whether they can prove their nuisance claims on a class-wide basis using class-wide proof without violating the Rules Enabling Act. Plaintiffs' one-paragraph request for certification falls far short of meeting their burden because it does not even purport to show they can prove the elements of their nuisance claim on a class-wide basis with class-wide proof, or otherwise satisfy Rule 23. Instead, plaintiffs invite this Court to disregard *Cook Appeal I* and "proceed to confirm that the originally certified class is proper and intact for purposes of entering a state law nuisance judgment" based on the same record on which *Cook Appeal I* decertified the class. Mot. for J. at 4 (Dkt. 2367). The Court should deny plaintiffs' motion for this reason alone.

But if the Court does consider the merits of class certification, it should conclude that plaintiffs have not satisfied their burden of showing that their nuisance claim can proceed as a class action. ***First***, the interference element of nuisance requires individual proof of whether any past or future risk from Rocky Flats actually interfered with each class member's use or enjoyment of his or her property.  This depends on a host of individual and/or subjective factors relating to the particular property and the owner of that property, including: how the owner uses and enjoys his or her (or its) property; whether and for how long the owner lived on that property; whether the owner believes Rocky Flats presents a future risk of harm, or believes past exposure to plutonium increased his or her health risk; how the owner perceives and evaluates such risk; whether the owner is a human versus a corporate entity; and so on.  Before the class trial, at plaintiffs' urging, the Court improperly presumed that risk from Rocky Flats interfered with every class member's use and enjoyment of property rather than inquiring into whether that was so.  Such a presumption has no basis in Colorado law and is rebutted by reams of contrary evidence from plaintiffs' own witnesses and experts.  Plaintiffs cannot carry their burden under Rule 23 by presuming interference and eliminating the need for proof of actual interference, because that would expanded class members' substantive rights (by eliminating the need to prove injury) and deprive defendants of their right to defend against and disprove each alleged injury, all in violation of the Rules Enabling Act.

13

***Second***, determining whether an interference, if found, is "substantial and unreasonable" requires the fact-finder to weigh the gravity of harm caused by that interference against the utility of the defendants' conduct that caused it.  While the "gravity of harm" is an objective inquiry, the fact-finder still must consider issues that will differ from person to person or property to property, such as: the kind of harm the owner suffered, the social value of the owner's use of the land (*i.e.*, whether the use advances or protects the public good), the suitability of the particular use or enjoyment harmed to the character of the locality; and, if the owner could avoid the harm, the burden of doing so.  The "gravity of harm" determination requires consideration of individual circumstances that cannot be reduced to a class-wide composite without violating the Rules Enabling Act.

***Third***, plaintiffs cannot prove damages on a class-wide basis.  Their damages model does not measure damages attributable only to plaintiffs' nuisance claims, but rather estimates how mere proximity to Rocky Flats affected property values.  Under *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013), this Court may not certify a class or permit class-wide proof of damage based on a model that fails to "measure only those damages attributable to [plaintiffs'] theory" of liability.  In addition, the Court improperly allowed plaintiffs to prove damages based on composite averages and excluded the presentation or consideration of individual evidence of class members' actual gains or losses.

14

*Finally*, consistent with the Rules Enabling Act, this Court cannot certify the proposed prospective damages sub-class to inherit the jury verdict and judgment because it would expand plaintiffs' substantive rights by allowing the sub-class members to recover for the diminished value of properties they did not own: *first*, because the sub-class may include thousands of class members who sold their properties before the prospective damages became compensable, and *second*, because damages were determined at trial based on the value of all class properties, not the smaller number of properties owned by members of the damages sub-class.

## I.    RULE 23 AND THE STANDARD FOR CLASS CERTIFICATION.

Federal Rule of Civil Procedure 23 sets forth the standard for class certification.[5] In recent years the Supreme Court has emphasized that Rule 23 imposes "stringent requirements"—requirements that "exclude most claims."  *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013).

---

[5]    Rule 23 provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members" only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  In addition, the class must fit into one of the categories listed in Rule 23(b).  Here, plaintiffs moved for certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *Id.* at (b)(3).

In *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), the court corrected a widespread misreading of *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974), as prohibiting at the class certification stage an inquiry into whether plaintiffs could prove their claims on a class-wide basis with class-wide proof.[6]   The *Wal-Mart* court recognized the inquiry into whether the prerequisites of Rule 23 are met frequently "will entail some overlap with the merits of the plaintiff's underlying claim," and noted that although *Eisen* "is sometimes mistakenly cited to the contrary[,]" such citation is based on "purest dictum and is contradicted by our other cases."   *Wal-Mart*, 131 S. Ct. at 2551-52.

Two years later, in *Comcast*, the Supreme Court reaffirmed that Rule 23(b)(3)'s predominance requirement is "even more demanding" than the requirements of Rule 23(a), and clarified the importance of rigorously examining whether common issues predominate over individual ones in the case as a whole.   133 S. Ct. at 1432 (citing *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623-24 (1997)).   The *Comcast* court held that plaintiffs' inability to prove an element of their claim—there, damages—on a

---

[6]   *See, e.g.*, *Cook IV*, 151 F.R.D. at 383 ("The objections of Dow and Rockwell are addressed to the merits of plaintiffs' claims. . . . [Their objections] would necessitate a preliminary hearing on the merits as part of the class certification determination.   Such preliminary hearing is not authorized by Rule 23 and was expressly repudiated by the Supreme Court in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78, 94 S. Ct. 2140, 2152–53, 40 L. Ed. 2d 732 (1974).").

class-wide basis precluded class certification because individual issues would predominate. *Id.*

Determining whether "'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action"—here, nuisance. *Erica P. John Fund, Inc. v. Halliburton*, 131 S. Ct. 2179, 2184 (2011) (quoting Fed. R. Civ. P. 23(b)(3)). And where injury is an element of the claim—as here in the form of interference with the use or enjoyment of property—"[c]ommon questions of fact cannot predominate where there exists no reliable means of proving classwide injury in fact. When a case turns on individualized proof of injury, separate trials are in order." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252-53 (D.C. Cir. 2013) (citation omitted). And last, courts must also look at the "practicalities" of proving and defending those elements, *i.e.*, "how a trial on the merits would be conducted if a class were certified." *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1220 (10th Cir. 2013) (quoting *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 326-29 (5th Cir. 2008); citing *Reed v. Bowen*, 849 F.2d 1307, 1309-10 (10th Cir. 1988)).

## II.   *COOK APPEAL I* REQUIRES THIS COURT TO ANALYZE RIGOROUSLY PLAINTIFFS' ABILITY TO PROVE THE ELEMENTS OF THEIR NUISANCE CLAIM ON A CLASS-WIDE BASIS.

The Tenth Circuit decertified the former class not only because plaintiffs failed to prove the PAA's threshold requirement, but also because they failed to establish that they

could prove the elements of their underlying state law claims on a class-wide basis with class-wide proof.  "As the district court's class certification analysis failed to consider whether Plaintiffs could establish *various elements* of their PAA claims, *supplied both by federal and state law*, this court must reverse . . . ."  *Cook Appeal I,* 618 F.3d at 1149 (emphasis added).  "Upon remand, the district court *shall* revisit the class certification question to determine whether Plaintiffs can establish the elements of their claims, *including* the PAA threshold requirements, on a class-wide basis."  *Id.* (emphasis added).

The Tenth Circuit's decertification holding was based unmistakably on "both federal and state law" elements of plaintiffs' nuisance and trespass claims.  *Id.*  Plaintiffs, however, assert that because they subsequently disavowed their PAA claim, the *Cook Appeal I* mandate as to class certification is "simply irrelevant" and gives the Court a green light to re-certify the nuisance class the Tenth Circuit set aside.  Mot. for J. at 3. (Dkt. 2367).

Plaintiffs' argument that *Cook Appeal I* decertified the class "solely" as to their PAA claims clashes with *Cook Appeal I*'s holding that this Court failed to consider whether plaintiffs could prove on a class-wide basis elements of their nuisance and trespass claims "supplied both by federal and state law."  618 F.3d at 1149.  The state law elements of plaintiffs' nuisance claim—whether asserted through the PAA or on a stand-

18

alone basis—are identical, as this Court recognized when it certified the former class.[7]

Tellingly, in arguing *Cook Appeal I*'s decertification ruling "is simply irrelevant now," plaintiffs excised the key "supplied both by federal and state law" language from the Tenth Circuit's holding.  Mtn. for J. at 3-4 (Dkt. 2367).  This language makes clear that the Tenth Circuit's class certification mandate is not limited to the PAA, but applies also to plaintiffs' purported state law nuisance claim.[8]

### III. PLAINTIFFS' PERFUNCTORY REQUEST FOR RE-CERTIFICATION DOES NOT SATISFY THEIR BURDEN UNDER RULE 23 AND *COOK APPEAL I*.

In the single paragraph of their Motion for Judgment devoted to class certification, plaintiffs do not substantively discuss Rule 23 or any of the prerequisites to class certification.  Mot. for J. at 3-4 (Dkt. 2367).  They contend that the Court's class certification ruling in 1993 is still valid, but they include no analysis of facts or law that have developed since the Court certified the former class in 1993, and offer no analysis (as required by *Cook Appeal I*) of whether or how they can prove the elements of their state law nuisance claim on a class-wide basis.  *Id.* at Ex. 9.  The extent of plaintiffs'

---

[7]    *Cook IV*, 151 F.R.D. at 380 ("[plaintiffs'] identical common law and Price Anderson claims sound in negligence, strict liability, private nuisance, and outrageous conduct"); *see also* 42 U.S.C.  § 2014(hh) ("the substantive rules for decision in such action shall be derived from the law of the State in which the nuclear incident involved occurs").

[8]    Plaintiffs' focus on the panel's use of the term "PAA claims" is especially disingenuous given that plaintiffs repeatedly characterized *all* of their claims (including the now supposedly freestanding nuisance claim) as being part and parcel of their public liability action under the Price-Anderson Act, as shown in defendants' opening opposing brief.

argument is that "certification remains appropriate for the reasons set forth in the Court's prior orders," and they argue the "class trial and classwide nuisance verdict further establishes that class certification remains appropriate." *Id.* at 4.

As an initial matter, *Cook Appeal II* did not disturb *Cook Appeal I*'s decertification holding. To the contrary, *Cook Appeal II* acknowledged that *Cook Appeal I* requires this Court to "resolv[e] the outstanding class action question," *Cook Appeal II*, 790 F.3d at 1105, and thus did not, as plaintiffs wrongly assert, "mandate[] that this Court enter a *state law* nuisance judgment." Mot. for J. at 3 (Dkt. 2367). The "outstanding class action question" posed by *Cook Appeal I* is whether plaintiffs can meet their burden under Rule 23 to demonstrate that they meet the criteria for class certification, including specifically whether they can prove their nuisance claim on a class-wide basis with class-wide proof.

That analysis is exactly what plaintiffs *failed* to address in their "motion." Rather than present the Court with an actual motion for class certification with a supporting submission, plaintiffs ask the Court to cut some very big corners and recertify the class based on the exact record that led *Cook Appeal I* to decertify it. In *Cook Appeal I*, as here, plaintiffs argued that class certification was appropriate for all the reasons set forth in this Court's long line of class-related orders—*Cook IV, VIII*, *Cook IX*, the April 14, 2004 Order, and the May 17, 2005 Order—and insisted that "the class trial vindicated the district court's reasoned assessment that the claims were subject to proof through class-wide evidence." *See* Pls.' *Cook Appeal I* Resp. at 81. The Tenth Circuit rejected that

20

argument, yet plaintiffs' Motion for Judgment repeats it nearly verbatim. *Compare id.*; *with* Mot. for J. at 3-4 (Dkt. 2367).

Precisely because the Tenth Circuit already evaluated this Court's pre-trial orders and trial record, and found them lacking, plaintiffs' reliance on *In re Urethane Antitrust Litigation*, 768 F.3d 1245 (10th Cir. 2014), is misplaced. *See* Mot. for J. at 4 n.6 (Dkt. 2367) (citing *Urethane* for the proposition that the previous class trial establishes that class certification was appropriate). When the *Urethane* plaintiffs challenged class certification directly after a class trial, the *Urethane* court said that the class trial demonstrated the propriety of class certification, reaching essentially the opposite conclusion that the Tenth Circuit in *Cook Appeal I* reached regarding the class trial here. Nothing in *Urethane* suggests this Court may ignore the fact that the Tenth Circuit decertified the class after reviewing the entire record, including the class trial record, and rejecting the exact argument that plaintiffs now advance in their Motion for Judgment.

As the Supreme Court explained in *Wal-Mart*, "Rule 23 does not set forth a mere pleading standard." 131 S. Ct. at 2551. "A party seeking class certification must affirmatively demonstrate his compliance with the Rule," *id.*, which includes a burden to "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast*, 133 S. Ct. at 1432. "[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable." *Wal-Mart*, 131 S. Ct. at 2551 (quoting *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). The requirement that the Court conduct a "rigorous analysis"

21

to ensure "actual, not presumed conformance" applies with "equal force to all Rule 23 requirements, including those set forth in Rule 23(b)(3)." *In re IPO*, 471 F.3d 24, 33 n.3 (2d Cir. 2006).

Instead of marshaling facts and law to support their motion and carry their burden, plaintiffs ask the Court to treat certification as a rubber-stamping exercise, one that requires the Court to merely "confirm that the originally certified class is proper and intact for purposes of entering a state law nuisance judgment based on the nuisance verdict." Mot. for J. at 3 (Dkt. 2367).[9]  Plaintiffs' cursory request for class certification does not satisfy their burden under *Cook Appeal I* or Rule 23 and should be rejected for that reason alone.

## IV.   PLAINTIFFS CANNOT PROVE THE ELEMENTS OF THEIR NUISANCE CLAIM ON A CLASS-WIDE BASIS.

Plaintiffs have failed to show, as required by *Cook Appeal I*, that their nuisance claim can be proved on a class-wide basis and have thus failed to meet the requirements of Rule 23.  Under Colorado law, a nuisance claimant must establish injury in the form of an interference "with the use and enjoyment of his property that is both 'substantial' and 'unreasonable.'"  *Cook Appeal I*, 618 F.3d at 1145 (quoting *Pub. Serv. Co. of Colo. v. Van Wyk*, 27 P.3d 377, 391 (Colo. 2001)).   More specifically, as this Court has

---

[9]   Plaintiffs attached to their Proposed Order Re Class Certification a "Summary of Class-Wide Testimony at Trial Relevant to Nuisance and Damages" that contains only plaintiffs' paraphrasing of testimony, with no citations to the record, and no attempt to explain how such testimony supports class certification.  *See* Mot. for J. at Ex. 9, App'x A (Dkt. 2367).

recognized, "to prevail on their nuisance claim, plaintiffs must prove that one or both of the defendants, through their operation of Rocky Flats: (1) interfered with Plaintiffs' and Class members' use and enjoyment of their Class Properties; (2) that this interference was substantial and unreasonable; and (3) that the activity causing the interference was either intentional, negligent or abnormally dangerous."   Ex. E, 5/17/2005 Order at 2 (Dkt. 1338).  Plaintiffs also must prove the amount of damages resulting from the alleged interference.  *Id.* at 14-20.

Defendants' consistent position throughout this suit has been that plaintiffs cannot prove the elements of their nuisance claim on a class-wide basis with class-wide proof.[10] There allegedly are about 15,000 properties in the putative class area, and each property owner must prove that risk from Rocky Flats ***actually***, not ***presumptively***, interfered with the way he used and enjoyed his property, that the interference was substantial and unreasonable, and the amount of damages he suffered.  Plaintiffs' inability to prove the elements of their claim on a class-wide basis with class-wide proof means individual issues predominate over common ones and this Court cannot certify the proposed class.

---

[10]   The Court chided defendants for their persistence on this subject.  *See* Ex. F, 4/14/2004 Order at 1-2 (Dkt. 1220) ("Defendants, meanwhile, took the status report as yet another opportunity to argue at length regarding the merits of Plaintiffs' property damage claims and whether they can properly proceed as a class action in any respect."); Ex. U, 5/28/2004 Order at 3-4 (Dkt. 1235) ("Once again, the parties could not agree on the most basic components of the class property trial, with the center of the dispute shifting, for the most part, from the legal issues decided in *Cook IX* to Defendants' contention, for at least the third time in the action, that none of the issues to be tried were capable of resolution in a class action.").

While plaintiffs point to the class trial itself as evidence that the impossible can be done, that trial violated Rule 23, the Rules Enabling Act, and controlling Supreme Court precedent.

### A.    Plaintiffs Cannot Prove Interference On A Class-Wide Basis.

Plaintiffs cannot prove the first element of nuisance, interference, on a class-wide basis.  Their theory of injury is that *all* class members were either (a) exposed to *some* level of plutonium from Rocky Flats that caused *some* level of health risk, or (b) are at *some* risk of future harm from potential releases of plutonium or other hazardous materials from Rocky Flats, *and critically*, (c) at least one of the two alleged risks interfered with every class members' use and enjoyment of his or her (or its) property. But the record here shows that every aspect of this interference theory requires individual proof: not all class members were exposed to plutonium or incurred any health risk; not all class members believe Rocky Flats is or ever has been a risk to them or their property; and, most critically, even if all class members *were* at some "extremely small" risk from Rocky Flats and credited that as fact, that does not mean such risk interfered with every class member's use and enjoyment of property, because the use and enjoyment of property and the perception of and reaction to risk are individual and subjective, and thus require individual proof.

24

### (i)    Each Property Owner's Use And Enjoyment Of Property Is Highly Individualized.

"The 'use and enjoyment of land' in the nuisance context refers to the actual or potential use of the land itself and the 'pleasure, comfort and enjoyment that a person normally derives from the occupancy of land.'" Ex. E, 5/17/2005 Order at 9 (Dkt. 1338) (quoting Restatement (Second) of Torts § 821D (1979)).  The ways that owners use land and derive pleasure, comfort, and enjoyment from it are virtually limitless, which is why courts (including this one) have often observed that "there are countless ways in which a defendant can substantially interfere with a plaintiff's use and enjoyment of land." *Cook IX*, 273 F. Supp. 2d at 1202-03 (citing *Adkins v. Thomas Solvent Co.*, 487 N.W.2d 715 (Mich. 1992)).  As the Colorado Court of Appeals observed in a case plaintiffs and this Court have repeatedly cited and relied on for the law of nuisance in Colorado, the "use and enjoyment of land are ***subjective*** in nature." *Allison v. Smith*, 695 P.2d 791, 795 (Colo. App. 1984) (emphasis added).[11]  The subjective and individualized nature of interference is consistent with the longstanding rule that each parcel of real estate is unique.[12]

---

[11]  *See Cook VIII*, 181 F.R.D. at 485 (citing *Allison v. Smith*); *Cook IX*, 273 F. Supp. 2d at 1208 (same); 8/6/2004 Pls.' Proposed Nuisance Instruction at 2 (same).

[12]  *See, e.g.*, Restatement (Second) Contracts § 360 cmt e (1981) ("A specific tract of land has long been regarded as unique."); *Mt. Sneffels Co. v. Estate of Scott*, 789 P.2d 464, 466 (Colo. App. 1989) ("Every parcel of real property is unique."); *City of San Jose v. Superior Ct.*, 525 P.2d 701, 711 (Cal. 1974) ("the factors determinative of the close issue of [nuisance] liability are the specific characteristics of that parcel"); *Shuette v. Beazer Homes Holdings Corp.*, 124 P.3d

Because interference is subjective and infinitely variable, "in most cases courts do not separately analyze the claimed interference with use and enjoyment of property." Ex. E, 5/17/2005 Order at 3 (Dkt. 1338). In individual cases, where the plaintiff has filed suit alleging actual interference with his use and enjoyment, most "courts implicitly accept the plaintiff's claim that the defendant's activities interfered with his use and enjoyment of property in some way," and focus their analysis on the objective elements of nuisance: whether "the interference is deemed substantial and unreasonable." *Id.* at 4. In contrast, in the class context absent class members have done nothing to indicate or allege they suffered any injury. Assuming injury in the class context, as this Court recognized, would improperly

> allow the jury to consider forms of interference that do not apply to the class as a whole [and] would impermissibly invite it to determine nuisance liability based on a non-existent composite class member who had suffered all of the interferences claimed by different class members.

*Id.*

Substantial authority in the class context confirms the subjective, individualized nature of interference and its unsuitability for class-wide determination. For example, in *Powell v. Tosh*, No. 5:09-CV-00121, 2013 WL 4418531 (W.D. Ky. Aug. 2, 2013), the

---

530, 542 (Nev. 2005) ("class actions involving real property are often 'incompatible with the fundamental maxim that each parcel of land is unique'") (citation omitted).

court decertified a class alleging nuisance based on odors from a nearby hog farm.[13]   The court explained that "the subjective component [of nuisance] asks whether there was in fact an interference with the claimant's use and enjoyment of his property, and the objective component asks whether that interference was unreasonable," and held that interference is not capable of common, class-wide proof.  *Id.* at *4 (quotations omitted).

Similarly, in *Georgia-Pacific Corp. v. Carter*, 265 S.W.3d 107 (Ark. 2007), the court decertified a class in a case alleging, among other things, nuisance caused by gases emitted from a wastewater treatment plant.  That court held that "it is evident, from the property owners' claims and *from the sheer nature of a claim for private nuisance*, that individual issues exist in the instant case."  *Id.* at 114 (emphasis added).

In *Henry v. Dow Chemical Co.*, No. 03-47775 (Mich. Cty. Cir. Ct. July 18, 2011), plaintiffs alleged nuisance based on contamination.  The court originally certified the class, but after the Supreme Court decided *Wal-Mart*, the trial court conducted further analysis and decertified the class, reasoning that "whether and how the individual plaintiffs were injured involves highly individualized factual inquiries," specifically including proof of actual interference:

---

[13]   The Court was applying a Kentucky nuisance statute that states: "A permanent nuisance shall exist if and only if a defendant's use of property causes unreasonable and substantial annoyance to the occupants of the claimant's property or unreasonably interferes with the use and enjoyment of such property, and thereby causes the fair market value of the claimant's property to be materially reduced."  *Id.* at *4 (quoting Ky. Rev. Stat. §511.530(2)).

> The individual plaintiffs in the present case use and enjoy their property in myriad ways. Whether plaintiffs have suffered an interference with or loss of use and enjoyment of their property requires an individualized factual inquiry into each plaintiff's use and enjoyment of their property.

*Id.*, 7/18/2011 Slip. Op. at 5-6 (quotations and citation omitted); *see also Cook Appeal I,* 618 F.3d at 1145 ("[A] jury may find the presence of radioactive contamination creates an actual risk to health and thereby interferes with a plaintiff's use or enjoyment of his land *if the contamination disturbs the plaintiff's comfort and convenience, including his peace of mind, with respect to his continued use of the land.*") (emphasis added).[14]

    **(ii)    The Record Demonstrates That Claims Of Interference With Use And Enjoyment Require Individualized Proof.**

Plaintiffs bear the burden of showing with actual evidence that they can prove, on a class-wide basis, that risk from Rocky Flats interfered with each class member's use and enjoyment of his or her property, *see, e.g.*, *Cook Appeal I*, 618 F.3d at 1149, but they have never done so.  *See, e.g.*, Mot. for J. at 3-4 (Dkt. 2367).

Plaintiffs' broadest allegation is that the *potential* for future releases from Rocky Flats—a demonstrable risk of future harm, however slight it may be—interfered with

---

[14]   *See also Burdette v. Vigindustries, Inc.*, No. 10-1083, 2012 WL 405621, at *7 (D. Kan. Feb. 8, 2012) (denying certification in a nuisance and negligence suit related to a property beset with expanding sinkholes: "the individual Plaintiffs' testimony is integral to the analysis for purposes of applying these [interference] factors, which are based on the homeowners' use and enjoyment of their property"); *Mays v. Tenn. Valley Auth.*, 274 F.R.D. 614, 626-27 (E.D. Tenn. 2011) (denying certification of a contamination-based nuisance class; identifying as an "individualized" inquiry the effect of the contaminants on plaintiff's use and enjoyment of said property).

every class member's use or enjoyment of his or her (or its) property, and their narrower allegation is that *some* past exposure to *some* amount of plutonium (no matter how small) increased *some* class members' health risk, which caused an interference with their use or enjoyment of their properties.  Each of these theories incorrectly presumes that every individual in the class knows about and credits the notion that Rocky Flats is a future risk and/or caused them to be exposed to plutonium and incur increased health risk.  Each of these theories also incorrectly presumes that "extremely small" risk, even if credited as fact by all class members, would interfere with the way each uses or enjoys his or her (or its) property.  But presumptions are not proof, *Wal-Mart*, 131 S. Ct. at 2551, and the record definitively rebuts the notion that risk from Rocky Flats caused an interference with all class members' use and enjoyment of their property, meaning individual proof of injury is required.

A prime example of an uninjured class member is Mr. Ozaki, who testified at trial in 2005—over a decade after risk from Rocky Flats allegedly interfered with his use and enjoyment of his property—that he never believed his property was contaminated with plutonium and was never even concerned by the possibility: "I wasn't aware of any-- anything, ***any possibility*** that there was plutonium on my property.  Is there?"  Ex. G,

Trial Tr. (10/20/2005) at 1832   (Dkt. 1800) (emphasis added). [15]   Mr. Ozaki readily agreed that defendants' conduct at Rocky Flats—including alleged risk of plutonium releases—never "had any impact on [his] use and enjoyment of [his] property."   *Id.* at 1832.   In contrast to the named plaintiffs, who testified that the FBI raid significantly interfered with their use and enjoyment of their property,[16] Mr. Ozaki said it never affected him at all: "Q. And when it even comes to the FBI raid, the FBI raid took place, you go, oh, my gosh, I am worried about my property from Rocky Flats?  A. ***It didn't cross my mind.***"   *Id*. (emphasis added).   After hearing Mr. Ozaki profess total disregard for the risk that supposedly interfered with the use and enjoyment of his property, the Court observed: "Whether he likes it or not, he is a member of the class."   Ex. H, Trial Tr. (10/20/2005) at 1870 (Dkt. 1801).

Survey evidence presented by plaintiffs' expert, Mr. Hunsperger, confirms that many putative class members, like Mr. Ozaki, had no concerns about risk from Rocky

---

[15]   *See also id.* at 1831 ("Q. . . . You as a class member never had any concern that your home in Arvada was contaminated, correct?  A. No, I didn't think it was close enough to where there was any plutonium.").

[16]   *See, e.g.*, Ex. I, Trial Tr. (11/10/2005) at 5015, 5019-20 (Robb) (Dkt. 1855) (testifying that she and her family sold their house in the proposed class area in 1990 because she believed health risks from plutonium were unacceptable); Ex. J, Trial Tr. (10/14/2005) at 926-27 (S. Bartlett) (Dkt. 1792) ("after the raid, I no longer could enjoy my property.  I no longer could feel safe.  I couldn't feel my family was safe there, my friends, or my neighbors.  I just wanted out.").

Flats, even in the wake of the vaunted FBI raid.[17]  Mr. Hunsperger reported the following

significant findings:

> 62% of the Broomfield respondents and 42% of the Arvada respondents felt
> Rocky Flats is a health threat.  Approximately six years later, Decision
> Research found the same results: 64% of Arvada/Westminster respondents .
> . . believe Rocky Flats is a health risk.

Hunsperger 1996 Rpt. at 61 (Dkt. 1399-30).[18]  Thus, according to plaintiffs' own

evidence, somewhere between 36% and 58% of nearby residents during the critical 1989-

1995 period *did not believe Rocky Flats was a health risk*.  *Id.*  It should go without

saying that a property owner who does not believe Rocky Flats is a health risk, like Mr.

Ozaki, would not experience an interference with his use and enjoyment of his property

because of such alleged risk.

In addition to the many class members who lived on their properties and did not

regard Rocky Flats as a health risk, another substantial group of putative class members

---

[17]   Mr. Hunsperger said the survey research he presented "is particularly useful to determine
how people respond to . . . health hazards and risks."  Hunsperger 1996 Rpt. at 6.  (Dkt. 1399-
1429).

[18]   According to that same survey, one third of nearby residents (33.3%) reported they had
never heard of the FBI raid, and of the 64.7% of nearby residents who had heard of it, a
whopping "*74% said these events did not affect their evaluation of nearby homes.*"  *Id.* at 13
and Fig. 4.13 (emphasis added).  Only 16% of nearby residents (30 of the 188 surveyed) said
the FBI raid negatively affected their evaluation of nearby homes.  *Id.*  Another survey discussed by
Mr. Hunsperger asked people living within five miles of Rocky Flats whether they were
concerned about living near Rocky Flats, and "[t]he majority (54%) reported they were 'not
concerned at all.'"  *Id.* at 45.  When asked their opinion about Rocky Flats, roughly half (48%)
reported they were "neutral" about Rocky Flats, 25% reported a favorable impression, and *only
27% reported an unfavorable impression.  Id.*

did not live on their properties and thus incurred no exposure or health risk.[19]   The number of non-resident owners is substantial.  For example, there were well over 1,000 vacant lots among the class properties, and plaintiffs' expert calculated that vacant land owners incurred a "total loss" of $56,151,228 dollars, or between 35% and 45% of the total damages for the class,[20] yet there is no evidence that owners of vacant lots would ever have been exposed to any plutonium or have incurred any increased health risk at all.[21]

The above evidence shows that large portions of the putative class do not and did not credit the notion that Rocky Flats presents a present or future risk to their health or property.  It also disproves the contention that risk from Rocky Flats uniformly caused

---

[19]   Dr. Goble, plaintiffs' exposure and health risk expert, confirmed the common-sense fact that exposure depends on "where [class members] were living or spending their time, and depend[s] on lots of other individual characteristics," Ex. D, Trial Tr. (11/2/2005) at 3660 (Dkt. 1817).  He specifically opined that only people who actually lived or spent time in the area incurred risk.  *Id.* at 3661.

[20]   *See* Radke 1996 Rpt. at 47-48 (Dkt. 1399-41) (estimating that the putative class includes at least 1,226 vacant residential parcels (*i.e.*, parcels with no structures) comprising 213 acres, plus another 4,599 acres of vacant land divided into an unknown number of parcels); Radke 1996 Rpt. at 7, Table 2 (Dkt. 1399-40) (calculating total losses for vacant land as $56,151,228, total losses for single-family residential properties between $64,503,340 to $97,510,144, and total losses for commercial properties as $4,418,494); *see also* Ex. K, Trial Tr. (10/26/2005) at 2726-28 (Radke) (Dkt. 1809).

[21]   Notably, the alleged interference based on past exposure to plutonium focuses on *class members'* exposure, not anyone else's.  Jury Instruction 3.6 (Dkt. 2121).  The proposed class also contains a number of commercial properties and multi-unit residential properties, as well as corporate entities for which owner-occupancy (and thus actual exposure and risk) is either questionable (commercial and multi-unit residential) or impossible (non-humans).

class members to experience any kind of interference with their use and enjoyment of property.  Another of plaintiffs' experts, Dr. Slovic, a risk assessor, further establishes the impossibility of ever proving a risk-based theory of interference on a class-wide basis with class-wide proof.  Dr. Slovic repeatedly testified —with devastating consequences for plaintiffs' contention that risk-based interference may be proved on a class-wide basis—that the concept of risk itself, as well as our perception of it, is "highly subjective":

> Q. Is risk something that's real and objective?  A. No. That's what the point of this slide is, that danger is real.  When we affix a label called risk and numbers, we say are risk numbers, then it's subjective.
>
> . . . .
>
> I have argued that risk is really highly subjective, that it doesn't exist out there in the world independent of our minds and cultures waiting to be measured. . . . So there is no such thing as real risk or objective risk."

Ex. L, Trial Tr. (11/7/2005) at 4227-28 (Dkt. 1848).

> The public has a rather complicated way of judging risk.  They don't just look at the number of fatalities or the probability.  They look at these other qualitative factors such as, you know, is there a lot of uncertainty around the risk?  Does -- does this hazard, does it invoke in us a gut feeling of dread?  Does it make -- do we kind of dread this thing?  Does it have the potential to have a catastrophic outcome; that is, can it kill a large number of people at one time?  Is it controllable by me or by the authorities?  Equity, that's that fairness business that I just mentioned.  Is it a fair risk in terms of somebody getting benefit from it?  Is this a risk that extends to future generations?  You know, are we passing on a risk to future generations?  All these are important to the public when they judge risk.

*Id.* at 4230-31.

> [Q.] Risk is complex.  And all of these different factors, power, emotion, politics, reason, psychology, all these different factors relate to risk assessment, correct?  A. Yes.

Ex. M, Trial Tr. (11/7/2005) at 4284 (Dkt. 1849); *see also* Ex. L, Trial Tr. (11/7/2005) at 4233 (Dkt. 1848) (risk perception also varies by individuals' education and expertise).

Given that the perception of risk and even the concept of risk is subjective and varies significantly from individual to individual, common proof of an interference with use and enjoyment allegedly caused by risk is impossible.  But the subjectivity of risk and the perception of risk is compounded where, as here, the magnitude of the alleged risk also varies widely among putative class members.  Dr. Goble testified that exposure and risk would vary across "quite a range" based on a host of individual factors:

> For people living in the area, ***the exposures and the risks could have been really different, depending on when people were there.*** In particular, if people weren't there for, say, the '57 fire, they wouldn't have had an exposure to the '57 fire.  So depending on where -- when they were there, ***depending on where they—where they were living or spending their time, and depending on lots of other individual characteristics, there would be quite a range of exposures and quite a range of risks***.

Ex. D, Trial Tr. (11/2/2005) at 3660-61 (Dkt. 1817) (emphasis added); *id.* ("But for many—many such people, those risks would have be[en] extremely small.").  Dr. Slovic's and Dr. Goble's testimony underscores the impossibility of proving, without direct, individual proof, how any alleged risk might affect any individual property owners' use and enjoyment of property.

### (iii)    Plaintiffs Cannot Prove Interference On A Class-Wide Basis With Class-Wide Proof, And Did Not Do So At Trial.

In the face of this immense individual variability, and despite acknowledging the impropriety of presuming class-wide interference, Ex. E, 5/17/2005 Order at 3-4 (Dkt. 1338), plaintiffs persuaded this Court—over defendants' objection, and without citation to any authority—that their nuisance claims could be tried on a class-wide basis with class-wide proof.  The Court explained its reasoning as to the "future risk" theory of interference this way:

> [Interference based on] an objectively demonstrable risk of future harm[] is capable of class-wide resolution to the extent it is based on objective conditions, such as existing contamination on-site and off-site that may be released or remobilized in some fashion that would result in human exposure and increased health risk, that have the potential to affect all of the Class Area.

*Id.* at 6.  And it explained its reasoning as to the "past exposure plus risk" theory of interference this way:

> *I find proof of . . . class-wide exposure to plutonium and resulting class-wide increase in human health risk would be sufficient to establish an interference with Class members' use and enjoyment of property*, notwithstanding that Class members may have been exposed to plutonium from Rocky Flats at different times, by different exposure pathways and to different degrees, and may have incurred varying magnitudes of increased health risk as a result.

*Id.* at 5 (emphasis added).

Based on the testimony from plaintiffs' own risk and exposure experts and the other evidence cited above, defendants dispute that the existence of a "future risk" to all

35

class members from Rocky Flats or "class-wide exposure to plutonium and resulting class-wide increase in human health risk" is amenable to proof on a class-wide basis.  But even if plaintiffs could establish those facts, they still could not prove on a class-wide basis that such risk actually interfered with any class member's use and enjoyment of property.

In its May 17, 2005 Order, the Court focused on what it considered objective aspects of plaintiffs' two theories of interference (*i.e.*, conditions that would be *capable of causing* an interference) without ever analyzing the critical question of how plaintiffs would prove that those supposedly objective conditions—"class-wide exposure" and risk, or future risk of harm from Rocky Flats—***actually caused an interference*** with all class members' use and enjoyment of their property.  As the evidence above demonstrates, class-wide proof of such interference is impossible.

Plaintiffs point to the class trial as proof that common issues did not predominate and that class certification is appropriate.  But the class trial violated the Rules Enabling Act because it never required plaintiffs to prove injury—interference with each class members' use and enjoyment of his or her property—as to every class member.  Instead, plaintiffs were allowed to "prove" interference in an abstract, class-wide sense, divorced from any particular plaintiff's actual use and enjoyment of property.  In fact, the jury was instructed that they could not even consider individual evidence:

> In deciding whether either or both forms of possible class-wide interference exists, you should not consider whether individual Plaintiffs or Class members are or might be fearful, anxious or otherwise disturbed by any real or perceived risk relating to Rocky Flats and the Defendants' activities there or the conditions they left behind. ***Individual reactions to these matters are not relevant to the question of whether a class-wide interference exists.***

Jury Instruction 3.7 (Dkt. 2121).   Similarly, although the Court initially held that plaintiffs' exposure-and-risk-based theory of interference would require proof that *all* class members were exposed to plutonium and incurred some increased risk, Ex. E, 05/17/2005 Order at 5 (Dkt. 1338), the Court later eliminated even that modest requirement, instructing the jury that for non-resident class members (who incurred no exposure or risk), the jury must consider their claims *as if they had* incurred exposure and risk:

> If you find that occupancy of their properties *would* have resulted in exposure to plutonium in some way, causing some increment of increased health risk, as a result of one or both Defendants' activities, then you should find that these Class members too suffered an interference with the use and enjoyment of their properties

*Id*.[22]   The Court lowered the threshold for interference based on "future risk" by eliminating the need to prove that the future risk arose from plutonium *contamination* on- or off-site as opposed to simply plutonium or other hazardous substances "present on or

---

[22]   Presumptions contrary to the evidence may not be used to eliminate individual issues of proof and facilitate class certification.  *See, e.g.*, *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014); *cf. Wal-Mart*, 131 S. Ct. at 2551 ("[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable."); *Comcast*, 133 S. Ct. at 1432 (party seeking certification must "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)").

in the vicinity of Rocky Flats," Jury Instruction 3.7 (Dkt. 2121), which would encompass even the risk that terrorists or an earthquake might trigger a release of properly stored materials.

The class trial impermissibly expanded the rights of absent class members and created thousands of claims that could not and would not exist individually.  The jury can decide facts, but it cannot create an injury. It is for each landowner, not the jury or this Court, to determine whether risk from Rocky Flats interfered in any way with the use and enjoyment of his or her (or its) property.  That means it is the landowner, not the jury or this Court, who must decide for himself or herself: whether there is credible evidence their land is contaminated; whether there is credible evidence of future risk of harm from Rocky Flats; and whether a miniscule risk of harm (if any) is worth giving a second thought.   As the evidence above demonstrates, it would be impossible for a jury determine on a class-wide basis with class-wide proof how 15,000 different landowners over a 30-square-mile area reacted (if at all) to alleged risk from Rocky Flats. [23]

---

[23]  *See Satsky v. Paramount Commc'ns, Inc.*, No. CIV.A. 90-S-1561, 1996 WL 1062376, at *14 (D. Colo. Mar. 13, 1996) (certification of nuisance claims from river and soil contamination were improper in light of numerous  individualized "factors that would contribute to establishing the fact of injury and the causal link between that injury and contamination"); *Church v. General Electric Co.*, 138 F. Supp. 2d 169, 182 (D. Mass. 2001) (the extent of contamination and individual characteristics of properties "pertain not just to damages . . . but to the threshold question of whether the contamination constitutes a nuisance"); *Boughton v. Cotter Corp.*, 65 F.3d 823, 826 (10th Cir. 1995) (affirming denial of certification based on district court's conclusion that individual questions predominated, "including whether purchasers were aware contamination existed, the extent and nature of injuries, the degree and length of exposure, the prevalence of contamination and proof of ownership to water rights").

Allowing a class trial to proceed here was an improper and unprecedented expansion of Colorado law that transformed a highly individualized, subjective element of injury into an abstract, composite one, in violation of the Rules Enabling Act. *See* 28 U.S.C. § 2072 (federal rules may not "abridge, enlarge or modify any substantive right"); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999); *Amchem*, 521 U.S. at 613; *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 344-45 (4th Cir. 1998); *Halliburton*, 134 S. Ct. at 2415. The correct standard of proof would require individual evidence of actual interference with each plaintiff's use and enjoyment of his or her property, [24] and thus individual issues would predominate over common ones in any trial, making class certification improper.[25] The class should not be certified for this reason alone.

---

[24] Even if only one of the two interference theories required individual proof, the jury returned a general nuisance verdict, without specifying the theory on which that verdict was based, *see* Jury Verdict Form at 23 (Dkt. 2117), and where it is not absolutely clear that a general verdict was based on a valid theory of liability that could properly be proved on a class-wide basis using common proof, the verdict cannot stand. *See, e.g.*, *Allen v. Wal-Mart Stores, Inc.*, 241 F.3d 1293, 1298 (10th Cir. 2001); *Farrell v. Klein Tools, Inc.*, 866 F.2d 1294, 1301 (10th Cir. 1989).

[25] *See, e.g.*, *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2009) ("If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable.") (internal quotation omitted); *Comcast Corp.*, 133 S. Ct. at 1433 (class certification inappropriate where plaintiff failed to present a damages model capable of calculating class-wide damages, because "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class"); *Boughton*, 65 F.3d at 826-27; Fed. R. Civ. P. 23 Advisory Committee Note (1966) (certification inappropriate where individual questions of damages and liability exist).

### B.  Plaintiffs Cannot Prove Interference Was "Substantial" And "Unreasonable" On A Class-Wide Basis.

Plaintiffs also cannot prove the "substantial and unreasonable" element of their claims on a class-wide basis, because that element requires the jury to "weigh the gravity of the harm and the utility of the conduct causing the harm," *Cook IX*, 273 F. Supp. 2d at 1202; *see also Van Wyk,* 27 P.3d at 391; *Woodward v. Bd. of Dirs. of Tamarron Ass'n of Condo. Owners, Inc.*, 155 P.3d 621, 628 (Colo. App. 2007), and the magnitude of the harm is incapable of class-wide proof for many of the same reasons actual interference is incapable of class-wide proof.

The "substantial and unreasonable" element of nuisance is an objective backstop against frivolous nuisance claims.  *See* Prosser and Keaton on Torts § 88 (5th ed. 1984). Thus, if a jury finds an interference, it must then decide if it is substantial and unreasonable.  In doing so, it must assess the "gravity of the harm," which depends on several factors and circumstances, including: "the degree of the harm and its duration," "the kind of harm suffered," "the social value of the use" to which the plaintiff's land is put, the extent to which "the particular use or enjoyment" interfered with "is suitable to [the] area," and the burden on the landowner in avoiding the harm, if possible.  Jury Instruction 3.11 (Dkt. 2121).[26]

---

[26]  *See also* Restatement (Second) of Torts § 827 (1979), cmt. b. ("It should be especially noted that the gravity of harm depends not only upon the amount of harm suffered but also upon the nature of the harm and the circumstances under which it occurs.  The gravity of the harm

The "gravity of the harm," though objective, is based on individual property characteristics and harm related to each property, and therefore cannot be determined on a group-wide basis, and certainly not for owners of 15,000-plus parcels whose alleged exposure and risk occurred at different times, in different degrees, and at different locations, and whose property and uses of it vary widely.  For example, the Court instructed the jury that the "social value of a particular type of use depends on the extent to which the use or uses advances or protects the general public good."  *Id.*  A horse ranch, a church, a gas station, a bar, a massage parlor, and vacant land surely contribute differently to the public good, and the suitability of each to the area also differs.  As for the extent and character of the harm suffered, the record shows the actual harm suffered ranged from zero (*e.g.*, Mr. Ozaki and many others) to more significant alleged harm (*e.g.*, Ms. Bartlett and Ms. Robb).[27]

---

from noises that disturb a person's sleep, for example, is ordinarily much greater when the noises occur at night than it is when the noises occur in the daytime."); *id.* cmt. g (gravity of harm depends "also upon the suitability of the particular use or enjoyment to the character of the locality").

[27] *See* Part IV.A.ii, *supra*.  For example, Ms. Bartlett testified that learning she had been exposed even to a small amount of plutonium from Rocky Flats radically affected her daily life, and the gravity of the harm was exacerbated by her proximity to the facility, which allowed her to see and hear activity on the site.  Ex. J, Trial Tr. (10/14/2005) at 926-27 (Dkt. 1792).  In contrast, Mr. Ozaki testified that he "never had any concern that his home was contaminated by plutonium" and even when he heard of the FBI raid, "[i]t didn't cross [his] mind" to be worried about risk from Rocky Flats.  Ex. G, Trial Tr. (10/20/2005) at 1832 (Dkt. 1800).  Still other putative class members incurred no exposure or risk at all, which—under the Court's non-resident instruction—is presumed to create some sort of hypothetical injury, the gravity of which surely must differ from that of Ms. Bartlett's harm.

When it comes to nuisance, the evidence is not "one size fits all." Individual circumstances matter, and an individual plaintiff's allegations as to the extent and character of their harm, the claimed interference, and the circumstances surrounding their use and enjoyment of their property raise credibility issues that a jury must decide on an individual basis.

The Court did not address this issue when it certified a class in 1993, but in the lead-up to trial it tried belatedly, but misguidedly, to address this problem by ruling that the jury "may only consider the magnitude of the common, class-wide health risk in determining whether this and any interference(s) they find are substantial and unreasonable." Ex. E, 5/17/2005 Order at 5 (Dkt. 1338); Jury Instruction 3.9 (Dkt. 2121).

The problem with this approach is it forces the jury to weigh the utility of defendants' conduct against the gravity of a fictive, composite harm. It also requires the jury to somehow arrive at a composite, class-wide determination of individual "gravity of harm" factors. Those with no or *de minimus* exposure, risk, and interference—like Mr. Ozaki—or those whose property use may have little or negative social utility—like an overgrown vacant lot, or an undesirable business— cannot, thorough the class device, expand their claims by piggy-backing on other plaintiffs' exposure, risk, interference, and social utility. *See* 28 U.S.C. § 2072 ("Such rules shall not abridge, enlarge or modify any substantive right."); *Ortiz*, 527 U.S. at 845; *Amchem*, 521 U.S. at 613. The requirement of individual proof on this element, by itself, precludes class certification.

**C.      Plaintiffs Cannot Prove Damages On A Class-Wide Basis.**

Plaintiffs' damages model is another distinct, insuperable barrier to certification. It is completely divorced from plaintiffs' theory of the case and provides no basis for determining damages on a class-wide basis.   Their model measures diminished value attributable to proximity to Rocky Flats, not the specific nuisances plaintiffs allege. Exacerbating the problem, the Court improperly allowed plaintiffs to prove damages based on composite averages and excluded the presentation or consideration of individual evidence of class members' actual gains or losses.   The law is clear that this is impermissible under Rule 23.[28]

**(i)      Plaintiffs' Damages Model Is Based On The Location Of Rocky Flats, Not Their Class-Wide Nuisance Theory.**

"[A] model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to that theory.   If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Comcast*, 133 S. Ct. at 1433.   "[F]or purposes of Rule 23, courts must conduct a rigorous analysis to determine whether that is so." *Id.* (internal quotation marks omitted).  Plaintiffs' flawed model does not even purport to measure damages caused by plaintiffs' specific class-

---

[28]   The flaws in plaintiffs' damages proof also infect their proof of liability because the Court instructed the jury to consider diminished value as part of its "substantial and unreasonable" analysis.  Jury Instruction 3.9 (Dkt. 2121).

wide nuisance theories, and so the Supreme Court's ruling in *Comcast* precludes class certification.

As a threshold matter, "Colorado law does not permit a finding of substantial interference with the use and enjoyment of property based solely on the existence of a neighboring facility that causes property values to diminish."  *Cook IX*, 273 F. Supp. 2d at 1208; *see also Staley v. Sagel*, 841 P.2d 379, 382 (Colo. App. 1992) (rejecting plaintiffs' argument "that they are entitled to damages because the very existence of the neighboring hog facility decreases the value of their property").  In pretrial briefing, "[d]efendants . . . complained repeatedly" that plaintiffs' model "does not prove that Defendants' alleged trespass and/or nuisance, rather than mere proximity to Rocky Flats, caused the claimed diminution in value."  *Cook IX*, 273 F. Supp. 2d at 1210.  The Court twice rejected this argument, reasoning that

> [t]here is a close relationship between proximity to Rocky Flats and the alleged trespass and nuisance, because proximity to the plant determines whether properties are subject to the off-site contamination and alleged risks that underlie these claims.  It is for this reason that I previously held that "[e]vidence that class properties have a lower value than comparable properties not in proximity to Rocky Flats, coupled with evidence of Defendants' alleged contamination of these properties and mismanagement of Rocky Flats, is sufficient to allow the jury to infer that diminution in the value of class properties is the result of Defendants' activities and ***not the result <u>solely</u> of the proximity of these properties to the Plant***."

*Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1112 (D. Colo. 2006) (*Cook XVII* ) (emphasis added) (quoting *Cook IX*'s rejection of the same argument).  The problem with

44

that ruling is that it applied the wrong standard, asking not, as *Comcast* requires, whether the model "measures **only** those damages attributable to [their nuisance] theory," but whether the model measures at least some damages attributable to plaintiffs' claims. *See id.; Comcast*, 131 S. Ct. at 1433 (emphasis added); *see also Westric Battery Co. v. Standard Elec. Co.*, 482 F.2d 1307, 1318 (10th Cir. 1973) (it is "only the damage flowing legally from the defendant's misdeeds which count").[29]

Plaintiffs' model cannot withstand a rigorous analysis under the correct *Comcast* standard because the model does not even purport to measure damages based on plaintiffs' nuisance theories. This Court has repeatedly acknowledged this problem, noting that the model estimates damages based on the effect of proximity to Rocky Flats, not plaintiffs' nuisance claim.[30] This is not a close question. Plaintiffs' own damages experts confirmed that their analysis measured the effect of proximity, not plaintiffs'

---

[29]   The Reference Manual on Scientific Evidence states "If a damages analysis includes the *effects not caused by the defendant*, it is a *defective analysis*. It has not followed the standard format for damages, which, by its nature, isolates the effects of the harmful act on the plaintiff." Robert E. Hall & Victoria A. Lazear, Reference Manual on Scientific Evidence 307-08 (2d ed. 2000) (emphasis added). *See also, e.g., Isaksen v. Vt. Castings, Inc.*, 825 F.2d 1158, 1165 (7th Cir. 1987) (Posner, J.) ("We do not allow antitrust plaintiffs or any other plaintiffs to obtain damage awards without proving what compensable damages were actually suffered as result of the defendant's unlawful conduct.").

[30]   *See Cook IX*, 273 F. Supp. 2d at 1210 (plaintiffs' damages model is "[e]vidence that class properties have a lower value than comparable properties not in proximity to Rocky Flats); *Cook XVII*, 580 F. Supp. 2d at 1111 (plaintiffs' model "measured the effect of proximity to Rocky Flats"); *id.* at 1112 (plaintiffs' damages experts offered testimony "regarding reduced property values based on proximity to Rocky Flats").

45

specific class-wide nuisance theories.  Dr. Radke, who ran plaintiffs' multiple-regression damages model, aptly entitled his report "Measuring The Effects Of Proximity To The Rocky Flats Nuclear Weapons Plant On Property Values," and explicitly stated the object of his study was to determine: "1) Can a causative link be established between Rocky Flats and depressed real estate values in the surrounding area?" and "2) Can we measure this impact over time to see whether there is a causative link between the FBI raid in June of 1989 and depressed real estate values in the surrounding area."  Radke 1996 Rpt. at 1, 3 (Dkt. 1399-40).  At trial, Dr. Radke further confirmed his model's focus on proximity, not nuisance:

- Q. "[I]n all cases the actual conduct of the contractors at Rocky Flats is not something for which you measured the impact on the dependent variable, correct?  A. Correct.  I was looking for a pattern.  Q. You were looking -- well, but -- you may have been looking for a lot of things, but what you measured was the relationship between proximity on the one hand and value of the property on the other, right?  A. Correct."  Ex. K, Trial Tr. (10/26/2005) at 2753 (Dkt. 1809).

- "Q. And you didn't look -- it wasn't part of your exercise to see why proximity was an issue, at least vis-a-vis what was happening at the plant?  A. Right, other than the F.B.I. raid, and that could have impacted consumers' willingness to buy and the demand, but what was going on at the plant?  No."  *Id.* at 2754.

- Q. "[Y]ou haven't sought to measure the impact of Dow's conduct on the value of the class property, correct?  A. Correct."  *Id.* at 2752; *id.* (same for Rockwell).

Mr. Hunsperger, who also testified about damages at trial, admitted his key judgment of the amount of diminution was based on Dr. Radke's proximity model.  *See, e.g.*, Ex. Z, Trial Tr. (12/7/2005) at 6845 (Dkt. 1873).

Dr. Radke and other of plaintiffs' experts offered many similar admissions at trial and in deposition that, taken as a whole, leave no doubt that his model was designed to measure the effect of proximity to and stigma from Rocky Flats, not the nuisance claims plaintiffs' assert.[31]  For that reason, the most the Court could say in defense of the model was that it generated a damages estimate that was *at least partially* attributable to defendants' activities, and was "not the result *solely* of the proximity of these properties to the Plant."  *Cook XVII*, 580 F. Supp. 2d at 1112 (emphasis added).  The Supreme Court made clear in *Comcast* that plaintiffs' model does not pass muster and does not provide a legally permissible basis for calculating class damages.

Adding to the problem, plaintiffs' other expert analyses affirmatively show that non-tortious factors can cause property value loss.  Plaintiffs' risk expert, Dr. Slovic,

---

[31]  *See, e.g.*, Ex. K, Trial Tr. (10/26/2005) at 2733 (Radke) (Dkt. 1809) ("I'm trying to determine the value of the real estate and relatively compare the area of Rocky Flats to the rest of the region to see if it was undervalued."); *id.* at 2751 ("This variable, the independent variable that you used to ascertain the impact of Rocky Flats, is pure and simple proximity in the sense of either distance between the property and Rocky Flats or in and out or outside of the contour which is similar to that, correct?  A. Well, you used the word 'proximity.'  In the first case it's distance.  Proximity is a very loose term.  Q. Well, but it is the term, in fact, that you consistently use, for example, in virtually every one of your slides --  A. Right."); Ex. N, Radke 3/31/97 Dep. at 206 ("All I'm showing is that proximity to Rocky Flats diminishes property values."); Ex. T, Radke 4/1/97 Dep. at 442 ("I only do proximity to Rocky Flats."); Ex. O, Tr. Hunsperger Videotape, 11/25/96, at 1 ("I've been asked to study this neighborhood and others nearby to determine whether or not their *nearness to the Rocky Flats Nuclear Weapons Plant has had any impact* on property values.") (emphasis added); *id.* at 6 ("The real estate market research indicates that the *nearness of these communities to Rocky Flats substantially impacts and reduces the value of property*.") (emphasis added); Hunsperger 1996 Rpt. at 60 (Dkt. 1399-30) (survey conducted by Drs. Flynn and Slovic concludes only that "[p]roximity to Rocky Flats makes housing less desirable").

testified that nuclear energy in and of itself is the number one object of stigma and fear among members of the general public.  Ex. M, Trial Tr. (11/7/2005) at 4317 (Dkt. 1849).  Similarly, plaintiffs' real estate expert, Mr. Hunsperger, identified "analogous case studies" showing that mere proximity to an industrial site—without a contribution from any contamination or other tortious conduct—lowers the value of nearby properties even in the absence of any wrongful conduct or nuisance.[32]  And although plaintiffs' experts could have tested for the effect of this non-actionable background rate of fear-and-loathing on properties near Rocky Flats, they did not.  *Id.* at 4318.

The Supreme Court's ruling in *Comcast* and the other authority cited above preclude certification of the class based on plaintiffs' overbroad damages model.  In *Comcast*, the putative class alleged four theories of antitrust impact or injury, only one of which was capable of class-wide proof.  131 S. Ct. at 1432.  There, as here, plaintiffs' model failed the "first step in a damages study" because it did not "translat[e] . . . the *legal theory of the harmful* event into an analysis of the economic impact *of that event*."  *Id.* at 1435 (internal citations omitted).  Accordingly, the *Comcast* court held that,

> under the proper standard for evaluating certification, respondents' model falls far short of establishing that damages are capable of measurement on a classwide basis.  Without presenting another methodology, respondents

---

[32]  *See, e.g.*, Ex. V, Hunsperger Dep. Ex. 10F, Gerald E. Smolen, et al., Economic Effects of Hazardous Waste Landfills on Surrounding Real Estate Values in Toledo, Ohio at 22 ("proposed Riga landfill" had "pronounced" effect on area real estate values); Ex. W, Hunsperger Dep. Ex. 10I, Santa Fe Property Value Opinion Research Regarding the WIPP Bypass at 42 (area residents believed that proposed nuclear waste transport highway would impact property values).

cannot show Rule 23(b)(3) predominance: Questions of individual damage calculations will inevitably overwhelm questions common to the class.

*Id.* at 1433.

Plaintiffs' model suffers the same flaws as the one in *Comcast*, and thus similarly fails to carry plaintiffs' burden to show damages are provable on a class-wide basis.[33] Plaintiffs cannot prove predominance under Rule 23(b)(3), because proof of individual damages will inevitably overwhelm issues common to the class. *See id.* Moreover, the verdict rendered in the class trial was based on plaintiffs' flawed model and therefore cannot stand. *See id.*

### (ii)    Plaintiffs Cannot Use Averages To Prove Class-Wide Damages.

The damages award that plaintiffs seek to reinstate was based entirely and impermissibly on averages.   Courts have repeatedly held, consistent with the Rules Enabling Act, that individual class members cannot be awarded damages based upon "averages."[34]   Plaintiffs are unable to prove this element of their claim on a class-wide

---

[33]   The Court cannot salvage plaintiffs' model by shifting to defendants, as it did in *Cook XVII*, the burden of negating the overbreadth of plaintiffs' model by presenting counter arguments and evidence at trial.   *Cook XVII*, 580 F. Supp. 2d at 1112.   That approach impermissibly presumes compliance with Rule 23 and shifts to defendants the burden of disproving commonality and predominance.   *Wal-Mart*, 131 S. Ct. at 2551 ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule."); *Comcast*, 131 S. Ct. at 1432 (a plaintiff seeking certification under Rule 23(b)(3) "must also satisfy through evidentiary proof" that common questions predominate); *Wallace B. Roderick*, 725 F.3d at 1218 ("Relaxing and shifting" the burden of proof under Rule 23 "results in an abuse of discretion.").

[34]   *See, e.g.*, *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 304 (5th Cir. 2003) (holding that individual damages issues predominated and prevented class certification and rejecting plaintiffs' attempts to calculate damages according to a "nationwide average cost of labor and a nationwide

49

basis consistent with the Rules Enabling Act, and therefore individual damages issues predominate.

Plaintiffs' damages expert Dr. Radke admitted that he did not assess whether individual members of the proposed class lost money as a result of Rocky Flats.  He testified that he only studied *class properties* during the period from 1988-1995, without regard to when class members bought and sold, and that he never determined whether any *class members* actually lost money as a result of Rocky Flats:

> Q. You've not actually determined whether anybody lost money in this marketplace?  A. Correct, I haven't done that study.
>
> Q. Right.  In order to do that study you would have to go back and find out for the people that owned in '88, '89, '90, etc., you have to find out when they bought, at what price they bought, and when they sold?  A. Correct. Q. Just to be clear, you haven't done that, right?  A. That wasn't possible.

Ex. K, Trial Tr. (10/26/2005) at 2812, 2814-15 (Dkt. 1809).  And plaintiffs conceded at trial that diminished value varied depending on proximity to the plant: "It's greater closer in; it's less on the edge."   Ex. P, Trial Tr. (10/21/2005) at 2100-02 (Dkt. 1803) (mini-

---

average amount of time that the class members would have saved per call"); *Broussard*, 155 F.3d at 342-43 (decertifying class and holding that using "average" damages for lost profits violated state law); *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 319-21 (5th Cir. 1998) (reversing damages award based on extrapolation rather than individual evidence); *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 66 (4th Cir. 1977) ("Generalized or ***class-wide proof of damages*** in a private anti-trust action would, in addition, ***contravene the mandate of the Rules Enabling Act that the Rules of Civil Procedure*** 'shall not abridge, enlarge or modify any substantive right,'") (emphasis added); *Ralston v. Volkswagenwerk, A.G.*, 61 F.R.D. 427, 432-33 (W.D. Mo. 1973) ("[Damages] should not be based on speculation or a system of averaging.  Rather, the compensation due each individual member of the class must necessarily reflect the damages actually suffered by that party.").

summation of Mr. Davidoff) (emphasis added).[35]  Similarly, the jury, in its verdict, did not purport to determine any actual damages suffered by any class member; as instructed, it determined only the "average" diminution in value to properties within the class area.[36]

A related problem with plaintiffs' use of a class-wide average damages model is that it averaged the diminished value of class properties across the period of 1988 to 1995, but many class members (7,684) sold their properties during that period, Ex. S, 8/6/2004 Wise Rpt. at Ex 1, yet their damages were calculated and awarded based on diminished values in years during which they owned no class property.[37]  Ex. K, Trial Tr.

---

[35]  Mr. Hunsperger found that properties nearest Rocky Flats suffered more diminution in property value than those further away.  *See* Ex. Q, Trial Tr. (12/6/2005) at 6568 (Dkt. 1870) ("I selected 10 percent on average, across the subject class area.  The highest diminution being closer to Rocky Flats or lowest — diminishes the further away you go from the plant."). Plaintiffs' other experts, Drs. Flynn and Slovic, likewise found that diminution in property value varied depending upon location in the class area.  *See*  Final Report: Rocky Flats Health & Housing Survey at Figure 4.7 (Dkt. 1399-22) (16.1% of survey respondents would buy a house with no discount within 2-4 miles of Rocky Flats; an additional 15.1% of respondents would buy a home within 4-6 miles of Rocky Flats with no discount).

[36]  *See* Jury Verdict Form at 24 (Dkt. 2117) ("state the average percentage by which Class Properties were diminished or depressed in value, relative to what their value would have been, without the nuisance"); *see also* 2/6/2006 Answer to Jury Question at 1 (Dkt. 2094-1) (instructing the jury to consider the "sum total of all diminution in value experienced by Class members," even though "the percentage diminution in value suffered by *some Class Properties may be less than the average*") (emphasis added).

[37]  Thus defendants should also be allowed to prove that putative class members' damages vary depending on when they sold.  Dr. Radke's calculations show that class properties appreciated much faster during the 1988-1995 damages period than other properties in the Denver metro area: class properties' mean sale value was $106,263.50 in 1988 and $124,629.40 in 1995, an appreciation of $18,366.90; for other Denver area properties, the mean sale value was $110,597.20 in 1988 and $119,196.40 in 1995, an average appreciation of $8,599.20.  *See* Radke 1996 Rpt. at Figure 4.4 (Dkt. 1399-41).  Put differently, according to Dr. Radke's

(10/26/2005) 2812-15 (Radke) (Dkt. 1809); Ex. R, Trial Ex. DX1085.  By calculating damages based only on an average across all years, Dr. Radke masked yearly variations that would have materially affected individual class members' property value, and allowed some class members to recover more than they would be permitted to recover in individual trials focused on their own claims.[38]

As noted above, a damages award based upon average diminution may be expedient, but it cannot be the basis of an award to individual class members.[39]  The Rules Enabling Act prohibits use of the class action device to expand an individual's substantive rights.  *See* 28 U.S.C. § 2072; *see also Amchem*, 521 U.S. at 612-13.  The use of averages in computing class damages is an abuse of the class action device because it

conclusions, the average class member who bought in 1988 and sold in 1995 realized an average gain of 17.2%, while someone who did the same thing elsewhere in the Denver area would have gained only 7.7%.  *Id.*

[38]  *See Parko v. Shell Oil Co.*, 739 F.3d 1083, 1086 (7th Cir. 2014) ("Nor could it be assumed that every class member has experienced the same diminution in the value of his property even if every one has experienced the same level of contamination.  For the greater the variance in property values (about which the district judge made no findings), the less likely it is that contamination would affect the value of all or most properties by the same amount of money or the same percentage of market value.").

[39]  *See also Cimino*, 151 F.3d at 319-21 (reversing damages award based on extrapolation rather than individual evidence); *Broussard*, 155 F.3d at 343-44; *Windham*, 565 F.2d at 66 ("Generalized or class-wide proof of damages in a private anti-trust action would, in addition, contravene the mandate of the Rules Enabling Act that the Rules of Civil Procedure 'shall not abridge, enlarge or modify any substantive right'"); *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 144 (D.N.J. 2002), *aff'd*, 84 F. App'x 257 (3d Cir. 2004) ("Plaintiff must establish that each class member has, in fact, been injured by the alleged conduct."); *see also Sprague v. G.M.C.*, 133 F.3d 388, 398-99 (6th Cir. 1998) (class relief not available where "[a] named plaintiff who proved his own claim would not necessarily have proved anybody else's claim").

impermissibly "enlarge[s]" the "substantive rights" of some class members, while impermissibly abridging defendants' right to contest actual damages. *See* 28 U.S.C. § 2072.

### (iii)   Defendants Are Entitled To Prove Setoff With Individual Evidence.

Before trial, the Court ruled that defendants are entitled to a setoff of damages for plaintiffs who bought their property at a discount because of the defendants' alleged nuisance. Ex. E, 5/17/2005 Order at 17-18 (Dkt. 1338).  Though the Court acknowledged the common-sense point that this setoff might apply to some but not all plaintiffs, the Court improperly forced defendants to prove setoff on a class-wide basis using class-wide proof.[40]  The Court rejected defendants' objection that proof of compensatory damages, including proof of setoff, requires consideration of individual issues, and declared without citation to legal or economic authority that "diminution in value is a function of the market, not individual Class members' reaction to the alleged trespass or nuisance." *Id.* at 19-20.  While class-wide or city-wide market forces certainly influenced the price at which class members bought their properties, just as certainly individual issues

---

[40]   Ex. E, 5/17/2005 Order at 18 (Dkt. 1338) (setoff may apply to "some or all of these Class members"); Jury Instruction 3.25 (Dkt. 2121) (explaining defendants' allegation that "all or some Class members purchased their properties at a diminished price"); Ex. E, 5/17/2005 Order at 18 (Dkt. 1338) (defendants' setoff defense "will be decided in the class trial based on common evidence demonstrating the market discount in effect during [the period before June 7, 1989]."); Jury Instruction 3.25 (Dkt. 2121) ("In order to prevail on this affirmative defense of setoff, [defendants] must prove. . . a diminution in the value of Class Properties . . . before June 7, 1989.").

influenced the price, including: the specific property's characteristics, how it is used, whether and to what extent a given buyer or seller knew of, credited, or was troubled by the notion of any risk from Rocky Flats (past, present or future), whether it interfered with the seller's use and enjoyment of his property, the buyer's knowledge and/or perception of the alleged risk, whether she anticipated it would interfere with her planned use and enjoyment of the property.[41]

Defendants should have been permitted to take individual discovery related to setoff, to present evidence at trial showing that some class members bought at a discount because of perceived or alleged risk from Rocky Flats, and to have a jury decide the issue on an individual, not class-wide basis.[42]  The Court's ruling to the contrary and the resulting class trial thus abridged defendants' substantive rights in violation of the Rules Enabling Act.  *See* 28 U.S.C. § 2072(b); *Amchem*, 521 U.S. at 612-13.

## V.  THE COURT CANNOT CERTIFY THE PROPOSED PROSPECTIVE DAMAGES SUB-CLASS.

In its May 17, 2005 Order, the Court ruled that "only damages for prospective invasions pursuant to Restatement (Second) of Torts § 930(3)(b) will be determined in the class trial."  Ex. E, 5/17/2005 Order at 15 (Dkt. 1338).  A plaintiff may elect to pursue prospective damages under § 930(3)(b) when "it appears that the invasions will continue

---

[41]  *See* note 12, *supra* (citing authority recognizing all real property is unique).

[42]  *See* Ex. X, 9/12/1994 Mem. Op. and Order at 8-10 (Dkt. 398) (limiting discovery of absent class members to the "largest commercial landowners in the area").

indefinitely," (hereinafter, the "Election date"), but a plaintiff may recover "compensation" only for prospective damages "measured at the time when the injurious situation became complete and comparatively enduring," (hereinafter, the "Compensation" date).  *Id.* (citing Restatement (Second) of Torts §930(3)(b)).  The Court recognized that some members of the property class are not entitled to prospective damages because they did not own properties as of the Election date, *id.,* and so at plaintiffs' suggestion and over defendants' objection, [43] the Court divided the property class into two sub-classes: (1) a prospective damages sub-class including owners of class properties on the Election date (which the jury later found was January 30, 1990), and (2) a past-or-present-damages-only class comprised of everyone else.  *Id.* at 15.[44]

Plaintiffs now move the Court to certify a class that includes, as before, a prospective damages sub-class defined by ownership of a class property on the Election date, January 30, 1990.  Mot. for J., Ex. 9, at 2 (Dkt. 2367) (quoting Final J. at ¶ 2 (Dkt. 2264)).  But the proposed sub-class does not solve the prospective damages problem that

---

[43]   *See* Pls.' Proposed Plan for Determination of Compensatory Damages (Dkt. 1241); Defs.' Resp. to Pls.' Proposed Plan for Determination of Compensatory Damages (Dkt. 1247); Reply in Support of Pls.' Proposed Plan for Determination of Compensatory Damages (Dkt. 1258).

[44]   The Court held that the prospective damages sub-class would be defined by property ownership on the later of January 30, 1990, (the date the action was filed) or "the date on which the jury, per Restatement § 930(1), finds it appeared the trespass and/or nuisance asserted by Plaintiffs would continue indefinitely," Ex. E, 5/17/2005 Order at 15 (Dkt. 1338), but the jury determined that condition was satisfied on or before January 30, 1990, Verdict Form ¶ H.1 (Dkt. 2117).

led the Court to subdivide the class in the first place, because it is defined only by reference to the Election date and not the Compensation date.  A class member who owned a class property on the Election date would not be entitled to prospective damages unless he also owned the property on the Compensation date.  Restatement (Second) of Torts §930(3)(b).  Defining the prospective damages sub-class with regard only to the Election date but not the Compensation date would impermissibly expand the rights of those sub-class members who sold their homes before the Compensation date.  *See* 28 U.S.C. § 2072; *Amchem*, 521 U.S. at 612-13.

The Rules Enabling Act prevents this Court from certifying an improper prospective damages sub-class, period, and it is doubly clear that the Act bars the Court from certifying the sub-class in order to receive the benefit of a class-wide jury verdict that itself impermissibly enlarged prospective damages sub-class members' rights to damages in violation of the Rules Enabling Act and Restatement § 930(3)(b).  The problem with the verdict is this: after the class trial, the jury found that the Election date was January 30, 1990, but found that the Compensation date was anywhere between January 1, 1988, and December 31, 1995.  Verdict Form ¶ F.11 (Dkt. 2117).  The date on which prospective damages are measured may have been as late as December 31, 1995, by which date roughly half the putative class properties (7,684) were sold.  Ex. S, 8/6/2004 Wise Rpt. at Ex. 1 (showing properties sold each year from June 7, 1989

forward).[45]   The Court cannot certify a sub-class of putative class members to accept a prospective damages verdict if some of them—perhaps thousands of them—did not own properties on the date when those prospective damages were measured and became compensable.  *See* 28 U.S.C. § 2072; *Amchem*, 521 U.S. at 612-13.

Similarly, the Court may not certify a sub-class to accept the former prospective damages verdict because the award was calculated based on the value of ***all*** class properties, rather than only those properties in the sub-class.   *See* Verdict Form ¶ F.11(Dkt. 2117) (calculating damages based on the diminished value of "Class Properties").   Again, certifying a sub-class to accept a verdict based on damage to properties that the sub-class ***did not own*** expands the sub-class members' rights in violation of the Rules Enabling Act.  *See* 28 U.S.C. § 2072; *Amchem*, 521 U.S. at 612-13.

## CONCLUSION

For all of the reasons discussed above, plaintiffs' nuisance claim does not meet the requirements of Rule 23 and was not properly tried on a class-wide basis.  Plaintiffs have

---

[45]   Even if we knew the specific Compensation date and could then determine which class members owned property at that point, it would not be appropriate to calculate damages based on an average diminution over several years.  Restatement (Second) Torts §930(3)(b) (prospective damages are "measured at the time when the injurious situation became complete and comparatively enduring").  According to plaintiffs' expert Dr. Radke, individuals who sold in 1992 accepted an average 9.18% discount because of Rocky Flats, whereas individuals who sold in 1995 experienced an average 5.45% discount because of Rocky Flats.  If the Compensation date was in 1995, then the damages subclass would not be entitled to calculate their damages with reference to diminution that occurred in 1992, and allowing such an expansion of rights would violate the Rules Enabling Act.  *See* 28 U.S.C. § 2072; *Amchem*, 521 U.S. at 612-13.

not even attempted to meet their burden of proof under the Rule, and they improperly (for reasons that are now obvious) urge this Court to defy the *Cook Appeal I* mandate by recertifying the class without analyzing whether plaintiffs can prove the elements of their claim on a class-wide basis with class-wide proof.  The record demonstrates that class members' use and enjoyment of property, as well as their knowledge and perception of any supposed risk from Rocky Flats, vary widely and are utterly unsuited for class-wide proof.  Even the objective "substantial and unreasonable" element of nuisance requires the jury to consider individual property characteristics like the social utility of its use and its suitability to the surrounding area.  And plaintiffs also failed to offer any valid, class-wide means of proving damages: their model measures the effect of proximity to Rocky Flats, not their alleged nuisance; and it improperly lumps all class members into a single average damage amount, regardless of when class members sold or whether any particular class member actually lost value.  And finally, the damages sub-class cannot be certified because it includes members who did not own their properties when prospective damages became compensable, and the jury award included the diminished value of *all* class properties, not the smaller subset of properties the sub-class owned.

As a consequence of these errors, the class trial that led to the jury award violated Rule 23 and the Rules Enabling Act.  Just as the Court cannot certify the proposed class, it cannot reinstate a verdict rendered in a class trial where plaintiffs were never properly required to prove individual injury or damages.

58

Date:  September 10, 2015

*/s/ Kevin T. Van Wart*
Kevin T. Van Wart, P.C.
Bradley H. Weidenhammer
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
Phone: (312) 862-2000
Facsimile: (312) 862-2200
Email:  kvanwart@kirkland.com

Joseph Bronesky
SHERMAN & HOWARD LLC
633 Seventeenth Street, Suite 3000
Denver, CO  80202
Phone: (303) 297-2900

Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on this 10th day of September, 2015, he caused the foregoing submission to be served via the Court's ECF system on all participating counsel.

/s/ *Kevin T. Van Wart*
Kevin T. Van Wart, P.C.