**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, *et al.*,

        Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

        Defendants.

---

**APPENDIX A: PROCEDURAL HISTORY RE CLASS CERTIFICATION**

**TO PART ONE OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR ENTRY OF JUDGMENT: CLASS CERTIFICATION**

---

# TABLE OF CONTENTS

I. THE ROCKY FLATS FACILITY & PRIOR CONTROVERSIES .................. 2

II. PLAINTIFFS FILE PUTATIVE CLASS ACTION SUIT ................................ 3

III. THE COURT CERTIFIES A CLASS .................................................................... 3

IV. ADDITIONAL CLASS-RELATED ORDERS ........................................................ 5
    A. *Cook VIII* Denies Motion to Decertify Property Class. ................................ 5
    B. Certification of Class Order for Interlocutory Appeal. ................................ 6
    C. *Cook IX* Determines the Scope of Property Class Trial. ............................... 6
    D. April 14, 2004 Order re: Class Trial. ........................................................... 7
    E. May 17, 2005 Order on Scheduling and Jury Instructions............................ 8
    F. December 7, 2006 Memorandum Opinion Re: *Daubert* Motions. ............. 11

V. TRIAL ...................................................................................................................... 11

VI. *COOK APPEAL I* ................................................................................................. 14

VII. REMAND AND *COOK APPEAL II* ....................................................................... 17

## I.     THE ROCKY FLATS FACILITY & PRIOR CONTROVERSIES

The Rocky Flats facility has long been controversial. In the late 1960s and early 1970s, a series of studies sponsored by federal and local authorities and by private groups found plutonium above background levels on certain properties near the facility. *See* Ex. Y, Trial Tr. (10/27/2005) at 3080-85 (Budnitz) (Dkt. 1811). These studies were widely publicized, which led nearby property owners to sue the operators for nuisance, alleging their properties near the facility "had been substantially contaminated from plutonium," were "unfit for intended residential or commercial development," and were therefore diminished in value. *See, e.g.*, *Good Fund, Ltd.-1972 v. Church*, 540 F. Supp. 519 (D. Colo. 1982), *rev'd sub nom. McKay v. United States*, 703 F.2d 464 (10th Cir. 1983). Many of the properties at issue in this litigation were developed after the studies noted above and after the *Church* litigation. *See, e.g.*, Ex. B, Trial Ex. DX2292.

The Rocky Flats facility closed in 1992, was extensively remediated, and is now a wildlife refuge. The site and surrounding areas have been extensively studied and deemed safe. For example, the federal Agency for Toxic Substances and Disease Registry (ATSDR) carefully studied the former site and the surrounding areas and issued a report in 2005 finding that "the levels of off-site surface soil contamination [around Rocky Flats] are no apparent public health hazard for past, current and future exposures." Ex. C, Trial Ex. DX454 at 76; *see also id.* at 35-37. Plaintiffs' own exposure and risk expert testified at trial that as of 1989—even based on various unfounded, dose-maximizing assumptions that defendants dispute—people living near the facility incurred

"very, very small exposures," and "the risks associated with [that exposure] are very low. They're not zero on the no threshold curve, but they're very low."  Ex. D, Trial Tr. (11/2/2005) at 3661, 3678 (Goble) (Dkt. 1817).

## II. PLAINTIFFS FILE PUTATIVE CLASS ACTION SUIT

In response to a series of "whistleblower" complaints about on-site contamination, agents from the Federal Bureau of Investigation, the Department of Justice, and the Environmental Protection Agency raided the Rocky Flats facility on June 6, 1989.  *See* Jury Instruction 3.22 (Dkt. 2121); Ex. A-1, Trial Tr. (1/20/06) at 10649 (Dkt. 2037); Ex. A-2, Trial Ex. P706; *see also* Ex. A-3, Trial Tr. (12/14/05) at 7925-26 (Dkt. 1893).  Eight named plaintiffs filed this suit against Dow and Rockwell on January 30, 1990, alleging that plutonium contamination from Rocky Flats lowered the value of all properties within a 30-square-mile area east of the facility.  *See* Second Am. Compl. (Dkt. 52).  Plaintiffs sought certification of a class of property owners within that area who owned on the day after the FBI raid, *i.e.*, June 7, 1989.  *Id.*

## III. THE COURT CERTIFIES A CLASS

In October 1993, this Court granted plaintiffs' motion for class certification, and certified a class consisting of "[a]ll persons and entities owning an interest (including mortgagee and other security interests) in real property situated within the Property Class Area, exclusive of governmental entities, defendants, and defendants' affiliates, parents, and subsidiaries," as of June 7, 1989.  *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 382, 388-89 (D. Colo. 1993) (*Cook IV*).  Although membership in the class was defined as of

3

June 7, 1989, the Property Class Area was defined by a plutonium contamination contour map provided by plaintiffs based on plutonium detections in 1970.  *See id.*; Dow Resp. to Mot. for Class Cert. at 78 (Dkt. 213).  The putative Property Class Area consisted of approximately 15,370 parcels of property.  *See Cook v. Rockwell Int'l Corp.*, 181 F.R.D. 473, 476 n.3 (D. Colo. 1998) (*Cook VIII*).  Among the more than 15,000 parcels were commercial properties, agricultural properties, single-family homes, apartments, condominiums, town-houses, and vacant lots.  *See* Radke 1996 Rpt. (Dkt. 1399-40 & 1399-41).  Defendants opposed class certification on a number of grounds, including lack of commonality, typicality, and predominance, arguing:

> There is no single issue that would have application to all members of the putative class or which could be litigated and resolved on the basis of common proof, thereby obviating individual trials and inquiries.  On virtually every element of each plaintiff's claim, the proof will be individual, case-specific. . . . [T]he evidence with respect to exposure, risk, property contamination, causation and liability will vary with each claimant. . . . The claim of a person who moved into the vicinity of Rocky Flats in 1958 is not typical of the claim of a person who moved into the area in 1989.

Dow's Resp. to Mot. for Class Cert. at 2-3 (Dkt. 213).

In certifying the property class, the Court acknowledged that certain issues would not be amenable to class-wide proof: "Individual members of the classes still will be required to submit evidence concerning their particularized damage claims in the trial on the merits of the action."  *Cook IV*, 151 F.R.D. at 384.  The Court further acknowledged that "the classes may initially include persons who do not have claims or who do not wish

4

to assert claims against Defendants," but held that was "not important at this stage of the litigation."  *Id.*

The Court relied, in part, on its reading of Supreme Court precedent:

> The objections of Dow and Rockwell are addressed to the merits of plaintiffs' claims.  In essence, defendants argue that the classes should not be certified because the definitions are so broad as to include persons who cannot sustain the burdens of claim for relief sought by the classes as a whole.  However, to evaluate issues such as the appropriateness of plutonium . . . exposure contours, [and] the absence of durational limit on class membership . . . would necessitate a preliminary hearing on the merits as part of the class certification determination.  Such preliminary hearing is not authorized by Rule 23 and was expressly repudiated by the Supreme Court in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78, 94 S. Ct. 2140, 2152-53, 40 L. Ed. 2d 732 (1974).

*Id.* at 383.  (This interpretation of the *Eisen* case was expressly disavowed by the Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011): "Frequently that 'rigorous analysis' [required for class certification] will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped."  131. S. Ct. at 2551.  The Supreme Court explained that a statement in *Eisen* "is sometimes mistakenly cited to the contrary," yet to the extent the quote even says what it has been taken to say, "it is the purest dictum and is contradicted by our other cases."  *Id.* at 2552 n.6.)

## IV.     ADDITIONAL CLASS-RELATED ORDERS

### A.     *Cook VIII* Denies Motion to Decertify Property Class.

In December 1996, defendants moved to decertify the Property Class.  *See* Defs.' Br. in Supp. of Their Combined Mots. for Summ. J. and Decert. of the Classes at 258-65 (Dkt. 884); Defs.' Reply Br. at Part III, 30-34 (Dkt. 976); *see also Cook VIII*, 181 F.R.D.

5

at 477. On July 29, 1998, this Court denied defendants' motion to decertify. *Cook VIII*, 181 F.R.D. at 482.

### B. Certification of Class Order for Interlocutory Appeal.

Defendants asked this Court to certify its denial of decertification for interlocutory appeal, and the Court granted the request. Defs.' Mot. for Cert. of Interlocutory Appeal (Dkt. 1042); 8/27/1998 Order (Dkt. 1046). The Tenth Circuit, however, denied defendants' petition, finding that an interlocutory appeal was not warranted under 28 U.S.C. § 1292(b) (avoidance of wasted court time). 10/8/1998 10th Cir. Order.

### C. *Cook IX* Determines the Scope of Property Class Trial.

In 2003, the Court entered an order to clarify "the scope of trial in the Property Class phase of this action" in response to parties' various briefs and disputes regarding the elements of the property claims and issues to be tried. *Cook v. Rockwell Int'l Corp.*, 273 F. Supp. 2d 1175, 1179 (D. Colo. 2003) (*Cook IX*). With regard to nuisance, the Court ruled that plaintiffs could prove nuisance based on either (1) exposure to plutonium and some increased health risk; or (2) a threat of future harm to the property arising from future contamination. *Id*. at 1204-08. The Court also held that diminution of property value due to stigma alone cannot support a nuisance claim. *Id*. at 1208-09. In addition, the Court ruled that plaintiffs could prove that defendants caused a diminution of their properties' value through "[e]vidence that class properties have a lower value than comparable properties not in proximity to Rocky Flats, coupled with evidence of Defendants' alleged contamination of these properties and mismanagement of Rocky

Flats." *Id*. at 1209-11. The Court further rejected legal principles restricting recovery for continuing nuisance, and held that Colorado law allowed class members to seek prospective damages for diminution in property value even though they were alleging a continuing nuisance. *Id*. at 1211-12.

With regard to damages, the Court stated that as a result of "the scope of trial issues resolved in this decision, many of the individualized determinations posited by Defendants [precluding class-wide treatment of damages and other elements] are no longer a part of this case." *Id*. at 1212. The Court then ruled that plaintiffs could "attempt to prove aggregate damages that fairly represent the ***collective value of the claims of individual class members*** in the same trial in which Defendants' liability, if any, to the Property Class is determined." *Id*. at 1212 (emphasis added). The Court further held that, for purposes of diminution in value, "such damages may be expressed as either a percentage reduction in the value of class members' properties caused by Defendants' allegedly tortious conduct or as an aggregate lump sum representing the total decrease in the value of class properties." *Id.*

### D.   April 14, 2004 Order re: Class Trial.

On April 14, 2004, the Court entered an order that directed plaintiffs to propose a trial plan to resolve issues on a class-wide basis and issued a series of rulings to clarify how it expected various elements to be addressed through class treatment. 4/14/2004 Order (Dkt. 1220). The Court rejected defendants' ongoing challenges to class-wide treatment, saying those were resolved by its July 2003 Order. *Id*. at 5. As to nuisance,

the Court noted that "[t]he question of whether each Defendant caused an interference with Plaintiffs' and class members' right to use and enjoy their property potentially presents both common and individual components for decision," and ruled that plaintiffs could prove interference on a class-wide basis based on "actual or threatened hazardous substance releases . . . posed a general health risk." *Id.* at 7-8. The Court also held that the statute of limitations defense could be resolved on a class-wide basis. *Id*. at 11-17. The Court reiterated its conclusions that aggregate damages for diminution in property values may be awarded to the class based upon common evidence and that defendants' individualized issues could be resolved through common evidence at trial. *Id*. at 18-19. The Court suggested using special interrogatories to have the jury determine whether class members purchasing class properties after specific dates received a discount, or when any devaluation occurred in the market. *Id*. at 19-21. In the Order, the Court again acknowledged that plaintiffs' property claims "will require individual treatment of some kind." *Id*. at 2, 4. The Court also acknowledged that Rule 23 and the Rules Enabling Act precluded the Court from expanding the class members' rights through class-wide findings, and that the Seventh Amendment precluded a second jury from reconsidering issues already determined by a prior jury. *Id*. at 4.

      **E.**     **May 17, 2005 Order on Scheduling and Jury Instructions.**

On May 17, 2005, the Court entered an Order on Scheduling and Jury Instructions. To resolve disputes over the need for individualized proof, the Court declared that

8

interference based on a "threat of future injury that is a present menace and interference" or "human health risk" could be proved on a class-wide basis:

> I find proof of *such class-wide exposure to plutonium and resulting class-wide increase in human health risk would be sufficient to establish an interference with Class members' use and enjoyment of property*, notwithstanding that Class members may have been exposed to plutonium from Rocky Flats at different times, by different exposure pathways and to different degrees, and may have incurred varying magnitudes of increased health risk as a result.
>
> . . . .
>
> [Another basis for] a jury to find that a threat or risk of future health or other harm from Rocky Flats constitutes an interference with Class members' use and enjoyment of Class properties [is] that conditions caused by Defendants' activities at Rocky Flats create a real, verifiable threat of future harm to Class properties (such as explosion or additional releases of plutonium or other hazardous substances with accompanying health risk)[.] . . . *[This basis for interference] is capable of class-wide resolution to the extent it is based on objective conditions, such as existing contamination on-site and off-site that may be released or remobilized in some fashion that would result in human exposure and increased health risk, that have*

5/17/2005 Order at 5-6 (Dkt. 1338) (emphasis added).

The Court also set forth a trial plan for the resolution of aggregate class damages. *Id*. at 14-20. The Court held that only damages for prospective invasions would be determined at class trial, reserving damages for past and present invasions for subsequent determinations. Class-wide damages would be limited to a subclass of members who owned property in the class on the later of January 30, 1990 (filing date) or the date the jury determines that the nuisance would continue indefinitely. *Id* at 15. The remaining class members (who sold their property before this undetermined date between 1990 and

9

1995), would wait until after the class trial for a system to determine their damages. *Id*. at 16. The Court set out three items of proof for plaintiffs: (1) the nuisance and trespass were rendered indefinite by a date from 1988 to 1995; (2) the average percentage diminution in property value caused by the trespass or nuisance; and (3) the value of the properties in the sub-class, by property category. *Id* at 16-17.

The Court also characterized defendants' challenge to class damages—that some class members purchased their property at a discount, and so had ***no*** damages, while others had reduced damages—as a mitigation of damages defense and shifted the burden of proof to the defendants.[1] *Id*. at 17-18. The Court further defined the defense as a class-wide question for the jury to decide based on "common evidence demonstrating the market discount in effect during the different time periods." *Id* at 18.

Finally, the Court effectively barred evidence on individual class members' actual damages. *Id* at 18-20. First, with regard to prior discount, the Court barred as "undisputed matters of public record" the dates of class members' purchases, the prices paid in individual transactions, and any adjustments necessary to bring damage figures into the same period—all proofs that could demonstrate the lack of damages to individual class members. *Id.* Second, the Court ruled that the jury need not consider individual damage factors (*e.g.,* class member's knowledge; impact of knowledge on purchase/sale;

---

[1]   In support, the Court relied on the Restatement (Second) of Torts § 920 and Dobbs Law of Remedies § 3.8(2) to hold that where the tortious conduct harmed the plaintiff but also "conferred a special benefit to the interest of the plaintiff," that the value of the benefit is determined in mitigation of damages. *Id*. at 17 (quoting Restatement (Second) of Torts § 920).

10

and location of properties) in assessing damages. The Court held diminution in value is "a function of the market" and not of individual class members' reaction to the alleged nuisance. *Id*.

### F.     December 7, 2006 Memorandum Opinion Re: *Daubert* Motions.

After trial and the jury verdict, the Court issued another opinion justifying its prior rulings on motions in limine and *Daubert* motions. *See Cook v. Rockwell Int'l*, 580 F. Supp. 2d 1071 (D. Colo. 2006) (*Cook XVII*). As a general matter, the Court rejected any challenge to the plaintiffs' reliance on individual incidents that would not pertain to the entire class. *Id*. at 1082-83. In doing so, the Court again stated the two class-wide interferences that plaintiffs could rely upon to establish the class nuisance claims: (1) "current human health risk arising from past or on-going exposure to plutonium" and (2) "a demonstrable ***risk of future harm to Class properties*** based on objective conditions caused by Defendants' activities." *Id*. at 1087-88 (emphasis added). The Court stated that any evidence that had "any tendency to show" such conditions created a risk of harm "that has the *potential* to affect all of the Class Area" was admissible. *Id*. at 1088.

## V.     TRIAL

The trial began in October 2005, and the case was submitted to the jury in January 2006. The jury was instructed that it could find an interference with use and enjoyment of property in one of two ways: (1) "By causing Class members to be exposed to plutonium and placing them at some increased risk of health problems as a result of this exposure (see Instruction Nos. 3.7, 3.18);" and/or (2) "By causing objective conditions

11

that pose a demonstrable risk of future harm to the Class Area (see Instruction Nos. 3.7, 3.18)." Jury Instruction 3.6 (Dkt. 2121). The Court explained the two forms of possible interference this way:

> *The first possible form* of class-wide interference is whether one or both of Defendants' activities at Rocky Flats interfered with Class members' use and enjoyment of their properties by causing Class members to be exposed to plutonium and placing them at some increased risk of health problems as a result of this exposure. To find that Plaintiffs proved this form of interference, you do not need to find that all Class members were exposed to plutonium at the same time or by the same methods or to the same degree or that they all incurred the same level of health risk as a result of exposure to plutonium. It is enough to find for purposes of this form of interference with use and enjoyment of property that the Class members were exposed to plutonium in some way as a result of one or both Defendants' activities and incurred some increment of increased health risk as a result.
>
> There may be some nonresident Class members – that is, Class members who owned property within the Class Area but without living there. If you find that occupancy of their properties *would* have resulted in exposure to plutonium in some way, causing some increment of increased health risk, as a result of one or both Defendants' activities, then you should find that these Class members too suffered an interference with the use and enjoyment of their properties.
>
> *The second possible form* of interference you must consider in deciding this first element of the Plaintiff Class' nuisance claim is whether one or both of Defendants' activities at Rocky Flats interfered with Class members' use and enjoyment of their properties by creating objective conditions that pose a demonstrable risk of future harm to the Class Area. For example, if plutonium or other hazardous substances present on or in the vicinity of Rocky Flats is at risk of being released to the Class Area – through natural forces, cleanup activity, the conduct of others and/or accidents – and could cause harm to properties in the Class Area by increasing the health risk to residents or impairing the future use of their land in some way, then this would be an objective condition that poses a demonstrable risk of future harm to the Class Area.

12

> In order for you to find interference based on the threat or risk of future harm, you also need not find that the future harm *will* occur and affect the whole of the Class Area. You need only find that conditions exist that present the *potential* for such class-wide harm to occur.

Jury Instruction 3.7 (Dkt. 2121) (emphasis added).

The Court also instructed the jury that they did not need to find that all class members "were subject to the same form of interference with use and enjoyment of their properties." *Id.* Instead, the Court instructed, "[i]t is enough if you find the Class members were all subject to at least one form of interference described in this instruction, even if some Class members were subject only to the first form of interference, others only to the second, and still others to both." *Id.* And the Court instructed the jury to disregard any evidence of how individual class members actually perceived or reacted to any alleged risk from Rocky Flats: "Individual reactions to these matters are not relevant to the question of whether a class-wide interference exists." *Id.*

After several weeks of deliberations, the jury returned a verdict on February 14, 2006. *See* 2/14/2006 Jury Verdict Form (Dkt. 2117). The jury found both defendants liable for both nuisance and trespass, *see id.* at 1-13, and that the injurious situation had become "complete" and "comparatively enduring" at some point between January 1, 1988 and December 31, 1995, *see id.* at 14, 23. As relief, the jury awarded the class (1) an aggregate total of $176,850,340 in compensatory damages from both defendants, (2) $110,800,000 in punitive damages from Dow, and (3) $89,400,000 in punitive damages from Rockwell. *See id.* at 15, 24, 26-27. On June 2, 2008, the court entered a Final

13

Judgment in the amount of $377,050,340 in compensatory and punitive damages and $549,053,747 in prejudgment interest against both defendants, for a grand total of $926,104,087 (excluding post-judgment interest at the rate prescribed in 28 U.S.C. § 1961). *See Cook v. Rockwell Int'l Corp.*, 564 F. Supp. 2d at 1197-1200, 1216-18 (D. Colo. 2008) (*Cook XVII*); Final J. at 3-4 (Dkt. 2264).

## VI. *COOK APPEAL I*

Defendants timely appealed, arguing that this Court "erred as a matter of law by trying this case on a classwide basis." Defs.' *Cook Appeal I* Opening Br. at 77-85. More specifically, defendants argued:

> Unless plaintiffs can establish the elements of their claims on a classwide basis with classwide proof, common questions cannot "predominate" as a matter of law under Rule 23(b)(3), because individual trials on liability (not to mention damages) will always be necessary and thus "defeat the economies ordinarily associated with the class action device." *Patterson v. Mobil Oil Corp.*, 241 F.3d 417, 419 (5th Cir. 2001).
>
> . . .
>
> [W]ith respect to nuisance, plaintiffs never showed how they could establish a substantial and unreasonable interference with each class member's use or enjoyment of his or her property on a classwide basis with classwide proof, especially given the great variance in the alleged exposures to plutonium. Indeed, some plaintiffs did not even live on properties in the class area, and others actually testified that they did not experience *any* interference with their use and enjoyment of their property.
>
> Needless to say, a court cannot sidestep the difficulties associated with establishing *liability* on a classwide basis by simply asserting that an aggregate *damages* award may be made on a classwide basis and then allocated among class members. . . . [A] court cannot allow the recovery of damages on a classwide basis where, as here, the plaintiffs cannot establish liability on a classwide basis. Nor may a court justify class certification by

14

>  simply declaring that aggregate damages will be allocated in some fashion in the future.

*Id.* at 81-84 (citations omitted). Defendants also argued that the prospective damages sub-class (class-members who owned their property as of January 30, 1990) was improper because the district court did not limit the aggregate damages to those incurred by the damages sub-class members, and thus improperly expanded those individuals' rights and recovery. *Id.* at 85-95. Based on these errors, defendants argued that "the classwide judgment here cannot stand, and in any remand this case should proceed on an individual, not classwide, basis." *Id.* at 85; *see also id.* at 95.

In response, plaintiffs argued that the district court certified the class "in light of the command, in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974), that district courts refrain from merits determinations at the class certification stage," and that "the Supreme Court has never rescinded that command." Pls.' *Cook Appeal I* Resp. at 82. (Of course, as discussed above, the Supreme Court has now firmly "rescinded that command.") Moreover, plaintiffs argued that the Court's class certification order and the other orders discussed above, as well as the trial record, demonstrated the propriety of class certification and the class-wide trial. *Id.* at 88-89. Plaintiffs acknowledged that defendants were challenging their ability to prove interference on a class-wide basis given that "individual class members may have experienced different levels of subjective annoyance or discomfort," *id.* at 89 (citing defendants' opening brief), but responded only by focusing on the objective "substantial" and "unreasonable" elements of nuisance,

15

without addressing defendants' argument about the subjective, individualized nature of

the interference element, *id*.

On reply, defendants further explained their class-certification argument, focusing

on plaintiffs' inability to prove injury and damages on a class-wide basis:

> Defendants' point on the merits of the nuisance and trespass claims is that the district court erred under both the PAA and Colorado law by relieving plaintiffs of the need to show injury to each property in the Class Area as an essential element of liability. In light of that error, the district court never considered, for purposes of class certification, whether plaintiffs could show injury to each property in the Class Area on a classwide basis with classwide proof.
>
> . . .
>
> [O]ne of the problems with class certification in this case is that it allowed plaintiffs to recover aggregate damages without proving an essential element of their PAA claims, injury, on a classwide basis with classwide proof. That is why this case does indeed involve an impermissible "fluid recovery" that "would inevitably alter defendants' substantive right to pay damages reflective of their actual liability."

Defs.' *Cook Appeal I* Reply at 60, 62-63.

The Tenth Circuit accepted defendants' argument, and rejected the argument that

the class-wide trial proved the propriety of class certification, holding:

> As the district court's class certification analysis failed to consider whether Plaintiffs could establish various elements of their PAA claims, supplied both by federal and state law, this court must reverse the district court's class certification ruling. Upon remand, the district court shall revisit the class certification question to determine whether Plaintiffs can establish the elements of their claims, including the PAA threshold requirements, on a classwide basis. Because we now reverse the district court's class certification ruling, we need not reach the question of whether the district court's subdivision of the class for damages purposes was proper.

16

*Cook v. Rockwell Int'l. Corp.*, 618 F.3d 1127, 1149 (10th Cir. 2010) (*Cook Appeal I*).

## VII.   REMAND AND *COOK APPEAL II*

On remand, plaintiffs admitted that, at least on a class-wide basis, they could not prove they have suffered the types of harm compensable under the Price-Anderson Act, and, therefore, they abandoned that claim and sought to reinstate the prior jury verdict on their nuisance claim based on diversity jurisdiction and Colorado common law. Pls.' Opening Br. Pursuant to 10/16/2012 Order (Dkt. 2344). Defendants opposed for a variety of reasons, including most prominently, on grounds that the PAA is the exclusive remedy for claims arising out of a nuclear incident. Defs.' Resp. Pursuant to 10/16/2012 Order (Dkt. 2345). This Court agreed with defendants, *Cook v. Rockwell Int'l Corp.*, 13 F. Supp. 3d 1153 (D. Colo. 2014) (*Cook XIX*), and plaintiffs appealed, Pls.' Notice of Appeal (Dkt. 2359).

On June 23, 2015, the Tenth Circuit reversed this Court, ruling that plaintiffs could proceed with their common law claims outside the context of Price-Anderson, and remanded to this Court, saying,

> When the district court receives this case it should proceed to judgment on the existing nuisance verdict promptly, consistent with resolving the outstanding class action question, wary of arguments that have already been rejected or forfeited. This long lingering litigation deserves to find resolution soon. The judgment of the district court is vacated and the case is remanded for proceedings consistent with this opinion.

*Cook v. Rockwell Int'l Corp.*, 790 F.3d 1088, 1105 (10th Cir. 2015) (*Cook Appeal II*).

17

On August 4, 2015, plaintiffs filed their Motion for Judgment. Mot. for J. (Dkt. 2367); Corr. Mot. for J. (Dkt. 2371). In a single paragraph in that motion, plaintiffs ask the Court "to confirm that the originally certified class is proper and intact for purposes of entering a state law nuisance judgment based on the nuisance verdict." *Id.* at 3-4.

Date: September 10, 2015                    /s/ *Kevin T. Van Wart*
                                                      Kevin T. Van Wart, P.C.
                                                      Bradley H. Weidenhammer
                                                      KIRKLAND & ELLIS LLP
                                                      300 North LaSalle
                                                      Chicago, IL  60654
                                                      Phone: (312) 862-2000
                                                      Facsimile: (312) 862-2200
                                                      Email:  kvanwart@kirkland.com

                                                      Joseph Bronesky
                                                      SHERMAN & HOWARD LLC
                                                      633 Seventeenth Street, Suite 3000
                                                      Denver, CO  80202
                                                      Phone: (303) 297-2900

                                                      Attorneys for Defendants

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 10th day of September, 2015, he caused the foregoing submission to be served via the Court's ECF system on all participating counsel.

/s/ *Kevin T. Van Wart*
Kevin T. Van Wart, P.C.
