# Exhibit F

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

APR 1 4 2004

GREGORY C. LANGHAM
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. 90-K-181

**MERILYN COOK, et al.,**

    Plaintiffs,

v.

**ROCKWELL INTERNATIONAL CORPORATION AND THE DOW CHEMICAL COMPANY,**

    Defendants.

_____

## ORDER

_____

Kane, J.

On September 11, 2003, I ordered the parties to file a joint status report setting out

the issues to be tried and other matters relevant to establishing the pretrial and trial

schedule for resolution of the Property Class claims in this action.[1] After seeking and

being granted two extensions of time, the parties filed their report on December 10, 2003.

As has been the case throughout much of this action, the parties could not agree on many

of the basic components of the upcoming class trial. Plaintiffs' account of the claims and

issues to be tried is concise but fails to acknowledge or offer solutions for managing the

long-admitted individual issues embedded in their claims. Defendants, meanwhile, took

_____

[1]    For trial purposes, the property claims are bifurcated from Plaintiffs'
individual medical monitoring claims. *See Cook v. Rockwell Int'l Corp.*,
273 F. Supp. 2d 1175, 1179 (D. Colo. 2003).

the status report as yet another opportunity to argue at length regarding the merits of Plaintiffs' property damage claims and whether they can properly proceed as a class action in any respect. The Defendants' account also ignored or misconstrued certain aspects of my July 2003 Memorandum Opinion and Order resolving the disputed legal issues that had stymied progress in this case. *See Cook v. Rockwell Int'l Corp. ("Cook IX"),* 273 F. Supp.2d 1175 (D. Colo. 2003).

Such overstatements and posturing by both sides is not helpful at this stage of the proceeding. This action is going to trial on the common issues of fact and law that predominate in Plaintiffs' trespass and nuisance claims and caused me to certify the Property Class in 1993 and confirm that certification in 1998. *See Cook v. Rockwell Int'l Corp. ("Cook IV"),* 151 F.R.D. 378 (D. Colo. 1993); *Cook v. Rockwell Int'l Corp. ("Cook VIII"),* 181 F.R.D. 473, 480-82 (D. Colo. 1998). That some issues relative to these claims will require individual treatment of some kind has also been acknowledged by me and implicitly even by Plaintiffs from the beginning. *See, e.g., Cook IV,* 151 F.R.D. at 388; *Cook VIII,* 181 F.R.D. at 481; Pls.' Memo. in Support of Class Certification at 43-44 (filed June 28, 1993).

From this point forward, I expect the parties to work together to develop a proposal on how to proceed with respect to these individual issues, rather than ignoring their existence or exaggerating their number. As described in more detail below, this process will begin by Plaintiffs' preparation of a trial plan that sets out and justifies, to the extent required, the issues to be tried in the class-wide trial and proposes a mechanism for

2

resolving the individual issues presented by their property damage claims. Defendants will also participate in the preparation of this plan, which will ultimately be incorporated in the pretrial order in this action.

To assist Plaintiffs in this effort and inform Defendants' contributions, I will briefly address Defendants' most recent contentions regarding the issues to be tried in the class-wide proceeding, and then set forth the pretrial and trial schedule.

A.    Claims and Issues to Be Tried in Class Trial

Plaintiffs have clarified that they intend to try claims for trespass and for private nuisance predicated on Defendants' negligence and/or conduct of abnormally dangerous activity at Rocky Flats. They will seek compensatory damages on both claims through proof of diminished property values and will seek exemplary damages as to nuclear incidents occurring before August 20, 1988. They assert all claims will be tried on a class-wide basis.

Defendants state they intend to try four affirmative defenses: statute of limitations; easement by prescription; assumption of the risk and compliance with applicable federal and state nuclear safety standards. They dispute that any aspect of these claims or affirmative defenses can be tried on a class-wide basis and assert that trial should proceed only on the individual property class representatives' claims.

As stated above, this case will proceed as a class action as to the common questions of law and fact it presents. A practical matter, these common issues are those to which

3

identical or near identical evidence and argument would be presented in individual trials, regardless of the identity of the plaintiffs.

I also recognize, as set out below, that certain issues in this action may require some individualized showings and determinations before final judgment can be entered. My and the parties' identification and management of the common and individual issues in this action is guided by Rule 23 and the principles underlying it, including judicial economy and efficiency and affording individual small claimants access to judicial relief, *see* Albe Conte and Herbert B. Newberg, 1 Newberg on Class Actions § 1:6 (4th ed. 2002) [hereinafter "Newberg"], as well as by the requirements of the Rules Enabling Act, 28 U.S.C. § 2072, and the Seventh Amendment.  As relevant here, the latter provisions require that I carefully distinguish between issues that are capable of class-wide trial and resolution and those that require individualized determinations so that:  (1) the substantive rights of class members are not expanded by class-wide findings, *see* 28 U.S.C. § 2072; *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 345 (4th Cir. 1998), and (2) the Defendants receive their Seventh Amendment right to have a jury decide issues of fact necessary to a determination of the claims against them, and do so without a second finder of fact having an opportunity to reconsider the jury's determination of any issue.[2] *See, e.g., Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 319-21 (5th Cir. 1998); *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995); *Castano v. Am. Tobacco*

---

[2]     If separate trials are necessary or appropriate to deal with certain issues, the requirements of Rule 42(b) must also be considered.

4

*Co.*, 84 F.3d 734, 750 (5th Cir. 1996). To the extent these principles require adjustment of the class issues or definition at any point in these proceedings, I will amend my class certification as necessary. *See* Fed. R. Civ. P. 23(c)(1)(C) (class certification order may be altered or amended before final judgment).

With these principles in mind, I turn to the claims and affirmative defenses most recently asserted by the parties.

### 1.   Trespass claim

The elements of the tort of trespass in Colorado are "a physical intrusion upon property of another without the proper permission from the person legally entitled to possession of that property." *Cook IX*, 273 F. Supp. 2d at 1199 (quoting *In re Hoery v. United States*, 64 P.3d 214, 217 (Colo. 2003)). Defendants' challenge to class-wide determination of this question is based on legal contentions already considered and rejected in *Cook IX* and therefore is without merit. *See id.* at 1200-01 (holding contamination constitutes physical rather than intangible invasion under Colorado law).

I also find no merit in Defendants' summary contention that "various differences between the class members" renders impossible a class-wide trial on the question of whether Defendants caused a trespass on class properties. This question ultimately turns on the geographic extent of any contamination Plaintiffs can prove was caused by the intentional conduct of each Defendant during their operation of Rocky Flats. *See Burt v. Beautiful Savior Lutheran Church*, 809 P.2d 1064, 1067 (Colo. Ct. App. 1990) (causation for purposes of trespass claim established if defendant intended to perform conduct that

constituted or caused an unauthorized intrusion on the property of another); *see also* Restatement (Second) of Torts § 158 (1965).[3]  The evidence relevant to this question is common to the Property Class and is properly the subject of a class-wide trial.  *See, e.g., Mejdrech v. Met-Coil Systems Corp.*, 319 F.3d 910, 911 (7th Cir. 2003).  If this evidence shows that contamination caused by one or both the Defendants does not encompass all of the class properties, then I will adjust the class certification as appropriate.  *See* Fed. R. Civ. P. 23(c)(1)(C).

Defendants' arguments against a class-wide trial on damages from trespass are addressed below.

        2.      Private nuisance claim

To establish that Defendants are liable for private nuisance, Plaintiffs must prove each Defendant engaged in "an intentional, negligent, or unreasonably dangerous activity resulting in the unreasonable and substantial interference with the plaintiff's use and enjoyment of her property."  *Cook IX*, 273 F. Supp. 2d at 1202 (quotation omitted).

On the first element, the nature of Defendants' activities giving rise to the claimed nuisance, Plaintiffs report they will assert that each Defendant conducted an abnormally dangerous activity at Rocky Flats and therefore is strictly liable and/or is liable as a result of their negligent activities at the facility.  Both of these issues are capable of class-wide determination.  At this point, I anticipate strict liability will be determined by me as a

---

[3]     Plaintiffs need not prove that Defendants intended to cause the trespass in order to prevail. *See, e.g., Bittersweet Farms, Inc. v. Zimbelman*, 976 P.2d 326, 329 (Colo. Ct. App. 1998).

matter of law, *see Cook VIII*, 181 F.R.D. at 486, based on the showing Plaintiffs make in

support of the jury instruction they intend to submit predicated on strict liability for

nuisance. The evidence relevant to this question is common to the class. Plaintiffs'

assertion that each Defendant was negligent in its operation of Rocky Flats will also be

decided based on evidence common to all class members and hence will be tried and

decided on a class-wide basis.

The question of whether each Defendant caused an interference with Plaintiffs' and

class members' right to use and enjoy their property potentially presents both common and

individual components for decision. Plaintiffs state they intend to offer evidence of

multiple forms of such interference, including actual and threatened releases of hazardous

materials from the plant to the class area and surrounding environment. The evidence

relevant to actual or threatened releases of hazardous materials is common to the class and

thus may be tried on a class-wide basis.[4] In order to be actionable at nuisance, however,

Plaintiffs must also show that such actual or potential contamination, alone or in

combination with other factors, caused some harm that interfered with class members' use

and enjoyment of property. *See In re Hoery*, 64 P.3d 214, 218 (Colo. 2003) (indirect or

physical condition that causes harm can constitute a nuisance). Such proof might include,

for example, evidence that actual or threatened hazardous substance releases (or other

---

[4]     As stated in connection with Plaintiffs' trespass claim, if the evidence at the
class trial does not establish that all class properties are contaminated or threatened by
contamination as a result of Defendants' activities, then I will adjust the class certification
as appropriate before judgment is issued.

conditions resulting from each Defendant's activities):[5]  (1) posed a general health risk (a common question); (2) were capable of causing class members to suffer fear, anxiety or discomfort (a common question) and did cause such an interference with class members' use and enjoyment of their property (an individual question);[6] (3) caused governmental authorities to limit the use of class properties (a common question); or (4) resulted in other restrictions in the use and enjoyment of class properties (a common or individual question depending on the nature of claimed restriction)  *See Cook IX*, 273 F. Supp. 2d at 1203-04.

The related issue of whether any claimed interference with the use and enjoyment of class properties is substantial and unreasonable is also capable of class determination. As described in *Cook IX*, under Colorado law the finder of fact making this determination must weigh both the gravity of the harm against the utility of the conduct causing the harm and consider whether the interference is significant enough that a normal person in the

---

[5]  It is unclear at this point whether Plaintiffs intend to prove nuisance by reference to forms of interference that do not relate to actual or potential contamination of their properties as a result of Defendants' activities.  If Plaintiffs intend to do so, these additional forms of claimed interference must be examined to identify any issues or components that would require individualized rather than class determination.

[6]  I reject Defendants' contention that a class-wide trial on general or generic causation would inevitably violate the Rules Enabling Act and violate their Seventh Amendment rights.  Generic causation addresses whether the defendant was responsible for a tort that had the capacity to cause the harm alleged, while individual or specific causation addresses whether the tortious act did cause the harm and to whom.  *See, e.g., In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124, 1133 (9th Cir. 2002); *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1200 (6th Cir. 1988).  Courts have approved trial plans in mass tort actions that include class-wide trial on generic causation and leave the individual causation question to separate determination.  *See, e.g., Hanford*, 292 F.3 at 1133; *Velsicol*, 855 F.2d at 1200.

community would find it offensive, annoying or inconvenient. 273 F. Supp. 2d at 1202. The first of these questions will be decided based on common evidence as to the nature of Defendants' activities, the utility of those activities and the interference with the use and enjoyment of class properties caused by or capable of being caused by those activities.[7] The second will be decided based on common evidence regarding the reaction of a normal community member to the claimed interference.[8]

Defendants contend that causation and the reasonableness of any claimed interference cannot be decided on a class-wide basis because the activity giving rise to the alleged nuisance may be different for different class members. Defendants' theory is apparently that because class members purchased and sold their properties at different times, some class members may have been affected by some of Defendants' allegedly negligent or abnormally dangerous activities, but not others. This argument has no merit

---

[7]    It is appropriate to decide in a class-wide trial whether an individualized form of interference, such as a class member's anxiety, fear or discomfort resulting from Defendants' activities, is unreasonable and substantial because the evidence to be presented on this question would be essentially the same in individual proceedings to determine whether Defendants' activities caused this form of interference. A failure of proof at the class trial on whether a claimed interference was substantial and unreasonable would also obviate the need for any individual proceedings regarding nuisance liability premised on a claimed interference that failed this test.

[8]    As described in *Cook IX*, that class members' properties have decreased in value is evidence that a proven interference is substantial so long as the market and the affected community have substantially the same general characteristics and information base. 273 F. Supp. 2d at 1209. Evidence relevant to this question is common to the class even if Defendants are correct that the degree of any devaluation varies, as Defendants contend, on a property to property basis.

9

to the extent Plaintiffs' nuisance claim is based on actual contamination of class members' property, because the inquiry in that instance is whether each Defendant caused contamination of class members' properties, not the timing of the acts causing the contamination. To the extent Plaintiffs base their nuisance claim on each Defendants' course of conduct during its period of operating the Rocky Flats facility, Defendants' contention also has no merit. Even if Plaintiffs seek to prove their claim by reference to specific activities of each Defendant that arguably affected some class members but not others, such differences can be dealt with by carefully drafted jury instructions and special interrogatories in a class-wide trial, rather than individual trials that would repeat the same evidence as to these activities over and over again.

As noted earlier, depending on the form of interference with the use and enjoyment of property claimed by Plaintiffs, there may be specific causation issues relating to the nuisance claim that will require individualized determinations at some point in this action. Plaintiffs should address this concern in their proposed trial plan.

Defendants' arguments against a class trial on damages for nuisance are addressed below.

Defendants also raise questions about the inclusion in the class trial of the nuisance claim of class members owning only mortgagee and other security interests in class property. *See* Status Report at 33-35. Plaintiffs shall address the status and management of this sub-class and its nuisance claim in their proposed trial plan.

3.    Affirmative defenses

In a Memorandum and Order entered February 12, 2001, I ordered Defendants to

provide me with a "meaningful statement of their defenses to the Plaintiffs' property

damage claims and the elements of each defense." *Id.* at 10.  Defendants' responded in

their Proposed Pretrial Plan, filed February 26, 2001, that they intended to assert a single

affirmative defense:  statute of limitations.  In response to my question at the February 28,

2001 status conference in this action, Defendants' counsel confirmed statute of limitations

was the only affirmative defense at issue in this action.  *See* Tr. at 25-26.  In the Status

Report, however, Defendants state they will assert three additional affirmative defenses:

easement by prescription; assumption of the risk and compliance with nuclear safety

standards.  Whether any of these defenses are properly a part of this case is a matter to be

decided.  Until it is, I will not address Defendants' arguments regarding their full or partial

inclusion in the class trial.

In order to put these matters at issue, Plaintiffs shall file a position statement

regarding the three additional affirmative defenses that addresses whether these defenses

are properly part of this action and, if so, whether they can and should be tried in the class

trial.[9]  This position statement shall be filed no later than April 28, 2004.  Defendants may

file a response to Plaintiffs' position statement, and Plaintiffs' may reply, according to the

schedule set forth in Attachment A to this order.  These matters will be decided in

_____

[9]        If Plaintiffs concede or I decide these defenses are properly asserted in this
action, whether they are legally cognizable in the context of this case will be decided as
part of the jury instruction process.

11

conjunction with consideration of Plaintiffs' proposed trial plan, as discussed later in this order.

As to Defendants' statute of limitations defense, their argument that it requires individual rather than class-wide determination is premised on Plaintiffs' trespass and nuisance claims constituting permanent rather than continuing torts. Defendants acknowledge that I declared in *Cook IX*, based on the Colorado Supreme Court's decision in *Hoery*, that "the continuing presence of contamination on a plaintiff's property is a continuing trespass and nuisance." 273 F. Supp. 2d at 1211. They argue this conclusion misreads *Hoery*, however, because it does not recognize that the Colorado court's decision rested on a factual assumption, not present here, that the contamination at issue in *Hoery* was reasonably abatable. Defendants contend the jury must be required to determine whether the contamination of class properties is reasonably abatable and, if it finds it is not, to find the contamination is a permanent trespass and nuisance. This finding, in turn, Defendants argue, would put each class member's knowledge of the contamination at issue and preclude class-wide determination of the statute of limitations defense.[10]

---

[10]    In general, the limitations period begins to run on a permanent tort when the cause of action accrues, *i.e.*, when the plaintiff knows or in the exercise of reasonable diligence should know of his injury and its cause. *See Cook v. Rockwell Int'l Corp. ("Cook I")*, 755 F. Supp. 1468, 1482 (D. Colo. 1991). In the case of a continuing tort, a new cause of action accrues every day the tort continues, so that "for statute of limitations purposes, a claim would only accrue once the defendant abated the nuisance and removed the cause of the damage." *Hoery*, 64 P.2d at 219.

In 1991, Judge Babcock denied Dow's motion for summary judgment based on statute limitations because the record did not establish when plaintiffs knew or should

In *Hoery*, the Colorado Supreme Court established the general rule, reflected in *Cook IX*, that the ongoing presence of toxic chemicals on a plaintiff's property as a result of a wrongful conduct by a defendant is a continuing trespass and nuisance. *See Hoery*, 64 P.3d at 222. The Colorado court did not consider whether the contamination was abatable, reasonably or otherwise, in stating this rule. Instead, it based its decision on long-standing Colorado law holding that continuing trespass and nuisance occur "where a defendant fails to stop or remove continuing, harmful physical conditions that are wrongfully placed on a plaintiff's land." *Id.* at 220.

The Colorado Supreme Court held there is a single exception to this rule: a factual situation "where the property invasion will or should continue indefinitely because defendants, with lawful authority, constructed a socially beneficial structure intended to be permanent." *Id.* If so, under the exception, the otherwise continuing tort would be considered permanent. The key consideration in applying this exception is whether the continuing invasion is the result of an enterprise "vital to the future development of our state." *Id.* at 219-20, 222.

The *Hoery* court specifically considered whether this exception to the general rule applied to the on-going presence of contamination on Hoery's property. It held it did not

_____

have known that hazardous substances allegedly released by Dow reached their properties. *Cook I*, 755 F. Supp. at 1483. I denied Dow's subsequent motion on this defense in 1998 based on this and other disputed factual issues. *Cook VIII*, 181 F.R.D. at 484-85. Neither decision nor the parties' arguments on Dow's motions considered the permanent versus continuing tort distinction and its implications for the Defendants' statute of limitations defense.

13

for two reasons. The first was that the then current record indicated that this contamination was abatable, and hence would not and should not continue indefinitely. *Id.* at 222-23. It is this portion of the *Hoery* court's holding that Defendants cite. They ignore, however, the Colorado court's second reason for finding the exception to the general rule did not apply: its finding that the continued contamination "does not benefit the development of our state" and hence "there exists no sound public policy supporting the classification of contamination from the release of toxic chemicals as a permanent property invasion." *Id.* at 223. This conclusion applies equally to the contamination at issue here and therefore appears to render immaterial the question of whether this contamination is reasonably abatable.

My only hesitation in making a ruling on this issue at this time arises from the *Hoery* court's statement that part of its rationale in so holding was to create an incentive for the alleged tortfeasor to stop the property invasion and remove the cause of the damage. *Id.* This rationale arguably assumes that the contamination in question is in fact abatable. Accordingly, I will leave open for the time being the question of whether a continuing tort under Colorado law requires a showing that the offending condition, specifically environmental contamination, can be abated. This question will be resolved in the jury instruction process set out below.

I reject at this time two components of Defendants' proposed rule that contamination that is not "reasonably abatable" is a permanent rather than a continuing tort subject to a fixed limitations period commencing when class members knew or should

14

have known that their properties were contaminated. First, Defendants do not cite any Colorado case law holding that a trespass or nuisance that can be abated but only at an unreasonable cost or effort must be deemed a permanent tort. *Hoery* in fact demonstrates the Colorado Supreme Court would not be amenable to such a rule in environmental contamination cases as a result of the public policy against allowing contamination to remain unabated. *See* 64 P.3d at 223.

Second, even if a trespass or nuisance is found to be permanent under a "reasonable" abatement or some other test, the limitations period for these torts does not begin to run until the plaintiff knew or reasonably should have known that the property invasion was permanent. *See Bartleson v. United States*, 96 F.3d 1270, 1277 (9th Cir. 1996); *In re Tutu Well Contamination Litig.*, 909 F. Supp. 980, 988, 990 (D. V.I. 1995).[11] Thus, even under Defendants' proposed test for permanent trespasses and nuisances, the statute of limitations on Plaintiffs' claims began to run the date on which Plaintiffs' and class members' knew or reasonably should have known that their properties were contaminated *and* that this property invasion was not reasonably abatable.[12] *See id.*

_____

[11]    This rule is consistent with the Restatement rule allowing a party injured by a continuing trespass or nuisance to elect to recover for both past and future invasions, *i.e.*, recover permanent damages, upon knowledge and proof that the continuing tort will probably continue indefinitely. *See* Restatement § 930(1) & cmt. b.

[12]    In many permanent tort cases, such as those involving a permanent structure encroaching on another's property, the requirement that the plaintiff have knowledge of both the intrusion and that it is not abatable effectively merge into a single inquiry into the plaintiff's actual or constructive knowledge of the encroachment. In environmental tort cases, however, whether actual or threatened contamination is abatable or reasonably abatable is a difficult question that may not be resolved until many years or even decades

Returning to the question of the issues to be tried at the class-wide trial, if proof that the conditions complained of by Plaintiffs are abatable is necessary to decide whether the statute of limitations for continuing or permanent torts applies, then that question is common to the class as a whole and thus may be determined at the class trial.

Defendants concede that if the jury decides that these conditions were not abatable, rendering Plaintiffs' claims for permanent trespass and nuisance, then the question of whether and when Plaintiffs and class members had constructive knowledge of the trespass or other offending conditions is a common question that also may be resolved at the class trial. *See* Status Report at 41. Similarly, the question of whether and when Plaintiffs and class members had constructive knowledge that these conditions were not abatable and hence permanent is a common and hence class-wide question. If the jury were to find permanent trespass and nuisance but that the class did not have constructive knowledge of their legal injury, its cause and that the injury was permanent within the relevant limitations period, then the individual issue of whether each class member had actual knowledge of these facts within the limitations period would be presented. Other

----

after the offending conditions become known. In some cases, even where an abatement of the conditions is ordered or reasonably feasible, it may never occur because of funding or other constraints. The rule that the statute of limitations on a permanent environmental tort does not begin to run until the injured party knows or should know that its injury is in fact permanent recognizes that it would be inequitable to trigger the statute of limitations for such a tort until the plaintiff knew or reasonably should have known that the harmful environmental conditions could not or would not be abated.

16

than this scenario, it is not apparent to me at this time that Defendants' statute of limitations defense presents any issues that cannot be decided in the class-wide trial.[13]

For purposes of preparing the proposed trial plan, Plaintiffs shall assume for the time being that the question of whether the offending conditions are capable of abatement must be decided by the jury before it can be decided whether the alleged trespass and nuisance are permanent or continuing. As noted above, whether this is in fact required under *Hoery* and Colorado law will be finally determined in connection with the parties' arguments on the jury instruction Defendants no doubt intend to offer on this issue.

### 4. Compensatory damages

Plaintiffs state in the Status Report that their proof of compensatory damages will consist primarily of expert evidence concerning the value of properties in the class areas following the 1989 FBI raid and Rockwell's subsequent guilty plea to environmental crimes at the facility. In *Cook IX*, I held this evidence could be presented in the class trial to attempt to prove aggregate damages that fairly represent the collective value of the compensatory damages suffered by class members as a result of Defendants' alleged trespass and nuisance. 273 F. Supp. 2d at 1212. I also held compensatory damages in this action would be determined in accordance with section 930 of the Restatement (Second) of Torts, which provides that in cases of continuing tortious invasions of property that appear will continue indefinitely, the plaintiff may elect to recover for both: (i) the harm

---

[13]     Defendants' contentions regarding the effect of a continuing tort determination on a class-wide damages trial are addressed separately in the damages section.

caused by invasions up to the time when the injurious situation became complete and comparatively enduring and (ii) the decrease in the value of the land caused by the prospect of the continued invasion, measured at the time the injurious situation became complete and relatively enduring. *See id.*; Restatement § 930(3).

The question of when the injury became complete and relatively enduring is a common question to be decided at the class-wide trial, and Defendants do not argue otherwise. They do assert, however, that the myriad of individual factors preclude any further class-wide determination of damages.

*Cook IX* and earlier decisions in this case acknowledge that such individual damage factors are asserted and must be decided before a final judgment can be entered on damages. *See, e.g., Cook IX*, 273 F. Supp. 2d at 1212; *Cook IV*, 151 F.R.D. at 388. In *Cook IX*, I stated the manner of deciding the individual factors and distributing any aggregate damages award would be decided, if necessary, by the court after the conclusion of the class-wide trial.[14] 273 F. Supp. at 1212. Upon further reflection, I have concluded

---

[14]     I would also like to clarify that any aggregate compensatory damages award found by the jury at the conclusion of the class trial will not necessarily represent the final compensatory damages amount to be awarded to the class at the conclusion of the process by which individual damages are determined. Based on the Plaintiffs' statements on this subject to date, my thought is that an aggregate damage award would likely represent the total diminution in the value of class properties caused by any tortious conduct found by the jury. Defendants argue, however, that class members who purchased property in the class area after publicity was generated concerning Defendants' allegedly tortious conduct received the benefit of at least some of this diminution in value through a discounted purchase price. If the jury finds this to be the case, and most of the class members bought during this period, then the total of the individual damage awards may be significantly less than the aggregate damages found by the jury. In that case, it seems the lesser number, the

18

that at least some of these apparently individual damage issues actually present sub-issues or components that are appropriate to include in the class-wide trial as well.

Defendants assert, for example, that any compensatory damages to be recovered by an individual class member will be affected by a number of individual factors, including when the class member purchased the property, when it sold it and the nature of the property (*i.e.*, residential, commercial, vacant land). Whether Defendants are correct that these factors could affect the diminution in property value, if any, suffered by an individual class member as a result of Defendants' allegedly tortious conduct is a question of fact to be decided based on evidence common to the class as a whole that is capable of resolution in a class-wide proceeding without violating either the Rules Enabling Act or the Defendants' Seventh Amendment rights. *See* Newsome, § 9:62 (individual issues to be scrutinized to identify underlying basic elements amenable to adjudication on a common basis).

In preparing the proposed trial plan, the parties should also consider whether the jury in the class-wide trial, based on the common evidence to be presented there, could

---

total of the individual damage awards to class members, would be the final damages award, because the persons who sold the class properties to class members and suffered part of the diminution in class property value captured in the aggregate award are not part of the class and hence are not part of this action. There may also be other circumstances in which individual considerations, dealt with after the class trial, result in a final total damage award that is less than the aggregate award. On the other hand, Plaintiffs may propound a plan for the class trial that deals with these individual considerations and will yield an aggregate damages award that can readily be distributed to class members in some fashion. I cannot resolve these issues until Plaintiffs file their proposed trial plan.

19

quantify the effect (if any) such factors would have on any individual damages to be awarded and convey these findings via answers to special interrogatories. For example, if the jury accepts the Defendants' contention that class members who purchased their properties after 1970 or other relevant dates did so at a discount as a result of the publicity regarding off-site contamination and other issues associated with Rocky Flats, and as a result that class members in this category are not entitled to recover the entire or perhaps any diminution in value caused by Defendants' allegedly tortious conduct, can that discount be quantified and reported by the jury based on the damages evidence to be presented at the class trial in a manner that could then be applied in individual damage determinations? If not, what other procedure could be employed to allow this and other recurring issues to be decided and applied to individual damage determinations in a judicially efficient and fair manner? I have no doubt that counsel in this action, with their extensive experience in the class action arena, can devise an appropriate plan if they turn their attention to this task.

Defendants also contend that a finding that their alleged trespass and nuisance are continuing torts will necessitate individualized determinations as to whether the negative impact to a particular class member's property value occurred before January 30, 1988, two years before this action was filed. This requirement, Defendants argue, derives from the traditional rule that recovery on a continuing tort claim is limited to the damages incurred in the backwards calculated statute of limitations period. *See, e.g., United States v. Hess*, 194 F.3d 1164, 1177 (10th Cir. 1999). Based on this rule, Defendants contend a

20

class member may only recover damages, *i.e.*, diminished market value, for continuing

trespass or nuisance to the extent it can demonstrate this damage occurred after

January 30, 1988.

Whether Defendants are correct in this assertion will be decided in the briefing and

argument on the parties' proposed jury instructions.[15] Even assuming they have properly

stated the applicable recovery period, the issue of whether class members incurred damage

during this period does not appear to require individualized determinations because the

questions of if and when the market devalued the class properties as a result of

Defendants' allegedly tortious conduct is subject to common proof. As a result, these

questions will be tried, if necessary, in the class trial.

For the reasons stated above, I remain unpersuaded that the individual damages

issues asserted by Defendants require an endless succession of individual proceedings,

which would require that much the same evidence be presented again and again. Instead,

even the apparently individual damage questions have significant components capable of

adjudication on a common basis, with the application of the factual determinations as to

each alleged factor to individual class members or categories of class members to occur in

a subsequent proceeding. The validity of these preliminary views and the precise method

by which these and other individual issues will be determined will be tested and decided

---

[15]     If Defendants are correct, then some of the individual damage factors
posited by Defendants, such as the different times at which class members purchased their
properties, may be rendered moot or of limited import.

21

through consideration of the trial plan to be prepared by Plaintiffs after consultation with Defendants.

### 5. Exemplary damages

The question of whether any injury caused by Defendants "is attended by circumstances of fraud, malice, or willful and wanton conduct," as necessary for an award of exemplary damages here, will be determined on the basis of common evidence to be presented at the class-wide trial. Defendants' concern that the August 20, 1988 cut-off for punitive damages requires individual determination of whether each class member's claim accrued before or after this date is unwarranted as the relevant question under the statute is when the relevant "nuclear incident" occurred, not when the claim arising from such incident occurred.[16] *See* 42 U.S.C. § 2210(s); *Cook IX*, 273 F. Supp. 2d at 1212.

### B. Pretrial Schedule

The schedule by which this case will proceed to trial is set forth in Attachment A to this order. Further direction on specific tasks or events is set forth below.

### 1. Plaintiffs' Proposed Trial Plan

Plaintiffs shall prepare and file a proposed trial plan that, consistent with the analysis and direction in this order, specifically identifies the issues and sub-issues to be

---

[16] "Nuclear incident," as relevant here, means "any occurrence . . . causing . . . damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material". 42 U.S.C. § 2014(q).

22

tried in the class-wide property claims trial and proposes a method by which to resolve any issues or sub-issues that are not amenable to final resolution at the class trial.

Plaintiffs shall consult with Defendants in preparing the trial plan and Defendants shall participate in the planning process in good faith and consistent with my rulings in this order and *Cook IX*. Plaintiffs shall initiate the consultation process promptly and provide Defendants with a proposed trial plan incorporating the results, as appropriate, of the consultation process, no later than April 28.

If the parties are unable to reach agreement on all elements of the proposed trial plan, Defendants shall provide Plaintiffs with written objections and a specific counter-proposal on any disputed plan element no later than May 5. Plaintiffs shall include Defendants' objections and counter-proposal and a written response to Defendants' objections and counter-proposal in their May 12 proposal to the court. I will hear the parties' arguments concerning any disputed elements of the trial plan, including whether the non-statute of limitations defenses asserted by Defendants in the Status Report are properly part of this action, on May 19 if necessary.

### 2. Motions Relating to Expert Witness Testimony

Any motion challenging the admissibility of any expert witness testimony based on the qualifications of the expert, the reliability of his or her testimony or its relevance to the issues to be tried in the class trial, *see* Fed. R. Evid. 702; *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Kumho Tire v. Carmichael*, 526 U.S. 137 (1999), shall be filed by the deadline stated in Attachment A or will be waived.

Defendants state in the Status Report that they intend to "re-file" their previous *Daubert* motions, presumably referring to their Motion to Strike Plaintiffs' Experts, filed August 29, 1997 and stricken July 29, 1998. I have previously determined it would be inefficient to revive and decide this Motion, which does not reflect the rulings in *Cook IX* and other developments in this action. *See* Order at 4 (Sept. 11, 2003). If Defendants choose to re-file this Motion to Strike, it will be denied out of hand for that reason. Defendants remain free, of course, to file new *Daubert/Kumho Tire* or other motions in limine challenging the admissibility of the intended testimony of Plaintiffs' designated expert witnesses, and to include in such motion(s) arguments originally asserted in their 1997 Motion to Strike, but only to the extent these arguments have not been mooted by *Cook IX* and other developments in this action.

3.    Preparation of Proposed Jury Instructions

The parties shall prepare and file (not just submit) proposed jury instructions in three phases as stated in Attachment A. For each phase, Plaintiffs shall follow my standard instructions for preparation and submission of proposed jury instructions, copies of which are enclosed with this order, as appropriate to this phased process and the specific directions provided herein. The parties should also carefully review Section IV.3

of my Pretrial and Trial Procedures Memorandum for additional information on my philosophy and requirements for jury instructions.[17]

The parties shall work together in good faith to develop stipulated proposed instructions to the greatest extent possible. Towards this end, as provided in my standard direction on preparation of jury instructions, the parties shall exchange proposed instructions a minimum of fourteen days before the due date for each set of proposed instructions and meet at least once before and/or after this exchange to identify common ground and attempt to resolve any differences. Objections and counter instructions on any instructions to which the parties cannot stipulate shall be submitted in the form stated in paragraph 5.e of the attached jury instruction package. As shown in Attachment A, I have scheduled and will hold jury instruction conferences as necessary for each phase of the instruction process.

4.     Special jury panel

Based on the parties' current estimates of the class trial's length, a special jury panel will be required for this trial. The parties should consult and advise me whether members of this special jury panel should be required to complete a questionnaire in advance of voir dire that is specific to this action. If so, the process and schedule for preparing such a questionnaire will be added to the trial schedule in the Pretrial Order.

---

[17]     A copy of this Memorandum, which I revised recently, is also enclosed with this order.

5.      Trial date and length of trial

As stated above, I intend to start this trial on January 17, 2005.  The parties shall consult their schedules and revisit the anticipated length of trial in light of the rulings in this order and Plaintiffs' proposed trial plan.  Plaintiffs shall include the parties' revised estimate of the trial length in their proposed trial plan.

A status conference in this matter is hereby set for **May 5, 2004 at 1:30 p.m.** in Courtroom 11 on the 8th Floor of the Alfred A. Arraj U.S. Courthouse, 901 19th Street. The purpose of this conference will be for the parties to report their progress on the proposed trial plan and to discuss any other scheduling issues as necessary.  The parties shall file a short status report identifying any issues they intend to raise at the conference no later than May 3, 2004.

IT IS SO ORDERED.

Dated this 4 day of April, 2004.

John L. Kane, Senior District Judge
United States District Court

26

## ATTACHMENT A

### PRETRIAL AND TRIAL SCHEDULE

| Event or Task | Date or Due Date (all dates 2004 unless otherwise noted) |
|---|---|
| Discovery cut-off | June 30  (per Discovery Order entered Dec. 23, 2003) |
| Plaintiffs' Position Statement regarding Defendants' affirmative defenses other than statute of limitations | April 28 |
|       Defendants' response (if necessary)<br>      Plaintiffs' reply (if necessary) | May 10<br>May 17 |
| Status Conference | May 5 |
| Plaintiffs' Proposed Trial Plan filed | May 12 |
| Hearing on Plaintiffs' Proposed Trial Plan and Defendants' additional affirmative defenses (if necessary) | May 19 |
| Proposed Pretrial Order submitted | June 16 |
| Proposed Jury Instructions and any related objections filed by parties as follows:<br><br>      Phase I:  Substantive instructions on trespass claim (not including damages) and all affirmative defenses applicable to trespass claim | June 16 |
|       Phase II:  Substantive instructions on class-wide elements of nuisance claim (not including damages) and any affirmative defenses applicable to nuisance claim | July 14 |
|       Phase III:  Substantive instructions on class-wide components of compensatory and exemplary damages, statement of the case instruction and all non-substantive instructions and proposed jury verdict forms with special interrogatories | August 11 |

| | |
|---|---|
| Pretrial Conference and argument (if necessary) on Phase I jury instructions | June 30 |
| Status Conference and argument on Phase II jury instructions (if necessary) | July 26 |
| Status Conference and argument on Phase III jury instructions (if necessary) | August 25 |
| Motions challenging admissibility of any expert witness testimony (*Daubert* motions) filed<br><br>   Responses due<br>   Replies due | September 17<br><br><br>October 8<br>October 26 |
| Status Conference (if necessary) | September 29 |
| All other motions in limine and objections to exhibits filed<br><br>   Responses due<br>   Replies due | October 22<br><br><br>November 15<br>November 30 |
| *Daubert* hearing on expert witness motions (if necessary) | November 2-4 |
| Hearing on all non-expert witness motions in limine and objections to exhibits | December 8 |
| Pretrial Order amendments, court copies of exhibits and designated deposition testimony, final witness lists, etc. filed or submitted.  *See* Pretrial and Trial Procedures Memorandum, § V, at 11. | December 29 |
| Final Trial Preparation Conference | January 5, 2005 |
| Additional Trial Preparation Conference (if needed) | January 12, 2005 |
| Trial start date | January 17, 2005 |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
GREGORY C. LANGHAM, CLERK
U. S. Courthouse
901 19ᵗʰ Street - Room A-105
Denver, CO 80294
(303) 844-3433

Date:        **April 14, 2004**

Case No.     **Civil Action No. 90-K-181 - Merilyn Cook et al. v. Rockwell International
             Corporation, a Delaware corporation, and The Dow Chemical Company,
             a Delaware corporation**

        The undersigned hereby certifies that on the above date a true and correct copy of the
preceding **ORDER** signed by Judge John L. Kane on **April 14, 2004** was mailed to the
following:

Daniel Satriana, Esq.                    Bruce DeBoskey, Esq.
Sean R. Gallagher, Esq.                  Gary Blum, Esq.
Hall & Evans                             Stephen Kelly, Esq.
**D.C. Box No. 5**                       Silver & DeBoskey
                                         The Smith Mansion
                                         1801 York Street
                                         Denver, CO 80206


Merrill Davidoff, Esq.                   Stanley M. Chesley, Esq.
Daniel Berger, Esq.                      Waite, Schneider, Bayless
Berger & Montague                          & Chesley Co., L.P.A.
1622 Locust Street                       1513 Central Trust Tower
Philadelphia, PA 19103-6365              Cincinnati, OH 45202

R. Bruce McNew, Esq.                     Ronald Simon, Esq.
Taylor, Gruver & McNew, P.A.             Simon & Associates
3711 Kennett Pike, Suite 210             1707 N. Street, N.W.
Greenville, DE 19807                     Washington, D.C. 20036

Kenneth A. Jacobsen, Esq.                Mark Tucker, Esq.
22 West Front Street                     The Dow Chemical Co.
Media, PA 19063                          2030 Willard H. Dow Center
                                         Midland, MI 48674

Page 2 - **Civil Action No. 90-K-181**

Joseph J. Bronesky, Esq.
Christopher Lane, Esq.
Sherman & Howard
**D.C. Box No. 12**

David M. Bernick, Esq.
Doug Kurtenbach, Esq.
Mark S. Lillie, Esq.
Kirkland & Ellis
200 E. Randolph Drive
Chicago, IL 60601

Carlotta Wells
U.S. Department of Justice
901 E Street, N.W., Room 1058
Washington, D.C.  20044

**Tom Hilburger, Courtroom Technology
Deputy**

April ___14___, 2004

Patrick Hanlon, Esq.
Mark Raffman, Esq.
Shea & Gardner
1800 Massachusetts Avenue N.W.
Washington, D.C.  20036

John W. Suthers, Esq.
U.S. Attorney
Stephen D. Taylor, Esq.
**Assistant U.S. Attorney**

James D. Long, Esq.
U.S. Department of Energy
Rocky Flats Field Office
10808 Highway 93, Unit A
Golden, CO 80403-8200

GREGORY C. LANGHAM, CLERK

_____
Deputy Clerk