# Exhibit U

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

MAY 2 6 2004

**GREGORY C. LANGHAM**
**CLERK**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. 90-K-181

MERILYN COOK, et al.,

     Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION AND THE DOW CHEMICAL
COMPANY,

     Defendants.

---

## ORDER

---

Kane, J.

     This matter is before me on Plaintiffs' Submission Re Trial Plan, Defendants'

objections thereto and the parties' respective position statements regarding three

affirmative defenses asserted by Defendants in the parties' December 2003 Status Report.

I ordered the parties to address these issues in an order entered on April 14, 2004

("April 14 Order").

### Background

     The April 14 Order represented my fourth attempt to compel the parties to identify

the issues to be tried in the class trial of the property damage claims in this action. These

efforts began three and half years ago when I ordered the parties to prepare and submit a

Joint Pretrial Order: Trial of Property Damage Claims in advance of the scheduled

Pretrial Conference. *See* Order at 3 (Nov. 16, 2000). The parties failed to include the required issues to be tried in their submission, prompting me to issue a second order on February 12, 2001 specifically directing the parties to prepare and submit a proposed pretrial plan that included "a concise statement or list of the issues to be tried in the property damage trial under their theory of the case" that would help "narrow and define the issues for trial so that they can be set forth in a meaningful pretrial order." Order at 9-10 (Feb. 12, 2001).

As a result of Defendants' ambiguous statements on the subject up to that point, the February 2001 order specifically directed them "to include a meaningful statement of their defenses to the Plaintiffs' property damage claims and the elements of each defense" in their proposed pretrial plan so that this statement could be carried forward into the anticipated Pretrial Order. *Id.* at 10. I also ordered Plaintiffs to address a long-standing issue in this case, which is how class-wide property damages are to be determined, "including the method by which factors relating to individual class member's damages are to be taken into account." *Id.*

The parties responded by submitting proposed trial plans on February 26, 2001 that presented vastly different versions of the issues to be tried. As relevant to the discussion that follows, Defendants' proposed trial plan stated they intended to assert a single affirmative defense: statute of limitations. *See* Defs.' Proposed Pretrial Plan at 4 (Feb. 26, 2001). In response to my direct question at the subsequent conference on the issues to be tried and other pretrial matters, Defendants' counsel confirmed statute of

2

limitations was the only affirmative defense at issue in this action. *See* Tr. of Feb. 28, 2001 Conf. at 25-26.

On the compensatory damages issue, meanwhile, Plaintiffs stated only that they intended to prove aggregate damage to the value of class properties, and that allocation of the aggregate damage award among individual class members was "a matter of straightforward arithmetic" that would occur after the class trial as a matter of internal class accounting. Pls.' Proposed Pretrial Plan at 7-8 (Feb. 26, 2001).

After considering these submissions and the parties' arguments at the February 28 pretrial planning conference, I determined that the case could not move forward until certain long-standing legal issues were resolved. These issues were resolved in *Cook IX*, 273 F. Supp. 2d 1175 (D. Colo. 2003). In this decision, I also endorsed Plaintiffs' plan to seek a determination of aggregate class damages in the same trial in which Defendants' liability, if any, to the Property Class is determined. *Id.* at 1212. I further stated that appropriate principles and procedures for distributing any aggregate damage award to individual class members remained to be determined. *Id.*

Following issuance of *Cook IX*, I again ordered the parties to submit a list of the claims and issues to be tried, this time with the direction that the list be consistent with the *Cook IX* rulings. The parties submitted their respective lists of trial issues in separate statements included in a status report filed on December 2003. Once again, the parties could not agree on most of the basic components of the class property trial, with the center of the dispute shifting, for the most part, from the legal issues decided in *Cook IX*

3

to Defendants' contention, for at least the third time in the action, that none of the issues
to be tried were capable of resolution in a class action.

It was also in the December 2003 status report that the Defendants for the first
time in the lengthy trial planning process identified three additional affirmative defenses
to be tried: easement by prescription; assumption of the risk and compliance with
government standards.

Noting Defendants' earlier express representation that only the affirmative defense
of statute of limitations was at issue, in the April 14 Order I directed the parties to brief
the question of whether these additional defenses were properly asserted in this action.[1]  I
also addressed Defendants' renewed challenges to the class trial and identified certain
issues relating to nuisance liability and determination of compensatory damages that
required further consideration.  I then directed Plaintiffs, after consultation with the
Defendants, to "prepare and file a proposed trial plan that, consistent with the analysis
and direction in [the April 14 Order], specifically identifies the issues and sub-issues to be
tried in the class-wide property claims trial and proposes a method by which to resolve
any issues or sub-issues that are not amenable to final resolution at the class trial."
April 14 Order at 22-23.

---

[1]      Assuming all or some of these defenses survived this scrutiny, I reserved
any question as to their legal sufficiency to the jury instruction process.

4

## Discussion

A.    Affirmative Defenses

      1.    Compliance with applicable nuclear safety standards

Defendants both pled in their Answers to Plaintiffs' Second Amended Complaint that "To the extent that [Rockwell/Dow]'s actions at the Rocky Flats Plant were in compliance with all applicable federal and state regulations, [Rockwell/Dow] cannot be held liable for injuries or for exemplary damage resulting from or based upon their actions." Defendants identified this contention as an issue to be tried in their February 2001 submissions, albeit in the context of arguing that Plaintiffs' *prima facie* case required proof that Defendants had not complied with federal nuclear safety standards. Because Defendants included this issue in their 2001 statement of the issues to be tried, I find they have not waived the right to assert it as an affirmative defense.

Whether compliance with applicable nuclear safety standards is an affirmative defense to Plaintiffs' trespass and nuisance claims as a matter of law is another matter. Plaintiffs are correct that my ruling in *Cook IX* precludes Defendants from asserting this defense as a matter of federal law. *See* 273 F. Supp. 2d at 1198-99. Whether Colorado law, which provides the substantive law governing this action, *see id.* at 1179-80, recognizes compliance with applicable government standards as a defense to trespass or nuisance liability is a separate question that has not been addressed by either party. While I am doubtful that Colorado law so provides, I will not decide this issue in a vacuum. If Defendants wish to assert compliance with nuclear safety standards as an affirmative

5

defense to either trespass or nuisance liability in this action, they must justify the asserted defense under Colorado law during the jury instruction process.

Even if compliance with government standards is not a defense to trespass or nuisance liability, evidence concerning Defendants' alleged compliance with these standards is likely relevant to at least Plaintiffs' claim for exemplary damages under Colo. Rev. Stat. § 13-21-102. Whether this evidence is relevant to any other issues in this action will be decided in the jury instruction process or by motion in limine as appropriate.

    2.    Assumption of the risk

In the December 2003 Status Report, Defendants identified assumption of the risk as an affirmative defense to be tried in connection with Plaintiffs' property damage claims. Status Report at 41. While Defendants both pled assumption of the risk as a defense in their Answers to the Second Amended Complaint, they did not include it in their representations to the court and Plaintiffs in 2001 regarding the issues to be tried. In a May 10, 2004 filing, Defendants explained this omission by asserting that assumption of the risk is not really an affirmative defense at all (thereby contradicting their December 2003 assertion), but rather is "a factor to be considered" in determining nuisance liability. Defs.' Resp. to Pls.' Position Statement on Affirmative Defenses at 7 (May 10, 2004). In a submission one day later, Defendants try to have it both ways, asserting assumption of the risk is both an affirmative defense and a factor to be considered in assessing Plaintiffs' claims. *See* Exh. B to Pls.' Submission re Trial Plan

6

(Defs.' May 11 Statement regarding Pls.' proposal) at 16. Finally, at oral argument on
May 17, Defendants again acknowledged that assumption of the risk is not an affirmative
defense. *See* Tr. of May 17, 2004 Conf. at 15.

Notwithstanding Defendants' dance with respect to assumption of the risk, they
have admitted it is not a defense to liability on Plaintiffs' property damage claims. This
admission is consistent with Colorado law, *see Allison v. Smith*, 695 P.2d 791, 794-95
(Colo. Ct. App. 1984) ("it is no defense to an action for nuisance that the plaintiff 'came
to the nuisance' by knowingly acquiring property in the vicinity of the defendants'
premises."), and precludes them from asserting assumption of the risk as a defense at
trial. Whether Defendants are correct that the timing of class members' acquisition of
class properties is a factor for the jury to consider in determining liability for nuisance is a
matter to be decided in jury instruction process.

3.    Easement by prescription

In the December 2003 Status Report, Defendants also stated they intend to assert
as an affirmative defense at trial that they have acquired an easement by prescription to
contaminate class properties with plutonium released from Rocky Flats. Defendants
contend this defense is encompassed by the easement by prescription defense asserted in
their respective Answers to the Second Amended Complaint and by their reference in the
December 2003 Status Report to their statute of limitations defense.

Even under the lenient standards of notice pleading, neither contention withstands
scrutiny. Both Defendants pled in their answers only that "The Rocky Flats Nuclear

7

Weapons Plant has been present at its current location since 1951 and has acquired by

prescription the right to operate in that location." The right to operate the Plant at its

current location provides no notice that Defendants also claim the right by prescription to

contaminate off-site properties through releases from the Plant. Similarly, Defendants'

statements in early 2001 that they intended to assert the affirmative defense that

Plaintiffs' claims against them "are time barred by the applicable statute of limitations,"

Defs.' Proposed Pretrial Plan at 4 (Feb. 26, 2001), failed to notify Plaintiffs or this court

that they intended to assert a prescriptive right to contaminate off-site properties. *Cf.*

Restatement (Second) of Torts § 899 cmt. d (1979) (distinguishing between statute of

limitations defense and defense based on prescriptive easement). Defendants' labored

efforts aside, therefore, the record shows that this defense is an after-acquired thought

that contradicts their 2001 representations to Plaintiffs and the court regarding the issues

to be tried in this action.

Defendants argue that even if they did not disclose their new easement by

prescription defense in 2001, this non-disclosure is of no consequence because no pretrial

order "enshrining" the 2001 pretrial proceedings has yet been entered. This argument is

specious given that the entire purpose of the 2001 proceedings, as described above, was

to compel the parties to define and narrow the issues to be tried so that a meaningful

pretrial order could be entered. That the parties' continued disagreements about the

issues to be tried has precluded entry of such an order to date does not give Defendants'

8

leave to disregard their prior representations to this court and assert new affirmative defenses at their whim.

Defendants also argue that even if I have discretion to bind them to their 2001 representation regarding the single affirmative defense to be tried, I should not exercise that discretion to bar assertion of the easement by prescription defense because the defense was necessitated by the changed legal framework of this action after the *Cook IX* decision and because its addition would not prejudice Plaintiffs or disrupt this action. I disagree. First, that some of the rulings in *Cook IX* may make it more difficult for Defendants to prevail on their statute of limitations defense is no excuse for Defendants to insert a new easement by prescription defense in this action. Second, injecting this defense into the case at this late date would severely prejudice both Plaintiffs and the administration of this difficult case. This action is in its fourteenth year. Defendants filed their answer to the Second Amended Complaint, including a long laundry list of affirmative defenses,[2] thirteen years ago. Discovery has been on-going for more than a decade and is scheduled to be completed in little more than a month. For the last three years, the efforts of the parties and the court have been focused primarily on narrowing the issues for the class trial. My February 2001 order requiring Defendants to specify the affirmative defenses they intended to try and their elements was a crucial part of this

---

[2]     Rockwell asserted thirty-nine defenses, while Dow stated forty-five. As noted earlier, neither Defendant included a prescriptive right to contaminate in their litany of defenses.

effort. I and the Plaintiffs were entitled to rely on Defendants' response that they only

intended to try the affirmative defense of statute of limitations. Allowing Defendants to

insert an entirely new affirmative defense, one which was never pled in the long history

of this case, at this point would disrupt the pretrial planning and preparation process and

only further delay and complicate what is already an extremely complex and problematic

case to administer and try. Accordingly, I will not permit Defendants to assert and try

their newfound easement by prescription defense to Plaintiffs' property damage claims.

      B.    Plaintiffs' Proposed Trial Plan

In the April 14 Order, I directed Plaintiffs to work with Defendants to prepare a

proposed trial plan for resolving both class-wide and individual issues raised by their

trespass and nuisance claims and Defendants' affirmative defense to these claims. I

directed Defendants to participate in this effort in good faith. I further ordered both

parties to address specific elements of Plaintiffs' claims, namely, the form(s) of

interference asserted by Plaintiffs in support of nuisance liability, causation with respect

the form(s) of interference asserted for nuisance liability and the determination of

compensatory damages for both trespass and nuisance claims - that may present

individual components that preclude final resolution of these issues on a class-wide basis.

Finally, I urged the parties to abandon the posturing on the class trial issue that

characterized their statements in the December 2003 Status Report.

Much of this direction appears to have fallen on deaf ears. It is apparent from

Plaintiffs' proposed plan and Defendants' objections that they did not work together to

prepare and present a coherent proposal. Plaintiffs' proposed plan is more a general statement of their trespass and nuisance claims than a specific statement of the issues and sub-issues to be resolved at the class trial, and only partially responds to my concerns about issues or sub-issues that may require determination on something other than a class-wide basis. Most of Defendants' objections to Plaintiffs' plan, meanwhile, resurrect previously rejected legal arguments, muddy the water by failing to distinguish between Plaintiffs' trespass and nuisance claims, and/or improperly attempt to insert sufficiency of proof and merit considerations into the trial planning process. Both parties also largely fell back into the same argumentative ruts they have occupied throughout this case, with Plaintiffs over-simplifying the issues presented and Defendants obfuscating them. As a result, the parties made little progress in resolving the trial management issues identified in the April 14 Order and thus little progress in finalizing the issues to be tried and resolved in the class-wide trial.

The trial management issues presented in this case are neither as simple as Plaintiffs assert nor as overwhelming as Defendants maintain, and they can and will be decided in a manner that does not further delay this action. To reach this end, I have determined, after considering the parties' most recent submissions and argument on May 17, to proceed as follows in order to keep this action on track for the scheduled January 2005 trial date.

11

1.    Compensatory damages

Defendants assert that in the event they are found liable to class members on one or both of Plaintiffs' property damage claims, the amount of compensatory damages, if any, suffered by individual class members as a result of Defendants' tortious conduct is dependent (among other things) on various factors specific to each class member, including when the class member purchased the property, when or if the member sold the property and the nature of the property (*i.e.*, residential, commercial, vacant land). Defendants have a right to be heard on these arguments and to have them decided before compensatory damages are finally determined and awarded in this action. *See* April 14 Order at 18-20 & n.14; *see also id.* at 4 (recognizing Defendants' Seventh Amendment right to have a jury decide issues of fact necessary to determination of the claims against them).

I have directed Plaintiffs on at least two occasions, including in the April 14 Order, to propose a plan for fully resolving the compensatory damages issue that takes into account Defendants' arguments regarding individual damage factors. *See* April 14 Order at 19-20; Memorandum and Order at 10 (Feb. 12, 2001). Plaintiffs have yet to produce such a plan or to recognize Defendants' right to have their individual damages arguments determined in some fashion.

In an indirect response to my statements in the April 14 Order on this topic, Plaintiffs argue that the "but for" measure of damages supplied by Restatement (Second) of Torts § 930 negates the primary individual factor asserted by Defendants, which is that

12

compensatory damages (if any) due to each class member will vary depending on whether they purchased their property at a time when the market had discounted the value of class properties as a result of Defendants' alleged trespass or nuisance. I disagree. Restatement § 930 states the proper measure of damages for Defendants' allegedly tortious conduct, but does not address the separate question of who is entitled to recover that measure of damages. As described in the April 14 Order, there may be circumstances in which all or part of the damage determined under section 930's "but for" measure was suffered by persons who owned the property before the June 1989 class membership date. *See* April 14 Order at 18 n.14. Accordingly, Restatement § 930 and its application in this action does not preclude Defendants from arguing and attempting to prove that individual class members have not suffered the full measure of any damages found pursuant to section 930 because the market had discounted the value of their class property at the time they purchased it.[3]

Plaintiffs' plan for trying and determining compensatory damages due to the Property Class if liability is proven currently begins and ends with their proof of aggregate class damages. This is not adequate for the reasons stated above and in the April 14 Order. That Plaintiffs contemplate post-trial development of a plan to allocate

---

[3]     In addition, assuming for the moment that Defendants are correct that the market discounted the value of class properties before the class membership date as a result of Defendants' tortious conduct, and that some class members received the benefit of that discount when they purchased their class property, these class members would recover a windfall if they were awarded compensatory damages that included the discount for Defendants' tortious conduct they received when they purchased their property.

13

the aggregate damage amount "fairly and equitably and appropriately" among class members, May 17 Conf. Tr. at 25, is also an inadequate response at this point in the proceedings. As acknowledged throughout this case, some provision must be made for determination and, if appropriate, application of the individual damage factors asserted by Defendants and for determination of individual damage awards to class members. Without a concrete proposal from Plaintiffs on how to proceed on these points, I cannot determine whether Defendants' Seventh Amendment rights have been preserved and whether determination of aggregate class damages as planned in the upcoming class trial is part of a fair and efficient process for determining the compensatory damages, if any, to be awarded to Property Class members if liability is proven.

Accordingly, I will again require Plaintiffs to submit a proposal regarding determination of compensatory damages in this action that is responsive to the concerns and analysis stated in the April 14 Order and in this order. Plaintiffs shall file their proposal no later than **July 1**, and Defendants may file a response no later than **July 8**. Plaintiffs and Defendants shall consult in good faith before July 1 in an effort to minimize any areas of disagreement. Argument regarding Plaintiffs' proposed plan will be heard at the **July 16** status conference if necessary. If I determine Plaintiffs have not presented an acceptable plan for determining compensatory damages, I will strongly consider severing the compensatory damages issue from the class trial and decertifying it as a class issue.

14

2.    Other trial planning issues

In response to a question posed in the April 14 Order, Plaintiffs have proposed that the nuisance claim on behalf of individuals owning mortgagee or other security interests in class properties be severed.[4] Pls.' Submission re Trial Plan at 2. I GRANT this request and hereby SEVER the mortgagee interests' nuisance claim from the scheduled class trial on Plaintiffs' trespass and nuisance claims.

Plaintiffs did not fully address other questions and concerns expressed in the April 14 Order regarding class-wide determination of nuisance liability. In particular, Plaintiffs' discussion of the arguments and evidence they intend to present to prove the element of interference with class members' use and enjoyment of property (as distinguished from the element of whether the claimed interference was substantial and unreasonable) was not entirely clear and precludes me from making a final ruling on whether this element and related causation issues are capable of complete resolution at the class trial.

Rather than delaying the pretrial schedule and trial date for several months to clarify these issues, as Defendants have proposed, I will require Plaintiffs to address them as part of Phase II of the currently scheduled jury instruction process.[5] If more time

---

[4]    Plaintiffs' trespass claim on behalf of individuals owning mortgagee and other security interests was dismissed earlier in this action. *See Cook II*, 778 F. Supp. 512, 515 (D. Colo. 1991).

[5]    In clarifying their arguments and intended proof on the interference with use and enjoyment element, Plaintiffs should carefully consider the discussion in *Cook IX*

15

is required to complete Phase II than is currently allotted, scheduling adjustments will be made at that time.

I have also considered Defendants' renewed arguments regarding class-wide trial and determination of the issues of actual and potential contamination, Defendants' conduct and releases, risk, market value and the like, as relevant to Plaintiffs' trespass and/or nuisance claims, and remain persuaded that these are common issues to be determined based on common evidence presented at the class trial. Defendants' contentions regarding class trial of issues relating to government standards or abatement of class properties are dependant on legal rulings to be made in the jury instruction process and hence will not be addressed here.

To assist the court and the parties in defining the issues to be tried and determined at the class trial, the parties shall include appropriate jury verdict forms with the jury instructions to be submitted in each phase of the jury instruction process, rather than submitting these forms en masse at Phase III of the process as originally ordered. Thus, for example, for Phase 1 of this process, the parties shall include a proposed jury verdict form for the trespass claim, including special interrogatories identifying the issues to be determined by the jury in deciding this claim, but not including determination of damages. Please see the sample jury verdict forms included in the jury instruction package previously provided for a sample format.

_____

regarding the use of evidence regarding diminution in market value to prove nuisance liability. *See Cook IX*, 273 F. Supp. 2d at 1204-05, 1209.

C.    Scheduling Matters

In light of the parties' continued failure to define the issues to be tried in the class

trial, the June 16 deadline for submission of a proposed Pretrial Order, as well as the

Pretrial Conference portion of the conference set for July 16 are VACATED.[6] The dates

for submission of the proposed Pretrial Order and for the Pretrial Conference will be reset

for the fall following completion of the jury instruction process.

The parties should also be aware that I was recently informed by court

administrators that at least six weeks advance notice is required to convene a special jury

panel for the class trial. As a result, the latest date on which a decision to proceed or not

proceed with the class trial scheduled to begin January 17, 2005 is December 6, 2004.

This date, therefore, rather than the December 20 date discussed at the May 3, 2004

planning conference, is the deadline for the parties and the court to consult and determine,

based on the status of the competing tobacco trial or other relevant matters, whether the

class trial can begin as scheduled on January 17.

For the convenience of the parties and the court, Attachment A to this order sets

out the current Pretrial and Trial Schedule, reflecting the scheduling changes made in this

---

[6]    The July 16 conference will proceed as a status conference and a hearing on
the parties' proposed Phase I jury instructions and Plaintiffs' proposal regarding
determination of compensatory damages.

order and at the May 3, 2004 planning and status conference and omitting events that

have been completed.

IT IS SO ORDERED.

Dated this 27 day of May, 2004.

John L. Kane, Senior District Judge
United States District Court

18

# ATTACHMENT A

## PRETRIAL AND TRIAL SCHEDULE
(rev'd 5/27/04)

| Event or Task | Date or Due Date (all dates 2004 unless otherwise noted) |
|---|---|
| Discovery cut-off | June 30  (per Discovery Order entered Dec. 23, 2003) |
| Proposed Pretrial Order submitted | To be determined (anticipated to be in late September or early October) |
| Proposed Jury Instructions and any related objections filed by parties as follows: | |
| Phase I:  Substantive instructions on trespass claim (not including damages) and all affirmative defenses applicable to trespass claim; jury verdict form with special interrogatories for trespass claim (not including damages) | July 1 |
| Phase II:  Substantive instructions on class-wide elements of nuisance claim (not including damages) and any affirmative defenses applicable to nuisance claim; jury verdict form with special interrogatories for nuisance claim (not including damages) | July 28 |
| Phase III:  Substantive instructions on class-wide components of compensatory and exemplary damages and related jury verdict form with special interrogatories, statement of the case instruction and all non-substantive instructions | August 25 |
| Plaintiffs' proposed trial plan for compensatory damages | July 1 |

| | |
|---|---|
| Status Conference and argument (if necessary) on Phase I jury instructions and on Plaintiffs' proposed trial plan for compensatory damages | July 16 at 1:00 PM |
| Status Conference and argument on Phase II jury instructions (if necessary) | August 13 at 9:00 AM |
| Status Conference and argument on Phase III jury instructions (if necessary) | September 8 at 9:00 AM |
| Motions challenging admissibility of any expert witness testimony (*Daubert* motions) filed<br><br>       Responses due<br>       Replies due | October 1<br><br>October 22<br>November 9 |
| Status Conference (if necessary) | October 5 |
| All other motions in limine and objections to exhibits filed<br><br>       Responses due<br>       Replies due | October 22<br><br><br>November 15<br>November 30 |
| *Daubert* hearing on expert witness motions (if necessary) | November 16-18 |
| Proposed jury questionnaire submitted | To be determined (anticipated to be sometime in November) |
| Deadline for determining whether class trial will commence on January 17, 2005 as scheduled | December 6 |
| Hearing on all non-expert witness motions in limine and objections to exhibits | December 8 |
| Pretrial Order amendments, court copies of exhibits and designated deposition testimony, final witness lists, etc. filed or submitted. *See* Pretrial and Trial Procedures Memorandum, § V, at 11. | December 29 |
| Final Trial Preparation Conference | January 5, 2005 |
| Additional Trial Preparation Conference (if needed) | January 12, 2005 |
| Trial start date | January 17, 2005 |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
GREGORY C. LANGHAM, CLERK
U. S. Courthouse
901 19th Street - Room A-105
Denver, CO 80294
(303) 844-3433

Date:          **May 28, 2004**

Case No.       **Civil Action No. 90-K-181 - Merilyn Cook et al. v. Rockwell International
               Corporation, a Delaware corporation, and The Dow Chemical Company,
               a Delaware corporation**

       The undersigned hereby certifies that on the above date a true and correct copy of the
preceding **ORDER** signed by Judge John L. Kane on **May 27, 2004** was mailed to the
following:

Daniel Satriana, Esq.                     Bruce DeBoskey, Esq.
Sean R. Gallagher, Esq.                   Gary Blum, Esq.
Hall & Evans                              Stephen Kelly, Esq.
**D.C. Box No. 5**                        Silver & DeBoskey
                                          The Smith Mansion
                                          1801 York Street
                                          Denver, CO 80206


Merrill Davidoff, Esq.                    Stanley M. Chesley, Esq.
Daniel Berger, Esq.                       Waite, Schneider, Bayless
Berger & Montague                          & Chesley Co., L.P.A.
1622 Locust Street                        1513 Central Trust Tower
Philadelphia, PA 19103-6365               Cincinnati, OH 45202

R. Bruce McNew, Esq.                      Ronald Simon, Esq.
Taylor, Gruver & McNew, P.A.              Simon & Associates
3711 Kennett Pike, Suite 210              1707 N. Street, N.W.
Greenville, DE 19807                      Washington, D.C. 20036

Kenneth A. Jacobsen, Esq.                 Mark Tucker, Esq.
22 West Front Street                      The Dow Chemical Co.
Media, PA 19063                           2030 Willard H. Dow Center
                                          Midland, MI 48674

Page 2 - **Civil Action No. 90-K-181**

Joseph J. Bronesky, Esq.
Christopher Lane, Esq.
Sherman & Howard
**D.C. Box No. 12**

Patrick Hanlon, Esq.
Mark Raffman, Esq.
Shea & Gardner
1800 Massachusetts Avenue N.W.
Washington, D.C. 20036

David M. Bernick, Esq.
Doug Kurtenbach, Esq.
Mark S. Lillie, Esq.
Kirkland & Ellis
200 E. Randolph Drive
Chicago, IL 60601

John W. Suthers, Esq.
U.S. Attorney
Stephen D. Taylor, Esq.
**Assistant U.S. Attorney**

Carlotta Wells
U.S. Department of Justice
901 E Street, N.W., Room 1058
Washington, D.C. 20044

James D. Long, Esq.
U.S. Department of Energy
Rocky Flats Field Office
10808 Highway 93, Unit A
Golden, CO 80403-8200

**Tom Hilburger, Courtroom Technology
Deputy**

May 28, 2004

GREGORY C. LANGHAM, CLERK

_____
Deputy Clerk