# Exhibit 2

Public Law 703                                      CHAPTER 1073
                          AN ACT

To amend the Atomic Energy Act of 1946, as amended, and for other purposes.    August 30, 1954
                                                                                 [H. R. 9757]

    *Be it enacted by the Senate and House of Representatives of the
United States of America in Congress assembled,* That the Atomic      Atomic Energy
Energy Act of 1946, as amended, is amended to read as follows:        Act of 1954.
                                                                      60 Stat. 755.
                                                                      42 USC 1801
                                                                      note.

## "ATOMIC ENERGY ACT OF 1954

            "CHAPTER 1. DECLARATION, FINDINGS, AND PURPOSE        *Post, p. 921.*

"Sec. 1. Declaration.
"Sec. 2. Findings.
"Sec. 3. Purpose.
                      "CHAPTER 2. DEFINITIONS                    *Post, p. 922.*
"Sec. 11. Definitions.
                      "CHAPTER 3. ORGANIZATION                   *Post, p. 924.*
"Sec. 21. Atomic Energy Commission.
"Sec. 22. Members.
"Sec. 23. Office.
"Sec. 24. General Manager.
"Sec. 25. Divisions and Offices.
"Sec. 26. General Advisory Committee.
"Sec. 27. Military Liaison Committee.
"Sec. 28. Appointment of Army, Navy, or Air Force Officers.

                      "CHAPTER 4. RESEARCH                       *Post, p. 927.*
"Sec. 31. Research Assistance.
"Sec. 32. Research by the Commission.
"Sec. 33. Research for Others.

            "CHAPTER 5. PRODUCTION OF SPECIAL NUCLEAR MATERIAL   *Post, p. 928.*
"Sec. 41. Ownership and Operation of Production Facilities.
"Sec. 42. Irradiation of Materials.
"Sec. 43. Acquisition of Production Facilities.
"Sec. 44. Disposition of Energy.

                "CHAPTER 6. SPECIAL NUCLEAR MATERIAL             *Post, p. 929.*
"Sec. 51. Special Nuclear Material.
"Sec. 52. Government Ownership of All Special Nuclear Material.
"Sec. 53. Domestic Distribution of Special Nuclear Material.
"Sec. 54. Foreign Distribution of Special Nuclear Material.
"Sec. 55. Acquisition.
"Sec. 56. Fair Price.
"Sec. 57. Prohibition.
                    "CHAPTER 7. SOURCE MATERIAL                  *Post, p. 932.*
"Sec. 61. Source Material.
"Sec. 62. License for Transfers Required.
"Sec. 63. Domestic Distribution of Source Material.
"Sec. 64. Foreign Distribution of Source Material.
"Sec. 65. Reporting.
"Sec. 66. Acquisition.
"Sec. 67. Operations on Lands Belonging to the United States.
"Sec. 68. Public Lands.
"Sec. 69. Prohibition.
                  "CHAPTER 8. BYPRODUCT MATERIAL                 *Post, p. 935.*
"Sec. 81. Domestic Distribution.
"Sec. 82. Foreign Distribution of Byproduct Material.

        "CHAPTER 9. MILITARY APPLICATION OF ATOMIC ENERGY        *Post, p. 936.*
"Sec. 91. Authority.
"Sec. 92. Prohibition.

Case No. 1:90-cv-00181-JLK   Document 2374-3   filed 09/10/15   USDC Colorado   pg 3 of 44

*Post,* p. 936.                  "CHAPTER 10. ATOMIC ENERGY LICENSES

"Sec. 101. License Required.
"Sec. 102. Finding of Practical Value.
"Sec. 103. Commercial Licenses.
"Sec. 104. Medical Therapy and Research and Development.
"Sec. 105. Antitrust Provisions.
"Sec. 106. Classes of Facilities.
"Sec. 107. Operators' Licenses.
"Sec. 108. War or National Emergency.
"Sec. 109. Component Parts of Facilities.
"Sec. 110. Exclusions.

*Post,* p. 939.                  "CHAPTER 11. INTERNATIONAL ACTIVITIES

"Sec. 121. Effect of International Arrangements.
"Sec. 122. Policies Contained in International Arrangements.
"Sec. 123. Cooperation with other Nations.
"Sec. 124. International Atomic Pool.

*Post,* p. 940.                  "CHAPTER 12. CONTROL OF INFORMATION

"Sec. 141. Policy.
"Sec. 142. Classification and Declassification of Restricted Data.
"Sec. 143. Department of Defense Participation.
"Sec. 144. International Cooperation.
"Sec. 145. Restrictions.
"Sec. 146. General Provisions.

*Post,* p. 943.                  "CHAPTER 13. PATENTS AND INVENTIONS

"Sec. 151 Military Utilization.
"Sec. 152. Inventions Conceived During Commission Contracts.
"Sec. 153. Nonmilitary Utilization.
"Sec. 154. Injunctions.
"Sec. 155. Prior Art.
"Sec. 156. Commission Patent Licenses.
"Sec. 157. Compensation, Awards, and Royalties.
"Sec. 158. Monopolistic Use of Patents.
"Sec. 159. Federally Financed Research.
"Sec. 160. Saving Clause.

*Post,* p. 948.                  "CHAPTER 14. GENERAL AUTHORITY

"Sec. 161. General Provisions.
"Sec. 162. Contracts.
"Sec. 163. Advisory Committees.
"Sec. 164. Electric Utility Contracts.
"Sec. 165. Contract Practices.
"Sec. 166. Comptroller General Audit.
"Sec. 167. Claim Settlements.
"Sec. 168. Payments in lieu of Taxes.
"Sec. 169. No Subsidy.

*Post,* p. 952.         "CHAPTER 15. COMPENSATION FOR PRIVATE PROPERTY ACQUIRED

"Sec. 171. Just Compensation.
"Sec. 172. Condemnation of Real Property.
"Sec. 173. Patent Application Disclosures.
"Sec. 174. Attorney General Approval of Title.

*Post,* p. 953.        "CHAPTER 16. JUDICIAL REVIEW AND ADMINISTRATIVE PROCEDURE

"Sec. 181. General.
"Sec. 182. License Applications.
"Sec. 183. Terms of Licenses.
"Sec. 184. Inalienability of Licenses.
"Sec. 185. Construction Permits.
"Sec. 186. Revocation.
"Sec. 187. Modification of License.
"Sec. 188. Continued Operation of Facilities.
"Sec. 189. Hearings and Judicial Review.

"Chapter 17. Joint Committee on Atomic Energy          Post, p. 956.

"Sec. 201. Membership.
"Sec. 202. Authority and Duty.
"Sec. 203. Chairman.
"Sec. 204. Powers.
"Sec. 205. Staff and Assistance.
"Sec. 206. Classification of Information.
"Sec. 207. Records.

"Chapter 18. Enforcement          Post, p. 958.

"Sec. 221. General Provisions.
"Sec. 222. Violation of Specific Sections.
"Sec. 223. Violation of Sections Generally.
"Sec. 224. Communication of Restricted Data.
"Sec. 225. Receipt of Restricted Data.
"Sec. 226. Tampering with Restricted Data.
"Sec. 227. Disclosure of Restricted Data.
"Sec. 228. Statute of Limitations.
"Sec. 229. Other Laws.
"Sec. 230. Injunction Proceedings.
"Sec. 231. Contempt Proceedings.

"Chapter 19. Miscellaneous          Post, p. 960.

"Sec. 241. Transfer of Property.
"Sec. 251. Report to Congress.
"Sec. 261. Appropriations.
"Sec. 271. Agency Jurisdiction.
"Sec. 272. Applicability of Federal Power Act.
"Sec. 273. Licensing of Government Agencies.
"Sec. 281. Separability.
"Sec. 291. Short Title.

## "CHAPTER 1. DECLARATION, FINDINGS, AND PURPOSE

"Section 1. Declaration.—Atomic energy is capable of application for peaceful as well as military purposes.   It is therefore declared to be the policy of the United States that— <span>Policy of U. S.</span>

"a. the development, use, and control of atomic energy shall be directed so as to make the maximum contribution to the general welfare, subject at all times to the paramount objective of making the maximum contribution to the common defense and security; and

"b. the development, use, and control of atomic energy shall be directed so as to promote world peace, improve the general welfare, increase the standard of living, and strengthen free competition in private enterprise.

"Sec. 2. Findings.—The Congress of the United States hereby makes the following findings concerning the development, use, and control of atomic energy:

"a. The development, utilization, and control of atomic energy for military and for all other purposes are vital to the common defense and security.

"b. In permitting the property of the United States to be used by others, such use must be regulated in the national interest and in order to provide for the common defense and security and to protect the health and safety of the public.

"c. The processing and utilization of source, byproduct, and special nuclear material affect interstate and foreign commerce and must be regulated in the national interest.

"d. The processing and utilization of source, byproduct, and special nuclear material must be regulated in the national interest and in order to provide for the common defense and security and to protect the health and safety of the public.

"e. Source and special nuclear material, production facilities, and utilization facilities are affected with the public interest, and regulation by the United States of the production and utilization of atomic energy and of the facilities used in connection therewith is necessary in the national interest to assure the common defense and security and to protect the health and safety of the public.

"f. The necessity for protection against possible interstate damage occurring from the operation of facilities for the production or utilization of source or special nuclear material places the operation of those facilities in interstate commerce for the purposes of this Act.

"g. Funds of the United States may be provided for the development and use of atomic energy under conditions which will provide for the common defense and security and promote the general welfare.

"h. It is essential to the common defense and security that title to all special nuclear material be in the United States while such special nuclear material is within the United States.

*Programs.*

"Sec. 3. Purpose.—It is the purpose of this Act to effectuate the policies set forth above by providing for—

"a. a program of conducting, assisting, and fostering research and development in order to encourage maximum scientific and industrial progress;

"b. a program for the dissemination of unclassified scientific and technical information and for the control, dissemination, and declassification of Restricted Data, subject to appropriate safeguards, so as to encourage scientific and industrial progress;

"c. a program for Government control of the possession, use, and production of atomic energy and special nuclear material so directed as to make the maximum contribution to the common defense and security and the national welfare;

"d. a program to encourage widespread participation in the development and utilization of atomic energy for peaceful purposes to the maximum extent consistent with the common defense and security and with the health and safety of the public;

"e. a program of international cooperation to promote the common defense and security and to make available to cooperating nations the benefits of peaceful applications of atomic energy as widely as expanding technology and considerations of the common defense and security will permit; and

"f. a program of administration which will be consistent with the foregoing policies and programs, with international arrangements, and with agreements for cooperation, which will enable the Congress to be currently informed so as to take further legislative action as may be appropriate.

## "CHAPTER 2. DEFINITIONS

"Sec. 11. Definitions.—The intent of Congress in the definitions as given in this section should be construed from the words or phrases used in the definitions.  As used in this Act:

*"Agency of the U. S."*

"a. The term 'agency of the United States' means the executive branch of the United States, or any Government agency, or the legislative branch of the United States, or any agency, committee, commission, office, or other establishment in the legislative branch, or the judicial branch of the United States, or any office, agency, committee, commission, or other establishment in the judicial branch.

*"Agreement for cooperation."*

"b. The term 'agreement for cooperation' means any agreement with another nation or regional defense organization, authorized or permitted by sections 54, 57, 64, 82, 103, 104, or 144, and made pursuant to section 123.

"c. The term 'atomic energy' means all forms of energy released in the course of nuclear fission or nuclear transformation.   *"Atomic energy."*

"d. The term 'atomic weapon' means any device utilizing atomic energy, exclusive of the means for transporting or propelling the device (where such means is a separable and divisible part of the device), the principal purpose of which is for use as, or for development of, a weapon, a weapon prototype, or a weapon test device.   *"Atomic weapon."*

"e. The term 'byproduct material' means any radioactive material (except special nuclear material) yielded in or made radioactive by exposure to the radiation incident to the process of producing or utilizing special nuclear material.   *"Byproduct materials."*

"f. The term 'Commission' means the Atomic Energy Commission.   *"Commission."*

"g. The term 'common defense and security' means the common defense and security of the United States.

"h. The term 'defense information' means any information in any category determined by any Government agency authorized to classify information, as being information respecting, relating to, or affecting the national defense.   *"Defense information."*

"i. The term 'design' means (1) specifications, plans, drawings, blueprints, and other items of like nature; (2) the information contained therein; or (3) the research and development data pertinent to the information contained therein.   *"Design."*

"j. The term 'Government agency' means any executive department, commission, independent establishment, corporation, wholly or partly owned by the United States of America which is an instrumentality of the United States, or any board, bureau, division, service, office, officer, authority, administration, or other establishment in the executive branch of the Government.   *"Government agency."*

"k. The term 'international arrangement' means any international agreement hereafter approved by the Congress or any treaty during the time such agreement or treaty is in full force and effect, but does not include any agreement for cooperation.   *"International arrangement."*

"l. The term 'Joint Committee' means the Joint Committee on Atomic Energy.   *"Joint Committee."*

"m. The term 'operator' means any individual who manipulates the controls of a utilization or production facility.   *"Operator."*

"n. The term 'person' means (1) any individual, corporation, partnership, firm, association, trust, estate, public or private institution, group, Government agency other than the Commission, any State or any political subdivision of, or any political entity within a State, any foreign government or nation or any political subdivision of any such government or nation, or other entity; and (2) any legal successor, representative, agent, or agency of the foregoing.   *"Person."*

"o. The term 'produce', when used in relation to special nuclear material, means (1) to manufacture, make, produce, or refine special nuclear material; (2) to separate special nuclear material from other substances in which such material may be contained; or (3) to make or to produce new special nuclear material.   *"Produce."*

"p. The term 'production facility' means (1) any equipment or device determined by rule of the Commission to be capable of the production of special nuclear material in such quantity as to be of significance to the common defense and security, or in such manner as to affect the health and safety of the public; or (2) any important component part especially designed for such equipment or device as determined by the Commission.   *"Production facility."*

"q. The term 'research and development' means (1) theoretical analysis, exploration, or experimentation; or (2) the extension of investigative findings and theories of a scientific or technical nature into practical application for experimental and demonstration pur-   *"Research and development."*

poses, including the experimental production and testing of models, devices, equipment, materials, and processes.

"'Restricted Data."

"r. The term 'Restricted Data' means all data concerning (1) design, manufacture, or utilization of atomic weapons; (2) the production of special nuclear material; or (3) the use of special nuclear material in the production of energy, but shall not include data declassified or removed from the Restricted Data category pursuant to section 142.

"Source material."

"s. The term 'source material' means (1) uranium, thorium, or any other material which is determined by the Commission pursuant to the provisions of section 61 to be source material; or (2) ores containing one or more of the foregoing materials, in such concentration as the Commission may by regulation determine from time to time.

"Special nuclear material."

"t. The term 'special nuclear material' means (1) plutonium, uranium enriched in the isotope 233 or in the isotope 235, and any other material which the Commission, pursuant to the provisions of section 51, determines to be special nuclear material, but does not include source material; or (2) any material artificially enriched by any of the foregoing, but does not include source material.

"United States."

"u. The term 'United States', when used in a geographical sense, includes all Territories and possessions of the United States, and the Canal Zone.

"Utilization facility."

"v. The term 'utilization facility' means (1) any equipment or device, except an atomic weapon, determined by rule of the Commission to be capable of making use of special nuclear material in such quantity as to be of significance to the common defense and security, or in such manner as to affect the health and safety of the public, or peculiarly adapted for making use of atomic energy in such quantity as to be of significance to the common defense and security, or in such manner as to affect the health and safety of the public; or (2) any important component part especially designed for such equipment or device as determined by the Commission.

## "CHAPTER 3. ORGANIZATION

"SEC. 21. ATOMIC ENERGY COMMISSION.—There is hereby established an Atomic Energy Commission, which shall be composed of five members, each of whom shall be a citizen of the United States. The President shall designate one member of the Commission as Chairman thereof to serve as such during the pleasure of the President. The Chairman may from time to time designate any other member of the Commission as Acting Chairman to act in the place and stead of the Chairman during his absence. The Chairman (or the Acting Chairman in the absence of the Chairman) shall preside at all meetings of the Commission and a quorum for the transaction of business shall consist of at least three members present. Each member of the Commission, including the Chairman, shall have equal responsibility and authority in all decisions and actions of the Commission and shall have one vote.

Action.

Action of the Commission shall be determined by a majority vote of the members present. The Chairman (or Acting Chairman in the absence of the Chairman) shall be the official spokesman of the Commission in its relations with the Congress, Government agencies, persons, or the public, and, on behalf of the Commission, shall see to the faithful execution of the policies and decisions of the Commission, and shall report thereon to the Commission from time to time or as the Commission may direct.

Seal.

The Commission shall have an official seal which shall be judicially noticed.

Appointment terms, etc.

"SEC. 22. MEMBERS.—

"a. Members of the Commission shall be appointed by the Presi-

dent, by and with the advice and consent of the Senate.  In submitting any nomination to the Senate, the President shall set forth the experience and qualifications of the nominee.  The term of office of each member of the Commission taking office after June 30, 1950, shall be five years, except that (1) the terms of office of the members first taking office after June 30, 1950, shall expire, as designated by the President at the time of the appointment, one at the end of one year, one at the end of two years, one at the end of three years, one at the end of four years, and one at the end of five years, after June 30, 1950; and (2) any member appointed to fill a vacancy occurring prior to the expiration of the term for which his predecessor was appointed, shall be appointed for the remainder of such term.  Any member of the Commission may be removed by the President for inefficiency, neglect of duty, or malfeasance in office.  Each member, except the Chairman, shall receive compensation at the rate of $18,000 per annum; and the member designated as Chairman shall receive compensation at the rate of $20,000 per annum.

"b. No member of the Commission shall engage in any business, vocation, or employment other than that of serving as a member of the Commission.

"SEC. 23. OFFICE.—The principal office of the Commission shall be in or near the District of Columbia, but the Commission or any duly authorized representative may exercise any or all of its powers in any place; however, the Commission shall maintain an office for the service of process and papers within the District of Columbia.

"SEC. 24. GENERAL MANAGER.—There is hereby established within the Commission a General Manager, who shall discharge such of the administrative and executive functions of the Commission as the Commission may direct.  The General Manager shall be appointed by the Commission, shall serve at the pleasure of the Commission, shall be removable by the Commission, and shall receive compensation at a rate determined by the Commission, but not in excess of $20,000 per annum.

"SEC. 25. DIVISIONS AND OFFICES.—There is hereby established within the Commission—

"a.  a Division of Military Application and such other program divisions (not to exceed ten in number) as the Commission may determine to be necessary to the discharge of its responsibilities, including a division or divisions the primary responsibilities of which include the development and application of civilian uses of atomic energy.  Each such division shall be under the direction of a Director who shall be appointed by the Commission and shall receive compensation at a rate determined by the Commission, but not in excess of $16,000 per annum.  The Director of the Division of Military Application shall be an active member of the Armed Forces.  The Commission shall require each such division to exercise such of the Commission's administrative and executive powers as the Commission may determine;

"b. an Office of the General Counsel under the direction of the General Counsel who shall be appointed by the Commission and shall receive compensation at a rate determined by the Commission, but not in excess of $16,000 per annum; and

"c. an Inspection Division under the direction of a Director who shall be appointed by the Commission and shall receive compensation at a rate determined by the Commission, but not in excess of $16,000 per annum.  The Inspection Division shall be responsible for gathering information to show whether or not the contractors, licensees, and officers and employees of the Commis-

Program divisions.

Directors.

General Counsel.

Inspection Division.

sion are complying with the provisions of this Act (except those provisions for which the Federal Bureau of Investigation is responsible) and the appropriate rules and regulations of the Commission.

"SEC. 26. GENERAL ADVISORY COMMITTEE.—There shall be a General Advisory Committee to advise the Commission on scientific and technical matters relating to materials, production, and research and development, to be composed of nine members, who shall be appointed from civilian life by the President. Each member shall hold office for a term of six years, except that (a) any member appointed to fill a vacancy occurring prior to the expiration of the term for which his predecessor was appointed, shall be appointed for the remainder of such term; and (b) the terms of office of the members first taking office after August 1, 1946, shall expire, as designated by the President at the time of appointment, three at the end of two years, three at the end of four years, and three at the end of six years, after August 1, 1946. The Committee shall designate one of its own members as Chairman. The Committee shall meet at least four times in every calendar year. The members of the Committee shall receive a per diem compensation for each day spent in meetings or conferences, and all members shall receive their necessary traveling or other expenses while engaged in the work of the Committee.

"SEC. 27. MILITARY LIAISON COMMITTEE.—There is hereby established a Military Liaison Committee consisting of—

"a. a Chairman, who shall be the head thereof and who shall be appointed by the President, by and with the advice and consent of the Senate, who shall serve at the pleasure of the President, and who shall receive compensation at the rate prescribed for an Assistant Secretary of Defense; and

"b. a representative or representatives from each of the Departments of the Army, Navy, and Air Force, in equal numbers, as determined by the Secretary of Defense, to be assigned from each Department by the Secretary thereof, and who will serve without additional compensation.

The Chairman of the Committee may designate one of the members of the Committee as Acting Chairman to act during his absence. The Commission shall advise and consult with the Department of Defense, through the Committee, on all atomic energy matters which the Department of Defense deems to relate to military applications of atomic weapons or atomic energy including the development, manufacture, use, and storage of atomic weapons, the allocation of special nuclear material for military research, and the control of information relating to the manufacture or utilization of atomic weapons; and shall keep the Department of Defense, through the Committee, fully and currently informed of all such matters before the Commission. The Department of Defense, through the Committee, shall keep the Commission fully and currently informed on all matters within the Department of Defense which the Commission deems to relate to the development or

*Authority of Defense Department.* application of atomic energy. The Department of Defense, through the Committee, shall have the authority to make written recommendations to the Commission from time to time on matters relating to military applications of atomic energy as the Department of Defense may deem appropriate. If the Department of Defense at any time concludes that any request, action, proposed action, or failure to act on the part of the Commission is adverse to the responsibilities of the Department of Defense, the Secretary of Defense shall refer the matter to the President whose decision shall be final.

*Director, Division of Military Application.* "SEC. 28. APPOINTMENT OF ARMY, NAVY, OR AIR FORCE OFFICERS.— Notwithstanding the provisions of any other law, any active officer of

the Army, Navy, or Air Force may serve as Director of the Division
of Military Application without prejudice to his commissioned status
as such officer. Any such officer serving as Director of the Division
of Military Application shall receive in addition to his pay and allow-
ances, including special and incentive pays, an amount equal to the
difference between such pay and allowances, including special and
incentive pays, and the compensation prescribed in section 25. Not-
withstanding the provisions of any other law, any active or retired
officer of the Army, Navy, or Air Force may serve as Chairman of the
Military Liaison Committee without prejudice to his active or retired
status as such officer. Any such officer serving as Chairman of the
Military Liaison Committee shall receive, in addition to his pay and
allowances, including special and incentive pays, or in addition to his
retired pay. an amount equal to the difference between such pay and
allowances, including special and incentive pays, or between his retired
pay, and the compensation prescribed for the Chairman of the Military
Liaison Committee.

*Chairman, Mili-
tary Liaison Com-
mittee.*

## "CHAPTER 4. RESEARCH

"SEC. 31. RESEARCH ASSISTANCE.—
"a. The Commission is directed to exercise its powers in such man-
ner as to insure the continued conduct of research and development
activities in the fields specified below, by private or public institutions
or persons, and to assist in the acquisition of an ever-expanding fund
of theoretical and practical knowledge in such fields. To this end
the Commission is authorized and directed to make arrangements
(including contracts, agreements, and loans) for the conduct of
research and development activities relating to—
    "(1) nuclear processes;
    "(2) the theory and production of atomic energy, including
processes, materials, and devices related to such production;
    "(3) utilization of special nuclear material and radioactive
material for medical, biological, agricultural, health, or military
purposes;
    "(4) utilization of special nuclear material, atomic energy, and
radioactive material and processes entailed in the utilization or
production of atomic energy or such material for all other pur-
poses, including industrial uses, the generation of usable energy,
and the demonstration of the practical value of utilization or pro-
duction facilities for industrial or commercial purposes; and
    "(5) the protection of health and the promotion of safety
during research and production activities.
"b. The Commission may (1) make arrangements pursuant to this
section, without regard to the provisions of section 3709 of the Revised
Statutes, as amended, upon certification by the Commission that such
action is necessary in the interest of the common defense and security,
or upon a showing by the Commission that advertising is not reasonably
practicable; (2) make partial and advance payments under such
arrangements; and (3) make available for use in connection therewith
such of its equipment and facilities as it may deem desirable.
"c. The arrangements made pursuant to this section shall contain
such provisions (1) to protect health, (2) to minimize danger to life or
property, and (3) to require the reporting and to permit the inspection
of work performed thereunder, as the Commission may determine.
No such arrangement shall contain any provisions or conditions which
prevent the dissemination of scientific or technical information, except
to the extent such dissemination is prohibited by law.

*41 USC 5.*

Case No. 1:90-cv-00181-JLK   Document 2374-3   filed 09/10/15   USDC Colorado   pg 11 of 44

"Sec. 32. Research by the Commission.—The Commission is authorized and directed to conduct, through its own facilities, activities and studies of the types specified in section 31.

"Sec. 33. Research for Others.—Where the Commission finds private facilities or laboratories are inadequate to the purpose, it is authorized to conduct for other persons, through its own facilities, such of those activities and studies of the types specified in section 31 as it deems appropriate to the development of atomic energy. The Commission is authorized to determine and make such charges as in its discretion may be desirable for the conduct of such activities and studies.

## "CHAPTER 5. PRODUCTION OF SPECIAL NUCLEAR MATERIAL

"Sec. 41. Ownership and Operation of Production Facilities.—

"a. Ownership of production facilities.—The Commission, as agent of and on behalf of the United States, shall be the exclusive owner of all production facilities other than facilities which (1) are useful in the conduct of research and development activities in the fields specified in section 31, and do not, in the opinion of the Commission, have a potential production rate adequate to enable the user of such facilities to produce within a reasonable period of time a sufficient quantity of special nuclear material to produce an atomic weapon; or (2) are licensed by the Commission pursuant to section 103 or 104.

"b. Operation of the commission's production facilities.— The Commission is authorized and directed to produce or to provide for the production of special nuclear material in its own production facilities. To the extent deemed necessary, the Commission is authorized to make, or to continue in effect, contracts with persons obligating them to produce special nuclear material in facilities owned by the Commission. The Commission is also authorized to enter into research and development contracts authorizing the contractor to produce special nuclear material in facilities owned by the Commission to the extent that the production of such special nuclear material may be incident to the conduct of research and development activities under such contracts. Any contract entered into under this section shall contain provisions (1) prohibiting the contractor from subcontracting any part of the work he is obligated to perform under the contract, except as authorized by the Commission; and (2) obligating the contractor (A) to make such reports pertaining to activities under the contract to the Commission as the Commission may require, (B) to submit to inspection by employees of the Commission of all such activities, and (C) to comply with all safety and security regulations which may be prescribed by the Commission. Any contract made under the provisions of this paragraph may be made without regard to the provisions of section 3709 of the Revised Statutes, as amended, upon certification by the Commission that such action is necessary in the interest of the common defense and security, or upon a showing by the Commission that advertising is not reasonably practicable. Partial and advance payments may be made under such contracts. The President shall determine in writing at least once each year the quantities of special nuclear material to be produced under this section and shall specify in such determination the quantities of special nuclear material to be available for distribution by the Commission pursuant to section 53 or 54.

41 USC 5.

"c. OPERATION OF OTHER PRODUCTION FACILITIES.—Special nuclear material may be produced in the facilities which under this section are not required to be owned by the Commission.

"SEC. 42. IRRADIATION OF MATERIALS.—The Commission and persons lawfully producing or utilizing special nuclear material are authorized to expose materials of any kind to the radiation incident to the processes of producing or utilizing special nuclear material.

"SEC. 43. ACQUISITION OF PRODUCTION FACILITIES.—The Commission is authorized to purchase any interest in facilities for the production of special nuclear materials, or in real property on which such facilities are located, without regard to the provisions of section 3709 of the Revised Statutes, as amended, upon certification by the Commission that such action is necessary in the interest of the common defense and security, or upon a showing by the Commission that advertising is not reasonably practicable. Partial and advance payments may be made under contracts for such purposes. The Commission is further authorized to requisition, condemn, or otherwise acquire any interest in such production facilities, or to condemn or otherwise acquire such real property, and just compensation shall be made therefor.

41 USC 5.

"SEC. 44. DISPOSITION OF ENERGY.—If energy is produced at production facilities of the Commission or is produced in experimental utilization facilities of the Commission, such energy may be used by the Commission, or transferred to other Government agencies, or sold to publicly, cooperatively, or privately owned utilities or users at reasonable and nondiscriminatory prices. If the energy produced is electric energy, the price shall be subject to regulation by the appropriate agency having jurisdiction. In contracting for the disposal of such energy, the Commission shall give preference and priority to public bodies and cooperatives or to privately owned utilities providing electric utility services to high cost areas not being served by public bodies or cooperatives. Nothing in this Act shall be construed to authorize the Commission to engage in the sale or distribution of energy for commercial use except such energy as may be produced by the Commission incident to the operation of research and development facilities of the Commission, or of production facilities of the Commission.

## "CHAPTER 6. SPECIAL NUCLEAR MATERIAL

"SEC. 51. SPECIAL NUCLEAR MATERIAL.—The Commission may determine from time to time that other material is special nuclear material in addition to that specified in the definition as special nuclear material. Before making any such determination, the Commission must find that such material is capable of releasing substantial quantities of atomic energy and must find that the determination that such material is special nuclear material is in the interest of the common defense and security, and the President must have expressly assented in writing to the determination. The Commission's determination, together with the assent of the President, shall be submitted to the Joint Committee and a period of thirty days shall elapse while Congress is in session (in computing such thirty days, there shall be excluded the days on which either House is not in session because of an adjournment for more than three days) before the determination of the Commission may become effective: *Provided, however*, That the Joint Committee, after having received such determination, may by resolution in writing, waive the conditions of or all or any portion of such thirty-day period.

"SEC. 52. GOVERNMENT OWNERSHIP OF ALL SPECIAL NUCLEAR MATERIAL.—All rights, title, and interest in or to any special nuclear

material within or under the jurisdiction of the United States, now or
hereafter produced, shall be the property of the United States and
shall be administered and controlled by the Commission as agent of
and on behalf of the United States by virtue of this Act. Any person
owning any interest in any special nuclear material at the time when
such material is hereafter determined to be a special nuclear material
shall be paid just compensation therefor. Any person who lawfully
produces any special nuclear material, except pursuant to a contract
with the Commission under the provisions of section 31 or 41, shall
be paid a fair price, determined pursuant to section 56, for producing
such material.

"SEC. 53. DOMESTIC DISTRIBUTION OF SPECIAL NUCLEAR MATE-
RIAL.—

Licenses.

"a. The Commission is authorized to issue licenses for the possession
of, to make available for the period of the license, and to distribute
special nuclear material within the United States to qualified appli-
cants requesting such material—

"(1) for the conduct of research and development activities of
the types specified in section 31;

"(2) for use in the conduct of research and development activi-
ties or in medical therapy under a license issued pursuant to
section 104; or

"(3) for use under a license issued pursuant to section 103.

"b. The Commission shall establish, by rule, minimum criteria for
the issuance of specific or general licenses for the distribution of special
nuclear material depending upon the degree of importance to the com-
mon defense and security or to the health and safety of the public of—

"(1) the physical characteristics of the special nuclear material
to be distributed;

"(2) the quantities of special nuclear material to be distributed;
and

"(3) the intended use of the special nuclear material to be
distributed.

Charges.

"c. The Commission may make a reasonable charge, determined pur-
suant to this section, for the use of special nuclear material licensed
and distributed under subsection 53 a. (1) or subsection 53 a. (2) and
shall make a reasonable charge determined pursuant to this section for
the use of special nuclear material licensed and distributed under
subsection 53 a. (3).   The Commission shall establish criteria in writ-
ing for the determination of whether a charge will be made for the use
of special nuclear material licensed and distributed under subsection
53 a. (1) or subsection 53 a. (2), considering, among other things,
whether the licensee is a nonprofit or eleemosynary institution and the
purposes for which the special nuclear material will be used.

"d. In determining the reasonable charge to be made by the Com-
mission for the use of special nuclear material distributed to licensees
of utilization or production facilities licensed pursuant to section 103
or 104, in addition to consideration of the cost thereof, the Commission
shall take into consideration—

"(1) the use to be made of the special nuclear material;

"(2) the extent to which the use of the special nuclear material
will advance the development of the peaceful uses of atomic
energy;

"(3) the energy value of the special nuclear material in the
particular use for which the license is issued;

"(4) whether the special nuclear material is to be used in
facilities licensed pursuant to section 103 or 104.  In this respect,
the Commission shall, insofar as practicable, make uniform, non-
discriminatory charges for the use of special nuclear material
distributed to facilities licensed pursuant to section 103; and

"(5) with respect to special nuclear material consumed in a facility licensed pursuant to section 103, the Commission shall make a further charge based on the cost to the Commission, as estimated by the Commission, or the average fair price paid for the production of such special nuclear material as determined by section 56, whichever is lower.

"e. Each license issued pursuant to this section shall contain and be subject to the following conditions— *License conditions.*

"(1) title to all special nuclear material shall at all times be in the United States;

"(2) no right to the special nuclear material shall be conferred by the license except as defined by the license;

"(3) neither the license nor any right under the license shall be assigned or otherwise transferred in violation of the provisions of this Act;

"(4) all special nuclear material shall be subject to the right of recapture or control reserved by section 108 and to all other provisions of this Act;

"(5) no special nuclear material may be used in any utilization or production facility except in accordance with the provisions of this Act;

"(6) special nuclear material shall be distributed only on terms, as may be established by rule of the Commission, such that no user will be permitted to construct an atomic weapon;

"(7) special nuclear material shall be distributed only pursuant to such safety standards as may be established by rule of the Commission to protect health and to minimize danger to life or property; and

"(8) the licensee will hold the United States and the Commission harmless from any damages resulting from the use or possession of special nuclear material by the licensee.

"f. The Commission is directed to distribute within the United States sufficient special nuclear material to permit the conduct of widespread independent research and development activities to the maximum extent practicable and within the limitations set by the President pursuant to section 41. In the event that applications for special nuclear material exceed the amount available for distribution, preference shall be given to those activities which are most likely, in the opinion of the Commission, to contribute to basic research, to the development of peacetime uses of atomic energy, or to the economic and military strength of the Nation. *Distribution for independent research, etc.*

"SEC. 54. FOREIGN DISTRIBUTION OF SPECIAL NUCLEAR MATERIAL.— The Commission is authorized to cooperate with any nation by distributing special nuclear material and to distribute such special nuclear material, pursuant to the terms of an agreement for cooperation to which such nation is a party and which is made in accordance with section 123.

"SEC. 55. ACQUISITION.—The Commission is authorized to purchase or otherwise acquire any special nuclear material or any interest therein outside the United States without regard to the provisions of section 3709 of the Revised Statutes, as amended, upon certification by the Commission that such action is necessary in the interest of the common defense and security, or upon a showing by the Commission that advertising is not reasonably practicable. Partial and advance payments may be made under contracts for such purposes. *41 USC 5.*

"SEC. 56. FAIR PRICE.—In determining the fair price to be paid by the Commission pursuant to section 52 for the production of any special nuclear material, the Commission shall take into consideration the value of the special nuclear material for its intended use by the United

States and may give such weight to the actual cost of producing that material as the Commission finds to be equitable. The fair price, as may be determined by the Commission, shall apply to all licensed producers of the same material: *Provided, however,* That the Commission may establish guaranteed fair prices for all special nuclear material delivered to the Commission for such period of time as it may deem necessary but not to exceed seven years.

"SEC. 57. PROHIBITION.—

"a. It shall be unlawful for any person to—

"(1) possess or transfer any special nuclear material which is the property of the United States except as authorized by the Commission pursuant to subsection 53 a.;

"(2) tranfer or receive any special nuclear material in interstate commerce except as authorized by the Commission pursuant to subsection 53 a., or export from or import into the United States any special nuclear material; and

"(3) directly or indirectly engage in the production of any special nuclear material outside of the United States except (A) under an agreement for cooperation made pursuant to section 123, or (B) upon authorization by the Commission after a determination that such activity will not be inimical to the interest of the United States.

"b. The Commission shall not distribute any special nuclear material—

"(1) to any person for a use which is not under the jurisdiction of the United States except pursuant to the provisions of section 54; or

"(2) to any person within the United States, if the Commission finds that the distribution of such special nuclear material to such person would be inimical to the common defense and security.

## "CHAPTER 7. SOURCE MATERIAL

"SEC. 61. SOURCE MATERIAL.—The Commission may determine from time to time that other material is source material in addition to those specified in the definition of source material. Before making such determination, the Commission must find that such material is essential to the production of special nuclear material and must find that the determination that such material is source material is in the interest of the common defense and security, and the President must have expressly assented in writing to the determination. The Commission's determination, together with the assent of the President, shall be submitted to the Joint Committee and a period of thirty days shall elapse while Congress is in session (in computing such thirty days, there shall be excluded the days on which either House is not in session because of an adjournment of more than three days) before the determination of the Commission may become effective: *Provided, however,* That the Joint Committee, after having received such determination, may by resolution in writing waive the conditions of or all or any portion of such thirty-day period.

*Submittal of determination to Joint Committee.*

"SEC. 62. LICENSE FOR TRANSFERS REQUIRED.—Unless authorized by a general or specific license issued by the Commission, which the Commission is hereby authorized to issue, no person may transfer or receive in interstate commerce, transfer, deliver, receive possession of or title to, or import into or export from the United States any source material after removal from its place of deposit in nature, except that licenses shall not be required for quantities of source material which, in the opinion of the Commission, are unimportant.

"SEC. 63. DOMESTIC DISTRIBUTION OF SOURCE MATERIAL.—

"a. The Commission is authorized to issue licenses for and to distribute source material within the United States to qualified applicants requesting such material— *Licenses.*

"(1) for the conduct of research and development activities of the types specified in section 31;

"(2) for use in the conduct of research and development activities or in medical therapy under a license issued pursuant to section 104;

"(3) for use under a license issued pursuant to section 103; or

"(4) for any other use approved by the Commission as an aid to science or industry.

"b. The Commission shall establish, by rule, minimum criteria for the issuance of specific or general licenses for the distribution of source material depending upon the degree of importance to the common defense and security or to the health and safety of the public of—

"(1) the physical characteristics of the source material to be distributed;

"(2) the quantities of source material to be distributed; and

"(3) the intended use of the source material to be distributed.

"c. The Commission may make a reasonable charge determined *Charges.* pursuant to subsection 161 m. for the source material licensed and distributed under subsection 63 a. (1), subsection 63 a. (2), or subsection 63 a. (4), and shall make a reasonable charge determined pursuant to subsection 161 m., for the source material licensed and distributed under subsection 63 a. (3). The Commission shall establish criteria in writing for the determination of whether a charge will be made for the source material licensed and distributed under subsection 63 a. (1), subsection 63 a. (2), or subsection 63 a. (4), considering, among other things, whether the licensee is a nonprofit or eleemosynary institution and the purposes for which the source material will be used.

"SEC. 64. FOREIGN DISTRIBUTION OF SOURCE MATERIAL.—The Commission is authorized to cooperate with any nation by distributing source material and to distribute source material pursuant to the terms of an agreement for cooperation to which such nation is a party and which is made in accordance with section 123. The Commission is also authorized to distribute source material outside of the United States upon a determination by the Commission that such activity will not be inimical to the interests of the United States.

"SEC. 65. REPORTING.—The Commission is authorized to issue such rules, regulations, or orders requiring reports of ownership, possession, extraction, refining, shipment, or other handling of source material as it may deem necessary, except that such reports shall not be required with respect to (a) any source material prior to removal from its place of deposit in nature, or (b) quantities of source material which in the opinion of the Commission are unimportant or the reporting of which will discourage independent prospecting for new deposits.

"SEC. 66. ACQUISITION.—The Commission is authorized and directed, to the extent it deems necessary to effectuate the provisions of this Act—

"a. to purchase, take, requisition, condemn, or otherwise acquire supplies of source material;

"b. to purchase, condemn, or otherwise acquire any interest in real property containing deposits of source material; and

"c. to purchase, condemn, or otherwise acquire rights to enter upon any real property deemed by the Commission to have possibilities of containing deposits of source material in order to conduct prospecting and exploratory operations for such deposits.

Any purchase made under this section may be made without regard to

934   PUBLIC LAW 703–AUG. 30, 1954   [68 Stat.

41 USC 5.

the provisions of section 3709 of the Revised Statutes, as amended, upon certification by the Commission that such action is necessary in the interest of the common defense and security, or upon a showing by the Commission that advertising is not reasonably practicable. Partial and advanced payments may be made under contracts for such purposes. The Commission may establish guaranteed prices for all source material delivered to it within a specified time. Just compensation shall be made for any right, property, or interest in property taken, requisitioned, condemned, or otherwise acquired under this section.

"Sec. 67. Operations on Lands Belonging to the United States.— The Commission is authorized, to the extent it deems necessary to effectuate the provisions of this Act, to issue leases or permits for prospecting for, exploration for, mining of, or removal of deposits of source material in lands belonging to the United States: *Provided, however*, That notwithstanding any other provisions of law, such leases or permits may be issued for lands administered for national park, monument, and wildlife purposes only when the President by Executive Order declares that the requirements of the common defense and security make such action necessary.

"Sec. 68. Public Lands.—

"a. No individual, corporation, partnership, or association, which had any part, directly or indirectly, in the development of the atomic energy program, may benefit by any location, entry, or settlement upon the public domain made after such individual, corporation, partnership, or association took part in such project, if such individual, corporation, partnership, or association, by reason of having had such part in the development of the atomic energy program, acquired confidential official information as to the existence of deposits of such uranium, thorium, or other materials in the specific lands upon which such location, entry, or settlement is made, and subsequent to the date of the enactment of this Act made such location, entry, or settlement or caused the same to be made for his, or its, or their benefit.

"b. In cases where any patent, conveyance, lease, permit, or other authorization has been issued, which reserved to the United States source materials and the right to enter upon the land and prospect for, mine, and remove the same, the head of the Government agency which issued the patent, conveyance, lease, permit, or other authorization shall, on application of the holder thereof, issue a new or supplemental patent, conveyance, lease, permit, or other authorization without such reservation. If any rights have been granted by the United States pursuant to any such reservation then such patent shall be made subject to those rights, but the patentee shall be subrogated to the rights of the United States.

60 Stat. 755.
42 USC 1801 note, 1805(b)(7).
67 Stat. 539.
30 USC 501-505, 503.

"c. Notwithstanding the provisions of the Atomic Energy Act of 1946, as amended, and particularly section 5 (b) (7) thereof, or the provisions of the Act of August 12, 1953 (67 Stat. 539), and particularly section 3 thereof, any mining claim, heretofore located under the mining laws of the United States, for or based upon a discovery of a mineral deposit which is a source material and which, except for the possible contrary construction of said Atomic Energy Act, would have been locatable under such mining laws, shall, insofar as adversely affected by such possible contrary construction, be valid and effective, in all respects to the same extent as if said mineral deposit were a locatable mineral deposit other than a source material.

"Sec. 69. Prohibition.—The Commission shall not license any person to transfer or deliver, receive possession of or title to, or import into or export from the United States any source material if, in the opinion of the Commission, the issuance of a license to such person for such

purpose would be inimical to the common defense and security or the health and safety of the public.

## "CHAPTER 8. BYPRODUCT MATERIAL

"Sec. 81. Domestic Distribution.—No person may transfer or receive in interstate commerce, manufacture, produce, transfer, acquire, own, possess, import, or export any byproduct material, except to the extent authorized by this section or by section 82. The Commission is authorized to issue general or specific licenses to applicants seeking to use byproduct material for research or development purposes, for medical therapy, industrial uses, agricultural uses, or such other useful applications as may be developed. The Commission may distribute, sell, loan, or lease such byproduct material as it owns to licensees with or without charge: *Provided, however*, That, for byproduct material to be distributed by the Commission for a charge, the Commission shall establish prices on such equitable basis as, in the opinion of the Commission, (a) will provide reasonable compensation to the Government for such material, (b) will not discourage the use of such material or the development of sources of supply of such material independent of the Commission, and (c) will encourage research and development. In distributing such material, the Commission shall give preference to applicants proposing to use such material either in the conduct of research and development or in medical therapy. Licensees of the Commission may distribute byproduct material only to applicants therefor who are licensed by the Commission to receive such byproduct material. The Commission shall not permit the distribution of any byproduct material to any licensee, and shall recall or order the recall of any distributed material from any licensee, who is not equipped to observe or who fails to observe such safety standards to protect health as may be established by the Commission or who uses such material in violation of law or regulation of the Commission or in a manner other than as disclosed in the application therefor or approved by the Commission. The Commission is authorized to establish classes of byproduct material and to exempt certain classes or quantities of material or kinds of uses or users from the requirements for a license set forth in this section when it makes a finding that the exemption of such classes or quantities of such material or such kinds of uses or users will not constitute an unreasonable risk to the common defense and security and to the health and safety of the public.

"Sec. 82. Foreign Distribution of Byproduct Material.—

"a. The Commission is authorized to cooperate with any nation by distributing byproduct material, and to distribute byproduct material, pursuant to the terms of an agreement for cooperation to which such nation is party and which is made in accordance with section 123.

"b. The Commission is also authorized to distribute byproduct material to any person outside the United States upon application therefor by such person and demand such charge for such material as would be charged for the material if it were distributed within the United States: *Provided, however*, That the Commission shall not distribute any such material to any person under this section if, in its opinion, such distribution would be inimical to the common defense and security: *And provided further*, That the Commission may require such reports regarding the use of material distributed pursuant to the provisions of this section as it deems necessary.

"c. The Commission is authorized to license others to distribute byproduct material to any person outside the United States under the same conditions, except as to charges, as would be applicable if the material were distributed by the Commission.

## "CHAPTER 9. MILITARY APPLICATION OF ATOMIC ENERGY

"SEC. 91. AUTHORITY.—

"a. The Commission is authorized to—

"(1) conduct experiments and do research and development work in the military application of atomic energy; and

"(2) engage in the production of atomic weapons, or atomic weapon parts, except that such activities shall be carried on only to the extent that the express consent and direction of the President of the United States has been obtained, which consent and direction shall be obtained at least once each year.

"b. The President from time to time may direct the Commission (1) to deliver such quantities of special nuclear material or atomic weapons to the Department of Defense for such use as he deems necessary in the interest of national defense, or (2) to authorize the Department of Defense to manufacture, produce, or acquire any atomic weapon or utilization facility for military purposes: *Provided, however,* That such authorization shall not extend to the production of special nuclear material other than that incidental to the operation of such utilization facilities.

"SEC. 92. PROHIBITION.—It shall be unlawful for any person to transfer or receive in interstate commerce, manufacture, produce, transfer, acquire, possess, import, or export any atomic weapon, except as may be authorized by the Commission pursuant to the provisions of section 91. Nothing in this section shall be deemed to modify the provisions of subsection 31 a. or section 101.

## "CHAPTER 10. ATOMIC ENERGY LICENSES

"SEC. 101. LICENSE REQUIRED.—It shall be unlawful, except as provided in section 91, for any person within the United States to transfer or receive in interstate commerce, manufacture, produce, transfer, acquire, possess, import, or export any utilization or production facility except under and in accordance with a license issued by the Commission pursuant to section 103 or 104.

"SEC. 102. FINDING OF PRACTICAL VALUE.—Whenever the Commission has made a finding in writing that any type of utilization or production facility has been sufficiently developed to be of practical value for industrial or commercial purposes, the Commission may thereafter issue licenses for such type of facility pursuant to section 103.

"SEC. 103. COMMERCIAL LICENSES.—

"a. Subsequent to a finding by the Commission as required in section 102, the Commission may issue licenses to transfer or receive in interstate commerce, manufacture, produce, transfer, acquire, possess, import, or export under the terms of an agreement for cooperation arranged pursuant to section 123, such type of utilization or production facility. Such licenses shall be issued in accordance with the provisions of chapter 16 and subject to such conditions as the Commission may by rule or regulation establish to effectuate the purposes and provisions of this Act.

"b. The Commission shall issue such licenses on a nonexclusive basis to persons applying therefor (1) whose proposed activities will serve a useful purpose proportionate to the quantities of special nuclear material or source material to be utilized; (2) who are equipped to observe and who agree to observe such safety standards to protect health and to minimize danger to life or property as the Commission

may by rule establish; and (3) who agree to make available to the Commission such technical information and data concerning activities under such licenses as the Commission may determine necessary to promote the common defense and security and to protect the health and safety of the public. All such information may be used by the Commission only for the purposes of the common defense and security and to protect the health and safety of the public.

"c. Each such license shall be issued for a specified period, as determined by the Commission, depending on the type of activity to be licensed, but not exceeding forty years, and may be renewed upon the expiration of such period.

"d. No license under this section may be given to any person for activities which are not under or within the jurisdiction of the United States, except for the export of production or utilization facilities under terms of an agreement for cooperation arranged pursuant to section 123, or except under the provisions of section 109. No license may be issued to any corporation or other entity if the Commission knows or has reason to believe it is owned, controlled, or dominated by an alien, a foreign corporation, or a foreign government. In any event, no license may be issued to any person within the United States if, in the opinion of the Commission, the issuance of a license to such person would be inimical to the common defense and security or to the health and safety of the public.

"SEC. 104. MEDICAL THERAPY AND RESEARCH AND DEVELOPMENT.—

"a. The Commission is authorized to issue licenses to persons applying therefor for utilization facilities for use in medical therapy. In issuing such licenses the Commission is directed to permit the widest amount of effective medical therapy possible with the amount of special nuclear material available for such purposes and to impose the minimum amount of regulation consistent with its obligations under this Act to promote the common defense and security and to protect the health and safety of the public.

"b. The Commission is authorized to issue licenses to persons applying therefor for utilization and production facilities involved in the conduct of research and development activities leading to the demonstration of the practical value of such facilities for industrial or commercial purposes. In issuing licenses under this subsection, the Commission shall impose the minimum amount of such regulations and terms of license as will permit the Commission to fulfill its obligations under this Act to promote the common defense and security and to protect the health and safety of the public and will be compatible with the regulations and terms of license which would apply in the event that a commercial license were later to be issued pursuant to section 103 for that type of facility. In issuing such licenses, priority shall be given to those activities which will, in the opinion of the Commission, lead to major advances in the application of atomic energy for industrial or commercial purposes.

"c. The Commission is authorized to issue licenses to persons applying therefor for utilization and production facilities useful in the conduct of research and development activities of the types specified in section 31 and which are not facilities of the type specified in subsection 104 b. The Commission is directed to impose only such minimum amount of regulation of the licensee as the Commission finds will permit the Commission to fulfill its obligations under this Act to promote the common defense and security and to protect the health and safety of the public and will permit the conduct of widespread and diverse research and development.

"d. No license under this section may be given to any person for activities which are not under or within the jurisdiction of the United States, except for the export of production or utilization facilities

938          PUBLIC LAW 703—AUG. 30, 1954          [68 Stat.

under terms of an agreement for cooperation arranged pursuant to section 123 or except under the provisions of section 109. No license may be issued to any corporation or other entity if the Commission knows or has reason to believe it is owned, controlled, or dominated by an alien, a foreign corporation, or a foreign government. In any event, no license may be issued to any person within the United States if, in the opinion of the Commission, the issuance of a license to such person would be inimical to the common defense and security or to the health and safety of the public.

"Sec. 105. Antitrust Provisions.—

"a. Nothing contained in this Act, including the provisions which vest title to all special nuclear material in the United States, shall relieve any person from the operation of the following Acts, as amended, 'An Act to protect trade and commerce against unlawful restraints and monopolies' approved July second, eighteen hundred and ninety; sections seventy-three to seventy-seven, inclusive, of an Act entitled 'An Act to reduce taxation, to provide revenue for the Government, and for other purposes' approved August twenty-seven, eighteen hundred and ninety-four; 'An Act to supplement existing laws against unlawful restraints and monopolies, and for other purposes' approved October fifteen, nineteen hundred and fourteen; and 'An Act to create a Federal Trade Commission, to define its powers and duties, and for other purposes' approved September twenty-six, nineteen hundred and fourteen. In the event a licensee is found by a court of competent jurisdiction, either in an original action in that court or in a proceeding to enforce or review the findings or orders of any Government agency having jurisdiction under the laws cited above, to have violated any of the provisions of such laws in the conduct of the licensed activity, the Commission may suspend, revoke, or take such other action as it may deem necessary with respect to any license issued by the Commission under the provisions of this Act.

"b. The Commission shall report promptly to the Attorney General any information it may have with respect to any utilization of special nuclear material or atomic energy which appears to violate or to tend toward the violation of any of the foregoing Acts, or to restrict free competition in private enterprise.

"c. Whenever the Commission proposes to issue any license to any person under section 103, it shall notify the Attorney General of the proposed license and the proposed terms and conditions thereof, except such classes or types of licenses, as the Commission, with the approval of the Attorney General, may determine would not significantly affect the licensee's activities under the antitrust laws as specified in subsection 105 a. Within a reasonable time, in no event to exceed 90 days after receiving such notification, the Attorney General shall advise the Commission whether, insofar as he can determine, the proposed license would tend to create or maintain a situation inconsistent with the antitrust laws, and such advice shall be published in the Federal Register. Upon the request of the Attorney General, the Commission shall furnish or cause to be furnished such information as the Attorney General determines to be appropriate or necessary to enable him to give the advice called for by this section.

"Sec. 106. Classes of Facilities.—The Commission may—

"a. group the facilities licensed either under section 103 or under section 104 into classes which may include either production or utilization facilities or both, upon the basis of the similarity of operating and technical characteristics of the facilities;

"b. define the various activities to be carried on at each such class of facility; and

"c. designate the amounts of special nuclear material available for use by each such facility.

26 Stat. 209.
15 USC 1-7.

28 Stat. 570.
15 USC 8-11.
38 Stat. 730.
15 USC 12-27,
44; 18 USC 402;
29 USC 52, 53.
38 Stat. 717.
15 USC 41-48.

Publication in FR.

"SEC. 107. OPERATORS' LICENSES.—The Commission shall—

"a. prescribe uniform conditions for licensing individuals as operators of any of the various classes of production and utilization facilities licensed in this Act;

"b. determine the qualifications of such individuals;

"c. issue licenses to such individuals in such form as the Commission may prescribe; and

"d. suspend such licenses for violations of any provision of this Act or any rule or regulation issued thereunder whenever the Commission deems such action desirable.

"SEC. 108. WAR OR NATIONAL EMERGENCY.—Whenever the Congress declares that a state of war or national emergency exists, the Commission is authorized to suspend any licenses granted under this Act if in its judgment such action is necessary to the common defense and security. The Commission is authorized during such period, if the Commission finds it necessary to the common defense and security, to order the recapture of any special nuclear material distributed under the provisions of subsection 53 a., or to order the operation of any facility licensed under section 103 or 104, and is authorized to order the entry into any plant or facility in order to recapture such material, or to operate such facility. Just compensation shall be paid for any damages caused by the recapture of any special nuclear material or by the operation of any such facility.

"SEC. 109. COMPONENT PARTS OF FACILITIES.—With respect to those utilization and production facilities which are so determined by the Commission pursuant to subsection 11 p. (2) or 11 v. (2) the Commission may (a) issue general licenses for activities required to be licensed under section 101, if the Commission determines in writing that such general licensing will not constitute an unreasonable risk to the common defense and security, and (b) issue licenses for the export of such facilities, if the Commission determines in writing that each export will not constitute an unreasonable risk to the common defense and security.

"SEC. 110. EXCLUSIONS.—Nothing in this chapter shall be deemed—

"a. to require a license for (1) the processing, fabricating, or refining of special nuclear material, or the separation of special nuclear material, or the separation of special nuclear material from other substances, under contract with and for the account of the Commission; or (2) the construction or operation of facilities under contract with and for the account of the Commission; or

"b. to require a license for the manufacture, production, or acquisition by the Department of Defense of any utilization facility authorized pursuant to section 91, or for the use of such facility by the Department of Defense or a contractor thereof.

## "CHAPTER 11. INTERNATIONAL ACTIVITIES

"SEC. 121. EFFECT OF INTERNATIONAL ARRANGEMENTS.—Any provision of this Act or any action of the Commission to the extent and during the time that it conflicts with the provisions of any international arrangement made after the date of enactment of this Act shall be deemed to be of no force or effect.

"SEC. 122. POLICIES CONTAINED IN INTERNATIONAL ARRANGEMENTS.—In the performance of its functions under this Act, the Commission shall give maximum effect to the policies contained in any international arrangement made after the date of enactment of this Act.

"Sec. 123. Cooperation With Other Nations.—No cooperation with any nation or regional defense organization pursuant to sections 54, 57, 64, 82, 103, 104, or 144 shall be undertaken until—

"a. the Commission or, in the case of those agreements for cooperation arranged pursuant to subsection 144 b., the Department of Defense has submitted to the President the proposed agreement for cooperation, together with its recommendation thereon, which proposed agreement shall include (1) the terms, conditions, duration, nature, and scope of the cooperation; (2) a guaranty by the cooperating party that security safeguards and standards as set forth in the agreement for cooperation will be maintained; (3) a guaranty by the cooperating party that any material to be transferred pursuant to such agreement will not be used for atomic weapons, or for research on or development of atomic weapons, or for any other military purpose; and (4) a guaranty by the cooperating party that any material or any Restricted Data to be transferred pursuant to the agreement for cooperation will not be transferred to unauthorized persons or beyond the jurisdiction of the cooperating party, except as specified in the agreement for cooperation;

"b. the President has approved and authorized the execution of the proposed agreement for cooperation, and has made a determination in writing that the performance of the proposed agreement will promote and will not constitute an unreasonable risk to the common defense and security; and

"c. the proposed agreement for cooperation, together with the approval and the determination of the President, has been submitted to the Joint Committee and a period of thirty days has elapsed while Congress is in session (in computing such thirty days, there shall be excluded the days on which either House is not in session because of an adjournment of more than three days).

"Sec. 124. International Atomic Pool.—The President is authorized to enter into an international arrangement with a group of nations providing for international cooperation in the nonmilitary applications of atomic energy and he may thereafter cooperate with that group of nations pursuant to sections 54, 57, 64, 82, 103, 104, or 144 a.: *Provided, however*, That the cooperation is undertaken pursuant to an agreement for cooperation entered into in accordance with section 123.

## "CHAPTER 12. CONTROL OF INFORMATION

"Sec. 141. Policy.—It shall be the policy of the Commission to control the dissemination and declassification of Restricted Data in such a manner as to assure the common defense and security. Consistent with such policy, the Commission shall be guided by the following principles:

"a. Until effective and enforceable international safeguards against the use of atomic energy for destructive purposes have been established by an international arrangement, there shall be no exchange of Restricted Data with other nations except as authorized by section 144; and

"b. The dissemination of scientific and technical information relating to atomic energy should be permitted and encouraged so as to provide that free interchange of ideas and criticism which is essential to scientific and industrial progress and public understanding and to enlarge the fund of technical information.

"SEC. 142. CLASSIFICATION AND DECLASSIFICATION OF RESTRICTED DATA.—

"a. The Commission shall from time to time determine the data, within the definition of Restricted Data, which can be published without undue risk to the common defense and security and shall thereupon cause such data to be declassified and removed from the category of Restricted Data.

"b. The Commission shall maintain a continuous review of Restricted Data and of any Classification Guides issued for the guidance of those in the atomic energy program with respect to the areas of Restricted Data which have been declassified in order to determine which information may be declassified and removed from the category of Restricted Data without undue risk to the common defense and security.

"c. In the case of Restricted Data which the Commission and the Department of Defense jointly determine to relate primarily to the military utilization of atomic weapons, the determination that such data may be published without constituting an unreasonable risk to the common defense and security shall be made by the Commission and the Department of Defense jointly, and if the Commission and the Department of Defense do not agree, the determination shall be made by the President.

"d. The Commission shall remove from the Restricted Data category such data as the Commission and the Department of Defense jointly determine relates primarily to the military utilization of atomic weapons and which the Commission and Department of Defense jointly determine can be adequately safeguarded as defense information: *Provided, however*, That no such data so removed from the Restricted Data category shall be transmitted or otherwise made available to any nation or regional defense organization, while such data remains defense information, except pursuant to an agreement for cooperation entered into in accordance with subsection 144 b.

"e. The Commission shall remove from the Restricted Data category such information concerning the atomic energy programs of other nations as the Commission and the Director of Central Intelligence jointly determine to be necessary to carry out the provisions of section 102 (d) of the National Security Act of 1947, as amended, and can be adequately safeguarded as defense information.

61 Stat. 498.
50 USC 403(d).

"SEC. 143. DEPARTMENT OF DEFENSE PARTICIPATION.—The Commission may authorize any of its employees, or employees of any contractor, prospective contractor, licensee or prospective licensee of the Commission to permit any employee of an agency of the Department of Defense or of its contractors, or any member of the Armed Forces to have access to Restricted Data required in the performance of his duties and so certified by the head of the appropriate agency of the Department of Defense or his designee: *Provided, however*, That the head of the appropriate agency of the Department of Defense or his designee has determined, in accordance with the established personnel security procedures and standards of such agency, that permitting the member or employee to have access to such Restricted Data will not endanger the common defense and security: *And provided further*, That the Secretary of Defense finds that the established personnel and other security procedures and standards of such agency are adequate and in reasonable conformity to the standards established by the Commission under section 145.

"SEC. 144. INTERNATIONAL COOPERATION.—

"a. The President may authorize the Commission to cooperate with another nation and to communicate to that nation Restricted Data on—

"(1) refining, purification, and subsequent treatment of source material;

"(2) reactor development;

"(3) production of special nuclear material;

"(4) health and safety;

"(5) industrial and other applications of atomic energy for peaceful purposes; and

"(6) research and development relating to the foregoing: *Provided, however*, That no such cooperation shall involve the communication of Restricted Data relating to the design or fabrication of atomic weapons: *And provided further*, That the cooperation is undertaken pursuant to an agreement for cooperation entered into in accordance with section 123, or is undertaken pursuant to an agreement existing on the effective date of this Act.

"b. The President may authorize the Department of Defense, with the assistance of the Commission, to cooperate with another nation or with a regional defense organization to which the United States is a party, and to communicate to that nation or organization such Restricted Data as is necessary to—

"(1) the development of defense plans;

"(2) the training of personnel in the employment of and defense against atomic weapons; and

"(3) the evaluation of the capabilities of potential enemies in the employment of atomic weapons,

while such other nation or organization is participating with the United States pursuant to an international arrangement by substantial and material contributions to the mutual defense and security: *Provided, however*, That no such cooperation shall involve communication of Restricted Data relating to the design or fabrication of atomic weapons except with regard to external characteristics, including size, weight, and shape, yields and effects, and systems employed in the delivery or use thereof but not including any data in these categories unless in the joint judgment of the Commission and the Department of Defense such data will not reveal important information concerning the design or fabrication of the nuclear components of an atomic weapon: *And provided further*, That the cooperation is undertaken pursuant to an agreement entered into in accordance with section 123.

"SEC. 145. RESTRICTIONS.—

Investigations by CSC.

"a. No arrangement shall be made under section 31, no contract shall be made or continued in effect under section 41, and no license shall be issued under section 103 or 104, unless the person with whom such arrangement is made, the contractor or prospective contractor, or the prospective licensee agrees in writing not to permit any individual to have access to Restricted Data until the Civil Service Commission shall have made an investigation and report to the Commission on the character, associations, and loyalty of such individual, and the Commission shall have determined that permitting such person to have access to Restricted Data will not endanger the common defense and security.

"b. Except as authorized by the Commission or the General Manager upon a determination by the Commission or General Manager that such action is clearly consistent with the national interest, no individual shall be employed by the Commission nor shall the Commission permit any individual to have access to Restricted Data until the Civil Service Commission shall have made an investigation and report

to the Commission on the character, associations, and loyalty of such individual, and the Commission shall have determined that permitting such person to have access to Restricted Data will not endanger the common defense and security.

"c. In the event an investigation made pursuant to subsections a. and b. of this section develops any data reflecting that the individual who is the subject of the investigation is of questionable loyalty, the Civil Service Commission shall refer the matter to the Federal Bureau of Investigation for the conduct of a full field investigation, the results of which shall be furnished to the Civil Service Commission for its information and appropriate action. *Investigations by FBI.*

"d. If the President deems it to be in the national interest, he may from time to time cause investigations of any group or class which are required by subsections a. and b. of this section to be made by the Federal Bureau of Investigation instead of by the Civil Service Commission.

"e. Notwithstanding the provisions of subsections a. and b. of this section, a majority of the members of the Commission shall certify those specific positions which are of a high degree of importance or sensitivity and upon such certification the investigation and reports required by such provisions shall be made by the Federal Bureau of Investigation instead of by the Civil Service Commission.

"f. The Commission shall establish standards and specifications in writing as to the scope and extent of investigations to be made by the Civil Service Commission pursuant to subsections a. and b. of this section. Such standards and specifications shall be based on the location and class or kind of work to be done, and shall, among other considerations, take into account the degree of importance to the common defense and security of the Restricted Data to which access will be permitted. *Establishment by Commission of investigations standards, etc.*

"Sec. 146. General Provisions.—

"a. Sections 141 to 145, inclusive, shall not exclude the applicable provisions of any other laws, except that no Government agency shall take any action under such other laws inconsistent with the provisions of those sections.

"b. The Commission shall have no power to control or restrict the dissemination of information other than as granted by this or any other law.

## "CHAPTER 13. PATENTS AND INVENTIONS

"Sec. 151. Military Utilization.—

"a. No patent shall hereafter be granted for any invention or discovery which is useful solely in the utilization of special nuclear material or atomic energy in an atomic weapon. Any patent granted for any such invention or discovery is hereby revoked, and just compensation shall be made therefor.

"b. No patent hereafter granted shall confer any rights with respect to any invention or discovery to the extent that such invention or discovery is used in the utilization of special nuclear material or atomic energy in atomic weapons. Any rights conferred by any patent heretofore granted for any invention or discovery are hereby revoked to the extent that such invention or discovery is so used, and just compensation shall be made therefor.

"c. Any person who has made or hereafter makes any invention or discovery useful (1) in the production or utilization of special nuclear material or atomic energy; (2) in the utilization of special nuclear material in an atomic weapon; or (3) in the utilization of atomic energy in an atomic weapon, shall file with the Commission a report *Report of invention to Commission.*

containing a complete description thereof unless such invention or discovery is described in an application for a patent filed with the Commissioner of Patents by such person within the time required for the filing of such report. The report covering any such invention or discovery shall be filed on or before whichever of the following is the later: either the ninetieth day after completion of such invention or discovery; or the ninetieth day after such person first discovers or first has reason to believe that such invention or discovery is useful in such production or utilization.

"d. The Commissioner of Patents shall notify the Commission of all applications for patents heretofore or hereafter filed which, in his opinion, disclose inventions or discoveries required to be reported under subsection 151 c., and shall provide the Commission access to all such applications.

"SEC. 152. INVENTIONS CONCEIVED DURING COMMISSION CONTRACTS.— Any invention or discovery, useful in the production or utilization of special nuclear material or atomic energy, made or conceived under any contract, subcontract, arrangement, or other relationship with the Commission, regardless of whether the contract or arrangement involved the expenditure of funds by the Commission, shall be deemed to have been made or conceived by the Commission, except that the Commission may waive its claim to any such invention or discovery if made or conceived by any person at or in connection with any laboratory under the jurisdiction of the Commission as provided in section 33, or under such other circumstances as the Commission may deem appropriate. No patent for any invention or discovery, useful in the production or utilization of special nuclear material or atomic energy, shall be issued unless the applicant files with the application, or within 30 days after request therefor by the Commissioner of Patents, a statement under oath setting forth the full facts surrounding the making or conception of the invention or discovery described in the application and whether the invention or discovery was made or conceived in the course of, in connection with, or under the terms of any contract, subcontract, arrangement, or other relationship with the Commission, regardless of whether the contract or arrangement involved the expenditure of funds by the Commission. The Commissioner of Patents shall forthwith forward copies of the application and the statement to the Commission.

"The Commissioner of Patents may proceed with the application and issue the patent to the applicant (if the invention or discovery is otherwise patentable) unless the Commission, within 90 days after receipt of copies of the application and statement, directs the Commissioner of Patents to issue the patent to the Commission (if the invention or discovery is otherwise patentable) to be held by the Commission as the agent of and on behalf of the United States.

"If the Commission files such a direction with the Commissioner of Patents, and if the applicant's statement claims, and the applicant still believes, that the invention or discovery was not made or conceived in the course of, in connection with, or under the terms of any contract, subcontract, arrangement, or other relationship with the Commission entitling the Commission to take title to the application or the patent, the applicant may, within 30 days after notification of the filing of such a direction, request a hearing before a Board of Patent Interferences. The Board shall have the power to hear and determine whether the Commission was entitled to the direction filed with the Commissioner of Patents. The Board shall follow the rules and procedures established for interference cases and an appeal may be taken by either the applicant or the Commission from the final order of the Board to the Court of Customs and Patent Appeals

in accordance with the procedures governing the appeals from the Board of Patent Interferences.

"If the statement filed by the applicant should thereafter be found to contain false material statements any notification by the Commission that it has no objections to the issuance of a patent to the applicant shall not be deemed in any respect to constitute a waiver of the provisions of this section or of any applicable civil or criminal statute, and the Commission may have the title to the patent transferred to the Commission on the records of the Commissioner of Patents in accordance with the provisions of this section.

"Sec. 153. Nonmilitary Utilization.—

"a. The Commission may, after giving the patent owner an opportunity for a hearing, declare any patent to be affected with the public interest if (1) the invention or discovery covered by the patent is of primary importance in the production or utilization of special nuclear material or atomic energy; and (2) the licensing of such invention or discovery under this section is of primary importance to effectuate the policies and purposes of this Act.

"b. Whenever any patent has been declared affected with the public interest, pursuant to subsection 153 a.—

    "(1) the Commission is hereby licensed to use the invention or discovery covered by such patent in performing any of its powers under this Act; and

    "(2) any person may apply to the Commission for a nonexclusive patent license to use the invention or discovery covered by such patent, and the Commission shall grant such patent license to the extent that it finds that the use of the invention or discovery is of primary importance to the conduct of an activity by such person authorized under this Act.

"c. Any person—

    "(1) who has made application to the Commission for a license under sections 53, 62, 63, 81, 103, or 104, or a permit or lease under section 67;

    "(2) to whom such license, permit, or lease has been issued by the Commission;

    "(3) who is authorized to conduct such activities as such applicant is conducting or proposes to conduct under a general license issued by the Commission under sections 62 or 81; or

    "(4) whose activities or proposed activities are authorized under section 31,

may at any time make application to the Commission for a patent license for the use of an invention or discovery useful in the production or utilization of special nuclear material or atomic energy covered by a patent. Each such application shall set forth the nature and purpose of the use which the applicant intends to make of the patent license, the steps taken by the applicant to obtain a patent license from the owner of the patent, and a statement of the effects, as estimated by the applicant, on the authorized activities which will result from failure to obtain such patent license and which will result from the granting of such patent license.

"d. Whenever any person has made an application to the Commission for a patent license pursuant to subsection 153 c.—

    "(1) the Commission, within 30 days after the filing of such application, shall make available to the owner of the patent all of the information contained in such application, and shall notify the owner of the patent of the time and place at which a hearing will be held by the Commission;

"(2) the Commission shall hold a hearing within 60 days after the filing of such application at a time and place designated by the Commission; and

"(3) in the event an applicant applies for two or more patent licenses, the Commission may, in its discretion, order the consolidation of such applications, and if the patents are owned by more than one owner, such owners may be made parties to one hearing.

"e. If, after any hearing conducted pursuant to subsection 153 d., the Commission finds that—

"(1) the invention or discovery covered by the patent is of primary importance in the production or utilization of special nuclear material or atomic energy;

"(2) the licensing of such invention or discovery is of primary importance to the conduct of the activities of the applicant;

"(3) the activities to which the patent license are proposed to be applied by such applicant are of primary importance to the furtherance of policies and purposes of this Act; and

"(4) such applicant cannot otherwise obtain a patent license from the owner of the patent on terms which the Commission deems to be reasonable for the intended use of the patent to be made by such applicant,

the Commission shall license the applicant to use the invention or discovery covered by the patent for the purposes stated in such application on terms deemed equitable by the Commission and generally not less fair than those granted by the patentee or by the Commission to similar licensees for comparable use.

"f. The Commission shall not grant any patent license pursuant to subsection 153 e. for any other purpose than that stated in the application. Nor shall the Commission grant any patent license to any other applicant for a patent license on the same patent without an application being made by such applicant pursuant to subsection 153 c., and without separate notification and hearing as provided in subsection 153 d., and without a separate finding as provided in subsection 153 e.

"g. The owner of the patent affected by a declaration or a finding made by the Commission pursuant to subsection 153 b. or 153 e. shall be entitled to a reasonable royalty fee from the licensee for any use of an invention or discovery licensed by this section. Such royalty fee may be agreed upon by such owner and the patent licensee, or in the absence of such agreement shall be determined for each patent license by the Commission pursuant to subsection 157 c.

"h. The provisions of this section shall apply to any patent the application for which shall have been filed before September 1, 1959.

"Sec. 154. Injunctions.—No court shall have jurisdiction or power to stay, restrain, or otherwise enjoin the use of any invention or discovery by a patent licensee, to the extent that such use is licensed by subsection 153 b. or 153 e. If, in any action against such patent licensee, the court shall determine that the defendant is exercising such license, the measure of damages shall be the royalty fee determined pursuant to subsection 157 c., together with such costs, interest, and reasonable attorney's fees as may be fixed by the court. If no royalty fee has been determined, the court shall stay the proceeding until the royalty fee is determined pursuant to subsection 157 c. If any such patent licensee shall fail to pay such royalty fee, the patentee may bring an action in any court of competent jurisdiction for such royalty fee, together with such costs, interest, and reasonable attorney's fees as may be fixed by the court.

"SEC. 155. PRIOR ART.—In connection with applications for patents covered by this Chapter, the fact that the invention or discovery was known or used before shall be a bar to the patenting of such invention or discovery even though such prior knowledge or use was under secrecy within the atomic energy program of the United States.

"SEC. 156. COMMISSION PATENT LICENSES.—The Commission shall establish standard specifications upon which it may grant a patent license to use any patent held by the Commission or declared to be affected with the public interest pursuant to subsection 153 a. Such a patent license shall not waive any of the other provisions of this Act.

"SEC. 157. COMPENSATION, AWARDS, AND ROYALTIES.—

"a. PATENT COMPENSATION BOARD.—The Commission shall designate a Patent Compensation Board to consider applications under this section. The members of the Board shall receive a per diem compensation for each day spent in meetings or conferences, and all members shall receive their necessary traveling or other expenses while engaged in the work of the Board. The members of the Board may serve as such without regard to the provisions of sections 281, 283, or 284 of Title 18 of the United States Code, except in so far as such sections may prohibit any such member from receiving compensation in respect of any particular matter which directly involves the Commission or in which the Commission is directly interested.

62 Stat. 697.

"b. ELIGIBILITY.—

"(1) Any owner of a patent licensed under section 158 or subsections 153 b. or 153 e., or any patent licensee thereunder may make application to the Commission for the determination of a reasonable royalty fee in accordance with such procedures as the Commission by regulation may establish.

"(2) Any person seeking to obtain the just compensation provided in section 151 shall make application therefor to the Commission in accordance with such procedures as the Commission may by regulation establish.

"(3) Any person making any invention or discovery useful in the production or utilization of special nuclear material or atomic energy, who is not entitled to compensation or a royalty therefor under this Act and who has complied with the provisions of section 151 c. hereof may make application to the Commission for, and the Commission may grant, an award. The Commission may also, upon the recommendation of the General Advisory Committee, and with the approval of the President, grant an award for any especially meritorious contribution to the development, use, or control of atomic energy.

"c. STANDARDS.—

"(1) In determining a reasonable royalty fee as provided for in subsections 153 b. or 153 e., the Commission shall take into consideration (A) the advice of the Patent Compensation Board; (B) any defense, general or special, that might be pleaded by a defendant in an action for infringement; (C) the extent to which, if any, such patent was developed through federally financed research; and (D) the degree of utility, novelty, and importance of the invention or discovery, and may consider the cost to the owner of the patent of developing such invention or discovery or acquiring such patent.

"(2) In determining what constitutes just compensation as provided for in section 151, or in determining the amount of any award under subsection 157 b. (3), the Commission shall take into account the considerations set forth in subsection 157 c. (1) and the actual use of such invention or discovery. Such compensation may be paid by the Commission in periodic payments or in a lump sum.

"SEC. 158. MONOPOLISTIC USE OF PATENTS.—Whenever the owner of any patent hereafter granted for any invention or discovery of pri-

mary use in the utilization or production of special nuclear material or atomic energy is found by a court of competent jurisdiction to have intentionally used such patent in a manner so as to violate any of the antitrust laws specified in subsection 105 a., there may be included in the judgment of the court, in its discretion and in addition to any other lawful sanctions, a requirement that such owner license such patent to any other licensee of the Commission who demonstrates a need therefor. Such licensee shall pay a reasonable royalty fee, to be determined in accordance with section 157, to the owner of the patent.

"SEC. 159. FEDERALLY FINANCED RESEARCH.—Nothing in this Act shall affect the right of the Commission to require that patents granted on inventions, made or conceived during the course of federally financed research or operations, be assigned to the United States.

"SEC. 160. SAVING CLAUSE.—Any patent application on which a patent was denied by the United States Patent Office under sections 11 (a) (1), 11 (a) (2), or 11 (b) of the Atomic Energy Act of 1946, and which is not prohibited by section 151 or section 155 of this Act may be reinstated upon application to the Commissioner of Patents within one year after enactment of this Act and shall then be deemed to have been continuously pending since its original filing date: *Provided, however,* That no patent issued upon any patent application so reinstated shall in any way furnish a basis of claim against the Government of the United States.

60 Stat. 768.
42 USC 1811.

## "CHAPTER 14. GENERAL AUTHORITY

"SEC. 161. GENERAL PROVISIONS.—In the performance of its functions the Commission is authorized to—

"a. establish advisory boards to advise with and make recommendations to the Commission on legislation, policies, administration, research, and other matters, provided that the Commission issues regulations setting forth the scope, procedure, and limitations of the authority of each such board;

"b. establish by rule, regulation, or order, such standards and instructions to govern the possession and use of special nuclear material, source material, and byproduct material as the Commission may deem necessary or desirable to promote the common defense and security or to protect health or to minimize danger to life or property;

"c. make such studies and investigations, obtain such information, and hold such meetings or hearings as the Commission may deem necessary or proper to assist it in exercising any authority provided in this Act, or in the administration or enforcement of this Act, or any regulations or orders issued thereunder. For such purposes the Commission is authorized to administer oaths and affirmations, and by subpena to require any person to appear and testify, or to appear and produce documents, or both, at any designated place. No person shall be excused from complying with any requirements under this paragraph because of his privilege against self-incrimination, but the immunity provisions of the Compulsory Testimony Act of February 11, 1893, shall apply with respect to any individual who specifically claims such privilege. Witnesses subpenaed under this subsection shall be paid the same fees and mileage as are paid witnesses in the district courts of the United States;

27 Stat. 443.
49 USC 46.

"d. appoint and fix the compensation of such officers and employees as may be necessary to carry out the functions of the Commission. Such officers and employees shall be appointed in accordance with the civil-service laws and their compensation

fixed in accordance with the Classification Act of 1949, as amended, except that, to the extent the Commission deems such action necessary to the discharge of its responsibilities, personnel may be employed and their compensation fixed without regard to such laws: *Provided, however,* That no officer or employee (except such officers and employees whose compensation is fixed by law, and scientific and technical personnel) whose position would be subject to the Classification Act of 1949, as amended, if such Act were applicable to such position, shall be paid a salary at a rate in excess of the rate payable under such Act for positions of equivalent difficulty or responsibility. The Commission shall make adequate provision for administrative review of any determination to dismiss any employee;

63 Stat. 954.
5 USC 1071 note.

"e. acquire such material, property, equipment, and facilities, establish or construct such buildings and facilities, and modify such buildings and facilities from time to time, as it may deem necessary, and construct, acquire, provide, or arrange for such facilities and services (at project sites where such facilities and services are not available) for the housing, health, safety, welfare, and recreation of personnel employed by the Commission as it may deem necessary, subject to the provisions of section 174;

"f. with the consent of the agency concerned, utilize or employ the services or personnel of any Government agency or any State or local government, or voluntary or uncompensated personnel, to perform such functions on its behalf as may appear desirable;

"g. acquire, purchase, lease, and hold real and personal property, including patents, as agent of and on behalf of the United States, subject to the provisions of section 174, and to sell, lease, grant, and dispose of such real and personal property as provided in this Act;

"h. consider in a single application one or more of the activities for which a license is required by this Act, combine in a single license one or more of such activities, and permit the applicant or licensee to incorporate by reference pertinent information already filed with the Commission;

"i. prescribe such regulations or orders as it may deem necessary (1) to protect Restricted Data received by any person in connection with any activity authorized pursuant to this Act, (2) to guard against the loss or diversion of any special nuclear material acquired by any person pursuant to section 53 or produced by any person in connection with any activity authorized pursuant to this Act, and to prevent any use or disposition thereof which the Commission may determine to be inimical to the common defense and security, and (3) to govern any activity authorized pursuant to this Act, including standards and restrictions governing the design, location, and operation of facilities used in the conduct of such activity, in order to protect health and to minimize danger to life or property;

"j. without regard to the provisions of the Federal Property and Administrative Services Act of 1949, as amended, except section 207 of that Act, or any other law, make such disposition as it may deem desirable of (1) radioactive materials, and (2) any other property, the special disposition of which is, in the opinion of the Commission, in the interest of the national security: *Provided, however,* That the property furnished to licensees in accordance with the provisions of subsection 161 m. shall not be deemed to be property disposed of by the Commission pursuant to this subsection;

63 Stat. 377.
40 USC 471 note,
488.

"k. authorize such of its members, officers, and employees as it deems necessary in the interest of the common defense and security to carry firearms while in the discharge of their official duties. The Commission may also authorize such of those employees of its contractors engaged in the protection of property owned by the United States and located at facilities owned by or contracted to the United States as it deems necessary in the interests of the common defense and security to carry firearms while in the discharge of their official duties;

"l. secure the admittance free of duty into the United States of purchases made abroad of source materials, upon certification to the Secretary of the Treasury that such entry is necessary in the interest of the common defense and security;

"m. enter into agreements with persons licensed under section 103 or 104 for such periods of time as the Commission may deem necessary or desirable (1) to provide for the processing, fabricating, separating, or refining in facilities owned by the Commission of source, byproduct, or other material or special nuclear material owned by or made available to such licensees and which is utilized or produced in the conduct of the licensed activity, and (2) to sell, lease, or otherwise make available to such licensees such quantities of source or byproduct material, and other material not defined as special nuclear material pursuant to this Act, as may be necessary for the conduct of the licensed activity: *Provided, however,* That any such agreement may be canceled by the licensee at any time upon payment of such reasonable cancellation charges as may be agreed upon by the licensee and the Commission: *And provided further,* That the Commission shall establish prices to be paid by licensees for material or services to be furnished by the Commission pursuant to this subsection, which prices shall be established on such a nondiscriminatory basis as, in the opinion of the Commission, will provide reasonable compensation to the Government for such material or services and will not discourage the development of sources of supply independent of the Commission;

"n. assign scientific, technical, professional, and administrative employees for instruction, education, or training by public or private agencies, institutions of learning, laboratories, or industrial or commercial organizations and to pay the whole or any part of the salaries of such employees, costs of their transportation and per diem in lieu of subsistence in accordance with applicable laws and regulations, and training charges incident to their assignments (including tuition and other related fees): *Provided, however,* That (1) not more than one per centum of the eligible employees shall be so assigned during any fiscal year, and (2) any such assignment shall be approved in advance by the Commission or shall be in accordance with a training program previously approved by the Commission: *And provided further,* That appropriations or other funds available to the Commission for salaries or expenses shall be available for the purposes of this subsection;

"o. delegate to the General Manager or other officers of the Commission any of those functions assigned to it under this Act except those specified in sections 51, 57 a. (3), 61, 102 (with respect to the finding of practical value), 108, 123, 145 b. (with respect to the determination of those persons to whom the Commission may reveal Restricted Data in the national interest), 145 e., and 161 a.;

"p. require by rule, regulation, or order, such reports, and the keeping of such records with respect to, and to provide for such

inspections of, activities and studies of types specified in section 31 and of activities under licenses issued pursuant to sections 53, 63, 81, 103, and 104, as may be necessary to effectuate the purposes of this Act, including section 105; and

"q. make, promulgate, issue, rescind, and amend such rules and regulations as may be necessary to carry out the purposes of this Act.

"SEC. 162. CONTRACTS.—The President may, in advance, exempt any specific action of the Commission in a particular matter from the provisions of law relating to contracts whenever he determines that such action is essential in the interest of the common defense and security.

"SEC. 163. ADVISORY COMMITTEES.—The members of the General Advisory Committee established pursuant to section 26 and the members of advisory boards established pursuant to section 161 a. may serve as such without regard to the provisions of sections 281, 283, or 284 of Title 18 of the United States Code, except insofar as such sections may prohibit any such member from receiving compensation in respect of any particular matter which directly involves the Commission or in which the Commission is directly interested.

62 Stat. 697.

"SEC. 164. ELECTRIC UTILITY CONTRACTS.—The Commission is authorized in connection with the construction or operation of the Oak Ridge, Paducah, and Portsmouth installations of the Commission, without regard to section 3679 of the Revised Statutes, as amended, to enter into new contracts or modify or confirm existing contracts to provide for electric utility services for periods not exceeding twenty-five years, and such contracts shall be subject to termination by the Commission upon payment of cancellation costs as provided in such contracts, and any appropriation presently or hereafter made available to the Commission shall be available for the payment of such cancellation costs. Any such cancellation payments shall be taken into consideration in determination of the rate to be charged in the event the Commission or any other agency of the Federal Government shall purchase electric utility services from the contractor subsequent to the cancellation and during the life of the original contract. The authority of the Commission under this section to enter into new contracts or modify or confirm existing contracts to provide for electric utility services includes, in case such electric utility services are to be furnished to the Commission by the Tennessee Valley Authority, authority to contract with any person to furnish electric utility services to the Tennessee Valley Authority in replacement thereof. Any contract hereafter entered into by the Commission pursuant to this section shall be submitted to the Joint Committee and a period of thirty days shall elapse while Congress is in session (in computing such thirty days, there shall be excluded the days on which either House is not in session because of adjournment for more than three days) before the contract of the Commission shall become effective: *Provided, however,* That the Joint Committee, after having received the proposed contract, may by resolution in writing, waive the conditions of or all or any portion of such thirty-day period.

31 USC 665.

"SEC. 165. CONTRACT PRACTICES.—

"a. In carrying out the purposes of this Act the Commission shall not use the cost-plus-percentage-of-cost system of contracting.

"b. No contract entered into under the authority of this Act shall provide, and no contract entered into under the authority of the Atomic Energy Act of 1946, as amended, shall be modified or amended after the date of enactment of this Act to provide, for direct payment or direct reimbursement by the Commission of any Federal income taxes on behalf of any contractor performing such contract for profit.

60 Stat. 755.
42 USC 1801 note.

"SEC. 166. COMPTROLLER GENERAL AUDIT.—No moneys appropriated

for the purposes of this Act shall be available for payments under any contract with the Commission, negotiated without advertising, except contracts with any foreign government or any agency thereof and contracts with foreign producers, unless such contract includes a clause to the effect that the Comptroller General of the United States or any of his duly authorized representatives shall, until the expiration of three years after final payment, have access to and the right to examine any directly pertinent books, documents, papers, and records of the contractor or any of his subcontractors engaged in the performance of, and involving transactions related to such contracts or subcontracts: *Provided, however*, That no moneys so appropriated shall be available for payment under such contract which includes any provision precluding an audit by the General Accounting Office of any transaction under such contract.

"SEC. 167. CLAIM SETTLEMENTS.—The Commission, acting on behalf of the United States, is authorized to consider, ascertain, adjust, determine, settle, and pay, any claim for money damage of $5,000 or less against the United States for bodily injury, death, or damage to or loss of real or personal property resulting from any detonation, explosion, or radiation produced in the conduct of the Commission's program for testing atomic weapons, where such claim is presented to the Commission in writing within one year after the accident or incident out of which the claim arises: *Provided, however*, That the damage to or loss of property, or bodily injury or death, shall not have been caused in whole or in part by any negligence or wrongful act on the part of the claimant, his agents, or employees. Any such settlement under the authority of this section shall be final and conclusive for all purposes, notwithstanding any other provision of law to the contrary.

"SEC. 168. PAYMENTS IN LIEU OF TAXES.—In order to render financial assistance to those States and localities in which the activities of the Commission are carried on, and in which the Commission has acquired property previously subject to State and local taxation, the Commission is authorized to make payments to State and local governments in lieu of property taxes. Such payments may be in the amounts, at the times, and upon the terms the Commission deems appropriate, but the Commission shall be guided by the policy of not making payments in excess of the taxes which would have been payable for such property in the condition in which it was acquired, except in cases where special burdens have been cast upon the State or local government by activities of the Commission, the Manhattan Engineer District or their agents. In any such case, any benefit accruing to the State or local government by reason of such activities shall be considered in determining the amount of the payment.

"SEC. 169. No SUBSIDY.—No funds of the Commission shall be employed in the construction or operation of facilities licensed under section 103 or 104 except under contract or other arrangement entered into pursuant to section 31.

## "CHAPTER 15. COMPENSATION FOR PRIVATE PROPERTY ACQUIRED

"SEC. 171. JUST COMPENSATION.—The United States shall make just compensation for any property or interests therein taken or requisitioned pursuant to sections 43, 52 (with respect to the material for which the United States is required to pay just compensation), 66, and 108. Except in case of real property or any interest therein, the Commission shall determine and pay such just compensation. If the compensation so determined is unsatisfactory to the person entitled

thereto, such person shall be paid 75 per centum of the amount so determined, and shall be entitled to sue the United States in the Court of Claims or in any district court of the United States for the district in which such claimant is a resident in the manner provided by section 1346 of Title 28 of the United States Code to recover such further sum as added to said 75 per centum will constitute just compensation.

*62 Stat. 933.*

"Sec. 172. Condemnation of Real Property.—Proceedings for condemnation shall be instituted pursuant to the provisions of the Act approved August 1, 1888, as amended, and section 1403 of Title 28 of the United States Code.  The Act approved February 26, 1931, as amended, shall be applicable to any such proceedings.

*62 Stat. 986,937; 46 Stat. 1421.*
*40 USC 257, 258-258a.*

"Sec. 173. Patent Application Disclosures.—In the event that the Commission communicates to any nation any Restricted Data based on any patent application not belonging to the United States, just compensation shall be paid by the United States to the owner of the patent application.  The Commission shall determine such compensation.  If the compensation so determined is unsatisfactory to the person entitled thereto, such person shall be paid 75 per centum of the amount so determined, and shall be entitled to sue the United States in the Court of Claims or in any district court of the United States for the district in which such claimant is a resident in a manner provided by section 1346 of Title 28 of the United States Code to recover such further sum as added to such 75 per centum will constitute just compensation.

*62 Stat. 933.*

"Sec. 174. Attorney General Approval of Title.—All real property acquired under this Act shall be subject to the provisions of section 355 of the Revised Statutes, as amended: *Provided, however,* That real property acquired by purchase or donation, or other means of transfer may also be occupied, used, and improved for the purposes of this Act prior to approval of title by the Attorney General in those cases where the President determines that such action is required in the interest of the common defense and security.

*40 USC 255.*

## "CHAPTER 16. JUDICIAL REVIEW AND ADMINISTRATIVE PROCEDURE

"Sec. 181. General.—The provisions of the Administrative Procedure Act (Public Law 404, Seventy-ninth Congress, approved June 11, 1946) shall apply to all agency action taken under this Act, and the terms 'agency' and 'agency action' shall have the meaning specified in the Administrative Procedure Act: *Provided, however,* That in the case of agency proceedings or actions which involve Restricted Data or defense information, the Commission shall provide by regulation for such parallel procedures as will effectively safeguard and prevent disclosure of Restricted Data or defense information to unauthorized persons with minimum impairment of the procedural rights which would be available if Restricted Data or defense information were not involved.

*60 Stat. 237.*
*5 USC 1001 note.*

"Sec. 182. License Applications.—

"a. Each application for a license hereunder shall be in writing and shall specifically state such information as the Commission, by rule or regulation, may determine to be necessary to decide such of the technical and financial qualifications of the applicant, the character of the applicant, the citizenship of the applicant, or any other qualifications of the applicant as the Commission may deem appropriate for the license.  In connection with applications for licenses to operate production or utilization facilities, the applicant shall state such technical specifications, including information of the amount, kind, and source of special nuclear material required, the place of the use, the specific

characteristics of the facility, and such other information as the Commission may, by rule or regulation, deem necessary in order to enable it to find that the utilization or production of special nuclear material will be in accord with the common defense and security and will provide adequate protection to the health and safety of the public. Such technical specifications shall be a part of any license issued.  The Commission may at any time after the filing of the original application, and before the expiration of the license, require further written statements in order to enable the Commission to determine whether the application should be granted or denied or whether a license should be modified or revoked.  All applications and statements shall be signed by the applicant or licensee under oath or affirmation.

*Commercial power.*

"b. The Commission shall not issue any license for a utilization or production facility for the generation of commercial power under section 103, until it has given notice in writing to such regulatory agency as may have jurisdiction over the rates and services of the proposed activity, to municipalities, private utilities, public bodies, and cooperatives within transmission distance authorized to engage in the distribution of electric energy and until it has published notice of such

*Notice in FR.*

application once each week for four consecutive weeks in the Federal Register, and until four weeks after the last notice.

"c. The Commission, in issuing any license for a utilization or production facility for the generation of commercial power under section 103, shall give preferred consideration to applications for such facilities which will be located in high cost power areas in the United States if there are conflicting applications for a limited opportunity for such license.  Where such conflicting applications resulting from limited opportunity for such license include those submitted by public or cooperative bodies such applications shall be given preferred consideration.

"SEC. 183. TERMS OF LICENSES.—Each license shall be in such form and contain such terms and conditions as the Commission may, by rule or regulation, prescribe to effectuate the provisions of this Act, including the following provisions:

"a. Title to all special nuclear material utilized or produced by facilities pursuant to the license, shall at all times be in the United States.

"b. No right to the special nuclear material shall be conferred by the license except as defined by the license.

"c. Neither the license nor any right under the license shall be assigned or otherwise transferred in violation of the provisions of this Act.

"d. Every license issued under this Act shall be subject to the right of recapture or control reserved by section 108, and to all of the other provisions of this Act, now or hereafter in effect and to all valid rules and regulations of the Commission.

"SEC. 184. INALIENABILITY OF LICENSES.—No license granted hereunder and no right to utilize or produce special nuclear material granted hereby shall be transferred, assigned or in any manner disposed of, either voluntarily or involuntarily, directly or indirectly, through transfer of control of any license to any person, unless the Commission shall, after securing full information, find that the transfer is in accordance with the provisions of this Act, and shall give its consent in writing.  The Commission may give such consent to the creation of a mortgage, pledge, or other lien upon any facility owned or thereafter acquired by a licensee, or upon any leasehold or other interest in such property, and the rights of the creditors so secured may thereafter be enforced by any court subject to rules and regulations established by the Commission to protect public health and safety and promote the common defense and security.

"Sec. 185. Construction Permits.—All applicants for licenses to construct or modify production or utilization facilities shall, if the application is otherwise acceptable to the Commission, be initially granted a construction permit. The construction permit shall state the earliest and latest dates for the completion of the construction or modification. Unless the construction or modification of the facility is completed by the completion date, the construction permit shall expire, and all rights thereunder be forfeited, unless upon good cause shown, the Commission extends the completion date. Upon the completion of the construction or modification of the facility, upon the filing of any additional information needed to bring the original application up to date, and upon finding that the facility authorized has been constructed and will operate in conformity with the application as amended and in conformity with the provisions of this Act and of the rules and regulations of the Commission, and in the absence of any good cause being shown to the Commission why the granting of a license would not be in accordance with the provisions of this Act, the Commission shall thereupon issue a license to the applicant. For all other purposes of this Act, a construction permit is deemed to be a 'license'.

"Sec. 186. Revocation.—

"a. Any license may be revoked for any material false statement in the application or any statement of fact required under section 182, or because of conditions revealed by such application or statement of fact or any report, record, or inspection or other means which would warrant the Commission to refuse to grant a license on an original application, or for failure to construct or operate a facility in accordance with the terms of the construction permit or license or the technical specifications in the application, or for violation of, or failure to observe any of the terms and provisions of this Act or of any regulation of the Commission.

"b. The Commission shall follow the provisions of section 9 (b) of the Administrative Procedure Act in revoking any license.

60 Stat. 242.
5 USC 1008(b).

"c. Upon revocation of the license, the Commission may immediately retake possession of all special nuclear material held by the licensee. In cases found by the Commission to be of extreme importance to the national defense and security or to the health and safety of the public, the Commission may recapture any special nuclear material held by the licensee or may enter upon and operate the facility prior to any of the procedures provided under the Administrative Procedure Act. Just compensation shall be paid for the use of the facility.

5 USC 1001 note.

"Sec. 187. Modification of License.—The terms and conditions of all licenses shall be subject to amendment, revision, or modification, by reason of amendments of this Act or by reason of rules and regulations issued in accordance with the terms of this Act.

"Sec. 188. Continued Operation of Facilities.—Whenever the Commission finds that the public convenience and necessity or the production program of the Commission requires continued operation of a production facility or utilization facility the license for which has been revoked pursuant to section 186, the Commission may, after consultation with the appropriate regulatory agency, State or Federal, having jurisdiction, order that possession be taken of and such facility be operated for such period of time as the public convenience and necessity or the production program of the Commission may, in the judgment of the Commission, require, or until a license for the operation of the facility shall become effective. Just compensation shall be paid for the use of the facility.

"Sec. 189. Hearings and Judicial Review.—

"a. In any proceeding under this Act, for the granting, suspending,

revoking, or amending of any license or construction permit, or application to transfer control, and in any proceeding for the issuance or modification of rules and regulations dealing with the activities of licensees, and in any proceeding for the payment of compensation, an award or royalties under sections 153, 157, 186 c., or 188, the Commission shall grant a hearing upon the request of any person whose interest may be affected by the proceeding, and shall admit any such person as a party to such proceeding.

"b. Any final order entered in any proceeding of the kind specified in subsection a. above shall be subject to judicial review in the manner prescribed in the Act of December 29, 1950, as amended (ch. 1189, 64 Stat. 1129), and to the provisions of section 10 of the Administrative Procedure Act, as amended.

5 USC 1031-
1042, 1009.

## "CHAPTER 17. JOINT COMMITTEE ON ATOMIC ENERGY

"Sec. 201. Membership.—There is hereby established a Joint Committee on Atomic Energy to be composed of nine Members of the Senate to be appointed by the President of the Senate, and nine Members of the House of Representatives to be appointed by the Speaker of the House of Representatives.  In each instance not more than five Members shall be members of the same political party.

"Sec. 202. Authority and Duty.—The Joint Committee shall make continuing studies of the activities of the Atomic Energy Commission and of problems relating to the development, use, and control of atomic energy.  During the first sixty days of each session of the Congress, the Joint Committee shall conduct hearings in either open or executive session for the purpose of receiving information concerning the development, growth, and state of the atomic energy industry. The Commission shall keep the Joint Committee fully and currently informed with respect to all of the Commission's activities.  The Department of Defense shall keep the Joint Committee fully and currently informed with respect to all matters within the Department of Defense relating to the development, utilization, or application of atomic energy.  Any Government agency shall furnish any information requested by the Joint Committee with respect to the activities or responsibilities of that agency in the field of atomic energy.  All bills, resolutions, and other matters in the Senate or the House of Representatives relating primarily to the Commission or to the development, use, or control of atomic energy shall be referred to the Joint Committee.  The members of the Joint Committee who are Members of the Senate shall from time to time report to the Senate, and the members of the Joint Committee who are Members of the House of Representatives shall from time to time report to the House, by bill or otherwise, their recommendations with respect to matters within the jurisdiction of their respective Houses which are referred to the Joint Committee or otherwise within the jurisdiction of the Joint Committee.

"Sec. 203. Chairman.—Vacancies in the membership of the Joint Committee shall not affect the power of the remaining members to execute the functions of the Joint Committee, and shall be filled in the same manner as in the case of the original selection.  The Joint Committee shall select a Chairman and a Vice Chairman from among its members at the beginning of each Congress.  The Vice Chairman shall act in the place and stead of the Chairman in the absence of the Chairman.  The Chairmanship shall alternate between the Senate and the House of Representatives with each Congress, and the Chairman shall be selected by the Members from that House entitled to the Chair-

manship.   The Vice Chairman shall be chosen from the House other than that of the Chairman by the Members from that House.

"SEC. 204. POWERS.—In carrying out its duties under this Act, the Joint Committee, or any duly authorized subcommittee thereof, is authorized to hold such hearings or investigations, to sit and act at such places and times, to require, by subpena or otherwise, the attendance of such witnesses and the production of such books, papers, and documents, to administer such oaths, to take such testimony, to procure such printing and binding, and to make such expenditures as it deems advisable.   The Joint Committee may make such rules respecting its organization and procedures as it deems necessary : *Provided, however,* That no measure or recommendation shall be reported from the Joint Committee unless a majority of the committee assent.   Subpenas may be issued over the signature of the Chairman of the Joint Committee or by any member designated by him or by the Joint Committee, and may be served by such person or persons as may be designated by such Chairman or member.   The Chairman of the Joint Committee or any member thereof may administer oaths to witnesses. The Joint Committee may use a committee seal.   The provisions of sections 102 to 104, inclusive, of the Revised Statutes, as amended, shall apply in case of any failure of any witness to comply with a subpena or to testify when summoned under authority of this section.   The expenses of the Joint Committee shall be paid from the contingent fund of the Senate from funds appropriated for the Joint Committee upon vouchers approved by the Chairman.   The cost of stenographic service to report public hearings shall not be in excess of the amounts prescribed by law for reporting the hearings of standing committees of the Senate.   The cost of stenographic service to report executive hearings shall be fixed at an equitable rate by the Joint Committee. Members of the Joint Committee, and its employees and consultants, while traveling on official business for the Joint Committee, may receive either the per diem allowance authorized to be paid to Members of Congress or its employees, or their actual and necessary expenses provided an itemized statement of such expenses is attached to the voucher.

Committee seal.
2 USC 192-194.

"SEC. 205. STAFF AND ASSISTANCE.—The Joint Committee is empowered to appoint and fix the compensation of such experts, consultants, technicians, and staff employees as it deems necessary and advisable. The Joint Committee is authorized to utilize the services, information, facilities, and personnel of the departments and establishments of the Government.   The Joint Committee is authorized to permit such of its members, employees, and consultants as it deems necessary in the interest of common defense and security to carry firearms while in the discharge of their official duties for the committee.

"SEC. 206. CLASSIFICATION OF INFORMATION.—The Joint Committee may classify information originating within the committee in accordance with standards used generally by the executive branch for classifying Restricted Data or defense information.

"SEC. 207. RECORDS.—The Joint Committee shall keep a complete record of all committee actions, including a record of the votes on any question on which a record vote is demanded.   All committee records, data, charts, and files shall be the property of the Joint Committee and shall be kept in the offices of the Joint Committee or other places as the Joint Committee may direct under such security safeguards as the Joint Committee shall determine in the interest of the common defense and security.

Case No. 1:90-cv-00181-JLK   Document 2374-3   filed 09/10/15   USDC Colorado   pg 41 of 44

## "CHAPTER 18. ENFORCEMENT

"Sec. 221. General Provisions.—

"a. To protect against the unlawful dissemination of Restricted Data and to safeguard facilities, equipment, materials, and other property of the Commission, the President shall have authority to utilize the services of any Government agency to the extent he may deem necessary or desirable.

"b. The Federal Bureau of Investigation of the Department of Justice shall investigate all alleged or suspected criminal violations of this Act.

"c. No action shall be brought against any individual or person for any violation under this Act unless and until the Attorney General of the United States has advised the Commission with respect to such action and no such action shall be commenced except by the Attorney General of the United States: *Provided, however*, That no action shall be brought under sections 222, 223, 224, 225 or 226 except by the express direction of the Attorney General.

"Sec. 222. Violation of Specific Sections.—Whoever willfully violates, attempts to violate, or conspires to violate, any provision of sections 57, 92, or 101, or whoever unlawfully interferes, attempts to interfere, or conspires to interfere with any recapture or entry under section 108, shall, upon conviction thereof, be punished by a fine of not more than $10,000 or by imprisonment for not more than five years, or both, except that whoever commits such an offense with intent to injure the United States or with intent to secure an advantage to any foreign nation shall, upon conviction thereof, be punished by death or imprisonment for life (but the penalty of death or imprisonment for life may be imposed only upon recommendation of the jury), or by a fine of not more than $20,000 or by imprisonment for not more than twenty years, or both.

"Sec. 223. Violation of Sections Generally.—Whoever willfully violates, attempts to violate, or conspires to violate, any provision of this Act for which no penalty is specifically provided or of any regulation or order prescribed or issued under section 65 or subsections 161 b., i., or p. shall, upon conviction thereof, be punished by a fine of not more than $5,000 or by imprisonment for not more than two years, or both, except that whoever commits such an offense with intent to injure the United States or with intent to secure an advantage to any foreign nation, shall, upon conviction thereof, be punished by a fine of not more than $20,000 or by imprisonment for not more than twenty years, or both.

"Sec. 224. Communication of Restricted Data.—Whoever, lawfully or unlawfully, having possession of, access to, control over, or being entrusted with any document, writing, sketch, photograph, plan, model, instrument, appliance, note, or information involving or incorporating Restricted Data—

"a. communicates, transmits, or discloses the same to any individual or person, or attempts or conspires to do any of the foregoing, with intent to injure the United States or with intent to secure an advantage to any foreign nation, upon conviction thereof, shall be punished by death or imprisonment for life (but the penalty of death or imprisonment for life may be imposed only upon recommendation of the jury), or by a fine of not more than $20,000 or imprisonment for not more than twenty years, or both;

"b. communicates, transmits, or discloses the same to any individual or person, or attempts or conspires to do any of the foregoing, with reason to believe such data will be utilized to injure the United States or to secure an advantage to any foreign nation,

shall, upon conviction, be punished by a fine of not more than $10,000 or imprisonment for not more than ten years, or both.

"Sec. 225. Receipt of Restricted Data.—Whoever, with intent to injure the United States or with intent to secure an advantage to any foreign nation, acquires, or attempts or conspires to acquire any document, writing, sketch, photograph, plan, model, instrument, appliance, note, or information involving or incorporating Restricted Data shall, upon conviction thereof, be punished by death or imprisonment for life (but the penalty of death or imprisonment for life may be imposed only upon recommendation of the jury), or by a fine of not more than $20,000 or imprisonment for not more than twenty years, or both.

"Sec. 226. Tampering with Restricted Data.—Whoever, with intent to injure the United States or with intent to secure an advantage to any foreign nation, removes, conceals, tampers with, alters, mutilates, or destroys any document, writing, sketch, photograph, plan, model, instrument, appliance, or note involving or incorporating Restricted Data and used by any individual or person in connection with the production of special nuclear material, or research or development relating to atomic energy, conducted by the United States, or financed in whole or in part by Federal funds, or conducted with the aid of special nuclear material, shall be punished by death or imprisonment for life (but the penalty of death or imprisonment for life may be imposed only upon recommendation of the jury), or by a fine of not more than $20,000 or imprisonment for not more than twenty years, or both.

"Sec. 227. Disclosure of Restricted Data.—Whoever, being or having been an employee or member of the Commission, a member of the Armed Forces, an employee of any agency of the United States, or being or having been a contractor of the Commission or of an agency of the United States, or being or having been an employee of a contractor of the Commission or of an agency of the United States, or being or having been a licensee of the Commission, or being or having been an employee of a licensee of the Commission, knowingly communicates, or whoever conspires to communicate or to receive, any Restricted Data, knowing or having reason to believe that such data is Restricted Data, to any person not authorized to receive Restricted Data pursuant to the provisions of this Act or under rule or regulation of the Commission issued pursuant thereto, knowing or having reason to believe such person is not so authorized to receive Restricted Data shall, upon conviction thereof, be punishable by a fine of not more than $2,500.

"Sec. 228. Statute of Limitations.—Except for a capital offense, no individual or person shall be prosecuted, tried, or punished for any offense prescribed or defined in sections 224 to 226, inclusive, of this Act unless the indictment is found or the information is instituted within ten years next after such offense shall have been committed.

"Sec. 229. Other Laws.—Sections 224 to 228 shall not exclude the applicable provisions of any other laws.

"Sec. 230. Injunction Proceedings.—Whenever in the judgment of the Commission any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of this Act, or any regulation or order issued thereunder, the Attorney General on behalf of the United States may make application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, and upon a showing by the Commission that such person has engaged or is about to engage in any such acts or practices, a permanent or temporary injunction, restraining order, or other order may be granted.

Case No. 1:90-cv-00181-JLK   Document 2374-3   filed 09/10/15   USDC Colorado   pg 43 of 44

"SEC. 231. CONTEMPT PROCEEDINGS.—In case of failure or refusal to obey a subpena served upon any person pursuant to subsection 161 c., the district court for any district in which such person is found or resides or transacts business, upon application by the Attorney General on behalf of the United States, shall have jurisdiction to issue an order requiring such person to appear and give testimony or to appear and produce documents, or both, in accordance with the subpena; and any failure to obey such order of the court may be punished by such court as a contempt thereof.

## "CHAPTER 19. MISCELLANEOUS

"SEC. 241. TRANSFER OF PROPERTY.—Nothing in this Act shall be deemed to repeal, modify, amend, or alter the provisions of section 9 (a) of the Atomic Energy Act of 1946, as heretofore amended.

60 Stat. 765.
42 USC 1809(a).

"SEC. 251. REPORT TO CONGRESS.—The Commission shall submit to the Congress, in January and July of each year, a report concerning the activities of the Commission.  The Commission shall include in such report, and shall at such other times as it deems desirable submit to the Congress, such recommendations for additional legislation as the Commission deems necessary or desirable.

"SEC. 261. APPROPRIATIONS.—There are hereby authorized to be appropriated such sums as may be necessary and appropriate to carry out the provisions and purposes of this Act except such as may be necessary for acquisition or condemnation of any real property or any facility or for plant or facility acquisition, construction, or expansion. The Acts appropriating such sums may appropriate specified portions thereof to be accounted for upon the certification of the Commission only.  Funds appropriated to the Commission shall, if obligated by contract during the fiscal year for which appropriated, remain available for expenditure for four years following the expiration of the fiscal year for which appropriated.

"SEC. 271. AGENCY JURISDICTION.—Nothing in this Act shall be construed to affect the authority or regulations of any Federal, State, or local agency with respect to the generation, sale, or transmission of electric power.

"SEC. 272. APPLICABILITY OF FEDERAL POWER ACT.—Every licensee under this Act who holds a license from the Commission for a utilization or production facility for the generation of commercial electric energy under section 103 and who transmits such electric energy in interstate commerce or sells it at wholesale in interstate commerce shall be subject to the regulatory provisions of the Federal Power Act.

"SEC. 273. LICENSING OF GOVERNMENT AGENCIES.—Nothing in this Act shall preclude any Government agency now or hereafter authorized by law to engage in the production, marketing, or distribution of electric energy from obtaining a license under section 103, if qualified under the provisions of section 103, for the construction and operation of production or utilization facilities for the primary purpose of producing electric energy for disposition for ultimate public consumption.

"SEC. 281. SEPARABILITY.—If any provision of this Act or the application of such provision to any person or circumstances, is held invalid, the remainder of this Act or the application of such provision to persons or circumstances other than those as to which it is held invalid, shall not be affected thereby.

"SEC. 291. SHORT TITLE.—This Act may be cited as the 'Atomic Energy Act of 1954'."

Sec. 2.—

a. Section 1 (d) of the Act of December 29, 1950 (64 Stat. 1129), is amended by inserting before the period at the end thereof a semicolon and the following: "when such order was entered by the Atomic Energy Commission, 'agency' means that Commission".

*5 USC 1031(d).*

b. Section 2 of the Act of December 29, 1950 (64 Stat. 1129), is amended by inserting before the period at the end of the first paragraph thereof a comma and the following: "and (d) of the Atomic Energy Commission made reviewable by section 189 of the Atomic Energy Act of 1954, as amended".

*5 USC 1032.*
*Court of Appeals, jurisdiction.*

Sec. 3. There is hereby retroceded to the State of New Mexico the exclusive jurisdiction heretofore acquired from the State of New Mexico by the United States of America over the following land of the United States Atomic Energy Commission in Bernalillo County and within the boundaries of the Sandia base, Albuquerque, New Mexico.

*Ante, p. 955.*
*New Mexico.*
*Retrocession.*

Beginning at the center quarter corner of section 30, township 10 north, range 4 east, New Mexico principal meridian, Bernalillo County, New Mexico, thence south no degrees twenty-three minutes thirty seconds west one thousand nine hundred forty-seven and twenty one-hundredths feet, thence north eighty-nine degrees thirty-six minutes forty-five seconds east two thousand sixty-eight and forty one-hundredths feet, thence north eighty-nine degrees three minutes fifteen seconds east five hundred forty-six feet, thence north no degrees thirty-nine minutes no seconds east two hundred thirty-two and seventy one-hundredths feet, thence north eighty-nine degrees twenty-one minutes no seconds west eight hundred fifty-two and twenty one-hundredths feet, thence north no degrees thirty-nine minutes no seconds east five hundred and sixty one-hundredths feet, thence along the back of the south curb of West Sandia Drive, Sandia Base, Bernalillo County, New Mexico, eight hundred sixty-five and sixty one-hundredths feet, thence north no degrees thirty-nine minutes no seconds east one thousand three hundred thirty-five and three-tenths feet to a point south eighty-nine degrees twenty-seven minutes forty-five seconds west a distance of thirty feet from the quarter corner common to sections 30 and 29, township 10 north, range 4 east, thence south eighty-nine degrees, twenty-seven minutes forty-five seconds west two thousand six hundred twenty-three and forty one-hundredths feet to the point of beginning.

This retrocession of jurisdiction shall take effect upon acceptance by the State of New Mexico.

Approved August 30, 1954, 9:44 a.m., E.D.T.

Public Law 704                                CHAPTER 1074

**AN ACT**

To authorize and direct the construction of bridges over the Potomac River, and for other purposes.

*August 30, 1954*
*[H. R. 1960]*

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

*Potomac River bridges.*

## TITLE I—BRIDGE IN VICINITY OF CONSTITUTION AVENUE

That (a) the Commissioners of the District of Columbia are authorized and directed to construct, maintain, and operate a low-level bridge over the Potomac River, from the vicinity of Constitution Avenue