**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, *et al.*,

       Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

       Defendants.

---

**PART FOUR:**

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ENTRY OF
JUDGMENT:**

**OBJECTION TO JUDGMENT AMOUNT**

---

## **TABLE OF CONTENTS**

I.     THE PREJUDGMENT INTEREST STATUTE PLAINTIFFS CITE IS
       FACIALLY INAPPLICABLE. ...........................................................................................3

II.    THE STARTING POINT FOR PREJUDGMENT INTEREST IS THE DATE OF
       INJURY, WHICH HERE WAS DECEMBER 31, 1995......................................................5

III.   PLAINTIFFS CANNOT RECOVER TWICE FOR THE TIME-VALUE OF
       THEIR DAMAGES THROUGH 2005. ............................................................................8

       A.    Plaintiffs Sought And Received A CPI Adjustment To Their Jury Award,
             Which Accounts The Time-Value Of Their Damages Through 2005 And
             Precludes Prejudgment Interest...............................................................................9

       B.    Plaintiffs Disavowed Prejudgment Interest During Trial To Gain Strategic
             Advantage. ............................................................................................................18

IV.    PLAINTIFFS MAY NOT RECOVER PREJUDGMENT INTEREST AFTER
       THE DATE THIS COURT ENTERED JUDGMENT, MAY 20, 2008............................22

## INTRODUCTION

Plaintiffs seek judgment in the amount of $1.282 billion: $176.8 million in compensatory damages and more than $1.1 billion in prejudgment interest, which plaintiffs calculated by applying a statutory 8% interest rate to the jury award and compounding it annually for over 25 years.  Plaintiffs are not entitled to any prejudgment interest.[1]  And, even if the Court were to conclude otherwise, plaintiffs still have miscalculated and overstated the amount of prejudgment interest, which, at a minimum, must be corrected and substantially reduced.

The Court should reject plaintiffs' overreaching interest calculation for the following reasons:

*First*, by its unambiguous terms, the Colorado prejudgment interest statute on which plaintiffs rely for their right to prejudgment interest does not apply here.

*Second*, even if the statute were facially applicable to this case, prejudgment interest could not be awarded before December 31, 1995, because that is the only date of plaintiffs' injury that can be clearly ascertained from the jury's verdict.

*Third*, nor can prejudgment interest be granted for the years 1990 to 2005, because such interest would impermissibly give plaintiffs a second, duplicative recovery of

---

[1]   Defendants objected to the award of prejudgment interest before the Tenth Circuit as well, but that court declined to reach the issue: "[b]ecause the case must be remanded on other grounds . . . . the court will not address Defendants' challenge to the district court's post-trial award of prejudgment interest."  *Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1152 (10th Cir. 2010) (*Cook Appeal I*).  The Tenth Circuit also noted that if the issue arose on remand, "any error can easily be rectified in a future appeal."  *Id.*

amounts already included in their jury award.  As plaintiffs' expert told the jury, he had accounted for the delay between injury and trial by applying an adjustment factor based on the Consumer Price Index (CPI).  Plaintiffs' counsel, in an effort to foreclose an important line of cross-examination related to the CPI adjustment, made this same point and represented to the Court that because of the CPI adjustment, plaintiffs were not seeking prejudgment interest.  The jury accepted the premise that the CPI adjustment made plaintiffs whole for inflation and lost appreciation (*i.e.*, investment return) during the pre-trial period, and, as they wrote on the verdict form, adjusted the compensatory damage award in exactly the way plaintiffs requested.  Plaintiffs' request for prejudgment interest flies in the face of their conduct at trial, logic, fairness, and the Colorado statute. The Court should rule that plaintiffs are not entitled to prejudgment interest for the period 1990 to 2005, and they are judicially estopped from changing their position.

*Fourth*, plaintiffs are not entitled to prejudgment interest after final judgment was entered on May 20, 2008.  From that date they can recover only postjudgment interest, if anything.

The following timeline illustrates defendants' four major objections and the years to which they apply: (1) the statute does not apply to this case for any time period; (2) plaintiffs cannot receive prejudgment interest before December 31, 1995, as that is the only clearly-ascertainable date of injury; (3) plaintiffs already received compensation for lost time-value of money for the years 1990 to 2005, and to grant them prejudgment

interest for those years would give them a double-recovery; and (4) plaintiffs are not entitled to prejudgment interest after final judgment was entered on May 20, 2008.



**ARGUMENT**

**I.   THE PREJUDGMENT INTEREST STATUTE PLAINTIFFS CITE IS FACIALLY INAPPLICABLE.**

Plaintiffs claim prejudgment interest under Colorado Revised Statute Section 5-12-102.  That statute, however, is limited by its unambiguous terms to cases involving the wrongful "withholding [of] money or property" from "creditors," and does not apply in a property-damage tort case like this one.  Because "[t]he right to interest, independent of an agreement to pay it, is statutory" under Colorado law, the absence of statutory authority precludes any award of non-contractual prejudgment interest.  *Lowell Staats Mining Co. v. Pioneer Uravan, Inc.*, 878 F.2d 1259, 1268 (10th Cir. 1989); *see also Rodriguez v. Schutt*, 914 P.2d 921, 925 (Colo. 1996).

As with any case of statutory interpretation, the language of the statute provides the starting point for analysis. *See*, *e.g.*, *Mesa Sand & Gravel Co. v. Landfill, Inc.*, 776 P.2d 362, 363-64 (Colo. 1989). Section 5-12-102 provides in relevant part:

> Statutory interest. (1) [W]hen there is no agreement as to the rate thereof, *creditors* shall receive interest as follows:
>
> (a)  When *money or property has been wrongfully withheld*, interest shall be an amount which fully recognizes the gain or benefit realized by the person *withholding such money or property* from the date of wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs; or, at the election of the claimant,
>
> (b)  Interest shall be at the rate of eight percent per annum compounded annually for *all moneys or the value of all property* after they are *wrongfully withheld* or after they become due to the date of payment or to the date judgment is entered, whichever first occurs.

Colo. Rev. Stat. § 5-12-102 (emphasis added). The plain language makes it clear that this statute does not apply generally to *all* plaintiffs, but only to a subset of plaintiffs: "creditors" from whom "money or property has been wrongfully withheld." *Id.* It would be highly unusual, to say the least, to characterize the "wrong" of damaging property through a tort as the "withholding [of] money or property" from a "creditor." *See id.* Thus, while failing to pay money or surrender property under a contract may trigger prejudgment interest under this provision, damaging property through nuisance would not.

Indeed, Colorado has a *separate* statute authorizing prejudgment interest in personal-injury cases. *See* Colo. Rev. Stat. § 13-21-101. That statute is not limited to "creditors," but expressly allows a "plaintiff" and "any person" to recover prejudgment

4

interest for personal injuries.  *Id.*  If *personal* injuries are not governed by Section 5-12-102, it is hard to see how *property* injuries can be covered by that provision.  There would have been no need for the personal injury prejudgment interest statute if, as plaintiffs claim, the creditor prejudgment interest statute (Section 5-12-102) applied to tort claims.

The bottom line here is that this Court need not, and should not, hold that Section 5-12-102 authorizes an award of prejudgment interest in a property-damage case like this one, where the "wrong" at issue does not involve the "withholding of money or property."

## II.     THE STARTING POINT FOR PREJUDGMENT INTEREST IS THE DATE OF INJURY, WHICH HERE WAS DECEMBER 31, 1995.

Plaintiffs ask this Court to apply prejudgment interest beginning on January 30, 1990, relying on this Court's analysis in *Cook v. Rockwell Int'l Corp.*, 564 F. Supp. 2d 1189, 1227 (D. Colo. 2008) (*Cook XVIII*), Corr. Mot. for J. at 5 (Dkt. 2371),   but the jury verdict requires the Court to use December 31, 1995, as the earliest possible start date for any prejudgment interest.

As demonstrated by the Colorado Supreme Court in *Goodyear Tire & Rubber Co. v. Holmes*, 193 P.3d 821 (Colo. 2008), courts should follow the following step-wise approach to the calculation of prejudgment interest: *First*, the jury must determine the

date of injury or wrong to the plaintiff's property.  193 P.3d at 827.[2]  *Second*, courts must fix the date of wrongful withholding, which in diminished value cases is the same as the date when the injury is measured.[3]  *Id.* at 828.  And *third*, courts must consider whether prejudgment interest is appropriate to compensate plaintiffs for the delay between when damages are measured and the date of a damages award.[4]  *See id.* at 828-29.

According to *Goodyear*, the date of injury and the date from which prejudgment interest accrues should be the same in a diminution of value case.  *Id.* at 828.  Therefore, it is essential to ascertain the date of injury as established by the jury at trial.  Plaintiffs chose to pursue prospective damages under the Second Restatement of Torts Section 930, which provides that such damages become compensable and are "measured at the time when the injurious situation became complete and comparatively enduring."  Restatement (Second) of Torts § 930; *see also* Jury Instruction 3.22 (Dkt. 2121); Ex. D, Trial Tr.

---

[2]   "When the plaintiff requests diminution in value damages," as here, "his loss is measured as of the time of the injury to the property—the date when the plaintiff was 'wronged.'"  *Goodyear*, 193 P.3d at 827.

[3]   This date is key under the terms of the statute, which provides for interest "for all moneys or the value of all property *after they are wrongfully withheld* or after they become due[.]"  Colo. Rev. Stat. § 5-12-102(1) (emphasis added).  In a property damage case, "wrongful withholding' occurs when the plaintiff suffers the injury to his or her property."  *Goodyear*, 193 P.3d at 828.

[4]   Courts do so because "[w]hile the damages would make plaintiff whole at the time when they are measured," that is, the time of the injury, "the defendant typically does not pay until later, when the damages are awarded by the court."  *Goodyear*, 193 P.3d at 826.  As a consequence, "[d]uring the period between the time at which the plaintiff's loss is measured," again, the time of injury, "the plaintiff is deprived of the use of the money or property that would constitute the award . . . . [and] [a]s a result, the plaintiff suffers a loss, frequently termed 'time value of money.'"  *Id.*

6

(1/20/2006) at 10648 (Dkt. 2037).  While January 30, 1990, is the date plaintiffs filed suit and the date the jury found plaintiffs could elect to pursue prospective damages under Section 930(3)(b)—*i.e.*, the date on which it appeared the nuisance would continue indefinitely, *see* Verdict Form at 28-29 (Dkt. 2117)—that date does not determine the date from which damages are measured and become compensable under Restatement (Second) of Torts § 930.  Damages are measured and become compensable when the injurious situation became "complete and comparatively enduring."  Restatement (Second) of Torts § 930.  And as to *that* critical date, the jury found only that the injurious situation became "complete and comparatively enduring" sometime between January 1, 1988, and December 31, 1995.  Jury Verdict Form at 23 (Dkt. 2117).

Therefore, December 31, 1995, must be used as the date of injury, because there is no other date in the eight-year period on which the Court can be *sure* that the jury had found the injurious situation was "complete and comparatively enduring."  Plaintiffs have the burden of proving their entitlement to prejudgment interest, and only "[i]f it is 'clearly ascertainable from the verdict or from uncontroverted facts' that a prevailing party is entitled to prejudgment interest, [then] the court may make the computation and add the interest to the verdict."  *NetQuote, Inc. v. Byrd*, No. 07-CV-630, 2009 WL 902437, at *12 (D. Colo. Apr. 1, 2009) (brackets omitted, quoting *Lowell Staats*, 878 F.2d at 1268-69; itself quoting *Wood v. Hazelet*, 237 P. 151, 152 (Colo. 1925)).  Other Colorado courts have denied prejudgment interest where either the evidence (in a bench

trial) or the jury verdict did not produce evidence sufficient to determine the start date for prejudgment interest. *See In re Rollison*, Bankr. No. 09-27801, 2013 WL 1305489, at *6 (Bankr. D. Colo. Mar. 28, 2013) (attempting to determine the date of wrongful withholding in a misrepresentation case, and concluding that prejudgment interest was not appropriate because the parties had not presented "evidence regarding a date certain" for when the defendant had misrepresented that he would build a home for plaintiffs, thereby "withholding" their property), *vacated on other grounds*, 500 B.R. 663 (B.A.P. 10th Cir. 2013); *NetQuote,* 2009 WL 902437, at *14 (denying prejudgment interest where it was not clear from the general jury verdict whether they had awarded damages for past lost profits (prejudgment interest available) or future lost profits (not available)); *cf. Contrada Inc. v. Parsley*, No. 10-CV-646, 2012 WL 5363325, at *3 (D. Colo. Oct. 31, 2012) (denying prejudgment interest where it was not "unquestionably clear" that the jury awarded no interest).  Based on the jury verdict, plaintiffs cannot show they are entitled to prejudgment interest before December 31, 1995.

## III.   PLAINTIFFS CANNOT RECOVER TWICE FOR THE TIME-VALUE OF THEIR DAMAGES THROUGH 2005.

However, plaintiffs still could not recover prejudgment interest for any period up to and including 2005, because the trial record and jury verdict clearly demonstrate that the jury's compensatory damage award of $176.8 million was not "actual damages" as defined by this Court's jury instructions, but rather actual damages *plus* an upward adjustment that plaintiffs' expert presented to the jury as a way to account for the time-

value of diminution damages through 2005.  Despite having obtained the benefit of that adjustment, plaintiffs now seek a more than six-fold windfall—$1,104,795,671.29 in prejudgment interest—**on top of** the time-value adjustment the jury already awarded. Corr. Mot. for J. at Ex. 1, 3 (Dkt. 2371).  The Court cannot award the requested prejudgment interest through 2005 because, **first**, it would be an impermissible double-recovery on top of the time-value adjustment plaintiffs sought and received from the jury, and **second**, plaintiffs are judicially estopped from recovering prejudgment interest through 2005, because they elected to ask the jury to account for the time-value of their damages through 2005 (by applying an adjustment based on the Consumer Price Index, which the jury did), and then objected to important lines of cross-examination based on their representation to the Court that they were not seeking prejudgment interest (which the Court sustained).  Plaintiffs cannot now change course and demand an improper double-recovery.

### A.  Plaintiffs Sought And Received A CPI Adjustment To Their Jury Award, Which Accounts For The Time-Value Of Their Damages Through 2005 And Precludes Prejudgment Interest.

Plaintiffs could have presented their actual damages number calculated as of the time of their injury, as contemplated by Jury Instruction 3.22, but they chose instead to ask the jury to increase their actual damages by applying an adjustment factor based on the CPI to account for the time-value of their damages through 2005.  Plaintiffs' expert, Mr. Hunsperger, told the jury that his initial estimate of plaintiffs' damages was in "1995 dollars," *see* Ex. A, Trial Tr. (12/5/2005) at 6417 (Dkt. 1869), but in anticipation of the

9

trial in late 2005, Mr. Hunsperger took his "1995 dollars" and converted them to "2005

dollars":

> Q.  Now, recently, this year, when we finally were confident that the case
> was going to go to trial, did you take those numbers and using the
> Consumer Price Index put them into ***2005 dollars***?
>
> A.  ***Yes, I did.***

*Id.* at 6418 (emphasis added).

> Q. . . . [C]an you just explain that to the jury.
>
> A.  Yes.  The residential property component became – if you recall, it was
> [$]169 million [in 1995 dollars].  It becomes $216 million in ***2005 dollars***.
> The vacant land component becomes $27 million.  And the total diminution
> in 2005 dollars becomes $243 million.

*Id.* at 6421-22 (emphasis added).

Mr. Hunsperger testified that he adjusted from "1995 dollars" to "2005 dollars"

using the CPI, and that he did so as a measure of the lost ***appreciation*** on the plaintiffs'

diminished property value:

> Q.  Sir, could you briefly tell the jury why you determined to use the
> Consumer Price Index to adjust the 1995 dollars to 2005 dollars?
>
> A.  ***CPI is a commonly used adjustment process in the real estate
> business.***  For example, leases are almost always written with CPI
> escalators, a five-year lease, rental rate escalates at the average increase in
> the CPI, it's a very common indicator.  I think in wage cases, CPI is often
> used to adjust – as an adjustment for wage indicators.  ***The alternative, of
> course, would be using real estate appreciation rates, real rates of
> appreciation, as a way to adjust from 1995 dollars to 2005 dollars.***  And in
> this particular case, the CPI actually understates the real rate of appreciation
> of housing in Denver – the Denver area from '95 to 2005.

*Id.* at 6419-20 (emphasis added).[5]

In short, plaintiffs' damages expert told the jury that they should take the "actual damages" measured as diminished property value per Instruction 3.22, and apply his CPI adjustment to compensate plaintiffs for inflation and lost appreciation, *i.e.*, rate of return, to 2005.  The jury accepted Mr. Hunsperger's testimony.  Leaving no doubt about what they had done, they twice noted on the verdict form that their damages awards had been "adjusted to CPI 2005."

All numbers adjusted to 2005 C.P.I.

|  | Percentage Undervaluation | Aggregate Damages (Entire Class) |
|---|---|---|
| RESIDENTIAL | 7 % | $ 144,199,088.00 |
| VACANT LAND | 30 % | $ 27,000,000.00 |
| COMMERCIAL | 53.03 % | $ 5,651,252.00 |
| | TOTAL: | $ 176,850,340.00 |

Jury Verdict Form, at 15 (Dkt. 2117).

_____

[5]   Though Mr. Hunsperger testified that "CPI understates the real rate of appreciation" of housing in the Denver area, which was "in excess of 6% per year," it was Mr. Hunsperger's decision, made with his expert knowledge and judgment, to use the CPI instead.  *See* Ex. A, Trial Tr. (12/5/2005) at 6420-21 (Dkt. 1869).   The Court cannot now second-guess his expert judgment, since the jury relied on it.

| | Percentage Undervaluation | | Aggregate Damages (Entire Class) |
|---|---|---|---|
| RESIDENTIAL | 7 | % | $ 144,199,088.00 |
| VACANT LAND | 30 | % | $ 27,000,000.00 |
| COMMERCIAL | 53.03 | % | $ 5,651,252.00 |
| | | TOTAL: | $ 176,850,340.00 |

*Adjusted to 2005 CPI*

*Id.* at 24.

The jury thus recognized the importance of the adjustment, and they did so because the plaintiffs had repeatedly stressed that the CPI adjustment was important. Jury Instruction 3.22 does not allow the jury to adjust its award to 2005 values: it specifically says actual damages are measured at the time "when the injurious situation became 'complete' and 'comparatively enduring.'"  Jury Instruction 3.22 (Dkt. 2121). The jury obviously accepted and understood the distinction between the "Measure of Actual Damages" as defined by Instruction 3.22, and knew that the CPI adjustment was a way to compensate plaintiffs for the time-value of actual damages during the delay in reaching judgment.

Mr. Hunsperger represented his adjustment as accounting for the delay to trial, and for both inflation and lost appreciation/rate of return, and his adjustment should be taken as such.  According to the Supreme Court, "interest and delay factor share an identical function."  *Library of Congress v. Shaw*, 478 U.S. 310, 322 (1986).  "An interest rate

reflects not only the real opportunity cost of capital, but also the inflation rate." *Id*. "In essence, the inflation factor adjustment is a disguised interest award." *Id*.

Yet, as explained in *Goodyear*, prejudgment interest is intended to compensate for the time-value of losses due to inflation and lack of opportunity to earn a return on the money. 193 P.3d at 826. Thus if a plaintiff has already been compensated for the time-value of money, prejudgment interest should not be given, as it would constitute a second recovery.

It was thus in *Goodyear*, where the court had to determine the start date for prejudgment interest for property damage caused by a faulty hose in the plaintiff's heating system. It was between 1991, the year the hose was installed, and 2001/2002, the year it was repaired. The court decided 2001/2002 was correct, because the jury's award of replacement costs ***already accounted for the time-value of money*** between 1991 and 2001/2002:

> [T]he replacement costs damages [plaintiff] received took into account the time value of money difference between the time when [plaintiff's] property was damaged and the time when [plaintiff] incurred replacement costs in 2001 and 2002. ***Accordingly, [plaintiff] did not suffer any loss of money or property for which he could be compensated by prejudgment interest until 2001 or 2002.***

193 P.3d at 829 (emphasis added) (citing *Mesa Sand & Gravel Co. v. Landfill, Inc.*, 776 P.2d 362, at 365 (Colo. 1989); Dan B. Dobbs, *Law of Remedies* § 3.6, at 360 (2d ed. 1993) ("Prejudgment interest is awarded to compensate for the delay the plaintiff suffered in receiving his rightful due. ***If delay has been compensated by other portions of the***

*judgment, prejudgment interest will be improper*.") (emphasis added)); *see also Home Loan Inv. Co. v. St. Paul Mercury Ins. Co*., 78 F. Supp. 3d 1307 (D. Colo. 2014) (similarly avoiding a time-based windfall in prejudgment interest).

Colorado courts repeatedly have recognized and applied this principle to preclude precisely the sort of double-recovery plaintiffs now seek.  In *Harper v. Colorado State Board of Land Commissioners*, the plaintiffs sought damages for breach of two agreements.  248 Fed. App'x 4 (10th Cir. 2007).  Their damages expert told the jury "the amount that the [plaintiffs] would have in the bank today if that contract had been permitted to close," and that he had "calculated the interest that was lost."  *Id.* at 12.  Nevertheless, after winning on one claim of breach at trial, plaintiffs disclaimed the clear import of their expert's testimony and asked for prejudgment interest over and above the jury's award.  The trial court denied their post-trial motion for prejudgment interest, and plaintiffs appealed to the Tenth Circuit.  On appeal, plaintiffs argued that the trial testimony regarding interest concerned the claim for breach of contract that failed, not the one for which they recovered damages.  The Tenth Circuit found that the jury could have understood plaintiffs' evidence to permit them to include interest in the judgment, that it was not made clear to the jury that interest is to be added later by the court, and affirmed the denial of prejudgment interest.  This was despite the fact that plaintiffs' attorney had made statements in closing that could have been construed as indicating that interest

would be added later, and despite the fact that it was not clear that the jury had included interest in the verdict.

A court in this district recently confronted a similar case.  In *Contrada Inc. v. Parsley*, the defendant defaulted on a loan from the plaintiff that provided for interest to accrue upon a default.  The plaintiff argued to the jury that its damages should include interest as provided in the contract, and the jury later awarded damages to plaintiff without specifying whether they had included contractual interest.  When the plaintiff later sought prejudgment interest under Section 5-12-102, the court refused:  "Because the default interest rate damages were submitted to the jury, and I cannot say it is 'unquestionably clear' that the jury awarded no interest, [plaintiff's] request for default interest must be denied."  No. 10-CV-646, 2012 WL 5363325, at *3 (D. Colo. Oct. 31, 2012) (quoting *Wood*, 237 P. at 152).

Another example is *Cronk v. Intermountain Rural Electric Association*, in which an employee sued his former employer for various torts, and at trial his expert presented the "actual dollars [plaintiff] lost annually," and then converted those dollars to "present day value" "to reflect the earnings that they could have had between the loss and the date of trial."  No. 90CA0666, 1992 WL 161811, at *9 (Colo. App. Apr. 2, 1992).  There, as here, the jury awarded economic damages that reflected the expert's time-value adjustment, and the trial court later added prejudgment interest on top of that award.  The court of appeals reversed, reasoning that the "damage figure submitted to the jury already

included interest," so through the jury award the plaintiff had already "recovered the loss of the use of his money to which he was legally entitled," and prejudgment interest was therefore inappropriate because the statute "*is not a means of gaining a double recovery*." *Id.* (emphasis added).

Similarly, in *Great Western Sugar Co. v. KN Energy, Inc.*, plaintiff won summary judgment on a claim for breach of a contract to buy natural gas at a discounted price. 778 P.2d 272, 273 (Colo. App. 1989). Later, in a bifurcated proceeding, a jury awarded plaintiff damages for the plaintiff's cost to cover (*i.e.*, the cost to obtain gas from an alternative source) and the trial court awarded prejudgment interest under Section 5-12-102(1)(a), which allows a plaintiff to elect to forgo the 8% interest specified by subsection (1)(b) and instead recover "the gain or benefit realized by the Seller" from withholding the gas. *Id.* The trial court then subtracted the cost-to-cover jury award from the seller's-gain prejudgment interest award, because the cost-to-cover was basically a measure of the cost of the gas to the seller as well as to the buyer, and thus the correct measure of prejudgment interest was to take the seller's gross gain on gas and subtract the cost of the gas. *Id.* at 276.

On appeal, the appeals court affirmed this deduction, holding that "the statute may not be used to impose double or other punitive damages. Thus to the extent that an award made under the statute provides double compensation for the same wrong, *it cannot stand*." 778 P.2d at 276 (Colo. App. 1989) (emphasis added); *see also Scognamillo v.*

*Olsen*, 795 P.2d 1357, 1364 (Colo. App. 1990) ("Here, the damage figure submitted to the jury already included interest . . . . Accordingly, [plaintiff] has recovered the 'loss' he suffered when deprived of money to which he was, through proof of defendants' negligence, legally entitled.  Allowing plaintiff to recover interest on this total amount would, in effect, twice compensate plaintiff for his 'loss.'")*; cf. Wood*, 237 P. at 152 (discussing common-law prejudgment interest before § 5-12-102(1)(a), and explaining "where it is unquestionably clear that the jury awarded no interest, or where the court reserved the question of allowance of interest until after the verdict, and it is clearly ascertainable from the verdict or from uncontroverted facts, the court may make the computation, and add interest to the verdict."); *Combined Commc'ns. Corp. v. Public Serv. Co. of Colo.*, 865 P.2d 893, 901 (Colo. App. 1993) (where plaintiff's expert had *not* "adjusted for the loss of the use of those wages . . . by the addition of interest," "*[h]ence*, the trial court did not err in adding prejudgment interest" under the personal injury statute) (emphasis added).

Under the authority cited above, a plaintiff who has received a jury award that took into account the time-value of money for all or some of the prejudgment period cannot receive prejudgment interest for that period.  As discussed above, the record clearly shows that plaintiffs elected, over defendants' repeated objections, to ask the jury to adjust its award to account for the time-value of plaintiffs' diminished property through 2005.  Unlike the *Harper* and *Contrada* cases, the verdict form here leaves no

17

room for doubt as to whether the jury awarded plaintiffs the time-value adjustment they sought: the jury specifically noted their award was adjusted to 2005 using the CPI method plaintiffs' expert had presented.  Awarding prejudgment interest on top of the jury award for any period before 2006 would be a clear double-recovery and Colorado law rightly forbids that unjust result.

      **B.**    **Plaintiffs Disavowed Prejudgment Interest During Trial To Gain Strategic Advantage.**

While itself fatal to their prejudgment interest claim, plaintiffs' counsel did more than present the CPI adjustment to the jury (through Mr. Hunsperger's testimony) as an adjustment they should make to compensate plaintiffs for inflation and lost appreciation/return on investment.  Plaintiffs' counsel also argued—successfully—that the Court should exclude a key demonstrative exhibit and cut-off an important line of cross-examination because Mr. Hunsperger's CPI adjustment was entirely separate from "actual damages" under Instruction 3.22 and plaintiffs had made that adjustment instead of seeking prejudgment interest.

This issue arose when defense counsel tried to cross-examine Mr. Hunsperger regarding his use of CPI.  Defense counsel sought to use a chart that compared, on one hand, the trend in the average, per-property diminished value or loss that Dr. Radke had calculated through 1995 against, on the other hand, the trend generated by applying the CPI to the 1990 diminished value.  The chart demonstrated that applying the CPI to the diminished value inflated the alleged loss relative to the actual real estate values through

2005.  *See* Ex. B, Trial Tr. (12/7/2005) at 6871-83 (Dkt. 1873); Ex. C, Trial Ex. DX-1526.  Plaintiffs' counsel strenuously objected to this exhibit on the ground that CPI was ***not*** being applied as a measure of actual damages as defined by Jury Instruction 3.22, but rather was a means to account for the time-value of those actual damages and was being offered instead of pursuing prejudgment interest:

> First of all, the relevant jury instruction—let me—just so it's clear on the record—is 3.22.  And the relevant jury instruction is the diminution in property values that plaintiff may recover here is measured by the difference between the actual value of the class properties and the value these properties would have had if Dow or Rockwell or both of them had not committed the trespass and/or nuisance proved by plaintiffs.
>
> . . .
>
> This increase in the CPI and the so-called divergence from Radke's data is completely irrelevant.  *The Radke and the Hunsperger data did an, in early 90s, estimate of value or diminution in value, and **the CPI is used to adjust that to 2005 dollars because of the delay in the case coming to trial.***
>
> *And because the dollars are in 1995 dollars, as he said in his report, are not the same as 2005 dollars, **no prejudgment interest has been sought**.*  And there is no reason why this adjustment could not be made.

Ex. B, Trial Tr. (12/7/2005) at 6877-78 (Dkt. 1873) (emphasis added).[6]  The Court then sustained plaintiffs' objection to the chart and the line of cross-examination.  *Id.* at 6883.

By presenting CPI evidence, and arguing that defense counsel should not be permitted to cross-examine Mr. Hunsperger about CPI as a measure of damages (rather

---

[6]      In their earlier briefing on the CPI issue, plaintiffs had attempted to preserve their option of seeking both the CPI adjustment and prejudgment interest.  *See* 11/16/2005 Pls.' Opp. to Defs.' Mot. re CPI Adjustment at 3 n.1 (Dkt. 1673).  But by the time of Mr. Hunsperger's testimony several weeks later, plaintiffs had apparently chosen the CPI adjustment, even at the cost of prejudgment interest.

than as a time-value adjustment), plaintiffs got exactly they wanted: a sustained objection that cut off defendants' CPI-related cross-examination, Ex. B, Trial Tr. (12/7/2005) at 6877-78, 6883 (Dkt. 1873), and a damages award "adjusted to 2005." Jury Verdict Form, at 15, 24 (Dkt. 2117).

Having secured those fiscal and strategic advantages, which resulted in a $176 million nuisance verdict, plaintiffs now seek to capture an additional billion dollars by demanding the prejudgment interest they previously disavowed: "The total compensatory damages collected by Plaintiffs from all Defendants pursuant to this Final Judgment equals $1,281,646,011.29, which includes a jury award of $176,850,340.00 and *$1,104,795,671.29 in prejudgment interest*." Corr. Mot. for J. at Ex. 1, 3 (Dkt. 2371). The injustice of plaintiffs' opportunism is only exacerbated by the fact that a substantial portion of the $1,104,795,671.29 in prejudgment interest they seek is calculated based on the portion of the jury award that already reflected the jury's CPI-derived time-value adjustment. In other words, plaintiffs want interest on top of their interest.

The well-established doctrine of judicial estoppel prevents such maneuvering. *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001). The doctrine holds that "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Id.* (quoting *Davis v. Wakelee*, 156 U.S. 680, 689

(1895)).    More   succinctly,   judicial   estoppel   "prohibit[s]   parties   from   deliberately changing   positions   according   to   the   exigencies   of   the   moment."    *Id.* (quoting *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993)).   The Tenth Circuit has explained that courts look to three factors to determine when judicial estoppel applies:

> ***First***, a party's subsequent position must be clearly inconsistent with its former position.   ***Next***, a court should inquire whether the suspect party succeeded in persuading a court to accept that party's former position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled[.]   ***Finally***, the court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped.

*Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007) (emphasis added) (internal quotations and citations omitted); *see also New Hampshire*, 532 U.S. at 749-50.

Each   of   the   *Eastman*   factors   strongly   indicates   that   plaintiffs   are   judicially estopped from obtaining pre-judgment interest.   ***First***, plaintiffs' request for prejudgment interest is directly inconsistent with their previous position that the CPI adjustment was a time-value adjustment they were seeking instead of prejudgment interest.   Ex. B, Trial Tr. (12/7/2005) at 6877-78 (Dkt. 1873) ("no prejudgment interest has been sought.   And there is no reason why this [CPI] adjustment could not be made.").

***Next***, the record clearly shows plaintiffs successfully persuaded the Court and the jury that the CPI adjustment was not a part of actual damages measured under Instruction 3.22, but rather a time-value adjustment to account for the delay in getting to trial and judgment.   The Court accepted plaintiffs' argument and foreclosed an important line of

cross-examination, *id.* at 6883, and the jury awarded plaintiffs damages that were "adjusted to 2005 CPI." Jury Verdict Form at 15, 24 (Dkt. 2117).

***Finally***, the unfairness of allowing plaintiffs to reverse their position is truly historic. After telling the Court they were presenting CPI to the jury instead of seeking prejudgment interest, and convincing the jury to adjust its award upward based on the CPI in order to account for the lost time-value from the date of the damage to 2005, plaintiffs now seek an additional $1,104,795,671.29 in prejudgment interest, a substantial fraction of which is compounded interest on the CPI adjustment itself. Allowing such a double-recovery based on plaintiffs' double-dealing would be profoundly unjust.

## IV.   PLAINTIFFS MAY NOT RECOVER PREJUDGMENT INTEREST AFTER THE DATE THIS COURT ENTERED JUDGMENT, MAY 20, 2008.

Prejudgment interest stopped accruing on the date the damages were "meaningfully ascertained and included in a final appealable judgment." *MidAmerica Federal Savings & Loan Ass'n v. Shearson/Am. Express, Inc.*, 962 F.2d 1470, 1476 (10th Cir. 1992); *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835-36 (1990); *see also* Colo. Rev. Stat. § 5-12-102 (prejudgment interest available "to the date of payment or to the date judgment is entered, whichever first occurs"). In this case, damages were meaningfully ascertained and included in a final appealable judgment on May 20, 2008. *Cook XVIII*, 564 F. Supp. 2d at 1216 (entering final judgment and determining that "the total compensatory damages owed by Dow and Rockwell [were]

$176.8 million, the aggregate damages to the Class found by the jury on both the trespass and nuisance claims").

Binding Tenth Circuit precedent holds in circumstances where judgment is entered, reversed on appeal, and then reentered, that "post-judgment interest accrues on the date of the first judgment when 'the reversal is not on any basic liability errors or errors in procedure which affected the basic issues but on a dollar value, a matter of degree.'" *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1097 (10th Cir. 1991) (quoting *Northern Nat. Gas Co. v. Hegler*, 818 F.2d 730, 737-38 (10th Cir. 1987))*; see also Bancamerica Commercial Corp. v. Mosher Steel of Kansas, Inc.*, 103 F.3d 80, 81 (10th Cir. 1996) (date of the original judgment controls if "the original judgment is basically sound").  Courts peg commencement of the post-judgment interest period to the latter judgment only if the "case is reversed completely on the merits."  *Wheeler*, 935 F.2d at 1097 (citing *Kaiser*, 494 U.S. at 835-36).

The core premise of plaintiffs' motion for judgment is that the original judgment is entirely sound, indeed, "error-free": plaintiffs "respectfully request that the Court enter a state law nuisance judgment on the existing nuisance verdict."  Corr. Mot. for J. at 3, 5 (Dkt. 2367).   Plaintiffs have repeatedly characterized their request as one for "***reinstatement***" of the nuisance verdict and entry of an identical judgment (but for additional interest, and punitive damages, which they abandoned).[7]  For all the reasons

---

[7]     *See, e.g.*, Pls.' *Cook Appeal II* Opening Br. at 7 ("On remand, Plaintiffs sought reinstatement of their compensatory nuisance jury verdict and judgment because (1) the jury was properly

stated in defendants' briefing in response to plaintiffs' motion for judgment, as well as those presented in *Cook Appeal I* and *II* and those that defendants will shortly present to the Supreme Court, defendants dispute that any part of the original verdict or judgment remains to be reinstated and further contend that numerous legal deficiencies in the judgment and the proceedings that led to the judgment prevent its reinstatement.  But if the Court accepts plaintiffs' arguments and enters judgment in their favor based on the "existing" nuisance verdict, then plainly it accepts that the original verdict and judgment were basically sound and not "reversed on the merits."  *See Wheeler*, 935 F.2d at 1097. For that reason, if the Court enters any final judgment based on the former nuisance verdict, then it can apply only ***post***judgment interest, not ***pre***judgment interest, from May 20, 2008, to the date of payment.[8]

---

instructed on Plaintiffs' Colorado nuisance claims, and (2) Plaintiffs' state nuisance claims were not preempted by the PAA."); *id.* at 36 ("the jury followed these instructions, and returned a nuisance verdict that can and should be reinstated"); 8/7/2012 Joint Status Rpt. at 1 (Dkt. 2326) ("Plaintiffs propose that the parties brief the following issues: (1) the reinstatement of the jury's verdict and the Court's entry of judgment on Plaintiffs' nuisance claim[.]").

[8]   *See id.; Adrian v. Town of Yorktown*, 620 F.3d 104 (2d Cir. 2010) (where district court entered judgment and then vacated it, and verdict was reinstated on appeal, date of original judgment, not date of reinstatement, controlled the switch between prejudgment and postjudgment interest); *H.J., Inc. v. Flytg Corp.*, 925 F.2d 257 (8th Cir. 1991) (where jury found for plaintiffs on antitrust and state law claims, judgment was entered on both, the state law claims damages were reversed on appeal, and on remand plaintiffs sought and received judgment only on their antitrust claims, the date of the original judgment, not the date of judgment on remand, controlled the switch between prejudgment and postjudgment interest).

**<u>CONCLUSION</u>**

Should the Court enter judgment, it should limit the judgment to the compensatory damages amount.    Alternatively, to account for the improper assumptions and miscalculations discussed above, the Court should reduce the amount of interest so that plaintiffs:

- Do not receive compensation for the time-value of money before the jury even found them to have been injured, December 31, 1995;

- Are not doubly compensated for the time-value of money in the years 1990 to 2005; and

- Do not receive prejudgment interest after May 20, 2008, when they are entitled to receive only postjudgment interest.

Defendants also propose that the Court first identify the principles it will use in determining plaintiffs' prejudgment interest, if any, and then give the parties an opportunity to present the corresponding calculations and figures.

Date: September 10, 2015

*/s/ Kevin Van Wart*
Kevin T. Van Wart, P.C.
Bradley H. Weidenhammer
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
Phone: (312) 862-2000
Facsimile: (312) 862-2200
Email:  kvanwart@kirkland.com

Joseph Bronesky
SHERMAN & HOWARD LLC
633 Seventeenth Street, Suite 3000
Denver, CO  80202
Phone: (303) 297-2900

Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on this 10th day of September, 2015, he caused the foregoing submission to be served via the Court's ECF system on all participating counsel.

/s/ *Kevin T. Van Wart*
Kevin T. Van Wart, P.C.