# Exhibit A

Page 6371

FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-00181(JLK)

MERILYN COOK, et al.,

    Plaintiffs,

vs.

ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,

    Defendants.

_____


REPORTER'S TRANSCRIPT
TRIAL TO JURY
Volume 50

_____

       Proceedings before the HONORABLE JOHN L. KANE, JR., Senior Judge, United States District Court for the District of Colorado, continuing at 1:17 p.m., on the 5th day of December, 2005, in Courtroom A802, United States Courthouse, Denver, Colorado.

Proceeding Recorded by Mechanical Stenography, Transcription
Produced via Computer by Therese Lindblom, 901 19th Street,
Room A259, Denver, Colorado, 80294, (303) 628-7877

Page 6417

1      For vacant land, it was about 30 percent on average
2  across the class area, recognizing that those properties
3  nearest Rocky Flats were probably diminished greater, and
4  that -- the depression or the diminution decreased the further
5  you went from the plant.
6  Q.  So that was an average, those percentages of 10 percent and
7  30 percent were averages?
8  A.  That's correct.
9  Q.  Now, let's talk about the dollars.  The dollars were
10 expressed in -- since your report was written in 1996, and
11 since the last year that you had data for was 1995, the dollars
12 were expressed in terms of what a dollar was worth in 1995; is
13 that right?
14 A.  That's right.
15 Q.  What were the total damages that you found in dollars, I
16 think we have a slide on this, for residential properties and
17 for vacant land, in 1995 dollars?
18 A.  In 1995 dollars, for residential properties, which included
19 detached and attached residences, was $169 million.
20      And for vacant land, that's no buildings, just vacant,
21 $21 million, for a total diminution of $190,000,000, in 1995
22 dollars.
23 Q.  And your report said that was expressed in 1995 dollars; is
24 that correct?
25 A.  That's right.

```
                                                          Page 6418
 1   Q.  Now, recently, this year, when we finally were confident
 2   that the case was going to go to trial, did you take those
 3   numbers and using the Consumer Price Index put them into 2005
 4   dollars?
 5   A.  Yes, I did.
 6   Q.  And we have a slide on that --
 7           MR. BERNICK:  Object, this is specifically the subject
 8   of a motion that's still pending before the Court.
 9           MR. DAVIDOFF:  The motion was decided, I thought, Your
10   Honor, on the CPI adjustment.
11           THE COURT:  Yes, it was.
12           MR. BERNICK:  It has to be a foundation laid through
13   the witness, though.
14           THE COURT:  Yes, you have to do that.  The foundation
15   is another matter.
16   BY MR. DAVIDOFF:
17   Q.  Let's look at slide G100 -- page 100, G955.
18   A.  Yes, I see that.
19   Q.  All right.  Before we get there, did you retrieve these
20   figures for the Denver-Boulder-Greeley Consumer Price Index?
21   A.  I did.
22   Q.  Are these government figures published by the United States
23   Department of Labor?
24   A.  Yes, they are.
25   Q.  Did you make a determination that these -- the Consumer
```

Page 6419

1   Price Index should be the way to adjust the 1995 dollars for
2   2005 dollars?
3   A.  I did.  Yes.
4   Q.  Could you tell the jury briefly why you determined to use
5   the Consumer Price Index rather than some other measure?
6              MR. BERNICK:  Your Honor, at this point, I don't
7   believe that we've established any qualifications of this
8   witness to make that choice to begin with; that is, whether the
9   CPI index is appropriate or whether some other escalator is
10  appropriate.
11             THE COURT:  Whether he considered it appropriate or
12  not, if he did, you can -- you can bring it out on
13  cross-examination.  The objection is overruled.
14             MR. BERNICK:  Your Honor, so I can cross-examine --
15             THE COURT:  Yeah.
16             MR. BERNICK:  What is the expertise on the basis upon
17  which he's going to answer the question?
18             THE COURT:  I don't know.  If he uses it in the course
19  of his work and he finds it to be acceptable, then he can do
20  that.
21  BY MR. DAVIDOFF:
22  Q.  Sir, could you briefly tell the jury why you determined to
23  use the Consumer Price Index to adjust the 1995 dollars to 2005
24  dollars?
25  A.  CPI is a commonly used adjustment process in the real

Page 6420

1  estate business.

2  For example, leases are almost always written with CPI

3  escalators, a five-year lease, rental rate escalates at the

4  average increase in the CPI, it's a very common indicator.  I

5  think in wage cases, CPI is often used to adjust -- as an

6  adjustment for wage indicators.

7  The alternative, of course, would be using real estate

8  appreciation rates, real rates of appreciation, as a way to

9  adjust from 1995 dollars to 2005 dollars.  And in this

10 particular case, the CPI actually understates the real rate of

11 appreciation of housing in Denver -- the Denver area from '95

12 to 2005.

13 Q.  In other words, if you had used the rate of appreciation of

14 property, you would have come up with a greater damage figure

15 or a lesser damage figure?

16 MR. BERNICK:  A, that's leading; B, he's now presumed

17 an analysis that's not even in evidence.  Again, we still don't

18 know what the expertise on which he makes that.

19 THE COURT:  It is leading.  Objection sustained.

20 BY MR. DAVIDOFF:

21 Q.  Would you explain to the jury why, if it is, it's

22 conservative to use the CPI rather than residential

23 appreciation.

24 MR. BERNICK:  Same objection, Your Honor.

25 THE COURT:  Overruled.

Page 6421

1      THE WITNESS:  The CPI increase from 1995 to mid year
2  2005 was about -- in total, 27.94 percent.  And I think that's
3  about 3 percent per year.  And the real rate of housing
4  appreciation in the Denver metropolitan area for the same
5  amount of time was in excess of 6 percent per year.
6  BY MR. DAVIDOFF:
7  Q.  How much in total?
8  A.  Without compounding it, that would be 60 percent, it would
9  be double.
10 Q.  Okay.  Now, what was -- the CPI on your chart here from the
11 Bureau of Labor Statistics rose from 147.9 to 189.2 in this
12 area.  What did you do to come up with this 27.94 percent
13 increase?
14 A.  I factored the 1995 diminution in value dollars upward by
15 27.94 percent.
16 Q.  And then what did that -- do we have a slide on what that
17 caused the numbers to be?
18 A.  Yes, we do.
19      MR. DAVIDOFF:  Can we show that slide, Your Honor, the
20 next slide?
21      MR. BERNICK:  I've said the objection before.
22      THE COURT:  The objection is overruled.  Go ahead.
23 BY MR. DAVIDOFF:
24 Q.  Okay.  This is taking the 27.94 increase in the Consumer
25 Price Index or multiplying by 1.279 in 2005, these numbers

Page 6422

1  became -- can you just explain that to the jury.
2  A.  Yes.  The residential property component became -- if you
3  recall, it was 169 million.  It becomes $216 million in 2005
4  dollars.  The vacant land component becomes $27 million.  And
5  the total diminution in 2005 dollars becomes $243 million.
6  Q.  Who made the decision to use the Consumer Price Index to
7  make this adjustment?
8  A.  I did.
9  Q.  Okay.  Could you -- I think we want to go to the next
10 slide, which is slide No. -- page 6, G814.
11          I want to go back to how you came to these numbers
12 piece by piece, okay, Dr. -- Mr. Hunsperger.
13 A.  Yes.  The -- Dr. Radke was helpful in this determination as
14 well because he was able to digitize the public records into
15 his statistical model and count the number of residential
16 properties.  And there were 12,019 in the class area.  And he
17 did -- used the same sort of GIS base to estimate the number of
18 vacant land parcels, as well as the total acreage.  There were
19 1,462 vacant land parcels.  There was some 4,812 acres, it was
20 a total by Dr. Radke's count of $13,481, but I understand
21 that --
22 Q.  I think you mean 13,481 properties.
23 A.  You're correct.  I stand corrected.
24 Q.  Okay.
25 A.  And I understand that that may be a conservative account,