# Exhibit B

Page 6797

FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-00181(JLK)

MERILYN COOK, et al.,

    Plaintiffs,

vs.

ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,

    Defendants.

_____

REPORTER'S TRANSCRIPT
TRIAL TO JURY
Volume 54

_____

       Proceedings before the HONORABLE JOHN L. KANE, JR.,
Senior Judge, United States District Court for the District of
Colorado, continuing at 1:27 p.m., on the 7th day of December,
2005, in Courtroom A802, United States Courthouse, Denver,
Colorado.

Proceeding Recorded by Mechanical Stenography, Transcription
Produced via Computer by Therese Lindblom, 901 19th Street,
Room A259, Denver, Colorado, 80294, (303) 628-7877

1    BY MR. BERNICK:

2    Q.  Correct?

3    A.  Correct.

4    Q.  Okay.  Now, the last question -- I'm sorry, it's CPI -- let

5    me ask it this way, I've got --

6         MR. DAVIDOFF:  Your Honor, we have an objection to the

7    exhibit on CPI that we would like to -- we think we can take up

8    at side bar, but we filed it -- excuse me, Your Honor.  It's

9    Exhibit --

10        MR. BERNICK:  1526.

11        MR. DAVIDOFF:  Sorry.  Yeah, 1526, Your Honor, that is

12   inconsistent with Your Honor's ruling on the CPI.

13        MR. BERNICK:  I don't --

14        THE COURT:  Let's do this during a break.

15        MR. BERNICK:  I --

16        THE COURT:  I need to locate it.

17        Let's take our break now, ladies and gentlemen.

18        (Jury out at 3:11 p.m.)

19        MR. DAVIDOFF:  Your Honor, I also want to raise a

20   timing issue.

21        Dr. Selbin -- in light of the -- in light of the

22   length -- likely length of the redirect, it seems unlikely

23   we'll reach him this afternoon.  Can I excuse him until

24   tomorrow morning?

25        THE COURT:  Yes.

Page 6872

1          MR. BERNICK:  Well, I --

2          THE COURT:  Yes.

3          MR. BERNICK:  I don't know why that's true.  We've got

4  until 5 o'clock.

5          THE COURT:  I don't know that we have until 5:00, but

6  I need -- he says he's going to take up -- he's got three hours

7  to do it.

8          MR. BERNICK:  He doesn't have three hours.

9          MR. DAVIDOFF:  I'm not going to use all of my time,

10  Your Honor.

11          THE COURT:  Six and three.

12          MR. DAVIDOFF:  We'll use the balance of the afternoon.

13          MR. BERNICK:  Six and two and a half.

14          THE COURT:  I'm sorry.

15          MR. BERNICK:  I pushed as hard as I could to finish

16  with this promptly, and we want to start our case.  If he's not

17  going to be on -- what I don't want to see happen here is we

18  get to 4:30, and let's break at 4:30.

19          THE COURT:  All right.  Have him stay.

20          Let's get on with the objection now.  What's the

21  objection to what number?

22          MR. DAVIDOFF:  It's very simple, Your Honor.

23          THE COURT:  Give me the number, please.

24          MR. DAVIDOFF:  1526.

25          Can I use the Elmo?

Page 6873

1              THE COURT:  Yes, go ahead.

2              MR. DAVIDOFF:  I think it's on there.

3              THE COURT:  This is the one that appears to have a

4    typographical error, you state?

5              MR. DAVIDOFF:  I don't --

6              THE COURT:  Table, first column, first line.

7              MR. DAVIDOFF:  I think that's different.

8              THE COURT:  That's 1522.  This is 1526?

9              MR. DAVIDOFF:  Right, the defendants created this,

10   provided it to us last night.  It's titled --

11             MR. BERNICK:  The witness should not be present during

12   this discussion.

13             THE COURT:  All right.

14             MR. BERNICK:  This is the second time this has

15   happened.

16             It's my fault, I put it up.

17             MR. DAVIDOFF:  There --

18             THE COURT:  Go ahead.

19             MR. DAVIDOFF:  There are several major infirmities

20   with this chart.

21             The loss -- the title, CPI Overpredicts Increase in

22   Loss to Class.

23             The loss to the class was calculated in early 1990s,

24   as Mr. Hunsperger has testified.

25             It was expressed in 1995 dollars in his report,

1    because that was the last year for which he had data.  And when

2    I say "loss," loss is probably not quite the word that I mean.

3    It's depression in valuation or diminution in value, which is

4    what's in Your Honor's jury instructions, it's in Restatement

5    of Torts 2d, Section 930, which is the measure in this case.

6          And that is the problem.  They're trying to go back to

7    the before and after that Your Honor rejected.

8          And then this even compounds the problem further,

9    because what the CPI adjustment did was adjust the 1995 dollars

10   so that they would be equivalent to 2005 dollars, when we're

11   finally trying the case.

12         And it does not -- we're not talking about an increase

13   in a loss to the class because of the CPI adjustment.  All the

14   CPI adjustment does is bring the class recovery back to where

15   it was in 1995 dollars, using the CPI.

16         So this chart is grossly misleading.

17         Now, I think some of their other exhibits were

18   misleading, but this one compounds the misleading threefold.

19         First of all, again, we have this before and after.

20   That's not the measure of damages in this class.  It isn't

21   loss; it's diminution in value.  The CPI wasn't used to predict

22   or overpredict.  All the CPI did was take '95 dollars and

23   adjust them to 2005 dollars, and the measure was done in the

24   early 1990s.  The chart is grossly misleading.

25         MR. BERNICK:  Your Honor -- could you put it back up

1    there, please.

2          I'm glad that Mr. Davidoff has brought this up,

3    because we are dealing with a fundamental -- again, fundamental

4    problem in the case, and if it's confusing to the lawyers, the

5    jury has no hope of deciding the matter.

6          Your Honor has said that the case is about diminution

7    in value.  That's obviously correct.  Your Honor has said the

8    case is about ongoing diminution in value.  That is an issue

9    that has to be decided.

10         This jury can decide that there has not been an

11   ongoing diminution in value.  The values have changed,

12   fluctuated, that stigma has come and gone, and they also can

13   decide that this class has not experienced a diminution in the

14   value of their property at any time.  And if they do that, they

15   lose.

16         You can't presume that the class is able to recover

17   any diminution in value of property that occurred at any point

18   in time at all.  They have to have experienced it.  If they

19   don't have the injury as a class, they have got no claim.

20         What Mr. Davidoff is saying somehow is that we can't

21   contest, A, that there has been a loss to the class or a loss

22   on value of class property; and, B, we can't contest the things

23   have changed.  We believe that they have changed.

24         And the dots that appear here are taken right from

25   Radke's work.  And they show, just as the last chart did, that

1 over time, from '90 to '95, the difference between class values

2 and non-class values has shrunk; in other words, the trend that

3 emerged from the last two years is that the class properties

4 are coming closer and closer, even under Radke's model, to the

5 non-class properties, which means that the loss is not complete

6 and comparatively enduring.

7      Now, we are entitled to show that.  We're going to

8 show that.  We have already shown that.

9      What does the CPI index do?  The CPI index doesn't

10 measure what is happening to real estate at all.  It's not a

11 question of the dollar -- the value of the dollar to buy real

12 estate at all.  It's the value of the dollar to buy other

13 consumer goods.  And that's why we said, it has no application

14 here.  Your Honor has disagreed and allowed it to be presented,

15 we can contest it.

16      What they get by having the CPI index be used is they

17 get an automatic, continuing perpetuation and increase of the

18 difference between class properties, class properties and

19 non-class properties, when, in fact, the difference is

20 declining.

21      In other words, they basically say -- like this, they

22 go like this, they say, take the loss as of 1990 or 1992,

23 whatever they want to say, and just escalate it on the theory

24 that, well, over time, dollars for real estate bought less and

25 less and less, whereas, in fact, the loss shrunk over time.

1    That's what happened to the ability to purchase real estate

2    dollars in the class.  It shrunk over time.  So time actually

3    has healed the wounds, rather than perpetuating the wounds.

4            And they have no contrary data after 1995.  All

5    they're doing is using the CPI to argue that, really, it kind

6    of went like this, the class bounced down and then bounced back

7    up again.  That's just not true.

8            So they may say, oh, we would like to use the CPI

9    index, but they can't say that we're foreclosed from showing

10   that the CPI index creates a sham.  It's just wrong.

11           And for Your Honor to preclude this, Your Honor is

12   saying as a matter of law that in any case involving real

13   estate, for that matter, anything else, a damage that's

14   sustained always gets escalated -- he can keep track of

15   inflationary dollars.  I'm not aware of any principle of law

16   that says -- we've got a contract case, and the contract is

17   breached in 1995, case gets tried in 2005, they get to recover

18   more because of inflation?  That's what this does.

19           MR. DAVIDOFF:  Your Honor, can I just have a couple of

20   minutes, please?

21           THE COURT:  Yes.

22           MR. DAVIDOFF:  I'll -- I'm going to approach the

23   podium.  And I'm going to leave this on there.

24           First of all, the relevant jury instruction -- let

25   me -- just so it's clear on the record -- is 3.22.  And the

Page 6878

1    relevant jury instruction is the diminution in property values

2    that plaintiff may recover here is measured by the difference

3    between the actual value of the class properties and the value

4    these properties would have had if Dow or Rockwell or both of

5    them had not committed the trespass and/or nuisance proved by

6    plaintiffs.

7            And I'm not going to go through the rest of it.  It's

8    true, they can contest some of the elements of it.  But that's

9    the relevant jury instruction.

10           This chart is grossly misleading.  I mean, first of

11   all, we don't know what the scale is on the left-hand side

12   here.  I have no clue what that is.  But loss is not the value,

13   it's not the criteria in the jury instruction; it's diminution

14   in value, and that's the infirmity of the whole line of

15   cross-examination.

16           This increase in the CPI and the so-called divergence

17   from Radke's data is completely irrelevant.

18           The Radke and the Hunsperger data did an, in early

19   '90s, estimate of value or diminution in value, and the CPI is

20   used to adjust that to 2005 dollars because of the delay in the

21   case coming to trial.

22           And because the dollars are in 1995 dollars, as he

23   said in his report, are not the same as 2005 dollars, no

24   prejudgment interest has been sought.  And there is no reason

25   why this adjustment could not be made.

Page 6879

1       What, in effect, Mr. Bernick is arguing, is rearguing

2   the CPI motion that Your Honor granted.

3       And we have one other point --

4       MR. NORDBERG:  Well, if I could just have a moment,

5   Your Honor.

6       I think Mr. Davidoff's confusion about the scale on

7   the left is justifiable because I don't think it's the same

8   scale for the orange dots and the green dots.  That is to say,

9   I think that the key on the right side, the Radke calculation

10  of loss, by which I think is meant, percentage diminution in

11  property relative to non-class properties, of course should not

12  be -- 9,000, or 8,000.

13      That's percentage relative diminution figure, I think

14  it would be 8, 9 or 10 --

15      MR. BERNICK:  Just to save you a little bit of time,

16  Mr. Nordberg, those numbers come right from Radke.

17      MR. NORDBERG:  Yes, but I think the point isn't what

18  the numbers are, Mr. Bernick.  The point is what measure it's

19  being used, and you're comparing two completely different

20  things, I believe.  You can correct me if I'm wrong.

21      I believe the green figures are a percentage

22  diminution in value for class relative to non-class properties

23  for each year of the regression.  They're not dollar values in

24  any sense of the word.  They are percentage.  They're "for

25  instance."

Page 6880

1          I believe that the orange dots represent what the

2     value of $9,000 or $10,000 piece of property as of 1991 would

3     be over time in constant dollars.  Not percentages, but

4     dollars.

5          What is misleading among other things about this chart

6     is the implication that the CPI would predict an increase in

7     the differential, in the percentage differential between class

8     and non-class properties.  So that the implication is that the

9     CPI would predict that what might start out as a 10 percent

10    difference would increase to a 12, 14, 16 percent difference,

11    which is, A, not something that anyone is contending; and, B,

12    something completely contrary to what Mr. Bernick was just

13    arguing to the jury at length would be implied by the

14    applicability of the CPI evenly to both class and non-class

15    properties.

16          In sum, I think if you had two separate graphs here,

17    one for the green dots and one for the orange dots, and if you

18    wrote in the units of the scale on two different graphs, you

19    could see that.  Because the graph with the orange dots, the

20    units would say dollars.  And for the green dots -- first of

21    all, all of these figures would be divided by 1,000.  And the

22    label wouldn't be dollars, it would be percentage diminution

23    relative to non-class properties.

24          MR. BERNICK:  I --

25          MR. NORDBERG:  The whole graph --

Page 6881

1          MR. BERNICK:  That's just wrong.

2          MR. NORDBERG:  -- is automatically illegitimate.

3          MR. BERNICK:  The orange dots come from Radke's

4   report.  The simple way to look at it is, you start out with a

5   loss as of 1990.  Let's assume the jury decides to completely

6   consider as of 1990 and further has to decide the loss -- the

7   loss in 1990 is $9,800.  According to what the Radke's trends

8   show, that is, his fluctuation over time, a person with that

9   loss staying in the market would see this:  Would see it

10  shrink.  That is, the person hangs onto their property until

11  1995.  That loss has now been mitigated because they've hung

12  onto it.  They never sold it.

13         The guy who owns the property, complete enduring,

14  diminution of value, 1990, we do a freeze frame, we pretend

15  there is nothing else in the world, but he holds onto the

16  property.  By 1995 that loss has been mitigated because of what

17  has happened to the value of property in the area.  It's

18  increased in relationship to the class property, which is,

19  after all, the measure of the diminution -- non-class property.

20         If you use the CPI, all these orange dots do is take

21  the same data point and say, we're going to ignore what is

22  happening in the real world marketplace for real estate and

23  instead assume that the person actually sells, and then invests

24  the money in goods or services that track the CPI, then the

25  loss increases.  That's what this chart shows.

Page 6882

1          By selecting CPI, you divorce yourself from what is

2    happening actually to the value of the land as a good, and

3    instead you go to what is happening to the value of consumer

4    goods in relationship to the dollar.

5          Now, it may be, Your Honor -- this is why we tried to

6    raise this, and it really ought not be a matter that goes to

7    the jury; it really is for the Court to decide.  That's why we

8    objected to it.  But the jury's now seen it.  And I think we

9    should have the opportunity to bring out what actually has

10   happened to the real estate dollars in Denver, in Rocky Flats,

11   in particular, versus the effect of the CPI, which is -- you're

12   on an escalator that doesn't stop.

13         One other thing that I'd ask the Court, and maybe this

14   is something that we have to talk about some more.  But Your

15   Honor made -- in response to Mr. Davidoff's request, overruled

16   an objection, but then said, yeah, this is relevant, but it's

17   not what the jury has to decide, that is, whether there has

18   been a loss to this class.

19         For the life of me, A, I can't understand it; B,

20   coming from the Court, I don't know how this jury -- you've now

21   instructed the jury, in essence, that whether the class lost

22   value in their property -- they pick on the word "loss."

23   Substitute the word "diminution."

24         Whether the class -- the class -- suffered a

25   diminution of value of their property most certainly is at

Page 6883

1   issue.  And we're entitled to show that because the stigma

2   predated the acquisition of property by these class members,

3   the market -- their investment -- they got the benefit of the

4   stigma, and as a result, there is not a claim in this case,

5   that's what the instructions say.

6            It's our burden.  But if we sustain our burden and can

7   show that there has not been a diminution in the hands of this

8   class, then we win.

9            And Your Honor made the statement -- I don't

10  understand what Your Honor -- if you could explain -- maybe you

11  don't want to -- what is it that Your Honor meant by that,

12  because it was a very important statement that was made to the

13  jury during the middle of this cross-examination.

14           MR. DAVIDOFF:  I don't think the Court is obliged to

15  having issued a set of jury --

16           MR. BERNICK:  I know that.

17           MR. DAVIDOFF:  Could I --

18           THE COURT:  Go ahead.

19           MR. DAVIDOFF:  I don't think the Court is obliged to

20  issue advisory opinions when you've given us a set of jury

21  instructions.

22           THE COURT:  I'm ready to rule.

23           The objection on DX-1526 is sustained.  We'll be in

24  recess.

25           (Recess from 3:29 p.m. to 3:55 p.m.)