**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, *et al.*,

       Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

       Defendants.

**PART THREE:**

**DEFENDANTS' OPPOSITION TO MOTION FOR ENTRY OF JUDGMENT:**

**UNADDRESSED TRIAL ERRORS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

I.      The Court Erred By Allowing Plaintiffs To Tell The Jury About The Federal Government's Indemnification Obligations. ................................................ 3

II.     The Court Erred By Allowing Plaintiffs To Make Highly Prejudicial And Inflammatory Allegations Against The Federal Government. ................................. 7

CONCLUSION ............................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Black v. Hieb's Enterprises, Inc.*,
  805 F.2d 360 (10th Cir. 1986) ............................................................................................. 4

*Buckman Co. v. Plaintiffs' Legal Committee*,
  531 U.S. 341 (2001) ........................................................................................................... 12

*Charter v. Chleborad*,
  551 F.2d 246 (8th Cir. 1977) ............................................................................................... 6

*City of Cleveland v. Peter Kiewit Sons' Co.*,
  624 F.2d 749 (6th Cir. 1980) ......................................................................................... 4, 13

*Conde v. Starlight I, Inc.*,
  103 F.3d 210 (1st Cir. 1997) ............................................................................................... 6

*Cook v. Rockwell International Corp.* (*Cook Appeal I*),
  618 F.3d 1127 (10th Cir. 2010) ........................................................................................... 2

*Cook v. Rockwell International Corp.* (*Cook XVII*),
  580 F. Supp. 2d 1071 (D. Colo. 2006) ................................................................................ 5

*Corbett v. Borandi*,
  375 F.2d 265 (3d Cir. 1967) ............................................................................................... 6

*Department of the Navy v. Egan*,
  484 U.S. 518 (1988) ........................................................................................................... 12

*Dodge v. Cotter*,
  328 F.3d 1212 (10th Cir. 2003) ..................................................................................... 8, 13

*Draper v. Airco, Inc.*,
  580 F.2d 91 (3d Cir. 1978) ................................................................................................ 13

*Eichel v. New York Central Railroad Co.*,
  375 U.S. 253 (1963) ............................................................................................................ 4

*Ellsberg v. Mitchell*,
   709 F.2d 51 (D.C. Cir. 1983) ....................................................................................... 12

*Farnsworth Cannon, Inc. v. Grimes*,
   635 F.2d 268 (4th Cir. 1980) ........................................................................................ 12

*Griffin v. Hilke*,
   804 F.2d 1052 (8th Cir. 1986) ........................................................................................ 4

*In re Hanford Nuclear Reservation Litigation*,
   534 F.3d 986 (9th Cir. 2008) .......................................................................................... 7

*Johnson v. Elk Lake School District*,
   283 F.3d 138 (3d Cir. 2002) ......................................................................................... 13

*Lyell v. Renico*,
   470 F.3d 1177 (6th Cir. 2006) ...................................................................................... 13

*Matosantos Commercial Corp. v. SCA Tissue North America, LLC*,
   369 F. Supp. 2d 191 (D.P.R. 2005) ................................................................................ 4

*Maynard v. CIA*,
   986 F.2d 547 (1st Cir. 1993) ........................................................................................ 12

*O'Rear v. Fruehauf Corp.*,
   554 F.2d 1304 (5th Cir. 1977) ...................................................................................... 13

*Stump v. Gates*,
   211 F.3d 527 (10th Cir. 2000) ................................................................................. 8, 13

*Townsend v. Benya*,
   287 F. Supp. 2d 868 (N.D. Ill. 2003) ............................................................................. 4

*Werbungs und Commerz Union Austalt v. Collectors' Guild, Ltd.*,
   930 F.2d 1021 (2d Cir. 1991) ....................................................................................... 12

**Rules**

Federal Rule of Civil Procedure 37 .................................................................................... 11

Federal Rule of Evidence 411 ......................................................................................... 1, 4

## **INTRODUCTION**

Judgment cannot be entered on the nuisance verdict because it was infected with irrelevant and prejudicial evidence and inflammatory argument related to indemnification and alleged government misconduct dating back to the opening of the Rocky Flats plant. Over defendants' repeated objection—before, during, and after trial—plaintiffs were permitted to inject into the trial and emphasize the government's indemnification obligations and to turn the trial into a case against the Department of Energy (DOE), a non-party. Plaintiffs argued that the jury should impose liability on defendants because of alleged "wrongdoing" and "crimes" by the DOE and that the Federal Government had misused its classification authority and perpetrated a fraud on this Court and the jury in order to cover-up its alleged deception of the public. The effect of all of this was to deny defendants their right to a fair trial.

Plaintiffs' trial misconduct and the rulings permitting it were an important part of defendants' appeal. Defendants argued that such evidence and argument violated Federal Rule of Evidence 411, had unfairly prejudiced defendants, and deprived them of a fair trial. Despite the importance of these issues, the Tenth Circuit did not reach them because it set aside the verdict and remanded on other grounds:

> The court declines to reach Defendants' evidentiary challenges to Plaintiffs' trial references to the government's indemnity obligations or the Department of Energy's failure to fully comply with discovery. Because the case must be remanded on other grounds, the court need not address whether the district court abused its discretion with respect to evidentiary issues that may not arise during a new trial.

*Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1152 (10th Cir. 2010) (*Cook Appeal I*).

Plaintiffs are once again asking this Court to enter judgment on a nuisance verdict that was the product of a fundamentally unfair trial. No judgment can or should be entered on that verdict. All that should happen is that this Court should grant a new trial.

The trial errors that require a new trial and prevent the entry of judgment on the tainted nuisance verdict fall into two basic categories. *First*, plaintiffs were allowed to emphasize the Federal Government's indemnification obligations to defendants, in manifest violation of Federal Rule of Evidence 411. And *second*, plaintiffs were allowed to inflame the jury with allegations of Government misconduct, which had no place in this trial. In a very real sense, the trial against defendants morphed into a trial against the Federal Government, the ultimate "deep pocket."

These are not new issues, and, with one exception, the discussion and argument that follow reflect points that defendants made as part of *Cook Appeal I*. The exception arises from plaintiffs' purported abandonment of their Price-Anderson claim. When their interests were different, as part of their argument why this Court should permit them to present at trial evidence and argument relating to indemnification and the Government's alleged misconduct, plaintiffs emphasized that their claims were all pursuant to the Price-Anderson Act and involved "statutory indemnity" under the Act, and that important fact distinguished this case from the authorities defendants cited in opposition to the admission of this evidence. As they explained it:

> Apart from Judge Nielsen's order, defendants cite no authority to support their contention that the provisions on insurance in Fed. R. Evid. 411 even apply to ***this situation, which does not involve a contract of insurance, but rather a statutory indemnity under the Price-Anderson Act***.
>
> ***Even assuming that Rule 411 does apply to these Price-Anderson claims***, defendants are mistaken in suggesting that it embodies any blanket rule that would bar evidence of insurance (or indemnity) under any and all circumstances. The actual prohibition contained in Rule 411 is far narrower, and more precisely circumscribed, than defendants imply.

Ex. 10, 7/8/2005 Pls.' Mot. *In Limine* Consol. Resp., ECF 1395, at 17 (emphasis added).

Plaintiffs' longstanding, fundamental, and repeatedly argued premise was that this is a public liability action under the Price-Anderson Act. That premise animated the course of this proceeding, shaped pretrial proceedings, and materially affected the parties' arguments, the Court's rulings, and the conduct of the trial. Plaintiffs cannot abandon it now simply because their interests have changed. The integrity of this proceeding should be of concern to this Court. But in any event, the evidentiary rulings defendants challenged on appeal are even less defensible now that plaintiffs, contrary to what they told the Court at the time, say they have no claim under the Price-Anderson Act. The Court should not enter judgment on a nuisance verdict that is infected by trial error.

## I. THE COURT ERRED BY ALLOWING PLAINTIFFS TO TELL THE JURY ABOUT THE FEDERAL GOVERNMENT'S INDEMNIFICATION OBLIGATIONS.

Because "[i]t has long been recognized that evidence showing that the defendant is insured creates a substantial likelihood of misuse," *Eichel v. New York Cent. R.R. Co.*,

375 U.S. 253, 255 (1963), there is a specific Federal Rule of Evidence, Rule 411, that generally precludes such evidence. *See* Fed. R. Evid. 411 ("Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully," except insofar as such evidence is "offered for another purpose, such as … bias or prejudice of a witness."); *see generally Black v. Hieb's Enters., Inc.*, 805 F.2d 360, 365-66 (10th Cir. 1986); *Griffin v. Hilke*, 804 F.2d 1052, 1057-58 (8th Cir. 1986); *Matosantos Commercial Corp. v. SCA Tissue N. Am., LLC*, 369 F. Supp. 2d 191, 194-96 (D.P.R. 2005); *Townsend v. Benya*, 287 F. Supp. 2d 868, 874 (N.D. Ill. 2003). The upshot of this Rule is that "[w]ithout question, a trial lawyer is treading on dangerous ground and always approaches grounds for a mistrial by the mere mention of insurance when same is not at issue." *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 758 (6th Cir. 1980) (internal quotation omitted).

Defendants moved *in limine* before trial to preclude plaintiffs from mentioning indemnification to the jury. *See* Ex. 1, Defs.' Mot. *In Limine* No. 4 to Exclude Evidence of Indemnification (6/16/05) (Dkt. 1357). The Court, however, denied the motion on the categorical ground that "[a] great deal of the evidence in this case concerns studies, reports and investigations performed by or for the DOE concerning waste management practices at Rocky Flats and the plant's actual or threatened impact on off-site properties," and "evidence of DOE's indemnification is offered for and is relevant to the

4

possible bias or prejudice of DOE-related witnesses and evidence." *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071 (D. Colo. 2006) (*Cook XVII*).

Plaintiffs took full advantage of that free pass, and brought up the Government's indemnification obligations early and often at trial, with no nexus to the bias or prejudice of any witness. Indeed, the first reference appears at the outset of plaintiffs' opening statement to the jury: "Of course you will be hearing about the Department of Energy. The U.S. Government Department of Energy. Their presence in this courtroom, *they are indemnitor. They are like the insurer for Dow and Rockwell*, because Dow and Rockwell ran a Government plant." Ex. 2, Trial Tr. (10/11/05), at 477 (emphasis added) (Dkt. 1788). Plaintiffs later repeated that point three more times in their opening statement. *See id.* at 492 ("[T]he Department of Energy . . . is on the hook for Dow and Rockwell's damages. . . ."); *id.* at 492-93 ("[T]he DOE, under its account with Dow and Rockwell is probably responsible to pay the damages to the plaintiffs and the class members."); Ex. 9, Trial Tr. (10/12/05), at 652 (referring to "Dow [and] Rockwell and their indemnitor, the DOE") (Dkt. 1790).

And plaintiffs later elicited testimony about the DOE's indemnification obligations:

Q: Right. You say DOE is not a party. You understood that *DOE was an indemnitor* of defendants, correct?

A: Yes.

Q: And what do you understand that to mean?

5

> A: Well, *they would pay any judgment* in this case or settlement.

*See* Ex. 3, Trial Tr. (11/14/05), at 5102 (Kaufman) (emphasis added) (Dkt. 1856). What is telling is that plaintiffs were not making the indemnification point *defensively* to expose the "bias or prejudice of a witness," Fed. R. Evid. 411, but *offensively* to put the DOE on trial.[1]

Plaintiffs returned to the same point during a mini-summation: "The defendants *and their indemnitor, the DOE*, repeatedly lied to the public." Ex. 4, Trial Tr. (11/22/05), at 6283 (emphasis added) (Dkt. 1867). And they ended their case on the same note, reminding the jury that the Federal Government would pay any judgment: "*DOE is on the hook for the judgment in this case*. . . ." Ex. 5, Trial Tr. (1/20/06), at 10571 (emphasis added) (Dkt. 2037). Indeed, plaintiffs asked the jury to rule against defendants in part to send a message to DOE. "I am asking you to tell … *DOE* [that] this will not be tolerated anymore in our communities." *Id.* at 10603 (emphasis added).

This Court compounded this error by rejecting a limiting instruction proposed by defendants:

> You have heard evidence regarding whether the Department of Energy will indemnify Defendants in this case. This evidence is not relevant to determining whether Defendants are liable to Plaintiffs in this case. You

---

[1] This case thus stands in stark contrast to the cases cited by plaintiffs on appeal, each of which involved the use of insurance evidence to show the possible bias or prejudice of a particular witness. *See Conde v. Starlight I, Inc.*, 103 F.3d 210, 213-14 (1st Cir. 1997) (credibility of insurance adjuster); *Charter v. Chleborad*, 551 F.2d 246, 248-49 (8th Cir. 1977) (*per curiam*) (credibility of witness employed by insurer); *Corbett v. Borandi*, 375 F.2d 265, 268-69 (3d Cir. 1967) (credibility of expert witness paid by insurer).

>  should not assume that the DOE will indemnify Defendants in the event of a judgment against Defendants in this case, nor should you speculate whether such indemnification will occur.

Defs.' Proposed Instructions, No. 1.10B (1/10/06) (Dkt. 1958-1). The court rejected that instruction on the ground that "[c]ounsel . . . questioned the jurors extensively regarding DOE's indemnification of Defendants during voir dire, and all jurors confirmed during this process that they would not consider this indemnification in determining Dow and Rockwell's liability." Mem. Op. Regarding Jury Instructions (12/7/06), at 85 (Dkt. 2205). But that rationale only provided more reason to give the requested instruction. Regardless of what questions the lawyers asked during voir dire, the jury was not told, and, absent an instruction, there was no way for them to know that they were precluded from considering indemnification, just as plaintiffs' counsel urged them to do.

As the Ninth Circuit held in a similar case in which plaintiffs wanted to introduce evidence of indemnification by the DOE, there is "no permissible ground on which Plaintiffs could introduce evidence of indemnification" except insofar as necessary to rebut *particular* evidence offered by defendants. *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1014 (9th Cir. 2008). The failure to limit the use of indemnification evidence fundamentally undermined the fairness of the trial.

## II. THE COURT ERRED BY ALLOWING PLAINTIFFS TO MAKE HIGHLY PREJUDICIAL AND INFLAMMATORY ALLEGATIONS AGAINST THE FEDERAL GOVERNMENT.

This Court's ruling that the Government's conduct was relevant by virtue of its indemnification obligations materially and prejudicially affected the focus of the trial.

7

Treating that ruling as a green light, plaintiffs, over defendants' repeated objection, proceeded to pollute the trial with allegations of Government misconduct, even though the Government is not a party to this lawsuit. These allegations further undermined the fundamental fairness of the trial. *See, e.g.*, *Dodge v. Cotter*, 328 F.3d 1212, 1229 (10th Cir. 2003); *Stump v. Gates*, 211 F.3d 527, 533-38 (10th Cir. 2000).

A major theme for plaintiffs at trial was that defendants' alleged wrongdoing was part of a larger pattern of wrongdoing and deception at Rocky Flats in which the Government itself was complicit. Plaintiffs made that theme quite explicit in their opening statement:

> The DOE, instead of coming clean about Rocky Flats, promised the United States public that it would come clean, but then it did the following: It continued to *deceive the public* as to what its contractors had done. It used its national security, top-secret rights, to *conceal from you and from this Court massive amounts of evidence*. Why? To spare itself public embarrassment and to defeat the damages in this and other cases. Why? The logical conclusion, we will argue to you from the evidence, is because *the DOE,* under its account with Dow and Rockwell *is probably responsible to pay the damages to the plaintiffs and the class members*.

Ex. 2, Trial Tr. (10/11/05), at 492-93 (emphasis added) (Dkt. 1788); *see also id.* at 479 ("For 50 years the defendants, Dow and Rockwell, and after they left, the Department of Energy, repeatedly told lies and half truths to their neighbors about what really happened at the plant. They covered up how much plutonium may have been released. It was, and still is, a huge cover-up."); *id.* at 487 ("Why would DOE want to cover-up? Because they were part of the negligent and wrongful conduct."); *id.* at 488 ("[T]he DOE helped cover-up violations of the law. . . . DOE was part of the problem that caused the FBI to raid a

8

U.S. Government owned plant."); *id.* at 509 ("[The press release from the Federal Government dated March 23, 1951] was the first of many lies, misstatements, and incorrect statements that would be told to the public about Rocky Flats and the Atomic Energy Commission programs over the next 50 years."); *id.* at 538 ("You are going to hear a lot of evidence in this case about lying.  Because of the shroud of secrecy, the defendant[s] and the Government were able for decades to get away with whatever they wanted to say and without anyone being the wiser.  And these half truths and lies were no accident.  It was a conscience [*sic*] decision to do this."); *id.* at 574 ("[T]his was a cover-up by DOE.").

Plaintiffs argued that the DOE carried out this "cover-up" in two main ways: (1) by abusing its document classification powers, and (2) by violating its discovery obligations in this case. In particular, plaintiffs argued that the DOE had abused its classification powers by wrongfully classifying documents to avoid embarrassment and financial responsibility for wrongdoing at Rocky Flats.  *See, e.g.*, *id.* at 588 ("[C]lassification was going to be used because the insurance branch didn't want things getting out that would allow claims to be made against the Atomic Energy Commission or its contractors."); *id.* at 600 ("National security is supposed to prevent terrorists or enemies of the United States from getting information about how to build a bomb.  That is not what these documents contained.  You saw the document from 1947 that showed their motives.  They wanted to keep claims from being made against the Atomic Energy

9

Commission."). Plaintiffs later proceeded to call several witnesses to testify about the DOE's allegedly abusive classification of documents. *See* Ex. 6, Trial Tr. (10/27/05), at 3002-20 (Budnitz) (Dkt. 1811); Ex. 7, Trial Tr. (11/15/05), at 5340-59 (Cochran) (Dkt. 1858). Indeed, plaintiffs suggested that there were important documents about potential health risks from Rocky Flats that were *still* classified, thereby putting the public at risk. *See, e.g.*, Ex. 2, Trial Tr. (10/11/05), at 599-606 (Dkt. 1788) (opening statement).

Plaintiffs also told the jury that this Court had held the DOE in contempt of court as a discovery sanction in this case. *See, e.g.*, *id.* at 598 ("[I]n 1995, . . . this court held the DOE in contempt of court; that is almost unprecedented."); *id.* ("So what did the DOE do after being held in contempt of court in this court, in this case, for refusing to turn over documents relating to missing plutonium? Did it come clean? No. It has never come clean. It circled the wagons. It slammed the steel door of secrecy shut once again."). Plaintiffs later walked a former Assistant United States Attorney through the contempt finding against the DOE. *See* Ex. 3, Trial Tr. (11/14/05), at 5087-150, 5203-17 (Dkt. 1856); Ex. 6, Trial Tr. (10/27/05), at 3046-60 (Kaufman) (Dkt. 1811). The court allowed plaintiffs to read from the contempt order, and then ask the witness "Do you see that?" For example:

> Q:    'DOE violated paragraph 20 of the stipulated order by failing to make a written request for a classification review, failing to provide a copy of any such writing to plaintiffs, and failing to initiate a classification review of requested documents. DOE has not provided the requested documents or filed objections to their request.' Do you see that?

10

>   A:   Yes.

*   *   *

>   Q:   And on page 12, the conclusion regarding plaintiffs' request for LANL documents, the order states, 'I find DOE by not producing the requested documents within 30 days or anytime thereafter has failed substantially to comply with the order.' Do you see that?
>
>   A:   Yes.

Ex. 3, Trial Tr. (11/14/05), at 5115, 5118-19 (Dkt. 1856).

None of these arguments was permissible or had anything to do with defendants, which is why defendants moved *in limine* before trial to preclude them. *See* Ex. 8, Defs.' Mot. *In Limine* No. 5 to Exclude Evid. of Doc. Classification Issues & Disc. Conduct by the Dep't of Energy (6/16/05) (Dkt. 1358). This court, however, held otherwise:

>   This case is unusual in that the DOE, a non-party, controls a great deal of the information and documents describing operations and events at Rocky Flats. Much of this information is relevant to the issues to be decided in this case, but is not available because it is classified as secret by the DOE. It is not possible for the parties to present their cases without mentioning that relevant information is classified and unavailable for use at trial.
>
>   The jury is also entitled to know the efforts Plaintiffs, or Defendants for that matter, made to obtain access to this information and why they are unable to present all of the evidence they sought. This information will assist the jury in understanding and evaluating the information, documents and other relevant evidence that is available and presented at trial regarding Rocky Flats operations and events.

*Cook XI*, 580 F. Supp. 2d at 1156. That argument is incorrect.

Imposing discovery sanctions is the role of the court, not the jury. *See* Fed. R. Civ. P. 37. Telling jurors about such sanctions only taints their consideration of the merits, and compromises the fundamental fairness of the trial. *See, e.g.*, *Werbungs*

11

*und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 930 F.2d 1021, 1027 (2d Cir. 1991). The jury here had no business, therefore, hearing about the fact that this Court had held the DOE in contempt of court as a discovery sanction. *See, e.g.*, *id.* Defendants were not sanctioned or found in contempt. Given that evidence of a *party's* violation of a discovery order is legally irrelevant, it follows *a fortiori* that evidence of a *non-party's* violation of a discovery order is legally irrelevant.

Similarly, it is not the role of a jury in a civil lawsuit to second-guess decisions by a non-party federal government agency. *See, e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347-52 (2000). That is especially true of decisions to classify information in the interests of national security: "[f]or reasons too obvious to call for enlarged discussion, the protection of classified information must be committed to the broad discretion of the agency responsible." *Department of the Navy v. Egan*, 484 U.S. 518, 529 (1988); *see also Maynard v. CIA*, 986 F.2d 547, 556 n.9 (1st Cir. 1993) ("We are not in a position to 'second-guess' the [agency's] conclusion regarding the need for continued classification of this material.") (internal quotation and citation omitted). Where, as here, a federal agency has lawfully refused to disclose classified information, a factfinder may not draw a negative inference therefrom. *See, e.g.*, *Ellsberg v. Mitchell*, 709 F.2d 51, 64-65 (D.C. Cir. 1983); *Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268, 270-71 (4th Cir. 1980).

In light of plaintiffs' emphasis at trial on DOE wrongdoing, defendants requested an instruction to inform jurors that they could not hold defendants responsible for DOE's actions: "The Department of Energy is not a party to this case. ... You may not assess the liability of the DOE or seek to hold defendants liable for any wrongful conduct of the DOE." *See* Defs.' Proposed Instructions (1/10/06), at No. 1.10A (Dkt. 1958-1). This Court, however, rejected this proposed instruction as "unnecessary and inaccurate." Mem. Op. Regarding Jury Instructions (12/7/06), at 84 (Dkt. 2205).

The Court did instruct jurors that they could not second-guess the DOE's classification decisions—but only after months of hearing plaintiffs encourage them to do precisely that. *See* Jury Instruction 1.9 (Dkt. 2121); Ex. 5, Trial Tr. (1/20/06), at 10618-20 (Dkt. 2037). But by then, it was too little, too late: the allegations of wrongful classification were so inflammatory that they irreversibly tainted the jury's decision. *See*, *e.g.*, *Lyell v. Renico*, 470 F.3d 1177, 1189 (6th Cir. 2006); *Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 148 (3d Cir. 2002); *Draper v. Airco, Inc.*, 580 F.2d 91, 97 (3d Cir. 1978); *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1309 (5th Cir. 1977). And no instruction even purported to cure plaintiffs' emphasis on the contempt order against the DOE. At the end of the day, thus, the conduct of the trial also bars entry of judgment on the nuisance verdict. *See, e.g.*, *Dodge*, 328 F.3d at 1229; *Stump*, 211 F.3d at 533-38; *Cleveland*, 624 F.2d at 758.

13

## **CONCLUSION**

For the reasons stated above, the Court should not enter judgment on the nuisance verdict and, instead, should order a new trial on plaintiffs' nuisance claim.

Date: September 10, 2015 　　　　　　　　　*/s/ Kevin T. Van Wart*
　　　　　　　　　　　　　　　　　　　　　Kevin T. Van Wart, P.C.
　　　　　　　　　　　　　　　　　　　　　Bradley H. Weidenhammer
　　　　　　　　　　　　　　　　　　　　　KIRKLAND & ELLIS LLP
　　　　　　　　　　　　　　　　　　　　　300 North LaSalle
　　　　　　　　　　　　　　　　　　　　　Chicago, IL  60654
　　　　　　　　　　　　　　　　　　　　　Phone: (312) 862-2000
　　　　　　　　　　　　　　　　　　　　　Facsimile: (312) 862-2200
　　　　　　　　　　　　　　　　　　　　　Email:   kvanwart@kirkland.com

　　　　　　　　　　　　　　　　　　　　　Joseph Bronesky
　　　　　　　　　　　　　　　　　　　　　SHERMAN & HOWARD LLC
　　　　　　　　　　　　　　　　　　　　　633 Seventeenth Street, Suite 3000
　　　　　　　　　　　　　　　　　　　　　Denver, CO 80202
　　　　　　　　　　　　　　　　　　　　　(303) 297-2900

　　　　　　　　　　　　　　　　　　　　　Attorneys for Defendants

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 10th day of September, 2015, he caused the foregoing submission to be served via the Court's ECF system on all participating counsel.

>/s/ Kevin T. Van Wart
>Kevin T. Van Wart, P.C.