# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

No. 90-K-181

MERILYN COOK, et al.,

Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,

Defendants.

---

## DEFENDANTS' MOTION IN *LIMINE* NO. 4 TO EXCLUDE EVIDENCE OF INDEMNIFICATION

Defendants move in *limine* to preclude evidence of indemnification of Defendants by the Department of Energy ("DOE").  Plaintiffs should be prohibited from submitting any evidence or making any reference to indemnity arrangements between Defendants and the DOE or DOE's statutory indemnification obligations in general.  Evidence of indemnity is inadmissible pursuant to Rule 411 of the Federal Rules of Evidence.  It is also irrelevant to Plaintiffs' nuisance and trespass claims in this case, and the danger of undue prejudice to the Defendants from any reference to indemnification would outweigh any potential probative value of the evidence.

### SUMMARY OF RELEVANT FACTS

Defendants contracted with the DOE (and its predecessor agencies) to run the Rocky Flats plant.  Pursuant to Defendants' contracts and the operation of the Price-Anderson Act, the

DOE is responsible for indemnifying the Defendants for certain costs, including costs associated with litigation arising from operation of the plant – such as this lawsuit.  Defendants expect that, at trial, Plaintiffs may intend to offer evidence of and/or reference the indemnification arrangements between the Defendants and the DOE or DOE's statutory indemnification obligations.  For example, Plaintiffs have proposed a possible jury instruction including, in part, the following reference to Defendants' indemnity arrangements: "The United States Department of Energy is financially responsible for any damage that the defendants may be required to pay plaintiffs and class members."  Pls' 7/5/04 Proposed Instruction, No. 13; *see also* Pls' Tr. Exhs. at Bates Nos. AUG9410323-AUG9410330 & Pls' Dep. Ex. No. 2019 (discussing DOE indemnification of contractors).[1]  Because any reference to such indemnity arrangements would be improper, Defendants seek an Order barring Plaintiffs, their counsel, and their witnesses from directly or indirectly referencing – at any stage of trial – indemnification agreements and/or DOE's involvement in litigation this case.

## ARGUMENT

**I.     EVIDENCE OF INDEMNIFICATION SHOULD BE EXCLUDED PURSUANT TO RULE 411.**

By virtue of its indemnity agreements and statutory obligations, the government effectively serves as a liability insurer for Defendants.  Evidence of, or reference to, the Defendants' indemnity arrangement with the DOE is impermissible under Federal Rule of Evidence 411, which provides:

---

[1] *See* 12/10/03 Joint Status Rep. at 46 (attaching Plaintiffs' preliminary proposed trial witness and exhibit lists).  This two-year-old list has not been revised to reflect any of the Courts' 2004 and 2005 rulings.

> Evidence that a person was or was not insured against liability is not admissible upon the issue of whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

Fed. R. Evid. 411.

Rule 411 recognizes that evidence of liability insurance is of little relevance and is likely to induce juries to decide cases on improper grounds. Advisory Committee Note to Rule 411, Fed. R. Evidence § 193 at 577-78 (1985); McCormick on Evidence § 201, at 593; J. Cotchett and A. Elkind, Federal Courtroom Evidence 100 (2d ed., 1991). The Tenth Circuit has consistently held that it is prejudicial error to inject into a trial the idea that the defendant had insurance or other indemnity protection that would cover any damages he otherwise would be obligated to pay. *E.g., Palmer v. Krueger*, 897 F.2d 1529, 1537-38 (10th Cir. 1990) (affirming trial court decision to bar insurance evidence under Rules 411 and 403); *Black v. Hieb's Enterprise, Inc.*, 805 F.2d 360, 365-66 (10th Cir. 1986) (affirming trial court refusal to admit insurance information).

Courts consistently apply that analysis to other forms of indemnity, evidence of which is equally prejudicial to defendants. *See Griffin v. Hike*, 804 F.2d 1052, 1057 (8th Cir. 1986), *cert. denied*, 482 U.S. 914 (1987) (injection of fact that defendant is protected by insurance or other indemnity was prejudicial error requiring reversal); *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 758 (6th Cir. 1980) (plaintiff's counsel's references to the fact that defendant is protected by liability insurance were prejudicial error and grounds for a mistrial); *cf. Larez v. Holcomb*, 16 F.3d 1513, 1519-21 (9th Cir. 1994) (refusing to allow jury instruction on damages referencing police officer's indemnification by City of Los Angeles).

The District Court for the Eastern District of Washington expressly rejected the argument that DOE indemnification could be used to show DOE bias in the *Hanford Nuclear Reservation Litigation.* In that toxic tort litigation, plaintiffs – represented by many of the same lawyers who represent Plaintiffs here – sued the private contractors who operated a nuclear weapons plant in Washington State. As here, the nuclear weapons plant was owned by the United States government, DOE's contract with defendants included indemnification provisions, and the indemnification provisions of the Price-Anderson Act also applied. The private contractor defendants moved in *limine* to exclude all evidence of DOE's indemnification from the trial. The court granted defendants' motion, excluding all indemnification evidence. It held that such evidence was irrelevant – rejecting plaintiffs' contention there that proof of indemnification somehow went to bias of the DOE or DOE-related witnesses. *See* 4/18/05 Order in *In re Hanford Nuclear Reservation Litig.*, No. CV-91-3015 (E.D. Wash.), at 8, attached as Ex. 1 (granting nuclear plant operators' motion in *limine* to exclude evidence of DOE indemnification pursuant to Rule 411; "Evidence regarding indemnification is not relevant"); *see also* Mot. In *Limine* Resp. in *Hanford*, at 4, attached as Ex. 2 (arguing that the indemnification evidence went to DOE bias).

This case is no different. There is no legitimate purpose for introduction of indemnification evidence. Because the only purpose of disclosing any indemnification provisions here would be to suggest negligence or culpable conduct as well as to improperly attribute DOE conduct to Defendants, such references should be precluded.

## II.     EVIDENCE OF INDEMNIFICATION IS IRRELEVANT TO PLAINTIFFS' CLAIMS.

Evidence of indemnification also should be excluded as irrelevant.[2]  The Rules define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  It is axiomatic that "[e]vidence which is not relevant is not admissible."  Fed. R. Evid. 402; *see also Security State Bank v. Baty*, 439 F.2d 910, 913 (10th Cir. 1971) ("The court has not only the discretion but also the duty to exclude evidence of little or no relevance or probative value which might have a prejudicial effect.").  It is Plaintiffs' burden to demonstrate relevance.  *E.g., United States v. Samaniego,* 187 F.3d 1222 (10th Cir. 1999) (burden of proving admissibility is on proponent of evidence).

Any relevancy determination turns on the scope of Plaintiffs' claims.  Plaintiffs bring two claims that are to be tried on a class-wide basis:  trespass and nuisance.  Plaintiffs' trespass claim requires a physical intrusion upon the property of another.  *See* 12/17/04 Order; *Hoery v. United States*, 64 P.3d 214, 217 (Colo. 2003).  In the Court's December 17, 2004 Order, the Court held that, in order to prove a trespass, Plaintiffs must establish that "Dow or Rockwell or both of them intentionally undertook an activity or activities that in the usual course of events caused plutonium to be deposited on the Class Properties."  12/17/04 Order, Instruction No. 3.11, at 2.

Under Colorado law, a nuisance requires an intentional, negligent, or unreasonably dangerous activity resulting in the unreasonable and substantial interference with Plaintiffs' use and enjoyment of their properties.  *Hoery,* 64 P.3d at 218.  As Defendants understand the Court's

---

[2] The lack of probative value and prejudicial nature of Defendants' indemnity are independent grounds for excluding evidence of indemnification.

May 17, 2005 Order, the Court held that in order to make out a prima facie case for nuisance, Plaintiffs can prove the "interference" element of their nuisance claims in one of three ways. First, Plaintiffs can prove an interference by establishing "class-wide exposure to plutonium and resulting class-wide increase in human health risk"; provided that, in making this determination, the jury may only consider the magnitude of the "common, class-wide health risk." 5/17/05 Order at 5.   Second, Plaintiffs can prove an interference by demonstrating "that all Class members were exposed to [an alleged contaminant other than plutonium] and all suffered some increased health risk as a result." *Id.*   Third, Plaintiffs can prove an interference by establishing "that there is an objectively demonstrable risk of future harm" that is "based on objective conditions, such as existing contamination on-site and off-site that may be released or remobilized in some fashion that would result in human exposure and increased health risk, that have the potential to affect all of the Class Area." *Id.* at 6.   All three paths to nuisance liability require a demonstration of increased health risk to all class members, arising from the past or future release of plutonium or some contaminant from Rocky Flats. *Id.*

Also important is the Court's requirement that "Plaintiffs must further demonstrate that it appears any nuisance they prove *will continue indefinitely*." *Id.* at 3 (emphasis added).   In addition, consistent with the Court's Orders, for Plaintiffs to recover damages under Section 930, Plaintiffs must show that the trespass or nuisance at issue exists today and is continuing. *Id.*; *see also* 12/17/04 Mem. Op. and Order at 19-20.

Plaintiffs will be unable to meet their burden of establishing relevancy with respect to evidence of indemnification.   The indemnity arrangements between Defendants and the government and the DOE's statutory indemnification obligations are not probative of the trespass

6

and nuisance issues posed by Plaintiffs' claims. Whether Defendants or someone else would pay any judgment against them following a trial on the merits has no bearing whatsoever on the issues in this case. It has nothing to do with whether Defendants caused an intrusion on Plaintiffs' real property and/or interfered with the use and enjoyment of properties in the class area. It does not establish class-wide exposure to plutonium or any other contaminant, let alone any resulting class-wide increase in health risk. Nor does indemnification evidence help to prove the existence of an "objectively demonstrable risk of future harm." *See* 5/17/05 Order at 6. In addition, indemnification evidence does not shed any light on whether Defendants' actions resulted in a diminution in Plaintiffs' property values. Evidence of indemnification simply does not make anything with respect to Plaintiffs' nuisance and trespass claims more or less probable.

Nor does evidence of indemnification agreements between the Defendants and the DOE enable the jury to impute the acts of the government to Defendants. The *Hanford* plaintiffs (represented by the same counsel as Plaintiffs in this case) contended that they should be allowed to inform the jury of the statutory scheme of indemnification because, if they were not permitted to do so, "jurors might indeed be confused . . . about why plaintiffs have not sued the government." Ex. 2, Mot. *In Limine* Resp. in *Hanford,* at 3. That argument has no merit, and the *Hanford* court rightfully rejected plaintiffs' contention. Ex. 1, 4/18/05 Order in *In re Hanford Nuclear Reservation Litig.*, No. CV-91-3015 (E.D. Wash.), at 8. It is irrelevant who Plaintiffs *have not* sued and why; the only issue for the jury is whether the present Defendants are liable. What is more, the argument exposes Plaintiffs' true, improper purpose for offering evidence of indemnification – their desire to suggest to the jury that it can hold Defendants liable for DOE conduct even though DOE is not a defendant. That is not the case, and any suggestion to the

7

contrary is extremely, unfairly prejudicial to Defendants.[3]  Plaintiffs made a conscious choice not to sue the United States or have it joined as a defendant to this action, thereby avoiding the DOE's sovereign immunity and the jurisdictional and statutory limitations of the Federal Tort Claims Act.  *See* Defendants' 8/18/04 Response Br. at 33-41; DOE 3/04/96 Mem. in Opp. to Plfs' Mot. for Suppl. Sanctions at 5-8.  Plaintiffs must live with the consequences of that choice and cannot have it both ways.  Plaintiffs should not be allowed, through introduction of evidence of indemnification to achieve what they could not have achieved pursuant to applicable law, *i.e.*, to treat the federal government as a party but without the jurisdictional and statutory impediments Plaintiffs would have had to face had they so structured their lawsuit.

The fact that, through the operation of contractual provisions and the Price-Anderson Act, DOE indemnifies Defendants for this litigation does not change the government's non-party status or make DOE's conduct that of the Defendants.  In addressing the relationship between DOE and its contractors, the United States Supreme Court indicated that the DOE remains a separate and distinct entity which should not, for legal purposes, be placed "in the shoes" of its contractors.  *See, e.g., United States v. New Mexico*, 455 U.S. 720, 721, 734-36 (1982) (despite DOE's funding of all the contractors' costs plus a fixed fee, the DOE contractors were not federal instrumentalities and did not "stand in the Government's shoes" under state tax laws).[4]  This is consistent with case law regarding federal government contractors in general.  *See* DOE 3/04/96 Mem. in Opp. to Pls' Mot. for Suppl. Sanctions at 8-13.

---

[3] *See further* Def's Mot. *In Limine* to Exclude Evid. of DOE Discovery Conduct.

[4]  *See also United States v. Boyd*, 378 U.S. 39, 48 (1964);  *United States v. California Bd. Of Equalization*, 507 U.S. 746 (1993).

Plaintiffs have presented no reason why this Court should depart from the Supreme Court's reasoning. The DOE contractors are privately-owned corporations; as in *New Mexico*, "government officials do not run [their] day-to-day operations nor does the government have any ownership interest." *New Mexico*, 455 U.S. at 740 (internal citation omitted). The fact that the United States is obligated to indemnify Dow and Rockwell for the costs of this lawsuit does not render DOE and its contractors "so closely connected [that they] cannot realistically be viewed as separate entities." *Id.* at 735. *See further* DOE 3/04/96 Mem. in Opp. To Plfs' Mot. for Suppl. Sanctions at 9-11.[5]

In short, that Defendants' indemnitor will pay any judgment against them has no bearing whatsoever on the issues here.

## III.   EVIDENCE OF INDEMNIFICATION IS UNDULY PREJUDICIAL TO THE DEFENDANTS.

Finally, even if evidence of indemnification were somehow relevant (which it is not), it should still be excluded under Rule 403's balancing test. *See* Fed. R. Evid. 403[6]; *see also Palmer*, 897 F.2d at 1537-38 (evidence of insurance properly barred under Rule 403). Any

---

[5]   Nor should Plaintiffs be permitted to look to cases involving private insurance to argue a private insurer might be held to be the real party in interest in lawsuits in which the insured is a defendant. Even where a "non-party [insurer] that is closely aligned with a named litigant [it should not be] treated as a party" under the Federal Rules of Civil Procedure, regardless of whether it is the real party in interest. *Henderson v. Zurn Indus.,* 131 F.R.D. 560, 565 (S.D. Ind. 1990).

[6]   Rule 403 provides that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Rule 403, Fed. R. Evid.

probative value of such evidence would be substantially outweighed by its danger of unfair prejudice and confusion of the issues. *See* Fed. R. Evid. 403. Such evidence would be highly prejudicial to Defendants because it would invite the jury to determine issues on improper grounds – for example, deep pockets and/or anti-government sentiment. *See, e.g., Griffin*, 804 F.2d at 1057 (evidence of "indemnity protection" is excluded because it "will result in an unduly generous award of damages by the jury"). Allowing indemnification evidence to be admitted would also invite jurors to blur responsibility between Defendants and the DOE. As discussed in Section II above, the indemnification arrangements simply do not entitle jurors to impute government actions or conduct to Defendants. This risk of such juror confusion – and resultant prejudice to Defendants – further renders indemnification evidence impermissible under Rule 403. *See Koch v. Koch Industries, Inc.,* 203 F.3d 1202, 1229 (10th Cir. 2000) (excluding evidence of collateral events under 403 where its admission would have required giving the other side a chance to explain the evidence, wasting time and confusing the jury). For these reasons, the evidence should be excluded under Rule 403.

## CONCLUSION

For the foregoing reasons, Defendants' Motion In *Limine* To Exclude Evidence of Indemnification should be granted.

Dated:  June 16, 2005                    Respectfully submitted,


                                         One of the Attorneys for the Defendants
                                         David M. Bernick
                                         Douglas J. Kurtenbach
                                         Ellen Therese Ahern
                                         Stephanie A. Brennan
                                         KIRKLAND & ELLIS LLP
                                         200 East Randolph Drive
                                         Chicago, Illinois 60601-6636
                                         Phone:  312-861-2000
                                         Fax:    312-861-2200

                                         Joseph J. Bronesky
                                         SHERMAN & HOWARD L.L.C.
                                         633 Seventeenth Street, Suite 3000
                                         Denver, Colorado 80202
                                         Phone:  303-297-2900
                                         Fax:    303-298-0940

                                         Attorneys for ROCKWELL
                                         INTERNATIONAL CORPORATION and
                                         THE DOW CHEMICAL COMPANY

## CERTIFICATE OF SERVICE

I, Patricia Eckman, hereby certify that a true and correct copy of the foregoing was served this 16th Day of June, 2005, upon the following counsel via Federal Express or hand delivery as indicated:

Peter B. Nordberg, Esq. (via Federal Express)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103-6365

Gary B. Blum, Esq. (via hand delivery)
SILVER & DEBOSKEY
The Smith Mansion
1801 York Street
Denver, Colorado 80206

Patricia Eckman

1

1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                          EASTERN DISTRICT OF WASHINGTON

7                                          )
8    In Re: Hanford Nuclear              )     NO.    CV-91-3015-WFN
     Reservation Litigation,             )
9                                          )     ORDER RE: FINAL PRETRIAL
                                          )     CONFERENCE AND HEARING
10                                         )     ON MOTIONS:  APRIL 13-14, 2005
                                          )     (RE: TRIAL PROCEDURES;
11                                         )     MOTIONS IN LIMINE)
                                          )
12   _____       )     **UNITED STATES MARSHAL
                                                ACTION REQUIRED**

13       **This Order Relates to:   All Cases**

14       A final pretrial conference was held April 13 - 14, 2005, in Spokane, Washington. The

15   following counsel were present representing the listed parties on April 13, 2005.  Those

16   counsel listed in bold typeface were also present on April 14, 2005.

17
18
| Plaintiffs | Counsel | |
|---|---|---|
| Jaros | Roy S. Haber | |
| Matthies | | |
| Seaman | | |
| Hamilton/Criswell | **Louise Roselle**[1]   **Peter Nordberg** | Merrill Davidoff |
| Evenson | **Tom H. Foulds**   John Cummings (Tele)*   **Jill Olson** | **Richard Pierson**   Arnold Levin |
| | *Participated for a short portion of hearing. | |

25
26       [1]Lead Counsel for Plaintiffs.

ORDER RE: FINAL PRETRIAL CONFERENCE AND HEARING ON MOTIONS:
APRIL 13-14, 2005 (RE: TRIAL PROCEDURES; MOTIONS IN LIMINE) - 1

| Berg | **Richard Eymann**<br>Steven Jones<br>**Connie Powell** | |
| Berg/Lumpkin | David Breskin | Brian Depew |
| **Defendants** | **Counsel** | |
| E.I. DuPont DOE Nemours & Co. [DuPont] | **Kevin T. Van Wart**[2]<br>**Wm. (Randy) Squires**<br>**Michelle Browdy**<br>**Tim Duffy** | |
| General Electric Co. [GE] | | |
| UNC Nuclear Industries, Inc. [UNC] | | |

The Court heard argument on Defendants' Motions for Summary Judgment; both parties' Motions in Limine; discussed trial procedural issues; and ruled on objections to exhibits and testimony by deposition.  A technology training for counsel was also held.

This Order is entered to memorialize and supplement the oral rulings of the Court regarding trial procedural issues and both parties' Motions in Limine.  Separate Orders will be entered by the Court regarding (1) Defendants' Motions for Summary Judgment and (2) objections to exhibits and testimony by deposition.  Accordingly,

**IT IS ORDERED** that:

<u>**TRIAL PROCEDURAL ISSUES**</u>

1.  **April 18, 2005 Deadline.**   The previous requirement that parties provide marked exhibits to the Court on April 18, 2005 is **STRICKEN**.  The Court should receive the Final Witness List and Final Exhibit List on **April 18, 2005**.

2.  **Pretrial Order--Length of Trial.**  Counsel filed a Joint Submission re: Pretrial Order on April 8, 2005, **Ct. Rec. 1865**.  They agree a classic pretrial order is not required in this case due to the extensive hearings previously held and the prior Orders of the Court. Counsel estimate a total trial length (including deliberations) of four to five weeks.

---

[2]Lead Counsel for Defendants.

ORDER RE: FINAL PRETRIAL CONFERENCE AND HEARING ON MOTIONS: APRIL 13-14, 2005 <u>(RE: TRIAL PROCEDURES; MOTIONS IN LIMINE)</u> - 2

3. **Jury Issues.**

(a)   Juror Questionnaires. Questionnaires from 70 potential jurors were reviewed by the Court and counsel.  For cause challenges were made.  Fifteen prospective jurors will not be asked to report for this trial based upon their responses on the questionnaires.  All original and copies of the juror questionnaires shall be **RETURNED** to the Courtroom Deputy, Joanna Knutson, after the jury selection process is complete.

(b)   Number of Jurors. The Court confirmed that 12 jurors would be selected.

(c)   Glossary. The jurors will not receive a glossary unless the parties are able to submit a joint document.

(d)   Rule 48--Less than Unanimous Jury. Counsel stipulate that, provided at least nine (9) jurors deliberate, a verdict supported by all but one dissenting juror will be accepted.

(e)   Jury Dismissal. The jury will not be dismissed until the verdict is reviewed and it is determined that there are no inconsistencies.

4. **Exclusion of Witnesses.** Defendants' oral request for the  exclusion of witness pursuant to Rule 615 is **GRANTED**.  No witness who will testify may be present in the courtroom or in the Seventh Floor jury assembly room where trial proceedings may also be viewed, nor may they review any transcript prepared of the testimony.  This exclusion applies to the spouses of a party who will be a testifying witness.  This ruling does not apply to the Plaintiffs as they are parties to the litigation.

5. **Court's Proposed Preliminary Jury Instructions.** The Court provided Proposed Preliminary Jury Instructions to counsel.  Counsel commented on the Instructions and accepted the revised instructions without exceptions.

6. **Historical Presentation.** The parties submitted proposed statements from which the Court drafted a presentation.  The parties commented on the Court's draft and accepted the revised statement.  The Court will read the Historical Statement after it reads the Preliminary Instructions.  Each juror will receive a copy of the Historical Statement.

ORDER RE: FINAL PRETRIAL CONFERENCE AND HEARING ON MOTIONS:
APRIL 13-14, 2005 (RE: TRIAL PROCEDURES; MOTIONS IN LIMINE) - 3

1    7.  **Opening Statements.**  Each side anticipates opening statements of between

2   1 to 1½ hours.  Counsel will advise each other of the demonstrative exhibits to be used no

3   later than **April 20, 2005**, so that any disputes regarding the exhibits may be resolved at the

4   final pretrial conference on April 25, 2005.  The opening statements will be made on the same

5   day.  Jurors may take notes during opening statements.

6    8.  **Evidence Presentation.**

7    (a)  Only one attorney for each party may participate with a single witness.

8    (b)  At trial an objection made by one attorney will be considered as an objection

9   by all unless the objection is disclaimed.

10    9.  **Exhibits.**  The parties have agreed that unless a document is discussed at trial,

11   it will not be submitted to the jury, even if admitted into evidence.  Such a document

12   would, however, be a part of the record on appeal.

13    10.  **Expert Testimony**

14    (a)  Exchange of Witness Lists and Reliance Materials.  At the afternoon

15   conference with the Court during trial, counsel shall share a witness list for the following day

16   and the reliance materials for expert witnesses.  On Friday, the reliance materials and

17   witnesses may be identified **Sunday afternoon by 4:00 p.m.**

18    (b)  Re: Narrower Confidence Ranges.  Experts who wish to testify regard-

19   ing a 90% confidence range regarding a dose must also provide their best estimate of

20   dose.

21    11.  **Parties' Joint Statements Prior to Witnesses' Testimony.**  The parties

22   have agreed that they do not wish to make joint statements prior to a witness's testi-

23   mony.

24    12.  **Proposed Final Jury Instructions.**  The Court's Proposed Final Jury Instructions

25   were distributed to counsel.  An informal session will be scheduled during trial to discuss the

26   instructions.  Formal exceptions will be placed on the record.

ORDER RE: FINAL PRETRIAL CONFERENCE AND HEARING ON MOTIONS:
APRIL 13-14, 2005 (RE: TRIAL PROCEDURES; MOTIONS IN LIMINE) - 4

1      13. **Parties' Filings During Trial.**  A party filing any documents in the case during

2  trial shall email it to opposing counsel and hand deliver a hard copy of the filing no later than

3  the next court day.

4      14. **Technological Devices on Ninth Floor.**  Counsel and their respective support

5  staff may bring laptop computers and BlackBerries to the Ninth Floor and into the

6  courtroom **provided any phone function is turned off**.

7                **IN LIMINE RULINGS**

8     15. **Plaintiffs' Motions in Limine.**

9      (a)   Plaintiffs' General Motion in Limine, filed March 15, 2005, **Ct. Rec. 1815**,

10  has multiple subparts which will be ruled on individually:

11      &bull;  Motion to Exclude Evidence of Plaintiffs' Receipt of Benefits from a

12  Collateral Source, **Ct. Rec. 1815-1**, is **GRANTED**.  The collateral source rule precludes the

13  introduction of benefits received from other sources to reduce a person's damages award.

14      &bull;  Motion to Exclude Evidence Re: Federal Income Tax, **Ct. Rec. 1815-2**,

15  is **GRANTED**.  No evidence shall be introduced regarding whether the recovery by

16  Plaintiffs would or would not be subject to federal income tax.

17      &bull;  Motion to Exclude Any Unusual Demands, **Ct. Rec. 1815-3**, is

18  **GRANTED** as to the specific requests of the Motion (1) matters found or

19  contained in opposing counsels' file; (2) demands for medical or other types of exam-

20  inations; or (3) physical demonstrations.  Any requests that counsel deem to be

21  unusual should be raised during the Court conferences outside the presence of

22  the jury.

23      &bull;  Motion to Exclude Evidence Re: Testimony of a Witness Who May Not

24  Testify, **Ct. Rec. 1815-4**, is **DENIED**.  Neither party should refer in opening statements to

25  evidence that is not likely to be presented, but counsel has the latitude to revise their plan

26  during the presentation of the case.

ORDER RE: FINAL PRETRIAL CONFERENCE AND HEARING ON MOTIONS:
APRIL 13-14, 2005 (RE: TRIAL PROCEDURES; MOTIONS IN LIMINE) - 5

1      • <u>Motion to Exclude Reference to Plaintiffs' Failure to Call a Witness</u>, **Ct.**

2    **Rec. 1815-5**, is **DENIED with a right to renew**.

3      • <u>Motion to Exclude Undisclosed Evidence</u>, **Ct. Rec. 1815-6**, is

4    **GRANTED**. If evidence was specifically requested or subject to disclosure under Rule 26

5    but was not disclosed, it will be excluded for all purposes.

6      If the evidence was never requested and was not subject to Rule 26

7    disclosure, then such evidence that was not disclosed may be used by the opposing

8    party.

9      • <u>Motion to Exclude Any Reference to Settlement</u>, **Ct. Rec. 1815-7**, is

10    **GRANTED**. No reference shall be made to settlement negotiations or offers of compromise.

11      • <u>Motion to Exclude Undisclosed Technological Evidence</u>, **Ct. Rec. 1815-8**,

12    is **GRANTED**. Evidence previously undisclosed that was requested or subject to disclosure

13    by Rule 26 such as photographs, video, computer programs or motion picture film is not

14    admissible.

15      • <u>Motion to Exclude Argument that Money Will Not Repair the Injury</u>, **Ct.**

16    **Rec. 1815-9**, is **GRANTED**. There shall be no argument or evidence to the effect that it is

17    futile for the jury to award compensation under the circumstances because money will not

18    repair the injury.

19      • <u>Motion to Exclude Questions Re: Plaintiffs' Attorneys</u>, **Ct. Rec. 1815-10**,

20    is **GRANTED**. There shall be no argument or questioning concerning the time or

21    circumstances of the employment of Plaintiffs' attorneys or questions regarding advice or

22    handling of the case by the Plaintiffs' attorneys.

23      • <u>Motion to Exclude Any Reference to the Government Contractor Defense</u>,

24    **Ct. Rec. 1815-11(a)**, is **GRANTED**. In addition, the Plaintiffs may not offer evidence or

25    argue that the Defendants were negligent; Defendants may not argue or produce evidence that

26    the Defendants were not negligent or exercised due care.

ORDER RE: FINAL PRETRIAL CONFERENCE AND HEARING ON MOTIONS:
APRIL 13-14, 2005 <u>(RE: TRIAL PROCEDURES; MOTIONS IN LIMINE)</u> - 6

1 • Motion to Exclude Evidence Re: Reasonableness of Defendants' Conduct,

2 **Ct. Rec. 1815-11(b)**, is **GRANTED**.   There are no negligence issues in this case and

3 the reasonableness of the Defendants' conduct or the exercise of due care are not relevant.

4 • Motion to Exclude Contributory Negligence, **Ct. Rec. 1815-11(c)**, is

5 **GRANTED**.   Evidence is excluded with regard to any Plaintiff's alleged contributory

6 negligence.

7 • Motion to Exclude Any Evidence Related to Compensation Paid to

8 Defendants, **Ct. Rec. 1815-11(d)**, is **GRANTED**.   Any evidence related to the amount

9 of compensation paid to the Defendants for their operation of the Hanford facility is

10 not relevant.

11 • Motion to Exclude Any Reference to Plaintiffs' Request to Exclude

12 Evidence, **Ct. Rec. 1815-12**, is **GRANTED**.   There shall be no reference made to any pretrial

13 motions.

14 • The Court **RESERVES RULING** on the Motion to Exclude Mortality

15 Study of Dr. Boice, **Ct. Rec. 1815-11(g)**.

16 (b)   Plaintiffs': Motion to Preclude Evidence of Other Causes of Thyroid Disease

17 Beyond Exposure to Hanford Radiation, filed March 15, 2005, **Ct. Rec. 1807**, and Motion

18 to Exclude Other Causes of Injuries, filed March 15, 2005, **Ct. Rec. 1815-11(e)**, and Motion

19 to Exclude Evidence of Alternative Causes, filed March 15, 2005, **Ct. Rec. 1815-11(f)**, are

20 **DENIED**.   The Defendants may raise other possible causes of disease as long as they have

21 some expert opinion to support the basis for the causation.

22 (c)   Plaintiffs' Motion to Exclude Material Outside the Scope of the RAC

23 2004 Report, filed March 14, 2005, **Ct. Rec. 1798**, is **GRANTED**.   There shall be no

24 testimony or admission of the following pages from the RAC 2005 Declaration which

25 raised new material not included in the earlier RAC Report:   Pages 14-19, which use

26 Stewart's air disbursal factors with the historical air concentration values; pages 24-26, which

ORDER RE: FINAL PRETRIAL CONFERENCE AND HEARING ON MOTIONS:
APRIL 13-14, 2005 (RE: TRIAL PROCEDURES; MOTIONS IN LIMINE) - 7

1   discuss the alleged contradiction between Dr. Jarvis and Dr. Crawford-Brown; and

2   pages 34-35, the organic iodine calculations in comparison with McCormack 1963

3   Hanford document.

4       16. **Defendants' Motions in Limine.**

5       (a)   Defendants' Motion in Limine (General), filed March 15, 2005, **Ct. Rec. 1812**,

6   has multiple parts which will be ruled on individually:

7       • Motion to Exclude Conditions Unrelated to Plaintiffs' Thyroid Conditions,

8   **Ct. Rec. 1812-1**, is **GRANTED**.

9       • Motion to Exclude Evidence Related to Defendants' Negligence, **Ct.**

10  **Rec. 1812-2**, is **GRANTED, however** Plaintiffs may produce evidence that the measure-

11  ments taken were not complete nor sufficient to reconstruct releases from Hanford and

12  doses.

13      • Motion to Exclude Family Testimony, **Ct. Rec. 1812-4**, is **GRANTED**

14  **IN PART and DENIED IN PART**.  The family members may testify as to their obser-

15  vations of the physical and emotional effects of the bellwether Plaintiffs' thyroid

16  diseases.

17      The family members may not testify that some diseases were caused by

18  radiation.  Also, Mr. Rhodes and Mrs. Stanton may not testify how they have been affected

19  by their spouses' conditions.  The Plaintiffs advised the Court that loss of consortium claims

20  are not being pursued at this trial.

21      • Motion to Exclude Evidence Regarding Government and Government

22  Indemnification, **Ct. Rec. 1812-3**, is **GRANTED**.  Evidence regarding indemnification is not

23  relevant.

24      • Motion to Exclude *Evenson* Attack on HEDR, **Ct. Rec. 1812-5**, is

25  **DENIED**.  The Plaintiffs may present evidence and question regarding the credibility or bias

26  of the HEDR study.

ORDER RE: FINAL PRETRIAL CONFERENCE AND HEARING ON MOTIONS:
APRIL 13-14, 2005 (RE: TRIAL PROCEDURES; MOTIONS IN LIMINE) - 8

1         •   Defendants' oral motions to reconsider, for an evidentiary hearing on the

2 issue, and to strike Mr. Foulds' statements made during day one regarding defense counsel;

3 were **DENIED**.

4         (b)   Defendants' Motion to Exclude the Testimony of Patricia Pritikin, filed

5 March 15, 2005, **Ct. Rec. 1803**, is **DENIED AS MOOT**.  The Plaintiffs have withdrawn Ms.

6 Pritikin as a witness.

7         (c)   Defendants' Motion to Exclude the Testimony of Ronald M. Klein, filed

8 March 14, 2005, **Ct. Rec. 1799**, is **DENIED**.  Dr. Klein appears to be a qualified witness who

9 performed mental status examinations as well as MMPI--II testing and draws clinical

10 impressions from the testing related to Plaintiffs Buckner, Goldbloom, Rhodes and Wise. His

11 testimony, which should be restricted to injury caused by Hanford emissions, is not

12 cumulative and is relevant to the issue of damages.

13      17. **Other Evidentiary Rulings.**

14         (a)   Evidence should be tailored to be specific to the six Plaintiffs and their

15 respective thyroid diseases.  Evidence of other Plaintiffs and other diseases is **NOT** relevant.

16         (b)   Evidence should be tailored to address Hanford emissions of radiation.

17 Some mention of other releases of radiation such as at Chernobyl may relate to

18 epidemiologic studies, but is otherwise **NOT** relevant.  Evidence re: TMI is also **NOT**

19 relevant.

20                                    **OTHER MOTIONS**

21     18. **Defendants' Motion to Strike Plaintiffs' Reply Briefs Regarding the**

22 **Motions in Limine**, filed April 8, 2005, **Ct. Rec. 1864**, is **GRANTED**.  Plaintiffs'

23 Reply Briefs, **Ct. Recs. 1845 and 1858**, are **STRICKEN**.  The Court did not contemplate

24 replies and even if replies had been contemplated, neither reply was timely under Local

25 Rule 7(d).  Plaintiffs are not prejudiced as the issues were sufficiently addressed by the

26 motions and responses.

ORDER RE: FINAL PRETRIAL CONFERENCE AND HEARING ON MOTIONS:
APRIL 13-14, 2005 (RE: TRIAL PROCEDURES; MOTIONS IN LIMINE) - 9

1      19. **Defendants' Oral Motion to Exclude Testimony or Evidence Related to**

2 **Plaintiff Stanton Developed After 2004.** The Court **DENIED** the motion with a right to

3 renew at trial if this becomes an issue.

4      20. **Defendants' Oral Motion for a Change of Venue** due to prejudicial pretrial

5 publicity and the inability to seat an unbiased jury was **DENIED as premature, with a**

6 **right to renew**.

7      21. **Pro Se Plaintiff Kerry Todd's Motion to Join Motions of Other Co-Plaintiffs**,

8 filed April 13, 2005, **Ct. Rec. 1869**, is **DENIED AS MOOT**. Mr. Todd is not a bellwether

9 Plaintiff and his claims are not to be tried in the April 25, 2005 bellwether trial.

10      The District Court Executive is directed to file this Order and provide copies to Liaison

11 Counsel; Mediator Gary Bloom; United States Marshal Service (note paragraph 14); **AND**

12 **TO** pro se Plaintiffs Noreen L. Wynne, Carmela M. Destito-Buttice (for late John P. Destito,

13 Jr.), Marylin F. Mlnarik, and Kerry L. Todd.

14      **DATED** this 18th day of April, 2005.

15

16                        s/ Wm. Fremming Nielsen

                           WM. FREMMING NIELSEN

17 04-1305A           SENIOR UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

ORDER RE: FINAL PRETRIAL CONFERENCE AND HEARING ON MOTIONS:
APRIL 13-14, 2005 (RE: TRIAL PROCEDURES; MOTIONS IN LIMINE) - 10

2

1  Louise M. Roselle
2  WAITE, SCHNEIDER, BAYLESS
   & CHESLEY CO.,
3  1513 Central Trust Tower
   Cincinnati, OH 45202
4  (513) 621-0267

5  **Lead Counsel for Plaintiffs**

6  [Names of additional counsel
   appear on the signature page.]

7

8

9

10

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAR 22 2005

JAMES R. LARSEN, CLERK
_____ DEPUTY
SPOKANE, WASHINGTON

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

11

12                                        No. CV-91-3015-WFN

13  IN RE HANFORD                         **PLAINTIFFS' MEMORANDUM IN**
    NUCLEAR                               **OPPOSITION TO DEFENDANTS'**
14  RESERVATION                           **MOTION *IN LIMINE* (GENERAL)**
    LITIGATION

15

16              **This document relates to: All Cases**

17

18

19

20

21

22

23

24

25

26

27

28

1
2

# **CONTENTS**

Page:

3   I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4   II.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5   A.   Unrelated Health Conditions . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

6   B.   Negligence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

7   C.   The Government and Government Indemnification . . . . . . . . . . . . . . . 2

8   1.   Evidence Generally Involving the Government . . . . . . . . . . . . 2

9   2.   Indemnification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

10   D.   Family Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

11   E.   HEDR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

12   III.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I. INTRODUCTION

Plaintiffs' respectfully submit this memorandum in response to Defendants' Motion *in Limine* (General) (filed March 15, 2005).

## II. ARGUMENT

### A. Unrelated Health Conditions

Based on discussions with defendants following submission of their motion, plaintiffs believe the parties are in substantial agreement on the subject of medical records containing references to unrelated health conditions. Such references should be redacted before any medical records are offered to the trier of fact, whether by plaintiffs or by defendants. The remaining issues on this point are primarily logistical. The medical records are voluminous, and not all of them are likely to be tendered to the jury. Plaintiffs and defendants have agreed, subject to the Court's approval, that the parties may assert blanket objections on March 25, 2005, to references in medical records to unrelated illnesses, with such references to be physically redacted at some subsequent time, before the records are offered to the jury in evidence.

### B. Negligence

Plaintiffs do not intend to prove, or to argue to the jury, that defendants' failure to exercise due care in operating Hanford gave rise to their injuries. Such proof is unnecessary in light of the Court's ruling on strict liability. We note in passing that contributory negligence should not be at issue either. *See Arnold v. Laird*, 94 Wn.2d 867, 869, 621 P.2d 138 (1980); *Bringle v. Lloyd*, 13 Wn. App. 844, 845-47, 537 P.2d 1060, *review denied*, 85 Wn.2d 1019 (1975).[1]

---

[1] Necessarily, plaintiffs *will* present evidence that I-131 escaped from Hanford, as part of the sequence of events ultimately leading to human exposures and the causation of plaintiffs' injuries. Plaintiffs do not interpret defendants' motion as seeking to bar such factual causation evidence.

*Plaintiffs' Opposition to Defendants' Motion in Limine (General) – Page 1*

Evidence about environmental monitoring is a different matter. Proof of deficiencies in defendants' environmental monitoring will not be offered to show that defendants' failure to exercise reasonable care in environmental monitoring was the proximate cause of plaintiffs' injuries. But such monitoring deficiencies are plainly relevant to the reliability, trustworthiness, and potential bias of the data that defendants and their indemnitor did collect and memorialize. That is an issue of evidentiary credibility, not negligence liability.

In addition, the jury must understand why it has been necessary to *reconstruct* releases, environmental transport, contamination, exposures, and doses, resulting in *estimates* that remain attended by some degree of *uncertainty*. One primary reason for that, of course, is the shortage of systematic and reliable contemporaneous *measurements* of such data – measurements that defendants and their indemnitor would have been the only ones in a realistic position to perform. Unless plaintiffs can offer evidence on this subject, the jury may well fault plaintiffs for relying on reconstructed estimates of their exposures rather than measured ones, and may attribute any lack of certainty in those estimates to some failure on plaintiffs' part.

In short, evidence on the actual conduct of environmental sampling and monitoring is necessary to enable the jury to place the data that do and do not exist in context, and to understand efforts to build estimates based on those data. The jury is not likely to confuse such evidence with any claim that defendants were or were not negligent in their operation of Hanford's separation plants, and plaintiffs would not oppose a limiting instruction on the subject.

### C.  The Government and Government Indemnification

### 1.  Evidence Generally Involving the Government

The relief sought by defendants under this heading appears to have two prongs. The scope of the first prong is unclear, but apparently it involves defendants' apprehension that plaintiffs' evidence will sound some "theme" involving the government of the United States. By way of identifying this putative "theme,"

*Plaintiffs' Opposition to Defendants' Motion in Limine (General) – Page 2*

1    defendants offer two examples: (1) reference in Dr. Hoffman's report to causation

2    metrics used in federal governmental radiation compensation programs, and (2) Dr.

3    Klein's evaluation of Shannon Rhodes and her attitude toward the government. Without

4    further elaboration, defendants request exclusion of all evidence of "this type."

5        It is baffling what these two examples have in common. In any event, defendants

6    have not identified the specific testimony from Dr. Hoffman that they wish to exclude,

7    and plaintiffs are responding in a separate submission to defendants' motion specifically

8    addressed to Dr. Klein. Plaintiffs are unsure what other evidence, if any, would fall

9    within the first prong of defendants' challenge. It would be impracticable to bar all

10   mention of the federal government and its instrumentalities at trial, given the intimate

11   involvement by various arms of the federal government in operations at Hanford, and

12   also in later assessments of radiation releases from the site –  all of which is

13   ineradicably reflected throughout the documentary record. If particular items of

14   evidence involving the government are felt to be more prejudicial than probative, the

15   issue can be handled through specific objections as the need arises.

## 2. Indemnification

17       The second prong of defendants' "governmental" objection goes to indemnity.

18   Citing FED. R. EVID. 411, defendants say that informing the jury of their indemnification

19   by the United States Department of Energy would "violate the long-standing rule

20   against introducing evidence of insurance and indemnification when not related to any

21   issue in dispute." *See* Def. Mem. at 4.

22       Defendants cite no authority to support their contention that Rule 411's

23   provisions on insurance even apply to this situation, which does not involve a contract

24   of insurance, but rather a statutory indemnity under the Price-Anderson Act. Indeed,

25   plaintiffs' very claims arise under that same Act, under which liability is channeled to

26   the Department of Energy through the contractors. It is appropriate to inform the jury

27   about the very basic structure of the legal regime under which plaintiffs bring their

28

*Plaintiffs' Opposition to Defendants' Motion in Limine (General) – Page 3*

1  claims.  Otherwise, jurors might indeed be confused (as defendants still seem to be)

2  about why plaintiffs have not sued the government.

3      But even assuming that Rule 411 does apply to these Price-Anderson claims,

4  defendants are simply mistaken in suggesting that it embodies any blanket rule that

5  would bar evidence of insurance (or indemnity) under any and all circumstances.  The

6  actual prohibition contained in Rule 411 is far narrower, and more precisely

7  circumscribed, than defendants imply.

8      Rule 411 reads as follows (the emphasis is plaintiffs'):

9      Evidence that a person was or was not insured against liability is not
       admissible upon the issue whether the person acted negligently or
10     otherwise wrongfully. *This rule does not require the exclusion of evidence
       of insurance against liability when offered for another purpose, such as
11     proof of agency, ownership, or control, or bias or prejudice of a witness.*

12     According to the Advisory Committee Notes from the time of the rule's adoption

13 in 1975, "[t]he second [italicized] sentence  points out the limits of the rule, using well

14 established illustrations."  Under the rule's plain language, and under the decisional law

15 from which it evolved, evidence of insurance (or indemnity) is barred only if offered to

16 show that defendants' conduct was wrongful.  Such evidence is not prohibited, under

17 the precedents or the rule, if relevant and material for some other purpose.  As the

18 authors of one leading treatise have observed: "Evidence of defendant's insurance

19 against liability is relevant and therefore admissible if its existence tends to prove some

20 material issue and it does not require use of the forbidden hypothesis that 'an insured

21 person tends to be more careless (or more careful) than one who is uninsured.'"  *See*

22 Jack B. Weinstein & Margaret A. Berger, WEINSTEIN'S EVIDENCE MANUAL § 7.08

23 (2003).

24     The Ninth Circuit has long voiced precisely the same view.  *See Cook-O'Brien*

25 *Constr. Co. v. Crawford*, 26 F.2d 574, 575 (9th Cir.) ("If [insurance-related documents]

26 were admissible upon an issue, which, as we have seen, was material, they were not

27 subject to exclusion on the ground that they might tend to prove a fact which the

28 plaintiff was not permitted to prove. "), *cert. denied*, 278 U.S. 630 (1928).

*Plaintiffs' Opposition to Defendants' Motion in Limine (General) – Page 4*

1   Thus courts have routinely held, both before and after the adoption of Rule 411

2   (and parallel state law provisions), that evidence of insurance is admissible where it

3   materially bears on a witness's credibility or the trustworthiness of a party's evidence.

4   *See, e.g.*, *Conde v. Starlight I*, 103 F.3d 210, 213-14 (1st Cir. 1997) (witness's

5   employment as insurer's "adjuster" relevant to show bias); *Charter v. Chleborad*, 551

6   F.2d 246, 248-49 (8th Cir.) (error to bar evidence of witness's employment by

7   defendant's insurer), *cert. denied*, 434 U.S. 856 (1977); *Corbett v. Borandi*, 375 F.2d

8   265 (3d Cir. 1967) (upholding instruction advising jury that expert's employment by

9   insurance company could be considered in evaluating expert's credibility); *Eppinger &*

10  *Russell Co. v. Sheely*, 24 F.2d 153, 154 (5th Cir. 1928) (proper for plaintiff to examine

11  defense expert on whether he was retained by defendant's surety, because "the inquiry

12  is aimed at revealing the interest of the . . . witness"); *Moy Quon v. M. Furuya Co.*, 81

13  Wash. 526, 532, 143 P. 99, 102 (1914) ("not only proper, but necessary, that the jury

14  be advised of the relation of the witness and his consequent interest in the suit"); *Ede*

15  *v. Atrium S. OB-GYN*, 71 Ohio St. 3d 124, 642 N.E.2d 365 (1994) ("The second

16  sentence of Evid. R. 411 exists for a reason – it recognizes that testimony regarding

17  insurance is not always prejudicial.").

18   In the context of this litigation, DOE's indemnification of defendants is relevant

19  not to show negligence or to prove damages, but to aid the jury in evaluating a factual

20  record that is saturated, through and through, with DOE's influence. It would prejudice

21  plaintiffs severely, were plaintiffs unable to challenge the credibility of information

22  generated under DOE's auspices, by pointing to the agency's financial stake and

23  arguing that an inference of bias may be warranted.

24   We have already mentioned environmental monitoring data, which was collected

25  and maintained by DOE and its predecessors, or under their supervision. The HEDR

26  project is but one additional example. HEDR is at the core of the defense in this case.

27  It forms the basis for defendants' estimates of the maximum doses that plaintiffs

28  received, and it is also one foundation for the HTDS study on which defendants so

*Plaintiffs' Opposition to Defendants' Motion in Limine (General) – Page 5*

1   heavily rely.  HEDR, of course, was launched and funded by DOE, for the stated

2   purpose of providing "litigation support."  *See* Memorandum from I. Avrum Fingeret

3   to Henry A. Gill dated April 30, 1987 (Ex. A).  Much of the work was performed by

4   Battelle Pacific Northwest Laboratories, a longstanding DOE contractor.  HEDR's

5   Technical Steering Panel was chaired by Dr. John Till, who has performed DOE dose

6   reconstructions at multiple nuclear weapons facilities beset by litigation, and has then

7   proceeded to offer expert testimony for the contractors in the relevant litigation.

8        Understandably, defendants would prefer the jury to believe that DOE is a neutral

9   and disinterested bystander, with no financial stake in the litigation.  They would like

10  the jury to think that Battelle's longstanding ties to DOE supplied no occasion for bias

11  when Battelle performed its work on HEDR.  They would be happiest if the jury

12  believes that DOE keeps hiring Dr. Till because DOE, in its impartial governmental

13  wisdom, wants to get to the bottom of things and has nothing to fear from an

14  investigation conducted by neutral dose-reconstruction professionals.  Perhaps

15  defendants will even succeed in persuading the jury of those things.  But they should

16  not be permitted to succeed by suppressing evidence of interests that call the

17  impartiality of HEDR, Battelle, Dr. Till's organization, and DOE into question.

18       Throughout this litigation, defendants have tried to sell DOE-sponsored studies

19  and investigations as neutral, "establishment" science, and have faulted plaintiffs and

20  their experts for taking issue with the official, "establishment" view.  In evaluating

21  defendants' salesmanship, the jury should know the pecuniary stake that DOE and its

22  affiliates have in the outcome.

23                    **D. Family Testimony**

24       Defendants cite no authority for their novel contention that family members

25  should be barred from testifying about the impacts of plaintiffs' thyroid conditions on

26  their physical and emotional well-being.  To exclude such testimony would prejudice

27  plaintiffs.  Not only is such testimony corroborative of the plaintiffs' own reports, it

28  helps to negate any contention that plaintiffs are malingerers.  Family members can also

*Plaintiffs' Opposition to Defendants' Motion in Limine (General) – Page 6*