# Exhibit 3

Page 5068

FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, et al.,

    Plaintiffs,

vs.

ROCKWELL INTERNATIONAL CORPORATION, and THE DOW CHEMICAL
COMPANY,

    Defendants.

_____

REPORTER'S TRANSCRIPT
Trial to Jury
Volume 37

_____

       Proceedings before the HONORABLE JOHN L.
KANE, JR., Senior Judge, United States District Court
for the District of Colorado, commencing at 9:07 a.m.,
on the 14th day of November, 2005, in Courtroom A802,
United States Courthouse, Denver, Colorado.

Proceeding Reported by Mechanical Stenography, Transcription
Produced via Computer by Kara Spitler, RMR, CRR,
901 19th Street, Denver, CO, 80294, (303) 623-3080

Page 5087

1          Your attention, please.

2          (RICHARD KAUFMAN, PLAINTIFFS' WITNESS, SWORN)

3          THE COURTROOM DEPUTY:  Please be seated.

4          Please state your full name for the record, spelling

5    your first and last names.

6          THE WITNESS:  My name is Richard, R-I-C-H-A-R-D, C,

7    middle initial, Kaufman, K-A-U-F-M-A-N.

8                     DIRECT EXAMINATION

9    BY MR. SORENSEN:

10   Q   Good morning, Mr. Kaufman.

11   A   Good morning.

12         MR. SORENSEN:  Good morning, ladies and gentlemen.

13   BY MR. SORENSEN:

14   Q   Could you please tell me your date of birth?

15   A   June 4, 1949.

16   Q   And you are an attorney, correct?

17   A   Yes.

18   Q   And you are currently working for a law firm here in

19   Denver; is that correct?

20   A   That is correct.

21   Q   And what is that law firm?

22   A   McKenna Long and Aldridge.

23   Q   And back in the period of 1992, 1993, you were an assistant

24   United States attorney in Denver, correct?

25   A   Yes.

1   Q    And in that capacity, among other things, you represented

2   the Department of Energy in this case that we're here about

3   today, correct?

4   A    Yes.

5   Q    Could you please briefly describe to the jury what the U.S.

6   attorney's office does, just very generally?

7   A    Well, there's two, two divisions in the office:  Criminal

8   division and civil division.  The criminal division prosecutes

9   crimes on behalf of the United States.  Excuse me.  And the

10  civil division generally defends the government when it's sued,

11  or a small part of what we did was we would sue other people

12  who owed the government money for various reasons.  That's the

13  basic division.

14  Q    And you were an assistant United States attorney, correct?

15  A    Yes.

16  Q    And until when?  When did that --

17  A    I was an assistant from April 15, 1991, through the end of

18  February 2000.

19  Q    And when did you first start working on the Cook

20  litigation, this case that we're here about today?

21  A    September 1992.

22  Q    Is it correct that among other things, you represented the

23  Department of Energy with respect to requests, discovery

24  requests that the plaintiffs made of the Department of Energy

25  for production of documents?  Is that fair?

1    A    Yeah, they were documents, subpoenas served on the

2    Department of Energy.

3    Q    And in representing the Department of Energy, you also

4    worked with other lawyers who were employed directly by the

5    Department of Energy; is that correct?

6    A    Yes.

7    Q    So these other lawyers were not part of the United States

8    attorney's office.  They were kind of -- their employer was the

9    Department of Energy; is that correct?

10   A    Yes.

11   Q    And you mentioned subpoenas.  I want to get to those.

12        If you could take a look at Exhibit P1386, please.

13   A    1386?

14   Q    Yes.

15   A    Yes, I've got it.

16   Q    Do you have that in front of you?

17        I'll show this to the jury.  That is subpoena; is that

18   correct?

19   A    Yes.

20        MR. BERNICK:  I have no objection to the document.

21        THE COURT:  It's admitted.

22    (Exhibit 1386 admitted.)

23   BY MR. SORENSEN:

24   Q    And just a date, July 14, 1993; do you see that?

25   A    Down in the bottom right?

Page 5090

1   Q   Yes.

2   A   Yes.

3   Q   Okay.  And this was subpoenaed by the plaintiffs and served

4   upon the Department of Energy; is that correct?

5   A   Yes.

6   Q   Turn to page 6 of the attachment where it states document

7   request.  Are you there?

8   A   Just a second.

9       Okay.

10  Q   This is the document request that plaintiffs made on the

11  Department of Energy through subpoena; is that correct?

12  A   Yes.

13  Q   And it states, Identify and produce all documents,

14  including all indices and databases located in DOE Rocky Flats

15  area office, DOE regional office in Albuquerque, New Mexico,

16  for the DOE archives in Germantown, Maryland, that relate to

17  the following conditions or activities at Rocky Flats, and it

18  starts, A, safety practices or procedures; B, generation, use,

19  handling, processing, treatment, storage, and measurement,

20  monitoring, and disposal of, or any other operations involved

21  in hazardous substances.  Do you see that?

22  A   Yes, sir.

23  Q   And then it continues.

24      And the second request is identical, although it's

25  focused on the documents located in Rocky Flats document

1    depository.  Do you see that?

2    A    Yes.

3    Q    Now, could you, please, very briefly, describe to the -- or

4    tell the jury what a subpoena is?

5    A    Well, in this case, it was subpoenaed to the Department of

6    Energy requesting documents from Rocky Flats and from, I guess,

7    Washington, D.C., the DOE headquarters, documents that would

8    be -- would apply in this case, would be relevant to this case.

9    Q    Right.  And a subpoena is, in effect, a command to produce

10   documents, correct?

11   A    Yes.

12   Q    And plaintiffs later served on the Department of Energy

13   three more subpoenas.  Do you recall that?

14   A    I don't recall exact number, but I know there were more.

15   And there were some before this.

16   Q    Let me just go through those quickly.

17          If you could look at P1387, please.

18   A    Okay.  I'm there.

19   Q    This is United States District Court, District of Colorado,

20   in this case, subpoena, in a civil case.  Do you see that?

21   A    Yes.

22   Q    And the date down below, November 17, 1993.  Do you see

23   that?

24   A    Yes.

25   Q    And if you could turn to P1388, please.

Page 5092

1   A   Okay.  I'm there.

2   Q   This is another subpoena that plaintiffs served on the

3   Department of Energy; is that correct?

4   A   Yes.

5   Q   And plaintiffs -- just to explain this to the jury,

6   plaintiffs were required to serve subpoenas because the

7   Department of Energy wasn't going to just hand over documents,

8   correct?

9   A   I don't know what your thoughts were.  I mean, it's normal

10  for parties -- if it's not a party, you serve a subpoena on

11  them for documents.

12  Q   So this is a subpoena in a civil case, in this case; do you

13  see that, case we're here about today?

14  A   Yes.

15  Q   All right.  And the date here is November 19, 1993.  Do you

16  see that?

17  A   Yes.

18  Q   Okay.  If you could turn to Exhibit P646, please.

19         Are you there?

20  A   Yes.

21  Q   This is another subpoena served by the plaintiffs on the

22  Department of Energy; is that correct?

23  A   Yes.

24  Q   In this litigation that we're here about today?

25  A   Yes.

1   Q   And the date on this one is April 11, 1994; is that

2   correct?

3   A   Yes.

4   Q   Now, the Department of Energy did not file any objections

5   to these subpoenas; is that correct?

6   A   We filed objections to some early on, back in '92, and they

7   were quashed, but not to these.

8   Q   So to the subpoenas, the four subpoenas we just were

9   looking at, the Department of Energy filed no objections,

10   right?

11   A   I think you're right.  I'd have to go back in the records,

12   but I think that's correct.

13   Q   Now, after those subpoenas were served on the Department of

14   Energy from July to November '93, some period of time passed,

15   and then the plaintiffs in this case filed a motion to have the

16   Department of Energy held in contempt.  Do you recall that?

17   A   April of '94, I believe, that motion was filed.

18   Q   Yes.  And could you explain briefly to the jury what

19   contempt means?

20   A   Well, it means you've not -- if you're held in civil

21   contempt, it means that you -- a party has failed to comply

22   with a command to do something in a court case.  In this case,

23   it would be provide documents under these subpoenas.

24   Q   And after plaintiffs filed their motion for contempt

25   against the Department of Energy in April 1994, plaintiffs and

Page 5094

1    Department of Energy began discussing a way to resolve that

2    motion by agreement; is that correct?

3    A    That's correct.

4    Q    And after a fair amount of discussion and back-and-forth

5    about that issue in July of 1994, an agreement was reached,

6    correct?

7    A    Correct.

8    Q    All right.  Could you please turn to Exhibit P647.

9    A    Yes, I'm there.

10   Q    Now, P647 is a copy of the agreement between plaintiffs and

11   the Department of Energy concerning plaintiffs' subpoenas; is

12   that correct?

13   A    Yes.

14   Q    Show this to the jury.  This is P647.

15        And this name in the middle, from Dick Kaufman, that's

16   you, correct?

17   A    Yes.

18   Q    And the date, July '94.  So about a year after plaintiffs

19   served their first subpoena, correct, that we were discussing

20   earlier?

21   A    Well, the ones you've shown me.  There were subpoenas prior

22   to that.

23   Q    Right.  But the subpoenas we've discussed this morning,

24   this was about a year after that, correct?

25   A    About, yes.

Page 5095

1    Q    On page 15, there is -- this is your signature, correct?

2    A    Yes.

3    Q    Does not yet have a signature of a court 'cause at this

4    point it had not been signed by the court, correct?

5    A    Right, that's correct.

6    Q    So that was in July '94, and the agreement reached between

7    plaintiffs and Department of Energy was actually entered as a

8    court order in September of '94; is that correct?

9    A    Yes.

10    Q    Now, that agreement is called -- and I'll -- if you could

11    turn to Exhibit P635, please.

12    A    I'm there.

13    Q    Okay.  I'll read the title.  It's called "Stipulated order

14    regarding production of documents under the plaintiffs'

15    subpoena duces tecum served on the United States Department of

16    Energy dated July 14, 1993, November 17, 1993; November 19,

17    1993; and April 11, 1994."  Do you see that?

18    A    Yes.

19    Q    The subpoenas referenced in this, the caption of this, are

20    the four subpoenas we discussed earlier this morning, correct?

21    A    Yes.

22    Q    Subpoena duces tecum, could you explain to the jury what

23    duces tecum means?

24    A    Well, it means to produce something, a thing, or like in

25    this case, documents.

Page 5096

1   Q   But it says stipulated order.  Stipulated means agreed; is

2   that correct?

3   A   Yes.

4   Q   And so this is an order of court that the DOE agreed to,

5   correct?

6   A   Well, we agreed to submit it to the court, and then the

7   court looks at that and eventually did accept it and entered it

8   as a court order.

9   Q   Correct.  If you could turn --

10          THE COURT:  Mr. Sorensen, for clarity, I think you

11  ought to explain what a magistrate judge is.

12          MR. SORENSEN:  Sure, I was just about to get to that.

13          THE COURT:  Okay.

14          MR. SORENSEN:  Yes, Your Honor, thank you.

15  BY MR. SORENSEN:

16  Q   If you could turn to page 15 of this exhibit.

17  A   Okay.

18  Q   Are you there, sir?

19  A   Yes.

20  Q   Now, the earlier exhibit, we saw the signature of yourself,

21  Richard Kaufman, but the signature for Magistrate Borchers was

22  blank, and now it's been signed.  Do you see that?

23  A   Yes.

24  Q   And could you explain briefly to the jury what a United

25  States magistrate judge is?

Page 5097

1   A   The United States magistrate judges work on behalf of the

2   district court judges and handle matters such as discovery,

3   document production, scheduling the case, on behalf of the

4   district judge.  In this case, Magistrate Judge Borchers

5   handled this order, and he is the one who signed it and made it

6   an order of the court.

7   Q   All right.  And you came to understand that the Department

8   of Energy had possession of millions and millions of documents

9   potentially relevant or potentially related to this case,

10  correct?

11  A   Well, I don't know whether they were relevant, I don't

12  think most of them were, but there was a total universe of

13  65 million pages of documents, most of them irrelevant.

14  Q   But the volume was huge, correct?

15  A   Yes.

16  Q   Now, in this stipulated order that the Department of Energy

17  agreed to, it contains certain provisions with respect to

18  classified documents, correct?

19  A   I'm sure it does.  I would have to review those.  I

20  don't -- I remember that was part of the subject matter, but I

21  don't remember the specifics.

22  Q   Okay.  Could you turn to page 12, please, of P635.

23  A   Yes.

24  Q   Are you there, sir?

25  A   Yes.  Yes.

Page 5098

1    Q    It states, for classification.  Within seven days from the

2    date that class plaintiffs designate a document or document

3    collection for review, DOE shall make a request in writing to

4    the appropriate organizations or entities charged with

5    undertaking classification review promptly, making a copy of

6    such request to class plaintiffs.  Requesting such

7    organizations or entities to conduct the classification review

8    on an expedited basis.

9         Do you see that, sir?

10   A    Yes.

11   Q    And a classification review, that's DOE looking at a

12   classified document, determining what, if any, portion it's

13   going to release publicly; is that correct?

14   A    Yes.  Based on national security issues.

15   Q    Well, that is --

16   A    Yes.

17   Q    You yourself have never done a classification review,

18   though, correct?

19   A    No.

20   Q    And you didn't participate personally in the classification

21   reviews that the Department of Energy conducted on documents

22   that plaintiffs requested, correct?

23   A    That's correct.

24   Q    'Cause you do not have a security clearance, correct?

25   A    That's correct.

Page 5099

1    Q    You understand a security clearance is required for anyone

2    from -- except from DOE to actually see the classified document

3    in its classified state?

4    A    Yes.  Yes.

5    Q    And when plaintiffs' counsel saw a classified document,

6    one, it could take that document into this courtroom, they

7    wouldn't be allowed to, correct?

8    A    If it was still classified, that would be correct.

9    Q    Now, the stipulated order that DOE agreed to continues,

10   With respect to any document over which DOE has plenary

11   authority -- what does plenary authority?

12   A    That means sole authority.  Sometimes in this case there

13   was joint authority between DOE and the Department of Defense.

14   But if they have sole authority, that's what this is referring

15   to.

16   Q    To declassify that document, DOE shall complete

17   classification review within 30 days after such document was

18   requested by class plaintiffs, except for good cause shown.  In

19   which case parties will attempt to agree to mutually acceptable

20   resolution as to any documents so identified by DOE.  Barring

21   such resolution, the matter will be submitted to the magistrate

22   judge for disposition.  And this continues.

23        With respect to any document over which federal

24   agencies other than DOE, quote, external agencies, quote, must

25   consent to the release of that document, DOE shall make a

Page 5100

1   written request to such external agencies to expedite -- that

2   means to speed up, right?

3   A   Right.

4   Q   -- the classification review -- turning to the next page --

5   of that document and shall produce such document within 14 days

6   after such external agency's authorized the release of that

7   document.

8           And here we're talking about documents that DOE or

9   classified documents that DOE does not have sole authority to

10  release; is that correct?

11  A   Yes.

12  Q   So it's requiring DOE as to those documents to make the

13  appropriate request under certain timetables to the appropriate

14  agency, correct?

15  A   Yes.

16  Q   And then it continues, this section on classification,

17  After such classification review is completed, DOE shall

18  provide such documents to class plaintiffs or specify the

19  grounds upon which such documents cannot be made available.

20  DOE shall not withhold any document in its entirety or only a

21  portion where only a portion of a document contains classified

22  material, but rather DOE shall make every effort to produce

23  such documents in redacted form.

24          Do you see that?

25  A   Yes.

Page 5101

1    Q    And redacted refers to DOE deleting or whiting out portions

2    of document, correct?

3    A    Anything that remained classified under the national

4    security act, yeah.

5    Q    Well, anything that DOE determines it needs to white out,

6    correct?

7    A    Well --

8         MR. BERNICK:  Objection to the form of the question.

9    He just answered it.

10        THE COURT:  Sustained.

11   BY MR. SORENSEN:

12   Q    If you could go back to page 12, just flip back for a

13   second.  It says, External agencies, do you see here at the

14   bottom?

15   A    Yes.

16   Q    What are these external agencies, do you know?

17   A    Well, it would be agencies other than DOE; in this case it

18   would have been primarily the Department of Defense, possibly

19   NSA, National Security Agency, but primarily Department of

20   Defense.

21   Q    'Cause the Department of Defense might have the authority

22   over certain classified documents that plaintiffs might

23   request; is that correct?

24   A    Yes.  Or joint authority, yes.

25   Q    Joint with the Department of Energy?

1   A   Yeah.  Or they may just have it on their own, yeah.

2   Q   Now, if you could turn to page 14 of this exhibit,

3   stipulated order, please.

4        You there?

5   A   Yes.

6   Q   Paragraph 25.  It states, Any deviation by DOE from

7   complying with any provision of this order shall constitute a

8   basis for contempt of court within the meaning of Rule 45(e),

9   Federal Rules of Civil Procedure, and subject DOE to the entry

10  upon application after citation of civil contempt and

11  additional sanctions as may be just.

12       Do you see that?

13  A   Yes.

14  Q   And Rule 45 that's being referred to here, that's a rule of

15  civil procedure governing subpoenas and contempt; is that

16  correct?

17  A   Well, subpoenas to third parties, yes.  And whatever

18  third -- not a party to the litigation, but it is someone who

19  is other than a party and you're requesting information from

20  them, yeah.

21  Q   Right.  You say DOE is not a party.  You understood that

22  DOE was an indemnitor of defendants, correct?

23  A   Yes.

24  Q   And what do you understand that to mean?

25  A   Well, they would pay any judgment in this case or

Page 5103

1    settlement.

2    Q    And as far as you know, Mr. Kaufman, there's no way for the

3    plaintiffs in a public trial such as we're here about today to

4    use and show a jury in a public setting a classified document

5    in its classified state, correct?

6    A    Correct.

7    Q    Now, after Department of Energy agreed to the entry of the

8    stipulated order we were just looking at, P635, plaintiffs then

9    made a number of requests of DOE for DOE to produce documents

10   pursuant to our -- you know, in compliance with that order,

11   correct?

12   A    Yes.

13   Q    And one of the requests that plaintiffs made was for

14   documents relating to material unaccounted for, also known as

15   MUF, M-U-F, relating to plutonium unaccounted for at Rocky

16   Flats, correct?

17   A    Yes.

18   Q    And you understand and you testified at your deposition

19   that you understood MUF to refer to, as you put it, plutonium

20   that came in the door that they couldn't find later; is that

21   correct.

22        That's what you testified?

23   A    Basically, yes.

24   Q    And you gained that understanding of MUF from Mr. Rodney

25   Hoffman, correct?

Page 5104

1    A    Probably him, probably.

2    Q    And Mr. Hoffman, just to explain to the jury who he is, he

3    was a classification officer first for Dow, then for Rockwell,

4    then for EG&G, contractor that came after Rockwell, and then

5    the Department of Energy, correct?

6    A    I thought at the time I dealt with him he worked for DOE.

7    But he had worked for the contractors at the plant prior to

8    that, yes.

9    Q    Now, I just wanted to make sure something's clear.  You --

10   although you were representing the Department of Energy, you

11   did not have the authority to declassify any document, correct?

12   A    Correct.

13   Q    In fact, you didn't even have the ability or authority to

14   look at a classified document in its classified form, correct?

15   A    Correct.

16   Q    Please turn your attention to Exhibit P650.

17   A    Okay.  I'm there.

18   Q    Now, this is a request that plaintiffs made for MUF and

19   MUF-related documents, correct?

20   A    Let me just look at it --

21   Q    Sure.

22   A    -- for a second.

23        Yes.  Yes.

24   Q    This is dated December 14, 1994, correct?

25   A    Yes.

Page 5105

1   Q    And the request is addressed to two people, one of whom is

2   you, correct?

3   A    Yes.

4   Q    The request states, Pursuant to the stipulated order signed

5   by Magistrate Judge Borchers on September 13, 1994 -- that's

6   the order we were just looking at, correct?

7   A    Yes.

8   Q    -- plaintiffs' request that the Department of Energy

9   produce all documents relating to the quantities of unaccounted

10  for plutonium, uranium, tritium, americium, and all other

11  nuclear materials used at Rocky Flats.  This request includes

12  all, quote, material unaccounted for, quote, or, quote, MUF

13  documents, as well as all accountability and mass balance

14  documents.

15         Do you see that?

16  A    Yes.

17  Q    Just to continue, You may recall that in June 1994 -- so

18  that's before you signed the stipulated order, correct?

19  A    Yes.

20  Q    -- the DOE announced that 2,600 pounds of plutonium and

21  688 pounds of uranium at Rocky Flats were unaccounted for, and

22  it refers to, See enclosed news articles.  Plaintiffs

23  respectfully request that DOE produce all documents relating to

24  and substantiating these figures.

25         Do you see that?

Page 5106

1   A   Yes.

2   Q   And it continues and ends, With any documents responsive to

3   these requests are classified, plaintiffs request that they be

4   declassified pursuant to the stipulated order.

5        Do you see that?

6   A   Yes.

7   Q   And that refers to the provision in the stipulated order we

8   were discussing where DOE's required to do certain things by

9   certain deadlines when we ask for -- when the plaintiffs ask

10  for classified documents, correct?

11  A   Yes.  Yes.

12  Q   All right.  Now, the attachments are news articles that

13  were sent to DOE, correct?

14       MR. BERNICK:  Objection.  These are all hearsay.

15       THE WITNESS:  Yeah, I don't know.

16       THE COURT:  The fact that they were sent is all right.

17  But -- yes, Mr. Sorensen.

18       MR. SORENSEN:  Goes to the relevance of our request as

19  we were explaining it to DOE.

20       THE COURT:  They're still hearsay.  The reference to

21  the newspaper reports is sustained.  The objection is sustained

22  as to the reports.  The fact that they were attached is not --

23       MR. SORENSEN:  Just to confirm, attached for --

24       THE COURT:  It's kind of a don't-ask-don't-tell

25  situation.  They're there and they were sent to him, but we're

Page 5107

1    not going to go into the content.

2              Okay.

3              MR. SORENSEN:  Thank you, Your Honor.

4              MR. BERNICK:  I guess I shouldn't ask.

5              THE COURT:  You already did.

6    BY MR. SORENSEN:

7    Q    Just so the record is clear, Mr. Kaufman, attached to

8    plaintiffs' request for MUF and MUF-related documents are

9    copies of two news articles both dated -- well, one is dated

10   June 27, 1994.  One is dated June 28, 1994, relating to DOE's

11   announcements about the amount of MUF at Rocky Flats; is that

12   correct?

13   A    Yes.

14   Q    Now, in that request, before we leave it, there's no

15   restriction or limitation stated in this request concerning the

16   types of MUF or MUF-related documents plaintiffs are seeking,

17   correct?

18   A    Not -- yes.  Correct.

19   Q    There is no such restriction, correct?

20   A    Correct.

21   Q    Now, once plaintiff submitted this request, P650, to you on

22   behalf of the Department of Energy, the two people principally

23   responsible for responding on behalf of the Department of

24   Energy were, one, Mr. Hoffman, we've mentioned, correct?

25   A    Yes.  Correct.

1  Q    And the other was a gentleman by the name of Avi Fingeret,

2  correct?

3  A    Yes.

4  Q    Could you please tell the jury who Mr. Fingeret is?

5  A    He was then, I have not seen him in ten years, but ten

6  years ago or eleven years ago, he was an attorney with the DOE

7  general counsel's office in Washington, D.C.

8  Q    So we were discussing earlier the difference between your

9  role as an assistant U.S. attorney and lawyers who work

10  directly for DOE.  Do you recall that?

11  A    Yes.

12  Q    Mr. Fingeret was a lawyer who worked directly for DOE,

13  correct?

14  A    Yes.

15  Q    Now, once plaintiff submitted this request for MUF and

16  MUF-related documents in December of '94, the Department of

17  Energy was required under the stipulated order that we saw

18  earlier to take certain action under certain timetables,

19  correct?

20  A    Yes.

21  Q    And in fact, a fair amount of time passed after plaintiffs

22  made their December 1994 request, and plaintiffs eventually

23  moved again to have the Department of Energy held in contempt,

24  correct?

25  A    Yes.

Page 5109

1    Q    If you could please turn to Exhibit P1410.

2         Are you there, sir?

3    A    Yes.

4    Q    Now, that is an order of Magistrate Judge Borchers,

5    correct?

6    A    Let me look at this, just a second.

7         Yes, it is.

8         MR. BERNICK:  Your Honor, it would be, I think, an

9    appropriate practice for counsel to move the admission of the

10   document before he shows it.  I haven't been fussy about it.

11        THE COURT:  All right.

12        MR. BERNICK:  With respect to this one, as Your Honor

13   knows, we've had discussion before the Court concerning this

14   line of inquiry, and we just want to make sure we are

15   preserving an objection on an ongoing basis.

16        THE COURT:  Your objection has been noted.

17        It's admitted.

18   (Exhibit 1410 admitted.)

19   BY MR. SORENSEN:

20   Q    This is dated, at the top, May 31, 1995.  Do you see that?

21   A    Yes.

22   Q    So this is some number of months after our request of

23   December -- or plaintiffs' request of December 1994, correct?

24   A    Yes.

25   Q    All right.  And it's titled "Certification pursuant to

Page 5110

1    28 U.S.C. section 636" -- I can't quite make that -- (e).

2              Magistrate Judge Borchers, this is the same magistrate

3    who signed the stipulated order that we saw earlier, correct?

4    A    Yes.

5    Q    States, This matter is before the court on two motions

6    filed by plaintiffs to have the United States Department of

7    Energy, DOE, held in contempt of court.  DOE has been given an

8    opportunity to respond to the motions.  Further argument is

9    waived at this time.

10             At the bottom it states, Plaintiffs and DOE entered a

11   stipulation on July 8, 1994.  That's the stipulated order that

12   we saw earlier, correct?

13   A    Yes.

14   Q    That stipulation is approved and made an order of this

15   court on September 13, 1994.

16             If you could turn to page 3.

17             Are you there, sir?

18   A    Yes.

19   Q    It states, It is hereby certified that plaintiffs have

20   presented sufficient basis to believe that the United States

21   Department of Energy has failed to comply with stipulation and

22   the order approving the stipulation.

23             Do you see that?

24   A    Yes.

25   Q    What is your understanding of what effect this particular

Page 5111

1   order had?  It's called a certification.

2   A    That means there would be a hearing on the contempt order.

3   Q    But not before the magistrate, but before this Court,

4   correct?

5   A    Before Judge Kane.

6   Q    And in July 1995, this Court, Judge Kane, held a four-day

7   evidentiary hearing on plaintiffs' motion to have the

8   Department of Energy held in contempt, correct?

9   A    Yes.

10   Q    And you were one of the attorneys representing the

11   Department of Energy at that hearing, correct?

12   A    Yes.

13   Q    And a number of witnesses were presented by both plaintiffs

14   and the Department of Energy, correct?

15   A    Yes.

16   Q    Mr. Hoffman, for example, that we discussed earlier, he

17   testified, correct?

18   A    Yes.

19   Q    And Mr. Fingeret, that we mentioned earlier, he testified,

20   correct?

21   A    Yes.

22   Q    And in November 1995, this Court held the Department of

23   Energy in contempt, correct?

24   A    What month did you say?

25   Q    November of 1995.

Page 5112

1    A    Yes.

2    Q    Could you please turn to Exhibit P636.

3    A    I'm there.

4    Q    Now, this is a copy of this Court's memorandum, opinion,

5    and order re: contempt holding DOE in contempt, correct?

6    A    Yes.

7         MR. SORENSEN:   Your Honor, may I show this to the

8    jury?

9         THE COURT:   Yes.   The objection is overruled.   It's

10   already been made.   Yes.

11        (Exhibit 636 admitted.)

12   BY MR. SORENSEN:

13   Q    Here, the date, November 15, 1995.   Do you see that.

14   A    Yes.

15   Q    And I was just reading, Memorandum, opinion, and order re:

16   contempt by Judge Kane.

17        And you have, just to give the jury some background

18   information, it says, The United States Department of Energy,

19   DOE, is the owner of the Rocky Flats Nuclear Weapons Production

20   Facility, located northwest of Denver, Colorado.

21        DOE contracted with defendants, Dow Chemical Company

22   and Rockwell International Company to operate Rocky Flats.

23   Plaintiffs allege during operation of Rocky Flats Dow and

24   Rockwell released hazardous substances into the surrounding

25   area damaging plaintiffs' property and increasing their risk of

Page 5113

1    adverse health consequences.

2          During the course of pretrial discovery in 1993,

3    plaintiffs served subpoena duces tecum upon DOE requesting

4    production of documents related to the Rocky Flats weapons

5    plant.

6          Do you see that?

7    A   Yes.

8    Q   Now, it continues giving some of the procedural history,

9    and then it states on page 2, Plaintiffs therefore moved in

10   April 1994 to hold DOE in contempt.

11         You recall you testified about that earlier?

12   A   Yes.

13   Q   That was the first motion that plaintiffs filed asking DOE

14   to be held in contempt, correct?

15   A   Correct.

16   Q   On July 8, 1994, in order resolve the contempt motion, DOE

17   entered a proposed stipulated order defined as, quote, order,

18   which was made a court order by Magistrate Judge Borchers on

19   September 13, 1994.

20         Do you see that?

21   A   Yes.

22   Q   That's the stipulated order that we looked at earlier,

23   correct?

24   A   Correct.

25   Q   If you could turn to page 4, please.  Okay?  There's a

Page 5114

1  caption that reads, Request for documents relating to missing

2  materials.  Do you see that?

3  A   Yes.

4  Q   This relates to plaintiffs' December 1994 request for MUF

5  and MUF-related documents, correct?

6  A   Yes.

7  Q   So it states, Plaintiffs contend DOE violated the order,

8  that's the stipulated order, because it failed to provide

9  documents requested in December 1994 relating to missing

10  quantities of nuclear materials at Rocky Flats.

11        It continues, In June 1994, DOE revealed to the public

12  large quantities of plutonium and uranium were missing from

13  Rocky Flats.  Plaintiffs sent DOE a letter from

14  December 1994 -- and I'll stop there, that's referring to the

15  letter we looked at earlier, correct?

16  A   Yes.

17  Q   -- requesting documents pertaining to missing substances

18  and requesting any classified documents be reviewed and

19  declassified pursuant to the order.  Plaintiffs have made

20  repeated follow-up requests for the documents and/or evidence

21  of the initiation -- that means the beginning, correct?

22  A   Yes.

23  Q   -- after classification review.  DOE has failed to initiate

24  the classification review or provide any writing, regardless of

25  date initiating such a review.

Page 5115

1              Do you see that?

2   A   Yes.

3   Q   Okay.  It continues on, In the more than seven months

4   between the time of plaintiffs' request and the contempt

5   hearing -- that's referring to the time between plaintiffs'

6   December 1994 request and the July contempt hearing, correct?

7   A   Yes.

8   Q   -- however, DOE has not even attempted to begin a

9   classification review.

10             And it goes on on page 5.

11             Are you there?

12  A   Yes.

13  Q   The conclusion, DOE violated paragraph 20 -- that's the

14  paragraph of this stipulated order dealing with classified

15  documents that we looked at earlier, correct?

16  A   Yes.

17  Q   DOE violated paragraph 20 of the stipulated order by

18  failing to make a written request for a classification review,

19  failing to provide a copy of any such writing to plaintiffs,

20  and failing to initiate a classification review of requested

21  documents.  DOE has not provided the requested documents or

22  filed objections to their request.

23             Do you see that?

24  A   Yes.

25  Q   Okay.  Now, this order also relates to a number of other

Page 5116

1  requests, other than plaintiffs' requests for classified MUF

2  documents, correct?

3  A   Yes.

4  Q   Other documents that plaintiffs had asked DOE to produce,

5  correct?

6  A   Yes.

7  Q   And very quickly going to touch on a few of these.  We're

8  not going to get into detail.

9       You're familiar with these other requests that

10 plaintiffs have made, correct?

11 A   Probably most of them.  I might have to read something out

12 of the order quickly to refresh my memory.

13 Q   Sure.  On page 5, there's a heading "Plaintiffs' November

14 7, 1994 document request."  Do you see that?

15 A   Yes.

16 Q   There's discussion by the court, over to page 6, the

17 conclusion, I find DOE has failed to comply with the order in

18 this regard.  Do you see that?

19 A   Yes.

20 Q   Then there is, on page 6, a discussion of another request

21 that plaintiffs had made, plaintiffs' November 23, 1994,

22 request for documents.  Do you see that?

23 A   Yes.

24 Q   There's a discussion of that on page 8.  The conclusion.

25      Are you there, sir?

Page 5117

1   A   Yes.

2   Q   I find DOE has failed to substantially comply with the

3   order in this regard.

4        Do you see that?

5   A   Yes.

6   Q   The bottom of page 8, there's a heading, "Failure to

7   identify computer tapes."

8        Do you see that?

9   A   Yes.

10  Q   Okay.  There's a discussion onto page 9, and at the bottom,

11  again, the conclusion, I find DOE failing to identify the

12  computer tapes, has not complied substantially with the order.

13       Do you see that?

14  A   Yes.

15  Q   Now, there were -- of the couple of instances that the

16  Court found there was substantial compliance, correct?

17  A   Yeah, I believe there were eleven issues, and the Court

18  found contempt on six, and on five the Court found there was

19  compliance.  But I would have to go through the order and

20  make -- it's been ten years.

21  Q   Compliance or just not a finding of contempt, correct?

22  A   Well, compliance, we weren't in contempt.

23  Q   Okay.  If you could turn to page 11.

24       Are you there, sir?

25  A   Yes.

Page 5118

1   Q   There's a heading, "Documents in the custodies of the Los

2   Alamos National Laboratory"?

3   A   Yes.

4   Q   What's that laboratory?

5   A   That's the original laboratory and the weapons complex

6   where they developed the atomic bomb in World War II.  It's

7   still a laboratory -- my knowledge is ten years old -- but it

8   was still then part of the weapons laboratories.

9   Q   Right, it states, In a separate motion, plaintiffs contend

10   DOE violated the order because it failed to provide documents

11   in the custody of Los Alamos National Laboratory, a facility

12   owned by DOE and operated by the regents of the University of

13   California on behalf of DOE.  DOE owns and/or controls all

14   requested documents in Los Alamos custody.

15          Do you see that?

16   A   Yes.

17   Q   It's referring to a separate request that plaintiffs,

18   plaintiffs by letter dated December 14, 1994, requested

19   documents at LANL relating to health assessments and

20   epidemiological studies which focused on human health effects

21   of plutonium exposure.  Do you see that?

22          And it continues to describe in the LANL studies and

23   plaintiffs' requests for documents relating to these health

24   studies.  Do you see that?

25   A   Yes.

1   Q    And on page 12, the conclusion regarding plaintiffs'

2   request for LANL documents, the order states, I find DOE by not

3   producing the requested documents within 30 days or anytime

4   thereafter has failed substantially to comply with the order.

5        Do you see that?

6   A    Yes.

7   Q    On page 13, are you there, sir?

8   A    Yes.

9   Q    There's a heading, "Rocky Flats database."  Do you see

10  that?

11  A    Yes.

12  Q    There's discussion of that on page 14.  Are you there?

13  A    Yes.

14  Q    The conclusion, again, I agree with plaintiffs and find DOE

15  has failed substantially to comply with the order.

16        Do you see that?

17  A    Yes.

18  Q    And then on page 16, are you there, sir?

19  A    Yes.

20  Q    The conclusion, DOE's assertion that it's unable to comply

21  with the order is untenable.  DOE voluntarily agreed to the

22  order with full knowledge of the documents in its possession

23  and the terms of the order to resolve plaintiffs prior contempt

24  motion against it.  Relying upon DOE's agreement to the order,

25  the court did not adjudicate plaintiffs' prior contempt motion.

Page 5120

1    DOE did not object and the order was entered -- I'm sorry, DOE

2    did not object when the order was entered that it lacked the

3    ability to comply with its terms.  DOE did not object when the

4    order was entered that it lacked the ability to comply with its

5    terms nor did DOE file any motion for protective order.

6              For reasons stated above, I find DOE has failed

7    substantially to comply with the order in the several respects

8    delineated above.

9              Do you see that?

10   A    Yes.

11   Q    Now, on page 17 the court is stating, DOE shall comply with

12   the order in all respects and in particular with regard to

13   plaintiffs' request for documents relating to missing

14   materials; plaintiffs' November 7, 1994 request; plaintiffs'

15   November 23, 1994, request; the identification of computer

16   tapes, documents located at LANL, and the Rocky Flats database

17   as discussed above.  DOE shall comply with the time frame

18   provided in the order as all of plaintiffs' request have been

19   made on the date of the filing of this order.

20             Paragraph says, DOE shall bear all costs and expenses

21   associated with the compliance of this order and the stipulated

22   order.

23             Do you see that, sir?

24   A    Yes.

25   Q    So what it says, DOE shall comply as if the requests had

Page 5121

1   been made as of the date of the following order.  That meant

2   that DOE was to follow the stipulated order and its timetable

3   and its deadlines as if all the plaintiffs' requests had been

4   made as of November 13, 1995, correct?

5   A    Yes.

6   Q    So that provided deadlines for when DOE had to do certain

7   things after November 13, 1995, correct?

8   A    Yes.

9   Q    Now, after this order was entered, DOE did not appeal it,

10  correct?

11  A    Correct.

12  Q    Could you please explain briefly to the jury what an appeal

13  means?

14  A    Well, an appeal means that, that you appeal a judgment in

15  the case to the court of appeals.

16  Q    A higher court?

17  A    A higher court, yes.

18  Q    So DOE did not attempt to appeal the contempt order,

19  correct?

20  A    Correct.

21  Q    Now, later on, after November '95, at a hearing before

22  Judge Kane in January of 1996, the Court set a deadline of

23  March 15 for DOE to produce the documents that it was required

24  to produce, correct?

25  A    I think for some of the documents, for the MUF documents.

Page 5122

1          Not -- most of the documents had been produced by that

2    point in time.

3    Q    Could you turn to Exhibit P1420, please.

4          Are you there, sir?

5    A    Yes.

6    Q    Now, this is a transcript of a hearing held before Judge

7    Kane on December 16, 1996, correct?

8    A    Yes.

9    Q    All right.  Could you turn to page 28 of this transcript,

10   please.

11         Are you there, sir?

12   A    Yes.

13   Q    Now, towards the bottom of this page, the first full

14   paragraph, the Court is saying, I'm going to have a hearing in

15   this matter on Thursday, February 15.  Do you see that?

16   A    Yes.

17   Q    And then it indicates that it, the Court is requesting a

18   plan of production for declassifying those documents and

19   turning them over by March 15.  Do you see that?

20   A    Yes.

21   Q    Okay.  And the Court is also asking for the parties to

22   brief or submit discussions of other legal issues, correct.

23         Do you see that towards the bottom of 28?

24   A    Yes.

25         MR. SORENSEN:  Your Honor, may I approach for one

Page 5123

1   second?

2           THE COURT:  Yes.

3       (At the bench:)

4           MR. SORENSEN:  Your Honor, out of an abundance before

5   approaching, I wasn't sure whether I could mention the briefing

6   on the impoundment of documents.  I didn't want to mention

7   that.  You mentioned not to mention the issue of DOE taking

8   over the case, but I want to make clear I can mention the other

9   issue.

10          THE COURT:  The other issue.

11          MR. SORENSEN:  You wanted briefing on whether these

12  documents could be impounded by the United States marshal.

13          THE COURT:  I don't see what it does.  I think it's

14  probably just best not to.

15          Can we take a recess now.

16          MR. SORENSEN:  Sure.

17      (In open court:)

18          THE COURT:  Let's take a recess for about 15 minutes,

19  please.

20      (Jury out at 10:25 a.m.)

21      (Recess at 10:25 a.m.)

22      (Reconvened at 11:46 a.m.)

23          THE COURT:  Thank you.  I guess we'll all stand.

24          MR. SORENSEN:  Your Honor, I have a question before

25  the jury comes in.

Page 5124

1          THE COURT:  Be seated, please.

2          Yes, sir.

3          MR. SORENSEN:  I want to be clear, make sure I'm not

4    going over any lines.  Later -- or soon we're going to get to a

5    February hearing which I mentioned in my proffer, in which this

6    Court indicated that it was considering moving to evidentiary

7    sanctions for DOE's failure to produce documents.  I was going

8    to going to draw the witness's attention to it and introduce

9    it.

10         THE COURT:  I didn't enter any order.

11         MR. SORENSEN:  Correct.  You were stating on the

12   record that it's -- it's out.

13         THE COURT:  Don't go there.  I didn't do it.  It's not

14   a fact.

15         MR. SORENSEN:  And I take it the defendants are also

16   not permitted to go there, correct, I mean that the --

17         MR. BERNICK:  I'm surely not going to bring out

18   anything Your Honor didn't order.

19         THE COURT:  I didn't order it.  So don't bring it out.

20         All right.

21         MR. SORENSEN:  Glad I raised it.

22         THE COURT:  I missed most of the game yesterday which

23   makes me rather testy, but I did see that interception and

24   80-yard touchdown.

25         It's hard to be an agnostic when you see something

Page 5125

1  like that.

2         MR. BERNICK:  They didn't let me into the cab

3  yesterday at the airport --

4         THE COURT:  Is that right?

5         MR. BERNICK:  -- unless I swore fielty to the Broncos.

6  I said, say who.

7         THE COURT:  Did you tell them that the Bears won

8  yesterday?

9         MR. BERNICK:  I figured that won't help my cause.

10     (Jury in at 10:48 a.m.)

11         THE COURT:  Thank you.  And be seated, please.

12  BY MR. SORENSEN:

13  Q   Good morning, again, Mr. Kaufman.

14  A   Good morning.

15  Q   Now, before the break, we were discussing a hearing before

16  this Court that took place on January 16, 1996.  Do you recall

17  that?

18  A   Yes.

19  Q   Okay.  And at that hearing, the Court was setting a

20  deadline of March 15, 1996, for the production of documents,

21  including the MUF documents, correct?

22  A   I believe that was the MUF -- that deadline was

23  specifically for the MUF documents.

24  Q   Okay.

25         Would you please turn to Exhibit P1390, please.

Page 5126

1    A    I'm there.

2    Q    And this is a pleading or a filing that Department of

3    Energy submitted to the Court on February 2, 1996; is that

4    correct?

5    A    That's correct.

6    Q    And it is titled "United States Department of Energy's

7    notice of new discovery developments"; is that correct?

8    A    Yes.

9    Q    All right.

10           MR. SORENSEN:  Your Honor, may I show this to the

11   jury?

12           THE COURT:  Did you offer it?

13           MR. DAVIDOFF:  Yes.  I'm sorry.  I move that it be

14   admitted into evidence.

15           THE COURT:  It is admitted over objection.  Go ahead.

16      (Exhibit 1390 admitted.)

17           MR. SORENSEN:  Thank you.

18   BY MR. SORENSEN:

19   Q    Now, it states, at the date I indicated, February 2, '96,

20   in this case that we're here about today, the title, and it

21   states, Comes now the United States Department of Energy, by

22   and through the United States Attorney Henry Solano.  Who is

23   Mr. Solano?

24   A    He was the United States attorney nominated by President

25   Clinton, confirmed by the senate, for Colorado.

Page 5127

1    Q    Is he still the United States attorney for Colorado?

2    A    No.  Bill Leone is now.

3    Q    An assistant United States attorney Richard Kaufman; that's

4    you?

5    A    Yes.

6    Q    And submits the following report concerning new discovery

7    developments.

8              Do you see that?

9    A    Yes.

10   Q    The heading is MUF documents.  Those are the documents that

11   we've been discussing that plaintiffs requested back in

12   December of 1994, correct?

13   A    Yes.

14   Q    During the January 16, 1996, hearing, that's the hearing we

15   were just discussing, correct?

16   A    Yes.

17   Q    On Department of Energy's motion for extension of time to

18   comply with the Court's contempt order, November 13, 1995, the

19   Court ordered the DOE to prepare a plan which would ensure the

20   declassification of the 11,000 pages of MUF documents by

21   March 15, 1996, or in the alternative explain why it could not

22   be completed by that date.  The Court ordered DOE to submit its

23   plan by February 15, 1996.

24             Do you see that?

25   A    Yes.

Page 5128

1    Q    That's, again, referring to the deadline that we were

2    talking about earlier?

3    A    Yes.

4    Q    The March 15 --

5              Okay.

6              It goes on, paragraph 2, Based on information provided

7    to the undersigned counsel -- that refers to you and

8    Mr. Solano?

9    A    Yes.

10   Q    Undersigned counsel?

11   A    Let me check.

12   Q    Sure.

13   A    I signed it.  Mr. Solano didn't sign it, but I signed it on

14   behalf of the U.S. attorney's office.

15   Q    Right.  You're looking at page 3 of the document?

16   A    Yes.

17   Q    That's your signature?

18   A    Yes.

19   Q    So back to page 1.  The undersigned counsel refers to you,

20   correct?

21   A    Yes.

22   Q    All right.  Has represented to this Court and plaintiffs'

23   counsel, through pleadings and evidence at the contempt hearing

24   in July 1995 and as late as the hearing on January 16, 1996,

25   that the MUF collection consisted of 11,000 pages of classified

Page 5129

1    documents.

2             Do you see that?

3    A    Yes.

4    Q    I want to take you through this a bit.

5             You state or this pleading states -- well, it states,

6    the undersigned counsel -- that's you?

7    A    Yes.

8    Q    -- has represented to this Court and plaintiffs' counsel --

9    so you represented something to the Court and to the

10   plaintiffs -- through pleadings.  That's filings with the

11   court, correct?

12   A    One moment.

13   Q    That's what a pleading is?

14   A    Normally pleadings are complaint and answer, but motions

15   and papers to the court, yeah.

16   Q    And evidenced at the contempt hearing in July 1995, where

17   DOE presented witnesses, correct?

18   A    Yes.

19   Q    And as late as the hearing on January 16, 1996, which is

20   just a couple weeks before this, this piece of paper was filed,

21   correct?

22   A    Yes.

23   Q    That the MUF collection consisted of 11,000 pages of

24   classified documents.

25             Do you see that?

Page 5130

1   A   Yes.

2   Q   Now, could you explain for the jury lawyers' obligation

3   when they represent things to the court in pleadings, that they

4   have to have a good-faith basis to believe the facts they're

5   representing?  Could you explain that?

6        MR. BERNICK:  I object.  I don't know what the

7   relevance of that is.  Just a suggestion here that somehow

8   counsel behaved improperly.

9        THE COURT:  I don't think there's a suggestion of that

10   at all.

11        The objection is overruled.

12        THE WITNESS:  When you file with the court, you have

13   an obligation to be truthful.

14   BY MR. SORENSEN:

15   Q   And when you were representing to the plaintiffs and to the

16   Court prior to the date of this pleading that the collection of

17   MUF documents consists of 11,000 pages, you believed you were

18   being truthful, correct?

19   A   Yes.

20   Q   And you had relied on others for that information about the

21   volume of documents that were responsive to plaintiffs' request

22   for MUF documents, correct?

23   A   Yes.

24   Q   And you had relied specifically on Rodney Hoffman and Avi

25   Fingeret who we mentioned earlier, correct?

Page 5131

1  A   Yes.  Primarily on this one it would have been Mr. Hoffman

2  for MUF documents.

3  Q   So at this time he was the DOE classification officer at

4  Rocky Flats, correct?

5  A   Yes.

6  Q   So when you were telling plaintiffs and you were telling

7  the Court repeatedly that there were 11,000 pages of documents,

8  classified documents, responsive to plaintiffs' December 1994

9  request for MUF documents, you were relying on Mr. Hoffman,

10  correct?

11  A   Yes.

12  Q   This document goes on, page 2, paragraph 3.  For the first

13  time, on Friday, January 19, 1996, the undersigned counsel --

14  again, that's you, correct?

15  A   Yes.

16  Q   -- was informed the MUF collection may actually contain

17  between 400,000 and 500,000 pages of classified documents.

18          Do you see that?

19  A   Yes.

20  Q   Continues.  Undersigned counsel waited two weeks to bring

21  this to the Court's attention.  The two weeks, that's the time

22  between January 19, when you learned of this, and the date of

23  this filing, February 2, correct?

24  A   Yes.

25  Q   Okay.

Page 5132

1          Waited two weeks to bring this to the Court's

2    attention in order to verify the number of pages in the

3    documents.

4          It continues, DOE has today completed the count.

5    There are 670,000 pages of MUF documents which require

6    declassification.

7          Do you see that?

8    A    Yes.

9    Q    And then this document contains some other discussion of

10   other discovery issues, correct, other document developments?

11   A    Yes.

12   Q    And these 670,000 pages that DOE is talking about, they all

13   or virtually all of these documents were in existence back in

14   December 1994 when plaintiffs made their request for MUF and

15   MUF-related documents, correct?

16   A    Virtually all of them, yes.

17   Q    And in fact, all or virtually all of these documents were

18   in existence back when Department of Energy agreed to the

19   stipulated order that we discussed earlier in July 1994,

20   correct?

21   A    Yes.  Yes.

22   Q    And it was the Department of Energy that identified that

23   there were these additional 670,000 pages of documents,

24   correct?

25   A    Yes.

Page 5133

1   Q   Department of Energy did that, correct?

2   A   Yes.

3   Q   So at this time, as of the time of this filing, the

4   plaintiffs hadn't seen these documents, correct?

5           MR. BERNICK:  Objection.  Lack of foundation.

6           THE COURT:  Overruled.

7   BY MR. SORENSEN:

8   Q   Is that correct?

9   A   Well, you had been invited to see them.

10  Q   Plaintiffs did not -- it was the Department of Energy that

11  first identified the scope of these documents, the number,

12  correct?

13  A   Yes.

14  Q   Could you turn, please, to Exhibit P1213.

15  A   Okay.  I'm there.

16  Q   Now, this is another filing by the Department of Energy in

17  February of 1996, correct?

18  A   Just a -- let me look here; just a second.

19  Q   Sure.

20  A   Yes.

21  Q   And this is entitled "Status report and proposed

22  alternative plans to address discovery issues."  Do you see

23  that?

24  A   Yes.

25          MR. SORENSEN:  Your Honor, I offer P1213.

Page 5134

1          MR. BERNICK:  If Your Honor could just give me a

2    moment here.

3          THE COURT:  Please.

4          MR. BERNICK:  I have no additional objection beyond

5    the matters that have been discussed before the Court

6    previously.

7          THE COURT:  All right.  It's admitted.

8      (Exhibit 1213 admitted.)

9    BY MR. SORENSEN:

10   Q    This is the pleading, the title as I mentioned, in this

11   case.  Do you see that, Mr. Kaufman?

12   A    Yes.  Yes.

13   Q    Just to explain what this is.  It states, The United States

14   Department of, in by and through the United States attorney

15   Henry L. Solano, and assistant U.S. attorneys, Linda Surbaugh,

16   is that how you pronounce her name?

17   A    Yes.

18   Q    And Richard C. Kaufman submit this status report regarding

19   production, document production.

20          This report provides information, three areas.

21          1.  Status of production of nonclassified documents.

22          2.  Status of production of classified documents and

23   issues related thereto.

24          And 3.  Requests for authority to modify the

25   production process to allow for pre-declassification and

1   pre-production review and involvement of plaintiffs and their

2   agents to expedite discovery while protecting classified

3   information and possible discovery claims.

4           Do you see that?

5   A   Yes.

6   Q   Turn to page 2 of this document, please.

7           There, sir?

8   A   Uh-huh.

9           Excuse me.  Yes.

10  Q   I'm sorry?

11  A   Yes.

12  Q   There's a heading, "Classified document production."  Do

13  you see that?

14  A   Yes.

15  Q   And it states, DOE has identified over 700,000 pages of

16  documents that are responsive to plaintiffs' request for

17  production which are, and it goes over to page 3, currently

18  classified.  As indicated recently, this figure includes

19  approximately 677,000 pages of MUF documents.

20          Do you see that?

21  A   Yes.

22  Q   And it says, As indicated recently, that's referring to the

23  document we were just looking at, correct, the previous

24  exhibit?

25  A   Yes.

1    Q    Since the end of November 1995, these documents have been

2    undergoing a greatly expanded declassification and sanitization

3    process.   What does sanitization mean?

4    A    That's where the declassification process, if there's, you

5    know, national security information that still remains

6    classified, it is then redacted out.   There's three paragraphs,

7    for example, on a page and one of them has national security

8    information -- in this case nuclear weapons information -- then

9    that one paragraph is redacted from the document.

10   Q    So sanitization means whiting out or redacting; is that

11   correct?

12   A    Yes.

13   Q    And when you were talking about national security, you

14   don't have personal knowledge, correct, sir, of why DOE took

15   out any particular portion of any classified document, correct?

16         MR. BERNICK:   Objection.   If the question is focused

17   specifically on a particular document, I can understand that.

18   But if the question is more general; that is, whether he has no

19   idea of why DOE would withhold certain documents as being

20   classified, that's another kind of question.   And I think it's

21   unclear as to which one he's asking.

22         THE COURT:   It is ambiguous.

23   BY MR. SORENSEN:

24   Q    Mr. Kaufman, this document is talking about the process by

25   which DOE was taking out, deleting portions of MUF documents

Page 5137

1   plaintiffs have requested, correct?

2   A   Right.

3   Q   Now, when that process was occurring, you were not present,

4   correct?

5   A   Correct.

6   Q   Because you were not allowed to see the classified version

7   of these documents, correct?

8   A   Correct.

9   Q   So you don't have personal knowledge of what portions of

10  these documents were removed, correct?

11  A   Correct.

12  Q   Nor do you have personal knowledge of why portions of these

13  documents were removed, correct?

14          Personal knowledge.

15  A   Correct.

16  Q   If you could turn, please, sir, to page 5 of this document.

17          See that, sir?

18  A   Okay.

19          I'm there.

20  Q   All right.   Paragraph 13.

21          A sample review of the documents which have -- I

22  believe it should have said -- processed.   It says processed

23  through declassification and/or sanitization discloses that on

24  average approximately 75 percent of the text on each document

25  has been redacted.

Page 5138

1        Do you see that?

2    A    Yes.

3    Q    So that's saying DOE is telling us and the Court that of

4    these MUF documents that DOE has classified, MUF documents that

5    plaintiffs asked for and that DOE is producing, DOE is whiting

6    out, deleting, approximately 75 percent of the text of each

7    document, correct?

8    A    Yes.

9    Q    Goes on.  Thus, there is a question as to how helpful the

10   remaining portion would be to plaintiffs.

11       Do you see that?

12   A    Yes.

13   Q    And it continues.  A preliminary indication reveals that

14   DOE's lawful exercise of this protection of classified

15   information is in plaintiffs' view affecting their ability to

16   prepare their case.

17       Do you see that?

18   A    Yes.

19   Q    And this is something DOE filed with the Court, correct?

20   A    Yes.

21   Q    There was another hearing . . . there was another hearing

22   before the Court in February of 1996, correct?

23       Do you recall that?

24   A    Yes, I think that's what this document we were just looking

25   at pertains to.

Page 5139

1   Q   So this document we were just looking at was filed just

2   before the February 15, 1996, hearing before Judge Kane,

3   correct?

4   A   I think so, yes.

5   Q   And among the issues that were again in front of the Court

6   were DOE's production, or lack thereof, of MUF documents,

7   correct?

8   A   Well, it was the issue that there were so many more --

9   there was no way the March 15 deadline could be met because of

10   the increase in the number of pages.

11   Q   So that was one of the issues that DOE presented to the

12   Court in February 1996, correct?

13   A   Yes.

14   Q   So DOE was, among other things, telling the Court, there

15   was no way DOE could meet the March 15, 1996, deadline; is that

16   correct?

17   A   Right.   Based on the requirements of the declassification

18   process.

19   Q   Okay.   And you just were looking at a document where DOE

20   was saying that 75 percent of these documents were being whited

21   out.   Do you recall that?

22   A   Yes.

23   Q   And do you understand that in May 1996 plaintiffs, in fact,

24   advised DOE that because so much of the documents or some much

25   of the content of the documents was being whited out,

Page 5140

 1    plaintiffs said to DOE as to a number of types of these

 2    documents, you can stop sending them to us.

 3         Do you recall that?

 4    A   Well, I was off the case as of the end of February '96, and

 5    I believe you just said in the question it was May 1996.

 6    Q   Yes.

 7    A   Counsel for the plaintiffs informed DOE of that, and I

 8    guess the U.S. attorney's office, I was not involved in the

 9    case then.  So I don't know that for sure.

10    Q   Okay.  Could you turn to Exhibit P1392, please.

11    A   Okay.

12    Q   Do you recognize this letter of May 10, 1996?

13    A   No.  Again, I was no longer handling the case after

14    February.  I mean, you brought this to the deposition a few

15    weeks ago that you took of me.  But I don't remember this

16    letter.  I was not involved in the case by this point in time.

17    Q   Just to clarify, you're referring to a deposition in this

18    case that occurred a few weeks ago; is that correct?

19    A   Yes.

20    Q   The defendants took your deposition, correct?

21    A   Yes.

22    Q   And then after the defendants asked you some questions, I

23    asked you some questions, correct?

24    A   Yes.

25    Q   Have you had the chance to read the transcript of your

Page 5141

1    deposition?

2    A    Yes.  I sent in the changes.

3    Q    So other than the changes, you indicated you gave truthful

4    and accurate testimony, correct?

5    A    Yes.

6    Q    Could you turn, please, to Exhibit P1209.

7          Do you see that?

8    A    Yes.

9    Q    Now, this is another filing by the Department of Energy now

10   in August of 1996.  Do you see that?

11   A    Yes.

12   Q    And it's titled "Status report, Department of Energy."  Do

13   you see that?

14   A    Yes.

15         MR. SORENSEN:  Your Honor, I'd move admission of

16   P1209.

17         MR. BERNICK:  You'd have to give me a moment to take a

18   look at it, Your Honor.

19         THE COURT:  All right.

20         MR. BERNICK:  The document has a series of letters

21   attached that we would object to.  They come from plaintiffs'

22   counsel.  And they would be -- they would obviously be hearsay

23   documents.  I don't know that they're really necessary to the

24   examination.

25         MR. SORENSEN:  I have no problem introducing the

1   exhibit with the letter deleted.

2          THE COURT:  Okay.  It's admitted, then, without the

3   letter.

4      (Exhibit 1209 admitted.)

5   BY MR. SORENSEN:

6   Q   So, again, this is filed in August 1996.  Do you see that,

7   sir?

8   A   Yes.

9   Q   And it's in this case.  And the title is as I described it,

10  correct?

11  A   Yes.

12  Q   All right.  Then just to give the jury some background as

13  to this filing.  It states, United States Department of Energy,

14  hereinafter referred to as DOE, or the department, by and

15  through United States Attorney Henry Solano, L. Solano, and

16  assistant U.S. attorney, Linda Surbaugh, and pursuant to this

17  Court's order, submits a status report regarding document

18  production.

19          Just for the jury's -- just to clarify, the Court at

20  this point had ordered DOE to submit regular status reports,

21  correct?

22          Are you aware that?

23  A   Yes, when I was still on the case, we were filing monthly

24  status reports, right.

25  Q   Because the Court had ordered DOE to do that, correct?

Page 5143

1   A   You may be correct.  I just don't remember.

2   Q   It goes on, This report is intended to supplement the

3   reports previously filed by DOE on January 4, 1996, and

4   February 13, 1996.  And provides information in the following

5   areas:

6           1.  Status of production of classified documents in

7   response to plaintiffs' request for MUF documents.

8           2.  Status of production of all other requests --

9   excuse me -- for classified documents.

10          And 3.  Status of production of nonclassified

11  documents including nonclassified MUF.

12          Do you see that?

13  A   Yes.

14  Q   Okay.  Now, just to continue.  Under the heading

15  "Production of classified MUF documents," in January 1996, DOE

16  informed this Court that its best estimate of the volume of

17  classified MUF documents is 677,211 pages.

18          Do you see that?

19  A   Yes.

20  Q   That's wrong, right, it was February '96?

21  A   It was February 2, 1996, not January 1996.

22  Q   Okay.  So that date is wrong, correct?

23  A   Yes.

24  Q   Okay.

25          This number actually turned out to be 679,364 pages.

Page 5144

1   Much later, due to extensive follow-up searches conducted by

2   DOE as it neared what it believed to be the completion of its

3   MUF production effort, an additional 671,098 pages of

4   classified MUF documents were located for a total of 1,356,575

5   pages.

6            Do you see that?

7   A   Yes.

8   Q   Now, these were classified MUF documents that DOE had

9   located, correct?

10  A   Well, you got to -- this was filed in August '96.  I left

11  the case in February of '96.  At that point in time my analogy

12  was 677,000 pages.  According to this, they found an additional

13  670,000 pages, but I don't personally have any knowledge of

14  that.

15  Q   Were you consulted at all by Mr. Solano or Miss Surbaugh

16  after you formally left the case?

17  A   From time to time, but I don't believe on this.

18  Q   Do you have any reason to doubt the numbers that appear

19  here?

20  A   No.

21  Q   Now, if you could turn to page 5, please.

22  A   I'm there.

23  Q   Paragraph 13.  Plaintiffs have asked DOE to identify the

24  originally estimated 11,000 pages of document.  Do you see

25  that?

Page 5145

1    A   Yes.

2    Q   That's referring back to the representations that you, on

3    behalf of DOE, had made about the number of documents, correct?

4    A   Correct.

5    Q   Okay.  It states, As DOE has informed -- going over to the

6    next page, page 6 -- plaintiffs and this Court, the 11,000

7    pages was an incorrect estimate impossible to identify or

8    verify.  In any case, DOE is now in compliance with the

9    plaintiffs' MUF request for on-site documents.  To the extent

10   that 11,000 or even 677,211 pages is a relevant figure, the

11   documents have been produced.

12         Do you see that?

13   A   Yes.

14   Q   So you on behalf of DOE had told plaintiffs, had told the

15   Court a number of times that there were 11,000 pages of

16   documents responsive to plaintiffs' December 1994 MUF request,

17   correct?

18   A   Yes.

19   Q   But DOE is now saying that there is no way for DOE to tell

20   the plaintiffs what those 11,000 pages referred to, correct?

21         MR. BERNICK:  Objection as to the form of the

22   question.

23         THE COURT:  Sustained.

24   BY MR. SORENSEN:

25   Q   Do you understand that in its pleading DOE -- what do you

Page 5146

1    understand -- what I have just read, what do you understand

2    that to mean?

3    A    That they are saying they can't identify which 11,000 pages

4    made up out of this total now of hundreds of thousands of

5    pages, which of those made up the original 11,000 pages.

6    Q    So as far as you know, DOE never produced to plaintiffs a

7    set of documents and said, here are the 11,000 pages that we

8    said had existed, correct?

9         MR. BERNICK:  Objection.  Assumes facts not in

10   evidence.  He also hasn't established foundation through this

11   witness concerning what the 11,000 actually represented.

12        THE COURT:  As of the date of his leaving, he may

13   answer as to how many pages were produced.  But otherwise,

14   sustained.

15   BY MR. SORENSEN:

16   Q    As of the date of your leaving this case, Mr. Kaufman, is

17   it correct that DOE never produced to plaintiffs a set of

18   11,000 pages that DOE said these are the 11,000 pages we told

19   you about; is that right?

20        MR. BERNICK:  Object to the form of the question.

21   Again, it assumes --

22        THE COURT:  Overruled.

23        MR. BERNICK:  It assumes there is a discrete set that

24   was the 11,000.

25        THE COURT:  Overruled.

1          THE WITNESS:  I don't know.  All I know is there were

2   677,000 pages when I left the case that had been identified,

3   and we were in the process, DOE had hired like 80 people to

4   come in and declassify these documents, and we were in the

5   process of producing them.

6   BY MR. SORENSEN:

7   Q   Now, it says in this document, DOE is now in compliance

8   with plaintiffs' MUF request.  You understand that to mean that

9   DOE had at this time, August '96, produced over a million pages

10  of mostly whited-out documents; is that correct?

11          MR. BERNICK:  Objection.  Lack of foundation.

12          THE COURT:  Sustained.

13  BY MR. SORENSEN:

14  Q   And it says, DOE is now in compliance, do you know what

15  that means?

16  A   Yes.  That means in terms of what we're talking about here,

17  compliance with the Court's orders.

18  Q   But more specifically, do you have any understanding of how

19  many documents, MUF documents, DOE had produced by August 1996?

20  A   As I mentioned earlier, I was not on the case then.  I have

21  no idea how many they had actually produced by August of '96.

22  Q   And did you personally review any portion of the redacted

23  documents that DOE was producing to plaintiffs?

24  A   I am sure I have seen some redacted MUF documents.  I'm

25  also sure I have not reviewed 677,000 pages of MUF documents.

Page 5148

1          MR. SORENSEN:  May I just take a moment?

2          THE COURT:  Yes.

3       (At the bench:)

4          MR. DAVIDOFF:  Your Honor, at his deposition that was

5    taken by the defendants, he was asked, I believe by

6    Mr. Sorensen, why he was removed from the case in February of

7    1996.  He was instructed by Mr. Taylor, I believe, not to

8    answer that question.  And we would like to ask him that

9    question.  We think it's directly relevant.

10         MR. BERNICK:  If he was instructed not to answer, then

11   I don't know what the answer would have been.  Therefore, they

12   can't make any proffer of relevance.  It's beyond the stretch,

13   and even if it was true that the removal was for some matter

14   that related to the case, that removal would be hearsay.

15         THE COURT:  Yeah.  I don't think you should go into

16   that.

17         MR. DAVIDOFF:  I do have a request that he --

18         THE COURT:  I think would require me to have a hearing

19   outside the presence of the jury with his counsel there, and I

20   cannot see it coming in under any circumstance.

21         MR. DAVIDOFF:  Well, that was actually my alternative

22   request, Your Honor.  If Your Honor doesn't deem it appropriate

23   for the jury to hear, we would like the answer to the question

24   on the record.  It could be outside the presence of the jury.

25         THE COURT:  I don't think it even -- I don't think

Page 5149

1    it's appropriate with anything in the case.  I have no idea why

2    he was taken off the case.

3           MR. DAVIDOFF:  Well, he was removed.  He was removed

4    from the case by the U.S. attorney, we believe, because he was

5    trying to cooperate with the plaintiffs in the orders of the

6    Court.

7           THE COURT:  Well, I mean, that's purely speculative.

8    I don't want to go there.

9           MR. SORENSEN:  I have another matter.

10          THE COURT:  What's that?

11          MR. SORENSEN:  There was a question I asked at his

12   deposition to which a privilege objection was not raised.  I

13   want to just be very clear.  I asked whether he had discussion,

14   Mr. Kaufman had discussions with other DOE counsel about

15   whether producing more MUF information would hurt the posture

16   of DOE and its contractors, and he said yes, he had such

17   conversations.  The answer is, yes, he did.

18          And am I permitted to ask that?

19          MR. BERNICK:  Your Honor has ruled on that three

20   different times now.

21          MR. SORENSEN:  Thank you.

22      (In open court:)

23   BY MR. SORENSEN:

24   Q   Just a couple of more questions, Mr. Kaufman.  You earlier

25   saw the Court's order holding DOE in contempt.  Do you recall

1   that?

2   A   Yes.

3   Q   To your knowledge, had DOE ever been held in contempt

4   before then?

5              MR. BERNICK:  Objection.  Relevance.

6              THE COURT:  With respect to this case; is that what

7   your question is?

8              MR. SORENSEN:  No, ever.

9              THE COURT:  The objection is sustained.  I don't know

10   about other cases.  We're not concerned with it.

11              MR. SORENSEN:  I have no other questions.

12              THE COURT:  Okay.

13                         CROSS-EXAMINATION

14   BY MR. BERNICK:

15   Q   I know you've been in the same situation before,

16   Mr. Kaufman, where you're shuffling around trying to figure out

17   what you're actually going to ask the witness.  I apologize.

18              MR. BERNICK:  Good morning, ladies and gentlemen.

19   BY MR. BERNICK:

20   Q   Mr. Kaufman, counsel wrote up on the board here a

21   definition MUF equals material unaccounted for.  And actually,

22   he brought out kind of your own sense about what MUF means.  Do

23   you recall that?

24   A   Yes, yes, I do.

25   Q   Do you have any personal knowledge based upon actual,

1   be admitted but not the newspaper articles attached to it?

2          MR. SORENSEN:  Yes.

3          MR. BERNICK:  That's probably -- that's probably

4   right.  There may be -- yes, I believe that's correct.

5          THE COURT:  And then what about -- are you ready to

6   comment on those that he's offered?  I think I ruled on most of

7   them.  But some of them --

8          MR. SORENSEN:  Yeah, could I have --

9          THE COURT:  Sure.  Thank you.

10          All right.

11                    REDIRECT EXAMINATION

12   BY MR. SORENSEN:

13   Q   Good afternoon, Mr. Kaufman.

14   A   Good afternoon.

15   Q   You were asked some questions by defense counsel about the

16   classified MUF documents that plaintiffs requested.  Do you

17   recall those questions?

18   A   Yes.  He asked me about those.

19   Q   Yes.  You have never seen one sentence of any of these

20   documents in their classified form, correct?

21   A   Yes, that's true.

22   Q   And you have no personal knowledge whatsoever of the

23   relevance of any of the material that have been -- that was

24   deleted from the MUF documents by DOE when they were produced

25   to plaintiffs, correct?

Page 5204

1    A    Well, that would be true.  Yeah.

2    Q    Now, you testified that DOE had possession of millions of

3    documents and made them available to plaintiffs, eventually,

4    correct?

5    A    Yes.

6    Q    But DOE -- let me start again.

7         Plaintiffs did not request that DOE ship 30, 40,

8    50 million pages of documents, correct; they didn't do that?

9    A    No, they were just available to look at.

10   Q    And in fact, you testified that plaintiffs wanted indices

11   to documents, correct?

12   A    Yes.

13   Q    And what are these indices?  Can you describe them?

14   A    Well, they were indexes to various different documents, if

15   there were indexes.  Sometimes there weren't.  But most of the

16   time there were some kind of indexes that would list the

17   documents or, you know, give you a general idea of the contents

18   of those document collections.

19   Q    And so plaintiffs wanted indices so they could pinpoint

20   particular documents they wanted, correct?

21   A    Yes.  Yes.

22   Q    And in fact, if there was that, they narrowed their request

23   for particular documents, correct?

24   A    Eventually, yes, yes.

25   Q    Well, you've represented, among -- to the Court, at

1    hearings, for example, that, in fact, plaintiffs did narrow

2    their request, correct?

3    A    Yeah.

4         MR. BERNICK:  It's a very broad question.  Requests

5    refers to all kinds of things.  There are --

6         THE COURT:  Sustained.

7    BY MR. SORENSEN:

8    Q    Could you look at Plaintiffs' P1417, please.

9    A    I'm there.

10   Q    1417?

11   A    Yes.

12   Q    That is a transcript before the Court on August 15, 1994.

13   Do you see that?

14   A    Yes.

15   Q    Could you please turn to page 50 of the transcript.

16   A    Okay.  I'm there.

17   Q    All right.  Now, it states, Mr. Kaufman, and then it

18   describes what is said.  That's your statement for the Court,

19   correct?

20   A    I presume so, yes.

21   Q    Okay.  If you could go over to page 51.

22   A    I'm there.

23   Q    And in the middle of the top paragraph, it states -- this

24   is you telling the Court, And in some instances, we have made

25   documents available, like building 061 where there's 562 boxes

Page 5206

1   and I believe they've requested -- when it's they've, that's

2   plaintiffs?

3   A    Yes.

4   Q    Plaintiffs had requested 30,000 pages of documents.  That

5   is not nearly all of them.  Not even close.  I mean, they have

6   narrowed their search.  Do you see that?

7   A    Yes.

8   Q    Now, you were shown a subpoena that plaintiffs served on

9   DOE from July '93, subpoena -- Exhibit 1386.  You were asked

10   some questions about it by defense counsel.  Do you recall

11   that?

12   A    Yes.

13          MR. BERNICK:  Actually, so the record is clear, I

14   believe that was offered in originally by the plaintiffs.

15          MR. SORENSEN:  I'm just referring to the questions you

16   asked about it.

17          MR. BERNICK:  Sure.

18   BY MR. SORENSEN:

19   Q    Do you recall the questions that defense counsel asked

20   about the scope of the subpoena?

21   A    Yes.

22   Q    And I believe you testified that the scope would take in

23   essentially every document about Rocky Flats; was that your

24   testimony?

25   A    Yes.

1   Q   Well, that's not correct, is it?  By the terms of the

2   subpoena, it would not take in budget records, personnel

3   records, administrative records, various types of records;

4   isn't that correct?

5   A   I don't think so.  I mean, some of those could be included.

6   Q   You were asked questions about the burden of producing the

7   classified documents that plaintiffs request in their redacted

8   form.  Do you recall those questions?

9   A   Yes.

10  Q   When DOE voluntarily entered into this stipulated order in

11  July '94, DOE was aware of the universe of classified documents

12  in its possession, correct?

13  A   Well, I'm sure they were.

14  Q   And DOE made no effort to insert some language in the

15  stipulated order that would carve out classified documents or

16  put them to the side or except them from plaintiffs' request,

17  correct?

18  A   What do you mean?

19  Q   In other words, with full knowledge of classified documents

20  in their possession, DOE signed the stipulated order, correct?

21  A   Sure.

22  Q   Now, you were asked some questions about some alternative

23  plans that DOE offered after DOE had been found in contempt and

24  after DOE revealed the volume of MUF documents.  Do you recall

25  those questions?

Page 5208

1    A    Yes.

2    Q    And one of them involved the offer about Q clearances?

3    A    Yes.

4    Q    A Q clearance is a security clearance, correct?

5    A    Yes.

6    Q    That enables a person who obtains one to look at classified

7    documents in their classified form, correct?

8    A    Yes.

9    Q    Now, DOE had earlier opposed plaintiffs' request for more Q

10   clearances, correct?

11   A    I -- what I remember about that is there were -- some of

12   plaintiffs' counsel already had Q clearances.  The question was

13   whether additional Q clearances would be given to additional

14   attorneys that were working on plaintiffs' side.  And there was

15   a question about how many.  I don't -- you know, that should be

16   given.  Q clearances are not granted in a willy-nilly fashion.

17   But I remember there was -- there was a discussion about that,

18   yes.

19   Q    So do you recall the plaintiffs asked DOE to process more Q

20   clearance security applications and DOE refused?  Do you recall

21   that?

22            MR. BERNICK:  Can we have a time frame, please?

23            Objection.  Lack of time frame.

24            THE COURT:  Sustained.

25   BY MR. SORENSEN:

Page 5209

1    Q    Well, in the 1994 time frame, do you recall that that

2    happened?

3    A    I recall that -- that your law firm and some of the other

4    firms that were working on this case for plaintiffs' side

5    requested more Q clearances.  What happened to those, I am not

6    sure.  I don't think they were granted immediately.  But I

7    really just don't remember.

8    Q    Okay.  Could you please turn to Exhibit P1418, please.  You

9    there, sir?

10   A    Okay, I'm there.

11   Q    This is a filing by the DOE titled "U.S. DOE's response to

12   plaintiffs' motion to compel to process additional security

13   clearances and response to plaintiffs' motion to expedite

14   adjudication of plaintiffs' motion," correct?

15   A    Yes.

16   Q    And this filing was made in or around December 30, 1994?

17   A    Yes.  It said it was received on that date, yes.

18   Q    Yes.  Can you turn to page 9, please.

19   A    Okay.  I'm there.

20   Q    Is that your signature?

21   A    Yes, it is.

22        MR. SORENSEN:  Your Honor, motion to admit P1418.

23        MR. BERNICK:  I don't think it's really necessary to

24   admit the entire document for the sake of the defendant.  I'm

25   not sure what else this really sets forth.

Page 5210

1          MR. SORENSEN:  It goes directly to --

2          THE COURT:  The whole document?

3          MR. SORENSEN:  Well, Your Honor, if -- I'm going to

4   draw his attention to certain portions.

5          THE COURT:  All right.  Go ahead.  It's admitted.

6      (Exhibit 1418 admitted.)

7          MR. SORENSEN:  Is it admitted?

8          THE COURT:  Yes.  I said go ahead; it's admitted.

9          MR. SORENSEN:  Thank you.

10         Showing the jury the title as I read it.

11  BY MR. SORENSEN:

12  Q   Now, on page 2 of this document, paragraph 2, you there,

13  sir?

14  A   Yes.

15  Q   It states, Plaintiffs are seeking to have this Court

16  require DOE to provide and process three additional

17  applications for expedited security clearances.  This Court,

18  however, lacks authority to grant the relief requested.

19         Do you see that?

20  A   Yes.

21  Q   That's what DOE's position was, correct?

22  A   Yes.

23  Q   Then turn to page 3, please.

24  A   Okay.  I'm there.

25  Q   Paragraph 3, you there?

Page 5211

1    A    Yes.  Yes.

2    Q    It says, Plaintiffs' motion conveys the idea that their

3    attorneys have the unfettered right to require DOE to process

4    applications for security clearances so that they may have

5    access to classified documents.  Simply put, there is no such

6    right.

7         Do you see that?

8    A    Yes.

9    Q    That was DOE's position, correct?

10   A    Yes.

11   Q    And if you could turn to page 7, please.

12   A    I'm there.

13   Q    Right above the footnotes, it states, Without question,

14   three experienced attorneys -- and I'll stop there.  That's a

15   reference to the number of plaintiffs' counsels that DOE

16   believed already had security clearances, correct?

17   A    Yes.

18   Q    Okay.  Without question, three experienced attorneys should

19   be able to review the limited universe of classified documents

20   in a relatively short period of time.

21        Do you see that?

22   A    Yes.

23   Q    That was DOE's position, correct?

24   A    Yes.

25   Q    And that was in -- before DOE revealed the actual volume of

Page 5212

1    MUF documents, correct?

2           MR. BERNICK:  I'm sorry, that is really very

3    misleading.  There has not even been a request for MUF

4    documents at this time.

5           THE COURT:  Sustained.

6    BY MR. SORENSEN:

7    Q   This pleading was dated December 27, 1994.  Do you see

8    that?

9    A   Yes.

10   Q   That's after plaintiffs' December -- December request for

11   MUF documents, correct?

12   A   Yes.

13   Q   It's Exhibit P650, if you'd like to check.

14   A   No.  I remember.  The letter was like ten days or so before

15   this.

16   Q   So the sequence is plaintiffs asked for classified MUF

17   documents in their December '94 request, then DOE submits this

18   filing with the Court that we're looking at, P1418, correct?

19   A   Yes.  But we had no idea what the volume was at that point.

20   Q   I understand.

21          Take a look at P650 for a moment.

22   A   Pardon me?  Which number?

23   Q   P650.

24          Do you have it?

25   A   Yes.

1   Q    And could you place beside it Defendants' Exhibit 1355.

2   That's this chart, this pyramid, or triangle.

3   A    Oh.  Just a second here.

4         Okay.  I've got both of them.

5   Q    All right.  So you've got P650 and you have DX1355,

6   correct, side by side?

7   A    Yes.

8   Q    Okay.  Could you -- start again.

9         I believe you testified when I was asking you

10   questions that there's no language in plaintiffs' request dated

11   December 14, 1994, that restricts the kinds of MUF documents

12   plaintiffs were seeking, correct?

13   A    Yes.  I believe I said that.

14   Q    Okay.  So could you please explain what the source of the,

15   quote, confusion, if there was confusion, on the behalf of DOE

16   there was as to the kinds of documents that are being requested

17   in Plaintiffs' P650?

18   A    I think I -- when Mr. Bernick questioned me, I think I made

19   that clear.

20         What our misconception was is the -- what we defined

21   as the MUF documents in December, January -- December '94,

22   January '95, were the reports themselves.  And the estimate was

23   there was 11,000 pages of that.  These reports, however, are

24   based on other documentation.  It's a chain of documents.  And

25   then these reports are a summation.  And we thought you wanted

1    the reports and not all the supporting documents.  It wasn't

2    till later, after the contempt order when Miss Lindsay came to

3    Philadelphia that we realized that you wanted all of them, and

4    then she came back and had Mr. Hoffman begin to look and to

5    quantify just exactly how many pages that would be.

6    Q    You said the reports themselves.  When plaintiffs asked you

7    later, well, fine, give us the 11,000 pages that you consider

8    the reports themselves, DOE couldn't, correct?

9         MR. BERNICK:  Objection.  This is a reiteration of

10   direct examination.  There's specific focus on a status report

11   that dealt with the question of the estimate.  And he responded

12   at that time.  It was covered on cross, but this is a

13   reiteration of the same argument that was made on direct.

14        THE COURT:  Sustained.

15   BY MR. SORENSEN:

16   Q    Could you look at Defendants' Exhibit 1382, please.

17   A    Okay.  I'm there.

18   Q    Now, this defendants' exhibit purports to depict the

19   declassification procedure; is that right?

20   A    Yes.

21   Q    But just to be clear, you've never participated in any of

22   the steps that are outlined on DX1382, correct?

23   A    Well, I've never declassified a document, that's correct,

24   yes.

25   Q    So you've never participated in any of the steps that are

Page 5215

1    outlined in DX1382, correct?

2    A    Not for the declassification of a document.  But I

3    certainly investigated how it was done.  It was my

4    responsibility as a lawyer to understand that and be able to,

5    in this case, speak to the Court about it.

6            MR. SORENSEN:  Your Honor, may I approach on one

7    matter?

8            THE COURT:  Yes.

9       (At the bench:)

10           MR. SORENSEN:  Your Honor, I believe it's important

11   for the jury to understand that it's not just plaintiffs that

12   got access to these documents.  I was planning to ask him about

13   one sentence in Borchers' order, I don't even have to introduce

14   the order, that states that -- and Judge Borchers found that

15   defendants have had access to all of DOE's documents.  It says

16   it in one sentence.  And I was -- it wasn't just a one-sided

17   presentation.

18           It wasn't a simply one-sided, here's DOE giving all

19   these documents, plaintiffs.  Defendants have had access to all

20   these documents.

21           MR. BERNICK:  First of all, he's not going to know

22   what we had access to because he wasn't there for most of the

23   time.

24           Secondly, they are the ones that are saying they

25   didn't have access.

Page 5216

1          THE COURT:  It's a nonissue.  If it would be objected

2   to, it would be sustained.

3      (In open court:)

4          MR. SORENSEN:  Just have one moment, Your Honor.

5          THE COURT:  Yes.

6          MR. SORENSEN:  May be done.

7   BY MR. SORENSEN:

8   Q   Mr. Kaufman, you were asked by defense counsel about

9   ChemRisk and some ChemRisk documents.  Do you recall that?

10  A   Yes.

11  Q   I believe you may have testified that ChemRisk was a

12  consultant?

13  A   They may have been.

14  Q   Do you know their status?

15  A   I don't know what their status is now.

16  Q   Okay.

17         MR. SORENSEN:  Your Honor, I just want to make sure

18  the record is clear on the documents we're offering, and then

19  I'm done.

20         THE COURT:  Okay.

21         MR. SORENSEN:  P1386.  P1387.  P1388.  P646, these are

22  the subpoenas.  P647.  P635.  P1410.  P636.  We understand

23  defendants' objection to portions of P1420.  We may submit an

24  amended version of that.

25         P1390.  P1213.  P1419, again, is a hearing.  We intend

Page 5217

1   to submit an amended version of that, narrowed to the portions

2   we discussed.

3            P1392.  And P1209.

4            And then portions of P1417 and P1418.

5            MR. BERNICK:  Your Honor?

6            THE COURT:  Yes.

7            MR. BERNICK:  That really raises a matter that we want

8   to take up at sidebar.  I have a very -- I don't know if

9   counsel is done -- I have a very short recross on the 1418

10  document that he read portions of, and there are other portions

11  that are relevant.

12           THE COURT:  We'll take up the rulings on those.  But

13  go ahead and do yours, and then I'm going to ask the jury to

14  take a short break because I have to make some rulings on the

15  next witness as well.

16           Sorry.

17                    RECROSS-EXAMINATION

18  BY MR. BERNICK:

19  Q   Mr. Kaufman, counsel just showed you a submission that was

20  made -- a brief that was filed in connection with plaintiffs'

21  request for more Q clearances; do you recall that?

22  A   Yes.

23  Q   It was, in fact, dated, I was mistaken, December 27, which

24  was very shortly after the letter request for MUF.  So I've

25  gone back to 1381, and I've marked on here that that 1418 was a