# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-00181-JLK

---

MERILYN COOK, *et al.*,

      Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

      Defendants.

---

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR ENTRY OF JUDGMENT AND REPONSE TO DEFENDANTS'

### "PART ONE" – CLASS CERTIFICATION

---

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................... 1

II.     ARGUMENT .................................................................................................................. 6

   A.   *Cook Appeal I* did not cast any doubt on this Court's prior class certification orders as to Plaintiffs' nuisance claims ................................................................................................. 6

   B.   As this Court and the Tenth Circuit have recognized, Plaintiffs have already proven nuisance through common evidence after the jury was properly instructed as to Plaintiffs' nuisance claims ..................................................................................................................... 7

   C.   This Court has already considered and addressed each of Defendants' arguments, there is no reason for this Court to revisit or reverse its prior rulings, and Defendants have waived arguments to the contrary .................................................................................. 11

      1.   This Court previously held that Plaintiffs can prove substantial and unreasonable interference with Plaintiffs' use and enjoyment of property on a classwide basis, and Plaintiffs actually did so at trial ................................................................................ 14

         a.   Class certification is consistent with *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). ...................................................................................................... 24

      2.   This Court correctly held that Plaintiffs can prove damages on a classwide basis, and that Plaintiffs actually did so at trial ............................................................................... 25

         a.   As this Court has previously held, Plaintiffs can and did prove aggregate classwide damages. ............................................................................................................ 26

         b.   Defendants waived the challenges they raise in Section IV.C of Defs' Class Br. to the classwide damages award by failing to make *any* of these arguments in *Cook Appeal I*. ...................................................................................................................... 29

         c.   The jury awarded damages caused by the nuisance, not damages caused from mere "proximity" to Rocky Flats, and Defendants have waived their "proximity" argument ............................................................................................................. 30

         d.   The Court correctly held that Defendants were required to present classwide evidence of alleged setoff, and Defendants have waived any argument to the contrary. ............................................................................................................. 32

         e.   Defendants' objection to the aggregate class award has been waived and is baseless ................................................................................................................ 33

      3.   Certification of the prospective damages subclass is appropriate, and Defendants have waived any argument to the contrary. ......................................................................... 39

D.  Class certification and the jury's award of aggregate class damages are consistent with *Comcast*. ....................................................................................................................... 41

III.  CONCLUSION ................................................................................................................ 44

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Advantor Capital Corp. v. Yeary*,
  136 F.3d 1259 (10th Cir. 1998) ............................................................27

*Allapattah Servs., Inc. v. Exxon Corp.*,
  333 F.3d 1248 (11th Cir. 2003) ............................................................38

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*,
  133 S. Ct. 1184 (2013)...........................................................................43

*Anderson Living Trust v. WPX Energy Prod., LLC*,
  306 F.R.D. 312 (D.N.M. 2015)..............................................................36

*Bazemore v. Friday*,
  478 U.S. 385 (1986)................................................................................42

*BCS Servs., Inc. v. Heartwood*,
  637 F.3d 750 (7th Cir. 2011) .................................................................37

*Behrend v. Comcast Corp.*,
  655 F.3d 182 (3d Cir. 2011)...................................................................45

*Bell Atl. Corp. v. AT&T Corp.*,
  339 F.3d 294 (5th Cir. 2003) .................................................................43

*Belote v. Rivet Software, Inc.*,
  No. 12-CV-02792, 2013 WL 2317243 (D. Colo. May 28, 2013) ..........16

*Bigelow v. RKO Radio Pictures*,
  327 U.S. 251 (1946)................................................................................37

*Black v. Workman*,
  682 F.3d 880 (10th Cir. 2012) ...........................................8, 20, 27, 31

*In re Blood Reagents Antitrust Litig.*,
  MDL No. 09-2081 (E.D. Pa. Oct. 19, 2015)..........................................45

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)................................................................................38

*Bogosian v. Gulf Oil Corp.*,
  561 F.2d 434 (3d Cir. 1977)...................................................................43

*Boynton v. Headwaters, Inc.*,
  No. 1:02-CV-01111, 2010 WL 2430779 (W.D. Tenn. June 10, 2010) ..............................5, 11

*In re Buspirone Patent Litig.*,
 210 F.R.D. 43 (S.D.N.Y. 2002) ...................................................................37

*In re C.W. Min. Co.*,
 740 F.3d 548 (10th Cir. 2014) ....................................................................14

*In re Cardizem CD Antitrust Litig.*,
 200 F.R.D. 297 (E.D. Mich. 2001) .........................................................23, 37

*CGC Holding Co., LLC v. Broad & Cassel*,
 773 F.3d 1076 (10th Cir. 2014) ............................................................ 16-17

*Clark v. State Farm Mut. Auto. Ins. Co.*,
 590 F.3d 1134 (10th Cir. 2009) .......................................................... *passim*

*Clay v. Pelle*,
 No. 10-cv-01840, 2011 WL 843920 (D. Colo. Mar. 8, 2011) .................................45

*ClearOne Commc'ns, Inc. v. Bowers*,
 643 F.3d 735 (10th Cir. 2011) ...........................................................8, 20, 27, 31

*Comcast Corp. v. Behrend*,
 569 U.S. ----, 133 S. Ct. 1426 (2013) .......................................... *passim*

*Cont'l Ore v. Union Carbide & Carbon Corp.*,
 370 U.S. 690 (1962) .................................................................................42

*Cook v. Rockwell Int'l Corp.*,
 151 F.R.D. 378 (D. Colo. 1993) ...........................................................3, 15

*Cook v. Rockwell Int'l Corp.*,
 181 F.R.D. 473 (D. Colo. 1998) .................................................3, 15, 17, 22

*Cook v. Rockwell Int'l Corp.*,
 No. 98-533 (10th Cir. Oct. 8, 1998) ....................................................3, 15

*Cook v. Rockwell Int'l Corp.*,
 273 F. Supp. 2d 1175 (D. Colo. 2003) .......................................... *passim*

*Cook v. Rockwell Int'l Corp.*,
 580 F. Supp. 2d 1071 (D. Colo. 2006) .................................8, 20, 31, 34

*Cook v. Rockwell Int'l Corp.*,
 2006 U.S. Dist. LEXIS 89515 (D. Colo. Dec. 7, 2006) ........................19

*Cook v. Rockwell Int'l Corp.*,
 2006 WL 3533052 (D. Colo. Dec. 7, 2006) ........................................20

*Cook v. Rockwell Int'l Corp.*,
    564 F. Supp. 2d 1189 (D. Colo. 2008)............................................................................. *passim*

*Cook v. Rockwell Int'l Corp.*,
    618 F.3d 1127 (10th Cir. 2010) ...................................................................................... *passim*

*Cook v. Rockwell Int'l Corp.*,
    790 F.3d 1088 (10th Cir. 2015) ...................................................................................... *passim*

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993)........................................................................................................ *passim*

*In re Deepwater Horizon*,
    739 F.3d 790 (5th Cir. 2014) .................................................................................................43

*Easterling v. Conn. Dep't of Correction*,
    278 F.R.D. 41 (D. Conn. 2011)........................................................................................5, 11

*Eastman Kodak Co. v. Southern Photo Materials Co.*,
    273 U.S. 359 (1927)...............................................................................................................37

*In re Flonase Antitrust Litig.*,
    284 F.R.D. 207 (E.D. Pa. 2012)......................................................................................22, 38

*Garcia v. Tyson Foods, Inc.*,
    890 F. Supp. 2d 1273 (D. Kan. 2012), *aff'd,* 770 F.3d 1300 (10th Cir. 2014) .........................3

*Gulino v. Bd. of Educ.*,
    907 F.Supp.2d 492 (S.D.N.Y. Dec. 5, 2012) ...........................................................................3

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    134 S. Ct. 2398 (2014)..........................................................................................................43

*In re High-Tech Emp. Antitrust Litig.*,
    289 F.R.D. 555 (N.D. Cal. 2013)..........................................................................................44

*Hilao v. Estate of Marcos*,
    103 F.3d 767 (9th Cir. 1996) ................................................................................................38

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2008)..................................................................................................22

*Int'l Harvester Co. v. Sharoff*,
    202 F.2d 52 (10th Cir. 1953) .......................................................................................9, 28, 41

*J. Truett Payne Co. v. Chrysler Motors Corp.*,
    451 U.S. 557 (1981)...............................................................................................................37

*Jermyn v. Best Buy Stores, L.P.*,
    276 F.R.D. 167 (S.D.N.Y. 2011) ..............................................................3

*In re K-Dur Antitrust Litig.*,
    Civ. Action No. 01-1652(JAG), 2008 WL 2699390 (D.N.J. Apr. 14, 2008), *aff'd*, *In re K-Dur Antitrust Litig.*, 686 F.3d 197 (3d Cir. 2012), *vacated on other grounds*, *Merck & Co., Inc. v. Louisiana Wholesale Drug Co., Inc.*, 133 S. Ct. 2849 (2013) & *Upsher-Smith Laboratories, Inc. v. Louisiana Wholesale Drug Co., Inc.*, 133 S. Ct. 2849 (2013), *class certification holding reinstated*, *In re K-Dur Antitrust Litig.*, 2013 U.S. App. LEXIS 18859 (3d Cir. Sept. 9, 2013) .............................................22, 37

*Kohen v. PIMCO, LLC*,
    571 F.3d 672 (7th Cir. 2009) ...............................................................22

*Law v. Nat'l Collegiate Athletic Ass'n*,
    185 F.R.D. 324 (D. Kan. 1999)......................................................5, 11, 25

*Leyva v. Medline Indus. Inc.*,
    716 F.3d 510 (9th Cir. 2013) ...............................................................43

*In re Linerboard Antitrust Litig.*,
    305 F.3d 145 (3d Cir. 2002)..................................................................43

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    202 F.R.D. 12 (D.D.C. 2001)................................................................36

*In re Magnetic Audiotape Antitrust Litig.*,
    2001 U.S. Dist. LEXIS 7303 (S.D.N.Y. June 1, 2001)........................36

*Major v. Benton*,
    647 F.2d 110 (10th Cir. 1981) .............................................................33

*Manno v. Healthcare Revenue Recovery Grp.*,
    289 F.R.D. 674 (S.D. Fla. 2013)...........................................................44

*Martinez v. Union Pac. R.R.*,
    714 F.2d 1028 (10th Cir. 1983) ...........................................................28

*Martinez v. Roscoe*,
    100 F.3d 121 (10th Cir. 1996) .............................................................33

*Martins v. 3PD, Inc.*,
    No. 11-11313, 2013 WL 1320454 (D. Mass. Mar. 28, 2013) ...............44

*Medlock v. Host Int'l, Inc.*,
    No. 12-02024, 2013 WL 2278095 (E.D. Cal. May 22, 2013) ...............44

*Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.,*
  246 F.R.D. 293 (D.D.C. 2007) .......................................................................22, 37

*Messner v. Northshore Univ. HealthSystem,*
  669 F.3d 801 (7th Cir. 2012) ................................................................................23

*In re Motor Fuel Temperature Sales Practices Litig.,*
  279 F.R.D. 598 (D. Kan. 2012) ..............................................................................3

*In re Motor Fuel Temperature Sales Practices Litig.,*
  292 F.R.D. 652 (D. Kan. 2013) ............................................................................44

*Murrell v. Shalala,*
  43 F.3d 1388 (10th Cir.1994) ........................................................................13, 14

*In re N.W. Airlines Corp. Antitrust Litig.,*
  208 F.R.D. 174 (E.D. Mich. 2002) .......................................................................23

*In re NASDAQ Market-Makers Antitrust Litig.,*
  169 F.R.D. 493 (S.D.N.Y. 1996) .....................................................................23, 36

*Navigato v. SJ Rests., LLC,*
  No. 11-3108, 463 Fed. Appx. 770 (10th Cir. 2012)..................................................8

*Neale v. Volvo Cars of N. Am. LLC,*
  No. 2:10-cv-04407, 2013 U.S. Dist. LEXIS 149020 (D.N.J. Oct. 16, 2013) .........................43

*Neiberger v. Hawkins,*
  208 F.R.D. 301 (D. Colo. 2002) ...........................................................................16

*In re Neurontin Antitrust Litig.,*
  MDL 1479, 2011 WL 286118 (D.N.J. Jan. 25, 2011) ...........................................22

*In re Nexium (Esomeprazole) Antitrust Litig.,*
  296 F.R.D. 47 (D. Mass. 2013)..............................................................................43

*In re Nifedipine Antitrust Litig.,*
  246 F.R.D. 365 (D.D.C. 2007).......................................................................22, 36

*In re Oppenheimer Rochester Funds Grp. Secs. Litig.,*
  MDL No. 2063, 2015 U.S. Dist. LEXIS 141073 (D. Colo. Oct. 16, 2016)....................... 44-45

*Paton v. New Mexico Highlands Univ.,*
  275 F.3d 1274 (10th Cir. 2002) .......................................................................5, 11

*Petrella v. Brownback,*
  787 F.3d 1242 (10th Cir. 2015) ................................................................. *passim*

*In re Pharm. Indus. Avg. Wholesale Price Litig.*,
    582 F.3d 156 (1st Cir. 2009) ........................................................................... 36

*Phillips v. Calhoun*,
    956 F.2d 949 (10th Cir. 1992) ..................................................................... *passim*

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000) ........................................................................................ 42

*In re Relafen Antitrust Litig.*,
    218 F.R.D. 337 (D. Mass. 2003) ...................................................................... 37

*Reyes v. Zions First Nat'l Bank*,
    No. 10-345, 2013 U.S. Dist. LEXIS 136312 (E.D. Pa. Sept. 23, 2013) ................. 43

*Rossi v. Standard Roofing, Inc.*,
    156 F.3d 452 (3d Cir. 1998) ............................................................................ 37

*Schwartz v. Celestial Seasonings, Inc.*,
    178 F.R.D. 545 (D. Colo. 1998) ...................................................................... 16

*In re Scrap Metal Antitrust Litig.*,
    527 F.3d 517 (6th Cir. 2008) ........................................................................... 36

*Seifert v. Unified Gov't of Wyandotte Cnty./Kansas City*,
    779 F.3d 1141 (10th Cir. 2015) ................................................................... *passim*

*Sheets v. Salt Lake Cnty.*,
    45 F.3d 1383 (10th Cir. 1995) ......................................................... 4, 13, 29, 33

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ......................................................................... 38

*Smilow v. Sw. Bell Mobile Sys.*,
    323 F.3d 32 (1st Cir. 2003) ............................................................................. 43

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    No. 07-md-01819, 2010 WL 5071694 (N.D. Cal. Dec. 7, 2010) .......................... 22

*Stender v. Archstone-Smith Operating Trust*,
    No. 07-CV-02503, 2015 WL 5675304 (D. Colo. Sept. 28, 2015) ......................... 36

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
    282 U.S. 555 (1931) ........................................................................................ 37

*DG ex rel. Stricklin v. Devaughn*,
    594 F.3d 1188 (10th Cir. 2010) ....................................................................... 16

*In re Sugar Indus. Antitrust Litig.*,
    73 F.R.D. 322 (E.D. Pa. 1976) ............................................................................36

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ...............................................................................23

*In re Teva Pharms., U.S.A. v. Abbott Labs.*,
    252 F.R.D. 213 (D. Del. 2008) ......................................................................22, 37

*Texaco, Inc. v. Hasbrouck*,
    496 U.S. 543 (1990) ............................................................................................37

*United Food & Commercial Workers Union v. Chesapeake Energy Corp.*,
    281 F.R.D. 641 (W.D. Okla. 2012) .....................................................................16

*United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*,
    210 F.3d 1207 (10th Cir. 2000) ..........................................................................27

*United States for Use & Benefit of Fed. Corp. v. Commercial Mech. Contractors, Inc.*,
    707 F.2d 1124 (10th Cir. 1982) ..........................................................................28

*In re Urethane Antitrust Litig.*,
    768 F.3d 1245 (10th Cir. 2014) ..................................................3, 7, 36, 38, 44

*Utahns for Better Transp. v. U.S. Dep't of Transp.*,
    305 F.3d 1152 (10th Cir. 2002) .................................................................. *passim*

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) ...............................................................................43

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. ----, 131 S. Ct. 2541 (2011) ..................................................4, 23, 24, 25

*Wallace v. Powell*,
    No. 09-0291, 2013 WL 2042369 (M.D. Pa. May 14, 2013)..................................44

*In re Warfarin Sodium Antitrust Litig.*,
    212 F.R.D. 231 (D. Del. 2002) ............................................................................22

*In re Wellbutrin SR Direct Purchaser Antitrust Litig*,
    No. 04-5525, 2008 WL 1946848 (E.D. Pa. May 2, 2008)..............................22, 37

*In re Wellbutrin XL Antitrust Litig.*,
    No. 08-2431, 2011 WL 3563385 (E.D. Pa. Aug. 11, 2011) ..................................37

*Weston v. Harmatz*,
    335 F.3d 1247 (10th Cir. 2003) .................................................................. *passim*

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013), *cert. denied*, 134 S. Ct. 1277 (2014) ........................................43

*Zenith Radio Corp. v. Hazeltine Research*,
  395 U.S. 100 (1969) .................................................................................................................37

**STATUTES & OTHER AUTHORITIES**

28 U.S.C. § 1292(b) ..........................................................................................................3, 16

Fed. R. Civ. P. 51(d)(1) .................................................................................................9, 28, 41

Fed. R. Civ. P. 23 .....................................................................................................3, 16, 22, 25, 43

Fed. R. Evid. 702 .....................................................................................................................8

*Restatement (Second) of Torts* § 930 ...............................................................................3, 39

Newberg on Class Actions §10:5 (4th ed. 2005) .......................................................................36

3 Newberg on Class Actions § 10:17 (4th ed. 2002) ................................................................38

Plaintiffs respond here to "Part One: Defendants' Opposition to Plaintiffs' Motion for Entry of Judgment: Standards: Class Certification" (Doc. No. 2373) ("Defs' Class Br.").

## I.  **INTRODUCTION**

Defendants' entire class certification argument rests on a false premise, *i.e.*, that *Cook v. Rockwell Int'l*, 618 F.3d 1127 (10th Cir. 2010) ("*Cook Appeal I*") somehow criticized or undermined this Court's prior class certification holdings as they relate to Plaintiffs' nuisance claims under Colorado law.  Defendants are wrong.  *Cook Appeal I* did not in any way undermine, criticize, or cast any doubt on this Court's prior class certification rulings *as to Plaintiffs' nuisance claims under state law*.  To the contrary, *Cook Appeal I* held that the jury was properly instructed on Plaintiffs' nuisance claims, and *Cook v. Rockwell Int'l Corp.*, 790 F.3d 1088, 1099 (10th Cir. 2015) ("*Cook Appeal II*") held that Plaintiffs have "an existing nuisance verdict," which of course was entered after a class trial on the basis of common evidence.  By confirming that the jury was properly instructed on the elements of nuisance and that Plaintiffs have "an existing nuisance verdict," *Cook Appeal I* and *Cook Appeal II* actually strengthen Plaintiffs' case for class certification as to their nuisance claims.

*Cook Appeal I* only vacated class certification because of that panel's rulings on Plaintiffs' *PAA* and *trespass* claims.

As to Plaintiffs' PAA claims, *Cook Appeal I* ruled that the jury had not been correctly instructed on "threshold elements of Plaintiffs' PAA claims", namely the (newly announced) requirement that a PAA plaintiff must prove that a "nuclear incident" occurred.  The Court also announced what proof of a "nuclear incident" would require, and that "mere" contamination by plutonium was not enough.  *See Cook Appeal I*, 618 F.3d at 1138-42.

As to Plaintiffs' trespass claims, *Cook Appeal I* ruled that the jury was incorrectly instructed under Colorado law, ruling that "the trespass alleged here must be tried as an

intangible trespass" and so Plaintiffs were "required to prove actual physical damage to their properties in order to prevail on their trespass claims" under Colorado law.  618 F.3d at 1149.

*Cook Appeal I* then stated (on the same page where it discusses trespass, 618 F.3d at 1149), that:

> As the district court's class certification analysis failed to consider whether Plaintiffs could establish various elements of their PAA claims, supplied both by federal and state law, this court must reverse the district court's class certification ruling.  Upon remand, the district court shall revisit the class certification question to determine whether Plaintiffs can establish the elements of their claims, including the PAA threshold requirements, on a class-wide basis.

618 F.3d at 1149.

Defendants build their entire brief around this language, but it does not help them at all because *Plaintiffs are no longer pursuing their federal PAA or state trespass claims.*[1]  Hence, *Cook Appeal I's* finding that the jury was *properly instructed* on Plaintiffs' state law nuisance claims, and *Cook Appeal II's* holding that judgment may be entered on *those* claims, means that this Court may proceed to recertify the class with respect to those same proven nuisance claims. *See Cook Appeal I*, 618 F.3d at 1145 ("The jury was *properly instructed* on the elements of a nuisance claim.")[2]; *Cook Appeal II*, 790 F.3d at 1102 ("*all the elements necessary for a judgment [on Plaintiffs' nuisance claims] under state law are present and unaffected by any error identified in the first appeal, or on remand for that matter*.").

Because *Cook Appeal I* cast no doubt on this Court's prior class certification rulings as to Plaintiffs' nuisance claims, class certification as to those claims remains correct for all the same reasons this Court previously detailed in its numerous prior class certification rulings, including

---

[1] Plaintiffs' not pursuing their PAA claims was and is contingent on *Cook Appeal I* not being amended or reversed regarding its holding that a "nuclear incident" is a threshold element of a PAA claim and what is required to prove such a "nuclear incident."

[2] All emphases are added unless stated otherwise.

*Cook IV*, 151 F.R.D. 378 (D. Colo. 1993),[3] *Cook VIII*, 181 F.R.D. 473, 475-82 (D. Colo. 1998)

(denying Defendants' motion to decertify the class),[4] *Cook IX*, 273 F. Supp. 2d 1175, 1209-13

(D. Colo. 2003) (ruling that claims under Restatement (Second) of Torts § 930 for diminution in

value attributable to "prospective" invasions of land, could and would be resolved in a class

trial), and *Cook XIV*, 564 F. Supp. 2d 1189, 1197 (D. Colo. 2008) (rejecting Defendants' post-

trial class arguments).[5]   Indeed, the case for class certification is even *stronger* today.  The Court

and the parties successfully conducted and managed a *class trial*, which further establishes that

class certification was appropriate.[6]   Again, *Cook Appeal II* confirmed that the Plaintiffs have a

---

[3] *Cook IV* was decided in 1993, with discovery still in its earliest stages, in conformity with Rule 23's then-prevailing requirement that class certification be decided "'as soon as practicable after the commencement'" of the action.  *Cook IV*, 151 F.R.D. at 389.  Given that requirement, the district court properly considered the claims and factual allegations in Plaintiffs' complaint, as well as evidentiary material pertinent to the requirements of Rule 23.  The Court pointedly noted, meanwhile, that its ruling was subject to subsequent reconsideration or modification as proceedings evolved and the record matured.  *Cook IV*, 151 F.R.D. at 389.  This Court subsequently issued several other class certification decisions under the current Rule 23 standard.

[4] The Court later certified the denial of Defendants' motion to decertify the class for interlocutory appeal under 28 U.S.C. § 1292(b), and the Tenth Circuit concluded that interlocutory review was "not warranted."  *Cook v. Rockwell Int'l Corp.*, No. 98-533 (10th Cir. Oct. 8, 1998) (Brorby & Murphy, JJ.).

[5] *See generally Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 168-69 (S.D.N.Y. 2011) ("However, even assuming Plaintiffs bear the burden of demonstrating that the requirements of Rule 23 continue to be met, the Court may not disturb its prior [certification] findings absent some significant intervening event, or a showing of compelling reasons to reexamine the question.") (internal quotations omitted) (holding that decertification of class was not appropriate); *In re Motor Fuel Temperature Sales Practices Litig.*, 279 F.R.D. 598, 615 (D. Kan. 2012) ("Defendants' motion for decertification is essentially a motion to reconsider based on an intervening change in controlling law."); *Gulino v. Bd. of Educ.*, 907 F.Supp.2d 492, 504 (S.D.N.Y. Dec. 5, 2012) (decertification is an "'extreme step,' particularly at a late stage in the litigation.") (quoting *Woe v. Cuomo*, 729 F.2d 96, 107 (2d Cir. 1984)).

[6] *See In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1258 (10th Cir. 2014) (upholding the denial of a post-trial motion to decertify the class because "*we know from the actual trial that individualized issues did not predominate.*"); *id.* at 1259 ("Here, the district court had the benefit of seeing what ultimately took place at trial.").  *See also Garcia v. Tyson Foods, Inc.*, 890 F. Supp. 2d 1273, 1280 (D. Kan. 2012), *aff'd,* 770 F.3d 1300 (10th Cir. 2014) ("Because the class

3

nuisance verdict, which was rendered by the jury based on the common evidence presented at the class trial.[7]  And class certification is consistent with *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ----, 131 S. Ct. 2541 (2011) (*see* Section II.C.1.a, *infra*) and *Comcast Corp. v. Behrend*, 569 U.S. ----, 133 S. Ct. 1426 (2013) (*see* Section II.D, *infra*).

Defendants' Class Brief is yet another effort to start all over, relitigate issues long since decided in this twenty-five-year-old case, and stall the day of judgment again.  Years too late, Defendants basically want the Court to reverse its prior rulings[8] and ignore *Cook Appeal II*'s mandate that this Court ought to "proceed to judgment on the existing nuisance verdict promptly" and be "wary of arguments that have already been rejected or forfeited."[9]

---

prevailed at trial here, the court must carefully weigh its decision to decertify as it may wrongly deprive plaintiffs of the fruits of their victory.") (citation omitted).

[7] *See, e.g.,* Jury Instructions, Doc. No. 2121-2, at Instruction No. 3.1 ("Plaintiffs assert two claims in this action on behalf of themselves and the Class members. This means Plaintiffs' claims are made *and must be proved for the Class as a whole as stated in the instructions for each claim that I am about to give you.*").

[8] Defendants hardly even pretend that they are doing anything other than rearguing issues already decided by the Court.  For example, in Section IV.C.iii, titled "Defendants Are Entitled to Prove Setoff with Individual Issues," Defendants acknowledge that this Court already ruled on this setoff issue, but complain that "Defendants should have been permitted to take individual discovery related to setoff, to present evidence at trial showing that some class members bought at a discount because of perceived or alleged risk from Rocky Flats, and to have a jury decide the issue on an individual, not class-wide basis."  *See* Defs' Class Br., at 54; *id.* at 53 ("The Court rejected defendants' objection that proof of compensatory damages, including proof of setoff, requires consideration of individual issues…").

[9] *Cook Appeal II*, 790 F.3d at 1105 ("When the district court receives this case it should proceed to judgment on the existing nuisance verdict promptly, consistent with resolving the outstanding class action question, wary of arguments that have already been rejected or forfeited. This long lingering litigation deserves to find resolution soon. The judgment of the district court is vacated and the case is remanded for proceedings consistent with this opinion.").  *See generally Seifert v. Unified Gov't of Wyandotte Cnty./Kansas City*, 779 F.3d 1141, 1156 (10th Cir. 2015) (where defendant-appellee had advanced argument in district court but failed to raise on appeal, argument waived); *Sheets v. Salt Lake Cnty.*, 45 F.3d 1383, 1390 (10th Cir. 1995) (argument not proffered on appeal is waived); *Phillips v. Calhoun*, 956 F.2d 949, 954 (10th Cir. 1992) (same); *Petrella v. Brownback*, 787 F.3d 1242 (10th Cir. 2015); *Utahns for Better Transp. v. U.S. Dep't of Transp.,* 305 F.3d 1152, 1175 (10th Cir. 2002); *Clark v. State Farm Mut. Auto. Ins. Co.*, 590

The Court should decline Defendants' invitation to revisit class certification yet again after twenty-five years of litigation,[10] and should confirm that certification of the Class as to Plaintiffs' nuisance claims remains appropriate, and therefore recertify the class.[11]  Indeed, in light of the plain holdings in *Cook Appeal I* and *Cook Appeal II*, in Plaintiffs' view, Defendants' arguments do not even require more of a response.  Nevertheless, Plaintiffs respond to each of Defendants' arguments below, showing where each has already been raised and correctly rejected by this Court (and this Court has already rejected many of Defendants' arguments

---

F.3d 1134, 1140 (10th Cir. 2009) ("Because they were not challenged on appeal in *Clark III*, both the case management order and the district court's denial of the motion to intervene have now become the law of the case and are binding on the parties."); *Weston v. Harmatz*, 335 F.3d 1247, 1255 (10th Cir. 2003) ("Under the law of the case doctrine, '[a] legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.'") (quoting *Concrete Works of Colo., Inc. v. City and Cnty. of Denver*, 321 F.3d 950, 992 (10th Cir. 2003)).

[10] *See Paton v. New Mexico Highlands Univ.*, 275 F.3d 1274, 1276, 1280 (10th Cir. 2002) (holding that district court abused its discretion in decertifying the 23(b)(2) class "[a]t the close of trial, but before the matter was submitted to the jury" because "none of the facts upon which the earlier order [granting certification] was based had changed"); *Boynton v. Headwaters, Inc.*, No. 1:02-CV-01111, 2010 WL 2430779, at *3 (W.D. Tenn. June 10, 2010) (rejecting defendant's motion for decertification after a jury verdict in favor of plaintiff class in the first phase of a bifurcated trial, emphasizing that "decertification could lead to the filing of numerous suits in this or other courts after eight years of litigation here"); *Law v. Nat'l Collegiate Athletic Ass'n*, 185 F.R.D. 324, 327 (D. Kan. 1999) (overruling defendant's post-trial motion to decertify the 23(b)(2) classes after judgment in favor of plaintiffs, emphasizing that "[t]he Court has previously rejected many of [defendant's] arguments, in orders dealing with summary judgment, decertification and motions in limine," and had specifically overruled defendant's pretrial motion to decertify the classes).  *See also Easterling v. Conn. Dep't of Correction*, 278 F.R.D. 41, 44 (D. Conn. 2011) ("A court should be wary of revoking a certification order completely at a late stage in the litigation process.").

[11] Defendants could have raised their class certification arguments on appeal in *Cook Appeal II*, but did not, even though Plaintiffs' "Statement of Issues" in their opening brief in *Cook Appeal II* included "3) Whether the District Court erred as a matter of law in declining to recertify the class and declining to enter judgment for Plaintiffs on Plaintiffs' existing nuisance verdict."  *See* Plaintiffs'-Appellants' Principal Brief, Case No. 14-1112, Doc. No. 01019262216, at 5 (June 10, 2014) (Exh. 5).  As the Tenth Circuit noted in *Cook Appeal II*, "the first panel's decision to defer certain issues" did not "preclude the defendants from raising them on remand if they really thought them sufficient to bar entry of judgment on the existing nuisance verdict."  790 F.3d at 1104 n.7.

multiple times).  Also to aid the Court, Plaintiffs previously submitted a Proposed Order re Class Certification, Doc. No. 2367-9.

## II.   ARGUMENT

### A.   *Cook Appeal I* did not cast any doubt on this Court's prior class certification orders as to Plaintiffs' nuisance claims.

*Cook Appeal I* did not criticize, at all, this Court's prior rulings as to the continued propriety of class certification as to Plaintiffs' nuisance claims.  *Cook Appeal I* held that this Court on remand should reconsider whether class certification was appropriate *as to Plaintiffs' PAA and trespass claims*.

*Cook Appeal I's* finding that the jury was *properly instructed* on Plaintiffs' state law nuisance claims, and *Cook Appeal II's* holding that judgment may be entered on *those* claims, means that this Court may proceed to recertify the class with respect to those same proven nuisance claims.  *See Cook Appeal I*, 618 F.3d at 1145 ("The jury was *properly instructed* on the elements of a nuisance claim."); *Cook Appeal II*, 790 F.3d at 1102 ("*all the elements necessary for a judgment [on Plaintiffs' nuisance claims] under state law are present and unaffected by any error identified in the first appeal, or on remand for that matter*."); *id.* at 1104 ("In two separate appeals spanning many years the defendants have identified no lawful impediment to the entry of a state law nuisance judgment on the existing verdict.").

The "state law" language in *Cook Appeal I* that Defendants build their entire brief around[12] refers *only* to Plaintiffs' vacated *trespass* claims.  *Cook Appeal I* identified *no errors* with respect to Plaintiffs' state law nuisance claims, as confirmed by *Cook Appeal II.*  In short, there are no "elements" of Plaintiffs' *nuisance* claims that this Court needs to re-examine in connection with class certification.

---

[12] *Cook Appeal I*, 618 F.3d at 1149.

This Court is actually mandated by *Cook Appeal II not* to "revisit" the question of whether Plaintiffs can establish the elements of their nuisance claims since *Cook Appeal II* held that Plaintiffs have *already* proven nuisance at the class trial and directed this Court to "proceed to judgment on the existing nuisance verdict promptly." *See, e.g.*, *Cook Appeal II*, 790 F.3d at 1099-104.

In short, Defendants' entire class certification argument rests on a fundamental misreading of *Cook Appeal I*. Again, *Cook Appeal I* clearly confirmed that the jury was *properly instructed as to Plaintiffs' nuisance claims*, and *Cook Appeal II* confirmed that "*all the elements necessary for*" this Court to enter a judgment on Plaintiffs' nuisance claims "*under state law are present and unaffected by any error identified in the first appeal, or on remand for that matter*." 790 F.3d at 1102.

### B.      As this Court and the Tenth Circuit have recognized, Plaintiffs have already proven nuisance through common evidence after the jury was properly instructed as to Plaintiffs' nuisance claims.

Defendants claim that "plaintiffs are unable to prove the elements of their claims on a class-wide basis" (Defs' Class Br., at 3), but the class trial, nuisance jury instructions, and class nuisance verdict – each *affirmed* by the Tenth Circuit – establish just the opposite.[13]

The "existing nuisance verdict" was entered after a class trial. Defendants do not and cannot dispute that that the Court successfully conducted a class nuisance trial. This nuisance trial included extensive classwide testimony. *See* Summary of Class-Wide Testimony at Trial Relevant to Nuisance and Damages, Doc. No. 2367-9, at 11-12. Plaintiffs' classwide evidence included testimony from a number of scientific experts – evidence which satisfied all

---

[13] *See Cook Appeal I*, 618 F.3d at 1145; *Cook Appeal II*, 790 F.3d at 1105. *See generally Urethane*, 768 F.3d at 1258 (upholding the denial of a post-trial motion to decertify the class because "*we know from the actual trial that individualized issues did not predominate*."); *id.* at 1259 ("Here, the district court had the benefit of seeing what ultimately took place at trial.").

requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Fed. R. Evid. 702. *See Cook XIII*, 580 F. Supp. 2d 1071 (rejecting Defendants' *Daubert* challenges).[14]

The Tenth Circuit *affirmed* the nuisance instructions, including Instruction 3.1, which stated: "Plaintiffs assert two claims in this action on behalf of themselves and the Class members. This means Plaintiffs' claims are made *and must be proved for the Class as a whole as stated in the instructions for each claim that I am about to give you.*" Jury Instructions, Doc. No. 2121-2, at Instruction No. 3.1.[15] As to Plaintiffs' nuisance claims, the jury was further instructed: "In deciding whether any interference proven by Plaintiffs is substantial under this test, *you must consider only the magnitude or level of interference that is common to the Class as a whole*, and not any more severe level of interference that may have been suffered by some Class members but not by others." *Id.* at Instruction 3.9; *see also id.* at Instruction 3.11 ("In assessing the extent of the harm, *you must also consider only harm that is common to the class as a whole, and not any more severe harm that may have been suffered by some Class members but not by others*."); *id*. at Instruction 3.23 ("[Y]ou will be asked to decide both the total amount of damages suffered by the Class as a whole (called 'aggregate' Class damages), and the percentage diminution in property values in the Class Area as a whole.") The jury is presumed to have followed its instructions, including Instructions 3.1, 3.9, 3.11 and 3.23,[16] and thus the

---

[14] Defendants did not appeal *Cook XIII*'s rulings regarding the admissibility and reliability of Plaintiffs' proffered expert testimony; all such rulings are binding on remand under the law of the case doctrine and the related waiver doctrine. *See, e.g.*, *Navigato v. SJ Rests., LLC*, No. 11-3108, 463 Fed. Appx. 770, 777 (10th Cir. 2012) (unpublished); *Clark*, 590 F.3d at 1140; *Weston*, 335 F.3d at 1255.

[15] *See Cook Appeal I,* 618 F.3d at 1145; *Cook Appeal II*, 790 F.3d at 1091.

[16] *See ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 768 (10th Cir. 2011); *Black v. Workman*, 682 F.3d 880, 908 (10th Cir. 2012).

jury entered the "existing nuisance verdict" affirmed by the Tenth Circuit on the basis of *common evidence*.

As noted, the jury was also instructed to calculate aggregate class damages[17] and did so, awarding aggregate class damages of $176,850,340 on Plaintiffs' nuisance claims.  Jury Verdict Form, Doc. No. 2117, at F.13; *Cook XIV*, 564 F. Supp. 2d at 1198.[18]  This Court entered judgment on the aggregate class damages award of $176,850,340 plus prejudgment interest.  *See Cook XIV*, 564 F. Supp. 2d at 1196-208, 1229-30.[19]  The Court held that:

> the jury returned a verdict assessing $176.8 million in compensatory damages on each claim, some $70 million *less* than the $248 million in compensatory damages Plaintiffs had requested the jury find on each claim based on the evidence before it. *See* 1/18/06 Tr. at 10,350 (trespass), 10,352 (nuisance). Having considered the evidence presented and the jury's verdicts, I find the jury's determination of compensatory damages is neither against the weight of the evidence nor otherwise a shock to this judicial conscience. As a result, I find neither a new trial nor remittitur is warranted on the ground the compensatory damages verdicts are excessive under the evidence presented.

*Id.* at 1201 (emphasis in original).

In *Cook Appeal I*, the Tenth Circuit held that "[t]he jury was properly instructed on the elements of a nuisance claim."  618 F.3d at 1145.  In *Cook Appeal II*, the Tenth Circuit expressly affirmed the nuisance verdict, which resulted from a class trial.  *See, e.g.*, *Cook Appeal II*, 790

---

[17] Jury Instructions, Doc. No. 2121-2, at Instruction No. 3.23.

[18] As discussed *infra*, this Court has *already held* that Defendants waived any objection to the aggregate class award.  *Cook XIV*, 564 F. Supp. 2d at 1203.  *See also* Fed. R. Civ. P. 51(d)(1)("A party may assign as error . . . (B) a failure to given an instruction, *if* that party properly requested it and . . . and properly objected."); *Int'l Harvester Co. v. Sharoff*, 202 F.2d 52, 55 (10th Cir. 1953) ("no party may assign as error the refusal of the trial court to give requested instructions for the first time on appeal, unless he objects thereto before the jury retires to consider its verdict.").

[19] The Court also entered judgment on exemplary damages (*Cook XIV*, 564 F. Supp. 2d at 1220), but Plaintiffs are not now asking the Court to enter judgment on exemplary damages.

F.3d at 1105 ("When the district court receives this case it should proceed to judgment on the existing nuisance verdict promptly…").

In affirming the nuisance instructions, the Tenth Circuit *affirmed* that nuisance can be proven on a classwide basis because the Court's jury instructions incorporated its class certification rulings.  For example, the Tenth Circuit *affirmed* Instructions 3.1, 3.9, and 3.11, which each instructed the jury it was required to base its findings on evidence "*common to the class as a whole.*"  The Tenth Circuit also confirmed the correctness of this Court's nuisance instruction that the jury was to apply an objective test for "substantial" interference with use and enjoyment:

> An interference with a person's right to use and enjoy their land is "substantial" if the interference is significant enough that a normal person in the community would find it offensive, annoying or inconvenient. In this case, that means you must determine whether a reasonable landowner of normal sensibilities would find the proven interference caused by Dow or Rockwell to be offensive, annoying or inconvenient. "Normal sensibilities" for these purposes means a person who is neither unusually sensitive nor unusually insensitive to the interference you are considering.

Jury Instructions, Doc. No. 2121-2, at Instruction No. 3.9.  As discussed more fully below, Defendants argue that Plaintiffs should have been required to show individualized evidence of substantial and unreasonable interference with class members' use and enjoyment of their property (*see* Defs' Class Br., at Sections IV.A, IV.B) – but this claim was *rejected* not only by this Court but also by the Tenth Circuit which *affirmed the correctness of the nuisance jury instructions*,[20] including, for example, 3.1, 3.9, and 3.11.

The proof is in the pudding:  as this Court has repeatedly held, Plaintiffs can prove both the elements of their nuisance claims and aggregate class damages on a classwide basis – and the best evidence is that Plaintiffs have *already done so*.  Any claim to the contrary was rejected by

---

[20] *Cook Appeal I*, 618 F.3d at 1145; *Cook Appeal II*, 790 F.3d at 1102.

the Tenth Circuit in both *Cook Appeal I* and *Cook Appeal II*, which affirmed and re-affirmed the correctness of the instructions on nuisance that the jury followed.[21]

### C. This Court has already considered and addressed each of Defendants' arguments, there is no reason for this Court to revisit or reverse its prior rulings, and Defendants have waived arguments to the contrary.

This Court has already considered and rejected the arguments in Defs' Class Br., and Defendants cannot and have not pointed to any material change in controlling law or new facts warranting reversal of this Court's prior rulings.[22]  And as explained above, the case for class certification is *even stronger* today, after the class trial, class verdict, *Cook Appeal I*, and *Cook Appeal II*.

This is not even the first time since trial ended that Defendants have asked this Court to reverse its prior class rulings – after trial, Defendants filed motions making the exact same arguments they press again now.[23]  In *Cook XIV*, this Court entered judgment for Plaintiffs,

---

[21] *See Cook Appeal I*, 618 F.3d at 1145; *Cook Appeal II*, 790 F.3d at 1102.

[22] *See generally Cook XIV*, 564 F. Supp. 2d at 1197; *Paton*, 275 F.3d at 1276, 1280 (holding that district court abused its discretion in decertifying the 23(b)(2) class "[a]t the close of trial, but before the matter was submitted to the jury" because "none of the facts upon which the earlier order [granting certification] was based had changed"); *Law*, 185 F.R.D. at 327 (overruling defendant's post-trial motion to decertify the 23(b)(2) class after judgment in favor of plaintiffs, emphasizing that "[t]he Court has previously rejected many of [defendant's] arguments, in orders dealing with summary judgment, decertification and motions in limine," and had specifically overruled defendant's pretrial motion to decertify the classes).  *See also Boynton*, 2010 WL 2430779, at *3 (rejecting defendant's motion for decertification after a jury verdict in favor of plaintiff class in the first phase of a bifurcated trial, emphasizing that "decertification could lead to the filing of numerous suits in this or other courts after eight years of litigation here"); *Easterling*, 278 F.R.D. at 44 ("A court should be wary of revoking a certification order completely at a late stage in the litigation process.").

[23] Defendants previously raised each of the following current arguments in their prior briefing related to Defendants' Motion for a New Trial or, in the Alternative, for a Remittitur of Damages and Defendants' Renewed Motion for Judgment as a Matter of Law, dated January 22, 2007, Doc. Nos. 2221 and 2225:

- Sections IV.A-B of Defs' Class Br. argues that substantial and unreasonable interference with Plaintiffs' use of property cannot be proved on a class basis.  Defendants argued this

denied Defendants' post-trial motions, and *rejected* Defendants' arguments against class

certification:

> Defendants devote nearly three-fourths of their voluminous Rule 59
> motion to rearguing my decisions to proceed with a class trial… Each of
> the challenged decisions was reached after reasoned consideration of
> extensive written and/or oral argument from both parties. After careful
> review of Defendants' most recent arguments regarding these matters, I
> find no basis for reconsidering these decisions.

*Cook XIV*, 564 F. Supp. 2d at 1197 (footnote omitted).  There remains no "basis for

reconsidering" this Court's previous "challenged decisions" which were "reached after reasoned

consideration of extensive written and/or oral argument from both parties."  *See id.*

Moreover, Defendants have *waived* most of their arguments against class certification by

failing to raise them on appeal in *Cook Appeal I*. or by raising these points in a perfunctory

---

before in briefing leading up to *Cook XIV*, including, *inter alia*, in Defendants'
Memorandum in Support of its Motion for a New Trial or, in the Alternative, for a
Remittitur of Damages, Doc. No. 2225, at Section VII.A; Defendants' Memorandum in
Support of their Renewed Motion for Judgment as a Matter of Law, dated January 22,
2007, Doc. No. 2221, at Sections III.A-B; Defendants' Reply in Support of their
Renewed Motion for Judgment as a Matter of Law, dated April 27, 2007, Doc. No. 2248,
at Section II; Defendants' Reply in Support of their Motion for a New Trial or in the
Alternative, for a Remittitur of Damages, dated May 1, 2007, Doc. No. 2249, at Section
I.A.

- Section IV.C of Defs' Class Br. claims that "Plaintiff Cannot Prove Damages on a Class-
  Wide Basis."  Defendants made these same arguments in the briefing prior to *Cook XIV*,
  including in, *inter alia*, in Defendants' Memorandum in Support of its Motion for a New
  Trial or, in the Alternative, for a Remittitur of Damages, Doc. No. 2225, at Section VII.C;
  Defendants' Memorandum in Support of their Renewed Motion for Judgment as a Matter
  of Law, Doc. No. 2221, at Sections III.A-B; Defendants' Reply in Support of their
  Renewed Motion for Judgment as a Matter of Law, Doc. No. 2248, at Section IV;
  Defendants' Reply in Support of their Motion for a New Trial or in the Alternative, for a
  Remittitur of Damages, Doc. No. 2249, at Section I.

- Section V of Defs' Class Br. contends that "The Court Cannot Certify the Proposed
  Prospective Damages-Sub-Class" but Defendants made these same arguments in the
  briefing prior to *Cook XIV*, including in, *inter alia*, Defendants' Memorandum in Support
  of its Motion for a New Trial or, in the Alternative, for a Remittitur of Damages, Doc.
  No. 2225, at Section B.1-2; Defendants' Reply in Support of their Motion for a New Trial
  or in the Alternative, for a Remittitur of Damages, Doc. No. 2249, at Section I.

manner without developing them.[24]  *See* Opening Brief of Defendants-Appellants-Cross-

Appellees, Case No. 08-1224, Doc. No. 01017648899 (Mar. 9, 2009) ("Defendants' Opening

Brief in *Cook Appeal I*") (Exh. 4).  In particular, Defendants waived the arguments included in

the following sections of Defs' Class Br.:

- Section IV.A.i:  "Each Property Owner's Use And Enjoyment Of Property Is
  Highly Individualized."  Defendants did *not* make this argument in Defendants'
  Opening Brief in *Cook Appeal I*.  *Compare* Defendants' Opening Brief in *Cook
  Appeal I*, at Section IV (titled "The District Court Erred By Certifying A Class In
  Light Of Plaintiffs' Inability To Prove An Essential Element Of Their PAA
  Claims, Injury, On a Classwide Basis With Classwide Proof") *with e.g.*, Defs'
  Class Br., at 25 ("The subjective and individualized nature of interference is
  consistent with the longstanding rule that each parcel of real estate is unique.").

- Section IV.A.ii:  "The Record Demonstrates That Claims Of Interference With
  Use And Enjoyment Require Individualized Proof."  Defendants did *not* develop
  this argument in Defendants' Opening Brief in *Cook Appeal I*.  *Compare*
  Defendants' Opening Brief in *Cook Appeal I*, at Section IV (titled "The District
  Court Erred By Certifying A Class In Light Of Plaintiffs' Inability To Prove An
  Essential Element Of Their PAA Claims, Injury, On a Classwide Basis With
  Classwide Proof") *with e.g.*, Defs' Class Br., at 25 ("The subjective and
  individualized nature of interference is consistent with the longstanding rule that
  each parcel of real estate is unique.").

- Section IV.B:  "Plaintiffs Cannot Prove Interference Was 'Substantial' And
  'Unreasonable' On A Class-Wide Basis."  Defendants barely alluded to this
  argument on appeal,[25] and thus the argument is waived.[26]

---

[24] *See Seifert*, 779 F.3d at 1156 ("'[I]ssues adverted to in a perfunctory manner, unaccompanied
by some effort at developed argumentation, are deemed waived.'") (*quoting Murrell v. Shalala*,
43 F.3d 1388, 1389 n.2 (10th Cir.1994)) (holding that where defendants-appellees had advanced
an argument in district court but merely stated on appeal that the issue "is an open question," the
argument was waived); *Petrella*, 787 F.3d at 1260 ("When issues are not adequately briefed,
they are deemed waived."); *Murrell*, 43 F.3d at 1389 n.2 (issue waived where mentioned in
"perfunctory" manner); *Phillips*, 956 F.2d at 954; *Utahns for Better Transp.*, 305 F.3d at 1175;
*Clark*, 590 F.3d at 1140; *Weston*, 335 F.3d at 1255; *Sheets*, 45 F.3d at 1390.

[25] *See* Defendants' Opening Brief in *Cook Appeal I*, at 83 (Exh. 4) (claiming without any further
discussion that "And with respect to nuisance, plaintiffs never showed how they could establish a
substantial and unreasonable interference with each class member's use or enjoyment of his or
her property on a classwide basis with classwide proof, especially given the great variance in the
alleged exposures to plutonium.").

- Section IV.C:  "Plaintiffs Cannot Prove Damages On A Class-Wide Basis." Defendants did not make any arguments concerning "proximity" (*see* Section IV.C.i of Defs' Class Br.), the use of "averages" (*see* Section IV.C.ii), or whether Defendants are entitled to prove setoff with individual evidence (*see* Section IV.C.iii).  Defendants have thus waived these arguments, included in Section IV.C of Defs' Class Br., that Plaintiffs allegedly cannot prove damages on a classwide basis.

    1. **This Court previously held that Plaintiffs can prove substantial and unreasonable interference with Plaintiffs' use and enjoyment of property on a classwide basis, and Plaintiffs actually did so at trial.**

This Court previously rejected Defendants' arguments (a) that Plaintiffs allegedly cannot prove interference on a classwide basis, and (b) that Plaintiffs allegedly cannot prove the interference was "substantial" and "unreasonable" on a classwide basis with classwide proof. *See* Defs' Class Br., at 24-43.  Indeed, Defendants unabashedly acknowledge that they are simply rehashing previously-made (and previously rejected) arguments about whether nuisance can be proven on a classwide basis:

> Defendants' consistent position throughout this suit has been that plaintiffs cannot prove the elements of their nuisance claim on a class-wide basis with class-wide proof.
>
> …
>
> The Court chided defendants for their persistence on this subject. *See* Ex. F, 4/14/2004 Order at 1-2 (Dkt. 1220) ("Defendants, meanwhile, took the status report as yet another opportunity to argue at length regarding the merits of Plaintiffs' property damage claims and whether they can properly proceed as a class action in any respect.'); Ex. U, 5/28/2004 Order at 3-4 (Dkt. 1235) ('Once again, the parties could not agree on the most basic components of the class property trial, with the center of the dispute shifting, for the most part, from the legal issues decided in *Cook IX* to Defendants' contention, for at least the third time in the action, that none of the issues to be tried were capable of resolution in a class action.')

---

[26] *See, e.g.*, *Seifert*, 779 F.3d at 1156; *In re C.W. Min. Co.*, 740 F.3d at 564; *Petrella*, 787 F.3d at 1260; *Utahns for Better Transp.*, 305 F.3d at 1169; *Murrell*, 43 F.3d at 1389 n. 2; *Phillips*, 956 F.2d at 954.

Defs' Class Br., at 23 & n.10.[27]

Plaintiffs and Defendants agree on one thing:  this Court has repeatedly held that the elements of Plaintiffs' nuisance claims, *i.e.*, substantial and unreasonable interference with Plaintiffs' use and enjoyment of property, can be proven on a classwide basis.[28]

In *Cook IV*, when this Court first addressed class certification, this Court certified the class and held that Rule 23's commonality and predominance requirements were met, in part based on the common question of whether "defendants' operation of Rocky Flats…amounted to interference with the use or enjoyment of property constituting a nuisance."  151 F.R.D. at 385. Defendants admit that the Court considered and rejected the same arguments that Defendants raise today in the briefing leading up to *Cook IV*.  *See* Defs' Class Br., at 5-6 (citing to Dow Resp. to Mot. for Class Cert. at 2-3, Doc. No. 213, dated August 20, 1993).

In *Cook VIII*, further into discovery and after the exchange of expert reports, this Court denied a defense motion to decertify the Property Class.  *Cook VIII*, 181 F.R.D. at 475-82.[29]  In *Cook VIII*, this Court directly addressed and rejected Defendants' argument that alleged individualized defenses barred certification:

> Defendants assert this case presents too many individualized issues and no single common course of conduct to  satisfy the Rule 23(a)(2) requirement that "there are questions of law or fact common to the class" and the Rule 23(b)(3) requirement that such common questions predominate over any

---

[27] *See also* Defs' Class Br., at 42 (explaining that this Court's May 17, 2005 Order addressed and rejected Defendants' argument that "Plaintiffs Cannot Prove Interference Was 'Substantial' And 'Unreasonable' On A Class-Wide Basis").

[28] *See, e.g.*,  Defendants' Memorandum in Support of Its Motion for a New Trial or, in the Alternative, for a Remittitur of Damages, Doc. No. 2221, at 152 (arguing "Plaintiffs' Nuisance Claims Should Not Have Been Tried on a Class-Wide Basis"); *Cook XIV*, 564 F. Supp. 2d at 1197 (rejecting Defendants' class arguments).

[29] This Court later certified that ruling for interlocutory appeal under 28 U.S.C. §1292(b), and the Tenth Circuit concluded that interlocutory review was "not warranted."  *Cook v. Rockwell Int'l Corp.*, No. 98-533 (10th Cir. Oct. 8, 1998) (Brorby & Murphy, JJ.).

questions affecting only individual members of the class. They maintain each of the five Property Class representatives' claims and the evidence related to them present a highly individualized set of circumstances and this would hold true for each of the more than 15,000 parcels in the class. … Under the commonality and predominance requirements, the claims of class members need not be factually identical.

*Id.* at 480.[30]  The Court further held:

Plaintiffs' factual and legal allegations of liability constitute similar common issues that would be a significant part of any individual case. Although the claims for misrepresentation and concealment involve questions of individual reliance and resultant harm and the statute of limitations defense might bar the claims of some Plaintiffs not others, *the commonality of impact of the alleged releases outweighs these variances. I conclude the individual issues do not destroy the commonality and predominance requirements.*

*Id.*[31]

---

[30] *See also Belote v. Rivet Software, Inc.*, No. 12-CV-02792, 2013 WL 2317243, at *3 (D. Colo. May 28, 2013) ("Class wide issues predominate if resolution of *some of* the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject to only individualized proof.") (internal quotations omitted); *United Food & Commercial Workers Union v. Chesapeake Energy Corp.*, 281 F.R.D. 641, 655 (W.D. Okla. 2012) (internal citations and quotations omitted) ("Class wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject to only individualized proof."); *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010) ("'[E]very member of the class need not be in a situation identical to that of the named plaintiff' to meet Rule 23(a)'s commonality or typicality requirements.") (*quoting Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982)) (affirming class certification and finding the commonality requirement was satisfied); *id.* ("Factual differences between class members' claims do not defeat certification where common questions of law exist."); *Neiberger v. Hawkins*, 208 F.R.D. 301, 315 (D. Colo. 2002) ("The claims of the class members need not be identical for there to be commonality; either common questions of law or fact will suffice. Nor need the injuries complained of be identical among the class members and the class representative; only the harm complained of must be common to the class.") (internal citations omitted) (granting class certification and finding the commonality requirement was satisfied); *Schwartz v. Celestial Seasonings, Inc.*, 178 F.R.D. 545, 551 (D. Colo. 1998) (Kane, J.) ("The claims of the class members need not be identical for there to be commonality; either common questions of law or fact will suffice.").

[31] *Cook VIII* is consistent with the great weight of authority holding that factual differences among class members are no bar to class certification.  *See CGC Holding Co., LLC v. Broad &*

In *Cook IX*, this Court explained that under Colorado law, nuisance liability is premised on unreasonable and substantial interference with the plaintiff's use and enjoyment of property, and that substantial and unreasonable interference is measured by the "normal person" standard:

> Under Colorado law, whether the defendant has unreasonably and substantially interfered with the plaintiff's use and enjoyment of his property is a factual question to be decided by the trier of fact. *Van Wyk*, 27 P.3d at 391. In making this determination, the trier of fact must weigh the gravity of the harm and the utility of the conduct causing the harm. *Id.* To be substantial and unreasonable, the interference generally "must be significant enough that a normal person in the community would find it offensive, annoying, or inconvenient." *Id.* (citing Restatement § 821F); *see Haas v. Lavin*, 625 F.2d 1384, 1389 (10th Cir. 1980) (quoting *Lowder v. Tina Marie Homes, Inc.*, 43 Colo. App. 225, 601 P.2d 657, 658 (Colo. Ct. App. 1979)). In other words, "'whether the various factors of interference asserted by the plaintiffs as to their use and enjoyment of their home were a substantial invasion of their interests [is] measured by the standard of their effect upon a normal person in the same or similar circumstances.'" *Cook VIII*, 181 F.R.D. at 485 (quoting *Allison v. Smith*, 695 P.2d 791, 794 (Colo. App. 1984)).

273 F. Supp. 2d at 1202 (footnote omitted).[32]

Subsequently, on May 17, 2005, this Court addressed "the first element of the nuisance claim, whether all or some of the forms of interference with the use and enjoyment of Class

---

*Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014) ("It is not necessary that all of the elements of the claim entail questions of fact and law that are common to the class, nor that the answers to those common questions be dispositive. Put differently, the predominance prong asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.") (internal quotations and citations omitted).

[32] Defendants do not acknowledge that *Cook IX* previously rejected their arguments and held that whether the interference was "substantial" and "unreasonable" *could* be addressed on a classwide basis.  *See* Defs' Class Br., at 42.  Instead, Defendants re-raise the same stale arguments that this Court rejected in *Cook IX*.  *See* Defs' Class Br., at 40 ("Plaintiffs also cannot prove the substantial and unreasonable element of their claims on a class-wide basis, because that element requires the jury to weigh the gravity of the harm and the utility of the conduct causing the harm" (internal quotations and citations omitted)); Defendants' Reply in Support of their Renewed Motion for Judgment as a Matter of Law, Doc. No. 2248, at Section II.C (arguing in 2007 that "Plaintiffs Have Not Shown A Substantial And Unreasonable Health Risk").

properties asserted by Plaintiffs are capable of resolution in the class trial[.]"  Doc. No. 1338, Ex.

E to Defs' Class Br. ("May 17, 2005 Order"), at 3.  This Court held:

> the following forms of interference asserted by Plaintiffs on behalf of the
> Property Class are legally sufficient to prove interference with Class
> members' use and enjoyment of their properties and capable of
> determination on a class-wide basis:
>
> 1.  Current human health risk arising from past or on-going exposure
>     to plutonium released from Rocky Flats as a result of one or both
>     of the Defendants' activities there
>
> …
>
> 2.  Demonstrable threat of future injury arising from one or both of
>     Defendants' activities at Rocky Flats.

May 17, 2005 Order, at 4-6.

At trial, this Court gave the jury twelve instructions related to nuisance, including two

instructions that related directly to Defendants' interference with Plaintiffs' use and enjoyment of

property, Instruction 3.6 (Elements of the Nuisance Claim) and Instruction 3.7 (First Element:

Interference with Use and Enjoyment of Property).  The jury also heard six instructions

concerning the "substantial" and "unreasonable" nature of the interference:  Instruction 3.6

(Elements of the Nuisance Claim), Instruction 3.8 (Second Element: "Substantial" and

"Unreasonable" Interference - Introduction), Instruction 3.9 (Second Element: "Substantial"

Interference – Defined), Instruction 3.10 (Second Element: "Unreasonable" Interference -

Balancing Test), Instruction 3.11 (Second Element: Unreasonable Interference: Factors

Regarding Gravity of the Harm), and Instruction 3.12 (Second Element: Unreasonable

Interference: Factors Regarding Utility of the Conduct).  The Court considered Defendants'

arguments regarding the nuisance jury instructions and set forth its rulings on these nuisance jury

instructions in Memorandum Opinion Regarding Jury Instructions, Doc. No. 2205,[33] at 34-57, where it rejected Defendants' arguments that nuisance could not be proved on a classwide basis. *See, e.g.*, *id.* at 34 ("I also rejected this proposed instruction's statement of various affirmative defenses and suggestion that liability for nuisance would be tried on an individual rather than class basis because they were contrary to the law of the case."); *id.* at 41 ("I rejected this proposed instruction because it misstated the standard for determining substantial interference under Colorado law, and improperly interjected a subjective and individual component to this determination. The instruction I prepared defining this requirement is Instruction No. 3.9.") (internal citations omitted).

Significantly, the jury *actually found* that the class "as a whole" suffered a nuisance. *See, e.g.*, Jury Instructions, Doc. No. 2121-2, at Instruction at 3.1 ("Plaintiffs assert two claims in this action on behalf of themselves and the Class members. *This means Plaintiffs' claims are made and must be proved for the Class as a whole as stated in the instructions for each claim that I am about to give you.* Individual claims by individual Plaintiffs are not to be decided in this trial."); *id.* at Instruction 3.9 ("In deciding whether any interference proven by Plaintiffs is substantial under this test, *you must consider only the magnitude or level of interference that is common to the Class as a whole*, and not any more severe level of interference that may have been suffered by some Class members but not by others."); *id.* at Instruction 3.11 ("In assessing the extent of

---

[33] Memorandum Opinion Regarding Jury Instructions, Doc. No. 2205 is available on Lexis but not Westlaw. *See* 2006 U.S. Dist. LEXIS 89515, at *59-82 (D. Colo. Dec. 7, 2006). This brief cites to slip op. page numbers for Doc. No. 2205, not the Lexis pagination.

the harm, you must also consider only harm that is common to the class as a whole, and not any more severe harm that may have been suffered by some Class members but not by others.").[34]

After trial, in *Cook XIII*, which addressed various *Daubert* motions, this Court held *again* that nuisance could be proved on a classwide basis:

> Defendants' relevancy arguments also frequently misstate the forms of interference with the use and enjoyment of property to be tried in connection with the class nuisance claims. I have previously examined Plaintiffs' asserted forms of interference and identified two that could support a finding of class-wide interference with the use and enjoyment of property: (1) alleged interference in the form of current human health risk arising from past or on-going exposure to plutonium released from Rocky Flats as a result of one or both of Defendants' activities there; and (2) alleged interference in the form of a demonstrable risk of future harm to Class properties based on objective conditions caused by Defendants' activities at Rocky Flats. May 2005 Order at 4-6.

580 F. Supp. 2d at 1087-88 (footnote omitted).[35]

Again after trial, and in support of Defendants' Renewed Motion for Judgment as a Matter of Law, Defendants argued that "Plaintiffs failed to prove a class-wide interference with use and enjoyment of property,"[36] and the Court *once again rejected* Defendants' challenge to

---

[34] Again, the jury is presumed to have followed its instructions. *See ClearOne Commc'ns*, 643 F.3d at 768; *Black*, 682 F.3d at 908.  And again, the Tenth Circuit affirmed these instructions were correct.  *Cook Appeal I*, 618 F.3d at 1145; *Cook Appeal II*, 790 F.3d at 1102.

[35] This Court also held after trial that "Defendants failed to present evidence supporting their 'removal through development' theory, but rather sought to invite the jury to speculate that such actual removal had occurred on one or more Class properties. In the absence of any supporting evidence and under the circumstances of this case, I refused to allow the jury to engage in this speculation." Memorandum Opinion Regarding Defendants' Theory of Plutonium Removal Through Real Estate Development, Doc. No. 2206, at 19, 2006 WL 3533052, at *8 (D. Colo. Dec. 7, 2006).

[36] Defendants' Renewed Motion for Judgment as a Matter of Law, Doc. No. 2220, at 2.  *See* Defendants' Memorandum in Support of Their Renewed Motion for Judgment as a Matter of Law, Doc. No. 2221, at 38-48 (arguing "Plaintiffs Did Not Show a Class-Wide Health Risk"; "Plaintiffs Failed to Introduce Evidence That All Class Members Experienced an Unreasonable Increased Health Risk as a Result of Plutonium Exposure"; "Plaintiffs Failed to Introduce Evidence That All Class Members Experienced an Unreasonable Health Risk as a Result of

class.  *See Cook XIV*, 564 F. Supp. 2d at 1197.[37]  Defendants' arguments here that "Plaintiffs

Cannot Prove Interference On A Class-Wide Basis" are nearly identical to those previously

proffered and rejected in their failed post-trial class challenges.[38]

  To summarize, this Court has *repeatedly* ruled that substantial and unreasonable

interference with Plaintiffs' use and enjoyment of property *can* be proven on a classwide basis,

this Court previously held that Plaintiffs *did indeed prove* nuisance on a classwide basis, and the

Tenth Circuit confirmed that the jury was properly instructed on Plaintiffs' nuisance claims and

that Plaintiffs have a proven nuisance verdict,[39] entered on the basis of common classwide

evidence at the classwide trial.  Defendants' arguments about the supposed impossibility of

proving substantial and unreasonable interference with Plaintiffs' use and enjoyment of property

---

Exposure to Plutonium Released by Rockwell"; and "Plaintiffs Failed to Introduce Evidence
That All Class Members Are at an Increased Risk as a Result of Future Releases from Rocky
Flats").

[37] In 2007, Defendants admitted that the Court had already rejected their challenges, but argued
that reconsideration was proper because "a motion for new trial gives the Court the opportunity
to reexamine its previous rulings."  *See* Defendants' Reply In Support Of Their Motion For A
New Trial Or, In The Alternative, For A Remittitur Of Damages, Doc. No. 2249, at 44-45
("Defendants do not dispute that, in one way or another, defendants' arguments have been
previously rejected by the Court.").  The Court denied that New Trial Motion in *Cook XIV*, 564
F. Supp. 2d at 1197, and Defendants offer no new arguments here warranting further
reconsideration.

[38] *Compare* Defs' Class Br., at 24 ("[T]he record here shows that . . . not all class members were
exposed to plutonium or incurred any health risk.") *with* Defendants' Memorandum In Support
of Their Renewed Motion for Judgment as a Matter Of Law, Doc. No. 2221, at 3 ("[P]laintiffs
failed to present evidence that all class members experienced an unreasonable increased health
risk as a result of plutonium exposure.").

[39] *See, e.g.*, *Cook Appeal I*, 618 F.3d at 1145 ("The jury was properly instructed on the elements
of a nuisance claim."); *Cook Appeal II*, 790 F.3d at 1102 ("all the elements necessary for a
judgment under state law are present and unaffected by any error identified in the first appeal, or
on remand for that matter.").

on a classwide basis[40] should be rejected as waived.[41]  Alternatively, these arguments should be

rejected on the merits for the same reasons set forth in this Court's prior rulings.[42]

---

[40] *See, e.g.*, Defs' Class Br., at 1 (claiming that "All three elements of plaintiffs' nuisance theory require individual proof, so the class cannot be certified and the previous class verdict cannot be reinstated."); Defendants' Memorandum in Support of Its Motion for a New Trial or, in the Alternative, for a Remittitur of Damages, Doc. No. 2225, at 73 (arguing in 2007 that "[t]he jury should not have been permitted to find class-wide nuisance with evidence that is not class-wide.") (rejected in *Cook XIV*, 564 F. Supp. 2d at 1197); Doc. No. 863, Defendants' Brief in Support of their Motion to Decertify the Classes, at 96 (arguing in 1996 that "The Individualized Facts And Evidence Preclude Satisfaction Of Rules 23(a) And 23(b)(3)") (decertification of property class rejected in *Cook VIII*, 181 F.R.D. at 482).

[41] *See supra*, at Section II.C.

[42] As discussed above, the jury found that all class members *were* injured, but anyway Rule 23 does not even require proof of injury to each and every class member.  *E.g.*, *Kohen v. PIMCO, LLC*, 571 F.3d 672, 676 (7th Cir. 2009) (Posner, J) ("class will often include persons who have not been injured by the defendant's conduct . . . . Such a possibility or indeed inevitability does not preclude class certification."); *In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 227 (E.D. Pa. 2012) (concluding that the inclusion of a small number of uninjured class members was not an obstacle to class certification under *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2008)); *In re Neurontin Antitrust Litig.*, MDL 1479, 2011 WL 286118, at *8 n.23 (D.N.J. Jan. 25, 2011) (same); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-01819, 2010 WL 5071694, at *4 (N.D. Cal. Dec. 7, 2010) ("the efficacy of collusive activities may vary during the course of a price fixing conspiracy"); *see id.* at *8 (certifying class where plaintiffs' experts only calculated damages for some "subperiods" of the larger class period and finding named plaintiffs adequate even though they did not have purchases during one of the sub-periods for which damages had been modeled); *In re Teva Pharms., U.S.A. v. Abbott Labs.*, 252 F.R.D. 213, 230-31 & n.39 (D. Del. 2008) (certifying class of direct purchasers of prescription drug upon plaintiffs' proof that "nearly all" members of class were impacted); *In re K-Dur Antitrust Litig.*, Civ. Action No. 01-1652(JAG), 2008 WL 2699390 (D.N.J. Apr. 14, 2008), *aff'd*, *In re K-Dur Antitrust Litig.*, 686 F.3d 197 (3d Cir. 2012), *vacated on other grounds*, *Merck & Co., Inc. v. Louisiana Wholesale Drug Co., Inc.*, 133 S. Ct. 2849 (2013) & *Upsher-Smith Laboratories, Inc. v. Louisiana Wholesale Drug Co., Inc.*, 133 S. Ct. 2849 (2013), *class certification holding reinstated*, *In re K-Dur Antitrust Litig.*, 2013 U.S. App. LEXIS 18859 (3d Cir. Sept. 9, 2013); *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 246 F.R.D. 293, 309-10 (D.D.C. 2007) (certifying class notwithstanding the existence of an uninjured class member); *In re Wellbutrin SR Direct Purchaser Antitrust Litig*, No. 04-5525, 2008 WL 1946848, at *10 (E.D. Pa. May 2, 2008) ("'Even if it could be shown that some individual class members were not injured, class certification, nonetheless, is appropriate where the antitrust violation has caused widespread injury to the class.'") (citation omitted); *In re Nifedipine Antitrust Litig.*, 246 F.R.D. 365, 369 (D.D.C. 2007) ("In order to demonstrate that common evidence exists to prove class-wide impact or injury, plaintiffs do not need to prove that every class member was actually injured."); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 252 (D. Del. 2002) ("[A] class

In addition, many of Defendants' arguments against class were rejected by the Tenth Circuit, which *affirmed* the nuisance jury instructions.[43]  Defendants continue to argue that substantial and unreasonable interference with class members' use and enjoyment of their property cannot be proven on a classwide basis because of purportedly individualized factors

can be certified even where some individual, absentee class members may later prove not to be injured"); *In re N.W. Airlines Corp. Antitrust Litig.*, 208 F.R.D. 174, 223 (E.D. Mich. 2002) ("The 'impact' element of an antitrust claim need not be established as to each and every class member; rather, it is enough if the plaintiffs' proposed method of proof promises to establish 'widespread injury to the class' as a result of the defendant's antitrust violation.") (citation omitted); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 321 (E.D. Mich. 2001) ("[C]ourts have routinely observed that the inability to show injury as to a few does not defeat class certification where the plaintiffs can show widespread injury to the class"); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 523 (S.D.N.Y. 1996) ("Even if it could be shown that some individual class members were not injured, class certification, nevertheless, is appropriate where the antitrust violation has caused widespread injury to the class.").

These holdings, and this Court's certification of this Class, are consistent with the Supreme Court's recent decision in *Wal-Mart*.  There, the Supreme Court recognized that "whether 0.5 percent or 95 percent of the employment decisions at Wal-Mart might be determined by stereotyped thinking is the essential question."  *Wal-Mart*, 131 S. Ct. at 2554 (internal quotation marks and brackets omitted).  In other words, the Supreme Court found it "essential" in considering class certification to determine whether the conduct alleged was mostly common to the class or mostly individual.  The Supreme Court decidedly did *not* say (as Defendants argue) that class certification is appropriate only where *100%* of class members are subjected to the alleged wrong.  *See, e.g.*, *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 801, 814 (7th Cir. 2012) ("There is no mathematical or mechanical test for evaluating predominance."). Recently, the Seventh Circuit discussed the certification of a class that included two categories of uninjured class members. On the one hand, there were "class members who were *not* harmed" because they evaded injury.  *Messner*, 669 F.3d at 825 (emphasis in original). On the other hand, there were class members "who *could not* have been harmed" because they were not subjected to the alleged harm and did not have valid claims.  *Id.* (emphasis in original). As to the class members who had evaded injury, the court found that they posed no obstacle to class certification.  *Id.* at 823 ("that some class members' claims will fail on the merits if and when damages are decided [is] a fact generally irrelevant to the district court's decision on class certification").  As to the second category of class members, those "immune" to injury, the court found that they could pose a problem to certification only if there were "a great many" of them. *Id.* at 825.  *See also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (*en banc*) (affirming certification of 23(b)(3) class even where a number of individual class members did not state a valid claim for relief).

[43] *Cook Appeal I*, 618 F.3d at 1145 ("The jury was properly instructed on the elements of a nuisance claim as well as the definitions of 'substantial' and 'unreasonable.'"); *Cook Appeal II*, 790 F.3d at 1102.

(*see* Defs' Class Br., at Sections IV.A, IV.B), but this argument is contrary to the Tenth Circuit's rulings that the nuisance instructions were correct, including Instruction 3.9 which sets out the "objective" nuisance standard that can be proven on a classwide basis without reference to the allegedly individual issues Defendants discuss.  In short, by affirming the nuisance instructions, the Tenth Circuit likewise affirmed the essential elements of this Court's prior class rulings which were incorporated in the nuisance instructions.

### a.      Class certification is consistent with *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).

Defendants' only pretense of a "new" argument regarding whether substantial and unreasonable interference with Plaintiffs' use of property can be proven on a classwide basis is a passing reference to *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), which Defendants cite for the uncontroversial proposition that "Rule 23 does not set forth a mere pleading standard" and that "actual, not presumed, conformance with Rule 23(a) remains . . . indispensable."  *See* Defs' Class Br., at 21, 27, 29.  But *Wal-Mart* is barely relevant to this litigation and certainly does not preclude certification of the Class as to Plaintiffs' nuisance claims.

In *Wal-Mart*, the Supreme Court considered whether, in an employment discrimination case, class certification was appropriate under Rule 23(a) and (b)(2), where "the members of the class 'held a multitude of different jobs, at different levels of Wal-Mart's hierarchy, for variable lengths of time, in 3,400 stores, sprinkled across 50 states, with a kaleidoscope of supervisors male and female), subject to a variety of regional policies that all differed.'"  *Id.* at 2557 (citation omitted).  The Court concluded that, because the respondents had "provided[d] no convincing proof of a companywide discriminatory pay and promotion policy . . . they [had] not established the existence of any common question." *Id.* at 2556-57.

The issues addressed in *Wal-Mart* were the standard for showing commonality under Rule 23(a)(2) and whether Rule 23(b)(2) was a proper basis for damages – but neither is an issue here at all.  *Wal-Mart* held that individualized proceedings were necessary because "the common questions—the reasons for the pay and promotion disparities—could not yield a common answer 'in one stroke.'"  *Wal-Mart*, 131 S. Ct. at 2551-52.  There was no way to prove liability in that particular case without a "company-wide policy of discrimination" or "a common mode of exercising discretion."  *Id.* at 2554-55; *see id.* at 2551, 2557 n.10.

In contrast, here Plaintiffs have a nuisance verdict under Fed. R. Civ. P. 23(b)(3), which the jury entered *after* this Court repeatedly held common evidence regarding the nuisance could be addressed at a class trial, *after* the class trial, and *after* the jury was instructed to consider only class-wide proof of nuisance (*see e.g.*, Jury Instructions, Doc. No. 2121-2, at Instruction 3.1, 3.9, and 3.11).  Consistent with this Court's class certification orders and jury instructions, here *the jury found that liability was proven though common evidence*.

## 2. This Court correctly held that Plaintiffs can prove damages on a classwide basis, and that Plaintiffs actually did so at trial.

Defendants claim that "Plaintiffs Cannot Prove Damages On A Class-Wide Basis."  *See* Defs' Class Br., at 43-54, Section IV.C.  The Court should reject this argument for several independent reasons:  (a) the Court has considered and rejected this argument prior to trial,[44] and as this Court has held, Plaintiffs *have already proven aggregate class nuisance damages at trial*;[45] (b) Defendants waived the arguments included in Defs' Class. Br. Section IV.C by failing

---

[44] *See Law*, 185 F.R.D. at 327 (overruling defendant's post-trial motion to decertify the Rule 23(b)(2) class after judgment in favor of plaintiffs, emphasizing that the Court "has previously rejected many of [defendant's] arguments, in orders dealing with summary judgment, decertification and motions in limine," and had specifically overruled defendant's pretrial motion to decertify the classes).

[45] *See, e.g.*, *Cook XIV*, 564 F. Supp. 2d at 1207-08.

to raise or develop these arguments in *Cook Appeal I*; (c) the jury awarded damages caused by the nuisance, not damages caused from mere "proximity" to Rocky Flats; (d) this Court correctly held that Defendants must present classwide evidence of setoff, and Defendants have waived any argument to the contrary; and (e) Defendants' objection to the aggregate class award has been waived and is incorrect.  In addition, as discussed in Section II.D, the jury's award of aggregate class damages (and class certification) is entirely consistent with *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013).

> a.     **As this Court has previously held, Plaintiffs can and did prove aggregate classwide damages.**

In *Cook IX*, this Court held, and not for the first time, that Plaintiffs could prove damages on an aggregate, classwide basis:

> Finally, Defendants continue to insist that a class-wide trial on damages is not possible because of individual issues such as exposure, dose, notice, property valuation and notice. …
>
> Plaintiffs may present evidence, consistent with evidentiary standards, and attempt to prove aggregate damages that fairly represent the collective value of the claims of individual class members in the same trial in which Defendants' liability, if any, to the Property Class is determined. Assuming Plaintiffs' compensatory damages are based solely on diminution in property value, such damages may be expressed as either a percentage reduction in the value of class members' properties caused by Defendants' allegedly tortious conduct or as an aggregate lump sum representing the total decrease in the value of class properties.
>
> If class-wide liability and damages are found by the jury, the court will then, with the assistance of counsel, determine appropriate principles and procedures for distributing the compensatory and any exemplary damages awarded. These principles and procedures will address, at a minimum, the division of damages among Property Class members, the disposition of any unclaimed funds and the measure and method of payment of attorney fees due to class counsel.

273 F. Supp. 2d at 1212 (citation omitted).

At trial, the Court gave the jury seven instructions concerning the jury's determination of damages, Instructions 3.20-3.26.  *See* Jury Instructions, Doc. No. 2121-2, at 63-73.  The jury was instructed:

> To award Plaintiffs actual damages, you must find that Plaintiffs proved by a preponderance of the evidence that: (1) the Plaintiff Class incurred actual damages as a result of the trespass and/or nuisance caused by Dow or Rockwell or both of them (as defined in Instruction Nos. 3.2 and 3.6), and (2) the amount of these actual damages.

*Id.* at Instruction 3.21.  The jury was further instructed to award aggregate class damages (*see id.* at Instruction 3.23) in the amount of diminution in the value of the Class properties:

> The diminution in property value that Plaintiffs may recover here is measured by the difference between the actual value of the Class Properties and the value these Properties would have had if Dow or Rockwell or both of them had not committed the trespass and/or nuisance proved by Plaintiffs. In other words, you must compare the actual value of the Class Properties to what their value would have been "but for" the trespass and/or nuisance, and the difference is the diminution in property value that Plaintiffs can recover as actual damages in this case.

*Id.* at Instruction 3.22.

In accordance with these instructions,[46] the jury awarded class damages against Defendants of $176,850,340 (not including prejudgment interest).  Jury Verdict Form, Doc. No. 2117, at F.13.[47]  The jury's damages award is entitled to great deference because it is within the jury's "virtually exclusive purview" to fix damages.  *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1230 (10th Cir. 2000); *Advantor Capital Corp. v. Yeary*, 136

---

[46] *See ClearOne Commc'ns*, 643 F.3d at 768; *Black*, 682 F.3d at 908.

[47] The jury found that Dow caused 30% of the damage caused by the nuisance and that Rockwell caused 70% of the damage caused by the nuisance.  Jury Verdict Form, Doc. No. 2117, at F.14. The jury also found that the "nuisance caused a diminution in the value of Class Properties in one or more specific time periods before June 7, 1989.  *Id.* at F.15.

F.3d 1259, 1266 (10th Cir. 1998) (jury is "clothed with a wide latitude and discretion in fixing damages").[48]

After trial, the Court considered and rejected Defendants' challenges to the classwide jury verdict and entered judgment on the nuisance verdict of $176.8 million.  *See Cook XIV*, 564 F. Supp. 2d at 1196-214.  Among other rulings, this Court held that Defendants waived any objection to the aggregate class award:

> First, assuming that the jury should not have been instructed to determine the aggregate decrease in value for all Class Properties, Defendants failed to object to this instruction and, in fact, actively sought for the jury to be instructed in just this manner at the close of trial. The relevant background here is that after considering the parties' briefing and proposed instructions on the jury's determination of damages at the class trial, I prepared instructions directing the jury to determine the aggregate decrease in the value of properties within the Class Area and percentage decrease in property values, if any, caused by any continuing trespass and/or nuisance by one or both Defendants. *See* Final Jury Instructions, Nos. 3.20–3.23. As is my practice, I provided these and other substantive instructions to the parties and the jury before opening arguments began, with notice that the instructions would be revised if necessary as the trial progressed. *See generally* Mem. Op. re: Jury Instructions (Doc. 2205) at 3 & n.4 (describing jury instruction process). Neither party objected at this time to the instructions directing the jury to assess any decrease in property values for all properties in the Class Area.

*Cook XIV*, 564 F. Supp. 2d at 1203.[49]  *Cook XIV* further held:

> Defendants also argue the jury's verdict on compensatory damages must be set aside because its determination of aggregate Class damages improperly includes Class members who suffered no damages or less than average damages. This is a reprise of arguments previously made by Defendants in support of their long-standing objections to a class trial of any kind on compensatory damages. I have considered and rejected these

---

[48] In addition, the jury verdict form is a matter committed to the "sound discretion of the trial court." Federal Practice & Procedure § 2505; *see also United States for Use & Benefit of Fed. Corp. v. Commercial Mech. Contractors, Inc.*, 707 F.2d 1124, 1129 (10th Cir. 1982); *Martinez v. Union Pac. R.R.*, 714 F.2d 1028, 1032 (10th Cir. 1983).

[49] Again, nothing has changed:  Defendants have *waived* any objection to the aggregate class award, and this waiver is reason enough to reject Defendants' attempt to reopen this question now.  *See generally See also* Fed. R. Civ. P. 51(d)(1); *Sharoff*, 202 F.2d at 55.

arguments on numerous occasions before, during and after trial, *see, e.g.,* May 2005 Order at 19-20; Mem. Op. re: Jury Instructions (Doc. 2205) at 62-65, and Defendants provide no grounds for me to reconsider these decisions.

564 F. Supp. 2d at 1207-08.[50]

This Court's rulings in *Cook IX* and elsewhere that Plaintiffs can prove aggregate class damages were correct. This Court's ruling in *Cook XIV* entering judgment on Plaintiffs' aggregate class damages award was correct. The Court should, consistent with its prior rulings once again enter judgment on the aggregate class damages award. *See generally* Plaintiffs' Corrected Motion for Entry of Judgment, Doc. No. 2371-1.

> **b.     Defendants waived the challenges they raise in Section IV.C of Defs' Class Br. to the classwide damages award by failing to make *any* of these arguments in *Cook Appeal I.***

As discussed above, Defendants have waived all of the arguments in Section IV.C of Defs' Class Br. by failing to make any of these arguments on appeal in *Cook Appeal I*. *See* Defendants' Opening Brief in *Cook Appeal I* (Exh. 4). Defendants did not make any arguments concerning "proximity" (*see* Section IV.C.i of Defs' Class Br.), the use of averages (*see* Section IV.C.ii), or whether Defendants are allegedly entitled to prove setoff with individual evidence (*see* Section IV.C.iii)[51], and so have waived these arguments.[52]

---

[50] *See also id.* at 1224 n.27 ("In this case, the only nuisance damages sought by Plaintiffs, and awarded by the jury, were for the diminished value of the Class Properties caused by Defendants' nuisance.")

[51] *See generally* Defendants' Opening Brief in *Cook Appeal I*.

[52] *See Seifert*, 779 F.3d at 1156; *Sheets*, 45 F.3d at 1390; *Phillips*, 956 F.2d at 954; *Petrella*, 787 F.3d 124; *Utahns for Better Transp.*, 305 F.3d at 1175; *Clark*, 590 F.3d at 1140; *Weston*, 335 F.3d at 1255.

        c.      **The jury awarded damages caused by the nuisance, not damages caused from mere "proximity" to Rocky Flats, and Defendants have waived their "proximity" argument.**

As Defendants admit, this Court has already considered and rejected Defendants' argument that Plaintiffs' damages model was allegedly insufficient to prove damages because it supposedly measured only the effect of "proximity" to Rocky Flats.  *See* Defs' Class Br., at 6.

This Court considered and rejected Defendants' "proximity" argument in *Cook IX*, and not for the first time:  "Defendants have also complained repeatedly that Plaintiffs' 'but for' model for measuring decreased property values must be rejected because it does not prove that Defendants' alleged trespass and/or nuisance, rather than mere proximity to Rocky Flats, caused the claimed diminution in value.  I disagree."  273 F. Supp. 2d at 1210.

Once again before trial, this Court held that Plaintiffs were entitled to recover for diminution in property values *caused by the nuisance*, not mere proximity to Rocky Flats.  *See* May 17, 2005 Order at 2-3 ("In order to recover damages for diminution in Class property values *caused by* the alleged nuisance…").

Defendants were permitted to present evidence at trial that any diminution in the values of property was caused not by the nuisance but by mere proximity to Rocky Flats.  *See* 273 F. Supp. 2d at 1210 n.39 ("Defendants are, of course, entitled to argue and present evidence challenging Plaintiffs' assertion that any decrease in the value of their properties was caused by Defendants' alleged trespass and nuisance, rather than by mere proximity to the Plant or other factors."); *see also* May 17, 2005 Order at 8-9.

Consistent with its prior rulings that Plaintiffs were entitled to recover damages *caused by the nuisance and not by mere proximity*, this Court expressly instructed the jury *not* to award damages resulting from mere proximity:

In determining any actual damages to be awarded in this case, *you should not consider or award any diminution in value caused solely by the proximity of the Class Area to Rocky Flats*. Instead, you must follow my directions in Instruction No. 3.22 to award damages for diminution in value you find was caused by any trespass or nuisance you find Dow or Rockwell or both of them committed.

In determining whether Plaintiffs have proved actual damages, you also should remember that Plaintiffs are not required to prove that any diminution in value caused by Dow or Rockwell's activities at Rocky Flats came into existence before or after the FBI raid or some other specific event. Instead, as stated in Instruction No. 3.22, the measure of damages to be proved by Plaintiffs is the value the Class Properties would have had "but for" any trespass or nuisance by Dow and/or Rockwell.

Jury Instructions, Doc. No. 2121-2, at Instruction 3.24.  The Court further instructed the jury:

Plaintiffs seek an award of actual damages based on the *decrease in the value of properties in the Class Area caused by the trespass and/or nuisance* committed by Dow or Rockwell or both of them. This type of actual damages is sometimes called diminution in property value.

The diminution in property value that Plaintiffs may recover here is measured by the difference between the actual value of the Class Properties and the value these Properties would have had if Dow or Rockwell or both of them had not committed the trespass and/or nuisance proved by Plaintiffs. *In other words, you must compare the actual value of the Class Properties to what their value would have been "but for" the trespass and/or nuisance*, and the difference is the diminution in property value that Plaintiffs can recover as actual damages in this case.

*Id.* at Instruction 3.22.

The jury is presumed to have followed the jury instructions,[53] including Instructions 3.22 and 3.24, and thus the jury did *not* award damages as a result of mere proximity to Rocky Flats but rather awarded damages *caused by the nuisance*.

After trial, this Court once more rejected Defendants' "proximity" argument in rejecting Defendants' *Daubert* challenges to Plaintiffs' expert testimony.  *Cook XIII*, 580 F. Supp. 2d at 1112-15; *see also id.* at 1126 n.60 ("To the extent Defendants dispute the relevance of the

---

[53] *See ClearOne Commc'ns*, 643 F.3d at 768; *Black*, 682 F.3d at 908.

Flynn/Slovic survey results based on 'mere proximity' and other arguments discussed above with respect to Dr. Radke's testimony, these arguments are rejected for the reasons stated there."). Defendants did not appeal and so have *waived* any challenges to this Court's *Daubert* rulings[54] – and thus cannot complain about any of the expert testimony that this Court admitted at trial.

Finally, in entering judgment in *Cook XIV*, this Court *again* rejected Defendants' post-trial arguments made in support of Defendants' motion for judgment as a matter of law claiming that the jury awarded allegedly damages caused by mere proximity to Rocky Flats. *See* 564 F. Supp. 2d at 1227-28 (entering judgment); Doc. No. 2221, Defendants' Memorandum in Support of Their Renewed Motion for Judgment as a Matter of Law, at 72-90 (arguing that Plaintiffs did not suffer recoverable damages because, *inter alia*, any diminution of property could have been caused by proximity to, or stigma from, Rocky Flats).

Defendants' entire "proximity" argument is wrong, waived, and does not preclude class certification.

> **d.      The Court correctly held that Defendants were required to present classwide evidence of alleged setoff, and Defendants have waived any argument to the contrary.**

Plaintiffs and Defendants agree that this Court already rejected Defendants' argument that Defendants should have been allowed to try to prove setoff with individual evidence. *See* Defs' Class Br., at 53-54.  Defendants make no new arguments, but simply complain that the Court's prior rulings were wrong.  *Id.*  Nothing has changed regarding whether setoff should have been proved on an individual or classwide basis, and the Court's prior rulings on setoff were correct.  *See*, *e.g.*, May 17, 2005 Order at 17-20; Memorandum Opinion Regarding Jury Instructions, Doc. No. 2205, at 79 ("Instruction No. 3.25 (affirmative defense of setoff): I

---

[54] *See* note 9, *supra*.

rejected Defendants' proposed revisions to this instruction because they were unnecessary. The language Defendants sought to strike and replace was sufficient and consistent with my rulings on this defense. *See* May 2005 Order at 17-19.") (underlining omitted).

In addition, Defendants *waived* this "setoff" argument by failing to appeal this Court's Instruction 3.25 or any of this Court's prior rulings on setoff. *See generally* Defendants' Opening Brief in *Cook Appeal I* (Exh. 4).[55]

#### e. Defendants' objection to the aggregate class award has been waived and is baseless.

The Court should reject Defendants' argument that "Plaintiffs Cannot Use Averages To Prove Class-Wide Damages" (*see* Defs' Class Br., at Section IV.C.ii) because Defendants have waived any objection to the aggregate class damages award and to Plaintiffs' damages methodology. Even if Defendants had not waived any argument to the contrary (and they have), the Court was correct to allow Plaintiffs to prove aggregate classwide damages.

First, the ability of the jury to award aggregate damages followed by allocation after trial among class members was affirmed by the Tenth Circuit in *Cook Appeal I*, which *rejected* Defendants' challenges to the Plan of Allocation this Court entered in *Cook XIV*:

> The Plan of Allocation simply requires the application of mathematical principles to a formula involving identifiable property records and the jury's verdict. In doing so, the Plan of Allocation directs the method of allocating damages among the individual class members, while also explaining how unclaimed funds shall be distributed. Contrary to Defendants' argument, the Plan of Allocation does not require resolution

---

[55] *See Seifert*, 779 F.3d at 1156; *Sheets*, 45 F.3d at 1390; *Phillips*, 956 F.2d at 954; *Petrella*, 787 F.3d 124; *Utahns for Better Transp.*, 305 F.3d at 1175. Relatedly, this Court's prior rulings on "setoff" are the law of the case because they were not disturbed on appeal. *See. e.g.*, *Clark*, 590 F.3d at 1140; *Weston*, 335 F.3d at 1255; *Martinez v. Roscoe*, 100 F.3d 121, 123 (10th Cir. 1996) ("The issue of whether the Regulatory Agreement can support a permanent injunction was resolved by the district court in 1993; that decision was not challenged by appeal. Accordingly, defendants are barred by the doctrine of law of the case from raising the issue in this appeal."); *Major v. Benton*, 647 F.2d 110, 112 (10th Cir. 1981).

> of complex issues or calculations. While it is true that certain class members may wish to challenge the ultimate allocation of damages to them, *the guidelines provided by the Plan of Allocation are straightforward and mechanical*. Moreover, *any such challenges would not affect the total damages owed by Defendants*, which are clearly identified in the judgment. Consequently, this court concludes the Plan of Allocation's basic formula for determining individual damages sufficiently complies with Strey and the Rule 54(b) judgment entered by the district court is final. Defendants' motion to dismiss for lack of appellate jurisdiction is therefore denied.

618 F.3d at 1138.

Second, as discussed above, Defendants have waived any objection to the aggregate class award, both by failing to object to Instructions 3.20-3.23 and by failing to appeal this Court's *Daubert* rulings.  This Court already held after trial in *Cook XIV* that Defendants *waived* any objection to the aggregate damages jury instructions.  564 F. Supp. 2d at 1203.  In addition, this Court in *Cook XIII rejected* Defendants' *Daubert* challenges to Plaintiffs' experts' testimony relating to damages.  580 F. Supp. 2d at 1110-40.  Again, Defendants did not appeal and thus have *waived* any challenges to this Court's *Daubert* rulings.[56]

Third, Defendants are in essence arguing that the jury should have found specific damages amounts for each of the thousands of class members.  The Court rejected this argument in, among other places, *Cook XIV*:

> Defendants also argue the jury's verdict on compensatory damages must be set aside because its determination of aggregate Class damages improperly includes Class members who suffered no damages or less than average damages. This is a reprise of arguments previously made by Defendants in support of their long-standing objections to a class trial of any kind on compensatory damages. I have considered and rejected these arguments on numerous occasions before, during and after trial, *see, e.g.,* May 2005 Order at 19-20; Mem. Op. re: Jury Instructions (Doc. 2205) at 62-65, and Defendants provide no grounds for me to reconsider these decisions.

---

[56] *See* Section II.C, *supra*; *see also* nn. 9, 14, *supra*.

564 F. Supp. 2d at 1207-08.[57]   The Court also explained: "From this jury finding, identification

of the members of this subclass and their corresponding properties within the Class Area is a

---

[57] *See also* May 17, 2005 Order, at 19-20 ("Implicit in the plan just stated for deciding compensatory damages for the Damages sub-class is rejection of Defendants' contention that additional individualized factors, such as individual Class member's knowledge regarding Rocky Flats and plutonium contamination; the effect, if any, this knowledge played in each Class member's property transactions; the location of individual properties within the Class area and the different types of harm to the use and enjoyment of property allegedly suffered by individual Class members, must be considered in deciding the amount of any compensatory damages to be awarded in this case. Plaintiffs have consistently stated that they are seeking to recover compensatory damages measured by the diminution in value of Class properties. This diminution in value is a function of the market, not individual Class member's reaction to the alleged trespass or nuisance. To the extent there are differences in the percentage diminution in property value caused by the trespass or nuisance based on the location of properties within the Class Area or other factors, these differences may be addressed through the use of average rates of diminution in value. Other individual damages factors alleged by Defendants, such as the different impact Rocky Flats may have had on different Class members' use and enjoyment of property, go to class determination of nuisance liability, as addressed above, and not to class determination of damages for nuisance liability."); *Cook IX*, 273 F. Supp. 2d at 1212 ("Finally, Defendants continue to insist that a class-wide trial on damages is not possible because of individual issues such as exposure, dose, notice, property valuation and notice. Plaintiffs respond that damages can and should be decided in a class-wide trial in which they will present an aggregate damage theory in percentage and perhaps dollar amount, which (if accepted by the jury) would be applied or allocated after trial under a plan or formula approved by the court…. Plaintiffs may present evidence, consistent with evidentiary standards, and attempt to prove aggregate damages that fairly represent the collective value of the claims of individual class members in the same trial in which Defendants' liability, if any, to the Property Class is determined. Assuming Plaintiffs' compensatory damages are based solely on diminution in property value, such damages may be expressed as either a percentage reduction in the value of class members' properties caused by Defendants' allegedly tortious conduct or as an aggregate lump sum representing the total decrease in the value of class properties. If class-wide liability and damages are found by the jury, the court will then, with the assistance of counsel, determine appropriate principles and procedures for distributing the compensatory and any exemplary damages awarded. These principles and procedures will address, at a minimum, the division of damages among Property Class members, the disposition of any unclaimed funds and the measure and method of payment of attorney fees due to class counsel.") (citations omitted).

Defendants again provide no grounds for reconsideration here—their damages objections are no different from their 2007 arguments that the Court rejected in *Cook XIV*.  *Compare* Defendants' Class Brief, at 49 ("The damages award that plaintiffs seek to reinstate was based entirely and impermissibly on averages.") *with* Defendants' Memorandum in Support of its Motion for a New Trial or, in the Alternative, for a Remittitur of Damages, Doc. No. 2225, at 3 ("The jury's award is improperly based upon the 'average' diminution in value suffered by class properties").

ministerial task to be accomplished as part of the damages allocation plan based on county real estate records." *Id.* at 1205.

This Court's prior rulings are correct. "The use of aggregate damages calculations is well established in federal court and implied by the very existence of the class action mechanism itself." *In re Pharm. Indus. Avg. Wholesale Price Litig.*, 582 F.3d 156, 197 (1st Cir. 2009). *See also Urethane Antitrust Litig.*, 768 F.3d at 1257 (affirming class-action verdict where the plaintiffs' expert used statistical extrapolation to approximate aggregate damages);[58] *Stender v. Archstone-Smith Operating Trust*, No. 07-CV-02503, 2015 WL 5675304, at *11 (D. Colo. Sept. 28, 2015) ("Generally speaking, aggregate damages are 'well-established' in the class action case law and '[t]he fact that damage calculations would require individualized inquiries does not defeat certification.'") (*quoting* Newberg on Class Actions § 12:2 (5th ed.)*; Anderson Living Trust v. WPX Energy Prod., LLC*, 306 F.R.D. 312, 319 (D.N.M. 2015) ("Problems in assigning damages can be overcome, and damages can be determined on a classwide basis."); *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 534-35 (6th Cir. 2008) (affirming aggregate damage award).[59]

---

[58] Defendants do not even attempt to substantively distinguish *Urethane*, nor can they. *See* Defs' Class Br., at 21 (claiming that *Urethane* is inapposite because of *Cook Appeal I*).

[59] *See also* Newberg on Class Actions §10:5 (4th ed. 2005) ("[a]ggregate computation of class monetary relief is lawful and proper"); *id.* at § 10:2 ("Individual damage issues should not, except in extraordinary situations, have any adverse effect on the propriety of aggregate class judgments as a proper means for determining the defendant's liability to the class."); *In re Sugar Indus. Antitrust Litig.*, 73 F.R.D. 322, 353 (E.D. Pa. 1976) ("Upon the establishment of such aggregate damages as may be assessed against defendants, the problem of allocations among classes and distribution within each class largely becomes a plaintiffs' problem, which should not militate against the certification of these classes."); *In re Magnetic Audiotape Antitrust Litig.*, 2001 U.S. Dist. LEXIS 7303, at *19-22 (S.D.N.Y. June 1, 2001) (certifying class based on aggregated analysis of transaction data); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 525 (S.D.N.Y. 1996) (same); *In re Nifedipine Antitrust Litig.,* 246 F.R.D. at 371 (same); *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 30 (D.D.C. 2001) (damages can be calculated in the aggregate for the class as a whole, with allocation to individual

Plaintiffs also bear a "more relaxed burden of proof" on damages than on other elements of a claim, "especially if … the defendants' conduct has made it difficult for the plaintiff to prove the precise extent of his damages." *BCS Servs., Inc. v. Heartwood*, 637 F.3d 750, 759 (7th Cir. 2011). Once the plaintiff establishes the fact of damages, as to the amount, the "wrongdoer" must "bear the risk of the uncertainty which his own wrong has created." *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264-65 (1946).[60]

---

class members done after trial); *In re Wellbutrin XL Antitrust Litig.*, No. 08-2431, 2011 WL 3563385, at *14-15 (E.D.Pa. Aug. 11, 2011) (approving aggregate damage assessment); *Teva Pharms*, 252 F.R.D. at 231 (same); *Wellbutrin SR*, 2008 WL 1946848, at *8-9 (same); *K-Dur*, 2008 WL 2699390, at *19-20  (same); *Meijer, Inc. v. Warner Chilcott Holdings Co. III Ltd.*, 246 F.R.D. 293, 310-12 (D.D.C. 2007) (same); *In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 347 (D. Mass. 2003) (same); *In re Buspirone Patent Litig.*, 210 F.R.D. 43,  58 (S.D.N.Y. 2002) (same); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 324 (E.D. Mich. 2001) ("As observed by a leading commentator on class actions: 'aggregate computation of class monetary relief is lawful and proper.'") (quoting 2 Newberg on Class Actions § 10.05).

[60] *See also Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931) ("Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts."); *Eastman Kodak Co. v. Southern Photo Materials Co.*, 273 U.S. 359, 379 (1927) ("a defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible"); *Texaco, Inc. v. Hasbrouck*, 496 U.S. 543, 573 & n.31 (1990) (standard not rigorous); *Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 484 (3d Cir. 1998) ("reasonable estimate" sufficient); *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 566-67 (1981) ("[o]ur willingness to accept a degree of uncertainty in these cases rests in part on the difficulty of ascertaining business damages as compared, for example, to damages resulting from a personal injury or from condemnation of a parcel of land. The vagaries of the marketplace usually deny us sure knowledge of what plaintiff's situation would have been in the absence of the defendant's antitrust violation. But our willingness also rests on the principle articulated in cases such as *Bigelow*, that it does not come with very good grace for the wrongdoer to insist upon specific and certain proof of the injury which it has itself inflicted"); *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 123 (1969) ("Trial and appellate courts alike must also observe the practical limits of the burden of proof which may be demanded of a treble-damage plaintiff who seeks recovery for injuries from a partial or total exclusion from a market; damage issues in these cases are rarely susceptible of the kind of concrete, detailed proof of injury which is available in other contexts.").

Here, the jury heard the testimony of Plaintiffs' damages experts, Drs. Hunsperger and Radke, whose testimony was admitted under *Daubert* under *Cook XIII*, rulings not appealed by Defendants and hence waived.

Because the judgment fixed liability against Defendants for a sum certain, Defendants have no interest in the distribution of the class damages among members of the class. "When aggregate damages for the class are awarded, the litigation is ended from the defendant's standpoint except for payment of the judgment or appeal therefrom."  3 Newberg on Class Actions § 10:17 (4th ed. 2002).  Defendants "ha[ve] no interest in how the class members apportion and distribute a damage fund among themselves."[61]  Indeed, the Tenth Circuit in *Cook Appeal I* explained:  "While it is true that certain class members may wish to challenge the ultimate allocation of damages to them, the guidelines provided by the Plan of Allocation are straightforward and mechanical. Moreover, any such challenges would not affect the total damages owed by Defendants, which are clearly identified in the judgment."  618 F.3d at 1138.

Defendants' arguments in opposition to Plaintiffs' aggregate damages award have been waived and lack merit.

---

[61] *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1258 (11th Cir. 2003); *accord Boeing Co. v. Van Gemert*, 444 U.S. 472, 481 n.7 (1980) ("The judgment stripped Boeing of any present interest in the fund. Thus, Boeing had no cognizable interest in further litigation between the class and its lawyers over the amount of the fees ultimately awarded from money belonging to the class."); *Urethane Antitrust Litig.*, 768 F.3d at 1269 ("[Defendant] has no interest in the method of distributing the aggregate damages award among the class members."); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990); *Hilao v. Estate of Marcos*, 103 F.3d 767, 786 (9th Cir. 1996) (noting that a defendant's interest is "only in the total amount of damages for which it will be liable," not "the identities of those receiving damage awards"); *Flonase*, 284 F.R.D. at 233.

3. **Certification of the prospective damages subclass is appropriate, and Defendants have waived any argument to the contrary.**

This Court should once again certify the prospective damages subclass (though this time solely as to Plaintiffs' nuisance claims in light of *Cook Appeal I* and *Cook Appeal II*) notwithstanding the untimely and waived arguments included in Section V of Defs' Class Br.

As Defendants admit, Defendants are, in effect, asking this Court to reverse its May 17, 2005 Order, which held "only damages for prospective invasions pursuant to Restatement (Second) of Torts § 930(3)(b) will be determined in the class trial." *Id.* at 15; *see also* Defs' Class Br., at 54-55.  In its May 17, 2005 Order, this Court held:

> I held that the jury at the upcoming class trial would determine aggregate damages for Class members who, pursuant to Restatement § 930(1), were entitled to seek damages for any diminution in their properties' value caused by a continuing trespass or nuisance." May 2005 Order at 15-16. I found the measure of these damages would be that stated in Restatement § 930(3)(b), that is the decrease in the value of the land caused by the continuing trespass or nuisance "measured at the time when the injurious situation became complete and comparatively enduring." Restatement § 930(3)(b).

Memorandum Opinion Regarding Jury Instructions, Doc. No. 2205, at 58-59.

Defendants are also asking this Court to reverse its holding in *Cook XIV*, where it discussed Restatement § 930 and the jury verdict at length, and held that the jury's verdict was consistent with Restatement § 930 and consistent with the May 17, 2005 Order.  564 F. Supp. 2d at 1203-1208.[62]

---

[62] *See* Restatement (Second) of Torts § 930(3)(b).  "Plaintiffs elected to seek damages for the decrease in property values caused by Defendants' continuing tortious invasions on January 30, 1990." *Cook XIV*, 564 F. Supp. 2d at 1202.  The jury found that "the injurious situation resulting from the nuisance by Dow and Rockwell became 'complete' and 'comparatively enduring' some time between January 1, 1988 and December 31, 1995." *See* Verdict Form, Doc. No. 2117, at F.11.

Defendants first attack the nuisance verdict under the pretense of making a class

argument in Section V of their brief, claiming that the Court cannot once again certify the

proposed prospective damages subclass because of a purported problem with the verdict.  *See*

Defs' Class Br. at 56 ("The problem with the verdict is this: after the class trial, the jury found

that the Election date was January 30, 1990, but found that the Compensation date was anywhere

between January 1, 1988, and December 31, 1995. Verdict Form ¶ F.11 (Dkt. 2117).").

Defendants' attack is contrary to the Tenth Circuit's mandate because the Tenth Circuit has

*affirmed* the jury's classwide nuisance verdict.  *See Cook Appeal I*, 618 F.3d at 1145-47.[63]  *See*

Defendants' Opening Brief in *Cook Appeal I.*

Defendants also claim in Section V that:

> the Court may not certify a sub-class to accept the former prospective
> damages verdict because the award was calculated based on the value of
> all class properties, rather than only those properties in the sub-class.  *See*
> Verdict Form ¶ F.11(Dkt. 2117) (calculating damages based on the
> diminished value of "Class Properties").

Defs' Class Br., at 57 (emphasis omitted).  As this Court has already held, Defendants have

waived this argument by failing to object to this language and in fact actively soliciting this

instruction:

> *First, assuming that the jury should not have been instructed to determine*
> *the aggregate decrease in value for all Class Properties, Defendants*
> *failed to object to this instruction and, in fact, actively sought for the jury*
> *to be instructed in just this manner at the close of trial.* The relevant
> background here is that after considering the parties' briefing and
> proposed instructions on the jury's determination of damages at the class
> trial, I prepared instructions directing the jury to determine the aggregate
> decrease in the value of properties within the Class Area and percentage

---

[63] *See also Cook Appeal II*, 790 F.3d at 1099-101 (holding that the nuisance verdict was not
overturned or questioned by *Cook Appeal I*); *see also id.* at 1104 ("In two separate appeals
spanning many years the defendants have identified no lawful impediment to the entry of a state
law nuisance judgment on the existing verdict.").  As discussed in Section II.B, *supra*, the class
nuisance verdict was based solely on classwide evidence.

> decrease in property values, if any, caused by any continuing trespass and/or nuisance by one or both Defendants. *See* Final Jury Instructions, Nos. 3.20-3.23. As is my practice, I provided these and other substantive instructions to the parties and the jury before opening arguments began, with notice that the instructions would be revised if necessary as the trial progressed. *See generally* Mem. Op. re: Jury Instructions (Doc. 2205) at 3 & n.4 (describing jury instruction process). *Neither party objected at this time to the instructions directing the jury to assess any decrease in property values for all properties in the Class Area.*

*Cook XIV*, 564 F. Supp. 2d at 1203.[64]

This Court should once again certify the prospective damages subclass for the reasons set forth in, among others, its May 17, 2005 Order and *Cook IV*, for purposes of entering judgment on Plaintiffs' nuisance verdict.

    **D.**    **Class certification and the jury's award of aggregate class damages are consistent with *Comcast*.**

Defendants analogize this case to *Comcast*. *See* Defs' Class Br., at 43. But *Comcast* does not help Defendants – *Comcast* is inapposite in posture and substance.

First, and most significantly, in *Comcast*, the district court had concluded that 3 of 4 theories of antitrust impact proffered by the plaintiffs could *not* be proven on a classwide basis, yet plaintiffs' classwide damages model failed to exclude the 3 theories that the district court had ruled were *not susceptible to classwide calculation*. 133 S. Ct. at 1431 & n.3. That was the problem addressed in *Comcast*. Here, in contrast, this Court ruled that damages for nuisance – the sole remaining claim – *could be* proven on a classwide basis, and the jury was instructed to find, and did find, classwide damages equal to the diminution in class property values *caused by the nuisance*. *See* Jury Instructions, Doc. No. 2121-2, at Instructions 3.22, 3.24. There is no problem here of "fit": Plaintiffs alleged *and proved* that the nuisance caused classwide damages (*see* Jury Verdict Form, Doc. No. 2117, at 4-7), and the jury found "the difference between the

---

[64] *See also* Fed. R. Civ. P. 51(d)(1); *Sharoff*, 202 F.2d at 55.

actual value of Class Properties and what their value would have been *but for* the nuisance by Dow and Rockwell" to be $176,850,340 (*id.* at 23-24).

Second, unlike *Comcast* where the lower court failed to evaluate the merits (as needed) before certification, the Court here performed multiple, full analyses of class certification before and after trial, and *the jury* evaluated the merits definitively.  The *jury* heard Defendants' arguments about causation and damages, ultimately finding that Defendants' nuisance *caused* the classwide aggregate damages awarded at trial.  *See, e.g.*, Jury Instructions, Doc. No. 2121-2, at Instructions 3.1, 3.22, 3.25.[65]

Third, unlike in *Comcast* where the court found that 3 of 4 theories of impact were not susceptible to classwide proof, here there was extensive evidence of classwide impact and damages – and the jury found that there was classwide impact.  *See* Jury Instructions, Doc. No. 2121-2, at Instruction No. 3.1 ("Plaintiffs assert two claims in this action on behalf of themselves and the Class members. This means Plaintiffs' claims are made *and must be proved for the Class as a whole as stated in the instructions for each claim that I am about to give you.*"); *see also id.* at Instructions 3.9, 3.11.  The jury also awarded damages *caused by* the nuisance.  *See* Jury Instructions, Doc. No. 2121-2, at Instructions 3.22, 3.24; Section II.C.2.c, *supra*.  The jury is presumed to have followed these instructions, and these instructions were affirmed by the Tenth Circuit.

Fourth, *Comcast* did not abrogate the "well nigh universal" rule that individualized damage questions – even assuming they exist – are no barrier to class certification.[66]  The same

---

[65] The Seventh Amendment mandates deference to the jury and consideration of all the evidence supporting the verdict.  *Bazemore v. Friday*, 478 U.S. 385, 401 (1986); *Cont'l Ore v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 133 (2000).

[66] 133 S. Ct. at 1433 (Ginsburg and Breyer, JJ., dissenting).

year *Comcast* was decided, the Supreme Court explained that "Rule 23(b)(3) . . . does *not* require

a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible

to classwide proof," but rather that "common questions '*predominate* over any questions

affecting only individual [class] members.'"[67]   *Comcast* did not break from decades of black

letter law holding that if liability and impact can be proven (as here) on a predominantly

common basis, individual questions as to damages (even if they exist) do not preclude

certification.[68]   Post-*Comcast*, numerous courts[69] have recognized that the denial of class

certification in *Comcast* is limited to its peculiar facts.[70]

---

[67] *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013).  *See also Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2412 (2014) (individualized questions do not preclude class unless they "will overwhelm common ones and render class certification inappropriate under Rule 23(b)(3)").

[68] *See, e.g.*, *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) (Sotomayor, J.) ("If defendants' argument (that the requirement of individualized proof on the question of damages is in itself sufficient to preclude class treatment) were uncritically accepted, there would be little if any place for the class action device in the adjudication of antitrust claims. Such a result should not be and has not been readily embraced by the various courts confronted with the same argument.") (citation omitted); *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 149 (3d Cir. 2002) ("The courts have repeatedly focused on the liability issues, in contrast to damage questions, and, if they found issues were common to the class, have held that Rule 23(b)(3) was satisfied.") (internal quotation omitted); *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir. 1977) ("it has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate."); *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 306 (5th Cir. 2003) ("Even wide disparity among class members as to the amount of damages suffered does not necessarily mean that class certification is inappropriate . . . , and courts, therefore, have certified classes even in light of the need for individualized calculations of damages.") (citation omitted); *Smilow v. Sw. Bell Mobile Sys.*, 323 F.3d 32, 40 (1st Cir. 2003) ("Where, as here, common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain.) (citation omitted).

[69] *E.g.*, *In re Deepwater Horizon,* 739 F.3d 790, 814-19 (5th Cir. 2014); *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 859-61 (6th Cir. 2013), *cert. denied*, 134 S. Ct. 1277 (2014); *In re Nexium (Esomeprazole) Antitrust Litig.*, 296 F.R.D. 47, 58 (D. Mass. 2013); *Reyes v. Zions First Nat'l Bank*, No. 10-345, 2013 U.S. Dist. LEXIS 136312, at *21 n.5 (E.D. Pa. Sept. 23, 2013); *Neale v. Volvo Cars of N. Am. LLC*, No. 2:10-cv-04407, 2013 U.S. Dist. LEXIS 149020, at *6-7

There is no *Comcast* issue here.  Class certification and the jury's aggregate class damage award are completely consistent with *Comcast*.[71]

## III.   <u>CONCLUSION</u>

This Court should follow *Cook Appeal II*'s mandate to "proceed to judgment on the existing nuisance verdict promptly" and be "wary of arguments that have already been rejected or forfeited."[72]   *Cook Appeal I* does not help Defendants – rather, it held that the jury was properly instructed on Plaintiffs' nuisance claims, *which weighs in favor of class certification*, not against.

Defendants have submitted a lengthy brief that largely repeats and rehashes old arguments long since rejected (often multiple times), waived, or both.  This Court should recertify the Class, including the Prospective Damages Subclass, for the reasons set forth in this Court's prior rulings, including among others *Cook IV*, *Cook VIII*, *Cook IX*, and *Cook XIV*,[73] and

---

(D.N.J. Oct. 16, 2013); *Medlock v. Host Int'l, Inc.*, No. 12-02024, 2013 WL 2278095 (E.D. Cal. May 22, 2013); *In re High-Tech Emp. Antitrust Litig.,* 289 F.R.D. 555 (N.D. Cal. 2013); *Wallace v. Powell*, No. 09-0291, 2013 WL 2042369, at *18-19 (M.D. Pa. May 14, 2013); *In re Motor Fuel Temperature Sales Practices Litig.*, 292 F.R.D. 652 (D. Kan. 2013); *Martins v. 3PD, Inc.*, No. 11-11313, 2013 WL 1320454, at *8 n.3 (D. Mass. Mar. 28, 2013).  *Cf. Manno v. Healthcare Revenue Recovery Grp.*, 289 F.R.D. 674 (S.D. Fla. 2013) (rejecting argument that *Comcast* "treads any new ground in class action law").

[70] Again, in *Comcast*, plaintiffs posited four alternative ways the challenged conduct could have inflated prices, but the trial court ruled only one was susceptible to classwide proof, and yet plaintiffs' expert used a benchmark that measured the price effects of all four acting simultaneously.  133 S. Ct. at 1433-34.  Plaintiffs thus failed to link the "*legal theory of the harmful event*" with "the economic impact *of that event*."  *Id.* at 1435 (emphasis as supplied; citation and quotation marks omitted).  In contrast, here Plaintiffs alleged and proved, and the jury found, that *the nuisance caused Plaintiffs' damages.  See* Jury Instructions, Doc. No. 2121-2, at Instructions 3.22, 3.24.  *Comcast* is nothing like this case.

[71] In *Urethane*, the Tenth Circuit considered and rejected a similar post-trial *Comcast* argument. *See* 768 F.3d 1257-59.

[72] *Cook Appeal II*, 790 F.3d at 1105.

[73] Of course, vacated class certification orders can be reaffirmed where appropriate, as here.  *See In re Oppenheimer Rochester Funds Grp. Secs. Litig.*, MDL No. 2063, 2015 U.S. Dist. LEXIS

in light of the successfully conducted class trial, the affirmed classwide jury instructions, and the class verdict, which was entered on the basis of common evidence.

Dated:  October 23, 2015

Respectfully submitted,

*/s/ Merrill G. Davidoff*

Merrill G. Davidoff
David F. Sorensen
Jennifer MacNaughton
Caitlin G. Coslett
BERGER &MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

---

141073, at *53-54 (D. Colo. Oct. 16, 2016) (Kane, J.) ("Based on the foregoing, my previous determination that the Motion for Class Certification should be granted is REITERATED and AFFIRMED."); *see also In re Blood Reagents Antitrust Litig.*, MDL No. 09-2081, Doc. No. 262, at 2-3 (E.D. Pa. Oct. 19, 2015) ("On April 8, 2015, the Third Circuit vacated and remanded this Court's Order granting plaintiffs' Motion for Class Certification on the ground that it relied on the decision of the U.S. Court of Appeals for the Third Circuit in *Behrend v. Comcast Corp.*, 655 F.3d 182 (3d Cir. 2011), which was reversed by the Supreme Court, *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) … For the reasons set forth below, the Court rejects Ortho's Daubert challenges, and recertifies the following class pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3)").  And determination of whether class certification is appropriate is vested in the discretion of this Court.  *See Clay v. Pelle*, No. 10-cv-01840, 2011 WL 843920, at *1 (D. Colo. Mar. 8, 2011) (citing *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982)).

Gary B. Blum
Steven W. Kelly
SILVER & DeBOSKEY, P.C.
1801 York Street
Denver, CO 80206
(303) 399-3000

Louise M. Roselle
Paul M. DeMarco
Markovits, Stock & De Marco, LLC
119 E. Court Street, Suite 530
Cincinnati, OH 45202
(513) 651-3700

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 23rd day of October 2015, he caused the foregoing

submission to be served via the Court's ECF system on all participating counsel.

*/s/ Merrill G. Davidoff*
Merrill G. Davidoff
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000