# Exhibit E

1

2

3

4

5

6

7                          **CLIENT:**

8                   **Ms. Meghan Guzaitis**

9                   **Kirkland & Ellis, LLP**

10                    **Chicago, IL 60602**

11                **Telephone:  312-861-2000**

12

13                     **Job No. 444557**

14

15

16

17

18

19

20

21

22

23

24

**MCCORKLE COURT REPORTERS**
800-MCCORKLE (800-622-6755)

1       **THE COURT:** As we are walking in Court, we have a
2       few, a couple of federal cases on today.  We will start
3       with the first group:  08-1224, 1226, and 1239
4       characterized collectively as Cook vs. Rockwell.  My
5       understanding is each side gets 45 minutes and you use
6       your time as you are able and keep track of it as you are
7       able if wish to say something.  You may proceed.
8       **MR. CHRIS LANDAU:** Thank you, your Honor, may it
9       please the Court.  My name is Chris Landau and I am here
10      this morning on behalf of the appellants, the Dow
11      Chemical Company and Rockwell International.  I would
12      like to reserve 10 minutes for rebuttal.
13      In this case, the class of plaintiffs has received
14      an aggregate judgment of almost a billion dollars without
15      ever having had to prove that they were actually injured
16      in any way.  We tried to address the many legal errors
17      underlining that judgment fully in our brief.  What I
18      would like to do this morning is to focus on two key
19      points that knock out the judgment in its entirety.
20      First, the district court's erroneous interpretation
21      and application of the Price Anderson Act under which
22      Plaintiff's claims arise.  And second, and related, the
23      district court's erroneous class certifications division
24      which fundamentally distorted the substantive law and the

1        In our briefs, your Honor, we focused -- we took a
2   slightly different focus which gets you to the same place
3   which is to say you don't need to focus on that last
4   clause, on unlent clause, because the previous clause
5   that incorporates the state's substantive law already --
6   the state substantive law that is incorporated into the
7   Price Anderson Act is itself subject to the normal
8   preemptive force of federal law.
9        In other words it is just like the Erie (phonetic)
10  decision that came down.
11       **THE COURT:** He'd be capable not because of express
12  preemption but --
13       **MR. LANDAU:** Correct, your Honor.
14       **THE COURT:** This field preemption is characterized?
15       **MR. LANDAU:** Well sometimes it has been
16  characterized as the field preemption but the Supreme
17  Court felt in the PG&E case and it spoke with, talked
18  about the field of nuclear safety standards being
19  preempted. But certainly whether you look at it -- you
20  know field preemption and conflict preemption are very
21  close relative and it kind of depends how broadly you
22  define the relevant field.
23       **THE COURT:** If you called it field preemption, you
24  wouldn't have to get into a specific inquiry would you

1         about whether there is a conflict between the federal

2         standard and state standard.  And in at least one of the

3         circuit court cases, I think, did some of that analysis,

4         but if you determine that federal safety standards occupy

5         the fields then if the incorporated state law, to your

6         point, I think, the incorporated state law involves

7         federal safety standards, it's over; isn't it?

8             **MR. LANDAU:**  You are precisely right, your Honor,

9         that's where the rubber hits the road in different -- in

10        field preemption and conflict preemption.  Conflict

11        preemption you used to be able to identify a specific

12        federal error in respect there is a conflict.  Field

13        preemption, once you identify the relevant field you

14        don't need to have a federal standard on point because

15        that field, even if there is an act or something in the

16        field that itself still keeps the state law out of there.

17            **THE COURT:**  So your theory is not implied preemption

18        nor is it expressed preemption, its field preemption?

19            **MR. LANDAU:**  It really is applied conflict

20        preemption, your Honor, and I guess, it is at the

21        intersection of field preemption and conflict preemption.

22        Let me say one thing.  The Supreme Court and this court

23        in the Wyoming Case and in the Choke Case (phonetic) have

24        very clearly said that the fact that there is some

1      expressed preemptive language doesn't negate the

2      existence of conflict or field preemption.  We certainly,

3      in this case --

4      **THE COURT:**  Where do you seven documents fit into

5      the field preemption argument?  Those are specific

6      standards, aren't they, that you allege?

7      **MR. LANDAU:**  Yes, your Honor.

8      **THE COURT:**  How do they fit into this argument?

9      **MR. LANDAU:**  We believe that this court doesn't need

10     to reach the broader issue of field preemption because

11     there actually is conflict preemption here with respect

12     to safety standards.  There are specific safety

13     standards.  There are numerical emission standards for

14     plutonium that are in, that are promulgated here.  And I

15     refer to court, you can see this is Supplemental Appendix

16     Page 445, 463, and 573 each of those pages has a

17     numerical table with specific emission standards for

18     plutonium.

19     And it is different for plutonium 238, 239, 240 and

20     so, your Honor, to pose your question we presented below

21     these standards that go back, you know they changed over

22     time.  They started in the '50s and we stood on an expert

23     account, Mr. Frasier, who talked about the emission

24     standards going back to the '50s.  Certainly here, like

1           the '60s, the first one I mentioned is 445, with the

2           numerical table of offsite standard that promulgated in

3           '63, that was reaffirmed in '68, and then in '81.  There

4           are specific numerical standards.

5                And our point, your Honor, is to say that to the

6           extent that the emissions that are issued here were

7           within these federal standards, plaintiff cannot say the

8           Price Anderson Act claim cannot be a matter of law.  That

9           is the basic preemption point that five circuits have

10          accepted.  And the district court, in this case, your

11          Honor, refused to even get into this issue of the

12          standards because the district court said:  I don't think

13          these standards have any legal affect as a matter of law.

14          I don't accept your preemption arguments.  I think the

15          district courts can argue, focus too narrowly on that

16          unlent clause that you, Judge Murphy, started out with

17          which, you know, is a natural place to start in a

18          statute, certainly.

19               But I think he's focused on that and focused on the

20          word 'succession' led him to not focus on the fact that

21          the state law that is incorporated in the first place is

22          itself a budgeted reaction.  Just as when federal courts

23          apply state law under the Erie (inaudible) then that

24          state law doesn't magically become un-preempted when it