# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-00181-JLK

---

MERILYN COOK, *et al.*,

       Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

       Defendants.

---

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, PRELIMINARY APPROVAL OF PROPOSED PLAN OF ALLOCATION, APPROVAL OF PROPOSED FORMS AND MANNER OF NOTICE TO THE CLASS, APPROVAL OF PROPOSED CLAIM FORM, APPOINTMENT OF ESCROW AGENT, APPOINTMENT OF SETTLEMENT AND CLAIMS ADMINISTRATOR, AND APPROVAL OF PROPOSED SCHEDULE**

---

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................1

II.  BACKGROUND ................................................................................................2

III.  THE SETTLEMENT AGREEMENT ...............................................................7

IV.  THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY
APPROVED ......................................................................................................10

    A.  The Settlement Meets the Standards for Preliminary Approval ...........10

        1.  The Proposed Settlement Was Fairly And Honestly Negotiated..............11

        2.  Serious Disputed Questions Of Law And Fact Remain...........................12

        3.  The Value Of An Immediate Recovery Outweighs The Possibility
Of Future Relief After Further Litigation ...................................................14

        4.  Plaintiffs Believe That The Settlement Is Fair And Reasonable ..............15

        5.  The Settlement Provides Class Members With The Opportunity To
Opt Out..............................................................................................17

V.  THE COURT SHOULD APPROVE PLAINTIFFS' PROPOSED PLAN OF
ALLOCATION ..................................................................................................17

VI.  THE COURT SHOULD APPROVE PLAINTIFFS' PROPOSED NOTICE PLAN
AND FORMS OF NOTICE, WHICH WILL PROVIDE THE "BEST NOTICE
PRACTICABLE" TO MEMBERS OF THE CLASS ......................................19

    A.  Proposed Forms of Notice .....................................................................20

    B.  Proposed Claim Form ............................................................................20

    C.  Proposed Notice Plan.............................................................................21

VII.  THE COURT SHOULD APPOINT THE HUNTINGTON NATIONAL BANK
AS ESCROW AGENT ......................................................................................25

VIII.  THE COURT SHOULD APPOINT HEFFLER CLAIMS GROUP AS
SETTLEMENT AND CLAIMS ADMINISTRATOR......................................25

IX.  PROPOSED SCHEDULE LEADING UP TO AND INCLUDING THE
FAIRNESS HEARING.......................................................................................26

X.  CONCLUSION..................................................................................................30

i

# TABLE OF AUTHORITIES

## CASES

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  No. 06-MD-1775, 2015 WL 5918273 (E.D.N.Y. Oct. 9, 2015) ............................................. 28

*In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Products Liab. Litig.*,
  No. 3:11-CV-02784-JMC, 2015 WL 1862848 (D.S.C. Apr. 23, 2015) ................................ 26

*Cook v. Rockwell Int'l*,
  151 F.R.D. 378 (D. Colo. 1993) ................................................................................... 3, 17

*Cook v. Rockwell Int'l*,
  564 F. Supp. 2d 1189 (D. Colo. 2008) .............................................................................. 4

*Cook v. Rockwell Int'l*,
  618 F.3d 1127 (10th Cir. 2010) ........................................................................................ 4

*Cook v. Rockwell Int'l*,
  133 S. Ct. 22 (U.S. Jun. 25, 2012) ................................................................................... 4

*Cook v. Rockwell Int'l*,
  13 F. Supp. 3d 1153 (D. Colo. 2014) ............................................................................... 4

*Cook v. Rockwell Int'l*,
  790 F.3d 1088 (10th Cir. 2015) .................................................................................. 5, 12

*In re Crocs, Inc. Sec. Litig.*,
  No. 07-CV-02351-PAB-KLM, 2013 WL 4547404 (D. Colo. Aug. 28, 2013) ............ 12, 14, 24

*In re Crocs, Inc. Sec. Litig.*,
  306 F.R.D. 672 (D. Colo. 2014) ..................................................................................... 19

*DeJulius v. New Eng. Health Care Emp.'rs  Pension Fund*,
  429 F.3d 935 (10th Cir. 2005) ....................................................................................... 28

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) .................................................................................................. 19-20

*Hashw v. Dep't Stores Nat'l Bank*,
  No. CV 13-727 (RHK/BRT), 2016 WL 306260 (D. Minn. Apr. 26, 2016) ......................... 26

*Hershey v. ExxonMobil Oil Corp.*,
  No. 07-1300-JTM, 2012 WL 5306260 (D. Kan. Oct. 26, 2012) ......................................... 28

*Horton v. Leading Edge Mktg. Inc.*,
    No. 04-CV-00212-PSF-CBS, 2007 WL 2472046 (D. Colo. Aug. 28, 2007) ........................ 28

*Jones v. Nuclear Pharmacy, Inc.*,
    741 F.2d 322 (10th Cir. 1984) ............................................................................. 11, 12, 14, 15

*In re King Res. Co. Sec. Litig.*,
    420 F. Supp. 610 (D. Col. 1976) ............................................................................................ 14

*Lambert v. Buth-Na-Bodhaige, Inc.*,
    No. 2:14-CV-00514-MCE, 2015 WL 4602942 (E.D. Cal. July 29, 2015) ............................ 26

*Law v. Nat'l Collegiate Athletic Ass'n*,
    108 F. Supp. 2d 1193 (D. Kan. 2000) .................................................................................... 19

*Lucas v. Kmart Corp.*,
    234 F.R.D. 688 (D. Colo. 2006) ................................................................................... *passim*

*Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*,
    No. 09-CV-01543-REB-KMT, 2010 WL 5387559 (D. Colo. Dec. 22, 2010) ...................... 27

*McCabe v. Six Continents Hotels, Inc.*,
    No. 12-CV-04818 NC, 2015 WL 3990915 (N.D. Cal. June 30, 2015) .................................. 26

*Miller v. Basic Research, LLC*,
    No. 2:07-CV-871 TS, 2011 WL 818150 (D. Utah Mar. 2, 2011) .......................................... 24

*In re Motor Fuel Temperature Sales Practices Litig.*,
    258 F.R.D. 671 (D. Kan. 2009) ............................................................................................ 16

*In re Motor Fuel Temperature Sales Practices Litig.*,
    279 F.R.D. 598 (D. Kan. 2012) ............................................................................................ 24

*Nakkhumpun v. Taylor*,
    No. 12-CV-01038-CMA-CBS, 2015 WL 6689399 (D. Colo. Nov. 3, 2015) ....... 10, 16, 24, 25

*In re New Mexico Nat. Gas Antitrust Litig.*,
    607 F. Supp. 1491 (D. Colo. 1984) ...................................................................................... 24

*Nieberding v. Barrette Outdoor Living, Inc.*,
    No. 12-CV-2353-DDC-TJJ, 2015 WL 1645798 (D. Kan. Apr. 14, 2015) ............................ 15

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*,
    910 F. Supp. 2d 891 (E.D. La. 2012) .................................................................................... 29

*Oppenlander v. Standard Oil Co. (Indiana)*,
    64 F.R.D. 597 (D. Colo. 1974) ............................................................................................ 15

*Pilego v. Los Arcos Mexican Rests., Inc.*,
   No. 14-cv-01686-RM-KMT, 2016 WL 471278 (D. Colo. Feb. 8, 2016) .............................. 11

*Rhodes v. Olson Assocs., P.C.*,
   308 F.R.D. 664 (D. Colo. 2015) ..................................................................................... 10, 11

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
   314 F.3d 1180 (10th Cir. 2002) ......................................................... 11, 12, 14, 15

*Seiffer v. Topsy's Int'l, Inc.*,
   70 F.R.D. 622 (D. Kan. 1976)................................................................................ 15

*Smith v. MCI Telecomms. Corp.*,
   No. 87-2110- EEO, 1993 WL 142006 (D. Kan. Apr. 28, 1993)............................................ 19

*Sollenbarger v. Mountain States Tel. and Tel. Co.*,
   121 F.R.D. 417 (D.N.M.1988) .............................................................................. 20

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016) .......................................................................... 26

*Tennille v. W. Union Co.*,
   785 F.3d 422 (10th Cir. 2015) ..................................................................... 12, 23

*Tripp v. Berman & Rabin, P.A. et al*, No. 14-CV-2646-DDC-GEB,
   2016 WL 3615572 (D. Kan. July 6, 2016) ............................................................. 28

*Tuten v. United Airlines, Inc.*,
   41 F. Supp. 3d 1003 (D. Colo. 2014)..................................................................... 27

## STATUTES & RULES

Fed. R. Civ. P. 23 ................................................................................................. *passim*

## OTHER AUTHORITIES

*Newberg on Class Actions* (5th ed. 2015)................................................... 10, 11, 24, 28

## I.    <u>INTRODUCTION</u>

Class representatives Merilyn Cook, Richard and Sally Bartlett, and William and Delores Schierkolk[1] (collectively, "Plaintiffs" or "Class Representatives") submit this Memorandum in support of their Motion seeking:

1)    Preliminary approval by the Court of a proposed Settlement Agreement between Plaintiffs and Rockwell International Corporation ("Rockwell") and The Dow Chemical Company ("Dow") (collectively, "Defendants"), dated May 18, 2016 ("Settlement Agreement", which is attached as Exhibit 1);

2)    Preliminary approval of the proposed Plan of Allocation of the Settlement Fund;

3)    Approval of the proposed forms and manner of notice to the Class;

4)    Approval of the proposed claim form;

5)    The establishment of a proposed schedule leading up to and including the Fairness Hearing;

6)    Appointment of The Huntington National Bank as Escrow Agent; and

7)    Appointment of Heffler Claims Group as Settlement and Claims Administrator.

The proposed $375 million Settlement is an extraordinary result for the Class.[2]  The Settlement Agreement was entered into after more than 26 years of litigation, including a trial that lasted more than four months in 2005-06, two separate appeals in the Tenth Circuit Court of Appeals, and two rounds of briefing in connection with two separate petitions for writs of certiorari seeking review by the United States Supreme Court.  The Settlement Agreement is the

---

[1] Delores Schierkolk is deceased, but William Schierkolk is her heir and representative.

[2] The "Class" or "Property Class" includes all persons and entities who have not previously opted out or who do not timely opt out of the class who owned, as of June 7, 1989, an interest (other than mortgagee and other security interests) in real property situated within the Property Class Area, exclusive of governmental entities, defendants, and defendants' affiliates, parents, and subsidiaries.  *See* Order Certifying Settlement Class, Doc. No. 2396, at 1-2.  The Property Class Area is a geographic area near the former Rocky Flats Nuclear Weapons Plant in Colorado; its boundary is portrayed in the map attached as Appendix A to the Order Certifying Settlement Class, Doc. No. 2396 (Plaintiffs have moved to substitute a clearer map; the map filed as Appendix A to the Order Certifying Settlement Class was inadvertently cut off).

start of the final chapter in what has been, by any measure, an exceptionally long, complex, and hard-fought case that carried substantial risk for the Class. Viewed in light of the long history of the litigation, and the risks that remained at the time of settlement, a cash settlement of $375 million, which will substantially exceed the jury's award of compensatory damages even after all costs, expenses and fees awarded are deducted,[3] represents an extraordinary result for the Class.

For the reasons set forth below, the Settlement Agreement plainly satisfies the standards for preliminary approval set forth by Rule 23 and the Tenth Circuit.

Plaintiffs also request that the Court approve the proposed forms and manner of notice to the Class, approve the proposed Plan of Allocation, approve the proposed Claim Form, appoint Heffler Claims Group as Settlement and Claims Administrator, and appoint The Huntington National Bank as Escrow Agent. In addition, Plaintiffs request that the Court adopt the proposed schedule setting forth dates and deadlines up through the Fairness Hearing.

Plaintiffs conferred with Defendants in accordance with the United States District Court for the District of Colorado Local Rule 7.1(a). Plaintiffs have sent Defendants copies of the materials filed in connection with this motion, including most or all of the exhibits, and Defendants report that they will submit a written response to the Court next week.

## II.  **BACKGROUND**

Plaintiffs filed their initial complaint on January 30, 1990, asserting Colorado nuisance and trespass claims, as well as claims under the federal Price-Anderson Act ("PAA"), arising from Defendants' alleged releases of plutonium from the former Rocky Flats nuclear weapons production plant. In 1993, the District Court certified the "Property Class" pursuant to Fed. R. Civ. P. 23(b)(3), defined as "[a]ll persons and entities owning an interest (including mortgagee

---

[3] *See* Jury Verdict Form, Doc. No. 2117 at 24.

and other security interests) in real property situated within the Property Class Area, exclusive of governmental entities, defendants, and defendants' affiliates, parents, and subsidiaries" as of June 7, 1989 (the day after the FBI raid of Rocky Flats).  *See Cook IV*, 151 F.R.D. 378, 389 (D. Colo. 1993).  Several years of discovery followed, involving document review, extensive motion practice, the exchange of numerous expert reports followed by expert depositions, and numerous fact depositions.

After the Court denied Defendants' motions for class decertification, motions for summary judgment, and *Daubert* motions, and after extensive pretrial briefing of numerous issues, the Court conducted a four-month jury trial, which commenced on October 3, 2005.  *See* Doc. No. 1495.  During the trial, the jury heard testimony from forty-two lay and expert witnesses and saw more than 1,000 exhibits.  After deliberating for seventeen days, the jury returned a verdict on February 14, 2006, finding for Plaintiffs and the Class on their nuisance and trespass claims and awarding compensatory damages to the Class for properties in each of three categories:  residential, commercial, and vacant land.  *See* Jury Verdict Form, Doc. No. 2117. For each category, the jury found a specific percentage diminution in value that was caused by the nuisance and trespass:  53.03% for commercial properties; 7% for residential properties; and 30% for vacant land.  *See id.* at 24.  The jury found that Defendants caused a reduction in the aggregate value of the Class Properties of $176,850,340.  *Id.* at 15, 24.  Based on their findings of diminished value for each property category, the jury awarded 3.196% of the total compensable nuisance damages to commercial properties; 81.537% to residential properties; and 15.267% to vacant land.  *See id.* at 24.

After the trial, the District Court denied Defendants' motions requesting that the District Court enter judgment in favor of Defendants or order a new trial, and in 2008, the District Court

3

entered final judgment in favor of Plaintiffs on their claims arising under the PAA and added interest and punitive damages.  *See Cook XIV*, 564 F. Supp. 2d 1189 (D. Colo. 2008); Final Judgment, Doc. No. 2264.

Defendants appealed, and the Tenth Circuit Court of Appeals in 2010 vacated the judgment.  The Tenth Circuit held that the PAA, a federal law, required Plaintiffs to prove additional and more severe harm than would be required under Colorado state nuisance law.  *See Cook v. Rockwell Int'l*, 618 F.3d 1127, 1153 (10th Cir. 2010) ("*Cook Appeal I*").  The Tenth Circuit also ruled against any punitive damages and reversed the District Court's class certification ruling.  *Id.* at 1149-52.  The Tenth Circuit found, however, that "[t]he jury was properly instructed on elements of a [state] nuisance claim as well as the definitions of 'substantial' and 'unreasonable.'"  *Id.* at 1145.

Plaintiffs then filed a petition for a writ of certiorari requesting that the United States Supreme Court review *Cook Appeal I*, which was denied.  133 S. Ct. 22 (U.S. Jun. 25, 2012) (No. 10-1377).

On remand, the District Court directed the parties to submit briefs about the issue of whether Plaintiffs' nuisance claims were preempted by the PAA.  Plaintiffs argued that their claims under Colorado nuisance law were not preempted, Defendants argued the opposite, and this Court ruled in favor of Defendants, finding that Plaintiffs' state law nuisance claims were preempted by the PAA, and that Plaintiffs could not pursue their case other than by trying to recover under the PAA (with the extra requirements imposed by the Tenth Circuit Court of Appeals in *Cook Appeal I*).  *Cook XV*, 13 F. Supp. 3d 1153, 1160-61 (D. Colo. 2014).

Plaintiffs appealed to the Tenth Circuit, which reversed, holding that the PAA "does not preempt and preclude a freestanding state law nuisance claim when a nuclear incident is alleged

4

but unproven," and further determining that the Tenth Circuit in *Cook Appeal I* "did not specifically preclude the district court from entering a new judgment predicated on an error-free state law nuisance verdict." *Cook v. Rockwell Int'l*, 790 F.3d 1088, 1103 (10th Cir. 2015) ("*Cook Appeal II*"). Defendants subsequently filed a petition for certiorari seeking Supreme Court review of *Cook Appeal II*, No. 15-791 (U.S. Dec. 17, 2015), and Plaintiffs filed an opposition and conditional cross-petition seeking review of *Cook Appeal I* in the event the Supreme Court were to accept review of *Cook Appeal II.* No. 15-911 (U.S. Jan. 15, 2016).

On August 4, 2015, Plaintiffs filed a Motion for Entry of Judgment for the nuisance verdict, and filed a Corrected Motion for Entry of Judgment on August 26, 2015 and sought re-certification of the class. On September 10, 2015, Defendants filed their Opposition to Plaintiffs' Motion for Entry of Judgment, and Plaintiffs responded on October 23, 2015. In their four separate briefs filed in opposition to Plaintiffs' Motion for Entry of Judgment, Defendants argued that the District Court should not grant Plaintiffs' Motion for Entry of Judgment for four reasons: (1) Defendants argued that the case cannot proceed as a class action because Plaintiffs cannot meet the requirements of Fed. R. Civ. P. 23; (2) Defendants argued that there were allegedly applicable federal nuclear safety standards that allegedly conflict with and preempt Colorado tort law; (3) Defendants argued that the Tenth Circuit had not addressed alleged trial errors and the District Court's erroneous rulings allowing Plaintiffs to introduce into the trial purportedly irrelevant and prejudicial evidence and argument relating to indemnification and alleged government misconduct; and (4) Defendants argued that there was a serious mistake in the original calculation of interest, and disputed Plaintiffs' calculation of interest for the period between 2008 and today. *See* Doc. Nos. 2373, 2374, 2376, 2377. Also on September 10, 2015, Defendants filed a Motion re Standards requesting that the Court "set aside the jury verdict in

plaintiffs' favor on the ground that (1) the federal standards identified in Part Two establish defendants' duty of care with respect to the plutonium releases on which plaintiffs base their claim; and (2) those federal standards conflict with, and therefore preempt, Colorado nuisance law insofar as that law would permit recovery without proof that defendants violated the duty of care set forth in those federal standards." Doc. No. 2378, at 1. On October 23, 2015, Plaintiffs opposed Defendants' Motion re Standards and filed reply briefs addressing Defendants' oppositions to Plaintiffs' Motion for Entry of Judgment. Plaintiffs disputed each of Defendants' arguments and argued that the Court should re-certify the class and enter judgment on Plaintiffs' existing nuisance verdict. *See* Doc. Nos. 2381, 2382, 2383, 2384. Plaintiffs' Motion for Entry of Judgment and Defendants' Motion re Standards were pending before the District Court at the time the Settlement was reached.

The parties also engaged in settlement discussions, with the assistance of a mediator, the Honorable Layn Phillips, former United States District Judge. After months of extensive negotiations, on May 18, 2016, the parties executed a Settlement Agreement, jointly notified the United States Supreme Court of the Settlement, and stipulated to dismissal of the pending petitions for certiorari.[4] This Settlement Agreement is the product of extensive arm's-length settlement negotiations over more than seven months by counsel for both sides that were fully conversant with the extensive history of this case and the risks (including risks of additional substantial delay) that lay ahead.

---

[4] *See* Stipulation to dismiss the petition for a writ of certiorari, Case No. 15-911 (U.S. May 19, 2016) (docket available at http://www.supremecourt.gov/search.aspx?filename=/docketfiles/15-911.htm). On May 19, 2016, the Supreme Court dismissed the petitions. Case No. 15-911 (U.S. May 19, 2016).

III.     **THE SETTLEMENT AGREEMENT**

The Settlement provides an extraordinary monetary payment to the Class in exchange for a class-wide release.  The Settlement Agreement's key terms are discussed below.

The Class will receive $375 million in cash from Defendants and/or their indemnitor Department of Energy ("DOE").  Settlement Agreement, ¶ 2(c).  Dow's payment obligation is $131,250,000 (35% of the Settlement amount), and Rockwell's is $243,750,000 (65% of the Settlement amount).  *Id*.  The full amount will be paid no later than July 28, 2017.  *Id*.

On June 1 and 2, 2016 Defendants paid a total of $2.5 million into an independent escrow account pursuant to Settlement Agreement, ¶ 2(a).  The $2.5 million is available to Plaintiffs upon preliminary approval of the Settlement by the Court, to be used for costs of notice and administration incurred in connection with the final approval of the settlement.  *Id*.  If the actual costs of notice and administration incurred prior to final settlement approval exceed $2.5 million, this amount will be replenished and made available to Plaintiffs upon a showing of good cause, up to a maximum of $10 million.  *Id*.

If the District Court enters an order granting final approval of the Settlement sooner than one year following the date the Court enters the Preliminary Approval Order, then within fifteen (15) business days following entry of such order Dow and Rockwell shall make, or cause to made, the following payments by wire transfers to an agreed-upon escrow account: Dow will pay, or cause to be paid, $4,000,000; Rockwell will pay, or cause to be paid, $4,000,000.  Settlement Agreement, ¶ 2(b).  Such funds may, with District Court approval, be drawn upon to pay out-of-pocket litigation costs and expenses previously incurred by Class Counsel, but shall not be drawn upon for any counsel fees.  *Id*.

Payment of the remainder of the $375 million settlement amount shall be made into the escrow account at the earlier of: (i) one year following the date the Court enters the Preliminary

Approval Order; (ii) July 28, 2017; or (iii) ten (10) business days from the date on which the

United States Department of Energy ("DOE") satisfies its nuclear hazards indemnification

obligations to Defendants by transferring to Defendants $375,000,000.  *See* Settlement

Agreement, ¶2(c).  Thus, the full amount may be paid before July 28, 2017, but no later than that

date.

      The Settlement Agreement, if approved, will be binding on Defendants, Plaintiffs, and

the Class, which is defined as "all persons and entities who have not previously opted out or who

do not timely opt out of the class and who owned, as of June 7, 1989, an interest (other than

mortgagee and other security interests) in real property situated within the Property Class Area

(defined below), exclusive of governmental entities, Defendants, and Defendants' affiliates,

parents, and subsidiaries."  *See* Order Certifying Settlement Class, Doc. No. 2396, at 1-2.  The

Property Class Area is a geographic area near the former Rocky Flats Nuclear Weapons Plant in

Colorado; its boundary is portrayed in the map attached to the Order Certifying Settlement Class

as Appendix A.  *Id.*[5]

      "Settlement Class Members" means each and every member of the Settlement Class.

"Class Counsel" means counsel for the Class Representatives and Settlement Class Members.

Defendants have stipulated to certification of the Settlement Class, subject to the reservation of

rights stated in Paragraph 17 of the Settlement Agreement and contained in the separate

stipulation.  Settlement Agreement, ¶ 1; *see also* Stipulation re Certification of Settlement Class,

Doc. No. 2393.  Excluded from the Class are governmental entities, Defendants, and Defendants'

---

[5] Plaintiffs are filing today a motion to replace the map attached as Appendix A to the
Court's Order Certifying Settlement Class, Doc. No. 2396 with a clearer, more complete map;
the map originally attached as Appendix A to the Order Certifying Settlement Class was
inadvertently cut off.

8

affiliates, parents, and subsidiaries.  Settlement Agreement, ¶ 1; Stipulation re Certification of Settlement Class, Doc. No. 2393, at ¶ 3.

On May 19, 2016, the Court certified the Class for settlement purposes pursuant to Rule 23(b)(3).  *See* Order Certifying Settlement Class, Doc. No. 2396.

The Settlement Agreement provides for the release of Defendants and any past, present and future parents, subsidiaries, divisions, affiliates, joint ventures, stockholders, officers, directors, management, supervisory boards, insurers, indemnitors (including the United States Department of Energy or "DOE"), general or limited partners, employees, agents, trustees, associates, attorneys and any of their legal representatives or any other representatives thereof (and the predecessors, heirs, executors, administrators, successors and assigns of each of the foregoing) (the "Released Parties") from any and all manner of claims, rights, debts, obligations, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, including costs, expenses, penalties and attorneys' fees, accrued in whole or in part, in law or equity, that the Plaintiffs and Settlement Class Members (including any of their past, present or future officers, directors, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, joint ventures, subsidiaries, heirs, executors, administrators, predecessors, successors and assigns, acting in their capacity as such) (collectively the "Releasors") ever had, now have or hereafter can, shall or may have, directly, representatively, derivatively or in any other capacity, arising out of or relating in any way to the Released Parties' conduct in connection with Rocky Flats, including without limitation any claim that was alleged or could have been alleged in this suit (the "Released Claims"), *except that* the Settlement Class Members and the Plaintiffs do not release claims for

actual bodily injury, nor claims unrelated to the allegations in the complaint such as pension, or product liability or contract claims or claims of former Rocky Flats workers under Workman's Compensation or similar laws or regulations.  Releasors also covenant and agree that each shall not sue or otherwise seek to establish or impose liability against any Released Party based, in whole or in part, on any of the Released Claims, regardless of whether or not any Releasors objected to the Settlement.  Settlement Agreement, ¶ 7.

The entire Settlement is subject to Court approval, and shall be deemed canceled and rescinded if the Settlement Agreement cannot be finalized as provided in Paragraph 3(d) of the Settlement Agreement.  Settlement Agreement ¶ 10.  If more than a specified percentage of Class members timely opt out of the Class, Defendants in their sole discretion shall have the right to rescind the Settlement Agreement.  *Id.*

## IV.   THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A.   The Settlement Meets the Standards for Preliminary Approval

Under Fed. R. Civ. P. Rule 23(e), a class action settlement requires the Court's approval. At the preliminary approval stage, "the Court makes a preliminary determination regarding the fairness, reasonableness, and adequacy of the settlement terms."  *Rhodes v. Olson Assocs., P.C.*, 308 F.R.D. 664, 666 (D. Colo. 2015).  "The purpose at the preliminary approval stage is not to make a final determination of the proposed settlement's fairness.  Thus, 'the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval stage.'"  *Nakkhumpun v. Taylor*, No. 12-CV-01038-CMA-CBS, 2015 WL 6689399, at *3 (D. Colo. Nov. 3, 2015) (quoting *Newberg on Class Actions* at § 13:13 (5th ed. 2015)).  If the Court grants preliminary approval, it directs notice to the class and sets a final approval hearing, during which it hears any timely and properly made objections to the proposed settlement and considers whether the settlement should receive final approval.  *See Lucas v.*

*Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006); *Newberg on Class Actions* at § 13:10 (5th ed. 2015).

At the final approval stage, Fed. R. Civ. P. 23(e)(2) requires a finding that the proposed class action settlement is "fair, reasonable and adequate," and the factors considered in this analysis can serve as a useful guide at the preliminary approval stage as well. *See Pilego v. Los Arcos Mexican Rests., Inc.*, No. 14-cv-01686-RM-KMT, 2016 WL 471278, at *8 (D. Colo. Feb. 8, 2016); *Rhodes*, 308 F.R.D. at 667; *Lucas,* 234 F.R.D. at 693. In the Tenth Circuit, courts analyze the following factors in determining whether this standard is met: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984); *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). The proposed Settlement meets each of these four prongs.

### 1.   The Proposed Settlement Was Fairly And Honestly Negotiated

Courts are required to analyze "whether the proposed settlement was fairly and honestly negotiated." *Jones*, 741 F.2d at 324; *Rutter*, 314 F.3d at 1188.

Courts "may presume the settlement to be fair, adequate, and reasonable" where it results "from arm's length negotiations between experienced counsel after significant discovery had occurred." *Lucas*, 234 F.R.D. at 693 (citation omitted). Here, the Settlement Agreement was reached after far more than "significant discovery" – the parties entered into the Settlement Agreement after 26 years of litigation, including complete discovery, extensive briefing, a trial lasting more than 4 months, two separate appeals in the Tenth Circuit Court of Appeals, and two

11

rounds of briefing in connection with two separate petitions for writs of certiorari seeking review by the United States Supreme Court.

The Settlement Agreement resulted from extensive arm's-length settlement negotiations over more than seven months between counsel for Plaintiffs and counsel for Defendants conducted with the assistance of a mediator, the Honorable Layn Phillips, former United States District Judge, which weighs in favor of settlement. *See In re Crocs, Inc. Sec. Litig.*, No. 07-CV-02351-PAB-KLM, 2013 WL 4547404, at *11 (D. Colo. Aug. 28, 2013) (finding that the fact that the settlement was reached after months of mediation "weighs in favor of preliminary approval").

The $375 million to be paid by Defendants is a testament to Class Counsel's vigorous representation of the Class throughout these negotiations and throughout decades of hard-fought litigation. *See generally Lucas*, 234 F.R.D. at 693 (holding that the settlement agreement was fairly and honestly negotiated where "the parties to this litigation have vigorously advocated their respective positions throughout the pendency of the case.") (internal quotations and citation omitted). The history of the parties' negotiations and the Settlement Agreement's terms demonstrate that the Settlement was fairly and honestly negotiated.

### 2. Serious Disputed Questions Of Law And Fact Remain

The Court should also consider whether "serious legal and factual questions placed the litigation's outcome in doubt." *Tennille v. W. Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015); *see also Jones*, 741 F.2d at 324; *Rutter*, 314 F.3d at 1188. Here, Plaintiffs and the Class faced significant risks, including from the pending writ of certiorari seeking review by the United States Supreme Court. Plaintiffs and the Class risked losing everything if the Supreme Court reviewed *Cook Appeal II* and found that Plaintiffs' nuisance claims were preempted by the PAA

12

(assuming that the Supreme Court also did not reverse or materially modify the Tenth Circuit's ruling in *Cook Appeal I*).

Plaintiffs and the Class would have faced significant risks even if the Supreme Court denied Defendants' writ of certiorari.  Defendants raised four arguments in opposing Plaintiffs' Motion for Entry of Judgment, and all were pending before this Court at the time of the Settlement Agreement:  Defendants argued that:  (1) class certification was not appropriate under Fed. R. Civ. P. 23; (2) alleged federal nuclear safety standards preempt Plaintiffs' Colorado nuisance claims; (3) the District Court erred at trial by allowing irrelevant and prejudicial evidence (alleged errors the Tenth Circuit had not addressed, according to Defendants); and (4) the judgment amount, if any, should be far less than the amount Plaintiffs sought in their Motion for Entry of Judgment.  *See* Doc. Nos. 2373, 2374, 2376, 2377, 2378.

When the Settlement Agreement was signed on May 18, 2016, the District Court had not yet ruled on Plaintiffs' Motion for Entry of Judgment and had not yet addressed any of the arguments Defendants raised in opposition to Plaintiffs' Motion for Entry of Judgment. Plaintiffs and the Class thus faced a significant risk that the District Court, or the Tenth Circuit or Supreme Court thereafter, would rule that (a) the Class could not be certified under Fed. R. Civ. P. 23; (b) that Plaintiffs' Colorado nuisance claims were still preempted by alleged federal nuclear safety standards; (c) that the District Court erred at trial by allowing irrelevant and prejudicial evidence; and/or that (d) the judgment amount, if any, should be far less than the amount Plaintiffs sought in their Motion for Entry of Judgment.  In short, depending on future rulings by the District Court, Tenth Circuit, and/or U.S. Supreme Court, there was significant risk of reduced or no recovery for the Class.  Moreover, there was the substantial prospect of years of additional delay – in a case already more than a quarter-century old.

One less traditional but nonetheless important motivating factor in this case is the already long duration of the case, and the likelihood that at least several more years of litigation were in store.  Three of the original class representatives have already passed away and the remainder are older and in some cases in declining health. Over the 26 years that this case has been pending, no doubt many other class members have passed.  The prospect of years more litigation delay would mean more class members would not be alive to participate in the settlement.

In sum, the proposed Settlement provides a sizeable monetary recovery, while eliminating substantial risks and preventing the litigation from dragging out even longer.

### 3.  The Value Of An Immediate Recovery Outweighs The Possibility Of Future Relief After Further Litigation

Courts also "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation."  *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D. Col. 1976); *see also Jones*, 741 F.2d at 324 (courts should consider "whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation"); *Rutter*, 314 F.3d at 1188.

Again, if the Supreme Court had granted Defendants' certiorari petition, this would have further prolonged the litigation and could have led to judgment being entered in favor of Defendants.  *See Crocs*, 2013 WL 4547404, at *12 ("Given the uncertainty of plaintiffs' likelihood of success on the merits and the prospects of prolonged litigation, the Court finds that immediate recovery outweighs the time and costs inherent in complex . . . litigation, especially when the prospect is some recovery versus no recovery.").

Even if the Supreme Court had denied Defendants' certiorari petition, there was likely to have been extensive and prolonged litigation concerning Plaintiffs' Motion for Entry of

14

Judgment and re-certification, and Defendants' multi-part opposition thereto, including additional appeals to the Tenth Circuit and additional rounds of Supreme Court certiorari petition briefing.  This weighs in favor of preliminary approval.  *See, e.g.*, *Nieberding v. Barrette Outdoor Living, Inc.*, No. 12-CV-2353-DDC-TJJ, 2015 WL 1645798, at *3-5 (D. Kan. Apr. 14, 2015) (pendency of appeal favored approval because "if the Tenth Circuit reversed the Court's class certification order, the class members might recover nothing"); *Seiffer v. Topsy's Int'l, Inc.*, 70 F.R.D. 622, 625, 629 (D. Kan. 1976) (approving partial settlement after Tenth Circuit affirmance of class certification and while petition for writ of certiorari was pending, noting that although plaintiffs had "no serious doubts" about establishing liability, the "risk of ultimately recovering money damages dogs the heels of even able and zealous counsel," especially in large and complex cases, and the "certainty of fixed recovery by way of agreement is often preferable to the vagaries of what might be achieved by a trial").

The Settlement Agreement should be preliminarily approved in light of the uncertainty concerning Defendants' Supreme Court petition, the risks of prevailing on Plaintiffs' Motion for Entry of Judgment and re-certification and maintaining that judgment through the appeals process, and the likelihood of additional years of litigation (after more than 26 years of litigation so far).  *See Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974) ("It has been held proper to take the bird in the hand instead of a prospective flock in the bush.") (citation and internal quotations omitted); *see also Lucas*, 234 F.R.D. at 694 ("If this case were to be litigated, in all probability it would be many years before it was resolved.").

### 4.   Plaintiffs Believe That The Settlement Is Fair And Reasonable

Lastly, courts consider whether "the judgment of the parties that the settlement is fair and reasonable."  *Jones*, 741 F.2d at 324; *Rutter*, 314 F.3d at 1188.  Class Counsel, after consultation with the Class Representatives, believe that the settlement is fair and reasonable.  "Counsels'

judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas*, 234 F.R.D. at 695 (quoting *Marcus v. Kansas Dept. of Revenue,* 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002)); *Nakkhumpun*, 2015 WL 6689399, at *6.  Class Counsel are among the most experienced and respected class action lawyers in the nation, and have tirelessly advanced the Class's claims since the case's inception more than twenty-six years ago.  In their judgment, the Settlement is more than fair and reasonable – it represents an outstanding result for the Class.  This judgment is based not only on the calculus of risk in the pending Supreme Court certiorari petition and further litigation related to class certification and Plaintiffs' Motion for Entry of Judgment, but also the very substantial sum of money that the settlement delivers to Plaintiffs with certainty and relative speed.

"The Court will ordinarily grant preliminary approval where the proposed settlement 'appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.'" *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 675 (D. Kan. 2009) (citation omitted).

Additionally, the Class Representatives, who have diligently and ably represented the Class through 26 years of litigation, including testifying at, and attending, the four-month trial, fully support the Settlement.

The Settlement Agreement satisfies each of the Tenth Circuit's stated criterial for approval, and the Court should grant preliminary approval.

5. **The Settlement Provides Class Members With The Opportunity To Opt Out**

Class Members were previously given an opportunity to opt out[6] and the proposed settlement provides Class members with a second opportunity to opt out of the Class.[7]

The Court previously certified the Class under Rule 23(b)(3) in *Cook IV*, 151 F.R.D. 378 (D. Colo. 1993), and notice was issued to the Class in 1999.  *See, e.g.*, Doc. No. 1143.  Each Class Member had the opportunity to request exclusion from the Class when notice was issued in 1999 (*see* Notice of Class Action, Doc. No. 1139, at 2), but will be given a second opportunity to opt out of the Class, and will be given an opportunity to object to the Settlement.  (As discussed below, Plaintiffs propose to give Class members at least 90 days from the end of the Proposed Notice Plan to opt out of the Class or object to the Settlement Agreement.)

V. **THE COURT SHOULD APPROVE PLAINTIFFS' PROPOSED PLAN OF ALLOCATION**

The proposed Plan of Allocation of the Settlement Fund ("proposed Plan of Allocation") (attached as Exhibit 2), sets forth Plaintiffs' proposed method of distribution to Class members of the Settlement Fund, less (i) service awards to the Class Representatives approved by the Court; (ii) fees, expenses, and costs awarded from the Settlement Fund to counsel for Plaintiffs and the Class approved by the Court; (iii) compensation and expenses paid or reimbursed to the Settlement and Claims Administrator approved by the Court; and (iv) any additional administrative expenses that may be charged against the Settlement Fund as approved by the

---

[6] *See* Doc. No. 1139 (Plaintiffs' Proposed Class Notice); Doc No. 1143 (Order Approving Class Notice); Doc. No. 1148 and exhibits thereto (report on prior opt outs).

[7] Rule 23(e)(4) provides that "[i]f the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so."  Here, the class certification was reversed by *Cook Appeal I*, while 23(e)(4) appears to address a situation where a class is certified, then a case settles.  In any event, the Plaintiffs propose that Class members will be provided another opportunity to opt out.

Court (the "Net Settlement Fund").  The proposed Plan of Allocation is modeled on the prior Plan of Allocation approved by the Court on June 2, 2008 in connection with the Court's entry of judgment in favor of Plaintiffs after trial.  *See* prior Plan of Allocation, Doc. No. 2264-2.

The current proposed Plan of Allocation calls for distribution of the Net Settlement Fund in the following manner:  3.196% of the Net Settlement Fund will be allocable to commercial properties located in the Property Class Area; 81.537% of the Net Settlement Fund will be allocable to residential properties located in the Property Class Area; and 15.267% of the Net Settlement Fund will be allocable to vacant land located in the Property Class Area.  Proposed Plan of Allocation, at ¶ 8.  These are the same percentages for each class of properties that the jury awarded.  *See* Jury Verdict Form, Doc. No. 2117, at 24.

Based on Jefferson County and Broomfield County tax assessment records from April 1989 and such other sources as the Settlement and Claims Administrator may reasonably determine to be suitable and reliable, the Settlement and Claims Administrator shall determine, for each Class property, the property's assessed value, expressed as a fraction of the total assessed value of all Class properties within the same category (the property's "Fractional Allocable Share").  Plan of Allocation, at ¶ 9.

The Plan of Allocation shall compute an award for each member of the Class, based on the Class member's property's Fractional Allocable Share of the Net Settlement Fund apportioned to that category.  Plan of Allocation, at ¶ 10.  For example, for a residential property, the Proposed Allocation will result in an award based on the property's Fractional Allocable Share multiplied by the Net Residential Property Settlement Fund.

It is anticipated that after the first distribution of settlement proceeds there will be unclaimed or residual funds and that a second distribution will be needed.  Class Counsel

anticipates that, subject to Court approval, in any such second or subsequent distribution the properties closest to the plant will be given an extra weighting and so will receive relatively more money in such subsequent distributions.  Plan of Allocation, at ¶¶ 11, 13.

Insofar as the Net Settlement Fund includes residual funds after distribution(s) as set forth in the preceding paragraphs that cannot be economically distributed to the Class (because of the costs of distribution as compared to the amount remaining), Class Counsel shall make an application to the Court, with notice to Defendants, for such sums to be used to make *cy pres* payments for the benefit of members of the Class, for example by making a donation to a group or groups whose interests are aligned with Class members or otherwise as directed by the Court. Plan of Allocation, at ¶ 14.

"An allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel." *Lucas*, 234 F.R.D. at 695 (quotation and citations omitted).  It is well established that a plan of allocation is fair, reasonable and adequate where, as here, it seeks to compensate Class members based on their estimated damages. *See, e.g., In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 692 (D. Colo. 2014); *Law v. Nat'l Collegiate Athletic Ass'n*, 108 F. Supp. 2d 1193, 1196, 1200 (D. Kan. 2000); *Smith v. MCI Telecomms. Corp.*, No. 87-2110- EEO, 1993 WL 142006, at *2 (D. Kan. Apr. 28, 1993).

## VI.   THE COURT SHOULD APPROVE PLAINTIFFS' PROPOSED NOTICE PLAN AND FORMS OF NOTICE, WHICH WILL PROVIDE THE "BEST NOTICE PRACTICABLE" TO MEMBERS OF THE CLASS

Under Rule 23(e), "[t]he Court must direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement.  Fed. R. Civ. P. 23(e)(1).  For classes certified under Rule 23(b)(3), as here, notice to class members must be the "best notice practicable." *See* Fed. R. Civ. P. 23(c)(2)(B).  "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle &*

19

*Jacquelin*, 417 U.S. 156, 173 (1974).  "The hallmark of the notice inquiry . . . is reasonableness." *Lucas*, 234 F.R.D. at 696 (quoting *Sollenbarger v. Mountain States Tel. and Tel. Co.*, 121 F.R.D. 417, 436 (D.N.M.1988)).  The proposed Notice Plan and forms of notice satisfy the requirements of due process and Fed. R. Civ. P. 23.  In addition, the proposed Claim Form should be approved.

     **A.**     <u>**Proposed Forms of Notice**</u>

     Plaintiffs propose to mail a Long Form Notice substantially in the form attached as Exhibit 3 via first-class mail to potential Class members whose current addresses are reasonably ascertainable.  In accordance with Fed. R. Civ. P. 23(c)(2)(B), the proposed Notice informs Class Members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the class and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; and (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that class members may make an appearance through counsel.

     Plaintiffs also propose to publish a Summary Notice substantially in the form attached as Exhibit 4 in nationally circulated consumer magazines and in Denver and Colorado newspapers. *See* Proposed Notice Plan, at §§ II.4, II.5 (the Proposed Notice Plan is attached as Exhibit 5); *see also* § VI.2, *infra*.  Additionally, Plaintiffs propose that notice be publicized through television and radio commercials, online advertisements, mobile advertisements, and social media advertisements.  *See* Proposed Notice Plan, at § II.6-12; Finegan Declaration, at ¶¶ 17-56.

     **B.**     <u>**Proposed Claim Form**</u>

     Attached as Exhibit 6 is the proposed Claim Form Plaintiffs plan to attach to the Long Form Notice to be sent to Class members.  The Claim Form will also be available on the official

settlement website, www.RockyFlatsSettlement.com, and it will be mailed to potential Class

members who request a copy.

Class Counsel worked with the proposed Settlement and Claims Administrator, Heffler

Claims Group, to develop a clear, easy-to-read claim form that will enable the Settlement and

Claims Administrator to verify that people or entities who submit a Claim Form are members of

the Class (or their heirs or successors), and so are entitled to receive funds payable from the Net

Settlement Fund.  Class Counsel notes that the Claim Form will be formatted prior to being

mailed to Class members to make the boxes to be filled in larger, among other formatting

changes.

C. **Proposed Notice Plan**

Plaintiffs' proposed manner of disseminating notice to the Class is set forth in the

attached Proposed Notice Plan.  The Proposed Notice Plan is more extensive than the plan

approved by the Court in its September 14, 1999 Order Approving Class Notice.  Doc. No. 1143.

The Proposed Notice Plan includes the following components, which are set forth in

greater detail in the accompanying Proposed Notice Plan and Declaration of Jeanne C. Finegan,

APR Concerning Proposed Class Member Notification ("Finegan Declaration"):

1) **Direct mail notice by first-class U.S. mail to reasonably identifiable Class Members.**  Plaintiffs plan to mail the Long Form Notice to the potential Class members who received notice of class certification in 1999 (subject to obtaining current addresses), as well as any other potential Class members identified through the Jefferson County and Broomfield County 1989 property records data. The proposed Settlement and Claims Administrator has attempted to obtain current addresses for the potential Class members.  *See* Proposed Notice Plan, at § II.1; Finegan Declaration, at ¶¶ 17-21.

2) **An informational website (www.RockyFlatsSettlement.com) will be created and maintained.**  The website will include the Settlement Agreement, a detailed map of the Property Class Area, the Long Form Notice, Summary Notice, the Plaintiffs' motion for award of service awards to the Class Representatives and for attorneys' fees, costs and expenses (when filed), and other important Court documents.  *See* Proposed Notice Plan, at § II.2; Finegan Declaration, at ¶¶ 62-63.

21

3)   **A toll-free information phone line for Class members to call 24 hours a day, 7 days a week for more information about the Settlement, including but not limited to requesting copies of the Notice and Claim Form.**  *See* Proposed Notice Plan, at § II.3; Finegan Declaration, at ¶¶ 64.

4)   **Publication of the Court-approved Summary Notice in nationally circulated consumer magazines.**  *See* Proposed Notice Plan, at § II.4; Finegan Declaration, at ¶¶ 34-39.

5)   **Publication of the Court-approved Summary Notice in Denver and Colorado newspapers.**  *See* Proposed Notice Plan, at § II.5; Finegan Declaration, at ¶ 57.

6)   **Television commercials aired nationwide on cable networks.**  The commercials will include information about the proposed settlement, explain who be a member of the Class, and direct potential Class members to the official settlement website or to the toll-free informational line for more information.  *See* Proposed Notice Plan, at § II.6; Finegan Declaration, at ¶¶ 40-43.

7)   **Television and radio commercials aired on network affiliate and cable networks in the Denver DMA.**  The commercials will include information about the proposed settlement, explain who is a member of the Class, and direct potential Class members to the official settlement website or to the toll-free informational line for more information.  *See* Proposed Notice Plan, at § II.7; Finegan Declaration, at ¶ 55.

8)   **Online display banner advertising with a nationwide reach.  Plaintiffs propose to use online banner advertisements, advertisements on the top or sides of websites.**  The banner advertisements will provide information for visitors to self-identify themselves as potential Class Members, where they may "click" on the banner and then link directly to the official website for more information and where they may register online, file a claim, or seek additional information including frequently asked questions and important court deadlines and documents.  *See* Proposed Notice Plan, at § II.8; Finegan Declaration, at ¶¶ 44-45, 49.

9)   **Online video advertising with a nationwide reach.**  Plaintiffs propose to place online video advertisements on the Xaxis network[8] across various web properties as pre-roll.[9]  The video can take the form of a 15-30-second graphical commercial adaptation of the Summary Notice, served to a visitor prior to viewing an online video.  Online video allows a more informed narrative that speaks to the target

_____

[8] Xaxis is an online network of over 2,000 individual web partner properties. (www.xaxis.com).

[9] Online "pre-roll" advertisements or commercials appear prior to an online video being presented.  Once you click on a certain online video link you will be forced to watch a short commercial (here, about the Settlement) before the video content.

audience with detailed information to help users more easily identify themselves as eligible under the proposed settlement. *See* Proposed Notice Plan, at § II.9; Finegan Declaration, at ¶ 46.

10) **Advertising on mobile websites and applications specifically targeted to reach class members.** Plaintiffs plan to use banner advertising on mobile websites and applications. Potential Class members can "click" on the mobile or application banner and then link directly to the official settlement website. *See* Proposed Notice Plan, at § II.10; Finegan Declaration, at ¶¶ 53-54, 56.

11) **Social media advertising through Facebook and Twitter with a nationwide reach.** Facebook advertisements will be served to adults across the United States, and more specifically to those who also have friends and family in living in Colorado and those who live near Rocky Flats and in surrounding areas. *See* Proposed Notice Plan, at § II.11; Finegan Declaration, at ¶¶ 50-52.

12) **Native advertising on premium internet properties with a nationwide reach.** Plaintiffs propose to use "native advertisements," which are banner advertisements that are served to function and fit the surrounding editorial on a page. *See* Proposed Notice Plan, at § II.12; Finegan Declaration, at ¶ 47.

13) **Third party outreach to a community action group, Downwinders,[10] and medical providers asking them to share and distribute the Summary Notice.** *See* Proposed Notice Plan, at § II.13; Finegan Declaration, at ¶¶ 58-59.

14) **A multimedia press release issued nationwide over PR Newwire's US1 newslines.** *See* Proposed Notice Plan, at § II.14; Finegan Declaration, at ¶¶ 60.

To summarize, Plaintiffs proposed Notice Plan includes (a) mailing the Long Form Notice to all reasonably identifiable Class members, (b) an informational website, (c) a toll-free informational phone line, and (d) an extensive nationwide multi-media publication campaign with additional focus on Denver and Colorado.

Courts frequently approve similar notice plans that combine individual mailed notice with national publication. *See, e.g.*, *Tennille*, 785 F.3d at 438 (affirming district court's decision

---

[10] The Proposed Notice Plan provides that the proposed Settlement and Claims Administrator will send letters to and communicate with the Rocky Flats Community Action Group called the Downwinders. Rocky Flats Downwinders is a community organization founded in 2015 advocating on behalf of those impacted by living downwind from the Rocky Flats Nuclear Weapons Plant. The organization came together through common concern about the high rate of illness suffered by former residents in the Arvada, Broomfield, Thornton and surrounding areas.

23

approving notice plan where notice was mailed to class members, published in several magazines, and posted on a settlement website), *cert. denied*, 136 S. Ct. 835 (2016); *Lucas*, 234 F.R.D. 695-97; *Crocs*, 2013 WL 4547404, at *13 (approving notice plan including individual notice mailed to each of the approximately 200,000 potential class members, as well as notice publication in national periodicals and on a settlement website); *Nakkhumpun*, 2015 WL 6689399, at *7 (approving method of notice where "The long-form notice will be sent by mail to all identifiable class members at their last known address. The publication notice will be published once in *Investor's Business Daily* and issued once electronically over *PR Newswire*."); *In re New Mexico Nat. Gas Antitrust Litig.*, 607 F. Supp. 1491, 1499 (D. Colo. 1984) (approving notice plan including mailed notice as well as publication of notice in seventeen newspapers circulated throughout New Mexico); *see also* 7 *Newberg*, § 22:85 at 368 (when class members cannot be identified through reasonable efforts, courts have usually required a combination of first-class mailed notice to the identifiable members and publication in one or more publications); *Moore's Federal Practice 3d* § 23.102[3][b], at 23–384 ("[p]ublication of notice is often the best notice practicable for class members who cannot be identified or located specifically through reasonable efforts").  In fact, Courts have approved notice plans including only publication notice without direct mail.[11]

The Proposed Notice Plan is estimated to be complete within approximately 95 days of the date on which the Court grants preliminary approval.  However, to account for the possibility of difficulty buying media around the holidays and immediately before the 2016 presidential

---

[11] *See, e.g.*, *In re Motor Fuel Temperature Sales Practices Litig.*, 279 F.R.D. 598, 618 (D. Kan. 2012) (approving plan that provided for notice via newspaper, radio broadcast, and a settlement website); *Miller v. Basic Research, LLC*, No. 2:07-CV-871 TS, 2011 WL 818150, at *1 (D. Utah Mar. 2, 2011) (approving plan that provided for notice "via the internet, radio, print, and television").

election in November, Plaintiffs' proposed schedule (set forth below in Section IX) allows 105 days for the Notice Plan to be completed following preliminary approval of the settlement.

As set forth in the attached Finegan Declaration, the Proposed Notice Plan "reflects and incorporates the highest modern communication standards and is reasonably calculated to provide notice that is not only consistent with, but indeed exceeds best practicable court-approved notice programs in similar matters and is consistent with the Federal Judicial Center's guidelines concerning appropriate reach." *See* Finegan Declaration, at ¶ 72.

In addition, the proposed Settlement and Claims Administrator plans to monitor various media channels for subsequent news articles and various social mentions as a result of the press release efforts, and proposes to file a complete report on the results with the Court upon completion of the proposed Notice Plan. *See* Proposed Notice Plan, at § II.11; Finegan Declaration, at ¶ 61.

Accordingly, Plaintiffs respectfully request that the Court approve the proposed form and plan of dissemination of notice as set forth in Exhibits 3-5.

## VII. THE COURT SHOULD APPOINT THE HUNTINGTON NATIONAL BANK AS ESCROW AGENT

Plaintiffs propose The Huntington National Bank, who Class Counsel has worked with in other class actions, as escrow agent. Defendants have approved this selection and the Escrow Agreement is attached as Exhibit 7.

## VIII. THE COURT SHOULD APPOINT HEFFLER CLAIMS GROUP AS SETTLEMENT AND CLAIMS ADMINISTRATOR

Plaintiffs propose Heffler Claims Group as Settlement and Claims Administrator. Heffler Claims Group is well-qualified and served in this role before. *See, e.g.*, *Nakkhumpun*, 2015 WL 6689399, at *8 ("Plaintiff is AUTHORIZED to retain Heffler Claims Group to supervise and administer the notice procedure and, if the settlement receives final approval, the processing of

claims.").[12]  In addition, Heffler Claims Group served as the notice administrator for purposes of administering the class notice program in 1999.  *See* Finegan Declaration, at ¶ 4.

## IX.     PROPOSED SCHEDULE LEADING UP TO AND INCLUDING THE FAIRNESS HEARING

Plaintiffs request that the Court enter and adopt the proposed schedule as set forth in the attached proposed Order Granting Preliminary Approval of Proposed Class Action Settlement, Preliminary Approval of Proposed Plan of Allocation, Approval of Proposed Forms and Manner of Notice to the Class, Approval of Proposed Claim Form, and Approval of Proposed Schedule, at ¶¶ 15-23 in the event that the Court preliminarily approves the Settlement on or before August 15, 2016 (or within a month of the date of this motion).

The proposed schedule includes a proposed date of April 28, 2017 for the Fairness Hearing, during which the Court will consider: (a) Plaintiffs' request for final approval of the Settlement and entry of a proposed order and final judgment; (b) Class Counsel's application for an award of attorneys' fees and reimbursement of expenses, payment of administrative costs, and service awards to the Class Representatives; and (c) Plaintiffs' request for dismissal of this action against Defendants with prejudice.  The proposed schedule also includes several dates for various submissions to be filed prior to the Fairness Hearing.

---

[12] Heffler Claims Group has been administering class actions for more than 45 years and is one of the oldest and most respected class action administrators in the country.  In 2002, a related entity, Heffler, Radetich & Saitta, L.L.P., was victimized by a dishonest employee who was later prosecuted for stealing funds from a class action settlement.  Several courts, however, have since appointed Heffler Claims Group as a settlement administrator.  *See, e.g.*, *Hashw v. Dep't Stores Nat'l Bank*, No. CV 13-727 (RHK/BRT), 2016 WL 1729525, at *2 (D. Minn. Apr. 26, 2016); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 332 (C.D. Cal. 2016); *Lambert v. Buth-Na-Bodhaige, Inc.*, No. 2:14-CV-00514-MCE, 2015 WL 4602942, at *2 (E.D. Cal. July 29, 2015); *McCabe v. Six Continents Hotels, Inc.*, No. 12-CV-04818 NC, 2015 WL 3990915, at *11 (N.D. Cal. June 30, 2015); *In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liab. Litig.*, No. 3:11-CV-02784-JMC, 2015 WL 1862848, at *3 (D.S.C. Apr. 23, 2015).  Plaintiffs do not believe this incident is relevant to Heffler Claim Group's ability to serve as Settlement and Claims Administrator here, but wished to notify the Court.

First, Plaintiffs propose that they be given until November 28, 2016 to give notice to the

Class in the manner set forth in the attached proposed Notice Plan.  Plaintiffs propose that they

be given until September 14, 2016 to send the Long Form Notice substantially in the form

attached as Exhibit 3 to members of the Class.

Second, Plaintiffs request that the Court order that all briefs and materials in support of

the application for an award of attorneys' fees and reimbursement of expenses, and incentive

awards for the Class Representatives, shall be filed with the Court by January 12, 2017.  This is

more than 45 days before the deadline for Class members to request exclusion from the Class or

object to the Settlement and/or attorneys' fees, expenses and incentive awards.  Class Counsel

intend to ask the Court to reimburse Counsel for the actual, reasonable, and necessary expenses

incurred in prosecuting this litigation and to award attorneys' fees up to 40% of the Settlement

Fund.[13]  Plaintiffs will also seek service awards for the five Class Representatives not to exceed

a total of $780,000.  Class Counsel will show that the requested service awards are well-deserved

and should be awarded.[14]

---

[13] As will be detailed in the motion for award of fees, given the extraordinary efforts that
have been devoted to this case for over 26 years (and counting), and in light of the very
substantial recovery in the face of multiple substantial risks, Plaintiffs believe that an award of
up to 40% is reasonable.  *See, e.g., In re Melridge, Inc. Sec. Litig.*, CV 87-1426-FR, Doc. No.
2419 (D. Or. Apr. 15, 1996) (attached as Exhibit 8); *see generally Tuten v. United Airlines, Inc.*,
41 F. Supp. 3d 1003, 1008 (D. Colo. 2014) ("When considering the appropriateness of an
attorneys' fees award, the Court is to consider: (1) the time and labor required by counsel; (2) the
novelty and difficulty of the legal question presented; (3) the skill required to represent the Class
appropriately; (4) the preclusion of other employment by the Class Counsel due to the
acceptance of this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any
time limitations imposed by the client or the circumstances; (8) the amount involved and the
results obtained; (9) the experience, reputation and ability of Class Counsel, (10) the
"undesirability" of the case; (11) the nature and length of the professional relationship with the
client; and (12) awards in similar cases.").

[14] *See generally Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-CV-01543-
REB-KMT, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010) ("[I]ncentive awards are an
efficient and productive way to encourage members of a class to become class representatives,

Third, Plaintiffs propose that members of the Class be given until March 1, 2017, more than 90 days after the proposed Notice Plan will be complete, to request exclusion from the Class or object to the Settlement and/or attorney's fees, expenses and service awards.  This timeframe is reasonable, and shorter notice periods have been approved.[15]

Fourth, Plaintiffs propose that the Court order that briefs and materials in support of the final approval of the settlement and the entry of Final Judgment proposed by the parties to the Settlement Agreement shall be filed with the Court by March 31 2017.

Fifth, Plaintiffs propose that members of the Class be given until June 1, 2017, more than six months after the proposed Notice Plan is completed, to file a claim.  This is a generous and reasonable amount of time, and more time than is typically required.[16]

---

and to reward the efforts they make on behalf of the class. . . . The factors to consider in determining an incentive award include: (1) the actions that the class representative took to protect the interests of the class; (2) the degree to which the class has benefited from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation."); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775, 2015 WL 5918273, at *5 (E.D.N.Y. Oct. 9, 2015) (awarding total of $540,000 to six class representatives in antitrust class actions which resulted in 23 settlements totaling $900 million); *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 06-cv-01797, ECF No. 870, at ¶ 30 (E.D. Pa. Oct. 15, 2015) (awarding total of $500,000 to six class representatives in a direct purchaser class action where settlement funds amounted to approximately $512 million).

[15] *See DeJulius v. New Eng. Health Care Emp.'rs  Pension Fund*, 429 F.3d 935, 946 (10th Cir. 2005) (affirming 32 day notice period and noting that "courts have found a notice scheme similar to the one in the instant case sufficient and have not required a sixty- or ninety-day notice period, as Appellants suggest"); *Lucas*, 234 F.R.D. at 695-87 (approving 60-day notice period for nationwide settlement class of over 200,000 potential members); *Hershey v. ExxonMobil Oil Corp.*, No. 07-1300-JTM, 2012 WL 5306260, at *4 (D. Kan. Oct. 26, 2012) (approving 30-day notice period where the settlement compensated the class of "over 8,600 members" for damages "extending back to 1988"); *see also* Newberg on Class Actions § 8:16 (5th ed.) ("[C]ourts typically provide for a few months between the issuance of settlement notice and either the deadline for objections or the fairness hearing[,] although gaps of one month or less have been found adequate.").

[16] *See, e.g., Horton v. Leading Edge Mktg. Inc.*, No. 04-CV-00212-PSF-CBS, 2007 WL 2472046, at *2 (D. Colo. Aug. 28, 2007) (approving 45-day claims period for settlement class of "over 420,000 geographically dispersed persons); *Tripp v. Berman & Rabin, P.A. et al*, No. 14-CV-2646-DDC-GEB, 2016 WL 3615572, at *5 (D. Kan. July 6, 2016) (approving 60-day claims

In summary, in the event that the Court grants preliminary approval of the Settlement on or before August 15, 2016, Plaintiffs propose that the schedule be set as follows:

- Plaintiffs shall complete the Notice Plan on or before November 28, 2016.

- Briefs and materials in support of Plaintiffs' application for an award of attorneys' fees, reimbursement of expenses, and service awards for the Class Representatives, shall be filed with the Court January 12, 2017 (more than 45 days before the deadline for Class members to opt out of the Class or object to the Settlement).

- Members of the Class be given until March 1, 2017 (more than 90 days after the proposed Notice Plan will be complete) to opt-out of the Class or to object to the Settlement.

- Briefs and materials in support of Plaintiffs' motion for final approval of the settlement shall be filed with the Court on or before March 31, 2017.

- The Fairness Hearing, during which the Court will consider: (a) Plaintiffs' request for final approval of the Settlement and entry of a proposed order and final judgment; (b) Class Counsel's application for an award of attorneys' fees and reimbursement of expenses, payment of administrative costs, and service awards to the Class Representatives; and (c) Plaintiffs' request for dismissal of this action against Defendants with prejudice, shall be scheduled on or after April 28, 2017.

- Members of the Class be given until June 1, 2017 to file a claim.

This proposed schedule is included in the attached proposed Order Granting Preliminary Approval of Proposed Class Action Settlement, Preliminary Approval of Proposed Plan of Allocation, Approval of Proposed Forms and Manner of Notice to the Class, Approval of Proposed Claim Form, and Approval of Proposed Schedule, at ¶¶ 15-23.

Alternatively, in the event that the Court grants preliminary approval of the Settlement on or after August 16, 2016, Plaintiffs propose that the schedule be set as follows, with time intervals that are approximately equal to the intervals included in the above proposed schedule:

---

period); *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 910 F. Supp. 2d 891, 910 (E.D. La. 2012) (approving 30-day claims period for settlement class of "tens of thousands of members"), *aff'd.*, *In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014).

- Plaintiffs shall complete the Notice Plan within <u>105 days after the Court grants preliminary approval</u>.

- Briefs and materials in support of Plaintiffs' application for an award of attorneys' fees, reimbursement of expenses, and service awards for the Class Representatives, shall be filed with the Court <u>within 155 days of the Court granting preliminary approval</u>, or at least 45 days before the deadline for Class members to opt out of the Class or object to the Settlement.

- Members of the Class be given until <u>200 days after the Court grants preliminary approval</u> to opt-out of the Class or to object to the Settlement, or at least 90 days following completion of the Notice Plan.

- Briefs and materials in support of Plaintiffs' motion for final approval of the settlement shall be filed with the Court <u>within 230 days after the Court grants preliminary approval</u>.

- The Fairness Hearing, during which the Court will consider: (a) Plaintiffs' request for final approval of the Settlement and entry of a proposed order and final judgment; (b) Class Counsel's application for an award of attorneys' fees and reimbursement of expenses, payment of administrative costs, and service awards to the Class Representatives; and (c) Plaintiffs' request for dismissal of this action against Defendants with prejudice, <u>shall be scheduled approximately 260 days after the Court grants preliminary approval</u>.

- Members of the Class be given until <u>290 days after the Court grants preliminary approval</u> to file a claim.

## X.    <u>CONCLUSION</u>

For the reasons stated herein, Plaintiffs respectfully request that the Court grant their motion for preliminary approval of the Settlement, and such other relief as requested above and as set forth in the attached proposed Orders.

Dated:  July 15, 2016                                    Respectfully submitted,

_/s/ Merrill G. Davidoff_____
Merrill G. Davidoff
David F. Sorensen
Caitlin G. Coslett
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

Gary B. Blum
Steven W. Kelly
SILVER & DeBOSKEY, P.C.
1801 York Street
Denver, CO 80206
(303) 399-3000

Louise M. Roselle
Paul M. DeMarco
MARKOVITS, STOCK & DE MARCO, LLC
119 E. Court Street, Suite 530
Cincinnati, OH 45202
(513) 651-3700

*Attorneys for Plaintiffs and the Class*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 15th day of July, 2016, he caused the foregoing

submission to be served via the Court's ECF system on all participating counsel.

                                        */s/ Merrill G. Davidoff*
                                        Merrill G. Davidoff
                                        BERGER & MONTAGUE, P.C.
                                        1622 Locust Street
                                        Philadelphia, PA 19103
                                        (215) 875-3000