**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-00181-JLK

---

MERILYN COOK, et al.,

        Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

        Defendants.

---

**MEMORANDUM IN SUPPORT OF MOVANTS'
MOTION TO SUBSTITUTE AS REAL PARTIES IN INTEREST**

---

## I.    Introduction

For more than two years, Movants have been trying to recover a valid and enforceable judgment entered in their favor against Chesley. Chesley has done everything to stop them; even going so far as suing them, and their lawyer, in Ohio state court, culminating in a decision by the Ohio Supreme Court rebuking Chesley and his lawyers for such tactics. (*See Ford v. Ruehlman*, 2016-Ohio-3529, attached hereto as Exhibit B). Despite Chesley's best efforts to hinder collection, Movants have diligently pursued collection of their judgment and have obtained two execution orders from the Kentucky court entitling them to fee income owed to Chesley and/or WSBC. These orders remain valid and enforceable orders.

4814-2619-7819.v2

This Court has ordered that the motion for attorneys' fees and reimbursement of costs and expenses in this case must be filed on or before January 12, 2017. (Doc. 2416). WSBC has been counsel in this case since its inception and was active in the trial. It has a significant amount of hours and expenses invested in this case. As such, WSBC—and Chesley, as its sole shareholder and ultimate beneficiary—is entitled to claim a portion of the fees and expenses to be awarded.

Movants now ask this Court to substitute them as the payee of fees due Chesley and/or WSBC. Pursuant to the Kentucky execution orders, Movants are the real parties in interest to the fees and expenses due WSBC and/or Chesley. In the alternative, Movants ask that those funds be deposited with the Court until the dispute between Movants and Chesley and WSBC, which is currently pending, is resolved by the District Court for the Southern District of Ohio, case no. 1:16-cv-00464.

## II.     Factual Background

### A.     The Kentucky Lawsuit

During the pendency of this action, Chesley became subject to a Kentucky judgment and Chesley and WSBC became subject to execution orders. In the Kentucky case, the court found Chesley jointly and severally liable to hundreds of his former clients for a judgment amount of $42 million (the "Chesley Judgment") for improperly taking more fees than to which he was entitled. (*See* Order, attached hereto as Exhibit C). This judgment became final in October 2014. (*See* Judgment, attached hereto as Exhibit D).

In their attempt to execute on their judgment, Chesley's judgment creditors filed a motion asking the Kentucky court to transfer Chesley's beneficial interest in WSBC to them. Post-judgment discovery revealed that Chesley executed a Wind-Up Agreement in April 2013, the

4814-2619-7819.v2

day before resigning his law license in Ohio, in which he transferred his entire interest in WSBC, as sole owner, to a trustee, purportedly to wind up the affairs of the entity.   Under that Agreement, Chesley continued to maintain an interest in WSBC as the final beneficiary under the Wind-Up Agreement.   On or about June 23, 2015, the Kentucky court granted that motion and transferred Chesley's beneficial interest to his judgment creditors.   (*See* Transfer Order, attached hereto as Exhibit E).  In that order, the Kentucky court ordered:

1.  Defendant Chesley shall direct that his beneficial interest in the shares of WSBC be transferred to Plaintiffs within 14 days of the date of this Order and all distributions pursuant to said interest are to be made to Plaintiffs through their counsel;

2.  Defendant Chesley is hereby Ordered to direct Thomas F. Rehme to make all payments derived from Chesley's interest in the shares of WSBC payable to the Plaintiffs through their counsel, Hon. Angela Ford;

3.  If for any reason, including but not limited to any action by another court in any other jurisdiction, monetary payment(s) is/are made to Chesley from his interest in WSBC, Chesley and his attorney shall immediately turn over said payment(s) to Plaintiffs' counsel, Angela Ford.

(*Id.* at 3).[1]

This order should have resulted in Chesley's judgment creditors receiving any money due and owing to Chesley directly or indirectly through WSBC.  Yet, the judgment creditors have received no funds.  Instead, further discovery revealed that Chesley continued to control WSBC and direct where funds were paid—including to himself or for his benefit.  Discovery also

---

[1] Chesley filed a Writ of Prohibition in the Kentucky Court of Appeals to prohibit the trial court from enforcing its order on the ground that it lacked jurisdiction to order Chesley to tell the Trustee to make all future distributions to the judgment creditors' attorney.  In the Opinion denying the Writ, the Court of Appeals found that the trial court acted within its jurisdiction. (*See* Order Denying Petition for a Writ of Prohibition, Oct. 8, 2015, attached hereto as Exhibit F).

4814-2619-7819.v2

revealed that WSBC continued to receive fee income it had failed to disclose, despite prior orders requiring Chesley to identify all such income.

Therefore, the judgment creditors filed a motion to execute on Chesley's ownership in WSBC.  On or about September 25, 2015, the Kentucky court granted their motion and issued an order finding that the Wind-Up Agreement was a sham and that Chesley remained in control of WSBC.  (*See* Exhibit A).  Thus, because Chesley's purported transfer of his ownership interest in WSBC was a sham, Chesley continued to own WSBC as the sole shareholder.  Accordingly, the Kentucky court ordered Chesley to transfer his ownership interest in WSBC to the judgment creditors and ordered that fee payments payable to WSBC or Chesley be paid to the judgment creditors' counsel, for benefit of the judgment creditors.  (*Id.*)

In granting the motion, the Kentucky court specifically found that Chesley "directed payment of over $16 million in fees from the Fannie Mae litigation into two separate accounts." (*See id*. at 3).  The Kentucky court also found that "Chesley is operating without regard to the Wind-Up Agreement" and was "exercising the right to control WSBC's activities" while also "taking action to render himself insolvent while directing assets to WSBC, including fees from the Fannie Mae Litigation and tobacco litigation, and the transfer of $59 million from his personal accounts to WSBC."  (*Id*. at 4).  That court found that "the Wind-Up Agreement is a sham and that Defendant Chesley continues to control and direct WSBC."  (*Id.*).  Accordingly, the Kentucky court ordered:

1. Defendant Chesley shall immediately transfer his ownership interest in WSBC to the Plaintiffs through their undersigned counsel.  This Court's June 23, 2015 Order remains in full effect.  As directed in that Order, Defendant  Chesley and his attorneys shall immediately turn over to

4

> Plaintiff's counsel any and all monetary payments made to Defendant Chesley from his interest in WSBC;

(*Id*.).

The Kentucky Court also ordered:

> 3.    Defendant Chesley shall advise the Court in the matter of Merilyn *Cook, et al. v. Rockwell Int'l Corp.*, Case No. 1:90-cv-00181-JLK, in the United States District Court for the District of Colorado that all payments or fees to which he and/or WSBC are entitled shall be paid directly to Plaintiffs through their undersigned counsel.

(*Id*. at 5).[2]

Chesley has failed to comply with any of the requirements of the Kentucky orders. Movants have since domesticated the Chesley Judgment in Colorado.  (*See* Domestication Order, attached hereto as Exhibit I).

### B.    Another Federal Court's Finding of Non-Compliance With the Kentucky Orders and Possible Fraud Perpetrated by Chesley in Another Lawsuit.

Subsequently, Movants discovered that Chesley had failed to turn over fee income in an action pending in Ohio, *Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davi*s, Case No. 11-cv-00851, in which WSBC had sued a former client, Mr. Davis, to recover fees allegedly owed to it.  Movants provided Mr. Davis's counsel a copy of the Kentucky court's order, putting counsel on notice that any award should be directed to Movants, not WSBC or Chesley.  The *Davis* case settled, yet, despite the Kentucky court's orders, and counsel's knowledge thereof, no settlement funds were turned over in partial satisfaction of the Chesley Judgment—as expressly ordered by the Kentucky court.

---

[2] Chesley filed a Motion for Interlocutory Relief seeking dissolution of the June 23, 2015 execution order in both the Kentucky Court of Appeals and Supreme Court.  Both were denied.  (*See* Court of Appeals Order, October 7, 2015; Supreme Court Opinion and Order, June 16, 2016, attached hereto as Exhibits G and H, respectively).  Chesley did not file an appeal from the September 25, 2016 execution order.

4814-2619-7819.v2

After discovering that a settlement had been reached in the *Davis* case without either party complying with the Kentucky orders, one of Chesley's judgment creditors filed a motion requesting disclosure of the settlement agreement and that the settlement funds be turned over in compliance with the Kentucky court's orders.  In response, the court presiding over that case considered the possible fraudulent activity of Chesley and WSBC with regard to the settlement in that case and the failure to comply with the Kentucky court's orders or to disclose them to the court. *See Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis,* No. 1:11CV851, 2016 WL 447021, at *1 (S.D. Ohio Feb. 5, 2016).  That court issued a Show Cause Order, stating:

> I since have learned much that I did not know at the time of trial, announcement of the settlement, and entry of the dismissal order. One of the things that I did not then know was that on April 15, 2013, Chesley executed a "Wind–Up Agreement . . . ." I also only since learned that movant herein and her fellow class members in the Fen-phen litigation had on October 22, 2014, nearly a year before the trial in this case, obtained a $42 million joint and several judgment against Chesley. (Doc. 262–2, Amended Judgment, *Abbott, et al., v. Chesley,* Case No. 05–CI–436 (Boone Circuit Court, Commonwealth of Kentucky)) . . . .

> Likewise entirely unbeknownst to me, the Boone Circuit Court had, on June 23, 2015, entered a "Turn–Over" Order relating to Chesley's retained beneficial interest in Waite, Schneider. (Doc. 262–3) . . . .

> Neither Chesley nor any lawyer or anyone else acting in any way with or for him has, according to the movant, complied in any way whatsoever with the Turn Over Order. Just as I did not know about that Order, I, of course, did not know about that noncompliance.

> I also did not learn until recently was that on September 25, 2015, before I entered the dismissal order in this case, the Boone Circuit Court found that the Wind–Up Agreement is a "sham." (Doc. 262–4 at 4).

> Most simply put: had I known but a fraction of what I did not know before dismissal, I would have acted differently. Under no circumstances would I have accepted a settlement that enabled Chesley—or others acting on his behalf or in concert with him—to evade the obligation to pay over the settlement proceeds in accordance with the command of the Boone Circuit Court. Asserting that counsel in this case were aware of the Turn–Over order, but failed to inform me of that

6

order and Chesley's continuing noncompliance with it, movant's Status Report of January 31, 2016, contends that "this Court served as a forum for the avoidance of another court's orders." (Doc. 269 at 6).

That appears so: in a word, at this point, I feel tricked, and complicit, albeit unwittingly so, in chicanery, duplicity, and mendacity. No judge should ever find himself in that situation.

*Id.* at *1-3.

Ultimately, that court concluded that it lacked jurisdiction to take any action pertaining to the distribution of the settlement proceeds because it had dismissed the action, and it separately found that no fraud on the court occurred because the opposing party had not been denied the opportunity to fully and fairly present his case.  However, the sentiments and concerns set forth in his show cause order remain.

**C.      Litigation is Pending in the Southern District of Ohio Between Movants, Chesley, and WSBC.**

In April of 2016, some of the judgment creditors filed a Motion to Substitute as Real Parties in Interest in *Williams v. Duke Energy*, Southern District of Ohio case no. 1:08-cv-46-EAS.  In that case, WSBC had been awarded a portion of fees pursuant to a fee application granted by the judge.  The judgment creditors contended, as they do here, that they were entitled to receive those fees pursuant to the Kentucky court's orders.

Around that same time, based on the information learned through discovery, the majority of Chesley's judgment creditors filed a lawsuit against Chesley and WSBC that is currently pending in the Southern District of Ohio.  *See McGirr v. Rehme*, Case No. 1:16-cv-464, Judge Robert Cleland presiding.  The judgment creditors have asserted claims including fraudulent transfer, fraud, and civil conspiracy against Chesley and WSBC.  (*See* Doc. 1, Complaint, and Doc. 60-1, Proposed Amended Complaint).  These claims stem from Chesley's repeated transfer

4814-2619-7819.v2

of funds and assets out of his name and his continued use of WSBC as his own personal piggy bank, with the intent to hinder the judgment creditors from collecting the Chesley Judgment.

The judgment creditors also moved for a temporary restraining order, requesting in part that certain fees due to be paid to WSBC in connection with the *Duke Energy* class action settlement be paid into escrow with the court. (*See* Case No. 1:16-cv-464, Doc. 4). In response to the Motion to Substitute, the *Duke Energy* court transferred the motion to Judge Cleland, finding that the same issues were pending before him. (*See Williams v. Duke Energy* Order, attached hereto as Exhibit J). Judge Cleland then granted the temporary restraining order to this extent and ordered those fees paid into escrow, where they remain. (*See McGirr v. Rehme* Order, attached hereto as Exhibit K).

Several motions are pending before that court, including a motion requesting the appointment of a receiver over WSBC and a motion for preliminary injunction to enjoin Chesley from continuing to control WSBC and its assets. That Court has issued temporary injunctive relief on three separate occasions (see Docs. 75, 78, 83).

## II.     Law and Argument

### A.     Movants are the Real Parties in Interest For Receipt of Fees and Costs—Not WSBC or Chesley.

Rule 17 of the Federal Rules of Civil Procedure provides that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). Under the rule, the real party in interest is the person who is entitled to enforce the right. *See United States ex rel. Eisenstein v. City of New York,* 556 U.S. 928, 935 (2009) (citing Black's Law Dictionary). "[C]ourts have allowed substitution under Rule 17(a) where to do so would be to prevent forfeiture and injustice." *Taylor v. Comcast Cablevision of Ark., Inc.*, 252 F. Supp. 2d 793, 795

(E.D. Ark. 2003).  As it pertains to fee applications, the attorneys, not the parties, are the real parties in interest.  *See 19 Solid Waste Dep't Mechanics v. City of Albuquerque,* No. 99-2172, 2000 U.S. App. LEXIS 19114, *4-5 (10th Cir. 2000) (concluding that an attorney had standing to appeal his fee award because he is an aggrieved party and had the right to protect his property interest); *see also Gonter v. Hunt Valve Co., Inc*., 510 F.3d 610, 614-16 (6th Cir. 2007) (concluding that attorneys had standing to appeal a fee award because they were the real parties in interest); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 288 (7th Cir. 2002) (recognizing that "[w]hen a lawyer lays claim to a portion of the kitty, he becomes a real party in interest").

The Kentucky court granted Movants' motion to execute against Chesley's 100% ownership of the shares of WSBC.  That court considered substantial evidence that Chesley was the sole shareholder, sole member of the board of directors and, even after his disbarment in Kentucky and withdrawal from the practice of law in Ohio, he continued to control WSBC and direct where the funds were paid.  Thus, the Kentucky court concluded that Chesley and WSBC were one in the same.  Pursuant to that Kentucky court's orders, which remain valid and enforceable, as they have not been overturned on appeal, Movants are the real parties in interest to all fee income payable to WSBC and/or Chesley.

There is no dispute that certain of the fees and costs sought in this settlement are payable to WSBC and/or Chesley.  Although the fee application is not yet due, the facts and evidence before the Court show that Movants have a substantial interest in this income.  Under the Kentucky court's orders, Movants are the real parties in interest to the fees and expenses owed to WSBC and/or Chesley and should be substituted in their place.

**B.      Equity Permits This Court to Require Compliance with the Kentucky Court's Orders.**

4814-2619-7819.v2

This Court has the inherent power to do equity. *SEC v. Wing,* 599 F.3d 1189, 1194 (10th Cir. 2010) (recognizing a district court's general power to fashion relief in equity). The court similarly has the authority to implement effective remedies as justice requires. *See Dewey v. Reynolds Metals Co.*, 304 F. Supp. 1116, 1120 (W.D. Mich.1969) (citing *Griffin v. School Bd. of Prince Edward Cnty.*, 377 U.S. 218, 84 S. Ct. 1226, 12 L. Ed. 2d 256 (1964)). Similarly, to the extent that the Kentucky court's orders have been ignored, this Court has the power to assign a remedy to such conduct. *See SEC v. Thomas,* 116 F.R.D. 230, 233 (D. Utah 1987) (citing *Roadway Express v. Piper,* 447 U.S. 752, 764-67, 65 L. Ed. 2d 488, 100 S. Ct. 2455 (1980); *In re Bjella,* 806 F.2d 211, 215 (10th Cir. 1986)*; Charczuk v. Commissioner,* 771 F.2d 471, 475 (10th Cir. 1985)) (recognizing that "federal courts may remedy misconduct pursuant to inherent powers as a court of equity.").

Here, equity demands that the Kentucky court's execution orders be followed. And it is clear that Chesley, WSBC and their counsel have no intention of complying with the Kentucky orders, as it does not appear they have disclosed them to this Court. The judgment creditors are entitled to receive all funds due Chesley and/or WSBC in this action. Accordingly, the Court should order that any funds owed to Chesley and/or WSBC be paid to Movants.

## III.     CONCLUSION

Movants are the real parties in interest to all fees and expenses payable to Chesley and/or WSBC and request that they be substituted. Movants succeeded to Chesley's interest in WSBC and all fees payable to WSBC pursuant to a final judgment which has not been stayed or overturned on appeal and pursuant to a Kentucky court's orders enforcing it's judgment and permitting execution against funds owed to Chesley and/or WSBC. This Court should order the

4814-2619-7819.v2

fees and expenses payable in this case  to be paid to Movants.  In the alternative, this Court

should order that any fees owed to WSBC and/or Chesley be placed in escrow pending decisions

by the Southern District of Ohio in case no. 1:16-cv-464, Judge Cleland presiding.

Dated: November 2, 2016.

Respectfully submitted,

*/s/  John S. Zakhem*

John S. Zakhem
JACKSON KELLY
1099 18th Street, Suite 2150
Denver, CO 80202
Phone: (303) 390-0351
Fax:  (303) 390-0177
Email:   jszakhem@jacksonkelly.com
***Attorney for Movants***

4814-2619-7819.v2