





Analysis
As of: Nov 01, 2016

THE STATE EX REL. FORD v. RUEHLMAN, JUDGE.

No. 2015-1470

SUPREME COURT OF OHIO

2016-Ohio-3529; 2016 Ohio LEXIS 1677

March 8, 2016, Submitted
June 21, 2016, Decided

**NOTICE:**

THIS SLIP OPINION IS SUBJECT TO FORMAL REVISION BEFORE IT IS PUBLISHED IN AN ADVANCE SHEET OF THE OHIO OFFICIAL REPORTS.

**SUBSEQUENT HISTORY:** Reconsideration denied by *State ex rel. Ford v. Ruehlman*, 2016-Ohio-7199, 2016 Ohio LEXIS 2521 (Ohio, Oct. 5, 2016)

**PRIOR HISTORY:** *State ex rel. Ford v. Ruehlman*, 143 Ohio St. 3d 1456, 2015-Ohio-3631, 2015 Ohio LEXIS 2339, 37 N.E.3d 170 (2015)

**DISPOSITION:** Judgment accordingly.

**CASE SUMMARY:**

**OVERVIEW:** HOLDINGS: [1]-A Kentucky creditor was not entitled to a writ of mandamus with respect to an Ohio judge's actions that shielded a former Ohio attorney from Kentucky creditors' collection efforts against the attorney with respect to a multimillion dollar judgment, as the court lacked jurisdiction to grant injunctive relief and the judge's recusal was not controlled through mandamus relief; [2]-However, a peremptory writ of prohibition was warranted because the judge patently lacked jurisdiction over the matter, in that he could not impose extrastatutory conditions on the filing of the Kentucky judgment in Ohio pursuant to the Uniform Enforcement of Foreign Judgments Act, *R.C. 2329.021 et seq.*, and he could not issue an injunction that barred the creditors from filing the judgment in Ohio altogether.

**OUTCOME:** Peremptory writ of prohibition granted; request for writ of mandamus denied. Judge ordered to vacate his orders.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Pleadings > Answers*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Dismiss*
[HN1] S.Ct.Prac.R. 12.04(A)(1) permits the respondent in an original action to file an answer "or" a motion to dismiss. The rule does not permit a party to file both.

*Civil Procedure > Justiciability > Mootness*
[HN2] An issue is moot when it has no practical significance and, instead, presents a hypothetical or academic question.

*Civil Procedure > Justiciability > Standing*
[HN3] Standing refers to whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy.

*Civil Procedure > Parties > Real Parties in Interest*
*Civil Procedure > Remedies > Writs > Common Law Writs > Prohibition*
[HN4] The Ohio Supreme Court has never held that a writ of prohibition is available only to the actual parties in the case the writ would halt. To the contrary, the Court has permitted non-parties to vindicate their interests when judges act in the absence of jurisdiction.

*Civil Procedure > Parties > Joinder > Compulsory Joinder*
[HN5] Civ.R. 19(A)(2)(a) mandates joinder of a party if that person claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may, as a practical matter, impair or impede his ability to protect that interest.

*Civil Procedure > Remedies > Writs > Common Law Writs > Prohibition*
[HN6] There are three elements necessary for a writ of prohibition to issue: the exercise of judicial power, the lack of authority for the exercise of that power, and the lack of an adequate remedy in the ordinary course of law.

*Civil Procedure > Remedies > Writs > Common Law Writs > Prohibition*
*Evidence > Procedural Considerations > Burdens of Proof > Allocation*
[HN7] The second requirement for a writ of prohibition is showing that the exercise of judicial power is unauthorized by law. If the absence of jurisdiction is patent and unambiguous, then a relator need not establish the third prong, the lack of an adequate remedy at law.

*Civil Procedure > Judgments > Entry of Judgments > Enforcement & Execution > Foreign Judgments*

*Constitutional Law > Relations Among Governments > Full Faith & Credit*
[HN8] Ohio has adopted the Uniform Enforcement of Foreign Judgments Act, R.C. 2329.021 et seq. The purpose of the Act is to give full faith and credit to foreign judgments as required by U.S. Const. art. IV, § 1. The Act sets forth the procedure for domesticating foreign judgments, i.e., filing the judgment in Ohio to ensure its recognition and enforcement.

*Evidence > Procedural Considerations > Burdens of Proof > Allocation*
*Civil Procedure > Judgments > Entry of Judgments > Enforcement & Execution > Foreign Judgments*
[HN9] The first step in the process for domesticating foreign judgments under the Uniform Enforcement of Foreign Judgments Act, R.C. 2329.021 et seq., is to file a properly authenticated copy of the judgment with the clerk of any common pleas court. R.C. 2329.022. Along with the foreign judgment, the creditor or the creditor's attorney must file with the clerk an affidavit setting forth the name and last known address of the judgment debtor and the judgment creditor. R.C. 2329.023(A). In addition, the judgment creditor or his or her attorney must file a praecipe instructing the clerk to issue a notice of the filing to the judgment debtor, which notice must include the name and address of the judgment creditor and the name and address of the creditor's attorney in Ohio, if any. § 2329.023(B). Finally, the law forbids execution or other enforcement of the foreign judgment until 30 days after the date of filing. § 2329.023(C).

*Evidence > Procedural Considerations > Burdens of Proof > Allocation*
*Civil Procedure > Judgments > Entry of Judgments > Enforcement & Execution > Foreign Judgments*
[HN10] The Ohio Uniform Enforcement of Foreign Judgments Act, R.C. 2329.021 et seq., does not require judgment creditors to calculate and disclose their respective shares of the judgment, detail the amounts and dates on which they recovered money from other sources, or disclose the amount of money retained by their attorney.

*Civil Procedure > Judgments > Entry of Judgments > Enforcement & Execution > Foreign Judgments*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General*

*Jurisdiction*

[HN11] A common pleas court has jurisdiction over a foreign judgment once that judgment is filed in accordance with *R.C. 2329.022*.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Jurisdiction*
*Civil Procedure > Remedies > Writs > Common Law Writs > Prohibition*

[HN12] Even if a common pleas court has general jurisdiction over a case, a writ of prohibition will issue when the court seeks to take an action or provide a remedy that exceeds its statutory authority.

*Civil Procedure > Declaratory Judgment Actions > State Judgments > Scope*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions*

[HN13] While declaratory judgment statutes provide an additional remedy which may be granted by a court, they do not extend the jurisdiction as to the subject matter upon which a court may act. For this reason, a common pleas court cannot use the declaratory-judgment statute to decide matters over which it otherwise has no jurisdiction.

*Civil Procedure > Venue*
*Civil Procedure > Declaratory Judgment Actions > State Judgments > Factors*

[HN14] To be proper, a declaratory-judgment action must, among other things, be within the scope of the Declaratory Judgment Act. A request for a declaration of venue is not within the scope of the statute.

*Civil Procedure > Remedies > Writs > Common Law Writs > Prohibition*
*Civil Procedure > Parties > Joinder > Necessary Parties*

[HN15] A party's failure to join an interested and necessary party is a jurisdictional defect and warrants relief in prohibition.

*Civil Procedure > Remedies > Writs > Common Law Writs > Prohibition*

[HN16] Where it appears beyond doubt that relator is entitled to the requested extraordinary relief, a peremptory writ should issue.

*Civil Procedure > Remedies > Writs > Common Law Writs > Mandamus*
*Civil Procedure > Judicial Officers > Judges > Disqualifications & Recusals*

[HN17] Recusal is a matter of judicial discretion that cannot be controlled through mandamus. An affidavit of disqualification is a document which any party, or counsel for a party, has a right to file pursuant to *R.C. 2701.03*.

**HEADNOTES**

*Prohibition --Ohio judge patently lacks jurisdiction to issue injunction shielding Ohio attorney from collection efforts of Kentucky judgment creditors and other orders interfering with Kentucky court's attempts to enforce its judgments before Kentucky judgments were domesticated in Ohio--R.C. 2329.021 et seq.--Uniform Enforcement of Foreign Judgments Act--Judge has no authority to impose extrastatutory preconditions on filing of foreign judgment in Ohio--Writ of prohibition granted to prevent unauthorized exercise of judicial power and to vacate orders previously issued.*

**COUNSEL:** [**1] Dinsmore & Shohl, L.L.P., Brian S. Sullivan, and Christen M. Steimle, for relator.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and James W. Harper and Michael J. Friedmann, Assistant Prosecuting Attorneys, for respondent.

Cohen, Todd, Kite & Stanford, L.L.C., and Donald J. Rafferty; and Zeiger, Tigges & Little, L.L.P., and John W. Zeiger and Marion H. Little Jr., for intervenor Waite, Schneider, Bayless & Chesley Co., L.P.A.

Frost Brown Todd, L.L.C., and Vincent E. Mauer, for intervenor Stanley M. Chesley.

**JUDGES:** O'CONNOR, C.J., and O'DONNELL, LANZINGER, KENNEDY, and FRENCH, JJ., concur. PFEIFER, J., dissents with an opinion. O'NEILL, J., not participating.

**OPINION**

IN MANDAMUS and PROHIBITION.

**Per Curiam.**

[\*P1] The Boone County, Kentucky, Circuit Court has entered a multimillion dollar judgment against former attorney Stanley M. Chesley. Denied relief from the judgment by the Kentucky courts, Chesley has turned to the courts of Ohio to thwart collection of the judgment and relitigate the case. And Chesley has found a receptive audience in the respondent, Hamilton County Common Pleas Court Judge Robert Ruehlman. In *Chesley v. Ford*, Hamilton C.P. No. A1500067, Judge Ruehlman has repeatedly acted to [\*\*2] shield Chesley and his assets from creditors, despite a patent lack of jurisdiction.

[\*P2] Relator, Angela M. Ford, seeks a writ of prohibition to preclude Judge Ruehlman from continuing to exercise jurisdiction over the Hamilton County case. Chesley and his former law firm, as intervenors, oppose this request on the merits and also based on a claim of mootness. We grant a peremptory writ of prohibition and order Judge Ruehlman to vacate his orders. We deny Ford's request for a writ of mandamus.

*Background*

*The Kentucky proceedings*

[\*P3] In 1998, attorneys William Gallion, Shirley Cunningham, and Melbourne Mills filed a class-action lawsuit in Boone County, Kentucky, captioned *Guard v. A. H. Robins Company*, on behalf of approximately 431 persons who claimed to have been injured by the use of the diet drug "fen-phen."[1] Chesley was counsel in a separate fen-phen suit in Boone County, which he succeeded in consolidating with the *Guard* class action. Chesley, Gallion, Cunningham, Mills, and another attorney then entered into fee-sharing agreements that were not disclosed to the clients.

> 1 The facts concerning the *Guard* litigation are taken from the decision of the Kentucky Supreme Court in *Kentucky Bar Assn. v. Chesley*, 393 S.W.3d 584 (Ky.2013).

[\*P4] The parties reached [\*\*3] a settlement agreement. American Home Products, the manufacturer of fen-phen, agreed to pay $200 million in settlement of the claims brought by the 431 named plaintiffs in return for dismissal of their claims with prejudice. The class would be voluntarily decertified, and the classmember claims dismissed without prejudice. The clients were not informed of these facts before the agreement was executed and the claims dismissed. American Home ultimately disbursed $200,450,000 to the client trust accounts of Chesley and Cunningham. The clients received $46,000,000 (approximately 23 percent). Chesley personally retained $20,497,121.87.

[\*P5] In 2005, several of the *Guard* clients filed suit against Chesley, Gallion, Cunningham, Mills, and the Kentucky Fund for Healthy Living in the Circuit Court of Boone County, Kentucky, alleging misconduct and misappropriation of the settlement funds.[2] The case was styled *Abbott v. Chesley* (the "*Abbott* case"), case No. 05-CI-436. Angela Ford, relator in the instant action, is an attorney licensed to practice in the Commonwealth of Kentucky, and she represented the plaintiffs in the *Abbott* litigation.

> 2 The Kentucky Fund for Healthy Living was an allegedly "charitable" [\*\*4] organization set up by Chesley "to harbor millions of dollars of the settlement money that was not distributed to the clients." *Kentucky Bar Assn. v. Chesley*, 393 S.W.3d 584, 590, (Ky.2013), fn. 6.

[\*P6] On March 8, 2006, the Boone County court found Cunningham, Gallion, and Mills liable for breach of fiduciary duty. In a later order, dated August 1, 2007, the court awarded damages in the amount of $42,000,000.

[\*P7] The question of Chesley's liability remained unresolved for seven years. In the interim, the Kentucky Supreme Court permanently disbarred Chesley for his conduct in the *Guard* litigation. *Kentucky Bar Assn. v. Chesley*, 393 S.W.3d 584 (Ky.2013). He is registered in Ohio as "permanently retired."

[\*P8] On April 15, 2013, shortly after his Kentucky disbarment, Chesley executed a wind-up agreement for his law practice, Waite, Schneider, Bayless & Chesley Co., L.P.A. ("WSBC"), of which he was the sole shareholder. Pursuant to the agreement, Chesley transferred his shares in WSBC to Thomas F. Rehme, who would hold the shares in trust for the purpose of winding up the corporation's affairs. Chesley was entitled to receive any proceeds remaining from the liquidation of the firm's assets after the creditors were paid. In addition, the agreement preserved Chesley's right to share in legal fees relating to services performed [\*\*5] before the date of the transfer.

[\*P9] On August 1, 2014, Boone County Circuit

Court Judge James R. Schrand granted a motion for partial summary judgment in the *Abbott* case and held Chesley liable, jointly and severally with Cunningham, Gallion, and Mills, for the $42,000,000 judgment.

[*P10] On August 11, 2014, Chesley petitioned the Boone County court to reconsider and vacate the partial-summary-judgment order. Judge Schrand denied the motions on September 19, 2014.

[*P11] Chesley responded with a motion for clarification, on October 20, 2014, seeking an order to compel the *Abbott* plaintiffs to identify by name each party-plaintiff, the capacity in which each was suing (individual or representative), and the amount of the judgment attributable to each individual. Judge Schrand denied that motion as well.

[*P12] On October 22, 2014, Judge Schrand issued a second amended judgment against Chesley, which added language designating the order as final and appealable. Chesley filed a motion to vacate the second amended judgment, which was also denied.

*The Ohio proceedings*

[*P13] On January 6, 2015, Chesley filed suit in the Common Pleas Court of Hamilton County against attorney Ford and "possibly over 400 John Doe or Jane [**6] Doe" respondents. These so-called "Unknown Respondents" were the *Abbott* case judgment creditors. At the time Chesley filed his lawsuit, Ford and the *Abbott* plaintiffs had taken no steps to domesticate or enforce their judgment in Ohio.

[*P14] In his complaint, Chesley requested five specific orders:

1. A declaration that before respondents could take any action in Ohio to enforce the *Abbott* judgment, Chesley is entitled to know, and Ford must immediately disclose to Chesley and the court, the name, address, and amount owed to each judgment creditor, and the exact current total amount owed on the judgment.

2. A declaration that Chesley is entitled to know, and Ford must immediately disclose to Chesley, the amount of money and value of assets recovered pursuant to the 2007 judgment against Gallion, Mills, and Cunningham, the date on which payments were made or assets forfeited or seized, the total amount distributed to the judgment creditors, the amount collected and not distributed, and the total amount distributed to the Unknown Respondents pursuant to the settlement agreement and in the *Abbott* case, after reduction for Ford's fees and expenses.

3. An injunction to prevent Ford, the Unknown [**7] Respondents, or anyone acting on their behalf from taking any action in the state of Ohio to collect the *Abbott* judgment until 90 days after Chesley receives the information.

4. An injunction to prevent Ford, the Unknown Respondents, or anyone acting on their behalf from registering or domesticating the judgment against Chesley in Ohio, or issuing subpoenas or other discovery to parties in Ohio, until 90 days after Chesley receives the information.

5. An injunction to prevent the destruction of documents relevant to the issues in Chesley's pleadings.

[*P15] The case was assigned to Judge Ruehlman.

[*P16] The next day, January 7, 2015, Judge Ruehlman entered an ex parte temporary restraining order. Under the terms of the order, for the next 14 days:

1. Ford, any co-counsel, and any Ohio lawyer representing the Unknown Respondents were enjoined from taking any action in Ohio to enforce the *Abbott* judgment against Chesley or serve any Chesley-asset-related discovery on any Ohio resident, citizen, or domiciliary, except Chesley himself.

2. Ford, any co-counsel, and any Ohio lawyer representing the Unknown Respondents were enjoined "from making any filing in any Ohio court that would be or could be part [**8] of an effort to domesticate or register" the *Abbott* judgment in Ohio.

3. Ford, the Unknown Respondents, and any person acting on their behalf were enjoined from taking any action to collect the *Abbott* judgment in Ohio from any Ohio resident, citizen, or domiciled entity, other than Chesley.

4. Ford, the Unknown Respondents, and any person acting on their behalf were enjoined from issuing any subpoena seeking documents or testimony to any Ohio resident, citizen, or domiciled entity, other than Chesley, if the purpose of the requested documents or testimony is to obtain information related to efforts to enforce the

*Abbott* judgment.

5. Ford, the Unknown Respondents, and any person acting on their behalf were enjoined from destroying, damaging, or secreting any documents or electronically stored information relating to a host of topics.[3]

> 3  Specifically, the order shielded documents relating to any issues described in Chesley's petition, including documents reflecting funds collected and/or credited against the *Abbott* judgment against Chesley's former co-counsel, the restitution obligations of his former co-counsel, the forfeiture of assets in *Abbott*, funds transferred to or from a person identified [**9] only as "Johnston," funds transferred to or for the benefit of victims who were not plaintiffs in *Abbott*, amounts distributed to the *Abbott* plaintiffs, the operation of the "Tandy L.L.C." receivership, funds transferred to or by the United States Marshals Service relating to the criminal case or *Abbott*, and the legal fees and expenses of Ford and her *Abbott* co-counsel.

[*P17] One week later, Judge Ruehlman entered an order extending the injunction to keep the restrictions of the TRO in force until further order of the court. Judge Ruehlman modified the TRO in one respect: whereas the first order permitted Ford to serve discovery on Chesley, the extended order clarified that such discovery could only occur in a non-Ohio jurisdiction. The order expressly stated that Chesley was not required to post any security.

[*P18] In February 2015, Ford removed the case to federal court, based on diversity jurisdiction. She then filed motions to dissolve the restraining order and to dismiss the complaint. The motion to dismiss argued that Ohio had no personal jurisdiction over Ford, that the complaint identified no justiciable case or controversy, and that the complaint constituted an impermissible collateral [**10] attack against a final judgment from another jurisdiction, in violation of the *Full Faith and Credit Clause, Article IV, Section 2 of the U.S. Constitution*.

[*P19] In response, Chesley filed a motion in the federal district court for leave to file an amended complaint to identify six *Abbott* judgment creditors by name. The newly named parties were all Ohio residents. Chesley then filed a motion to remand the case on the grounds that diversity jurisdiction did not exist.

[*P20] U.S. District Court Judge Peter C. Economus found that "Chesley's primary purpose in amending his complaint [was] to destroy the Court's apparent diversity jurisdiction over the original complaint." *Chesley v. Ford*, S.D.Ohio No. 1:15-cv-83, 2015 U.S. Dist. LEXIS 44772, 2015 WL 1569103, at *3 (Apr. 6, 2015). Nevertheless, he permitted the amendment and granted the remand motion.

[*P21] Once the case returned to state court in May 2015, Judge Ruehlman denied Ford's motions to dismiss the case and to dissolve the injunction. He denied Ford's request for security for the injunction.

*Dueling proceedings*

[*P22] Since then, litigation has proceeded in both Kentucky and Ohio, with the two courts in direct and open conflict. For example, Ford served a subpoena duces tecum on the Kentucky offices of the accounting firm Clark Schaefer Hackett, seeking financial and tax records for Chesley, [**11] WSBC, or any other entity in which they hold an interest. Clark Schaefer refused to comply, in part because it contended that the subpoena violated Judge Ruehlman's injunction. Judge Schrand granted a motion to compel Clark Schaefer to respond, holding that the subpoena did not violate Judge Ruehlman's order because an Ohio injunction "cannot limit [a Kentucky court's] ability to Order a business located and transacting business in Kentucky to comply with Kentucky law to secure a Judgment from a Kentucky case." However, Judge Ruehlman later declared that filing a motion to compel in Kentucky against Clark Schaefer *did* violate the restraining order.

[*P23] Likewise, Judge Schrand granted in part a motion to hold Chesley in contempt for failing to provide discovery responses, only to have Judge Ruehlman declare the filing of that motion a breach of his restraining order.

[*P24] On January 15, 2015, one day after the second restraining order, the *Abbott* judgment creditors filed a motion in Boone County for an order compelling Chesley "to withdraw all efforts to stay this Court's judgment against [him] that do not comply with" certain Kentucky Rules of Civil Procedure. Chesley responded with a motion [**12] in Hamilton County seeking an "amplification" of the restraining order to address what

he characterized as Ford's continuing violations and misrepresentations of the order.

[*P25] But the most contentious issue involved WSBC, the law firm whose shares Chesley had placed in trust for purposes of winding up its affairs. On May 21, 2015, Ford filed a motion in the *Abbott* case seeking an order to compel Chesley to transfer his beneficial interest in property held in trust to the *Abbott* plaintiffs. The motion's description of the nature of the property was redacted and the original filed under seal. But later documents make clear that the property in issue was Chesley's anticipated income from WSBC cases predating his retirement.

[*P26] On June 23, 2015, Judge Schrand granted the motion. He noted that Chesley had transferred more than $59 million from his personal accounts to WSBC, including more than $1.3 million on or after the date of the wind-up agreement. Finding that he had personal jurisdiction over Chesley, the judge ordered him to transfer his beneficial interest in the shares of WSBC to the plaintiffs within 14 days and ordered him to instruct Rehme, the WSBC trustee, to direct all payments [**13] owed to Chesley to the plaintiffs, through their counsel, Ford. Finally, he ordered that if Chesley receives any money from his interest in WSBC, he must immediately pay it over to Ford. Chesley unsuccessfully sought to take an interlocutory appeal of the transfer order in Kentucky.

[*P27] Three days later, on June 26, 2015, WSBC filed a motion for leave to intervene, not in *Abbott*, but in the *Chesley* case pending before Judge Ruehlman in Hamilton County. In the same motion, WSBC requested declaratory and injunctive relief to protect itself and trustee Rehme (who was not named as a party) from having to comply with Judge Schrand's transfer order.

[*P28] Judge Ruehlman granted WSBC's motion to intervene on August 26, 2015. In the same order, without a hearing, he granted WSBC's motion for declaratory and injunctive relief. Declaring the transfer motion a violation of his restraining order, he ordered WSBC "to disregard and not effectuate any of the Kentucky Orders as same may apply to WSBC or the Trust either directly or indirectly, including but not limited to the Transfer Order." In addition, he ordered Rehme (who, again, was not a party) to disregard any orders of the Kentucky court, to refuse [**14] to transfer Chesley's interest in the WSBC shares, and to refuse any request *from Chesley* for WSBC's financial records, to the extent that such request emanates from discovery requests or orders in the Kentucky case. Finally, he reaffirmed that his injunction order remained in effect.

[*P29] WSBC filed its formal complaint as intervenor in the *Chesley* suit on September 4, 2015. WSBC requested a declaratory judgment that Judge Ruehlman has exclusive jurisdiction to decide all issues regarding collection efforts against WSBC by Ford and/or the *Abbott* creditors. In addition, WSBC requested a series of injunctions and declaratory judgments to prevent the *Abbott* creditors from seeking discovery concerning WSBC or attempting to take collection action against WSBC and ordering Rehme not to comply with any orders from the Kentucky court or any instructions from Chesley based on those orders.

[*P30] On September 3, 2015, the *Abbott* creditors filed a motion before Judge Schrand to compel Chesley to comply with the transfer order. Five days later, Chesley answered with a motion before Judge Ruehlman seeking an order shielding him from having to comply with the transfer order. On September 25, 2015, back in [**15] Kentucky, Judge Schrand issued his order on the motion.

[*P31] Judge Schrand began by recounting the history of the litigation, noting that Chesley had made no payments to plaintiffs and that the court had already granted multiple motions to compel against Chesley. He cited evidence that Chesley had been dishonest in his partial discovery responses, specifically, that he omitted a case from his list of fee-generating cases and then amended his responses only after the *Abbott* creditors brought the case to the court's attention.

[*P32] Finally, Judge Schrand declared that Chesley continued to maintain control over WSBC, based on detailed findings of fact, including that in October 2014, Chesley directed payment of over $16,000,000 in fees from Fannie Mae litigation into two separate accounts and directed payments of more than $300,000 from WSBC accounts to his attorneys. The judge declared the wind-up agreement "a sham":

> The Court finds [that Chesley] is utilizing WSBC and its existence during what is supposed to be a wind-up period, to prevent Plaintiffs, his judgment creditors, from executing on their Judgment. The Court finds he is taking

action to render himself insolvent while directing assets [**16] to WSBC, including fees from the Fannie Mae Litigation and tobacco litigation, and the transfer of $59 million from his personal accounts to WSBC.

Judge Schrand ordered, among other things, that Chesley immediately transfer his ownership interest in WSBC to the *Abbott* judgment creditors.

*The Supreme Court litigation*

[*P33] On September 4, 2015, Ford commenced the present action in this court for writs of prohibition and mandamus against Judge Ruehlman. At the same time, she filed a motion seeking an emergency stay and an alternative writ. Judge Ruehlman filed a combined motion to dismiss and memorandum in opposition to the motion for emergency stay. On September 17, 2015, this court granted an emergency stay of Judge Ruehlman's orders pending resolution of the case. *146 Ohio St. 3d 1420, 2015-Ohio-3783, 2015 Ohio LEXIS 2525, 52 N.E.3d 1197.* On October 2, 2015, Judge Ruehlman filed an answer and a motion for judgment on the pleadings.

[*P34] On October 5, 2015, Chesley and WSBC filed a joint motion to intervene. The next day, WSBC and Chesley filed three motions: for expedited consideration of the motion to intervene, for judgment on the pleadings, and to vacate this court's September 17 stay order. Ford filed memoranda in opposition to Judge Ruehlman's motion for judgment [**17] on the pleadings and in opposition to the motions filed by WSBC and Chesley to intervene and to vacate the stay order.

[*P35] On October 21, 2015, after Judge Ruehlman's injunction had been in effect for nearly two years, Chesley and WSBC abruptly filed a notice of voluntary dismissal without prejudice of all claims against Ford in the Hamilton County case. Judge Ruehlman promptly filed a "suggestion of mootness" with this court. In response, Ford filed a motion to join Linda Brumley, one of the named *Abbott* judgment creditors, as a co-relator. WSBC filed a motion for leave to file a memorandum in opposition to joinder, along with the proposed memorandum.

[*P36] On December 30, 2015, this court granted the motion of Chesley and WSBC for leave to intervene and denied their motion for expedited consideration of their various motions. *144 Ohio St.3d 1438, 2015-Ohio-5468, 43 N.E.3d 450.*

*Recent developments*

[*P37] On November 25, 2015, Ford filed a document entitled "Notice of Respondent's Latest Order." WSBC and Chesley filed a motion for leave to file a responsive memorandum, along with a copy of the proposed memorandum. The two pleadings provided the following additional information:

[*P38] On October 19, 2015, Judge Schrand granted a motion for a showcause order [**18] and scheduled a hearing for the morning of October 29, 2015. Judge Schrand's order expressly stated that "Defendant Stanley M. Chesley is hereby ordered to appear." However, Chesley did *not* appear, and so Judge Schrand issued a warrant of arrest against him on a charge of contempt for failure to appear. The warrant indicated that Chesley "may post bail in the amount of $647,815.64, secured by CASH."

[*P39] At 12:58 p.m. on November 19, 2015, Chesley filed case No. A1506294, a new lawsuit in Hamilton County Common Pleas Court against Hamilton County Sheriff Jim Neil, seeking an order prohibiting enforcement of the arrest warrant in Ohio or, alternatively, permitting enforcement only with prior approval from the Hamilton county court. The case was assigned to Judge Ruehlman, who held a hearing on the new filing that very same afternoon.

[*P40] Judge Ruehlman began by criticizing--and calling into question--the legitimacy of Judge Schrand's contempt order, the underlying judgment, and even the order disbarring Chesley:

> THE COURT: First of all, they--I want to be fair and give people a hearing. I know they issued summary judgment against him. Of course, most attorneys know I don't like summary judgments. [**19] I don't grant many of them, you know, I like to give people their day in court. They didn't give him his day in court at all--
>
> [Chesley attorney Vincent] MAUER: No sir, they did not.

THE COURT: --over there. The disciplinary process too was interesting because over in Ohio we have our own little police force that disciplines us. Over there-- I think Mississippi and Kentucky allow attorneys to discipline, so you have a lot of jealousy and stuff like that.

MR. MAUER: Yeah. It's a different system that we have, yes, sir.

THE COURT: So the issue--so what happened, so they issued a judgment against him without--I mean, they didn't give him due process at all. I mean, they didn't let him have his day in court, did they?

* * *

THE COURT: I am not necessarily taking his side or anybody's side, I think everybody needs a day to at least give their side of the story. He never got that chance.

So what's happening now, so the Judge--

MR. MAUER: The Judge in Kentucky--

THE COURT: Forty-two million dollar judgment against him.

MR. MAUER: Forty-two million dollar judgment--

THE COURT: --on a summary judgment.

MR. MAUER: On a summary judgment, yes, sir.

THE COURT: That's pretty unprecedented.

MR. MAUER: The Judge in Kentucky-- [**20]

THE COURT: I don't think--has that ever happened at anyplace in the United States?

MR. MAUER: It's a lot of money for summary judgment, that's for certain, Judge.

THE COURT: I know.

* * *

THE COURT: It just doesn't seem fair. I try to be fair.

The prosecutor, on behalf of Sheriff Neil, stated that he had no objection to the requested relief. Counsel for Ford and the creditors were not present and apparently were not informed.

[*P41] Judge Ruehlman then signed an order presented to him by Chesley's attorney. The order declared that Chesley "chose not to appear at the Show Cause hearing because his appearance would have been irrelevant to any finding concerning implementation of the Transfer Order in Ohio," a preliminary factual finding for which Judge Ruehlman had no basis. The order criticized multiple aspects of the warrant. For example, it stated that it was unclear whether the contempt finding was civil or criminal and direct or indirect, claimed that the bond amount was unclear, and most remarkably, complained that "the apparent bond amount is extremely high, and the apparent bond amount seems to have been set without any evidentiary support or cause to believe Chesley could post that amount." [**21] Judge Ruehlman further stated: "Assuming the Warrant scts a bond of $647,815.64, that amount is inappropriate if nothing in the Boone Circuit Court record explains (i) why such a high amount is needed to insure Chesley would appear as required at an Ohio extradition hearing and (ii) if Chesley can post the bond."

[*P42] The order concluded that "[t]he events surrounding the issuance of the Warrant and the post-issuance activities appear to show that the Warrant is not a routine bench warrant" and therefore "should not be routinely enforced in Ohio." Therefore, "[n]o law enforcement officer in Ohio will detain or arrest Stanley M. Chesley in reliance on the Warrant without the express prior approval of the Court immediately before Chesley is detained or arrested." And Sheriff Neil was directed to place the order in any court system, computer system, or other file where it might be seen by Ohio law

enforcement.

[*P43] The *Abbott* judgment creditors did eventually file a collection case against Chesley in Ohio, *Abbott v. Chesley*, Hamilton C.P. No. M151179, an action that had been prohibited by Judge Ruehlman until we entered a stay of his orders. Chesley promptly filed for a stay of those proceedings, including [**22] a stay on the issuance of subpoenas. On October 19, 2015, Hamilton County Common Pleas Court Judge Steven E. Martin granted a 30-day stay on the enforcement of subpoenas, without explanation. According to Ford, Judge Martin orally extended the stay and "it was heard again on December 14, 2015," but the record does not indicate what he did when the parties appeared before him or whether that stay remains in effect.

*Additional facts*

[*P44] We note with great concern the representations that Judge Ruehlman and others have made to the *Abbott* creditors. For example, on August 19, 2015, during a hearing before Judge Ruehlman, Carol Boggs, an *Abbott* judgment creditor who Chesley had just added as a named defendant, appeared pro se and was permitted to address the court. Ms. Boggs expressed bewilderment over how Chesley could sue *her* when she had done nothing to him and lamented that she could not afford a lawyer. In response, Judge Ruehlman and Chesley's counsel, Vincent Mauer, repeatedly assured Ms. Boggs that she had no reason to defend herself:

> MR. MAUER: We have not asked for any money from you in this lawsuit, and we're not going to. We've now--
>
> THE COURT: Yeah. It's more procedure, they are not [**23] going to take anything from you.
>
> MR. MAUER: We're not asking for judgment against you. We're not going to take any money from you. We're not going to try and take anything. We're not going to take your car or your house or any of that kind of stuff.
>
> * * *
>
> MR. MAUER: * * * And we've really only added--Judge, as you know, we only added any individual Ohio residents after [Ford's attorney] chose to try and remove the case to Federal Court.
>
> THE COURT: Right.
>
> MR. MAUER: Which ultimately proved futile, you know, from their efforts.
>
> THE COURT: Yeah, it's more procedural.
>
> MR. MAUER: Ms. Boggs is here today really because Ms. Ford tried to remove this litigation, and that's the honest truth and the way things went down.
>
> THE COURT: Right. Yeah, she tried to remove it to Federal Court.
>
> MR. SULLIVAN [Ford's attorney]: Your Honor, if I may? I'm stunned that Mr. Mauer would somehow suggest that I am responsible for Ms. Boggs being a defendant in this case. She is one of the respondents who's identified in the original complaint as an unknown respondent, she is a judgment creditor.
>
> THE COURT: Well, you tried to bring it to Federal Court, to get it out of here to Federal Court, right?
>
> MR. SULLIVAN: I did.
>
> THE [**24] COURT: In response to that then you filed--you said there was Ohio residents not diversity, right?
>
> MR. MAUER: Correct, Judge.
>
> THE COURT: That's the reason why you bring Ms. Boggs in. You're not going to be--no judgment is going to be entered against you or take any money from you or anything like that. I won't allow that to happen. So you don't have to worry, you don't need a lawyer. It's a procedural thing, that's all.
>
> * * *

MR. SULLIVAN: * * * They identified her to defeat diversity--

THE COURT: Right.

MR. SULLIVAN: --so it gets remanded back. * * *

* * *

THE COURT: They are not looking for any money against her or anything like that.

MS. BOGGS: They have required me to answer that summons in 28 days. There's nothing in there to answer to.

THE COURT: Right. What about that, so she doesn't worry about this?

MR. MAUER: Your Honor, there's--if Ms. Boggs chooses not to retain counsel and be involved, I have a strong suspicion that everything Mr. Sullivan does on behalf of Ms. Ford will roll in her favor or not--

THE COURT: Right.

MR. MAUER: --as it goes forward.

THE COURT: Yeah. She doesn't have to respond or get a lawyer, right?

MR. MAUER: We're not going to ask her to get a lawyer. We're not going to ask [**25] her--

THE COURT: It was just a procedural thing to defeat the diversity--to defeat the Federal Court's jurisdiction, that's all. They are not looking for anything. You don't have to respond. You don't need to get a lawyer, just wait. It all depends on what happens with the different courts fighting over the money and stuff, so don't worry about that.

MS. BOGGS: Thank you.

THE COURT: You don't have to worry about anything, okay?

MS. BOGGS: I do.

THE COURT: Yeah, well, you don't have to.

MS. BOGGS: I struggle every month to pay for my house to keep from losing it.

THE COURT: Well, don't worry about that. You don't have answer anything or hire a lawyer or anything like that. All right. So don't worry about it.

MS. BOGGS: Thank you.

THE COURT: Right, nobody is going to go after her?

MR. MAUER: That's correct, Judge.

[*P45] The transcript shows that both Chesley's counsel *and the trial court* repeatedly assured Ms. Boggs that she did not need to hire an attorney because she had nothing at risk in the action. That representation was patently false: a judgment in favor of Chesley could have a dramatic effect on how much money Ms. Boggs and the other creditors are able to recover and when.

[*P46] Donald Rafferty, counsel [**26] for WSBC, whose motion to intervene was pending, was present for this exchange. He remained silent.

[*P47] What makes this situation more disturbing is Mr. Mauer's representation that Ms. Boggs need not concern herself with the case because Ford is present as a defendant, and any arguments she makes will inure to Ms. Boggs's benefit. Two months later, all claims against Ford were voluntarily dismissed. So the only defendants left in the case before Judge Ruehlman are the "Unknown Respondents," i.e., the individual *Abbott* judgment creditors, who are unrepresented and have not even appeared in the case. In essence, Judge Ruehlman is presiding over a sham lawsuit.

[*P48] Finally, we take judicial notice of recent judicial proceedings before United States District Court Judge James G. Carr. On February 5, 2016, Judge Carr issued a show-cause order against Chesley and his attorneys in the case of *Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*, N.D.Ohio No. 1:11CV851, 2016 U.S. Dist. LEXIS 14040, 2016 WL 447021. That

case began as a fee-collection action by WSBC against a former client, at which Chesley appeared as the firm's representative. During trial, facing the possibility of a deadlocked jury, the parties reached a confidential [**27] settlement.

[*P49] After Judge Carr signed the dismissal entry, one of the *Abbott* claimants filed a motion to compel disclosure of the settlement agreement and have the proceeds turned over to her attorney. Until that filing, Judge Carr was unaware of:

o The wind-up agreement transferring Chesley's shares to Rehme

o The $42,000,000 judgment against Chesley in Boone County

o The June 23, 2015 order to convey Chesley's beneficial interest in WSBC, and all payments derived therefrom, to the *Abbott* plaintiffs

o Chesley's noncompliance with that order, and

o Judge Schrand's September 25, 2015 finding that the wind-up agreement was a sham and that Chesley continues to control and direct WSBC and use it to prevent collection.

*2016 U.S. Dist. LEXIS 14040, [WL] at *2-3*. Judge Carr wrote, "I feel tricked, and complicit, albeit unwittingly so, in chicanery, duplicity, and mendacity." *2016 U.S. Dist. LEXIS 14040, [WL] at *3*. Finding a possible fraud on the court, he ordered Chesley and counsel to appear at a show-cause hearing on a date yet to be determined. *2016 U.S. Dist. LEXIS 14040, [WL] at *4*.

*Legal analysis*

*Procedural issues*

[*P50] At the outset, we dispense with a number of procedural motions. Specifically, we grant Chesley and WSBC's two motions for leave to file memoranda, dated November 4, 2015, and December 7, 2015.

[*P51] In addition, [**28] we hold that Judge Ruehlman's motion to dismiss has been withdrawn, and we deny the motion on that basis. [HN1] *S.Ct.Prac.R. 12.04(A)(1)* permits the respondent in an original action to file an answer "*or*" a motion to dismiss. (Emphasis added.) The rule does not permit a party to file both. By filing a subsequent answer and motion for judgment on the pleadings, Judge Ruehlman effectively withdrew or abandoned his prior pleading.

*Suggestion of Mootness*

[*P52] Ford is the only named relator in this case, and she has been dismissed from the underlying Hamilton County case before Judge Ruehlman. The threshold question for consideration, then, is whether this case can continue in light of Ford's dismissal. We answer the question in the affirmative.

[*P53] Judge Ruehlman frames his argument as follows: "As Ford is no longer a party in the underlying lawsuit, she has no right to request an extraordinary writ against a Hamilton County Judge in a lawsuit to which she is not a party. Therefore the Respondent suggests that this case is now moot."

[*P54] This argument confuses two distinct concepts, mootness and standing, neither of which is applicable.

[*P55] [HN2] An issue is moot "when it has no practical significance and, instead, [**29] presents a hypothetical or academic question." *State v. Moore, 4th Dist. Adams No. 13CA987, 2015-Ohio-2090,* ¶ 7; *Brenneman Bros. v. Allen Cty. Commrs., 3d Dist. Allen No. 1-14-15, 2015-Ohio-148,* ¶ 40, fn. 2. The issues raised in Ford's complaint are not moot. Judge Ruehlman continues to exercise jurisdiction over the Hamilton County case. More importantly, his restraining order in that case remains in force and effect, or at least it will if this court vacates its stay. And because the restraining order expressly binds all agents and attorneys who might act on behalf of the *Abbott* plaintiffs, Ford remains subject to its terms, notwithstanding her dismissal as a named defendant.

[*P56] [HN3] Standing, on the other hand, "refers to whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." *Davet v. Sheehan, 8th Dist. Cuyahoga No. 101452, 2014-Ohio-5694,* ¶ 22. Ford has a personal stake in the underlying matter because, as plaintiffs' counsel in *Abbott*, she is entitled to a percentage of any sums recovered. Judge Ruehlman's freeze on collection efforts directly affects Ford's pecuniary interests.

[*P57] The argument in the suggestion of

mootness, which Chesley and WSBC elsewhere join, is a variation on standing. They assert [**30] that a relator seeking a writ of prohibition must be a party to the underlying litigation. But [HN4] we have never held that a writ of prohibition is available only to the actual parties in the case the writ would halt. To the contrary, we have permitted nonparties to vindicate their interests when judges act in the absence of jurisdiction. *See State ex rel. Plain Dealer Publishing Co. v. Floyd*, 111 Ohio St.3d 56, 2006-Ohio-4437, 855 N.E.2d 35, ¶ 26 (nonparty members of the press and public have standing to seek a writ of prohibition to secure access to a closed courtroom).

[*P58] The parties have not filed a formal motion to dismiss based on mootness, but we nonetheless make clear that we do not regard the case as moot. And because the case is not moot, we deny Ford's motion to join Linda Brumley as a relator. Ford cited [HN5] *Civ.R. 19(A)(2)*, which mandates joinder of a party if that person "claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (a) as a practical matter impair or impede his ability to protect that interest * * *." Ford sought to join Brumley, one of the judgment creditors, in order to avoid a mootness determination. According to the service certificate, the motion was not served upon her.

[*P59] We deny the motion because Ford will [**31] sufficiently protect Brumley's interests, so it is unnecessary to join her as a party. *See Williamsburg Assn. v. Robert C. Verbon, Inc.*, 6th Dist. Wood No. WD-00-061, 2001 Ohio App. LEXIS 5306, 2001 WL 1517855 (Nov. 30, 2001). Moreover, Brumley did not "claim an interest" she wished to protect by seeking to intervene in the underlying action or in this case. *Hartley v. Berlin-Milan Local School Dist.*, 69 Ohio St.2d 415, 418, 433 N.E.2d 171 (1982), fn. 6.

*The Motions for Judgment on the Pleadings*

[*P60] Judge Ruehlman and intervenors have filed motions for judgment on the pleadings on various grounds. We deny both motions.

[*P61] [HN6] There are three elements necessary for a writ of prohibition to issue: the exercise of judicial power, the lack of authority for the exercise of that power, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Elder v. Camplese*, 144 Ohio St.3d 89, 2015-Ohio-3628, 40 N.E.3d 1138, ¶ 13; *State ex rel. Vanni v. McMonagle*, 137 Ohio St.3d 568, 2013-Ohio-5187, 2 N.E.3d 243, ¶ 6. With respect to the first element, there is no dispute that Judge Ruehlman has exercised judicial power and continues to do so in Chesley's suit against the *Abbott* creditors.

[*P62] The issue raised by the *Civ.R. 12(C)* motions is whether Ford can meet [HN7] the second requirement for prohibition: showing that the exercise of that judicial power is unauthorized by law. *Id.* If the absence of jurisdiction is patent and unambiguous, then Ford need not establish the third prong, the lack of an adequate remedy at law. *State ex rel. Sapp v. Franklin Cty. Court of Appeals*, 118 Ohio St.3d 368, 2008-Ohio-2637, 889 N.E.2d 500, ¶ 15.

[*P63] For the following [**32] reasons, we hold that Judge Ruehlman patently and unambiguously lacks jurisdiction over both Chesley's complaint and WSBC's complaint.

*Chesley's complaint*

[*P64] Chesley's complaint seeks declaratory and injunctive relief that Judge Ruehlman has no legal authority to provide. [HN8] Ohio has adopted the Uniform Enforcement of Foreign Judgments Act, *R.C. 2329.021 et seq.* The purpose of the act is to give full faith and credit to foreign judgments as required by Article IV, Section 1 of the U.S. Constitution. *Appel v. Berger*, 149 Ohio App.3d 486, 2002-Ohio-4853, 778 N.E.2d 59, ¶ 19 (10th Dist.). The act sets forth the procedure for domesticating foreign judgments, i.e., filing the judgment in Ohio to ensure its recognition and enforcement.

[*P65] [HN9] The first step in the process is to file a properly authenticated copy of the judgment with the clerk of any common pleas court. *R.C. 2329.022*. Along with the foreign judgment, the creditor or the creditor's attorney must file with the clerk an affidavit setting forth the name and last known address of the judgment debtor and the judgment creditor. *R.C. 2329.023(A)*. In addition, the judgment creditor or his or her attorney must file a praecipe instructing the clerk to issue a notice of the filing to the judgment debtor, which notice must include the name and address of the judgment creditor and the name and address of the creditor's [**33] attorney in Ohio, if any. *R.C. 2329.023(B)*. Finally, the law forbids execution or other enforcement of the foreign judgment until 30 days after the date of filing. *R.C. 2329.023(C)*.

[*P66] Chesley's complaint asked the court to impose conditions on Ford, as attorney for the judgment creditors, for domesticating the Kentucky judgment that far exceed the statutory requirements. [HN10] The Ohio Enforcement of Foreign Judgments Act does not require judgment creditors to calculate and disclose their respective shares of the judgment, detail the amounts and dates on which they recovered money from other sources, or disclose the amount of money retained by their attorney. But Chesley requested all these disclosures and more *as a precondition* to allowing Ford and her clients to even *file* their judgment in Ohio. And whereas the act provides a 30-day grace period after the foreign judgment is filed, Chesley demanded a 90-day halt to collection efforts after all these reports were provided. There is no statutory authority for any of this relief.

[*P67] Despite his patent lack of authority, Judge Ruehlman granted this relief *and more*. Whereas Chesley sought to impose preconditions on the filing of the foreign judgment, Judge Ruehlman's preliminary [**34] injunction order barred Ford and the creditors from filing the judgment in Ohio altogether, with no mention at all of any conditions that, if satisfied, would lift the prohibition.

[*P68] We see no basis whatsoever for Judge Ruehlman's assertion of jurisdiction to inject himself into the collection process. [HN11] A common pleas court has jurisdiction over a foreign judgment "once that judgment is filed in accordance with *R.C. 2329.022*." *Doser v. Savage Mfg. & Sales, Inc., 54 Ohio App. 3d 22, 560 N.E.2d 782 (8th Dist.1988)*, syllabus. But the *Abbott* creditors had not yet filed the judgment in Ohio; in fact, they were forbidden to do so by Judge Ruehlman. And now that this court has stayed Judge Ruelhman's order, the claimants have domesticated their judgment and the case has been assigned to Judge Martin.

[*P69] But [HN12] even if a common pleas court has general jurisdiction over a case, a writ of prohibition will issue when the court seeks to take an action or provide a remedy that exceeds its statutory authority. *See State ex rel. Mason v. Griffin, 104 Ohio St.3d 279, 2004-Ohio-6384, 819 N.E.2d 644, ¶ 12-16* (court had general jurisdiction over criminal case, but writ of prohibition granted because judge patently and unambiguously lacked statutory or constitutional authority to hold a jury-sentencing hearing in the case); *State ex rel. Triplett v. Ross, 111 Ohio St.3d 231, 2006-Ohio-4705, 855 N.E.2d 1174, ¶ 50* (municipal court had no statutory authority to require certain attorneys [**35] to declare their nonsupport of terrorist groups as a precondition for court appointments); *State ex rel. Adams v. Gusweiler, 30 Ohio St.2d 326, 328-329, 285 N.E.2d 22 (1972)* (common pleas court had no statutory authority to appoint a second arbitrator).

[*P70] Ford is entitled to a writ of prohibition to prevent the unauthorized exercise of judicial power over Chesley's complaint and to undo the orders previously entered.

*The WSBC complaint*

[*P71] WSBC's complaint seeks six specific forms of relief, designated as Paragraphs A through F. Most of the affirmative relief sought by WSBC consists of orders to control the collection proceedings, and the remaining requests exceed the authority of the court.

[*P72] In Paragraph D, for example, WSBC seeks an injunction to prevent Ford and the *Abbott* creditors from "obtaining any confidential, financial, propitiatory [sic] or other information regarding WSBC from Mr. Chesley, Rehme or any other party." The proposed injunction, it seems, is a stay of enforcement of the *Abbott* judgment, albeit by another name, and is improper because, as discussed above, Judge Ruehlman had no statutory authority to control collection proceedings before the *Abbott* creditors domesticated their judgment under *R.C. 2329.022*.

[*P73] The same objection applies to Paragraphs B and C of the [**36] prayer for relief, which seek a declaratory judgment that WSBC and Chesley are "separate and distinct entities," that WSBC is not liable for Chesley's debts, including the *Abbott* judgment, and that the *Abbott* creditors have no right to seize WSBC assets. And the same problem affects the first portion of Paragraph F, seeking a declaration of WSBC's rights and responsibilities under the Kentucky order requiring the transfer of Chesley's beneficial interest in WSBC to the *Abbott* plaintiffs.

[*P74] At first glance, these might appear to be within Judge Ruehlman's jurisdiction to grant declaratory judgment under *R.C. 2721.02*. But [HN13] while "declaratory judgment statutes provide an additional remedy which may be granted by a court * * * they do not extend the jurisdiction as to the subject matter upon which a court may act." *State ex rel. Foreman v.*

*Bellefontaine Mun. Court,* 12 Ohio St.2d 26, 28, 231 N.E.2d 70 (1967). For this reason, a common pleas court cannot use the declaratory-judgment statute to decide matters over which it otherwise has no jurisdiction. *Makowski v. Limbach,* 47 Ohio App.3d 129, 130, 547 N.E.2d 1011 (10th Dist.1988).

[*P75] In its complaint, WSBC alleges that a dispute exists between itself and the *Abbott* claimants as to the proper court and venue for determining the claimants' rights to obtain WSBC documents and information to aid in collection. To resolve that [**37] dispute, WSBC requests a "determination" that Judge Ruehlman has exclusive jurisdiction to decide all such issues. And in Paragraph D, WSBC seeks a declaration that any attempt to obtain "confidential, financial, propitiatory [sic] or other information regarding WSBC from Mr. Chesley, Rehme, or any other party" can only be conducted in the case before Judge Ruehlman. Here again, WSBC is attempting to use declaratory judgment to expand the jurisdiction of the court.

[*P76] The effort to vest Judge Ruehlman with exclusive jurisdiction is an improper use of declaratory judgment for a second reason. [HN14] To be proper, a declaratory-judgment action must, among other things, be within the scope of the Declaratory Judgment Act. *Freedom Rd. Found. v. Ohio Dep't of Liquor Control,* 80 Ohio St. 3d 202, 204, 1997 Ohio 346, 685 N.E.2d 522 (1997). A request for a declaration of venue is not within the scope of the statute. *Galloway v. Horkulic,* 7th Dist. Jefferson No. 02 JE 52, 2003-Ohio-5145, ¶ 27-28 (declaratory-judgment proceedings not available to determine whether a case was properly venued in Ohio or West Virginia).

[*P77] Finally, WSBC seeks relief in Paragraphs E and F, and it is these paragraphs that distinguish the WSBC complaint from the Chesley complaint. The former seeks relief against (or on behalf of) Thomas Rehme, the WSBC trustee. [**38] Specifically, WSBC demands:

> (1) An order "directing Rehme to decline and reject any request from Mr. Chesley for WSBC's financial records to the extent such request emanates from a discovery request directed to Mr. Chesley in Kentucky," and
>
> (2) An order "directing and determining" Rehme's duties and responsibilities under the order requiring transfer of Chesley's beneficial interest in WSBC and in response to any instructions he may receive from Chesley pursuant to orders from the Kentucky court.

[*P78] Judge Ruehlman lacks jurisdiction over these claims because Rehme is not a party to the case. [HN15] A party's failure to join an interested and necessary party is a jurisdictional defect and warrants relief in prohibition. *State ex rel. Doe v. Capper,* 132 Ohio St.3d 365, 2012-Ohio-2686, 972 N.E.2d 553, ¶ 15, 18 (writ of prohibition issued due to absence of an interested and necessary party), citing *Portage Cty. Bd. of Commrs. v. Akron,* 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 99 ("A party's failure to join an interested and necessary party constitutes a jurisdictional defect that precludes the court from rendering a declaratory judgment") and *Zanesville v. Zanesville Canal & Mfg. Co.,* 159 Ohio St. 203, 209, 111 N.E.2d 922 (1953) ("in an action for a declaratory judgment the presence of necessary parties is jurisdictional").[4]

> 4   Nor could WSBC cure this jurisdictional defect by adding Rehme as an adverse party without conceding that the wind-up agreement, [**39] which purported to transfer 100 percent of WSBC's stock to Rehme, was, as Judge Schrand asserted, a sham.

[*P79] WSBC and Chesley argue that relator's complaint raises issues of justiciability, not subject-matter jurisdiction, and that prohibition is an inappropriate remedy for a trial court's erroneous determination of justiciability. We need not reach that question, however. We have already concluded that Judge Ruehlman's attempts to control collection proceedings before the judgment had been domesticated exceeded the scope of his statutory authority under *R.C. 2329.021 et seq.* Because that conclusion compels prohibition, we need not address the justiciability arguments raised by WSBC and Chesley. See, e.g., *Pixley v. Pro-Pak Indus., Inc.,* 142 Ohio St.3d 203, 2014-Ohio-5460, 28 N.E.3d 1249, ¶ 15 (declining to address first proposition of law when second proposition was dispositive).

[*P80] In summary, we hold that Judge Ruehlman has no legal authority to ignore the requirements of the

Uniform Enforcement of Foreign Judgments Act, as the complaints ask him to do. We therefore deny the motions for judgment on the pleadings filed by Chesley and WSBC.

[*P81] Instead, we issue a peremptory writ of prohibition. *State ex rel. Kim v. Wachenschwanz*, 93 Ohio St.3d 586, 588, 2001 Ohio 1616, 757 N.E.2d 367 (2001) ([HN16] where it appears beyond doubt that relator is entitled to the requested extraordinary relief, a peremptory [**40] writ should issue). We further order Judge Ruehlman to vacate his orders. *State ex rel. Jackson v. Miller*, 83 Ohio St.3d 541, 542, 1998 Ohio 4, 700 N.E.2d 1273 (1998) (where a court patently and unambiguously lacks jurisdiction over the cause, prohibition will lie not only to prevent the future unauthorized exercise of jurisdiction but also to correct the results of previous jurisdictionally unauthorized actions). Given these orders, Ford's motion for an alternative writ and WSBC and Chesley's motion to vacate the court's stay are denied as moot.

*Mandamus*

[*P82] Alternatively, Ford seeks a writ of mandamus to compel Judge Ruehlman to dismiss the *Chesley* case or recuse himself. The first request actually seeks relief in prohibition (or injunctive relief, which this court lacks jurisdiction to grant). And [HN17] recusal is a matter of judicial discretion that cannot be controlled through mandamus. *State ex rel. Brady v. Russo*, 8th Dist. Cuyahoga No. 89552, 2007-Ohio-3277, 2007 WL 1848720, ¶ 22. Therefore, we deny the request for a writ of mandamus. In this case, the proper remedy may have been an affidavit of disqualification, which any party, or counsel for a party, has a right to file pursuant to *R.C. 2701.03*.

*Conclusion*

[*P83] For the reasons discussed, we hereby grant the two motions for leave to file memoranda, deny the motion for joinder, and deny the two motions for judgment on the pleadings and [**41] the motion to dismiss. We grant a peremptory writ of prohibition and order Judge Ruehlman to vacate his orders. We deny the request for a writ of mandamus. And we deny the motion for an alternative writ and the motion to vacate the stay as moot.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

PFEIFER, J., dissents with an opinion.

O'NEILL, J., not participating.

**DISSENT BY:** PFEIFER

**DISSENT**

**PFEIFER, J., dissenting.**

[*P84] I dissent because there were two more appropriate remedies available to relator, Angela M. Ford.

[*P85] First, she could have filed an affidavit of disqualification against Judge Ruehlman with Chief Justice O'Connor. Second, having failed to do that, she should have been required to seek a remedy by way of appeal after a final, appealable order had been rendered.