

EXHIBIT F

# Commonwealth of Kentucky

# Court of Appeals

NO. 2015-CA-001067

STANLEY M. CHESLEY                        PETITIONER

vs.

HON. JAMES R. SCHRAND
Boone Circuit Court, Division III            RESPONDENT

and

MILDRED ABBOTT, ET AL.           REAL PARTIES IN INTEREST

## ORDER DENYING PETITION FOR A WRIT OF PROHIBITION

** ** ** ** ** ** ** **

BEFORE: J. LAMBERT, STUMBO AND VANMETER, JUDGES

Stanley Chesley, Petitioner, has moved this Court, pursuant to Kentucky Rules of Civil Procedure (CR) 76.36, to prohibit the Boone Circuit Court from enforcing its June 23, 2015 Order. The June 23, 2015 Order requires Petitioner to transfer monies he received from his interest in his former Ohio law firm to the Real Parties in Interest, and directs him to tell the Ohio Trustee of that

1

firm to make future all future distributions to Respondents' attorney. We deny Petitioner's writ.

## Relevant Facts

A judgement entered by the Boone Circuit Court on October 22, 2014, against Chesley stems from his role in what has became known as the "fen-phen" diet drug case (the *Guard* case). Briefly stated, Chesley breached his fiduciary duty to clients by taking a significantly greater fee for his work than he was entitled to, and doing so without the knowledge or consent of the clients. In its order, the circuit court found Chesley jointly and severally liable for the $42 million owed to the plaintiffs as recovery for the breach. Chesley appealed that order (2014-CA-001900), but did not post a supersedeas bond to ensure the judgment would be stayed pending his appeal.

Chesley was disbarred by the Kentucky Supreme Court, and subsequently resigned his Ohio law license. Because Ohio does not allow a non-attorney to own an interest in a law firm, Chesley transferred his interest in Waite, Schneider, Bayless & Chesley Co., L.P.A. (WSBC) to a trust held by an Ohio attorney, who was authorized to liquidate the assets, pay creditors, and distribute the remaining assets. Chesley holds the only shares in WSBC, and had transferred more than $59 million dollars from his personal accounts to WSBC, including over one million dollars after the trust was in place.

On June 9, 2015, the circuit court conducted a hearing on Abbott's motion to transfer Chesley's beneficial interest in the trust to satisfy the $42 million judgment. Abbott argued that because the circuit court had jurisdiction over Chesley himself, it had the authority to order him to direct the trust to pay over any funds he would receive to Abbott's attorney to settle the October 22, 2014 judgment. Chesley countered that because the trust was located in Ohio, the circuit court lacked jurisdiction to control the distribution of any funds therefrom. Both parties argue the same to this Court.

## Analysis

It is well-established that a writ of prohibition should only be granted when a petitioner can demonstrate that either:

> 1) the lower court is proceeding or is about to proceed outside its jurisdiction and there is no adequate remedy by appeal, or 2) the lower court is about to act incorrectly, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury would result.

*Hoskins v. Maricle*, 150 S.W.3d 1, 6 (Ky. 2004) (quoting *Southeastern United Medigroup, Inc. v. Hughes*, 952 S.W.2d 195, 199 (Ky. 1997)). Petitioner asserts that he is entitled to relief under both tests.

Of course, "[w]hether to issue a writ is 'always discretionary, even when the trial court was acting outside its jurisdiction.'" *Goldstein v. Feeley*, 299

3

S.W.3d 549, 555 (Ky. 2009) (quoting *Hoskins*, 150 S.W.3d at 9; *Bender*, 343 S.W.2d at 800). "In other words, a writ is never mandatory, even upon satisfaction of one of the tests laid out in *Hoskins*." *Id.*

I.  **Jurisdiction in the Context of Extraordinary Writs**

Petitioner asserts that he is entitled to relief because the Boone Circuit Court does not possess jurisdiction to enforce the October 22, 2014 judgment. "It is fundamental that a court must have jurisdiction before it has authority to decide a case. Jurisdiction is the ubiquitous procedural threshold through which all cases and controversies must pass prior to having their substance examined." *Wilson v. Russell*, 162 S.W.3d 911, 913 (Ky. 2005). Furthermore, a circuit court retains "the authority of a court to enforce its own judgments and remove any obstructions to such enforcement." *Young v. U.S. Bank, Inc.*, 343 S.W.3d 618, 621 (Ky. App. 2011) (quoting *Akers v. Stephenson*, 469 S.W.2d 704, 706 (Ky. 1970)).

There are three categories of jurisdiction: personal jurisdiction, subject-matter jurisdiction, and jurisdiction over a particular case. *Nordike v. Nordike*, 231 S.W.3d 733, 737-38 (Ky. 2007). Personal jurisdiction concerns "the court's authority to determine a claim affecting a specific person." *Id.* at 737 (citing *Milby v. Wright*, 952 S.W.2d 202, 205 (Ky. 1997)). Subject matter jurisdiction refers to the court's ability to hear cases over "the kind of case assigned to that court by a statute or constitutional provision." *Daugherty v.*

4

*Telek*, 366 S.W.3d 463, 467 (Ky. 2012). In other words, "a court is deprived of subject matter jurisdiction only where that court has not been given, by constitutional provision or statute, the power to do anything at all." *Id.* Finally, jurisdiction over a particular case concerns a court's ability to hear a specific issue and "often turns solely on proof of certain compliance with statutory requirements and so-called jurisdictional facts, such as that an action was begun before a limitations period expired." *Nordike*, 231 S.W.3d 738. This third category also includes ripeness, mootness, and the failure to state a claim. *Id.*

"In the context of the extraordinary writs, 'jurisdiction' refers not to mere legal errors but to subject-matter jurisdiction." *Lee v. George*, 369 S.W.3d 29, 33 (Ky. 2012). Stated plainly, "[j]urisdiction in this connection means jurisdiction of the subject matter." *Goldstein*, 299 S.W.3d at 552 (quoting *Watson v. Humphrey*, 293 Ky. 839, 170 S.W.2d 865, 866–867 (1943)). Personal jurisdiction in writ cases is implicated only under the second test, as to whether a court is acting "erroneously although within its jurisdiction." *Id.* at 553. Jurisdiction over a particular case is also insufficient to meet the "no jurisdiction" test. *See St. Joseph Catholic Orphan Soc'y v. Edwards*, 449 S.W.3d 727, 736-37 (Ky. 2014).

II. **The Circuit Court Acted Within Its Jurisdiction**

Although Petitioner asserts that his requests for relief implicate the first *Hoskins* test, that the lower court is proceeding or is about to proceed outside its jurisdiction and there is no adequate remedy by appeal or otherwise, *Hoskins*, 150 S.W.3d at 6, we disagree. Petitioner's claims fall solely within the second test, and so he must prove that the lower court is about to act erroneously within its jurisdiction, and that there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury would result. *Id.*

### A. Alleged Noncompliance with KRS 426.381

Petitioner first argues that the Boone Circuit Court lacked subject-matter jurisdiction because it failed to comply with the procedural requirements of KRS 426.381. KRS 426.381(1) provides as follows:

> After an execution of fieri facias, directed to the county in which the judgment was rendered, or to the county of the defendant's residence, is returned by the proper officer, either as to the whole or part thereof, in substance, no property found to satisfy the same, the plaintiff in the execution may by an amended and supplemental petition filed in the action have the same redocketed and join with the execution defendant or defendants any person believed to be indebted to him or them, or to hold money or other property in which he or they have an interest, or to hold evidences or securities for the same. Upon the filing of such amended petition the case shall be transferred to the equity docket and summons issued thereon. In such supplemental proceeding or in a separate suit in equity against such parties (at his option) the plaintiff may have discovery and disclosure from the judgment creditor and his debtor or bailee, and may have any property

> discovered, or a sufficiency thereof, subjected to the satisfaction of the judgment.

Specifically, Petitioner claims that Respondents failed to direct the writ of execution to the county in which the judgment was rendered, or to file an amended complaint in compliance with CR 8.01. Even assuming that Respondents did not comply with KRS 426.381(1), one party's statutory noncompliance does not divest a court of subject-matter jurisdiction. ("[S]ubject matter jurisdiction does not mean 'this case' but *'this kind of case.'*" *Daugherty*, 366 S.W.3d at 466 (quoting *Duncan v. O'Nan*, 451 S.W.2d 626, 631 (Ky.1970) (emphasis in original)).

If anything, Petitioner's argument is that the Boone Circuit Court lacked jurisdiction to hear this particular case. The Kentucky Supreme Court noted this distinction in a recent case, in the context of ecclesiastical abstention:

> That all cases where ecclesiastical abstention applies have similar characteristics, namely that they involve ecclesiastical issues, does not render them a *type* of case any more than cases invoking qualified governmental immunity are a case type for purposes of precluding circuit-court jurisdiction. We, therefore, conclude that ecclesiastical abstention does not divest Kentucky courts of subject-matter jurisdiction because it does not render our courts unable to hear *types* of cases, only *specific* cases pervaded by religious issues. To hold otherwise would be to require all plaintiffs to plead affirmatively the inapplicability of ecclesiastical abstention in their complaint to establish proper subject-matter jurisdiction.

7

*St. Joseph Catholic Orphan Soc'y*, 449 S.W.3d at 736-37.

We need not consider this argument, however, because subject-matter jurisdiction is the only type of jurisdiction implicated in extraordinary writ cases. *Lee*, 369 S.W.3d 33. As the Boone Circuit Court could not lose subject-matter jurisdiction, Petitioner's argument that his case falls within the "no jurisdiction" test lacks merit.

### B. Extraterritorial Application of Statutes

Petitioner next argues that the circuit court lacked jurisdiction because KRS 426.384 and KRS 426.381 should only be applied to property located within Kentucky's borders. Petitioner cites *Union Underwear Co. v. Barnhart*, 50 S.W.3d 188, 190 (Ky. 2001) for "the well-established presumption against extraterritorial operation of statutes." It is true that "unless a contrary intent appears within the language of the statute, we presume that the statute is meant to apply only within the territorial boundaries of the Commonwealth." *Id.* Our Supreme Court in that case, however, was clear that even though the trial court in that case lacked the authority to hear that particular case, the trial court retained subject-matter jurisdiction over employment law cases generally. *Id.* ("While we disagree ... that the trial court lacked subject-matter jurisdiction over this case, we do agree that the KCRA does not apply to Barnhart because it would be an extraterritorial application of the Act.") *See also St. Joseph Catholic Orphan Soc'y*, 449 S.W.3d

at 736-37 (discussing the distinction between subject-matter jurisdiction and particular-case jurisdiction). Similarly, even if we were to hold that this statute had extraterritorial application, this would not divest a circuit court of subject-matter jurisdiction to hear this kind of case; it would only serve to limit a circuit court's enforcement of the cases already before it. Because extraordinary writs implicate only subject-matter jurisdiction and Petitioner's argument concerning the alleged extraterritorial application of KRS 426.384 and KRS 426.381 implicates only jurisdiction over a particular case, his argument that the case falls within the "no jurisdiction" test is also without merit.

### C. Conflicts of Laws

Petitioner also makes arguments based on several provisions to the RESTATEMENT (SECOND) OF CONFLICTS OF LAWS, to the effect that the Boone Circuit Court was without jurisdiction to enforce a judgment over the Ohio bank account. This argument fails for the same reason as Petitioner's other arguments: assuming that it is true, it would still not divest the circuit court of subject-matter jurisdiction to hear this type of case.

### III. Petitioner Would Not Suffer Irreparable Injury

Having determined that each of Petitioner's arguments fall squarely within the "erroneously but within its jurisdiction" *Hoskins* test, we will now

examine Petitioner's claims under that test. We determine that Petitioner will not suffer irreparable injury.

Petitioner argues that he will suffer irreparable injury if this Court does not grant his petition because Respondents did not name all the Real Parties in Interest, and that therefore any money transferred would be difficult to recover. Although Petitioner states that his "property rights" would be compromised, Petitioner's only actual damages are monetary. "Inconvenience, expense, annoyance" do not constitute irreparable injury. *Fritsch v. Caudill*, 146 S.W.3d 926, 930 (Ky. 2004). The mere loss of valuable rights . . . [does not] constitute [] great and irreparable injury." *Schaetzley v. Wright*, 271 S.W.2d 885, 886 (Ky. App. 1954).

> [M]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Sampson*, 415 U.S. 61, 90, 94 S.Ct. 937 (1974) (*quoting Virginia Petroleum Jobbers Ass'n v. Federal Power*, 259 F.2d 921, 925 (D.C.Cir.1958)). *See Zirkle v. District of Columbia*, 830 A.2d 1250, 1256–1257 (D.C.2003) ("For it is well established that economic and reputational injuries are generally not irreparable.").

*Norsworthy v. Kentucky Bd. of Medical Licensure*, 330 S.W.3d 58, 62 (Ky. 2009).

Petitioner has not shown that any injury could not be righted by seeking reimbursement of any monies improperly turned over to plaintiffs' attorney should he succeed on appeal. His argument that the money is "likely

unrecoverable" is mere speculation, and is simply insufficient to support granting a writ. *See Avery v. Knopf*, 807 S.W.2d 55, 56 (Ky. 1991) ("Rank speculation is hardly an adequate basis for a finding of irreparability."). Furthermore, even if some of Petitioner's multi-million dollar judgment was distributed to some Real Parties in Interest erroneously (i.e., to persons who are not rightly judgment creditors) then, absent remitter, Petitioner would still be required to pay the entirety of the lump sum judgment that had been entered against him. Petitioner, therefore, has failed to demonstrate that he would suffer any injury at all. Because Petitioner will not suffer irreparable injury, he is not entitled to relief under the second *Hoskins* test.

### IV. Petitioner's Writ Is Not A "Certain Special Case"

A writ may issue "in the absence of a showing of specific great and irreparable injury ... provided a substantial miscarriage of justice will result if the lower court is proceeding erroneously, and correction of the error is necessary and appropriate in the interest of orderly judicial administration." *Ridgeway Nursing & Rehab. Facility, LLC v. Lane*, 415 S.W.3d 635, 640 (Ky. 2013) (quoting *Bender v. Eaton*, 343 S.W.2d 799, 801 (Ky.1961)).

Petitioner claims entitlement to relief under the "certain special cases" category of writs. He argues that the circuit court's order disrupts orderly judicial administration because Respondents should have domesticated their judgment in

Ohio. Petitioner obtained two *ex parte* Ohio restraining orders, which prohibit Respondents' counsel from taking action in Ohio to enforce the Kentucky Judgment. That Court has apparently not yet held a hearing on the subject. First, we note that this "'rare exception [ ]' to the general rule that a petitioner must suffer an irreparable injury in order to be entitled to a writ 'tend[s] to be limited to situations where the action for which the writ is sought would violate the law....'" *Toyota Motor Mfg., Kentucky, Inc. v. Johnson*, 323 S.W.3d 646, 654 (Ky. 2010) (quoting *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 808 (Ky. 2004)). Additionally, our Supreme Court has noted that "[f]or the most part, we have reserved the administration-of-justice 'special cases' exception for questions, often first-impression questions, bearing importantly on the public administration of the law or on a party's fundamental rights." *Inverultra, S.A. v. Wilson*, 449 S.W.3d 339, 348-49 (Ky. 2014). A petitioner must also show that the "error will lead to 'a substantial miscarriage of justice.'" *Lee v. George*, 369 S.W.3d 29, 36 (Ky. 2012) (quoting *Bender v. Eaton*, 343 S.W.2d 799, 801 (Ky. 1961)).

Petitioner's *ex parte* temporary restraining order issued by the Ohio court was entered on January 7, 2015, and by its terms "last[ed] for no more than 14 days, unless extended by the Court or by agreement of the parties." At the time the petition and response were filed, there had been no hearing on the issue. By denying Petitioner's writ, however, we are not violating the restraining orders

issued by the Ohio court. If Respondents choose to domesticate the judgment in Ohio, rather than collecting monies as they are dispersed to Petitioner, they must still comply with all applicable Ohio laws in collecting their judgment.

Because Petitioner has not demonstrated that he will suffer irreparable injury, the Court orders that the petition for a writ of prohibition be, and hereby is, DENIED. The motion to supplement the record with an additional exhibit is therefore DENIED as moot. Petitioner's motion to file under seal is hereby DENIED.

ENTERED: **OCT 08 2015**

_____
JUDGE, COURT OF APPEALS