## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 90-CV-00181-JLK

MERILYN COOK, et al.,

Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION and THE DOW COMPANY,

Defendants.

---

**ERIC W. GOERING, ASSIGNEE'S MEMORANDUM IN OPPOSITION TO ABBOTT MOVANTS' MOTION TO SUBSTITUTE AS REAL PARTIES IN INTEREST (DOC. NO. 2420)**

---

## I.     INTRODUCTION

Eric W. Goering, Assignee of the assets of the Ohio law firm Waite, Schneider, Bayless, and Chesley, Co., L.P.A. ("WSBC"), Case No. 2016003659, Hamilton County, Ohio Court of Common Pleas, Probate Division, through counsel, hereby submits his opposition to Abbott Movants' Motion to Substitute as Real Parties in Interest (Doc.  No. 2420).

WSBC acted as counsel for Plaintiffs in this action from its inception in 1990 until August, 2012, and consequentially WSBC is believed to be entitled to payment of a substantial portion of the available attorneys' fees ("Fee Interest").  The Abbott Movants, who have a judgment in Kentucky against former WSBC attorney Stanley M. Chesley,

among others, but not against WSBC, seek to be substituted for WSBC in this case so that they may be paid any or all sums that may be paid to WSBC.  Just as an identical request was twice denied by a Nevada Court, the Abbott Movants' pending request should be denied by this Court.  As explained more fully below, any interest of WSBC in the Fee Interest was assigned to Mr. Goering in the Assignment for the Benefit of Creditors, an Ohio statutory process, rendering moot the relief requested by Movants.

## II.     BACKGROUND FACTS

### A.     WSBC's Involvement in the Rocky Flats Litigation

WSBC was Plaintiffs' counsel when this matter was filed in 1990, and WSBC attorneys prosecuted the case until August 2012.  (Declaration of Goering, ¶ 8).  As a result, WSBC attorneys participated in every aspect of the case including, but not limited to, meetings with clients and class representatives, interviews with potential witnesses in the class area, taking and defending depositions of both fact and expert witnesses, participation in strategy meetings for the case, review of documents, attendance at court hearings, and participation at trial and in appellate proceedings.  (*Id*.).  In the process, WSBC's attorneys and professional support staff expended over 12,000 hours of billable time, which equates to a lodestar of over $4,000,000.  (*Id*.).  WSBC also incurred over $600,000 in non-reimbursable expenses.  (*Id*.).

Mr. Goering, on behalf of WSBC, has provided present lead plaintiffs' counsel with information supporting WSBC's claim for attorneys' fees and costs, with back-up data.

Mr. Goering is actively working with lead counsel to provide information necessary to submit an attorneys' fee application to this Court.

**B.     The Kentucky Judgment Against Mr. Chesley**

The Abbott Movants are plaintiffs in a lawsuit filed in the Boone County, Kentucky Circuit Court in 2005, captioned *Abbott, et al., vs. Chesley, et al.*, Case No. 05-CI-00436 (the "Kentucky Matter").  In the Kentucky Matter, the plaintiffs sued Stanley M. Chesley, a former WSBC attorney and shareholder, and other attorneys who represented them in Fen Phen litigation.  The plaintiffs in the Kentucky Matter never sued WSBC and WSBC was never made a party to the Kentucky Matter.

In August 2014, the Abbott Movants obtained a judgment against Mr. Chesley, and the other defendants, jointly and severally, in the amount of $42,000,000 ("Kentucky Judgment").  (*See*, Abbott Motion, Ex. C).  Because WSBC was never a party to the Kentucky Matter, the Abbott Movants never obtained a judgment against WSBC and the Kentucky Court has never had jurisdiction over WSBC.  An appeal of the Kentucky Judgment is currently pending with the Kentucky Court of Appeals.

Mr. Chesley was disbarred in Kentucky in 2012, and he resigned his Ohio law license and retired from the practice of law in April 2013.  Because a non-attorney is not able to own an interest in a law firm under Ohio law, the day before he resigned his Ohio license he transferred all of his shares in WSBC to a trustee, Thomas Rehme, to effectuate the wind-up of the affairs of WSBC.

More than two years later, on June 23, 2015, in post-judgment proceedings in the Kentucky Matter the Kentucky court directed Mr. Chesley to transfer his ownership interest in WSBC to the Abbott Movants.  (Abbott Motion, Exhibit E).  And on September 25, 2015, the Kentucky court granted the Abbott Movants' motion to execute on Mr. Chesley's interest in WSBC and ordered fee payments payable to WSBC or Mr. Chesley to be paid to the Abbott Movants.  (Abbott Motion, Exhibit A).  At the time these Kentucky Orders were entered, however, Mr. Chesley had no interest in WSBC, due to the transfer in 2013. Since WSBC was never a party to the Kentucky Matter, it never had notice or the opportunity to be heard.

Nevertheless, the Abbott Movants allege that the June 23, 2015 and September 25, 2015 Orders ("Kentucky Orders") are somehow enforceable against WSBC, and ask this Court and others to enforce their reading of the Kentucky Orders.

### C.    The Strikingly-Similar Nevada Matter

WSBC is the beneficiary of quarterly payments arising from its prosecution of tobacco class action litigation.  Those payments are distributed from a trust called the Castano Directed Distribution Trust ("Castano Trust"), which was established as part of the settlement of the tobacco class action litigation to provide a mechanism to pay the attorneys' fees portion of the settlement.  *See, Abbott v. Chesley,* Eighth Judicial District Court, Clark County, Nevada, Case No. A-15-726616-F ("Nevada Matter").

In 2015, before Mr. Goering's involvement, the Abbott Movants commenced garnishment proceedings in Nevada in an effort to seize payments from the Castano Trust

due to be paid to WSBC. The Nevada Matter, discussed in further detail below, is strikingly similar to this one. In Nevada, these same parties attempted to use the same Kentucky Orders to support their attempt to garnish attorneys' fees due to be paid to WSBC. The Nevada Court rejected the Abbott Movants' request and concluded that because WSBC was not a party to the Kentucky Matter, the Kentucky Orders were void, invalid, and unenforceable against WSBC, and that due process protections dictated that the Kentucky Judgment against Mr. Chesley could not be used to garnish WSBC's interest in the Castano Trust. (*See*, Nevada Decision, February 11, 2016, attached hereto as **Exhibit 1**). The Nevada Court's Decision was reaffirmed after a request for reconsideration. (*See*, Nevada Reconsideration Decision March, 31, 2016, attached hereto as **Exhibit 2**). No appeal was taken from these rulings, and the matter is closed.

### D.    WSBC's Assets are Assigned to Mr. Goering

On September 12, 2016, WSBC exercised its statutory right under Ohio law, pursuant to Ohio Revised Code Section 1301.01, *et seq.*, to file a Deed of Assignment for the Benefit of Creditors ("ABC"). (Declaration of Goering, ¶ 9). Using this statutory process, WSBC transferred all right, title, and interest in all of its assets (including its right to receive a portion of the attorney's fees and costs awarded in this case) to Mr. Goering. (*Id.*). On that date, the Hamilton County, Ohio, Court of Common Pleas, entered a Letter of Authority and Order Acknowledging Acceptance by Mr. Goering of WSBC's Assignment for the Benefit of Creditors in *In re Waite, Schneider, Bayless & Chesley Co., L.P.A.*, Case No. 2016003659. (*Id.* at Exhibit 2).

5

Mr. Goering is an experienced lawyer practicing exclusively in issues relating to insolvency and is a Chapter 7 Trustee for the U.S. Bankruptcy Court for the Southern District of Ohio by appointment of the U.S. Department of Justice. (Declaration of Goering, ¶ 3). The ABC statutory process is similar to a bankruptcy liquidation and provides for the appraisal and liquidation of assets for distribution to creditors, all of which is completed under the supervision of the Hamilton County, Ohio Probate Court. (Declaration of Goering, ¶ 10). On November 2, 2016, Mr. Goering filed an Inventory in the ABC proceeding that lists, among WSBC's other receivables, the potential fees that may be paid to WSBC in this litigation. (Declaration of Goering, Exhibit 3, Inventory, at Sec. 3.4.3).

Under the ABC, Mr. Chesley could only be paid after all of WSBC's other creditors are satisfied. On November 23, 2015, the IRS assessed Chesley more than $3.4 Million for unpaid taxes, penalties, and interest on account of his 2014 income taxes. By operation of law, a lien arose as of the day it was assessed. *See,* IRC §§ 6321-22; *United States v. McDermott*, 507 U.S. 447, 448, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993) (§§ 6321 and 6322 create "a lien in favor of the United States on all real and personal property belonging to the [taxpayer], ... including after-acquired property."). On December 7, 2015, the IRS filed a lien against Mr. Chesley for his 2014 Income Taxes in Hamilton County, Ohio, the county in which he resides. (*See*, Notice of Federal Tax Lien, attached hereto as **Exhibit 3**). The Notice of Federal Tax Lien establishes the IRS's priority position with respect to all of Mr. Chesley's assets. *See*, IRC § 6323.

6

Nevertheless, the Abbott Movants are not content to allow the Ohio statutory ABC process to play out.  Although they do not have a judgment against WSBC, they seek to substitute themselves for WSBC, and in the process hurdle over WSBC's other creditors, including the IRS, without concern for the facts or the law.  This Court, like the Nevada Court, should deny their request.

## III.   LEGAL ARGUMENT

### A.   The Fee Interest was WSBC's asset, not Mr. Chesley's, and the two are not one-in-the same or "alter-egos."  Moreover, the Fee Interest is now an asset of the ABC.

WSBC is a contingent beneficiary of a yet-to-be-submitted attorney fee application for work its attorneys performed as Plaintiffs' counsel in this litigation (the "Fee Interest").

As they did in the Nevada Matter, the Abbott Movants appear to be arguing here that Mr. Chesley and WSBC are "one-in-the-same" and therefore since they have a judgment against Mr. Chesley, it should allow them access to WSBC's assets. Accordingly, the Abbott Movants argue that they are the real parties in interest here, and should be substituted for WSBC.

There are several problems with the Abbott Movants' arguments.  First, there is no disputing that the attorneys' fee interest in this matter is an asset of the ABC, and not Mr. Chesley, or WSBC.  Mr. Chesley has no direct, personal claim for attorneys' fees in this case.  The Kentucky Orders are not self-effectuating – neither of the Kentucky Orders by their operation transferred ownership of WSBC to the Plaintiffs.  Rather, the Kentucky Orders simply directed Mr. Chesley to do things that he did not, and could not, do.

Second, it is undisputed that WSBC is not, and has never been, a party to the Kentucky Matter. Accordingly, the Abbott Movants have never obtained a judgment against WSBC. Because WSBC is not a party to the Kentucky case, has never been served with process, and is not subject to jurisdiction in the Kentucky court, the Kentucky Orders (June 2015 and September 2015) upon which the Abbott Movants rely are not enforceable against WSBC.

Third, at the time of the Kentucky Orders upon which the Abbott Movants rely, Mr. Chesley no longer held any shares or ownership interest in WSBC. The Abbott Movants' insistence in using Mr. Chesley and WSBC interchangeably ignores the undisputed facts of this case.

Fourth, although it may be appropriate to substitute attorneys or a law firm *in place of the parties* in the context of a fee application, that is not what the Abbott Movants are seeking. They have not asked the court to substitute a lawyer or firm in place of the Cook Plaintiffs. Rather, they seek to substitute themselves, holders of a foreign judgment against an attorney, in place of a law firm they did not sue and against whom they do not have a judgment. There is no legal ground for this request for reverse veil-piercing; indeed, Ohio courts (the jurisdiction where WSBC resides) do not recognize a cause of action for reverse veil-piercing.

Fifth, a court cannot grant full faith and credit to a foreign judgment that lacked due process. Because WSBC never received service of process, was never made a party, and never had the opportunity to be heard in the Kentucky Matter, to the extent that the

8

Kentucky Orders purportedly apply against it, they are ineffective against WSBC and cannot be enforced by a sister court.

      **1.**     **The Fee Interest is not an asset of WSBC, rather, it has been assigned to Goering through the state court action.**

The Ohio Revised Code makes specific provision for voluntary assignments for the benefit of creditors. 23 Ohio Jur. 3d Creditors' Rights § 33 (2016). The statutes regulating such assignments constitute a part of all contracts entered into within the state. *Id.* A general assignment for the benefit of creditors is ordinarily a conveyance by a debtor, without consideration from the grantee, of substantially all of the debtor's property to a party in trust to collect the amount owing to him, to sell and convey the property, to distribute the proceeds of all the property among its creditors, and to return any surplus to the debtor. *Id.* The primary object and purpose of the law regulating assignments for the benefit of creditors is the conversion of all the assets of the assignor into money and an equal distribution of the insolvent estate among all the creditors. *Id.* Such an assignment vests legal title in the assignee and places the property beyond the control of the assignor or the reach of any of his creditors, except as they have a right, under the assignment, to share in the distribution of the assigned estate. *Id.* Beneficiaries of the trust are, first, those having liens upon the trust estate; second, the creditors of the assignor; and third, the assignor itself. *Id.*

WSBC assigned all of its assets to Goering, as assignee, in the ABC. The Deed of Assignment transferred "all right, title, and interest in and to all property of any description,

real and personal, including, without limitation, accounts, receivables, contract rights, chattel paper, notes, rights to payment, legal claims …." (Declaration of Goering, Exhibit 1, p. 1). The Fee Interest was expressly included as the "Rocky Flats Litigation" in the Assignee's statutory Inventory filed with the state court. (*Id.*, Ex. 3, ¶ 3.4). The transfer of the Fee Interest by WSBC to the ABC was effective on September 12, 2016 when the state court entered the Letter of Authority and Order Acknowledging Acceptance. Ohio Rev. Code § 1313.02. After execution of the conveyance of the ABC, no title remains in the assignor. *Union Bank at Massillon v. Bell*, 14 Ohio St. 200 (Ohio 1863). Thus, WSBC has no interest, legal or equitable, for which to be substituted by Movants.

Indeed, it unclear how this Court would have jurisdiction to grant the relief requested by Movants given the ABC. Jurisdiction in ABC matters has been vested exclusively in the probate court under Ohio law since the enactment of the statute in 1859. *Wambaugh v. Northwestern Mut. Life Ins. Co.*, 59 Ohio St. 228, 245, 52 N.E. 839, 842 (Ohio 1898). The filing of the deed of assignment and the qualifying of the assignee confer upon the state probate court jurisdiction of all assigned property that is "exclusive in all respects in which it is adequate." *Mercer v. Cunningham*, 53 Ohio St. 353, 41 N.E. 788 (Ohio 1895). Upon the filing of an assignment for the benefit of creditors in the probate court of the proper county and the qualifying of the assignee, the court acquires exclusive jurisdiction of the subject matter of the assignment. *John V. Farwell & Co. v. Findlay Dry Goods Co.*, 5 Ohio C.D. 303, 1895 WL 1305 (Hancock Cty. App. 1895); *Clapp v. Huron Banking Co.*, 50 Ohio St. 528, 35 N.E. 308 (Ohio 1893). The filing in probate court of the

10

assignment deed instantly attaches the court's jurisdiction. *Id.* Once the jurisdiction of the probate court is invoked, it excludes the jurisdiction of every other court. *Id.; see also Cornell v. Sulter*, 13 Ohio C.D. 384, 1901 WL 799, para. 2 of syllabus (Circuit Ct. 1901) ("[t]he question of the right, power and jurisdiction of the probate court to administer estates of insolvent debtors has been firmly settled by a long line of decisions of the Supreme Court and inferior courts of this state.").

That the Ohio General Assembly "… intended to vest in the probate court full and complete jurisdiction of the whole subjects of assignments of this character, was not hastily reached or incautiously stated, but was the result of careful consideration and deliberate judgment." *Sayler v. Simpson*, 45 Ohio St. 141, 151, 12 N.E. 181, 185 (Ohio 1887) (internal citation omitted). Full and complete jurisdiction in the state probate court over the whole subject matter of ABCs "has been accepted and followed in practice since" the enactment of the statute. *Id., citing Blandy v. Benedict*, 42 Ohio St. 295 (Ohio 1884) and *State ex rel. Belford v. Hueston*, 44 Ohio St. 1, 4 N.E. 471 (Ohio 1886).

Put simply, the Fee Interest is an asset of the ABC, not WSBC and there is no jurisdictional basis for the relief requested by Movants.

        **2.**      **Even if the Fee Interest were still an asset of WSBC, which it is not, the Kentucky Orders are void, as applied to WSBC, because extending the Orders to WSBC would violate WSBC's due process rights.**

It is axiomatic that "a judgment rendered in violation of due process is void in the rendering state and not entitled to full faith and credit elsewhere." *United States v. Bigford,*

365 F.3d 859, 866 (10th Cir. 2004), *citing World–Wide Volkswagen Corp. v. Woodson,*
444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

> With respect to a state court's power to render a valid personal judgment
> against a nonresident defendant, "due process" requires "that the defendant
> be given adequate notice of the suit," per *Mullane v. Central Hanover Bank
> & Trust Co.,* 339 U.S. 306, 313–14, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and
> "be subject to the personal jurisdiction of the court" per *International Shoe
> Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

*Bigford*, 365 F.3d at 866 (citing *World-Wide Volkswagen,* 444 U.S. at 291, 100 S.Ct. 559).

"It is a principle of general application in Anglo-American jurisprudence that one is not
bound by a judgment *in personam* in a litigation in which he is not designated as a party or
to which he has not been made a party by service of process." *Taylor v. Sturgell,* 553 U.S.
880, 884, 128 S. Ct. 2161, 2166–67, 171 L. Ed. 2d 155 (2008).

Kentucky, the state from which the subject Kentucky Judgment and Kentucky
Orders arose, recognizes that, fundamentally, the hallmarks of procedural due process are
notice and an opportunity to be heard. *See, Hilltop Basic Resources, Inc. v. County of
Boone,* 180 S.W.3d 464, 469 (Ky. 2005); *Storm v. Mullins,* 199 S.W.3d 156, 162 (Ky.2006)
("[o]rdinarily, notice and an opportunity to be heard are the basic requirements of due
process.").

It is not disputed that WSBC has never been a party to the Kentucky Matter.  It was
not served with process, and it was not provided with notice.  Nor did WSBC receive any
other substantive or procedural rights when the Abbott Movants moved for the relief
granted in the Kentucky Orders.  Simply stated, without affording it due process of law,

the Kentucky Court had no personal jurisdiction over WSBC to enter any order purporting to affect its rights and interests.

### 3.     WSBC and Chesley are not "Alter-Egos"

The Abbott Movants' "sham'' argument is an effort to advance an "alter ego" claim against WSBC – that WSBC is Mr. Chesley's alter-ego – which was never asserted in the Kentucky Matter and never actually litigated.   "Alter ego" is a claim for relief and not something that can be litigated against a party on an *ex parte* basis without first according that party due process and without the court having personal and subject matter jurisdiction over the parties.  Here, that would have necessarily included WSBC.[1]

In essence, to have done this properly, after obtaining a judgment against Mr. Chesley, the Abbott Movants could have brought a "piercing suit" against WSBC or other potential alter-egos.  "In some cases, the creditor may know enough to proceed against all potentially liable parties but, in other instances, it may be appropriate to obtain the judgment first and only when it proves uncollectible then seek relief through veil-piercing litigation."  *Inter-Tel Techs., Inc. v. Linn Station Properties, LLC,* 360 S.W.3d 152, 169 (Ky. 2012).   The Abbott Movants have never taken any such action against WSBC in Kentucky.

---

[1]     If the Abbott Movants are attempting to advance a "virtual representation" argument – that WSBC was virtually represented by Mr. Chesley before the Kentucky court – that concept has been roundly rejected. *See, Taylor v. Sturgell,* 553 U.S. 880, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008)("Virtual representation" exception could not be justified on grounds of "close enough" relationship between party and nonparty.)

The Abbott Movants, aided by the cryptic language in the Kentucky Court's September 25, 2015 Order that calls Mr. Chesley's transfer of his ownership interest a "sham," seek to skip over the second step in the process, veil piercing litigation against WSBC, with the required notice and opportunity to be heard. However, WSBC and Chesley are not alter-egos simply because of this passing reference to a "sham." Again, WSBC had no notice or opportunity to defend itself from these allegations.

WSBC, the entity allegedly being "pierced" via the alter ego theory, is a necessary party to an alter ego/veil piercing claim. *See, Lewis LP Gas, Inc. v. Lambert*, 113 S.W.3d 171 (Ky. 2003)(a trial court acted outside of its jurisdiction in restraining family owned corporation that was not party to an underlying dissolution action). WSBC is not now, and never has been, a party to the Kentucky case. There is a complex analysis to determine whether a corporate veil should be pierced. *See generally, Inter-Tel Techs.,* 360 S.W.2d at 159-165. WSBC never had the opportunity to argue against alter-ego/veil piercing.

In addition, the alter ego theory the Abbott Movants advance is actually a ''reverse veil piercing claim," i.e., one where they seek to hold an entity liable for an owner's debts, instead of the typical veil piercing scenario where the owner is held liable for the entity's debts. In 2013, the Kentucky Supreme Court noted that Kentucky courts have not addressed "reverse veil piercing" and that "at least one commentator … has concluded that Kentucky would probably not recognize reverse piercing" if it considered it. *Turner v. Andrew,* 413 S.W.3d 272, 277, n.4 (Ky. 2013).

14

Moreover, WSBC is an Ohio corporation.  The acts or transfers that would be scrutinized in a reverse-veil piercing case occurred in Ohio, the home state of both Mr. Chesley and WSBC.  Ohio, like most states, does not recognize a claim for reverse veil piercing.  *Gershuny v. Gershuny*, 2015-Ohio-4454, ¶ 14 (Ohio Ct. App.), *appeal not allowed*, 2016-Ohio-1173, ¶ 14, 47 N.E.3d 167 ("Ohio is not one of the few jurisdictions that have adopted the doctrine of reverse-corporate-veil piercing."); *Mathias v. Rosser*, 2002-Ohio-2772, ¶ 35 ("Although reverse corporate veil piercing has been widely discussed, only a few jurisdictions have actually adopted the doctrine … and Ohio is not among them."); *Winston v. Leak*, 159 F.Supp.2d 1012, 1017-1018 (S.D. Ohio 2001)(reverse corporate veil piercing has not been embraced by Ohio courts).

In *Cascade Energy and Metals Corp. v. Banks,* 896 F.2d 1557 (10th Cir. 1990), the Tenth Circuit Court of Appeals provided analysis of an attempted "reverse-piercing" that is instructive here.  The Court stated that reverse veil piercing is problematic because it allows a judgment creditor to bypass the normal judgment collection procedure of attaching the judgment debtor's shares in the corporation, and attach the corporate assets directly. *Id.* at 1577.  This is exactly what the Abbott Movants are attempting here.

Thus, the insertion of passing reference to "sham" does not somehow convert the Kentucky Order into an enforceable judgment against WSBC that can be used to deprive WSBC of its assets – here, WSBC's attorneys' fee claim.  WSBC was never served with process or afforded basic due process rights before the September 25, 2015 Kentucky Order obliquely called the wind-up agreement a "sham."  This passing reference, in a case

15

wherein WSBC did not appear, cannot be used to open the gate to the Abbott Movants' seizure of WSBC's interest in the attorneys' fees that may result.

### 4.   This Court cannot extend Full Faith and Credit to the Kentucky Orders

As noted above, a "judgment rendered in violation of due process is void in the rendering state and not entitled to full faith and credit elsewhere." *Bigford,* 365 F.3d at 866.

The Full Faith and Credit Clause generally protects the judgment of a court of a sister state against collateral attacks, unless proper grounds for the collateral attack can be established. *Marworth, Inc. v. McGuire,* 810 P.2d 653, 655 (Colo. 1991). According to the Colorado Supreme Court in *Marworth*, a lack of due process is among the proper grounds for collaterally attacking a foreign judgment. *Id.* at 656.

Kentucky follows these same, common-sense rules regarding the necessity of personal jurisdiction as a prerequisite to a valid judgment. In Kentucky, "[a] judgment rendered against a party the court does not have personal jurisdiction over is a void judgment..., [and a] void judgment is not entitled to any respect or deference by the courts of the Commonwealth." *Cabinet for Health & Family Servs. v. E.S.S.*, 2007 WL 1196456 (Ky. App. Ct. 2007). This is true even if the party knew about the action, but failed to participate in it. *Burton & Burton Tower Co. v. Dowell*, 471 S.W.2d 708 (Ky. 1971).

Because WSBC is not a party to the Kentucky Action, was not subject to the Kentucky Court's jurisdiction, and was not afforded due process, this Court cannot afford

full faith and credit to the Kentucky Judgment or the Kentucky Orders against WSBC.  In essence, the Abbott Movants are requesting this Court to do what they have been unable to do in the Kentucky Matter – obtain a valid judgment against WSBC upon which they may collect.  The Court must decline this invitation.

**B.      Equity does not Compel this Court to Enforce the Kentucky Orders against WSBC.**

The Abbott Movants also argue that the Court has inherent ability to enforce the Kentucky Orders against WSBC due to its equitable powers.  "[W]e should exercise the power to impose equitable remedies only sparingly, subject to clear rules guiding its use." *Missouri v. Jenkins,* 515 U.S. 70, 131, 115 S. Ct. 2038, 2070, 132 L. Ed. 2d 63 (1995).

As noted above, the Kentucky Orders that appear to implicate WSBC resulted from a matter in which WSBC was not a party, did not appear, and was not heard, and issued by a court that did not, and does not, have jurisdiction over WSBC.  In fact, those Orders are actually void as to WSBC.  Moreover, as noted above, WSBC does not hold the Fee Interest any longer – by operation of the ABC it was assigned to Mr. Goering.  This is not a solid foundation upon which to build an argument that this Court should use its equitable powers to enforce the Order.

The Court should decline the Abbott Movants' invitation to enforce the Kentucky Orders using its equitable powers.

**C.      Issue Preclusion Bars the Abbott Movants' Request because the Nevada Court Expressly Rejected the Same Arguments.**

Another reason that the Abbott Movants' Motion must fail is that this same request was made to, and denied by, another court.

In the Nevada Matter, these same Abbott Movants filed an application to register their foreign judgment against Mr. Chesley in Nevada, which is where the Castano Trust is located.   The Castano Trust distributes quarterly payments to WSBC for attorneys' fees earned through successful prosecution of tobacco class action litigation.   The Abbott Movants sought to use their registered Nevada judgment against Mr. Chesley to garnish funds from the Castano Trust to be paid to WSBC by relying on the same Kentucky Orders they rely upon here.   Despite the fact that they were attempting to seize WSBC's property, the Abbott Movants did not name WSBC as a party as a party in the Nevada matter.

WSBC filed a petition with the Nevada court to determine title to WSBC's interest in the Castano Trust.   Like here, the Abbott Movants argued that Mr. Chesley and WSBC are alter-egos of each other, and due to the Kentucky Order dated September 25, 2015, they had they right to garnish the Castano Trust payments to WSBC to collect on the Kentucky Judgment against Chesley.   The Abbott Movants noted that the Kentucky Court's September 2015 Order specifically references the Castano Trust payments in paragraph 2.

By Decision and Entry dated February 11, 2016, the Nevada court rejected the Abbott Movants' attempts to garnish the payments from the Castano Trust to WSBC. (*See*, Nevada Decision, attached hereto as Ex. 1).  The Nevada court found that WSBC was not provided with notice that it was a potential alter-ego of Mr. Chesley, as it was not named in the Kentucky Matter or a separate action.  (*Id*., p. 3).  Nevertheless, the Kentucky court

18

made a determination that they were alter egos with no way for WSBC to assert a defense against Abbott's claims. (*Id.*) Finding that the Kentucky Order resulted from a lack of due process, the Nevada court refused to extend full faith and credit to the Kentucky Order. (*Id.*, p. 4).

> The Court finds that respecting the Kentucky Order declaring Chesley and WSBC to be alter egos would create a due process violation in this case. Abbott asks this Court to apply an order entered solely against Chesley to deprive a nonparty of its property. The Court grants WSBC's petition and determines that WSBC's interest in the Castano Trust is not subject to garnishment by Abbott. WSBC's interest in the Castano Trust is its sole property. Abbott may attach funds distributed to Chesley individually, not funds distributed to WSBC.

(*Id.*).

The Abbott Movants filed a Motion for Reconsideration, and even supplemented the record post-hearing, but the Nevada court reaffirmed its decision on reconsideration by Decision and Order dated March 31, 2016 (*See*, Nevada Reconsideration Decision, attached hereto as Exhibit 2). The Nevada court held that it was proper for it to review the due process implications of the Kentucky Order, and that it properly determined that the Kentucky Order violated WSBC's due process. (*See id.*). The Abbott Movants did not appeal these decisions.

Collateral estoppel, or issue preclusion, is designed to prevent needless relitigation and bring about some finality to litigation. *United States v. Botefuhr*, 309 F.3d 1263, 1282 (10th Cir. 2002). It is a doctrine designed to promote the fundamental policies of finality, economy, consistency, and comity in the judicial process. *Kremer v. Chemical Const.*

*Corp.,* 456 U.S. 461, 466 n.6 (1982). Collateral estoppel bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim. *Park Lake Res. Ltd. Liab. Co. v. USDA*, 378 F.3d 1132, 1136 (10th Cir. 2004). "Issue preclusion serves to avoid relitigation and to conserve judicial resources." *In re Sandoval,* 126 Nev. 136, 140, 232 P.3d 422, 424 (2010).

Rules for application of preclusion principles are determined by the law of the forum in which the prior judgment was rendered. *Marrese v. American Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). Thus, a judgment is afforded the same preclusive effect in a subsequent action brought in a different forum that it would be afforded if the latter action were brought in the original forum. *In re Flanders,* 517 B.R. 245, 258 (Bankr. D. Colo. 2014), aff'd, No. AP 13-01456, 2015 WL 4641697 (10th Cir. BAP (Colo.) Aug. 5, 2015), *aff'd in part, remanded in part,* No. 15-1327, 2016 WL 4176843 (10th Cir. Aug. 5, 2016). Accordingly, the law of Nevada concerning issue preclusion applies here.

In Nevada, the following factors are necessary for application of issue preclusion: "(1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation; and (4) the issue was actually and necessarily litigated." *Five Star Capital Corp. v. Ruby,* 194 P.3d 709, 713 (2008). This test appears to be virtually

20

identical to the test applied in Colorado.  *See, In re Water Rights of Elk Dance Colorado, LLC,* 139 P.3d 660, 667 (Colo. 2006).

Issue preclusion may apply "even though the causes of action are substantially different, if the same fact issue is presented."  *LaForge v. State, Univ. & Cmty. Coll. Sys. of Nevada,* 997 P.2d 130, 134 (Nev. 2000).

As shown below, the Nevada Matter and this matter are virtually identical, and involve the same parties, so issue preclusion should bar the Abbott Movants' request to be substituted here.

> **a.    The Issue Decided in the Nevada Matter is Identical to the Issue Presented here – whether the Abbott Movants may take Attorneys' Fees earned in a Class Action Settlement in place of WSBC.**

The issues confronted by the Nevada court and this Court are identical.  Both issues arise from the same Kentucky Judgment and subsequent Kentucky Orders against Mr. Chesley.

In Nevada, WSBC is the beneficiary of quarterly payments representing attorneys' fees arising from its prosecution of tobacco class action litigation which are deposited into the Castano Trust.  In the Nevada Matter, the Abbott Movants domesticated the Kentucky Judgment against Chesley in Nevada and sought to garnish these fee payments owed to WSBC.  The Abbott Movants based their arguments on the Kentucky Orders (primarily the September 25, 2015 Order that mentioned the Castano Trust specifically in paragraph 2).  (*See*, Abbott Motion, Exhibit A).

Here, WSBC is entitled to payment of a portion of the available attorneys' fees arising from its prosecution of the Rocky Flats class action litigation when they are distributed. The Abbott Movants have domesticated the Kentucky Judgment against Mr. Chesley in Colorado, and seek to substitute themselves for WSBC so that they may receive these fee payments directly. The Abbott Movants base this attempt on the exact same September 25, 2015 Kentucky Order, this time pointing to paragraph 3 of that Order, which specifically refers to the "Rocky Flats" fees. (*See id.*).

Due to the clear similarities, this matter meets the first prong of the issue preclusion test.

### b.      The Nevada Matter was finally decided on the merits.

The Nevada court found that the Kentucky Judgment against Mr. Chesley and the Kentucky Orders could not be used to garnish WSBC's interest in the Castano Trust. (*See*, Nevada Decision, attached hereto as Exhibit 1). The Nevada Court's Decision was reaffirmed after a request for reconsideration. (*See*, Nevada Reconsideration Decision, attached hereto as Exhibit 2). The Nevada Decisions are final and no longer appealable.

### c.      The Party against whom the Judgment is Asserted was a Party to the Prior Litigation.

The Nevada Matter was prosecuted by Mildred Abbott and the other holders of the Kentucky Judgment against Mr. Chesley – the very same individuals who comprise the Abbott Movants in this case. Because the parties are identical in each matter, this prong of the analysis is easily met.

### d.      The Issue was Actually and Necessarily Litigated.

"When an issue is properly raised ... and is submitted for determination, ... the issue is actually litigated." *Alcantara ex rel. Alcantara v. Wal-Mart Stores, Inc.,* 321 P.3d 912, 918 (Nev. 2014).

The Nevada court thoroughly considered the issue, through substantial briefing, oral argument, and a request for reconsideration.   The Nevada Matter resulted in two comprehensive decisions on the matter.   (*See*, Nevada Decision and Nevada Reconsideration Decision, attached hereto as Exhibits 1 and 2).  No appeal was taken from those decisions.

Accordingly, the doctrine of issue preclusion bars the Abbott Movants' attempt to do here what it failed to do in the Nevada case.

## IV.   CONCLUSION

The assertion that the Abbott Movants, who do not have a judgment against WSBC, may somehow have the right to seize to a WSBC asset and thereby prevent WSBC's other legitimate, direct creditors of the opportunity to be paid from that asset is meritless.  The Abbott Movants cannot simply "jump in front" of WSBC's creditors with respect to an asset that belongs to WSBC and has never been an asset of Mr. Chesley.  The Motion to Substitute must be denied.

DATED this 9th day of December, 2016.

Respectfully submitted,

**LEVIN SITCOFF PC**

*s/ Bradley A. Levin*
Bradley A. Levin
Susan Minamizono
1512 Larimer Street, Suite 650
Denver, CO  80202
Telephone: (303) 575-9390
Fax: (303) 575-9385 fax
bal@levinsitcoff.com
ssm@levinsitcoff.com

and

Robbins, Kelly, Patterson & Tucker LPA

Michael A. Galasso
Jarrod M. Mohler
7 West 7th Street, Suite 1400
Cincinnati, OH 45202
Telephone: (513) 721-3330
Fax: (513) 721-5001
mgalasso@rkpt.com
jmohler@rkpt.com

**Attorneys for Eric W. Goering,
Assignee of Waite, Schneider, Bayless
& Chesley Co., L.P.A.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the registered users of the Court's CM-ECF filing system via the system this 9th day of December, 2016.

*s/ Nicole R. Peterson*
Nicole R. Peterson