**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, et al.,

    Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

    Defendants.

**MOVANTS' REPLY IN SUPPORT OF THEIR
MOTION TO SUBSTITUTE AS REAL PARTIES IN INTEREST**

## I. INTRODUCTION

Mr. Goering, as the purported Assignee of Waite Schneider Bayless & Chesley, Co. L.P.A.'s ("WSBC") assets offers several reasons why this Court should deny Movants' motion—without actually addressing Movant's basis for relief. He attempts to convince this Court that Stanley M. Chesley ("Chesley") was merely an employee of WSBC, that Movants seek to improperly move ahead of the IRS, that the Kentucky court completely exceeded its authority in issuing an order without affording WSBC due process, and that a Nevada state court decision on a garnishment controls in this case

This Court should not be fooled. Movants do not seek the fee income based on the Kentucky court's "alter ego finding." Armed with a judgment, Movants did what all judgment

creditors do - - they executed on personal property known to be owned by the judgment debtor. Stock in a company like WSBC is personal property and neither Chesley nor the multitude of lawyers he has retained in different proceedings have cited any compelling authority to support their argument that the Kentucky court orders permitting execution on Chesley's interest in WSBC, personal property, was not valid. Moreover, as previously noted, the Kentucky Court of Appeals and Supreme Court have already denied Chesley's motion for interlocutory relief from the June 23, 2015 execution order. (*See* Exhibits F, G, H to Doc. 2420, Movants' Motion to Substitute). In those appeals, Chesley argued that the Kentucky trial court lacked jurisdiction to allow execution on property located in Ohio, a foreign jurisdiction. If that were the case, debtors would simply move their personal property across state lines to avoid creditors.

While the Kentucky court also made an alter ego finding in its order granting Plaintiffs' Motion to Execute on the shares Chesley held in WSBC, the order makes it clear that it did so as part of its finding that the Wind-Up Agreement was a sham. The Order recites a portion of the overwhelming evidence showing that Chesley continued to control WSBC and derive the same benefits he always had as 100% owner. The evidence also showed the express terms of the Wind-Up Agreement were completely ignored.

As the 100% owner of WSBC, in ordering Chesley to transfer his shares of WSBC to his judgment creditors and all income derived from that interest, the court transferred ownership and control to Movants. An arrest warrant remains outstanding for Chesley's failure to appear and show cause why he has violated that order and several others. Chesley's defiance of the execution orders from Kentucky and his transfer of assets into and out of WSBC are also the subject of the fraudulent transfer action pending in federal court in Ohio. *See McGirr v. Rehme*,

4814-6869-6895.v1

Case No. 16-464.  The Supreme Court of Ohio has also spoken on the validity of the Kentucky execution orders and Chesley's attempt to block enforcement of them in Ohio.  *See Ford v. Ruehlman*, No. 2015-1470, 2016-Ohio-3529, 2016 Ohio LEXIS 1677 (Ohio Mar. 8, 2016) (attached as Exhibit B to Doc. 2420, Movants Motion to Substitute).

Finally, Chesley's contempt of the Kentucky orders has also been the subject of two additional federal court actions in Ohio.  Movants filed a motion to substitute as real parties in interest in *Duke Energy* action in which WSBC was entitled to receive fees from a class action settlement.  That court recognized that the core issues pertaining to whether Movants were entitled to the fee income were already pending before Judge Cleland in the *McGirr* action pending in the Southern District of Ohio. (*See* Doc. 2420, Movants' Motion to Substitute, at Exhibit J).  That court ordered that the fees due to WSBC be deposited with the court.  (*See id.* at Exhibit K).  WSBC also relied on the Nevada state court opinion in that action.

In part, presumably because the arrest warrant has not been enforced, despite the Ohio Supreme Court Order, Chesley has not been deterred in continuing to funnel all income into WSBC to himself.  He has defied an explicit order from the Kentucky court that he "shall advise the Court in the matter of Merilyn Cook, et al. v Rockwell Int'l Corp.," "that all payments or fees to which he and/or WSBC are entitled shall be paid directly to Plaintiffs through their undersigned counsel." (*See id.* at Exhibit A, at 5).

Chesley has selected a new Trustee, Mr. Goering, who now claims ownership of WSBC through a transfer from the first Trustee who has been judicially determined to be involved in a sham transfer.  Mr. Goering contends that the Kentucky trial court's finding that the Wind-Up Agreement was a sham is "a passing reference" this Court should ignore. (*See* Doc. 2430,

3

Opposition Brief, at 14). To the contrary—the Kentucky court, based on the substantial evidence before it, found it to be a sham because Chesley acted as though it did not exist.  He continued, as he always had, to control all aspects of WSBC, including where funds were paid.

The Kentucky court's separate finding that WSBC and Chesley were alter egos is not necessary to granting a judgment creditors' motion to execute on personal property.  That finding is also not necessary to the Kentucky court's conclusion that the Wind-Up Agreement was a sham transfer and that, therefore, Chesley continued to hold his shares of WSBC.  As such, the Kentucky court granted Movants motion to execute on those shares and income derived from such ownership, as they are personal property of Chesley.  Movants are the successors in interest to all money due WSBC and/or Chesley. Chesley's continued defiance of valid Kentucky execution orders, should not be tolerated by this Court.   All of his interest in WSBC has been transferred and Movants succeeded to his ownership interest.

Mr. Goering's alter ego argument and other arguments are red herrings meant only to detract from the simple issue before this Court.  Did Movants succeed to Chesley's interest in WSBC pursuant to a valid Kentucky execution order granting their motion to execute on Chesley's ownership interest and all income based on that interest?  If so, this Court is compelled to substitute them as the real parties in interest to any fees due WSBC and/or Chesley.  In the alternative, the fees should be paid into Court pending rulings in the *McGirr* action that may avoid the necessity of the parties litigating in two separate forums on related claims.

Movants believe this Court should uphold the Kentucky court's execution order, and Movants' motion should be granted.  Moreover, given the impending fee application deadline

4814-6869-6895.v1

and Movants' concerns set forth below pertaining to whether Mr. Goering is negotiating a fair fee for WSBC that will actually be paid only to WSBC, a ruling on this issue is urgent.

## II.     DISPUTED FACTUAL BACKGROUND

Mr. Goering states several "facts" that are not entirely accurate. Movants offer the following clarifications.

### A.     Chesley's Role in WSBC—More Than An "Employee"

Chesley was more than a mere "employee" and shareholder of WSBC as Mr. Goering argues. To the contrary, Chesley was the sole shareholder, president, sole member of the Board of Directors and registered agent for service of process of WSBC at the time of his disbarment, and after the judgment against him, and after the execution order that transferred his ownership interest in WSBC. Before the Wind-Up Agreement, to the world, Chesley was WSBC. He made the decisions associated with WSBC and controlled all aspects of WSBC.

The Wind-Up Agreement supposedly changed all that. Under the Wind-Up Agreement Chesley was required to resign "from all positions with the Corporation, including that of President and employee." (Wind-Up Agreement, attached as Exhibit A, at 2). Rehme agreed to hold 100% of Chesley's shares in WSBC in trust "for the exclusive purpose of winding up the Corporation for the benefit of its employees, creditors and Transferor [Chesley]." (*See id.*). The net economic benefit, after creditors are paid, goes to Chesley. (Testimony of Marion Little, July 26, 2016 Preliminary Injunction Hearing, at 67:15-21).[1]

But in reality, the Wind-Up Agreement changed nothing. Chesley remained involved in the daily functions of WSBC and continued to come to the office nearly every day, using the

---

[1] The pertinent pages of Mr. Little's testimony is attached hereto as Exhibit B.

5

same assistant he had always used. (Deposition of Thomas Rehme at 6:11-7:2).[2]  Chesley continued to exercise control over WSBC by writing himself and others checks from WSBC's bank account, signing his own name, as he remained an authorized signatory on WSBC's bank account. (*See* Examples of Checks Signed by Chesley, attached hereto as Exhibit D) and Bank Signature Cards, attached hereto as Exhibit E). Indeed, from 2014-2015, Chesley wrote checks to himself in amounts exceeding $2.5 million. (*See* Exhibit D). From August 2014 through February 2016, Chesley was paid almost $5.4 million. Chesley also signed corporate documents, including a resolution for a bank loan, as the sole member of the WSBC Board of Directors, almost a year after the Wind-Up Agreement. (*See* Resolution, attached hereto as Exhibit F). Chesley even signed a tax document on behalf of WSBC. (*See* WSBC W-9, attached hereto as Exhibit G). Indeed, he received Schedule K-1s for 2013 and 2014 from WSBC, reflecting that he was 100% owner, which he then utilized on his personal tax returns. (*See* K-1s and 2014 Tax Return, attached hereto as Exhibit H). Chesley also negotiated the terms of auction for some of the thirty-three automobiles owned by WSBC, where one was sold, and Rehme did not even know how much money was made from the auction or where it was paid. (Deposition of Thomas Rehme at 36:13-15; 37:7-13). Thus, Chesley was not merely an "employee" of WSBC—he remained in control of WSBC—even after the Wind-Up Agreement was executed.

### B.    According to WSBC Employees, There Are No Creditors of WSBC

Mr. Goering contends that Movants attempt to "hurdle over WSBC's other creditors, including the IRS, without concern for the facts or the law." (Doc. 2430, Opposition Brief, at 7). Yet, Mr. Goering does not identify a single WSBC creditor. The IRS liens identified in the

---

[2] The pertinent pages of Mr. Rehme's deposition are attached hereto as Exhibit C.

6

Opposition Brief pertain to Chesley, not WSBC. And, according to WSBC's trustee under the Wind-Up Agreement, Thomas Rehme, and the in house accountant for WSBC, all debts have been paid and there are no creditors. (*See* Deposition of S. Horner, at 55:15-24;[3] Deposition of T. Rehme, at 63:4-14).

### C. The Probate Court ABC Action

Mr. Goering suggests that Movants should just permit the ABC Action in Ohio to play out. But Mr. Goering has no standing to act as a Trustee for WSBC. His predecessor Trustee under the Wind-Up Agreement was party to a sham transfer and has no interest in WSBC to transfer. The ownership of WSBC and fee income in the case before this Court was transferred to Movants in June and August 2015. (Doc. 2420, Movants' Motion to Substitute, at Exhibits A and E).

Worse, even if Mr. Goering had a claim to Chesley's interest in WSBC, he has already demonstrated the outcome he is seeking is to deny Movants are even creditors of WSBC, much less successors to Chesley's interest. For example, he has asked the Ohio probate court for permission to retain counsel in this action because Movants "are not judgment creditors of the Assignor itself." (Probate Court filing, attached hereto as Exhibit J, at 1). Thus, Mr. Goering has shown that he will not respect the Kentucky orders.

Furthermore, Movants have moved to dismiss, or in the alternative, stay the ABC Action. (Motion to Dismiss, attached hereto as Exhibit K). Any purported transfer by Rehme to Mr. Goering is invalid in light of the Kentucky court's orders. And those same issues are already pending before Judge Cleland in the *McGirr* Action—rendering the ABC Action improper.

---

[3] The pertinent pages of Mr. Horner's deposition are attached hereto as Exhibit I.

4814-6869-6895.v1

Indeed, Judge Cleland has acknowledged the ABC Action with some suspicion and has indicated his belief that those issues are properly pending before him. (*See* October 17, 2016 Temporary Restraining Order, attached hereto as Exhibit L). Mr. Goering's action is a transparent attempt to avoid the jurisdiction of a federal court and another attempt to help Chesley avoid his creditors.

Finally, it is clear that Mr. Goering is doing Chesley's bidding and is not impartial. In a letter sent to counsel on October 25, 2016, he estimated the fees due WSBC to be approximately $20 million. (*See* Correspondence, attached hereto as Exhibit M). Now, before this Court, that number has fallen to a lodestar fee of $4 million. (*See* Doc. 2430, Opposition Brief, at 2). Movants have no confidence that WSBC's fee in this action can fairly be determined without their counsel's involvement. Movants have no confidence that Chesley, through others, will not enter into agreements with others to create the appearance of a lower fee award to WSBC. Movants have reason to suspect as much based on Chesley's conduct related to fees received in other cases. Movants have not obtained sufficient records thus far to even submit a complete fee application, contrary to Mr. Goering's representation.

## II.    LAW AND ARGUMENT

### A.    Movants Are The Real Parties In Interest Because Shares in WSBC Are Personal Property Subject to Execution by Creditors and The Wind-Up Agreement Whereby Chesley Purported to Transfer his Ownership Interest Is a Sham Transaction.

Mr. Goering spends much time attacking the Kentucky court's alter ego finding. But he misses the point. Yes, the Kentucky court did find that WSBC and Chesley were alter egos but, more importantly, it found that Chesley's transfer of WSBC to Rehme through the Wind-Up Agreement was a sham transfer. (*See* Order, attached as Exhibit A to Motion to Substitute, at 3)

8

("This Court now finds that the Wind-Up Agreement is a sham, and that Defendant Chesley continues to control and direct WSBC."). That court made this finding based on evidence showing that Chesley continued to direct where funds were paid, sign checks on behalf of WSBC, and sign bank documents and tax documents on behalf of WSBC. (*See id.* at 2-3). Based on this evidence, that court concluded that "Chesley is operating without regard to the Wind-Up Agreement or to the supposed purpose of WSBC's continued existence. He is exercising the right to control WSBC's activities, including directing the payment of fees and signing checks." (*Id.* at 4). Because the transfer was a sham, the Kentucky court disregarded the transfer. As such, Chesley continued to own his 100% interest in WSBC, which that court ordered transferred to Movants in granting their motion to execute.

That court separately found that Chesley and WSBC are alter egos, but that finding is not necessary to the court's decision to grant Movants' requested relief and order Chesley to transfer his shares to them. One finding is not dependent on the other. The court needed only to find that the transfer of WSBC was a sham, which it did, to order execution on Chesley's personal property.

Therefore, because Chesley was ordered to transfer his ownership interest in WSBC to Movants, Movants own WSBC and are entitled to any fees due to it. This Court should grant this motion.

### B. This Court Has No Authority To Hold The Kentucky Orders Void.

Mr. Goering asks this Court to find that the Kentucky court's orders are void for a number of different reasons, including that WSBC was denied due process, the Kentucky court's

9

alter ego finding was improper, and reverse veil-piercing is not recognized under Ohio or Tenth Circuit law.[4]

The Full Faith and Credit Clause of the United States Constitution, art. IV, § 1, requires that judicial proceedings in each State be given full faith and credit in the courts of every other State. *Davis v. Davis*, 305 U.S. 32, 39 (1938). Indeed, a judgment rendered in one state can only be challenged in another state court on very limited bases, including that the court in the first state lacked jurisdiction to properly render the judgment. *Durfee v. Duke*, 375 U.S. 106, 110 (1963). Importantly, a court cannot disregard an order from a sister state simply because it disagrees with the sister court's finding or would have resolved it differently. *See Milliken v. Meyer*, 311 U.S. 457, 462 (1940) ("In such case the full faith and credit clause of the Constitution precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based.").

Notably, the Kentucky court's orders from June and September 2015 remain valid and enforceable. Only the Kentucky appellate courts have the authority to overturn them or find them to be invalid or unenforceable. This has not occurred, and to the contrary, both the Court of Appeals and the Kentucky Supreme Court denied Chesley's interlocutory appeal of the June 23, 2015 order in which he argued the Kentucky trial court exceeded its jurisdiction. (*See* Exhibits F, G, H to Doc. 2420, Movants' Motion to Substitute).

None of Mr. Goering's arguments are proper bases for this Court to find the Kentucky orders void. Moreover, Movants believe that if this Court merely examines some of the evidence upon which the Kentucky court based its orders, it would concur. As discussed above, Mr.

---

[4] Notably, the Tenth Circuit decision on which Mr. Goering relies, *Cascade Energy Corp. v. Banks*, 896 F.2d 1557 (10th Cir. 1990), analyzes Utah, not Colorado, law.

4814-6869-6895.v1

Goering's due process argument is a red herring. The Kentucky court granted Movants' motion to execute on personal property of Chesley and so it only needed jurisdiction over Chesley. That court undisputedly has had jurisdiction over Chesley since 2004, and so the order cannot be held void on this basis.

Moreover, even if this Court would somehow conclude that WSBC was entitled to due process notice on a motion to execute on personal property of Chesley's, it received notice of the motion and thus had the right to be heard, which is all that is required for due process. *See Mathews v. Eldridge*, 424 U.S. 319, 348 (1976). Chesley was the sole shareholder, the sole member of the board of directors, the president and, most importantly for these purposes, he was WSBC's registered agent for service of process. (*See* WSBC's SOS page, reflecting its Registered Agent, attached hereto as Exhibit N). Thus, WSBC's agent received actual notice of the pending motion and its issues. Chesley was the individual making decisions on behalf of WSBC.

Mr. Goering fails to cite one Kentucky case holding that, in a veil piercing situation, the corporation must be named as a party to the lawsuit, or a case that holds that a corporation is entitled to notice before a judgment creditor executes on an individual's shares in a corporation. One of those circumstances would have to exist for Mr. Goering's due process argument to be meritorious. Mr. Goering's arguments pertaining to reverse veil piercing are misplaced. This Court cannot pass on the legal propriety of the Kentucky court's finding. And whether Ohio law or Tenth Circuit law recognizes reverse veil piercing is irrelevant. Kentucky law governs the Kentucky court's finding, and only those appellate courts can review and pass judgment on the accuracy of the lower court's decision.

Furthermore, whether the Kentucky court's alter ego finding was legally correct is irrelevant. First, the finding is not necessary to Movant's argument here. The critical point of the Kentucky court's order is that the Wind-Up Agreement was a sham transfer—a finding that is independent of the alter ego finding. Second, this Court cannot second guess the Kentucky court's decision. *See Milliken*, 311 U.S. at 462. Only the Kentucky appellate court can pass judgment on the propriety of the finding—this Court does not sit above the Kentucky court.

Accordingly, this Court lacks the authority to hold the Kentucky orders void.

### C.  The Fees Are Not Assets of the ABC Action.

Mr. Goering contends this Court cannot substitute Movants in place of WSBC because the fee is due to him under the ABC Action, not to WSBC. This Court should reject this circular logic. Mr. Goering has not moved to substitute himself in place of WSBC. He admits that the fees are the result of WSBC's involvement in the litigation, and he is seeking the fees based on a purported assignment from Rehme—who derived his interest from Chesley as part of a sham transfer. But Movants stand in the shoes of WSBC to receive any fees due based on a valid Kentucky execution order.

Mr. Goering has no valid claim to any interest in WSBC. Rehme's purported transfer of WSBC's assets to him was invalid and is void. The Kentucky court set aside the Wind-Up Agreement, and thus Rehme had no authority to transfer WSBC's assets to anyone. The shares belonged to Chesley, who was ordered to transfer them to Movants. The Kentucky court's order makes clear that Rehme had no authority to transfer the shares to Mr. Goering, and so his attempt to do so is without legal effect. Mr. Rehme is a defendant in the *McGirr* action based upon his collusion with Chesley to funnel all income to WSBC to him.

12

### D. Equity Absolutely Weighs In Favor Of Substitution.

Mr. Goering does not dispute that this Court has the equitable power to enforce the Kentucky court's orders—he only contends it would be inappropriate in light of the due process arguments previously raised. However, as discussed above, those concerns do not exist. Accordingly, his arguments are inapplicable.

The evidence presented to this Court and others has shown that: (1) Chesley was disbarred for stealing from his clients—Movants; (2) he has always used WSBC for his own personal benefit, controlling it at all times; (3) at every turn he has made every effort to stop Movants from collecting their judgments—including suing them and their lawyer in a lawsuit declared by the Ohio Supreme Court to be a sham; (4) he has tried to confuse and stall the issues through multiple parallel litigations; and (5) he refuses to comply with Kentucky's order that he pay his judgment creditors. This Court should acknowledge the Kentucky court's order and enforce it by granting Movants' motion to substitute. Equity demands as much.

### E. The Issue Preclusion Argument Based on the Nevada Opinion Is Misplaced.

Mr. Goering's final argument asks this Court to accept the Nevada court's decision as preclusive and deny Movants' motion. The Nevada decision is irrelevant for the reasons already discussed—it wrongly focused on the Kentucky court's alter ego finding and improperly found a due process violation. The Kentucky court's alter ego finding was peripheral and unnecessary to the decision that Movants could execute on Chesley's personal property, his shares of WSBC. Additionally, the Nevada case involved a determination of title in a garnishment action, not a motion to substitute for receipt of attorneys' fees. The present procedural posture is entirely different. Accordingly, because the issue and procedural posture is different, and because the

13

issue the Nevada court considered was not necessary to the Kentucky court's decision, nor is it before this Court, that decision does not preclude this Court from granting Movants' motion.

Interestingly, Mr. Goering entirely ignores the Ohio federal court's decision on this exact same issue—a Motion to Substitute Movants to receive fees due to WSBC. Perhaps that is because the Ohio court transferred the motion to Judge Cleland, who ultimately ordered that the owed fees be paid into the Court until he could resolve the other pending issues. If any decision is preclusive, that one would be.

### III.   CONCLUSION

For the foregoing reasons, Movants respectfully request that this Court grant its motion to substitute as the real parties in interest. Additionally, Movants request leave to conduct discovery from WSBC and its agents that will allow them to submit valid fee information for inclusion in a fee application to this Court. Given the impending deadling pertaining to the fee application, and Movants' concerns pertaining to whether WSBC is positioned to get a fair fee, a ruling on this issue is urgent so that Movants can protect their interest and ensure a fair fee is received.

Dated: December 23, 2016.

                                        Respectfully submitted,

                                        */s/  John S. Zakhem*
                                        John S. Zakhem
                                        JACKSON KELLY
                                        1099 18th Street, Suite 2150
                                        Denver, CO 80202
                                        Phone: (303) 390-0351
                                        Fax:  (303) 390-0177
                                        Email:   jszakhem@jacksonkelly.com
                                        ***Attorney for Movants***

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of December, 2016, I served a copy of the foregoing MOVANTS' REPLY IN SUPPORT OF THEIR MOTION TO SUBSTITUTE AS REAL PARTIES IN INTEREST to the registered users of the CM/ECF system.

*/s/  John S. Zakhem*
John S. Zakhem