## IN THE COURT OF COMMON PLEAS
## PROBATE DIVISION
## HAMILTON COUNTY, OHIO

IN THE MATTER OF:

WAITE, SCHNEIDER, BAYLESS & CHESLEY CO., L.P.A.

Case No. 2016003659

Judge Ralph E. Winkler

Magistrate Rogena D. Stargel

### APPLICATION FOR ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF LEVIN SITCOFF AS COUNSEL FOR ASSIGNEE

Now comes Eric W. Goering, Assignee for the Benefit of Creditors herein ("Assignee"), and hereby applies for an Order authorizing the retention and employment of Levin Sitcoff, P.C. ("Levin") as counsel for the Assignee. Such relief is sought in order to enable the Assignee to carry-out his responsibilities in this case.

Among the assets which are the subject of the Assignment in this case are the rights to recover money for work performed in connection with legal cases. One of these cases is *Cook, et al. v. Rockwell Int'l Corp., et al.,* No. 90-cv-00181-JLK (Dist. Colo.), which is also referred to the "Rocky Flats" litigation. On November 2, 2016 certain parties moved the court in the Rocky Flats litigation to substitute in place of the Assignor in connection with the fees to be distributed in the litigation. Fees from the Rocky Flats litigation are an asset of the Estate in this case. These parties are judgment creditors of a former agent of the Assignor, but are not judgment creditors of the Assignor itself. Recently, the same parties sought to execute against assets of the Assignor in state court in Nevada and the Nevada court rejected their efforts. A copy of the decision from the Nevada state court is attached. Assignee is in need of Colorado counsel to represent him in connection with this matter.

FILED
COURT COMMON PLEAS PROBATE
HAMILTON COUNTY, OHIO
2016 NOV 18 PM 12: 02

02671045-1

EXHIBIT J

Levin is well-suited to serve as Assignee's counsel in this case and has significant experience in commercial litigation. Levin has stated its willingness to act as counsel in this case and to render the necessary professional services as attorneys for the Assignee and the Assignee seeks to employ Levin on an hourly basis at the rate set forth in the attached draft engagement letter. The hourly rates range between $230 and $450. Levin will also charge the Assignee for charges and disbursements incurred in rendering its serves including such things as copy charges, travel, research, couriers, postage, and traditional professional fee charges.

Levin will provide the Assignee with monthly invoices for services rendered and disbursements incurred, and has agreed to accept as compensation such sums on the basis of the time expended by professionals, rates charged for the services, the necessity of services to the administration of the Estate, the reasonableness of the time in relation to the results achieved, and the complexity, importance, and nature of the problems, issues, or tasks addressed in this case.

Assignee believes that Levin is well-qualified to represent him effectively and efficiently in this matter, and that the retention of Levin is in the best interest of the Assignor, its creditors and shareholders. Accordingly, Assignee requests that Levin's retention as counsel be approved.

WHEREFORE, Assignee moves the Court to enter an Order authorizing the retention and employment of Levin upon the terms outlined in this Application.

Respectfully submitted,

Michael A. Galasso (#0072470)
Robbins, Kelly, Patterson & Tucker
7 West Seventh Street, Suite 1400
Cincinnati, Ohio  45202-2417
(513) 721-3330 | (513) 721-5001 fax
*mgalasso@rkpt.com*
**Attorney for Eric W. Goering,
Assignee**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following this 18th day of November, 2016 by regular U.S. mail, postage prepaid:

Donald J. Rafferty, Esq.
250 East Fifth Street, Suite 2350
Cincinnati, OH  45202

Michael A. Galasso

02671045-1                                         3

# LEVIN | SITCOFF

## ATTORNEYS AT LAW
### PROFESSIONAL CORPORATION

1512 Larimer Street, Suite 650
Denver, CO 80202
www.levinsitcoff.com

Bradley A. Levin
bal@levinsitcoff com

T (303) 575-9390
F (303) 575-9385

November 17, 2016

Eric W. Goering, Esq
Goering & Goering, LLC
220 W  3rd St
Cincinnati, OH 45202

**Re:**     **Retention Agreement**

Dear Mr. Goering

This letter will serve as our retention agreement and to confirm that Levin Sitcoff PC has been retained as local counsel in Colorado with respect to the interests of Waite, Schneider, Bayless & Chesley Co  LPA in the matter of *Merilyn Cook, et al  v  Rockwell International Corp., et al*, currently pending in the U S. District Court for the District of Colorado, Civil Action No  90-cv-00181-JLK.  Our understanding is that we will be co-counsel in this matter with the law firm of Robbins, Kelly, Patterson & Tucker, who will be acting as primary counsel

My hourly rate is $450 00 per hour, the hourly rate for other shareholders is $320.00-$450 00 per hour, and the hourly rate for any time spent by associate attorneys, depending on experience, is $230.00-$310 00.  Paralegals are billed at $125.00 per hour  Our expenses are to be reimbursed at our cost  Charges for electronic research are to be reimbursed at our estimate of costs attributable to your matter.  Copies will be charged at  12 cents per page or at invoice, if copying is done by an outside service or other firm

As I had discussed with Jarrod Mohler of Robbins, Kelly, Patterson & Tucker, we will be provided with a retainer in the amount of $10,000 00, which will remain in our trust account to be applied to the monthly bills. Each time we apply trust funds to a bill, we will forward a detailed invoice along with an update of the funds remaining in trust

We bill for services rendered on a monthly basis, payable within 20 days of receipt  If activity has been minimal in a given month, we will not bill for the period unless requested to provide monthly invoices, regardless of the activity level  Should representation become protracted in time, we reserve the right to request modification of this agreement by mutual consent

Please review this document carefully, and if you have any questions whatsoever concerning its terms, our rate structure, or any aspect of our anticipated role, please contact us  Otherwise, please execute the letter below and return it to us either by facsimile (303) 575-9385,

LEVIN | SITCOFF

Eric W. Goering
November 17, 2016
Page 2 of 2

or by email to my legal assistant, Karen Hammock, at kjh@levinsitcoff.com

We very much appreciate the opportunity to assist in this matter

Very truly yours,

LEVIN SITCOFF PC

Bradley A. Levin, Esq

BAL/ssm

I acknowledge and agree to the above terms

Date _____        _____
                            Eric W. Goering

Electronically Filed
02/11/2016 03:37:59 PM

1   DAO

CLERK OF THE COURT

2      EIGHTH JUDICIAL DISTRICT COURT

3          CLARK COUNTY, NEVADA

4

5   MILDRED ABBOTT,

6               Plaintiff,

7       vs.                    Case No.   A-15-726616-F

8   STANLEY M. CHESLEY,         Dep't No.   VII

9               Defendant.

10              DECISION AND ORDER

11      This case arises from a judgment obtained by Plaintiff Mildred Abbott against

12   Defendant Stanley Chesley in Kentucky case 05-CI-00436.  Now before the Court is Third

13   Party Claimant Waite Schneider Bayless & Chesley's ("WSBC") Petition to Determine Title

14   in Property Subject to Wrongful Attachment and Third Party Castano Directed Distribution

15   Trust's ("Castano Trust") Motion to Interplead.  The matter came before the Court on

16   February 2, 2016.  The Court grants WSBC's Petition to Determine Title and finds that

17   Abbott's judgment against Chesley in case 05-CI-00436 cannot be used to garnish WSBC's

18   interest in the Castano Trust.  The Court denies Castano Trust's Motion to Interplead as

19   moot.

20          I.    **Procedural and Factual Background**

21      Chesley used to be an attorney licensed to practice in Ohio.  He was the sole owner of

22   WSBC.  In 2013, Chesley was disbarred based on allegations that he improperly retained

23   funds that should have gone to his client.  Chesley transferred ownership of WSBC in a

24   Wind-Up Agreement in April of 2013.  Abbott and other Plaintiffs (hereinafter referred to

25   as "Abbott") obtained a second amended judgment against Chesley in Kentucky case 05-CI-

26   00436 on October 22, 2014 based on the same circumstances that lead to Chesley's

27   disbarment.  Abbott did not name WSBC as party to the action.

28



ANDA MARIE BELL
DISTRICT JUDGE
DEPARTMENT VII

1



EXHIBIT
540

1    Abbott filed a motion to transfer beneficial interest in the Castenado Trust in case
2  05-CI-00436. Abbott asserted that Chesley maintained a beneficial interest in WSBC. On
3  June 23, 2015, the Kentucky Court ordered Chesley to transfer his beneficial interest in
4  WSBC and any payments derived from that interest to Abbott.

5    Abbott subsequently filed a motion to execute. Abbott argued that Chesley failed to
6  comply with the Kentucky Court's June 23, 2015 order. Chesley argued that he no longer
7  had in interest in WSBC. The Kentucky Court issued an order on September 25, 2015. The
8  Kentucky Court found that "the Wind-Up Agreement in a sham, and that Defendant
9  Chesley continues to control and direct WSBC" and disregarded WSBC's corporate identity.
10  The Kentucky Court essentially ruled that Chesley was an alter ego of WSBC, though it
11  never used that term. The Kentucky Court ordered Chesley to transfer his interest in WSBC
12  and any payments derived from that interest to Abbott. The order specifically addressed
13  the Castano Trust, which makes periodic transfers to WSBC's account for fees earned in
14  past cases involving the tobacco industry. The Kentucky Court ordered Chesley to direct
15  the Castano Trust "that all payments to which [Chesley] and/or WSBC are entitled from the
16  Castano Trust shall be paid directly to Plaintiff counsel." WSBC was never named a party to
17  case 05-CI-00436 and did not have an opportunity to argue to the Kentucky Court that it
18  was not an alter ego of Chesley.

19    On October 22, 2015, Abbott filed an application of foreign judgment in the instant
20  case. The application was made in Nevada because it is where Castano Trust is located.
21  Abbott seeks to garnish funds from the Castano Trust that are due to be paid to WSBC.
22  WSBC was not named as a party in the instant case. On January 8, 2016, Castano Trust
23  filed a motion to interplead WSBC as a defendant.

24    On January 13, 2016, WSBC filed its petition to determine title to WSBC's interest in
25  the Castano Trust. WSBC argues its interest in the Castano Trust is WSBC's sole property
26  and Chesley has no interest in the Castano Trust. Abbott filed a response on January 29,
27  2016, arguing that under the Kentucky Court's order, Chesley and WSBC are alter-egos of
28  each other, and Chesley is a personal beneficiary of the Castano Trust.

LINDA MARIE BELL
DISTRICT JUDGE
DEPARTMENT VII

2

## II.   Discussion

"Only property owned by the judgment debtor is subject to garnishment..." Brooksby v. Nev. State Bank, 312 P.3d 501, 502 (Nev. 2013). "If the property levied on is claimed by a third person as the person's property... the plaintiff or the third-party claimant is entitled to a hearing within 10 days therefrom before the court having jurisdiction of the action, in order to determine title to the property in question, which hearing must be granted by the court upon the filing of an application or petition therefor." NRS 31.070.

In order for a Court to find that parties are alter egos, "[t]here must be such unity of interest and ownership that one is inseparable from the other." Truck Ins. Exch. v. Palmer J. Swanson, Inc., 189 P.3d 656, 660 (Nev. 2008). Alter egos are liable for each others' debts because "adherence to the corporate fiction of a separate entity would, under the circumstances, sanction fraud or promote injustice." Polaris Indus. Corp. v. Kaplan, 747 P.2d 884, 886 (Nev. 1987).

The procedure for determining whether parties are alter egos, and thus co-judgment debtors, appears to be similar, if not identical, in Nevada and Kentucky. In Nevada, "a defendant who is subject to a judgment creditor's alter ego claim must receive, in an independent action, formal notice, service of process, an opportunity to conduct discovery, fact-finding, and an opportunity to be heard, before the claim is resolved." Callie v. Bowling, 160 P.3d 878, 879-81 (Nev. 2007). In Kentucky, it is also proper to secure a judgment against one debtor and then bring "a piercing suit" against potential alter egos. Inter-Tel Techs., Inc. v. Linn Station Properties, LLC, 360 S.W.3d 152, 168 (Ky. 2012). Both states require that notice be given before a court determines that individuals or entities are alter egos.

In the instant case, Abbott failed to give WSBC notice that WSBC was a potential alter ego of Chesley until the Kentucky Court already ruled on the issue. WSBC was not named as a party in Kentucky case 05-CI-00436. Abbott did not bring any separate action against WSBC to assert that Chesley and WSBC are alter egos. The Kentucky Court made

LINDA MARIE BELL
DISTRICT JUDGE
DEPARTMENT VII

3

1  an alter ego determination in a case with no way for WSBC to assert a defense against
2  Abbott's claims.

3      The Court cannot extend full faith and credit to an order resulting from a lack of due
4  process. "The full faith and credit clause of the United States Constitution requires that a
5  final judgment entered in a sister state must be respected by the courts of this state absent a
6  showing of fraud, lack of due process or lack of jurisdiction in the rendering state." Mason
7  v. Cuisenaire, 128 P.3d 446, 448 (Nev. 2006) (quoting Rosenstein v. Steele, 747 P.2d 230,
8  231 (Nev. 1987).

9      The Court finds that respecting the Kentucky Order declaring Chesley and WSBC to
10  be alter egos would create a due process violation in this case. Abbott asks this Court to
11  apply an order entered solely against Chesley to deprive a nonparty of its property. The
12  Court grants WSBC's petition and determines that WSBC's interest in the Castano Trust is
13  not subject to garnishment by Abbott. WSBC's interest in the Castano Trust is its sole
14  property. Abbott may attach funds distributed to Chesley individually, not funds
15  distributed to WSBC.

16                  **III.   Conclusion**

17      The Court grants WSBC's Petition to Determine Title and finds that Abbott's
18  judgment against Chesley in case 05-CI-00436 cannot be used to garnish WSBC's interest
19  in the Castano Trust. Because this Order removes the conflict regarding title to funds held
20  by the Castano Trust, the Court denies Castano Trust's Motion to Interplead as moot.

21
22
23                 DATED this _____ day of February, 2016.
24
25
26
27                 LINDA MARIE BELL
                DISTRICT COURT JUDGE
28

LINDA MARIE BELL
DISTRICT JUDGE
DEPARTMENT VII

4

1

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the date of filing, a copy of this Order was

electronically served through the Eighth Judicial District Court EFP system or, if no e-mail

was provided, by facsimile, U.S. Mail and/or placed in the Clerk's Office attorney folder(s)

for:

| Name | Party |
|---|---|
| John W. Mujie, Esq.<br>John W. Mujie & Associates<br><br>Angela Ford, Esq. | Counsel for Mildred Abbott |
| Brian D. Shapiro, Esq.<br>Brian D. Shapiro, LLC | Counsel for Stanley Chesley |
| Thomas Fell, Esq.<br>Fennemore Craig, P.C. | Counsel for Castano Directed Distribution Trust |
| Will Kemp, Esq.<br>Kemp, Jones & Coulthard, LLP<br><br>Donald J. Rafferty, Esq.<br>Cohen, Todd, Kite & Stanford, LLC | Counsel for Waite Schneider Bayless & Chesley Co. |

*Shelby Dahl* (signature)

SHELBY DAHL
LAW CLERK, DEPARTMENT VII

**AFFIRMATION**
Pursuant to NRS 239B.030
The undersigned does hereby affirm that the preceding Decision and Order filed
in District Court case number A626616 DOES NOT contain the social security
number of any person.

/s/ Linda Marie Bell        Date        2/10/16
District Court Judge

LINDA MARIE BELL
DISTRICT JUDGE
DEPARTMENT VII

Electronically Filed
03/31/2016 09:46:52 AM

1   DAO

2                    EIGHTH JUDICIAL DISTRICT COURT   CLERK OF THE COURT

3                         CLARK COUNTY, NEVADA

4

5   MILDRED ABBOTT,

6                              Plaintiff,

7       vs.                                    Case No.      A-15-726616-F

8   STANLEY M. CHESLEY,                        Dep't No.     VII

9                              Defendant.

10                       **DECISION AND ORDER**

11        This case arises from a judgment obtained by Plaintiff Mildred Abbott against

12  Defendant Stanley Chesley in Kentucky case 05-CI-00436. On February 11, 2016, the Court

13  ruled Abbott's judgment against Chesley in case 05-CI-00436 cannot be used to garnish

14  Waite Schneider Bayless & Chesley's ("WSBC") interest in the Castano Directed

15  Distribution Trust ("Castano Trust").    Now before the Court is Abbott's Motion to

16  Reconsider the Court's Ruling Dated February 11, 2016. This matter was scheduled to come

17  before the Court on March 8, 2016. The Court now rules on the motion without an oral

18  hearing pursuant to EDCR 2.23(c). The Court denies Abbott's Motion to Reconsider. The

19  Court also grants Abbott's Motion to Seal Exhibits 8 and 9 to Abbott's response to WSBC's

20  petition to determine title in property. The Court vacates the hearing currently set for April

21  12, 2016.

22           I.      **Procedural and Factual Background**

23        Chesley was the sole owner of WSBC before April 2013, when he transferred

24  ownership of WSBC in a Wind-Up Agreement.    Abbott and other Plaintiffs (hereinafter

25  referred to as "Abbott") obtained a judgment against Chesley in Kentucky case 05-CI-

26  00436 on October 22, 2014. Abbott did not name WSBC as party to the action.

27        On June 23, 2015, the Kentucky Court ordered Chesley to transfer his beneficial

28  interest in WSBC and any payments derived from that interest to Abbott. Chesley argued

HEARING DATE
ALREADY ENTERED

MAR 31 2016

LINDA MARIE BELL
DISTRICT JUDGE
DEPARTMENT VII

1

EXHIBIT
541

1   that he no longer had in interest in WSBC.  The Kentucky Court issued an order on

2   September 25, 2015, ruling "the Wind-Up Agreement in a sham, and that Defendant

3   Chesley continues to control and direct WSBC" and disregarding WSBC's corporate

4   identity.  The Kentucky Court essentially ruled that Chesley was an alter ego of WSBC,

5   though it never used that term.  The order specifically addressed the Castano Trust, which

6   makes periodic transfers to WSBC's account.  The Kentucky Court ordered Chesley to direct

7   the Castano Trust "that all payments to which [Chesley] and/or WSBC are entitled from the

8   Castano Trust shall be paid directly to Plaintiff counsel."  WSBC was never named a party

9   to case 05-CI-00436 and did not have an opportunity to argue to the Kentucky Court that it

10  was not an alter ego of Chesley.

11      On October 22, 2015, Abbott filed an application of foreign judgment in the instant

12  case.  The application was made in Nevada, where Castano Trust is located.  Abbott seeks to

13  garnish funds from the Castano Trust that are due to be paid to WSBC.  WSBC was not

14  named as a party in the instant case.  On January 8, 2016, Castano Trust filed a motion to

15  interplead WSBC as a defendant.   On January 13, 2016, WSBC filed its petition to

16  determine title to WSBC's interest in the Castano Trust.

17      On February 11, 2016, the Court ruled that enforcing the Kentucky Order declaring

18  Chesley and WSBC to be alter egos would create a due process violation in the instant case.

19  WSBC did not receive notice of the Kentucky case that found Chesley and WSBC to be alter

20  egos.  The Kentucky Court made an alter ego determination in a case with no way for WSBC

21  to assert a defense against Abbott's claims.  WSBC's interest in the Castano Trust is its sole

22  property.  The Court found Abbott may attach funds distributed to Chesley individually, not

23  funds distributed to WSBC.

24      On February 22, 2016, Abbott filed a motion to reconsider the February 11, 2016

25  Decision.   Abbott argues the Decision was erroneous because it misapplied the law to

26  Abbott's claims.  WSBC filed an opposition on March 7, 2016, asserting Abbott was merely

27  rearguing issues already ruled on by the Court.  Abbott argued additional grounds for

28  reconsideration in its reply, filed on March 8, 2016.

LINDA MARIE BELL
DISTRICT JUDGE
DEPARTMENT VII

2

## II.   Discussion

**A.   Motion to Seal**

Abbott filed a response to WSBC's petition to determine title to WSBC's interest in the Castano Trust on January 29, 2016. The response contains exhibits Abbott now moves to have sealed. Exhibits 8 and 9 are financial documents containing confidential information such as account numbers.

Nevada Supreme Court Rule Part VII governs the sealing of Court records. The Court may seal records when there are compelling circumstances. The sensitive financial information within the exhibits justifies sealing these Court records. In addition, Abbott's motion to seal was unopposed. See EDCR 2.20(e). Therefore, the Court grants Abbott's motion to seal Exhibits 8 and 9.

**B.   Motion for Reconsideration**

Reconsideration is only appropriate when "substantially different evidence is subsequently introduced or the decision is clearly erroneous." Masonry & Title Contractors Ass'n of S. Nev. v. Jolley, Urga & Wirth, 941 P.2d 486, 489 (Nev. 1997). "Only in very rare instances in which new issues of fact or law are raised supporting a ruling contrary to the ruling already reached should a motion for rehearing be granted." Moore v. City of Las Vegas, 551 P.2d 244, 246 (Nev. 1976). "Rehearings are not granted as a matter of right, and are not allowed for the purposes of reargument..." Geller v. McCowan, 178 P.2d 380, 381 (Nev. 1947).

In the motion for reconsideration, Abbott first reargues the issues raised in WSBC's petition to determine title to WSBC's interest in the Castano Trust: whether Chesley was the true beneficiary of the trust rather than WSBC and whether Chesley and WSBC were alter egos. Abbott does not provide the Court with new evidence or persuade the Court that it ruled erroneously on these points.

Abbott raises two additional arguments that the Court's February 11, 2016 Decision was erroneous. First, Abbott argues the Court should not have evaluated the merits of

1   Kentucky order in deciding whether to extend full faith and credit.  Second, Abbott argues
2   the Kentucky order did not violate due process.

3       **1.**    **The Court Properly Evaluated the Due Process Implications of the**
4           **Kentucky Court's Decision**

5       "Under the Full Faith and Credit Clause of the United States Constitution, a
6   final judgment entered in a sister state must be respected... However, not all judgments are
7   entitled to full faith and credit in Nevada." City of Oakland v Desert Outdoor Adver. Inc.,
8   267 P3d 48, 50-51 (Nev. 2011).  "The full faith and credit clause of the United States
9   Constitution requires that a final judgment entered in a sister state must be respected by
10  the courts of this state absent a showing of fraud, lack of due process or lack of jurisdiction
11  in the rendering state." Mason v. Cuisenaire, 128 P.3d 446, 448 (Nev. 2006) (quoting
12  Rosenstein v. Steele, 747 P.2d 230, 231 (Nev. 1987).

13      This Court had the authority and the duty to evaluate the due process implications of
14  the Kentucky Court's orders in case 05-CI-00436.  The case Abbott cites to dispute the
15  Court's evaluation goes through a due process analysis.  See Milliken v Meyer, 311 US 457,
16  463 (1940).  Therefore, this argument by Abbott is not a proper basis for the Court to
17  reconsider its ruling.

18      **2.**    **The Court Properly Determined that the Kentucky Court's Decision**
19          **Violated Due Process**

20      Generally, "[d]ue process is satisfied by giving both parties 'a meaningful
21  opportunity to present their case.'" JD Constr. v IBEX Int'l Group, 240 P3d 1033, 1040
22  (Nev. 2010) (quoting Mathews v. Eldridge, 424 U.S. 319, 349 (1976).  In its February 11,
23  2016 Decision, the Court concluded enforcing the Kentucky order would violate due process
24  because WSBC had no notice of the Kentucky case.  Abbott argues two bases for the Court
25  to reconsider its findings on this issue.  First, Abbott argues the Court improperly used
26  Nevada law in determining the proper procedure for Abbott's alter ego claim.  Second,
27  Abbott argues WSBC received notice of the Kentucky case through Chesley.
28

LINDA MARIE BELL
DISTRICT JUDGE
DEPARTMENT VII

4

a.   **The Court Did Not Use Nevada Law to Establish the Proper Procedure for Abbott's Alter Ego Claim**

In its February 11, 2016 Decision, the Court cites both Nevada and Kentucky law to evaluate the due process required in an alter ego claim.  The Court found "[b]oth states require that notice be given before a court determines that individuals or entities are alter egos."  See Callie v. Bowling, 160 P.3d 878, 879-81 (Nev. 2007) and Inter-Tel Techs., Inc. v. Linn Station Properties, LLC, 360 S.W.3d 152, 168 (Ky. 2012).

The Court did not find that the Kentucky order violated due process because it failed to follow Nevada law.  The Court found the Kentucky order violated due process because it failed to follow its own law.  Though Abbott argues the Court misinterpreted Kentucky law, Abbott did not cite a single case where Kentucky courts have allowed a claimant to establish an alter ego relationship without giving notice to both alleged alter ego parties. Furthermore, the Court did not find a due process violation solely because Abbott did not bring a separate claim against WSBC.  The Court found a due process violation because WSBC did not receive notice of any action, including case 05-CI-00436, seeking to establish an alter ego relationship between WSBC and Chesley.

The Court correctly found that due process required WSBC to receive notice of the action relating to its purported alter ego relationship with Chesley.  Because this finding was not erroneous, this argument by Abbott is not a proper basis for the Court to reconsider its ruling.

b.   **WSBC Did Not Receive Notice of the Kentucky Proceedings Through Chesley**

Abbott argues WSBC received notice of the Kentucky case through Chesley's involvement in the case.  Abbott asserts three methods: (1) through Chesley as WSBC's registered agent for service of process, (2) through WSBC paying Chesley's attorneys fees, and (3) through virtual representation by Chesley.

Suing a registered agent in his individual capacity does not give notice to a related entity that its interests may be at risk.  Abbott argues, "if it were required that WSBC

5

1   receive a copy of the motion, for purposes of notice, the motion would have been delivered

2   to Chesley..." (Reply in Supp. of Mot. Recons. at p. 2.) If it had been required that WSBC

3   receive any pleading in the Kentucky case, the Court would have directed service to WSBC,

4   putting Chesley and WSBC on notice that Chesley was acting as a registered agent, not in

5   his individual capacity. The Court finds it concerning that Abbott argues Chesley acted

6   purely in his individual capacity when signing documents regarding the Castano Trust

7   "individually and as President of WSBC" (Id. at p. 6) while simultaneously arguing Chesley

8   acted as a representative of WSBC's interest by being sued in his individual capacity.

9        Paying the attorneys fees for another individual does not entitle the payee to notice

10  regarding the case at issue. Paying attorneys fees does not make the payee a party to the

11  action. Under Nevada Rule of Professional Conduct 1.8(f) and Kentucky Supreme Court

12  Rule 130(1.8)(f), attorneys must keep information relating to the representation of a client

13  confidential from non-clients paying for the client's representation.

14       The Court is not persuaded by Abbott's virtual representation argument for two

15  reasons. First, the Kentucky court made no mention of virtual representation in its

16  decision. It would be illogical to conclude that a due process violation based on a lack of

17  notice could be cured by a silent and invisible finding by a court. Second, virtual

18  representation cannot serve as an end run around the due process issue in this case. The

19  standard for virtual representation is similar to the standard for alter egos. In order for a

20  Court to find parties are alter egos, "[t]here must be such unity of interest and ownership

21  that one is inseparable from the other." Truck Ins. Exch. v. Palmer J. Swanson, Inc., 189

22  P.3d 656, 660 (Nev. 2008). The determining factor of virtual representation "is such

23  identity of interest as to give reasonable assurance that the contingent rights of the absent

24  party will be protected by the person joined in the suit." Harris v Jackson, 192 SW3d 297,

25  303 (Ky. 2006), as mod (May 24, 2006) (quoting Carroll v. First Nat. Bank & Trust Co. of

26  Lexington, 227 S.W.2d 410, 411 (Ky.1950). There is a critical distinction in the degree of the

27  unity of interests. This distinction is reflected in the procedures courts may take to

28  determine alter ego relationships and virtual representation. Courts must provide notice to

LINDA MARIE BELL
DISTRICT JUDGE
DEPARTMENT VII

6

1   potential alter egos regarding cases seeking to establish alter ego relationships.  A court

2   may not rely on a virtual representation determination, even if one had existed in this case,

3   to deprive a party of the opportunity to address the higher unity of interest inherent in an

4   alter ego relationship.

5       The Court correctly found that WSBC did not receive proper notice of case 05-CI-

6   00436.  Because this finding was not erroneous, this argument by Abbott is not a proper

7   basis for the Court to reconsider its ruling.

8                           III.    Conclusion

9       Abbott failed to provide a basis for the Court to conclude that its February 11, 2016

10  ruling was erroneous.  The Court denies Abbott's Motion to Reconsider the Court's Ruling

11  Dated February 11, 2016.  The Court grants Abbott's Motion to Seal Exhibits 8 and 9 and

12  vacates the hearing currently set for April 12, 2016.

13

14

15                    DATED this _____ day of March, 2016.

16

17

18                    _____

19                    LINDA MARIE BELL
                      DISTRICT COURT JUDGE

20

21

22

23

24

25

26

27

28

7

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date of filing, a copy of this Order was electronically served through the Eighth Judicial District Court EFP system or, if no e-mail was provided, by facsimile, U.S. Mail and/or placed in the Clerk's Office attorney folder(s) for:

| Name | Party |
|---|---|
| John W. Mujie, Esq.<br>John W. Mujie & Associates<br><br>Angela Ford, Esq. | Counsel for Mildred Abbott |
| Brian D. Shapiro, Esq.<br>Brian D. Shapiro, LLC | Counsel for Stanley Chesley |
| Thomas Fell, Esq.<br>Fennemore Craig, P.C. | Counsel for Castano Directed Distribution Trust |
| Will Kemp, Esq.<br>Kemp, Jones & Coulthard, LLP<br><br>Donald J. Rafferty, Esq.<br>Cohen, Todd, Kite & Stanford, LLC | Counsel for Waite Schneider Bayless & Chesley Co. |

SHELBY DAHL
LAW CLERK, DEPARTMENT VII

**AFFIRMATION**
Pursuant to NRS 239B.030
The undersigned does hereby affirm that the preceding Decision and Order filed in District Court case number A626616 DOES NOT contain the social security number of any person.

/s/ Linda Marie Bell      Date      3/22/16
District Court Judge

LINDA MARIE BELL
DISTRICT JUDGE
DEPARTMENT VII

8