

**IN THE COURT OF COMMON PLEAS**
**PROBATE DIVISION**
**HAMILTON COUNTY, OHIO**

IN THE MATTER OF

WAITE, SCHNEIDER, BAYLESS &
CHESLEY CO., L.P.A.

Case No. 2016003659

Judge Ralph E Winkler

Magistrate Rogena D Stargel

### <u>MOTION TO DISMISS, OR IN THE ALTERNATIVE TO STAY THE PROCEEDINGS IN, THE ASSIGNMENT FOR THE BENEFIT OF CREDITORS ACTION</u>

The real parties in interest and owners of Waite, Schneider, Bayless & Chesley Co., L.P.A. ("WSBC"), Connie McGirr, Mary Ann Bailey, Debbie Carman-Staton, Patricia Gaunce, Norma Hall, Joyce Hanley, Alicia Roberts, Trustee for the Estate of Marjorie Hulse, Lisa Peek, Brenda Rentas on behalf of Anthony Rentas, Wendy Fitch, Administrator, Estate of Sheila Fitch, Michelle Sharpe-Roberts, Corina Stearns, Stephanie Carter, Administrator for the Estate of Linda Toler, Deborah Turner, Betty Jean Widner, Joyce A. Brown, Connie Centers, Linda Dunaway, Lucille Krey, and Billie June Roberts and all those similarly situated that may be Plaintiffs (collectively, "Movants"), hereby move this Court to dismiss this action, or in the alternative, to stay the Assignment for the Benefit of Creditors action ("ABC Action") currently pending before it until the resolution of litigation currently pending between Movants and WSBC, Stanley M. Chesley ("Chesley"), and Thomas Rehme ("Rehme") before the Southern District Court of Ohio, Case No. 16-464, *McGirr v. Rehme et al.*, the Honorable Robert Cleland presiding. This action is predicated on issues already decided in Kentucky and issues now pending before the Southern District of Ohio, including a

COURT OF COMMON PLEAS PROB.
RALPH WINKLER, JUDGE

2016 DEC 13  AM 10: 12

EXHIBIT K

request for the appointment of a receiver for WSBC.  The interests of comity and judicial economy require that the instant matter be stayed.

Respectfully submitted,

Brian S. Sullivan, Esq. (0040219)
Christen M. Steimle, Esq. (0086592)
DINSMORE & SHOHL LLP
255 E. Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Phone:  (513) 977-8200
Fax:      (513) 977-8141
Email:  brian.sullivan@dinsmore.com
             christen.steimle@dinsmore.com

## MEMORANDUM IN SUPPORT

### I.     Introduction

This ABC Action is nothing more than WSBC's attempt to avoid the jurisdiction of a federal court.  On April 12, 2016, Movants filed the *McGirr* action against Chesley, WSBC, and Rehme, the purported Trustee of WSBC, alleging that Chesley, WSBC, and Rehme engaged in a series of fraudulent transfers to avoid paying a valid and enforceable judgment obtained by Movants against Chesley in Kentucky.    Those fraudulent transfers continued even after Kentucky court orders issued in aid of execution of its judgment against Chesley, that transferred Chesley's 100% interest in WSBC to the judgment creditors' counsel.  (*See* Exhibits A and B).

On April 15, 2016, Movants filed a motion for temporary restraining order and preliminary injunction in the *McGirr* action requesting relief, including that WSBC be enjoined from continuing to transfer its assets and that a receiver be appointed to control the assets of WSBC.  A two day hearing occurred before the Southern District of Ohio, which included the presentation of more than one hundred exhibits and hours of live witness testimony. Also pending before the Southern District of Ohio are motions to dismiss, motions to amend the complaint, and a renewed motion for preliminary injunction.  Indeed, the parties have been actively litigating in federal court for eight months and have filed a multitude of briefs on several complex legal issues.

Despite the effort and expense expended by the parties and the federal court, and before the federal court could issue a ruling on the pending motions, WSBC purportedly transferred its assets and filed the ABC Action.   The transfer, according to papers filed by WSBC in this action, was accomplished through Rehme.  Movants have claimed in the *McGirr* action that all transfers by Rehme are fraudulent transfers.   The ABC Action

is nothing more than an end run around the federal court's jurisdiction.   Moreover, under the Kentucky execution orders, the transfer is in contempt of those orders and in furtherance of a sham transaction.  (*See* Exhibit B).

Upon learning of the ABC Action, Movants filed a motion for temporary restraining order before the Southern District of Ohio, which that court granted.  That order prohibited Mr. Goering, the purported Assignee of WSBC's assets from taking any action pertaining to those assets until the federal court issued its decision on the preliminary injunction motion.  The federal court extended that order twice, finding that the alleged transfer of WSBC's assets "was without consideration, and that this transfer appears to be with the intent to frustrate the judgment creditors. This new action puts WSBC's assets and transfers before another court while these same issues are pending before this one." (*See* October 17, 2016 Restraining Order, attached hereto as Exhibit C, at 1-2).  That court also found that the "purported transfer of assets and new litigation is nothing more than an attempt to have an Ohio state court decide issues that are properly pending before this [federal] Court."  (*Id.* at 2).  Finally, that court found a significant danger of irreparable harm should the ABC Action be permitted to proceed. (*Id.*).

Neither Rehme nor WSBC have any standing to ask this Court to dispose of the assets of WSBC.  Movants are the successors to Chesley's 100% interest in WSBC. Chesley, WSBC and Rehme's fraudulent transfers of assets in defiance of the Kentucky execution orders are now the subject of extensive briefing that is pending in the *McGirr* action. [1]

---

[1] Chesley's interlocutory appeals of one of the execution orders have already been denied by the Kentucky Court of Appeals and Supreme Court.  (*See* Exhibit D).

There is further evidence that the ABC Action is nothing more than another attempt by Chesley to avoid the judgment against him and to seek the assistance of this Court to help in that pursuit. According to Eric Goering, the ABC Action was filed to pay creditors of WSBC - an entity that has long since ceased operating as a law firm. However, in the *McGirr* action the in house accountant for WSBC, Steve Horner, has already testified that WSBC has no debt. (*See* Deposition of S. Horner, excerpts attached as Exhibit E, at 55:15-24). Rehme also was unable to identify any debts or obligations that needed to be paid. (*See* Deposition of T. Rehme, excerpts attached as Exhibit F, at 63:4-14). Therefore, the only potential creditors are Movants – who are not actually creditors but successors in interest to the ownership and assets. Yet WSBC and Chesley have stated multiple times, including in this action, that Movants are not creditors. So, according to what WSBC has asserted thus far, because no creditors exist, all the cash from income and the sale of assets will go to the remainder beneficiary – Stanley Chesley.

## II.    Law and Analysis

A court has the discretion stay proceedings in the interest of comity, orderly procedure, or judicial economy. *State ex rel. Zellner v. Cincinnati Bd. of Ed.*, 34 Ohio St.2d 199, 200 (Ohio 1973). When considering whether to grant a stay of a matter pending in state court in light of a parallel federal proceeding, the court should consider which forum has the ability to issue a more complete disposition of the matter and which court possesses greater familiarity and expertise with the trial of such issues. *See id.* at 201.

In the present case, the federal court can afford more complete relief between the parties and has more familiarity with the pertinent issues. First, the federal court has

jurisdiction over not only WSBC, but also Chesley and Rehme—both necessary to a full resolution of the issues between the parties.   Second, the ABC Action attempts to distribute assets of WSBC after those assets have already been executed on by Movants. Movants claim that all asset transfers by WSBC are fraudulent conveyances is already pending in the Southern District of Ohio before Judge Cleland.   The federal court is more familiar with the history between the parties, the myriad of interrelated conduct by Chesley, and the legal issues determining the parties' relationship.   That court has invested significant resources in presiding over the two-day hearing, considering the multitude of briefs filed by the parties, and issuing several interim orders on pending issues.   Indeed, its position as to the ABC Action has been made clear.   (*See* Exhibit C).

Without a stay, the parties will continue to litigate in two courts, even though an order from federal court should be dispositive of the issues pending before this Court in two ways.   First, Movants claim that the purported assignment of WSBC's assets was invalid because the Kentucky court has previously transferred Chesley's interest in WSBC to Movants' counsel.   (*See* Exhibit B).   Thus, because Movant's counsel did not sign the ABC, it is ineffective.   Second, the question of whether Movants are valid owners/creditors of WSBC is before the federal court, which would render litigation on that issue in this Court duplicative.   Moreover, given the similarity of the pending issues, there is a significant danger of conflicting orders from the two courts.   Finally, this Court should not expend its resources to learn a complicated litigation history involving these parties when judicial resources have already been expended by the federal court.

For these reasons, this action should be dismissed as a forum shopping duplicate action.   In addition, the action was filed by a party without standing.   In the alternative,

a stay of the ABC Action is appropriate pending a decision by the federal court in the parallel proceedings.

## III.   Conclusion

For the foregoing reasons, Movants respectfully ask this Court to dismiss the ABC Action, or in the alternative stay the Action pending resolution by the federal court of the parallel proceeding.   The interests of comity, orderly procedure, and judicial economy weigh in favor of this approach.

Respectfully submitted,

Brian S. Sullivan, Esq. (0040219)
Christen M. Steimle, Esq. (0086592)
DINSMORE & SHOHL LLP
255 E. Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Phone: (513) 977-8200
Fax:     (513) 977-8141
Email:  brian.sullivan@dinsmore.com
          christen.steimle@dinsmore.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by regular U.S. mail, postage duly prepaid, this __12__ day of December, 2016, upon the following:

Donald J. Rafferty, Esq.
COHEN TODD KITE & STANFORD LLC
250 E  Fifth Street, Suite 2350
Cincinnati, OH 45202
drafferty@ctks.com
***Attorney for Waite Schneider
Bayless & Chesley Co., L.P.A.***

Michael A. Galasso, Esq.
ROBBINS KELLY PATTERSON & TUCKER
7 West Seventh Street, Suite 1400
Cincinnati, OH 45202
mgalasso@rkpt.com
***Attorney for Eric W. Goering,
Assignee***



EXHIBIT

A

ENTERED
BOONE CIRCUIT/DISTRICT COURT
JUN 2 3 2015
DIANNE MURRAY CLERK
BY _____ D C

**COMMONWEALTH OF KENTUCKY**
**BOONE CIRCUIT COURT**
**DIVISION III**
**CASE NO. 05-CI-00436**

MILDRED ABBOTT, et al.                                              **PLAINTIFFS**

V.

STANLEY M. CHESLEY, et al.                                         **DEFENDANTS**

**ORDER**

This matter comes before the Court on the Plaintiff's Motion to Transfer Beneficial

Interest in Property Held in Trust. The Court having read the memorandums filed by the parties,

reviewed the file, and being in all ways sufficiently advised, hereby finds as follows

This Court entered judgment against Defendant Chesley on August 1, 2014, finding him

jointly and severally liable as a matter of law for the $42 million in damages previously awarded

to Plaintiffs against Defendant's Gallion, Cunningham, and Mills  Said Judgment was made final

pursuant to CR 54.02 and Defendant Chesley did not post a supersedeas bond to secure a stay of

enforcement pending appeal

As part of post-judgment discovery, Defendant Chesley disclosed the Wind-Up

Agreement for his former law firm, Waite, Schneider, Bayless & Chesley, Co , L P A.

("WSBC")  The Wind-Up Agreement provides that Defendant Chesley would transfer his shares

in WSBC to Thomas F. Rehme to hold in trust for the exclusive purposes of winding up WSBC

for the benefit of its employees, creditors, and Chesley  Per the Agreement, Mr Rehme is

authorized to liquidate corporate assets and distribute proceeds to creditors as required and the

pay out the remainder to Defendant Chesley as long as Defendant Chesley does not receive any

legal fees other than for services performed prior to the effective date of his retirement.

1

Both prior to and after Defendant Chesley was disbarred in Kentucky and his retirement of his Ohio bar license, he transferred more than $59 million dollars from his personal accounts to WSBC  $1,322,000 of that amount was transferred on or after the date of the Wind-Up Agreement.

Defendant Chesley still owns a beneficial interest in WSBC  Plaintiffs argue that this interest is subject to execution for the purpose of satisfying Plaintiff's Judgment against Defendant Chesley. To this end, Plaintiff requests that the Court order that Defendant Chesley's beneficial interest in WSBC be transferred to Plaintiffs and that any distributions that would be made to Defendant Chesley be made to the Plaintiffs through their counsel.

Defendant Chesley objects, arguing that WSBC is an Ohio legal professional association formed and maintained under Chapter 1785 of the Ohio Revised Code and, therefore, an Order such as the Plaintiff is requesting exceeds this Court's jurisdiction  The Court disagrees

There is no dispute that this Court has personal jurisdiction over Defendant Chesley  He is a party to the case at hand and a valid judgment has been entered against him, a judgment which the Plaintiffs are within their rights to seek the Court's assistance to collect

The law is clear that when the Judgment state has personal jurisdiction over the judgment debtor, that state may exercise that jurisdiction to take action on that judgment  *See Estates of Ungar ex rel  Strachman v  Palestinian Authority*, 715 F Supp.2d 253, 262-64 (D R I. 2010)  The Restatement (Second) Conflict of Laws § 55 (1971) states that, " a state has power to exercise judicial jurisdiction to order a person, who is subject to its judicial jurisdiction, to do, or not do, an act in the state, although the carrying out of the decree may affect a thing in another state."  Furthermore, K R S  § 426 384 gives the Court the authority to enforce the surrender of money,

2

securities, or any other property of the defendant in the execution and enforcement of a

judgment

**IT IS HEREBY ORDERED AND ADJUDGED** as follows:

1   Defendant Chesley shall direct that his beneficial interest in the shares of WSBC be

    transferred to Plaintiffs within fourteen (14) days of the date of this Order and all

    distributions pursuant to said interest are to be made to Plaintiffs through their counsel;

2.   Defendant Chesley is hereby Ordered to direct Thomas F. Rehme to make all

    payments derived from Chesley's interest in the shares of WSBC payable to the

    Plaintiffs through their counsel, Hon Angela Ford;

3.   If for any reason, including but not limited to any action by another court in any other

    jurisdiction, monetary payment(s) is/are made to Chesley from his interest in WSBC,

    Chesley and his attorney shall immediately turn over said payment(s) to Plaintiffs'

    counsel, Angela Ford;

4   Defendant Chesley and his counsel are to provide a copy of this Order to Thomas F.

    Rehme

**DATED** this _23rd_ day of June, 2015

_[signature]_

**JAMES R. SCHRAND, JUDGE**
**BOONE CIRCUIT COURT**

COPIES TO   ALL ATTORNEYS OF RECORD

CERTIFICATE
I, DIANNE MURRAY, clerk of the Boone District
Court, hereby certify that I have mailed a copy
foregoing order and notice to all parties of record
their last known addresses or their counsel of record
This _23_ day of _June_, _2015_
DIANNE MURRAY
BOONE DISTRICT/CIRCUIT COURT
_[signature]_   D.C.

3

EXHIBIT

B

ENTERED
BOONE CIRCUIT/DISTRICT COURT
SEP 2 5 2015
DIANNE MURRAY, CLERK
BY:_____ D C

COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
DIVISION III
CASE NO. 05-CI-00436

MILDRED ABBOTT, et al.                                         PLAINTIFFS

V.

STANLEY M. CHESLEY, et al.                                    DEFENDANTS

## ORDER

This matter is before the Court on the Plaintiffs' Motion to Execute. The Court,

having reviewed Plaintiffs' Motion and Memorandum, Supplemental Memorandum, Defendant's

Opposition, Plaintiffs' Reply, the Court file, and having heard argument from counsel, and the

Court being in all ways sufficiently advised, finds as follows.

This Court entered Judgment against Defendant Chesley on August 1, 2014, finding him

jointly and severally liable as a matter of law for the $42 million in damages previously awarded

to Plaintiffs against Defendants Gallion, Cunningham and Mills. The Judgment against

Defendant Chesley was made final pursuant to CR 54.02, and Defendant Chesley did not post a

supersedeas bond to secure a stay of enforcement pending appeal. This Court entered an Order

on June 23, 2015 on Plaintiffs' Motion to Transfer Beneficial Interest in Property Held in Trust,

which ordered Defendant Chesley to direct that any distributions or payments payable to him

through his law firm Waite, Schneider, Bayless & Chesley, Co., L.P.A. ("WSBC"), from his

interest in WSBC or pursuant to the Wind-Up Agreement winding up WSBC's business be paid

to Plaintiffs through their counsel in satisfaction of the Judgment against him. No payments have

been made to Plaintiffs pursuant to this Court's June 23, 2015 Order. Additionally, this Court

has granted multiple motions to compel against Defendant Chesley and in favor of Plaintiffs

1

regarding Defendant Chesley's incomplete discovery responses. See Order (Feb. 13, 2015), Order (Mar. 27, 2015); Order (June 9, 2015).

Plaintiffs have obtained documents showing that despite the above Orders, Defendant Chesley failed to identify fee income responsive to Plaintiffs' discovery requests. This includes fees Defendant Chesley may receive from *Merilyn Cook, et al v Rockwell Int'l Corp*, Case No 1:90-cv-00181-JLK in the United States District Court for the District of Colorado, and any additional fees he may be entitled to from *In Re Fannie Mae Securities Litig.*, Case No 1:04-CV-01639 in the United States District Court for the District of Columbia ("Fannie Mae Litigation"). The Court has concerns that after this issue was raised in the Plaintiffs' instant Motion and after the Court conducted a Hearing on the Motion on September 8, 2015, Chesley then supplemented his Objections and Responses on September 16, 2015 to include potential income in the *Cook* matter.

Defendant Chesley claims that he no longer controls WSBC pursuant to the Wind-Up Agreement dated April 15, 2014. Hamilton County Court of Common Pleas Judge Robert P. Ruehlman agrees with Chesley as noted in his August 26, 2015 Order when he found, "Mr Chesley owns no shares of WSBC and has only a contingent remainder interest in the Wind-Up Agreement trust holding the shares of WSBC. Plaintiff Mr. Chesley and WSBC are separate and independent entities." Judge Ruehlman went on to Order that WSBC and Rehme, as trustee, are "to disregard and not effectuate any of the Kentucky Orders" that apply to them.

This Court is not aware what documentation was submitted to Judge Ruehlman before his Order of August 26, 2015, but the documents submitted with the instant Motion paint a different picture of the current relationship among WSBC, Rehme, and Chesley. Those documents show that Chesley continues to maintain control over WSBC and to direct where money is paid. In

2

October 2014, he directed payment of over $16 million in fees from the *Fannie Mae* litigation into two separate accounts. Plaintiffs argue that Chesley remains in control of the operating account for WSBC, signing every check drawn on the account. Documents show he has signed bank documents and a tax document on behalf of WSBC and has directed payments to his attorneys in this matter from a WSBC account in the amounts of $164,145.88 to Frost Brown Todd and $142,561.72 to Benton Benton Luedke in October 2014. Documents also show that Defendant Chesley is entitled to control the payee of fees from the tobacco litigation through the Castano Trust and in December 2014 he directed those fee payments into a WSBC account while he had directed previous payments to personal accounts.

Chesley disagrees, arguing that Plaintiffs were incorrect in asserting he signed all sixty-four of the checks they submitted that were drawn on WSBC's Fifth Third Bank account. Chesley responds that he only signed nine (14%) and that a majority of the checks were signed by Steven Horner, a CPA at WSBC, whose signature is "easily confused" with Chesley's "on small copies of checks because both start with the letters 'st' and have a capital 'c' " This admission that Chesley signed the nine checks does not help his argument that he and WSBC are separate entities.

As this Court stated in its June 23, 2015 Order, it has personal jurisdiction over Defendant Chesley and may exercise that jurisdiction to take action on the Judgment entered against him. See *Estates of Ungar ex rel Strachman v Palestinian Authority*, 715 F. Supp 2d 253,262-64 (D.R.I. 2010); Restatement (Second) of Conflict of Laws§ 55 (1971), see also KRS § 426.384.

This Court now finds that the Wind-Up Agreement is a sham, and that Defendant Chesley continues to control and direct WSBC. This Court may disregard a corporate entity

3

when there is "( 1) domination of the corporation resulting in a loss of corporate separateness and (2) circumstances under which continued recognition of the corporation would sanction fraud or promote injustice." *Inter-Tel Technologies, Inc v Linn Station Properties, LLC*, 360 S W 3d 152, 165 (Ky. 2012). Chesley is operating without regard to the Wind-Up Agreement or to the supposed purpose of WSBC's continued existence. He is exercising the right to control WSBC's activities, including directing the payment of fees and signing checks. The Court finds he is utilizing WSBC and its existence during what is supposed to be a wind-up period, to prevent Plaintiffs, his judgment creditors, from executing on their Judgment. The Court finds he is taking action to render himself insolvent while directing assets to WSBC, including fees from the Fannie Mae Litigation and tobacco litigation, and the transfer of $59 million from his personal accounts to WSBC. Chesley is engaging in what the Supreme Court in Inter-Tel Technologies described as "'an intentional scheme to squirrel assets into liability-free corporations while heaping liabilities upon an asset-free corporation.'" *Id.* at 168 (quoting *Sea-Land Services, Inc v Pepper Source*, 941 F.2d 519, 524 (Fifth Cir. 1991)). This Court recognizes that it should not disregard the corporate entity lightly, but it also should not "hesitate in those cases where the circumstances are extreme enough to justify disregard of an allegedly separate corporate entity." *Id* at 168. In light of the evidence submitted by Plaintiffs, the Court finds that the Wind Up Agreement is a sham and that in reality Chesley retains control over WSBC

**IT IS HEREBY ORDERED AND ADJUDGED** as follows:

1. The Plaintiffs Motion is GRANTED. Defendant Chesley shall immediately transfer his ownership interest in WSBC to the Plaintiffs through their undersigned counsel. This Court's June 23, 2015 Order remains in full effect As directed in that Order, Defendant Chesley and his attorneys shall immediately turn

over to Plaintiffs' counsel any and all monetary payments made to Defendant Chesley from his interest in WSBC;

2. Defendant Chesley shall immediately direct the Trustee of the Castano Trust that all payments to which he and/or WSBC are entitled from the Castano Trust shall be paid directly to Plaintiffs' counsel; and

3. Defendant Chesley shall advise the Court in the matter of *Merilyn Cook, et al v Rockwell Int'l Corp., Case* No. 1:90-cv-00181-JLK, in the United States District Court for the District of Colorado that all payments or fees to which he and/or WSBC are entitled shall be paid directly to Plaintiffs through their undersigned counsel.

DATED this 25 day of September 2015.

JAMES R. SCHRAND, JUDGE
BOONE CIRCUIT COURT

COPIES TO: ALL ATTORNEYS OF RECORD

CERTIFICATE
I, DIANNE MURRAY, clerk of the Boone District/Circuit Court, hereby certify that I have mailed a copy of the foregoing order and notice to all parties hereto at their last known addresses or their counsel of record
This ___ day of _____, 2015
DIANNE MURRAY
BOONE DISTRICT/CIRCUIT COURT
_____, D.C.

5



**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

CONNIE MCGIRR, et al.,

                Plaintiffs,

     vs

THOMAS F. REHME, et al ,

               Defendants.

:  Civil Action No. 1:16-cv-464
:
:
:  Judge Robert Cleland
:
:  **EXTENDED TEMPORARY
:  RESTRAINING ORDER**
:
:
:

This matter is before the Court on Plaintiffs' Renewed Motion For Preliminary Injunction against Defendants Thomas Rehme ("Rehme"), Waite, Schneider, Bayless, & Chesley, Co , L P.A. ("WSBC"), and Stanley M. Chesley ("Chesley"). (Doc. 82). The current Temporary Restraining Order (Doc. 75), which was issued with notice to the affected parties, and previously extended, with notice, is scheduled to expire today. The underlying facts have not changed. The Court finds, based upon those facts, that it is appropriate to extend the existing Temporary Restraining Order pending the court's determination as to the Motion for Preliminary Injunction  The current Temporary Restraining Order as set forth below, **SHALL BE AND IS HEREBY**, extended for fourteen (14) additional days.

The Court finds that the Rule 65 factors weigh in favor of granting a temporary restraining order.  To begin, Plaintiffs have proven a likelihood of success on the merits There is no dispute that WSBC filed a new action in the Hamilton County Probate Court (*See* Doc  70).  This filing followed Rehme's attempt to transfer all assets of WSBC to a new "Assignee," Mr. Eric Goering.  The Court notes that this transfer was without consideration, and that this transfer appears to be with the intent to frustrate the judgment creditors  This new action puts WSBC's assets and transfers before another

court while these same issues are pending before this one.  Importantly, this Court has the power to order the same relief as sought in the probate court.  The new Assignee is akin to a receiver, albeit one that was hand-picked by WSBC and thus whose impartiality Plaintiffs reasonably question, and Plaintiffs have already asked this Court to appoint a receiver.  This issue was discussed at length during the preliminary injunction hearing

It is not lost on the Court that WSBC appears to be forum shopping   The Court finds the timing of this purported transfer particularly troubling, as this filing comes while a motion for preliminary injunction is pending, after a two day hearing, and a motion for leave to amend the complaint to assert new causes of action is also pending   The purported transfer of assets and new litigation is nothing more than an attempt to have an Ohio state court decide issues that are properly pending before this Court.

The Court further finds a significant danger of irreparable harm.  The concealment or dissipation of assets constitutes irreparable harm. *NCR Corp. v. Feltz*, No. 91-4011, 91-4033 and 91-4058, 1993 WL 11876, at *2 (6th Cir. Jan. 21, 1993), *Huntington Nat. Bank v Guishard, Wilburn & Shorts, LLC*, No. 2:12-CV-1035, 2012 WL 5902916, at *9 (N.D Ohio Nov 26, 2012)   Plaintiffs argue that this new action gives WSBC the power to dissipate its assets through use of the Assignee   Here, the terms of the assignment and order filed by WSBC reveals that the new Assignee has the authority to sell all of WSBC's assets for the benefit of its creditors. (Doc 70 at 1).  But it is highly unlikely that the new Assignee will recognize Plaintiffs as creditors of WSBC.  Before this Court, WSBC has repeatedly argued that Plaintiffs are not creditors of WSBC and have no right to any WSBC assets, despite the fact that another court has expressly ordered both that Chesley transfer his interest in WSBC to Plaintiffs and that Plaintiffs can directly execute on the assets of WSBC.  Plaintiffs' status as a creditor of WSBC is squarely before this Court.  Thus,

2

through this purported assignment, Rehme/WSBC has attempted to remove this decision from this Court, place it in the plenary discretion of the new Assignee, who will have unfettered authority to deny Plaintiffs' claim and sell or liquidate all WSBC assets before a fair and impartial decision can be made

Moreover, Chesley, who is integral to this dispute, is not a party to the probate court litigation, and the fraudulent transfer claims currently pending before this Court are certainly relevant to the probate court litigation. Accordingly, the Court finds without temporary injunctive relief, there is a significant risk that WSBC's assets will be liquidated without recognition of Plaintiffs' claims and before a decision as to their status can be made, and Plaintiffs will be left without any recourse. This factor weighs in favor of temporary injunctive relief.

Considering the harm to others, the Court is not convinced that WSBC is at risk for greater harm than that which was just described by the Court   As such, this factor weighs in favor of granting the temporary restraining order

Finally, the Court finds that, to the extent implicated, the public interest would be served by deterring others from engaging in fraudulent transfer of funds   *See Concheck v  Barcroft*, No. 2.10-cv-656, 2010 WL 4117480, at *3 (S.D. Ohio Oct. 18, 2010). Similarly, forum shopping will not be tolerated. *See Mitan v. Int'l Fidelity Ins. Co.*, 23 F. App'x 292, 298-99 (6th Cir. 2001).

Accordingly,

**IT IS ORDERED THAT**, until further order by the Court:

1.      The Defendants, including all agents and assignees of Defendants, shall not assign, disburse, distribute, transfer or take any action related to any asset of WSBC, including money, outside of basic office expenses;

3

2.      The Defendants, including all agents and assignees of Defendants, shall not negotiate or enter into any agreements pertaining to income due WSBC and/or Chesley;

3.      Chelsey, including his agents and assignees,  shall not directly or through anyone acting on his behalf or for his benefit take nor direct any money that could be claimed by WSBC or anyone who may owe money to WSBC;

4.      WSBC, including its agents and assignees, shall not assign, disburse, distribute, transfer or take any action on any assets, including money, outside of basic office expenses;

5.      Rehme, including his agents and assignees, shall not, in his capacity as secretary of WSBC and as Chesley's trustee under the 2013 Wind-Up Agreement transfer records of any kind or enter any agreements on behalf of WSBC or authorize the assignment, disbursement, distribution, transfer or take any other action on any of WSBC's assets, including money, outside of basic office expenses;

6.      WSBC, including its agents and assignees, shall not make any assignments, transfers, distributions, disbursements, or other payments to Chesley or on behalf of or for the benefit of Chesley;

7      Chelsey, for himself or anyone acting on his behalf or for his benefit shall not enter agreements or take nor direct any money that could be claimed by WSBC or any person or entity who may owe WSBC money; and

8.      Rehme shall not, in his capacity as secretary of WSBC and as Chesley's trustee under the 2013 Wind-Up Agreement authorize or facilitate any assignments, transfers, distributions, disbursements, or other payments to Chesley or on behalf of Chesley

Having carefully considered the facts of this matter, the Court finds that the bond already posted by Plaintiffs in this litigation sufficient.   No additional bond shall be required.

**SO ORDERED.**


  S/Robert H  Cleland
ROBERT H  CLELAND
UNITED STATES DISTRICT JUDGE


Dated   October 17, 2016


I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, October 17, 2016, by electronic and/or ordinary mail


  S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522



# Commonwealth of Kentucky

## Court of Appeals

### NO. 2015-CA-001066-I

STANLEY M. CHESLEY                                           MOVANT

MOTION FOR INTERLOCUTORY RELIEF
BOONE CIRCUIT COURT
ACTION NO. 05-CI-00436

v.

MILDRED ABBOTT, ET AL.                              RESPONDENTS

### ORDER

** ** ** ** ** ** ** **

BEFORE:  J. LAMBERT, STUMBO AND VANMETER, JUDGES.

Movant, Stanley Chesley (hereinafter, "Chesley"), seeks interlocutory relief, pursuant to Kentucky Rules of Civil Procedure ("CR") 65.07, to dissolve an order of the Boone Circuit Court[1], as entered on June 23, 2015, which he describes

---

[1] Simultaneous with the filing of his Motion for Interlocutory Relief, Movant sought emergency intermediate relief under CR 65.07(6) to stay the circuit court order pending this Court's decision on the motion for interlocutory relief.  By Order dated August 25, 2015, this Court denied the motion for emergency intermediate relief.

as a "mandatory injunction."[2]  In addition to interlocutory relief, Chesley seeks the

Court's order on two other motions.  First, Chesley seeks to supplement the record

with an additional exhibit ("Motion to Supplement").  And Second, Chesley seeks

an Order, pursuant to CR 7.03, to file under seal another exhibit with the Court

("Motion to File Under Seal").  Having reviewed the pleadings, all arguments and

applicable law, we deny the motion for interlocutory relief, deny the motion to

supplement the record and deny the request to file an exhibit under seal.[3]

A short synopsis of the underlying facts are as follows.  On August 1,

2014, the Boone Circuit Court entered a judgment against Chesley and in favor of

Mildred Abbott, et al.  ("Abbott").  In the order, the court held Chesley jointly and

severally liable for $42 million dollars owed to Abbott as recovery for the breach

of Chesley's fiduciary duty to his clients by taking a significantly greater fee for

his work than he was entitled and for taking the money without the knowledge or

consent of the clients.  Chesley's breach of duty stems from his role in what has

become known as the "fen-phen" diet drug settlement action.[4]  The Boone Circuit

Court issued amended orders to the August 1, 2014 judgment on September 19,

---

[2] Motion for Interlocutory Relief at 4.

[3] Chesley has a concurrent action before this Court, Case No. 2015-CA-001067, which concerns the same facts discussed in this order.  In the concurrent action, he has filed a Petition for Writ of Prohibition, a Motion to File Under Seal Plaintiffs' Motion to Transfer Beneficial Interest in Property Held in Trust, Memorandum of Law in Support and Attached Exhibits and a Motion to Supplement the Record with an Additional Exhibit.  The Court will issue decisions on the writ and the pending motions in Case No. 2015-CA-001067 by separate order.

[4] *Darla Guard v. A.H. Robins Co.*, Boone Circuit Court, Case No. 98-CI-795

2014 and October 22, 2014 modifying language as to the collection of annual interest on the judgment and the date from which such interest could begin calculation. However, within the amended orders, none of the original conclusive findings of liability against Chesley were altered, amended or vacated by the circuit court. Chesley appealed the circuit court's judgment and rulings[5] but did not post a supersedeas bond[6] to ensure enforcement of the judgment would be stayed pending his appeal.

As a result of his role in the "fen-phen" action, Chesley was disbarred by the Kentucky Supreme Court. *Kentucky Bar Ass'n v. Chesley*, 393 S.W. 3d 584 (Ky. 2013). He subsequently resigned his Ohio law license. Because Ohio does not allow a non-attorney to own an interest in a law firm, Chesley transferred his interest in the law firm of Waite, Schneider, Bayless & Chesley Co., L.P.A. ("WSBC") to a trust held by an Ohio attorney, who was authorized to liquidate the assets, pay creditors and distribute the remaining assets. Chesley holds the only shares in WSBC and had transferred more than $59 million dollars from his personal accounts to WSBC, including over $1 million dollars after the trust was in place.

---

[5] Those appeals are also each styled, *Chesley v. Abbott*, 2014-CA-001725, 2014-CA-001900 and 2014-CA-001984, and are currently before this Court. These appeals were consolidated, for all purposes, including briefing, by order dated January 20, 2015.

[6] *See* CR 62.03 and 73 04.

- 3 -

On June 9, 2015, the circuit court conducted a hearing on Abbott's

motion to transfer Chesley's beneficial interest in the trust to satisfy the $42

million dollar judgment. Abbott argued that because the circuit court has

jurisdiction over Chesley himself, it has the authority to order him to direct the

trust to pay over any disbursed funds he will receive to Abbott's attorney to settle

the August 1, 2014 judgment. Chesley countered that because the trust is located

in Ohio, the circuit court lacked jurisdiction to control the distribution of any funds

from it. The circuit court entered an order on June 23, 2015, finding it has personal

jurisdiction over Chesley and a valid judgment was entered against him. The

circuit court also found Abbott and the other circuit court plaintiffs are within their

rights to seek the court's assistance to collect on the judgment and state law gives

the court authority to enforce the surrender of Chesley's money in the execution

and enforcement of a judgment.   Chesley seeks interlocutory relief from this order.

Having reviewed the record and the arguments of the parties, the

Court finds that the June 23, 2015 circuit court order is not an injunction, as argued

by Chesley, but is a post-judgment order meant only to execute the circuit court's

previous finding that Chesley is liable for the $42 million dollar judgment, as

established in its August 1, 2014 decision.

The Court finds Chesley is incorrect in his legal characterization of

the June 23, 2015 order. The Court finds the relief he is seeking pursuant to CR

65.07 cannot be granted.   CR 65.07 expressly provides that a party affected by entry of a temporary injunction may seek relief before this Court. *Commonwealth, ex rel. Conway v. Shepherd*, 336 S.W.3d 98, 101 (Ky. 2011).   As stated in *Curry v. Farmers Livestock Mkt.*, 343 S.W.2d 134, 135 (Ky. 1961), a temporary injunction is designed merely to hold the status quo until the merits of a claim can be decided.  A moving party seeking relief from an injunction must establish that its rights are or will be violated and the movant will suffer immediate and irreparable injury, loss, or damage pending a final judgment in the action. *See* CR 65.04(1).

The Court has reviewed the August 1, 2014 order, as well as the subsequent June 23, 2015 order, and finds both provide findings of fact and conclusions of law to support the final adjudication, under CR 54.02, of Chesley's liability for breach of fiduciary duties for the judgment amount of $42 million dollars and for Abbott's entitlement to seek execution of the judgment through the collection of distributions and payments made as a benefit flowing from Chesley's shares in WSBC.  Chesley briefly argues, by footnote, that certain issues remain to be adjudicated before the circuit court, including Abbott's demand for punitive damages in relation to the claim of breach of fiduciary duties.

CR 54.02(1)[7] (emphasis added) provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, *the court may grant a final judgment upon one or more but less than all of the claims or parties* only upon a determination that there is no just reason for delay. The judgment shall recite such determination and shall recite that the judgment is final. In the absence of such recital, any order or other form of decision, however designated, which adjudicates less than all the claims or the rights and liabilities of less than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is interlocutory and subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

The Court acknowledges that CR 54.02(1) requires a specific recital in a court judgment involving multiple claims or parties that "there is no just reason for delay" to denote a final decision of the court on the specific issues(s) before it. In our review of the aforementioned orders, we did not find that specific recital. However, we find in those orders neither language from Boone Circuit Court stating it is entering an injunction nor language indicating preservation of rights pending a final trial on the merits. The Boone Circuit Court's June 23, 2015 order is not subject to review under CR 65.07 if the circuit's decision was not a temporary injunction. This Court finds that the order, when analyzed under CR

---

[7] CR 54.02 is titled, "Judgment upon multiple claims or involving multiple parties."

65.04(1), is not an injunction, temporary or otherwise, and not capable of being subject to interlocutory relief. The order was not entered during the pendency of the lawsuit itself and it certainly does not render a final judgment ineffectual. It is very much the opposite. It is designed to give effect to that final judgment.

In *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542 (Ky. 2011), Kentucky's highest court stated that in rendering determinations to grant final judgment as to fewer than all claims in the litigation, as alleged by Chesley in this matter, thereby making possible an immediate appeal from the judgment, courts should be sensitive to the general rule disallowing piecemeal appeals, but a trial court is granted discretion in applying the rule. *Id.* at 551. And, where the judgment truly disposes of a distinct and separable aspect of the litigation, the trial court's determination that there is no just reason for delay will only be disturbed if that discretion was abused. *Id.* The Court finds no evidence of abuse of discretion in the decisions by Boone circuit. The June 23, 2015 order served only to restate the circuit court's previous judgment against and personal jurisdiction over Chesley by addressing Abbott's motion to enforce a final and appealable judgment and to seek an assignment and "[a] marshaling [of] the assets ... and distributing the proceeds." *See Sec. Fed. Sav. & Loan Ass'n v. Nesler*, 697 S.W. 2d 136, 139 (Ky. 1985).

- 7 -

Despite that lack of the recital of "no just reason for delay" the Court finds that it is not fatal.  The entry of the August 1, 2014 order establishing Chesley's liability and the follow-up, post-judgment June 23, 2015 order giving Abbott the ability to move forward in executing collection efforts against the trust disbursements, when read plainly, are final adjudications on the claim.  This Court has not found limiting language in the circuit court orders at issue in this matter to justify Chesley's request for interlocutory relief.  This Court finds the circuit court intended to finalize the issues of Chesley's liability on the question of his breach of fiduciary duties, as set forth in the August 1, 2014 order, and to give legal authority to Abbott and her counsel to move forward in executing the judgment in the June 23, 2015 order.

Two final motions pending in this action require resolution: the Motion to Supplement and the Motion to File Under Seal.  Chesley has moved to supplement the record with an additional exhibit ("Motion to Supplement").  The exhibit in question is categorized by Chesley as a response memorandum filed in the Court of Common Pleas in Hamilton County, Ohio, as filed by Angela M. Ford, who is counsel for Abbott.  The exhibit is titled, "*Defendant Angela M. Ford's Response in Opposition to the Motion to Intervene filed by Waite Schneider Bayless & Chesley Co., LPA*" in Case No. A1500067 ("Ford's Ohio Response").[8]

---

[8] Chesley alleges the Ford Ohio Response was filed on July 22, 2015 in the Court of Common Pleas.

- 8 -

In summary, Chesley argues that Abbott's attorney, Angela Ford, makes conflicting arguments in her Ohio pleading[9] when compared to the pleadings she has submitted on behalf of Abbott as counsel before this Court as to the "extraterritorial effect" of the August 1, 2014 and June 23, 2015 orders of the Boone Circuit Court. By moving to have this exhibit added to the record before this Court, Chesley seeks to rebut arguments by Abbott that the respondents have been procedurally blocked in Ohio from executing the circuit court orders to collect the disbursements from the trust to satisfy the judgment against Chesley.

The Court is unpersuaded that this exhibit should be added to the record. Chesley cites no case law or statute to support his arguments and fails to demonstrate how the addition of this item is helpful to the Court in evaluating the request for interlocutory relief and the question of the intent and effect of the Boone Circuit Court's orders. This exhibit is not relevant to the matter at hand. For this reason, the Court denies movant's request to supplement the record.

The final motion before the Court is Chesley's request to file, under seal, another exhibit with the Court, pursuant to CR 7.03. Movant seeks to file the "*Plaintiffs' Motion to Transfer Beneficial Interest in Property Held in Trust,*

---

[9] The Court notes that it appears Angela Ford is represented by private counsel in the Court of Common Pleas, while in Kentucky, before both the Boone Circuit Court and this Court, she serves as counsel for Abbott. In the lower court action, the Boone Circuit Court has identified Angela Ford as being responsible for collecting funds owed by Chesley to Abbott and other respondents.

- 9 -

*Memorandum of Law in Support and Attached Exhibits*", a document that was originally filed in the lower court action in Boone Circuit Court Case No. 05-CI-436. The lower court approved, by order dated January 30, 2015, an agreed protective order by the parties to place the "motion to transfer" and its accompanying documents under seal. Chesley argues that as the "motion to transfer" documents remain subject to the circuit court's protective order, this Court should grant the request for protection from public view.

The Court has reviewed the documents proposed to be placed under seal and its contents. The Court prefers to err in the favor of openness, public disclosure and access to documents in judicial actions. As noted in *Roman Catholic Diocese v. Noble*, 92 S.W.3d 724 (Ky. 2002), "… [J]udicial documents are presumptively available to the public, but may be sealed if the right to access is outweighed by the interests favoring non-disclosure." *Id.* at 731. In reviewing the documents for which Chesley seeks protection, the Court did not identify any of the privacy data generally subject to protection under CR 7.03(1) and finds no cause to support protection of the documents under CR 7.03(4). Chesley has not identified a reason so compelling as to support this Court finding that the requested documents be hidden from public view. This Court is not beholden to the decision of the circuit court as to its acceptance of the parties' agreed protective order. Chesley's motion on this issue is denied.

CONCLUSION

For the foregoing reasons, the Court ORDERS that the motion for interlocutory relief be, and hereby is DENIED.  The motion to supplement the record with an additional exhibit is DENIED.  The motion to file an exhibit under seal is DENIED.

ENTERED: _____OCT 0 7 2015_____

_____
JUDGE, COURT OF APPEALS

TO BE PUBLISHED

# Supreme Court of Kentucky

2015-SC-000599-I

STANLEY M. CHESLEY                                      MOVANT

ON REVIEW FROM COURT OF APPEALS
V.            CASE NO. 2015-CA-001066-I
BOONE CIRCUIT COURT NO. 05-CI-00436

MILDRED ABBOTT, ET AL.                          RESPONDENTS

## OPINION AND ORDER

## DENYING INTERLOCUTORY RELIEF

Stanley M. Chesley, pursuant to Kentucky Rule of Civil Procedure (CR) 65.09, moves this Court to vacate or modify the October 7, 2015, order entered by the Court of Appeals, which denied Chesley's Motion for Interlocutory Relief under CR 65.07. As the order entered by the Boone Circuit Court was not an injunction, temporary or otherwise, it is not properly the subject of an interlocutory relief motion. Therefore, we affirm the judgment of the Court of Appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

In the mid-1990s, the popular weight-loss drug fen-phen was removed from the market after being linked to heart damage and other dangerous side-effects. In 1998, attorneys Shirley A. Cunningham, Jr., William J. Gallion, and Melbourne Mills, Jr., filed a prospective class action lawsuit against the

manufacturer of fen-phen, American Home Products (American Home) on behalf of Kentucky plaintiffs who alleged injuries caused by their use of the drug. While the three attorneys operated separate law practices, they pooled their resources in a collective effort to pursue the case. The case they filed, *Darla S. Guard, et al. v. American Home Products, Inc , et al.*, Boone Circuit Court Case No. 98-CI-795 (*Guard*) was certified as a class action in May 1999.

While the Kentucky litigation was pending, American Home was also the defendant in a multi-district class-action lawsuit in Pennsylvania. That federal litigation resulted in a nationwide class-action settlement in August 2000. However, on the advice of counsel, the Kentucky plaintiffs opted out of the nationwide settlement to pursue their claims in state court. Subsequently, Chesley, who had been involved in the national settlement, initiated a fen-phen lawsuit on behalf of a few clients in Boone Circuit Court. Despite their initial opposition, Cunningham, Gallion, and Mills eventually agreed to consolidate Chesley's case with the *Guard* case. This was agreed to by the *Guard* attorneys due to Chesley's national reputation and his experience in the national fen-phen settlement.

With the claims merged, the attorneys entered into an arrangement outlining the role each attorney would perform in the litigation. It was agreed that Gallion would serve as lead trial counsel, Cunningham and Mills would enroll clients and maintain client contact information, and Chesley would serve as lead negotiator in the effort to secure a settlement with American Home. Additionally, if Chesley succeeded in reaching a settlement with American

2

Home, he would receive a share – initially 27 percent, but later reduced to 21 percent – of the attorney fees owed to Cunningham, Gallion, and Mills under their respective retainer agreements.

On May 1, 2001, a settlement was reached with American Home. The settlement agreement required the decertification of the *Guard* case as a class action and the dismissal of all individual claims. In exchange for this, American Home agreed to pay the aggregate sum of $200 million which was to be disbursed to the 431 clients for whom Mills, Cunningham, and Gallion had fee contracts. The claims of the 143 other individuals who had joined the class action, but who had not personally retained any of the class attorneys, were to be dismissed without prejudice. Additionally, American Home left it to Mills, Cunningham, and Gallion to determine how much of the $200 million fund would be allocated to each client.

Contrary to the terms of the settlement agreement, Mills, Cunningham, and Gallion failed to inform their clients about the total settlement amount. Nor were the clients made aware of the provision that American Home could terminate the settlement if less than 95% of the claimants accepted the settlement agreement by September 1, 2001. While Mills, Cunningham, and Gallion obtained the necessary releases, they did so by failing to reveal essential information and making misleading statements to their clients.

After the class action was decertified by the circuit court, the *Guard* attorneys distributed approximately $73 million to their clients. A further $20 million was diverted to the creation of the Kentucky Fund for Healthy Living

3

(KFHL). The balance of the money, approximately $106 million, was divided among the attorneys for the class.

A subsequent investigation by the Kentucky Bar Association (KBA) uncovered the excessive payments to the *Guard* attorneys. After the investigation became public, the Respondents filed a law suit requesting an accounting of the settlement money, disgorgement of misappropriated funds, and a judgment against the class attorneys for monies paid in excess of the contingent fee contracts.

The circuit court granted partial summary judgment to the Respondents after determining that Cunningham, Gallion, and Mills had breached their fiduciary duty by violating their contingent fee agreements. On the issue of compensatory damages for the breach of fiduciary duty, the trial court concluded that Cunningham, Gallion, and Mills owed their clients approximately $42 million. Additionally, Cunningham, Gallion, and Mills were adjudged to be jointly and severally liable. As to Chesley, the circuit court concluded that genuine issues of material fact remained regarding his liability and denied the motion for summary judgment against him.

On appeal to the Court of Appeals, Cunningham, Gallion, and Mills challenged the summary judgment determination on the breach of fiduciary duty claim and the assessment of joint and several liability. The Court of Appeals reversed the circuit court's award of summary judgment determining that genuine issues of material fact remained unresolved. The denial of

4

summary judgment against Chesley was deemed not appealable and accordingly was not reviewed by the Court of Appeals.

Subsequently, this Court granted discretionary review. In *Abbott v. Chesley*, 413 S.W.3d 589 (Ky. 2013), we determined that the circuit court properly entered summary judgment against Cunningham, Gallion, and Mills on the breach of fiduciary duty claim  Further, we agreed with the circuit court that Cunningham, Gallion, and Mills are subject to joint and several liability. As to the summary judgment determination against Chesley, we agreed with the Court of Appeals that the circuit court's order denying summary judgment was not appealable.  The case was then remanded to the circuit court.

In August 2014, the circuit court granted the Respondents' motion for summary judgment against Chesley.[1]  The circuit court concluded that summary judgment was appropriate on the Respondents' breach of fiduciary duty claims through the doctrine of issue preclusion or collateral estoppel.  In reaching its decision, the circuit court reasoned that Chesley had a full and fair opportunity to present his case with respect to these claims during the proceedings in *Kentucky Bar Ass'n v. Chesley*, 393 S.W.3d 584 (Ky. 2013). Finding that no genuine issues of material fact existed, the circuit court determined that Chesley was jointly and severally liable with Cunningham, Gallion, and Mills to the Respondents for $42 million.  Subsequently, Chesley

---

[1] The circuit court later entered two amended orders dated September 19, 2014, and October 22, 2015, which modified the wording of the order as to the calculation date for and the collection of annual interest. Additionally, both amended orders noted that "[t]his Order is Final and Appealable.  There is no just cause for delay."

appealed the circuit court's judgment and rulings, but did not post a supersedeas bond to guarantee enforcement of the judgment would be tolled during his appeal.[2]

Due to his actions during the *Guard* settlement, Chesley was permanently disbarred from the practice of law in Kentucky.[3]  Afterwards, Chesley retired from the practice of law in Ohio.  Chesley's former law firm, Waite, Schneider, Bayless, & Chesley Co., L.P.A. (WSBC) is an Ohio legal professional association formed under Chapter 1785 of the Ohio Revised Code. Under Section 1785.05, a professional organization may only issue its capital stock to those individuals legally authorized to render the same professional service for which that association was organized.  With Chesley's retirement from the practice of law, he was no longer permitted to be a shareholder of WSBC.[4]

As such, Chesley transferred his ownership interest in WSBC to his Ohio lawyer, Thomas Rehme, to be held in trust during the winding up period of WSBC.  Both prior to and after Chesley's Kentucky disbarment and his

---

[2] Chesley's appeals of the circuit court's judgment and rulings are each styled as *Chesley v. Abbott*, 2014-CA-001725, 2014-CA-001900, and 2014-CA-001984, and are currently pending before the Court of Appeals.

[3] *Chesley*, 393 S.W.3d at 602.  Additionally, due to their improper use of the *Guard* case settlement fund Cunningham, Gallion, and Mills were also permanently disbarred from the practice of law in Kentucky.  *See Cunningham v. Kentucky Bar Ass'n*, 266 S.W.3d 808 (Ky. 2008); *Gallion v. Kentucky Bar Ass'n*, 266 S.W.3d 802 (Ky. 2008); and *Kentucky Bar Ass'n v. Mills*, 318 S.W.3d 89 (Ky. 2010).  Further, an associate of Gallion and the circuit court judge who presided over the *Guard* settlement were disbarred for their actions in the case.  *See Kentucky Bar Ass'n v. Helmers*, 353 S.W.3d 599 (Ky. 2011) and *Kentucky Bar Ass'n v. Bamberger*, 354 S.W.3d 576 (Ky. 2011).

[4] It is noteworthy that Chesley was the sole shareholder of WSBC.

6

retirement from the Ohio bar, he transferred a total of $59 million from his personal accounts to WSBC.

On June 9, 2015, the circuit court conducted a hearing on Respondents' motion to transfer Chesley's beneficial interest in the trust to satisfy the $42 million judgment. The circuit court acknowledged that it had personal jurisdiction over Chesley and that there had been a valid judgment entered against him. As such, the circuit court viewed the Respondents' motion as legitimate effort to secure the circuit court's assistance in collecting an outstanding judgment. Accordingly, the circuit court ordered Chesley on June 23, 2015, to direct Rehme to make all payments derived from Chesley's holdings in the shares of WSBC payable to the Respondents through their counsel.

In response, Chesley requested relief from the Court of Appeals under CR 65.07. The Court of Appeals denied the motion, and his appeal to this Court followed.

## ANALYSIS

CR 65.01 authorizes a party to request injunctive relief from the circuit court in the form of a restraining order, temporary injunction, or permanent injunction in a final judgment. When the circuit court by interlocutory order has denied, dissolved, modified, or granted a temporary injunction, the adversely affected party is able to seek relief from the Court of Appeals pursuant to CR 65.07. After an adverse decision in that court, a party may move this Court pursuant to CR 65.09 to review the judgment of the Court of

7

Appeals.  However, the decision as to whether or not to review the order of the Court of Appeals is discretionary with the Court.  CR 65.09.

While discretionary, the Court's review is "limited to those cases which demonstrate extraordinary cause." *Nat'l Collegiate Athletic Ass'n v. Lasege*, 53 S.W.3d 77, 84 (Ky. 2001); CR 65.09 ("Such a motion will be entertained only for extraordinary cause shown in the motion.").  Demonstrating extraordinary cause is not an easy task – in fact we have recognized that the movant faces an "enormous burden" when requesting relief pursuant to CR 65.09.  *Courier-Journal, Inc. v. Lawson*, 307 S.W.3d 617, 620 (2010) (quoting *Kindred Hosps. Ltd. P'ship v. Lutrell*, 190 S.W.3d 916, 919 (Ky. 2006)).  However, an abuse of discretion by the courts below can constitute extraordinary cause.  *Lasege*, 53 S.W.3d at 84.

Chesley contends that the Court of Appeals and the circuit court committed an abuse of discretion.  With regard to the circuit court, Chesley claims that it exceeded its authority by ordering Chesley to transfer funds being held in a foreign jurisdiction.  Additionally, Chesley argues that the judgment of the Court of Appeals deprived him of his right to appellate review from the circuit court's order, which he labels a "mandatory injunction."  However, in reviewing Chesley's motion, we conclude that his request for relief under CR 65.09 is procedurally improper.

As a prerequisite for obtaining interlocutory relief from an order of the circuit court under CR 65.07 or CR 65 09, the order at issue must be an injunction.  Chesley argues that the circuit court's June 23, 2015, order

8

granted mandatory injunctive relief and was entered prior to the adjudication of all outstanding claims. As such, Chesley concludes that the order was a temporary injunction and subject to appellate review under CR 65.07 and CR 65.09.[5] However, Chesley is mistaken in his characterization of the circuit court's June 23, 2015 order.

On August 1, 2014, the circuit court granted summary judgment against Chesley for Respondents' breach of fiduciary duty claims. In the final amended version of the order, entered October 22, 2014, Chesley was also held to be jointly and severally liable with Cunningham, Gallion, and Mills for the existing judgment amount of $42 million. Additionally, the October 22, 2014, order expressly noted that it was a final and appealable order. Subsequently, Chesley filed a motion for the circuit court to reconsider its order and a motion to vacate the judgment pursuant to CR 60.02. Both motions were denied. Afterwards, Chesley appealed the circuit court's summary judgment order to the Court of Appeals.

However, Chesley declined to post a supersedeas bond to stay enforcement of the judgment pending his appeal. Subsequently, the circuit court entered its June 23, 2015, order requiring Chesley to transfer his beneficial interest in his Ohio trust to the Respondents to satisfy the $42

---

[5] In support of his argument, Chesley directs the Court to review *Bahar v. Lyon Fin. Servs. Inc.*, 330 S.W.3d 379, 386 (Tex. Ct. App. 2010). In *Bahar*, the Court of Appeals of Texas, concluded that a turnover order issued pursuant to a default judgment in a foreign jurisdiction, acted as a mandatory injunction against the judgment debtor. *Id.* However, that determination was rooted in an analysis of Texas's turnover statute. *Bahar*, is not dispositive in the case at bar. Rather, the outcome of this case is governed by the application of the Kentucky Rules of Civil Procedure.

million judgment. Chesley maintains that the circuit court's order is a temporary injunction as it occurred prior to a final judgment adjudicating all the claims against him.

A temporary injunction generally functions to hold the status quo until the merits of an action can be decided. *Curry v. Farmers Livestock Mkt.*, 343 S.W.2d 134, 135 (Ky. 1961). Although the circuit court may grant a temporary injunction, it is only empowered to do so during the pendency of the action. *Price v. Paintsville Tourism Comm'n*, 261 S.W.3d 482, 484 (Ky. 2008) While all the claims against Chesley have yet to be resolved, the circuit court has entered a final judgment on the breach of fiduciary duty claims.

Under CR 54.02, where a case involves multiple claims, the circuit court is permitted to "grant a final judgment as to fewer than all the claims, and hence to make possible an immediate appeal, upon a determination that there is no just reason for delay." *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 549 (Ky. 2011) (citing *Watson v. Best Fin. Servs., Inc.* 245 S.W.3d 722 (Ky. 2008)). "Where the judgment truly disposes of a distinct and separable aspect of the litigation, the trial court's determination that there is no just reason for delay will only be disturbed if that discretion was abused." *Id.*

In the case at bar, the circuit court under CR 54.02 entered a final judgment on Respondents' breach of fiduciary duty claims. The circuit court was empowered to enter a valid final judgment on the breach of fiduciary duty claims despite the fact that there were other collateral claims outstanding. The circuit court's order did not concern those issues and they remain to be

10

adjudicated.  Rather, the circuit court by entering a final judgment under CR 54.02, permitted the judgment on the central issue to be appealed to avoid unnecessary delay.  As such, there was a final judgment regarding the breach of fiduciary duty claims upon the entry of the circuit court's October 22, 2014, order.

The entry of a final judgment on the breach of fiduciary duty claims is critical in evaluating the character of the circuit court's subsequent June 23, 2015, order.  That order, which required Chesley to comply with an unpaid judgment, did not occur during the pendency of the case and therefore cannot be viewed as being a temporary injunction.  The circuit court's order did not seek to maintain the status quo until there was an adjudication of the breach of fiduciary duty claims (or any other claims), rather it was entered to give force to that nearly one year-old judgment, a judgment for which Chesley had not sought a stay by filing a supersedeas bond pursuant to CR 62.03.  Instead of being an injunction, the June 23, 2015, order was a post-judgment order in furtherance of Respondents' efforts to collect on the outstanding judgment against Chesley   As the order was not an injunction, we agree with the Court of Appeals that the circuit court's June 23, 2015, order is not subject to review under CR 65.07.  Accordingly, Chesley is not entitled to relief under CR 65.09.

Due to this determination, Chesley's claims that the circuit court exceeded the scope of its jurisdiction in ordering him to transfer his interest in the Ohio trust to the Respondents are not properly before this Court.  Whether the circuit court has the authority, under Kentucky Revised Statute (KRS)

11

426.384, to compel a defendant to transfer property held in a foreign jurisdiction in payment of a judgment is an issue that has yet to be addressed by Kentucky's appellate courts. However, as that issue is not properly before the Court on this CR 65.09 motion, we decline to address it.

As the Boone Circuit Court's order was not an injunction, it is not subject to interlocutory relief. Therefore, Chesley's motion for interlocutory relief pursuant to CR 65.09 from the order of the Court of Appeals is DENIED.

All sitting. All concur.

ENTERED: June 16, 2016.

CHIEF JUSTICE

EXHIBIT

E

Blumberg No 5118

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

*   *   *

CONNIE MCGIRR, et al.,

    Plaintiffs,

        vs.               CASE NO. 1:16-cv-464

THOMAS F. REHME, et al.,       VOLUME I

    Defendants.

*   *   *

    Deposition of STEVE HORNER, CPA, Witness

herein, called by the Plaintiffs for

cross-examination pursuant to the Rules of Civil

Procedure, taken before me, Vicky L. Marcon, a

Notary Public within and for the State of Ohio, at

the offices of Dinsmore, 255 East Fifth Street,

Suite 1900, Cincinnati, Ohio, on Tuesday, May 24,

2016, at 10:05 a.m.

*   *   *

1    maintenance and upkeep of that?

2         A.   Yes.

3         Q.   And Dickens and Crumpet is owned

4    by either Stan or his wife?

5         A.   Was owned by Stan.

6         Q.   All right.  And so the sale of

7    that condo recently, the amount realized from

8    the sale went to Dickens and Crumpet, which is

9    wholly owned by Stan?

10        A.   Yes.

11        Q.   All right.  And Stan's not

12    reimbursed the firm for all of those mortgage

13    payments its made for all of those years?

14        A.   No.

15        Q.   Okay.  Other than the Dickens and

16    Crumpet debt, which we, I believe we've

17    extinguished through the sale of that condo,

18    what other debt does the firm have in 2016?

19             MR. RAFFERTY:  Currently?  Are you --

20             MR. SULLIVAN:  Yeah.

21             THE WITNESS:  Current debt?  Not

22    accounts payable, debt?

23        Q.   Debt.

24        A.   None.

25        Q.   The Fifth Third debt, you're

EXHIBIT

F

Blumberg No 5118

Page 1

COURT OF COMMON PLEAS

HAMILTON COUNTY, OHIO

* * *


MILDRED ABBOTT, et al.,

Plaintiffs,


vs.                    CASE NO.  M151179

STANLEY M. CHESLEY, et al.,

Defendants.

* * *



Deposition of THOMAS F. REHME,

ESQ., a witness herein, called by the

plaintiffs for examination pursuant to the

Rules of Civil Procedure, taken before me,

Patti Stachler, RMR, CRR, CLR, CME, a Notary

Public within and for the State of Ohio, at the

Offices of Dinsmore & Shohl, LLP, 255 East

Fifth Street, Suite 1900, Cincinnati, Ohio, on

March 15, 2016, at 10:30 a.m.

* * *

Page 63

1    1800s.  It had a different name.  And there's

2    plenty of stuff to go over, I'll tell you.  And

3    I'm trying to go over some of it.

4         Q.   All right.  And as -- you would

5    agree that one of your obligations in winding

6    up the affairs is to make sure all the debts

7    and obligations are paid?

8         A.   Right.

9         Q.   And I'm trying to figure out what

10   those are.  But other than lease, you're not

11   able to tell me any other obligation that's

12   part of the wind up of the affairs of the law

13   firm?

14        A.   No, I can't.

15        Q.   Okay.

16             MR. RAFFERTY:  You're talking about

17   as we sit here today?

18             MR. SULLIVAN:  Yeah.

19             MR. RAFFERTY:  Right?

20             MR. SULLIVAN:  Yeah.

21             Okay.  Tom, I'm going to take a break

22   for a second.  I'm going to look at these

23   documents.  Okay?

24             THE WITNESS:  Good luck.

25             (Recess taken from 11:32 to 11:57.)