IN THE UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| In re: )<br><br>SKELAXIN (METAXALONE) )<br>ANTITRUST LITIGATION )<br><br>This Document Relates To: )<br><br>All Direct Purchaser Actions ) | Case No. 2:12-cv-83-CLC-WBC<br><br>MDL No. 2343 |

## AFFIDAVIT OF RONALD J. BERKE, ESQ.

I, Ronald J. Berke, being first duly sworn, make the following statements. In the event I

were to testify in this matter, my testimony would include the following:

1.     I am a partner in Berke, Berke & Berke, a law firm founded in Chattanooga,

Tennessee by my father Harry Berke in 1934.  I am a citizen and resident of Tennessee and duly

licensed to practice law in the State of Tennessee.  I began my law career nearly 44 years ago

after I received my J.D. from Vanderbilt University in 1970.  I am admitted to practice at all

levels of the Courts of Tennessee and the 6th Circuit.  I am mainly a litigator and as such I have

regularly been asked to be a guest lecturer at organizations such as the American Association for

Justice, the Southern Trial Lawyers Association, Tennessee Association for Justice and other

legal groups in various states.  I have also co-written a chapter in the Thompson West

publication Litigating Tort Cases.

2.     I have been awarded the Tennessee Supreme Court Service Award, the Bancroft-

Whitney Publishing Company American Jurisprudence Award and am listed in the National

Registry of Who's Who. I have been selected as a Mid-South Super Lawyer for the last six years.

I am a former chair of the Tennessee Judicial Selection Committee, Vice Chair of Tennessee

1

Commission of Continuing Legal Education, and was Vice Chair of the Association of Trial Lawyers of America State Delegates and am the past president of the Chattanooga Trial Lawyers, the Tennessee Association for Justice and the Melvin Belli Society. I have served on the Board of Governors of the American Trial Lawyers Association and American Association of Justice after the name change of American Trial Lawyers Association for many years. I am a member of both the Million Dollar and the Multi-Million Dollar Advocates Forum.

3.     I was requested by Plaintiff's counsel to review pleadings and numerous other materials in the above-captioned matter. In that regard, I was asked to render an opinion regarding attorneys' fees and expenses in this case.

4.     In reaching my opinion described herein, I have reviewed numerous documents including voluminous pleadings, declarations, stipulation of settlement, expert witness reports, legal memorandums, orders and the independent auditor's report on counsel's time and expense submissions. It is my opinion that I have been provided all information that I need in order to render an opinion in this matter. I base my opinion on my review of these materials as well as decades of litigation experience in this area as well as throughout the country. I have a general familiarity with rates customarily charged by lawyers in Tennessee, especially East Tennessee, including those charged by the lawyers in complex class-action litigation, such as this case. I am also familiar with fee awards in complex class actions litigated in this area as well as in other venues around the country. I am also familiar with higher national rates charged by and awarded to attorneys with national practices in these types of complex cases.

5.     In my opinion, the fees and expenses sought by class counsel are fair and reasonable and in-line with both Sixth Circuit law and other fee awards previously issued in this area.

6.     Importantly, this case, premised on complex patent and antitrust law, requiring sophisticated and expert legal analysis, is the type of litigation undertaken by firms who operate at a national, not local, level, and any analysis of the reasonableness of their rates and fee request should be made accordingly. This opinion is fully consistent with Sixth Circuit case law, including *Graceland Fruit, Inc. v. KIC Chemcials, Inc.*, 320 F. App'x 323, 329-330 (6th Cir. 2008) and *Brian v. Hattaway,* 83 Fed.Appx. 692, 694 (6th Cir. 2003).  I also note that the defendants hired Kaye Scholer LLP out of New York and Munger, Tolles & Olson LLP out of Los Angeles to defend themselves in this action.  I have no doubt that these well respected firms charged rates appropriate for Los Angeles and New York.

7.     Class counsel charged hourly rates that in both my experience and in a review of the case law in this type of drug antitrust case, are reasonable and even routine.

8.     I am advised the fee request in this case is one-third of the settlement total of $73 million.  As stated, in my opinion, this fee award is more than reasonable and is certainly in line with other fee awards in similar pharmaceutical, antitrust class actions.  This is also in line with complex class actions litigated in this area.

9.     The Tennessee Supreme Court Rule 8, § 1.5 directs that lawyer's fees be reasonable. The rule is the same in the Sixth Circuit and federal courts.  In my view, the factors enumerated by these rules should be considered, in part, as a basis for determining reasonableness of the fees sought in this matter.

10.     I have great familiarity with this type of complex litigation.  This litigation was lengthy, complex and involved extensive factual investigation, legal research and discovery and voluminous review and analysis of documents. Further, it is my view that the counsel for Plaintiffs worked diligently, and by virtue of all facts and circumstance including the risks

3

involved in cases of this sort, they deserve to be paid over and above that which they would be paid strictly on an hourly basis. It is further my view that our society benefits from lawyers who are willing to take the risk taken by these lawyers - on a fully contingent basis - in pursuit of long and protracted litigation which is as demanding as this, and they should be compensated fully, completely and fairly in light of the substantial benefits achieved.

11.     Also, it appears from the materials that I have reviewed that the expenses claimed herein are eminently reasonable, considering the length of the litigation, the complex nature of the work undertaken and the benefits obtained for the class.

12.     Also, I believe that the hours expended by class counsel in this case, both totally and by category of work undertaken and performed, appear reasonable. I base my opinion on, among other things, my review of the materials provided to me, which included the report of the independent auditor hired to review class counsel's time reports and submissions. In my opinion, based on the facts of this case class counsel had an obligation to proceed as though the case were likely to go to trial. The record reflects that this is what class counsel did, and the hours listed to accomplish this are, in my view, reasonable under the circumstances.

13.     In conclusion, the results obtained, the substantial benefits achieved for the class, the statute, experience and reputation of the lawyers, and the other matters in which they were unable to accept representation because of the their responsibilities to this case, cause me to conclude that the fees and expenses being requested is fair, reasonable and well within the range of fees and expenses customarily awarded in this area for matters of this nature by lawyers with experience and expertise such as those who handled this matter.

4

Dated: May 28, 2014.

Ronald J. Berke, Esq.

STATE OF TENNESSEE       )
COUNTY OF HAMILTON       )

    Personally appeared before me, Phyllis D. Maples, a Notary Public and for said County and State, the within name Ronald J. Berke, with whom I am personally acquainted, and who acknowledged that he executed the within instrument for the purposes therein contained.

    Witness my hand and official seal at Chattanooga, Tennessee this the 28 day of May, 2014.

Notary Public

My commission expires: 2/22/17

5

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TENNESSEE

AT CHATTANOOGA

| | |
|---|---|
| In Re:<br><br>SKELAXIN (METAXALONE)<br>ANTITRUST LITIGATION | Lead Case No.  2:12-cv-83<br><br>MDL No. 2343<br><br>Judge Curtis L. Collier |
| This Document Relates To:<br><br>ALL DIRECT PURCHASER<br>CLASS ACTIONS | |

## DECLARATION OF PROFESSOR DEAN HILL RIVKIN

Professor Dean Hill Rivkin declares, pursuant to 28 U.S.C. § 1746, as follows:

### INTRODUCTION

1.      I am College of Law Distinguished Professor at the University of Tennessee (UT) College of Law in Knoxville, Tennessee.  I have been a member of the College of Law faculty since 1976.

2.      I graduated from Hamilton College in Clinton, New York, in 1968 and received my J.D. from Vanderbilt Law School in 1971.  Following my graduation, I served as a law clerk

to the U.S. Court of Appeals for the Second Circuit.  Following my clerkship, I practiced law in Lexington, Kentucky, as a Reginald Heber Smith Community Lawyer Fellow with Appalachian Research and Defense Fund of Kentucky, where I concentrated on complex environmental and federal litigation.  Following a year as a Teaching Fellow at Harvard Law School, I joined the faculty of the UT College of Law.  I am currently licensed to practice law in Tennessee and in the U.S. District Court for the Eastern District of Tennessee, the U.S. Court of Appeals for the Sixth Circuit, and the U.S. Supreme Court.

3.    As a litigator, and since my appointment to the faculty of the UT College of Law in 1976, I have engaged in a number of complex federal cases.  For example, as my attached resume shows, I have been lead and co-counsel for three cases in the U.S. Supreme Court.  I have also been lead counsel in several lengthy federal cases involving complex environmental issues; in several federal and state class action cases involving unconstitutional conditions of confinement in local jails; in state class action cases on behalf of at-risk students in public schools; and in a number of complex federal cases under the Individuals with Disabilities Education Act (IDEA).  Further, I have represented clients in numerous federal and state court matters that arose out of courses in the UT Legal Clinic, where I served as Director from 1988-1992.  Finally, I teach a course in Public Interest Law and Lawyering, which includes instruction in statutory fee petitions and accompanying case law.

4.    As a law professor, I have made presentations at numerous programs over my thirty-eight years in legal education.  These presentations have included:  papers delivered at national and international conferences on clinical legal education; papers and talks at American

Bar Association (ABA) and Association of American Law Schools (AALS) conferences; and papers and talks at many law schools on issues in clinical legal education, public interest law and lawyering, and other topics.

5.      As a member of the academic legal profession, I have chaired and been a member of approximately twenty ABA and AALS accreditation teams.  Also, from 1999-2002, I served as Director of the national AALS Equal Justice Project.  From 2009-2012, I served as a member of the national AALS Membership Review Committee – an accreditation body.  I have also served as a visiting professor at multiple law schools, including:  the University of California Los Angeles Law School (Fall 1980); the University of Maryland School of Law (1990-1991); Harvard Law School (2002-2003 and 2004-2005); and the American University Washington College of Law (Fall 2008).  During 2004, I lectured on environmental law at four universities in the People's Republic of China.

6.      Throughout my legal career, I have frequently been engaged by lawyers to assist them in navigating the process of filing statutory fee petitions in connection with their successful federal litigation.  These engagements have involved reviews of litigation files, with a view toward determining whether the requested fee was reasonable under the applicable fee statute and case law standards.  Further, I seek to stay up-to-date on the law of attorneys' fees – especially in the U.S. Court of Appeals for the Sixth Circuit and the U.S. Supreme Court.  Finally, in federal and state cases that I have successfully litigated, I have filed my own statutory fee petitions.

7.    My attached resume lists my significant legal publications, professional presentations and activities, and litigation.  In this matter, I am being compensated at my customary hourly rate for my professional services.


### SUMMARY OF ENGAGEMENT IN THIS CASE

8.    I submit this Declaration in support of Class Counsel's Motion for Award of Attorney Fees and Reimbursement of Expenses in this action.  In this Declaration, I consider whether Class Counsel's requested fee award is fair, appropriate, and reasonable under applicable rules, case law, and the specific facts and circumstances of this case.  To prepare myself, I have read recent scholarly articles and relevant chapters of class action practice manuals on the subject of attorneys' fees in antitrust and related complex class action litigation.

9.    In overview, the benefits of this Settlement are vividly evident.  Class Counsel have obtained a $73 million settlement on behalf of a class consisting of approximately forty-eight Class members.  Many of these Class members, all sophisticated business entities, will receive sizeable sums of money from this Settlement.  Further, it is my understanding that the named Class representatives either support Class Counsel's fee request or, at a minimum, do not oppose this application.  Opposition, or an absence of opposition, by the Class members is one of several important factors in judging the reasonableness of the fee award requested.

10.     Another important factor in judging the reasonableness of this fee request is the risk assumed by Class Counsel in initiating and maintaining this litigation.  At the time the Plaintiffs commenced this action, the level of risk assumed by Class Counsel was high.  Unlike in other antitrust cases, no prior finding of fraud on the Patent Office by King Pharmaceuticals LLC and Mutual Pharmaceutical Company, Inc. ("Defendants") was made here, nor had a criminal investigation, let alone a prosecution, by the U.S. Department of Justice (DOJ) ever been conducted.  These facts are significant because many private civil antitrust cases "piggy-back" on the heels of DOJ criminal investigations and indictments.  Under the federal antitrust laws, a guilty plea is *prima facie* evidence of liability.  Similarly, many other private antitrust cases are filed following Federal Trade Commission investigations and lawsuits.  None of these circumstances, however, apply here.  Instead, with the expert assistance of Class Counsel, these Plaintiffs built this case on their own – literally, from the ground up.

11.     The $73 million settlement that was reached provides for an immediate economic recovery to the Class.  On any measure, this settlement is a sizeable recovery and obviates the uncertainties and costs associated with further litigation, for which Class Counsel prepared, and were prepared to pursue, had the case not settled.

12.     Based on my personal experience in complex litigation, the bulk of the existing legal research and writing on the subject, and the empirical evidence collected by various scholars, it is abundantly clear that, on its face, the excellent result for the Class, in this case, is the product of sophisticated, arduous, and strategic lawyering.  This conclusion is bolstered by the continuing denial by the Defendants of any culpability or liability, the

stern defense of this case by major New York and California law firms, and the tangibly high risks associated with the prospect of continued litigation.

13. Based on these and other considerations and the case law that I review below, I conclude that a proposed fee award of one-third (33.33% of $73 million) is fair, appropriate, reasonable, and justified.

14. In reaching this conclusion, I am nonetheless aware that, in some class action litigation, public concern over the size of attorneys' fees has been voiced.  Although understandable, these general concerns must be measured against the applicable standards developed by the courts for fee awards in class action cases, the particular facts and circumstances of each case, and the available precedent in analogous litigation.  In my view, any such hypothetical objections are unwarranted in this litigation, where the Class members are receiving significant, concrete, monetary benefits (rather than coupons, merchandise, or various other forms of relief of uncertain value).  As shown by the literature recounted below, which sets forth the results of similar cases and the prevailing case law in this jurisdiction, any general concerns over whether Class Counsel's fee application is excessive are without proper foundation.

15. In assessing the reasonableness of the attorneys' fees request in this case, I have reviewed the following materials related to this litigation:

- The Civil Docket for this litigation;

- Several direct purchaser client retainer agreements;

- The Consolidated Direct Purchaser Class Action Complaint and Jury Demand;

- The Defendants' Motion to Dismiss Plaintiffs' Complaints – including:

    - the Defendants' Memorandum and Reply Memorandum in Support

    - related Exhibits;

- The Plaintiffs' Consolidated Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiffs' Complaints;

- The Court's May 20, 2013, Memorandum denying the Defendants' Motion to Dismiss;

- The Settlement Agreement and ancillary documents – including:

    - the Class Notices

    - the Memorandum in Support of the Settlement;

- The Declaration of Professor Meredith Rosenthal, Ph.D..; and

- Class Counsels' Motion for Award of Attorney Fees and Expenses – including:

    - the Memorandum in Support of this Motion

    - the supporting Declarations of Thomas M. Sobol, Esq. and Ronald J. Berke, Esq.

    - Billing records for lead Plaintiffs' attorneys.


### OPINIONS AND CONCLUSIONS:
### SUPPORT FOR THE PERCENTAGE-OF-THE-FUND METHOD
### IN THIS LITIGATION

16.     In this case, several pivotal factors support the application of the percentage-of-the-fund method for determining reasonable attorneys' fees.   As a threshold matter, and as previously stated, all the Class members described in the Complaint will obtain

immediate and substantial relief under the sizeable settlement.  This settlement is an impressive result, especially in light of the difficulties inherent in litigating complex cases such as this.

17.   In evaluating counsel's efforts, the result obtained for the class has been identified in the scholarly literature and in case law as a signally significant factor in judging whether counsel's fee request is reasonable.  This view has been voiced by numerous courts and commentators.  *See, e.g.*, Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements:  An Empirical Study*, 1 J. EMPIRICAL LEGAL STUD. 27 (2004) (Study of two comprehensive class action case data sets – covering 1993-2002 – demonstrates that the amount of client recovery is overwhelmingly the most important determinant of the attorney fee award.); *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188 (6th Cir. 1974), *cert. denied,* 442 U.S. 1048 (1975); *Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768 (11th Cir. 1991).  *See generally,* David F. Herr, ANNOTATED MANUAL FOR COMPLEX LITIGATION FOURTH, 564-75 (2012); Fed. Judicial Ctr., MANUAL FOR COMPLEX LITIGATION FOURTH § 14.121, at 193 (2004); H. Newberg, ATTORNEY FEE AWARDS, § 201 (1986).  All of these considerations are a good index of the quality of counsel's work and the effectiveness of the representation provided to the class.

18.   In addition to the above sources, I am also acquainted with the Report, recommendations, and deliberations of the classic Third Circuit Task Force on court-awarded attorneys' fees.  *See* Third Circuit Task Force, *Court Awarded Attorney Fees* (1985), *reprinted in*

108 F.R.D. 237, 254-59 (1985).1  The Task Force was appointed by former Chief Judge Aldisert, of the U.S. Court of Appeals for the Third Circuit, and was composed of prominent jurists and distinguished practitioners.   The Task Force's charge was as follows:

> [T]he development of recommendations to provide fair and reasonable compensation for attorneys in those matters in which fee awards are provided by federal statute or by the fund-in-court doctrine; to discourage abuses and delays in the fee-setting process; to encourage early settlement or determination of cases; to provide predictability; to carry out the purposes underlying court-awarded compensation; to simplify the process by reducing the burdens it currently imposes on the courts and on litigants; and to arrive at fee awards that are fair and equitable to the parties and that take into account the economic realities of the practice of law.

*Id*. at 238.

19.     The Task Force expressly recommended that, in "common fund" cases, attorneys' fees should be based on a reasonable percentage of the settlement fund created.  *Id.* at 254-59. As more fully discussed below, the primary advantage of establishing counsel fees as a percentage of recovery in a class action case is that it perfectly aligns the interests of counsel with the class that the counsel serves.  Further, as Judge Broderick pertinently wrote in *In re SmithKline Beckman Corp. Securities Litigation,* 751 F. Supp. 525, 534 (E.D. Pa. 1990) (citation omitted):2

---

1   Direct purchaser co-counsel in the present case, Dianne M. Nast, was a member of the Third Circuit Task Force on court-awarded attorney fees.

2   Direct Purchaser co-counsel in the present litigation, Dianne M. Nast, was also co-lead class counsel in the *SmithKline Beckman Corp. Securities Litigation.*

Petitioners also brought this action to a close only two years after filing the complaint, despite the problems with which they contended.  This is precisely the sort of result that the percentage of recovery fee method is intended to foster and stands as a counterexample to the perennial laments about the slow pace of complex litigation.

Moreover, plaintiffs' counsel terminated this controversy by settlement and thereby avoided burdening the federal judicial system with a trial and appeals. . . .   Indeed, 'it would be the height of folly to penalize an efficient attorney for settling a case on the ground that less total hours were expended in the litigation.'

20.     Another proposition recognized by Task Force members was that, in common fund cases, class members should be indifferent to the amount of time attorneys expend on their case; rather, the net recovery to the class is singularly important in appraising the value of the work done and determining the market value of the legal services rendered in the litigation.  This proposition was explicitly adopted in *Swedish Hospital Corp. v. Shalala,* 1 F.3d 1261, 1269 (D.C. Cir. 1993), and *Howes v. Atkins,* 668 F. Supp. 1021, 1025 (E.D. Ky. 1987), in which the courts stated as follows:  "It matters little to the class how much the attorney spends in time or money to reach a successful result."  This common-sense sentiment has been echoed in many cases and is reflected in the significant shift toward the use of percentage fee awards since the publication of the Task Force Report.  The Federal Judicial Center's *Manual for Complex Litigation Fourth, supra* § 14.121, at 187, for instance, notes that "the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common-fund cases."  *See also,* Daniel Karon *et al.*, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPIRICAL LEGAL STUD. 811, 845 (2010) ("District courts typically awarded fees using the highly discretionary percentage-of-the-settlement method . . . ."); *In re Se. Milk*

*Antitrust Litig.*, No. 2:07-CV 208, 2013 WL 2155387, at *2 (E.D. Tenn. May 17, 2013) ("[T]he trend in the Sixth Circuit is 'toward adoption of a percentage of the fund method' in common fund cases.").

21.  In the present case, Class Counsel's litigation accomplishments cannot be underestimated.  This was not a case in which wrongdoing had ever been acknowledged by the Defendants, or in which an investigation by a governmental or regulatory agency paved the way for the Plaintiffs.  To the contrary, Class Counsel, through their own considerable expense, perseverance, and exceptional expertise, developed a viable case against the well-financed Defendants.  Based on the pleadings that I reviewed and the first-rate reputation of the firms that represented the Defendants in this litigation, these Defendants were ably represented by experienced national counsel.

22.  Consequently, the settlement stands on its own in terms of the skill, experience, and reputation of Class Counsel and the reasonableness of their fee request.

23.  Further, it is my understanding that the parties did not discuss or negotiate attorneys' fees at any time in this litigation, neither before nor after the settlement on the merits was put in place.  Therefore, no likelihood exists that fee considerations influenced the negotiations with regard to Class relief.

24.  As stated above, a principal benefit of the percentage method is that it aligns the interests of client and lawyer, giving the lawyer an incentive to press for the best possible recovery for the class he or she represents.  *See* John C. Coffee, Jr., *Understanding the Plaintiff's' Attorney:  The Implications of Economic Theory for Private Enforcement of Law through*

*Class and Derivative Actions,* 86 COLUM. L. REV. 669, 724-25 (1986).  A percentage fee is also consistent with the economic theory and practical considerations of principal and agent relationships.  It ensures that counsel fees will not exceed a reasonable percentage of the recovery and reflects (and has some relation to) the marketplace for legal services.

25.  In class action litigation such as this, moreover, law firms that institute class actions as large as this against major companies like the Defendants must be prepared to make an enormous investment of time and money, coupled with lost opportunities and no assurance of recovery.  As noted, this case was built from the ground up.  Class Counsel conceived the case; investigated it; crafted high-quality, persuasive pleadings; conducted intensive and extensive discovery; prosecuted the case under the Court's tight scheduling order; and efficiently resolved this litigation.  The petitioning lawyers further made a contingent investment when they began their representation of the Plaintiffs.

26.  Unsurprisingly, a case having the characteristics of this one can require monumental expenditures in professional time, administrative and support services, and out-of-pocket expenses (particularly for expert witnesses) in order to bring and maintain the litigation, and to demonstrate the Plaintiffs' seriousness of purpose.  These burdens are particularly onerous when they have to be borne by comparatively smaller firms litigating against economically superior adversaries who enjoy substantial legal resources.  Here, these legal resources were deployed from the start by the Defendants, who sought to protect years of questionably-gained significant profits.

27.  Court-awarded attorneys' fees should also reflect and advance the important judicial policy of favoring early settlements.  Many courts and commentators support the

percentage-of-recovery method because it encourages such early settlement.   Prompt settlements, a policy prominently recognized in the Third Circuit Task Force Report, are manifestly to the advantage of the parties, the courts, and our society at large.   Class Counsel should therefore be rewarded for their efficiency in resolving this litigation in the compact time-frame in which the settlement was reached, and in furthering the paramount public purpose of encouraging the private enforcement of our nation's antitrust laws—a bedrock of protection for consumers and our economy.

28.     In this case, the fee requested is one-third of the value of the settlement.   The most salient precedent in the U.S. Court of Appeals for the Sixth Circuit, and one that squarely supports the fee request here, arises from class action antitrust litigation in the Eastern District of Tennessee.   In *In re Southeastern Milk Antitrust Litigation*, the Court meticulously analyzed the law governing the percentage-of-the-fund method of awarding fees.   In a pair of opinions issued a year apart, the Court awarded fees of one third of two separate settlements totaling approximately $300 million, amounting to $100 million in attorneys' fees, plus expenses.   *See* No. 07-cv-208, 2013 U.S. Dist. LEXIS 70167 at **10, 15-16 (E.D. Tenn. May, 17, 2013).   In framing its analysis, the Court began with three observations about the superiority of the percentage-of-the-fund method:  (1) the percentage method is now employed by a majority of courts of appeals and is the distinct "trend" in the Sixth Circuit; (2) the percentage method is preferable to the lodestar method (using hours, multiplied by current hourly rates), which is extremely problematic in application; and (3) the percentage method better reflects excellent results because, as noted above, it "'aligns the interests of the class and its counsel and provides a powerful

incentive for the efficient prosecution and early resolution of litigation.'" *Id*. at *13 (*quoting Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)).

29.     In the *Milk* antitrust case, Judge Greer proceeded to assess the reasonableness of the requested fee. *Id*. at *16. He began by finding that a 33.3% fee, even where the award is large, "is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit." *Id.* He then specified the range of factors identified by the Sixth Circuit for determining the reasonableness of a fee request. *Id.* These factors include: (1) the value of the benefit enjoyed by the class; (2) the value of the services on an hourly basis (using the lodestar as a "cross-check"); (3) the contingent nature of the legal services; (4) the societal "stake" in rewarding and incentivizing attorneys who confer great benefit on their clients and on the marketplace at large; (5) the complexity of the case; and (6) the skill, experience, and reputation of the attorneys on both sides of the litigation. *Id*. at *17. Applying these factors to the facts and circumstances of the case, Judge Greer concluded "that, although the requested fee is a very, very substantial amount, it is fair and reasonable under the circumstances." *Id.* at *32. In my opinion, the same conclusion is true in the present case.

30.     As explained above, this litigation was unique, complex, and confronted great resistance by the Defendants from the time of filing to settlement. As such, the lawyers in this litigation filed extensive pleadings to initiate this case, to survive the Defendants' motion to dismiss, and to certify the Class. These pleadings are of the highest quality. They lucidly set out the complex issues in this litigation and marshal ample support for the Plaintiffs' various claims. Further, discovery evidently was exceedingly contentious, and

Class Counsel were compelled to re-double their efforts to meet the Court's ambitious scheduling order.  At the same time, Class Counsel fully cooperated with the able Mediator appointed by the Court.  Both the litigation efforts, and this hard work with the Mediator, ultimately led to the commendable settlement.

31.     In other large antitrust cases involving the pharmaceutical industry, courts have routinely awarded fees equal to one-third of such settlements.  This precedent reflects the "risk-reward" nature of such cases.  *See, e.g.*, Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. EMPIRICAL LEGAL STUD. 27, 77 (2004) ("[F]ees as a percentage of the recovery tend to be higher in high-risk cases than in other cases . . . .").  By comparing a fee request with the average award in cases of similar magnitude, this Court can be confident that by approving a comparable percentage of recovery it is fulfilling its obligation to determine whether the fee requested is reasonable.  *See id*. at 72.

32.     In a distinct trend, the percentage-of-the-fund method has been used consistently in pharmaceutical antitrust class actions.  To illustrate this trend, Class Counsel have provided me with the following list of fourteen, recent, direct-purchaser, pharmaceutical antitrust cases.  In these cases, the courts have consistently awarded one-third attorneys' fees, based on the percentage-of-the-fund method.  Acknowledging that each case proceeds differently, no discernible reason exists for why this litigation should be treated any differently.

| Date | Case Name | Citation | Settlement Amount (in millions) |
|------|-----------|----------|-------------------|
| 05-31-12 | *Rochester Drug Co-Operative, Inc. v. Braintree Labs., Inc.* | D. Del. No. 07-142-SLR | $17.5 |
| 01-12-12 | *In re Metoprolol Succinate Antitrust Litig.* | D. Del. No. 06-52-MPT | $20 |
| 11-28-11 | *In re DDAVP Direct Purchaser Antitrust Litig.* | S.D.N.Y. No. 05-2237 | $20.25 |
| 11-21-11 | *In re Wellbutrin SR Antitrust Litig.* | E.D. Pa. No. 04-5525 | $49 |
| 08-11-11 | *Meijer, Inc. v. Abbott Labs.* | N.D. Cal. No. 07-05985-CW | $52 |
| 01-31-11 | *In re Nifedipine Antitrust Litig.* | D.D.C. No. 03-mc-223-RJL | $35 |
| 01-25-11 | *In re Oxycontin Antitrust Litig.* | S.D.N.Y. No. 04-md-1603-SHS | $16 |
| 04-23-09 | *In re Tricor Direct Purchaser Litig.* | D. Del. No. 05-340-SLR | $250 |
| 04-20-09 | *Meijer, Inc. v. Barr Pharms., Inc.* | D.D.C. No. 05-2195 | $22 |
| 11-09-05 | *In re Remeron Direct Purchaser Antitrust Litig.* | D.N.J. No. 03-0085 | $75 |
| 04-19-05 | *In re Terazosin Hydrochloride Antitrust Litig.* | S.D. Fla. No. 99-MDL-1317 | $74 |
| 11-30-04 | *N. Shore Hematology-Oncology Ass'n, P.C. v. Bristol-Myers Squibb Co.* | D.D.C. No. 04-248-EGS | $50 |
| 04-09-04 | *In re Relafen Antitrust Litig.* | D. Mass. No. 01-12239-WHY | $175 |
| 04-11-03 | *La. Wholesale Drug Co. v. Bristol-Myers Squibb Co.* | S.D.N.Y. No. 01-MD-1410-JGK | $220 |

33.     In class action cases of this nature, courts often use a "lodestar cross-check" to gauge the reasonableness of a fee award under the percentage method.  The lodestar is calculated by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rates of the attorneys involved in the litigation.  I have reviewed the billing records and hourly rates of most Class Counsel.  These records reflect the highly technical nature

of the issues in this case, the time-consuming discovery process, the legal research and writing necessary to launch and to sustain a case of this magnitude, and the myriad other mandatory tasks that the lawyers engaged in, all on a contingent basis. I consequently find both the time expended and the hourly rates billed by these attorneys as reasonable. This litigation required approximately two years of fact- and law-intensive legal work. The billing records that I reviewed reveal the multitude of tasks that litigation such as this requires. The Court's tightly crafted scheduling order undoubtedly provided a spur to counsel on both sides to multiply their efforts, simultaneously preparing for trial and mediating and negotiating the case. Also, the rates billed by counsel in this case reflect the national class action practices of these lawyers in today's legal market. I follow billing rates in the national legal press and believe that the various hourly rates of the lawyers here, following scrupulous review and the exercise of sound billing discretion, are reasonable given the skill, experience, and reputation of these lawyers and their firms.

**34.** The total lodestar in this case exceeds $10,000,000. Using a calculation that the lodestar exceeds $10,000,000 is conservative because the cumulative lodestar at Class Counsel's reported rates exceeds $11,400,000. When certain adjustments are made, as detailed in Lead Counsel's Declaration, the cumulative lodestar equals $10,760,000. Under any view, then, Class Counsel's lodestar exceeds $10,000,000. The requested fee of $24,333,333 represents a lodestar multiplier of no more than 2.43 and, using higher values, could be as low as 2.1. As cited in *Southeastern Milk Antitrust Litigation*, multiples of one to four are frequently awarded in common fund cases. *Id.* at *21-22. Employing the lodestar cross-check here, the fee request in this case is entirely reasonable given the excellent result, the complexity of the litigation, the risk assumed by

Class Counsel in undertaking this litigation, the high quality of the legal work performed on both sides, and the public benefit in encouraging private enforcement of our nation's antitrust laws.

## CONCLUSION

35.     For all of the reasons stated in this Declaration, I conclude that the request of Class Counsel for a fee award of 33.33% of the common fund is fair, reasonable, and well-supported by decisions of this Circuit and other Circuits.  The propriety of the fee request is further evidenced by the endorsement/lack of objection by the class representatives, sophisticated businesses, to the fee request.  Finally, the skill of counsel on both sides of this litigation led to a settlement that appears to be in the best interests of all concerned, including the Court.  Based on all of the facts and circumstances that I reviewed in preparing this Declaration, and the governing legal principles, I solidly support Class Counsel's fee request.

I declare, under penalties of perjury, that the foregoing is true and correct to the best of my knowledge, information, opinion, and belief.

Executed on May 29, 2014, in Knoxville, Tennessee.

Dean Hill Rivkin, *Attorney* (BPR # 004409)

1505 Cumberland Avenue
Knoxville, TN 37996-1810

(865) 974-1481
drivkin@utk.edu

## *Curriculum Vitae*

# DEAN HILL RIVKIN

**6608 Crystal Lake Drive**
**Knoxville, TN 37919**

**(865) 974-1481 – Office**
**(865) 588-7841 – Home**

Admitted to Law Practice:      Tennessee (1971); Kentucky (1972)

## LEGAL EDUCATION

School:                    Vanderbilt Law School (Class of 1971)

Activities and Honors:     Research Editor, VANDERBILT LAW REVIEW; American Jurisprudence Award in
                           Legal Problems of the Poor; Board of Governors, Vanderbilt Bar Association;
                           Board of Directors, Nashville Draft Information Center; Prerelease Program
                           Lecturer, Tennessee State Prison; Legal Aid Society; Law Students' Civil Rights
                           Research Council; Academic Scholarship; Testimony before United States
                           Senate Sub-committee on National Penitentiaries, May 1971.

## UNDERGRADUATE EDUCATION

School:                    Hamilton College (Class of 1968)

Degree:                    A.B., Government

Activities and Honors:     Treasurer, Student Senate; Member, Drug Regulations Revision Committee;
                           Secretary, College Evaluation Committee; Research Assistant, Government
                           Department; Dean's List; Academic Scholarship; Varsity Letterman, Lacrosse.

## LEGAL EMPLOYMENT

Visiting Professor, American University Washington College of Law (Fall 2008)

Director, Law School Consortium Project, Lawyers Education Advocacy Network (LEARN), University of
Tennessee College of Law (2004-09)

Guest Professor (permanent appointment), Southwest University of Political Science and Law, Chongqing, P.R.
China (2004)

University of Tennessee College of Law Distinguished Professor (awarded 2002)

Visiting Professor, Harvard Law School (Fall/Winter 2002-2003; 2004-2005)

Professor of Law, University of Tennessee, College of Law (1983-Present)

i

Director, University of Tennessee Legal Clinic (1988-1993)

Visiting Professor, University of Maryland School of Law (1990-91)

Associate Professor of Law, University of Tennessee, College of Law (1979-1983)

Visiting Professor, UCLA School of Law (1980)

Assistant Professor, University of Tennessee, College of Law (1976-77)

Teaching Fellow, Harvard Law School (1975-76)

Directing Attorney, Appalachian Research and Defense Fund of Kentucky, Lexington, Kentucky (1974-75)

Reginald Heber Smith Community Lawyer Fellow, Appalachian Research and Defense Fund of Kentucky, Lexington, Kentucky (1972-74)

Law Clerk, United States Court of Appeals for the Second Circuit (1971-72)

Research Assistant, Professor James F. Blumstein, Vanderbilt Law School (Summer 1971)

Appalachian Legal & Medical Project, Vanderbilt Law & Medical Schools (Summer 1970)

Law Students' Civil Rights Research Council Intern, Ratner, Sugarmon & Lucas, Memphis, Tennessee (Summer 1969)


## PUBLICATIONS

Dean Hill Rivkin & Brenda McGee, *No Child Left Behind? Representing Youth and Families in* Truancy *Matters*, 47 Clearinghouse Rev. 276 (2013).

Elisa Hyman, Dean Hill Rivkin, Stephen Rosenbaum, *How IDEA Fails Families Without Means*: *Causes and Corrections from the Frontlines of Special Education Lawyering*, 20 A.U. J. of Gender, Social Policy & the Law 107 (2011).

Dean Hill Rivkin, *Truancy Prosecutions of Students and the Right [To] Education*, 3 Duke Forum for Law & Social Change 139 (2011).

Dean Hill Rivkin et al., *The Politics of Protecting Children*: *Litigation for Change*, 7 TENN. J.L. & POL'Y 160, 229-245 (Fall 2011).

Kotkin & Rivkin, *Clinical Legal Education At a Generational Crossroads: Reflections From Two Boomers,* 17 Clinical L. Rev. 197 (2010).

Rivkin & Irwin, *Strip-Mining and Grassroots Resistance In Appalachia: Community Lawyering For Environmental Justice*, 2 Los Angeles Public Interest Law Journal 101 (2010).

Rivkin, *Decriminalizing Students With Disabilities, 54* New York Law School Law Review 909 (2010).

Rivkin, *Legal Advocacy and Education Reform: Litigating School Exclusion*, 75 TENNESSEE LAW REVIEW 265 (2008).

Rivkin, *Environmental Justice: A Universal Discourse*, 24 TEMPLE JOURNAL OF SCIENCE, TECHNOLOGY & ENVIRONMENTAL LAW 249 (2005)

Association of American Law Schools, REPORT OF THE EQUAL JUSTICE PROJECT (2002).

Rivkin, *Pursuing Equal Justice: Law Schools and the Provision of Legal Services*, 16 MANAGEMENT INFORMATION EXCHANGE 5 (2002).

Rivkin, EQUAL JUSTICE BIBLIOGRAPHY, Association of American Law Schools, Equal Justice Project (2000).

Rivkin, *Lawyering, Power, and Reform: The Legal Campaign to Abolish the Broad Form Mineral Deed*, 66 TENNESSEE LAW REVIEW 167 (1999).

Rivkin, *Characterizing the Regulatory and Judicial Setting: Decision-maker Response*, in TOOLS TO AID ENVIRONMENTAL DECISION-MAKING (V. Dale & M. English eds. 1999).

Rivkin & McGee, *Disability Advocacy in Juvenile Delinquency Representation*, in Tennessee Association of Criminal Defense Lawyers' A PRACTICAL GUIDE FOR JUVENILE DEFENSE (1997).

Rivkin, *Lawyering For Reform: Is The Highway Alive Tonight*, 64 TENNESSEE LAW REVIEW 1065 (1997).

Rivkin, *Doing Environmental Justice in Appalachia: Lawyers at The Grassroots and Aspirations of Social Change*, 96 WEST VIRGINIA LAW REVIEW 1109 (1994).

Rivkin, *The Evolution of In-House Clinical Field Work Programs* in ABA National Conference on Professional Skills and Legal Education, 19 NEW MEXICO LAW REVIEW 42 (1989).

Rivkin, *The Environmental Impact Assessment Process, Administrative Decision-making, Citizen Advocacy, and the Courts: An Essay on the Evolution of the National Environmental Policy Act of 1969*, in THE ROLE OF ENVIRONMENTAL IMPACT ASSESSMENT IN THE DECISION-MAKING PROCESS (H. Paschen ed., 1989).

Rivkin, *Essay: The Reform Mission of Clinical Legal Education*, in PANEL DISCUSSION, CLINICAL LEGAL EDUCATION: REFLECTIONS ON THE PAST FIFTEEN YEARS AND ASPIRATIONS FOR THE FUTURE, 36 CATHOLIC LAW REVIEW 340 (1987).

Rivkin, *TVA, The Courts, and the Public Interest* in TVA: FIFTY YEARS OF GRASS-ROOTS BUREAUCRACY (P. Conkin & E. Hargrove eds., University of Illinois Press 1983).

Rivkin, *The TVA Air Pollution Conflict: The Dynamics of Public Law Advocacy*, 49 TENNESSEE LAW REVIEW 843 (1982).

Rivkin, *Remarks on Teaching and Testing Clinical Skills* in LEGAL EDUCATION AND LAWYER COMPETENCY: CURRICULA FOR CHANGE (F. Dutile ed., 1981) (University of Notre Dame Press).

Rivkin, *Clinical Legal Education and the Promotion of National Goals*, in PROCEEDINGS, ASSOCIATION OF AMERICAN LAW SCHOOL'S CONFERENCE ON FUNDING OF CLINICAL EDUCATION 1978).

Rivkin, *The Institutional Setting in Appalachia*, in PROCEEDINGS, VIRGINIA POLYTECHNIC INSTITUTE REGIONAL FORUM: APPALACHIA LOOKS AT ITS FUTURE (1975).

Cohen and Rivkin, *Civil Disabilities: The Forgotten Punishment*, 35 FEDERAL PROBATION 19 (June 1971).

Special Project, *The Collateral Consequences of a Criminal Conviction*, 23 VANDERBILT LAW REVIEW 929 (1970).

Case Comment: *Gautreaux v. Chicago Housing Authority*, 23 Vanderbilt Law Review 131 (1969).

**SELECTED PAPERS AND PRESENTATIONS**

Plenary Presenter, National Juvenile Defender Center Leadership Summit, "Renewing Our Commitment: Litigating Status Offender Cases," Scottsdale, Arizona (Nov. 2013).

Presenter, Appalachian Public Interest Environmental Law Conference, "The Ethics of Public Interest Environmental Lawyering" (Oct. 2013).

Presenter, Southern Clinical Conference, "Special Education Law Across the Curriculum: Theory and Practice," University of Arkansas Law School (Aug. 2013).

Presenter, "Systemic Juvenile Justice Reform," Cardozo Law School (Apr. 2013).

Presenter, Appalachian Public Interest Environmental Law Conference, "Coal, Courts, and Corruption" (Oct. 2012)

Presenter, Southern Clinical Conference, "The Pedagogy of Law Reform: The Education Law Practicum," University of Tennessee College of Law (Mar. 2012).

Commentator, University of Tennessee, Animals, Law, and Ethics Conference (Mar. 2012).

Co-Organizer and Presenter, Appalachian Public Interest Environmental Law Conference (APIEL), "Taxation of Mineral Lands and Energy Justice," University of Tennessee College of Law (Oct. 2011).

Organizer and Presenter, Howard Baker Center Interdisciplinary Forum for Energy & the Environment, "Public Interest Environmental Lawyering," (Oct. 2011).

Presenter, Global Alliance For Justice Education World Conference (Valencia, Spain), "Environmental Justice and Community Lawyering in the USA" (July 2011).

Presenter, American University Washington College of Law, Symposium, Current Issues in Special Education Advocacy, "How IDEA Fails Families Without Financial Means: Causes and Corrections From the Frontlines of Special Education Lawyering" (Feb. 2011).

Presenter, Duke University Law School, Symposium, The Collateral Consequences of Juvenile Adjudication, "Truancy Prosecutions of Students and the Right [To] Education" (Feb. 2011).

Presenter, Tennessee Association of Criminal Defense Lawyers, Juvenile Defenders Seminar, "Decriminalizing Status Offenses" (June 2010).

Presenter, UT College of Law Education Law Practicum CLE Program, "Education Issues in Juvenile Court" (April 2010).

Panelist, UT Howard Baker Center Water Series, "Connecting Water Issues to Regional Policy"

iv

(February 2010).

Presenter, UT Howard Baker Center Clean Air Act Conference, "Climate Change Litigation" (October 2009).

Presenter, Tennessee Juvenile Court Services Association, "Dismantling The School-To-Prison-Pipeline in Tennessee" (August 2009).

Panelist, AALS Clinical Conference, "Coaching Millennials: Re-examining the Foundations and Future of Clinical Education in Teaching a New Generation of Law Students" (May 2009).

Panelist, "Special Education Advocacy," Conference on "Dismantling the School-To-Prison-Pipeline" sponsored by New York Law School and the Racial Justice Project of the national ACLU (April 2009).

Panelist, "Mountaintop Removal and Human Rights," University of Tennessee Energy and Responsibility Conference (April 2008).

Trainer, "Special Education Law," Tennessee Supreme Court Administrative Office of the Courts /Tennessee Secretary of State, Administrative Law Judges (ALJs) (August 30-31, 2007).

 "Special Education Advocacy in Juvenile Court Proceedings," Tennessee Juvenile Court Services Association (August 4, 2007)

"Alternative Education Advocacy," presented to National Litigators' Conference on the School-To-Prison Pipeline; sponsored by the Racial Justice Project, ACLU, New York (April 2007).

"Juvenile Justice and Special Education," CLE Program sponsored by the Tennessee Bar Association (July 2004).

Faculty, Temple University Law School, Institute For International Law and Public Policy, Roundtable For Chinese Environmental Law Scholars (July 2004).

Lectures on clinical legal education and environmental justice at five Chinese Law Schools (May 2004) at the invitation of the Research Institute on Environmental Law, Wuhan University Law School, Wuhan, P.R. China.

"Lawyering Amidst Inequality: Complexities and Contradictions in a Galvanizing Case of Special Education," Paper delivered to Harvard Law School Faculty Workshop (November 2002).

"Learning From Clients," Plenary Presentation to Association of American Law Schools (AALS) Clinical Conference (May 2002).

"Nonlawyers and Special Education Advocacy: The Import of the *Arons* Case," Paper Delivered to Council of Parents, Advocates, and Attorneys (March 2000).

"Lawyering For Reform," Paper Delivered to Section on Litigation, AALS Annual Meeting (January 1996).

"The Case Against Disciplinary Exclusion Of Students With Disabilities Through Juvenile Court Prosecutions By School Systems," Paper Delivered to Children's Rights Conference, Temple Law School (September 1995).

"The Ethics of Negotiation," CLE Lecture to Knoxville Bar Association (October 1988).

"Programmatic Environmental Impact Statements, Tiering, and the NEPA Process: A Case Study of the U.S.

Army's Chemical Stockpile Disposal Program," Paper Delivered at Institute for Applied Systems Analysis, West German Nuclear Research Center (June 1988).

"The Meaning of Professional Skills," Paper Delivered to Ohio State University Law School (April 1988).

"Climbing the Ladder of Abstraction: Cross-Cutting Themes and Clinical Theory," Paper Delivered at AALS Workshop on Clinical Legal Education (San Antonio, Texas 1987).

"Lawyering Amidst Inequality: Law Reform and the Faces of Power," Paper Delivered at Colloquium Sponsored by Frances Lewis Law Center, Washington and Lee Law School (March 1984).

"The Use of Other Disciplines in Teaching About Practice," Paper Delivered at Meeting of the Southeast Association of Law Schools (August 1982).

"Clinical Education and Law School Pedagogy: From Politics to Skills," Paper Delivered at the AALS National Clinical Teachers' Conference (Samoset, Maine 1981).

"Clinical Legal Education and Reform of American Legal Education," Paper delivered at AALS National Clinical Teachers' Conference (Big Sky Mountain, Montana 1980).

"Clinical Teaching and Civil Procedure: A Synthesis," Paper Delivered at AALS Conference on Civil Procedure (Cornell Law School 1979).


## SELECTED PROFESSIONAL ACTIVITIES

Recipient, "Champion of Change Award," Knoxville Community Shares (2011).

Member, AALS Membership Review Committee (2010-12).

Professor, University of Tennessee/University of Mississippi University of Cambridge Summer Session (2006).

Consultant, Harvard Law School, Evaluation of Hale & Dorr Clinical Legal Services Center (2004-05).

Director, Association of American Law Schools, Equal Justice Project (2000-2003).

Columnist, "Green Justice," The Hellbender Press (East Tennessee's Environmental Journal) (1999-present).

Thomas Jefferson Prize Award, University of Tennessee (2001).

Member, Board of Directors, Highlander Research and Education Center (1994-2001).

Member, Policy Committee, Southern Appalachian Mountain Initiative (1993-2002).

Consultant, Administration of Justice Project, United States Agency for International Development, La Paz, Bolivia (August 1993).

Vice Chair, Environmental Values Committee, ABA Section of Administration Law (appointed 1992).

Member, Oak Ridge Associated Universities, Environment and Safety Advisory Committee (appointed 1991).

Member, AALS Special Committee on the Professional and Ethical Responsibilities of Law Teachers (1988-90).

Member, Board of Governors, Society of American Law Teachers (1987-1993).

Member, Board of Governors, Society of American Law Teachers (elected to three-year terms in 1987 and 1990).

First Amendment Award, National Society of Professional Journalists (November 1986).

Member, Council, American Bar Association Section of Legal Education and Admissions to the Bar (elected to four-year term at August 1982 ABA Annual Meeting).

Member, AALS Professional Development Committee (appointed in 1981 to a three-year term by AALS President Sanford Kadish).

Member, ABA Accreditation Committee (1981-82).

Planning Chair, 1981 and 1982 AALS National Clinical Teachers' Conferences (appointed by AALS President Albert Sacks).

Co-Chair, ABA Section on Legal Education and Admissions to the Bar, Clinical Committee (1981-82).

Co-Chair, AALS Section on Clinical Legal Education (1981) (elected by members of AALS Section).

Air Conservationist of the Year, Tennessee Conservation League (1979).

Consultant, Oak Ridge National Laboratory (1979).

Consultant, Federal Legal Services Corporation (1977-79).

ABA and AALS Site Teams (selected schools): Texas Southern University Thurgood Marshall School of Law, New York University, CUNY, Catholic University, St. John's, Touro, UNLV, University of Nebraska, American University, George Mason University, Vermont Law School, Pontifical Catholic University of Puerto Rico, North Carolina Central University.


**SELECTED PUBLIC INTEREST LITIGATION**

*SOCM v. Norton*, U.S. District Court for the Eastern District of Tennessee (2003-2007) (NEPA challenge to issuance of coal strip-mining permit using mountaintop removal methods).

*C.S.C. v. Knox County Board of Education,* 2007 WL 1519543 (Tenn. Ct. App. 2007)  (class action on behalf of all students expelled or suspended from the Knox County Schools establishing their right to alternative education).

*Morgan v. Chris L.*, 927 F. Supp. 267 (E.D. Tenn. 1994), *aff'd*, 106 F.3d 401 (6th Cir. 1997), *cert. denied*, 520 U.S. 1271 (1997) (school system prohibited from prosecuting a student with disabilities for alleged misconduct when IDEA procedures not followed).

vii

*Babb v. Knox County Schools*, 965 F.2d 104 (6th Cir. 1992) (student with emotional disabilities entitled to residential educational placement under individuals with Disabilities Education Act).

*Carver v. Knox County, Tennessee*, 887 F.2d 1287 (6th Cir. 1989) (constitutionality of state-wide jail overcrowding).

*Marcus X. v. Adams*, 856 F. Supp. 395 (E.D. Tenn. 1994) (IDEA suit for appropriate educational services for a youth in a State juvenile prison).

*Suttles v. City of Chattanooga*, No. 86-5897 (6th Cir. 1988) (constitutionality of city's action in death of inmate).

*Legal Environmental Assistance Foundation v. Hodel*, 586 F. Supp. 1163 (E.D. Tenn. 1984) (Resource Conservation and Recovery Act applies to DOE facilities).

*Block v. Neal*, 460 U.S. 289 (1983) (claim of negligent inspection of home construction by FMHA cognizable under Federal Tort Claims Act).

*Doochin v. Rackley*, 610 S.W.2d 715 (Tenn. 1981) (successful defense of Tennessee's Surface Owner Protection of 1977).

*American Civil Liberties Union of Tennessee v. Tennessee*, 496 F. Supp. 218 (M.D. Tenn. 1980) (successful challenge to Tennessee's barratry statute).

*Tennessee Thoracic Society v. Freeman*, No. 77-3286 and consolidated cases (M.D. Tenn. Dec. 20, 1980) (successful challenge to TVA's $SO_2$ control practices under federal Clean Air Act).

*Tennessee Valley Energy Coalition v. TVA*, No. 81-1069 (M.D. Tenn.) (challenge on behalf of low-income consumer organization to the methods by which TVA finances construction of nuclear power plants).

*Scott v. Kentucky Parole Board*, 429 U.S. 60 (1976) (due process in parole release proceedings).

*North v. Russell*, 427 U.S. 328 (1976) (constitutionality of lay judges in lower court criminal proceedings).

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| In Re: | Lead Case No. 2:12-cv-83 |
|---|---|
| SKELAXIN (METAXALONE) ANTITRUST LITIGATION | MDL No. 2343 |
| | Judge Curtis L. Collier |
| THIS DOCUMENT RELATES TO: | |
| All Direct Purchaser Class Actions | |

<u>**DECLARATION OF THOMAS M. SOBOL**</u>

Thomas M. Sobol declares, pursuant to 28 U.S.C. § 1746, as follows:

**I.**     <u>**Legal Experience**</u>

1.     I am a partner with Hagen Berman Sobol Shapiro LLP and have practiced complex civil and criminal litigation for over 30 years.  I am a member of the bars of the Supreme Judicial Court of the Commonwealth of Massachusetts and the United States District Court for the District of Massachusetts and have been appointed *pro hac vice* to numerous federal and state courts across the country.  For over twelve years, my practice has focused on health care related complex litigation, particularly on matters that affect the price of pharmaceuticals and medical devices.

2.     This Court appointed me as lead counsel for the direct purchaser class in this case on July 18, 2012 and I have had that honor continuously since that time.[1]

3.     I have been court-appointed lead counsel, co-lead counsel, or a member of the steering committee in many of the largest pharmaceutical pricing cases in the country.  I was co-lead counsel in *In Re Average Wholesale Price Litigation*, *In Re Lupron Marketing Sales and*

---

[1] Management Order, filed July 18, 2012 (Dkt. No. 43).

*Marketing Practices Litigation*, *In Re Neurontin Sales and Marketing Practices Litigation*, and numerous drug antitrust matters including the *Augmentin, Relafen, Paxil, Doryx, Tricor, Toprol* litigations and many others. (My original application for the lead counsel position in this case detailed my education, experience, and professional activities at greater length.[2]) Recoveries for my clients in pharmaceutical matters alone (including the classes they represent and other purchaser classes) are estimated in the billions of dollars.

4.      For many years, my firm has been active in an area of antitrust law involving prescription drugs and the application of the Hatch-Waxman Act. The area is somewhat of a specialty, with a significant amount of unique law, regulatory background, and industry facts that require experience, knowledge, and training to practice responsibly and effectively.

## II.      Allegations of the Complaint

5.      Direct purchasers allege that Defendants King Pharmaceuticals LLC and Mutual Pharmaceutical Company, Inc. (collectively "Defendants") wrongfully blocked therapeutically equivalent, but less expensive, generic versions of King's brand name prescription drug Skelaxin (generic: metaxalone) from coming to market, thereby inflicting overcharges on direct purchasers.[3] King, first acting alone and later working with would-be generic maker Mutual, delayed generic competition by: (1) filing baseless petitions with the Food and Drug Administration ("FDA") to delay the FDA's approval of generic metaxalone applications; (2) wrongfully listing three patents in the FDA Orange Book knowing the patents could not legitimately protect metaxalone; (3) prosecuting sham patent litigation to delay generic efforts to gain early market entry; (4) pursuing a "pay-for-delay" agreement with Mutual not to launch a

---

[2] Joint Application of Counsel for Appointment as Members of the Direct Purchaser Plaintiffs' Steering Committee, filed June 22, 2012 (Dkt. No. 20-2).

[3] Consolidated Class Action Complaint and Jury Demand, filed November 2, 2012 (Dkt. No. 31).

generic; and (5) concealing from a federal court the conspiracy between King and Mutual to delay generic entrants.  As a result, generic metaxalone did not launch until April 2010, far later than it would have launched absent Defendants' illegal, anticompetitive conduct.  Direct purchasers alleged violations of the Sherman Act, 15 U.S.C. §§ 1 and 2 and an overarching scheme (1) by King to unlawfully monopolize the metaxalone market and (2) by King and Mutual to conspire to violate federal antitrust laws.  Direct purchasers alleged that this scheme delayed entry of generic metaxalone and seek overcharges stemming from this unlawful delay.

6.     The litigation was factually complex and resource-intensive: direct purchasers' claims required counsel to analyze (a) the medical, pharmaceutical, economic, regulatory, and statistical bases of Defendants' claims that its "food effects" patents were valid and that its petitions raised legitimate concerns; (b) the law, regulation, and practice concerning FDA review of ANDAs and petitions as they applied to Skelaxin and generic Skelaxin, and the scientific and other unique factual issues raised by Defendants' actions; (c) the readiness, willingness, and ability of Sandoz, CorePharma and Mutual to manufacture and sell a generic version of Skelaxin; and (d) pharmaceutical pricing and distribution of Skelaxin and generic Skelaxin.

## III.   <u>Procedural History of Direct Purchasers' Case</u>

7.     This is an antitrust class action brought on behalf of a proposed class of direct purchasers of the prescription drug Skelaxin, defined as follows:

> All persons or entities in the United States and its territories who purchased Skelaxin directly from King at any time during the period November 4, 2005 through and until April 30, 2014 (the "Class Period").

> Excluded from the Class are Defendants and their officers, directors, management, employees, subsidiaries, and affiliates, and all federal governmental entities.

8.     Direct purchasers filed their initial complaints in January 2012 and, after transfer and coordination in this Court by the Judicial Panel on Multidistrict Litigation, a Consolidated Amended Complaint on November 2, 2012.  The Court promptly determined that this case would proceed on two tracks: litigation and mediation.  Both tracks were instrumental to resolving this case.

### A.     Litigation Track

9.     Direct purchasers' first hurdle was Defendants' motion to dismiss.  While direct purchasers believed in the strength of the case, Defendants raised several challenging arguments, including that: (1) direct purchasers had not sufficiently pled that Defendants caused their injuries; (2) the First Amendment protected Defendants' conduct; and (3) the Sherman Act's four-year statute of limitations time-barred direct purchasers' claims.  After extensive briefing and lengthy oral argument, the Court denied the motion to dismiss on May 20, 2013 but pointed to several future hurdles direct purchasers would need to surmount, including an issue of law or two that were (and remain) without definitive authority from this Circuit.[4]

10.     The discovery process was intense.  The Court set a discovery deadline of December 31, 2013, leaving roughly seven months to complete discovery after the Court decided the motion to dismiss, and direct purchasers were determined to hold to the Court's ambitious schedule.  The parties sought relief from Magistrate Judge Carter on several occasions to keep the case moving apace.

11.     Before the decision on the motion to dismiss, the parties agreed to limited discovery.  In October 2012, because Defendants resisted commencing full discovery before a decision on the motion to dismiss, the parties agreed on specific types of documents that

---

[4] Order, filed May 20, 2013 (Dkt. No. 201).

Defendants would produce early in exchange for the deferral of the remaining production until after a decision on the motion to dismiss.  These were: (1) sales and pricing data for Skelaxin (and generics, obtained via subpoena); (2) internal projections regarding generic entry; (3) materials produced in the related *Jabo's Pharmacy, Inc. v. King Pharmaceuticals, Inc.* state court case; (4) materials produced and court filings in the underlying patent litigations; (5) communications between King and Mutual leading to Defendants' 2005 "pay-for-delay" agreement; and (6) internal communications and communications with the FDA regarding the various petitions concerning Skelaxin and its would be generic competitors.

12.     Direct purchasers needed the prompt production of sales and pricing data and internal projections on generic entry to be able to move for class certification on May 6, 2013 and for purposes of mediation.  The parties agreed to the remaining categories of "early discovery" because they believed those categories to be readily available, relatively easy to produce, and necessary for mediation.  After multiple disputes and the assistance of Magistrate Judge Carter, Defendants completed production of these initial categories of documents in April 2013.  Direct purchasers immediately went to work reviewing and analyzing the documents.

13.     Once the Court decided the motion to dismiss, full discovery of Defendants began in earnest.  Direct purchasers served their First Request for Production of Documents Rule 26 Initial Disclosures months earlier, on November 30, 2012 and December 18, 2012, respectively. Beginning in May 2013, the parties met and conferred for months on custodians and the scope of Defendants' productions.  To further this process, direct purchasers took Rule 30(b)(6) depositions of King and Mutual on document custodians and electronically stored information in late May and early June of 2013.

5

14.    King and Mutual did not begin producing the majority of their documents until late August 2013.  Because neither would provide a firm date for completing production, on July 31, 2013, direct purchasers and other plaintiffs filed an emergency motion, asking the Court to require Defendants to immediately start producing documents.[5]  On August 14, 2013, in response to Plaintiffs' Emergency Motion to Compel Defendants to Expedite Production of Documents, the parties submitted a Stipulation to the Court, explaining that Defendants would begin their production of documents during the month of August, King's production would be substantially complete by October 4, 2013, and the majority of Mutual's production also would be substantially complete by October 4, 2013, except for the productions from some new custodians recently identified.[6]

15.    Because Defendants did not begin producing documents in response to discovery requests until four months before the end of discovery, direct purchasers had a short amount of time to review a large number of documents.  To move as efficiently as possible, direct purchasers worked in cooperation with all other plaintiff groups.  The time crunch required direct purchasers' counsel (and counsel for the other plaintiff groups) to drop other projects, immediately focus on analyzing Defendants' documents, and identify, notice, and prepare for depositions of Defendants' witnesses as quickly as possible.

16.    The work was divided into topics that all plaintiffs would need to prove their cases, such as agreements, monopoly power, causation, and "objective baselessness."  The attorneys making up each team were charged with searching for and developing the evidence that supported plaintiffs' case for the assigned topic.  Each team then created a "white paper" that

---

[5] Emergency Motion to Compel Defendants to Expedite Production of Documents, filed July 31, 2013 (Dkt No. 317).

[6] Stipulation, filed August 14, 2013 (Dkt. No. 340).

contained all the relevant evidence gathered by the team, with cites and references to the relevant documents. It was an intensive and time-consuming process. The review and analysis generated substantial evidence that allowed direct purchasers to better understand the strengths and weaknesses in the case and helped lead to the eventual settlement. Ultimately, Defendants produced over 315,000 documents constituting nearly 4.5 million pages. Plaintiffs' counsel examined over half of those documents in a little more than two months using targeted electronic searching to focus on the most relevant documents.

17.     Direct purchasers also responded to detailed contention interrogatories served by Defendants. In late August 2013, Defendants moved to compel answers to their contention interrogatories, despite having barely commenced production of documents. Direct purchasers responded to Defendants' motion on September 16, 2013 and Defendants filed a reply brief on September 26, 2013. On September 30, 2013, the parties filed a joint stipulation whereby all plaintiffs agreed to serve substantive responses to Defendants' contention interrogatories by October 18, 2013 and Defendants withdrew the motion.[7]

18.     This agreement necessitated additional intense work to analyze Defendants' documents as the teams reviewing Defendants' documents were now also tasked with drafting responses to Defendants' contention interrogatories and locating the documents that would support those responses. Like the document review itself, this was done on an aggressive schedule, with the work requiring all hands on deck to be completed on time.

19.     Because of the short time frame remaining in the discovery schedule, plaintiffs assigned counsel to take depositions of Defendants' witnesses early and then began working to schedule the depositions. Numerous depositions of Defendant witnesses were scheduled and

---

[7] Stipulation, filed September 30, 2013 (Dkt. No. 392).

noticed for November and December 2013 and counsel for direct purchasers, in conjunction with other plaintiff groups, were in the midst of vigorously preparing for those depositions when settlement was reached in November 2013.

20.     While direct purchasers aggressively pursued discovery from Defendants, they were also shepherding the proposed direct purchaser class representatives through their discovery obligations.  Each proposed class representative produced documents and electronic data in response to Defendants' requests and Rule 30(b)(6) witnesses to testify both as to class certification and document production issues.  In some cases, the class representatives produced multiple witnesses.

21.     Early on, Defendants filed an emergency motion with Judge Carter concerning direct purchasers response to Defendants' request for documents and deposition notices.[8]  The parties were ultimately able to resolve this issue without Court intervention and direct purchasers substantially completed their document productions and did so in advance of the depositions requested by Defendants.[9]  All proposed direct purchaser class representative depositions were completed by the beginning of July 2013, before Defendants filed their opposition to direct purchasers' motion for class certification.

22.     Defendants continued to pursue discovery from the proposed direct purchaser class representatives after class certification briefing was complete.  In Defendants' requests for production, Defendants sought discovery from the assignors of some of the direct purchasers' claims.[10]  Direct purchasers objected to this production and on September 12, 2013, Defendants

---

[8] Emergency Motion to Compel and for Protective Order, filed May 17, 2013 (Dkt. No. 195).

[9] Status Report, filed May 22, 2013 (Dkt. No. 206).

[10] These direct purchasers included the LaFrance entities, the Meijer entities, and Ahold USA, Inc.

filed a motion to compel the production of documents in the hands of the assignors.[11]  This motion also applied to several of the direct purchaser opt-out plaintiffs (CVS and Walgreen). After fully litigating this motion, the case settled before the Court reached a decision as to direct purchaser class representatives.[12]

23.    One of the most contentious aspects of the discovery process was Defendants' service of numerous Rule 45 Subpoenas on absent members of the direct purchaser class.  Direct purchasers filed a motion for a protective order, seeking to require Defendants to withdraw the subpoenas.[13]  On June 10, 2013, Magistrate Judge Carter granted significant portions of direct purchasers' motion for a protective order, finding irrelevant requests seeking information about drugs other than Skelaxin and those seeking downstream discovery (discovery on direct purchaser sales and profits), at least for the purposes of direct purchaser damages and certification of the direct purchaser class.[14]

24.    Magistrate Judge Carter reserved ruling on whether downstream discovery from absent direct purchaser class members is relevant to the indirect purchasers' damages and on whether Defendants can obtain discovery on direct purchaser purchase data, noting that Defendants already have this information in the form of their own sales data.  The parties resumed negotiations following the decision and, on July 16, 2013, filed a stipulation, indicating that they had reached an agreement.[15]  Defendants agreed they would not further brief the issue

---

[11] Joint Motion to Compel Plaintiffs to Produce Documents Held by their Assignors, filed September 12, 2013 (Dkt. No. 372).

[12] Order, filed November 22, 2013 (Dkt. No. 438).

[13] Motion for Protective Order Directing Defendants to Withdraw the Subpoenas Served on Absent Class Members, filed May 8, 2013 (Dkt. No. 177).

[14] Order on Direct Purchaser Plaintiffs' Motion for a Protective Order, filed June 10, 2013 (Dkt. No. 230). Magistrate Judge Carter also found irrelevant three discovery requests that sought information protected by the attorney-client and work-product privileges.

[15] Stipulation re Order on Motion for Protective Order, filed July 16, 2013 (Dkt. No. 267).

in exchange for representations from the direct and indirect purchaser plaintiffs that additional documents and data from the absent direct purchaser class members would not be used by those plaintiffs in the class certification proceedings.

25.     The issue returned when, on September 5, 2013, Defendants appealed the Magistrate Judge's decision that the subpoenas to absent class members sought irrelevant information and thus would not be enforced by this Court.[16]  Direct purchasers fully responded and Defendants replied.  Settlement rendered the motion moot before a decision could be reached.

26.     While discovery proceeded, direct purchasers also worked with experts to help build their case.  Direct purchasers worked extensively with economist Meredith Rosenthal, Ph.D., who provided an expert report on health care economics and the impact of generic entry on the price of products to wholesalers.  Direct purchasers also worked with a series of other experts whose identity had yet to be disclosed to Defendants, including a manufacturing and regulatory expert (to address and opine on issues relating to the readiness, willingness, and ability of Mutual and other generics to enter the market earlier absent the challenged conduct), an FDA expert (to address and opine on issues relating to the lack of scientific and regulatory support for the petitions to the FDA), and a chemistry expert (to address matters relating to formulation issues associated with metaxalone).

27.     Direct purchasers filed, and Defendants opposed, a motion for class certification, with both parties submitting reports by experts.[17]  Professor Rosenthal submitted two expert declarations; she implemented an impact and damages methodology that had previously been

[16] Appeal of Magistrate Judge Opinion, filed September 5, 2013 (Dkt. No. 368).

[17] Motion to Certify Class, filed May 6, 2013 (Dkt. No. 165); Defendants' Opposition to Direct Purchaser Class Plaintiffs' Motion to Certify Class, filed July 29, 2013, but docketed March 25, 2014 (Dkt. No. 560).

accepted by courts for purposes of certifying analogous classes in similar kinds of antitrust cases. Professor Rosenthal was deposed on May 28, 2013.  Defendants opposed the motion and direct purchasers filed a reply, completing the briefing at the end of August 2013.[18]

28.    Defendants' opposition argued that: (1) the class was not sufficiently numerous such that joinder was impracticable; (2) some members of the class actually benefitted from Defendants' conduct, which created an intra-class conflict; and (3) some of the named class representatives were inadequate.  Direct purchasers were fully prepared to argue the motion at the hearing scheduled for November 20, 2013 when the case settled; while confident of the merits of our position, direct purchasers recognized Defendants had presented arguments purportedly based on recent Supreme Court precedent that would need to be batted down during an adversarial argument.[19]

### B.    Mediation Track

29.    At the Court's direction, while litigating, the parties simultaneously mediated the case; court-appointed mediation counsel, Dianne M. Nast led these efforts.  After appointment as mediator on February 5, 2013, the Honorable Jennifer B. Coffman immediately required the parties to prepare and submit a strategic mediation plan, including specific information such as:[20]

- Direct purchasers' ultimate maximum desired goal and ultimate minimally acceptable goal.  This required direct purchasers to "perform an intensive, objective and good faith evaluation of [the] case and state [the] ultimate maximum desired goal."  The submission also necessitated a discussion of "the factual and legal basis for the figure or range."

- Direct purchasers' strategy for achieving the desired goal.  Here, direct purchasers set out the "issues involved in the litigation" and "how counsel thinks it can achieve the goals, what resources are necessary for the achievement of the goals,

---

[18] Reply, filed August 23, 2013 (Dkt. No. 346).

[19] *See, e.g., Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541 (2011); *Comcast Corp. v. Behrend,* 133 S. Ct. 1426, (2013).

[20] Mediation Order, filed February 22, 2013 (Dkt. No. 111).

how much time it will take to achieve those goals, and how much money it will take to achieve the goals."

- The critical milestones in the litigation and the effect they would have on mediation and/or settlement of this case.  Direct purchasers set out the critical events, described how each could or would affect the maximum desired goal or minimally acceptable goal, and laid out the strategy for achieving the goals.  Judge Coffman added to this section, requesting direct purchasers address "the shifting settlement incentives at each milestone, beginning with the current stage; your confidence in your predictive ability after reading your opponents' motions (both generally and in this case) but before the resolution of those motions; and whether the mediation of discovery disputes or related issues is appropriate, in lieu of or in addition to the formal motion process."

- The opposing parties' needs and interests.  Here, Judge Coffman asked for a "candid and best assessment of our opponents' needs and interests with respect to this litigation."

- The barriers and/or obstacles to achieving goals, both internal and external, including "internal matters or issues, such as personalities, financial limitations, and the like, or external matters or issues such as witness issues, contrary case law, and the like."  Judge Coffman required that direct purchasers also address "broader economic issues, either long-term or short-term, which may affect or impede settlement."

- The discovery necessary for mediation to progress and/or succeed.  Such discovery should "be identified with specificity" and explain "why the particular discovery is necessary before mediation or a stage or phase of discovery can progress."

- How settlement may be accomplished.  This required direct purchasers to lay out the "best assessment of how this case can be settled… includ[ing] the time line for a successful resolution, the issues that must be resolved, the various stages or phases of the mediation, and the ultimate resolution of the case," as well as "the terms, conditions, and the people needed to perfect settlement if mediation counsel are not sufficient."

- Any history of settlement negotiations.  In addition to describing "the scope of the discussions, what if any success was achieved, how close the parties came to success, and identifying where the discussions broke down," Judge Coffman added that this section "shall be particularized and detailed; shall include the identities (name and position) of all persons actively involved in each stage, including the process for approval or disapproval of settlement proposals; and shall discuss formal as well as informal settlement discussions or other communications."

12

- Preliminary or intermediate settlement matters upon which direct purchasers believed agreement could be reached.

- Preparation of clients for settlement.  This required direct purchasers to discuss elements of the settlement with each proposed direct purchaser class representative at a very early stage.

30.     Drafting this document was a significant undertaking requiring us to take a hard look at the case, without the benefit of full discovery, early on.

31.     After receiving and considering the strategic mediation plan, Judge Coffman convened a mediation session on March 21 and 22, 2013.  At Judge Coffman's request, in addition to mediation and trial counsel, personnel from direct purchaser class representatives Stephen L. LaFrance Holding, Inc., Stephen L. LaFrance Pharmacy, Inc. d/b/a SAJ Distributors, Rochester Drug Co-Operative, Inc., Meijer, Inc., Meijer Distribution, Inc. and Professional Drug Company, Inc. attended the mediation with their separate counsel.

32.     The initial session allowed the parties to lay the groundwork for future mediation sessions.  With Judge Coffman's guidance, the parties discussed administrative issues such as the mediation calendar and the content and due dates for mediation reports due to the Court on a bi-monthly basis and more substantive issues such as a discovery matter (ultimately resolved by this Court); and 4) and whether all plaintiffs, including opt-out groups, should participate in the mediation sessions (resolved in favor of their participation).

33.     Following the March 2013 mediation session, direct purchasers' mediation counsel drafted a report for Judge Collier summarizing the session and coordinated its submission with all other parties' mediation counsel.

34.     Consistent with the discussion at the first mediation session, Judge Coffman requested that the parties submit separate phased discovery plans on April 26, 2013.  These plans outlined discovery goals that the parties hoped would be accomplished by four deadlines – May

1, 2013, July 1, 2013, September 1, 2013, and November 1, 2013.  Reports on whether the goals were met or not were to be submitted to the Court in the bi-monthly mediation reports.  For the most part, direct purchasers met all of their discovery goals on the planned schedule.

35.     Judge Coffman directed that each plaintiff group, including direct purchasers, submit a demand letter to Defendants; the plaintiffs did so on May 16, 2013.  On May 31, 2013, Defendants transmitted a joint settlement offer to all plaintiffs.

36.     On June 27, 2013, at Judge Coffman's request, the parties submitted their respective positions on the impact of the Supreme Court's decision in *FTC v. Actavis, Inc.*, 570 U.S. ---, 133 S. Ct. 2223 (2013).

37.     The parties submitted amended strategic mediation plans on July 8, 2013, updating the detailed initial submission and providing additional information on the impact of the litigation history between the parties and their counsel and whether the case was mediation-worthy.

38.     Judge Coffman convened only plaintiffs' counsel in Cincinnati on July 30, 2013 and discussed multiple items, emphasizing various strategies and procedures that might enhance settlement opportunities.

39.     All parties met for the second time with Judge Coffman on September 10, 2013.

40.     After the mediation session, Judge Coffman laid out additional plans to move the mediation forward, including the making of and response to settlement demands and the possibility of summary jury trial.

42.     Direct purchasers were on track to comply with all of Judge Coffman's requests at the time settlement occurred.

14

43.     Direct purchasers submitted bi-monthly mediation reports to the Court in June, August, October, and December 2013 and in February, April, and June of 2014.  Before settlement, these were detailed documents, describing the progress of the mediation and direct purchasers' efforts to resolve the case.  Since settlement has been reached, direct purchasers have used the mediation reports to update the Court on the status of the settlement.

### C.     Settlement Negotiations

44.     Because of the open dialog fostered by the mediation process, the parties were in a good position when settlement talks began in earnest in November 2013.  Direct purchasers were fully prepared, having engaged in intensive discovery efforts and researched the strengths and weaknesses of the case.  The final negotiations were intense, requiring a lengthy in-person meeting and then numerous phone calls and communications to finalize the agreement.

45.     In the late fall of 2013, Defendants and direct purchasers reached an agreement in principle and eventually entered into a written settlement agreement.  All settlement discussions were at arm's length.  The parties never discussed the issue of attorney fees.  Only after executing the settlement agreement was executed, direct purchasers informed Defendants of the amount of attorney fees we would request.

### D.     Preliminary Approval

46.     Direct purchasers then began to draft the documents necessary to obtain preliminary approval of a class action settlement, including the motion for preliminary approval, memorandum, proposed order, distribution plan, notice plan, and notice materials.  Direct purchasers drafted the long form notice and short form notice from scratch, following the Federal Judicial Center's suggested format to enable class members to easily read and understand the notice.  If a class member understands the notice, he or she (or it) is more likely to make a claim.

15

47.     Direct purchasers also drafted claim forms for class members.  We have had experience with claim forms in other cases that were so complex and required such detailed data that they were difficult and indeed vexing to complete.  Direct purchasers aimed to make the Skelaxin claim form simple and easy to complete.

48.     Direct purchasers selected a settlement administrator and an escrow agent.  We are coordinating the printing of the notices and the claim forms, and the development of the website www.skelaxindirectsettlement.com that will provide class members with additional information.  Direct purchasers will continue to work closely with the settlement administrator to make sure that the website is accurate and user friendly, answers frequently asked questions, and contains links to all the important documents in the case.

49.     Direct purchasers ultimately moved for preliminary approval of the settlement on February 28, 2014.  The Court granted preliminary approval of the settlement from the bench on April 22, 2014, entering a formal order on April 30, 2014.  Pursuant to the order, the settlement administrator, Rust Consulting, Inc., will mail notice of the settlement to the class on June 16, 2014 (forty-five days from preliminary approval).  The deadline for members of the Class to opt out of or object to the settlement is July 31, 2014 (forty-five days from the notice date).

**IV.     Class Counsel's Litigation of the Case and Advancement of Funds**

50.     From the inception of this case, class counsel vigorously pursued this action, committing their services and resources and advancing substantial funds to prosecute the case. Class counsel also proceeded with skill and efficiency.  The attorneys who prosecuted this case have particular expertise in impeded generic competition cases on behalf of direct purchasers.  In fact, many have been involved in similar actions for a decade.  Class counsel's knowledge and experience in this specific kind of litigation were essential to prosecuting this case effectively and obtaining a positive result for the Class.

16

51.     Class counsel spent thousands of hours addressing complex issues regarding numerous highly technical issues, including: (1) regulatory issues arising out of the Hatch-Waxman Act; (2) patent law issues relevant to the patent litigation underlying the illegal agreement at the center of this case; (3) the scientific and production processes involved with inventing, manufacturing, and commercializing metaxalone; and (4) the FDA regulations applicable to reviewing and approving pharmaceutical products and new manufacturing facilities/processes involving low-solubility drug products like metaxalone.

52.     Defendants signaled early on that one of their defenses would be to challenge all plaintiffs' ability to demonstrate that any generic was ready and able to come to market. Plaintiffs responded by assigning a group of attorneys to mine the documents Defendants produced for evidence that Mutual would have been ready and willing to launch its version of generic metaxalone, had it not come to the "pay-for-delay" agreement with King.  Plaintiffs also thoroughly investigated King's understanding of the impact generic competition on its sales of Skelaxin and all plans it made to stave off that competition, including procuring invalid patents and submitting sham petitions to the FDA.

53.     Class counsel provided legal services to the class and advanced necessary litigation expenses with no assurance of repayment.  To date, class counsel have neither been paid for their efforts nor reimbursed for their out-of-pocket expenses.  Instead, their compensation and expense reimbursement were entirely contingent upon obtaining a recovery on behalf of the class.

54.     Class counsel alone bore the following risks: (a) that the matter would be dismissed *via* a Rule 12(b)(6) motion; (b) the difficulties of demonstrating that King's patent infringement lawsuits not only had no realistic expectation of success (*i.e.*, were objectively

baseless), but were also filed with the subjective intent of interfering with King's competition in the market for Skelaxin; (c) that the Court would find that King and Mutual's baseless petitions to the FDA were protected under the *Noerr-Pennington* doctrine; (d) that the jury could find that Sandoz's withdrawal from the market for generic metaxalone prevented direct purchasers from proving causation and damages; and (e) that the jury could find that, regardless of the allegedly baseless litigation, petitions, and the King-Mutual agreement not to compete, none of Mutual, Sandoz, CorePharma, or any other generic manufacturer were ready or able to enter the market for generic metaxalone prior to 2010.

55.    Class counsel pursued this action vigorously and resourcefully by collaborating and sharing some expenses with other plaintiff groups, *i.e.*, direct purchaser opt-out plaintiffs, indirect purchaser for resale plaintiffs, and end payor plaintiffs.  Specifically, the plaintiff groups shared expenses related to the document hosting database, thereby reducing the potential expenses to the class.

**V.    The Reasonableness of the Requested Fee and Expense Reimbursement**

56.    Although direct purchasers seek an award from this Court that uses the widely-accepted percentage-of-the-fund approach to arrive at a number for the award of fees in a common fund case such as this, one consideration in the reasonableness of such an award is a cross-check to the value of the services on an hourly basis.  To do this, we need, of course, a fair and reliable collation of the firms' aggregate time multiplied by reasonable rates for those professionals.[21] While the amounts in each of the firm's raw lodestar reports may be summed up to achieve a benchmark and to produce a calculation of the total hourly value, several measures

---

[21] The reported hours and stated hourly rates are used to provide a conservative estimate of the aggregate, cumulative value in the case.  This approach will not necessarily be binding for allocation of fees among the law firms.

18

need to be taken both during the litigation itself and afterwards to ensure the final reported amount is conservative.

57.     I used the following process to achieve this value.  First, during the course of the litigation, every lawyer and other professional was required to keep, and periodically submit, contemporaneous time records of the work performed and the time logged for that work. Second, I designated one lawyer (Mr. Joseph Vanek) to have as his personal responsibility collecting and reviewing time submissions to ensure that reports were timely and complete.  (Mr. Vanek and his office performed this thankless job admirably).  Third, upon settlement of the case every firm submitted to me an affidavit that attests to the time and expense records of that firm. Fourth, upon receiving these affidavits I caused all time submitted to be logged into a single, sortable database to enable me to review the time submissions of the professionals and their firms, side-by-side.  Fifth, I made adjustments (only downwards, never upwards) for time entries when, in my judgment, such adjustment was appropriate.  I must say that the need to do so was rare, and in any case 20/20 hindsight enables critique of time spent that is often unfair – the grace of a 9.9 Olympic dive seems effortless but is built on a lifetime of preparation.  Sixth, I adjusted the rates each firm stated in its lodestar report to ensure the rate was competitively low and generally uniform with other firms.  (In other words, because hourly rates vary widely firm-to-firm and lawyer-to-lawyer, I reduced hourly rates to round out edges in rates that, in comparison, appeared larger than others.  In doing this I am neither commenting on the reasonableness of the "usual" rate nor diminishing the value of any lawyer's services; instead I am making uniform the rates for professionals in order to provide this Court with a highly conservative, aggregate "value" of all services).  In making these rate adjustments, once again I ensure to the Court that the overall stated lodestar is less than that reported on the collective books and records of the

19

firms.  Seventh, I asked our independent auditor to recalculate the overall lodestar using the uniform rates for professional services to implement the downward hour rate adjustments.

58.     A summary report of the total, adjusted lodestar is attached to the report of Robert Zagrodny, the auditor retained by direct purchasers to vet the time and expenses submitted to this Court.  The auditor found that the hourly value of the services performed by all professionals on behalf of the direct purchasers and the class of direct purchasers in this matter to be in the range of $10,760,000.  This amount is conservative; it is about 6% less than the unadjusted collective, contemporaneously kept lodestar for all of the firms, reported at approximately $11,400,000.

59.     On the basis of this conservative hourly value of $10,760,000, the requested fee of $24,333,000 (*i.e.*, a percentage-of-the-fund using one-third of $73 million) results in the proposed fee being 2.26 times the hourly value of services.  This "multiplier" is within the range of reported decisions.

60.     The class representatives support, or do not oppose, counsel's request for fees and expenses; their declarations of support are attached to this declaration.[22]

61.     We also vetted the expenses submitted as part of direct purchasers' request that this Court approve an award of reasonable expenses.  First, I appointed Mr. Michael Roberts to oversee the incurrence and payment of expenses on behalf of the direct purchaser class (after my firm was initially doing so).  (Mr. Roberts and his firm performed this similarly thankless job admirably).  Second, for significant work projects, we received multiple bids from vendors.  Third, at the conclusion of the litigation, we hired an auditor, Robert Zagrodny, to review the expense records and ensure they are adequately documented and generally reasonable.  Mr.

---

[22] Three named plaintiffs have submitted declarations in support of the requested fees and expenses: Meijer, Inc. and Meijer Distribution, Inc. (Exh. A), Professional Drug Co., Inc. (Exh. B), and Rochester Drug Co-Operative, Inc. (Exh. C).  One class representative was recently purchased by Walgreens, an opt-out direct purchaser in this litigation, and thus has not taken an affirmative position on the fee request.

Zagrodny's report is submitted with this declaration.  On the basis of having reviewed our records, the report of Mr. Zagrodny, and my experience, I am of the opinion that the reasonable expenses incurred as of this date total approximately $540,000.[23]

62.     Direct purchasers also retained the services of two experts, who reviewed the time and expenses and rendered opinions as to the reasonableness of the rates and fees charged – Dean Hill Rivkin, the College of Law Distinguished Professor at the University of Tennessee College of Law in Knoxville, Tennessee and Ronald J. Berke, of Berke, Berke & Berke, a law firm founded in Chattanooga, Tennessee.[24]  These attorneys reviewed the rates charged, the work done, and the expenses incurred to ensure that all time and expenses comported with Sixth Circuit and Tennessee practice.  Both came to the conclusion that the requested fee and expenses were fair, reasonable, and appropriate.

I declare under penalties of perjury that the foregoing is true and correct to the best of my knowledge, information, opinion, and belief.

Dated: June 5, 2014                                    **/s/ Thomas M. Sobol**
                                                       Thomas M. Sobol

---

[23] Counsel for direct purchaser class plaintiffs contributed to a litigation fund to pay expenses such as expert and document database fees.  After paying the remaining outstanding expenses, the fund will likely have a surplus. Any such surplus will be reimbursed to the firms and accordingly reduce the total expenses sought by direct purchaser counsel here.  Counsel will provide a supplemental declaration with an updated expenses request and updated lodestar before the final fairness hearing scheduled for September 9, 2014.

[24] Counsel for direct purchaser class plaintiffs paid these experts and the auditor themselves and make no claim for reimbursement for such payments from the settlement fund.

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## at CHATTANOOGA

In Re: Skelaxin (Metaxalone)    )
Antitrust Litigation             )    **1:12-md-2343**
                                )    **Judge Curtis L. Collier**

## DECLARATION OF CYNTHIA ROGOWSKI IN SUPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION, AWARD OF ATTORNEY FEES AND EXPENSES, AND AWARDS TO NAMED PLAINTIFFS

I, Cynthia Rogowski, declare as follows:

1.    I am Senior Counsel for Meijer, Inc., and Meijer Distribution, Inc., (together "Meijer"), 2929 Walker Avenue, NW, Grand Rapids, MI 49544, a named plaintiff and certified class representative of the direct purchaser class in this consolidated antitrust class action.   As Senior Counsel of Meijer, I am authorized to execute this Declaration on behalf of Meijer.

2.    On behalf of Meijer, I and others at Meijer participated in and were kept abreast of the status and progress of this litigation through regular communication with Class counsel. Among other things, in this litigation Meijer has:

        a.    through various of its employees collected and produced documents and voluminous transactional data regarding its purchases of Skelaxin and other drugs, in response to Defendants' document requests;

        b.    through corporate designee Jeffrey D. Romano, Meijer's Branded Pharmaceutical Buyer and Director of Hospital Programs – Pharmacy, answered questions at a deposition taken by Defendants' attorneys on June 25, 2012 pursuant to Federal Rule of Civil Procedure 30(b)(6), for which Mr. Romano was ably prepared and represented by Class counsel,

including David P. Germaine of Vanek, Vickers & Masini, P.C. and Linda

P. Nussbaum of Grant & Eisenhofer, P.A.

3.      I and others at Meijer were also kept informed of settlement proceedings that

resulted in a $73 million cash settlement for the direct purchaser class. Meijer has been involved

in several actions alleging that generic drug competition was wrongfully delayed or suppressed,

and we believe the result achieved here is excellent. I understand that class members will receive

a share of the net settlement fund essentially in proportion to their purchases of Skelaxin during

the relevant time period. I believe that is fair and efficient. Meijer, therefore, strongly supports

the request for approval of the settlement.

4.      As a certified class representative, Meijer understands that the amount of

attorneys' fees is to be determined and awarded by the Court. However, had Meijer individually

retained counsel to represent Meijer in this complex litigation, it would have retained these same

attorneys on an hourly or contingency fee arrangement and would have been responsible for out-

of-pocket costs and expenses.

5.      I understand that the attorneys representing the direct purchaser class in this

litigation intend to submit a request to the Court for an award of attorneys' fees equal to one third

of the gross settlement amount, plus interest, and expenses.   Meijer supports this request, and

we believe that class counsel provided services of the highest quality.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _May 22, 2014_

_Cynthia Rogowski_
Cynthia Rogowski
Senior Counsel

2

# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

In Re: Skelaxin (Metaxalone)          )          1:12-md-2343
Antitrust Litigation                  )
                                      )          Judge Curtis L. Collier

### DECLARATION OF MARION PITALO IN SUPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION, AWARD OF ATTORNEY FEES AND EXPENSES, AND AWARDS TO NAMED PLAINTIFFS

I, Marion Pitalo, declare as follows:

1.     I was Manager and Board Member for Professional Drug Co., Inc., a named plaintiff and certified class representative of the direct purchaser class in this consolidated antitrust class action. Our company's headquarters was located in Biloxi, Mississippi.

2.     As a named plaintiff, Professional Drug Co., Inc. has actively participated in this action from its inception. Among other things, Professional Drug Co., Inc. has:

      a.     collected and produced documents and voluminous transactional data regarding its purchases and sales of Skelaxin in response to Defendants' document requests;

      b.     through two corporate designees myself and Roscoe Wilkerson, answered questions at a deposition taken by Defendants' attorneys in Biloxi, MS pursuant to Federal Rule of Civil Procedure 30(b)(6), for which Defendants were ably prepared and represented by Nathan Cohen of Kaye Scholer LLP.

3.     Through a corporate representation, I was kept apprised of the progress of this litigation by maintaining contact with and asking questions of our counsel Charles Barrett, Esq.

4.      I am familiar with and wholeheartedly support final approval of the settlement reached between the direct purchaser class and Defendants in this case in the amount of $73,000,000.00.  Professional Drug Co., Inc. has been involved in several actions alleging that generic drug competition was wrongfully delayed or suppressed.  Relative to those cases, this case seemed to me complicated, risky, and expensive.  Given then risks and the novelty of the theory of the lawsuit, the settlement in this matter is exceptional.

5.      I am familiar with and also support approval of the proposed plan to allocate the net settlement fund among the members of the direct purchaser class.  I understand that class members will receive a share of the net settlement fund essentially in proportion to their purchases of Skelaxin during the relevant time period.  I believe that is fair and efficient.

6.      I am familiar with and also support the application for attorney fees and reimbursement of expenses by counsel for the direct purchaser class.  I understand that counsel seeks a fee equal to one third of the gross settlement amount, plus interest, and expenses.  If Professional Drug Co., Inc. were pursuing this matter individually, that is a fee arrangement that I would have, in my capacity as a member of the board would have voted to approve with a private attorney.  I also believe that counsel for the direct purchaser class provided services of the highest quality.  I had the opportunity to experience and assess the quality of those services first hand, in particular during the exceptionally-thorough preparation received prior to the depositions listed above.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 23, 2014

MARION PITALO

2

# EXHIBIT C

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## at CHATTANOOGA

In Re: Skelaxin (Metaxalone)   )
Antitrust Litigation      )  **1:12-md-2343**
             )  **Judge Curtis L. Collier**

## DECLARATION OF LAURENCE F. DOUD, III
## IN SUPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, PLAN OF
## ALLOCATION, AWARD OF ATTORNEY FEES AND EXPENSES,
## AND AWARDS TO NAMED PLAINTIFFS

I, Laurence F. Doud, III, declare as follows:

1.  I am the Chief Executive Officer of Rochester Drug Co-Operative, Inc. ("RDC") a named plaintiff and certified class representative of the direct purchaser class in this consolidated antitrust class action.  Our company is the nation's 7th largest full-line drug wholesaler, located in Rochester, New York.

2.  As a named plaintiff, RDC has actively participated in this action from its inception.  Among other things, RDC has:

   a.  through various of its employees collected and produced tens of thousands of documents and lines of transactional data regarding its purchases of Skelaxin, in response to Defendants' document requests;

   b.  through corporate designees (myself and Shannon Case), answered questions at two depositions taken consecutively by Defendants' attorneys in Rochester, NY pursuant to Federal Rule of Civil Procedure 30(b)(6), for which we were ably represented by Peter Kohn of Faruqi & Faruqi, LLP.

3.      I was kept apprised of the progress of this litigation by maintaining contact with and asking questions of our retained counsel Peter Kohn of Faruqi & Faruqi, LLP and David F. Sorensen of Berger & Montague, P.C.

4.      I am familiar with and wholeheartedly support final approval of the settlement reached between the direct purchaser class and Defendants in this case in the amount of $73,000,000.  Over the years, RDC has brought several other cases alleging that generic drug competition was wrongfully delayed or suppressed.  Some of those cases have resolved, and some have not yet resolved.  I think the settlement in this matter is excellent.

5.      I am familiar with and also support approval of the proposed plan to allocate the net settlement fund among the members of the direct purchaser class.  I understand that class members will receive a share of the net settlement fund essentially in proportion to their purchases of Skelaxin during the relevant time period.  I believe that is fair.

6.      Regarding attorneys' fees and expenses, I understand that counsel seek a fee equal to one third of the gross settlement amount, plus interest, plus reimbursed expenses.  RDC supports that application.  If RDC were pursuing this matter individually, that is a fee arrangement that I would have, in my capacity as CEO of RDC, approved of with a private attorney.

7.      I also believe that Joseph Lukens and Peter Kohn of Faruqi & Faruqi, LLP and David Sorensen of Berger & Montague, P.C., was well as the other counsel for the direct purchaser class, provided services of the highest quality in this case.  I had the opportunity to experience and assess the quality of those services first hand, including during my deposition and during the periodic status reports I received about the progress of this litigation.

I declare under penalty of perjury that the foregoing is true and correct.

2

Dated: June 3, 2014

Laurence F. Doud, III

# EXHIBIT D

*Robert A. Zagrodny CPA, Inc*
**Certified Public Accountant**

# In Re Skelaxin
# (Metaxalone) Antitrust Litigation
MDL No. 2343

Agreed-Upon Procedures for submission
of time and expense reports

# April 30, 2014

**Table of Contents**

Report of Independent Accountant on Applying the Agreed-Upon Procedures:

Appendix A:    Agreed-Upon Procedures Performed by the Independent Accountant

Schedule B:    Compilation of Time & Expenses

Schedule C:    Timekeeper Info

Schedule D:    Time by Firm

Schedule E:    Time by Category

Schedule F:    Legend of Law Firms

57 North Main Street
Fall River, MA  02720

Tel (508) 677-4707
Fax (508) 676-3050
cap1049@aol.com

*Robert A. Zagrodny CPA, Inc.*
Certified Public Accountant

**Report of Independent Accountant on Applying the Agreed-Upon Procedures in Skelaxin (Metaxalone) Antitrust litigation**

To:     Hagens Berman Sobol Shapiro LLP

Re:     In Re Skelaxin (Metaxalone) Antitrust Litigation, MDL No. 2343

I have performed the agreed-upon procedures set forth by Hagens Berman Sobol Shapiro LLP (Hagens Berman) for the Skelaxin (Metaxalone) Antitrust Litigation to insure proper compliance by Counsel for the Direct Purchaser Class Plaintiffs.

I have conducted this agreed-upon procedures engagement in accordance with AT Section 201, Agreed-Upon Procedure Engagements (Statements on Standards for Attestation Engagements 10, as amended) of the American Institute of Certified Public Accountants. The sufficiency of these procedures is solely the responsibility of Counsel for the Direct Purchaser Class Plaintiffs and ultimately the Court. Consequently, I make no representation regarding whether the procedures described in Appendix A are sufficient, either for the purpose for which this report has been requested or for any other purpose.

Hagens Berman set forth the guidelines regarding the submission and compensability of time and expenses. My procedures, and the results of those procedures, are set forth in the attached Appendix A to this report.

I was not engaged to, and did not conduct an examination of the time and expenses, the objective of which would be the expression of an opinion. Accordingly, I do not express such an opinion. Had I performed additional procedures, other matters may have come to my attention that would have been reported to you.

This report is intended solely for the information of the Court and the respective law firms, and is not intended to be and should not be used by anyone other than these specified parties.

*Robert A Zagrodny CPA, INC.*

Robert A Zagrodny CPA, Inc.
Fall River, MA
Massachusetts License Number 2
June 3, 2014

---

57 North Main Street
Fall River, MA 02720

Tel (508) 677-4707
Fax (508) 676-3050
cap1040@aol.com

# Appendix A

# In Re Skelaxin (Metaxalone) Antitrust Litigation
## Agreed-Upon Procedures Performed
## By The Independent Accountant

Agreed-Upon Procedures to be performed by the Independent Accountant:

## Time

Hagens Berman set forth the guidelines regarding the submission and compensability of common benefit time and expenses. Participating Counsel who seek to recover court-awarded common benefit attorneys' fees and expenses in connection with this litigation shall keep a daily contemporaneous record of their time and expenses, noting with specificity the amount of time and particular activity. For the purpose of coordinating these guidelines and tracking submissions, Lead Counsel will initially review all submissions of time and expense reports and employ a Certified Public Accountant to compile the time and expense submission.

I compiled the summary of time reports by category since inception of the case through April 30, 2014, see Schedule B:

All time was kept and recorded in at least quarter-hour and usually six-minute increments and noted with reasonable specificity the amount of time and the particular activity. I compiled the time reported by all the respective firms which included the date, hours to bill, uniform rate, extension of time and a narrative of the time spent.

The total time was compiled at the uniform rates based on the position and the years of experience. See schedule B, Schedule C, Schedule D and Schedule E for detail and summary of time.

## Uniform Rates

| | Partner/Members | | |
|---|---|---|---|
| Up to 20 years | $575 | | |
| More than 20 years | $650 | | |
| More than 30 years | $750 | | |

| | Associates | | |
|---|---|---|---|
| Up to 4 years | $350 | | |
| More than 4 years | $425 | | |
| More than 7 years | $500 | | |

| | Senior Counsel | Attorney | Staff Attorney | Of Counsel |
|---|---|---|---|---|
| Rate | $550 | $500 | $300 | $300 |

| | Paralegal | | |
|---|---|---|---|
| Up to 4 years | $150 | | |
| More than 4 years | $200 | | |

| | Contract | Summer Associate | IT Support |
|---|---|---|---|
| Rate | $300 | $225 | $57.50 |

See Accountant's Agreed-Upon Procedures Report

- 3 -

**Travel Expenses (taken from the Hagens Berman Travel Policy)**

**Permitted Travel – No Pre-Approved Required**

- Court-ordered appearances, arguing motions or substantive issues at court hearings, first chair taking depositions of defendant witnesses or taking or defending expert depositions, prepping expert for testifying, mediation, and lead counsel case strategy/planning session.

## Air Travel

- Air travel should be booked at the most competitive coach rate.
- 7 days minimum booking suggested for the lowest rates.
- Consider refundable vs. non-refundable ticketing based on the likelihood that the trip may be cancelled or rescheduled.

> **My Findings:**
> Proper documentation for all airfare was included and appeared reasonable. Air and train travel was charged at the coach rate.

### Hotel

- Hotels should be booked at standard room rate for moderate to mid-range hotels.
- If stay is intended to be longer than 10 days, please explore other extended stay options for lower rates.
- Hagens Berman does not reimburse for incidentals (i.e. in room mini-bar, movies or snacks).

> **My Findings:**
> Proper documentation for all hotel accommodations was included and appeared reasonable. I did not note any unauthorized expenditures.

### Ground Transportation

- If a rental car is required and it is more cost effective than a taxi, please book the most appropriate rental car size based on the number of people traveling (i.e. compact or mid-size vehicle).
- Hagens Berman carries its own General Liability Insurance policy covering rented autos so car insurance offered by the rental car company is <u>not </u>needed and should be declined.
- Refuel the vehicle prior to returning it to the rental car company to minimize costs.

> **My Findings:**
> Proper documentation for all ground transportation was included and did not include any luxury automobiles. I did not note any unauthorized expenditures.

See Accountant's Agreed-Upon Procedures Report

**Meals**

- Meal limits are set as follows which <u>includes</u> beverages, tax and gratuity.  This is NOT a "Per Diem Allowance" where you get reimbursed for meals whether you used it or not.  Any expenses over the limits will be considered a personal expense and will not be reimbursed.

    - Breakfast: $15        • Lunch $25        • Dinner $65

    **My Findings:**
    Proper documentation for meals was included.

**Other Expenses**

**Reproduction Cost**
**FedEx/Messenger/Postage**
**Telephone/Teleconferences/Fax**
**Computer Research**
**Filing Fees/Other Court Cost**
**Court Transcripts**
**Deposition Transcripts**
**Miscellaneous Case Cost**
**Expert/Consulting Fees**
**Discovery Expenses**
**Mediation Expenses**

The Agreed upon procedures for the above expenses included the review of all supporting documentation, invoices, logs, receipts, related back-up and/or contemporaneous records to support the expenditures.

**My Findings:**
The above noted expenses were properly documented with supporting back-up. No exceptions were noted.

See Accountant's Agreed-Upon Procedures Report
- 5 -

# Schedule B

**Skelaxin Antitrust Litigation**
# Compilation of Time & Expenses
### Schedule B - Inception through April 2014

| | A01 Fund | Barrett | Berger | Faruqi | Fine | Grant | Hagens |
|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | |
| **Income** | | | | | | | |
| **01 · Time** | | | | | | | |
| 01.01 · Investigations,  Fact.&Research | 0.00 | 100.00 | 38,595.00 | 1,002,240.00 | 6,332.50 | 304,590.00 | 56,235.00 |
| 01.02 · Discovery | 0.00 | 109,540.00 | 712,236.50 | 270,305.00 | 3,325.00 | 763,730.00 | 1,200,590.50 |
| 01.03 · Pleadings, Briefs and Pretrial | 0.00 | 4,430.00 | 372,780.00 | 400,292.50 | 49,395.00 | 134,175.00 | 521,231.25 |
| 01.04 · Court  Appearances | 0.00 | 1,000.00 | 73,580.00 | 15,860.00 | 0.00 | 1,925.00 | 184,827.50 |
| 01.05 · Settlement | 0.00 | 2,450.00 | 93,687.50 | 29,090.00 | 0.00 | 9,850.00 | 255,118.75 |
| 01.06 · Litigation Strategy & Analysis | 0.00 | 31,140.00 | 38,879.00 | 125,975.00 | 3,287.50 | 48,860.00 | 85,537.50 |
| 01.07 · Class Certification | 0.00 | 0.00 | 65,347.50 | 79,960.00 | 0.00 | 21,725.00 | 170,946.25 |
| 01.09 · Case Management & Admin. | 0.00 | 0.00 | 1,440.00 | 7,520.00 | 180.00 | 34,995.00 | 80,262.75 |
| 01.10 · Expert Work | 0.00 | 0.00 | 15,120.00 | 12,415.00 | 0.00 | 1,875.00 | 5,626.25 |
| **Total 01 · Time** | 0.00 | 148,660.00 | 1,411,665.50 | 1,943,657.50 | 62,520.00 | 1,321,725.00 | 2,560,375.75 |
| **2 · Expenses** | | | | | | | |
| E02 · Reproduction cost | 0.00 | 0.00 | 6,212.15 | 2,566.32 | 191.30 | 2,221.48 | 3,094.69 |
| E03 · FedEx/Messenger/Postage | 22.92 | 1,840.97 | 83.54 | 181.68 | 0.00 | 188.62 | 2,875.09 |
| E04 · Travel - airfare,train,car,taxi | 70.00 | 2,057.79 | 10,997.49 | 5,390.39 | 0.00 | 2,306.43 | 21,516.85 |
| E05 · Hotel | 0.00 | 185.37 | 270.00 | 528.38 | 0.00 | 444.68 | 8,321.64 |
| E06 · Meals | 298.58 | 53.35 | 1,094.01 | 327.76 | 0.00 | 218.09 | 5,954.74 |
| E08 · Telephone/Teleconferences/Fax | 3,539.79 | 0.00 | 140.64 | 376.20 | 2.54 | 54.82 | 2,683.07 |
| E10 · Computer research | 0.00 | 0.00 | 19,186.52 | 1,116.64 | 175.22 | 2,118.07 | 7,489.54 |
| E11 · Filing fees/ Other court cost | 5.00 | 0.00 | 480.40 | 648.75 | 562.00 | 204.31 | 299.00 |
| E13 · Court transcripts | 211.15 | 1,794.00 | 1,600.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| E14 · Deposition transcripts | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| E15 · Miscellaneous case cost | 0.00 | 121.23 | 0.00 | 24.00 | 0.00 | 0.00 | 1,357.59 |
| E16 · Experts/Consulting fees | 228,977.59 | 9,787.80 | 4,016.00 | 0.00 | 0.00 | 20,874.00 | 0.00 |
| E18 · Discovery expenses | 37,753.25 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| E19 · Mediation expense | 11,272.15 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total 2 · Expenses** | 282,150.43 | 15,840.51 | 44,080.75 | 11,160.12 | 930.58 | 28,630.50 | 53,592.21 |
| **Total Income** | 282,150.43 | 164,500.51 | 1,455,746.25 | 1,954,817.62 | 63,450.58 | 1,350,355.50 | 2,613,967.96 |
| **Gross Profit** | 282,150.43 | 164,500.51 | 1,455,746.25 | 1,954,817.62 | 63,450.58 | 1,350,355.50 | 2,613,967.96 |
| **Net Ordinary Income** | 282,150.43 | 164,500.51 | 1,455,746.25 | 1,954,817.62 | 63,450.58 | 1,350,355.50 | 2,613,967.96 |
| **Other Income/Expense** | | | | | | | |
| **Other Income** | | | | | | | |
| **95 · Law Firm Advanced Deposit** | | | | | | | |
| A01 · Litigation Fund Assessments | 0.00 | 25,000.00 | 35,000.00 | 45,000.00 | 0.00 | 45,000.00 | 35,000.00 |
| A95 · Litigation Fund Assessments-Dep | 0.00 | -25,000.00 | -35,000.00 | -45,000.00 | 0.00 | -45,000.00 | -35,000.00 |
| **Total 95 · Law Firm Advanced Deposit** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Other Income** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Net Other Income** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Net Income** | 282,150.43 | 164,500.51 | 1,455,746.25 | 1,954,817.62 | 63,450.58 | 1,350,355.50 | 2,613,967.96 |

**Skelaxin Antitrust Litigation**
# Compilation of Time & Expenses
### Schedule B - Inception through April 2014

| | NastLaw | Radice | Roberts | Sperling | Taus | Vanek | TOTAL |
|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | |
| **Income** | | | | | | | |
| **01 · Time** | | | | | | | |
| 01.01 · Investigations, Fact.&Research | 14,475.00 | 25,300.00 | 26,847.50 | 10,612.50 | 63,272.50 | 19,532.50 | 1,568,132.50 |
| 01.02 · Discovery | 190,565.00 | 391,818.75 | 722,507.50 | 4,012.50 | 336,747.50 | 173,855.00 | 4,879,233.25 |
| 01.03 · Pleadings, Briefs and Pretrial | 56,955.00 | 47,037.50 | 136,275.00 | 6,187.50 | 130,182.50 | 42,610.00 | 1,901,551.25 |
| 01.04 · Court Appearances | 104,200.00 | 0.00 | 25,820.00 | 0.00 | 0.00 | 0.00 | 407,212.50 |
| 01.05 · Settlement | 381,820.00 | 11,931.25 | 715.00 | 1,762.50 | 0.00 | 36,615.00 | 823,040.00 |
| 01.06 · Litigation Strategy & Analysis | 42,015.00 | 16,662.50 | 45,840.00 | 3,000.00 | 14,417.50 | 30,872.50 | 486,486.50 |
| 01.07 · Class Certification | 0.00 | 23,725.00 | 22,480.00 | 0.00 | 48,032.50 | 0.00 | 433,166.25 |
| 01.09 · Case Management & Admin. | 9,940.00 | 0.00 | 33,800.00 | 0.00 | 5,135.00 | 42,442.50 | 215,715.25 |
| 01.10 · Expert Work | 0.00 | 10,493.75 | 0.00 | 0.00 | 0.00 | 0.00 | 45,530.00 |
| **Total 01 · Time** | 799,970.00 | 526,968.75 | 1,014,285.00 | 25,575.00 | 597,787.50 | 346,877.50 | 10,760,067.50 |
| **2 · Expenses** | | | | | | | |
| E02 · Reproduction cost | 328.40 | 326.10 | 20.25 | 0.00 | 1,129.00 | 133.60 | 16,223.29 |
| E03 · FedEx/Messenger/Postage | 147.86 | 0.00 | 65.50 | 0.00 | 96.54 | 278.63 | 5,781.35 |
| E04 · Travel - airfare,train,car,taxi | 23,594.69 | 671.40 | 6,149.72 | 0.00 | 1,400.49 | 5,872.06 | 80,027.31 |
| E05 · Hotel | 4,107.98 | 0.00 | 3,225.57 | 0.00 | 0.00 | 750.91 | 17,834.53 |
| E06 · Meals | 2,349.09 | 0.00 | 331.11 | 0.00 | 28.96 | 312.32 | 10,968.01 |
| E08 · Telephone/Teleconferences/Fax | 0.00 | 0.00 | 10.00 | 0.00 | 0.00 | 0.00 | 6,806.58 |
| E10 · Computer research | 2,607.52 | 1,276.60 | 545.36 | 0.00 | 1,981.38 | 902.96 | 37,399.81 |
| E11 · Filing fees/ Other court cost | 653.80 | 0.00 | 828.00 | 0.00 | 0.00 | 18.00 | 3,699.26 |
| E13 · Court transcripts | 565.27 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,170.42 |
| E14 · Deposition transcripts | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,237.44 | 1,237.44 |
| E15 · Miscellaneous case cost | 159.29 | 0.00 | 0.00 | 0.00 | 0.00 | 120.00 | 1,782.11 |
| E16 · Experts/Consulting fees | 21,530.16 | 0.00 | 21,530.16 | 0.00 | 0.00 | 0.00 | 306,715.71 |
| E18 · Discovery expenses | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 37,753.25 |
| E19 · Mediation expense | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 11,272.15 |
| **Total 2 · Expenses** | 56,044.06 | 2,274.10 | 32,705.67 | 0.00 | 4,636.37 | 9,625.92 | 541,671.22 |
| **Total Income** | 856,014.06 | 529,242.85 | 1,046,990.67 | 25,575.00 | 602,423.87 | 356,503.42 | 11,301,738.72 |
| **Gross Profit** | 856,014.06 | 529,242.85 | 1,046,990.67 | 25,575.00 | 602,423.87 | 356,503.42 | 11,301,738.72 |
| **Net Ordinary Income** | 856,014.06 | 529,242.85 | 1,046,990.67 | 25,575.00 | 602,423.87 | 356,503.42 | 11,301,738.72 |
| **Other Income/Expense** | | | | | | | |
| **Other Income** | | | | | | | |
| **95 · Law Firm Advanced Deposit** | | | | | | | |
| A01 · Litigation Fund Assessments | 45,000.00 | 25,000.00 | 45,000.00 | 0.00 | 45,000.00 | 45,000.00 | 390,000.00 |
| A95 · Litigation Fund Assessments-Dep | -45,000.00 | -25,000.00 | -45,000.00 | 0.00 | -45,000.00 | -45,000.00 | -390,000.00 |
| **Total 95 · Law Firm Advanced Deposit** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Other Income** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Net Other Income** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Net Income** | 856,014.06 | 529,242.85 | 1,046,990.67 | 25,575.00 | 602,423.87 | 356,503.42 | 11,301,738.72 |

# Schedule C

## Skelaxin Antitrust Litigation
## Timekeeper Info
### Schedule C

| Last Name | First Name | Firm | Uniform Rate | Postion | Years In Practice |
|---|---|---|---|---|---|
| Barrett | Charles | Barrett Law Firm | $500.00 | Attorney | 16 |
| Garrison | Dawn | Barrett Law Firm | $200.00 | Paralegal | 20 |
| Caplan | Zachary | Berger & Montague | $350.00 | Associate | 3 |
| Cohen | Bart | Berger & Montague | $650.00 | Partner | 25 |
| Cook | Jim | Berger & Montague | $150.00 | Paralegal | |
| Coslett | Caitlin | Berger & Montague | $425.00 | Associate | 5 |
| Cramer | Eric | Berger & Montague | $650.00 | Partner | 21 |
| Curley | Andrew | Berger & Montague | $500.00 | Associate | 11 |
| Daniels | Isabel | Berger & Montague | $425.00 | Associate | 5 |
| Frohberg | Patricia | Berger & Montague | $200.00 | Paralegal | 20 |
| Kim | Miledys | Berger & Montague | $200.00 | Paralegal | 5 |
| Langer | DA | Berger & Montague | $500.00 | Associate | 15 |
| Matteo | Shawn | Berger & Montague | $200.00 | Paralegal | 12 |
| McCollum | Sandy | Berger & Montague | $57.50 | IT | |
| Parker | Phyllis | Berger & Montague | $575.00 | Partner | 19 |
| Schalman-Bergen | Sarah | Berger & Montague | $425.00 | Associate | 7 |
| Simons | Daniel | Berger & Montague | $500.00 | Associate | 13 |
| Sorensen | David | Berger & Montague | $650.00 | Partner | 25 |
| Stock | Arthur | Berger & Montague | $650.00 | Partner | 24 |
| Twersky | Michael | Berger & Montague | $350.00 | Associate | 3 |
| Urban | Nick | Berger & Montague | $425.00 | Associate | 5 |
| Valance | Nikos | Berger & Montague | $300.00 | Contract | 4 |
| Werwinski | Diane | Berger & Montague | $200.00 | Paralegal | 17 |
| Clark | Neill | Faruqi & Faruqi | $500.00 | Associate | 16 |
| Jenks | Jessica | Faruqi & Faruqi | $200.00 | Paralegal | 5 |
| Kohn | Peter | Faruqi & Faruqi | $650.00 | Partner | 22 |
| Lukens | Joseph | Faruqi & Faruqi | $650.00 | Partner | 22 |
| Mercado | Daniela | Faruqi & Faruqi | $200.00 | Paralegal | 8 |
| Peskin | Aaron | Faruqi & Faruqi | $425.00 | Associate | 7 |
| Sampson | Miriam | Faruqi & Faruqi | $200.00 | Paralegal | 15 |
| Schwartz | Richard | Faruqi & Faruqi | $500.00 | Associate | 10 |
| Silva | Elizabeth | Faruqi & Faruqi | $350.00 | Associate | 2 |
| Smith | Luke | Faruqi & Faruqi | $350.00 | Associate | 4 |
| Westby | Sarah | Faruqi & Faruqi | $350.00 | Associate | 3 |
| Williams | Joy | Faruqi & Faruqi | $200.00 | Paralegal | 8 |
| Zylstra | Ken | Faruqi & Faruqi | $650.00 | Partner | 23 |
| Blakeslee | Nancy | Fine, Kaplan And Black, RPC | $200.00 | Paralegal | 37 |
| Costa | Paul | Fine, Kaplan And Black, RPC | $575.00 | Member | 13 |
| Liebenberg | Roberta | Fine, Kaplan And Black, RPC | $750.00 | Member | 39 |
| Perelman | Donald | Fine, Kaplan And Black, RPC | $750.00 | Member | 34 |
| Ricciardi | Louis | Fine, Kaplan And Black, RPC | $350.00 | Associate | 21 |
| Aldinger | Cathy | Grant & Eisenhofer | $200.00 | Paralegal | 13 |
| Barile | Peter | Grant & Eisenhofer | $550.00 | Senior Counsel | 15 |
| Beal | Valisity | Grant & Eisenhofer | $200.00 | Paralegal | 8 |
| Campbell | Tracy | Grant & Eisenhofer | $300.00 | Staff Attorney | 11 |
| Carpio | Alexandra | Grant & Eisenhofer | $200.00 | Paralegal | 10 |
| DeMuth | Bradley | Grant & Eisenhofer | $500.00 | Associate | 15 |
| Haggerty | Sara | Grant & Eisenhofer | $200.00 | Paralegal | 7 |
| Happer | C. Kirby | Grant & Eisenhofer | $300.00 | Staff Attorney | 18 |
| Leyh | Meghan | Grant & Eisenhofer | $200.00 | Paralegal | 9 |
| Nevers | Carolynn | Grant & Eisenhofer | $200.00 | Paralegal Manager | 21 |
| Nussbaum | Linda | Grant & Eisenhofer | $750.00 | Partner | 37 |
| Radice | John | Grant & Eisenhofer | $550.00 | Senior Counsel | 15 |
| Schwaiger | Susan | Grant & Eisenhofer | $500.00 | Associate | 22 |
| Steinfeld | Adam | Grant & Eisenhofer | $500.00 | Associate | 17 |
| Wittman | Ronald | Grant & Eisenhofer | $200.00 | Paralegal | 15 |
| Yusupova | Anna | Grant & Eisenhofer | $200.00 | Paralegal | 8 |
| Barker | Michael | Hagens Berman | $200.00 | Paralegal | 7 |
| Barnes | Lauren | Hagens Berman | $575.00 | Partner | 10 |
| Bruns | Cameron | Hagens Berman | $200.00 | Paralegal | 5 |
| Curseaden | John | Hagens Berman | $300.00 | Staff Attorney | 20 |
| Falcon | Linaris | Hagens Berman | $200.00 | Paralegal | 10 |
| Gunther | Steve | Hagens Berman | $200.00 | Paralegal | 5 |
| Johnson | Kristen | Hagens Berman | $575.00 | Partner | 8 |
| Nalven | David | Hagens Berman | $650.00 | Partner | 29 |
| Notargiacomo | Ed | Hagens Berman | $575.00 | Partner | 20 |
| Sobol | Thomas | Hagens Berman | $750.00 | Partner | 31 |
| Swiec | Nicole | Hagens Berman | $200.00 | Paralegal | 10 |

**Skelaxin Antitrust Litigation**
# Timekeeper Info
### Schedule C

| Last Name | First Name | Firm | Uniform Rate | Postion | Years In Practice |
|---|---|---|---|---|---|
| Bell | Emily | NastLaw | $150.00 | Paralegal | 1 |
| Burns | Erin | NastLaw | $500.00 | Associate | 12 |
| Ford | Michael | NastLaw | $150.00 | Paralegal | 1 |
| Nast | Dianne | NastLaw | $750.00 | Partner | 38 |
| Reid | Matthew | NastLaw | $350.00 | Associate | 3 |
| Roberts | Cathryn | NastLaw | $150.00 | Paralegal | 3 |
| Torrey | Ryan | NastLaw | $150.00 | Paralegal | 1 |
| Kane | Eva | Radice Law Firm | $300.00 | Of Counsel | 21 |
| Pickle | Kenneth | Radice Law Firm | $350.00 | Associate | 4 |
| Radice | John | Radice Law Firm | $575.00 | Partner | 11 |
| Eager | Jana | Roberts Law Firm | $350.00 | Associate | 3 |
| Egner | Stephanie | Roberts Law Firm | $500.00 | Associate | 10 |
| Josephson | Debra | Roberts Law Firm | $575.00 | Partner | 12 |
| Roberts | Mike | Roberts Law Firm | $650.00 | Partner | 24 |
| Sweat | Elizabeth | Roberts Law Firm | $200.00 | Paralegal | 7 |
| Wells | Jennifer | Roberts Law Firm | $350.00 | Associate | 4 |
| Slater | Paul | Sperling & Slater, P.C. | $750.00 | Partner | 44 |
| Buckley | Doug | Taus Cebulash & Landau | $225.00 | Summer Associate | 0 |
| Cebulash | Brett | Taus Cebulash & Landau | $650.00 | Partner | 21 |
| Greaves | Miles | Taus Cebulash & Landau | $350.00 | Associate | 2 |
| Hennigan | Nathan | Taus Cebulash & Landau | $225.00 | Summer Associate | 0 |
| Landau | Kevin | Taus Cebulash & Landau | $575.00 | Partner | 18 |
| Tamoshunas | Archana | Taus Cebulash & Landau | $575.00 | Partner | 15 |
| Taus | Barry | Taus Cebulash & Landau | $650.00 | Partner | 25 |
| Bjork | John | Vanek Vickers & Masini | $350.00 | Associate | 4 |
| Ethier | Michelle | Vanek Vickers & Masini | $350.00 | Associate | 4 |
| Germaine | David | Vanek Vickers & Masini | $575.00 | Partner | 12 |
| Goering | Martin | Vanek Vickers & Masini | $500.00 | Associate | 8 |
| Johnson | Alexandra | Vanek Vickers & Masini | $350.00 | Associate | 1 |
| Parrott-Sheffer | Chelsey | Vanek Vickers & Masini | $150.00 | Paralegal | 4 |
| Rodriguez | Alberto | Vanek Vickers & Masini | $425.00 | Associate | 6 |
| Ruksakiati | Scott | Vanek Vickers & Masini | $575.00 | Partner | 20 |
| Vanek | Joseph | Vanek Vickers & Masini | $650.00 | Partner | 26 |

# Schedule D

**Skelaxin Antitrust Litigation**
**Time by Firm**

Schedule D - Inception through April 2014

| | Barrett | Berger | Faruqi | Fine | Grant | Hagens | NastLaw | Radice | Roberts | Sperling | Taus | Vanek | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Lukens, Joseph | 0.00 | 0.00 | 935,415.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 935,415.00 |
| Barnes, Lauren | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 662,256.25 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 662,256.25 |
| Notargiacomo, Ed | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 647,231.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 647,231.50 |
| Josephson, Debra | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 603,060.00 | 0.00 | 0.00 | 0.00 | 603,060.00 |
| Sobol, Thomas | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 457,987.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 457,987.50 |
| Nast, Dianne | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 438,075.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 438,075.00 |
| Curseaden, John | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 354,900.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 354,900.00 |
| Landau, Kevin | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 334,362.50 | 0.00 | 334,362.50 |
| Sorensen, David | 0.00 | 333,515.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 333,515.00 |
| Campbell, Tracy | 0.00 | 0.00 | 0.00 | 0.00 | 314,100.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 314,100.00 |
| Burns, Erin | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 309,850.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 309,850.00 |
| Silva, Elizabeth | 0.00 | 0.00 | 298,760.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 298,760.00 |
| Egner, Stephanie | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 259,150.00 | 0.00 | 0.00 | 0.00 | 259,150.00 |
| Steinfeld, Adam | 0.00 | 0.00 | 0.00 | 0.00 | 258,250.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 258,250.00 |
| Happer, C. Kirby | 0.00 | 0.00 | 0.00 | 0.00 | 258,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 258,000.00 |
| Kane, Eva | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 240,375.00 | 0.00 | 0.00 | 0.00 | 0.00 | 240,375.00 |
| Nalven, David | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 226,070.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 226,070.00 |
| Kohn, Peter | 0.00 | 0.00 | 219,245.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 219,245.00 |
| Nussbaum, Linda | 0.00 | 0.00 | 0.00 | 0.00 | 205,275.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 205,275.00 |
| Urban, Nick | 0.00 | 172,592.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 172,592.50 |
| Parker, Phyllis | 0.00 | 0.00 | 170,545.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 170,545.00 |
| Pickle, Kenneth | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 157,937.50 | 0.00 | 0.00 | 0.00 | 0.00 | 157,937.50 |
| Curley, Andrew | 0.00 | 157,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 157,000.00 |
| Stock, Arthur | 0.00 | 146,900.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 146,900.00 |
| Schwartz, Richard | 0.00 | 0.00 | 143,950.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 143,950.00 |
| Taus, Barry | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 140,855.00 | 0.00 | 140,855.00 |
| Barrett, Charles | 139,920.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 139,920.00 |
| Smith, Luke | 0.00 | 0.00 | 133,805.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 133,805.00 |
| Bruns, Cameron | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 131,760.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 131,760.00 |
| Radice, John | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 128,656.25 | 0.00 | 0.00 | 0.00 | 0.00 | 128,656.25 |
| Bjork, John | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 127,400.00 | 127,400.00 |
| Coslett, Caitlin | 0.00 | 117,980.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 117,980.00 |
| DeMuth, Bradley | 0.00 | 0.00 | 0.00 | 0.00 | 112,900.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 112,900.00 |
| Clark, Neill | 0.00 | 0.00 | 100,550.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100,550.00 |
| Tamoshunas, Archana | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 91,655.00 | 0.00 | 91,655.00 |
| Westby, Sarah | 0.00 | 0.00 | 83,510.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 83,510.00 |
| Twersky, Michael | 0.00 | 80,290.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 80,290.00 |
| Germaine, David | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 77,625.00 | 77,625.00 |
| Barile, Peter | 0.00 | 0.00 | 0.00 | 69,740.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 69,740.00 |
| Eager, Jana | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 66,465.00 | 0.00 | 0.00 | 0.00 | 66,465.00 |
| Wells, Jennifer | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 64,960.00 | 0.00 | 0.00 | 0.00 | 64,960.00 |
| Vanek, Joseph | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 55,315.00 | 55,315.00 |
| Barker, Michael | 0.00 | 0.00 | 0.00 | 0.00 | 49,050.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 49,050.00 |
| Caplan, Zachary | 0.00 | 48,930.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 48,930.00 |
| Schwaiger, Susan | 0.00 | 0.00 | 0.00 | 0.00 | 43,650.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 43,650.00 |
| Schalman-Bergen, Sarah | 0.00 | 43,647.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 43,647.50 |
| Werwinski, Diane | 0.00 | 43,420.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 43,420.00 |
| Reid, Matthew | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 38,080.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 38,080.00 |
| Liebenberg, Roberta | 0.00 | 0.00 | 0.00 | 36,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 36,000.00 |
| Cramer, Eric | 0.00 | 34,775.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 34,775.00 |
| Goering, Martin | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 33,150.00 | 33,150.00 |
| Radice, John (Grant) | 0.00 | 0.00 | 0.00 | 0.00 | 27,390.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 27,390.00 |
| Frohbergh, Patricia | 0.00 | 26,440.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 26,440.00 |
| Slater, Paul | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 25,575.00 | 0.00 | 0.00 | 25,575.00 |
| Swiec, Nicole | 0.00 | 0.00 | 0.00 | 0.00 | 24,358.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 24,358.00 |
| Johnson, Alexandra | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20,965.00 | 20,965.00 |
| Greaves, Miles | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 18,935.00 | 0.00 | 18,935.00 |
| Ricciardi, Louis | 0.00 | 0.00 | 0.00 | 18,900.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 18,900.00 |
| Peskin, Aaron | 0.00 | 0.00 | 18,572.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 18,572.50 |
| Yusupova, Anna | 0.00 | 0.00 | 0.00 | 0.00 | 16,740.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 16,740.00 |
| Parrott-Sheffer, Chelsey | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 16,470.00 | 16,470.00 |
| Roberts, Mike | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15,990.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15,990.00 |

| | Barrett | Berger | Faruqi | Fine | Grant | Hagens | NastLaw | Radice | Roberts | Sperling | Taus | Vanek | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Ruksakiati, Scott | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15,295.00 | 15,295.00 |
| Valance, Nikos | 0.00 | 13,950.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 13,950.00 |
| Garrison, Dawn | 8,740.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8,740.00 |
| Haggerty, Sara | 0.00 | 0.00 | 0.00 | 0.00 | 8,620.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8,620.00 |
| Buckley, Doug | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8,460.00 | 0.00 | 8,460.00 |
| Bell, Emily | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8,355.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8,355.00 |
| Matteo, Shawn | 0.00 | 7,980.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 7,980.00 |
| Simons, Daniel | 0.00 | 6,300.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6,300.00 |
| Williams, Joy | 0.00 | 0.00 | 5,720.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,720.00 |
| Sweat, Elizabeth | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,660.00 | 0.00 | 0.00 | 0.00 | 4,660.00 |
| Wittman, Ronald | 0.00 | 0.00 | 0.00 | 0.00 | 4,540.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,540.00 |
| Langer, DA | 0.00 | 4,100.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,100.00 |
| Costa, Paul | 0.00 | 0.00 | 0.00 | 3,910.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,910.00 |
| Falcon, Linaris | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,650.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,650.00 |
| Hennigan, Nathan | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,195.00 | 0.00 | 3,195.00 |
| Blakeslee, Nancy | 0.00 | 0.00 | 0.00 | 2,960.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,960.00 |
| Roberts, Cathryn | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,625.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,625.00 |
| Zylstra, Ken | 0.00 | 0.00 | 2,210.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,210.00 |
| Johnson, Kristen | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,012.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,012.50 |
| Jenks, Jessica | 0.00 | 0.00 | 1,780.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,780.00 |
| Torrey, Ryan | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,545.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,545.00 |
| Kim, Miledys | 0.00 | 1,460.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,460.00 |
| Cook, Jim | 0.00 | 1,449.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,449.00 |
| Ford, Michael | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,440.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,440.00 |
| Beal, Valisity | 0.00 | 0.00 | 0.00 | 0.00 | 1,380.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,380.00 |
| Gunther, Steve | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,100.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,100.00 |
| Perelman, Donald | 0.00 | 0.00 | 0.00 | 750.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 750.00 |
| Rodriguez, Alberto | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 552.50 | 552.50 |
| Nevers, Carolynn | 0.00 | 0.00 | 0.00 | 0.00 | 440.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 440.00 |
| Aldinger, Cathy | 0.00 | 0.00 | 0.00 | 0.00 | 420.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 420.00 |
| Cebulash, Brett | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 325.00 | 0.00 | 325.00 |
| Cohen, Bart | 0.00 | 195.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 195.00 |
| Carpio, Alexandra | 0.00 | 0.00 | 0.00 | 0.00 | 160.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 160.00 |
| Daniels , Isabel | 0.00 | 127.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 127.50 |
| Leyh, Meghan | 0.00 | 0.00 | 0.00 | 0.00 | 120.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 120.00 |
| Ethier, Michelle | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 105.00 | 105.00 |
| Sampson, Miriam | 0.00 | 0.00 | 100.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00 |
| McCollum, Sandy | 0.00 | 69.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 69.00 |
| Mercado, Daniela | 0.00 | 0.00 | 40.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 40.00 |
| **TOTAL** | 148,660.00 | 1,411,665.50 | 1,943,657.50 | 62,520.00 | 1,321,725.00 | 2,560,375.75 | 799,970.00 | 526,968.75 | 1,014,285.00 | 25,575.00 | 597,787.50 | 346,877.50 | 10,760,067.50 |

# Schedule E

**Skelaxin Antitrust Litigation**
**Time by Category**
Schedule E - Inception through April 2014

| | 01 (Investigations, Factual & Legal Research) | 02 (Discovery) | 03 (Pleadings, Briefs and Pretrial) | 04 (Court Appearances) | 05 (Settlement) | 06 (Litigation Strategy and Analysis) | 07 (Class Certification) | 09 (Case Management and Administration) | 10 (Expert Total) | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| Aldinger, Cathy | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 420.00 | 0.00 | 420.00 |
| Barile, Peter | 0.00 | 58,025.00 | 10,725.00 | 0.00 | 0.00 | 935.00 | 0.00 | 55.00 | 0.00 | 69,740.00 |
| Barker, Michael | 4,350.00 | 22,800.00 | 12,950.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8,950.00 | 0.00 | 49,050.00 |
| Barnes, Lauren | 2,300.00 | 183,827.50 | 204,843.75 | 53,877.50 | 149,873.75 | 35,937.50 | 17,106.25 | 12,333.75 | 2,156.25 | 662,256.25 |
| Barrett, Charles | 100.00 | 103,800.00 | 4,350.00 | 1,000.00 | 2,450.00 | 28,220.00 | 0.00 | 0.00 | 0.00 | 139,920.00 |
| Beal, Valisity | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,380.00 | 0.00 | 1,380.00 |
| Bell, Emily | 0.00 | 180.00 | 0.00 | 0.00 | 840.00 | 0.00 | 0.00 | 7,335.00 | 0.00 | 8,355.00 |
| Bjork, John | 3,500.00 | 65,275.00 | 23,065.00 | 0.00 | 10,990.00 | 19,530.00 | 490.00 | 4,550.00 | 0.00 | 127,400.00 |
| Blakeslee, Nancy | 660.00 | 0.00 | 2,120.00 | 0.00 | 0.00 | 0.00 | 0.00 | 180.00 | 0.00 | 2,960.00 |
| Bruns, Cameron | 2,000.00 | 49,200.00 | 30,700.00 | 0.00 | 3,800.00 | 0.00 | 6,200.00 | 39,860.00 | 0.00 | 131,760.00 |
| Buckley, Doug | 8,460.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8,460.00 |
| Burns, Erin | 13,200.00 | 137,200.00 | 28,800.00 | 3,100.00 | 111,250.00 | 16,200.00 | 0.00 | 100.00 | 0.00 | 309,850.00 |
| Campbell, Tracy | 174,510.00 | 136,680.00 | 0.00 | 0.00 | 0.00 | 2,910.00 | 0.00 | 0.00 | 0.00 | 314,100.00 |
| Caplan, Zachary | 0.00 | 46,130.00 | 2,275.00 | 0.00 | 525.00 | 0.00 | 0.00 | 0.00 | 0.00 | 48,930.00 |
| Carpio, Alexandra | 0.00 | 0.00 | 160.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 160.00 |
| Cebulash, Brett | 0.00 | 0.00 | 325.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 325.00 |
| Clark, Neill | 89,050.00 | 5,150.00 | 4,650.00 | 0.00 | 100.00 | 1,350.00 | 250.00 | 0.00 | 0.00 | 100,550.00 |
| Cohen, Bart | 0.00 | 0.00 | 0.00 | 195.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 195.00 |
| Cook, Jim | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,449.00 | 0.00 | 0.00 | 0.00 | 1,449.00 |
| Coslett, Caitlin | 0.00 | 52,062.50 | 49,682.50 | 0.00 | 15,555.00 | 467.50 | 212.50 | 0.00 | 0.00 | 117,980.00 |
| Costa, Paul | 172.50 | 0.00 | 3,450.00 | 0.00 | 0.00 | 287.50 | 0.00 | 0.00 | 0.00 | 3,910.00 |
| Cramer, Eric | 30,550.00 | 0.00 | 2,340.00 | 715.00 | 0.00 | 650.00 | 0.00 | 0.00 | 520.00 | 34,775.00 |
| Curley, Andrew | 4,150.00 | 60,300.00 | 66,350.00 | 0.00 | 1,900.00 | 20,850.00 | 3,450.00 | 0.00 | 0.00 | 157,000.00 |
| Curseaden, John | 0.00 | 354,375.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 525.00 | 0.00 | 354,900.00 |
| Daniels , Isabel | 0.00 | 127.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 127.50 |
| DeMuth, Bradley | 26,950.00 | 55,800.00 | 18,250.00 | 0.00 | 0.00 | 2,100.00 | 5,900.00 | 3,900.00 | 0.00 | 112,900.00 |
| Eager, Jana | 735.00 | 60,130.00 | 3,990.00 | 0.00 | 105.00 | 1,505.00 | 0.00 | 0.00 | 0.00 | 66,465.00 |
| Egner, Stephanie | 14,900.00 | 194,200.00 | 34,350.00 | 0.00 | 150.00 | 12,500.00 | 1,550.00 | 1,500.00 | 0.00 | 259,150.00 |
| Ethier, Michelle | 105.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 105.00 |
| Falcon, Linaris | 0.00 | 1,000.00 | 1,300.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,350.00 | 0.00 | 3,650.00 |
| Ford, Michael | 0.00 | 180.00 | 0.00 | 0.00 | 570.00 | 0.00 | 0.00 | 690.00 | 0.00 | 1,440.00 |
| Frohbergh, Patricia | 2,800.00 | 15,000.00 | 4,040.00 | 4,600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 26,440.00 |
| Garrison, Dawn | 0.00 | 5,740.00 | 80.00 | 0.00 | 0.00 | 2,920.00 | 0.00 | 0.00 | 0.00 | 8,740.00 |
| Germaine, David | 6,957.50 | 53,992.50 | 7,130.00 | 0.00 | 7,015.00 | 747.50 | 460.00 | 1,322.50 | 0.00 | 77,625.00 |
| Goering, Martin | 0.00 | 32,450.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 0.00 | 0.00 | 33,150.00 |
| Greaves, Miles | 12,845.00 | 5,670.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 420.00 | 0.00 | 18,935.00 |
| Gunther, Steve | 0.00 | 0.00 | 700.00 | 0.00 | 0.00 | 0.00 | 0.00 | 400.00 | 0.00 | 1,100.00 |
| Haggerty, Sara | 60.00 | 0.00 | 420.00 | 0.00 | 0.00 | 40.00 | 0.00 | 8,100.00 | 0.00 | 8,620.00 |
| Happer, C. Kirby | 11,400.00 | 246,600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 258,000.00 |
| Hennigan, Nathan | 1,912.50 | 0.00 | 1,282.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,195.00 |
| Jenks, Jessica | 700.00 | 0.00 | 1,080.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,780.00 |
| Johnson, Alexandra | 0.00 | 15,855.00 | 0.00 | 0.00 | 0.00 | 5,110.00 | 0.00 | 0.00 | 0.00 | 20,965.00 |
| Johnson, Kristen | 0.00 | 0.00 | 2,012.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,012.50 |
| Josephson, Debra | 11,212.50 | 417,622.50 | 77,855.00 | 19,320.00 | 460.00 | 27,370.00 | 20,930.00 | 28,290.00 | 0.00 | 603,060.00 |
| Kane, Eva | 19,425.00 | 199,275.00 | 16,275.00 | 0.00 | 0.00 | 1,575.00 | 3,825.00 | 0.00 | 0.00 | 240,375.00 |
| Kim, Miledys | 0.00 | 1,260.00 | 0.00 | 0.00 | 200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,460.00 |
| Kohn, Peter | 30,745.00 | 69,160.00 | 43,940.00 | 8,190.00 | 5,525.00 | 46,085.00 | 6,435.00 | 2,600.00 | 6,565.00 | 219,245.00 |

**Skelaxin Antitrust Litigation**
**Time by Category**
Schedule E - Inception through April 2014

| | (Investigations, Factual & Legal Research) | (Discovery) | (Pleadings, Briefs and Pretrial) | (Court Appearances) | (Settlement) | (Litigation Strategy and Analysis) | (Class Certification) | (Case Management and Administration) | (Expert Total) | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| Landau, Kevin | 28,117.50 | 226,837.50 | 63,307.50 | 0.00 | 0.00 | 2,070.00 | 9,430.00 | 4,600.00 | 0.00 | 334,362.50 |
| Langer, DA | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,100.00 | 0.00 | 0.00 | 4,100.00 |
| Leyh, Meghan | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 120.00 | 0.00 | 120.00 |
| Liebenberg, Roberta | 3,000.00 | 2,625.00 | 27,375.00 | 0.00 | 0.00 | 3,000.00 | 0.00 | 0.00 | 0.00 | 36,000.00 |
| Lukens, Joseph | 405,275.00 | 93,925.00 | 303,940.00 | 7,670.00 | 23,465.00 | 58,305.00 | 36,985.00 | 0.00 | 5,850.00 | 935,415.00 |
| Matteo, Shawn | 0.00 | 2,840.00 | 2,600.00 | 100.00 | 1,000.00 | 0.00 | 0.00 | 1,440.00 | 0.00 | 7,980.00 |
| McCollum, Sandy | 0.00 | 69.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 69.00 |
| Mercado, Daniela | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 40.00 | 0.00 | 40.00 |
| Nalven, David | 23,790.00 | 63,635.00 | 77,415.00 | 0.00 | 15,015.00 | 13,260.00 | 27,365.00 | 4,420.00 | 1,170.00 | 226,070.00 |
| Nast, Dianne | 1,275.00 | 14,925.00 | 26,100.00 | 101,100.00 | 268,575.00 | 25,725.00 | 0.00 | 375.00 | 0.00 | 438,075.00 |
| Nevers, Carolynn | 0.00 | 0.00 | 40.00 | 0.00 | 0.00 | 0.00 | 0.00 | 400.00 | 0.00 | 440.00 |
| Notargiacomo, Ed | 3,507.50 | 378,764.00 | 121,785.00 | 0.00 | 27,370.00 | 1,840.00 | 111,665.00 | 0.00 | 2,300.00 | 647,231.50 |
| Nussbaum, Linda | 38,325.00 | 58,275.00 | 69,600.00 | 0.00 | 4,350.00 | 29,025.00 | 3,825.00 | 0.00 | 1,875.00 | 205,275.00 |
| Parker, Phyllis | 0.00 | 159,045.00 | 11,500.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 170,545.00 |
| Parrott-Sheffer, Chelsey | 0.00 | 4,080.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 12,390.00 | 0.00 | 16,470.00 |
| Perelman, Donald | 750.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 750.00 |
| Peskin, Aaron | 3,995.00 | 12,240.00 | 2,337.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 18,572.50 |
| Pickle, Kenneth | 4,725.00 | 147,262.50 | 0.00 | 0.00 | 0.00 | 5,600.00 | 350.00 | 0.00 | 0.00 | 157,937.50 |
| Radice, John | 1,150.00 | 45,281.25 | 30,762.50 | 0.00 | 11,931.25 | 9,487.50 | 19,550.00 | 0.00 | 10,493.75 | 128,656.25 |
| Radice, John (Grant) | 4,345.00 | 0.00 | 12,650.00 | 1,925.00 | 0.00 | 7,700.00 | 0.00 | 770.00 | 0.00 | 27,390.00 |
| Reid, Matthew | 0.00 | 38,080.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 38,080.00 |
| Ricciardi, Louis | 1,750.00 | 700.00 | 16,450.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 18,900.00 |
| Roberts, Cathryn | 0.00 | 0.00 | 2,055.00 | 0.00 | 0.00 | 90.00 | 0.00 | 480.00 | 0.00 | 2,625.00 |
| Roberts, Mike | 0.00 | 0.00 | 4,680.00 | 6,500.00 | 0.00 | 3,835.00 | 0.00 | 975.00 | 0.00 | 15,990.00 |
| Rodriguez, Alberto | 0.00 | 382.50 | 0.00 | 0.00 | 0.00 | 170.00 | 0.00 | 0.00 | 0.00 | 552.50 |
| Ruksakiati, Scott | 0.00 | 0.00 | 0.00 | 0.00 | 15,295.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15,295.00 |
| Sampson, Miriam | 0.00 | 0.00 | 100.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00 |
| Schalman-Bergen, Sarah | 0.00 | 6,417.50 | 35,020.00 | 0.00 | 0.00 | 1,997.50 | 212.50 | 0.00 | 0.00 | 43,647.50 |
| Schwaiger, Susan | 4,500.00 | 37,600.00 | 0.00 | 0.00 | 0.00 | 650.00 | 0.00 | 900.00 | 0.00 | 43,650.00 |
| Schwartz, Richard | 103,400.00 | 5,550.00 | 0.00 | 0.00 | 0.00 | 600.00 | 34,400.00 | 0.00 | 0.00 | 143,950.00 |
| Silva, Elizabeth | 224,630.00 | 48,825.00 | 19,215.00 | 0.00 | 0.00 | 4,200.00 | 1,890.00 | 0.00 | 0.00 | 298,760.00 |
| Simons, Daniel | 0.00 | 0.00 | 2,100.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,200.00 | 6,300.00 |
| Slater, Paul | 10,612.50 | 4,012.50 | 6,187.50 | 0.00 | 1,762.50 | 3,000.00 | 0.00 | 0.00 | 0.00 | 25,575.00 |
| Smith, Luke | 102,620.00 | 14,840.00 | 15,155.00 | 0.00 | 0.00 | 1,190.00 | 0.00 | 0.00 | 0.00 | 133,805.00 |
| Sobol, Thomas | 20,287.50 | 135,675.00 | 69,525.00 | 130,950.00 | 55,800.00 | 34,500.00 | 6,750.00 | 4,500.00 | 0.00 | 457,987.50 |
| Sorensen, David | 975.00 | 26,650.00 | 131,885.00 | 65,585.00 | 60,125.00 | 11,375.00 | 26,520.00 | 0.00 | 10,400.00 | 333,515.00 |
| Steinfeld, Adam | 44,500.00 | 167,750.00 | 20,750.00 | 0.00 | 5,500.00 | 5,500.00 | 12,000.00 | 2,250.00 | 0.00 | 258,250.00 |
| Stock, Arthur | 0.00 | 130,325.00 | 16,250.00 | 0.00 | 325.00 | 0.00 | 0.00 | 0.00 | 0.00 | 146,900.00 |
| Sweat, Elizabeth | 0.00 | 1,660.00 | 140.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,860.00 | 0.00 | 4,660.00 |
| Swiec, Nicole | 0.00 | 11,314.00 | 0.00 | 0.00 | 3,260.00 | 0.00 | 1,860.00 | 7,924.00 | 0.00 | 24,358.00 |
| Tamoshunas, Archana | 3,162.50 | 80,385.00 | 1,437.50 | 0.00 | 0.00 | 5,002.50 | 1,552.50 | 115.00 | 0.00 | 91,655.00 |
| Taus, Barry | 8,775.00 | 23,855.00 | 63,830.00 | 0.00 | 0.00 | 7,345.00 | 37,050.00 | 0.00 | 0.00 | 140,855.00 |
| Torrey, Ryan | 0.00 | 0.00 | 0.00 | 0.00 | 585.00 | 0.00 | 0.00 | 960.00 | 0.00 | 1,545.00 |
| Twersky, Michael | 0.00 | 74,935.00 | 4,550.00 | 0.00 | 0.00 | 0.00 | 805.00 | 0.00 | 0.00 | 80,290.00 |
| Urban, Nick | 0.00 | 90,185.00 | 39,567.50 | 425.00 | 11,177.50 | 1,190.00 | 30,047.50 | 0.00 | 0.00 | 172,592.50 |
| Valance, Nikos | 0.00 | 13,950.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 13,950.00 |
| Vanek, Joseph | 8,970.00 | 1,820.00 | 12,415.00 | 0.00 | 3,315.00 | 4,615.00 | 0.00 | 24,180.00 | 0.00 | 55,315.00 |
| Wells, Jennifer | 0.00 | 48,895.00 | 15,260.00 | 0.00 | 0.00 | 630.00 | 0.00 | 175.00 | 0.00 | 64,960.00 |

**Skelaxin Antitrust Litigation**
**Time by Category**
Schedule E - Inception through April 2014

| | (Investigations, Factual & Legal Research) | (Discovery) | (Pleadings, Briefs and Pretrial) | (Court Appearances) | (Settlement) | (Litigation Strategy and Analysis) | (Class Certification) | (Case Management and Administration) | (Expert Total) | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| **Werwinski, Diane** | 120.00 | 32,940.00 | 4,620.00 | 1,960.00 | 2,880.00 | 900.00 | 0.00 | 0.00 | 0.00 | 43,420.00 |
| **Westby, Sarah** | 39,375.00 | 20,615.00 | 9,275.00 | 0.00 | 0.00 | 14,245.00 | 0.00 | 0.00 | 0.00 | 83,510.00 |
| **Williams, Joy** | 240.00 | 0.00 | 600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,880.00 | 0.00 | 5,720.00 |
| **Wittman, Ronald** | 0.00 | 0.00 | 1,580.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,960.00 | 0.00 | 4,540.00 |
| **Yusupova, Anna** | 0.00 | 3,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 13,740.00 | 0.00 | 16,740.00 |
| **Zylstra, Ken** | 2,210.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,210.00 |
| **TOTAL** | 1,568,132.50 | 4,879,233.25 | 1,901,551.25 | 407,212.50 | 823,040.00 | 486,486.50 | 433,166.25 | 215,715.25 | 45,530.00 | 10,760,067.50 |

# Schedule F

# Schedule F
## Legend of Law Firms

| | |
|---|---|
| **Barrett** | **BARRETT LAW GROUP, P.A.**<br>Charles F. Barrett, Esq.<br>6518 Highway 100, Suite 210<br>Nashville, TN 37205<br>Tel: (615) 515-3393 |
| **Berger** | **BERGER & MONTAGUE P.C.**<br>David F. Sorensen<br>Andrew Coyne Curley<br>1622 Locust Street<br>Philadelphia, PA 19103<br>Tel: (215) 875-3000 |
| **Faruqi** | **FARUQI & FARUQI LLP**<br>Peter Kohn<br>Joseph T. Lukens<br>101 Greenwood Avenue<br>Jenkintown, PA 19046<br>Tel: (215) 277-5770 |
| **Fine** | **FINE KAPLAN & BLACK, R.P.C.**<br>Roberta D. Liebenberg<br>1835 Market Street, 28th Floor<br>Philadelphia, PA 19103<br>Tel: (215) 567-6565 |
| **Grant** | **GRANT & EISENHOFFER, P.A.**<br>Linda P. Nussbaum<br>Jay W. Eisenhofer<br>485 Lexington Avenue<br>New York, NY 10017<br>Tel: (646) 722-8504 |
| **Hagens** | **HAGENS BERMAN SOBOL SHAPIRO LLP**<br>Thomas M. Sobol<br>Lauren G. Barnes<br>55 Cambridge Parkway, Suite 301<br>Cambridge, MA 02142<br>Tel: (617) 482-3700 |
| **NastLaw** | **NASTLAW LLC**<br>Dianne M. Nast<br>Erin C. Burns<br>1101 Market Street, Suite 2801<br>Philadelphia, PA 19107<br>Tel: (215) 923-9300 |

| | |
|---|---|
| **Radice** | **RADICE LAW FIRM, PC**<br>John Radice<br>34 Sunset Blvd<br>Long Beach, NJ 08008<br>Tel: (646) 386-7688 |
| **Roberts** | **ROBERTS LAW FIRM, P.A.**<br>Michael L. Roberts<br>Debra Gaw Josephson<br>20 Rahling Circle<br>Little Rock, AR 72223<br>Tel: (501) 821-5575 |
| **Sperling** | **SPERLING & SLATER**<br>Paul E. Slater<br>55 West Monroe Street, Suite 3200<br>Chicago, IL 60603<br>Tel: (312) 641-3200 |
| **Taus** | **TAUS CEBULASH & LANDAU LLP**<br>Barry Taus<br>Kevin Landau<br>Taus, Cebulash & Landau PC<br>80 Maiden Lane, Suite 1204<br>New York, NY 10038<br>Tel: (646) 873-7654 |
| **Vanek** | **VANEK, VICKERS & MASINI, P.C.**<br>Joseph M. Vanek<br>David P. Germaine<br>55 West Monroe Street, Suite 3500<br>Chicago, IL 60603<br>Tel: (312) 224-1500 |

# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

RON KIZER, on behalf of himself and all ) 
others similarly situated, )
 )
Plaintiff, )
 )   1:11-CV-38
v. )
 )   Chief Judge Curtis L. Collier
SUMMIT PARTNERS, L.P., )
 )
Defendant. )

## MEMORANDUM

On June 27, 2012, the Court held a Final Fairness Hearing to resolve two pending matters: (1) whether the Court would grant final approval of the parties' settlement agreement and (2) if so, what attorney's fees to award to Plaintiff's counsel.[1] The Court heard oral arguments from both Plaintiff's counsel and Defendant's counsel at the hearing. Plaintiff's counsel also submitted a brief in support of final approval of the preliminarily approved class settlement agreement (Court File No. 30) as well as an accompanying affidavit (Court File No. 30-1) and supplement to the affidavit (Court File No. 31).

After considering the relevant case law, counsel's arguments, and the filings in this case, the Court **GRANTS** final approval of the parties' settlement agreement (Court File No. 23). The Court also **APPROVES** Plaintiff's counsel's request for attorney's fees and a service fee to the class representative.

---

[1] The parties originally submitted a joint motion for settlement (Court File No. 23). In a memorandum and order issued on May 7, 2012, this Court granted in part the parties' motion (Court File Nos. 28, 29). In particular, this Court certified the proposed settlement class, preliminarily approved the settlement agreement, approved the form and manner of notice to the settlement class, and scheduled a Final Fairness Hearing. The Court reserved ruling on the parties' request for final approval of the settlement agreement, which is now one of the pending issues before this Court.

## I.      FACTS AND PROCEDURAL HISTORY

### A.      Complaint and Basis of Action[2]

On February 22, 2011, Plaintiff filed a Class Action Complaint against Defendant in the United States District Court for the Eastern District of Tennessee. In the Complaint, Plaintiff alleges Defendant violated the Worker Adjustment and Retraining Notification Act of 1988 (the "WARN Act"), 29 U.S.C. §§ 2101 *et seq.*, under a "single employer" theory of liability (Court File No. 1 ¶ 1). Although the Complaint states Plaintiff and similarly situated employees nominally worked for or reported to Incentium, LLC, it also alleges Defendant owned, completely controlled, and ordered the shutdown of Incentium, making it an employer for purposes of the WARN Act (*id.*). The Complaint alleges Defendant employed 100 or more employees who worked at least 4,000 hours per week within the United States (*id.* ¶ 33).

The Complaint further alleges Defendant effected a "Plant Closing" as defined by the WARN ACT on or about February 9, 2011, at the facility located at 328 Cherokee Boulevard, Chattanooga, Tennessee (the "Facility") (*id.* ¶¶ 5, 20). As explained in the Complaint, the Plant Closing resulted in a loss of employment for at least 50 employees and at least 33% of the employees at the Facility, excluding part-time employees (*id.* ¶ 35). The Complaint states Plaintiff and other similarly situated employees at the Facility were terminated without cause on or about February 9, 2011, and none received at least sixty-days advance written notice of the termination as required by the WARN Act (*id.* ¶¶ 21-23, 39-40). Moreover, the Complaint alleges Defendant

---

[2] The factual background included in the Court's May 7, 2012 Memorandum and Order (Court File No. 28) is incorporated herein.

2

failed to pay Plaintiff and the other similarly situated employees wages and benefits that accrued during the sixty days following their terminations without notice (*id.* ¶¶ 24, 31). In the Complaint, Plaintiff seeks certification of a class pursuant to Fed. R. Civ. P. 23(a) and 23(b) that would include himself and any similarly situated former employee terminated without cause from the Facility on or about February 9, 2011, or who suffered a loss of employment as the reasonably foreseeable consequence of the plant closing (*id.* ¶ 25).

### B.  Settlement Agreement

On December 7, 2011, before the Court could rule on Plaintiff's motion for class certification, the parties filed a joint motion for settlement (Court File No. 23).[3] In the motion, the parties explained they had executed a settlement agreement. The parties requested that the Court preliminarily approve their settlement agreement, approve the form and manner of notice to the proposed settlement class, schedule a Final Fairness Hearing for the final consideration and approval of the settlement, and, finally, approve the settlement.

On April 18, 2012, the Court held a hearing on the parties' joint motion for settlement. In an order and memorandum issued May 7, 2012, the Court granted preliminary approval of the settlement agreement (Court File Nos. 28, 29). The Court also certified the proposed settlement class, approved the form and manner of notice to the proposed settlement class, and scheduled the Final Fairness Hearing.

On June 21, 2012, Plaintiff filed a brief and affidavit stating that notices were mailed to the last known address of each member of the settlement class on May 9, 2012 (Court File Nos. 30, 30-

---

[3] Plaintiff had previously filed a motion for class certification (Court File No. 13). Defendant did not oppose certification of the class in this action (Court File No. 22).

1). The objection and opt-out deadline included in the notice was June 18, 2012. Of the ninety-three notices mailed, only eight of the ninety-three were returned undelivered as addressed. In a second mailing attempt, only one notice of the remaining eight was returned. At the Final Fairness Hearing, Plaintiff's counsel stated that it had since obtained an address for the one remaining settlement class member and, to date, that notice had not been returned as undelivered. The parties contend no objections or requests to opt-out have been submitted by any of the settlement class members.

The settlement agreement provides for a total award amount of $275,000 (Court File No. 23-1). The class representative will receive $3,000 for his services rendered in this action. The balance of $272,000, minus one-third attorney's fees, will be divided among the settlement class members on a pro rata basis according to their final pay rates.

## II.   FAIRNESS HEARING

Ordinarily a fairness hearing involves the issue of class certification. This Court, however, made an initial determination regarding certification of the proposed settlement class when the parties sought preliminary approval of the settlement agreement. This Court considered the relevant case law and the parties' arguments, and determined certification of Plaintiff's proposed settlement class was appropriate pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) (Court File Nos. 28, 29). The Court now reaffirms its decision for the reasons stated in its May 7, 2012 Memorandum and Order (*see id.*).

A court may approve a proposed settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). *See Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 903 (S.D. Ohio 2001) (citation omitted) (noting the standard for approval is "whether the

4

proposed settlement is fair, adequate, and reasonable under the circumstances, and whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued"). In determining whether to grant final approval of a settlement, a court should consider the following factors:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

### A.      Risk of Fraud or Collusion

At the hearing for preliminary approval of the settlement, the parties explained to the Court the nature of their negotiations. The parties informed the Court that they had engaged in extensive arms' length, good faith negotiations over several months prior to reaching a settlement. At that time, the Court concluded there was no indication of fraud or collusion. The Court reaches this same conclusion after hearing from the parties at the Final Fairness Hearing.

### B.      Complexity, Expense and Likely Duration of the Litigation

As noted by Plaintiff, the parties have litigated this case for approximately 16 months. They have already engaged in extensive discovery, but additional discovery would be needed if the parties were to proceed to trial. Dispositive motions would likely need to be filed and resolved by the Court. Also, the trial itself would be both costly and time consuming. Plaintiff anticipates that, if the parties had not settled, the parties would be embroiled in years of litigation (i.e. also taking into account the appeals process).

### C.      Amount of Discovery Engaged in by the Parties

5

As noted above, the parties have engaged in extensive discovery, although more discovery would be necessary if the case was to proceed to trial. In an affidavit, Plaintiff asserts the parties engaged in informal discovery and the exchange of initial disclosures (Court File No. 30-1). The parties worked from May to August 2011 to further determine the proper scope of discovery. Prior to reaching the settlement, Plaintiff claims Defendant had already produced thousands of pages of documents, which Plaintiff subsequently reviewed. Plaintiff also claims it had sought to depose four of Defendant's employees. Based on the assertions made in Plaintiff's affidavit, it appears both parties conducted sufficient discovery to determine the main legal issues as well as the strength of their positions; this discovery then informed the parties' decision to settle.

### D.       Likelihood of Success on the Merits

Both parties contend they would have had strong cases had they proceeded to trial. If Plaintiff prevailed at trial, Plaintiff would be able to recover approximately $700,000. Plaintiff claims the greatest challenge it would face if it proceeded with litigation, however, would be establishing its "single employer" theory of liability. Plaintiff argues that, under this theory, it must demonstrate that a parent company, such as Defendant, is liable for a subsidiary's WARN Act violations when the two entities constitute a single business enterprise. *See In re APA Transp. Corp. Consol. Litig.*, 541 F.3d 233, 242-44 (3d Cir. 2008). To make this determination, the Court must consider the following factors: "(i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations." 20 C.F.R. § 639.3(a)(2). Plaintiff claims some recent decisions in similar WARN Act cases have been unfavorable to Plaintiff's position. Plaintiff also notes that Defendant has asserted several defenses that may make Plaintiff's success at trial uncertain.

6

Accordingly, in light of these concerns regarding the strength of Plaintiff's case, the settlement agreement--which provides for one-third of the potential full recovery for the settlement class--is reasonable.

### E.    Opinions of Class Counsel and Class Representatives

At both the hearing for preliminary approval of the settlement and the Final Fairness Hearing, the Court observed that Plaintiff and the class were represented by experienced and competent counsel. Lankenau and Miller has been appointed class counsel in 75 WARN Act actions and participated in over 160 cases (Court File No. 30-1). Plaintiff is also represented by counsel from the Gardner Firm, which is currently involved in 30 WARN Act cases. Finally, Branstetter, Stranch, & Jennings has experience in numerous complex class actions. Plaintiff's counsel contends the settlement agreement is fair and reasonable, and no concerns have been raised by the class representative.

### F.    Reaction of Absent Class Members

The parties have mailed notices to all ninety-three settlement class members. According to Plaintiff's affidavit, only one notice remained undelivered (Court File No. 30-1). At the Final Fairness Hearing, Plaintiff's counsel updated the Court that the one remaining notice was mailed to a new address and, to date, has not been returned. No objections or requests to opt-out have been filed by any of the settlement class members.

### G.    Public Interest

Although this case will not directly impact the public, the public does have an interest in the resolution and settlement of cases in a fair and reasonable manner. The anticipated complexity and time-consuming nature of this case would also presumably drain limited judicial resources.

Each factor above weighs in favor of final approval of the settlement. Therefore, for all of the reasons already stated, this Court **GRANTS** final approval of the parties' settlement agreement.

## III.    ATTORNEY'S FEES

Next, the Court must determine what amount of attorney's fees to award to Plaintiff's counsel. Counsel contends attorney's fees in the amount of one-third (33.3%) of the settlement amount, after a service fee is paid to Plaintiff, would be fair and reasonable. The total award would be $90,666.67. The Sixth Circuit has expressed that, in common fund cases, the only requirement is that the award of attorney's fees "be reasonable under the circumstances." *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (quoting *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). A district court's determination of an attorney's fee award is given great deference so long as the court adequately explains its reasoning. *Id.* A court's explanation should include a discussion of the following factors:

> (1) the value of the benefit rendered to the plaintiff class . . .;
> (2) the value of the services on an hourly basis;
> (3) whether the services were undertaken on a contingent fee basis;
> (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;
> (5) the complexity of the litigation; and
> (6) the professional skill and standing of counsel involved on both sides.

*Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996).

In its brief, Plaintiff's counsel highlights the general rule that "fee awards in common fund cases generally are calculated as a percentage of the fund created, with the percentages awarded typically ranging from 20 to 50 percent of the common fund created." *Wise v. Popoff*, 835 F. Supp. 977, 980 (E.D. Mich. 1993) (approving a fee award that would be the equivalent of 45.3% of the

8

total fund). Plaintiff's counsel cites to several other cases in support of its position. *See, e.g.*, *In re Rio Hair Naturalizer Prods. Liab. Litig.*, MDL No. 1055, 1996 WL 780512, at *16 (E.D. Mich. Dec. 20, 1996) (counsel sought award of 25%); *In re Cincinnati Gas & Elec. Co. Sec. Litig.*, 643 F. Supp. 148, 150 (S.D. Ohio 1986) (counsel sought award of approximately 18%); *In re Dun*, 130 F.R.D. at 372 (counsel sought award of 15%).

The Court concludes that each of the *Bowling* factors are satisfied in this case. First, Plaintiff will receive significant value from the settlement. Although Plaintiff could potentially receive $700,000 if counsel prevailed at trial, the complex legal and factual issues of this case make success at trial uncertain. Therefore, the settlement of $275,000 is reasonable, and counsel played a significant role in securing this settlement for Plaintiff and the settlement class. Second, Plaintiff's counsel contends the value Plaintiff has received far exceeds what Plaintiff would have received in light of counsel's hourly rates. Plaintiff's counsel asserts its firms have performed $130,498.50 in hourly work in this case. Yet, in seeking attorney's fees, they are only seeking approximately 70% of this lodestar amount. Counsel also notes it is not seeking a separate award for expenses or compensation for the additional work it must perform to distribute the settlement funds. Third, Plaintiff's counsel undertook this case on a contingent fee basis. Fourth, as noted by Plaintiff's counsel, society has a great stake in rewarding attorneys who seek to hold employers responsible for violating the WARN Act. Fifth, the parties have demonstrated that WARN Act litigation involves complex legal issues. And finally, the parties on both sides are highly respected and qualified.

Taking all of these factors into account, Plaintiff's counsel has demonstrated that its award is fair and reasonable. Moreover, none of the absent class members has objected to the requested

award of attorney's fees, which further supports the Court's decision. Accordingly, the Court will **APPROVE** Plaintiff's counsel's request for attorney's fees in the amount of one-third of the settlement, after the $3,000 service fee is paid to Plaintiff.


## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** final approval of the parties' settlement agreement (Court File No. 23). The Court also **APPROVES** Plaintiff's request for attorney's fees in the amount of one-third of the settlement, after a service fee is paid to the class representative (that is, Plaintiff Ron Kizer). Finally, the Court **APPROVES** the $3,000 service fee to the class representative.

An Order shall enter.


**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

10

# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## GREENEVILLE DIVISION

| | | |
|---|---|---|
| IN RE: SOUTHEASTERN MILK | ) | |
| ANTITRUST LITIGATION | ) | |
| | ) | **Master File No. 2:08-MD-1000** |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | **Judge J. Ronnie Greer** |
| *Sweetwater Valley Farm, Inc., et al. v.* | ) | |
| *Dean Foods Co., et al., No. 2:07-CV 208.* | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is currently before the Court on the plaintiffs' Motion For Award Of Attorneys' Fees, Reimbursement Of Expenses, And Incentive Awards For Class Representatives. [Doc. 1808]. No party has filed a response to the motion and no class member has objected to the requested fees, expenses, and incentive awards. The Court held a fairness hearing on May 15, 2012, and heard brief argument on the motion. The matter is now ripe for disposition. For the reasons set forth herein, the motion will be GRANTED.

## I.    Background

This is a multi-district antitrust case involving allegations by the plaintiffs that defendants violated §§ 1 and 2 of the Sherman Act. After nearly five years of contentious litigation, the plaintiffs have entered into settlement agreements with certain of the defendants, [*See* Doc. 1856]. In short, plaintiffs have negotiated a cash settlement in the amount of $140 million with defendant Dean Foods and a $5 million cash settlement and substantial structural changes with defendants SMA and Baird (collectively referred to as "Settling Defendants"). The Court has now given final

approval to the settlements, [Docs. 1889, 1890] and the trial of the matter against the non-settling defendants is currently scheduled to commence in November, 2012.  Plaintiffs request an award of $48,333,333.00 in attorney's fees (one-third of the recovery from Settling Defendants), $7,408,920.00 as reimbursement for class counsel's out of pocket expenses and incentive awards for the 15 class representatives in the amount of $10,000.00 each, or $150,000.00 total.

## II.    Analysis

### A.    Applicable Law

"In a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  The Court must ensure "that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).  Courts have broad discretion in determining an award of attorney's fees in class actions.  *See Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996); *Rawlings*, 9 F.3d at 516.

One of two methods for calculation of attorney's fees is generally employed in the Sixth Circuit: The lodestar [1] and the percentage-of-the-fund. [2]  The district court may "select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Van Horn v. Nationwide Prop. and Cas. Ins. Co.*, 436 Fed. App'x 496, 2011 WL 3792362, at *1 (6th Cir. Aug. 26, 2011) (quoting *Rawlings*, 9 F.3d at 516).  The district court, however, generally must explain

---

[1]  With the lodestar method, the Court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate.  *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999).

[2]  When using the percentage-of-the-fund method, the Court simply determines a percentage of the settlement to award to class counsel.  *Rawlings*, 9 F.3d at 516.

2

its "reasons for adopting a particular methodology and the factors considered in arriving at the fee." *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (internal quotation marks omitted).

This is a common fund case and plaintiffs urge the Court to apply the percentage of the fund method.   As a general matter, "[t]he lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved." *Rawlings*, 9 F.3d at 516.   It appears that the trend in the Sixth Circuit is "toward adoption of a percentage of the fund method" in common fund cases.   *Stanley v. United States Steel Company*, 2009 WL 4646647 (E.D. Mich. Dec. 8, 2009) (quoting *Rawlings*, 9 F.3d at 515). "[T]he vast majority  of courts of appeal now permit or direct district courts to use the percentage-fee in common-fund cases."   *Manual For Complex Litigation Fourth* ("MCL") § 14.121.   "In practice, the lodestar method is difficult to apply, time-consuming to administer, inconsistent in result, and capable of manipulation" and "creates inherent incentive to prolong the litigation."   *Id.*   At least one circuit court of appeals has recognized that the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation."   *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).

### 1.    Selecting the Method

In the Sixth Circuit, it is within the discretion of the district court to decide which method to use in a given case.   *Bowling*, 102 F.3d at 779; *Rawlings*, 9 F.3d at 516.   The percentage-of-the-fund method, however, clearly  appears to have become the preferred method in common fund cases. *Stanley*, *supra*; *see* Brian T. Fitzpatrick*, An Empirical Study of Class Action Settlements and Their Fee Awards*, 7; J. Empirical Legal Stud. 811, 832 (December, 2010).

As noted above, plaintiffs urge the Court to award a percentage of the common fund

3

in this case.  Although the Court acknowledges its discretion to use the lodestar method, the Court finds that the percentage-of-the-fund method is the more appropriate method in this case, especially when employed with a lodestar cross-check.  Here, a substantial common fund has been established for the benefit of class members through the efforts of class counsel.  Given the commitment of time and resources committed by class counsel and the complexity of this litigation, it simply would not have been practicable for individual members of this class to pursue litigation challenging the alleged illegal conduct in this case.  Given the clear trend in the Sixth Circuit and the Court's belief that the percentage-of-the-fund method, when employed in connection with a lodestar cross-check, accounts for both the amount of the work done and reflects the results achieved by class counsel, this Court will use the percentage-of-the funds method and a lodestar cross-check. [3]  In addition, given the number of hours expended by counsel in this case (approximately 113,000) use of a percentage-of-the-fund method here is much more efficient and less time consuming for the Court to administer.

### 2.        The Reasonableness of the Requested Fee

As noted above, the attorneys' fees requested represent 33.33 percent of the settlement fund.  Although the total fee requested is a very large amount, the percentage requested is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit.  *Bessey v. Packerland Plainwell, Inc.*, 2007 WL 3173972, at *4 (W.D. Mich. Oct.

---

[3]  Counsel have provided to the Court summary schedules indicating the number of hours spent by the attorneys involved in this litigation and the lodestar calculation based on historical billing rates.  Those schedules were prepared from contemporaneous time records not produced by counsel.  Unlike the situation when the Court employs the lodestar method in full, "the hours documented by counsel need not be exhaustively scrutinized by the district court" where a lodestar cross-check is used.  *In re WorldCom Sec. Litig.*, 388 F. Supp.2d 319, 355 (S.D.N.Y. 2005) (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)).

4

26, 2007) (approving an award of 33 percent and noting that "[e]mpirical studies show that . . . fee awards in class actions average around one-third of recovery") (quoting *Shaw v. Toshiba America Inf. Sys., Inc.* 91 F.Supp.2d 942, 972 (E.D. Tex. 2000)); *Worthington v. CDW Corp.* 2006 U.S. Dist. LEXIS 23100, at *22 (S.D. Ohio May 22, 2006); MCL § 14.121 ("[a]ttorney fees awarded under the percentage method are often between 25% and 30% of the fund."); *see also* Brian T. Fitzpatrick, *Do Class Action Lawyers Make Too Little?* 158 U. Pa. L. Rev. 2043, 2063 (2010) ("although the mean and median fee awards in federal court are 25%, there are many awards at the 33% level, ...").

In the Sixth Circuit, several factors have been identified for consideration in determining the reasonableness of the requested fee. These include:

> (1) the value of the benefit rendered to the plaintiff class . . . ; (2) the value of services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides."

*Bowling,* 102 F.3d at 780. *See also Smillie v. Park Chemical Co.*, 710 F.2d 271, 275 (6th Cir. 1983).

All of the relevant factors here support the requested fee. First, the result obtained by counsel for the plaintiff class is extraordinary and will result in an average cash payment to each class member of approximately $13,000.00. The total settlement fund is approximately one-third of the total damages calculated by plaintiffs' damages expert.[4] In addition, the settlement with Baird and SMA will result in significant structural changes in the way milk is marketed in the future in the Southeast. One part of that relief alone has been estimated by SMA to generate value of

---

[4] Plaintiffs claim the settlement is likely the largest settlement of any antitrust case litigated in this district. Although the Court has not attempted to confirm the accuracy of that claim, the Court is not aware of any settlement for a larger amount.

5

approximately $0.10 to $0.12/cwt to Southeast dairy farmers, totaling millions of dollars over the next several years.  The value of the settlement to the class is further illustrated by the lack of objection from any class member to the requested fees.  Of the roughly 7000 members of the class, only one objected to the settlement, and that objector voiced no objection to the requested fees.

Second, there is absolutely no question that counsel has spent a remarkable amount of time preparing and litigating this case–over 113,000 hours of legal work.  Counsel spent a year investigating the antitrust allegations, consulting experts and mapping strategy before filing suit.  The case has been extensively and vigorously litigated for four years and the settling defendants have aggressively defended the suit.  Counsel has reviewed and organized over 5,000,000 pages of documents and multiple motions to compel discovery have been litigated.   Over 100 depositions have been conducted, including those of numerous plaintiff and defense experts.  The Court's docket entries for the case are approaching  2,000, fully illustrating the extensive nature of the legal work done, from the initial motions to dismiss through the summary judgment stage and extensive litigation of a host of other pretrial motions.  Counsel have participated in extensive and lengthy court ordered mediation sessions, as well as settlement discussions with defendants.  The quality of the work done by class counsel has been exceptional, not only with respect to the pleadings filed but also the oral advocacy during oral argument on various motions.

Using the lodestar method as a cross-check on the reasonableness of the requested fee likewise supports the award of fees requested.  As noted above, counsel spent over 113,000 hours on this case, which, when multiplied by a reasonable hourly rate, results in a lodestar of $46,702,830.  The requested fee-- $48,333,333-- represents a lodestar multiplier of only 1.03, minimal when compared to typical lodestar multipliers.  *See In re Cardinal Health, Inc. Sec. Litig.*,

6

528 F. Supp.2d 752, 767 (S.D. Ohio 2007) (typical lodestar in large securities class actions ranges from 1.3 to 4.5); *Newberg on Class Action* § 14.6 (4th ed. 2009) ("Multiples ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied.").

The complexity of the litigation also supports the requested fees. This Court has observed several times the complexity of the case. Almost every aspect of this case has been hotly contested and litigated extensively and the case presents several somewhat novel issues. The complexity of the case is further illustrated by the number of pages of documents produced, as noted above, a list of potential trial exhibits that numbers in the thousands and literally hundreds of potential witnesses who have been interviewed and/or deposed in preparation for trial. Class counsel, who have extensive experience in complex class action litigation, have efficiently and competently managed their enormous task and have vigorously and effectively prosecuted the case on behalf of the class. They have also been opposed by equally experienced and highly competent counsel for defendants and have achieved an excellent result for their clients.

Furthermore, counsel undertook this case on a contingency-fee basis and accepted a substantial risk of non-payment for legal work and reimbursement of out-of-pocket expenses advanced. This Court finds that the fee awarded should fully reflect the risk taken by these lawyers and is a very substantial factor in this case which weighs in favor of the requested fee. Not only did counsel risk not being paid for more than $46 million in legal work, they also ran the risk of losing nearly $7.5 million in out-of-pocket expenses. If counsel are not rewarded for this risk, few attorneys will undertake "the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing." *Behrens v. Wometco Enter., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988).

7

Finally, failing to fully compensate class counsel for the excellent work done and the various substantial risks taken would undermine society's interest in the private litigation of antitrust cases. Society's interests are clearly furthered by the private prosecution of civil cases which further important public policy goals, such as vigorous competition by marketplace competitors. *See Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983) ("This court has emphasized the importance of the private action as a means of furthering the policy goals of certain federal regulatory statutes, including the federal antitrust laws.").

Simply put, anti-competitive conduct such as that alleged in this case would likely go unchallenged absent the willingness of attorneys to undertake the risks associated with such expensive and complex litigation. No single class member could have undertaken the litigation prosecuted here on his own. The sheer size of the outlay for out-of-pocket expenses by class counsel illustrates the reason why. Awards of substantial attorney's fees in cases like this are necessary to incentivize attorneys to shoulder the risk of nonpayment to expose violations of the law and to achieve compensation for injured parties.

One final issue should be addressed. Some studies have identified the size of the underlying class action settlement as the factor with the most influence on the fee and have found an inverse relationship between fee percentage and size of the settlement fund. *See* Fitzpatrick, *Do Class Action Lawyers Make too Little?*, at 2055 (citing Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees In Class Action Settlements: An Empirical Study, 1* J. Empirical Legal Stud. 27, 35-36 (2004)). Indeed, it is fairly widely recognized that lower percentages are appropriate in cases in which large settlements serve as the basis for calculating a percentage. MCL, § 14.121 (citing *In re Prudential Ins. Co. of Amer. Sales Practices Litig.* 148 F.3d 283, 339-40 (3d Cir. 1998)

8

(remanding award of 6.7% of common fund for further consideration "in light of the magnitude of the recovery")). In cases involving settlements exceeding 100,000,000, fee percentages have ranged from 4.1% to 17.92%. *Id.*

This Court finds, however, that such an inverse approach would not be appropriate in this case for several reasons. First, the Court has not found any Sixth Circuit case endorsing such an approach. Second, a declining percentage-of-the fund based on the size of the settlement "can create an incentive to settle quickly and cheaply when the returns to effort are highest" and discourage counsel from "investing additional time and maximizing plaintiffs' recovery." *In re Auction Houses Antitrust Litig.*, 197 F.R.D. 71, 80 (S.D. N.Y. 2000). In addition, the Court sees no good reason why class action lawyers who represent clients on a contingency-fee basis in a case such as this should receive lower fees on a percentage basis than due contingency-fee lawyers in litigation representing individual clients, which typically amount to 33% or more of the recovery. Lastly, such an approach would penalize these class action attorneys given the actual number of hours spent on the case, rather than compensate them fairly. In other words, the requested fees do not result in a windfall for class counsel.

After consideration of all these factors and the entire and lengthy record of this complex litigation, the Court concludes that, although the requested fee is a very, very substantial amount, it is fair and reasonable under the circumstances. Accordingly, the Court will approve the requested fees in the amount of thirty-three and one-third percent (33 1/3%) of the common fund, i.e. $48,333,333.00[5] and will authorize lead counsel to allocate fees to specific firms.[6]

---

[5] The Dean settlement is to be paid over four years. Plaintiffs do not propose to take all of their fees up front but rather the fees will be paid proportionally as Dean's payments are made to the settlement fund.

[6] The Court, of course, retains jurisdiction to resolve any fee disputes which may arise.

9

## B.     Reimbursement of Expenses

In addition to their petition for attorney's fees, class counsel seek reimbursement of out-of-pocket expenses incurred during the representation of the class in the amount of $7,408,920.39. "Expense awards are customary when litigants have created a common settlement fund for the benefit of a class." *See In re F & M Distributors*, *Inc.,* 19 U.S. Dist. LEXIS 11090, at *19 (E.D. Mich. June 29, 1999).  Based upon the Court's review of the various affidavits submitted by class counsel, it appears that the requested expenses are the type typically billed by attorneys to paying clients in similar cases, *see In re Synthroid Marketing Litig*., 264 F.3d 712, 722 (7th Cir. 2001), and are fair and reasonable under the circumstances of this case.  A large percentage of the expenses consist of fees paid to experts who were crucial to the prosecution of the case, travel to depositions, hearings, and meetings with witnesses, experts and class representatives, and payments to court reporters for depositions, computerized research, copying costs, and delivery charges.  Although the affidavits submitted by class counsel are not itemizations of all of the expenses incurred but rather an aggregate listing of the expenses for each category, the Court finds the affidavits submitted sufficiently detailed and the Court is persuaded that the expenses are legitimate and are reasonable in the case and will approve payment to class counsel from the common settlement fund in the amount of $7,408,920.39 as reimbursement for their out-of-pocket expenses.

## C.     Incentive Awards to Class Representatives

Plaintiffs request that the Court approve incentive awards for the fifteen (15) class representatives in the amount of $10,000 each.  "Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness

10

to act as a private attorney general." *Rodriguez v. West Publ'g. Corp.,* 563 F.3d 948, 958-59 (9th Cir. 2009) (citations omitted). Based on this Court's knowledge of these lengthy proceedings, it appears that the class representatives have had extensive involvement in this litigation and deserve compensation above and beyond the amounts they will be entitled to by virtue of class membership alone.[7] They have been crucial in the preparation of the case and the requested incentive awards are reasonable in light of other incentive awards approved by courts in this circuit. *See Hainey v. Parrott*, 2007 WL 3308027 at * 5 (S.D. Ohio Nov. 6, 2007) (approving $50,000 incentive awards); *Worthington*, 2006 U.S. Dist. LEXIS 32100, at *24 (approving $10,000 incentive awards); *In re F&M Distributors*, 1999 U.S. Dist. LEXIS 11090, at * 20-21 (approving $2,500 incentive awards).

## III.    Conclusion

For all the foregoing reasons, plaintiffs' motion for award of attorneys' fees, reimbursement of expenses, and incentive awards for class representatives, [Doc. 1808], will be GRANTED and the Court will award $48,333,333 in attorneys' fees, reimbursement for out-of-pocket expenses in the amount of $7,408,920.39, and $10,000.00 as an incentive award to each of the class representatives.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE

---

[7] No affidavits or other documentation have been submitted in support of the incentive award request. Class representatives, however, have clearly been extensively involved in the litigation, settlement discussions and court proceedings and have committed substantial time to the case as confirmed by the Court's own observations. *See also* Declaration of Robert G. Abrams, [Doc. 1809]. ("Class representatives have communicated with class counsel regarding case issues, produced documents and information, been deposed, and prepared for trial.")

11

# EXHIBIT 3

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |
|---|---|
| **IN RE: FOUNDRY RESINS ANTITRUST LITIGATION** | Case No. 2:04-md-1638<br>Master Docket No. 2:04-cv-415<br><br>**CLASS ACTION** |
| **This Document Relates To:**<br><br>**ALL CASES EXCEPT Caterpillar Inc. v. Ashland Inc., et al., Court File No. 2:04-cv-01165-GLF-MRA** | Judge Gregory L. Frost<br>Magistrate Judge Mark R. Abel |

**ORDER**

This matter is before the Court for consideration of the February 15, 2008 Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses and Payment of Incentive Awards to Class Representatives (Doc. # 242) and the March 25, 2008 Plaintiffs' Notice of Filing Supplemental Time and Expense Information in Support of Motion for an Award of Attorneys' Fees, Reimbursement of Expenses and Payment of Incentive Awards to Class Representatives (Doc. # 244).  Upon consideration, the Court **GRANTS** the motion as supplemented.

It is therefore hereby ORDERED, ADJUDGED, and DECREED as follows:

(1)  The Court awards Plaintiffs' Counsel attorneys' fees in the amount of 33⅓% of the Ashland Settlement Fund ($7,900,000.00) and 33⅓% of the HAI Settlement Fund ($6,256,421.00 after reduction pursuant to the applicable "most favored nation" provision), for a total fee of $4,718,807.00, plus accrued interest.

(2)  The Court authorizes Co-Lead Counsel to distribute such fees to Plaintiffs' Counsel in a manner which, in the opinion of Co-Lead Counsel, fairly compensates each Plaintiffs'

Counsel firm in view of its contribution to the prosecution of Plaintiffs' claims.  The Court

retains jurisdiction over any disputes among Plaintiffs' Counsel concerning the allocation of

such awarded attorneys' fees.

(3)  In addition to the attorneys' fees awarded by the Court, the Court approves a

payment of unreimbursed litigation expenses in the amount of $891,185.20 from the Ashland

and HAI Settlement Funds to Plaintiffs' Counsel.

(4)  The Court approves incentive awards of $5,000 each to Plaintiffs State Line

Foundries, Kore Mart, Lancaster Foundry Supply, Kulp Foundry, AmeriCast Technologies, and

Tri-Cast Limited from the Ashland and HAI Settlement Funds for their service as Class

Representatives.

**IT IS SO ORDERED**.

_____/s/ Gregory L. Frost_____
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE

# EXHIBIT 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE TRICOR DIRECT PURCHASER ANTITRUST LITIGATION )<br><br>_____<br><br>THIS DOCUMENT RELATES TO:<br><br>*Louisiana Wholesale Drug. Co., Inc. (05-340)*<br>*Rochester Drug Co-Operative, Inc. (05-351)*<br>*Meijer, Inc., et al. (05-358)* | CASE NO. 05-340<br>(SLR)<br>(consolidated) |

**[PROPOSED] ORDER AND FINAL JUDGMENT APPROVING SETTLEMENT, AWARDING ATTORNEYS' FEES AND EXPENSES, AWARDING REPRESENTATIVE PLAINTIFF INCENTIVE AWARDS, APPROVING PLAN OF ALLOCATION, AND ORDERING DISMISSAL AS TO ALL DEFENDANTS**

The Court, having considered (a) the Direct Purchaser Class's Motion for Final Settlement Approval; (b) the Brief in Support of the Direct Purchaser Class's Motion for Final Settlement Approval; (c) the Plan Of Allocation For Direct Purchaser Class; (d) the Declaration Of Jeffrey J. Leitzinger, Ph.D. Regarding Classwide Damages and the Proposed Plan Of Allocation ("Leitzinger Declaration"); (d) the Direct Purchaser Class's Motion for an Award Of Attorneys' Fees, Reimbursement of Expenses and Incentive Awards to the Class Representatives; (e) the Brief in Support of the Direct Purchaser Class's Motion For An Award Of Attorneys' Fees, Reimbursement of Expenses and Incentive Awards To The Class Representatives; (f) the Affidavit of Lead Counsel Barry S. Taus, Esq.; (g) the Corrected Supplemental Affidavit of Lead Counsel Barry S. Taus, Esq.; and (h) the Affidavit of Adam M. Steinfeld dated March 9, 2009; and having held a

hearing on April 23, 2009; and having considered all of the submissions and arguments

with respect thereto; pursuant to Rules 23 and 54 of the Federal Rules of Civil Procedure,

and in accordance with the terms of the settlement agreement between Direct Purchaser

Class Plaintiffs ("Plaintiffs") and Abbott Laboratories ("Abbott") and Fournier Industrie

et Santé and Laboratories Fournier S.A. (together, "Fournier") (collectively,

"Defendants") dated January 6, 2009 (the "Settlement Agreement"), it is hereby

**ORDERED, ADJUDGED and DECREED that:**

　　　1.　　This Order and Final Judgment incorporates by reference the definitions in

the Settlement Agreement, and all terms used herein shall have the same meanings set

forth in the Settlement Agreement. As set forth in the Preliminary Approval Order (D.I.

No. 529), dated January 8, 2009, the previously certified Class is defined as follows:

> The Direct Purchaser Class includes all persons or entities in the United
> States who purchased TRICOR® in any form directly from Abbott
> Laboratories ("Abbott"), Fournier Industrie et Sante, or Laboratories
> Fournier S.A. ("Fournier") (Abbott and Fournier collectively are
> "Defendants") at any time during the period April 9, 2002 through August
> 18, 2008. Excluded from the Class are Defendants and their officers,
> directors, management, employees, subsidiaries, or affiliates, all federal
> governmental entities, and the following entities that opted out of the
> Class: Ahold a/k/a American Sales Corp., Albertson's Inc., CVS
> Pharmacy, Inc., CVS Corporation, Eckerd Corporation, Maxi Drug, Inc.
> d/b/a Brooks Pharmacy, Hy-Vee, Inc., Kroger Co., Rite Aid Corporation,
> Rite Aid Hdqtrs. Corp., Safeway, Inc., Walgreen Co., State of Oregon (all
> government entities), State of Washington (all government entities),
> Maryland State Employee and Retiree Health and Welfare Benefits
> Program and the Maryland Pharmacy Program, Connecticut Department
> of Social Services, State of New York (all government entities), State of
> Texas Heath and Human Services Commission, Commonwealth of
> Massachusetts Executive Office of Health and Human Services Office of
> Medicaid (MassHealth), Pennsylvania Department of Public Works and
> Department of Aging, and Overman & Stevenson Pharmacists.

　　　2.　　The Court has jurisdiction over these actions and over each of the parties

and over all members of the Class.

2

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 116
of 227
Case4:07-cv-05985-CW   Document371-7   Filed06/14/11   Page4 of 13

3.      As required by this Court in the Preliminary Approval Order, notice of the

proposed Settlement was mailed by first-class mail to all members of the Class.   Such

notice to members of the Class is hereby determined to be fully in compliance with

requirements of Fed. R. Civ. P. 23(e) and due process of law and is found to be the best

notice practicable under the circumstances and to constitute due and sufficient notice to

all entities entitled thereto.

4.      Due and adequate notice of the proceedings having been given to the Class

and a full opportunity having been offered to the Class to participate in the fairness

hearing, it is hereby determined that all Class members are bound by this Final Order and

Judgment.

5.      The Settlement of this Direct Purchaser Class Action was not the product

of collusion between Plaintiffs and Defendants or their respective counsel, but rather was

the result of *bona fide* and arm's-length negotiations conducted in good faith between

Class Counsel[1] and Defendants' counsel.

6.      The Court has held a hearing to consider the fairness, reasonableness and

adequacy of the proposed Settlement, and has been advised that there have been no

objections to the Settlement from any members of the Class, and also that several

members of the Class have explicitly indicated their support for the Settlement and Class

Counsel's requested attorneys' fees.

7.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court

---

[1] The Court appointed Garwin Gerstein & Fisher, L.L.P., as Lead Counsel and as a member of the
Executive Committee, along with the firms of Berger & Montague, P.C., Odom & Des Roches, L.L.P., The
Smith Foote Law Firm (formerly Percy, Smith & Foote), and Cohen, Milstein, Hausfeld & Toll (which is
now known as Cohen Milstein Sellers & Toll).  Kaplan, Fox & Kilsheimer, L.L.P., was substituted for
Cohen Milstein midway through the litigation.  Additional class counsel that actively participated in the
case include Heim Payne & Chorush, L.L.P. (formerly Conley, Rose & Tayon), Vanek, Vickers & Masini,
L.L.P., and Delaware counsel Rosenthal, Monhait & Goddess, P.A.

3

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 117
of 227
Case4:07-cv-05985-CW   Document371-7   Filed06/14/11   Page5 of 13

hereby approves the Settlement, and finds that the Settlement is, in all respects, fair,
reasonable and adequate to Class members.  Accordingly, the Settlement shall be
consummated in accordance with the terms and provisions of the Settlement Agreement.
The Settlement is fair, reasonable and adequate in light of the factors set forth in *Girsh v.*
*Jepson*, 521 F.2d 153 (3d Cir 1975), as follows:

       (a) this case was highly complex, expensive and time consuming, and
would have continued to be so if the case had not settled;

       (b) there were no objections to the Settlement by Class members, and
several Class members expressed affirmative support for the Settlement;

       (c) because the case settled after the parties had completed discovery and
commenced trial, Class Counsel had a full appreciation of the strengths and weaknesses
of their case before negotiating the Settlement;

       (d) Class Counsel and the Class would have faced numerous and
substantial risks in establishing both liability and damages if they had decided to continue
to litigate rather than settle;

       (e) the Settlement amount is well within the range of reasonableness in
light of the best possible recovery and the risks the parties would have faced if the case
had continued to verdicts as to both liability and damages; and,

       (f) the Settlement also satisfies the additional factors set forth in *In re*
*Prudential Ins. Co. of America Sales Practices Litigation*, 148 F.3d 283 (3d. Cir 1998),
*cert. denied*, 525 U.S. 1114 (1999).

    **8.**    The Court approves the Plan of Allocation of the Settlement proceeds (net
of attorneys' fees, reimbursed expenses and incentive awards) as proposed by Class

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 118
of 227
Case4:07-cv-05985-CW   Document371-7   Filed06/14/11   Page6 of 13

Counsel in the Plan of Allocation (the "Plan") (attached hereto as Ex. A), and supported
by the Leitzinger Declaration.  The Plan, which had previously been summarized in the
Notice of Proposed Settlement, proposes to distribute the net Settlement proceeds *pro
rata* based on Class member purchases of Tricor, and does so fairly and efficiently.  It
directs Epiq Systems, Inc., the firm retained by Class Counsel as the claims
administrator, to distribute the net Settlement proceeds in the manner provided in the
Plan.

9.      All claims in the above-captioned action against Defendants are hereby
dismissed with prejudice, and without costs.

10.      In accordance with the Settlement Agreement, upon the Settlement's
becoming final in accordance with its terms:

(a)      Defendants and their past, present and future parents, subsidiaries,
divisions, affiliates, stockholders, officers, directors, insurers, general or limited partners,
employees, agents, attorneys and any of their legal representatives (and the predecessors,
heirs, executors, administrators, successors and assigns of each of the foregoing) (the
"Released Parties") are and shall be released and forever discharged from all manner of
claims, demands, actions, suits, causes of action, damages, and liabilities, of any nature
whatsoever (whether such claims, demands, actions, suits, causes of action, damages, or
liabilities arise or are incurred before, during or after the date hereof), including costs,
expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in
law or equity, that Plaintiffs or any member or members of the Class who has (have) not
timely excluded itself (themselves) from the Class (including any past, present or future
officers, directors, insurers, general or limited partners, divisions, stockholders, agents,

5

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 119
of 227
Case4:07-cv-05985-CW   Document371-7   Filed06/14/11   Page7 of 13

attorneys, employees, legal representatives, trustees, parents, associates, affiliates,

subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors,

successors and assigns, acting in their capacity as such), whether or not they object to the

Settlement and whether or not they make a claim upon or participate in the Settlement

Fund, ever had, now has, or hereafter can, shall or may have, directly, representatively,

derivatively or in any other capacity, to the extent arising out of or relating to any

conduct:

    (1)    alleged in the Actions,

    (2)    alleged in any other complaint filed in any action currently

consolidated or coordinated, or subject to a pending request for

consolidation or coordination with the Actions, or

    (3)    relating to any alleged change in formulation or withdrawal of

TRICOR 200 or TRICOR160 or any conduct relating to the change

to TRICOR 160 or the change to TRICOR 145, or any generic

equivalents of TRICOR 200 or TRICOR 160 (reference to any

formulation of TRICOR or any generic equivalent shall in each

instance include any associated lower doses),

provided only that such conduct occurred or allegedly occurred prior to the date hereof,

except as expressly provided for in paragraph 12 of the Settlement Agreement (the

"Released Claims"). Plaintiffs and each member of the Class shall not sue or otherwise

seek to establish or impose liability against any Released Party based, in whole or in part,

on any of the Released Claims.

    (b)    In addition, the Court finds that each class member has expressly

waived and released, upon the Settlement Agreement becoming final, any and all

provisions, rights, benefits conferred by §1542 of the California Civil Code, which reads:

> **Section 1542.  <u>General Release--Claims Extinguished</u>.
> A general release does not extend to claims which the
> creditor does not know or suspect to exist in his or her
> favor at the time of executing the release, which if
> known by him or her must have materially affected his
> or her settlement with the debtor.**

or by any law of any state or territory of the United States or other jurisdiction, or

principle of common law, which is similar, comparable or equivalent to §1542 of the

California Civil Code.  Each Class member may hereafter discover facts other than or

different from those which he, she or it knows or believes to be true with respect to the

claims which are the subject matter of this Paragraph 10, but each Class member hereby

expressly waives and fully, finally and forever settles and releases, upon the Settlement

Agreement's becoming final, any known or unknown, suspected or unsuspected,

contingent or non-contingent claim that would otherwise fall within the definition of

Released Claims, whether or not concealed or hidden, without regard to the subsequent

discovery or existence of such different or additional facts.  For the avoidance of doubt,

the Court finds that each Class member has expressly waived and fully, finally and

forever settled and released any and all claims it may have against any Released Party

under §17200, *et seq.,* of the California Business and Professions Code or any similar,

comparable or equivalent provision of the law of any other state or territory of the United

States or other jurisdiction, which claims are hereby expressly incorporated into the

definition of Released Claims.

     11.    Class Counsel have moved for an award of attorneys' fees and

reimbursement of expenses.  Pursuant to Rules 23(h)(3) and 54(d) of the Federal Rules of

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 121
of 227
Case4:07-cv-05985-CW   Document371-7   Filed06/14/11   Page9 of 13

Civil Procedure, and pursuant to the factors for assessing the reasonableness of a class

action fee request as set forth in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195

n.1 (3d Cir. 2000), this Court makes the following findings of fact and conclusions of

law:

        (a)    the Settlement confers a monetary benefit on the Class that is

substantial, both in absolute terms and when assessed in light of the risks of establishing

liability and damages in this case;

        (b)    there were no objections by Class members to the requested fee

award of one-third of the Settlement Fund, and in fact, numerous Class members, with

purchases of Tricor during the relevant period in excess of 70% of the aggregate Class

purchases, have affirmatively expressed their support for and/or lack of objection to the

requested fee;

        (c)    Class Counsel have effectively and efficiently prosecuted this

difficult and complex action on behalf of the members of the Class for over three and

one-half years, with no guarantee they would be compensated;

        (d)    Class Counsel undertook numerous and significant risks of

nonpayment in connection with the prosecution of this action;

        (e)    Class Counsel have reasonably expended tens of thousands of

hours, and incurred millions of dollars in out of pocket expenses, in prosecuting this

action, with no guarantee of recovery;

        (f)    fee awards similar to the fee requested by Class Counsel here have

been awarded in similar cases, including numerous Hatch-Waxman antitrust class actions

similarly alleging impeded entry of generic drugs;

8

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 122
of 227
Case4:07-cv-05985-CW   Document341-7   Filed06/14/11   Page10 of 13

(g)     the Settlement achieved for the benefit of the Class was obtained as a direct result of Class Counsel's skillful advocacy;

(h)     the Settlement was reached following negotiations held in good-faith and in the absence of collusion;

(i)     the "percentage-of-the-fund" method is the proper method for calculating attorneys' fees in common fund class actions in this Circuit (*see, e.g., In re Rite Aid Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005));

(j)     Class members were advised in the Notice of Proposed Settlement of Class Action, which notice was approved by this Court, that Class Counsel intended to move for an award of attorneys' fees in an amount up to 33-1/3% of the gross Settlement Fund (including the interest accrued thereon), plus reimbursement of reasonable costs and expenses incurred in the prosecution of this action;

(k)     Class Counsel did, in fact, move for an award of attorneys' fees in the amount of 33-1/3% of the gross Settlement Fund (including the interest accrued thereon), plus reimbursement of reasonable costs and expenses incurred in the prosecution of this action, which motion has been on the docket and publicly available since March 9, 2009;

(l)     As detailed in Class Counsel's affidavits, a one-third fee award would equate to a lodestar multiplier of approximately 3.93. An examination of recently approved multipliers in other Hatch-Waxman class actions similarly alleging impeded generic competition reveals that the multiplier requested here is well within the acceptable range;

(m)     in light of the factors and findings described above, the requested

9

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 123
of 227
Case4:07-cv-05985-CW   Document341-7   Filed06/14/11   Page11 of 13

33-1/3% fee award is within the applicable range of reasonable percentage fund awards.

Accordingly, Class Counsel are hereby awarded attorneys' fees in the amount of $83,333,333.33 from the Settlement Fund, plus one-third of the interest earned on the Settlement proceeds from January 27, 2009 (the date of funding of the Settlement Fund) to the date of payment, at the same net interest rate earned by the Settlement Fund. The Court finds this award to be fair and reasonable.

Further, Class Counsel are hereby awarded $3,590,415.82 out of the Settlement Fund to reimburse them for the expenses they incurred in the prosecution of this lawsuit, which expenses the Court finds to be fair, and reasonably incurred to achieve the benefits to the Class obtained in the Settlement to the Class.

The awarded fees and expenses shall be paid to Class Counsel from the Settlement Fund in accordance with the terms of the Settlement Agreement. Lead Counsel shall allocate the fees and expenses among all of the Class Counsel.

12.     Neither this Final Order and Judgment, the Settlement Agreement, nor any and all negotiations, documents and discussions associated with it shall be deemed or construed to be an admission or evidence of any violation of any statute or law, of any liability or wrongdoing by Defendants, or of the truth of any of the claims or allegations contained in any complaint or any other pleading or document, and evidence thereof shall not be discoverable, admissible or otherwise used directly or indirectly, in any way by or against Plaintiffs or Defendants, whether in this Direct Purchaser Class Action or in any other action or proceeding.

13.     Without affecting the finality of this judgment, the Court retains exclusive jurisdiction over the Settlement, and the Settlement Agreement, including the

Case No. 1:90-cv-00181-JLK  Document 2435-17  filed 01/12/17  USDC Colorado  pg 124
of 227
Case4:07-cv-05985-CW  Document341-7  Filed06/14/11  Page12 of 13

administration and consummation of the Settlement Agreement, the Plan of Allocation, and in order to determine any issues relating to attorneys' fees and expenses and any distribution to members of the Class. In addition, without affecting the finality of this judgment, Defendants and each member of the Class hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding or dispute arising out of or relating to the Settlement Agreement or the applicability of the Settlement Agreement, including, without limitation any suit, action, proceeding or dispute relating to the release provisions herein, except that this submission to the Court's jurisdiction shall not prohibit (a) the assertion of the forum in which a claim is brought that the release included in the Settlement Agreement is a defense, in whole or in part, to such claim or, (b) in the event that such a defense is asserted in that forum, the determination of its merits in that forum.

14.     The three Class Representatives are each hereby awarded $50,000 out of the Settlement Fund, for representing the Class, which amount is in addition to whatever monies these plaintiffs will receive from the Settlement Fund pursuant to the Plan of Allocation. The Court finds these awards to be fair and reasonable.

15.     In the event the Settlement does not become final in accordance with paragraph 5 of the Settlement Agreement, this Order and Final Judgment shall be rendered null and void as provided by the Settlement Agreement, shall be vacated, and all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Settlement Agreement.

16.     The Court hereby directs that this judgment be entered by the clerk forthwith pursuant to Federal Rule of Civil Procedure 54(b). The direction of the entry of

final judgment pursuant to Rule 54(b) is appropriate and proper because this judgment

fully and finally adjudicates the claims of the Plaintiffs and the Class against all

Defendants in this action, allows consummation of the Settlement, and will expedite the

distribution of the Settlement proceeds to the Class members.

SO ORDERED this the 23d day of April , 2009.


_____
Hon. Sue L. Robinson
U.S. District Court for the District of Delaware

12

# EXHIBIT 5

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MEIJER, INC.; MEIJER DISTRIBUTION, INC.; LOUISIANA WHOLESALE DRUG CO., INC.; ROCHESTER DRUG CO-OPERATIVE, INC.; AMERICAN SALES COMPANY, INC.; SAJ DISTRIBUTORS, INC.; and STEPHEN L. LaFRANCE HOLDINGS, INC., on behalf of themselves and all others similarly situated, | Civil Action No. 05-2195 (CKK) |

                            Plaintiffs,

    v.

BARR PHARMACEUTICALS, INC.,

                           Defendant.

## ORDER AND FINAL JUDGMENT APPROVING SETTLEMENT BETWEEN DIRECT PURCHASER CLASS PLAINTIFFS AND DEFENDANT BARR PHARMACEUTICALS, INC., AWARDING ATTORNEYS' FEES AND EXPENSES, AWARDING REPRESENTATIVE PLAINTIFF INCENTIVE AWARDS, APPROVING PLAN OF ALLOCATION, AND ORDERING DISMISSAL AS TO ALL DEFENDANTS

Pursuant to Rules 23(e) and 54(b) of the Federal Rules of Civil Procedure, in accordance with the terms of the settlement agreement between Direct Purchaser Class Plaintiffs and Barr Pharmaceuticals, Inc. ("Barr") dated December 15, 2008 (the "Settlement Agreement"), and in accordance with this Court's entry of its July 10, 2008 Order Approving Settlement Between the Direct Purchaser Plaintiffs and the Warner Chilcott Defendants[1] Only and Final Judgment as to the Warner Chilcott Defendants (D.E. #182) ("Warner Chilcott Settlement"), it is hereby

---

[1]    The "Warner Chilcott Defendants" include Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., Warner Chilcott Company Inc., and Galen (Chemicals), Ltd.

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 128
of 227
Case4:07-cv-05985-CW   Document371-8   Filed06/14/11   Page3 of 10

**ORDERED, ADJUDGED AND DECREED that:**

1.    This Order and Final Judgment incorporates by reference the definitions in the

Settlement Agreement and all terms used herein shall have the same meanings set forth in the

Settlement Agreement. (D.E #201).  As set forth in the Preliminary Approval Order (D.E. #202),

dated December 18, 2008, the previously certified Class is defined as follows:

> All persons and entities in the United States who purchased Ovcon 35 directly from
> Defendants at any time during the period April 22, 2004 through December 31, 2006.

The definition of the Class excludes any claims asserted, whether by assignment or otherwise, by

the following entities: Walgreen Co., Eckerd Corporation, Maxi Drug, Inc. dba Brooks

Pharmacy, Albertson's Inc., The Kroger Co., Safeway, Inc., Hy-Vee, Inc., CVS Pharmacy, Inc.,

Rite Aid Corporation, and Rite Aid Hdqtrs. Corp.  Also excluded from the Class are hospitals,

universities and clinics.

2.    This Court has jurisdiction over this Direct Purchaser Class Action and each of the

parties to the Settlement Agreement including all Class members, as well as over each of the

parties to the Warner Chilcott Settlement that this Court previously finally approved between this

Class and the Warner Chilcott Defendants.

3.    As set forth in more detail in the Settlement Agreement, Barr has agreed to pay a

total of $13,000,000 to settle this Action (the "Barr Settlement"), which, combined with the

$9,000,000 sum that the Warner Chilcott Defendants paid, results in a total of $22,000,000 paid

by Defendants combined  (the "Settlement Fund"), exclusive of interest.  As of this date,

$146,557.78 in interest has accrued on the Settlement Fund bringing the total Settlement Fund

plus interest to $ 22,146,557.78.

4.    As required by this Court in its Preliminary Approval Order (D.E. #202), notice of

the proposed settlement with Barr was mailed by first-class mail to all members of the Class.

Such notice to members of the Class is hereby determined to be fully in compliance with requirements of Fed. R. Civ. P. 23(e) and due process and is found to be the best notice practicable under the circumstances and to constitute due and sufficient notice to all entities entitled thereto.

5.     Due and adequate notice of the proceedings having been given to the Class and a full opportunity having been offered to the Class to participate in the fairness hearing, it is hereby determined that all Class Members are bound by this Final Order and Judgment.

6.     The settlement of this Direct Purchaser Class Action as to Barr, like the settlement as to the Warner Chilcott Defendants, was not the product of collusion between Plaintiffs and Barr or their respective counsel, but rather was the result of *bona fide* and arm's-length negotiations conducted in good faith between Class Counsel and Barr's Counsel.

7.     The Court has held a hearing to consider the fairness, reasonableness and adequacy of the proposed settlement, and has been advised that there have been no objections to the settlement from any members of the Class.

8.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby finally approves in all respects the Barr Settlement as set forth in the Settlement Agreement and finds that the Barr Settlement is, like the prior settlement with the Warner Chilcott Defendants, in all respects, fair, reasonable, adequate, and in the best interests of the Class. The Court further approves the establishment of the Settlement Fund as to Barr upon the terms and conditions set forth in the Settlement Agreement and the Escrow Agreement. The Parties are hereby directed to carry out the Barr Settlement in accordance with its terms and provisions.

9.     The Court approves the Plan of Allocation of Settlement Proceeds as proposed by Class Counsel in the Plan of Allocation (the "Plan"), dated February 27, 2009, and supported by

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 130
of 227
Case4:07-cv-05985-CW   Document311-8   Filed06/14/11   Page5 of 10

the Declaration of Jeffrey J. Leitzinger, Ph.D., dated February 25, 2009.  The Plan had

previously been summarized in the Notice of Proposed Settlement.  It directs Epiq Systems, Inc.,

the firm retained by Class Counsel as the claims administrator, to distribute the Direct Purchaser

Settlement Funds in the manner provided in the Plan.

      10.   All claims in the above-captioned action against Barr are hereby dismissed with

prejudice, and without costs, with such dismissal subject only to compliance by the Parties with

the terms and conditions of the Settlement Agreement and this Final Order and Judgment, over

which the Court retains jurisdiction.

      11.   In accordance with the Settlement Agreement, the Released Parties shall be

released and fully and forever discharged from all manner of claims, demands, actions, suits,

causes of action, damages wherever incurred, liabilities of any nature whatsoever, including

costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in

law or equity, that Plaintiffs or any member or members of the Class who have not timely

excluded themselves from the Class Action (including any of their past, present or future

officers, directors, stockholders, agents, attorneys, employees, legal representatives, trustees,

parents, associates, affiliates, subsidiaries, partners, heirs, executors, administrators, purchasers,

predecessors or successors), whether or not they object to the Settlement and whether or not they

make a claim upon or participate in the Settlement Fund, ever had, now has, or hereafter can,

shall or may have, directly, representatively, derivatively or in any other capacity, arising out of

any conduct alleged in the Class Action or otherwise relating to the facts, occurrences,

transactions, or other matters alleged in the Class Action and any damages or other harm

allegedly resulting there from (the "Released Claims").  As set forth in the Settlement

Agreement, the Released Claims do not include any claims relating to any product, defect,

breach of contract, or similar claim relating to Balziva or other Barr products not directly related to the facts, occurrences, transactions, or other matters alleged in the Class Action.

12.   All Class Members shall be forever enjoined and barred from asserting any of the matters, claims or causes of action released by the Settlement Agreement, and all Class Members shall be deemed to have forever released any and all such matters, claims and causes of action as provided for in the Settlement Agreement.

13.   Each settling Class Member is hereby deemed expressly to have waived and released, with respect to the Released Claims, any and all provisions, rights and benefits conferred by (i) Section 1542 of the California Civil Code, which reads:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

(ii) Section 17200, *et seq.* of the California Business and Professional Code; and (iii) any similar state, federal or other laws, rules or regulations or principles of common law.  Each settling Class Member may hereafter discover facts other than or different from those that it knows or believes to be true with respect to the subject matter of the Released Claims, but each settling Class Member shall hereby be deemed to have expressly waived and fully, finally and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim with respect to the Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such additional or different facts.

14.   Class Counsel have moved for an award of attorneys' fees and reimbursement of expenses.  Pursuant to Rules 23(h)(3), 54(d) and 52(a) of the Federal Rules of Civil Procedure, this Court makes the following findings of fact and conclusions of law:

5

(a)     that the Barr Settlement and the Warner Chilcott Settlement both confer a substantial benefit on the Class;

(b)     that the value conferred on the Class is immediate and readily quantifiable, in that, upon this Judgment's becoming final, each Class member who duly submits and executes a Claim Form in accordance with the Plan of Allocation will receive a cash payment that represents a substantial portion of the total overcharge allegedly incurred as a result of the conduct challenged in this lawsuit;

(c)     that Class Counsel effectively pursued the claims on behalf of the members of the Class before this Court in this complex case, and reasonably expended 17,488.70 hours in so doing, resulting in a lodestar of $7,226,504 at the normal and customary hourly rates of these law firms, which was expended with no guarantee it would be compensated;

(d)     that the Barr Settlement and Warner Chilcott Settlement were both obtained as a direct result of Class Counsel's skillful advocacy;

(e)     that the Barr Settlement and the Warner Chilcott Settlement were reached following mediation sessions presided over by Magistrate Judge Kay and Prof. Eric D. Green, and were negotiated in good-faith and in the absence of collusion;

(f)     that during the prosecution of this Class Action, Class Counsel incurred expenses in the amount of $1,152,390.34, which I find were reasonable and necessary to the representation of the Class and the prosecution of this lawsuit, and for which Class Counsel had no guarantee of reimbursement;

(g)     that Class members were advised in the Notice of Proposed Settlement of Class Action, which notice was approved by this Court, that Class Counsel intended to move for an award of attorneys' fees in an amount up to 33-1/3% of the gross Settlement Fund (including

6

the interest accrued thereon) created by both the Barr Settlement and the Warner Chilcott

Settlement, plus reimbursement of reasonable costs and expenses incurred in the prosecution of

this action;

        (h)     that Class Counsel did, in fact, move for an award of attorneys' fees in the

amount of 33-1/3% of the gross Settlement Fund (including the interest accrued thereon), plus

reimbursement of reasonable costs and expenses incurred in the prosecution of this action, which

motion has been on the docket and publicly available since February 13, 2009 (D.E. #203);

        (i)     that no member of the Class, which is composed of approximately 30

business entities, has objected to the award of attorneys' fees or expenses sought by Class

Counsel, and certain members of the Class have affirmatively expressed their lack of objection

and/or support for both settlements and the requested attorneys' fees and costs;

        (j)     that counsel who recover a common fund for the benefit of persons other

than themselves or their clients are entitled to a reasonable attorneys' fee from the fund as a

whole. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Blum v. Stenson*, 465 U.S. 886,

900 n.16 (1984);

        (k)     that the requested 33-1/3% fee award is well within the applicable range of

reasonable percentage fund awards, and results in a low multiplier.

        Accordingly, Direct Purchaser Plaintiffs' Class Counsel are hereby awarded attorneys'

fees in the amount of 33-1/3% of the gross Settlement Fund plus interest through this date, or a

total fee award of $ 7,382,185.93.  The Court finds this award to be fair and reasonable.  Further,

Direct Purchaser Plaintiffs' Class Counsel are hereby awarded $ 1,152,390.34 out of the

Settlement Fund to reimburse their expenses incurred in the prosecution of this lawsuit, which

the Court finds to be fair and reasonable, and which amount shall be paid to Direct Purchaser

Class Counsel from the Settlement Fund in accordance with the terms of the Settlement Agreement. The Executive Committee of Class Counsel shall allocate the fees and expenses among all of the Class Counsel.

15.    Neither this Final Order and Judgment, the Settlement Agreement, nor any of its terms or the negotiations or papers related thereto shall constitute evidence or an admission by any party or Releasee, that any acts of wrongdoing have been committed, and they shall not be deemed to create any inference that there is any liability therefore. Neither this Final Order and Judgment, the Settlement Agreement, nor any of the terms or negotiations or papers related thereto shall be offered or received in evidence or used for any purpose whatsoever, in this or any other matter or proceeding in any court, administrative agency, arbitration or other tribunal, other than as expressly set forth in the Settlement Agreement.

16.    Without affecting the finality of this judgment, the Court retains exclusive jurisdiction over the Barr and Warner Chilcott Settlements, and the Settlement Agreement, including the administration and consummation of the Settlement Agreement, the Plan of Allocation, and in order to determine any issues relating to attorneys' fees and expenses and any distribution to members of the Class. In addition, without affecting the finality of this judgment, Defendants and each member of the Class hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the District of Columbia, for any suit, action, proceeding or dispute arising out of or relating to the Settlement Agreement or the applicability of the Settlement Agreement, including, without limitation any suit, action, proceeding or dispute relating to the release provisions therein.

17.    The five Class Representatives are each hereby awarded $50,000 out of the Settlement Fund, for representing the Class, which amount is in addition to whatever monies

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 135
of 227
Case4:07-cv-05985-CW   Document341-8   Filed06/14/11   Page10 of 10

these plaintiffs will receive from the Settlement Fund pursuant to the Plan of Allocation. The Court finds these awards to be fair and reasonable.

18.     In the event the Barr Settlement does not become final in accordance with paragraph 5 of the Settlement Agreement, this Order and Final Judgment shall be rendered null and void as provided by the Settlement Agreement, shall be vacated, and all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Settlement Agreement.

19.     The Court hereby directs that this judgment be entered by the clerk forthwith pursuant to Federal Rule of Civil Procedure 54(b). The direction of the entry of final judgment pursuant to Rule 54(b) is appropriate and proper because this judgment fully and finally adjudicates the claims of the Plaintiffs and the Class against all Defendants in this action, allows consummation of the Settlement, and will expedite the distribution of the Settlement proceeds to the Class members.

SO ORDERED this the 20th day of April, 2009.

Hon. Colleen Kollar-Kotelly
United States District Judge
Washington, D.C.

9

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In Re:<br><br>SKELAXIN (METAXALONE) ANTITRUST LITIGATION | Lead Case No. 2:12-cv-83<br><br>MDL No. 2343<br><br>Judge Curtis L. Collier |
| THIS DOCUMENT RELATES TO:<br><br>All Direct Purchaser Class Actions | |

**ORDER GRANTING CLASS COUNSEL'S MOTION FOR ATTORNEY FEES, REIMBURSEMENT OF EXPENSES, <u>AND AWARDS FOR THE NAMED PLAINTIFFS</u>**

AND NOW, this _____ day of _____, 2014, upon consideration of Class Counsel's Motion for Attorney Fees, Reimbursement of Expenses and Awards for the Named Plaintiffs, the supporting Memorandum of Law, the Declarations of Thomas M. Sobol, Dean Hill Rivkin and Ronald J. Berke, and the record in this case, it is hereby ORDERED and DECREED that the Motion is GRANTED.

Class Counsel has moved for an award of attorney fees and reimbursement of expenses. The Court makes the following findings of fact and conclusions of law:

(1)     The Settlement confers a substantial benefit on the Class and the value is immediate and readily quantifiable.

(2)     Class Counsel vigorously and effectively pursued Class members' claims before this Court.  These efforts included an exhaustive factual investigation and discovery effort, including review and analysis of over one million pages of documents; responding to Defendants' discovery requests to Plaintiffs; engaging in extensive discovery battles involving multiple motions to compel; researching and drafting motions, including the opposition to

Defendants' motions to dismiss and a motion for class certification, appearing and arguing at hearings; working with experts concerning class certification, damages and causation issues; and successfully mediating and then negotiating the terms of this settlement agreement with counsel for Defendants.

(3)     The Settlement Fund is a "common fund", and courts have long recognized that a lawyer who recovers such a fund is entitled to a reasonable attorney fee from that fund as a whole.  *See Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980); *Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984).

(4)     The percentage-of-the-fund method is the proper method to compensate Class Counsel in this litigation.  The Court concurs with the observations made by other courts, such as: the lodestar method is cumbersome; the percentage-of-the-fund approach more accurately reflects the result achieved; and the percentage-of-the-fund approach has the virtue of reducing the incentive for plaintiffs' attorneys to over-litigate or "churn" cases.  *In re Southeastern Milk Antitrust Litig.,* Master File No. 2:08-MD-1000, 2013 U.S. Dist. LEXIS 70167, at *13 (E.D. Tenn. May 17, 2013); *In re F&M Distrib., Inc. Sec. Litig.,* Case No. 95-CV-71778-DT, 1999 U.S. Dist. LEXIS 11090, at *8 (E.D. Mich. June 29, 1999).

(5)     The Court recognizes that the trend in "common fund cases has been toward use of the percentage method."  *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532 (E.D. Mich. 2003) (courts in the Sixth Circuit have "indicated a preference for the percentage-of-the-fund method in common fund cases.").

(6)     The Court finds that the requested counsel fee of one third is fair and reasonable and fully justified.  The Court finds it is within the range of fees ordinarily awarded. *Southeastern Milk*, 2013 U.S. Dist. LEXIS 70167, at **15-16 ("attorneys' fees requested

2

represent one-third of the settlement fund.  Although the total fee requested is a very large amount . . .  the percentage requested is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit."); *In re Tricor Direct Purchaser Antitrust Litig.,* No. 05–340, Order and Final Judgment Approving Settlement, Awarding Attorneys' Fees and Expenses, Awarding Representative Plaintiff Incentive Awards, Approving Plan of Allocation, and Ordering Dismissal as to All Defendants at ¶ 11 (D. Del. Apr. 23, 2009) (approving one-third fee, equaling approximately $83 million); *In re Packaged Ice Antitrust Litig.,* Case No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427, at **76-77 ( E.D. Mich. Dec. 13, 2011) ("Importantly, the requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions.").  The Court also finds that the award is within the range of fee awards in settlements of this type.

(7)     The Court looked at the following factors to determine the reasonableness of the percentage:

(a) the value of the benefit rendered to the plaintiff class;

(b) the value of the services on an hourly basis;

(c) whether the services were undertaken on a contingent fee basis;

(d) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;

(e) the complexity of the litigation; and

(f) the professional skill and standing of counsel involved on both sides.

*Moulton v. United States Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (*quoting Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)).  After examination of these factors, the Court finds that these factors support the requested award.

(8)     The results achieved in this case fully support the requested fee.  The settlement

3

in this case provides a clear benefit to the Class: an immediate and certain payment, divided among a limited national class of direct purchasers, of $73 million in cash, plus accrued interest, less attorney fees, expenses, administration costs, and awards to the named Plaintiffs.

(9)     A one-third fee recovery in this matter would equate to a lodestar multiplier between 2.1 and 2.5.  This level multiplier is reasonable in light of what has been routinely accepted as fair and reasonable in complex matters such as this one.  *See, e.g., Bailey v. AK Steel Corp*., Case No. 1:06-cv-468, 2008 U.S. Dist. LEXIS 18838, at *7 (S.D. Ohio Feb. 28, 2008) (awarding multiplier of 3.04, noting that "[c]ourts typically ... increas[e] the lodestar amount by a multiple of several times itself" and identifying a "normal range of between two and five"); *Manners v. American General Life Ins. Co*., Civil Action No. 3-98-0266, 1999 U.S. Dist. LEXIS 22880, at *93 (M.D. Tenn. Aug 11, 1999) (3.8 multiplier); *In re Cardinal Health Sec. Litig.*, 528 F. Supp. 2d. 752, 770 (S.D. Ohio 2007) (multiplier of 5.9).  Multipliers much higher than the one requested here are also commonplace in complex pharmaceutical antitrust class actions.  *See, e.g*., *Cardizem*, 218 F.R.D. at 533 (noting that direct purchaser class plaintiffs received a fee award that equated to a lodestar multiplier of 3.7).  *See also Tricor,* No. 05–340, Order and Final Judgment Approving Settlement, Awarding Attorneys' Fees and Expenses, Awarding Representative Plaintiff Incentive Awards, Approving Plan of Allocation, and Ordering Dismissal as to All Defendants at ¶ 11 (approving lodestar multiplier of 3.93); *Meijer, Inc. v. 3M*, No. 04-5871, 2006 WL 2382718 (E.D. Pa Aug. 14, 2006), at *24 (approving a percentage fee award that translated to a 4.77 multiplier in case that settled after one year); *In re: Remeron Direct Purchaser Antitrust Litig.*, Civ. No. 03-0085, 2005 U.S. Dist. LEXIS 27013, at **47-48 (D. N.J. Nov. 9, 2005) (multiplier of 1.86 is on the "low end of the spectrum").

(10)     Class Counsel bore significant risks.  These included: (a) that the case would be

4

dismissed *via* a Rule 12(b)(6) motion; (b) the difficulties of demonstrating that King's patent infringement lawsuits not only had no realistic expectation of success (i.e., were objectively baseless), but were also filed with the subjective intent of interfering with King's competition in the market for Skelaxin; (c) that the Court would find that King and Mutual's baseless petitions to the FDA were protected under the *Noerr-Pennington* doctrine; (d) that the jury could find that Sandoz's withdrawal from the market for generic metaxalone prevented DPCPs from proving causation and damages; (e) that the jury could find that, regardless of the allegedly baseless litigation, FDA petitions, and the King-Mutual agreement not to compete, none of Mutual, Sandoz, CorePharma or other generic manufacturers were ready or able to enter the market for generic metaxalone prior to 2010.

(11)     Antitrust class actions are inherently complex.  The legal and factual issues are complicated and highly uncertain in outcome.  This case was no exception.  As the court noted in *Packaged Ice*, "[t]his antitrust litigation, like all litigation of its species, promises to be extremely complex and time intensive and there is no question that if settlement fails, the Defendants will mount a strong defense."  2011 U.S. Dist. LEXIS 150427, at *76 (citing *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 639 (E.D. Pa. 2003)).  *See also Cardizem*, 218 F.R.D. at 533 ("Antitrust class actions are inherently complex . . . this extraordinarily complex case raised a multitude of difficult issues in the areas of antitrust law, patent law, and laws governing pharmaceutical drugs.").

(12)     Direct purchaser class counsel are qualified in this complex area and performed well during the case.  Several of these firms have also been actively engaged in antitrust litigation (class and non-class) in the pharmaceutical industry for well over a decade.  Class Counsel demonstrated this experience and skill in the efficient and effective prosecution of this

action, and in achieving a relatively quick resolution.  As one court observed, "[t]the quality of work performed in a case that settles before trial is best measured by the benefit obtained." *Behrens v. Wometco Ent., Inc.*, 118 F.R.D 534, 547-48 (S.D. Fla. 1988).  *See also In re Delphi Corp. Securities, Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008) ("The ability of Lead Counsel to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award requested."), *F&M Distrib.*, 1999 U.S. Dist. LEXIS 11090, at *19 ("The skill and competence of the attorneys for the plaintiffs was evident, especially when viewed on the basis of the results that they obtained in this case, while the excellent advocacy skills of the defense counsel . . . were equally evident").

(13)    The Court, therefore, awards Class Counsel attorney fees in the amount of $24,333,000.00 (twenty-four million, three hundred thirty-three thousand dollars), *i.e.* one third of the $73 million Settlement Fund and the interest accrued thereon as attorney fees, to be allocated among Class Counsel, as well as approving reimbursement of $541,671.22 in expenses, which expenses were reasonable and necessary to the representation of the Class.

(14)    Numerous courts have found it appropriate to specially reward named class plaintiffs for the benefits they have conferred.  As the court noted in *Lonardo v. Travelers Indemnity Company*:

> Courts within the Sixth Circuit…recognize that, in common fund cases and where the settlement agreement provides for incentive awards, class representatives who have had extensive involvement in a class action litigation deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone.

706 F. Supp. 2d 766, 787 (N.D. Ohio 2010).  *See also Cardizem*, 218 F.R.D. at 535-36 (awarding $75,000 each to the corporate class representatives); *Meijer, Inc., et al. v. Barr Pharma., Inc.*, C.A. No. 05-2195, Order and Final Judgment, at ¶ 17 (D. D.C. Apr. 20, 2009) (awarding $50,000 to five class representatives – a total of $250,000); *Tricor,* No. 05–340, Order and Final

6

Judgment Approving Settlement, Awarding Attorneys' Fees and Expenses, Awarding Representative Plaintiff Incentive Awards, Approving Plan of Allocation, and Ordering Dismissal as to All Defendants at ¶ 14 (awarding $50,000 to each of three class representatives).

(15)    The Class Representatives diligently and completely fulfilled their obligations to the Class.  They stepped forward and pursued the Class' interests by filing suit on behalf of the members of the Class and undertaking the responsibilities attendant upon serving as a named plaintiff, including sitting for depositions on both document production and merits issues and responding to document requests and interrogatories.  The Class Representatives also participated in the settlement negotiations and attended the first Mediation Session at the request of Judge Coffman.

(16)    The named Plaintiffs are granted an award of $50,000 each, payable from the Settlement Fund, for their efforts in discovery and their role in bringing about this recovery on behalf of the Class.

It is SO ORDERED.

/s/ _____
Hon. Curtis L. Collier
U.S. District Court for the
Eastern District of Tennessee

7

 Caution
As of: December 16, 2016 4:04 PM EST

## *In re Tricor Direct Purchaser Antitrust Litig.*

United States District Court for the District of Delaware

April 23, 2009, Decided; April 23, 2009, Filed

CASE NO. 05-340 (SLR); (05-351); (05-358)

**Reporter**
2009 U.S. Dist. LEXIS 133251 *

***IN RE TRICOR*** DIRECT PURCHASER ANTITRUST LITIGATION;THIS DOCUMENT RELATES TO: Louisiana Wholesale Drug. Co., Inc.;Rochester Drug Co-Operative, Inc.;Meijer, Inc., et al.

**Subsequent History:** Later proceeding at *Fla. v. Abbott Labs., 2009 U.S. Dist. LEXIS 53298 (D. Del., June 23, 2009)*

**Prior History:** *Teva Pharms. USA, Inc. v. Abbott Labs., 2008 U.S. Dist. LEXIS 89777 (D. Del., Nov. 5, 2008)*

## Core Terms

Settlement, expenses, attorneys', class member, Purchaser, member of the class, awards, notice, class action, reimbursement, entities, damages, set forth, proceeds

**Counsel: [*1]** For Louisiana Wholesale Drug Company Inc., on behalf of itself and all others similarly situated (1:05-cv-00340-SLR), Plaintiff: Jeffrey S. Goddess, LEAD ATTORNEY, Jessica Zeldin, Rosenthal, Monhait & Goddess, P.A., Wilmington, DE; Adam M. Steinfeld, David P. Smith, John D. Radice, Michael F. Heim, Neill W. Clark, Russell A. Chorush, PRO HAC VICE.

For Rochester Drug Co-Operative Inc., on behalf of itself and all others similarly situated (1:05-cv-00340-SLR), Plaintiff: Jeffrey S. Goddess, LEAD ATTORNEY, Jessica Zeldin, Rosenthal, Monhait & Goddess, P.A., Wilmington, DE; Daniel Berger, Eric L. Cramer, John D. Radice, Peter Kohn, PRO HAC VICE, Michael F. Heim, Russell A. Chorush.

For Meijer Distribution Inc., on behalf of themselves and all others similarly situated (1:05-cv-00340-SLR), Plaintiff: Jeffrey S. Goddess, LEAD ATTORNEY,

Jessica Zeldin, Rosenthal, Monhait & Goddess, P.A., Wilmington, DE; David P. Germaine, John D. Radice, Joseph M. Vanek, Linda P. Nussbaum, Steig D. Olson, PRO HAC VICE, Michael F. Heim, Russell A. Chorush.

For Meijer Inc. (1:05-cv-00340-SLR), Plaintiff: Jeffrey S. Goddess, LEAD ATTORNEY, Jessica Zeldin, Rosenthal, Monhait & Goddess, P.A., Wilmington, DE; Linda **[*2]** P. Nussbaum, Richard J. Kilsheimer, Robert N. Kaplan, PRO HAC VICE, Michael F. Heim, Russell A. Chorush, Steig D. Olson.

For Walgreen Co. (1:05-cv-00340-SLR), Plaintiff: Elizabeth M. McGeever, LEAD ATTORNEY, Prickett, Jones & Elliott, P.A., Wilmington, DE; Scott E. Perwin, PRO HAC VICE.

For Eckerd Corporation, Maxi Drug Inc., Kroger Co. (1:05-cv-00340-SLR), Plaintiffs: Elizabeth M. McGeever, Prickett, Jones & Elliott, P.A., Wilmington, DE; Scott E. Perwin.

For CVS Pharmacy Inc., Rite Aid Hdqtrs Corp., Rite Aid Corporation (1:05-cv-00340-SLR), Plaintiffs: Elizabeth M. McGeever, LEAD ATTORNEY, Prickett, Jones & Elliott, P.A., Wilmington, DE; Joseph T. Lukens, Steve D. Shadowen, PRO HAC VICE.

For American Sales Company Inc. (1:05-cv-00340-SLR), Plaintiff: Elizabeth M. McGeever, LEAD ATTORNEY, Prickett, Jones & Elliott, P.A., Wilmington, DE.

All Plaintiffs (1:05-cv-00340-SLR), Plaintiff, Pro se.

Plaintiffs (1:05-cv-00340-SLR), Plaintiff, Pro se.

Impax Laboratories Inc. (1:05-cv-00340-SLR), Consol Plaintiff, Pro se.

In re Tricor Direct Purchaser Antitrust Litig.

For Abbott Laboratories (1:05-cv-00340-SLR), Defendant: Mary B. Graham, LEAD ATTORNEY, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE; Jeffrey I. Weinberger, Stuart N. Senator,  **[*3]** PRO HAC VICE, James Walter Parrett, Jr.

For Fournier Industrie et Sante' (1:05-cv-00340-SLR), Defendant: Anne Shea Gaza, Young, Conaway, Stargatt & Taylor LLP, Wilmington, DE; Bradley J. Demuth, David S. King, Sonia K. Pfaffenroth, PRO HAC VICE; Frederick L. Cottrell, III, Richards, Layton & Finger, PA, Wilmington, DE.

For Laboratories Fournier S.A. (1:05-cv-00340-SLR), Defendant: Anne Shea Gaza, Young, Conaway, Stargatt & Taylor LLP, Wilmington, DE; David S. King, PRO HAC VICE; Frederick L. Cottrell, III, Richards, Layton & Finger, PA, Wilmington, DE.

For Rochester Drug Co-Operative Inc., on behalf of itself and all others similarly situated (1:05-cv-00351-SLR), Plaintiff: Jeffrey S. Goddess, LEAD ATTORNEY, Rosenthal, Monhait & Goddess, P.A., Wilmington, DE; Daniel Berger, Eric L. Cramer, Peter Kohn, PRO HAC VICE.

For Meijer Inc. (1:05-cv-00358-SLR), Plaintiff: Jeffrey S. Goddess, LEAD ATTORNEY, Rosenthal, Monhait & Goddess, P.A., Wilmington, DE; Linda P. Nussbaum, Steig D. Olson, PRO HAC VICE.

For Meijer Distribution Inc., on behalf of themselves and all others similarly situated (1:05-cv-00358-SLR), Plaintiff: Jeffrey S. Goddess, LEAD ATTORNEY, Rosenthal, Monhait & Goddess, P.A., Wilmington,  **[*4]** DE; Linda P. Nussbaum, PRO HAC VICE; Steig D. Olson.

**Judges:** Hon. Sue L. Robinson.

**Opinion by:** Sue L. Robinson

# Opinion

**[PROPOSED] ORDER AND FINAL JUDGMENT APPROVING SETTLEMENT, AWARDING ATTORNEYS' FEES AND EXPENSES, AWARDING REPRESENTATIVE PLAINTIFF INCENTIVE AWARDS, APPROVING PLAN OF ALLOCATION, AND ORDERING DISMISSAL AS TO ALL DEFENDANTS**

The Court, having considered (a) the Direct Purchaser

Class's Motion for Final Settlement Approval; (b) the Brief in Support of the Direct Purchaser Class's Motion for Final Settlement Approval; (c) the Plan Of Allocation For Direct Purchaser Class; (d) the Declaration Of Jeffrey J. Leitzinger, Ph.D. Regarding Classwide Damages and the Proposed Plan Of Allocation ("Leitzinger Declaration"); (d) the Direct Purchaser Class's Motion for an Award Of Attorneys' Fees, Reimbursement of Expenses and Incentive Awards to the Class Representatives; (e) the Brief in Support of the Direct Purchaser Class's Motion For An Award Of Attorneys' Fees, Reimbursement of Expenses and Incentive Awards To The Class Representatives; (f) the Affidavit of Lead Counsel Barry S. Taus, Esq.; (g) the Corrected Supplemental Affidavit of Lead Counsel Barry S. Taus, Esq.; and (h) the Affidavit of Adam M. Steinfeld  **[*5]** dated March 9, 2009; and having held a hearing on April 23, 2009; and having considered all of the submissions and arguments with respect thereto; pursuant to _Rules 23_ and _54 of the Federal Rules of Civil Procedure_, and in accordance with the terms of the settlement agreement between Direct Purchaser Class Plaintiffs ("Plaintiffs") and Abbott Laboratories ("Abbott") and Fournier Industrie et Santé and Laboratories Fournier S.A. (together, "Fournier") (collectively, "Defendants") dated January 6, 2009 (the "Settlement Agreement"), it is hereby **ORDERED, ADJUDGED and DECREED that:**

1. This Order and Final Judgment incorporates by reference the definitions in the Settlement Agreement, and all terms used herein shall have the same meanings set forth in the Settlement Agreement. As set forth in the Preliminary Approval Order (D.I. No. 529), dated January 8, 2009, the previously certified Class is defined as follows:

> The Direct Purchaser Class includes all persons or entities in the United States who purchased TRICOR® in any form directly from Abbott Laboratories ("Abbott"), Fournier Industrie et Sante, or Laboratories Fournier S.A. ("Fournier") (Abbott and Fournier collectively are "Defendants")  **[*6]** at any time during the period April 9, 2002 through August 18, 2008. Excluded from the Class are Defendants and their officers, directors, management, employees, subsidiaries, or affiliates, all federal governmental entities, and the following entities that opted out of the Class: Ahold a/k/a American Sales Corp., Albertson's Inc., CVS Pharmacy, Inc., CVS Corporation, Eckerd Corporation, Maxi Drug, Inc. d/b/a Brooks Pharmacy, Hy-Vee, Inc., Kroger Co., Rite Aid

In re Tricor Direct Purchaser Antitrust Litig.

Corporation, Rite Aid Hdqtrs. Corp., Safeway, Inc., Walgreen Co., State of Oregon (all government entities), State of Washington (all government entities), Maryland State Employee and Retiree Health and Welfare Benefits Program and the Maryland Pharmacy Program, Connecticut Department of Social Services, State of New York (all government entities), State of Texas Heath and Human Services Commission, Commonwealth of Massachusetts Executive Office of Health and Human Services Office of Medicaid (MassHealth), Pennsylvania Department of Public Works and Department of Aging, and Overman & Stevenson Pharmacists.

2. The Court has jurisdiction over these actions and over each of the parties and over all members of the Class.

3. As required  [*7] by this Court in the Preliminary Approval Order, notice of the proposed Settlement was mailed by first-class mail to all members of the Class. Such notice to members of the Class is hereby determined to be fully in compliance with requirements of *Fed. R. Civ. P. 23(e)* and due process of law and is found to be the best notice practicable under the circumstances and to constitute due and sufficient notice to all entities entitled thereto.

4. Due and adequate notice of the proceedings having been given to the Class and a full opportunity having been offered to the Class to participate in the fairness hearing, it is hereby determined that all Class members are bound by this Final Order and Judgment.

5. The Settlement of this Direct Purchaser Class Action was not the product of collusion between Plaintiffs and Defendants or their respective counsel, but rather was the result of *bona fide* and arm's-length negotiations conducted in good faith between Class Counsel [1] and Defendants' counsel.

———————————————————

[1] The Court appointed Garwin Gerstein & Fisher, L.L.P., as Lead Counsel and as a member of the Executive Committee, along with the firms of Berger & Montague, P.C., Odom & Des Roches, L.L.P., The Smith Foote  [*8] Law Firm (formerly Percy, Smith & Foote), and Cohen, Milstein, Hausfeld & Toll (which is now known as Cohen Milstein Sellers & Toll). Kaplan, Fox & Kilsheimer, L.L.P., was substituted for Cohen Milstein midway through the litigation. Additional class counsel that actively participated in the case include Heim Payne & Chorush, L.L.P. (formerly Conley, Rose & Tayon), Vanek, Vickers & Masini, L.L.P., and Delaware counsel Rosenthal, Monhait & Goddess, P.A.

6. The Court has held a hearing to consider the fairness, reasonableness and adequacy of the proposed Settlement, and has been advised that there have been no objections to the Settlement from any members of the Class, and also that several members of the Class have explicitly indicated their support for the Settlement and Class Counsel's requested attorneys' fees.

7. Pursuant to *Rule 23 of the Federal Rules of Civil Procedure*, this Court hereby approves the Settlement, and finds that the Settlement is, in all respects, fair, reasonable and adequate to Class members. Accordingly, the Settlement shall be consummated in accordance with the terms and provisions of the Settlement Agreement. The Settlement is fair, reasonable and adequate in  [*9] light of the factors set forth in *Girsh v. Jepson, 521 F.2d 153 (3d Cir 1975)*, as follows:

(a) this case was highly complex, expensive and time consuming, and would have continued to be so if the case had not settled;

(b) there were no objections to the Settlement by Class members, and several Class members expressed affirmative support for the Settlement;

(c) because the case settled after the parties had completed discovery and commenced trial, Class Counsel had a full appreciation of the strengths and weaknesses of their case before negotiating the Settlement;

(d) Class Counsel and the Class would have faced numerous and substantial risks in establishing both liability and damages if they had decided to continue to litigate rather than settle;

(e) the Settlement amount is well within the range of reasonableness in light of the best possible recovery and the risks the parties would have faced if the case had continued to verdicts as to both liability and damages; and,

(f) the Settlement also satisfies the additional factors set forth in *In re Prudential Ins. Co. of America Sales Practice Litigation, 148 F.3d 283 (3d. Cir 1998)*, *cert. denied, 525 U.S. 1114, 119 S. Ct. 890, 142 L. Ed. 2d 789 (1999)*.

8. The Court approves  [*10] the Plan of Allocation of the Settlement proceeds (net of attorneys' fees, reimbursed expenses and incentive awards) as proposed by Class Counsel in the Plan of Allocation (the "Plan") (attached

In re Tricor Direct Purchaser Antitrust Litig.

hereto as Ex. A), and supported by the Leitzinger Declaration. The Plan, which had previously been summarized in the Notice of Proposed Settlement, proposes to distribute the net Settlement proceeds *pro rata* based on Class member purchases of Tricor, and does so fairly and efficiently. It directs Epiq Systems, Inc., the firm retained by Class Counsel as the claims administrator, to distribute the net Settlement proceeds in the manner provided in the Plan.

9. All claims in the above-captioned action against Defendants are hereby dismissed with prejudice, and without costs.

10. In accordance with the Settlement Agreement, upon the Settlement's becoming final in accordance with its terms:

(a) Defendants and their past, present and future parents, subsidiaries, divisions, affiliates, stockholders, officers, directors, insurers, general or limited partners, employees, agents, attorneys and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors and assigns **[*11]** of each of the foregoing) (the "Released Parties") are and shall be released and forever discharged from all manner of claims, demands, actions, suits, causes of action, damages, and liabilities, of any nature whatsoever (whether such claims, demands, actions, suits, causes of action, damages, or liabilities arise or are incurred before, during or after the date hereof), including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that Plaintiffs or any member or members of the Class who has (have) not timely excluded itself (themselves) from the Class (including any past, present or future officers, directors, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors, successors and assigns, acting in their capacity as such), whether or not they object to the Settlement and whether or not they make a claim upon or participate in the Settlement Fund, ever had, now has, or hereafter can, shall or may have, directly, representatively, derivatively **[*12]** or in any other capacity, to the extent arising out of or relating to any conduct:

(1) alleged in the Actions,

(2) alleged in any other complaint filed in any action currently consolidated or coordinated, or subject to a pending request for consolidation or coordination

with the Actions, or

(3) relating to any alleged change in formulation or withdrawal of TRICOR 200 or TRICOR160 or any conduct relating to the change to TRICOR 160 or the change to TRICOR 145, or any generic equivalents of TRICOR 200 or TRICOR 160 (reference to any formulation of TRICOR or any generic equivalent shall in each instance include any associated lower doses),

provided only that such conduct occurred or allegedly occurred prior to the date hereof, except as expressly provided for in paragraph 12 of the Settlement Agreement (the "Released Claims"). Plaintiffs and each member of the Class shall not sue or otherwise seek to establish or impose liability against any Released Party based, in whole or in part, on any of the Released Claims.

(b) In addition, the Court finds that each class member has expressly waived and released, upon the Settlement Agreement becoming final, any and all provisions, rights, benefits **[*13]** conferred by *§1542 of the California Civil Code*, which reads:

> **Section 1542**. **General Release—Claims Extinguished. A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable or equivalent to *§1542 of the California Civil Code*. Each Class member may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims which are the subject matter of this Paragraph 10, but each Class member hereby expressly waives and fully, finally and forever settles and releases, upon the Settlement Agreement's becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. For **[*14]** the avoidance of doubt, the Court finds that each Class member has expressly waived and fully, finally and forever settled and released any and all claims it may have against any Released Party under *§17200, et seq., of the California*

In re Tricor Direct Purchaser Antitrust Litig.

*Business and Professions Code* or any similar, comparable or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are hereby expressly incorporated into the definition of Released Claims.

11. Class Counsel have moved for an award of attorneys' fees and reimbursement of expenses. Pursuant to *Rules 23(h)(3)* and *54(d) of the Federal Rules of Civil Procedure*, and pursuant to the factors for assessing the reasonableness of a class action fee request as set forth in *Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000)*, this Court makes the following findings of fact and conclusions of law:

(a) the Settlement confers a monetary benefit on the Class that is substantial, both in absolute terms and when assessed in light of the risks of establishing liability and damages in this case;

(b) there were no objections by Class members to the requested fee award of one-third of the Settlement **[*15]** Fund, and in fact, numerous Class members, with purchases of Tricor during the relevant period in excess of 70% of the aggregate Class purchases, have affirmatively expressed their support for and/or lack of objection to the requested fee;

(c) Class Counsel have effectively and efficiently prosecuted this difficult and complex action on behalf of the members of the Class for over three and one-half years, with no guarantee they would be compensated;

(d) Class Counsel undertook numerous and significant risks of nonpayment in connection with the prosecution of this action;

(e) Class Counsel have reasonably expended tens of thousands of hours, and incurred millions of dollars in out of pocket expenses, in prosecuting this action, with no guarantee of recovery;

(f) fee awards similar to the fee requested by Class Counsel here have been awarded in similar cases, including numerous Hatch-Waxman antitrust class actions similarly alleging impeded entry of generic drugs;

(g) the Settlement achieved for the benefit of the Class was obtained as a direct result of Class Counsel's skillful advocacy;

(h) the Settlement was reached following negotiations held in good-faith and in the absence of collusion;

(i) **[*16]** the "percentage-of-the-fund" method is the proper method for calculating attorneys' fees in common fund class actions in this Circuit (*see, e.g., In re Rite Aid Sec. Litig., 396 F.3d 294, 305 (3d Cir. 2005))*;

(j) Class members were advised in the Notice of Proposed Settlement of Class Action, which notice was approved by this Court, that Class Counsel intended to move for an award of attorneys' fees in an amount up to 33-1/3% of the gross Settlement Fund (including the interest accrued thereon), plus reimbursement of reasonable costs and expenses incurred in the prosecution of this action;

(k) Class Counsel did, in fact, move for an award of attorneys' fees in the amount of 33-1/3% of the gross Settlement Fund (including the interest accrued thereon), plus reimbursement of reasonable costs and expenses incurred in the prosecution of this action, which motion has been on the docket and publicly available since March 9, 2009;

(l) As detailed in Class Counsel's affidavits, a one-third fee award would equate to a lodestar multiplier of approximately 3.93. An examination of recently approved multipliers in other Hatch-Waxman class actions similarly alleging impeded generic competition reveals **[*17]** that the multiplier requested here is well within the acceptable range;

(m) in light of the factors and findings described above, the requested 33-1/3% fee award is within the applicable range of reasonable percentage fund awards.

Accordingly, Class Counsel are hereby awarded attorneys' fees in the amount of $83,333,333.33 from the Settlement Fund, plus one-third of the interest earned on the Settlement proceeds from January 27, 2009 (the date of funding of the Settlement Fund) to the date of payment, at the same net interest rate earned by the Settlement Fund. The Court finds this award to be fair and reasonable.

Further, Class Counsel are hereby awarded $3,590,415.82 out of the Settlement Fund to reimburse them for the expenses they incurred in the prosecution of this lawsuit, which expenses the Court finds to be fair, and reasonably incurred to achieve the benefits to the Class obtained in the Settlement to the Class.

The awarded fees and expenses shall be paid to Class Counsel from the Settlement Fund in accordance with the terms of the Settlement Agreement. Lead Counsel shall allocate the fees and expenses among all of the

In re Tricor Direct Purchaser Antitrust Litig.

Class Counsel.

12. Neither this Final Order and Judgment, the **[\*18]** Settlement Agreement, nor any and all negotiations, documents and discussions associated with it shall be deemed or construed to be an admission or evidence of any violation of any statute or law, of any liability or wrongdoing by Defendants, or of the truth of any of the claims or allegations contained in any complaint or any other pleading or document, and evidence thereof shall not be discoverable, admissible or otherwise used directly or indirectly, in any way by or against Plaintiffs or Defendants, whether in this Direct Purchaser Class Action or in any other action or proceeding.

13. Without affecting the finality of this judgment, the Court retains exclusive jurisdiction over the Settlement, and the Settlement Agreement, including the administration and consummation of the Settlement Agreement, the Plan of Allocation, and in order to determine any issues relating to attorneys' fees and expenses and any distribution to members of the Class. In addition, without affecting the finality of this judgment, Defendants and each member of the Class hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding or dispute arising out of or relating **[\*19]** to the Settlement Agreement or the applicability of the Settlement Agreement, including, without limitation any suit, action, proceeding or dispute relating to the release provisions herein, except that this submission to the Court's jurisdiction shall not prohibit (a) the assertion of the forum in which a claim is brought that the release included in the Settlement Agreement is a defense, in whole or in part, to such claim or, (b) in the event that such a defense is asserted in that forum, the determination of its merits in that forum.

14. The three Class Representatives are each hereby awarded $50,000 out of the Settlement Fund, for representing the Class, which amount is in addition to whatever monies these plaintiffs will receive from the Settlement Fund pursuant to the Plan of Allocation. The Court finds these awards to be fair and reasonable.

15. In the event the Settlement does not become final in accordance with paragraph 5 of the Settlement Agreement, this Order and Final Judgment shall be rendered null and void as provided by the Settlement Agreement, shall be vacated, and all orders entered and releases delivered in connection herewith shall be null and void to the extent **[\*20]** provided by and in accordance with the Settlement Agreement.

16. The Court hereby directs that this judgment be entered by the clerk forthwith pursuant to *Federal Rule of Civil Procedure 54(b)*. The direction of the entry of final judgment pursuant to *Rule 54(b)* is appropriate and proper because this judgment fully and finally adjudicates the claims of the Plaintiffs and the Class against all Defendants in this action, allows consummation of the Settlement, and will expedite the distribution of the Settlement proceeds to the Class members.

SO ORDERED this the 23d day of April, 2009.

/s/ Sue L. Robinson

Hon. Sue L. Robinson

U.S. District Court for the District of Delaware

**End of Document**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| |
|---|
| *In re U.S. Foodservice, Inc.*<br>*Pricing Litigation* |
| This Document Relates To: All Matters |

Case No. 3:07-md-1894 (AWT)

## <u>ORDER APPROVING SETTLEMENTS</u>

This matter came before the Court for a fairness hearing on December 9, 2014, pursuant to Federal Rule of Civil Procedure 23 and the Preliminary Approval Orders of the Court dated July 14, 2014 [Dkt. Nos. 508 and 509] (the "Preliminary Approval Orders"), and on the October 26, 2014 application of Plaintiffs for final approval of the Settlements set forth in (i) the Settlement Agreement (the "USF Settlement Agreement") executed May 20, 2014 by Plaintiffs and Defendant U.S. Foods, Inc. f/k/a U.S. Foodservice, Inc. ("USF"), and (ii) the Settlement Agreement (the "Redgate Settlement Agreement") executed on July 13, 2014 by Plaintiffs and Defendant Gordon Redgate.   Notice having been given to the Class as required in the Preliminary Approval Orders, and the Court having considered the USF Settlement Agreement and the Redgate Settlement Agreement, and all papers filed and proceedings held herein, and good cause appearing therefore, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1.  Capitalized terms not otherwise defined in this Order shall have the same meanings given to them in the USF Settlement Agreement.

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 150
of 227
Case 3:07-md-01894-AWT   Document 521   Filed 12/09/14   Page 2 of 9

2.   The Court has jurisdiction over the subject matter of this Action and over all parties to this

Action, including all members of the Class certified by the Court pursuant to Fed. R. Civ. P.

23 to include:

Any person (individual or entity) in the United States who purchased products from
USF pursuant to an arrangement that defined a sale price in terms of a cost
component plus a markup ("cost-plus contract"), and for which USF used a VASP
transaction to calculate the cost component.

The following potential class members have timely requested exclusion from the Class (and

not withdrawn that request): Clossman Catering, LLC, The Estate of Bryan Fogle, and The

University of Washington.   These entities are hereby excluded from the Class and are not

subject to this Order.

3.   The Court determines that Plaintiffs are alleging violations of the Racketeer Influenced and

Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*., as well as breach of contract

claims.     The Court also determines that Defendants deny and, in entering the USF

Settlement Agreement and the Redgate Settlement Agreement, have not admitted Plaintiffs'

allegations.

4.    The Court determines that the USF Settlement Agreement and the Redgate Settlement

Agreement have been negotiated vigorously and at arm's length by the parties, that the

settlements arise from a genuine controversy between the parties and not as a result of

collusion, and were not procured by fraud or misrepresentation.

5.   Pursuant to Federal Rule of Civil Procedure 23, and there being no objection to the USF

Settlement Agreement or the Redgate Settlement Agreement, the Court hereby approves and

confirms the USF Settlement Agreement and the Redgate Settlement Agreement as being

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 151
of 227
Case 3:07-md-01894-AWT   Document 521   Filed 12/09/14   Page 3 of 9

fair, reasonable, and adequate settlements and compromises of the Action, adopts the USF Settlement Agreement and the Redgate Settlement Agreement as its judgment, and orders that the USF Settlement Agreement and the Redgate Settlement Agreement shall herewith be effective, binding, and enforced according to their terms and conditions.

6.  Notice of the pendency of this Action as a class action and of the USF Settlement Agreement and the Redgate Settlement Agreement has been provided and made in accordance with the Preliminary Approval Orders, and the Court finds as follows:

    a.  Such notices and the method by which they were provided to the Class were appropriate and reasonable;

    b.  Such notices included individual notice to all members of the Class that could be identified through reasonable efforts, publication of such notice in *the Wall Street Journal*, and banner notice placed in various foodservice industry journals and websites;

    c.  Such notices provided valid, due and sufficient notice of these proceedings and of the matters set forth therein, including the settlements described in the USF Settlement Agreement and the Redgate Settlement Agreement, and including information regarding the procedure for making objections by all persons to whom such notices were directed; and

    d.  Such notices fully satisfied the requirements of Federal Rule of Civil Procedure 23 and the requirements of due process.

7.  The Action is hereby dismissed as against all Defendants, with prejudice and without costs, except as set forth in the USF Settlement Agreement, the Redgate Settlement Agreement, and this Order.  Any other matter filed in or transferred to *In re U.S. Foodservice Inc. Pricing*

*Litig.*, Nos. 3:07-md-1894, 3:06-cv-1657, 3:08-cv-4, 3:08-cv-5 (D. Conn.) (the "MDL") shall be dismissed as against all Defendants, with prejudice and without costs.

8.  Each member of the Class, on its own behalf and on behalf of those who directly, indirectly, derivatively, or in any other capacity ever had, now have, or hereafter may have Released Claims, as defined in section 11 of the USF Settlement Agreement and the Redgate Settlement Agreement, shall be deemed to have and shall have absolutely and unconditionally released and forever discharged with prejudice the Released Parties from all Released Claims.  Each member of the Class is hereby permanently barred and enjoined from asserting any Released Claims.

9.  The "Released Parties" are Koninklijke Ahold N.V. ("Ahold"), US Foods, Gordon Redgate, and any of their respective past, present, and future parents, subsidiaries, divisions, business units, associated and affiliated companies, agents, directors, officers, members, general partners, limited partners, employees, affiliates, subsidiaries, divisions, representatives, advisors, attorneys, associates, associations, consultants, successors, shareholders, heirs, executors, and administrators.

10.  All members of the Class are permanently barred and enjoined from the institution and prosecution, either directly or indirectly, of any other actions in any court asserting any and all Released Claims against any Released Party.

11.  Payments shall be made to the Class Members in accordance with the Plan of Allocation described in Plaintiffs' Memorandum of Law in Support of Plaintiffs Motion for Final Approval of the Settlements ("the Plan of Allocation").  The Plan of Allocation is hereby approved as fair, reasonable, and adequate.  The Court directs that the entire Settlement

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 153
of 227
Case 3:07-md-01894-AWT   Document 521   Filed 12/09/14   Page 5 of 9

Fund, less attorney's fees, expenses, incentive payments, and administration fees, be distributed to the claimants pro rata.  The pro rata distribution shall be calculated by comparing each claimant's purchases of relevant products to the total amount of purchases of relevant products by all claimants submitting valid claims, providing each claimant with a proportion of the Settlement Fund equal to its portion of the relevant purchases validly claimed.

12. Class Counsel has moved for an award of attorney's fees and reimbursement of expenses. Pursuant to Rules 23(h)(3) and 54(d) of the Federal Rules of Civil Procedure, and pursuant to the factors for assessing the reasonableness of a class action fee request as set forth in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000), the Court makes the following findings of fact and conclusions of law:

    a.   There were no objections by Class Members to the requested fee award of one-third of the Settlement Fund;

    b.   Class Counsel expended significant time and labor (approximately 94,000 hours) on behalf of the Class;

    c.   The magnitude and complexity of the litigation warrant payment to Class Counsel of the amount requested;

    d.   Class Counsel undertook numerous and significant risks of non-payment in the representation;

    e.   Class Counsel provided the Class with high quality representation;

f.   The "percentage-of-the-fund" method is the preferred method for calculating attorney's fees in common fund actions in this Circuit (*see, e.g.* *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 136 (S.D.N.Y. 2008)).

g.   The requested fee is reasonable in relation to the settlement;

h.   Public policy considerations support awarding Class Counsel its requested fee award;

i.   Class Members were advised in the Notice of Class Action Settlement with USF, which was approved by the Court, that Class Counsel intended to move for an award of attorney's fees of up to one-third of the gross Settlement Fund, plus reimbursement of reasonable costs and expenses incurred in the prosecution of this action;

j.   Class Counsel did, in fact, move for an award of attorney's fees in the amount of one-third of the Settlement Fund, plus reimbursement of reasonable costs and expenses incurred in the prosecution of this action, incentive payments to class representatives, and administration expenses, which motion has been publicly available on the docket and on the class website at www.usfoodservicepricinglitigation.com since August 29, 2014 [Dkt. No. 510];

k.   As detailed in the Joint Declaration of Richard L. Wyatt, James E. Hartley, R. Laurence Macon, and Joe R. Whatley in Support of Class Counsel's

6

Motion for Award of Fees and Expenses from The Common Fund and for Award of Incentive and Reimbursement Payment for Class Representatives [Dkt. No. 510], a one-third fee would equate to a lodestar multiplier of approximately 2.23.   In comparison with similar common fund cases, the multiplier requested here is well within the acceptable range;

l.   In light of factors and findings described above, the requested one-third (33 1/3 %) fee award is within the applicable range of reasonable percentage fund awards.

13. Accordingly, Class Counsel is hereby awarded attorney's fees of one-third of the Settlement Fund ($99 million) from the Settlement Fund. The Court finds this award to be fair and reasonable.

14. Class Counsel is hereby additionally awarded $8,081,443.80 out of the Settlement Fund as reimbursement for the expenses incurred in the prosecution of this lawsuit, which expenses the Court finds to be fair, and reasonably incurred to achieve the benefits to the Class obtained in the USF Settlement Agreement and the Redgate Settlement Agreement.

15. The awarded fees and expenses shall be paid to Class Counsel in accordance with the terms of the Settlement Agreement.   Lead Class Counsel shall allocate the fees and expenses among all Class Counsel.

16. The Court finds that the class representatives, Catholic Healthcare West, Waterbury Hospital, Thomas & King, Inc., and Frankie's Franchise Systems Inc., provided benefit to the Class by

their participation in the Action, and hereby awards $40,000 in incentive and reimbursement payments to each of the representatives ($160,000 total), in addition to whatever monies each Class Representative will receive from the Settlement Fund pursuant to the Plan of Allocation, to compensate the Class Representatives for the effort, time, and expense spent by them in connection with the prosecution of the Action.

17. The Court finds that Lizard's Thicket of South Carolina provided benefit to the Class and is hereby awarded an incentive and reimbursement payment of $20,000, in addition to whatever monies Lizard's Thicket will receive from the Settlement Fund pursuant to the Plan of Allocation, to compensate it for the effort, time, and expense spent by it in connection with the prosecution of the Action.

18. The Court will approve payment to the court-approved Claims and Notice Administrator, Gilardi, Inc. ("Gilardi") for reasonable costs and expenses associated with providing notice to the Class and administration of the Settlement Fund.  Class Counsel shall submit a request for Gilardi's fees and expenses with its Motion for Approval of Distribution of the Settlement Fund.

19. Neither the USF Settlement Agreement, the Redgate Settlement Agreement, nor the terms of such agreements shall be offered or received into any action or proceeding for any purposes, except: (a) in an action or proceeding arising under the USF Settlement Agreement and the Redgate Settlement Agreement or arising out of or relating to the Preliminary Approval Order or the Final Order; or (b) in any action or proceeding where the releases provided pursuant to the USF Settlement Agreement and the Redgate Settlement Agreement may serve as bars to recovery.

20. Without affecting the finality of this Judgment in any way, the Court hereby retains continuing and exclusive jurisdiction over the USF Settlement Agreement and the Redgate Settlement Agreement, including (a) the administration, consummation, interpretation and enforcement of the USF Settlement Agreement and the Redgate Settlement Agreement, (b) the implementation of the Settlement and any award or distribution of the Settlement Fund; (c) the disposition of the Settlement Fund and implementation of the Plan of Allocation; and (d) all Parties hereto for the purpose of construing, enforcing, and administering the Settlement.

## **ENTRY OF JUDGMENT**

The Clerk of Court is directed to enter the Final Judgment in the form attached to this Order dismissing all Released Claims with prejudice.

It is so ordered.

Dated this 9th day of December 2014, at Hartford, Connecticut.


_____
/s/
Alvin W. Thompson
United States District Judge

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| *In re U.S. Foodservice, Inc.*<br>*Pricing Litigation* | Case No. 3:07-md-1894 (AWT) |
| This Document Relates To: All Matters | |

## FINAL JUDGMENT

The Court has entered the Final Approval Order as to the parties' Settlements. Accordingly, Plaintiffs' claims against U.S. Foods, Inc. f/k/a U.S. Foodservice, Inc. and Gordon Redgate are hereby **DISMISSED WITH PREJUDICE**, and this Final Judgment shall issue consistent with Federal Rule of Civil Procedure 58.

It is so ordered.

Dated this 9th day of December 2014, at Hartford, Connecticut.

_____
Alvin W. Thompson
United States District Judge

Case No. 1:20-cv-01810-JLK Document 2435-13 filed 01/18/17 USDC Colorado   pg 159
Case 2:04-md-01616-JWL Document 3276 Filed 07/29/16 Page 1 of 2
of 227

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| IN RE: URETHANE ANTITRUST LITIGATION | ) ) ) ) | MDL No. 1616 No. 04-MD-1616-JWL-JPO |
| This Document Relates To: Polyether Polyol Cases | ) ) ) ) | |

## ORDER AWARDING ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE PAYMENTS

Upon consideration of Class Counsel's Petition For Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Award of Incentive Payments to Class Representatives (Doc. #3250), and all papers submitted in support thereof or in opposition thereto, and after a July 27, 2016 hearing thereon, it is hereby ORDERED that the Petition is GRANTED.  It is specifically ORDERED that:

1.      The Notice provided to the Class of Class Counsel's petition for award of attorneys; fees, reimbursement of litigation expenses, and award of incentive payments to class representatives complied with this Court's April 27, 2016 Order (Dkt. No. 3243), meets the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, was the best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons entitled thereto.

2.      Co-Lead Counsel Fine, Kaplan and Black, R.P.C. and Cohen Milstein Sellers & Toll PLLC ("Co-Lead Counsel") are awarded attorneys' fees in the amount of one third (1/3) of the funds held in the Escrow Account (as defined by paragraph 12 of the Dow Settlement Agreement dated February 25, 2016), including interest earned thereon for the same time period

Case No. 1:20-cv-01810-LK Document 2425-13 Filed 01/18/17 USDC Colorado pg 160
Case 2:04-md-01616-JWL Document 3270 Filed 07/29/16 Page 2 of 2
of 227

and at the same rate as that earned by the Settlement Fund until disbursed to Co-Lead Counsel, less the amount of expenses awarded pursuant to Paragraph 3 below. These fees shall be payable to Class Counsel as soon as practicable after entry of this Order.

3.      Co-Lead Counsel are awarded reimbursement of litigation costs and expenses in the amount of $1,545,872.58 which shall be paid from the funds held in the Escrow Account as defined by paragraph 12 of the Dow Settlement Agreement dated February 25, 2016. The reimbursement of costs and expenses from the Escrow Account shall be made as soon as practicable after entry of this Order.

4.      The award of attorneys' fees shall be allocated among plaintiffs' counsel by agreement among Co-Lead Counsel in a manner that, in Co-Lead Counsel's good-faith judgment, reflects each plaintiffs' counsel's contribution to the institution, prosecution and resolution of the litigation against Defendants.

5.      Class Representatives shall receive a total of $500,000 in incentive awards to be apportioned as follows: Seegott Holdings, Inc. shall receive $200,000; Quabaug Vibram Innovation LLC shall receive $150,000; and Industrial Polymers, Inc. shall receive $150,000. The incentive awards shall be paid from the Escrow Account defined by paragraph 12 of the Dow Settlement Agreement dated February 25, 2016.

6.      The Court retains jurisdiction over matters that are the subject of this Order until after full disbursement of the Escrow Accounts, and/or as necessary to effectuate the terms of the Settlement Agreements relating to attorneys' fees and litigation costs and expenses.

ENTERED THIS 29th day of July, 2016.

s/ John W. Lungstrum
Honorable John W. Lungstrum
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IVAX CORPORATION *et al.*,                    :
                                              :
            **Plaintiffs,**                   :
                                              :
        v.                                    :        **Case No. 1:02CV00593 (JR)**
                                              :
AZTEC PEROXIDES, LLC *et al.*,                :
                                              :
            **Defendants.**                   :
_____ :

## <u>ORDER</u>

Upon review of Class Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement

of Expenses and Incentive Award to the Named Plaintiffs, it is hereby ordered:

Class Plaintiffs' motion is GRANTED. The Court finds that the requested award of

attorneys' fees, amounting to (i) 25% plus accrued interest of the Degussa Settlement Fund, and

(ii) 25% plus accrued interest of the Atofina Settlement Fund, to be fair and reasonable and that

notice to potential members of the Settlement Class has been given in an adequate and sufficient

manner complying in all respects with the requirements of Federal Rule of Civil Procedure 23(e).

The notice properly informed Class members that the Degussa and Atofina Settlement

Agreements provide that, after Court approval, the payment of attorneys' fees and unreimbursed

costs and expenses may be paid out of the Settlement Fund. No Settlement Class member

objected to Class Counsel being paid such amounts out of the Settlement Fund. Moreover,

neither Degussa nor Atofina have opposed Class Counsel's request for attorneys' fees.

Accordingly, the Court awards Class Counsel attorneys' fees in the amount of $5,250,000 plus

accrued interest.

The Court further awards Class Counsel $942,776.50 in unreimbursed costs and expenses, and $100,000 as in incentive award to the named plaintiff Ivax Corporation, and $100,000 as an incentive award to the named plaintiff Polyvel, Inc. for their respective roles in bringing about the recovery on behalf of the Class.  The notice properly informed Class members that these incentive awards and unreimbursed expenses may be paid out of the Settlement Fund and no Class member objected to Class Counsel being paid such amounts out of the Settlement Fund.

So ORDERED this _24th__ day of August, 2005.

_____/s/_____
Judge James Robertson
United States District Judge

$\mathcal{G}^{\chi_6}$

(713)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

**MARCHBANKS TRUCK SERVICE, INC.,** *et al.,* **on behalf of themselves and all others similarly situated,**

Plaintiffs,

v.

**COMDATA NETWORK, INC.,** *et al.,*

Defendants.

---

**Civil Action No. 07-1078-JKG**

**Consolidated Case**

**FILED**

JUL 1 4 2014

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

---

**ORDER FOR AN AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND PAYMENT
OF SERVICE AWARDS TO THE CLASS REPRESENTATIVES**

WHEREAS, the Court, having considered: (a) Plaintiffs' Motion for Final Settlement Approval and supporting documents; (b) the Plan of Allocation and Distribution; (c) the Definitive Master Settlement Agreement, dated March 3, 2014, between and among the Plaintiffs, Plaintiffs' Class Counsel, and all Defendants (the "Settlement Agreement"); (d) the Court's March 17, 2014 Preliminary Approval Order (Dkt. No. 705); (e) Plaintiffs' Unopposed Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Payment of Service Awards to the Class Representatives and supporting memorandum and exhibits; and, (f) any supplemental submissions in support thereof, having held a Fairness Hearing on July 14, 2014, and having considered all of the submissions and arguments with respect to the Settlement,[1] and otherwise being fully informed, and good cause appearing therefore;

7-14-14   mailed + e-mailed

---

[1] Certain capitalized terms used in this Order are defined in Section I of the Settlement Agreement.

1

IT IS HEREBY ORDERED AS FOLLOWS:

1.    The Court has entered a separate order finally approving the Settlement Agreement, finding, among other things, that the Settlement Agreement was the result of extensive *bona fide* arm's-length good faith negotiations, is in all respects fair, reasonable, and adequate, is in the best interest of the Settlement Class, is within a range that responsible and experienced attorneys could accept considering all relevant risks and factors, and is in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Class Action Fairness Act, and in light of the factors set forth in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).

2.    Class Counsel have moved for an award of attorneys' fees and reimbursement of expenses from the Aggregate Settlement Fund. Pursuant to Rules 23(h)(3) and 54(d) of the Federal Rules of Civil Procedure, and pursuant to the factors for assessing the reasonableness of a class action fee request as set forth in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000), and *In re Prudential Ins. Co. of American Sales Practices Litig.*, 148 F.3d 283, 340 (3d Cir. 1998), this Court makes the following findings of fact and conclusions of law:

    (a)    the Settlement confers an immediate monetary benefit to the Settlement Class of $130 million that is substantial, both in absolute terms, and when assessed in light of the risks of establishing liability and damages in this case;

    (b)    the Settlement also contains valuable prospective relief in the form of, among other things, (i) meaningful and enforceable commitments by Comdata to modify or not to enforce portions of Comdata's merchant services agreements with Settlement Class Members and the Major Chains that Plaintiffs had challenged in this case as being anticompetitive, and (ii) an agreement by Comdata to engage in a good faith negotiations relating to, *inter alia*, merchant

2

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 165
of 227
Case 2:07-cv-01078-JKG   Document 713   Filed 07/14/14   Page 3 of 8

transaction fees with certain truck stop Buying Groups that are, collectively, composed of hundreds of members of the Settlement Class;

(c)   Settlement Class Members were advised of Class Counsel's intention to seek attorneys' fees of one-third of only the cash value of the Settlement Fund, litigation costs of up to $7.5 million and service awards totaling $315,000 ($150,000 for Marchbanks Truck Service, Inc. d/b/a Bear Mountain Travel Stop ("Marchbanks Truck Service"), $75,000 for Gerald F. Krachey d/b/a Krachey's BP South ("Krachey"), $75,000 for Walt Whitman Truck Stop, Inc. ("Walt Whitman"), and $15,000 for Mahwah Fuel Stop ("Mahwah")) in the Long Form Notice, approved by this Court and mailed by the Settlement Administrator to Settlement Class members by the April 14, 2014 deadline established by the Court.   Additionally, Settlement Class Members were informed about the fee, costs and service award requests through the Court approved Publication Notice, which was published in the May 2014 issue of NACS (National Association for Convenience and Fuel Retailing) Magazine and NATSO's e-newsletters for the weeks of April 14 through May 5, 2014, and which publications directed Settlement Class Members to the settlement website (www.truckstopantitrustsettlement.com) established by the Settlement Administrator that was launched on April 14, 2014. The settlement website contains copies of, *inter alia*, the Settlement Agreement and the Long Form Notice, both of which notify Settlement Class Members of the fee, costs, and service award requests.

(d)   Class Counsel filed a motion for an award of attorneys' fees in the amount of one third of the Aggregate Settlement Fund ($43,333,333) plus interest earned on that amount since the Aggregate Settlement Fund was created, as well as reimbursement of reasonable costs and expenses incurred in the prosecution of this action of $6,696,856.98. Plaintiffs' motion papers have been publicly available since May 5, 2014, on the docket of this

3

action and on the settlement website;

(e)     Representatives of four major Independent Truck Stop Buying Groups, collectively representing hundreds of Settlement Class Members, submitted declarations expressing affirmative support for the fee request, the request for reimbursement of expenses, and the requested service awards;

(f)     Class Counsel have effectively and efficiently prosecuted this difficult and complex action on behalf of the members of the Settlement Class for seven years, with no guarantee they would be compensated for their time or reimbursed for their out-of-pocket costs;

(g)     Class Counsel undertook numerous and significant risks of nonpayment in connection with the prosecution of this action;

(h)     Class Counsel have reasonably expended 85,907.47 hours prosecuting this complex, contingent litigation over the past seven years, resulting in a total lodestar of $49,785,073.74, and reasonably incurred $6,696,856.98 in out-of-pocket expenses, in prosecuting this action, with no guarantee of recovery;

(i)     the Settlement achieved for the benefit of the Settlement Class was obtained as a direct result of Class Counsel's skillful advocacy;

(j)     the Settlement was reached following negotiations held in good-faith and in the absence of collusion;

(k)     the "percentage-of-the-fund" method is the proper method for calculating attorneys' fees in common fund class actions in this Circuit (*see*, *e.g.*, *In re Rite Aid Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005));

(l)     fee awards of one-third of the settlement amount are commonly awarded in this Circuit, while here Class Counsel seek only a fee of one-third of the cash value of the

4

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 167
of 227
Case 2:07-cv-01078-JKG   Document 713   Filed 07/14/14   Page 5 of 8

Settlement, even though the Settlement has valuable prospective relief;

(m)     as detailed in Class Counsel's declarations, a fee of one-third of the cash competent of the Settlement would equate to less than Class Counsel's total lodestar and thus result in a multiplier below 1, and therefore no risk premium whatsoever;

(n)     Plaintiffs' expert economist, Dr. Hal J. Singer, submitted a Declaration to this Court dated March 4, 2014, detailing an economic analysis of the portion of the prospective relief relating to the enforceable changes in Comdata's merchant services agreements, and valuing that relief at between $260 million and $491 million. Plaintiffs' expert economist has, therefore, opined that the total value of the Settlement to the Settlement Class is between $390 million and $621 million. Thus, if Dr. Singer is correct, the fee Class Counsel is seeking is, at most, slightly more than 11% of the total value of the Settlement;

(o)     in light of the factors and findings described above, the requested fee award is within the applicable range of reasonable percentage of the fund awards.

3.   Accordingly, Class Counsel are hereby awarded attorneys' fees to be paid from the Aggregate Settlement Fund in the amount of $43,333,333 plus interest in the amount of $19,674, which represents the interest earned on that amount since the Aggregate Settlement Fund was created. The Court finds this award to be fair and reasonable.

4.   Further Class Counsel are hereby awarded $6,696,856.98 out of the Aggregate Settlement Fund to reimburse them for the expenses they incurred in the prosecution of this lawsuit, which expenses the Court finds to be fair and reasonably incurred to achieve the benefits to the Settlement Class obtained in the Settlement. The awarded fees and expenses shall be paid to Class Counsel from the Aggregate Settlement Fund in accordance with the terms of the Settlement Agreement.

5. Plaintiffs' Co-Lead Class Counsel[2] shall allocate the fees and expenses among all of Class Counsel in a manner that Plaintiffs' Co-Lead Class Counsel in good faith believes reflects the contributions of each firm working for Plaintiffs and the Settlement Class in the prosecution and settlement of the claims against Defendants in this action.

6. Plaintiffs have requested that the Court approve Class Representatives receiving service awards from the Aggregate Settlement Fund of $150,000 for Marchbanks Truck Service, $75,000 Krachey, $75,000 for Walt Whitman, and $15,000 for Mahwah. In the Third Circuit, service awards may be paid to class representatives to reward efforts that benefit the class. This Court makes the following findings of fact and conclusions of law regarding each of the Class Representatives' service to the Settlement Class in this litigation:

a. Marchbanks Truck Service: (a) through its owner, William Patrick "Pat" Marchbanks, was one of the driving forces behind this lawsuit being filed and prosecuted; (b) submitted its employees, including Mr. Marchbanks twice, to three depositions, requiring many hours of preparation and travel time; (c) dedicated hundreds of hours, mostly by Mr. Marchbanks (i) assisting Class Counsel in the investigation and development of an initial complaint, (ii) overseeing Class Counsel's prosecution of this litigation and settlement negotiations, (iii) traveling to and attending multiple Court hearings, settlement conferences, and mediations, (iv) responding to numerous document requests and interrogatories, (v) producing documents, and (vi) interfacing with Settlement Class members and representatives of the Buying Groups.

b. Krachey: (a) submitted its employee, Douglas Krachey, to two depositions, requiring several hours of preparation and travel time; (b) dedicated numerous hours (i) assisting Class Counsel in the investigation and development of an initial complaint, (ii)

---

[2] Plaintiffs' Co-Lead Class Counsel are Berger & Montague, P.C., Lieff, Cabraser, Heimann & Bernstein, LLP and Quinn Emanuel Urquhart & Sullivan, LLP. *See* Preliminary Approval Order at ¶ 7 (Dkt. 705).

overseeing Class Counsel's prosecution of this litigation and settlement negotiations, (iii) responding to numerous document requests and interrogatories, and (iv) producing documents.

c. <u>Walt Whitman:</u> (a) diligently represented the interest of the Settlement Class despite having been out of business since before the first complaint was filed and thus having its damages capped at pre-complaint overcharges; (b) submitted David Silverman to two depositions—requiring several hours of preparation and travel time—even though Walt Whitman did not operate as a truck stop between the two depositions; (c) dedicated time (i) assisting Class Counsel in the investigation and development of an initial complaint, (ii) overseeing Class Counsel's prosecution of this litigation and settlement negotiations, (iii) responding to numerous document requests and interrogatories, and (iv) producing documents.

d. <u>Mahwah:</u> (a) submitted an employee for a deposition, requiring several hours of preparation and travel time; (b) dedicated numerous hours (i) assisting Class Counsel in the investigation and development of an initial complaint, (ii) overseeing Class Counsel's prosecution of this litigation and settlement negotiations, (iii) responding to numerous document requests and interrogatories, and (iv) producing documents.

7. In recognition of the above facts regarding the service of the Class Representatives to the Settlement Class, the Class Representatives are hereby awarded service awards in the following amounts as requested by Class Counsel: $150,000 for Marchbanks Truck Service, Inc. d/b/a Bear Mountain Travel Stop, $75,000 for Gerald F. Krachey d/b/a Krachey's BP South, $75,000 for Walt Whitman Truck Stop, Inc., and $15,000 for Mahwah Fuel Stop out of the Aggregate Settlement Fund. The Court finds these awards to be fair and reasonable. These awards are in addition to whatever monetary amounts the Class Representatives may be receiving from the Aggregate Settlement Fund pursuant to the Plan of Distribution.

SO ORDERED this the 14th day of July, 2014.

James Knoll Gardner

Hon. James Knoll Gardner
U.S. District Court
Eastern District of Pennsylvania

8

1   Joseph R. Saveri (State Bar No. 130064)
    *jsaveri@lchb.com*
2   Brendan Glackin (State Bar No. 199643)
    *bglackin@lchb.com*
3   Sarah London (State Bar No. 267083)
    *slondon@lchb.com*
4   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
    275 Battery Street, 30th Floor
5   San Francisco, CA 94111-3339
    Telephone: (415) 956-1000
6   Facsimile: (415) 956-1008

7   *Attorneys for Plaintiffs Meijer, Inc., et al. and the*
    *Customer Plaintiff Class*

8
    [Additional Counsel Appear or Signature Page]
9
                    UNITED STATES DISTRICT COURT
10
                    NORTHERN DISTRICT OF CALIFORNIA
11
                          OAKLAND DIVISION
12

13                                              Case No.: No C. 07-5985 CW

14  MEIJER, INC., *et al.,* on behalf of themselves
    and all other similarly situated,              **CONSOLIDATED CASE**

15                        Plaintiff,

16            v.                                    [~~PROPOSED~~] ORDER GRANTING
                                                    **FINAL APPROVAL OF**
17  ABBOTT LABORATORIES,                            **SETTLEMENT AND ENTERING**
                                                    **FINAL JUDGMENT OF**
18                        Defendant.                **DISMISSAL WITH PREJUDICE**

19                                                  Date:        August 11, 2011
                                                    Time:        2:00 p.m.
20                                                  Courtroom:   2

21                                                  The Honorable Claudia Wilken

22

23          This matter has come before the Court to determine whether there is any cause why this

24  Court should not approve the settlement with defendant Abbott Laboratories and Class Customer

25  Plaintiffs, pursuant to Rules 23(e) and 54(b) of the Federal Rules of Civil Procedure, and in

26  accordance with the terms of the Settlement Agreement, dated April 6, 2011.  The Court, after

27  carefully considering all papers filed and proceedings held herein and otherwise being fully

28  informed in the premises, has determined: (a) the settlement is fair and reasonable and should be

1   finally approved; (b) the proposed plan of allocation of the Settlement Fund should be approved;

2   (c) the proposed awards of attorneys' fees and reimbursement of the expenses to Class Counsel

3   should be approved; (d) incentive awards should be awarded to the named plaintiffs; and (e) a

4   final judgment terminating this litigation should be entered.  Good cause appearing therefore, it

5   is:

6   **ORDERED, ADJUDGED AND DECREED that:**

7

8        1.      This Court has jurisdiction over this Customer Class Action and each of the parties

9   to the Settlement Agreement including all Class Members.

10       2.      This Order and Final Judgment incorporates by reference the definitions in the

11  Settlement Agreement and all terms used herein shall have the same meanings set forth in the

12  Settlement Agreement.  As set forth in the Preliminary Approval Order [D.E. 508], dated April

13  20, 2011, the previously certified Class is defined as follows:

14       All persons or entities in the United States who purchased Norvir and/or Kaletra

15       directly from Abbott Laboratories ("Abbott") or any of its divisions, subsidiaries,

16       predecessors, or affiliates during the period from December 3, 2003 through

17       August 27, 2008 ("Class Period").

18       Excluded from the Class are Abbott and its divisions, subsidiaries, predecessors or
19       affiliates, all governmental entities, and the following additional entities: American
         Sales Company, Inc.; Caremark, L.L.C.; CVS Pharmacy, Inc., Eckerd
20       Corporation; HEB Grocery Company LLP; JCG (PJC) USA, LLC; Maxi Drug,
         Inc. d/b/a Brooks Pharmacy; New Albertson's Inc.; Rite Aid Corporation; Rite Aid
21       HDGTRS. Corp.; Safeway Inc.,; SmithKline Beecham Corp. d/b/a
         GlaxoSmithKline; The Kroger Co.; and Walgreen Co.
22

23       3.      The Court finds that due notice was given in accordance with the Preliminary

24  Approval Order, and that the form and content of the Notice, Publication Notice, and Proof of

25  Claim, and the procedures for publication, mailing, and distribution thereof as set forth in the

26  Preliminary Approval order, satisfy the requirements of Fed. R. Civ. P. 23(e) and due process and

27  constitute the best notice practicable under the circumstances.

28

4.      Due to the adequate notice of the proceedings having been given to the Class and a full opportunity having been offered to the Class to participate in the fairness hearing, and given that no members of the Class have opted out, it is hereby determined that all Class Members are bound by this Order and Final Judgment.

5.      The settlement of this Customer Class Action as to Abbott was not the product of collusion between Customer Plaintiffs and Defendant or its counsel, but rather was the result of *bona fide* and arm's-length negotiations conducted in good faith between Class Counsel and Abbott's Counsel.

6.      The Court has held a hearing to consider the fairness, reasonableness and adequacy of the proposed settlement, and has been advised that there have been no objections to the settlement from any members of the Class.

7.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby finally approves in all respects the Settlement as set forth in the Settlement Agreement and finds that the Settlement is in all respects, fair, reasonable, adequate, and in the best interests of the Class.  The Court further approves the establishment of the Settlement Fund upon the terms and conditions set forth in the Settlement Agreement.  The parties are hereby directed to carry out the Settlement in accordance with its terms and provisions.

8.      The Court approves the Plan of Allocation of Settlement Proceeds as proposed by Class Counsel as fair and reasonable.  Epiq Systems, Inc., the company the Court previously appointed as claims administrator ("Claims Administrator"), is directed to administer the Settlement in accordance with the terms and conditions of the Settlement Agreement.  All expenses incurred by the Class Administrator must be reasonable, are subject to Court approval, and shall be payable solely from the Settlement Fund. The Claims Administrator will distribute the Settlement Funds to the Class on a *pro rata* basis in the manner described in the Plan of Allocation.

9.      All claims in the above-captioned action against Abbott are hereby dismissed with prejudice, and without costs, with the Court retaining jurisdiction for the limited purpose of enforcing compliance with the terms and conditions of the Settlement Agreement and this Order

1   and Final Judgment. All Released Claims of the Customer Plaintiffs and Customer Class in the

2   above-captioned Action are released and dismissed with prejudice, and, except as provided for in

3   the Settlement Agreement, without costs.

4       10.     All Class Members shall be forever enjoined and barred from asserting any of the

5   matters, claims or causes of action released by the Settlement Agreement, and all Class Members

6   shall be deemed to have forever release any and all such matters, claims and causes of action as

7   provided in the Settlement Agreement.

8       11.     Class Counsel are awarded Attorneys' Fees and Expenses in the amount of one-

9   third of the gross settlement amount – *i.e.*, one-third of $52 million, or $17,333,333.33 – for

10  attorneys' fees and reasonable costs and expenses of $1,901,251.13 incurred in the representation

11  of the Customer Class, for a total Attorneys' Fees and Expenses award of $19,234,584.46.  The

12  Court finds that the amount of Attorneys' Fees and Expenses awarded is fair and reasonable.  The

13  award of Attorneys' Fees and Expenses shall be allocated among Class Counsel in a fashion

14  which, in the opinion of Co-Lead Counsel, fairly compensates Class Counsel for their respective

15  contributions in the prosecution of this Action.  The Attorneys' Fees and Expenses awarded shall

16  be paid out of the Settlement Fund.

17      12.     Neither this Order and Final Judgment, the Settlement Agreement, nor any of its

18  terms or the negotiations or papers related thereto shall constitute evidence or an admission by

19  any party or Release that any acts of wrongdoing have been committed, and they shall not be

20  deemed to create any inference that there is any liability therefore.  Neither this Order and Final

21  Judgment, the Settlement Agreement, nor any of the terms or negotiations or papers related

22  thereto shall be offered or received in evidence or used for any purpose whatsoever, in this or any

23  other matter or proceeding in any court, administrative agency, arbitration or other tribunal, other

24  than as expressly set forth in the Settlement Agreement.

25      13.     Without affecting the finality of the judgment, the Court retains exclusive

26  jurisdiction over the Settlement Agreement, including the administration and consummation of

27  the Settlement Agreement, Plan of Allocation, and in order to determine any issues relating to the

28  attorneys' fees and expenses and any distribution to members of the Class.  In addition, without

1    affecting the finality of this judgment, Defendants and each member of the Class hereby

2    irrevocably submit to the exclusive jurisdiction of the United States District Court for the

3    Northern District of California, for any suit, action, proceeding or dispute arising out of or

4    relating to the Settlement Agreement or the applicability of the Settlement Agreement, including,

5    without limitation any suit, action, proceeding or dispute relating to the release provisions therein.

6           14.    The Class Representatives Meijer Inc., Louisiana Wholesale Drug Co., Inc., and

7    Rochester Drug Cooperative are each hereby awarded $60,000, to be paid out of the Settlement

8    Fund, for representing the Customer Class, which amount is in addition to whatever monies these

9    plaintiffs will receive from the Settlement Fund pursuant to the Plan of Allocation.  This Court

10    finds these awards to be fair and reasonable.

11           15.    In the event the Settlement does not become final, this Order and Final Judgment

12    shall be rendered null and void as provided by the Settlement Agreement, shall be vacated, and all

13    orders entered and releases delivered in connection herewith shall be null and void to the extent

14    provided by and in accordance with the Settlement Agreement.

15           16.    The Court hereby directs that this judgment be entered by the clerk forthwith

16    pursuant to Federal Rule of Civil Procedure 54(b).

17

18          **SO ORDERED** this the **11th** day of **August**, 2011.

19

20

21

22                    Hon. Claudia Wilken

23                    U.S. District Court for the

                        Northern District of California

24

25

26

27

28

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 176
of 227
Case 1:05-cv-02195-CKK   Document 210   Filed 04/20/09   Page 1 of 9

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MEIJER, INC.; MEIJER DISTRIBUTION, INC.; LOUISIANA WHOLESALE DRUG CO., INC.; ROCHESTER DRUG CO-OPERATIVE, INC.; AMERICAN SALES COMPANY, INC.; SAJ DISTRIBUTORS, INC.; and STEPHEN L. LaFRANCE HOLDINGS, INC., on behalf of themselves and all others similarly situated, | Civil Action No. 05-2195 (CKK) |

                              Plaintiffs,

        v.

BARR PHARMACEUTICALS, INC.,

                              Defendant.

**ORDER AND FINAL JUDGMENT APPROVING SETTLEMENT BETWEEN
DIRECT PURCHASER CLASS PLAINTIFFS AND DEFENDANT BARR
PHARMACEUTICALS, INC., AWARDING ATTORNEYS' FEES AND EXPENSES,
AWARDING REPRESENTATIVE PLAINTIFF INCENTIVE AWARDS, APPROVING
PLAN OF ALLOCATION, AND ORDERING DISMISSAL AS TO ALL DEFENDANTS**

Pursuant to Rules 23(e) and 54(b) of the Federal Rules of Civil Procedure, in accordance

with the terms of the settlement agreement between Direct Purchaser Class Plaintiffs and Barr

Pharmaceuticals, Inc. ("Barr") dated December 15, 2008 (the "Settlement Agreement"), and in

accordance with this Court's entry of its July 10, 2008 Order Approving Settlement Between the

Direct Purchaser Plaintiffs and the Warner Chilcott Defendants[1] Only and Final Judgment as to

the Warner Chilcott Defendants (D.E. #182) ("Warner Chilcott Settlement"), it is hereby

---

[1]     The "Warner Chilcott Defendants" include Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., Warner Chilcott Company Inc., and Galen (Chemicals), Ltd.

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 177
of 227
Case 1:05-cv-02195-CKK   Document 210   Filed 04/20/09   Page 2 of 9

**ORDERED, ADJUDGED AND DECREED that:**

1.   This Order and Final Judgment incorporates by reference the definitions in the

Settlement Agreement and all terms used herein shall have the same meanings set forth in the

Settlement Agreement. (D.E #201).  As set forth in the Preliminary Approval Order (D.E. #202),

dated December 18, 2008, the previously certified Class is defined as follows:

> All persons and entities in the United States who purchased Ovcon 35 directly from
> Defendants at any time during the period April 22, 2004 through December 31, 2006.

The definition of the Class excludes any claims asserted, whether by assignment or otherwise, by

the following entities: Walgreen Co., Eckerd Corporation, Maxi Drug, Inc. dba Brooks

Pharmacy, Albertson's Inc., The Kroger Co., Safeway, Inc., Hy-Vee, Inc., CVS Pharmacy, Inc.,

Rite Aid Corporation, and Rite Aid Hdqtrs. Corp.  Also excluded from the Class are hospitals,

universities and clinics.

2.   This Court has jurisdiction over this Direct Purchaser Class Action and each of the

parties to the Settlement Agreement including all Class members, as well as over each of the

parties to the Warner Chilcott Settlement that this Court previously finally approved between this

Class and the Warner Chilcott Defendants.

3.   As set forth in more detail in the Settlement Agreement, Barr has agreed to pay a

total of $13,000,000 to settle this Action (the "Barr Settlement"), which, combined with the

$9,000,000 sum that the Warner Chilcott Defendants paid, results in a total of $22,000,000 paid

by Defendants combined  (the "Settlement Fund"), exclusive of interest.  As of this date,

$146,557.78 in interest has accrued on the Settlement Fund bringing the total Settlement Fund

plus interest to $ 22,146,557.78.

4.   As required by this Court in its Preliminary Approval Order (D.E. #202), notice of

the proposed settlement with Barr was mailed by first-class mail to all members of the Class.

Such notice to members of the Class is hereby determined to be fully in compliance with requirements of Fed. R. Civ. P. 23(e) and due process and is found to be the best notice practicable under the circumstances and to constitute due and sufficient notice to all entities entitled thereto.

5.     Due and adequate notice of the proceedings having been given to the Class and a full opportunity having been offered to the Class to participate in the fairness hearing, it is hereby determined that all Class Members are bound by this Final Order and Judgment.

6.     The settlement of this Direct Purchaser Class Action as to Barr, like the settlement as to the Warner Chilcott Defendants, was not the product of collusion between Plaintiffs and Barr or their respective counsel, but rather was the result of *bona fide* and arm's-length negotiations conducted in good faith between Class Counsel and Barr's Counsel.

7.     The Court has held a hearing to consider the fairness, reasonableness and adequacy of the proposed settlement, and has been advised that there have been no objections to the settlement from any members of the Class.

8.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby finally approves in all respects the Barr Settlement as set forth in the Settlement Agreement and finds that the Barr Settlement is, like the prior settlement with the Warner Chilcott Defendants, in all respects, fair, reasonable, adequate, and in the best interests of the Class.  The Court further approves the establishment of the Settlement Fund as to Barr upon the terms and conditions set forth in the Settlement Agreement and the Escrow Agreement.  The Parties are hereby directed to carry out the Barr Settlement in accordance with its terms and provisions.

9.     The Court approves the Plan of Allocation of Settlement Proceeds as proposed by Class Counsel in the Plan of Allocation (the "Plan"), dated February 27, 2009, and supported by

the Declaration of Jeffrey J. Leitzinger, Ph.D., dated February 25, 2009. The Plan had

previously been summarized in the Notice of Proposed Settlement. It directs Epiq Systems, Inc.,

the firm retained by Class Counsel as the claims administrator, to distribute the Direct Purchaser

Settlement Funds in the manner provided in the Plan.

10.    All claims in the above-captioned action against Barr are hereby dismissed with

prejudice, and without costs, with such dismissal subject only to compliance by the Parties with

the terms and conditions of the Settlement Agreement and this Final Order and Judgment, over

which the Court retains jurisdiction.

11.    In accordance with the Settlement Agreement, the Released Parties shall be

released and fully and forever discharged from all manner of claims, demands, actions, suits,

causes of action, damages wherever incurred, liabilities of any nature whatsoever, including

costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in

law or equity, that Plaintiffs or any member or members of the Class who have not timely

excluded themselves from the Class Action (including any of their past, present or future

officers, directors, stockholders, agents, attorneys, employees, legal representatives, trustees,

parents, associates, affiliates, subsidiaries, partners, heirs, executors, administrators, purchasers,

predecessors or successors), whether or not they object to the Settlement and whether or not they

make a claim upon or participate in the Settlement Fund, ever had, now has, or hereafter can,

shall or may have, directly, representatively, derivatively or in any other capacity, arising out of

any conduct alleged in the Class Action or otherwise relating to the facts, occurrences,

transactions, or other matters alleged in the Class Action and any damages or other harm

allegedly resulting there from (the "Released Claims"). As set forth in the Settlement

Agreement, the Released Claims do not include any claims relating to any product, defect,

4

breach of contract, or similar claim relating to Balziva or other Barr products not directly related to the facts, occurrences, transactions, or other matters alleged in the Class Action.

12.   All Class Members shall be forever enjoined and barred from asserting any of the matters, claims or causes of action released by the Settlement Agreement, and all Class Members shall be deemed to have forever released any and all such matters, claims and causes of action as provided for in the Settlement Agreement.

13.   Each settling Class Member is hereby deemed expressly to have waived and released, with respect to the Released Claims, any and all provisions, rights and benefits conferred by (i) Section 1542 of the California Civil Code, which reads:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

(ii) Section 17200, *et seq.* of the California Business and Professional Code; and (iii) any similar state, federal or other laws, rules or regulations or principles of common law.  Each settling Class Member may hereafter discover facts other than or different from those that it knows or believes to be true with respect to the subject matter of the Released Claims, but each settling Class Member shall hereby be deemed to have expressly waived and fully, finally and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim with respect to the Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such additional or different facts.

14.   Class Counsel have moved for an award of attorneys' fees and reimbursement of expenses.  Pursuant to Rules 23(h)(3), 54(d) and 52(a) of the Federal Rules of Civil Procedure, this Court makes the following findings of fact and conclusions of law:

(a) that the Barr Settlement and the Warner Chilcott Settlement both confer a substantial benefit on the Class;

(b) that the value conferred on the Class is immediate and readily quantifiable, in that, upon this Judgment's becoming final, each Class member who duly submits and executes a Claim Form in accordance with the Plan of Allocation will receive a cash payment that represents a substantial portion of the total overcharge allegedly incurred as a result of the conduct challenged in this lawsuit;

(c) that Class Counsel effectively pursued the claims on behalf of the members of the Class before this Court in this complex case, and reasonably expended 17,488.70 hours in so doing, resulting in a lodestar of $7,226,504 at the normal and customary hourly rates of these law firms, which was expended with no guarantee it would be compensated;

(d) that the Barr Settlement and Warner Chilcott Settlement were both obtained as a direct result of Class Counsel's skillful advocacy;

(e) that the Barr Settlement and the Warner Chilcott Settlement were reached following mediation sessions presided over by Magistrate Judge Kay and Prof. Eric D. Green, and were negotiated in good-faith and in the absence of collusion;

(f) that during the prosecution of this Class Action, Class Counsel incurred expenses in the amount of $1,152,390.34, which I find were reasonable and necessary to the representation of the Class and the prosecution of this lawsuit, and for which Class Counsel had no guarantee of reimbursement;

(g) that Class members were advised in the Notice of Proposed Settlement of Class Action, which notice was approved by this Court, that Class Counsel intended to move for an award of attorneys' fees in an amount up to 33-1/3% of the gross Settlement Fund (including

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 182
of 227
Case 1:05-cv-02195-CKK   Document 210   Filed 04/20/09   Page 7 of 9

the interest accrued thereon) created by both the Barr Settlement and the Warner Chilcott

Settlement, plus reimbursement of reasonable costs and expenses incurred in the prosecution of

this action;

       (h)    that Class Counsel did, in fact, move for an award of attorneys' fees in the

amount of 33-1/3% of the gross Settlement Fund (including the interest accrued thereon), plus

reimbursement of reasonable costs and expenses incurred in the prosecution of this action, which

motion has been on the docket and publicly available since February 13, 2009 (D.E. #203);

       (i)    that no member of the Class, which is composed of approximately 30

business entities, has objected to the award of attorneys' fees or expenses sought by Class

Counsel, and certain members of the Class have affirmatively expressed their lack of objection

and/or support for both settlements and the requested attorneys' fees and costs;

       (j)    that counsel who recover a common fund for the benefit of persons other

than themselves or their clients are entitled to a reasonable attorneys' fee from the fund as a

whole. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Blum v. Stenson*, 465 U.S. 886,

900 n.16 (1984);

       (k)    that the requested 33-1/3% fee award is well within the applicable range of

reasonable percentage fund awards, and results in a low multiplier.

    Accordingly, Direct Purchaser Plaintiffs' Class Counsel are hereby awarded attorneys'

fees in the amount of 33-1/3% of the gross Settlement Fund plus interest through this date, or a

total fee award of $ 7,382,185.93. The Court finds this award to be fair and reasonable. Further,

Direct Purchaser Plaintiffs' Class Counsel are hereby awarded $ 1,152,390.34 out of the

Settlement Fund to reimburse their expenses incurred in the prosecution of this lawsuit, which

the Court finds to be fair and reasonable, and which amount shall be paid to Direct Purchaser

Class Counsel from the Settlement Fund in accordance with the terms of the Settlement
Agreement. The Executive Committee of Class Counsel shall allocate the fees and expenses
among all of the Class Counsel.

15.    Neither this Final Order and Judgment, the Settlement Agreement, nor any of its
terms or the negotiations or papers related thereto shall constitute evidence or an admission by
any party or Releasee, that any acts of wrongdoing have been committed, and they shall not be
deemed to create any inference that there is any liability therefore. Neither this Final Order and
Judgment, the Settlement Agreement, nor any of the terms or negotiations or papers related
thereto shall be offered or received in evidence or used for any purpose whatsoever, in this or
any other matter or proceeding in any court, administrative agency, arbitration or other tribunal,
other than as expressly set forth in the Settlement Agreement.

16.    Without affecting the finality of this judgment, the Court retains exclusive
jurisdiction over the Barr and Warner Chilcott Settlements, and the Settlement Agreement,
including the administration and consummation of the Settlement Agreement, the Plan of
Allocation, and in order to determine any issues relating to attorneys' fees and expenses and any
distribution to members of the Class. In addition, without affecting the finality of this judgment,
Defendants and each member of the Class hereby irrevocably submit to the exclusive jurisdiction
of the United States District Court for the District of Columbia, for any suit, action, proceeding
or dispute arising out of or relating to the Settlement Agreement or the applicability of the
Settlement Agreement, including, without limitation any suit, action, proceeding or dispute
relating to the release provisions therein.

17.    The five Class Representatives are each hereby awarded $50,000 out of the
Settlement Fund, for representing the Class, which amount is in addition to whatever monies

8

these plaintiffs will receive from the Settlement Fund pursuant to the Plan of Allocation.  The Court finds these awards to be fair and reasonable.

18.    In the event the Barr Settlement does not become final in accordance with paragraph 5 of the Settlement Agreement, this Order and Final Judgment shall be rendered null and void as provided by the Settlement Agreement, shall be vacated, and all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Settlement Agreement.

19.    The Court hereby directs that this judgment be entered by the clerk forthwith pursuant to Federal Rule of Civil Procedure 54(b).  The direction of the entry of final judgment pursuant to Rule 54(b) is appropriate and proper because this judgment fully and finally adjudicates the claims of the Plaintiffs and the Class against all Defendants in this action, allows consummation of the Settlement, and will expedite the distribution of the Settlement proceeds to the Class members.

SO ORDERED this the 20th day of _April_, 2009.

Hon. Colleen Kollar-Kotelly
United States District Judge
Washington, D.C.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MYLAN PHARMACEUTICALS, INC., et al.** | : | |
| | : | |
| **Plaintiffs,** | : | **Civ. No.  12-3824** |
| | : | **CONSOLIDATED** |
| **v.** | : | |
| | : | |
| **WARNER CHILCOTT PUBLIC LIMITED COMPANY, et al.,** | : | |
| **Defendants.** | : | |

## ORDER

In this putative class action, Direct Purchasers of Doryx, the branded version of doxycycline hyclate, allege that Defendant brand name pharmaceutical companies illegally thwarted generic competition. The Parties now ask me to certify a Rule 23(b)(3) Settlement Class, grant final approval of their proposed Settlement, and approve an award of attorneys' fees and incentive awards.  (Doc. Nos. 571, 572.)  Because I conclude that: (1) the proposed Settlement Classes meet the requirements of Rule 23(a) and 23(b)(3); (2) the Notice to Class Members was sufficient; (3) the terms of the Settlement are fair, reasonable and adequate; and (4) the requested fees and awards are reasonable, I will grant their Motions.

## BACKGROUND

Plaintiffs are generic drug manufacturers, pharmaceutical wholesalers, and retail pharmacies.  Defendants are pharmaceutical companies that produce and sell Doryx, the branded version of an antibiotic prescription drug (doxycycline hyclate) used primarily to treat severe acne.  Plaintiffs allege that Defendants conspired to protect their monopoly by implementing a series of product changes that, while providing no real benefit to patients, exempted Doryx from

- 1 -

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 186
of 227
Case 2:12-cv-03824-PD   Document 665   Filed 09/15/14   Page 2 of 15

state laws that would otherwise have allowed pharmacists to fill prescriptions doctors had written for Doryx with generics.

Plaintiffs filed the instant action on July 6, 2012.  (Doc. No. 1.)  Defendants moved to dismiss the Complaint.  (Doc. Nos. 82, 83, 101, 102, 135, 138, 172, 174.)  In denying Defendants' Motion, I deferred until summary judgment ruling on the dispositive question of whether "product hopping" is anticompetitive.  (Doc. No. 280.)  Direct Purchaser Plaintiffs filed a Motion for Class Certification on April 1, 2013.  (Doc. No. 151.)   Defendants opposed certification.  (Doc. Nos. 228, 247.)  While the certification motion was pending, the Parties began settlement discussions and, after lengthy negotiations, reached a proposed Settlement on December 24, 2013.  (Doc. No. 452.)

I provisionally certified the Settlement Class on February 18, 2014 after a preliminary approval hearing.  (Doc. No. 484.)  Plaintiffs filed the instant unopposed Motion on April 24, 2014, asking me to: (1) grant final certification for settlement purposes; (2) approve the proposed Settlement; (3) approve the proposed distribution plan; (4) approve the proof of claim and release; and (5) dismiss all Direct Purchaser Plaintiff's claims against Defendants.  (Doc. No. 571-72.)  I held a final fairness hearing on June 9, 2014.  (Doc. No. 653); see Gates v. Rohm and Haas Co., 248 F.R.D. 434, 439 (E.D. Pa. 2008) ("Judicial review of a proposed class settlement generally requires two hearings: one preliminary approval hearing and one final 'fairness' hearing.").

## LEGAL STANDARDS

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "While the law generally favors settlement in complex or class action cases for its conservation of judicial resources, the

court has an obligation to ensure that any settlement reached protects the interests of the class members." In re Aetna Inc. Sec. Litig., MDL No. 1219, 2001 WL 20928, at *4 (E.D. Pa. Jan 4, 2001) (citing In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig., 55 F.3d 768, 784 (3d Cir. 1995)).

Consequently, before approving the Settlement, I must determine whether the Notice provided to Class Members was adequate.  Id.  I must also "scrutinize the terms of the settlement to ensure that it is 'fair, adequate and reasonable.'" Id. "[C]ases such as this, where the parties simultaneously seek certification and settlement approval, require 'courts to be even more scrupulous than usual' when they examine the fairness of the proposed settlement." In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 316 (3d Cir. 1998) (citations omitted).

Where, as here, the Class has not already been finally certified, I must also independently determine that the proposed Settlement Class satisfies the requirements of Rule 23.  See Amchem v. Windsor, 521 U.S. 591, 620 (1997); In re Prudential Ins., 148 F.3d at 308 ("[A] district court must . . . find [that] a class satisfies the requirements of Rule 23, regardless of whether it certifies the class for trial or settlement.").

## **DISCUSSION**

### I.     **Rule 23(a) & (b)(3)**

In my February 18, 2014 Order granting Plaintiffs' Motion for Preliminary Approval (Doc. No. 484), I preliminarily certified and ordered that Notice of the Settlement be directed by Rust Consulting Inc., to the following Class:

> All persons and entities in the United States who purchased Doryx directly from one or more of the Defendants at any time from July 18, 2008 through December

31, 2013 (the "Class Period").  Excluded from the Class are Defendants, their parents, employees, subsidiaries and affiliates, and federal government entities (the "Class").

Rule 23(a)(1) requires that joinder of the parties be impracticable.  Fed. R. Civ. P. 23(a)(1).  The Class I preliminarily certified has 23 Members across the United States, which is sufficient to satisfy the impracticality of joinder requirement.  "[W]hen the court finds that the class members are widely dispersed geographically, then their joinder may be deemed impracticable."  7A Charles A. Wright, et al., Federal Practice and Procedure § 1762.  Courts have repeatedly deemed joinder impracticable when class members' dispersion was similar to that presented here.  Am. Sales Co. v. SmithKline Beecham Corp., 274 F.R.D. 127, 132-33 (E.D. Pa. 2010) (class members spread across 14 states rendered joinder impracticable); In re Wellbutrin, XL Antitrust Litig., No. 08-2431, 2011 WL 3563385, at *3 (E.D. Pa. Aug. 11, 2011) (class members across 15 states rendered joinder impracticable).

Rule 23(a)(2) requires that the Class share common questions of law or fact.  To satisfy the commonality requirement, the purported class's claims must depend upon a common contention susceptible to class-wide resolution.  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550-51 (2011).  Here, the following issues present common, class-wide questions under Rule 23(a)(2):

a.  Whether the conduct challenged by the Class as anticompetitive in the Consolidated Amended Class Action Complaint filed August 13, 2012 (Doc. No. 62) constitutes a restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, or constitutes monopolization or attempted monopolization in  violation Section 2 of the Sherman Act, 15 U.S.C. § 2;

b. Whether Defendants' challenged conduct substantially affected interstate commerce and caused antitrust injury-in-fact to the Class through overcharges paid as a result of the higher prices direct purchasers paid for Doryx; and

c. The amount of overcharge damages, if any, owed to the Class in the aggregate under Section 4 of the Clayton Act, 15 U.S.C. § 4.

Rule 23(a)(3) requires me to evaluate whether the Named Plaintiffs' claims are typical of the Class. See Beck v. Maximus, Inc., 457 F.3d 291, 295-96 (3d Cir. 2006). The named Plaintiffs—Meijer Inc., Meijer Distribution, Inc., Rochester Drug Co-operative, Inc., and American Sales Company, LLC—allege on behalf of the Class and themselves the same manner of injury from the same course of conduct and assert on their own behalf the same legal theory that they assert for the Class. Any probable factual differences relate to damages not liability. Gates, 248 F.R.D. at 441. Accordingly, I conclude that the Named Plaintiffs' claims meet Rule 23(a)(3)'s typicality requirement.

Finally, Rule 23(a)(4) requires me to decide whether the Named Plaintiffs will fairly and adequately protect the interests of the Class. Fed. R. Civ. P. 23(a)(4). I find that they will. All Class Members sought to prove Defendants' alleged anticompetitive conduct, and to recover overcharge damages. Moreover, all Class Members were given an opportunity to opt out. Furthermore, the Named Plaintiffs are well-qualified to represent the Class, given their experience in prior cases, and the vigor with which they have acted thus far. (Doc. No. 452.)

Turning to the requirements of Rule 23(b)(3), I conclude, for settlement purposes, that common questions of law and fact predominate over questions affecting only individual Members. Fed. R. Civ. P. 23(b)(3). "[T]he task for plaintiffs at class certification is to demonstrate that [each] element . . . is capable of proof at trial through evidence that is common

to the class rather than individual to its members." In re Hydrogen Peroxide Antitrust Litig., 552

F.3d 305, 310-12 (3d Cir. 2008).  Here, the elements of Plaintiffs' claims are (1) violation of

antitrust laws, (2) antitrust impact, and (3) measurable damages.  Because these issues are

subject to generalized proof, they apply class-wide and predominate over issues that require

individualized proof.  Id.

Finally, I must consider whether a class action is "superior to other available methods for

fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  This requires me to

determine whether a class action is fairer and more efficient than alternative methods of

adjudication.  In re Prudential Ins., 148 F.3d at 316.  Plainly, it would be fairer and more efficient

to resolve the claims of the Class in a single action. There are few manageability problems

presented by a case such as this, particularly in light of the Settlement approved in this Order.

## II.  **Notice**

As required in my Preliminary Approval Order, timely Notice of the proposed Settlement

was mailed by first-class mail to the last known address of all Class Members found in Warner

Chilcott's sales database and verified by Rust.  The Notice was also posted, along with relevant

litigation and Settlement documents, on Faruqi & Faruqi, LLPs website—www.faruqilaw.com—

to further advise Members of the Class of the Settlement.  I find that this Notice complies with

the requirements of Fed. R. Civ. P. 23(e) and due process.  Moreover, it is the best notice

practicable in the circumstances.  Accordingly, all Class Members are bound by this Order and

Final Judgment.

## III.  **Reasonableness of the Proposed Settlement**

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 191
of 227
Case 2:12-cv-03824-PD   Document 665   Filed 09/15/14   Page 7 of 15

In determining whether the Settlement is fair, adequate, and reasonable, I must consider the Girsh factors: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the Class to the Settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the Class action through the trial; (7) the ability of the Defendants to withstand a greater judgment; (8) the range of reasonableness of the Settlement Fund in light of the best possible recovery; and (9) the range of reasonableness of the Settlement Fund in light of all the attendant risks of litigation.  In re Cendant Corp. Litig., 264 F.3d 201, 231–32 (3d Cir. 2001) (citing Girsh v. Jepson, 521 F.2d 153, 157 (3rd Cir. 1975)).

Additionally, "[i]n more recent decisions, the Third Circuit has suggested an expansion of the nine-prong test when appropriate to include what are now referred to as the Prudential considerations."  In re Flonase Antitrust Litig., 951 F. Supp. 2d 739, 742 (E.D. Pa. 2013).  These include: (1) the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other facts that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; (2) the existence and probable outcome of claims by other classes and subclasses; (3) the comparison between the results achieved by the Settlement for individual Class or subclass Members and the results achieved—or likely to be achieved—for other claimants; (4) whether Class or subclass Members are accorded the right to opt out of the Settlement; (5) whether any provisions for attorneys' fees are reasonable; and (6) whether the procedure for processing individual claims under the Settlement is fair and reasonable.  Id. (quoting In re Prudential Ins., 148 F.3d at 323).

The Third Circuit has determined that a court should accord a presumption of fairness to settlements if the court finds that: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the Settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." In re Cendant Corp. Litig., 264 F.3d at 233 n.18.  Here, the Settlement is entitled to a presumption of fairness because: (1) it is the result of intense, *bona fide*, arm's length negotiations, (2) the Parties engaged in exhaustive discovery, (3) the attorneys are extremely experienced in similar litigation, and (4) there were no objections from the Class.  Id.

*The Girsh Factors*

These weigh heavily in favor of approving the Settlement.  This was a complex and expensive case with 23 experts and dozens of fact witnesses.  Lengthy dispositive motions and a protracted trial and appeal were nearly certain (first factor).  The time and resources saved by the avoidance of these costs benefits all Parties.  Fleisher v. Fiber Composites, LLC, No. 12-1326, 2014 WL 866441, at *11 (E.D. Pa. Mar. 5, 2014).

There have been no opt-outs or objections from the Class (second factor).  At the time the Parties settled, they had concluded fact discovery and were midway through expert discovery.  A reasonable amount of discovery has thus been completed—enough to give both sides an accurate view of the risks of continued litigation (third factor).

The risks of litigation and establishing damages (fourth and fifth factors) weigh heavily in favor of approving the Settlement.  Plaintiffs faced the risk that I would rule that: (1) product hopping was not anticompetitive; (2) Defendants had legitimate business justifications for the product changes; or (3) Plaintiffs suffered no damages.  Defendants faced a potential treble damages award.

The Settlement amount—$15 million—is reasonable in light of the damages estimates, which were between $23 million and $1 billion, the risks of litigation that I have described, and was recommended by the mediator. (Id. at 6-7) (eighth and ninth factors).  The remaining factors—the risks of maintaining the Class through trial and Defendants' abilities to withstand a greater verdict—are neutral.

> The _Prudential_ Factors

These also weigh in favor of approving the Settlement. First, as I have discussed, the case was well developed, and extensive discovery had already been taken.  Second, Indirect Purchaser and opt-out Retailers have both also settled.  Only a single Plaintiff—Mylan—remains; the outcome of that case is unclear.  Third, no Plaintiff has chosen to opt out.  Fourth, the attorney fee provisions are reasonable, as discussed below.  Fifth, the claim handling mechanism (to which no Party has objected) is fair and reasonable, allowing for the distribution of funds based on the nature and extent of the injuries.  Similar mechanisms have been approved and implemented successfully and efficiently in other cases.  (Doc. No. 571, at 23.)  Accordingly, applying the Prudential and Girsch factors, I conclude that the Settlement is fair, adequate, and reasonable.

### IV.    Approval of Proposed Settlement Plan

I also approve the Plan of Distribution of the Settlement Proceeds, net of attorneys' fees, reimbursed expenses and incentive awards proposed by Plaintiffs.   "Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate."   In re Ikon Office Solutions, Inc. Sec. Litig., 194 F.R.D. 166, 179 (E.D. Pa. 2000).  Generally, a distribution plan is reasonable if it reimburses the class members based on

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 194
of 227
Case 2:12-cv-03824-PD   Document 665   Filed 09/15/14   Page 10 of 15

the type and extent of their injuries.  Id.  Here, the Plan will authorize Rust to make fair and efficient distribution of the Net Settlement Fund proceeds *pro rata*, with the assistance of Class Counsel's expert economist, based on Class Members' purchases of Doryx during the Class Period.  (The Net Settlement Fund is the amount remaining after attorneys' fees, reimbursement of litigation expenses, Class Representative incentive awards, and Settlement administration costs approved by the Court are deducted.)

### V.      Approval of the Proposed Claim Form

I also approve the proposed Doryx Direct Purchaser Proof of Claim and Release Form, (Doc. No. 452-5), Rust will use to notify each Class Member of the Class Member's estimated purchases of Doryx during the Class Period.  Each estimate will be formulated with the assistance of Class Counsel's expert economist, based on data produced by Warner Chilcott and Retailer Plaintiffs, as well as Rust's estimate of the Class Member's *pro rata* share of the Net Settlement Fund.

### VI.     Release of Claims

All Direct Purchaser Plaintiffs' claims in the above-captioned action against Defendants will be dismissed with prejudice and without costs.  In accordance with Paragraph 11 the Settlement Agreement, upon the Settlement becoming final, I will find that:

> Plaintiffs and all Class Members, on behalf of themselves and their respective past and present parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, representatives (and the parents' subsidiaries' and affiliates' past and present officers, directors, employees, agents, attorneys servants, and representatives), and their predecessors, successors, heirs, executors, administrators, and representatives (the "Releasors"), hereby release and forever discharge, and covenant not to sue Defendants and their past and present parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, representatives (and the parents', subsidiaries', and affiliates' past and present officers, directors, employees, agents, attorneys,

servants, and representatives), and the predecessors, successors, heirs, executors, administrators and representatives of each of the foregoing (the "Releasees"), with respect to, in connection with, or relating to any and all past, present, or future liabilities, claims, demands, obligations, suits, injuries, damages, levies, executions, judgments, debts, charges, actions, or causes of action, at law or in equity, whether class, individual, or otherwise in nature, and whether known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or non-contingent, arising out of or relating to purchases of Doryx at any time prior to the Effective Date and arising under the Sherman Act, 15 U.S.C. §§ 1 & 2, *et seq.*, or any other federal or state statute or common law relating to antitrust or unfair competition (the "Released Claims"). The Released Claims include, but are not limited to, any and all claims relating to or arising out of the facts, occurrences, transactions, or other matters alleged or asserted in this Action, or that could have been alleged or asserted in this Action. However, this Settlement Agreement is not intended to release anyone other than the Releasees, is not on behalf of anyone other than the Releasors, and does not affect the claims of the proposed end-payor Class, the claims of the Retailer Plaintiffs who filed their own complaints in this matter, or the claims of Mylan Pharmaceuticals, Inc. or its affiliates, nor is it intended to release any actual or potential claims described in Paragraph 13 of the Settlement Agreement.

In addition,  in accordance with Paragraph 12 of the Settlement Agreement, upon the

Settlement becoming final, I will find that each Class Member has expressly waived and

released any and all provisions, rights, and/or benefits conferred by § 1542 of the

California Civil Code, which reads:

Section 1542. General Release; extent. A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor; or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims that are the subject matter of Paragraph 10. Nonetheless, upon the Settlement becoming final each Releasor hereby expressly waives and fully, finally and forever settles and releases any known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or non-contingent claim that is the subject matter of Paragraph 10 of the Settlement Agreement, whether or not concealed or hidden, without

regard to the subsequent discovery or existence of such different or additional facts.

### VII.    Attorney's Fees & Incentive Awards

Finally, Class Counsel have moved for an award of attorneys' fees of $5,000,000; reimbursement of expenses totaling $1,111,284.11; and incentive awards of $50,000 to each Class Representative.  Under Fed. R. Civ. P. 23(h)(3) and 54(d), and the factors for assessing the reasonableness of a class action fee request set forth in Gunter and In re Prudential, I find that Counsel is entitled to the requested fees and costs.  Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000); In re Prudential, 148 F.3d at 340.

Here, the proposed fees represent approximately one-third of the Settlement Fund.  This Settlement confers a monetary benefit on the Class that is substantial both in absolute terms and when assessed in light of the risks of establishing liability and damages. The Fund will benefit all Class Members. There were no objections by Class Members to the requested fee award of one-third of the Settlement Fund. Class Counsel have efficiently prosecuted this difficult and complex action on behalf of the Members of the Class for over two years, with no guarantee they would be compensated, undertaking numerous and significant risks of nonpayment.  Further, Class Counsel have reasonably expended thousands of hours, and incurred over a million dollars in out-of-pocket expenses, in prosecuting this action, with no guarantee of recovery. Fee awards similar to the fee requested by Class Counsel here have been awarded in similar cases, including numerous Hatch-Waxman antitrust class actions similarly alleging impaired generic competition. Gunter, 223 F.3d 195 n.1; (Doc. No. 572-12, at 20 (collecting cases).)

The Third Circuit has advised that a court should also consider the Prudential factors in approving the fee award.  In re Prudential, 148 F.3d at 340.  Here, the Settlement achieved for

the benefit of the Class was obtained as a direct and exclusive result of Class Counsel's skillful advocacy.  Moreover, the Settlement was reached following negotiations conducted by an experienced mediator and after good-faith discussions.

The "percentage-of-the-fund" method is an appropriate method for calculating attorneys' fees in complex, common-fund class actions.  See, e.g., In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 305 (3d Cir. 2005).  In the notice of Proposed Settlement, Class Members were advised that Class Counsel intended to move for up to 33⅓% of the gross Settlement Fund in attorney's fees, in addition to reimbursement of reasonable costs and expenses.  Class Counsel then moved for an award in that amount, plus reimbursement. This Motion has been publicly available since March 19, 2014 on this docket and on Faruqi & Faruqi's website. (Doc. No. 566.)

A lodestar cross-check, which confirms the reasonableness of the fee request, ensures that application of the percentage method results in a recovery that is "sensible." Rite Aid, 396 F.3d at 305-06.   Class Counsel's lodestar is in excess of $11,296,550.  The requested fee is thus 44 percent less than the lodestar and below the range normally approved in comparable cases. See, e.g., Meijer, Inc. v. 3M, No. 04-5871, 2006 WL 2382718, at *24 (E.D. Pa. Aug. 14, 2006) (approving a percentage fee award that translated to a 4.77 multiplier in case that settled after one year); In re Remeron Direct Purchaser Antitrust Litig., No. 03-85, 2005 WL 3008808, at *47-48 (D.N.J. Nov. 9, 2005) (multiplier of 1.8 is on the "low end of the spectrum").

Class Counsel substantially developed this case through their investigation and efforts. Although other Plaintiffs pursued claims against Defendants, Class Counsel took a primary role in leading the joint litigation efforts, including serving as lead questioner during most of Defendants' employee depositions;  taking the lead in third party discovery; overseeing the work of numerous experts in dermatology, gastroenterology, pharmaceutics, pharmaceutical

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 198
of 227
Case 2:12-cv-03824-PD   Document 665   Filed 09/15/14   Page 14 of 15

manufacturing and supply, pharmacoeconomics, and economics.  Further, a one-third contingency is standard in individual litigation; in antitrust litigation, a higher contingency would be reasonable, given the complexities and risks involved.  In these circumstances, the requested 33⅓% fee award is fair and reasonable.  Accordingly, Class Counsel will be awarded attorneys' fees in the amount of $5,000,000 from the Settlement Fund plus interest, if any. Co-Lead Counsel shall allocate the fees among Class Counsel.

Class Counsel also will be awarded $1,111,284.11 for reimbursement of out of pocket expenses that were fairly and reasonably incurred.  The awarded fees and expenses shall be paid to Class Counsel from the Settlement Fund in accordance with the terms of the Settlement Agreement.  Co-Lead Counsel shall allocate the expenses among Class Counsel.

Without affecting the finality of this judgment, I will retain exclusive jurisdiction over the Settlement Agreement to oversee its administration, distribution to the Class, and issues relating to attorneys' fees.  In addition, Defendants and each Class Member irrevocably submit to the exclusive jurisdiction of this Court for any suit, action, proceeding or dispute arising out of or relating to the Settlement Agreement.

RDC, American Sales and Meijer each will be awarded $50,000 from the Settlement Fund.  These payments are in recognition of the work these Plaintiffs undertook in representing the Class. This amount is in addition to whatever monies these Plaintiffs will receive from the Settlement Fund pursuant to the Plan.  These awards are fair and reasonable.

## VIII.   <u>Claims</u>

Finally, I find that under Rule 54(b), there is no just reason to delay the entry of dismissal with prejudice as to Defendants.  Accordingly, I will direct the Clerk to enter final judgment.

The entry of final judgment is appropriate because this Order fully and finally adjudicates the

Class's claims against all Defendants, allows execution of the Settlement, and will expedite the

distribution of the Settlement proceeds to Class Members.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*

September 15, 2014                                   Paul S. Diamond, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROCHESTER DRUG CO-OPERATIVE, INC.,
*et al.,* on behalf of themselves and all others
similarly situated,

C.A. No. 07-142 - SLR
CONSOLIDATED

Plaintiffs,

v.

BRAINTREE LABORATORIES, INC.,

Defendant.

**[PROPOSED] ORDER AND FINAL JUDGMENT APPROVING SETTLEMENT,
AWARDING ATTORNEYS' FEES AND EXPENSES, AWARDING REPRESENTATIVE
PLAINTIFF INCENTIVE AWARDS, APPROVING PLAN OF ALLOCATION, AND
ORDERING DISMISSAL AS TO THE DEFENDANT**

The Court, having considered (a) the Direct Purchaser Class's motion for final settlement

approval; (b) the Brief in support of the Direct Purchaser Class's Motion for Final Settlement

Approval; (c) the Plan of Allocation for Direct Purchaser Class (as set out in the Brief); (d) the

Declaration and Rebuttal Declarations re Class Certification of Jeffrey J. Leitzinger, Ph.D.; (e)

the Brief in Support of the Direct Purchaser Class's Motion for an Award of Attorneys' Fees,

Reimbursement of Expenses and Payment of Incentive Awards to the Representative Plaintiffs;

(f) the Affidavit of Co-Lead Counsel Eric L. Cramer, Esq.; and (g) the individual affidavits of

Class Counsel; and having held a hearing on May 31, 2012, considered all of the submissions

and arguments with respect thereto; pursuant to Rules 23 and 54 of the Federal Rules of Civil

Procedure, and in accordance with the terms of the settlement agreement between Direct

Purchaser Class Plaintiffs ("Plaintiffs") and Braintree Laboratories, Inc. ("Braintree" or

"Defendant"), dated January 5, 2012 (the "Settlement Agreement"), it is hereby **ORDERED,**

**ADJUDGED and DECREED that:**

1.  This order and final judgment incorporates by reference the definitions in the

Settlement Agreement, and all terms used herein shall have the same meanings set forth in the

Settlement Agreement. As set forth in the Preliminary Approval Order [D.I. 233], dated February

6, 2012, the previously certified Class is defined as follows:

> All persons and entities in the United States and U.S. territories who purchased
> Miralax directly from Defendant Braintree Laboratories, Inc. at any time from
> December 23, 2003 until December 1, 2006 (the "Class Period").[1]

2.  The Court has jurisdiction over these actions and over each of the parties and over

all members of the Class.

3.  As required by this Court in the Preliminary Approval Order, notice of the

proposed settlement was mailed by first-class mail to all members of the Class as determined

from the records of the Defendant. Such notice to members of the Class is hereby determined to

be fully in compliance with the requirements of Fed. R. Civ. P. 23(e) and due process of law and

is found to be the best notice practicable under the circumstances and to constitute due and

sufficient notice to all entities entitled thereto.

4.  Due and adequate notice of the proceedings having been offered to the Class to

participate in the fairness hearing, it is hereby determined that all Class members are bound by

this Final Order and Judgment.

---

[1] Excluded from the Class are Defendant and its officers, directors, management, employees,
subsidiaries, or affiliates, and all federal government entities.

5.    The Settlement of this Direct Purchaser Class Action for $17.25 million was not the product of collusion between Plaintiffs and Defendant, or their respective counsel, but rather resulted from *bona fide* and arm's-length negotiations conducted in good faith between Class Counsel[2] and Defendant's counsel.

6.    The Court has held a hearing to consider the fairness, reasonableness and adequacy of the proposed Settlement, and has been advised that there have been no objections to the Settlement from any members of the Class, and also that several members of the Class have explicitly indicated their support for the Settlement and for Class Counsel's requested attorneys' fees, expenses, and for incentive awards for the three Representative Plaintiffs.

7.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby approves the Settlement, and finds that the Settlement is, in all respects, fair, reasonable and adequate. Accordingly, the Settlement shall be consummated in accordance with the terms and provisions of the Settlement Agreement. The Settlement is fair, reasonable and adequate in light of the factors set forth in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), as follows:

> (a)    this case was highly complex, expensive and time consuming and would have continued to be so if the case had not settled;
>
> (b)    there were no objections to the Settlement by Class members and certain large Class members expressed affirmative support for the Settlement;
>
> (c)    because the case settled after the parties had taken substantial discovery

---

[2] The Court previously appointed Garwin Gerstein & Fisher LLP, Berger & Montague, P.C., and Grant & Eisenhofer, P.A. as Co-Lead Counsel. The Court appointed Rosenthal, Monhait & Goddess, P.A. as Liaison Counsel. Additional Class Counsel that actively participated in the case include Heim Payne & Chorush L.L.P., Odom & Des Roches, L.L.P., Smith Segura & Raphael, L.L.P (formerly the Smith Foote Firm), Faruqi & Faruqi L.L.P., and Vanek Vickers & Masini, P.C.

and proceeded substantially into litigating the merits of the claims, Class Counsel had a full appreciation of the strengths and weaknesses of their case before negotiating the Settlement;

(d)     Class Counsel and the Class would have faced numerous and substantial risks in establishing both liability and damages if they had decided to continue to litigate rather than settle;

(e)     the Settlement amount is well within the range of reasonableness in light of the best possible recovery and the risks the parties would have faced if the case had continued to verdicts as to both liability and damages, and;

(f)     the Settlement also satisfies the additional factors set forth in *In re Prudential Ins. Co. of America Sales Practices Litigation*, 148 F.3d 283 (3d Cir. 1998).

8.      The Court approves the Plan of Allocation (the "Plan") of the Settlement proceeds (net of attorneys' fees, reimbursed expenses, incentive awards, and costs of claims administration) as proposed by Class Counsel. The Plan, which was summarized in the Notice of Proposed Settlement, proposes to distribute the net Settlement proceeds *pro rata* based on Class member purchases of Miralax during the Class Period, and does so fairly and efficiently. It directs Heffler, Radetich & Saitta LLP, the firm retained by Class Counsel and appointed by the Court [D.I. 233, ¶6], as the claims administrator, to administer the Settlement and distribute the net settlement proceeds in the manner provided in the Plan.

9.      All claims in the above-captioned action against Defendant are hereby dismissed with prejudice, and without costs.

10.     In accordance with the Settlement Agreement, upon the Settlement's becoming

4

final in accordance with its terms:

(a)     Defendant and its past, present and future parents, subsidiaries, divisions, affiliates, stockholders, officers, directors, insurers, general or limited partners, employees, agents, attorneys and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors and assigns of each of the foregoing) (the "Released Parties") are and shall be released and forever discharged from all manner of claims, demands, actions, suits, causes of action, damages, and liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that Plaintiffs or any member or members of the Class who has (have) not timely excluded itself (themselves) from the Class (including any past present or future officers, directors, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors, successors and assigns, acting in their capacity as such), whether or not they object to the Settlement and whether or not they make a claim upon or participate in the Settlement Fund, ever had, now has, or hereafter can, shall or may have, directly representatively, or in any other capacity, to the extent arising out of or relating to any conduct:

(1)     alleged in the Action, or otherwise relating to the facts, occurrences, transactions, or other matters alleged in the Action, and any damages or other harm allegedly resulting therefrom,

(2)     alleged in any other motion filed in this Action or other complaint filed in any action currently consolidated or coordinated, or subject to a pending request for consolidation or coordination with the actions; provided only that such conduct occurred or

5

allegedly occurred prior to the date thereof, except as expressly provided for in paragraph 12 of

the Settlement Agreement (the "Released Claims"). Plaintiffs and each member of the Class shall

not sue or otherwise seek to establish or impose liability against any Released Party based, in

whole or in part, on any of the Released Claims.

      (b)     In addition, the Court finds that each class member has expressly waived

and released, upon the Settlement Agreement becoming final, any and all provisions, rights

and/or benefits conferred by §1542 of the California Civil code, which reads:

**Section 1542. <u>General Release—Claims Extinguished.</u>**

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

or by any law of any state or territory of the United States or other jurisdiction or principle of

common law, which is similar, comparable or equivalent to §1542 of the California Civil Code.

Each Class member may hereafter discover facts other than or different from those which he, she

or it knows or believes to be true with respect to the claims which are the subject matter of this

Paragraph 10 in the Settlement Agreement, but each Class member has expressly waived and

fully, finally and forever settled and released, upon the Settlement Agreement's becoming final,

any known or unknown, suspected or unsuspected, contingent or non-contingent claim that

would otherwise fall within the definition of Released Claims, whether or not concealed or

hidden, without regard to the subsequent discovery or existence of such different or additional

facts. For avoidance of doubt, the Court finds that each Class member has expressly waived and

fully, finally and forever settled and released any and all claims it may have against any released

party under §17200, *et seq.,* of the California Business and Professions Code or any similar,

comparable or equivalent provision of the law of any other state or territory of the United States

6

or other jurisdiction, which claims are hereby expressly incorporated into the definition of Released Claims.

11.     Class Counsel have moved for an award of attorneys' fees and reimbursement of expenses. Pursuant to Rules 23(h)(3) and 54(d) of the Federal Rules of Civil Procedure, and pursuant to the factors for assessing the reasonableness of a class action fee request as set forth in *Gunter v. Ridgewood Energy Corp.,* 223 F. 3d 190, 195, n.1 (3d Cir. 2000), this Court makes the following findings of fact and conclusions of law:

(a)     the Settlement confers an immediate monetary benefit on the Class of approximately thirty entities of $17.25 million, which benefit is substantial, both in absolute terms and when assessed in light of the risks of establishing liability and damages in this case;

(b)     there were no objections by Class members to the requested fee award of one-third of the Settlement Fund, and in fact, the Settlement and requested attorneys' fee has the affirmative support of three of the largest Class purchasers which, collectively, account for a large share of the total claimed Class damages;

(c)     Class Counsel have effectively and efficiently prosecuted this difficult and complex action on behalf of the members of the Class for over three and one-half years, with no guarantee they would be compensated;

(d)     Class Counsel undertook numerous and significant risks of nonpayment in connection with the prosecution of this action;

(e)     Class Counsel have reasonably expended thousands of hours, and incurred more than seven hundred fifty thousand dollars in out of pocket expenses, in prosecuting this action, with no guarantee of recovery;

(f)     fee awards similar to the fee requested by Class Counsel here have been

7

awarded in similar cases, including numerous Hatch-Waxman antitrust class actions similarly alleging impeded entry of generic drugs;

(g)     the Settlement achieved for the benefit of the Class was obtained as a direct result of Class Counsel's skillful advocacy;

(h)     the Settlement was reached following negotiations held in good faith and in the absence of collusion;

(i)     the "percentage-of-the-fund" method is the proper method for calculating attorneys' fees in common fund class actions in this Circuit (*see, e.g., In re Rite Aid Sec. Litig.,* 396 F.3d. 294, 300, 305-06 (3d Cir. 2005));

(j)     Class members were advised in the Notice of Proposed Settlement of Class Action, which notice was approved by this Court, that Class Counsel intended to move for an award of attorneys' fees in an amount up to one-third of the gross settlement Fund (including interest accrued thereon), plus reimbursement of reasonable costs and expenses incurred in the prosecution of this action;

(k)     Class Counsel did, in fact, move for an award of attorneys' fees in the amount of one-third of the gross $17.25 million Settlement Fund, plus reimbursement of reasonable costs and expenses incurred in the prosecution of this action, which motion has been on the docket and publicly available since March 19, 2012;

(l)     As detailed in Class Counsel's declarations in support of their fee application, a one-third fee award would equate to a lodestar multiplier of just below 0.8. An examination of recently approved multipliers in other Hatch-Waxman class actions similarly alleging impeded generic competition reveals that the multiplier requested here is well within the acceptable range;

8

(m)     In light of the factors and findings described above the requested one-third

fee award is well within the applicable range of reasonable percentage fund awards.

Accordingly, Class Counsel are hereby awarded attorneys' fees in the amount of

one-third of the Settlement Fund, which amounts to $5,750,000.00. The Court finds this award to

be fair and reasonable.

Further, Class Counsel are hereby awarded $752,284.64 out of the Settlement

Fund to reimburse them for the expenses they incurred in the prosecution of this lawsuit, which

expenses the Court finds to be fair, and reasonably incurred to achieve the benefits to the Class

obtained in the Settlement.

12.     Neither this final Order and Judgment, the Settlement Agreement, nor any and all

negotiations, documents and discussions associated with it shall be deemed or construed to be an

admission or evidence of any violation of any statute or law, of any liability or wrongdoing by

Defendant, or of the truth of any of the claims or allegations contained in any complaint or any

other pleading or document.

13.     Without affecting the finality of this judgment, the Court retains exclusive

jurisdiction over the Settlement, and the Settlement Agreement, including the administration and

consummation of the Settlement Agreement, the Plan of Allocation and in order to determine

any issues relating to attorneys' fees and expenses and any distribution to members of the Class.

In addition, without affecting the finality of this judgment, Defendant and each member of the

Class hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action,

proceeding or dispute arising out of or relating to the Settlement Agreement or the applicability

of the Settlement Agreement, including, without limitation, any suit, action, proceeding or

dispute relating to the release provisions herein, except that this submission to the Court's

9

jurisdiction shall not prohibit (a) the assertion of the forum in which a claim is brought that the release included in the Settlement Agreement is a defense, in whole or in part, to such claim or, (b) in the event that such a defense is asserted in that forum, the determination of its merits in that forum.

14.     The three Class representatives are each awarded $60,000 out of the Settlement Fund for representing the Class, which amount is in addition to whatever monies these plaintiffs will receive from the Settlement Fund pursuant to the Plan of Allocation. The Court finds these awards to be fair and reasonable under the circumstances of this case.

15.     In the event the Settlement does not become final in accordance with paragraph 5 of the Settlement Agreement, this Order and Final Judgment shall be rendered null and void as provided by the Settlement Agreement, shall be vacated, and all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Settlement Agreement.

16.     The Court hereby directs that this judgment be entered by the clerk forthwith pursuant to Federal Rule of Civil Procedure 54(b). The direction of the entry of final judgment pursuant to Rule 54(b) is appropriate and proper because this judgment fully and finally adjudicates the claims of the Plaintiffs and the Class against the Defendant in this action, allows consummation of the Settlement, and will expedite the distribution of the Settlement proceeds to the Class members.

SO ORDERED this 31st day of May, 2012.

Hon. Sue L. Robinson
U.S. District Court for the District of
Delaware

10

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STANDARD IRON WORKS, on behalf of
itself and all others similarly situated,

      Plaintiffs,

        v.

ARCELORMITTAL; ARCELORMITTAL
USA, INC.; UNITED STATES STEEL
CORPORATION; NUCOR
CORPORATION; GERDAU
AMERISTEEL CORPORATION; STEEL
DYNAMICS, INC.; AK STEEL HOLDING
CORPORATION; SSAB SWEDISH
STEEL CORPORATION; COMMERCIAL
METALS, INC.,

      Defendants.

Case No. 08 C 5214

Judge James B. Zagel

**ORDER AWARDING ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION
EXPENSES TO CLASS COUNSEL FROM THE COMMON SETTLEMENT FUNDS,
AND APPROVING PLAN OF ALLOCATION AND DISTRIBUTION**

The Court, having considered Class Counsel's Motion for Award of Attorneys' Fees and

Reimbursement of Litigation Expenses and the Memorandum of Law and exhibits in support

thereof (Dkt. No. 519); having held hearings on October 17, 2014 and October 21, 2014

concerning final settlement approval, attorneys' fees and other related issues; and having

considered all of the submissions and arguments with respect thereto, pursuant to Rules 23 and

54 of the Federal Rules of Civil Procedure it is hereby ORDERED, ADJUDGED AND

DECREED that Class Counsel's Motion for Attorneys' Fees and Reimbursement of Litigation

Expenses is GRANTED as follows:

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 211
of 227
Case: 1:08-cv-05214 Document #: 539 Filed: 10/22/14 Page 2 of 18 PageID #:19861

1.      Settlement Class Counsel have moved for attorneys' fees and reimbursement of

litigation expenses out of the total common settlement funds in this litigation. As a result of the

Settlements with ArcelorMittal and U. S. Steel, and prior settlements with Defendants

Commercial Metals, AK Steel, and Gerdau Ameristeel, Class Counsel has secured a total

common fund recovery of $163.9 million for the benefit of the Settlement Class.

2.      After two appropriate notices to the Settlement Class of their intention to seek up

to one-third of the total common settlement fund as attorneys' fees and to seek reimbursement of

litigation expenses, and after a third notice to the Class providing a third opportunity to object to

Class Counsel's motion for attorneys' fees after that motion was filed, and upon consideration of

the motion and all related submissions and argument, and the response of the Settlement Class

thereto; now therefore pursuant to Rules 23(h) and 54(d) of the Federal Rules of Civil Procedure,

this Court awards Settlement Class Counsel 33% of the total Settlement Fund (*i.e.*, 33% of the

sum of all five settlements obtained to date) as a fair and reasonable attorneys' fee.

3.      The Court finds that a 33% fee comports with the prevailing market rate for legal

services of similar quality in similar cases. The Court rests this conclusion on, *inter alia*, data

provided by Class Counsel concerning market rates; the Court's consideration of fee awards in

similar complex litigation, including many recent antitrust class actions in which 33% fees were

awarded for similar work; the nature and complexity of this particular litigation; the substantial

risks of non-recovery borne by Class Counsel in prosecuting this matter on a purely contingent

basis while advancing all litigation costs; the amount and quality of Class Counsel's work; and

the results obtained on behalf of the Class.

4.      Class Counsel initiated and developed this case with no assistance from any prior

government investigation or prosecution, and handled the matter effectively and without

compensation through more than six years of hard-fought litigation. The issues were risky and difficult, and Class Counsel's ultimate success in recovering $163.9 million for the Class— payable promptly in cash—supports the requested fee award.

5.      A lodestar "cross check" further supports  a 33% fee award.  Class Counsel devoted more than $27.7 million in professional time at current billing rates (or approximately $23.6 million at historical rates) to litigating this case. The work involved, *inter alia,* extensive pre-complaint investigation; motion to dismiss and case management briefing; litigating numerous discovery issues with all eight Defendants; reviewing over 3.5 million pages of documents produced in class certification discovery; collecting, reviewing and producing documents from the five class representatives; preparing for and taking the depositions of defendants' expert and lay witnesses; preparing for and defending the depositions of the class representatives; preparing for and conducting a 3-day class certification hearing and numerous other hearings, arguments and conferences over the past six years; preparing thousands of pages of class certification, *Daubert* and expert submissions; and much more.  All of this work led directly to the creation of the common Settlement Fund.

6.      The Court finds that Class Counsel performed their work reasonably and efficiently, that their billing rates are appropriate and consistent with market rates for attorneys of similar skill doing similar work, and that the lodestar totals are reasonable.

7.      Based on current billing rates, the requested lodestar "multiplier" is approximately 1.97, which the Court finds is well within the range of reasonable multipliers awarded in similar contingent cases. The requested multiplier is further supported by the fact that Class Counsel bore all the risk of litigating this complex case (including millions of dollars in litigation expenses) with no guarantee of reimbursement.  Having shouldered these risks, and

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 213
of 227
Case: 1:08-cv-05214 Document #: 539 Filed: 10/22/14 Page 4 of 18 PageID #:19863

having achieved outstanding results for the Class, Class Counsel have earned their requested multiplier.

8.        The reaction of the Class supports the requested fee award. The Settlement Class in this case includes approximately 5,300 direct purchasers, many of which are sophisticated business entities. The absence of objections indicates that the fee is fair and reasonable and consistent with prevailing market rates.

9.        The Court directs that Co-Lead Counsel allocate the fee award among co-counsel in a reasonable manner consistent with Co-Lead Counsel's assessment of each firm's contribution to the prosecution of the case.

10.        Class Counsel also requests reimbursement for $406,850.08 in expenses they have advanced in the prosecution of this lawsuit. The Court grants that request and finds the expenses to be fair and reasonably incurred to achieve the benefits to the Settlement Class obtained in the Settlement, as well as the continued litigation of this Action against non-settling Defendants.

11.        After deducting Court-approved attorneys' fees and expenses (including the previously approved costs of notice and settlement administration), the balance of the common settlement funds shall be distributed to Class members in accordance with Plaintiffs' proposed Plan of Allocation and Distribution, attached hereto as Exhibit 1. The Court finds that the Plan of Allocation and Distribution is fair, reasonable and adequate, and the Court therefore approves the proposed Plan of Allocation and Distribution as submitted. After final approval of the Settlements and entry of this order awarding attorneys' fees and expenses, the claims administrator (Garden City Group) will mail pre-printed claim forms to all Class members identified as direct purchasers in Defendants' transaction data. The pre-printed claim forms shall be in a format substantially similar to the proposed claim form contained in Exhibit 1. Class members will be asked to verify the accuracy of certain purchase information on the pre-printed claim forms and return those forms to the

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 214
of 227
Case: 1:08-cv-05214 Document #: 539 Filed: 10/22/14 Page 5 of 18 PageID #:19864

claims administrator, and they will be given an opportunity to submit additional or corrective information if they wish. Following expiration of the deadline for the return of claim forms, and after consideration of any supplemental information submitted by Class members, the claims administrator will calculate each claiming Class member's *pro rata* share of the Settlement Funds, net of then-due and estimated future settlement administration costs. Class Counsel will supervise the claims process, and Class Counsel will file a motion to update the Court on the claims process and to request approval of the final schedule of distributions prior to any checks being mailed to the Class.

WHEREFORE the Court grants an attorneys' fee award of 33% of the total common settlement funds (*i.e.*, 33% of $163.9 million, or a total fee of $54,087,000), authorizes Co-Lead Counsel to allocate the fee award among co-counsel at Co-Lead Counsel's discretion, awards Class Counsel reimbursement of their requested "out of pocket" litigation costs and expenses from the Settlement funds in the amount of $406,850.08 (in addition to the reimbursement of $5,064,908.97 in litigation expenses approved in connection with the earlier Settlements), and approves the proposed Plan of Allocation and Distribution for the Settlement funds.

SO ORDERED this the 22nd day of October, 2014.

Honorable James B. Zagel
United States District Judge

5

# EXHIBIT 1

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 216
of 227
Case: 1:08-cv-05214 Document #: 539 Filed: 10/22/14 Page 7 of 18 PageID #:19866

**CLASS COUNSEL'S PROPOSED PLAN OF ALLOCATION AND DISTRIBUTION
FOR THE *STEEL ANTITRUST* SETTLEMENT FUNDS RECOVERED FROM
DEFENDANTS ARCELORMITTAL, U.S. STEEL, GERDAU, COMMERCIAL
METALS, AND AK STEEL**

## 1. Distribution and Submission of Personalized Claim Forms

After final approval of the Settlements and entry of an order awarding attorneys' fees and

expenses, The Garden City Group, Inc. ("Garden City Group"), the claims administrator

approved by the Court, will prepare and mail proof of claim forms, substantially in the form

attached as Appendix A to this Plan, to all members of the Class. The mailing list was derived

from the Defendants' transactional databases, as synthesized by Plaintiffs' expert consultants and

Garden City Group. Garden City Group and Co-Lead Counsel have updated the mailing list in

the course of administering earlier notice programs in this matter, and will further update it as

necessary.

The proof of claim form explains that members of the certified Settlement Class ("Class

Members") will be entitled to a distribution from the Settlement Funds, and identifies Class

Members as those who purchased Steel Products (defined in the form) directly from a Defendant

(defined in the form) in the United States and its territories at any time from April 1, 2005

through December 31, 2007, except for Defendants, governmental entities, and purchasers who

timely elected to exclude themselves from the Class.

The proof of claim form further explains that Class Members will be entitled to a *pro rata*

distribution of the Net Settlement Funds. Net Settlement Funds are the monies deposited into

escrow pursuant to the approved Settlement agreements, plus all accrued interest on those

accounts, minus all attorneys' fees and expenses awarded by the Court, minus reasonable

anticipated fees and costs associated with settlement administration, and minus anticipated tax

payments and tax preparation fees associated with the Escrow Accounts.

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 217
of 227
Case: 1:08-cv-05214 Document #: 539 Filed: 10/22/14 Page 8 of 18 PageID #:19867

The claim form states that Class Members' recovery will be a function of their purchase volume (in dollars) of eligible Steel Products from all of the Defendants during the Class Period. Using data obtained from sales records provided by the Defendants, Garden City Group will prepare a personalized claim form for each Class Member that includes the dollar value of the Class Member's purchases of eligible Steel Products during the Class Period.

*Class Members will be advised that they must submit a claim form to be eligible to receive a distribution from the Settlement funds.* Class Members will have two options for doing so. First, they can simply sign and return their claim form if they accept the pre-printed tabulation of qualifying purchases. Alternatively, they can return the claim form along with backup data supporting a different estimated dollar value of eligible purchases.

Using the pre-printed claim form will save most Class Members substantial time and effort they might otherwise have to devote to tracking down, compiling and submitting documentation in support of their claim, and will reduce the time necessary for reviewing and processing claims and hence advance the date of ultimate distribution of funds. If Class Members believe the pre-printed purchase data is inaccurate, however, they will have the option of submitting their own purchase data so long as it is supported by adequate proof.

To make a claim and receive a distribution from the Net Settlement Funds, a Class Member must return a properly completed claim form to Garden City Group postmarked no later than forty-five (45) days from the date of the initial claim form mailing to the Class Member.

### 2. Processing and Review of Claims

Garden City Group will review and process all submitted claims, under the supervision and guidance of Class Counsel. Garden City Group first will determine whether a claim form is timely, properly completed, and signed.

- 2 -

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 218
of 227
Case: 1:08-cv-05214 Document #: 539 Filed: 10/22/14 Page 9 of 18 PageID #:19868

If Garden City Group determines that it needs further information or documentation to properly process a claim, the claimant will be notified in writing. The notification will explain how the claimant can cure the deficiency and provide a reasonable deadline (generally twenty (20) days from the mailing date of the deficiency notification) for submitting a curing response. If a claimant fails to correct the deficiency within the time specified, the claim may be rejected in whole or in part.

Garden City Group will classify all claims as either "Eligible" or "Ineligible." "Eligible Claims" will be further classified as: (i) claims recommended for approval as filed; (ii) claims recommended for approval but with modification; or (iii) late claims recommended for acceptance because they would have been Eligible Claims if filed on time and their acceptance will not substantially delay claims administration. Garden City Group will classify as "Ineligible Claims" those claims that it recommends for rejection and will identify the basis.

Class Counsel will review the list of Eligible and Ineligible Claims and may accept, reject, or modify the Class Administrator's decisions.

### 3. Calculation of Class Member *Pro Rata* Shares and Distribution Amounts

Once Class Counsel and Garden City Group determine which claims are recommended for approval (as submitted or as modified), Garden City Group will calculate each claimant's *pro rata* share of the settlements. Each claimant's share will be in proportion to the total amount of approved purchases of Steel Products, calculated as a fraction—the numerator being the sum of that claimant's eligible purchases in dollars, and the denominator being the sum of all approved claimants' eligible purchases in dollars. Garden City Group will multiply the resulting fraction

for each claimant by the dollar amount of the monies to be distributed from the Net Settlement Funds to obtain the dollar value of each claimant's distribution payment.[1]

### 4. Submission of a Recommended Schedule of Distribution

After Garden City Group calculates each claimant's *pro rata* share and estimated distribution from the Net Settlement Funds, Class Counsel will file a motion with the Court to approve the final plan of distribution and will provide the Court a report on (i) the status of the claims process, (ii) the proposed distribution amounts for individual Class Members (the "Schedule of Distribution"), and (iii) any outstanding disputes on which the Court's guidance is sought.

### 5. Payment to the Claimants

After entry of the Court's order approving a Schedule of Distribution (whether as presented or as modified by the Court), the Escrow Agent for the Settlement Funds will release the Net Settlement Funds to Garden City Group, which will deposit them into a single Distribution Account. Garden City Group will then issue a check payable to each claimant in an amount corresponding to its *pro rata* share of the funds, as approved by the Court, and will use reasonable efforts to locate any claimants whose checks are returned as undeliverable.

All settlement checks issued by Garden City Group will bear an expiration date. Garden City Group will use reasonable efforts to encourage claimants to cash checks before they expire and may reissue checks to claimants whose checks have expired. Garden City Group will void expired checks that are not cleared within a commercially reasonable period of time (generally

---

[1] For Class Members who opted out of one or more, but not all, of the Settlements, their *pro rata* share will be adjusted downward by the percentage share of the Settlement Funds contributed by Defendants from whose Settlements the Class Member opted out, and the amount by which such Class Members' distribution amount is reduced will be reallocated across the rest of the Class.

90 or 120 days). The monies represented by voided checks that are not reissued shall revert to the Distribution Account, at which time Class Counsel will provide a status report to the Court on the status of the distribution, the amount of any unclaimed funds, and a recommendation on what to do with such funds.

### 6. Payment of Garden City Group's Invoices

Garden City Group will submit monthly invoices to Class Counsel detailing the work performed and the expenses incurred in the prior month in the course of administering the Settlements. Class Counsel will review such invoices, seek clarification or modification as needed, and submit invoices for reasonable and necessary fees and expenses to the Escrow Agents with a written request that the invoices be paid from the appropriate Escrow Account(s). Class Counsel will update the Court on these expenses in the aforementioned status report, and Class Counsel will submit any additional status reports that the Court may request.

# APPENDIX A

To Class Counsel's Proposed Plan Of Allocation And Distribution For The *Steel Antitrust* Settlement Funds Recovered from Defendants ArcelorMittal, U.S. Steel, Gerdau, Commercial Metals, and AK Steel:

Proposed Proof of Claim Form

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 222
of 227
Case: 1:08-cv-05214 Document #: 539 Filed: 10/22/14 Page 13 of 18 PageID #:19872

Steel Antitrust Litigation c/o
GCG
P.O. Box 9349
Dublin, OH 43017-4249

**IMPORTANT COURT-ORDERED DOCUMENT**

For Official Use Only

01

# <<BARCODE>>

Claimant ID #(<Claimant_ID)) - (<Sequence))
(<Name_1))
(<Address_1))
(<City)), (<State)) (<Zip5)) (<Zip4))

**IN RE: STEEL ANTITRUST LITIGATION**
United States District Court for the Northern District of Illinois
Civil No. 08-cv-5214

## PROOF OF CLAIM FORM — ARCELORMITTAL, U.S. STEEL, GERDAU, COMMERCIAL METALS, AK STEEL SETTLEMENTS

<u>Important Notice</u>:   If you are a Settlement Class Member, you can submit a claim without collecting any documentation from your files.

**To receive your share of the Settlement funds, you must send a completed, signed, and certified proof of claim to the Claims Administrator, postmarked on or before --------, -----, to the following address:**

Steel Antitrust Litigation
c/o GCG
P.O. Box 9349
Dublin, OH 43017-4249

You are only entitled to a distribution if you are a member of the Settlement Class. You are a member of the Settlement Class if you purchased Steel Products (as defined below) directly from a defendant (defined below) at any time from April 1, 2005 through December 31, 2007 in the United States. Excluded from the Class are any defendants, their employees, and their respective parents, subsidiaries and affiliates; all who timely elected to exclude themselves from the Class; and all governmental entities.

**"Steel Products"** are defined as products derived from raw carbon steel and sold directly by any of the Defendants or their subsidiaries or controlled affiliates in the United States, including all carbon steel slabs, plates, sheet and coil products, galvanized and other coated sheet products; billets, blooms, rebar, merchant bar, beams and other structural shapes; and all other steel products derived from raw carbon steel and sold by Defendants except as specifically excluded below.

**"Steel Products"** specifically **exclude** the following product categories:   stainless steel; grain-oriented electrical steel; tin mill products; clad plate (i.e., nickel, stainless or copper clad plate); steel pipe and other tubular products; "special bar quality" products; wire rod and other wire products; grinding balls; fabricated rebar products; fabricated steel joist, decking, fence posts and other fabricated building products; welded steel blanks; and steel products purchased under toll processing agreements.

The term **"Purchased"** includes all transactions for which pricing was negotiated during the period April 1, 2005 through December 31, 2007 **and** delivery was received during that period.   Qualifying purchases also include Steel Product transactions for which a sales contract was negotiated before April 1, 2005 but (i) delivery was received between April 1, 2005-December 31, 2007 **and** (ii) the actual transaction price under the contract was adjusted (or indexed) based on market pricing that prevailed during the period April 1, 2005-December 31, 2007.

**"Defendants"** are:   ArcelorMittal S.A. and ArcelorMittal USA LLC (collectively "ArcelorMittal"), United States Steel Corporation ("U.S. Steel"), Nucor Corporation ("Nucor"), AK Steel Holding Corporation ("AK Steel"), Gerdau Ameristeel Corporation ("Gerdau"), Steel Dynamics, Inc. ("Steel Dynamics"), Commercial Metals Company ("CMC"), and SSAB Swedish Steel Corporation ("SSAB").

If you are *not* a Class Member, *e.g.*, because you did not purchase Steel Products directly from a Defendant during the period April 1, 2005-December 31, 2007, or because you previously excluded yourself from the Settlement Class, you are not entitled to a distribution and should *not* submit this Proof of Claim form.

This Proof of Claim, even if prepared by a third party, must be completed, signed and certified by the Class Member. The Claims Administrator is authorized to request from persons or entities submitting proofs of claim any documentation necessary to verify information appearing in the Proof of Claim and to prevent claim duplication. Failure to provide requested information may constitute grounds for rejection of the Proof of Claim.

---

## PART 1: CLAIMANT IDENTIFICATION
(Please type or neatly print all information – use blue or black ink)

Class Member Name and Address:

**[PRE-PRINTED CLAIMANT NAME]**
**ADDRESS**
**CITY, STATE ZIP**

If necessary, use the following box to correct your name and address information:

Case No. 1:90-cv-00181-JLK   Document 2435-17   filed 01/12/17   USDC Colorado   pg 224
of 227
Case: 1:08-cv-05214 Document #: 539 Filed: 10/22/14 Page 15 of 18 PageID #:19874

Federal Employer Tax ID Number (FEIN)

Person to contact if there are questions regarding this claim:

Daytime phone number:

Email address:

Any other names by which you have been known, including FEIN, during the period April 1, 2005-December 31, 2007:

## PART 2: CLAIMANTS' PURCHASE DATA

As described in the Plan of Allocation, which is available at the Steel Settlement website, www.steelantitrustsettlement.com, each Class Member's claim is based on the amounts each Class Member paid for purchases of qualifying Steel Products during the period April 1, 2005-December 31, 2007. The Net Settlement Funds will be distributed to Class Members on a *pro rata* basis, with Class Members' purchases of Steel Products from all of the Defendants serving as the basis for the calculation.

**To submit a claim based on Defendants' purchase data, which is summarized in the table below, all you have to do is complete Part 4 below, and return the claim form.   In other words, if you accept the purchase figures in the box immediately below, there is no need to complete Part 3 of this claim form and no need to search your own records or produce any backup to receive your share of the Settlement Funds.**

| Defendant-Supplier | Direct Purchase Amount |
|---|---|
| ArcelorMittal | |
| U.S. Steel | |
| Nucor | |
| AK Steel | |
| Gerdau | |
| Steel Dynamics | |
| CMC | |
| SSAB | |
| **Total** | |

**The totals above were obtained directly from the Defendants' sales records and summarize your total payments for Steel Products during the period April 1, 2005-December 31, 2007.   If you accept this estimate, you can simply skip Part 3 below and proceed to Part 4, and your share of the Steel Settlement Fund will be calculated based on this amount.**

**Please Note**:  If you appeared in Defendants' records under other names or at different locations, you and related entities and locations may receive multiple but non-duplicative Proof of Claim forms, each with a unique Claimant ID Number (located in the address block on the first page).

## PART 3: CLAIMANTS' CORRECTED PURCHASE DATA

### (To be completed ONLY if you disagree with, and do not wish to accept, the totals presented in Part 2)

If you disagree with the pre-printed information contained in Part 2, please enter the corrected purchase totals in the table below and attach documentation in support of the revised total. **You MUST attach documentation in support of any corrected amounts.**

| Defendant-Supplier | Direct Purchase Amount |
|---|---|
| ArcelorMittal | |
| U.S. Steel | |
| Nucor | |
| AK Steel | |
| Gerdau | |
| Steel Dynamics | |
| CMC | |
| SSAB | |
| **Total** | |

To support any corrected purchase amounts, you **must** provide proof to support the corrected amount and identify the Defendant-supplier, product names and types, dates of purchase, and net purchase amounts (in U.S. dollars). Electronic transaction summaries or similar records are preferred. Only purchases made directly from one of the Defendants qualify. Purchases through an intermediary such as a service center, wholesaler or distributor **do not qualify**.

If you received and are correcting multiple Proof of Claim forms, please provide supporting documentation for all of them.

### PART 4: SUBMISSION TO JURISDICTION OF THE COURT AND VERIFICATION

By signing below, you are submitting to the jurisdiction of the United States District Court for the Northern District of Illinois with respect to the claim you are making as a Class Member.

By signing below, you are verifying that you are the proper recipient of the funds sought and that you have not assigned or transferred (or purported to assign or transfer) any of the claims in this matter. You are further verifying that the information provided in this Proof of Claim is accurate and complete.

Name and Capacity/Title:

Signature:

Date:

The completed Proof of Claim and the information it contains will be treated as confidential and will be used solely for purposes of administering the settlement.