**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, *et al.*,

       Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

       Defendants.

**PLAINTIFFS' MOTION AND INCORPORATED MEMORANDUM OF LAW TO
PROHIBIT OPTIMAL SETTLEMENTS, LLC'S COMMUNICATIONS WITH
SETTLEMENT CLASS MEMBERS, ISSUE CURATIVE NOTICE, AND REQUIRE
PROSPECTIVE REVIEW OF AND INCLUSION OF DISCLOSURES IN ALL THIRD
PARTY COMMUNICATIONS WITH THE CLASS**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ......................................................................................................... 1

II.    PROPOSED RELIEF........................................................................................................ 2

III.   FACTS ............................................................................................................................ 4

   A.   Optimal's Communications with Class Members ............................................... 4

      1.   The "FINAL NOTICE" Mailer Was Misleading ............................................ 4

      2.   Optimal's Website is Misleading ...................................................................... 5

      3.   Optimal's Telephonic Sales Pitch is Misleading and Coercive ....................... 5

      4.   Optimal May Be Preparing for a Door-to-Door Campaign, Which May Likely Also Be Coercive and Misleading ......................................................................................... 6

   B.   Class Counsel Attempted to Resolve the Matter Without Court Intervention.................... 6

IV.   ARGUMENT .................................................................................................................. 9

   A.   The Court Has Authority Under the All Writs Act and Rule 23 to Protect the Settlement Class ..................................................................................................................... 9

   B.   Optimal's Communications, Individually and as a Whole Pattern of Conduct, Are Misleading, Coercive, and Injurious to the Class Members and Therefore Threaten Irreparable Harm....................................................................................................................... 12

   C.   The Requested Relief is Necessary and Tailored to the Threatened Harm to the Class Members.................................................................................................................... 15

      1.   Remedial Measures Against Optimal Are Warranted................................... 15

      2.   Prospective Relief to Supervise or Require Disclosures in Communications by Optimal and Other Claims Filers is Warranted ...................................................................... 19

V.     CONCLUSION.............................................................................................................. 23

i

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE NO(S).</u>

<u>Cases</u>

*Balasanyan v. Nordstrom, Inc., No. 11-cv-2609-JM-WMC,*
2012 U.S. Dist. LEXIS 30809, at *10 (S.D. Cal. Mar. 8, 2012) ............................................. 11

*Cnty. of Santa Clara v. Astra USA, Inc.,*
2010 U.S. Dist. LEXIS 78312, at *20 ................................................................................... 22

*Erhardt v. Prudential Group, Inc. et al,*
629 F. 2d 843 (2d Cir. 1980) ................................................................................................ 15

*Fleury v. Richemont N. Am., Inc., No.,*
2007 WL 2349284 (N.D. Cal. Aug. 15, 2007) ........................................................... 17, 21, 22

*Georgine v. Amchem Prods., Inc.,*
160 F.R.D. 478 (E.D. Pa. 1995) ........................................................................................... 18

*Gortat v. Capala Bros., Inc.,*
2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010) .......................................................................... 18

*Gulf Oil Co. v. Bernard,*
452 U.S. 89 (1981) ...................................................................................................... 10, 12

*Hampton Hardware, Inc. v. Cotter & Co., Inc.,*
156 F.R.D. 630 (N.D. Tex. 1994) ......................................................................................... 22

*In re Baldwin-United Corp.,*
770 F.2d 328 (2d Cir. 1985) .............................................................................................. 9, 10

*In re Initial Pub. Offering Sec. Litig.,*
499 F. Supp. 2d 415 (S.D.N.Y. 2007) ................................................................................... 16

*In re Lupron Mktg. and Sales Practices Litig.,*
2004 WL 3049754 (D. Mass. 2004) ...................................................................................... 16

*In re McKesson HBOC, Inc. Sec. Litig.,*
126 F. Supp. 2d 1239 (N.D. Cal. 2000) ........................................................................... 11, 18

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.,*
2014 WL 4966072 (E.D.N.Y. Oct. 3, 2014) ................................................................. 11, 13, 19

*In re School Asbestos Litig.,*
    842 F.2d 671 (3d Cir. 1988) ................................................................................. 11

*In re Synthroid Mktg. Litig.,*
    197 F.R.D. 607 (N.D. Ill. 2000) ........................................................................... 17

*In re Visa Check/Mastermoney Antitrust Litig.,*
    2006 WL 1025588 (E.D.N.Y. Mar. 31, 2006) ................................................... 9, 10

*Jack Faucett Assocs., Inc. v. Am. Tel. & Tel. Co.,*
    1985 WL 25746 (D.D.C. Oct. 18, 1985) ......................................................... 12, 21

*Kleiner v. First Nat'l Bank of Atlanta,*
    751 F.2d 1193 (11th Cir. 1985) ............................................................... 11, 21, 22

*Retiree Support Grp. of Contra Costa Cty. v. Contra Costa Cty.,*
    2016 WL 4080294 (N.D. Cal. July 29, 2016) ....................................................... 11

*Romano v. SLS Residential, Inc.,*
    253 F.R.D. 292 (S.D.N.Y. 2008) ......................................................................... 18

*U.S. v. New York Tel. Co.,*
    434 U.S. 159 (1977) ....................................................................................... 9, 10

## Statutes

28 U.S.C. §1651(a) ...................................................................................................... 9

## Other Authorities

Manual for Complex Litigation (Fourth) §21 (2004) ....................................... 11, 12, 20

Newberg on Class Actions (5th Ed.) §§ 8.15, 8.17 ............................................... 20

## I.      INTRODUCTION

Last week, Class Counsel and the Court-appointed Settlement and Claims Administrator, Heffler Claims Group ("Heffler" or the "Claims Administrator"), learned that unauthorized and misleading mailings (attached as Ex. 1) had been sent to Class Members. On February 8, 2017, Class Counsel wrote to the firm sending these mailings, Optimal Settlements LLC, objecting and requesting them to cease and desist. We also filed a copy of this letter with the Court.

Since then, Class Counsel and Optimal have had a series of discussions which has led to some positive changes in Optimal's approach but which, unfortunately, did not yield a solution satisfactory to either redress the potential damage that may have already been done or to ensure that additional damage will not occur in the future. Class Counsel also obtained a copy of their form contract with potential Class Members (attached as Ex. 2) and objected to several provisions, and Optimal agreed to make some changes at our request. However, we respectfully submit in this filing that a supplemental mailing to Class Members contacted by Optimal should be sent Heffler, and not by Optimal, and that Optimal supply a list of the persons they contacted or attempted to contact so that this can be accomplished under Court supervision.

Further, we seek an Order memorializing both the concessions that have been made by Optimal and granting Plaintiffs' further requests for remediation. Finally, we seek a separate Court Order, under Fed.R.Civ.P. 23(d)(1)(B), requiring that any future communications directed to Settlement Class Members by any third parties first be submitted to the Court and to Class Counsel.[1]

---

[1] Class Counsel have already directed the Administrator to post a corrective notice on the official www.rockyflatssettlement.com website regarding the incorrect filing deadline in Optimal's mailing, making clear that Optimal is not affiliated with the Court, Class Counsel, Heffler, or the parties to this case, and that Optimal charges a fee.

## II.    PROPOSED RELIEF

Plaintiffs respectfully request that the Court grant the following relief:

1) order Optimal to cease its current, misleading mail solicitation campaign;

2) order Optimal to cease responding to telephone inquiries from Settlement Class Members until corrective notice is mailed, but instead direct those callers to the official, Court-approved website, www.rockyflatssettlement.com;

3) prohibit Optimal from engaging in in-person solicitations of potential Settlement Class Members;

4) order Optimal to include in all future communications with the Settlement Class Members, in a prominent position (for written materials), the following disclosures (the "**Required Disclosures**"):

   a.  Optimal is not affiliated with the Court or the parties and is not the Court-appointed Settlement and Claims Administrator;

   b.  The official settlement website, including the Court-approved Class Notice, can be found at www.rockyflatssettlement.com;

   c.  The fact that the Class Members are represented by counsel, and the contact information for Berger & Montague, P.C., and Silver & DeBoskey, P.C., and

   d.  The fact that Class Members may file a claim with Heffler free of charge;

5) order Optimal to produce to Class Counsel a list of all Class Members it has contacted, including names and contact information;

6) order Optimal to produce to Class Counsel the names and contact information of all Class Members that have contracted with Optimal;

7) void all contracts reached to date between Optimal and any Class Member;

8) direct that the Claims Administrator, at Optimal's expense, send a curative notice in substantially the same form as the attached Proposed Notice (Ex. 3) to all potential Class Members who were contacted by Optimal; and

9) order Optimal to amend its contract with potential Settlement Class Members as follows:

  a. add the Required Disclosures, as defined above, to the top of the first page of the document;

  b. move the disclosure currently found in Paragraph Seven, which states that the company is unaffiliated with the Court-appointed Settlement and Claims Administrator, to the front page of the document;

  c. remove the term "exclusive recovery agent" and instead state that the Court has appointed Class Counsel and the Settlement and Claims Administrator to assist the Class Members;

  d. delete the arbitration, jurisdictional, and indemnity provisions; and

  e. add language agreeing to use a third-party escrow account in order to send or receive client funds.

In addition, Class Counsel respectfully request that the Court enter a separate, prospective order:

10) requiring Court approval of all future communications with Settlement Class Members regarding this case by Optimal and all other third party claims processors or claims buyers; and

11) requiring that all future communications by third party claims processors or claims buyers with Settlement Class Members regarding this case must prominently feature the Required Disclosures.

Optimal has agreed to cooperate in whole or in part on the relief set forth in 1, 2, 7, and 9(b)-(e) above. Nonetheless as discussed more fully below, the limited remedial items to which Optimal has agreed are inadequate. Without Court intervention, Optimal will likely continue to, for example, use high-pressure sales tactics to induce Class Members into paying high fees for Optimal's unnecessary services, and will fail to provide Class Members with accurate and complete information about upcoming deadlines, including, for example, the information included on the Court-approved official settlement website. Plaintiffs respectfully request that the Court memorialize both the agreed and the disputed items in its Order so as to aid enforcement.

### III.    FACTS

#### A.    Optimal's Communications with Class Members

##### 1.    Optimal's "FINAL NOTICE" Mailer Was Misleading

On February 7, 2017, the Court-appointed Settlement and Class Administrator, Heffler Claims Group, informed Lead Counsel that it had received an inquiry from a potential Class Member regarding a mailing that individual had received from Optimal Settlements, LLC. Heffler forwarded a photograph of the mailing (attached as Ex. 1) to Class Counsel.

The mailing, which was misleadingly labeled "FINAL NOTICE CONCERNING YOUR CLAIM REIMBURSEMENT", did not make clear that it was sent by a third-party claims filer that is not affiliated with the Court, Class Counsel, or Heffler. It also attempted to create a false sense of urgency by use of the phrases "FINAL NOTICE" and "time-sensitive notice", by imposing a very short, false deadline of February 17, 2017 (whereas the Court-ordered claims deadline is actually June 1, 2017), and by warning that "Failure to file an eligible claim may result in a loss of all potential monetary benefits."

Optimal's mailing also failed to disclose that the Class Member is already represented by Court-appointed Counsel; and failed to refer to the official settlement website, which contains the Class Notice and *accurate* upcoming dates and deadlines. Optimal's mailing did not even disclose that filing a claim through Optimal will entail a fee, let alone that that fee is an unconscionable 25% to 30% of the Class Member's recovery. Nor did the mailing disclose that Class Members can avoid that fee by filing a claim directly with Heffler. On the contrary, the mailing stated that Class Members could receive a "Claims Valuation Analysis" "free of cost".

While Optimal has since asserted to Class Counsel that some of the errors in its mailing were a "mistake" (e.g. the erroneous February 17 deadline), corrective disclosures and prospective relief are still necessary.

### 2.        Optimal's Website is Misleading

The majority of the content on Optimal's website, www.optimalsettlements.com, is devoted to portraying the claims process as arduous and implying that Class Counsel and the Claims Administrator will be acting as adversaries opposed to the Class Members. For example, Optimal's website states:

> o   "Making sure our clients recover their full settlement amount is a complex and time consuming process. It requires working with litigators, court administrators and settling parties to overcome the inevitable delays, audits and appeals process before the settlement case funds are distributed."
>
> o   "We analyze the data set claim, gather and file all claim forms and necessary supporting documents, verify eligibility with the Claims Administrator, and monitor the process on a daily basis. Then the hard work starts. We fight on your behalf with the litigators, settling parties and court administrators to overcome delays and appeals. We respond to any audit requests and petition counsel to maximize payouts for our clients."
>
> o   "Through the settlement process, the value of your claim can oftentimes be reduced, or outright rejected leaving you with a smaller claim ot [sic] nothing at all."

*See* Ex. 4 (optimalsettlements.com, last accessed Feb. 7, 2017). Although the website does not contain any information specific to this case, it is likely that Class Members who received Optimal's mailer will visit the site in an attempt to investigate the company.

Further, like its mailing, but unlike the Claims Administrator's Court-approved website, Optimal's website fails to include a copy of the Court-approved long-form Class Notice or a link thereto, the accurate claims filing deadline, or the fact that the Settlement Class Members are represented by counsel and the contact information for their counsel.

### 3.        Optimal's Telephonic Sales Pitch is Misleading and Coercive

As part of Class Counsel's investigation in Optimal's communications with Class Members, a paralegal from Berger & Montague, P.C. called the toll-free number in Optimal's

mailing and was subjected to a high-pressure and misleading sales pitch. The speaker, who identified herself as Mande or Mandy, falsely stated that Optimal "works with" the Settlement and Claims Administrator (a statement she later walked back, instead saying that she did not work with the Administrator but simply helped claimants fill out forms for the Administrator). The speaker also claimed that settlement payments could take several years, and claimed the caller could obtain an expedited payment within a few weeks – without disclosing that this "expedited payment" would in fact entail Optimal purchasing the individual's claim at a substantial discount off its true value. *See* Affidavit of Karen Markert (attached as Ex. 5).

### 4. Optimal Appears to Be Preparing for a Door-to-Door Campaign, Which May Also Be Coercive and Misleading

Through an internet search, Counsel discovered that Optimal has advertised a job listing for sales representatives to go door-to-door soliciting claimants. *See* AngelList job posting (Ex. 6). Optimal's planned in-person contact creates a risk that Optimal's employees will use the same coercive and misleading sales tactics used in its mailing and telephone script. This risk is especially acute because the job posting promises a "$30 each sign up" bonus – in other words, the sales representatives could be motivated to mislead Class Members into agreeing to sign up with Optimal in order to earn the promised bonus.

### B. Class Counsel Attempted to Resolve the Matter Without Court Intervention

On February 8, 2017, Class Counsel sent a cease and desist letter by fax, email, and Federal Express to Mande Raiher at Optimal (the contact person listed in the mailing). That letter is attached as Ex. 7, and was also filed with the Court (Doc. 2440).

Optimal's representatives called Class Counsel the same day. Lead Counsel Merrill G. Davidoff held a telephone conference with Eileen Chin, President of Optimal, and Mande Raiher, Vice-President of Client Relations. Mr. Davidoff relayed Counsel's concerns with

Optimal's mailer and solicitations program. Optimal's representatives responded with an email attaching a list of the company's proposed responses, which included some corrective action. *See* Ex. 8. Among other things, Optimal agreed in principle to issue a corrective notice, to include a statement in its future mailings that it is not affiliated with the parties, the Court, or the Settlement and Claims Administrator, and to indicate that it charges a fee.

Additionally, in response to Counsel's email request, Optimal provided its form contract (attached as Ex. 2).  However, the specific amount of Optimal's fee was left blank. Class Counsel emailed Optimal on February 9 to ask for the fee amount. By email response, Optimal's representative indicated their usual fee was 25% to 30% of the Class Member's own recovery. *See* Feb. 9, 2017 email chain (Ex. 9).

On February 9, 2017, Class Counsel and Optimal's representatives held a second call. Optimal represented that it had not yet signed up any Class Members for its services, and stated it had ceased responding to telephone inquiries, but (with the agreement of Counsel) would respond to voice messages by simply stating that it was planning to send a corrected notice. Although Optimal's representatives again agreed in principle that a corrective notice should be issued, they argued it should be limited to simply correcting the filing deadline and clarifying that Optimal was not affiliated with the Court or the parties. Class Counsel insisted that the corrective notice needed to include information about the official settlement website, plus the fact that the Class Members were represented by counsel and the identity of Class Counsel. Counsel also stressed that, in light of the serious Rule 23 and fairness issues at stake, all future communications would need to include a prominent, clear disclosure that the company was not affiliated with this case, inform Class Members of the official settlement website where a copy of

7

the Class Notice can be found, give Counsel's and Heffler's contact information, and inform Class Members that they may file a claim with Heffler at no cost.

Counsel further pointed out a number of problems with Optimal's form contract, including that the disclosure that the company is unaffiliated with the Court-appointed Settlement and Claims Administrator is buried in the middle of the second page of the document (*see* Ex. 2 ¶ 7); that it fails to disclose the identity of Class Counsel while claiming Optimal is the "exclusive recovery agent" (*id*. ¶ 3), whereas Class Counsel are in fact the agents for the Class Members, and while disclaiming that Optimal is providing any legal representation to the Class Member (*id*. ¶ 7); that it includes a vague and grossly overly broad indemnification clause (*id*. ¶ 10); and that it purports to require arbitration in a distant forum (Los Angeles) (*id*. ¶ 11) in contravention of this Court's exclusive jurisdiction over the Settlement. Lastly, Counsel take issue with the provision requiring that all client settlement proceeds be transferred directly to Optimal's bank account (*id*. ¶ 6).

On February 10, 2017, Optimal sent a second written response (attached as Ex. 10). The company agreed to omit any further deadlines other than the official Court-ordered deadline from its written materials. It refused to provide Counsel with a list of potential Class Members it had already contacted in order for Heffler to send a corrective notice, but instead insisted that it should have the corrective notice (once approved by Class Counsel) sent by its own direct mail vendor. It also agreed to amend the contract with Settlement Class Members to remove the "exclusive recovery agent" language, move the disclosure in Paragraph 7 (that Optimal is not affiliated with the Court or the parties) up to Section 1; remove the indemnification, arbitration, and jurisdiction provisions; and have all client funds paid into a third-party escrow account, rather than depositing those funds directly into the company's own account. However, Optimal

refused to include in any of its communications (the corrective notice, its website, or future solicitations) any link to the official settlement website or the contact information for Class Counsel.

## IV.   ARGUMENT

The Court has expansive authority under the All-Writs Act and Rule 23 to regulate communications with Class Members and protect them from deceptive conduct. Optimal's conduct threatens irreparable harm because it appears designed to mislead Class Members into signing away up to 30% of their recovery for no benefit. An order prohibiting such misleading communications and requiring corrective disclosures is both necessary and justified because Optimal (and similar firms) have no right to engage in deceptive communications with Class Members, and the relief sought is narrowly tailored to protect the Class Members from such abusive conduct.

### A.   The Court Has Authority Under the All Writs Act and Rule 23 to Protect the Settlement Class

The All Writs Act vests in this Court the power to "issue all writs necessary or appropriate in aid of [its] respective jurisdiction[]." 28 U.S.C. §1651(a); *U.S. v. New York Tel. Co.*, 434 U.S. 159, 171-73 (1977). This power "extends, under appropriate circumstances, to persons who, *though not parties to the original action or engaged in wrongdoing*, are in a position to frustrate the implementation of a court order or the proper administration of justice." *Id.* at 174 (emphasis added). *See also In re Baldwin-United Corp.*, 770 F.2d 328, 338 (2d Cir. 1985) ("An important feature of the All-Writs Act is its grant of authority to enjoin and bind non-parties to an action when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction."); *In re Visa Check/Mastermoney Antitrust Litig.*, No. CV-96-5238, 2006 WL 1025588, at *4 (E.D.N.Y. Mar. 31, 2006) (All-Writs

Act authorizes curative orders "to protect the settlement from threats by both parties and non-parties.").

The powers granted by the Act are broad: a court "may prohibit communications with class members entirely, compel communications correcting misleading statements, and declare contracts between third parties and class members void." *Visa Check*, 2006 WL 1025588, at *5. "'The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice.'" *Id.* at *13 (citing *New York Tel. Co.*, 434 U.S. at 174).

Even though an order under the All Writs Act does not require "rigid adherence to the procedures and prescriptions of Rule 65," *In re Baldwin-United Corp.*, 770 F.2d 328, 338 (2d Cir. 1985), courts look to Rule 65's standards in deciding what form an All-Writs order should take:

> Although Rule 65 does not apply to injunctions issued under the All-Writs Act against non-parties whose actions would impair the court's jurisdiction, we do not abandon the requirements that an injunction be specific and definite enough to apprise those within its scope of the conduct that is being proscribed, and that those subject to the injunction receive appropriate notice of its terms. The normal standard of specificity required for an injunction is that "the party enjoined must be able to ascertain from the four corners of the order precisely what acts" are forbidden.

*Baldwin-United*, 770 F.2d at 339 (citations omitted). The proposed order pertaining to Optimal meets this test, as the order very clearly delineates its requirements.

The Court also has the power and the duty under Rule 23 to regulate communications to class members and protect those individuals from being misled. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). A number of courts have cited Rule 23's grant of "broad powers to make

'appropriate orders' to ensure efficient and fair proceedings in a class action," which powers "include the authority to enjoin communications with class members to protect them from undue interference." *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1242 (N.D. Cal. 2000) (citations omitted). *See also Retiree Support Grp. of Contra Costa Cty. v. Contra Costa Cty.*, No. 12-CV-00944-JST, 2016 WL 4080294, at *3 (N.D. Cal. July 29, 2016) (finding authority to act based on "the Court's duty, under Rule 23(d), to protect the due process rights of absent class members through accurate notice procedures."); *In re School Asbestos Litig.*, 842 F.2d 671, 680 (3d Cir. 1988) (The district court's power to regulate communications with class members "furthers the Federal Rules' dual policy of protecting the interests of absent class members while fostering the fair and efficient resolution of numerous claims involving common issues."); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 2014 WL 4966072, at *31 (E.D.N.Y. Oct. 3, 2014)  ("[W]here, as here, a district court retains exclusive jurisdiction over settlement agreements and distribution of settlement funds pursuant to those agreements, it may issue orders necessary to protect the settlement from threats by both parties and non-parties.") (citation omitted)); *Balasanyan v. Nordstrom, Inc.*, No. 11-cv-2609-JM-WMC, 2012 U.S. Dist. LEXIS 30809, at *10 (S.D. Cal. Mar. 8, 2012) ("One purpose of the court's control over class communication is to prevent improper contacts that could jeopardize the rights of the class members[.]"); Manual for Complex Litigation (Fourth) §21 (2004) ("The court must protect the interests of absent class members, and Rule 23(d) gives the judge broad administrative powers to do so[.]").

"[I]t is critical that the class receive accurate and impartial information regarding the status, purposes and effects of the class action."  *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985).  Indeed, Rule 23 explicitly requires this Court to supervise and

approve the form of notice to the Class in order to protect Class Members' due process rights. "This Court, pursuant to Rules 23(d)(5) and 83, Federal Rules of Civil Procedure, has the duty and authority to restrict communications that interfere with the proper administration of a class action and to restrict conduct that abuses the rights of members of the class. Furthermore, under Rule 23(e), the Court is a fiduciary who must protect the rights of absent class members." *Jack Faucett Assocs., Inc. v. Am. Tel. & Tel. Co.*, No. CIV. A. 81-0436, 1985 WL 25746, at *5 (D.D.C. Oct. 18, 1985). *See also* Manual for Complex Litig.4th § 21.33("[t]he judge has ultimate control over communications among the parties, third parties, or their agents and class members on the subject matter of the litigation to ensure the integrity of the proceedings and the protection of the class."). Courts are clearly authorized to remedy any misinformation disseminated to potential class members. *See Gulf Oil*, 452 U.S. at 101.

**B.    Optimal's Communications, Individually and as a Whole Pattern of Conduct, Are Misleading, Coercive, and Injurious to the Class Members and Therefore Threaten Irreparable Harm**

Optimal's overall pattern of conduct demonstrates that its business model is based on deception and coercive sales tactics. Its mailing intentionally gave the false impression of an official settlement-related notice, coercively created a false sense of urgency to act (and therefore to not take the time to seek out neutral and complete information) with an incorrect deadline for filing a claim, and failed to disclose up front the amount of Optimal's exorbitant fees. Optimal's website compounds this problem by portraying the claims process as arduous and litigious, thereby generating an artificial need for Optimal's "services". Further, Optimal's mailing, website, and telephone pitch each fail to direct Class Members to the Court-approved Class Notice and fail to inform Class Members that Class Counsel already represent them in this action (and have, through 27 years of litigation). These misrepresentations are clearly harmful to the Class Members.

Interestingly, Optimal's mailer bears a striking resemblance to the solicitations the court in *Payment Card*, 2014 WL 4966072, found egregious enough to warrant a permanent injunction. That decision was made after an evidentiary hearing examining the conduct of Premier Enterprises Group, Inc., which had made solicitations on behalf of Settlement Recovery Group, LLC ("SRG"), a third party claims filing company.

First, the court found that Premier's telephone script included a fabricated deadline to "indicate[ ] that some urgency" existed and to "create[ ] the false impression that class members needed to sign the form provided by Premier without delay in order to successfully file their claims and not miss out on their piece of the large settlement in this case". *Id*. at *25. This is exactly what Optimal's erroneous notice did -- it stated: "You must respond by February 17, 2017 and enroll. Failure to file an eligible claim may result in a loss of all potential monetary benefits." Ex. 1.

Second, the court found that Premier's website misled class members about their need for Premier's services by misrepresenting the amount of work Premier would have to do, when in reality filing a claim was "a simple, one-step process—one that leaves merchants with their full pre-determined recovery and saves them from needlessly handing over a significant portion of their claim to a third-party claims filing company." *Id*. at *25. The relevant misleading statements included:

- "'The Settlement Recovery Group *does all of the work for you and manages the entire process from start to finish*.'"

- "'The Settlement Recovery Group works directly with the Class Action Claims Administrator on your behalf. The Settlement Recovery Group is an expert in the process of obtaining the *maximum refund* that you qualify to receive.'"

- Statements that "suggested to the merchants that the claims filing process is a complicated one that requires the hand of an expert—SRG—to navigate."

- Statements indicating that "full recovery under the settlement would involve direct interaction or negotiation with the Claims Administrator and implied that securing maximum recovery would require SRG's assistance."

*Id.* (emphasis as supplied). These statements are similar to the following misleading material on Optimal's website:

- "Our Team of Experts Get the Maximum Recovery You Deserve"

- "Making sure our clients recover their full settlement amount is a complex and time consuming process. It requires working with litigators, court administrators and settling parties to overcome the inevitable delays, audits and appeals process before the settlement case funds are distributed."

- "We analyze the data set claim, gather and file all claim forms and necessary supporting documents, verify eligibility with the Claims Administrator, and monitor the process on a daily basis. Then the hard work starts. We fight on your behalf with the litigators, settling parties and court administrators to overcome delays and appeals. We respond to any audit requests and petition counsel to maximize payouts for our clients."

- "Through the settlement process, the value of your claim can oftentimes be reduced, or outright rejected leaving you with a smaller claim ot [sic] nothing at all."

*See* Ex. 4. And just like in *Payment Card*, the claims filing procedure here was purposely designed to be a simple, one-step process requiring submission of proof of property ownership, with Heffler, the Court-appointed Settlement and Claims Administrator, calculating each Class Member's share of the Settlement Fund.

Third, the *Payment Card* court found that Premier's website "was ambiguous on the issue of [its] fees", stating in one place that "'[t]here are *no out-of-pocket costs* to file a claim'", but later disclosing that it would charge a 35% fee. *Id.* at *26. By contrast, <u>none</u> of Optimal's written communications disclosed the amount of its fees. In fact the mailing was completely silent about the prospect of paying Optimal for its so-called services. On the contrary, Optimal's mailing stated that class members could receive a "Claims Valuation Analysis" "*free of cost*". *See* Ex. 1.

14

Optimal's pattern of misleading conduct creates a real danger that Class Members will be duped into forfeiting up to 30% of their settlement recovery for a service of dubious value. In addition, Optimal's false February 17, 2017 deadline risked dissuading Class Members from filing a claim after that deadline. Further, even for those Class Members who were not fooled, this course of conduct risks impugning the integrity of and confidence in the settlement administration process. The element of irreparable harm is clearly met.

**C.   The Requested Relief is Necessary and Tailored to the Threatened Harm to the Class Members**

**1.   Remedial Measures Against Optimal Are Warranted**

Optimal's course of conduct demonstrates the company used misleading or high-pressure tactics in order to convince Class Members to purchase an overpriced "service" that adds no real value.[2] Optimal has no legitimate interest in continuing to mislead Class Members or attempting to divert them from the Court-approved Class Notice or the assistance they can receive from the Settlement and Claims Administrator or Class Counsel. "Unapproved notices to class members which are factually or legally incomplete, lack objectivity and neutrality, or contain untruths . . . result in confusion and adversely affect the administration of justice." *Erhardt v. Prudential Group, Inc. et al*, 629 F. 2d 843 at 846 (2d Cir. 1980). Thus, both the public interest and the balance of equities favor the requested relief to remedy Optimal's conduct.

Class Counsel request an order requiring that: Optimal shall cease and not resume sending its misleading mailing to the Settlement Class Members; Optimal shall cease responding to telephone inquiries from Class Members until corrective notice is issued; Optimal shall provide a list of Class Members that it contacted and the list of those with whom it contacted,

---

[2] Optimal asserts that the erroneous filing deadline and failure to disclose that it is not the official Claims Administrator in its original "Notice" were mistakes.

and those with whom it entered into contracts; Optimal shall pay for a curative notice to be sent by the Court-appointed Claims Administrator (a copy of which is attached as Ex. 3); Optimal shall prominently feature the Required Disclosures in any future communications; all contracts between Class Members and Optimal signed to date shall be null and void; and Optimal shall correct certain unconscionable or illegal terms in its form contract. Each of these remedies is narrowly tailored toward correcting any misunderstanding or deception that Optimal's own conduct caused.

Optimal has agreed to take some corrective steps. It has represented that it has halted its direct mail campaign; that it will not use an incorrect deadline in future communications; and that it will make clearer in any future communications that it is not affiliated with the Court or the parties. It has also agreed in principle to pay for a corrective notice, but it has insisted that it must send the notice via its own direct-mail service. It has refused to provide the contact information of any Class Members it has already contacted. Optimal has refused to disclose, in any of its communications, the Court-approved settlement website, Class Counsel's contact information, or the fact that Class Members may receive help from the Settlement and Claims Administrator or Class Counsel free of charge.

There is strong precedent for the forms of relief Plaintiffs request. Courts presented with evidence of misleading or abusive communications with class members have not hesitated to enjoin such activity. *See In re Initial Pub. Offering Sec. Litig.*, 499 F. Supp. 2d 415, 421 (S.D.N.Y. 2007) (requiring court review of any communication by attorney who had solicited potential class members to intervene in class action, based on attorney's "history of personal animus" and pattern of communications implying wrongful conduct by lead class counsel); *In re Lupron Mktg. and Sales Practices Litig.,* 2004 WL 3049754, * 1-2 (D. Mass. 2004) (ordering

counsel for intervenors to remove website content found to be "blatantly misleading and deliberately intended to deceive potential plaintiffs into believing that the websites are either court-sanctioned or sponsored by the MDL plaintiffs" and to provide corrective notice).

Further, courts have enjoined misleading communications directed toward class members, ordered curative notice to repair the damage done by such communications, and required specific forms of disclosure identifying the official settlement website and claims administrator, similar to what Plaintiffs request here. *See Fleury*, No. 05-4525, 2007 WL 2349284, at *2-3, 12 (N.D. Cal. Aug. 15, 2007) (where named plaintiff and proposed class representative posted misleading messages online disparaging a tentative class settlement, ordering, *inter alia*, of a required disclaimer which included an advisory to "review the Court's Official Notice Website before forming your own opinions about this matter"); *In re VisaCheck/MasterMoney Antitrust Litig.*, No. CV-96-5238, 2006 WL 1025588  (E.D.N.Y. Mar. 31, 2006) (ordering corrective notice be sent to all class members solicited by third party claims filer); *In re Synthroid Mktg. Litig.*, 197 F.R.D. 607, 610 (N.D. Ill. 2000) (ordering corrective notice under court's power to supervise the case granted by Rule 23(d)(2) & (5) where claims filing company sent misleading solicitations to class members stating that the claim filer was pursuing claims against the defendants, when in reality the case had settled); Ex. 11, *Payment Card*, Order at 1 (filed Jan. 13, 2014, Doc. 6193) (ordering parties to confer and agree on a disclosure statement to be included in third-party claims filer's mailings, including information "making clear that class members need not sign up for a third-party service" and "directing class members to the Court-approved website"); Ex. 12, Payment Card, Order at 1 (filed Dec. 3, 2013, Doc. 6116) (ordering third-party claims filer to send letter drafted by class counsel to all class members who signed up with it, and provide any solicitations to class counsel in advance); Ex.

17

13, *Payment Card*, Order at 3 (filed Apr. 24, 2013, Doc. 2170) (ordering that group of objectors who had solicited other class members to opt out and object "shall provide notice to Class Counsel of any class-wide communications of any type (i.e., whether on their websites or in any other form) relating to the proposed settlement" to "better enable Class Plaintiffs to seek effective relief from the Court in the event any such communications threaten to mislead class members."); *In re McKesson HBOC, Inc. Securities Litigation,* 126 F. Supp. 2d 1239, 1246-47 (N.D. Cal. 2000) (ordering that misleading statements made by outside attorney be remedied by curative notice to solicited class members, inclusion of court-mandated disclosures in attorney's future solicitations, and permitting rescission of solicited agreements). Plaintiffs' proposed curative notice, attached as Exhibit 2, provides Class Members with necessary, truthful, impartial information to remedy the misinformation Class Members have received from Optimal.

The Court also has the authority to void contracts reached as a result of misleading communications. *See Romano v. SLS Residential, Inc.*, 253 F.R.D. 292 (S.D.N.Y. 2008) (voiding all opt-outs, requiring corrective action, and imposing sanctions following defendants' campaign to induce exclusions); *VisaCheck*, 2006 WL 1025588  at *7-8 (providing class members opportunity to rescind any contracts with claims filer upon submission of affidavits that they relied on misleading marketing materials in entering the contract); *Georgine v. Amchem Prods., Inc.,* 160 F.R.D. 478, 489, 496–98 (E.D. Pa. 1995) (invalidating opt-outs and creating second opt-out period where several law firms opposed to the settlement sent misleading communications and advertisements to absent class members). *See also Gortat v. Capala Bros., Inc.*, No. 07-cv-3629, 2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010) ("It is certainly within this Court's discretion to disregard affidavits purporting to opt potential plaintiffs out of a class

action when this Court had no role in supervising the communications that led to their creation.").

### 2.     Prospective Relief to Supervise or Require Disclosures in Communications by Optimal and Other Claims Filers is Warranted

In order to forestall similar deceptive conduct by Optimal or other claims processors, Class Counsel request that the Court enter an order for prospective relief, requiring Court approval for all communications by Optimal or other claims processors with Class Members and requiring that all such communications display or recite the Required Disclosures up front in a prominent manner. This prospective relief is warranted by the threat that Optimal or other third-party claims filers can evade an existing Court order by simply adopting new, misleading techniques, as well as the difficulty and judicial inefficiency inherent in attempting to police this conduct after the fact. As Judge Gleeson recognized in *Payment Card*, "[t]hird-party claims filing companies are many and the means they use to communicate with class merchants are nearly instantaneous. Even if Class Counsel were in a position to know that misleading or false communications would be made by a third-party claims filing company beforehand, which it is not, the damage may be done in an instant." *Payment Card*, 2014 WL 4966072 at *33.

Counsel's unfortunate experience in dealing with claims processors has taught that the only effective way to safeguard the Class Members' rights is to take a proactive approach, not a reactive one. The opinion by Judge Gleeson in *Payment Card*, 2014 WL 4966072, demonstrates why such relief is necessary. The opinion summarizes the frustrating game of "whack-a-mole" that Counsel were forced to play as multiple claims companies surfaced and re-surfaced with new types of misleading communications. This process needlessly consumed a great deal of Counsel's and the court's time. In this case, rather than having to pursue each individual claims filer or claims buyer one by one, and attempt to undo the damage their misleading

communications have wrought, Class Counsel respectfully urge that the Court exercise its powers under Rule 23 and the All-Writs Act to enter a prospective order to protect any more Class Members from being misled, and require Court approval of any future mailings to Class Members.

This relief is justified by the potential that other claims filers will appear, given the size of the settlement and the large amount of publicity it has generated (as a result of the extensive Court-approved Notice Plan). Given the fact that the claims-filing "service" has so little value in this case that it is difficult to imagine that a fully-informed Class Member would chose to pay 30% of his or her recovery for that service. It is well recognized that the third-party claims industry is home to a great many unscrupulous actors: the *Manual for Complex Litigation* (*Fourth*) cautions judges to "be alert to the possibility of persons soliciting class members after the settlement and offering to provide 'collection services' for a percentage of the claims," because "such activities might fraudulently deprive class members of benefits provided by the settlement and impinge on the court's responsibility to control fees in class action." *Manual Complex Lit.* § 21.662 (4th ed.).

An order for proactive, preventive relief is well founded in this Court's authority under Rule 23(d) to supervise communications to the Class. There are substantial due process concerns that need to be respected during any class notice program, requiring that the notice contain sufficiently detailed information to allow the class members to fully understand their rights and make an informed choice of whether to participate in the settlement. *See* Newberg on Class Actions §§ 8.15, 8.17 (5th ed.). Any third party who attempts to lure Class Members into filing a claim without providing these disclosures is pursuing an end-run around this Court's carefully considered notice plan.

In order to protect the important due process rights at issue, as well as the Court's own jurisdiction and authority to manage this class action, Counsel respectfully request that the Court require Court approval for third party communications with Class Members, and mandate the Required Disclosures appear in all such communications. This is the most efficient, narrowly-tailored way to protect the Class Members' interest in receiving truthful, non-coercive, non-misleading information about this litigation.  Such a requirement is not overly burdensome; indeed, it is no more than what the law demands of Class Counsel when they drafted the Long-Form Notice and submitted it for Court approval in the first place.

Other courts have recognized that unauthorized communications with class members disrupt the court's authority and responsibility to manage the class notice program. For example, in *Jack Faucett Assocs., Inc. v. Am. Tel. & Tel. Co.*, No. CIV. A. 81-0436, 1985 WL 25746, at *7 (D.D.C. Oct. 18, 1985), the court barred two claims filing companies who had sent numerous solicitation letters to class members from any further communications with class members without prior approval from the Court, and voided all contracts or agreements the company had reached with class members. The court noted that the claims filers' unauthorized communications were "interfering with the orderly administration of the class notice procedure", contrary to the court's authority under Rule 23(e) to direct the form and content of settlement notice. *Id.* at *5.

The relief sought here is tailored so as to avoid First Amendment concerns. *See Kleiner*, 751 F.2d at 1203 (upholding order barring defendant from soliciting opt-outs, holding that "untruthful or misleading speech has no claim on first amendment immunity", and that, where truthful, "commercial speech seldom implicates the traditional concerns underlying the prior restraint doctrine"); *Fleury*, No. 05-4525, 2007 WL 2349284, at *2-3 (N.D. Cal. Aug. 15, 2007)

(highlighting the need to balance the need for a restraint on speech against the rights of the parties involved); *Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 633 (N.D. Tex. 1994) (defendant's communications with Class members concerning their class action claims "involve commercial speech which does not call into play the full panoply of First Amendment safeguards against prior restraint.") (citation and quotation marks omitted). *Cf. Cnty. of Santa Clara v. Astra USA, Inc.*, 2010 U.S. Dist. LEXIS 78312, at *20 ("BMS asserts that it had a First Amendment right to contact its own customers, citing *Gulf Oil*. Even so, BMS had no First Amendment right to extract a release. Its First Amendment right was limited by considerations for protecting the putative plaintiff class."). *But cf. Fleury*, 2007 WL 2349284, at *3 (rejecting court screening of communications as "unduly broad").

In *Kleiner*, 751 F.2d at 1203, for example, the Eleventh Circuit upheld the district court's regulation of defense contacts with class members (specifically a telephonic campaign to solicit class exclusion requests), finding that the First Amendment did not prohibit such regulation. In so holding, the Eleventh Circuit stated:

> Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damage from misstatements could well be irreparable. Concomitantly, a solicitations scheme relegates the essential supervision of the court to the status of an "afterthought."

*Id.* The Court explained that "[i]n the realm of litigation, a fair and just result often presupposes restraints on the speech of the parties", *id.* at 1206, and that an order limiting communications by class opponents will satisfy first amendment concerns "if it is grounded in good cause and issued with a 'heightened sensitivity' for first amendment concerns." *Id.* at 1205-06.

Given the likelihood that other claims filers may also attempt to coerce and mislead Settlement Class Members, and given the difficulties and delays inherent in pursuing any

additional claims filers one by one, Counsel respectfully suggest that prospective relief is necessary to carry out Counsel's and the Court's duty to safeguard the Class Members from deceptive or abusive solicitations.

**V.     CONCLUSION**

For the foregoing reasons, Class Counsel respectfully request that the Court enter the attached proposed orders and approve a curative notice in substantially the same form as the attached Exhibit 2, to be mailed by Heffler Claims Group to persons contacted by Optimal or other third-party claims processors.

Dated: February 13, 2017                    Respectfully submitted,

                                            */s/ Merrill G. Davidoff*
                                            Merrill G. Davidoff
                                            David F. Sorensen
                                            Jennifer MacNaughton
                                            Caitlin G. Coslett
                                            BERGER & MONTAGUE, P.C.
                                            1622 Locust Street
                                            Philadelphia, PA 19103
                                            (215) 875-3000

                                            Gary B. Blum
                                            Steven W. Kelly
                                            SILVER & DeBOSKEY, P.C.
                                            1801 York Street
                                            Denver, CO 80206
                                            (303) 399-3000

                                            *Attorneys for Plaintiffs and the Class*

## **CERTIFICATE OF SERVICE**

I certify that on this 13th day of February, 2017, I cause a true and correct copy of the foregoing Plaintiffs' Motion and Incorporated Memorandum of Law To Prohibit Optimal Settlements, LLC's Communications With Settlement Class Members, Issue Curative Notice, and Require Prospective Review of and Inclusion Of Disclosures In All Third Party Communications With The Class to be served on nonparty Optimal Settlements, LLC, via email and via Federal Express Overnight at the following address:

Ms. Mande Raiher
Optimal Settlements, LLC
1639 11th Street, Suite 159
Santa Monica, CA 90404

I further certify that a copy of the foregoing Motion was served on all parties to this litigation by ECF.

*/s/ Merrill G. Davidoff*
Merrill G. Davidoff