# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

Civil Action No. 90-CV-00181-JLK

---

MERILYN COOK, et al.,

     Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORP., et al.,

     Defendants.

---

# MOTION FOR APPROVAL OF CLASS MEMBER COMMUNICATIONS

---

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.   INTRODUCTION…………………………………………………….   2

II.  BACKGROUND FACTS…………………………….........................   3

III. ARGUMENTS……………………………………………….......   6

A.   The Proposed Mailer and Claims Purchase Agreement Fairly and

Accurately Describe the Nature of the Services Optimal Will Offer

to Class Members…………………………………………….......   8

B.   The Claims Purchase Agreement and Valuation Methodology Demonstrate

The Fairness of the Services Optimal Will Offer to Class Members……...   9

IV.  CONCLUSION………………………………………………..   11

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page**</u>

**CASES**

*Central Hudson Gas & Electric Corp. v Public Service Comm'n*,
   447 US 557, 566, 65 L Ed 2d 341, 100 S Ct 2343 (1980)……………… 7

*In re Visa Check/MasterMoney Antitrust Litigation*,
   2006 U.S. Dist. LEXUS 19755*11, 2006 WL 1025588,
   No. 96-CV-5238 (JG)(E.D.N.Y. March 31, 2006)……………………… 6, 7

*San Francisco Arts & Athletics, Inc. v United States Olympic Committee*,
   483 US 522, 535, 97, L Ed 2d 427, 107 S Ct 2971 (1987)……………… 6

**OTHER CITATIONS**

Federal Rules of Civil Procedure ("FRCP"), Rule 23… ……………………... 6, 7

USCS Const., Amend. 1…………………………………………………... 6

## I.    INTRODUCTION

In compliance with the Court's prior Order in this action (DE-2443),
Interested Party Optimal Settlements, LLC ("Optimal") requests the Court's
approval of a mailer[1] offering to purchase the claims of Class Members who have a
need or desire to obtain funds before the end of the class period and/or before the
distribution of the proceeds of this Class Action.  Optimal is also submitting a
proposed Claims Purchase Agreement[2] for the Court's approval along with an
explanation of how Optimal will value claims when making purchase offers to
Class Members who are interested in selling their claims.

Optimal is a claims filing and fund recovery service for class action
settlements that contracts with class members to assist in filing their claims to
participate in settlements.  Optimal also offers to purchase claims from class
members who have a need or desire to obtain funds before the end of the class
period or before the distribution of the proceeds of class actions.

The Court previously denied approval of Optimal's proposed mailer and
agreement for offering its claims filing and fund recovery services to Class
Members in this action.  (DE-2453)  Instead of offering claims filing assistance
services to the Class Members, Optimal now seeks the Court's approval of

---

[1] The proposed mailer is attached hereto as Exhibit A.
[2] The proposed Claims Purchase Agreement is attached hereto as Exhibit B.

materials with which it plans to communicate with Class Members about purchasing their claims outright.

The proposed materials do not contain any language implying any Court approval or involvement with Optimal or its proposed claim purchase offers. In addition, the proposed communications comply with all of the requirements included in the Court's previous orders, directed both to Optimal and to third-parties. (DE-2443, 2444 and 2453).

For these reasons, Optimal respectfully requests the Court to approve the proposed mailer and Claims Purchase Agreement for communications by Optimal to Class Members in this action.

## II.    BACKGROUND FACTS

In early February 2017, Optimal sent a mailer to a number of Class Members, notifying them of the company's claims assistance services and inviting them to contact Optimal if they were interested. At that time no orders had been issued by the Court regarding communications with Class Members by third parties such as Optimal. Shortly afterwards, on or about February 8, 2017, Class Counsel contacted Optimal and notified it of counsel's objections to the mailer. On February 14, 2017, after Class Counsel filed a motion, the Court issued an Order directing Optimal to: 1) immediately cease its mail solicitation campaign, 2) immediately cease responding to telephone inquiries from Class Members until a

curative notice was sent by the Claims Administrator, 3) comply with its prior

agreement to provide Class Counsel a list of all Class Members it had contacted, 4)

notify Class Counsel of all agreements it had entered with any Class Members and

void any such agreements (there were none), 5) pay for the Settlement and Claims

Administrator to send the curative notice to all potential Class Members who were

contacted by Optimal, 6) make changes specified by the Court to its proposed

agreement with Class Members, 7) prominently feature a set of "Required

Disclosures" on the first page of any proposed Class Member communications, and

8) submit for the Court approval any proposed future communications with Class

Members. (DE-2443)  That same day the Court issued a separate Order to third

party claims processors or claims buyers generally regarding communications with

Class Members. (DE-2444)

Optimal immediately took steps to comply with all of the requirements set

out in the Court's February 14 Orders.

On March 7, 2017, Optimal submitted a revised mailer and a revised

agreement, which included the "Required Disclosures" and made all of the other

changes directed by the Court's Order (DE 2443).  In addition, Optimal made

additional changes requested in discussions with Class Counsel in an effort to

resolve any potential disputes and facilitate the approval of its proposed

communications to Class Members. (See Optimal's Motion for Approval of Communications by Third Party Claims Processor (DE-2451))

On March 15, 2017, the Court denied Optimal's motion for approval and identified several specific concerns about the proposed agreement, including: 1) a statement that the escrow required by the Order would be "court-approved," a statement that the Court would resolve any agreement-related disputes between Optimal and Class Members, and 3) Optimal's failure to identify the percentage of the settlement proceeds the Class Member would be asked to pay for the services proposed in the agreement. (DE-2453)

After receiving the Court's recent Order, Optimal has decided to shift its strategy away from offering claims submission assistance services and instead to offer solely to purchase claims from any Class Members who have a need or desire to obtain funds before the end of the class period and/or before the distribution of the Settlement Proceeds of this action.  This decision is based in part on written and telephone discussions Optimal has had with one of the Class Members, who is in extremely poor health and does not want to wait until the settlement funds are distributed to the Class Members.  (See Declaration of Eileen Chin In Support Of Motion for Approval of Class Member Communications ("Chin Decl."), ¶¶ 2-5.) The Class Member told an Optimal representative that he wishes to receive whatever funds he can now if that is an option.  (*Id*. at ¶5.)

5

### III.   ARGUMENTS

Optimal now seeks the Court's approval of the proposed mailer and Claims Purchase Agreement so it may offer to purchase claims from Class Members who need or desire to obtain funds before the end of the class period and/or before the distribution of the proceeds of this action.  This service will provide significant value to certain Class Members, including the Class Member who contacted Optimal in February, who may be in poor physical health or dire financial circumstances.  Such Class Members would benefit more from having access to a portion of the settlement funds in the near term than from receiving the full amount of their share of the settlement distribution months or years from now.

At least one federal court has acknowledged that firms like Optimal "***can provide a valuable service to class members who*** seek assistance in filing their claims or ***wish to liquidate those claims***" and "are a natural and welcome feature of the settlement landscape."  *In re Visa Check/MasterMoney Antitrust Litigation*, 2006 U.S. Dist. LEXIS 19755 *11, 2006 WL 1025588, No. 96-CV-5238 (JG) (E.D.N.Y. March 31, 2006) (Emphasis added.).

Commercial speech, such as Optimal's proposed communications, is entitled to a limited form of protection under the First Amendment. U.S. Const. amend. I; *see also San Francisco Arts & Athletics, Inc. v United States Olympic Committee*, 483 US 522, 535, 97 L Ed 2d 427, 107 S Ct 2971 (1987).  The determination

6

whether commercial speech is unlawfully restrained in violation of First Amendment involves a four-step analysis: (1) whether the expression is protected by First Amendment to extent that it concerns lawful activity and is not misleading, (2) whether the asserted governmental interest to be served by restriction is substantial, (3) if both of the above factors yield positive answers, whether the restriction directly advances the governmental interest asserted, and (4) whether the restriction is no more extensive than necessary to serve such interest. *Central Hudson Gas & Electric Corp. v Public Service Comm'n*, 447 US 557, 566, 65 L Ed 2d 341, 100 S Ct 2343 (1980).

Applying the *Central Hudson* analysis in the present action, where the services offered by Optimal have not only been held to be legal but "welcome" in the class action context in *In re Visa Check/MasterMoney Antitrust Litigation,* and where the proposed communications are not misleading, Optimal submits it has shown the first factor to be present. Where the government's interest in ensuring fair and accurate communications pursuant to the Court's FRCP Rule 23 authority cannot be disputed, Optimal acknowledges that the second factor is also present. However, applying the third and fourth factors, whether restricting Optimal's proposed communications "directly advances the governmental interest asserted" and "whether the restriction is no more extensive than necessary to serve such interest factor," Optimal submits that the scale should tip in its favor. Where the

7

same services Optimal seeks to provide have previously been characterized as "a natural and welcome feature of the settlement landscape" by the Eastern District of New York, Optimal respectfully submits that its lawful and accurate communications should not be restrained in this action.

### A. The Proposed Mailer and Claims Purchase Agreement Fairly and Accurately Describe the Nature of the Services Optimal Will Offer to Class Members.

The materials submitted with this motion comply with the Court's previous Orders and do not contain any misleading representations.  In addition, the manner in which Optimal plans to offer to purchase Class Member claims, including the manner in which such claims will be valued, is transparent and fair.

Both the proposed mailer and Claims Purchase Agreement comply with the Court's previous instructions in the following respects:

1. Include the "Required Disclosures" prominently displayed, as directed by the Court's Orders;

2. Include the Claims Administrator's name and contact information, as requested by Class Counsel;

3. Contain no references expressing or implying any Court approval of Optimal's services; and

4. Contain no statements that can be characterized as inaccurate or misleading.

**B. The Claims Purchase Agreement and Valuation Methodology Demonstrate The Fairness of The Services Optimal Will Offer to Class Members.**

Optimal plans to value Class Members' claims and make a fair offer based on the fully-disclosed methodology described below. There will be no charge to Claim Members to learn how much Optimal will offer to purchase their claim, and, under the terms of the Claim Purchase Agreement, the Class Member will be free to decline the offer without any obligation up to the time they have received payment for their claim. (Exh. B, ¶¶ 2 and 8)

The "Valuation Analysis Methodology," attached as Exhibit 2 to the Chin Declaration, demonstrates the fairness of the methodology by which Optimal will calculate its offers to purchase claims. The formula calculates a "Gross Claim Value" based on the Claimant's assessed property value in 1989; the estimated aggregate assessed property values in 1989 of all eligible Rocky Flats properties, which is in excess of $200,000,000; the total amount of the settlement pool after attorney's fees and other administrative costs, which Optimal estimates will be approximately $273,375,136.35[3]; and the eligible Class Members response rate,

---

[3] Class Counsel has moved the Court for an award of attorneys' fees totaling 40% of the Settlement Fund. (DE-2434 and 2435) Based on historical class action attorneys' fee award rates (see "An Empirical Study of Class Action Settlements and Their Fee Awards," 7 J. Empirical Legal Stud. 811 (2010)), Optimal has applied an estimated attorneys' fee award percentage of 25% for the purpose of making claims purchase offers to interested Class Members until the Court rules on Class Counsel's pending request for attorneys' fees in this action. Once the Court rules on Class Counsel's request, Optimal will immediately adjust this number in its formula to the actual amount awarded by the Court.

which Optimal presently estimates will be at least 80% across all potential distribution rounds.[4]  Chin Decl., ¶ 6.  To the subtotal of the above figures, Optimal will then apply a risk discount rate of 20%, adjusting for the risks associated with the actual distribution of the Settlement Fund to Class Members, the individual Class Member's eligibility for an award and the accuracy of the Class Member's data (including the Class Member's property value) obtained for the Class Member, and a cost of capital and time value of money rate of 18%, given the potential for a multi-round distribution process.  *Id.*  After the Gross Claim Value has been determined, Optimal will discount that value by 15% to account for Optimal's costs and gross profit margin to determine the amount of the claim purchase offer.  *Id.*

The resulting valuation formula is as follows:

((Claimant's assessed property value ÷ Total claimant pool property values) x total net claim pool) ÷ eligible claimant response rate x (1 - risk discount % - time value of money discount %) = Gross Claim Value.

---

[4] As of March 3, 2017, Class Counsel reported to the Court that approximately 5,000 of approximately 12-14,000 eligible Class Members (or 35.7% to 41.7%) had submitted claims. (DE-2447)  Based on the mailing of the curative mailer and the Supplemental Class Notice approved by the Court (DE-2449), as well as anticipated additional notifications efforts by Class Counsel and the Claims Administrator, Optimal estimates approximately 80% of eligible Class Members will submit claims.  Once the actual number of claims submissions is known, Optimal will immediately adjust this number in its formula.

*Id.* As an example, if a claimant's property was valued at $30,000 in 1989,

Optimal's offer to purchase the claim would be $27,013, based on the following

calculations:

| | |
|---|---:|
| 1989 Assessed Property Value of Claimant | 30,000 |
| 1989 Aggregate Property Value of All Eligible Claimants | 200,000,000 |
| Claimant's % of Settlement | 0.0150% |
| Net Settlement Pool After Attorneys' Fees and Costs | 273,375,136 |
| Claim Value based on 100% Claimants Filing | 41,006 |
| Actual Claim Value based on Expected Response (80%) | 51,258 |
| Discount for Risk of Payout (20%) | (10,252) |
| Discount for Cost of Capital over 2 Years (18%) | (9,226) |
| Gross Claim Value | 31,780 |
| Optimal Settlements Costs and Profit (15%) | (4,767) |
| **NET CLAIM PURCHASE VALUE** | **27,013** |

*Id.* at ¶ 7.

## IV.    CONCLUSION

For the reasons stated above, Optimal requests the Court's approval of the

proposed mailer and Client Purchase Agreement.

DATE: March 28, 2017                     Respectfully submitted by:

*/s/ Michael A. Thurman*
Michael A. Thurman
THURMAN LEGAL
1055 East Colorado Blvd., 5th Floor
Pasadena, CA 91106
Telephone: (626) 399-6205
Facsimile: (626) 380-4880

Counsel for Interested Party Optimal
Settlements, Inc.

# EXHIBIT A

## NOTICE  CONCERNING  YOUR  CLAIM  REIMBURSEMENT

For more information, contact
your Optimal Settlements
Representative:
**Toll Free:    1-877-422-0404**
**Local:          720-577-4422**

## ROCKY FLATS SETTLEMENT INFORMATION

Based on the records provided to us from the Jefferson County Assessor's Office, we
believe that you might be eligible to receive a portion of the **$375 Million Rocky Flats
Settlement Case.**

You are receiving this notice because our records indicate that **you (or your family
member) lived in the Rocky Flats area on June 7, 1989.** Recently, the two
operators of the Rocky Flats Nuclear Plant agreed to settle the now (26) year old
lawsuit for property devaluation for $375 Million Dollars.

Many claimants are simply unable to wait an uncertain amount of time to receive their
reimbursement. **To obtain information on how you might be eligible to receive
an expedited cash payment for your claim, please contact Optimal
Settlements:**

**TOLL FREE:**                    **1-877-422-0404**
**LOCAL:**                          **720-577-4422**
**MONDAY-SATURDAY:**       **9am-9pm (PST)**

**Legal Disclosure: Optimal Settlements, LLC is not affiliated with the Court or
the parties and is not the Court-appointed Settlement and Claims
Administrator.**

**The official settlement website is www.rockyflatssettlement.com.This website
contains important information, including the Court-approved Class Notice,
which pertains to your rights as a potential Class Member.**

**You may file a claim with the Court-appointed Settlement and Claims
Administrator via the official settlement website at no cost to you. The claims
administrator is Heffler Claims Group, 1515 Market Street, Philadelphia, PA
19107, (844)777-8055.**

**If you are a member of the Rocky Flats Settlement Class, you are represented
by the following counsel:**

| | |
|---|---|
| **Berger & Montague, P.C.** | **Silver & Deboskey, P.C.** |
| **Merrill G. Davidoff** | **Gary B. Blum** |
| **David Sorensen** | **Steven W. Kelly** |
| **1622 Locust Street** | **1801 York Street** |
| **Philadelphia, PA 19103** | **Denver, CO 80206** |
| **(215)875-3000** | **(303)399-3000** |

# EXHIBIT B



---

**Legal Disclosure.** Optimal Settlements, LLC is not affiliated with the Court or the parties and is not the Court-appointed Settlement and Claims Administrator.

The official Settlement website is www.rockyflatssettlement.com. This website contains important information, including the Court-appointed Class Notice, which pertains to your rights as a potential Class Member.

You may file a claim with the Court-appointed Settlement and Claims Administrator via the official settlement website at no cost to you.   The court appointed administrator is Heffler Claims Group, 1515 Market Street, Suite 1700, Philadelphia, PA, 19102, (844)777-8055.

If you are a member of the Rocky Flats Settlement class, you are represented by the following counsel:

| | |
|---|---|
| Berger & Montague, P.C. | Silver & Deboskey, P.C |
| Merrill G. Davidoff | Gary B. Blum |
| David F. Sorensen | Steven W. Kelly |
| 1622 Locust Street | 1801 York Street |
| Philadelphia, PA 19103 | Denver, CO 80206 |
| (215) 875-3000 | (303) 399-3000 |

---

## CLAIMS PURCHASE AGREEMENT

      This CLAIMS PURCHASE AGREEMENT (this "Agreement"), dated as of _____, 2017, is entered into by and between OPTIMAL SETTLEMENTS, LLC, a California limited liability company ("Company"), and_____("Seller").

## RECITALS

WHEREAS, Seller holds claims (collectively, "Claims") against the defendants in that certain class action lawsuit *Cook, et al. v. Rockwell International Corp. and the Dow Chemical Co.*, No. 90-cv-00181-JLK (D. Colo.) (the "Case"); and

WHEREAS, Company desires to purchase from Seller, and Seller desires to sell and assign to Company, all right, title, and interest of Seller in and to the Claims, in accordance with the terms and conditions set forth herein.

1

NOW, THEREFORE, in consideration of the foregoing, the mutual promises and covenants contained herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereby agree as follows:

## AGREEMENT

1.      <u>Incorporation of Preamble and Recitals</u>. The above preamble and recitals are hereby expressly incorporated by reference into and made a part of this Agreement.

2.      <u>Purchase of Claims</u>. Subject to the terms and conditions set forth herein, Seller hereby agrees to sell, assign, and transfer to Company, and Company hereby agrees to purchase from Seller, Seller's entire right, title, and interest in and to the Claims, free and clear of any liens, restrictions, encumbrances, charges, security interests, and adverse claims of every kind (collectively, "<u>Liens</u>"). The purchase price for the Claims shall be _____ Dollars ($_____) (the "<u>Purchase Price</u>"), payable by Company to Seller. Upon Seller's receipt of Company's payment of the Purchase Price, the Claims shall be automatically assigned and transferred to Company without any further action on the part of either party hereto, other than payment by Company to Seller of the Purchase Price by check or wire transfer of immediately available funds to an account designated in writing by Seller.

3.      <u>Scope of Assignment</u>. Notwithstanding anything to the contrary, the assignment of any Claims to Company hereunder shall include without limitation the assignment of all of Seller's rights to receive payment, and any interest, penalties, and fees, which may be paid with respect to or in satisfaction of the Claims, all cash, securities, instruments, and other property which may be paid or issued by any third party with respect to or in satisfaction of the Claims, and all voting or other rights with respect to any of the foregoing. Following the payment of the Purchase Price by Company, Seller's assignment of the Claims hereunder shall be deemed an absolute and unconditional assignment of the Claims to Company.

4.      <u>Third Party Notices and Payments to Seller</u>. Seller agrees to forward to Company all notices Seller receives from the Court, the parties in the Case, or any third party with respect to the Claims, and to promptly take such action with respect to the Claims as Company may from time to time request. Following Seller's receipt of Company's payment of the Purchase Price, Seller agrees that any payment received by Seller on account of the Claims, whether in the form of cash, securities, instruments, or any other property, shall constitute property of Company to which the Company has an absolute right, and that (if received by Seller) Seller will hold such property in trust for the benefit of Company and will, at its own expense, promptly deliver to Company any such payment, in the same form received, together with any endorsements or documents necessary to transfer such payment to Company.

2

5.      <u>Power of Attorney</u>. Following Seller's receipt of Company's payment of the Purchase Price, Seller irrevocably appoints Company as its true and lawful agent and attorney-in- fact solely with respect to the Claims, with the full power and authority to act in Seller's name, place, and stead, to demand, sue for, compromise and recover all such amounts as now are, or may hereafter become, due and payable for or on account of the Claims and to exercise all elections, voting rights, and all other rights and remedies with respect thereto. Following Seller's receipt of Company's payment of the Purchase Price, Seller further grants to Company full authority to do all things necessary to enforce the Claims and Seller's rights thereunder pursuant hereto. Seller agrees that the powers granted following Seller's receipt of Company's payment of the Purchase Price are coupled with an interest, and are therefore irrevocable, and are discretionary in nature and that Company may exercise or decline  to exercise such powers at Company's sole option. Company shall have no obligation to take any action in respect of the Claims. Seller agrees to take such further actions, at Company's expense, as requested by Company as necessary or desirable to effect the transfer of the Claims to Company (or its designees) and any payments or distributions on account of the Claims including, without limitation, the execution of appropriate transfer powers, resolutions, and consents.

5.      <u>Reassignment of Claims by Company</u>. Seller hereby acknowledges  that Company may at any time reassign the Claims to any third party, together with all right, title, and interest of Company in, to, and under this Agreement, or any portion thereof or interest therein, without notice to or the consent of Seller.

6.      <u>Taxes and Expenses</u>. All taxes resulting from or payable in connection with the transactions contemplated pursuant to this Agreement shall be paid by the respective parties in accordance with their respective obligations under applicable law. Each party shall bear all of its own expenses incurred in negotiating and performing this Agreement.

7.      <u>Representations and Warranties of Seller</u>.

(a)      Seller represents and warrants that he or she has full power and authority to execute and deliver this Agreement, to perform his or her obligations hereunder and to consummate the transactions contemplated hereby, and has duly executed and delivered this Agreement. This Agreement constitutes the legal, valid, and binding obligation of Seller, enforceable against Seller in accordance with its terms, except as its enforceability may be limited by bankruptcy, insolvency, moratorium or other laws relating to or affecting creditors' rights generally and the exercise of judicial discretion in accordance with general equitable principles.

3

(b)     Seller represents and warrants that no consent, approval, order or authorization of, or declaration, filing, notification or registration with, any court, governmental authority or other person is required to be made or obtained by Seller in connection with the execution, delivery, and performance of this Agreement.

(c)     Seller represents and warrants that Seller solely owns and has good title to the Claims free and clear of any Liens of any kind or nature whatsoever, and that upon payment of the Purchase Price by Company, the Claims shall be automatically transferred and conveyed to Company without any further action on the part of any party hereto, and Company will acquire, good, valid, and marketable title to the Claims, free and clear of all Liens of any kind or nature whatsoever.

(d)     Seller represents and warrants that Seller has not previously assigned, sold, or pledged the Claims to any third party, in whole or in part, and Seller covenants that it shall not assign, sell, or pledge the Claims to any third party, in whole or in part, for so long as Company has not terminated this Agreement.

8.     Termination. Either party may cancel this Agreement at any time by delivering a written cancellation notice to the other party until Client receives payment of the Purchase Price from Company.

9.     Independent Counsel. Each party acknowledges that he, she or it has been represented by independent counsel of his, her or its choosing with respect to any and all matters concerning this Agreement, or has voluntarily waived its right to representation for the purposes hereof. Accordingly, no party shall deny the validity of this Agreement on the grounds that he, she or it did not obtain advice of counsel in the negotiation or drafting hereof.

10.     Entire Agreement; Amendments. This Agreement constitutes the entire understanding and agreement among the parties with respect to the transactions contemplated herein, and supersedes and terminates all previous or contemporaneous communications, representations, agreements, or understandings, either oral or written, among the parties relating to the subject matter hereof. All amendments or modifications of this Agreement shall be in writing and shall be signed by all of the parties hereto.

11.     Successors and Assigns. This Agreement and each of its provisions shall be binding on and shall benefit the parties and their respective administrators, successors, assigns, heirs and personal representatives. Seller may not assign any of its right, title, and interest in, to and under this Agreement, or any portion thereof or interest therein, without the prior written consent of Company, which Company may

4

grant or withhold in its sole discretion. All representations and warranties made herein shall survive the execution and delivery of this Agreement any reassignment of the Claims by Company.

12.     <u>Further Assurances</u>. Seller shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such other actions as may be reasonably necessary to consummate the transactions contemplated by this Agreement.

13.     <u>Counterparts</u>. This Agreement may be executed in separate counterparts and shall become effective only after all such separate counterparts have been executed and exchanged between the parties hereto. A facsimile or other electronic signature shall be regarded as an original signature for purposes of this Agreement and shall have the same force and effect as an original signature upon receipt by the other party.

IN WITNESS WHEREOF, this Agreement has been duly executed and delivered by the parties hereto as of the date first written above.


COMPANY:                                    SELLER:

OPTIMAL SETTLEMENTS, LLC                    [NAME]



By:_____          _____
Name:
Title:

5

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 28th day of March, 2017, a copy of the foregoing:

**MOTION FOR APPROVAL OF CLASS MEMBER COMMUNICATIONS** was filed electronically.  This filing was served electronically to all parties by operation of the Court's electronic filing system.

_/s/ Michael A. Thurman_