# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-00181-JLK

---

MERILYN COOK, RICHARD and SALLY BARTLETT, and
WILLIAM and DELORES SCHIERKOLK,

      Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

      Defendants.

---

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION

## TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................1

II.  BACKGROUND ........................................................................................................3

III.  THE SETTLEMENT AGREEMENT ............................................................................10

IV.  THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED ...................14

   A.  The Settlement Is Fair, Reasonable, and Adequate and Should Be
       Approved.........................................................................................................14

       1.  The Proposed Settlement Was Fairly And Honestly Negotiated..............16

       2.  Serious Disputed Questions of Law and Fact Remain..............................17

       3.  The Value of an Immediate Recovery Outweighs the Possibility of
           Future Relief After Further Litigation .......................................................18

       4.  Plaintiffs Believe the Settlement is Fair and Reasonable .........................20

       5.  The Long Duration of This Litigation and Aging Class Members
           Further Supports Approval ........................................................................21

       6.  The Class's Overwhelmingly Positive Reaction to the Settlement
           Supports Approval .....................................................................................21

V.  THE COURT SHOULD APPROVE PLAINTIFFS' PROPOSED PLAN OF
    ALLOCATION..........................................................................................................27

VI.  CONCLUSION.........................................................................................................29

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                              **Page(s)**

*Alvarado Partners v. Mehta, L.P.*
   723 F. Supp. 540 (D. Colo. 1989) ................................................................. 15, 20

*Belote v. Rivet Software, Inc.,*
   No. 12-CV-02792-WYD-MJW, 2014 WL 3906205 (D. Colo. Aug. 11, 2014) .............. 15, 27

*Cook v. Rockwell Int'l,*
   133 S. Ct. 22 (U.S. Jun. 25, 2012) ............................................................. 6

*Cook v. Rockwell Int'l,*
   13 F. Supp. 3d 1153 (D. Colo. 2014) ........................................................ 6

*Cook v. Rockwell Int'l,*
   151 F.R.D. 378 (D. Colo. 1993) ............................................................. 4, 5

*Cook v. Rockwell Int'l,*
   564 F. Supp. 2d 1189 (D. Colo. 2008) ....................................................... 5

*Cook v. Rockwell Int'l,*
   618 F.3d 1127 (10th Cir. 2010) ............................................................. 5, 6

*Cook v. Rockwell Int'l,*
   790 F.3d 1088 (10th Cir. 2015) ............................................................. 7

*Cotton v. Hinton,*
   559 F.2d 1326 (5th Cir. 1977) ............................................................... 16

*DeJulius v. New Eng. Health Care Employees Pension Fund,*
   429 F.3d 935 (10th Cir. 2005) ............................................................... 26

*Diaz v. Romer,*
   801 F. Supp. 405 (D. Colo. 1992) ........................................................... 14

*Ehrheart v. Verizon Wireless,*
   609 F.3d 590 (3d Cir. 2010) ................................................................. 14

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974) ......................................................................... 23

*Gottlieb v. Wiles,*
   11 F.3d 1004 (10th Cir. 1993) ............................................................ 14, 15

*Grady v. de Ville Motor Hotel, Inc.,*
   415 F.2d 449 (10th Cir. 1969) ............................................................... 14

*Gould v. Alleco, Inc.,*
   883 F.2d 281 ................................................................................22

*Heller v. Quovadx, Inc.*,
    245 F. App'x 839 (10th Cir. 2007) ...................................................................... 22

*Hershey v. ExxonMobil Oil Corp.*,
    No. 07-CV-1300-JTM, 2012 WL 5306260 (D. Kan. Oct. 26, 2012) ...................................... 26

*In re Crocs, Inc. Sec. Litig.*,
    No. 07-CV-02351-PAB-KLM, 2013 WL 4547404 (D. Colo. Aug. 28, 2013) ...................... 19

*In re Crocs, Inc. Sec. Litig.*,
    306 F.R.D. 672 (D. Colo. 2014) ...................................................................... 27

*In re Currency Conversion Fee Antitrust Litig.*,
    263 F.R.D. 110 (S.D.N.Y. 2009) ...................................................................... 17

*In King Res. Co. Sec. Litig.*,
    420 F. Supp. 610 (D. Colo. 1976) .................................................................. 14, 19

*In re Motor Fuel Tempure Sales Practices Litig.*,
    No. 07-MD-1840-KHV, 2015 WL 5010048, (D. Kan. Aug. 21, 2015) ................................ 22

*In re New Mexico Nat. Gas Antitrust Litig.*,
    607 F. Supp. 1491 (D. Colo. 1984) .............................................................. 2, 15, 27

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
    625 F. Supp. 2d 1133 (D. Colo. 2009) .............................................................. 23

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
    No. 01-cv-01451, 2006 U.S. Dist. LEXIS 71039 (D. Colo. Sept. 28, 2006) ...................... 15

*In re Toys "R" Us Antitrust Litig.*,
    191 F.R.D. 347 (E.D.N.Y 2000) ...................................................................... 17

*Ingram v. Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001) ...................................................................... 17

*Jones v. Nuclear Pharmacy, Inc.*,
    741 F.2d 322 (10th Cir. 1984) ...................................................................... *passim*

*Law v. Nat'l Collegiate Athletic Ass'n*,
    108 F. Supp. 2d 1193 (D. Kan. 2000) ................................................................ 27

*Lucas v. Kmart Corp.*,
    234 F.R.D. 688 (D. Colo. 2006) .................................................................... *passim*

*Lucas v. Kmart Corp.*,
    No. 99-cv-01923, 2006 U.S. Dist. LEXIS 51439 (D. Colo. Jul. 27, 2006) ...................... 14

*Make A Difference Found., Inc. v. Hopkins*,
    No. 10-CV-00408-WJM-MJW, 2012 WL 917283 (D. Colo. Mar. 19, 2012) ................ 15, 27

*Marcus v. Kansas Dept. of Revenue,*
   209 F. Supp. 2d 1179 (D. Kan. 2002) ................................................................... 20

*Mohammed v. Ells,*
   No. 12-CV-1831-WJM-MEH, 2014 WL 4212687 (D. Colo. Aug. 26, 2014) ................ 15, 27

*Nieberding v. Barrette Outdoor Living, Inc.,*
   No. 12-CV-2353-DDC-TJJ, 2015 WL 1645798 (D. Kan. Apr. 14, 2015) ............................ 19

*Oppenlander v. Stand. Oil Co. (Indiana),*
   64 F.R.D. 597 (D. Colo. 1974) ................................................................. 15, 20, 27

*Ponca Tribe of Indians of Oklahoma v. Contl. Carbon Co.,*
   No. 05-445 (C), 2009 WL 2836508 (W.D. Okla. Jul. 30, 2009) ....................................... 15, 27

*Rutter & Wilbanks Corp. v. Shell Oil Co.,*
   314 F.3d 1180 (10th Cir. 2002) ................................................................... *passim*

*Seiffer v. Topsy's Int'l, Inc.,*
   70 F.R.D. 622 (D. Kan. 1976) ............................................................................. 20

*Smith v. MCI Telecomms. Corp.,*
   No. 87-2110- EEO, 1993 WL 142006 (D. Kan. Apr. 28, 1993) ............................................ 27

*Sollenbarger v. Mountain States Tel. and Tel. Co.,*
   121 F.R.D. 417 (D.N.M.1988) .............................................................................. 23

*Tennille v. W. Union Co.,*
   785 F.3d 422 (10th Cir. 2015) ............................................................................ 17

*Tuten v. United Airlines, Inc.,*
   41 F. Supp. 3d 1003 (D. Colo. 2014) .............................................................. 14, 15, 16, 27

*Wilkerson v. Martin Marietta Corp.,*
   171 F.R.D. 273 (D. Colo. 1997) ..................................................................... 14, 15, 27

*Williams v. First Nat'l Bank,*
   216 U.S. 582 (1910) ..................................................................................... 14

**Rules**

Fed. R. Civ. P. 23 ................................................................................. 17, 18

Fed. R. Civ. P. 23(b)(3) ............................................................................... 4

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................... 23

Fed. R. Civ. P. 23(e)(1) .............................................................................. 22

I.    **INTRODUCTION**

Class representatives Merilyn Cook, Richard and Sally Bartlett, and William and Delores Schierkolk[1] (collectively, "Plaintiffs" or "Class Representatives") submit this Memorandum in support of their Motion seeking:  (a) final approval of a proposed Settlement Agreement between Plaintiffs and Rockwell International Corporation ("Rockwell") and The Dow Chemical Company ("Dow") (collectively, "Defendants"), dated May 18, 2016 ("Settlement Agreement", which is attached as Exhibit 1 and was previously filed at Doc. No. 2401); and (b) final approval of the proposed Plan of Allocation of the Settlement Fund (which is attached as Exhibit 2, and was previously filed at Doc. No. 2407-2).

The proposed $375 million Settlement is an extraordinary result for the Class.[2]  Indeed, *not one* class member has objected to the fairness of the proposed Settlement[3] following a comprehensive notice program that included 28,179 individually mailed notices, plus an extensive publication notice campaign that included: (1) an informational settlement website (www.RockyFlatsSettlement.com) on which the Settlement Agreement itself, a copy of the

---

[1] Delores Schierkolk is deceased, but William Schierkolk is her heir and representative.

[2] The "Class", "Settlement Class", or "Property Class" includes all persons and entities who have not previously opted out and who do not timely opt out of the class who owned, as of June 7, 1989, an interest (other than mortgagee and other security interests) in real property situated within the Property Class Area, exclusive of governmental entities, defendants, and defendants' affiliates, parents, and subsidiaries.  *See* Order Certifying Settlement Class, Doc. No. 2396, at 1-2.  The Property Class Area is a geographic area near the former Rocky Flats Nuclear Weapons Plant in Colorado; its boundary is portrayed in the map attached as the corrected Appendix A to the Order Certifying Settlement Class, Doc. No. 2396.  *See* Order Granting Plaintiffs' Unopposed Motion for Amendment or Correction of the Court's Order Certifying Settlement Class, Doc. No. 2405.

The persons and entities who previously opted out, and thus excluded from the Settlement Class, are identified in the Report of Neutral Opt-Out Agent; Motion for Order and Payment of Fees; and Motion for Order Regarding Transition Procedures, filed on March 17, 2000 at Doc. No. 1148.

[3] One Class Member objected to Plaintiffs' motion for attorneys' fees, costs and expenses.  *See* Doc. No. 2445.  We will respond to that objection separately.  Also, another person objected to not being included in the Class, *see* Doc No. 2421, but as discussed below, non-Class members have no standing to object (and this individual did not object to the fairness of the Settlement itself in any event).

mailed notice and claim form and other important Court documents are posted; (2) a toll-free information phone line for Class members to call 24 hours a day, 7 days a week for more information about the Settlement, including but not limited to requesting copies of the Notice and Claim Form; (3) publication of the Court-approved short-form notice ("Summary Notice") in nationally circulated consumer magazines; (4) publication of the Court-approved Summary Notice in Denver and Colorado newspapers; (5) television commercials aired nationwide on cable networks; (6) television and radio commercials aired on network affiliate and cable networks in the Denver DMA; (7) online display banner advertising with a nationwide reach; (8) online video advertising with a nationwide reach; (9) advertising on mobile websites and applications specifically targeted to reach potential Class members; (10) social media advertising through Facebook and Twitter with a nationwide reach; (11) native advertising on premium internet properties with a nationwide reach; (12) third party outreach to a community action group, Downwinders, and medical providers asking them to share and distribute the Summary Notice; and (13) a multimedia press release issued nationwide. *See* Declaration of Jeanne C. Finegan, APR Concerning Implementation and Adequacy of Class Member Notification (Doc. No. 2432), at *e.g.*, ¶ 6. The reaction of the class to a settlement is a factor for courts to consider in granting final approval. *See, e.g.*, *In re New Mexico Nat. Gas Antitrust Litig.*, 607 F. Supp. 1491, 1504, 1507-08 (D. Colo. 1984). The strong positive reaction of this Class to this Settlement speaks loudly and decisively.

The Settlement Agreement was entered into after more than 26 years of litigation, including a trial that lasted more than four months in 2005-06, two separate appeals in the Tenth Circuit Court of Appeals, and two rounds of briefing in connection with two separate petitions for writs of *certiorari* seeking review by the United States Supreme Court. Final approval of the

Settlement Agreement would be the final chapter in what has been, by any measure, an exceptionally long, complex, and hard-fought case that carried substantial risk for the Class. Viewed in light of the long history of the litigation, and the risks that remained at the time of settlement, a cash settlement of $375 million, which will substantially exceed the jury's award of compensatory damages even after deducting all costs, expenses and fees awarded,[4] represents an extraordinary result for the Class.

As Plaintiffs have previously advised the Court, Defendants have deposited the entire $375 million in settlement consideration into the Court-approved Escrow Account. *See* Doc. Nos. 2437, 2438.[5]

For the reasons set forth below, the Settlement Agreement meets and exceeds the standards for final approval set forth by Rule 23 and the Tenth Circuit.

Plaintiffs also request that the Court grant final approval of the proposed Plan of Allocation, which the Court previously preliminarily approved. *See* Doc. No. 2407, at ¶¶ 5-12.

Plaintiffs conferred with Defendants in accordance with the United States District Court for the District of Colorado Local Rule 7.1(a).  Defendants do not oppose this motion.

## II.   <u>BACKGROUND</u>

Plaintiffs filed their initial complaint more than 27 years ago, on January 30, 1990, asserting Colorado nuisance and trespass claims, as well as claims under the federal Price-Anderson Act ("PAA"), arising from Defendants' releases of plutonium from the former Rocky Flats nuclear weapons production plant.  In 1993, the District Court certified the "Property

---

[4] The jury awarded compensatory damages of $176,850,340 on Plaintiffs' nuisance claims.  *See* Jury Verdict Form, Doc. No. 2117 at 24.

[5] The Court previously appointed The Huntington National Bank as Escrow Agent.  Order Appointing The Huntington National Bank as Escrow Agent, Doc. No. 2418.

Class" pursuant to Fed. R. Civ. P. 23(b)(3), defined as "[a]ll persons and entities owning an interest (including mortgagee and other security interests) in real property situated within the Property Class Area, exclusive of governmental entities, defendants, and defendants' affiliates, parents, and subsidiaries" as of June 7, 1989 (the day after the FBI raid of Rocky Flats).  *See Cook v. Rockwell Int'l*, 151 F.R.D. 378, 389 (D. Colo. 1993) ("*Cook IV*").

Many years of contentious discovery and motion practice followed, involving multiple motions to compel and even a four-day evidentiary hearing and contempt sanction against the U.S. Department of Energy ("DOE"), Defendants' indemnitor.  All told, the parties exchanged 67 expert reports, participated in 45 expert depositions (spanning 53 days in total) and 151 lay and 30(b)(6) witness depositions, and produced and reviewed over 800 boxes of documents. Over the next decade and beyond, Defendants repeatedly sought to convince the Court to overturn or modify its many rulings, including its class certification decision(s), and the parties engaged in additional extensive motion practice and attempted to narrow the legal issues for trial.[6]

After the Court denied Defendants' motions for class decertification, motions for summary judgment, and *Daubert* motions, and after extensive pretrial briefing on the proposed jury instructions, motions *in limine*, and numerous other issues, the Court conducted a four-month jury trial, which commenced on October 6, 2005.  *See* Doc. No. 1495.  During the trial, the jury heard testimony from five Class Representatives, 15 lay witnesses, and 19 experts, plus two witnesses who testified by deposition designation, and saw hundreds of exhibits and

---

[6] The history of this extraordinary case is summarized in more detail in the Declaration of Merrill G. Davidoff in Support of Class Counsel's Motion for An Award of Attorneys' Fees, Reimbursement of Expenses, and Service Payments to Class Representatives, Doc. No. 2435-2 (the "Davidoff Declaration"), to say nothing of the 15 published opinions by this Court and two by the Tenth Circuit (all collected and previously submitted as Doc. No. 2435-12), together with many other unpublished opinions and orders.

demonstratives.[7]  Davidoff Declaration, at ¶¶ 143-149, 162.  After deliberating for seventeen days, the jury returned a verdict on February 14, 2006, finding for Plaintiffs and the Class on their nuisance and trespass claims and awarding compensatory damages to the Class for properties in each of three categories—residential, commercial, and vacant land—and awarding punitive damages against both Defendants.  *See* Jury Verdict Form, Doc. No. 2117.  For each of the three categories of properties, the jury found a specific percentage diminution in value that was caused by the nuisance and trespass:  53.03% for commercial properties; 7% for residential properties; and 30% for vacant land.  *See id.* at 24.  With respect to Plaintiffs' nuisance claims, the jury found that Defendants caused a reduction in the aggregate value of the Class Properties of $176,850,340.  *Id.* at 15, 24.  Based on their findings of diminished value for each property category, the jury awarded 3.196% of the total compensable nuisance damages for commercial properties; 81.537% for residential properties; and 15.267% for vacant land.  *See id.* at 24.

After the trial, the District Court denied Defendants' motions requesting that the District Court enter judgment in favor of Defendants or order a new trial, and in 2008, the District Court entered final judgment in favor of Plaintiffs.  *See Cook v. Rockwell Int'l*, 564 F. Supp. 2d 1189 (D. Colo. 2008) ("*Cook XIV*"); Final Judgment, Doc. No. 2264.

Defendants appealed, and the Tenth Circuit Court of Appeals in 2010 vacated the judgment.  Adopting a new argument the Defendants raised for the first time on appeal, the Tenth Circuit held that the PAA required Plaintiffs to prove additional and more severe harm than would be required under Colorado state nuisance law.  *See Cook v. Rockwell Int'l*, 618 F.3d 1127, 1153 (10th Cir. 2010) ("*Cook Appeal I*").  The Tenth Circuit vacated the award of punitive

---

[7] One expert witness, Mr. Flynn, testified live but became ill during the trial and was unable to continue. The Court allowed Plaintiffs to use deposition designations in lieu of his live testimony. Davidoff Decl. ¶ 144.  In the totals above, only his live trial testimony is counted.

damages and reversed the District Court's class certification ruling in light of its holding that the PAA required Plaintiffs to prove additional and more severe harm than required under Colorado state nuisance law. *Id.* at 1149-52. The Tenth Circuit found, however, that "[t]he jury was properly instructed on elements of a [state] nuisance claim as well as the definitions of 'substantial' and 'unreasonable.'" *Id.* at 1145.

Plaintiffs then filed a petition for a writ of *certiorari* requesting that the United States Supreme Court review *Cook Appeal I*, which was denied. 133 S. Ct. 22 (U.S. Jun. 25, 2012) (No. 10-1377).

On remand, the District Court directed the parties to submit briefs about the issue of whether Plaintiffs' nuisance claims were preempted by the PAA. Plaintiffs argued that their claims under Colorado nuisance law were not preempted, Defendants argued the opposite, and this Court ruled in favor of Defendants, finding that Plaintiffs' state law nuisance claims were preempted by the PAA, and that Plaintiffs could not pursue their case other than by trying to recover under the PAA (with the extra requirements imposed by the Tenth Circuit Court of Appeals in *Cook Appeal I*). *Cook v. Rockwell Int'l*, 13 F. Supp. 3d 1153, 1160-61 (D. Colo. 2014) ("*Cook XV*").

In order to facilitate an immediate appeal, Plaintiffs stipulated to judgment in favor of Defendants and agreed not to pursue any claims under the Price-Anderson Act unless *Cook Appeal I* were to be overturned or modified. *See* Doc. No. 2355-1. Plaintiffs then appealed this Court's preemption ruling to the Tenth Circuit, which reversed, holding that the PAA "does not preempt and preclude a freestanding state law nuisance claim when a nuclear incident is alleged but unproven," and further determining that the Tenth Circuit in *Cook Appeal I* "did not specifically preclude the district court from entering a new judgment predicated on an error-free

state law nuisance verdict." *Cook v. Rockwell Int'l*, 790 F.3d 1088, 1103 (10th Cir. 2015) ("*Cook Appeal II*"). The Tenth Circuit remanded to this Court, directing the Court to "proceed to judgment on the existing nuisance verdict promptly, consistent with resolving the outstanding class action question, wary of arguments that have already been rejected or forfeited." *Id.* at 1105.

Defendants subsequently filed a petition for *certiorari* seeking Supreme Court review of *Cook Appeal II*, No. 15-791 (U.S. Dec. 17, 2015), and Plaintiffs filed an opposition and conditional cross-petition seeking review of *Cook Appeal I* in the event the Supreme Court were to accept review of *Cook Appeal II.* No. 15-911 (U.S. Jan. 15, 2016).

Despite the Tenth Circuit's remand order, substantial legal obstacles and risks remained. On August 4, 2015, Plaintiffs filed a Motion for Entry of Judgment for the nuisance verdict, and filed a Corrected Motion for Entry of Judgment on August 26, 2015 and sought re-certification of the class. Defendants vigorously opposed these motions. On September 10, 2015, Defendants filed four separate briefs: (1) opposing class certification based on their argument that the injury and damages evidence presented at trial was not sufficiently class-wide; (2) arguing that allegedly applicable numerical federal nuclear standards conflicted with and preempted Colorado tort law, precluding entry of judgment on the prior jury verdict; (3) arguing that the Tenth Circuit had not addressed certain alleged trial errors involving admission of evidence that tainted the jury's verdict; and (4) disputing the Plaintiffs' calculation of pre- and post-judgment interest. *See* Doc. Nos. 2373, 2374, 2376, 2377. Also on September 10, 2015, Defendants filed a separate "Motion re Standards" requesting that the Court set aside the jury verdict because the alleged numerical federal nuclear standards discussed in "Part Two" of Defendants' four-part opposition briefing preempted any Colorado tort law duties of care. Doc. No. 2378, at 1. On October 23,

2015, Plaintiffs opposed Defendants' Motion re Standards and filed reply briefs addressing Defendants' oppositions to Plaintiffs' Motion for Entry of Judgment.   *See* Doc. Nos. 2381, 2382, 2383, 2384.  The parties' competing motions regarding the entry of judgment were fully briefed and awaiting decision by the Court at the time the Settlement was reached.

Following *Cook Appeal II*, the parties engaged in settlement discussions with the assistance of a mediator, the Honorable Layn Phillips, a former United States District Judge. After months of extensive negotiations, on May 18, 2016, the parties executed a Settlement Agreement, jointly notified the United States Supreme Court of the Settlement, and stipulated to dismissal of the pending petitions for *certiorari*.[8]  This Settlement Agreement is the product of extensive arm's-length settlement negotiations over more than seven months by counsel for both sides that were fully conversant with the extensive history of this case and the risks (including risks of additional substantial delay) that lay ahead.

On May 18, 2016, the day the Settlement Agreement was executed, Plaintiffs filed a Stipulation re Certification of Settlement Class (Doc No. 2393) and an Unopposed Motion for Certification of the Settlement Class (Doc. Nos. 2394-2395).  The Court certified the Settlement Class pursuant to Rule 23(a) and Rule 23(b)(3) on May 19, 2016.  Order Certifying Settlement Class, Doc. No. 2396.  Plaintiffs filed a Notice of Filing of Settlement Agreement, attaching a copy of the Settlement Agreement, on May 23, 2016.  Doc. No. 2401.

On July 15, 2016, Plaintiffs filed their Motion for Preliminary Approval of Proposed Class Action Settlement, Approval of Proposed Plan of Allocation of the Settlement Fund, Approval of Proposed Forms and Manner of Notice to the Class, Approval of Proposed Claim

---

[8] *See* Stipulation to dismiss the petition for a writ of *certiorari*, Case No. 15-911 (U.S. May 19, 2016) (docket available at http://www.supremecourt.gov/search.aspx?filename=/docketfiles/15-911.htm). On May 19, 2016, the Supreme Court dismissed the petitions.  *Id.*

Form, Appointment of Escrow Agent, Appointment of Settlement and Claims Administrator, and Approval of Proposed Schedule, with an accompanying memorandum in support and related materials. *See* Doc. Nos. 2406-2407. Defendants filed a response to this motion on July 25, 2016 (Doc. No. 2410), and the Court held a hearing on the motion for preliminary approval on August 4, 2016 (*see* Doc. No. 2415). On August 5, 2016, the Court granted Plaintiffs' motion, and issued an Order Granting Preliminary Approval of Proposed Class Action Settlement, Preliminary Approval of Proposed Plan of Allocation, Approval of Proposed Forms and Manner of Notice to the Class, Approval of Proposed Claim Form, and Approval of Proposed Schedule (Doc. No. 2416); an Order Appointing the Heffler Claims Group as Settlement and Claims Administrator (Doc. No. 2417); and an Order Appointing the Huntington National Bank as Escrow Agent (Doc. No. 2418). Plaintiffs' motion and accompanying materials, and the Court's Orders, are publicly available on the Court-approved official settlement website (www.rockyflatssettlement.com).

As set forth more fully in the Declaration of Jeanne C. Finegan, APR Concerning Implementation and Adequacy of Class Member Notification (Doc. No. 2432), the Court-appointed Settlement and Claims Administrator, Heffler Claims Group, successfully and timely implemented the Court-approved Notice Plan. *See id.*, at ¶ 4. The Notice Plan was substantially completed by November 28, 2016. *Id.* According to the Settlement and Claims Administrator's analysis of the media delivery components of the Notice Plan (print, television, radio and internet banner advertisements), the Notice Plan reached an estimated 96 percent of Denver area residents and 84 percent of the target audience nationwide. *Id.*

On January 12, 2017, Plaintiffs filed Class Counsel's Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Award of Service Payments to Class

Representatives, with accompanying declarations and exhibits.  Doc. Nos. 2434-2435.  These materials were uploaded shortly after filing to the Court-approved official settlement website (www.rockyflatssettlement.com).

Most recently, as part of Plaintiffs' continued efforts to represent the Class and to protect the Class from misleading and coercive communications, on February 13, 2017, Plaintiffs filed a motion to bar a third-party claims processor's misleading communications with the Class and require that any future communications by claims processors include certain disclosures and receive Court approval.  Doc. No. 2441.  The Court granted Plaintiffs' motion on February 14, 2017.  Doc. Nos. 2443 & 2444.  The Court subsequently denied the third-party claims processor's motion for approval of its proposed communications with members of the Class, which motion Plaintiffs opposed.  Doc. No. 2453.  A new motion by that third party processor is pending, to which Plaintiffs will respond on or before April 10, 2017.

The Settlement and Claims Administrator also added to the official settlement website a warning about solicitation of Class members by Optimal Settlements, LLC or other claims administrators.  *See* www.rockyflatssettlement.com.  Finally, pursuant to the Court's March 3, 2017 Order (Doc. No. 2449), on March 9, 2017, Heffler mailed out 25,272 reminder notices to potential Class members reminding them of the June 1, 2017 deadline to file claims.  *See* Doc. No. 2452, at 2; Declaration of Edward J. Radetich Jr., Heffler Claims Group, In Support of Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement and Approval of Proposed Plan of Allocation of the Settlement Fund ("Heffler Decl.") (attached as Exhibit 3), at ¶ 6 (filed herewith).

## III.  <u>THE SETTLEMENT AGREEMENT</u>

The Settlement provides an extraordinary monetary payment to the Class in exchange for a Class-wide release.

The Class receives $375 million in cash from Defendants and/or their indemnitor, the DOE. Settlement Agreement, ¶ 2(c). Dow's payment obligation is $131,250,000 (35% of the Settlement amount), and Rockwell's is $243,750,000 (65% of the Settlement amount). *Id.*

On June 1 and 2, 2016 Defendants paid a total of $2.5 million into an independent escrow account pursuant to Settlement Agreement, ¶ 2(a), for notice and administration costs incurred in connection with the final approval of the settlement. *Id.* If the actual costs of notice and administration incurred prior to final settlement approval exceed $2.5 million, this amount will be replenished and made available to Plaintiffs upon a showing of good cause, up to a maximum of $10 million. *Id.*

The Settlement required Defendants to pay the remainder of the $375 million settlement on or before July 28, 2017 (*id.* ¶2(c)). As Plaintiffs have advised the Court, Defendants have already deposited the balance of the $375 million owed under the Settlement Agreement into the Escrow Account. *See* Doc. Nos. 2437, 2438.

The Settlement Agreement, if approved, will be binding on Defendants, Plaintiffs, and the Class, which is defined as "all persons and entities who have not previously opted out or who do not timely opt out of the class and who owned, as of June 7, 1989, an interest (other than mortgagee and other security interests) in real property situated within the Property Class Area (defined below), exclusive of governmental entities, Defendants, and Defendants' affiliates, parents, and subsidiaries." *See* Order Certifying Settlement Class, Doc. No. 2396, at 1-2. The Property Class Area is a geographic area near the former Rocky Flats Nuclear Weapons Plant in

Colorado; its boundary is portrayed in the map attached to the Order Certifying Settlement Class as Appendix A. *Id.*[9]

"Settlement Class Members" means each and every member of the Settlement Class. "Class Counsel" means counsel for the Class Representatives and Settlement Class Members. Defendants have stipulated to certification of the Settlement Class, subject to the reservation of rights stated in Paragraph 17 of the Settlement Agreement and contained in the separate stipulation. Settlement Agreement, ¶ 1; *see also* Stipulation re Certification of Settlement Class, Doc. No. 2393. Excluded from the Class are governmental entities, Defendants, and Defendants' affiliates, parents, and subsidiaries. Settlement Agreement, ¶ 1; Stipulation re Certification of Settlement Class, Doc. No. 2393, at ¶ 3.

The Settlement Agreement provides for the release of Defendants and any past, present and future parents, subsidiaries, divisions, affiliates, joint ventures, stockholders, officers, directors, management, supervisory boards, insurers, indemnitors (including the United States Department of Energy or "DOE"), general or limited partners, employees, agents, trustees, associates, attorneys and any of their legal representatives or any other representatives thereof (and the predecessors, heirs, executors, administrators, successors and assigns of each of the foregoing) (the "Released Parties") from any and all manner of claims, rights, debts, obligations, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, including costs, expenses, penalties and attorneys' fees, accrued in whole or in part, in law or equity, that the Plaintiffs and Settlement Class Members (including any of their past, present or future officers,

---

[9] *See* corrected Appendix A to the Order Certifying Settlement Class, Doc. No. 2396. *See also* Order Granting Plaintiffs' Unopposed Motion for Amendment or Correction of the Court's Order Certifying Settlement Class, Doc. No. 2405.

directors, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, joint ventures, subsidiaries, heirs, executors, administrators, predecessors, successors and assigns, acting in their capacity as such) (collectively the "Releasors") ever had, now have or hereafter can, shall or may have, directly, representatively, derivatively or in any other capacity, arising out of or relating in any way to the Released Parties' conduct in connection with Rocky Flats, including without limitation any claim that was alleged or could have been alleged in this suit (the "Released Claims"), *except that* the Settlement Class Members and the Plaintiffs do not release claims for actual bodily injury, nor claims unrelated to the allegations in the complaint such as pension, or product liability or contract claims or claims of former Rocky Flats workers under Workman's Compensation or similar laws or regulations.  Settlement Agreement, ¶ 7.  Releasors also covenant and agree that each shall not sue or otherwise seek to establish or impose liability against any Released Party based, in whole or in part, on any of the Released Claims, regardless of whether or not any Releasors objected to the Settlement.  *Id.*

The entire Settlement is subject to Court approval, and could be deemed canceled and rescinded if the Settlement Agreement cannot be finalized as provided in Paragraph 3(d) of the Settlement Agreement.  Settlement Agreement ¶ 10.[10]

---

[10] The Settlement Agreement provided that Defendants would have the right to rescind the Settlement Agreement if more than a specified percentage of Class members timely opt out of the Class (*id.*) – but this condition was not met.  The Court's March 1, 2017 deadline for Class members to timely opt out of the Class has passed, and only three Class members have opted out, fewer than the specified percentage of Class members required to give Defendants the right to rescind the Settlement Agreement.  *See* Settlement Agreement, at § 10 & Ex. D.

## IV.     THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED

### A.     The Settlement Is Fair, Reasonable, and Adequate and Should Be Approved

Approval of a proposed settlement is within the sound discretion of the Court.  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002); *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).  Nonetheless, there is a "strong judicial policy in favor of class action settlement" that "contemplates a circumscribed role for the district courts in settlement review and approval proceedings."  *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014) (citing *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010)).  "Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts."  *Id.*

A class action settlement must be approved under Rule 23(e) of the Federal Rules of Civil Procedure if it is "fair, reasonable and adequate."  *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993); *Jones*, 741 F.2d at 324.[11]  The Tenth Circuit has identified four factors that a district court should consider in assessing whether a proposed class action settlement is fair, reasonable and adequate:

> (1)     whether the proposed settlement was fairly and honestly negotiated;

---

[11] Courts have long held that the settlement of disputed claims is favored as a public policy matter, *see*, *e.g.*, *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969), particularly in the context of class action litigation.  *See Diaz v. Romer*, 801 F. Supp. 405, 407 (D. Colo. 1992) (in approving class action settlement, court explained that a "consensual resolution of a dispute is always preferred").  For that reason, in evaluating the fairness of the Settlement, this Court should neither decide the merits of the cases nor substitute its judgment for that of the parties who negotiated the settlement.  *See Lucas v. Kmart Corp.*, No. 99-cv-01923, 2006 U.S. Dist. LEXIS 51439, at *23 (D. Colo. Jul. 27, 2006) ("[I]t is not the role of the Court at [the settlement] stage of the litigation to evaluate the merits") (citing *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997)); *see also In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976) (the court "need not, and should not, decide the merits of the controversy").

(2)     whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3)     whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4)     the judgment of the parties that the settlement is fair and reasonable.

*Gottlieb*, 11 F.3d at 1014; *Jones*, 741 F.2d at 324; *see also Rutter*, 314 F.3d at 1188 (affirming test); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 01-cv-01451, 2006 U.S. Dist. LEXIS 71039, at *15 (D. Colo. Sept. 28, 2006) (also affirming test); *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 546-48 (D. Colo. 1989) (applying settlement approval factors to securities class action).[12]   In addition, the number of substantive objections to a settlement – here there are none – is a factor courts consider when assessing whether a proposed class action settlement is fair, reasonable and adequate.  *See, e.g.*, *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1008 (D. Colo. 2014) (in reviewing a proposed class settlement under the Gottlieb factors, "[t]he Court may also consider the fact that no objections were filed by any Class Members.") (granting final approval).[13]

---

[12] Where relevant, courts in this Circuit also consider:  (i) the risk of establishing damages at trial; (ii) the extent of discovery and the current posture of the case; (iii) the range of possible settlement; and (iv) the reaction of Class Members to the proposed settlement.  *In re N.M. Natural Gas Antitrust Litig.*, 607 F. Supp. 1491, 1504 (D. Colo. 1984); *Wilkerson*, 171 F.R.D. at 284 (citing *In Re New Mexico Nat. Gas Antitrust Litig.*, 607 F.Supp. 1491, 1497 (D.Colo.1984)).

[13] *See also Mohammed v. Ells*, 12-CV-1831-WJM-MEH, 2014 WL 4212687, at *4 (D. Colo. Aug. 26, 2014) ("[T]he fact that no objections to the settlement were filed by any shareholder weighs heavily in favor of approval of the derivative litigation settlement."); *Oppenlander v. Stand. Oil Co. (Indiana)*, 64 F.R.D. 597, 627 (D. Colo. 1974) ("It is significant that only one shareholder out of thousands filed a written objection to the Settlement Agreement."); *Ponca Tribe of Indians of Oklahoma v. Contl. Carbon Co.*, 05-445 (C), 2009 WL 2836508, at *1 (W.D. Okla. Jul. 30, 2009) (approving class settlement and noting that "[n]o substantive objections were filed to the settlement . . . [and] there were eight (8) opt outs out of approximately 1,800 Class Members"); *Belote v. Rivet Software, Inc.*, 12-CV-02792-WYD-MJW, 2014 WL 3906205, at *4 (D. Colo. Aug. 11, 2014) (noting that the fact that no substantive objections were filed "indicat[e] that the Class Members do not oppose the settlement"); *Make A Difference Found., Inc. v. Hopkins*, 10-CV-00408-WJM-MJW, 2012 WL 917283, at *3 (D. Colo. Mar. 19, 2012) ("the fact that only three conclusory written objections to the settlement were received and no objectors appeared at the settlement hearing, despite the fact that notice of the settlement was sent to more than 47,000 record holders of Oilsands stock, weighs heavily in favor of approval of the derivative litigation settlement.").

Consideration of each factor supports approval.

## 1.   The Proposed Settlement Was Fairly And Honestly Negotiated

Courts are required to analyze "whether the proposed settlement was fairly and honestly negotiated." *Jones*, 741 F.2d at 324; *Rutter*, 314 F.3d at 1188.  Courts "may presume the settlement to be fair, adequate, and reasonable" where it results "from arm's length negotiations between experienced counsel after significant discovery had occurred." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) (citation omitted); *see also United Airlines, Inc.*, 41 F. Supp. 3d at 1011 ("arms-length negotiations between experienced counsel" where counsel "undertook voluntary discovery, negotiated over a methodology for estimating damages, and retained an expert to calculate the damages . . . show[] that the Settlement was fairly and honestly negotiated").  Here, the Settlement Agreement was reached after far more than "significant discovery" – the parties entered into the Settlement Agreement after more than 26 years of litigation, including complete discovery, extensive briefing, a jury trial lasting more than 4 months, two separate appeals in the Tenth Circuit Court of Appeals, and two rounds of briefing in connection with two separate petitions for writs of *certiorari* seeking review by the United States Supreme Court.  After litigating this case for decades, through lengthy and extensive discovery, trial, and two appeals, Plaintiffs and Class Counsel certainly possessed "the desired quantum of information necessary to achieve a settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977).

The Settlement Agreement resulted from extensive arm's-length settlement negotiations over more than seven months between counsel for Plaintiffs and counsel for Defendants.  The settlement discussions were conducted with the assistance of a mediator, the Honorable Layn

Phillips, a former United States District Judge, a fact which weighs in favor of settlement.[14] There has been no suggestion, nor could there be, that Class Counsel and counsel for Defendants did not negotiate in earnest and at arm's length.

The $375 million that has already been deposited into the Escrow Account by Defendants is a testament to Class Counsel's vigorous representation of the Class throughout the settlement negotiations and throughout decades of hard-fought litigation, including during the ten months since the Settlement Agreement was executed.  *See generally Lucas*, 234 F.R.D. at 693 (holding that the settlement agreement was fairly and honestly negotiated where "the parties to this litigation have vigorously advocated their respective positions throughout the pendency of the case.") (internal quotations and citation omitted).

2.      <strong><u>Serious Disputed Questions of Law and Fact Remain</u></strong>

The Court should also consider whether "serious legal and factual questions placed the litigation's outcome in doubt."  *Tennille v. W. Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015); *see also Jones*, 741 F.2d at 324; *Rutter*, 314 F.3d at 1188.  Here, Plaintiffs and the Class faced significant risks.

When the Settlement Agreement was signed on May 18, 2016, the District Court had not yet addressed any of the four arguments Defendants raised in opposition to Plaintiffs' Motion for Entry of Judgment.  Defendants argued that:  (1) class certification was not appropriate under Fed. R. Civ. P. 23; (2) alleged numerical federal nuclear standards preempt Plaintiffs' Colorado nuisance claims; (3) the District Court erred at trial by allowing irrelevant and prejudicial

---

[14] *See In re Currency Conversion Fee Antitrust Litig*., 263 F.R.D. 110, 122 (S.D.N.Y. 2009).  *See also Ingram v. Coca-Cola Co*., 200 F.R.D. 685, 693 (N.D. Ga. 2001); *In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347, 352 (E.D.N.Y 2000).  In addition, protracted, difficult settlement negotiations signify the absence of collusion.

17

evidence (alleged errors the Tenth Circuit had not addressed, according to Defendants); and (4) the judgment amount, if any, should be far less than the amount Plaintiffs sought in their Motion for Entry of Judgment.  *See* Doc. Nos. 2373, 2374, 2376, 2377, 2378.  Plaintiffs opposed Defendants' arguments, but Plaintiffs and the Class faced a significant risk that the District Court, or the Tenth Circuit or Supreme Court thereafter, would rule that (a) the Class could not be certified under Fed. R. Civ. P. 23; (b) that Plaintiffs' Colorado nuisance claims were still preempted by alleged numerical federal nuclear standards; (c) that the District Court erred at trial by allowing irrelevant and prejudicial evidence; and/or that (d) the judgment amount, if any, should be far less than the amount Plaintiffs sought in their Motion for Entry of Judgment.  In short, depending on future rulings by the District Court, Tenth Circuit, and/or U.S. Supreme Court, there was significant risk of reduced or no recovery for the Class.  There was also the substantial prospect of years of additional delay – in a case already more than a quarter-century old.

In addition, at the time of settlement, Defendants' writ of *certiorari* seeking review by the United States Supreme Court was pending.  Plaintiffs and the Class risked losing everything if the Supreme Court reviewed *Cook Appeal II* and found that Plaintiffs' nuisance claims were preempted by the PAA (assuming that the Supreme Court also did not reverse or materially modify the Tenth Circuit's ruling in *Cook Appeal I*).

In sum, the proposed Settlement provides a sizeable monetary recovery for the Class, while eliminating substantial risks and preventing the litigation from dragging out even longer.

### 3.  The Value of an Immediate Recovery Outweighs the Possibility of Future Relief After Further Litigation

Courts also "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after

protracted and expensive litigation." *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D. Col. 1976); *see also Jones*, 741 F.2d at 324 (courts should consider "whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation"); *Rutter*, 314 F.3d at 1188.

Again, if the Supreme Court had granted Defendants' *certiorari* petition, this would have further prolonged the litigation and could have led to judgment being entered in favor of Defendants. *See In re Crocs, Inc. Sec. Litig.*, 07-cv-02351-PAB-KLM, 2013 WL 4547404, at *12 (D. Colo. Aug. 28, 2013) ("Given the uncertainty of plaintiffs' likelihood of success on the merits and the prospects of prolonged litigation, the Court finds that immediate recovery outweighs the time and costs inherent in complex . . . litigation, especially when the prospect is some recovery versus no recovery."); *King Res.*, 420 F. Supp. at 627 ("The Court recognizes that had these settlements not been reached, chances of the class prevailing against settling defendants would have been uncertain and disbursement of funds to the class, should it have prevailed, would undoubtedly have been delayed for some, perhaps lengthy, period of time given the high probability of an appeal or appeals in this case.").

Even if the Supreme Court had denied Defendants' *certiorari* petition, there was likely to have been extensive and prolonged litigation concerning Plaintiffs' Motion for Entry of Judgment, and Defendants' multi-part opposition thereto, including additional appeals to the Tenth Circuit and additional rounds of Supreme Court *certiorari* petition briefing. This real risk that the Class might walk away with nothing, along with the inevitability of further years of delay, weigh in favor of final approval. *See, e.g.*, *Nieberding v. Barrette Outdoor Living, Inc.*, No. 12-CV-2353-DDC-TJJ, 2015 WL 1645798, at *3-5 (D. Kan. Apr. 14, 2015) (pendency of appeal favored approval because "if the Tenth Circuit reversed the Court's class certification

order, the class members might recover nothing"); *Seiffer v. Topsy's Int'l, Inc.*, 70 F.R.D. 622, 625, 629 (D. Kan. 1976) (approving partial settlement after Tenth Circuit affirmance of class certification and while petition for writ of *certiorari* was pending, noting that although plaintiffs had "no serious doubts" about establishing liability, the "risk of ultimately recovering money damages dogs the heels of even able and zealous counsel," especially in large and complex cases, and the "certainty of fixed recovery by way of agreement is often preferable to the vagaries of what might be achieved by a trial"); *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974) ("It has been held proper to take the bird in the hand instead of a prospective flock in the bush.") (citation and internal quotations omitted); *see also Lucas*, 234 F.R.D. at 694.

### 4.     Plaintiffs Believe the Settlement is Fair and Reasonable

Lastly, courts consider whether "the judgment of the parties that the settlement is fair and reasonable." *Jones*, 741 F.2d at 324; *Rutter*, 314 F.3d at 1188. Class Counsel, after extensive consultation with the Class Representatives, respectfully submit that the settlement is fair and reasonable. "Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas*, 234 F.R.D. at 695 (quoting *Marcus v. Kansas Dept. of Revenue,* 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002)); *Alvarado*, 723 F. Supp. at 548 ("Courts have consistently refused to substitute their business judgment for that of counsel and the parties."). Class Counsel are among the most experienced and respected class action lawyers in the nation, and have tirelessly advanced the Class's claims since the case's inception twenty-seven years ago. In our judgment, the Settlement is more than fair and reasonable – it represents an outstanding result for the Class. This judgment is based not only on the calculus of risk in the Supreme Court and further litigation related to class certification and Plaintiffs' Motion for Entry of Judgment, but also the very substantial sum of money that the settlement delivers to Plaintiffs with certainty.

Additionally, the Class Representatives fully support the Settlement. These Representatives have diligently and ably represented the Class through 27 years of litigation, including testifying at, and attending, the four-month trial. Given the Class Representatives' unique vantage point at the center of this lengthy litigation, and their personal stake in the outcome, their support for the Settlement speaks highly of its fairness.

### 5. The Long Duration of This Litigation and Aging Class Members Further Supports Approval

One less traditional but nonetheless important motivating factor in this case is the already long duration of the case, and the likelihood that at least several more years of litigation were in store. Three of the original class representatives have already passed away, and the remainder are older and in some cases in declining health. Other Class members no doubt have also passed away. The prospect of years of further litigation delay would mean even more Class members would not live to participate in any eventual recovery.

### 6. The Class's Overwhelmingly Positive Reaction to the Settlement Supports Approval

The Court-approved Notice Plan has been completed, and the Court-ordered March 1, 2017 deadline for Class members to object to the Settlement or opt-out of the Settlement Class has lapsed. To date, there has been essentially no opposition to the Settlement. The Settlement and Claims Administrator has received only three opt-out requests. *See* Heffler Decl., at ¶ 3.

In addition, the Settlement and Claims Administrator has received only two purported objections to the Settlement. One of the two purported objections was filed by William D. Thomas, who objected because he was not a Class member, and so not eligible to participate in the Settlement. *See* Doc. No. 2421. As a non-Class member, Mr. Thomas lacks standing to

object.[15]  In addition, Mr. Thomas's objection did not question the Settlement's fairness –

indeed, he apparently objects to the Settlement only to the extent that he is not able to participate

in it.  The only objection filed by a member of the Class objected to Class Counsel's fee request,

and did not claim that the Settlement was unfair (*see* Doc. No. 2445) – Class Counsel's response

to this objection is included in Class Counsel's Reply in Further Support of Class Counsel's

Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Award of

Service Payments to Class Representatives, which is also being filed today.

Heffler Claims Group issued notice to absent Class members in the manner ordered by

this Court, and consistent with Rule 23.  *See* Doc. No. 2416, ¶¶ 13-17 (approving Plaintiffs'

proposed Notice Plan).  The Court-approved Notice Plan was thorough and extensive, and the

best notice practicable, as explained more fully in Plaintiffs' Memorandum In Support of Their

Motion for Preliminary Approval of Proposed Class Action Settlement, Preliminary Approval of

Proposed Plan of Allocation, Approval of Proposed Forms and Manner of Notice to the Class,

Approval of Proposed Claim Form, Appointment of Escrow Agent, Appointment of Settlement

Administrator, and Approval of Proposed Schedule.[16]  The Notice Plan included the following

---

[15] *See, e.g., Heller v. Quovadx, Inc.*, 245 F. App'x 839, 842 (10th Cir. 2007) (holding that an objector to a securities class action settlement was "not a class member" and "therefore . . . ha[d] no standing" under Rule 23 because "[n]on-class members have no standing to object. . . ." and it was undisputed that the objector was not a class member) (quoting *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir.1989)); *In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-MD-1840-KHV, 2015 WL 5010048, at *21 (D. Kan. Aug. 21, 2015) ("Ordinarily, a non-settling party lacks standing to complain about a class action settlement because it has suffered no "injury in fact" and has no legally protected interest in the settlement."); *id.* at *21 n.61 ("Generally, only class members have standing to object to a class settlement."); *id.* at *24 (non-class members lacked standing to object); Newberg on Class Actions § 13:22 (5th ed.) ("As Rule 23 confers the right to object upon class members, the Rule itself does not confer standing upon nonclass members. Courts regularly find that nonclass members have no standing to object to a proposed settlement or to the notice thereof."); *id.* ("[N]onclass members may not object because generally speaking a settlement has no impact on them: as nonparties, they cannot be bound to the outcome of the litigation, and their interests generally are not affected by a class settlement.").

[16] Under Rule 23(e), "[t]he Court must direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement.  Fed. R. Civ. P. 23(e)(1).  For classes certified under Rule

components, which are described more fully in the two declarations submitted by Jeanne C.
Finegan, APR (Doc Nos. 2408, 2432) and in the Proposed Notice Plan (Doc. No. 2407-5):

1)   **Direct mail notice by first-class U.S. mail to reasonably identifiable Class
     Members.**  Plaintiffs mailed the Long Form Notice to the potential Class
     members who received notice of class certification in 1999 (subject to obtaining
     current addresses), as well as any other potential Class members identified
     through the Jefferson County and Broomfield County 1989 property records data.
     The Settlement and Claims Administrator has attempted to obtain current
     addresses for the potential Class members.  *See* Proposed Notice Plan, at § II.1;
     Doc. No. 2408, at ¶¶ 17-21; Doc. No. 2432, at ¶¶ 7-12.  The Long Form Notice
     included a claim form and informed Class Members of the terms of the
     Settlement; the Plan of Allocation for proceeds of the Settlement; the nature of the
     settled claims; the status of the litigation; the date, time, and place of the hearing
     on the motions to approve the Settlement and to award attorneys' fees and
     reimbursement of expenses; the parameters of the fee application; the procedure
     and applicable deadlines allowing Class members to comment on, object to, or
     request exclusion from the Settlement, and how to obtain more information,
     including through the Court-approved official website,
     www.rockyflatssettlement.com.[17]

2)   **An informational website (www.RockyFlatsSettlement.com).**  The website
     includes the Settlement Agreement, a detailed map of the Property Class Area, the
     Long Form Notice, Summary Notice, the Plaintiffs' motion for award of service
     awards to the Class Representatives and for attorneys' fees, costs and expenses
     (when it was filed), and other important Court documents.  *See* Proposed Notice
     Plan, at § II.2; Doc. No. 2408, at ¶¶ 62-63; Doc. No. 2432, at ¶ 13.

3)   **A toll-free information phone line for Class members to call 24 hours a day, 7
     days a week for more information about the Settlement, including but not
     limited to requesting copies of the Notice and Claim Form.**  *See* Proposed
     Notice Plan, at § II.3; Doc. No. 2408, at ¶ 64; Doc. No. 2432, at ¶ 14.

---

23(b)(3), as here, notice to class members must be the "best notice practicable."  *See* Fed. R. Civ. P.
23(c)(2)(B).  "[B]est notice practicable" means "individual notice to all members who can be identified
through reasonable effort."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  "The hallmark of
the notice inquiry . . . is reasonableness."  *Lucas*, 234 F.R.D. at 696 (quoting *Sollenbarger v. Mountain
States Tel. and Tel. Co.*, 121 F.R.D. 417, 436 (D.N.M.1988)).

[17] *C.f. In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1137 (D. Colo. 2009) ("[A]
notice of a class action and a proposed settlement generally must contain 'an adequate description of the
proceedings written in objective, neutral terms, that, insofar as possible, may be understood by the
average absentee class member'").  Counsel's adherence to this well-established procedure protects the
rights of absent Class Members.

4)     **Publication of the Court-approved Summary Notice in nationally circulated consumer magazines.**  *See* Proposed Notice Plan, at § II.4; Doc. No. 2408, at ¶¶ 34-39; Doc. No. 2432, at ¶ 15.

5)     **Publication of the Court-approved Summary Notice in Denver and Colorado newspapers.**  *See* Proposed Notice Plan, at § II.5; Doc. No. 2408, at ¶ 57; Doc. No. 2432, at ¶ 16.

6)     **Television commercials aired nationwide on cable networks.**  The commercials included information about the proposed settlement, explained who is a member of the Class, and directed potential Class members to the official settlement website and the toll-free informational line for more information.  *See* Proposed Notice Plan, at § II.6; Doc. No. 2408, at ¶¶ 40-43; Doc. No. 2432, at ¶ 17.

7)     **Television and radio commercials aired on network affiliate and cable networks in the Denver Direct Market Area ("DMA").**  The commercials included information about the proposed settlement, explained who is a member of the Class, and directed potential Class members to the official settlement website or to the toll-free informational line for more information.  *See* Proposed Notice Plan, at § II.7; Doc. No. 2408, at ¶ 55; Doc. No. 2432, at ¶ 18.

8)     **Online display banner advertising with a nationwide reach.  Plaintiffs used online banner advertisements, advertisements on the top or sides of websites.**  The banner advertisements provided information for visitors to self-identify themselves as potential Class Members, where they could "click" on the banner and then link directly to the official website for more information and where they could register online, file a claim, or seek additional information including frequently asked questions and important court deadlines and documents.  *See* Proposed Notice Plan, at § II.8; Doc. No. 2408, at ¶¶ 44-45, 49; Doc. No. 2432, at ¶¶ 19-21.

9)     **Online video advertising with a nationwide reach.**  Plaintiffs placed online video advertisements on the Xaxis network[18] across various web properties as pre-roll.[19]  *See* Proposed Notice Plan, at § II.9; Doc. No. 2408, at ¶ 46; Doc. No. 2432, at ¶ 22.

10)    **Advertising on mobile websites and applications specifically targeted to reach class members.**  Plaintiffs used banner advertising on mobile websites and applications.  Potential Class members could "click" on the mobile or application

---

[18] Xaxis is an online network of over 2,000 individual web partner properties. (www.xaxis.com).

[19] Online "pre-roll" advertisements or commercials appear prior to an online video being presented. Once you click on a certain online video link you must watch a short commercial (here, about the Settlement) before the video content.

banner and then link directly to the official settlement website.  *See* Proposed Notice Plan, at § II.10; Doc. No. 2408, at ¶¶ 53-54, 56; Doc. No. 2432, at ¶ 23.

11)  **Social media advertising through Facebook and Twitter with a nationwide reach.**  Facebook advertisements were served to adults across the United States, and more specifically to those who also have friends and family in living in Colorado and those who live near Rocky Flats and in surrounding areas.  *See* Proposed Notice Plan, at § II.11; Doc. No. 2408, at ¶¶ 50-51; Doc. No. 2432, at ¶ 24.  In addition, advertisements were served on Twitter, appearing as sponsored tweets targeting adults nationwide with information about the proposed settlement and links to the Settlement Website.  *See* Proposed Notice Plan, at § II.11; Doc. No. 2408, at ¶¶ 50, 52; Doc. No. 2432, at ¶ 24.

12)  **Native advertising on premium internet properties with a nationwide reach.**  Plaintiffs also used "native advertisements," which are banner advertisements that are served to function and fit the surrounding editorial on a page.  *See* Proposed Notice Plan, at § II.12; Doc. No. 2408, at ¶ 47; Doc. No. 2432, at ¶ 22.

13)  **Third-party outreach to a community action group, the "Downwinders,"[20] and medical providers asking them to share and distribute the Notice.**  *See* Proposed Notice Plan, at § II.13; Doc. No. 2408, at ¶¶ 58-59; Doc. No. 2432, at ¶¶ 26-27.  The Downwinders distributed copies of the Notice at the October 15, 2016 Downwinders meeting.  Doc. No. 2432, at ¶ 26.

14)  **A multimedia press release issued nationwide over PR Newwire's US1 newslines.**  *See* Proposed Notice Plan, at § II.14; Doc. No. 2408, at ¶¶ 60; Doc. No. 2432, at ¶ 28.

Commenting on the notice plan, Jeanne C. Finegan, APR concluded:

30.  In my opinion, the robust outreach efforts taken pursuant to the Court-approved Notice Plan and described above reflect a particularly appropriate, highly targeted and contemporary way to provide notice to potential Class members. Indeed, I estimate that the robust multi-channel Notice Plan, which combined direct mail and a paid media program, exceeded our original estimated projections, and reached over 96 percent of potential Class members (or their heirs or successors) living in the Denver DMA (reaching more potential Class Members than we originally expected); reached over 96 percent of potential Class members (or their heirs or successors) living in Colorado; and reached over 84 percent of potential Class members (or their heirs or successors) nationwide.

---

[20] Rocky Flats Downwinders is a community organization founded in 2015 advocating on behalf of those impacted by living downwind from the Rocky Flats Nuclear Weapons Plant.  The organization came together through common concern about the high rate of illness suffered by former residents in the Arvada, Broomfield, Thornton, and surrounding areas.

31.  In my opinion, the successfully implemented Court-approved Notice Plan reflected and incorporated the highest modern communication standards and was reasonably calculated to provide notice that is not only consistent with, but indeed, exceeds best practicable court-approved notice plans in similar matters and is consistent with the Federal Judicial Center's guidelines concerning appropriate reach.

Doc. No. 2432, at ¶¶ 30-31.

Following the completion of the extensive Notice Plan, Class members were given ample time to opt out of the Class or object to the Settlement (more than 90 days).[21]  The Court-approved Notice Plan was substantially completed by November 28, 2016 (*see* Doc. No. 2432, at ¶ 4), 93 days prior to the March 1, 2017 deadline for requesting exclusion from the Class or objecting to the Settlement (*see* Doc. No. 2416, at ¶ 17).  Courts have approved much shorter exclusion and/or objection periods.[22]

Simply put, any Class member who may have reason to object to the Settlement has been provided fair notice, and had an opportunity to either opt-out or object to the Settlement.  The Court-ordered deadline to request exclusion or object to any aspect of the Settlement — March 1,

---

[21] Class members were previously given an opportunity to opt out of the Class when notice was mailed to the Class in 1999.  *See* Doc. No. 1139 (Plaintiffs' Proposed Class Notice); Doc No. 1143 (Order Approving Class Notice); Doc. No. 1148 and exhibits thereto (report on prior opt outs).  Rule 23(e)(4) provides that "[i]f the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so."  Here, the class certification was reversed by *Cook Appeal I*, while 23(e)(4) appears to address a situation where a class is certified, then a case settles.  In any event, the Class members were given a second opportunity to opt out of the Class, as well as an opportunity to object to the Settlement.

[22] *See DeJulius v. New Eng. Health Care Employees Pension Fund*, 429 F.3d 935, 946 (10th Cir. 2005) (affirming a 32-day notice period and noting that "courts have found a notice scheme similar to the one in the instant case sufficient and have not required a sixty- or ninety-day notice period, as Appellants suggest"); *Lucas*, 234 F.R.D. at 695-97 (approving a 60-day notice period for a nationwide settlement class of over 200,000 potential members); *Hershey v. ExxonMobil Oil Corp.*, No. 07-cv-1300-JTM, 2012 WL 5306260, at *4 (D. Kan. Oct. 26, 2012) (approving a 30-day notice period where the settlement compensated the class of "over 8,600 members" for damages "extending back to 1988"); *see also* Newberg on Class Actions § 8:16 (5th ed.) ("[C]ourts typically provide for a few months between the issuance of settlement notice and either the deadline for objections or the fairness hearing[,] although gaps of one month or less have been found adequate.").

2017 – has elapsed.  The overwhelmingly positive reaction of the Class – not a single Class member has filed a substantive objection to the settlement – weighs strongly in favor of approval.[23]

## V.   THE COURT SHOULD APPROVE PLAINTIFFS' PROPOSED PLAN OF ALLOCATION

"An allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel."  *Lucas*, 234 F.R.D. at 695 (quotation and citations omitted).  It is well established that a plan of allocation is fair, reasonable and adequate where it seeks to compensate Class members based on their estimated damages.  *See, e.g., In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 692 (D. Colo. 2014); *Law v. Nat'l Collegiate Athletic Ass'n*, 108 F. Supp. 2d 1193, 1196, 1200 (D. Kan. 2000); *Smith v. MCI Telecomms. Corp.*, No. 87-2110- EEO, 1993 WL 142006, at *2 (D. Kan. Apr. 28, 1993).

The proposed Plan of Allocation of the Settlement Fund ("proposed Plan of Allocation") (attached as Exhibit 2) (previously filed at Doc. No. 2407-2) accomplishes these goals: it

---

[23] *See, e.g.*, *In re New Mexico Nat. Gas*, 607 F. Supp. at 1504, 1507-08;  *Belote v. Rivet Software, Inc.*, No. 12-CV-02792-WYD-MJW, 2014 WL 3906205, at *2 (D. Colo. Aug. 11, 2014) ("Additional factors which may be relevant include: (1) the risk of establishing damages at trial; (2) the extent of discovery and the current posture of the case; (3) the range of possible settlement; and (4) the reaction of class members to the proposed settlement.") (citing *In re New Mexico Nat. Gas*, 607 F. Supp. at 1504); *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997) (same); *Tuten*, 41 F. Supp. 3d at 1008 (in reviewing a proposed class settlement under the Gottlieb factors, "[t]he Court may also consider the fact that no objections were filed by any Class Members.") (granting final approval); *Mohammed*, 2014 WL 4212687, at *4 ("[T]he fact that no objections to the settlement were filed by any shareholder weighs heavily in favor of approval of the derivative litigation settlement."); *Oppenlander*, 64 F.R.D. at 627 ("It is significant that only one shareholder out of thousands filed a written objection to the Settlement Agreement."); *Ponca Tribe of Indians*, 2009 WL 2836508, at *1 (approving class settlement and noting that "[n]o substantive objections were filed to the settlement . . . [and] there were eight (8) opt outs out of approximately 1,800 Class Members"); *Belote*, 2014 WL 3906205, at *4 (noting that the fact that no substantive objections were filed "indicat[e] that the Class Members do not oppose the settlement"); *Hopkins*, 2012 WL 917283, at *3 ("the fact that only three conclusory written objections to the settlement were received and no objectors appeared at the settlement hearing, despite the fact that notice of the settlement was sent to more than 47,000 record holders of Oilsands stock, weighs heavily in favor of approval of the derivative litigation settlement.").

provides a fair and objective method of compensating the Class members for their damages, based on the damages determined by the jury at trial.  The proposed Plan of Allocation was preliminarily approved by the Court on August 5, 2016 (Doc. No. 2416), and is modeled on the prior Plan of Allocation approved by the Court on June 2, 2008 in connection with the Court's entry of judgment in favor of Plaintiffs after trial.  *See* Doc. No. 2264-2.

The current proposed Plan of Allocation calls for distribution of the Net Settlement Fund[24] in the following manner:  3.196% of the Net Settlement Fund will be allocable to commercial properties located in the Property Class Area; 81.537% of the Net Settlement Fund will be allocable to residential properties located in the Property Class Area; and 15.267% of the Net Settlement Fund will be allocable to vacant land located in the Property Class Area. Proposed Plan of Allocation, at ¶ 8.  These are the same percentages for each class of properties that the jury awarded.  *See* Jury Verdict Form, Doc. No. 2117, at 24.

Based on Jefferson County and Broomfield County tax assessment records from April 1989 and such other sources as the Settlement and Claims Administrator may reasonably determine to be suitable and reliable, the Settlement and Claims Administrator shall determine, for each Class property, the property's assessed value, expressed as a fraction of the total assessed value of all Class properties within the same category (the property's "Fractional Allocable Share").  Plan of Allocation, at ¶ 9.

The Settlement and Claims Administrator shall compute an award for each member of the Class, based on the Class member's property's Fractional Allocable Share of the Net

---

[24] The "Net Settlement Fund" is defined as the Settlement Fund, less (i) service awards to the Class Representatives approved by the Court; (ii) fees, expenses, and costs approved by the Court to be awarded from the Settlement Fund to counsel for Plaintiffs and the Class; (iii) Court-approved compensation and expenses paid or reimbursed to the Settlement and Claims Administrator; and (iv) any additional administrative expenses that may be charged against the Settlement Fund as approved by the Court.

Settlement Fund apportioned to that category.  Plan of Allocation, at ¶ 10.  For example, for a residential property, the proposed Plan of Allocation will result in an award based on the property's Fractional Allocable Share multiplied by the Net Residential Property Settlement Fund.

It is anticipated that after the first distribution of settlement proceeds there will be unclaimed or residual funds and that a subsequent distribution or distributions will be needed. Class Counsel anticipates that, subject to Court approval, in any such second or subsequent distribution, the properties closest to the plant will be given an extra weighting such that those properties receive relatively more money in subsequent distributions.  Plan of Allocation, at ¶¶ 11, 13.

Insofar as the Net Settlement Fund includes residual funds after distribution(s) as set forth in the preceding paragraphs that cannot be economically distributed to the Class (because of the costs of distribution as compared to the amount remaining), Class Counsel shall make an application to the Court, with notice to Defendants, for such sums to be used to make *cy pres* payments for the benefit of members of the Class, for example by making a donation to a group or groups whose interests are aligned with Class members or otherwise as directed by the Court. Plan of Allocation, at ¶ 14.

The distribution methodology is adequately explained in the Notice sent to potential Class members and posted to the official settlement website.  The proposed Plan of Allocation tracks the damages awarded to the Class at trial, and is fair, reasonable, and adequate to the Class as a whole, and should be approved.

## VI.     CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court grant their motion for final approval of the Settlement, as set forth in the attached proposed Orders.

Dated: March 30, 2017                          Respectfully submitted,


                                               */s/ Merrill G. Davidoff*
                                               Merrill G. Davidoff
                                               David F. Sorensen
                                               Caitlin G. Coslett
                                               BERGER & MONTAGUE, P.C.
                                               1622 Locust Street
                                               Philadelphia, PA 19103
                                               (215) 875-3000

                                               Gary B. Blum
                                               Steven W. Kelly
                                               SILVER & DeBOSKEY, P.C.
                                               1801 York Street
                                               Denver, CO 80206
                                               (303) 399-3000

                                               Louise M. Roselle
                                               Paul M. DeMarco
                                               MARKOVITS, STOCK & DE MARCO, LLC
                                               119 E. Court Street, Suite 530
                                               Cincinnati, OH 45202
                                               (513) 651-3700

                                               *Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 30 day of March, 2017 he caused the foregoing

submission to be served via the Court's ECF system on all participating counsel.

*/s/ Merrill G. Davidoff*
Merrill G. Davidoff
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000