IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, *et al.*,

        Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

        Defendants.

## PLAINTIFFS' RESPONSE TO OPTIMAL SETTLEMENTS LLC'S MARCH 28, 2017 MOTION FOR APPROVAL OF CLASS MEMBER COMMUNICATIONS

Plaintiffs oppose Optimal's latest motion. In addition to the fact that Optimal's proposed communications include misleading language, Class Counsel have serious reservations about the unfairness of Optimal's method of valuing Class members' claims. There is considerable uncertainty involved in valuing the Class members' claims before the claims deadline of June 1, 2017, and Optimal's method could short-change Class members considerably. In addition, Optimal's proposed fees are extremely high and not clearly disclosed.

**A.**  **Optimal Hypothesizes An Unrealistic Claims Formula Which Underestimates Claimants' Likely Recovery, And Optimal's Proposed Fees Are Excessive, and Amount to Approximately Half the Value of Class Members' Claims**

In order to justify a wholly premature solicitation to Class members to purchase claims, Optimal has created a "Valuation Analysis Methodology" that is completely speculative and baseless. Optimal's proposed methodology includes several made up variables and errors, including:

- Optimal's estimation of the likely percentage of Class members that will file claims on or before June 1, 2017 is hypothetical. Optimal simply made up a number of Class members it expects to submit claims.
- Optimal's formula fails to account for the percentages of the settlement fund allocated to different types of property (residential, commercial, and vacant land), as provided for in Plaintiffs' Proposed Plan of Allocation, which the Court preliminarily approved (Doc. 2416, at ¶¶ 5-12).
- Optimal has failed to explain the basis for its estimation that the "aggregate assessed property values in 1989 of all eligible Rocky Flats properties" is in excess of $200,000,000, nor has Optimal provided any of the sources or valuation methods for Optimal's estimated assessed property values or aggregate class property values.

Plaintiffs wish to briefly comment on our distribution intentions in order to expose the flaws inherent in Optimal's methodology, which is based on unrealistic hypotheses. Plaintiffs are also willing to discuss further at the scheduled April 28, 2017 fairness hearing.

There will be at least two distributions in this case, and the second could be larger than the first for some Class members. In order to expedite initial payments to Class members, the first round will pay verified claimants based upon the original allocation formula, as if all potential claims had been filed. *See* Proposed Plan of Allocation Doc. 2407-2, at ¶¶ 9-10. There are a number of reasons for this: first, late claimants with valid explanations for filing late will likely be recommended for acceptance; second, some timely-filed claims may be delayed if there are questions about validity; third, as set forth in Plaintiffs' plan of allocation, in the second distribution the properties closest to the plant may receive an extra allocation (subject to Court

approval); and finally, some claims will be subject to extra verification procedures, *e.g.*, claims of heirs to Class members.

Optimal's formula, even if based on accurate variables (which it is not), would value Class members' claims based only upon the first distribution, while ignoring the value of the second (or subsequent) distributions.  If Optimal buys a claim, the second distribution would be an undisclosed and unfair profit for Optimal, at the expense of the Class members.

In addition, Optimal is clearly proposing to take advantage of uninformed Class members.  Optimal's formula proposes to charge Class members in three separate ways:  (1) Class members will pay a "risk discount of 20%"; (2) Class members will pay "a cost of capital and time value of money rate of 18%"; and (3) Optimal will then discount the Class members' claims by "15% to account for Optimal's costs and gross profit margin."  Although it is not clear from Optimal's brief or proposed methodology, or stated clearly in any of Optimal's proposed communications with Class members, it appears **Optimal proposes to charge Class members <u>approximately 50-53% to buy their claims</u>**, and this is after Optimal would systematically undervalue Class members' claims using unrealistic speculative assumptions, as discussed above.  This is extortionary and should not be allowed.

Plaintiffs do not want to prevent Class members who are in extreme need from selling their claims, but it is unrealistic to fairly value these claims until sometime after June 1, 2017 – and the valuation can only be done by the Court-appointed Settlement and Claims Administrator, who will have the full and complete data necessary to value claims, along with an understanding of the number of Class members who have filed Claims.  The Settlement and Claims Administrator will be working as quickly as possible but there are understandable delays in verifying and approving claims for a Class this large, particularly where property ownership

needs to be verified as of June 7, 1989 (approximately 28 years ago).  When Class Counsel, working with the Settlement and Claims Administrator, have an approximation of the value of claims we will be willing to talk with Optimal and will probably not object to Class members in need selling their claims, **PROVIDED** that any new solicitation to value claims has a rational and clear explanation of what the claim is worth and what percentage of that value Optimal is offering to pay, so that Class members are not misled or cheated in any sale of their claims.  In addition, Class members should be directed to talk to Class counsel before selling their claims.

### B.     There Is No Judicial Precedent Favoring Third-Party Contacts With Class Members

Class Counsel must correct the record with respect to Optimal's implication that third-party claims filers or claims buyers are to be considered normal or beneficial to the class action claims administration process.  Ironically, in claiming that its services are "welcome" in class action litigation, Optimal quotes Judge Gleeson's 2006 opinion in *In re Visa Check/MasterMoney Antitrust Litigation*, No. 96-CV-5238, 2006 U.S. Dist. LEXIS 19755, at *11, 2006 WL 1025588 (E.D.N.Y. March 31, 2006).[1]  That opinion, as well as Judge Gleeson's later opinions in the similar *Payment Card* litigation, provide a cautionary tale of how claims filers and claims buyers wore out their welcome with Judge Gleeson.

In the 2006 opinion, Judge Gleeson recounted how class counsel in that case had earlier sought, and obtained, relief from the court to issue corrective notice to counteract misleading

---

[1] The two "services" to class members cited in *Visa Check* – namely, "assistance in filing their claims or … liquidat[ing] those claims" – were arguably of more concrete value in that case than here. First, Optimal has now abandoned its efforts to convince Class members to allow it to file paperwork for them at the cost of up to 30% of their recovery – a "service" that was of dubious value considering the simplicity of the claim form and the fact that the Settlement and Claims Administrator has always been available to assist at no cost to the Class members.  Second, in this case there is little benefit to liquidating a claim, given that in all likelihood the claims payments will commence relatively soon: the claims deadline and final approval hearings are fast

4

statements by Spectrum Settlement Recovery, LLC, a third-party claims filer and claims purchaser which billed itself as "the nation's largest claim filing and fund recovery service for commercial and securities class action settlements." 2006 WL 1025588, at *2. Undeterred by a court order finding it had misled the class members, Spectrum resurfaced with new and additional solicitations that deceptively over-emphasized the uncertainty or possible delay in payout of the class settlement funds in order to make Spectrum's services appear more attractive. *Id*. at *5-6. The court again ordered corrective notice and set forth a procedure for rescinding contracts based on false or misleading statements. *Id*. at *7-8.

Despite that order, troubling practices by third party claims-filers continued. In our first motion regarding Optimal's contacts with absent Class members (filed Feb. 13, 2017, Doc. 2441), Plaintiffs cited unpublished 2013 and 2014 orders in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, Case No. 05-md-1720 (E.D.N.Y.) ("*Payment Card*"), which represented Judge Gleeson's multiple attempts to rein in yet more misleading and abusive solicitations by claims filing firms. *See* Doc. 2441, Exs. 11 & 12. Class Counsel also cited an October 3, 2014 Order in *Payment Card* where Judge Gleeson reviewed a fact pattern showing that, despite the court's repeated intervention, no fewer than seven claims filers (including, once again, Spectrum) had engaged in variety of deceptive solicitations of class members. *Payment Card*, 2014 WL 4966072, at *9-16 (E.D.N.Y. Oct. 3, 2014). If anything, the *Visa Check* and *Payment Card* cases serve as a cautionary tale regarding the business ethics of the third-party

---

approaching, no Class member has objected to the settlement itself, and only one Class member has objected to counsel's fee request. By contrast, in *Visa Check* a handful of merchants did object to the settlement, which created a greater risk of further delays on appeal. *See In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 509 & n. 6 (E.D.N.Y. 2003) (18 objectors to settlement and plan of allocation).

5

claims industry and the administrative headaches that such firms create for courts and class counsel.

### C.     The Proposed Mailer and Claims Purchase Agreement Is Misleading and Confusing

Optimal's mailer contains several issues that contribute to a lack of clarity.  Although Class Counsel objected to similar issues in their March 14, 2017 filing (Doc. 2452), the Court did not rule on these items in its March 15, 2017 Order (Doc. 2453).  Class Counsel briefly restate their objections.

First, Optimal's "Notice Concerning Your Claim Reimbursement" should display the Court-mandated disclosure at the top of the page, with the contact information for the Settlement and Claims Administrator, Heffler Claims Group ("Heffler"), set apart.  Optimal's current proposed draft notice instead displays and highlights Optimal's contact information by setting it apart at the top of the page. Class Counsel previously objected to this same problem.

Second, Class Counsel again object to the amended paragraph regarding an "expedited cash payment" for Class members' claims.  That paragraph now reads:

> Many claimants are simply unable to wait an uncertain amount of time to receive their reimbursement. **To obtain information on how you might be eligible to receive an expedited cash payment for your claim, please contact Optimal Settlements:**

Doc. 2455 Ex. A (emphasis in original).  As Class Counsel explained previously (see Doc. 2452 at 3), this solicitation is premature and does not include relevant information about when and how the claims can be valued.  Nor, significantly, does it encourage Class members to contact the Court-appointed Settlement and Claims Administrator and/or Class Counsel to discuss claims valuation.

Dated: April 10, 2017								Respectfully submitted,

												*/s/ Merrill G. Davidoff*
												Merrill G. Davidoff
												David F. Sorensen
												Jennifer MacNaughton
												Caitlin G. Coslett
												BERGER & MONTAGUE, P.C.
												1622 Locust Street
												Philadelphia, PA 19103
												(215) 875-3000

												Gary B. Blum
												Steven W. Kelly
												SILVER & DeBOSKEY, P.C.
												1801 York Street
												Denver, CO 80206
												(303) 399-3000

												*Attorneys for Plaintiffs and the Class*

7

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 10th day of April, 2017, he caused the foregoing submission to be served via the Court's ECF system on all participating counsel.

                                                  */s/ Merrill G. Davidoff*
                                                  Merrill G. Davidoff
                                                  BERGER & MONTAGUE, P.C.
                                                  1622 Locust Street
                                                  Philadelphia, PA 19103
                                                  (215) 875-3000