**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, *et al.*,

       Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

       Defendants.

---

**ORDER AWARDING ATTORNEY FEES**

---

Upon review and consideration of Class Counsel's Motion for Award of Attorney Fees, Reimbursement of Litigation Expenses, and Award of Service Payments to Class Representatives (Doc. 2434), the memorandum in support, and related materials, and all papers filed and  proceedings conducted herein, and otherwise being fully informed in the premises and good  cause appearing therefore, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1.      This Order incorporates by reference the definitions in the Settlement Agreement, and all terms used herein shall have the same meaning set forth in the Settlement Agreement, dated May 18, 2016 (filed at Doc. 2401).

2.      Class Counsel are entitled to a fee paid out of the common fund created for the benefit of the Class.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980).  In class action suits where a fund is recovered and fees are awarded therefrom by the court, the Supreme Court

has indicated that computing fees as a percentage of the common fund recovered is the proper approach. *Blum v. Stenson,* 465 U.S. 886, 900 n.16 (1984). The Tenth Circuit recognizes the propriety of the percentage-of-the-fund method when awarding fees. *See Gottlieb v. Barry,* 43 F.3d 474, 484 (10th Cir. 1994). This Court concludes that the percentage-of-the-recovery method is appropriate for awarding attorney fees in this action and hereby adopts said method for purposes of this action.

3.      Notice of the Settlement Agreement and of Class Counsel's request for attorney fees, reimbursement of expenses, and award of service fees to the Class Representatives was provided to all Class members who could be identified with reasonable effort. The form and manner of notifying the Class of the request for attorney fees and expenses met the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure, constituted due and sufficient notice to all persons and entities entitled thereto, and constituted the best notice practicable under the circumstances. *See, e.g.*, Declaration of Jeanne C. Finegan, APR Concerning Implementation and Adequacy of Class Member Notification, Doc. 2432; Order Granting Preliminary Approval of Proposed Class Action Settlement, Preliminary Approval of Proposed Plan of Allocation, Approval of Proposed Forms and Manner of Notice to the Class, Approval of Proposed Claim Form, and Approval of Proposed Schedule, Doc. 2417, at ¶¶ 13-17; Declaration of Jeanne C. Finegan, APR Concerning Proposed Class Member Notification, Doc. 2408; Proposed Notice Plan, Doc. 2407-5.

4.      Class Counsel have moved pursuant to Rules 23(h) and 54(d) of the Federal Rules of Civil Procedure for an award of attorney fees of 40% of the Settlement Fund, amounting to $150,000,000, plus interest as it accrues.

5.      Other courts, including within this Circuit, have acknowledged that a forty percent fee falls within an acceptable range of fee awards, even though none of those other cases even approached the considerable risk, length, and complexity of this litigation.  *See, e.g. Whittington v. Taco Bell of Am., Inc.*, No. 10-CV-01884-KMT-MEH, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (awarding fees and costs totaling 39% of settlement amount after three years of litigation and before trial); *Williams v. Sprint/United Mgmt. Co.*, No. 03-cv-2200-JWL, 2007 WL 2694029, at *6 (D. Kan. Sept. 11, 2007) (awarding 35% after four years of litigation and before trial); *Lewis v. Wal-Mart Stores, Inc.*, No. 02-cv-0944, 2006 WL 3505851, at *1 (N.D. Okla. Dec. 4, 2006) ("one-third [fee] is relatively standard in lawsuits that settle *before* trial") (emphasis added); *In re Melridge, Inc. Sec. Litig.*, CV 87-1426-FR, Doc. 2419 (D. Or. Apr. 15, 1996) (awarding 40% fee in eight-year litigation after jury trial and appeal).[1]  Courts have long recognized that class counsel and the class should have aligned interests in this type of matter, such that counsel are both compensated for risk and rewarded for success, where, as here, the Class receives significant benefit from Class Counsel's decades of work.

6.      A 40% fee award would equate to a lodestar multiplier of approximately 2.41. A multiplier of 2.41 is within the range of those frequently awarded in common fund cases.

7.      A forty percent (40%) fee from the Settlement Fund is appropriate in this case given its lengthy history and the extraordinary work of Class Counsel, and consistent with what

---

[1] *See also Moore v. United States*, 63 Fed. Cl. 781, 787 (Fed. Cl. 2005) ("one-third is a typical recovery"); *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 748-52 (E.D. Pa. 2013) ("in the last two-and-a-half years, courts in eight direct purchaser antitrust actions approved one-third fees"); *Universal Service Fund*, 2011 WL 1808038, at *2 ("an award of one-third of the fund falls within the range of awards deemed reasonable by courts") (citation omitted); *Shaw*, 2015 WL 1867861, at *6 ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class.") (citation omitted); *In re United Telecommc'ns Sec. Litig.*, No. 90-cv2251, 1994 WL 326007, at *3 (D. Kan. June 1, 1994) (awarding 33.3% of settlement fund); *Klein v. PDG Remediation, Inc.*, No. 95-cv-4954, 1999 WL 38179, at *4 (S.D.N.Y. Jan. 28, 1999) ("33% of the settlement fund . . . is within the range of reasonable attorney fees awarded in the Second Circuit").

is typically agreed to by clients and attorneys in contingent litigation.  Class Counsel accepted this case 27 years ago on a completely contingent basis.  If the case had failed, they would have received nothing, no matter how many years, hours, and millions of dollars had been expended. At each stage, Class Counsel's investment of time and expense has been at their own risk, with recovery dependent on success.  Given the considerable risk, through nearly three decades of litigation, with no guarantee of recovery, the legal team should be compensated for their efforts in securing excellent results for the Class.  "In non-class contingency fee litigation, a 30% to 40% contingency fee is typical."  *Montague v. Dixie Nat. Life Ins. Co.*, CIV.A. 3:09-00687, 2011 WL 3626541, at *2-3 (D.S.C. Aug. 17, 2011).[2]

8.        Accordingly, the Court hereby awards Class Counsel attorney fees of $150,000,000.00 (40% of the Settlement Fund), plus a proportionate share of the interest on the Settlement Fund as it accrues, to be paid solely from the Settlement Fund and only if and after the Settlement becomes final in accordance with Paragraph 3 of the Settlement Agreement.  The Court finds the fee award to be fair and reasonable.

9.        Lead Counsel for the Class, Berger & Montague,[3] shall allocate and distribute such attorney fees among the various Class Counsel which have participated in this litigation in such manner as Lead Counsel believes reflects each counsel's contribution to the prosecution of

---

[2] *See also Cimarron Pipeline Const., Inc. v. Nat'l Council on Comp. Ins.*, No. 89-cv-822, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) ("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."); *In re Remeron Direct Purchaser Antitrust Litig.*, No. Civ. 03-0085, 2005 WL 3008808, at *16 (D.N.J. Nov. 9, 2005) ("Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation."); *Flournoy v. Honeywell Int'l, Inc.*, No. 05-cv-184, 2007 WL 1087279, at *2 (S.D. Ga. Apr. 6, 2007) ("Forty percent fee contracts are common for complex and difficult litigation. . . .").

[3] *See* Order Certifying Settlement Class, Doc. 2396, at ¶ 9.

this litigation.[4] Should there be any disputes that cannot be resolved by agreement, they shall be brought within 90 days from the date hereof before this Court, which maintains continuing exclusive jurisdiction over this matter, the  settlement and its administration, and all related issues including attorney fees.

10.      In making this award of attorney fees, the Court has analyzed the factors considered within the Tenth Circuit as set forth in *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).  In evaluating these factors, and pursuant to Rules 23(h)(3) and 54(d) of the Federal Rules of Civil Procedure, this Court makes the following findings of fact and conclusions of law:

a)      Class Counsel's efforts in bringing this litigation to a successful conclusion against the Defendants after 27 years of hard-fought litigation conferred a substantial benefit on the Class.  Class Counsel obtained a $375 million settlement, which is an extraordinary result, and more than twice the $176.8 million the jury awarded in compensatory damages on the Class's nuisance claims (not including interest).

b)      The Settlement here is directly attributable to the skill and efforts of Class Counsel, who are highly experienced in prosecuting these types of cases.

---

[4] In making this determination, Lead Counsel may consider uncompensated time not included in the lodestar calculations.

c)     Class Counsel have expended considerable time and labor over the course of the 27 years of this litigation, which involved a four-month trial, *fifteen* published opinions of this Court, two separate appeals, two remands back to this Court, and two separate rounds of Supreme Court *certiorari* briefing.

d)     Major case milestones such as dispositive motions, class certification, *Daubert* motions, and appeals were litigated two, three, or more times.  Class Counsel also faced the challenge of obtaining the necessary documents and information from Defendants and the then-current Rocky Flats plant management, as well as Defendants' indemnitor, the Department of Energy.

e)     The case docket spans over 2,400 entries in this Court alone.  As this Court remarked, this case has generated "what is quite possibly the largest docket of any District of Colorado case to date."  Order Certifying Settlement Class Doc. 2396, at 8 (May 19, 2016).

f)     The parties collectively served 67 expert reports; conducted 151 lay witness and 45 expert witness depositions; and produced and reviewed approximately a thousand boxes of documents.

g)     A raft of novel and unsettled legal issues necessitated considerable briefing, argument, and evidentiary work.  Cases alleging nuclear torts (whether under the Price-Anderson Act or state law) are not common, and the law in this area evolved considerably over the course of this litigation – as exemplified by *Cook Appeal I*'s surprise embrace of a brand new PAA element never raised in the District Court.  *Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127 (10th Cir. 2010) ("*Cook Appeal I*").  This change necessitated Class Counsels' "judicial jiu jitsu",

6

*Cook v. Rockwell Int'l Corp.*, 790 F.3d 1088, 1091 (10th Cir. 2015) ("*Cook Appeal II*"), which held that Plaintiffs could seek entry of judgment on the Colorado nuisance claim based on the jury's verdict, and which paved the way for settlement.  During the pretrial phase, Class Counsel argued a number of unsettled issues of Colorado tort law, including whether radioactive plutonium particles should be considered a tangible or an intangible trespass, and whether ongoing contamination or the threat of future contamination constituted a continuing nuisance.  Class Counsel's reliance on the Restatement (Second) of Torts § 930 in order to claim damages for the ongoing threats to properties in the Class Area was a pioneering use of the continuing tort doctrine in the context of environmental contamination.  Class Counsel worked with the Court to develop an innovative, feasible way to segregate common Class claims in order to proceed with a class-wide trial.  And Class Counsel countered numerous other changes in the law along the way, including those leading to the decertification of the medical monitoring class, and Supreme Court decisions over the past 27 years pertaining to class certification that Defendants cited in their numerous attempts to decertify the Class.

h)    Class Counsel have handled this matter for 27 years, decades longer than most class actions.  Class Counsel collectively spent more than 160,000 hours working on this litigation.  Owing to the substantial demands and long duration of the case, Class Counsel have necessarily forgone other litigation opportunities, and borne extraordinary expenses.

i)     The well-regarded Public Justice Foundation[5] has recognized Class Counsel's exemplary work in this difficult case by naming the Rocky Flats trial team their 2009 Trial Lawyers of the Year, recognizing Merrill G. Davidoff, Peter Nordberg, David F. Sorensen, Ellen Noteware, and Jennifer MacNaughton of Berger & Montague; Louise Roselle and Jean Geoppinger McCoy from WSBC; and Gary Blum, Steve Kelly, and Bruce DeBoskey of Silver & DeBoskey.

j)     Using the total case lodestar as a cross-check, the fee requested from the settlement yields an aggregate multiplier of 2.41 at current hourly rates.  Typical multipliers range from one to four depending on the facts, with many courts awarding multipliers larger than four on case-specific grounds.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1050-51 & n.6 (awarding 3.65 multiplier from $96.9 million settlement fund, and noting standard 1-4 multiplier range); *Newberg on Class Actions* § 14.6 (4th ed. 2009) ("multiples ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied"); *In re Enron Corp.*, 586 F. Supp. 2d 732, 799-803 (S.D. Tex. 2008) (approving 5.2 multiplier and $688 million fee award, and collecting similar cases).  A multiplier of 2.41 is fair and reasonable under the circumstances.  *See Newberg on Class Actions* §15:87 (5th ed. 2015) (substantial multiplier is appropriate where case was risky, time-consuming, involved wrongdoing uncovered by counsel in the first instance, and delivered exceptional results).  This multiplier is much lower than

---

[5] The Public Justice Foundation is a not-for-profit, 501(c)(3) charitable membership organization that supports Public Justice's cutting-edge litigation and educates the public about the critical issues it addresses. The Public Justice Foundation's membership includes leading trial lawyers, appellate lawyers, consumer advocates, environmental attorneys, employment lawyers, civil rights attorneys, class action specialists, law professors, law students, public interest advocates, and other people who care about justice.  *See* http://www.publicjustice.net/.

the multipliers approved in other cases that did not involve 27 years of litigation, a four-month trial, extensive pretrial and post-trial briefing, two separate rounds of briefing in the Tenth Circuit and two rounds of *certiorari* petition briefing at the Supreme Court.[6]

11.  Exclusive jurisdiction is hereby retained over the Parties and Class members for all matters relating to this litigation, including the administration, interpretation, effectuation, or enforcement of the Settlement and of this Order.

12.  Any appeal or any challenge affecting this Court's approval of the attorney fees and expense application shall in no way disturb or affect the finality of the Settlement Agreement.

13.  In the event that the Settlement is terminated or does not become Final in accordance with Paragraph 3 of the Settlement Agreement, this Order shall be rendered null and void.

14.  There is no just reason for delay in the entry of this Order.  The Clerk of the Court is directed to immediately enter this Order pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

---

[6] *See Newberg* § 15:87; *Enron,* 586 F. Supp. 2d at 799-803 (5.2 multiplier and $688 million fee award justified by "the unmatched size of the recovery, the obstacles and risks . . . and the skill and commitment exhibited by counsel") (collecting similar cases); *In re Credit Default Swaps Antitrust Litig.*. No. 13-md-02476, 2016 WL 2731524, at *17 (S.D.N.Y. Apr. 26, 2016) ($253.8 million fee and multiplier "just over 6" in case that settled *before* class certification); *In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-cv-00340, slip op., at *16-17 (D. Del. Apr. 23, 2009) (Doc. No. 543) (Order and Final Judgment Approving Settlement, Awarding Attorney Fees and Expenses, Awarding Representative Plaintiff Incentive  Awards, Approving Plan of Allocation, and Ordering Dismissal as to All Defendants) (one-third fee and 3.93 multiplier from $250 million fund; settled during trial); *Flonase*, 951 F. Supp. 2d at 750-51 (one-third fee and 2.99 multiplier from $150 million fund, explaining that one to four is the standard multiplier range).

DATED this 28th day of April, 2017.

BY THE COURT:

_____
JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE