Exhibit "2"

1    IN THE UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF COLORADO
2

Civil Action No. 90-cv-00181-JLK
3

MERILYN COOK, et al.,
4

     Plaintiffs,
5

vs.
6

ROCKWELL INTERNATIONAL CORPORATION and
7    THE DOW CHEMICAL COMPANY,

8         Defendants.
_____
9

10             **REPORTER'S TRANSCRIPT**
              FINAL FAIRNESS HEARING
11
_____
12

13        Proceedings before the HONORABLE JOHN L. KANE, Senior

14   Judge, United States District Court for the District of

15   Colorado, commencing at 11:09 a.m., on the 28th day of April,

16   2017, in Courtroom A802, United States Courthouse, Denver,

17   Colorado.

18

19

20

21

22

23             THERESE LINDBLOM, Official Reporter
              901 19th Street, Denver, Colorado 80294
24        Proceedings Reported by Mechanical Stenography
               Transcription Produced via Computer
25

1       **APPEARANCES**

2     MERRILL GENE DAVIDOFF, DAVID F. SORENSEN, and ELLEN

3 NOTEWARE, Attorneys at Law, Berger & Montague, 1622 Locust

4 Street, Philadelphia, Pennsylvania 19103-6365, appearing for

5 the Plaintiffs.

6     LOUISE M. ROSELLE, Attorney at Law, Markovits Stock &

7 De Marco, LLC, 3825 Edwards Road, Suite 650, Cincinnati, Ohio,

8 45209, appearing for the Plaintiffs.

9     STEVEN KELLY and GARY BLUM, Attorneys at Law, Silver &

10 DeBoskey, 1801 York Street, Denver, Colorado 80206, appearing

11 for the Plaintiffs.

12     NICHOLAS CHIMICLES, Attorney at Law, Chimicles &

13 Tikellis, L.L.P., 361 West Lancaster Avenue, Haverford,

14 Pennsylvania, 19041, appearing for the Plaintiffs.

15     KEVIN VAN WART and BRADLEY H. WEIDENHAMMER, Attorneys

16 at Law, Kirkland & Ellis, 300 North LaSalle, Chicago, Illinois

17 60654, appearing for the Defendants.

18

19

20

21

22

23

24

25

1              **P R O C E E D I N G S**

2           (In open court at 11:09 a.m.)

3           *THE COURT:*  We're apparently having some difficulty

4     with the sound system, so I shall speak as clearly as my

5     Stentorian training permits.  And I would ask counsel,

6     likewise, to bear in mind that there are people here who have

7     less than perfect hearing.  I'm one of them, but there are also

8     some in the spectator section.  And while we do have these

9     gadgets that are supposed to be able to help, they don't, and

10    they're not working.  So please speak up.

11          This is the final fairness hearing seeking approval of

12    the parties' settlement in Cook, et al. v. Rockwell

13    International Corporation and the Dow Chemical Company.

14          Counsel have done an excellent job of presenting the

15    settlement and responding to objections.  There are five

16    outstanding motions in the case.  The following three are

17    denied as moot:  Plaintiffs' motion for entry of judgment,

18    Docket No. 2367, which was filed August 4, 2015.  The

19    settlement agreement provides plaintiffs with the option of

20    proceeding with the amended version of this motion, Document

21    2371, upon non-payment by either defendant.  That's in the

22    agreement, paragraph 2, subsection (f)(i).  I still think it is

23    prudent to dismiss the motion as moot at this point and to

24    allow plaintiffs to refile, if necessary.

25          The defendants' motion regarding standards, Document

1    2378, filed September 10, 2015, is likewise denied as moot.

2    And defendants' motion for oral argument and leave to file

3    supplemental brief regarding class certification, Document

4    2387, filed November 9, 2015, is denied as moot.

5         The remaining two motions, class counsel's motion for

6    award of attorney fees, reimbursement of litigation payment,

7    and award of service payments to class representatives, that is

8    Document 2434, and plaintiffs' motion for final approval of

9    proposed class action settlement and approval of proposed plan

10   of allocation of the settlement fund, and that's 2458, these

11   are at issue and ready for determination.

12        I have a few preliminary findings and remarks I'm

13   going to make before asking counsel to address the Court.

14        This case has a long and convoluted history with which

15   we are all familiar.  The memorandum in support of class

16   counsel's motion for award of attorney fees, Document 2435,

17   contains a thorough summary in the first 18 pages, and the

18   decoration of Merrill G. Davidoff, 2335-2, recounts the history

19   in detail.

20        Most recently, the Tenth Circuit remanded the case in

21   June of 2015, and that's Document 2364, directing me to -- and

22   I quote -- "proceed to judgment on the existing nuisance

23   verdict promptly, consistent with resolving the outstanding

24   class action question, wary of arguments that have already been

25   rejected or forfeited."

1    Plaintiffs pursued compliance with that order by

2  filing the motion for entry of judgment.  The parties engaged

3  in extensive briefing; but before I ruled on the motion, they

4  notified me that they had agreed to settle plaintiffs' claims

5  and stipulated to certification of a settlement class.  That is

6  Document 2393.  I certified the settlement class with my orders

7  of May 19, 2016, Document 2396, and July 15, 2016, Document

8  2405, and preliminarily approved the settlement with my order

9  of August 5, 2016, Document 2416.

10    The Heffler Claims Group LLC, along with class

11  counsel, has since successfully implemented plaintiffs' notice

12  plan, as evidenced by the declaration of Jeanne Finegan,

13  Document 2432.

14    Attached to the settlement agreement are proposed

15  judgments against each of the defendants.  The agreement

16  provides, and I quote "The parties agree that these judgments

17  may be entered upon final District Court approval of the

18  settlement but not enforced except" upon non-payment of a

19  defendant.  And that's in the agreement at paragraph 2,

20  subsection (g).

21    Class counsel should address whether these judgments

22  are to be entered, since their proposed order granting final

23  judgment and order of dismissal approving class settlement and

24  dismissing class claims against defendants -- that is Document

25  2458-1 -- states that all claims against defendants are

1    dismissed with prejudice, without mentioning the judgments

2    attached to the settlement agreement, proposed order paragraph

3    9.  And if you need me to, I'll repeat that, if it's necessary

4    to do so.

5         I have received and scanned into the docket a number

6    of letters from both class members and non-class members, none

7    of which are valid objections to the settlement agreement.

8         I'll list them.  First is November 17, 2016.  William

9    D. Thomas says he objects to the settlement since he lived in

10   the area for 33 years but did not happen to own property there

11   on June 7, 1989.  Class counsel responded that Mr. Thomas is

12   not a class member, and so he does not have standing to object.

13   And it is, therefore, overruled.

14        I should point out that people who are not members of

15   the class are not bound by this case, and they're free to

16   initiate a case should they wish and the statute of limitations

17   permits that.

18        The second is November 17, 2016.  Elizabeth Gazda,

19   G-A-Z-D-A, requests a claim form.  Mr. Davidoff responded to

20   that.  Ms. Gazda was sent a claim form.

21        The next is January 6, 2017.  And I hope I pronounce

22   the name correctly -- Kenneth G. Niquette, N-I-Q-U-E-T-T, plans

23   to attend the hearing but does not intend to speak and does not

24   object to the settlement.

25        Next is February 1, 2017.  Jonathan Morris II believes

1    he is an heir of a class member and would like the documents to

2    file the claim.  He is a state prisoner and cannot access the

3    website.  He received written notice, but I know of no further

4    action relating to his statement.

5            The next is February 23, 2017.  Kathleen Snapp,

6    S-N-A-P-P, objects to the attorney fees requested because class

7    counsel took too long to secure a settlement for class members.

8    Class counsel's reply in further support of class counsel's

9    motion for award of attorney fees, Document 2460, addresses

10   Ms. Snapp's arguments, stating that she is mistaken about the

11   history of the litigation and the efforts of class counsel.

12           I concur fully with class counsel's response and

13   overrule this objection for the reasons stated in that

14   response.

15           The next is March 2, 2017.  Timothy C. Kotsay,

16   K-O-T-S-A-Y, plans to attend the hearing but does not intend to

17   speak and does not object to the settlement.

18           Good morning, Mr. Kotsay.

19           March 3, 2017.  Teresa L. Spinuzzi, S-P-I-N-U-Z-Z-I,

20   would like to be excluded from the settlement because she sold

21   her house and received a fair market price.

22           March 31, 2017.  Michael Anthony is an heir to a class

23   member and would like to know how he may be included in the

24   class.  I forwarded that information to counsel, and I don't

25   know what has happened to it.

1          April 21, 2017, more recently.  John Demos is an heir

2   of the Demos family of potential class members and incarcerated

3   at the Washington State Penitentiary.  I don't know what has

4   happened to him either.

5          Attached to the declaration of Edward J. Radetich,

6   R-A-D-E-T-I-C-H, Jr., 2459-3, an exhibit to plaintiffs' motion

7   for final approval of proposed class action settlement, are

8   three communications from class members wishing to opt out of

9   the class.  The one I've already mentioned from Teresa L.

10  Spinuzzi, one from Lynn McDowell Jacobson and Patricia

11  Jacobson, and one from Donald E. Harding.

12         Those are the documents or letters that have been

13  submitted to the Court, and they are now a matter of record.

14         I want to hear now from counsel with regard to the two

15  pending motions.  The first is plaintiffs' motion for final

16  approval of proposed class action settlement and approval of

17  plan of allocation of settlement fund, which is Document 2458;

18  and the second is class counsel's motion for award of attorney

19  fees, reimbursement of litigation expenses, and award of

20  service payments to class representatives, and that's Document

21  2434.

22         I prefer both of these motions be argued at the same

23  time or in seriatim rather than have the argument and make a

24  ruling.  I want to make my ruling on both motions after I've

25  heard all the statements.

9

1          I wish to emphasize a point which is already alluded

2     to by class counsel.  While there are two corporate defendants

3     named in this case, and both of them litigated vigorously,

4     indeed, relentlessly, in defending the claims both as to

5     liability and damages and at every stage of the proceedings,

6     the United States Department of Energy was the shadow

7     defendant.  The reasons for the length of this litigation and

8     the heightened degree of contention cannot be accurately

9     portrayed without reference to the influence and control of the

10    defense exerted by the Department of Energy.  Irrespective of

11    its motion or characteristics of conduct, I believe, based on

12    my years presiding over this case, that had the Department of

13    Energy conducted itself with greater candor and less

14    belligerence, a fairer settlement could have been achieved

15    much, much earlier.

16         While I have great admiration for the excellence of

17    counsel that significantly exceeds the standards and

18    expectations of professional competence, I would be remiss were

19    I not to observe that one lawyer who passed away during the

20    pendency of this case, Mr. Peter B. Nordberg, was truly

21    inimitable in his grasp and articulation of the many complex

22    issues presented.  It's regrettable that he is not here to

23    enjoy the fruits of his labor.

24         Class counsel have worked tirelessly over 27 years to

25    achieve the ground-breaking settlement I am considering today.

10

```
 1    And in view of their efforts, I will make some statistical

 2    comments once I have heard the comments of counsel.

 3             Mr. Davidoff, are you ready to proceed?

 4             MR. DAVIDOFF:  Yes, Your Honor.

 5             THE COURT:  Is anyone else going to address the Court

 6    on this matter?

 7             MR. DAVIDOFF:  I'm not sure, Your Honor.

 8             I think for the plaintiffs --

 9             THE COURT:  Mr. Van Wart, do you plan on saying

10    anything?

11             MR. WEIDENHAMMER:  Very briefly, Your Honor, we may

12    respond.

13             THE COURT:  All right.  You have the opportunity to

14    respond.

15             MR. DAVIDOFF:  Your Honor, just to clean up one

16    housekeeping thing that was mentioned by you in your

17    introductory remarks.  We have those proposed orders that were

18    attached to the settlement agreement.  But in the interim, both

19    Dow and Rockwell --

20             THE COURT:  Can you speak up, please.

21             MR. DAVIDOFF:  I'm sorry.  We had those proposed

22    orders that were attached to the settlement agreement.  In the

23    interim, several months ago, Dow and Rockwell made the

24    requisite settlement payments.  I then circulated to Mr. Van

25    Wart a proposed order and judgment that basically is revised,
```

1    took that into account.

2            *THE COURT:*  Okay.

3            *MR. DAVIDOFF:*  I have extras of that if you want us to

4    hand that up at some point to Your Honor's law clerk.

5            *THE COURT:*  Sure, that's fine.

6            *MR. DAVIDOFF:*  That would replace the two proposed

7    orders attached to the settlement agreement stipulated between

8    counsel.

9            Your Honor, I want to introduce these people here.

10   We've been on a very long journey.  An anecdote -- I know Your

11   Honor has, too.

12           An anecdote that I've told before is that my youngest

13   son, now 27, turned 27 earlier this week, was in his mother's

14   belly at the time that we filed the first complaint in this

15   case.

16           *THE COURT:*  I think Mr. Blum was preparing for his Bar

17   Mitzvah when this case began.

18           *MR. DAVIDOFF:*  We've been through the wringer.  I'd

19   like to introduce some of the many people here.

20           *THE COURT:*  Please do.

21           *MR. DAVIDOFF:*  Louise Roselle is here, co-trial

22   counsel; Gary Blum of Silver & DeBoskey and Steve Kelly,

23   co-trial counsel; Davidoff Sorenson; Caitlin Coslett, who has

24   been indispensable in the many appeals and arguments and briefs

25   that we've written since the trial.

1    Mykaila Nordberg, along with son Brinkley; I think

2    next to them is Marcy Glenn; Karen Marker, paralegal from my

3    law firm; Bill Schierkolk, one of the class representatives who

4    has stuck it out for 27 years; Dick and Sally Bartlett, class

5    representatives; Bruce DeBoskey, formerly of the Silver &

6    DeBoskey; and Merilyn Cook.  I'm sorry, I don't remember the

7    name of the gentleman sitting next to Merilyn, but he has every

8    right to be here.

9    We have many class members here.  Over here is Edward

10   Radetich, who is head of the administrative firm.  Who am I

11   missing?  Ellen Noteware, who is one of our trial team.  Nick

12   Chimicles, who I don't think we have seen much of, one of the

13   team of counsel in this case.

14   And I apologize to anybody that I missed.

15   And I'll also briefly report that we have received --

16   although they're not all valid, but we've already received

17   6,860 claim forms in this case, and we still have over a month

18   to go before the claims deadline of June 1.

19   Mr. Radetich is here to answer any questions that Your

20   Honor may have.

21   In this circuit, appraising a proposed class

22   settlement implicates the four *Gottlieb* factors.  That's been

23   thoroughly briefed, so I hope Your Honor will indulge me to

24   make a few comments about each.

25   The first one is whether the proposed settlement was

1    fairly and honestly negotiated.  And I would point out that for

2    over 26 years, defendants' insistence that the Department of

3    Energy had to pay any settlement was a completely -- it was an

4    obstruction that could not be overcome.  We've had intermittent

5    talks with the DOE over those many years.  It was -- it was

6    like -- I think I said to Mr. Van Wart, it was like negotiating

7    with an octopus; but I think you could do a little bit more

8    with the octopus than the Department of Energy.

9        We had a 20-year frustrating history with the DOE.

10   After the contempt hearing and holding in 1995, one of the next

11   times after the failed mediation that we mentioned in our

12   papers was after the trial, after we had gotten the verdict --

13   and I believe after we had gotten the judgment, there was an

14   order I believe of the Tenth Circuit that mandated that the

15   parties had to talk settlement.  So I did mention that to

16   Mr. Bernick in one of our -- who was still lead counsel -- in

17   one of our telephone conversations.  And his response was, "You

18   won't collect a nickel in this case."

19       We didn't have any more discussions.  I will say that

20   David Aemmer, the Tenth Circuit mediator in both cases, made

21   valiant efforts to try to get discussions going.  But for some

22   of the reasons that Your Honor is familiar with and that I've

23   mentioned, it was not possible, and those could go nowhere.

24       So sort of paraphrasing what Your Honor said in his

25   first published opinion in this case, the settlement

1    negotiation history of this case is "not pretty."

2         There was a -- finally, in early 2016 and in the midst

3    of another mediation, there was a sea change in the defendants'

4    attitude, because we were not going to settle unless we had a

5    binding settlement with the corporate defendants, Dow and

6    Rockwell/Boeing, they were not going to settle with the

7    Department of Energy, dependent upon some congressional

8    appropriation and wending its way through the Byzantine

9    bureaucratic path.  And the defendants finally agreed in early

10   2016, if DOE did not pay a settlement, they would stand behind

11   their share of the settlement payments.  And that's reflected,

12   as Your Honor knows, in the settlement agreement.

13        That was the final hurdle.  That and the money,

14   $375 million, which even today is not chump change, were the

15   deciding factors and, finally, after 27 years, bringing this

16   very difficult negotiated settlement and this litigation to an

17   end.

18        The next *Gottlieb* factor is that serious questions of

19   law and fact remain.  Well, the history leading up to the

20   second set of petitions and cross-petitions for writ of

21   *certiorari* following the second -- then Judge now Justice

22   Gorsuch, at that time, Your Honor had ruled against us in

23   January of 2014 on the preemption issue and basically thrown

24   our case out.  Judge Gorsuch reversed that in his majority

25   opinion.  There were four sets of motions on remand before Your

1    Honor which had not been decided.  And there were conflicts,

2    apparent and actual conflicts, between the circuits on issues

3    of preemption that were implicated completely in the pending

4    *certiorari* petition.  So there were huge risks that remained

5    for us.

6           And this case was settled literally on the eve of the

7    conference date the Supreme Court was going to hold on the

8    second set of *certiorari* petitions to determine whether they

9    would either accept the defendants' petition for *certiorari* or

10   our cross-petition for *certiorari*.

11          The next *Gottlieb* factor is the value of immediate

12   recovery.  And I want to stress this one.  Yes, we've been at

13   it for 27 years; but if we had not settled the case, three to

14   five more years of litigation would have ensued between the

15   appeals and all the other motions and all the other work.

16          We had already lost hundreds, perhaps thousands, of

17   class members during the long pendency of this litigation.  The

18   class members were aging, some of them were in ill health, even

19   we lost some of our class representatives.  And, frankly, that

20   was a deciding factor in accepting this settlement:  The need

21   to get money to these class members while they were still here

22   to enjoy it, and if they had passed away, at least while we

23   could find their heirs.  So the value of immediate recovery is

24   a little different than any other case.  It's not immediate

25   recovery; it's 27 years instead of 32 years.

1     And as Mr. Radetich could explain, we're going to be

2  taking expedited steps to manage the claims to try to get an

3  initial payment out to the class members -- the class members

4  whose claims are verified as soon as possible.  There will be

5  at least two payments to class members in this case, and the

6  objective will be to expedite the first payment to class

7  members.  We're already working very hard on that.

8     The last *Gottlieb* -- a couple of other things on the

9  value of immediate recovery.  There have been many changes in

10  the law during the 27-year history in this case.  In the next

11  three to five years, there could have been other changes in the

12  law that could have been unfavorable to us.  The net of more

13  than $200 million that will go to class members exceeds the

14  compensatory damages found by the jury.  That's despite the

15  fact we already lost the trespass claim, we already lost the

16  punitives claim, and we still had serious issues on appeal, and

17  there could have been a potential third appeal to the Tenth

18  Circuit Court of Appeals.  Those were all of those motions

19  pending before Your Honor.

20     The last *Gottlieb* factor is the judgment of the

21  parties that the settlement is fair and reasonable.  And I

22  think the judgment of the parties and the reaction of the class

23  here is telling.  There are no objections other than from, I

24  believe, a class -- a non-class member who lived outside the

25  class area.  Nobody's objected, and we've gotten a lot of

1    praise from class members for the fact that we stuck this out

2    for 27 years to get a recovery for them.

3           If -- can I move on to the plan of allocation, Your

4    Honor?  Unless you have some questions.

5           THE COURT:  No, I don't.  Thank you.

6           MR. DAVIDOFF:  Okay.  The plan of allocation, which is

7    a separate order -- there is actually five orders we're asking

8    Your Honor to at least examine and determine whether you're

9    going to sign them.  The first is approving the settlement.

10   The second on the settlement is the plan of allocation.

11          Your Honor will recall that Wayne Hunsperger was the

12   property expert at trial.  He's been working on this.  We are

13   following precisely the jury's award of damages in our plan of

14   allocation.  It's the same as the plan that Your Honor approved

15   in 2008 and the first Tenth Circuit Court of Appeals found that

16   it satisfied the *Strey* factors for finality and precisely

17   tracks the jury's award of damages.

18          At least -- again, if there are no objections to the

19   plan of allocation, again, there are going to be at least two

20   rounds of payments to get dollars to the class representatives.

21   The number of claims at 6,860 is already pretty high, and the

22   Finegan affidavit -- that's from Mr. Radetich's firm, Heffler

23   firm -- makes clear that we had 84 percent nationwide

24   penetration and up to 97 percent penetration in the Denver and

25   Colorado markets.  We've done, I think, an amazing job at

 1      getting notice to the class.

 2              THE COURT:  Well, it significantly exceeds any other

 3      class action with which I'm familiar in that regard.

 4              MR. DAVIDOFF:  Right.  We're trying to make it as high

 5      as possible so the people who are the heirs of the class

 6      members can get what is coming to them, what they've waited so

 7      long.

 8              Does Your Honor have any further questions about the

 9      plan of allocation?

10              THE COURT:  No, I don't.

11              MR. DAVIDOFF:  The third thing I wanted to address

12      were the service awards for the class representatives.

13              First of all, they were the impetus for the entire

14      case.  Had they not gone to Bruce DeBoskey many years ago, had

15      Bruce not brought our firm in and others, there would be no

16      recovery -- there would have been no case, and there would be

17      no recovery.

18              There were many meetings with the class

19      representatives.  One notable meeting, Your Honor, was after

20      the first Tenth Circuit decision in 2010.  Less than a month

21      later, we had a meeting with the class representatives.  And

22      the strategy that was followed from then on, that ultimately

23      resulted in Judge Gorsuch's opinion reversing Your Honor, was

24      decided at that meeting in consultation with the class

25      representatives.

1          They responded to extensive discovery.  They've

2     attended key hearings, and most of them attended almost every

3     day of the four-month trial.  They testified at trial.  And

4     it's hard to really in a short while signify just how

5     supportive these class represents are.

6          Let me give you a couple of examples, big and small.

7     Merilyn Cook was living in Missouri.  And in 1998, the

8     Department of Energy put forward in Congress a bill that would

9     have extinguished our lawsuit eight years after it started.

10    And Merilyn in her plucky way -- I guess that's the only way I

11    can describe it, plucky -- got herself into then Senator

12    Ashcroft's office, later Attorney General under George W. Bush,

13    and pleaded the case that it was unfair for our case to be

14    extinguished by legislation eight years after it began.

15    Senator Ashcroft agreed with her.  While we don't know

16    everything that went on in the judiciary committee, of which he

17    was a member, that bill was killed in the Senate in 1998.  I

18    thought a bold and outlandish effort by a government agency to

19    outlaw something that was legal for the first eight years of

20    the case.

21         Dick and Sally Bartlett, while they had the property,

22    they hosted the many meetings we had with Bruce DeBoskey and

23    later Gary Blum and I.

24         You know, even a small thing -- let me give Your Honor

25    a real small example.  During the four-month trial, I got ill

1    and came down with a pretty bad cold.  And Bill Schierkolk, who

2    is back here, would come in every morning with a tube of

3    Airborne to try to keep me afloat.  So they -- they literally

4    have supported this case, because in every -- in every respect,

5    big and small.

6         They've earned -- certainly, it is a very high class

7    representative service award, but it's not as high as the

8    *Revco*, R-E-V-C-O, case that we cited in our brief, which is

9    also one of our cases.  We've cited many other cases where

10   there were awards of 100,000 to 200,000 in much shorter, much

11   less arduous cases.  And there are no objections.  So we

12   respectfully ask Your Honor to sign the order that we submitted

13   on the service awards for class representatives.

14        Should I move on, Your Honor?

15        The next order we sought was on the expenses of

16   litigation.  And as Your Honor knows, counsel carried this case

17   for 27 years.  While it was primarily my firm, other firms

18   kicked in, the Schneider firm, and I want to mention Chimicles

19   firm.  Because when we needed money, Nick was probably the only

20   one willing to write a check to help us out, of the team.  And

21   there are no objections to the award of actual expenses.  This

22   is routine in class actions.  The dollars have been expended

23   over many years.

24        And we respectfully request that Your Honor sign the

25   separate order on expenses.

1          I need to get a little water, excuse me.

2          THE COURT:  I don't have Airborne, but if you need

3     Irish whiskey.

4          MR. DAVIDOFF:  He kept me going with the Airborne,

5     Your Honor.  And I just wanted him to know, I still remember.

6     I didn't forget it.

7          Finally, I come to the application for attorney fees.

8     Let me just observe at the outset that as lead counsel in this

9     case and lead of the Berger & Montague team, I am extremely

10    proud, extremely proud, of the work that we and co-counsel did

11    in this case.  We met every challenge and reversal of fortune,

12    of which there were many, with renewed determination and

13    purpose and diligent and creative work on behalf of the class.

14         I'd like to mention a little bit about the firms that

15    worked on this case.  I'll come back to my firm, perhaps, a

16    little later, if we have time.  Silver & DeBoskey, of course,

17    was the firm that -- the local firm that dealt with class

18    representatives, dealt with many of the exigencies of

19    litigation, and supported us throughout, first under the

20    leadership of Bruce DeBoskey, and later -- and Steve Kelly, and

21    later under the leadership of Gary Blum and Steve Kelly.  While

22    I'm thinking about it, I'm thinking Steve may be one of the

23    only other attorneys that has been in the case since the very,

24    very beginning.

25         The Markovits, Stock & De Marco firm, this is Louise

1    Roselle's new firm, with Paul De Marco.  Louise, as you know,

2    has been very valuable since the history of this case, and Paul

3    has been very valuable on the appeals.  He's an appellate

4    lawyer.  Waite, Schneider, Bayless & Chesley firm, while they

5    weren't active throughout the whole 27 years, they came through

6    when it counted when they sent Louise Roselle -- who is a

7    tremendously experienced and talented lawyer -- and associate

8    Jean Geoppinger to assist us.  She was an important part of the

9    trial team.

10          I mentioned Nick Chimicles.  And Nick -- he wasn't as

11   visible to Your Honor, but their firm took depositions,

12   important depositions in this case, did a lot of document

13   discovery in this case, and they paid expenses that were sorely

14   needed in this case.  As you know from our declaration and the

15   figures, my firm was sorely strapped.  When we could get help

16   from the other firms, we needed it.

17          MoloLamken was Supreme Court counsel in the two rounds

18   of -- two rounds of *certiorari* briefing.  Other than Peter

19   Nordberg, I've never seen writers of that caliber, not with the

20   same artistic flair of Peter Nordberg, but tremendous legal

21   writers.  And they were very, very helpful, and they came into

22   the case on a contingent basis, as did the other firms.

23   Connerton, Ray & Simon firm was involved earlier on.  Taylor,

24   McNew, and Jacobsen are part of the Chimicles group.  And

25   Holland & Hart, that was Marcy Glenn, who assisted us in the

1    first round of appeals in this case.

2            THE COURT:  You know, I'm sorry to interrupt you.  I

3    have to tell you about Marcy Glenn.  She was a law clerk in

4    this court -- this case is older than she was a lawyer.

5            MR. DAVIDOFF:  I think it's older than a lot of us.

6    It's not older than me, but it sort of feels older than me.

7            What were the challenges?  As Judge now Justice

8    Gorsuch observed in the second Tenth Circuit opinion, it took a

9    titanic 15 years to get this case to trial.  But those were not

10   15 quiescent years.  For those 15 years, we were at battle with

11   the defendants every year, many -- Your Honor knows from all

12   the opinions and motions, many motions, many contests.  And

13   we -- they were years of constant battle with defendants and

14   with their indemnitor, DOE.

15           Since the four-month trial, the case has taken a

16   lengthy journey through and among the District Court, Your

17   Honor, the Court of Appeals, and twice to the Supreme Court.

18           We overcame what seemed to be a case-ending Court of

19   Appeals decisions in the first appeal.  Within less than a

20   month, we, the lawyers and the class representatives, agreed on

21   a strategy that ultimately proved successful on the second

22   Tenth Circuit Court of Appeals appeal, our appeal.

23           As late as 24 years after this case started, Your

24   Honor reluctantly ruled against us in January of 2014 and threw

25   out the entire case.  And on remand from the Tenth Circuit's

1    first decision, we were back at zero, with only our appeal of

2    Your Honor's decision as the one thing that we could hang our

3    hats on.  We stipulated to a final judgment so that we would

4    get finality on Your Honor's decision.

5         The second appeal was briefed at a time when

6    preemption was a huge issue on nuclear claims and

7    Price-Anderson claims.  Judge Gorsuch's decision in our favor

8    was a departure from decisions in other circuits that Your

9    Honor had cited in his January 2014 ruling.

10        Finally, our first-started serious settlement talks,

11   which took seven months, we protected the class by requiring

12   Dow and Rockwell/Boeing to be answerable for the settlement

13   payment so that DOE could not gum up the works and providing

14   penalties that they did not pay the settlement payment on time,

15   which they did.

16        Let me talk a little bit about the quality of

17   representation.

18        Louise Roselle is one of the most noted toxic tort

19   lawyers in the United States.  Eric Cramer and David Sorenson,

20   who spent many hours on this case, are now both members of the

21   executive committee of my firm, so they are now senior lawyers

22   in my firm, having started working on this case when they were

23   associates.

24        The late Peter Nordberg could turn legal writing into

25   an art and fix the reader's attention on the words on the

25

1    written page.

2            Even our best paralegal, Karen Marker, was deeply

3    engaged in the trial of this case, and since then.  And

4    Jennifer McNaughton, Ellen Noteware, and Caitlin Coslett of my

5    firm, who Your Honor did not see, but she has worked tirelessly

6    on the appeals in this case.

7            Other firms contributed as well, as I have detailed

8    previously.

9            Our trial team was a lot smaller than the defense --

10   defendants' team, but we gave as good as we got.

11           And, you know, some firms have C teams and B teams and

12   A teams.  And there is no C lawyers in my firm, I'll tell Your

13   Honor that.  I guess we have a few B lawyers, and we have a lot

14   of A lawyers, A-team lawyers.  But what the class got in this

15   case were the A-plus team of my firm.  And I guess immodestly,

16   I have to include myself in that group, as well.

17           The 40 percent fee we're asking for, while it would be

18   a significant fee in most class actions, this class action is

19   absolutely unique.  I mean, there are literally -- I don't

20   think -- I'm not aware of a class action that has been going on

21   as long as this one.

22           The one analog that we cited in the papers, Your

23   Honor -- this was my case also.  This was a case called the

24   Melridge case.  In that case, we had a four-month trial, we got

25   a verdict and ultimately a judgment.  There was an appeal by

 1   the defendants.  I argued the appeal.  One of the members of

 2   the panel was Judge Tang, who unfortunately passed away shortly

 3   after the argument and before a decision was rendered.  The

 4   Ninth Circuit appointed another judge to be the third judge on

 5   the appeal but told us that they would not hear reargument.  As

 6   a result, only of that, nine months after I argued the appeal,

 7   we settled the case.

 8            On remand, Judge Frye, then Judge Frye, of the

 9   District of Oregon awarded us a 40 percent fee, which we

10   thought was well earned.  And in the subsequent settlements, of

11   which there were a couple of small ones, we also got a

12   40 percent fee.  And we even got a total 37 percent fee on the

13   settlements, including the pretrial and during trial

14   settlements.

15            We have some other cases that we cited.  Does Your

16   Honor want me to go through those cases?

17            *THE COURT:*  I've read everything you cited.  I have

18   particularly in mind Judge Lungstrum's case in Kansas, which is

19   somewhat similar to this case, in terms of the years it took to

20   litigate it.

21            *MR. DAVIDOFF:*  Right.

22            Anyway, I'll close my submission on the fees by

23   saying, I think we earned this fee, and I think the class

24   members and class representatives by and large wholly agree

25   with that.

1          I know there was one objection.  I don't -- I think

2    we've addressed that objection, as Your Honor said, in our

3    reply brief.

4          Finally, I have to say one thing about Your Honor and

5    the Court and the many law clerks that worked on this case.  I

6    think this was probably the hardest and longest case in Your

7    Honor's judicial career.  You worked with extraordinary

8    diligence on this case for 24 of the 27 years.  We always felt

9    that we were getting a fair hearing from the Court.  And even

10   when Your Honor ruled against us at various stages of this long

11   case, we never felt Your Honor was giving anything less than

12   maximum effort and maximum diligence to assure us a fair

13   hearing.  And we thank Your Honor and the Court --

14          *THE COURT:*  Thank you.  Thank you very much.

15          The one thing I haven't done is find out how many of

16   my former law clerks have decided to become lumberjacks.

17          *MR. DAVIDOFF:*  It might be a more remunerative

18   profession now.

19          *THE COURT:*  Okay.

20          Mr. Weidenhammer.

21          *MR. WEIDENHAMMER:*  Brad Weidenhammer on behalf of

22   defendants, Your Honor.

23          *THE COURT:*  All right.

24          *MR. WEIDENHAMMER:*  I'm pleased to report we have no

25   objection to any of the motions.  But I did want to take a

1    moment to echo Mr. Davidoff's final comment and thank the Court

2    and court staff for the many years of service in this case.  I

3    wasn't a part of most of those years.  From the record, it is

4    apparent there was a great deal of effort, a great deal of

5    research and legal writing and work by the Court that enabled

6    this litigation to proceed, and we appreciate it.  Thank you,

7    Your Honor.

8          THE COURT:  Thank you very much.  Thank you for being

9    here.

10          I have said already this morning that I have the

11    highest regard for counsel in this case, and that certainly

12    includes defense counsel.

13          Later today I intend to issue written orders on the

14    pending motions, but I will summarize my findings now.

15          Adequate notice has been given to class members, and

16    they have had the full opportunity to participate in these

17    proceedings.  The settlement agreement is the result of arm's

18    length negotiations conducted in good faith; and I find it is

19    fair, reasonable, and adequate.  Thus, I approve the proposed

20    class action settlement and the proposed plan of allocation of

21    settlement funds as proposed by class counsel.

22          The second motion, Document 2434, is the motion for

23    award of fees, including attorney fees, reimbursement of

24    litigation expenses, and award of service payments to class

25    representatives.

1            I wish to emphasize a point already alluded to by

2     class counsel.  While there are two corporate defendants named

3     in this case, and most of them litigated vigorously, indeed,

4     relentlessly, in defending the claims both as to liability and

5     damage at every stage in the proceedings, the United States

6     Department of Energy was a shadow defendant and the cause of

7     most, if not all, of the lack of progress and the additional

8     work that was put into this case.

9            Class counsel have worked tirelessly over 27 years to

10     achieve the ground-breaking settlement I am approving today.

11     And reviewing their efforts, I found that the following

12     statistics are particularly remarkable -- I might point out

13     that the one objection to the attorney fees that was filed by

14     Ms. Snapp, I -- she's just clearly mistaken as to how much work

15     went into or why it went in.  It was not, certainly, in the

16     interest of the attorneys in this case to cause it to take 27

17     years.

18            Consider the following:  Class counsel took 99

19     depositions of fact witnesses, resulting in 22,539 pages of

20     testimony, and defended or attended 52 other depositions.  The

21     parties also conducted 46 expert witness depositions.  I have

22     never in the years that I have been both a lawyer and judge

23     encountered the degree of technicality and complexity and

24     sophistication of expert witnesses as took place in this case.

25            Class counsel and the class representatives responded

1    to 35 sets of discovery requests encompassing 730

2    interrogatories, 729 requests for production, and 88 requests

3    for admissions.

4            The trial lasted four months, from 2005 into 2006, and

5    had over 300 substantive motions filed during it.  A total of

6    385 exhibits, 200 demonstrative or graphic exhibits, and 21

7    videos were admitted into evidence.  Forty-one witnesses

8    testified, and the transcript of the trial is over 10,000 pages

9    in length.

10           The case was appealed to the Tenth Circuit twice, and

11   the parties have participated in two rounds of Supreme Court

12   *certiorari* petition briefing.  The $375 million settlement is

13   the largest of any Price-Anderson Act lawsuit in history.

14           Further, the Montague firm expended 121,258 hours on

15   this case.  And in total, class counsel devoted 160,381 total

16   hours to representing the class.

17           Class counsel spent a combined total of $7,094,863.65

18   out of pocket to pursue this litigation.  And there are

19   currently, I think a record in this court, 2,465 docket

20   entries.

21           Class counsel's representation has clearly benefited

22   the class, and they are entitled to a fee paid out of the

23   common fund.  The requested fee of 40 percent, or $150 million,

24   is 2.41 times the total lodestar amount of $62,134,107 for

25   160,381 hours.  And I find it to be reasonable, appropriate,

1   and within the range that these percentage fees are awarded, as

2   is demonstrated by the expert that was -- his report was filed

3   with the Court -- his name escapes me at the moment, but the

4   expert from the University of Texas.

5          MR. DAVIDOFF:  I'm sorry, Your Honor.  I forgot to

6   mention Professor Silver's affidavit, upon which we also rely.

7          THE COURT:  Yes, I found his report to be very

8   persuasive.

9          Now, there is one minor thing I want to point out, and

10   that is:  In the written order I will issue today, I have

11   chosen to handle the fees owed to Waite, Schneider, Bayless &

12   Chesley differently than recommended by class counsel.  I will

13   not become further involved in the so-called real party at

14   interest dispute with Mr. Chesley's judgment debtors.

15          I think I should add that I have a somewhat

16   idiosyncratic view of this, because Supreme Court opinions are

17   no exception, appellate court opinions, other trial courts, and

18   the briefs in this case are no exception to the fact that

19   people consistently misuse the term "attorneys' fees."  It is

20   written -- the motion itself is attorney Y apostrophe S or

21   attorneys, S apostrophe.  The fees do not belong to the

22   attorneys.  And this whole business with this attempt at a real

23   party in interest is evidence of that, and it is caused by this

24   confusion.  The fees are labeled as attorney fees, and attorney

25   in this sense is an adjective, not a noun.  Attorney fees

1    belong to the clients, and the Court is authorized to determine

2    on the benefit -- for the benefit of that class what is a fair

3    and reasonable amount that should be owed to the attorneys.

4    And until I determine what it is, none exists.

5           There is no possibility of having a garnishment of

6    this claim from some judge in Kentucky, and it's not going to

7    be done.  I will issue the order, and the order will require it

8    to be paid to that -- that particular portion, not held in

9    escrow, but paid to the receiver of that law firm.  And it's up

10   to anyone that wants it to go make their claims there.  They're

11   certainly not going to make it in this court.

12          In addition to attorney fees, class counsel requests

13   service payments totaling $780,000 for class representatives

14   and reimbursement for expenses in the amount of $7,094,863.65.

15   For their 27 years of service in this case, responding to

16   discovery requests, sitting for depositions, and attending

17   court proceedings -- and as I learned today, saving this case

18   from legislative practice decision -- class representatives

19   have more than earned the proposed awards.  The expenses of

20   class counsel were fairly, reasonably, and necessarily incurred

21   to benefit the class; and reimbursement in that amount is

22   proper.

23          Lastly, I want to recognize the truly extraordinary

24   civic service rendered by the members of the jury in this case.

25   They served with considerable personal sacrifice and

 1   distinguished themselves by their dedication.  I was privileged

 2   to work with them and to know them.  For anyone who asks about

 3   the future of trial by jury in this country and whether it

 4   should be defended at all costs, my response is this:  Look to

 5   the jury in Cook v. Rockwell and be proud and be grateful.

 6           Those are my formal findings.

 7           I have a -- something that came up in your comments,

 8   Mr. Davidoff.  I have a request for you as a personal matter.

 9   Would you kindly send Mr. Bernick a nickel with my compliments.

10           MR. DAVIDOFF:  Judge, he's moved on.  But if I find

11   him, I'll personally --

12           THE COURT:  Now, would you come up here for a minute,

13   please.

14           MR. DAVIDOFF:  I'm sorry?

15           THE COURT:  Mr. Davidoff, I have something for you,

16   sir.  It's a copy of *Bleak House*, and it is not quite as long

17   as the brief you made me read in this case.

18           MR. DAVIDOFF:  I'll be delighted to read this, Your

19   Honor.  Thank you very much.

20           THE COURT:  I signed it, but Charles Dickens isn't

21   around.

22           MR. DAVIDOFF:  Thank you, Your Honor.

23           THE COURT:  Is there anything else?

24           MR. DAVIDOFF:  No, Your Honor.  The only thing I would

25   mention is, we did submit five proposed orders splitting up the

 1  plan of allocation, settlement, expenses, service payments, and

 2  fees.

 3          THE COURT:  Yeah, I have those orders.

 4          MR. DAVIDOFF:  The new one is only on the settlement.

 5  We would like to have the orders separate, because if something

 6  holds up the finality of one order, it doesn't hold up --

 7          THE COURT:  We'll do that.

 8          MR. DAVIDOFF:  Thanks for your time and service in

 9  this case.

10          MR. SORENSON:  Very briefly.  David Sorenson.  I want

11  to say what a privilege it was to be part of this case in front

12  of Your Honor.  It was my first trial.  It was quite something,

13  and I appreciate --

14          THE COURT:  Well, I suppose I should tell you, I am

15  the fifth judge on this case, I think -- the fourth --

16          MR. DAVIDOFF:  Third, not including the magistrate

17  judges.

18          THE COURT:  Well, I get called down for not calling

19  them judges.  I'll call -- anyway, I was a fairly young man

20  when this case started.  I can't say I'm glad it's over, but I

21  am relieved that it's over.

22          MR. DAVIDOFF:  Thank you, Your Honor.

23          (Applause.)

24          (Recess at 12:06 p.m.)

25

35

1                         REPORTER'S CERTIFICATE

2

3         I certify that the foregoing is a correct transcript from
the record of proceedings in the above-entitled matter.

4

5         Dated at Denver, Colorado, this 9th day of May, 2017.

6

7         _____

8                   Therese Lindblom,CSR,RMR,CRR

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25