**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, *et al.*,

       Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

       Defendants.

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' AND CLASS COUNSEL'S
UNOPPOSED MOTION FOR AN INITIAL DISTRIBUTION
OF THE NET SETTLEMENT FUNDS**

# TABLE OF CONTENTS

BACKGROUND ............................................................................................................................ 1

    I.    Settlement Agreement ...................................................................................................... 1

    II.   Claims Administration .................................................................................................... 3

DISTRIBUTION OF SETTLEMENT FUNDS ............................................................................. 5

    I.    Late, Yet Otherwise Eligible Claims Should Be Accepted ............................................... 5

    II.   Ineligible Claims Should Be Rejected .............................................................................. 6

    III.  Initial Distribution ............................................................................................................. 6

        A.    Calculation Methodology for the Initial Distribution .................................................... 7

        B.    Future Distributions ........................................................................................................ 8

CONCLUSION ............................................................................................................................... 9

Pursuant to the "Order for Final Approval of Proposed Class Action Settlement and Approval of Proposed Plan of Allocation of the Settlement Fund," ECF No. 2471, and the Plan of Allocation approved therein (*see* ECF No. 2407-2), Plaintiffs and Class Counsel respectfully move for an Order (1) approving awards to Claimants who submitted late, otherwise eligible claims that were approved by the Settlement and Claims Administrator ("Claims Administrator") as of October 6, 2017; (2) approving the administrative determinations of the Claims Administrator rejecting ineligible claims; (3) approving an initial distribution from the Net Settlement Fund to Class members whose Claims have been approved as of October 6, 2017; and (4) barring further claims against the Settlement Fund unless a claimant has a reasonable explanation for lateness.  In any event, Plaintiffs and Class Counsel respectfully submit that all claims received after December 31, 2017 should be barred.

Pursuant to Local Rule 7.1A, Class Counsel has conferred with counsel for Defendants, who stated they do not oppose the motion.

## BACKGROUND

**I.     Settlement Agreement**

On May 18, 2016, Plaintiffs[1] and Defendants[2] entered into a Settlement Agreement (the "Settlement Agreement"), which was filed at ECF No. 2401.  The Settlement Agreement provided for settlement of the above-captioned action on behalf of a Settlement Class defined as:

> [A]ll persons and entities who have not previously opted out or who do not timely opt out of the class and who owned, as of June 7, 1989, an interest (other than mortgagee and other security interests) in real property situated within the Property Class Area . . . exclusive of governmental entities, Defendants, and Defendants' affiliates, parents, and subsidiaries.

---

[1] The "Plaintiffs" or "Class Representatives" are Merilyn Cook, Richard and Sally Bartlett, and William and Delores Schierkolk. Delores Schierkolk is deceased, but William Schierkolk is her heir and representative.
[2] Defendants are The Dow Chemical Company ("Dow"), and The Boeing Company as successor-in-interest to defendant Rockwell International Corporation ("Rockwell").

1

*Id.* at 4.

The Court certified the Settlement Class for purposes of settlement on May 19, 2016. ECF No. 2396.  On August 5, 2016, the Court granted preliminary approval of the Settlement Agreement.  ECF No. 2416.  In the same Order, the Court granted preliminary approval of Plaintiffs' Proposed Plan of Allocation of the Settlement Fund, and approval of Plaintiffs' Proposed Forms and Manner of Notice to the Class ("Notice"), and Plaintiffs' Proposed Claim Form.  *Id.*  The Court also appointed The Huntington National Bank as Escrow Agent for the Settlement Agreement (ECF No. 2418), and appointed Heffler Claims Group as Settlement and Claims Administrator, (ECF No. 2417).  *Not one* Class member objected to the fairness of the proposed Settlement following a comprehensive notice program that included 28,179 individually mailed long form notices, plus an extensive publication notice campaign that included: (1) an informational settlement website (www.RockyFlatsSettlement.com) on which the notices and other important Court documents are posted; (2) a toll-free information phone line for Class members to call 24 hours a day, 7 days a week for more information about the Settlement, including but not limited to requesting copies of the long form notice and Claim Form; (3) publication of the Court-approved short-form notice in nationally circulated consumer magazines; (4) publication of the Court-approved Summary Notice in Denver and Colorado newspapers; (5) television commercials aired nationwide on cable networks; (6) television and radio commercials aired on network affiliate and cable networks in the Denver DMA; (7) online display banner advertising with a nationwide reach; (8) online video advertising with a nationwide reach; (9) advertising on mobile websites and applications specifically targeted to reach potential Class members; (10) social media advertising through Facebook and Twitter with a nationwide reach; (11) native advertising on premium internet properties with a nationwide

2

reach; (12) third party outreach to a community action group, Downwinders, and medical providers asking them to share and distribute the Summary Notice; and (13) a multimedia press release issued nationwide. *See* Declaration of Jeanne C. Finegan, APR Concerning Implementation and Adequacy of Class Member Notification (ECF. No. 2432), at *e.g.*, ¶ 6. Following the final fairness hearing on April 28, 2017, the Court granted final approval of the Settlement Agreement and the Plan of Allocation on April 28, 2017. *See* ECF No. 2471. No appeals were taken from that final approval.

## II.      Claims Administration

Pursuant to the terms of the Settlement Agreement and Plan of Allocation, a Net Settlement Fund of $207,125,136.35 was established for the payment of valid claims to Claimants.[3] As provided by the Plan of Allocation, 3.196% of the Net Settlement Fund is allocable to commercial property claims; 81.537% is allocable to residential property claims; and 15.267% is allocable to vacant land claims. *See* ECF No. 2407-2. Pursuant to the Court-approved Notice and Plan of Allocation, all Class members were required to submit Proofs of Claim by mail or through the official settlement website.

As set forth in the accompanying Declaration of Edward J. Radetich Jr., CPA ("Radetich Declaration"), the Claims Administrator receives and reviews all submitted Claims and mails a letter to each Claimant to confirm receipt and provide an assigned claim number. Radetich Declaration ¶ 4. An example of the confirmation letter is attached as Exhibit A to the Radetich Declaration. As of October 6, 2017, the Claims Administrator has received a total of 10,316 claims as follows: 8,079 paper claims were received by mail, and 2,237 claims were submitted

---

[3] This is equal to the $375,000,000 gross settlement fund less attorney fees of $150,000,000, reimbursed litigation expenses of $7,094,833.65, service payments to the Class Representatives totaling $780,000, and a set aside for claims administration expenses of $10,000,000 (which money is not all spent, and any money not spent will be returned to the Net Settlement Fund at a later date).

3

electronically through the official settlement website. *Id.* ¶ 3. Each claim is reviewed by a Claims Administrator analyst and entered into a claims database. The Claims Administrator reviews all claims and accompanying documentation and compares each claimed property to the list of Class properties provided to the Claims Administrator by Plaintiffs' property expert, Wayne Hunsperger, who worked with Dr. Mark McNulty of Pacey Economics, Inc., on the claims administration process.[4] The list of Class properties was obtained from Jefferson County, Colorado, by Wayne Hunsperger and Dr. McNulty. *See* Declaration of Wayne Hunsperger ("Hunsperger Declaration"), at ¶ 4.

After reviewing each claim, the Claims Administrator mails deficiency letters to each Claimant who submitted a claim that lacks certain required information and/or supporting documentation but is otherwise valid. Radetich Declaration ¶ 6. As of October 6, 2017, the Claims Administrator has mailed deficiency letters to 2,366 Claimants. *Id.* Also as of October 6, 2017, the Claims Administrator has received 2,117 written responses to deficiency letters. *Id.* Examples of the deficiency letters are attached as Exhibit B to the Radetich Declaration. In addition, the Claims Administrator will mail a second deficiency letter to Claimants who still have not resolved the deficiencies associated with their Claims. *Id.* ¶ 7. A copy of this second deficiency letter is attached as Exhibit C to the Radetich Declaration.

The Claims Administrator mailed rejection letters to all Claimants who filed claims related to property not located in the Class area, and to Claimants who filed claims related to properties that they did not own on June 7, 1989 (or to Claimants who were not the heirs or successors to persons that owned the relevant property on June 7, 1989).[5] As of October 6,

---

[4] Dr. McNulty's biography is available at https://www.paceyecon.com/mark-mcnulty-phd.
[5] In other words, for example, the Claims Administrator would have denied a claim submitted by someone who bought a property located in the Class Area on January 1, 1992 if the claimant did not own that Class property as of June 7, 1989.

4

2017, the Claims Administrator had mailed rejection letters to 2,413 Claimants. *Id.* ¶ 8. Examples of the rejection letters are attached as Exhibit D to the Radetich Declaration.

As of October 6, 2017, the Claims Administrator has received and confirmed 7,503 valid claims. *Id.* ¶ 5. Of those valid claims, 7,371 were received on or prior to June 1, 2017 (the deadline provided in the Notice), and 132 were received after June 1, 2017. *Id.*

## DISTRIBUTION OF SETTLEMENT FUNDS

### I.    Late, Yet Otherwise Eligible Claims Should Be Accepted

Approximately 132 otherwise eligible Claims were received after the June 1, 2017 submission deadline. *Id.* ¶¶ 5, 9. No Claim has been rejected thus far because it was received after the initial submission deadline.

Plaintiffs and Class Counsel respectfully submit that it would be unfair to prevent a Claimant submitting a late but otherwise valid Claim from participating in the Net Settlement Funds solely because the Claim was submitted after the cut-off date, even as the Claims Administrator was continuing to process other Claims. Most of these claims have reasonable explanations for lateness. Accordingly, Plaintiffs and Class Counsel respectfully request that this Court approve Plaintiffs' and Class Counsel's proposal to accept otherwise valid Claims submitted after the June 1, 2017 deadline.

However, there must be a final cut-off date after which no more Claims may be accepted so that Class Counsel and the Claims Administrator can calculate and distribute the expected subsequent distributions. Acceptance of any Claim with no final cut-off date would necessarily require a delay in the distribution of all Settlement funds. Accordingly, Plaintiffs and Class Counsel also respectfully request that this Court enter an order directing that no Claim submitted after December 31, 2017 be included in the distributions for any reason whatsoever. *See In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 329 (3d Cir. 2001) ("There is no

5

question that in the distribution of a large class settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'") (citations omitted).

## II. Ineligible Claims Should Be Rejected

As detailed above, approximately 2,413 Claims were rejected because the subject property was located outside of the Class Area, the property was not owned by the Claimant as of June 7, 1989; the Claimant was not an heir or successor to the June 7, 1989 owner of a property located in the Class Area; or the Claim was duplicative of another Claim. As of October 6, 2017, the Claims Administrator had mailed rejection letters to 2,413 Claimants. Radetich Declaration ¶ 8. The rejection letters provide that rejected Claimants may contest the determination of the Claims Administrator by notifying the Claims Administrator and providing a statement of the Claimant's reasons for contesting, along with supporting documentation, within thirty days of receiving the rejection letter. *See* Radetich Declaration Ex. D. All appeals that have been filed by Claimants are being reviewed by the Claims Administrator with the help of the Plaintiffs' property expert, Wayne Hunsperger and Dr. McNulty. Radetich Declaration ¶ 11. Unresolved appeals may go to the Court or a special master.

Plaintiffs and Class Counsel respectfully request that the Court enter an order approving the administrative determinations of the Claims Administrator rejecting ineligible Claims where (a) the Claimant was mailed a rejection letter and did not respond within thirty days, or (b) the Claimant responded to a rejection letter but the Claims Administrator confirmed upon re-review that the Claim was ineligible.

## III. Initial Distribution

Plaintiffs and Class Counsel respectfully request that the Court enter an order directing and authorizing an initial distribution to all Claimants whose claims have been accepted as of October 6, 2017, using the methodology described in the Plan of Allocation and below.

In order to allow the Claims Administrator to work toward the full distribution of the Net Settlement Funds, it is necessary to bar any further Claims against the Net Settlement Funds and to provide that all persons involved in the review, verification, calculation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Net Settlement Funds, be released and discharged from any and all claims arising out of such involvement beyond the amount allocated to them. Accordingly, it is respectfully requested that the Court enter an order allowing for these terms.

A sample of the letter that the Claims Administrator proposes to send with each initial distribution award is attached as Exhibit E to the Radetich Declaration. The letter makes clear that the initial distribution award is "only the first part of [the] total award related to this case" for each Claimant, and that Class Counsel and the Claims Administrator expect to make an additional payment or payments in future distributions. *See* Radetich Declaration Ex. E.

### A.   Calculation Methodology for the Initial Distribution

Pursuant to the terms of the Settlement Agreement and Plan of Allocation, a Net Settlement Fund was established for the payment of valid claims to Claimants. As provided by the Plan of Allocation, 3.196% of the Net Settlement Fund is allocable to commercial property claims; 81.537% is allocable to residential property claims; and 15.267% is allocable to vacant land claims.

As provided in the Plan of Allocation and in the Proposed Order accompanying this motion, for purposes of calculating award amounts in the initial distribution, the Claims Administrator, working with Plaintiffs' property expert Wayne Hunsperger, determined, for each Claimant property, the property's assessed value, expressed as a fraction of the total assessed value of all Class Properties within the same property category (the property's "Fractional

7

Allocable Share"). The Claims Administrator, again with Wayne Hunsperger, then computed a Claim award value for approved Claimant, based on the Class member's property's Fractional Allocable Share of the Net Settlement Fund apportioned to that category of properties, and based on whether the Claimant was due 100% of the total value awarded to a particular property or some lesser percentage.[6] For example, for a claim associated with a residential property, the proposed initial distribution will present an award based on the property's Fractional Allocable Share multiplied by the Net Residential Property Settlement Fund (equal to 81.537% of the Net Settlement Fund). The process used for this determination is set forth in the accompanying Hunsperger Declaration and Radetich Declaration.

The Claims Administrator estimates that the first distribution will result in approximately ninety-five to one hundred million dollars being paid to claimants who have filed valid claims. *See* Radetich Declaration ¶ 10. The remainder of the Fund will be distributed in a second or subsequent distribution. All Class members with approved claims will also share in the second distribution.

### B.   Future Distributions

As contemplated by the Plan of Allocation, there will be unclaimed or residual funds following the initial distribution. Class Counsel and the Claims Administrator anticipate that the amount of unclaimed or residual funds following the initial distribution will be more than sufficient to provide awards to Claimants whose claims were submitted on or prior to October 6, 2017, but have not yet been verified and approved by the Claims Administrator. Plaintiffs and Class Counsel propose that Claimants who submitted claims on or prior to October 6, 2017 but

---

[6] For example, if a property was owned by a now-divorced husband and wife, ordinarily the husband (or his heirs) would be entitled to 50% of the total claim value associated with that property and the wife (or her heirs) would be entitled to the other 50% of the total claim value associated with that property.

8

which claims have not yet been verified receive payments at a later date, with the payment amounts computed using the same formula used for those claims receiving distributions as part of the initial distribution.  Plaintiffs and Class Counsel will request Court approval for any such distributions to these Claimants at a later date.

Class Counsel also anticipate that the unclaimed or residual funds will be sufficient to provide additional awards to all Claimants included in the initial distribution.  As provided in the Plan of Allocation, and subject to Court approval, in any such second or subsequent distribution Plaintiffs and Class Counsel will likely request that the properties closest to the former Rocky Flats plant be given an extra weighting and so will receive relatively higher payments in such subsequent distributions.

## CONCLUSION

Plaintiffs and Class Counsel submit that the work performed, as explained above, was conducted fairly and in accordance with the terms and provisions of the Court-approved Settlement Agreement and Plan of Allocation.  Accordingly, Plaintiffs and Class Counsel respectfully request that the Court enter the Proposed Order accompanying this motion providing that (1) late, otherwise valid claims accepted as of October 6, 2017 should be approved; (2) ineligible claims should be rejected; (3) an Initial Distribution should be distributed to approved Claimants; and (4) claims received after December 31, 2017 against the Settlement Fund shall be barred.

Dated: October 13, 2017	Respectfully submitted,

*/s/ Merrill G. Davidoff*
Merrill G. Davidoff
David F. Sorensen
Caitlin G. Coslett
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

Gary B. Blum
Steven W. Kelly
SILVER & DeBOSKEY, P.C.
1801 York Street
Denver, CO 80206
(303) 399-3000

*Attorneys for Plaintiffs and the Class*

10

**CERTIFICATE OF SERVICE**

  The undersigned certifies that on this 13th day of October, 2017 he caused the foregoing submission to be served via the Court's ECF system on all participating counsel.

               */s/ Merrill G. Davidoff*
               Merrill G. Davidoff
               BERGER & MONTAGUE, P.C.
               1622 Locust Street
               Philadelphia, PA 19103
               (215) 875-3000