## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

### Civil Action No. 90-cv-00181-JLK

_____

MERILYN COOK, *et al.*,

        Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
And THE DOW CHEMICAL COMPANY,

        Defendants.

_____

### THE FARMERS RESERVOIR AND IRRIGATION COMPANY'S MOTION FOR:

### 1. REVIEW OF THE SETTLEMENT AND CLAIMS ADMINISTRATOR'S DENIAL OF ITS CLAIMS;
### 2. REQUEST FOR LIMITED DISCOVERY; AND
### 3. REQUEST FOR HEARING.

_____

      Settlement Class Member, The Farmers Reservoir and Irrigation Company

("FRICO"), through its attorneys, Fairfield and Woods, P.C., submits this Motion for

review of the Settlement and Claims Administrator's denial of FRICO's Claims to

participate in the class action settlement of this matter as a property owner within the

Settlement Class Area ("Motion").

### Certification Pursuant to D.C.COLO.LCivR Rule 7.1(a)

1

Undersigned counsel conferred with class counsel, Mr. Merrill Davidoff and Ms. Caitlin Coslett, regarding this Motion by telephone on June 26, 2018.  The parties agreed that class counsel shall have 30 days to respond to FRICO's Motion and FRICO shall have 21 days to file a Reply.  Class counsel also agreed to set aside enough money from the Settlement Fund so that if FRICO prevails on its claim, it will not be prejudiced.  The parties also discussed the need for a hearing, facts to which they may be able to stipulate, and FRICO's request to undertake limited discovery, but the parties could not reach agreement on these issues.

## Introduction

FRICO is a class member entitled to a distribution of its pro-rata share of the Net Vacant Property Settlement Fund, but its claims have been wrongfully denied by the Settlement and Claims Administrator ("Administrator").  Accordingly, FRICO seeks this Court's assistance in reviewing the Administrator's denials.

## Factual Background

1.      This Court has exclusive jurisdiction over all parties to the case, all members of the Class for all manifestations of the case, the Settlement, the Settlement Agreement, and the administration and consummation of the Settlement.  Order Granting Final Judgment, Approving Class Settlement, and Dismissing Class Claims Against Defendants, filed on April 28, 2017, at Doc. 2471, at ¶¶ 4, 11.

2.      FRICO is a Colorado mutual ditch company organized in 1902.

3.      Mutual ditch companies are private entities under the laws of the State of Colorado.  *Farmers Reservoir and Irrigation Co. v. City of Golden*, 113 P.3d 119, 132 (Colo. 2005).

4.      Within the Property Class Area, FRICO owned approximately 1,800 acres of land comprising Standley Lake, land surrounding Standley Lake that was never part of the lake, the Croke Canal, and portions of Big Dry Creek, in fee simple, on June 7, 1989.

5.      FRICO has submitted deeds for the lands it owned on June 7, 1989.

6.      There is limited information available from the Jefferson County Assessor about FRICO's property, but FRICO has submitted copies of what it could find.  That information refers to FRICO's property as "vacant," and provides valuations for some parcels, which FRICO has used to estimate the valuation of all of its land within the Property Class Area.

7.      FRICO originally submitted its claim form electronically on June 1, 2017. Along with its claim form, FRICO also submitted:  (1) a summary spreadsheet of the land FRICO owned in the Property Class Area on June 7, 1989; (2) a map of FRICO's property located within the Property Class Area; (3) copies of the deeds evidencing FRICO's ownership of land within the Property Class Area; and (4) a letter explaining FRICO's claim submission and the previously referenced documents.  **Exhibit 1.**

8.      The Maps attached as **Exhibits 2 and 3** depict the locations of FRICO's property physically located within the Property Class Area on June 7, 1989.  FRICO

provided these maps to the Administrator on June 1, 2017, and on December 29, 2017. The map FRICO submitted on December 29, 2017, is nearly identical to the map it submitted on June, 1, 2017, but includes a small (8 acre) parcel of land north of Standley Lake that was not included in FRICO's June 1 claim.

9.     There is a lake tender's house and associated outbuildings on land near Standley Lake that FRICO owned on June 7, 1989, which land has since been sold to the City of Westminster.  Except for the lake tender's house and the Standley Lake dam and outlet works, there are no buildings, shops, stores, public roads, offices, or other above-ground structures on FRICO's property.

10.     On September 14, 2017, the Administrator sent FRICO a letter titled "Notification of Rejection of Claim and Description of Corrective Measures."  The September 14 letter identifies FRICO's June 1, 2017 claim as claim number WCF00002075, and states that FRICO is not eligible to share in the distribution of the Net Settlement Fund because:

> After a detailed, careful review of the physical location of your property, it has been confirmed by the Property Expert for the Class that your property is _not_ located within the Property Class Area.  Therefore, you are _not_ a member of the Settlement Class for this property, and are _not_ entitled to participate in the distribution of the Settlement Funds for this property.

**Exhibit 4.**

11.     The September 14 letter provided no explanation of what the detailed, careful review involved, or why that review resulted in the incorrect conclusion that

4

FRICO's property is not physically located within the Property Class Area.  FRICO owns

Standley Lake, which is in the dead center of the Property Class Area and identified by

name on the maps approved by this Court, attached to the Settlement Agreement, and

mailed to Class Members with the notice of settlement.  *See*, Doc. 2416-1, at 2; Doc.

2459-1, at 24.

12.    By letter and submittal dated October 5, 2017, FRICO contested the

Administrator's determination because the information already presented demonstrated

FRICO's ownership of more than 1,800 acres of land physically located inside of the

Property Class Area on June 7, 1989.  **Exhibit 5.**  Neither FRICO nor its attorneys

received any response, whether via mail, phone, voicemail, email, or otherwise.

13.    On December 21, 2017, FRICO's counsel contacted the Administrator's

office to check on the status of FRICO's claim.  During this call, FRICO was informed,

for the first time, that it was required to submit separate claim forms for each parcel with

a separate Tax ID (sometimes called a parcel ID in the claim documents) that Jefferson

County provided to the Administrator.

14.    FRICO disputes the Administrator's insistence and reliance on Tax ID

numbers over FRICO's land deeds, and the Plan of Allocation states that the

Administrator "shall consult appropriate records and data, from Jefferson County and

Broomfield County, Colorado, and such other sources as the Settlement and Claims

Administrator may reasonably determine to be suitable and reliable."  Doc. 2407-2, at ¶ 7; Doc. 2416, at ¶ 7 (emphasis added).

15.     FRICO attempted to comply with the Administrator's request, but some of FRICO's property is located within the parcel IDs provided to the Administrator by Jefferson County, some is located partly within a parcel ID and partly outside of that parcel ID, and some land within the Claim Area does not have a parcel ID number at all. Moreover, the Jefferson County Assessor's Office informed FRICO that parcel IDs are not evidence of either ownership or the legal boundaries of real property parcels.  Further, it appears the boundaries of some Parcel IDs may have changed between 1989 and now.

16.     Accordingly, Parcel ID numbers are assigned by counties for their own purposes, but are not a proxy for land ownership in 1989.  Parcel ID numbers may provide useful information in some circumstances, but FRICO's land is exempt from taxation, so Parcel IDs are an especially poor indicator of FRICO's land ownership for purposes of the Settlement Agreement.

17.     After discussing its claim with a representative of the Administrator, FRICO was put into contact with Mr. Wayne Hunsperger, who was identified as the Property Expert for the Administrator, and FRICO re-submitted its claim as six separate claims on December 29, 2017, based on direction from the Administrator and Property Expert.  **Exhibit 6.**

18.     As part of FRICO's December 29, 2017, re-submission, FRICO estimated the total assessed value of all of its lands located within the Property Class Area in 1989. Using a weighted average of parcels with an assessed value, FRICO calculated that, on average, the Jefferson County Assessor assessed FRICO's lake parcels in the amount of $688.91 per acre and its canal parcels in the amount of $7,241.92 per acre.  In total, FRICO calculates that all of its property located within the Property Class Area had an assessed valuation of approximately $1,863,406 in 1989.  *See* **Exhibit 6**, at 3, 6–7. FRICO does not concede that this estimate of assessed valuation fairly represents the true value of FRICO's property within the Property Class Area.  Rather, this estimate was an attempt to comply with the requests of the Administrator and Property Expert.

19.     On January 16, 2018, the Administrator sent another notice of rejection of one of FRICO's six resubmitted claims, and an acknowledgement of receipt of the other five claims.[1]  The explanation for the rejection of claim no. WCF00002564 was the same as FRICO received before:  the Administrator claimed that the Property Expert determined that FRICO's property is not physically located within the Property Class Area. **Exhibit 7**.  However, the Property Expert explained to FRICO in December of 2017 that this representation, when made in the September 14, 2017, Notification of Rejection, was not true, and that in fact he had made no such determination.  He said this

---

[1]  The other five claims were rejected on April 6, 2018.  See ¶ 23, below.

was a form letter that went out to any claimant where the Claim Administrator's office did not understand or had some confusion with a claim.

20.     FRICO contested the January 16, 2018, denial of its claim by letter dated February 9, 2018. **Exhibit 8**.

21.     By letter dated April 4, 2018, class counsel contacted FRICO for the first time, and purported to deny all of FRICO's claims because:  (1) FRICO's "claims are associated with land that is underwater"; (2) "Plaintiffs did not estimate or include the asserted land values of property located under Standley Lake or associated ditches in any of the damages analyses presented to the jury during the four-month *Cook v. Rockwell* jury trial"; and (3) "FRICO's claims would harm the members of [the] Class who have filed valid claims because those Class members would receive lower overall payments if FRICO's claims were accepted." **Exhibit 9.**

22.     Class counsel's April 4 letter further stated that if he "were required by the Court to pay FRICO's claims, the properties for which FRICO has filed claims would properly be treated as 'commercial' and not 'vacant' properties given the properties' commercial operation." *Id.*

23.     Two days later, on April 6, 2018, the Administrator again denied the remaining five claims that FRICO had resubmitted in December 2017, because the Administrator claimed the "physical location" of FRICO's property is not located within the Property Class Area. **Exhibit 10**.

24. The reasons given by the Administrator in its April 6 letter of denial of FRICO's claims do not correspond with the reasons asserted in class counsel's April 4 letter. Further, the reasons given by the Administrator are false, groundless, arbitrary, and capricious.

25. FRICO responded to class counsel's denial dated April 4, 2018, by letter dated April 24, 2018. **Exhibit 11.**

26. FRICO contested the April 6, 2018, denial in a letter dated April 26, 2018. **Exhibit 12.**

27. On May 4, 2018, counsel for FRICO spoke with class counsel over the telephone, and class counsel acknowledged that FRICO's property is in fact physically located within the Property Class Area, and that the previous denials by the Administrator were incorrect.

28. Neither the Administrator nor class counsel have ever disputed FRICO's ownership of its property.

29. On June 11, 2018, counsel for FRICO spoke with class counsel regarding FRICO's claim. Class counsel provided an estimated settlement amount premised on class counsel's belief that FRICO's property is commercial property. Class counsel told FRICO it would have to appeal the Administrator's various denials to this Court if FRICO desired to have the Administrator classify its property as vacant.

30.     The only reason the Administrator has identified for its various denials of FRICO's claims is that it believes FRICO's property is not physically located within the Property Class Area.  The Administrator has not provided FRICO with any information as to how it reached this incorrect conclusion.

31.     The settlement documents do not state that "land that is underwater" is ineligible, even if located within the Property Class Area.

32.     The settlement documents do not state that land that is under water did not suffer the same damage as all other land in the Property Class Area.

33.     The settlement documents do not state that land located within the Property Class Area might be excluded because evidence pertaining to such land was not presented to a jury.

34.     The City of Westminster zoned Standley Lake and the surrounding property where FRICO owned land on June 7, 1989, as "O-1 Open/Agriculture."[2]

35.     The City of Arvada zoned the majority of FRICO's lands comprising the Croke Canal in the C-1 Conservation District and the A-1 Agricultural District.[3]

---

[2]  *Interactive Zoning Map*, CITY OF WESTMINSTER, *available at* http://www.cityofwestminster.us/Government/Departments/CommunityDevelopment/Planning/Zoning.

[3]  *Zoning District Interactive Map*, City of Arvada, *available at* https://arvada.maps.arcgis.com/apps/webappviewer/index.html?id=693a241e771a461db1360aeed07960ae.

36.     Jefferson County zoned portions of FRICO's unincorporated lands comprising the Croke Canal in the A-1 and A-2 Agricultural Zone Districts.[4]

## Argument

I.     *FRICO's property is indisputably located within the Property Class Area*

As depicted on the map FRICO included with its claim form, and the Property Class Area map provided by the Court, FRICO owned the land comprising Standley Lake on June 7, 1989.  On that date, FRICO also owned, and still owns, the land on which the Croke Canal is located (and land on both sides of the canal), which canal delivers water from Clear Creek into Standley Lake, as well as other lands around Standley Lake through which it delivers water from the Standley Lake reservoir to FRICO's stockholders.  In addition, on June 7, 1989, FRICO owned additional land around Standley Lake that was never inundated, which has since been conveyed to the City of Westminster and is used as a park.  All of this land is physically located within the Property Class Area.  FRICO provided deeds and other documentation showing FRICO's ownership of this land, as well as illustrating that the land is physically located within the Property Class Area.

The Administrator has not disputed FRICO's ownership of the land included in any of its claims filed with the Administrator.  The Administrator has only disputed whether the physical location of FRICO's land is within the Property Class Area, which

_____

[4] *Interactive Mapping Application*, JEFFERSON COUNTY, *available at* http://maps.jeffco.us/ (site will be decommissioned on June 30, 2018), or the new site at https://jcgis.jeffco.us.

does not seem to be legitimately disputable.  If, in fact, the Administrator or the Property

Expert have determined that any of FRICO's property is not physically located within the

Property Class Area, that determination is clearly and demonstrably erroneous, arbitrary

and capricious.

II.      *There is no basis for the Administrator to deny FRICO's claims because some of its property may be located under water for certain portions of the year*

The Settlement Agreement does not exclude property located under water, and

there is no basis for the Administrator or class counsel to determine that property under

water may be excluded from the Settlement Agreement.  Indeed, in this Court's Order

Granting Final Judgment, Approving Class Settlement, and Dismissing Class Claims

Against Defendants, this Court stated:

> On May 19, 2016, this Court certified a class for purposes of settlement pursuant to Rule 23(a) and 23(b)(3) (the "Settlement Class", the "Class," or the "Property Class"):  The Property Class includes all persons and entities who have not previously opted out or who do not timely opt out of the class who owned, as of June 7, 1989, an interest (other than mortgagee and other security interest) in real property situated within the Property Class Area, exclusive of governmental entities, defendants, and defendant's affiliates, parents, and subsidiaries."

Order filed on April 28, 2017, at Doc. 2471, at ¶2 (emphasis added).

Other settlement documents similarly define the Settlement Class as, "All persons

and entities . . . who owned, as of June 7, 1989, an interest . . .  in real property situated

within the Property Class Area. . . ."  *See, e.g.,* Notice to Class Members, at Doc. 2416-1,

at 3, 9, 11, 13; Settlement Agreement, at Doc. 2459-1, at 5; Memorandum in Support of

Plaintiffs' and Class Counsel's Unopposed Motion for an Initial Distribution of the Net Settlement Funds, at Doc. 2495, at 3; Plan of Allocation of the Settlement Fund, at Doc. 2407-2, at 1–2. Based on this Court's order and the Settlement Agreement, all FRICO needs to demonstrate is: (1) FRICO is a person or entity; (2) FRICO owned an interest in real property; (3) it owned that interest on June 7, 1989; (4) the property was situated within the Property Class Area; and (5) FRICO is not an excluded party. FRICO established all of these requirements in its claim forms and there is no basis for the Administrator or class counsel to create a new exception for land that is under water.

Based on the plain language in the Settlement Agreement, FRICO meets every requirement for inclusion in the Settlement Class because: (1) FRICO is a Colorado mutual ditch company, which is a person or entity; (2) FRICO owned a fee simple absolute interest in nearly 1,800 acres of real property; (3) FRICO owned the 1,800+ acres on June 7, 1989; (4) those 1,800+ acres were located within the Property Class Area; and (5) FRICO is not a governmental entity, a defendant, or an affiliate, parent or subsidiary of a defendant, nor did FRICO opt out of the Settlement Class. Accordingly, FRICO is a member of the Settlement Class pursuant to the plain language of the Settlement Agreement.

Additionally, "[m]ost of the plutonium from Rocky Flats was in a form that does not readily dissolve in water. As a result, a large portion of the plutonium released into the creeks sank to the bottom and is now found in the streambeds of Walnut and Woman

Creeks, and on the bottom of off-site reservoirs."[5] Whether FRICO's property was under water does not change the fact that its land was contaminated just like every other property in the Property Class Area.  If the Administrator or class counsel intend to take the position that FRICO is disqualified from participating in the settlement because some of its property is seasonally located under water, FRICO requests evidence that the Administrator and class counsel have similarly reduced other Settlement Class members' claims for portions of their properties containing swimming pools, fountains, ponds, wetlands, retention ponds, detention ponds, farmland using flood irrigation, and every other instance where water may be present.

Finally, not all of FRICO's property is, or was ever, under water.  On June 7, 1989, FRICO owned large swaths of land around Standley Lake that were never under water.  Those lands were subsequently conveyed to the City of Westminster and are now part of a park system.  Also, some of FRICO's property, such as the land underlying the Croke Canal, is only covered by water during a portion of the year.  In addition, Standley Lake is not always full and portions of the lake bed are exposed depending on the time of year, weather, and whether Standley Lake needs to be emptied for repairs.  Regardless of whether water is present at any given time, the fact remains that FRICO's property was

---

[5] *Technical Topic Papers Rocky Flats Historical Public Exposures Studies*, Colorado Department of Public Health and Environment, at 2, *available at* http://hermes.cde.state.co.us/drupal/islandora/object/co%3A1448/datastream/OBJ/download/Contaminates_released_to_surface_water_from_the_Rocky_Flats_nuclear_weapons_plant.pdf.

contaminated with plutonium, and affected by the stigma of contamination, the same as that of every other member of the class.

III.     *The Administrator and class counsel may not selectively deny a Settlement Class member from collecting its pro-rata portion of the Net Settlement Fund*

In Plaintiffs' Memorandum in Support of Their Motion for Final Approval of Proposed Class Action Settlement and Approval of Plan of Allocation ("Memorandum"), filed on March 30, 2017, at Doc. 2459, class counsel asserted that "[t]he proposed $375 million Settlement is an extraordinary result for the Class" and that the "Settlement provides an extraordinary monetary payment to the Class in exchange for a Class-wide release."  *Id*. at 6, 15.  Class counsel even acknowledged that the Settlement Agreement mitigates against the "real risk that the Class might walk away with nothing," just as the Administrator and class counsel propose FRICO do now.  *Id*. at 24.

Additionally, class counsel's statement that "FRICO's claims would harm the members of Class who have filed valid claims because those Class members would receive lower overall payments" is a violation of this Court's orders and the Settlement Agreement.  FRICO <u>is</u> a member of the Settlement Class, and whenever any Settlement Class member receives a payout, that does not mean the other members are harmed; it means that each class member received its pro-rata portion of the Net Settlement Fund, just as contemplated in the Settlement Agreement.  The Administrator and class counsel's "duty to fairly and adequately represent and protect the Class" extends to FRICO just as much as it extends to every other member of the Settlement Class.

Further, the approved Plan of Allocation mandates that:

> <u>For each property located in the Property Class Area</u> ("Class Property"), the Settlement and Claims Administrator <u>shall</u> consult appropriate records and data, from Jefferson County and Broomfield County, Colorado, <u>and such other sources</u> as the Settlement and Claims Administrator may reasonably determine to be suitable and reliable, for the purposes of:  (a) determining owners of the Class Property as of June 7, 1989; (b) associating the property, and its owner(s) as of June 7, 1989; and (c) assigning the Class Property to one of the three property categories; commercial, residential, or vacant as of June 7, 1989."

Doc. 2407-2, ¶8 (emphasis added).  The Plan of Allocation mandates that the "Settlement and Claims Administrator <u>shall determine</u>, for each Class Property, the Class Property's assessed value, expressed as a fraction of the total assessed value of all Class Properties within the same category."  *Id*. at ¶9 (emphasis added).  The next paragraph goes on to state that the "Proposed Allocation <u>shall</u> compute an award for each member of the Class. . . ."  *Id*. at ¶10 (emphasis added).

Accordingly, there is no discretion to exclude FRICO from the settlement, nor is there any discretion to create new and arbitrary categories for FRICO's Class Property as a pretense for denying FRICO's claims.  The Court-approved Plan of Allocation mandates that the Administrator determine FRICO's pro-rata share, just like every other Settlement Class member.

IV.   *Evidence presented to the jury during the* Cook v. Rockwell *jury trial does not supersede the plain language of the Settlement Agreement*

The evidence presented to the jury during the *Cook v. Rockwell* trial does not invalidate portions on the Settlement Agreement, nor does the verdict determine whether

16

FRICO is a member of the Settlement Class, whether FRICO owned property within the Property Class Area, or whether FRICO is entitled to its pro-rata share of the Net Settlement Fund pursuant to the Settlement Agreement.  At the request of the parties, this Court dismissed, with prejudice, "all claims against Defendants in *Cook, et al. v. Rockwell International Corp., et al.,* No. 90-cv-181-JKL (D. Colo.)," and the parties "jointly notified the United States Supreme Court of the Settlement, and stipulated to dismissal of the pending petitions for certiorari."  Order Granting Final Judgment, Approving Class Settlement, and Dismissing Class Claims Against Defendants, at Doc. 2471, ¶9; Doc. 2459, at 13.  The unambiguous terms of the Settlement Agreement cannot be superseded by a previous jury verdict in a case that was dismissed with prejudice.

Indeed, the parties' stated reason for entering into the Settlement Agreement was the risk surrounding "Supreme Court proceedings relating to the [Price-Anderson Amendments Act], as well as the risk to both sides of other adverse rulings and developments that will prolong and increase the costs of this litigation . . . ."  Doc. 2459-1, at 4.  The Settlement Agreement clearly and unambiguously establishes the parties entitled to participate in this settlement.

Moreover, the jury decision to which class counsel referred did not decide that "properties located under Standley Lake or associated ditches" are not entitled to damages.  Instead, the Settlement Agreement adopted the portion of the jury verdict allocating the relative percentages of the Net Settlement Fund to which each property

category is entitled.  In Plaintiffs' Memorandum in Support of their Motion for Final

Approval of Proposed Class Action Settlement and Approval of Plan of Allocation, class

counsel stated that "for each of the three categories of properties, the jury found a specific

percentage diminution in value that was caused by the nuisance and trespass."  Doc.

2459, at 10.  "Based on their findings of diminished value for each property category, the

jury awarded 3.196% of the total compensable nuisance damages for commercial

properties; 81.537% for residential properties; and 15.267% for vacant land."  *Id*.  The

Settlement Agreement only incorporated the relative damage each class of property

suffered from the jury verdict, but not the alleged evidence Plaintiffs may or may not

have presented to the jury at trial.  Tellingly, class counsel's memorandum also explained

that "[t]he distribution methodology is adequately explained in the Notice sent to

potential Class members and posted to the official settlement website," which is not

based on the jury verdict or limited to the evidence presented to the jury during trial.  *Id*.

at 34.

Finally, the Plan of Allocation states that the "total sum allocable to each category

shall bear the same ratio to the Net Settlement Fund as the jury's award of compensatory

damages for that category bears to the total of all compensatory damages awarded by the

jury for all three categories combined."  Doc. 2407-2, ¶8.  It is the Administrator's job to

determine, "for each Class Property, the Class Property's assessed value, expressed as a

fraction of the total assessed value of all Class Properties within the same category. . . ."

*Id*. at ¶9.  Why this has not been done for FRICO's property cannot now be blamed on a superseded 2006 jury verdict.

V.      *FRICO's property should be characterized as vacant land under the Settlement Agreement*

Based on the documents FRICO has already submitted, Jefferson County identifies FRICO's property as "vacant land," not as retail, commercial, or industrial property. Class counsel previously asserted to this Court that it intended to use "property code type data" from Jefferson County in assigning Class Property to one of the three categories.  *See* Plan of Allocation, at Doc. 2407-2, at 5, n. 2.  Moreover, Jefferson County, the City of Westminster, and the City of Arvada have not zoned FRICO's property as industrial or commercial property.  FRICO diverts, stores, and releases raw (untreated) water for the benefit of its stockholders.  The amount of water to which its stockholders are entitled is determined by each stockholder's pro-rata ownership of FRICO stock.  As a mutual company, FRICO does not undertake these activities to generate a profit, nor does FRICO undertake these activities for non-stockholders. Therefore, FRICO's property is not used for commercial or industrial purposes, any more than irrigated cropland is used for commercial purposes.

As discussed above, the City of Westminster zoned Standley Lake and the surrounding property where FRICO owned land on June 7, 1989, as "O-1 Open/Agriculture."  The O-1 zone district is defined as "[a]n agricultural and open district for providing an area of the City devoted to the production of agricultural crops

and livestock, as well as preserving and protecting agricultural and non-urbanized areas until urbanization is warranted and the appropriate change in district classification is made."[6]  Moreover, chapter two of the Westminster Comprehensive Plan specifies that "[a]butting land area within Jefferson County is envisioned as remaining agricultural and/or sparsely developed to protect water quality of Standley Lake."[7]  In fact, business, industrial, and commercial uses are not permitted in the O-1 zone district, and Westminster's zoning does not permit FRICO to undertake a commercial use of Standley Lake or the surrounding property.[8]

A review of the uses Westminster and Arvada classify as business, commercial, and industrial further highlight that FRICO's property should not be classified as commercial for purposes of the Settlement Agreement.  Westminster defines its "B1 Business District" as a "restricted retail and office district where no outside storage of goods and merchandise is allowed. Municipal Code, § 11-4-1.  The C1 Commercial District is defined as "[a] retail and office district where outside storage of merchandise is permitted."  *Id.*  The C2 Heavy Commercial District is a "commercial district where more intensive activities and uses not compatible with residential and other business

---

[6] *Zoning, Establishment of Districts*, WESTMINSTER MUNICIPAL CODE, Section 11-4-1, Chapter 4, *available at* https://library.municode.com/co/westminster/codes/code_of_ordinances?nodeId=TITXILADEG RPR_CH4ZO_11-4-1ESDI.

[7] *City of Westminster Comprehensive Plan*, CITY OF WESTMINSTER, Chapter 2, Land Use, p. 22-39, *available at* https://www.cityofwestminster.us/Portals/1/Documents/Government%20-%20Documents/Departments/Community%20Development/Planning/Chapter%202_2015.pdf.

[8] *Zoning, Allowed Uses*, WESTMINSTER MUNICIPAL CODE, Section 11-4-4, Chapter 4.

uses are allowed." *Id*.  And finally, the M1 Industrial District is "[a] manufacturing and office district." *Id*.  FRICO's property has none of these features.

Similarly, Arvada defines the intent of its commercial zone districts to "provide for a wide variety of professional and business offices," "provide for convenience shopping areas and professional offices," "a wide variety of general retail, business, and services uses, as well as professional business offices," and "more intensive or higher-impact business activities, as well as general retail, commercial, personal and business services, and professional offices.[9]  Arvada describes industrial uses as "industrial and office uses with minimal impact on surrounding properties . . . and permitted uses are limited to manufacturing, wholesaling, and office activities that can be operated in a clean and quiet manner," up to "normal operation of almost all industries."  *Id*. at Article 4.7.  FRICO's use of its land within the Property Class Area does not meet the definition or intent of Westminster and Arvada's descriptions of industrial and commercial uses.

As also discussed above, the portions of FRICO's Property located within unincorporated Jefferson County appear to be located in the A-1 and A-2 zone districts. According to Section 25 of the Jefferson County's zoning resolution which discusses the A-1 and A-2 zoning, the "Agricultural Zone Districts are intended to provide for

---

[9] *Zoning Districts*, CITY OF ARVADA MUNICIPAL CODE, Article 4.6, *available at* https://library.municode.com/co/arvada/codes/code_of_ordinances?nodeId=PTIIILADECO_ART4ZODI_4.6STCOZODIINDIECST.

limited farming, ranching and agriculturally related uses while protecting the surrounding land from any harmful effects."[10]  A "water supply reservoir and irrigation canal" is a permitted use under the agricultural zoning district.  Accordingly, FRICO's land is not commercial land, but vacant agricultural land used for a water supply reservoir and irrigation canal.

The notice of settlement mailed to the Settlement Class clarified that "retail and industrial property is assessed as 'commercial.'"  Doc. 2416-1, at 16.  Jefferson County classifies FRICO's property as vacant, not as commercial.  Class counsel's argument that FRICO's property is used for a "commercial operation" excludes any description of FRICO's operations, or how those unspecified operations constitute a retail, industrial, or commercial operation.  If the land were planted with crops, FRICO doubts that the Administrator would treat such land as commercial.  Further, FRICO's ditch and reservoir system comprises earthen structures that convey water by gravity, and has operated that way for nearly a century.  All of the documentation FRICO has reviewed demonstrates that the Administrator intended to rely on public records from Jefferson County, Arvada, and Westminster in making its various determinations.  The Administrator cannot now selectively decide when and how it will use those same public records in order to deny a class member's valid claim to participate in the Settlement Agreement.

---

[10] *Agricultural District*, JEFFERSON COUNTY, *available at*, https://www.jeffco.us/DocumentCenter/View/2467/Section-25-Agricultural-District-PDF.

**Request for Discovery**

To establish that the Claim Administrator has breached its duties to FRICO as a class member, and that its decisions have been arbitrary and capricious, FRICO respectfully requests the opportunity to conduct limited discovery about how the Administrator made the decisions it claims it made about FRICO's claims, as well as how the Administrator treated other vacant land claims.

**Conclusion**

FRICO owned (and still owns) substantial lands within the Property Class Area, as the summary spreadsheet, map, and deeds FRICO previously submitted demonstrate. FRICO must now ask for this Court's intervention in reviewing the Administrator's denials of FRICO's claims.

WHEREFORE, FRICO respectfully requests this Court:

A.     To find and conclude that FRICO owned approximately 1,800 acres of land physically located within the Property Class Area on June 7, 1989.

B.     To find and conclude that FRICO is a member of the Property Class as defined in the Settlement Agreement dated May 18, 2016.

C.     To find and conclude that FRICO is entitled to participate in the Settlement.

D.     To find and conclude that FRICO's land should be classified as vacant land for purposes of the Settlement.

E.     To set a two-day hearing in this matter.

23

F.      To allow FRICO to undertake limited and proportional discovery necessary to defend against the Administrator's wrongful denials of its claims, including but not limited to a Rule 30(b)(6) deposition, one deposition of the Claim Administrator's "Property Expert," and interrogatories, requests for admissions, and requests for production of documents or tangible things.

DATED this 27th day of June 2018.

s/ Joseph B. Dischinger
Joseph B. Dischinger
Dean C. Hirt, III
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, Colorado 80202
(303) 830-2400
(303) 830-1033 (fax)
Email: jdischinger@fwlaw.com,
dhirt@fwlaw.com

ATTORNEYS FOR THE FARMERS
RESERVOIR AND IRRIGATION
COMPANY

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 25th day of June 2018, a true and correct copy of the foregoing **MOTION FOR: (1) REVIEW OF THE SETTLEMENT AND CLAIMS ADMINISTRATOR'S DENIAL OF ITS CLAIMS; (2) REQUEST FOR LIMITED DISCOVERY; AND (3) REQUEST FOR HEARING** was sent to the following by First Class Mail:

> Vicki Foy
> 718 Sherman Street
> Fort Morgan, Colorado 80701

and the undersigned hereby certifies that the foregoing **MOTION FOR: (1) REVIEW OF THE SETTLEMENT AND CLAIMS ADMINISTRATOR'S DENIAL OF ITS CLAIMS; (2) REQUEST FOR LIMITED DISCOVERY; AND (3) REQUEST FOR HEARING** was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

| Joseph John Bronesky | jbronesk@shermanhoward.com |
| | efiling@sah.com |
| | ddavis@shermanhoward.com |
| Merrill Gene Davidoff | mdavidoff@bm.net |
| | sleo@bm.net |
| Paul De Marco | demarcoworld@yahoo.com |
| Michael Alan Galasso | mgalasso@rkpt.com,bbass@rkpt.com |
| Marcy Geoffrey Glenn | mglenn@hollandhart.com |
| | kjoriley@hollandhart.com |
| | IntakeTeam@HollandHart.com |
| Lester C. Houtz | lester.houtz@bartlit-beck.com |
| | renee.grimmett@bartlit-beck.com |
| Steven William Kelly | skelly@s-d.com |
| | cchristman@s-d.com |
| | penningtonv@s-d.com |
| Douglas J. Kurtenbach | dkurtenbach@kirkland.com |
| | mnomellini@kirkland.com |
| | joppenheimer@kirkland.com |

| Bradley Aaron Levin | bal@levinsitcoff.com |
| | nrp@levinsitcoff.com |
| | kjh@levinsitcoff.com |
| | naw@levinsitcoff.com |
| | bjh@levinsitcoff.com |
| Mark S. Lillie | mlillie@kirkland.com |
| Jean Geoppinger McCoy | jmccoy@wgmlpa.com |
| Susan S. Minamizono | ssm@levinsitcoff.com |
| | nrp@levinsitcoff.com |
| | kjh@levinsitcoff.com |
| Jarrod Martin Mohler | jmohler@rkpt.com |
| | pledonne@rkpt.com |
| | bbass@rkpt.com |
| Peter B. Nordberg | pnordberg@bm.net |
| | peter@nordberg.us |
| Ellen T. Noteware | enoteware@bm.net |
| | csimon@bm.net |
| Douglas M. Poland | dpoland@gklaw.com |
| Louise M Roselle | lroselle@msdlegal.com |
| | dpendygraft@msdlegal.com |
| | dholcomb@msdlegal.com |
| Daniel R. Satriana, Jr | satriana@sbattys.com |
| | epsteini@csbattorneys.com |
| Ronald Simon | ron@1707law.com |
| | mike@1707law.com |
| David F. Sorensen | dsorensen@bm.net |
| Michael A. Thurman | michael@thurman-legal.com |
| Martin Thomas Tully | martin.tully@actuatelaw.com |
| Kevin T. Van Wart | KevinVanWart@kirkland.com |
| | jmiller13@dow.com |

| Juan G. Villasenor | juan.villasenor@usdoj.gov |
|---|---|
| | annette.dolce@usdoj.gov |
| | USACO.ECFFLUAtty@usdoj.gov |
| | USACO.ECFCivil@usdoj.gov |
| | CaseView.ECF@usdoj.gov |
| Bradley Herman Weidenhammer | bradley.weidenhammer@kirkland.com |
| | nshea@kirkland.com |
| Carlotta P. Wells | carlotta.wells@usdoj.gov |
| John Stuart Zakhem | jszakhem@jacksonkelly.com |
| | jadelay@jacksonkelly.com |
| | amaher@jacksonkelly.com |
| | mvo@jacksonkelly.com |

*s/ Susan Wilkerson*
Susan Wilkerson, Paralegal