**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-00181-JLK
_____

MERILYN COOK, *et al.*,

      Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION; and
THE DOW CHEMICAL COMPANY,

      Defendants.

_____

**THE FARMERS RESERVOIR AND IRRIGATION COMPANY'S
REPLY IN SUPPORT OF ITS MOTION FOR REVIEW
OF THE SETTLEMENT AND CLAIMS ADMINISTRATOR'S
DENIAL OF ITS CLAIMS**
_____

Settlement Class Member, The Farmers Reservoir and Irrigation Company ("FRICO"), through its attorneys, Fairfield and Woods, P.C., submits this Reply in Support of its Motion [Doc. No. 2517] for review of the Settlement and Claims Administrator's denial of FRICO's claims to participate in the class action settlement as a property owner within the Property Class Area ("Reply").

**I.    INTRODUCTION.**

FRICO is a Settlement Class Member entitled to a distribution of its pro-rata share of the Property Settlement Fund, but its claims have been wrongfully denied by the Settlement and Claims Administrator ("Administrator"). Accordingly, FRICO seeks this

Court's assistance in reviewing the Administrator's denials.  FRICO submits this Reply to address certain comments and assertions in the Class Counsel's Opposition to the Farmers Reservoir and Irrigation Company's Motion ("Opposition") filed July 26, 2018 [Doc. No. 2518].

## II.    ARGUMENT.

To resolve FRICO's Motion, this Court will need to address several fundamental questions.  First, is FRICO a member of the Settlement Class?  Assuming the first question is answered in the affirmative, the next question is determining which of FRICO's properties are classified as vacant and which commercial, keeping in mind that FRICO submitted claims for over 1800 acres of land, represented by 13 separate deeds, and not every parcel shares the exact same characteristics.  *See* Declaration of Scott Edgar in Support of the Farmers Reservoir and Irrigation Company's Reply in Support of its Motion for Review of the Settlement and Claims Administrator's Denial of its Claims, ("Edgar Dec.") ¶ 7.   Narrow swaths of land have an earthen ditch that often carries water.  *Id*. at 7.a.  On both sides of the ditch, FRICO owns land that contains nothing, except possibly a private dirt road.  *Id*.  Standley Lake is a large open space where water is stored.  *Id*. at 7.b.  Big Dry Creek is an unimproved natural drainage.  *Id*. at 7.c.  The land north of the Lake that FRICO owned in 1989 was vacant, unimproved, and private land, performing no function whatever related to storing and delivering water.  *Id*. at 7.d.  The lands surrounding Standley Lake that FRICO conveyed to Westminster were vacant,

unimproved, private lands performing no function whatever related to storing and delivering water. *Id*. at 7.e.

Once these preliminary determinations are made, the inquiry turns to how to determine the valuation methodology for FRICO's various properties, since FRICO's property is not treated consistently with other privately owned property by the county assessor. FRICO's land is tax exempt, but not because the land is valueless.

Finally, with the above questions resolved, the parties must determine the actual amount of FRICO's claims. For the most part this last question will be resolved through a mathematical computation, and FRICO is mildly optimistic that with guidance from the Court, the parties will be able to resolve this last question through negotiation, without need for an evidentiary hearing. *See* Opposition [Doc. No. 2518], p. 10 and footnote 16.

### A. FRICO IS A MEMBER OF THE SETTLEMENT CLASS.

The Settlement Agreement, as approved by this Court on April 28, 2017, [Doc. No. 2471] defines the Property Class as:

> all persons and entities who have not previously opted out or who do not timely opt out of the class and who owned, as of June 7, 1989, an interest (other than mortgagee and other security interests) in real property situated within the Property Class Area, exclusive of governmental entities, Defendants, and Defendant's affiliates, parents, and subsidiaries."

Order Granting Final Judgment, Approving Class Settlement, and Dismissing Class Claims against Defendants, filed on April 28, 2017, at Doc. No. 2471, at ¶ 2. FRICO meets all of the criteria necessary to establish its membership in the class.

FRICO is a "person or entity," and the Administrator does not argue to the contrary. *See* Edgar Dec., ¶ 16.

FRICO has not previously (or ever) opted out of the class, and the Administrator does not argue to the contrary. *See* Edgar Dec., ¶ 5.

FRICO owned, as of June 7, 1989, fee simple interest in real property situated in the Property Class Area, and its interest is not that of a mortgagee or security interest holder. *See* Edgar Dec., ¶ 14. Although the Administrator's initial rejections asserted that FRICO's property was not located in the Property Class Area, and the Administrator has not formally acknowledged its mistake, it appears that the Administrator no longer contests that FRICO's property is within the Property Class Area. *See* footnotes 2 and 8 to Opposition [Doc. No. 2518]. *See also* Hunsperger Dec. [Doc. No. 2518-1] ¶ 5.

FRICO is not excluded from the class as a "governmental entity." *See* Edgar Dec., ¶¶ 13, 14, 16, and 17. FRICO is a private entity. *See generally* §§ 7-42-101 to -118, C.R.S. (authorizing the creation of private ditch and reservoir companies). FRICO possesses none of the typical characteristics of a governmental entity. It has no taxing power; it has no police power; it does not conduct public elections. Mutual ditch companies are considered private entities under Colorado law. *Farmers Reservoir and Irrigation Co. v. City of Golden*, 113 P.3d 119, 132 (Colo. 2005).

The City of Westminster does not share ownership rights to FRICO's property. FRICO alone held fee simple absolute title to all of the property at issue as of June 7,

1989. The fact that Westminster owns some of FRICO's stock does not convert FRICO's real property into shared ownership, nor does it convert FRICO into a governmental entity.

Further, the fact that Westminster has an easement to use the surface of Standley Lake for recreational purposes does not convert FRICO into a governmental entity, nor does it grant Westminster as an easement holder "ownership" rights in the property. *See Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229, 1234 (Colo. 1998) ("An easement . . . does not carry any title to the land over which it is exercised, nor does it serve to dispossess the landowner."). FRICO receives none of the revenue Westminster generates operating its recreation rental concessions. Edgar Dec., ¶ 15.

The other reasons advanced for excluding FRICO from the Settlement Class have no merit. In the Opposition [Doc. No. 2518], the Class Counsel asserts (at page 2) that the Administrator's denial should be upheld because some of FRICO's land is under water. FRICO already addressed this contention in the Motion [Doc. No. 2517, at pp. 12–15] and will not repeat its argument other than to note neither the Class Counsel nor the Administrator cites to any document or authority that would support their position.

Second, the Opposition claims FRICO is disqualified because it operates the property "as a municipal water supply." This statement is simply incorrect. FRICO does not operate any portion of its ditch and reservoir system as a municipal water supply. Edgar Dec., ¶¶ 11, 13. FRICO does not treat water, nor does it distribute it for domestic

-5-

use. *Id*. FRICO diverts, stores, and releases raw (untreated) water for the benefit of its stockholders, some of whom are agricultural interests, others of whom are municipalities, but FRICO is not involved in any alleged "public use." Some of FRICO's stockholders use the water delivered under FRICO's water rights for "public use," some for irrigation, but FRICO cannot control who purchases FRICO stock, and therefore cannot control who uses the water FRICO delivers or what they use it for, as long as such use is consistent with the water rights decrees. Edgar Dec., ¶ 10.

Third, the Opposition asserts FRICO's claims should be denied because the Jefferson County Assessor did not consistently value or assess FRICO's property. The Assessor had no need to accurately value or assess FRICO's property because it is tax exempt, but that fact has nothing to do with, and cannot be determinative of, FRICO's membership in the Settlement Class or the value of FRICO's claims.

Accordingly, all of the prerequisites for FRICO's inclusion in the Settlement Class are met, and the Court should find that FRICO is a Settlement Class Member.

### B. FRICO'S PROPERTY SHOULD BE CLASSIFIED AS VACANT, NOT AS COMMERCIAL.

FRICO already set forth its arguments, supported by facts, which lead to the conclusion that its properties in the Property Class Area are vacant, not commercial. *See* Motion [Doc. No. 2517] at pp. 19-22. The Opposition responds by pointing to "numerous other commercial improvements," but citing only the dam and outlet works, ditches and canals, and one lake tender's house and associated outbuildings. Whether

-6-

these structures fall within or without the Colorado property tax statute's definition of "minor structures," § 39-1-103(14)(c), C.R.S., is not relevant because FRICO's property is not subject to taxation. The inquiry must be on the overall condition of the land, which is best described as vacant open space, which is consistent with its zoning as described in the Motion at pages 19 through 22. Indeed, commercial uses are not allowed under the existing zoning for FRICO's properties within the Property Class Area.

While the Opposition asserts that FRICO admits "that it is a commercial entity," "that it is a mutual ditch company in the business of delivering and storing water for the benefit of its stockholders," and that it delivers water "for a commercial purpose," (Opposition, p. 1, 6), FRICO made no such admissions. FRICO's actual language is: (1) "FRICO is a Colorado mutual ditch company organized in 1902;" and (2) "FRICO diverts, stores, and releases raw (untreated) water for the benefit of its stockholders." Motion, p. 2, 19. Moreover, whether FRICO is a commercial entity is not the issue; the issue is whether the use by a Colorado mutual ditch company of gravity to store and deliver water across its land to others who have the right, exclusive of FRICO, to use the water on their own land and for their own purposes, without selling any water, is a "commercial use" of the land.

Class Counsel cites dicta from *Jacobucci v. Dist. Court of Jefferson*, 541 P.2d 667, 671 (Colo. 1975), where the Colorado Supreme Court stated that FRICO is "in the business of storing and transporting water to shareholders . . . ." However, the phrase "in

the business of" was colloquial and conveyed merely the concept of what FRICO, as a mutual ditch company, does. The *Jacobucci* opinion cannot now be read as interpreting classifications *of land* in a Settlement Agreement executed forty years later.

The Opposition focuses too heavily on trying to categorize FRICO as a commercial entity instead of focusing on the specific properties owned by FRICO. The inquiry must be on the land, not its owner.

Even if the Court determines that there is a "business component" to FRICO's operations, that does not mean all 1,800 acres of FRICO's property is automatically commercial. The Settlement Agreement allows one owner to share in several different classifications. Notice to Settlement Class Members, p. 15 ("You can share in more than one bucket if you owned more than one type of property in the Property Class Area as of June 7, 1989 . . . .").

Further, the evaluation should be based on the actual state of the property. The jurisdictions within which FRICO's lands are located, and who have no stake in this determination, have classified FRICO's lands for their own governmental and land use purposes. Their determinations are helpful. Jefferson County describes FRICO's land as "vacant." See Doc. No. 2517-1, pp. 21–44; Doc. No. 2517-6, pp. 9, 24, 38, 51. The City of Westminster zoned Standley Lake and the surrounding property where FRICO owned land on June 7, 1989, as "O-1 Open/Agriculture." The City of Arvada zoned the majority of FRICO's lands comprising the Croke Canal in the C-1 Conservation District and the

A-1 Agricultural District, and Jefferson County zoned portions of FRICO's unincorporated lands comprising the Croke Canal in the A-1 and A-2 Agricultural Zone Districts. *See* Motion [Doc. No. 2517], pp. 10 – 11, ¶¶ 34–36.

The property expert states, with no foundation or expertise, that "FRICO's buffer land abutting the lake is to protect the integrity of the water supply, and since at least the 1970's was intended for recreation or park use." Hunsperger Dec., ¶ 8.c. He doesn't say whose intent he is referring to or how he has personal knowledge of such facts, but land that is "intended for park use" would seem to be referring to vacant land, but for his added condition that vacant land must be "suitable for development." Whether land is suitable for development says nothing about whether the land is vacant, nor does land's vacancy *vel non* say anything about whether it is suitable for development.

Mr. Hunsperger also provides in his declaration his understanding of what distinguishes commercial land from vacant land, but these definitions do not appear in any of the settlement documents. As discussed below, the definitions are not mutually exclusive. He could as easily have said, "Vacant land is land that doesn't have buildings on it," and this would be more consistent with the common understanding of what it means for land to be vacant. Under his definition of vacant land, land that would otherwise meet any other definition of vacant—unimproved, empty land that is not being used for anything—might not meet his definition of Vacant Land if (as is the case with FRICO's land) zoning prevents the development of the property for anything other than

-9-

agricultural or open space use. Under his definitions, a field of pasture land on which cattle graze would be commercial land. A furrowed field of row crops has "structures" on it, so under his definition that would be commercial land. In any event, the unfounded assertion that FRICO's buffer land abutting the lake is to protect the integrity of the water supply is incorrect. FRICO would not have conveyed the property to another entity if the land protected the very integrity of its system. Edgar Dec., ¶ 19.

Without specific judicial guidance, the Settlement and Claims Administrator developed its own definitions for the commercial category. Commercial land is, according to the Administrator's definition, land that is "income producing, . . . capable of producing income, or . . . used for business purposes." This three-pronged definition is too broad to be applied in every situation. Most vacant land is "capable of producing income." FRICO asserts that the Settlement and Claims Administrator's self-created definition cannot be applied in a one-size-fits-all fashion. Land can be both vacant and capable of producing income. Other than one lake tender's house, FRICO's properties have no buildings, shops, stores, offices, public roads or other above ground structures and should therefore be classified as vacant.

### C. FRICO'S CLAIM WOULD NOT RESULT IN A WINDFALL.

FRICO seeks treatment equal to all other Class members, nothing more. If its 1800 acres within the Property Class Area were all to be classified as vacant, and that leads to a calculation of entitlement to $4 million, that is what it is entitled to. It is not

an undeserved windfall. The Court should reject the invitation to misclassify FRICO's properties as commercial just to lower FRICO's potential claim. FRICO is puzzled (and troubled) by Class Counsel's suggestion that a payment to FRICO would be an "unwarranted overpayment" that would reduce future awards "to the rest of the Settlement Class." FRICO *is* a member of the Settlement Class, on equal footing with all other Settlement Class Members, and there is no reason FRICO should receive unequal treatment just because its claim might compute to a large number. All Settlement Class Members benefit when each member's claim receives equal treatment.

### D.  METHODOLOGY TO VALUE FRICO'S PROPERTIES.

FRICO provided the Settlement Administrator complete records of its properties in the Property Class Area. *See* Exhibits to Motion [Doc. Nos. 2517-1, 2517-2, 2517-3, 2517-5, 2517-6, 2517-8, 2517-11, and 2517-12]. These records provide the best factual basis for determining the extent (*i.e.*, acreage) of FRICO's property ownership in the Property Class Area as of June 7, 1989.

Up to this point, the Settlement Administrator and its property expert have not accepted the evidence of the extent of FRICO's holdings, but the records are not disputed. FRICO is confident that after the Court rules that FRICO is a Settlement Class Member, the Administrator will accept the acreage and move on to the more complex process of classifying FRICO's various parcels on a property-by-property basis as either vacant or commercial, and then determining the value of each parcel in the absence of

complete and accurate valuations from the assessor. While other class members have their claims valued based on the assessor's parcel ID numbers and assessed values, more is required in FRICO's case. All parties acknowledge that the county assessor records are neither complete nor accurate with respect to FRICO's properties. As has been mentioned several times by both parties, the Assessor did not value some of FRICO's properties at all, and assigned arbitrary values to others, simply because the properties are tax exempt, and performing valuations using the same methodology as the Assessor used for taxable parcels served no county purpose.

Further, one of the ways the Administrator proposes assigning an assessed value to FRICO's property is to sum the assessed values from a list the Jefferson County Assessor's Office sent to the Administrator. *See* Doc. No. 2518-1, p. 9. The sum of the listed assessed values is $1,093,540, and the Administrator describes this number as "Jefferson County's assessed value." *See* Doc. No. 2518-1, p. 6, ¶11.a. However, as FRICO has previously shown, some of FRICO's property is located within the parcel ID, some is only located partly within a parcel ID, and some of FRICO's land within the Claim Area does not have a parcel ID number at all. Doc. No. 2517, p. 6, ¶¶15, 16; *See e.g.,* Doc. No. 2517-6, p. 5. Notwithstanding the fact that the parcels on the Assessor's list do not contain all of FRICO's property, two of the parcels in the list do not contain any assessed value, the Assessor admits he did not try to assign an accurate assessed value to any of FRICO's property, and the Administrator and property expert have not

attempted to account for that. Accordingly, using "Jefferson County's assessed value" to value FRICO's property would necessarily undervalue FRICO's claim because it excludes portions of FRICO's land and assigns zero value to known parcels.

When requested to value its properties, FRICO did the best it could with what little information it could get from the assessor. *See* Motion [Doc. No. 2517, p. 7, ¶ 18.] It took a weighted average of canal parcels and reservoir parcels that were assessed and then applied that number to the parcels that did not have a value assigned. This methodology undoubtedly produced an inaccurate result since the assessor had no incentive to assign accurate valuations. More accurate results would be produced if the Administrator would reveal how other vacant and commercial properties in the Property Class Area were valued.

If the Court is required to make these determinations it will require an evidentiary hearing, and if an evidentiary hearing is necessary FRICO will have no choice but to renew its efforts to obtain discovery.

FRICO believes, however, that with guidance from the Court, FRICO and the Settlement Administrator will be able to come to agreement on FRICO's claim. The Court can assist the Parties in this process by determining that land owned by a mutual ditch company used for storage and conveyance of water is vacant, not commercial. The Court can further assist the Parties by ruling that land adjacent to reservoirs and canals that is neither under water nor has or ever had any structures is vacant, not commercial.

Finally, the Court can assist the Parties by ordering them to engage in a good faith effort to determine valuations on the same basis as other properties using a transparent and objective valuation process through which FRICO can gain knowledge about how the Administrator values not only FRICO's land but also other vacant and commercial land in the Property Class Area.

## III.   CONCLUSION.

The Court can assist the parties in resolving the issues presented by the Motion by confirming that FRICO is a Settlement Class Member entitled to a distribution of its pro rata share of the property settlement fund.  The Court can further assist the parties by setting clear, workable standards for determining what is vacant and what is commercial in the context of FRICO's claim, understanding that not every parcel needs to be treated or classified the same.  Finally, the Court may assist the parties by ordering them to develop and participate in a fair and transparent valuation process that does not rely exclusively on the County Assessor's records, since those records have been shown to be incomplete and inaccurate.  Rather, the parties should be ordered to participate in a valuation process that treats FRICO's claim the same as other class members' claims.  In addition, the Court should reserve ruling on FRICO's request for an evidentiary hearing, in the event one becomes necessary if the parties cannot come to an agreement following this Court's guidance.

-15-

DATED this 16th day of August 2018.

        */s/ Joseph B. Dischinger*
        Craig D. Joyce
        Joseph B. Dischinger
        Dean C. Hirt, III
        Fairfield and Woods, P.C.
        1801 California Street, Suite 2600
        Denver, Colorado 80202
        (303) 830-2400
        (303) 830-1033 (fax)
        E-Mail: jdischinger@fwlaw.com
        E-Mail: cjoyce@fwlaw.com
        E-Mail: dhirt@fwlaw.com

        ATTORNEYS FOR THE FARMERS RESERVOIR AND IRRIGATION COMPANY

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on this 16th day of August 2018, a true and correct copy of the foregoing **THE FARMERS RESERVOIR AND IRRIGATION COMPANY'S REPLY IN SUPPORT OF ITS MOTION FOR REVIEW OF THE SETTLEMENT AND CLAIMS ADMINISTRATOR'S DENIAL OF ITS CLAIMS** was sent to the following by U.S. First-Class Mail

          Vicki Foy
          718 Sherman Street
          Fort Morgan, Colorado 80701

and the undersigned hereby certifies that the foregoing **THE FARMERS RESERVOIR AND IRRIGATION COMPANY'S REPLY IN SUPPORT OF ITS MOTION FOR REVIEW OF THE SETTLEMENT AND CLAIMS ADMINISTRATOR'S DENIAL OF ITS CLAIMS** was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Joseph John Bronesky | jbronesk@shermanhoward.com |
| | efiling@sah.com |
| | ddavis@shermanhoward.com |
| Merrill Gene Davidoff | mdavidoff@bm.net |
| | sleo@bm.net |
| Paul De Marco | demarcoworld@yahoo.com |
| Michael Alan Galasso | mgalasso@rkpt.com,bbass@rkpt.com |
| Marcy Geoffrey Glenn | mglenn@hollandhart.com |
| | kjoriley@hollandhart.com |
| | IntakeTeam@HollandHart.com |
| Lester C. Houtz | lester.houtz@bartlit-beck.com |
| | renee.grimmett@bartlit-beck.com |
| Steven William Kelly | skelly@s-d.com |
| | cchristman@s-d.com |
| | penningtonv@s-d.com |
| Douglas J. Kurtenbach | dkurtenbach@kirkland.com |

-16-

|  | mnomellini@kirkland.com |
|---|---|
|  | joppenheimer@kirkland.com |
| Bradley Aaron Levin | bal@levinsitcoff.com |
|  | nrp@levinsitcoff.com |
|  | kjh@levinsitcoff.com |
|  | naw@levinsitcoff.com |
|  | bjh@levinsitcoff.com |
| Mark S. Lillie | mlillie@kirkland.com |
| Jean Geoppinger McCoy | jmccoy@wgmlpa.com |
| Susan S. Minamizono | ssm@levinsitcoff.com |
|  | nrp@levinsitcoff.com |
|  | kjh@levinsitcoff.com |
| Jarrod Martin Mohler | jmohler@rkpt.com |
|  | pledonne@rkpt.com |
|  | bbass@rkpt.com |
| Peter B. Nordberg | pnordberg@bm.net |
|  | peter@nordberg.us |
| Ellen T. Noteware | enoteware@bm.net |
|  | csimon@bm.net |
| Douglas M. Poland | dpoland@gklaw.com |
| Louise M Roselle | lroselle@msdlegal.com |
|  | dpendygraft@msdlegal.com |
|  | dholcomb@msdlegal.com |
| Daniel R. Satriana , Jr | satriana@sbattys.com |
|  | epsteini@csbattorneys.com |
| Ronald Simon | ron@1707law.com |
|  | mike@1707law.com |
| David F. Sorensen | dsorensen@bm.net |

-18-

| Michael A. Thurman | michael@thurman-legal.com |
|---|---|
| Martin Thomas Tully | martin.tully@actuatelaw.com |
| Kevin T. Van Wart | KevinVanWart@kirkland.com |
|  | jmiller13@dow.com |
| Juan G. Villasenor | juan.villasenor@usdoj.gov |
|  | annette.dolce@usdoj.gov |
|  | USACO.ECFFLUAtty@usdoj.gov |
|  | USACO.ECFCivil@usdoj.gov |
|  | CaseView.ECF@usdoj.gov |
| Bradley Herman Weidenhammer | bradley.weidenhammer@kirkland.com |
|  | nshea@kirkland.com |
| Carlotta P. Wells | carlotta.wells@usdoj.gov |
| John Stuart Zakhem | jszakhem@jacksonkelly.com |
|  | jadelay@jacksonkelly.com |
|  | amaher@jacksonkelly.com |
|  | mvo@jacksonkelly.com |

*/s/ Susan Wilkerson*
Susan Wilkerson, Paralegal