**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-00181-JLK

---

MERILYN COOK, *et al.*,

Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

Defendants.

---

**CLASS COUNSEL'S OPPOSITION TO THE FARMERS RESERVOIR AND IRRIGATION COMPANY'S APPEAL OF CLASS COUNSEL'S DETERMINATION OF FRICO'S CLAIM**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

I. Introduction ........ 1

II. Background Regarding FRICO's Claim ........ 2

III. The Court Should Affirm the Settlement and Claims Administrator's Determination That FRICO's Entire Property Should Be Designated as Commercial ........ 3

IV. The Court Should Affirm the Settlement and Claims Administrator's Use of Jefferson County's 1989 Assessed Values to Calculate FRICO's Claim Value ........ 8

V. The Court Should Deny FRICO's Requests for Discovery ........ 11

VI. Conclusion ........ 13

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Epstein v. Wittig*,
2005 WL 3276390 (D. Kan. Dec. 2, 2005) ... 12

*Hershey v. ExxonMobil Oil Corp.*,
2012 WL 4758040 (D. Kan. Oct. 5, 2012) ... 12

*In re Exxon Valdez*,
2010 WL 11619418 (D. Ala. Aug. 11, 2010) ... 9

*Jacobucci v. Dist. Court In & For Jefferson Cty.*,
541 P.2d 667 (Colo. 1975) ... 3, 4

*Mission Viejo Co. v. Douglas Cty. Bd. of Equalization*,
881 P.2d 462 (Colo. App. 1994) ... 4

*Nelson v. Lake Canal Co. of Colorado*,
644 P.2d 55 (Colo. App. 1981) ... 4

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
314 F.3d 1180 (10th Cir. 2002) ... 12

## Statutes

Colo. Rev. Stat. § 7-42-101 ... 4

Colo. Rev. Stat. § 7-42-104 ... 4

Colo. Rev. Stat. § 39-1-102 ... 5

Colo. Rev. Stat. § 39-1-103 ... 5

## Rules

Fed. R. Civ. P. 26(b)(2)(c) ... 11

Fed. R. Civ. P. 26(b)(1) ... 11

## I. Introduction

Class Counsel respectfully submits this Opposition to The Farmers Reservoir and Irrigation Company's Appeal of Class Counsel's Determination of FRICO's Claim, filed at Doc. No. 2542 ("FRICO Appeal").

FRICO appeals two of Class Counsel's and the Settlement and Claims Administrator's determinations regarding FRICO's claim. First, FRICO has appealed Class Counsel's and the Settlement and Claims Administrator's determination that FRICO's property was properly treated as "commercial" rather than "vacant." Specifically, FRICO requests that the Court "find and conclude that all of FRICO's land within the Property Class Area is vacant land, or, alternatively, find and conclude that 415.02 acres of FRICO's claim are properly classified as vacant land and 1,395.51 acres are classified as commercial land for purposes of the Settlement." FRICO Appeal, at 4. This appeal should be denied because the Settlement and Claims Administrator correctly determined that all of FRICO's property was "commercial" as of June 7, 1989; it was used primarily for a commercial purpose, could not be readily developed, and so was not "vacant."

Second, FRICO disputes Class Counsel's and the Settlement and Claims Administrator's determination that FRICO's claim value should be calculated based on Jefferson County's assessed values as of 1989. FRICO ignores that the Court-approved Plan of Allocation expressly allows for allocation based on the 1989 assessed values. *See* Doc. No. 2407-2, ¶ 9. The 1989 assessed values were used as the basis to calculate every single other claimant's claim value. *See* Declaration of Wayne L. Hunsperger in Response to the Farmer's Reservoir and Irrigation Company's Appeal of Class Counsel's Determination of FRICO's Claim, dated February 5, 2019, filed herewith ("Hunsperger Decl."), at ¶ 11. FRICO's request for special treatment is baseless and should be denied—its claim value should be based on Jefferson County's 1989

assessed values, just as the Jefferson County 1989 assessed values were used to calculate the property values of every other claimant.

In addition to these two substantive complaints, FRICO has requested a two-day hearing and discovery to address these issues. Neither is warranted nor appropriate. The Court can and should deny FRICO's Appeal based on the briefing. FRICO's requests for discovery should be denied because FRICO lacks standing to request discovery, and, in any event, the discovery that it requests would be burdensome and irrelevant to the two issues in dispute in any event. The Court previously rejected a nearly identical FRICO request for discovery (Doc. No. 2521), and should reject FRICO's renewed request for discovery for the same reasons.

## II. <u>Background Regarding FRICO's Claim</u>

The Court is familiar with FRICO's claim from the prior briefing submitted in connection with The Farmers Reservoir and Irrigation Company's Motion, filed at Doc. No. 2517. Class Counsel respectfully incorporates its prior briefing by reference (*see* Doc. Nos. 2518, 2519, 2520, 2525), and will briefly summarize the relevant history below.

FRICO's claim has been accepted in accordance with the Court's prior Order Granting in Part and Denying in Part the Remainder of FRICO's Motion for Review of the Claims Administrator's Denial of its Claims, Doc. No. 2528. The FRICO claim relates to property that FRICO owned within the Class Area, including land beneath Standley Lake and its adjacent canals, land that is largely underwater. Hunsperger Decl., ¶ 4. FRICO's Property is operated as a municipal water supply, and the rights to FRICO's Property are shared between FRICO and the City of Westminster: the City holds an easement on Standley Lake and its surrounding land granting the City "all rights to develop, permit, supervise, operate, carry-out, and maintain

recreation uses and programs on and within Standley Lake."[1] The City currently operates Standley Lake Regional Park on property that includes FRICO's Property, charging fees for visitors to visit the Property and rent paddle boards, canoes, kayaks, and inflatable rafts for use on Standley Lake.[2]

## III. **The Court Should Affirm the Settlement and Claims Administrator's Determination That FRICO's Entire Property Should Be Designated as Commercial**

The Plan of Allocation expressly provides that the Settlement and Claims Administrator shall consult appropriate sources in order to classify each Class property as commercial, residential, or vacant as of June 7, 1989.[3] The Settlement and Claims Administrator did exactly that and, after reviewing FRICO's claim and meeting and conferring with FRICO, correctly determined that all of FRICO's property that was the basis for FRICO's claim was properly designated as "commercial land," not "vacant," because of the undisputed fact that FRICO's Property was and is used for commercial purposes. *See Jacobucci v. Dist. Court In & For*

---

[1] *See* Doc. No. 2517-1, at 15 (FRICO's deed to FRICO's Property); *see also* Hunsperger Decl., ¶ 11.

[2] *See* Standley Lake Regional Park, available at https://www.cityofwestminster.us/ParksRecreation/Parks,TrailsOpenSpace/StandleyLakeRegionalPark (last accessed Feb. 5, 2019).

[3] *See* Doc. No. 2407-2, ¶ 7 ("For each property located in the Property Class Area ("Class Property"), the Settlement and Claims Administrator shall consult appropriate records and data, from Jefferson County and Broomfield County, Colorado, and such other sources as the Settlement and Claims Administrator may reasonably determine to be suitable and reliable, for the purposes of: (a) determining ownership of the Class Property as of June 7, 1989; (b) associating the property, and its owner(s) as of June 7, 1989; and (c) assigning the Class Property to one of the three property categories: commercial, residential, or vacant as of June 7, 1989."); *see also* Doc. No. 2470, Order Granting Final Approval of Plaintiffs' Proposed Plan of Allocation.

*Jefferson Cty.*, 541 P.2d 667, 671 (Colo. 1975) (noting that FRICO "is engaged in the business of storing and transporting water to shareholders who own the right to use the water.").

Mutual ditch companies like FRICO are considered private corporations under Colorado law[4]—they store and deliver water to their stockholders in exchange for an annual fee. *See Jacobucci*, 541 P.2d at 671 (citing Colo. Rev. Stat. § 7-42-104); *see also Nelson v. Lake Canal Co. of Colorado*, 644 P.2d 55, 57 (Colo. App. 1981) ("[Colorado mutual ditch companies are] engaged in the business of storing and transporting water to its shareholders, who own the right to use the water. Delivery of the water is conditioned on payment of an annual assessment levied to meet operating expenses of the company."). Mutual ditch companies are also responsible for "keeping the ditches, canals, reservoir, and other works in good repair, the expense of which is paid from the [annual fees]." *See Jacobucci*, 541 P.2d at 672 (internal citation omitted). Therefore, all three of the factors that qualify a property as "commercial" apply to FRICO's Property: (1) FRICO's Property produces income in the form of annual fees, (2) it is capable of producing income, and (3) FRICO's Property is used for a business purpose.[5]

The Class's property expert, Mr. Hunsperger, has explained that FRICO's property is "commercial land" and not "vacant land" because (a) the property is operated as a municipal water supply for three Colorado cities; (b) FRICO's operation of the Standley Lake water supply

---

[4] Doc. 2517-1, at 9 (FRICO's Claim form states that "Mutual ditch companies are considered private corporations under the laws of the State of Colorado."); *see also* Colo. Rev. Stat. § 7-42-101 (defining mutual ditch corporations to be corporations formed by three or more people "for the purpose of constructing a ditch, reservoir, pipeline, or any part thereof to convey water from any natural or artificial stream, channel, or [other] source").

[5] The fact that FRICO is a non-profit rather than a for-profit company is irrelevant. Non-profit owned properties qualify as "commercial" if they are used for commercial or income-producing purposes. *See Mission Viejo Co. v. Douglas Cty. Bd. of Equalization*, 881 P.2d 462, 466 (Colo. App. 1994) (defining commercial property as property used for "dealings between individuals or groups in society," and holding that a non-profit community center meets the definition of "commercial" for purposes of assessing property tax).

system is used for business purposes, whereby water is allocated to shareholders (municipalities), even if the business is "non-profit"; (c) much of FRICO's property is under water (Standley Lake) and has not been vacant land since the early 1900's; the lake and adjoining land now comprise the Standley Lake Regional Park; and (d) FRICO's transfer deeds legally describe the property as "Standley Lake Dam and Reservoir," subject to a recreation easement related to recreation uses on and within Standley Lake. Hunsperger Decl., ¶ 6.

Classifying FRICO's property as "commercial land" and not "vacant land" is consistent with Colorado law. Colorado's property tax statute defines "vacant land" as "any lot, parcel, site, or tract of land upon which no buildings or fixtures, other than minor structures, are located." Colo. Rev. Stat. § 39-1-103(14)(c). The Colorado property tax statute expressly states that "vacant land" does not include any land with "improvements, other than site improvements or minor structures, [that] have been erected upon or affixed" to the property. *Id.* "'Improvements' means all structures, buildings, fixtures, fences, and water rights erected upon or affixed to land, whether or not title to such land has been acquired." Colo. Rev. Stat. § 39-1-102.[6] In addition to the water rights attached to FRICO's Property (which are owned by FRICO's stockholders),[7] FRICO's Property features numerous other commercial improvements

---

[6] The statute defines "minor structures" as "improvements that do not add value to the land on which they are located and that are not suitable to be used for and are not actually used for any commercial, residential, or agricultural purpose." Colo. Rev. Stat. § 39-1-103. "Site improvements" are defined as "streets with curbs and gutters, culverts and other sewage and drainage facilities, and utility easements and hookups for individual lots or parcels." The definitions of "minor structures" and "Site Improvements" show that they are intended to include only ancillary improvements initiated in anticipation of a greater intended use of the property. FRICO's Property's commercial structures, buildings, and attached water rights, on the other hand, do not fall under either definition and constitute the final intended use of the Property.

[7] *See* Doc. 2517, at 19 ("The amount of water to which its stockholders are entitled is determined by each stockholder's pro-rata ownership of FRICO stock.").

including a mile-long dam,[8] an outlet works structure used to release and regulate water flow for the dam, and numerous ditches and canals that have been enlarged, repaired, and maintained by FRICO.[9] As of June 7, 1989 (the relevant date for purposes of FRICO's claim), FRICO's Property also included "a lake tender's house and associated outbuildings."[10] In short, because the Property includes numerous "improvements," FRICO's Property cannot properly be classified as "vacant land."

Finally, FRICO claims that, in the event the Court finds that the majority of its property should be classified as "commercial land," that 415.02 acres of FRICO's claim should be classified as "vacant land" (with FRICO's other 1,395.51 acres classified as commercial land). FRICO Appeal, at 4. For the reasons set forth in Mr. Hunsperger's accompanying declaration, there is no basis to treat any portion of FRICO's property as vacant land. Hunsperger Decl., ¶ 7. Among other reasons, subdivision and development of the FRICO property would not have been permitted by existing zoning (potentially with some limited exceptions), nor would it have been consistent with intended land use as regional park and recreation facility. *Id.* ¶ 7(a); *see also id.* ¶ 7(d). In addition, much of the 415 acres FRICO claims should be treated as vacant land

---

[8] *See* Standley Lake Regional Park, available at https://www.cityofwestminster.us/ParksRecreation/Parks,TrailsOpenSpace/StandleyLakeRegionalPark (last accessed Jan. 30, 2019) ("The dam, which is one mile long, is private FRICO property and is off-limits to the public."); *see also Jefferson County Historical Commission: Croke Canal*, available at https://placenames.jeffco.us/search3.cfm?ps_oid=221677&search= (last accessed Jan. 30, 2019) (describing the construction of the Croke Canal, which is included in FRICO's Property).

[9] Doc. 2517, at 4 (noting that FRICO's Property includes the "Standley Lake dam and outlet works").

[10] Doc. 2517, at 4 ("There is a lake tender's house and associated outbuildings on land near Standley Lake that FRICO owned on June 7, 1989, which land has since been sold to the City of Westminster.").

operates as a buffer for the rest of FRICO's property, that is, it supports FRICO's use of its property for commercial purposes. *Id.* ¶ 7(c).[11]

This Court previously recognized that "FRICO's properties serve a commercial purpose and are not mere investments in free, unoccupied land. They are held for the benefit they impart to its shareholders via the commercial services performed - the storage and delivery of water. While this commercial activity does not necessarily require structures, some are located on the properties and the lake and canals themselves could be considered structures." Doc. 2528, at 4. The Court stated that "the Claims Administrator's interpretation of the terms commercial, residential, and vacant in classifying properties to be reasonable," and concluded that "I am drifting toward classifying FRICO's properties as commercial and not vacant." *Id.* The Court should, consistent with its prior Order, deny FRICO's appeal and uphold Class Counsel's and the Settlement and Claims Administrator's determination that FRICO's property should be classified as "commercial" for purposes of calculating FRICO's claim amount.[12]

[11] FRICO's Appeal incorrectly claims that it is undisputed that "FRICO owned over 400 acres of land on June 7, 1989, that was completely unimproved, had no structures or roads on it, and was never used to convey or store water or for any other purpose." *See* FRICO Appeal, at 2. This is a new claim for which FRICO has provided no support, but this claim is immaterial to FRICO's appeal in any event.

[12] FRICO's Appeal incorrectly claims that it is undisputed that "The Jefferson County Assessor's 1989 assessed valuations of FRICO's property were arbitrary." *See* FRICO Appeal, at 2. We do not have enough information to respond to FRICO's claim that the Jefferson County Assessor's 1989 assessed valuations of FRICO's property were "arbitrary"; as we have previously explained to FRICO, however, we believe that the Jefferson County's 1989 assessed values should be used to value FRICO's claim, just as the Jefferson County's 1989 assessed values were used to value the claims for all other claimants. Class Counsel agrees that Jefferson County classified FRICO's properties as "vacant," which classification we believe was incorrect as discussed above. This was apparently a convenience to the County, as FRICO paid no property taxes.

## IV. **The Court Should Affirm the Settlement and Claims Administrator's Use of Jefferson County's 1989 Assessed Values to Calculate FRICO's Claim Value**

The Court should also deny FRICO's appeal of Class Counsel's and the Settlement and Claims Administrator's determination that FRICO's claim value should be calculated based on Jefferson County's assessed values of FRICO's property as of 1989.

The Plan of Allocation specifically provides that the Net Settlement Fund be allocated based on the 1989 assessed values. *See* Doc. No. 2407-2, ¶ 9 ("Based on Jefferson County and Broomfield County tax assessment records from April 1989 and such other sources as the Settlement and Claims Administrator may reasonably determine to be suitable and reliable, the Settlement and Claims Administrator shall determine, for each Class Property, the Class Property's assessed value, expressed as a fraction of the total assessed value of all Class Properties within the same category (the property's 'Fractional Allocable Share')."); *see also id.* ¶ 7 & n.2. FRICO and the other Class members received notice that allocation of the Settlement Fund would "be calculated on a *pro rata* basis based on the assessed value of the property you owned (or are the heir from the owner or successor to the entity which owned the property) as of June 7, 1989 located within the Property Class Area." *See* Notice, at 4.[13] The Notice further explained that:

> These calculations will be done using property and appraisal data obtained by the Settlement and Claims Administrator from Jefferson County Colorado Assessor's Office, Property Records Division in connection with the administration of this Settlement. The information obtained from Jefferson County relates to property assessments completed by the County in April 1989, which is closest in time to

[13] The Notice was filed at Doc. No. 2407-3, and is also available on the settlement website at http://www.rockyflatssettlement.com/DocumentHandler.ashx?DocPath=/Documents/RF_LongForm_Generic.pdf. The Court approved the Notice and the Notice Plan at Doc. No. 2471, ¶¶ 5-6. *See also* Doc. No. 2416, ¶¶ 13-17 (preliminarily approving the forms of Notice and the notice plan).

> June 7, 1989, along with property code type data from 1992, the earliest date on which such property type data is available.

*Id.* at 15.

There were no objections to the Plan of Allocation from FRICO or any other Class member, and the Plan of Allocation received final approval from the Court on April 28, 2017. *See* Doc. No. 2470, Order Granting Final Approval of Plaintiffs' Proposed Plan of Allocation. No appeal was taken of the Court's Order approving the Plan of Allocation. In accordance with the Plan of Allocation, the 1989 assessed values were used as the basis to calculate every single claimant's claim value, including FRICO's. *See* Declaration of Hunsperger Decl., at ¶ 11.

FRICO has waived any objection to the Plan of Allocation, and its appeal should be denied as an untimely objection to the Plan of Allocation. *See, e.g.*, *In re Exxon Valdez*, No. 89-95, 2010 WL 11619418, at *2 (D. Ala. Aug. 11, 2010) (holding that after the plan of allocation had been published to the class and received final approval from the court, it was "way too late for anyone to be questioning the terms for or the allocations to claim categories or the terms of the plans for distribution of allocations to the various individual claimants"). FRICO's claim value should be calculated based on its property's 1989 assessed values, just as the 1989 assessed values were used to calculate the property values of every other Class member. *See* Declaration of Hunsperger Decl., at ¶ 11.

Moreover, FRICO has not offered any workable way to calculate the value of its claim. FRICO's first proposal is to "(1) determine the fair market value ("FMV") of land within and nearby the Property Class Area on a per-acre basis in 2018; (2) multiply the per-acre 2018 FMV by the number of acres in FRICO's claim to calculate the FMV of FRICO's property in 2018; (3) multiply the FMV of FRICO's property in 2018 by 29% to reach a 2018 assessed valuation of FRICO's Property; and (4) discount the 2018 assessed valuation to 1989 dollars to determine the

1989 assessed valuation. Another alternative would be to determine the average assessed value per acre or square foot of all of the eligible vacant and commercial land in the Property Class Area for which claims were timely submitted, and to pay FRICO based on those average values." FRICO Appeal, at 11.

As Mr. Hunsperger explains in his declaration, the first "methodology is not workable" and would be "inordinately complex and expensive":

> a) FRICO's step 1 entails an inordinately complex and expensive appraisal of potentially thousands of acres of undefined land. As all real estate appraisals must comply with the Uniform Standards of Professional Appraisal Practice, such an endeavor would likely cost at least 100 thousand dollars or more and take several months, in part because the lands to be appraised would have to be comparable at least in use to the FRICO lands. Few if any such comparable types of properties sell in the private market, and it would be methodologically improper to compare FRICO land to subdivided, zoned land (unencumbered by a recreation easement); and
>
> b) Using 2018 sales data to arrive at a conclusion of 1989 value would lead to no credible answer. Almost 30 years have passed, and it is impossible to reasonably account for all the differences that have occurred in the market over such a dramatic time frame.

Hunsperger Decl., ¶ 8.

FRICO's second, "alternative proposal" is no better. FRICO's alternative proposal is to "determine the average assessed value per acre or square foot of all of the eligible vacant and commercial land in the Property Class Area for which claims were timely submitted, and to pay FRICO based on those average values." FRICO Appeal, at 11. It is not possible to implement this alternative proposal because, as Mr. Hunsperger explains,

> we do not have the land size, effective 1989, for the thousands of properties in the data we obtained from Jefferson County. It is thus not possible to make any comparison on a per square foot or acre basis. Even if we had the land size data, the use of an "average" makes no distinction for the relative comparability of each of the class properties in terms of zoning, entitlements, location, size, availability of utilities, and ultimate highest and best use.

Hunsperger Decl., ¶ 9.

In short, FRICO provides no justification and there is none for calculating FRICO's claim value any differently than the claim values which were calculated for every other claimant, using the 1989 assessed values provided by Jefferson County. FRICO's proposed alternative methods for calculating its claim value are unworkable, and even attempting to implement FRICO's proposals would burden the Settlement and Claims Administrator and the Class, who would bear the expense of these futile and unwarranted efforts.

## V. <u>The Court Should Deny FRICO's Requests for Discovery</u>

Finally, FRICO's requests for a hearing and discovery are improper, irrelevant, and unnecessary. FRICO's proposed discovery would burden Class Counsel and the Settlement and Claims Administrator, further increasing the expense of the claims administration at the expense of the rest of the Class. Further, no discovery is necessary to resolve the issues of (1) whether FRICO's Property should be classified as commercial or vacant; or (2) whether FRICO's claim value should be based on the 1989 assessed value of its property, which was how the claim values for all other claimants were calculated.

Fed. R. Civ. P. 26(b)(2)(c) provides that "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

*Id*. Rule 26(b)(1) provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case,

> considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, ***the importance of the discovery in resolving the issues,*** and ***whether the burden or expense of the proposed discovery outweighs its likely benefit.*** Information within this scope of discovery need not be admissible in evidence to be discoverable.

*Id*. (emphasis added).

FRICO's appeal does not entitle it to discovery. "'Class members who object . . . do not have an absolute right to discovery,'" and objector discovery is unnecessary "[where] the district judge has sufficient facts before him to intelligently approve or disapprove [the objection]." *Epstein v. Wittig*, No. 03-4081-JAR, 2005 WL 3276390, at *7 (D. Kan. Dec. 2, 2005); *see also Hershey v. ExxonMobil Oil Corp.*, No. 07-1300-JTM, 2012 WL 4758040, at *1 (D. Kan. Oct. 5, 2012) (holding that objectors need not be given "unfettered access to an existing and voluminous discovery record") (citing *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002)); *Rutter*, 314 F.3d at 1187 (affirming the lower court's denial of objector requests to take discovery of class counsel).

FRICO's requested discovery is irrelevant and unnecessary to resolve any issues raised by FRICO's Motion, and would provide no benefit. Allowing FRICO to take this discovery would needlessly and unduly burden both the Settlement and Claims Administrator and Class Counsel and cause unnecessary expense. In addition, FRICO's requested discovery would burden the entire Settlement Class. Any time and expenses devoted to FRICO's discovery requests will force Class Counsel and the Settlement and Claims Administrator to devote time, resources, and expenses to the requests that could otherwise be devoted to administering the Settlement. Therefore, the Court should resolve FRICO's Appeal without allowing irrelevant and burdensome discovery and without a hearing, just as it resolved FRICO's prior motion without allowing discovery and without a hearing. *See* Doc. No. 2521, Order Granting Class

Counsel's Motion for Protective Order (Doc. No. 2519) and Denying in Part FRICO's Motion for Review of its Claims, Discovery, and a Hearing (Doc. No. 2517).

## VI. Conclusion

Class Counsel respectfully request that the Court issue a ruling on the papers submitted in connection with FRICO's Appeal denying FRICO's appeal in its entirety, that is: (a) finding that FRICO's property is properly classified as "commercial" for purposes of calculating FRICO's claim amount, and (b) finding that FRICO's claim amount should be based on the 1989 assessed values of FRICO's property.

Dated: February 5, 2019

Respectfully submitted,

*/s/ Merrill G. Davidoff*

Merrill G. Davidoff
Caitlin G. Coslett
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 875-3000

Steven W. Kelly
S&D Law
1290 Broadway, Suite 1650
Denver, CO, 80203
(303) 399-3000

*Attorneys for Plaintiffs and the Class*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 5th day of February, 2019, he caused the foregoing submission to be served via the Court's ECF system on all participating counsel.

*/s/ Merrill G. Davidoff*

Merrill G. Davidoff
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 875-3000