IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, *et al.*,

        Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

        Defendants.

# DECLARATION OF WAYNE L. HUNSPERGER IN RESPONSE TO THE FARMERS RESERVOIR AND IRRIGATION COMPANY'S APPEAL OF CLASS COUNSEL'S DETERMINATION OF FRICO'S CLAIM

I, Wayne L. Hunsperger, declare as follows:

1. I am the principal owner of Wayne L. Hunsperger, LLC. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto. I am over 21 years of age and not a party to this action.

2. I submit this declaration in response to THE FARMERS RESERVOIR AND IRRIGATION COMPANY'S APPEAL OF CLASS COUNSEL'S DETERMINATION OF FRICO'S CLAIM.

3. I have been working on claims administration related to the settlement of this case. I have worked with Class Counsel, Dr. Mark McNulty of Pacey Economics, Inc.,[1] and Heffler Claims Group ("Heffler"), the Court-approved Settlement and Claims Administrator. I make this declaration based on my professional training, expertise, and personal knowledge, including knowledge gained while researching FRICO's claim.

4. FRICO is a mutual ditch company incorporated in 1902. The FRICO system consists of four major and several smaller reservoirs and approximately 400 miles of canals extending from the Front Range Foothills to east of Greeley, Colorado. FRICO's Standley Lake segment of their overall system facilitates the collection, storage and distribution of water directly to the cities of Westminster, Thornton and Northglenn for public use. The property that is the subject of FRICO's claims in this action includes Standley Lake, abutting open space land and portions of a series of interconnecting canals to the lake. Most of the property is under water and has been since the early 1900's. According to FRICO, 95% of their property in 1989, excluding various canals, was comprised of Standley Lake.

---

[1] Dr. McNulty's biography is available at https://www.paceyecon.com/mark-mcnulty-phd.

5. I do not dispute that most, or all, of the properties that are the subject of the FRICO claims are within the Rocky Flats Class Area, nor do I dispute FRICO's determination of those portions of the various canals that are within the Class Area. Total acreage making up the FRICO claim is 1810.77 acres. This consists of 1712.20 acres identified on the warranty deed filed at Reception No. 87152239 as "Standley Lake Dam and Reservoir" and 98.57 acres consisting of various ditches, canals and land north of the lake.

6. As I previously explained in paragraph 8 of my declaration dated July 26, 2018 (filed at Doc. No. 2518-1), if asked to classify the FRICO property into one of the three valuation categories, it is my opinion that all of FRICO's property that is the subject of FRICO's claim is properly treated as "commercial" and not "vacant." In my opinion the entire FRICO property functions as one economic unit, i.e., an integral part of the municipal water supply for three cities and is best classified for award purposes as "Commercial". For example:

    a) The operation of the Standley Lake water supply system, whereby water is sold to the Cities of Westminster, Northglenn and Thornton, serves a business purpose, even if the business is "non-profit";

    b) Most of the property is under water (Standley Lake), and so cannot be classified as "vacant" because the land under the lake cannot be developed. FRICO's buffer land abutting the lake is to protect the water shed, and since at least the 1970's was intended for recreation or park use. The lake and adjoining land now comprise the Standley Lake Regional Park; and

    c) The transfer deed legally describes the property as "Standley Lake Dam and Reservoir", subject to a recreation easement related to recreation uses on and within Standley Lake.

7. In their Appeal, FRICO asserts that as of June 7, 1989 they owned 415.02 acres of land that were completely unimproved, had no structures or roads on it, and were never used to convey or store water or for any other purpose. They believe this acreage should be classified as "Vacant Land" because "…they are free of improvements or use, they are unoccupied and that they could have been sold or developed at any time with no impact on its water delivery system". They acknowledge that zoning was an impediment to development but believe that the physical characteristics were not. I do not agree with FRICO's assertion that in 1989 the 415.02 acres constituted separately developable vacant land, nor that FRICO's property should be categorized as "vacant" land for award purposes:

    a) According to the 1989 Jefferson County zoning document (The North Plains Community Plan/Airport-Northeast) almost all the FRICO lands were designated for open space, parks and recreation; some agricultural or low-density residential use may have been permitted on part of the acreage. This is consistent with the City of Westminster's 1989 zoning document that showed Standley Lake and surrounding property as zoned "O-1 Open (Space)/Agriculture." Thus, subdivision and development of the FRICO property would not have been permitted by existing zoning (potentially with some limited exceptions), nor would it have been consistent with intended land use as regional park and recreation facility.

    b) Per the City of Westminster's official history, from the 1970's the City looked at Standley Lake and surrounding lands as a regional park and ultimately began annexing lands around the reservoir to control development and protect the water shed. To subdivide and sell or develop any part of the FRICO

4

    acreage, FRICO or any other owner would have had to engage in an extensive subdivision and re-zoning process and, in my opinion, would likely have met with considerable resistance from Jefferson County and the City of Westminster.

   c) Contrary to FRICO's assertions, there are physical limitations to severance and development of the 415.02 acres. As FRICO's maps illustrate, much of the 415.02 acreage is unusable for anything other than buffer around the lake or along the various ditches and canals.

   d) The 1712.20-acre tract identified by FRICO as Deed Parcel 15 (Standley Lake Dam and Reservoir), including 375.5 acres of dry land, 1228.30 acres of lake and 108.26 acres of dam was subject to a recreation easement in favor of the City of Westminster. Per Deed filed at Reception No. 87152238, the easement covered all rights to develop, permit, supervise, operate, carry-out, and maintain uses on and within Standley Lake. This easement is illustrative of intended land use and would have been a significant impediment if not complete obstruction to subdivision, sale and development of any part of FRICO's 1712.20-acre property (excluding canals and ditches) that is the subject of its claim.

  8. FRICO objects to the Jefferson County's 1989 assessed value for their properties, and in the alternative, they propose two methodologies, neither of which is workable or has merit. The first is stated as: 1) determine the fair market value of land within and nearby the Property Class Area on a per-acre basis in 2018; 2) multiply the per-acre 2018 fair market value by the number of acres in FRICO's claim to calculate the fair market value of FRICO's property

5

in 2018; 3) multiply the fair market value of FRICO's property in 2018 by 29% to reach a 2018 assessed valuation of FRICO's property; and 4) discount the 2018 assessed valuation to 1989 dollars to determine the 1989 assessed value. This methodology is not workable:

    a) FRICO's step 1 entails an inordinately complex and expensive appraisal of potentially thousands of acres of undefined land. As all real estate appraisals must comply with the Uniform Standards of Professional Appraisal Practice, such an endeavor would likely cost at least 100 thousand dollars or more and take several months, in part because the lands to be appraised would have to be comparable at least in use to the FRICO lands. Few if any such comparable types of properties sell in the private market, and it would be methodologically improper to compare FRICO land to subdivided, zoned land (unencumbered by a recreation easement); and

    b) Using 2018 sales data to arrive at a conclusion of 1989 value would lead to no credible answer. Almost 30 years have passed, and it is impossible to reasonably account for all the differences that have occurred in the market over such a dramatic time frame. For example, considerable research would be necessary to determine a relevant discount rate to apply to the 2018 assessed value to arrive at 1989 assessed value for property in the Class area (in Jefferson County). Over time there have been many changes to account for such as annexation, zoning, changes in the relevant comprehensive land use plan, availability of utilities and growth patterns. Common indices, such as the Consumer Price Index ("CPI") are likely not relevant because real estate didn't appreciate at the same rate as the CPI. I am not aware of any

index that would be appropriate for measuring real estate values for this type of property over the time period 1989 to today.

9. FRICO's second suggested methodology proposes to determine the average assessed value per acre or square foot of all the eligible vacant and commercial land in the Property Class Area for which claims were timely submitted, and to pay FRICO based on those average values. This method is not possible and has no merit because we do not have the land size, effective 1989, for the thousands of properties in the data we obtained from Jefferson County. It is thus not possible to make any comparison on a per square foot or acre basis. Even if we had the land size data, the use of an "average" makes no distinction for the relative comparability of each of the class properties given the variability of Class properties in terms of zoning, entitlements, location, size, availability of utilities, and ultimate highest and best use.

10. In summary, FRICO is asking to be treated differently from all other Class Members. The Plan of Allocation calls for using Jefferson County's assessed values, and that is what we have done for all other Class Members. Some Class Members have disputed their assessed values and were advised that their recourse was to prove that the assessed value of their property as of June 7, 1989 was different from the 1989 assessed value provided to us by Jefferson County, or to appeal to the Court.

11. To be consistent, it is my opinion that FRICO's award should be based on the 1989 Jefferson County assessed values (accepting FRICO's proposed calculations for land the Jefferson County Assessor failed to assess in 1989) of its property as of June 7, 1989. It remains my further opinion that the entire FRICO property functions as one economic unit, i.e., an integral part of the municipal water supply for three cities and is best classified for award purposes as "Commercial".

7

*[signature: Wayne L. Hunsperger]*

Wayne L. Hunsperger

Dated: February 5, 2019