## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-00181-JLK
_____

MERILYN COOK, *et al.*,

       Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
And THE DOW CHEMICAL COMPANY,

       Defendants.

_____

**THE FARMERS RESERVOIR AND IRRIGATION COMPANY'S REPLY IN SUPPORT OF ITS APPEAL OF CLASS COUNSEL'S DETERMINATION OF FRICO'S CLAIM**
_____

### Introduction

Although the Administrator claimed to have made a final determination of FRICO's Claim in December of 2018,[1] the Administrator has now introduced additional facts through an eight-page declaration from the property expert. *See* Declaration of Wayne L. Hunsperger in Response to FRICO's Appeal of Class Counsel's Determination of FRICO's Claim, dated February 5, 2019, Doc. No. 2549 ("Feb. 2019 Hunsperger

---

[1] "Our decisions to treat FRICO's property entirely as commercial and to use the 1989 assessed values are final." *See Exhibit 3 to FRICO's Appeal of Class Counsel's Determination of FRICO's Claim*, Doc. No. 2542-3, p. 2.

1

Declaration"). It is apparent that the Administrator had not in fact made a final determination of FRICO's claim in December of 2018, it had not disclosed the facts and analysis upon which it allegedly based its determinations, and it wasn't until FRICO's appeal that it disclosed additional facts and post-hoc reasoning upon which it claims to have made its December 2018 determination. Moreover, many of the facts and analysis upon which the Administrator now relies, and its characterization of FRICO's arguments, are simply wrong.

## Argument

### I. The Administrator has not followed the guidance of the settlement documents and this Court in classifying FRICO's land.

The Plan of Allocation of the Settlement Fund requires:

> For each property located in the Property Class Area ("Class Property"), the Settlement and Claims Administrator *shall consult appropriate records and data, from Jefferson County* and Broomfield County, Colorado, and such other sources as the Settlement and Claims Administrator may reasonably determine to be suitable and reliable, for the purposes of . . . assigning the Class Property to one of the three property categories: commercial, residential, or vacant as of June 7, 1989.

Plan of Allocation, Doc. No. 2407-2, ¶ 7 (emphasis added). It is undisputed that Jefferson County classified FRICO's property as "vacant." Class Counsel's Opposition to FRICO's Appeal of Class Counsel's Determination of FRICO's Claim, Doc. No. 2548, p. 10, n.12 ("Class Counsel's Opposition"). In addition, it is undisputed that FRICO's property was, in 1989, zoned for open space and agriculture, not for commercial, retail, or industrial use:

2

> According to the 1989 Jefferson County zoning document (the North Plains Community Plan/Airport Northeast) almost all the FRICO lands were designated for open space, parks and recreation; some agricultural or low-density residential use may have been permitted on part of the acreage. This is consistent with the City of Westminster's 1989 zoning document that showed Standley Lake and surrounding property as zoned "O-1 Open (Space)/Agriculture."

Feb. 2019 Hunsperger Declaration, p. 4, ¶7(a).

Further, the Court provided guidance in its September 7, 2018, Order that "[c]ategorization of FRICO's properties as vacant or commercial under the Plan of Allocation may relate to how the Claims Administrator has classified other property, such as that used for agricultural or recreational purposes . . . ." Doc. No. 2528 ("Order"), p. 3, n.2.  The Claims Administrator and Class Counsel have steadfastly refused to provide any information on how they classified other properties, or any indication that they even considered this guidance from the Court.  Indeed, they assert that "no discovery is necessary to resolve the issue[ ] of . . . whether FRICO's Property should be classified as commercial or vacant." Class Counsel's Opposition, p. 14.  If the Administrator has classified other agricultural, recreational, or open space lands as vacant, basic fairness and transparency require that FRICO—and the Court—have access to this information.

**II.   Many of the statements made by Class Counsel and the property expert in support of the Administrator's conclusion that FRICO's land is commercial are demonstrably false or illogical.**

   A.   <u>FRICO's Property is not "operated as a municipal water supply</u>."

3

No part of FRICO's system is operated as a municipal water supply. FRICO operates a reservoir and ditch system, which delivers raw (untreated and non-potable) water to its stockholders. Edgar Declaration dated August 16, 2018, Doc. No. 2522-1, p. 2, ¶6 ("Edgar Declaration"). Some of the stockholders in FRICO's Standley Lake Division are farmers. Some of FRICO's municipal stockholders, at their own cost and expense and at their separately owned facilities, treat and deliver water to their citizens and customers. Edgar Declaration, ¶¶10, 11, 13. Those municipalities' ownership of FRICO shares is by no means their only source of water. Additionally, some of FRICO's municipal stockholders may not treat their FRICO water, but instead use the water for irrigation purposes. FRICO has no control over what its stockholders do with the raw, untreated water FRICO delivers, so long as that water is used for a decreed purpose. Edgar Declaration, ¶10. In short, FRICO operates a reservoir. It does not operate a municipal water supply.

> B.   FRICO does not share ownership of Standley Lake with the City of Westminster.

Class Counsel asserts, "[T]he rights to FRICO's Property are shared between FRICO and the City of Westminster . . . ." Class Counsel's Opposition, p. 5. Westminster does not own any of FRICO's property, and FRICO does not receive any revenue from Westminster's use of Standley Lake. Edgar Declaration, ¶¶14, 15. Under Colorado law, an easement is a nonpossessory right in the holder to enter and use the land of another for the limited purposes authorized by the easement. *Wright v. Horse Creek*

4

*Ranches*, 697 P.2d 384, 387 (Colo. 1985).  An easement "does not carry any title to the land over which it is exercised, nor does it serve to dispossess the landowner." *Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229, 1234 (Colo. 1998), as modified on denial of rehearing.  *See also Wright*, 697 P.2d at 387 (an easement is "distinct from an ownership interest in the land itself . . .").

        C.      <u>FRICO *does* dispute that its property was used for commercial purposes</u>.

Class Counsel asserts it is an "undisputed fact that FRICO's Property was and is used for commercial purposes." Class Counsel's Opposition, p. 6.  This statement is mostly surprising because of the chutzpah it takes to say it.  The Court recognized that this is a disputed, and unresolved, issue in its previous order.  Order, pp. 3–4.

FRICO has always disputed that its property was and is used for commercial purposes.  To be clear, FRICO recognizes that a non-profit entity may nevertheless be engaged in business.  The issue here is not what kind of entity FRICO is; the issue is whether FRICO's *land* is commercial land, which the Notice of Class Settlement defines as retail and industrial property "*that was assessed as commercial property* as of June 7, 1989." Notice to Class Members, Doc. No. 2416-1 ("<u>Notice</u>"), p. 16 (emphasis added).  FRICO's land was not assessed as commercial property in 1989, and Class Counsel has provided no evidence to the contrary.  Since commercial use is, and at all relevant times has been, prohibited under the zoning of FRICO's property, it is clear that the agencies

who are responsible for determining whether property use is commercial do not agree with Class Counsel.

Even if the failure to assess the property as commercial is not determinative, Class counsel and the property expert have their facts wrong. The property expert states, "In my opinion, a water storage reservoir that constitutes a component of an overall water supply system and generates income if not profit, more accurately falls into the Commercial Property rather than the Vacant Land category." Declaration of Wayne L. Hunsperger in Response to FRICO's Reply in Support of its Motion for Review of the Settlement and Claims Administrator's Denial of its Claims, dated August 28, 2018, Doc. No. 2527 ("Aug. 2018 Hunsperger Declaration"), p. 3, ¶5. As discussed in the next section, the reservoir does not generate *any* income, let alone profit.

    D.    <u>FRICO does not sell water to its stockholders</u>.

The property expert asserts, "The operation of the Standley Lake water supply system, whereby water is sold to the Cities of Westminster, Northglenn and Thornton, serves a business purpose, even if the business is 'non-profit.'" Feb. 2019 Hunsperger Declaration, p. 3, ¶6(a). FRICO does not sell water to its stockholders. Edgar Declaration, ¶¶6, 10. Indeed, they would likely object, inasmuch as the right to use the water already belongs to FRICO's stockholders.

Class Counsel similarly suggests that the payment by stockholders of an annual assessment, which merely covers the operating expenses of the company, amounts to

6

commerce. Class Counsel's Opposition, p. 7. Class Counsel goes on to assert, incorrectly, that "FRICO's Property produces income in the form of annual fees" and "it is capable of producing income." *Id*. First, under this definition, agricultural land is capable of producing income, but agricultural land is not assessed for property taxes as retail, industrial, or commercial property. Second, <u>FRICO's land does not produce income</u>. The annual fees to which Class Counsel refers are assessments on stock. The assessment is due regardless of whether any water is stored in Standley Lake or delivered to stockholders. There have been years when FRICO did not assess any fees on the stock, because its operating costs were covered by sources unrelated to Standley Lake or its delivery of water to stockholders in the Standley Lake Division of FRICO.

Moreover, even if the non-profit storage and delivery of water is considered to be a commercial enterprise, FRICO owned hundreds of acres in 1989 that played no part in the storage and delivery of water. Edgar Declaration, ¶19. This land does not and never has had water on it; it is not used to maintain the structures that do store and deliver water; it has no structures or improvements of any kind. *Id*. at ¶20. Despite the property expert's baseless assertion, the land around the lake that FRICO sold to Westminster is not a "buffer" to protect the watershed. Edgar Declaration, ¶19. First, the relevant watershed for Standley Lake is high in the mountains that supply water to Clear Creek. *Id*. Second, if this land were necessary to protect the water quality in Standley Lake, FRICO would not have sold it. *Id*.

This fact also undermines the property expert's opinion that "the entire FRICO property functions as one economic unit . . . ."  Feb. 2019 Hunsperger Declaration, p. 3, ¶6.  The property expert offers this unsubstantiated opinion in response to FRICO's alternative argument that, even if most of FRICO's land should be treated as commercial, which FRICO denies, the portions of its property in 1989 that were not used for the storage and delivery of water (or any other purpose) and that do not have improvements or structures of any kind on them should be treated as vacant.  The majority of this land was sold to the City of Westminster after 1989.  If FRICO does not even own that land today, yet it is still able to store and deliver water as it always did, the land it sold after 1989 cannot be "one economic unit" with the land FRICO retained.

      E.     <u>The definitions of commercial and vacant land used by the Administrator and the property expert are illogical</u>.

The property expert defines vacant land as "unimproved land suitable for development."  Hunsperger Declaration dated July 26, 2018, Doc. No. 2518-1 ("<u>July 2018 Hunsperger Declaration</u>"), p. 4, ¶6.  He does not clarify how he would classify agricultural land or open space, but using his definition, such lands cannot be "vacant."  Although not mentioned before, Class Counsel and the property expert now rely on the zoning of FRICO's property to argue that FRICO could not have developed its property, and therefore the land must be deemed commercial (while ignoring the fact that the same zoning prohibits commercial activity).  FRICO's Motion for Review, Doc. No. 2517, pp. 19–22; Class Counsel's Opposition, p. 9; Feb. 2019 Hunsperger Declaration, p. 4, ¶¶7,

8

7.a.  If the land cannot be used for commercial activity, how can it be classified as commercial land?

Moreover, the argument about FRICO's ability to develop its property does not make sense.  Class Counsel and the property expert argue that land designated as open space is commercial land, not vacant.  However, they also argue that the value of commercial land varies according to the income it produces.  *See* Feb. 2019 Hunsperger Declaration, p. 7, ¶ 9.  The value of "commercial land" that cannot be used for commercial purposes, or otherwise to generate a profit, must be relatively low compared with other commercial properties.  Functionally, land that the wind whistles over and cannot be used to generate a profit is more similar to vacant land than it is to commercial land.  Class Counsel's argument places FRICO in an impossible Catch 22.  This argument will be discussed further below on the issue of valuation.

### III. The use of admittedly arbitrary assessed valuations to value FRICO's Property is arbitrary.

Class Counsel asserts that it must rely on Jefferson County's assessed valuations, because that is what the Plan of Allocation says will be used and what this Court approved.  Class Counsel's Opposition, pp. 4, 11.  However, Jefferson County itself admits that the assessed values for FRICO's parcels (at least, those parcels to which it bothered to assign any assessed values) were arbitrary.  *See* July 2018 Hunsperger Declaration, pp. 5-6, ¶9:

> [The Jefferson County Assessor's Office stated that] the assessed values [of FRICO's property] were *arbitrary* and not based on comparable sales of any property types . . . [and] . . . because the FRICO properties were exempt from taxation, and the County, dependent upon tax revenue for operations, was realizing no revenue from them, accurate assessment and classification was not a priority. *The County acknowledges that the assessed values* and property types *were arbitrarily determined.*

(Emphasis added.) Class Counsel gives this Court too little credit if it believes treating FRICO like other claimants requires the Administrator to use valuations for FRICO's property that the Assessor's Office itself admits lack factual foundation and are arbitrary.

The Administrator has not offered any alternative or made any attempt to determine a reasonable way to value FRICO's property. Moreover, the property expert's demurrer to FRICO's suggestion of using the average of values for approved settlement claims is hyperbolic and suspect. He claims "we do not have the land size, effective 1989, for the thousands of properties in the data we obtained from Jefferson County." Feb. 2019 Hunsperger Declaration, p. 7, ¶9. First, FRICO's proposal does not require a review of the data for "thousands of properties" that he obtained from the County. It would entail looking only at claims for commercial and vacant land that have been approved in the settlement. Presumably, the vast majority of claims were for individual residential properties. Second, it would be surprising if a property expert could not figure out the size of the parcels on which the Administrator was paying settlement compensation.

In addition, he suggests this method will not work because "the use of an 'average' makes no distinction for the relative comparability [sic] of each of the class properties given the variability of Class properties in terms of zoning, entitlements, location, size, availability of utilities, and ultimate highest and best use." Feb. 2019 Hunsperger Declaration, p. 7, ¶9. However, it is because FRICO's property is not developable for commercial uses that the use of an average is the only fair way to treat FRICO comparably with other claimants who own commercial, income-generating properties. It is simply not fair to say we will classify FRICO's land as if it were a Hilton Hotel or a shopping mall, but it is worth much less because FRICO does not use the land to generate as much revenue (or any revenue) as truly commercial properties.

## IV.     Clarification of request for discovery and hearing.

FRICO's request for discovery and a hearing on the issue of land classification is necessary only if the Court does not agree that the Notice of Settlement, which says only retail and industrial land that was assessed as commercial land in 1989 will be treated as commercial land, or that the classifications used by the local tax assessor and land use agencies dictate that FRICO's property must be treated as vacant land. In that instance, the Court will need to look at other properties the Administrator classified as commercial and vacant to determine if the Administrator applied consistent and logical principles in classifying FRICO's land. Similarly, if the Court agrees that using the average assessed valuation of similarly categorized properties is a fair way to accommodate the absence

11

and arbitrariness of assessed valuations for FRICO's lands, and the Administrator documents how it arrived at those average values, then there is likely no need for discovery and a hearing.  However, if the Court does not grant these requests, FRICO is without knowledge of how the Administrator made classifications of other lands in the Property Class Area and will be unable to evaluate or demonstrate to this Court that it is not being treated the same as other claimants on the issue of land classification.  In addition, although the Administrator is the only person with this information, FRICO assumes it is the only claimant with parcels that did not have an assessed valuation and other parcels with admittedly arbitrary assessed valuations.  If the Court does not agree that the use of average assessed valuations is the proper way to address this inequality of data, then discovery may be necessary to determine a non-arbitrary way to value FRICO's property.

## Conclusion

For these reasons, FRICO respectfully requests the Court to grant the relief requested in its opening brief of this appeal.

DATED this 19th day of February 2019.

> *s/ Joseph B. Dischinger*
> Craig D. Joyce
> Joseph B. Dischinger
> Dean C. Hirt, III
> Fairfield and Woods, P.C.
> 1801 California Street, Suite 2600
> Denver, Colorado 80202
> (303) 830-2400

12

(303) 830-1033 (fax)
Email: cjoyce@fwlaw.com,
jdischinger@fwlaw.com,
dhirt@fwlaw.com
ATTORNEYS FOR THE FARMERS RESERVOIR AND IRRIGATION COMPANY

**CERTIFICATE OF SERVICE**

   The undersigned hereby certifies that on this 19th day of February 2019, a true and correct copy of the foregoing **THE FARMERS RESERVOIR AND IRRIGATION COMPANY'S REPLY IN SUPPORT OF ITS APPEAL OF CLASS COUNSEL'S DETERMINATION OF FRICO's CLAIM** was sent to the following by First Class Mail:

  Vicki Foy
  718 Sherman Street
  Fort Morgan, Colorado 80701

and the undersigned hereby certifies that the foregoing **THE FARMERS RESERVOIR AND IRRIGATION COMPANY'S APPEAL OF CLASS COUNSEL'S DETERMINATION OF FRICO's CLAIM** was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Joseph John Bronesky | jbronesk@shermanhoward.com |
| | efiling@sah.com |
| | ddavis@shermanhoward.com |
| Merrill Gene Davidoff | mdavidoff@bm.net |
| | sleo@bm.net |
| Paul De Marco | demarcoworld@yahoo.com |
| Michael Alan Galasso | mgalasso@rkpt.com, bbass@rkpt.com |
| Marcy Geoffrey Glenn | mglenn@hollandhart.com |
| | kjoriley@hollandhart.com |
| | IntakeTeam@HollandHart.com |
| Lester C. Houtz | lester.houtz@bartlit-beck.com |
| | renee.grimmett@bartlit-beck.com |
| Steven William Kelly | skelly@s-d.com |
| | cchristman@s-d.com |
| | penningtonv@s-d.com |
| Douglas J. Kurtenbach | dkurtenbach@kirkland.com |
| | mnomellini@kirkland.com |
| | joppenheimer@kirkland.com |
| Bradley Aaron Levin | bal@levinsitcoff.com |

14

|                         |                                |
|-------------------------|--------------------------------|
|                         | nrp@levinsitcoff.com           |
|                         | kjh@levinsitcoff.com           |
|                         | naw@levinsitcoff.com           |
|                         | bjh@levinsitcoff.com           |
| Mark S. Lillie          | mlillie@kirkland.com           |
| Jean Geoppinger McCoy   | jmccoy@wgmlpa.com              |
| Susan S. Minamizono     | ssm@levinsitcoff.com           |
|                         | nrp@levinsitcoff.com           |
|                         | kjh@levinsitcoff.com           |
| Jarrod Martin Mohler    | jmohler@rkpt.com               |
|                         | pledonne@rkpt.com              |
|                         | bbass@rkpt.com                 |
| Peter B. Nordberg       | pnordberg@bm.net               |
|                         | peter@nordberg.us              |
| Ellen T. Noteware       | enoteware@bm.net               |
|                         | csimon@bm.net                  |
| Douglas M. Poland       | dpoland@gklaw.com              |
| Louise M Roselle        | lroselle@msdlegal.com          |
|                         | dpendygraft@msdlegal.com       |
|                         | dholcomb@msdlegal.com          |
| Daniel R. Satriana, Jr  | satriana@sbattys.com           |
|                         | epsteini@csbattorneys.com      |
| Ronald Simon            | ron@1707law.com                |
|                         | mike@1707law.com               |
| David F. Sorensen       | dsorensen@bm.net               |
| Michael A. Thurman      | michael@thurman-legal.com      |
| Martin Thomas Tully     | martin.tully@actuatelaw.com    |
| Kevin T. Van Wart       | KevinVanWart@kirkland.com      |
|                         | jmiller13@dow.com              |
| Juan G. Villasenor      | juan.villasenor@usdoj.gov      |

|  | annette.dolce@usdoj.gov |
|  | USACO.ECFFLUAtty@usdoj.gov |
|  | USACO.ECFCivil@usdoj.gov |
|  | CaseView.ECF@usdoj.gov |
| Bradley Herman Weidenhammer | bradley.weidenhammer@kirkland.com |
|  | nshea@kirkland.com |
| Carlotta P. Wells | carlotta.wells@usdoj.gov |

                                          *s/ Susan Wilkerson*
                                          Susan Wilkerson, Paralegal