IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, *et al.*,

        Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

        Defendants.

**DECLARATION OF WAYNE L. HUNSPERGER IN RESPONSE TO THE FARMERS RESERVOIR AND IRRIGATION COMPANY'S REPLY IN SUPPORT OF ITS APPEAL OF CLASS COUNSEL'S DETERMINATION OF FRICO'S CLAIM**

I, Wayne L. Hunsperger, declare as follows:

1. I am the principal owner of Wayne L. Hunsperger, LLC. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto. I am over 21 years of age and not a party to this action.

2. I submit this declaration in response to THE FARMERS RESERVOIR AND IRRIGATION COMPANY'S REPLY IN SUPPORT OF ITS APPEAL OF CLASS COUNSEL'S DETERMINATION OF FRICO'S CLAIM.

3. I have been working on claims administration related to the settlement of this case. I have worked with Class Counsel, Dr. Mark McNulty of Pacey Economics, Inc.,[1] and Heffler Claims Group ("Heffler"), the Court-approved Settlement and Claims Administrator. I make this declaration based on my professional training, expertise, and personal knowledge, including knowledge gained while researching FRICO's claim.

4. I disagree with FRICO's statement that, "No part of its system is operated as a municipal water supply". Standley Lake is the primary water supply for the Cities of Westminster, Thornton and Northglenn as explained in the following referenced documents I obtained on-line from the Jefferson County Clerk and Recorder's Office.

   a) For example, attached as Exhibit A is a September 2, 1976 Agreement between FRICO and the City of Northglenn pertaining to a water exchange system using water stored in Standley Lake.

   b) For example, attached as Exhibit B is a November 19, 1976 example of a standard agreement between Standley Lake shareholders regarding water in Standley Lake. This document references the September 2, 1976 Agreement

---

[1] Dr. McNulty's biography is available at https://www.paceyecon.com/mark-mcnulty-phd.

2

between FRICO and Northglenn providing for the "creation, construction, and implementation of a water exchange system". The document further describes Standley Lake's role in the delivery of water for (public) consumptive use.

5. FRICO claims that the Recreation Easement encumbering the property is irrelevant because it does not constitute a possessory interest. However, the easement clearly represents a restriction on the current and future use of the property that would limit or even negate marketability for any other use.

6. For the reasons outlined in Paragraph 7 of my February 5, 2019 Declaration, I do not agree with FRICO's assertion that in 1989 the 415.02 acres of land not under water constituted separately developable vacant land. It is logical that Westminster would have purchased some of FRICO's land to augment the recreational uses at and around the Standley Lake Regional Park. I continue to believe that land at the bottom of the lake should not be classified as vacant land because it is not developable. FRICO does not appear to dispute this assertion.

7. FRICO objects to the term "buffer" as being descriptive of their land abutting Standley Lake, yet the Standley Lake Regional Park South/Arvada Trails website states, "The park is preserved as a natural prairie that stretches for two miles on both north and south lakeshores as a *buffer* between homes and the lake".

8. FRICO continues to conflate the definitions of "Vacant Land" and "Commercial Property". "Commercial Property" relates to property that produces income, is capable of producing income, or is used for business purposes. For Rocky Flats damage award purposes, there is no classification of "Vacant Commercial Land".

3

9.  Nothing in FRICO's Reply brief changes my opinion that the FRICO property is an integral part of the municipal water supply for three cities and is best classified for award as "Commercial".

*Wayne L. Hunsperger* (signature)

Wayne L. Hunsperger

Dated: February 25, 2019

# EXHIBIT "A"

*Re-recorded to go into Real Estate —*

815262 815066    815066    1976 SEP 10 AM 9 17
County of Jefferson State of Co
Recorded IN
17   811

## AGREEMENT

THIS AGREEMENT, made and entered into this 2nd day of September, 1976, by and between The Farmers Reservoir and Irrigation Company, hereinafter referred to as FRICO, and the City of Northglenn, a municipal corporation existing under the laws of the State of Colorado, hereinafter referred to as Northglenn, Witnesseth:

WHEREAS the parties recognize that maintenance of existing rural-urban linkages is essential to sustaining a desirable quality of life in both the rural and urban sectors; and

WHEREAS the parties seek to work cooperatively in an effort to strengthen and enhance these rural-urban linkages for their mutual benefit; and

WHEREAS a majority of the shareholders of The Farmers Reservoir and Irrigation Company authorized and approved the concept of a water exchange as set forth in this Agreement by their vote at a special shareholders meeting held on August 24, 1976;

NOW THEREFORE FRICO for and in consideration of the delivery to FRICO by Northglenn of that additional amount of water which totals not less than ten percent (10%) of the water delivered by FRICO to Northglenn as provided herein but not less than 500 acre-feet of water and 1500 acre-feet of storage space furnished FRICO by Northglenn during each of the years in which this Agreement is operative, FRICO, on an exchange of water basis, agrees to supply Northglenn (from Standley Lake operated and controlled by FRICO) sufficient water on an annual basis for the use of Northglenn as hereinafter provided, but, subject however, to all of the terms and provisions set forth herein below:

    1.    The amount of water to be exchanged annually pursuant to this Agreement shall be based upon Northglenn's dry year demand for water in light of existing and projected population figures for the City. For the purpose of illustration, the dry year demand for the present population of approximately 35,000 would require the annual diversion of 6125 acre-feet; a population of

2901 243

17   811

*Re-recorded to go into Real Estate -*

815262 815066      815066           1976 SEP 10 AM 9:17
                                    County of Jefferson State of Co
                                    Recorded IN
                                              17   811

## AGREEMENT

THIS AGREEMENT, made and entered into this 2nd day of SEPTEMBER, 1976, by and between The Farmers Reservoir and Irrigation Company, hereinafter referred to as FRICO, and the City of Northglenn, a municipal corporation existing under the laws of the State of Colorado, hereinafter referred to as Northglenn, Witnesseth:

WHEREAS the parties recognize that maintenance of existing rural-urban linkages is essential to sustaining a desirable quality of life in both the rural and urban sectors; and

WHEREAS the parties seek to work cooperatively in an effort to strengthen and enhance these rural-urban linkages for their mutual benefit; and

WHEREAS a majority of the shareholders of The Farmers Reservoir and Irrigation Company authorized and approved the concept of a water exchange as set forth in this Agreement by their vote at a special shareholders meeting held on August 24, 1976;

NOW THEREFORE FRICO for and in consideration of the delivery to FRICO by Northglenn of that additional amount of water which totals not less than ten percent (10%) of the water delivered by FRICO to Northglenn as provided herein but not less than 500 acre-feet of water and 1500 acre-feet of storage space furnished FRICO by Northglenn during each of the years in which this Agreement is operative, FRICO, on an exchange of water basis, agrees to supply Northglenn (from Standley Lake operated and controlled by FRICO) sufficient water on an annual basis for the use of Northglenn as hereinafter provided, but, subject however, to all of the terms and provisions set forth herein below:

1. The amount of water to be exchanged annually pursuant to this Agreement shall be based upon Northglenn's dry year demand for water in light of existing and projected population figures for the City. For the purpose of illustration, the dry year demand for the present population of approximately 35,000 would require the annual diversion of 6125 acre-feet; a population of

2901 243

17   811

815262 815066          815066           1976 SEP 10 AM 9 17
                                        County of Jefferson State of Co
                                        Recorded IN
                                                              17    811
                   AGREEMENT

THIS AGREEMENT, made and entered into this 2nd day of SEPTEMBER, 1976, by and between The Farmers Reservoir and Irrigation Company, hereinafter referred to as FRICO, and the City of Northglenn, a municipal corporation existing under the laws of the State of Colorado, hereinafter referred to as Northglenn, Witnesseth:

WHEREAS the parties recognize that maintenance of existing rural-urban linkages is essential to sustaining a desirable quality of life in both the rural and urban sectors; and

WHEREAS the parties seek to work cooperatively in an effort to strengthen and enhance these rural-urban linkages for their mutual benefit; and

WHEREAS a majority of the shareholders of The Farmers Reservoir and Irrigation Company authorized and approved the concept of a water exchange as set forth in this Agreement by their vote at a special shareholders meeting held on August 24, 1976;

NOW THEREFORE FRICO for and in consideration of the delivery to FRICO by Northglenn of that additional amount of water which totals not less than ten percent (10%) of the water delivered by FRICO to Northglenn as provided herein but not less than 500 acre-feet of water and 1500 acre-feet of storage space furnished FRICO by Northglenn during each of the years in which this Agreement is operative, FRICO, on an exchange of water basis, agrees to supply Northglenn (from Standley Lake operated and controlled by FRICO) sufficient water on an annual basis for the use of Northglenn as hereinafter provided, but, subject however, to all of the terms and provisions set forth herein below:

1.  The amount of water to be exchanged annually pursuant to this Agreement shall be based upon Northglenn's dry year demand for water in light of existing and projected population figures for the City. For the purpose of illustration, the dry year demand for the present population of approximately 35,000 would require the annual diversion of 6125 acre-feet; a population of

                                              2901  243
                                              17    811

17  812
2901  244

40,000 would require 7148 acre-feet; and the maximum population projected for Northglenn of 48,000 would require the annual diversion of 7785 acre-feet. It is expressly covenanted and agreed, however, that FRICO incurs no obligation to provide water to Northglenn beyond its own physical capacity to do so. Notwithstanding any provision in this paragraph to the contrary, FRICO shall not be obligated to retain any water in Standley Lake for Northglenn beyond that amount of water which Northglenn can immediately replace for use by FRICO stockholders.

    2. Northglenn at its sole expense will obtain Water Court approval of its plan which is that following beneficial application of the water delivered to Northglenn by FRICO pursuant to this agreement, Northglenn at its sole expense will collect the water, treat it in accordance with FRICO's specifications, store it and transmit it back to the FRICO irrigation network for delivery to FRICO stockholders.

    3. Northglenn, pursuant to directions from FRICO, will return all water exchanged pursuant to this agreement acre-foot per acre-foot to the FRICO system, via transmission facilities to be constructed by Norghglenn. Net loss to the water supply occasioned by in-city consumption will be made up by Northglenn from direct flow and underground rights which Northglenn presently owns or will acquire for that express purpose. Northglenn may place water into storage in the Bull Canal storage facility or Northglenn Reservoir during times of a free river to supplement FRICO's supply, but only as approved by FRICO. The Bull Canal storage facility referred to in this paragraph shall be constructed at the sole expense of Northglenn and shall be in operating condition prior to the time when FRICO is required to exchange any water with Northglenn.

    4. If, as a result of the multiple use of water which is contemplated by this Agreement, FRICO's priority rights to the use of water are threatened with imminent curtailment by a court or other competent authority, then FRICO shall be released from any obligation to exchange water with Northglenn. At such time as Northglenn has resolved any such problems to the satisfaction of FRICO, the water exchange contemplated herein shall be resumed,

- 2 -

2901  244    17  812

17  813
2901 245

and the obligations of the parties under the contract shall be continued.

5. FRICO shall remain free from any obligation to divert water to Northglenn until such time as Northglenn has completed the construction of all necessary and related collection, storage, treatment, and transmission facilities, and has secured a decree from a court of competent jurisdiction for sufficient direct flow, underground, and storage rights to satisfy the obligations which it incurs under this Agreement, and further has secured from the Water Court, Water Division No. 1, approval of this water exchange Agreement. Furthermore, FRICO remains free from any obligation to deliver to Northglenn any water from Standley Lake at any time that Northglenn does not have in storage and available for immediate delivery to FRICO stockholders 500 acre-feet of water.

6. FRICO shall retain operational control over the release of water from Standley Lake. Before making any diversion to Northglenn, FRICO may require that a minimum of 500 acre-feet of water in excess of the amount then being diverted to Northglenn be present in storage, it being the intent of this provision to insure to FRICO that at no time will there be a deficit of water in storage.

7. As part of the consideration for this Agreement, any decrees for direct flow, underground, or storage rights presently held by Northglenn or acquired by it in the future, in satisfaction of its obligations under this Agreement, may be utilized by FRICO for its own needs consistent with the terms of this Agreement.

8. FRICO shall remain free from any obligation to divert water to Northglenn until such time as the total consideration to which FRICO is entitled under this Agreement is existing and capable of immediate implementation by FRICO. Furthermore, FRICO retains the right to discontinue the diversion of water to Northglenn in the event that Northglenn should fail to satisfy its obligations under this Agreement.

- 3 -

2901 245

17 813

17  814
2901  246

9.  It is expressly recognized and understood that the Cities of Thornton and Westminster have commenced condemnation actions against FRICO and its stockholders, describing Standley Lake and the water rights which are referred to in this Agreement, which actions are now pending in the District Court in and for Jefferson County, Colorado. Northglenn acknowledges that it makes this Agreement with full knowledge of the limitations and restrictions imposed upon FRICO by such pending condemnation actions.

10.  All administrative and legal expenses incurred pursuant to satisfying the terms and conditions of this Agreement shall be borne by Northglenn and in addition, Northglenn agrees to pay within thirty (30) days after billing from FRICO all administrative and legal expenses up to a maximum of $2,000 incurred by FRICO in the negotiation and preparation of this Agreement and related agreements. Northglenn further agrees, if requested in writing by FRICO to do so, to assume the defense of any litigation against FRICO as a consequence of its entering into this Agreement and to bear all costs directly associated with any such litigation holding FRICO harmless for the same. However, in any litigation commenced against FRICO as a consequence of its entering into this Agreement, counsel representing both FRICO and Northglenn shall have the right to participate.

11.  At no time, as a result of this Agreement, does Northglenn acquire any appropriative rights to the water provided by FRICO pursuant to this Agreement. It is expressly recognized and understood, however, that in order to effectuate the intent of the parties to this Agreement, the shareholders of the Standley Lake division of FRICO may desire to cause the creation of an interest in their water rights in favor of the City of Northglenn. Any agreement which may be entered into between the shareholders and the City of Northglenn shall be consistent with the terms and conditions of this Agreement and subsequent addendum thereto.

12.  It is expressly recognized and understood that this Agreement shall in no way operate or be construed as a conveyance

- 4 -

2901  246
17  814

17 815

2901 247

or assignment of any water rights to Northglenn; rather Northglenn agrees to contract with individual FRICO shareholders for the purpose of securing the right to divert and use the water which is contemplated to be exchanged pursuant to this Agreement. During the period in which Northglenn is seeking to obtain the contractual rights to the quantity of water required to satisfy its needs as described in this Agreement, as well as after such contractual rights have been secured, FRICO agrees that it will take all steps necessary to insure the successful implementation of the water exchange system contemplated and described in this Agreement.

13. If by March 2, 1977, Northglenn fails to provide FRICO written evidence of its financial capability to construct or acquire the water supply and all structures necessary to implement this Agreement and the exchange of water contemplated, this Agreement shall automatically terminate and be of no force and effect excepting only as to those obligations of the parties incurred under the terms hereof prior to March 2, 1977, which prior obligations shall remain binding upon the respective parties.

14. Northglenn agrees to commence acquisition and construction of the facilities required to satisfy the terms and provisions hereof by September 2, 1977 and the failure of Northglenn to commence construction of facilities as herein provided shall automatically terminate all of Northglenn's rights and privileges hereunder.

15. The term of this Agreement shall commence on September 2, 1976, and shall be in effect and binding upon the parties for so long as Northglenn shall be in compliance with each of the terms and conditions hereof.

16. If Northglenn requests and agrees to bear all expenses incident thereto, the parties shall immediately begin preparing an addendum to this Agreement setting forth in all necessary detail the structural and operational principles of the proposed water exchange Agreement.

- 5 -

2901 247

17 815

17  816
2901 248

17. If, as a result of FRICO making and entering into this Agreement, any change in FRICO's tax status pursuant to Article X, Section 3, of the Colorado Constitution occurs to FRICO's disadvantage, then Northglenn agrees to assume all FRICO obligations arising directly from the change in its tax status. Provided, however, that should this provision be found to be void as contrary to law or as outside the scope of Northglenn's Home-Rule Authority, the illegality thereof shall not affect any other provision of this Agreement. Provided further that FRICO shall be released from any obligation under this Agreement in the event that Northglenn is prohibited by law from assuming FRICO's tax obligations as contemplated by this provision.

18. The parties will work in cooperation with one another and their respective supportive staffs to insure the design, construction, and operation of a system that will be mutually accommodating and will preserve the intent of the parties as evidenced by this Agreement.

IN WITNESS WHEREOF, the parties have executed the foregoing Agreement in duplicate original counterparts on the day first above written.

Attest:                                THE FARMERS RESERVOIR AND IRRIGATION
                                       COMPANY

_Barbara Gurr_                         By _Adolph Bohlender_
Secretary                              Adolph Bohlender, President


                                       CITY OF NORTHGLENN

Attest:                                By: _Alvin B. Thomas_
                                       Alvin B. Thomas, Mayor

_Maxine A. Foster_                     By: _Harold T. Hodges_
Clerk                                  Harold T. Hodges, Mayor Pro Tem

[CITY OF NORTHGLENN, ADAMS COUNTY, COLORADO — DATE Sept 7, 1996 — CERTIFIED TO BE A TRUE AND CORRECT COPY OF THE ORIGINAL IN MY CUSTODY. CITY CLERK (SEAL) — Shirley Whitten, Deputy Clerk]

- 6 -    2901 248    17  816

# EXHIBIT "B"

Case No. 1:90-cv-00181-JLK   Document 2551-1   filed 02/25/19   USDC Colorado   pg 15 of 19

B 1092 REC 02032672   11/19/85   10:30   $15.00   1/005
F 0890 MARY ANN FEUERSTEIN CLERK & RECORDER WELD CO, CO

B 065996

65996

AR2032672

BOOK 2130 PAGE 657



WILLIAM SOKOL
COUNTY RECORDER
ADAMS COUNTY, COLO.

AGREEMENT   RECEPTION NO. 85126144

RECORDED IN
COUNTY OF JEFFERSON
STATE OF COLORADO
RECEPTION NO. 85126144
12/30/85  13:45    15.00

THIS AGREEMENT, made and entered into this __19th__ day of __November__, 1976 by and between __NORMAN W. YURK__, being a shareholder of The Farmers Reservoir and Irrigation Co., whose stock for water distribution purposes is allocated to the Standley Lake Division, hereinafter referred to as Owner, and The City of Northglenn, a Municipal Corporation existing under the laws of the State of Colorado, hereinafter referred to as Northglenn, Witnesseth:

WHEREAS the parties recognize that maintenance of existing rural-urban linkages is essential to sustaining a desirable quality of life in both the rural and urban sectors; and

WHEREAS the parties seek to work cooperatively in an effort to strengthen and enhance these rural-urban linkages for their mutual benefit; and

WHEREAS The Farmers Reservoir and Irrigation Company, hereinafter referred to as FRICO, and The City of Northglenn on the 2nd day of September, 1976 entered into an Agreement providing for the creation, construction, and implementation of a water exchange system, which is described as follows:

Water which has been legally appropriated by individual FRICO shareholders will be diverted from its place of storage in Standley Lake and transmitted by pipeline to Northglenn; Northglenn will treat the water and deliver it to its citizens for consumptive use; following consumptive use Northglenn will collect the water, treat it, and return 110% of the water

so diverted to FRICO, for distribution to its shareholders.

NOW THEREFORE Owner, for and in consideration of One Dollar ($1.00) per share of FRICO stock affected pursuant to this Agreement, in hand paid, receipt of which is hereby acknowledged, and other good and valuable consideration described in the aforementioned Agreement entered into September 2, 1976 between FRICO and Northglenn, Owner agrees that Northglenn shall have the right to use the water rights represented by the shares of stock legally or equitably owned by Owner and allocated to the Standley Lake Division of FRICO, in a manner consistent with the Agreement dated September 2, 1976 between FRICO and Northglenn.  The number of shares of stock affected by this Agreement, and their certificate numbers, are set forth opposite Owner's signature on this Agreement.

This Agreement shall be operative and binding upon the parties for a period of thirty (30) years; provided, however, that in the event that Owner desires to sever the water rights which are the subject of this Agreement from the use of Northglenn as contemplated by this Agreement and the aforementioned Agreement dated September 2, 1976 between FRICO and Northglenn, and to sell the water rights so severed to any third party, then Owner SHALL BE FREE TO WITHDRAW from any and all obligations under this Agreement, but such withdrawal may occur only after Owner has given Northglenn at least 90 days notice of his intention to effect a sale of his water rights in the manner described above by delivering to Northglenn a bonafide written offer to purchase made by a third party.

RECEPTION NO. 85126144

- 2 -

B 1092 REC 02032672  11/19/85  10:30  $15.00  3/005
F 0892 MARY ANN FEUERSTEIN CLERK & RECORDER WELD CO, CO

BOOK 2130 PAGE 659

3

During the 90 day notice period provided for above, Northglenn shall enjoy a right of first refusal entitling it to purchase the shares of stock offered for sale prior to their sale to a third party. If within 90 days following notice by Owner of his intention to sell his shares of stock, Northglenn chooses to exercise its right to purchase those shares, then Northglenn shall pay Owner the market price for such shares prevailing at the time of the offer, which price shall be at least equal to the amount offered to Owner for the same shares of stock pursuant to a bonafide written offer to purchase made by a third party. In the event that Northglenn determines not to exercise its right to purchase the shares offered for sale, Owner shall be free to sell its shares to a third party; provided, however, that any such sale to a third party shall be for a price per share which is at least as great as that price per share which was tendered to and refused by Northglenn.

It is expressly recognized and understood that all voting rights associated with the shares of stock which are the subject of this Agreement shall remain vested in the Owner for the duration of this Agreement.

It is expressly recognized and understood by the parties to this Agreement that all of the rights and privileges which inure to the benefit of FRICO under the terms and conditions of the aforementioned Agreement entered into on September 2, 1976 between FRICO and Northglenn shall also inure to the benefit of Owner.

RECEPTION NO. 85126144

4

This Agreement shall be binding upon and inure to the benefit of all heirs, grantees, successors, personal representatives, and assigns of Owner, but shall be personal as to Northglenn.

IN WITNESS WHEREOF, the parties have executed the foregoing Agreement in duplicate original counterparts on the date first above written.

CITY OF NORTHGLENN

By _Alvin B. Thomas_
Alvin B. Thomas, Mayor

By _Harold T. Hodges_
Harold T. Hodges, Mayor Pro Tem

The above and foregoing instrument was acknowledged before me by Alvin B. Thomas, as Mayor, and by Harold T. Hodges, as Mayor Pro Tem, of the City of Northglenn, a municipal corporation, this 19th day of October, 1976.

My commission expires:   My Commission expires Mar. 5, 1977

_Shirley Whitten_
Notary Public

_Norman U. York_
Owner

RECEPTION NO. 85126144

-4-

```
B 1092 REC 02032672  11/19/85  10:30   $15.00    5/005
F 0894 MARY ANN FEUERSTEIN CLERK & RECORDER WELD CO, CO
```

Number of FRICO shares affected
by this Agreement: _7- Seven_

Certificate number(s) of FRICO
shares affected by this
Agreement: _N 4587_

5

The above and foregoing Agreement was acknowledged before me this _19th_ day of _November_, 197_6_ by _NORMAN W. YURK_

My commission expires: May 17, 1977

_Dorothy Wagner_
Notary Public

[Notary seal: DOROTHY WAGNER, NOTARY PUBLIC, STATE OF COLORADO]

```
RECORDED IN
COUNTY OF JEFFERSON
STATE OF COLORADO
RECEPTION NO. 85126144
12/30/85 13:45         15.00
```

-5-