**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 90-cv-00181-JLK

---

MERILYN COOK, *et al.*,

       Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

       Defendants.

---

**DECLARATION OF MICHAEL E. HAMER OF KROLL SETTLEMENT
ADMINISTRATION LLC, THE SETTLEMENT AND CLAIMS ADMINISTRATOR,
IN SUPPORT OF PLAINTIFFS' AND CLASS COUNSEL'S MOTION FOR
A *CY PRES* DISTRIBUTION OF NET SETTLEMENT FUNDS**

I, Michael E. Hamer, declare as follows:

1. I am a Senior Manager of Kroll Settlement Administration LLC, formerly known as Heffler Claims Group ("Kroll") in Philadelphia, Pennsylvania, the Court-appointed Settlement and Claims Administrator. (*See* the Court's Order Appointing Heffler Claims Group as Settlement and Claims Administrator, ECF No. 2417.) I am over 21 years of age and not a party to this action. This Declaration is based upon my personal knowledge as well as information provided to me by my associates and staff.

2. I submit this Declaration in connection with Plaintiffs' and Class Counsel's Motion for a *Cy Pres* Distribution of the Net Settlement Funds.

3. To date, with the Court's approval, Kroll has distributed a total of $107,572,481.25 in Initial Distribution awards; $98,852,306.07 in Second Distribution awards; and $10,319,904.16 in Third Distribution awards to valid claimants in this matter. The total amount distributed in all three distributions is $216,744,691.48.

4. On or about November 8, 2019, Kroll mailed Third Distribution award checks to the valid claimants, whose claims were accepted. The letters mailed with the Third Distribution award checks stated, in part: "<u>Please also note that we do not anticipate that there will be any further distributions in connection with the settlement of the above-listed matter</u>." (emphasis in original). A copy of the letter mailed with the Third Distribution award checks is attached as Exhibit A.

5. Since then, Kroll undertook extensive efforts to ensure that as many eligible claimants as possible deposited the checks mailed out as part of the Court-approved Distributions, including the following: (a) updating and standardizing all addresses through the National Change

of Address Database ("NCOA") maintained by the U.S. Postal Service ("USPS");[1] (b) making telephone calls to numbers provided with the claim form; (c) sending emails to addresses provided with the claim forms; (d) reviewing all documents submitted by claimants with their claims for possible updated or alternate contact information; (e) designing and sending a letter via first-class mail (including NCOA Processing) advising the claimant to contact us for a replacement check; (f) posting an alert on the Settlement Website (www.RockyFlatsSettlement.com) advising claimants with uncashed checks to contact us for a replacement check; (g) researching updated contact information through LexisNexis and TransUnion; (h) performing internet research for updated contact information; and (i) working with the Plaintiffs' consultant, Mr. Hunsperger, who assisted in the property evaluations and claim distribution calculations, to try to obtain possible address updates. Most of these checks were promptly cashed, but some were not. Several claimants who did not initially deposit their checks requested reissued replacement checks, and the Settlement and Claims Administrator granted all such requests and reissued the requested replacement checks.

6. As of today's date, checks to thirteen (13) claimants from the First, Second, and/or Third Distributions have not been cashed, despite our extensive efforts to reach the claimants to whom these checks were sent. We took the steps listed above in paragraph 5 to reach each of these 13 claimants. Specifically:

a) Two (2) claimants have declined their Distribution checks. One of the two claimants stated in a letter to Kroll that they are: "no longer interested in

---

[1] The NCOA contains change of address notifications filed with the USPS. In the event an individual had filed a USPS change of address notification, the address listed with NCOA was used in connection with the mailing of the checks and/or letters ("NCOA Processing").

3

        participating in the lawsuit. I am in assisted living and not interested in receiving the funds;" and the other stated in an email to Kroll: "On behalf of myself and my mother [the claimant, name redacted], we decline the Final Distribution check in the amount of $1,291.49."

b)    There are five (5) claimants that Kroll has been unable to contact despite repeated efforts. Kroll made at least three attempts to call each of these five claimants using the telephone number provided on the claimant's claim form but did not reach any of the five claimants by phone, despite leaving voicemails for the claimants whenever possible. In addition, Kroll also obtained an alternate telephone number for three of these claimants and made at least three additional attempts to call these three claimants at the alternate phone number, but did not successfully reach any of the claimants at the alternate phone numbers, despite leaving voicemails at the alternate phone numbers whenever possible. Kroll was able to leave voicemail messages for four of these claimants (out of five) but none of Kroll's voicemail messages has been returned. In addition, Kroll printed and mailed a letter to the last known address of each of these five claimants (using the address provided by the claimant or, where necessary, where the address was updated by Kroll through additional research). None of these letters was returned as undeliverable. Kroll also sent at least one email to the last known email address of each of the three (3) claimants for whom an email address was provided by the claimant on its claim form or located by Kroll through internet research. (Kroll attempted to identify email addresses for the remaining two claimants, but no such email was located).

4

      c)      The remaining six (6) claimants were successfully located after extensive efforts, as described in paragraph 5, above. After obtaining an updated address for these six claimants, we mailed replacement checks to each in June 2020. None of these checks was returned as undeliverable. These replacement checks provided thirty (30) days to cash or deposit the check, but the checks were not voided until on or about September 22, 2020, in order to provide additional time for each claimant to negotiate their check. To date, none of these six claimants has cashed the checks nor contacted Kroll to attempt to cash these replacement checks or to seek additional replacement checks.

7.      Given the extensive efforts already taken to reach the 13 claimants who have not cashed their distribution checks, there are no further measures that we recommend to help facilitate these checks being cashed or deposited.

8.      In addition, Kroll set aside funds for one claimant who sought to receive her estranged brother's half of the Settlement, where her brother had not filed a claim. Kroll sent this claimant a blank Assignment of Claim form, which was never completed nor returned as the claimant indicated to Kroll that her brother refused to complete and file the form. Therefore, the set aside funds cannot be distributed.

9.      As of the date of this declaration, the uncashed checks total $46,881.42.

10.      At the time of the Third Distribution, $150,000 was held in escrow in the Net Settlement Fund for anticipated future administrative costs. This account has earned $865.41 in interest through June 30, 2021 and paid $77,549.11 to Kroll for its fees and costs through July 31, 2020. As of June 30, 2021, the balance remaining in this account is $73,316.30. Kroll has submitted

its final invoices totaling $20,733.57 for Kroll's fees and costs incurred and estimated to be incurred from August 1, 2020 through completion of the *Cy Pres* Distribution process and closing of all accounts. Payment of these final invoices will leave a balance of $52,582.73 in the administrative account (plus any additional interest earned).

11. As of June 30, 2021, after deducting Kroll's final invoice amount of $20,733.57, the available balance of the Net Settlement Fund is $99,464.15 ($46,881.42 from uncashed distribution checks plus $52,582.73 in the administrative account).

12. Kroll estimates that its fees and costs for a fourth distribution would be very similar to its fees and costs incurred for the Third Distribution, or approximately $80,000 (including blank check stock, printing, postage, extensive follow up, and tax analysis and reporting). This would leave approximately $19,464.15 for distribution to approximately 8,500 valid claimants, which checks would average $2.29 each. Given that the balance of the Net Settlement Fund is only $99,464.15 and that the anticipated administrative costs of a fourth distribution would exceed the amount distributed to claimants, Kroll believes that a fourth distribution of claimant awards would be economically unfeasible.

13. In addition, I note that claimants may be less likely to cash their fourth distribution checks and/or may have moved without updating Kroll about their change in address given that, as noted above, the letters mailed with the Third Distribution award checks stated: "<u>Please also note that we do not anticipate that there will be any further distributions in connection with the settlement of the above-listed matter</u>." This would mean that, potentially, not all of the $19,464.15 would be distributed, even if a fourth distribution were made.

14. Kroll estimates that a *Cy Pres* Distribution, if approved by the Court, will result in approximately $99,464.15 (in addition to any additional interest accrued) being distributed to the two proposed *Cy Pres* Distribution award recipients.

Dated: July 16, 2021.

Michael E. Hamer

7

**EXHIBIT A**

**Rocky Flats Settlement**
**c/o Heffler Claims Group**
**Settlement and Claims Administrator**
**P.O. Box 58459**
**Philadelphia, PA 19102-8459**
**1-844-528-0187**
*www.RockyFlatsSettlement.com*

November 8, 2019

Re:   *Cook, et al. v. Rockwell International Corp. and The Dow Chemical Co.*,
       No. 90-cv-00181-JLK (D. Colo.)

Dear Claimant:

    We are the Settlement and Claims Administrator appointed by the Court in the above-listed matter and, along with Class Counsel, are pleased to send you the attached Third and Final Distribution check.  More information about the settlement is available at the official, Court-approved settlement website: *www.RockyFlatsSettlement.com*.  As we previously informed you in connection with sending your Second Distribution, based upon our review of the information submitted in connection with your Proof of Claim Form, we have determined that your claim is valid and eligible for this award from the Net Settlement Fund, and that you, as the claimant, are entitled to the "Percentage" of the award (listed on the check stub) for the "Property" (also listed on the check stub) based on the circumstances of your claim and the Property.  (This Percentage is 100% if you are the only person who is entitled to file a claim in connection with the Property, and you will receive 100% of the award associated with the Property.  If the Percentage is less than 100%, it is because there are multiple persons entitled to a share of the award.  For example, if you are one of four people who were equal owners of the Property in 1989 [or one of four heirs to the 1989 owner], then you will receive 25% of the award associated with the Property.)

    Please note that the Court approved this Third and Final Distribution and approved the manner of calculating the Third and Final Distribution amount.  The Court's Order approving this distribution and related documents are available on the official, Court-approved settlement website: *www.RockyFlatsSettlement.com*.  The Court-approved methodology for the Third and Final Distribution is the same as the methodology that the Court approved for the Second Distribution.  Thus, all claimants will receive a Third Distribution award, on a *pro rata* basis, equal to approximately 10.78 percent of the amount of their Second Distribution award.  Because the tax treatment of these award payments varies based on each Authorized Claimant's tax status and circumstances, you should consult your tax advisor to determine the tax consequences, <u>if any</u>, of these award payments to you.  Please note that the Internal Revenue Service has issued regulations under Internal Revenue Code §468B that may affect your tax treatment of these award payments.

    <u>Please also note that we do not anticipate that there will be any further distributions in connection with the settlement of the above-listed matter</u>.

**PLEASE NOTE THAT IF YOUR ADDRESS OR CONTACT INFORMATION HAS CHANGED SINCE SUBMITTING YOUR CLAIM FORM, OR CHANGES AT ANY TIME IN THE FUTURE, YOU MUST CONTACT US WITH YOUR NEW ADDRESS OR CONTACT INFORMATION AT YOUR EARLIEST CONVENIENCE.** PLEASE BE SURE TO INCLUDE YOUR CLAIM NUMBER IN ANY CORRESPONDENCE OR COMMUNICATIONS WITH US. MAKE SURE THAT YOU WRITE AND KEEP YOUR CLAIM NUMBER (LISTED ON THE CHECK STUB) BEFORE YOU CASH OR DEPOSIT YOUR CHECK SO THAT YOU WILL HAVE YOUR CLAIM NUMBER FOR FUTURE CORRESPONDENCE WITH US.

Additionally, if you have any questions about your claim or this letter or check, or need assistance with anything related to your claim, please contact us: (a) in writing at the address on this letterhead; (b) by telephone at 1-844-528-0187; or (c) through the "Contact" section of the official, Court-approved settlement website: *www.RockyFlatsSettlement.com*. Thank you.

Sincerely,

Heffler Claims Group
Settlement and Claims Administrator